IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAPLEVALE FARMS, INC., individually and on behalf of all others similarly situated,<br>      Plaintiff,<br> v.<br>KOCH FOODS, INC., et al.,<br>      Defendants. | Case No. 1:16-cv-08637 |
| FARGO STOPPING CENTER, LLC, and SARGENT'S, individually and on behalf of all others similarly situated,<br>      Plaintiffs,<br> v.<br>KOCH FOODS, INC., et al.,<br>      Defendants. | Case No. 1:16-cv-08851 |
| ABRAHAM DRUCKER, ILANA HARWAYNE-GIDANSKY, SABRINA MAJERNIK and CHRISTOPHER NELSON, individually and on behalf of all others similarly situated,<br>      Plaintiffs,<br> v.<br>KOCH FOODS, INC. et al.,<br>      Defendants. | Case No. 1:16-cv-08874 |

**DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF
PLAINTIFFS' MOTION FOR APPOINTMENT OF
GUSTAFSON GLUEK PLLC AND COTCHETT, PITRE & MCCARTHY, LLP
AS INTERIM CLASS COUNSEL AND
WEXLER WALLACE LLP AS LIASION COUNSEL FOR INDIRECT PURCHASER
PLAINTIFFS**

I, Steven N. Williams, declare as follows:

1. I am an attorney duly licensed to practice law before the United States Supreme Court, the United States Court of Appeals for the District of Columbia, the state courts of New York, New Jersey, and California, and many United States District Courts. I am a member of the law firm of Cotchett, Pitre & McCarthy, LLP ("**CPM**") and am an attorney of record for Plaintiff Fargo Stopping Center.

2. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto. I make this declaration pursuant to 28 U.S.C. §1746.

3. I submit this affidavit in support of Plaintiff Fargo Stopping Center's Memorandum of Law in Support of Appointment of Gustafson Gluek PLLC ("**GG**") and CPM as Interim Co-Lead Counsel for the Proposed Class.

4. A true and correct copy of CPM's firm resume which outlines in greater detail the capabilities of CPM and its attorneys is attached hereto as Exhibit A.

I. **CPM'S PROVEN ABILITY TO SUCCESSFULLY SERVE AS CO-LEAD COUNSEL**

5. On September 12, 2016, GG and CPM filed a complaint on behalf of Fargo Stopping Center in the United States District Court, Northern District of Illinois, Case No. 1:16-cv-08851. The *Fargo Stopping Center* was the first action seeking to represent indirect purchasers. Plaintiffs allege that defendants colluded to artificially raise and maintain prices of chicken broilers sold in the United States, in violation of Section One of the Sherman Act, 15 U.S.C. § 1 and various state laws, and that the state classes suffered damages.

6. In this spirit of efficiency, cooperation, and inclusion, GG and CPM repeatedly reached out to all current counsel of record for indirect purchasers to reach a consensus on leadership that would incorporate the unique skill sets and expertise of all counsel while

1

establishing a lean structure to swiftly and efficiently move this litigation forward for the benefit of the indirect purchasers.

7. Counsel for the all indirect purchasers, except for the Hagens/Cohen Group, support our proposed leadership structure, including counsel who represent both first line and end user indirect purchasers. The ability of the proposed lead and liaison counsel to command the respect and support of their colleagues and to work cooperatively with opposing counsel and the court is an important consideration in appointing a leadership structure.

8. Alongside direct purchaser counsel, GG and CPM also had an integral role in drafting and editing the first filed direct and indirect purchaser complaints. Moreover, GG and CPM paid a significant sum into a common fund that was used to hire economic experts to analyze the Broiler market. GG and CPM also analyzed the Broiler market supply chain and pass-on of overcharges from direct to indirect purchasers. These efforts occurred without the benefit of any governmental investigation of anticompetitive activity.

