# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To: All Actions | Case No. 1:16-cv-08637<br><br>**JOINT STATUS REPORT AND LETTER BRIEF FOR DECEMBER 9, 2016 HEARING** |

**JOINT STATUS REPORT AND LETTER BRIEF**
**FOR DECEMBER 9, 2016 HEARING**


Pursuant to the Court's Order on October 21, 2016 (ECF No. 172), the parties in these cases submit this joint status report and letter brief for the hearing scheduled for 9:30 a.m. on December 9, 2016.

The agenda includes the following items, all of which are discussed in detail below.

    **I.**    Preservation Letters

    **II.**    Disclosures of Information

    **III.**    Electronically Stored Information Protocol ("ESI Protocol")

    **IV.**    Scheduling of Rule 16 Conference

    **V.**    Renewed Motion to Appoint Separate Interim Class Counsel for Indirect Purchaser Consumers (ECF No. 218)


## I.    PRESERVATION LETTERS

At the hearing on October 21, 2016, the Court directed the parties to address preservation issues among themselves via letter. The Court directed that the parties could raise any concerns regarding document preservation efforts with the Court following this exchange. Each party has provided a letter concerning its client's efforts to date.

**Plaintiffs' Position:**

Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs ("Plaintiffs") believe the concerns identified below warrant the Court's attention.

The intention of the parties' discussions regarding preservation early on in this case was to avoid the strong possibility that information will be deleted or lost—even if inadvertently—during the pendency of Defendants' upcoming motions to dismiss. However, Defendants' preservation letters and disclosures to date are far too vague and boilerplate to accomplish this task in many respects. Defendants have uniformly refused to identify the specific individuals whose documents they are preserving, beyond the handful of Defendants' own custodians who Plaintiffs already identified for Defendant, which Plaintiffs raised over a month ago in a November 1, 2016, email to all defense counsel. Notably, in antitrust cases in this district, courts have ordered or the parties have agreed to disclose the list of custodians subject to a party's litigation hold. *In re Potash Antitrust Litig. (II)*, No. 1:08-cv-06910, ECF No. 529 (ordering antitrust defendant to produce a list within 7 days of "the persons identified as subject to a litigation hold, including names and job titles, in this cause of action."); *Kleen Prods. LLC v. Int'l Paper*, No. 10-C-5711, ECF No. 334 (N.D. Ill. June 25, 2012) ("Plaintiffs and Defendant Georgia-Pacific each agreed to produce the names and titles of all persons who have received a litigation hold notice related to this action, along with the date that the notice was made.").

Nevertheless, given Defendants' persistent objections to disclosing lists of litigation hold recipients, the best way to address the preservation of specific individuals' documents in the context of this litigation is to move forward promptly with negotiating custodians and centralized

data sources for production of documents in this matter (as discussed below, ¶ III). Otherwise, the very problem that necessitated the exchange of preservation letters—ensuring there is no misunderstanding regarding documents being preserved—will remain and potentially lead to motion practice later in this litigation.

**Defendants' Position:**

Per the Court's direction, Defendants have provided Plaintiffs with letters regarding their preservation efforts and have been meeting and conferring with Plaintiffs in good faith on preservation issues. Defendants disagree that their letter are "far too broad and boilerplate." Plaintiffs have not identified any particular purported deficiencies in Defendants' efforts, nor have they identified any specific relevant information they contend may be at risk of being lost. Indeed, Plaintiffs have not even responded to many of Defendants' letters. Moreover, Plaintiffs sent similar preservation letters to Defendants, except their letters contain substantially less information regarding their preservation efforts to date than Defendants' letters.

Nonetheless, Plaintiffs raised for the first time their "concerns" about Defendants' preservation efforts two days ago. A review of Plaintiffs' "concerns," however, demonstrates that they have nothing to do with preservation at all, but, rather, are a pretext for requesting a list of Defendants' litigation hold recipients in order to demand "the production of documents" from those individuals.

Requiring a party to identify the recipients of its litigation hold in such circumstances is highly unusual and inappropriate. *See, e.g.*, *Tracy v. NVR, Inc.*, No. 4-CV-6541L, 2012 U.S. Dist. LEXIS 44350, at *3 (W.D.N.Y. Mar. 26, 2012) (refusing to order defendant to disclose recipients of hold notice because plaintiff made no showing of spoliation). Plaintiffs' position is also objectionable because it would invade Defendants' work product. Litigation hold lists reflect counsel's investigation of the facts and related determinations of who is a "key player" based on that investigation. *Cf. Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D. N.Y. 2003) (linking the scope of a party's preservation obligation to a determination by counsel of which employees are "likely to have relevant information – the 'key players' in the case"). Simply, there is no legal requirement to disclose litigation hold custodians, and typically courts order disclosures about counsel's preservation communications only after there has been some indication of spoliation. Indeed, requiring otherwise would potentially create a disincentive for counsel to issue a broad litigation hold out of concern that the recipient list could be used as a basis to demand document production from an overbroad range of custodians.

The two cases on which Plaintiffs rely are inapposite. The first, *In re Potash Antitrust Litigation*, is procedurally distinct. The Order relied on by Plaintiffs, Dkt. 529, was not entered until over four years after the cases were filed and over three years after the Court ruled on the motions to dismiss and ordered discovery to proceed. In the second case, *Kleen Products*, a defendant voluntarily disclosed the recipients of its litigation hold in order to resolve a discovery dispute. Neither is relevant here.

Plaintiffs already have the organizational charts, phone directories, and other disclosures Defendants have produced and will have additional information next month as agreed. To the extent Plaintiffs wish to discuss other potential custodians, those discussions should proceed at the appropriate time pursuant to an ESI Protocol.

Notably, Plaintiffs' own preservation letters do not identify their own litigation hold recipients. IPPs' letter, for instance, was a mere two paragraphs of general preservation statements such as, "Each IPP has been advised of the need to preserve all potentially relevant information whether contained in hard copy or electronic form." There is no basis for the disproportional disclosures Plaintiffs seek.

## II.    DISCLOSURES OF INFORMATION

The parties have reached agreement on most parameters for the early limited disclosure of information in this case. On December 2, 2016, the parties each disclosed current information regarding organizational charts, document retention and technology use policies, and phone directories. The parties have agreed to produce additional information by January 31, 2017. As laid out in each of the attached draft orders—Plaintiffs' proposed Exhibit 1 and Defendants' proposed Exhibit 2—the parties differ as to the scope of the information that will be produced.

### Plaintiffs' Position:

There are two categories of dispute regarding the Rule 26(a) disclosures that the parties ask the Court to resolve: (a) whether a list must be created of relevant employees where no pre-existing document exists and (b) whether Defendants must disclose organizational charts/employee lists and phone number information for four additional categories of employees requested by Plaintiffs.

*Creation of Lists*: Plaintiffs request that Defendants provide a list of individuals who fulfill certain responsibilities identified below in ¶¶ (a)(i)(4)-(7) of Exhibit 1 if such individuals are not identified in organizational charts and phone directories. Direct Purchaser Plaintiffs' December 2 disclosures did precisely this by providing lists of relevant employees, titles, and phone numbers where organizational charts and phone directories did not exist. Indeed, a handful of Defendants did so as well. Plaintiffs believe doing so is a common sense way to advance discussions regarding potential custodians. Creating such lists cannot legitimately be characterized as burdensome; Defendants are already obligated to have inquired into the identity of employees in each category below, given that Plaintiffs' initial Requests for Production call for the production of information from employees in ¶¶ (a)(i)(4)-(7). To list those individuals for Plaintiffs is no extra burden.

