**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To:<br><br>All Indirect Purchaser Plaintiff Actions | Case No. 1:16-cv-08637 |

**INDIRECT PURCHASER PLAINTIFFS' RESPONSE IN OPPOSITION TO RENEWED MOTION TO APPOINT SEPARATE INTERIM CLASS COUNSEL FOR INDIRECT PURCHASER CONSUMERS**

Interim Class Counsel for the Indirect Purchaser Plaintiffs, Gustafson Gluek PLLC and Cotchett, Pitre & McCarthy, LLP request that the Court deny the "renewed" motion of Steve W. Berman of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and Kit A. Pierson of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") to be appointed separate class counsel for indirect purchaser consumers ("Renewed Motion").

The Renewed Motion should be dismissed for what it is: a facially invalid Rule 59 motion for reconsideration. The Renewed Motion raises nothing new, suggests that this Court did not already seriously consider the arguments made, and has caused further delay to the litigation, something this Court sought to avoid when it appointed Interim Class Counsel and held a comprehensive case management conference. But even if the Court considers the issue again, the motion should be denied. Class Counsel is prepared to provide a more fulsome response as to the ethics issues if the Court desires, accompanied by an expert declaration. The motion, however, should be denied outright.

First, the Renewed Motion should be denied because it is nothing more than a motion for reconsideration of the Court's Order appointing interim class counsel. ECF No. 144. "[M]otions for reconsideration are disfavored." *HCP of Illinois, Inc. v. Farbman Grp. I, Inc.*, 991 F. Supp.

1

2d 999, 1000 (N.D. Ill. 2013) (cautioning against a "permissive attitude toward attempts by losing parties to have another go at it."). This is particularly true when there is no "newly discovered evidence or . . . manifest error of law or fact." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Here, the only purported "new" development is that the Second Consolidated Amended Complaint ("SCAC") alleges that all indirect purchasers suffered antitrust impact, i.e. that the overcharges stemming from the alleged anticompetitive conduct impacted all levels of the distribution chain. SCAC ¶ 382. This is not a new development at all, and was a fact that all parties were aware of when the prior motion to appoint interim lead counsel was briefed to the Court. *See* Order, ECF No. 144, at 5 (considering and rejecting movants' identical argument, "Consumer end user counsel contend that indirect reseller counsel will attempt to show their clients suffered damages by not passing through the entirety of an inflated price to consumer end users. Consumer end user counsel, seeking to maximize the amount of damages their clients suffered, will attempt to show that all or most of the price increase was passed on to them.").

One need only compare the briefing that movants submitted previously with the briefing that is being submitted now to see that all the same arguments and authorities are being presented to the Court that were presented before. The Court considered these arguments, and rejected them. Other than the newly-acquired expert declaration – which moving counsel could have, but did not, submit previously – there is nothing new here. In contrast to the Court's instruction, "that if a conflict arises as to the interests of the indirect resellers and the consumer end users, it will be much later in the litigation," movants waited only weeks to renew their motion, with no material changes having occurred. Order, ECF No. 144, at 5.

Second, perhaps unfamiliar with the broiler industry, the Renewed Motion wrongly characterizes all indirect purchasers as either consumers or resellers, and claims the two groups are hopelessly pitted against each other. Even if there is a potential future conflict between consumers and resellers (which the Court has already considered and ruled on), the majority of indirect purchasers would not be impacted. A significant portion of Defendants' sales are made directly to large chain grocery stores or club stores (direct purchasers), and those purchasers sell directly to consumers. SCAC ¶ 381. So there are no indirect purchaser resellers involved in the transaction who would potentially be in conflict with the consumers. Another sales channel is via direct purchaser distributors, who then sell to a variety of indirect purchasers, such as restaurants and other food preparers. *Id.* There is no potential conflict between food preparers and end-user consumers, because neither the SCAC nor the original consumer-only complaints sought damages on behalf of consumer purchases of chicken sold to consumers as prepared meals. SCAC ¶ 369 (stating "Further excluded from the Classes and National Injunctive Relief Class are purchases of value added products not manufactured, supplied or processed by Defendants, or otherwise not under the control of Defendants."); *Percy, et al. v. Koch Foods, et al.*, 16-cv-08931, ECF No.1, ¶ 64 (excluding from definition of "Broilers" chicken "sold for resale to be used as an ingredient in a value added product or serving").

