# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br>This Document Relates To: All Actions | Case No. 1:16-cv-08637<br><br>**ORDER REGARDING DISCLOSURE OF INFORMATION** |

In addition to disclosures that will be made pursuant to Rule 26(a)(1),[1] the parties will disclose the following documents and/or information for the period from January 1, 2007 to September 2, 2016, to the extent such information exists and is readily available. To the extent not already disclosed pursuant to the parties' previous agreement on December 2, 2016, the parties will disclose the documents and/or information provided below no later than January 31, 2017. As part of these initial, limited disclosures, the parties need not disclose each document falling within items (a)-(b) or (e)-(f), but will disclose one document for each year at issue to the extent such documents exist and are readily available. Such disclosures will be subject to the parties' ability to supplement or amend these disclosures once discovery commences, and further subject to modification by any party upon a showing that complying with such disclosure would be unduly burdensome. By providing information pursuant to these disclosures, the parties do

---

[1] In making the disclosures pursuant to this order, a disclosing party is not making any representations regarding whether it may use any documents, people, or information in support of its claims or defenses and is not agreeing that the persons disclosed possess information relevant to the claims or defenses. The parties will make required disclosures under Rule 26(a)(1) consistent with the deadline for such disclosures established under the federal and local rules and/or an order of this Court. Further, Defendants' position is that they do not intend to create or expand any preservation obligations to automatically include any person or documents that may be identified in any disclosure required by this order.

not agree that any documents are discoverable or relevant and do not waive or limit their respective rights to object to, or oppose, any request for further disclosure or discovery.

a. **Organizational Charts:**

   i. **Defendants:** Organizational charts sufficient to show the names and titles of individuals with the following positions or responsibilities relating to broiler chickens:

   1. member of the board of directors;

   2. all executives with the title of Director, Vice President, or higher (such as SVP, CEO, COO, CFO, etc.), as well as their assistants or secretaries;

   3. investor and/or creditor relations;

   4. the person or persons (if any, and excluding any clerical-level or administrative-level personnel) who:

      a. have primary responsibility for managing or overseeing the reporting and transmitting of data directly to and from Agri Stats, Express Markets, Inc., Urner Barry, or USDA relating to Broiler pricing, hatchery supply flock, slaughter, inventory, export, or production levels;

      b. report Broiler pricing information to the Georgia Department of Agriculture in connection with the Georgia Dock price survey;

509450.7

2

    c. regularly receive the Agri Stats report entitled the "Bottom Line Report"; and

    d. have primary responsibility for analyzing data received from Agri Stats to identify data pertaining to specific competitors;[2]

5. the person or persons who supervise the department responsible for Broiler sales to, purchases from, trades with, or co-packing transactions with other Defendants or with Mar-Jac Poultry, Harrison Poultry, or Claxton Poultry (the "Producer Co-Conspirators");

6. all executives with the title of Director, Vice President, or higher, as well as certain limited executives with the title of Manager,[3] whose primary responsibilities include determining or setting Broiler pricing, hatchery supply flock, slaughter, inventory, export, or production levels, and who were an officer or board member of, or otherwise formally-designated participant (such as the member of a relevant committee) in any of the following:

    a. National Chicken Council
    b. United States Poultry & Egg Export Council
    c. U.S. Poultry & Egg Association

---

[2] Defendants do not concede that the data described in this subparagraph is transmitted to or received from any of the identified entities, and Defendants do not concede that it is possible to analyze Agri Stats data to identify data pertaining to specific competitors.

[3] Such Managers include only individuals whose position makes them the highest level executive overseeing a specific Broiler complex, but not individuals with the position of manager who report to such individuals.

       d. Georgia Poultry Federation
       e. North Carolina Poultry Federation
       f. Poultry Federation
       g. International Poultry Expo
       h. International Producers and Processors Expo
       i. International Poultry Council
       j. Overseas Distribution Solutions

7. all executives with the title of Director, Vice President, or higher, as well as certain limited executives with the title of Manager,[4] whose primary responsibilities include determining or approving a Defendant's own Broiler pricing, hatchery supply flock, slaughter, inventory, export, or production levels. For example, with respect to the number of eggs laid per week by Broiler breeders at a hatchery, the person (if any) who determines the specific number of eggs to be laid or hatched each week and/or communicates that number to the relevant hatchery manager or employee.[5]

Defendants may create a list of individuals with the job responsibilities listed above in lieu of a formal organizational chart, so long as such a list provides the individual's name, title, the time period during which they held that title, and for item (a)(i)(6) above, the name of the trade association attended and any committee memberships held.

