**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>All Actions | Civil Action No. 1:16-cv-08637<br><br>Hon. Thomas Durkin |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
PILGRIM'S PRIDE CORPORATION'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Contents**

INTRODUCTION ................................................................................................................................1

Argument ..........................................................................................................................................2

    I.   PLAINTIFFS' CLAIMS SEEKING TO IMPOSE LIABILITY BASED ON PILGRIM'S CONDUCT OCCURRING BEFORE THE BANKRUPTCY DISCHARGE MUST BE DISMISSED ................................................................................ 2

    II.  PLAINTIFF'S CLAIMS BASED ON THE PRE-DISCHARGE CONDUCT OF ALLEGED CO-CONSPIRATORS MUST BE DISMISSED .......................................... 3

        A.   Plaintiffs' Threadbare Allegations Fail To Show That Pilgrim's "Reaffirmed Its Participation" In The Alleged Conspiracy Post-Discharge ............................................................................................................. 3

        B.   The Plan And The Bankruptcy Code Preclude Plaintiffs From Recovering Pre-Discharge Damages Based On Joint And Several Liability Grounds ............................................................................................... 5

        C.   Pilgrim's Is Not Liable For Pre-Discharge Damages Because Plaintiffs Allege That The First Conspiracy Ended Before Pilgrim's Was Discharged ......................................................................... 8

Conclusion .......................................................................................................................................9

## TABLE OF AUTHORITIES

**Cases**

*Adams v. City of Indianapolis*,
   742 F.3d 720 (7th Cir. 2014) ................................................................................ 2

*Anderson v. Simon*,
   217 F.3d 472 (7th Cir. 2000) ................................................................................ 2

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................... 2, 5

*In re Buhay*,
   77 B.R. 561 (Bankr. W.D. Tex. 1987) .................................................................. 7

*In re Carlson*,
   545 B.R. 229 (Bankr. N.D. Ill. 2016) ................................................................... 7

*In re Heilman*,
   430 B.R. 213 (9th Cir. 2010) ................................................................................ 7

*In re Pilgrim's Pride Corp.*,
   728 F.3d 457 (5th Cir. 2013) ................................................................................ 6

*In re Ruben*,
   774 F.3d 1138 (7th Cir. 2014) .............................................................................. 7

*In re Travel Agent Com'n Antitrust Litigation*,
   583 F.3d. 896 (6th Cir. 2009) ........................................................................... 3, 4

*In re WorldCom, Inc.*,
   546 F.3d 211 (2d Cir. 2008) ............................................................................. 6, 7

*In re Zachary*,
   147 B.R. 881 (Bankr. N.D. Tex. 1992) ................................................................ 7

*Kleen Prods. LLC v. Int'l Paper Co.*,
   831 F.3d 919 (7th Cir. 2016) ................................................................................ 5

*Kleen Prods. LLC v. Int'l Paper*,
   306 F.R.D. 585 (N.D. Ill. 2015) ........................................................................... 7

*Scherr v. Marriott Int'l*,
   703 F.3d 1069 (7th Cir. 2013) .............................................................................. 2

*United States v. Inryco, Inc.*,
   No. Y-80-054, 1981 WL 2126 (D. Md. July 28, 1981) ....................................... 9

*United States v. Phelps Dodge Indus., Inc.*,
    589 F. Supp. 1340 (S.D.N.Y. 1984) .................................................................................. 8

*United States v. United States Gypsum Co.*,
    438 U.S. 422 (1978) ........................................................................................................... 8

*Williamson Oil Co., Inc. v. Philip Morris USA*,
    346 F.3d 1287 (11th Cir. 2003) ........................................................................................ 9

**Statutes**

11 U.S.C. § 1141 ............................................................................................................... 2, 7

11 U.S.C. § 523 ...................................................................................................................... 7

Defendant Pilgrim's Pride Corporation ("Pilgrim's") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Direct Purchaser Plaintiffs' Second Amended and Consolidated Class Action Complaint ("DPP SAC"), Dkt. No. 212, the Commercial and Institutional Indirect Purchaser Plaintiffs' Third Amended Consolidated Class Action Complaint ("C&I TAC"), Dkt. No. 253, and the End-User Consumer Plaintiffs' Consolidated Amended Class Action Complaint ("EUC Compl."), Dkt. No. 255, with prejudice under Federal Rules of Civil Procedure 8(a) and 12(b)(6), along with the Declaration of Michael S. McCluggage ("McCluggage Decl.").

