**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION* | No. 1:16-cv-08637 |
| This Document Relates To: | |
| All Indirect Purchaser Plaintiff Actions | |

**COMBINED OPPOSITION TO JOINT MOTION TO DISMISS COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND END-USER CONSUMER PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**Page**

I. IPPS HAVE STANDING TO SEEK REDRESS FOR THE INJURIES
CAUSED BY DEFENDANTS' CONDUCT ...................................................................1

    A.     IPPs Have Article III Standing. ...................................................................1

    B.     Indirect Purchaser Plaintiffs have Antitrust Standing under *Illinois Brick*
State Repealer Laws and *Arc America*. ....................................................3

        1.     IPPs have antitrust standing in 26 *Illinois Brick*-Repealer States. ..............5

        2.     The *AGC* standing analysis does not apply to the IPPs' antitrust
claims in Repealer States. ...........................................................7

        3.     Even if *AGC* applied, Defendants' price-fixing conspiracy
caused the type of antitrust harm to plaintiffs that satisfies *AGC*. .............10

            a.     The overcharges paid by IPPs are the type of injury
Congress sought to redress. ...........................................11

            b.     IPPs allege a causal connection between Defendants'
conduct and the harm they suffered. ...............................11

            c.     IPPs allege the presence of improper motive. ................................12

            d.     IPPs' injuries flow directly from Defendants' conspiracy
to fix Broiler prices. .......................................................12

            e.     Recovery by IPPs under Repealer Statutes is not
duplicative of recovery under federal antitrust laws. .....................13

II. DEFENDANTS' MISCELLANEOUS STATE ANTITRUST ARGUMENTS
FAIL...........................................................................................14

    A.     Plaintiffs Allege a Sufficient Nexus to Intrastate Commerce under the
Laws of the District of Columbia, New York, and Wisconsin. ............................14

    B.     Pre-Filing Notice Provisions do not Support Dismissal of Plaintiffs'
Claims in Arizona, Rhode Island or Hawaii. ........................................16

    C.     IPPs' Claim under the Illinois Antitrust Act Is Not Subject to a
Procedural Class Action Bar ................................................................17

010636-11 944043 V1

III.   PLAINTIFFS HAVE STATED A VIABLE CLAIM UNDER EACH  STATE
       CONSUMER PROTECTION STATUTE...........................................................18

       A.     Plaintiffs' Consumer Protection Claims Satisfy Rule 8(a). ...................18

              1.     Plaintiffs' consumer protection claims are based on price-fixing
                     allegations and do not sound in fraud. ........................................18

              2.     Rule 9(b) does not apply to IPPs' consumer protection claims for
                     unlawful, unfair or unconscionable price-fixing practices. ......................20

              3.     IPPs sufficiently allege causation for their consumer protection
                     claims. ....................................................................................26

              4.     IPPs are not required to plead reliance and inducement. ..........................27

              5.     IPPs' allegations of a nationwide conspiracy are sufficient to
                     state a claim for relief under the consumer protection laws of
                     D.C., Florida, Illinois, Massachusetts, and New Hampshire. ...................27

       B.     IPPs Assert Price-Fixing Claims That Are Actionable under the
              Consumer Protection Laws. ..................................................................30

              1.     Allegations of price-fixing are actionable under consumer
                     protection laws of Arkansas, D.C., Michigan, Minnesota, New
                     Mexico, Nevada, North Dakota, Oregon, Rhode Island, South
                     Dakota, the Utah UPA, and the Utah CSPA..............................................30

              2.     Defendants' "Remoteness" Argument Fails. .............................................32

              3.     IPPs' Consumer Protection Claims are not barred by Illinois
                     Brick..................................................................................34

       C.     C&I Plaintiffs are Considered "Natural Persons" or "Consumers" under
              Nevada, Oregon, and Vermont Consumer Protection Statutes............................37

       D.     Rule 23 Permits IPPs to Pursue Their Montana and South Carolina
              Consumer Protection Claims in a Representative Capacity. ................................38

       E.     IPPs are Entitled to Restitution under California's UCL......................................39

IV.    PLAINTIFFS STATE RECOGNIZED CLAIMS FOR UNJUST
       ENRICHMENT ...............................................................................................40

       A.     Plaintiffs' Unjust Enrichment Claims Satisfy Rule 8(a).......................................40

              1.     Plaintiffs allege facts sufficient to support each element of their
                     unjust enrichment claims. ..........................................................40

2.      Plaintiffs need not allege that they conferred a direct benefit on Defendants. ...............................................................................40

3.      "Special Duty" is not an unjust enrichment element in either South Carolina or Illinois. ...........................................................42

B.      California, Mississippi, and New Hampshire Recognize Standalone Unjust Enrichment Claims. ...................................................................43

C.      Plaintiffs May Allege Both Unjust Enrichment and Claims at Law.....................44

D.      Unjust Enrichment Claims are not Barred by *Illinois Brick*. ................................44

V.      IPPS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS............46

A.      The Period of Limitations is an Affirmative Defense and Rarely a Good Reason for Dismissal. .........................................................................46

1.      IPPs' allegations are sufficient to invoke the discovery rule in 21 states.................................................................................47

2.      IPPs sufficiently allege fraudulent concealment in the remaining states.................................................................................49

VI.      IPPS' SHERMAN ACT CLAIM IS TIMELY .................................................................50

010636-11 944043 V1

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Aftermarket Filters Antitrust Litig.*,
    No. 08 C 4883, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009)........................................... *passim*

*In re Aggrenox Antitrust Litig.*,
    No. 3:14-MD-2516, 2016 WL 4204478 (D. Conn. Aug. 9, 2016) .............................17, 18, 36

*Allen v. Wright*,
    468 U.S. 737 (1984).....................................................................................................1

*Amerigas Propane, L.P. v. BP Am., Inc.*,
    691 F. Supp. 2d 844 (N.D. Ill. 2010) ....................................................................19

*Anapoell v. Am. Express Bus. Fin. Corp.*,
    No. 2:07-CV-198-TC, 2007 WL 4270548 (D. Utah Nov. 30, 2007) .....................31

*Arreola v. Godinez*,
    546 F.3d 788 (7th Cir. 2008) .............................................................................1, 2

*Arroyo v. United States*,
    656 F.3d 663 (7th Cir. 2011) ...............................................................................47

*Arthur v. Microsoft Corp.*,
    676 N.W.2d 29 (Neb. 2004)................................................................................23

*In re Asacol Antitrust Litig.*,
    No. 15-CV-12730-DJC, 2016 WL 4083333 (D. Mass. July 20, 2016) .................29

*Associated General Contractors of California, Inc. v. California State Council of Carpenters*,
    459 U.S. 519 (1983).......................................................................................... *passim*

*AT&T Mobility LLC v. AU Optronics Corp.*,
    707 F.3d 1106 (9th Cir. 2013) .............................................................................20

*In re Auto. Parts Antitrust Litig.*,
    29 F. Supp. 3d (E.D. Mich. 2014)..................................................................... *passim*

*In re Auto. Parts Antitrust Litig.*,
    50 F. Supp. 3d 869 (E.D. Mich. 2014)...............................................................9, 25

*In re Auto. Parts Antitrust Litig.*,
    No. 12-MD-02311, 2013 WL 2456612 (E.D. Mich. June 6, 2013)................................ *passim*

*Backus Elec., Inc. v. Hubbartt Elec., Inc.*,
    866 N.W.2d 405 (Wis. Ct. App. 2015) ..................................................................41

*Benson Tower Condominium Owners Ass'n v. Victaulic Co.*,
    22 F. Supp. 3d 1126 (D. Or. 2014) ...............................................................37, 38

*Berger v. Home Depot USA, Inc.*,
    741 F.3d 1061 (9th Cir. 2014) ....................................................................43

*Borsellino v. Goldman Sachs Grp., Inc.*,
    477 F.3d 502 (7th Cir. 2007) .....................................................................19

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ......................................................................2

*Brady v. Thurston Motor Lines*,
    726 F.2d 136 (4th Cir. 1984) .......................................................................1

*Braman v. The CME Group, Inc.*,
    149 F. Supp. 3d 874 (N.D. Ill. 2015) .............................................................47

*In re Brand Name Prescription Drug Antitrust Litig.*,
    123 F.3d 599 (7th Cir. 1997) ..........................................................14, 15, 27

*Brown v. Pinnacle Restoration LLC*,
    No. 1 CA-CV 12-0550, 2013 WL 3148654 (Ariz. Ct. App. June 18, 2013).........................41

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977)..............................................................................3

*California v. ARC America Corp.*,
    490 U.S. 93 (1989)..........................................................................*passim*

*California v. Infineon Techs. AG*,
    531 F. Supp. 2d 1124 (N.D. Cal. 2007) ............................................................6

*In re Cardizem CD Antitrust Litig.*,
    105 F. Supp. 2d 618 (E.D. Mich. 2000)........................................................15, 45

*In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*,
    No. 14-MD-2508, 2015 WL 5166014 (E.D. Tenn. June 24, 2015)..............................*passim*

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    MDL No. 1917, 2014 WL 1091589 (N.D. Cal. Mar. 13, 2014)...........................................15

*In re Chocolate Confectionary Antitrust Litig.*,
    602 F. Supp. 2d 538 (M.D. Pa. 2009) ................................................6, 20, 21, 24

*In re Chocolate Confectionary Antitrust Litig.*,
   749 F. Supp. 2d 224 (M.D. Pa. 2010) ..............................................................30, 43

*Christensen v. Cty. of Boone, IL*,
   483 F.3d 454 (7th Cir. 2007) ...........................................................................40

*Clark v. City of Braidwood*,
   318 F.3d 764 (7th Cir. 2003) ...........................................................................46

*Clayworth v. Pfizer, Inc.*,
   233 P.3d 1066 (Cal. 2010) ..............................................................................33

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
   No. 9 CV 3690, 2015 WL 3988488 (N.D. Ill. June 29, 2015).......................8, 33, 35

*In re DDVAP Indirect Purchaser Antitrust Litig.*,
   903 F. Supp. 2d 198 (S.D.N.Y 2012)..................................................25, 26, 27, 32

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) ............................................................................1

*Del Webb Communities, Inc. v. Partington*,
   652 F.3d 1145 (9th Cir. 2011) ...........................................................................37

*Denson v. Ron Tonkin Gran Turismo, Inc.*,
   566 P.2d 1177 (Or. 1977) ................................................................................37

*In re Digital Music Antitrust Litig.*,
   812 F. Supp. 2d 390 (S.D.N.Y. 2011)...........................................................14, 27

*In re Diotropan XL Antitrust Litig.*,
   529 F. Supp. 2d 1098 (N.D. Cal. 2007) ..............................................................39

*Dist. Cablevision Ltd. P'ship v. Bassin*,
   828 A.2d 714 (D.C. 2003) ..............................................................................30

*In re Domestic Drywall Antitrust Litig.*,
   No. 13-2437, 2016 WL 3769680 (E.D. Pa. July 13, 2016) ..............................32, 37

*In re Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litig.*,
   No. CIV. 12-169, 2013 WL 5503308 (D.N.J. Oct. 2, 2013) ...................................30

*White ex rel. Dylan v. Maxim Healthcare Servs., Inc.*,
   716 S.E.2d 441 (N.C. App. 2011).......................................................................49

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   516 F. Supp. 2d 1072 (N.D. Cal. 2007) ..........................................................32, 38

*Elkins v. Microsoft Corp.*,
    817 A.2d 9 (Vt. 2002) ............................................................................................38

*Ellis v. Smith Grading & Paving, Inc.*,
    366 S.E.2d 12 (S.C. Ct. App. 1998) .....................................................................42

*Embree Constr. Grp., Inc. v. Rafcor, Inc.*,
    411 S.E.2d 916 (N.C. 1992) .................................................................................41

*Emergency Physicians Integrated Care v. Salt Lake Cty.*,
    167 P.3d 1080 (Utah 2007) ..................................................................................41

*In re Evanston Northwestern Healthcare Corp. Antitrust Litig.*,
    No. 07 C 04446, 2016 WL 4720014 (N.D. Ill. Sept. 9, 2016) .............................46

*Everest v. Leviton Mfg. Co.*,
    No. CV-04-612, 2006 WL 381832 (Me. Super. Jan. 13, 2006) ............................41

*In re Flash Memory Antitrust Litig.*,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) ...............................................................20

*In re Flonase Antitrust Litig.*,
    692 F. Supp. 2d 524 (E.D. Pa. 2010) ...................................................................28

*Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*,
    85 F. Supp. 3d 1007, 1011 (E.D. Wis. 2015) ......................................................49

*Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*,
    No. 09-CV-00852, 2012 WL 3841397 (E.D. Wis. Sep. 5, 2012) ...................35, 50

*Franklin v. Franklin ex rel. Phillips*,
    858 So. 2d 110 (Miss. 2003) ................................................................................43

*FTC v. Mylan Labs., Inc.*,
    62 F. Supp. 2d 25 (D.D.C. 1999) .........................................................................36

*In re G-Fees Antitrust Litig.*,
    584 F. Supp. 2d 26 (D.D.C. 2008) .......................................................................45

*Gaebler v. New Mexico Potash Corp.*,
    676 N.E.2d 228 (Ill. App. Ct. 1996) ....................................................................37

*Gen. Insulation Co. v. Eckman Constr.*,
    992 A.2d 613 (N.H. 2010) ...................................................................................43

*Ghirardo v. Antonioli*,
    924 P.2d 996 (Cal. 1996) .....................................................................................43

*Gibbons v. Nuckolls, Inc.*,
216 S.W.3d 667 (Mo. 2007) ...................................................................................................35, 36

*Gordon, PC v. Rosenblum*,
370 P.3d 850 (Or. 2016) ...............................................................................................................37

*Greene v. Mizuho Bank, Ltd.*,
169 F. Supp. 3d 855 (N.D. Ill. 2016) ............................................................................................3

*GTE New Media Servs., Inc. v. Ameritech Corp.*,
21 F. Supp. 2d 27 (D.D.C.1998) ..................................................................................................16

*H-Quotient, Inc. v. Knight Trading Grp., Inc.*,
No. 03 CIV. 5889 (DAB), 2005 WL 323750 (S.D.N.Y Feb. 9, 2005) ....................................15

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
299 F.R.D. 648 (S.D. Cal. 2014) .................................................................................................39

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977)............................................................................................................. *passim*

*Int'l Brd. of Teamsters v. Philip Morris*,
196 F.3d 818 (7th Cir. 1999) .........................................................................................................8

*In re Intel Corp. Microprocessor Antitrust Litig.*,
496 F. Supp. 2d 404 (D. Del. 2007)........................................................................................6, 16

*Ireland v. Microsoft Corp.*,
No. 00CV-201515, 2001 Mo. App. LEXIS 2371 (Mo. Ct. App. Jan. 24, 2001)....................35

*ITCO Corp. v. Michelin Tire Corp.*,
722 F.2d 42 (4th Cir. 1983) .........................................................................................................25

*In re K-Dur Antitrust Litig.*,
338 F. Supp. 2d 517 (D.N.J. 2004) ..............................................................................................41

*Kammer Asphalt Paving Co., Inc. v. E. China Twp. Sch.*,
504 N.W.2d 635 (Mich. 1993) .....................................................................................................41

*Kanne v. Visa U.S.A. Inc.*,
723 N.W.2d 293 (Neb. 2006).......................................................................................................34

*Kessel v. Monongalia Cty. Gen. Hosp. Co.*,
648 S.E.2d 366 (W. Va. 2007).......................................................................................................6

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
702 F. Supp. 2d 514 (E.D. Pa. 2010) ..........................................................................................45

*King Richard's Subaru, Inc. v. Kennedy*,
No. PC/02-3981, 2003 WL 22790639 (R.I. Super. Nov. 7, 2003) .........................................41

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997)...........................................................................................................46

*Knevelbaard Diaries v. Kraft Foods, Inc.*,
232 F.3d 979 (9th Cir. 2000) .............................................................................................13

*Kochert v. Greater Lafayette Health Servs., Inc.*,
463 F.3d 710 (7th Cir. 2006) ..........................................................................................8, 11

*Kuhl v. Guitar Center Stores, Inc.*,
No. 07 C 214, 2008 WL 656049 (N.D. Ill. March 5, 2008) ...................................................2

*LaChance v. U.S. Smokeless Tobacco Co.*,
931 A.2d 571 (N.H. 2007) ......................................................................................24, 29, 30

