# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To: All Actions | Case No. 1:16-cv-08637<br><br>**ALL PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS** |

509659.7

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs hereby request that each Defendant produce the documents and things herein requested within 30 days of the date of service at the offices of Hart McLaughlin & Eldridge, 121 West Wacker Drive, Suite 1050, Chicago, IL 60601, or such other time and place as may be agreed upon by counsel. Pursuant to F.R.C.P. 34(b), unless otherwise specified, all documents must be organized and labeled to correspond to the categories in the associated document request. Corrections and supplemental answers and production of documents are required as provided for in the Federal Rules of Civil Procedure.

## **DEFINITIONS**

The following definitions shall apply to these document requests:

1. "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2. "Broiler" or "Broilers" have the same meaning as the definition in ¶ 79 of Direct Purchaser Plaintiffs' Second Consolidated and Amended Complaint (ECF No. 212).

3. "Broiler Breeder Facility" means the breeder farms where Broiler parent stock which produce fertilized eggs is raised and grandparent stock is received from a Primary Breeder Company.

4. "Broiler Hatchery Facility" means the location where fertilized eggs are received from a Broiler Breeder Facility and incubated into day-old chicks that are delivered to grow-out farms to be raised into meat for slaughter.

5. "Broiler Processing Facility" means the location where a Broiler is slaughtered.

6.      "Broiler Further Processing Facility" means the location where slaughtered broilers are cut, deboned, cooked, marinated, or included in a value-added product by a Broiler Producer.

7.      "Broiler Producer" means Defendants and any non-Defendant entity included in WattPoultryUSA's Annual Top Broiler Company survey published each spring (see, e.g., March 2016 Issue of WattPoultryUSA, available at http://www.wattpoultryusa-digital.com/201603#&pageSet=0&contentItem=0).

8.      "Broiler Supply Factors" refers to any data, calculation, or other information relating to those factors cited in ¶ 140 of Direct Purchaser Plaintiffs' Second Consolidated and Amended Complaint (ECF No. 212) and any similar data You maintain from which Your own or Broiler industry supply information can be assessed or determined.

9.      "Communication" or "Communicated" means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes, publication, reception, revelation, talk, transfer, transmission, or utterance.  The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

10.     "Competitive Conditions," in addition to its ordinary meaning and usage, includes actual or forecasted, projected or estimated conditions or trends relating to pricing, Broiler Supply Factors, number of spent Broiler breeder hens slaughtered, Broilers available for purchase by customers, production (including output, capacity, capacity utilization, operating

rates, facility closures, rationalization, supply or capacity discipline, production or downtime and/or production scheduling), inventories, demand, sales, profitability or margins, market share (including mergers, acquisitions, joint ventures, divestitures, sales or transfers of assets, spin-offs or any other form of change of ownership or control or consolidation), competitors, fixed or variable costs, imports or exports in the market for Broilers.

11. "Complaint" means Direct Purchaser Plaintiffs' Second Consolidated and Amended Complaint (ECF No. 212), Commercial and Institutional Indirect Purchaser Plaintiffs' Third Consolidated Amended Complaint (ECF No. 253), and End-User Consumer Plaintiffs' Consolidated Amended Class Action Complaint (ECF No. 255).

12. "Corporate Communications" means without limitation communications by the responding parties' corporate officers or employees responsible in whole or in part for its external communications or messaging (*i.e.*, to media, financial community, customer base, government, industry bodies and institutes and general public), including, but not limited to, public relations, investor or creditor relations, government relations, or similar functions or activities.

13. "Creditor Conference" means any meeting or event organized or hosted by a company that provides credit or loan financing for Broiler companies or partners, coordinates, or associates with Broiler companies to provide credit or loans to Broiler companies' contract farmers, such as Rabobank, CoBank, John Hancock, Bank of America, Bank of the West, Wells Fargo, and Farm Credit (including AgGeorgia Farm Credit, Ag Heritage Farm Credit Services, AgSouth Farm Credit, and Ag First Farm Credit Bank).

14. "Creditor Representative" means a Person who is an employee for an entity that provides financing for Broiler Producers companies or partners, coordinates, or associates with

Broiler Producers to provide loans to Broiler Producers' contract farmers who raise chicks into Broiler Chickens to slaughter on Your behalf, such as Persons who work for entities that hold Creditor Conferences.

15.     "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly-owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers, employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant.

16.     "Document" shall have the same meaning as used in Rule 34 of the Minnesota Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics.  To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything,

signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

17. "Document Custodian" refers to Your employees and/or representatives who the parties agree, or the Court orders, must have Documents in Your, the employee's, and/or Representative's possession, custody, or control collected and produced in this matter.

