**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: BROILER CHICKEN ANTITRUST LITIGATION | Case No. 1:16-cv-08637 |
| THIS DOCUMENT RELATES TO:<br><br>DIRECT PURCHASER ACTION | |

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN DIRECT PURCHASER PLAINTIFF CLASS AND FIELDALE FARMS CORPORATION AND <u>FOR CONDITIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS</u>**

518876.1

I. INTRODUCTION

Direct Purchaser Plaintiffs ("DPPs") respectfully move the Court to preliminarily approve a proposed settlement of claims between DPPs and Fieldale Farms Corporation.[1] This is the first "ice-breaker" settlement in this litigation. Pursuant to the Settlement Agreement, on or before August 28, 2017, Fieldale Farms will pay the Settlement Class the sum of two million and two hundred and fifty thousand dollars ($2,250,000.00) in cash and will provide material cooperation to DPPs in this litigation.

DPPs now move the Court to preliminarily approve the Settlement Agreement and conditionally certify the proposed Settlement Class. As discussed in this memorandum, at a later date DPP Co-Lead Counsel will move the Court to approve a program to notify members of the Settlement Class of this and any other then-pending settlements. At the Final Fairness Hearing, Co-Lead Counsel will request entry of a final order and judgment ("Final Order") dismissing Fieldale Farms and retaining jurisdiction for the implementation and enforcement of the Settlement Agreement.

II. BACKGROUND

This is an antitrust class action filed against certain producers of Broilers.[2] DPPs allege that Defendants combined and conspired to fix, raise, elevate, maintain, or stabilize prices of Broilers sold in the United States. DPPs allege that Defendants implemented their conspiracy in

---

[1] The Settlement Agreement is attached hereto as Exhibit A to the Declaration of W. Joseph Bruckner (hereinafter, "Settlement" or "Settlement Agreement").

[2] Broilers are chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, raw or cooked, whole or in parts, or as a meat ingredient in a value added product, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards. *See* DPPs' Second Amended Complaint (ECF No. 212). Fieldale Farms agrees to this definition of "Broilers" only for purposes of this Settlement Class and maintains, as asserted in its individual motion to dismiss Plaintiffs' Complaints (ECF Nos. 278, 281), that antibiotic free ("ABF") chicken should not be included in the definition of "Broilers."

various ways, including via coordinated supply restrictions, sharing competitively sensitive price and production information, and fixing of the Georgia Dock Broiler price index.

DPPs commenced this litigation on September 2, 2016, when they filed a class action lawsuit on behalf of all direct purchasers of Broilers in the United States. On October 14, 2016, the Court appointed the undersigned as Interim Direct Purchaser Plaintiffs' Co-Lead Counsel. (*See* ECF No. 144.) DPPs filed a Consolidated Amended Complaint on October 28, 2016 (ECF No. 178) and a Second Amended Complaint on November 23, 2016 (ECF No. 212, hereinafter, "Complaint"). On January 27, 2017, all Defendants filed a motion to dismiss DPPs' complaint supported by various memoranda of law. (ECF Nos. 274-291, 294-298.) All Plaintiffs filed an opposition to these motions on March 15, 2017 (ECF Nos. 343, 345), and Defendants replied on April 12, 2017. (ECF Nos. 360, 363-64, 366, 368-373.) The motions are currently pending.

Unlike many other civil antitrust actions, DPPs developed and brought this case without the benefit of a formal antitrust investigation by the U.S. Department of Justice or the assistance of a leniency applicant under the Department of Justice's Corporate Leniency Program. *See Corporate Leniency Policy*, U.S. Dep't of Justice, https://www.justice.gov/atr/corporate-leniency-policy. As a result, since filing their initial complaint, DPPs have continued their factual investigation into the conspiracy alleged in their Complaint. While DPPs have continued pressing to set the parameters for discovery since this case was filed in September 2016 (*e.g.*, document source negotiations, Rule 34 objections), they have received no substantive discovery from Defendants thus far in this litigation. Therefore, as part of their continued prosecution, DPPs' Co-Lead Counsel negotiated an icebreaker settlement with Fieldale Farms.

