## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE:  BROILER CHICKEN ANTITRUST LITIGATION | Case No. 1:16-cv-08637 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | |

### SETTLEMENT AGREEMENT BETWEEN DIRECT PURCHASER PLAINTIFFS AND DEFENDANT FIELDALE FARMS CORPORATION

This Settlement Agreement ("Settlement Agreement" or "Agreement") is made and entered into as of the Effective Date, by and between Fieldale Farms Corporation ("Fieldale Farms" or "Settling Defendant") and the Direct Purchaser Plaintiffs ("Plaintiffs" or "DPPs") individually and on behalf of a class of direct purchasers of Broilers, as defined herein, subject to the approval of the Court (the "Settlement Class").

### RECITALS

A.      Plaintiffs are prosecuting the above-captioned Action on their own behalf and on behalf of the Class.

B.      Plaintiffs have alleged, among other things, that Fieldale Farms entered into a contract, combination or conspiracy in restraint of trade, the purpose and effect of which was to suppress competition and to allow Fieldale to charge supra-competitive prices during the Class Period, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

C.      Settling Defendant vigorously and affirmatively denies all allegations of wrongdoing in the Action, has moved to dismiss Plaintiffs' claims, and would allege numerous defenses to Plaintiffs' claims if required to do so.

## EXHIBIT A

D.       This Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, or regulation or of any liability or wrongdoing by the Settling Defendant or of the truth of any of Plaintiffs' Claims or allegations, nor shall it be deemed or construed to be an admission nor evidence of Settling Defendant's defenses.

E.       Co-Lead Counsel have conducted an investigation into the facts and law regarding the Action and the possible legal and factual defenses thereto and have concluded that a settlement with Settling Defendant according to the terms set forth below is fair, reasonable, adequate, and beneficial to and in the best interests of the Class, given the uncertainties, risks, and costs of continued litigation, given the fact that if approved, the proposed settlement will be the initial settlement in a case with many remaining Defendants, and given Settling Defendant's significant obligation to cooperate with Plaintiffs in their continued prosecution of the Action against the remaining Defendants.

F.       Despite its belief that it is not liable for, and has strong defenses to, the Claims asserted by Plaintiffs, Settling Defendant desires to settle the Action to avoid the further expense, inconvenience, disruption, and burden of this litigation and any other present or future litigation arising out of the facts that gave rise to this litigation, to avoid the risks inherent in uncertain complex litigation and trial, and thereby to put to rest this controversy.

G.       Arm's-length settlement negotiations have taken place between Co-Lead Counsel and the Settling Defendant's Counsel over many weeks and many conferences between counsel, and this Agreement has been reached as a result of those negotiations.

H.       The Parties to this Agreement desire to fully and finally settle all actual and potential Claims arising from or in connection with the Action, the factual allegations underlying the Action, and each of them, and avoid the costs and risks of protracted litigation and trial.

**IT IS HEREBY AGREED**, by and among the Settling Parties, that this Action and all Released Claims are finally and fully settled and compromised and that this Action shall be dismissed in its entirety with prejudice as to the Released Parties, subject to approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, upon and subject to the following terms and conditions:

## I.    DEFINITIONS

### A.    Class Definition

"Settlement Class" means the class described in Section II (E)(2) below.

### B.    General Definitions

1.    "Action" means the action captioned *In re Broiler Chicken Antitrust Litigation*, 1:16-cv-08637 (N.D. Ill.) ("Broilers"), which is currently pending in the United States District Court for the Northern District of Illinois.

2.    "Broilers" are chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, raw or cooked, whole or in parts, or as a meat ingredient in a value added product, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards. Settling Defendant agrees to this broad definition of "Broilers" only for purposes of this Settlement Class, and Settling Defendant maintains, as asserted in its individual motion to dismiss, that the various complaints fail to plausibly allege that antibiotic free ("ABF") chicken should be included in the definition of "Broilers."

3.    "Claims" means any and all actual or potential causes of action, claims, contentions, allegations, assertions of wrongdoing, damages, losses, or demands for recoveries,

remedies, or fees complained of, or relating or referred to, arising from the conduct alleged in the Action.

4.       "Class Member" means each member of the Class that does not timely and properly exclude itself from the Class.

5.       "Class Notice" means the notice to the Class that is approved by the Court, in accordance with Section II(E)(4) below.

6.       "Class Period" means the period from and including January 1, 2008 through the Date of Preliminary Approval.

7.       "Co-Conspirator" means those entities named as co-conspirators in the Operative Complaint.

8.       "Co-Lead Counsel" and "Settlement Class Counsel" mean collectively the law firms of Lockridge Grindal Nauen P.L.L.P. and Pearson, Simon & Warshaw, LLP, Direct Purchaser Plaintiffs' Interim Co-Lead Class Counsel.

9.       "Complaint" or "Operative Complaint" means the Second Amended and Consolidated Class Action Complaint in the Action, ECF No. 212.

10.      "Court" or "District Court" means the United States District Court for the Northern District of Illinois and the Honorable Thomas M. Durkin or his successor, or any other Court in which an Action is proceeding.

11.      "Date of Final Approval" means the date on which the Court enters an order granting final approval to this Settlement Agreement, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, as provided in Section II(E)(7) below.

12.     "Date of Preliminary Approval" means the date on which the Court enters an order granting preliminary approval to this Settlement Agreement, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, as provided in Section II(E)(3) below.

13.     "Defendant" or "Defendants" means any or all of the Defendants named in the Action, now or in the future.

