UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To: All Actions | Case No. 1:16-cv-08637<br><br>Magistrate Judge Jeffrey T. Gilbert |

## **ORDER**

This matter is before the Court on Plaintiffs' Motion to Compel the Deposition of Defendant Foster Farms, LLC [405]. In their Motion, Plaintiffs ask the Court to grant Plaintiffs leave to take a Rule 30(b)(6) deposition of Defendant Foster Farms, LLC and to award Plaintiffs their reasonable expenses incurred in filing the Motion. In response, Foster Farms, LLC objects to being subjected to the requested deposition and argues Plaintiffs should have to pay its reasonable expenses incurred in responding to the Motion. For the reasons stated below, Plaintiffs' Motion [405] is granted in part and denied in part.

I.

In their original complaint filed in this lawsuit, Direct Purchaser Plaintiffs named Foster Farms, LLC as a defendant. [1, ¶ 45]. All putative plaintiff classes in this multidistrict litigation named Foster Farms, LLC as a defendant in each subsequently-filed complaint. [178, ¶ 53; 179, ¶ 63; 182, ¶ 53; 212, ¶ 54; 213, ¶ 66; 253, ¶ 59; 255, ¶ 82]. From the inception of this lawsuit on September 2, 2016 until May 2017, Plaintiffs have operated under the understanding that Foster Farms, LLC is responsible for, among other things, slaughtering, processing, and selling Broilers.[1] *See* [405-1, ¶ 3; 405-5 at 2]. Roughly nine months into the litigation, however, Foster Farms, LLC told Plaintiffs their understanding was incorrect.

Plaintiffs complain that Foster Farms, LLC hid the ball with respect to its business operations by providing Plaintiffs with misleading Rule 26(a) disclosures directed at identifying relevant witnesses and document populations. Plaintiffs contend this alleged misconduct justifies the relief they now seek—a Rule 30(b)(6) deposition of Foster Farms, LLC, so they can discover the true facts. The Court agrees with Foster Farms, LLC that it is not its responsibility to lay out Plaintiffs' case for them. The Court, however, also agrees with Plaintiffs that all parties have a duty to cooperate in good faith in discovery under the Federal Rules of Civil Procedure. The Court's analysis of Plaintiffs' Motion focuses on the space between those two goal posts.

---

[1] Plaintiffs allege "Foster Farms, LLC and/or its predecessors, wholly-owned or controlled subsidiaries, or affiliates sold Broilers in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States." [1, ¶ 45; 178, ¶ 53; 179, ¶ 63; 182, ¶ 53; 212, ¶ 54; 213, ¶ 66; 253, ¶ 59; 255, ¶ 82].

On May 17, 2017, Plaintiffs and Foster Farms, LLC had a telephonic meet and confer in the context of long-running discussions concerning the identification of document custodians and document repositories. [405 at 3; 405-1, ¶ 6]. During the meet and confer, Plaintiffs asked why Foster Farms, LLC had designated just four document custodians. [405 at 3–4; 405-1, ¶ 6]. In response, Foster Farms, LLC stated "for the first time" that it only is responsible for breeder/ranch functions, not slaughtering, processing, or selling Broilers. [405 at 3–4]; *see also* [405-1, ¶ 6]. Foster Farms, LLC also disclosed for the first time that at least two related entities handle slaughtering, processing, and selling Broilers. [405 at 4; 405-1, ¶ 7]. Finally, Foster Farms, LLC told Plaintiffs, seemingly for the first time, that it has no employees. [405 at 4]. The four document custodians that Foster Farms, LLC identified are employed by another entity or entities and only are affiliated with Foster Farms, LLC. [405 at 4; 405-1, ¶ 8].[2]

The relationship between Foster Farms, LLC and other Foster Farms-related entities responsible for slaughtering, processing, and selling Broilers—including the two referenced during the meet and confer—is unclear from the record now before the Court. Although Plaintiffs talk in terms of "affiliates" when summarizing the parties' discussions during the May 17 meet and confer [405-1, ¶ 7], their briefs indicate Plaintiffs do not know the exact nature of the relationships. Foster Farms, LLC represents that it has no affiliates or subsidiaries. [416 at 2, 11]. But Foster Farms, LLC does not describe how it is related to the two entities discussed during the meet and confer or any similar entities. Therefore, throughout this Order, the Court will use the phrases "related entity" or "related entities" (rather than affiliates, subsidiaries, etc.) to refer to Foster Farms-related entities responsible for slaughtering, processing, and selling Broilers.

