```
                                                                    1

 1                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3

     IN RE BROILER CHICKEN ANTITRUST    )  Docket No. 16 C 8637
 4   LITIGATION                         )
                                        )  Chicago, Illinois
 5   This Document Relates To:          )  August 18, 2017
     All Actions                        )  9:30 a.m.
 6

 7          TRANSCRIPT OF PROCEEDINGS - Telephone Conference
                BEFORE THE HONORABLE THOMAS M. DURKIN
 8

 9   APPEARANCES:

10

     For Plaintiffs         MR. KYLE POZAN
11   Maplevale Farms        Hart McLaughlin & Eldridge LLC
     and John Gross         121 W. Wacker Drive, Suite 1050
12   and Company:           Chicago, IL 60601

13   (Direct purchaser plaintiffs interim liaison class counsel)

14
                            MR. W. JOSEPH BRUCKNER
15                          MR. BRIAN D. CLARK
                            Lockridge Grindal Nauen PLLP
16                          100 Washington Avenue South, Suite 2200
                            Minneapolis, MN 55401
17
     (Direct purchaser plaintiffs interim co-lead class counsel)
18

19                          MR. BRUCE L. SIMON
                            Pearson Simon & Warshaw LLP
20                          44 Montgomery Street, Suite 2420
                            San Francisco, CA 94104
21

22                          MR. BOBBY POUYA
                            MR. MICHAEL H. PEARSON
23                          Pearson Simon & Warshaw LLP
                            15165 Ventura Boulevard, Suite 400
24                          Sherman Oaks, CA 91403

25   (Direct purchaser plaintiffs interim co-lead class counsel)
```

```
 1     APPEARANCES (Cont'd.):

 2
       For Plaintiffs Fargo  MR. THOMAS A. DOYLE
 3     Stopping Center,      Wexler | Wallace LLP
       Sargent's Restaurant  55 W. Monroe Street
 4     and Don Chavas        Suite 3300
       Mexican Restaurant:   Chicago, IL 60603
 5
       (Commercial and institutional indirect purchaser plaintiffs
 6     liaison counsel)

 7
       For Plaintiffs        MR. JOSHUA R. RISSMAN
 8     Fargo Stopping        Gustafson Gluek PLLC
       Center and            Canadian Pacific Plaza
 9     Sargent's             120 S. 6th Street, Suite 2600
       Restaurant:           Minneapolis, MN 55402
10
       (Indirect purchaser plaintiffs interim co-lead class counsel)
11

12     For Plaintiffs        MS. JEANNIE Y. EVANS
       Percy, Lathen,        MS. ELIZABETH A. FEGAN
13     Dimas, Monahan,       Hagens Berman Sobol Shapiro LLP
       Coe, Patterson,       455 N. Cityfront Plaza Drive
14     Tierney, Cheslow      NBC Tower, Suite 2410
       and Wilbur:           Chicago, IL 60611
15
       (End user consumer plaintiffs)
16

17     For Plaintiffs        MR. BRENT W. JOHNSON
       Newman, Stangeland,   Cohen Milstein Sellers & Toll PLLC
18     Gardner, Weidner,     1100 New York Avenue, NW
       Pauk, Gilbert and     Suite 500 West
19     Weidner:              Washington, DC 20005

20     (End user consumer plaintiffs)

21
       For the Koch          MR. CHRISTOPHER S. MOORE
22     and JCG Foods         Novack and Macey LLP
       Defendants:           100 N. Riverside Plaza, Suite 1500
23                           Chicago, IL 60606

24

25
```

```
 1      APPEARANCES (Cont'd.):

 2
        For the Sanderson      MR. DANIEL E. LAYTIN
 3      Farms Defendants:      MS. CHRISTA C. COTTRELL
                               MR. MARTIN L. ROTH
 4                             MS. STACY L. PEPPER
                               Kirkland & Ellis LLP
 5                             300 N. LaSalle Street
                               Chicago, IL 60654
 6

 7      For Defendant          MR. PATRICK J. FITZGERALD
        Peco Foods:            MS. LARA A. FLATH
 8                             Skadden Arps Slate Meagher & Flom
                               155 N. Wacker Drive, Suite 2700
 9                             Chicago, IL 60606

10
        For Defendant          MR. WILLIAM H. STALLINGS
11      Foster Farms:          MR. ORAL D. POTTINGER
                               Mayer Brown LLP
12                             1999 K Street NW
                               Washington, DC 20006

13

14      For Defendant          MR. GREGORY G. WROBEL
        House of               Vedder Price PC
15      Raeford Farms:         222 N. LaSalle Street, Suite 2600
                               Chicago, IL 60601

16

17      For the Simmons        MS. LYNN H. MURRAY
        Foods Defendants:      Shook Hardy & Bacon LLP
18                             111 S. Wacker Drive, Suite 5100
                               Chicago, IL 60606

19

20      For Defendant          MR. BRENDAN J. HEALEY
        Fieldale Farms:        Mandell Menkes LLC
21                             One N. Franklin Street, Suite 3600
                               Chicago, IL 60606

22

23

24

25
```

```
 1      APPEARANCES (Cont'd.):

 2
                                MR. B. PARKER MILLER
 3                              MS. VALARIE C. WILLIAMS
                                MR. JAMES B. CASH, JR.
