UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To: All Actions | Case No. 1:16-cv-08637<br><br>Magistrate Judge Jeffrey T. Gilbert |

### ORDER

This matter is before the Court on Plaintiffs' request that certain Defendants produce documents those Defendants have provided or will provide to the Office of the Florida Attorney General in connection with an investigation concerning potential anticompetitive conduct in the Broiler Chicken industry and potential manipulation of the Georgia Dock Index. [415 at 56–61]. The parties raised this issue in their Status Report and Letter Brief filed on June 14, 2017. [415]. At the Court's request [420, ¶ 3], the parties then filed additional briefs [435, 436] on the question of whether the documents should be produced at this time. The Court will characterize Plaintiffs' request for the documents they are seeking as a "motion to compel" for ease of reference. Plaintiffs ask the Court to order the immediate production of the documents they are seeking. Defendants argue the documents should not be produced, if at all, until after their fully-briefed motions to dismiss have been decided.. All parties acknowledge that discovery is not formally stayed in this case. For the reasons stated below, Plaintiffs' deemed-motion to compel is granted in part and denied in part.

I.

At least six defendants in this lawsuit—Fieldale Farms Corp.; Koch Foods, Inc.; Wayne Farms, LLC; Sanderson Farms, Inc.; Tyson Foods, Inc.; and Pilgrim's Pride Corp. (collectively,

"CID Defendants")—have received Antitrust Civil Investigative Demands ("CIDs") from the Office of the Florida Attorney General ("Florida AG"). [415 at 56]. During a status hearing held on June 16, 2017, the Court asked whether all Defendants had provided documents to the Florida AG in response to a CID. [430 at 163]. Counsel for Sanderson Farms, Inc. said that "[s]ome defendants have not produced any documents to the Florida AG." *Id.* This statement implies, in the Court's view, that at least some CID Defendants already have responded to a CID while some may not have. CID Defendants' filings shed no more light on that issue. The Court assumes, therefore, what Plaintiffs assume: at least some CID Defendants have produced or will produce to the Florida AG the documents requested by the CIDs.

Plaintiffs have obtained copies of the six CIDs that they know have been served on CID Defendants. [415 at 57; 415-6]. According to Plaintiffs' unrebutted representation, "each of the CIDs . . . contain[s] nearly identical requests." [415 at 57]. Plaintiffs have attached to one of their filings a copy of the CID served on Defendant Wayne Farms, LLC. [415-4]. The Schedule of Documents to Be Produced contains 15 requests. Requests 1 and 2 demand the production of documents furnished or to be furnished to a governmental entity relating to potential anticompetitive activity within the Broiler industry and documents related to internal investigations of such activity. *Id.* at 7. Request 2 also demands the production of documents furnished or to be furnished to a governmental entity relating to potential manipulation of the Georgia Dock Index ("GDI"). *Id.* Requests 3 through 6 demand the production of documents relating to certain communications or agreements regarding (1) the GDI, GDI Submissions, or GDI Calculations; (2) the price, supply, or production of Broilers; (3) Broiler production cuts; or (4) the reduction in or liquidation of Broiler breeder flocks. *Id.* Requests 7 through 9 demand the production of documents relating to GDI Calculations and GDI Submissions. *Id.* at 8.

Finally, requests 10 through 15 demand the production of documents related to the identification of employees; Broiler sales to "Florida Purchasers;" transactions with Florida Purchasers affected by, based upon, or linked to the GDI; negotiations with Florida Purchasers relating to the GDI; and technology use policies and document retention policies.

On February 28, 2017, Plaintiffs served their First Set of Requests for Production of Documents to All Defendants. [415-3]. In Request No. 35(a), Plaintiffs seek the production of, among other things, all documents provided to, and all communications with, governmental entities regarding alleged violations of antitrust laws, which would cover documents produced by CID Defendants to the Florida AG and these Defendants communications with the Florida AG. *Id.* at 19–20. Additional requests for production in Plaintiffs' First Set of Requests for Production of Documents to All Defendants also cover the topics encompassed by the CIDs. *See, e.g.*, Request Nos. 1, 3, 12, 17, 19–21, 27, 29, 34, 35(b), 57.

