```
1          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
2                     EASTERN DIVISION

3

4    IN RE BROILER CHICKEN          )  Docket No. 16 C 8637
     ANTITRUST LITIGATION          )
5                                   )  Chicago, Illinois
     This Document Relates to:     )  October 2, 2017
6    All Actions                   )  10:04 a.m.

7
             TRANSCRIPT OF PROCEEDINGS - Telephone Conference
8
            BEFORE THE HONORABLE JEFFREY T. GILBERT
9

10   APPEARANCES:

11   For Plaintiffs          HART McLAUGHLIN & ELDRIDGE LLC
     Maplevale Farms         BY:  MR. STEVEN A. HART
12   and John Gross          121 West Wacker Drive, Suite 1050
     and Company:            Chicago, Illinois  60601
13
     (Direct purchaser plaintiffs interim liaison class counsel)
14

15

16                           LOCKRIDGE GRINDAL NAUEN PLLP
                             BY:  MR. W. JOSEPH BRUCKNER
17                                MR. BRIAN D. CLARK
                                  MR. SIMEON A. MORBEY
18                           100 Washington Avenue South
                             Suite 2220
19                           Minneapolis, Minnesota  55401

20   (Direct purchaser plaintiffs interim co-lead class counsel)

21

22                           PEARSON SIMON & WARSHAW LLP
                             BY:  MR. BOBBY POUYA
23                           15165 Ventura Boulevard, Suite 400
                             Sherman Oaks, California  91403
24
     (Direct purchaser plaintiffs interim co-lead class counsel)
25
```

```
1    APPEARANCES (Continued):

2

3    For Plaintiffs            WEXLER WALLACE LLP
     Fargo Stopping            BY:  MR. THOMAS A. DOYLE
     Center, Sargent's         55 West Monroe Street, Suite 3300
4    Restaurant and            Chicago, Illinois  60603
     Don Chavas Mexican
5    Restaurant:

6    (Commercial and institutional indirect purchaser plaintiffs
     liaison class counsel)
7

8

     For Plaintiffs            GUSTAFSON GLUEK PLLC
9    Fargo Stopping            BY:  MR. JOSHUA R. RISSMAN
     Center and                     MR. DANIEL C. HEDLUND
10   Sargent's                 Canadian Pacific Plaza
     Restaurant:               120 South 6th Street, Suite 2600
11                             Minneapolis, Minnesota  55402

12   (Commercial and institutional indirect purchaser plaintiffs
     interim co-lead class counsel)
13

14

     For Plaintiffs            HAGENS BERMAN SOBOL SHAPIRO LLP
15   Percy, Lathen,            BY:  MS. ELIZABETH A. FEGAN
     Dimas, Monahan,           455 North Cityfront Plaza Drive
16   Coe, Patterson,           NBC Tower, Suite 2410
     Tierney, Cheslow          Chicago, Illinois  60611
17   and Wilbur:

18   (End user consumer plaintiffs)

19

20   For Plaintiffs            COHEN MILSTEIN SELLERS & TOLL PLLC
     Newman, Stangeland,       BY:  MR. BRENT W. JOHNSON
21   Gardner, Weidner,         1100 New York Avenue, NW
     Pauk, Gilbert             Suite 500 West Tower
22   and Weidner:              Washington, D.C.  20005

23   (End user consumer plaintiffs)

24

25
```

APPEARANCES (Continued):

```
For the Tyson            WHITE & CASE LLP
Defendants and           BY:  MR. DAVID H. SUGGS
Defendants Liaison       1221 Avenue of the Americas
Counsel:                 New York, New York  10036


For Defendant            WEIL, GOTSHAL & MANGES LLP
Pilgrim's Pride:         BY:  MS. CARRIE C. MAHAN
                         1300 Eye Street N.W., Suite 900
                         Washington, D.C.  20005


For the Sanderson        KIRKLAND & ELLIS LLP
Farms Defendants:        BY:  MS. STACY L. PEPPER
                              MR. MARTIN L. ROTH
                              MS. CHRISTA C. COTTRELL
                         300 North LaSalle Street
                         Chicago, Illinois  60654


For the                  KUTAK ROCK LLP
O.K. Defendants:         BY:  MS. ROBIN E. STEWART
                         Two Pershing Square
                         2300 Main Street, Suite 800
                         Kansas City, Missouri  64108


For Defendant            SKADDEN ARPS SLATE MEAGHER & FLOM LLP
Peco Foods:              BY:  MS. LARA A. FLATH
                              MS. BROOKE WINTERHALTER
                         155 North Wacker Drive
                         Chicago, Illinois  60606-1720




Official Court Reporter: NANCY L. BISTANY, CSR, RPR, FCRR
                         219 South Dearborn Street, Room 1706
                         Chicago, Illinois 60604
                         (312) 435-7626
                         nancy_bistany@ilnd.uscourts.gov
```

1    (Clerk places telephone call.)

2    (Proceedings heard in open court:)

3         THE CLERK:  This court resumes in session.  The

4    Honorable Jeffrey T. Gilbert presiding.

5         16 CV 8637, Maplevale Farms, Incorporated versus Koch

6    Foods, Incorporated, et al.; for telephone conference.

7         THE COURT:  Okay.  Good morning, everybody.  It's

8    Judge Gilbert here, and we have Nancy Bistany, who is our court

9    reporter.

10        I'll take the appearances of anybody who wants to

11   state your name because you think you might speak, but then

12   what I'd like you to do is email to Nancy, if you want your

13   appearance to be recorded of record, your name and who you

14   represent, and then we'll be able to get that.

15        It's nancy_bistany -- B-i-s-t-a-n-y --

16   @ilnd.uscourts.gov.  And that way we'll be able to have any --

17   anybody's appearance recorded of record.

18        Okay.  But anybody on the phone who wants to state it

19   now so that we can -- we know you're there and associate your

20   voice with your name a little bit, please go ahead.

21        MR. CLARK:  Hello, Your Honor.

22        THE COURT:  Go ahead.

23        MR. CLARK:  Brian Clark, Lockridge Grindal Nauen, for

24   direct purchasers.

