

Robert P. Davis

**T** 202.344.4514
**F** 202.344.8300
rpdavis@venable.com

600 MASSACHUSETTS AVE., NW   WASHINGTON, DC 20001
**T** 202.344.4000  **F** 202.344.8300  www.Venable.com

October 16, 2017

**VIA HAND DELIVERY**

Hon. Magistrate Judge Jeffrey T. Gilbert
Everett McKinley Dirksen
United States Courthouse
219 South Dearborn Street
Chambers 1336
Chicago, IL 60604

  Re: *In re Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-08637 (N.D. Ill.)

Dear Judge Gilbert:

  Pursuant to your Order on October 2, 2017 (ECF No. 492), Defendants jointly submit this letter regarding Defendants' Rule 34 requests for production and Plaintiffs' objections thereto. In particular, the Order calls for letters regarding requests for production of documents that the parties have "propounded to each other and the responses and objections to those requests, with particular emphasis on any concrete issues or disputes that can be presented to the Court now either for resolution or for focused discussion that could enhance the prospect that those issues or disputes can be resolved without extensive motion practice and, preferably, before Defendants' motions to dismiss are decided." ECF No. 492 at 2. The next status conference in this matter is scheduled for 9:30 a.m. CST on November 15, 2017.

  Defendants issued Rule 34 requests to the Direct Purchaser Plaintiffs ("DPPs"), the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs"), and the End User Consumer Plaintiffs ("EUCPs").[1] The Parties have reached agreement with the DPPs and CIIPPs on the majority of Defendants' Rule 34 requests. The remaining disputes concern two categories of information: (1) Plaintiffs' downstream sales information, and (2) Plaintiffs' participation in trade associations.[2] The Parties set forth in their June 14, 2017 Joint Status Report and Letter Brief their

---

[1] Defendants as a group issued one set of Rule 34 requests to each putative class. Defendants have reached agreement with EUCPs on Defendants' Rule 34 requests and do not have any pending disputes. Defendants reserve all rights with respect to Defendants' Rule 34 request to EUCPs.

[2] Defendants believe that they may be close to reaching agreement with the CIIPPs regarding these two categories of information. CIIPPs have represented that they are working to ascertain whether any such documents exist notwithstanding their relevancy objections, and have taken the position that it would be more efficient to resolve these disputes once they complete their process of determining whether and to what extent the named CIIPPs have documents responsive to Defendants' requests. As discussed below,



respective positions regarding whether these categories of information are discoverable, (ECF No. 415 at 33-52), and subsequently exchanged several letters in connection with ongoing negotiations, (see letters cited, *infra*). However, Defendants' position is that these disputes do not need to be resolved before the pending motions to dismiss are resolved. In accordance with your request for briefing on Rule 34 disputes where "focused discussion [] could enhance the prospect that those issues can be resolved," Defendants discuss those issues below. ECF No. 492 at 2.[3]

## I. Plaintiffs' Refusal to Produce Downstream Sales Information

### A. Discoverability of Downstream Sales Information Should be Resolved After the Motions to Dismiss are Decided

The Court has made clear that it does not want discovery to "begin from a complete standing stop if the motions to dismiss are denied in whole or in part." ECF No. 489 at 6. Accordingly, the Court has focused on "preparatory steps" and continues to "assess what should be done before a decision on the motions to dismiss by balancing the benefit and the burden of completing a given discovery-related task." *Id.* Although Defendants dispute Plaintiffs' contentions and maintain that downstream information is highly relevant to many aspects of Plaintiffs' claims and Defendants' corresponding defenses, ECF No. 415 at 43-50, there is no benefit to either side in resolving these discovery disputes before the pending motions to dismiss. To the contrary, resolution of the motions to dismiss will provide a clearer picture of which claims (if any) may proceed, what the substantive and temporal scope of those claims may be, and, thus, may narrow the parties' disputes and allow more focused negotiations about searching and production.

The issue is not ripe for resolution before Defendants' motions to dismiss are decided because the principal dispute between the parties has been whether the evidence will likely be relevant to the case, a question that depends critically on what issues remain in the case after the motions to dismiss are decided. For example, evidence of downstream sales is directly relevant to the indirect purchaser actions because Plaintiffs' downstream documents and data contain information relevant to which indirect purchaser plaintiffs, if any, paid the alleged overcharge. *See, e.g. In re Aftermarket Filters*, No. 08 C 4883, 2010 U.S. Dist. LEXIS 105108, at *13-14 (N.D. Ill. Oct. 1, 2010) (allowing discovery from direct purchasers related to "prices charged to the indirect purchasers"); *In re Polyester Staple Antitrust Litig.*, No. 2:03CV1516, 2005 WL 6457181, at *4 (W.D.N.C. May 9, 2005) (compelling direct purchaser plaintiffs to produce discovery as relevant to the indirect purchaser claims). Resolution of the motions to dismiss will necessarily

---

Defendants' position is that these disputes should be resolved after the motions to dismiss are decided, and, thus, generally agree with CIIPPs that these disputes need not be resolved now.

[3] In the event the Court decides to resolve these disputes before the motions to dismiss are decided, Defendants incorporate their arguments as set forth in the June 14, 2017 Letter Brief (ECF No. 415 at 43-52).



inform which indirect purchaser plaintiffs, if any, remain in this case, which state law claims remain, and which Plaintiffs would be required to produce downstream sales information and the scope of that production.

        B.      <u>Downstream Sales Information is Highly Relevant to the Current Allegations in the Complaints</u>

Defendants requested downstream sales information from the DPPs and CIIPPs on a variety of relevant topics, including sales information such as units, sale prices, profits, sales contracts, sales forecasts, inventories, price changes or indices, and sales promotion materials. DPPs objected, arguing that downstream discovery is irrelevant to DPPs antitrust claims because it (a) has no relation to the question of whether DPPs paid higher prices as a result of the alleged conspiracy and is barred by the limitation on "pass-on" defense to Sherman Act claims, (b) cannot be compelled simply because a companion indirect purchaser case exists, and (c) is irrelevant to class certification and market definition issues. *See* ECF No. 415 at 33-40, June 14, 2017 Joint Status Report and Letter Brief. The CIIPPs raised similar objections, adding that CIIPPs do not resell broilers and also arguing that downstream information has no relevance to CIIPPs' state law claims. *See* July 21, 2017 Ram Letter to Davis, attached hereto as Exhibit A.

Plaintiffs' contentions are wrong. As Defendants argued in the June 14, 2017 Letter Brief regarding downstream sales, courts routinely permit downstream sales discovery in antitrust cases where that discovery is relevant.[4] *See* Defendants June 14, 2017 Letter Brief, ECF 415 at 43-50. Specifically, downstream sales information is (1) relevant to the IPPs' state law claims, many of which allow a pass-through defense; (2) relevant to the class certification inquiry, including issues of commonality, typicality, and adequacy; and (3) relevant to market definition issues such as substitutability and interchangeability. *Id.* Depending on the outcome of the motions to dismiss, downstream evidence can be relevant in each of those areas, which Defendants have thoroughly explained to Plaintiffs during the meet and confer process. *See, e.g.* 6/30/2017 Davis Letter to DPPs at 1-3, attached hereto as Exhibit C; 6/30/2017 Davis Letter to CIIPPs at 1-3, attached hereto

---

[4] Notably, the EUCPs filed a motion petitioning the Court to allow them to subpoena hundreds of putative DPP class members for the purpose of obtaining downstream data from them. *See* ECF No. 355, at 1-2, 6, 9 ("[T]he EUPs will require transactional data from Defendants' direct customers, including distributors and retailers. This data will be used to analyze the extent to which the overcharges are passed through the chain of distribution."). Similarly, both the CIIPPs and DPPs demanded similar evidence from Defendants. *See e.g.*, CIIPPs' First Set of Requests for Production to All Defendants, attached hereto as Exhibit B (RFP 6 ("All documents concerning Broiler pricing behavior *at each level of distribution, including the extent that costs were passed on*") (emphasis added)). *See also* ECF 415-3, All Plaintiffs' First Set of Requests for Production to All Defendants (RFP 6 ("Documents relating to budgets, projections, estimates, or related studies, presentations, or reports regarding Broilers … regarding … (g) forecasted, projected, estimated, planned, or *actual demand for Broilers*; (h) *demand changes or demand fluctuations for Broilers* sold in the U.S.") (emphasis added)).



as Exhibit D; 8/22/2017 Davis Letter to CIIPPs, attached hereto as Exhibit E; 8/22/2017 Davis Letter to DPPs, attached hereto as Exhibit F.

*First*, Plaintiffs' downstream sales information is relevant to the IPPs' claims under state law, many of which require a showing of actual damages or allow a "pass-on" defense. *See, e.g.* Mich. Comp. L. Ann. § 445.778(2) ("Any other person threatened with injury or injured directly or indirectly in his or her business or property by a violation of this act may bring an action for . . . actual damages sustained by reason of a violation of this act"); D.C. Code § 28-4509(b) ("In actions where both direct and indirect purchasers are involved, a defendant shall be entitled to prove as a partial or complete defense to a claim for damages that the illegal overcharge has been passed on to others who are themselves entitled to recover so as to avoid duplication of recovery of damages"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M-07-1827, 2012 WL 6709621, at *7 (N.D. Cal. Dec. 26, 2012) (holding that Minnesota Antitrust Act allows recovery of only "actual damages sustained," which means that "where multiple levels of purchasers have sued defendants alleging identical and/or overlapping claims, consideration of pass-on is necessary to avoid duplicative recovery"). Numerous courts have rejected Plaintiffs' arguments refusing to produce downstream data and found that it is "directly relevant to the question of how, and in what amount, any potential overcharges were passed through to *other plaintiffs*." *See* June 14, 2017 Letter Brief, ECF 415 at 45 (quoting *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 301 F.R.D. 449, 452-53 (N.D. Cal. 2014) and collecting cases allowing downstream discovery as relevant to indirect purchasers' claims).

*Second*, courts have repeatedly recognized that downstream information is relevant to class certification issues including commonality, typicality, and adequacy. *See* ECF No. 415 at 46-47 (collecting cases permitting downstream discovery because it bears on whether there was a class-wide impact, whether any conflicts exist between putative classes, whether named plaintiffs' claims are typical of the class they seek to represent and whether Plaintiffs will be adequate representatives, and whether common issues predominate).

*Third*, downstream discovery is relevant to the market definition allegations made in Plaintiffs' complaints. Defendants are entitled to discovery about, for example, Plaintiffs' customers' reactions to price changes, as this evidence is the best evidence to contradict or undermine allegations such as that broilers do not face competition from other proteins, in particular to show that the alleged agreement is not plausible. *See* ECF No. 415 at 47-48.

Plaintiffs have not identified any particular burden to producing the evidence. Notably, however, Plaintiffs have made significant requests of Defendants for any evidence Defendants might have relating to their own putative class members' downstream sales. *See*, *supra*, n.4.

