# GUSTAFSON GLUEK PLLC

### ATTORNEYS AT LAW

#### CANADIAN PACIFIC PLAZA
#### 120 SOUTH SIXTH STREET, SUITE 2600
#### MINNEAPOLIS, MINNESOTA 55402
#### TEL (612) 333-8844 • FAX (612) 339-6622

#### DANIEL C. HEDLUND
DHEDLUND@GUSTAFSONGLUEK.COM

October 30, 2017

<u>**VIA ECF**</u>
Hon. Magistrate Judge Jeffrey T. Gilbert
Chambers 1336
Everett McKinley Dirksen U.S. Courthouse
219 South Dearborn Street
Chicago, IL 60604

> Re:   *In Re Broiler Chicken Antitrust Ligitation*, Case No. 1:16-cv-08637;
> CIIP Plaintiffs' Status Report re: Their Rule 34 Responses and Responding
> to Defendants' Letter to the Court (ECF 506)

Dear Judge Gilbert:

This case centers on Defendants' efforts to artificially raise and maintain the price of

Broilers (chicken that Defendants sold to direct purchasers) through unlawful supply restriction

agreements. Direct purchasers re-sell Broilers to other purchasers down the distribution chain.

One branch of that distribution chain ends at the Commercial and Institutional Indirect Purchaser

(CIIP) Plaintiffs. The named CIIP Plaintiffs are restaurants, institutions, and other food-service

operations that use Broilers to prepare meals, such as an enchilada dinner, a fried chicken

sandwich, or a barbecue basket, to serve to their customers and clients. The named CIIP

Plaintiffs do not sell (or re-sell) Broilers.[1]

---

[1]     Broilers are "chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, raw or cooked, whole or parts, or as a meat ingredient in a value-added product, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards." *ECF 253* ¶ 84. Specifically excluded from both the CIIP Plaintiffs' and EUCPs' claims "are purchases of value added products . . . not manufactured, supplied or processed by Defendants, or

In this Status Report, the CIIP Plaintiffs respond to the October 16 letter that Defendants sent to the Court regarding the CIIP Plaintiffs' Rule 34 responses and objections and the parties' meet and confers about them *(ECF 506)* ("Letter").

### 1. <u>No Ripe Discovery Dispute Involving CIIP Named Plaintiffs' Documents.</u>

CIIP Plaintiffs agree with Defendants' statement that no issue is ripe for briefing or decision with respect to the Rule 34 Requests for Production served on the CIIP Plaintiffs *(ECF 506 at 2-3, 5)*. As Defendants acknowledge (and have insisted), document discovery has not begun; likewise, the relevant discovery in the case may become more focused after the Court rules on the motions to dismiss. CIIP Plaintiffs agree with Defendants' statement that the parties "may be close to reaching agreement" regarding the issues briefed in the Letter. *(ECF 506 at 1, n.2)*.

But Defendants' Letter ignores another issue that goes to ripeness. The CIIP Plaintiffs serve and sell prepared food; the CIIP Plaintiffs are end purchasers of Broilers. The CIIP Plaintiffs do not sell Broilers; instead, the CIIP Plaintiffs purchase Broilers and do a variety of things with them, none of which are relevant to the claims or defenses in this action *(Exh. A at 2-3, 5-6; Exh. B)*. The CIIP Plaintiffs' damages claim will not include any Broiler that any member of the CIIP Plaintiff classes re-sold as a Broiler.[2] This distinction is important for several reasons.

- No named CIIP Plaintiff sold Broilers, including to the End User Consumer Plaintiffs (EUCPs). The CIIP and EUCP actions involve distinct Broilers; there is no overlap

---

otherwise not under the control of Defendants." *Id.* ¶ 362 (CIIP Complaint); *ECF 255* ¶ 385 (EUCP Complaint).

[2] If the CIIP Plaintiff class definitions needs to be revised, or if the operative complaint needs to be amended to reflect these claims more accurately, then the CIIP Plaintiffs will make those changes *(see Exh. A at 3)*.

between the damages that will be sought, and no pass-through from the CIIP

Plaintiffs (and classes) will be necessary for calculating damages suffered by the

EUCP classes. Indeed, such pass-through calculation would be impossible given that

the **named CIIP Plaintiffs sold no Broilers**.

- As far as counsel for CIIP Plaintiffs are aware, no consumer has sued Defendants (or

  anyone else) to collect for the same supra-competitive overcharges paid by CIIP

  Plaintiffs for prepared food purchases or otherwise. Simply put, there is no plaintiff

  downstream from the CIIP Plaintiffs in this or any other action.

- CIIP Plaintiffs' class-wide claims do not seek damages for any Broiler that was re-

  sold to a downstream purchaser.

Nothing here is ripe for an Order to Compel.

2.  **No Basis for "Downstream" Discovery from the CIIP Named Plaintiffs.**

Instead of engaging the facts on whether there are any relevant transactions downstream

from the CIIP Plaintiffs, Defendants' Letter offers a murky description of what downstream

discovery is at issue. Defendants suggest that the CIIP Named Plaintiffs' downstream sales will

be relevant to the EUCPs' damages *(ECF 506 at 4)*, but the EUCPs are not suing on any

restaurant purchases (or any other purchases from the CIIP Plaintiffs). And Defendants cite

several cases *(ECF 506 at 4)*, but none of them are like this one, given that the CIIP Plaintiffs

have no downstream sales of the products (Broilers) that were the subject of the alleged

conspiracy, and given that no one who consumed the CIIPs' goods and services has filed a

lawsuit against the Defendants (or anyone else) based on their transactions with the CIIP

Plaintiffs.

