UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br>This Document Relates To: All Actions | Case No. 1:16-cv-08637<br><br>Magistrate Judge Jeffrey T. Gilbert |

## MEMORANDUM ORDER

This matter is presently before the Court for resolution of a dispute between Direct Purchaser Plaintiffs ("DPPs") and Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs"), on one side, and Defendants, on the other, about the discoverability of DPPs' and CIIPPs' downstream sales and market information. Defendants served separate sets of Rule 34 requests for production of documents on DPPs [674-2] and CIIPPs [674-3]. Each set contained 13 requests for production that encompass certain aspects of downstream discovery, such as documents related to DPPs' and CIIPPs' interactions with customers, demand for their products, customers' preferences, and market factors. [674 at 1, 3 n.2–14]. DPPs and CIIPPs object to producing any downstream discovery. [673 at 1; 675 at 1; 675-1 at 3–4]. The parties first brought this issue to the Court's attention in a joint status report and several short and summary filings. [415 at 33–50; 429; 434; 506; 522; 523]. The Court then ordered more fulsome briefing. [580 at 7–9; 627]. Consistent with the schedule set by the Court, the parties now have filed supplemental briefs. [673; 674; 675; 690; 691; 692]. Because the supplemental briefs incorporate and build upon the arguments raised in the parties' previous filings, the Court's analysis in this Memorandum Order focuses on those briefs.

Defendants argue the requested downstream discovery is relevant to, among other things, class certification in the cases brought by CIIPPs and End User Consumer Plaintiffs ("EUCPs")

(collectively, "IPPs"—short for "indirect purchaser plaintiffs") and to certain aspects of the merits of all of the putative class cases. Defendants also say Plaintiffs already have sought discovery from Defendants and from third parties on similar issues thereby conceding the relevance of the information. Lastly, Defendants contend DPPs and CIIPPs have not made an adequate showing of burden or lack of proportionality to support their argument that Defendants should be denied access to this relevant discovery. In response, DPPs and CIIPPs dispute each theory of relevance offered by Defendants. They also say that, even if some downstream discovery is relevant, the limited value of the discovery Defendants are seeking does not justify the significant burden and potential chilling effect on private antitrust enforcement that would follow from a court order that such information be produced by named putative class representatives. DPPs and CIIPPs also maintain that Defendants can obtain any relevant information they need to defend against Plaintiffs' claims from other sources and through other methods that are more proportionate to the needs of the case. For the reasons stated below, the Court finds that, at this time and on this record, Defendants have not shown they are entitled to the extensive downstream discovery they apparently seek through the general and broad requests for production of documents that Defendants have served on DPPs and CIIPPs.[1]

---

[1] During a status hearing held on February 7, 2018, the Court remarked that, "subject to every caveat I can put on this," its initial "gut feeling" was that some downstream discovery probably would be appropriate in this case. [718 at 98]. The Court initially encouraged the parties to meet and confer with the goal of identifying with more specificity the downstream discovery Defendants were seeking from each Plaintiff group and the burden on Plaintiffs of producing that discovery. The parties, though, balked at the suggestion and perhaps rightfully so given the lack of guidance the Court was providing at the time. The Court then retracted its suggestion and said it would "drill down" on the issue "to see if [its] gut remains the same." *Id.* at 110. The Court has since re-read the parties' supplemental briefs and the cases they cited. Informed by that review, the Court is now of the opinion that its initial "gut feeling" was not as well-informed as the Court believed it to be at the time. This Memorandum Order reflects the Court's more fully-informed and nuanced understanding of the parties' downstream discovery dispute.

I.

Although there is no absolute rule barring downstream discovery in private antitrust cases, *In re Urethane Antitrust Litig.*, 237 F.R.D. 454, 462–63 (D. Kan. 2006), courts usually do not require direct purchaser plaintiffs to produce such information. Among other reasons, that is because generally there is no pass-through defense available to defendants in federal antitrust cases brought by direct purchasers. *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 2012 WL 1533221, at *2 (N.D. Ill. Apr. 27, 2012) (citing a "plethora of case law"); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2010 WL 4916723, at *1 (E.D.N.Y. Nov. 24, 2010); *In re Aspartame Antitrust Litig.*, 2008 WL 2275528, at *1 (E.D. Pa. Apr. 8, 2008); *In re Auto. Refinishing Paint Antitrust Litig.*, 2006 WL 1479819, at *7 (E.D. Pa. May 26, 2006); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 497 (M.D. Pa. 2005); *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000).

