UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION* <br><br> This Document Relates To: <br> Direct Purchaser Actions | Case No. 1:16-cv-08637 <br><br> Hon. Thomas A. Durkin <br><br> Magistrate Judge Jeffrey T. Gilbert |

**DECLARATION OF JENNIFER M. KEOUGH IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION TO APPROVE A PLAN OF NOTICE OF SETTLEMENT WITH DEFENDANT FIELDALE FARMS CORPORATION**

888829.1

I, Jennifer M. Keough, declare and state as follows:

1.      I am the Chief Executive Officer of JND Legal Administration ("JND"), the Settlement Administrator retained in this matter. I make this declaration in support of Direct Purchaser Plaintiffs' Motion to Approve a Plan of Notice of Settlement With Defendant Fieldale Farms Corporation. The following statements are based on my personal knowledge and information provided to me by Counsel and other JND employees working under my supervision and, if called upon to do so, I could and would testify competently thereto.

2.      I have more than 20 years of legal experience creating and supervising multiple Notice and Claims Administration programs and have personally overseen well over 500 matters. A comprehensive description of my experience is attached hereto as Exhibit A.

3.      JND is a legal administration services provider with operations centers in Denver, Minneapolis, and Seattle. JND has extensive experience with all aspects of legal administration and has administered settlements in hundreds of class action cases. JND was chosen as the Settlement Administrator in this case after going through a competitive bidding process.

4.      As CEO of JND, I am involved in all facets of our Company's operation. Among my responsibilities is to monitor the implementation of our Notice and Claim Administration programs. I submit this Declaration at the request of Counsel to describe the proposed program for providing notice to Settlement Class Members.

5.      JND assisted Class Counsel in drafting the summary, email and long form notice documents. Based on my experience in administering class action notice programs, I believe these notice documents comport with the requirements of Federal Rule of Civil Procedure 23.

6.      The notice plan in this case was designed to provide direct mail and email notice to as many Class Members as possible. To assist the Settlement Administrator in effectuating the notice, JND has requested through class counsel that defendants produce class member contact information for the fields set forth in the charts attached as Exhibit B.

7.      Once JND receives the customer list data, it will analyze the data and conduct address research to verify the Settlement Class Members' mailing addresses, updating as

necessary. JND will mail the Long Form Notice via first-class U.S. mail to those Settlement Class Members. Advanced address research will be conducted for all mailed Notices returned to JND as undeliverable, and Notices will be re-mailed if updated addresses are returned.

8. JND will also send the email notice to all Settlement Class Members for whom email addresses are provided in the class list data. The email notice will provide Class Members with an electronic link to the settlement website, where they can obtain more information including the Long Form Notice and the Settlement Agreement.

9. It is anticipated that the direct mail and email notice should reach the vast majority of Direct Purchaser Plaintiffs. JND will provide a further declaration in support of Plaintiffs' motion for final approval which sets forth the final notice statistics.

10. JND further plans to supplement the direct mail and email notice via publication notice. This will include both print and digital media components. Suggested print publications include the Shelby Report, Progressive Grocer, Meat + Poultry, Poultry Times, Frozen & Refrigerated, Supermarket News, and Grocery Headquarters. The print ads are expected to be included in a single issue of each of the publications.

11. Suggested digital media publications include the Shelby Report, Progressive Grocer, Meat + Poultry, Poultry Times, Supermarket News, Grocery Headquarters, and Fast Casual. The digital ads are expected to run on these websites for one month.

12. JND will also host an informational website with a memorable domain name, providing additional information and documents, and a toll-free number for frequently asked questions and requests for mailing of further information. The website and call center will be available in both English and Spanish.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed June 1, 2018, at Seattle, Washington.

*[signature]*
Jennifer Keough

# EXHIBIT A

# JENNIFER KEOUGH

CHIEF EXECUTIVE OFFICER AND CO-FOUNDER





## I. INTRODUCTION

Jennifer Keough is Chief Executive Officer and a Founder of JND Legal Administration ("JND"). JND specializes in the administration of class action, mass tort, bankruptcy, government services and eDiscovery matters. With offices in Seattle, Denver, Minneapolis and New York, JND is the fastest growing company in the legal administration space.

