UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br>This Document Relates To: All Actions | Case No. 16 C 8637<br><br>Magistrate Judge Jeffrey T. Gilbert |

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Direct Purchaser Plaintiffs' Motion to Enforce the Court's February 21, 2018 Order and for Protective Order Regarding Downstream Discovery [ECF No. 879] ("Plaintiffs' Motion"). Direct Purchaser Plaintiffs ("DPPs") seek a protective order against Defendants' subpoenas served pursuant to Federal Rule of Civil Procedure 45 which seek downstream sales and market information similar to what Defendants sought earlier in the case from DPPs. The Court addressed that issue in a February 21, 2018 Memorandum Order [ECF No. 749] in which the Court ruled that Defendants were "not entitled to the extensive downstream discovery [sought] through the general and broad requests for production [] served on DPPs," but that Order expressly stated it was "without prejudice to Defendants' ability to better define what they are looking for from a particular plaintiff group and the relevance of and need for that information, and [] also without prejudice to Plaintiffs' ability to better articulate the burden of producing that information." [ECF. No 749, at 12].

For the reasons discussed below, Plaintiffs' Motion is granted. The Court concludes that Defendants still have not established sufficiently the relevance or need for the information they are seeking at this stage of the case, and that the likely burden on DPPs of complying with

Defendants' subpoenas outweighs any concrete benefit Defendants will realize by obtaining the large amount of information they still are requesting.

Federal Rule of Civil Procedure 26(c) permits a court, upon a showing of good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The court must determine if the material sought is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

As the Court recognized in its February 21, 2018 Order [ECF No. 749], although there is no absolute rule barring downstream discovery in private antitrust cases, courts usually do not require direct purchaser plaintiffs to produce such information in direct purchaser cases. *In re Urethane Antitrust Litig.*, 237 F.R.D. 454, 462-63 (D. Kan. 2006). Among other reasons, that is because generally there is no pass-through defense available to defendants in federal antitrust cases brought by direct purchasers to which the information would be relevant. *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 2012 WL 1533221, at *2 (N.D. Ill. Apr. 27, 2012) (citing a "plethora of case law"); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2010 WL 4916723, at *1 (E.D.N.Y. Nov. 24, 2010); *In re Aspartame Antitrust Litig.*, 2008 WL 2275528, at *1 (E.D. Pa. Apr. 8, 2008); *In re Auto. Refinishing Paint Antitrust Litig.*, 2006 WL 1479819, at *7 (E.D. Pa. May 26, 2006); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 497 (M.D. Pa. 2005); *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000).

Here, however, Defendants have served Rule 45 subpoenas on DPPs as third-parties to the Indirect Purchasers Plaintiffs' ("IPP") cases, and courts have held that downstream discovery of direct purchasers may be relevant for certain purposes in indirect purchaser actions.[1] But a defendant's ability to obtain such discovery is not automatic based on the mere possibility that it may be relevant to the defendant's ability to defend against a pass-through claim or to oppose class certification by indirect purchasers. As the court recognized in *In re Vitamins Antitrust Litigation*, 198 F.R.D. 296 (D.D.C. 2000), "in order to determine whether the individualized downstream data is discoverable, the Court must first determine whether this data is relevant to the subject matter at issue and then if it is deemed relevant, the Court must weigh the benefits of this information to the defendants against the burden or expense that discovery of this information would impose on the plaintiffs." 198 F.R.D. at 299. *See also* FED. R. CIV. P. 26(b)(1).

