UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To: All Actions | Case No. 16 C 8637<br><br>Magistrate Judge Jeffrey T. Gilbert |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Agri Stats Inc.'s Motion for Protective Order [ECF No. 894] as to requests for production of documents and electronically-stored information ("ESI") served by the End User Consumer Plaintiffs ("EUCPs"). For the reasons discussed below, Agri Stats's Motion for Protective Order [ECF No. 894] is denied. The Court finds that Agri Stats's request for a protective order that would exempt it from performing EUCPs' proposed custodial searches of ESI for a significant portion of the time frame for discovery in this case is not justified. EUCPs and Agri Stats, however, shall continue to meet and confer in a continuing effort to accommodate Agri Stats's concerns about burden and cost without unduly impairing EUCPs' legitimate requests for discovery in this case. If the parties reach impasse on particular issues, they can bring those issues back to this Court or to the Special Master, depending upon the issue, consistent with this Memorandum Opinion and Order.

### I. BACKGROUND

Beginning in September 2010, the United States' Department of Justice Antitrust Division ("DOJ") embarked on an investigation of Agri Stats. That investigation concluded on October 3, 2102. During that investigation, Agri Stats says it searched for and produced to the DOJ documents and information like what the EUCPs are requesting. At issue in Agri Stats's Motion

for Protective Order are the custodial searches it ran during the DOJ investigation. Agri Stats ran custodial searches for designated custodians for the period between September 17, 2008 through September 17, 2010, and it produced to the DOJ responsive documents it collected with those searches. The time frame for discovery in this case is much broader. It is from January 1, 2007 until September 2, 2016. *See* Order Regarding Production of Electronically Stored Information and Paper Documents ("ESI Protocol" or "Protocol") [ECF No. 459], at ¶ V.A.[1]

Agri Stats has agreed to produce in this case what it produced to the DOJ from custodial searches it conducted during the DOJ investigation. Agri Stats contends that it should not be required to run custodial searches of ESI created prior to October 3, 2012 (the date the DOJ investigation closed) for the 12 custodians whose data Agri Stats and the EUCPs have agreed will be subject to search in this case because it ran similar searches for most of those custodians during the DOJ investigation. Agri Stats argues that requiring it to re-run expensive searches with the EUCPs' search terms for those same custodians for a broader time period than it already ran is burdensome, disproportionate to the needs of this case, and unreasonable when viewed through the filter of Federal Rule of Civil Procedure 26(b)(2). Broadly speaking, Agri Stats asserts that the custodial searches it ran for the DOJ investigation, though more limited both in time frame and substance in terms of key words than what the EUCPs now are proposing, should be sufficient for the EUCPs' needs in this case. Agri Stats argues that a protective order should be entered so that it is not required to conduct any custodial searches for the agreed-upon custodians for emails or documents created prior to October 3, 2012.

---

[1] The ESI Protocol memorialized the parties' agreement regarding the production of ESI and paper documents in this case. The ESI Protocol also specifically provides that it "shall govern all Parties in the above captioned case whether they currently are involved or become so in the future, and any related actions that may later be consolidated with this case." ESI Protocol [ECF No. 459], at 2. Agri Stats appeared as a Defendant in this case on March 8, 2018 when the District Judge granted its attorney leave to appear pro hac vice. *See* [ECF No. 784].

EUCPs disagree and maintain that Agri Stats should be required, like every other Defendant in this case, to perform the requested custodial searches for ESI with the EUCPs' proposed search terms for the time frame stated in the ESI Protocol. EUCPs essentially focus on two issues: the time frame for the custodial searches and the substance of those searches.

With respect to time frame, EUCPs say, and Agri Stats does not refute, that Agri Stats only produced to the DOJ documents and ESI collected from custodial searches for the limited two-year period of September 17, 2008 to September 17, 2010. *See* EUCPs' Opposition [ECF No. 941], at 3. That means that the custodial searches Agri Stats ran for the DOJ investigation did not include documents created between January 1, 2007 to September 17, 2008 (a period of 20 months) and September 17, 2010 to October 3, 2012 (a period of 24 months). Therefore, according to EUCPs, if the Court were to enter the protective order requested by Agri Stats, that would leave more than three and a half years during the discovery period in this case for which Agri Stats would not be required to perform any custodial searches for ESI for the agreed-upon custodians.

