**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To:<br><br>    All Commercial and Institutional<br>    Indirect Purchaser Actions | Case No. 1:16-cv-08637 |

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH FIELDALE FARMS CORPORATION AND FOR <u>CONDITIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS</u>**

## TABLE OF CONTENTS

**Page**

I.    Introduction ........................................................................................................1

II.    Background ........................................................................................................1

III.    Summary of the Settlement Agreement ...........................................................3

IV.    Standards Applicable to Preliminary Approval of the Proposed Settlement ....................4

      A.    The Proposed Settlement Falls "Within the Range of Possible Approval" and Should Be Preliminarily Approved ...........................................................4

      B.    The Settlement Is Fair and Resulted from Arm's Length Negotiations .................5

V.    The Court Should Certify the Proposed Settlement Class .................................8

      A.    The Requirements of Rule 23(a) are Satisfied ...................................................10

            1.    Numerosity ...........................................................................................10

            2.    Common Questions of Law and Fact .....................................................10

            3.    Typicality ..............................................................................................11

            4.    Adequacy ...............................................................................................12

            5.    The Proposed Settlement Class Satisfied Rule 23(b)(3) .........................13

VI.    Notice to the Class ..........................................................................................14

VII.    Conclusion ......................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aftermarket Filters Antitrust Litig.*,
No. 1:08-cv-04883, (ECF No. 885) (N.D. Ill. Feb. 16, 2012) ................................................15

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .........................................................................................................8, 9, 14

*In re Ampicillin Antitrust Litig.*,
82 F.R.D. 652 (D.D.C. 1979) ...................................................................................................6

*Armstrong v. Bd. of Sch. Dirs.*,
616 F.2d 305 (7th Cir. 1980) ..............................................................................................4, 5

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) ..............................................................................................6

*In re Auto. Parts Antitrust Litig.* (*Wire Harness Systems*),
Master File No. 12-md-02311, Case No. 2:12-cv-00103 (ECF No. 577) (E.D.
Mich. July 10, 2017) ..............................................................................................................15

*In re Catfish Antitrust Litig.*,
826 F. Supp. 1019 (N.D. Miss. 1993) ....................................................................................13

*In re Cmty. Bank of N. Va.*,
418 F.3d 277 (3d Cir. 2005) ....................................................................................................9

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) .................................................................................................12

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
768 F.2d 884 (7th Cir. 1985) ...................................................................................................4

*In re Foundry Resins Antitrust Litig.*,
242 F.R.D. 393 (S.D. Ohio 2007) ..........................................................................................13

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) ...................................................................................................4

*Goldsmith v. Tech. Solutions Co.*,
No. 92-C-4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ...............................................5

*Hughes v. Baird & Warner, Inc.*,
No. 76 C 3929, 1980 WL 1894 (N.D. Ill. Aug. 20, 1980) .....................................................13

*In re IPO Sec. Litig.*,
226 F.R.D. 186 (S.D.N.Y. 2005) ...........................................................................7

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) .............................................................................4, 5

*Kohen v. Pacific Inv. Mgmt.*,
571 F.3d 672 (7th Cir. 2009) ...............................................................................12

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Pa. 2003) ....................................................................5

*In re Mercedes-Benz Antitrust Litig.*,
213 F.R.D. 180 (D.N.J. 2003) .............................................................................11

*In re Mid-Atlantic Toyota Antitrust Litig.*,
564 F. Supp. 1379 (D. Md. 1983) ..........................................................................5

*In re NASDAQ Market-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y 1997) ..............................................................................4

*In re New Jersey Tax Sales Antitrust Litig.*,
No. 3:12-cv-01893 (ECF No. 276) D. N.J. Aug. 13, 2013 ..................................15

*Owner-Operator Indep. Drivers' Ass'n v. Allied Van Lines, Inc.*,
231 F.R.D. 280 (N.D. Ill. 2005) ...........................................................................11

*Paper Sys. Inc. v. Nippon Paper Indus.*,
281 F.3d 629 (7th Cir. 2002) .................................................................................6

*Saltzman v. Pella Corp.*,
257 F.R.D. 471 (N.D. Ill. 2009) .....................................................................11, 13

*Schmidt v. Smith & Wollensky LLC*,
268 F.R.D. 323 (N.D. Ill. 2010) ...........................................................................10

