UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 16 C 8637 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

All but one defendant in this case is an industrial producer of chicken meat. (The industry term for such meat is "Broilers.") Plaintiffs are businesses and individuals who purchased Broilers from Defendants, either directly or indirectly, for resale, business, or personal use, between 2008 and 2016. In three class complaints (by classes of direct purchasers, indirect purchasers, and end-user consumers), Plaintiffs alleged that Defendants conspired to fix Broiler prices higher than the market would naturally support, in violation of the Sherman Act § 1 and state law. On November 20, 2017, the Court denied motions to dismiss the complaints for failure to state a claim. *See* R. 541 (*In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772 (N.D. Ill. 2017)).

After the Court denied the motions to dismiss, a number of new plaintiffs (headed by Affiliated Foods, Inc.) who directly purchase Broilers from Defendants, filed a complaint separate from the direct-purchaser class complaint alleging the same price-fixing conspiracy against Defendants, and adding Agri Stats, Inc. as a defendant. *See* 17 C 8850. As discussed in the Court's November 20 opinion, Agri Stats is a subsidiary of Eli Lilly & Co. that produces subscription reports about the

Broiler industry. The reports are based on information that Agri Stats collects directly from Defendants. Only Broiler producers that supply data to Agri Stats are permitted to receive the Agri Stats reports.

Subsequently, Sysco Corp. (18 C 700) and US Foods, Inc. (18 C 702)—two more companies that purchase Broilers directly from Defendants—filed their own complaints including Agri Stats as a defendant. The class of end-user consumers also filed an amended complaint to add Agri Stats. R. 717. Agri Stats has moved to dismiss the claims against it. *See* R. 804.

In the November 20 opinion, the Court held that Plaintiffs have plausibly alleged a conspiracy among the defendant Broiler producers. *See* R. 541. The Court also held that Plaintiffs have plausibly alleged that "Agri Stats . . . facilitated the conspiracy." *Id.* at 44. Plaintiffs plausibly alleged facilitation by alleging that Agri Stats's reports are so detailed that the ostensible anonymity of the information is breached, and Defendants were able to use the reports to communicate their Broiler production intentions, thereby conspiring to fix Broiler prices. Agri Stats's motion does not challenge these holdings.

Rather than challenge the plausibility of the allegations that its reports facilitated Defendants' alleged conspiracy, Agri Stats argues these allegations "are insufficient to indicate that Agri Stats joined the asserted conspiracy." R. 805 at 8; *see In re Broiler Chicken*, 290 F. Supp. 3d at 789 ("[A] plaintiff must allege facts from which the Court can plausibly infer that the defendants had a conscious commitment to a common scheme designed to achieve an unlawful objective."). Agri Stats points

2

out that the Court, in its November 20 opinion, reasoned that "Agri Stats does not have to be a co-conspirator . . . to play this alleged role [of facilitator], possib[ly] unwittingly." R. 805 at 9 (citing R. 541 at 44).

But the mere *possibility* that Agri Stats's "facilitation" of the alleged conspiracy was "unwitting," does not mean that the allegation that Agri Stats was a knowing co-conspirator is not *plausible. See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("'Plausibility' in [the legal pleading] context does not imply that the district court should decide whose version to believe, or which version is more likely than not. . . . [I]t is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences."). To the contrary, taking the allegations that Agri Stats facilitated Defendants' conspiracy in the light most favorable to Plaintiffs, those allegations also plausibly support the claim that Agri Stats was a knowing co-conspirator. It is at least plausible (if not likely) that a person who facilitates a conspiracy knows about the conspiracy and engages in the facilitation knowing of its consequences. *See, e.g., In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 764 F. Supp. 2d 991, 1003 (N.D. Ill. 2011) ("The court has already concluded that plaintiffs have alleged a plausible conspiracy. The court must also accept as true the well pled allegations that [the trade association defendant] helped defendants conceal the conspiracy by falsely denying the existence of supply shortages and over-reporting the actual supply to government officials. Given this allegation, the court cannot see

how it can avoid the conclusion that plaintiffs have adequately pled PPTA's participation in the conspiracy.").

Agri Stats argues that this inference is not plausible because, unlike the other defendants, Agri Stats is not a Broiler producer, so it lacks a plausible motive to knowingly engage in a conspiracy to fix Broiler prices. Of course, motive is not an element of a Sherman Act claim. *See NCAA v. Bd. of Regents of the Univ. of Okla.*, 468 U.S. 85, 101 n.23 (1984) ("good motives will not validate an otherwise anticompetitive practice"); *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 263 (3d Cir. 2017) ("intent is not an element of an antitrust claim, and benign intent does not shield anticompetitive conduct from liability"). But Agri Stats's point is that the lack of an apparent motive undermines the plausibility of the allegation that it was co-conspirator. Agri Stats's argument is that without an apparent motive, the mere fact that it facilitated the conspiracy is insufficient to plausibly demonstrate its intentional agreement with the conspiracy.

The problem with this argument is that the allegations against Agri Stats *do* permit a plausible inference of motive, albeit not as strong as the profit motive attributable to the producer defendants. It is plausible to infer that Agri Stats is motivated to serve its clients' demands, and that in serving its clients, Agri Stats understood its clients' motivations for making those demands. In other words, to the extent Plaintiffs have plausibly alleged a conspiracy among Broiler producers and that Agri Stats reporting service facilitated that conspiracy, it is just as plausible that Agri Stats's relationships with its clients caused it to learn of the conspiracy. This is

4

particularly true here where Plaintiffs have alleged that Agri Stats was in regular communication with Defendants (both remotely and in-person).

Additional allegations in the complaints support this inference regarding Agri Stats's motivation and knowledge. Plaintiffs allege that the information and data in Agri Stats reports includes detail that is not generally advantageous for companies to divulge to their competitors. Plaintiffs also allege that experts have noted that the information sharing in Agri Stats reports raises antitrust concerns. It is reasonable to infer that a sophisticated industry reporter like Agri Stats would be aware of these circumstances, which should have at least raised Agri Stats's suspicions regarding Defendants' motives for agreeing to divulge the information.

Agri Stats argues that although the Court has countenanced Plaintiffs' allegation that Agri Stats reports were so detailed the anonymity of the data was compromised, Plaintiffs have not alleged that Agri Stats knew this was so. But such an inference is reasonable and plausible considering the sophistication of Agri Stats's reporting and its regular communication with Defendants. Moreover, Plaintiffs have alleged that Agri Stats employees expressly breached the anonymity of its data when meeting in person with Defendants. Plaintiffs have not alleged specific instances of this conduct, but neither has Agri Stats given the Court reason to disregard the allegations, other than characterizing them as conclusory. The upshot is that Agri Stats plausibly knew that it was providing Defendants with a non-public means for communicating production plans, thereby enabling the price fixing conspiracy.

Lastly, Agri Stats argues that is has been producing its reports since 1985, and that Plaintiffs have failed to allege any change in Agri Stats's activity that would plausibly explain why its reports suddenly served to facilitate a price fixing conspiracy beginning in 2008. But Plaintiffs have alleged that Tyson—the largest industry producer—renewed its subscription to Agri Stats's service in 2008—the alleged beginning of the conspiracy—after a four-year hiatus. *See* R. 717 ¶ 174. That change certainly supports Plaintiffs' claims.

For these reasons, Agri Stats's motion to dismiss [804] is denied.

ENTERED:

*[signature: Thomas M Durkin]*

Honorable Thomas M. Durkin
United States District Judge

Dated: February 28, 2019