UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To:<br>All Actions | Case No. 1:16-cv-08637<br><br>Hon. Thomas A. Durkin<br><br>Magistrate Judge Jeffrey T. Gilbert |

**DIRECT PURCHASER PLAINTIFFS' MOTION FOR PROTECTIVE ORDER TO PROTECT CLASS MEMBERS FROM MISLEADING SOLICITATIONS**

Direct Purchaser Plaintiffs ("DPPs"), by and through their undersigned counsel, respectfully move this Court for entry of an Order protecting DPP class members from actual and potentially misleading solicitations by counsel for Direct Action Plaintiffs ("DAPs") or anyone else subject to the Court's jurisdiction. In support, DPPs state the following:

### I.   INTRODUCTION

This Court has the duty and the broad authority to exercise control over a class action, including prohibiting misleading communications to class members. DPPs recently learned that certain counsel for DAPs continue to send misleading communications to members of the certified DPP settlement class for the purpose of soliciting them to opt out of the class and file direct actions against Defendants. As a result, the Court should order that these DAP counsel produce a list of all recipients of their communications with DPP class members, that a corrective communication be sent to each such recipient, and that any DAP counsel seeking to communicate with DPP class members first notify DPP class counsel and obtain the approval of the Court for any future unsolicited communications. The Court should also direct these DAP counsel to provide all

539901.2

recipients of misleading communications and solicitations the opportunity to rescind any retainers or other contracts they may have entered with these DAP counsel as a result thereof.

## II. BACKGROUND

This motion is necessitated by ongoing and recent solicitations by certain DAP counsel to members of the certified DPP settlement class.[1] DPP counsel know of at least three instances—in March 2018, April 2018, and May 2019—in which these DAP counsel directly sent communications to members of the DPP class. Most recently, DPPs learned of a correspondence dated May 14, 2019 that includes information from DAP counsel Kaplan, Fox & Kilsheimer, LLP; Coffman Law Firm; and Williams Montgomery & John, LLP, entitled "Chickens Antitrust Litigation—CASE UPDATE." (These firms are herein referred to as "said DAP Counsel" or "these DAP Counsel"). DAP Counsel's letter was forwarded to a large number of DPP class members, including at least one named class representative.[2] Notably, the May 2019 letter

---

[1] In conjunction with the DPPs' settlement with Fieldale, this Court first conditionally certified a DPP settlement class on August 18, 2017 (ECF No. 462), and then finally certified the DPP settlement class on November 16, 2018 (ECF No. 1414). The Court defined the DPP class as:

> All persons who purchased Broilers directly from any of the Defendants or any co-conspirator identified in this action, or their respective subsidiaries or affiliates for use or delivery in the United States from at least as early as January 1, 2008 until the date of this Preliminary Approval Order. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any co-conspirator identified in this action.

ECF No. 462 at ¶ 2; ECF No. 1414 at ¶ 4.

[2] DAP Counsel's communications apparently were sent to all members of UniPro, a large foodservice distribution cooperative, and included contact information for DAP counsel. DPP counsel do not know the exact number of recipients who received this communication; they asked DAP counsel for this information but have not received it. But the letter is addressed to "UniPro Membership," which suggests DAP Counsel has arranged for UniPro to send such letters to all of its members, including DPP absent class members. A copy of this May 2019 letter is attached as Exhibit 1 to the Declaration of W. Joseph Bruckner ("Bruckner Decl.").

539901.2                                      2

references another communication previously sent to class members in April 2018, which according to DAP Counsel "provided some direction for those Members that may have an interest in participating in the class action suit."[3] Bruckner Decl., Ex. 1 at 1.

