# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | Case No. 1:16-cv-08637 |
| | The Honorable Thomas Durkin |
| This Document Relates To: | |
| *Winn-Dixie Stores, Inc., et. al. v. Koch Foods, Inc., et. al.* | Case No. 1:18-cv-00245 |

**MEMORANDUM IN SUPPORT OF DEFENDANT FIELDALE FARMS CORPORATION'S MOTION TO ENFORCE FINAL APPROVAL ORDER AND DISMISS ALL CLAIMS BROUGHT BY PLAINTIFFS <u>WINN-DIXIE STORES, INC. AND BI-LO HOLDINGS, LLC</u>**

Fieldale Farms Corporation ("Fieldale") submits this memorandum in support of its motion to enforce this Court's November 16, 2018 Order Granting Final Approval of Settlement With Defendant Fieldale Farms Corporation ("Final Approval Order"), Dkt. 1414, and dismiss the claims brought against Fieldale by direct action plaintiffs Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC (collectively "Winn-Dixie").

## INTRODUCTION

Winn-Dixie has already settled its claims against Fieldale. Winn-Dixie "failed to timely and validly request to be excluded from" Fieldale's Settlement Agreement with the direct purchaser plaintiff ("DPP") class, and Winn-Dixie is therefore "subject to and bound by the provisions of the Settlement Agreement, the Released Claims contained therein, and" the Final Approval Order. Dkt. 1414 at ¶ 13. Winn-Dixie is also "forever barred from commencing or continuing" to prosecute Released Claims against Fieldale. *Id.* at ¶ 8. Winn-Dixie violated this order by filing a First Amended Complaint ("FAC") on April 22, 2019 that not only named Fieldale as a defendant, but also asserted Released Claims against Fieldale under a variety of new legal theories based on the same underlying alleged conduct. Dkt. 2140, FAC at ¶¶ 79-80, 444-562, 577-84, 591-99, 609-13. Winn-Dixie is bound by the Settlement Agreement, and its claims should be dismissed.

The fact that Winn-Dixie had an individual action pending against Fieldale before the opt-out deadline is no excuse for Winn-Dixie's failure to opt out. *See*, *e.g.*, *In re VMS Sec. Litig.*, No. 89 C 9448, 1992 WL 203832, at *4 (N.D. Ill. Aug. 13, 1992) (dismissing claims against "class members who had individual actions pending against various defendants at the time of settlement" who failed to opt out); *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 4181732, at *5 (N.D. Cal. Aug. 20, 2014) ("[T]he weight of authority .

1

. . is clear: filing an individual case prior to the opt-out period and continuing to litigate that case through the opt-out period is insufficient."). Quite the opposite. Winn-Dixie filed its original complaint on January 12, 2018—nearly a year before the Final Approval Order—and Winn-Dixie received direct notice through the ECF system and this Court's orders of every relevant deadline. Nevertheless, Winn-Dixie did not opt out.

Winn-Dixie also did not attempt to cure its failure to opt out. For instance, Winn-Dixie did not move to enlarge its time to opt out after the fact, which it could have done months ago if it believed grounds existed to support such a motion. Winn-Dixie has now known for at least eight-and-a-half months that it did not opt out of the DPP Settlement Agreement. On October 29, 2018, the settlement administrator filed a preliminary opt-out list, and she also identified individuals and companies whose opt out requests were ineffective for a variety of reasons. *See* Dkt. 1369-4 at ¶ 17. This declaration specifically identified Winn-Dixie's attempted opt out letter as one that was "not approved" because it "was postmarked after the deadline," *id.*, and the declaration included Winn-Dixie's letter and late-postmarked envelope, Dkt. 1369-5 at Exhibit F1. Winn-Dixie also did not appear on the opt-out list. Dkt. 1369-5 at Exhibits E1 and E2. If Winn-Dixie believed that its failure to opt out by the deadline was due to "excusable neglect," it could have moved to enlarge its time to opt out under Federal Rule of Civil Procedure 6(b)(2). Instead, Winn-Dixie took no action, and it is not on the final opt-out list incorporated into the Final Approval Order. *See* Dkt. 1414 at ¶ 13; *see also* Dkt. 1408 at Exhibits A1 and A2. It is therefore part of the Settlement Class.

