UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To:<br><br>Certain DAP Actions Listed in Footnote 1[1] | Case No. 1:16-cv-08637 |

**CASE FARMS DEFENDANTS' REQUEST FOR
JUDICIAL NOTICE AND INCORPORATION BY REFERENCE**

Case Farms, LLC, Case Farms Processing, Inc. and Case Foods, Inc. (collectively "Case") file this motion in connection with their concurrently-filed Consolidated Motion to Dismiss Direct Action Plaintiff Complaints as to Case, which seeks dismissal of the counts against Case set forth in the DAP Complaints and Amended Complaints found at R.2092, R.2096, R.2100, R.2106, R.2110, R.2113, R.2115, R.2125, R.2126, R.2130, R.2134, R.2135, R.2143, R.2163, and R.2264 (collectively the "DAP Complaints"). In this Motion, Case respectfully requests that the Court (i) take judicial notice of the material undisputed facts discussed below pursuant to Rule 201 of the Federal Rules of Evidence and (ii) consider the facts found in the documents attached as exhibits A-C hereto under the incorporation by reference doctrine. In support of this Motion, Case states as follows:

---

[1] This Request for Judicial Notice relates to the following Actions: *Associated Wholesale Grocers, Inc. v. Koch Foods, Inc., et al.*, 18-cv-6316; *Associated Grocers of the South, Inc., et al. v. Tyson Foods, Inc., et al.*, 18-cv-4616; *Ahold Delhaize USA, Inc. v. Koch Foods, Incorporated, et al.*, 18-cv-5351; *The Kroger Co., et al. v. Tyson Foods, Inc., et al.*, 18-cv-4534; *Shamrock Foods Company, et al. v. Tyson Foods, Inc., et al.*, 18-cv-7284; *Checkers Drive-In Restaurants, Inc. v. Tyson Foods, Inc., et al.*, 19-cv-1283; United Supermarkets, LLC, et al. v. Tyson Foods, Inc., et al., 18-cv-6693; *BJ's Wholesale Club, Inc. v. Tyson Foods, Inc., et al.*, 18-cv-5877; *Darden Restaurants, Inc. v. Tyson Foods, Inc., et al.*, 19-cv-0530; *Jetro Holdings, LLC v. Tyson Foods, Inc., et al.*, 18-cv-4000; *Maximum Quality Foods, Inc. v. Tyson Foods, Inc., et al.*, 18-cv-6673; *Sherwood Food Distributors, L.L.C., et al. v. Tyson Foods, Inc., et al.*, 19-cv-0354; *Winn-Dixie Stores, Inc., et al. v. Koch Foods, Inc., et al*., 18-cv-0245; *Save Mart Supermarkets v. Tyson Foods, Inc., et al*., 19-cv-2805; and *Conagra Brands, Inc., et al. v. Tyson Foods, Inc.,et al.*, 19-cv-2190'.

**Incorporation by Reference**

1.	The United States Supreme Court has stated that, even on a motion to dismiss, courts may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. 308, 323 (2007). Consequently, the Seventh Circuit "has permitted district courts to examine documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to her claim." *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002) (internal quotation marks omitted). *See also In re Harley Davidson, Inc. Secs. Litig.*, 660 F. Supp. 2d 969, 973 (E.D. Wis. 2009) ("In addition to the complaint, the court [in considering a motion to dismiss] may consider documents incorporated therein by reference and those matters of which a court may take judicial notice."). It has also been held that "a document may be incorporated even if it is never referenced directly in the complaint if the claim necessarily depended on the document." *In re Apple Inc. Device Performance Litigation*, No. 18-MD-02827-EJD, 2019 WL 1979915, at *3 (N.D. Cal., May 3, 2019).

2.	In this case, fourteen of the fifteen DAP Complaints cite to and rely on the annual reports on Broiler production issued by WATT PoultryUSA (the "WATT Reports").[2] All of Plaintiffs' claims against Case depend on the information in the WATT Reports, which is the basis for Plaintiffs' core claims regarding market share and market consolidation. Plaintiffs have not and cannot dispute the accuracy of the WATT Reports data on which they rely.

