EXHIBIT "A"

# Poultry USA
## BROILER RANKINGS

### ▶ NATION'S TOP BROILER COMPANIES, 2008

Number of slaughter processing plants and further processing plants; production based on average weekly slaughter during 2007; *WATT PoultryUSA* survey, 2008

| FIRM | Slaughter Plants | Further Proc. Operations[1] | Million Head | Million Lbs. Liveweight | Average Liveweight | Million Lbs. R-T-C |
|---|---|---|---|---|---|---|
| Pilgrim's Pride Corporation | 38 | 15/12 | 42.72 | 223.91 | 5.24 | 174.65 |
| Tyson Foods, Inc. | 35 | 34/13 | 39.20 | 194.82 | 4.97 | 144.17 |
| Perdue Farms, Inc. | 10 | 1/4 | 12.16 | 71.41 | 5.87 | 55.70 |
| Sanderson Farms, Inc. | 8 | 0/1 | 6.61 | 45.74 | 6.92 | 38.94 |
| Wayne Farms, LLC | 8 | 0/5 | 5.88 | 39.63 | 6.74 | 34.40 |
| Mountaire Farms, Inc. | 3 | | 4.89 | 37.42 | 7.66 | 30.53 |
| House of Raeford Farms, Inc. | 6 | 2/2 | 4.29 | 29.08 | 7.24 | 24.58 |
| Keystone Foods, LLC | 3 | 0/4 | 3.53 | 23.44 | 6.64 | 19.44 |
| Koch Foods, Inc. | 6 | 1/0 | 5.31 | 25.22 | 4.75 | 18.60 |
| O.K. Foods, Inc. | 2 | 2/1 | 3.00 | 21.00 | 7.00 | 16.20 |
| Foster Farms | 5 | 2/4 | 5.20 | 28.81 | 5.54 | 16.18 |
| George's, Inc. | 3 | 1/1 | 4.83 | 19.84 | 4.11 | 14.78 |
| Peco Foods, Inc. | 4 | 1/1 | 3.37 | 19.48 | 5.77 | 14.62 |
| Fieldale Farms Corporation | 2 | 3/1 | 3.05 | 16.79 | 5.50 | 14.52 |
| Allen Family Foods, Inc. | 3 | | 2.71 | 17.45 | 6.21 | 13.63 |
| Townsends, Inc. | 2 | 1/2 | 1.90 | 14.67 | 7.72 | 12.48 |
| Simmons Foods, Inc. | 3 | 2/1 | 2.95 | 15.10 | 5.11 | 11.78 |
| Case Foods, Inc. | 3 | 0/1 | 1.61 | 12.25 | 7.59 | 10.13 |
| Cagle's, Inc. | 2 | 2/1 | 2.36 | 9.56 | 4.05 | 7.56 |
| Mar-Jac Poultry, Inc. | 1 | 1/0 | 2.00 | 8.80 | 4.40 | 7.20 |
| Amick Farms, Inc./OSI Group | 1 | | 1.15 | 9.25 | 8.00 | 7.00 |
| Marshall Durbin Companies | 2 | 1/0 | 2.12 | 8.27 | 3.90 | 6.39 |
| Claxton Poultry Farms | 1 | | 1.64 | 7.72 | 4.71 | 6.20 |
| Gold'n Plump Poultry, Inc. | 2 | 1/0 | 1.57 | 7.53 | 4.77 | 6.09 |
| Peterson Farms, Inc. | 1 | 1/0 | 1.14 | 6.68 | 5.81 | 5.09 |
| Harrison Poultry, Inc. | 1 | | 1.00 | 6.07 | 6.07 | 4.80 |
| Golden-Rod Broilers, Inc. | 1 | | 1.10 | 4.56 | 4.15 | 3.42 |
| Coleman Natural Foods | 2 | 2/3 | 0.72 | 4.10 | 5.88 | 3.08 |
| Farmers Pride, Inc. | 1 | | 0.85 | 4.72 | 5.55 | 3.00 |
| Draper Valley Holdings, LLC | 1 | 1/0 | 0.55 | 2.92 | 5.29 | 2.13 |
| Holmes Foods | 1 | 1/0 | 0.51 | 2.04 | 4.00 | 1.70 |
| MBA Poultry, LLC | 1 | 1/0 | 0.32 | 2.01 | 6.15 | 1.25 |
| Lady Forest Farms | 1 | | 0.35 | 1.42 | 4.05 | 1.06 |
| Gentry Poultry Co., Inc. | 1 | 1/0 | 0.31 | 1.31 | 4.35 | 1.02 |
| Gerber's Poultry | 1 | 1/0 | 0.27 | 1.39 | 5.09 | 0.97 |
| Park Farms, Inc. | 1 | 1/0 | 0.32 | 1.22 | 3.80 | 0.95 |
| Hain Pure Protein Corp. | 1 | 1/0 | 0.22 | 1.17 | 5.30 | 0.84 |
| Empire Kosher Poultry, Inc. | 1 | 0/1 | 0.19 | 0.82 | 4.25 | 0.50 |
| **TOTAL** | | | **171.90** | **947.62** | **5.53** | **735.58** |

[1] Number of further processing operations non-cooked/cooked, © *WATT PoultryUSA*

EXHIBIT "B"



**Top US broiler producers 2008-2018** (Production measured in million lbs., RTC, annually)

| Company | Address 1 | Address 2 | City | State | Postal code | Phone | Website 1 |
|---------|-----------|-----------|------|-------|-------------|-------|-----------|
| Tyson Foods (broiler) | 2200 Don Tyson Parkway | | Springdale | AR | 72765-2020 | +1.479.290.4000 | www.tyson.com |
| Pilgrim's Pride Corp. | 1770 Promontory Circle | | Greeley | CO | 80634 | +1.970.506.8000 | www.pilgrims.com |
| Sanderson Farms Inc. | P.O. Box 988 | | Laurel | MS | 39441 | +1.601.649.4030 | www.sandersonfarms.com |
| Perdue Foods (broiler) | P.O. Box 1537 | | Salisbury | MD | 21802 | +1.410.543.3000 | www.perdue.com |
| Koch Foods Inc. | 4404 West Berteau | | Chicago | IL | 60641 | +1.800.837.2778 | www.kochfoods.com |
| Mountaire Farms Inc. | P.O. Box 1320 | | Millsboro | DE | 19966 | +1.302.934.1100 | www.mountaire.com |
| Wayne Farms LLC | 4110 Continental Drive | | Oakwood | GA | 30566 | +1.770.538.2120 | www.waynefarms.com |
| Peco Foods | P.O. Box 1760 | | Tuscaloosa | AL | 35403 | +1.205.345.4711 | www.pecofoods.com |
| George's Inc. | P.O. Drawer G | | Springdale | AR | 72765-2030 | +1.479.927.7000 | www.georgesinc.com |
| House of Raeford Farms Inc. (broiler) | P.O. Box 699 | | Rose Hill | NC | 28458 | +1.910.289.3191 | www.houseofraeford.com |
| Foster Farms (broiler) | P.O. Box 457 | | Livingston | CA | 95334-0457 | +1.209.394.7901 | www.fosterfarms.com |
| Amick Farms LLC (OSI Group) | P.O. Box 2309 | | Leesville | SC | 29070 | +1.803.532.1400 | www.amickfarms.com |
| Case Foods Inc. | P.O. Box 729 | | Troutman | NC | 28166-0729 | +1.704.528.4501 | www.casefarms.com |
| Fieldale Farms | P.O. Box 558 | | Baldwin | GA | 30511 | +1.706.778.5100 | www.fieldale.com |
| OK Foods Inc. | P.O. Box 1787 | | Fort Smith | AR | 72902 | +1.479.783.4186 | www.okfoods.com |
| Simmons Foods Inc. | P.O. Box 430 | | Siloam Springs | AR | 72761 | +1.479.524.8151 | www.simmonsfoods.com |
| Claxton Poultry Farms | P.O. Box 428 | | Claxton | GA | 30417 | +1.912.739.3181 | www.claxtonpoultry.com |
| Mar-Jac Poultry LLC | P.O Box 931 | | Jasper | AL | 35501 | +1.205.387.1441 | www.marjacpoultry.com |
| Allen Harim Foods | 29984 Pinnacle Way | | Millsboro | DE | 19966 | +1.302.629.9136 | www.allenharimllc.com |
| Mar-Jac Poultry Inc. | P.O. Box 1017 | | Gainsville | GA | 30503 | +1.770.531.5000 | www.marjacpoultry.com |
| Harrison Poultry Inc. | P.O. Box 550 | | Bethlehem | GA | 30620 | +1.770.867.7511 | |
| Farmers Pride Inc. | 154 West Main Street | P.O. Box 39 | Fredericksburg | PA | 17026 | +1.717.865.6626 | www.bellandevans.com |
| Golden-Rod Broilers Inc. | P.O. Box 948 | | Cullman | AL | 35056 | +1.256.734.0941 | |
| Holmes Foods | 101 South Liberty Ave. | | Nixon | TX | 78140 | +1.830.582.1551 | www.holmesfoods.com |
| Miller Poultry | 9622 West 350 North | P.O. Box 239 | Orlando | IN | 46776 | +1.800.532.4186 | www.millerpoultry.com |
| Hain Pure Protein Corp. (broiler) | 220 N. Center Street | | Fredericksburg | PA | 17026 | +1.717.865.2136 | www.freebirdchicken.com |
| Gerber's Poultry | P.O. Box 206 | | Kidron | OH | 44636 | +1.330.857.2731 | www.gerbers.com |
| Gentry's Poultry Co. Inc. | P.O. Box 38 | | Ward | SC | 29166 | +1.864.445.2161 | www.gentryspoultry.com |
| Murray's Chicken | 5190 Main Street | | South Fallsburg | NY | 12779 | +1.800.770.6347 | www.murrayschicken.com |
| Agri Star Meat & Poultry | 220 North West Street | | Postville | IA | 52162-7714 | +1.563.864.7811 | www.agristarmeat.com |

Copyright 2019, WATT Global Media

| Website 2 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| www.tysonfoods.com | 142.05 | 146.20 | 161.00 | 165.86 | 167.51 | 168.00 | 176.31 | 175.60 | 174.29 | 174.80 | 192.33 |
| www.jbssa.com | 159.46 | 135.28 | 126.50 | 130.82 | 149.03 | 138.33 | 138.36 | 141.67 | 142.20 | 154.20 | 156.02 |
|  | 46.94 | 46.65 | 49.36 | 53.95 | 56.90 | 58.47 | 58.80 | 66.20 | 72.40 | 82.50 | 86.60 |
|  | 54.81 | 54.00 | 53.60 | 53.54 | 54.71 | 56.20 | 56.49 | 61.74 | 62.40 | 62.86 | 64.42 |
| www.kochfoodsinc.com/home | 34.80 | 32.95 | 35.15 | 35.15 | 48.00 | 48.00 | 48.00 | 48.00 | 50.00 | 50.00 | 50.00 |
|  | 31.48 | 31.50 | 33.48 | 36.12 | 39.26 | 41.04 | 43.75 | 46.10 | 46.63 | 48.48 | 48.97 |
|  | 34.60 | 32.70 | 34.74 | 37.36 | 36.65 | 42.89 | 45.39 | 47.68 | 47.22 | 47.10 | 47.80 |
|  | 15.76 | 17.87 | 18.96 | 21.88 | 23.05 | 23.93 | 24.08 | 26.53 | 29.21 | 34.90 | 35.92 |
|  | 14.37 | 14.00 | 15.60 | 16.48 | 19.13 | 19.56 | 20.13 | 20.49 | 21.49 | 22.59 | 29.32 |
|  | 23.01 | 21.80 | 23.40 | 21.40 | 21.88 | 23.48 | 26.44 | 27.52 | 27.35 | 27.62 | 27.14 |
|  | 17.25 | 19.00 | 19.96 | 20.37 | 20.92 | 21.03 | 20.13 | 20.76 | 19.75 | 21.10 | 24.57 |
|  | 7.40 | 8.40 | 11.50 | 15.05 | 15.41 | 15.50 | 16.80 | 19.60 | 21.80 | 21.40 | 21.90 |
|  | 11.04 | 12.01 | 12.72 | 13.03 | 15.41 | 16.73 | 17.86 | 18.40 | 18.90 | 19.50 | 19.60 |
|  | 14.95 | 15.70 | 15.70 | 15.70 | 14.60 | 13.00 | 15.00 | 15.90 | 16.00 | 16.00 | 16.00 |
| www.okindustriesinc.com | 15.03 | 15.82 | 15.82 | 12.82 | 14.70 | 14.70 | 14.70 | 14.70 | 13.59 | 13.88 | 13.88 |
|  | 14.35 | 14.35 | 16.30 | 13.60 | 12.50 | 13.26 | 13.26 | 13.79 | 13.32 | 13.62 | 13.62 |
|  | 6.20 | 6.47 | 6.40 | 7.08 | 7.41 | 7.94 | 8.24 | 8.42 | 8.61 | 8.85 | 9.04 |
|  | 6.39 | 7.14 | 7.50 | 7.65 | 7.11 | 6.55 | 7.00 | 7.60 | 8.00 | 8.38 | 8.38 |
|  |  |  | 9.70 | 5.98 | 4.33 | 5.20 | 5.96 | 6.66 | 8.57 | 8.27 | 7.63 |
|  | 7.20 | 7.20 | 7.20 | 7.00 | 7.20 | 7.25 | 7.25 | 7.40 | 7.40 | 7.50 | 7.50 |
|  | 4.74 | 4.56 | 4.62 | 4.97 | 5.17 | 5.54 | 5.74 | 5.71 | 5.10 | 5.25 | 5.29 |
|  | 3.00 | 2.78 | 2.78 | 2.79 | 2.79 | 2.79 | 2.79 | 3.36 | 3.50 | 3.50 | 3.50 |
|  | 3.42 | 3.42 | 3.42 | 3.12 | 3.12 | 3.12 | 3.79 | 3.49 | 3.49 | 3.49 | 3.49 |
|  | 1.70 | 2.19 | 2.19 | 2.19 | 2.20 | 2.20 | 2.52 | 2.39 | 2.39 | 2.57 | 2.75 |
|  | 0.81 | 0.70 | 0.88 | 1.44 | 1.44 | 1.67 | 1.67 | 0.96 | 1.34 | 2.70 | 2.75 |
|  | 0.84 | 0.84 | 0.92 | 0.95 | 0.95 | 0.95 | 1.00 | 1.00 | 1.23 | 1.23 | 1.85 |
|  | 1.09 | 1.07 | 1.10 | 1.11 | 1.44 | 1.50 | 1.55 | 1.60 | 1.50 | 1.76 | 1.77 |
|  | 1.02 | 1.02 | 1.02 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 |
|  |  | 0.77 | 0.79 | 0.81 | 0.83 | 0.83 | 0.83 | 0.83 | 0.83 | 0.83 | 0.83 |
|  |  | 0.29 | 0.27 | 0.27 | 0.27 | 0.27 | 0.27 | 0.27 | 0.27 | 0.27 | 0.27 |

