**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION<br><br>This Document Relates To: | Case No: 1:16-cv-08637<br><br>Honorable Thomas M. Durkin |
| *The Kroger Co., et al. v. Tyson Foods, Inc., et al.* | Case No: 1:18-cv-04534 |
| *Associated Grocers of the South, Inc., et al. v. Tyson Foods, Inc., et al.* | Case No: 1:18-cv-04616 |
| *Ahold Delhaize USA, Inc. v. Koch Foods, Inc., et al.* | Case No: 1:18-cv-05351 |
| *Save Mart Supermarkets v. Tyson Foods, Inc., et al.* | Case No: 1:19-cv-02805 |

**SANDERSON FARMS DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
SANDERSON FARMS DEFENDANTS' MOTION TO DISMISS
[Public, Redacted]**

# TABLE OF CONTENTS

    **Page**

FACTUAL BACKGROUND ................................................................................................... 3

    A.    The GDA Allegedly Established, Operated, and Controlled the Georgia Dock From 1965-2016. ........................................................................................ 4

    B.    The Georgia Dock Advisory Committee ................................................................ 4

    C.    Sanderson Farms and the Georgia Dock Index ...................................................... 5

        1.    Sanderson Farms Provided Submissions to the Georgia Dock. .................. 5

        2.    Sanderson Farms Has <u>No Involvement</u> with the Advisory Committee. ..................................................................................................... 5

ARGUMENT .................................................................................................................................. 6

I.    Plaintiffs Fail to Plead Sanderson Farms' Participation in a RICO "Enterprise" ................ 7

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

Page

**Cases**

*Almanza v. United Airlines, Inc.*,
 162 F. Supp. 3d 1341 (S.D. Ga. 2016),
 *aff'd*, 851 F.3d 1060 (11th Cir. 2017) .................................................................................... 10

*Amin v. SunTrust Bank*,
 2014 WL 3397256 (N.D. Ill. July 11, 2014) .................................................................. 6, 7, 12

*Boyle v. United States*,
 556 U.S. 938 (2009) ................................................................................................................ 8

*Drobny v. JP Morgan Chase Bank NA*,
 929 F. Supp. 2d 839 (N.D. Ill. 2013) ....................................................................................... 7

*Gamboa v. Velez*,
 457 F.3d 703 (7th Cir. 2006)..................................................................................................... 7

*Goren v. New Vision Intern., Inc.*,
 156 F.3d 721 (7th Cir. 1998)................................................................................................... 11

*Green v. Morningstar, Inc.*,
 2018 WL 1378176 (N.D. Ill. Mar. 16, 2018) ......................................................................... 12

*Guaranteed Rate, Inc. v. Barr*,
 912 F. Supp. 2d 671 (N.D. Ill. 2012) ..................................................................................... 12

*Jennings v. Emry*,
 910 F.2d 1434 (7th Cir. 1990)................................................................................................. 11

*Kimbrough v. State*,
 799 S.E.2d 229 (Ga. 2017) ................................................................................................. 6, 8

*Okaya v. Denne Indus.*,
 2000 WL 1727785 (N.D. Ill. Nov. 20, 2000) ........................................................................ 12

*Reves v. Ernst & Young*,
 507 U.S. 170 (1993) ..................................................................................................... 8, 10, 11

*Richmond v. Nationwide Cassel L.P.*,
 52 F.3d 640 (7th Cir. 1995) ................................................................................................. 7, 8

*Rosen v. Mystery Method, Inc.*,
 2008 WL 723331 (N.D. Ill. Mar. 14, 2008) ........................................................................... 12

*Rosen v. Protective Life Ins. Co.*,
  2010 WL 2014657 (N.D. Ga. May 20, 2010) ............................................................... 6

*Shea v. Winnebago Cty. Sheriff's Office*,
  2014 WL 4449605 (N.D. Ill. Sept. 10, 2014),
  *aff'd in part and vacated in part on other grounds*, 746 Fed Appx. 541 (7th Cir. 2018) ......... 12

*Sheikh v. Wheeler*,
  2019 WL 1057376 (N.D. Ill. Mar. 6, 2019) ............................................................... 7

