# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To:<br><br>THE END-USER CONSUMER PLAINTIFFS | Case No. 1:16-cv-08637<br><br><br>**ANSWER AND DEFENSES OF THE GEORGE'S DEFENDANTS TO THE END-USER CONSUMER PLAINTIFFS' CONSOLIDATED FOURTH AMENDED COMPLAINT** |

Pursuant to Scheduling Order No. 11 [ECF 2253] Defendants George's, Inc. and George's Farms, Inc. (collectively, "George's"), hereby submit their answer and affirmative defenses to paragraphs 201-224 of the Fourth Amended Complaint ("Complaint") of The End-User Consumer Plaintiffs ("Plaintiffs"), filed on April 29, 2019. George's is not required to fully answer End-User Consumer Plaintiffs' ("Plaintiffs") Complaint at this time and George's defers answering other allegations until after the close of fact discovery, or when otherwise ordered by the Court.

## PRELIMINARY STATEMENT

George's denies all allegations in the Complaint unless George's has expressly admitted those allegations herein. Where an allegation in the Complaint is directed at another Defendant or a party that is not affiliated with George's, except as otherwise expressly stated, George's denies the allegations set forth in the Complaint on the basis that it denies the knowledge or information sufficient to form a belief concerning the truth of such allegations. Further, unless otherwise expressly admitted, George's denies any allegations in the headings, footnotes, or in other places in the Complaint, to the extent any such allegations require a response. Any headings, subheadings or similar text that George's has reprinted in this Answer are for the convenience of the Court and the parties, and are not intended to be nor shall they be construed as an admission of any fact by George's.

## ANSWER

**7.     In the alternative, defendants' agreement to exchange information violates the antitrust laws under a rule of reason analysis.**

201.    This action challenges, as an alternate theory of liability, under Section 1 of the Sherman Act and the various state laws, defendants' agreement to unlawfully exchange competitively sensitive information amongst Broiler Producers.

1

**Answer to Paragraph 201:** George's denies the conspiracy or conspiracies alleged in the complaint. Paragraph 201 contains legal conclusions to which no response is required. To the extent a response is required, George's denies the legal conclusions in Paragraph 201. George's admits that Plaintiffs purport to bring this putative class action under Section 1 of the Sherman Act and unidentified state laws, but denies that Plaintiffs can state a claim under those laws, have or can satisfy the requirements of Federal Rule of Civil Procedure 23 and/or state class action laws, and/or that Plaintiffs are entitled to any of the requested relief. George's denies any remaining allegations in Paragraph 201.

202. Defendants ostensibly compete in the Broiler industry for sales of chickens to customers. The agreement, to exchange competitively sensitive information through the service EMI and Agri Stats, has enabled defendants to reduce competition in the sale of Broiler chickens where they purport to compete head to head.

**Answer to Paragraph 202:** George's denies the conspiracy or the conspiracies alleged in the Complaint. George's admits that it competes against some of the Defendants for sales of chicken products to customers. To the extent that the allegations in Paragraph 202 relate to other Defendants and/or third parties to this action, George's denies knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations. George's denies the remaining allegations in Paragraph 202.

a.    **The Unlawful Agreements**

203. Agri Stats and the Broiler producers agreed to reciprocally exchange competitively sensitive business information. Agri Stats provides a number of reports to the Broiler producers on a regular basis. The Agri Stats books provide competitors with current information on prices. For example, one report, ███████████████████████████

2

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████

**Answer to Paragraph 203:** George's denies the conspiracy or conspiracies alleged in the Complaint. To the extent that the allegations in Paragraph 203 relate to other Defendants and/or third parties to this action, George's denies knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations. George's admits that it receives certain Agri Stats reports containing anonymized information for lawful, non-conspiratorial purposes, but denies that the allegations in Paragraph 203 fully and accurately summarize those reports and denies any characterization or description that is inconsistent therewith. George's denies the remaining allegations in Paragraph 203.

204.    Agri Stats also owns Express Markets, or EMI, a service which provides weekly pricing reports to the chicken industry. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

3

**Answer to Paragraph 204:** To the extent that the allegations in Paragraph 204 relate to other Defendants and/or third parties to this action, ███████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ George's denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 204 and, therefore, denies the allegations.

