## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | Case No. 1:16-cv-08637 |
| | The Honorable Thomas Durkin |
| This Document Relates To: | |
| *Winn-Dixie Stores, Inc., et. al. v. Koch Foods, Inc., et. al.* | Case No. 1:18-cv-00245 |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT FIELDALE FARMS
CORPORATION'S MOTION TO ENFORCE FINAL APPROVAL
ORDER AND DISMISS ALL CLAIMS BROUGHT BY PLAINTIFFS
<u>WINN-DIXIE STORES, INC. AND BI-LO HOLDINGS, LLC</u>**

## INTRODUCTION

Direct Action Plaintiffs Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC (collectively "Winn-Dixie") "failed to timely and validly request to be excluded from" Fieldale's Settlement Agreement with the Direct Purchaser Plaintiff ("DPP") class. *See* November 16, 2018 Order Granting Final Approval of Settlement with Defendant Fieldale Farms Corporation ("Final Approval Order"), Dkt. 1414, at ¶ 13. Winn-Dixie does not deny that it failed to meet the Court's October 15, 2018 deadline for mailing its opt-out request, and Winn-Dixie is not among the companies excluded from the Final Approval Order. Winn-Dixie is therefore "subject to and bound by the provisions of the Settlement Agreement," and Winn-Dixie is "forever barred from commencing or continuing" to prosecute released claims against Fieldale. Dkt. 1414 at ¶ 8, 13.

Winn-Dixie provides no explanation for its failure to meet the Court's opt-out deadline. Winn-Dixie does not argue that the Court's notice procedures—including the October 15, 2018 deadline—were deficient in any way. Winn-Dixie does not deny that it had notice of the deadline. Winn-Dixie does not deny that it was required to meet the deadline. Winn-Dixie does not deny that it missed the deadline. Winn-Dixie does not even argue that it failed to meet the opt-out deadline due to "excusable neglect" under Federal Rule of Civil Procedure 6(b)(2). Winn-Dixie says nothing at all about its failure to meet the Court's deadline. *See generally* MTD Response and Ex. 2 (Ahern Declaration).

Winn-Dixie's silence leaves the basic facts undisputed. Winn-Dixie did not opt out by the deadline. Indeed, Winn-Dixie's late-postmarked envelope—stamped October 17, 2018 on its face—is an exhibit to the settlement administrator's publicly filed declarations. Winn-Dixie did not move to expand its time to opt out before the Court entered the Final Approval Order, even after the settlement administrator's pre-approval, public declarations highlighted the untimeliness

of Winn-Dixie's request. And Winn-Dixie's claims all fall within the scope of the release and covenant not to sue as defined by the Settlement Agreement and Final Approval Order. Nothing in Winn-Dixie's response affects the analysis in Fieldale's motion to dismiss, and Fieldale's motion should be granted.

Instead of addressing its failure to meet the opt-out deadline, Winn-Dixie focuses on an email it received from the claims administrator that acknowledged receipt of Winn-Dixie's late-submitted opt-out letter. As a threshold matter, this email is irrelevant; Winn-Dixie had already missed its deadline. But everything that Winn-Dixie says about the email is also wrong. Winn-Dixie characterizes the email as so clearly stating that Winn-Dixie's opt-out request was timely and had been approved that "in reliance on that email, counsel for the Winn-Dixie Plaintiffs had no reason to review the final approval papers." MTD Response at 5. But that's not what the email said. The email simply stated that Winn-Dixie's letter had been "received and processed," and it expressly stated "that the Court may determine the validity of any Request for Exclusion." MTD Response at Ex. 1.

The settlement administrator's statements were also true. Winn-Dixie's request was received. It was processed. The results of the processing were reported to the public: The settlement administrator prepared sworn declarations filed before the final approval hearing. These declarations included information specifically about Winn-Dixie's late-submitted request. The Court, after reviewing those declarations and the evidence and argument presented at the final approval hearing, entered the Final Approval Order. This order ultimately determined the validity of all requests for exclusion, as stated by the settlement administrator's email to Winn-Dixie. Nothing in the settlement administrator's email could reasonably suggest that Winn-Dixie could stop reading any filings, and particularly the Court's orders, from that point forward.

