# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

---

*IN RE BROILER CHICKEN ANTITRUST LITIGATION*

This Document Relates To:

Certain DAP Actions Listed in Footnote 1[1]

Case No. 1:16-cv-08637

---

## CASE FARMS DEFENDANTS' REPLY IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

Dated: September 20, 2019

/s/ Joseph D. Carney

Joseph D. Carney (0010886)
JOSEPH D. CARNEY & ASSOCIATES, LLC
1540 Peach Drive
Avon, OH 44044
Tel: (440) 289-5161/Fax: (866) 270-1221

Daniel R. Karon (6207193)
KARON LLC
700 West St. Clair Ave., Suite 200
Cleveland, OH 44113
Tel: (216) 622-1851/Fax: (216) 241-8175

Thomas M. Staunton (6217164)
Daniel M. Feeney (6224893)
MILLER SHAKMAN LEVINE & FELDMAN LLP
180 North LaSalle Street, Suite 3600
Chicago, IL 60601
Tel: (312) 263-3700/Fax: (312) 263-3270

Deborah A. Klar
D. KLAR LAW
2934 1/2 Beverly Glen Circle, Suite 761
Bel Air, California 90077-1724
Tel: (310) 858-9500

*Attorneys for Defendants Case Foods, Inc., Case Farms, LLC and Case Farms Processing, Inc.*

---

[1]    This Reply relates to the following Actions: *Associated Wholesale Grocers, Inc. v. Koch Foods, Inc., et al.*, 18-cv-6316; *Associated Grocers of the South, Inc., et al. v. Tyson Foods, Inc., et al.*, 18-cv-4616; *Ahold Delhaize USA, Inc. v. Koch Foods, Incorporated, et al.*, 18-cv-5351; *The Kroger Co., et al. v. Tyson Foods, Inc., et al.*, 18-cv-4534; *Shamrock Foods Company, et al. v. Tyson Foods, Inc., et al.*, 18-cv-7284; *Checkers Drive-In Restaurants, Inc. v. Tyson Foods, Inc., et al.*, 19-cv-1283; United Supermarkets, LLC, et al. v. Tyson Foods, Inc., et al., 18-cv-6693; *BJ's Wholesale Club, Inc. v. Tyson Foods, Inc., et al.*, 18-cv-5877; *Darden Restaurants, Inc. v. Tyson Foods, Inc., et al.*, 19-cv-0530; *Jetro Holdings, LLC v. Tyson Foods, Inc., et al.*, 18-cv-4000; *Maximum Quality Foods, Inc. v. Tyson Foods, Inc., et al.*, 18-cv-6673; *Sherwood Food Distributors, L.L.C., et al. v. Tyson Foods, Inc., et al.*, 19-cv-0354; *Winn-Dixie Stores, Inc., et al. v. Koch Foods, Inc., et al.*, 18-cv-0245; *Save Mart Supermarkets v. Tyson Foods, Inc., et al.*, 19-cv-2805; and *Conagra Brands, Inc., et al. v. Tyson Foods, Inc., et al.*, 19-cv-2190.

Defendants Case Farms, LLC, Case Farms Processing, Inc. and Case Foods, Inc. ("Case") responds to the Opposition of the Direct Action Plaintiffs ("Plaintiffs") to the Case Request for Judicial Notice and Incorporation by Reference ("Case RJN") as follows.

### A. The Court Should Consider The Production Numbers In Case Exhibits A-C Under The Incorporation By Reference Doctrine.

