UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 16 C 8637<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Fieldale Farms is one of a number of industrial producers of chicken meat that are defendants in this case. At the outset of the case, the Court appointed interim counsel for three putative plaintiff classes of purchasers of chicken meat: (1) direct purchasers; (2) indirect purchasers; and (3) end-user consumers. Fieldale settled with the direct purchaser class, and the Court approved the agreement in accordance with Federal Rule of Civil Procedure 23. Despite the settlement agreement, direct purchaser plaintiffs Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC (together "Winn-Dixie") filed an amended complaint against Fieldale. Fieldale has filed a motion to enforce the settlement agreement and dismiss Winn-Dixie's claims. R. 2670. That motion is granted.

**Analysis**

**I.    Estoppel**

Winn-Dixie argues first that Fieldale is equitably estopped from seeking to enforce the final approval order because Winn-Dixie "reasonably relied on the unequivocal statement . . . in the email from the Claims Administrator that the opt out notice letter was timely and certainly that it was not untimely." R. 3064 at 5. The

"opt out notice letter" Winn-Dixie references is a letter it sent to the administrator, post-marked October 16, 2018, asking to be excluded from the class. *See* R. 1369-5 at 42-44. The "unequivocal statement" Winn-Dixie contends it relied on was sent on October 25, 2018, and stated in full:

> Your Request for Exclusion from In re Broiler Chicken Antitrust Litigation has been received and processed for the entities named in your request. However, your Request for Exclusion mentions affiliates and subsidiaries that were not specifically identified. Please provide a comprehensive list of all affiliates and subsidiaries for whom you are requesting exclusion. Without specifically identifying each related entity, including name and address, the Request for Exclusion may not be applied to the related entities. Please forward that requested information by November 8, 2018. Please note that the Court may determine the validity of any Request for Exclusion.

R. 3064-1 at 2. Four days later, the administrator filed papers with the Court in support of the settlement's approval. *See* R. 1369. The administrator rejected Winn-Dixie's opt out request because it was post-marked after the October 15, 2018 deadline. *See* R. 1369-4 at 6 (¶ 17); R. 1369-5 at 46. Winn-Dixie did not object to its exclusion from the preliminary opt out list, nor did it object to its exclusion from the final opt out list, *see* R. 1408, nor at the time the Court enter the final approval order, *see* R. 1414.

The Court disagrees with Winn-Dixie's characterization of the administrator's email as an "unequivocal statement . . . that the opt out notice letter was timely and certainly that it was not untimely." The email says nothing about timeliness. Since

the administrator's statement was not a statement regarding timeliness, Winn-Dixie could not have reasonably relied on it for that issue.

Winn-Dixie baldly states that because of the administrator's October 25 statement, Winn-Dixie "had no reason to review the [Class's] motion for final approval of the [settlement] to see if they were included as opt outs." R. 3064 at 5. This is a facially absurd argument. In general, the Court assumes that parties to a case have knowledge of the documents filed in the case, at least those pertaining directly to their role in the case, and especially those documents with the potential to limit or foreclose a party's right to recover in the case. Furthermore, in this instance in particular, while the administrator stated that Winn-Dixie's request had been "received and processed," the administrator also warned Winn-Dixie that the request was not complete for all mentioned entities and that any final determination of the validity of Winn-Dixie's request was the Court's. There can be no question that Winn-Dixie was aware that the administrator's role was to make recommendations to the Court, and that an order of the Court would be necessary to permit Winn-Dixie to opt out of the settlement. To the extent the administrator's October 25 email made any findings regarding the validity of Winn-Dixie's opt out request (which it did not), it was unreasonable for Winn-Dixie to rely on the administrator's preliminary conclusions when it knew that further process before the Court was necessary. The administrator filed papers rejecting Winn-Dixie's opt out request on October 29, 2018 and November 15, 2018, and the Court approved the settlement on November 16,

2018. Winn-Dixie's decision to ignore these filings was unreasonable and undertaken at its own peril.

Even if Winn-Dixie reasonably relied on the administrator's October 25 statement, Winn-Dixie has not explained why the administrator's statement should work to equitably estop Fieldale from seeking to enforce the settlement. Estoppel requires misrepresentation by the party against whom estoppel is asserted. *See Vaughn v. Speaker*, 533 N.E.2d 885, 890 (Ill. 1988); *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992). Winn-Dixie does not contend it relied on any statement by Fieldale, let alone a misrepresentation. The Court addresses below whether the administrator's October 25 email is sufficient to demonstrate that Winn-Dixie properly opted out or that the Court should equitably extend the deadline to opt out. But since no statement or action by Fieldale is at issue here, equitable estoppel is an inapposite argument.

## II. Opt Out and Extension

Winn-Dixie argues that that it should be permitted to proceed with its claims because: (1) it properly opted out of the class; and (2) if it didn't properly opt out, the circumstances of its failure to do so satisfy the "excusable neglect" exception under Federal Rule of Civil Procedure 6(b).

