UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To: All Actions | Case No. 1:16-cv-08637<br><br>Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM ORDER**

I.

Direct Purchaser Plaintiffs' Motion for Protective Order to Protect Class Members from Misleading Solicitations [ECF 2331] is granted in part as to Affiliated Foods Plaintiffs' counsel – The Coffman Firm, Kaplan Fox & Kilsheimer, LLP, and Williams Montgomery & John, Ltd. (together "AFI Plaintiffs' Counsel") – and denied as to counsel for all other so-called Direct Action Plaintiffs ("DAPs"). For the reasons discussed below, AFI Plaintiffs' Counsel immediately shall cease and desist from sending to any named class representative or member of the putative or any certified Direct Purchaser Plaintiff ("DPP") litigation or settlement class, other than their then-existing clients, any unsolicited communications, including without limitation solicitations for legal representation, relating to this consolidated *In re Broiler Chicken Antitrust Litigation*, No. 16-cv-8637 (N.D. Ill.). Any such future communications by AFI Plaintiffs' Counsel must be approved by the Court until further court order. Nothing in this Order prevents AFI Plaintiffs' Counsel from communicating with any person or entity about this litigation if such person or entity contacts AFI Plaintiffs' Counsel without having first been solicited to do so directly or indirectly by such counsel.

The Court is not yet persuaded that a corrective notice is required because of AFI Plaintiffs' Counsels' past communications that are the subject of the DPPs' Motion or, if such a notice is necessary, what it should say. *See* Section III of this Order below. Among other things, this Motion has been pending for some time, and the Court does not know whether there have been communications by AFI Plaintiffs' Counsel in addition to those referenced in the Motion. In addition, even if such a notice is necessary, the Court is not presently inclined to allow DPPs' counsel to send such a corrective notice to putative DPP class members directly. It may be that any corrective notice should come from AFI Plaintiffs' Counsel or should be filtered through UniPro as have other communications. If necessary, after the involved counsel have met and conferred as required in Section III of this Order, the Court will set a hearing to address whether a corrective notice is required, and if so, what such a notice should say and the mechanism by which it will be sent. The portion of DPPs' Motion requesting corrective notice relief therefore is denied without prejudice.

II.

As a threshold matter, it is undisputed that "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). This authority extends to the court's ability to limit communications between parties and potential or putative class members. *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748, 759 (7th Cir. 2000). Although in many cases, a court is concerned with communications between putative class counsel or defendants and putative or actual class members, there is no reason the rationale of these cases does not apply to communications to putative or actual class members from counsel for opt-out or so-called "direct action plaintiffs." *Gulf Oil*, 452 U.S. at 100; *Piekarski v. Amedisys Ill., LLC*, 4

F. Supp. 3d 952, 955 (N.D. Ill. 2013) ("[D]istrict courts have restricted communications with potential class members not only by plaintiffs but also by defendants, as well as communications before a class is certified.").

Courts may limit communications in these situations "only if the order is 'based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential for interference with the rights of the parties.'" *Burrow v. Sybaris Clubs Intl., Inc.*, 2014 WL 5310525, at *2 (N.D. Ill. 2014), citing *Gulf Oil*, 452 U.S. at 104. "The party seeking to limit communications . . . bears the burden of showing that the nonmovant has engaged in coercive, misleading, or other abusive communications with the putative class." *Id.*, citing *Piekarski*, 4 F. Supp. 3d at 955.

The Court finds the solicitations and communications by AFI Plaintiffs' Counsel referenced in DPPs' Motion are, in material respects, slanted, misleading, confusing, and incomplete for many of the reasons argued by the DPPs. The March 2018 solicitation letter on the letterhead of The Coffman Law Firm [ECF 2331-3] misleadingly states that the purpose of the court status conference on February 7, 2018, was "to determine the most efficient manner in which to assimilate the newly filed direct action plaintiff (DAP) cases" when, in fact, that was not the only or even the primary purpose of the conference. *See* Agenda for February 7, 2018 Status Conference [ECF 707] and Transcript of Conference [ECF 718]. The letter is a "hard sell" designed to convince putative DPP class members to opt out of the putative class and hire AFI Plaintiffs' Counsel to represent them, and it makes it seem as if such a decision must be made quickly. AFI Plaintiffs' Counsel defend their use of the phrase "the train is leaving the station" in this letter as somehow paraphrasing the Court's use of that term during the February 7 status conference. In this context, though, the phrase reads as a high-pressure tactic designed to force a

3

quick decision to opt out of the class by the recipients of the letter. *See Piekarski,* 4 F. Supp. 3d at 955 ("Of particular concern to courts is whether 'a party has . . . attempted to discourage class members from participating in the class.'").

