# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | Case No. 1:16-cv-08637 |
| | The Honorable Thomas Durkin |
| This Document Relates To: | |
| *Winn-Dixie Stores, Inc., et. al. v. Koch Foods, Inc., et. al.* | Case No. 1:18-cv-00245 |

**DEFENDANT FIELDALE FARMS CORPORATION'S RESPONSE IN OPPOSITION TO WINN-DIXIE PLAINTIFFS' MOTION FOR ENTRY OF FINAL JUDGMENT UNDER RULE 54(B) REGARDING THEIR CLAIMS AGAINST FIELDALE FARMS**

**INTRODUCTION**

Winn-Dixie warns that failure to enter final judgment and allow an immediate appeal of this Court's dismissal order will result in "extensive inefficiencies and a waste of judicial resources." Dkt. 3390 at 4. But Winn-Dixie's suggestion that an immediate appeal would be more efficient is built on speculation after speculation. Winn-Dixie argues that on appeal "the Seventh Circuit *could* reverse the dismissal order," that a reversal on appeal after entry of final judgment in the entire case "*could* require discovery, expert discovery and possibly an additional trial" between Winn-Dixie and Fieldale, and that if the appellate court reverses the dismissal order before a final judgment on the entire case, then Winn-Dixie's claims "*could* likely still be able to be litigated" along with the rest of the case. Dkt. 3390 at 1-2 (emphasis added). Winn-Dixie ignores the much more likely result that an immediate appeal of the dismissal order would be a waste of time. It would, for example, be mooted by a ruling in favor of Fieldale at summary judgment or at trial. They also ignore the likely outcome that the Seventh Circuit will affirm this Court's well-reasoned dismissal order.

On top of that, Winn-Dixie fails to acknowledge the amount of time, money, and other resources that would be spent by the Seventh Circuit, by Fieldale, and even by Winn-Dixie itself, on their supposedly "efficient" appeal. It's not like Fieldale is out of this consolidated case. The EUCPs and the DAPs are actively prosecuting claims against Fieldale. They are represented by some of the best attorneys in the country on claims that totally overlap with Winn-Dixie's claims. Winn-Dixie simply did not bring a separate and unique case against Fieldale; it copied-and-pasted complaints that have already been filed, and it has been along for the ride rather than driving discovery. There is no reason to think that the case against Fieldale or the evidence that is developed will progress any differently with Winn-Dixie's claims out of the case. That is, Winn-

1

Dixie will not be prejudiced in any way by waiting instead of being allowed to immediately start a costly and unnecessary procedural maneuver that is doomed to failure.

As Judge Easterbrook noted nearly three decades ago, "[e]ven when claims are separate, an appeal ought not follow as of course. The possibility that developments in the litigation may moot a claim suggests that appellate resolution be deferred." *Horn v. Transcon Lines*, 898 F.2d 589, 592 (7th Cir. 1990). "A significant possibility that the claim will go away . . . makes improvident the parties' and the judges' investment of resources to produce a speedy appellate ruling." *Id.* The fact is that "[c]ourts may not accommodate attorneys just because they want to appeal immediately; a separate judgment under Rule 54(b) multiplies the costs of litigation for opposing parties and for the appellate court, and these interests deserve thoughtful consideration." *Id*. As set out below, Winn-Dixie's motion should be denied.

## LEGAL STANDARD

"Rule 54(b) . . . empowers a district court to 'direct entry of a final judgment as to one or more, but fewer than all, claims or parties,' but only if the court 'expressly determines that there is no just reason for delay.'" *Brown v. Columbia Sussex Corp.*, 664 F.3d 182, 186 (7th Cir. 2011). "Rule 54(b) departs from the norm of one appeal per case, a norm that prevents duplicative and time-consuming appeals," *Horn*, 898 F.2d at 592, and "trial judges do not have carte blanche to certify partial dispositions for immediate appeal under Rule 54(b)." *Jack Walters & Sons Corp. v. Morton Bldg., Inc.*, 737 F.2d 698, 701 (7th Cir. 1984). Rule 54(b) judgments are generally disfavored because they allow piecemeal appellate litigation. *Gibson v. Am. Cyanamid Co.*, No. 07-C-864, 2010 U.S. Dist. LEXIS 79197, at *5 (E.D. Wis. Aug. 2, 2010) (*citing Cont'l Cas. Co. v. Anderson Excavating & Wrecking Co.*, 189 F.3d 512, 518 (7th Cir. 1999)).

