**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 16 C 8637<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Discovery in this case has been a massive undertaking. Magistrate Judge Gilbert has devoted countless hours to its management, and he appointed a special master to assist with electronic discovery issues. *See* R. 491. With the special master's assistance, the parties reached many agreements concerning the manner and scope of discovery, which the Court entered as an order. *See* R. 459. Document discovery sought by the three putative classes is largely complete. Fact discovery remains open until December 18, 2020, for the taking of depositions and for any reasonable and necessary supplemental document production that may be appropriate. According to Defendants, nearly eight million documents have been reviewed and produced to Plaintiffs to date.

On June 27, 2019, the Court imposed a partial stay of discovery to accommodate a grand jury investigation initiated by the Antitrust Division of the Department of Justice. Before the DOJ revealed the existence of the grand jury investigation, Plaintiffs had made a general request for documents produced to other law enforcement agencies, including the DOJ, and for documents produced in any governmental investigation. Plaintiffs have since sought specifically the documents

produced as part of the grand jury's investigation. The DOJ and Defendants have moved for a protective order barring these discovery requests, as well as barring parties from asking questions of deponents that would likely reveal the scope of, direction of, or matters occurring before the grand jury. R. 3432; R. 3434. Those motions are granted.

## Analysis

Federal Rule of Criminal Procedure 6(e)(2)(B) protects from disclosure "a matter occurring before the grand jury." The Seventh Circuit has held that "Rule 6(e) is applicable in a general way to both documents and testimony before the grand jury." *Matter of Grand Jury Proceedings, Miller Brewing Co.*, 687 F.2d 1079, 1090 (7th Cir. 1982). Indeed, the Seventh Circuit has specifically contemplated that a "general request for 'all documents collected or received in connection with the investigation of antitrust violations . . .,' for example, would be in effect a disclosure of the grand jury proceedings; the documents are significant because they were before the grand jury." *United States v. Stanford*, 589 F.2d 285, 291, n.6 (7th Cir. 1978); *see also In re Sulfuric Acid Antitrust Litig.*, 2004 WL 769376, at *2 (N.D. Ill. Apr. 9, 2004) (barring generalized document requests for grand jury documents). Furthermore, the Supreme Court and Seventh Circuit have "consistently held that a strong showing of particularized need is required before any grand jury materials are disclosed." *Lucas v. Turner*, 725 F.2d 1095, 1101 (7th Cir. 1984) (citing *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983)).

Here, although Plaintiffs characterize their request as for only relevant "pre-existing business documents," they go on to argue that this includes *all* of the documents Defendants have produced to the grand jury. Plaintiffs have not made any showing of a particularized need. Indeed, it is difficult to see how Plaintiffs could make such a showing considering they have already received eight million documents in response to much narrower requests. *See In re Sulfuric Acid*, 2004 WL 769376, at *6 ("[O]ne might wonder how the plaintiffs would show a need for a general request for everything given to the Government, when they have served at least 65 other (presumably) tailored requests seeking information relevant to the claims and defenses in the case.").

Moreover, Plaintiffs have not made any argument that the grand jury documents could be produced without disclosure of the direction of the grand jury investigation. Since document discovery is already largely completed in this case, production of the grand jury documents would not be combined with any other significant document productions from Defendants, and thus would starkly reveal the entire universe of the DOJ's investigation in a discrete package. Plaintiffs have not suggested a way to prevent this revelation, likely because it is not a realistic possibility. But even if there is a practical solution to that problem, Plaintiffs could still easily learn the identities of document custodians identified by the DOJ by filtering out documents from custodians who were not included in the discovery protocols in this case. This is of particular concern to the Court, because learning the identities of the people identified in the DOJ investigation is tantamount to an

express disclosure of the investigation's direction. Therefore, compelling responses to Plaintiffs' document requests would disclose a "matter occurring before the grand jury" in violation of Rule 6, and the protective order sought in these motions must be granted. This reasoning serves equally to bar any party from asking deponents anything about the grand jury proceedings.

