**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION<br><br>This Document Relates To: ALL CASES | No. 1:16-cv-08637<br><br>Hon. Thomas M. Durkin<br>Magistrate Judge Jeffrey T. Gilbert |

**<u>CLASS PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR
ENTRY OF AN ORDER REGARDING REMOTE DEPOSITIONS
OF CERTAIN CATEGORIES OF WITNESSES</u>**

## TABLE OF CONTENTS

ARGUMENT ...................................................................................................................1

    A.   **Defendants Fail to Justify What Amounts to a Minimum of a Five-Month Extension of a Stay of Deposition Discovery of Defendants** ....................................................1

      1.  **It is neither unreasonable nor infeasible to prepare for and take Rule 30(b)(6) depositions remotely on limited topics.** .........................................................4

      2.  **None of the stated reasons for delaying the depositions of most Rule 30(b)(1) witnesses outweigh the need for their depositions at this time.** ...............6

         a.  **Witnesses with health issues.** ...............................................................7

         b.  **Witnesses with claimed Internet connectivity issues.** ........................8

         c.  **Witnesses (and counsel) who lack time for a remote deposition.** ......11

    B.   **Class Plaintiffs Already Demonstrated Good Cause for Remote Depositions**..........13

    C.   **The Court Can Enter a Protocol Now Allowing for Accommodations** .....................14

CONCLUSION ...........................................................................................................15

## TABLE OF AUTHORITIES

**CASES**

*De Lench v. Archie*, No. 1:18-cv-12549, 2020 WL 1644226 (D. Mass. Apr. 2, 2020) ..................2

*Grano v. Sodexo Mgmt., Inc.*, No. 3:18-cv-01818, 2020 WL 1975057 (S.D. Cal. Apr. 24, 2020)..........................................................................................................................passim

*Ogilvie v. Thrifty PayLess Inc.*, No. 2:18-cv-00718, 2020 WL 2630732 (W.D. Wash. May 12, 2020)........................................................................................................................2, 15

*SAPS, LLC v. EZCare Clinic, Inc.*, No. 2:19-cv-11229, 2020 WL 1923146 (E.D. La. Apr. 21, 2020)...........................................................................................................................15

*United States ex rel. Chen v. K.O.O. Constr., Inc.*, No. 3:19-cv-01535, 2020 WL 2631444 (S.D. Cal. May 8, 2020).........................................................................................................3, 4, 15

*Wilkens v. ValueHealth, LLC*, No. 6:19-cv-01193, 2020 WL 2496001 (D. Kan. May 14, 2020)...........................................................................................................................2, 5

**ARGUMENT**

**A. Defendants Fail to Justify What Amounts to a Minimum of a Five-Month Extension of a Stay of Deposition Discovery of Defendants**

Defendants effectively ask to stay depositions of their witnesses for at least five months beyond the nine months they were already stayed when the DOJ intervened, until September 2020. (ECF Nos. 2302, 3153, and 3356.) This suggestion contravenes the mandate of Rule 1 of the Federal Rules of Civil Procedure, and the arguments Defendants advance to support this stay have all been rejected by other courts across the country. By contrast, Class Plaintiffs' proposal is workable, will preserve all parties' legitimate rights and concerns, and will enable Plaintiffs to continue advancing their cases to trial.[1]

In their motion, Class Plaintiffs cite extensive authority showing courts have openly embraced remote depositions during the COVID-19 pandemic. (ECF No. 3610 at 6–8.)[2] Notably, these cases did not have a nine-month delay in discovery due to the DOJ's investigation that preceded COVID-19 restrictions in this case. Defendants do not meaningfully address these cases. Instead, they argue that "Plaintiffs cite no case where the court ordered a deposition to occur without providing the witness' counsel the ability to prepare the witness in the manner they deemed appropriate." (ECF No. 3630 at 13.) Yet, Defendants are mistaken; there are numerous examples.

In *Grano v. Sodexo Mgmt., Inc.*, Sodexo sought a protective order postponing the depositions of its witnesses for up to 60 days. No. 3:18-cv-01818, 2020 WL 1975057, at *2 (S.D. Cal. Apr. 24, 2020). Sodexo contended that it could not meaningfully prepare for and participate in remote depositions, and that to be required to do so would result in undue burden and prejudice.

