# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 TMD |
| This Document Relates To:<br><br>All Commercial and Institutional Indirect Purchaser Plaintiff Actions | |

**MEMORANDUM OF LAW IN SUPPORT OF COMMERCIAL AND INSTITUITIONAL INDIRECT PURCHASER PLAINTIFFS' UNCONTESTED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH DEFENDANT AMICK FARMS, LLC AND FOR CONDITIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

III.    SUMMARY OF SETTLEMENT AGREEMENT ............................................3

IV.    ARGUMENT .........................................................................................................4

       A.     The Proposed Settlement Falls Within the Range of Possible Approval and Should Be Preliminarily Approved..........................................................4

       B.     The Settlement Is Fair and Resulted from Arms'-Length Negotiation..................6

       C.     The Court Should Certify the Proposed Settlement Class ......................................9

            1.     The Requirements of Rule 23(a) are Satisfied ...........................................10

                  a.     Numerosity.................................................................................10

                  b.     Common Questions of Law and Fact ...........................................10

                  c.     Typicality ...................................................................................11

                  d.     Adequacy ...................................................................................12

            2.     The Proposed Settlement Class Satisfied Rule 23(b)(3)............................13

       D.     Notice to the Class .................................................................................15

VII.    CONCLUSION....................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aftermarket Filters Antitrust Litig.*,
No. 1:08-cv-04883 (N.D. Ill. Feb. 16, 2012) .......................................................... 15

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................. 9, 14

*In re Ampicillin Antitrust Litig.*,
82 F.R.D. 652 (D.D.C. 1979) ..................................................................................... 7

*Armstrong v. Bd. of Sch. Dirs.*,
616 F.2d 305 (7th Cir. 1980) ................................................................................. 4, 5

*In re Auto. Parts Antitrust Litig.* (*Wire Harness Systems*),
Master File No. 12-md-02311 (E.D. Mich. July 10, 2017) ...................................... 16

*In re Catfish Antitrust Litig.*,
826 F. Supp. 1019 (N.D. Miss. 1993) ..................................................................... 13

*In re Cmty. Bank of N. Va.*,
418 F.3d 277 (3d Cir. 2005) ...................................................................................... 9

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) ................................................................................... 12

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
768 F.2d 884 (7th Cir. 1985) .................................................................................... 4

*In re Foundry Resins Antitrust Litig.*,
242 F.R.D. 393 (S.D. Ohio 2007) ........................................................................... 13

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) .................................................................................... 4

*Goldsmith v. Tech. Solutions Co.*,
No. 92-C-4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ................................. 6

*Hughes v. Baird & Warner, Inc.*,
No. 76 C 3929, 1980 WL 1894 (N.D. Ill. Aug. 20, 1980) ....................................... 14

*In re IPO Sec. Litig.*,
226 F.R.D. 186 (S.D.N.Y. 2005) ............................................................................... 7

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ..................................................................................4, 5

*Kohen v. Pacific Inv. Mgmt.*,
    571 F.3d 672 (7th Cir. 2009) .......................................................................................12

*In re Linerboard Antitrust Litig.*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003) ............................................................................6

*In re Mercedes-Benz Antitrust Litig.*,
    213 F.R.D. 180 (D.N.J. 2003)......................................................................................11

*In re Mid-Atlantic Toyota Antitrust Litig.*,
    564 F. Supp. 1379 (D. Md. 1983)..............................................................................5, 6

*In re NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y 1997) .....................................................................................5

*In re New Jersey Tax Sales Antitrust Litig.*,
    No. 3:12-cv-01893 (D.N.J. Aug. 13, 2013) ................................................................15

*Owner-Operator Indep. Drivers' Ass'n v. Allied Van Lines, Inc.*,
    231 F.R.D. 280 (N.D. Ill. 2005)..................................................................................11

*Paper Sys. Inc. v. Nippon Paper Indus.*,
    281 F.3d 629 (7th Cir. 2002) .........................................................................................7

*Saltzman v. Pella Corp.*,
    257 F.R.D. 471 (N.D. Ill. 2009)..............................................................................11, 13

*Schmidt v. Smith & Wollensky LLC*,
    268 F.R.D. 323 (N.D. Ill. 2010)...................................................................................10

*Thillens, Inc. v. Cmty. Currency Exch. Ass'n*,
    97 F.R.D. 668 (N.D. Ill. 1983).....................................................................................10

