**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 TMD |
| This Document Relates To: All Commercial and Institutional Indirect Purchaser Plaintiff Actions | |

**DECLARATION OF ADAM J. ZAPALA IN SUPPORT OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' UNCONTESTED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH DEFENDANT AMICK FARMS, LLC AND FOR CONDITIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS**

I, Adam J. Zapala, declare and state as follows:

1. I am a partner at Cotchett, Pitre & McCarthy, LLP. During the pendency of this litigation, my firm has acted as Interim Co-Lead Class Counsel to the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs"). I make this declaration based on my personal knowledge and if called as a witness, I could and would competently testify to the matters stated herein.

2. I submit this declaration in support of Class Counsel's Motion to: (a) preliminarily approve the settlement reached with Defendant Amick Farms, LLC and its subsidiaries, affiliates and predecessors (collectively "Amick Farms" or "Settling Defendant"); and (b) to conditionally certify the Settlement Class.

3. On behalf of the CIIPPs, I—along with my Co-Lead Counsel—personally conducted settlement negotiations with counsel for Amick Farms over the course of several months and on many occasions. The CIIPPs and Amick Farms recently signed the current proposed

1

settlement agreement on June 3, 2020.

4.     Well before our clients filed this case, we commenced and pursued an extensive investigation of the Broiler market and conduct of the Defendants underlying the allegations in CIIPPs' Consolidated Amended Complaint (ECF No. 179). We have litigated this case extensively since then. By the time we signed the settlement agreement with Amick Farms to settle our claims against them, we were well aware of the strengths and weaknesses of each side's positions. In addition to our extensive pre-filing investigation, we had briefed the motions to dismiss our complaints and the parties are currently engaged in, and have been engaged in, extensive discovery efforts. As a result, we have had the benefit of substantial information obtained from the Defendants through their document productions and through formal discovery.

5.     Moreover, prior to reaching a settlement with Amick, CIIPPs reached a settlement with another Defendant, Fieldale Farms Corporation ("Fieldale") for $1.4 million.  *See* ECF No. 1534.  CIIPPs' experts estimate that Fieldale's sales of Broilers to the CIIPP class constitutes 1.9% of overall sales to the CIIPP class, while Amick Farms has one of the smallest Broiler market shares of all Defendants to the CIIPP class which CIIPPs estimate to be approximately 1.7% of the overall sales to the CIIPPs' class.

6.     During the litigation and in relation to this settlement, Co-Lead Counsel researched, analyzed and evaluated many contested legal and factual issues. Based on that analysis, and the information obtained from discovery and voluntary cooperation, Co-Lead Counsel were well-informed of the facts and the benefits, risks and consequences of the proposed settlement with Amick Farms. Counsel thoroughly evaluated the relative strengths and weaknesses of our respective litigation positions in relation to this settlement.

7.     The resulting settlement negotiations with Amick Farms were at arm's length and

were hard-fought at all times. The Settlement was the product of intensive settlement negotiations conducted over a period of many months and included several rounds of give-and-take between CIIPPs' Co-Lead Counsel and Amick Farms' counsel during several telephonic meetings. The parties debated many issues, and negotiated many terms of the settlement, including the amount of payment, the timing of payment, potential conditions on payment, and potential cooperation against other Defendants. Each side had the opportunity to be fully informed of the relative strengths and weaknesses of their positions, litigation risks and issues involving the ability to pay. Throughout this process, Amick Farms has been represented by experienced, sophisticated counsel.

8.      There was no collusion or preference among counsel for the parties at any time during these negotiations. To the contrary, the negotiations were contentious, hard-fought and fully informed. CIIPPs sought to obtain the greatest monetary benefit possible from Amick Farms at this litigation juncture. Furthermore, there was no discussion or agreement at any time regarding the amount of attorneys' fees CIIPPs' counsel would ask the Court to award in this case.

9.      In the proposed settlement, Amick Farms commits to pay $2.95 million to the settlement fund within 30 days of the Effective Date of the Settlement Agreement. Amick Farms also agrees to specified types of cooperation with Plaintiffs in prosecuting any remaining claims against the other Defendants. Amick Farms' cooperation will include making reasonable efforts to authenticate documents it produced during the course of the litigation, lay an evidentiary foundation for the admissibility of documents it produced during discovery, and providing a trial witness to authenticate and lay a foundation for documents to get into evidence. *See* Exhibit A at § II.A.3 (a)-(c).

10.      For purposes of final approval, Rule 23 requires notice to settlement class members

of, among other things, the fact and material terms of the proposed settlement, instructions on how to opt out of the proposed class or object to the settlement, and other information.

11.     In my experience, the cost of providing class notice in complex antitrust class actions like this well exceeds $300,000, and often costs significantly more, potentially into the millions of dollars given the size and geographic diversity of the class.

12.     I have personally prosecuted numerous antitrust class actions as lead counsel or in other leadership positions. I have negotiated many settlements during those years. In my opinion, and in the opinion of my esteemed Co-Lead Counsel, the proposed settlement agreement with Amick Farms is fair, reasonable and adequate. The settlement provides substantial benefits to the Class and avoids the delay and uncertainty of continuing protracted litigation with Amick Farms.

13.     A true and correct copy of the Settlement Agreement between CIIPPs and Amick Farms is attached hereto as Exhibit A to this Declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 22, 2020 in Burlingame, California.


