**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To: All Actions | Case No. 1:16-cv-08637<br><br>Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Class Plaintiffs' Motion for Entry of an Order Regarding Remote Depositions of Certain Categories of Witnesses [ECF No. 3610] ("Class Plaintiffs' Motion") is granted in large part for the reasons explained in this Memorandum Opinion and Order.

I.

Class Plaintiffs want to start taking depositions in this case via audiovisual or other remote means pursuant to Federal Rule of Civil Procedure 30(b)(4). They say the Court should allow this to happen to keep this case moving through pretrial discovery, class certification and summary judgment motion practice, and trial in a manner consistent with Federal Rule of Civil Procedure 1 amidst the COVID-19 pandemic now sweeping this country and the world, which can make many in-person depositions impractical at this time. *See* FED. R. CIV. P. 1 ("These rules . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

Direct Action Plaintiffs ("DAPs") seem to agree depositions will need to be taken by remote means in this case though they say it will take time to put into place a protocol for taking those depositions that is acceptable to all parties and the Court. Defendants say now is not the appropriate time to move forward with remote depositions, but even they appear to grudgingly

concede there soon may come a time when remote deposition practice is necessary to move this case forward on a reasonable timetable.[1]

The Court agrees with Class Plaintiffs and DAPs that depositions will need to be taken by remote means if this case is going to move forward as it must, and it disagrees with Defendants that this decision should wait. Some depositions of class representative plaintiffs in this case already have been or are being taken remotely by video albeit by agreement and with some encouragement from the Court. *See* May 19, 2020 Order [ECF No. 3622], at 1; May 18, 2020 Hearing Tr. [ECF No. 3624], at 14-17. Class Plaintiffs say counsel for various parties also have participated remotely by telephone in virtually every deposition taken in this case even before the onset of the pandemic.[2]

The Court also agrees that it needs to enter a protocol for taking remote depositions in a case like this with three putative classes, over 100 opt-out DAPs, more than 20 Defendants, dozens of lawyers, and the United States Department of Justice, as intervenor, watching everything that is going on because of a parallel grand jury investigation, and at least one pending felony indictment. *See United States v. Jason Jeffrey Penn, et al.*, Criminal Action No.: 20-cr-00152-PAB (D.Col. June 2, 2020). Toward that end, Class Plaintiffs have submitted a proposed remote deposition

---

[1] If Defendants do not unequivocally commit to the possibility that at least some witnesses will need to be deposed by remote means in this case, then they come pretty close to doing so. *See* Defendants' Opposition [ECF No. 3630], at 14 ("Defendants recognize that this situation is highly fluid and believe the question of remote depositions should be re-examined in September. If, at that time, in-person depositions remain unsafe or inadvisable, the parties and the Court should re-visit the advisability and fairness of remote depositions for certain witnesses. If the needs of the case then require that certain remote depositions take place (notwithstanding Defendants' significant prejudice), the Court should order a protocol providing witness-by-witness accommodations as needed under the circumstances.").

[2] According to Class Plaintiffs, "For every deposition in this case so far, many attorneys have already attended remotely by telephone, choosing to forgo the benefits of seeing the witness and exhibits as they are stamped, in return for the convenience and time- and cost-savings of not traveling." Class Plaintiffs' Motion [ECF No. 3610], at 4-5.

protocol that DAPs and Defendants have commented upon in their respective submissions on Class Plaintiffs' Motion.  [ECF Nos. 3610-1, 3628, 3628-1, 3629, 3630].

A.

Defendants object to being required to prepare or present any of their witnesses for either in-person or remote depositions under current circumstances.  They raise a host of objections. They say the COVID-19 pandemic makes it unsafe and impractical to travel to or meet with a witness in person, whether to prepare or depose that individual.  That is particularly true, they say, of witnesses employed by poultry producers, an industry that has been designated as essential to the national defense and has been hard hit by the COVID-19 pandemic.  Defendants also argue this is not the time to be taking Defendants' essential employees away from the critical jobs they are doing to ensure continued operation of companies on the front lines of feeding people who eat meat or chicken.  Class Plaintiffs, however, offer repeatedly to accommodate witnesses who say it is impossible for them to sit for a deposition now, and they suggest, correctly, that the Court can resolve any disputes in this regard that the parties cannot resolve themselves.  Class Plaintiffs' Motion [ECF No. 3610], at 5; Class Plaintiffs' Reply Brief [ECF No. 3639], at 15.

Defendants also say some of their witnesses have serious health issues that limit their ability to prepare for or give a deposition.  But if witnesses have serious health issues, then that would seem to support Class Plaintiffs' desire to memorialize the testimony of those witnesses as soon as possible.  Moreover, a video deposition and remote preparation for these witnesses may be much safer and allow for more flexibility than in-person sessions in any event.  If necessary, for example, accommodations can be made so that a witness with health issues can testify over more than one session if that is necessary without anyone needing to travel on multiple days.

Other witnesses say they have Internet connectivity or capacity issues. Some say they share the Internet in their homes with other family members and that service is spotty when everyone is online. The Court understands these are real issues today. Some of these issues, though, potentially can be remedied either by the court reporter, the witness, or his (all the Rule 30(b)(1) witnesses appear to be men) current or former employer by upgrading the Internet service, which could provide a benefit that will last well after the deposition is taken. Class Plaintiffs also say a remote deposition protocol in this case should include a provision from another recent case that says no party will be forced to "proceed with a deposition where the deponent cannot hear or understand the other participants or where the participants cannot hear or understand the deponent." Class Plaintiffs' Reply [ECF No. 3639], at 9.

