# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | Case No. 1:16-cv-08637 |
| This Document Relates To: **All Cases** | The Honorable Thomas M. Durkin<br>The Honorable Jeffrey T. Gilbert |

## <u>DEFENDANTS' MOTION FOR PROTECTIVE ORDER</u>

## <u>TABLE OF CONTENTS</u>

BACKGROUND ................................................................................................................2

ARGUMENT ...................................................................................................................4

I.     Plaintiffs' Topic 18 Regarding Defendants' Entire Sales Process Is Overbroad And Should Be Limited ...............................................................................................5

II.    Plaintiffs' Topic 21 Regarding Every Alleged Production "Decrease" Or "Decision to Forgo Expansion" And Related Communications Is Overbroad And Should Be Limited .................................................................................................8

CONCLUSION...............................................................................................................14

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Banks v. Office of Senate Sergeant-at-Arms*,
    222 F.R.D. 7 (D.D.C. 2004)......................................................................................11

*Brunet v. Quizno's Franchise Co. LLC*,
    No. 07-cv-01717-PAB-KMT, 2008 WL 5378140 (D. Colo. Dec. 23, 2008)....................7, 11

*Catt v. Affirmative Ins. Co.*,
    No. 2:08-CV-243-JVB-PRC, 2009 WL 1228605 (N.D. Ind. Apr. 30, 2009)....................7, 11

*Eng-Hatcher v. Sprint Nextel Corp.*,
    No. 07 CIV. 7350 BSJ KNF, 2008 WL 4104015 (S.D.N.Y. Aug. 28, 2008).........................4

*Gordon v. Countryside Nursing & Rehab. Ctr., LLC*,
    No. 11 C 2433, 2012 WL 2905607 (N.D. Ill. July 16, 2012) ....................................................3

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981)........................................................................................................4

*Krasney v. Nationwide Mut. Ins. Co.*,
    No. 3:06 CV 1164 JBA, 2007 WL 4365677 (D. Conn. Dec. 11, 2007) ...................................4

*Menuel v. Hertz Corp.*,
    No. 1:07-CV-3031, 2009 WL 10665026 (N.D. Ga. Dec. 9, 2009)....................................7, 12

*Prasad v. George Washington Univ.*,
    323 F.R.D. 88 (D.D.C. 2017)..........................................................................................7

*Smithkline Beecham Corp. v. Apotex Corp.*,
    No. 98 C 3952, 2000 WL 116082 (N.D. Ill. Jan. 24, 2000) ...............................................4, 5

*U.S. E.E.O.C. v. Source One Staffing, Inc.*,
    No. 11 C 6754, 2013 WL 25033 (N.D. Ill. Jan. 2, 2013) ........................................................4

*United States v. HVI Cat Canyon*,
    No. CV 11-5097 FMO (SSx), 2016 WL 11683593 (C.D. Cal. Oct. 26, 2016) ......................11

**Other Authorities**

Fed. R. Civ. P. 26(c) ......................................................................................................3

Fed. R. Civ. P. 30(b)(1)..................................................................................................11

ii

Fed. R. Civ. P. 30(b)(6)...........................................................................................................1, 2, 4

Defendants have business units devoted entirely to producing and selling broiler chicken products.[1]  The production process involves daily production decisions leading to the ultimate slaughter of millions of broilers each week.  On the sales side, each Defendant individually has entered into hundreds of thousands of sales transactions during the relevant period.  Some of the largest Defendants, ███████████████████████████████████████████████████████

███████████████  The processes by which Defendants price broilers and manage production levels are legitimate topics of inquiry in this case, and Defendants have offered to prepare witnesses to testify about these subjects.  But rather than accepting management-level testimony about the process of pricing broilers and determining levels of production, Plaintiffs have refused to narrow two broad Rule 30(b)(6) topics to any manageable scope.  Instead, Plaintiffs demand corporate representative testimony about "any production decrease," all "channels through which you sell Broilers and/or Broiler Products," and all "research on competitors' pricing" including all "communications with competitors." Given Plaintiffs' refusal to provide any reasonable narrowing of these topics and to identify any specific transactions or incidents in advance, Defendants submit this Motion for a Protective Order to limit the scope of two of Plaintiffs' 30(b)(6) topics because these topics are overly broad and would impose an undue – if not impossible – burden on Defendants to prepare a

---

[1] For the purpose of this Motion, "Defendants" includes Amick, Case, Claxton, George's, Harrison, Koch, Mar-Jac, Mountaire, OK Foods, Peco, Perdue, Pilgrim's Pride, Simmons, and Tyson.  George's joins the motion with the caveat that George's has already provided Rule 30(b)(6) testimony regarding the topic of reduction in production volumes and the reasons for such reductions for the period ending August 31, 2009. *See* Dep. Tr. of George's Rule 30(b)(6) witness, Monty Henderson, June 18, 2019, at 11:25-12:13 (Ex. J.). Therefore, to the extent this motion communicates a willingness to offer testimony of a manageable scope in response to Topic 21, George's offer excludes the topic of reduction in production volumes and the reasons for such reductions for the period ending August 31, 2009.  Other defendants in this litigation who have not joined this motion either (a) have not been served with the 30(b)(6) topics at issue or (b) have individual circumstances and/or are negotiating separately with Plaintiffs, and may address any issues by separate motion, if appropriate. Defendants file this Motion only with respect to those complaints which currently name them as a defendant.