## II. CPM'S EXPERIENCE HANDLING ANTITRUST CLASS ACTION CASES

9. CPM has extensive experience in antitrust litigation, and in particular in indirect purchaser cases. These include *In re Automotive Parts Antitrust Litigation*, MDL 2311 (E.D. Mich.) ("Auto Parts"), one of the largest price-fixing cases ever. The end-payor class in the Auto Parts case has already recovered over $700 million in settlements. Other price-fixing actions, including indirect purchaser actions, in which CPM has served as either lead counsel or co-lead counsel are: *In re Lithium Ion Batteries Antitrust Litigation*, United District Court for the Northern District of California case no. C 13-MD-2420 YGR (N.D. Cal.) (co-lead counsel for indirect purchasers); *In re Capacitors Antitrust Litigation*, Case No. 3:14-cv-03264-JD (N.D. Cal.) (lead counsel for indirect purchasers); *In re Resistors Antitrust Litigation*, Case No. 5:15-cv-03820-RMW (N.D. Cal.) (lead counsel for indirect purchasers); *In re Domestic Airline Travel*

*Antitrust Litigation*, Case No. 15-1404 (CCK) (MDL No. 2656 (D. D.C.) (co-lead counsel for direct purchasers); *In re Transpacific Passenger Air Transportation Antitrust Litigation*, Case No. 7-cv-5634-CRB (N.D. Cal.) (co-lead counsel for direct purchasers); *Precision Associates Inc., et al. v. Panalpina World Transport (Holding) Ltd., et al.*, Case No. 08-cv-000442 (JG) (VVP) (co-lead counsel for direct purchasers); *In re Static Random Access Memory (SRAM) Antitrust Litigation*, Case No. M:07-CV-01819-CW (lead counsel for direct purchasers); *In re Flash Memory Antitrust Litigation*, Case No. 07-0086 SBA (N.D. Cal.) (co-lead counsel for indirect purchasers); *In re: Plasma Derivative Protein Therapies Antitrust Litigation*, Case No. 3:10-cv-05686 (MDL No. 2109) (N. D. California) (lead counsel for indirect purchasers); and *In re Parking Heaters Antitrust Litigation*, Case No. 1:15-mc-00940-JG-JO (E.D. New York) (liaison counsel for indirect purchasers.

      10.    Many courts have recognized the expertise and skill of CPM lawyers. As one example, in the case *In re International Air Transportation Surcharge Antitrust Litigation*, case no. M:06-md-01793-CRB (MDL No. 1793) (N.D. Cal), an MDL class action challenging the price-fixing of air passenger tickets imposed by British Airways plc and Virgin Atlantic Airways, Ltd., CPM and its co-lead counsel successfully secured a settlement over $200 million. The successful prosecution of this case was accomplished solely through the efforts of CPM and its co-lead counsel. The Court recognized the expertise of CPM and its co-lead counsel in the case when Judge Charles R. Breyer praised the firm for its efforts in achieving "really, an outstanding settlement in which a group of lawyers from two firms coordinated the work . . . and brought an enormous expertise and then experience in dealing with the case." Judge Breyer stated that the firms' lawyers are "more than competent. They are outstanding."

3

### III. LEADERSHIP IN THIS CASE SHOULD INSURE THAT EFFICIENCY AND THE BEST INTERESTS OF THE CLASS ARE PARAMOUNT

11. I have experience, including in some of the cases set forth above, in cases in which (1) a single lead counsel is appointed for all indirect purchasers and (2) different lead counsel are appointed for different levels of indirect purchasers. It has been my experience that in the latter circumstance where there are separate counsel for different levels of indirect purchasers that the case becomes more difficult and protracted for all parties and for the Court. This is a result of the fact that matters which could be addressed and resolved with fewer stakeholders are expanded to include additional stakeholders even when there is no legitimate need based upon the interests of the parties for these additional stakeholders to be part of these processes. These types of complications extend to simple scheduling matters, communications with defense counsel, negotiation of relatively standard stipulations and orders like protective orders, electronically stored information protocols, and case management orders. In my experience, it is evident that having fewer people involved in these processes leads to greater efficiencies and better results for the parties and for the Court.