While Defendants claim there is no basis to require them to disclose such information, Rule 26(a) expressly contemplates creation of such lists: "a party must, without awaiting a discovery request, provide to the other parties [] the name and, if known, the address and telephone number of each individual likely to have discoverable information-along with the substance of that information . . . ." *See Tamas v. Family Video Movie Club, Inc.*, 304 F.R.D. 543, 545 (N.D. Ill. 2015) ("'this obligation is satisfied only by producing individual addresses for individual witnesses; disclosure of an attorney's address or an employer's address is not sufficient.'"). "Under Rule 26(a), a party must also conduct a reasonable inquiry for each individual identified and disclose the subject matter of the person's information." *Id.* at 546. Thus, the disclosing party must "'identify[ ] the subjects of the information' that the disclosed individuals may offer to support that party's claims or defenses.'" *Id.* (quoting *Sender v. Mann*, 225 F.R.D. 645, 653 (D. Colo. 2004)). "[A] 'party cannot defeat the purposes of Rule 26(a)(1) simply by providing a laundry list of undifferentiated witnesses.'" *Id.*; *see also Passarella v. NFI Interactive Logistics, LLC*, No. 12 C 4147, 2016 WL 6134541, at *4 (N.D. Ill. Oct. 20, 2016) (granting motion to exclude witnesses whose names, addresses and telephone numbers were not

properly disclosed under Rule 26 (a)); *Gonzalez v. Olson*, No. 11 C 8356, 2015 WL 3671641, at *8 (N.D. Ill. June 12, 2015) (Gilbert, M.J.) (excluding witnesses whose involvement was only vaguely described). In the context of complex litigation, "[t]he judge may nevertheless direct the parties to produce and exchange materials in advance of discovery, subject to appropriate objections. Effective use of this device without excessive and unnecessary burdens on the parties can streamline the litigation." Manual for Complex Litig., § 11.13 (4th ed.).

*Disclosure of Additional Categories of Employees*: Plaintiffs' initial Requests for Production were served on November 15, 2016. They include requests for information in each of the categories included in Plaintiffs' proposed disclosures (Ex. 1, ¶¶ (a)(i)(1)-(7)), so it is essential that the individuals with responsibilities relating to these categories be identified and their documents preserved. Defendants have agreed to the disclosures in ¶¶ (a)(i)(1)-(3), but not ¶¶ (a)(i)(4)-(7), which would require the disclosure of the names and titles of individuals with the following positions or responsibilities relating to broiler chickens:

4. *market intelligence, competitor analysis, and/or analysis of, reporting to, or receiving data from Agri Stats, Express Markets, Inc. ("EMI"), Urner Barry, Georgia Dock, USDA, or other industry data sources;*

5. *communicating with other Defendants or other Broiler suppliers, such as individuals involved with co-packing arrangements or trades of Broilers with other Defendants;*

6. *trade association attendance and membership for individuals attending the organizations listed in ¶¶ 271-284 of the DPP Consolidated Amended Complaint, ECF No. 178, whose job responsibilities involve Broiler pricing, supply levels, inventories, or exports; and*

7. *analysis or determination of a Defendant's own pricing, supply levels, inventory, or export of Broilers.*

Defendants' primary objection to these additional categories of disclosures appears to be that in some cases a list must be created because such information may not be included on pre-existing organizational charts. However, because Defendants are already obligated to identify individuals in such categories due to their preservation obligations, they cannot legitimately argue that producing the list of individuals they have already identified is burdensome. Accordingly, Plaintiffs respectfully request that the Court enter Exhibit 1 as an order.

### Defendants' Position:

All Defendants believe that Plaintiffs' Complaints cannot state a claim, and therefore plan to file motions to dismiss them in their entirety. Although many cases recognize the efficiency of fully staying discovery pending the resolution of such motions,[1] Defendants have

---

[1] *E.g.*, *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005); *Coss v. Playtex Prods., LLC*, 2009 WL 1455358, at *1 (N.D. Ill. May 21, 2009); *Standard Iron Words v. Arcelormittal USA, Inc.*, No. 08-cv-5214, Tr. of Proceedings at 20–22 (N.D. Ill. Nov. 21, 2008); *In re Potash Antitrust Litig.* (No. II), No. 1:08-cv-06910, Minute Entry, ECF No. 64 (N.D. Ill. Apr. 23, 2009); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 5425183, *3 (N.D. Cal. Sept. 26, 2013); *In re Graphics Processing Units Antitrust Litig.*, 2007 WL 2127577, at *5–6 (N.D. Cal. July 24, 2007); *In re London Silver Fixing, Ltd., Antitrust Litig.*, No. 14-md-2573, ECF Nos. 1, 24, 151 (S.D.N.Y. 2016); *In re Interest Rate Swaps Antitrust Litig.*, No. 16-md-02704, ECF No. 92 (S.D.N.Y. July 26, 2016); *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13-cv-07789, ECF No. 145 (S.D.N.Y. Mar. 4, 2014).

worked with Plaintiffs to compromise on the disclosure of limited information while their dismissal motions are pending.

Specifically, last Friday, December 2, Defendants disclosed to Plaintiffs documents reflecting: (i) current versions of organizational charts for their Boards of Directors, and for executives with the title of Director, Vice President or higher who have principal responsibilities relating to Broiler chickens, (ii) current document retention policies, (iii) current technology use policies, and (iv) current phone directories that show the office, fax, and cellphone number for individuals identified in the organizational charts provided.[2]

Defendants have also agreed to disclose, by January 31, 2017, readily available documents reflecting for the period from January 1, 2007 to September 2, 2016, including:

> a. **Organizational Charts:** Organizational charts sufficient to show the names and titles of individuals with the following positions:
>
> > 1. member of the board of directors;
> >
> > 2. all executives with the title of Director, Vice President, or higher (such as SVP, CEO, COO, CFO, etc.) with principal responsibilities relating to broiler chickens, as well as their assistants or secretaries;
> >
> > 3. investor and/or creditor relations personnel.
>
> b. **Phone Directories:** Documents, such as phone directories, sufficient to show the office, fax, and cellphone number for the categories of individuals identified above in subparagraphs (a)(i)(1)-(3) and (a)(ii)(1)-(3).
>
> c. **Email Systems:** Identification of the email system used, including the name of the email system, version number (including applicable dates for different versions, if readily available), and time period or number of days for which email is retained on the system.
>
> d. **Non-custodial Data Sources:** A list of known non-custodial data sources (e.g. shared drives, servers, etc.), if any, likely to contain discoverable ESI. These lists will identify the databases that are likely to contain discoverable "structured data."
>
> e. **Document Retention Policies:** Document retention and/or destruction policies in effect since January 1, 2007 to September 2, 2016.
>
> f. **Employee Technology Use Policies:** Employee Technology Use Policies in effect since January 1, 2007 to September 2, 2016, including (if they exist)

---

[2] Pursuant to the Parties' agreement, Defendants have agreed to produce documents to the extent they exist and are readily available. The Parties have also reserved the ability to supplement or amend these disclosures once discovery commences, and to modify the disclosures upon a showing that complying with such disclosure would be unduly burdensome.

policies concerning use by employees of cellphones, notebook computers, and tablets for business purposes. Without intending to limit the foregoing, such policies may go by the following names: bring-your-own device (BYOD) policies, choose-your-own-device (CYOD) policies, corporate-liable-employee-owned (CLEO) policies, corporate-owned/personally enabled (COPE) policies, mobile-device-management (MDM) policies, and dual-use device policies. Plaintiffs and Defendants will disclose if they have no such policies.

g. **Phone Records**: Plaintiffs and Defendants will disclose if they have downloaded phone records from phone carriers and, if so, from which carriers they have downloaded such records, and the categories of phone records which they have downloaded.

h. **Inaccessible Data**: A list of known data sources, if any, likely to contain discoverable ESI that a party asserts is not reasonably accessible under Rule 26(b)(B) or Rule 26(b)(2)(C)(i).