Third, creating a consumer sub-class would prejudice all indirect purchasers by upsetting the motion to dismiss briefing schedule and other agreed upon deadlines in the Initial Case Management Order. The Court and the parties have already spent substantial resources establishing deadlines for many tasks and working to accomplish those deadlines. Revisiting the established leadership now will not only disrupt all of that work but also add a fourth set of decision-makers at every turn, resulting in inefficiency and delay throughout the course of the

3

litigation, while benefitting only the movants' lawyers. *See* Order, ECF No. 144, at 4 ("More lead counsel means higher attorney's fees, as sure as night follows day."). Indeed, the Renewed Motion is already interfering with progress as Defendants just this week have cited the "uncertainty" in leadership as justification for their refusal to agree to deadlines in the ESI Protocol. Unfortunately, the Renewed Motion also negatively affects the indirect class by unfairly criticizing the sufficiency of the allegations of the SCAC. If the sufficiency of those allegations is to be tested, it should be by defendants, not by counsel claiming to represent absent class members.

Although moving counsel claim to have "led" the investigation of these cases, it is apparent that they simply appropriated the work done by Interim Lead Counsel. Nor, as they maintain, are they the only firms to represent consumers. Other firms representing consumers are working cooperatively with Interim Lead Counsel and none of them have sought to disrupt or damage the prosecution of this case on behalf of all indirect purchasers.

Fourth, courts have rejected similar motions under similar circumstances for the reasons this Court already found in rejecting this motion the first time. In *In re: Disposable Contact Lenses Antitrust Litigation*, 15-md-2626 (M.D. Fl.), movants were not selected to lead a putative antitrust class action and chose not to work cooperatively with class counsel for the benefit of the class but instead renewed their motion to be appointed lead counsel, claiming to represent a distinct class from class counsel. The court found that these counsel sought to create a "false distinction," as movant's counsel do here. In denying the motion, the court concluded appointment of separate counsel "needlessly complicates this litigation and leads to an inefficient prosecution of this action." ECF No. 242 (June 6, 2016), attached as Exhibit A. Moreover, in another recent case where a court made the same type of ruling concerning interim leadership

4

that this Court made, moving counsel was criticized for putting its own leadership aspirations over the best interests of the class. *In re Parking Heaters Antitrust Litig.*, 310 F.R.D. 54, 58 (E.D.N.Y. 2015) ("But the fact that the firm would consider withholding its expertise from the class leadership if it is not appointed by itself to that role — a threat Hagens Berman made explicit at oral argument — raises some doubts about how well the firm would represent the interests of class members other than its own clients if given such exclusive authority. While the efficiency of a sole leader may have its advantages, they appear in this case to be outweighed by the risk of internal strife within the putative class if Hagens Berman is appointed interim lead counsel . . .").

At footnote 10 of the Renewed Motion, moving counsel imply, without directly stating, that in a different case Cotchett Pitre had a conflict of interest and breached the duty of loyalty to its clients. Moving counsel cite to *Lewis v. National Football League,* 146 F.R.D. 5 (D.D.C. 1992), a case in which Cotchett Pitre was not involved, apparently seeking to create the implication that Cotchett Pitre engaged in the type of conduct that was criticized by the court in that case. This statement by moving counsel is not correct and has no factual basis. First, neither moving counsel are counsel to any party in the *Capacitors* case to which they refer. Second, to the extent that moving counsel are complaining that the court in that case appointed one firm to represent all indirect purchasers rather than separate firms, they should address that complaint to the Hon. James Donato, as Cotchett Pitre did not move to represent all indirect purchasers; it was Judge Donato's decision to make that appointment. Third, no one in the *Capacitors* case has ever claimed that counsel for the indirect purchasers in that case had a conflict of interest or violated the duty of loyalty – not the Court, not the putative class members, not counsel, and not

5

anyone else.  It is only moving counsel here – strangers to the *Capacitors* case – who have made this allegation.

*Fifth*, moving counsel repeat the argument they previously made that the "trend" of courts is to address the issue presented in their motion at the leadership stage, citing cases including *In re Auto. Wire Harness Sys. Antitrust Litig.,* MDL 2311 (E.D. Mich.) and *In re Vehicle Carriers Servs. Antitrust Litig.,* No. 13-cv-3306, ECF No. 106 (D.N.J. Mar. 3, 2014). Like their other arguments, this is simply an improper motion for reconsideration – this paragraph of the present motion is a word-for-word cut and paste from page 14 of the same counsel's initial motion to be appointed lead counsel (*see* ECF No. 117 at 14).  As to the merits of this argument, it is at best disingenuous and at worst intentionally misleading because none of those courts considered the issue presented in this motion.  In those cases, there were *only* motions for separate leadership within the indirect groups.  No one sought to be appointed lead for the indirect groups as a whole, and as a result none of those courts were asked to consider the question which this Court previously decided and which movants now ask this Court to reconsider.  In contrast, the only courts which considered the issue concluded no conflict existed. *See In re Parking Heaters*, 310 F.R.D. at 58-59 (concluding there was no conflict if one counsel represented resellers and end user indirect purchasers); *In re Capacitors Antitrust Litigation,* no. 3:14-cv-03264-JD, ECF No. 319 (N.D. Cal.), Exhibit C to Declaration of Daniel E. Gustafson, ECF No. 116 at 2.