---

[4] See fn. 3 regarding an explanation of this limitation.

[5] Defendants do not agree that any determinations or approvals described in this subparagraph are ever made or provided.

With respect to (a)(i)(4) through (a)(i)(7), to the extent that a particular position (e.g., Hatchery Manager, Complex Manager, Live Production Manager, etc.) at a Defendant's Broiler complexes or other facilities typically fulfills the particular job responsibility at issue, a Defendant may simply identify that position and the estimated number of individuals who have held that position during the relevant period.

ii. **Direct Purchaser Plaintiffs:** Organizational charts sufficient to show the names and titles of individuals with the following positions or responsibilities relating to the purchase of Broiler chickens:

1. Plaintiffs' claims and allegations in the DPP Second Consolidated Amended Complaint; and

2. Plaintiffs' purchase of Broilers, including executives with the title of Director, Vice President, or higher.

Plaintiffs may create a list of individuals with the job responsibilities listed above in lieu of a formal organizational chart, so long as such a list provides the individual's name, title, the time period during which they held that title.

iii. **Indirect Purchaser Plaintiffs:** Indirect Purchaser Plaintiffs that are businesses will disclose organizational charts (to the extent they exist) sufficient to show the names and titles of individuals with the following positions or responsibilities relating to the purchase of Broiler chickens:

1. have primary responsibility for analyzing the prices, supply levels, or availability of Broilers;

2. have primary responsibility for determining or approving the sale price of Broilers;

3. purchasing Broilers, including executives with the title of Director, Vice President, or higher; and

4. Plaintiffs' claims and allegations in the Commercial and Institutional Indirect Purchaser Plaintiffs' Third Amended Consolidated Class Action and End-User Consumer Plaintiffs' Consolidated Amended Class Action Complaints.

Plaintiffs may, but are not required to, create a list of individuals with the job responsibilities listed above in lieu of a formal organizational chart, so long as such a list provides the individual's name, title, the time period during which they held that title.

With respect to (a)(ii)(1) and (2), to the extent that a particular position at a Plaintiff typically fulfills the particular job responsibility at issue, a Plaintiff may, but is not required to, simply identify that position and the

estimated number of individuals who have held that position during the relevant period.

b. **Phone Directories:** Documents, such as phone directories, sufficient to show the office, fax, and cellphone number for the categories of individuals identified above in subparagraphs (a)(i)(1) through (a)(i)(5).[6]

c. **Email Systems:** Identification of the email system used, including the name of the email system, version number (including applicable dates for different versions, if readily available), and time period or number of days for which email is retained on the system.

d. **Non-custodial Data Sources:** A list of known non-custodial data sources (e.g. shared drives, servers, etc.), if any, likely to contain discoverable ESI. These lists will identify the databases that are likely to contain discoverable "structured data."

e. **Document Retention Policies:** Document retention and/or destruction policies in effect since January 1, 2007 to September 2, 2016.

f. **Employee Technology Use Policies:** Employee Technology Use Policies in effect since January 1, 2007 to September 2, 2016, including (if they exist) policies concerning use by employees of cellphones, notebook computers, and tablets for business purposes. Without intending to limit, such policies may go by the following names: bring-your-own device (BYOD) policies, choose-your-own-device (CYOD) policies, corporate-liable-employee-owned (CLEO) policies,

---

[6] Plaintiffs do not agree that their employees' phone numbers or phone records have any relevance to the antitrust price-fixing conspiracy alleged in this Action.

corporate-owned/personally enabled (COPE) policies, mobile-device-management (MDM) policies, and dual-use device policies. Plaintiffs and Defendants will disclose if they have no such policies.

g. **Phone Records**: Plaintiffs and Defendants will disclose if they have downloaded phone records from phone carriers and, if so, from which carriers they have downloaded such records, and the categories of phone records or specific phone numbers for which they have downloaded phone records.[7]

h. **Inaccessible Data**: A list of known data sources, if any, likely to contain discoverable ESI that a party asserts is not reasonably accessible under Rule 26(b)(B) or Rule 26(b)(2)(C)(i).

**SO ORDERED.**

Dated: 12/21/16

HON. JEFFREY T. GILBERT
U.S. Magistrate Judge

---

[7] Plaintiffs do not agree that their employees' phone numbers or phone records have any relevance to the antitrust price-fixing conspiracy alleged in this Action.