## INTRODUCTION

Pilgrim's requests dismissal of all claims alleged against it by all Plaintiffs because they are barred by a bankruptcy court's discharge order entered on December 28, 2009. Indeed, Plaintiffs acknowledge the existence of the order in their respective complaints and are *not* arguing for the imposition of liability as a result of any conduct in which Pilgrim's may have engaged before its discharge from bankruptcy. Instead, Plaintiffs seek to circumvent the effect of the bankruptcy discharge order by asserting facts regarding Pilgrim's alleged post-discharge business activities, none of which indicate Pilgrim's conspired to or actually did reduce its supply of broilers. According to Plaintiffs, Pilgrim's "reaffirmed its participation" in the alleged conspiracy after exiting bankruptcy and thus Pilgrim's is liable under two different theories. First, Plaintiffs aver that Pilgrim's is liable for damages stemming from post-discharge conduct itself. Second, Plaintiffs contend that Pilgrim's post-discharge conduct gives rise to joint and several liability under the Sherman Act for pre-discharge damages relating to Pilgrim's alleged co-conspirators' conduct.

Neither of Plaintiffs' theories, however, is viable. Plaintiffs' claims against Pilgrim's must be dismissed because they fail to allege facts showing that Pilgrim's engaged in overt

conduct after the December 28, 2009 discharge order. Next, even if the Court determines that Plaintiffs pled sufficient facts showing that Pilgrim's participated in an antitrust conspiracy after December 28, 2009, which they have not, the discharge order bars any joint and several damages claim against Pilgrim's based on pre-discharge conduct by Pilgrim's alleged co-conspirators.

Plaintiffs could and should have asserted their claims during Pilgrim's bankruptcy case. Indeed, hundreds of others filed suit in the bankruptcy case contending that the same conduct at issue here—Pilgrim's idling of poultry processing plants and reducing poultry production before the discharge order—constituted anticompetitive conduct. But Plaintiffs chose not to pursue those claims when they were required to do so, and their claims are now barred.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS SEEKING TO IMPOSE LIABILITY BASED ON PILGRIM'S CONDUCT OCCURRING BEFORE THE BANKRUPTCY DISCHARGE MUST BE DISMISSED

Pilgrim's filed a petition for relief pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division ("Bankruptcy Court"). DPP SAC ¶ 39.A; C&I TAC ¶ 44.A; EUC Compl. ¶ 67.A. Pilgrim's exited chapter 11 after the Bankruptcy Court confirmed its plan of reorganization on December 28, 2009 (the "Plan").[1] The Plan discharged Pilgrim's from liability for all conduct before the Plan took effect on December 28, 2009. *See* 11 U.S.C. § 1141(d)(1)(A) (confirmation of a plan discharges a debtor from "any debt that arose before the date of confirmation"). This point is not in dispute as Plaintiffs admit they cannot seek to hold Pilgrim's liable for pre-discharge conduct.

---

[1] Attached as Exhibit A to the McCluggage Decl. is a true, correct, and authentic copy of the Plan. The Court may take judicial notice of materials cited in the complaint, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014), as well as matters of public record without converting a motion to dismiss into a motion for summary judgment. *See Scherr v. Marriott Int'l*, 703 F.3d 1069, 1073 (7th Cir. 2013); *Anderson v. Simon*, 217 F.3d 472, 475 (7th Cir. 2000).

2

*See* DPP SAC ¶ 39.C; C&I TAC ¶ 44.C (same); EUC Compl. ¶ 67.C (same). Thus, the Court should dismiss with prejudice all claims based on Pilgrim's conduct occurring before December 28, 2009.