*Landers Frary & Clark v. Vischer Prod. Co.*,
201 F.2d 319 (7th Cir. 1953) .............................................................................................44

*Landgraf v. USI Film Prod.*,
511 U.S. 244 (1994)...........................................................................................................5

*Laughlin v. Evanston Hosp.*,
550 N.E.2d 986 (Ill. 1990)..................................................................................................37

*In re Light Cigarettes Mktg. Sales Practices Litig.*,
751 F. Supp. 2d 183 (D. Me. 2010) .....................................................................................43

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-MD-2420, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014)...............................18, 25, 36

*Loeb Indus. Inc. v. Sumitomo Corp.*,
306 F.3d 469 (7th Cir. 2002) ................................................................................... *passim*

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*,
No. 13-CV-01180-BLF, 2015 WL 4755335 (N.D. Cal. Aug. 11, 2015).........................36, 39

*Los Gatos Mercantile, Inc. v. E.I. DuPont de Nemours & Company*,
No. 13-cv-01180-BLF, 2014 WL 4774611 (N.D. Cal. Sept. 22, 2014) ....................................8

*Mace v. Van Ru Credit Corp.*,
109 F.3d 338 (7th Cir. 1997) .............................................................................................16

*Mack v. Bristol-Myers Squibb Co.*,
673 So. 2d 100 (Fla. Dist. Ct. App. 1996) ............................................................................35

- ix -

*In re Magnesium Oxide Antitrust Litig.*,
Civ. No. 10-5943, 2011 WL 5008090 (D.N.J. Oct. 20, 2011)..........................................21, 22

*Martis v. Grinnell Mut. Reinsurance Co.*,
905 N.E.2d 920 (Ill. App. Ct. 2009) ................................................................................42, 43

*Massachusetts v. Mylan Labs.*,
357 F. Supp. 2d 314 (D. Mass. 2005) ........................................................................................41

*In re Mercedes-Benz Tele Aid Litig.*,
257 F.R.D. 46 (D.N.J. 2009)......................................................................................................40

*Meyers v. Bayer AG, Bayer Corp.*,
735 N.W.2d 448 (WI 2007) .......................................................................................................16

*In re Microsoft Corp. Antitrust Litig.*,
401 F. Supp. 2d 461 (D. Md. 2005) ...........................................................................................42

*Midwestern Midget Football Club Inc. v. Riddell, Inc.*,
No. CV 2:15-00244, 2016 WL 3406129 (S.D.W. Va. June 17, 2016)......................................41

*Morris Pumps v. Centerline Piping, Inc.*,
729 N.W.2d 898 (Mich. Ct. App. 2006) ...................................................................................41

*Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*,
532 S.E.2d 868 (S.C. 2000) .......................................................................................................42

*Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*,
34 N.E.3d 1023 (Ill. App. Ct. 2015) .........................................................................................43

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
350 F. Supp. 2d 160 (D. Me. 2004) .............................................................................................6

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
350 F. Supp. 2d 160 (D. Me. 2004) .......................................................................................6, 45

*New York v. Feldman*,
210 F. Supp. 2d 294 (S.D.N.Y. 2002)..................................................................................15, 30

*In re Nexium (Esomeprazole) Antitrust Litig.*,
968 F. Supp. 2d 367 (D. Mass. 2013) ......................................................................................5, 6

*O'Neill v. Coca-Cola Co.*,
669 F. Supp. 217 (N.D. Ill. 1987) ...............................................................................................8

*Olstad v. Microsoft Corp.*,
700 N.W.2d 139 (WI 2005) .................................................................................................16, 42

*In re Opana ER Antitrust Litig.,*
  162 F. Supp. 3d 704 (N.D. Ill. 2016) ................................................................2

*In re Opana ER Antitrust Litig.,*
  No. 14 C 10150, 2016 WL 4245516 (N.D. Ill. Aug. 11, 2016)..............................35

*In re Optical Disk Drive Antitrust Litig.,*
  2012 WL 1366718 ..........................................................................................39

*In re Optical Disk Drive Antitrust Litig.,*
  No. 3:10-MD-2143 RS, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011) ...................13

*Perkins v. Standard Oil Co.,*
  395 U.S. 642 (1969).........................................................................................3

*Piazza v. Ebsco Indus., Inc.,*
  273 F.3d 1341 (11th Cir. 2001) .........................................................................2

*Pion v. Bess Eaton Donuts Flour Co.,*
  637 A.2d 367 (R.I. 1994)...................................................................................5

*Pirelli Armstrong Tire Corp. Ret. Med. Benefits Tr. v. Walgreen Co.,*
  631 F.3d 436 (7th Cir. 2010) ...........................................................................19

*In re Plasma-Derivative Protein Therapies Antitrust Litig.,*
  No. 09 C 7666, 2012 WL 39766 (N.D. Ill. Jan. 9, 2012) ......................................8

*In re Polyurethane Foam Antitrust Litig.,*
  799 F. Supp. 2d 777 (N.D. Ohio 2011)..............................................................47

*In re Pool Prod. Distrib. Mkt. Antitrust Litig.,*
  946 F. Supp. 2d 554 (E.D. La. 2013)............................................................33, 35

*In re Potash Antitrust Litig.,*
  667 F. Supp. 2d 907 (N.D. Ill. 2009) .............................................................8, 21

*Potts v. United Parcel Serv., Inc.,*
  No. 06 C 4766, 2007 WL 551555 (N.D. Ill. Feb. 15, 2007).....................................3

*In re Processed Egg Prods. Antitrust Litig.,*
  851 F. Supp. 2d 867 (E.D. Pa. 2012) ...................................................... *passim*

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
  148 F.3d 283 (3d Cir. 1998)...............................................................................1

*Rathe Salvage, Inc. v. R. Brown & Sons, Inc.,*
  965 A.2d 460 (Vt. 2008)..................................................................................38

*In re Ready-Mixed Concrete Price Fixing Litig.*,
   1:05-CV-00979, 2006 WL 2849711 (S.D. Ind. Sept. 29, 2006)............................................49

*Reiser v. Residential Funding Corp.*,
   380 F.3d 1027 (7th Cir. 2004) ........................................................................................46

*Rose v. Bank of Am.*,
   57 Cal. 4th 390 (2013) ...................................................................................................20

*Rundgren v. Bank of N.Y. Mellon*,
   777 F. Supp. 2d 1224 (D. Haw. 2011) ...........................................................................49

*Saltzman v. Pella Corp.*,
   257 F.R.D. 471 (N.D. Ill. 2009).......................................................................................2

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010)............................................................................................... *passim*

*Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*,
   899 So. 2d 1222 (Fla. Dist. Ct. App. 2005) ....................................................................41

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
   737 F. Supp. 2d 380 (E.D. Pa. 2010) ....................................................................... *passim*

*Sidney Hillman Health Center of Rochester v. Abbott Labs, Inc.*,
   782 F.3d 922 (7th Cir. 2015) ..........................................................................................47

*Siegel v. Shell Oil Co.*,
   480 F. Supp. 2d 1034 (N.D. Ill. 2007) .......................................................................22, 37

*Siena v. Microsoft Corp.*,
   No. C.A. 00-1647, 2000 WL 1274001 (R.I. Super. Ct. Aug. 21, 2000) ...............................17

*Singer v. AT&T Corp.*,
   185 F.R.D. 681 (S.D. Fla. 1988)......................................................................................40

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
   No. 12-md-2343, 2013 WL 2181185 (E.D. Tenn. 2013) ......................................................45

*Sobel v. Franks*,
   633 N.E.2d 820 (Ill. App. Ct. 1994) ...............................................................................42

*In re Solodyn Antitrust Litig.*,
   No. CV 14-MD-02503-DJC, 2015 WL 5458570 (D. Mass. Sept. 16, 2015) ................. *passim*

*In re Suboxone Antitrust Litig.*,
   64 F. Supp. 3d 665, 702 (E.D. Pa. 2014) .....................................................................32, 35

*Suchanek v. Sturm Foods, Inc.*,
    311 F.R.D. 239 (S.D. Ill. 2015) .................................................................39

*In re Sulfuric Acid Antitrust Litig.*,
    703 F.3d 1004 (7th Cir. 2012) ..................................................................50

*In re Sulfuric Acid Antitrust Litig.*,
    743 F. Supp. 2d 827 (N.D. Ill. 2010) .......................................................50

*Supreme Auto Transp. LLC v. Mittal*,
    No. 08 CV 5468, 2017 WL 839484 (N.D. Ill. Mar. 3, 2017) ...............2, 9

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ....................................................................8

*Tanol Distribs., Inc. v. Panasonic Co., Div. of Matsushita Elec. Corp. of Am.*,
    No. CIV.A. 86-3355-S, 1987 WL 13319 (D. Mass. July 2, 1987) ..........15

*Taylor v. Meirick*,
    712 F.2d 1112 (7th Cir. 1983) ..................................................................47

*In re Terazosin Hydrochloride Antitrust Litig.*,
    160 F. Supp. 2d 1365 (S.D. Fla. 2001) ......................................................6

*In re Terazosin Hydrochloride Antitrust Litig.*,
    220 F.R.D. 672 (S.D. Fla. 2004) ..............................................................40

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ......................................... *passim*

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    599 F. Supp. 2d 1179 (N.D. Cal. 2009) ...................................................41

*Toscano v. Koopman*,
    148 F. Supp. 3d 679 (N.D. Ill. 2015) .......................................................44

*VMS/PCA Ltd. P'ship v. PCA Partners Ltd. P'ship*,
    727 F. Supp. 1167 (N.D. Ill. 1989) ..........................................................44

*W. Brook Isles Partner's 1, LLC v. Com. Land Title Ins. Co.*,
    163 So. 3d 635 (Fla. Ct. App. 2015) ........................................................49

*Wabash Castings, Inc. v. Fuji Mach. Am. Corp.*,
    No. 16 C 3629, 2016 WL 4765717 (N.D. Ill. Sept. 13, 2016)................44

*Welchlin v. Tenet Healthcare Corp.*,
    366 F. Supp. 2d 338 (D.S.C. 2005).........................................................26

*In re Wellbutrin XL Antitrust Litig.*,
   260 F.R.D. 143 (E.D. Pa. 2009) ............................................................................28, 39

*West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.*,
   472 S.E.2d 411 (W. Va. 1996) ......................................................................................6

*Whitlock v. Johnson*,
   153 F.3d 380 (7th Cir. 1998) ........................................................................................3

*Whittington v. Indianapolis Motor Speedway Found., Inc.*,
   No. 1:06-CV-0333, 2007 WL 2701983 (S.D. Ind. Sept. 12, 2007) ..........................47

*Williams v. Cent. Money Co.*,
   974 F. Supp. 22 (D.D.C. 1997) ..................................................................................28

*Williams v. Wells Fargo Bank, N.A.*,
   No. 11-21233, 2011 WL 4368980 (S.D. Fla. Sept. 19, 2011) ...................................41

*Windy City Metal Fabricators v. CIT Tech. Fin. Svc.*,
   536 F.3d 663 (7th Cir. 2008) ........................................................................18, 22, 30

*Wittman v. CB1, Inc.*,
   No. CV 15-105-BLG-BMM, 2016 WL 3093427 (D. Mont. June 1, 2016) ..............39

## Statutes

Ark. Code Ann. § 4-75-301 ....................................................................................................14

Ark. Code Ann. § 4-88-107 ....................................................................................................20

Ark. Code Ann. § 4-75-201, et seq. .......................................................................................14

Cal. Bus. & Prof. Code § 17200, *et seq.* A ...........................................................................20

Cal. Bus. & Prof. Code §§ 16700-16770 ...........................................................................4, 21

D.C.Code § 28–4502...............................................................................................................16

D.C. Code § 28-3901, *et seq.* ..........................................................................................21, 30

15 U.S.C. § 41, *et seq.*...........................................................................................................30

Fla. Stat. § 501.201(2), *et seq.* .............................................................................................21

Hawaii Rev. Stat. Ann. § 480-1, *et seq.* ..............................................................................22

740 Ill. Comp. Stat. Ann. 10/7.2 .......................................................................................4, 17

815 Ill. Comp. Stat. Ann. 505/1, *et seq.*................................................22

Mass. Gen. Laws Ann. ch. 93A, § 9, 11 ...............................................29

Mass. Gen. Laws Ann. ch. 93A § 1, *et seq.* ........................................22

Mich. Comp. Laws Ann. § 445.901, *et seq.*.........................................23

Mont. Code § 30-14-103 .......................................................................23

Neb. Rev. Stat. § 59-1602, *et seq.*.......................................................23

Nev. Rev. Stat. § 598.0903, *et seq.*.....................................................24

N.H. Rev. Stat. Ann., tit. XXXI, § 358-A:1, *et seq.* ...........................24

N.M. Stat. Ann. § 57-12-3, *et seq.* ......................................................24

N.Y. Gen. Bus. Law §340(1) .................................................................15

N.C. Gen. Stat. § 75-1.1, *et seq.*.........................................................25

Or. Rev. Stat. Ann. § 646.607; § 646.605(4) .................................32, 37

R.I. Gen. Laws § 6-36-7(d) .....................................................................5

R.I. Gen. Laws, § 6-13.1-1, *et seq.* .....................................................25

S.C. Code Ann. § 39-5-140....................................................................36

S.D. Cod. Law § 37-24-6 .......................................................................27

S.C. Code Ann. § 39-5-10, *et seq.* ......................................................25

Utah Code Ann. § 13-5-17......................................................................31

Utah Code Ann. § 13-11-1, *et seq.*......................................................26

Vt. Stat. Ann. tit. 9, § 2451a(a).............................................................38

W. Va. Code Ann. § 47-18-20..................................................................5

W. Va. Code St. R. § 142-9-2..................................................................6

Wis. Stat. § 133.03(1) ............................................................................16

**Other Authorities**

Fed. R. Civ. P. 23 .....................................................................................1

Commercial and Institutional Indirect Purchaser Plaintiffs ("C&IPs") and End User

Consumer Plaintiffs ("EUPs") (collectively, "IPPs" or "Plaintiffs") respectfully oppose

Defendants' Joint Motion to Dismiss (hereinafter as "MTD") (Dkt. 293).  IPPs incorporate the

factual background in the opposition to the motion to dismiss the Direct Purchaser Plaintiffs'

complaint.

## I.     IPPS HAVE STANDING TO SEEK REDRESS FOR THE INJURIES CAUSED BY DEFENDANTS' CONDUCT

### A.     IPPs Have Article III Standing.

Plaintiffs have Article III constitutional standing—as distinct from statutory standing—

because they "allege personal injury fairly traceable to the defendant's allegedly unlawful

conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751

(1984). Defendants do not contest that Plaintiffs have individual standing under Article III.

Rather, Defendants conflate Article III's individual standing requirement with Fed. R. Civ. P.

23's question of whether a plaintiff can represent consumers in other states for purposes of class

certification. According to the Seventh Circuit, the latter question – whether a plaintiff may

advance claims of absent class members – is determined solely under Rule 23's requirements.

*Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008) (once plaintiff establishes standing to

pursue his own claims, "[w]hether he is entitled to relief on any or all of those claims and

whether he may serve as an adequate class representative for others asserting such claims are

separate questions."). *See also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,

148 F.3d 283, 306-07 (3d Cir. 1998) ("'[o]nce threshold individual standing by the class

representatives is met, a proper party to raise a particular issue is before the court, and there

remains no further separate class standing requirement in the constitutional sense.'") (citation

omitted); *Brady v. Thurston Motor Lines*, 726 F.2d 136, 146 (4th Cir. 1984); *In re Deepwater*

*Horizon*, 739 F.3d 790, 800-01 (5th Cir. 2014); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592 (8th Cir. 2009); *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1351 (11th Cir. 2001). Thus, the question of whether the named plaintiffs are appropriate class representatives is premature until plaintiffs' motion for class certification.

Two courts in this district recently rejected Defendants' Article III standing argument. Judge Leinenweber explained that "[a]s long as one member of the class has a plausible claim to have suffered an injury that is fairly traceable to the challenged conduct and likely to be redressed by a favorable decision, the requirements of Article III standing are satisfied." *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 722 (N.D. Ill. 2016) (citing *Kohen v. Pac. Inv. Mgmt. Co. LLC*, & PIMCO Funds, 571 F.3d 672, 676 (7th Cir. 2009)). Moreover, on March 3, 2017, Judge Shah rejected the argument, like Defendants make here, that that *Opana ER* is "directly contrary to" the Seventh Circuit's decision in *Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008). (MTD at 5 n.2), stating

> In *Arreola v. Godinez*, the court addressed the question of standing before it addressed class certification; however, in that case it was the standing of the individual named plaintiff that was being addressed—no inquiry was being made into the named plaintiff's ability to serve as a class representative at that time. *Arreola v. Godinez*, 546 F.3d 788, 794-95 (7th Cir. 2008). For now, whether named plaintiffs can bring claims under the laws of other states and whether plaintiffs are adequate class representatives do not pose Article III barriers to subject-matter jurisdiction. *See Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011).