18. "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non limiting examples of ESI include:

- Digital communications (e.g., e-mail, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (SnapChat, Confide, Signal, etc.));
- E-Mail Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange .EDB);
- Word processed documents (e.g., MS Word or WordPerfect files and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data);
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (e.g., .WAV and .MP3 files);
- Video and Animation (e.g., .AVI and .MOV files);
- Unstructured Data;
- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network Access and Server Activity Logs;
- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content); and
- Cloud based or other virtualized ESI, including application, infrastructure and data.

19. "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

20. "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way. Including therefore means "including, but not limited to," or "including without limitation."

21. "Industry Analyst" means a Person or entity who analyzes Competitive Conditions in the Broiler industry for the purpose or with the effect of advising on investment in or providing financing to Broiler Producers, such as Persons who work for entities who host Industry Conferences.

22. "Industry Conference" means any meeting, webinar, telephone conference, or event involving one or more Broiler Producers organized or hosted by an entity that either invests its own money or advises others who have an ownership interest in any Broiler Producer, such as Stephens, Inc., D.A. Davidson & Co., Goldman Sachs, BMO Capital Markets, JP Morgan, Merrill Lynch, Bank of America, Deutsche Bank, or similar companies including but not limited to the Goldman Sachs Global Staples Forum, Bank of America Merrill Lynch Global Agriculture Conference, BMO Capital Markets Annual Ag & Protein Conference, BMO Capital Markets Conference, BMO Farm to Market Conference, and JP Morgan Basic Materials Conference.

23. "Industry Meeting" means, without limitation, any meeting, directly or indirectly relating to the market for Broilers, Overseas Distribution Services, Inc., conferences hosted by Urner Barry, Agri Stats, any joint venture, entity, affiliation, or association created under the

Export Trading Company Act (15 U.S.C. §§ 4001-21), Trade Association (or other industry or similar organizations) or other entities or persons, whether formal, informal or *ad hoc*, involving two or more producers of Broilers and includes any formal or informal committee or other sub-unit.

24. "Management" shall be construed broadly and means without limitation, Employees or other Persons with executive, management, supervisory or policy-setting responsibilities, both individually and collectively, and, depending upon context, includes their administrative assistants, secretaries, or other support staff.

25. "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video, or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

26. "Named Plaintiffs" means those individuals or entities listed as plaintiffs in the Complaint, and any entities subsequently added as named plaintiffs in this matter.

27. "Person" means, without limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state or any foreign country.

28. "Planning Staff" shall be construed broadly and means without limitation, Employees or other Persons with strategic planning, informational or analysis responsibilities both individually and collectively, and, depending upon context, includes their administrative assistants, secretaries or other support staff.

29.     "Policy" or "procedure" means any rule, practice or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

30.     "Primary Breeder Company" or "Primary Breeder Companies" means those entities that develop and reproduce strains of Broiler chicken for Broiler Producers, including Tyson's Cobb-Vantress (including its purchase of Perdue Farms' genetics division), Hubbard, and Aviagen.

31.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly or indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

32.     "Representative" shall mean any and all agents, employees, servants, independent contractors, consultants, officers, directors, associates, or other persons acting or purporting to act on Your behalf or on behalf of the person in question.

33.     "Sales Personnel" shall be construed broadly and means, without limitation, any Employees or other Persons that had responsibility, directly or indirectly, relating to sales to customers of Broilers sold in the U.S. (including any role or responsibility for selling, determining or establishing pricing, effectuating, or establishing terms and conditions of sales or purchases).

34.     "Structured Data" or "Structured Database" refers to any data that resides in a fixed field within a record or file, such as data stored in Oracle, SQL, or files that are in Columns/Rows or a fixed field with a predefined format.

35.     "Studies" or "analyses" include all reports, memoranda, statistical compilations, reviews, audits and other types of written, printed, or electronic submissions of information.

36.     "Trade Association" means any group, committee, subcommittee, or association, formal or informal, relating to the market for Broilers including, but not limited to, the National Chicken Council, United States Poultry & Egg Export Council ("USAPEEC"), U.S. Poultry & Egg Association ("U.S. Poultry"), Georgia Poultry Federation, North Carolina Poultry Federation, The Poultry Federation (including any predecessor organizations), Mississippi Poultry Association, Inc., Alabama Poultry & Egg Association, Louisiana Poultry Federation, International Poultry Expo ("IPE"), International Producers and Processors Expo ("IPPE"), International Poultry Council ("IPC"), American Meat Institute, US Meat Export Federation, and includes any formal or informal committee or other sub-unit.

37.     "United States" or "U.S." means each of the 50 states, the District of Columbia, and the commonwealths, territories, and possessions of the United States.