In addition to the payment of money, this first settlement allows DPPs to obtain Fieldale Farms' cooperation in their continued prosecution of the Action against the remaining

Defendants. Further, Fieldale Farms has one of the smallest Broiler market shares of all Defendants (12th largest out of 14 Defendant families) and is the smallest-sized company among the Defendants that participated in the Georgia Dock price survey.[3] Thus, a settlement with Fieldale will not materially affect the size of the Defendant group remaining in the litigation. Additionally, the remaining Defendants are jointly and severally liable for any damages resulting from Fieldale Farms' Broiler sales during the Class Period.

### III. SUMMARY OF THE SETTLEMENT AGREEMENT

After extensive arm's length negotiations, DPPs agreed to settle with Fieldale Farms in return for its agreement to pay two million and two hundred and fifty thousand dollars ($2,250,000.00) to the Settlement Class, and to provide cooperation to DPPs in their ongoing prosecution of the case. In consideration, DPPs and the proposed Settlement Class agree to release claims against Fieldale Farms which were or could have been brought in this litigation arising from the conduct alleged in the Complaint. The release does not extend to any other Defendants.

Fieldale Farms' cooperation includes providing DPPs documents it produced to the Office of the Florida Attorney General in a related inquiry into the Broiler industry; producing Agri-Stats reports, phone records, ESI, and other documents; making five current or former employees available for interviews and depositions; and an attorney proffer to provide a description of the principal facts known to Fieldale Farms that are relevant to the conduct at issue in the litigation. (*See* Settlement Agreement, § II.A.2.)

---

[3] As Plaintiffs have alleged, Defendants' coordination of the Georgia Dock price index was one of the methods by which they implemented their conspiracy. (Complaint, ECF No. 212, at ¶¶ 9, 97-115.)

## IV. STANDARDS APPLICABLE TO PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

### A. The Proposed Settlement Falls "Within the Range of Possible Approval" and Therefore Should Be Preliminarily Approved.

There is an overriding public interest in settling litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986) (noting that there is a general policy favoring voluntary settlements of class action disputes); *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong*, 616 F.2d at 313 (*citing Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). However, a class action may be settled only with court approval. Before the court may give that approval, all class members must be given notice of the proposed settlement in the manner the court directs. Fed. R. Civ. P. 23(e).

Generally, before directing that notice be given to the class members, the court makes a preliminary evaluation of the proposed class action settlement. The Manual For Complex Litigation (Fourth) § 21.632 (2004) explains:

> Review of a proposed class action settlement generally involves two hearings. First counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation . . . The Judge must make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and the date of the [formal Rule 23(e)] fairness hearing.

*See also* 2 NEWBERG ON CLASS ACTIONS, §11.24 (3d ed. 1992); *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) ("The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'"); *see also Armstrong*, 616 F.2d at 314; *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y 1997).

A proposed settlement falls within the "range of possible approval" under Rule 23(e) when it is conceivable that the proposed settlement will meet the standards applied for final approval. The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *see Uhl v. Thoroughbred Tech. & Telecomms, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002); *Isby*, 75 F.3d at 1198-99.

When granting preliminary approval, a court does not conduct a "definitive proceeding on the fairness of the proposed settlement," and the court "must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting *In re Montgomery Cty. Real Estate Antitrust Litig.*, 83 F.R.D. at 315-16). That determination must await the final hearing where the fairness, reasonableness, and adequacy of the settlement are assessed under the factors set forth in *Armstrong*.[4]

---

[4] The *Armstrong* factors for a motion for final approval of a class settlement as fair, reasonable, and adequate are: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendants' ability to pay; (3) the complexity, length, and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of class members to the settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and the amount of discovery completed. *Armstrong,* 616 F. 2d at 314.

B. **The Settlement is Fair and Resulted from Arm's Length Negotiations**

The requirement that class action settlements be fair is designed to protect against collusion among the parties. *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. at 1383. There is usually an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's length negotiations. *See* 2 NEWBERG ON CLASS ACTIONS, § 11.40 at 451 (2d ed. 1985); *Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 WL 17009594, at *3 n.2 (N.D. Ill. Oct. 10, 1995) ("[I]t may be presumed that the agreement is fair and adequate where, as here, a proposed settlement is the product of arm's-length negotiations."). Settlements proposed by experienced counsel and which result from arm's length negotiations are entitled to deference from the court. *See, e.g.*, *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (*quoting Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997)). The initial presumption in favor of such settlements reflects courts' understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness concerns of Rule 23(e). In making the determination as to whether the proposed settlement is fair, reasonable, and adequate, the Court necessarily will evaluate the judgment of the attorneys for the parties regarding the "strength of plaintiffs' case compared to the terms of the proposed settlement." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010).