14.     "Documents" means (a) all papers, electronically stored information ("ESI"), statements, transcripts, or other materials within the scope of Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure; and (b) any copies or reproductions of the foregoing, including microfilm copies or computer images.

15.     "Effective Date" means the date on which this Settlement Agreement is entered into and executed by all Parties.

16.     "Escrow Account" means the account with the Escrow Agent that holds the Settlement Fund.

17.     "Escrow Agent" means the bank into which the Settlement Fund shall be deposited and maintained as set forth in Section II(C) of this Agreement.

18.     "Fairness Hearing" means a hearing on the settlement proposed in this Settlement Agreement held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

19.     "Net Settlement Fund" means the Settlement Fund, plus accrued interest, less any award of attorneys' fees or reimbursement of expenses and less applicable taxes, tax preparation expenses, and costs of notice and administration, that may be awarded or approved by the Court.

20.     "Opt-Out Claim" means any claim, as set forth in Section II(E)(3) and (4) of this Settlement Agreement, made by a Person, otherwise qualifying as a member of the Class, that has validly and timely excluded itself from the Class.

21.     "Order and Final Judgment" means the order and final judgment of the Court approving the Settlement Agreement, as described in Sections II(E)(7) below.

22.     "Parties" or "Settling Parties" means Settling Defendant and the Class, as represented by Direct Purchaser Plaintiffs.

23.     "Person(s)" includes an individual and an entity.

24.     "Plaintiffs" means Direct Purchaser Plaintiffs.

25.     "Released Claims" means any and all existing or potential claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasing Parties (defined below), or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated, claims, causes of action, injuries, or damages arising from or in connection with any act or omission during the Class Period complained of, relating to, or referred to in the Action.  Notwithstanding the above, "Released Claims" do not include (a) claims asserted against any other Defendant or Co-Conspirator nor (b) any claims based on: (1) product defect or breach of warranty; (2) breach of contract; or (3) purchases of Broiler products by persons or entities other than the Releasing Parties.  The reservation of claims set forth in (a) and (b) of this Section I(B)(25) does not impair or diminish the right of the Released Parties to assert any and all defenses to such claims.

26. "Released Parties" means jointly and severally, individually and collectively, the Settling Defendant, its predecessors; successors; assigns; affiliates; and any and all past, present, and future parents, owners, subsidiaries, divisions, departments, and affiliates, and all of their heirs, executors, devisees, administrators, officers, executives, directors, stockholders, partners, members, agents, attorneys, advisors, auditors, accountants, contractors, servants, employees, representatives, insurers, and assignees. Notwithstanding the foregoing, "Released Parties" does not include any other Defendant or Co-Conspirator, either explicitly or as a third party beneficiary.

27. "Releasing Parties" means jointly and severally, individually and collectively, the Class, and each Class Member, on behalf of themselves and any person or entity claiming by or through them as, including without limitation, their respective predecessors; successors; assigns; and any and all past, present, and future parents, owners, subsidiaries, divisions, departments, affiliates, heirs, executors, devisees, administrators, officers, directors, stockholders, partners, agents, attorneys, advisors, auditors, accountants, contractors, servants, employees, representatives, insurers, and assignees.

28. "Settling Defendant" means Fieldale Farms Corporation.

29. "Settling Defendant's Counsel" means the law firm of Alston & Bird LLP.

30. "Settlement Amount" means the cash payment of $2,250,000.00 described in Section II(A)(1), below.

31. "Settlement Fund" means the funds described in Section II(A) of this Settlement Agreement, plus accrued interest, in the separate Escrow Account for the settlement contemplated by this Settlement Agreement established in accordance Section II(C) below.

## II.     SETTLEMENT

### A.     Performance By Settling Defendant

1.     **Settlement Payment.** Settling Defendant shall pay $2.25 million ($2,250,000.00) in United States dollars, all in cash, as the settlement amount in settlement of the Action, inclusive of class recovery amounts, fees (including attorneys' fees and any other fees), and costs.  This Settlement Amount shall be paid by Settling Defendant into the Escrow Account described herein within 30 days of the Effective Date.

a.     Settling Defendant's payment to the Escrow Agent described herein shall be by wire transfer pursuant to instructions from the Escrow Agent or Co-Lead Counsel.

b.     The payment described in Section II(A)(1) shall constitute the total Settlement Amount, and the obligations described in Section II(A) shall continue so long as this Settlement Agreement remains in effect.

c.     Each Class Member shall look solely to the Settlement Amount for settlement and satisfaction, as provided herein, of all claims released by the Releasing Parties pursuant to this Agreement.

2.     **Cooperation.**   Settling Defendant shall cooperate in good faith with Plaintiffs and Settlement Class Counsel in accordance with the terms and provisions of this Agreement. Such cooperation shall consist of the following:

a.     Within seven (7) calendar days after the Effective Date or such other time as the Parties may agree, Settling Defendant shall produce to Settlement Class Counsel:

i.     Copies of Documents produced to the U.S. Department of Justice, the Office of Attorney General of the State of Florida, or any other antitrust or competition authorities in any jurisdiction ("Investigative Authorities"), by Settling Defendant or its Counsel

on Settling Defendant's behalf concerning Broilers, produced in the same format as produced to the Investigative Authorities. If Settling Defendant did not retain copies of any such Documents it produced to the Investigative Authorities, it shall request copies from the Investigative Authorities. Settling Defendant shall also provide a written description of each document source (both individual custodians and centralized locations).