During the meet and confer on May 17, Foster Farms, LLC refused to provide Plaintiffs with any information about these so-called related entities. It did not specify how many related entities there are. It did not disclose the name of any related entity, including the two entities whose existence it revealed and the entity or entities that employ its four identified document custodians. [405 at 1, 4; 405-1, ¶¶ 7–8]. It did not disclose whether documents and ESI for its custodians "reside at Foster Farms, LLC" or another related entity or entities. [405 at 4]. It did not disclose the preservation efforts undertaken by any related entity, including the entity or entities that employ its identified custodians. [405 at 4; 405-1, ¶ 8].

After the meet and confer, Plaintiffs' counsel and Foster Farms, LLC's counsel exchanged three letters. [405-5 to 405-7]. In the first, Plaintiffs' counsel asked whether Foster Farms, LLC would identify related entities; describe their functions; identify potential custodians employed by them; specify their preservation efforts; and say whether they have custody, control, or possession of the documents or ESI for Foster Farms, LLC's four custodians. [405-5 at 2]. In response, Foster Farms, LLC's counsel said Plaintiffs' lack of information was "a problem of [P]laintiffs' own creation," and Foster Farms, LLC has "cooperated fully" and was not required to do more. [405-6 at 2]. In other words, Foster Farms, LLC refused to provide the information Plaintiffs requested. Plaintiffs then sent a letter saying they intended to file a motion to resolve this issue, and Foster Farms, LLC did not respond to that letter. [405-7; 405-1 ¶ 11].

---

[2] The four custodians use a single email address for all Foster Farms-related business activities. [405-1, ¶ 8].

2

With the parties unable to reach an agreement, Plaintiffs filed the Motion now before the Court. In the Motion, Plaintiffs ask the Court to grant them leave pursuant to Federal Rule of Civil Procedure 37(a) to conduct a Rule 30(b)(6) deposition of Foster Farms, LLC. Plaintiffs have attached a proposed deposition notice to their Motion. [405-2]. Broadly speaking, Plaintiffs want to depose Foster Farms, LLC about: (1) the identity of related entities responsible for slaughtering, processing, and selling Broilers; (2) Foster Farms, LLC's relationships with these entities; (3) whether the entities have potentially discoverable documents; and (4) whether the entities have preserved or destroyed those documents. [424 at 1]. Plaintiffs also assert that, under Federal Rule of Civil Procedure 37(a)(5), Foster Farms, LLC should pay their reasonable expenses incurred in filing the Motion. In response, Foster Farms, LLC objects to being subjected to the requested deposition and argues Plaintiffs should have to pay its reasonable expenses incurred in responding to the Motion.

II.

Plaintiffs' Motion is based on the premise that Foster Farms, LLC has not cooperatively revealed information about its own operations and related entities and, instead, has produced misleading organizational charts and incomplete Rule 26(a)(1) initial disclosures. According to Plaintiffs, Foster Farms, LLC used these misleading disclosures to actively conceal its corporate structure and hide the existence of related entities. Plaintiffs contend that, because of Foster Farms, LLC's failure to cooperate and its discovery misconduct, they have been left without the information necessary to, among other things, negotiate about document custodians, document repositories, and sources of documents and to ensure discoverable evidence is being preserved, a process the Court has ordered the parties to engage in while Defendants' motions to dismiss are pending. Plaintiffs say Foster Farms, LLC's continued refusal to voluntarily provide information about its corporate structure and its improper discovery responses and disclosures necessitate and justify a Rule 30(b)(6) deposition.

In response, Foster Farms, LLC does not argue either that the information Plaintiffs seek is not discoverable under Federal Rule of Civil Procedure 26(b)(1) or that Federal Rule of Civil Procedure 37(a) does not provide for the type of relief Plaintiffs are seeking. Instead, Foster Farms, LLC claims its discovery responses and disclosures complied with the Federal Rules of Civil Procedure and the relevant orders entered by the Court. Foster Farms, LLC also asserts Plaintiffs' misunderstanding of Foster Farms, LLC's corporate structure is their own fault. Foster Farms, LLC argues Plaintiffs have a duty to discover on their own the information that they seek. Relatedly, Foster Farms, LLC claims a deposition is unnecessary because the information Plaintiffs want is publically available. For all of these reasons, Foster Farms, LLC says Plaintiffs' Motion is fundamentally flawed and should be denied.

A.