 4                              Alston & Bird LLP
                                1201 W. Peachtree Street
 5                              Atlanta, GA 30309

 6
        Court Reporter:         LAURA R. RENKE, CSR, RDR, CRR
 7                              Official Court Reporter
                                219 S. Dearborn Street, Room 1432
 8                              Chicago, IL 60604
                                312.435.6053
 9                              laura_renke@ilnd.uscourts.gov

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    (In open court.)

2    (Clerk places telephone call.)

3    THE CLERK: Good morning, everyone. This is Sandy
4 with Judge Durkin. And this is Case 16 C 8637, Maplevale
5 Farms v. Koch Foods.

6    UNKNOWN SPEAKER: Good morning, Sandy.

7    UNKNOWN SPEAKER: Good morning.

8    THE COURT: All right. Why don't we wait a minute or
9 two to make sure there's no one else getting on the line. Of
10 course there are.

11    THE CLERK: Yes, sounds like people are still
12 connecting in.

13    (Pause in proceedings.)

14    THE COURT: All right. Well, let's begin. This is
15 Judge Durkin. I asked that we have a telephonic conference
16 call on the case today. There are -- this number that was
17 circulated was circulated publicly because in lieu of a public
18 court hearing, the public is allowed to listen in on this
19 conference call. This is not a private call. This is as if we
20 were all in court.

21    But I thought that given the relatively brief nature
22 of the call, it was unnecessary to require all counsel to come
23 to town given the expense that that would entail. So rather
24 than have the parties and their clients incur that expense, I
25 thought we'd do this over the phone.

1    My understanding is that all parties have e-mailed
2 their -- sent an e-mail to my court reporter indicating their
3 presence on this phone call, so I'm not going to do a roll call
4 of who is on the phone.
5    But is there a lead plaintiffs' attorney that I can --
6 that can identify himself because I want to talk about -- this
7 is -- the whole point of this call is relating to the motion
8 for preliminary approval of a settlement between the direct
9 purchaser plaintiff class and Fieldale Farms and for
10 conditional certification of the proposed settlement class.
11    So is there someone from the plaintiffs' side that can
12 speak to that?
13    MR. BRUCKNER: Yes, your Honor. Good morning. It's
14 Joe Bruckner with the Lockridge Grindal Nauen law firm in
15 Minneapolis. And I'd be happy to address those questions.
16    THE COURT: All right.
17    And if there are going to be objectors to just the
18 preliminary approval, either by way of any of the defendants or
19 any member of the public -- although certainly their -- the
20 time for objection to that will take place at a final approval
21 hearing.
22    But I did want to do this in open court to allow
23 anyone who had anything they wanted to say about this to have
24 their say. You'll be allowed an opportunity after plaintiffs'
25 counsel has discussed this motion for preliminary approval.

1      So, Mr. Bruckner, you may proceed.

2      MR. BRUCKNER: Well, your Honor, we were pleased to
3  present to the Court our initial icebreaker settlement with the
4  defendant Fieldale Farms. It was the subject of some months of
5  negotiation between ourselves for direct purchaser plaintiffs
6  and the lawyers at Alston & Bird -- Parker Miller and Valarie
7  Williams -- for the defendant Fieldale Farms.

8      We think it's a significant and favorable settlement
9  for the class. It is a reasonable amount of money. We think
10 the case ultimately will be worth much more than that. But,
11 again, for an icebreaker initial settlement, we think it's a
12 good value for the class, and it provides some real certainty
13 to the class.