After Defendants responded to Plaintiffs' First Set of Requests for Production of Documents, Plaintiffs renewed their request for the production of the Florida AG documents in the parties' Joint Status Report and Letter Brief for June 16, 2017 Status Conference. [415 at 56–61]. Plaintiffs ask the Court to order CID Defendants to produce the Florida AG documents within 14 days. *Id.* at 59. Defendants, as noted above, argue all document production should await the resolution of the pending motions to dismiss. *Id.* at 61. At the status hearing held on June 16, 2017, the Court and the parties discussed the issue at some length, and the Court ordered additional briefing. [430 at 159–76; 420, ¶ 3]. Consistent with the schedule set by the Court, CID Defendants have filed a response brief [435] and Plaintiffs have filed a reply brief [436].[1] This matter thus is ripe for resolution.

---

[1] In the June 16, 2017 Joint Status Report and Letter Brief, Plaintiffs focused solely on documents produced or to be produced by CID Defendants to the Florida AG in response to an already-served CID.

3

II.

Plaintiffs argue the benefits of producing the Florida AG documents now outweigh the burden of doing so. Plaintiffs note the Court has not stayed all discovery or document production. They assert the documents they seek are discoverable and can be produced without undue burden, expense, or delay. Plaintiffs also contend they will be prejudiced if production is delayed until after the motions to dismiss are resolved while CID Defendants will not be harmed by immediate production. According to Plaintiffs, production of the Florida AG documents now will go a long way toward reducing the "informational asymmetries" that have hampered Plaintiffs' ability to, among other things, discuss intelligently the identification of key word search terms in preparation for fulsome discovery after the motions to dismiss are decided. Implicit in this argument is that the motions to dismiss will be denied in whole or substantial part so that discovery eventually will be allowed to proceed unchecked or at least as permitted by the Federal Rules of Civil Procedure. For all of these reasons, Plaintiffs say the Florida AG documents should be produced in short order since those documents or a large percentage of them eventually will be produced in any event.

CID Defendants argue Plaintiffs' request for the production of the Florida AG documents is premature, unreasonable, and disproportionate to the needs of the case. CID Defendants say the Court should stay all document production until the Court rules on the motions to dismiss to avoid the first slide down the slippery and expensive slope of document production in a large and complex antitrust case. CID Defendants also contend Plaintiffs do not have a right to "cloned

---

Understandably, only CID Defendants filed a response brief on this issue. [435 at 20–22]. Yet, in their reply brief, Plaintiffs ask the Court to order *all* defendants to simultaneously serve Plaintiffs with future productions to the Florida AG made in response to any CID. [436 at 10]. Not only have non-CID Defendants not had an opportunity to litigate this issue, but the Court also has no way of knowing whether CIDs served by the Florida AG in the future will be similar in scope to those already served on CID Defendants. For these reasons, the Court will address Plaintiffs' initial, more narrowly focused request for relief.

discovery" (by which they apparently mean the wholesale, reflexive production of documents previously produced to a governmental entity) because some of the documents produced to the Florida AG may not be discoverable in this case, particularly if the Court grants in part or in whole the pending motions to dismiss. CID Defendants further assert producing the documents now will prejudice them without benefiting Plaintiffs. Therefore, CID Defendants say, the Court should deny Plaintiffs' request for production of the documents at this time.