25        MR. POUYA:  Good morning, Your Honor.

1          This is Bobby Pouya, Pearson Simon & Warshaw, for

2     direct purchasers.

3          MR. HART:  Good morning, Your Honor.

4          Steven Hart, Hart McLaughlin & Eldridge, for direct

5     purchasers.

6          THE COURT:  Anybody else on the plaintiffs' side,

7     indirect people?

8          MS. FEGAN:  Good morning, Your Honor.

9          This is Elizabeth Fegan for the end users.

10          MR. HEDLUND:  Good morning, Your Honor.

11          Dan Hedlund for the commercial and institutional

12     indirect.

13          THE COURT:  Okay.  That's probably all the

14     plaintiffs.

15          On the defense side?

16          MR. SUGGS:  Good morning, Your Honor.

17          This is David Suggs from White & Case on behalf of

18     Tyson and also speaking on behalf of the defendants as liaison

19     counsel, although there are, I expect, other defendants on the

20     phone, and they may have things to say as well.

21          THE COURT:  Right.  And I think Brenda told me we

22     have 23 people dialed in.  So anybody else on the defense side

23     want to say something now?  Or if you don't, that's fine.  You

24     can send your -- I'm used to having Mr. Suggs on representing

25     you guys as liaison counsel, but if you want to state your

1  appearance, fine.  If you don't, if you're going to say

2  anything, just state your name before you say something and who

3  you represent.

4      (No response.)

5      THE COURT:  Okay.  Hearing nobody, we'll go forward.

6      Okay.  This is a status hearing or a hearing on my

7  proposal to appoint Professor Maura Grossman as a Special

8  Master in the case for eDiscovery issues.  I want to emphasize

9  that, and I want to address the defendants' express concern.

10      I've read plaintiffs' suggestion about the briefing

11  schedule on anything -- you know, recommendations, orders,

12  et cetera, and I'm going to want to hear what defendants'

13  response to that is, but I think it probably is a good idea to

14  shorten what I suggested a little bit.

15      And I've also read defendants' concerns and objection

16  to the appointment of Ms. Grossman.  I mean, I want to emphasis

17  both sides suggested Professor Grossman for this role, which I

18  thought was great that we could get agreement on her.  And I've

19  spoken to her several times between the time I issued my order

20  and before then and now, and I think she's got a vast wealth of

21  information on the ESI issues.

22      Defendants, I want to say I agree with the

23  plaintiffs' conception of what Professor Grossman's role should

24  be.  I am not stepping back on discovery generally or even

25  specifically.  I mean, a Special Master's role is going to be

1   limited to electronic discovery matters.

2            Defendants' concern I could see could arise from the

3   language I used in my order of September 5th, which, as I

4   reread it, was a little inartful where I said I was going to

5   postpone certain matters that were clearly discovery matters

6   until after the Special Master was appointed, but that was

7   more, frankly, on a timing issue.  I knew I was working on the

8   Florida Attorney General matters.  I know I've got other things

9   under advisement here.  And so it was -- you know, it was more

10  I was focused on the Special Master, and I know these other

11  things are on my plate, rather than I'm going to put those on

12  her plate.

13           Specifically, I know on my plate is the issue about

14  the custodians that has been teed up to me in the letters,

15  whether Tyson's new president and CEO should be included,

16  whether complex level managers at Tyson and Pilgrim's Pride

17  should be included, and downstream data for the DPP people.  I

18  get -- that's on my plate.  I'm not -- that's not going

19  anywhere else.  The Rule 34 issues and objections are still on

20  my plate.

21           As defendants properly say, I think, in their -- you

22  know, what they filed in response to the proposal to appoint

23  Professor Grossman, loading and processing of ESI, I agree.

24  That's probably a cost issue, by and large, and it's not a

25  technical issue as much, although I could seek, you know,

1  advice and counsel on that.  Entry of a 502(d) order, which I

2  want to talk about today, all this stuff remains on my plate.

3         And to clarify what I mean here, I guess I would

4  propose to tweak the language in the order a little bit to make

5  sure that it properly reflects both the advise and consult role

6  that I see Professor Grossman fulfilling as well as in the --

7  you know, in the, you know, I'm going to say, I think probably

8  unlikely event that there's a huge dispute that gets, you

9  know -- that needs to be resolved, how we would resolve it.

10        And I'm going to ask your indulgence for one second

11  because I think I left my proposed language in chambers.

12      (Brief pause.)

13        THE COURT:  Okay.  Here it is.  So in the first

14  paragraph of the proposed order, I guess to put a finer point

15  on this, I would say, "The Special Master is appointed to

16  address and resolve, by mediation or otherwise," I would insert

17  "issues and disputes that may arise between the parties."

18        And then farther down in the parenthetical, rather

19  than "eDiscovery disputes," I would call it "eDiscovery

20  matters."  And then I would add at the end of that sentence,

21  "and to assist and advise the Court concerning those matters."

22        You know, my concept here is that I would be in, you

23  know, close communication with the Special Master.  I think

24  with her help, the parties are going to be able to work out, as

25  I said, most or even all of the ESI discovery issues they have

1  or that will arise. If not, then I think any recommendation

2  that she makes as to how something should be resolved, together

3  with the short briefs from the parties that I will get, will

4  crystallize the issue I need to resolve more efficiently than

5  if I had to be involved with all the discussions and,

6  importantly, without the expertise that she brings to the table

7  on this. And then I would be able to make decisions on these

8  things pretty quickly, to the extent that they need to be

9  decided like that and they can't be worked out.

10  So, again, I agree with defendants that a good

11  portion of what Professor Grossman would be doing is working

12  with the parties -- sitting down, working with the parties to

13  resolve issues, advising me about issues, potentially sitting

14  with me together with you on some issues that could be

15  addressed that way.

16  And then there are certain things, you know, that are

17  not non-ESI related that continue to remain on my plate. So

18  let me give you an example before I ask whether this addresses

19  defendants' concern. Let me give you an example of what I

20  think, for example, are the first pieces of business that would

21  be on the Special Master's plate. You know, I draw these from

22  the ESI protocol. For example, the parameters and use of

23  technology-assisted review, that's a bracketed matter in

24  Section VII of the ESI protocol order that was left open to

25  talk about some -- some key points as to how TAR would be used,

1    before or after keyword searches, et cetera.  That's something

2    that I think she has really specialized expertise on and could

3    meet with you all.  And, frankly, my bet is that you end up

4    resolving that without having to kick it to me, but if it gets

5    kicked to me, it will be -- it will be -- I'll get the issues

6    much better.