Although this issue is not ripe for resolution before the motions to dismiss are decided, Plaintiffs' downstream sales information is undoubtedly relevant to numerous aspect of the claims and defenses in this litigation and Plaintiffs should be required to produce it.



## II. Plaintiffs' Refusal to Produce Information Related to Plaintiffs' Participation in Trade Association Activities

### A. Discoverability of Plaintiffs' Participation In Trade Association Activities Should be Resolved After the Motions to Dismiss are Decided

Defendants requested documents related to Plaintiffs' participation in trade associations, such as attendance at trade association meetings or conferences. DPPs objected in part, agreeing to produce trade association information for Broiler-related trade associations, but refusing to produce any "non-Broiler" or "non-protein" related trade association information. In response to these arguments, Defendants made clear that they were interested in trade association activities by Plaintiffs with competitors (*e.g.*, a plaintiff that is a restaurant might be in a national or local restaurant association). CIIPPs initially objected and refused to produce any trade association information. CIIPPs later stated that they do not believe any named CIIPP plaintiff has been a member of a trade association during the Class period, except for possibly one who may have been a member of a restaurant association. *See* Ex. E, 08/22/2017 Davis Letter to CIIPPs.

Defendants believe that they and the CIIPPs may be close to agreement on this request and no action by the Court is yet required.[5] With respect to the DPPs, there is little to be gained by the Court expending resources resolving the issue now. For example, once the relevance challenge to this issue is resolved (guided by the rulings on the motions to dismiss), no further negotiations between the parties or Court rulings will be necessary. As such, balancing the minimal, if any, benefit to deciding this issue now against a still unknown burden on the producing parties weighs in favor of resolving this issue after the motions to dismiss are decided.

### B. Plaintiffs' Participation In Trade Association Activities is Highly Relevant to Plaintiffs' Allegations

In the event this issue is resolved before the motions to dismiss, Defendants incorporate by reference their arguments in the June 14, 2017 Letter Brief. ECF No. 415 at 50-51. To summarize, Defendants' position is that where Plaintiffs seek to support an inference of conspiracy with circumstantial evidence such as participation in trade associations, Defendants are entitled to discovery to show that Plaintiffs are engaged in similar conduct, which rebuts that inference and supports that the alleged conduct is not conspiratorial. *See, e.g. In re Domestic Drywall Antitrust*

---

[5] During the meet and confer process, Defendants explained that the relevant requests to the CIIPPs seek information related to CIIPPs' communications with their competitors and meetings CIIPPs attended with their competitors. *See* Ex. E, 08/22/2017 Davis Letter to CIIPPs. CIIPPs agreed to confer internally regarding Defendants' proposal and have recently represented that they are still in the process of determining whether and to what extent such documents exist. CIIPPs suggested that the parties continue to meet and confer once CIIPPs' inquiry is complete with respect to such documents.



*Litig.*, MDL No. 13-2437, 2016 U.S. Dist. LEXIS 109695, at \*14-15 (E.D. Pa. Aug. 18, 2016) (requiring plaintiffs to "produce all requested trade-association related documents" and to identify the "relevant trade-association and identify which meetings were attended"); *In re Cathode Ray Tube Antitrust Litig.*, MDL No. 1917 2015 U.S. Dist. LEXIS 185963, at \*87 (N.D. Cal. Jan. 16, 2015) ("[C]ompetitive intelligence information is relevant to rebut allegations that competitor contacts and price monitoring are indicative of a conspiracy."). DPPs' position that it is irrelevant whether they participated in "non-Broiler" or "non-protein" trade associations is untenable, as membership in industry trade groups made up of competitors is far more relevant to their allegations than membership in a protein-related trade association. Defendants offered to minimize any burden by limiting discovery from certain custodians to only those requests seeking materials related to communications with competitors and participation in trade association, but DPPs have ignored that offer. *See* ECF No. 415-5 at 1-2, 6/13/2017 Suggs Letter to Clark.

## Conclusion

For the foregoing reasons, the Court need not decide the parties' discovery disputes regarding downstream sales information and information concerning Plaintiffs' participation in trade associations before Defendants' motions to dismiss are decided. In the event these issues are resolved before the motions to dismiss, both categories of information are relevant and discoverable and should be included in the documents produced by the Plaintiffs.

Respectfully submitted,

*/s/ Robert P. Davis*

Robert P. Davis

cc:    Counsel of Record for Defendants
        Counsel of Record for Direct Purchaser Plaintiffs
        Counsel of Record for Commercial and Institutional Purchaser Plaintiffs
        Counsel of Record for End-User Consumer Purchaser Plaintiffs

EXHIBIT A

LAW OFFICES

COTCHETT, PITRE & McCARTHY, LLP

LOS ANGELES

SAN FRANCISCO AIRPORT OFFICE CENTER
840 MALCOLM ROAD
BURLINGAME, CALIFORNIA 94010
TELEPHONE (650) 697-6000
FAX (650) 697-0577
www.cpmlegal.com

NEW YORK

July 21, 2017

**Via Email Only**

Robert P. Davis
VENABLE LLP
600 Massachusetts Ave., NW
Washington, DC 20001
*rpdavis@venable.com*

     Re:    *In re Broiler Chicken Antitrust Litigation*, No. 16-cv-08637 (N.D. Ill.)

Dear Robert:

     I write on behalf of the Commercial and Institutional Indirect Purchaser Plaintiffs ("Plaintiffs" or "C&I IPPs") in response to your letter dated June 30 regarding Plaintiffs' Objections and Responses to Defendants' First Set of Requests for Production.

     As a general matter, Plaintiffs confirm that any documents withheld on the basis of a privilege will be included on a log, subject to the requirements and exclusions of the [Proposed] Order Regarding Production of Electronically Stored Information and Paper Documents, submitted to Judge Gilbert on July 7, 2017, which Plaintiffs anticipate will be entered as an order of the Court.

### Relevant Period

     Consistent with the parties' agreement memorialized in the stipulated ESI Protocol, Plaintiffs will produce documents that were "created, modified, sent, or received between January 1, 2007 and September 2, 2016 unless otherwise specified and agreed to by the parties in writing." Dkt. 349-2, § V.A.1. Plaintiffs' objection that this period is overbroad is not "at odds" with the parties' agreement. As Plaintiffs objected, this production period calls for irrelevant documents outside of the time period for which Plaintiffs currently seek damages. Plaintiffs' production of documents pre-dating their damages claims is without waiver or prejudice to this objection.

### General Objection No. 10

     Plaintiffs disagree with Defendants' assertion that information related to what Plaintiffs did with Broilers after they purchased Broilers (*i.e.* after Plaintiffs allege they suffered antitrust injury) is relevant to this action for a number of reasons. Plaintiffs address each of these reasons in turn below.

### *"Actual Damages" and "Pass-On" Defense*

Plaintiffs need more information to understand and meaningfully evaluate Defendants' position that: (a) "state laws . . . require a plaintiff to show that it suffered actual damages"; and (b) "these same laws permit a defendant to show that the plaintiff 'passed on' any alleged supra-competitive price[] and, thus, suffered no such injury." June 30 Letter at 2.

Specifically, Plaintiffs ask that Defendants: (1) identify the state laws under which Plaintiffs sue that Defendants contend require Plaintiffs to show that they suffered "actual damages"; (2) for each of those states, provide Defendants' position (with authorities supportive of that position) as to the relevant meaning of the term "actual damages"; (3) identify those "same laws" which "permit" a defense that Plaintiffs "passed-on" their antitrust injury; (4) for each state's law under which Defendants contend a "pass on" defense is available, provide Defendants' explanation and authorities in support of that position; and (5) for each relevant state, authorities supportive of Defendants' position that Plaintiffs bear the burden to show they "did not merely pass on the entire amount of the alleged overcharge." June 30 Letter at 2.

As Plaintiffs previously advised, none of the Commercial and Institutional Indirect Purchaser Plaintiffs sell Broilers, the products at issue in this case. *See* Dkt. 429. Because the C&I IPPs do not sell Broilers, there are no Broiler purchases or Broiler sales that are "downstream" from them. *Id.* As far as C&I IPPs are aware, there is no lawsuit seeking damages for antitrust injury suffered by a consumer of prepared food purchased from a named C&I IPP or from a member of the putative C&I IPP classes that was caused by Defendants' conspiracy to fix and artificially raise Broiler prices.

### *Class Certification*

Defendants assert that "the 'downstream' information Defendants seek, including but not limited to, Plaintiffs' sales and inventory information, is directly relevant to the class certification inquiry under Rule 23, including typicality, adequacy, and predominance." June 30 Letter at 2. Plaintiffs disagree that anything they did with a Broiler after they purchased it and suffered antitrust injury will be relevant to the Court's inquiry when Plaintiffs move for class certification. What Plaintiffs did after their claims accrued has no bearing on whether their claims are typical of the claims or defenses of the putative classes. Nor does this information have any bearing on whether Plaintiffs will fairly and adequately protect the interests of the classes. And what these Plaintiffs did with the Broilers does not inform the analysis of whether common questions of law and fact predominate over individual ones.

The cases Defendants offer in support of their position are off point. In *Tyco*, the court permitted downstream discovery from direct purchasers to determine whether a "fundamental conflict" existed between distributor and end-user members of a direct purchaser class. *Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 267-68 (D. Mass. 2008). Here, the named C&I IPPs are end-users of Broilers who intend to represent a class of Broiler purchasers that are similarly situated to them. *See* Dkt. 429 at 3.

Reliance on *GPU* is misplaced: courts always consider "downstream" data when analyzing whether anticompetitive overcharges were passed through the distribution chain from direct purchasers to one level of indirect purchasers to the next. *In re Graphics Processing Units*

*Antitrust Litig.*, 253 F.R.D 478 (N.D. Cal. 2008). Here, one strand of the Broilers distribution chain ends at the Commercial and Institutional Indirect Purchaser Plaintiffs and there is no further downstream data to be had.

Citation to *In re Plastic Additives Antitrust Litigation*, 2010 WL 3431837 (E.D. Pa. Aug. 31, 2010), similarly misses the mark. Courts regularly certify classes in cases where members of horizontal price-fixing cartels controlled less than 100% of the relevant market. *See, e.g., In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100 (E.D.N.Y Oct. 15, 2014); *In re Korean Ramen Antitrust Litig.*, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017); *In re Blood Reagents Antitrust Litig.*, 2015 WL 6123211 (E.D. Pa. Oct. 19, 2015); *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 341 (D. Md. 2012).

Plaintiffs do not read anything in the order cited from *In re Urethane Antirust Litig.*, 237 F.R.D. 454 (D. Kan. 2006), that sheds any light into why Plaintiffs' use of Broilers is somehow relevant to class certification in *this* case. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 2010 WL 4916723, at *3 (E.D.N.Y. Nov. 24, 2010) (finding *Urethane* "not persuasive" and its conclusions reached "without explanation"). In *Urethane*, the "court seemed to overlook the fact that the common issues to be resolved, if any, were not in the downstream markets but in the upstream market where the plaintiffs were alleging they were overcharged. The court did not explain how changes in downstream markets would affect the proof on whether the plaintiffs had to pay higher prices because of price-fixing, and thus did not speak to the concern advanced by the defendants here, namely, whether that can be established by common, as opposed to individualized, proof. As a result, the *Urethane* opinion does not provide guidance for resolving the discovery dispute here." *Id.*

### *Fungibility and Substitutability*

Plaintiffs do not believe that that their documents are a relevant or proportional source of information about the fungibility or substitutability of Broilers. Plaintiffs expect that Defendants, as the nation's leading Broilers producers are in the superior position to have and already possess the information necessary to determine the fungibility and substitutability of Broilers.