Defendants advance several specific arguments, but none support an Order to Compel the CIIP Plaintiffs to produce sales data or any other information about their Broiler use.

      **a.**   **State Law.**  Defendants assert that downstream discovery from the CIIP Plaintiffs is relevant to proving "actual injury" under state law *(ECF 506 at 4)*. However, the CIIP Plaintiffs were injured when they purchased Broilers at supra-competitive prices, such prices having been caused by Defendants' supply restriction conspiracy that imposed an artificial overcharge on the Broiler market *(see ECF 253, ¶¶ 372, 379)*. Nothing downstream from the CIIP Plaintiffs changes that injury. And unlike the plaintiffs in the cases cited by the Defendants, the CIIP Plaintiffs are not claiming loss of profits or lost sales as damages. Defendants also posit that CIIP downstream discovery is relevant if the CIIP Plaintiffs passed through overcharges "to other plaintiffs" *(ECF 506 at 4)*, but no plaintiff is suing based on a purchase from a CIIP Plaintiff.

      **b.**   **Class Certification.** The Letter obliquely suggests that CIIP downstream discovery will matter for class certification *(ECF 506 at 4)*, but that point is so undeveloped that it is not helpful at all. CIIP Plaintiffs still have no clarity as to how their use of Broilers is relevant to any class certification inquiry *(see ECF 506, Ex. A at 2-3)*.

      **c.**   **Market Definition.** Defendants suggest that the CIIP downstream discovery is relevant to market definition and assert that Plaintiffs' customers' price sensitivity *may* be important *(ECF 506 at 4)*. But Defendants fail to offer any explanation of relevance in this connection. Defendants hint at an "other proteins" argument *(id.)*, but that is entirely a distraction from whether the Defendants violated antitrust and consumer protection laws by colluding on Broiler supply and pricing. Discovery regarding steak dinners (or cheeseburger baskets or pulled

pork sandwiches) or Plaintiffs' annual sales figures is far beyond anything that is proportional to the needs of this case.

   **d. <u>Burden Weighed Against Relevance.</u>** The Letter suggests that there is a low burden to producing the requested documents *(ECF 506 at 4)*.  However, this line of argument entirely ignores that Plaintiffs burden is entirely outweighed by the lack of any relevance.

   3. <u>**No Point to "Trade Association" Discovery from the CIIP Named Plaintiffs.**</u>

   Defendants' Letter discusses trade associations with a "sauce-for-the-goose-and-gander" approach *(see ECF 506 at 5-6)*; but that discussion ignores the actual allegations of this case. The CIIP Plaintiffs allege that Defendants used Broiler-related industry association events as opportunities to coordinate and collude as part of, and in furtherance of, their conspiracy to restrict Broiler supply and manipulate Broiler prices *(see, e.g., ECF 253, ¶ 305)*.

   As Defendants state, one of the CIIP Plaintiffs may have been a member of a restaurant association *(see ECF 506 at 5)*. Yet no restaurant or food-service trade association has been linked to the unlawful conspiracy alleged in this case. The two markets (Broilers and restaurants) are completely different. A few large companies dominate Broiler production and the leading poultry trade organizations serve those large production companies *(ECF 253, ¶¶ 302-312)*. There is no comparable group or organization for the U.S. restaurant market, which has hundreds of thousands of businesses. In any event, the parties have not reached impasse on this trade association issue *(ECF 506 at 5, n.5)*, and Defendants had no reason to bring this issue to the Court's attention at this juncture.

## Conclusion

Defendants' Letter does not raise any dispute that requires the Court's attention now, and nothing there justifies an Order against the CIIP Plaintiffs.

Respectfully submitted,

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua R. Rissman
Brittany N. Resch
**GUSTAFSON GLUEK PLLC**
220 South Sixth Street, Ste. 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsongluek.com

Steven N. Williams
Mark F. Ram
Joyce M. Chang
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
swilliams@cpmlegal.com
mram@cpmlegal.com
jchang@cpmlegal.com

*Lead Counsel for the Commercial and*
*Institutional Indirect Purchaser Class*

Kenneth A. Wexler
Thomas A. Doyle
**WEXLER WALLACE LLP**
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
kaw@wexlerwallace.com
tad@wexlerwallace.com

*Liaison Counsel for the Commercial and*
*Institutional Indirect Purchaser Plaintiff*
*Class*

cc:     All Counsel of Record via ECF

**Exhibit A**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION* | Case No. 1:16-cv-08637 |
| This Document Relates To: | |
| All Actions | |

## THE COMMERCIAL AND INSTITUTIONAL
## INDIRECT PURCHASER PLAINTIFFS'
## RESPONSE TO FOOTNOTE 16
## OF THE JOINT STATUS REPORT *(ECF 415)*

Pursuant to the Court's Order dated June 20, 2017, the Commercial and Institutional

Indirect Purchaser Plaintiffs (CIIPs) submit this short response to Footnote 16 in the Defendants'

portion of a recent Joint Status Report *(ECF 415)*. In that footnote, the Defendants argued the

following *(ECF 415 at 43, n.16)*:

> "CIIPs also object to, and refuse to provide, downstream discovery, but they now
> represent that none of the CIIPs sell Broilers. *See Exh. G, 6/13/17 Ram Letter to
> Suggs.* This representation is curious, since a major basis for the appointment of
> counsel for End User Consumer Plaintiffs in this case was the apparent conflict of
> interest between resellers and end-users. *See e.g., Dkt. No. 218 at 4* ("Three cases
> were filed on behalf of indirect purchaser resellers, such as small grocery stores
> and restaurants, which purchase the broilers from distributors and resell them
> 'Resellers')."): *See also id. at 8* ("Consumers will want to maximize their
> damages by proving that nearly 100% of the overcharges were passed through to
> them. Resellers will want to show that they absorbed most of the overcharges and
> passed through very little.")"