Defendants argue that downstream discovery from DPPs is justified in this case, however, because it may be relevant to the merits of particular claims and defenses. Defendants say, for instance, that downstream discovery may show whether the pre-existing cost-plus exception—which allows for the assertion of a pass-through defense under certain circumstances—applies to DPPs' claims. As DPPs note, though, the cost-plus exception is narrow; in fact, some courts have said it is so narrow as to seemingly "preclude its application in any case." *State of Ill., ex rel. Burris v. Panhandle E. Pipe Line Co.*, 935 F.2d 1469, 1478 (7th Cir. 1991); *see also First Impressions Salon, Inc. v. Nat'l Milk Producers Fed'n*, 214 F. Supp. 3d

723, 729 (S.D. Ill. 2016).[2] And there has been no threshold showing that the cost-plus exception may apply in this case. This limited and to some extent hypothetical (at least in this case) exception, therefore, cannot be used to seek general and broad discovery of, for example, all "documents and contracts about DPPs' sales." [674 at 11].

Defendants also contend that DPPs' downstream information will evidence consumers' reactions to price changes, which in turn will be relevant to market power if DPPs pursue a rule of reason case or to the plausibility of an alleged conspiracy in a *per se* case. *Id.* at 9–11. These theories of relevance are at least somewhat questionable with respect to downstream discovery when most of the focus in a conspiracy case is on upstream conduct. *See Aspartame*, 2008 WL 2275528, at *4–5; *Auto. Refinishing Paint*, 2006 WL 1479819, at *8. In addition, at least at the motion to dismiss stage, Plaintiffs' claims passed the plausibility threshold when the District Judge denied Defendants' motions to dismiss, which is when the plausibility determination usually is made. Even if the Court were to assume that Defendants' proffered theories of relevance potentially are sound, though, Defendants' existing requests for production still would be problematic for other reasons discussed below.

Defendants' requests for production are very broad and seek a tremendous amount of granular information particularly if the more general requests are interpreted to apply to downstream sales and market information. *See*, *e.g.*, [674-2 at 9] ("All budgets, forecasts, projections, or strategic plans concerning market factors affecting the current or future pricing or availability of Broilers and Excluded Broilers"); *id.* at 10 ("All documents, reports and analyses concerning market factors affecting the current or future pricing or availability of Broilers and

---

[2] "In a [pre-existing cost-plus contract] situation, the purchaser is insulated from any decrease in its sales as a result of attempting to pass on the overcharge, because its customer is committed to buying a fixed quantity regardless of price." *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977).

4

Excluded Broilers"); *id.* at 11 ("All contracts, invoices, purchase orders, or agreements pursuant to which You resold any Broilers or Excluded Broilers"); *id.* at 12 ("All budgets, forecasts, or strategic plans with respect to your sales of Broilers and Excluded Broilers"); *id.* ("All documents reflecting or concerning Your reactions or responses to changes in the price of Broilers"); *id.* ("All documents constituting, commenting on, or concerning any actual or proposed price increases or price increase announcement applicable to Broilers"). DPPs have responded to Defendants' requests for production by saying they will produce certain of the information requested as it relates to the claims alleged in Plaintiffs' complaints concerning their purchases of Broilers, but they have objected to the extent the requests encompass downstream sales and other information. It, therefore, is difficult on the present record to understand specifically what downstream information Defendants are requesting and the burden on DPPs of producing that information or, for that matter, Defendants' ability to obtain that information in other ways.