Ms. Keough is recognized by practitioners on both sides of the aisle as an expert in all facets of class action administration, from notice through distribution. She is often called upon to consult with parties prior to settlement because of her experience in all phases of administration, not just notice. Ms. Keough has more than 20 years of legal experience. During her career in legal administration she has handled some of our country's largest, most high-profile engagements, including the BP Deepwater Horizon Settlement, Cobell Indian Trust Settlement, Engle Smokers Trust Fund, Gulf Coast Claims Facility, Stryker Modular Hip Settlement, and Verizon Wireless FTC Litigation. In 2015, she was named a "Woman Worth Watching" by Profiles in Diversity Journal. She is frequently invited to speak on class action issues and has written numerous articles in her areas of expertise. In 2013, she was profiled in a CNN article, "What Changes With Women in the Boardroom."

As the CEO of JND Legal Administration, Ms. Keough has a hand in all facets of the business, from day-to-day processes to high-level strategy. She oversees all aspects of JND's class action division including noticing, claims processing, Systems and IT work, call center, data analytics, recovery calculations, check distribution and reporting. But Ms. Keough also provides her expertise and knowledge to all other divisions of JND as well, including mass tort, corporate restructuring, government services, data analytics, and eDiscovery.

Prior to forming JND, Ms. Keough was Chief Operating Officer and Executive Vice President of Garden City Group, another large nationwide administration firm. In her former role, Ms. Keough oversaw operations in several offices across the country and was responsible for growing its Seattle office into a 250-person shop. Prior to that position, Ms. Keough worked as a class action business analyst at Perkins Coie, one of the country's premier defense firms, responsible for managing complex class action settlements and remediation programs, including the selection, retention, and supervision of legal administration firms.

While at Perkins, Ms. Keough was responsible for all administration efforts related to the Weyerhaeuser siding case, one of the largest building product class action settlements ever. She not only oversaw the outside administration firm selected by the parties, but she worked closely with plaintiffs' counsel, Lieff Cabraser, and developed a reputation of fairness in being able to see both sides of a settlement program.

Ms. Keough has played a role in a number of landmark cases including the BP Deepwater Horizon class action, which arose out of the largest oil spill in our nation's history and the Cobell American Indian $3.2 billion settlement, the largest government class action settlement in history. In connection with that settlement, Ms. Keough was called upon to testify before the Senate Committee for Indian Affairs, where Senator Jon Tester of Montana praised her work in connection with Notice efforts to the American Indian community stating "Oh, wow. Okay… the administrator has done a good job, as your testimony has indicated, [discovering] 80 percent of the whereabouts of the unknown class members."

As discussed below, Ms. Keough has created and supervised multiple notice plans. While creating notice plans, she considers not only the most effective notice plans, but also the implications the notice plan will have on all facets of the class action administration. With her experience, she is able to create a comprehensive notice and administration program that is unique to each client's needs.

Ms. Keough earned her J.D. from Seattle University. She graduated from Seattle University with a B.A. and M.S.F. with honors.

# II. LARGE CASE EXPERIENCE

Jennifer Keough has the distinction of personally overseeing more large class action settlement programs than any other notice expert. In her 20-year career she has managed and directly overseen hundreds of projects from notice through distribution of settlement awards. Some of the largest engagements are as follows:

1. ***In re The Engle Trust Fund***
   No. 94-08273 CA 22 (11th Jud. Cir. Ct., Miami-Dade County Ct.)
   Ms. Keough played a key role in administering this 800 million dollar landmark case against the country's five largest tobacco companies. Miles A. McGrane, III, Trustee to the Engle Trust Fund recognized Ms. Keough's role when he stated:

   > The outstanding organizational and administrative skills of Jennifer Keough cannot be overstated. Jennifer was most valuable to me in handling numerous substantive issues in connection with the landmark Engle Trust Fund matter. And, in her communications with affected class members, Jennifer proved to be a caring expert at what she does.