Defendants narrowed the scope and reduced the number of requests to DPPs in the Rule 45 subpoenas now before the Court. The requests for production now at issue, however, still are broad and seek a large amount of information, including (1) documents sufficient to show DPPs' weekly or monthly sales reports for Broiler products, including volumes and average sales prices, separated by customer and product; (2) documents sufficient to identify personnel and organizations involved in making or selling Broiler Products; (3) all communications between DPPs and their customers regarding price increases for Broiler products; (4) all contracts covering DPPs' sales of Broiler products; (5) documents sufficient to show how prices are determined by DPPs, including factors considered and certain pricing strategies; and (6) documents sufficient to show any discounts, rebates, or other promotions provided by DPPs to their customers. Defendants do not need this information to defend against DPPs' claims since those claims are focused on

---

[1] There are two putative cases of indirect purchasers in these cases, the Commercial and Institution Indirect Purchaser Plaintiffs ("CIIPPs") and the End User Consumer Plaintiffs ("EUCPs").

Defendants' alleged anti-competitive conduct upstream from DPPs. But Defendants maintain the information may be helpful to defend against arguments they anticipate may be made by the IPPs to show they suffered anti-trust injury from inflated prices allegedly charged by Defendants and passed through to them by the DPPs.

It is not disputed that the putative IPP classes will have to show antitrust injury by proving that some part of any price increase faced by the DPPs was passed through to members of the putative IPP classes. In that regard, Defendants argue that the discovery they seek "is necessary to challenge any CIIPP pass-through model that attempts to show pass-through by assuming either that pass-through is the same for all DPPs or that pass-through can be determined as an average of the pass-through of all DPPs." Defendants' Opposition to DPPs' Motion ("Defendants' Opposition"), [ECF No. 893, at 2]. At the same time Defendants make this argument, however, they also cite to case law they say completely rejects anti-trust plaintiffs' ability to make these types of pass-through arguments, at least potentially rendering this professed rationale for Defendants' third-party discovery of DPPs in the IPP cases a bit of a strawman (or straw person) if the case law cited by Defendants is found to be persuasive in this case. *See* Defendants' Opposition, [ECF No. 893, at 2 n.4] (citing *In re Flash Memory Antitrust Litig.*, 2010 WL 2332081, at * 12 (N.D. Cal. June 9, 2010) and *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 504 (N.D. Cal. 2008)).

This case is still in its early stages, and CIIPPs have not yet tendered their expert analyses or reports, nor have they been required to do so. Therefore, Defendants are to a large extent speculating about what they anticipate will be the focus of the expert economic models that the IPPs will use to attempt to show antitrust injury and what ammunition they may need to attack

those models and analyses. Defendants are, metaphorically speaking, shooting in the dark.[2] In fact, Defendants admit as much, arguing at one point in opposition to Plaintiffs' Motion that the discovery they seek is justified because it "will permit Defendants to challenge the, as yet unseen, economic models that Defendants anticipate will be the focus of CIIPPs' attempt to show antitrust injury." Defendants' Opposition, [ECF No. 893, at 6]. In the Court's view, it is difficult to justify requiring DPPs to produce what still is a very large amount of information based upon the possibility that some of it may be useful to challenge "as yet unseen" expert opinions in the IPP cases, some of which ostensibly would be offered to support potential theories Defendants say they have strong arguments against even without seeing the data they now are seeking from DPPs.

Defendants will have a substantial amount of information to challenge arguments the IPPs actually make. When the IPPs' expert witnesses make their required Rule 26(a)(2) disclosures, Defendants will have all the data utilized and relied upon by those experts to support their economic models. Rule 26(a)(2)(B)(i) and (iii) requires as much. In fact, the parties in this case negotiated a stipulation, which the Court incorporated into an Order at the parties' request, that specifies in detail what information and data relied upon by the parties' respective expert witnesses in forming their opinions must be produced, and in what format it must be produced. *See* Stipulation and Order Concerning Expert Discovery [ECF No. 908]. Although the parties agreed to modify their obligations under Rule 26(a)(2)(B)(ii) with respect to information merely considered by an expert witness, they still agreed, and the Court ordered, that the parties must disclose "the facts, data, or other information relied upon by the [expert] witness in forming [his or her opinion]." *Id.*

---

[2] The Court understands that Defendants' counsel are experienced anti-trust lawyers, but even experienced lawyers may not have the clairvoyance necessary to anticipate fully what the other side's experts will say in Rule 26(a)(2) reports not yet disclosed.