With respect to the substance of the searches, EUCPs argue that the custodial searches performed by Agri Stats during the DOJ investigation and the subsequent production of documents collected from those searches did not capture all the relevant documents and information EUCPs are seeking in this case. EUCPs contend that: (1) their requests for information are much broader than the DOJ's requests; (2) there are time periods critical to the allegations in this case that were not covered by the DOJ's investigation; (3) the DOJ was investigating a different antitrust conspiracy than is at the heart of the EUCPs' allegations in this case; and (4) any limitations on Agri Stats's obligations to fully comply with the EUCPs' requests would unduly prejudice Plaintiffs "by eliminating critical periods of the class period, categories of documents, types of

3

documents excluded by search terms, and metadata identifying the custodians of documents." EUCPs' Opposition [ECF No. 941], at 3.

The Court agrees with EUCPs. Although Agri Stats conducted custodial searches for a limited two-year period in connection with the DOJ's investigation of possible agreements to exchange competitively sensitive price and cost information in the broiler, turkey, egg, swine, beef and dairy industries, that investigation focused on different conduct than is at the heart of EUCPs' allegations in this case, which cover a broader time period than was involved in the DOJ's investigation. The Court finds that a protective order is not warranted under these circumstances. Agri Stats should not be exempted from producing documents and ESI for the discovery time frame applicable to all other Defendants in this case. Nor should it be excused from querying its ESI using search terms that correlate with EUCPs' claims in this case because it performed similar but different custodial searches for a different (though overlapping) time period for the DOJ in connection with an investigation into different allegedly anti-competitive conduct. Accordingly, the Court concludes that Agri Stats must comply with the ESI Protocol, including the temporal scope of the legitimate discovery now sought by EUCPs. As also noted below, however, EUCPs and Agri Stats should continue the process they apparently have begun to address Agri Stats's concerns about burden and cost without unduly impairing EUCPs' legitimate requests for discovery in this case.

## II. LEGAL STANDARD

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, a district court has broad discretion in matters relating to discovery. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676 (7th Cir. 2002). Rule 26 permits the discovery of any "nonprivileged matter that is relevant to any

4

party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). When determining the scope of discovery, Rule 26(b)(1) requires consideration of:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.* Rule 26(b)(1) also recognizes that information within the scope of discovery does not need to be admissible at trial. *Id.* Nevertheless, despite the strong public policy in favor of disclosure of relevant materials, the district court also has broad authority to enter a protective order to limit discovery "for good cause shown . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1).

Rule 26 now also includes specific analytical filters applicable to the discovery of ESI. A court may impose limits on discovery of ESI if a party shows that it is "not reasonably accessible because of undue burden or cost." FED. R. CIV. P. 26(b)(2)(B). Once a party makes that showing, a court still may allow the discovery to proceed if the requesting party shows good cause, but the discovery nevertheless may be limited if it is unreasonably cumulative or duplicative, can be obtained from some other source that is more convenient, less burdensome, or less expensive, the party seeking the discovery has had ample opportunity to obtain it, or it is not relevant or is otherwise disproportional to the needs of the case within the meaning of Rule 26(b)(1). FED. R. CIV. P. 26(b)(2)(C). The Court finds that consideration of all these factors weighs in favor of EUCPs and against Agri Stats in connection with Agri Stats's Motion for Protective Order [ECF No. 894].

### III. ANALYSIS

**A. Agri Stats Has Not Made a Threshold Showing that the Information EUCPs Are Seeking Is Not Reasonably Accessible Because of Undue Burden or Cost**

As Federal Rule 26(b)(2)(B) directs, a court may impose limits on discovery of ESI if a party shows that it is "not reasonably accessible because of undue burden or cost." FED. R. CIV. P. 26(b)(2)(B). Agri Stats does not squarely address the requirements of Rule 26(b)(2)(B) or the specific analytical framework applicable to the discovery of ESI under the Federal Rules. Rather, it speaks in broad generalities about the basic unfairness of EUCPs' request that it "redo," in Agri Stats's parlance, custodial searches it already has run and about the fact that it is not getting "credit" for the $1.3 million it spent in connection with the DOJ's investigation. Perhaps because of its refusal to engage more directly with the analytical framework of Rule 26(b)(2), Agri Stats has not done a good job of identifying or quantifying the burden in either time or cost of doing what EUCPs want it to do. To the extent the basic thrust of Agri Stats's argument is that EUCPs should be satisfied with what it already has produced to the DOJ because most of what EUCPs are looking for probably is in that production somewhere, or it will be contained in the additional document populations Agri Stats has agreed to produce in this case, the Court does not agree. That argument fundamentally misses the point of the EUCPs' argument and does not address the relevant questions of undue burden, cost, and proportionality.