*Thillens, Inc. v. Cmty. Currency Exch. Ass'n*,
97 F.R.D. 668 (N.D. Ill. 1983) .............................................................................10

*In re Transpacific Passenger Air Transportation Antitrust Litigation*,
No. 07-05634-CRB (ECF Nos. 968, 1009) (N.D. Ca.) ........................................15

*Uhl v. Thoroughbred Tech. & Telecomms, Inc.*,
309 F.3d 978 (7th Cir. 2002) .................................................................................5

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).............................................................................................10

*In re Warfarin Sodium Antitrust Litig.*,
212 F.R.D. 231 (D. Del. 2002) ...........................................................................................4

**Rules**

Federal Rules of Civil Procedure
Rule 23 ....................................................................................................8, 9, 10, 15
Rule 23(a).................................................................................................9, 10, 13
Rule 23(a)(1)...................................................................................................10
Rule 23(a)(2)...............................................................................................10, 11
Rule 23(a)(3)...............................................................................................11, 12
Rule 23(a)(4)...............................................................................................12, 13
Rule 23(b) ..........................................................................................................9
Rule 23(b)(3)...........................................................................................9, 13, 14
Rule 23(c)(2)(B)........................................................................................14, 15
Rule 23(e)...........................................................................................4, 5, 6, 14

**Other Authorities**

*Corporate Leniency Policy*,
U.S. Dep't of Justice, https://www.justice.gov/atr/corporate-leniency-policy .........................2

## I.    Introduction

The Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs") respectfully move the Court for preliminary approval of a proposed settlement between CIIPPs and Fieldale Farms Corporation ("Fieldale Farms" or "Settling Defendant").[1]  This settlement, the first "ice-breaker" settlement reached between CIIPPs and any Defendant in this litigation, was reached as a result of arms-length, hard-fought negotiations, and Interim Class Counsel believes that the settlement is in the best interests of the class. *See* Declaration of Adam J. Zapala ("Zapala Decl."), ¶¶ 6, 7, 11. Pursuant to the Settlement Agreement, Fieldale Farms will pay one million and four hundred thousand dollars ($1,400,000.00) in cash to the Settlement Class and provide material cooperation to aid in the future prosecution of this action.

CIIPPs now move the Court for preliminary approval of the Settlement Agreement and to certify the proposed Settlement Class. As discussed in the memorandum below, at a later time Co-Lead Counsel will move the Court to approve a program to notify members of the Settlement Class of this and any other then-pending settlements, as CIIPPs believe it would be more efficient and economical to defer the notice and claims process until such time as there are further recoveries in the case, by settlement or by judgment.

## II.    Background

This is an antitrust class action filed against certain producers of Broilers. CIIPPs allege that Defendants conspired and combined to fix, raise, maintain, and stabilize the price of Broilers sold in the United States. *See* CIIPPs' Fifth Consolidated Amended Complaint, ¶ 1 (ECF No. 1397). CIIPPs further allege that Defendants implemented their conspiracy in various ways, including by coordinating their output and limiting production with the intent and expected result

---

[1] The Settlement Agreement is attached as Exhibit A to the Declaration of Adam J. Zapala (hereinafter "Settlement" or "Settlement Agreement").

of increasing prices of Broilers sold in the United States, including by exchanging detailed, competitively sensitive, and closely-guarded non-public information about prices, capacity, sales volume, and demand, including through non-party co-conspirator Agri-Stats.

This litigation was commenced in September 2016. On October 14, 2016, the Court appointed the undersigned as Interim Indirect Purchaser Plaintiffs' Co-Lead Counsel (*See* ECF No. 144). Thereafter, CIIPPs filed a Consolidated Amended Complaint on October 28, 2016 (ECF No. 179). The current, operative complaint was filed on November 13, 2018 (ECF No. 1397) (hereinafter, the "Complaint"). On January 27, 2017, all Defendants filed a motion to dismiss CIIPPs' complaint (ECF No. 292), which the Court largely denied on November 11, 2017. Discovery has commenced in earnest and is proceeding apace.