In DPPs' view, DAP Counsel's May 14, 2019 "case update" letter to DPP class members is actually misleading. But even if the Court were to find that the letter is only potentially misleading, or excludes facts that provide necessary context for certain statements, the Court still should intervene. The letter purports to be "simply for information purposes only for the [UniPro] Membership to make an informed business decision." But at the same time, their case update letter refers to DAP Counsel (not DPP class counsel) providing "some direction for those Members that may have an interest in participating in the class action suit," and requests that DPP class members contact said DAP Counsel "[i]f . . . you're interested in filing a claim and you're not already represented by a lawyer." In doing so, the letter wrongly implies that: (1) each class member is not already represented by a lawyer, *i.e.*, Court-appointed class counsel; (2) DAP Counsel, not the Court or class counsel, are the ones to give them direction about "participating in the class action suit;" and (3) opting out and filing an individual direct action is the only way to recover damages.

This May 14, 2019 "CASE UPDATE" letter is the third misleading communication of which DPP counsel are aware, by these DAP Counsel to DPP class members. Previously these DAP Counsel sent a letter dated March 14, 2018 to DPP class members entitled, "Advertisement re: Chickens Antitrust Litigation."[4] That March 2018 solicitation letter, sent after this Court

---

[3] DPPs have not seen this April 2018 memorandum, but presume that it was sent to the same "UniPro Membership" as DAP Counsel's May 14, 2019 Update Letter.

[4] Like the May 2019 solicitation, DPP counsel do not know to whom and to how many DPP class members these DAP Counsel sent their March 2018 solicitation. But the letter itself suggests these DAP Counsel sent such letters to many DPP absent class members listed in various industry directories. A copy of this March 2018 letter is attached as Exhibit 2 to the Bruckner Decl.

already had conditionally certified the DPP settlement class, urged DPP class members to "hop on" the train and join the litigation as a DAP. Of course, that "train" was driven by DPP counsel and fueled by an enormous amount of DPPs' legal work and expense. Said DAP Counsel's "advertisement" essentially admitted that those soliciting firms will get a free ride on the work already being done by DPP counsel on behalf of the solicited class members. These DAP Counsel nowhere state the facts that the solicited class members are already fully represented in this litigation by DPP class counsel, and that DAP Counsel's fee agreements with those class members, if they opt out, may be an added financial burden. Said DAP Counsel's 2018 solicitation letter also wrongly suggested that the recipient would have no rights in the litigation if it did not retain DAP counsel, opt out of the class, and file an individual claim. Specifically, the solicitation suggested that immediate action is necessary because "[j]oining the litigation as a DAP down the road may very well not be possible," and repeated twice more in bold font that "the train is leaving the station." It also misleadingly suggested that filing a separate DAP action is less risky than remaining in the class. Notably, DAP Counsel's letter affirmatively discouraged the notion of remaining a class member, and said that a number of "bad outcomes could happen in the class action." The letter's dissuasive remarks continued, stating that "DAP settlement payments [are not] potentially delayed for years by class action administration or appeals," and that "DAPs could get paid while class members don't; it's happened."

      These DAP Counsel's communications are objectively misleading. They fail to inform recipients that they need do nothing more to protect their rights in the litigation, because they are already members of a certified DPP settlement class,[5] and they are currently and fully represented

---

[5] *See* this Court's June 22, 2018 order approving the notice to class members containing the class definition, ECF No. 980 at ¶¶ 2-3; and the notice to the class posted on the Court-approved website, Question No. 6, at 4,

by experienced, Court-appointed co-lead class counsel.[6] Thus these solicitations contradict the language of the Court ordered class action notice, which objectively and accurately sets forth the class members rights and obligations in this lawsuit, and is the official communication to class members.

These solicitations also ignore the risks and reality of bad outcomes in DAP actions, where class members have recovered damages but direct action plaintiffs have not. *See Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 873 F.3d 185, 190 (3d Cir. 2017) (affirming summary judgment for defendant against direct action plaintiff and describing class action settlement). The communications also make no mention of the heightened burdens and potential pitfalls of a direct action, such as the substantial additional discovery burdens and potential statute of limitations that may apply to a particular DAP. In short, the communications are one-sided and will at best create confusion, and at worst cause class members to make uninformed decisions about opting out based on misleading information.