This case is big enough already, and Fieldale paid millions of dollars and provided significant cooperation to the DPPs to make it a little smaller. After extensive, arms-length negotiations, Fieldale received a broad release and a predictable, orderly process for fully and

2

finally resolving the claims of all direct purchasers who did not opt out of the Settlement Agreement. Winn-Dixie, as a member of the DPP class, was represented well in those negotiations by the DPPs' experienced and skilled attorneys. Winn-Dixie, like all members of the class, got a fair deal; there were zero objections to the Settlement Agreement. Winn-Dixie also got a fair opportunity to exclude itself from that deal. It failed to do so. Winn-Dixie is bound by the Final Approval Order, it is subject to the release in the Settlement Agreement, and its claims against Fieldale should be dismissed with prejudice.

## BACKGROUND

On July 27, 2017, Fieldale and the DPPs entered into the Settlement Agreement. With some exceptions that are not relevant here, the Settlement Class includes "[a]ll persons who purchased Broilers directly from any of the Defendants" during the relevant period. Dkt. 447-2, Settlement Agreement, at Section II(E)(2); *see also* Dkt. 462, Preliminary Approval Order, at ¶ 2; Dkt. 1414, Final Approval Order, at ¶ 4. The Settlement Agreement expressly contemplated that, during the approval process, "Class Members who wish to exclude themselves must submit an appropriate **and timely** request for exclusion." Dkt. 447-2 at Section II(E)(3)(d) (emphasis added); *see also id.* at Section II(E)(4) ("The Class Notice shall provide for a right of exclusion, as set forth in Section II(E)(3). The Class Notice shall also provide for a right to object to the proposed Settlement."). On August 4, 2017, the DPPs moved for preliminary approval, Dkt. 447, and the Court entered a preliminary approval order two weeks later, Dkt. 462.

On January 12, 2018, Winn-Dixie filed its original complaint in Case No. 18-cv-00245 (N.D. Ill.), and its case was consolidated with this one shortly thereafter. Winn-Dixie brought a single Sherman Act claim "as purchasers of Broilers directly from Defendants" or related entities. Case No. 18-cv-245, Dkt. 2, at p. 1 (intro paragraph). Winn-Dixie was therefore within

3

the Settlement Class as preliminarily approved by the Court. Dkt. 462 ¶ 2 ("All persons who purchased Broilers directly from any of the Defendants . . . .").

On June 5, 2018, the DPPs moved the Court to approve a class notice plan. Dkt. 950. The Court promptly reviewed and approved this motion, and the Court set a "schedule for the dissemination of notice to the class and for the Court's Fairness Hearing." Dkt. 994 at ¶ 4. As part of this schedule, the Court set an opt-out deadline of **October 15, 2018**. *Id.* The approved notice, which was included in full as part of the Court's order, stated that "[r]equests for Exclusion must be **postmarked or received** by October 15, 2018." Dkt. 994 at p. 4 (emphasis added). Because Winn-Dixie had been a party to this case for months by that point, it received notice of this deadline and a copy of the class notice immediately through the ECF system.

On October 29, 2018, the DPPs moved for final approval of the Settlement Agreement. *See* Dkt. 1369. They also filed a supplemental declaration from the settlement administrator with details regarding the class notice campaign. *See* Dkt. 1369-4. With respect to opt-outs, the declaration stated that the administrator had "received 45 opt-out requests of which 43 were identified as timely and complete and have been approved" by the administrator. *Id.* at ¶ 17. Those 43 effective requests excluded "352 Class Members," and the claims administrator provided a list of each of those excluded entities. *Id.*; *see also* Dkt. 1369-5 at Exhibits E1 and E2. The administrator also provided information regarding the two opt-out requests that were not approved. One of these—Winn-Dixie's attempted opt out letter—was not approved because it "was postmarked after the deadline and attempts to exclude six Class Members." *Id.* at ¶ 17. The administrator also included a copy of Winn-Dixie's letter and the envelope, which is postmarked two days after the October 15, 2018 deadline. Dkt. 1369-5 at Exhibit F1 and F2.

4

On November 9, 2018, the DPPs submitted a second supplemental declaration from the claims administrator, which provided updates regarding certain of the opt-out requests. *See* Dkt. 1393-1 at ¶¶ 4-6. The claims administrator attached an updated list of effective opt-out requests. *Id.* at Exhibits E1 and E2. The administrator also again stated that Winn-Dixie's opt-out request was "not approved . . . as effective." *Id.* at ¶ 6 and Exhibits F1 and F2.