3.	Because the WATT Reports are relied on and central to several of the Plaintiffs'

---

[2] *See* R.2100 ¶¶15, 136, 138; R.2096 ¶¶7, 522, 523; R.2092 ¶¶411, 356, 357; R.2125, 2126, 2130, 2134, 2135 ¶¶7, 355, 356; R.2113 ¶¶7, 352, 353; R.2264 ¶¶8, 357, 358; R.2106 ¶¶7, 513, 514; R.2163 ¶¶7, 509, 510; R.2115 ¶¶7, 352, 353; R.2143 ¶¶17, 341, 342, 381. Only the DAP Complaint of Shamrock Foods, R.2110, does not cite to the WATT Reports.

core allegations, they may be considered at the pleading stage. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007) (holding court "was entitled to take notice of the full contents of the published articles referenced in the complaint, from which the truncated quotations were drawn"); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("[T]he incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment."). *See also Larue v. Mills*, No. 18 C 932, 2019 WL 3195140, at *6 (N.D. Ill., July 15, 2019) ("The Court notes at the outset that it may consider the IDOC contract without converting the motion to dismiss to one for summary judgment because Plaintiff's complaint referred to and rests on it.")

4. The WATT Report for 2007 published in February 2008 and the WATT Report titled "Top US broiler producers 2008-2018," Exhibits A and B to this Motion, list the top Broiler producers in the domestic market ranked by each producer's average weekly production of ready to cook ("RTC") chicken. *See* Exhibit K hereto, Declaration of Joseph D. Carney ("Carney Decl.") ¶ 2.

5. The information contained in the WATT Reports shows two material facts which render the claims asserted against Case implausible and, as such, are relevant to the arguments in the Motion to Dismiss. First, the data in the far-right column on Exhibit A, titled "Million lbs. R.T.C.," tracking production for 2007, and all of the columns for years 2008 through 2016 on page 2 of Exhibit B, set forth the average weekly output of ready to cook chicken produced by the top broiler companies for each year from 2007 through 2016. Carney Decl. ¶ 2. The row on Exhibit B containing Case's data is highlighted. Exhibit C to the Carney Decl. was generated using the data in the WATT Reports at Exhibits A and B, and includes on one page the average

3

weekly production of ready to cook chicken of each producer, including Case (whose data remains highlighted), for the years 2007-2016. *Id.* ¶ 3. Based on the WATT Reports found at Exhibits A and B, Exhibit C totals the average weekly production of ready to cook chicken for all reported producers, and then calculates Case's percentage share of that total market for each year from 2007 through 2016. *Id.* ¶ 3. For all relevant years, Case's market share ranged between 1.38% and 2.28%. Exhibit C.

6. Because the WATT Reports are relied on in the DAP Complaints and central to Plaintiffs' claims, and because there is no dispute about the accuracy of the information they contain, the data in Exhibits A and B and the simple calculations based on that data in Exhibit C (see Carney Decl. ¶¶ 2-3) are properly considered by the Court in connection with Case's Motion to Dismiss.

## Judicial Notice

7. Rule 201(b) of the Federal Rules of Evidence permits a court to take judicial notice of a fact that is not subject to reasonable dispute if it:

(1) is generally known within the trial court's territorial jurisdiction; or

(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

*See In the Matter of Lisse*, 905 F.3d 495, 496 (7th Cir. 2018). Where a defendant submits materials that are outside the pleadings but comply with Rule 201(b) in support of a 12(b)(6) motion to dismiss, the Court is not required to treat the motion to dismiss as one seeking summary judgment. "A court may consider judicially noticed documents without converting a motion to dismiss into a motion for summary judgment. Judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies is proper." *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) (citations

4

omitted).