EXHIBIT "C"

**Top US broiler producers 2008-2018** (Production measured in million lbs., RTC, annually)

| Company | 2007 (Ex. A) | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Tyson Foods (broiler) | 144.17 | 142.05 | 146.20 | 161.00 | 165.86 | 167.51 | 168.00 | 176.31 | 175.60 | 174.29 | 174.80 | 192.33 |
| Pilgrim's Pride Corp. | 174.65 | 159.46 | 135.28 | 126.50 | 130.82 | 149.03 | 138.33 | 138.36 | 141.67 | 142.20 | 154.20 | 156.02 |
| Sanderson Farms Inc. | 38.94 | 46.94 | 46.65 | 49.36 | 53.95 | 56.90 | 58.47 | 58.80 | 66.20 | 72.40 | 82.50 | 86.60 |
| Perdue Foods (broiler) | 55.7 | 54.81 | 54.00 | 53.60 | 53.54 | 54.71 | 56.20 | 56.49 | 61.74 | 62.40 | 62.86 | 64.42 |
| Koch Foods Inc. | 18.6 | 34.80 | 32.95 | 35.15 | 35.15 | 48.00 | 48.00 | 48.00 | 48.00 | 50.00 | 50.00 | 50.00 |
| Mountaire Farms Inc. | 30.53 | 31.48 | 31.50 | 33.48 | 36.12 | 39.26 | 41.04 | 43.75 | 46.10 | 46.63 | 48.48 | 48.97 |
| Wayne Farms LLC | 34.4 | 34.60 | 32.70 | 34.74 | 37.36 | 36.65 | 42.89 | 45.39 | 47.68 | 47.22 | 47.10 | 47.80 |
| Peco Foods | 14.62 | 15.76 | 17.87 | 18.96 | 21.88 | 23.05 | 23.93 | 24.08 | 26.53 | 29.21 | 34.90 | 35.92 |
| George's Inc. | 14.78 | 14.37 | 14.00 | 15.60 | 16.48 | 19.13 | 19.56 | 20.13 | 20.49 | 21.49 | 22.59 | 29.32 |
| House of Raeford Farms Inc. (broiler) | 24.58 | 23.01 | 21.80 | 23.40 | 21.40 | 21.88 | 23.48 | 26.44 | 27.52 | 27.35 | 27.62 | 27.14 |
| Foster Farms (broiler) | 16.18 | 17.25 | 19.00 | 19.96 | 20.37 | 20.92 | 21.03 | 20.13 | 20.76 | 19.75 | 21.10 | 24.57 |
| Amick Farms LLC (OSI Group) | 7 | 7.40 | 8.40 | 11.50 | 15.05 | 15.41 | 15.50 | 16.80 | 19.60 | 21.80 | 21.40 | 21.90 |
| Case Foods Inc. | 10.13 | 11.04 | 12.01 | 12.72 | 13.03 | 15.41 | 16.73 | 17.86 | 18.40 | 18.90 | 19.50 | 19.60 |
| Fieldale Farms | 14.52 | 14.95 | 15.70 | 15.70 | 15.70 | 14.60 | 13.00 | 15.00 | 15.90 | 16.00 | 16.00 | 16.00 |
| OK Foods Inc. | 16.2 | 15.03 | 15.82 | 15.82 | 12.82 | 14.70 | 14.70 | 14.70 | 14.70 | 13.59 | 13.88 | 13.88 |
| Simmons Foods Inc. | 11.78 | 14.35 | 14.35 | 16.30 | 13.60 | 12.50 | 13.26 | 13.26 | 13.79 | 13.32 | 13.62 | 13.62 |
| Claxton Poultry Farms | 6.2 | 6.20 | 6.47 | 6.40 | 7.08 | 7.41 | 7.94 | 8.24 | 8.42 | 8.61 | 8.85 | 9.04 |
| Mar-Jac Poultry LLC | | 6.39 | 7.14 | 7.50 | 7.65 | 7.11 | 6.55 | 7.00 | 7.60 | 8.00 | 8.38 | 8.38 |
| Allen Harim Foods | | | | 9.70 | 5.98 | 4.33 | 5.20 | 5.96 | 6.66 | 8.57 | 8.27 | 7.63 |
| Mar-Jac Poultry Inc. | 7.2 | 7.20 | 7.20 | 7.20 | 7.00 | 7.20 | 7.25 | 7.25 | 7.40 | 7.40 | 7.50 | 7.50 |
| Harrison Poultry Inc. | 4.8 | 4.74 | 4.56 | 4.62 | 4.97 | 5.17 | 5.54 | 5.74 | 5.71 | 5.10 | 5.25 | 5.29 |
| Farmers Pride Inc. | 3 | 3.00 | 2.78 | 2.78 | 2.79 | 2.79 | 2.79 | 2.79 | 3.36 | 3.50 | 3.50 | 3.50 |
| Golden-Rod Broilers Inc. | 3.42 | 3.42 | 3.42 | 3.42 | 3.12 | 3.12 | 3.12 | 3.79 | 3.49 | 3.49 | 3.49 | 3.49 |
| Holmes Foods | 1.7 | 1.70 | 2.19 | 2.19 | 2.19 | 2.20 | 2.20 | 2.52 | 2.39 | 2.39 | 2.57 | 2.75 |
| Miller Poultry | | 0.81 | 0.70 | 0.88 | 1.44 | 1.44 | 1.67 | 1.67 | 0.96 | 1.34 | 2.70 | 2.75 |
| Hain Pure Protein Corp. (broiler) | 0.84 | 0.84 | 0.84 | 0.92 | 0.95 | 0.95 | 0.95 | 1.00 | 1.00 | 1.23 | 1.23 | 1.85 |
| Gerber's Poultry | 0.97 | 1.09 | 1.07 | 1.10 | 1.11 | 1.44 | 1.50 | 1.55 | 1.60 | 1.50 | 1.76 | 1.77 |
| Gentry's Poultry Co. Inc. | 1.02 | 1.02 | 1.02 | 1.02 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 |
| Murray's Chicken | | | 0.77 | 0.79 | 0.81 | 0.83 | 0.83 | 0.83 | 0.83 | 0.83 | 0.83 | 0.83 |
| Agri Star Meat & Poultry | | | | 0.29 | 0.27 | 0.27 | 0.27 | 0.27 | 0.27 | 0.27 | 0.27 | 0.27 |
| [Other] | 79.65 | | | | | | | | | | | |
| | | | | | | | | | | | | |
| **TOTAL** | 735.58 | 673.71 | 656.39 | 692.60 | 709.49 | 754.92 | 760.93 | 785.11 | 815.37 | 829.78 | 866.15 | 904.14 |
| | | | | | | | | | | | | |
| **Case Percentage of Total Market** | 1.38% | 1.64% | 1.83% | 1.84% | 1.84% | 2.04% | 2.20% | 2.27% | 2.26% | 2.28% | 2.25% | 2.17% |

EXHIBIT "D"

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 1 | Assignment No. | Assignment Date | Witnesses | # B/W Exhibit pages @ $.70/per page | # Color Exhibit pages @ $1.80/per page | |
| 2 | 2704051 | 9/08/2017 | Randy Boyce | 287 | | |
| 3 | 2971513 | 8/09/2018 | Tracy Gossett , 30b6 | 695 | | |
| 4 | 2971522 | 8/16/2018 | Brian Faulkner | 267 | | |
| 5 | 2977492 | 10/02/2018 | Todd Wilson | 290 | 140 | |
| 6 | 2977501 | 10/03/2018 | Jay Moss | 179 | 10 | |
| 7 | 3013123 | 11/01/2018 | Sammy Franklin | 65 | | |
| 8 | 3013132 | 11/02/2018 | Gus Arrendale | 54 | 20 | |
| 9 | 3014940 | 11/09/2018 | Alec Asbridge | 74 | 4 | |
| 10 | 3020602 | 10/25/2018 | Jeff Cramer | 268 | | |
| 11 | 3022279 | 11/07/2018 | Randy Pettus | 154 | 4 | |
| 12 | 3025533 | 10/29/2018 | Randy Stroud | 164 | | |
| 13 | 3027767 | 11/14/2018 | Terry Thompson | 135 | | |
| 14 | 3061860 | 11/13/2018 | Daniel  Pope | 235 | 37 | |
| 15 | 3063088 | 11/29/2018 | Neil Carey | 78 | 2 | |
| 16 | 3067268 | 11/13/2018 | Darrel Keck | 261 | | |
| 17 | 3076067 | 12/03/2018 | Aaron Leach | 173 | 2 | |
| 18 | 3105262 | 11/14/2018 | Bryan Chan Windham | | | |
| 19 | 3105267 | 11/13/2018 | John Grimes | 53 | | |
| 20 | 3110362 | 12/04/2018 | Tim Price | 66 | 339 | |
| 21 | 3110380 | 12/11/2018 | Joseph Grendys | 101 | | |
| 22 | 3111760 | 12/11/2018 | Steve McLaurin | 277 | | |
| 23 | 3113623 | 11/12/2018 | Demetria Mabry | 36 | | |
| 24 | 3116955 | 12/13/2018 | Arty Schronce | 106 | | |
| 25 | 3125454 | 12/06/2018 | Donald Jackson | 322 | | |
| 26 | 3125474 | 1/16/2019 | Michael Allen Welch | 196 | 3 | |
| 27 | 3128437 | 11/20/2018 | Jim Shepard | 183 | 44 | |
| 28 | 3137937 | 12/12/2018 | Gary George | | | |
| 29 | 3137951 | 12/18/2018 | Mark Hickman | 611 | | |
| 30 | 3137970 | 2/07/2019 | Michael Cockrell | 218 | 32 | |
| 31 | 3169849 | 1/15/2019 | Amanda Irwin | 186 | | |
| 32 | 3172620 | 1/24/2019 | Larry Higdem | 136 | 25 | |
| 33 | 3176986 | 2/06/2019 | Frances Stiles | 57 | 33 | |
| 34 | 3176995 | 2/27/2019 | Joel Williams | 423 | 14 | |
| 35 | 3177549 | 1/25/2019 | James Lee Scroggs | 40 | | |