*Stachon v. United Consumers Club, Inc.*,
  229 F.3d 673 (7th Cir. 2000) ............................................................................. 11

*Starfish Inv. Corp. v. Hansen*,
  370 F. Supp. 2d 759 (N.D. Ill. 2005) .................................................................... 12

*United Food & Commercial Workers Union & Employers' Midwest Health Benefits Fund v. Walgreen Co.*,
  719 F.3d 849 (7th Cir. 2013) ............................................................................. 7, 8

**Statutes**

18 U.S.C. § 1962 .............................................................................................. 1, 3

18 U.S.C. § 1963 .............................................................................................. 1, 3

18 U.S.C. § 1964 .............................................................................................. 1, 3

Ga. Code Ann. § 16-14-4(a) ................................................................................. 1

Ga. Code Ann. § 16-14-4(b) ................................................................................. 1, 3, 6, 7, 8

Ga. Code. Ann. § 2-2-8.1 ..................................................................................... 4

**Other Authorities**

KURTZ CRIMINAL OFFENSES AND DEFENSES IN GEORGIA, Racketeer Influenced and Corrupt
  Organizations Act (RICO), § R1 (2018 ed.) ........................................................... 8

iii

Plaintiffs Ahold, Kroger, Associated Grocers of the South, and Save Mart include Sanderson Farms among the "Georgia Dock Defendants," against which they bring Georgia and federal RICO claims based on a purported conspiracy to manipulate the Georgia Dock Index.[1] Plaintiffs' RICO claims are uniquely deficient as to Sanderson Farms: Plaintiffs cannot plead Georgia RICO (under Ga. Code Ann. § 16-14-4(b) (West 2015)[2]) or federal RICO (under 18 U.S.C. §§ 1962–64) claims against Sanderson Farms because they do not and cannot allege that Sanderson Farms participated in RICO "enterprise."

Plaintiffs' "enterprise" allegations center on the Georgia Dock Advisory Committee, a state-appointed board of Georgia poultry producer representatives that allegedly controlled and manipulated the Georgia Dock (which was published by the Georgia Department of Agriculture ("GDA")). According to Plaintiffs, the Georgia Dock Defendants associated with each other to form and participate in a RICO "enterprise" in part through their Advisory Committee membership: Plaintiffs allege that Advisory Committee membership provided its members with the knowledge that the Georgia Dock could be "manipulated"; Advisory Committee meetings and communications allegedly provided them with the "opportunity to collude"; and, most crucially, the Advisory Committee's purported "control" over the Georgia Dock provided the actual means to manipulate the Georgia Dock. (*See, e.g.*, Ahold ¶¶ 16, 352-353, 355, 357-364; Kroger ¶¶ 16, 314-16, 318-25; AGS ¶¶ 16, 319-21, 323-30; Save Mart ¶¶ 16, 312-14, 316-23.)

The problem for Plaintiffs is that Sanderson Farms *never was on or participated in the Georgia Dock Advisory Committee*. Plaintiffs are forthright in their concession that this is so. For

---

[1] The brief uses Plaintiffs' common names; this motion is directed to all Plaintiffs in the complaints at Docket Nos. 2099 ("Ahold"), 2094 ("AGS"), 2105 ("Kroger"), and 2158-1 ("Save Mart"), except Unified Grocers, Inc. and OSI Restaurant Partners, LLC, which do not assert RICO claims.

[2] Sanderson Farms does not at this time seek to dismiss Georgia RICO claims brought under § 16-14-4(a), which does not contain an "enterprise" requirement.

1

example, Kroger's amended complaint admits that "it appears that there was no representative of Sanderson Farms on the Advisory Committee throughout the entire relevant time period . . . ." (Kroger ¶ 323; *accord* AGS ¶ 328; Save Mart. ¶ 321; *see also* Ahold ¶ 362.) Indeed, after over a year of discovery, approximately 90 million pages produced, and 100 depositions taken to date, Plaintiffs can allege *no* fact linking Sanderson Farms to the Advisory Committee. They do not allege that:

- Sanderson Farms was a member of the Advisory Committee;
- Sanderson Farms attended any Advisory Committee meeting; or
- Sanderson Farms even knew the Advisory Committee existed.