205.  ████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████

4

**Answer to Paragraph 205:** ███████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

George's denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 205 and, therefore, denies the allegations.

206.    █████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████

**Answer to Paragraph 206:** George's denies the conspiracy or conspiracies alleged in the Complaint.  George's denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 206 and, therefore, denies the allegations.

5

207. ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████

███████████████████████████████████████████████████

**Answer to Paragraph 207:** George's denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 207 and, therefore, denies the allegations.

208. ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

**Answer to Paragraph 208:** George's denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 208 and, therefore, denies the allegations.

209. ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

CORE/0012516.0929/153841524.4

████████████    ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████

**Answer to Paragraph 209:** George's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 209 and, therefore, denies the allegations.

210.    ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████

**Answer to Paragraph 210:** George's denies the conspiracy or conspiracies alleged in the Complaint.  To the extent that the allegations in Paragraph 210 relate to other Defendants and/or third parties to this action, George's denies knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations. George's denies the remaining allegations in Paragraph 210.

211.    The exchanges of this information have allowed the Broiler producers to better understand the availability of their competitors' inventory, their costs, their supply and pricing to competitors. The defendants furnished this competitively sensitive information with the understanding that it would be reciprocated. That is, one defendant would not have

provided information to Agri Stats, without the understanding that the reports it received would also contain the information of its competitors.

**Answer to Paragraph 211:** George's denies the conspiracy or conspiracies alleged in the Complaint. To the extent that the allegations in Paragraph 211 relate to other Defendants and/or third parties to this action, George's denies knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations. George's denies the remaining allegations in Paragraph 211.

212.    Each of the defendants in this litigation subscribed to the Agri Stats service. The following chart reflects the amounts paid by each of the defendants to the Agri Stats / EMI subscriptions:



**Answer to Paragraph 212:** To the extent that the allegations in Paragraph 212 relate to other Defendants and/or third parties to this action, George's denies knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations. George's admits that it receives certain Agri Stats reports containing anonymized information ▌

9

██████████████ George's denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 212 and, therefore, denies the allegations.

213.    These amounts far exceed those paid to other reporting services in the broiler industry, and of course exceed those paid to the USDA (as the USDA makes its data available for free to the public and other industry participants).

**Answer to Paragraph 213:** Paragraph 213 contains phrases ("far exceed") too vague to permit a response and George's denies the allegation on that basis.  To the extent that the allegations in Paragraph 213 relate to other Defendants and/or third parties to this action, George's denies knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations. George's denies any remaining allegations in Paragraph 213.

214.    Defendants' regular information exchanges, directly and through Agri Stats/EMI, reflected concerted action between horizontal competitors in the Broiler market.

**Answer to Paragraph 214:** George's denies the allegations in Paragraph 214.

  **b.**   **Defendants' information exchanges had the likely effect of harming competition.**

    **(1)**   **Defendants have market power – the ability to harm competition – in the market for broilers.**

215.    One tool that courts use to assess the competitive effects of concerted action is defining a relevant market – the zone of competition among the agreeing rivals in which the agreement may affect competition. A relevant market contains both a product dimension (the "product market") and a geographic dimension (the "geographic market"). The case concerns the sale of chickens for meat consumption in the United States.

**Answer to Paragraph 215:** Paragraph 215 contains legal conclusions and characterizations of their claims to which no response is required.  To the extent a response is

CORE/0012516.0929/153841524.4

required, George's denies the legal conclusions and characterizations in Paragraph 215. George's denies the remaining allegations in Paragraph 215.

216.    There is a single market for chickens for meat consumption (Broilers). Prices for Broilers sold in the United States are quoted in whole bird or disassembled parts, with adjustments for transportation, product form (i.e., degree of processing or added value), and packaging at the time of sale.

**Answer to Paragraph 216:** George's admits that quoted prices for some chicken products sold in the United States may depend on whether a bird is sold whole or in parts, and that there may be adjustments for transportation and added value. George's denies the existence of publicly "quoted" prices for the majority of products encompassed within the terms chicken or Broilers. George's denies that there is a single national market for chicken or Broilers in the United States. George's denies knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 216 and, therefore, denies the allegations.