Finally, each of the legal arguments that Winn-Dixie makes is wrong. First, even if the settlement administrator's email said what Winn-Dixie asserts, the email could not equitably estop Fieldale from asserting its rights under the Settlement Agreement and Final Approval Order. Second, Winn-Dixie has not shown "excusable neglect" sufficient to allow it to opt out now, nearly a year after the deadline. Lastly, the Final Approval Order and Settlement Agreement bar any claims by Winn-Dixie based on the antitrust allegations addressed in this case, even if Winn-Dixie re-labels those claims as "breach of contract." Fieldale's motion to dismiss should be granted, and Winn-Dixie's claims should be dismissed in full.

## ARGUMENT

## I. FIELDALE IS NOT EQUITABLY ESTOPPED FROM SEEKING TO ENFORCE THE FINAL APPROVAL ORDER AND SETTLEMENT AGREEMENT

Winn-Dixie's first argument is that Fieldale is equitably estopped from enforcing the Final Approval Order because Winn-Dixie "reasonably relied on the unequivocal statement . . . in the email from the Claims Administrator that the opt out notice letter was timely and certainly that it was not untimely." MTD Response at 5. There are several problems with this argument, some legal, and some factual.

First—and most importantly—by the time Winn-Dixie received the October 25, 2018 confirmation email from the claims administrator, Winn-Dixie had already missed the Court's October 15, 2018 opt-out deadline. At that point, if Winn-Dixie believed that it should be allowed to opt out after the deadline, it was Winn-Dixie's burden to show that it missed the deadline due to excusable neglect and argue that its time for opting out should be enlarged under Federal Rule of Civil Procedure 6(b)(2). *See* MTD at 2, 7-8. Winn-Dixie failed to file a Rule 6(b)(2) motion before the final approval hearing, and Winn-Dixie fails to provide any explanation for missing its deadline in its Response or supporting declaration of counsel. *See*

3

*generally* Winn-Dixie MTD Response, Dkt. 3064, and Exhibit 2. Despite the focus that Winn-Dixie puts on the settlement administrator's email, it is legally irrelevant regarding the core issues of whether Winn-Dixie opted out by the deadline and, if not, whether its failure to do so was due to excusable neglect. Winn-Dixie says nothing about these issues in its Response.

Second, the email from the claims administrator does not comment on the timeliness of Winn-Dixie's opt out request at all, much less make an "unequivocal statement" that Winn-Dixie's request was timely. The claims administrator's email states that Winn-Dixie's "Request for Exclusion from In re Broiler Chicken Antitrust Litigation has been received and processed for the entities named in your request," it asks for additional information, and it states "[p]lease note that the Court may determine the validity of any Request for Exclusion." MTD Response at Ex. 1. The email simply cannot support the inferences that Winn-Dixie draws.

Any questions Winn-Dixie had about the timeliness of its request were resolved only four days later, on October 29, 2018, when the DPPs filed a declaration from the settlement administrator as an exhibit to the DPPs' final approval motion. *See* Dkt. 1369-4. As part of this filing, the administrator provided information regarding Winn-Dixie's opt out request, which the administrator expressly stated was not approved because it "was postmarked after the deadline." *Id.* at ¶ 17. The administrator also included a copy of Winn-Dixie's letter and the envelope, which is postmarked October 17, 2018 (two days after the mailing deadline). Dkt. 1369-5 at Exhibit F1 and F2. There was simply no question—as a matter of public record—that Winn-Dixie's opt out request was not timely well before the Court entered the November 16, 2018 Final Approval Order.

Third, even if Winn-Dixie's characterizations of the settlement administrator's October 25, 2018 email were correct, Winn-Dixie cannot meet the legal requirements for equitable

estoppel. "The traditional elements of equitable estoppel are: (1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992). "The burden of proof is on the party claiming estoppel." *Id.* Winn-Dixie cannot meet any of these elements.