Plaintiffs assert that the Court properly cannot consider Exhibits A, B and C to the Case RJN because these exhibits are not "contracts" or "disclosure" documents. Plaintiffs assert that the incorporation by reference doctrine does not apply to the content of these Exhibits. Case disagrees. [2]

Incorporation-by-reference is a judicially created doctrine that considers some documents as if they were incorporated into the complaint where the content of the document provides a basis for the allegations in the complaint. *See Bogie v. Rosenberg* (7th Cir. 2013) 705 F.3d 603, 609 (In considering a motion to dismiss under Rule 12(b)(6), district courts are free to consider documents referenced in the pleading if they undermine and are central to the claim.) *See, also Bell Atlantic v. Twombly*, 550 U.S. 544, 568 (taking notice of full contents of published articles referenced in complaint); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690-91(7th Cir. 2012) (explaining the doctrine but resolving the case on other grounds).

"The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims." *Khoja v. Orexigen Therapeutics, Inc.* 899 F.3d 988, 1002 (9th Cir. 2018) *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615(2019). *See also Brownmark Films*, 682 F.3d at 690 ("if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the

---

[2] Except as otherwise noted, Case uses the same abbreviated references in this Memorandum as in its original Motion (referred to herein as the "Op. Br.").

court without converting defendant's 12(b)(6) motion to a motion for summary judgment"); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir.2002) ("the concern is that, were it not for [incorporation by reference], the plaintiff could "evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.").

No case cited by the Plaintiffs limits the application of the incorporation by reference doctrine, as the Plaintiffs suggest, to publications that a plaintiff admits "control the outcome of Plaintiffs' antitrust claims." R. 3057 at 4. Also, contrary to the Plaintiffs assertion, the incorporation by reference doctrine is not limited to contracts or "disclosure documents." *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) (stating, without deciding the issue, that "we think it makes eminently good sense to extend the doctrine to cover" audio-visual works). For example, in a recent Ninth Circuit decision in which the Court clarified the parameters for using the incorporation by reference doctrine, the Court found proper the incorporation by reference of an FDA Report where the complaint relied on historical references included in that report. *See Khoja,* 899 F.3d at 1003. Here, the same result should obtain for at least the following reasons.

First, Plaintiffs admit they "cite to select WATT publications as support for some of their allegations." *See* Response at 4. Given that admission, the Plaintiffs do not (and cannot) claim the WATT production numbers on which allegations in the DAP Complaints rely are not accurate. For that reason, Plaintiffs cannot credibly assert that the WATT broiler production numbers for later years are not accurate. [3]

---

[3] Plaintiffs' assertion in note 3 of the Response, that Case is seeking to incorporate different WATT reports than the ones they cite to in their Complaints, cannot be reconciled with the manner in which the information in WATT broiler production reports is archived and made available on the WATT PoultryUSA website. The WATT broiler production reports are published annually in the following year's March edition of WATT PoultryUSA. For example, in March 2010, the 2009 numbers were published. The monthly magazines, however, cannot be accessed on the WATT website indefinitely.

Second, the WATT reports are important and central to several of Plaintiffs' allegations. For example, Plaintiff Ahold cites the WATT report containing the same production numbers in support of their allegations that (a) Broiler production only slightly increased in 2008 ; (b) the Broiler industry, when measured by production, consolidated between 1980 and 2008; and (c) the original defendants controlled almost 90% of the Broiler market in 2015.  *See* R.2099  ¶¶ 15, 136-138, 247, 256, 321.  *See also* R.2090, ¶¶ 174, 184, 271, 356, 357, 411, 522, 523; R.2094, ¶¶  7, 203, 213, 282; R. 2124, ¶¶  209, 218, 293, 355 and 356; R.2111, ¶¶ 7, 207, 217, 290, 352 and 352; R. 2264, ¶¶ 8, 211, 224, 293, 357 and 358; R. 2034, ¶¶ 7, 209, 218, 293, 3556 and 356; R. 2129, ¶¶ 7, 209, 218, 293, 355 and 356; R. 2105, ¶¶ 7, 197, 207, 276, 513 and 514;  R. 2133, ¶¶ 7, 242, 251, 326, 388 and 389; R.1 (Case No. 1:19-cv-02805), ¶ 7, 195, 205, 274, 509 and 510; R. 2107, ¶ 240; R. 2050, ¶¶ 7, 209, 218, 293, 355 and 356, R. 2114, ¶¶ 7.207, 217, 290, 352 and 353 and R.2140, ¶¶ 17, 233, 244, 320, 341-342 and 381.