### 1. Proper Opt Out

Winn-Dixie cannot seriously argue that it properly opted out by the October 15, 2018 deadline. *See* R. 994 at 3. True, Winn-Dixie sent an opt out request to the settlement administrator. But that request was post-marked October 16, 2018—one

4

day after the deadline. Winn-Dixie cites cases holding that a "reasonable indication" of intent to opt out is sufficient even if the party fails to formally opt out. *See* R. 3064 at 6. But Winn-Dixie took *no* action at all with respect to the pending settlement prior to the deadline. Winn-Dixie's individual complaint filed before the Court approved the class notice plan on June 22, 2018 (R. 994) does not suffice. *See In re VMS Sec. Litig.*, 1992 WL 203832, at *3 (N.D. Ill. Aug. 13, 1992) ("The pendency of an individual action does not excuse a class member from filing a valid request for exclusion.") (citing cases); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 4181732, at *5 (N.D. Cal. Aug. 20, 2014) (holding that "filing an individual case prior to the opt-out period and continuing to litigate that case through the opt-out period is insufficient") (citing cases). And Winn-Dixie does not argue that its lack of action is somehow a reasonable indication of intent to opt out. Thus, Winn-Dixie did not properly opt out.

### 2. Excusable Neglect

Next, Winn-Dixie argues that the Court should excuse its failure to meet the opt out deadline. Federal Rule of Civil Procedure 6(b)(1)(B) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Courts have applied this standard to class settlement opt out deadlines. *See Adelson v. Ocwen Fin. Corp.*, 621 Fed. App'x 348, 351 (7th Cir. 2015) ("If Adelson wants now to exclude herself from the class settlement, she would need to take different procedural steps. For example, she might consider a motion

under Rule 6(b) to extend the time to opt out."); *In re Brand Name Prescription Drugs Antitrust Litig.*, 171 F.R.D. 213 (N.D. Ill. 1997). The Supreme Court has held that the determination of what neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Whether to extend a time period due to excusable neglect is within a district court's discretion. *See Murphy v. Eddie Murphy Prods., Inc.*, 611 F.3d 322, 324 (7th Cir. 2010) (affirming a district court's denial of a motion to extend time under Rule 6(b) "using a deferential abuse of discretion standard").

Winn-Dixie argues that its delay in seeking to opt out "was at worst two days after the deadline," so "there can be no serious contention that [it was] seeking to gain a tactical advantage or waiting to see if the adjudication was favorable to the class before deciding whether or not to opt out." R. 3064 at 10. This argument, however, ignores Winn-Dixie's subsequent conduct. Winn-Dixie failed to object when it was not included on the preliminary or final opt out lists. *See* R. 1369; R. 1408. Nor did it object when the Court entered the final approval order. *See* R. 1414. Moreover, Winn-Dixie never objected when Fieldale did not answer its complaint. The first time Winn-Dixie expressed its desire to continue as an individual plaintiff since sending its letter to the settlement administrator two days after the deadline, was when it filed an

amended complaint on April 22, 2019—six months after the Court entered the final order approving the settlement on November 16, 2018. This is the relevant delay, and it is not insignificant.

More important, Winn-Dixie has not identified any reason at all for this delay. "An unaccountable lapse is not excusable neglect." *Prizevoits v. Indiana Bell Tel. Co.*, 76 F.3d 132, 133 (7th Cir. 1996). Neither is "inattentiveness to the litigation." *Matter of Plunkett*, 82 F.3d 738, 742 (7th Cir. 1996). Since Winn-Dixie has provided no reason for its delay, the Court can only presume that Winn-Dixie simply failed to pay attention to its status in this case.[1] This kind of neglect is not excusable, so the Court will not extend the opt out deadline for Winn-Dixie.

## III. Scope of the Settlement

Lastly, Winn-Dixie argues that even if it is bound by the settlement agreement, its claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment are outside the scope of the claims released by the settlement agreement. *See* R. 3064 at 12. In support, Winn-Dixie cites the settlement agreement's definition of "Released Claims" which excludes "any claim based on . . . breach of contract." R. 447-2 at 6 (§ I.B.25). But the settlement agreement also releases "all existing and potential claims that were raised or could have been raised in the Action arising from the conduct alleged in the Action," *id.* at 16 (§ II.B.1), and bars the settling plaintiffs from attempting "to establish liability against the Settling

---

[1] Winn-Dixie doesn't and can't argue that it didn't have notice of the settlement approval process since it is represented by counsel who receives electronic notice of filings in this case.

7

Defendant for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of the Released Claims," *id*. (§ II.B.2). Fieldale argues that these provisions serve to bar breach of contract claims that arise out of the alleged price fixing conduct at issue in this case.

There is no dispute that Winn-Dixie's breach of contract claim arises out of the same price fixing allegations that underlie Winn-Dixie's antitrust claims. *See* R. 2143 ¶¶ 585-90. Winn-Dixie does not argue otherwise, or even address this point in its brief. Rather, Winn-Dixie simply argues that the settlement agreement carves out *any* breach of contract claim. But that is an unreasonable interpretation of the settlement agreement. *See In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 664 (7th Cir. 2010) ("We will not bend the language of a contract to create an ambiguity when none exists, but neither will we follow a literal interpretation when [to do so] would lead to an unreasonable or absurd result."). The terms of the agreement unambiguously evince an intent to release any claim arising out of Winn-Dixie's price fixing allegations. Winn-Dixie's "breach of contract" claim is based entirely on those same price fixing allegations. In other words, without the price fixing allegations, there is no "breach of contract" claim. Although the settlement agreement carves out "breach of contract" claims, it only does so for such claims that are independent of, and do not arise out of, the price fixing allegations. Thus, because Winn-Dixie's breach of contract claim (as well as its claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment) arise out of its price fixing

8

allegations, those claims are within the scope of the settlement agreement, and must be dismissed.

## Conclusion

Therefore, Fieldale's motion to enforce the settlement agreement against Winn-Dixie and to dismiss Winn-Dixie claims [2670] is granted.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin  
United States District Judge

Dated: December 9, 2019