The entire tenor of AFI Plaintiffs' Counsels' letter is to discourage companies from remaining in the DPP class action and to become clients of AFI Plaintiffs' Counsel. It puts forth a one-sided and slanted explanation of the benefits of opting out of the putative class action and becoming a "direct action" plaintiff without articulating any of the burdens, risks, or responsibilities of filing one's own case. It proffers what appears to be an extremely early estimate of potential recoverable damages as if it is authoritative because it comes from "our economic consultant" without any explanation of the basis for such speculation or its relevance for an individual direct purchaser in a case in which damage calculation is likely to be complicated, nuanced, and layered. The letter poses the question "[i]f your DAP competitors get paid, why shouldn't you?" without mentioning that direct purchasers also can get paid if the class action is successful. And it confusingly references a "damages period" of 2008 to 2016 in the body of the letter while the draft retention letter included with the packet only asks for the dollar amount of Chicken purchases going back to 2012.

The April 2018 letter to Unipro members [ECF 2940-1] is more factual but still incomplete and misleading in material respects. It mentions that the DPP class action "has [not] been certified to date" with no context to explain why that is the case, omits any mention of the conditional certification of a DPP settlement class in connection with the Fieldale Farms settlement and, relatedly, does not mention that UniPro members are included in the DPP settlement class even if they do nothing. This letter also recommends that companies that purchased less than $50 million in Chickens between 2008 and 2016 not opt out of the putative class action while the next

4

communication in May 2019, discussed below, seemingly raises that threshold to $100 million without any explanation. Stated another way, the May 2019 letter says AFI Plaintiffs' Counsel is not interested in representing anyone with less than $100 million in purchases during the relevant time period when in April 2018 they were willing to take on clients with at last $50 million in purchases, leaving as at least a potentially open question the status of a company that purchased, say, $70 million in Chickens during the relevant time.

The May 2019 letter to UniPro Membership [ECF 2331-2] is the last one referenced in DPPs' Motion. Although AFI Plaintiffs' Counsel appear to disclaim to some extent ownership or knowledge of this "Case Update" from UniPro's chief executive officer, the bulk of the letter is captioned "Case Update provided by the Attorneys." AFI Plaintiffs' Counsel acknowledge providing such a case update to UniPro and knowing that it was disseminated. [ECF 2937] at 12, n. 12. This letter conspicuously ignores the existence of the class action other than with a back-handed reference to the AFI Plaintiffs' Counsels' filing of the "first *non-class*, direct action purchaser case" (emphasis added) and, as noted above, it particularly solicits companies that purchased at least $100 million during the 2008-2016 relevant time period to contact those lawyers by name. As noted above, there is no mention of the options for putative class members who purchased less than that dollar amount of Chickens but more than the $50 million in purchases referenced in the April 2018 communication or the realistic pros and cons of opting out of the class.

These communications are misleading, slanted, and potentially confusing to putative class members. Although AFI Plaintiffs' Counsel characterize the putative class as primarily consisting of large sophisticated Chicken purchasers with in-house counsel, there is no evidence that all of the people or entities that received these unsolicited solicitations of legal representation from AFI

Plaintiffs' Counsel can be characterized in this way. Moreover, even for sophisticated parties, unsolicited communications for legal representation like these present a real danger of undermining the legitimate purposes of Rule 23 class actions by, among other things, downplaying the costs, risks, and obligations for companies that opt-out of the putative class to pursue their own claims including the cost and responsibility to participate diligently and on a timely basis in discovery. Based on the Court's observations, not all of the companies that have become DAPs in this case appear to fully appreciate that responsibility in terms of responding to written discovery on a timely and complete basis. Dissemination of misleading information about the status of the litigation, the role of the class and non-class plaintiffs in the case, the economic threshold at which it may make sense to pursue an individual non-class claim, and the period for which class and non-class members need to retain purchase and other records relevant to the computation of damages only complicates the management of a large case that presents a host of other case management, proof, and trial challenges.