"A proper Rule 54(b) order requires the district court to make two determinations: (1) that the order in question was truly a 'final judgment,' and (2) that there is no just reason to delay the appeal of the claim that was 'finally' decided." *Gen. Ins. Co. of Am. v. Clark Mall Corp.*, 644 F.3d 375, 379 (7th Cir. 2011). The order "must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Ind. H. B. R. Co. v. Am. Cyanamid Co.*, 860 F.2d 1441, 1444 (7th Cir. 1988) (*quoting Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 7 (1980)). Fieldale does not dispute that the dismissal order was in fact a "final judgment" as contemplated under Rule 54(b). Thus, the only remaining question is whether there is any just reason for delay.

The Supreme Court has provided guidance to district courts in conducting the analysis of "no just reason for delay":

> Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims. The function of the district court under the Rule is to act as a dispatcher. It is left to the sound judicial discretion of the district court to determine the appropriate time when each final decision in a multiple claims action is ready for appeal. This discretion is to be exercised in the interest of sound judicial administration. Thus, in deciding whether there are no just reasons to delay the appeal of individual final judgments in a setting such as this, a district court must take into account *judicial administrative interests* as well as *the equities involved*. Consideration of the former is necessary to assure that application of the Rule effectively preserves the historic federal policy against piecemeal appeals.

*Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) (emphasis added). "[B]ut certification should be granted only if there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Gibson v. Am. Cyanamid Co.*, 2010 U.S. Dist. LEXIS 79197, at *6 (E.D. Wis. Aug. 2, 2010) (*citing McAdams v. McCord*, 533 F.3d 924, 928 (8th Cir. 2008)). It is the moving party's burden to demonstrate that it will "suffer unjust

3

harm from the normal delay pending resolution of all claims in the case." *Id*. (*citing Wright v. Kosciusko Med. Clinic, Inc.*, 791 F. Supp. 1327, 1334 (N.D. Ind. 1992).

In addition, "the Seventh Circuit has noted that the following (non-exclusive) factors are relevant to this analysis:

> (1) The relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Stewart v. Evanston Ins. Co.*, 2017 U.S. Dist. LEXIS 194140, at *2-3 (N.D. Ill. Nov. 27, 2017) (*citing Bank of Lincolnwood v. Fed. Leasing, Inc.*, 622 F.2d 944, 949 (7th Cir. 1980)).

## ARGUMENT

### I. A Final Judgment and Appeal Would be Less Efficient, Not More

As the *Curtiss-Wright* Court instructed, district courts considering a Rule 54(b) final judgment order must take into account judicial administrative interests as well as the equities involved. Here, the entry of such an order would unquestionably increase the judicial resources involved. *See Horn*, 898 F.2d at 592 ("[A] separate judgment under Rule 54(b) multiplies the costs of litigation for opposing parties and for the appellate court."). To date, the presence of Winn-Dixie's claims in this action have demanded relatively little attention from the parties and the judicial system as a whole. This case was being competently prosecuted by the classes and certain direct action plaintiffs before Winn-Dixie brought its individual claims. The case continued to be prosecuted competently by the same parties after Winn-Dixie brought its claims. And the case is continuing forward just the same as it always has now that Winn-Dixie's claims against Fieldale have been dismissed.