Even if Rule 6 was not a sufficient basis to bar the document requests at issue here, the Court would bar the requests as a matter of case management. As an initial matter, Plaintiffs' document requests are facially overbroad. As Judge Gilbert held in an earlier decision regarding one of the requests at issue on this motion, "reflexive production of documents previously provided to governmental entities is not appropriate." R. 489 at 11 (*In re Broiler Chicken Antitrust Litig.*, 2017 WL 4417447, at *5 (N.D. Ill. Sept. 28, 2017)). Rather, documents are discoverable only if they are relevant to a claim or defense in the case. Other courts have reached similar findings with respect to similar document requests. *See Oseman-Dean v. Ill. State Police*, 2011 WL 6338834, at *8-9 (N.D. Ill. Dec. 19, 2011) ("The court agrees with defendants that [requests for documents "sent to any government agency"] are far too broad and overly burdensome, individually and collectively, in relationship to the narrow nature of plaintiff's claims here."); *Perius v. Abbott Labs.*, 2008 WL 3889942, at *3-5 (N.D. Ill. Aug. 20, 2008) (granting motion for protective order against "generalized discovery regarding the DOJ and [internal] investigations" for lack of relevance to claims and defenses, noting that "[t]o the extent such evidence would have any 'tangential' relevance," proportionality considerations outweigh such discovery);

4

*Midwest Gas Servs., Inc. v. Indiana Gas Co.*, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) ("The plaintiffs in this Cause have not shown that the fact that any particular document was produced by the defendant to the D.O.J. . . . is relevant to the subject matter of this Cause. . . . The plaintiffs' counsel must do their own work and request the information they seek directly.").

Plaintiffs argue that the DOJ's contention that there is "substantial overlap between the civil and criminal matters" demonstrates that the documents produced to the DOJ are relevant to the claims in this case. But "relevance" under Rule 26 is a relative concept. It is defined with reference to "the needs of the case, considering . . . the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). And in this case, the parties reached detailed agreements regarding the scope of relevance, most notably with respect to time period, custodians, and search terms. These agreements were entered as an order of the Court on August 15, 2017, *see* R. 459, meaning the parties have been conducting discovery according to the terms of those agreements for two and a half years. Notably, those agreements were reached after Plaintiffs issued the first two discovery requests at issue on this motion, meaning that Plaintiffs knowingly agreed to limit the scope of those requests. Plaintiffs do not argue that these agreements are now inadequate. Plaintiffs' desire to compel the documents produced to the DOJ is therefore contrary to the discovery agreements and orders governing this case. Although it may be reasonable to assume

there will be some supplemental document production as the case proceeds, nothing of the magnitude of what Plaintiffs are now requesting was anticipated before the DOJ intervened in the case.

Furthermore, Defendants have already produced a massive number of documents to Plaintiffs. And despite the insinuation in Plaintiffs' briefs, the Court is unaware of any evidence that Defendants have failed to comply with the discovery protocols in place in this case. Of course, it is highly likely that Defendants produced documents to the DOJ that they did not produce to Plaintiffs. But that is not evidence that Defendants have withheld documents from Plaintiffs in violation of the discovery protocols. Rather, it is simply an indication that the DOJ either asked for, or had the authority to compel production of, documents that Plaintiffs did not. In any event, Plaintiffs cannot argue that they have not had a fair opportunity to take discovery in this case. They have received more than eight million documents in response to their requests based on protocols Plaintiffs participated in designing. *See In re Sulfuric Acid*, 2004 WL 769376, at *6 ("We do note that the plaintiffs have claimed that their general request is justified on the ground that it will allow them to 'pick up' remaining documents not captured by the 65 other requests. We are skeptical about the need for an omnibus request that essentially asks for production of 'all relevant documents,' whether it is the only request served or comes in the midst of 65 more tailored requests."). The fact that some or even all of the documents produced to the DOJ are relevant to Plaintiffs' claims but are not responsive to the discovery requests as

implemented by the protocol agreements, is not a basis to usurp those agreements this far into the case.

## Conclusion

Therefore, the DOJ's and Defendants' motions [3432] [3434] are granted. This decision is in no way intended to imply that supplemental document production is foreclosed. Document production should continue as it has under Judge Gilbert's supervision.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: March 4, 2020