---

[1] DAPs filed two separate briefs largely supporting Class Plaintiffs' positions on videoconference depositions. (*See* ECF Nos. 3628 and 3629.) While Class Plaintiffs are not in agreement with DAPs' suggestion that depositions not commence until late summer or early fall, Class Plaintiffs are agreeable to extending the expiration date of the order to September 30, 2020.

[2] Unless stated otherwise, citations are to ECF page numbers.

*Id.* The court flatly rejected Sodexo's argument that preparing for and taking videoconference depositions is "unworkable" and will be "cumbersome." *Id.* The court cogently observed that "[a]ttorneys and litigants all over the country are adapting to a new way of practicing law, including conducting depositions and deposition preparation remotely." *Id.* (citing *De Lench v. Archie*, No. 1:18-cv-12549, 2020 WL 1644226, at *2 (D. Mass. Apr. 2, 2020)). The decision highlighted the numerous resources and training opportunities available so that Sodexo's attorneys could become familiar with videoconference technology and acknowledged that "Veritext . . . has training and informational videos online and is willing and able to communicate with counsel and witness 'to ensure that they [are] fully comfortable with the process.'" *Grano*, 2020 WL 1975057, at *3. The court therefore ordered one deposition to go forward via videoconference and suggested the parties continue noticing and taking remote depositions. *Id.* at *3–4.

Similarly, in *Wilkens v. ValueHealth, LLC*, defendants sought a 120-day stay, in part because they preferred to "prepare and defend their witness depositions in person, rather than remotely." No. 6:19-cv-01193, 2020 WL 2496001, at *1 (D. Kan. May 14, 2020). The court rejected that argument and held that a party's preference for in-person depositions and deposition preparation carries little weight in the current climate. *Id.* "Video or teleconference depositions and preparation are the 'new normal' and most likely will be for some time. Litigation cannot just come to an indefinite halt," the court emphasized. *Id.*

In *Ogilvie v. Thrifty PayLess Inc.*, the parties jointly sought to continue discovery deadlines on the basis that the COVID-19 pandemic "impact[ed] their ability to take depositions [and] hold meetings in person." No. 2:18-cv-00718, 2020 WL 2630732, at *2 (W.D. Wash. May 12, 2020). Yet, the district court observed that the parties did not say why they could not conduct the

depositions and meetings by videoconference. *Id.* Since the parties did not explore utilizing remote depositions to complete discovery, the court found no good cause to delay the case schedule. *Id.*

Defendants' other arguments relating to Internet connectivity issues, the challenges of conducting document-intensive depositions over videoconference, and the complexity of the case are equally unavailing. Sodexo advanced similar arguments in *Grano* when it sought to postpone depositions of its witnesses. 2020 WL 1975057, at *2. Specifically, Sodexo argued:

> [T]here is good cause for the requested relief because (1) circumstances have changed since the CMC and the worsening of the COVID-19 pandemic has led to additional restrictions on businesses and individuals throughout the country, (2) not granting the relief would unfairly prejudice Sodexo as Sodexo is the only party 'that must prepare for depositions with one hand tied behind its back[,]' (3) preparing for and conducting depositions via videoconference 'is unworkable[,]' (4) Ms. Almedom requires an interpreter, does not have reliable Wi-Fi access or a device with a camera, and does not have a private space at her place of employment where she can meet, (5) Mr. Bowser's deposition preparation will be document intensive, he is in a vulnerable demographic, and refuses to meet with counsel in person, (6) Ms. Snyder is exceptionally busy right now responding to the COVID-19 pandemic, (7) Sodexo's lead counsel are all in a vulnerable demographic, (8) 'gathering, reviewing, and providing pertinent documents to the witnesses ha[s] become very difficult in the current climate[,]' and (9) conducting depositions via videoconference will be 'cumbersome.'

*Id.* (alterations in original). The court quickly dispensed with Sodexo's claims and ordered the parties to move forward with remote depositions, indicating that Sodexo must adapt to litigating in a COVID-19 world. *Id.* at *2–4.

Similarly, in *United States ex rel. Chen v. K.O.O. Constr., Inc.*, the parties jointly moved to extend the deadline to complete fact discovery, agreeing "that this is their first request to modify the Scheduling Order, they have been working diligently to complete discovery, and they only require additional time for depositions to be taken." No. 3:19-cv-01535, 2020 WL 2631444, at *1 (S.D. Cal. May 8, 2020). The court held that "voluminous and highly detailed exhibits" are not a bar to remote videoconference depositions, and noted how "[o]ther courts have found that exhibits

can be managed in remote depositions by sending Bates-stamped exhibits to deponents prior to the depositions or using modern videoconference technology to share documents and images quickly and conveniently." *Id.* at 2 (collecting cases). The court concluded that the parties' rejection of videoconference depositions was for reasons of convenience, not true prejudice. *Id.*

### 1. It is neither unreasonable nor infeasible to prepare for and take Rule 30(b)(6) depositions remotely on limited topics.