*In re Transpacific Passenger Air Transportation Antitrust Litig.*,
    No. 07-05634-CRB (N.D. Cal.) ...................................................................................16

*Uhl v. Thoroughbred Tech. & Telecomms, Inc.*,
    309 F.3d 978 (7th Cir. 2002) .........................................................................................5

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)......................................................................................................10

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002) ......................................................................................5

## Rules

Federal Rules of Civil Procedure

Rule 23 ..................................................................................................................9, 10, 13, 15

Rule 23(a)..............................................................................................................9, 10

Rule 23(a)(1)..............................................................................................................10

Rule 23(a)(2)......................................................................................................10, 11

Rule 23(a)(3)......................................................................................................11, 12

Rule 23(a)(4)......................................................................................................12, 13

Rule 23(b) .......................................................................................................................9

Rule 23(b)(3).........................................................................................10, 13, 14, 15

Rule 23(c)(2)(B)..........................................................................................................15

Rule 23(e)....................................................................................................5, 6, 15

## Other Authorities

2 NEWBERG ON CLASS ACTIONS (3d ed. 1992)

§11.24..........................................................................................................................4

§ 11.40.........................................................................................................................6

## I.       INTRODUCTION

The Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs") respectfully move the Court for preliminary approval of the proposed settlement between CIIPPs and Amick Farms, LLC ("Amick Farms" or "Settling Defendant").[1] The proposed settlement—CIIPPs' second settlement in this action—was reached as a result of lengthy arms-length, hard-fought negotiations, after significant litigation and discovery, and Interim Class Counsel believes that the settlement is in the best interests of the class. *See* Declaration of Adam J. Zapala ("Zapala Decl."), ¶¶ 3-4, 6- 8, 12. Amick Farms has agreed to pay two million and nine hundred fifty thousand dollars ($2,950,000.00) in monetary consideration to the Settlement Class and provide specified types of cooperation to aid in the future prosecution of this action. CIIPPs estimate that Amick Farms' market share for the sale of Broilers constitutes 1.7% of the overall sales to the CIIPP class, a similar proportion in market share and sales as the previous settling Defendant Fieldale Farms Corporation.

The settlement demonstrates that CIIPPs' litigation strategy has been successful insofar as settlements are increasing in both gross and proportional terms.  CIIPPs now move the Court for preliminary approval of the Settlement Agreement and to certify the proposed Settlement Class. As discussed in the memorandum below, at a later time Co-Lead Counsel will move the Court to approve a program to notify members of the Settlement Class of this and any other then-pending settlements, as CIIPPs believe it would be more efficient and economical to defer the notice and claims process until such time as there are further recoveries in the case, by settlement or by judgment.

---

[1] The Settlement Agreement is attached as Exhibit A to the Declaration of Adam J. Zapala (hereinafter "Settlement" or "Settlement Agreement").

## II.     BACKGROUND

This is an antitrust class action filed against certain producers of Broilers. CIIPPs allege that Defendants conspired and combined to fix, raise, maintain, and stabilize the price of Broilers sold in the United States. *See* CIIPPs' Sixth Amended Consolidated Amended Complaint, ¶ 1 (ECF No. 1586). CIIPPs further allege that Defendants implemented their conspiracy in various ways, including, but not limited to, coordinating their output and limiting production with the expected result of increasing prices of Broilers sold in the United States. CIIPPs further allege that Defendants achieved these ends by exchanging detailed, competitively sensitive, and closely-guarded non-public information about prices, capacity, sales volume, and demand, including through Defendant Agri-Stats.

This litigation was commenced in September 2016. On October 14, 2016, the Court appointed the undersigned as Interim Co-Lead Counsel for the CIIPPs (*See* ECF No. 144). Thereafter, CIIPPs filed a Consolidated Amended Complaint on October 28, 2016 (ECF No. 179). The current, operative complaint was filed on January 23, 2019 (ECF No. 1586) (hereinafter, the "Complaint"). On January 27, 2017, all Defendants named at the time filed a motion to dismiss CIIPPs' complaint (ECF No. 292), which the Court largely denied on November 11, 2017. *See* ECF No. 541. Thereafter, discovery commenced in earnest and proceeded apace, but slowed by the Department of Justice ("DOJ") stay, (ECF Nos. 2302; 3153), and the current COVID-19 pandemic.