          */s/ Adam J. Zapala*
          ADAM J. ZAPALA

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: BROILER CHICKEN ANTITRUST LITIGATION | Case No. 1:16-cv-08637 |
| THIS DOCUMENT RELATES TO:<br><br>COMMERCIAL & INSTITUTIONAL INDIRECT PURCHASER PLAINTIFF ACTIONS | |

**SETTLEMENT AGREEMENT BETWEEN COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS AND DEFENDANT AMICK FARMS, LLC**

This Settlement Agreement ("Settlement Agreement" or "Agreement") is made and entered into as of the Effective Date, by and between Amick Farms, LLC ("Amick Farms" or "Settling Defendant") and the Commercial and Institutional Indirect Purchaser Plaintiffs ("Plaintiffs" or "CIIPPs") individually and on behalf of a class of indirect purchasers of Broilers, as defined herein, subject to the approval of the Court (the "Settlement Class").

**RECITALS**

A.      Plaintiffs are prosecuting the above-captioned Action on their own behalf and on behalf of the Settlement Class.

B.      Plaintiffs have alleged, among other things, that Amick Farms entered into a contract, combination or conspiracy in restraint of trade, the purpose and effect of which was to suppress competition and to allow Amick Farms to charge supra-competitive prices during the Class Period, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, as well as various state antitrust, unfair competition, unjust enrichment, and consumer protection laws..

C. Settling Defendant vigorously and affirmatively denies all allegations of wrongdoing in the Action and has alleged numerous defenses to Plaintiffs' Claims.

D. This Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, or regulation or of any liability or wrongdoing by the Settling Defendant or of the truth of any of Plaintiffs' Claims, nor shall it be deemed or construed to be an admission nor evidence of Settling Defendant's defenses.

E. Co-Lead Counsel have conducted an investigation into the facts and law regarding the Action and the possible legal and factual defenses thereto and have concluded that a settlement with Settling Defendant according to the terms set forth below is fair, reasonable, adequate, and beneficial to and in the best interests of the Settlement Class, given the uncertainties, risks, and costs of continued litigation, and given the fact that, if approved, the proposed settlement will be an early settlement in a case with many remaining Defendants and because of joint and several liability, this Settlement does not impair the Plaintiffs' ability to collect the full amount of damages to which they and the Settlement Class may be entitled in the Action (including damages attributable to Settling Defendant's alleged conduct).

F. Despite its belief that it is not liable for, and has strong defenses to, Plaintiffs' Claims, Settling Defendant desires to settle the Action to avoid the further expense, inconvenience, disruption, and burden of this litigation and any other present or future litigation, to avoid the risks inherent in uncertain complex litigation and trial, and thereby to put to rest this controversy.

G. Arm's-length settlement negotiations have taken place between Co-Lead Counsel and the Settling Defendant's Counsel over several months, and this Agreement has been reached as a result of those negotiations.

H.      The Parties to this Agreement desire to fully and finally settle this Action and all potential Released Claims by Releasing Parties against any of the Released Parties as set forth below to avoid the costs and risks of protracted litigation and trial.

**IT IS HEREBY AGREED**, by and among the Settling Parties, that this Action and all Released Claims are finally and fully settled and compromised and that this Action shall be dismissed in its entirety with prejudice as to the Released Parties and without cost to the Released Parties other than those costs set forth in this Settlement Agreement, subject to approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, upon and subject to the following terms and conditions:

## I.      DEFINITIONS

### A.      Settlement Class Definition

"Settlement Class" means the class described in Section II(E)(2) below.

### B.      General Definitions

1.      "Action" means the action captioned *In re Broiler Chicken Antitrust Litigation*, 1:16-cv-08637 (N.D. Ill.) ("Broilers"), which is currently pending in the United States District Court for the Northern District of Illinois.

2.      "Broilers" means chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, raw or cooked, whole or in parts, or as a meat ingredient in a value added product, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards.

3.      "Claims" means any and all actual or potential causes of action, claims, contentions, allegations, assertions of wrongdoing, damages, losses, or demands for recoveries,

remedies, or fees complained of, or relating or referred to, or arising from the conduct alleged in the Action or which could have been alleged in the Action.

4.      "Class Member" means each member of the Class that does not timely and properly exclude itself from the Settlement Class.

5.      "Class Notice" means the notice to the Class that is approved by the Court, in accordance with Section II(E)(4) below.

6.      "Class Period" means the period from and including January 1, 2008 through February 20, 2019.

7.      "Co-Conspirator" means those entities named as co-conspirators in the Operative Complaint.

8.      "Co-Lead Counsel" and "Settlement Class Counsel" mean collectively the law firms of Gustafson Gluek PLLC and Cotchett, Pitre & McCarthy, LLP, Commercial and Institutional Indirect Purchaser Plaintiffs' Interim Co-Lead Class Counsel.

9.      "Complaint" or "Operative Complaint" means the Sixth Amended Consolidated Class Action Complaint in the Action, ECF Nos. 1568 and 1569 and corrected version 1586.

10.     "Court" or "District Court" means the United States District Court for the Northern District of Illinois and the Honorable Thomas M. Durkin or his successor, or any other Court in which the Action is proceeding.

11.     "Date of Final Approval" means the date on which Final Approval as provided for in Section II(E)(9) occurs.

12. "Date of Preliminary Approval" means the date on which the Court enters an order granting preliminary approval to this Settlement Agreement, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, as provided in Section II(E)(3) below.

13. "Defendant" or "Defendants" means any or all of the Defendants named in the Action, now or in the future.