Defendants give no indication that any efforts have been made to investigate if the Internet connectivity or capacity issues some of their witnesses identify can be fixed or mitigated sufficiently to allow these witnesses to be prepared or deposed by remote means. For example, as to the witnesses who say their Internet service is slow when other family members are online at the same time, Defendants do not say whether a witness's family members can refrain from using the Internet when the witness is being prepared or deposed, and whether that would allow the remote deposition to go forward more smoothly. Further, as a last resort, all of these witnesses presumably have telephones, and remote depositions can be taken by telephone as well as by video.

Other defense witnesses are a bit older, live in rural locations, and say they are neither familiar with nor comfortable using the technology required for remote video deposition preparation or testimony. All of these witnesses were high-level executives in large companies. One was president and chief executive officer of a company that bills itself as the sixth largest chicken producer in the world, "serving markets from Arizona to Asia, Tampa to Tokyo." *See*

https://mountaire.com/about/ (last visited on June 25, 2020). It is difficult to believe these individuals cannot learn how to use the technology required for a video deposition or preparation session particularly with the help of sophisticated counsel and a quality court reporting firm. That these witnesses are not presently comfortable or familiar with the technology does not mean they cannot learn the basics that would allow them to be prepared or deposed remotely even if they never become fully comfortable with the technology themselves.

Still other witnesses say they do not have time for a deposition right now either because of the demands of their jobs or, in one instance, the declarant's law practice. Again, the Court notes that Class Plaintiffs have offered to work with Defendants and the witnesses in these instances. Class Plaintiffs' Motion [ECF No. 3610], at 5; Class Plaintiffs' Reply Brief [ECF No. 3639], at 15. Furthermore, it is a rare witness who really wants to make time to be deposed or prepare for a deposition at any time. Yet people make the time, get it over with as soon as possible, and then get on with their lives. In the case of the busy lawyer, the Court only notes that good lawyers, who often also are busy lawyers, always need to juggle clients and cases as part of their law practices, so the Court is confident that this lawyer will be able to satisfy his professional obligations to the Defendant he represents in this case and other clients, including by participating in a deposition in this case if it is necessary for him to do so.

Defendants also point out that many witnesses and their lawyers are working from home during the COVID-19 pandemic and, as a result, "the burden is magnified when witnesses and their lawyers are juggling preparation and caring for children, helping with school, dealing with pets, answering a doorbell, fixing meals, and the like." Defendants' Opposition [ECF No. 3630], at 8. This undoubtedly is true. Even as stay-at-home orders have been relaxed or suspended, many lawyers still are working from home and may have children who currently are not in school during

the summer or who may be attending school only part-time and e-learning from home the other portion of the week when school resumes in the Fall. But, again, accommodation is the answer here rather than a complete cessation of discovery activity until the COVID-19 pandemic abates.

Defendants also argue that preparing or defending a witness for a deposition by remote means will be exceedingly difficult in this case because it will require review of a large number of documents and cover events that took place over many years. Preparing a witness for such a deposition would be difficult and time consuming even in person, but Defendants say it is even more difficult and will take much longer if it needs to be done remotely. Similarly, the prospect of defending a witness in a case like this by remote means presents many challenges given the number of lawyers that have attended the 87 depositions that Class Plaintiffs have taken so far in this case, the likely length of each deposition based on how long other depositions have lasted, the large number of exhibits typically marked in those depositions, and the technological issues that are likely to arise in remote depositions. Defendants' lawyers understandably would much prefer to be in the same room with a witness who is being deposed both for the witness's comfort and so that the lawyer can adequately protect the witness by lodging objections or giving instructions not to answer a question when appropriate. Defendants say they will suffer serious prejudice if their lawyers are unable to communicate in person with a witness during deposition preparation and/or to defend a witness in person while he or she is testifying.

Defendants argue strenuously that while courts have allowed depositions to occur remotely on motion, they have not previously *required* a party to prepare a deposition witness by video or other remote means as they say they would be forced to do here if the Court grants Class Plaintiffs' Motion. In the Court's view, this is heavy on semantics. Courts do not speak to how a lawyer must prepare a witness when they allow a witness to be deposed by remote means. They say the

6

deposition can proceed remotely under Rule 30(b)(4) and leave it up to the lawyer and the party or the witness to decide how the witness will be prepared for the deposition. Class Plaintiffs are not asking the Court to require Defendants' lawyers to prepare their witnesses for deposition by video or telephone if they do not want to do so.