1

witness. Absent such an order, Defendants are left to either undergo the unduly burdensome process of preparing a witness to testify about countless individual pricing and production decisions and sales transactions over a nine-year time period or risk additional expense should Plaintiffs claim the corporate representative is unprepared.

## **BACKGROUND**

Plaintiffs served amended notices of Rule 30(b)(6) deposition on most defendants on December 19, 2019. Falk Decl. ¶ 4. The parties conducted several meet and confers and reached agreement on many topics. On April 13, 2020, however, Plaintiffs served another amended notice of Rule 30(b)(6) deposition on Case Farms, Claxton, Foster Farms, Harrison, Koch, Mar-Jac, Mountaire, OK Foods, Perdue, Pilgrim's, Sanderson, Simmons, and Tyson. Falk Decl. ¶ 5; *see also* Exhibit A (Plaintiffs' Third Amended Rule 30(b)(6) Notice to Pilgrim's Pride Corporation); Exhibit B (service e-mail chain). This new notice added eight topics. Between April 22 and April 27, George's, Peco, Fieldale Farms, and Amick received the same topics. Falk Decl. ¶ 6.

Among these topics are two which demand that each Defendant prepare one or more witnesses to fully testify about each and every one of countless sales transactions and production decisions over a relevant time period from January 1, 2008 until September 2, 2016. Specifically, Topic 18 seeks information concerning "the process" by which each Defendant "price[s] or sell[s] Broilers and/or Broiler Products, including" such information across a laundry list of sub-categories. *See* Ex. A at 11. Defendants offered to provide such testimony regarding the general pricing process at a management level, and to provide testimony on specific transactions provided that Plaintiffs identify such specific transactions in advance, but Plaintiffs expressly refused to limit the topic. Ex. B at 1, 6 (J. Rissman July 1 and June 11, 2020 e-mails). Critically, rather than agree to "identify a reasonable number of specific transactions for which they request corporate

2

testimony," *id.* at 2, Plaintiffs declined and "continue[d] to reserve the right" to ask about any and all of them, *id.* at 1. Moreover, Plaintiffs would only identify "specific transactions in advance if Plaintiffs believe it will facilitate an effective deposition." *Id.* Accordingly, under Plaintiffs' proposal, Defendants would still have to prepare a witness to testify about the pricing, including use of any pricing index, for *each and every* one of the transactions Defendants made during the nearly nine-year-long relevant period, or risk expense should Plaintiffs claim the corporate representative was not prepared to testify about specific transactions they "reserve[d] the right" to ask about, but refuse to identify. Within the same topic, Plaintiffs seek testimony about unspecified "research on competitors' pricing" including "communications with competitors" during the entire period.

Topic 21, regarding production decisions, is similarly vastly overbroad. It generally asks for testimony concerning Defendants' "Broiler production and the process by which You determined Broiler production, including" information across six subparts. Ex. A at 12. These categories include "any production decreases or decision to forego production increases," all "factors relied upon by you in determining production," "all information and analyses" considered in making a production decrease, and "all external communications regarding your production decreases." Ex. A at 12-13. While Plaintiffs agree they "are focused on Defendants' production decision processes at a management level," they expressly did not "agree[ ] to limit the Topic." Ex. B at 6; *see also* Falk Decl. ¶ 7. Rather, they stated they wanted witnesses prepared to testify about "each specific decision by Defendants to cut its production/capacity or forgo increases in production/capacity." Ex. B at 6. And, as with Topic 18, they flatly refused to "identify a reasonable number of specific alleged incidents of production decreases and/or specific alleged incidents of foregoing production increases," unless they felt it was necessary. *Id.* at 1-2.

3

Although the parties have attempted to narrow the dispute in good faith, Plaintiffs have refused to accept testimony on these subjects at a management level, and have declined to identify any specific transactions or production decisions they are interested in. *See* Ex. B. Given the overbroad scope of these requests, Defendants respectfully seek a protective order to limit Topics 18 and 21 to a scope for which it would be feasible to adequately prepare a corporate representative without undue burden.