12. If appointed as Interim Co-Lead Counsel for Indirect Plaintiffs, CPM and GG intend to propose a protocol with guidelines as set forth below:

    a) Co-Lead Counsel will monitor all rates for all professional staff working on this matter to insure that they are consistent with market rates for national class action work, including appropriate caps for work such as document review.

    b) All pre-leadership time from non-lead firms must be submitted to lead counsel who have the discretion to eliminate or edit such time;

    c) All firms, attorneys, experts and consultants working on the case must maintain detailed, contemporaneous time records, prepared at the most within seven days

        after the work reflected in each time entry occurred. Such reports must be recorded in tenth of an hour increments. These time records must be submitted to lead counsel each month. Work performed will be monitored to eliminate duplicative work;

d)     Lead counsel will exercise appropriate billing judgement and eliminate time for "read and review", unless it was authorized by lead counsel or necessary for a particular project. Lead counsel will also exercise billing judgment for "attorney conferences" to ensure that excessive hours are not billed in meetings or teleconference calls;

e)     Attorney attendance at hearings, depositions or other meetings shall be limited by Interim Co-Lead counsel;

f)     In an attorneys' fee request, lead counsel will be prepared to submit to the Court, if the Court desires, (1) contemporaneous billing records, including a breakdown of hours spent on specific tasks by each attorney; (2) each attorney's, paralegal's, and staff member's billing rates; (3) justifications for those billing rates, and (4) any other information this Court desires;

g)     When travel is required, all flights less than two hours should be billed in coach class. Travel greater than two hours, but less than five hours may be billed in economy plus. Travel exceeding five hours of flight time may be booked on business class. In all cases, flights should be booked at the lowest available fare; and

h)     When overnight travel is necessary, counsel will select reasonable hotel accommodations not to exceed $400 per night, per diem expenses will not exceed $75 per day per person exclusive of lodging and transportation.

### IV. CPM'S EXPERIENCE AS A COMMITTEE MEMBER IN ANTITRUST CLASS ACTION CASES

13. In addition to the many leadership roles CPM has been appointed to, CPM has also played an active role as Executive Committee, Steering Committee, and Committee Chair in a number of other litigations. Some of the cases in which CPM currently serves or has served as committee member are highlighted below.

14. In the case *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, Case No. M:02-cv-1486-PJH (MDL No. 1486) (N.D. California) CPM served as chair of the Discovery Committee for the direct purchasers in this multidistrict litigation arising from the price-fixing of DRAM, a form of computer memory. Shortly before the scheduled trial, class counsel reached settlements with the last remaining defendants, bringing the total value of the class settlements to over $325 million.

15. In the MDL class action case *In re Cathode Ray Tube (CRT) Antitrust Litigation*, Case No. 07-cv-05944-SC (MDL No. 1917) (N.D. California), CPM was appointed to an Executive Committee position and represented a class of direct purchaser plaintiffs against manufacturers of cathode ray terminals ("CRT") whose prices were artificially raised, maintained or stabilized at a supra-competitive level by defendants and their co-conspirators. Settlements amounting to approximately $139,450,000 have been reached.

16. In the class action case *In re Optical Disk Drive (ODD) Antitrust Litigation*, Case No. 3:10-md-02143-RS (MDL No. 2143) (N.D. California), CPM was appointed as a member of the Executive Committee for this multidistrict litigation alleging a conspiracy that manufacturers of optical disk drives ("ODD") fixed prices of ODD's sold directly to plaintiffs in the United States. Plaintiffs have reached settlements with all of the defendants for approximately $74,750,000.

17. In the case *In re Parking Heaters Antitrust Litigation*, Case No. 1:15-mc-00940-JG-JO (E.D. New York), CPM serves as Liaison Counsel for indirect purchaser plaintiffs who purchased air and coolant parking heaters aftermarket for commercial vehicles from Defendants.

## V. CPM'S ADDITIONAL QUALIFICATIONS FOR APPOINTMENT AS INTERIM CO-LEAD COUNSEL

18. In addition to CPM's experience as set forth above, CPM has developed extensive relationships with consultants and industry experts which will be helpful to this litigation. Further, CPM has a track record of respect and trust with many defendants' counsel. By building these relationships, CPM laid a solid foundation for a working relationship with counsel for the defendants in this case. CPM's willingness to engage in meaningful relationships with counsel will allow them to prosecute this litigation vigorously, efficiently, and in a manner consistent with best practices.