In addition to this information, Plaintiffs are seeking from Defendants additional information not kept in the regular course of business, despite the Court's guidance at the last hearing. (10/16/16 Tr. 35:10-11 ("[D]ocument requests don't require you to re-create a document.").) More specifically, as indicated above, Plaintiffs seek organizational charts or lists reflecting the names and titles of Defendants' employees that, over a nine-year period, (i) engaged in "market intelligence, competitor analysis, and/or analysis of, reporting to, or receiving data from" various "industry data sources," (ii) communicated with other Defendants or other Broiler suppliers, (iii) attended trade association meetings, and (iv) had responsibility over pricing, supply levels, inventory, and exports.

As relayed to Plaintiffs, Defendants do not maintain in the ordinary course of business any organizational charts that correspond to these precise categories of information, much less maintain such documents for the nine-year period Plaintiffs seek. Accordingly, in order to respond to Plaintiffs' broad requests, Defendants would have to interview employees and then create new documents akin to an interrogatory answer all while simultaneously preparing their motions to dismiss. For example, identifying the employees who, over the course of nearly nine years, engaged in "market intelligence or competitor analysis" (which has almost no limits) would place significant burdens on Defendants while they are briefing their motions to dismiss. Similarly difficult would be identifying all employees who attended or participated in trade association meetings or analyzed or determined pricing, supply levels, inventory, or exports over a nine-year period. While Plaintiffs attempt to equate such disclosures with what Rule 26(a) requires, identifying individuals with information regarding these broad topics will require investigation and research far exceeding simply listing individuals "that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." FED. R. CIV. P. 26(a)(1). Instead, what Plaintiffs seek more closely resembles the effort needed to respond to interrogatories. Because of the nature of Plaintiffs' requests, there will be significant costs involved in responding to such discovery, and Defendants will be required to create additional documents. Undertaking such an extensive exercise at this juncture is unduly burdensome and unwarranted, particularly in light of the other disclosures Defendants have

already provided and have agreed to provide next month and in light of Defendants' forthcoming motions to dismiss.

Further, this additional information is unnecessary now. Plaintiffs' stated purpose for seeking this information is to prepare for discovery in the event the Court denies dispositive motions. The disclosures upon which the parties have already agreed and the schedule included in Defendants' proposed ESI protocol already accomplish that goal. There is no reason, and Plaintiffs have not articulated any, for why Plaintiffs need specified disclosures of Defendants' employees by responsibility for a nine-year period at this time. Accordingly, the request for additional disclosures should be denied.

## III.     ESI PROTOCOL

The parties have met and conferred regarding the content of an ESI Protocol. The parties have agreed on many components, but for those areas of disagreement, the parties have laid out the justification for their request that the Court adopt their version of a proposed ESI Protocol. Plaintiffs' proposed ESI Protocol is attached as Exhibit 3 and Defendants' proposed ESI Protocol is attached as Exhibit 4.

### **Plaintiffs' Position:**

The governing principle underlying Plaintiffs' position is that the ESI Protocol should seek to make discovery streamlined, transparent, and avoid leaving inevitable areas of conflict unresolved for piecemeal resolution via subsequent motion practice. Common sense, and Plaintiffs' counsels' collective experience, warrants the Court setting the rules of the road for discovery early in this case to avoid numerous piecemeal motions later on in a case, *after* the parties have already devoted significant resources to discovery. By comparison, adopting Defendants' proposed ESI Protocol would significantly delay any progress setting the parameters for discovery, and when the parties finally started those discussions, it would offer only an opaque "we know best" approach to discovery that will breed distrust and make it harder to reach agreement. While Defendants repeatedly cite Sedona Principle 6 to justify their opaque and limited proposal, leading e-discovery experts have recognized that the principle is detached from reality and that it "works against the transparency required in e-discovery and serves to defer scrutiny at the cost of substantial waste and delay." C. Ball, *Sedona Principle Six: Overdue for an Overhaul* (Oct. 10, 2014) ("We should be guided by the Russian maxim, "*Doverai non proverai*" (Trust, *but verify*). It's expensive to botch an e-discovery effort, and it hurts everybody. Do-overs aren't always possible, and evidence uncollected may be evidence lost forever.") (*available at* https://ballinyourcourt.wordpress.com/2014/10/10/sedona-principle-six-overdue-for-an-overhaul/).

Defendants are also fixated on finding an identical ESI Protocol to the one Plaintiffs propose (e.g., see Defendants' voluminous attachments)—but every ESI Protocol is different because it must respond and adapt to the particular needs of each case and based on what parties learned in past litigation. In many cases, Defendants' fixation elevates form over substance—the specific deadlines governing negotiation of custodians and search methodology in prior cases are addressed in related documents rather than the ESI protocol itself. *See In re Resistors Antitrust Litig.*, No. 3:15-cv-03820, ECF No. 251, Order at 1-2 (N.D. Cal. Nov. 21, 2016) (providing specific deadlines for negotiation of data sources and search methodologies). In other cases, Defendants ignore the fact that an ESI Protocol failed to account for advances in technology (i.e., regarding cellphones and social media) led to costly motion practice, which no party should wish

to repeat in future cases. *In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420, ECF No. 977 (N.D. Cal. Nov. 24, 2015) (joint discovery letter brief regarding cellphone records and data); *See In re Domestic Drywall Antitrust Litig.*, No. 13-md-02437, ECF Nos. 83, 84 (E.D. Pa. Nov. 18, 2013) (briefing issue of providing hit count reports, left unresolved in ESI Protocol).

Plaintiffs request that the Court enter Plaintiffs' proposed ESI Protocol (Ex. 3).

1. *Setting the Parameters for Discovery During Pendency of Motions to Dismiss.*

As discussed with the Court at the October 21 hearing, Plaintiffs agreed that in lieu of pursuing the full discovery permitted during pendency of the motions to dismiss in this district, the parties would set parameters for discovery, such as negotiating data sources to be collected (e.g., custodians and centralized documents) and the search process. Nevertheless, Defendants now seek to defer the *beginning* of *all* discussion regarding discovery parameters until *after* the Court rules on motions to dismiss—at least six months from now. Further, Defendants' proposal significantly delays the start of discovery once the Court does rule on motions to dismiss, adding on *at least* 102 days of negotiations that would already be completed by that time under Plaintiffs' proposal. Ex. 4, ¶ V. Not only would Defendants' proposal leave the parties sitting idle rather than discussing parameters for discovery, it would leave open for at least *six months* the question of whether the parties were preserving the appropriate individuals' documents. By comparison, Plaintiffs' proposal to negotiate document custodians and centralized data sources during the pendency of the motions to dismiss significantly reduces the risk that documents will be lost due to a party's failure to identify relevant information for preservation.