Likewise, movants' reliance on *OSB* and *the Payment Card Interchange Fee* cases is misplaced.  In *OSB*, the court did not hold that the pass-through position taken by lead counsel created a conflict.  *In re OSB Antitrust Litigation*, 2007 WL 2253425, at *4-5 (E.D. Pa. Aug. 3, 2007).  The court merely held that three of the named representatives were inadequate because

6

they gave factual testimony inconsistent with the class's impact and damages theory. *Id.* at 5. More important for the issue before this Court, the *OSB* court was not asked to address whether any potential conflict could be resolved at a later stage, such as allocation. *See In re OSB Antitrust Litigation*, 2007 WL 2253425, at *4-5 (E.D. Pa. Aug. 3, 2007) (noting that at the time, "there is no conflict that would prevent counsel from adequately representing the class. *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001) (speculative conflicts at the class certification stage should be disregarded); *Hanrahan v. Britt*, 174 F.R.D. 356, 364 (E.D. Pa. 1997) (same).").

In *the Payment Card Interchange Fee* case the Second Circuit's finding of a conflict between settlement classes was strictly limited to situations where there was a manifest tension between one class that was seeking to maximize monetary relief for past harm – a (b)(3) damages class – and one class that was seeking to maximize future relief – a (b)(2) injunctive class. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 233-34 (2d Cir. 2016). Importantly, the Second Circuit made clear that its decision was based on the particulars of the case at hand – including that many members of the (b)(2) class would receive no relief under the settlement and did not have the ability to opt-out, explicitly stating that "[n]one of this is to say that (b)(3) and (b)(2) classes cannot be combined in a single case, or that (b)(3) and (b)(2) classes necessarily and always require separate representation." *Id.* at 235-36; *see also id.* at 238 ("Merchants in the (b)(2) class that accept American Express or operate in states that prohibit surcharging gain no appreciable benefit from the settlement, and merchants that begin business after July 20, 2021 gain no benefit at all."). In contrast, here all indirect purchasers are seeking to maximize monetary damages for past harm and, therefore, none of the conflicts presented in *Payment Card Interchange Fee* exist.

Sixth, movants insinuation that consumers in *DRAM* were inadequately represented during allocation is baseless. *See* Renewed Motion at 10-11 ("Consumers are entitled to counsel loyal to them and able to engage an expert to prove that the overcharge was overwhelmingly, if not entirely, incurred by Consumers."). During the allocation process in that case, consumers were represented by both co-lead counsel and numerous state attorneys general. Separate allocation counsel was appointed for the resellers, and both groups retained experts to analyze the issue of pass-through. As the Special Master held, the "plan of allocation and distribution was the result of arm's length negotiations between counsel representing the interests of resellers and end-buyers." *See DRAM Report and Recommendations of Special Master*, ¶ 25, Exhibit B to Declaration of Daniel E. Gustafson, ECF No. 116 at 14; *see also id.* at ¶¶ 24-28, 201-262, 13-15, 112-142.

Finally, Interim Class Counsel believes that the Court's order appointing leadership was correct, and that no factual circumstances have changed. Adding an opinion from ethics counsel, the basis of which is almost entirely drawn from instructions by moving counsel, does not change that fact. Should the Court want Interim Class Counsel to respond to that ethics opinion, so as to evaluate the merits of movants' motion, Interim Class Counsel request a short period of time to accomplish that task.

## CONCLUSION

The Renewed Motion raises nothing new. The Court's Order (ECF No. 144) appointing class counsel was correct. The Renewed Motion should be denied.

Dated: December 7, 2016                    /s/ Thomas A. Doyle

Kenneth A. Wexler
Edward A. Wallace
Thomas A. Doyle
**WEXLER WALLACE LLP**
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
kaw@wexlerwallace.com
eaw@wexlerwallace.com
tad@wexlerwallace.com

*Interim Liaison Counsel on Behalf of Indirect Purchasers*

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua R. Rissman
Brittany N. Resch
**GUSTAFSON GLUEK PLLC**
220 South Sixth Street #2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsongluek.com

Joseph W. Cotchett
Steven N. Williams
Joyce Chang
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
jcotchett@cpmlegal.com
swilliams@cpmlegal.com
jchang@cpmlegal.com

*Interim Co-Class Counsel on Behalf of Indirect Purchasers*

## CERTIFICATE OF SERVICE

I certify that, on December 7, 2016, I caused a copy of the foregoing document to be served via the Court's ECF system on all Counsel who have appeared in the case.

/s/ Thomas A Doyle
_____

Thomas A. Doyle