## II. PLAINTIFF'S CLAIMS BASED ON THE PRE-DISCHARGE CONDUCT OF ALLEGED CO-CONSPIRATORS MUST BE DISMISSED

The Court should also dismiss with prejudice Plaintiffs' claims based on Pilgrim's alleged post-discharge conduct. Plaintiffs seek to circumvent the bankruptcy stay by claiming that Pilgrim's "reaffirmed its participation" in the alleged conspiracy after emerging from bankruptcy, and that Pilgrim's alleged "reaffirmation" makes it jointly and severally liable for the other Defendants' pre-discharge conduct. Plaintiffs are wrong on both counts. Plaintiffs allege no more than that Pilgrim's continued efficiency-enhancing practices developed while in bankruptcy. And even if Pilgrim's participated in any conspiracy post-discharge, which it did not, Plaintiffs' claims against Pilgrim's for pre-discharge damages are still barred.

### A. Plaintiffs' Threadbare Allegations Fail To Show That Pilgrim's "Reaffirmed Its Participation" In The Alleged Conspiracy Post-Discharge

Plaintiffs allege no facts that support Plaintiffs' conclusory assertion that Pilgrim's "reaffirmed membership" in the alleged conspiracy. DPP SAC ¶ 39.C; C&I TAC ¶ 44.C; EUC Compl. ¶ 67.C. For Pilgrim's to have rejoined the conspiracy, it must have committed some "overt act" in furtherance of the conspiracy after its discharge from bankruptcy. *See In re Travel Agent Com'n Antitrust Litigation*, 583 F.3d. 896, 902 (6th Cir. 2009). Plaintiffs do not adequately plead that Pilgrim's committed any such overt act, which defeats Plaintiffs' claims for both pre and post-discharge damages.

Specifically, Plaintiffs do not even allege that Pilgrim's reduced production after exiting bankruptcy. *Cf.* DPP SAC ¶¶ 198, 200, 204-205. Instead, the most Plaintiffs can muster are accusations that Pilgrim's closed a processing plant in Dallas, Texas in order to "consolidate that

3

production volume at three other plants and help those sites run closer to full capacity." *Id.* at ¶ 217. Similarly, Plaintiffs allege Pilgrim's announced layoffs (but not production cuts) at its Chattanooga, Tennessee deboning plant. *Id.* at ¶ 232. But Plaintiffs' allegations, and the source quoted in their Complaints, clearly establish that (1) the lay-offs were performed to "improve the efficiency of [the] plant," *id.* at ¶ 232; (2) Pilgrim's moved those "deboning operations to other plants in an effort to save on transportation costs"; and (3) "only the location of operations [was] changing, **not the company's output**."[2] Carey O'Neil, Pilgrim's Pride Announces 105 More Layoffs in Chattanooga, TIMES FREE PRESS, June 6, 2012. (quoted at DPP SAC ¶¶ 232) (emphasis added).[3]

The crux of Plaintiffs' claims is that Pilgrim's acted unlawfully because it did not ramp up production—thereby making itself unprofitable—immediately upon exiting bankruptcy. Indeed, Plaintiffs expressly state that Pilgrim's post-bankruptcy conduct was "consistent with the actions taken . . . throughout the Class Period"—*i.e.*, Pilgrim's cost-cutting practices during bankruptcy. DPP SAC ¶ 39.B; C&I TAC ¶ 44.B; EUC Compl. ¶ 67.B. But Pilgrim's "decision to maintain" an existing business strategy is not a new "overt act." *In re Travel Agent Comm'n*, 583 F.3d at 902. Thus, to the extent Pilgrim's took any action that resulted in a decrease in its supply of broilers—which Plaintiffs do not allege—the "final act to effectuate [the purported] conspiracy occurred . . . long before [Pilgrim's] emerged from bankruptcy." *Id.* at 902.