*Supreme Auto Transp. LLC v. Mittal*, No. 08 CV 5468, 2017 WL 839484, at *2, (N.D. Ill. Mar. 3, 2017). *See also Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D. Ill 2009), ("[t]he Seventh Circuit has followed the Supreme Court's direction in [*Ortiz*] and held that class certification should normally precede Article III standing challenges"); *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at *5 (N.D. Ill. Nov. 5, 2009) (same); *Kuhl v.*

*Guitar Center Stores, Inc.*, No. 07 C 214, 2008 WL 656049, at *3 (N.D. Ill. March 5, 2008) (same); *Potts v. United Parcel Serv., Inc.*, No. 06 C 4766, 2007 WL 551555, at *1 (N.D. Ill. Feb. 15, 2007) (same).

Finally, even in the event the Court addresses class representation under Article III, resolution of this issue should not result in dismissal with prejudice. IPPs will seek to add additional plaintiffs for those states without representation within 45 days of the decision on the motion to dismiss,[1] at which time they can also address any substantive amendments required based on the Court's decision on the motions to dismiss.

**B.     Indirect Purchaser Plaintiffs have Antitrust Standing under *Illinois Brick* State Repealer Laws and *Arc America*.**

For standing to bring an antitrust claim, plaintiffs must allege an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, (1977). Here, IPPs allege a textbook case of antitrust injury: they paid supra-competitive prices for Broilers caused by a conspiracy to artificially inflate the price of Broilers. *See, e.g.*, EU ¶¶ 1, 14, 164, 395, 401-403; C&I ¶¶ 1, 14, 141, 372, 378-380. IPPs have standing to bring their claim.

Prior to 1977, both "direct purchasers" and "indirect purchasers" could sue under the federal antitrust laws. *Perkins v. Standard Oil Co.*, 395 U.S. 642, 648 (1969). However, in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Supreme Court changed that rule, limiting standing to sue for money damages under Section 4 of the Clayton Act to "direct" purchasers, in a 6-3 decision over strong dissent. The dissent opined that the minority decision "flouts

---

[1] *See Whitlock v. Johnson*, 153 F.3d 380, 384 (7th Cir. 1998) (finding that the district court acted properly in allowing the class claims to continue with the substitution of appropriate class representatives despite the failure of the named plaintiff's individual claim on the merits); *Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855, 867 (N.D. Ill. 2016) (noting Seventh Circuit's policy of allowing counsel to designate new named plaintiffs) (*citing Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1080-81 (7th Cir. 2013)).

Congress' purpose and severely undermines the effectiveness of the private treble-damages action" for various reasons, including that in many instances "the brunt of antitrust injuries is borne by indirect purchasers" and that "direct purchasers who act as middlemen have little incentive to sue suppliers so long as they may pass on the bulk of the illegal overcharges to the ultimate consumers." *Id.* at 749 (Brennan, J., dissenting). Nevertheless, *Illinois Brick* remains controlling law as to federal antitrust claims.

Dissatisfied with the ruling of *Illinois Brick*, however, many state legislatures enacted "*Illinois Brick* repealer" legislation for the explicit purpose of assuring that the limitations of *Illinois Brick* on antitrust standing are *not* to be applied to their state laws, and to authorize antitrust standing for indirect purchasers. *See, e.g.*, Cal. Bus. & Prof. Code § 16750; 740 Ill. Comp. Stat. 10/7 (2009). Other states have reached the same conclusion by judicial interpretation. (Collectively, both groups are referred to as "Repealer States".) The articulated policy reasons for Repealer State laws include the same reasons articulated by the *Illinois Brick* dissent, focusing on the need to compensate ultimate consumers and businesses for their antitrust injuries and finding that such injuries are not "too remote" to redress.

The unusual, sharp divergence between federal law, and state antitrust law of the Repealer States, naturally led to disagreement about whether *Illinois Brick* should constrain Repealer State antitrust laws. However, the Supreme Court definitively resolved that question in *California v. ARC America Corp.*, 490 U.S. 93 (1989), holding that Repealer State laws must be applied consistently with the states' intentions and *Illinois Brick* must *not* curtail the states' choices of law and policy. The Court explained:

> It is one thing to consider the congressional policies identified in *Illinois Brick* and *Hanover Shoe* in defining what sort of recovery federal antitrust law authorizes; ***it is something altogether different, and in our view inappropriate, to consider them as***

- 4 -

> ***defining what federal law allows States to do under their own***
> ***antitrust law***. . . . [N]othing in *Illinois Brick* suggests that it would
> be contrary to congressional purposes for States to allow indirect
> purchasers to recover under their own antitrust laws.

*ARC America*, 490 U.S. at 103 (emphasis added).

      **1.**     **IPPs have antitrust standing in 26 *Illinois Brick*-Repealer States.**

IPPs allege violations of the antitrust laws of 26 *Illinois Brick* Repealer States. EU

¶¶ 429-602; C&I ¶¶ 406-573. Defendants only argue that two of these state antitrust claims are

limited by *Illinois Brick* and therefore concede that Plaintiffs' claims under the antitrust laws of

the remaining 24 states are not.[2]  (MTD at 8.)  Defendants are wrong about those two states.

     ***Rhode Island*:** Defendants are incorrect that Rhode Island's Repealer Statute (R.I. Gen.

Laws § 6-36-7(d)) has no retroactive application prior to its enactment on July 15, 2013. (MTD

at 8.) "Changes in procedural rules may often be applied in suits arising before their enactment

without raising concerns about retroactivity." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 275

(1994). *See also Pion v. Bess Eaton Donuts Flour Co.*, 637 A.2d 367, 371 (R.I. 1994) ("remedial

and procedural statutes, which do not impair or increase substantive rights but rather prescribe

methods for enforcing such rights, may be construed to operate retroactively."). Rhode Island's

*Illinois Brick* repealer statute is procedural, conferring standing on indirect purchasers to sue for

antitrust violations. Rejecting the same argument against retroactivity Defendants make here, the

court in *In re Nexium (Esomeprazole) Antitrust Litig.* recently allowed claims under the Rhode

Island Antitrust Act to proceed. No. 12-md-02409, slip op. at 3-4 (D. Mass. Oct. 23, 2013) Dkt.

448, Ex. 1. The Rhode Island antitrust claims accruing before July 15, 2013, should be upheld.

     ***West Virginia*:** Using its authority to "make and adopt such rules and regulations as may

be necessary for the enforcement and administration of [the Antitrust Act]," W. Va. Code Ann.

---

    [2] As fully discussed below at sections III.B.3 and IV.D, IPPs' claims under state consumer
protection and unjust enrichment laws are unaffected by *Illinois Brick*.

§ 47-18-20, the West Virginia Attorney General issued a legislative rule providing that "any person who is injured ***directly or indirectly*** by reason of a violation of the West Virginia Antitrust Act may bring an action for damages." W. Va. Code St. R. § 142-9-2 (citation omitted) (emphasis added). The West Virginia legislature approved that rule as part of omnibus legislation, S. 243, Reg. Sess., at 1023 (W. Va. 1990) (enacted), and is subject to *Chevron* deference by the reviewing court. *West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.*, 472 S.E.2d 411, 420-23 (W. Va. 1996); *New Motor Vehicles*, 350 F. Supp. at 174 (finding the rule permitting indirect purchasers to recover damages to be "based on a permissible construction of the statute" and "entitled to deference"). Thus, federal courts nationwide permit indirect purchasers to bring claims under the West Virginia Antitrust Act. *See*, *e.g.*, *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 408 (D. Mass. 2013); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 582 (M.D. Pa. 2009); *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 414 (D. Del. 2007); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 401 (E.D. Pa. 2010); *California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1155 (N.D. Cal. 2007); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 174 (D. Me. 2004); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1376 n.8 (S.D. Fla. 2001).

Defendants' reliance on *Kessel v. Monongalia Cty. Gen. Hosp. Co.*, 648 S.E.2d 366, 374 (W. Va. 2007), is misplaced. (MTD at 8-9.) The *Kessel* court did not address indirect purchaser standing, but instead addressed whether the state statute prohibited the same conduct as the federal antitrust laws. *Id.*, at 380-81. Defendants' motion should be denied.

2.      **The *AGC* standing analysis does not apply to the IPPs' antitrust claims in Repealer States.**

Defendants wrongly contend that a vast majority of the Repealer States would find that IPPs lack state antitrust standing under the federal antitrust standing analysis established in *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, (1983) (*"AGC"*). However, *AGC* does not apply to IPPs under state law when they participate in the market that was restrained. *See, e.g.*, *In re Aftermarket Filters Litig.*, No. 08 C 4883, 2009 WL 3754041, at *7 (N.D. Ill. Nov. 5, 2009).

In *Filters*, Judge Gettleman addressed a price-fixing conspiracy in the market for filters alleged by two types of indirect purchasers: (1) those who purchased filters to install in their own cars, and (2) those who purchased filters as part of an auto service package. Defendants did not challenge the standing of the "Do-It For Yourself" plaintiffs, but did challenge the standing of the "Do-It For Me" plaintiffs under *AGC* arguing they were participants in a separate automotive services market. Rejecting Defendants' argument, the court held that the "Do-It For Me" plaintiffs also purchased the filters that were subject to price-fixing. *Id*. at *7-8. Judge Gettleman distinguished *AGC,* because it did not horizontal price-fixing or downstream purchasers. *Id*. at *7. Noting that *AGC* concerned the attempts of union members to coerce third parties to do business with non-union contractors and thereby restrain the union's business activities, Judge Gettleman held: "***AGC* was obviously never intended to apply to the instant situation involving claims of price-fixing down a chain of distribution, because in the federal context such claims were already barred by *Illinois Brick*.**" *Id.* at *7 (emphasis added; citations and quotations omitted). Judge Gettleman thus rejected *AGC*'s application, because the plaintiffs were "end users of defendants' products, and all are in the chain of distribution." *Id*. at *8.

- 7 -

Exactly like the indirect purchaser plaintiffs in *Filters*, IPPs here purchased Defendants' Broilers and participated in the same "physical market" restrained by Defendants. Like in *Filters*, IPPs' claims here are "precisely the kind of case the repealer states envisioned when they enacted the state antitrust laws." *See id*.

Much of Defendants' authority supporting the application of *AGC* here is easily distinguished: Defendants rely on cases where the courts either do not apply the *AGC* analysis, *e.g.*, *Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010), or apply the *AGC* analysis to federal and not state law claims, *e.g.*, *Int'l Brd. of Teamsters v. Philip Morris*, 196 F.3d 818 (7th Cir. 1999); *Loeb Indus. Inc. v. Sumitomo Corp*., 306 F.3d 469, 484 (7th Cir. 2002); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, 2012 WL 39766, at *9 (N.D. Ill. Jan. 9, 2012); *Kochert v. Greater Lafayette Health Servs., Inc.*, 463 F.3d 710, 712 (7th Cir. 2006); *O'Neill v. Coca-Cola Co.*, 669 F. Supp. 217, 220 (N.D. Ill. 1987).

While Defendants cite some cases where federal courts have applied *AGC* to state law claims brought by indirect purchasers, none involve IPPs who are participants in the same market that was restrained. *See, e.g.*, *AGC*, 459 U.S. at 539 ("[T]he [plaintiff] was neither a consumer nor a competitor in the market in which trade was restrained."); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 WL 3988488, at *16 (N.D. Ill. June 29, 2015) ("mixed-market case, where damages inflicted on the physical commodity market are not derivative of injuries in the futures market"); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 940 (N.D. Ill. 2009) (IPPs in fertilizer market, not the relevant market for potash); *Los Gatos Mercantile, Inc. v. E.I. DuPont de Nemours & Company,* No. 13-cv-01180-BLF, 2014 WL 4774611, at *8 (N.D. Cal. Sept. 22, 2014) (IPPs in the markets for paint and other products,

not titanium dioxide).3 *Supreme Auto* is no different as there IPPs participated in the market for refrigerators, automobiles and other markets, not that for steel. No. 08 CV 5468, 2017 WL 839484, at **1, 4-5 (N.D. Ill. Mar. 3, 2017).

Thus, *AGC* may preclude indirect purchaser standing when they buy a product in a separate market, but not when they buy one in the same market. Here, Defendants concede IPPs are both in the same "distribution chain" for Broilers, (MTD at 12, 17), and IPPs allege they participated in the market for the price-fixed Broilers, define Broilers exactly as DPPs do, (EU ¶ 107; C&I ¶ 84) and allege that Broilers were manufactured, supplied or processed by Defendants, not any other entity. (EU ¶ 385; C&I ¶ 362). If Defendants were correct that *AGC* applied in the manner they suggest, no indirect purchaser claim under Repealer State laws could ever be sustained in federal court—even for the garden-variety indirect purchaser who buys the same product whose prices Defendants fixed. This would thwart the will of the Repealer States.

As reflected in the exhaustive research in IPPs' Appendix A, *not one* state court in *any* state has applied the *AGC* analysis to deny standing to indirect purchasers who participate in the same restrained product market and purchase the same price-fixed product. This is consistent with the Supreme Court's recognition in *ARC America*, six years after *AGC*, that states can "allow indirect purchasers to recover under their own antitrust laws." 490 U.S. at 103.

In fact, twelve states have not adopted *AGC*: Arkansas, Florida, Hawaii, Illinois, Massachusetts, Minnesota, Missouri, Montana, Rhode Island, South Carolina, Tennessee, Vermont. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1123 (N.D. Cal.

---

3 Even in the additional 25 cases proffered in their Appendix C involving *AGC* and state-law claims, Defendants fail to cite a single case that dismisses indirect purchaser claims when the indirect purchasers participate in the same market restrained by the Defendants. *See* Plaintiffs' Appendix A (responding to each case). *See also In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 869, 887 (E.D. Mich. 2014) (even though IPPs bought cars that included Occupant Safety Restraint Systems ("OSS") as a component part, the court held that IPPs had standing to sue because the market for OSS and the market for cars are "sufficiently linked and intertwined.").

2008). Thus, as Defendants concede in footnote 10, "it is inappropriate to broadly apply the AGC test to plaintiffs' claims under the repealer states' laws in the absence of a clear directive from those states' legislatures or highest courts." 586 F. Supp. 2d at 1123.

Defendants' argument that *AGC* applies to the claims in eight states (Kansas, Nevada, New Hampshire, New Mexico, Oregon, South Dakota, Utah, West Virginia) that seek to harmonize state and federal antitrust law should be rejected. As reflected in Appendix A, these exact same states have enacted *Illinois Brick* repealer statutes. *AGC* does not eviscerate the very right, *i.e.*, standing of indirect purchasers, for which the repealer statutes were enacted. *See ARC America*, 490 U.S. at 103. That law cannot be harmonized with *AGC* any more than it can be with *Illinois Brick* itself.

For similar state-specific reasons discussed in Appendix A, the claims of the remaining 11 states also survive *AGC*. In sum, Defendants' attempt to have this Court be the *very first* to reject indirect purchaser standing under *Illinois Brick*-repealer statutes where the IPPs are downstream purchasers of the same product that was price-fixed should be rejected.

**3. Even if *AGC* applied, Defendants' price-fixing conspiracy caused the type of antitrust harm to plaintiffs that satisfies *AGC*.**

Under *AGC*'s standing analysis, courts consider:

(1) the causal connection between the violation and the harm; (2) the presence of improper motive; (3) the type of injury and whether it was one Congress sought to redress; (4) the directness of the injury; (5) the speculative nature of the damages; and (6) the risk of duplicate recovery or complex damage apportionment.

*Loeb Indus. Inc. v. Sumitomo Corp.*, 306 F.3d 469, 484 (7th Cir. 2002) (citing *AGC*, 459 US at 535-546). IPPs' claims satisfy analysis of each of these factors.