38.     "Unstructured Data" is data that does not conform to a specific, pre-defined data model, it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but not are limited to, word processing documents, Emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

39.     "You," "Your" or "Your company" mean the responding Defendant, including its predecessors, wholly-owned or controlled subsidiaries or affiliates, successors, parents, other

subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity that the responding Defendant manages or controls, including those merged with or acquired, together with all present and former directors, officers, employees, agents, attorneys, representatives or any persons acting or purporting to act on their behalf.

## SPECIFIC DOCUMENT REQUESTS

The "Relevant Time Period" for these requests is January 1, 2007 through and including September 2, 2016, unless otherwise noted.

**REQUEST NO. 1:**    All Communications and Documents reflecting Communications between You and any other Defendant.

**REQUEST NO. 2:**    For each Document Custodian, all:

a)    electronic and hard copy diaries, calendars, appointment books, notebooks, to-do lists, Day Timers, day planners or appointment notes;

b)    contact information maintained in Microsoft Outlook, similar programs, Rolodex cards, or any other format, for any Person who is or was: (i) an owner, employee, consultant, officer, board member, Representative, or agent of a Broiler Producer or Agri Stats; (ii) a Creditor Representative or Industry Analyst; (iii) employee of a Trade Association; or (iv) employee of any entity that falls within the definition of Industry Meeting.

c)    trip and travel logs, records, expenses, and other supporting Documents;

d)    expense and entertainment reports, including supporting Documents;

e)    bills, statements, records, and supporting Documents concerning local, long distance, and cellular telephone calls by such employees, including calls made using telephones not paid for by You (such as home office, fax, and personal telephone numbers, personal cellphones, and temporary pay-as-you go cellphones) if such telephones were used for business purposes;

f)    Documents relating to membership in any Trade Association or industry group or attendance at any Industry Meeting, Creditor Conference, or Industry Conference;

g)    a copy of the Person's most recently created resume or curriculum vitae (CV);

h)    personnel file, including any discipline or performance evaluations, and any terms of employment (such as confidentiality or non-compete agreements);

      i)      copies of any transcripts or recordings of prior testimony relating to Competitive Conditions in the market for Broilers, such as testimony at a deposition, trial, or public hearing;

      j)      Documents sufficient to show the Document Custodian's complete contact information, including all phone numbers, social media user names or "handles," and email addresses used by such persons for any business purposes, even if only sparingly; and

      k)      Any severance agreements in connection with the Document Custodian ceasing employment or changing employment status with You (without time limitation).

**REQUEST NO. 3:**    All Documents relating to any Trade Associations, Industry Meetings, Investor Conferences, or Creditor Conferences, including membership lists, announcements, dates and locations for meetings, presentations (including speaker notes, where applicable), agendas, minutes, notes, attendance lists, expense reports, handouts, reports, statistical bulletins, and correspondence.

**REQUEST NO. 4:**    All Documents relating to Communications with investors, Industry Analysts, and/or Creditor Representatives regarding Competitive Conditions in the Broiler industry.

**REQUEST NO. 5:**    All Structured Data, Documents, and Communications regarding the terms of all purchases, sales, trades, exchanges, or swaps of Broilers between You and any other Broiler Producer, including any contracts, joint ventures, and/or other agreements, whether formal or informal.

**REQUEST NO. 6:**    Documents relating to budgets, projections, estimates, or related studies, presentations, or reports regarding Broilers regularly prepared or received by Your current or former directors, officers, Management, or Planning Staff on a regular basis (weekly, monthly, quarterly, or annually) regarding the following topics:

      a.      cost and/or cost accounting reports (including, production, sale and distribution);

      b.      audited or unaudited financial statements (including all appendices);

c. cost and supply of raw material and/or inputs, including any back-integration of raw materials, swaps or sales of raw materials with other Broiler producers, or hedging of purchased raw materials and/or inputs for Broilers;

d. distribution channels for Broilers;

e. export markets for Broilers including a breakdown of country of destination and product form;

f. Broiler product information regarding the types and product forms of Broilers sold by You;

g. forecasted, projected, estimated, planned, or actual demand for Broilers;

h. demand changes or demand fluctuations for Broilers sold in the U.S.; and

i. profits, revenues, and loss information on Broilers produced or sold in U.S. identified on a (i) consolidated basis; (ii) product line or product category basis; and/or (iii) facility-by-facility basis, (including, but not limited to, gross profits, operating profits, net profits, cash flow reports, and EBITDA).