The proposed Settlement plainly meets the standards for preliminary approval. The Settlement reached here is the product of intensive settlement negotiations conducted over a period of three months and included several rounds of give-and-take between DPPs' Co-Lead Counsel and Fieldale Farms' counsel. (Bruckner Decl. at ¶ 6.) Based on DPPs' extensive factual investigation to date, the cooperation provisions negotiated as part of the settlement enable DPPs

to obtain critical additional information regarding the allegations in the Complaint. (*Id.* at ¶¶ 4-5.) Therefore, based on both the monetary and cooperation elements of the Settlement Agreement, DPP Co-Lead Counsel believe this is a fair settlement for the Class. (*Id.* at ¶ 11.)

Moreover, this Settlement does not affect the potential full recovery of damages for the Class under the antitrust laws in light of the fact that the remaining Defendants will be jointly and severally liable for injuries resulting from Fieldale Farms' sales during the Class Period. *See Paper Sys. Inc. v. Nippon Paper Indus.*, 281 F.3d 629, 632 (7th Cir. 2002) ("[E]ach member of a conspiracy is liable for all damages caused by the conspiracy's entire output."). In addition to not affecting the overall damages, the Settlement should hasten and improve the Class' recovery by providing DPPs access to information that likely would otherwise only be obtainable through protracted discovery. *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability and where settling defendant's "assistance in the case again [a non-settling defendant] will prove invaluable to plaintiffs").

In addition to a monetary payment, the Settlement will provide the additional benefit to the Class of cooperation from Fieldale Farms as provided in the Settlement Agreement, intended to help streamline discovery and trial. Courts have recognized the value of such cooperation:

> [F]rom a pragmatic standpoint, the value of . . . [cooperating defendants] in litigation, as opposed to the specter of hundreds of uncooperative opponents, is significant. The [settling defendants] know far better than the plaintiff classes precisely what occurred in the [relevant] period . . . and their willingness to open their files . . . may ease the plaintiffs' discovery burden enormously.

*In re IPO Sec. Litig.*, 226 F.R.D. 186, 198-99 (S.D.N.Y. 2005) (footnote omitted). This cooperation here is even more valuable in light of the applicability of joint and several liability to

DPPs claims. While DPPs believe that their case is strong, any complex antitrust litigation is inherently costly and risky, and this Settlement mitigates that risk and protects the Class.

Conversely, Fieldale Farms believes its case is strong and that it would achieve success on the merits. Fieldale denies any liability with respect to both the output reduction and the Georgia Dock aspects of the alleged conspiracy, and Fieldale maintains that it did nothing wrong. But in the interests of avoiding the risk and uncertainty of trial, Fieldale Farms has agreed to settle, and its participation in both the Georgia Dock and Agri Stats gives it valuable and unique insight into two of the primary mechanisms through which the Plaintiffs allege the Defendants implemented a conspiracy.

In sum, the Settlement Agreement: (1) provides substantial benefits to the class; (2) is the result of extensive good faith negotiations between knowledgeable and skilled counsel; (3) was entered into after extensive factual investigation and legal analysis; and (4) in the opinion of experienced Class Counsel, is fair, reasonable, and adequate to the Class. Accordingly, Co-Lead Counsel believe that the Settlement Agreement is in the best interests of the Class Members and should be preliminarily approved by the Court.

## V. THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

At the preliminary approval stage, the Court must also determine whether the proposed Settlement Class should be certified for settlement purposes. Under Rule 23, class actions may be certified for settlement purposes only. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b). *Id.* at 613-14; *see also In re Cmty. Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005) ("[C]ertification of classes for settlement purposes only [is] consistent with Fed. R. Civ. P. 23, provided that the district court engages in a Rule 23(a) and (b) inquiry[.]").

DPPs seek certification of a Settlement Class consisting of:

> All persons who purchased Broilers directly from any of the Defendants or any Co-Conspirator identified in this action, or their respective subsidiaries or affiliates for use or delivery in the United States from at least as early as January 1, 2008 until the Date of Preliminary Approval. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any Co-Conspirator identified in this action.

(Settlement Agreement, § II.E.2.) This is the same class proposed in DPPs' Complaint. As detailed below, this proposed Class meets the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3).