      **b.**     Within twenty-one (21) calendar days after the Effective Date or such other time as the Parties may agree, Settling Defendant shall produce to Settlement Class Counsel:

      i.     A sample of each category or type of Agri-Stats reports received by Settling Defendant including, but not limited to, the Bottom Line Report. To the extent all Agri-Stats reports, or any subset of such reports, are readily available, Settling Defendant will produce the entire set or subset of such Agri-Stats reports to Settlement Class Counsel within 21 days of the Effective Date. Otherwise, such documents shall be produced within 60 days of the Effective Date pursuant to Section II(A)(2)(e).

      ii.     A copy of any written agreement or contract with Agri-Stats, Inc. and/or Express Markets, Inc. ("EMI").

      **c.**     **Meetings with Counsel for Settling Defendant.** Within twenty-one (21) calendar days after the Effective Date or such other time as the Parties may agree, Settling Defendant's Counsel shall meet with Settlement Class Counsel for at least seven (7) hours, and more if appropriate, at an agreed upon location and provide at that meeting a reasonably detailed description of the principal facts known to Settling Defendant that are relevant to the alleged conduct at issue in the Actions, including without limitation facts previously provided to the DOJ or any other Investigative Authority in response to subpoenas or otherwise. To the extent

Settlement Class Counsel have follow-up questions after this meeting, Settling Defendant's Counsel shall reasonably endeavor to answer such questions. Any statements made by Settling Defendant's Counsel under this Paragraph shall be deemed to be "conduct or statements made in compromise negotiations regarding the claim" and shall be inadmissible in evidence as provided under Federal Rule of Evidence 408. In the event, for whatever reason, this Agreement is terminated or the Settlement is not approved by the Court, such inadmissibility shall survive subject to the following exception and the cooperation provisions set forth below. Further, the cooperation described in this provision and the remainder of this Agreement shall not require Settling Defendant or its Counsel to provide information protected by the attorney-client privilege, attorney work-product doctrine, or other similar privileges, and Settling Defendant shall not waive any such protections or privileges.

**d.**     Within thirty (30) calendar days after the Effective Date or such other time as the Parties shall agree, Settling Defendant shall produce to Settlement Class Counsel:

i.     A copy of any readily available phone records the Settling Defendant has already collected or identified as pertaining to this matter.

ii.     For Gus Arrendale, Sammy Franklin, Joe Hatfield, and Tom Hensley, any hard copy or electronic contact information for individuals who worked at other Defendants or Co-Conspirators between 2007 and the present. The parties will discuss the most efficient way to provide this information in a timely manner.

iii.     Signed user authorizations from Gus Arrendale, Sammy Franklin, Joe Hatfield, and Tom Hensley for any phone number used by these individuals for the period from January 1, 2007 through September 2, 2016, to communicate with employees of other

Defendants or Co-Conspirators, including cellphones, office phones, and if applicable, home phones. Settlement Class Counsel will provide appropriate authorization forms.

              iv.     Signed authorizations from Settling Defendant for all phone numbers that are part of the Settling Defendant's company account, such as its main lines and direct lines for employees, for the period from January 1, 2007 through September 2, 2016. Settlement Class Counsel will provide appropriate authorization forms.

              **e.**    **Interviews.**   Within sixty (60) calendar days after the Effective Date or such other time as the Parties may agree, Settling Defendant agrees to make reasonable efforts to make available for interview five (5) current or former employees of Settling Defendant with information regarding the factual allegations underlying the Claims in the Action, including general industry knowledge. Such interviews shall be at Settling Defendant's Counsel's office in Atlanta, Georgia or Smith, Gilliam, Williams, & Miles, PA, 301 Green Street NW, Gainesville, Georgia 30503, at Settling Defendant's sole discretion, on a date on which the Parties shall agree upon reasonable notice. At Settlement Class Counsel's option, such interviews may be conducted in person, by telephone, or by other means.

              **f.**    Within one-hundred and twenty (120) calendar days after the Effective Date or such other time as the Parties shall agree, Settling Defendant shall produce to Settlement Class Counsel:

              i.     To the extent not already produced, all categories and types of Agri-Stats reports received by Settling Defendant, including but not limited to any Bottom Line Reports;

              ii.    Documents sufficient to show the amounts of payments made by customers during the Class Period to Settling Defendant for Broilers and, in electronic

format, the names of those customers and their last known addresses. If doing so is no significant additional burden, then Settling Defendant shall produce the type, amount, and SKU of Broiler purchased for each customer;

iii.    Electronically Stored Information ("ESI") as agreed upon by the Parties (to the extent such ESI is within its possession, custody or control, and may be retrieved and compiled through reasonable efforts) sufficient to show Settling Defendant's revenues and volumes of Broilers from January 1, 2007 through the Effective Date, provided that the Settling Defendant shall not be obligated to produce invoices, individual transaction records, or Documents other than summaries or reports sufficient to break down and reflect the foregoing information;

iv.    Documents sufficient to show Broiler production and capacity during the Class Period;

v.    Documents sufficient to show price lists or pricing methodology used by Settling Defendant during the Class Period.

**g.**    If, as a result of the currently pending motion by Defendants to dismiss Plaintiffs' Complaint, Plaintiffs must or may amend their allegations prior to the time periods and deadlines in paragraphs (a) through (f) above, the Parties will cooperate in good faith to accelerate these time periods and deadlines as much as possible to accommodate Plaintiffs' schedule.