Under Federal Rule of Civil Procedure 1, parties are responsible for employing the Federal Rules of Civil Procedure so as "to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1; *see also* FED. R. CIV. P. 1 advisory committee's note (2015) ("Rule 1 is amended to emphasize that . . . the parties share the responsibility to employ the rules in the same way."). The "cooperative . . . use of procedure" is essential to effective advocacy. FED. R. CIV. P. 1 advisory committee's note (2015); *see also Id.* ("Effective advocacy is consistent with—and indeed depends upon—cooperative and

3

proportional use of procedure."). To that end, "lawyers have a duty to act in good faith in complying with their discovery obligations and to cooperate with and facilitate forthright discovery." *New Medium Techs. LLC v. Barco N.V.*, 242 F.R.D. 460, 464 (N.D. Ill. 2007). "Courts ought not to reward those who needlessly allow confusion to persist . . . ." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 342 (N.D. Ill. 2005); *see id.* ("Where a party has contributed to a plaintiff's confusion . . . it can hardly be heard to complain about continued discovery."); *see also Jones v. Am. Gen. Life & Accident Ins. Co.*, 2002 WL 32073037, at *4 (S.D. Ga. Dec. 4, 2002) ("There can be no doubt that '[c]omplete and accurate responses to discovery are required for the proper functioning of our system of justice.' Towards this end, 'parties have a duty to provide true, explicit, responsive, complete and candid answers to discovery . . . .'") (quoting *Wagner v. Dryvit Systems, Inc.*, 208 F.R.D. 606, 609–10 (D. Neb. 2001)) (internal citations omitted).

"Federal Rule of Civil Procedure 37 governs a party's failure to cooperate in discovery." *Cress & Lopresto Architects, LLC v. Goldwell Investments, Inc.*, 2017 WL 1284180, at *2 (E.D. La. Apr. 6, 2017). Rule 37(a) permits a party to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). Under Rule 37(a), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4).

B.

As noted above, Plaintiffs contend Foster Farms, LLC has produced misleading organizational charts and incomplete Rule 26 initial disclosures that unnecessarily complicated Plaintiffs' early discovery efforts and sowed needless confusion. As discussed below, the Court agrees with Plaintiffs in large part.

By early December 2016, the parties had "reached agreement on most parameters for the early limited disclosure of information in this case." [237 at 4]. On December 2, 2016, the parties "each disclosed current information regarding," among other things, "organizational charts." *Id.* at 4. The parties agreed to produce additional information by January 31, 2017, but they disagreed about exactly which employees would be included on additional organizational charts. *See id.* at 5–8. The Court and the parties discussed the dispute during a status hearing held on December 9, 2016. [245 at 77–93]. The Court scheduled a conference call to address the issue further, but the call proved unnecessary as the parties resolved the dispute on their own. [243, 263].

On December 21, 2016, the Court entered an order memorializing the parties' agreement. [264]. The order requires Defendants to produce to Plaintiffs certain documents and/or information "to the extent such information exists and is readily available" and to the extent the documents and/or information was "not already disclosed pursuant to the parties' previous agreement on December 2, 2016." *Id.* at 1. Of relevance to the present motion, the order requires Defendants to produce either organizational charts "sufficient to show the names and titles of individuals with" specified "positions or responsibilities relating to broiler chickens" or a list of individuals with those job responsibilities. *Id.* at 2–5. The individuals covered by the order included, for example, "all executives with the title Director, Vice President, or higher . . . as well as their assistants or secretaries," "the person or persons . . . excluding any clerical-level or administrative-level personnel[] who . . . report Broiler pricing information to the Georgia

4

Department of Agriculture in connection with the Georgia Dock price survey," and "the person or persons who supervise the departments responsible for Broiler sales to, purchases from, trades with, or co-packing transactions with other Defendants or with . . . the 'Producer Co-Conspirators.'" *Id.* at 2–3. The order does not require Defendants to produce every organizational chart they have that includes such individuals. Instead, the order provides that, with respect to the organizational charts, "the parties . . . will disclose one document for each year at issue to the extent such documents exist and are readily available." *Id.* at 1.

Foster Farms, LLC produced organizational charts, not a list of individuals.[3] Foster Farms, LLC produced organizational charts on December 2, 2016, and then produced an additional organizational chart on January 31, 2017. [405-1, ¶ 4]. In total, Foster Farms, LLC produced what Plaintiffs describe as "hundreds of pages of extensive organizational charts." [405 at 3].

Plaintiffs filed as an exhibit to the Motion what they describe as "exemplar pages from Foster Farms, LLC's organizational chart for 2016." [405-1, ¶ 4]. In its response brief, Foster Farms, LLC does not assert the pages submitted by Plaintiffs are unrepresentative of its production. Plaintiffs filed the organizational charts under seal because Foster Farms, LLC marked the organizational charts as Confidential under the protective order entered in this case. *Id.*; *see also* [408, 409]. For this reason, the Court will describe them only in general terms. The 11 pages of organizational charts identify by title roughly 80 different positions and graphically represent the relationship between and relative rank of each position. For each position, the organizational charts either list the name of the employee filling that role or state that the position is open.