14     But just as important as the monetary aspect is the
15 cooperation that Fieldale has agreed to provide. It's
16 information that -- given the current stay of discovery, it
17 provides us that information just that much earlier. And we
18 think that too will be of great value to the class.

19     We have -- as you know, your Honor, we have proposed
20 deferring notice to the class of this particular settlement,
21 and for no other reason than we're hoping to save the class a
22 little bit of money if we can.

23     Notice in a case of this size where you've got
24 probably thousands of class members, if not tens of thousands,
25 is necessarily going to be expensive. And there always --

1     notice is always more expensive than I think it ought to be,
2     but that's neither here nor there.
3          But, if possible, we'd like to combine more than one
4     settlement into a particular notice.  So what we're suggesting
5     is that it be deferred, not forever, and we don't want it to
6     drift, but deferred for some reasonable period of time so that
7     we can see whether we are able to garner other settlements with
8     other defendants and piggyback them onto the same notice.
9          We think the settlement class ought to be certified.
10    We think this is a relatively straightforward class.  In our
11    motion papers -- and I won't repeat them in detail here --
12    we've gone through each of the elements, or the requirements of
13    Rule 23(a) and in this case 23(b)(3), to show why a settlement
14    class ought to be certified in this case.
15         Courts -- and courts of appeals have over the past
16    several years made it quite clear that you need a pretty
17    thorough and rigorous analysis on certifying a class, and
18    that's true, and we believe that we've met that standard and
19    we're happy to do so.
20         I would note that courts also recognize that on a
21    settlement class, the showing is less than on a litigated class
22    since the primary difference between the two is you're not
23    going to have any manageability problems with a settlement like
24    this, not manageability at trial since the whole point of a
25    settlement is that there will not be a trial, at least as it

1    pertains to Fieldale.

2              The other thing I'd note about this settlement, your
3    Honor, is that it doesn't diminish the potential return to the
4    class from other defendants since Fieldale's sales will stay in
5    the class, and any damages that the class may have incurred as
6    a result of Fieldale sales will still be there, and the
7    remaining defendants are jointly and severally liable for those
8    damages.

9              With that, I'll quiet down, and if the Court has any
10   questions, I'm happy to address them.

11             THE COURT:  No.  Thank you, sir.  I have no questions.

12             Are there any objections to this?  Without waiving
13   your arguments as to joint and several liability.  But are
14   there any objections by the defendants or any of the other
15   plaintiff representatives to -- for preliminary approval of
16   this proposed settlement between the direct purchaser plaintiff
17   class and Fieldale Farms?

18             And anyone who is going to speak, you should identify
19   yourself before you make comments.

20        (No response.)

21             THE COURT:  All right.  I hear nothing, which I'll
22   take as there being no objection.  Doesn't -- certainly
23   objections later to a final approval are preserved.

24             Are there any objections by any members of the public
25   who may have dialed into this?

1  (No response.)

2  THE COURT: Once again, I hear nothing, so I will
3  assume there are no such objections. And there will certainly
4  be a period of time -- a period at a later date where anyone
5  raising an objection to this settlement will be given the
6  opportunity to be heard, either in writing or orally.

7  All right. Well, I'll make a couple preliminary
8  findings then.

9  The proposed settlement falls within the range of
10  possible approval and therefore should be preliminarily
11  approved.

12  Under Rule 23 -- 23(e), a proposed settlement falls
13  within the range of possible approval when it's conceivable
14  that the proposed settlement will meet the standards applied
15  for final approval. And the standard for final approval of a
16  class action settlement is, of course, whether the proposed
17  settlement is fair, reasonable, and adequate.

18  The settlement is fair and resulted from arm's-length
19  negotiations. I've reviewed the affidavits accompanying the
20  proposal. It was reached here as the product of intensive
21  settlement negotiations conducted over a period of three months
22  and included several rounds of give and take between the direct
23  purchaser plaintiffs' co-lead counsel and Fieldale Farms'
24  counsel.

25  The settlement does not affect the potential full

1     recovery of damages for the class under the antitrust laws in
2     light of the fact that the remaining defendants will likely be
3     jointly and severally liable for injuries resulting from
4     Fieldale Farms' sales during the class period.
5             In addition to not affecting the overall damages, I
6     believe the settlement would hasten and improve the class's
7     recovery by providing the direct purchaser plaintiffs access to
8     information that likely would otherwise only be obtainable
9     through protracted discovery.