The Court recognizes that discovery in an antitrust case quickly can become enormously expensive. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007); *see also id.* at 573 (Stevens, J., dissenting); *Nexstar Broad., Inc. v. Granite Broad. Corp.*, 2011 WL 4345432, at *2–3 (N.D. Ind. Sept. 15, 2011); *DSM Desotech Inc. v. 3D Sys. Corp.*, 2008 WL 4812440, at *2 (N.D. Ill. Oct. 28, 2008). These hefty costs do not justify a full stay of discovery simply because a defendant has moved to dismiss all of a plaintiff's claims. *DSM Desotech*, 2008 WL 4812440, at *3. Courts must consider the expense of litigating complex antitrust cases and tailor discovery accordingly while motions to dismiss are pending. *Methodist Health Servs. Corp. v. OSF Healthcare Sys.*, 2014 WL 1797674, at *2 (C.D. Ill. May 6, 2014); *Coss v. Playtex Prod., LLC*, 2009 WL 1455358, at *5 (N.D. Ill. May 21, 2009); *DSM Desotech*, 2008 WL 4812440, at *3.

In light of the procedural posture of this case, the Court has discussed with the parties at length what should (and should not) be done before a decision on the motions to dismiss. The Court has charted the course of discovery while those motions are pending during status hearings held on December 9, 2016, and March 2, April 21, and June 16 of this year. The Court's decisions and guidance can be summarized as follows. The Court has neither stayed discovery completely nor allowed full discovery to proceed. The Court is placing a priority on identifying specific discovery-related tasks that the parties can complete before a decision on the motions to

dismiss without substantial burden or expense (both of which the Court understands are relative concepts in a case like this). The Court's focus is on those tasks that will set the table so that discovery will not begin from a complete standing stop if the motions to dismiss are denied in whole or in part. [336 at 12, 15; 384 at 52]. In other words, the Court is trying to identify preparatory tasks that must be completed before the parties can respond to written and oral discovery and that do not impose undue burden or expense on a party or parties. Some of these tasks can take many months or even a year or more in a large case like this. If preparatory steps can be taken now, with due regard to the proportionality analysis required under Federal Rule of Civil Procedure 26(b), that will further expedite the process and avoid unnecessary delay later in the case. The Court will assess what should be done before a decision on the motions to dismiss by balancing the benefit and the burden of completing a given discovery-related task as well as the benefit and burden of the work being done overall. [384 at 52–53]. The Court, though, is willing to draw a clear line if this incremental balancing approach proves unworkable. [384 at 52, 64; 430 at 166].

To date in this case, the Court has focused on completing preparatory discovery tasks that are relatively less expensive, at least in the context of a complex antitrust case like this that includes three putative plaintiff classes and nearly 30 defendants from 14 corporate families, involves multiple theories of liability, covers conduct spanning nearly a decade, and targets an industry with $20 to $30 billion in annual revenue. The Court has entered orders requiring the disclosure of limited information the parties agreed to exchange [264], denying without prejudice a request to issue document preservation subpoenas [382], setting an interim schedule [388], granting a Rule 30(b)(6) deposition to remedy misleading initial discovery disclosures by one defendant group [449], encompassing significant components of an ESI protocol [459], and

concerning the appointment of a special master for ESI discovery issues [474]. The Court also has ruled on matters ranging from the number of interrogatories the parties can serve to the appropriate method for preparing a privilege log. *See* [245; 336; 384; 430]; *see also* [243; 387; 420]. The parties have agreed to an overall schedule for discovery, class certification, and summary judgment; significant portions of an ESI protocol; and identification of most document sources. The parties also have served initial disclosures, and served and objected to an initial set of Rule 34 requests. This is not an exhaustive list of what the Court and the parties have done so far in this case on the discovery or scheduling front, but it is a representative sample.

The Court's approach to requests for production under Federal Rule of Civil Procedure 34 has been consistent with its broader approach to discovery. Early this year, the parties served their initial Rule 34 requests. On April 27, 2017, the Court entered an agreed scheduling order that laid out the next steps with respect to Rule 34 requests. Consistent with that order, the parties served their objections to their counterparts' requests during the following month. [388 at 2]; *see also* [430 at 187]. During the June 16, 2017 status hearing, the Court said it did not want to resolve Rule 34 objections in a piecemeal fashion and ordered the parties to exchange letters regarding their Rule 34 requests on or before June 30 and to meet and confer on or before July 31. [420, ¶ 5; 430 at 187]. Interim Scheduling Order on Agreed Dates No. 1, which sets a date for the substantial completion of document production, does not require the production of any documents in response to a Rule 34 request before a ruling on the pending motions to dismiss. *See* [388 at 2].