7            Two, another issue that's left open in the ESI

8    protocol at Section V(D) of that order -- D as in David -- is

9    the structured data disclosures and negotiations.  There's also

10   a reference to testing search terms, both in my order of

11   September 5th and in plaintiffs' letter to me in August, which

12   is also referenced in that order.  These are things that I

13   think are well within the parameters of this Special Master.

14           As I said -- and there may be other leftover issues

15   from our prior meetings about ESI issues or things left open in

16   the protocol that you would want to tee up in front of the

17   Special Master, and that could -- that could be done fine.

18           As I said, I agree the matter of loading and

19   processing ESI before the motions to dismiss are decided,

20   that's on my plate.  And, you know, I have a proposal as to how

21   we deal with those issues, to the extent we need to, the Rule

22   34 objections, which I'm, you know, frankly prepared to walk

23   back a little bit today.

24           But that's where I see the division.  So let me --

25   let me stop here and ask Mr. Suggs or any of the other

1   defendants if this ameliorates some concern or gives you a

2   better sense.  I mean, I have a pretty good sense, clear in my

3   mind as to what her role would be.  I just feel like I needed

4   to communicate that to you a little bit better, but let me know

5   what you're thinking.

6              MR. SUGGS:  Yes.  This is David Suggs.

7              And thank you very much for the clarification, and

8   we're glad to know that you'll continue to address a lot of

9   these issues, because I think it has been very productive.  The

10  parties have worked through a lot of the disputes, and as you

11  described in your order on the Florida Attorney General

12  documents, the -- we've accomplished a lot, and I think we've

13  done a good bit to set the table so we won't be starting

14  discovery from a standing stop.

15             So, yes, we're glad to know that you'll continue to

16  be involved.  And I think most of the issues that you described

17  as your issues or all of the ones you said you'd continue --

18  you will continue to work on, those sound reasonable.

19             I did have one comment on the structured data

20  disclosures.  I think that those are, to a large extent,

21  similar to loading and processing where it's more a question of

22  timing than anything else, because the defendants are not

23  refusing to produce that information to plaintiffs.  It's just

24  not clear to us why they need it now, because a lot of what

25  will need to be produced depends on the motion to dismiss and

1    also the negotiations on the RFPs.  And since that's not done

2    yet, it's hard for us to say what will be needed.  But, I mean,

3    that's just one example.

4            I guess one point of clarification that would be

5    helpful to us to know is how Your Honor will decide which

6    issues go to Professor Grossman and which ones you'll reserve

7    for yourself.

8            THE COURT:  Okay.  I mean, to the extent that I

9    identify an issue as an ESI matter as I've described it, those

10   would be matters that I would put on Professor Grossman's

11   plate.  And, you know, I'm -- I think initially what I would do

12   probably is -- you know, I don't know if it's entering an order

13   or almost like a referral order for these things other than the

14   structured data as to how -- how -- what she would deal with.

15           You know, I don't -- I have two concerns.  I don't

16   want to be overly formalistic with this, and I also don't want

17   to have a situation where the parties are disagreeing as to

18   what she should be doing.  I mean, I'm going to propose, for

19   example, another status hearing to deal with the things that

20   are on my plate, and I was going to propose that she either be

21   here -- Professor Grossman either be here or be on the phone so

22   she could listen to the stuff that we're doing so that she gets

23   the background on other things.

24           I mean, my first order of business is, I'm going to

25   send to her for background reading all of the status reports

1  that have been filed, all of my orders and Judge Durkin's

2  orders that have been entered, and the transcripts of our

3  in-person and telephonic hearings so she has a flavor of what's

4  been going on.

5      And, again, the first pieces of business that I see

6  being on her plate are as I talked to you and if -- I don't

7  know what plaintiffs have to say.  I mean, some of these issues

8  overlap, right?  I mean, they become a cost issue, but they

9  also have somewhat of a component of somebody who understands

10  the electronic component of this.

11      I could see in certain circumstances both of us

12  sitting with you and me getting realtime benefit of her -- what

13  she says and then deciding these things.

14      So I haven't worked through in my mind yet how that

15  would be and how formalistic it would be.  Part of that depends

16  upon how well you all are working with her and whether there's

17  contention about it.  But to answer your -- so that's a

18  long-winded answer.

19      The short-winded answer, I think, is that I would ask

20  her to look at the issues reserved in Section VII of the ESI

21  protocol about the use of TAR and, somewhat related to that,

22  the procedure and protocol for testing search terms.

23      I would like to understand better what the issue is

24  about structured data disclosures and negotiations, because

25  there's a -- the protocol speaks very clearly about

1    unstructured data and then is a little bit more open ended on

2    structured data.  I could see how that blends into Rule 34

3    requests, and I'm happy to keep that on my plate for a while.

4          I think the first order of business is this

5    technology-assisted review stuff, because that was the stuff

6    that gave me some pause and that I wanted her -- her input on.

7          MR. SUGGS:  Your Honor, this is David Suggs again.

8          And that's helpful to hear, and I don't think -- I

9    would maybe need to speak to the other defendants.  I don't

10   know that we need anything formal.  I do think it's useful to

11   have the conversation in advance about what issues you're

12   considering referring to her.

13         On the TAR, for example, I certainly can appreciate

14   that you would benefit from her knowledge on how -- on related

15   technology.  I'm sure, speaking personally, I would, too.

16         Part of this will -- part of the way we proceed

17   depends on how you want to or how you decide which issues need

18   to be addressed now.  On the TAR specifically, it's not clear

19   that any defendant will want to use search terms and TAR.

20   That's something that we were looking to have the option to

21   have, but it could be, depending on how the motions to dismiss

22   are resolved, that the volume data will just not be so large

23   that any defendant feels the need to use search terms and TAR.