### *The Broiler Market*

Plaintiffs do not believe that their documents are a relevant or proportional source of information about the Broiler market. Plaintiffs expect that Defendants, as the nation's leading Broiler producers are in the superior position to have and already possess the information necessary to assess the "characteristics and complications of the relevant market." June 30 Letter at 3.

### *Plaintiffs' Buying Power*

Defendants posit that "requests for information related to Plaintiffs' gross sales of Broilers likely would evidence Plaintiffs' buying power. A class action may not be suitable where plaintiff purchasers with different buying power have varying degrees of leverage over the defendants[.]" June 30 Letter at 3. This assertion ignores a couple of key facts: (1) Plaintiffs do

not sell Broilers; and (2) definitionally, Plaintiffs indirectly purchase Broilers and have no dealings with Defendants in which they could have leverage. In any event, the "defense that plaintiffs' economic power could have kept the prices of [a product] down is irrelevant where, as here, the crucial issue is whether there was a conspiracy to fix prices. To suggest that a conspiracy was not as successful as it might otherwise have been because of the plaintiffs' countervailing economic power is absurd. Such an alleged 'economic check' is of no consequence in a price fixing case." *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000) (denying motion to compel downstream discovery).

### Non-Defendant Purchases

To the extent the Requests call for documents about Broiler purchases, Plaintiffs agree to produce documents relating to Broilers originating with entities other than Defendants. Plaintiffs will not withhold from production otherwise responsive documents on the basis that they concern Broilers whose source is not a Defendant in this litigation.

### Excluded Broiler Documents

Plaintiffs disagree with Defendants' assertion, unsupported by any authority, that they are "entitled to explore, through discovery, the basis for Plaintiffs' proposed product and market definition[.]" Further, Plaintiffs do not understand how producing documents about products not at issue in this case would inform that "exploration of the basis."

Plaintiffs fail to comprehend how information about products about which they make no claim could be relevant to whether Plaintiffs' proposed classes are ascertainable, whether Plaintiffs have claims and defenses typical of those classes, and whether Plaintiffs will adequately represent the interests of those classes. If Defendants wish to meet and confer on this topic, Plaintiffs look forward to hearing Defendants' explanation as to the relevance of this information to these class certification factors.

To the extent Defendants need information about Excluded Broilers to determine whether the overcharge Plaintiffs paid was due to other market factors, this information can be obtained from the same source Plaintiffs might obtain it: producers and distributors who sell Excluded Broilers.

### Request No. 5

Plaintiffs fail to see how any "annual reports or summaries of business conducted" are relevant within the meaning of Fed. R. Civ. P. 26. Defendants assert that this information is somehow relevant to the antitrust injury suffered by Plaintiffs. However, the only information relevant to the antitrust injury suffered by Plaintiffs concerns the supra-competitive prices that they paid for Broilers. Annual reports and summaries of the business conducted by Plaintiffs shed no light on the inquiry into the antitrust impact experienced by Plaintiffs, which impact happens when Plaintiffs purchased Broilers. Because these documents are not relevant to this case, their production is unduly burdensome and not proportional to the needs of this action.

### Request No. 8

Defendants take issue with Plaintiffs' refusal to produce documents relating to Broiler sales that never took place. An unconsummated deal for the purchase of Broilers is irrelevant to Plaintiffs' claims. Plaintiffs allege that they suffered antitrust injury when they purchased

Broilers at supra-competitive prices that were caused by Defendants' conspiracy to fix the price of Broilers. It is no defense to say, "Plaintiffs should have, or could have, negotiated a price for Broilers that would have been unaffected by Defendants' conspiracy."

Defendants, without elaboration or the support of any authority, assert that documents relating to negotiations for a sale that never happened are relevant to the "market(s) for Broilers (particularly the demand for Broilers), the putative antitrust injury alleged, and class certification issues." June 30 Letter at 5. Plaintiffs disagree. The "factors that influence Plaintiffs' decision and decision-making process when deciding whether to purchase Broilers" are not relevant to the inquiry of determining market demand for Broilers; market demand for Broilers will be determined from a broad range of sales data from Defendants and Broilers distributors, not Plaintiffs. And whatever factors lead any given Plaintiff to purchase Broilers are irrelevant to whether Plaintiffs paid supra-competitive prices for Broilers (and suffered antitrust injury). Likewise, the "factors" that led to any of the Plaintiffs' Broilers' purchases are not relevant to the class certification requirements in Fed. R. Civ. P. 23, whichever one(s) Defendants have in mind.

### Request No. 18

Plaintiffs are willing to meet and confer to discuss the relevance and scope of the documents sought by Request No. 18. Plaintiffs note that they do not understand the following statement: "Defendants are entitled to discovery regarding how Plaintiffs responded to price changes, especially to the extent Plaintiffs attributed increasing prices to high input costs or production decreases in response to external events." June 30 Letter at 5.

### Request Nos. 23, 24, & 35

Defendants failed to address any of Plaintiffs' objections to Requests Nos. 23, 24, and 35, other than that the Requests seek irrelevant information. Plaintiffs are not persuaded that their "communications with competitors and meetings Plaintiffs attended with their competitors" are relevant to this case. *See* June 30 Letter at 5. While Defendants are entitled to refute Plaintiffs' allegations that Defendants' colluded at trade association events with evidence that "attendance at industry events is legitimate and innocuous" (*id.*), Plaintiffs, who are differently situated in the Broilers distribution chain, are not a proper source of evidence relevant to this defense.

The two cases Defendants cite are unavailing. Unlike the plaintiffs in *Drywall* who alleged defendants' attendance at trade association events was "inherently improper," Plaintiffs here allege that Defendants actually engaged in collusive acts in furtherance of the conspiracy at, and during, trade association evens. *See In re Domestic Drywall Antitrust Litig.*, 2016 WL 4414640, at *4 (E.D. Pa. Aug. 16, 2016). Thus, the logic applied by the *Drywall* court does not apply to the circumstances of this case because there is no allegation that Defendants' mere attendance at trade association events was "inherently improper."

Similarly inapposite were the circumstances presented in *In re Urethane Antitrust Litigation*, where the court compelled direct action plaintiffs to produce "plaintiffs' communications with competitors that may indicate anticompetitive conduct by plaintiffs[.]" 2010 WL 5287675, at *5 (Dec. 17, 2010). Here, there is no plausible suggestion of any parallel anticompetitive conduct by the Commercial and Institutional Indirect Purchaser Plaintiffs.

### Request No. 26

Plaintiffs look forward to meeting and conferring with Defendants to discuss Plaintiffs' objections to this Request and the "number of important issues in this case" that documents related to Plaintiffs' non-Broiler poultry purchasers are "directly relevant." June 30 Letter at 6.

### Request No. 28

Plaintiffs' agreement to produce non-privileged documents referenced in their operative Complaint represents a reasonable compromise to Defendants' overbroad, unduly burdensome, and disproportionate request for "*all* documents and communications *relating to* the allegations of the Complaints[.]" Note the Requests use the term "relating to" in "the broadest possible sense and mean, in whole or in part, addressing, analyzing, constituting, containing, commenting, in connection with, dealing, discussing, describing, embodying, evidencing, identifying, pertaining, referring, reporting, stating, or summarizing." Definition No. 18.

### Request No. 29

Plaintiffs will meet and confer with Defendants to discuss Plaintiffs' objections to this Request. Plaintiffs note that in response to other Requests they have agreed to produce their relevant Broiler purchase data and documents, which will support their claimed antitrust injuries and related damages claims. These Broiler-purchase documents are sufficient to determine the fact and extent of the harm suffered by Plaintiffs.

### Request No. 32

Defendants fail to address Plaintiffs' objections that this Request seeks irrelevant information, is unduly burdensome, and is disproportionate to the needs of this case. Plaintiffs do not see the relevance of *all* documents "concerning the circumstances under which [Plaintiffs] became involved in Broiler Chicken Litigation." Plaintiffs will meet and confer if Defendants would like to discuss the relevance and scope of the documents sought by this request.

### Request No. 34

This Request seeks *"[a]ll documents relating to* [Plaintiffs'] engagement or retention of counsel in the Broiler Chicken Litigation[.]" In addition to objecting to the fact that this request seeks privileged attorney-client communications and protected work product, Plaintiffs objected that the retention-related documents sought by this Request are irrelevant, unduly burdensome to produce, and not proportional to the needs of *this* case. Yet Defendants make no attempt to explain the relevance of this retention-of-counsel information or the proportionality of the Request. In addition to responsive documents being privileged, Plaintiffs are not producing otherwise responsive documents on the basis of these latter objections.

### Request No. 36

Defendants appear to have narrowed this Request to "documents in Plaintiffs' possession that relate to putative class counsel's communications with third parties who may qualify as class members regarding this litigation, as this information is directly relevant to the class certification inquiry, including adequacy." June 30 Letter at 7-8. Plaintiffs fail to understand how this category of communications (to the extent they exist) would be relevant to the Court's analysis

of whether the Plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a)(4); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.")

Plaintiffs also note the narrowed request is vague and ambiguous with respect to its use of the phrase "third parties who may qualify as class members." Plaintiffs understand this expression to refer to absent members of the putative classes. As such, this narrowed request seeks protected work product and/or attorney-client communications.

### Follow-Up

Please let me know when Defendants would like to schedule a telephone conference to discuss the above.

Sincerely,

*/s/ Mark F. Ram*

Mark F. Ram

cc:  Defense Counsel on Attached Service List
     Interim Lead and Liaison Counsel for C&I IPPs

*In re Broiler Chicken Antitrust Litigation*, No. 16-cv-08637 (N.D. Ill.)