The Defendants also attached a June 13th Letter that Counsel for the CIIPs sent in connection

with a discovery inquiry *(ECF 415 at Exh G, which is also Exh. 1 to this memorandum)*. While

the Defendants have not asked the Court for a ruling that relates to downstream discovery from

the CIIPs, the CIIPs offer the following discussion of the Defendants' Footnote 16.

To be clear, and as we explain below, the CIIP Named Plaintiffs do not resell Broilers.

1.     **The CIIP Named Plaintiffs Do Not Sell Broilers.** As the attached June 13th Letter advised the Defendants, the CIIP Named Plaintiffs are restaurants, foodservice operations, and institutions that buy Broilers from wholesalers (such as U.S. Foods or Sysco), and then transform the Broilers into prepared food (such as a barbecue chicken dinner or a chicken enchilada plate), and then serve that prepared food (such as to patrons at their restaurants or residents of their treatment center). The CIIP Named Plaintiffs do not resell Broilers, as that term is used in this case, because "Broilers" excludes all value-added products that were manufactured, supplied or processed by anyone other than the Defendants. *(See ECF 253 at ¶¶ 84, 362; ECF 255 at ¶¶ 107, 385.)* As soon as one of the CIIPs cooks a Broiler, it ceases to be a Broiler. None of the CIIP Named Plaintiffs buys Broilers and then sells them in an unchanged form. *(See Exh. 1, attached hereto)*.

2.     **The End Users Are Not Suing On Food Prepared by the CIIPs.** None of the End User Consumer Plaintiffs are suing to recover damages on any food that was prepared by the CIIP Named Plaintiffs. Instead, the End User Consumer Plaintiffs are suing to recover damages they incurred when buying Broilers, and the End User Consumer Plaintiffs are excluding any purchases of products that were changed by anyone in the distribution chain after the Defendants' sold them. *(See ECF 255, ¶¶ 107, 385.)* The End User Consumer Plaintiffs will not be proving any pass-through that involves the CIIP Named Plaintiffs, because the CIIP Named Plaintiffs only sold prepared food. Because the CIIP Named Plaintiffs do not sell Broilers, there are no Broiler purchases or Broiler sales that are "downstream" from the CIIP Named Plaintiffs.

3.    **No One Else Is Suing on Food Prepared by the CIIPs.** No plaintiff has filed a lawsuit seeking damages on prepared food purchased from the CIIP Named Plaintiffs or from any CIIP class member.

4.    **The CIIP Class Definition.** In this litigation, the CIIP Named Plaintiffs intend to represent a class of purchasers who are similarly situated to themselves. To the extent necessary, the CIIPs will narrow their class definition to reflect the proof. Based on what we have learned in the case so far, the CIIP Named Plaintiffs intend to represent only a class of purchasers that suffered damages when they bought Broilers and then did not sell those Broilers in unchanged form. We will offer that narrowed class definition either at class certification or an earlier sensible time. And because this narrower class definition will not prejudice the Defendants, we do not anticipate any objection.

5.    **Footnote 16 Does Not Fairly Describe the CIIP Named Plaintiffs.** Thus, Footnote 16 in the Joint Status Report does not provide a complete or accurate picture of where the CIIP Named Plaintiffs fit in the market for chicken (or distribution chain for Broilers) in the United States. Indeed, Footnote 16 suggests some inconsistency by comparing the CIIPs' June 13th Letter *(Exh. 1, hereto)* to a brief that the End User Consumer Plaintiffs filed last November *(ECF 218)*. The Defendants' suggestion is a distraction: the CIIPs should not be bound by any other person's description of their business operations.

# # # #

For the reasons explained above, the CIIP Named Plaintiffs are not "resellers" of Broilers -- and are not any other type of intermediary -- between the Direct Purchaser Plaintiffs and the End User Consumer Plaintiffs on any transaction that is at issue in this litigation.

Dated: June 23, 2017                    /s/ Thomas A. Doyle

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua R. Rissman
Brittany N. Resch
**GUSTAFSON GLUEK PLLC**
220 South Sixth Street #2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsongluek.com

Joseph W. Cotchett
Steven N. Williams
Joyce M. Chang
Mark F. Ram
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
jcotchett@cpmlegal.com
swilliams@cpmlegal.com
jchang@cpmlegal.com
mram@cpmlegal.com

*Interim Co-Class Counsel on Behalf of the*
*Commercial and Institutional Indirect Purchasers*

Kenneth A. Wexler
Edward A. Wallace
Thomas A. Doyle
**WEXLER WALLACE LLP**
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
kaw@wexlerwallace.com
eaw@wexlerwallace.com
tad@wexlerwallace.com

*Interim Liaison Counsel on Behalf of the*
*Commercial and Institutional Indirect Purchasers*

- 4 -

LAW OFFICES

# COTCHETT, PITRE & McCARTHY, LLP

LOS ANGELES

840 MALCOLM ROAD
BURLINGAME, CALIFORNIA 94010
TELEPHONE (650) 697-6000
FAX (650) 697-0577

NEW YORK

June 13, 2017

<u>Via Email</u>

David H. Suggs
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095

Re:  *In re Broiler Chicken Antitrust Litigation*, No. 1:16-cv-08637 (N.D. Ill.)

Dear David:

I write on behalf of the Commercial and Institutional Indirect Purchaser Plaintiffs ("C&I IPPs") in response to your letter dated June 9, 2017 regarding C&I IPPs' document custodians. Below, I respond to your questions and clarify one point from that letter.