Although Defendants complain about DPPs' unwillingness to discuss more specific objections to their downstream discovery requests and to suggest ways in which the requests can be narrowed so they are less burdensome, it is Defendants' job in the first instance to promulgate discovery that is focused on relevant downstream information. While it is true, as Defendants point out, that DPPs have not developed their burden argument in the type of detail that typically would be required, the limited information that DPPs have provided along with common sense supports the notion that responding to the extremely broad and granular downstream discovery requested by Defendants would be burdensome. To be clear, the Court is not saying that Defendants' requests for production are overbroad or otherwise objectionable outside of the context of downstream discovery, which is the only issue now before the Court. The Court only

is making the point that Defendants' general requests for production may be more inclusive than necessary with respect to downstream discovery.

There is another flaw with Defendants' argument that they are entitled to discovery concerning market power and the plausibility of Plaintiffs' claims. These are market-wide, not firm-specific, issues. Obtaining information from the limited number of named DPPs, which "are not large resellers that control a significant portion of the indirect purchaser market" [675 at 5], may not provide much benefit in analyzing the market downstream from the $20 to $30 billion Broiler market, [709, ¶ 114]. EUCPs already have served subpoenas on ten of Defendants' larger customers and on other absent members of the putative DPP class that are of a similar size to the named DPPs. [674 at 2; 691 at 1 n.1; 692 at n.3]. Defendants will get copies of any documents and information that may be produced in response to these subpoenas. Defendants also will receive information from CIIPPs and EUCPs about their own purchases of Broilers, which are downstream from DPPs.

In addition, at the status hearing on February 7, 2018, Defendants indicated their intention to seek discovery, including downstream discovery, from several new direct purchaser plaintiffs who recently filed their own opt-out actions, and those new plaintiffs represent that they are among the largest purchasers of Broilers from Defendants in the country. (Those new plaintiffs also, however, stated their intention to oppose such discovery.) Defendants also can obtain industry-wide data from other third party sources. It is not clear to the Court, nor do Defendants offer any reason, why the information they receive or may receive from alternative sources, along with any relevant data about the Broiler market downstream from DPPs that they already have, is or will be insufficient for Defendants' purposes. Given the contours of Defendants' market power and plausibility arguments and the alternative sources of information

that may be available to Defendants, the Court is not now convinced that the burden on the named putative class representatives of ordering production of the requested downstream discovery is justified and proportional to the needs of the case.

Defendants' final argument is that downstream discovery from DPPs is relevant to class certification in the IPP cases. Defendants contend the information requested from DPPs will allow Defendants to better understand the downstream distribution chain for Broilers and whether there is common proof of the injury suffered by IPPs based on the extent of price changes throughout the entire distribution chain. DPPs do not dispute Defendants' contention that CIIPPs and EUCPs must show that an overcharge was passed on to them to establish they suffered an antitrust injury or that DPPs are upstream from CIIPPs and EUCPs. Defendants also claim downstream discovery is relevant to the class action predominance analysis because individualized issues may arise if the distribution chain is complex or products change significantly as they move through the distribution chain. DPPs do not offer a particularly strong response to this point though, in fairness, it also is not fully developed by Defendants. Even if these two theories could make some downstream discovery from DPPs relevant, which the Court is not now deciding, the actual requests for production served by Defendants still would be too broad and sweep in significant amounts of information that may not be related to these theories.

Moreover, the Court's analysis in this respect does not end with relevance. DPPs are not parties to the IPP cases. To the extent Defendants are seeking downstream discovery from DPPs that is relevant only in the IPP cases, their requests might be analogized to subpoenas issued to non-parties to the IPP cases under Federal Rule of Civil Procedure 45 than to requests for production under Rule 34 in the DPPs' case. Rule 45, of course, provides more protection for the recipient of a third-party subpoena than Rule 34 provides to a party. Further, the same flaws

that the Court identified with respect to the Defendants' market power and plausibility arguments can be raised here. DPPs are relatively smaller players in the distribution chain, and Defendants may be able to obtain sufficient discovery to address the commonality and predominance issues in the IPP cases from other sources, to the extent those issues need to be addressed at all. Again, the points that Defendants want to make at the class certification stage seem to be about the market as a whole (or entire segments of the market), not about any particular named DPP. For the reasons articulated above, the Court is not persuaded that the downstream discovery Defendants have requested from DPPs is relevant, not unduly burdensome, and proportional to the needs of the case within the meaning of Federal Rule of Civil Procedure 26(b)(1).