2. ***Cobell v. Salazar***
   No. 1:96 CV 01285 (TFH) (D. D.C.)
   As part of the largest government class action settlement in our nation's history, Ms. Keough worked with the US Government to implement the administration program responsible for identifying and providing notice to the two distinct but overlapping settlement classes. As part of the notice outreach program, Ms. Keough participated in multiple town hall meetings held at Indian reservations located across the country. Due to the efforts of the outreach program, over 80% of all Class Members were provided notice. Additionally, Ms. Keough played a role in creating the processes for evaluating claims and ensuring the correct distributions were made. Under Ms. Keough's supervision, the processing team processed over 480,000 claims forms to determine eligibility. Less than one half of 1 percent of all claim determinations made by the processing team were appealed. Ms. Keough was called upon to testify before the Senate Committee for Indian Affairs, where Senator Jon Tester of Montana praised her work in connection with Notice efforts to the American Indian community when he stated: "Oh, wow. Okay… the administrator has done a good job, as your testimony has indicated, [discovering] 80 percent of the whereabouts of the unknown class members." Additionally, the evaluating the Notice Program, the Court concluded:

   > …that adequate notice of the Settlement has been provided to members of the Historical Accounting Class and to members of the Trust Administration Class…. Notice met and in many cases exceeded the requirements of F.R.C.P.

23(c)(2) for classes certified under F.R.C.P. 23(b)(1), (b)(2) and (b)(3). The best notice practicable has been provided class members, including individual notice where members could be identified through reasonable effort. The contents of that notice are stated in plain, easily understood language and satisfy all requirements of F.R.C.P. 23(c)(2)(B).

3. **Gulf Coast Claims Facility (GCCF)**

    The GCCF was one of the largest claims processing facilities in U.S. history and was responsible for resolving the claims of both individuals and businesses relating to the Deepwater Horizon oil spill. The GCCF, which Ms. Keough helped develop, processed over one million claims and distributed more than six billion dollars within its year-and-a-half tenure. As part of the GCCF, Ms. Keough coordinated a large notice outreach program which included publication in multiple journals and magazines in the Gulf Coast area. She also established a call center staffed by individuals fluent in Spanish, Vietnamese, Laotian, Khmer, French and Croatian.

4. **In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010**
    No. 2179 (MDL) (E.D. La.)

    Following the closure of the Gulf Coast Claims Facility, the Deepwater Horizon Settlement claims program was created. There were two separate legal settlements that provided for two claims administrations programs. One of the programs was for the submission of medical claims and the other was for the submission of economic and property damage claims. Ms. Keough played a key role in the formation of the claims program for the evaluation of economic and property damage claims. Additionally, Ms. Keough supervised the call center located in Hammond, Louisiana.

5. **New Orleans Tax Assessor Project**

    After Hurricane Katrina, the City of New Orleans began to reappraise properties in the area which caused property values to rise. Thousands of property owners appealed their new property values and the City Council did not have the capacity to handle all of the appeals in a timely manner. As a result of the large number of appeals, the City of New Orleans hired Ms. Keough to design a unique database to store each appellant's historical property documentation. Additionally, Ms. Keough designed a facility responsible for scheduling and coordinating meetings between the 5000 property owners who appealed their property values and real estate agents or appraisers. The database that Ms. Keough designed facilitated the meetings between the property owners and the property appraisers by allowing the property appraisers to review the property owner's documentation before and during the appointment with them.

6. **In Re General Motors LLC Ignition Switch Litigation**

    Ms. Keough oversaw the creation of a Claims Facility for the submission of injury claims allegedly resulting from the faulty ignition switch. The Claims Facility worked with experts when evaluating the claim forms submitted. First, the Claims Facility reviewed thousands of pages of police reports, medical documentation, and pictures to determine whether a claim met the threshold standards of an eligible claim for further review by the expert. Second, the Claims Facility would inform the expert that a claim was ready for its review. Ms. Keough constructed a database which allowed for a seamless transfer of claim forms and supporting documentation to the expert for further review.

7. **C.F.P.B. v. Cellco P'ship**
    No. 15-3268 (D. N.J.)

    Ms. Keough oversaw the design and implementation of a Refund Program. As part of the design of the Program, Class Members were able to download their Billing Summary from a secure website to aid in completing their claim form.

8. **In re Washington Mutual Inc., Securities**
    No. 2:08-md-1919 MJP (W.D. Wash.)