5

In addition, Defendants have their own data to show the prices at which they sold Broilers to the DPPs, and they will have the data that the IPPs will produce about their Broiler purchases from the DPPs. In other words, Defendants know at what price they sold their Broilers and the IPPs will produce the prices at which they purchased Broilers from DPPs. The Court recognizes that some of the information Defendants have subpoenaed from the DPPs goes beyond this type of transactional information. For example, Defendants want DPPs to provide average sales prices, communications with their customers about price increases and discounts, and information about how DPPs determined the prices they charged downstream purchasers. It is not clear, however, that the additional information Defendants are seeking from the DPPs will be necessary for Defendants' experts to rebut or challenge the opinions to be offered by the IPPs' experts, how much of that information (particularly about price) already is available from other sources or can be derived from information that already has been or will be produced in discovery, or whether it is relevant to legitimate defenses against the IPPs' claims or Defendants' opposition to class certification. The Court recognizes that Defendants are not limited to information relied upon by the IPPs' experts to challenge those experts' opinions or methodologies, but it also is not clear that Defendants need all of the information they have subpoenaed from the DPPs to mount these challenges.

For example, Defendants say they seek data they believe will help them to show whether the higher Broiler prices allegedly paid by the IPPs were caused, for example, by an increase in the market power of a direct purchaser or an increase in some other cost of selling, like increased energy costs. Defendants' Opposition, [ECF No. 893, at 3]. It is not clear to the Court, though, that the requested information is required for Defendants' experts to make such arguments. It may be that Defendants' experts can and will use sources other than an individual DPP's own

information to make these kinds of arguments as to particular DPPs or across the board for all DPPs. DPPs, many of whom are relatively smaller players in the universe of Broiler direct purchasers, may not be the primary, or the only or even the best, sources for the kind of information that Defendants might need to develop arguments about potential alternative causes for increases in the price of Broilers even assuming such arguments are available to Defendants as a defense in the IPP cases. It also is not clear that the market power of individual DPPs or components of the price at which the Broilers were sold other than their purchase price from Defendants are relevant to legitimate defense theories in this case.

Other courts in cases similar in some ways to this case have rejected the defendants' attempts in those cases to obtain similar information on the grounds that the discovery sought is not relevant to a claim or defense or not proportional to the needs of the case. *See, e.g., In re: Aspartame Anti-Trust Litigation,* 2008 WL 2275528, at *5 (E.D. Pa. April 8, 2008) (rejecting discovery aimed at determining plaintiffs' market power in part because it was not relevant to the crucial issue of whether there was a conspiracy to fix prices); *In re: Automotive Refinishing,* 2006 WL 1479819, at 8 (E.D. Pa. May 26, 2006) ("Plaintiffs' activities are almost wholly irrelevant in proving or disproving the underlying charges."); *In re: Vitamins,* 198 F.R.D. at 301 (same); *In re: Folding Cartons,* 1978 U.S. Dist. LEXIS 20409, at *4 (N.D. Ill. May 5, 1978) (same). Some of those courts also pointed out that publicly available information might be as helpful to defendants in making the arguments they want to make, much less burdensome to plaintiffs than providing the information themselves, and less likely to import unnecessary delay into the litigation from a detour into discovery that may be of only marginal relevance. *In re: Vitamins,* 198 F. R.D. at 299-300; *In re: Automotive Refinishing,* 2006 WL 1479819, at *8. If the question comes down to whether to open up discovery now into areas that may or may not be relevant, with the attendant

burden and delay even if incremental, or to wait until it is clear or at least clearer that discovery is necessary, then the Court would rather wait even if that means some delay later down the road if some of the discovery Defendants now say they need is allowed to proceed and even if that causes some delay in the expert phase of discovery or the ultimate resolution of the case.[3]