For example, Agri Stats says that it already has produced in this case more than 296,000 documents, including approximately 155,000 documents from before October 2012. Agri Stats's Memorandum [ECF No. 895], at 2. Agri Stats also says that it continues to produce responsive documents identified from other targeted but non-custodial searches on a rolling basis, and it is preparing to begin post-2012 custodial searches. Agri Stats's Memorandum [ECF No. 895], at 2. Regarding the custodial documents at issue in its Motion, Agri Stats states that it has collected approximately three million custodial documents from 2007 through 2017 and it has a "hit rate" of 94% on those documents meaning that many those documents are potentially responsive to

EUCPs' requests based on the search terms used. Agri Stats's Memorandum [ECF No. 895], at 2-3. None of this, however, responds directly to EUCPs' argument that not querying custodial email data bases for the full period the EUCPs have requested or running search terms calibrated to the allegations in this case will leave unreviewed a large amount of data that very well may contain relevant, important, and discoverable information.

Agri Stats represents that the estimated cost to run the custodial searches EUCPs propose and to review and produce the ESI is approximately $1.2 to $1.7 million. Agri Stats's Memorandum [ECF No. 895], at 3; Agri Stats's Reply [ECF No. 957], at 14. This estimated cost, however, is not itemized nor broken down for the Court to understand how it was calculated. For example, is it $1.2 to $1.7 million to review all the custodial documents from 2007 through 2016? Or does this estimate isolate only the pre-October 2012 custodial searches that Agri Stats does not want to have to redo, in its words? More importantly, Agri Stats also admits that this estimate is based on EUCPs' original proposed list of search terms. Agri Stats's Memorandum [ECF No. 895], at 3 n.4. But EUCPs represent (and Agri Stats does not disagree) that during their apparently ongoing discussions, EUCPs have proposed to relieve Agri Stats of the obligation to produce various categories of documents and data, and to revise the search terms to be applied to data that is subject to search. Agri Stats does not appear to have provided a revised cost estimate since EUCPs agreed to exclude certain categories of documents and information and revised their search terms. Rather, Agri Stats takes the position that custodial searches before October 3, 2012 are not proportional to the needs of the case – full stop – so it apparently has not fully analyzed the cost impact of EUCPs' revised search terms or narrowed document and data categories.

The Court wonders what the cost estimate is now after EUCPs have proposed to narrow the scope of what they are asking Agri Stats to do. EUCPs say they already have agreed, or are

working towards agreement, that 2.5 million documents might be excluded from Agri Stats's review. That leaves approximately 520,000 documents that remain to be reviewed. In addition, EUCPs say they have provided to Agri Stats revised search terms, but Agri Stats has not responded. EUCPs' Opposition [ECF No. 941], at 13-14. Agri Stats says nothing about this in its reply memorandum. [ECF No. 957].

EUCPs contend that Agri Stats's claims of burden and cost are vastly overstated. The Court tends to agree with EUCPs on this record. It is not clear what it would cost in either time or money to review and produce the custodial ESI now being sought by EUCPs for the entire discovery period set forth in the ESI Protocol or even for the pre-October 3, 2102 period. It seems that Agri Stats itself also does not know for sure what it would have to do and how much it would cost because the parties have not finished that discussion. Because EUCPs say they are continuing to work with Agri Stats to reduce what it must do to comply with their discovery requests, the incremental burden on what Agri Stats now is being asked to do is not clear.

For all these reasons, Agri Stats falls woefully short of satisfying its obligation to show that the information EUCPs are seeking is not reasonably accessible because of undue burden or cost.

**B. Even if Agri Stats Had Shown Undue Burden or Cost, EUCPs Have Shown Good Cause for the Production of the Requested ESI and Agri Stats Does Not Satisfy the Rule 26(b)(2)(C) Factors**

Even if a party makes a threshold showing that the information sought is not reasonably accessible because of undue burden or cost, a court still may allow the discovery to proceed if the requesting party shows good cause. *See* FED. R. CIV. P. 26(b)(2)(C). However, even with a showing of good cause, the discovery still may be limited if it is unreasonably cumulative or duplicative, can be obtained from some other source that is more convenient, less burdensome, or less expensive, the party seeking the discovery has had ample opportunity to obtain it, or it is not

relevant or is otherwise disproportional to the needs of the case within the meaning of Rule 26(b)(1). FED. R. CIV. P. 26(b)(2)(C).