Unlike some other civil antitrust actions, CIIPPs developed and brought this case without the benefit of a formal antitrust investigation by the U.S. Department of Justice or the assistance of a leniency applicant under the Department of Justice's Corporate Leniency Program. *See Corporate Leniency Policy*, U.S. Dep't of Justice, https://www.justice.gov/atr/corporate-leniency-policy. As a result, since filing their initial complaint, CIIPPs have continued their factual investigation into the conspiracy alleged in their Complaint, including through substantial party and non-party discovery and consultation with industry and economic experts. As part of their continued prosecution, CIIPPs' Co-Lead Counsel negotiated this icebreaker settlement with Fieldale Farms.

In addition to monetary consideration, this first settlement permits CIIPPs to obtain Fieldale Farms' cooperation in their continued prosecution against the remaining Defendants. Further, Fieldale has one of the smallest Broiler market shares of all Defendants. Thus, a settlement with Fieldale Farms will not materially affect the size of the Defendant group

2

remaining in the litigation or the commerce at issue in the case. Additionally, the non-settling Defendants remain jointly and severally liable for any damages resulting from Fieldale Farms' Broiler sales during the Class Period.

## III.    Summary of the Settlement Agreement

After extensive arm's length negotiations over the course of many months, during which time the parties held in-person meetings, telephonic meetings, and exchanged information and settlement proposals and each side had the opportunity to be fully informed of the relative strengths and weaknesses of their positions, litigations risks and issues involving ability to pay, *see* Zapala Decl., ¶ 6, CIIPPs agreed to settle with Fieldale Farms in return for its agreement to pay one million and four hundred thousand dollars ($1,400,000.00) to the Settlement Class, and to provide cooperation to CIIPPs in their ongoing prosecution of the case. *See* Settlement Agreement, §§ I.B.31, II.A.1, and II.A.3. In return, CIIPPs and the proposed Settlement Class agreed to release claims against Fieldale Farms which were or could have been brought in this litigation arising from the conduct alleged in the Complaint. *Id.* at §§ II.B. The release does not extend to any other Defendants.

Fieldale Farms' cooperation includes providing CIIPPs with documents it produced to the Office of the Florida Attorney General, and providing documents, if any, it produces in the future to other competition authorities in any jurisdiction; producing Agri-States reports, phone records, ESI and other documents; an attorney proffer of the principal facts known to the Settling Defendant relevant to the alleged conduct at issue;  and making five current or former employees available for interviews, three for depositions, and two for trial testimony. *See id.* at § II.A.3.

IV.     **Standards Applicable to Preliminary Approval of the Proposed Settlement**

A.      **The Proposed Settlement Falls "Within the Range of Possible Approval" and Should Be Preliminarily Approved**

There is an overriding public interest in quieting litigation through settlement; this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986) (noting that there is a general policy favoring voluntary settlements of class action disputes); *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement.*")*, *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong*, 616 F.2d at 313 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). A class action, however, may be settled only with court approval. *See* 2 NEWBERG ON CLASS ACTIONS, §11.24 (3d ed. 1992); *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) ("The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'"); *Armstrong*, 616 F.2d at 314; *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y 1997).

A proposed settlement falls within the "range of possible approval" under Rule 23(e) when it is conceivable that the proposed settlement will meet the standards applied at final approval. The standard for final approval of a class action settlement is whether the proposed

settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *see Uhl v. Thoroughbred Tech. & Telecomms, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002); *Isby*, 75 F.3d at 1198-99.

When granting preliminary approval, a court does not conduct a "definitive proceeding on the fairness of the proposed settlement," and the court "must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting *In re Montgomery Cty. Real Estate Antitrust Litig.*, 83 F.R.D. at 315-16). That determination must await the final hearing where the fairness, reasonableness, and adequacy of the settlement are assessed under the factors set forth in *Armstrong*.[2]

### B.     The Settlement Is Fair and Resulted from Arm's Length Negotiations

The requirement that class action settlements be fair is designed to protect against collusion among the parties. *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. at 1383. There is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's length negotiations. *See* 2 NEWBERG ON CLASS ACTIONS, § 11.40 at 451 (2d ed. 1985); *Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 WL 17009594, at *3 n.2 (N.D. Ill. Oct. 10, 1995). Settlements proposed by experienced counsel and which result from arm's length negotiations are entitled to deference from the court. *See, e.g., In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (*quoting Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa.