DPPs have attempted to address these issues with these DAP Counsel to no avail. After becoming aware of DAP Counsel's March 2018 solicitation, DPP class counsel wrote one of said DAP Counsel, Robert Kaplan, in May 2018 detailing how the solicitation was misleading and requesting specific corrective action. Bruckner Decl., ¶ 4, Ex. 3. DPPs and said DAP Counsel met and conferred, during which they came to an understanding that DAP Counsel would not send any more unsolicited communications to DPP class members. *Id.*

---

http://www.broilerchickenantitrustlitigation.com/admin/services/connectedapps.cms.extensions/1.0.0.0/asset?id=27381149-91b9-4b8f-b3d7-1da3e485ddd8&languageId=1033&inline=true.

[6] *See* ECF No. 462; ECF No. 1414. In each order certifying the DPP class, the Court appointed counsel to represent the class. ECF No. 462 at ¶ 2 (appointing Lockridge Grindal Nauen P.L.L.P., and Pearson, Simon & Warshaw, LLP as co-lead counsel for the Settlement Class); ECF No. 1414 at ¶ 3 ("Pursuant to Fed. R. Civ. P. 23(g), Co-Lead Counsel previously appointed by the Court is appointed as Co-Lead counsel for the Class as they have and will fairly and competently represent the interests of the Class.").

But this understanding was short-lived. After learning of said DAP Counsel's May 2019 letter, DPP class counsel again wrote DAP Counsel Robert Kaplan on May 29, 2019, explaining that the letter was contrary to the parties' understanding about sending such communications. Bruckner Decl., ¶ 5, Ex. 4. The next day, DPP counsel and DAP Counsel met and conferred by telephone, and once again DPP counsel told said DAP Counsel that their communications to members of a certified and represented DPP class were inappropriate and needed to stop. *Id.* DPP counsel also asked for a list of all entities to whom DAP Counsel sent their solicitations. *Id.* DAP counsel did not respond to DPP counsel's request. *Id.* ¶ 6.

On July 11, 2019, in a final effort to avoid contested motion practice on this matter, DPP counsel provided DAP counsel with a draft stipulation that would require DAP counsel to promptly provide us with a list of all broiler purchasers they contacted. *Id.* ¶ 6, Ex. 5. In turn, the stipulation would allow DPP counsel to send a corrective notice to those broiler purchasers as approved by the Court. *Id.*

On July 15, 2019, DPP counsel spoke to DAP counsel, and asked DAP counsel to produce their memorandum that underlies their May 2019 "Case Update" memo to the membership of UniPro (who are broiler direct purchasers). *Id.* ¶ 7. DPP counsel also asked DAP counsel to produce a list of recipients of their 2018 and 2019 communications. *Id.* DAP counsel has not done so. *Id.*

Since the relief DPP counsel seeks will require the Court's approval even if agreed to by DAP counsel, DPP counsel have proceeded to file this motion.

All three of these DAP Counsel's communications which DPP counsel know of—in March 2018, April 2018, and May 2019—are inappropriate communications with members of a represented and certified class. All three took place after the Court conditionally certified the DPP

settlement class in August 2017 (ECF No. 462), and one took place after the Court approved notice to the class in June 2018 (ECF No. 980) and finally certified the settlement class in November 2018 (ECF No. 1414). As described above, all three communications are at best confusing and incomplete, and at worst affirmatively misleading. These DAP Counsel have refused DPP counsel's requests to stop such communications with DPP class members, thus necessitating this motion. In light of the number of DAP lawsuits filed to date, it is highly likely that other DAP counsel have engaged in similar solicitations of DPP Class Members.

### III.   ARGUMENT

Because of the potential for abuse in class actions, the Supreme Court has repeatedly recognized that "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). This authority extends to the district court's ability to grant protective orders limiting communications between parties and potential class members. *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748, 759 (7th Cir. 2000). Parties have a right to contact class members for legitimate reasons and with communications that are not misleading. Therefore, before granting such an order, a district court should carefully balance these concerns and make specific findings as follows:

> [A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. . . . In addition, such a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.