On November 15, 2018, the DPPs filed the third and final supplemental declaration from the claims administrator. *See* Dkt. 1408. This declaration included an update regarding opt-outs, and it attached an updated list of effective opt-outs. *See id.* at Exhibits A1 and A2. Winn-Dixie again did not appear on this list.

On November 16, 2018, this Court granted the DPPs' motion for final approval and entered the Final Approval Order. *See* Dkt. 1414. This order provides in part:

> Any member of the Class who failed to timely and validly request to be excluded from the Class shall be subject to and bound by the provisions of the Settlement Agreement, the Released Claims contained therein, and this Order (and the related Final Judgment) with respect to all Released Claims, regardless of whether such members of the Class seek or obtain any distribution from any Settlement Fund. Persons/Entities who validly requested to be excluded from the Class are listed in **Exhibits A1** and **A2** to the Third Supplemental Declaration of Jennifer M. Keough Regarding Notice Administration.

Final Approval Order at ¶ 13. The Final Approval Order further provides that (1) "[t]he Releasing Parties are hereby and forever barred from commencing or continuing against the Released Parties any of the Released Claims as defined in the Settlement Agreement," *id.* at ¶ 8, and (2) "[t]he Released Parties are hereby and forever released from all Released Claims as defined in the Settlement Agreement," *id.* at ¶ 9.

Until it filed its FAC on April 22, 2019, Winn-Dixie did not actively litigate against Fieldale after the Final Approval Order permanently resolved its claims. Indeed, because Winn-Dixie's pending claims against Fieldale were resolved by the Final Approval Order, Fieldale did

5

not answer Winn-Dixie's original complaint at all. Winn-Dixie did not raise the issue in any way, and the parties simply did not litigate against each other until Winn-Dixie filed its FAC bringing both its original claims and a broad array of new allegations and legal claims against Fieldale based on the same underlying conduct. *See* Dkt. 2140, FAC at ¶¶ 79-80, 444-562, 577-84, 591-99, 609-13.

## ARGUMENT

"[A] release incorporated into an order approving a class action settlement bars subsequent litigation based on the released claims." *Tropp v. W.-S. Life Ins. Co.*, 381 F.3d 591, 596 (7th Cir. 2004). "[A] federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.'" *Williams v. Gen. Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 273–74 (7th Cir. 1998) (emphasis omitted). "Defendants would have little incentive to negotiate class settlements if they could not secure a broad release generally insulating themselves from further litigation by those who participate in the settlement." *Smith v. Sprint Commc'ns Co. L.P.*, No. 99 C 3844, 2003 WL 103010, at *2 (N.D. Ill. Jan. 10, 2003).

Opting out of a class settlement by the deadline is "an essential step if [a plaintiff] want[s] to pursue an independent claim." *Matter of VMS Ltd. P'ship Sec. Litig.*, 26 F.3d 50, 50–51 (7th Cir. 1994). "The pendency of an individual action does not excuse a class member from filing a valid request for exclusion." *In re VMS Sec. Litig.*, No. 89 C 9448, 1992 WL 203832, at *3 (N.D. Ill. Aug. 13, 1992) (collecting cases); *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 4181732, at *5 (N.D. Cal. Aug. 20, 2014) ("[T]he weight of authority . . . is clear: filing an individual case prior to the opt-out period and continuing to

litigate that case through the opt-out period is insufficient."). Indeed, the fact that Winn-Dixie had an action pending against Fieldale in this matter makes its failure to opt out on time especially unreasonable.

Specifically, as long as a class notice procedure is reasonable, class members who do not opt out will generally have their claims barred even if they did not actually receive any notice at all. *See*, *e.g.*, *In re VMS*, 1992 WL 203832, at *3 (N.D. Ill. Aug. 13, 1992) ("[I]t must be recognized that in any settlement there will be some class members who are difficult to locate and who may not receive timely notice of the settlement: the function of the filing deadline is to put a time limit on the claims procedure to achieve finality and certainty in class action settlements.") (citations and quotation marks omitted). In contrast, a direct action plaintiff like Winn-Dixie that is individually represented by experienced antitrust counsel and "actively involved in the litigation" necessarily "would have received notice [of the opt-out deadline] from multiple sources, including . . . receipt of notices of filing of the preliminary approval motion and preliminary approval order, not to mention the final fairness hearing and entry of judgments." *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420-YGR, 2017 WL 6497597, at *2 (N.D. Cal. Dec. 19, 2017) (enforcing settlement agreement and dismissing claims of direct action plaintiff who submitted late opt out notice).