**Exhibits A-C**

8. Pursuant to Federal Rule of Evidence 201(b), the Court can properly take judicial notice of the data and information in Exhibits A, B and C, the reliability and accuracy of which cannot reasonably be questioned and are unchallenged by any party to this action. *See, e.g.*, *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 763 F.Supp.2d 423, 583 (S.D.N.Y. 2011) ("The data sources used to gather the information summarized in the Gross Declaration and the exhibits attached to it are also properly considered on a motion to dismiss."); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, No. 05 CIV. 4248 (TPG), 2007 WL 4458117, at *4 (S.D.N.Y. Dec. 18, 2007), *aff'd in part*, 626 F.3d 699 (2d Cir. 2010) ("The Houston Shipping Channel index prices are published in reliable industry reports, and the court can take judicial notice of them. Additionally, AEP does not dispute that the HSC price listed is an accurate reflection of the market price of natural gas on that date."). For the reasons discussed above and in the separately-filed Memorandum in Support of Case Farms Defendants' Consolidated Motion to Dismiss ("Case Memorandum"), Exhibits A through C are relevant to the Case Motion to Dismiss because they demonstrate that the claims against Case are not plausible. Specifically, the Court should take judicial notice of the following facts from Exhibits A-C:

    a. The chart below sets out Case's 2007 through 2016 market share, which was calculated by dividing Case's output by total industry output as reported in the WATT Reports relied on by Plaintiffs (*see* Exhibits A-C):

| Year | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|---|---|---|
| Case Market Share | 1.38% | 1.64% | 1.83% | 1.84% | 1.84% | 2.04% | 2.20% | 2.27% | 2.26% | 2.28% |

b.   Case increased production every year from 2007 through 2016.  *See* Exhibits A-C;

c.   Case's average weekly Broiler production grew from 10.13 million lbs. in 2007 to 18.90 million lbs. in 2016, an average annual gain of 9.6%.  *See* Exhibits A-C;

d.   From 2008 to 2014, Case's average weekly Broiler production grew on average more than 10% annually, from approximately 11.04 million lbs. in 2008 to approximately 17.86 million lbs. in 2014.  *See* Exhibit B;

e.   Case's average weekly Broiler production increased from approximately 11.04 million lbs. in 2008 to approximately 12.01 million lbs. in 2009, an increase of 8.8%.  *See* Exhibit B;

f.   Case's average weekly Broiler production increased from approximately 13.03 million lbs. in 2011 to approximately 15.41 million lbs. in 2012, an increase of 18.3%.  *See* Exhibit B.

**Exhibits D-J**

9.   The Court should take judicial notice of the information in Exhibits D through J, discussed in and authenticated by the Carney Declaration, because the information in these documents is part of the record of this proceeding and can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *Lisse*, 905 F.3d at 496.  This information is derived from documents provided by (i) third-party discovery vendors used by both Plaintiffs and Defendants in the *In Re Broiler Chicken Antitrust Litigation*; (ii) discovery served by Plaintiffs in the *In Re Broiler Chicken Antitrust Litigation* on Case; and (iii) a docketed ruling by the Court in the *In Re Broiler Chicken Antitrust Litigation*. All of this information regarding the status of discovery in the *In Re Broiler Chicken Antitrust Litigation* is part of the record of this proceeding and cannot be disputed by the parties.  *See, e.g.,* Carney Decl. ¶¶ 4, 8-10.  Specifically, the Court should take judicial notice of the following facts:

    a.    By February 18, 2019, Plaintiffs had received approximately eight million documents from Defendants and third parties, including Case. Exhibits H, I, Carney Decl. ¶ 8, 10;

    b.    By April 15, 2019, the date the first Direct Action Complaint naming Case was filed, Plaintiffs had conducted 73 depositions at which thousands of exhibits were marked. Exhibit D, Carney Decl. ¶ 4;

    c.    In response to a third-party subpoena, Case produced 93,257 records containing 600,883 pages between October 2018 and February 1, 2019. Exhibit H, Carney Decl. ¶ 8;

    d.    After April 2019, when the first DAP Complaint against Case was filed, Plaintiffs have received the benefit of even further discovery, including additional documents produced by defendants, including Case (Exhibits H & I), and dozens of additional depositions (Exhibit D).