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 1 | Assignment No. | Assignment Date | Witnesses | # B/W Exhibit pages @ $.70/per page | # Color Exhibit pages @ $1.80/per page | |
| 36 | 3179283 | 1/25/2019 | Larry Saywell | 189 | | |
| 37 | 3179306 | 2/07/2019 | Ken Qualls | 163 | 568 | |
| 38 | 3184360 | 2/12/2019 | Bruce Bontz | 86 | | |
| 39 | 3188186 | 1/10/2019 | Francis Abit Massey | 122 | 13 | |
| 40 | 3188238 | 1/11/2019 | Michael Warren Giles | 197 | 38 | |
| 41 | 3188249 | 1/29/2019 | Lance Buckert | 97 | | |
| 42 | 3192792 | 2/06/2019 | Frank McQuarrie | 9 | | |
| 43 | | | Russell Whitman | 61 | 62 | |
| 44 | 3196366 | 1/17/2019 | Arty Gordon Schronce | 89 | | |
| 45 | 3196378 | 2/06/2019 | Ken Qualls | 76 | 35 | |
| 46 | 3196392 | 2/12/2019 | Robert Cobb | 37 | | |
| 47 | 3196403 | 2/13/2019 | James Sutton | 56 | 3 | |
| 48 | 3196414 | 2/14/2019 | Gary Black | 66 | | |
| 49 | 3207667 | 2/21/2019 | Brandi Cato | 461 | | |
| 50 | 3207687 | 2/26/2019 | Randy Boyce | 73 | 243 | |
| 51 | 3208319 | 3/28/2019 | Phillip Turner | 413 | 3 | |
| 52 | 3212619 | 2/07/2019 | Russell Whitman | 91 | 6 | |
| 53 | 3216837 | 2/28/2019 | Terry Maness | 302 | | |
| 54 | 3216843 | 3/14/2019 | Robert Rosa | 1515 | 176 | |
| 55 | 3217696 | 2/13/2019 | Cheryl Thompson | 129 | 158 | |
| 56 | 3217719 | 2/26/2019 | William Snyder | 108 | | |
| 57 | 3217794 | 4/02/2019 | Trent Goins | 92 | | |
| 58 | 3221321 | 3/05/2019 | Claude Vernon Owenby | 104 | | |
| 59 | 3221342 | 3/06/2019 | Walt Shafer | 317 | | |
| 60 | 3221360 | 3/07/2019 | IsMarie Ripley | 51 | 3 | |
| 61 | 3221962 | 3/20/2019 | Robert Kenney | 245 | 275 | |
| 62 | 3222066 | 4/04/2019 | Robert Costner | 311 | | |
| 63 | 3227006 | 2/28/2019 | Neil Morgan | 95 | 32 | |
| 64 | 3227055 | 4/04/2019 | Jerry Lane | 94 | | |
| 65 | 3227070 | 4/09/2019 | Gary Murphy | 296 | 60 | |
| 66 | 3232076 | 3/13/2019 | E. Bradley Respess | 191 | | |
| 67 | 3232089 | 3/26/2019 | Larry Guest | 128 | 21 | |
| 68 | 3232095 | 4/18/2019 | R. Phillip Plylar | | | |
| 69 | 3232108 | 3/21/2019 | Benny Bishop | | | |

|  | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 1 | Assignment No. | Assignment Date | Witnesses | # B/W Exhibit pages @ $.70/per page | # Color Exhibit pages @ $1.80/per page | |
| 70 | 3245437 | 3/21/2019 | Steve Clever | 139 | 33 | |
| 71 | 3248260 | 3/27/2019 | Dale Tolbert | 66 | | |
| 72 | 3249011 | 4/09/2019 | John Comino | 118 | | |
| 73 | 3257781 | 3/18/2019 | Sue Trudell | 437 | 46 | |
| 74 | 3257791 | 3/19/2019 | Sue Trudell | 100 | 62 | |
| 75 | 3262466 | 4/24/2019 | John Wright | 56 | 53 | |
| 76 | 3262477 | 4/25/2019 | David Wicker | 65 | 108 | |
| 77 | 3262496 | 4/26/2019 | Steven Kernen - Statement on the Record | 0 | 0 | |
| 78 | 3266615 | 4/16/2019 | Evonne Terwilliger | 12 | | |
| 79 | 3270146 | 4/23/2019 | Michael O'Shaughnessy | | | |
| 80 | 3271750 | 5/02/2019 | Michael Roberts | 491 | 195 | |
| 81 | 3271758 | 5/02/2019 | Lampkin Butts | 367 | 115 | |
| 82 | 3277891 | 5/07/2019 | Peter Martin | 264 | | |
| 83 | 3277898 | 4/30/2019 | Robert Tomlinson | | | |
| 84 | 3277912 | 5/22/2019 | Scott Hunter | 130 | 3 | |
| 85 | 3277944 | 5/22/2019 | Courtney Fazekas 30b1 | 765 | 72 | |
| 86 | 3277959 | 5/23/2019 | Courtney Fazekas 30b6 | 210 | | |
| 87 | 3284149 | 5/30/2019 | Paul Downes | 437 | | |
| 88 | 3294627 | 4/26/2019 | Eric Scholer - Judge Gilbert Statement | 0 | 0 | |
| 89 | 3294628 | 5/03/2019 | Michael Donohue | | | |
| 90 | 3307368 | 5/15/2019 | John Lacour | 50 | 76 | |
| 91 | 3307386 | 5/16/2019 | Brian Baker | 244 | 186 | |
| 92 | 3308564 | 5/31/2019 | Kevin Grindle | 469 | 107 | |
| 93 | 3310867 | 5/22/2019 | Jason McGuire | 118 | | |
| 94 | 3311000 | 5/30/2019 | Richard Cogdill | 138 | 270 | |
| 95 | 3382487 | 5/14/2019 | Carl George | 270 | 37 | |
| 96 | 3382546 | 5/16/2019 | Mikell Fries | 513 | | |
| 97 | 3383093 | 5/23/2019 | Richard King | 232 | 80 | |
| 98 | 3387007 | 5/21/2019 | Eric Scholer | 2005 | 49 | |
| 99 | 3277912 | 5/22/2019 | Scott Hunter | 130 | 3 | |
| 100 | 3277944 | 5/22/2019 | Courtney Fazekas 30b1 | 765 | 72 | |
| 101 | 3310867 | 5/22/2019 | Jason McGuire | 118 | | |
| 102 | 3277959 | 5/23/2019 | Courtney Fazekas 30b6 | 210 | | |
| 103 | 3383093 | 5/23/2019 | Richard King | 232 | 80 | |

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 1 | Assignment No. | Assignment Date | Witnesses | # B/W Exhibit pages @ $.70/per page | # Color Exhibit pages @ $1.80/per page | |
| 104 | 3284149 | 5/30/2019 | Paul Downes | | | |
| 105 | 3311000 | 5/30/2019 | Richard Cogdill | 138 | 270 | |
| 106 | 3308564 | 5/31/2019 | Kevin Grindle | | | |
| 107 | 3312982 | 6/5/2019 | Elton Maddox | 140 | 12 | |
| 108 | 3391504 | 6/12/2019 | Leland Tollett | 396 | | |
| 109 | 3387017 | 6/13/2019 | Kim Rogers-McGhee | 158 | 5 | |
| 110 | 3308883 | 6/13/2019 | Larry Pate | 115 | | |
| 111 | 3308585 | 6/18/2019 | Todd Jurek | 92 | | |
| 112 | | 6/18/2019 | Lance Buckert | 131 | | |
| 113 | 3416605 | 6/18/2019 | Monty Henderson 30b1 | 567 | 90 | |
| 114 | | 6/18/2019 | Monty Henderson 30b6 | 25 | 72 | |
| 115 | 3383110 | 6/19/2019 | Adriaan Weststrate | 214 | 353 | |
| 116 | 3422695 | 6/19/2019 | Dustin Cannaday | 125 | | |
| 117 | 3383115 | 6/20/2019 | Tony Maturo | 1991 | 74 | |
| 118 | | | Total Number of Exhibit Pages | 25897 | 4928 | |
| 119 | | | | | | |
| 120 | | | Cost of Exhibits | $18,127.90 | $8,870.40 | |
| 121 | | | | | | $26,998.30 |

EXHIBIT "E"

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Northern District of Illinois

| | ) | |
|---|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | ) ) ) | Civil Action No. 1:16-CV-08637-TMD |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Case Foods, Inc., 385 Pilch Road, Troutman, NC 28166-8782
      *(Name of person to whom this subpoena is directed)*

☑    *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **As described in the attached Schedule A.**

| Place:   Veritext c/o Caseworks Charlotte<br>6000 Fairview Road, Suite 1273<br>Charlotte, NC 28210 | Date and Time: 1/26/2018, 9:00 a.m. |
|---|---|

☐    *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   January 12, 2018

        *CLERK OF COURT*

                                      OR

                                    s/ Brian D. Clark

          *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Direct Purchaser Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN 55401 (612) 339-6900 bdclark@locklaw.com

---

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

    ☐    I served the subpoena by delivering a copy to the named person as follows: _____

    ☐    I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

    $ _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____.

I declare under penalty of perjury that this information is true.

Date: _____

                             _____
                                     *signature*

                             _____
                               *Server'sPrinted name and title*

                             _____
                                    *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i)  is a party or a party's officer; or
    (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i)  fails to allow a reasonable time to comply;
    (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv)  subjects a person to undue burden.
  (B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i)  expressly make the claim; and
    (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

Pursuant to the foregoing subpoena duces tecum, Case Foods, Inc. ("Case Foods") is required to produce, by the date stated on the subpoena, the documents requested herein.

## DEFINITIONS

1.      "You," "your," "your association," and "your organization" means Case Foods, Inc., Case Farms Processing, Inc., Case Farms of Ohio, Inc., and Case Farms, LLC, including any subsidiaries any predecessors, wholly-owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity that the responding company manages or controls, including those merged with or acquired, together with all present and former directors, officers, employees, agents, attorneys, representatives or any persons acting or purporting to act on their behalf.

2.      "Broiler" or "Broilers" have the same meaning as the definition in ¶ 79 of Direct Purchaser Plaintiffs' Second Consolidated and Amended Complaint (ECF No. 212), which states:

> As used in this Complaint, "Broilers" are chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, raw or cooked, whole or in parts, or as a meat ingredient in a value added product, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards.

3.      "Broiler Producer" refers to any of the Defendants in this matter (see below) and any non-Defendant entity included in WattPoultryUSA's Annual Top Broiler Company survey published each spring, including the following non-Defendant entities: Cagle's, Townsend's, Harrison Poultry, Mar-Jac Poultry, Claxton Poultry, Amick Farms, Allen Harim (and its predecessor, Allen Family Farms), Case Farms, Keystone Foods, and Ozark Mountain Poultry (aka, OMP). A full list of relevant companies is available from WattPoultryUSA's website. *See,*

*e.g.*, March 2016 Issue of WattPoultryUSA, available at http://www.wattpoultryusa-digital.com/201603/.

4.     "Communication" means, without limitation, the imparting or exchange of information, thoughts or opinions by any means including orally, in writing, by signs, signals or code, including oral, written or electronic communications, such as face-to-face meetings, electronic communications, emails, facsimiles, telephone communications, correspondence or other exchange of written or recorded information. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

5.     "Defendant" means any former or current defendant in the present case, including Koch Foods, Inc., JCG Foods of Alabama, LLC, JCG Foods of Georgia, LLC, Koch Meat Co., Inc., Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Breeders, Inc., Tyson Poultry, Inc., Pilgrim's Pride Corporation, Perdue Farms, Inc., Perdue Foods LLC, Sanderson Farms, Inc., Sanderson Farms, Inc. (Foods Division), Sanderson Farms, Inc. (Production Division), Sanderson Farms, Inc. (Processing Division), Wayne Farms, LLC, Mountaire Farms, Inc., Mountaire Farms, LLC, Mountaire Farms of Delaware, Inc., Peco Foods, Inc., Foster Farms, LLC, Foster Poultry Farms, House of Raeford Farms, Inc., Simmons Foods, Inc., Simmons Prepared Foods, Inc., Fieldale Farms Corporation, George's, Inc., George's Farms, Inc., O.K. Foods, Inc., O.K. Farms, Inc., O.K. Industries, Inc., including any predecessors, wholly-owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity that the responding Defendant manages or controls.

6.     "Document" has the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form

and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

7. "Identity" or "identify" means:

a. when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

b. when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those

persons employed by or otherwise acting for such entity who are known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

8.      "Industry Analyst" means a Person or entity who analyzes market conditions in the Broiler industry for the purpose or with the effect of advising on investment in or providing financing to Broiler Producers, such as Persons who work for entities who host Industry Conferences.