Only Ahold deviates from straightforwardly admitting that Sanderson Farms was not on the Advisory Committee. Its complaint makes the conclusory assertion that "there is some question as to whether a representative of Sanderson Farms was on the Advisory Committee throughout the entire relevant period." (Ahold ¶ 362.) Even Ahold, however, concedes that one "Georgia Dock Defendant" did not participate in the Advisory Committee, presumably referring to Sanderson Farms. (*Id.* ¶ 713.) In any event, a "question" is not a factual allegation and is insufficient to state a claim.

Plaintiffs' Advisory Committee allegations provide the principal basis on which they allege Defendants' participation in a putative RICO enterprise. But they fail to plead *any connection* between Sanderson Farms and the Advisory Committee. Plaintiffs' secondary attempts to plead an enterprise also fail. While they allege Sanderson Farms was a member of the Georgia Poultry Federation ("GPF"), Plaintiffs do not link Sanderson Farms' membership in the GPF to any Georgia Dock-related or (the few alleged) Advisory Committee-related meetings, decisions, or other activities. Furthermore, their attempt to plead participation in a RICO enterprise based on Sanderson Farms' alleged submissions to the Poultry Market News are insufficient as a matter of

2

law. These failures are fatal to their RICO enterprise-based claims against Sanderson Farms. *See* Ga. Code Ann. § 16-14-4(b) and 18 U.S.C. §§ 1962–64. The Court should dismiss these claims against Sanderson Farms.[3]

## FACTUAL BACKGROUND[4]

Nearly three years ago, lawsuits were brought against poultry producers, including Sanderson Farms, alleging a conspiracy to reduce broiler supply from 2008 to present. Since that time, Sanderson Farms has produced millions of pages of documents and thousands of rows of data reflecting its production numbers and decisions. Yet Plaintiffs' underlying allegations against Sanderson Farms have not evolved. In their most recent complaints, Plaintiffs concede—as they must—that Sanderson Farms spent millions of dollars to significantly grow supply by opening new complexes and, as a result, *increased* its market share. (Ahold ¶¶ 153, 138 (chart); Kroger ¶¶ 542, 514 (chart); AGS ¶¶ 538, 523 (chart); Save Mart ¶¶ 538, 510 (chart).)

The first complaints filed in this case, and those filed over the intervening years, alleged Sherman Act violations; they did not include *any* RICO claims. Now, certain Direct Action Plaintiffs seek to manufacture RICO claims against certain Defendants who submitted information to the GDA. Specifically, Plaintiffs claim the Georgia Dock Defendants, principally through their participation on an "Advisory Committee" to the GDA, participated in a RICO enterprise. (*E.g.*, Ahold ¶ 711; Kroger ¶ 490; AGS ¶ 645; Save Mart ¶ 489.)

---

[3] Specifically, Ahold Counts VIII and IX; Kroger Counts V and VI; AGS Counts V and VI; and Save Mart Counts V and VI (collectively, the "RICO enterprise-based claims").

[4] Sanderson Farms accepts Plaintiffs' allegations solely for the purposes of this filing, as it must on a motion to dismiss. Sanderson Farms does not adopt the allegations. Further, Sanderson Farms understands that the Defendants identified by Plaintiffs as the "Georgia Dock Defendants" will expressly dispute and deny the allegations of Plaintiffs' complaints regarding the newly-added RICO claims and otherwise in the Answers they file on July 22, 2019.

3

### A. The GDA Allegedly Established, Operated, and Controlled the Georgia Dock From 1965-2016.

Under Georgia statutory law, the GDA has the authority to issue the Georgia Dock price quotes through its Poultry Market News ("PMN") division. *See* Ga. Code. Ann. § 2-2-8.1. In 1965, the GDA established the Georgia Dock as part of the PMN. (*See* Ahold ¶ 348; Kroger ¶ 310; AGS ¶ 315; Save Mart ¶ 308.) According to the complaints, the GDA decided to calculate the Georgia Dock by collecting information from producers, and not to "survey buyers and sellers" or "verify or substantiate" the information it compiled. (*See* Ahold ¶¶ 343-44; Kroger ¶ 309; AGS ¶ 314; Save Mart ¶ 307.) In 1972 the GDA allegedly formed an "Advisory Committee comprised exclusively of representatives from the poultry producers who submitted prices to the PMN" to advise on the Georgia Dock and to purportedly "work in a close relationship with" the agency. (Ahold ¶ 352; Kroger ¶ 314; AGS ¶ 319; Save Mart ¶ 312.)