217.    The relevant geographic market is the United States.

**Answer to Paragraph 217:** Paragraph 217 consists of legal conclusions and characterizations of their claims to which no response is required. To the extent a response is required, George's denies the allegations in Paragraph 217.

> **(2)    There are high barriers to entry in the market for chicken for meat consumption.**

218.    As detailed in section VI.E, high barriers to entry exist, precluding other entrants or would-be competitors from entering the market for chickens raised for consumption.

**Answer to Paragraph 218:** Paragraph 218 purports to set forth principles of economic theory, which, as set forth, George's denies. To the extent Paragraph 218 contains factual allegations, George's denies the allegations.

11

(3) **The defendants have market power in the highly concentrated market for chicken for meat consumption.**

219.     The Broiler defendants possess market power in the market for raw chicken for consumption. Defendants and their co-conspirators control 90 percent of the market for chicken for meat consumption.

**Answer to Paragraph 219:** George's denies knowledge or information sufficient to form a belief as to the derivation or accuracy of the precise figure set forth in the second sentence of Paragraph 219 and, therefore, denies the allegations. George's denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 219 and, therefore, denies the allegations.

8.     **The information exchanges orchestrated by Agri Stats are of the type that is likely to harm competition when carried out by parties with market power.**

220.     The market for chicken for consumption is characterized by high barriers to entry and a history of interdependent price and supply.

**Answer to Paragraph 220:**  Paragraph 220 purports to set forth principles of economic theory, which, as set forth, George's denies.  To the extent Paragraph 220 contains factual allegations, George's denies the allegations.

221.     Competition is likely to be harmed when competitors with market power in concentrated markets, such as the market at issue, directly exchange strategic information about current and forward-looking plans for prices and supply. The strategic information exchanged between the defendants was competitively sensitive and a material factor in negotiations. Price, capacity, supply and costs are crucial aspects of competition. When chicken producers that are competing for the same customers exchange their strategic

plans, comfort replaces uncertainty and reduces incentives to lower price or compete on other aspects of raw chicken.

**Answer to Paragraph 221:** George's denies the conspiracy or conspiracies alleged in the complaint. Paragraph 221 purports to set forth principles of economic theory, which, as set forth, George's denies. To the extent Paragraph 221 contains factual allegations, George's denies the allegations.

222. The information exchange took place in private settings and involved the exchange of confidential, non-public information.

**Answer to Paragraph 222:** To the extent Paragraph 222 relates to George's, it contains phrases ("private settings") too vague to permit a response and George's denies the allegation on that basis. To the extent that the allegations in Paragraph 222 relate to other Defendants and/or third parties to this action, George's denies knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations. George's denies any remaining allegations in Paragraph 222.

**9. Defendants' information exchanges corrupted the competitive process.**

223. Defendants used the strategic information obtained through the Agri Stats and Express Markets reports to reduce the uncertainty that they each should have faced from not knowing what their competitors were doing in the market. This strategic information was a material factor in their decisions to reduce supply and stabilize the price of chicken. Thus, this knowledge tainted what should have been their independent decisions about the supply and price of chicken.

**Answer to Paragraph 223:** George's denies the conspiracy or conspiracies alleged in the Complaint. To the extent that the allegations in Paragraph 223 relate to other Defendants and/or

13

third parties to this action, George's denies knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies the allegations. To the extent the allegations in Paragraph 223 relate to George's, George's denies the allegations.

**10. Defendants' unlawful information exchanges have no pro-competitive justifications.**

224. Defendants' unlawful information exchanges through Agri Stats and Express Markets were not reasonably necessary to further any procompetitive purpose. The information directly and privately shared between high-level executives was disaggregated, company specific, forward-looking, confidential, and related to a core characteristic of competition between them.

**Answer to Paragraph 224:** George's denies the allegations in the first sentence of paragraph 224. George's denies that the vague conclusions in the second sentence of paragraph 224 accurately describe the information distributed by Agri-Stats or Express Markets or the manner in which such information was distributed, and, denies the remaining allegations of Paragraph 224.