First, Fieldale never made any representations to Winn-Dixie about the timeliness of its opt out request, much less misrepresentations. Fieldale has no relationship with the settlement administrator and has simply received information regarding Winn-Dixie's opt out status through the administrator's publicly filed declarations. Second, Winn-Dixie has not reasonably relied on any action by Fieldale. Again, Fieldale did not communicate with Winn-Dixie about its failure to timely opt out. The only alleged action Fieldale has taken at all with respect to Winn-Dixie since the Court entered the Final Approval Order was joining in discovery served by all defendants in the summer of 2019—after Winn-Dixie had already improperly revived claims against Fieldale by filing its First Amended Complaint. *See* MTD Response at Exhibits 3 and 4. Third, any reliance by Winn-Dixie on the settlement administrator's email was not to its detriment. As set out above, Winn-Dixie had already missed its deadline, and, even now, Winn-Dixie has not argued that its failure to meet the deadline was due to excusable neglect. Winn-Dixie failed to meet this deadline no matter what the settlement administrator (or Fieldale) could have said after the fact.

## II.    WINN-DIXIE DID NOT DEMONSTRATE A REASONABLE INTENTION TO OPT OUT

Winn-Dixie's second argument again conflates its pre- and post-deadline actions. Whether Winn-Dixie opted out of the DPP Settlement Agreement depends on the actions it took *before* the opt-out deadline. Winn-Dixie's conduct *after* it missed the deadline must be evaluated

under Rule 6(b)(2)'s "excusable neglect" standard. The authority that Winn-Dixie relies on—some of it old and out-of-jurisdiction—emphasizes this distinction.

To determine whether a party opted out of a class action settlement, "the relevant specified date" is the opt-out deadline. *In re Brand Name Prescription Drugs Antitrust Litig.*, 171 F.R.D. 213, 215 (N.D. Ill. 1997) (cited by Winn-Dixie). "The question then is whether [the plaintiff's] actions *prior to* [the opt-out deadline] were sufficient to signify a desire to be excluded from the class." *Id.* (emphasis added). In *In re Brand Name Prescription Drugs*, for example, the plaintiff had not only instituted an independent lawsuit, but had also filed an opt out notice before the deadline by mailing it to the clerk (rather than following the proper procedure of mailing it to the settlement administrator). *Id.* at 215-16. Mailing an opt-out notice before the deadline—even if to the wrong address—was deemed sufficiently clear pre-deadline conduct to show that the plaintiff intended to opt out.

"[T]he mere pendency and continued prosecution of a separate suit, which the litigant instituted *before* commencement of the 'opt out' period in a related class action, neither registers nor preserves a litigant's election to 'opt out' of the related class action." *Demint v. NationsBank Corp.*, 208 F.R.D. 639, 641 (M.D. Fla. 2002) (emphasis in original); *see also* MTD at 2, 6-7 (collecting recent authority). Indeed, in the *In re Processed Eggs* decision on which Winn-Dixie relies, the court held that the direct action plaintiffs "took no action that reasonably indicated their intent to opt out of the [class] Settlement" even though the plaintiffs "'engaged in separate, direct, and unsuccessful efforts to settle with [the defendant] only two months after the [class] settlement was announced and vigorously litigated their claims against [settling defendant] and the other defendants during the 16 months after the [class] settlement was announced.'" 130 F. Supp. 3d 945, 953 (E.D. Pa. 2015) (citation omitted). The court reasoned that the direct action

plaintiffs' "conduct is consistent with the possibility that they were trying to test the viability of litigating their pending lawsuit while preserving the option of joining the [class] Settlement," and the plaintiffs' "post-settlement conduct" therefore "was not the functional equivalent of opting out." *Id.*

Winn-Dixie has identified no *pre-deadline* conduct that reasonably indicated that Winn-Dixie intended to opt out. If Winn-Dixie intended to opt out before the October 15, 2018 deadline, Winn-Dixie failed to communicate that desire. "An intent without a sufficient effort to communicate that intent is insufficient." *In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV. 3288 (DLC), 2005 WL 1048073, at *4 (S.D.N.Y. May 5, 2005).