---

Today, for example, the earliest edition of the WATT PoultryUSA magazine available on the WATT website is dated January 2012.  *See* www.wattpoultryusa-digital.com/archives.  After the WATT magazines are removed from the WATT site, WATT continues to make available for purchase a composite report which contains the WATT broiler production reports for multiple years.  *See* R.2855-1 ¶ 2.  Case Exhibit B is an example of that ten-year composite report.  Case recently purchased Exhibit B from the WATT website.  *Id.*  Case Exhibit B includes the numbers for WATT broiler production reports for 2008 through 2018.  Assuming WATT's practice of removing monthly publications from its site has been consistent, if Plaintiffs obtained the 2007 and 2008 WATT broiler production numbers on which their Complaints rely in 2016, it is unlikely they were able to obtain the 2007 production numbers from the March 2008 magazine.  By 2016, the March 2008 magazine should have been removed from the WATT website.  Accordingly, the only reliable source of the 2007 WATT broiler production data would have been in a composite exhibit like Exhibit B which shows the WATT broiler production numbers for a 10-year period.  Case is requesting that the Court incorporate by reference the 2008 through 2016 WATT broiler production data in Exhibit B, which is the information that should have been received by Plaintiffs on the document from which they accessed the 2007 broiler production data.

As discussed in greater detail below, Case is asking the Court to consider the same ready to cook production data Plaintiffs cited and relied on in their Complaints.  Plaintiffs cannot make use of one portion of those reports where it helps them and at the same time refuse to acknowledge other portions they do not like.  *See Tierney*, 304 F.3d at 738.  Plaintiffs have relied on the WATT production data to make its case; they cannot run away from parts of that data they do not like because that data undermines their central claim against Case.

**B.** **Plaintiffs' Arguments Against**
**Incorporation By Reference Should Be Rejected.**

Plaintiffs recognize the numbers in the WATT Reports demonstrate that their claims against Case are not plausible. But, Plaintiffs appreciate they cannot dispute the accuracy of the numbers in the WATT Reports. Accordingly, they vehemently argue against incorporation by reference but at the same time do not dispute the accuracy of the WATT numbers – walking a thin line. Not surprisingly, those arguments are not supported either by the facts or the law. Accordingly, Plaintiffs' arguments against incorporation by reference properly should be rejected. Each is discussed below.

First, contrary to the Response at 8, Case is not arguing that "anything published by WATT and everything those publications contain" may be incorporated by reference. Case is simply asking the Court to consider the same production numbers that appear in the annual March edition of WATT PoultryUSA on which Plaintiffs rely to support key allegations in their Complaints.

The production numbers for each year are different. However, having relied on the 2007 and 2008 production numbers to support a key averment that "the [broiler] industry's total weekly ready-to-cook (RTC) production at 724.05 million pounds [in 2008 was] just slightly more than the 723.71 million RTC pounds per week reported at the end of 2007" (*see, e.g.*, Associated Wholesale Grocers Compl. at ¶ 411), Plaintiffs do not and cannot now reasonably question the methods of collection and calculation used by WATTs to report these important numbers. Plaintiffs' theory is that an alleged conspiracy from 2007 to 2016 led to a decrease in production of Broilers relative to the historic 3% annual growth rate in the industry. *See, e.g.*, R.2164 ¶8; Op. at 26-27, 32. They use the 2007-2008 WATT data to support that theory.