Other DAP counsel in this case are careful not to endorse the aggressive tactics of AFI Plaintiffs' Counsel in filings that urge the Court at least not to grant DPPs any relief against those counsel or their clients based upon the conduct of AFI Plaintiffs' Counsel. One group labels itself "Uninvolved DAP Counsel" to distinguish themselves from the AFI Plaintiffs' Counsel who are the main target of DPPs' Motion. *See* Uninvolved DAP Counsels' Opposition to Direct Purchaser Plaintiffs' Motion for Protective Order to Protect "Class Members" [ECF 2930] at 1 and 4, n.5 ("The DPPs' attempt to blur the distinction between the three firms that were party to the disputed communications and Uninvolved DAP Counsel cannot make up for the absence of evidence that the latter did anything justifying the extraordinary relief requested."). Another group is careful to "take no position regarding the propriety of the communications that prompted the Class to file its

Motion." *See* DAP Law Firms Kenny Nachwalter, P.A.'s and Sperling & Slater, P.C.'s Opposition to DPPS' Motion for Protective Order [ECF 2938] at 3 and 2 ("Whatever the merits of [DPPs'] concern about other firms, the Class's Motion has no cognizable application to the Kenny Nachwalter and Sperling & Slater firms or our clients."). Still another group starts off by saying it "is not one of the firms that are the subject of the Motion and has not been accused of engaging in anything remotely improper." *See* Bilzin Sumberg's Response to Direct Purchaser Plaintiffs' Motion for Protective Order [ECF 2936] at 1.

This is precisely the kind of situation in which a court is justified in imposing limits upon the ability of certain parties and their counsel to communicate with putative class members, particularly with aggressive solicitations of legal representation covering claims that are represented to reach into the hundreds of millions or even billions of dollars. As the Supreme Court said in *Gulf Oil*, U.S. at 101, "[a]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. . . . In addition, such a weighing – identifying the potential abuses being addressed – should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *See also Williams*, 204 F.3d at 759. The Court has taken into consideration all of these factors and finds that they militate in favor of the relief the Court is granting today.

The record here is clear. The communications by or on behalf of AFI Plaintiffs' Counsel are misleading, slanted, and confusing for the reasons discussed above. The Court has weighed the need for the limitation imposed by this Order against the potential interference with the rights of the AFI Plaintiffs and AFI Plaintiffs' Counsel to communicate with putative class members

about this litigation and finds the balance strongly tips in favor of regulating future communications in light of the misleading and incomplete communications AFI Plaintiffs' Counsel sent or caused to be sent in the past and the high stakes involved in this litigation for the parties as well as their lawyers. Regulating such communications in the future as this case emerges from almost a year-long stay occasioned by a United States Department of Justice criminal antitrust investigation will curb the potential for abuse of the process of moving this case to and through trial as expeditiously as possible. Importantly, the Court is not prohibiting any and all communications to putative DPP class members by AFI Plaintiffs' Counsel; it is only prohibiting communications by those lawyers that have not first been vetted by the Court so that whatever information is communicated is fair, balanced, and not slanted, misleading, incorrect, or confusing. And nothing in the Court's Order infringes upon any counsel's communications with his or her then-existing clients.