The only incremental judicial resources that have been devoted to Winn-Dixie claims thus far have related to its failure to engage with this case and meet deadlines. In August 2018, Magistrate Gilbert had to deal with Winn-Dixie's failure to engage in the discovery process, and he instructed Winn-Dixie that "if you're AWL on this, either because you have other things to do or your client isn't particularly interested in responding to discovery and won't communicate with you, then that's a problem. . . . [M]y impression from reading everything is that [the defendants] were trying pretty hard to get you to the table, to get your client to respond, and long periods of time went by when you weren't responding." Dkt. 1188, Transcript of August 24, 2018 Hearing, at 92:4-20. And, of course, the Court has addressed Fieldale's Winn-Dixie-specific motion to dismiss and now Winn-Dixie's current motion because Winn-Dixie failed to meet the opt-out deadline but nevertheless insisted on attempting to pursue released claims against Fieldale.

Winn-Dixie's request for an immediate appeal would exponentially increase the resources that the judicial system and Fieldale would have to devote to Winn-Dixie's individual claims. Winn-Dixie overlooks the added cost of involving the appellate court at this early stage, instead focusing on the speculative added cost that might arise if they cannot appeal right now. Even worse, Winn-Dixie does not accept the reality of this case but instead imagines a theoretical case in which, after appeal, Fieldale and Winn-Dixie would need to "reengage in and complete fact discovery, expert discovery, [and] summary judgment." Dkt. 3390 at 2.

That's not accurate. This is a consolidated case, and the plaintiffs are seeking discovery on a consolidated basis. Fieldale already verified that its document production was complete well over a year ago. Fieldale has also already responded to all pending interrogatories—none of which were served individually by Winn-Dixie. And five Fieldale witnesses have already been

5

deposed. Winn-Dixie did not take the lead at any of those depositions. Indeed, its counsel asked a grand total of only seven questions. Winn-Dixie's discovery-related efficiency arguments ignore the realities of this case and its own conduct (or lack thereof) in it.

Winn-Dixie's arguments also take for granted that the remaining plaintiffs with claims against Fieldale will not only survive summary judgment, but also prevail at trial. Plaintiffs' claims consist of a sprawling nationwide conspiracy theory that alleges that more than twenty chicken producers—some large, some small; some in Georgia, some in California; some who grow conventional chickens, others like Fieldale who specialize in high-cost, premium chicken—all conspired together for almost a decade across what is alleged to be virtually every facet of their businesses. Claims that grand require a whole lot of facts to prove. Thus far, Fieldale has not seen the glue that Plaintiffs can use to hold their tower of loose allegations together, much less the super glue that would be needed. Fieldale does not believe it is likely that all claims against all defendants will survive summary judgment, if any claims do.

But Fieldale does not need all defendants to win to get out of this case. As previewed in Fieldale's individual motion to dismiss filed early in this case, Fieldale is a specialty producer of shell-to-table, 100% no-antibiotic-ever chicken that has also been certified by the American Humane Association. *See* Dkts. 281 and 369. Plaintiffs have already acknowledged that their claims are about commodity chicken, and they voluntarily excluded other types of high-cost specialty chicken like halal, kosher, free-range, and organic birds. While this Court believed that Plaintiffs' claims against Fieldale could survive on the pleadings, the Court agreed that "Plaintiffs' theory of the case is strongly dependent upon the allegation that the Broiler market functions as a commodity market," and "Fieldale's argument that anti-biotic free chicken meat is analogous to these excluded categories has facial appeal based on a trip to the grocery store" and

6

"might have merit." Dkt. 541 at 52-54. Sometimes a common-sense approach is the right approach. At summary judgment, Fieldale will prove that the specialty chicken it produces does not belong in this case, and any appeal now would be a complete waste of everybody's time, effort, and money.

Finally, this Court can consider the "frivolity of" the claims Winn-Dixie will be making on appeal. *Stewart v. Evanston Ins. Co.*, 2017 U.S. Dist. LEXIS 194140, at *2-3 (N.D. Ill. Nov. 27, 2017) (*citing Bank of Lincolnwood v. Fed. Leasing, Inc.*, 622 F.2d 944, 949 (7th Cir. 1980)). The Court acted well within its discretion both in finding that Winn-Dixie failed to opt out and that good cause did not exist to allow Winn-Dixie to do so more than a year after the deadline. Winn-Dixie fails to even acknowledge that any appeal of the Court's judgment—interlocutory or otherwise—will be evaluated under an abuse of discretion standard. *See*, *e.g.*, *Prizevoits v. Indiana Bell Tel. Co.*, 76 F.3d 132, 134 (7th Cir. 1996) ("Since it would in our judgment have been an abuse of discretion for the district court to have found excusable neglect in this case, there is no need to remand for further consideration of the issue."). No reasonable argument can be made that this Court abused its discretion, and Winn-Dixie does not even try to make one. This Court should not burden the Seventh Circuit with an appeal that Winn-Dixie has not even articulated under the correct standard of review in its request for this Court to allow one.