Remote depositions are being utilized in other complex antitrust cases that face the same logistical challenges which Defendants claim necessitates an extended stay in this case. *See, e.g.*, *In re Interior Molded Doors Antitrust Litig.* No. 3:18-cv-00718, ECF No. 221 at 1 (E.D. Va. May 27, 2020) (Stipulation and [Proposed] Order Concerning the Protocol for Conducting Remote Depositions); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 1:14-md-02542, ECF No. 853 at 1 (S.D.N.Y. Mar. 16, 2020) (Scheduling Order).

Defendants raise three arguments against 30(b)(6) depositions over videoconference: (1) the anticipated designees hold critical roles within their companies and it would be prejudicial to require them to divert their attention from their work; (2) preparation for 30(b)(6) testimony places an undue burden on Defendants to gather information to prepare designees for deposition; and (3) preparing designees over videoconference is unworkable. (ECF No. 3630 at 11–12.) None of these reasons justify the wholesale stay on depositions that Defendants seek.

Plaintiffs' currently proposed 30(b)(6) deposition notice focuses on only three topics relating to pricing, supply, and production. Given the numerous deferred topics and that Plaintiffs are limited to 14 total hours of 30(b)(6) deposition testimony per Defendant (ECF No. 1979 at 1), the proposed limited 30(b)(6) deposition will be less than a full day and will not require nearly as much witness preparation as Defendants assert. Moreover, as Plaintiffs have repeatedly informed Defendants, they are willing to work together to determine an appropriate schedule for a

deposition, one that provides sufficient flexibility to allow for preparation and scheduling which accounts for any procedural hurdles imposed by COVID-19. Defendants have already had nearly three months to adjust to the challenges presented by COVID-19 and will have additional time before 30(b)(6) witnesses are required to testify.

Plaintiffs will continue to make reasonable accommodations for witnesses to account for any procedural or scheduling issues that arise. What Plaintiffs cannot do is agree to a wholesale stay of all 30(b)(6) depositions by all twenty Defendants in this case for a matter of months, on grounds that they are too busy for an extended period of time to prepare a single witness to sit for less than a full day deposition. Courts have rejected such broad arguments that a party is too busy because of COVID-19 to prepare and sit for depositions. In *Wilkens,* defendant stated they "'manage and operate ambulatory surgical centers and surgical hospitals throughout the United States,' including approximately 70 medical facilities in 18 different states, which they contend complicates their ability to comply with the current deadlines." 2020 WL 2496001, at *1. But the court was not convinced, holding that "general claims about stress on some of its companies related to COVID-19" was not sufficient. *Id.* at *2. Also weighing against the stay was the need to "re-set[] all deadlines and hearings at the conclusion of the stay, resulting in a delay in this case, by the Court's estimate of at least six months." *Id.*

In *In re Duramax Diesel Litig.*, a class action involving GM's Duramax engine, the parties jointly agreed to stay the case until May 15, 2020, citing "the substantial business and operational disruptions to GM's business caused by the COVID-19 pandemic" and "disruptions and difficulties" to the "business operations of Robert Bosch LLC and Robert Bosch GmbH" as a result of COVID-19. No. 1:17-cv-11661, ECF No. 169 at 1 (E.D. Mich. Apr. 7, 2020) (Order Rejecting Stipulation to Modify Case Management Order). The court, observing an April 20, 2020 discovery

deadline, rejected the parties' stipulation, noting that "[n]either party has explained that they have attempted to use all available means, including video and telephone conferencing and electronic and telephonic communication, to complete discovery, nor have they provided any specific difficulties they have encountered that prevents them from proceeding with the case." *Id.* at 1–2.

Here, Defendants have not identified any specific difficulties preventing them from gathering information needed to prepare 30(b)(6) designees. Defendants are large companies with thousands of employees. According to publicly available data, Tyson has approximately 122,000 employees, Pilgrim's has around 31,900 employees, Perdue has about 21,000 employees, Sanderson has over 17,000 employees, Koch has over 14,000 employees, Wayne Farms has around 9,000 employees, and Mountaire has nearly 7,000 employees. (*See* Declaration of Kyle Pozan ("Pozan Decl.") ¶¶ 4–10, Exs. 1–7.) Even in this current environment, it is difficult to believe that they lack the resources required to gather information for the preparation of 30(b)(6) designees.