On October 22, 2018, CIIPPs reached a settlement with Fieldale Farms Corporation ("Fieldale") for $1.4 million. *See* ECF Nos. 1533, 1534.  The Court preliminarily approved CIIPPs' settlement with Fieldale on February 20, 2019, finding it "fair, reasonable, adequate, and

in the best interest of the Class, [with] no obvious reasons to doubt its fairness." ECF No. 1910 at 2.

Since filing their initial complaint, CIIPPs have continued their factual investigation into the conspiracy alleged in their Complaint, including through vigorous and substantial party and non-party discovery and consultation with industry and economic experts.

In addition to monetary consideration, this second settlement permits CIIPPs to obtain specified types cooperation from Amick Farms in aid of CIIPPs' continued prosecution against the remaining Defendants. *See* Settlement Agreement, II.§.A.3 (a)-(c). Further, like Fieldale, Amick Farms has one of the smallest Broiler market shares of all Defendants to the CIIPP class, which CIIPPs estimate to be approximately 1.7%, whereas Fieldale's market share to the CIIPP class is 1.9%. Zapala Decl. ¶ 5. Thus, a settlement with Amick Farms will not materially affect the size of the Defendant group remaining in the litigation or the joint and several commerce at issue in the case. Additionally, the non-settling Defendants remain jointly and severally liable for damages resulting from Amick Farms' Broiler sales during the Class Period.

## III.    SUMMARY OF SETTLEMENT AGREEMENT

After extensive arm's length negotiations over the course of many months, during which time the parties held a number of telephonic meetings and exchanged information and settlement proposals and each side had the opportunity to be fully informed of the relative strengths and weaknesses of their positions, litigation risks and issues involving ability to pay, *see* Zapala Decl., ¶ 7, CIIPPs agreed to settle with Amick Farms in return for its agreement to pay two million and nine hundred fifty thousand dollars ($2,950,000.00) to the Settlement Class, and to provide specified types of cooperation to CIIPPs in their ongoing prosecution of the case. *See* Settlement Agreement, §§ II.A.3 (a)-(c).    Amick Farms' cooperation includes authenticating

3

documents it produced during the course of the litigation, laying an evidentiary foundation for the admissibility of documents it produced during discovery, and providing a trial witness to authenticate and lay a foundation for documents to get into evidence. *See id.* at § II.A.3 (a)-(c). CIIPPs and the proposed Settlement Class agreed to release claims against Amick Farms arising from the conduct alleged in the Complaint. *Id.* at §§ I.B.28-29, II.A.1(a)-(b). The release does not extend to any other Defendants.

## IV.     ARGUMENT

### A.     The Proposed Settlement Falls Within the Range of Possible Approval and Should Be Preliminarily Approved

There is an overriding public interest in quieting litigation through settlement; this is particularly true in complex class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986) (noting that there is a general policy favoring voluntary settlements of class action disputes); *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement*."), overruled on other grounds, Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong*, 616 F.2d at 313 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). A class action, however, may be settled only with court approval. *See* 2 NEWBERG ON CLASS ACTIONS, §11.24 (3d ed. 1992); *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) ("The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'"); *Armstrong*, 616 F.2d at

314; *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y 1997).

A proposed settlement falls within the "range of possible approval" under Rule 23(e) when it is likely that the proposed settlement will meet the standards applied at final approval. The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *see Uhl v. Thoroughbred Tech. & Telecomms, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002); *Isby*, 75 F.3d at 1198-99.

When granting preliminary approval, a court does not conduct a "definitive proceeding on the fairness of the proposed settlement," and the court "must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting *In re Montgomery Cty. Real Estate Antitrust Litig.*, 83 F.R.D. 305, 315-16 (D. Md. 1979). That determination must await the final hearing where the fairness, reasonableness, and adequacy of the settlement are assessed under the factors set forth in *Armstrong*.[2]

Here, the settlement consideration ($2.95 million) is substantially more than the previous settlement with Fieldale ($1.4 million), which this Court already preliminarily approved. ECF 1910. This is so despite the two Settling Defendants having relatively similar market shares within the CIIPP class during the relevant period. Zapala Decl. ¶ 5. In light of the context of

---

[2] The *Armstrong* factors for a motion for final approval of a class settlement as fair, reasonable, and adequate are: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendants' ability to pay; (3) the complexity, length, and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of class members to the settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and the amount of discovery completed. *Armstrong,* 616 F. 2d at 314.

this case and this settlement, the gross settlement amount militates in favor of preliminary approval.