14. "Documents" means (a) all papers, electronically stored information ("ESI"), statements, transcripts, or other materials within the scope of Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure; and (b) any copies or reproductions of the foregoing, including microfilm copies or computer images.

15. "Effective Date" means the date on which this Settlement Agreement is entered into and executed by all Parties.

16. "Escrow Account" means the account with the Escrow Agent that holds the Settlement Fund.

17. "Escrow Agent" means the bank into which the Settlement Fund shall be deposited and maintained as set forth in Section II(C)of this Agreement.

18. "Fairness Hearing" means a hearing on the settlement proposed in this Settlement Agreement held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

19. "Indirect Purchaser State" means Arizona, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

20. "Final Approval" shall mean the satisfaction of all the conditions set forth in Section II(E)(9).

21. "Net Settlement Fund" means the Settlement Fund, plus accrued interest, less any award of attorneys' fees or reimbursement of expenses and less applicable taxes, tax preparation expenses, and costs of Class Notice and administration as provided for in this Settlement Agreement, that may be awarded or approved by the Court.

22. "Notice" means the notice in accordance with Section III(K).

23. "Opt-Out Claim" means any claim, as set forth in Sections II(E)(3) and (4) of this Settlement Agreement, made by a Person, otherwise qualifying as a member of the Settlement Class, that has validly and timely excluded itself from the Settlement Class.

24. "Order and Final Judgment" means the order and final judgment of the Court approving the Settlement Agreement, as described in Section II(E)(7) below.

25. "Parties" or "Settling Parties" means Settling Defendant and the Settlement Class, as represented by CIIPPs.

26. "Person(s)" includes an individual and an entity.

27. "Plaintiffs" means the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs").

28. "Released Claims" means any and all existing or potential claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, indirectly, representatively, derivatively or in any other capacity) that any of the Releasing Parties (defined below) ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown,

6

foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated, claims, demands, actions, suits, causes of action, injuries, or damages arising from or in connection with any act or omission during the Class Period complained of, relating to or referred to in the Action or which could have been raised in the Action, or relating to any act or omission of any of the Released Parties concerning Broilers. Notwithstanding the above, "Released Claims" do not include: (a) claims asserted against any other Defendant or alleged Co-Conspirator, including their joint and several liability for the damages attributable to Settling Defendant; (b) damages claims under the state or local laws of any jurisdiction other than an Indirect Purchaser State; or (c) any claims based on: (1) product defect or breach of warranty; (2) breach of contract (except such breaches relating to contractual provisions relating to anticompetitive actions and/or unfair or inflated pricing); or (3) purchases of Broilers by persons or entities other than the Releasing Parties, which includes certain claims specifically excluded from the Settlement Class in Section II(E)(2) below. The reservation of claims set forth in (a) through (c) of this Section I(B)(28) does not impair or diminish the right of the Released Parties to deny any such claims or to assert any and all defenses to such claims.

29. "Released Parties" means jointly and severally, individually and collectively, the Settling Defendant, its predecessors; successors; assigns; and any and all past, present, and future parents, owners, subsidiaries, divisions, departments, and affiliates; and all of its and their heirs, executors, devisees, administrators, officers, executives, directors, stockholders, partners, members, managers, agents, attorneys, advisors, auditors, accountants, contractors, servants, employees, representatives and insurers. Notwithstanding the foregoing, "Released Parties" does not include any other Defendant or alleged Co-Conspirator (except as to any affiliated person or entity described above), either explicitly or as a third party beneficiary.

30.     "Releasing Parties" means jointly and severally, individually and collectively, Plaintiffs, the Settlement Class, and each Class Member, on behalf of themselves and any person or entity claiming by or through them as, including without limitation, their respective predecessors; successors; assigns; and any and all past, present, and future parents, owners, subsidiaries, divisions, departments, affiliates, heirs, executors, devisees, administrators, officers, directors, stockholders, partners, members, managers, agents, attorneys, advisors, auditors, accountants, contractors, servants, employees, representatives and insurers.

31.     "Settling Defendant" means Amick Farms, LLC.

32.     "Settling Defendant's Counsel" means the law firm of Dykema Gossett PLLC, and attorneys associated therewith.

33.     "Settlement Amount" means the cash payment of TWO MILLION NINE HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($2,950,000), as more specifically described in Section II(A)(1), below.

34.     "Settlement Fund" means the funds described in Section II(A) of this Settlement Agreement, plus accrued interest, in the separate Escrow Account for the settlement contemplated by this Settlement Agreement established in accordance Section II(C) below.

## II.     SETTLEMENT

### A.     Performance By Settling Defendant

1.     **Settlement Payment.** In exchange for the full consideration described in this Settlement Agreement, Settling Defendant shall pay the Settlement Amount in United States dollars, and in immediately available funds, inclusive of the Settlement Class recovery amounts, any service awards to Plaintiffs for the work Plaintiffs performed on behalf of the Settlement Class ("Service Awards") as awarded by the Court, fees (including attorneys' fees and any other fees),

and costs, and any other fund or amounts which may be established or identified in connection with the Action.

      **a.** The Settlement Amount shall be paid by Settling Defendant into the Escrow Account for the Settlement Fund established in Section II(C)(1) by wire transfer, pursuant to instructions from the Escrow Agent or Co-Lead Counsel, within thirty (30) days following the later of: (i) the Effective Date and (b) Settling Defendant being provided with the W-9 account number, account name, and wiring information for the Escrow Account.

      **b.** Each Class Member shall look solely to the Net Settlement Amount for settlement and satisfaction by the Settling Defendant, as provided herein, of all Released Claims.