The Court, though, understands Defendants are saying that one consequence of the Court granting Class Plaintiffs' Motion may be that they will end up preparing all or some of their witnesses remotely because of safety concerns over lawyers or witnesses traveling or meeting in person, and that will prejudice them. Defendants and their counsel, however, can choose how they want to prepare witnesses for depositions and whether or not they want to be with the witness in person when the witness gives a deposition by remote means. While it may be more difficult for a lawyer to prepare a witness for a deposition without sitting in the same room with her or him, it is not impossible to do so. Similarly, while it may be more difficult to defend a witness who is testifying remotely without being in the same room with the witness, there undoubtedly are ways to reduce the risks and challenges in that situation as well.[3]

The Court's informed guess is that a witness can be well-prepared to give a deposition, even a deposition that may involve a large number of documents and a relevant time period of many years, without being in the same room with her or his counsel. If the witness and counsel have the same universe of documents in front of them, either in hard or electronic copy, those documents are identifiable by a Bates number or other unique identifier, and they utilize a video

---

[3] For example, to guard against a witness answering a question when the technology prevents the witness's counsel, who like the witness is participating in the deposition remotely and from a different location, from lodging an objection or instructing the witness not to answer a question, the parties might consider adopting a convention that would allow a witness to answer a question only after the lawyer defending the deposition says the witness can answer. A simple, "you may answer" would suffice. The Court is confident the parties can come up with other conventions that can make the taking and defending of remote depositions more palatable.

system that allows them to see each other and even to see a document together on their computer screens at the same time, the preparation session(s) should proceed without too much trouble even if the process takes a bit longer than in person. The parties in these cases have produced millions of documents electronically, their lawyers likely are accustomed to seeing documents on screens rather than in hard copy, and even in-person depositions occur with electronic documents being shown to witnesses on a screen rather than on paper. *See* Defendants' Opposition [ECF No. 3630], at 12 n.18 and Exhibit 14 [ECF No. 3630-24].

Defendants are correct that remote video technology is not perfect by any means. A host of technological problems can and do arise during a remote video deposition that may interrupt or delay the deposition. There are many opportunities for glitches (*e.g.,* a frozen screen with the dreaded message "your internet connection is unstable") that can frustrate even the most technologically savvy lawyer taking or defending a remote deposition. Defendants point to one deposition taken in this case in which the court reporting firm's electronic platform for displaying exhibits did not always work well and required several breaks in the flow of the deposition to accommodate and fix the issues that arose. Defendants' Opposition [ECF No. 3630], at 12 n. 18. As Defendants acknowledge, this was an *in-person* deposition. Defendants may want the Court to infer that if technological problems can arise during an in-person deposition, the prospect for disruption is even greater in a remote video deposition and the consequences could be much worse. *Id.* The Court, however, takes a different lesson from this deposition vignette. Technological problems can arise during in-person as well as remote depositions, but that is not a reason to prevent remote depositions from occurring. It can be difficult and frustrating in both contexts to accommodate technological problems, but the depositions still proceed.

The Court is not blind to nor is it ignoring the very real challenges involved in conducting remote video depositions in a case like this with so many parties and lawyers. But unless the Court is going to stay all depositions that cannot proceed by agreement (whether in-person or remotely) until there is a cure or a vaccine for COVID-19, or something approaching so-called herd immunity, which it is unwilling to do on a blanket basis, the parties and their counsel are going to have to have to adapt, make some choices, be creative, and compromise in this and every other case in which they are involved during this time without modern precedent.

Finally, in response to Defendants' objections, Class Plaintiffs say Defendants are over-dramatizing the problems they will face in preparing and defending at least the 18 depositions that are the subject of Class Plaintiffs' Motion. For example, Class Plaintiffs point out they are limited to 14 hours of deposition time for Rule 30(b)(6) depositions per Defendant so they have to be judicious with their use of time for the eight Rule 30(b)(6) depositions on their list of 18 depositions. *See* February 28, 2019 Order [ECF No. 1979], at 1. Class Plaintiffs want to cover just three topics in the Rule 30(b)(6) depositions they now want to take dealing with pricing, supply, and production. Plaintiffs' Amended Notice of Rule 30(b0(6) Deposition [ECF No. 3610-5], Topics 18, 21, 22. The Court agrees those are meaty topics (no pun intended), but there still are just three of them, albeit with sub-parts. Class Plaintiffs represent each deposition will take less than a day. Finally, although Class Plaintiffs do not say this, perhaps some of the information Class Plaintiffs now want to obtain with a Rule 30(b)(6) deposition can be provided by one or more Defendants by other means which could serve to reduce witness preparation and deposition time. The Court encourages the parties to engage in this sort of discussion aimed at reducing the number or the length of depositions that need to be taken in this case.

B.

Courts are beginning to recognize that a "new normal" has taken hold throughout the country in the wake of the COVID-19 pandemic that may necessitate the taking of remote depositions unless litigation is going to come to an indefinite halt until there is a cure or a vaccine for COVID-19.[4]  The more recent court decisions build on pre-pandemic case law that liberally allowed for and encouraged remote depositions as the technology for taking depositions in that way has improved significantly over time.[5]