## **ARGUMENT**

This Court maintains broad discretion to issue a protective order to prevent or limit discovery in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); *see also Gordon v. Countryside Nursing & Rehab. Ctr., LLC*, No. 11 C 2433, 2012 WL 2905607, at *2 (N.D. Ill. July 16, 2012). The burden lies with the party seeking the protective order to "show good cause for the entry of the order by making a 'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *U.S. E.E.O.C. v. Source One Staffing, Inc.*, No. 11 C 6754, 2013 WL 25033, at *3 (N.D. Ill. Jan. 2, 2013) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981)). Good cause exists here because, as explained below, Plaintiffs' Rule 30(b)(6) topics are overbroad and preparation for such overbroad topics, if even possible, would be unduly burdensome. *See Smithkline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 116082, at *9 (N.D. Ill. Jan. 24, 2000) ("[T]he recipient of a Rule 30(b)(6) request is not required to have its counsel muster all of its factual evidence to prepare a witness to be able to testify regarding a defense or claim."). Indeed, "[f]ederal judges have not hesitated to issue protective orders when corporations are asked to respond to overly broad and unfocused Rule 30(b)(6) notices." *Krasney v. Nationwide Mut. Ins. Co.,* No. 3:06 CV 1164 JBA, 2007 WL 4365677, at *3 (D. Conn. Dec. 11,

4

2007). This is because an "overly broad 30(b)(6) notice subjects the noticed party to an impossible task, because, where it is not possible to identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 CIV. 7350 BSJ KNF, 2008 WL 4104015, at *4 (S.D.N.Y. Aug. 28, 2008) (alterations adopted).

## I. Plaintiffs' Topic 18 Regarding Defendants' Entire Sales Process Is Overbroad And Should Be Limited

Plaintiffs' Topic 18 broadly asks for a witness to testify concerning the "process by which [Defendants] price or sell Broilers and/or Broiler products, including" five categories. These five categories include any "use, reference to, or reliance upon any Price or Supply Index," the "use of fixed or variable pricing," sales channels including "the manner in which you negotiate ... the price and terms of sale," pricing of value added products, and "research on competitors' pricing of Broilers" including "competitor contacts or communications with competitors." Ex. A at 11-12. Given the herculean task of asking an individual to memorize or even investigate the details of pricing for each and every transaction for an entire company over a nine-year period, Defendants asked if Plaintiffs would accept testimony on this topic at a management level such that Plaintiffs could ascertain general pricing processes over time. While Plaintiffs indicated they are "focused on Defendants' pricing and selling processes at a management level," they expressly stated they "were not agreeing to limit the Topic 18." *See* Ex. B. at 6. Indeed, they "reserve[d] the right to ask about specific transactions … or pricing decisions," including "materials prepared by Defendants reflecting the use of Agri Stats information for pricing decisions" at the deposition without identifying them in advance. *Id*. at 1. Further, Plaintiffs indicated they "are seeking testimony from the entire discovery period, and are not willing to limit themselves to only certain years, or year-by-year summaries." *Id*. at 6.

Although Plaintiffs' "focus" may be management level testimony, their refusal to accept this limitation requires the entry of a protective order. Simply put, it is impossible for any Defendant to adequately prepare a witness to testify to this broad topic. To put the scope of Plaintiffs' topic in context, ███████████████████████████████████████ ███████████████████████ Each transaction was based on one of many pricing mechanisms – including fixed pricing, pricing based on a pricing index, or pricing based on the cost of grain. ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ No corporate representative can be adequately prepared to testify regarding negotiations and pricing for so many sales. Further, information regarding the pricing mechanism for the sales is often available in Defendants' transactional sales data. For example, Pilgrim's and Perdue produced 130 GB and 101 GB of sales data respectively. Falk Decl. ¶ 11. The fact that answers concerning individualized pricing and accounting mechanisms are available in the structured data means that a 30(b)(6) topic with this level of granularity is inappropriate and unnecessary. *See Smithkline Beecham Corp.*, 2000 WL 116082, at *9 ("This rule holds especially true when the information sought is likely discoverable from other sources.").

Compounding any burden of preparation is the disaggregated manner in which information on negotiations is maintained. As several Defendants explained in response to Plaintiffs' Motion to Compel, many of these transactions are made without a written contract – requiring individual interviews of dozens of sales people or review of countless documents to understand the specific terms. *See* Dkt. 3578-7 (J. Carney Decl.) at ¶ 13 (noting that a review of contracts "did not include

pricing programs/arrangements/agreements not in written contracts"); Dkt. 3578-10 (L. Novion Decl.) at ¶¶ 5-6 (describing "customer negotiation emails that dealt with pricing"); *see also* Dkt. 3578-2 (C. Abbott Decl.) at ¶ 17; Dkt. 3578-6 (M. Lim Decl.) at ¶ 18. Indeed, Pilgrim's has produced documents from 56 custodians in this litigation with sales responsibility. Falk Decl. at ¶ 12. Moreover, for many Defendants, any contracts that do exist are not uniformly kept in a central repository. *See, e.g.*, Dkt. 3578-2 (C. Abbott Decl.) at ¶ 17; Dkt. 3578-3 (E. Glasser Decl.) at ¶ 11; Dkt. 3578-4 (A. Getty Decl.) at ¶ 13; Dkt. 3578-6 (M. Lim Decl.) at ¶ 17; Dkt. 3578-7 (J. Carney Decl.) at ¶ 13; Dkt. 3578-10 (L. Novion Decl.) at ¶ 4. Plaintiffs' request that Defendants be prepared to testify about unidentified "contacts" or "research" on competitors' pricing, and regarding unidentified sales is also burdensome given the overwhelming number of documents and transactions at issue. Defendants have collectively produced millions of documents in this litigation. Of those, hundreds of thousands (if not more) relate to sales, such as e-mail negotiations with customers. *See* Falk Decl. at ¶¶ 12-13. Given the number of transactions at issue over this nine-year period, it is simply infeasible to be prepared to discuss all negotiations and any and all terms of these sales. Yet, Plaintiffs insist that Defendants do exactly that – and refuse to identify any transactions in advance unless *they* think "it will facilitate an efficient deposition." Ex. B. at 1.