19. CPM's reputation is one reason large institutional investors and public entities, such as the California State Teachers' Retirement System and The Regents of the University of California, have selected CPM as counsel in some of their most important cases.[1] The *National Law Journal* has reported that the firm and its members are regarded by both plaintiff and defense attorneys as some of the foremost trial lawyers in the nation. CPM was been named to the *National Law Journal's* "Litigation Boutiques Hot List" and the "Plaintiffs' Hot List".

---

[1] *See In re Worldcom, Inc. Securities Litig.*, 02 Civ. 3288 (DLC) (S.D.N.Y.): *The Regents of the University of California v. Salomon Smith Barney, Inc., et al.*; *Regents of the Univ. of California v. Superior Court,* 165 Cal.App.4th 672 (2008); *California State Teachers' Retirement System v. Qwest Communications*; *California State Teachers' Retirement System v. AOL Time Warner*; *In re Libor-Based Financial Instruments Antitrust Litig.,* Case No. 11 MDL 2262 (NRB) (S.D. N.Y.) (representing the Counties of San Mateo and San Diego, the cities of Richmond and Riverside, East Bay Municipal Utility District, and other public entities); *In re Municipal Derivatives Antitrust Litig.*, MDL No. 1950 (S.D. N.Y.) (representing Los Angeles and numerous public entities); *People of the State of California v. Atlantic Richfield, et al. ("Lead Paint ")*, Case No. 1-00-CV-788657 (represented the People of the State of California alongside ten California cities and counties).

Recently, the *National Law Journal* named CPM to its inaugural list of Elite Trial Lawyers and the firm was just named to that list again for 2016. The *Daily Journal*, California's leading legal publication, has named CPM one of the top law firms in Northern California—the only plaintiffs' class action firm so named.

20. In addition to numerous trials and jury verdicts, just in the last few years, CPM has successfully prosecuted a number of class action cases. In 2011, CPM went to trial in one of only 15 class actions ever tried under the Private Securities Litigation Reform Act (PLSRA). The jury returned a verdict of $64.6 million on behalf of the class. In *Massoyan v. HL Leasing, Inc.*¸ Case No. 09-CECG 01839 (Fresno Cty. Super. Ct.) CPM tried a Ponzi scheme case to a jury verdict of $151.7 million. Additionally, in 2013, CPM secured a ground-breaking $1.15 billion judgment against the lead paint industry after a two-month trial in Santa Clara Superior Court. See *People of the State of California v. Atlantic Richfield, et al.* Santa Clara Sup. Ct, Case No. 1-00-CV-788657 ("Lead Paint"). The Lead Paint verdict was the result of 13-years of hard-fought litigation, including multiple trips to the California Court of Appeal and the Supreme Court of California, and stands as the only successful trial against the lead paint industry for creating a public nuisance threatening the health and well-being of children. See, e.g., *County of Santa Clara et al. v. Atlantic Richfield, et al.*, 50 Cal.4th 35 (2010); *County of Santa Clara et al. v. Atlantic Richfield, et al.*, 161 Cal.App.4th 1140 (2008); *County of Santa Clara et al. v. Atlantic Richfield, et al.*, 137 Cal.App.4th 292 (2006).

## JOSEPH COTCHETT

21. CPM Senior Partner Joseph W. Cotchett is lead counsel and team supervisor of the CPM attorneys. As stated by *The National Law Journal*, Mr. Cotchett is considered by plaintiffs and defense attorneys alike to be one of the foremost trial lawyers in the country. He has been named one of the 100 most influential lawyers in the nation for the past 15 years. He is

8

the author of several books, including Federal Courtroom Evidence, California Courtroom Evidence and others.

22. He has been an active member of national, state and local bar associations, including the California, New York and District of Columbia bars. He is a Fellow of the prestigious American College of Trial Lawyers and The International Society of Barristers and an Advocate in the American Board of Trial Advocates. He also is a Fellow and former board member of The International Academy of Trial Lawyers. A former Master of the American Inns of Court, he serves on various advisory boards for professional organizations.