It is best practice in large antitrust cases to adopt deadlines *early* in the litigation to ensure efficient progression of discovery; otherwise, delay is inevitable. *See, e.g.*, Manual for Complex Litig., Fourth, § 11.211 (noting appropriateness of "specific scheduling and deadlines" and "instituting any other special procedures to facilitate management of the litigation" in complex cases); *id.* § 11.212 (noting that a Court may issue a scheduling order to "provide for any other matters appropriate in the circumstances of the case"). Plaintiffs' proposed ESI Protocol avoids not only the inevitable delays inherent when deadlines do not govern negotiation of data sources and search terms, but also the routine document production delays that can create great inefficiencies in terms of proceeding with depositions and preparing for class certification and summary judgment. Plaintiffs' proposal provides that 90 days after the Court's ruling on the motions to dismiss, the production of documents from a small group of priority document custodians will be substantially complete. This allows the parties to know they have the near-complete set of documents to permit key depositions to proceed. Similarly, Plaintiffs' proposal provides that 150 days after the Court's ruling on the motions to dismiss, all other documents (custodial or otherwise) will be produced.

Plaintiffs request that the Court adopt Plaintiffs' proposed ESI Protocol (Ex. 3) because it permits the parties to immediately commence full discovery once the Court rules on Defendants' motions to dismiss, and avoids numerous inefficiencies inherent in Defendants' proposal to wait at least six months before even starting to negotiate the parameters for discovery.

2. *Hit Count Reports.*

In lieu of manually reviewing all ESI, the parties have agreed that a party may choose to use keyword search terms to cull the amount of certain ESI to be reviewed. Plaintiffs have made the routine request that the parties' transparency and cooperation obligations in developing

keyword search terms include the mutual exchange of hit count reports. A hit count report is a document automatically generated in a producing party's document review software and provides objective statistics showing how many documents a particular keyword is hitting out of the larger universe of documents. *See* Ex. 3, ¶ V(B). Hence, it is unquestionable that providing a hit count report is in and of itself not burdensome—any party using modern document review software has such a report available to it and need only click a button to export the results to a spreadsheet that can be shared with the requesting party.

Without a hit count report, a requesting party would have no basis for discussing the adequacy or inadequacy of a proposed set of keyword search terms. This is why Defendants' position is inconsistent with the transparency and cooperation necessary in modern litigation. *See* 7th Cir. Elec. Discovery Pilot Program, Principle 1.02 ("An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner."); *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 877 F. Supp. 2d 87, 109 (S.D.N.Y. 2012) (there is a "need for careful thought, quality control, testing, and cooperation with opposing counsel in designing search terms or 'keywords' to be used to produce emails or other electronically stored information."); *In re Seroquel Products Liab. Litig.*, 244 F.R.D. 650, 662 (M.D. Fla. 2007) ("[W]hile key word searching is a recognized method to winnow relevant documents from large repositories, use of this technique must be a cooperative and informed process. . . . Common sense dictates that sampling and other quality assurance techniques must be employed to meet requirements of completeness.").

Plaintiffs request that the Court adopt their proposed ESI Protocol, including its requirement for the sharing of hit count reports in connection with the development of keyword search terms. *See* Ex. 3, ¶ V(B).

### 3. *The Parties Cannot Pre-Cull TAR Document Sets with Keywords.*

Plaintiffs have agreed that as an alternative to keyword searching to cull ESI document sets, a party may use Technology Assisted Review ("TAR")—in other words, a party may choose to use either keywords or TAR to cull document sets *in lieu* of manually reviewing all potentially relevant documents. Defendants want to double-cull document sets subject to TAR— i.e., they propose a party cull document sets with keyword search terms and then cull document sets *again* using TAR—all before an attorney makes any assessment regarding whether specific documents are appropriate to exclude from production as non-responsive. This approach magnifies the errors inherent in keyword searching while limiting the ability of TAR to locate potentially responsive documents in the full set of documents a producing party identifies as potentially relevant. Further, it is inherently inefficient because it requires months of additional negotiations for both keyword search terms and a TAR process. Defendants' suggestion of pre-culling document sets with keywords before using TAR will lead to gamesmanship and an inefficient double-negotiation of search parameters—namely, a producing party can engage the requesting party in lengthy negotiations concerning keyword search terms, then turn around at the end of the process and declare that it will now also use TAR to further limit the already narrowed document set, requiring a further negotiation of search methodology.

Defendants' proposal ignores the inherent trade-off associated with implementing TAR. Defendants are benefitted by the substantial savings in terms of time and money that would otherwise be expended in manually reviewing documents for responsiveness. In return, Plaintiffs are entitled to have this significantly more efficient methodology deployed on the

complete set of potentially responsive documents that is better able to pick up on coded language and semantically similar words. *See Progressive Casualty Ins. Co. v. Delaney*, 2014 WL 3563467, *8 (D. Nev. July 18, 2014) ("the traditional ways lawyers have culled the universe of potentially responsive documents for production—manual human review, or keyword searches—are ineffective tools to cull responsive ESI in discovery."). There is no technological or cost justification for subjecting the TAR data set to pre-culling with keyword search terms—all or nearly all modern document review systems load the complete document set to the review platform to run keyword searches or TAR. Further, any concerns of Defendants regarding hosting costs would be mitigated by Plaintiffs' proposed deadlines to complete the search process (as opposed to Defendants' proposal, which would greatly increase the number of months they must pay to host data).

The Honorable Magistrate Judge Peck, a leading authority on e-discovery issues, has criticized the use of keywords to pre-cull a document set before implementing TAR. *See Rio Tinto PLC v. Vale S.A. (Rio Tinto II)*, 2015 WL 4367250, *2 (S.D.N.Y. July 15, 2015) ("The Court itself felt bound by the parties' protocol, such as to allow keyword culling before running TAR, even though such pre-culling should not occur in a perfect world."). Moreover, this approach has been outright rejected by courts where a party unilaterally seeks to do so without the consent of the requesting party. *See Progressive Casualty Ins. Co. v. Delaney,* 2014 WL 3563467, at *10 (rejecting defendant's proposal to apply TAR to a "to a small subset of the universe of ESI collected"). Similarly, experts in the area of TAR do not agree that it is appropriate to pre-cull documents sets before using TAR. *See Rio Tinto*, 2015 WL 4367250, n.1 (Magistrate Judge Peck noting that "the Court is aware from Ms. Grossman's published writings, and from panels we have done together, that on the issue of keyword culling before using TAR, [ESI expert] Ms. Grossman's views are not supportive of [the producing party's] position in this case."); Speros, J. William, *Predictive Coding's Erroneous Zones Are Emerging Junk Science*,[3] e-discoveryteam.com blog (Apr. 28, 2013) ("excluding responsive documents from the predictive coding [(aka, TAR)] space stunts its intelligence. . . . By improperly withholding responsive documents from predictive coding engine's analysis, attorneys are not only denying the likelihood that responsive documents will ever be produced but dumbing-down the predictive coding intelligence and, thereby, driving-down its value.").

Plaintiffs ask that the Court adopt Plaintiffs' proposed ESI Protocol, including ¶ VI(B)(2)(c) that prohibits double-culling of document sets subject to TAR.