---

[2] Attached as Exhibit B to the McCluggage Decl. is a copy of the article referred to and cited by Plaintiffs: Carey O'Neil, *Pilgrim's Pride Announces 105 More Layoffs in Chattanooga*, Times FREE PRESS, June 6, 2012.

[3] Likewise, post-discharge quotes from Pilgrim's employees are insufficient to allege Pilgrim's reduced its supply of broilers post-discharge. *See, e.g.,* DPP SAC at ¶¶ 208, 229, 243-244, 250, 264, 269, 325, & 333. Rather, these quotes show that (1) Pilgrim's CEO and CFO did not know how breeder supply would change in the future (if at all)—something they undoubtedly would have known if Pilgrim's agreed to reduce broiler production, *see id.* at ¶ 244—and (2) that production was *increasing. Id.* at ¶ 264.

Plaintiffs appear to be trying to bring this case within the rubric of *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919 (7th Cir. 2016), *pet. for cert. filed* (U.S. Jan. 4, 2017) (No. 16-841). But this case is different from *Kleen* for multiple reasons. Most importantly, in *Kleen*, there were specific allegations supporting the assertion that the defendant, RockTenn, joined the conspiracy *after* exiting bankruptcy. *See* 831 F.3d at 930 ("For example, on the very evening of the day when the discharge order was entered, RockTenn's president sent an email stating 'I assume we are announcing tomorrow,' after three other defendants announced a simultaneous price increase."). Here, however, Plaintiffs' allegations fall far short of alleging Pilgrim's rejoined the alleged antitrust conspiracy after exiting bankruptcy. *See Twombly*, 550 U.S. at 557 ("[W]hen allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action"). Thus, Pilgrim's cannot be held liable (individually or jointly and severally) for any damages purportedly arising from the alleged conspiracy and all Plaintiffs' claims against Pilgrim's should be dismissed with prejudice.

### B. The Plan And The Bankruptcy Code Preclude Plaintiffs From Recovering Pre-Discharge Damages Based On Joint And Several Liability Grounds

Because Plaintiffs fail to allege that Pilgrim's rejoined the alleged antitrust conspiracy after the Plan's effective date, the Court may conclude its analysis here. But even if the Court finds Plaintiffs adequately allege that Pilgrim's rejoined the alleged conspiracy (which they do not), Plaintiffs cannot pursue their claims against Pilgrim's on a theory of joint and several liability for Pilgrim's alleged co-conspirators' conduct committed before the Plan's effective date.

The Plan explicitly discharges Pilgrim's "to the fullest extent permitted by section 1141 of the Bankruptcy Code" from "any and all Claims, rights, and liabilities that arose prior to the

Effective Date." (McCluggage Decl. Ex. A at ¶ 10.4.) The defined term "Claim" in the Plan refers to Section 101 of the Bankruptcy Code, thereby giving it the broadest definition. *Id.* ¶ 1.25. Accordingly, any claims that could have been asserted against Pilgrim's during the bankruptcy are now barred.

Claims that arise before discharge and continue after discharge are also barred by the Plan because they were required to be asserted against the bankruptcy estate rather than against the reorganized entity. *See In re WorldCom, Inc.*, 546 F.3d 211, 220 (2d Cir. 2008). The plaintiff in *WorldCom* sought damages for pre-discharge conduct on the grounds that the defendant had engaged in continued wrongful conduct (there a continuing trespass) after discharge. The Second Circuit rejected this theory, holding that it is "immaterial" whether the plaintiff was *required* to assert a claim before confirmation (for example, due to the applicable statute of limitations) "or merely would have been entitled to bring such an action at his election." *Id.* As long as the plaintiff was able to assert the claim against the bankruptcy estate, it was ripe, and the plaintiff must have pursued it against the debtor during bankruptcy or face discharge. *See id.* at 220-21.