### a. The overcharges paid by IPPs are the type of injury Congress sought to redress.

The first factor focuses on "the nature of the plaintiff's alleged injury," noting the primary purpose of the Sherman Act is to "assure customers the benefits of price competition." 459 U.S. at 538. Claims of injury by consumers in markets where competition is allegedly restrained fall "squarely within the area of congressional concern." *Id.* at 538-539 (finding no antitrust standing where plaintiff was neither a consumer nor a competitor in the market in which trade was restrained). *See also LCD*, 586 F. Supp. 2d at 1118 (noting that the Supreme Court identified "nature of the plaintiff's alleged injury" as the most important factor).[4]

Here, IPPs allege that Defendants conspired to fix the price of Broilers by limiting their production with the intent to increase the price of Broilers in the United States (EU ¶ 1; C&I ¶ 1), causing an artificial increase in the price of Broilers (EU ¶ 7; C&I ¶ 7) and thus injury to IPPs which paid more for Broilers than they would have paid absent the conspiracy. (EU ¶ 14; C&I ¶ 14). This injury is exactly the type the antitrust laws were intended to prevent. *Kochert*, 463 F.3d at 715 ("the principal purpose of the antitrust laws is to prevent overcharges to consumers."). Defendants do not argue otherwise. (MTD at 12, n.11.) Thus, IPPs satisfy the most important *AGC* factor.

### b. IPPs allege a causal connection between Defendants' conduct and the harm they suffered.

IPPs allege that Defendants coordinated a decrease in supply that caused an increase in Broiler prices (EU ¶¶ 11, 13; C&I ¶¶ 11, 13), which overcharges were passed along the distribution chain and absorbed by IPPs. (EU ¶¶ 398-399; C&I ¶¶ 375-376). IPPs allege a clear

---

[4] Courts applying the *AGC* factors often begin their analysis with the "type" or "nature of the injury" as the first or primary *AGC* factor. *See, e.g.*, *id.* at 1123. Defendants' reorganization of the factors differently from *Loeb* or *AGC* does not emphasize the relative weight courts typically attach to each factor when listed in order of priority. (*See* MTD at 12.)

causal connection between the conspiracy to raise Broiler prices and the subsequent harm to IPPs in the form of supra-competitive prices for Broilers. IPPs satisfy the second *AGC* factor.

### c. IPPs allege the presence of improper motive.

Defendants do not dispute that IPPs allege improper motive under *AGC*. (MTD at 12, n.11.) *See also* EU ¶¶ 13, 1, 401; C&I ¶¶ 13, 1, 378 ("Defendants knew and intended that their coordinated limitation and reduction in Broiler supply would artificially increase all Broiler prices … above the level they would have been absent the conduct alleged [in the Complaints].")

### d. IPPs' injuries flow directly from Defendants' conspiracy to fix Broiler prices.

IPPs allege a short and simple chain of distribution (and causation): Defendants sold Broilers to direct purchasers and the direct purchasers in turn sold those Broilers to IPPs. (EU ¶¶ 20-56, 397, 399; C&I ¶¶ 20-33, 374, 376). The Complaints further allege that the overcharges to Direct Purchasers were passed along and absorbed by IPPs. (EU ¶¶ 397-400; C&I ¶¶ 374-377). Traceability of the overcharges is clear because the Broilers are sold along the supply chain "in substantially the same form as when they were initially sold by Defendants" (EU ¶ 397; C&I ¶ 374). *See In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2013 WL 2456612, at *17 (E.D. Mich. June 6, 2013) ("[b]ecause IPPs have alleged that they can trace overcharges through the distribution chain, they have satisfied this *AGC* factor."); *LCD*, 586 F. Supp. 2d at 1123-1124) (allegations that the distribution chain for the relevant products is short, in that the products are sold either directly to end users by direct purchasers or through intermediary resellers, are sufficient to satisfy the *AGC* "directness of the alleged injury" factor).

Defendants' argument that IPPs lack standing because Direct Purchasers are "more immediate victims" of the alleged conspiracy, (MTD at 12-13), would deny standing in every indirect purchaser case – exactly the argument rejected by Repealer States and *ARC America*.

Furthermore, Plaintiffs' allegations that Direct Purchasers in the Broiler market pass through some or all of the overcharge to IPPs, who are thus the primary "victims" of the conspiracy, must be accepted as true at this stage.  (EU ¶¶ 398-399; C&I ¶¶ 375-376.)

Concerns that IPPs' injuries are too "remote" or "speculative" will be resolved at trial, when IPPs will prove the overcharges were indeed "passed-on" from direct purchasers to the indirect purchasers. At the pleading stage, it is sufficient for Plaintiffs to plead facts concerning the economic evidence of pass-on, which they have done. (C&I ¶¶ 372-380; EU ¶¶ 395-403.) It is not appropriate to decide "[d]isputed claims of causation and injury" on a motion to dismiss. *Knevelbaard Diaries v. Kraft Foods, Inc.*, 232 F.3d 979, 989 (9th Cir. 2000). *See also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. at 1118 (finding indirect plaintiffs sufficiently alleged that overcharges are passed on to consumers). Thus, the fourth *AGC* factor is satisfied.

### e. Recovery by IPPs under Repealer Statutes is not duplicative of recovery under federal antitrust laws.

While Defendants cite *Loeb* for the proposition that the IPPs' claims pose a risk of duplicate recovery or complex damage apportionment, (MTD at 15), the Seventh Circuit held exactly the opposite, *i.e.*, that IPP claims under Repealer Statutes do ***not*** "duplicate" claims brought under federal antitrust laws. The court explained:

> [T]he supposed "duplication" here comes from different bodies in our federal system seeking to remedy separate harms. It presents no risk of duplicate recovery for the same injury under the same law and is thus no bar to the plaintiffs' recovery. *California v. ARC Am. Corp.*, 490 U.S. 93 (1989) (permitting states to require offenders to pay both state damages to indirect purchasers and federal treble damages to direct purchasers).

*Loeb Indus.*, 306 F.3d at 492 (7th Cir. 2002). *See also In re Optical Disk Drive Antitrust Litig.*, No. 3:10-MD-2143 RS, 2011 WL 3894376, at *11 (N.D. Cal. Aug. 3, 2011) ("The application of the *AGC* test [defendants'] advocate would appear, in effect, to 'repeal' the *Illinois Brick*

'repealers,' as it is difficult to imagine an indirect purchaser ever having antitrust standing under defendants' formulation.")

Moreover, each IPP class will demonstrate the amount of damages that it sustained. Difficulties in allocating damages among antitrust plaintiffs is not a basis to deny a claim. In *Loeb*, the Seventh Circuit observed:

> It is certainly acceptable through expert economic testimony to make a reasonable estimation of actual damages through probability and inferences. . . . The main complication will come from attempting to discern how much of the [price] at a given time represented an overcharge due to the defendants' manipulation and how much stemmed from normal economic forces. This difficulty, however, occurs in every price-fixing case. . . . Through discovery, economic experts can evaluate the impact of the defendants' illegal actions on the [] market and come to reasoned conclusions.

*Loeb Indus.*, 306 F.3d at 490-493 (evaluating claims at the summary judgment stage). In sum, IPPs allege facts supporting standing and, to the extent applicable, satisfy the *AGC* factors.

## II.   DEFENDANTS' MISCELLANEOUS STATE ANTITRUST ARGUMENTS FAIL[5]

### A.   Plaintiffs Allege a Sufficient Nexus to Intrastate Commerce under the Laws of the District of Columbia, New York, and Wisconsin.

It is well settled that a complaint alleging a nationwide antitrust violation satisfies "intrastate" pleading requirements so long as the impact of the conduct was felt within each state. *See In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 408 (S.D.N.Y. 2011). The alleged conduct need not occur entirely or even predominately within a single state to be "intrastate" – as courts have noted, any such requirement would render the state statute a "dead letter." *In re Brand Name Prescription Drug Antitrust Litig.*, 123 F.3d 599, 613 (7th Cir. 1997) (noting that there "are virtually no sales" anywhere in the United States that are "wholly intrastate"). A nationwide antitrust violation decreases competition in each state, thereby increasing the price of

---

[5] Plaintiffs concede that they cannot bring their price-fixing claim under the Arkansas Unfair Practices Act, Ark. Code Ann. § 4-75-201, et seq. or Ark. Code Ann. § 4-75-301,

goods paid by consumers in each state. *See id.*; *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 665-70 (E.D. Mich. 2000). The operative focus is on Defendants' conduct and its effect. *See Tanol Distribs., Inc. v. Panasonic Co., Div. of Matsushita Elec. Corp. of Am.*, No. CIV.A. 86-3355-S, 1987 WL 13319, at *4 (D. Mass. July 2, 1987).

Plaintiffs here allege a nationwide conspiracy to raise the price of Broilers, which injured purchasers of Broilers in every state because they paid more for chicken than they would have absent the conspiracy. (EU ¶¶ 1-2, 105-106, 111; C&I ¶¶ 1-2, 82-83, 88.) The Complaints allege that specific residents of the District of Columbia (EU ¶¶ 53-54, 457, 459-460), New York (EU ¶¶ 42-43, 541, 543-544; C&I ¶¶ 26-27), and Wisconsin (EU ¶¶ 55-56, 596, 598-599; C&I ¶ 25), and other states purchased Broilers at supra-competitive prices in their respective states, and suffered injury there as a result of Defendants' price-fixing conduct.

*New York.* New York's Donnelly Act, N.Y. Gen. Bus. Law §340(1), requires harm to competition and injury in New York, which is satisfied here. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2014 WL 1091589, at *1, 2, 13, 14 (N.D. Cal. Mar. 13, 2014) (applying Donnelly Act to claim involving international price-fixing conspiracy where defendant's "alleged conduct resulted in a New York-based company being harmed, and this is sufficient to give New York an interest in applying its own law to the controversy"). Defendants' reliance on *H-Quotient, Inc. v. Knight Trading Grp., Inc.*, No. 03 CIV. 5889 (DAB), 2005 WL 323750, at *5 (S.D.N.Y Feb. 9, 2005), is misplaced because that case involved pre-emption and the complaint failed to "put forth any specific allegations … of impact on intrastate commerce." *Id.* By contrast, here Plaintiffs allege that the citizens of New York are being overcharged for chicken.

*Wisconsin.* Similarly, under Wisconsin's antitrust law (Wis. Stat. § 133.03(1)), a plaintiff may bring an antitrust claim arising from conduct outside the state's borders if it **"*substantially affects*"** the people of Wisconsin and has impacts in the state. *Olstad v. Microsoft Corp.*, 700 N.W.2d 139, 141, 156 (WI 2005) (holding that Wisconsin's antitrust statute applies to ***interstate*** commerce); *Meyers v. Bayer AG, Bayer Corp.*, 735 N.W.2d 448, 451 (WI 2007).

*D.C.* In the District of Columbia, a plaintiff may bring an antitrust claim where "all ***or any part of*** which is within the District of Columbia." D.C.Code § 28–4502. *See GTE New Media Servs., Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27, 45 (D.D.C.1998) (sustaining allegations of a nationwide anticompetitive scheme that also impacts commerce within each state); *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 412 (D. Del. 2007) (sustaining D.C. claim). Accordingly, IPPs allege a sufficient nexus to intrastate commerce under the laws of the District of Columbia, New York, and Wisconsin.

**B.    Pre-Filing Notice Provisions do not Support Dismissal of Plaintiffs' Claims in Arizona, Rhode Island or Hawaii.**

Defendants' argument that Plaintiffs' claims under Arizona and Rhode Island antitrust laws and Hawaii consumer protection law should be dismissed for failure to serve a copy of their claims on the state attorneys general should be rejected for three reasons. (MTD at 19, 36.)

*First*, state pre-suit notice requirements are procedural and thus not applicable to cases brought in federal court. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 346 (7th Cir. 1997) ("such a notice requirement is not substantive"). *Second*, lack of compliance with pre-suit notice requirements is not a basis for dismissal. *See, e.g.*, *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at *6 (N.D. Ill. Nov. 5, 2009) (denying defendants' motion to dismiss for failure to comply with Hawaii's pre-suit notice requirement because "dismissal is inconsistent with the

remedial purposes of the statute; … nothing in the statutory scheme suggests that defendants may use the statute as a shield to avoid answering for alleged anti-competitive behavior.") *Third*, Plaintiffs have since complied with the requirements to mail copies of their complaints to the state attorneys general and file proof of service, satisfying the procedural requirement. *See, e.g.*, *Siena v. Microsoft Corp.*, No. C.A. 00-1647, 2000 WL 1274001, *4 (R.I. Super. Ct. Aug. 21, 2000); *aff'd*, 796 A.2d 461 (R.I. 2002) (Rhode Island's notice requirement satisfied where "at the time of hearing such proof had not been filed, [but] plaintiffs' counsel undertook forthwith to make the required filing," and thus "there can be no question but that the Attorney General has been advised of the circumstances."). Plaintiffs' claims should be sustained.

**C.      IPPs' Claim under the Illinois Antitrust Act Is Not Subject to a Procedural Class Action Bar**

Because a state statutory class action bar is procedural in nature, it does not apply in federal court. *See Shady Grove Orthopedic Assocs., P.A.*, 559 U.S. at 393 (Rule 23 and not New York class action bar applies in federal court). Thus, Plaintiffs may assert an indirect purchaser class action under the Illinois Antitrust Act, 740 Ill. Comp. Stat. Ann. 10/7.2, in federal court. *In re Aggrenox Antitrust Litig.*, No. 3:14-MD-2516, 2016 WL 4204478, at *6 (D. Conn. Aug. 9, 2016) ("*Aggrenox*"). In *Aggrenox,* the court reasoned that the Illinois indirect purchaser class action bar was similar to the New York class action bar addressed by the Supreme Court:

> I cannot square *Shady Grove's* allowance of a Rule 23 class action despite New York's class-action bar with the *dis* allowance of a Rule 23 class action in the case of Illinois's class-action bar simply on the basis that Illinois's bar is narrower. It is narrower because its application is limited to indirect-purchaser antitrust claims, and that does tie it more specifically to particular substantive rights; but if New York's state-law bar is not a procedural rule that alters the scope of a substantive right or remedy, then the narrower scope of Illinois's state-law bar does not make it one that does.

*Id*. The Court reached the same result in *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420, 2014 WL 4955377, at **20-21 (N.D. Cal. Oct. 2, 2014), permitting a class claim to proceed under the Illinois Antitrust Act. The Court should allow the claim here as well.

### III.    PLAINTIFFS HAVE STATED A VIABLE CLAIM UNDER EACH STATE CONSUMER PROTECTION STATUTE

**A.    Plaintiffs' Consumer Protection Claims Satisfy Rule 8(a).**

**1.    Plaintiffs' consumer protection claims are based on price-fixing allegations and do not sound in fraud.**

Rule 9(b)'s particularity requirement does not apply to IPPs' claims for unlawful, unfair or unconscionable practices under the consumer protection statutes of Arkansas, California, the District of Columbia, Florida, Hawaii, Illinois Massachusetts, Michigan, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, North Dakota, Rhode Island, South Carolina, South Dakota, and Utah. As Defendants concede, Rule 9(b) applies only to claims "sounding in fraud." MTD at 21. Here, IPPs' claims are grounded in Defendants' illegal and anticompetitive conspiracy to raise the price of Broilers. All allegations of deceptive, misleading, or otherwise fraudulent conduct are in addition to the core price-fixing and supply-restriction allegations. Simply put, IPPs' antitrust-based consumer protection claims do not sound in fraud. When a consumer protection claim alleges an unfair practice, the relaxed pleading standards of Rule 8 govern. *Windy City Metal Fabricators v. CIT Tech. Fin. Svc.*, 536 F.3d 663, 669-70 (7th Cir. 2008).

In sum, Defendants' attempt to recast IPPs' antitrust-based claims as sounding in fraud falls short. (*See* MTD at 22-23.) The cherry-picked words Defendants emphasize in bold are not essential to IPPs' claims. Those allegations (which characterize Defendants' conduct as deceptive or fraudulent) are in addition to IPPs' price-fixing claims. IPPs' inclusion of these

- 18 -

words alone does not convert the antitrust-based consumer protection claims into ones "sounding in fraud" or otherwise trigger Rule 9(b).