**REQUEST NO. 7:** All Documents that compare or contrast Broilers sold by You in the U.S. with Broilers sold by any other Broiler Producer (including product characteristics, product forms, packaging, specifications, quality, prices, availability, delivery schedules, etc.), any product crosswalks, or any other comparison showing how Broilers sold by You compare to other Broiler Producers.

**REQUEST NO. 8:** Document sufficient to show industrywide standards of products and definitions/descriptions of standards for Broilers.

**REQUEST NO. 9:** Documents sufficient to show actual or potential substitutes for Broilers analyzed by You during the Class Period (including the effect of such substitutes' prices upon Broiler pricing, purchase terms, or profits).

**REQUEST NO. 10:** Documents sufficient to show Your ability to identify or trace in the supply chain each Broiler You slaughter in the event of a food safety recall, including Your ability to track or identify chicken meat incorporated into value-added Broiler products.

**REQUEST NO. 11:** All Documents utilized or generally referred to by Your Management or Sales Personnel for quoting, changing, or setting the prices or the terms and conditions for sale of Broilers, including Documents relating to pricing guidelines, pricing methods, pricing formulas, procedures or authorization procedures for Sales Personnel to quote a price, price changes, price lists, pricing policies, pricing guidelines, pricing methods, violations of pricing policies and Documents providing guidance to Sales Personnel about implementation of price changes.

**REQUEST NO. 12:** All Documents relating to or communicating Broiler price announcements, price changes, explanations of the reasons for price changes, price lists, pricing policies, pricing guidelines, pricing methods, pricing formulas, procedures or authorization procedures for Sales Personnel to quote a price, analysis of market prices, monitoring of competitor pricing, price changes of Broilers produced or sold in the U.S. (including price announcements or explanations of the reasons for price changes), price increase and surcharge announcements, and any other Communications concerning Broiler price increases or the imposition of surcharges.

**REQUEST NO. 13:** All Documents relating to any contemplated, proposed, or actual bids for the sale of Broilers (e.g., a request for bid or online auction), including Documents concerning whether or not to bid and the availability of Broilers from other Broiler Producers to fulfill a bid.

**REQUEST NO. 14:** All Documents relating to the forecasted, projected, estimated, or actual effects of the relationship of changes of Broiler price, supply, and/or demand, including any estimates of the elasticity of supply or demand, or price sensitivity of Broilers.

**REQUEST NO. 15:**   Documents sufficient to identify Your cost accounting policies and procedures for Broilers and accounting policies and procedures for intra-company transfer pricing and transactions between Broiler Producers for Broilers.

**REQUEST NO. 16:**   Documents sufficient to describe in detail Your policies and procedures concerning imposition of surcharges and customer rebates, credits, discounts and any other special price arrangements.

**REQUEST NO. 17:**   All Documents or Communications with or about Primary Breeding Companies relating to Broiler Supply Factors, including any complaints by You or any Broiler Producer about the receipt of inferior or sick Broiler breeder stock (e.g., grandparent stock from a Primary Breeder Company), any analysis of the effect of Broiler breeder stock levels on the supply or price of Broilers (including both grandparent and great-grandparent Broiler breeders from Primary Breeding Companies), and any condition with respect to Your receipt of Broiler breeder stock from a Primary Breeding Company being contingent on You lowering or agreeing not to increase Your production and/or supply of Broilers.

**REQUEST NO. 18:**   All Structured Data and supporting Documents provided to or received from Agri Stats, Inc. or any of its affiliates (including Express Markets, Inc.), including flock and/or complex level data for both Broiler breeders and Broilers and any data compilations concerning Agri Stats You maintained, such as any data reformatted, reprocessed, or otherwise used in analyzing Agri Stats data.

**REQUEST NO. 19:**   All Communications to and from, and all Documents relating to, the Georgia Department of Agriculture (including the Georgia Dock Broiler price index), United States Department of Agriculture and its subdivisions, IRi, Nielsen, Urner Barry, Agri Stats, or

Express Markets, Inc. regarding Broiler Supply Factors, Broiler supplies, Broiler exports, or Broiler pricing.

**REQUEST NO. 20:**  To the extent not produced in response to other Requests, all Documents and Communications regarding the Broiler market collected, disseminated, purchased or received from, reported to, and/or published by the Georgia Department of Agriculture (including the Georgia Dock Broiler price index), United States Department of Agriculture and its subdivisions, IRi, Nielsen, Urner Barry, Agri Stats, Express Markets, Inc..