### A. The Requirements of Rule 23(a) are Satisfied

#### 1. Numerosity

Fed. R. Civ. P. 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable." No magic number satisfies the numerosity requirement, however, "a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Schmidt v. Smith & Wollensky LLC*, 268 F.R.D. 323, 326 (N.D. Ill. 2010) (citations omitted). The proposed Settlement Class consists of persons and entities that purchased Broilers from the Defendants during the period from January 1, 2008 to the Date of Preliminary Approval. While the precise number of Class members is presently known only to Defendants, based on their extensive investigation Co-Lead Counsel believe there are at least thousands of persons and entities that fall within the Settlement Class definition. Thus, joinder would be impracticable and Rule 23 (a)(1) is satisfied.

### 2. Common Questions of Law and Fact

Fed. R. Civ. P. 23(a)(2) requires that there be "questions of law or fact common to the class." Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim and "[e]ven a single [common] question will" satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

A central allegation in the Complaint is that Defendants illegally conspired to restrict supply and increase prices of Broilers. Proof of this conspiracy will be common to all Class members. *See, e.g.*, *Thillens, Inc. v. Cmty. Currency Exch. Ass'n*, 97 F.R.D. 668, 677 (N.D. Ill. 1983) ("The overriding common issue of law is to determine the existence of a conspiracy."). In addition to that overarching question, this case is replete with other questions of law and fact common to the Settlement Class including: (1) the role of each Defendant in the conspiracy; (2) whether Defendants' conduct violated Section 1 of the Sherman Act; (3) whether Defendants affirmatively concealed their agreement; (4) whether Defendants' conspiratorial conduct restricted Broiler supplies and caused the prices of Broilers to be inflated; (5) the appropriate measure of monetary relief, including the appropriate measure of damages; and (6) whether Plaintiffs and Class members are entitled to declaratory and/or injunctive relief. Accordingly, the Settlement Class satisfies Rule 23(a)(2).

### 3. Typicality

Fed. R. Civ. P. 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. "[T]ypicality is closely related to commonality and should be liberally construed." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009) (citations omitted). Typicality is a "low hurdle," requiring "neither complete coextensivity nor even substantial identity of claims." *Owner-Operator Indep. Drivers' Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005). When "the representative party's claim arises from the same course of

conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory," factual differences among class members do not defeat typicality. *Id.* Courts generally find typicality in cases alleging a price-fixing conspiracy. *See, e.g.*, *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 185 (D.N.J. 2003) (finding that plaintiffs met the typicality requirement based on the fact that plaintiffs' main claim - that they were harmed by an illegal price-fixing conspiracy - was the same for all class members).

DPPs here allege a conspiracy to fix, maintain, and inflate the price of Broilers in the United States. The named class representative Plaintiffs will have to prove the same elements that absent Settlement Class members would have to prove, *i.e.*, the existence and effect of such conspiracy. As alleged in the Complaint, each named representative purchased Broilers directly from one or more Defendants and that it was overcharged and suffered an antitrust injury as a result of the violations alleged in the Complaint. (Complaint, ¶¶ 22-28.) Because the representative Plaintiffs' claims arise out of the same alleged illegal anticompetitive conduct and are based on the same alleged theories and will require the same types of evidence to prove those theories, the typicality requirement of Rule 23(a)(3) is satisfied.

### 4. Adequacy

Fed. R. Civ. P. 23(a)(4) requires that, for a case to proceed as a class action, the court must find that "the representative parties will fairly and adequately protect the interests of the class." Adequacy of representation is measured by a two-part test: (i) the named plaintiffs cannot have claims in conflict with other class members, and (ii) the named plaintiffs and proposed class counsel must demonstrate their ability to litigation the case vigorously and competently on behalf of named and absent class members alike. *See Kohen v. Pacific Inv. Mgmt.*, 571 F.3d 672, 679 (7th Cir. 2009).

Both requirements are satisfied here. As they demonstrated at the time they sought appointment, Co-Lead Counsel are qualified, experienced, and thoroughly familiar with antitrust class action litigation. Co-Lead Counsel have successfully litigated many significant antitrust actions and have prosecuted and will continue to vigorously prosecute this lawsuit.[5]

Moreover, the interests of the settling Class members are aligned with those of the representative Plaintiffs. Plaintiffs, like all Class members, share an overriding interest in obtaining the largest possible monetary recovery and as fulsome cooperation as possible. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d at 208 (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes"). Representative Plaintiffs are not afforded any special compensation by this proposed Settlement and all Class members similarly share a common interest in obtaining Fieldale Farms' early and substantial cooperation to prosecute this case.