**h.    Depositions.** Within thirty (30) calendar days after the stay of deposition discovery is lifted or such other time as the Parties may agree, Settling Defendant agrees to make available for depositions three (3) current or former employees of Settling Defendant with information regarding the factual allegations underlying the Claims in the Action.

517278.4

These deposition witnesses shall be provided at Alston & Bird's office in Atlanta, Georgia or Smith, Gilliam, Williams, & Miles, PA, 301 Green Street NW, Gainesville, Georgia 30503, at Settling Defendant's sole discretion, and on a date on which the Parties shall agree and upon reasonable notice.

Written notice served by Settlement Class Counsel upon Settling Defendant's Counsel shall constitute sufficient service of notice of any depositions requested under this Paragraph.

Settling Defendant agrees that Settlement Class Counsel may ask questions at depositions of Settling Defendant's witnesses noticed by other plaintiffs in the Action.

**i.** **Authentication of Documents.** Settling Defendant agrees to use reasonable efforts to authenticate, to the extent possible, documents and/or things produced in the Action, whether by declarations, affidavits, depositions, hearings and/or trials as may be necessary for the Actions.

**j.** If Settling Defendant produces any declarations, Documents, data or other responses to discovery to any other plaintiffs in the Action, Settling Defendant will produce the same to Settlement Class Counsel.

**k.** **Testimony at Trial.** Settling Defendant agrees to make available for testimony at trial in the Actions two (2) current or former employees of Settling Defendant whom Settlement Class Counsel, in consultation with Settling Defendant's Counsel, reasonably believe have knowledge regarding Plaintiffs' Claims alleged in the Actions. With respect to former employees, Settling Defendant will make reasonable efforts to secure the witnesses' attendance but may be unable to do so. Such witnesses will be made available at Settling Defendant's expense and upon reasonable notice. Such witnesses may but need not be the same

witnesses who have provided deposition testimony in the Action. Such witnesses will appear at trial and testify, but they are not obligated to participate in or assist plaintiffs with trial preparation.

l. **Attorney Client Privilege, Work Product Doctrine.** Notwithstanding any other provision in this Settlement Agreement, Settling Defendant may assert where applicable the work product doctrine, the attorney client privilege, or any similar privilege recognized by the courts with respect to any Cooperation Materials (including Documents, statements, testimony, material, and/or information) requested under this Settlement Agreement. If any Documents protected by the attorney client privilege, the work product doctrine, or any similar privilege are accidentally or inadvertently produced, they shall be treated in accordance with the protective order (ECF No. 202) and the ESI protocol in the Action.

m. **Discovery.** None of the foregoing provisions shall be construed to prohibit Plaintiffs from seeking appropriate discovery from non-settling Defendants or Co-Conspirator or any other Person other than Settling Defendant. Subject to any applicable protective orders, Plaintiffs and Settlement Class Counsel hereby agree to provide Settling Defendant's Counsel, at Settling Defendant's expense, with copies of any Documents, deposition testimony, or other evidence received by Plaintiffs or Settlement Class Counsel from any non-settling Defendants or third parties in the Action; provided, however, that Plaintiffs and Settlement Class Counsel are not obligated to provide Settling Defendant's Counsel any information or material subject to the attorney client privilege, the attorney work product doctrine, the common interest privileges, any joint prosecution agreements, any right to privacy, or any other applicable privilege or privacy right.

n. **Confidentiality**. All non-public data, Documents, information, testimony, or communications provided to Settlement Class Counsel pursuant to this Section

II(A)(2) ("Cooperation Materials"), if so designated by Settling Defendant, shall be treated as "Confidential" or "Highly Confidential" under the protective order entered on November 8, 2016, in the Action (ECF No. 202). Settlement Class Counsel shall use such Cooperation Materials solely for purposes of prosecuting Plaintiffs' Claims in the Actions against non-settling Defendants and Co-Conspirator, and for no other purpose.

3. Settling Defendant acknowledges that the Cooperation Materials provided pursuant to this Agreement may be used by Plaintiffs for the further prosecution of the Action, including in any amended complaint filed, to oppose motions to dismiss, to support class certification, to oppose dispositive motions, for expert reports and the trial of this Action, and that these uses are exceptions to the general inadmissibility provisions set forth above.

4. DPPs will confer with Settling Defendant before using or disclosing Cooperation Materials to any other party. DPPs will make reasonable efforts to minimize the impact of their use of Cooperation Materials in the Settling Defendant's remaining cases.

5. Should DPPs have good cause to need additional cooperation in their prosecution of the Action against other Defendants, Fieldale Farms and DPPs will negotiate the additional cooperation in good faith to provide the assistance needed while minimizing the burden to Fieldale Farms.

6. **Ongoing Duty to Cooperate**. Settling Defendant's obligations to cooperate pursuant to Section II(A) of this Agreement shall not be terminated or otherwise affected by the release set forth in Section II(B) of this Agreement. Unless this Agreement is not approved by the Court or terminated pursuant to Section II(E)(10) or otherwise, Settling Defendant's obligations to cooperate under this Settlement Agreement as provided in Section II(A) shall continue until final judgment has been rendered in the Actions against all Defendants,

and the time to appeal or to seek permission to appeal from the Court's entry of final judgment has expired or, if appealed, final judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.

      **B.**     **Release of Claims.**

      **1.**    **Release.**  Upon the occurrence of the Date of Final Approval, and in consideration of the valuable consideration set forth in this Agreement, the Class shall be deemed to, and by operation of the Order and Final Judgment shall have, hereby fully, finally, and forever released, relinquished, and discharged the Released Parties of all existing and potential claims that were raised or could have been raised in this Action arising from the conduct alleged in the Action, in conformity with Section I(B)(25).