These organizational charts created two misimpressions. Plaintiffs say they "reasonably concluded that the individuals identified in the organizational charts . . . actually worked for Foster Farms, LLC, and not some other related entity." [405 at 3]. Plaintiffs also represent they concluded Foster Farms, LLC was responsible for slaughtering, processing, and selling Broilers at least in part based on the misleading organizational charts.

It is not hard to understand why Plaintiffs reached these conclusions. The section of the December 21, 2016 order discussing organizational charts begins: "i. **Defendants**: Organizational charts sufficient to show the names and titles of individuals with the following positions or responsibilities relating to broiler chickens." [264 at 2]. When describing the relevant positions or responsibilities, the order refers at times to "a Defendant's own" and "a Defendant's." *Id.* at 4, 5. The only reasonable reading of the order is that it required Foster Farms, LLC to produce organizational charts showing individuals who filled the specified positions or responsibilities for Foster Farms, LLC.

In responding to Plaintiffs' Motion, however, Foster Farms, LLC does not say whether the individuals identified in the organizational charts it produced actually fill the relevant positions for Foster Farms, LLC. It seems that is not the case, at least in a technical employment sense. As stated above, Foster Farms, LLC has no employees. Although the organizational

---

[3] As stated above, the order dated December 21, 2016, gave each defendant the option to produce organizational charts or a list of individuals. Because Foster Farms, LLC produced organizational charts, the Court will discuss the obligation imposed by the order only in terms of organizational charts.

charts "identified dozens of employees in all aspects of the Broiler business" [405 at 3], Foster Farms, LLC now says it only performs breeder/ranch functions. The Court understands the record now before it to show that Foster Farms, LLC produced organizational charts describing the corporate structure of another corporate entity or entities, even though that was not what the Court's order of December 21, 2016 directed Foster Farms, LLC to produce, unless, of course, the identified individuals did perform those duties or services for Foster Farms, LLC even though they technically were employed by different but related entities.

The Court's order did not preclude Foster Farms, LLC from giving Plaintiffs copies of organizational charts for other corporate entities. But it would have been reasonable for Plaintiffs to assume that, if that was what Foster Farms, LLC was doing, it would tell Plaintiffs as much. The issue raised by Plaintiffs' Motion is whether Foster Farms, LLC's disclosures and production of organizational charts failed to comply with the Court's order and was misleading. The Court agrees with Plaintiffs' characterization that it was misleading.

Foster Farms, LLC never did anything to clear up the misunderstanding that was likely to and actually did result from its production of organizational charts. Foster Farms, LLC "consistently represented that all [its] disclosures and responses to discovery requests were made on behalf of Foster Farms, LLC," not some other entity. [416 at 9]. There is nothing in the record now before the Court to show that Foster Farms, LLC ever informed Plaintiffs in any manner that the organizational charts it produced represented some other entity's or entities' corporate structure.

Beyond broad assertions that it has complied with its discovery obligations, Foster Farms, LLC devotes little attention to defending its production of the organizational charts. Foster Farms, LLC says its production is consistent with Federal Rule of Civil Procedure 34(b)(2)(E)(i) because it "collected and produced" organizational charts "as they are kept in the usual course of business and as they were found in Foster Farms, LLC's files." [416 at 9]. Foster Farms, LLC claims it had no obligation to modify the documents "to add any information about other entities." *Id.* Neither of these points, however, refutes Plaintiffs' arguments. Rather, they beg the question. Plaintiffs are not saying Foster Farms, LLC had an obligation to create new organizational charts or to alter existing ones so as to accurately reflect the operations of other corporate entities. Instead, Plaintiffs say Foster Farms, LLC's production of organizational charts was misleading because they do not represent Foster Farms, LLC's corporate structure. The fact that Foster Farms, LLC produced organizational charts representing the corporate structure of other corporate entities as those charts were maintained in the ordinary course of business does not impact whether the production was misleading because of the impression it created about Foster Farms, LLC's own corporate structure.

Plaintiffs also contend Foster Farms, LLC's Rule 26 initial disclosures, which were served on May 5, 2017, are incomplete or misleading in two ways. [405 at 3]. The first has to do with the disclosure of "each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." FED. R. CIV. P. 26(a)(1)(A)(i). Foster Farms, LLC produced a chart in which it identified four such individuals. [405-4 at 2–3]. The chart had three columns: "name," "current or last-held position at Foster Farms, LLC," and "subjects of knowledge." In the second column, Foster Farms, LLC identified the individuals as "Owner/Manager," "Manager," and "Authorized Person." *Id.* at 3. For three of those people, their subjects of knowledge included "Foster Farms,

6

LLC's poultry business, including pricing and supply strategies." *Id.* at 3. Plaintiffs contend Foster Farms, LLC later said that none of these people actually is employed by it though they are "affiliated with Foster Farms, LLC, but employed by other related unidentified entities." [405-1, ¶ 8].