10            In addition to the monetary payment that was -- is
11    referenced in the proposed settlement, the settlement also
12    provides the additional benefit to the class of cooperation
13    from Fieldale Farms as detailed in the settlement agreement.
14    And, once again, I think that will help streamline discovery
15    and either other potential settlements or ultimate trial in
16    this case.
17            So I believe that the settlement agreement provides
18    substantial benefits to the class, is the result of extensive
19    good-faith negotiations between knowledgeable and skilled
20    counsel, was entered into after extensive factual investigation
21    and legal analysis, and in the opinion of experienced class
22    counsel is fair, reasonable, and adequate to the class.
23            Now, at the preliminary approval stage, I must also
24    determine whether the proposed settlement class should be
25    certified for settlement purposes.  And there can be

1  settlement -- certifications for settlement purposes only.  A
2  certification of a settlement class must satisfy each
3  requirement set forth in Rule 23(a) and at least one of the
4  separate provisions of Rule 23(b).

5  The proposed settlement class in this case is as
6  follows:

7  All persons who purchased broilers directly from any
8  of the defendants or any co-conspirator identified in this
9  action, or their respective subsidiaries or affiliates, for use
10  or delivery in the United States from at least as early as
11  January 1st, 2008, until the date of preliminary approval.

12  Specifically excluded from this class are the
13  defendants; the officers, directors, or employees of any
14  defendant; any entity in which any defendant has a controlling
15  interest; and any affiliate, legal representative, heir or
16  assign of any defendant.

17  Also excluded from this class are any federal, state,
18  or local governmental entities; any judicial officer presiding
19  over this action and the members of his or her immediate family
20  and judicial staff; any juror assigned to this action; and any
21  co-conspirator identified in this action.

22  That's the proposed class.  I believe the proposed
23  class meets the requirements of Rule 23(a), as well as the
24  requirements of Rule 23(b)(3).

25  Rule 23(a)(1) requires the class be so numerous as to

1  make joinder of its members impractical. There are at least
2  thousands of persons and entities that fall within the
3  settlement class definition. Thus, joinder would be
4  impractical, and Rule 23(a)(1) is satisfied.
5         Rule 23(a)(2) requires that there be questions of law
6  or fact common to the class and that resolution of an issue of
7  fact or law would be central to the validity of each class
8  member's claim, and even a single common question will satisfy
9  the commonality requirement.
10         The central allegation in the complaint is that the
11  defendants illegally conspired to restrict supply and increase
12  the price of broilers. Proof of this conspiracy will be common
13  to all class members, and that single predominant issue is
14  adequate to satisfy Rule 23(a)(2). There are other additional
15  questions of law and fact common to the settlement class, but
16  the central one is the one I just described, and that certainly
17  is adequate to satisfy Rule 23(a)(2).
18         Rule 23(a)(3) requires the class representatives'
19  claims be typical of each class member's claims. There is
20  nothing about the representative class claims here that is
21  different than those that are shared by all members of the
22  proposed class.
23         It is the same conduct affecting the plaintiffs in the
24  same ways, other than as to the particular prices and the
25  amount of the broilers that are purchased. But it's all going

1   to require the same theories of evidence -- the same theories
2   that will be alleged by the plaintiffs and require the same
3   types of evidence to prove up those theories.  So the
4   typicality requirement of 23(a)(3) is satisfied.
5           Finally, the adequacy under Rule 23(a)(4) requires --
6   the adequacy requirement requires that for a case to proceed as
7   a class action, the Court must find that the representative
8   parties will fairly and adequately protect the interests of the
9   class.
10          And that's a two-part test.  The named plaintiffs
11  can't have claims in conflict with other class members, and the
12  named plaintiffs and proposed class counsel must demonstrate
13  their ability to litigate the case vigorously and competently
14  on behalf of the named and absent class members alike.
15          Both requirements are satisfied here.  Co-lead counsel
16  are qualified, experienced, and thoroughly familiar with the
17  antitrust class action litigation involved in this case.  By my
18  appointment of them as lead counsel, I implicitly also have
19  found -- that is the first step in my finding today that they
20  remain qualified, experienced, and thoroughly familiar with
21  antitrust class action litigation.
22          And the interests of the settling class members are
23  aligned with those of the representative plaintiffs.  There's
24  no special compensation given to the representative plaintiffs
25  by this proposed settlement, and all of the class members share

1  a common interest in obtaining Fieldale Farms' early and
2  substantial cooperation to prosecute this case.