The Court will continue to apply the benefit-burden balancing approach outlined above that has guided other discovery decisions in this case unless it proves to be unworkable. The Court understands that ordering full document production at this juncture would significantly

ratchet up costs for all parties. Cognizant of this expense, the Court has not yet ordered any party to produce documents in response to a Rule 34 request. The Court, though, also has not stayed all document production. [384 at 53; 430 at 166]. The Court does not "subscribe to the notion . . . that nothing should be produced" before a ruling on the motions to dismiss. [384 at 52]. An objection based solely on the position that there should not be any document production before a ruling is "not as persuasive." *Id.* at 53; *see also* [430 at 166] (noting the Court does "not buy the argument completely that because a motion to dismiss is pending, no documents shall be produced").

III.

As the Court acknowledged during a recent status hearing, there is more than a little overlap between the Florida AG's document requests, the allegations in Plaintiffs' operative complaints, and the categories of documents covered by Plaintiffs' First Set of Requests for Production of Documents to All Defendants. The CIDs request documents for the time period of January 1, 2007 to the date of production. [415-4 at 4]. The agreed ESI protocol entered by the Court identified the general time period for discovery as ranging from January 1, 2007 to September 2, 2016. [459 at 12]. Almost all of the CID requests seek documents related to potential anticompetitive conduct or the GID. The few requests that are not in this vein seek documents related to basic corporate information or to the identification of employees or sales figures. Subject to potential limitations as to time periods and particular products, if a Defendant remains in the case, the documents produced in response to requests 3 through 10 of the CIDs' Schedule of Documents appear to be relevant to the claims and defenses in this case. CID Defendants do not argue otherwise. Requests 3 through 10 of the CIDs' Schedule of Documents cover: (1) certain communications and agreements related to (a) the GDI, GDI submissions, or

GDI calculations, (b) the price, supply, or production of Broilers, (c) Broiler production cuts, or (d) the reduction in or liquidation of Broiler breeder flocks; (2) certain documents related to GDI Calculations and GDI Submissions; and (3) documents sufficient to identify employees with responsibility for these things. Again, as far as the Court can tell, these documents also are encompassed in multiple Rule 34 requests for production that Plaintiffs have served upon Defendants.

In every case in which a motion to dismiss is filed, the scope of discovery could change if the motion is granted in part or in whole. In some cases, such as those under the Private Securities Litigation Reform Act, automatic discovery stays are mandatory while a motion to dismiss is pending. But this is not a PSLRA case. Even the cases cited by CID Defendants recognize that courts need not stay discovery in antitrust cases solely because a motion to dismiss has been filed. *Nexstar*, 2011 WL 4345432, at *2; *DSM Desotech*, 2008 WL 4812440, at *2; *In re Graphics Processing Units Antitrust Litig.*, 2007 WL 2127577, at *3–4 (N.D. Cal. July 24, 2007). Typically, courts that stay some or all discovery in antitrust cases look to the burden involved in conducting that discovery. As explained above, this Court is doing the same by balancing the benefit and burden of certain steps or tasks preparatory to full discovery.

During the status hearing held in this case on June 16, 2017, the Court identified certain facts that would be relevant to its consideration of the burden on CID Defendants of producing the Florida AG documents—such as the volume of documents involved and the expense of producing them now—and it invited Defendants to address those issues in their filing so as to inform the burden analysis. [430 at 166–67, 173–74]. CID Defendants, however, declined in their response brief to quantify, or even describe, the economic or administrative burden of producing the Florida AG documents.