24         So that's a dispute that may not end up ever being

25   ripe.  So, I mean, if you think that you need to speak with

1   Professor Grossman about that now, then we understand that

2   that's something that where you might -- an area where you

3   might benefit, but it's not, I don't think, essential to

4   resolve right now.

5            And we are -- I mean, obviously, the Special Master's

6   fees in relation to the overall litigation costs are not that

7   great, but the defendants are mindful of their expenses, which

8   are significant.  And so we prefer to keep Professor Grossman's

9   fees to a minimum.  That's probably not surprising.

10           THE COURT:  Well, I'm sure plaintiffs would like to

11  do that, too, on their end since their -- you know, their cost

12  arrangement is probably a little bit different.

13           I mean, I hear what you're saying on the TAR thing.

14  I mean, I guess -- I guess what I would like to do, I would

15  like to get Professor Grossman in place.  I would like to get

16  her appointed.  I would like to give her some time to read some

17  background stuff, and then I'd like her to meet with you all

18  and talk to both sides about what she could do at this stage of

19  the litigation to help move things forward.

20           Plaintiffs may feel that they want her to do more.

21  Defendants may feel that they want her to do less.  And before

22  she does -- she digs in on stuff, then I need to talk to her

23  and then maybe talk to you all again about that, because I

24  think her suggestions, just based on my few conversations with

25  her, could be really helpful.

1    I think what also would be helpful to you -- and I

2    have a couple other things that I wanted to discuss, then we

3    could circle -- but I think framework-wise, that's what I mean.

4    I also need to say something that I have come to

5    realize as I thought about this more and I was dealing with the

6    request for the Florida AG documents; and that is, that I think

7    I was put -- we may have run out or we may have -- we may be at

8    the maximum point of usefulness on these Rule 34 requests and

9    objections.

10    I'm going to propose, for example, that I want to get

11    the objections that have been filed or served, and if that's

12    going to be a huge number of documents -- if that's going to

13    be, you know, boxes of stuff, maybe I want the defendants to

14    synthesize it.  But I think that to the extent that a lot of

15    the objections that the defendants are raising -- and I'm just

16    projecting -- are time frame, product, we may not even be in

17    the case, state law issues, I can't deal with those now, as you

18    well know, until Judge Durkin deals with the motions to

19    dismiss, and I have a little bit better guidance with that.

20    And although I had thought that maybe I could sit

21    down with the parties and slice and dice, as I do in any other

22    case, objections to production of documents, I'm now thinking

23    that I need to walk that back a little bit, given what I think

24    the objections are going to look like.

25    So I was -- what I wanted to do was get them and at

1 least see what is going on or any letters that the parties have

2 had, and I was going to schedule another hearing in early to

3 mid-November on that. But I just -- you know, given -- I want

4 you to know that. And I'll hear from the plaintiffs on it.

5 I also -- it may be that the Florida -- if the

6 plaintiffs get the Florida Attorney General documents, if such

7 documents exist and they are produced at some point, that may

8 go some distance to maybe mitigate plaintiffs' push on -- on

9 other things. And, you know, I don't know that. And, you

10 know, I don't know whether the defendants plan on appealing

11 that order. You've got 14 days to do that.

12 But, I mean, I -- that's a new fact in this mix and

13 an information fact that could change the emphasis on certain

14 things, but I'm not sure that I can address in any more --

15 address well Rule 34 objections now before I have more

16 information from the district judge.

17 And, you know, the issue of loading and processing

18 ESI, to the extent there's a cost issue or to the extent that

19 some of it is a cost issue, I need to weigh into that with you

20 as well. And I'm going to want more material from you on that

21 that I was hoping I could get -- set dates for and then deal

22 with that at the next -- at the next hearing.

23 So, I mean, both sides should know about that,

24 because defendants say in their response to the proposed

25 Special Master order that the loading and processing of ESI,

1   you know, globally would be a massive burden.  Well, I need to

2   know that and facts and figures on that and what plaintiffs'

3   response is before I'm moving forward on that prior to a

4   decision on the motions to dismiss.  But anyway, that's the

5   other leg of this stool that I'm considering.

6           So let's back up.  I think I'd like -- in terms of --

7   in terms of the Special Master, I'd like her to get acclimated

8   in the case, meet with you, talk to you about specifically how

9   technology-assisted review is going to be used here to the

10  extent it can be discussed at the outset.  And I think from

11  talking to her, some things can be discussed at the outset in

12  terms of framework.

13          And then I suppose I also would like you to talk with

14  her about what the issues are on -- with respect to structured

15  data and, you know, maybe even the costs of loading and

16  processing ESI, although really that's -- I want to get that

17  information to me, too.  But I'd like you to meet with her

18  first and hear -- you know, have her hear from you, both

19  plaintiffs and defendants, about things that you think can

20  be -- either side thinks can be profitably dealt with sooner

21  rather than later.  And then, you know, I will hear from her,

22  and we can create whatever agenda that is cost effective that

23  makes sense.

24          Let me pause.  I haven't heard from the plaintiffs at

25  all on this.  Mr. Clark or anybody else?

1    MR. CLARK:  Yeah, Your Honor, Brian Clark for direct.

2    I think that's fine.  I think a meeting with

3    Professor Grossman makes -- makes a lot of sense.  Is your

4    thought that we do so in conjunction with Your Honor at, you

5    know, a status conference in the next couple of weeks or the

6    parties would all have a -- either a telephone conference and

7    conference meeting with her to talk about some of the framework

8    issues for structured data and search, which I think we agree

9    is a -- that's what we've kind of been trying to drive towards,

10   is setting a framework of some dead -- you know, deadlines to

11   move different things forward.  And I think everyone would

12   benefit from her thoughts on how to frame the discussions.

13   Is your thought that in the next couple of weeks we

14   arrange some type of meeting or call with her?

15   THE COURT:  Yes.  My thought is I send her the

16   materials so she can get up to speed.  Then she contacts you

17   initially through liaison counsel to set up either an in-person

18   meeting or a call to talk about what she could profitably do.

19   And then, you know, I hear from her.  And I'll talk

20   to her about this either in a letter that you guys get a copy

21   on, or I talk to her about what she thinks we should do, and

22   then we all get back together again.