## Defense Counsel Service List

| Defendants | Counsel | e-mails |
|---|---|---|
| Fieldale Farms Corporation | B. Parker Miller<br>Valarie C. Williams<br>James Cash<br>Max Marks<br>ALSTON & BIRD LLP<br>1201 West Peachtree Street<br>Atlanta, GA 30309 | parker.miller@alston.com<br>valarie.williams@alston.com<br>james.cash@alston.com<br>max.marks@alston.com |
| Foster Farms, LLC | Carmine R. Zarlenga<br>William H. Stallings<br>Oral D. Pottinger<br>MAYER BROWN LLP<br>1999 K Street, N.W.<br>Washington, D.C. 20006 | czarlenga@mayerbrown.com<br>wstallings@mayerbrown.com<br>opottinger@mayerbrown.com |
| George's, Inc. and George's Farms, Inc. | William L. Greene<br>Ruth S. Shnider<br>STINSON LEONARD STREET LLP<br>150 South Fifth Street, Suite 2300<br>Minneapolis, MN 55402<br><br>Sondra A. Hemeryck<br>RILEY SAFER HOLMES & CANCILA LLP<br>70 West Madison Street, Suite 2900<br>Chicago, IL 60602<br><br>Gary V. Weeks<br>K.C. Dupps Tucker<br>Kristy E. Boehler<br>THE LAW GROUP OF NW. ARKANSAS LLP<br>1830 Shelby Lane<br>Fayetteville, AR 72704 | william.greene@stinson.com<br>ruth.shnider@stinson.com<br><br><br><br>shemeryck@rshc-law.com<br><br><br><br><br>gary.weeks@lawgroupnwa.com<br>kc.tucker@lawgroupnwa.com<br>kristy.boehler@lawgroupnwa.com |

| Defendants | Counsel | e-mails |
|---|---|---|
| House of Raeford Farms, Inc. | Gregory G. Wrobel<br>VEDDER PRICE P.C.<br>222 North LaSalle Street<br>Chicago, Illinois 60601<br><br>Henry W. Jones, Jr.<br>JORDAN PRICE WALL GRAY JONES<br>& CARLTON, PLLC<br>1951 Clark Avenue<br>Raleigh, North Carolina 27605 | gwrobel@vedderprice.com<br><br><br><br>hjones@jordanprice.com |
| Koch Foods, Inc., JCG Foods of Alabama, LLC, JCG Foods of Georgia, LLC, Koch Meats Co., Inc. | Stephen Novack<br>Stephen J. Siegel<br>Christopher S. Moore<br>NOVACK AND MACEY LLP<br>100 North Riverside Plaza<br>Chicago, IL 60606 | snovack@novackmacey.com<br>ssiegel@novackmacey.com<br>cmoore@novackmacey.com |
| Mountaire Farms, Inc., Mountaire Farms, LLC and Mountaire Farms of Delaware, Inc. | John W. Treece<br>SIDLEY AUSTIN LLP<br>1 S. Dearborn Street<br>Chicago, Illinois 60603<br><br>Amy Lee Stewart<br>Jacob White<br>ROSE LAW FIRM<br>20 East Fourth Street<br>Little Rock, Arkansas 72201 | jtreece@sidley.com<br><br><br><br>astewart@roselawfirm.com<br>jwhite@roselawfirm.com |
| O.K. Foods, Inc., O.K. Farms, Inc., and O.K. Industries, Inc. | John P. Passarelli<br>James M. Sulentic<br>KUTAK ROCK LLP<br>1650 Farnam Street<br>Omaha, Nebraska 68102<br><br>J.R. Carroll<br>Scott Jackson<br>KUTAK ROCK LLP<br>234 East Millsap Road, Suite 200<br>Fayetteville, Arkansas 72703-4099<br><br>Kimberly M. Hare<br>KUTAK ROCK LLP<br>One South Wacker Drive, Suite 2050<br>Chicago, IL  60606-4614 | john.passarelli@kutakrock.com<br>james.sulentic@kutakrock.com<br><br><br><br>jr.carroll@kutakrock.com<br>scott.jackson@kutakrock.com<br><br><br><br>kimberly.hare@kutakrock.com |

| Defendants | Counsel | e-mails |
|---|---|---|
| Peco Foods, Inc. | Patrick Fitzgerald<br>Lara Flath<br>SKADDEN, ARPS, SLATE,<br>MEAGHER & FLOM LLP<br>155 N. Wacker Drive<br>Chicago, IL 10036<br><br>Boris Bershteyn<br>Sam Auld<br>SKADDEN, ARPS, SLATE,<br>MEAGHER & FLOM LLP<br>Four Times Square<br>New York, NY 10036 | patrick.fitzgerald@skadden.com<br>lara.flath@skadden.com<br><br><br><br>boris.bershteyn@skadden.com<br>sam.auld@skadden.com |
| Perdue Farms, Inc. and<br>Perdue Foods LLC | Kirstin B. Ives<br>FALKENBERG FIEWEGER & IVES,<br>LLP<br>30 N. LaSalle St., Suite 4020<br>Chicago, IL 60602<br><br>J. Douglas Baldridge<br>Lisa Jose Fales<br>Leonard L. Gordon<br>Robert P. Davis<br>Mary M. Gardner<br>VENABLE LLP<br>575 7th Street, NW<br>Washington, DC 20004 | kbi@ffilaw.com<br><br><br><br><br>jdbaldridge@venable.com<br>ljfales@venable.com<br>llgordon@venable.com<br>rpdavis@venable.com<br>mmgardner@venable.com |

| Defendants | Counsel | e-mails |
|---|---|---|
| Pilgrim's Pride Corporation | Michael L. McCluggage<br>EIMER STAHL LLP<br>224 South Michigan Ave., Suite 1100<br>Chicago, IL 60604 | mmccluggage@eimerstahl.com |
|  | Carrie C. Mahan<br>WEIL GOTSHAL & MANGES LLP<br>1300 Eye Street, N.W., Suite 900<br>Washington, D.C. 20005 | carrie.mahan@weil.com |
|  | Kevin J. Arquit<br>WEIL GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, New York 10153-0119 | kevin.arquit@weil.com |
|  | Clayton E. Bailey<br>BAILEY BRAUER PLLC<br>8350 N. Central Expressway, Ste. 206<br>Dallas, Texas 75206 | cbailey@baileybrauer.com |
| Sanderson Farms, Inc., Sanderson Farms, Inc. (Processing Division), Sanderson Farms, Inc. (Production Division), & Sanderson Farms, Inc. (Foods Division) | Daniel E. Laytin, P.C.<br>Christa C. Cottrell<br>Martin L. Roth<br>Stacy Pepper<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle Street<br>Chicago, IL 60654 | dlaytin@kirkland.com<br>ccottrell@kirkland.com<br>martin.roth@kirkland.com<br>stacy.pepper@kirkland.com |
| Simmons Foods, Inc., Simmons Prepared Foods, Inc. | Lynn H. Murray<br>Andrew Meerkins<br>SHOOK, HARDY & BACON L.L.P.<br>111 South Wacker Drive<br>Suite 5100<br>Chicago, Illinois 60606 | lhmurray@shb.com<br>ameerkins@shb.com |

| Defendants | Counsel | e-mails |
|---|---|---|
| Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Breeders, Inc., Tyson Poultry, Inc. | Jeremy Ostrander<br>WHITE & CASE LLP<br>3000 El Camino Real<br>Five Palo Alto Square, 9th Floor<br>Palo Alto, CA 94306<br><br>Robert A. Milne<br>David H. Suggs<br>WHITE & CASE LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br><br>J. Mark Gidley<br>Peter J. Carney<br>WHITE & CASE LLP<br>701 Thirteenth Street, NW<br>Washington, DC 20005 | jostrander@whitecase.com<br><br><br><br><br>rmilne@whitecase.com<br>dsuggs@whitecase.com<br><br><br><br><br>mgidley@whitecase.com<br>pcarney@whitecase.com |
| Wayne Farms LLC | Christopher E. Ondeck<br>Adrian Fontecilla<br>Stephen R. Chuk<br>PROSKAUER ROSE LLP<br>1001 Pennsylvania Ave., NW, Suite 600S<br>Washington, DC 20004 | condeck@proskauer.com<br>afontecilla@proskauer.com<br>schuk@proskauer.com |

Rev. 7/21/2017

EXHIBIT B

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |
| --- | --- |
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To: All Actions | Case No. 1:16-cv-08637<br><br>**COMMERICAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Commercial and Institutional Indirect Purchaser Plaintiffs hereby request that each Defendant produce the documents and things herein requested within 30 days of the date of service at the offices of Wexler Wallace, 55 W. Monroe Street, Suite 3300 Chicago, IL 60603 or such other time and place as may be agreed upon by counsel. Pursuant to F.R.C.P. 34(b), unless otherwise specified, all documents must be organized and labeled to correspond to the categories in the associated document request. Corrections and supplemental answers and production of documents are required as provided for in the Federal Rules of Civil Procedure.

## DEFINITIONS

The following definitions shall apply to these document requests:

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Broiler" or "Broilers" have the same meaning as the definition in ¶ 84 of Commercial and Institutional Purchaser Plaintiffs' Third Amended Consolidated Complaint (ECF No. 253).

3.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be

printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

4. "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way. Including therefore means "including, but not limited to," or "including without limitation."

5. "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly or indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

6. "United States" or "U.S." means each of the 50 states, the District of Columbia, and the commonwealths, territories, and possessions of the United States.

7. "You," "Your" or "Your company" mean the responding Defendant, including its predecessors, wholly-owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or

entity that the responding Defendant manages or controls, including those merged with or acquired, together with all present and former directors, officers, employees, agents, attorneys, representatives or any persons acting or purporting to act on their behalf.

## SPECIFIC DOCUMENT REQUESTS

The "Relevant Time Period" for these requests is January 1, 2007 through and including September 2, 2016, unless otherwise noted.

1.      Documents sufficient to show each of the distribution channels through which Broilers are sold, including industry publications, market studies, and internal presentations.

2.      Documents sufficient to show the volume of Broilers sold in each of the distribution channels.

3.      Documents sufficient to show all the regions, territories or states in which You sold or marketed Broilers in the United States.

4.      All Documents concerning the relationship of Broiler prices between different regions, territories or states.

5.      All Documents concerning Your or your competitors' monitoring of Broiler prices at each level of distribution.

6.      All Documents concerning Broiler pricing behavior at each level of distribution, including the extent that costs were passed on.

7.      All Documents concerning the relationship of Broiler prices between distribution levels.

8.      All Documents concerning the effect of changes in the supply of Broilers on the price of Broilers at each distribution level.

9.      All Documents concerning Broiler purchasing behavior at each level of distribution, including the behavior of wholesalers, distributors, retailers, restaurants and other commercial or institutional buyers.

43539

5

Dated: February 28, 2017

Kenneth A. Wexler
Edward A. Wallace
Thomas A. Doyle
**WEXLER WALLACE LLP**
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
kaw@wexlerwallace.com
eaw@wexlerwallace.com
tad@wexlerwallace.com

*Commercial and Institutional Indirect Purchaser Plaintiffs Liaison Counsel*

/s/ Daniel C. Hedlund
Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua R. Rissman
Brittany N. Resch
**GUSTAFSON GLUEK PLLC**
220 South Sixth Street, #2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsongluek.com

Joseph T. Cotchett
Steven N. Williams
Joyce Chang
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
swilliams@cpmlegal.com

*Commercial and Institutional Indirect Purchaser Plaintiffs Interim Co-Class Counsel*

43539

EXHIBIT C



June 30, 2017

Robert P. Davis

T 202.344.4514
F 202.344.8300
rpdavis@venable.com

**VIA EMAIL**

Counsel for Direct Purchaser Plaintiffs
*In re Broiler Chicken Antitrust Litigation*
Case No. 1:16-cv-08637

      Re:     *In re Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-08637 (N.D. Ill.)