### <u>Fargo Stopping Center, LLC</u>

One point of clarification to your June 9 letter as respects Fargo Stopping Center. After further consultation with Fargo Stopping Center, we learned that Fargo Stopping Center *does not* sell Broilers (as the term is defined in C&I IPPs' operative Third Amended Consolidated Class Action Complaint, ¶ 84, Dkt. 253). The only chicken products sold by Fargo Stopping Center are not Broilers.

In response to your question about Dianne Schatz: C&I IPPs will not add Dianne Schatz as a custodian. She is not likely to have any information relating to Broilers because all of Fargo Stopping Center's relevant documents are in centralized files.

### <u>OneHarvest Corporation</u>

We have further investigated and determined that Jacob Prather is not likely to have information relating to Broilers and C&I IPPs therefore will not add him as a custodian.

### <u>Custodians with Information about C&I IPPs Downstream Use of Broilers</u>

Simply put, none of the C&I IPP plaintiffs sell Broilers. Some C&I IPP Plaintiffs sell prepared chicken made from Broilers (*e.g.*, a chicken dinner), while others use Broilers in their business and have no chicken-related sales. Defendants' requests for production did not seek documents targeted at this category of sales and C&I IPPs will not add custodians with information about these sales of prepared chicken.

C&I IPPs' use of Broilers in selling prepared chicken is irrelevant to this action. Even if there were a case where an indirect purchasers' downstream sales information were relevant – which C&I IPPs do not concede – this is not that case. The "End User Consumer Plaintiffs"

COTCHETT, PITRE & McCARTHY, LLP

David H. Suggs
June 13, 2017
Page 2

(EUCPs) claims are grounded in their purchase of Broilers and not any other non-Broiler chicken product. Because EUCPs *did not* and *could not have* purchased Broilers from any of the C&I IPPs, no member of the EUCP class was actually (or potentially) a downstream purchaser from any of the C&I IPPs. For this reason, Defendants' position, outlined on pages 3 to 4 of your June 9 letter, begins with a false premise, and reliance on the cases there cited is misplaced.

C&I IPPs want to ensure that Defendants are not prejudiced come time for class certification. Accordingly, we remain open to further meet and confer efforts to determine which categories of information Defendants need to meaningfully challenge individual plaintiffs' showing as to typicality and adequacy. We examined the one case Defendants cite on this point, *In re Urethane Antitrust Litig.*, 237 F.R.D. 454 (D. Kan. 2006), and did not find its discussion of the relevance of *direct purchasers'* documents illuminating to C&I IPPs' circumstances.

Sincerely,

Mark F. Ram

Cc:    C&I IPP Interim Lead and Liaison Counsel

## **CERTIFICATE OF SERVICE**

I certify that, on June 23, 2017, I caused a copy of the foregoing document to be served via the Court's ECF system on all Counsel who have appeared in the case.


/s/ Thomas A Doyle

Thomas A. Doyle

**Exhibit B**

LAW OFFICES

LOS ANGELES

COTCHETT, PITRE & McCARTHY, LLP

SAN FRANCISCO AIRPORT OFFICE CENTER
840 MALCOLM ROAD
BURLINGAME, CALIFORNIA 94010
TELEPHONE (650) 697-6000
FAX (650) 697-0577
www.cpmlegal.com

NEW YORK

July 21, 2017

**Via Email Only**

Robert P. Davis
VENABLE LLP
600 Massachusetts Ave., NW
Washington, DC 20001
*rpdavis@venable.com*

      Re:    ***In re Broiler Chicken Antitrust Litigation*, No. 16-cv-08637 (N.D. Ill.)**

Dear Robert:

      I write on behalf of the Commercial and Institutional Indirect Purchaser Plaintiffs ("Plaintiffs" or "C&I IPPs") in response to your letter dated June 30 regarding Plaintiffs' Objections and Responses to Defendants' First Set of Requests for Production.

      As a general matter, Plaintiffs confirm that any documents withheld on the basis of a privilege will be included on a log, subject to the requirements and exclusions of the [Proposed] Order Regarding Production of Electronically Stored Information and Paper Documents, submitted to Judge Gilbert on July 7, 2017, which Plaintiffs anticipate will be entered as an order of the Court.

### Relevant Period

      Consistent with the parties' agreement memorialized in the stipulated ESI Protocol, Plaintiffs will produce documents that were "created, modified, sent, or received between January 1, 2007 and September 2, 2016 unless otherwise specified and agreed to by the parties in writing." Dkt. 349-2, § V.A.1. Plaintiffs' objection that this period is overbroad is not "at odds" with the parties' agreement. As Plaintiffs objected, this production period calls for irrelevant documents outside of the time period for which Plaintiffs currently seek damages. Plaintiffs' production of documents pre-dating their damages claims is without waiver or prejudice to this objection.

### General Objection No. 10

      Plaintiffs disagree with Defendants' assertion that information related to what Plaintiffs did with Broilers after they purchased Broilers (*i.e.* after Plaintiffs allege they suffered antitrust injury) is relevant to this action for a number of reasons. Plaintiffs address each of these reasons in turn below.

### "Actual Damages" and "Pass-On" Defense

Plaintiffs need more information to understand and meaningfully evaluate Defendants' position that: (a) "state laws . . . require a plaintiff to show that it suffered actual damages"; and (b) "these same laws permit a defendant to show that the plaintiff 'passed on' any alleged supra-competitive price[] and, thus, suffered no such injury." June 30 Letter at 2.