II.

Defendants assert that their request for downstream discovery from CIIPPs primarily is justified because it is relevant to class certification. Defendants first contend they are entitled to investigate whether CIIPPs resell Broilers because that would be relevant to class definition under Federal Rule of Civil Procedure 23(a). [674 at 8]. CIIPPs, though, say they will amend (and now have amended) their class definition to exclude purchases of Broilers intended for resale but not to exclude all entities who resold Broilers. [673 at 1–2; 690 at 2 n.1; 737]. Specifically, CIIPPs say: "the proposed amended class definition only excludes *purchases* of Broilers intended for resale, and would not exclude *entities* who resold Broilers, if they also purchased Broilers for commercial food preparation (for example, a grocery store with a prepared foods section)." [690 at 2, n.1 (emphasis original)].[3]

---

[3] Counsel for CIIPPs represented during the status hearing held on February 7, 2018 that they planned promptly to seek leave to file a Fourth Amended Consolidated Class Action Complaint, which would contain a new class definition. As this Memorandum Order was going to press (so to speak), CIIPPs filed a motion for leave to file their Fourth Amended Complaint that follows through on their promise to amend their class definition [737 at paras. 408, 409]. The amended complaint does not seem to require

8

The Court is not entirely sure what this means, and Defendants can be excused to the extent they also are unsure. As far as the Court can tell (and, again, the Court may not fully appreciate the nuance in what CIIPPs are saying), CIIPPs have not articulated their class definition in this precise way in any filing until their response brief on downstream discovery [690]. It may mean that CIIPPs are not seeking to recover damages for any purchases of Broilers by putative CIIPP class members to the extent those Broilers were resold as Broilers. If that is true, then evidence that CIIPPs resell Broilers may not be relevant to the prerequisites for class certification of the CIIPPs' proposed class under Federal Rule of Civil Procedure Rule 23(a). If it is relevant whether, as a matter of fact, CIIPPs resell Broilers, then more focused discovery – perhaps an interrogatory – might be a more efficient and proportional approach to get at that question than Defendants' currently broad document discovery requests. If, instead, CIIPPs mean something else, or this is in some part related to another dispute between the parties about meaning of the term "Broilers" as used by Plaintiffs in this case (and the Court understands the two disputes may, in fact, be different), then more analysis may be required. The parties have outlined their respective views on the meaning of the term "Broilers" as it is used in this case in a joint letter to the Court dated February 13, 2018 [720].

Defendants also claim there are "ascertainability questions" that necessitate discovery about how the putative CIIPP and EUCP classes differ. [674 at 8–9]. A little over two years ago, the Seventh Circuit explained that the ascertainability requirement "goes to 'the adequacy of the class definition itself,' not to 'whether, given an adequate class definition, it would be

---

any change to the analysis in this Memorandum Order. To the extent it does, the Court, of course, has the ability to amend or supplement this Order. In addition, to the extent the definition of the CIIPPs' putative class remains a moving target, the question of the discoverability of downstream information from CIIPPs as potentially relevant to the issue of class certification also may be a bit premature.

difficult to identify particular members of the class.'" *G.M. Sign Inc. v. Stealth Sec. Sys., Inc.*, 2017 WL 3581160, at *2 (N.D. Ill. Aug. 18, 2017) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015)). In this case, CIIPPs seem to be seeking to represent a class of entities that purchased Broilers for use in their businesses or organizations [253, ¶ 361; 673, at 1–2] while EUCPs' proposed class definition is limited to persons and entities who purchased Broilers "for personal use" [716, ¶ 436]. Perhaps Defendants are concerned that it will be difficult to identify whether a particular entity used Broilers in its business or organization (rather than for "personal use"). That issue, though, is not necessarily relevant to ascertainability but may go more to fine-tuning of the class definitions. In any event, inquiry into this issue would not seem to require the type of extensive downstream discovery requested in Defendants' requests for production.