    Ms. Keough supervised the Notice and Claims Administration for this securities class action which included three separate settlements with defendants totaling $208.5 million. In addition to mailing notice to over one million Class Members, Ms. Keough was in charge of the Claims Administration Program. The claims administration program included the review and processing of claims, notification of claim deficiencies, and distribution. In preparation for the processing of claims, she established a unique database to store the Proofs of Claim and supporting documentation, trained staff to the particulars of this settlement, created multiple computer programs for the entry of Class Member's unique information, and oversaw the development of a program to calculate the Recognized Loss Amounts pursuant to the Plan of Allocation. The program was designed to allow Proofs of Claim to be filed by mail or through an online portal. The deficiency process was established in order to reach out to Class Members who submitted incomplete Proof of Claims. It involved reaching out to claimants via letters, emails, and telephone calls.

9. **In re Polyurethane Foam Antitrust Litigation**
    No. 10-MD-2196 (N.D. Oh.)

    Ms. Keough helped design and implement a Notice and Claims Administration Program intended to reach both known and unknown Class Members of six separate Settlements and process the claim forms submitted. The Notice Program included publication notice in nine trade publications, internet banner advertising on five websites, a press release in English and Spanish, an

informational website, the mailing of notice to known class members, and a toll-free telephone number. The Claims Administration Program Ms. Keough helped develop and implement received over 7,400 claim forms, or a timely claim rate of 66.66%.

## 10. In re Air Cargo Shipping Services Antitrust Litigation

This Antitrust Settlement involved five separate settlements. As many Class Members were affected by more than one of the Settlements, Ms. Keough constructed the notice and claims programs for each settlement in a manner which allowed for the comparison of claims data. Each claims administration program included claims processing, review of supporting evidence, and a deficiency notification process. The deficiency notification process included mailing of deficiency letters, making follow up phone calls, and sending emails to class members in order to help them complete their claim. To ensure accuracy throughout the claims process for each of the Settlements, Ms. Keough created an audit process which audited many of the claims that were eligible for payment.

## 11. Careathers vs. Red Bull North America, Inc.
### No. 13-cv-00369 (KPF) (S.D.N.Y.)

Due to the nature of this case, direct notice was impossible. Therefore, Ms. Keough assisted in the design of a publication notice and claims administration program intended to reach the greatest amount of affected individuals as possible. In consultation with Class Counsel, Ms. Keough determined the best publications for the Notice to be published in. Due to the successful notice program, the informational website created as part of the Notice Program received an unprecedented 67 million hits in less than 24 hours. The Claims Administration program received over 2 million claim forms submitted through the three available filing options: online, mail, and email. The Court approved the notice program finding:

> ...that the Notice to the Settlement Class... was collectively the best notice practicable under the circumstances of these proceedings of the matters set forth therein, and fully satisfies the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure, due process, and any other applicable laws.

## 12. In re Classmates.com
### No. C09-45RAJ (W.D. Wash.)

Ms. Keough managed a team that provided email notice to over 50 million users with an estimated success rate of 89%. When an email was returned as undeliverable, it was resent up to three times in an attempt to provide notice to the entire class. Additionally, Ms. Keough implemented a claims administration program which received over 699,000 claim forms and maintained three email

6

addresses in which to receive objections, exclusions, and claim form requests. The Court approved the program when it stated:

> The Court finds that the form of electronic notice... together with the published notice in the *Wall Street Journal*, was the best practicable notice under the circumstances and was as likely as any other form of notice to apprise potential Settlement Class members of the Settlement Agreement and their rights to opt out and to object. The Court further finds that such notice was reasonable, that it constitutes adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of Due Process....

# EXHIBIT B



| Column | Description |
|---|---|
| Client_record_id | Identifier for each record to relate back to client data |
| Name_1 | Person full name or business name |
| Name_2 | Second name related to the record i.e. joint account holder name, D.B.A. name, trustee etc. |
| Care_of_name | "c/o" or "Attn:" name |
| Address_line_1 | Street Address |
| Address_line_2 | Apt/Suite number |
| City | |
| State_province | 2-digit state/province/territory code |
| Postal_code | 5-digit or 10-digit hyphenated zip code |
| Country | 2-digit country code |
| Phone | 10-digit phone number |
| Email_Address | |
| Calc_Amount | Any dollar amount relevant to calculating benefits: customer payment amounts between 1/1/2008 and 8/18/2017 |
| Client_alt_field_1 | Any other revelant data specific to the settlement; account numbers, transactional data to be included in Notice/Claim Form, etc. |
| Client_alt_field_2 | |
| Client_alt_field_3 | |
| Client_alt_field_4 | |
| Client_alt_field_5 | |