Defendants also acknowledge that sales data produced by other direct purchasers, some of whom are larger than the DPPs, which was subpoenaed by the IPP classes from those direct purchasers and will be available to Defendants, will help them understand how some larger direct purchasers determine prices and pass-through price increases.[4] Defendants argue that data will not be as informative for their purposes as the pass-through data they could obtain from the individual named DPPs. Defendants' Opposition, [ECF No. 893, at 3-4]. Even if that is a true statement, however, it is not clear how much Defendants' ability to make the kinds of arguments they want to make (if those alternative cause arguments are cognizable) will be impaired materially if they do not have additional data from the DPPs.

Defendants also argue the information they seek from the DPPs may be relevant to arguments they want to make against class certification in the IPP cases. Defendants argue, correctly, that the IPPs must show that the increased Broiler prices that impacted the DPPs were passed through to and impacted the IPPs. Defendants say CIIPPs cannot meet their burden by arguing that the pass-through was the same for all DPPs or that the pass-through can be determined

---

[3] The balance the Court is striking in ruling on DPPs' Motion at this time necessarily takes into account that this is a large and complex case with three putative classes of direct and indirect purchasers in which document production is due to be completed substantially next week under the protocols negotiated by the parties and approved by the Court. Scheduling Order No. 2 [ECF No. 574].

[4] The Court is not now ruling on the propriety or scope of any party's subpoenas to other direct purchasers whether absent members of the putative class or opt-outs. Rather, the point being made here is simply to recognize Defendants' acknowledgement that there potentially are other sources for the information they have subpoenaed from the named DPPs that could provide Defendants with information that is useful for their stated purposes.

by the average pass-through of all DPPs. It does not follow, though, that the named DPPs must produce the information Defendants seek from them for Defendants to respond to the arguments they surmise CIIPPs will make. The Court, therefore, is not persuaded that the individualized downstream discovery sought from the named DPPs is necessary for Defendants' purposes or it may in fact only be marginally relevant at best.

It may be that the lack of clarity in the present record with respect to how the information Defendants are seeking will be relevant to the merits issues discussed above is attributable to the stage of discovery at which the downstream discovery issue is being raised or to the summary nature of the arguments that both sides are making at this juncture. On the present record and based on the arguments being made now by both sides, though, the Court is reluctant to open a new front in discovery that may be unnecessary to a fair resolution of the central issues in these cases.

The cases Defendants rely upon to support the broad discovery they are seeking from DPPs as third-parties to the IPP cases also are distinguishable and do not bear the weight Defendants place on them. Defendants' Opposition, [ECF No. 893, at 4, n.9]. The court in *In re Cathode Ray Tube (CRT) Antitrust Litigation,* 301 F.R.D. 449, 454-455 (N.D. Ca. July 28, 2014), allowed only a Rule 30(b)(6) deposition of a large direct purchaser (Best Buy) on a discrete issue relating to Best Buy's price match guarantee program and related competitive intelligence initiatives and denied the defendants' request to serve interrogatories on those issues as too burdensome. In *In re Aftermarket Filters,* 2010 WL 3909502, at * 1-2 (N.D. Ill. Oct. 1, 2010), the court allowed subpoenas to be served on large direct purchaser plaintiffs who also had been served with identical subpoenas by the indirect purchaser plaintiffs, and the court reasoned, in part, that the subpoena recipients simply could re-produce much of what they already had produced in response to the