### 1. EUCPs Have Shown Good Cause for the Production of the Requested ESI

The Court finds that EUCPs have shown good cause for requesting custodial searches of ESI for the entire time frame set forth in the ESI Protocol. If the scope and time frame of the custodial searches (using EUCPs' proposed search terms or the search terms to be agreed by the parties) were limited to the time period after the close of the DOJ investigation on October 3, 2012, it is clear to the Court that large categories of potentially relevant documents and information would be excluded. As EUCPs assert in their opposition brief, "there is no evidence that the DOJ looked into the allegations at the heart of the complaint: that defendants destroyed breeder flocks to suppress supply and manipulated the Georgia Dock price index." EUCPs' Opposition [ECF No. 941], at 4. EUCPs are investigating a different alleged conspiracy than what the DOJ investigated, and the EUCPs' requests for production are much more specific to their allegations than what the DOJ requested, and Agri Stats produced in the DOJ's investigation.

For example, EUCPs say the DOJ did not seek documents or information about: (1) an agreement among the broiler producers to fix prices, limit production or supply, or allocate customers for broilers; (2) the effect of breeder stock on broiler production/supply; (3) any defendant's decision to reduce its broiler production by destroying broiler eggs, slaughtering under-weight broilers, or intentionally delaying the manufacturing process; (4) disciplining in broiler production, supply, or capacity among broiler producers; and (5) any discussion or analysis of the effect of changes in the supply of broilers on the price. EUCPs' Opposition [ECF No. 941], at 4-5. Agri Stats has agreed to produce documents and information about these topics for the time frame post-October 3, 2012, but no such information would be produced pre-October 3, 2012 if

9

the protective order Agri Stats has requested were entered because the DOJ did not seek this information. *Id.*

The Court recognizes that there likely will be overlap between the material Agri Stats produced to the DOJ and the information sought in EUCPs' requests, but that overlap does not justify the broad protective order sought by Agri Stats. Critical search terms that the EUCPS want Agri Stats to run were not part of the DOJ's search, including, according to EUCPs, the words broiler, supply, reduce, price, inflate, Georgia, Dock, index as well as multiple domain names for defendants in this case. Because these terms were not searched during the DOJ investigation, there is no burden associated with purported duplication at least to the extent that data is now queried with search terms proposed by the EUCPs. EUCPs' Opposition [ECF No. 941], at 5-6. Moreover, omitting these search terms runs the risk that information that is very relevant to EUCPs' case but was not as relevant to the DOJ investigation will be missed.

Further, Agri Stats has not been able to confirm to EUCPs that it has, in fact, provided the entire DOJ production to them. EUCPs' Opposition [ECF No. 941], at 6. Questions have been raised that parts of that production are missing or at least still has not been located by Agri Stats current counsel who did not represent Agri Stats in the DOJ's investigation. Agri Stats' response to these concerns is not comforting as it admits that certain portions of the production to the DOJ are missing or have not yet been located. EUCPs' Opposition [ECF No. 941], at 6 (citing Chung Decl. [ECF No. 895-3], at ¶ 11, Ex. 1).

Moreover, it does not matter, as Agri Stats suggests, that the DOJ gave Agri Stats "a clean bill of health" and did not take any further action against it after it closed its investigation. That investigation focused on a different conspiracy theory, related to different products and markets, during a different (and much more limited) timeframe. Although Agri Stats is correct that the

DOJ's investigation included broilers in addition to other products, that does not mean that the DOJ was focused on what EUCPs are focused on with respect to broilers. And that matters when talking about search terms and time frame. Without belaboring the point, the EUCPs' argument in this respect is more convincing than Agri Stats's argument.

For all these reasons, the Court finds that EUCPs have shown there is good cause for the discovery they seek. The other Defendants in this case appear to have accepted, at least for the purposes of discovery, that the time period set forth in the ESI Protocol is the relevant time period that governs the search for and production of potentially responsive documents. EUCPs also represent that other Defendants have run their proposed search terms. It is more than reasonable that Agri Stats be required to comply with the same scope and time frame for discovery.