---

[2] The *Armstrong* factors for a motion for final approval of a class settlement as fair, reasonable, and adequate are: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendants' ability to pay; (3) the complexity, length, and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of class members to the settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and the amount of discovery completed. *Armstrong,* 616 F. 2d at 314.

1997)). The initial presumption in favor of such settlements reflects courts' understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness concerns of Rule 23(e). In making the determination as to whether the proposed settlement is fair, reasonable, and adequate, the Court necessarily will evaluate the judgment of the attorneys for the parties regarding the "strength of plaintiffs' case compared to the terms of the proposed settlement." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010).

The proposed Settlement plainly meets the standards for preliminary approval. The Settlement reached here is the product of intensive settlement negotiations conducted over a period of months and included several rounds of give-and-take between CIIPPs' Co-Lead Counsel and Fieldale Farms' counsel. (Zapala Decl. at ¶ 6). Thus, based on both the monetary and cooperation elements of the Settlement Agreement, CIIPP Co-Lead Counsel believe this is a fair settlement for the Class. (*Id.* at ¶ 11.)

Moreover, this Settlement does not affect the potential full recovery of damages for the Class under the antitrust laws in light of the fact that the remaining Defendants will remain jointly and severally liable for injuries resulting from Fieldale Farms' sales during the Class Period. *See Paper Sys. Inc. v. Nippon Paper Indus.*, 281 F.3d 629, 632 (7th Cir. 2002) ("[E]ach member of a conspiracy is liable for all damages caused by the conspiracy's entire output."). In addition to not affecting the overall damages, the Settlement should hasten and improve the Class' recovery by providing CIIPPs access to information that likely would otherwise only be obtainable through protracted discovery. *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential

6

recovery" due to joint and several liability and where settling defendant's "assistance in the case again [a non-settling defendant] will prove invaluable to plaintiffs").

In addition to a monetary payment, the Settlement will provide the additional benefit to the Class in the form of cooperation from Fieldale Farms, which can assist counsel in streamlining discovery and trial. Courts have recognized the value of such cooperation:

> [F]rom a pragmatic standpoint, the value of . . . [cooperating defendants] in litigation, as opposed to the specter of hundreds of uncooperative opponents, is significant. The [settling defendants] know far better than the plaintiff classes precisely what occurred in the [relevant] period . . . and their willingness to open their files . . . may ease the plaintiffs' discovery burden enormously.

*In re IPO Sec. Litig.*, 226 F.R.D. 186, 198-99 (S.D.N.Y. 2005) (footnote omitted). The cooperation here is even more valuable in light of the applicability of joint and several liability to CIIPPs' claims. While CIIPPs believe that their case is strong, any complex antitrust litigation is inherently costly and risky, and this Settlement mitigates that risk and protects the Class. Conversely, Fieldale Farms believes its case is strong and that it would achieve success on the merits in defense of the action. It denies any liability with respect to both the alleged coordinated output reduction and the Georgia Dock aspects of the alleged conspiracy, and Fieldale maintains that it did nothing wrong. But its participation in both the Georgia Dock and Agri-Stats gives it valuable and unique insight into two of the primary mechanisms through which CIIPPs allege the Defendants implemented their conspiracy.

Furthermore, CIIPPs are at a relatively early stage of their expert analysis, and there are many contingencies that could affect that determination, including the risk of whether or not a class or classes are certified; whether or not pass-through of any overcharge can be demonstrated to the indirect class; whether or not the class or classes will be certified – and if they are certified whether they will be for a shorter period than proposed by CIIPPs; whether or not certain

Defendants will prevail on liability; and whether or not certain Defendants will become insolvent. These are just a few of the risks, and Interim Lead Counsel's duties to the CIIPPs preclude a further or more detailed discussion in this brief as to how Interim Lead Counsel weighs those risks.

Indeed, CIIPPs' work in this case has been extensive, and the information gleaned during the course of litigation and discovery guided the parties during the settlement negotiations. Among other tasks through the course of this litigation, CIIPPs' counsel (1) comprehensively researched the industry and consulted with experts prior to filing their 177-page consolidated complaint; (2) briefed and researched Defendants' voluminous motions to dismiss in preparation for their opposition; (3) largely prevailed on those pleadings challenges; (4) have received over six and a half million documents and are in the process of reviewing them; (5) negotiated several case protocols, such as the ESI, discovery limits, and others; (6) attended (and argued) at countless court hearings; and (7) have already taken 23 depositions with a view toward trial.