*Gulf Oil Co.*, 452 U.S. at 101; *see also Williams*, 204 F.3d at 759. DPP counsel are cognizant of the First Amendment issues and are not proposing a prior restraint on free speech. In the class

context, especially with a certified class and a notice already having been sent, free speech does not protect misleading and confusing written communications from counsel soliciting class members to opt out. In addition, the offending communications have already gone out (more than once), and the protective order proposed by this motion simply stops ongoing conduct. Moreover, solicitations for legal services motivated by economic considerations constitute commercial speech, which carries lesser protection. *Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466, 472 (1988).

Accordingly, courts have limited or prohibited communications with absent class members where they were misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members—or putative class members—not to join the suit. *See, e.g.*, *Piekarski v. Amedisys Ill., LLC*, 4 F. Supp. 3d 952, 955 (N.D. Ill. 2013) ("District courts have restricted communications with potential class members by plaintiffs and also by defendants, as well as communications before a class is certified.") (citing *Bublitz v. E.I. DuPont de Nemours & Co.*, 196 F.R.D. 545, 547 (S.D. Iowa 2000); *Abdallah v. Coca–Cola Co.,* 186 F.R.D. 672, 675 n.1 (N.D. Ga. 1999); *Burrell v. Crown Cent. Petroleum, Inc.,* 176 F.R.D. 239, 242–43 (E.D. Tex. 1997)); *see also Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1206 (11th Cir. 1985) (restricting communication to certified class members by all parties after defendant solicited class exclusion requests); *Cheverez v. Plains All Am. Pipeline, LP*, 15-cv-4113, 2016 WL 861107, at *2 (C.D. Cal. Mar. 3, 2016) ("The court's duty to supervise communications with potential class members exists even before a class is certified."); *Mevorah v. Wells Fargo Home Mortg., Inc., a div. of Wells Fargo Bank*, 05-cv-1175, 2005 WL 4813532, at *3 (N.D. Cal. Nov. 17, 2005) ("Courts have limited pre-certification communications with potential class members after misleading, coercive, or improper communications were made."); *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156

F.R.D. 630, 632–33 (N.D. Tex. 1994) (prohibiting contacts between defendants and potential class members after defendant sent letters urging individuals not to join the class).

The test for determining whether a communication is misleading or deceptive is an objective one. *Beler v. Blatt, Hasenmiller, Leibsker, Moore, LLC*, 05-cv-3059, 2006 WL 1423118, at *3 (C.D. Ill. May 18, 2006), *aff'd sub nom. Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir. 2007). A court is required to look at the communication from the perspective of "the hypothetical unsophisticated consumer." *Id.*; *see also Ruth v. Triumph P'ship*, 577 F.3d 790, 801 (7th Cir. 2009) (noting that a court can make its own determination as to whether a letter is confusing and that the only reasonable conclusion that "an unsophisticated consumer" could reach is an incorrect one). For legal advertising specifically, there are "special possibilities for deception presented by advertising for professional services." *In re: R. M. J.*, 455 U.S. 191, 202 (1982). This is because "[t]he public's comparative lack of knowledge, the limited ability of the professions to police themselves, and the absence of any standardization in the 'product' renders advertising for professional services especially susceptible to abuses" that should be controlled. *Id*.

Said DAP Counsel's communications—viewed from the perspective of the "hypothetical unsophisticated consumer"—are misleading in several ways that prevent putative opt out plaintiffs from making an informed choice about whether to remain in the certified class or instead opt out and file an individual DAP action.

First, the communications imply that if the addressee does not file a DAP action, it will not be able to recover damages. This is not true. None of the communications explain that a purchaser does not need to opt out and file a DAP action in order to recover. This alone is grounds for corrective action. *See, e.g.*, *Belt v. Emcare Inc.*, 299 F. Supp. 2d 664, 668 (E.D. Tex. 2003))

539901.2                                    9

(granting injunction and sanctions against sender where letter mischaracterized the damages available to putative class and encouraged absent class members not to join class); *Cheverez*, 2016 WL 861107, at *3 ("Although the advertisements are not facially misleading, they raise suspicion that Defendants are abusing OPA's claims process to mislead claimants regarding the full scope of their potential recovery.").