Here, Winn-Dixie was part of the Settlement Class because it is a direct purchaser of broilers, and Winn-Dixie "failed to timely and validly request to be excluded from the Class." Final Approval Order at ¶ 13. It also did not attempt to move to enlarge its time to opt out after the fact based on "excusable neglect," which would have been the proper procedural device for Winn-Dixie to try to opt out late if it believed it had a basis to do so. *In re VMS Sec. Litig.*, 1992 WL 203832, at *2 ("The standard for granting an enlargement of time after the expiration of the

7

specified opt-out period is 'excusable neglect.'") (citing Fed. R. Civ. P. 6(b)(2)). Instead, Winn-Dixie filed the FAC and asserted claims against Fieldale more than half a year after its failure to opt out and five months after the Final Approval Order. The Court can, and should, dismiss Winn-Dixie's claims, and there are at least two appropriate mechanisms to do so.

**First**, under the All Writs Act, 28 U.S.C. § 1651, the Court is "empower[ed] . . . 'to issue such commands ... as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'" *Thorogood v. Sears, Roebuck & Co.*, 678 F.3d 546, 548 (7th Cir. 2012) (quoting *United States v. New York Telephone Co.*, 434 U.S. 159, 172 (1977)). Here, Winn-Dixie filed its FAC in direct violation of this Court's order barring "Releasing Parties," including Winn-Dixie, from "from commencing **or continuing** against [Fieldale] any of the Released Claims as defined in the Settlement Agreement." Final Approval Order *id.* at ¶ 8 (emphasis added). The Court should exercise its authority under the All Writs Act—and its inherent authority as the Court overseeing both the Settlement Agreement and Winn-Dixie's case—and dismiss Winn-Dixie's claims against Fieldale with prejudice.

**Second**, under Fed. R. Civ. P. 12(c), the pleadings read in the light most favorable to Winn-Dixie show that its claims against Fieldale have been "forever released." Final Approval Order at ¶ 9; *see also Hallie v. Wells Fargo Bank, N.A.*, No. 2:12-CV-00235-PPS, 2015 WL 1914864, at *3 (N.D. Ind. Apr. 27, 2015) (holding that "Rule 12(c) is . . . the proper vehicle for dismissal here if we look at the [class] settlement as a release of [plaintiff's] claims" or "based on *res judicata*"). The Settlement Agreement defined "Released Claims" in the broadest possible terms—specifically including "unknown," "unsuspected," and "unforeseen" claims—"arising from or in connection with any act or omission during the Class Period complained of, relating

8

to, or referred to in the Action." Dkt. 44-2, Settlement Agreement, at Section I(B)(25). There is no question that each of Winn-Dixie's claims relate to acts or omissions at the very core of the DPPs' Action, and they have been released.

## CONCLUSION

All good things must end. Even antitrust litigation. Winn-Dixie's claims against Fieldale ended with the Court's Final Approval Order. Winn-Dixie's claims should be dismissed with prejudice.

Dated: July 22, 2019

/s/ Max Marks
B. Parker Miller (*pro hac vice*)
Valarie C. Williams (*pro hac vice*)
Max Marks (*pro hac vice*)
James B. Cash (*pro hac vice*)
Anthony T. Greene (*pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000 (T)
(404) 881-7777 (F)
parker.miller@alston.com
valarie.williams@alston.com
max.marks@alston.com
james.cash@alston.com
tony.greene@alston.com

Brendan J. Healey
MANDELL MENKES LLC
One North Franklin, Suite 3600
Chicago, IL 60606
(312) 251-1006 (T)
(312) 759-2189 (F)
bhealey@mandellmenkes.com

R. Brent Hatcher, Jr. (*pro hac vice*)
SMITH, GILLIAM, WILLIAMS & MILES PA
301 Green Street NW, Suite 200
Gainesville, GA 30501
(770) 536-3381 (T)
(770) 535-9902 (F)
bhatcher@sgwmfirm.com

*Attorneys for Fieldale Farms Corporation*

## CERTIFICATE OF SERVICE

      The undersigned, an attorney, hereby certifies that on July 22, 2019, he filed Fieldale's **MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE FINAL APPROVAL ORDER AND DISMISS ALL CLAIMS BROUGHT BY PLAINTIFFS WINN-DIXIE STORES, INC. AND BI-LO HOLDINGS, LLC** with the Clerk of the Court via the ECF system, which automatically served all registered participants.

                                                  /s/ Max Marks