10. As the Supreme Court has observed, "antitrust discovery can be expensive," generating "reams and gigabytes of business records," and unless implausible claims are weeded out at the pleading stage, "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching [summary judgment or trial]." *Twombly*, 550 U.S. 544 at 559 . The voluminous discovery in this case documented in Exhibits D through I has imposed and will continue to impose a disproportionate substantial economic burden on fringe player Case.

11. Exhibits D through J are further relevant to the Motion to Dismiss for at least the following reasons. First, these exhibits demonstrate both the volume of discovery available to Plaintiffs **before** the DAP Complaints asserting claims against Case were filed and the volume of discovery **available today**. Based on the volume of discovery available to all parties in the *In Re Broiler Chicken Antitrust Litigation* by February 18, 2019, Plaintiffs cannot excuse their failure to include in their respective complaints well-pleaded factual allegations against Case. By that date, Plaintiffs had access to: (i) the relevant documents from the defendants with whom Case allegedly conspired (*see* Exhibit I); (ii) voluminous documents produced by Case in response to a

third-party subpoena duces tecum (*see* Exhibits E, H, and J); (ii) relevant deposition testimony from the defendants with whom Case allegedly conspired (*see* Exhibit D); and (iii) all of the relevant Agri Stats documents on which Plaintiffs' claims against Case rely (*see* Exhibit G).

12. Second, in its concurrently filed Motion to Dismiss and the Case Memorandum, Case specifically requests that Plaintiffs not be given leave to amend to cure the serious and dispositive flaws in Plaintiffs' claims against Case unless they can show in any opposition to the Case motion that they can include well-pleaded factual allegations in any amended complaint to support their claims against Case. Exhibits D through J demonstrate that, between the time Case first was named as a defendant and the date of this filing, Plaintiffs have had access to additional discovery. *See* Exhibits E - J (describing the volume of relevant documents, including documents and structured data produced by Case and AgriStats, to which Plaintiffs have access); Exhibit D (identifying the 116 depositions of defendants and third parties conducted by Plaintiffs through June 20, 2019). Based on the information in Exhibits D through J, Plaintiffs have no credible excuse for their failure to make the required showing in any opposition to this motion that they cannot include well-pleaded factual allegations in support of their claims against Case in any further amended complaint.

Dated: July 22, 2019

Respectfully Submitted,

/s/ Joseph D. Carney_____
Joseph D. Carney (0010886)
JOSEPH D. CARNEY & ASSOCIATES, LLC
Mailing Address:
1540 Peach Drive
Avon, OH 44044
Tel: (440) 289-5161
Fax: (866) 270-1221
jdc@jdcarney.com

Thomas M. Staunton (6217164)
Daniel M. Feeney (6224893)
MILLER SHAKMAN LEVINE & FELDMAN LLP
180 North LaSalle Street, Suite 3600
Chicago, IL 60601
Tel: (312) 263-3700
Fax: (312) 263-3270
dfeeney@millershakman.com
tstaunton@millershakman.com

Daniel R. Karon (6207193)
KARON LLC
700 West St. Clair Ave., Suite 200
Cleveland, OH 44113
Tel: (216) 622-1851
Fax: (216) 241-8175
dkaron@karonllc.com

Deborah A. Klar
D. KLAR LAW
2934 ½ Beverly Glen Circle, Suite 761
Bel Air, California 90077-1724
Tel: (310) 858-9500
dklar@dklarlaw.com

*Attorneys for Defendants Case Foods, Inc., Case Farms, LLC and Case Farms Processing, Inc.*

9

**CERTIFICATE OF SERVICE**

    I, Daniel M. Feeney, hereby certify that a true and correct copy of the foregoing Case Farms Defendants' Request for Judicial Notice and Incorporation by Reference was electronically filed with the Clerk of the Court using the CM/ECF system on July 22, 2019, which constitutes service on counsel of record who are registered electronic filing users.

                                        /s/ Daniel M. Feeney_____
                                        Daniel M. Feeney