9.      "Industry Conference" means a conference or event (1) that includes companies in the Broiler industry and at which the Broiler industry is discussed (2) organized or hosted by a non-Defendant company that either invests its own money or advises others who have an ownership interest in any Broiler Producer (such as Stephens, Inc., D.A. Davidson & Co., Goldman Sachs, BMO Capital Markets, JP Morgan, Merrill Lynch, Bank of America, Deutsche Bank, or similar companies), including the Goldman Sachs Global Staples Forum, Bank of America Merrill, Lynch Global Agriculture Conference, BMO Capital Markets Annual Ag & Protein Conference, BMO Capital Markets Conference, BMO Farm to Market Conference, and JP Morgan Basic Materials Conference.

10.      "Industry Meeting" means a Meeting relating to the market for Broilers that involves (a) two or more Broiler Producers; (b) Overseas Distribution Services, Inc.; (c) a conference hosted by Urner Barry, Agri Stats, Inc., or Express Markets, Inc.; or (d) a Trade Association.

11.      "Including" is used to emphasize certain types of documents requested and should not be construed as limiting the request in any way. Including therefore means "including, but not limited to," or "including without limitation."

12. "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

13. "Or" and "and" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

14. "Person" means, without limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state or any foreign country.

15. "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly or indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other documents.

16. "Structured Data" or "Structured Database" refers to any electronic data that resides in a fixed field within a record or file, such as data stored in Oracle, SQL, or files that are in Columns/Rows or a fixed field with a predefined format.

17. "Telephone Record" means any record of the originating and terminating phone numbers for a particular phone call or facsimile transmission, such as the monthly bill that telephone carriers such as AT&T, CenturyLink, and numerous other telephone carriers provide on a monthly basis.

18.     "Trade Association" means an association of business organizations—or committed, subcommittee thereof— that promotes the interests of Broiler Producers relating to Broilers and in which two or more Broiler Producers are members, including the National Chicken Council, United States Poultry & Egg Export Council ("USAPEEC"), U.S. Poultry & Egg Association ("U.S. Poultry"), Georgia Poultry Federation, North Carolina Poultry Federation, The Poultry Federation, Mississippi Poultry Association, Inc., Alabama Poultry & Egg Association, Delmarva Poultry Industry, Inc., Georgia Poultry Improvement Association, Louisiana Poultry Federation, South Carolina Poultry Federation, Louisiana Poultry Federation, International Poultry Expo ("IPE"), International Producers and Processors Expo ("IPPE"), International Poultry Council ("IPC"), American Meat Institute, and the US Meat Export Federation.

19.     All other words have their plain and ordinary meaning.

## INSTRUCTIONS

1.     Counsel for Plaintiffs will discuss with You the format and manner in which electronic and paper documents shall be produced. Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 459, attached). Plaintiffs are willing to receive native format productions from You and Bates number those documents on Your behalf to minimize any burden and expense associated with processing and labeling or responsive documents.

2.     As a third party receiving a subpoena in this matter, You are entitled to the protections of the Confidentiality Order entered on November 8, 2016 Pursuant to of the November 8, 2016 Protective Order (¶ 14 of Dkt. No. 202, attached).

3.     The Relevant Time Period for each request below is January 1, 2007 through September 2, 2016, unless otherwise noted.

## DOCUMENT REQUEST

**REQUEST NO. 1:** Communications with other Broiler Producers, such as email and text messages. This includes emails sent or received by You using personal email accounts, such as personal email addresses associated with Your employees Thomas Shelton (casefarms@hughes.net) and Kevin Philips (kevinphilips.casefarms@gmail.com).

**REQUEST NO. 2:** For each document custodian we agree upon or the court orders you to collect and produce documents from, produce the following:

  a. electronic and hard copy diaries, calendars, appointment books, notebooks, to-do lists, Day Timers, day planners or appointment notes;

  b. contact information maintained in Microsoft Outlook, similar programs, Rolodex cards, or any other format, for any Person who is or was: (i) an owner, employee, consultant, officer, board member, representative, or agent of a Broiler Producer or Agri Stats; (ii) Industry Analyst; (iii) employee of a Trade Association; or (iv) employee of any entity that falls within the definition of Industry Meeting.

  c. trip and travel logs, records, expenses, and other supporting Documents;

  d. expense and entertainment reports, including supporting Documents;

  e. bills, statements, records, and supporting Documents concerning local, long distance, and cellular telephone calls by such employees, including calls made using telephones not paid for by You (such as home office, fax, and personal telephone numbers, personal cellphones, and temporary pay-as-you go cellphones) if such telephones were used for business purposes;

  f. Documents relating to membership in any Trade Association or industry group or attendance at any Industry Meeting or Industry Conference;

  g. a copy of the Person's most recently created resume or curriculum vitae (CV);

  h. personnel file, including any discipline or performance evaluations, and any terms of employment (such as confidentiality or non-compete agreements);

  i. copies of any transcripts or recordings of prior testimony relating to Competitive Conditions in the market for Broilers, such as testimony at a deposition, trial, or public hearing; and

  j. Documents sufficient to show the Document Custodian's complete contact information, including all phone numbers, social media user names or "handles," and email addresses used by such persons for any business purposes, even if only sparingly.

**REQUEST NO. 3:** Documents relating to Agri Stats, Inc. (including Express Markets, Inc.), such as communications with Agri Stats employees, information sent to Agri Stats, and information received from Agri Stats.

**REQUEST NO. 4:** Documents or communications relating to Broiler-related breeder stock joint ventures or associations including, but not limited to Southern Hens, Inc., the Strategic Alliance or Alliance Advisory Board (organized by Tip Top Poultry, Inc.), and Crider, Inc.

**REQUEST NO. 5:** Documents and communications relating to Broiler chicken industry pricing, hatchery supply flock, slaughter, inventory, export, and production levels, including such documents or communications relating to broiler breeder flocks and Southern Hens, Inc., the Strategic Alliance/Alliance Advisory Board, or Crider, Inc.

**REQUEST NO. 6:** Documents relating to guidelines and policies for compliance with competition or antitrust laws, including training manuals and alleged, suspected, potential or actual violations of such guidelines or policies.

**REQUEST NO. 7:** Attendance at Trade Association meetings with one or more other Broiler producers.

**REQUEST NO. 8:** Any document or communication relating to the filing of, reaction to, or comment about this litigation by You from September 2, 2016 through the present.

**REQUEST NO. 9:** Structured data, such as databases regarding customer purchases of Broilers, from January 1, 2004, through the present. Plaintiffs will meet and confer with you regarding the exact data fields and format of the production of the structured data.

**REQUEST NO. 10:** Documents sufficient to identify your policies and procedures from January 1, 2007, through the present relating to electronically stored information, including retention periods, use of auto-delete for email or other systems, and employee cellphone use.

**REQUEST NO. 11:** Documents sufficient to identify Your organizational structure, including but not limited to any constitution, formation or organizational documents, articles of incorporation, business licenses, or organizational charts.

**REQUEST NO. 12:** Copies of all Telephone Records in your possession, custody, or control, including Telephone Records of your main phone number(s), main fax number(s), Document Custodian's direct dial or shared phone numbers, and any phone number used as a switchboard for any of your relevant facilities such as your headquarters, administrative offices, Broiler complexes, Broiler hatcheries, and Broiler sales offices.

EXHIBIT "F"

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To: All Actions | Case No. 1:16-cv-08637<br><br>**CLASS PLAINTIFFS' REQUESTS FOR PRODUCTION TO CASE FARMS DEFENDANTS** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Class Plaintiffs hereby request that Defendants Case Foods, Inc., Case Farms, LLC, and Case Farms Processing, Inc., produce the documents and things herein requested within 30 days of the date of service at the offices of Hart McLaughlin & Eldridge, 121 West Wacker Drive, Suite 1050, Chicago, IL 60601, or such other time and place as may be agreed upon by counsel. Pursuant to F.R.C.P. 34(b), unless otherwise specified, all documents must be organized and labeled to correspond to the categories in the associated document request. Corrections and supplemental answers and production of documents are required as provided for in the Federal Rules of Civil Procedure.

## DEFINITIONS

The following definitions shall apply to these document requests:

1. "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or

recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

2.       "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way. Including therefore means "including, but not limited to," or "including without limitation."

1.       You," "your," "your association," and "your organization" means Case Foods, Inc., Case Farms LLC, and Case Farms Processing, Inc., including any subsidiaries any predecessors, wholly-owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity that the responding company manages or controls, including those merged with or acquired, together with all present and former directors, officers, employees, agents, attorneys, representatives or any persons acting or purporting to act on their behalf.

2.       "Broiler" or "Broilers" have the same meaning as the definition in ¶ 111 of Direct Purchaser Plaintiffs' Fourth Consolidated and Amended Complaint (ECF No. 1566), which states:

> As used in this Complaint, "Broilers" are chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may

be sold in a variety of forms, including fresh or frozen, raw or cooked, whole or in parts, or as a meat ingredient in a value added product, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards.

3.      "Broiler Producer" refers to any of the Defendants in this matter (see below) and any non-Defendant entity included in WattPoultryUSA's Annual Top Broiler Company survey published each spring, including the following non-Defendant entities: Cagle's, Townsend's, Harrison Poultry, Mar-Jac Poultry, Claxton Poultry, Amick Farms, Allen Harim (and its predecessor, Allen Family Farms), Case Farms, Keystone Foods, and Ozark Mountain Poultry (aka, OMP).  A full list of relevant companies is available from WattPoultryUSA's website.  *See*, *e.g.*, March 2016 Issue of WattPoultryUSA, available at http://www.wattpoultryusa-digital.com/201603/.

4.      "Communication" means, without limitation, the imparting or exchange of information, thoughts or opinions by any means including orally, in writing, by signs, signals or code, including oral, written or electronic communications, such as face-to-face meetings, electronic communications, emails, facsimiles, telephone communications, correspondence or other exchange of written or recorded information.  The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

5.      "Defendant" means any former or current defendant in the present case, including Koch Foods, Inc., JCG Foods of Alabama, LLC, JCG Foods of Georgia, LLC, Koch Meat Co., Inc., Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Breeders, Inc., Tyson Poultry, Inc., Pilgrim's Pride Corporation, Perdue Farms, Inc., Perdue Foods LLC, Sanderson Farms, Inc., Sanderson Farms, Inc. (Foods Division), Sanderson Farms, Inc. (Production Division), Sanderson Farms, Inc. (Processing Division), Wayne Farms, LLC, Mountaire Farms, Inc., Mountaire Farms, LLC,

Mountaire Farms of Delaware, Inc., Peco Foods, Inc., Foster Farms, LLC, Foster Poultry Farms, House of Raeford Farms, Inc., Simmons Foods, Inc., Simmons Prepared Foods, Inc., Fieldale Farms Corporation, George's, Inc., George's Farms, Inc., O.K. Foods, Inc., O.K. Farms, Inc., O.K. Industries, Inc., including any predecessors, wholly-owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity that the responding Defendant manages or controls.

6.    "Document" has the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

7.    "Identity" or "identify" means:

    a.  when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

    b.  when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

  8.  "Industry Analyst" means a Person or entity who analyzes market conditions in the Broiler industry for the purpose or with the effect of advising on investment in or providing financing to Broiler Producers, such as Persons who work for entities who host Industry Conferences.

  9.  "Industry Conference" means a conference or event (1) that includes companies in the Broiler industry and at which the Broiler industry is discussed (2) organized or hosted by a non-Defendant company that either invests its own money or advises others who have an ownership interest in any Broiler Producer (such as Stephens, Inc., D.A. Davidson & Co., Goldman Sachs, BMO Capital Markets, JP Morgan, Merrill Lynch, Bank of America, Deutsche Bank, or similar companies), including the Goldman Sachs Global Staples Forum, Bank of America Merrill, Lynch Global Agriculture Conference, BMO Capital Markets Annual Ag & Protein Conference,

BMO Capital Markets Conference, BMO Farm to Market Conference, and JP Morgan Basic Materials Conference.

10.     "Industry Meeting" means a Meeting relating to the market for Broilers that involves (a) two or more Broiler Producers; (b) Overseas Distribution Services, Inc.; (c) a conference hosted by Urner Barry, Agri Stats, Inc., or Express Markets, Inc.; or (d) a Trade Association.

11.     "Including" is used to emphasize certain types of documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

12.     "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

13.     "Or" and "and" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

14.     "Person" means, without limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state or any foreign country.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or

otherwise involving, in whole or in part, directly or indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other documents.