### B. The Georgia Dock Advisory Committee

Plaintiffs allege that the Advisory Committee was a group of "[s]enior executives from eight of the nine Georgia Dock Defendants." (Ahold ¶ 16.[5]) From the Advisory Committee's inception, the GDA Commissioner was responsible for appointing Committee members. (Ahold ¶ 358; Kroger ¶ 319; AGS ¶ 324; Save Mart ¶ 317.) According to the complaints, the Advisory Committee was intended to assist the GDA with the guidelines for issuing the Georgia Dock. (*See* Ahold ¶ 352; Kroger ¶ 314; AGS ¶ 319; Save Mart ¶ 312.)

Plaintiffs also allege that the Advisory Committee "enabled Defendants to devise an elegant scheme to manipulate the Georgia Dock." (Ahold ¶ 537; Kroger ¶ 471; AGS ¶ 476; Save

---

[5] Kroger, AGS, and Save Mart do not name Fieldale Farms as a Georgia Dock Defendant; their complaints allege that the Advisory Committee consisted of seven of eight Georgia Dock Defendants. (*See* Kroger ¶ 16 ("Senior executives from at least seven of the Georgia Dock Defendants were members of [the Advisory Committee]."); AGS ¶ 16; Save Mart ¶ 16.)

Mart ¶ 469.) Specifically, they claim that Defendants learned through the Advisory Committee that the Georgia Dock was not verified and was subject to a so-called "one-cent rule" (*i.e.*, a rule where submissions that deviated more than one cent from the average submission would be excluded from the GDA's calculation of the Georgia Dock). (*See* Ahold ¶ 362; Kroger ¶ 323; AGS ¶ 328; Save Mart ¶ 321.) Additionally, they allege that Advisory Committee members attended "periodic[]" meetings hosted by the GDA and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Ahold ¶¶ 353, 355, 361, 362, 367; Kroger ¶¶ 315, 322, 323, 328; AGS ¶¶ 320, 327, 328, 333; Save Mart ¶¶ 313, 320, 321, 326.) Plaintiffs further allege that the Advisory Committee had the authority to request that the GDA reevaluate the Georgia Dock if it appeared to be too high or low. (Ahold ¶¶ 363, 539; Kroger ¶¶ 324, 473; AGS ¶¶ 329, 478; Save Mart ¶¶ 322, 471.) Plaintiffs allege that Defendants "maintained ***firm control*** over the Georgia Dock through the Advisory Committee." ((Ahold ¶ 357; Kroger ¶¶ 318; AGS ¶ 323; Save Mart ¶ 316) (emphasis added).)

### C. Sanderson Farms and the Georgia Dock Index

#### 1. Sanderson Farms Provided Submissions to the Georgia Dock.

Each week, the GDA—Sanderson Farms' regulator—would call and ask Sanderson Farms to submit information for the Georgia Dock Index. (*See* Ahold ¶ 340; Kroger ¶ 297; AGS ¶ 303; Save Mart ¶ 295.) Sanderson Farms submitted the requested information.

#### 2. Sanderson Farms Has <u>No Involvement</u> with the Advisory Committee.

Sanderson Farms has never been a part of the Advisory Committee—nor do Plaintiffs allege otherwise. As Plaintiffs recognize, "it appears there was no representative of Sanderson Farms on the Advisory Committee throughout the entire relevant time period." (Kroger ¶ 323; AGS ¶ 328; Save Mart ¶ 321.) Plaintiff Ahold makes the conclusory assertion that "there is some question as to whether a representative of Sanderson Farms was on the Advisory Committee

5

throughout the entire relevant period." (Ahold ¶ 362.) But even that complaint answers the question "no": It alleges that one Georgia Dock Defendant did not participate in the Advisory Committee (*id.* ¶ 713), and then identifies Advisory Committee representatives from each of the Georgia Dock Defendants *except Sanderson Farms* (*id.* ¶¶ 36, 42, 45, 55, 61, 64, 67, 70).