## AFFIRMATIVE DEFENSES

## FIRST DEFENSE

(i) Plaintiffs' claims are barred, in whole or in part, because any alleged injuries and damages were not legally or proximately caused by any acts or omissions of Defendants and/or were caused, if at all, solely and proximately by the conduct of Plaintiffs themselves or third parties including, without limitations, the prior, intervening or superseding conduct of such Plaintiffs or third parties.

14

## SECOND DEFENSE

(ii)     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs failed to exercise reasonable care to mitigate any damages they may have suffered.

(iii)     The facts Plaintiffs cite in support of their claims were made public more than four years ago. George's hereby incorporates Paragraph 22 of these affirmative defenses in support of this defense.

(iv)     To the extent Plaintiffs believed that George's had unfairly increased the price of chicken by agreeing to cut chicken production, Plaintiffs had an obligation to mitigate its damages by seeking other sources of supply, including from other producers.

(v)     Plaintiffs' failure to exercise reasonable care to mitigate damages was the complete or partial cause of any damages Plaintiff may have suffered.

## THIRD DEFENSE

(vi)     Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver.

(vii)     The facts Plaintiffs cite in support of their claims were made public more than four years ago. George's hereby incorporates Paragraph 22 of these affirmative defenses in support of this defense.

(viii)     Plaintiffs' conduct in continuing to purchase chicken at what they now allege are inflated prices is evidence of an intention to waive any right to bring this suit and was inconsistent with any intention other than to waive their right to bring suit.

(ix)     Plaintiffs by their actions, accepted the benefits of an ongoing relationship with defendants and relinquished their right to bring suit.

## FOURTH DEFENSE

(x)     Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel.

CORE/0012516.0929/153841524.4

(xi)     The facts Plaintiffs cite in support of their claims were made public more than four years ago. George's hereby incorporates Paragraph 22 of these affirmative defenses in support of this defense.

(xii)     Defendants relied in good faith, and to their detriment, on Plaintiffs' actions in continuing to purchase chicken without complaint.

(xiii)     Defendants had no knowledge of Plaintiffs' alleged complaints or means to discover these complaints.

(xiv)     Plaintiffs' claims are therefore estopped.

**FIFTH DEFENSE**

(xv)     Plaintiffs' claims are barred by the equitable doctrine of laches.

(xvi)     The laches doctrine dictates that those who sleep on their rights, lose them. Specifically, laches will bar relief in the face of: (1) an unreasonable lack of diligence by the party against whom the defense is asserted and (2) prejudice arising therefrom.

(xvii)     George's hereby incorporates Paragraph 22 of these affirmative defenses in support of this defense. Plaintiffs demonstrated an unreasonable lack of diligence in bringing their claims. As set forth in support of George's statute of limitations defense, the challenged conduct that underlies Plaintiffs' claims occurred between seven and ten years ago. *See, e.g.*, Compl. ¶ 493. Likewise, the specific facts Plaintiffs cite in support of their claims were publicly available long ago. *See, e.g.*, Compl. ¶¶ 127, 174-176, 179, 180, 197, 509, 579-586. Yet, Plaintiffs did not file their allegations until 2018, causing George's to continue to deal with Plaintiffs in the same manner, to its prejudice. This unreasonable lack of diligence in raising their claims bars them now.

(xviii)     Accordingly, the equitable principles embodied in the laches doctrine bar Plaintiff from seeking relief at this delayed juncture.

16

**SIXTH DEFENSE**

(xix)    Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

(xx)    The statute of limitations for Plaintiffs' claims is four years. 15 U.S.C. § 15(b). Thus, their claims must be dismissed unless Plaintiffs can sufficiently allege that they could not have discovered the claimed offense within the limitations period exercising reasonable diligence.

(xxi)    Plaintiffs cannot satisfy this burden: the challenged conduct occurred between seven and ten years ago. *See* Compl. ¶ 493 (Plaintiffs allege that the actions began "as early as January 1, 2008, and continu[ed] through the present.").