Winn-Dixie instead focuses on *post-deadline* litigation activity—relying primarily on its late opt-out letter—to argue that it intended to opt out. *See* MTD Response at 7. But none of the cases that Winn-Dixie cites for the proposition that a late-submitted notice can communicate an intent to opt out hold that the plaintiff opted out on time. Rather, these cases all deal with "excusable neglect" under Rule 6(b)(2). *See In re Four Seasons Sec. Laws Litig.*, 493 F.2d 1288, 1290–91 (10th Cir. 1974) (evaluating late opt-out request under excusable neglect standard where plaintiff had given pre-deadline notice of its intent to opt out but filed formal request for exclusion two weeks late); *Silber v. Mabon*, 18 F.3d 1449, 1455 (9th Cir. 1994) (holding that "excusable neglect" was a fact question where plaintiff missed the opt-out deadline but "he [then] appeared at the hearing and asked the court to allow him to opt out on the basis that he did not receive adequate notice" before the class settlement was approved). As discussed below, Winn-Dixie has failed to prove excusable neglect here.

## III.  WINN-DIXIE HAS FAILED TO SHOW "EXCUSABLE NEGLECT"

Winn-Dixie's argument regarding application of the "excusable neglect" standard focuses on the wrong issue. The relevant deadline that Winn-Dixie missed is the Court's October 15,

2018 opt-out deadline, and that is the deadline that Winn-Dixie would move to expand under a properly filed Rule 6(b)(2) motion. Winn-Dixie says absolutely nothing about why it missed the opt-out deadline in its Response. Instead, Winn-Dixie argues that its apparent failure to realize that it missed the opt-out deadline was due to "excusable neglect." If Winn-Dixie did not have a good reason for missing the October 15, 2018 deadline—and Winn-Dixie does not argue that it had any reason at all for missing the deadline, much less "excusable neglect"—then its reasons for failing to realize that it missed the deadline are irrelevant. Winn-Dixie's claims are barred either way.

Taking its argument at face value, however, Winn-Dixie is wrong that its failure to read the Court's orders and the other pleadings related to the DPP Settlement Agreement qualifies as "excusable neglect." "An unaccountable lapse is not excusable neglect." *Prizevoits v. Indiana Bell Tel. Co.*, 76 F.3d 132, 133 (7th Cir. 1996). "The term 'excusable neglect' . . . refers to the missing of a deadline as a result of such things as misrepresentations by judicial officers, lost mail, and plausible misinterpretations of ambiguous rules." *Id.* Where a deadline or "rule [is] 'crystal clear' and the attorney's error 'egregious' and 'inexplicable,'" a party cannot show excusable neglect. *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 740 (7th Cir. 2008).

"An attorney has a duty to review communications from the Court." *Mack v. McDaniel*, No. 3:12-CV-00104-RCJ, 2013 WL 5278025, at *1 (D. Nev. Sept. 18, 2013). "As an attorney of record in [this] action, [counsel] had an obligation to keep himself appraised of developments in the case." *Gen. Ins. Co. of Am. v. Boyd*, No. IP 00-1431-C M/F, 2002 WL 1610948, at *8 (S.D. Ind. July 9, 2002); *see also Hicks v. Transit Mgmt. of Asheville, Inc.*, No. 1:11CV94, 2012 WL 1313217, at *3 (W.D.N.C. Apr. 17, 2012) (rejecting "excusable neglect" argument and emphasizing that "[c]ounsel's neglect in failing to read an Order of the Court and to comply with

its directives simply does not justify granting the Plaintiff the extraordinary relief he requests").
"Despite . . . counsel's characterization, failure to read the Court's orders is clearly a 'garden-variety' case of neglect to which equitable tolling does not apply." *Barnes v. Suzuki Motor Corp.*, No. 3:11-CV-0077-B, 2012 WL 13020179, at *5 (N.D. Tex. Apr. 3, 2012); *see also In re Brown*, 152 B.R. 563, 565 (Bankr. E.D. Ark. 1993) ("The debtors admit they received the Order and apparently did not read it carefully. This does not rise to the level of excusable neglect.").