Second, Plaintiffs wrongly assert that the Court has addressed whether the RTC production numbers in the annual WATT broiler production reports are properly considered under the incorporation by reference doctrine (and judicial notice). Plaintiffs' assertion (*see* Resp. at 2)

4

ignores the key distinction between the DOA data discussed in the November 20, 2017 Opinion ("Op.") (*see* Op. at 31) and the WATT broiler production data now at issue.  As demonstrated above, Plaintiffs do not and cannot reasonably question WATT's methods of collection and calculation.  The Court declined to take judicial notice of or otherwise consider the DOA numbers because Plaintiffs questioned the DOA's methods of calculation and collection. *Id.*

Based on the foregoing, (a) Plaintiffs concede that they relied on the WATT reports as the basis for some of their allegations; (b) Plaintiffs do not and cannot dispute the WATT reports are accurate; and (c) the WATT reports help show that the Plaintiffs' theory does not fit Case. Accordingly, the Court should consider the information in Exhibits A through C pursuant to the incorporation-by-reference doctrine.

### C. The Court Should Take Judicial Notice Of the Information In Exhibits A through J.

#### 1. Evidence That Plaintiffs Had Access To Specific Information From Which To Fashion Suitable Complaints Is "Legally Relevant" To The Court's Context-Specific 12(b)(6) Inquiry Mandated By *Iqbal*.

As explained in the Case RJN, pursuant to Federal Rule of Evidence 201(b), the Court should take judicial notice of the information in Case Exhibits A through J, discussed in and authenticated by the Carney Declaration, because the information in these documents is part of the record of this proceeding and can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  R. 2855, ¶¶ 9-12.  The Plaintiffs assert the Court should not consider Exhibits D through J because they are "legally irrelevant" to the Case Motion to Dismiss.  R. 3057 at 7.  According to Plaintiffs, these Exhibits are "legally irrelevant" because "[t]he 12(b)(6) standard does not change if the complaint at issue is a timely filed amended complaint, or if discovery has been taken in the case."  *Id.*  Case disagrees.  The Plaintiffs' assertion is a non-sequitur and ignores the clear mandate of *Iqbal and Twombly,* as interpreted and applied by the Seventh Circuit.  *See McReynolds v. Merill Lynch & Co., Inc.*, 694

F.3d 873, 885 (7th Circ. 2012) ("the plausibility standard calls for a 'context-specific' inquiry that requires the court 'to draw on its judicial experience and common sense.' [Citation omitted]"; and *West Bend Mutual Insurance Company v. Schumacher*, 844 F.3d 670, 675-76 (7th Cir. 2016) ("We have interpreted the standard announced by the Supreme Court as requiring 'the plaintiff . . . give enough details about the subject-matter of the case to present a story that holds together.")

Evaluating whether a complaint alleges a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Given the high cost and burden that antitrust litigation imposes on parties and the courts, the Supreme Court has directed lower courts to conduct a searching review in addressing motions to dismiss antitrust claims. '[I]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery ... but quite another to forget that proceeding to antitrust discovery can be expensive.' *Twombly*, 550 U.S. at 558 (internal citation omitted)." *New York Independent Contractors Alliance Inc. v. Consolidated Edison Company of New York, Inc.* (S.D.N.Y., Feb. 27, 2017, No. 16 CV 01172 (KMW)) 2017 WL 773600, at *3, *appeal withdrawn sub nom. New York Independent Contractors Alliance Inc. v. Consolidated Edison Company of New York, Inc.* (2d Cir., July 11, 2017, No. 17-864) 2017 WL 4350147. *See also*, *Nexstar Broadcasting, Inc. v. Granite Broadcasting Corp.* (N.D. Ind., Sept. 15, 2011, No. 1:11-CV-249) 2011 WL 4345432, at *2 ("Discovery concerns are particularly great in antitrust litigation, where discovery 'can quickly become enormously expensive and burdensome to defendants.'")