The Court acknowledges that a litigation class has not yet been certified so that interim co-lead and liaison counsel for the putative DPP class do not necessarily have an attorney-client relationship with all of the absent members of the putative DPP class to whom AFI Plaintiffs' Counsel sent or caused to be sent the solicitations and communications described above. *Resnick v. Am. Dental Ass'n,* 95 F.R.D. 372, 376 and n.6 (N.D. Ill. 1982) (Shadur, J.). DPPs point out, however, that at least one named class representative received a letter from or on behalf of AFI Plaintiffs' Counsel and that communication with and solicitation of a represented party would infringe upon an existing attorney-client relationship. *Id.* Certification of settlement classes for one-off settlements with some Defendants does not change the relationship of DPPs' counsel with the broader uncertified putative DPP class though it may change the equation as to the relationship between DPPs' counsel and the members of the conditionally certified settlement classes. This

Order, however, is not premised solely on AFI Plaintiffs' Counsel interfering with an attorney-client relationship. It is, rather, also justified by the Court's broad supervisory authority over class actions whether putative or certified in whole or in part under the Federal Rules of Civil Procedure, including without limitation Rules 23(d) and 83(b), as has been recognized by the courts for decades. *Gulf Oil*, 452 U.S. at 99-100, citing *Coles v. Marsh*, 560 F.2d 186, 189 (3rd Cir.), *cert. denied* 434 U.S. 985 (1977). *See also* Manual for Complex Litigation (Fourth) 2010 at § 21.12.

III.

As to the matter of a corrective notice, the Court needs more information. The first solicitation by AFI Plaintiffs' Counsel flagged by DPPs occurred in March 2018 and the last in May 2019. The Court does not know whether there have been other communications while this Motion (which was fully briefed in August 2019) has been pending. The Court recognizes that AFI Plaintiffs' Counsel offered to facilitate the sending of a corrective notice at some point, but those discussions apparently fell by the wayside. DPPs ask that any corrective notice include a statement that putative class members who signed up with AFI Plaintiffs' Counsel can rescind their retention agreements, but that would seem to apply, for example, at least directly only to companies that have retained AFI Plaintiffs' Counsel and not to every company that received a solicitation. The Court also needs more information about why interim co-lead and liaison counsel for the putative DPP class need a list of everyone to whom AFI Plaintiffs' Counsels' solicitations were sent, and whether that information already has been provided to them. *See* Affiliated Foods Plaintiffs' Memorandum of Law in Opposition to the Direct Purchaser Plaintiffs' Motion for Protective Order [ECF 2937] at 3 ("[DPPs] also conveniently fail to disclose to the Court in their motion that AFI Plaintiffs' counsel agreed to give them the mailing list. . . .").

The Court also has some trepidation about allowing putative class counsel to blanket the putative class with a pre-certification notice as opposed to requiring AFI Plaintiffs' Counsel to circulate a corrective notice using the same means they used to communicate with putative class members in the past. In addition, although the Court does not necessarily believe that notices of certain partial settlements cured all the problems with AFI Plaintiffs' Counsels' past solicitations, they may have provided enough information as a practical matter such that, combined with the passage of time since the last AFI Plaintiffs' Counsels' solicitation, there may not be a need for another communication at least to the entire putative class.

The Court would like interim co-lead and liaison counsel for the putative DPP class to discuss these issues with AFI Plaintiffs' Counsel and then file a supplemental memorandum concerning whether a corrective notice still is necessary and, if so, the mechanism for any such notice. That filing also should discuss who should be required to pay for any corrective notice that is required. The Court then will give AFI Plaintiffs' Counsel an opportunity to respond. If after they meet and confer about the subject, counsel can file a joint submission, then the Court encourages them to do so. The Court is reluctant to set a date for these filings knowing that all parties are now engaged in an expedited effort to come up with a case management plan that will allow this case to be tried in the fall of 2021. [ECF 3334, 3358.] The Court would prefer to allow counsel for the involved parties to work out a schedule for themselves with a suggestion that co-lead and liaison counsel for the putative DPP class file whatever they want to file (or that a joint submission be filed) by the end of January 2020. If no final decisions have been made by that time, the Court directs involved counsel at least to file a short status report by that date indicating where they stand on these issues and when any filing(s) can be expected.

IV.

Accordingly, for all these reasons, Direct Purchaser Plaintiffs' Motion for Protective Order to Protect Class Members from Misleading Solicitations [ECF 2331] is granted in part, denied in part, and denied without prejudice in part as to any corrective notice.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: December 27, 2019