## II. The Equities Favor Denying Winn-Dixie's Motion

In weighing the equities, the burden is on Winn-Dixie to show that it will endure some hardship or injustice if it is not able to appeal right now, *see Gibson*, 2010 U.S. Dist. LEXIS 79197, at *6, but Winn-Dixie failed to present any such evidence. This is not surprising because Winn-Dixie won't be injured if its motion is denied. Winn-Dixie will not be deprived of an opportunity to appeal the Court's dismissal order—it will have such an opportunity when the

7

litigation is fully resolved. On a real-world level, Winn-Dixie will not even be deprived of its ability to prosecute its claims against Fieldale—identical claims are being prosecuted by other Direct Action Plaintiffs that are represented by highly-qualified and capable counsel. Winn-Dixie is not losing out on the opportunity to develop any evidence that was or now is being sought.

It's also not unfair for Winn-Dixie to enjoy a share of the DPP settlement rather than be allowed to belatedly opt out and pursue claims individually. Winn-Dixie was well-represented as a member of the DPP class. Not a single direct purchaser objected to the settlement, and it was approved by this Court. Given the frivolity of the arguments that Winn-Dixie intends to make on appeal, it would appear that its request for an immediate appeal is merely a procedural maneuver to keep expired claims alive. That's not fair to Fieldale.

It was Winn-Dixie's burden to show that there is "no just reason for delay" of its appeal. *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980). It has failed to meet its burden. Here, an immediate appeal would be unjust, and there is no good reason to allow it. Winn-Dixie's hail-Mary attempt to gain some settlement leverage on claims that have already been dismissed with prejudice should be denied.

## CONCLUSION

Granting Winn-Dixie's motion for a final judgment and allowing them to appeal this Court's dismissal order will trigger a time-consuming and costly process that may ultimately be entirely unnecessary. Winn-Dixie failed to provide any indication of how or even whether it will be injured by having to wait to appeal the dismissal order. Therefore, this Court should deny Winn-Dixie's motion.

Dated: February 10, 2020 /s/ Max Marks  
B. Parker Miller (*pro hac vice*)  
Valarie C. Williams (*pro hac vice*)  
Max Marks (*pro hac vice*)  
Anthony T. Greene (*pro hac vice*)

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000 (T)
(404) 881-7777 (F)
parker.miller@alston.com
valarie.williams@alston.com
max.marks@alston.com
tony.greene@alston.com

Brendan J. Healey
MANDELL MENKES LLC
One North Franklin, Suite 3600
Chicago, IL 60606
(312) 251-1006 (T)
(312) 759-2189 (F)
bhealey@mandellmenkes.com

R. Brent Hatcher, Jr. (*pro hac vice*)
SMITH, GILLIAM, WILLIAMS & MILES PA
301 Green Street NW, Suite 200
Gainesville, GA 30501
(770) 536-3381 (T)
(770) 535-9902 (F)
bhatcher@sgwmfirm.com

*Attorneys for Fieldale Farms Corporation*

## CERTIFICATE OF SERVICE

      The undersigned, an attorney, hereby certifies that on February 10, 2020, he filed Fieldale's **DEFENDANT FIELDALE FARMS CORPORATION'S RESPONSE IN OPPOSITION TO WINN-DIXIE PLAINTIFFS' MOTION FOR ENTRY OF FINAL JUDGMENT UNDER RULE 54(B) REGARDING THEIR CLAIMS AGAINST FIELDALE FARMS** with the Clerk of the Court via the ECF system, which automatically served all registered participants.

                                                 /s/ Max Marks