Defendants argue that "preparation via phone or computer is not reasonable" and that none of the cases Class Plaintiffs rely on address the realities of working from home. (ECF No. 3630 at 12.) But as the courts ruled in *Grano* and *Wilkens*, Defendants need to adapt to a new way of practicing law because this is the "new normal." Further, the decisions Class Plaintiffs detailed in their motion, and which Defendants largely sidestepped, were not made in a vacuum. Simply because the rulings did not specifically mention the added responsibilities people are facing while working from home does not mean that courts did not consider them.

### 2. None of the stated reasons for delaying the depositions of most Rule 30(b)(1) witnesses outweigh the need for their depositions at this time.

The reasons given by Defendants for why the witnesses Class Plaintiffs identified cannot sit for a remote deposition are varied but can be categorized into three groups: (a) witnesses with

health issues, (b) witnesses with claimed Internet connectivity issues, and (c) witnesses (and attorneys) who lack time for a remote deposition.

### a.  Witnesses with health issues.

First, Defendants' opposition brief shows there is an immediate need to depose two witnesses, Phil Campbell and David Pogge, due to the potential for extreme prejudice to Class Plaintiffs. Mr. Campbell is a mid-level salesman with Claxton who served as the company's "Georgia Dock reporter from 2011 through 2016." (ECF No. 3630-4 at ¶ 3.) He "was diagnosed with a life-threatening illness" in early 2019, but recently returned to work with limited hours and responsibilities. (*Id.* at ¶¶ 4, 8.) The only reason given for opposing Mr. Campbell's remote deposition is Claxton's counsel has not been able to meet with him in person to evaluate whether he is competent to testify and sit for a deposition of up to seven hours. (*Id.* at ¶ 9.)[3] Defendants fail to explain why this evaluation cannot be done by telephone or videoconference. And since Mr. Campbell has returned to work, albeit in a reduced capacity, Class Plaintiffs expect he is competent to testify, and Claxton has made no showing that he is not. *See* Fed. R. Evid. 601 advisory committee's note (1972) ("A witness wholly without capacity is difficult to imagine."). His health problems justify Class Plaintiffs' request to take his remote deposition immediately.[4] Defendants claim they are willing to accommodate Plaintiffs when there is a need to perpetuate the testimony

---

[3] It may be that counsel's time has been occupied by the grand jury's now-public antitrust indictment of Mr. Campbell's colleague and Claxton's president, Mikell Fries (ECF No. 3637-1), but even if so, it does not constitute good cause to delay Mr. Campbell's deposition, particularly given his circumstances.

[4] Class Plaintiffs are sensitive to Mr. Campbell's health and appreciate the difficulty of sitting for a deposition of up to seven hours under normal circumstances. In fact, Class Plaintiffs have met and conferred extensively for more than a year regarding Mr. Campbell's deposition and Claxton's repeated requests to delay the deposition due to Mr. Campbell's health. Indeed, Class Plaintiffs are willing to take his deposition over multiple days, if necessary. But the need to take the deposition of this key witness over multiple days is not a reason to indefinitely postpone it, and this Court previously ordered similar relief under comparable circumstances for the deposition of Arty Schronce. (ECF No. 1390.)

of a particular witness due to health concerns. (ECF No. 3630 at 17.) Mr. Campbell's circumstances illustrate that need.

Mr. Pogge is the former President and CEO of Mountaire. Retired since November 13, 2012, Mr. Pogge is 69 years old and "suffers from advancing respiratory problems." (ECF No. 3630-3 at ¶ 5.) Defendants do not say that Mr. Pogge lacks a computer or a reliable Internet connection capable of connecting to a videoconference. Instead, they assert he "is neither familiar nor comfortable with the technology that would be necessary to conduct a deposition via video conference." (*Id.* at ¶ 7.) This is not a legitimate reason to postpone Mr. Pogge's deposition. Like the *Grano* court recognized, "Veritext . . . has training and informational videos online and is willing and able to communicate with counsel and witness 'to ensure that they [are] fully comfortable with the process.'" *Grano*, 2020 WL 1975057 (alterations in original). Class Plaintiffs can also send paper exhibits to Mr. Pogge in advance of his deposition so that he does not need to rely on his computer to navigate exhibits. Given his advancing respiratory problems, there is a need to depose Mr. Pogge now.