### B.    The Settlement Is Fair and Resulted from Arms'-Length Negotiation

All of the procedural elements for finding that the settlement should be preliminarily approved exist.  The requirement that class action settlements be fair is designed to protect against collusion among the parties. *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. at 1383. At preliminary approval, there is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arms'-length negotiations. *See* 2 NEWBERG ON CLASS ACTIONS, § 11.40 at 451 (2d ed. 1985); *Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 WL 17009594, at *3 n.2 (N.D. Ill. Oct. 10, 1995) ("[I]t may be presumed that the agreement is fair and adequate where, as here, a proposed settlement is the product of arm's-length negotiations."). Settlements proposed by experienced counsel and which result from arm's length negotiations are entitled to a presumption of fairness. *See, e.g.*, *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (*quoting Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997)). The initial presumption in favor of such settlements reflects courts' understanding that vigorous negotiations between experienced counsel advance the fairness concerns embodied in Rule 23(e).

The proposed Settlement plainly meets the standards for preliminary approval. The Settlement reached here is the product of intensive settlement negotiations conducted over a period of several months and included many rounds of give-and-take between CIIPPs' Co-Lead Counsel and Amick Farms' counsel. (Zapala Decl. ¶ 6). Thus, based on the arms'-length negotiations between the parties and the extensive discovery record at the time of settlement, CIIPP Co-Lead Counsel believe this is a fair settlement for the Class. (*Id.* at ¶ 12.)

Moreover, this Settlement does not affect the potential full recovery of damages for the Class under the antitrust laws in light of the fact that the remaining Defendants will remain jointly and severally liable for injuries resulting from Amick Farms' sales during the Class Period. *See Paper Sys. Inc. v. Nippon Paper Indus.*, 281 F.3d 629, 632 (7th Cir. 2002) ("[E]ach member of a conspiracy is liable for all damages caused by the conspiracy's entire output."). In addition to not affecting overall damages, the Settlement should hasten and improve the Class's recovery by providing CIIPPs with cooperation and momentum. *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability and where settling defendant's "assistance in the case again [a non-settling defendant] will prove invaluable to plaintiffs").

In addition to a monetary payment, the Settlement will provide the additional benefit to the Class in the form of cooperation from Amick Farms, which can assist counsel in streamlining discovery and trial. Courts have recognized the value of such cooperation. *See, e.g., In re IPO Sec. Litig.*, 226 F.R.D. 186 (S.D.N.Y. 2005). While CIIPPs believe that their case is strong, any complex antitrust litigation is inherently costly and risky, and this Settlement mitigates that risk and protects the Class.

Conversely, Amick Farms believes its case is strong and that it would achieve success on the merits in defense of the action—both at class certification and at summary judgment. It denies any liability with respect to both the alleged coordinated conduct and the Georgia Dock aspects of the alleged conspiracy, and Amick maintains that it did nothing wrong and that CIIPPs suffered no damages.

Furthermore, there are many contingencies that could affect a determination on the merits in favor of the CIIPPs, including the risk of whether or not a class or classes are certified;

whether the overcharge can be demonstrated on a class-wide basis to the indirect class; assuming the classes are certified, whether they will be for a shorter period than proposed by CIIPPs; whether or not certain Defendants will prevail on liability; and, if a favorable judgment is obtained, whether or not certain Defendants will become insolvent at the conclusion of the matter. These are just a few of the risks, and Interim Lead Counsel's duties to the CIIPPs preclude a further or more detailed discussion in this brief as to how Interim Lead Counsel weighs those risks.

Indeed, CIIPPs' work in this case has been extensive, and the information gleaned during the course of litigation and discovery guided the parties during the settlement negotiations. Among other tasks through the course of this litigation, CIIPPs' counsel (1) comprehensively researched the industry and consulted with experts prior to filing their 177-page consolidated complaint; (2) extensively briefed oppositions to the motions to dismiss filed by certain Defendants; (3) largely prevailed on those pleadings challenges; (4) have received over six and a half million documents and are in the process of reviewing them; (5) negotiated several case protocols, such as the ESI, discovery limits, and others; (6) attended (and argued) at countless court hearings; and (7) have already taken over 100 depositions with a view toward trial.