      **2.** **Compliance.** Settling Defendant asserts that its business practices do not constitute a *per se* or other violation of Section 1 of the Sherman Act with respect to the sale of Broilers. The parties agree that Settling Defendant will not, for a period of 24 months from the date of the entry of Final Judgment, engage in conduct that constitutes a *per se* violation of Section 1 of the Sherman Act with respect to the sale of Broilers.

      **3.** **Cooperation**. Settling Defendant shall cooperate in good faith with Plaintiffs and Settlement Class Counsel in accordance with the terms and provisions of this Agreement.  Such cooperation shall consist of the following:

      **a.** **Authentication of Documents.** Settling Defendant agrees to use reasonable efforts to authenticate, to the extent possible, documents and/or things produced in the Action, whether by declarations, affidavits, depositions, hearings and/or trials as may be necessary for the Action and further subject to the limitation in Section II(A)(3)(c).

**b.** **Foundation of Documents.** Settling Defendant agrees to use reasonable efforts to lay the foundation, to the extent possible, for documents and/or things produced in this Action so that they may be admissible and become evidence in this Action, whether by declaration, affidavits, depositions, hearings and/or trials as may be necessary for the Action and further subject to the limitation in Section II(A)(3)(c).

**c.** **Testimony at Trial.** Settling Defendant agrees to make available for testimony at trial in the Action one (1) current or former employee of Settling Defendant whom Settlement Class Counsel reasonably believes has knowledge regarding Plaintiffs' claims, or who is able to authenticate and lay a foundation for documents to get into evidence. With respect to former employees, Settling Defendant will make reasonable efforts to secure the witness's attendance, but may be unable to do so. Such a witness will be made available at the Settling Plaintiffs' expense and upon reasonable notice.

**d.** **Confidentiality.** All information or communications provided to Settlement Class Counsel pursuant to this Section II(A)(3) ("Cooperation Materials"), shall be treated as "Highly Confidential," unless otherwise agreed to, under the protective order entered on November 8, 2016 in the Acton (ECF NO. 202).

**4.** **No Additional Obligations.** Except as specifically set forth above, Settling Defendant shall have no other performance obligations under this Settlement Agreement whatsoever..

**B.** **Release and Covenant Not to Sue.**

**1.** **Release.** Upon the occurrence of the Date of Final Approval, and in consideration of the valuable consideration set forth in this Agreement, the Releasing Parties shall be deemed to, and by operation of the Order and Final Judgment shall have, hereby fully, finally,

and forever released, acquitted, relinquished, and discharged the Released Parties of all Released Claims.

2.     **Covenant Not to Sue**.   The Releasing Parties covenant not to sue or otherwise seek to establish liability against the Released Parties for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of the Released Claims, including, without limitation, seeking to recover damages or other relief relating to any of the Released Claims.   This Paragraph shall not apply to any action to enforce this Settlement Agreement.

3.     **Full Release**. The Parties to this Agreement expressly agree and confirm that the Released Claims as set forth in Section I(B)(28) and the provisions of Section II(B) constitute a full and final release by the Releasing Parties of the Released Parties for the Released Claims.

4.     **Waiver**. Upon the Date of Final Approval, the Releasing Parties shall be deemed to have, and by operation of the Order and Final Judgment shall have, with respect to the subject matter of the Released Claims, waived the provisions, rights, and benefits of Section 1542 of the California Civil Code (providing "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.") and Section 20-7-11 of the South Dakota Codified Laws (providing "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS

FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.").

The Releasing Parties shall further be deemed to have, and by operation of the Order and Final Judgment shall have, expressly waived all similar provisions, statutes, regulations, rules, or principles of law or equity of any other state or applicable jurisdiction, or principle of common law. In connection with the waiver and relinquishment set forth in this Paragraph, the Releasing Parties acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Released Claims, but that it is their intention to fully, finally, and forever release, acquit, relinquish and discharge the Released Parties of all Released Claims, and, upon the Date of Final Approval, shall be deemed to have, and by operation of the Order and Final Judgment, shall have, forever released, acquitted, relinquished, and discharged the Released Parties of all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, notwithstanding the discovery or existence of any such additional or different facts. The Releasing Parties intend and, by operation of the Order and Final Judgment, shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the Settlement of which this waiver and release is a part.

C. **Settlement Fund Administration.** The Settlement Fund shall be administered pursuant to the provisions of this Settlement Agreement and subject to the Court's continuing supervision and control, until the funds in the Settlement Fund are fully distributed, as follows:

1.     The Settlement Fund shall be established within an Escrow Account and administered by an Escrow Agent at a bank designated by Co-Lead Counsel and administered by an Escrow Agent designated by Co-Lead Counsel.  Co-Lead Counsel, Settling Defendant, and Settling Defendant's Counsel agree to cooperate in good faith to prepare an appropriate escrow agreement in conformance with this Settlement Agreement.

2.     Except as provided herein, neither the Settlement Class nor Co-Lead Counsel shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Settlement Class or obtaining approval of the settlement or administering the Settlement.  Co-Lead Counsel may, without prior order of the Court, withdraw from the Settlement Fund up to $400,000 to pay the costs for Class Notice and administration and for preliminary and final approval of this Settlement.  In the event that Court-ordered notice and administration costs exceed $400,000, Plaintiffs and Co-Lead Counsel may apply to the Court to pay such additional notice and administration costs from the Settlement Fund.  Up to $400,000 of the Class Notice and administration costs actually incurred pursuant to this Settlement Agreement shall be nonrefundable in the event that, for any reason, this Settlement is terminated or rescinded pursuant to Section II(E)(10).