---

[4] *See, e.g., Learning Resources, Inc. v. Playgo Toys Enterprises Ltd.,* 2020 WL 3250723, at *3 (N.D. Ill. June 16, 2020) (holding "the health concerns created by the COVID-19 pandemic create 'good cause' for the entry of an order requiring that Ms. Latham's deposition take place by remote videoconference"); *Wilkens v. ValueHealth, LLC*, 2020 WL 2496001, at *1 (D. Kan. May 14, 2020) ("Video or teleconference depositions and preparation are the 'new normal' and most likely will be for some time. Litigation cannot come to an indefinite halt."); *Grano v. Sodexo Mgmt., Inc.*, 2020 WL 1975057, at *2 (S.D. Cal. Apr. 24, 2020) (observing "that "[a]ttorneys and litigants all over the country are adapting to a new way of practicing law, including conducting deposition and deposition preparation remotely"); *United States ex rel. Chen v. K.O.O. Construction, Inc.*, 2020 WL 2631444, at *1  (S.D. Cal. May 8, 2020) (holding that it is "pure speculation" that the "physical distancing and stay-at-home orders required by the current pandemic will be lessened to allow for in-person depositions in the near future"); *Sinceno v. Riverside Church in City of New York,* 2020 WL 1302053, at *1 (S.D.N.Y. Mar. 18, 2020) (authorizing remote depositions "[i]n order to protect public health while promoting the 'just, speedy, and inexpensive determination of every action and proceeding'"); *Joffe v. King. & Spalding LLC*, 17 Civ. 3392 (VEC)(SDA), at *6 (S.D.N.Y. June 4, 2020) (ordering parties to proceed with remote deposition over plaintiff's objection because the conditions of in-person depositions create "a bad mix during the pandemic" and a "burden on the witnesses and their families"); *Ogilvie v. Thrifty Payless Inc.*, 2020 WL 2630732, at *2-3 (W.D. Wash. May 12, 2020) ("Although the court understands that the parties may have a preference for taking depositions or meetings in person, given the present circumstances, the court urges the parties to consider available alternatives …. This pandemic may well be with us for many months to come. We will all need to adjust to keep litigation moving forward.").

[5] *See, e.g.*, *Rice's Toyota World, Inc. v. Southeast Toyota Distributors, Inc.,* 114 F.R.D. 647 (M.D.N.C. 1987) (refusing to limit video depositions to important witnesses who might be unavailable for trial since plaintiff was not requesting that regular stenographer be dispensed with, thus sharply reducing risks of video deposition); *Riley v. Murdock,* 156 F.R.D. 130 (E.D.N.C. 1994) (allowing videotaped deposition); *Fanelli v. Centenary College*, 211 F.R.D. 268 (D.N.J. 2002) (holding that anxiety over videotaping not good cause sufficient to warrant a protective order); *Kaseberg v. Conaco, LLC*, 2016 WL 8729927, at *6 (S.D. Cal. Aug. 19, 2016) (requiring a copy of exhibits intended to be used at a remote deposition to be sent to deponent's attorney at least twenty-four hours in advance of the deposition); *Carrico v. Samsung Elecs. Co*., 2016 WL 1265854, at *2 (N.D. Cal. Apr. 1, 2016) (approving methods such as exchanging Bates-stamped documents in advance of a remote deposition or using modern videoconference software to share documents and images); *Lopez v. CIT Bank, N.A*., 2015 WL 10374104, at *2 (N.D. Cal. Dec. 18, 2015) (disagreeing that reviewing complicated exhibits remotely would be impracticable because exhibits can be

Although there are cases, some of which Defendants cite, in which courts have not permitted depositions to be taken by remote means, many were decided one or almost two decades ago, before video depositions and remote meetings became as commonplace as they are today in the practice of law, and in almost every other aspect of business and social life and interaction, and under different circumstances than now are facing litigants, lawyers, and courts.[6]  In the more recent cases cited by Defendants, when courts have denied a party leave to take a remote deposition, it has been based on the particular facts and circumstances present in those cases, some of which are different from this case.  *See, e.g., Quarrie v. Wells,* 2020 U.S. Dist. LEXIS 63710, at \*2-3 (D. N.M. Apr. 10, 2020) (denying a *pro se* plaintiff's motion for leave to conduct depositions by telephone because of, among other things, the plaintiff's lack of experience in taking depositions and the complex nature of the anticipated testimony); *Egan v. Royal Kona Resort,* 2018 WL 1528779 (D. Hawaii Mar. 28, 2018) (holding that a slip-and-fall plaintiff must travel to Hawaii, where she was injured and filed suit, at the defendant's expense for her deposition rather than be deposed by video at her residence in New Hampshire, when, among other things, the plaintiff previously had agreed to travel to Hawaii for her deposition).[7]

---

shared with modern videoconference software or by distributing Bates-stamped copies); *Lott v. United States*, 2008 WL 2923437, at \*1 (N.D. Cal. July 25, 2008) (finding no prejudice incurred in remote depositions that require reference to critical exhibits such as photographs, diagrams, and drawings because the exhibits may be sent to the deponent in advance of the deposition).

[6] *See In re Fosamax Prod. Liab. Litig.*, 2009 WL 539858, at \*2 (S.D.N.Y. Mar. 4, 2009) (citing *R.S. ex rel. S. v. Ridgefield Board of Education,* 2008 WL 1989774, at \*2 (D.Conn. May 5, 2008)) (denying request for telephone or video deposition on ground that it could "hamper the Plaintiffs' attorney's ability to fully conduct the deposition"); *Willis v. Mullins,* 2006 WL 894922, at \*3 (E.D. Cal. Apr. 4, 2006) (requiring in-person deposition in light of "unreasonable restraints" of video conferencing, "especially concerning the review and use of documents"); *Silva Run Worldwide, Ltd. v. Gaming Lottery Corp.,* 2003 WL 23009989, at \*2 (S.D.N.Y. Dec. 23, 2003) (rejecting telephonic or video deposition because of importance of testimony and volume of documents).