These sorts of "impossibly broad" topics requiring testimony about "every act" or "piece of correspondence" over a period of several years are routinely rejected. *Catt v. Affirmative Ins. Co.*, No. 2:08-CV-243-JVB-PRC, 2009 WL 1228605, at *6 (N.D. Ind. Apr. 30, 2009) (granting protective order on "impossibly broad" topic which would have required defendant "to identify and prepare a company representative to essentially testify about every act, piece of correspondence, telephone conversation, and electronic journal entry of the underlying claim");

7

*see also, e.g.*, *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 98–99 (D.D.C. 2017) (describing topics which "essentially require a witness to testify as to every event, communication, policy, practice, training, and response—including rejected responses—that Defendant's employees considered in connection with Plaintiff's claims … [as] vastly overbroad"). The same result should follow here. Like Plaintiffs' request, topics that "do[ ] not sufficiently limit the scope of the 'events, discussions, communications, and documents' about which the corporate representative is to testify" are overbroad and place an undue burden on Defendants. *See Menuel v. Hertz Corp.*, No. 1:07-CV-3031, 2009 WL 10665026, at *7 (N.D. Ga. Dec. 9, 2009).

As Defendants have offered, Plaintiffs should accept testimony limited to the general pricing process at a management level – the same sort of compromise made for many of the other 30(b)(6) topics. Alternatively, if Plaintiffs have a reasonable number of specific transactions or customers in mind, they should identify them to allow Defendants to prepare their corporate representatives. *See Brunet v. Quizno's Franchise Co. LLC*, No. 07-cv-01717-PAB-KMT, 2008 WL 5378140, at *4 (D. Colo. Dec. 23, 2008) (requiring plaintiffs "to 'prepare a roster of information' which is reasonably specific and intelligible to the defendants so that they know about which specific representations their designee needs to acquire knowledge."). Because Plaintiffs have declined either of these limitations and instead insist on testimony concerning negotiations for an unidentified number of potentially millions of sales transactions, a protective order limiting the scope of Topic 18 is warranted.

## II.    Plaintiffs' Topic 21 Regarding Every Alleged Production "Decrease" Or "Decision to Forgo Expansion" And Related Communications Is Overbroad And Should Be Limited

Like Topic 18 regarding sales, Topic 21 is overbroad as it calls for testimony on the entire production process and each production decision over a nine year period, including testimony

8

about "any production decrease[s]" and – even more ambiguous – decisions to "forego production increases."[2]  Ex. A at 11-12.  On top of this, Plaintiffs also seek testimony on "all external communications" regarding production decreases, decisions to forego production increases, and information in Defendants' structured data.  While Plaintiffs indicated they "are focused on Defendants' production decisions processes at a management level," they again expressly stated they "were not agreeing to limit the Topic 21."  Ex. B at 6.  Instead, Plaintiffs seek testimony regarding "the process by which Defendants made decisions about their production capacity, including *each specific decision by Defendants* to cut production/capacity or forgo increases in production/capacity."  *Id*. (emphasis added).  In response to Defendants' inquiry, Plaintiffs indicated they would not agree to limit testimony to yearly production figures and trends, *id*. – in other words, even if a Defendant had significantly increased its production during a time when Plaintiffs falsely allege it was conspiring to reduce output, they want a witness prepared to testify about individual fluctuations, overall or at the plant level.  Nor would Plaintiffs agree to limit "external communications" to press releases or other public-facing statements.  After Defendants requested that Plaintiffs agree to at least identify the instances they sought corporate testimony on, Plaintiffs again rejected that request unless *they* determined it was appropriate.  *Id*. at 1-2.  Accordingly, as with Topic 18, Plaintiffs insist that Defendants' corporate representatives be prepared to testify about all unidentified and undefined events.

---

[2] The latter is particularly difficult to provide testimony on as any day on which Defendants do not increase production would constitute a situation where Defendants "forego a production increase."  Though Plaintiffs suggested during the meet-and-confer that they were only seeking testimony on occasions where Defendants could have increased production but did not, this attempt at clarification leaves the topic insufficiently broad.  Defendants make multiple operational decisions daily involving factors that "could" lead to increased production.