23. As reported in the San Francisco / Los Angeles Daily Journal, he is "considered one of the best trial strategists in the state" who built a career out of representing the underdog against powerful interests. He is a fearless litigator and once tried two cases at the same time (one in the morning and one in the afternoon) and won them both in San Diego Superior Court in 1984. His clients range from corporate giants to groups like Consumers Union of United States, Inc. In 2003, the San Francisco Chronicle rated him as one of the best attorneys in the Bay Area, saying, "The Burlingame attorney has had a star career that's not only talked about in legal circles but has made headlines around the country. Known mostly as a plaintiffs' lawyer, many of his cases are filed on behalf of fraud victims, and have a widows-and-orphan flavor to them." Cotchett consistently has been named one of the most influential lawyers in California, and has been named by the legal press as one of the top 10 trial attorneys in the state and has been listed in every edition of Best Lawyers in America since its inception.

24. As reported in the San Francisco / Los Angeles *Daily Journal*, he is "considered one of the best trial strategists in the state" and has built a career out of representing the underdog against powerful interests

9

25. During his 45-plus year legal career, he has tried more than 100 cases to verdict, and settled hundreds more, winning numerous jury verdicts, ranging from multi-million dollar malicious prosecution jury verdicts to several defense verdicts in complex civil cases. He successfully negotiated a multi-million dollar settlement in a qui tam suit on behalf of the University of California and has secured over a billion dollars in recoveries in in antitrust, securities and fraud cases. In the 1980s, Cotchett won mammoth judgments and settlements for investors in white-collar fraud cases, with jury verdicts of more than $200 million arising out of the collapse of the Technical Equities Corp. in San Jose. He is known nationally as the lead trial lawyer for 23,000 plaintiffs in the Lincoln Savings & Loan Association/American Continental Corp. downfall in 1990 involving Charles Keating and others. He won one of the then largest jury verdicts, $3.3 billion. He obtained nearly $300 million in settlements from lawyers, accountants and other professionals caught up in the scandal in a jury trial in Tucson, Arizona. He is known nationally as the lead trial lawyer for 23,000 plaintiffs in the *Lincoln Savings & Loan Association/American Continental Corp.* case in 1990 involving Charles Keating, his lawyers, accountants and bankers. He won one of the then-largest jury verdicts in U.S. history, $3.3 billion. He obtained nearly $300 million in settlements from lawyers, accountants and other professionals caught up in the scandal in the jury trial in Tucson, Arizona.

26. He has represented both the National Football League and teams since the early 1980s in various legal actions. As counsel for E. & J. Gallo Winery, he won a defense jury verdict in a celebrated trade dress infringement case involving a wine produced by Gallo and the firm regularly represents Gallo in numerous matters.

27. Mr. Cotchett has taken on major corporate entities and Wall Street. He and the firm have been involved in litigation resulting from nearly every major corporate scandal including Enron, Worldcom, Global Crossing, Homestore.com, Qwest, Montana Power

10

Company, Lehman, Bank of America, Goldman Sachs and numerous others on behalf of private investors and public pensions. The firm has represented the California Public Employees' Retirement System, California State Teachers' Retirement System, and the University Of California Board Of Regents, along with numerous political subdivisions of the state, such as counties, cities and districts.

28. In 2002, Mr. Cotchett successfully represented the Chief Justice of the California Supreme Court and the individual judges and members of the Judicial Council, in litigation brought against them by the New York Stock Exchange and the National Association of Securities Dealers. The two Wall Street forces had filed suit against the Judicial Council challenging the State of California for establishing guidelines for arbitrators who hear complaints from investors in the state. Cotchett serves on the Federal Judicial Advisory Committee that submits and reviews federal judicial nominations in California to President Obama. The committee was authorized by the Obama Administration and California's two Democratic senators, Dianne Feinstein and Barbara Boxer. Cotchett is Chair of the Boxer Committee for the Central District of California (Los Angeles) and advises statewide. Cotchett also serves on a Judicial Advisory Committee to Governor Jerry Brown on state judicial appointments.