4. *Parameters for Privilege Logs.*

A party may only withhold material on the basis of privilege to the narrowest extent possible. *Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007). The party claiming privilege is required to demonstrate that the withheld communication was "made in confidence, in [] connection with the provision of legal services, to an attorney, and in the context of an attorney-client relationship." *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 446 (7th Cir. 2011). Defendants' proposed ESI Protocol would radically alter this rule by permitting withholding of entire categories of documents (i.e., communications with in-house counsel), without even *disclosing* the existence of such withheld documents. This is an invitation for chaos—antitrust defendants in this district and around the country wrongly use privilege as the basis to withhold highly

---

[3] https://e-discoveryteam.com/2013/04/28/predictive-codings-erroneous-zones-are-emerging-junk-science/?shareadraft=517d80048f827

relevant non-privileged documents, and Plaintiffs strongly believe that not logging documents would generate a morass of motion practice and disputes regarding non-disclosed withholding of responsive information. *See Kleen Prod. LLC v. Int'l Paper Co.*, 2014 WL 6475558, at *1 (N.D. Ill. Nov. 12, 2014) (Leinenweber, J.) ("[T]he number of documents included in the in camera sampling that do not appear to be privileged is troubling. . . . [T]he problem is that RockTenn appears to have adopted an overly capacious view of what constitutes privileged information.").

Plaintiffs suggested the parties agree to a "quick peek" agreement if there are certain categories of documents a party is considering withholding, but wants to avoid logging. In this way, a party could identify (without retaining the underlying documents) the specific documents they believe warrant full logging. Defendants rejected this proposal—as they are entitled to do—but the consequence of that decision is that they need to fully log any responsive document withheld on the basis of privilege.

Plaintiffs request the Court adopt Plaintiffs' proposed ESI Protocol, which requires compliance with rules and case law governing the assertion of privilege. Ex. 3, ¶ VII.

5. *Withholding of purportedly irrelevant email attachments should not be permitted.*

Federal Rule of Civil Procedure 34(b) and Federal Rule of Evidence 106 require a party to produce emails and attachments together where one portion of the "family" of documents is responsive to a document request. Fed. R. Civ. P. 34(b) (requiring production of documents "as they are kept in the usual course of business"); Fed. R. Evid. 106 (stating that if a part of a document is used as evidence, the party offering it must produce the entire document if it "ought in fairness" be considered as a whole.). It is not burdensome or unreasonable for Defendants to do so here, as Defendants of course store emails and attachments together in their email systems and it takes *additional* effort and expense to remove them from production. Further, even if a document contains sensitive or confidential information, the protective order in place in this matter offers parties adequate protection. *See* ECF No. 202.

The practical effect of Defendants' request is it will slow down the production of documents as Defendants designate certain documents for withholding in otherwise responsive document families and subsequently lead to inefficient motion practice. Withholding email attachments first, then requiring Plaintiffs to object piecemeal as they review documents, is a blatant attempt to make an end run around the protective order and the rules. The Court should reject Defendants' request to permit the withholding of email attachments that are part of a responsive family of documents.

6. *Plaintiffs' proposal addresses numerous other issues that are better addressed upfront.*

Besides those issues noted above, many other aspects of Plaintiffs' proposed ESI Protocol obviate the need for motion practice by addressing potential areas of conflict head-on. Below are a few further examples:

- **Time Frame for ESI Issue Resolution:** A constant source of delay during discovery is the inability of one party's ESI Liaison to receive a timely response from their counterpart to address the myriad of ESI issues that arise during litigation, so Plaintiffs' proposal includes a specific timeframe for resolving such disputes. Ex. 3, ¶ I(C)(3); *see Potash*, No. 1:08-cv-06910, ECF No. 390 (requiring designated discovery representatives (aka, ESI Liaisons) to be available on one business day's notice).

- **Timing of Paper Document Productions:** Given that paper document volumes are usually smaller, manually reviewed, and not subject to ESI search discussions, production of such documents routinely takes place early in discovery. Plaintiffs' proposed ESI Protocol provides a deadline for the production of such information, while Defendants' does not. *See* Ex. 3, ¶ VI(E).

<u>**Defendants' Position:**</u>

Defendants' proposed ESI protocol ("Defendants Protocol") is modeled on an ESI Protocol recently entered in another large-scale, complex antitrust matter, as well as protocols entered in other antitrust cases. (*See* Exs. 4, 6.B.) Plaintiffs' counter-proposal is unprecedented both in terms of its onerous and inflexible requirements and the extent to which it functions not as an ESI protocol, but as a back-door discovery device ("Plaintiffs' Protocol"). (*See* Ex. 3.) Despite the overbroad scope of Plaintiffs' Protocol, Defendants have revised their Protocol multiple times in the interest of compromise to incorporate a number of the terms Plaintiffs proposed. (*See* Exs. 7.A-I.) Defendants also asked Plaintiffs for examples of ESI Protocols entered in other antitrust cases that are similar to Plaintiffs' Protocol. Plaintiffs have offered none. (*See id.*)

The sole precedent referenced by Plaintiffs during the parties' negotiations, from *In Re Resistors Antitrust Litigation*, 3:15-cv-03820-JD (N.D. Cal.), is much more similar to Defendants' Protocol than Plaintiffs' Protocol. (*See* Ex. 6.A.) Even today, Plaintiffs sole basis for their uniquely burdensome and restrictive protocol is "Plaintiffs[] counsels' collective experience." But they ignore the "collective experience" of numerous courts. A review of ESI protocols entered in other antitrust matters and by this Court shows just how extreme Plaintiffs' Protocol is. (*See* Exs. 5 (detailing lack of precedent for Plaintiffs' Protocol); 6.A-I.)

As discussed below, Plaintiffs attempt to impose obligations on producing parties far beyond the Federal Rules of Civil Procedure—while Defendants are briefing their motions to dismiss—and to greatly restrict the flexibility that producing parties need to meet their discovery obligations most efficiently. *See The Sedona Principles: Second Edition* (June 2007) (Principle Six states "Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information").[4] Defendants request that the Court enter an order adopting Defendants' ESI Protocol.[5] (*See* Ex. 4.)

---

[4] Indeed, as much as Plaintiffs may bemoan it, the central tenet of the discovery process is self-reporting. The rules of discovery—in conjunction with this Court's Rule of Professional Conduct—form the basis for a party's obligation to identify and preserve potentially relevant documents and to produce responsive documents. *See*, *e.g.*, FED. R. CIV. P. 26; Rules for the Northern District of Illinois, LR 83.53.3(a)(13) (prohibiting an attorney from "suppress[ing] any evidence that the lawyer or client has a legal obligation to reveal or produce"); *id.* LR 83.53.4(1) (prohibiting an attorney from "unlawfully obstructing another party's access to evidence"); *id.* L.R. 83.53.4(1) (a lawyer shall not "unlawfully alter, destroy, or conceal a document or other material having potential evidentiary value").

[5] Cognizant of the Order, Defendants have limited their response to 5 pages. However, Defendants request the opportunity to provide further authority and/or briefing to this Court in the event that the Court is considering entering an order that departs from Defendants' Protocol.

### A.  Plaintiffs' Legally Unsupported Proposed Protocol

Plaintiffs' Protocol would impose substantial restrictions, burdens, and deadlines on a producing party, motivated by Plaintiffs' incorrect presumptions that (1) they are *entitled* to discovery during the pendency of a motion to dismiss, *see supra* note 1, and (2) a producing party will not comply with its obligations under the Federal Rules of Civil Procedure.