Here, just as in *WorldCom*, Plaintiffs could have asserted these antitrust claims during the bankruptcy case. Indeed, many others did file suit in the Bankruptcy Court contending that the same conduct at issue here—Pilgrim's idling of poultry processing plants and reducing poultry production pre-discharge, *see* DPP SAC ¶ 187—constituted anticompetitive conduct. *See In re Pilgrim's Pride Corp.*, 728 F.3d 457, 459–60 (5th Cir. 2013).[4] Because Plaintiffs seek relief for

---

[4] Notably, the Fifth Circuit held that Pilgrim's had not engaged in any anticompetitive conduct, but rather "wisely decided to stop flooding the market with unprofitable chicken" after "[r]ecognizing the damage inflicted by its own excess production." *Id.* at 462.

claims that could have been asserted during Pilgrim's bankruptcy case, their claims are now barred by the Plan. *See WorldCom, Inc.*, 546 F.3d at 220-21.

Further, there is no exception to discharge for claims based on joint and several liability under the Bankruptcy Code. *See* 11 U.S.C. § 1141(d)(2); *see also* 11 U.S.C. § 523(a). To the contrary, such an exception would subvert Congress' primary purpose of a discharge—that is, to provide a debtor a fresh start and clean slate, *In re Ruben*, 774 F.3d 1138, 1141 (7th Cir. 2014)—and would create an end-run around the requirement that potential plaintiffs assert their claims during the bankruptcy proceeding and not after a defendant's discharge from bankruptcy. Because the very definition of conspiracy involves concerted action, and joint and several liability automatically attaches as to co-conspirators, any claim for joint and several liability based on pre-discharge conduct of co-conspirators accrued and was imputed to Pilgrim's prior to Pilgrim's discharge from bankruptcy. Therefore, any joint and several damages claim based on any pre-discharge conduct by co-conspirators is barred by the Plan. *See, e.g.*, *In re Carlson*, 545 B.R. 229, 232 (Bankr. N.D. Ill. 2016); *In re Heilman*, 430 B.R. 213, 219 (9th Cir. 2010); *In re Zachary*, 147 B.R. 881, 883 (Bankr. N.D. Tex. 1992); *In re Buhay*, 77 B.R. 561, 562 (Bankr. W.D. Tex. 1987).[5] Thus, by seeking to hold Pilgrim's jointly and severally liable for pre-discharge damages, Plaintiffs *are* seeking to violate the orders of the Bankruptcy Court—the same result Plaintiffs say they seek to avoid. *Cf.* DPP SAC ¶ 39.C; C&I TAC ¶ 44.C; EUC Compl. ¶ 67.C.

---

[5] The district court in *Kleen Prods. LLC v. Int'l Paper* wrote that "RockTenn would not be 'held liable' for its pre-discharge conduct" if it was held jointly and severally liable for its alleged co-conspirators' pre-discharge conduct. 306 F.R.D. 585, 608–09 (N.D. Ill. 2015) (J. Leinenweber). However, the Court made this statement based on general joint-and-several liability concepts and without reference to bankruptcy law. The Court did *not* address whether claims for joint-and-several liability were discharged under RockTenn's plan of reorganization, which is the issue Pilgrim's addresses here. *See id.*

C.  **Pilgrim's Is Not Liable For Pre-Discharge Damages Because Plaintiffs Allege That The First Conspiracy Ended Before Pilgrim's Was Discharged**

Not only are claims arising from pre-discharge conduct (by Pilgrim's or its alleged co-conspirators) barred by the Plan, but to the extent Plaintiffs sufficiently allege Pilgrim's participated in a conspiracy post-discharge, this alleged conspiracy is separate and distinct from the alleged conspiracy that took place prior to Pilgrim's discharge from bankruptcy. "Affirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators have generally been regarded as sufficient to establish withdrawal or abandonment," which terminates a conspiracy. *United States v. United States Gypsum Co.*, 438 U.S. 422, 464-465 (1978). Resumption of competitive activity is one such affirmative act that can demonstrate that a conspiracy has ended. *Id.*; *see also United States v. Phelps Dodge Indus., Inc.*, 589 F. Supp. 1340, 1362 (S.D.N.Y. 1984) ("[T]he resumption of competitive activity in the marketplace demonstrated that the conspiracy had disintegrated.").