Defendants' reliance on *Pirelli Armstrong Tire Corp. Ret. Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436 (7th Cir. 2010), to support the proposition that Rule 9(b) applies to IPPs' *antitrust-based* consumer protection claims is misplaced. In *Pirelli*, the court addressed only a claim brought under the Illinois Consumer Fraud Act (ICFA) based on allegations that defendant pharmacy systematically and unlawfully switched drugs when filling prescriptions. *Id.* at 438. Rule 8 did not apply to those claims because the "practices alleged in [the] complaint constitute fraudulent activity[.]" *Id.* at 446-47. Defendants' citation to *Amerigas Propane, L.P. v. BP Am., Inc.*, 691 F. Supp. 2d 844, 852 (N.D. Ill. 2010), is similarly misplaced. Like *Pirelli*, *Amerigas* involved only a fraud-based claim under the ICFA. *Id.* at 851, n.6.

IPPs' claims also present a stark contrast to *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502 (7th Cir. 2007), on which Defendants rely (MTD at 23). In *Borsellino*, plaintiff alleged that his former business partners colluded "to defraud him of his rightful interest in [a] new venture," (*id.* at 505), alleging a claim that "arises out a pattern of fraud." Accordingly, the court applied Rule 9(b) to claims for interference with economic advantage and fiduciary relationships because the claims were "riddled with references to fraud." *Id.* at 507.

Indeed, none of the other cases cited by Defendants (MTD at 25, n.20) stands for the proposition that Rule 9(b) applies to antitrust-based claims brought under the consumer protection statutes. Indeed, courts routinely hold just the opposite, refusing to apply Rule 9(b) to claims sounding in antitrust rather than fraud.

## 2. Rule 9(b) does not apply to IPPs' consumer protection claims for unlawful, unfair or unconscionable price-fixing practices.

Generally speaking, the consumer protection statutes at issue – phrased in the disjunctive – prohibit unlawful, unfair, and unconscionable conduct, ***in addition to*** misleading, deceptive, or fraudulent conduct. Rule 9(b)'s particularity requirements are inapplicable to IPPs' non-fraud based claims under the following states' consumer protection statutes:

***Arkansas***: To state a claim under the Arkansas Deceptive Trade Practices Act ("ADTPA"), IPPs merely need to allege that Defendants engaged in an "unconscionable … act or practice." Ark. Code Ann. § 4-88-107. IPPs allege that the price-fixing conspiracy constituted unconscionable conduct in violation of the ADTPA. *See* C&I ¶ 581; EU ¶ 609 ("Defendants' conduct was … unconscionable"). Courts regularly hold that indirect purchasers' allegations of price-fixing state a claim under the ADTPA's unconscionable prong. *See, e.g.*, *In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2013 WL 2456612, at \*24, 26-27 (E.D. Mich. June 6, 2012) ("*Automotive Parts*"); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 583 (M.D. Pa. 2009) ("*Chocolate*"); *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at \*9 (N.D. Ill. Nov. 5, 2009) ("*Filters*"); *In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*, No. 14-MD-2508, 2015 WL 5166014, at \*28 (E.D. Tenn. June 24, 2015) ("*Cast Iron*"); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1156-57 (N.D. Cal. 2009).

***California***: IPPs bring a claim under the UCL's "unlawful" prong, alleging that Defendants' "violations of federal antitrust law … also constitute violations of" the UCL. C&I, ¶ 588; EU ¶ 616; Cal. Bus. & Prof. Code § 17200, *et seq.* A UCL action "provides its own distinct … remedies for unlawful business practices, using other laws … to define what is 'unlawful[.]'" *Rose v. Bank of Am.*, 57 Cal. 4th 390, 396-397 (2013); *see also AT&T Mobility*

*LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1107, n.1 (9th Cir. 2013) ("violation of the Cartwright Act [Cal. Bus. & Prof. Code §§ 16700-16770] is, by definition, actionable under the UCL"). Claims based on illegal price-fixing regularly proceed under the UCL and do not "sound in fraud." *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 894-96 (E.D. Pa. 2012) ("*Eggs*"); *Automotive Parts*, 2013 WL 2456612, at *28-29.

**District of Columbia**: The District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.* ("DCCPPA"), "subsumes a Sherman Act claim and creates an indirect purchaser cause of action for conspiratorial price-fixing regardless of whether defendants have engaged in deceptive conduct." *Chocolate*, 602 F. Supp. 2d at 583-84. IPPs' claim, based on Defendants' price-fixing, is not dependent upon allegations of fraudulent conduct. EU ¶¶ 625-634. *See also Eggs*, 851 F. Supp. 2d, at 897-98; *LCD*, 586 F. Supp. 2d, at 1126; *Automotive Parts*, 2013 WL 2456612, at *24-25; *Filters*, 2009 WL 3754041, at *9.

**Florida**: IPPs allege Defendants' price-fixing was an "unfair method of competition" in violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201(2), *et seq.* ("FDUTPA"). *Id.* § 501.204(1) (FDUTPA prohibits "[u]nfair methods of competition"); C&I ¶ 605 ("Defendants' conduct was an unfair method of competition"); EU ¶ 643 (same). Fraudulent conduct is not a required element of an FDUTPA unfair competition claim, and claims based on price-fixing alone regularly proceed under the FDUTPA. *See, e.g.*, *Eggs*, 851 F. Supp. 2d, at 899-901, nn.32-33; *Automotive Parts*, 2013 WL 2456612, at *23-24; *In re Magnesium Oxide Antitrust Litig.*, Civ. No. 10-5943, 2011 WL 5008090, at *26 (D.N.J. Oct. 20, 2011) ("*Magnesium Oxide*"). Defendants cite to *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 946 (N.D. Ill. 2009) ("*Potash*") (MTD at 24), but the FDUTPA claim was dismissed under Rule 9(b) because it was "premised on fraudulent conduct." *Id.* at 947.

*Hawaii*: The Hawaii consumer protection statutes prohibit "unfair methods of competition" and explicitly permit indirect purchasers to bring antitrust actions. *See* Hawaii Rev. Stat. Ann. § 480-1, *et seq.*; *id.* § 480-2(a) ("Unfair methods of competition … are unlawful"); *id.* § 480-3 (permitting indirect purchaser suits); *id.* § 480-4(a) ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is illegal."). The IPPs allege exactly that type of unlawful conduct (EU ¶¶ 647-651) sufficient to state a claim under the Hawaii statute. *Magnesium Oxide*, 2011 WL 5008090, at *26; *Cast Iron*, 2015 WL 5166014, at *30, 43 (price-fixing allegations stated claim of "unfair methods of competition").

*Illinois*: IPPs allege Defendants' price-fixing was "unfair" conduct in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1, *et seq.* ("ICFA"); this claim is not dependent on allegations of deceptive conduct. *See id.* at 505/2 (ICFA prohibits "[u]nfair methods of competition"). C&I ¶ 613, EU ¶ 656. Rule 9(b) does not apply to allegations of unfair price-fixing. *Siegel v. Shell Oil Co.*, 480 F .Supp. 2d 1034, 1043-49 (N.D. Ill. 2007) (applying Rule 8 in denying motion to dismiss ICFA claims based on price-fixing allegations). *See also Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) (Rule 8 applies to ICFA claims for unfair conduct).

*Massachusetts*: IPPs' claim under the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A § 1, *et seq.* ("MaCPA"), is based on Defendants' anticompetitive conduct and is not dependent on any allegations of deceptive conduct. EU ¶¶ 661-670. Allegations of fraudulent conduct are not necessary in order to state an antitrust-based claim under MaCPA. *See, e.g.*, *Eggs*, 851 F. Supp. 2d at 903-904, n.36.

**Michigan**: IPPs allege that Defendants' price-fixing conduct constituted unfair or unconscionable conduct in violation of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.* ("MiCPA"). EU ¶ 676. MiCPA prohibits "unfair, unconscionable, or deceptive methods, acts or practices," including "charging the consumer a price that is grossly in excess of the price at which similar property or services are sold." Mich. Comp. Laws Ann. § 445.903(1)(z). Here, IPPs allege they paid supra-competitive prices for Broilers (EU ¶¶ 399-402, 427) which is sufficient to state a claim and thus need not allege any deceptive conduct in order to proceed under MiCPA. *See In re Solodyn Antitrust Litig.*, No. CV 14-MD-02503-DJC, 2015 WL 5458570, at *17 (D. Mass. Sept. 16, 2015).

**Montana**: The IPPs' claim that Defendants' price-fixing conduct violated the Montana Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code § 30-14-103, *et seq.*, and § 30-14-201, *et seq.* ("MUTPCPA"), (EU ¶¶ 691-95), does not depend on any allegation of fraudulent conduct, nor need it do so. *See* Mont. Code § 30-14-103 (prohibiting "[u]nfair methods of competition"); *id*. § 30-14-205 (**"**unlawful … to enter an agreement for the purpose of fixing the price or regulating the production of an article of commerce"). *See also In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d at 1013 (E.D. Mich. 2014); *Cast Iron*, 2015 WL 5166014, at *32.

**Nebraska**: Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1602, *et seq.* ("NCPA"), makes unlawful "[a]ny contract, combination, in the form of trust of otherwise, or conspiracy in restraint of trade or commerce[.]" *Id*. § 59-1603. "The Act was intended to be an antitrust measure to protect Nebraska consumers from monopolies and price-fixing conspiracies." *Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 37-38 (Neb. 2004). IPPs' claims under the NCPA are grounded in Defendants' price-fixing conduct (C&I ¶¶ 628-637; EU ¶¶ 696-705);

and IPPs' need not rely on any allegation sounding in fraud to state an NCPA claim. *See, e.g.*, *LCD*, 586 F. Supp. 2d 1109, 1127 (N.D. Cal 2008); *Solodyn*, 2015 WL 5458570, at \*18.

*Nevada*: Under the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.* ("NDTPA"), a "person engages in a 'deceptive trade practice' when … he or she knowingly … [v]iolates a state or federal statute or regulation relating to the sale or lease of goods or services." *Id*. § 598.0923. Accordingly, IPPs' allegations that Defendants violated the Sherman Act provides a basis for their claims under the NDTPA independent from any fraud allegation. *See* C&I ¶¶ 638-647; EU ¶¶ 706-715.

*New Hampshire*: IPPs allege Defendants' price-fixing was "unfair" in violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann., tit. XXXI, § 358-A:1, *et seq.* ("NHCPA"). *See id.* § 358-A:2 (NHCPA prohibits "any person to use any unfair method of competition"); C&I ¶ 653 ("Defendants' conduct was unfair"); EU ¶ 721 (same). *See also LaChance v. U.S. Smokeless Tobacco Co.*, 931 A.2d 571 (N.H. 2007) (the NHCPA is intended to apply to conduct "associated with the antitrust realm.").

*New Mexico:* IPPs allege Defendants' price-fixing constituted "'unconscionable trade practices' in that such conduct … resulted in a gross disparity between the value received by the New Mexico class members and the price paid by them for Broilers" in violation of the New Mexico Unfair Trade Practices Act, N.M. Stat. Ann. § 57-12-3, *et seq.* ("NMUTPA"). C&I ¶ 666; EU ¶ 734. "Courts permit plaintiffs to bring price-fixing claims under the [NMUTPA] if the plaintiff alleges a 'gross disparity' between the price paid for a product and the value received." *Cast Iron*, 2015 WL 5166014, at \*29; *see also Eggs*, 851 F. Supp. 2d at 904-907; *Automotive Parts*, 2013 WL 2456612, at \*25-27; *Chocolate*, 602 F. Supp. 2d at 585-86; *LCD*, 586 F. Supp. 2d at 1127; *Filters*, 2009 WL 3754041, at \*9.

**North Carolina:** A violation of antitrust law is, in and of itself, a violation of the North Carolina Unfair Trade and Business Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.* ("NCUDTPA"). *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 48 (4th Cir. 1983). Thus, IPPs' allegations of Defendants' Sherman Act violations alone are sufficient to maintain their claims under the NCUDTPA. C&I ¶¶ 670-679; EU ¶¶ 738-747. Other courts have recognized as much. *E.g.*, *Eggs*, 851 F. Supp. 2d at 908-11, n.44; *Automotive Parts*, 2013 WL 2456612, at *25-26; *DDVAP*, 903 F. Supp. 2d at 231; and *Sheet Metal*, 737 F. Supp. 2d at 400.

**North Dakota:** IPPs allege Defendants' price-fixing conduct violated the North Dakota Unfair Trade Practices Law, N.D. Cent. Code § 51-10-01, *et seq.* ("NDUTPL"), which prohibits conduct that "tend[s] … to lessen competition, or unreasonably to restrain trade[.]" *Id.* § 51-10-03; EU ¶¶ 748-757. When a claim involves anticompetitive conduct, the NDUPTL does not require allegations of fraudulent conduct.

**Rhode Island:** IPPs allege Defendants' price-fixing violated the "unfair competition" prong of the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws, § 6-13.1-1, *et seq.* ("RIDTPA"). *See id.* § 6-13.1-2 (RIDTPA prohibits "[u]nfair methods of competition"); EU ¶¶ 769-781.  In antitrust-based claims brought under the RIDTPA, no allegations of fraudulent conduct are necessary.  *See, e.g.*, *Niaspan*, 42 F. Supp. 3d at 761-62; *Cast Iron*, 2015 WL 5166014, at *29; *Auto. Parts*, 50 F. Supp. 3d at 892.

**South Carolina:** IPPs allege claims under the unfair competition prong of South Carolina's Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.* ("SCUTPA"), which does not depend on any allegations of fraudulent conduct. *See id.* § 39-5-20(a) (SCUTPA prohibits "[u]nfair methods of competition"); C&I ¶¶ 691-699; EU ¶¶ 782-790.  Antitrust-based claims regularly proceed under the SCUTPA. *See, e.g.*, *In re Lithium Ion Batteries Antitrust*

*Litig.*, No. 13-MD-2420, 2014 WL 4955377, at *21 (N.D. Cal. Oct. 2, 2014); and *Welchlin v. Tenet Healthcare Corp.*, 366 F. Supp. 2d 338, 354 (D.S.C. 2005).

*Utah CSPA:* IPPs allege Defendants' price-fixing conduct constituted unconscionable sales practices in violation of the Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.* ("CSPA"); *id.* §13-11-2 (CSPA "protect[s] consumers from … unconscionable sales practices); EU ¶¶ 801-812. In *Filters*, the court found a price-fixing claim alleged unconscionable conduct under the CSPA because plaintiffs alleged they "paid supra-competitive prices for the [price-fixed] filters." 2009 WL 3754041, at *9. Here, IPPs' allegations that Defendants' conduct caused them to pay supra-competitive prices for Broilers is thus sufficient. *See* EU ¶¶ 399-402, 427.

*Minnesota and South Dakota*: While claims under Minnesota's Consumer Fraud Act ("CFA") and South Dakota's Deceptive Trade Practices Act ("SDDTPA") require allegations of deceptive conduct, Rule 8 applies to antitrust claims brought under the statutes. *See In re DDVAP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 229 (S.D.N.Y 2012) ("*DDVAP*") (applying Rule 8 in denying motion to dismiss antitrust-based claims under South Dakota's Deceptive Trade Practices Act); *Sheet Metal Workers*, 737 F. Supp. 2d at 413-14 (applying Rule 8 in denying motion to dismiss antitrust-based claim under Minnesota's Consumer Fraud Act).

### 3. IPPs sufficiently allege causation for their consumer protection claims.

IPPs sufficiently allege antitrust injury caused by Defendants' price-fixing conduct. *See, e.g.*, C&I ¶¶ 372-379; EU ¶¶ 395-402 (IPPs paid supra-competitive prices because Defendants' overcharge was passed through to them from upstream purchasers). The complaints plainly allege causation. Because IPPs' consumer protection claims are grounded in Defendants' price-

fixing conduct (*see* Part A, *supra*), Defendants' argument that IPPs' failed to allege that

misrepresentations caused IPPs' injuries (MTD at 26-27) ignores the well-pled facts.

      **4.**      **IPPs are not required to plead reliance and inducement.**

As set forth above, IPPs' claims under the consumer protection statutes of California,

Nevada, and North Carolina are based on Defendants' price-fixing conduct, and that conduct is a

violation of the Sherman Act and consequently is a *per se* violation of the states' respective

statutes. As such, IPPs need not allege additional elements of reliance or inducement in order to

state their claims under these states' statutes. *See Eggs*, 851 F. Supp. 2d at 908-11, n.44

(discussing this issue under NCUDTPA). And reliance and inducement are not required elements

of a claim under South Dakota's DTPA. *See DDVAP*, 903 F. Supp. 2d at 229 (any person

"adversely affected" by violation of S.D. Cod. Law § 37-24-6 may bring action under SDDTPA;

violation of § 37-24-6 occurs "regardless of whether any person has in fact been mislead,

deceived, or damaged.").