**REQUEST NO. 21:**  From January 1, 2007, through the present, all Documents relating to the Georgia Department of Agriculture and Broilers, Broiler supplies, or Broiler pricing, including the Georgia Dock Advisory Committee, information collection, verification, auditing, and reporting methodologies or procedures, inaccuracies, errors, or vulnerabilities to manipulation of the Georgia Dock price index, any agreement with other Defendants or co-conspirators concerning reporting of information for the Georgia Dock, any responses or Communications relating to any investigation (whether formal or informal) concerning the accuracy of information reported to the Georgia Department of Agriculture (including the United States Department of Agriculture's investigation disclosed publicly in early November 2016), and documents relating to the proposed Georgia Premium Poultry Price Index.

**REQUEST NO. 22:**  All Documents or Communications relating to or exchanged with Agri Stats or its affiliates (including Express Markets, Inc.), including any consideration of the risks and/or benefits of providing information to or receiving information from Agri Stats, the anonymity of individual Broiler producer data received from Agri Stats, any reverse-engineering processes employed by You to de-anonymize Agri Stats data, any contracts or agreements with

16

Agri Stats, any presentations, reports, or meeting minutes received from or provided to Agri Stats, and all copies of Agri-Stat's Bottom-Line Report.

**REQUEST NO. 23:**    All Documents relating to Competitive Conditions in the market for Broilers, including reports, presentations, industry publications, business plans, studies, analyses, or other Documents concerning forecasted, projected, estimated, planned or actual: (i) market shares, (ii) consolidation, mergers, acquisitions, or joint ventures, (iii) production or processing capacity, capacity reduction, capacity utilization, or operating rates (iv) fixed or variable costs, (v) pricing, (vi) inventories (vii) entry or exit conditions (viii) inventories, (ix) supplies/supply trends, (x) data, publications, or other sources used in the regular course of business by You to monitor Broiler demand in the United States, (xi) substitute products, (xii) exports, (xiii) raw materials, (xiv) Broiler Supply Factors, or (xv) other industry statistics.

**REQUEST NO. 24:**    All Documents concerning Broiler supply rationalization, industry leadership, industry discipline, production discipline, supply discipline, capacity discipline, or other so-called disciplined approaches or practices relating to the Broiler industry.

**REQUEST NO. 25:**    All Documents and Communications relating to any memoranda, studies, reports, analyses, or presentations analyzing Competitive Conditions in the Broiler industry prepared by a consulting firm, including Bain & Company, McKinsey & Company, Deloitte & Touche, The Hudson River Group, and Charles River Associates.

**REQUEST NO. 26:**    Documents sufficient to identify any tentative, proposed or consummated sale, acquisition, merger, joint venture, divestiture, transfer of assets, spin-off, or any other form of change of ownership or control or business combination concerning any Broilers-related business, production facilities, product lines, or other assets (including both businesses or assets owned or controlled by You and those owned or controlled by other

Persons), and any minutes, notes, reports, studies, analysis, presentations, expert or market participant comments, analysis or other information submitted to or received from any governmental agency.

**REQUEST NO. 27:**    All Documents and Communications relating to the immediately prior Request that reflect the disclosure of any non-public information to another Broiler Producer concerning Broiler Supply Factors, Broiler pricing, or any future Broiler supply plans, including documents made available to You or by You through an electronic "data room" associated with a proposed transaction.

**REQUEST NO. 28:**    All Documents relating to public announcements, press releases, or Corporate Communications by You concerning Competitive Conditions for Broilers.

**REQUEST NO. 29:**    All Documents that directly or indirectly relate, in whole or in part, alone or when viewed with other Documents any combination, conspiracy, agreement or understanding, explicit, implied or tacit, to fix prices, reduce output, limit production, limit capacity, limit supplies, limit inventories, or allocate customers, product lines or territories for Broilers sold in the U.S.

**REQUEST NO. 30:**    All Documents relating to compliance policies whether implemented, adopted, used or considered concerning federal, state, or international antitrust laws, competition laws, anti-monopoly laws, anti-cartel laws, unfair competition laws, anti-bribery laws and any similar laws or regulations, or contacts and/or Communications with Your competitors (including current and former versions of compliance policies and procedures, presentations, seminars, programs, memos, Corporate Communications, statements signed by Your employees with responsibility for Broilers that acknowledge receipt of or compliance with such policies arising from or relating to any prior legal proceedings), and all Documents relating to any

inquiries or investigations concerning compliance with such policies including those listed in the prior Request.

**REQUEST NO. 31:**     All Documents relating to any joint defense, contribution, indemnity or judgment sharing agreement relating to any investigation, civil or criminal litigation involving the production, sale, resale or marketing of Broilers.

**REQUEST NO. 32:**     All Documents relating to the Named Plaintiffs in this action.

**REQUEST NO. 33:**     From September 2, 2016, through the present, all Documents relating to any changes made to the conditions, terms of sale, contracts, rebates, discounts, and/or special pricing for the sale of Broilers to any Named Plaintiff.