As they respectfully submit has been demonstrated by their conduct to date, Co-Lead Counsel have diligently represented the interests of the Class in this litigation and will continue to do so. Accordingly, the requirements of Rule 23(a)(4) are satisfied.

### B. The Proposed Settlement Class Satisfies Rule 23(b)(3)

Once Rule 23(a)'s four prerequisites are met, Plaintiffs must show the proposed Settlement Class satisfies Rule 23(b)(3) by showing that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." As to predominance, "[c]onsiderable overlap exists between the court's

---

[5] *See* ECF Nos. 44-0 – 44-3 (DPPs' Motion to Appoint Co-Lead and Liaison Counsel); ECF No. 144 at p. 3 (Court's Order of October 14, 2016 appointing same).

determination of commonality and a finding of predominance. A finding of commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts." *Saltzman*, 257 F.R.D. at 484.

In antitrust conspiracy cases such as this one, courts consistently find that common issues of the existence and scope of the conspiracy predominate over individual issues. *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 408 (S.D. Ohio 2007); *see also In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1039 (N.D. Miss. 1993) ("As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment."). This follows from the central nature of a conspiracy in such cases. *Hughes v. Baird & Warner, Inc.*, No. 76 C 3929, 1980 WL 1894, at *3 (N.D. Ill. Aug. 20, 1980) ("Clearly, the existence of a conspiracy is the common issue in this case. That issue predominates over issues affecting only individual sellers."); *see also Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.").

Plaintiffs must also show that a class action is superior to individual actions, which is evaluated by four considerations:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

Fed. R. Civ. P. 23(b)(3).

Here, any Class member's interest in individually controlling the prosecution of separate claims is outweighed by the efficiency of the class mechanism. Thousands of entities purchased Broilers during the class period; settling these claims in the context of a class action conserves both judicial and private resources and hastens Class members' recovery. Finally, while

Plaintiffs see no management difficulties in this case, this final consideration is not pertinent to approving a settlement class. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Accordingly, the proposed class action is superior to other available methods (if any) for the fair and efficient adjudication of the controversy relating to Fieldale Farms.

## VI. NOTICE TO THE CLASS

Rule 23(e) requires that prior to final approval, notice of a proposed settlement be given in a reasonable manner to all class members who would be bound by such a settlement. For a class proposed under Rule 23(b)(3), whether litigated or by virtue of a settlement, Rule 23(c)(2)(B) enumerates specific requirements. At an appropriate time prior to moving for final approval of this proposed Settlement, DPPs intend to propose to the Court a plan of notice which, pursuant to Rule 23(c)(2)(B), will provide due process and reasonable notice to all customers of Defendants—Settling and Non-Settling Defendants alike—who can be identified through customer lists that will be requested of the Defendants. However, for the reasons identified below, and with Fieldale Farms' agreement, DPPs request that the Court agree to defer formal notice to the Class for the time being.[6]

There is a large cost to the Class, likely to run to six figures, each time notice is provided to a class of this size. (Bruckner Decl., ¶ 10.) Therefore, DPPs request that the Court agree to defer formal notice to the Class of this settlement for efficiency and cost effectiveness. In large antitrust cases, courts have deferred notice until enough settlements have been reached to make it cost effective. *In re Aftermarket Filters Antitrust Litig.*, No. 1:08-cv-04883, Preliminary

---

[6] Fieldale Farms and DPPs have agreed that the timing of a motion to approve notice to the Class of this Settlement Agreement is in the discretion of Co-Lead Counsel, and may be combined with notice of other settlements in this Action. (*See* Settlement Agreement, § II.E.4.)

Approval Order (ECF No. 885) at p. 5 (N.D. Ill. Feb. 16, 2012) (granting preliminary approval of settlement agreements, certifying settlement class, and ordering that class notice be deferred until a later time); *In re New Jersey Tax Sales Antitrust Litig.*, No. 3:12-cv-01893, Order (ECF No. 276) at ¶ 7 (granting preliminary approval of settlement and finding that cost of class notice warranted deferral). If more settlements are reached, then the costs of notice can be spread across those settlements. In addition, multiple notices can be potentially confusing for class members. This Court has the discretion to decide the timing of the notice. *Id.* In the experience of DPP counsel, it is better for notice of more than one proposed settlement to be combined into one notice, with the attendant and obvious efficiencies and savings to the class.