      **2.**    **Covenant Not to Sue.**  Plaintiffs and each Settlement Class Member covenant not to sue or otherwise seek to establish liability against the Settling Defendant for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of the Released Claims, including, without limitation, seeking to recover damages relating to any of the Released Claims.  This Paragraph shall not apply to any action to enforce this Settlement Agreement.

      **3.**    **Full Release**. The Parties to this Agreement expressly agree and confirm that the Released Claims as set forth in Section I(B)(25) and the provisions of Section II(B) constitute a full and final release of the Settling Defendant by Plaintiffs and each Settlement Class Member of the Released Claims.

      **4.**    **Waiver**. Upon the Date of Final Approval, Plaintiffs and each Settlement Class Member shall be deemed to have, and by operation of the Order and Final Judgment shall

have, with respect to the subject matter of the Released Claims, waived the provisions, rights, and

benefits of Section 1542 of the California Civil Code and Section 20-7-11 of the South Dakota

Codified Laws, each of which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Plaintiffs and each Settlement Class Member shall further be deemed to have, and by operation of

the Order and Final Judgment shall have, expressly waived all similar provisions, statutes,

regulations, rules, or principles of law or equity of any other state or applicable jurisdiction, or

principle of common law. In connection with the waiver and relinquishment set forth in this

Paragraph, Plaintiffs and each Settlement Class Member acknowledge that they are aware that they

may hereafter discover facts in addition to, or different from, those facts which they now know or

believe to be true with respect to the subject matter of the Released Claims, but that it is their

intention to release fully, finally, and forever all Released Claims, and, upon the Date of Final

Approval, shall be deemed to have, and by operation of the Order and Final Judgment, shall have,

fully, finally, and forever settled and released any and all Released Claims, known or unknown,

suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden,

which now exist, or heretofore have existed, upon any theory of law or equity now existing or

coming into existence in the future, notwithstanding the discovery or existence of any such

additional or different facts. Plaintiffs and each Settlement Class Member intend and, by operation

of the Order and Final Judgment, shall be deemed to have acknowledged that the foregoing waiver

was separately bargained for and a key element of the Settlement of which this waiver and release

is a part.

C.     **Settlement Fund Administration.**  The Settlement Fund shall be administered pursuant to the provisions of this Settlement Agreement and subject to the Court's continuing supervision and control, until the funds in the Settlement Fund are fully distributed, as follows:

1.     The Settlement Fund shall be established within an Escrow Account and administered by an Escrow Agent at a bank designated by Co-Lead Counsel and administered by an Escrow Agent designated by Co-Lead Counsel.  Co-Lead Counsel, Settling Defendant, and Settling Defendant's Counsel agree to cooperate in good faith to prepare an appropriate escrow agreement in conformance with this Agreement.

2.     Neither the Class nor Co-Lead Counsel shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Class or obtaining approval of the settlement, or administering the Settlement.  Co-Lead Counsel may, without prior order of the Court, withdraw from the Settlement Fund up to $500,000 to pay the costs for notice and for preliminary and final approval of this Settlement.  In the event that Court-ordered notice and administration costs exceed $500,000, Plaintiffs and Co-Lead Counsel may apply to the Court to pay such additional notice and administration costs from the Settlement Fund.  Such costs of notice shall be nonrefundable in the event that, for any reason, the Settlement is not finally approved.

3.     If there are other settlements at the time of the motion for preliminary approval of this Settlement, Co-Lead Counsel shall endeavor to ensure that notice and claims administration costs shall be paid from the settlement funds proportionate to the amount of any such settlements, consistent with any such other agreements and the approval of the Court.

4.     Under no circumstances will Settling Defendant be required to pay more or less than the Settlement Amount pursuant to this Agreement and the Settlement set forth herein.

For purposes of clarification, the payment of any Fee and Expense Award, the Notice and Administrative Costs (including payment of any applicable fees to Escrow Agent) and any other costs associated with the implementation of this Settlement Agreement shall be exclusively paid from the Settlement Amount.

5.      No other funds shall be paid or disbursements made from the Settlement Fund without an order of the Court.

6.      The Escrow Agent shall, to the extent practicable, invest the funds deposited in the Settlement Fund in discrete and identifiable instruments backed by the full faith and credit of the United States Government, or fully insured by the United States Government or any agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  Any cash portion of the Settlement Fund not invested in instruments of the type described in the first sentence of this Section II(C)(6) shall be maintained by the Escrow Agent, and not commingled with any other funds or monies, in a federally insured bank account.  Subsequent to payment into the Settlement Fund pursuant to Section II(A)(1), neither the Settling Defendant nor Settling Defendant's Counsel shall bear any responsibility or risk related to the Settlement Fund or the Net Settlement Fund.

7.      The Parties agree that the Settlement Fund and the Net Settlement Fund are each intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1 and that the Escrow Agent, as administrator of the Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any Taxes, as defined below, owed with respect to the Escrow Account.  Neither the Settling Defendant nor the Settling Defendant's

Counsel shall have any liability or responsibility of any sort for filing any tax returns or paying any Taxes with respect to the Escrow Account.

8.      All: (i) taxes on the income of the Settlement Fund ("Taxes"), and (ii) expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants) shall timely be paid by the Escrow Agent out of the Settlement Fund. The Class Members shall be responsible for paying any and all federal, state, and local income taxes due on any distribution made to them pursuant to the Settlement provided herein.