Whatever the import of the information Foster Farms, LLC disclosed about the four people it identified in its initial disclosure, Plaintiffs argue Foster Farms, LLC also improperly failed to identify individuals who work for related entities as individuals likely to have discoverable information that needed to be disclosed under Federal Rule of Civil Procedure 26(a)(1)(A)(i). [405 at 3; 424 at 6]. Neither party has teed this issue up well. In their opening brief, Plaintiffs assert Foster Farms, LLC's initial disclosures "did not . . . identify any individuals who worked for" subsidiaries or affiliates (which the Court takes to mean related entity or entities) "as potential witnesses to the litigation." [405 at 3]. But Plaintiffs do not develop this argument. In its response brief, Foster Farms, LLC also does not address the issue beyond general assertions that it has complied with all of its discovery obligations. Then Plaintiffs spend at least a little more time on the issue in their reply brief, criticizing Foster Farms, LLC for relying on the boilerplate disclosure that third parties "possess information and/or documents that Foster Farms, LLC may rely upon to support its defenses in these actions" without actually identifying those individuals. [416 at 10; 405-5 at 3].

The Court cannot conclude on the record now before it that Foster Farms, LLC violated its obligation to identify additional individuals under Rule 26(a)(1)(A)(i). Whether such a violation has occurred depends on, among other things, whether Foster Farms, LLC will use individuals who work for related entities and have responsibilities related to slaughtering, processing, or selling Broilers to support its defenses in this action. *See generally City of Chicago v. Purdue Pharma L.P.*, --- F. Supp. 3d ---, 2017 WL 2819948 (N.D. Ill. Mar. 3, 2017) (discussing the scope of Rule 26(a)(1)(A)(i)). The parties have not adequately developed and supported their arguments on such issues at least on this record. And it may be too early to say whether Foster Farms, LLC violated its obligation under Rule 26(a) or its continuing obligation under Rule 26(e) to supplement its disclosures.

Even if Foster Farms, LLC did not improperly exclude individuals who work for related entities, though, this does not mean Foster Farms, LLC necessarily complied with Rule 26(a)(1) with respect to the four individuals it disclosed. As Plaintiffs point out, Rule 26(a)(1)(A)(i) requires Foster Farms, LLC to disclose not only an individual's name but also his or her address and telephone number, "if known." FED. R. CIV. P. 26(a)(1)(A)(i). Foster Farms, LLC did not state the address or telephone number for any of the four individuals listed in its initial disclosures. Neither party addresses whether Foster Farms, LLC knew that information for any of the individuals at the time that it served its initial disclosures, but it is reasonable to assume it did because the four individuals seem to work for a related entity or entities known to Foster Farms, LLC. If Foster Farms, LLC failed to disclose addresses and/or telephone numbers known to it, then its incomplete disclosures would constitute a failure to disclosure under Rule 37. *See* FED. R. CIV. P. 37(a)(4) ("[A]n . . . incomplete disclosure . . . must be treated as a failure to disclose . . . .").

Plaintiffs' other argument is that the initial disclosures misleadingly state Foster Farms, LLC has possession, custody, or control over documents related to aspects of the Broiler business other than ranching/breeding. [405 at 3; 424 at 7–8]. In its initial disclosure, Foster

Farms, LLC said it "may have in its possession one or more documents within" certain categories, including documents concerning the pricing, advertising, and selling of Broilers;[4] documents reflecting communications with any plaintiff; and transactional sales data. [405-4 at 4]. Foster Farms, LLC also stated these documents are located at its offices on Davis Street in Livingston, California. *Id.* Finally, Foster Farms, LLC noted "there are likely to be . . . third parties who possess documents that Foster Farms, LLC may rely upon to support its defense." *Id.* at 5.

Plaintiffs contend the initial disclosures are misleading because Foster Farms, LLC said during the meet and confer held on May 17, 2017, "that in fact it did ***not*** possess numerous relevant categories of documents relating to Broilers." [424 at 6–7] (emphasis in original). In support of this assertion, Plaintiffs cite a letter sent by Plaintiffs' counsel to Foster Farms, LLC's counsel. *Id.* at 7. In the letter, Plaintiffs' counsel says Foster Farms, LLC "represented that [it] . . . does not have possession, custody, or control over the documents and ESI from" the two related entities identified during the meet and confer. [405-5 at 1]. Neither Plaintiffs' briefs nor the supporting exhibits indicate Foster Farms, LLC said during the meet and confer that it does not have within its possession, custody, or control one or more documents in the categories specified in its initial disclosures.