3      Once Rule 23(a)'s four prerequisites are met -- which
4  I find have been met -- plaintiffs must show the proposed
5  settlement class satisfies Rule 23(b)(3) by showing that
6  questions of law or fact common to class members predominate
7  over any questions affecting only individual members and that a
8  class action is superior to other available methods for fair
9  and efficient adjudication of the controversy.
10     As to predominance, considerable overlap exists
11 between the Court's determination of commonality and the
12 finding of predominance. I did make a finding of commonality,
13 and that I believe also applies to predominance.
14     In this case, there are common issues relating to the
15 existence and scope of the conspiracy, and they predominate
16 over any other individual issues. Each individual plaintiff
17 has their own story about how they purchased broilers, what
18 they paid for them. But in the end, the overarching issue is
19 whether or not those prices were artificially high because of
20 an alleged conspiracy by the defendants to limit the supply of
21 broilers to jack up the price.
22     I believe also -- and those issues predominate over
23 the individual issues in this case.
24     I must also find that a class action is superior to
25 individual actions, which is evaluated by four considerations:

1 whether the interests of the members of the class in
2 individually controlling the prosecution -- well, I have to
3 determine the interests of the members of the class in
4 individually controlling the prosecution or defense of separate
5 actions, the extent and nature of any litigation concerning the
6 controversy already commenced by or against members of the
7 class, the desirability or undesirability of concentrating the
8 litigation of the claims in the particular forum, and the
9 difficulties likely to be encountered in the management of the
10 class action.
11 The class action is clearly superior to individual
12 actions. No single plaintiff would likely want to bring an
13 action given the limited recovery, nor would a single plaintiff
14 likely be able to enlist the aid of experienced class action
15 counsel or any type of counsel that's experienced in this type
16 of litigation if this were not brought as a class action. The
17 economics of it just wouldn't allow for something like that.
18 Moreover, given the thousands of entities that are
19 likely involved, individual actions here is a much less
20 desirable way to resolve the case than through a class action.
21 This is what class actions were made for, individual -- small
22 individual actions that but for the fact they couldn't be
23 brought -- but for the fact they are brought as a class, they
24 wouldn't otherwise be brought.
25 So I believe the class action -- the proposed class

1    action is superior to other available methods -- if there
2    really are any -- for the fair and efficient adjudication of
3    the controversy relating to Fieldale Farms.
4            Rule 23(e) requires that prior to final approval,
5    notice of the proposed settlement be given in a reasonable
6    manner.  I find the argument about the cost of sending out such
7    notice -- the argument made by plaintiffs' counsel to be a
8    compelling one and will not require notice at this time, until
9    a later date when possible other settlements have been
10   accomplished and a notice can be sent of a number of
11   settlements so that the cost is not something that is
12   prohibitively large in light of the recovery that is hopefully
13   to take place if there are other settlements.
14           But one way or the other, the class will get notice of
15   this.  If no one else settles, the class will get notice.  If
16   multiple parties settle, they'll get a combined notice.  But
17   I'm going to defer any notice to the class at this time, but
18   the other findings I've just made stand.
19           So I preliminarily approve -- for all those reasons, I
20   preliminarily approve the Fieldale Farms settlement and
21   preliminarily certify the settlement class.
22           Is there anything else we need to discuss?  I'll ask
23   first from plaintiffs.
24           MR. BRUCKNER:  This is Joe Bruckner.
25           Not here, your Honor.  I -- not here.

1    THE COURT: All right. Anything else from defendants?
2    (No response.)
3    THE COURT: All right. We're working on the motions
4 to dismiss. Obviously, they've been pending for a while. You
5 need an answer.
6    I've been in correspondence and discussions with Judge
7 Gilbert about the efforts you've made to gather discovery, if
8 not turn it over, and you're owed an answer from me on the
9 motions to dismiss. I'm not going to give you a particular
10 date, but we are working on them.
11    All right. Unless there's anything else, that
12 completes the proceedings.
13    I'll give everyone one more chance to say anything if
14 they have something they need to say.
15    (No response.)
16    THE COURT: All right. Well, thank you all then.
17    MULTIPLE COUNSEL: Thank you, your Honor.
18    THE COURT: Bye-bye.
19    (Concluded at 9:50 a.m.)
20                C E R T I F I C A T E
21    I certify that the foregoing is a correct transcript of the
22 record of proceedings in the above-entitled matter.
23
24 */s/ LAURA R. RENKE*                          *August 22, 2017*
   LAURA R. RENKE, CSR, RDR, CRR
25 Official Court Reporter