Instead, CID Defendants make other arguments. They maintain the Florida AG documents contain highly sensitive business information. They say not all documents produced to or communications with governmental entities are subject to production in this case. They contend Plaintiffs will not be prejudiced if production of these documents is stayed until after a decision on the motions to dismiss. They assert their motions to dismiss stand a good chance of being granted. And they worry production of these documents will mark the first slip down the inevitably expensive document production slope. The Court is not persuaded that these arguments, separately or together, justify CID Defendants' position that none of the Florida AG documents should be produced while the motions to dismiss are pending. The Court will deal with each of these arguments in turn.

CID Defendants argue that their confidential information will be disclosed if they produce the Florida AG documents. As Plaintiffs point out, the Court has entered a protective order in this case. [202]. Generally, material designated "Confidential" or "Highly Confidential" under the protective order cannot be used or disclosed for any purpose other than the prosecution, defense, or settlement of this case. *Id.* at 5. When material designated Highly Confidential is produced, the receiving party cannot even share that material with another party. *Id.* at 5–6. That means CID Defendants' documents designated Highly Confidential will not be shared with their competitors. In light of Plaintiffs' willingness to allow CID Defendants to bulk-tag all Florida AG documents as Highly Confidential [436 at 9–10], there is no self-evident reason why the protective order will prove insufficient to prevent harmful disclosures of highly sensitive information. In fact, CID Defendants implicitly concede that they can "ensure appropriate protection for their documents in this case" by designating them under the protective order. [435 at 7].

The Court agrees with CID Defendants that reflexive production of documents previously provided to governmental entities is not appropriate. This argument, though, sets up somewhat of a straw man. The dispute now before the Court turns not on whether documents must be "reflexively" produced but whether the benefit of producing a specific set of documents that appear to be relevant to Plaintiffs' claims outweighs the burden of doing so. In the Court's view, a subset of the documents CID Defendants have produced to the Florida AG appears to be relevant to the claims in this case and production of those documents to Plaintiffs at this time would not impose an undue or unreasonable burden on CID Defendants. In particular, the documents provided to the Florida AG in response to requests 3 through 10 of the CIDs' Schedule of Documents appear to be relevant to Plaintiffs' allegations here and Defendants do not argue that the expense of producing them is undue. The Court will not abandon its benefit-burden approach simply because the documents Plaintiffs are requesting previously have been provided to a governmental entity.

CID Defendants are correct that some of these documents might not be subject to production in this case if a Defendant is dismissed, a particular product is excluded from the definition of "Broilers," or the relevant time period at issue is shortened. Again, though, that is true in every case where a defendant has moved to dismiss all or some of the claims alleged against it. There is no bright line rule that, while a motion to dismiss is pending that may change the scope of the case if granted in whole or in part, no document production should occur unless and until the parties know the exact contours of the case.

Plaintiffs would be prejudiced by delaying production of the Florida AG documents if they can be produced now at a relatively modest additional expense to CID Defendants (again, these Defendants have not argued expense as a reason the documents should not be produced).

For example, the Court has encouraged the parties to negotiate key word search terms that can be used to identify documents that will be subject to production if full discovery moves forward. The parties and the Court also are involved in the process of resolving various disputes regarding search methodologies, including those related to the use of Technology Assisted Review ("TAR"). In a case like this, the process of identifying key words and crafting search methodologies could take many months, if not longer. If all of these efforts are delayed until after the motions to dismiss are decided, that in turn will significantly delay this case.