23   And the dates that I was proposing for that are

24   either November 8th or November 15th in the morning, just FYI

25   until we get to the end of the call.

1    And so she gets up to speed.  She meets with you, and

2    she and you get a sense of what can be profitably done in the

3    short term or in the -- you know, in the near term.  And then I

4    get advised of the results of that, and then we get back

5    together.

6         MR. CLARK:  Okay.  Thanks, Your Honor.  At least for

7    direct, I think either of those dates in November work for us,

8    and we're always -- always in favor of getting a date agreed to

9    on the call to save everybody some hassle.

10        THE COURT:  Right.  And does the process also work

11   for you just in concept?

12        MR. CLARK:  I think that's fine.  Yeah, I think that

13   the idea being, I suppose, sometime in mid-October or the 20th

14   of October, we would meet with her in some way makes a lot of

15   sense once she's had the benefit of, you know, everything we

16   plan on.  Through the joint status letters and otherwise for

17   the Court, I think it would give her a good sense of the

18   parties' position, and we would all benefit from her guidance

19   on how to frame those discussions and move forward.

20        THE COURT REPORTER:  I'm sorry.

21        MR. CLARK:  And on the topic of structured --

22        THE COURT:  You know what, wait.  Let me -- let me

23   interrupt you.  Let me interrupt.

24        Mr. Clark, I think you trailed off.

25        THE COURT REPORTER:  He's trailing off at the end.

1   I'm not hearing it.

2          THE COURT:  Yes, so just give us the last part of the

3   sentence that you probably don't remember that you said.

4          MR. CLARK:  I was -- I was -- if the Court wanted, I

5   was just going to address structured data, because we didn't

6   have a chance to kind of respond on that issue, if you'd like.

7          THE COURT:  Yes.

8          MR. CLARK:  I think we'll find that's probably --

9   what we're discussing pre-motion to dismiss was I think

10  something Professor Grossman kind of understands the thought

11  of, which is not a full production of all structured data but

12  production of some of the, you know, manuals and the sample

13  data from some databases that would let us understand kind of

14  the setup of the table of this issue for everyone and be able

15  to move forward pretty quickly after a motion comes out without

16  incurring all the costs of, you know, having a vendor collect a

17  full database and producing reports.

18         So I think that discussion with her would be pretty

19  useful, and she could provide some -- some guidance on how

20  specifically to do that, both to the Court and the parties.

21  That would be useful.

22         THE COURT:  Yes.  Maybe I just am tone deaf on the

23  concept of structured data.  I mean, I under -- I've looked up

24  what that means.  And, you know, I understand that that's more

25  organized databases versus more fluid data, you know, such as

1  email or something like that, but I'm not getting what the
2  issue is here to be decided.

3          And it's totally related, it seems to me, or it's
4  very related, it seems to me, to the cost of production.  I'm
5  going to hear from defendants with respect to certain of them
6  who think they could be out of the case and the production of
7  manuals and other kinds of things.  That's for me to decide,
8  not for Professor Grossman to decide.

9          Where I see her being useful is, are there
10 suggestions that can be made that are cost effective that help
11 move things forward without being a massive burden on the kinds
12 of structured data to be discussed ahead of time?

13         Again, as you saw in my order, I took some care in
14 that order to describe what my philosophy is and has been on
15 the discovery spectrum to date.  You know, if -- I understand
16 very well that there are certain things that may not
17 productively be done until the contours of the case are more
18 defined, in large part, because of expense.

19         So, I mean, that's an issue that I think you could
20 first talk about with her, but then I'm going to have to direct
21 traffic on, it seems to me.

22         And the same thing about loading substantial amounts
23 of ESI.  I mean, I would ask the plaintiffs -- and maybe we
24 haven't had a chance to deal with this yet.  But assuming that
25 some defendants, which I actually don't know, have produced

1   documents to the Florida Attorney General, which then are going

2   to get produced to you, that's information, whether it's

3   structured or unstructured data, that can -- that you could

4   load, go through, and for all the reasons that I've described

5   in my order, will potentially be useful.  And in the short

6   term, given what I'm -- again, what I said I thought was the --

7   a lower cost of that, at least monetarily or economically --

8   without going a lot further, that provides some information to

9   the plaintiffs.

10          MR. CLARK:  Yeah, I think certainly -- Your Honor,

11  this is Brian Clark for direct.

12          I think certainly the information the Judge ordered

13  be produced will be very, very helpful.

14          THE COURT:  Again, so I think -- I mean, I think that

15  the concept of putting some of this stuff for discussion

16  between you, your ESI liaisons, and her at an initial meeting,

17  followed by some organized presentation of what the parties are

18  going to do -- what she proposes probably to -- that can be

19  done based on your input.  And then my view on that is really

20  the better way to go, I think, or the best way to go.

21          MR. SUGGS:  Your Honor, this is David Suggs again for

22  White & Case.

23          So just so I don't, you know, get ahead of myself

24  here, let me say that we appreciate all the information you've

25  given us here today and the clarification.

1          If I could have maybe until the end of the week

2  just -- I don't know who is on the phone for the defendants --

3  just to take this back and debrief them, make sure everybody is

4  kosher with it, and then let you know as far as the plans for

5  the Special Master.

6          THE COURT:  Well, I don't think so.  I mean, first of

7  all, we've got 23 people on the call.  So if any of your folks

8  are on the call and want to speak, they can.

9          I don't think this is rocket science, and I -- I'm

10  pretty committed to going forward with a Special Master for

11  ESI -- not pretty committed.  I am committed to going forward

12  with a Special Master on ESI issues.

13          I think that the -- my proposed order that I

14  circulated is very clear that what's on her plate and with my

15  change today is ESI discovery matters.  I am sure that there

16  could be some overlap, and I'll deal with those things.

17          I am not planning of stepping back from my discovery

18  obligations here, responsibilities here in supervising

19  discovery in this case in the short, mid, or long term.  I

20  think there are certain issues that both plaintiffs and

21  defendants believe I could benefit from, and you all could

22  benefit from the views of somebody with an expertise in this

23  area to either help you resolve yourselves or tee up to me in a

24  way that can be more productively dealt with by me and more

25  efficiently in terms of time and also expertise.