Dear Counsel:

     Defendants have reviewed the Direct Purchaser Plaintiffs'[1] ("DPPs" or "Plaintiffs") responses and objections to Defendants' First Set of Requests for Production ("RFPs" or "Requests"), and determined that many of Plaintiffs' responses thereto are deficient. Given Defendants' need to obtain fulsome discovery responses from Plaintiffs in order to further their own discovery and defense development efforts, we request that Plaintiffs' discovery responses discussed below be supplemented by July 21, 2017. Further, Defendants are available and willing to meet and confer should Plaintiffs wish to do so. Defendants reserve their right to address additional issues.

***Scope Limitation 1:***   Plaintiffs cannot unilaterally refuse to produce *every single* document, including downstream information, in response to Defendants' requests. Plaintiffs' objection is not supported by law. There is no "long line of Supreme Court and other court decisions" holding that downstream data is wholesale irrelevant. To the contrary, as one court correctly summarized, "neither *Hanover Shoe* nor *Illinois Brick* holds that downstream data is irrelevant or non-discoverable. . . . Nor can it be said that any of the courts interpreting *Hanover Shoe* hold downstream data irrelevant as a general rule." *See In re Urethane Antitrust Litig.*, 237 F.R.D. 454, 462-63 (D. Kan. 2006).

     The "downstream" information Defendants seek, including, but not limited to, Plaintiffs' sales and inventory information, is directly relevant to the class certification inquiry under Rule 23, including typicality and adequacy. *See, e.g.*, *Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 267-68 (D. Mass. 2008) ("[T]his Court permitted downstream discovery to determine whether a fundamental conflict exists between distributor class members and end user class members."); *In re Urethane Antitrust Litig.*, 237 F.R.D. at 464 (granting defendants discovery from plaintiffs relating to plaintiffs' "policies regarding sales and purchasing decisions" because such discovery "bears on whether Plaintiffs' claims are typical of those of the class they seek to

---

[1] The terms "Plaintiffs" or "DPPs," as used throughout this letter, refer to Plaintiffs Barters International LLC; Cedar Farms Co., Inc.; Maplevale Farms, Inc.; John Gross & Co., Inc.; Ferraro Foods, Inc.; Ferraro Foods of North Carolina, LLC; and Joe Christiana Food Distributors, Inc.



represent, whether common issues predominate in this action, and whether Plaintiffs will be adequate representatives"); *cf. In re Plastics Additives*, No. 07-0086, 2010 WL 3431837, at *12 (E.D. Pa. Aug. 31, 2010) (holding evidence that "class members were able to obtain lower prices from Defendants" because they had option "to buy from non-Defendant[s]" is relevant and weighs against finding class-wide impact).

Requests for information regarding Plaintiffs' uses for Broilers (*see, e.g.*, Request Nos. 14, 17); communications about Broilers with manufacturers of end-products in which Broilers were used (*see, e.g.*, Request No. 23); policies, practices, and procedures regarding Plaintiffs' sales of Broilers (Request Nos. 12, 19); and the identity of Plaintiffs' customers (Request No. 14) all potentially shed light on the fungibility and substitutability of Broilers, and are, thus, relevant for market definition and class certification purposes. Indeed, the fungibility and substitutability of Broilers affects whether Plaintiffs will be able to establish that the alleged conspiracy had a class-wide impact and are, thus, highly relevant. *See Windham v. Am. Brands, Inc.*, 565 F.2d 59, 62-65 (4th Cir. 1977) (affirming denial of class certification in an antitrust action where the relevant product came in a variety of grades and was non-fungible).

Defendants' requests for information regarding changes in supply, demand, and pricing for Plaintiffs' sales of Broilers (*see, e.g.*, Request Nos. 16, 18, 20) relate directly to the Broiler market. The characteristics and complications of the relevant market are also central to whether a class should be certified. *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 153 (3d Cir. 2002) (granting class certification after considering various "industry characteristics," including market power). For instance, if the facts are such that the impact and damages of the alleged anti-competitive activities on the putative class must be determined for each class member separately, then these individual determinations will be found to overwhelm any common issues. *Windham*, 565 F.2d at 68-69.

Moreover, requests for information related to Plaintiffs' gross sales of Broilers likely would evidence Plaintiffs' buying power. A class action may not be suitable where plaintiff purchasers with different buying power have varying degrees of leverage over the defendants, in which case plaintiffs' claims would be atypical, and individual issues concerning impact and damages may predominate. *See Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 154 (N.D. Cal. 1991) (denying class certification, in part, because "purchasers have varying degrees of leverage over defendants"). Each of these categories of documents is directly relevant to class certification.

Finally, Plaintiffs' sales information is also relevant to whether indirect purchaser plaintiffs paid the alleged overcharge. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 301 F.R.D. 449, 452-53 (N.D. Cal. 2014); *In re Aftermarket Filters*, No. 08 C 4883, 2010 U.S. Dist. LEXIS 105108, at *13-14 (N.D. Ill. Oct. 1, 2010) (allowing discovery from direct purchasers related to "prices charged to the indirect purchasers"); *In re Polyester Staple Antitrust Litig.*, No. 2:03CV1516, 2005 WL 6457181, at *4 (W.D.N.C. May 9, 2005) (compelling direct purchaser plaintiffs to produce discovery as relevant to the indirect purchaser claims). Indeed, the End-User Consumer Plaintiffs



cited their need for such sales information, including from members of the putative DPP class, in a previous filing in these cases. *See* Mem. of Law in Support of End-User Consumer Pls.' Mot. to Compel Disclosure 1-2, 9, ECF No. 355.

Plaintiffs' wholesale objection to producing downstream information is completely unjustifiable. Plaintiffs must withdraw their scope limitation and corresponding objections and produce the information requested in Request Nos. 4, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 23, and 28.

***Response to RFP No. 24***: Request No. 24 seeks documents "sufficient to show all trade associations to which You belong and all trade association meetings or conferences that You have attended." Plaintiffs responded, in part, that they will not produce any documents regarding non-Broiler-related trade associations.

Plaintiffs' claims are based in part on the unsupported contention that Defendants at trade association events must have communicated with each other about an unlawful agreement. Defendants are entitled to refute this contention and place it in the context that attendance at industry events is legitimate and innocuous. Defendants intend to do so by demonstrating that Plaintiffs engaged in similar industry activities. *See In re Domestic Drywall Antitrust Litig.*, No. 2:15-cv-1712, 2016 WL 4414640, at *4-5 (E.D. Pa. Aug. 18, 2016) (compelling indirect purchasers to produce documents concerning their attendance at trade association events); *In re Urethane Antitrust Litig.*, No. 04-MD-1616, 2010 WL 5287675, at *2, 5-6 (D. Kan. Dec. 17, 2010) (compelling plaintiffs to produce their communications with competitors because such discovery was "relevant to counter plaintiffs' assertions that contacts with competitors [or] attendance at trade association meetings . . . are evidence of conspiracy").

***Response to RFP No. 30***: Request No. 30 seeks "all documents concerning the promotion or marketing of Broilers, either produced or received by You . . . ." Plaintiffs responded, in part, by refusing to produce downstream data responsive to the request. For the reasons set forth above, Defendants challenge Plaintiffs' refusal to collect and produce downstream data and information. In addition, in response to Request No. 30, Plaintiffs responded that they will provide such information only to the extent those promotions or marketing documents were created by *Broiler companies* and provided to Plaintiffs. But such documents created by any producer and directed to *any* purchaser are relevant to market definition(s) (among other things), and those documents are discoverable.

***Response to RFP No. 31***: Request No. 31 seeks "[a]ll documents concerning the circumstances under which You became involved in the Broiler Chicken Litigation." In response, Plaintiffs responded: "Plaintiff believes that any documents potentially responsive to this request are likely to be withheld under Scope Limitation No. 5."



Plaintiffs' wholesale objection to produce any documents responsive to this request would not withstand the Court's scrutiny. It defies reason that Plaintiffs could maintain that *every single* document or communication concerning the "circumstances under which [Plaintiffs] became involved in the Broiler Chicken Litigation" was "primarily legal in nature" and "created in anticipation of litigation." It is similarly unlikely that *every* responsive document or communication involved sought legal advice from Plaintiffs' counsel or communicated legal advice from Plaintiffs' counsel to Plaintiffs.

Plaintiffs must withdraw their wholesale objection to Request No. 31, and produce responsive documents. To the extent any document responsive to Request No. 31 is withheld as privileged, Defendants are entitled to a log of responsive documents withheld on those grounds consistent with the forthcoming Order Regarding Production of Electronically Stored Information and Paper Documents (*see* Dkt. 349, 349-2, 349-3). *See* Instruction No. 4; *see also* Fed. R. Civ. P. 26(b)(5)(A)(ii).

***Response to RFP No. 33***: Request No. 33 seeks "documents relating to Your engagement or retention of counsel in the Broiler Chicken Litigation . . . ." In response, Plaintiffs responded: "Plaintiff believes that any documents potentially responsive to this request are likely to be withheld under Scope Limitation No. 5." To the extent any document responsive to Request No. 33 is withheld as privileged, Defendants are entitled to a log of responsive documents withheld on those grounds consistent with the forthcoming Order Regarding Production of Electronically Stored Information and Paper Documents (*see* Dkt. 349, 349-2, 349-3). *See* Instruction No. 4; *see also* Fed. R. Civ. P. 26(b)(5)(A)(ii).

\*　　\*　　\*

Defendants request that Plaintiffs amend their responses accordingly or respond to this letter on or before July 21, 2017. To the extent any document responsive to Defendants' requests is withheld as privileged, Defendants are entitled to a log of responsive documents withheld on those grounds consistent with the forthcoming Order Regarding Production of Electronically Stored Information and Paper Documents (*see* Dkt. 349, 349-2, 349-3). *See* Instruction No. 4; *see also* Fed. R. Civ. P. 26(b)(5)(A)(ii). This request is without prejudice to Defendants' right to meet and confer regarding additional deficiencies in Plaintiffs' response. We look forward to your prompt response.

Very truly yours,

Robert P. Davis
Mary M. Gardner

cc:　　Counsel of Record for Defendants

EXHIBIT D


Robert P. Davis

**T 202.344.4514**
**F 202.344.8300**
rpdavis@venable.com

June 30, 2017

**VIA EMAIL**

Counsel for Commercial and Institutional Indirect Purchaser Plaintiffs
*In re Broiler Chicken Antitrust Litigation*
Case No. 1:16-cv-08637

     Re:    *In re Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-08637 (N.D. Ill.)

Dear Counsel:

     Defendants have reviewed the Commercial and Institutional Indirect Purchaser Plaintiffs'[1] ("Plaintiffs") objections and responses to Defendants' First Set of Requests for Production ("RFPs" or "Requests"), and determined that many of Plaintiffs' responses thereto are deficient. Given Defendants' need to obtain fulsome discovery responses from Plaintiffs in order to further their own discovery and defense development efforts, we request that Plaintiffs' discovery responses discussed below be supplemented by July 21, 2017. Further, Defendants are available and willing to meet and confer should Plaintiffs wish to do so. Defendants reserve their right to address additional issues.