Specifically, Plaintiffs ask that Defendants: (1) identify the state laws under which Plaintiffs sue that Defendants contend require Plaintiffs to show that they suffered "actual damages"; (2) for each of those states, provide Defendants' position (with authorities supportive of that position) as to the relevant meaning of the term "actual damages"; (3) identify those "same laws" which "permit" a defense that Plaintiffs "passed-on" their antitrust injury; (4) for each state's law under which Defendants contend a "pass on" defense is available, provide Defendants' explanation and authorities in support of that position; and (5) for each relevant state, authorities supportive of Defendants' position that Plaintiffs bear the burden to show they "did not merely pass on the entire amount of the alleged overcharge." June 30 Letter at 2.

As Plaintiffs previously advised, none of the Commercial and Institutional Indirect Purchaser Plaintiffs sell Broilers, the products at issue in this case. *See* Dkt. 429. Because the C&I IPPs do not sell Broilers, there are no Broiler purchases or Broiler sales that are "downstream" from them. *Id.* As far as C&I IPPs are aware, there is no lawsuit seeking damages for antitrust injury suffered by a consumer of prepared food purchased from a named C&I IPP or from a member of the putative C&I IPP classes that was caused by Defendants' conspiracy to fix and artificially raise Broiler prices.

### Class Certification

Defendants assert that "the 'downstream' information Defendants seek, including but not limited to, Plaintiffs' sales and inventory information, is directly relevant to the class certification inquiry under Rule 23, including typicality, adequacy, and predominance." June 30 Letter at 2. Plaintiffs disagree that anything they did with a Broiler after they purchased it and suffered antitrust injury will be relevant to the Court's inquiry when Plaintiffs move for class certification. What Plaintiffs did after their claims accrued has no bearing on whether their claims are typical of the claims or defenses of the putative classes. Nor does this information have any bearing on whether Plaintiffs will fairly and adequately protect the interests of the classes. And what these Plaintiffs did with the Broilers does not inform the analysis of whether common questions of law and fact predominate over individual ones.

The cases Defendants offer in support of their position are off point. In *Tyco*, the court permitted downstream discovery from direct purchasers to determine whether a "fundamental conflict" existed between distributor and end-user members of a direct purchaser class. *Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 267-68 (D. Mass. 2008). Here, the named C&I IPPs are end-users of Broilers who intend to represent a class of Broiler purchasers that are similarly situated to them. *See* Dkt. 429 at 3.

Reliance on *GPU* is misplaced: courts always consider "downstream" data when analyzing whether anticompetitive overcharges were passed through the distribution chain from direct purchasers to one level of indirect purchasers to the next. *In re Graphics Processing Units*

*Antitrust Litig.*, 253 F.R.D 478 (N.D. Cal. 2008). Here, one strand of the Broilers distribution chain ends at the Commercial and Institutional Indirect Purchaser Plaintiffs and there is no further downstream data to be had.

Citation to *In re Plastic Additives Antitrust Litigation*, 2010 WL 3431837 (E.D. Pa. Aug. 31, 2010), similarly misses the mark. Courts regularly certify classes in cases where members of horizontal price-fixing cartels controlled less than 100% of the relevant market. *See, e.g., In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100 (E.D.N.Y Oct. 15, 2014); *In re Korean Ramen Antitrust Litig.*, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017); *In re Blood Reagents Antitrust Litig.*, 2015 WL 6123211 (E.D. Pa. Oct. 19, 2015); *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 341 (D. Md. 2012).

Plaintiffs do not read anything in the order cited from *In re Urethane Antirust Litig.*, 237 F.R.D. 454 (D. Kan. 2006), that sheds any light into why Plaintiffs' use of Broilers is somehow relevant to class certification in *this* case. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 2010 WL 4916723, at *3 (E.D.N.Y. Nov. 24, 2010) (finding *Urethane* "not persuasive" and its conclusions reached "without explanation"). In *Urethane*, the "court seemed to overlook the fact that the common issues to be resolved, if any, were not in the downstream markets but in the upstream market where the plaintiffs were alleging they were overcharged. The court did not explain how changes in downstream markets would affect the proof on whether the plaintiffs had to pay higher prices because of price-fixing, and thus did not speak to the concern advanced by the defendants here, namely, whether that can be established by common, as opposed to individualized, proof. As a result, the *Urethane* opinion does not provide guidance for resolving the discovery dispute here." *Id.*

### *Fungibility and Substitutability*

Plaintiffs do not believe that that their documents are a relevant or proportional source of information about the fungibility or substitutability of Broilers. Plaintiffs expect that Defendants, as the nation's leading Broilers producers are in the superior position to have and already possess the information necessary to determine the fungibility and substitutability of Broilers.

### *The Broiler Market*

Plaintiffs do not believe that their documents are a relevant or proportional source of information about the Broiler market. Plaintiffs expect that Defendants, as the nation's leading Broiler producers are in the superior position to have and already possess the information necessary to assess the "characteristics and complications of the relevant market." June 30 Letter at 3.

### *Plaintiffs' Buying Power*

Defendants posit that "requests for information related to Plaintiffs' gross sales of Broilers likely would evidence Plaintiffs' buying power. A class action may not be suitable where plaintiff purchasers with different buying power have varying degrees of leverage over the defendants[.]" June 30 Letter at 3. This assertion ignores a couple of key facts: (1) Plaintiffs do

not sell Broilers; and (2) definitionally, Plaintiffs indirectly purchase Broilers and have no dealings with Defendants in which they could have leverage. In any event, the "defense that plaintiffs' economic power could have kept the prices of [a product] down is irrelevant where, as here, the crucial issue is whether there was a conspiracy to fix prices. To suggest that a conspiracy was not as successful as it might otherwise have been because of the plaintiffs' countervailing economic power is absurd. Such an alleged 'economic check' is of no consequence in a price fixing case." *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000) (denying motion to compel downstream discovery).