Defendants' last class certification argument is that downstream discovery is relevant to commonality and predominance because individualized determinations may be required to establish CIIPPs' damages. The logic here is different than with respect to DPPs' downstream discovery. CIIPPs' downstream information cannot be relevant to show whether any overcharge was passed on by either of the putative IPP classes because CIIPPs are not upstream from either EUCPs or anyone else in the distribution chain. Further, CIIPPs point out and Defendants seem to concede that Defendants cannot raise a pass-through defense against CIIPPs because there is not another IPP class that is seeking damages suffered by reason of their purchases of CIIPPs' products (*i.e.*, there is not a risk of double recovery). [673 at 7; 691 at 9–10].[4]

---

[4] Defendants say, "[I]t is true that if CIIPPs' representations regarding the nature of EUCPs' claims are accurate—namely that the current EUCP class is not claiming damages for price increases faced at restaurants—then such a pass though [sic] argument should not apply to CIIPPs." [691 at 9–10]. The Court understands the putative EUCP class to be consistent with CIIPPs' representations. *See* [716, ¶ 437] ("Further excluded from the Classes and National Injunctive Relief Class are purchases of value

The only supposedly individualized damages determination that Defendants seem to be focused on is differentiating between Broilers purchased by CIIPPs that were resold as Broilers, which are excluded from CIIPPs' claims, and CIIPPs' purchases of Broilers that were consumed by them or their purchases of products that CIIPPs say contain Broilers that have been processed into something else, which purchases CIIPPs seem to say are included in their class definition and, therefore, their class claims. If this issue is relevant to CIIPPs' alleged damages, it would seem to be a relatively narrow issue, and Defendants' requests for production capture much more information than would seem to be relevant to that issue. And, again, there does not appear to be a class of purchasers downstream from CIIPPs to whom any overcharge for any of these products would have been passed given the way CIIPPs seem to define their class.

Finally, Defendants contend CIIPPs' downstream information is relevant to the merits of this litigation for largely the same reasons they say DPPs' downstream information is relevant to the merits. That argument, as discussed above, focuses on market power and plausibility. Defendants make an additional point with respect to CIIPPs, claiming CIIPPs are "uniquely situated to have evidence regarding how consumers react to changes in the relative price of Broilers" because they sell directly to consumers. [674 at 12]. But CIIPPs' claims in this case seem to be based on their purchases of Broilers as, in effect, commercial end-users of Broilers, not on their resale of Broilers to other consumers downstream from them. The Court understands that changes in demand for CIIPPs' products may impact to some extent the upstream demand for Broilers. This is a nuance, though, that Defendants do not address. Defendants have not provided any explanation of how consumers' reactions to changes in the

---

added products not manufactured, supplied or processed by Defendants, or otherwise not under the control of Defendants.").

prices of CIIPPs' products are relevant to market power and the incentive to attempt to fix prices upstream in the market for Broilers. If there is no more than a tenuous connection between these seemingly very different although related markets, then the requested discovery, as drafted, may not be proportional. Moreover, as noted above, market power and plausibility are industry-wide—not firm-specific—issues. Because the named CIIPPs are "small businesses" [690 at 5], it is not clear whether the potentially limited benefit of downstream discovery from CIIPPs in understanding these issues is proportional to the burden that would be imposed on them.

## III.

For all of these reasons, the Court finds, at least at this time and on this record, that Defendants are not entitled to the extensive downstream discovery they now seek through the general and broad requests for production of documents that Defendants have served on DPPs and CIIPPs. The Court's ruling is limited to the requests for production, arguments, and record now before the Court. The Court is not now holding that all downstream discovery of any type or form would be beyond the scope of the Federal Rules of Civil Procedure. That means this ruling is without prejudice to Defendants' ability to potentially better define what they are looking for from a particular plaintiff group and the relevance of and need for that information, and it also is without prejudice to Plaintiffs' ability to better articulate the burden of producing that information. If this issue arises again or is rejuvenated, though, the parties must first meet and confer about any modification to Defendants' discovery requests and Plaintiffs' responses thereto before they bring the issue before the Court again.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated:  February 21, 2018