earlier subpoenas. The court in *In re Polyester Staple Antitrust Litigation,* 2005 WL 6457181, at *5-6 (W.D.N.C. May 9, 2005), allowed some downstream discovery to go forward as to two named plaintiffs who were both direct and indirect purchasers (Avondale and Parkdale). In *In re Urethane Antitrust Litigation,* 237 F.R.D. 454, 459 (D. Kan. Aug. 25, 2006), the magistrate judge disclaimed close analysis of the defendants' request for some downstream information ostensibly needed to oppose class certification because he felt it would be inappropriate for him to limit discovery on class certification when the district judge, not the magistrate judge, would be deciding that issue in the bifurcated procedural posture of the case. Finally, Defendants cite a general statement by the court in *In re Pressure Sensitive Labelstock,* 226 F.R.D. 492 (M.D. Pa. Feb. 17, 2005), that relates to the court's order that direct purchasers must produce documents concerning their upstream purchases from non-conspirator, non-manufacturer middlemen (*id.* at 495), but the court denied the defendants' request for downstream discovery from the direct purchaser plaintiffs in that case (*id.* at 498). So, none of these cases serves as persuasive authority for the proposition that Defendants should be allowed to go forward with the subpoenas they have served in this case.

Even if the Court agreed that the information requested by Defendants was marginally relevant, the Court next must determine "whether the benefit to defendants of having this data available exceeds the burden to plaintiffs of producing this information." *In re Vitamins,* 198 F.R.D. at 301. Again, as stated above, Defendants' subpoenas to the DPPs, though more tailored compared to the document requests they served earlier in the case, still are broad in scope. Defendants argue that DPPs have not developed their burden argument in the type of detail that typically would be required of a party (or non-party) opposing discovery based on undue burden. The Court agrees with Defendants' characterization to some extent, but disagrees that DPPs have

not met their burden, particularly given Defendants' relatively light showing that they need the information they are requesting.

Defendants submitted the Declaration of Brian Clark, which is attached to Direct Purchaser Plaintiffs' Reply in Further Support of Motion to Enforce and for Protective Order [ECF No. 905-1]. In that declaration, Mr. Clark explains the named DPPs already have collected and reviewed thousands of documents based upon agreed search terms and nearly have completed their review of those documents for responsiveness and privilege. If the Court permitted the downstream discovery sought by Defendants, DPPs would have to double-back and identify additional custodians for downstream information, search for all communications with their customers regarding price increases, and re-review a large number of documents to identify sales contracts, sales reports, and other documents concerning their pricing practices. DPPs also likely would have to collect additional related electronically stored information. It is hard to see how that would not be burdensome, and likely unduly so, given that document production is supposed to be substantially complete shortly under the current schedule adopted by the Court. *See* Scheduling Order No. 2 [ECF No. 574]. In light of the discussion above about the importance of the requested discovery to a fair resolution of the issues in the case, the Court finds such an endeavor is not justified now or proportional to the needs of this case.

Defendants also argue that DPPs improperly and ineffectively raise burden on a macro basis rather than explain the burden for any individually named DPP of producing what Defendants are seeking. It is true that DPPs have not particularized the burden each individually named DPP would have to shoulder to produce the information Defendants are requesting. It is clear, though, that the focus of the DPPs' case is on their purchases of Broilers from Defendants and not on their sales of Broilers to indirect purchasers farther down the distribution chain. The burden on DPPs

of being required to produce as third-parties in the IPP cases a great deal of information that is not relevant in their case and that Defendants have not shown is critical or even important or necessary to challenge "as yet unseen, economic models" that eventually may be offered by experts hired by the CIIPPs (Defendants' Opposition, [ECF No. 893, at 6]) or to defend against straw person arguments that may not be made by the IPPs (Defendants' Opposition, [ECF No. 893, at 2, n.4]) is not a burden Defendants can justify imposing on the DPPs, as a group or individually, on this record or at this time. On the other hand, the DPPs have shown that the burden on them is substantial enough and not now in proportion to the needs of the case to justify granting their motion for a protective order.

For all these reasons, the Court is not convinced that the downstream discovery Defendants have requested from DPPs is relevant or proportional to the needs of the case within the meaning of Federal Rule of Civil Procedure 26(b)(1). Therefore, Plaintiffs' Motion to Enforce the Court's February 21, 2018 Order and for Protective Order Regarding Downstream Discovery [ECF No. 879] is granted.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: July 12, 2018