**2. Agri Stats Does Not Satisfy the Rule 26(b)(2)(C) Factors**

Even with a showing of good cause, Rule 26(b)(2)(C) provides that the discovery still may be limited if: (a) it is unreasonably cumulative or duplicative; (b) it can be obtained from some other source that is more convenient, less burdensome or less expensive; (c) the party seeking the discovery has had ample opportunity to obtain it; or (d) it is not relevant or is otherwise disproportional to the needs of the case within the meaning of Rule 26(b)(1). *See* FED. R. CIV. P. 26(b)(2)(C).

The first two factors the Court must consider are whether the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive. *See* FED. R. CIV. P. 26(b)(2)(C)(i). As discussed above, EUCPs contend that Agri Stats ran custodial searches for the limited two-year period of September 17, 2008 to September 17, 2010. Agri Stats does not dispute this. This leaves more than three and a half years during the discovery period in this case with no custodial productions from

11

Agri Stats: January 1, 2007 to September 17, 2008 (20 months); and September 17, 2010 to October 3, 2012 (24 months). Therefore, according to the EUCPs, the discovery they seek is not completely duplicative or cumulative, and there are at least three and a half years for which Agri Stats is refusing to search for and produce any custodial emails and documents.

The Court recognizes that EUCPs are asking Agri Stats to run searches in custodial data bases that already were searched during the DOJ's investigation. But EUCPs want Agri Stats to run additional search terms over a longer period of time than the searches Agri Stats ran during the DOJ's investigation. The Court does not agree that searching for and producing documents for a time frame outside the parameters of the DOJ investigation based on search terms that are more calibrated to the allegations in this case than those used in the DOJ investigation necessarily is cumulative or duplicative. Agri Stats cannot and does not say that proceeding as EUCPs have requested could not uncover documents that would be useful or perhaps even vitally important to EUCPs. It simply speculates that exercise likely would not be worth the time and expense and it is unlikely it would uncover anything useful beyond what Agri Stats already collected for the DOJ. EUCPs, on the other hand and among other things, point to documents already produced by Agri Stats and other Defendants to support their argument that the searches they want run could reveal important information that would be relevant to their claims.

The Court agrees with the EUCPs. Clearly, the DOJ's multi-industry investigation touched upon the broiler industry, and Agri Stats undoubtedly produced to the DOJ some information that also is being sought by EUCPs. But Agri Stats itself characterizes the DOJ's investigation as focused on possible agreements to exchange competitively sensitive price and cost information in the broiler, turkey, egg, swine, beef and dairy industries. Agri Stats's Memorandum [ECF No. 895], at 5. It does not say the DOJ investigated the allegations at the heart of the complaint in this

case. And there is no evidence that DOJ asked Agri Stats to search for documents related to price indices, broiler supply, or breeder flocks, among other things, which is what EUCPs are asking Agri Stats to do. So, Agri Stats cannot say with any authority that the searches EUCPs want it to run are completely cumulative or duplicative of what it already has done. Although Agri Stats parries EUCPs' argument that documents already produced indicate that there may be gold in the data that Agri Stats does not want to search, the Court need not delve deeply into that dispute. Common sense teaches that querying data created during a relevant time frame with search terms calibrated to the allegations in this case could yield potentially relevant and important information.

Agri Stats argues that it is not refusing to produce any documents prior to October 3, 2012, and, in fact, it already has produced approximately 155,000 pre-October 2012 documents. Agri Stats's Memorandum [ECF No. 895], at 2 (citing Chung. Decl. [ECF No. 895-3], at ¶2). Agri Stats says it just wants to be excused from having to perform what it argues are duplicative custodial email searches of the 12 agreed-upon custodians in this case. Again, the fact that Agri Stats has produced some pre-October 3, 2012 documents from targeted non-custodial searches it ran or from custodial searches of the same custodians for the DOJ investigation does not mean it should be excused from performing custodial searches that reasonably can be predicted to uncover additional responsive documents that could be very relevant to EUCPs' claims in this case.

The cases cited by Agri Stats are distinguishable from this case. In *In re Disposable Contact Lens Anti-Trust Litigation*, 2016 WL 6518660 (Nov. 1, 2016), the defendants already had produced documents for nine custodians, and class plaintiffs sought to compel defendants to produce documents for additional custodians. The court was not persuaded by defendants' argument, among others, that they already had spent $700,000 to produce the documents from the nine

custodians, and the court declined to limit discovery of additional custodians because defendants already had incurred substantial legal fees in responding to the investigation.