In sum, the Settlement Agreement: (1) provides substantial benefits to the class; (2) is the result of extensive good faith negotiations between knowledgeable and skilled counsel; (3) was entered into after extensive factual investigation and legal analysis; and (4) in the opinion of experienced Class Counsel, is fair, reasonable, and adequate to the Class. Accordingly, Co-Lead Counsel believe that the Settlement Agreement is in the best interests of the Class Members and should be preliminarily approved by the Court.

## V.    The Court Should Certify the Proposed Settlement Class

At the preliminary approval stage, the Court must also determine whether the proposed Settlement Class should be certified for settlement purposes. Under Rule 23, class actions may be certified for settlement purposes only. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 620 (1997). Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b). *Id.* at 613-14; *see also In re Cmty. Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005) ("[C]ertification of classes for settlement purposes only [is] consistent with Fed. R. Civ. P. 23, provided that the district court engages in a Rule 23(a) and (b) inquiry[.]"). CIIPPs seek certification of the following settlement class:

> All entities who indirectly purchased Broilers from Defendants or co-conspirators in the United States during the Class Period for their own use in commercial food preparation, including institutional purchasers such as hospitals, nursing homes, and schools.

> Specifically excluded from this Class are: (a) natural persons who purchased Broilers for their personal use and not for commercial Food preparation (End-User Consumers); (b) purchasers of Broilers directly from Defendants; (c) purchasers of Broilers for resale in unaltered form; (d) purchasers of value added products containing Broilers, that are not manufactured, supplied or processed by Defendants, or otherwise not under the control of Defendants; (e) the Defendants; (f) the officers, directors or employees of any Defendant; (g) any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant; (h) any federal, state governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; (i) any juror assigned to this action; and G) any Co-Conspirator identified in this action.

(Settlement Agreement, § II.E.2.) This is materially the same class proposed in CIIPPs' Complaint. Plaintiffs' claims for injunctive relief under federal antitrust laws covers all purchases of Broilers in the United States. Complaint, ¶¶ 459-464. Plaintiffs' claims for monetary damages based on state law, as indirect purchasers, are limited to those states that have repealed *Illinois Brick*, either through an antitrust or consumer protection statute. Complaint, ¶ 420. As detailed below, this proposed Class meets the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3).

### A. The Requirements of Rule 23(a) are Satisfied

#### 1. Numerosity

Fed. R. Civ. P. 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable." No magic number satisfies the numerosity requirement, however, "a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Schmidt v. Smith & Wollensky LLC*, 268 F.R.D. 323, 326 (N.D. Ill. 2010) (citations omitted). The proposed Settlement Class consists of persons and entities that purchased Broilers from the Defendants during the period from January 1, 2008 to the Date of Preliminary Approval. While the precise number of Class members is presently known only to Defendants, based on their extensive investigation of Co-Lead Counsel, there are thousands of entities that fall within the Settlement Class definition. Thus, joinder would be impracticable.

#### 2. Common Questions of Law and Fact

Fed. R. Civ. P. 23(a)(2) requires that there be "questions of law or fact common to the class." Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim and "[e]ven a single [common] question will" satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

A central allegation in the Complaint is that Defendants illegally conspired to restrict supply and thereby increase the prices of Broilers. Proof of this conspiracy will be common to all Class members. See, e.g., *Thillens, Inc. v. Cmty. Currency Exch. Ass'n*, 97 F.R.D. 668, 677 (N.D. Ill. 1983) ("The overriding common issue of law is to determine the existence of a conspiracy."). In addition to that overarching question, this case is replete with other questions of law and fact common to the Settlement Class including: (1) the role of each Defendant in the conspiracy; (2) whether Defendants' conduct violated Section 1 of the Sherman Act; (3) whether Defendants affirmatively concealed their agreement; (4) whether Defendants' conspiratorial conduct

restricted Broiler supplies and caused the prices of Broilers to be inflated; (5) the appropriate measure of monetary relief, including the appropriate measure of damages; and (6) whether Plaintiffs and Class members are entitled to declaratory and/or injunctive relief. Accordingly, the Settlement Class satisfies Rule 23(a)(2).