Second, the communications mischaracterize the differences between the DAP action and the class action in an attempt to mislead recipients. DAP Counsel implies that the class action will lead to "bad outcomes." For example, the March 2018 solicitation letter asks, "So why does it matter whether you get involved as a DAP, rather than remaining an anonymous class member? (assuming, of course, the class is certified, which has not yet happened)." Bruckner Decl., Ex. 2. Indeed, the solicitations do not even mention or identify DPP class counsel. *See In re McKesson HBOC, Inc. Securities Litig.*, 126 F. Supp. 2d 1239, 1245 (N.D. Cal. 2000) (holding that solicitation materials sent to putative class members were misleading because they "do not identify the court-appointed lead plaintiff and counsel or the procedures safeguarding the appropriateness of class certification"). Moreover, none of the communications describe the additional burdens, financial and otherwise, that would be entailed by filing an individual action instead of remaining a class member. While a communication is not required to be neutral, it may not be so one-sided as to "sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal." *Kleiner*, 751 F.2d at 1203; *cf. Georgine v. Amchem Products, Inc.*, 160 F.R.D. 478, 496 (E.D. Pa. 1995) ("To compound the problem, but not the sole factor that makes these communications misleading, is the fact that almost all . . . contain one-sided attacks . . .").

Third, the communications contain misstatements that can prejudice DPP class members. For example, at least one communication misstates the time period of the alleged conspiracy and damages alleged by DPPs, instructing recipients to collect documents from only 2012–2016, rather than 2008 through the present, as alleged by DPPs. Bruckner Decl., Ex. 2. This more limited time period not only misleads and confuses DPP class members, but it raises a substantial possibility that these DAP Counsel's misstatements are causing potential recipients to not preserve and retain relevant purchase records for the entire conspiracy period alleged by DPPs that may be necessary to obtain a recovery in this action. This misstatement is material and requires an immediate remedy to allow DPP class members to collect the full amount recovered on their behalf by DPP class counsel. *See, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, 2003 WL 22701241, at *7 (finding letters were misleading where they did not adequately describe action).

## IV. PROPOSED RELIEF

The misleading nature of these communications warrants corrective action. Their continuing nature necessitates the entry of a protective order applicable to all parties and counsel before the Court, including all DAP counsel in this action. The Court may grant protective orders limiting communications with potential and represented class members. *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748, 759 (7th Cir. 2000); *see also* Manual For Complex Litigation, Fourth § 21.313 Other Court Notices ("The judge also can require notice to correct misinformation or misrepresentations made by one of the parties or by parties' attorneys. . . . Those who made the misstatements should bear the cost of a notice to correct misstatements. Curative notices generally should be disseminated in the same form as was the misinformation to be corrected.").

Courts in this and other jurisdictions have limited contact with class members by entities who have made misleading statements. *Williams v. Quinn*, 05-cv-4673, 2010 WL 3021576, at *3

(N.D. Ill. July 27, 2010) ("objecting class plaintiffs" banned from contacting additional class members of certified class after distributing misleading notices); *see also In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 1:05-md-01720, 2014 WL 4966072 at *1 (E.D.N.Y. Oct. 3, 2014) ("[A]ny third-party claims filing company that knowingly makes—directly or through an agent acting on its behalf—material false or misleading statements to merchants in an effort to solicit their business risks being permanently enjoined from filing claims in this case."); *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 485 (S.D.N.Y. 2012) (limiting defendants' contact with potential class members where employment relationship placed defendant in a position to exercise "strong coercion"); *Mevorah v. Wells Fargo Home Mortg., Inc., a div. of Wells Fargo Bank*, No. 05-cv-1175, 2005 WL 4813532, at *3 (N.D. Cal. Nov. 17, 2005) (banning precertification communications with any potential class members).