16. "Structured Data" or "Structured Database" refers to any electronic data that resides in a fixed field within a record or file, such as data stored in Oracle, SQL, or files that are in Columns/Rows or a fixed field with a predefined format.

17. "Telephone Record" means any record of the originating and terminating phone numbers for a particular phone call or facsimile transmission, such as the monthly bill that telephone carriers such as AT&T, CenturyLink, and numerous other telephone carriers provide on a monthly basis.

18. "Trade Association" means an association of business organizations—or committed, subcommittee thereof— that promotes the interests of Broiler Producers relating to Broilers and in which two or more Broiler Producers are members, including the National Chicken Council, United States Poultry & Egg Export Council ("USAPEEC"), U.S. Poultry & Egg Association ("U.S. Poultry"), Georgia Poultry Federation, North Carolina Poultry Federation, The Poultry Federation, Mississippi Poultry Association, Inc., Alabama Poultry & Egg Association, Delmarva Poultry Industry, Inc., Georgia Poultry Improvement Association, Louisiana Poultry Federation, South Carolina Poultry Federation, Louisiana Poultry Federation, International Poultry Expo ("IPE"), International Producers and Processors Expo ("IPPE"), International Poultry Council ("IPC"), American Meat Institute, and the US Meat Export Federation.

19. All other words have their plain and ordinary meaning.

## INSTRUCTIONS

1. Counsel for Plaintiffs will discuss with You the format and manner in which electronic and paper documents shall be produced. Unless otherwise agreed, all documents shall

be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 459, attached). Plaintiffs are willing to receive native format productions from You and Bates number those documents on Your behalf to minimize any burden and expense associated with processing and labeling or responsive documents.

2.      As a third party receiving a subpoena in this matter, You are entitled to the protections of the Confidentiality Order entered on November 8, 2016 Pursuant to of the November 8, 2016 Protective Order (¶ 14 of Dkt. No. 202, attached).

3.      The Relevant Time Period for each request below is January 1, 2007 through September 2, 2016, unless otherwise noted.

## DOCUMENT REQUEST

**REQUEST NO. 1:** Communications with other Broiler Producers, such as email and text messages. This includes emails sent or received by You using personal email accounts, such as personal email addresses associated with Your employees.

**REQUEST NO. 2:** For each document custodian we agree upon or the court orders you to collect and produce documents from, produce the following:

  a. electronic and hard copy diaries, calendars, appointment books, notebooks, to-do lists, Day Timers, day planners or appointment notes;

  b. contact information maintained in Microsoft Outlook, similar programs, Rolodex cards, or any other format, for any Person who is or was: (i) an owner, employee, consultant, officer, board member, representative, or agent of a Broiler Producer or Agri Stats; (ii) Industry Analyst; (iii) employee of a Trade Association; or (iv) employee of any entity that falls within the definition of Industry Meeting.

  c. trip and travel logs, records, expenses, and other supporting Documents;

  d. expense and entertainment reports, including supporting Documents;

  e. bills, statements, records, and supporting Documents concerning local, long distance, and cellular telephone calls by such employees, including calls made using telephones not paid for by You (such as home office, fax, and personal

telephone numbers, personal cellphones, and temporary pay-as-you go cellphones) if such telephones were used for business purposes;

f. Documents relating to membership in any Trade Association or industry group or attendance at any Industry Meeting or Industry Conference;

g. a copy of the Person's most recently created resume or curriculum vitae (CV);

h. personnel file, including any discipline or performance evaluations, and any terms of employment (such as confidentiality or non-compete agreements);

i. copies of any transcripts or recordings of prior testimony relating to Competitive Conditions in the market for Broilers, such as testimony at a deposition, trial, or public hearing; and

j. Documents sufficient to show the Document Custodian's complete contact information, including all phone numbers, social media user names or "handles," and email addresses used by such persons for any business purposes, even if only sparingly.

**REQUEST NO. 3:** Documents relating to Agri Stats, Inc. (including Express Markets, Inc.), such as communications with Agri Stats employees, information sent to Agri Stats, and information received from Agri Stats.

**REQUEST NO. 4:** Documents or communications relating to Broiler-related breeder stock joint ventures or associations including, but not limited to Southern Hens, Inc., the Strategic Alliance or Alliance Advisory Board (organized by Tip Top Poultry, Inc.), and Crider, Inc.

**REQUEST NO. 5**: Documents and communications relating to Broiler chicken industry pricing, hatchery supply flock, slaughter, inventory, export, and production levels, including such documents or communications relating to broiler breeder flocks and Southern Hens, Inc., the Strategic Alliance/Alliance Advisory Board, or Crider, Inc.

**REQUEST NO. 6**: Documents relating to guidelines and policies for compliance with competition or antitrust laws, including training manuals and alleged, suspected, potential or actual violations of such guidelines or policies.

**REQUEST NO. 7**: Attendance at Trade Association meetings with one or more other Broiler producers.

**REQUEST NO. 8**: Any document or communication relating to the filing of, reaction to, or comment about this litigation by You from September 2, 2016 through the present.

**REQUEST NO. 9**: Structured data, such as databases regarding customer purchases of Broilers, from January 1, 2004, through the present. Plaintiffs will meet and confer with you regarding the exact data fields and format of the production of the structured data.

**REQUEST NO. 10:** Documents sufficient to identify your policies and procedures from January 1, 2007, through the present relating to electronically stored information, including retention periods, use of auto-delete for email or other systems, and employee cellphone use.

**REQUEST NO. 11:** Documents sufficient to identify Your organizational structure, including but not limited to any constitution, formation or organizational documents, articles of incorporation, business licenses, or organizational charts.

**REQUEST NO. 12:** Copies of all Telephone Records in your possession, custody, or control, including Telephone Records of your main phone number(s), main fax number(s), Document Custodian's direct dial or shared phone numbers, and any phone number used as a switchboard for any of your relevant facilities such as your headquarters, administrative offices, Broiler complexes, Broiler hatcheries, and Broiler sales offices.

Dated: February 4, 2019

*Direct Purchaser Plaintiffs Interim Co-Lead Class Counsel*

s/ Brian D. Clark
W. Joseph Bruckner
Elizabeth R. Odette
Brian D. Clark
Simeon A. Morbey
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T:  (612) 339-6900
F:  (612) 339-0981
wjbruckner@locklaw.com
erodette@locklaw.com
bdclark@locklaw.com
samorbey@locklaw.com

Bruce L. Simon
Neil Swartzberg
PEARSON, SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
T: (415) 433-9000
F:  (415) 433-9008
bsimon@pswlaw.com
nswartzberg@pswlaw.com

Clifford H. Pearson
Daniel L. Warshaw
Michael H. Pearson
Bobby Pouya
PEARSON SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
T: (818) 788-8300
F: (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
mpearson@pswlaw.com
bpouya@pswlaw.com

Steven Hart (#6211008)
Brian Eldridge (#6281336)
Kyle Pozan (#6306761)
HART MCLAUGHLIN & ELDRIDGE
121 West Wacker Drive, Suite 1050
Chicago, IL 60601
T: (312) 955-0545
F: (312) 971-9243
shart@hmelegal.com
beldridge@hmelegal.com
kpozan@hmelegal.com

*Direct Purchaser Plaintiffs Interim Liaison Class Counsel*

11

s/ Thomas A. Doyle
Kenneth A. Wexler
Edward A. Wallace
Thomas A. Doyle
WEXLER WALLACE LLP
55W.Monroe Street, Suite 3300
Chicago, IL 60603
T: (312) 346-2222
kaw@wexlerwallace.com
eaw@wexlerwallace.com
tad@wexlerwallace.com

***Commercial and Institutional Indirect
Purchaser Plaintiffs Liaison Counsel***

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua R. Rissman
Brittany N. Resch
GUSTAFSON GLUEK PLLC
220 South Sixth Street, #2600
Minneapolis, MN 55402
T: (612)333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsongluek.com

Joseph W. Cotchett
Adam Zapala
Mark Ram
Tamarah Prevost
COTCHETT, PITRE & MCCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
T: (650) 697-6000
jcotchett@cpmlegal.com
azapala@cpmlegal.com
mram@cpmlegal.com
tprevost@cpmlegal.com

***Commercial and Institutional Indirect
Purchaser Plaintiffs Interim Co-Lead
Counsel***

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on February 4, 2019, I caused a copy of the foregoing document to be served by email and regular mail as follows:

Joseph D. Carney, Esq.
Joseph D. Carney & Associates, LLC
1540 Peach Drive
Avon, OH 44011
<u>jdc@jdcarney.com</u>

/s/Thomas A. Doyle

EXHIBIT "G"

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

*IN RE BROILER CHICKEN ANTITRUST LITIGATION*

This Document Relates To: All Actions

Case No. 16 C 8637

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Agri Stats Inc.'s Motion for Protective Order [ECF No. 894] as to requests for production of documents and electronically-stored information ("ESI") served by the End User Consumer Plaintiffs ("EUCPs"). For the reasons discussed below, Agri Stats's Motion for Protective Order [ECF No. 894] is denied. The Court finds that Agri Stats's request for a protective order that would exempt it from performing EUCPs' proposed custodial searches of ESI for a significant portion of the time frame for discovery in this case is not justified. EUCPs and Agri Stats, however, shall continue to meet and confer in a continuing effort to accommodate Agri Stats's concerns about burden and cost without unduly impairing EUCPs' legitimate requests for discovery in this case. If the parties reach impasse on particular issues, they can bring those issues back to this Court or to the Special Master, depending upon the issue, consistent with this Memorandum Opinion and Order.

## I. BACKGROUND

Beginning in September 2010, the United States' Department of Justice Antitrust Division ("DOJ") embarked on an investigation of Agri Stats. That investigation concluded on October 3, 2102. During that investigation, Agri Stats says it searched for and produced to the DOJ documents and information like what the EUCPs are requesting. At issue in Agri Stats's Motion

for Protective Order are the custodial searches it ran during the DOJ investigation. Agri Stats ran custodial searches for designated custodians for the period between September 17, 2008 through September 17, 2010, and it produced to the DOJ responsive documents it collected with those searches. The time frame for discovery in this case is much broader. It is from January 1, 2007 until September 2, 2016. *See* Order Regarding Production of Electronically Stored Information and Paper Documents ("ESI Protocol" or "Protocol") [ECF No. 459], at ¶ V.A.[1]

Agri Stats has agreed to produce in this case what it produced to the DOJ from custodial searches it conducted during the DOJ investigation. Agri Stats contends that it should not be required to run custodial searches of ESI created prior to October 3, 2012 (the date the DOJ investigation closed) for the 12 custodians whose data Agri Stats and the EUCPs have agreed will be subject to search in this case because it ran similar searches for most of those custodians during the DOJ investigation. Agri Stats argues that requiring it to re-run expensive searches with the EUCPs' search terms for those same custodians for a broader time period than it already ran is burdensome, disproportionate to the needs of this case, and unreasonable when viewed through the filter of Federal Rule of Civil Procedure 26(b)(2). Broadly speaking, Agri Stats asserts that the custodial searches it ran for the DOJ investigation, though more limited both in time frame and substance in terms of key words than what the EUCPs now are proposing, should be sufficient for the EUCPs' needs in this case. Agri Stats argues that a protective order should be entered so that it is not required to conduct any custodial searches for the agreed-upon custodians for emails or documents created prior to October 3, 2012.

---

[1] The ESI Protocol memorialized the parties' agreement regarding the production of ESI and paper documents in this case. The ESI Protocol also specifically provides that it "shall govern all Parties in the above captioned case whether they currently are involved or become so in the future, and any related actions that may later be consolidated with this case." ESI Protocol [ECF No. 459], at 2. Agri Stats appeared as a Defendant in this case on March 8, 2018 when the District Judge granted its attorney leave to appear pro hac vice. *See* [ECF No. 784].

EUCPs disagree and maintain that Agri Stats should be required, like every other Defendant in this case, to perform the requested custodial searches for ESI with the EUCPs' proposed search terms for the time frame stated in the ESI Protocol. EUCPs essentially focus on two issues: the time frame for the custodial searches and the substance of those searches.

With respect to time frame, EUCPs say, and Agri Stats does not refute, that Agri Stats only produced to the DOJ documents and ESI collected from custodial searches for the limited two-year period of September 17, 2008 to September 17, 2010. *See* EUCPs' Opposition [ECF No. 941], at 3. That means that the custodial searches Agri Stats ran for the DOJ investigation did not include documents created between January 1, 2007 to September 17, 2008 (a period of 20 months) and September 17, 2010 to October 3, 2012 (a period of 24 months). Therefore, according to EUCPs, if the Court were to enter the protective order requested by Agri Stats, that would leave more than three and a half years during the discovery period in this case for which Agri Stats would not be required to perform any custodial searches for ESI for the agreed-upon custodians.