Nor do Plaintiffs allege any other involvement by Sanderson Farms with the Advisory Committee. They do not plead that Sanderson Farms attended any Advisory Committee meeting, or that it participated in any Advisory Committee functions such as an alleged "reevaluation" of the Georgia Dock price. (*E.g.*, Ahold ¶¶ 363, 539; Kroger ¶¶ 324, 473; AGS ¶¶ 329, 478; Save Mart ¶¶ 322, 471.) While Plaintiffs allege that "poultry producers maintained a level of control over the Georgia Dock through their trade association, the Georgia Poultry Federation," (Ahold ¶ 365; Kroger ¶ 326; AGS ¶ 331; Save Mart ¶ 324), Plaintiffs do not plead any facts specific to Sanderson Farms—other than that Sanderson Farms was a GPF member. (*See, e.g.*, Ahold ¶ 569; Kroger ¶ 493; AGS ¶ 498; Save Mart ¶ 634.) Notably, they plead no facts that Sanderson Farms attended any GPF meeting related to the Georgia Dock or to the Advisory Committee. In sum, Plaintiffs allege no facts establishing that Sanderson Farms ever had any involvement with the Advisory Committee or otherwise participated in any "enterprise."

## ARGUMENT

The Seventh Circuit has "repeatedly cautioned plaintiffs against bringing a RICO claim." *Amin v. SunTrust Bank*, 2014 WL 3397256, at *3 (N.D. Ill. July 11, 2014) (Durkin, J.).[6] RICO

---

[6] Both Georgia and federal courts look to federal case law for guidance on the interpretation of Ga. Code. Ann. § 16-14-4(b) in the absence of definitive Georgia court decisions on point. *See Kimbrough v. State*, 799 S.E.2d 229, 233 n.13 (Ga. 2017) (noting that "[t]he Georgia RICO Act is modeled after the federal RICO statute, and, in light of their similarities, we properly look to the decisions of the federal courts construing and applying the federal RICO statute when considering the meaning and application of the Georgia RICO Act"); *Rosen v. Protective Life Ins. Co.*, 2010 WL 2014657, at *8 & n.22 (N.D. Ga. May 20, 2010) (interpreting Georgia RICO using federal RICO case law).

6

forbids *only* the participation in an "enterprise" through a pattern of racketeering activity. *Id*. at *3 (quoting *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)). Accordingly, to state a claim, Plaintiffs' complaints "must identify the enterprise," *Amin*, 2014 WL 3056838, at *4 (quoting *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995) (internal quotation marks omitted)), and allege that Sanderson Farms "conducted or participated in the conduct of the enterprise's affairs, not just [its] own affairs," *United Food & Commercial Workers Union & Employers' Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013) (internal quotation and emphasis omitted).

There is a split of authority regarding whether Rule 9(b) pleading standards apply to enterprise allegations, with no binding Seventh Circuit authority on point. *See Drobny v. JP Morgan Chase Bank NA*, 929 F. Supp. 2d 839, 845 (N.D. Ill. 2013) (recognizing split and citing cases from both sides). Sanderson Farms submits that Rule 9(b) standards apply to pleading the existence of an enterprise here. *E.g.*, *Sheikh v. Wheeler*, 2019 WL 1057376, at *2 (N.D. Ill. Mar. 6, 2019) (applying Rule 9(b) to enterprise allegations because predicate acts alleged included wire fraud). But, in any event, the complaints fail to pass muster even under Rule 8. *See Richmond*, 52 F.3d at 645 (finding enterprise allegations so deficient as to "fai[l] to satisfy the notice requirement of Rule 8").

Plaintiffs do not—because they cannot—adequately allege Sanderson Farms' participation in a RICO enterprise, whether their claims are tested against Rule 8 or Rule 9(b). The Court should accordingly dismiss the RICO enterprise-based claims against Sanderson Farms. (*See* n.3, *supra.*)

I. **PLAINTIFFS FAIL TO PLEAD SANDERSON FARMS' PARTICIPATION IN A RICO "ENTERPRISE."**

In order to plead a RICO claim under either federal law or Georgia Code Ann. § 16-14-4(b), Plaintiffs must plead that Sanderson Farms "conducted" the affairs of a RICO "enterprise."