(xxii)    Moreover, the facts Plaintiffs cite in support of their claims were made public more than four years ago. For example:

- **Publicly Announced Cuts**. As Plaintiffs acknowledge, the supply decisions at issue in this case were no secret. *See, e.g.*, Compl. ¶ 249 ("On March 12, 2008, Pilgrim's announced a massive closure of its Broiler processing plants. Just five days after taking over the position of Pilgrim's CEO, Clint Rivers, publicly announced the closure of seven Broiler facilities in order to reduce industry oversupply . . . ."). Indeed, the supply cuts cited by Plaintiff in its complaint were publicly announced years ago. *See, e.g.*, Compl. ¶ 250 ("April 3, 2008: Fieldale Farms announced a 5% production cut . . . Simmons Foods announced a 6% reduction in production . . . .").

- **Alleged Signals**. Similarly, Plaintiffs rely on public statements made as far back as 2008 in their signaling allegations. *See, e.g.*, Compl. ¶¶ 448–449 (summarizing comments by Tyson and Pilgrim's Pride in their respective January 28 and 29, 2008 earnings calls). If, as they claim, these statements were obvious indicators of misconduct, it triggered Plaintiffs' duty to inquire as far back as 2008.

- **Agri Stats**. Plaintiffs also rely on public statements regarding the use of Agri Stats, many from ten years ago. *See, e.g.*, Compl. ¶ 195 (quoting May 2008 report in which Sanderson Farms said "[We] try to improve our operations within this benchmarking service we call Agristats.")

- **Trade Associations**. Defendants' participation in trade conferences and meetings was public when it occurred, many years ago.

CORE/0012516.0929/153841524.4

- **Industry Structure**. The nature of the Broiler industry's structure has been known for decades. Plaintiffs cite no new information that was not otherwise available in 2008 or contemporaneously as plants were closed. *See, e.g.*, Compl. ¶ 368–370; *see also* Compl. ¶ 271 ("By September 2008, Broiler industry publication Watts PoultryUSA reported that '[m]ost U.S. chicken integrators ha[d] announced plans to close small operations, consolidate complexes and further processing plants and to reduce output by 3 percent to 5 percent to 'maximize efficiency.'").

(xxiii) Plaintiffs' attempt to justify their delay by claiming fraudulent concealment fails—it simply recycles their underlying allegations and conclusively asserts fraudulent concealment. Compl. ¶¶ 481–491. Accordingly, Plaintiffs' Complaint is time-barred.

## SEVENTH DEFENSE

(xxiv) Plaintiffs' claims are barred, in whole or in part, due to the ratification of, and consent to, the conduct of George's.

(xxv) Defendants hereby incorporate the above Paragraph 22 of these affirmative defenses in support of this defense.

(xxvi) Plaintiffs' Complaint relies on publicly available information—much of which has been available for years—thereby demonstrating their long-standing ratification of and consent to the complained-of conduct.

(xxvii) For example, Plaintiffs have known for more than a decade whether certain Broiler producers participate in and receive reports from Agri Stats. *See, e.g.*, Compl. ¶ 166 (stating that Tyson withdrew from Agri Stats in 2004 but "in or around January 2008, Tyson resumed its participation in Agri Stats.").

(xxviii) Likewise, Plaintiffs' benefit from Defendants' participation in trade association meetings and other industry events. These meetings and events promote, among other issues, lobbying efforts, regulations, industry safety, animal health, and training and education.

(xxix)  Accordingly, because Plaintiffs have been aware for years of the same conduct they now challenge—much of which has provided Plaintiffs a direct benefit— Plaintiffs' claims are barred by the doctrine of ratification.

## EIGHTH DEFENSE

(xxx)  Plaintiffs' claims include allegations that one or more Defendants made public statements about changes needed in alternative fuel mandates under federal law.

(xxxi)  These mandates increased usage of corn and other animal feed used to produce alternative fuels, and thereby greatly increased feed costs incurred by Defendants for live Broiler operations.

(xxxii) Plaintiffs' claims are barred, in whole or in part, to the extent Plaintiffs seek to impose liability on Defendants based on the exercise of any person or entity's right to petition federal, state and local legislative bodies, including through public statements, because such conduct was immune under the Noerr-Pennington doctrine and privileged under the First Amendment to the U.S. Constitution.