There are no circumstances under which it would be excusable for an attorney to stop reading the pleadings in a case, including the Court's orders, based on a representation by another party in the action or, as here, a routine email from a third-party settlement administrator. But the actual language of the settlement administrator's email also disproves Winn-Dixie's argument that "in reliance on that email, counsel for the Winn-Dixie Plaintiffs had no reason to review the final approval papers." MTD Response at 5. The letter expressly states: "Please note that the Court may determine the validity of any Request for Exclusion." MTD Response at Ex. 1. Even if Winn-Dixie did not otherwise have a duty to read the pleadings in this case, the email instructs Winn-Dixie that the Court will ultimately determine the validity of Winn-Dixie's request for exclusion. The Court did so in the Final Approval Order after being fully appraised of Winn-Dixie's late opt-out request. Winn-Dixie was free to weigh in on the settlement either as a party to the case or as an objector, but Winn-Dixie did not do so. Instead, Winn-Dixie did not raise the issue of "excusable neglect" at all until its Response—filed approximately ten months after Winn-Dixie missed its deadline and nine months after entry of the Final Approval Order.

This is not the first time that Winn-Dixie has disregarded its obligations in this case. *Robb v. Norfolk & W. Ry. Co.*, 122 F.3d 354, 362 (7th Cir. 1997) ("We hold that so long as the trial judge does not treat [an attorney's] overall record of compliance with court deadlines as

9

a *dispositive* factor, he may consider this record as *one* of the facts and circumstances that has a bearing on whether the negligence of [the party's] attorney constitutes 'excusable neglect.'") (emphasis in original). Less than two months before the opt-out deadline—on August 24, 2018—Magistrate Gilbert reprimanded Winn-Dixie on the record for its inattentiveness to the litigation:

> [M]y impression from reading the report is that you and your client were not particularly responsive to the defendants' requests for production. And again, you're a plaintiff. So usually plaintiffs have to want to move the case. But if you're AWL on this, either because you have other things to do or your client isn't particularly interested in responding to discovery and won't communicate with you, then that's a problem. And if you don't have the time to deal with it, then maybe you have to bring somebody else on board. If your client doesn't want to, you know, engage here, then that's a different problem that I could deal with otherwise. But my impression from reading everything is that they were trying pretty hard to get you to the table, to get your client to respond, and long periods of time went by when you weren't responding.

Dkt. 1188, Transcript of August 24, 2018 Hearing, at 92:4-20.

"[I]nattentiveness to the litigation is not excusable." *Matter of Plunkett*, 82 F.3d 738, 742 (7th Cir. 1996). Winn-Dixie has provided no explanation whatsoever for why it missed the opt-out deadline less than two months after Magistrate Gilbert told Winn-Dixie to start paying attention to the case. And Winn-Dixie's explanation for why it apparently failed to realize that it had missed the deadline is inexcusable. "Here the rule is crystal clear, the error egregious, the excuses so thin as to leave the lapse not only unexcused but inexplicable. If there was 'excusable' neglect here, [it would be] difficult[] [to] imagin[e] a case of inexcusable neglect." *Prizevoits*, 76 F.3d at 134; *see also Hallie v. Wells Fargo Bank, N.A.*, No. 2:12-CV-00235-PPS, 2015 WL 1914864, at *4 (N.D. Ind. Apr. 27, 2015) ("Under this circumstance, where the opt-out was plainly deficient and no argument of any kind (sounding in law, fact, or fairness) has been made, the Court won't go looking for potential fact disputes or possible fairness arguments to defeat dismissal.").