Consistent with the Supreme Court's admonition, courts recognize that for purposes of a "context specific" inquiry, "imprecise pleading is particularly inappropriate" where the plaintiffs necessarily have access, even without discovery, to documents and reports that provide specific information from which to fashion a suitable complaint. *See, e.g.*, *Pension Ben. Guar. Corp. ex*

*rel. St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Inv. Management Inc.* (2d Cir. 2013) 712 F.3d 705, 723; *International Brotherhood of Teamsters Union Local No. 710 Pension Fund v. Bank of New York Mellon Corporation* (N.D. Ill., Feb. 6, 2014, No. 13 C 1844) 2014 WL 497737, at *5 (Where court finds plaintiff did not have access to information, motion to dismiss denied) and *Sapia v. Home Box Office, Inc.* (S.D.N.Y., Dec. 17, 2018, No. 18 CIV. 1317 (CM)) 2018 WL 6985223, at *8 ("imprecise pleading is particularly inappropriate . . . where the plaintiffs necessarily have access, without discovery . . . to specific information from which to fashion a suitable complaint.").  These decisions make clear that whether plaintiffs necessarily have access -- ***with or without discovery*** -- to specific information from which to fashion a suitable complaint, is legally relevant to the Court's context-specific inquiry mandated by *Iqbal* and *Twombly*.

Exhibits A through J demonstrate that through (i) discovery and (ii) publicly available information which supports allegations in the DAP Complaints, Plaintiffs have had access to specific information from which to fashion suitably detailed complaints against Case.  While the Plaintiffs proffer various excuses why the Court should not take judicial notice of the Case Exhibits, as explained below, Plaintiffs do not and cannot credibly assert that the facts in the Case Exhibits describing the extensive discovery and publicly available information regarding all aspects of Case's business during the relevant time, available to Plaintiffs before they filed their amended complaints, are reasonably disputed.

      **2.**      **The Court Should Take Judicial Notice of the Numbers In Exhibits A-C Sourced from Reports that Both Parties Rely On and the Accuracy Of Which Is Not In Dispute.**

Pursuant to Rule 201(b), the Court should take judicial notice of the Broiler production numbers Case cites in Exhibits A-C because that information falls squarely within that rule – it "is not subject to reasonable dispute because it . . .  can be accurately and readily determined from

sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also In the Matter of Lisse*, 905 F.3d 495, 496 (7th Cir. 2018) (Easterbrook, J.) (evidence not subject to reasonable dispute is appropriate for judicial notice); *Physicians Healthsource, Inc. v. Allscripts Health Solutions, Inc.* 244 F. Supp. 3d 716, 718 (N.D. Ill. 2017) (taking judicial notice of the fact of a previous arbitration and the award entered therein).

As discussed above, Plaintiffs rely on the production numbers in the WATT reports to make their case. Thus, (a) both parties agree that the source of those numbers (the WATT reports) cannot reasonably be questioned; and (b) the numbers themselves are not in dispute. Plaintiffs do not (and cannot) argue that the information in those reports is wrong or even capable of multiple interpretations. They do not assert that Case's calculations based on the WATT data (Ex. C) are wrong or disputed in any way. Accordingly, these documents fall squarely within Rule 201(b).

These Case Exhibits also fall squarely within Rule 201(b) because they fall within the Seventh Circuit's definition of an "adjudicative fact". More specifically, the Seventh Circuit has described "adjudicative facts" as "those to which the law is applied in the process of adjudication." *U.S. v. Arroyo*, 310 Fed. Appx. 928, 929 (7th Cir. 2009).

### 3. The Court Should Take Judicial Notice of Information About Discovery In Case Exhibits D-J.

Exhibits D through J demonstrate that through discovery, Plaintiffs have had access to specific information from which to fashion suitable complaints against Case. While Plaintiffs proffer various excuses why the Court should not take judicial notice of Case Exhibits D through J, the Plaintiffs do not and cannot credibly assert that the facts in these Exhibits describing the extensive discovery regarding all aspects of Case's business during the relevant time, available to Plaintiffs before they filed their amended complaints, are reasonably disputed. As Plaintiffs know the Court is aware, the class and DAP plaintiffs (collectively "plaintiffs") have been

engaged in discovery in connection with this matter since at least February 2017 and originally were required to complete non-expert discovery by June 2019.