### b. Witnesses with claimed Internet connectivity issues.

For three witnesses, Wes Morris, Michael Levengood, and Gaston LeBois, Defendants do not contend the witnesses are too busy or too essential to sit for a remote deposition. Rather, their argument is exclusively based on claimed Internet connectivity issues. As recognized by the Stipulation and [Proposed] Order Concerning the Protocol for Conducting Remote Depositions in *In re Interior Molded Doors Antitrust Litig.*, even if such concerns exist, they can easily be addressed. No. 3:18-cv-00718, ECF No. 221 at 1. The agreement calls for Veritext to assess each deponent's available devices and to troubleshoot any issues at least 48 hours in advance of the deposition to allow for adjustments to be made, if needed. *Id.* at 4. It also contains a provision

requiring the parties to work collaboratively to address and troubleshoot any issues that arise during a deposition. *Id.* Importantly, the parties agreed that no party would be forced to "proceed with a deposition where the deponent cannot hear or understand the other participants or where the participants cannot hear or understand the deponent." *Id.* Class Plaintiffs are amenable to similar provisions here, and the protocol additions proposed by the DAPs includes them. (*See* ECF No. 3628-1.)

Moreover, Defendants' claim that the witnesses lack reliable Internet connectivity necessary for a remote deposition rings hollow. This is 2020. People have multiple smartphones, tables, computers, and televisions connected to the Internet at the same time without issue. Streaming video is king. Netflix has more subscribers than cable. (Pozan Decl. ¶ 11, Ex. 8.) Over two billion people visit YouTube each month. (*Id.* at ¶ 12, Ex. 9.) And children around the country have been engaged in remote learning, usually through videoconference, since the shelter-in-place orders were issued. Veritext recommends Internet speeds of 1.5 Mbps for its platform. (*Id.* at ¶ 13, Ex. 10.) In 2018, the Federal Communications Commission found that 99.99% of the U.S. population had access to broadband Internet with download speeds of 25 Mbps and upload speeds of 3 Mbps, and mobile LTE download speeds of 5 Mbps and upload speeds of 1 Mbps. (*Id.* at ¶ 14, Ex. 11 at 21.) Accordingly, every witness with an Internet connection should be capable of participating in a videoconference deposition through Veritext Virtual.

Defendants' claims of poor Internet connectivity issues ring particularly hollow for the sophisticated executives who Plaintiffs seek to depose in this case. During the relevant time period, Wes Morris began as Senior Vice President of Refrigerated Processed Meats for Tyson, working his way up to President of Prepared Foods before leaving to become Chief Financial Officer of Simmons. (*Id.* at ¶ 15, Ex. 12.) Mr. Morris retired in January 2020. (ECF No. 3630-10 at ¶ 3.)

Counsel for Simmons describes the area in which Mr. Morris lives as "remote;" however, "rural" and "remote" are not the same thing. (*Id.* at ¶ 4.) Mr. Morris' home is located in Goshen, Arkansas, which is less than 12 miles from downtown Fayetteville. (Pozan Decl. ¶¶ 16–17, Exs. 13–14.) Mr. Morris' home, known as Blue Sky Ranch, was featured in two lifestyle magazines and is a custom-designed 7,800 square foot home with radiant-heat floors and a swimming pool, plus a two-story living quarters attached to the stables, and a guest home. (*Id.* at ¶¶ 16, 18, Exs. 13, 15.) There is a publicly accessible Facebook page for Blue Sky Ranch that contains posts from Wes Morris and features high definition video and high-quality photographs uploaded as recently as May 10, 2020. (*Id.* at ¶ 19, Ex. 16.) Since there is seemingly sufficient Internet speed to upload high definition video and high-quality photographs to a Facebook page from the property, there should be sufficient Internet speed for a remote deposition. Simmons' counsel also contends that "Mr. Morris is not technologically advanced and would have difficulty navigating a second computer on which to review and testify concerning exhibits." First, there is no need for a second screen to view exhibits. As shown in Class Plaintiffs' motion, Veritext Virtual places exhibits side-by-side on a single screen with video of the witness and attorneys. (ECF No. 3610 at 4.) Counsel for Simmons also claims that "having a second computer to review exhibits would place additional strain on his weak internet connection, which would likely result in glitches, and perhaps cause a complete connection failure." This is rank speculation. If there are connection issues, the parties can address them as they arise. Moreover, Class Plaintiffs can send paper exhibits to Mr. Morris in advance of his deposition to eliminate any concerns about handling electronic exhibits.