In sum, the Settlement Agreement: (1) provides substantial benefits to the class; (2) is the result of extensive good faith negotiations between knowledgeable and skilled counsel; (3) was entered into after extensive factual investigation, discovery, and legal analysis; and (4) in the opinion of experienced Class Counsel, is fair, reasonable, and adequate to the Class. Accordingly, Co-Lead Counsel believe that the Settlement Agreement is in the best interests of the Class Members and should be preliminarily approved by the Court.

### C.     The Court Should Certify the Proposed Settlement Class

At the preliminary approval stage, the Court must also determine whether the proposed

Settlement Class should be certified for settlement purposes. Under Rule 23, class actions may

be certified for settlement purposes only. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 620 (1997). Certification of a settlement class must satisfy each requirement set forth in

Rule 23(a), as well as at least one of the separate provisions of Rule 23(b). *Id.* at 613-14; *see also*

*In re Cmty. Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005) ("[C]ertification of classes for

settlement purposes only [is] consistent with Fed. R. Civ. P. 23, provided that the district court

engages in a Rule 23(a) and (b) inquiry[.]"). CIIPPs seek certification of the following settlement

class:

> All entities who indirectly purchased Broilers from Defendants or co-
> conspirators in the United States during the Class Period for their own use in
> commercial food preparation, including institutional purchasers such as
> hospitals, nursing homes, and schools.
>
> Specifically excluded from this Class are: (a) natural persons who purchased
> Broilers for their personal use and not for commercial Food preparation (End-
> User Consumers); (b) purchasers of Broilers directly from Defendants; (c)
> purchasers of Broilers for resale in unaltered form; (d) purchasers of value
> added products containing Broilers, that are not manufactured, supplied or
> processed by Defendants, or otherwise not under the control of Defendants; (e)
> the Defendants; (f) the officers, directors or employees of any Defendant; (g)
> any entity in which any Defendant has a controlling interest; and any affiliate,
> legal representative, heir or assign of any Defendant; (h) any federal, state
> governmental entities, any judicial officer presiding over this action and the
> members of his/her immediate family and judicial staff; (i) any juror assigned to
> this action; and G) any Co-Conspirator identified in this action.

(Settlement Agreement, § II.E.2.) This is in all material respects the same class proposed in

CIIPPs' Complaint and the same settlement class in the CIIPP-Fieldale settlement agreement that

was also preliminarily approved by the Court. ECF No. 1910.[3] As detailed below, this proposed Class meets the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3).

### 1. The Requirements of Rule 23(a) are Satisfied

#### a. Numerosity

Fed. R. Civ. P. 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable." No magic number satisfies the numerosity requirement, however, "a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Schmidt v. Smith & Wollensky LLC*, 268 F.R.D. 323, 326 (N.D. Ill. 2010) (citations omitted). The proposed Settlement Class consists of commercial food preparers, like restaurants, that indirectly purchased Broilers made by the Defendants or co-conspirators during the period from January 1, 2008 to February 20, 2019. There are, therefore, hundreds of thousands of potential class members. Thus, joinder would be impracticable and Rule 23 (a)(1) is satisfied.

#### b. Common Questions of Law and Fact

Fed. R. Civ. P. 23(a)(2) requires that there be "questions of law or fact common to the class." Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim and "[e]ven a single [common] question will" satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

A central allegation in the Complaint is that Defendants illegally conspired to increase the prices of Broilers. Proof of this conspiracy will be common to all Class members. *See, e.g.*, *Thillens, Inc. v. Cmty. Currency Exch. Ass'n*, 97 F.R.D. 668, 677 (N.D. Ill. 1983) ("The overriding common issue of law is to determine the existence of a conspiracy."). In addition to

---

[3] The only material difference between the two proposed classes is that the Amick agreement includes indirect purchasers from Connecticut, which amended its law effective in October 2018 to allow for antitrust recovery for indirect purchasers. CIIPPs will soon seek to amend their operative complaint to add a claim for Connecticut indirect purchasers.

that overarching question, this case is replete with other questions of law and fact common to the Settlement Class, including: (1) the role of each Defendant in the conspiracy; (2) whether Defendants' conduct violated Section 1 of the Sherman Act and state indirect purchaser and consumer protection statutes; (3) whether Defendants affirmatively concealed their agreement; (4) whether Defendants' conspiratorial conduct restricted Broiler supplies and caused the prices of Broilers to be inflated; (5) the appropriate measure of monetary relief, including the appropriate measure of damages; and (6) whether Plaintiffs and Class members are entitled to declaratory and/or injunctive relief. Accordingly, the Settlement Class satisfies Rule 23(a)(2).