3.     If there are other settlements at the time of, or within a reasonable amount of time after, the preliminary approval of this Settlement Agreement, Co-Lead Counsel shall endeavor to ensure that Class Notice and claims administration costs shall be paid from the settlement funds in this and the such other settlement agreements proportionate to the amount of any such settlements, consistent with any such other settlement agreements and the approval of the Court.

4. Under no circumstances will Settling Defendant be required to pay more or less than the Settlement Amount pursuant to this Settlement Agreement. For purposes of clarification, the payment of any Fee and Expense Award, the Class Notice and Administrative Costs (including payment of any applicable fees to Escrow Agent), any Service Awards to Plaintiffs, payments to Class Members and any other fees and costs associated with the implementation of this Settlement Agreement shall be exclusively paid from the Settlement Fund.

5. No other funds shall be paid or disbursements made from the Settlement Fund without an order of the Court, and in the event of any such order of the Court, any such additional payments or disbursements shall be refundable to Settling Defendant in the event that the Settlement Agreement is terminated or rescinded pursuant to Section II(E)(10).

6. The Escrow Agent shall, to the extent practicable, invest the funds deposited in the Settlement Fund in discrete and identifiable instruments backed by the full faith and credit of the United States Government, or fully insured by the United States Government or any agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. Any cash portion of the Settlement Fund not invested in instruments of the type described in the first sentence of this Section II(C)(6) shall be maintained by the Escrow Agent, and not commingled with any other funds or monies, in a federally insured bank account. Subsequent to payment into the Settlement Fund pursuant to Section II(A)(1), neither the Settling Defendant, any other Released Party, nor Settling Defendant's Counsel shall bear any responsibility or risk related to the Settlement Fund or the Net Settlement Fund.

7. The Parties agree that the Settlement Fund and the Net Settlement Fund are each intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1 and that the Escrow Agent, as administrator of the Qualified Settlement Fund within the

meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any Taxes, as defined below, owed with respect to the Escrow Account. Neither the Settling Defendant, any other Released Party, nor the Settling Defendant's Counsel shall have any liability or responsibility of any sort for filing any tax returns or paying any Taxes with respect to the Escrow Account.

8.      All: (i) taxes on the income of the Settlement Fund ("Taxes"), and (ii) expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, reasonable expenses of tax attorneys and accountants) shall timely be paid by the Escrow Agent out of the Settlement Fund. The Class Members shall be solely responsible for paying any and all federal, state, and local income taxes due on any distribution made to them pursuant to the Settlement provided herein.

9.      After the Date of Final Approval, the Net Settlement Fund shall be disbursed in accordance with a plan of distribution to be approved by the Court. The Class Members shall look solely to the Net Settlement Fund for settlement and satisfaction of any and all Released Claims from Released Parties. The timing of a motion to approve a plan of distribution of the Net Settlement Fund created by this Settlement Agreement shall be in the discretion of Co-Lead Counsel, and may be combined with a plan to distribute proceeds from other settlements in this Action.

D.      **Reversion**

Settling Defendant shall have no rights to reversion in the event that Class Members request exclusion or opt out of the Class, and any Opt-Out Claims shall have no effect on this Settlement Agreement.

E.      **Approval of Settlement Agreement and Dismissal of Released Claims.**

1.      **Cooperation.**  Plaintiffs and Settling Defendant shall use their best efforts to effectuate this Settlement Agreement, including cooperating in seeking the Court's approval of the Settlement Agreement, the giving of appropriate Class Notice under Federal Rules of Civil Procedure 23(c) and (e), and the complete and final dismissal with prejudice of the Action as to the Settling Defendant only.

2.      **Settlement Class Certification.** Plaintiffs shall seek, and Settling Defendant shall not object to, appointment of Plaintiffs' Co-Lead Counsel as Settlement Class Counsel for purposes of this Settlement, and certification in the Action of a Settlement Class for settlement purposes only, defined as follows:

> All entities who indirectly purchased Broilers from Defendants or co-conspirators in the United States during the Class Period for their own use in commercial food preparation, including institutional purchasers such as hospitals, nursing homes, and schools.

> Specifically excluded from this Class are: (a) natural persons who purchased Broilers for their personal use and not for commercial Food preparation (End-User Consumers); (b) purchasers of Broilers directly from Defendants; (c) purchasers of Broilers for resale in unaltered form; (d) purchasers of value added products containing Broilers, that are not manufactured, supplied or processed by Defendants, or otherwise not under the control of Defendants; (e) the Defendants; (f) the officers, directors or employees of any Defendant; (g) any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant; (h) any federal, state governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; (i) any juror assigned to this action; and (j) any Co-Conspirator identified in this action.