[7] In *Quarrie*, the court also denied the plaintiff leave to take a remote deposition on the belief that the officer administering the oath to the witness must be in the same room as the witness, and that was not going to happen in that case due to the COVID-19 risk.  2020 U.S. Dist. LEXIS 63710, at \*2-3.  Federal Rule of

Cases in this area are heavily fact dependent. In one recent case, for example, the court accepted a plaintiff's representations that she would experience significant hardship by being required to sit for a remote deposition because she did not have access to the Internet, had scant knowledge of technology, and lived alone with no one to help her set up the virtual technology that the court reporter would send her. The court ordered the deposition to take place in person within one week. Yet, if that deposition could not be taken in person within a week's time, then the court ordered that it proceed by remote means. *See Thomas v. BJ's Wholesale Club, Inc.,* Superior Court of New Jersey, Law Division, Middlesex County, Docket No. MID-L-5518-19 (June 5, 2020) (holding that "[p]laintiff's deposition must occur virtually via zoom or other teleconference system by that date"). In another recent case, the court required two witnesses to testify remotely by video at trial because the witnesses feared exposure to the virus that causes COVID-19 if they had to testify in person after a lawyer from one of the law firms involved in the trial tested positive for the virus. *See In re RFC and ResCap Liquidating Trust Action*, 2020 WL 1280931, at *3 (D. Minn. Mar. 10, 2020) (finding that "COVID-19's unexpected nature, rapid spread, and potential risk establish good cause for remote [trial] testimony").

Courts have long held that leave to take remote depositions pursuant to Rule 30(b)(4) should be granted liberally. *See, e.g.*, *Guillen v. Bank of Am. Corp.*, 2011 WL 3939690, at *1 (N.D. Cal. Aug. 31, 2011) (citing *Brown v. Carr*, 253 F.R.D. 410, 412 (S.D. Tex. 2006)) ("Leave

---

Civil Procedure 28 does not expressly require the officer who administers the oath to be in the same room as the deponent, and the law is mixed on whether that is necessary. One court recently explained that it is unnecessary for the officer and the witness to be in the same room as technological advances now allow the witness and the officer to see and hear each other. *See SAPS, LLC v. EZCare Clinic, Inc.*, 2020 WL 1923146, at *1-2 (E.D.La. Apr. 21, 2020). Another recent case clarified that the officer can swear the witness either by telephone or video. *See Sinceno*, 2020 WL 1302053, at *1 ("For avoidance of doubt, a deposition will be deemed to have been conducted 'before' an officer so long as that officer attends the deposition via the same remote means (*e.g.*, telephone conference call or video conference) used to connect all other remote participants, and so long as all participants (including the officer) can clearly hear and be heard by all other participants.").

to take depositions by telephone is granted liberally."); *Jahr v. IU Int'l Corp.*, 109 F.R.D. 429, 431 (M.D.N.C. 1986) ("[L]eave to take telephonic depositions should be liberally granted in appropriate cases."); *accord Hoeft v. Richardson*, 2009 WL 3242067, at *3 (W.D. Wis. Oct. 2, 2009) (quoting *Brown*, 253 F.R.D. at 412). All that is required to authorize a remote deposition is a legitimate reason put forward by the party proposing to take a deposition by remote means. *Kaseberg v. Conaco, LLC*, 2016 WL 8729927, at *5 (S.D. Cal. Aug. 19, 2016) (quoting *Jahr*, 109 F.R.D. at 431). A desire to save money taking out of state depositions can suffice to show good cause to take a deposition by remote means. *Guillen*, 2011 WL 3939690, at *1; *accord Kaseberg*, 2016 WL 8729927, at *6. Once the proponent of taking a deposition by remote means makes a sufficient threshold showing, the burden then shifts to the opposing party to show how it would be prejudiced if the deposition were taken in that way. *Guillen*, 2011 WL 3939690, at *1 (citing *Brown*, 253 F.R.D. at 412; *Cressler v. Neuenschwander*, 170 F.R.D. 20, 21 (D. Kan. 1996)).

Defendants argue that Class Plaintiffs have not established good cause to take each of the 18 depositions they propose to take before they file their class certification motions. Class Plaintiffs, however, say they are seeking to take each of these 18 depositions "not only for class certification but in order to meet the other deadlines necessary to keep this case on track." Class Plaintiffs' Reply [ECF No. 3639], at 14. Moreover, although some courts speak colloquially about whether there is "good cause" to take remote depositions allowed by Rule 30(b)(4), the Rule does not literally require the existence of good cause. Rather, it appears to leave it to the court's broad discretion over discovery to determine whether there is a legitimate reason to take a deposition by telephone or other remote means under all the facts and circumstances of a given case. *See Roberts v. Homelite Div. of Textron, Inc.*, 109 F.R.D. 664, 666 (N.D. Ind. 1983) ("Neither the rule itself nor the notes of the Advisory Committee list the criteria which the trial court should use in

13

exercising its discretion under Rule 30(b)(4) . . . the better reasoned view gives the trial court the same discretion which it enjoys in resolving all other discovery disputes."). The decision whether to allow a remote deposition essentially involves a careful weighing of the reasons put forth by the proponent of the remote deposition and the claims of prejudice and hardship advanced by the party opposing the deposition. *Learning Resources,* 2020 WL 3250723, at *3-4; *Usov v. Lazar*, 2015 WL 5052497, at *2 (S.D. N.Y. Aug. 22, 2015).