Preparing a witness to testify regarding all production "decisions" to "decrease production" or to "forego an increase" is practically impossible. As the notice is written, these decisions would include circumstances entirely irrelevant to this case or entirely beyond Defendants' control, such as production decisions responding to normal seasonal fluctuations in the demand for chicken, holiday production schedules, temporary mechanical failures or problems, bird health issues, line speed limitations, weight limitations, temporary closures to add equipment and increase capacity, etc. Moreover, Plaintiffs' interpretation of the scope of this topic fails to reflect the reality of the production process. Once received, the pullet chick is grown at a pullet farm for 20-25 weeks and becomes a breeder. The breeder is moved to a breeder farm and lays eggs. Those eggs are collected and placed into a hatchery and become broiler chicks, which are then transferred to broiler farms (in many cases owned by independent farmers who tend to the growing chickens) for 5-10 weeks until they are ultimately processed (and sometimes then sent to further processing facilities). Critically, and something which Plaintiffs do not seem to appreciate, a decision at one of these steps does not necessarily mean that production of broilers ultimately decreased – for example, a reduction in egg sets or other measures which improve bird health can be offset by lower mortality rates. *See* ███████████████████████████████ This renders Topic 21 even more overbroad as it asks for any decision that in Plaintiffs' mind could decrease production (or simply "forgo" an increase, whatever that means), regardless of its actual impact.

Due to this process and the size of their operations, Defendants make multiple production decisions on both the live side of their business and the poultry processing side of their business each and every day. For example, the extensive structured live production data already produced by Defendants shows the numerous decisions Defendants made during the relevant period. ████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████    Simply put, the broiler production process is varied and involves numerous decisions that may (or may not) affect production. Requiring Defendants to prepare a witness to testify on each and every decision at each and every one of their facilities is not feasible.

To further illustrate the undue burden and breadth of Plaintiffs' topic, one need not look further than prior 30(b)(1) depositions of producer-defendants. There, Plaintiffs have asked questions regarding all sorts of alleged "decreases" and the witnesses have explained that production may be lower than yesterday, or lower this month than last month, for many different reasons. For example, production may decrease due to an equipment malfunction in the processing line, site inspections by regulators, routine maintenance, weather-forced plant closures, or the Christmas and Thanksgiving holiday closures. ████████████████████████████████

███████████████████████████████████████████████████

---

[3] The same complexities apply for smaller Defendants with fewer facilities. ████████████████
████████████████████████████████████████████████
██████████████████████████████████████



██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████ Likewise, breeder and broiler flock may be

reduced due to factors like disease. ████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████ Regardless of these facts, the breadth of Plaintiffs' Topics would include all

of these events as alleged "production decrease[s]" that would fall under the scope of Plaintiffs'

request.  It is simply not possible to prepare a witness to testify to all such events, particularly

given Plaintiffs' loose (and sometimes inaccurate) use of the phrase "production decrease."  *See*

*United States v. HVI Cat Canyon*, No. CV 11-5097 FMO (SSx), 2016 WL 11683593, at *9 (C.D.

Cal. Oct. 26, 2016) (rejecting topics calling for testimony on "all measures" or "any action" due

to burden and "degree of difficulty [d]efendant would face in preparing witness to testify"); *Catt*,

2009 WL 1228605, at *6.   The Plaintiffs' phrase "forgo an increase" is even worse because it has

no principled limit, and Plaintiffs' clarification that they seek testimony where Defendants "could"

have increased production but did not does not make it any less vague.  No witness can testify to

every production fluctuation, up or down, over any contrived time period, for every plant.

Accordingly, Defendants' offer to provide testimony on a management level is appropriate.

---

[4] The event-specific nature of these questions shows why such detailed testimony is more appropriate for Rule 30(b)(1) depositions.

If Plaintiffs insist on testimony about "each specific decision by Defendants to cut production/capacity or forgo increases in production/capacity," (Ex. B at 6; *see also id*. at 1), it is reasonable to require them to identify "a reasonably specific and intelligible" list of instances about which they would like a witness prepared to testify. *Brunet*, 2008 WL 5378140 at *4. Plaintiffs' complaints allege "production cuts" in 2008 and 2011, so it is reasonable that their Topics put specific parameters around their request. Moreover, Plaintiffs have Defendants' documents and data relating to production. Their experts and attorneys have undoubtedly reviewed that information and identified any production changes of interest to them. If they want testimony concerning those instances, they should share the instances or series of instances they want to explore with Defendants so that the 30(b)(6) witnesses can meaningfully be prepared.