29. In June 2002, Mr. Cotchett received an Honorary Doctor of Laws from Cal Poly and The California State University Board of Trustees. In May 2006, Cotchett received an Honorary Doctor of Letters from Notre Dame de Namur University. In May 2011, Cotchett received an Honorary Doctor of Letters from the University of San Francisco. In each case, he was the graduation speaker honored by the Universities.

30. Mr. Cotchett was the lead trial counsel in the *Lead Paint* litigation and tried the case with a team of attorneys. Among Mr. Cotchett's many honors was his selection as Antitrust Lawyer of the Year by the California State Bar in 2011.

11

31. He is the author of numerous articles and a contributing author to numerous magazines. His books include California Products Liability Actions, Matthew Bender; California Courtroom Evidence, LexisNexis; Federal Courtroom Evidence, LexisNexis; Persuasive Opening Statements and Closing Arguments, California Continuing Education of the Bar (1988); The Ethics Gap, Parker & Son Publications (1991); California Courtroom Evidence Foundations, Parker Publications (1993); and numerous law review articles. He is a prolific author of op-ed pieces and articles on public policy, environmental issues and public integrity. In 2002, he co-authored and published the book The Coast Time Forgot, a historic guide to the San Mateo County coast.

32. In 2011, Mr. Cotchett was inducted into the prestigious American Trial Lawyer Hall of Fame for his work nationwide in civil rights and litigation on behalf of the under-privileged in our society. In 2011, he received the Distinguished Service Award from the Judicial Council of California and named the Antitrust Lawyer of the Year by the State Bar. In April of 2011, he was honored by the California League of Conservation Voters with the Environmental Leadership Award and honored by Consumer Watchdog with the Lifetime Achievement Award.

## STEVEN N. WILLIAMS

33. Steven N. Williams joined Cotchett, Pitre & McCarthy in 1997 and became a partner of the firm in 2003. Williams practices exclusively in the fields of litigation, trial, and client counseling. Williams concentrates in the fields of antitrust, business disputes, constitutional law, environmental, securities, and consumer law.

34. Mr. Williams represents individual clients in antitrust matters across the nation, and has personally served in a leadership position in many high-profile antitrust cases.

35. Mr. Williams has litigated many other successful large scale litigations. For example, Mr. Williams successfully represented Chief Justice George, California Judicial Council, and its members in action brought by New York Stock Exchange and NASDAQ challenging California's Ethics Rules for Neutral Arbitrators. The New York Stock Exchange and NASDAQ alleged that California's Ethics Rules for Neutral Arbitrators were preempted by federal law.

36. Mr. Williams also represented California State Teachers' Retirement System in separate actions recovering losses suffered due to securities fraud by AOL/Time Warner and Qwest. In these actions, California's public school teachers recovered over $150 million in losses to their pension and retirement funds.

37. Mr. Williams also represented a class of mortgage borrowers from Ameriquest challenging Ameriquest's business practices. In this action Mr. Williams was instrumental in successfully uncovering Ameriquest's mortgage scheme which was based upon intentionally placing borrowers in mortgages that Ameriquest knew they could not afford. Class wide relief was obtained, including business practice changes.

38. Mr. Williams is a member of the American Bar Association and serves on the Advisory Committee of the Cartel and Criminal Practice Committee of the ABA. Mr. Williams is a Board member of Public Justice, member of the California State Bar Antitrust Executive Committee, and a member of the Golden State Antitrust Institute. Mr. Williams was appointed by Consumer Attorneys of California as member of California Discovery Subcommittee for revision of California discovery rules and statutes relating to electronic discovery and electronically stored information, 2007-2008. Mr. Williams frequently presents on panels relating to the topics of civil discovery and ESI guidelines.

39. The CPM attorneys that will be working on this case on a day-to-day basis are Joseph W. Cotchett and Steven N. Williams.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of October 2016 in Burlingame, California.

*/s/ Steven N. Williams*
STEVEN N. WILLIAMS