***First*, Plaintiffs propose unprecedented, costly deadlines before the completion of the motion to dismiss.**  Defendants have clearly demonstrated their willingness to engage in some reasonable and proportionate discovery while their motions to dismiss are pending.  *See supra* Part II (Defendants' Position).  But what Plaintiffs demand in their proposed protocol goes far beyond what is reasonable.  For example, Plaintiffs' Protocol imposes deadlines to (i) negotiate all data sources, (ii) to brief any disputes to the Court, (iii) to collect, process, filter, and load all ESI; and (iv) to determine, test, and negotiate a comprehensive search methodology for search terms and TAR before briefing the motion to dismiss is completed.  (*See* Ex. 3, Sections VI, VI.)  These are time-consuming, costly steps that may prove unnecessary.  Defendants' motions to dismiss are not perfunctory boxes to be checked on Plaintiffs' road to discovery.  Indeed, they are potentially dispositive of the claims, if any, that will advance in this litigation and the Defendants, if any, who will continue in it, as well.  At a minimum, the Court may narrow Plaintiffs' claims in a way that eliminates document custodians or limits the scope of what is relevant.  As this Court rightly recognized when the parties were previously before it, discovery and production are difficult (*see* 10/21/2016 Tr. at 29:8-9), and it is inappropriate to compel a Defendant to incur the time and costs to negotiate custodians and non-custodial data sources; load and store custodians' data; negotiate, run, and test search terms, and make productions when it may well be dismissed from this action.  Defendants are not aware of any antitrust ESI Protocol that imposes such obligations on a producing party prior to a ruling on a motion to dismiss.  Defendants are aware, however, that this Court expects discovery to move appropriately apace upon its ruling on the motions to dismiss.  To that end, although Defendants maintain that discovery deadlines are not contemplated by an ESI Protocol, they propose deadlines to identify data sources within 30 days of the Court's rulings on the motions to dismiss and to identify search terms within 30 days of agreement or a Court order on those data sources.  (*See* Ex. 4, Section V.)

***Second*, Plaintiffs are improperly attempting to control how a producing party fulfills *its discovery obligations*.**  The Sedona Conference recognizes that the *producing party* is in the best position to decide how to search for and produce ESI.  *See* The Sedona Principles: Second Edition (June 2007).  Nevertheless, Plaintiffs—assuming a producing party will not comply with its obligations under the Federal Rules—purport to control the approaches and technologies applied by a producing party to identify and produce responsive documents by, *inter alia*, precluding a producing party from using search terms in addition to TAR (Ex. 3, Section VI.B.2.c), demanding hit count reports (Ex. 3, Section V.D), and demanding disclosure of all communications with counsel (Ex. 3, Section VII.A).  And they do so without regard to the number of documents at issue and the unique systems requirements of the fourteen Defendants in this case.  Once again, there is *no* precedent for Plaintiffs controlling the Defendants' discovery process in this manner.

***Third, Plaintiffs have offered no process for reasonably identifying privileged documents***. Plaintiffs have been unwilling to consider Defendants' proposals to lessen the burden associated with voluminous privilege logs. Instead, Plaintiffs' only response is to suggest that a requesting party be allowed to take a "quick peek" at a producing party's documents so that the requesting party may confirm *privilege*, without any good-faith basis to allege that a producing party has improperly withheld responsive, unprivileged documents. *See supra* Part III (Plaintiffs' Position).

At bottom, Plaintiffs' Protocol is wholly unsupported; indeed, Plaintiffs concede there is no support other than "Plaintiffs[] counsels' collective experience." But Plaintiffs' prior, personal experiences are an insufficient basis to wrest from a producing party its right to cost-effectively and efficiently manage its discovery obligations without undue, disproportionate intrusions from the requesting party.

**B.    Defendants' Proposed Protocol**

In contrast, Defendants' Protocol derives from ESI protocols entered in similarly complex antitrust cases, enables producing parties to meet their discovery obligations efficiently, and facilitates flexible, transparent negotiations among the parties with respect to both the steps a producing party takes and the requests a responding party may make as discovery unfolds. To the extent not already addressed, Defendants respond to the issues raised by Plaintiffs below.

1.    *The Parties Must Have Flexibility to Use TAR with Keywords*

Plaintiffs make the nonsensical argument that Defendants should not use TAR to review documents within a dataset if keywords were used to create the dataset. It very well may make sense to use both search terms and a TAR protocol. And Plaintiffs offer no basis—at this early juncture, before any party even has an estimate of its total collection volume—to prohibit the use of TAR after search-term culling.

Plaintiffs' conflate the process of filtering a company's ESI in order to collect a manageable and proportionate dataset to be reviewed with the process of reviewing the documents within that dataset. In the first instance, keywords are often applied against the company's ESI in order to narrow the dataset that is ultimately hosted in a document review platform (at escalating per gigabyte charges).[6] In the second instance, the manner in which those documents are reviewed can be accomplished in a variety of ways ranging from hiring contract attorneys to review every document and make subjective coding decisions to the more advanced, combined use of human review and TAR. It is for these reasons that the Sedona Principles insist that a producing party should have the flexibility to decide how to identify and produce responsive documents, and why Plaintiffs' Proposal is misguided and unworkable. *See The Sedona Principles: Second Edition* (June 2007); *see also Hyles v. New York City*, 2016 WL 4077114, *3 (S.D.N.Y. Aug. 1, 2016). Plaintiffs offer no justification to deviate from these standards here.

2.    *Parameters for Privilege Logs*

---

[6] Defendants are prepared to provide the court with further detail on these costs if requested.

Courts routinely acknowledge the tremendous expense incurred by litigants in creating privilege logs. *See, e.g.*, Committee Note to S.D.N.Y. Local Civil Rule 26.2 ("With the advent of electronic discovery and the proliferation of e-mails and e-mail chains, traditional document-by-document privilege logs may be extremely expensive to prepare, and not really informative to opposing counsel and the Court."). It is one of the most burdensome aspects of modern-day discovery, particularly in a complex antitrust case. In order to defray these costs, and consistent with the guidance of federal courts, Defendants have proposed that certain categories of communications involving a party's litigation counsel need not be logged. Defendants have limited this proposal to communications involving a party's (i) outside counsel and (ii) "in-house counsel <u>responsible for litigation matters</u>." Plaintiffs are not prejudiced by Defendants' proposal because they retain the right to later request that Defendants log certain communications. These limitations were recently approved by the court in *Blue Cross Blue Shield Antitrust Litigation*. (*See* Ex. 6.B at ¶ IV.c.ii.) Plaintiffs have rejected the entire concept, even though excluding certain counsel communications is recognized as an effective method for curtailing logging expenses.[7]

Requiring defendants to log all communications—including every communication with outside counsel—is unreasonably burdensome given the strong likelihood that such documents are, in fact, subject to legitimate privilege claims. Additionally, Plaintiffs' suggestion that they be permitted a "quick peek" to review Defendants' documents and evaluate Defendants' privilege claims is unworkable and nothing more than an attempt to impermissibly invade Defendants' privilege.