The Complaints allege that competitive activity in the broiler industry resumed in 2009 and continued into 2010, while Pilgrim's was still in bankruptcy. *See* DPP SAC ¶ 193; C&I TAC ¶ 198; EUC Compl. ¶ 221 ("during late 2009 and early 2010, producers started *increasing* production") (emphasis added). Thus, by the time Pilgrim's was discharged from bankruptcy in December of 2009, the alleged conspiracy (if it ever existed) had already collapsed, resulting in a "reported oversupply of Broilers." *Id.*. Moreover, Plaintiffs do not allege that any Defendant, let alone Pilgrim's, took any action to reduce the supply of Broilers until more than a year after Pilgrim's was discharged from bankruptcy. *See* DPP CAC ¶ 195; C&I TAC ¶ 200; EUC Compl. ¶ 223.[6] In fact, starting in 2010 Pilgrim's market share actually *increased*. DPP CAC ¶ 286

---

[6] The first allegation that relates to Pilgrim's after its discharge from bankruptcy is Bill Lovette's presentation at the BMO Farm to Market Conference on May 17, 2011—more than 17 months after Pilgrim's exited bankruptcy. DPP ¶ 208.

(Figure); C&I TAC ¶ 291 (Figure); EUC Compl. ¶ 314 (Figure). These allegations negate any inference that a conspiracy existed when Pilgrim's was discharged from bankruptcy. *See Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1318 (11th Cir. 2003) ("[T]he very fact that there were significant market share shifts during this period of alleged industry-wide collusion strongly undermines appellants' conspiracy allegations.").

Thus, even if, as Plaintiffs allege, Defendants made a "second wave" of production cuts in 2011, and Pilgrim's "reaffirmed" its participation in the conspiracy shortly afterward, DPP SAC ¶¶ 39.B, 195, 208; C&I TAC ¶¶ 44.B, 200, 213; EUC Compl. ¶¶ 67.B, 223, 236, these allegations would only establish that a separate conspiracy began in 2011 that was not the same conspiracy that Plaintiffs allege existed during 2008 and 2009. *See United States v. Inryco, Inc.*, No. Y-80-054, 1981 WL 2126 (D. Md. July 28, 1981) (holding that a second conspiracy in the late 1970s was separate from an earlier conspiracy that collapsed in 1974). Thus, Pilgrim's alleged participation in any conspiracy beginning in 2011 does not make Pilgrim's liable for any damages caused by a separate, earlier conspiracy that ended pre-discharge.

## CONCLUSION

Plaintiffs have had numerous opportunities to plead a case against Pilgrim's and failed. They could have done so in Pilgrim's bankruptcy case, but did not do so. And they have filed numerous amended complaints in this case, but failed to satisfy their burden of pleading a claim upon which relief could be granted against Pilgrim's. Thus, Pilgrim's respectfully requests the Court to enter an order dismissing all claims against it with prejudice and granting Pilgrim's any other appropriate relief.

9

| | |
|---|---|
| Dated: January 27, 2017 | Respectfully submitted, |

                                            */s/ Michael L. McCluggage*
Michael L. McCluggage
**EIMER STAHL LLP**
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
mmccluggage@eimerstahl.com

—And—

Kevin Arquit
**WEIL GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
kevin.arquit@weil.com

—And—

Clayton E. Bailey
**BAILEY BRAUER PLLC**
8350 N. Central Expressway, Ste. 206
Dallas, Texas 75206
Telephone: (214) 360-7433
cbailey@baileybrauer.com

**ATTORNEYS FOR DEFENDANT
PILGRIM'S PRIDE CORPORATION**

## **CERTIFICATE OF SERVICE**

   I, Michael L. McCluggage, certify that on January 27, 2017, I filed a copy of the foregoing document electronically using the Court's CM/ECF system, which will generate notice of this filing to all counsel of record.

                */s/ Michael L. McCluggage*
                Michael L. McCluggage