      **5.**      **IPPs' allegations of a nationwide conspiracy are sufficient to state a claim for relief under the consumer protection laws of D.C., Florida, Illinois, Massachusetts, and New Hampshire.**

Plaintiffs' claims under the state consumer protection laws of the District of Columbia,

Florida, Illinois, Massachusetts, and New Hampshire do not require allegations of intrastate

conduct as Defendants contend. As noted above, a complaint alleging a nationwide antitrust or

consumer protection violation satisfies "intrastate" pleading requirements so long as the impact

of the conduct was felt within each state. *See In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d

390, 408 (S.D.N.Y. 2011) (collecting cases and finding DC's requirement satisfied). The alleged

conduct need not occur entirely or even predominately within a single state to be "intrastate" – as

courts have noted, any such requirement would render the state statute a "dead letter." *In re

Brand Name Prescription Drug Antitrust Litig.*, 123 F.3d 599, 613 (7th Cir. 1997) (noting that

there "are virtually no sales" anywhere in the United States that are "wholly intrastate"). Rather, under each state's statute, IPPs' allegations of nationwide conduct that increased prices paid by IPPs in each state are sufficient to state claims for relief.

*District of Columbia*: Defendants essentially concede that a plaintiff alleges sufficient conduct under the DCCPPA when the plaintiff alleges that conduct occurred within D.C. (MTD at 33.) Plaintiffs meet this standard by alleging that meetings in furtherance of the conspiracy took place in D.C. *See* EU ¶¶ 256, 268, 273. Under Defendants' own reasoning then, the DCCPPA applies to IPPs' claims. In addition, the DCCPPA applies to transactions that, "are formally consummated outside D.C., but have a substantial impact on consumers who reside and property that is located in the District." *Williams v. Cent. Money Co*., 974 F. Supp. 22, 27 (D.D.C. 1997). Here, IPPs have alleged that Defendants' conduct has substantially impacted class members, including those residing in D.C. by raising the price of Broilers purchased by Plaintiffs residing in D.C. *See* EU ¶¶ 632, 633.

*Florida*: The plain language of the FDUTPA does not limit the reach of the statute to conduct that occurs wholly within Florida, and courts have not required plaintiffs to plead that all of the unlawful conduct occurred in Florida. Allegations of "some injury in the state of Florida," are "sufficient to state a claim under the FDUTPA." *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 538 (E.D. Pa. 2010); *see also In re Wellbutrin XL Antitrust Litig*., 260 F.R.D. 143, 162 (E.D. Pa. 2009) ("[T]he amended complaint alleges that certain of the named plaintiffs were injured in part through reimbursements for purchases of overpriced drugs sold in the state of Florida. This suffices to state a claim under the FDUTPA."). Moreover, IPPs allege that actionable conduct occurred within the state. *E.g.*, EU at ¶ 242; C&I at ¶ 219 (alleging that

- 28 -

Defendants' senior executives attended the U.S. Poultry and Egg Association meeting in Amelia Island, Florida).

*Illinois*: In *R. Rudnick & Co. v. G.F. Prot., Inc.*, the court emphasized that the "focus [of the statute] is on the harm and location of the *consumer*." No. 08 C 1856, 2009 WL 112380, at *2 (N.D. Ill. Jan. 15, 2009) ("to the extent there was an unfair practice, it was felt within this state. That [the ICFA-violating conduct] may have originated in another forum is of no consequence.") Accordingly, IPPs' allegations that Plaintiffs and Class Members paid supra-competitive prices for Broilers in Illinois as a result of Defendants' conduct are sufficient. *See, e.g.*, EU ¶¶ 28, 463-466, 654-659; C&I ¶¶ 23, 440-443, 611-615. Moreover, given that the Koch Defendants are headquartered within Illinois and all of their conduct emanated from Illinois (*e.g.*, EU ¶¶ 57-60), Defendants' "primarily and substantially" argument (MTD at 34-35) with respect to the ICFA should be given short shrift.

*Massachusetts*: Mass. Gen. Laws Ann. ch. 93A, § 9 does not limit claims to transactions that occurred "primarily and substantially within the Commonwealth." That limitation applies only to CPA § 11 claims. *See* Mass. Gen. Laws Ann. ch. 93A, § 11. As IPPs' CPA claim is based on § 9 (EU ¶¶ 669-670), Defendants' reliance on § 11 and the three business cases interpreting that section is misplaced. *See In re Asacol Antitrust Litig.*, No. 15-CV-12730-DJC, 2016 WL 4083333, at *13-14 (D. Mass. July 20, 2016); *Auto. Parts Antitust Litig.*, 29 F. Supp. 3d at 1011.

*New Hampshire*: The New Hampshire Supreme Court, stressing that the New Hampshire CPA is broad in sweep, has explained that a pleading sufficiently states a claim under the CPA if the "allegations encompass conduct which was part of trade or commerce that had direct or indirect effects on the people of [New Hampshire]." *LaChance v. U.S. Smokeless Tobacco Co.*, 931 A.2d 571, 578 (N.H. 2007). Here, IPPs allege just that: Defendants' conduct – artificially

raising the price of Broilers – affected the people of the state. *See* EU ¶¶ 718-725; C&I, ¶¶ 500-502, 650-656. At least two courts, following the guidance of *LaChance*, have upheld New Hampshire CPA claims in situations nearly identical to the present action. *See In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 234-35 (M.D. Pa. 2010); *In re Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litig.*, No. CIV. 12-169, 2013 WL 5503308 (D.N.J. Oct. 2, 2013).

**B.** **IPPs Assert Price-Fixing Claims That are Actionable under the Consumer Protection Laws.**

State consumer protection laws are broadly worded and are to be liberally construed, typically authorizing price-fixing claims. *See, e.g.*, *Sheet Metal Workers*, 737 F. Supp. 2d at 405. They are modeled after the Federal Trade Commission Act, 15 U.S.C. § 41, *et seq.*, (the "FTC Act"), which provides guidance for interpreting state consumer protection statutes. *Windy City*, 536 F.3d at 669 (7th Cir. 2008). Since "[i]t is well-established that the government may use the FTC Act to enforce antitrust laws," "[antitrust violations] constitute the kind of deceptive acts and practices contemplated by [consumer protection statutes]." *New York v. Feldman*, 210 F. Supp. 2d 294, 302 (S.D.N.Y. 2002).

**1.** **Allegations of price-fixing are actionable under consumer protection laws of Arkansas, D.C., Michigan, Minnesota, New Mexico, Nevada, North Dakota, Oregon, Rhode Island, South Dakota, the Utah UPA, and the Utah CSPA.**

Defendants challenge IPPs' claims under the consumer protection statutes that do not specifically identify price-fixing as a form of prohibited conduct. (*See* MTD at 29-30.) Yet, "enumeration" of prohibited conduct within uniform consumer protection statutes is not intended to represent "an exclusive or exhaustive list." *See, e.g.*, *Automotive Parts*, 2013 WL 2456612, at *25; *Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 723 (D.C. 2003) ("While [the DCCPA] enumerates a number of specific unlawful trade practices, *see* D.C. Code § 28-3904,

the enumeration is not exclusive."). As demonstrated in Part III.B above, price-fixing claims are

actionable under the states' consumer protection statutes. Defendants cite no compelling

authority to the contrary. Thus:

*New Mexico*: "Courts permit plaintiffs to bring price-fixing claims under the [New

Mexico UTPA] if the plaintiff alleges a 'gross disparity' between the price paid for a product and

the value received." *Cast Iron*, 2015 WL 5166014, at *29; *see also Eggs*, 851 F. Supp. 2d at 904-

907; *Automotive Parts*, 2013 WL 2456612, at **25-27; this IPPs have done. C&I ¶ 666 (alleging

Defendants committed unconscionable practice because gross disparity in prices paid for

Broilers); EU ¶ 734 (same).

*North Dakota*: Defendants' assertion that the North Dakota UTPL prohibits only selling

goods "at less than cost" (MTD at 29) clearly runs afoul of *Howe*, 656 N.W.2d at 287, where the

North Dakota Supreme Court upheld certification of a NDUTPL class alleging overcharges by a

monopolist.

*Michigan*: The court in *Cast Iron*, 2015 WL 5166014, at *29 (*see* MTD at 29) dismissed

the Michigan CPA claim "in the absence of definitive case law" only because the plaintiffs failed

to address it. However, as set forth above in Part III.B.1, antitrust claims may proceed under the

Michigan CPA. *See Solodyn*, 2015 WL 5458570, at *17.

*Utah*: The Utah Unfair Practices Act allows price-fixing claims as it specifically prohibits

unfair practices "by which fair and honest competition is destroyed or prevented." Utah Code

Ann. § 13-5-17. Defendants' reliance on *Anapoell v. Am. Express Bus. Fin. Corp.*, No. 2:07-CV-

198-TC, 2007 WL 4270548, at *8 (D. Utah Nov. 30, 2007), is misplaced as the court dismissed

the claims of a plaintiff who alleged no harm to competition, noting that the "UPA is meant to

compensate for an injury caused by a decrease in competition[.]"

**Nevada**: Claims based on antitrust violations, including price-fixing, may be brought under the Nevada DTPA. *See In re Domestic Drywall Antitrust Litig.*, No. 13-2437, 2016 WL 3769680, at *8 (E.D. Pa. July 13, 2016) ("*Drywall*"); *In re Suboxone Antitrust Litig.*, 64 F. Supp. 3d 665, 702 (E.D. Pa. 2014).

**South Dakota**: Antitrust-based claims are actionable under South Dakota's Deceptive Trade Practices Act. *See DDAVP*, 903 F. Supp. 2d at 229.

**Minnesota**: The Minnesota Consumer Fraud Act ("CFA") applies to price-fixing. *Sheet Metal Workers*, 737 F. Supp. 2d at 414 (emphasis in original) ("these statutes support a cause of action by *any person injured* as a result of prohibited acts, as long as that cause of action benefits the public, and even if that person did not purchase the defendant's goods.").

**Oregon**: The Oregon Unlawful Trade Practices Act, Or. Rev. Stat. Ann. § 646.607, prohibits "any unconscionable tactic in connection with selling … goods…." Price-fixing constitutes an "unconscionable tactic." The court's decision in *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1116 (N.D. Cal. 2007), is inapplicable because it did not address whether price-fixing constitutes an "unconscionable tactic."

Arkansas, D.C., Rhode Island, and Utah CSPA: See cases cited in Part III.B.1.

**2.     Defendants' "Remoteness" Argument Fails.**

Defendants argue that IPPs' consumer protection claims fail on a proximate cause argument, drawing an analogy to the antitrust standing rules under *AGC*. Even assuming Defendants are correct that proximate cause under state consumer protection laws is analogous to "directness" of injury under AGC, defendants' "remoteness" argument fails because Plaintiffs satisfy the AGC standard for direct injury. *Supra*, Section I.B.3. Plaintiffs sustained "direct" injuries because IPPs paid artificially-inflated prices and thus were injured when they purchased

price-fixed Broilers. Therefore, IPPs' consumer protection law claims are not too "remote" to establish standing.

Defendants rely on *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 WL 3988488, at *18 (N.D. Ill. June 29, 2015) ("*DFA*") to challenge the IPPs' claims as too remote under the consumer protection laws of California, Arkansas, North Carolina and Florida. But in *DFA*, the indirect purchaser plaintiffs were "downstream participants in a retail market (***finished dairy products***), which is separate from the allegedly restrained markets (spot cheese and milk ***futures*** bought and sold on a commodities exchange)." *DFA*, 2013 WL 4506000, at *12 (N.D. Ill. Aug. 23, 2013) (emphasis added). Indeed, "the allegedly price-fixed products (commodities/futures contracts) [were] not even components of the products that [p]laintiffs purchased." *Id.* As described above, IPPs here do not suffer from this type of remoteness because they all purchased Broilers, and thus were participants in the same market that was the subject of the illegal conspiracy. *Supra*, section I.B.1.

For example, as explained by *DFA*, remoteness does not bar IPPs' claim under California's UCL because indirect purchaser plaintiffs have standing under the UCL where "plaintiffs – one step removed from the alleged price-fixers – actually used defendants' products and had indirect dealings with defendants." *DFA*, 2015 WL 3988488, at *18 (describing *Clayworth v. Pfizer, Inc*., 233 P.3d 1066, 1087 (Cal. 2010)). Here, IPPs are similarly situated to the plaintiffs in *Clayworth* rather than those in *DFA*: IPPs are one step removed from the price-fixers, actually purchased and used the Broilers, and had indirect dealings with the Defendants. For the same reasons, IPPs' claims under the consumer protection laws of Arkansas, Florida, and North Carolina are not too remote. *See also In re Pool Prod. Distrib. Mkt. Antitrust Litig.*, 946 F.

Supp. 2d 554, 568-69 (E.D. La. 2013); *Eggs.*, 851 F. Supp. 2d at 900 (indirect purchasers can sue under Florida's DUTPA).

Similarly, because IPPs purchased price-fixed Broilers, their claims are not too remote under the Nebraska CPA. *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293 (Neb. 2006), relied on by Defendants, does not compel a different conclusion. In *Kanne*, plaintiffs alleged the prices of **retail goods** they purchased were inflated because defendants forced merchants to pay more for the **debit card processing services** by "tying" debit card services to credit card services, and the merchants in turn passed the costs on to consumers. *Id*. at 295-296. Plaintiffs' claims were found to be "derivative and remote" because they did "not allege that their injuries stem from their purchases of the purportedly tied debit network processing services that [defendants] provided." *Id*. at 297-297. Here, IPPs purchased price-fixed Broilers, the very goods that were the subject to the Defendants' unlawful scheme.

### 3. IPPs' Consumer Protection Claims are not barred by Illinois Brick.

Indirect purchasers are permitted to bring antitrust-based claims under the *consumer protection* statutes of Florida, Missouri, South Carolina, and Illinois. That these states do not permit indirect purchasers to bring claims under their antitrust statutes is irrelevant. (*See* MTD at 9-10.) IPPs allege that Defendants' price-fixing conspiracy constituted unfair or unconscionable conduct; such allegations satisfy the elements of each state's consumer protection statute. *Cf. supra* at III.A. Defendants are not absolved of liability for these violations of consumer protection laws merely because their misconduct *also* violates state and federal antitrust laws.

**Florida.** It is well-settled that indirect purchasers have standing to maintain an action under FDUTPA for conduct that violates antitrust laws, such as Defendants' price-fixing scheme here. In the words of the highest Florida court to consider the matter: "A fair reading of [the FDUTPA] reveals no intention by the legislature to limit suits for price-fixing to direct

purchasers only." *Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100, 104-05 (Fla. Dist. Ct. App. 1996). *See also Solodyn*, 2015 WL 5458570, at *16; *Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, No. 09-CV-00852, 2012 WL 3841397, at *7 (E.D. Wis. Sep. 5, 2012). *DFA*, 2015 WL 3988488, at *19, relied on by defendants, did not hold that indirect purchasers may not bring antitrust claims under FDUPTA; rather, *DFA* held that the indirect purchaser claims there were either (i) too remote, or (ii) a repackaging of a failed antitrust claim.

   **Missouri.** The Missouri Supreme Court explicitly held that the Missouri Merchandising Practices Act ("MMPA") provides a remedy to indirect purchasers:

> [The] statute's broad language of "any person who has suffered any ascertainable loss" contemplates that other parties, besides the direct purchaser or contracting party, who suffer damages resulting from the violator's prohibited conduct under the Act are included among those eligible to receive restitution.

*Gibbons v. Nuckolls, Inc.*, 216 S.W.3d 667, 668-69 (Mo. 2007) (internal citation omitted). *See also In re Opana ER Antitrust Litig.*, No. 14 C 10150, 2016 WL 4245516, at *4 (N.D. Ill. Aug. 11, 2016) (holding that the MMPA's "broad language clearly encompasses the antitrust conduct alleged by [indirect purchaser plaintiffs]"); *In re Pool Prods. Dist. Mkt. Antitrust Litig.*, 946 F. Supp. 2d 554, 570-571 (E.D. La. 2013) (indirect purchasers may pursue claims based on allegations of antitrust conspiracies under the MMPA, noting that "the Missouri legislature has expressed no intent to incorporate federal antitrust standing limits into the MMPA"); *LCD*, 2011 WL 3268649, at *2-6 (certifying indirect purchaser class with MMPA claims); *Sheet Metal Workers*, 737 F. Supp. 2d 380, 415 (E.D. Pa. 2010) (MMPA permits indirect purchaser claims). The cases on which Defendants rely are inapposite. *See Suboxone*, 64 F. Supp. 3d at 701-02 (the plaintiffs "failed to identify any cases where indirect purchasers were permitted to bring claims under [the MMPA] for antitrust injury."); *Ireland v. Microsoft Corp.*, No. 00CV-201515, 2001 Mo. App. LEXIS 2371 (Mo. Ct. App. Jan. 24, 2001)(this non-precedential state appellate court

"memorandum decision" (Mo. Sup. Ct. R. 84.16(b)) was abrogated by *Gibbons*, as discussed in

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp.