**REQUEST NO. 34:**     From January 1, 2000 through the present, all Documents relating to competition in the Broiler industry produced to the Department of Justice, Federal Trade Commission, U.S. Department of Agriculture, Georgia Department of Agriculture, U.S. Securities & Exchange Commission, states' attorneys general, or other government agencies or regulators voluntarily or pursuant to any civil investigative demand, grand jury subpoena, or other investigative request.

**REQUEST NO. 35:**     For the period January 1, 2000, through the present, all Documents relating to any possible or alleged violations of federal, state, or international antitrust laws, competition laws, anti-monopoly laws, anti-cartel laws, anti-dumping laws, unfair competition laws, anti-bribery laws and any similar laws, rules or regulations by You, any other Defendant or any other Broiler-related business or person (including any current or former officers, directors, Employees or other persons) including:

> a.     any inquiry, investigation, administrative, criminal or civil litigation or similar actions (regardless of characterizations such as non-adjudicative, cooperating, preliminary, informal, formal, incomplete, open, closed or final) by any government entity, legislative body or representative or instrumentality thereof

(*i.e.*, the United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the International Trade Commission, any state law enforcement agency, any grand jury, any committee of the United States Congress, any agency of a state or other political subdivision, and any domestic or international government body) (including all Documents received from or provided to such governmental entities or used during or regarding discussions or negotiations with them);

b. any internal inquiry or investigation (regardless of characterizations such as non-adjudicative, cooperating, preliminary, informal, formal, incomplete, open, closed or final) and further including any violation of internal antitrust or competition law policies or practices; and

c. any private actions or civil litigation (including arbitrations, mediations or negotiations and further including any violation of internal antitrust or competition law policies or practices) in which You have been a party, witness, participant, or subject.

**REQUEST NO. 36:**    Without time limitation, all Documents relating to actions to conceal or avoid detection of any potential violations of federal, state, or international antitrust laws, competition laws, anti-monopoly laws, anti-cartel laws, unfair competition laws, anti-bribery laws and any similar laws, rules or regulations (including the use of code words or otherwise masking the identity of any Person or entity, meeting in locations or communicating at times or via methods with the intent to avoid detection by any Person or entity, using non-traceable prepaid calling cards or cellphones, non-contract or disposable cell phones, placing calls from public phones, and destroying, secreting, altering or forging Documents).

**REQUEST NO. 37:**    Without time limitation, Documents sufficient to show the terms and conditions of any preliminary or permanent injunction, consent decree, plea agreement, sentencing agreement, settlement agreement or stipulation of settlement in a class action or private action, judgment or similar orders or agreements relating to alleged violations of federal, state, or international antitrust laws, competition laws, anti-monopoly laws, anti-cartel laws, unfair competition laws, anti-bribery laws and any similar laws, rules or regulations entered

against You or any other Defendant, including *In re Chicken Antitrust Litigation*, Civ. No. C74-2454A (N.D. Ga.).

**REQUEST NO. 38:**    All Documents relating to complaints received from any Broiler customer regarding prices, pricing, or terms or conditions of sale or the refusal or failure to supply Broilers and any responses thereto, and all Documents reflecting any policy of Your company concerning the handling of such complaints.

**REQUEST NO. 39:**    All Documents that support or disprove any affirmative defense alleged by any Defendant in this action, including the statute of limitations, doctrines of estoppel and laches, or release of any claims.

**REQUEST NO. 40:**    Documents sufficient to show all forms of contracts and invoices, and any summaries of the terms (including duration, price protection, terms for price modification, surcharges, discounts, or rebates) for the sale of Broilers in the U.S. to Your customers.

**REQUEST NO. 41:**    Your Structured Data sufficient to summarize the pricing provisions of Your customers' Broiler contracts or purchases, including any changes to those provisions over time and the Broiler price index to which such prices are tied.

**REQUEST NO. 42:**    All Documents relating to any decision to change the pricing terms for Your customers' contracts for Broilers, including any analyses regarding changes from fixed-price to adjustable price provisions.

**REQUEST NO. 43:**    Documents sufficient to identify and describe Your computer hardware and systems (including email systems), software, ESI, Structured Databases, storage, backup and archiving systems and Communications systems and devices used in connection with Documents called for by production of the Requests for Production herein, including data maps,

explanations of information contained in each system or database, and document retention policies.