In addition to the cost savings to the Class of deferring notice, DPPs will need time to obtain customer lists from each Defendant. Use of defendants' customer lists for individual notice is commonplace in antitrust cases. *See, e.g.*, *Visa Check/MasterMoney*, No. 96-5238, 2002 WL 31528478 at *2-3 (E.D.N.Y. June 21, 2002) ("For purposes of providing notice, the best way to identify individual merchant class members is . . . through merchant contact information . . . ."). Defendants have so far refused to move forward with discussions regarding transactional data. Therefore, the proposed deferral of class notice will permit time to obtain each Defendants' customer contact information, including through motion practice if necessary.

## VII. CONCLUSION

For these reasons, Interim Co-Lead Counsel respectfully request that the Court preliminary approve the Fieldale Farms Settlement and preliminary certify the Settlement Class.

Dated: <u>August 4, 2017</u>　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　<u>/s/ Steven Hart</u>
　　　　　　　　　　　　　　　　　　Steven Hart (#6211008)
　　　　　　　　　　　　　　　　　　Brian Eldridge (#6281336)
　　　　　　　　　　　　　　　　　　Kyle Pozan (#6306761)
　　　　　　　　　　　　　　　　　　HART MCLAUGHLIN & ELDRIDGE, LLC
　　　　　　　　　　　　　　　　　　121 West Wacker Drive, Suite 1050
　　　　　　　　　　　　　　　　　　Chicago, IL 60601
　　　　　　　　　　　　　　　　　　T: (312) 955-0545
　　　　　　　　　　　　　　　　　　F: (312) 971-9243
　　　　　　　　　　　　　　　　　　shart@hmelegal.com
　　　　　　　　　　　　　　　　　　beldridge@hmelegal.com
　　　　　　　　　　　　　　　　　　kpozan@hmelegal.com

　　　　　　　　　　　　　　　　　　*Direct Purchaser Plaintiffs Interim Liaison Class Counsel*


　　　　　　　　　　　　　　　　　　W. Joseph Bruckner
　　　　　　　　　　　　　　　　　　Heidi M. Silton
　　　　　　　　　　　　　　　　　　Elizabeth R. Odette
　　　　　　　　　　　　　　　　　　Brian D. Clark
　　　　　　　　　　　　　　　　　　Simeon A. Morbey
　　　　　　　　　　　　　　　　　　LOCKRIDGE GRINDAL NAUEN P.L.L.P.
　　　　　　　　　　　　　　　　　　100 Washington Avenue South, Suite 2200
　　　　　　　　　　　　　　　　　　Minneapolis, MN 55401
　　　　　　　　　　　　　　　　　　T: (612) 339-6900
　　　　　　　　　　　　　　　　　　F: (612) 339-0981
　　　　　　　　　　　　　　　　　　wjbruckner@locklaw.com
　　　　　　　　　　　　　　　　　　hmsilton@locklaw.com
　　　　　　　　　　　　　　　　　　erodette@locklaw.com
　　　　　　　　　　　　　　　　　　bdclark@locklaw.com
　　　　　　　　　　　　　　　　　　samorbey@locklaw.com

　　　　　　　　　　　　　　　　　　Bruce L. Simon
　　　　　　　　　　　　　　　　　　PEARSON, SIMON & WARSHAW, LLP
　　　　　　　　　　　　　　　　　　44 Montgomery Street, Suite 2450
　　　　　　　　　　　　　　　　　　San Francisco, CA 94104
　　　　　　　　　　　　　　　　　　T: (415) 433-9000
　　　　　　　　　　　　　　　　　　F: (415) 433-9008
　　　　　　　　　　　　　　　　　　bsimon@pswlaw.com


　　　　　　　　　　　　　　　　　　Clifford H. Pearson
　　　　　　　　　　　　　　　　　　Michael H. Pearson

Bobby Pouya
PEARSON SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
T: (818) 788-8300
F: (818) 788-8104
cpearson@pswlaw.com
mpearson@pswlaw.com
bpouya@pswlaw.com

*Direct Purchaser Plaintiffs Interim Co-Lead Class Counsel*