9.      After the Date of Final Approval, the Net Settlement Fund shall be disbursed in accordance with a plan of distribution to be approved by the Court. The Class Members shall look solely to the Net Settlement Fund for settlement and satisfaction of any and all Released Claims from Released Parties. The timing of a motion to approve a plan of distribution of the Net Settlement Fund created by this Settlement Agreement shall be in the discretion of Co-Lead Counsel, and may be combined with a plan to distribute proceeds from other settlements in this Action.

D.      **No Reversion**

Except as provided in Section II(E)(10)(b), Settling Defendant shall have no rights to reversion in the event that Class Members request exclusion or opt out of the Class, and any Opt-Out Claims shall have no effect on this Settlement Agreement.

E.      **Approval of Settlement Agreement and Dismissal of Claims.**

1.      **Cooperation.** Plaintiffs and Settling Defendant shall use their best efforts to effectuate this Settlement Agreement, including cooperating in promptly seeking the Court's approval of the Settlement Agreement, the giving of appropriate class notice under Federal Rules

of Civil Procedure 23(c) and (e), and the prompt, complete, and final dismissal with prejudice of the Action as to the Settling Defendant only.

      **2.**    **Settlement Class Certification.** Plaintiffs shall seek, and Settling Defendant shall not object to, appointment of Plaintiffs' Co-Lead Counsel as Settlement Class Counsel for purposes of this Settlement, and certification in the Actions of a Class for settlement purposes only, defined as follows:

> All persons who purchased Broilers directly from any of the Defendants or any Co-Conspirator identified in this action, or their respective subsidiaries or affiliates for use or delivery in the United States from at least as early as January 1, 2008 until the Date of Preliminary Approval. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any Co-Conspirator identified in this action.

      **3.**    **Preliminary Approval**. Plaintiffs shall submit to the District Court a motion, at such time deemed appropriate in the discretion of Co-Lead Counsel, requesting entry of an order preliminarily approving the settlement ("Preliminary Approval Order"). Settling Defendant shall not oppose and shall reasonably cooperate in such motion. The proposed Preliminary Approval Order shall provide that, *inter alia*:

      **a.**    the settlement proposed in the Settlement Agreement has been negotiated at arm's length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Class;

      **b.**    the proposed Class Notice meets the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, and constitutes the best notice practicable under the circumstances for settlement purposes;

      **c.**    after Class Notice has been carried out, a hearing on the settlement proposed in this Settlement Agreement shall be held by the Court to

determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court (the "Fairness Hearing");

**d.**     Class Members who wish to exclude themselves must submit an appropriate and timely request for exclusion;

**e.**     Class Members who wish to object to this Agreement must submit an appropriate and timely written statement of the grounds for objection; and

**f.**     Class Members who wish to appear in person to object to this Agreement may do so at the Fairness Hearing pursuant to directions by the Court.

4.     **Class Notice.**  The Class Notice shall provide for a right of exclusion, as set forth in Section II(E)(3).  The Class Notice shall also provide for a right to object to the proposed Settlement.  Individual notice of the Settlement to all Class Members who can be identified through reasonable effort shall be mailed or emailed to the Class in conformance with a notice plan to be approved by the Court.   The timing of a motion to approve notice to the Class of this Settlement Agreement shall be in the discretion of Co-Lead Counsel, and may be combined with notice of other settlements in this Action.

5.     **Cost of Class Notice**.  The costs of providing Class Notice to Class Members shall be paid by the Escrow Agent from the Settlement Fund pursuant to Section II(C)(2) and (3).

6.     **CAFA Notice.**  Within ten (10) days of filing of this Settlement Agreement in court, Settling Defendant will provide to the appropriate state officials and the appropriate federal official the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA").

7.      **Final Approval**.  If this Settlement Agreement is preliminarily approved by the Court, the Class shall  seek entry of an Order and Final Judgment, which Settling Defendant shall not oppose and in which it shall reasonably cooperate, that *inter alia:*

a.      finally approves this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions;

b.      determines that the Class Notice constituted, under the circumstances, the most effective and practicable notice of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

c.      orders that all claims made against the Settling Defendant in *In re Broiler Chicken Antitrust Litigation*, 1:16-cv-08637 (N.D. Ill.), be dismissed with prejudice and, except as provided for in this Settlement Agreement, without further costs or fees;

d.      incorporates the Release set forth in this Agreement and makes the Release effective as of the date of the Final Order and Final Judgment;

e.      reserves to the Court exclusive jurisdiction over the settlement and this Settlement Agreement, including the administration and consummation of this Agreement;

f.      determines under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directs that the judgment of dismissal as to the Released Parties shall be final and entered forthwith; and

g.      orders that Settlement funds may be disbursed as provided in the Final Approval Order or other order of the Court.

8.      **Class Counsel Fees and Expenses; No Other Costs.**

a.      Except as otherwise provided in this Settlement Agreement, Settling Defendant shall have no responsibility for any other costs, including Co-Lead Counsel's attorneys' fees, costs, and expenses or the fees, costs, or expenses of any Plaintiff's or Class Member's respective attorneys, experts, advisors, or representatives, provided, however, that with respect to

the Action, including this Settlement Agreement, Settling Defendant shall bear its own costs and attorneys' fees.