Foster Farms, LLC's response is simple. It said in its initial disclosures that it may have certain kinds of documents and that third parties likely possess documents Foster Farms, LLC will rely upon. Both statements, Foster Farms, LLC contends, are true, not misleading.

Plaintiffs have not shown Foster Farms, LLC's initial disclosures are misleading with respect to the disclosure of documents, ESI, and tangible things. Under Rule 26(a)(1)(A)(ii), Foster Farms, LLC is required to identify only the documents, ESI, and tangible things it "has in its possession, custody, or control." FED. R. CIV. P. 26(a)(1)(A)(ii). Plaintiffs do not cite any provision of the Federal Rules of Civil Procedure or case law requiring Foster Farms, LLC to have identified with more specificity what third parties likely have documents Foster Farms, LLC may use in this case. Moreover, there is no indication in the record now before the Court that Foster Farms, LLC's representation that it has one or more documents in the categories descried above is false or misleading. The mere fact that Foster Farms, LLC is not responsible for slaughtering, processing, and selling Broilers does not necessarily mean it would not have any documents related to these functions. In addition, the current record is undeveloped as to whether Foster Farms, LLC effectively has possession, custody, or control of documents that technically are in the possession of related entities.

Before turning to Foster Farms, LLC's other arguments in response to Plaintiffs' Motion, it is useful to summarize the above discussion. Foster Farms, LLC has no employees and is not responsible for slaughtering, processing, or selling Broilers. Foster Farms, LLC waited until nine months into this litigation to tell Plaintiffs as much. During the intervening period, Foster

---

[4] The specific categories of documents are those concerning: (1) the production of Broilers, (2) the prices and the pricing of Broilers, (3) any discounts and rebates offered to customers, (4) the advertising and marketing of Broilers, (5) the sales of Broilers, (6) the product markets for Broilers, (7) the geographic markets for Broilers, (8) competition for the sale of Broilers, (9) the customers for Broilers, (10) the profitability of Broilers, (11) operational levels and costs, and (12) the use of benchmarking services. [405-4 at 4].

8

Farms, LLC potentially could have served accurate disclosures and then simply remained silent about its related entity or entities. But Foster Farms, LLC played games by producing misleading organizational charts that created the impression it had employees and responsibilities for slaughtering, processing, or selling Broilers, and by making incomplete initial disclosures in which it provided only partial information about certain people with relevant knowledge. This was improper. *See Robinson v. Champaign Unit 4 Sch. Dist.*, 412 F. App'x 873, 877 (7th Cir. 2011) ("[T]he advisory committee notes to the 1993 enactment emphasize that the 'disclosure requirements should, in short, be applied with common sense' to help focus the attention on the 'discovery that is needed, and facilitate preparation for trial or settlement'; the new rule is not intended, however, to encourage litigants to 'indulge in gamesmanship with respect to the disclosure obligations.'") (quoting FED. R. CIV. P. 26(a)(1) advisory committee's note (1993)); *Elliott v. Mission Trust Services, LLC*, 2015 WL 1567901 at *7 n.13 (N.D. Ill. 2015) ("Judge Shadur has attributed 'the decline in the quality of legal life' to the 'sharp increase in the number and proportion of hard-ball litigators . . . who make it a point not to be accommodating,' and 'who tend to be intransigent even though it would cost them or their clients little or nothing to act differently.'") (quoting Milton Shadur, *Hardball Litigators*, 20 LITIGATION 21 (1993)); *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. at 342 ("[L]awyers have a duty . . . to cooperate with and facilitate forthright discovery.").

C.

Foster Farms, LLC argues Plaintiffs' Motion should be denied for a few reasons not covered by the preceding discussion. Foster Farms, LLC first contends it is disproportionate to the needs of the case to subject it to the Rule 30(b)(6) deposition requested by Plaintiffs. Foster Farms, LLC does not claim the information Plaintiffs are seeking is irrelevant. Instead, Foster Farms, LLC provides three other reasons why it is inappropriate to impose the burden of a deposition on it.