Plaintiffs also are correct that there is an informational asymmetry between the parties at this time that hampers Plaintiffs' ability to discuss meaningfully key words and search methodologies, and to understand and discuss with Defendants the appropriate universe of document custodians and other discovery parameters. If there is at most minimal burden involved in producing the Florida AG documents and the documents are relevant to the claims made in Plaintiffs' operative complaints, then the benefits of producing those documents now in terms of moving the case forward to a fair and efficient resolution consistent with Rule 1 of the Federal Rules of Civil Procedure weigh in favor of not putting off production until after the motions to dismiss are decided. FED. R. CIV. P. 1 ("These rules . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.")[2]

Again the Court acknowledges that CID Defendants say the motions to dismiss could result in complete and total dismissal, resolving this case on the merits without the need for any discovery. The Court also recognizes that Defendants' motions raise serious, nontrivial issues. *See* [336 at 12]. But the possibility that CID Defendants could prevail on their motions to

---

[2] The Court recognizes that the term "inexpensive" in the context of a multidistrict antitrust case is a relative term.

dismiss does not justify staying all document production in this case even when the benefit of producing the documents now would outweigh any burden associated with that production. If the Court adopted Defendants' construct, meaningful discovery or preparatory steps necessary to engage in meaningful discovery would be delayed indefinitely. In addition, if Defendants' motions to dismiss are granted in part (without prejudice, which is often the case) and denied in part, then the Court can envision Defendants arguing that production of the Florida AG documents should continue to be delayed until the parameters of the case are more firmly set and as necessary to avoid piecemeal and successive productions. The Court does not see the need to continue to kick that can down the road.

In the Court's view, the benefit to Plaintiffs of obtaining access to the relatively discrete set of documents they have requested, as further limited by the Court in this Order, so that Defendants and they can begin the process of intelligently discussing the appropriate parameters of more fulsome discovery that may come in time, including key word search terms that can be used to cull from extraordinarily large document sets potentially relevant documents and appropriate search methodologies, outweighs the incremental expense and burden to CID Defendants of producing these documents which they already have produced to the Florida AG. Plaintiffs also have successfully rebutted the other arguments Defendants have advanced in their effort to defeat Plaintiffs' request for these documents. In addition, production of these documents now will further the interest of the court system and the parties in the expeditious and eventual resolution of this case on the merits or otherwise. FED. R. CIV. P. 1. This limited production, in the Court's view, is justified as a partial and early response to Plaintiffs' Request No. 35(a) of Plaintiffs' First Set of Requests for Production of Documents to All Defendants. [415-3].

The Court will not, however, order production of all the documents CID Defendants have produced to the Florida AG or all of the CID Defendants' communications with that governmental entity which are encompassed within Request No. 35(a) of Plaintiffs' First Set of Requests for Production of Documents to All Defendants. [415-3]. As discussed above, the CIDs also request documents produced to any governmental entity, documents related to internal investigations, and documents related to "Florida Purchasers," among other things. Production of documents in those categories is broader than the Court will allow at this point. The production encompassed by this Order will be limited to the documents produced in response to requests 3 through 10 of the CIDs' Schedule of Documents. Those documents are at the core of Plaintiffs' allegations in this case. Defendants do not raise a relevance objection to production of these documents other than to say that some or all of the documents may not be relevant if Defendants' motions to dismiss are granted in whole or in part, thereby limiting the time frame covered by Plaintiffs' complaints or the products at issue, or eliminating a Defendant from the case. No CID Defendant argues that these documents are not relevant to Plaintiffs' claims as currently pled. As discussed above, the possibility that Plaintiffs' claims will be narrowed or even dismissed in whole or in part does not justify delaying production of a relatively discrete set of relevant documents whose production will benefit Plaintiffs and the judicial process in the ways described above, and will not impose an undue or unreasonable burden on CID Defendants. As Plaintiffs suggest, the documents may be produced as "Highly Confidential" under the previously-entered protective order. [202].

IV.

For all of the reasons stated in this Order, Plaintiffs' deemed-motion to compel is granted in part and denied in part. Within 21 days of the date of this Order, each CID Defendant shall

produce to Plaintiffs, as Highly Confidential documents under the protective order previously entered in this case [202], the documents already produced to the Florida AG in response to requests 3 through 10 of the respective CIDs' Schedule of Documents. If any CID Defendant produces additional documents in the future to the Florida AG in response to these particular requests, that CID Defendant shall produce those additional documents to Plaintiffs within 7 days of the date of production to the Florida AG.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 28, 2017