1    And I think that the issues that I'm proposing to put

2  on her plate have been present in the case for a while.  Some

3  of them are expressly reserved in the ESI protocol.  And, you

4  know, there's nothing that I'm saying now that is any different

5  really from what I said in my proposal to appoint a Special

6  Master.

7    So I'm not inclined to give, you know, more time for

8  people to shoot at this.  What I've done is clarify, I think,

9  what was in my order and not change it substantively.  What

10  I've said directly addresses the defendants' concern that I

11  would be backing away from discovery, which I'm not.

12    So I can understand your feeling like you're out

13  there, Mr. Suggs, as, quote/unquote, liaison counsel on this.

14  But every party had notice of this, could be on this call, and

15  this wasn't just a liaison counsel call.

16    So I would ask if you've got -- if there are

17  defendants on the call who are uncomfortable with what I'm

18  proposing for some reason, speak now.  Because otherwise, what

19  I would like to do is sign the order, get the material to

20  Professor Grossman, have you set up a meeting -- have her set

21  up a meeting with you, and then we'll get back together.

22    MR. CLARK:  Your Honor, for -- Brian Clark for

23  direct.

24    I think that plan sounds great to us.  My only other

25  suggestion would be, if we could, since we do have

1   representatives from everyone on -- this wasn't just a liaison

2   call -- choose either November 8th or 15th, if possible.  I

3   assume you might need to know if Professor Grossman is

4   available, but absent that, it would be helpful just to set

5   that date and kind of get that locked in.

6           THE COURT:  Yes, I haven't -- I haven't dealt with

7   either of those dates.  And also, again, I'll hear from the

8   defendants.  But I want to address your proposal, Mr. Clark, or

9   plaintiffs' proposal on the briefing schedule here.

10          Mr. Suggs or any of the defendants, do you have a --

11  I mean, I think I took that from an order that had been entered

12  by Judge Peck where he had previously appointed Professor

13  Grossman as a Special Master in the days, but as I look at it,

14  I do think it's kind of long and drawn out.  So, you know,

15  whether -- I mean, seven days, I mean, as a default with the

16  ability to ask for an extension of time and probably no reply,

17  because the issues will probably be vetted completely in what

18  you've got and what I get from her, I think that makes sense.

19  And I would be -- unless I get a big objection to that, I'd be

20  inclined to change that, recognizing that that's a default.

21          MR. SUGGS:  Well, Your Honor, I think 14 days would

22  be better, just given the way things happen sometimes.  I mean,

23  seven days is a pretty quick turnaround.  If something comes

24  down at an unexpected time when we're really busy with other

25  things, 14 days could be useful.

1    The other thing -- I don't know if -- is your -- are

2    your comments also relating to their proposal regarding page

3    limits?  Because the page limit, seven is sort of arbitrary.

4    We don't know how many issues are going to be raised in any

5    particular objection.  So we were thinking that -- the local

6    rules, I believe, allow for 15 pages.  That might be -- or

7    maybe 14 pages.  I'm not sure exactly, but we felt something

8    like that might be better, so --

9         THE COURT:  I'm fine to keep the local rule at 15.  I

10   would propose 10 days as a compromise between 7 and 14.  Again,

11   this is a default.  If somebody's got a problem with it, a

12   motion to extend time or an agreed schedule can be done, but at

13   least if there's no -- if there's -- the default would be that,

14   and I could live with 10 and 10 and 15 -- and the local rules

15   governing the briefs.

16        Less is always more, right?  You know, but -- so I

17   propose -- I mean, my view is 10 on the briefs, no need for a

18   reply unless somebody tells me that it's really necessary since

19   these issues will have been vetted *ad nauseam* by you guys.

20   You'll know each other's positions, and you'll get them to me.

21   And I'm okay with 15 -- 15 pages.  And, you know, in this case,

22   15 pages doesn't necessarily include your signatures.  I

23   could -- with the number of pages, you guys -- signatures, I

24   could say 15 including signatures but --

25        MR. SUGGS:  And that's fine, Your Honor.

1          THE COURT:  I'm just kidding.  Okay.

2          So the defendants on the phone, you've had a little

3   bit of a chance to think.  Anybody want to say anything other

4   than what we've already discussed?  Because otherwise, I really

5   want to move forward and do this.  If we have to tweak this in

6   the future, fine.  If there are issues that arise, fine.  But

7   I'd like to get the train moving on it.

8          (No response.)

9          THE COURT:  Okay.  Good.  So what I -- so, again,

10  what I would like to do for the next step here is tell me where

11  the -- did each defendant or defendant group serve their own

12  response and objections to plaintiffs' Rule 34 request,

13  Mr. Suggs?

14          MR. SUGGS:  Yes, Your Honor.

15          THE COURT:  Yes.  Okay.  So that's a huge amount of

16  stuff.

17          MR. POUYA:  Your Honor, this is Bobby Pouya.  Can I

18  just briefly be heard on the progress of the meet-and-confer

19  that we made on those?

20          THE COURT:  Sure.

21          MR. POUYA:  So we started the meet-and-confer process

22  on defendants' responses in early June.  It was brought up at

23  the last status conference, and the Court asked us to meet and

24  confer regarding the responses in their entirely -- entirety.

25  We've made significant progress in terms of those

1    meet-and-confer efforts in the last few months.

2            We've held global discussions regarding overarching

3    issues with multiple calls as well as letters being exchanged,

4    and we also met and conferred with each of the defendants

5    regarding their individual responses and issues, also in

6    writing and by telephone.  And there's been significant

7    progress made.

8            We've resolved a number of the issues and narrowed

9    them.  Plaintiffs believe we're at the point now where there

10   are some concrete disputes which can benefit from being at

11   least set forth to the Court, and we would suggest that in --

12   in advance of the next status conference that is being set that

13   the parties set forth those disputes rather than providing you

14   a mountain of responses.

15           And we're certainly available to provide the

16   framework for the Court to understand what's outstanding,

17   because it has significantly narrowed.  And the objections that

18   were initially served don't necessarily represent what's

19   currently at issue between the parties.

20           THE COURT:  Okay.

21           MR. SUGGS:  Your Honor, this is -- Your Honor, this

22   is David Suggs from White & Case.