***Plaintiffs' Objection to the Definition of "Relevant Period":*** The parties have already agreed that except where otherwise specified and agreed to by the parties in writing, they may limit the processing of discoverable information to that which was created, modified, sent, or received between January 1, 2007 and September 2, 2016. (*See* Dkt. 349-2, § V.A.1.) Plaintiffs' objection to the relevant period specified is at odds with the parties' agreement. Plaintiffs shall treat the "Relevant Period" as January 1, 2007 to September 2, 2016, unless otherwise specified.

***Plaintiffs' General Objection No. 10:*** Plaintiffs' position that they will not collect or produce "Documents about Plaintiffs' 'downstream' use of [B]roilers" whatsoever (General Objection No. 10) and their categorical refusal to produce documents related to their inventorying and sales of Broilers in response to Request Nos. 4, 6, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 25, 26, 27, 30, 31, 39, and 40 is improper. As Plaintiffs make clear in their response to Request No. 5, they seek damages for the alleged overcharge they claim to have incurred. The information

---

[1] The term "Plaintiffs" as used throughout this letter, refers to Plaintiffs Sargent's Restaurant and Lounge; Wildwood Tavern LLC; Don Chavas Mexican Restaurant, Inc.; Bodega Brew Pub, Inc.; Sullott Corp.; Chicken Joe's, LLC; Eat This, Inc.; Alpine Special Treatment Center, Inc.; Tennis Burns, LLC, dba Alabama Joe's; Alabama Joe's 2, Inc., dba Alabama Joe's; Tani Sushi Bistro, LLC; and France 44 Foods, Inc.



requested directly bears on the putative antitrust injury Plaintiffs allege they have suffered, as well as on their other various state-law claims and class-certification issues.

Plaintiffs are incorrect that what happened to individual Broilers once Plaintiffs purchased them is not relevant to this case. In their Complaints, Plaintiffs allege they suffered injury due to violations of the antitrust laws of numerous states. These state laws, however, require a plaintiff to show that it suffered actual damages. Accordingly, these same laws permit a defendant to show that the plaintiff "passed on" any alleged supra-competitive prices and, thus, suffered no such injury. The downstream data Defendants seek may well demonstrate that Plaintiffs suffered no harm and, thus, have no claim. Therefore, Plaintiffs must produce the requested downstream data to show that in each state they suffered actual damages and did not merely pass on the entire amount of the alleged overcharge.

Further, the "downstream" information Defendants seek, including, but not limited to, Plaintiffs' sales and inventory information, is directly relevant to the class certification inquiry under Rule 23, including typicality, adequacy, and predominance. *See, e.g., Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 267-68 (D. Mass. 2008) ("[T]his Court permitted downstream discovery to determine whether a fundamental conflict exists between distributor class members and end user class members."); *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 507 (N.D. Cal. 2008) (denying indirect purchasers' motion for class certification but considering downstream data to determine that indirect purchasers failed to adequately allege antitrust impact); *In re Urethane Antitrust Litig.*, 237 F.R.D. 454, 464 (D. Kan. 2006) (granting defendants discovery from plaintiffs relating to plaintiffs' "policies regarding sales and purchasing decisions" because such discovery "bears on whether Plaintiffs' claims are typical of those of the class they seek to represent, whether common issues predominate in this action, and whether Plaintiffs will be adequate representatives"); *cf. In re Plastics Additives*, No. 07-0086, 2010 WL 3431837, at *12 (E.D. Pa. Aug. 31, 2010) (holding evidence that "class members were able to obtain lower prices from Defendants" because they had option "to buy from non-Defendant[s]" is relevant and weighs against finding class-wide impact).

Requests for information regarding Plaintiffs' uses for Broilers (*see, e.g.,* Request Nos. 14, 17); communications about Broilers with manufacturers of end-products in which Broilers were used (*see, e.g.,* Request No. 23); policies, practices, and procedures regarding Plaintiffs' sales of Broilers (Request Nos. 12, 19); and the identity of Plaintiffs' customers (Request No. 14) all potentially shed light on the fungibility and substitutability of Broilers, and are, thus, relevant for market definition and class certification purposes. Indeed, the fungibility and substitutability of Broilers affects whether Plaintiffs will be able to establish that the alleged conspiracy had a class-wide impact and are, thus, highly relevant. *See Windham v. Am. Brands, Inc.*, 565 F.2d 59, 62-65 (4th Cir. 1977) (affirming denial of class certification in an antitrust action where the relevant product came in a variety of grades and was non-fungible).



Defendants' requests for information regarding changes in supply, demand, and pricing for Plaintiffs' sales of Broilers (*see, e.g.*, Request Nos. 16, 18, 20) relate directly to the Broiler market. The characteristics and complications of the relevant market are also central to whether a class should be certified. *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 153 (3d Cir. 2002) (granting class certification after considering various "industry characteristics," including market power). For instance, if the facts are such that the impact and damages of the alleged anti-competitive activities on the putative class must be determined for each class member separately, then these individual determinations will be found to overwhelm any common issues. *Windham*, 565 F.2d at 68-69.

Moreover, requests for information related to Plaintiffs' gross sales of Broilers likely would evidence Plaintiffs' buying power. A class action may not be suitable where plaintiff purchasers with different buying power have varying degrees of leverage over the defendants, in which case plaintiffs' claims would be atypical, and individual issues concerning impact and damages may predominate. *See Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 154 (N.D. Cal. 1991) (denying class certification, in part, because "purchasers have varying degrees of leverage over defendants"). Each of these categories of documents is directly relevant to class certification.

Finally, Plaintiffs' sales information is also relevant to determine damages. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M-07-1827, 2012 WL 6709621, at *7 (N.D. Cal. Dec. 26, 2012) (holding that Minnesota Antitrust Act allows recovery of only "actual damages sustained," which means that "where multiple levels of purchasers have sued defendants alleging identical and/or overlapping claims, consideration of pass-on is necessary to avoid duplicative recovery"); *In re Flash Memory Antitrust Litig.*, No. C-07-0086, 2010 WL 2332081, at *10 (N.D. Cal. June 9, 2010) (requiring indirect purchasers to prove "defendant overcharged its Direct-Purchasers . . . and that those Direct-Purchasers then passed on the overcharges to indirect purchasers"). Indeed, the End-User Consumer Plaintiffs cited their need for such sales information in a previous filing in these cases. *See* Mem. of Law in Support of End-User Consumer Pls.' Mot. to Compel Disclosure 1-2, 9, ECF No. 355.

Plaintiffs' wholesale objection to producing downstream information is completely unjustifiable. Plaintiffs must withdraw their objections and produce the requested information.

***Plaintiffs' Objection to Producing Documents Related to Purchases from Non-Defendants***: As part of Request Nos. 6, 7, 8, 9, 10, 12, 13, 20, 27, 31, and 39, Defendants requested information related to Plaintiffs' purchases from non-Defendant Broiler producers. In response, Plaintiffs attempted to limit their production to purchases that originated from Defendants and exclude information related to Broilers purchased from any other Broiler producer.



Plaintiffs' objection is improper. Data related to purchases from non-Defendant Broiler producers is directly relevant to whether the amounts paid to Defendants reflected the putative overcharge alleged by the Plaintiffs. Moreover, the factors that influence Plaintiffs' decisions and decision-making process when purchasing any Broilers (whether from Defendants or non-Defendants), including purchase negotiations (Request No. 8), purchase planning (Request No. 9), Broiler market analyses (Request No. 10), Broiler purchasing procedures (Request No. 12), and selection of Broiler suppliers (Request No. 27), are relevant to (among other things) the market(s) for Broilers (including both the supply of Broilers and demand for Broilers), the putative antitrust injury alleged, and class-certification issues. Defendants are entitled to production of information related to non-Defendant Broiler producers.

**_Plaintiffs' Objection to Producing Documents Related to Excluded Broilers_**: As part of Request Nos. 6 through 20, Defendants requested information related to Plaintiffs' purchases and sales of "Excluded Broilers," defined to mean "chickens raised for meat consumption to be slaughtered before the age of 13 weeks that are grown, processed, and sold according to halal, kosher, free range or organic standards"—in other words, broilers that Plaintiffs have elected to exclude from their product definition in the operative complaints. _See, e.g._, Pls.' Compl. ¶ 84, Dkt. No. 253. Plaintiffs consistently objected to these requests, summarily asserting that "Excluded Broilers are not at issue in this case." _See_ Responses to Request Nos. 6-20.

Plaintiffs have not set forth an adequate basis for withholding the requested documents and information regarding "Excluded Broilers." Defendants are entitled to explore, through discovery, the basis for Plaintiffs' proposed product and market definition, including the supply, demand and pricing characteristics of both included Broilers and Excluded Broilers. The requested documents are also relevant to whether Plaintiffs' proposed class is ascertainable, whether Plaintiffs are adequate and typical class representatives, and whether the prices paid by Plaintiffs for Broilers reflected the putative overcharge alleged (as opposed to other market factors). Defendants are entitled to production of information concerning Excluded Broilers where specified in their requests.

**_Response to RFP No. 5_**: Request No. 5 seeks "all of Your annual reports or summaries of business conducted." Plaintiffs objected that the request was overly burdensome and sought irrelevant information. Plaintiffs' refusal to collect and produce annual reports is improper. To the extent Plaintiffs' businesses involve selling Broilers or products created from Broilers, these reports, filings, and analogous summaries of business conducted prepared by Plaintiffs are relevant to the putative antitrust injury Plaintiffs allege they have suffered, as well as to their other various state-law claims. Moreover, Plaintiffs' objection that the request is "overly burdensome" is without merit. Defendants do not ask Plaintiffs to create annual reports that did not previously exist; Defendants only request copies of documents that Plaintiffs already create and disseminate to third parties. Defendants are, thus, entitled to the production of the information specified in Request No. 5.



***Response to RFP No. 8***:  Request No. 8 seeks all "documents reflecting or concerning any negotiations for the purchase of Broilers and Excluded Broilers by You, regardless of whether or not the purchase occurred . . . ."  In response, Plaintiffs objected, in part, that "documents relating to Broiler purchases that never occurred are not at issue in this case . . . ."  Plaintiffs' refusal to produce documents related to "Broiler purchases that never occurred" is improper. Plaintiffs' purchase negotiations, regardless of whether those negotiations led to actual purchases, are directly relevant to the factors that influence Plaintiffs' decisions and decision-making process when deciding whether to purchase Broilers.   And, Plaintiffs' decisions regarding whether to buy Broilers are relevant to (among other things) the market(s) for Broilers (particularly the demand for Broilers), the putative antitrust injury alleged, and class-certification issues.  Defendants are, thus, entitled to the production of the information specified in Request No. 8.