### Non-Defendant Purchases

To the extent the Requests call for documents about Broiler purchases, Plaintiffs agree to produce documents relating to Broilers originating with entities other than Defendants. Plaintiffs will not withhold from production otherwise responsive documents on the basis that they concern Broilers whose source is not a Defendant in this litigation.

### Excluded Broiler Documents

Plaintiffs disagree with Defendants' assertion, unsupported by any authority, that they are "entitled to explore, through discovery, the basis for Plaintiffs' proposed product and market definition[.]" Further, Plaintiffs do not understand how producing documents about products not at issue in this case would inform that "exploration of the basis."

Plaintiffs fail to comprehend how information about products about which they make no claim could be relevant to whether Plaintiffs' proposed classes are ascertainable, whether Plaintiffs have claims and defenses typical of those classes, and whether Plaintiffs will adequately represent the interests of those classes. If Defendants wish to meet and confer on this topic, Plaintiffs look forward to hearing Defendants' explanation as to the relevance of this information to these class certification factors.

To the extent Defendants need information about Excluded Broilers to determine whether the overcharge Plaintiffs paid was due to other market factors, this information can be obtained from the same source Plaintiffs might obtain it: producers and distributors who sell Excluded Broilers.

### Request No. 5

Plaintiffs fail to see how any "annual reports or summaries of business conducted" are relevant within the meaning of Fed. R. Civ. P. 26. Defendants assert that this information is somehow relevant to the antitrust injury suffered by Plaintiffs. However, the only information relevant to the antitrust injury suffered by Plaintiffs concerns the supra-competitive prices that they paid for Broilers. Annual reports and summaries of the business conducted by Plaintiffs shed no light on the inquiry into the antitrust impact experienced by Plaintiffs, which impact happens when Plaintiffs purchased Broilers. Because these documents are not relevant to this case, their production is unduly burdensome and not proportional to the needs of this action.

### Request No. 8

Defendants take issue with Plaintiffs' refusal to produce documents relating to Broiler sales that never took place. An unconsummated deal for the purchase of Broilers is irrelevant to Plaintiffs' claims. Plaintiffs allege that they suffered antitrust injury when they purchased

Broilers at supra-competitive prices that were caused by Defendants' conspiracy to fix the price of Broilers. It is no defense to say, "Plaintiffs should have, or could have, negotiated a price for Broilers that would have been unaffected by Defendants' conspiracy."

Defendants, without elaboration or the support of any authority, assert that documents relating to negotiations for a sale that never happened are relevant to the "market(s) for Broilers (particularly the demand for Broilers), the putative antitrust injury alleged, and class certification issues." June 30 Letter at 5. Plaintiffs disagree. The "factors that influence Plaintiffs' decision and decision-making process when deciding whether to purchase Broilers" are not relevant to the inquiry of determining market demand for Broilers; market demand for Broilers will be determined from a broad range of sales data from Defendants and Broilers distributors, not Plaintiffs. And whatever factors lead any given Plaintiff to purchase Broilers are irrelevant to whether Plaintiffs paid supra-competitive prices for Broilers (and suffered antitrust injury). Likewise, the "factors" that led to any of the Plaintiffs' Broilers' purchases are not relevant to the class certification requirements in Fed. R. Civ. P. 23, whichever one(s) Defendants have in mind.

### Request No. 18

Plaintiffs are willing to meet and confer to discuss the relevance and scope of the documents sought by Request No. 18. Plaintiffs note that they do not understand the following statement: "Defendants are entitled to discovery regarding how Plaintiffs responded to price changes, especially to the extent Plaintiffs attributed increasing prices to high input costs or production decreases in response to external events." June 30 Letter at 5.

### Request Nos. 23, 24, & 35

Defendants failed to address any of Plaintiffs' objections to Requests Nos. 23, 24, and 35, other than that the Requests seek irrelevant information. Plaintiffs are not persuaded that their "communications with competitors and meetings Plaintiffs attended with their competitors" are relevant to this case. *See* June 30 Letter at 5. While Defendants are entitled to refute Plaintiffs' allegations that Defendants' colluded at trade association events with evidence that "attendance at industry events is legitimate and innocuous" (*id.*), Plaintiffs, who are differently situated in the Broilers distribution chain, are not a proper source of evidence relevant to this defense.

The two cases Defendants cite are unavailing. Unlike the plaintiffs in *Drywall* who alleged defendants' attendance at trade association events was "inherently improper," Plaintiffs here allege that Defendants actually engaged in collusive acts in furtherance of the conspiracy at, and during, trade association evens. *See In re Domestic Drywall Antitrust Litig.*, 2016 WL 4414640, at *4 (E.D. Pa. Aug. 16, 2016). Thus, the logic applied by the *Drywall* court does not apply to the circumstances of this case because there is no allegation that Defendants' mere attendance at trade association events was "inherently improper."

Similarly inapposite were the circumstances presented in *In re Urethane Antitrust Litigation*, where the court compelled direct action plaintiffs to produce "plaintiffs' communications with competitors that may indicate anticompetitive conduct by plaintiffs[.]" 2010 WL 5287675, at *5 (Dec. 17, 2010). Here, there is no plausible suggestion of any parallel anticompetitive conduct by the Commercial and Institutional Indirect Purchaser Plaintiffs.

### Request No. 26

Plaintiffs look forward to meeting and conferring with Defendants to discuss Plaintiffs' objections to this Request and the "number of important issues in this case" that documents related to Plaintiffs' non-Broiler poultry purchasers are "directly relevant." June 30 Letter at 6.