*In re Disposable Contact Lens Anti-Trust Litigation* also is fundamentally distinguishable from this case because EUCPs and Agri Stats are not arguing about the number of custodians. Agri Stats produced documents for 27 custodians in the DOJ investigation, and the parties already have agreed to 12 custodians in this case, substantially fewer individuals than in the DOJ investigation. At issue here are the search terms and the time frame over which the information being sought by EUCPs will be collected. EUCPs argue that Agri Stats should be required to respond to their specific discovery requests and to run their proposed search terms for the identified custodians. It is not disputed that there likely will be some overlap with the DOJ investigation. However, just because there may be some overlap is not sufficient reason to not perform the searches in the first place, particularly given Agri Stats's all or nothing approach here.

Another case cited by Agri Stats also is not on point. In *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99 (S.D. N.Y. 2013), the district court concluded that the plaintiff was not entitled to all the documents defendant had turned over to "any government body or agency" pursuant to a subpoena. 297 F.R.D. at 111. The court held that the plaintiff first had to show that the documents sought, in fact, were relevant to the issues in the case, and just because the defendant may have to produce documents that it had produced in response to a government subpoena was not a reason given to support an argument that defendant did not have to perform custodial searches. In fact, the court "urge[d] the parties to reexamine their positions and work together in good faith to create a mutually acceptable ESI search regime" *Id.* at 105. There is no question here that the information EUCPs seek is relevant.

The Court agrees with EUCPs that documents created pre-October 2012 may be highly relevant and could provide insight into allegedly important events that occurred during this time frame, like Tyson resuming its participation in Agri Stats in January 2008. The fact that Agri Stats's production of documents during the DOJ investigation touched upon or may have touched upon some of the issues raised in this case does not justify the broad protective order sought by Agri Stats, and the Court concludes that excusing Agri Stats from having to run any custodial searches prior to October 3, 2012 would unduly prejudice EUCPs and hamper them in discovering their case.

The third factor the Court must consider is whether EUCPs already have had the opportunity to obtain the information sought by discovery in the action. FED. R. CIV. P. 26(b)(2)(B)(ii). EUCPs named Agri Stats as a Defendant in their Second Consolidated Amended Class Action Complaint [ECF No. 716], which was filed on February 12, 2018, and served their first set of requests for production on March 1, 2018. Therefore, this is the first opportunity that EUCPs have had to pursue this discovery from Agri Stats. That EUCPs have had the opportunity to pursue the same kinds of discovery from other Defendants is not a substitute for pursuing it from Agri Stats.

Finally, circling back to the general framework of Rule 26, the final factors the Court must consider are whether the proposed discovery is proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of the proposed discovery outweighs its likely benefit. *See* FED. R. CIV. P. 26(b)(2)(C)(iii). In the Court's view, each of these factors weigh in EUCPs' favor.

Considering the importance of the issues at stake in this litigation, EUCPs allege in their Second Consolidated Amended Class Action Complaint [ECF No. 716] that Agri Stats was a significant participant in a large antitrust conspiracy to fix the price of Broilers and that it facilitated the conspiracy by providing the information and tools that Broiler producers needed to monitor one another and ensure that they were sticking to their agreement to reduce Broiler supply and inflate broiler prices. *See generally* [ECF No. 716], at ¶¶ 170-208. In exchange for these monitoring services—which, EUCPs argue, allowed the Broiler producers to reap billions of dollars—broiler producers paid Agri Stats at least $45.8 million. EUCPs' Opposition [ECF No. 941], at 12. In addition, this litigation involves a massive amount of commerce in the United States during the class period. As alleged in EUCPs' Second Consolidated Amended Class Action Complaint, the value of wholesale broilers produced in 2014 was $32.7 billion, and the market value varied between $21.8 and $20.7 billion from 2008 to 2013. *See* EUCPs' Amended Compl. [ECF No. 716], at ¶ 136. EUCPs' proposed discovery is calibrated to their claims, Agri Stats is alleged to be an important player in the scheme EUCPs assert, and it is reasonable to believe that Agri Stats has information that is relevant and important to EUCPs' claims.