### 3. Typicality

Fed. R. Civ. P. 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. "[T]ypicality is closely related to commonality and should be liberally construed." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009) (citations omitted). Typicality is a "low hurdle," requiring "neither complete coextensivity nor even substantial identity of claims." *Owner-Operator Indep. Drivers' Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005). When "the representative party's claim arises from the same course of conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory," factual differences among class members do not defeat typicality. *Id.* Courts generally find typicality in cases alleging a price-fixing conspiracy. *See, e.g.*, *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 185 (D.N.J. 2003) (finding typicality met where plaintiffs' that they were harmed by an illegal price-fixing conspiracy).

CIIPPs here allege a conspiracy to fix, maintain, and inflate the price of Broilers in the United States. The named class representative Plaintiffs will have to prove the same elements that absent Settlement Class members would have to prove, *i.e.*, the existence and effect of such conspiracy. As alleged in the Complaint, each named representative purchased Broilers indirectly from one or more Defendants and that it was overcharged and suffered an antitrust injury as a result of the violations alleged in the Complaint. (Complaint, ¶¶ 22-28.) Because the representative Plaintiffs' claims arise out of the same alleged illegal anticompetitive conduct and

11

are based on the same alleged theories and will require the same types of evidence to prove those theories, the typicality requirement of Rule 23(a)(3) is satisfied.

### 4. Adequacy

Fed. R. Civ. P. 23(a)(4) requires that, for a case to proceed as a class action, the court must find that "the representative parties will fairly and adequately protect the interests of the class." Adequacy of representation is measured by a two-part test: (i) the named plaintiffs cannot have claims in conflict with other class members, and (ii) the named plaintiffs and proposed class counsel must demonstrate their ability to litigation the case vigorously and competently on behalf of named and absent class members alike. *See Kohen v. Pacific Inv. Mgmt.*, 571 F.3d 672, 679 (7th Cir. 2009). Both requirements are satisfied here. As they demonstrated at the time they sought appointment, Co-Lead Counsel are qualified, experienced, and thoroughly familiar with antitrust class action litigation. Co-Lead Counsel have successfully litigated many significant antitrust actions and have prosecuted and will continue to vigorously prosecute this lawsuit.[3]

Moreover, the interests of the settling Class members are aligned with those of the representative Plaintiffs. Plaintiffs, like all Class members, share an overriding interest in obtaining the largest possible monetary recovery and as fulsome cooperation as possible. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes"). Representative Plaintiffs are not afforded any special compensation by this proposed Settlement and all Class members similarly share a common interest in obtaining Fieldale Farms' early and substantial cooperation to prosecute this case.

---

[3] *See* ECF Nos. 116-0—116-8 (CIIPPs' Motion to Appoint Co-Lead and Liaison Counsel); ECF No. 144 at p. 6 (Court's Order of October 14, 2016 appointing same).

As they respectfully submit has been demonstrated by their conduct to date, Co-Lead Counsel have diligently represented the interests of the Class in this litigation and will continue to do so. Accordingly, the requirements of Rule 23(a)(4) are satisfied.

### 5. The Proposed Settlement Class Satisfied Rule 23(b)(3)

Once Rule 23(a)'s four prerequisites are met, Plaintiffs must show the proposed Settlement Class satisfies Rule 23(b)(3) by demonstrating that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." As to predominance, "[c]onsiderable overlap exists between the court's determination of commonality and a finding of predominance. A finding of commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts." *Saltzman*, 257 F.R.D. at 484.

In antitrust conspiracy cases such as this one, courts consistently find that common issues of the existence and scope of the conspiracy predominate over individual issues. *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 408 (S.D. Ohio 2007); *see also In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1039 (N.D. Miss. 1993) ("As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment."). This follows from the central nature of a conspiracy in such cases. *Hughes v. Baird & Warner, Inc.*, No. 76 C 3929, 1980 WL 1894, at *3 (N.D. Ill. Aug. 20, 1980) ("Clearly, the existence of a conspiracy is the common issue in this case. That issue predominates over issues affecting only individual sellers."); *see also Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.").