Courts have also required that corrective notice be sent to correct misleading statements. *See Piekarski v. Amedisys Illinois, LLC*, 4 F. Supp. 3d 952, 955 (N.D. Ill. 2013) (authorizing plaintiff to send corrective notice to members of conditional certified class at defendants' expense); *In re Synthroid Marketing Litigation*, 197 F.R.D. 607, 609 (N.D. Ill. 2000) (ordering corrective communication after non-party sent misleading letters that directed certified class plaintiffs to opt out); *Wright v. Adventures Rolling Cross Country, Inc.*, No. C-12-982, 2012 WL 2239797, at *5 (N.D. Cal. June 15, 2012) (imposing restrictions after concluding defendants' communications to potential class members "have plausibly had a chilling effect on participation in the class action"); *Goody v. Jefferson Co.*, No. CV–09–437, 2010 WL 3834025, at *3 (D. Idaho Sept. 23, 2010) (requiring corrective notice where defendant's communications with potential class members caused confusion about right to join suit); *In re WorldCom, Inc. Sec. Litig.*, No. 02-civ-3288(DLC), 2003 WL 22701241, at *7 (requiring separate notices sent to all members of the certified class and

to each plaintiff who has filed an individual action where "[counsel] does not appear to have presented a forthright description of the advantages and disadvantages of both the individual action and class action options."); *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 669-70 (S.D. Tex. 2003) (ordering corrective notice, enjoining defendants from further unauthorized communications with putative plaintiffs, and extending opt-in period after finding defendants' communications were misleading, coercive, and intended to discourage participation).

Courts have even required that the corrective notice provide that a plaintiff who retained counsel on the basis of misleading solicitations may have the opportunity to rescind any retainer or contract. *In re McKesson HBOC, Inc. Securities Litig.*, 126 F. Supp. 2d at 1246 (ordering corrective notice from a firm who lost leadership bid and sought to provoke opt-outs from putative class members, which "should also provide that any plaintiff who retained [counsel] on the basis of the mass solicitation may void his or her retention agreement. This is necessary to protect the rights of [counsel's] clients who were unwittingly led to believe that they must be represented by [counsel] to preserve their claims against McKesson. The court sees no other way to avoid irreparable harm to those putative class members."); *Georgine v. Amchem Products, Inc.*, 160 F.R.D. 478, 489, 496–98 (E.D. Pa. 1995) (invalidating opt-outs and creating second opt-out period where several law firms opposed to the settlement sent misleading communications and advertisements to absent class members); *see also Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 00-cv-5755, 2001 WL 1403007, at *7 (N.D. Ill. Nov. 9, 2001) (ordering that a court-approved notice to each person who received a release stating that the release is void in its entirety because the letter and release sent out by defendants contained incorrect information).

As mentioned, class actions present "opportunities for abuse." *Gulf Oil Co.*, 452 U.S. at 100. Courts are particularly concerned with whether "a party has made misrepresentations to

539901.2            13

putative class members or has attempted to discourage class members from participating in the class." *Piekarski*, 4 F. Supp. 3d at 955 (citing *Dominguez v. Don Pedro Rest.*, No. 06-cv-241, 2007 WL 1650289, *2 (N.D. Ind. June 1, 2007)); *see also Goody*, 2010 WL 3834025, at *3 (requiring corrective notice where defendant's communications with potential class members caused confusion about right to join suit); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 254 (S.D.N.Y. 2005) ("[D]efendants' unsupervised communications were improper because they sought to eliminate putative class members' rights in this litigation.").