With respect to the substance of the searches, EUCPs argue that the custodial searches performed by Agri Stats during the DOJ investigation and the subsequent production of documents collected from those searches did not capture all the relevant documents and information EUCPs are seeking in this case. EUCPs contend that: (1) their requests for information are much broader than the DOJ's requests; (2) there are time periods critical to the allegations in this case that were not covered by the DOJ's investigation; (3) the DOJ was investigating a different antitrust conspiracy than is at the heart of the EUCPs' allegations in this case; and (4) any limitations on Agri Stats's obligations to fully comply with the EUCPs' requests would unduly prejudice Plaintiffs "by eliminating critical periods of the class period, categories of documents, types of

documents excluded by search terms, and metadata identifying the custodians of documents." EUCPs' Opposition [ECF No. 941], at 3.

The Court agrees with EUCPs. Although Agri Stats conducted custodial searches for a limited two-year period in connection with the DOJ's investigation of possible agreements to exchange competitively sensitive price and cost information in the broiler, turkey, egg, swine, beef and dairy industries, that investigation focused on different conduct than is at the heart of EUCPs' allegations in this case, which cover a broader time period than was involved in the DOJ's investigation. The Court finds that a protective order is not warranted under these circumstances. Agri Stats should not be exempted from producing documents and ESI for the discovery time frame applicable to all other Defendants in this case. Nor should it be excused from querying its ESI using search terms that correlate with EUCPs' claims in this case because it performed similar but different custodial searches for a different (though overlapping) time period for the DOJ in connection with an investigation into different allegedly anti-competitive conduct. Accordingly, the Court concludes that Agri Stats must comply with the ESI Protocol, including the temporal scope of the legitimate discovery now sought by EUCPs. As also noted below, however, EUCPs and Agri Stats should continue the process they apparently have begun to address Agri Stats's concerns about burden and cost without unduly impairing EUCPs' legitimate requests for discovery in this case.

## II. LEGAL STANDARD

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, a district court has broad discretion in matters relating to discovery. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676 (7th Cir. 2002). Rule 26 permits the discovery of any "nonprivileged matter that is relevant to any

party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). When

determining the scope of discovery, Rule 26(b)(1) requires consideration of:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.* Rule 26(b)(1) also recognizes that information within the scope of discovery does not need to

be admissible at trial. *Id.* Nevertheless, despite the strong public policy in favor of disclosure of

relevant materials, the district court also has broad authority to enter a protective order to limit

discovery "for good cause shown . . . to protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1).

Rule 26 now also includes specific analytical filters applicable to the discovery of ESI. A

court may impose limits on discovery of ESI if a party shows that it is "not reasonably accessible

because of undue burden or cost." FED. R. CIV. P. 26(b)(2)(B). Once a party makes that showing,

a court still may allow the discovery to proceed if the requesting party shows good cause, but the

discovery nevertheless may be limited if it is unreasonably cumulative or duplicative, can be

obtained from some other source that is more convenient, less burdensome, or less expensive, the

party seeking the discovery has had ample opportunity to obtain it, or it is not relevant or is

otherwise disproportional to the needs of the case within the meaning of Rule 26(b)(1). FED. R.

CIV. P. 26(b)(2)(C). The Court finds that consideration of all these factors weighs in favor of

EUCPs and against Agri Stats in connection with Agri Stats's Motion for Protective Order [ECF

No. 894].

### III. ANALYSIS

**A. Agri Stats Has Not Made a Threshold Showing that the Information EUCPs Are Seeking Is Not Reasonably Accessible Because of Undue Burden or Cost**

As Federal Rule 26(b)(2)(B) directs, a court may impose limits on discovery of ESI if a party shows that it is "not reasonably accessible because of undue burden or cost." FED. R. CIV. P. 26(b)(2)(B). Agri Stats does not squarely address the requirements of Rule 26(b)(2)(B) or the specific analytical framework applicable to the discovery of ESI under the Federal Rules. Rather, it speaks in broad generalities about the basic unfairness of EUCPs' request that it "redo," in Agri Stats's parlance, custodial searches it already has run and about the fact that it is not getting "credit" for the $1.3 million it spent in connection with the DOJ's investigation. Perhaps because of its refusal to engage more directly with the analytical framework of Rule 26(b)(2), Agri Stats has not done a good job of identifying or quantifying the burden in either time or cost of doing what EUCPs want it to do. To the extent the basic thrust of Agri Stats's argument is that EUCPs should be satisfied with what it already has produced to the DOJ because most of what EUCPs are looking for probably is in that production somewhere, or it will be contained in the additional document populations Agri Stats has agreed to produce in this case, the Court does not agree. That argument fundamentally misses the point of the EUCPs' argument and does not address the relevant questions of undue burden, cost, and proportionality.

For example, Agri Stats says that it already has produced in this case more than 296,000 documents, including approximately 155,000 documents from before October 2012. Agri Stats's Memorandum [ECF No. 895], at 2. Agri Stats also says that it continues to produce responsive documents identified from other targeted but non-custodial searches on a rolling basis, and it is preparing to begin post-2012 custodial searches. Agri Stats's Memorandum [ECF No. 895], at 2. Regarding the custodial documents at issue in its Motion, Agri Stats states that it has collected approximately three million custodial documents from 2007 through 2017 and it has a "hit rate" of 94% on those documents meaning that many those documents are potentially responsive to

6

EUCPs' requests based on the search terms used. Agri Stats's Memorandum [ECF No. 895], at 2-3. None of this, however, responds directly to EUCPs' argument that not querying custodial email data bases for the full period the EUCPs have requested or running search terms calibrated to the allegations in this case will leave unreviewed a large amount of data that very well may contain relevant, important, and discoverable information.

Agri Stats represents that the estimated cost to run the custodial searches EUCPs propose and to review and produce the ESI is approximately $1.2 to $1.7 million. Agri Stats's Memorandum [ECF No. 895], at 3; Agri Stats's Reply [ECF No. 957], at 14. This estimated cost, however, is not itemized nor broken down for the Court to understand how it was calculated. For example, is it $1.2 to $1.7 million to review all the custodial documents from 2007 through 2016? Or does this estimate isolate only the pre-October 2012 custodial searches that Agri Stats does not want to have to redo, in its words? More importantly, Agri Stats also admits that this estimate is based on EUCPs' original proposed list of search terms. Agri Stats's Memorandum [ECF No. 895], at 3 n.4. But EUCPs represent (and Agri Stats does not disagree) that during their apparently ongoing discussions, EUCPs have proposed to relieve Agri Stats of the obligation to produce various categories of documents and data, and to revise the search terms to be applied to data that is subject to search. Agri Stats does not appear to have provided a revised cost estimate since EUCPs agreed to exclude certain categories of documents and information and revised their search terms. Rather, Agri Stats takes the position that custodial searches before October 3, 2012 are not proportional to the needs of the case – full stop – so it apparently has not fully analyzed the cost impact of EUCPs' revised search terms or narrowed document and data categories.

The Court wonders what the cost estimate is now after EUCPs have proposed to narrow the scope of what they are asking Agri Stats to do. EUCPs say they already have agreed, or are

working towards agreement, that 2.5 million documents might be excluded from Agri Stats's review. That leaves approximately 520,000 documents that remain to be reviewed. In addition, EUCPs say they have provided to Agri Stats revised search terms, but Agri Stats has not responded. EUCPs' Opposition [ECF No. 941], at 13-14. Agri Stats says nothing about this in its reply memorandum. [ECF No. 957].

EUCPs contend that Agri Stats's claims of burden and cost are vastly overstated. The Court tends to agree with EUCPs on this record. It is not clear what it would cost in either time or money to review and produce the custodial ESI now being sought by EUCPs for the entire discovery period set forth in the ESI Protocol or even for the pre-October 3, 2102 period. It seems that Agri Stats itself also does not know for sure what it would have to do and how much it would cost because the parties have not finished that discussion. Because EUCPs say they are continuing to work with Agri Stats to reduce what it must do to comply with their discovery requests, the incremental burden on what Agri Stats now is being asked to do is not clear.

For all these reasons, Agri Stats falls woefully short of satisfying its obligation to show that the information EUCPs are seeking is not reasonably accessible because of undue burden or cost.

**B. Even if Agri Stats Had Shown Undue Burden or Cost, EUCPs Have Shown Good Cause for the Production of the Requested ESI and Agri Stats Does Not Satisfy the Rule 26(b)(2)(C) Factors**

Even if a party makes a threshold showing that the information sought is not reasonably accessible because of undue burden or cost, a court still may allow the discovery to proceed if the requesting party shows good cause. *See* FED. R. CIV. P. 26(b)(2)(C). However, even with a showing of good cause, the discovery still may be limited if it is unreasonably cumulative or duplicative, can be obtained from some other source that is more convenient, less burdensome, or less expensive, the party seeking the discovery has had ample opportunity to obtain it, or it is not

relevant or is otherwise disproportional to the needs of the case within the meaning of Rule 26(b)(1). FED. R. CIV. P. 26(b)(2)(C).

### 1. EUCPs Have Shown Good Cause for the Production of the Requested ESI

The Court finds that EUCPs have shown good cause for requesting custodial searches of ESI for the entire time frame set forth in the ESI Protocol. If the scope and time frame of the custodial searches (using EUCPs' proposed search terms or the search terms to be agreed by the parties) were limited to the time period after the close of the DOJ investigation on October 3, 2012, it is clear to the Court that large categories of potentially relevant documents and information would be excluded. As EUCPs assert in their opposition brief, "there is no evidence that the DOJ looked into the allegations at the heart of the complaint: that defendants destroyed breeder flocks to suppress supply and manipulated the Georgia Dock price index." EUCPs' Opposition [ECF No. 941], at 4. EUCPs are investigating a different alleged conspiracy than what the DOJ investigated, and the EUCPs' requests for production are much more specific to their allegations than what the DOJ requested, and Agri Stats produced in the DOJ's investigation.

For example, EUCPs say the DOJ did not seek documents or information about: (1) an agreement among the broiler producers to fix prices, limit production or supply, or allocate customers for broilers; (2) the effect of breeder stock on broiler production/supply; (3) any defendant's decision to reduce its broiler production by destroying broiler eggs, slaughtering under-weight broilers, or intentionally delaying the manufacturing process; (4) disciplining in broiler production, supply, or capacity among broiler producers; and (5) any discussion or analysis of the effect of changes in the supply of broilers on the price. EUCPs' Opposition [ECF No. 941], at 4-5. Agri Stats has agreed to produce documents and information about these topics for the time frame post-October 3, 2012, but no such information would be produced pre-October 3, 2012 if

the protective order Agri Stats has requested were entered because the DOJ did not seek this information. *Id.*

The Court recognizes that there likely will be overlap between the material Agri Stats produced to the DOJ and the information sought in EUCPs' requests, but that overlap does not justify the broad protective order sought by Agri Stats. Critical search terms that the EUCPS want Agri Stats to run were not part of the DOJ's search, including, according to EUCPs, the words broiler, supply, reduce, price, inflate, Georgia, Dock, index as well as multiple domain names for defendants in this case. Because these terms were not searched during the DOJ investigation, there is no burden associated with purported duplication at least to the extent that data is now queried with search terms proposed by the EUCPs. EUCPs' Opposition [ECF No. 941], at 5-6. Moreover, omitting these search terms runs the risk that information that is very relevant to EUCPs' case but was not as relevant to the DOJ investigation will be missed.

Further, Agri Stats has not been able to confirm to EUCPs that it has, in fact, provided the entire DOJ production to them. EUCPs' Opposition [ECF No. 941], at 6. Questions have been raised that parts of that production are missing or at least still has not been located by Agri Stats current counsel who did not represent Agri Stats in the DOJ's investigation. Agri Stats' response to these concerns is not comforting as it admits that certain portions of the production to the DOJ are missing or have not yet been located. EUCPs' Opposition [ECF No. 941], at 6 (citing Chung Decl. [ECF No. 895-3], at ¶ 11, Ex. 1).

Moreover, it does not matter, as Agri Stats suggests, that the DOJ gave Agri Stats "a clean bill of health" and did not take any further action against it after it closed its investigation. That investigation focused on a different conspiracy theory, related to different products and markets, during a different (and much more limited) timeframe. Although Agri Stats is correct that the

10

DOJ's investigation included broilers in addition to other products, that does not mean that the DOJ was focused on what EUCPs are focused on with respect to broilers. And that matters when talking about search terms and time frame. Without belaboring the point, the EUCPs' argument in this respect is more convincing than Agri Stats's argument.