7

*E.g.*, *Walgreen Co.*, 719 F.3d at 854 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (internal quotation marks omitted; emphasis removed)); *see Kimbrough v. State*, 799 S.E.2d 229, 233 (Ga. 2017) (same, interpreting Ga. Code. Ann. § 16-14-4(b)). A RICO enterprise "must be more than a group of people who get together to commit a pattern of racketeering activity," *Richmond*, 52 F.2d at 645 (internal quotation omitted), and requires a distinct structure, *Boyle v. United States*, 556 U.S. 938, 946 (2009). Moreover, the defendant must have "conducted or participated in the conduct of the '*enterprise's* affairs,' not just its own affairs." *Walgreen Co.*, 719 F.3d at 854. The "conduct or participatio[n]" requirement means that the defendant must "participate[] in the operation or management of the enterprise itself." *Reves*, 507 U.S. at 178, 185; *accord* KURTZ CRIMINAL OFFENSES AND DEFENSES IN GEORGIA, Racketeer Influenced and Corrupt Organizations Act (RICO), § R1 (2018 ed.) ("To conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs [under Georgia RICO], one must participate in the operation or management of the enterprise itself," though there is no requirement that each participant "hold a directorial or managerial position"). Plaintiffs' allegations against Sanderson Farms meet none of these requirements.

Plaintiffs' primary attempt to plead the Georgia Dock Defendants' participation in a RICO enterprise hinges on their allegations regarding the Advisory Committee. The complaints ground their RICO claims in a purported enterprise with the purpose of sustaining "the existence of the Poultry Market News and the Georgia Dock price index and to artificially inflate the Georgia Dock price index." (Ahold ¶ 712, Kroger ¶ 637; AGS ¶ 646; Save Mart ¶ 633.) Indeed, as part of their enterprise allegations, Plaintiffs stress that "all but one Georgia Dock Defendant [(*i.e.*, Sanderson Farms)] participated on the PMN Advisory Committee, which acted to preserve and enhance the

8

PMN and Georgia Dock price index as discussed above." (Ahold ¶ 713, Kroger ¶ 638; AGS ¶ 647; Save Mart ¶ 634.)

According to the Plaintiffs, the Georgia Dock Defendants "maintained firm control over the Georgia Dock *through the Advisory Committee*." ((Ahold ¶ 357; Kroger ¶ 318; AGS ¶ 323; Save Mart ¶ 316) (emphasis added).) According to Plaintiffs, it was Advisory Committee membership that supposedly provided Defendants with:

- **The *knowledge* that Georgia Dock could be manipulated.** For example, Plaintiffs allege that it was through the Advisory Committee that Defendants knew the GDA's calculation process, supposedly learned that the Georgia Dock was not verified, and was subject to the "one-cent" rule[7];

- **The *opportunity* to collude to manipulate the Georgia Dock.** For example, Plaintiffs allege that "meetings and other communications of the Advisory Committee . . . facilitat[ed] the Defendants' price-fixing conspiracy"[8]; and

- **The *means* to manipulate the Georgia Dock index.** For example, Plaintiffs allege that the Advisory Committee had the power to reevaluate the Georgia Dock price if members "believed the Georgia Dock price was too low," and that it ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.[9]

To state the obvious, Sanderson Farms could not have participated in ***any*** putative RICO enterprise based on a "role on the PMN Advisory Committee"—because it had none. Plaintiffs plead no facts to support that Sanderson Farms ever participated in the Advisory Committee. Quite the opposite, Plaintiffs allege that "[a]ll but one of the Georgia Dock Defendants participated on the PMN Advisory Committee" (Ahold ¶ 568; Kroger ¶ 492; AGS ¶ 497; Save Mart ¶ 490), and then identify the Advisory Committee representatives from each of the Georgia Dock Defendants ***except Sanderson Farms*** (Ahold ¶¶ 36, 42, 45, 55, 61, 64, 67, 70; Kroger ¶¶ 38, 39, 45, 52, 56,

---

[7] (*See, e.g.*, Ahold ¶¶ 353, 362; Kroger ¶¶ 315, 323; AGS ¶¶ 320, 328; Save Mart ¶¶ 313, 321.)