## NINTH DEFENSE

(xxxiii) Without admitting the existence of any contract, combination or conspiracy in restraint of trade, and expressly denying same, Plaintiffs' claims are barred, in whole or in part, by non-settling Defendants' right to set off any amounts paid to Plaintiffs by any Defendants who have settled, or do settle, Plaintiffs' claims against them in this action.

## TENTH DEFENSE

(xxxiv) Without admitting the existence of any contract, combination or conspiracy in restraint of trade, and expressly denying same, Plaintiffs' claims are barred, in whole or in part, to the extent that Plaintiffs entered into cost-plus contracts with parties who purchased from Plaintiffs before Plaintiffs began paying any purported overcharge.

CORE/0012516.0929/153841524.4

**ELEVENTH DEFENSE**

(xxxv) Plaintiffs' claims are barred, in whole or in part, to the extent they seek improper multiple damage awards, and damage awards duplicative of those sought in other actions, in violation of the Due Process guarantees of the Fifth and Fourteenth Amendments of the United States Constitution.

**TWELFTH DEFENSE**

(xxxvi) Plaintiff's claims are barred, in whole or in part, by the state action doctrine.

(xxxvii) The state action doctrine exempts from antitrust claims, conduct of private parties that is undertaken pursuant to a clearly articulated policy to displace competition with regulation and is actively supervised by the state.

(xxxviii) States in which Defendants grow and process broiler breeder and chicken flocks have statutes and rules that regulate many aspects of these operations, including without limitation for wastewater restriction, air permitting, monitoring, detection, medical treatment, processing for slaughter, reporting, and communication with other broiler chicken producers about the health status of broiler breeder and chicken flocks.

(xxxix) Each state actively supervises conduct of private parties pursuant to the state's statutes, regulations, and rules that apply to operations for growing and processing broiler breeder and chicken flocks.

(xl) The state action doctrine bars Plaintiff's claims, in whole or in part, to the extent the claims are based on conduct of Defendants pursuant to these state statutes, regulations, and rules, including without limitation any alleged conduct related to wastewater restriction, air permitting, monitoring, detection, medical treatment, processing for slaughter, reporting, and communication with other broiler chicken producers about the health status of broiler breeder and chicken flocks.

## PRAYER FOR RELIEF

WHEREFORE, George's respectfully requests that judgment be entered in favor of George's and the other Defendants and against Plaintiff, dismissing the Complaint in its entirety with prejudice. George's further requests that this Court: (i) award George's its costs and disbursements; and (ii) award such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Pursuant to the Federal Rules of Civil Procedure 38, Defendant George's demands a trial by jury on all claims so triable.

CORE/0012516.0929/153841524.4

Dated:  July 31, 2019

Respectfully submitted,

*/s/William L. Greene*
William L. Greene
Peter J. Schwingler
Kevin P. Kitchen
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN  55402
(612) 335-1500
william.greene@stinson.com
peter.schwingler@stinson.com
kevin.kitchen@stinson.com

J. Nicci Warr
STINSON LLP
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
(314) 259-4570
nicci.warr@stinson.com

*/s/John C. Martin*
John C. Martin
SUGAR  FELSENTHAL  GRAIS  &  HELSINGER
LLP
30 N. LaSalle Street, Suite 3000
Chicago, IL  60602
(312) 704-2172
jmartin@sfgh.com

Gary V. Weeks
K.C. Dupps Tucker
Kristy E. Boehler
THE LAW GROUP OF NW. ARKANSAS LLP
1830 Shelby Lane
Fayetteville, AR  72704
(479) 316-3760
gary.weeks@lawgroupnwa.com
kc.tucker@lawgroupnwa.com
kristy.boehler@lawgroupnwa.com

*Attorneys for Defendants George's, Inc.*
*and George's Farms, Inc.*

22

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2019, a copy of the foregoing was filed via the Court's ECF system. Notice of this filing will be sent to the attorneys of record by operation of the ECF system. Parties may access this filing through the Court's system.


*/s/ John C. Martin*
John C. Martin

CORE/0012516.0929/153841524.4