Because Winn-Dixie has not come forward with a legally acceptable "reason for the delay" that caused it to miss the opt-out deadline, Winn-Dixie cannot satisfy the most important consideration necessary to establish excusable neglect. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (holding that courts evaluating excusable neglect should consider (1) "the danger of prejudice to the [other party], (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith.") (numbering added). "[C]ourts have, for the most part, adopted a . . . "hard line" to applying *Pioneer* that emphasizes the reason for the delay." *In re Enron Corp.*, 419 F.3d 115, 123 (2d Cir. 2005).) (collecting cases). Where a party, like Winn-Dixie, fails to come forward with an acceptable reason for missing a deadline, it cannot establish excusable neglect even if the other "[t]hree . . . relevant circumstances noted in *Pioneer* weigh in favor of a finding of excusable neglect." *United States v. Torres*, 372 F.3d 1159, 1162–63 (10th Cir. 2004) (holding that it was an abuse of discretion for the district court to find excusable neglect where the reason for the delay "was simply that defense counsel confused the filing deadlines").

That said, none of the other "excusable neglect" considerations favor Winn-Dixie. First, allowing Winn-Dixie to opt out late would prejudice Fieldale by subjecting it to a separate lawsuit advancing claims that have already been resolved by the Final Approval Order. Winn-Dixie, for its part, will not be prejudiced because it can participate in the settlement and still maintain claims against other defendants and attempt to recover damages on a joint and several basis. Second, allowing Winn-Dixie to opt out nearly a year after the opt-out deadline would negatively impact the judicial system's interest in enforcing clear deadlines. *See*, *e.g.*, *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003) ("[T]he legal system would groan

11

under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced—where every missed deadline was the occasion for the embarkation on extensive trial and appellate litigation to determine the equities of enforcing the bar."). Further, Winn-Dixie waited until after the Court entered a final judgment dismissing its claims to argue excusable neglect. Dkt. 1415. Even though Winn-Dixie has not properly filed a Rule 60(b) motion, Winn-Dixie is requesting relief from a final judgment—relief that is strictly limited to protect the interests of parties and the judicial system. *See Mendez v. Republic Bank*, 725 F.3d 651, 657 (7th Cir. 2013) ("To balance the availability of post-judgment relief with finality interests, the availability of Rule 60(b) relief is limited in several ways."). Regardless of whether Winn-Dixie acted in good faith, it has not shown that it is entitled to the extraordinary relief it seeks.

## IV. WINN-DIXIE'S BREACH OF CONTRACT CLAIMS ARISING FROM FIELDALE'S ALLEGED PARTICIPATION IN AN ANTITRUST CONSPIRACY ARE BARRED

Winn-Dixie's final argument that its breach of contract claim is outside the scope of the Settlement Agreement is also incorrect. The Settlement Agreement releases "all existing and potential claims that were raised or could have been raised in this Action *arising from the conduct alleged in the Action*, in conformity with Section I(B)(25)." Settlement Agreement § II.B.1. (emphasis added). The covenant not to sue likewise provides that settling plaintiffs will not attempt "to establish liability against the Settling Defendant for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type *arising out of the Released Claims, including, without limitation, seeking to recover damages relating to any of the Released Claims*." *Id.* at § II.B.2 (emphasis added). The definition of "Released Claims" in the Settlement Agreement provides that the term does not include certain claims "based on" issues that could exist between the parties separate from the antitrust allegations in the case, such as claims based on "product defect or breach of warranty" or "breach of contract." *Id.* at § I.B.25.