Exhibits D through J show (i) the number of depositions conducted by plaintiffs in the Broiler Litigation as reported by the plaintiffs' vendor, Veritext (Exhibit D); (ii) the contents of the subpoena and request for production of documents to Case (Exhibits E and F); (iii) the volume of documents produced by Case to plaintiffs in response to that subpoena and request for production and the timing of Case's productions to plaintiffs (Exhibits H-J); and (iv) that Agristats was ordered to produce voluminous evidence in response to a third-party subpoena, as reflected in Exhibit G.

Pursuant to Rule 201(b), Exhibits D through J are appropriate for judicial notice. The information in these Case Exhibits (i) cannot reasonably be disputed; and (ii) are simply the facts of this particular case. Accordingly, Case Exhibits D through J squarely fall within the purview of Rule 201(b).

### D. Plaintiffs' Arguments Against Judicial Notice Should Be Rejected.

In addition to wrongly asserting that the Case Exhibits are "legally irrelevant" to its Motion to Dismiss (*see* discussion in Point B.1, *supra*) Plaintiffs cite case law in their Response in support of their argument that none of the Case Exhibits are a proper subject of judicial notice. But the cases on which Plaintiffs rely to support their argument are generally inapposite.

For example, in *Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th Cir. 2008), the Seventh Circuit held that Rule 201 should be interpreted according to its plain terms and rejected a request for judicial notice of a deed where the deed's authenticity was disputed. In *Daniel v. Cook County*, 833 F.3d 728, 742-43 (7th Cir. 2016) a similar result obtained. In that case, the court correctly declined to take judicial notice of facts in an order entered in another lawsuit where the express language of the Order afforded the parties the right to contest the facts therein. Finally,

*Independent Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012) affirmed judicial notice of the existence of the pleadings and orders in related cases for purposes of explaining the undisputed procedural history of a matter. The Court did not, as Plaintiffs suggest in their Response at 5, hold that it is inappropriate to take judicial notice of any facts contained in any documents outside the pleadings.

Also inapposite are the cases Plaintiffs cite in footnote 5 of the Response. Plaintiffs cite those decisions for the broad proposition that data on market share is not appropriate for judicial notice. But the language of the decisions does not support that broad proposition. Those cases either involved situations where the parties *did* dispute the contents of the documents proffered, *B&R Supermarket, Inc. v. MasterCard International Inc.*, 17-CV-02738 (MKB) (JO), 2018 WL 4445150 (E.D.N.Y. Sep. 18, 2018); *Allen v. Farmers of America, Inc.*, 748 F. Supp. 2d 323 (D. Vt. 2010); or the party did not proffer *any* evidence in support of the facts it requested the Court to judicially notice. *Wilcox Industries Corp. v. Hansen*, 279 F.R.D. 64, 70 (D.N.H. 2012). Neither is the case here.

## CONCLUSION

For the reasons stated above and in the Case Request for Judicial Notice and Incorporation by Reference, Case requests that in connection with its pending Motion to Dismiss, the Court (i) consider Case Exhibits A through C pursuant to the incorporation by reference doctrine and/or take judicial notice of the numbers in Case Exhibits A through C; and (ii) take judicial notice of Case Exhibits D through J.

## CERTIFICATE OF SERVICE

I, Thomas M. Staunton, hereby certify that a true and correct copy of the foregoing Case Farms Defendants' Reply in Support of Request for Judicial Notice and Incorporation By Reference was electronically filed with the Clerk of the Court using the CM/ECF system on September 20, 2019, which constitutes service on counsel of record who are registered electronic filing users.


Dated: September 20, 2019                    */s/ Thomas M. Staunton*
                                           Thomas M. Staunton