Gaston LeBois, who retired from Perdue in 2016 after serving as its Vice President of Wholesale and Industrial Sales, lives with his wife, who is an executive assistant working from home in Salisbury, Maryland. (ECF No. 3630-8 at ¶¶ 2–3.) Mr. LeBois claims he defers his Internet

use to his wife because of her job and that Internet speeds and reliability are greatly reduced when they are both online. (*Id.* at ¶ 3.) And he has experienced connectivity and technology problems on video calls in conjunction with his work for various charitable organization. (*Id.* at ¶ 5.) But there is no reason to believe that the Veritext team could not identify any problems with Mr. LeBois' Internet and the equipment needed to fix them. Either way, the claimed lack of reliable Internet connection is not a basis to preclude Class Plaintiffs from taking Mr. LeBois' deposition by videoconference. *See Grano*, 2020 WL 1975057, at *2–4 (ordering the defendant to proceed with remote depositions despite claims that at least one witness lacked reliable Wi-Fi access).

The same is true for Michael Levengood, Vice President, Chief Animal Care Officer & Farmer Relation Advocate for Perdue. (ECF No. 3630-9 at ¶ 3.) He shares a broadband Internet connection with his wife and son at their home in Salisbury, Maryland, but claims the family has to take turns using the Internet because of connection issues because having multiple people online "significantly slows down the connection speed and usability." (*Id.* at ¶ 4.) He also claims to have experienced connection issues during videoconferences. (*Id.* at ¶ 5.) Notably, he does not say the reduced Internet speed makes video calls impossible; nor does he claim that connection issues during videoconferences are so frequent as to render the process nonviable. (*See id.* at ¶¶ 4–5.)

### c. Witnesses (and counsel) who lack time for a remote deposition.

Bryan Reese, the Senior Vice President of Sales, Marketing, and R&D at Foster Farms from approximately September 2012 to November 2015, is now the President and CEO of Basic American Foods. In opposition to his remote deposition, Mr. Reese states without specifics that "[a]ll of my time is currently taken up with shepherding Basic American Foods through this difficult time and caring for my family." (ECF No. 3630-5 at ¶ 5.) Class Plaintiffs are sympathetic, but every deposition carries some burden, and the alternative—an indefinite postponement—is

unworkable. Mr. Reese has not shown that preparing and sitting for a remote deposition will jeopardize the poultry supply.

Case Farms' arguments opposing the remote deposition of Mike Popowycz are especially unpersuasive. Case Farms contends Mr. Popowycz is a member of a senior management team and generally describes the heightened burdens of the entire company due to COVID-19. However, Case Farms makes no specific showing that Mr. Popowycz is so essential to its operation that sitting for a deposition would jeopardize Case Farm's role in the food supply chain. Counsel for Case Farms also argues that he himself is too busy for a deposition, remote or otherwise:

> Considering my schedule since early March 2020, including my responsibilities to Case Farms as (i) one of its lead counsel on the Broiler Litigation; and (ii) unrelated to the Broiler Litigation, coupled with my professional obligations to clients other than Case Farms, it would impose an undue burden on me to set aside a significant block of time to conduct and complete with co-counsel the review of materials necessary to competently prepare Popowycz for this important deposition in this action.

(ECF No. 3630-6 at ¶ 11.) Finally, counsel for Case Farms states in a conclusory manner that Mr. Popowycz "would not have the benefit of in person meetings with counsel to prepare for his deposition, as has been his practice the few times he has been deposed," and would "be required to sit solo, without counsel physically present, for his deposition." (*Id.* at ¶¶ 12–13.) But these are not undue burdens. Case Farms' counsel makes no showing why being present to prepare or defend the witness is necessary, or how doing either task remotely makes preparation or defense of the witness impracticable. Put simply, the rationale given by counsel for Case Farms is unavailing, especially for a witness who has sat for a deposition on at least three previous occasions, and similar arguments have been rejected by courts.

Finally, Defendants attach no support in opposition to the remote deposition of Agri Stats'
Dana Weatherford, tacitly admitting there is no basis to prevent her videoconference deposition
from going forward.