### c. Typicality

Fed. R. Civ. P. 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. "[T]ypicality is closely related to commonality and should be liberally construed." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009) (citations omitted). Typicality is a "low hurdle," requiring "neither complete coextensivity nor even substantial identity of claims." *Owner-Operator Indep. Drivers' Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005). When "the representative party's claim arises from the same course of conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory," factual differences among class members do not defeat typicality. *Id.* Courts generally find typicality in cases alleging a price-fixing conspiracy. *See, e.g.*, *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 185 (D.N.J. 2003) (finding that plaintiffs met the typicality requirement based on the fact that plaintiffs' main claim - that they were harmed by an illegal price-fixing conspiracy - was the same for all class members).

CIIPPs here allege a conspiracy to fix, maintain, and inflate the price of Broilers in the United States. The named class representatives will have to prove substantially the same

elements that absent Settlement Class members would have to prove, *i.e.*, the existence and effect of such conspiracy. As alleged in the Complaint, each named representative purchased Broilers indirectly from one or more Defendants and that it was overcharged and suffered an antitrust injury as a result of the violations alleged in the Complaint. (Complaint, ¶¶ 22-28.) Because the class representatives' claims arise out of the same alleged illegal anticompetitive conduct and are based on the same alleged theories and will require the same types of evidence to prove those theories, the typicality requirement of Rule 23(a)(3) is satisfied.

### d.    Adequacy

Fed. R. Civ. P. 23(a)(4) requires that, for a case to proceed as a class action, the court must find that "the representative parties will fairly and adequately protect the interests of the class." Adequacy of representation is measured by a two-part test: (i) the named plaintiffs cannot have claims in conflict with other class members, and (ii) the named plaintiffs and proposed class counsel must demonstrate their ability to litigation the case vigorously and competently on behalf of named and absent class members alike. *See Kohen v. Pacific Inv. Mgmt.*, 571 F.3d 672, 679 (7th Cir. 2009).

Both requirements are satisfied here. As they demonstrated at the time they sought appointment, Co-Lead Counsel are qualified, experienced, and thoroughly familiar with antitrust class action litigation. Co-Lead Counsel have successfully litigated many significant antitrust actions and have prosecuted and will continue to vigorously prosecute this lawsuit.[4]

Moreover, the interests of the settling Class members are aligned with those of the representative Plaintiffs. Plaintiffs, like all Class members, share an overriding interest in obtaining the largest possible monetary recovery and as fulsome cooperation as possible. *See In*

---

[4] *See* ECF Nos. 116-0—116-8 (CIIPPs' Motion to Appoint Co-Lead and Liaison Counsel); ECF No. 144 at p. 6 (Court's Order of October 14, 2016 appointing same).

*re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes"). Representative Plaintiffs are not afforded any special compensation by this proposed Settlement and all Class members similarly share a common interest in obtaining Amick Farms' cooperation.

As they respectfully submit has been demonstrated by their conduct to date, Co-Lead Counsel have diligently represented the interests of the Class in this litigation and will continue to do so. Accordingly, the requirements of Rule 23(a)(4) are satisfied.

### 2. The Proposed Settlement Class Satisfied Rule 23(b)(3)

Once Rule 23(a)'s four prerequisites are met, Plaintiffs must show the proposed Settlement Class satisfies Rule 23(b)(3) by demonstrating that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." As to predominance, "[c]onsiderable overlap exists between the court's determination of commonality and a finding of predominance. A finding of commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts." *Saltzman*, 257 F.R.D. at 484.

In antitrust conspiracy cases such as this one, courts consistently find that common issues of the existence and scope of the conspiracy predominate over individual issues. *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 408 (S.D. Ohio 2007); *see also In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1039 (N.D. Miss. 1993) ("As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment."). This follows from

the central nature of a conspiracy in such cases. *Hughes v. Baird & Warner, Inc.*, No. 76 C 3929, 1980 WL 1894, at *3 (N.D. Ill. Aug. 20, 1980) ("Clearly, the existence of a conspiracy is the common issue in this case. That issue predominates over issues affecting only individual sellers."); *see also Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.").