3.      **Preliminary Approval**.  Plaintiffs shall submit to the District Court a motion, at such time deemed appropriate in the discretion of Co-Lead Counsel (but in no event, no more than 45 calendar days from the Effective Date), requesting entry of an order preliminarily approving this Settlement Agreement ("Preliminary Approval Order").  Settling Defendant shall not oppose and shall reasonably cooperate in such motion, provided, however, that prior to filing

such a motion, Co-Lead Counsel shall provide Counsel for the Settling Defendant with a draft of such motion and shall consider in good faith any reasonable and timely edits proposed by Settling Defendant's Counsel. The proposed Preliminary Approval Order shall provide that, *inter alia*:

        **a.**    the settlement proposed in the Settlement Agreement has been negotiated at arm's length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Settlement Class;

        **b.**    after Class Notice has been carried out, a hearing on the settlement proposed in this Settlement Agreement shall be held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court (the "Fairness Hearing");

        **c.**    Class Members who wish to exclude themselves must submit an appropriate and timely request for exclusion;

        **d.**    Class Members who wish to object to this Agreement must submit an appropriate and timely written statement of the grounds for objection;

        **e.**    Class Members who wish to appear in person to object to this Agreement may do so at the Fairness Hearing pursuant to directions by the Court; and

        **f.**    The Action with respect to Plaintiffs' Claims is stayed as to the Released Parties except as necessary to effectuate this Settlement Agreement.

        **4.**    **Class Notice.**  The Class Notice shall provide for a right of exclusion, as set forth in Sections II(E)(3) and (4). The Class Notice shall also provide for a right to object to the proposed Settlement. The timing of a motion to direct or approve Class Notice of this Settlement Agreement shall be in the discretion of Co-Lead Counsel, and may be combined with class notice of other settlements in this Action, provided, however, that prior to filing such a motion to approve

Class Notice, Co-Lead Counsel shall provide Counsel for the Settling Defendant with a draft of such motion and shall consider in good faith any reasonable and timely proposed edits by Settling Defendant's Counsel.

5. **Cost of Class Notice**. The costs of providing Class Notice to Settlement Class Members shall be paid by the Escrow Agent from the Settlement Fund pursuant to Section II(C)(2) and (3).

6. **CAFA Notice.** Within ten (10) days of filing of this Settlement Agreement in court, Settling Defendant will provide to the appropriate state officials and the appropriate federal official the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA").

7. **Final Judgment**. If this Settlement Agreement is preliminarily approved by the Court, the Settlement Class, at a time to be determined at the discretion of Co-Lead Counsel, shall seek entry of an Order and Final Judgment, which Settling Defendant shall not oppose and in which it shall reasonably cooperate, that *inter alia*:

      **a.** certifies the Settlement Class described in Section II(E)(2), pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

      **b.** finally approves this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions;

      **c.** determines that the Class Notice constituted, under the circumstances, the most effective and practicable notice of this Settlement Agreement and the

Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

        **d.**    orders that all claims made against the Settling Defendant in the Action, be dismissed with prejudice and, except as expressly provided for in this Settlement Agreement, without further costs or fees;

        **e.**    incorporates the Releases and Covenants set forth in Section II(B) of this Agreement and makes the Releases and Covenants effective as of the date of the Final Order and Final Judgment;

        **f.**    reserves to the Court exclusive jurisdiction over the settlement and this Settlement Agreement, including the administration and consummation of this Agreement;

        **g.**    determines under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directs that the judgment of dismissal as to the Released Parties shall be final and entered forthwith; and

        **h.**    orders that Net Settlement Fund may be disbursed as provided in the Final Approval Order or other order of the Court.

        **8.**    **Class Counsel Fees and Expenses; No Other Costs.**

        **a.**    Except as otherwise provided in Section II(A)(1) of this Settlement Agreement, the Released Parties shall have no responsibility for any other payments, fees or costs, including Co-Lead Counsel's attorneys' fees, costs, and expenses or the fees, costs, or expenses of any Plaintiff's or Settlement Class Member's respective attorneys, experts, advisors, or

representatives, provided, however, that with respect to the Action, including this Settlement Agreement, the Settling Defendant shall bear its own costs and attorneys' fees.

      **b.**     At their discretion and after Final Approval and proper notice to Class Members and opportunity to object, Co-Lead Counsel may seek a Court order granting attorneys' fees and expenses from the Settlement Fund, separately or in conjunction with other settlements.

      **c.**     At their discretion and after Final Approval and proper notice to Class Members and opportunity to object, Class Counsel may seek from the Settlement Fund, separately or in conjunction with other settlements, a court order granting reimbursement of costs and Service Awards, and to compensate for the time and expense they have incurred in bringing this Action.

      **d.**     The procedure for and the allowance or disallowance by the Court of any applications by Co-Lead Counsel for attorneys' fees and expenses or the expenses of or Service Awards to Plaintiffs to be paid out of the Settlement Fund are not part of or a condition to the Settlement set forth herein, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement and the Settlement Agreement, and any order or proceeding relating to any application for attorneys' fees or expenses or Service Awards shall not operate to terminate or cancel this Settlement Agreement or the releases set forth herein, or affect or delay the Final Approval of this settlement and Settlement Agreement.

      **e.**     Within 15 calendar days after any order by the Court awarding attorneys' fees, expenses, Service Awards or expenses, the Escrow Agent shall pay the approved attorneys' fees, costs, and Service Award via wire transfer from the Settlement Fund as directed

by Co-Lead Counsel.  In the event the amount of attorneys' fees, costs, or service award is reduced on appeal, Co-Lead Counsel shall, within 30 days of such appellate order, cause the difference in the amount paid and the amount awarded on appeal to be returned to the Settlement Fund.