Further, one of the primary reasons that Class Plaintiffs say remote depositions are justified in this case—the existence of the global COVID-19 pandemic that renders in-person depositions impractical or unsafe in many instances—transcends the particular circumstances of each of the 18 individual witnesses that Class Plaintiffs wish to depose remotely as of now. So, too, does Class Plaintiffs' argument that their ability to take depositions in this case has been stalled for over a year because the Court granted the United States Department of Justice's application to stay certain discovery while it conducted its grand jury investigation, and depositions should not be delayed further because of the COVID-19 pandemic. *See* [ECF Nos. 2271, 2302, 3153, 3356]. There are other reasons depositions have been delayed in this case besides the stay, as Defendants correctly point out, but there is no denying that the stay had a negative impact on the case moving forward for a period of time through no fault of Class Plaintiffs. The close-approaching date for Class Plaintiffs to file their class certification motions and a looming fact discovery close date early next year are yet additional legitimate reasons for Class Plaintiffs to begin to take remote depositions. A large number of depositions still need to be taken in this case (100 according to Class Plaintiffs and DAPs), and the parties (with the Court's assistance, if necessary) need to get about the business of scheduling and taking those depositions.

Accordingly, under the case law and all the circumstances of this case, the Court does not see why Class Plaintiffs must show there is a legitimate reason constituting good cause to take each one of the 18 depositions they want to take as part of their initial burden under Rule 30(b)(4). The thrust of Class Plaintiffs' argument is that these depositions will need to be taken at some point so they should start down that path now. The Court agrees. Further, the Court is not generally in the business of second-guessing a party's desire to take a deposition it says it needs to take unless the opposing party can show a good reason why that deposition should not be taken. Finally, the Court has limited the total number of depositions Class Plaintiffs can take of each Defendant family in this case so Class Plaintiffs already need to be mindful of who they want to depose and for what reason. *See* August 28, 2018 Order [ECF No. 1155].

## C.

Defendants' suggestion that the Court should delay this decision until the Fall is neither practical nor, in the Court's judgment, wise. It is not obvious the situation will be materially different in September when Defendants say the Court and the parties first should begin to consider remote depositions in this case. Defendants understandably cite no authority for their hope that things may be better by September. In fact, one court labeled the "hope the physical distancing and stay-at-home orders required by the current pandemic will be lessened to allow for in-person depositions in the near future" as "pure speculation." *United States ex rel. Chen,* 2020 WL 2631444, at *1.

Recent statements by public health officials about the staying power of COVID-19 also belie Defendants' speculation that things may be so different in the Fall as to render remote depositions in this or any other case unnecessary, or at least less likely. For example, Dr. Anthony Fauci, Director of the National Institute of Allergy and Infectious Diseases, said in an

interview with NBC Sports on June 5, 2020, that there was "virtually no chance" that the novel coronavirus, which causes the disease COVID-19, will be eradicated any time soon. https://www.businessinsider.com/fauci-theres-virtually-no-chance-covid-19-will-be-eradicated-2020-5. To the contrary, Dr. Fauci, said he believes a second wave of coronavirus infections is "inevitable" and that "the worst-case scenario . . . involves a second, larger wave of infections this fall and winter." https://www.businessinsider.com/second-wave-of-coronavirus-infections-may-peak-in-fall-2020-5. In an interview with the *The New York Times*, Dr. Fauci said: "When is it going to end? We're still at the beginning of really understanding." Grady, Denise, "Fauci Warns That the Coronavirus Pandemic Is Far From Over." *The New York Times*, June 10, 2020, Section A, page 7. In addition, COVID-19 cases continue to rise in some states where restrictions have been eased. Calfas, Jennifer, "States See Big Increases in Virus Cases." *The Wall Street Journal*, June 23, 2020, Section A, page 6. ("The nation's death toll surpassed 120,000 as more than 20 states saw the pace of new coronavirus cases rise faster this week than in the week before.").

D.

For all these reasons, the Court agrees with Class Plaintiffs, and with other courts that recently have so held, that there are legitimate reasons for Class Plaintiffs to take at least the 18 depositions they now want to take by remote means because of the COVID-19 pandemic so as to protect the safety and health of witnesses, counsel, court reporters, videographers, and other persons, and to move this case through the pretrial process at an acceptable pace during a time when in-person depositions may present risks to the health and safety of people participating in them. *See Learning Resources,* 2020 WL 3250723, at *3; *Wilkens*, 2020 WL 2496001, at *1; *Grano*, 2020 WL 1975057, at *2; *United States ex rel. Chen*, 2020 WL 2631444, at *1; *Sinceno,* 2020 WL 1302053, at *1; *Joffe*, 17 Civ. 3392 (VEC)(SDA), at *6; *Ogilvie*, 2020 WL 2630732, at *2-3. To

be clear, this is not a blanket ruling that the COVID-19 pandemic alone justifies the taking of remote depositions in all cases and under all circumstances. In this case, however, the COVID-19 pandemic, in conjunction with the other circumstances discussed above, are legitimate reasons for Class Plaintiffs to want to move forward with remote depositions now.