Finally, Plaintiffs' request for testimony on "all external communications" concerning these undefined "decreases" is overbroad and unnecessarily vague. Defendants have requested Plaintiffs to define the types of communications and define the decreases at issue. This proposal has been rejected. Accordingly, preparation of any witness would require first guessing which events Plaintiffs consider a decrease or decision to forgo an increase and, second, searching all communications to determine if there were any "external communications" about the event. Preparing a representative to testify for the company concerning an untold number of communications is unduly burdensome. *See Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 18–19 (D.D.C. 2004) (rejecting as "absurdly overbroad" wide-ranging 30(b)(6) deposition notice that "reads like an interrogatory or a section of a request for production of documents"); *Menuel*, 2009 WL 10665026, at *7. To the extent Plaintiffs have questions on a reasonable number of specific external communications, or specific production decisions, they should identify them in order to allow Defendants to adequately prepare a witness. Last, Topic 21

13

also asks questions about the "manner" that production is tracked in structured data and databases. *See* Ex. A. To date, the parties have handled questions regarding structured data through an informal letter process, rather than a 30(b)(6) deposition. And, indeed, Defendants have responded to many questions Plaintiffs have sent regarding their data. *See* Dkt. 3616 at 10. There is no reason further questions about production data cannot be handled through the process already in place. Given the overbroad nature of Topic 21 and undue burden preparation would place on Defendants, the Court should issue a protective order limiting it to testimony at a management level. If Plaintiffs wish to solicit testimony concerning particular alleged decreases or specific communications, they should identify them with reasonable specificity to allow a witness to adequately prepare to testify.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant the Motion for Protective Order.

Dated: July 2, 2020

WEIL GOTSHAL & MANGES LLP

By: */s/ Carrie C. Mahan*
Carrie C. Mahan (#459802)
Christopher J. Abbott (#1014487)
2001 M Street N.W., Ste. 600
Washington, D.C. 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
carrie.mahan@weil.com
christopher.abbott@weil.com

Jessica L. Falk (#4763686)
767 Fifth Avenue
New York, NY 10153
Telephone: 212-310-8000
Facsimile: 212-310-8007
jessica.falk@weil.com

Brian G. Liegel (#119269*)*
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Telephone: (305) 577-3100
Facsimile: (305) 347-7159
Brian.liegel@weil.com

BAILEY BRAUER PLLC
Clayton E. Bailey (admitted *pro hac vice*)
8350 N. Central Expressway, Ste. 206
Dallas, TX 75206
Telephone: (214) 360-7433
Facsimile: (214) 360-7424
cbailey@baileybrauer.com

EIMER STAHL LLP
Michael L. McCluggage (#01820966)224
South Michigan Avenue, Ste. 1100
Chicago, IL 60604
Telephone: (312) 660-7665
Facsimile: (312) 692-1718
mmccluggage@eimerstahl.com

*Attorneys for Defendant Pilgrim's Pride
Corporation and Liaison Counsel for
Defendants*

Respectfully submitted,

VENABLE LLP

By: */s/ J. Douglas Baldridge*
J. Douglas Baldridge (#437678)
Lisa Jose Fales (admitted *pro hac vice*)
Danielle Foley (admitted *pro hac vice*)
Andrew Hernacki (admitted *pro hac vice*)
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4000
Facsimile: 202-344-8300
jdbaldridge@venable.com
ljfales@venable.com
drfoley@venable.com
athernacki@venable.com

FALKENBERG IVES LLP
Kirstin B. Ives
30 N. LaSalle St., Ste 4020
Chicago, IL 60602
Telephone: (312) 566-4803
Facsimile: (312) 566-4810
kbi@ffilaw.com

*Attorneys for Defendants Perdue Farms, Inc.
and Perdue Foods LLC*

15

By: /s/ *John W. Treece*
John W. Treece (#3122889)
1135 West Montana Street
Chicago, IL 60614
Telephone: (312) 961-7808
jtreece@jwtreece.com

ROSE LAW FIRM

Amanda K. Wofford (admitted *pro hac vice*)
Bourgon Reynolds (admitted *pro hac vice*)
120 East Fourth Street
Little Rock, Arkansas 72201
Telephone: (501) 375-9131
Facsimile: (501) 375-1309
awofford@roselawfirm.com
breynolds@roselawfirm.com

*Attorneys for Defendants Mountaire Farms, Inc., Mountaire Farms, LLC and Mountaire Farms of Delaware, Inc.*

JOSEPH D. CARNEY & ASSOCIATES LLC

By: /s/ *Joseph D. Carney*
Joseph D. Carney (admitted *pro hac vice*)
Telephone: 440-249-0860
Facsimile: 866-270-1221
jdc@jdcarney.com
case@jdcarney.com

Office Address:
139 Crocker Park Boulevard, Ste. 400
Westlake, OH 44145
Mailing Address:1540 Peach Drive
Avon, OH 44011

MILLER SHAKMAN LEVINE & FELDMAN LLP

Thomas M. Staunton
Daniel M. Feeney
180 North LaSalle Suite 3600
Chicago, IL 60601
Telephone: 312-263-3700
tstaunton@millershakman.com
dfeeney@millershakman.com

D.KLAR LAW
Deborah A. Klar (admitted *pro hac vice*)
Deborah A. Klar, Esq.
2934 1/2 Beverly Glen Circle, Suite 761Bel Air, CA 90077
Telephone: 310-858-9500
dklar@dklarlaw.com