### 3. <u>Irrelevant Email Attachments Should Not Be Permitted</u>

Defendants propose only that the parties be allowed to withhold from production *non-responsive* attachments. Such provisions have been ordered by courts in other complex antitrust litigations. *See, e.g.*, *In re: Domestic Drywall Antitrust Litig.*, No. 13-md-2437 (ECF 54 at ¶ C.7.) (E.D. Pa.); *In re Aggrenox Antitrust Litig.*, No. 14-md-2516 (ECF 235 at ¶ E.3.m.) (D. Conn.). There are strong reasons for a similar order here. ***First***, the parties would only be withholding *non-responsive* attachments, and there is no reason to believe that the parties cannot determine whether an attachment is responsive. ***Second***, withholding attachments will make both document production and document review more efficient, not less, by reducing the number of pages produced. ***Third***, some parties may have a significant volume of confidential documents that have nothing do with this litigation. For example, Defendant Tyson Foods owns a number of non-poultry businesses, including Sara Lee, Hillshire Farm, and beef and pork businesses, and many documents related to these businesses are irrelevant here. Requiring parties to produce such irrelevant attachments unnecessarily injects competitively sensitive information into the case, contrary to amended Rule 26(c)(1)(G). Plaintiffs' objection that

---

[7] *See, e.g.*, Seventh Circuit Discovery Pilot Program Proposed CMO No. 2, at ¶ 1.1(b) (Alternative Logging Protocol) (available at http://bit.ly/2g3WNjU); Sedona Conference Commentary on Protection of Privileged ESI, at 158-162 (Dec. 2015) (available at http://bit.ly/2h1Skh9) (noting that producing parties are "best situated" to evaluate appropriate privilege logging techniques and explaining that "[t]he burden of identifying and logging privilege information can be substantially reduced by not having to identify and log privileged information from" custodians such as "outside litigation counsel or in-house counsel responsible for the litigation"); *cf. ABC v. Aereo, Inc.*, 2013 WL 139560, *1-2 (S.D.N.Y. Jan. 11, 2013) (ordering alternative privilege logging such as categorical exclusion of certain counsel communications to mitigate burden).

withholding non-responsive materials will "lead to inefficient motion practice" is wholly speculative. If Plaintiffs identify attachments that they believe should have been produced, Defendants will review those attachments in good faith and produce them if they are responsive, without the need for briefing.

4.   *Hit Count Reports Should Not Be Shared as a Matter of Course*

Plaintiffs seek to impose an across-the-board obligation to provide detailed "hit count" reports for search terms, which is unnecessary, inefficient, and inconsistent with the goals of the ESI Protocol. Plaintiffs' broad discovery requests may require hundreds of terms, and their proposal would increase the burden on Defendants by requiring an additional step for each term. Rather than increasing efficiency, the reports would provide a pretext for manufactured discovery disputes when "hit counts" are less than expected or if a document production differed from a "hit count" volume. Contrary to Plaintiffs' characterization of their request as "routine," courts actually have declined to order parties to provide these types of reports without cause. *See, e.g. In re Domestic Drywall Antitrust Litig.*, Case No. 13-MDL-2437 (E.D. Pa. 2013), Hearing Tr., 66-67, Nov. 21, 2013 (declining to require hit reports prior to production and review of documents); *Integrated Serv. Solutions, Inc. v. Rodman*, 2008 WL 4791654, *3 (E.D. Pa. Nov. 3, 2008) (denying request for report containing "the search results for each search term" and other information because there was no showing of bad faith or indicia of unreliability as to the discovery at issue). Tellingly, Plaintiffs fail to cite any authority in which a court required a party to provide hit counts as a matter of course. Instead, they rely on a case involving the sufficiency of an undefined search process in the FOIA affidavit context (*Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 877 F. Supp. 2d 87 (S.D.N.Y. 2012) and a sanctions case in which the Court based its ruling on the fact that a party "never discussed with Plaintiffs which search terms to use." *In re Seroquel Prods. Liab. Litig.*, 244 F.R.D. 650, 664 (M.D. Fla. 2007). Rather than suggesting "hit reports" are required or even productive in the context of search term negotiations, these two cases at best support the proposition that disclosure of search terms is part of the discovery process – a proposition well-represented in Defendants' Protocol, which provides for disclosure of planned search terms.

5.   *Other Issues*

The additional issues raised by Plaintiffs are equally without merit. **First**, Plaintiffs propose an extremely short deadline—just 48 hours—for an ESI Liaison to respond to a discovery inquiry. Not only is their proffered precedent for this request an order entered nearly three years after ruling on motions to dismiss and in the context of ongoing discovery disputes, *see In re Potash Antitrust Litig. (II)*, No. 1:08-cv-06910, ECF No. 372, but also including such a provision in the ESI Protocol is an unreasonable, disproportionate attempt to control a producing party's process. Without good cause to allege undue delays, Plaintiffs have no basis to impose such strictures on a producing party attempting to get them answers. **Second**, Plaintiffs again seek to insert themselves into a producing party's process to identify and produce responsive documents by imposing a deadline to produce paper documents. Plaintiffs offer no support for their suggestion that paper documents are either a unique aspect of discovery or required early in the process.

IV.     **SCHEDULING OF RULE 16 CONFERENCE**

The parties will be prepared to discuss a date for the Rule 16 Conference.


V.      **RENEWED MOTION TO APPOINT SEPARATE INTERIM CLASS COUNSEL FOR INDIRECT PURCHASER CONSUMERS (ECF NO. 218)**

Pursuant to the Court's December 1, 2016, Minute Entry (ECF No. 223), this motion will be heard at the status hearing.


Date: December 7, 2016


/s/ *Steven A. Hart*
Steven A. Hart (#6211008)
Brian Eldridge (#6281336)
Kyle Pozan (#6306761)
HART MCLAUGHLIN & ELDRIDGE, LLC
121 West Wacker Drive, Suite 1050
Chicago, IL 60601
Telephone: (312) 955-0545
Facsimile: (312) 971-9243
shart@hmelegal.com
beldridge@hmelegal.com
kpozan@hmelegal.com

*Direct Purchaser Plaintiffs Interim Liaison Class Counsel*
W. Joseph Bruckner
Heidi M. Silton
Elizabeth R. Odette
Brian D. Clark
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:  (612) 339-6900
Facsimile:  (612) 339-0981
wjbruckner@locklaw.com
hmsilton@locklaw.com
erodette@locklaw.com
bdclark@locklaw.com

Bruce L. Simon
Aaron M. Sheanin
PEARSON, SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com
asheanin@pswlaw.com

*Direct Purchaser Plaintiffs Interim Co-Lead
Class Counsel*

Kenneth A. Wexler
Edward A. Wallace
Thomas A. Doyle
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
kaw@wexlerwallace.com
eaw@wexlerwallace.com
tad@wexlerwallace.com

*Indirect Purchaser Plaintiffs Liaison Counsel*
Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua R. Rissman
Brittany N. Resch
**GUSTAFSON GLUEK PLLC**
220 South Sixth Street, #2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsongluek.com

Steven N. Williams
COTCHETT, PITRE & MCCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
swilliams@cpmlegal.com

*Indirect Purchaser Plaintiffs Interim Co-Class Counsel*

/s/ *Stephen Novack*

Stephen Novack
Stephen J. Siegel
Christopher S. Moore
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900
snovack@novackmacey.com
ssiegel@novackmacey.com
cmoore@novackmacey.com

*Counsel for Defendants Koch Foods Incorporated, JCG Foods of Alabama LLC, JCG Foods of Georgia LLC and Koch Meat Co., Inc.*


/s/ *J. Mark Gidley*

J. Mark Gidley
Peter J. Carney
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355
mgidley@whitecase.com
pcarney@whitecase.com