2d 380, 415 (E.D. Pa. 2010)); *FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 49 (D.D.C. 1999)

(predates *Gibbons*).

> **South Carolina.** SCUTPA provides:

>> [*a*]*ny* person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action … to recover actual damages.

S.C. Code Ann. § 39-5-140. While South Carolina courts have not explicitly addressed whether

this language applies to indirect purchasers, the statutory language is strikingly similar to the

MMPA, which applies to indirect purchasers. *Gibbons*, 216 S.W.3d 667 at 669. Thus, numerous

federal district courts have upheld indirect purchaser claims under the SCUTPA. *See, e.g.*, *Cast

Iron*, 2015 WL 5166014, at *32; *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co*.,

No. 13-CV-01180-BLF, 2015 WL 4755335, at *21 (N.D. Cal. Aug. 11, 2015); *Batteries*, 2014

WL 4955377, at *21. In the lone case relied on by Defendants for the contrary proposition,

*Aggrenox*, 2016 WL 4204478, at *9, the plaintiffs offered no authority to support the indirect

purchaser claims under SCUTPA.

> **Illinois.** Defendants assert that indirect purchasers cannot bring antitrust-based claims

under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") based on the

premise that the Illinois Antitrust Act precludes actions by indirect purchasers. (MTD at 32),

(citing *Gaebler v. New Mexico Potash Corp.*, 676 N.E.2d 228, 229-30 (Ill. App. Ct. 1996);

*Laughlin v. Evanston Hosp.*, 550 N.E.2d 986, 993 (Ill. 1990)). Defendants are wrong for two

reasons. First, indirect purchasers *can* bring claims under the Illinois Antitrust Act based on

*Shady Grove*. *See supra* Section II.C. Second, indirect purchasers can bring antitrust-based

claims under the ICFA. *Siegel v. Shell Oil Co*., 480 F. Supp. 2d 1034, 1036-37, 1048-49 (N.D. Ill. 2007) (holding that a class of plaintiffs *could* assert claims under the ICFA based on an antitrust theory, noting "Defendants have not established that *Laughlin* prohibits Plaintiffs' claim for concerted, artificial price inflation under the Consumer Fraud Act."). *See also id.* at 1049 n.12 (dismissing *Gaebler v. New Mexico Potash Corp.*, 676 N.E.2d 228, 229-30 (Ill. App. Ct. 1996), which Defendants cite, noting that *Gaebler* is not followed by other Illinois courts).

## C.    C&I Plaintiffs are Considered "Natural Persons" or "Consumers" under Nevada, Oregon, and Vermont Consumer Protection Statutes.

Defendants wrongly assert that C&I Plaintiffs are not protected parties under the consumer protection statutes of Nevada, Oregon, and Vermont because these states provide standing only to "natural persons" or "consumers."

*Nevada*: Recently, courts held that business entities who sue as indirect purchasers of a product purchased primarily for business purposes, including resale, have standing under Nevada's DTPA. *Drywall*, 2016 WL 3769680, at *8; *see also Del Webb Communities, Inc. v. Partington*, 652 F.3d 1145, 1152 (9th Cir. 2011).

*Oregon*: The plain language of the Oregon UTPA belies Defendants' assertion that it only reaches "consumers." In fact, the UTPA permits a "person" to sue and defines "person" to include both natural persons and corporations. Or. Rev. Stat. § 646.605(4). Indeed, courts in Oregon have found that the UTPA is to be interpreted liberally as a protection to consumers and businesses alike. *Denson v. Ron Tonkin Gran Turismo, Inc*., 566 P.2d 1177, 1179 n.4 (Or. 1977). In addition, the UTPA does not indicate that plaintiffs must be in a consumer relationship with the defendant, and the UTPA does not require an underlying transaction between victim and violator. *Gordon, PC v. Rosenblum*, 370 P.3d 850 (Or. 2016), *review allowed sub nom. Gordon v. Rosenblum*, 379 P.3d 522 (2016). *Benson Tower Condominium Owners Ass'n v. Victaulic Co.*,

22 F. Supp. 3d 1126 (D. Or. 2014), cited by Defendants, is inapposite. In *Benson,* the court

declined to extend OUTPA protections because the plaintiff did not purchase defendants'

products, it purchased dwelling units which incorporated defendants' products. *Id*. at 1136-37.

That is nothing like IPPs' claims here.

> **Vermont**: Defendants misstate the scope of Vermont's Consumer Fraud Act ("Vermont

CFA"). As Vermont's Supreme Court put it, "we hold unequivocally that business entities are

entitled to the same rights under the [Vermont Consumer Fraud] Act as other consumers." *Rathe*

*Salvage, Inc. v. R. Brown & Sons, Inc.*, 965 A.2d 460, 467 (Vt. 2008); *see also* Vt. Stat. Ann. tit.

9, § 2451a(a) (Vermont CFA defines "consumer" to include persons who purchase goods "for

the use or benefit of his or her business or in connection with the operation of his or her

business"). Here, not only are C&I Plaintiffs, as "business entities," protected parties under

Vermont's CFA, but C&I Plaintiffs clearly fall within the coverage of the statute as they allege

that they do in fact use Broilers for their use, benefit, or in the operation of their businesses. *See,*

*e.g., C&I ¶ 361-62. The only case that Defendants cite in support of their limited interpretation

of the Vermont CFA is *Elkins v. Microsoft Corp.*, 817 A.2d 9, 12 (Vt. 2002), but that case does

not hold that the CFA's definition of "consumer" excludes business entities.

**D.      Rule 23 Permits IPPs to Pursue Their Montana and South Carolina Consumer
Protection Claims in a Representative Capacity.**

> Defendants' argument that Plaintiffs are barred from bringing their Montana and South

Carolina consumer protection claims in a representative capacity is wrong. State laws that

prohibit the maintenance of class action lawsuits are superseded by Federal Rule of Civil

Procedure 23 when the law is procedural in nature. *Shady Grove Orthopedic Assocs. v. Allstate*

*Ins. Co.*, 559 U.S. 393, 431 (2010). Defendants' reliance on *DRAM*, 516 F. Supp. 2d 1072, 1103-

04 (N.D. Cal. 2007), is inappropriate as it predates *Shady Grove* by three years. The law is clear

- 38 -

that the class action bars in the MCPA and SCUTPA are procedural in nature and thus have no operative effect in federal courts:

*Montana:* The only court in Montana to consider the issue expressly held "that the MCPA class action prohibition is procedural in nature and that Rule 23 applies to determine whether a claim may be brought as a class action." *Wittman v. CB1, Inc.*, No. CV 15-105-BLG-BMM, 2016 WL 3093427, at *6 (D. Mont. June 1, 2016) ("the prohibition alters only the procedural means by which that remedy may be pursued. The class action prohibition itself does not add, subtract, or define any of the necessary elements of the claim."); *see also Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d at 1013 (price-fixing claims brought under MUTPCPA can proceed on class basis); *Cast Iron*, 2015 WL 5166014, at *32 (same).

*South Carolina*: Numerous courts applying *Shady Grove* in the context of SCUTPA have held that Rule 23 controls and claims may proceed on a class basis. *See Los Gatos Mercantile, Inc.*, 2015 WL 4755335, at *21; *In re Optical Disk Drive Antitrust Litig.*, 2012 WL 1366718, at *8; *In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648, 654 (S.D. Cal. 2014); *Cast Iron*, 2015 WL 5166014, at *32; *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 264 (S.D. Ill. 2015). In any event, whether the plaintiffs may pursue class claims under the MCPA or the SCUTPA is not a proper issue for a motion to dismiss, but for class certification.

## E.     IPPs are Entitled to Restitution under California's UCL.

Defendants concede, as they must, that California's UCL provides for monetary relief in the form of restitution. (MTD at 37.) Contrary to Defendants' position, the UCL contains no requirement that a victim of an illegal business practice has paid money directly to the transgressor in order to seek restitution. *See, e.g.*, *In re Diotropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1103 (N.D. Cal. 2007) (indirect purchasers may seek restitution under UCL even though they did not pay higher prices directly to defendants); *In re Wellbutrin XL Antitrust Litig.*,

260 F.R.D. 143, 160 (E.D. Pa. 2009) (same). IPPs' ownership interest in the money they paid for

Broilers supports a proper request for restitution under the UCL. *See, e.g.*, C&I ¶¶ 429, 431, 595.

**IV.     PLAINTIFFS STATE RECOGNIZED CLAIMS FOR UNJUST ENRICHMENT**

**A.     Plaintiffs' Unjust Enrichment Claims Satisfy Rule 8(a).**

**1.     Plaintiffs allege facts sufficient to support each element of their unjust
enrichment claims.**

Defendants suggest that Plaintiffs must list the unjust-enrichment elements from each

state (MTD at 38), but there is no such pleading requirement. Under Rule 8, a plaintiff need not

formulaically catalogue the elements of a given claim; they only need to allege facts supporting

those elements. *Christensen v. Cty. of Boone, IL*, 483 F.3d 454, 459 (7th Cir. 2007). Moreover,

unjust enrichment claims are "universally recognized causes of action that are materially the

same throughout the United States." *Singer v. AT&T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla.

1988); *see also In re Mercedes-Benz Tele Aid Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009); *In re

Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 679 n.40 (S.D. Fla. 2004). Indeed,

"when stripped to its essence, a claim of unjust enrichment requires IPPs to allege sufficient facts

to show that Defendants received a benefit and under the circumstances of the case, retention of

the benefit would be unjust." *Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d at 1014-29. IPPs

adequately allege facts that support these two core elements: Defendants received a benefit from

IPPs in the form of ill-gotten profits from the sale of Broilers and it would be inequitable to

allow Defendants to retain these gains. This satisfies Rule 8. *Id.*

**2.     Plaintiffs need not allege that they conferred a direct benefit on Defendants.**

Defendants argue that the complaints fail to allege that Plaintiffs conferred a direct

benefit upon Defendants because that benefit first passed through a third party (MTD at 40-41),

but "[t]he critical inquiry is whether the plaintiff's detriment and the defendant's benefit are

related to, and flow from, the challenged conduct"—not the relationship between the parties. *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004).

Each of the ten states identified by Defendants has recognized unjust enrichment even where a benefit doesn't flow directly from a plaintiff to a defendant. **Arizona:** *Brown v. Pinnacle Restoration LLC*, No. 1 CA-CV 12-0550, 2013 WL 3148654, at *2-3 (Ariz. Ct. App. June 18, 2013). **Florida:** *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222 (Fla. Dist. Ct. App. 2005); *see also Williams v. Wells Fargo Bank, N.A.*, No. 11-21233, 2011 WL 4368980, at *9 (S.D. Fla. Sept. 19, 2011). **Maine:** *Auto Parts*, 29 F. Supp. 3d at 1020 (cited by Defendants but supports IPPs' position); *Everest v. Leviton Mfg. Co.*, No. CV-04-612, 2006 WL 381832, at *4 (Me. Super. Jan. 13, 2006). **Massachusetts:** *Massachusetts v. Mylan Labs.*, 357 F. Supp. 2d 314, 323 (D. Mass. 2005). **Michigan:** *Kammer Asphalt Paving Co., Inc. v. E. China Twp. Sch.*, 504 N.W.2d 635, 640-41 (Mich. 1993); *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 904-905 (Mich. Ct. App. 2006). **North Carolina:** *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 411 S.E.2d 916 (N.C. 1992). **Rhode Island:** *King Richard's Subaru, Inc. v. Kennedy*, No. PC/02-3981, 2003 WL 22790639, at *3 (R.I. Super. Nov. 7, 2003). **Utah:** *Emergency Physicians Integrated Care v. Salt Lake Cty.*, 167 P.3d 1080, 1085 (Utah 2007). **West Virginia:** *Midwestern Midget Football Club Inc. v. Riddell, Inc.*, No. CV 2:15-00244, 2016 WL 3406129, at *8 (S.D.W. Va. June 17, 2016). **Wisconsin:** *Backus Elec., Inc. v. Hubbartt Elec., Inc.*, 866 N.W.2d 405 (Wis. Ct. App. 2015).

Moreover, courts have repeatedly rejected Defendants' direct-benefit argument where antitrust defendants conspire to fix prices, and – as a result – indirect purchases pay overcharges for those items. *See, e.g.*, *Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d at 1015-16, 1017-18, 1020-21, 1024-29; *Eggs*, 851 F. Supp. 2d at 927-29, 931-95; *In re TFT-LCD (Flat Panel) Antitrust*

*Litig.*, 599 F. Supp. 2d 1179, 1189-90, 1192-93 (N.D. Cal. 2009). Defendants' citations to the contrary (MTD at 40-41, n.28) either support IPPs' position, are distinguishable, or are irrelevant.

> **3.    "Special Duty" is not an unjust enrichment element in either South Carolina or Illinois.**

Contrary to Defendants' assertions, there is no requirement in South Carolina or Illinois that a defendant owes a "special duty" to an unjust-enrichment plaintiff. To recover on a South Carolina unjust enrichment claim, a plaintiff need only show: (1) a benefit conferred upon the defendant by plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for it to retain the benefit. *Ellis v. Smith Grading & Paving, Inc*., 366 S.E.2d 12, 15 (S.C. Ct. App. 1998). Defendants rely on *In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461, 464-65 (D. Md. 2005), for their special-duty argument under South Carolina law, but *Microsoft* misinterpreted the South Carolina Supreme Court's decision in *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E.2d 868 (S.C. 2000) and *Microsoft* has been subsequently criticized on that basis. *See Cast Iron*, 2015 WL 5166014, at *37; *Auto Parts Antitrust Litig.*, 29 F. Supp. 3d at 1026. On the contrary "[t]here is no requirement to allege a duty" under South Carolina law.  *See Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d at 1026.

Similarly, under Illinois law "there is no duty or privity requirement when bringing a claim for unjust enrichment." *Sobel v. Franks*, 633 N.E.2d 820, 829 (Ill. App. Ct. 1994) (*citing M.J. McCarthy Motor v. Van C. Argiris & Co*., 396 N.E.2d 1253 (Ill. App. Ct. 1979)). Defendants rely on *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920 (Ill. App. Ct. 2009), to support their argument under Illinois law. But *Martis* relied on a series of cases involving a narrow category of harm-to-the-public claims. And *Martis*'s mistaken expansion of

- 42 -

this narrow principle has since been sharply criticized. As the Illinois Appellate Court recently

explained, "*Martis* is not an accurate statement of the law on the equitable claim for unjust

enrichment." *Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*, 34 N.E.3d 1023, 1042-43 (Ill.

App. Ct. 2015),

**B.      California, Mississippi, and New Hampshire Recognize Standalone Unjust Enrichment Claims.**

Defendants argue that California, Mississippi, and New Hampshire do not recognize

unjust enrichment as a standalone cause of action (*see* MTD at 39), but there is considerable

authority to the contrary.

*California*: The California Supreme Court has held that a plaintiff is "entitled to seek

relief under traditional equitable principles of unjust enrichment" notwithstanding the plaintiff's

inability to obtain relief pursuant to other statutes. *Ghirardo v. Antonioli*, 924 P.2d 996, 1002,

1005 (Cal. 1996). *See also Eggs*, 851 F. Supp. 2d at 913; *Solodyn*, 2015 WL 5458570, at *20;

*Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014).

*Mississippi*: Mississippi recognizes unjust enrichment as an independent cause of action.

*See Franklin v. Franklin ex rel. Phillips*, 858 So. 2d 110, 121 (Miss. 2003) ("the claimant must

show 'there is no legal contract but … the person sought to be charged is in possession of money

or property which in good conscience and justice he should not retain, but should deliver to

another.'"); *see also Egg*s, 851 F. Supp. 2d at 913 ("[W]ith respect to Mississippi, there is

considerable authority that supports the existence of an independent state law claim for unjust

enrichment."); *In re Light Cigarettes Mktg. Sales Practices Litig.*, 751 F. Supp. 2d 183, 196 (D.