**REQUEST NO. 44:**    All Documents necessary to understand the operation of any of the computer hardware and systems, software, Structured Databases, ESI, database, storage, backup and archiving systems and Communications systems and devices information requested herein (including, but not limited to, Documents describing or defining the fields contained in any such database file naming conventions and standards); user manuals; Help features or documentation; password, encryption, and other security protocols; diskette, CD, DVD, and other removable media labeling standards; email storage conventions, *e.g.*, limitations on mailbox sizes/storage locations; schedule and logs for storage; software and hardware upgrades (including patches) for the relevant time period (including who and what organization conducted such upgrades); and Backup tape rotation.

**REQUEST NO. 45:**    Documents sufficient to identify or describe the outputs of Your Structured Databases, ESI, information systems, databases and Communications systems used by You to record, store, communicate, compute, analyze, organize, or retrieve information relating to Documents and Structured Data You produce in this matter (including all mainframe systems, legacy systems, archives, computers, networks, telephones, handheld devices, smart phones, storage or archiving systems, and word processing, electronic mail, personal information managers, calendar, or spreadsheet programs).

**REQUEST NO. 46:**    All Documents related to the claims and allegations in the Complaint.

**REQUEST NO. 47:**    All Documents referenced or relied upon in responding to any Interrogatory served by any party in this Action.

**REQUEST NO. 48:**    For the time period from January 1, 2002 through December 31, 2017, Structured Data sufficient to show, for each U.S. Broiler sale, the categories of information listed below, and Documents sufficient to understand all data fields, codes, or other fields on the invoice.  Plaintiffs request this information in the most disaggregated form (meaning at the transactional level, not aggregated by month or quarter) in which it is kept, and Defendants should produce the data in a comma-delimited text file (*e.g.*, a file with a file extension of .csv or .txt).  If You maintain separate or distinct sets of such data for internal purposes, Agri Stats reporting purposes, or any other purpose, Plaintiffs' request is for each separate set of data for the categories of information listed below.

    a.    the terms of each sale;

    b.    the invoice number;

    c.    the purchase order number;

    d.    the location from which the Broilers were shipped;

    e.    the customer's name, phone number(s), address(es), email address(es), including the identity of the customer that was billed and the location to which the Broilers were shipped;

    f.    the date You shipped the Broilers, the date You billed for the Broilers, and the date the customer took delivery;

    g.    the grade, cut, product form, and/or type of Broiler, including any product numbers, unique purchaser-specific identifier, and product descriptions sold for each transaction;

    h.    the quantity (and units of measure) for each sale;

    i.    all pricing information concerning the sale, including shipping, tax, or similar charges, and the gross and net unit price for each item in the sale;

    j.    the currency in which the sale was billed and paid;

    k.    any discounts, rebates, credits, freight allowances, returns, free goods, and/or services or any other pricing adjustment for each sale, with sufficient information to attribute these adjustments to individual sales;

    l.    if a resale, the Supplier of each Broiler sold in connection with each sale;

    m.    the price You paid Your Supplier for each type of Broiler sold in connection with each sale, including gross and net aggregate and per-unit prices;

    n.    any fixed or variable costs or costs of goods sold concerning the sale (including freight charge and transportation cost, sales and distribution cost, raw materials, intermediates, marketing or sales cost, and any other cost attributed or allocated to the sale);

    o.    for any sale or purchase from another Broiler producer, Electronic Data Interchange fields for which the user can freely enter text, such as "comments" or similar fields;

    p.    any Structured Database field summarizing terms of sale or agreements or contracts for customers;

    q.    any other data available in Your database Concerning the purchase, sale or distribution of the Broilers for each sale.

**REQUEST NO. 49:**    For the period January 1, 2002 through December 31, 2017, Documents sufficient to show Your production processes, including each class, type, cut, grade, or category of Broilers that You manufactured, marketed, sold or distributed in the U.S. (including raw material inputs).

**REQUEST NO. 50:**    Documents sufficient to describe in detail the Broiler products You sold, marketed, or distributed from January 1, 2002 through December 31, 2017, including any variations relating to brand name, its physical properties and characteristics, packaging, product form, cut, further processing, grade, specialty products and any other factors influencing price.

**REQUEST NO. 51:**    For the period January 1, 2002 through December 31, 2017, Documents sufficient to identify all of Your Broiler Hatchery Facilities, Broiler Breeder Facilities, Broiler Processing Facilities, and Broiler Further Processing Facilities.

**REQUEST NO. 52:**    From January 1, 2002 through December 31, 2017, Your Structured Data relating to Broiler Supply Factors in the most disaggregated form in which You maintain such data.