**b.** At their discretion and after proper notice to the Class and opportunity to object, Co-Lead Counsel may seek a court order granting attorneys' fees and expenses from the Settlement Fund, separately or in conjunction with other settlements. In that event, Co-Lead Counsel will seek reasonable attorneys' fees of no more than 33% of the Settlement Amount, in addition to reimbursement of reasonable expenses.

**c.** At their discretion and after proper notice to the Class and opportunity to object, Class Counsel may seek from the Settlement Fund, separately or in conjunction with other settlements, a court order granting reimbursement of costs and service awards for the work Plaintiffs performed on behalf of the class, and to compensate for the time and expense they have incurred in bringing this Action.

**d.** The procedure for and the allowance or disallowance by the Court of any applications by Co-Lead Counsel for attorneys' fees and expenses or the expenses of or service awards to Plaintiffs to be paid out of the Settlement Fund are not part of or a condition to the Settlement set forth herein, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Agreement, and any order or proceeding relating to any application for attorneys' fees or expenses shall not operate to terminate or cancel this Agreement or the releases set forth herein, or affect or delay the finality of the judgment approving this settlement.

**e.** Within 15 days after any order by the Court awarding attorneys' fees, expenses, class representative service awards or expenses, the Escrow Agent shall pay the approved attorneys' fees, costs, and service award via wire transfer from the Settlement Fund as

directed by Co-Lead Counsel. In the event the settlement is reversed on appeal, or the amount of attorneys' fees, costs, or service award is reduced on appeal, class counsel shall, within 30 days of such appellate order, cause the difference in the amount paid and the amount awarded on appeal to be returned to the Settlement Fund.

9. **When Settlement Becomes Final**.  The settlement contemplated by this Settlement Agreement shall become final on the date that: (a) the Court has entered the Order and Final Judgment approving this Settlement Agreement, and all of its material terms and conditions, in accordance with Section II(E)(7), above, under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Action as against the Settling Defendant with prejudice as to all Class Members and without costs; and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Settlement Agreement and entry of the order of Final Judgment, as described in Section II(E)(7) above, has expired with no appeal having been filed or, if appealed, approval of this Settlement Agreement and the Order and Final Judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review.  The Parties agree that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure, nor the All Writs Act, 28 U.S.C. § 1651, nor any extensions of time in petitioning for a writ of certiorari under Rule 13 of the Rules of the Supreme Court of the United States, shall be taken into account in determining the above-stated times.

10. **Termination and Rescission.**

a. **Rejection or Alteration of Settlement Terms.**  If the Court declines to grant either preliminary or final approval to this Settlement Agreement or any material part hereof (as set forth in Sections II(E)(3) or (E)(7) above, respectively), or if the Court approves this Settlement Agreement in a materially modified form, or if after the Court's approval, such

approval is materially modified or set aside on appeal, or if the Court does not enter the Final Order and Judgment, or if the Court enters the Final Order and Judgment and appellate review is sought and on such review such Final Order and Judgment is not affirmed (collectively "Triggering Events"), then Settling Defendant and Plaintiffs shall each, in their respective sole discretion, have the option to rescind this Settlement Agreement in its entirety by providing written notice of their election to do so ("Termination Notice") to each other within thirty (30) calendar days of such Triggering Event. For purposes of this Section II(E)(10), a material modification includes but is not limited to any modification to the settlement payments, the scope of the Released Claims pursuant to Section II(A) and (B), the opt-out rescission provision in Section II(B), and the scope of the cooperation provisions in Section II(A)(2).

      **b.** **Rescission Based on Opt-Outs.** Fieldale Farms will have the sole discretion to terminate the Class Settlement Agreement if Class Members representing more than 42% of Fieldale Farms' United States total annual sales in 2014, 2015, or 2016 opt out of the Direct Purchaser Plaintiffs' Settlement Class. Any such decision to rescind this Agreement must be made within fourteen (14) calendar days of Class Counsel providing a list of persons or entities that have timely requested exclusion from the Class.

      **c.** **Termination of Settlement.** In the event this Settlement Agreement is rescinded or terminated pursuant to this Section II(E)(10), then: (i) within fifteen (15) business days, the Settlement Fund—including accrued interest, less taxes and tax expenses that have been paid or that have accrued and will be payable at some later date, and attorneys' fees and costs that have been disbursed pursuant to Court Order, and less expenses and costs that have been disbursed pursuant to Section II(C)(2)—shall be refunded by the Escrow Agent to the Settling Defendant pursuant to written instructions from Settling Defendant's Counsel to Co-Lead

Counsel; (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of the day before the Effective Date, and without waiver of any positions asserted in the Action as of the day before the Effective Date, which shall then resume proceedings in the District Court, that Court having retained jurisdiction over the Settlement and related matters and, except as otherwise expressly provided in this Settlement Agreement, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

      **11.**     **No Admission**.

      **a.**     Nothing in this Settlement Agreement constitutes an admission by Settling Defendant as to the merits of the allegations made in the Action, or an admission by Plaintiffs or the Class of the validity of any defenses that have been or could be asserted by Settling Defendant.