Foster Farms, LLC first contends Plaintiffs had a duty to identify who they should sue, including any entities related to Foster Farms, LLC. Because Plaintiffs have this duty, Foster Farms, LLC argues, it is inappropriate to order Foster Farms, LLC to provide information about related entities. None of the case law cited by Foster Farms, LLC, however, supports this proposition. *See* [416 at 3–4] (citing *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596–97 (7th Cir. 2006); *Rendall-Speranza v. Nassim*, 107 F.3d 913, 919 (D.C. Cir 1997); *Adams v. AlliedSignal Gen'l Aviation Avionics*, 74 F.3d 882, 886 (8th Cir. 1996); *Willis v. Wal-Mart Stores, Inc.*, 819 F. Supp. 2d 700, 704–05 (N.D. Tenn. 2011)). Three of the cases address relation back under Federal Rule of Civil Procedure 15(c) when there is a mistake as to the identity of a proper party. *Hall*, 469 F.3d at 596; *Rendall-Speranza*, 107 F.3d at 919; *Willis*, 819 F. Supp. 2d at 704. The fourth involves the failure to serve any defendant within the time limit imposed by Federal Rule of Civil Procedure 4(m). *Adams*, 74 F.3d at 886. None gives guidance about whether a plaintiff can obtain discovery after a defendant provides discovery disclosures or responses that mislead the plaintiff about the defendant's corporate structure.

Foster Farms, LLC next argues Plaintiffs can identify through publicly available sources the information they want Foster Farms, LLC to provide. But Foster Farms, LLC focuses narrowly on whether Plaintiffs can identify other potential defendants through public information. There are two problems with its contention. As an initial matter, Foster Farms, LLC only attempts to show Plaintiffs could and should have identified one additional defendant,

9

Foster Poultry Farms. But Foster Farms, LLC said during the May 17 meet and confer that at least two related entities are responsible for slaughtering, processing, and selling Broilers. That means Foster Farms, LLC has not shown Plaintiffs could identify all related entities through public information.

There is another problem, though. Plaintiffs are not seeking just the identities of these entities. Their proposed deposition also would cover Foster Farm, LLC's relationship with such entities, whether those entities have potentially discoverable documents, and whether those entities have preserved or destroyed those documents. [424 at 1]. Foster Farms, LLC has not made any effort to show such information is publicly available and, as a matter of common sense, it would not be.[5] And, at a more basic level, Foster Farms, LLC cannot excuse its own efforts at misdirection by pointing at Plaintiffs and arguing they should have caught Foster Farms, LLC at its little game.

Foster Farms, LLC's final point is that Plaintiffs do not show in their Motion that they cannot obtain the information they want on their own because they do not describe the pre-filing inquiry that they conducted. Again, though, Foster Farms, LLC focuses on Plaintiffs' ability to identify additional defendants. Plaintiffs point out in their reply brief that most of the information they are seeking is not publicly available and there is no reason to believe Plaintiffs could obtain it from some source other than Foster Farms, LLC (or, once they are identified, the related entities). The Court agrees.

In addition to these specific problems with each of Foster Farms, LLC's arguments, there is a fundamental flaw with its position. Foster Farms, LLC's objections largely are directed at whether, in the first instance, it has an obligation to identify for Plaintiffs potential additional defendants or provide them with information about other corporate entities. The issue now before the Court, however, is not whether the Federal Rules of Civil Procedure would require Foster Farms, LLC to provide the information Plaintiffs are seeking if Foster Farms, LLC had provided complete and non-misleading organizational charts and Rule 26 initial disclosures. Foster Farms, LLC could have produced non-misleading organizational charts or told Plaintiffs that it did not have any employees or responsibilities related to slaughtering, processing, and selling Broilers. If it did so, perhaps Foster Farms, LLC may not have been required to do anything more. But, because Foster Farms, LLC produced misleading organizational charts and incomplete initial disclosures, and did nothing to correct the misimpression that Plaintiffs understandably developed, that is not the issue now before the Court. To put it simply, this is not about whether Foster Farms, LLC is required in the abstract to provide free assistance to Plaintiffs, it is about what Plaintiffs can do, and what the Court can order, in response to Foster Farms, LLC's misleading discovery disclosures.

Finally, Foster Farms, LLC asserts Plaintiffs' Motion should be denied because Plaintiffs violated Local Rule 37.2 by failing to meet and confer before filing the motion. The Court does not agree. The parties discussed on May 17, 2017, whether Foster Farms, LLC would produce the information Plaintiffs are now seeking and then exchanged three letters regarding the issue. It is clear from Plaintiffs' and Foster Farms, LLC's descriptions of the May 17 discussions and

---

[5] To be clear, Foster Farms, LLC does not argue the organizational charts it produced are not misleading because there is publicly available information showing other corporate entities employ the individuals listed.