23           What Mr. Pouya said is accurate.  We have met and

24   conferred extensively with plaintiffs and narrowed issues.

25   There are still issues left to be resolved.  Some of them

1    aren't ripe yet.  I mean, there are 80-some, I think, requests

2    for production, and we've had negotiations about all of them.

3    In some cases, those negotiations are still ongoing.  We would

4    prefer to deal with them at once, but I think you are correct

5    that at the end of the day, a lot of these disputes are

6    theoretical and may ultimately not be disputes, and they do

7    depend on the motion to dismiss.

8            So even if you resolve something now, it doesn't mean

9    that it's going resolve the dispute -- it doesn't mean there

10   won't be a dispute later about what the impact of the motion to

11   dismiss will be.

12           THE COURT:  Well, given where you are, I guess I

13   would like to take your temperature on this with you having

14   done a lot of work on this.  I would -- my proposal, what I

15   would like to see is for the plaintiffs to put pen to paper and

16   tell me what's been accomplished and what the concrete disputes

17   are that you think can benefit from being set forth to the

18   Court as plaintiffs' counsel stated.

19           And then I'd like to hear from defendants on that,

20   both as to whether these are things that there's anything there

21   that I could help on or whether these are things that need to

22   be deferred until you know the contours of the case a little

23   bit more.

24           I guess I would just like to know where things stand

25   in this regard, given that you've spent a lot of time on it.

1    And then I can, with your help and also just by looking at

2    these things, decide whether or not these are things that

3    require more leavening with a decision on the motion to dismiss

4    or there are things that I can deal with.

5         In any event, teeing them up like this to me will

6    give me a sense, if the case is going to proceed, you know,

7    where the sensitivities are and things like that.

8         So I would benefit from that.  Whether or not

9    we're -- I would say that that should be a separate meeting

10   with you -- with me and you that doesn't necessarily need to

11   include Professor Grossman or that may be one of the things

12   that she's invited to watch just so she gets a sense of what's

13   going on.

14        It might be too aggressive to do all that on -- for

15   the next status hearing.  You know, the next status hearing, I

16   would hope, is one where we have -- can direct Professor

17   Grossman a little bit more on what can be done in the short

18   term on the ESI front before motions to dismiss are decided,

19   unless we get a -- you know, a motion to dismiss decision drops

20   from the heavens, so to speak; then we can move forward on

21   that.

22        So I would -- my preference is to set a schedule for

23   you to tee up these issues to me so I understand what's going

24   on.  And I think it would be too ambitious to get everything

25   done on one day, but it would be helpful for me to get these

1  and then set another date to -- to deal with them. Or, you
2  know, if you get them done quickly enough, maybe I can get some
3  of that done then.

4        But, I mean, how quickly do you think plaintiff --
5  and, again, quickly is relative. Mr. Clark, or who was the
6  other person who spoke?

7        THE COURT REPORTER: Pouya.

8        MR. POUYA: Mr. Pouya.

9        THE COURT: Pouya, yes. When could you put something
10 in writing, copying to me, send it to the defendants, in terms
11 of where you think things are and what do you think -- what
12 disputes can benefit from some insight?

13       And then I'll get a date from the defendants.

14       MR. POUYA: We thought before the call that we could
15 do it within a week, but I think definitely within the next two
16 weeks, we could have something for the Court and then for
17 defendants to have an opportunity to respond to that.

18       THE COURT: Okay.

19       MR. CLARK: Your Honor --

20       THE COURT: Yes.

21       MR. CLARK: -- Brian Clark for direct.

22       Just one other thought to add on. Since you have two
23 dates that are available, November 8th and the 15th, it seems
24 that you could use one to deal with the issues relating to
25 Professor Grossman and the other to deal with the Rule 34

1    issues.  It might be an efficient way to proceed, given you're

2    available, and you're really, obviously, the key person, and we

3    can all work around your schedule.

4              THE COURT:  Well, if you were the only case I had or

5    even the only multidistrict case, you know, I'd like that

6    approach.

7              Give me a date, Mr. Pouya, as to whether or not you

8    want -- as to when you're going to get your letter, and I'll

9    get a date from the defendants, and we'll see where we are.

10             MR. POUYA:  We can get our letter by the 16th.

11             THE COURT:  Okay.  And then if you get a letter by

12   the 16th -- I don't know if this is a Mr. Suggs decision or

13   somebody else -- when could the defendants respond?

14             MR. SUGGS:  Well, Your Honor, I guess we would ask

15   for the same amount of time.  We have some idea what plaintiffs

16   would put in their letter, but it's a bit of a guessing game.

17   So I guess October 30th, I would ask for.

18             THE COURT:  Okay.  And when -- of the people who are

19   on the phone, which works better, the morning of November 8th

20   or the morning of November 15th?

21             Let's vote on November 8th.  Who can't be there on

22   November 8th?  This would be in person, by the way.

23             (No response.)

24             THE COURT:  Okay.  Who can't be there on November

25   15th?

1    (No response.)

2    THE COURT:  Okay.  Both dates are available.

3    Well, I have not vetted either of these dates by --

4    I'd be thinking like around 9:30 that morning.  So let me ask

5    Professor Grossman whether she's available for either of those

6    dates and then see potentially whether I could accomplish both

7    of these things by then.

8    I'll have by October 30th this discovery stuff, and

9    I'll know better what the -- what the issues are, whether I can

10    accomplish all of this on one day or not.

11    Mr. Clark, I hear you about reserving two days.  Let

12    me look at my schedule and see.  Maybe I could pencil both in

13    for those days.  I get it.  I'll just tell everybody else on my

14    calendar that you guys get priority.

15    Nobody is in the courtroom to hear me say that, so

16    you can't see the court -- Nancy Bistany, our court reporter,

17    smiling.

18    All right.  Let me find out what's available for her

19    and see whether or not I feel comfortable or not committing

20    those two mornings or suggesting a different day.

21    And then finally, I think an issue that's been

22    dangling but needs to be addressed, particularly if documents

23    are going to be proposed -- produced, is a 502(d) order.  Do

24    you think you could agree to a 502(d) order and get it to me in

25    a week so that I can sign it and enter it?