***Response to RFP No. 18***:  Request No. 18 seeks all "documents reflecting or concerning Your reactions or responses to changes in the price of Broilers . . . ."  In response, Plaintiffs objected that the information requested was not relevant because it related to Excluded Broilers and downstream sales.  Plaintiffs, thus, refused to produce any responsive documents, including documents relating to Plaintiffs' "reactions and responses to changes in the price of Broilers . . ." that Plaintiffs purchased.

Assuming for the sake of argument that Plaintiffs' downstream data objection was appropriate (it is not), and that Plaintiffs' Excluded Broilers objection was appropriate (it is not), Plaintiffs have no valid objection for withholding documents regarding Plaintiffs' reactions and responses to changes in the price of Broilers that *Plaintiffs purchased*.  Defendants are entitled to discovery regarding how Plaintiffs responded to price changes, especially to the extent Plaintiffs attributed increasing prices to high input costs or production decreases in response to external events.

Plaintiffs must withdraw their wholesale objection to Request No. 18, and produce all documents that are responsive to this request.

***Response to RFP Nos. 23, 24, and 35***:  Request Nos. 23, 24, and 35 seek information related to Plaintiffs' communications with their competitors and meetings Plaintiffs attended with their competitors.   In response, Plaintiffs refused to produce any documents, arguing that these categories of communications are not relevant to this action.

Plaintiffs' claims in this case are based in part on the unsupported contention that Defendants at trade association events and in other circumstances must have communicated with each other about an unlawful agreement.  Defendants are entitled to refute this contention and place it in the context that attendance at industry events is legitimate and innocuous.  Defendants



intend to do so by demonstrating that Plaintiffs engaged in similar industry activities. *See In re Domestic Drywall Antitrust Litig.*, No. 2:15-cv-1712, 2016 WL 4414640, at *4-5 (E.D. Pa. Aug. 18, 2016) (compelling indirect purchasers to produce documents concerning their attendance at trade association events); *In re Urethane Antitrust Litig.*, No. 04-MD-1616, 2010 WL 5287675, at *2, 5-6 (D. Kan. Dec. 17, 2010) (compelling plaintiffs to produce their communications with competitors because such discovery was "relevant to counter plaintiffs' assertions that contacts with competitors [or] attendance at trade association meetings . . . are evidence of conspiracy").

**Response to RFP No. 26**: Request No. 26 seeks documents and communications regarding the purchase or potential purchase and the price of non-Broiler poultry products. Plaintiffs objected that the information requested was not relevant, and refused to produce any responsive information. Plaintiffs, however, expressed willingness to meet and confer. The requested information is directly relevant to a number of important issues in this case, including market definition(s), and Defendants are entitled to the production thereof.

**Response to RFP No. 28**: Request No. 28 seeks "all documents and communications relating to the allegations of the Complaints . . . ." Plaintiffs responded that they would "produce any nonprivileged documents referenced in the operative Complaint here."

Plaintiffs' unilateral limitation that they will only produce documents *referenced* in the operative Complaint is unjustifiable. Plaintiffs cannot shield the factual support for their allegations from discovery. Pursuant to Rule 26(b)(1), Defendants are entitled to obtain discovery regarding "*any* nonprivileged matter that is *relevant to any party's claim or defense* and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). Clearly, Plaintiffs' factual support for the allegations in their own Complaints is highly relevant to Plaintiffs' claim and Defendants' defense. For example, if Plaintiffs possess documents not expressly cited in Plaintiffs' Complaints that discuss or allege that a certain producer participated (or did not participate) in wrongdoing related to Broiler supply or pricing, or discuss or allege producers' use of Agri Stats data, those documents would be highly relevant to this action as they relate to the core allegations of Plaintiffs' Complaints. There is no compelling relevance or proportionality basis on which to withhold these documents and other documents demonstrating the factual support for Plaintiffs' allegations.

To the extent any document responsive to Request No. 28 is withheld as privileged, Defendants are entitled to a log of responsive documents withheld on those grounds consistent with the forthcoming Order Regarding Production of Electronically Stored Information and Paper Documents (*see* Dkt. 349, 349-2, 349-3). *See* Instruction No. 4; *see also* Fed. R. Civ. P. 26(b)(5)(A)(ii).

**Response to RFP No. 29**: Request No. 29 seeks "documents and communications evidencing or concerning any damages You claim to have suffered as a result of the conduct alleged in the



Complaints . . . ." Plaintiffs objected that the request was overly broad, unduly burdensome, premature, and that the information requested was protected by privilege. Plaintiffs, thus, refused to produce responsive documents but expressed willingness to meet and confer. Defendants are entitled to receive all documents in Plaintiffs' possession that relate to their and putative class members' claimed damages. Plaintiffs must withdraw their improper objections.

**Response to RFP No. 32:** Request No. 32 seeks "[a]ll documents concerning the circumstances under which You became involved in the Broiler Chicken Litigation." In response, Plaintiffs objected that the requested information was protected by privilege and refused to produce any documents.

Plaintiffs' wholesale objection to produce any documents responsive to this request would not withstand the Court's scrutiny. It defies reason that Plaintiffs could maintain that *every single* document or communication concerning the "circumstances under which [Plaintiffs] became involved in the Broiler Chicken Litigation" was "primarily legal in nature" and "created in anticipation of litigation." It is similarly unlikely that *every* responsive document or communication involved sought legal advice from Plaintiffs' counsel or communicated legal advice from Plaintiffs' counsel to Plaintiffs.

Plaintiffs must withdraw their wholesale objection to Request No. 32, and produce responsive documents. To the extent any document responsive to Request No. 32 is withheld as privileged, Defendants are entitled to a log of responsive documents withheld on those grounds consistent with the forthcoming Order Regarding Production of Electronically Stored Information and Paper Documents (*see* Dkt. 349, 349-2, 349-3). *See* Instruction No. 4; *see also* Fed. R. Civ. P. 26(b)(5)(A)(ii).

**Response to RFP No. 34:** Request No. 34 seeks "documents relating to Your engagement or retention of counsel in the Broiler Chicken Litigation . . . ." Plaintiffs objected that the requested information was protected by privilege and refused to produce any documents responsive to the request. To the extent any document responsive to Request No. 34 is withheld as privileged, Defendants are entitled to a log of responsive documents withheld on those grounds consistent with the forthcoming Order Regarding Production of Electronically Stored Information and Paper Documents (*see* Dkt. 349, 349-2, 349-3). *See* Instruction No. 4; *see also* Fed. R. Civ. P. 26(b)(5)(A)(ii).

**Response to RFP No. 36:** Request No. 36 seeks "documents relating to Your communications with third parties regarding the Broiler Chicken Litigation . . . ." Plaintiffs objected that the requested information was not relevant, in Defendants' possession, custody, or control, and protected from disclosure by privilege. Plaintiffs, thus, refused to produce responsive documents but expressed willingness to meet and confer. Defendants are entitled to receive documents in Plaintiffs' possession that relate to putative class counsel's communications with third parties



who may qualify as class members regarding this litigation, as this information is directly relevant to the class certification inquiry, including adequacy. Plaintiffs must withdraw their improper objections and produce the requested documents.

*     *     *

Defendants request that Plaintiffs amend their responses accordingly or respond to this letter on or before July 21, 2017. To the extent any document responsive to Defendants' requests is withheld as privileged, Defendants are entitled to a log of responsive documents withheld on those grounds consistent with the forthcoming Order Regarding Production of Electronically Stored Information and Paper Documents (*see* Dkt. 349, 349-2, 349-3). *See* Instruction No. 4; *see also* Fed. R. Civ. P. 26(b)(5)(A)(ii). This request is without prejudice to Defendants' right to meet and confer regarding additional deficiencies in Plaintiffs' responses. We look forward to your prompt response.

Very truly yours,

Robert P. Davis
Mary M. Gardner

cc: Counsel of Record for Defendants

# EXHIBIT E



600 MASSACHUSETTS AVE., NW   WASHINGTON, DC 20001
T 202.344.4000   F 202.344.8300   www.Venable.com

Robert P. Davis

**T 202.344.4514**
**F 202.344.8300**
rpdavis@venable.com

August 22, 2017

**VIA EMAIL**

Counsel for Commercial and Institutional Indirect Purchaser Plaintiffs
*In re Broiler Chicken Antitrust Litigation*
Case No. 1:16-cv-08637

     Re:    *In re Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-08637 (N.D. Ill.)

Dear Counsel:

       On July 26, 2017, Defendants and the Commercial and Institutional Indirect Purchaser Plaintiffs [1] ("CIIPPs") participated in a Meet and Confer teleconference to discuss CIIPPs' objections and responses to Defendants' First Set of Requests for Production ("RFPs" or "Requests"). This letter memorializes Defendants' understanding of the discussion. We incorporate herein the points addressed in our June 30, 2017 letter to CIIPPs and reserve our right to address additional issues.

       ***The Parties Agreed to the Definition of "Relevant Period":***  The parties are in agreement that except where otherwise specified and agreed to by the parties in writing, they may limit the processing of discoverable information to that which was created, modified, sent, or received between January 1, 2007 and September 2, 2016. (*See* Dkt. 349-2, § V.A.1.)

       ***CIIPPs Agreed to Produce Documents Regarding Non-Defendant Purchases:***  CIIPPs agreed to produce documents about purchases related to Broilers that originated with entities other than the Defendants. Pursuant to this agreement, the parties have resolved this dispute.

       ***CIIPPs Refuse to Produce Downstream Data:***  CIIPPs' reaffirmed their position that they will not collect or produce "Documents about [CIIPPs'] 'downstream' use of [B]roilers" (General Objection No. 10). We understand CIIPPs do not believe that they resell "Broilers," as that term is defined in their operative complaint. *See* Dkt. No. 253 at ¶ 84. However, regardless of whether CIIPPs resell Broilers, CIIPPs' own demand for Broilers is a function of their downstream sales, which renders those downstream sales relevant to the market definition and substitutability of

---

[1] The term "CIIPPs" as used throughout this letter, refers to Plaintiffs Sargent's Restaurant and Lounge; Wildwood Tavern LLC; Don Chavas Mexican Restaurant, Inc.; Bodega Brew Pub, Inc.; Sullott Corp.; Chicken Joe's, LLC; Eat This, Inc.; Alpine Special Treatment Center, Inc.; Tennis Burns, LLC, dba Alabama Joe's; Alabama Joe's 2, Inc., dba Alabama Joe's; Tani Sushi Bistro, LLC; and France 44 Foods, Inc.



Broilers CIIPPs allege in their Complaint (*see, e.g., id.,* at ¶¶ 287-88). CIIPPs have made clear in their requests to Defendants that they believe that the requested downstream data is relevant (*see* CIIPPs' RFP No. 6—"All Documents concerning Broiler pricing behavior at each level of distribution, including the extent that costs were passed on."). Thus, as we made clear in our June 30, 2017 letter, and as we reaffirmed during the teleconference, it is our position that downstream data related to CIIPPs' demand for Broilers, including their sales of products and services incorporating Broilers, is relevant and necessary for us to understand and defend against CIIPPs' allegations related to the substitutability of Broilers, among other reasons.