### Request No. 28

Plaintiffs' agreement to produce non-privileged documents referenced in their operative Complaint represents a reasonable compromise to Defendants' overbroad, unduly burdensome, and disproportionate request for "*all* documents and communications *relating to* the allegations of the Complaints[.]" Note the Requests use the term "relating to" in "the broadest possible sense and mean, in whole or in part, addressing, analyzing, constituting, containing, commenting, in connection with, dealing, discussing, describing, embodying, evidencing, identifying, pertaining, referring, reporting, stating, or summarizing." Definition No. 18.

### Request No. 29

Plaintiffs will meet and confer with Defendants to discuss Plaintiffs' objections to this Request. Plaintiffs note that in response to other Requests they have agreed to produce their relevant Broiler purchase data and documents, which will support their claimed antitrust injuries and related damages claims. These Broiler-purchase documents are sufficient to determine the fact and extent of the harm suffered by Plaintiffs.

### Request No. 32

Defendants fail to address Plaintiffs' objections that this Request seeks irrelevant information, is unduly burdensome, and is disproportionate to the needs of this case. Plaintiffs do not see the relevance of *all* documents "concerning the circumstances under which [Plaintiffs] became involved in Broiler Chicken Litigation." Plaintiffs will meet and confer if Defendants would like to discuss the relevance and scope of the documents sought by this request.

### Request No. 34

This Request seeks *"[a]ll* documents *relating to* [Plaintiffs'] engagement or retention of counsel in the Broiler Chicken Litigation[.]" In addition to objecting to the fact that this request seeks privileged attorney-client communications and protected work product, Plaintiffs objected that the retention-related documents sought by this Request are irrelevant, unduly burdensome to produce, and not proportional to the needs of *this* case. Yet Defendants make no attempt to explain the relevance of this retention-of-counsel information or the proportionality of the Request. In addition to responsive documents being privileged, Plaintiffs are not producing otherwise responsive documents on the basis of these latter objections.

### Request No. 36

Defendants appear to have narrowed this Request to "documents in Plaintiffs' possession that relate to putative class counsel's communications with third parties who may qualify as class members regarding this litigation, as this information is directly relevant to the class certification inquiry, including adequacy." June 30 Letter at 7-8. Plaintiffs fail to understand how this category of communications (to the extent they exist) would be relevant to the Court's analysis

of whether the Plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a)(4); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.")

Plaintiffs also note the narrowed request is vague and ambiguous with respect to its use of the phrase "third parties who may qualify as class members." Plaintiffs understand this expression to refer to absent members of the putative classes. As such, this narrowed request seeks protected work product and/or attorney-client communications.

### Follow-Up

Please let me know when Defendants would like to schedule a telephone conference to discuss the above.

Sincerely,

*/s/ Mark F. Ram*

Mark F. Ram

cc:    Defense Counsel on Attached Service List
       Interim Lead and Liaison Counsel for C&I IPPs

*In re Broiler Chicken Antitrust Litigation*, No. 16-cv-08637 (N.D. Ill.)

## Defense Counsel Service List

| Defendants | Counsel | e-mails |
|---|---|---|
| Fieldale Farms Corporation | B. Parker Miller<br>Valarie C. Williams<br>James Cash<br>Max Marks<br>ALSTON & BIRD LLP<br>1201 West Peachtree Street<br>Atlanta, GA 30309 | parker.miller@alston.com<br>valarie.williams@alston.com<br>james.cash@alston.com<br>max.marks@alston.com |
| Foster Farms, LLC | Carmine R. Zarlenga<br>William H. Stallings<br>Oral D. Pottinger<br>MAYER BROWN LLP<br>1999 K Street, N.W.<br>Washington, D.C. 20006 | czarlenga@mayerbrown.com<br>wstallings@mayerbrown.com<br>opottinger@mayerbrown.com |
| George's, Inc. and George's Farms, Inc. | William L. Greene<br>Ruth S. Shnider<br>STINSON LEONARD STREET LLP<br>150 South Fifth Street, Suite 2300<br>Minneapolis, MN 55402<br><br>Sondra A. Hemeryck<br>RILEY SAFER HOLMES & CANCILA LLP<br>70 West Madison Street, Suite 2900<br>Chicago, IL 60602<br><br>Gary V. Weeks<br>K.C. Dupps Tucker<br>Kristy E. Boehler<br>THE LAW GROUP OF NW. ARKANSAS LLP<br>1830 Shelby Lane<br>Fayetteville, AR 72704 | william.greene@stinson.com<br>ruth.shnider@stinson.com<br><br>shemeryck@rshc-law.com<br><br>gary.weeks@lawgroupnwa.com<br>kc.tucker@lawgroupnwa.com<br>kristy.boehler@lawgroupnwa.com |