As for the parties' relative access to the information, Agri Stats has access to all the information from its custodians to prepare its defenses. Without the production of ESI from custodial searches performed prior to October 3, 2012, EUCPs potentially will be deprived of more than three and a half years of discovery from the early class period notwithstanding that fact that Agri Stats has agreed to perform targeted searches for documents prior to October 3, 2012. The Court finds that that such a gap in access to and production of custodial documents would be unduly prejudicial to EUCPs.

Lastly, the Court is instructed to look at the parties' resources when weighing proportionality under Rule 26(b)(1). Agri Stats contends that it would be too burdensome to perform any custodial searches prior to October 3, 2012, because it is a small company with EBITDA last year of $7.3 million and the estimated cost for the pre-October 3, 2012 custodial searches is $1.2 to $1.7 million. As noted above, though, those figures do not appear to consider EUCPs' proposals to eliminate certain categories of documents and information and to revise their search terms. Moreover, as EUCPs' suggests and the Court agrees, Agri Stats's pre-tax earnings for one year ignores the profits Agri Stats collected since 2007, which is the beginning of the time frame for the conspiracy alleged by EUCPs in this case, and what it did with that money. The Court recognizes that the type of discovery EUCPs have propounded upon Agri Stats is expensive. But that is only one part of the analysis and expense alone, particularly given the lack of clarity in that regard at this stage, does not excuse Agri Stats from having to respond to discovery in this case.

For all the reasons discussed above, the Court is not persuaded by Agri Stats's burden argument. Accordingly, the Court concludes that EUCPs have shown good cause for Agri Stats to comply with the ESI Protocol and to search for and produce pre-October 3, 2012 custodial documents, and that production of that information is proportional to the needs of the case. Therefore, a blanket protective order excusing Agri Stats from performing any custodial searches prior to October 3, 2102 would not be appropriate.[2]

---

[2] The Court notes that in response to Agri Stats's burden argument, EUCPs' proposed that Agri Stats produce all of its pre-October-2012 documents, and in exchange, EUCPs would sign a robust claw back agreement, allowing Agri Stats to recover any privileged materials. Agri Stats rejected this proposal and argues that EUCPs' proposal that Agri Stats turn over all of its documents without review is patently unreasonable. Claw back agreements are used increasingly in litigation involving discovery of large numbers of documents or large amounts of ESI. But the Court will not force Agri Stats to enter into any claw back agreement it does not want to sign. Depending upon the document population involved, however, the Court does not believe a claw back agreement would be patently unreasonable or unworkable.

## C. It Is Not Clear the Parties Have Exhausted their Obligation to Meet and Confer to Limit the Burden on Agri Stats

This Order addresses only the temporal scope of the custodial searches that Agri Stats must perform because that is the thrust of Agri Stats's argument in support of its Motion for Protective Order. As explained above, the Court concludes that Agri Stats, like all other Defendants in this case, must search for and produce relevant documents and ESI from January 1, 2007, through September 2, 2106. However, it is not clear the parties have exhausted their meet and confer obligations on the issue of EUCPs' revised search terms or other proposals to reduce the burden on Agri Stats, nor is it clear that the parties have engaged with the Special Master to help resolve any issues that may be related to her domain of electronic discovery.

Agri Stats took a preemptive and calculated step in filing its Motion for Protective Order and took the extreme position that it should not be required to perform any pre-October 3, 2012 custodial searches. As discussed above, the Court disagrees with that approach. The Court, however, does recognize that there may be ways both to satisfy EUCPs and relieve some of the burden on Agri Stats. As discussed above, for example, EUCPs say that of the three million documents Agri Stats has collected that fall within the 2007 to 2016 period, EUCPs already have agreed, or are working towards an agreement, that 2.5 million documents may be excluded from review. That leaves only 520,000 documents at issue, and EUCPs have represented that the parties have continued to meet and confer on the proposed search terms to be used to cull the documents Agri Stats would have to review. EUCPs' Opposition [ECF No. 941], at 14. It stands to reason that the cost to review and produce 520,000 documents probably is much less than the cost to review and produce three million documents. As noted above, Agri Stats did not respond to this argument in its reply brief. With this decision, the Court does not intend to prevent further

discussion, but rather encourages the parties to resume or continue talking in an effort to resolve any remaining disputes.

## IV. CONCLUSION

For all these reasons, Defendant Agri Stats Inc.'s Motion for Protective Order [ECF No. 894] is denied.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: July 26, 2018