Plaintiffs must also show that a class action is superior to individual actions, which is evaluated by four considerations:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

Fed. R. Civ. P. 23(b)(3). Here, any Class member's interest in individually controlling the prosecution of separate claims is outweighed by the efficiency of the class mechanism. Thousands of entities purchased Broilers during the class period; settling these claims in the context of a class action conserves both judicial and private resources and hastens Class members' recovery. Finally, while Plaintiffs see no management difficulties in this case, this final consideration is not pertinent to approving a settlement class. *See Amchem*, 521 U.S. at 620.

Accordingly, the proposed class action is superior to other available methods (if any) for the fair and efficient adjudication of the controversy relating to Fieldale Farms.

## VI. Notice to the Class

Rule 23(e) requires that prior to final approval, notice of a proposed settlement be given in a reasonable manner to all class members who would be bound by such a settlement. For a class proposed under Rule 23(b)(3), whether litigated or by virtue of a settlement, Rule 23(c)(2)(B) enumerates specific requirements. At an appropriate time prior to moving for final approval of this proposed Settlement (presumably grouped with additional settlements), CIIPPs intend to propose to the Court a plan of notice which, pursuant to Rule 23(c)(2)(B), will provide due process and reasonable notice to all customers of Defendants—Settling and Non-Settling Defendants alike—who can be identified through customer lists. For the reasons outlined below,

and with Fieldale Farms' agreement, CIIPPs request that the Court agree to defer formal notice to the Class for the time being.

The CIIPP class is large and geographically dispersed. Thus, there is a substantial cost that comes with noticing the CIIPPs' class, with notice programs designed to meet the requirements of Rule 23 and due process likely to run well into six figures (if not into the millions), each time notice is provided to a class of this size. (Zapala Decl., ¶ 10.) Therefore, CIIPPs respectfully believe that the most prudent course of action for the class is to save notice costs until there is a number of CIIPP settlements for efficiency and economy purposes. In large antitrust cases, courts have deferred notice until a critical mass of settlements have been reached to make it cost effective. *See, e.g., In re Aftermarket Filters Antitrust Litig.*, No. 1:08-cv-04883, Preliminary Approval Order (ECF No. 885) at p. 5 (N.D. Ill. Feb. 16, 2012) (granting preliminary approval of settlement agreements, certifying settlement class, and ordering that class notice be deferred until a later time); *In re New Jersey Tax Sales Antitrust Litig.*, No. 3:12-cv-01893, Order (ECF No. 276) at ¶ 7 (D. N.J. Aug. 13, 2013) (granting preliminary approval of settlement and finding that cost of class notice warranted deferral); *In re Transpacific Passenger Air Transportation Antitrust Litigation*, No. 07-05634-CRB, (ECF Nos. 968, 1009) (N.D.Ca.); *In re Auto. Parts Antitrust Litig.* (*Wire Harness Systems*), Master File No. 12-md-02311, Case No. 2:12-cv-00103, Order Approving End-Payor Plaintiffs' Plan of Allocation of the Settlements at ¶ 10 (ECF No. 577) (E.D. Mich. July 10, 2017).

## VII.    Conclusion

For these reasons, Interim Co-Lead Counsel respectfully request that the Court preliminarily approve the Fieldale Farms Settlement and preliminarily certify the Settlement Class.

Dated: January 10, 2019                    Respectfully Submitted:


/s/ *Daniel C. Hedlund*                    /s/ *Adam J. Zapala*
Daniel C. Hedlund                          Adam J. Zapala
Michelle J. Looby                          Mark F. Ram
Joshua R. Rissman                          Tamarah P. Prevost
Brittany N. Resch                          **COTCHETT, PITRE & McCARTHY, LLP**
**GUSTAFSON GLUEK PLLC**                   840 Malcolm Road, Suite 200
220 South Sixth Street #2600               Burlingame, CA 94010
Minneapolis, MN 55402                      Telephone: (650) 697-6000
Telephone: (612) 333-8844

***Lead Counsel for the Commercial and Institutional Indirect Purchaser Class***


                                           Kenneth A. Wexler
                                           Thomas A. Doyle
                                           **WEXLER WALLACE LLP**
                                           55 W. Monroe Street, Suite 3300
                                           Chicago, IL  60603
                                           Telephone: (312) 346-2222


***Liaison Counsel for the Commercial and Institutional Indirect Purchaser Plaintiff Class***

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on January 10, 2019, I caused a copy of the foregoing document to be served via the Court's ECF system on all Counsel who have appeared in the case.

/s/ Thomas A Doyle