The Supreme Court has noted the potential for "heightened susceptibilities of nonparty class members to solicitation amounting to barratry." *Gulf Oil Co.*, 452 U.S. at 100 n.12 (quotation marks and citation omitted). As put by one district court: "That is a polite way of saying that attorneys who want to cut into the class action may try to steal away class members and then bring separate, wasteful lawsuits." *McWilliams v. Advanced Recovery Sys., Inc.*, 176 F. Supp. 3d 635, 639 (S.D. Miss. 2016) (granting motion for protective order preventing third-party attorneys from communicating with class members); *accord In re Community Bank of N. Va.*, 418 F.3d 277, 315 (3d Cir. 2005) ("Simply put, those law firms have a pecuniary interest in soliciting opt-outs or objectors; the greater number of opt-outs or objectors, the less likely the proposed settlement will survive, and the more likely that the law firms will have the opportunity to bring their own suits in search of lucrative attorney fees.").

Said DAP Counsel has a pecuniary interest in soliciting opt-outs. Their communications with DPP settlement class members have been misleading and have the potential to discourage participation in the class. Accordingly, DPPs respectfully request that the Court order the following:

1. That DAP counsel Kaplan, Fox & Kilsheimer, LLP; Coffman Law Firm; and Williams Montgomery & John, LLP immediately stop all solicitations of class members.

2. That within 7 days of the Court's order, said DAP Counsel must provide a list of names and all known contact information to DPP co-lead counsel of every entity to which DAP counsel has sent a solicitation letter.

3. That DPP counsel are authorized to send to each recipient of the letters referenced in Paragraph 2 above a copy of the Corrective Letter included as Exhibit 6 to the Declaration of W. Joseph Bruckner.

4. That all DAP counsel must notify DPP class counsel and obtain approval from the Court before sending any future unsolicited communications to DPP class members.

## V.     CONCLUSION

Every direct purchaser of broilers who suffered a loss has a right to seek recovery in the best way that it sees fit, whether that is to opt out of the class and file an individual action, or remain in the certified class and benefit from the economies of scale and other benefits of the class action. Most important, every class member is entitled to all relevant information about its legal options so that it can make a fully informed decision. DAP counsel's communications are one-sided and misleading, and require corrective action. For these reasons, the Court should grant DPPs' motion.

Dated: July 17, 2019

Respectfully submitted,

By:   s/ *Steven A. Hart*
Steven Hart (#6211008)
Brian Eldridge (#6281336)
John Marrese (#6306516)
Kyle Pozan (#6306761)
HART MCLAUGHLIN & ELDRIDGE, LLC
22 W. Washington Street, Suite 1600
Chicago, IL 60602

T: (312) 955-0545
F: (312) 971-9243
shart@hmelegal.com
beldridge@hmelegal.com
jmarrese@hmelegal.com
kpozan@hmelegal.com

*Direct Purchaser Plaintiffs*
*Interim Liaison Class Counsel*

| | |
|---|---|
| W. Joseph Bruckner | Bruce L. Simon |
| Elizabeth R. Odette | PEARSON, SIMON & WARSHAW, LLP |
| Brian D. Clark | 44 Montgomery Street, Suite 2450 |
| Simeon A. Morbey | San Francisco, CA 94104 |
| LOCKRIDGE GRINDAL NAUEN P.L.L.P. | T: (415) 433-9000 |
| | F: (415) 433-9008 |
| 100 Washington Avenue South, Suite 2200 | bsimon@pswlaw.com |
| Minneapolis, MN 55401 | Clifford H. Pearson |
| T: (612) 339-6900 | Michael H. Pearson |
| F: (612) 339-0981 | Bobby Pouya |
| wjbruckner@locklaw.com | PEARSON SIMON & WARSHAW, LLP |
| erodette@locklaw.com | 15165 Ventura Boulevard, Suite 400 |
| bdclark@locklaw.com | Sherman Oaks, CA 92403 |
| samorbey@locklaw.com | T: (818) 788-8300 |
| | F: (818) 788-8104 |
| | cpearson@pswlaw.com |
| | mpearson@pswlaw.com |
| | bpouya@pswlaw.com |

*Direct Purchaser Plaintiffs*
*Interim Co-Lead Class Counsel*