For all these reasons, the Court finds that EUCPs have shown there is good cause for the discovery they seek. The other Defendants in this case appear to have accepted, at least for the purposes of discovery, that the time period set forth in the ESI Protocol is the relevant time period that governs the search for and production of potentially responsive documents. EUCPs also represent that other Defendants have run their proposed search terms. It is more than reasonable that Agri Stats be required to comply with the same scope and time frame for discovery.

### 2. Agri Stats Does Not Satisfy the Rule 26(b)(2)(C) Factors

Even with a showing of good cause, Rule 26(b)(2)(C) provides that the discovery still may be limited if: (a) it is unreasonably cumulative or duplicative; (b) it can be obtained from some other source that is more convenient, less burdensome or less expensive; (c) the party seeking the discovery has had ample opportunity to obtain it; or (d) it is not relevant or is otherwise disproportional to the needs of the case within the meaning of Rule 26(b)(1). *See* FED. R. CIV. P. 26(b)(2)(C).

The first two factors the Court must consider are whether the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive. *See* FED. R. CIV. P. 26(b)(2)(C)(i). As discussed above, EUCPs contend that Agri Stats ran custodial searches for the limited two-year period of September 17, 2008 to September 17, 2010. Agri Stats does not dispute this. This leaves more than three and a half years during the discovery period in this case with no custodial productions from

Agri Stats: January 1, 2007 to September 17, 2008 (20 months); and September 17, 2010 to October 3, 2012 (24 months). Therefore, according to the EUCPs, the discovery they seek is not completely duplicative or cumulative, and there are at least three and a half years for which Agri Stats is refusing to search for and produce any custodial emails and documents.

The Court recognizes that EUCPs are asking Agri Stats to run searches in custodial data bases that already were searched during the DOJ's investigation. But EUCPs want Agri Stats to run additional search terms over a longer period of time than the searches Agri Stats ran during the DOJ's investigation. The Court does not agree that searching for and producing documents for a time frame outside the parameters of the DOJ investigation based on search terms that are more calibrated to the allegations in this case than those used in the DOJ investigation necessarily is cumulative or duplicative. Agri Stats cannot and does not say that proceeding as EUCPs have requested could not uncover documents that would be useful or perhaps even vitally important to EUCPs. It simply speculates that exercise likely would not be worth the time and expense and it is unlikely it would uncover anything useful beyond what Agri Stats already collected for the DOJ. EUCPs, on the other hand and among other things, point to documents already produced by Agri Stats and other Defendants to support their argument that the searches they want run could reveal important information that would be relevant to their claims.

The Court agrees with the EUCPs. Clearly, the DOJ's multi-industry investigation touched upon the broiler industry, and Agri Stats undoubtedly produced to the DOJ some information that also is being sought by EUCPs. But Agri Stats itself characterizes the DOJ's investigation as focused on possible agreements to exchange competitively sensitive price and cost information in the broiler, turkey, egg, swine, beef and dairy industries. Agri Stats's Memorandum [ECF No. 895], at 5. It does not say the DOJ investigated the allegations at the heart of the complaint in this

case. And there is no evidence that DOJ asked Agri Stats to search for documents related to price indices, broiler supply, or breeder flocks, among other things, which is what EUCPs are asking Agri Stats to do. So, Agri Stats cannot say with any authority that the searches EUCPs want it to run are completely cumulative or duplicative of what it already has done. Although Agri Stats parries EUCPs' argument that documents already produced indicate that there may be gold in the data that Agri Stats does not want to search, the Court need not delve deeply into that dispute. Common sense teaches that querying data created during a relevant time frame with search terms calibrated to the allegations in this case could yield potentially relevant and important information.

Agri Stats argues that it is not refusing to produce any documents prior to October 3, 2012, and, in fact, it already has produced approximately 155,000 pre-October 2012 documents. Agri Stats's Memorandum [ECF No. 895], at 2 (citing Chung. Decl. [ECF No. 895-3], at ¶2). Agri Stats says it just wants to be excused from having to perform what it argues are duplicative custodial email searches of the 12 agreed-upon custodians in this case. Again, the fact that Agri Stats has produced some pre-October 3, 2012 documents from targeted non-custodial searches it ran or from custodial searches of the same custodians for the DOJ investigation does not mean it should be excused from performing custodial searches that reasonably can be predicted to uncover additional responsive documents that could be very relevant to EUCPs' claims in this case.

The cases cited by Agri Stats are distinguishable from this case. In *In re Disposable Contact Lens Anti-Trust Litigation*, 2016 WL 6518660 (Nov. 1, 2016), the defendants already had produced documents for nine custodians, and class plaintiffs sought to compel defendants to produce documents for additional custodians. The court was not persuaded by defendants' argument, among others, that they already had spent $700,000 to produce the documents from the nine

13

custodians, and the court declined to limit discovery of additional custodians because defendants already had incurred substantial legal fees in responding to the investigation.

*In re Disposable Contact Lens Anti-Trust Litigation* also is fundamentally distinguishable from this case because EUCPs and Agri Stats are not arguing about the number of custodians. Agri Stats produced documents for 27 custodians in the DOJ investigation, and the parties already have agreed to 12 custodians in this case, substantially fewer individuals than in the DOJ investigation. At issue here are the search terms and the time frame over which the information being sought by EUCPs will be collected. EUCPs argue that Agri Stats should be required to respond to their specific discovery requests and to run their proposed search terms for the identified custodians. It is not disputed that there likely will be some overlap with the DOJ investigation. However, just because there may be some overlap is not sufficient reason to not perform the searches in the first place, particularly given Agri Stats's all or nothing approach here.

Another case cited by Agri Stats also is not on point. In *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99 (S.D. N.Y. 2013), the district court concluded that the plaintiff was not entitled to all the documents defendant had turned over to "any government body or agency" pursuant to a subpoena. 297 F.R.D. at 111. The court held that the plaintiff first had to show that the documents sought, in fact, were relevant to the issues in the case, and just because the defendant may have to produce documents that it had produced in response to a government subpoena was not a reason given to support an argument that defendant did not have to perform custodial searches. In fact, the court "urge[d] the parties to reexamine their positions and work together in good faith to create a mutually acceptable ESI search regime" *Id.* at 105. There is no question here that the information EUCPs seek is relevant.

The Court agrees with EUCPs that documents created pre-October 2012 may be highly relevant and could provide insight into allegedly important events that occurred during this time frame, like Tyson resuming its participation in Agri Stats in January 2008. The fact that Agri Stats's production of documents during the DOJ investigation touched upon or may have touched upon some of the issues raised in this case does not justify the broad protective order sought by Agri Stats, and the Court concludes that excusing Agri Stats from having to run any custodial searches prior to October 3, 2012 would unduly prejudice EUCPs and hamper them in discovering their case.

The third factor the Court must consider is whether EUCPs already have had the opportunity to obtain the information sought by discovery in the action. FED. R. CIV. P. 26(b)(2)(B)(ii). EUCPs named Agri Stats as a Defendant in their Second Consolidated Amended Class Action Complaint [ECF No. 716], which was filed on February 12, 2018, and served their first set of requests for production on March 1, 2018. Therefore, this is the first opportunity that EUCPs have had to pursue this discovery from Agri Stats. That EUCPs have had the opportunity to pursue the same kinds of discovery from other Defendants is not a substitute for pursuing it from Agri Stats.

Finally, circling back to the general framework of Rule 26, the final factors the Court must consider are whether the proposed discovery is proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of the proposed discovery outweighs its likely benefit. *See* FED. R. CIV. P. 26(b)(2)(C)(iii). In the Court's view, each of these factors weigh in EUCPs' favor.

Considering the importance of the issues at stake in this litigation, EUCPs allege in their Second Consolidated Amended Class Action Complaint [ECF No. 716] that Agri Stats was a significant participant in a large antitrust conspiracy to fix the price of Broilers and that it facilitated the conspiracy by providing the information and tools that Broiler producers needed to monitor one another and ensure that they were sticking to their agreement to reduce Broiler supply and inflate broiler prices. *See generally* [ECF No. 716], at ¶¶ 170-208. In exchange for these monitoring services—which, EUCPs argue, allowed the Broiler producers to reap billions of dollars—broiler producers paid Agri Stats at least $45.8 million. EUCPs' Opposition [ECF No. 941], at 12. In addition, this litigation involves a massive amount of commerce in the United States during the class period. As alleged in EUCPs' Second Consolidated Amended Class Action Complaint, the value of wholesale broilers produced in 2014 was $32.7 billion, and the market value varied between $21.8 and $20.7 billion from 2008 to 2013. *See* EUCPs' Amended Compl. [ECF No. 716], at ¶ 136. EUCPs' proposed discovery is calibrated to their claims, Agri Stats is alleged to be an important player in the scheme EUCPs assert, and it is reasonable to believe that Agri Stats has information that is relevant and important to EUCPs' claims.

As for the parties' relative access to the information, Agri Stats has access to all the information from its custodians to prepare its defenses. Without the production of ESI from custodial searches performed prior to October 3, 2012, EUCPs potentially will be deprived of more than three and a half years of discovery from the early class period notwithstanding that fact that Agri Stats has agreed to perform targeted searches for documents prior to October 3, 2012. The Court finds that that such a gap in access to and production of custodial documents would be unduly prejudicial to EUCPs.

Lastly, the Court is instructed to look at the parties' resources when weighing proportionality under Rule 26(b)(1). Agri Stats contends that it would be too burdensome to perform any custodial searches prior to October 3, 2012, because it is a small company with EBITDA last year of $7.3 million and the estimated cost for the pre-October 3, 2012 custodial searches is $1.2 to $1.7 million. As noted above, though, those figures do not appear to consider EUCPs' proposals to eliminate certain categories of documents and information and to revise their search terms. Moreover, as EUCPs' suggests and the Court agrees, Agri Stats's pre-tax earnings for one year ignores the profits Agri Stats collected since 2007, which is the beginning of the time frame for the conspiracy alleged by EUCPs in this case, and what it did with that money. The Court recognizes that the type of discovery EUCPs have propounded upon Agri Stats is expensive. But that is only one part of the analysis and expense alone, particularly given the lack of clarity in that regard at this stage, does not excuse Agri Stats from having to respond to discovery in this case.

For all the reasons discussed above, the Court is not persuaded by Agri Stats's burden argument. Accordingly, the Court concludes that EUCPs have shown good cause for Agri Stats to comply with the ESI Protocol and to search for and produce pre-October 3, 2012 custodial documents, and that production of that information is proportional to the needs of the case. Therefore, a blanket protective order excusing Agri Stats from performing any custodial searches prior to October 3, 2102 would not be appropriate.[2]

---

[2] The Court notes that in response to Agri Stats's burden argument, EUCPs' proposed that Agri Stats produce all of its pre-October-2012 documents, and in exchange, EUCPs would sign a robust claw back agreement, allowing Agri Stats to recover any privileged materials. Agri Stats rejected this proposal and argues that EUCPs' proposal that Agri Stats turn over all of its documents without review is patently unreasonable. Claw back agreements are used increasingly in litigation involving discovery of large numbers of documents or large amounts of ESI. But the Court will not force Agri Stats to enter into any claw back agreement it does not want to sign. Depending upon the document population involved, however, the Court does not believe a claw back agreement would be patently unreasonable or unworkable.

**C. It Is Not Clear the Parties Have Exhausted their Obligation to Meet and Confer to Limit the Burden on Agri Stats**

This Order addresses only the temporal scope of the custodial searches that Agri Stats must perform because that is the thrust of Agri Stats's argument in support of its Motion for Protective Order. As explained above, the Court concludes that Agri Stats, like all other Defendants in this case, must search for and produce relevant documents and ESI from January 1, 2007, through September 2, 2106. However, it is not clear the parties have exhausted their meet and confer obligations on the issue of EUCPs' revised search terms or other proposals to reduce the burden on Agri Stats, nor is it clear that the parties have engaged with the Special Master to help resolve any issues that may be related to her domain of electronic discovery.

Agri Stats took a preemptive and calculated step in filing its Motion for Protective Order and took the extreme position that it should not be required to perform any pre-October 3, 2012 custodial searches. As discussed above, the Court disagrees with that approach. The Court, however, does recognize that there may be ways both to satisfy EUCPs and relieve some of the burden on Agri Stats. As discussed above, for example, EUCPs say that of the three million documents Agri Stats has collected that fall within the 2007 to 2016 period, EUCPs already have agreed, or are working towards an agreement, that 2.5 million documents may be excluded from review. That leaves only 520,000 documents at issue, and EUCPs have represented that the parties have continued to meet and confer on the proposed search terms to be used to cull the documents Agri Stats would have to review. EUCPs' Opposition [ECF No. 941], at 14. It stands to reason that the cost to review and produce 520,000 documents probably is much less than the cost to review and produce three million documents. As noted above, Agri Stats did not respond to this argument in its reply brief. With this decision, the Court does not intend to prevent further

18

discussion, but rather encourages the parties to resume or continue talking in an effort to resolve any remaining disputes.