[8] (Ahold ¶ 316; *see also id.* ¶¶ 353, 355, 362, 367; Kroger ¶¶ 315, 318, 322, 323; AGS ¶¶ 320, 323, 327, 328; Save Mart ¶¶ 313, 320, 321, 326.)

[9] (Ahold ¶¶ 361, 363; *see also id.* Kroger ¶¶ 322, 324; AGS ¶¶ 327, 329; Save Mart ¶¶ 320, 322.)

9

66, 69, 320; AGS ¶¶ 44, 45, 51, 58, 62, 72, 75, 325; Save Mart ¶¶ 36, 37, 43, 50, 54, 64, 67, 318). They thus fail to allege Sanderson Farms' participation in an enterprise on this basis.

Advisory Committee aside, Plaintiffs assert two subsidiary enterprise theories: the Georgia Dock Defendants' membership in the GPF, and their price submissions to PMN. Neither theory states a claim as to Sanderson Farms.

*First*, Plaintiffs point to the Georgia Dock Defendants' "involvement with the Georgia Poultry Federation," which they allege is "the largest lobbying group in Georgia for the poultry producers." (Ahold ¶¶ 567, 713; Kroger ¶¶ 491, 638; AGS ¶¶ 496, 647; Save Mart ¶¶ 489, 634.) But alleging Sanderson Farms' involvement with the GPF does not amount to pleading that Sanderson Farms participated in a RICO enterprise.

In fact, the ***only*** GPF allegation specific to Sanderson Farms is that Sanderson Farms was a member and board member. (*See, e.g.*, Ahold ¶ 569; Kroger ¶ 493; AGS ¶ 498; Save Mart ¶ 634.) However, allegations of mere membership in a trade association do not establish the *existence* of a RICO enterprise. *See Almanza v. United Airlines, Inc.*, 162 F. Supp. 3d 1341, 1353-54 (S.D. Ga. 2016) (holding that allegations that defendants "are members of the same professional association" and "regularly attended [that association's] meetings" were insufficient as a matter of law to plead existence of the required RICO enterprise), *aff'd*, 851 F.3d 1060 (11th Cir. 2017). All the more, such allegations certainly do not plead the degree of "participation" in the enterprise required to assert a claim for RICO liability. *See Reves*, 507 U.S. at 179, 185 (defendant must exhibit "some degree of direction" of the enterprise's affairs and "participate in the operation or management of the enterprise itself").

Plaintiffs' remaining GPF-related allegations ***have nothing to do with Sanderson Farms***. For example, Plaintiffs claim "GPF representatives" attended meetings about the Georgia Dock,

10

monitored Advisory Committee membership, and, along with the Advisory Committee, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ahold ¶¶ 365–68, 379; Kroger ¶¶ 326–28, 338; AGS ¶¶ 331–33, 343; Save Mart ¶¶ 324–26, 336.) None of those allegations speak to *Sanderson Farms'* involvement. *See Goren v. New Vision Intern., Inc.*, 156 F.3d 721, 730 (7th Cir. 1998) (holding that "lumping together" defendants is "clearly insufficient" to state a RICO claim). Plaintiffs never allege that Sanderson Farms even *knew of* any GPF activity related to the Advisory Committee or the Georgia Dock. And they certainly plead no allegations that Sanderson Farms "participated" at all in (much less "participated in the operation or management of") any GPF activity related to the Advisory Committee or Georgia Dock. *See Reves*, 507 U.S. at 185.

*Second*, Plaintiffs also allege participation in a supposed enterprise that are based on "price submissions to the PMN" and "use of the Georgia Dock price index in selling poultry." (Ahold ¶¶ 692, 711; *see also* Kroger, ¶¶ 636, 655; AGS ¶¶ 645, 664; Save Mart ¶¶ 632, 651.) These also miss the mark. The Seventh Circuit "has repeatedly stated that RICO plaintiffs cannot establish [a RICO enterprise] by defining the enterprise through what it supposedly does." *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 676 (7th Cir. 2000); *see also Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990) ("[A]lthough a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does.").