Here, even though Winn-Dixie has reclassified certain of its claims against Fieldale as "breach of contract," the claims are still exclusively based on the allegation that "Fieldale manipulated the Georgia Dock price" and "Plaintiffs paid more than they otherwise would have for broiler chickens from Fieldale under the supply agreements with Fieldale." FAC ¶ 582. In other words, Winn-Dixie's breach of contract claims arise "from the conduct alleged in the Action" and "seek to recover damages relating to . . . the Released Claims." Settlement Agreement § II.B.1 and 2. These claims are not based on a contractual violation in the first instance; they would first require Winn-Dixie to prove an illegal antitrust conspiracy. Because Winn-Dixie's claims arise directly from Released Claims and seek to recover damages related to the Released Claims, they fall within the scope of the release and covenant not to sue. *See*, *e.g.*, *Williams v. Gen. Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 273–74 (7th Cir. 1998) "The weight of authority holds that a federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.'") (citation, emphasis, and alterations omitted).

Any different result would be nonsensical. Fieldale bargained to release its liability to direct purchasers arising from this antitrust litigation. Fieldale—and the Settlement Agreement— also recognizes that direct purchasers could potentially have claims related to their purchases from Fieldale that do not arise from the allegations in this case, such as warranty or contract issues regarding things like product weight, delivery time, and product quality. Claims based on and arising from these contractual issues are excluded from the Settlement Agreement. Winn-Dixie's argument, in contrast, would allow every single direct purchaser of chicken from Fieldale to participate in the Settlement Agreement and then bring a breach of contract claim

13

regarding the exact same conduct and damages based on the exact same alleged Sherman Act violations.

That interpretation of the Settlement Agreement would buy Fieldale more lawsuits, not peace. It is not what the parties intended. Winn-Dixie should not be allowed to make an end-run around the Settlement Agreement by slapping a "breach of contract" heading on its Sherman Act claims. Winn-Dixie's breach of contract claims arise directly from the Released Claims, and they are covered by the release and covenant not to sue.

## CONCLUSION

Winn-Dixie has never provided any explanation for its failure to meet the Court's October 15, 2018 opt-out deadline, and Winn-Dixie does not dispute any of the basic facts set out in Fieldale's motion to dismiss. Fieldale's motion should be granted in full. As set out above, the arguments that Winn-Dixie makes in its Response are also all wrong. Winn-Dixie did not express any intention to opt out before the October 15, 2018 deadline, it did not move to expand the deadline under Rule 6(b)(2) by attempting to prove excusable neglect, and it fails to now establish excusable neglect either for failing to miss the deadline or for apparently failing to realize that it missed the deadline. Winn-Dixie is bound by the Settlement Agreement and Final Approval Order, and its claims against Fieldale should be dismissed in full.


Dated: September 20, 2019                          /s/ Max Marks_____
                                                   B. Parker Miller (*pro hac vice*)
                                                   Valarie C. Williams (*pro hac vice*)
                                                   Max Marks (*pro hac vice*)
                                                   Anthony T. Greene (*pro hac vice*)
                                                   ALSTON & BIRD LLP
                                                   1201 West Peachtree Street
                                                   Atlanta, GA 30309
                                                   (404) 881-7000 (T)
                                                   (404) 881-7777 (F)
                                                   parker.miller@alston.com

valarie.williams@alston.com
max.marks@alston.com
tony.greene@alston.com

R. Brent Hatcher, Jr. (*pro hac vice*)
SMITH, GILLIAM, WILLIAMS & MILES PA
301 Green Street NW, Suite 200
Gainesville, GA 30501
(770) 536-3381 (T)
(770) 535-9902 (F)
bhatcher@sgwmfirm.com

Brendan J. Healey (ARDC No. 6243091)
BARON HARRIS HEALEY
225 West Washington, Suite 2200
Chicago, IL 60606
(312) 741-1030 (T)
bhealey@bhhlawfirm.com

*Attorneys for Fieldale Farms Corporation*

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned, an attorney, hereby certifies that on September 20, 2019, he filed Fieldale's **REPLY MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE FINAL APPROVAL ORDER AND DISMISS ALL CLAIMS BROUGHT BY PLAINTIFFS WINN-DIXIE STORES, INC. AND BI-LO HOLDINGS, LLC** with the Clerk of the Court via the ECF system, which automatically served all registered participants.

                           /s/ Max Marks

16