### B.   Class Plaintiffs Already Demonstrated Good Cause for Remote Depositions

The DOJ obtained a stay of defendant discovery on June 27, 2019. It is now June 3, 2020.
Class Plaintiffs have not been able to take 30(b)(1) depositions for Defendants' witnesses for
almost a year. Nearly 100 depositions of Defendants' 30(b)(1) witnesses remain. Until there exists
a vaccine or a highly effective and widely available treatment for COVID-19, social distancing
and face coverings will remain the norm.[5] No one knows when this will happen, which alone
constitutes good cause for ordering remote depositions. Indeed, it appears highly unlikely that
wholesale business travel will recommence in September. Defendants are quick to discount it, but
the passage of time also creates an evidentiary prejudice. Witness memories fade with each further
delay, one witness died, and two witnesses who Class Plaintiffs seek to depose soon are in
declining health. (ECF Nos. 3630-3 and 3630-4.) Finally, Class Plaintiffs have already made
sacrifices to keep this case on schedule, including moving for class certification prior to the close
of fact discovery. (ECF No. 3420 at 2.) This case must continue moving forward. Rule 1 requires
it. Additional delay of Defendant depositions will further set back the entire case schedule, which
in turn will further unfairly prejudice Class Plaintiffs' right to a just, speedy, and inexpensive
determination of this action.

Defendants twist the timeline of events in this case to push their narrative that Class
Plaintiffs are unable to explain why these depositions are necessary for class certification, arguing
that Class Plaintiffs were willing to file their class certification motions without these 30(b)(1)

---

[5] https://coronavirus.illinois.gov/s/restore-illinois-introduction

depositions. (ECF No. 3630 at 8.). Class Plaintiffs' statements were made before Defendants ever argued for a closed record for class certification. (Pozan Decl. ¶ 20, Ex. 17, Nov. 8, 2019 Hr'g Tr. at 56:16–57:18, 70:4–7; *id.* at ¶ 21, Ex. 18, Jan. 17, 2020 Hr'g Tr. at 19:3–7.) While the Court recognized that Class Plaintiffs would have the right to respond to any arguments Defendants make in opposition to class certification, Defendants' insistence on a closed record justifies taking additional depositions prior to class certification. Thus, there is a reason the current case schedule gives Class Plaintiffs more than two-and-a-half months to take the depositions of Defendants' 30(b)(1) witnesses. (ECF No. 3420 at 2.)

Defendants also neglect to mention the significant impact that delaying depositions will have on the rest of the case schedule. Under Defendants' proposal, depositions will not commence until at least September 2020, which will allow for approximately six months to complete over 100 depositions by the current extended merits discovery deadline of March 5, 2021, during a period that includes the holidays and continued impact of COVID-19. Put simply, Class Plaintiffs have demonstrated good cause for the limited depositions we seek, not only for class certification but in order to meet the other deadlines necessary to keep this case on track.

### C. The Court Can Enter a Protocol Now Allowing for Accommodations

Defendants want the Court to put off until well past tomorrow what it can do today. They ask the Court to wait until September to re-evaluate the "advisability and fairness of remote depositions for certain witnesses." (ECF No. 3630 at 18.) Then, "[i]f the needs of the case [] require that certain remote depositions take place (notwithstanding Defendants' significant prejudice), the Court should order a protocol providing witness-by-witness accommodations as needed under the circumstances." (*Id.*)

There is no reason to wait until September, an arbitrary month, to implement a process that allows the Court to provide accommodations on a witness-by-witness basis when Class Plaintiffs suggested a similar procedure nearly two months ago. Class Plaintiffs "told Defendants that, if one or more of these witnesses has a role within an essential business that makes it impossible for him or her to sit for a deposition, the parties certainly can address those circumstances on an individual basis, with Court intervention if necessary." (ECF No. 3610 at 5.) The parties have been living in a COVID-19 world for nearly three months, but Defendants doggedly hold to their position—"let's wait and see." There is no guarantee that things will be materially different in September, a reality appreciated by the court in *Chen*:

> The primary reason the parties seek the continuance is because they hope the physical distancing and stay-at-home orders required by the current pandemic will be lessened to allow for in-person depositions in the near future. This, however, is pure speculation. It is not feasible for the Court to extend deposition deadlines until a time when they can be safely conducted in person because **no one knows when that will occur and there are alternatives.**

2020 WL 2631444, at *1 (emphasis added). "This pandemic may well be with us for many months to come," the court acknowledged in *Ogilvie*. 2020 WL 2630732, at *2. "We will all need to adjust to keep litigation moving forward." *Id.* Seemingly for this reason, the court in *SAPS, LLC v. EZCare Clinic, Inc.* decided it was not "feasible to delay the [out-of-state 30(b)(6)] depositions until some unknown time in the future." No. 2:19-cv-11229, 2020 WL 1923146, at *2 (E.D. La. Apr. 21, 2020). The Court should implement a protocol now that allows the parties to move forward with defendant depositions.