Plaintiffs must also show that a class action is superior to individual actions, which is evaluated by four considerations:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

Fed. R. Civ. P. 23(b)(3).

Here, any Class member's interest in individually controlling the prosecution of separate claims is outweighed by the efficiency of the class mechanism. Hundreds of thousands of entities purchased Broilers during the class period; settling these claims in the context of a class action conserves both judicial and private resources and hastens Class members' recovery. Finally, while Plaintiffs see no management difficulties in this case, this final consideration is not pertinent to approving a settlement class. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Accordingly, the proposed class action is superior to other available methods (if any) for the fair and efficient adjudication of the controversy relating to Amick Farms.

### D. Notice to the Class

Rule 23(e) requires that prior to final approval, notice of a proposed settlement be given in a reasonable manner to all class members who would be bound by such a settlement. For a class proposed under Rule 23(b)(3), whether litigated or by virtue of a settlement, Rule 23(c)(2)(B) enumerates specific requirements. At an appropriate time prior to moving for final approval of this proposed Settlement (presumably grouped with additional settlements to ensure economies for the Class), CIIPPs intend to propose to the Court a plan of notice which, pursuant to Rule 23(c)(2)(B), will provide due process and reasonable notice to all customers of Defendants—Settling and Non-Settling Defendants alike—who can be identified through customer lists. For the reasons outlined below, and with Amick Farms' agreement, CIIPPs request that the Court agree to defer formal notice to the Class at the present time.

The CIIPP class is numerically large and geographically dispersed. Thus, there is a substantial cost that comes with noticing the CIIPPs' class, with notice programs designed to meet the requirements of Rule 23 and due process likely to run well into six figures (if not into the millions), each time notice is provided to a class of this size. (Zapala Decl., ¶ 11.) Therefore, CIIPPs respectfully believe that the most prudent course of action for the class is to save notice costs until there is a critical mass of CIIPP settlements for efficiency and economy purposes. In large antitrust cases, courts have deferred notice until a critical mass of settlements have been reached to make it cost effective. *See, e.g., In re Aftermarket Filters Antitrust Litig.*, No. 1:08-cv-04883, Preliminary Approval Order (ECF No. 885) at p. 5 (N.D. Ill. Feb. 16, 2012) (granting preliminary approval of settlement agreements, certifying settlement class, and ordering that class notice be deferred until a later time); *In re New Jersey Tax Sales Antitrust Litig.*, No. 3:12-cv-01893, Order (ECF No. 276) at ¶ 7 (D.N.J. Aug. 13, 2013) (granting preliminary approval of

settlement and finding that cost of class notice warranted deferral); *In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. 07-05634-CRB, (ECF Nos. 968, 1009) (N.D. Cal.) (granting approval of plan of allocation and final approval of interim settlements, ordering payment of attorneys' fees and reimbursement of litigation expenses with claims not being paid until the end of the case); *In re Auto. Parts Antitrust Litig.* (*Wire Harness Systems*), Master File No. 12-md-02311, Case No. 2:12-cv-00103, Order Approving End-Payor Plaintiffs' Plan of Allocation of the Settlements at ¶ 10 (ECF No. 577) (E.D. Mich. July 10, 2017) (approving a plan of allocation that contemplates paying class members at the end of the case to save expenses).

## VII.    CONCLUSION

For these reasons, Interim Co-Lead Counsel respectfully request that the Court preliminarily approve the Amick Farms Settlement and preliminarily certify the Settlement Class.

Dated: June 22, 2020

Respectfully Submitted:

/s/ *Daniel C. Hedlund*                                     /s/ *Adam J. Zapala*
Daniel E. Gustafson                                          Adam J. Zapala
Daniel C. Hedlund                                            Tamarah P. Prevost
Michelle J. Looby                                            **COTCHETT, PITRE & McCARTHY, LLP**
Joshua R. Rissman                                            840 Malcolm Road, Suite 200
Brittany N. Resch                                            Burlingame, CA 94010
**GUSTAFSON GLUEK PLLC**                                     Telephone: (650) 697-6000
220 South Sixth Street #2600
Minneapolis, MN 55402
Telephone: (612) 333-8844

***Lead Counsel for the Commercial and Institutional Indirect Purchaser Class***

Kenneth A. Wexler
Melinda J. Morales
**WEXLER WALLACE LLP**
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222

*Liaison Counsel for the Commercial and Institutional Indirect Purchaser Plaintiff Class*