9.  **When Settlement Becomes Final**.  The settlement contemplated by this Settlement Agreement shall become final on the date that: (a) the Court has entered the Order and Final Judgment approving this Settlement Agreement, and all of its material terms and conditions, in accordance with Section II(E)(7), above, under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Action as against the Settling Defendant with prejudice as to all Settlement Class Members and without costs; and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Settlement Agreement and entry of the order of Final Judgment, as described in Section II(E)(7) above, has expired with no appeal having been filed or, if appealed, approval of this Settlement Agreement and the Order and Final Judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review.  "Final Approval" shall mean the satisfaction of all the conditions set forth in this Section II(E)(9).  The Parties agree that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure, nor the All Writs Act, 28 U.S.C. § 1651, nor any extensions of time in petitioning for a writ of certiorari under Rule 13 of the Rules of the Supreme Court of the United States, shall be taken into account in determining the above-stated times.

10.  **Termination and Rescission.**

a.  **Rejection or Alteration of Settlement Terms.**  If the Court declines to grant a Preliminary Approval Order or Final Judgment (as set forth in Sections II(E)(3) or (E)(7) above, respectively); or if the Court approves this Settlement Agreement in a materially

21

modified form; or if after the Court's approval, such approval is materially modified or set aside on appeal; or Final Approval is not obtained; or if the Court enters the Final Order and Judgment and appellate review is sought and on such review such Final Order and Judgment is not affirmed (collectively "Triggering Events"), then Settling Defendant and Plaintiffs shall each, in their respective sole discretion, have the option to rescind this Settlement Agreement in its entirety by providing written Notice of their election to do so ("Termination Notice") to the other Party within thirty (30) calendar days of any of the Triggering Events. For purposes of this Section II(E)(10)(a), a material modification includes but is not limited to, any modification to the Settlement Amount, a material change to the scope of the Released Claims, and the terms as set forth in Sections I(B)(28), (29) and (30) and Section II.

        **b.**      **Effect of Termination or Rescission of Settlement.** In the event this Settlement Agreement is rescinded or terminated by a Termination Notice, then: (i) within fifteen (15) calendar days thereafter, the Settlement Fund, including accrued interest, less taxes and tax expenses that have been paid or that have accrued and will be payable at some later date, and less expenses and costs that have been disbursed pursuant to Section II(C)(2), shall be refunded by the Escrow Agent to the Settling Defendant pursuant to written instructions from Settling Defendant's Counsel to Co-Lead Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of the day before the Effective Date, and without waiver of any positions asserted in the Action as of the day before the Effective Date, which shall then resume proceedings in the Court, that Court having retained jurisdiction over the Settlement and related matters and, except as otherwise expressly provided in this Settlement Agreement, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

11. **No Admission**.

a. Nothing in this Settlement Agreement constitutes an admission by the Settling Defendant or any other Released Parties as to the merits of the allegations made or which could have been made in the Action, or an admission by Plaintiffs or the Settlement Class of the validity of any defenses that have been or could be asserted by the Settling Defendant or any other Released Parties.

b. This Settlement Agreement, and any of its terms, and any agreement or order relating thereto, shall not be deemed to be, or offered by any of the Parties to be received in any civil, criminal, administrative, or other proceeding, or utilized in any manner whatsoever as a presumption, a concession, or an admission of any fault, wrongdoing, or liability whatsoever on the part of any of the Settling Defendant or other Released Parties; provided, however, that nothing contained in this Section II(E)(11) shall prevent this Settlement Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Settlement Agreement (or any agreement or order relating thereto) or the Order and Final Judgment, or in which the reasonableness, fairness, or good faith of any Party participating in the Settlement (or any agreement or order relating thereto) is in issue, or to enforce or effectuate provisions of this Settlement Agreement or the Order and Final Judgment. This Settlement Agreement may, however, be filed and used in other proceedings, where relevant, to demonstrate the fact of its existence and of this Settlement, including but not limited to Settling Defendant filing the Settlement Agreement and/or the Order and Final Judgment in any other action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, waiver,

judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## III. MISCELLANEOUS

**A. Entire Agreement**. This Settlement Agreement shall constitute the entire agreement between the Parties pertaining to the settlement of the Action as to Settling Defendant, and the release of the Released Parties, and supersedes any and all prior and contemporaneous undertakings of the Parties in connection therewith. All terms of the Settlement Agreement are contractual and not mere recitals.

**B. Inurement**. The terms of the Settlement Agreement are and shall be binding upon, to the fullest extent possible, each of the Releasing Parties and the Released Parties, and upon all other Persons claiming any interest in the subject matter hereto through any of the Settling Parties, Releasing Parties, or Released Parties, including any Class Members.

**C. Modification**. This Settlement Agreement may be modified or amended only by a writing executed by Co-Lead Counsel and Settling Defendant or Settling Defendant's Counsel, subject (if after Date of Preliminary Approval) to approval by the Court. Amendments and modifications may be made without notice to the Settlement Class unless notice is required by law or by the Court.

**D. Drafted Mutually**. For the purpose of construing or interpreting this Settlement Agreement, Plaintiffs, the Settlement Class and Settling Defendant shall be deemed to have drafted it equally, and it shall not be construed strictly for or against any party.

**E. Governing Law**. All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of Illinois without regard to its choice-of-law or conflict-of-law principles.

**F.    Jurisdiction**.  This Settlement Agreement is subject to the continuing and exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein.  If for any reason this Settlement Agreement is rescinded, terminated, fails to obtain Final Approval or otherwise fails to become effective, then, in such event, nothing in this Settlement Agreement or with regard to any conduct of Settling Defendant or Settling Defendant's Counsel pursuant to any obligations Settling Defendant has pursuant to the Agreement shall constitute or are intended to be construed as any agreement to personal jurisdiction (general or specific) or subject matter jurisdiction so as to confer the jurisdiction of the District Court over the Released Parties, nor shall it constitute any waiver of any defenses based on personal or subject matter jurisdiction.