Courts also recognize a basic "underlying principle" that "[t]he right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983) (citing *Klein v. Adams & Peck*, 436 F.2d 337, 339 (2d Cir.1971)). That principle also militates in favor of conducting remote depositions in this case during the COVID-19 pandemic to move the case closer to resolution by dispositive motion, settlement, or trial than would be the case if the litigation treads water until the pandemic abates.[8]

Once Class Plaintiffs meet their burden to show why remote depositions should be allowed in this case, as they have done, then the burden is on Defendants to show why a deposition should not be taken in that way. *Guillen*, 2011 WL 3939690, at *1 (citing *Brown*, 253 F.R.D. at 412; *Cressler*, 170 F.R.D. at 21). *See also Learning Resources,* 2020 WL 3250723, at *3-4; *Usov*, 2015 WL 5052497, at *2. Defendants have not met their burden to show they will suffer undue prejudice if the Court allows Class Plaintiffs to take the 18 remote depositions they now propose to take in this case. The arguments Defendants have put forth are not sufficient to overcome the legitimate reasons that Class Plaintiffs have advanced to depose by remote means the 18 witnesses they have identified pursuant to Rule 30(b)(4), whether as Rule 30(b)(1) or Rule 30(b)(6) depositions. The

---

[8] In fact, Class Plaintiffs argue that if they are not allowed to take depositions by remote means, this case will languish with no real end to the pretrial process in sight. *See* Joint Status Report [ECF No. 3616], at 1 ("Depositions of the Defendants are the key gate-keeping event required for the case to be trial-ready. While certain motions have been briefed and some written discovery has occurred during the COVID-19 pandemic, the continued inability of Plaintiffs to take Defendant depositions will continually delay trial.").

Court's ruling is based on all the facts and circumstances of this case and on the parties' arguments on Class Plaintiffs' Motion, and it is the result of a balancing of the parties' respective interests detailed above as required by Rule 30(b)(4).

Nothing in the Court's ruling today prevents Defendants from attempting to show there are instances in which there is a legitimate concern that a particular in-person deposition cannot be taken safely or effectively, or for some other reason, and that the deposition also cannot be taken remotely without undue prejudice to the witness or a Defendant. The Court can address those situations as they arise and in the context of particular facts and circumstances relating to that witness or deposition, most likely in the context of a motion for a protective order under Rule 26(c)(1), if the parties cannot work things out themselves.

Courts sometimes have considered whether remote depositions should be allowed in the context of dueling motions filed pursuant to both Rule 30(b)(4) and Rule 26(c)(1). *See Shibata v. Swingle,* 2018 WL 4522050 (N.D.N.Y. Feb. 26, 2018); *Wilkerson v. Stalder,* 2015 WL 2236417 (M.D. La. May 12, 2015). Although Defendants have not filed a formal Rule 26(c)(1) motion here, many of their arguments are of the type that would be included in such a motion, but they also are arguments that courts can and do consider in ruling on a Rule 30(b)(4) motion given the balancing of interests required to resolve such a motion. In the Court's view, the objections Defendants have made here, though significant and serious, are insufficient, without more, to prevent remote depositions from going forward in this case when there otherwise are legitimate reasons for those depositions to proceed and possible ways to remedy the potential obstacles that at least have been raised to date.

18

II.

Two questions remain:  When will Class Plaintiffs begin to take the remote depositions they are allowed to take, and what protocol will govern the taking of remote depositions in this case?

A.

The Court is focused in the first instance on putting Class Plaintiffs in a position to file their motions for class certification as soon as possible.  *See* May 18, 2020 Hearing Tr. [ECF No. 3624], at 42 ("I will tell you that I'm focused right now on class certification because that's the next step in this case, and I would like that process to move forward as quickly as we can…."). Class certification motions now are due on September 3, 2020, consistent with General Order No. 20-2012, as amended, entered in this and all other cases pending in this District which extended all court-set deadlines for a total of 77 days in light of the COVID-19 pandemic.  *See In re Coronavirus COVID-19 Public Emergency*, Amended General Order 20-0012 entered on March 17, 2020, Second Amended General Order 20-0012 entered on March 30, 2020, Third Amended General Order 20-0012 entered on April 24, 2020, and Fourth Amended General Order 20-0012 entered on May 26, 2020) ("ILND COVID-19 Orders").  The filing of Class Plaintiffs' motions for class certification triggers a five-month period of briefing, disclosure of experts concerning class certification issues, and the briefing of any related *Daubert* motions.  *See* Scheduling Order No. 13 [ECF No. 3420].

Beyond class certification, fact discovery currently is set to close on March 4, 2021.  *See* Scheduling Order No. 13 [ECF No. 3420] and the ILND COVID-19 Orders referenced above.  It may or may not be possible to meet that date under current circumstances.  If depositions beyond the 18 depositions that are the subject of Class Plaintiffs' Motion will be taken by remote means

19

in this case, as Class Plaintiffs apparently intend, it very well may take the parties more time to conduct those depositions and that could require an extension of the fact discovery close date. The parties and the Court recognize the need for the parties to start meeting and conferring about a global schedule and regarding how and when all of those depositions can and will be taken.

It is not clear now, however, when even the 18 depositions Class Plaintiffs say they want to take first will be taken. It also is not clear which of these depositions must be taken before Class Plaintiffs file their class certification motions and which, if any, do not. The parties have been conferring with Special Master Maura R. Grossman in an effort to expedite and streamline the production of structured data that the Court ordered Defendants to produce before Class Plaintiffs file their motions for class certification. It is unclear whether Class Plaintiffs need any of that structured data for the depositions they seek to take by remote means. Some of the proposed Rule 30(b)(6) topics seem to encompass information that should be contained in the forthcoming productions of structured data; others do not. Defendants seem to assume that the depositions Class Plaintiffs want to take will not occur until the structured data is produced. Defendants' Opposition [ECF No. 3630], at 5. Class Plaintiffs do not really address the issue directly. So, production of this structured data may impact when the depositions will occur.