*Attorneys for Defendants Case Foods, Inc., Case Farms, LLC, and Case Farms Processing, Inc*

16

NOVACK AND MACEY LLP

By: /s/ *Stephen Novack*
Stephen Novack
Stephen J. Siegel
Christopher S. Moore
100 North Riverside Plaza
Chicago, IL 60606
Telephone: (312) 419-6900
Facsimile: (312) 419-6928
snovack@novackmacey.com
ssiegel@novackmacey.com
cmoore@novackmacey.com

*Attorneys for Defendants Koch Foods
Incorporated, JCG Foods of Alabama LLC,
JCG Foods of Georgia LLC and Koch Meat
Co., Inc.*

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
By: /s/ *Lara Flath*
Lara Flath (#6289481)
Boris Bershteyn (admitted *pro hac vice*)
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
boris.bershteyn@skadden.com
lara.flath@skadden.com

Patrick Fitzgerald (#6307561)
Gail Lee
Peter Cheun
155 N. Wacker Drive
Chicago, IL 60606
Telephone: (312) 407-0700
Facsimile: (312) 407-0411
patrick.fitzgerald@skadden.com
gail.lee@skadden.com
peter.cheun@skadden.com

*Attorneys for Defendant Peco Foods, Inc.*

17

KUTAK ROCK LLP

By: /s/ *John P. Passarelli*
John P. Passarelli (admitted *pro hac vice*)
James M. Sulentic (admitted *pro hac vice*)
1650 Farnam Street
Omaha, NE 68102
Telephone: (402) 346-6000
Facsimile: (402) 346-1148
john.passarelli@kutakrock.com
james.sulentic@kutakrock.com

J.R. Carroll (admitted *pro hac vice*)
Jeffrey M. Fletcher (admitted *pro hac vice*)
234 East Millsap Road, Ste 200
Fayetteville, AR 72703-4099
Telephone: (479) 973-4200
Facsimile: (479) 973-0007
jr.caroll@kutakrock.com
Jeffrey.fletcher@kuakrock.com

Kimberly M. Hare (#6323326)
One South Wacker Drive, Ste 2050
Chicago, IL 60606-4614
Telephone: (312) 602-4100
Facsimile: (312) 602-4101
kimberly.hare@kutakrock.com

*Attorneys for Defendants O.K. Foods, Inc.,*
*O.K. Farms, Inc., and O.K. Industries, Inc.*

EDWARD C. KONIECZNY LLC

By: /s/ *Edward C. Konieczny*
Edward C. Konieczny (admitted *pro hac vice*)
400 Colony Square, Ste 1501
1201 Peachtree Street, NE
Atlanta, GA 30361
Telephone: (404) 380-1430
Facsimile: (404) 382-6011
ed@koniecznylaw.com

SMITH, GAMBRELL & RUSSELL, LLP

David C. Newman (admitted *pro hac vice*)
W. Parker Sanders (admitted *pro hac vice*)
1230 Peachtree Street, N.E.
Promenade, Ste 3100
Atlanta, GA 30309
Telephone: (404) 815-3500
Facsimile: (404) 815-3509
dnewman@sgrlaw.com
psanders@sgrlaw.com

James L. Thompson
Lynch Thompson LLP
150 S. Wacker Drive, Suite 2600
Chicago, IL 60606
T: (312) 445-4623
F: (312) 896-5883
jthompson@lynchthompson.com

*Attorneys for Defendants Mar-Jac Poultry,*
*Inc., Mar-Jac Poultry MS, LLC, Mar-Jac*
*Poultry AL, LLC, Mar-Jac AL/MS, Inc., Mar-*
*Jac Poultry, LLC, Mar-Jac Holdings, Inc.*

18

VAUGHAN & MURPHY

By: /s/ *Charles C. Murphy, Jr.*
Charles C. Murphy, Jr. (admitted *pro hac vice*)
690 S Ponce Court NE
Atlanta, GA 30307
Telephone: (404) 667-0714
Facsimile: (404) 529-4193
cmurphy@vaughanandmurphy.com

WINSTON & STRAWN LLP

James F. Herbison
Michael P. Mayer
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
jherbison@winston.com
mmayer@winston.com

*Attorneys for Defendant Norman W. Fries, Inc. d/b/a Claxton Poultry Farms*

DYKEMA GOSSET PLLC

By: /s/ *Howard B. Iwrey*
Howard B. Iwrey
39577 Woodward Ave, Ste. 300
Bloomfield Hills, MI 48304
Telephone: 248-203-0526
Facsimile: 248-203-0763
hiwrey@dykema.com

Steven H. Gistenson
10 South Wacker Drive, Ste. 2300
Chicago, IL 60606
Telephone: 312-627-2267
Facsimile: 312-876-1155
sgistenson@dykema.com