Robert A. Milne
David H. Suggs
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
rmilne@whitecase.com
dsuggs@whitecase.com

*Attorneys for Defendants Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Breeders, Inc., Tyson Poultry, Inc.*

/s/ *Kevin J. Arquit*
Kevin J. Arquit
Andrea B. Levine
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 355-2502
karquit@stblaw.com
alevine@stblaw.com

Clayton E. Bailey
BAILEY BRAUER PLLC
8350 N. Central Expressway, Ste. 935
Dallas, TX 75206
Telephone: (214) 360-7433
Facsimile: (214) 360-7424
cbailey@baileybrauer.com

Michael L. McCluggage
EIMER STAHL LLP
224 South Michigan Avenue, Ste. 1100
Chicago, IL 60604
Telephone: (312) 660-7665
mmccluggage@eimerstahl.com

*Attorneys for Defendant Pilgrim's*
*Pride Corporation*

/s/ *Kristin B. Ives*
Kirstin B. Ives
FALKENBERG FIEWEGER & IVES, LLP
30 N. LaSalle St., Suite 4020
Chicago, IL 60602
kbi@ffilaw.com

J. Douglas Baldridge
Lisa Jose Fales
Danielle Foley
VENABLE LLP
575 7th Street, NW
Washington, DC 20004
jdbaldridge@venable.com
ljfales@venable.com
drfoley@venable.com

*Attorneys for Defendant Perdue Farms, Inc.*

/s/ *Daniel E. Laytin*
Daniel E. Laytin, P.C.
Christa C. Cottrell
Martin L. Roth
Stacy Pepper
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000
dlaytin@kirkland.com
ccottrell@kirkland.com
martin.roth@kirkland.com
stacy.pepper@kirkland.com

*Attorneys for Defendants Sanderson Farms,*
*Inc., Sanderson Farms, Inc. (Processing*
*Division), Sanderson Farms, Inc. (Production*
*Division) & Sanderson Farms, Inc. (Foods*
*Division)*

/s/ *Christopher E. Ondeck*
Christopher E. Ondeck
Adrian Fontecilla
Stephen R. Chuk
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., NW
Suite 600 South
Washington, DC 20004
Telephone: (202) 416-6800
Fax: (202) 416-6899
condeck@proskauer.com
afontecilla@proskauer.com
schuk@proskauer.com

*Attorneys for Wayne Farms LLC*


/s/ *Amy Lee Stewart*
Amy Lee Stewart
ROSE LAW FIRM
120 East Fourth Street
Little Rock, AR 72201
Direct: (501)377-0334
www.roselawfirm.com
astewart@roselawfirm.com

*Attorneys for Defendants Mountaire Farms,*
*LLC and Mountaire Farms of Delaware, Inc.*

/s/ *Patrick Fitzgerald*
Patrick Fitzgerald (#6307561)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
155 N. Wacker Drive
Chicago, IL 10036
Telephone: (312) 407-0700
Facsimile: (312) 407-0411
patrick.fitzgerald@skadden.com

Boris Bershteyn
Sam Auld
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
boris.bershteyn@skadden.com
sam.auld@skadden.com

*Counsel for Defendant Peco Foods, Inc.*

/s/ *Gregory G. Wrobel*
Gregory G. Wrobel (#3122900)
VEDDER PRICE P.C.
222 N. LaSalle Street
Chicago, IL 60601
Telephone:  312-609-7722
Facsimile:  312-609-5005
gwrobel@vedderprice.com

Henry W. Jones, Jr.
JORDAN PRICE WALL GRAY JONES &
CARLTON, PLLC
1951 Clark Avenue
Raleigh, NC 27605
Telephone:  919-828-2501
Facsimile:  (919) 834-8447
hjones@jordanprice.com

*Attorneys for Defendant House of Raeford Farms, Inc.*

/s/ *Lynn H. Murray*
Lynn H. Murray
Andrew M. Meerkins
SHOOK HARDY & BACON LLP
111 S. Wacker Dr.
Ste. 5100
Chicago IL 60606
312-704-7700
lhmurray@shb.com
ameerkins@shb.com

*Attorneys for Defendant Simmons Food, Inc.*


/s/ *Brendan J. Healy*
Brendan J. Healey
MANDELL MENKES LLC
One North Franklin, Suite 3600
Chicago, IL 60606
(312) 251-1006 (T)
(312) 759-2189 (F)
bhealey@mandellmenkes.com

B. Parker Miller (*pro hac vice* pending)
Valarie C. Williams (*pro hac vice* pending)
Nowell D. Berreth (*pro hac vice* pending)
Max Marks (*pro hac vice* pending)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000 (T)
(404) 881-7777 (F)
parker.miller@alston.com
valarie.williams@alston.com
nowell.berreth@alston.com
max.marks@alston.com

R. Brent Hatcher, Jr. (*pro hac vice* pending)
SMITH, GILLIAM, WILLIAMS & MILES PA
301 Green Street NW, Suite 200
Gainesville, GA 30501
(770) 536-3381 (T)
(770) 535-9902 (F)
bhatcher@sgwmfirm.com
cfranklin@sgwmfirm.com
*Attorneys for Fieldale Farms Corporation*

/s/ *Sondra A. Hemeryck*
Sondra A. Hemeryck
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, IL  60602
(312) 471-8700
shemeryck@rshc-law.com

William L. Greene
Ruth S. Shnider
STINSON LEONARD STREET LLP
150 South Fifth Street, Suite 2300
Minneapolis, MN  55402
(612) 335-1500
william.greene@stinson.com
ruth.shnider@stinson.com

Gary V. Weeks
K.C. Dupps Tucker
Kristy E. Boehler
THE LAW GROUP OF NORTHWEST
ARKANSAS LLP
1830 Shelby Lane
Fayetteville, AR  72704
(479) 316-3760
gary.weeks@lawgroupnwa.com
kc.tucker@lawgroupnwa.com
kristy.boehler@lawgroupnwa.com

*Attorneys for Defendants George's, Inc. and
George's Farms, Inc.*

/s/ *John P. Passarelli*
John P. Passarelli
James M. Sulentic
KUTAK ROCK LLP
1650 Farnam Street
Omaha, NE  68102
Telephone: (402) 346-6000
Facsimile: (402) 346-1148
john.passarelli@kutakrock.com
james.sulentic@kutakrock.com

J.R. Carroll
Scott Jackson
KUTAK ROCK LLP
234 East Millsap Road
Suite 200
Fayetteville, AR  72703-4099
Telephone: (479) 973-4200
Facsimile: (479) 973-0007
jr.caroll@kutakrock.com
scott.jackson@kuakrock.com

Kimberly M. Hare (#6323326)
KUTAK ROCK LLP
One South Wacker Drive
Suite 2050
Chicago, IL  60606-4614
Telephone: (312) 602-4100
Facsimile: (312) 602-4101
kimberly.hare@kutakrock.com

*Attorneys for Defendants O.K. Foods, Inc.,*
*O.K. Farms, Inc., and O.K. Industries, Inc.*

/s/ *Carmine R. Zarlenga*
Carmine R. Zarlenga, #90784529
William H. Stallings
Oral D. Pottinger
MAYER BROWN LLP
1999 K Street N.W.
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
czarlenga@mayerbrown.com
wstallings@mayerbrown.com
opottinger@mayerbrown.com

*Attorneys for Defendant Foster Farms, LLC*