Me. 2010).

*New Hampshire*: *See Chocolate*, 749 F. Supp. 2d at 240 (upholding unjust enrichment

claim under New Hampshire law); *Gen. Insulation Co. v. Eckman Constr.*, 992 A.2d 613, 620-21

(N.H. 2010) ("A plaintiff is entitled to restitution for unjust enrichment if the defendant received a benefit and it would be unconscionable for the defendant to retain that benefit.").

Defendants do not dispute that Illinois recognizes unjust enrichment as a standalone claim. Rather, they argue that it must fail if IPPs' Illinois statutory claims fail. As indicated above, Plaintiffs have adequately pled such claims and may plead claims in the alternative.

## C.     Plaintiffs May Allege Both Unjust Enrichment and Claims at Law.

Defendants' contention that seven states prohibit IPPs from alleging unjust enrichment if IPPs also have an "adequate remedy at law" argument fails under the Federal Rules of Civil Procedure for two reasons. ***First***, Rule 8 allows Plaintiffs to plead unjust enrichment in the alternative despite any adequate remedies at law. Fed. R. Civ. P. 8; *Toscano v. Koopman*, 148 F. Supp. 3d 679, 689 (N.D. Ill. 2015); *Wabash Castings, Inc. v. Fuji Mach. Am. Corp*., No. 16 C 3629, 2016 WL 4765717, at **2-3 (N.D. Ill. Sept. 13, 2016). ***Second***, Rule 18 allows Plaintiffs to bring both equitable and legal claims in the same suit, regardless of whether one needs to be decided before the other (*i.e.*, Plaintiffs were not required to exhaust their legal claims in an earlier proceeding). Fed. R. Civ. P. 18; *Landers Frary & Clark v. Vischer Prod. Co*., 201 F.2d 319, 322-23 (7th Cir. 1953); and *VMS/PCA Ltd. P'ship v. PCA Partners Ltd. P'ship*, 727 F. Supp. 1167, 1171-72 (N.D. Ill. 1989). Defendants' argument ignores these rules.

## D.     Unjust Enrichment Claims are not Barred by *Illinois Brick*.

Plaintiffs have sufficiently pled each of the requisite elements of an unjust enrichment claim. *See supra section* IV.A. However, Defendants attempt a Catch-22 challenge to Plaintiffs' unjust enrichment claims, first arguing that Plaintiffs can assert unjust enrichment only in states that allow indirect purchaser antitrust and consumer protection claims (MTD at 10-11) and then claiming that Plaintiffs can assert unjust enrichment only in states where they have no other legal remedies (MTD at 42). Both of these arguments are wrong.

- 44 -

"[U]njust enrichment claims are viable regardless of the applicable state antitrust laws." *King Drug Co. of Florence, Inc. v. Cephalon, Inc*., 702 F. Supp. 2d 514, 540 (E.D. Pa. 2010); *id.* at 539 (rejecting argument that end payors' unjust enrichment claim was "end-run" around statutory limitations on remedies). In *Cardizem*, the court warned of confusing "[p]laintiffs' right to recover an equitable remedy under a common law claim based on principles of unjust enrichment with [their] right to recover a remedy at law for an alleged violation of a state's antitrust laws"; and further noted that common law claims may be successfully brought even where statutory or contract claims are unsuccessful. *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 669-71 (E.D. Mich. 2000). Other courts agree. *E.g.*, *In re Skelaxin (Metaxalone) Antitrust Litig*., No. 12-md-2343, 2013 WL 2181185, at *25 (E.D. Tenn. 2013) (plaintiffs' unjust enrichment claims are not a circumvention of state antitrust and consumer protection laws); and *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 46 (D.D.C. 2008). Using the same logic, IPPs' unjust enrichment claims may proceed even if some (or all) of their statutory claims are dismissed. Thus, IPPs' Florida, Massachusetts, Missouri, Montana, Rhode Island, South Carolina, and West Virginia unjust enrichment claims are not barred by *Illinois Brick*.

Even if Defendants were correct that *Illinois Brick* barred IPPs claims under the state antitrust (Rhode Island and West Virginia) and consumer protection (Florida, Missouri, and South Carolina) statutes, each of those states provide causes of action for unjust enrichment. The fact that indirect purchasers can sue under their *consumer protection* laws indicates that allowing unjust enrichment claims would not provide an "end run" around those states' laws, as the court recognized in *LCD*, 2011 WL 4501223, at **14-15 (N.D. Cal. Sep. 28, 2011).

Finally, Defendants cite no authority indicating that indirect purchasers are not permitted to bring suit under the Montana UTCPA; district courts regularly permit such claims. *See, e.g.*, *In re Cast Iron*, 2015 WL 5166014, at *32; *Auto. Parts*, 29 F. Supp. 3d at 1013; *In re New Motor*

*Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 192-93 (D. Me. 2004). Indeed,

Defendants' do not even challenge IPPs' claims as barred by *Illinois Brick*'s indirect purchaser

rule. (*See* MTD at 9-10.) IPPs should be able to bring those claims and an unjust enrichment

claim as well. In sum, the Court should sustain all of Plaintiffs' unjust enrichment claims.

## V. IPPS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

### A. The Period of Limitations is an Affirmative Defense and Rarely a Good Reason for Dismissal.

The Seventh Circuit has made clear that "because the period of limitations is an

affirmative defense, it is rarely a good reason to dismiss under [Fed. R. Civ. P.] 12(b)(6)." *Reiser*

*v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004). At this stage in the case, "the

question is only whether there is *any* set of facts that if proven would establish a defense to the

statute of limitations." *Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003).

Nevertheless, Defendants attack IPPs' complaints, which allege a particularly complex scheme

to manipulate poultry markets, by arguing that Plaintiffs should have uncovered their secret

conspiracy years before critical information became public. The complaints' allegations,

however, make clear that "a determination of timeliness is premature."

Furthermore, Defendants' arguments, even if successful, only serve to limit the scope of

recoverable damages. At a minimum, Plaintiffs can recover damages for the relevant limitations

period because Defendants' conspiracy constitutes a continuing violation. Under the continuing

violation doctrine, each of Defendants' overt acts in furtherance of the conspiracy started the

statutory period running anew, meaning that at the very least IPPs can recover for damages

sustained during the limitations period. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997); *In*

*re Evanston Northwestern Healthcare Corp. Antitrust Litig.*, No. 07 C 04446, 2016 WL

4720014, at *10 (N.D. Ill. Sept. 9, 2016) (a complaint is timely when it is filed within 4 years of the last act of a continuing violation/conspiracy).

### 1. IPPs' allegations are sufficient to invoke the discovery rule in 21 states.

Defendants acknowledge that the discovery rule applies to antitrust claims in Iowa, Kansas, Mississippi, Nevada, New Mexico, Rhode Island, Tennessee, and West Virginia, as well as the consumer protection claims in Montana, New Hampshire and Oregon. (MTD at 44-46.) But these are not the only states that apply the discovery rule. As set forth in Appendix B, Discovery Rule Application Chart, most of the IPP states would.

Under the discovery rule, the statute of limitations does not begin to run until the plaintiff either discovers, or a reasonable person in a plaintiff's position would have discovered, that they have been injured by wrongful conduct. *Arroyo v. United States*, 656 F.3d 663, 668 (7th Cir. 2011); *Braman v. The CME Group, Inc.*, 149 F. Supp. 3d 874, 884 (N.D. Ill. 2015). While the discovery rule charges plaintiffs with knowledge of what they could uncover as a result of reasonable diligence, plaintiffs are not required to "regularly monitor all their dealings for signs of injury or wrong-doing." *Whittington v. Indianapolis Motor Speedway Found., Inc.*, No. 1:06-CV-0333, 2007 WL 2701983, at *6 (S.D. Ind. Sept. 12, 2007); *see also In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 804 (N.D. Ohio 2011) (the law requires "*reasonable* diligence, not constant cynicism."). Moreover, where a plaintiff has no reason to suspect wrongdoing, "there may be no duty of inquiry at all." *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983). The law does not require that plaintiffs affirmatively allege specific facts constituting due diligence. Instead, the question is whether a reasonable person in plaintiffs' position would have discovered the injury if they had exercised due diligence. *Sidney Hillman Health Center of Rochester v. Abbott Labs, Inc.*, 782 F.3d 922, 930 (7th Cir. 2015). Here, IPPs

allegations, including that "Defendants' anticompetitive conspiracy, by its very nature, was self-concealing," leave little doubt that that dismissal now is premature. C&I ¶ 387; EU ¶ 410.

Defendants argue that since "IPPs' claims are based on public statements, articles, and other publicly available data, much of which was published well before 2012," IPPs *could* have discovered the conspiracy at an earlier time. (*See* MTD at 44.) The gist of this argument is that if discovering their elaborate scheme were humanly possible, it follows that the claims must be dismissed. Not so. The question under the discovery rule is not whether someone *could* have discovered the conspiracy at an earlier time, but whether a reasonable person in IPPs' position *should* have conducted an investigation and discovered the conspiracy.

As a matter of law, IPPs' awareness of increase in Broiler prices is not sufficient to charge them with investigating further, as the court recognized in *Filters*, 2009 WL 3754041, at *4. That court held that even though plaintiffs knew that prices of car filters were increasing, the statute of limitation did not begin to run until plaintiffs had "knowledge of the wrongful conduct alleged, or any of the facts that would have led them to the discovery of the alleged conduct." *Id.*

Ultimately, it took a confluence of events for IPPs to even suspect the possibility of a Broilers conspiracy. IPPs did not suspect a price-fixing conspiracy prior to the publication of *The Meat Racket* in February 2014 and a series of foreign investigations between late 2014 and early 2016 regarding collusion in the Broiler industry in other countries. *See* C&I ¶¶ 383-384; EU ¶¶ 406-407.

But even once IPPs learned that a conspiracy in the Broilers industry was a possibility, it was not until the *Wall Street Journal* published an article in January 2016 discussing collusion in the U.S. Broiler industry that a reasonable person would arguably have concluded that he or she may be a victim of an antitrust conspiracy and be expected to investigate further. *See* C&I

- 48 -

¶¶ 381, 385; EU ¶¶ 404, 408. In fact, Defendants explicitly cite only one fact that they claim should have led to some investigation before this point in time: a 2009 antitrust case against Pilgrim's Pride. (MTD DPP Compl. at 44 n.35.) But as the Complaints allege, that action asserted illegal unilateral conduct by Pilgrim's Pride and suggested "nothing about a horizontal conspiracy among Broiler producers to fix the price of Broilers." C&I ¶ 382; EU ¶ 405.

Consequently, Plaintiffs and members of the Classes "did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until shortly before filing" their complaints. *See* C&I ¶¶ 381, 387-88; EU ¶¶ 404, 410-411. This is enough at the pleadings stage. *In re Ready-Mixed Concrete Price Fixing Litig.*, 1:05-CV-00979, 2006 WL 2849711, at *2 (S.D. Ind. Sept. 29, 2006).

### 2. IPPs sufficiently allege fraudulent concealment in the remaining states.

In states that do not apply the discovery rule, statutes of limitations are tolled under the doctrine of fraudulent concealment. *See* Appendix D. The six states that would not apply the discovery rule –California, Florida, Hawaii, Michigan, Minnesota, and North Carolina – recognize the doctrine of fraudulent concealment. (*See* MTD at 44 n.31) (acknowledging that California, Michigan and Minnesota recognize the doctrine); *W. Brook Isles Partner's 1, LLC v. Com. Land Title Ins. Co.*, 163 So. 3d 635, 639 (Fla. Ct. App. 2015); *Rundgren v. Bank of N.Y. Mellon*, 777 F. Supp. 2d 1224, 1230 (D. Haw. 2011), *aff'd sub nom. Rundgren v. Bank of N.Y. Mellon Corp.*, 637 F. App'x 404 (9th Cir. 2016); *White ex rel. Dylan v. Maxim Healthcare Servs., Inc.*, 716 S.E.2d 441 (N.C. App. 2011).

The fraudulent concealment doctrine tolls the statute of limitations where: (1) defendants took affirmative steps to "divert attention, mislead, or prevent discovery" by injured parties of their causes of action, and (2) plaintiffs neither knew nor should have known of the existence of their cause of action. *Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, 85 F. Supp. 3d 1007,

1011 (E.D. Wis. 2015). Although Rule 9(b) requires plaintiffs to plead the affirmative steps taken to conceal the conspiracy with particularity, the requirement is not onerous. *Id.* at 1012. For example, in *Fond Du Lac* the plaintiff adequately pled fraudulent concealment by alleging:

> [T]he who (defendants), the what (falsely attributing the cause of price increases to other causes and agreeing among themselves to keep their price-fixing secret), the when (as early as January 2003 continuing to the present, but alleging at least one specific meeting in March 2008), the where (in Taipei), and the how (via secret meetings and other methods of communication).

*Id.* Here, IPPs pled with particularity Defendants' acts to mislead or prevent discovery of the fraudulent scheme: Defendants used coded language on particular earnings calls to signal to one another, C&I ¶ 391; EU ¶ 414, made numerous public statements falsely portraying the market as competitive and providing pretexts for thigh prices, C&I ¶¶ 392-398; EU ¶¶ 415-421, and concealed the conspiracy using secret meetings and surreptitious communications, C&I ¶ 390; EU ¶ 413. *See In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827, 855 (N.D. Ill. 2010) ("triable issues of fact as to whether Defendants, through misleading public statements, affirmatively concealed agreements to reduce industry-wide output or fix prices.").

## VI.    IPPS' SHERMAN ACT CLAIM IS TIMELY

IPPs incorporate by reference the DPPs' argument that Plaintiffs adequately allege an antitrust conspiracy. Although the four-year statute of limitations does not expressly apply to claims for injunctive relief (MTD at 47, n.31), Defendants imply that the doctrine of *laches* might bar IPPs' Sherman Act claim for injunctive relief. However, those claims are timely in light of the discovery rule. *See In re Sulfuric Acid Antitrust Litig.*, 703 F.3d 1004, 1014 (7th Cir. 2012) (discovery rule applies to federal antitrust claims). Hence, IPPs' Sherman Act claims – which seek declaratory and injunctive relief – are not time-barred. *See* Appendix C.

Respectfully submitted,

/s/ Steven N. Williams

Steven N. Williams
Mark F. Ram
Joyce M. Chang
COTCHETT, PITRE & MCCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
swilliams@cpmlegal.com
mram@cpmlegal.com
jchang@cpmlegal.com

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua R. Rissman
Brittany N. Resch
GUSTAFSON GLUEK PLLC
120 South Sixth Street #2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsongluek.com

*Interim Co-Class Counsel on Behalf of
Commercial & Institutional Indirect
Purchasers*

Kenneth A. Wexler
Edward A. Wallace
Thomas A. Doyle
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
kaw@wexlerwallace.com
eaw@wexlerwallace.com
tad@wexlerwallace.com

*Interim Liaison Counsel on Behalf of
Commercial & Institution Indirect
Purchaser Plaintiff*

Respectfully submitted,

/s/ *Steve W. Berman*

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO
LLP
1918 8th Avenue, Suite 3300
Seattle, Washington 98101
(206) 623-7292
steve@hbsslaw.com

Elizabeth A. Fegan
Jeannie Y. Evans
HAGENS BERMAN SOBOL SHAPIRO
LLP
455 N. Cityfront Plaza Drive
Suite 2410
Chicago, IL 60611
(708) 628-4949
beth@hbsslaw.com
jeannie@hbsslaw.com

*Interim Lead Counsel for End-User
Consumer Plaintiffs*

Kit A. Pierson
Brent W. Johnson
COHEN MILSTEIN SELLERS & TOLL,
PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
(202) 408-4600
kpierson@cohenmilstein.com
bjohnson@cohenmilstein.com

Daniel H. Silverman
COHEN MILSTEIN SELLERS & TOLL,
PLLC
190 South LaSalle Street
Suite 1705
Chicago, IL 60603
(312) 357-0370
dsilverman@cohenmilstein.com

*Additional Counsel for End-User Consumer
Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on March 15, 2017 a true and correct copy of the foregoing was electronically filed by CM/ECF, which caused notice to be sent to all counsel of record.

By**:**   */s/ Steve W. Berman*
Steve W. Berman

- 1 -