**REQUEST NO. 53:**    From January 1, 2002 through December 31, 2017, Structured Data and Documents sufficient to show the following information by product form/type/grade/cut Your monthly, quarterly, and annual:

   a.    Processing, production, capacity, and capacity utilization by facility;

   b.    Broiler export shipments (including destination country);

   c.    Exports of Broiler breeder hens, Broiler breeder chicks, or Broiler breeder eggs, including destination country and the name, address, and terms under which the eggs were transferred and/or sold to the foreign entity;

   d.    Any data You maintain regarding Broiler imports into the U.S. (including country of origin);

   e.    Inventories (frozen, fresh, and value-added);

   f.    Demand for Broilers;

   g.    Total cost and total variable cost, as well as disaggregated costs (e.g., fuel). To the extent not provided in the cost data, data and/or Documents sufficient to show the relative proportion of cost associated with each component of variable cost and each component of total cost throughout the Relevant Time Period; and

   h.    United States sales of Broilers, including sales either shipped or billed.

**REQUEST NO. 54:**    Documents sufficient to show Your corporate organizational structure throughout the Relevant Time Period, including, but not limited to, departments, divisions, parents, subsidiaries, joint ventures, affiliates, units or other subdivisions that had any role during any in the production, processing, distribution, marketing, pricing or sale of Broilers.

**REQUEST NO. 55:**    All Documents concerning the costs of and potential obstacles to entering the Broiler market, including, but not limited to, capital costs, environmental

regulations, production costs, marketing costs and difficulties, contractual supply relationships, market conditions, brand loyalty or differentiation, start-up costs, and any other difficulties or obstacles to entry into the market for producing and selling broilers.

**REQUEST NO. 56:**    All Documents concerning the identity of any actual or potential entrant(s) into the Broiler market and any barriers, obstacles or difficulties facing the actual or potential entrant(s).

**REQUEST NO. 57:**    Documents sufficient to identify the Management and Sales Personnel having non-clerical responsibilities or duties with respect to any of the following:

a.    the production or processing of Broilers;

b.    the marketing or promotion of Broilers;

c.    the pricing of Broilers;

d.    the sale or distribution of Broilers;

e.    antitrust compliance;

f.    the maintenance of any electronic database(s), including archives of emails or other electronic documents relating to Broilers.

**REQUEST NO. 58:**    Documents sufficient to show any insurance policies, indemnification agreements, judgment sharing agreements or hold harmless agreements that may provide coverage to You or any other defendant named in this action for any of the claims or causes of action asserted in this action, or that may provide reimbursement for payments made or costs incurred in defense of this action.

**Date: February 28, 2017**

/s/ *Steven A. Hart*
Steven A. Hart (#6211008)
Brian Eldridge (#6281336)
Kyle Pozan (#6306761)
Benjamin Shrader (#6304003)
HART MCLAUGHLIN & ELDRIDGE,
LLC
121 West Wacker Drive, Suite 1050
Chicago, IL 60601
Telephone: (312) 955-0545
Facsimile: (312) 971-9243
shart@hmelegal.com
beldridge@hmelegal.com
kpozan@hmelegal.com
bshrader@hmelegal.com
*Direct Purchaser Plaintiffs Interim Liaison*
*Class Counsel*

W. Joseph Bruckner
Heidi M. Silton
Elizabeth R. Odette
Brian D. Clark
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
hmsilton@locklaw.com
erodette@locklaw.com
bdclark@locklaw.com

Bruce L. Simon
Aaron M. Sheanin
PEARSON, SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com
asheanin@pswlaw.com
*Direct Purchaser Plaintiffs Interim Co-Lead*
*Class Counsel*

/s/ Thomas A. Doyle
Kenneth A. Wexler
Edward A. Wallace
Thomas A. Doyle
WEXLER WALLACE LLP
55W.Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
kaw@wexlerwallace.com
eaw@wexlerwallace.com
tad@wexlerwallace.com
*Commercial and Institutional Indirect*
*Purchaser Plaintiffs Liaison Counsel*

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua R. Rissman
Brittany N. Resch
GUSTAFSON GLUEK PLLC
220 South Sixth Street, #2600
Minneapolis, MN 55402
Telephone: (612)333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsongluek.com

Steven N. Williams
COTCHETT, PITRE & MCCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
swilliams@cpmlegal.com
*Commercial and Institutional Indirect*
*Purchaser Plaintiffs Interim Co-Lead*
*Counsel*

/s/ *Steve W. Berman*
Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO
LLP
1918 8th Avenue, Suite 3300
Seattle, Washington 98101
(206) 623-7292
steve@hbsslaw.com

Elizabeth A. Fegan
Jeannie Y. Evans
HAGENS BERMAN SOBOL SHAPIRO
LLP
455 N. Cityfront Plaza Drive
Suite 2410
Chicago, IL 60611
(708) 628-4949
beth@hbsslaw.com
jeannie@hbsslaw.com
*End User and Consumer Plaintiffs Interim*
*Lead Counsel*