      **b.**     This Settlement Agreement, and any of its terms, and any agreement or order relating thereto, shall not be deemed to be, or offered by any of the Settling Parties to be received in any civil, criminal, administrative, or other proceeding, or utilized in any manner whatsoever as, a presumption, a concession, or an admission of any fault, wrongdoing, or liability whatsoever on the part of any of the Settling Defendant or other Released Parties; provided, however, that nothing contained in this Section II(E)(11) shall prevent this Settlement Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Settlement (or any agreement or order relating thereto) or the Order and Final Judgment, or in which the reasonableness, fairness, or good faith of any Party participating in the Settlement (or any agreement or order relating thereto) is in issue, or to enforce or effectuate provisions of this Settlement Agreement or the Order and Final Judgment.  This Settlement Agreement may, however, be filed and used in other

proceedings, where relevant, to demonstrate the fact of its existence and of this Settlement, including but not limited to Settling Defendant filing the Settlement Agreement and/or the Order and Final Judgment in any other action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, waiver, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## III.    MISCELLANEOUS

**A.    Entire Agreement**.    This Settlement Agreement shall constitute the entire agreement between the Class and Settling Defendant pertaining to the Settlement of the Action against Settling Defendant and supersedes any and all prior and contemporaneous undertakings of the Class and Settling Defendant in connection therewith.  All terms of the Settlement Agreement are contractual and not mere recitals.

**B.    Inurement**.  The terms of the Settlement Agreement are and shall be binding upon, to the fullest extent possible, each of the Releasing Parties and the Released Parties, and upon all other Persons claiming any interest in the subject matter hereto through any of the Parties, Releasing Parties, or Released Parties, including any Class Members.

**C.    Modification**.  This Settlement Agreement may be modified or amended only by a writing executed by the Class and Settling Defendant, subject (if after preliminary or final approval) to approval by the Court.  Amendments and modifications may be made without notice to the Class unless notice is required by law or by the Court.

**D.    Drafted Mutually**.  For the purpose of construing or interpreting this Settlement Agreement, the Class and Settling Defendant shall be deemed to have drafted it equally, and it shall not be construed strictly for or against any party.

**E.    Governing Law**.  All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of Illinois without regard to its choice-of-law or conflict-of-law principles.

**F.    Jurisdiction**.  This Settlement Agreement is subject to the continuing and exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein.  If for any reason this Settlement Agreement is rescinded, terminated or fails to become effective, then, in such event, nothing in this Settlement Agreement or with regard to any conduct of Settling Defendant or Settling Defendant's Counsel pursuant to any obligations Settling Defendant has pursuant to the Agreement shall constitute or are intended to be construed as any agreement to personal jurisdiction (general or specific) or subject matter jurisdiction so as to confer the jurisdiction of the District Court over Settling Defendant, nor shall it constitute any waiver of any defenses based on personal or subject matter jurisdiction.

**G.    Counterparts**.  This Settlement Agreement may be executed in counterparts by Co-Lead Counsel and Settling Defendant's Counsel, each of which shall be deemed an original and all of which taken together shall constitute the same Settlement Agreement.  A facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

**H.    Represented by Counsel**.    Plaintiffs, the Class and Settling Defendant acknowledge that each have been represented by counsel, and have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so and are not relying on any representation or warranty by the other party other than as set forth

herein. Therefore, the Settling Parties and their respective counsel agree that they will not seek to set aside any part of the Settlement Agreement on the grounds of mistake.

I.    **Authorization**. Each of the undersigned attorneys represents that he or she is fully authorized to enter into and execute this Settlement Agreement, subject to Court approval; the undersigned Co-Lead Counsel represent that they are authorized to execute this Settlement Agreement on behalf of Plaintiffs and the Class; and the undersigned Settling Defendant's Counsel represent that they are authorized to execute the Settlement Agreement on behalf of Settling Defendant.

J.    **Privilege.** Nothing in this Settlement Agreement, Settlement, or the negotiations or proceedings relating to the foregoing is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the accountants' privilege, the attorney-client privilege, the joint defense privilege, or work product immunity.

K.    **Notice.** Any notice required pursuant to or in connection with this Settlement shall be in writing and shall be given by: (1) hand delivery; (2) registered or certified mail, return receipt requested, postage prepaid; or (3) UPS or similar overnight courier, addressed, in the case of notice to any Plaintiff or Class Member, to Co-Lead Counsel at their addresses set forth below, and, in the case of notice to Settling Defendant, to their representative at the address set forth below, or such other address as Settling Defendant or Co-Lead Counsel may designate, from time to time, by giving notice to all Parties in the manner described in this Section III(K).

For Direct Purchaser Plaintiffs:

W. Joseph Bruckner
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T: (612) 339-6900
F: (612) 339-0981

Bruce L. Simon
PEARSON, SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
T: (415) 433-9000
F: (415) 433-9008

For Settling Defendant Fieldale Farms Corporation:

B. Parker Miller
Valarie C. Williams
James Cash
Max Marks
ALSTON & BIRD LLP.
1201 West Peachtree Street
Atlanta, GA 30309
T: (404) 881-7000
F: (404) 881-7777

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the Effective Date.

Bruce L. Simon
PEARSON, SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
T: (415) 433-9000
F: (415) 433-9008
bsimon@pswlaw.com

W. Joseph Bruckner
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
T: (612) 339-6900
F: (612) 339-0981
wjbruckner@locklaw.com

Dated: July 27, 2017

Dated: July 27, 2017

*Counsel for Direct Purchaser Plaintiffs*

517278.4                                        31

_____

B. Parker Miller
Valarie C. Williams
James Cash
Max Marks
ALSTON & BIRD LLP.
1201 West Peachtree Street
Atlanta, GA 30309
T: (404) 881-7000
F: (404) 881-7777
Parker.miller@alston.com
Valarie.williams@alston.com
James.cash@alston.com
Max.marks@alston.com

Dated: July 27, 2017

*Counsel for Defendant Fieldale Farms Corporation*