10

the subsequent letters that the parties reached a point of fundamental disagreement about whether Foster Farms, LLC would provide certain information. *See Baxter Int'l, Inc. v. AXA Versicherung*, 2017 WL 1205071, at *8 (N.D. Ill. Mar. 30, 2017) ("[I]t is apparent from the number of filings and the divergent views expressed therein that additional efforts at resolution would not have avoided court intervention.") (quoting *Amarei v. City of Chicago*, 2016 WL 3693425, at *1 (N.D. Ill. July 12, 2016)).

### D.

All that remains is to decide the proper way forward in light of the above analysis. As already noted, Plaintiffs request that the Court lift the general stay on depositions in this case for the limited purpose of permitting them to conduct a Rule 30(b)(6) deposition of Foster Farms, LLC. The proposed notice attached to Plaintiffs' Motion lists five topics: (1) Foster Farms, LLC's corporate structure; (2) Foster Farms, LLC's business relationships or arrangement with business entities involved in the production, processing, distribution, sale, pricing, or marketing of Broilers; (3) the organizational charts produced by Foster Farms, LLC in this lawsuit; (4) the location, custody, and control of documents maintained by Foster Farms, LLC or a related entity, and (5) Foster Farms, LLC's preservation of its own and related entities' documents and data. [405-2 at 6–7]. In its response brief, Foster Farms, LLC does not propose another method of rectifying the problem created by its misleading disclosures and refusal to voluntarily disclose information about its corporate structure. Foster Farms, LLC also does not object to any of the five topics included in Plaintiffs' proposed notice. Therefore, the Court concludes that, despite the general stay on depositions, Plaintiffs should be allowed to conduct the requested Rule 30(b)(6) deposition of Foster Farms, LLC.[6]

### III.

As noted above, Plaintiffs and Foster Farms, LLC each want the other to pay its or their reasonable expenses incurred in connection with Plaintiffs' Motion under Federal Rule of Civil Procedure 37(a)(5). Although Plaintiffs quote language from Rule 37(a)(5)(B), which applies when a motion is denied, their request presumably is based on Rule 37(a)(5)(A), which applies when a motion is granted. But that provision provides that reasonable expenses should not be awarded when "the opposing party's nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A)(ii), (iii). "District courts have broad discretion in supervising discovery, including deciding whether and how to sanction such misconduct, for they are much closer to the management of the case and the host of intangible and equitable factors that may be relevant in exercising such discretion." *Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012).[7]

---

[6] Plaintiffs ask that this deposition not count against any limit on the number of depositions that the Court eventually sets in this case. [405 at 6 n.3]. Foster Farms, LLC does not respond to this request. Because the current deposition is necessitated by Foster Farms, LLC's conduct in discovery, the Court grants Plaintiffs' request.

[7] Rule 37(a)(5) maintains "a necessary flexibility" and ensures that the court's discretion to award or not award fees is not significantly restricted. FED. R. CIV. P. 37(a)(4) advisory committee's note (1970).

The Court is not convinced Plaintiffs should be awarded their expenses in filing and briefing their Motion. Although the Court concluded for the reasons stated above that Foster Farms, LLC produced misleading or incomplete discovery disclosures, the Court appreciates that this conclusion is not necessarily an open-and-shut matter. Foster Farms, LLC and its counsel made a judgment call or a series of judgment calls under the circumstances and the Court disagrees with those judgment calls. The fact that the discovery disclosures at issue were preliminary and somewhat truncated given the procedural posture of this case also could have contributed to or exacerbated the problem. As the language the Court uses to describe the issue makes clear, the Court does not agree with the decisions Foster Farms, LLC and its counsel made. But every misstep in discovery should not necessarily result in fee shifting. The Court is remedying the problems caused by Foster Farms, LLC's discovery misconduct by permitting the Rule 30(b)(6) deposition. At a more general level, the Court does not want to set a precedent of awarding fees in this case every time a discovery motion is granted or denied. This is a large, complex, multi-party case and it still is very early in discovery. That type of precedent could foster satellite litigation regarding fees and incentivize additional motions to compel. The Court is wary of that kind of a precedent. That is not to say that fee shifting under Rule 37 never will be appropriate in this case. In this instance, however, the Court, exercising its discretion, will not award fees under Rule 37 against Foster Farms, LLC. The Court will, though, order Foster Farms, LLC to pay all costs and fees for the court reporter for the Rule 30(b)(6) deposition necessitated by its conduct under Rule 37(c)(1)(A) and (C). *See also* FED. R. CIV. P. 37(a)(4).

IV.

Accordingly, for all of these reasons, Plaintiffs' Motion to Compel the Deposition of Defendant Foster Farms, LLC [405] is granted in part and denied in part.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 7, 2017