1    On the plaintiffs' side, who is going to take
2  responsibility for --
3    MR. CLARK:  Your Honor, this is Brian Clark for
4  direct.
5    You know, I don't have it in front of me -- but
6  hopefully another colleague on the call will -- I think in the
7  ESI protocol order, we might have included a 502(d) provision.
8    THE COURT:  Well, there's a provision -- I saw -- I
9  looked at it over the weekend.  There's a provision that
10  says -- hold on.  Let me call it up on my computer here.  Oh,
11  here it is.
12    So it says -- it's Section VII.  Actually, that means
13  I referenced -- when I referenced to you guys the TAR issue,
14  when I referenced Section VII of the order, I was wrong.
15    So the record should show that the TAR issue that I
16  was talking about is at paragraph V(D), as in David, of the
17  order, and the structured data is in V(F).  So that's what I
18  meant to refer to on the order.
19    And then in Section VII is the 502(d) process, and it
20  says, "The parties stipulate that the Court should enter a Rule
21  502(d) order to this end, which will be interpreted to provide
22  the maximum protection."
23    So I understood from that that you were going to get
24  me an order.  Is there -- was there an attachment to it, do you
25  think?  But I don't see that.

1      MS. PEPPER:  Your Honor, this is Stacy Pepper from
2  Kirkland & Ellis.
3      I believe at one point when we had briefed this for
4  the Court, we had submitted a draft order that Judge Peck had
5  entered in a case that we were using as the model.
6      THE COURT:  Right.
7      MS. PEPPER:  If the Court would like, we can take
8  that model, incorporate what we've agreed from the ESI protocol
9  order, and we can certainly talk to plaintiffs about it over
10  the next week.  Two might be useful in terms of getting it to
11  the Court.
12      THE COURT:  All right.  Two weeks --
13      MR. CLARK:  Brian Clark for direct.
14      I'm just looking at the bottom of page 19 of your
15  order dated August 15, 2017, which is docket No. 459.  The way
16  I read it is Section VII(A) there, the nonwaiver provision, it
17  doesn't appear to me as we -- okay.  So Your Honor is just
18  interpreting this that we need a further order beyond -- beyond
19  this language?
20      THE COURT:  No.  And I have page 19, but then I
21  turned it to page 20, and the last sentence in that paragraph
22  says the Court should enter an order.
23      And counsel is perfectly right.  I remember the
24  defendants as part of -- I think it was in the materials, the
25  letter brief that came in maybe for the June conference, there

1  was an order that Judge Peck had entered, but it was submitted
2  only by the defendants.

3  So I'm thinking that you could agree to an order that
4  I would enter.  What am I missing, Mr. Clark?  The protocol
5  seems to contemplate the entry of an actual order, right, the
6  end of that paragraph on the top of page 20?

7  MR. CLARK:  Sure.  I see it now, Your Honor, and I
8  understand where you're coming from.

9  I assume what you're looking for is something in line
10  with the language you already have there, I guess, because the
11  ESI protocol contemplates it.  But a separate order will do it
12  in that fashion then?

13  THE COURT:  I think so.  And I think -- I think
14  Ms. Pepper is right.  The -- you could start with the order
15  that was entered -- I can't remember if I had any issues with
16  the Peck order or not, which was -- do you remember, Joe?

17  THE LAW CLERK:  I don't.

18  THE COURT:  That's in my office.  I don't want to go
19  and try and rummage through it.

20  The short answer is, you guys should be able to agree
21  to language for this order.  And if you can't, you could submit
22  to me dueling orders.  And 14 days is fine, by October 16th.

23  I just thought sooner rather than later we ought to
24  get that order entered.

25  MS. PEPPER:  Thank you, Your Honor.  We can do that.

1      Can I raise one quick thing before we move on?  I

2  just wanted to make the Court aware that we -- defendants all

3  served requests for production on plaintiffs, which we've also

4  been negotiating.  So by those same dates, we'll endeavor to

5  give the Court a status update on where we think those are and

6  just might want to respond as well.

7      THE COURT:  Okay.  So you think that this would be

8  productively done as the propounding party gets something to me

9  by the 16th, and then the responding party gets me something by

10  the 30th for me to look at?

11      MS. PEPPER:  I think that would be fine.

12      THE COURT:  Okay.  So I'm a hundred percent sure that

13  if that happens, given what I would think is the nuance here, I

14  wouldn't be prepared to address those on the 8th.

15      So what I would have to think about is whether I

16  would have enough -- and I have a trial between there, I think.

17  So I'd have to think about whether I'm able to do this

18  productively.  I'll know a lot more when I get at least the

19  first stage of the stuff on the 16th, but I may focus on the

20  Professor Grossman stuff at least in the first -- assuming we

21  do that on the 8th, depending upon whether she's available, and

22  then set a separate session with this -- with this stuff.  But

23  I think that's a good proposal.  Okay.

24      Let me just look at my notes here.  Yes, we've dealt

25  with everything that I wanted to deal with today.

1          So I will talk to Professor Grossman and see if

2   either of these two dates work for her.  If they don't, then

3   that's a problem.  So Brenda will send an email or something

4   out, and we'll adjust.

5          But thanks very much.  Anything else anybody wants to

6   raise?

7          MR. SUGGS:  No, Your Honor.  Thank you very much.

8          MR. CLARK:  No, Your Honor.  Thank you.

9          MS. PEPPER:  Thank you.

10         THE COURT:  That's great.  Okay.  Have a good day,

11  everybody.  Bye-bye.

12      (Proceedings concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    C E R T I F I C A T E


2


3


4              I, Nancy L. Bistany, do hereby certify that the

5      foregoing is a complete, true, and accurate transcript of the

6      proceedings had in the above-entitled case before the HONORABLE

7      JEFFREY T. GILBERT, one of the Judges of said Court, at

8      Chicago, Illinois, on October 2, 2017.


9


10


11     /s/ Nancy L. Bistany, CSR, RPR, FCRR        October 4, 2017

12         Official Court Reporter                 Date
           United States District Court
13         Northern District of Illinois
           Eastern Division

14


15


16


17


18


19


20


21


22


23


24


25
```