As we reasserted during the teleconference, downstream data is also essential to assess the damages CIIPPs claim they have incurred as a result of the Defendants' challenged conduct. Defendants incorporate the arguments from our June 30, 2017 letter regarding actual damages and the "pass on" defense allowed under numerous state antitrust laws. To reiterate, documents relating to CIIPPs' "actual damages" are directly relevant to CIIPPs' state law claims. *See, e.g.,* Mich. Comp. L. Ann. § 445.778(2). And, the extent to which CIIPPs passed on any alleged illegal overcharge is directly relevant to Defendants' defense against certain of CIIPPs' state law claims, as well. *See, e.g.,* D.C. Code § 28-4509(b). Thus, the requested downstream data is highly relevant to Defendants' defense and proportional to the needs of the case.

CIIPPs also argued that, even if downstream data is relevant, collection could prove burdensome because "every [CIIPP] is different." As CIIPPs implicitly recognize by that statement, downstream data plays a key role in certain class certification issues, including typicality, adequacy, and predominance, and we are entitled to this information. *See, e.g., Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.,* 247 F.R.D. 253, 267-68 (D. Mass. 2008); *In re Graphics Processing Units Antitrust Litig.,* 253 F.R.D. 478, 507 (N.D. Cal. 2008).

CIIPPs' refusal to produce downstream data is unfounded, and we again request that CIIPPs withdraw your objections and agree to produce this information.

### *CIIPPs Agreed to Confer Internally and Report Back to Defendants on the Following Issues:*

Upon completion of your internal review of each of the Requests listed below, please provide us with your revised position, so that the parties may continue to meaningfully confer regarding each Request.

a. **Excluded Broilers.** As part of Request Nos. 6 through 20, we requested information related to CIIPPs' purchases and sales of "Excluded Broilers," defined to mean "chickens raised for meat consumption to be slaughtered before the age of 13 weeks that are grown, processed, and sold according to halal, kosher, free range or organic standards"—in other words, Broilers that CIIPPs have elected to exclude from their product definition in the operative complaint. *See, e.g.,* Pls.' Compl. ¶ 84, Dkt. No. 253. You agreed to consider producing information related to Excluded Broilers in response to specific document



requests. As we understand the outcome of the discussion, CIIPPs will report their position to us after internal review.

b. **Response to RFP No. 5.** Request No. 5 seeks "all of Your annual reports or summaries of business conducted." CIIPPs agreed to confer internally to determine if such information exists and report back to us accordingly.

c. **Response to RFP No. 8.** Request No. 8 seeks all "documents reflecting or concerning any negotiations for the purchase of Broilers and Excluded Broilers by You, regardless of whether or not the purchase occurred . . . ." CIIPPs agreed to confer internally to determine if such information exists and report back to us accordingly.

d. **Response to RFP No. 18.** Request No. 18 seeks all "documents reflecting or concerning Your reactions or responses to changes in the price of Broilers . . . ." CIIPPs agreed to confer internally to determine if such information exists and report back to us accordingly.

e. **Responses to RFP Nos. 23, 24, and 35.** Request Nos. 23, 24, and 35 seek information related to CIIPPs' communications with their competitors and meetings CIIPPs attended with their competitors. We reiterated that this information is relevant to understanding CIIPPs' association-meeting-related allegations, and we are entitled to receive it. CIIPPs maintain that they do not believe any Named Plaintiff, except one who may have been a member of a Restaurant Association, has been a member of a trade association during the Class Period. CIIPPs agreed to confer internally and confirm your assertion.

f. **Response to RFP No. 26.** Request No. 26 seeks documents and communications regarding the purchase or potential purchase and the price of non-Broiler products. We reiterated that this Request seeks documents necessary to show the substitutability of Broilers through other meat products and meat substitutes. CIIPPs agreed to confer internally to determine if such information exists and what the burden of producing evidence of purchases or potential purchases of potential substitutes would be.

g. **Response to RFP No. 28.** Request No. 28 seeks "all documents and communications relating to the allegations of the Complaints . . . ." We confirmed that we are not requesting privileged documents, simply documents in CIIPPs' possession, custody, or control *relevant* to the allegations in the complaint beyond those that are *expressly referenced* in the complaint. In particular, we are entitled to receive any documents CIIPPs have that cast doubt on the allegations in the complaint. CIIPPs raised concerns that the Request is overly broad and, because some allegations in the complaint relate to allegations about the identity of each CIIPP, could encompass all documents relating to an individual CIIPP. We agree that CIIPPs may limit your production of documents regarding your identity to documents sufficient to show your identity. We maintain, however, that CIIPPs must



**VENABLE** LLP

600 MASSACHUSETTS AVE., NW    WASHINGTON, DC 20001
T 202.344.4000  F 202.344.8300  www.Venable.com

Counsel for Commercial and Institutional Indirect Purchaser Plaintiffs
August 22, 2017
Page 4

produce all documents in your possession, custody, or control that are relevant to the other allegations in the operative complaint. CIIPPs agreed to confer internally to determine if such non-privileged information exists.

h. **Response to RFP No. 29.** Request No. 29 seeks "documents and communications evidencing or concerning any damages You claim to have suffered as a result of the conduct alleged in the Complaints . . . ." CIIPPs agreed to confer internally to determine if such non-privileged information exists.

### *Defendants Agreed to Confer Internally and Report Back to CIIPPs on the Following Issues:*

a. **Response to RFP Nos. 32 and 36.** Request No. 32 seeks "[a]ll documents concerning the circumstances under which You became involved in the Broiler Chicken Litigation." Request No. 36 seeks "documents relating to Your communications with third parties regarding the Broiler Chicken Litigation . . . ." We clarified that, as part of these Requests, we are seeking documents that relate to putative class counsel's communications with third parties who may qualify as class members regarding this litigation. Contrary to CIIPPs' contentions, there is no requirement in the Seventh Circuit that allegations of improper conduct be made before we may request production of CIIPPs' counsel's communications with third parties who may qualify as class members. Additionally, to the extent CIIPPs maintain that the requested documents are privileged, you bear the burden of establishing that a privilege applies. *See, e.g., Searcy v. eFunds Corp.*, No. 08 C 985, 2009 WL 562596, at *3 (N.D. Ill. Mar. 5, 2009).

b. **Response to RFP No. 34.** Defendants withdraw Request No. 34.

*    *    *

We look forward to CIIPPs' response on the items you agreed to look into.

Very truly yours,

Robert P. Davis
Mary M. Gardner

cc:    Counsel of Record for Defendants

# EXHIBIT F



600 MASSACHUSETTS AVE., NW   WASHINGTON, DC 20001
T 202.344.4000   F 202.344.8300   www.Venable.com

Robert P. Davis

**T 202.344.4514**
**F 202.344.8300**
rpdavis@venable.com

August 22, 2017

**VIA EMAIL**

Counsel for Direct Purchaser Plaintiffs
*In re Broiler Chicken Antitrust Litigation*
Case No. 1:16-cv-08637

    Re:  *In re Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-08637 (N.D. Ill.)

Dear Counsel:

    On July 28, 2017, Defendants and the Direct Purchaser Plaintiffs[1] ("DPPs") participated in a Meet and Confer teleconference to discuss DPPs' objections and responses to Defendants' First Set of Requests for Production ("RFPs" or "Requests"). This letter memorializes Defendants' understanding of the discussion. We incorporate herein the points addressed in our June 30, 2017 letter to DPPs and reserve our right to address additional issues.

    ***DPPs Refuse to Produce Downstream Data***: DPPs maintain their position that the issue of whether downstream data is discoverable is pending before the Court, and the parties should await the Court's decision before engaging in additional discussion regarding this issue. As we made clear in our June 30, 2017 letter, and as we reaffirmed during the teleconference, it is Defendants' position that the "downstream" information we seek, including, but not limited to, DPPs' sales and inventory information, is directly relevant to the class certification inquiry under Rule 23, including typicality and adequacy. *See, e.g.*, *Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 267-68 (D. Mass. 2008); *In re Urethane Antitrust Litig.*, 237 F.R.D. 454, 464 (D. Kan. 2006).

    Further, downstream data relates to, among other things, DPPs' uses for Broilers and changes in supply, demand, and pricing for DPPs' sales of Broilers. It is also directly relevant to Plaintiffs' purported market definition, and whether indirect purchaser plaintiffs paid any alleged overcharge. Although we maintain that DPPs' refusal to produce downstream data is unfounded, we will await the Court's ruling and reserve all rights to continue to contest DPPs' unwarranted refusal to produce this information.

    ***DPPs Refuse to Produce Documents Responsive to RFP No. 24***: Request No. 24 seeks documents "sufficient to show all trade associations to which You belong and all trade association meetings or conferences that You have attended." DPPs similarly maintain their position that

---

[1] The term "DPPs," as used throughout this letter, refers to Plaintiffs Barters International LLC; Cedar Farms Co., Inc.; Maplevale Farms, Inc.; John Gross & Co., Inc.; Ferraro Foods, Inc.; Ferraro Foods of North Carolina, LLC; and Joe Christiana Food Distributors, Inc.



whether information related to DPPs' membership in trade associations is discoverable is pending before the Court, and the parties should await the Court's decision before engaging in additional discussion regarding this issue. We confirmed that we are seeking documents related to DPPs' industry trade association membership and attendance at association meetings that are comparable to Defendants' membership in and attendance at industry trade association meetings. Evidence of DPPs' own attendance at comparable industry events is relevant to refute DPPs' unsupported claims that Defendants must have communicated with each other about an unlawful agreement at trade association events. *See In re Domestic Drywall Antitrust Litig.*, No. 2:15-cv-1712, 2016 WL 4414640, at *4-5 (E.D. Pa. Aug. 18, 2016) (compelling indirect purchasers to produce documents concerning their attendance at trade association events); *In re Urethane Antitrust Litig.*, No. 04-MD-1616, 2010 WL 5287675, at *2, 5-6 (D. Kan. Dec. 17, 2010) (compelling plaintiffs to produce their communications with competitors because such discovery was "relevant to counter plaintiffs' assertions that contacts with competitors [or] attendance at trade association meetings . . . are evidence of conspiracy"). Although we maintain that DPPs' refusal to produce the requested information is unfounded, we will await the Court's ruling and reserve all rights to continue to contest DPPs' unwarranted refusal to produce this information.

**DPPs Agreed to Produce Documents Responsive to the Following Requests:**

**RFP No. 31.** Request No. 31 seeks "All documents concerning the circumstances under which You became involved in the Broiler Chicken Litigation." DPPs agreed to produce all non-privileged documents responsive to this request. Pursuant to this agreement, the parties have resolved this dispute.

**RFP No. 33.** Request No. 33 seeks "documents relating to Your engagement or retention of counsel in the Broiler Chicken Litigation . . . ." DPPs agreed to produce all non-privileged documents responsive to this request. Pursuant to this agreement, the parties have resolved this dispute.

Very truly yours,

Robert P. Davis
Mary M. Gardner

cc:     Counsel of Record for Defendants