| Defendants | Counsel | e-mails |
|---|---|---|
| House of Raeford Farms, Inc. | Gregory G. Wrobel<br>VEDDER PRICE P.C.<br>222 North LaSalle Street<br>Chicago, Illinois 60601<br><br>Henry W. Jones, Jr.<br>JORDAN PRICE WALL GRAY JONES & CARLTON, PLLC<br>1951 Clark Avenue<br>Raleigh, North Carolina 27605 | gwrobel@vedderprice.com<br><br>hjones@jordanprice.com |
| Koch Foods, Inc., JCG Foods of Alabama, LLC, JCG Foods of Georgia, LLC, Koch Meats Co., Inc. | Stephen Novack<br>Stephen J. Siegel<br>Christopher S. Moore<br>NOVACK AND MACEY LLP<br>100 North Riverside Plaza<br>Chicago, IL 60606 | snovack@novackmacey.com<br>ssiegel@novackmacey.com<br>cmoore@novackmacey.com |
| Mountaire Farms, Inc., Mountaire Farms, LLC and Mountaire Farms of Delaware, Inc. | John W. Treece<br>SIDLEY AUSTIN LLP<br>1 S. Dearborn Street<br>Chicago, Illinois 60603<br><br>Amy Lee Stewart<br>Jacob White<br>ROSE LAW FIRM<br>20 East Fourth Street<br>Little Rock, Arkansas 72201 | jtreece@sidley.com<br><br>astewart@roselawfirm.com<br>jwhite@roselawfirm.com |
| O.K. Foods, Inc., O.K. Farms, Inc., and O.K. Industries, Inc. | John P. Passarelli<br>James M. Sulentic<br>KUTAK ROCK LLP<br>1650 Farnam Street<br>Omaha, Nebraska 68102<br><br>J.R. Carroll<br>Scott Jackson<br>KUTAK ROCK LLP<br>234 East Millsap Road, Suite 200<br>Fayetteville, Arkansas 72703-4099<br><br>Kimberly M. Hare<br>KUTAK ROCK LLP<br>One South Wacker Drive, Suite 2050<br>Chicago, IL  60606-4614 | john.passarelli@kutakrock.com<br>james.sulentic@kutakrock.com<br><br>jr.carroll@kutakrock.com<br>scott.jackson@kutakrock.com<br><br>kimberly.hare@kutakrock.com |

| Defendants | Counsel | e-mails |
|---|---|---|
| Peco Foods, Inc. | Patrick Fitzgerald<br>Lara Flath<br>SKADDEN, ARPS, SLATE,<br>MEAGHER & FLOM LLP<br>155 N. Wacker Drive<br>Chicago, IL 10036<br><br>Boris Bershteyn<br>Sam Auld<br>SKADDEN, ARPS, SLATE,<br>MEAGHER & FLOM LLP<br>Four Times Square<br>New York, NY 10036 | patrick.fitzgerald@skadden.com<br>lara.flath@skadden.com<br><br><br><br><br>boris.bershteyn@skadden.com<br>sam.auld@skadden.com |
| Perdue Farms, Inc. and<br>Perdue Foods LLC | Kirstin B. Ives<br>FALKENBERG FIEWEGER & IVES,<br>LLP<br>30 N. LaSalle St., Suite 4020<br>Chicago, IL 60602<br><br>J. Douglas Baldridge<br>Lisa Jose Fales<br>Leonard L. Gordon<br>Robert P. Davis<br>Mary M. Gardner<br>VENABLE LLP<br>575 7th Street, NW<br>Washington, DC 20004 | kbi@ffilaw.com<br><br><br><br><br>jdbaldridge@venable.com<br>ljfales@venable.com<br>llgordon@venable.com<br>rpdavis@venable.com<br>mmgardner@venable.com |

| Defendants | Counsel | e-mails |
|---|---|---|
| Pilgrim's Pride Corporation | Michael L. McCluggage<br>EIMER STAHL LLP<br>224 South Michigan Ave., Suite 1100<br>Chicago, IL 60604 | mmccluggage@eimerstahl.com |
| | Carrie C. Mahan<br>WEIL GOTSHAL & MANGES LLP<br>1300 Eye Street, N.W., Suite 900<br>Washington, D.C. 20005 | carrie.mahan@weil.com |
| | Kevin J. Arquit<br>WEIL GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, New York 10153-0119 | kevin.arquit@weil.com |
| | Clayton E. Bailey<br>BAILEY BRAUER PLLC<br>8350 N. Central Expressway, Ste. 206<br>Dallas, Texas 75206 | cbailey@baileybrauer.com |
| Sanderson Farms, Inc., Sanderson Farms, Inc. (Processing Division), Sanderson Farms, Inc. (Production Division), & Sanderson Farms, Inc. (Foods Division) | Daniel E. Laytin, P.C.<br>Christa C. Cottrell<br>Martin L. Roth<br>Stacy Pepper<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle Street<br>Chicago, IL 60654 | dlaytin@kirkland.com<br>ccottrell@kirkland.com<br>martin.roth@kirkland.com<br>stacy.pepper@kirkland.com |
| Simmons Foods, Inc., Simmons Prepared Foods, Inc. | Lynn H. Murray<br>Andrew Meerkins<br>SHOOK, HARDY & BACON L.L.P.<br>111 South Wacker Drive<br>Suite 5100<br>Chicago, Illinois 60606 | lhmurray@shb.com<br>ameerkins@shb.com |

| Defendants | Counsel | e-mails |
|---|---|---|
| Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Breeders, Inc., Tyson Poultry, Inc. | Jeremy Ostrander<br>WHITE & CASE LLP<br>3000 El Camino Real<br>Five Palo Alto Square, 9th Floor<br>Palo Alto, CA 94306<br><br>Robert A. Milne<br>David H. Suggs<br>WHITE & CASE LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br><br>J. Mark Gidley<br>Peter J. Carney<br>WHITE & CASE LLP<br>701 Thirteenth Street, NW<br>Washington, DC 20005 | jostrander@whitecase.com<br><br><br><br><br>rmilne@whitecase.com<br>dsuggs@whitecase.com<br><br><br><br>mgidley@whitecase.com<br>pcarney@whitecase.com |
| Wayne Farms LLC | Christopher E. Ondeck<br>Adrian Fontecilla<br>Stephen R. Chuk<br>PROSKAUER ROSE LLP<br>1001 Pennsylvania Ave., NW, Suite 600S<br>Washington, DC 20004 | condeck@proskauer.com<br>afontecilla@proskauer.com<br>schuk@proskauer.com |

Rev. 7/21/2017

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on October 30, 2017, I caused a copy of the foregoing document to be served via the Court's ECF system on all Counsel who have appeared in the case.

/s/ Thomas A Doyle
_____

Thomas A. Doyle