## IV. CONCLUSION

For all these reasons, Defendant Agri Stats Inc.'s Motion for Protective Order [ECF No. 894] is denied.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: July 26, 2018

19

EXHIBIT H

**opentext™** + **Catalyst**

| Volume | Records | Images | Natives | Redactions | BegBates | EndBates | Date Delivered |
|--------|---------|--------|---------|------------|----------|----------|----------------|
| CASE001 | 270 | 479 | 8 | 0 | CASEFOODS0000000001 | CASEFOODS0000000479 | 10/5/2018 |
| CASE002 | 8,717 | 42,471 | 1,802 | 0 | CASEFOODS0000000480 | CASEFOODS0000042950 | 11/7/2018 |
| CASE003 | 16,415 | 27,620 | 5,367 | 0 | CASEFOODS0000042951 | CASEFOODS0000070570 | 12/10/2018 |
| CASE004 | 6,907 | 13,441 | 1,622 | 0 | CASEFOODS0000070571 | CASEFOODS0000084011 | 1/6/2019 |
| CASE005 | 2,984 | 6,762 | 273 | 0 | CASEFOODS0000084012 | CASEFOODS0000090773 | 1/31/2019 |
| CASE006 | 38,531 | 109,070 | 12,718 | 0 | CASEFOODS0000090774 | CASEFOODS0000199843 | 2/8/2019 |
| CASE007 | 410 | 2,301 | 13 | 111 | CASEFOODS0000199844 | CASEFOODS0000202144 | 3/2/2019 |
| CASE008 | 9,452 | 367,634 | 1,413 | 9 | CASEFOODS0000202145 | CASEFOODS0000569778 | 4/18/2019 |
| CASE009 | 7,310 | 21,080 | 2,438 | 1 | CASEFOODS0000569779 | CASEFOODS0000590858 | 5/30/2019 |
| CASE010 | 2,093 | 9,599 | 704 | 0 | CASEFOODS0000590859 | CASEFOODS0000600457 | 7/11/2019 |
| CASE011 | 168 | 426 | 45 | 0 | CASEFOODS0000600458 | CASEFOODS0000600883 | 7/17/2019 |
| | | | | | | | |
| **Total** | **93,257** | **600,883** | **26,403** | **121** | | | |

EXHIBIT "I"



| Collection | Records as of February 18, 2019 | Records as of July 18, 2019 |
|:---:|:---:|:---:|
| Defendants | 7,296,945 | 7,691,495 |
| Plaintiffs | 214,194 | 9,263,130 |
| Third Party | 353,832 | 485,774 |
| | | |
| **Total** | **7,864,971** | **17,440,399** |

EXHIBIT "J"

CaseFarms 001732

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**          **Case No.: 1:16-CV-08637**

# PRODUCED IN NATIVE FORMAT

**Data produced in native format.**

Please review native file:

2018.08.30 HighlyConfidential.AttorneyEyesOnly(2)Sales Data 01-01-11 to 12-31-13.Secured.xlsx

CaseFarms 001731

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER      Case No.: 1:16-CV-08637

# PRODUCED IN NATIVE FORMAT

**Data produced in native format.**

Please review native file:

2018.08.30 HighlyConfidential.AttorneyEyesOnly(1)Sales Data 11-04-07 to 12-31-10.Secured.xlsx

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER      Case No.: 1:16-CV-08637

CaseFarms 001733

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER　　　　Case No.: 1:16-CV-08637

# PRODUCED IN NATIVE FORMAT

**Data produced in native format.**

Please review native file:

2018.08.30 HighlyConfidential.AttorneyEyesOnly(3)Sales Data 01-01-14 to 12-31-17.Secured.xlsx

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER　　　　Case No.: 1:16-CV-08637

**Joseph D Carney**

| | |
|---|---|
| **From:** | Hightail <delivery@spaces.hightailmail.com> |
| **Sent:** | Tuesday, September 4, 2018 12:18 PM |
| **To:** | Joseph D Carney |
| **Subject:** | Your file Structured Data.zip has been downloaded |



## Your file has been downloaded



**A Guest**

downloaded **Structured Data.zip** from

*https://spaces.hightail.com/receive/jYpuN58ZpH*

Track this file by clicking the button below.

TRACK FILES

Terms | Privacy

EXHIBIT "K"

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To:<br><br>Certain DAP Actions Listed in Footnote 1[1] | Case No. 1:16-cv-08637 |

## <u>DECLARATION OF JOSEPH D. CARNEY</u>

Joseph D. Carney, being duly sworn, states as follows:

1.        I am an attorney duly licensed to practice before all of the courts in the State of Ohio and have been admitted *pro hac vice* in the *In Re Broiler Chicken Antitrust Litigation* on April 17, 2019 (see R.2088) as counsel for Case Farms, LLC, Case Farms Processing, Inc. and Case Foods, Inc. (collectively "Case"). I submit this declaration in support of the Case Farms Defendants' Request for Judicial Notice and Incorporation by Reference ("Case RJN") filed in support of the concurrently filed Case Motion to Dismiss complaints filed by certain Direct Action Plaintiffs[2] ("Direct Action Plaintiffs") in the *In Re Broiler Chicken Antitrust Litigation*. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and

---

[1]        This Declaration is filed in the following Actions: *Associated Wholesale Grocers, Inc. v. Koch Foods, Inc., et al.*, 18-cv-6316; *Associated Grocers of the South, Inc., et al. v. Tyson Foods, Inc., et al.*, 18-cv-4616; *Ahold Delhaize USA, Inc. v. Koch Foods, Incorporated, et al.*, 18-cv-5351; *The Kroger Co., et al. v. Tyson Foods, Inc., et al.*, 18-cv-4534; *Shamrock Foods Company, et al. v. Tyson Foods, Inc., et al.*, 18-cv-7284; *Checkers Drive-In Restaurants, Inc. v. Tyson Foods, Inc., et al.*, 19-cv-1283; United Supermarkets, LLC, et al. v. Tyson Foods, Inc., et al., 18-cv-6693; *BJ's Wholesale Club, Inc. v. Tyson Foods, Inc., et al.*, 18-cv-5877; *Darden Restaurants, Inc. v. Tyson Foods, Inc., et al.*, 19-cv-0530; *Jetro Holdings, LLC v. Tyson Foods, Inc., et al.*, 18-cv-4000; *Maximum Quality Foods, Inc. v. Tyson Foods, Inc., et al.*, 18-cv-6673; *Sherwood Food Distributors, L.L.C., et al. v. Tyson Foods, Inc., et al.*, 19-cv-0354; *Winn-Dixie Stores, Inc., et al. v. Koch Foods, Inc., et al.*, 18-cv-0245; *Save Mart Supermarkets v. Tyson Foods, Inc., et al.*, 19-cv-2805; and *Conagra Brands, Inc., et al. v. Tyson Foods, Inc.,et al.*, 19-cv-2190.

[2]        The Case Motion to Dismiss requests that the Court dismiss R.2090, R.2094, R.2099, R.2105, R.2107, R.2111, R.2114, R.2124, R.2126, R.2129, R.2133, R.2135, R.2140, R.2163, and R.2164.

would competently testify to such facts.

2.      The WATT PoultryUSA Broiler Rankings for 2007 published in February 2008 and the WATT Global Media Top US broiler 2008-2018 Report (collectively "WATT Reports"), true and correct copies of which are attached to the Case RJN as Exhibits A and B, respectively, list the top Broiler producers in the domestic market ranked by each producer's average weekly production of ready to cook ("RTC") chicken. The data in the far-right column on Exhibit A, titled "Million lbs. R.T.C.," tracking production for 2007, and all of the columns for years 2008 through 2016 on page 2 of Exhibit B, set forth the average weekly output of ready to cook chicken produced by the top Broiler companies for each year from 2007 through 2016.  The row on Exhibit B containing Case's data is highlighted.  An attorney working under my supervision and at my direction downloaded Exhibit B from the WATT Global Media Products ("WATT Global") website https://www.wattglobalmedia.com/ on July 18, 2019. Because Exhibit B does not include Broiler Rankings for 2007, on July 18, 2019, the same attorney, working at my direction and under my supervision, obtained Exhibit A from Joy Neth, Vice President, Director of Audience Development & Research at WATT Global.  Exhibit B is a publicly available report on the WATT Global website. The public cost of the report and the amount paid is $199.00. Upon request, Exhibit A is also publicly available from WATT Global, in this situation via the person I just indicated.  It is my understanding that no Direct Action Plaintiff disputes the accuracy of the data reported in the WATT Reports attached to the Case RJN as Exhibits A and B.

3.      Another attorney working at my direction and under my supervision generated Exhibit C, which simply (i) combines the production data from Exhibits A and B to get the reported producers' total RTC (ready to cook) production; and (ii) divides that total number into Case's production reported by WATT, to determine mathematically via Excel, Case's production share

of the U.S. Broiler RTC market. To add more detail, Exhibit C to the Case RJN started with the chart of 2008-2018 data for average weekly production of ready to cook chicken found on the WATT Global Media Report at Exhibit B (with columns for producer addresses and websites removed). Then an additional column for the same 2007 production data set forth on Exhibit A was added to Exhibit C. The production columns for each year were totaled, and then the Case production number was divided by the industry total to calculate Case's market share.

4.      Exhibit D to the Case RJN is a list of all of the depositions taken by Plaintiffs in the *In Re Broiler Chicken Antitrust Litigation.* A paralegal working for me and under my direction requested and received via email a true and correct copy of Exhibit D from Sharon Blankley, Case Manager, Veritext Legal Solutions ("Veritext") on July 22, 2019. Veritext is the third-party court reporting service retained by Plaintiffs in the *In Re Broiler Chicken Antitrust Litigation.* I am not aware of any reason why any Direct Action Plaintiff would dispute the accuracy of the information contained in Exhibit D.

5.      Exhibit E to the Case RJN is a true and correct copy of the subpoena duces tecum with which Case was served by the Class Plaintiffs in the *In Re Broiler Chicken Antitrust Litigation* on or about January 12, 2018 and to which Case has responded.

6.      Exhibit F to the Case RJN is a true and correct copy of the Requests for Production of Documents to Case Farms with which Case was served by the Class Plaintiffs in the *In Re Broiler Chicken Antitrust Litigation* on February 4, 2019, and to which Case has responded.

7.      Exhibit G to the Case RJN is a true and correct copy of ECF Document # 1090 in the *In Re Broiler Chicken Antitrust Litigation* which is the Court's Memorandum Opinion and Order on Agri Stats Inc's Motion for Protective Order.

8.      Exhibit H to the Case RJN shows the Case rolling production dates and the volume

3

of data produced by Case on each of those dates in response to Exhibits E and F to the Case RJN. I am not aware of any reason why any Direct Action Plaintiff would dispute the accuracy of the information contained in Exhibit H.

9. Outside of the Production of ESI shown on Exhibit H, Case produced very substantial amounts of "structured data" covering all of its sales from November 4, 2007, to December 31, 2017, in the format requested by and agreed to with the Class Plaintiffs. Prior to running the full reports, sample reports were provided to the Class Plaintiffs for approval as to form which the Class Plaintiffs approved. True and correct copies of the electronic transmissions which I caused to be sent via Hightail to the Class Plaintiffs on or about September 4, 2018, attaching the Case structured data are attached to the Case RJN as part of Exhibit J. Exhibit J also includes a Hightail confirmation I received memorializing that the structured data I caused to be delivered to the Class Action Plaintiffs was received and downloaded on September 4, 2018. I am not aware of any reason why any Direct Action Plaintiff would dispute the accuracy of the information contained in Exhibit J. On information and belief, I understand that the Case structured data was also made available to the Direct Action Plaintiffs.

10. Exhibit I to the Case RJN is a true and correct copy of a report prepared by Catalyst on July 19, 2019, at my request that shows the total number of records collected from the Defendants, Plaintiffs and third-party discovery respondents in the *In Re Broiler Chicken Antitrust Litigation* as of February 18, 2019, and July 18, 2019, in the Catalyst Collection repository. I am not aware of any reason why any Direct Action Plaintiff would dispute the accuracy of the information contained in Exhibit I.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 22nd day of July, 2019, at Davis, California.

/s/ Joseph D. Carney
Joseph D. Carney