But that is precisely what Plaintiffs attempt to do here. Plaintiffs assert that the Georgia Dock Defendants' alleged actions of (i) purportedly submitting fraudulent prices to the GDA and (ii) selling poultry based on Georgia Dock prices *are* RICO predicate acts. Their complaints explicitly plead these acts as "conduct" constituting "[t]he Georgia Dock Defendants' racketeering activity." (Ahold ¶¶ 716–18, 721–22; Kroger ¶¶ 642–44, 649–50; AGS ¶¶ 631–33, 638–39; Save

11

Mart ¶¶ 618–20; 625–26.) But, "[i]n assessing whether the plaintiff has established a RICO enterprise, it is appropriate for the Court to consider whether the enterprise would still exist were the predicate acts removed from the equation." *Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 688 (N.D. Ill. 2012) (parenthetically quoting *Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759, 770 (N.D. Ill. 2005) (internal citation omitted)) (internal quotation marks omitted); *see also Okaya v. Denne Indus.*, 2000 WL 1727785, at *4 (N.D. Ill. Nov. 20, 2000). As Plaintiffs plead these actions as the alleged predicate acts, they must be "removed from the equation"—and are thus insufficient to allege a purported RICO enterprise. *Id.* at 688; *see e.g.*, *Starfish*, 370 F. Supp. 2d at 771 (dismissing RICO complaint because, "[a]fter careful consideration of Starfish's allegations, we find that if we strip away the predicate acts as described in the second amended complaint, there would simply be no 'criminal enterprise'" (internal citation omitted).)[10]

In sum, this Court has made clear that "[t]he RICO statute was never intended to turn garden-variety state law fraud claims into federal RICO actions." *Amin*, 2014 WL 3397256, at *3 (Durkin, J.) (internal quotation omitted). Plaintiffs' allegations regarding Sanderson Farms' price submissions and Georgia Dock-based sales are insufficient as a matter of law to establish its participation in a RICO enterprise.

## CONCLUSION

Approximately 90 million pages of documents have been produced in this case over the past two years. Plaintiffs have taken over 100 depositions. Yet, even now, across a collective 2,272 paragraphs, they allege no connection between Sanderson Farms and the Advisory

---

[10] *See also Green v. Morningstar, Inc.*, 2018 WL 1378176, at *5 (N.D. Ill. Mar. 16, 2018) (dismissing complaint because, "if the alleged predicate acts are removed, there is nothing left in the complaint to sustain the allegation of an ongoing, structured enterprise among Defendants"); *Shea v. Winnebago Cty. Sheriff's Office*, 2014 WL 4449605, at *13 (N.D. Ill. Sept. 10, 2014) (same), *aff'd in part and vacated in part on other grounds*, 746 Fed. Appx. 541 (7th Cir. 2018); *Rosen v. Mystery Method, Inc.*, 2008 WL 723331, at *4 (N.D. Ill. Mar. 14, 2008) (same); *Okaya*, 2000 WL 1727785, at *4 (same).

Committee. Nor do they allege any link between Sanderson Farms' membership in the GPF and any Georgia Dock-related or Advisory Committee-related meetings, decisions, or other activities, or otherwise plead Sanderson Farms' participation in a RICO enterprise. In sum, they fail to plead that Sanderson Farms participated in any purported RICO enterprise to allegedly manipulate the Georgia Dock. Accordingly, this Court should dismiss Plaintiffs' RICO enterprise-based claims (specifically, Ahold Counts VIII and IX; Kroger Counts V and VI; AGS Counts V and VI; and Save Mart Counts V and VI) against the Sanderson Farms Defendants.

Dated: July 22, 2019

Respectfully submitted,

*/s/ Daniel E. Laytin, P.C.*
Daniel E. Laytin, P.C.
Christa C. Cottrell, P.C.
Stacy Pepper
J. Benjamin Tyson
dlaytin@kirland.com
ccottrell@kirkland.com
stacy.pepper@kirkland.com
ben.tyson@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
United States
Telephone: +1 312 862 2000
Facsimile: +1 312 862 2200

*Attorneys for Sanderson Farms, Inc., Sanderson Farms, Inc. (Foods Division), Sanderson Farms, Inc. (Production Division), and Sanderson Farms, Inc. (Processing Division)*

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2019, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Daniel E. Laytin, P.C.*
Daniel E. Laytin, P.C.