## CONCLUSION

WHEREFORE, for these reasons, Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, and End-User Consumer Plaintiffs respectfully request that this Court grant their motion.

Dated: June 3, 2020

W. Joseph Bruckner
Brian D. Clark
Simeon A. Morbey
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T: (612) 339-6900
F: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
samorbey@locklaw.com

Bruce L. Simon
Neil Swartzberg
PEARSON, SIMON & WARSHAW, LLP
350 Sansome Street, Suite 680
San Francisco, CA 94104
T: (415) 433-9000
F: (415) 433-9008
bsimon@pswlaw.com
nswartzberg@pswlaw.com

Clifford H. Pearson
Daniel L. Warshaw
Michael H. Pearson
Bobby Pouya
PEARSON SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
T: (818) 788-8300
F: (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
mpearson@pswlaw.com
bpouya@pswlaw.com

***Direct Purchaser Plaintiffs Interim Co-
Lead Class Counsel***

Respectfully submitted,

s/ *Steven A. Hart*
Steven Hart (#6211008)
Brian Eldridge (#6281336)
John Marrese (#6306516)
Kyle Pozan (#6306761)
HART MCLAUGHLIN & ELDRIDGE, LLC
22 West Washington Street, Suite 1600
Chicago, IL 60602
T: (312) 955-0545
F: (312) 971-9243
shart@hmelegal.com
beldridge@hmelegal.com
jmarrese@hmelegal.com
kpozan@hmelegal.com

***Direct Purchaser Plaintiffs Interim Liaison
Class Counsel***

s/ *Kenneth A. Wexler*
Kenneth A. Wexler
Edward A. Wallace
WEXLER WALLACE LLP
55W.Monroe Street, Suite 3300
Chicago, IL 60603
T: (312) 346-2222
kaw@wexlerwallace.com
eaw@wexlerwallace.com

***Commercial and Institutional Indirect
Purchaser Plaintiffs Liaison Counsel***

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua R. Rissman
Brittany N. Resch
GUSTAFSON GLUEK PLLC
220 South Sixth Street, #2600
Minneapolis, MN 55402
T: (612)333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsongluek.com

Joseph W. Cotchett
Adam Zapala
Tamarah Prevost
COTCHETT, PITRE & MCCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
T: (650) 697-6000
jcotchett@cpmlegal.com
azapala@cpmlegal.com
tprevost@cpmlegal.com

***Commercial and Institutional Indirect
Purchaser Plaintiffs Interim Co-Lead
Counsel***

s/ *Shana E. Scarlett*
Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO
LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
T: (510) 725-3000
shanas@hbsslaw.com

Steve W. Berman (*pro hac vice*)
1301 Second Avenue, Suite 2000
HAGENS BERMAN SOBOL SHAPIRO
LLP
Seattle, Washington 98101
T: (206) 623-7292
steve@hbsslaw.com

***Interim Lead Counsel for End-User
Consumer Plaintiffs***

Kit A. Pierson
Brent W. Johnson
COHEN MILSTEIN SELLERS & TOLL,
PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
T: (202) 408-4600
kpierson@cohenmilstein.com
bjohnson@cohenmilstein.com

Daniel H. Silverman
COHEN MILSTEIN SELLERS & TOLL,
PLLC
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
T: (312) 357-0370
dsilverman@cohenmilstein.com

***Additional Counsel for End-User
Consumer Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I, Steven A. Hart, depose and state that I have served a copy of Class Plaintiffs' Reply in Support of Their Motion for Entry of an Order Requiring Remote Depositions for Certain Categories of Witnesses upon all counsel of record via the United States Court for the Northern District of Illinois' CM/ECF Document Filing System on June 3, 2020.

By:  <u>s/ *Steven A. Hart*</u>

[x]  As provided by law pursuant to Rule 5(b) of Fed. Rules of Civil Procedure, I certify that the statements set forth herein are true and correct.

18