**G.    Counterparts**.  This Settlement Agreement may be executed in counterparts by Co-Lead Counsel and Settling Defendant's Counsel, each of which shall be deemed an original and all of which taken together shall constitute the same Settlement Agreement.  A facsimile, electronic or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

**H.    Represented by Counsel**.  Plaintiffs, the Settlement Class and Settling Defendant acknowledge that each have been represented by counsel, and have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so and are not relying on any representation or warranty by the other party other than as set forth herein.  The Settling Parties and their respective counsel agree that they will not seek to set aside any part of the Settlement Agreement on the grounds of mistake.

**I.**     **Authorization**. Each of the undersigned attorneys represents that he or she is fully authorized to enter into and execute this Settlement Agreement, subject to Court approval; the undersigned Co-Lead Counsel represent that they are authorized to execute this Settlement Agreement on behalf of Plaintiffs and the Settlement Class; and the undersigned Settling Defendant's Counsel represent that they are authorized to execute the Settlement Agreement on behalf of Settling Defendant.

**J.**     **Privilege.** Nothing in this Settlement Agreement or the negotiations or proceedings relating to the foregoing is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the accountants' privilege, the attorney-client privilege, the joint defense privilege, joint common interest privilege or attorney work product immunity.

**K.**     **Notice.** Any notice, other than Class Notice, required pursuant to or in connection with this Settlement shall be in writing and shall be given by: (1) hand delivery; (2) registered or certified mail, return receipt requested, postage prepaid; (3) electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph) or (4) UPS or similar overnight courier, addressed, in the case of notice to any Plaintiff to Co-Lead Counsel at their addresses set forth below, and, in the case of notice to Settling Defendant, to their representative at the address set forth below, or such other address as Settling Defendant or Co-Lead Counsel may designate, from time to time, by giving notice to all Parties in the manner described in this Section III(K) (The foregoing shall be referred to herein as "Notice").

<u>For Commercial and Institutional Indirect Purchaser Plaintiffs:</u>

Daniel C. Hedlund
GUSTAFSON GLUEK PLLC

120 South 6th Street, Suite 2600
Minneapolis, MN 55402
T: (612) 333-8844
F: (612) 339-6622
DHedlund@gustafsongluek.com

Adam J. Zapala
COTCHETT, PITRE & McCARTIIY LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
T: (650) 697-6000
F: (650) 697-0577
AZapala@cpmlegal.com

For Settling Defendant Amick Farms, LLC:

Howard B. Iwrey
DYKEMA GOSSETT PLLC
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304
T: 248-203-0700
F: 855-232-1791
hiwrey@dykema.comSteven H. Gistenson

Steven H. Gistenson
DYKEMA GOSSETT PLLC
10 South Wacker Drive
Suite 2300
Chicago, IL  60606
T: 312-627-2267
F: 866-691-5046
sgistenson@dykema.com

Donna Coaxum
1225 Corporate Boulevard
Aurora, IL 60505
T: 630-692-2303
dcoaxum@osigroup.com

**K.** **Headings.**  All headings contained in this Settlement Agreement are for reference purposes only and are not intended to affect in any way the meaning or interpretation of this Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the Effective Date.

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua R. Rissman
Brittany N. Resch
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
T: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsongluek.com

Dated: June 3, 2020

Adam J. Zapala
Tamarah Prevost
COTCHETT, PITRE & MCCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
T: (650) 697-6000
azapala@cpmlegal.com
tprevost@cpmlegal.com

Dated: _____

*Counsel for Commercial and Institutional Indirect Purchaser Plaintiffs*

Howard B. Iwrey
DYKEMA GOSSETT PLLC
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304
T: 248-203-0700
F: 855-232-1791
hiwrey@dykema.com

Dated: _____

28

Scanned with CamScanner

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the Effective Date.

_____
Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua R. Rissman
Brittany N. Resch
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
T: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsongluek.com

Dated: _____

_____
Adam J. Zapala
Tamarah Prevost
COTCHETT, PITRE & MCCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
T: (650) 697-6000
azapala@cpmlegal.com
tprevost@cpmlegal.com

Dated:  June 3, 2020

*Counsel for Commercial and Institutional Indirect Purchaser Plaintiffs*

_____
Howard B. Iwrey
DYKEMA GOSSETT PLLC
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304
T: 248-203-0700
F: 855-232-1791
hiwrey@dykema.com

Dated: _____

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the Effective Date.

_____
Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua R. Rissman
Brittany N. Resch
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
T: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsongluek.com

Dated: _____

_____
Adam J. Zapala
Tamarah Prevost
COTCHETT, PITRE & MCCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
T: (650) 697-6000
azapala@cpmlegal.com
tprevost@cpmlegal.com



Dated: _____

*Counsel for Commercial and Institutional Indirect Purchaser Plaintiffs*

_____
Howard B. Iwrey
DYKEMA GOSSETT PLLC
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304
T: 248-203-0700
F: 855-232-1791
hiwrey@dykema.com
June 3, 2020
Dated: _____

Steven H. Gistenson
DYKEMA GOSSETT PLLC
10 South Wacker Drive
Suite 2300
Chicago, IL  60606
T: 312-627-2267
F: 866-691-5046
sgistenson@dykema.com

Dated: _____ June 3, 2020

*Counsel for Defendant Amick Farms, LLC*