The parties also are conferring about the proposed topics that Class Plaintiffs say they wish to cover in the eight Rule 30(b)(6) depositions they propose to take remotely. Defendants' Opposition [ECF No. 3630], at 3 n.5. If they cannot reach agreement, then the Court will need to resolve any disputes before those depositions can proceed. The Court also wants to enter a protocol for taking remote depositions that addresses as many potential issues as possible before those depositions begin.

The DAPs also note they have not yet reached agreement with Class Plaintiffs about how to allocate time among all Plaintiffs for questioning Defendants' deposition witnesses. Those discussions also have to reach a conclusion, and the Court will need to weigh in on any dispute that the parties cannot resolve themselves.

So, the timing of the depositions Class Plaintiffs want to take, both before and after Class Plaintiffs file their motions for class certification, is something that the Court and the parties still need to address.

## B.

The Court and the parties also need to address how remote depositions will proceed. Class Plaintiffs included a proposed protocol for remote depositions with their Motion. DAPs propose modifications to that protocol. Defendants raise issues with the protocols proposed by both groups of Plaintiffs.

The Court agrees that Class Plaintiffs' proposed protocol is a reasonable starting place, but some of DAPs' and Defendants' suggestions have obvious merit. The Court is confident the parties will be able to reach agreement on a remote deposition protocol with or even without the Court's help. In an effort to move the process along, the Court has the following reactions to Defendants' and DAPs' objections and proposed modifications to Class Plaintiffs' deposition protocol.

The Court agrees with Defendants that whether a person is an "essential employee" for reasons that have to do with the the a company's role in responding to the COVID-19 pandemic is a factor that should be taken into account when deciding whether that person should sit for an in-person or remote deposition, but it disagrees that there should be a blanket exemption for

depositions of all "essential employees" until it knows more about how that term is defined and how it will be applied.

The Court agrees with Defendants that a remote deposition protocol should be consistent, to the extent possible, with the existing deposition protocol in this case [ECF No. 995], and that it does not appear that Class Plaintiffs' proposed four-day notice requirement of telephone attendance at a remote deposition is any more necessary than for an in-person deposition.

The Court agrees with Defendants that a videotape of a deposition that potentially will be used for trial does not need to show both the witness and his or her lawyer.

The Court agrees with Defendants that if the questioning attorney wants to use electronic exhibits at the depositions, then that attorney should deliver those exhibits in hard copy (or in whatever form the deponent and her or his attorney wants) to the deponent and/or the deponent's attorney before the deposition, and those exhibits should not be opened by the recipient(s) until the deposition starts. The deponent can be asked under oath at the beginning of the deposition whether she or he looked at the exhibits before the deposition began, and the envelope or container in which the exhibits were delivered even can be opened for the first time on screen, if necessary.

The Court agrees with Defendants that Plaintiffs should not be allowed unilaterally to determine the remote video deposition platform. The parties should agree on the remote video deposition platform to be used. If they cannot do so, then the Court will decide.

The Court agrees with Defendants that remote depositions may have to occur over portions of a typical deposition day or over multiple days to accommodate a host of concerns including the fact that witnesses and lawyers may be attending the deposition from home with responsibilities for children or others, and that remote depositions may take longer than in-person depositions for technological and other reasons.

22

The Court does not know if it is possible for a video platform to always show the witness, the witness's attorney, and the questioning attorney on the video screen at all times, as some DAPs suggest, but it agrees that would be preferable.

The Court agrees with some DAPs that the parties and the Court should consider whether to extend the length of time for a remote deposition beyond the time provided by the Federal Rules and should consider how to take into account time lost for technological glitches, but it is not convinced the suggestion to add an automatic 30 minutes to every remote deposition is the best way to do that.

The Court agrees with some DAPs that there should be no unrecorded or at least unnoted conversations between the witness and his or her attorney during a remote deposition while the witness is on the record, but it is unsure how to phrase or police that rule.

The Court agrees with some DAPs that, to save time, an objection on behalf of one aligned party could be deemed an objection on behalf of all (a convention that also can apply to an in-person deposition) but would like to hear from all parties about that.

The Court also agrees with certain DAPs that there needs to be an allocation of time between Class Plaintiffs and DAPs for questioning of Defendants' witnesses.

III.

A telephonic hearing is set for July 20, 2020, at 10:30 a.m. for the purpose of addressing the matters set forth in Section II of this Memorandum Opinion and Order, and any other issues the parties may wish to raise relating to the taking of remote depositions. By July 15, 2020, the parties shall file an agreed remote deposition protocol and note any remaining disagreements about the terms of such a protocol in that filing. By the same date, Class Plaintiffs also shall submit a timetable for taking the 18 depositions they say they want to take after consultation about that

timetable with Defendants and DAPs. Class Plaintiffs should note any disagreements among the parties about their proposed deposition schedule in that submission. If these dates chosen unilaterally by the Court do not work for the parties, liaison counsel should send an email to the Court's courtroom deputy proposing different dates.

For all these reasons, Class Plaintiffs' Motion for Entry of an Order Regarding Remote Depositions of Certain Categories of Witnesses [ECF No. 3610] is granted in large part.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: June 25, 2020