Cody D. Rockey
2723 South State Street, Ste. 400
Ann Arbor, MI 48104
Telephone: 734-214-7655
Facsimile: 734-214-7696
crockey@dykema.com

Dante A. Stella
400 Renaissance Center
Detroit, MI 48243
Telephone: 313-568-6693
Facsimile: 313-568-6893
dstella@dykema.com

*Attorneys for Defendants Amick Farms, LLC*

19

EVERSHEDS SUTHERLAND (US) LLP

By: */s/ Patricia A. Gorham*
James R. McGibbon (admitted *pro hac vice*)
Patricia A. Gorham (admitted *pro hac vice*)
Peter M. Szeremeta (admitted *pro hac vice*)
Kaitlin A. Carreno (admitted *pro hac vice*)
999 Peachtree Street, N.E., Ste 2300
Atlanta, Georgia 30309-3996
Telephone: (404) 853-8000
Facsimile: (404) 853-8806
jimmcgibbon@eversheds-sutherland.com
patriciagorham@eversheds-sutherland.com
peterszeremeta@eversheds-sutherland.com
katilincarreno@eversheds-sutherland.com

SMITHAMUNDSEN LLC

Clay H. Phillips
150 N. Michigan Avenue, Ste 3300
Chicago, Illinois 60601
Telephone: (312) 894-3200
Facsimile: (312) 997-1828
cphillips@salawus.com

*Attorneys for Defendants Harrison Poultry, Inc.*

AXINN, VELTROP & HARKRIDER LLP

By: */s/ Rachel J. Adcox*
Rachel J. Adcox (#1001488)
Daniel K. Oakes (admitted *pro hac vice*)
Kenina J. Lee (admitted *pro hac vice*)
950 F Street NW, Ste 700
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
radcox@axinn.com
doakes@axinn.com
klee@axinn.com

John M. Tanski (admitted *pro hac vice*)
Jarod G. Taylor (admitted *pro hac vice*)
90 State House Square
Hartford, CT 06103
Telephone: (860) 275-8100
Facsimile: (860) 275-8101
jtanski@axinn.com
jtaylor@axinn.com

Nicholas E.O. Gaglio (admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036
Telephone: (212) 728-2200
Facsimile: (212) 261-5654
ngaglio@axinn.com

LIPE LYONS MURPHY NAHRSTADT &
PONTIKIS, LTD.

Jordan M. Tank
230 West Monroe, Street, Ste 2260
Chicago, IL 60606
Telephone: (312) 702-0586
Facsimile: (312) 726-2273
jmt@lipelyons.com

*Attorneys for Defendants Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Breeders, Inc., Tyson Poultry, Inc.*

20

SHOOK HARDY & BACON LLP

By: /s/ *Lynn H. Murray*
Lynn H. Murray
111 S. Wacker Dr., Ste 4700
Chicago IL 60606
Telephone: (312) 704-7700
Facsimile: (312) 558-1195
lhmurray@shb.com

Laurie A. Novion (admitted *pro hac vice*)
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
lnovion@shb.com

CONNER & WINTERS

John R. Elrod (admitted *pro hac vice*)
Vicki Bronson (admitted *pro hac vice*)
4375 N. Vantage Drive, Ste. 405
Fayetteville, AR 72703
Telephone: (479) 582-5711
jelrod@cwlaw.com
vbronson@cwlaw.com

*Attorneys for Defendant Simmons Foods, Inc.*
*and Simmons Prepared Foods Inc.*

STINSON LLP

By: /s/ *William L. Greene*
William L. Greene (admitted *pro hac vice*)
Peter J. Schwingler (admitted *pro hac vice*)
Kevin P. Kitchen (admitted *pro hac vice*)
50 South Sixth Street, Ste 2600
Minneapolis, MN 55402
Telephone: (612) 335-1500
william.greene@stinson.com
peter.schwingler@stinson.com
kevin.kitchen@stinson.com

J. Nicci Warr
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
Telephone: (314) 259-4570
nicci.warr@stinson.com

SUGAR FELSENTHAL GRAIS &
HELSINGER LLP

John C. Martin
30 N. LaSalle Street, Ste 3000
Chicago, IL 60602
Telephone: (312) 704-2172
Facsimile: (312) 372-7951
jmartin@sfgh.com

THE LAW GROUP OF NORTHWEST
ARKANSAS LLP

Gary V. Weeks (admitted *pro hac vice*)
K.C. Dupps Tucker (admitted *pro hac vice*)
Kristy E. Boehler (admitted *pro hac vice*)
1830 Shelby Lane
Fayetteville, AR 72704
Telephone: (479) 316-3760
gary.weeks@lawgroupnwa.com
kc.tucker@lawgroupnwa.com
kristy.boehler@lawgroupnwa.com

*Attorneys for Defendants George's, Inc.*
*and George's Farms, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 2, 2020, a true and correct copy of the foregoing document was filed electronically. Notice of this filing was sent by operation of the Court's ECF electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic system.

/s/ *Carrie C. Mahan*

Carrie C. Mahan
