Exhibit A

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To:<br>All Actions | Case No. 1:16-cv-08637<br><br>Hon. Thomas M. Durkin<br><br>Magistrate Judge Jeffrey T. Gilbert |

## PLAINTIFFS' THIRD AMENDED NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANT PILGRIM'S PRIDE CORPORATION

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil procedure, Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and Direct Action Plaintiffs (collectively "Plaintiffs") will take the deposition of Defendant Pilgrim's Pride Corporation (collectively "You"), at time and location to be determined by the parties. The deposition will be taken before an officer authorized to administer oaths pursuant to Rule 30 of the Federal Rules of Civil Procedure. The deposition will be recorded by a stenographer and instant visual display. Plaintiffs reserve the right to make a video recording of the deposition testimony, and to use such video at the time of any trial.

In accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, You are advised of Your duty to designate one or more of Your officers, directors, or other persons to testify on Your behalf with respect to the matters known or reasonably available to the deponent and referred to in the annexed Schedule A. Plaintiffs reserve the right to supplement Schedule A with additional topics.

NOTICE IS FURTHER GIVEN that Plaintiffs reserve the right to utilize electronic exhibit software during the deposition.

548559.1

DATED: April 13, 2020

*s/ Simeon A. Morbey*
W. Joseph Bruckner
Brian D. Clark
Simeon A. Morbey
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T: (612) 339-6900
F: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
samorbey@locklaw.com

Bruce L. Simon
Neil Swartzberg
PEARSON, SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
T: (415) 433-9000
F: (415) 433-9008
bsimon@pswlaw.com
nswartzberg@pswlaw.com

Clifford H. Pearson
Daniel L. Warshaw
Michael H. Pearson
Bobby Pouya
PEARSON SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
T: (818) 788-8300
F: (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
mpearson@pswlaw.com
bpouya@pswlaw.com

*Direct Purchaser Plaintiffs Interim Co-Lead Class Counsel*

Respectfully submitted,

Steven A. Hart (#6211008)
Brian Eldridge (#6281336)
Kyle Pozan (#6306761)
HART MCLAUGHLIN & ELDRIDGE
22 W. Washington Street, Suite 1600
Chicago, IL 60602
T: (312) 955-0545
F: (312) 971-9243
shart@hmelegal.com
beldridge@hmelegal.com
kpozan@hmelegal.com

*Direct Purchaser Plaintiffs Interim Liaison Class Counsel*

*s/ Daniel C. Hedlund*
Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua R. Rissman
Brittany N. Resch
GUSTAFSON GLUEK PLLC
220 South Sixth Street, #2600
Minneapolis, MN 55402
T: (612)333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsongluek.com

Joseph W. Cotchett
Adam Zapala
Tamarah Prevost
COTCHETT, PITRE & MCCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
T: (650) 697-6000
jcotchett@cpmlegal.com
azapala@cpmlegal.com
tprevost@cpmlegal.com

*Commercial and Institutional Indirect Purchaser Plaintiffs Interim Co-Lead Counsel*

Kenneth A. Wexler
Edward A. Wallace
Thomas A. Doyle
WEXLER WALLACE LLP
55W.Monroe Street, Suite 3300
Chicago, IL 60603
T: (312) 346-2222
kaw@wexlerwallace.com
eaw@wexlerwallace.com
tad@wexlerwallace.com

*Commercial and Institutional Indirect Purchaser Plaintiffs Liaison Counsel*

*s/ Shana E. Scarlett*
Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, Washington 98101
(206) 623-7292
steve@hbsslaw.com

*Lead Counsel for the End-User Consumer Class*

Scott Gant
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue NW
Washington, DC 20005
Telephone: (202) 237-2727
sgant@bsfllp.com

*Liaison Counsel for Direct Action Plaintiffs*

# SCHEDULE A

## DEFINITIONS

1.	The terms "You" and "Your" mean the Defendant upon who this notice is served including, its past and present parents, subsidiaries, departments, committees and subcommittees, affiliates, predecessors, or successors, and all past and present officers, directors, members, partners, agents, employees, attorneys, representatives, investigators, successors, or predecessors thereof, and all other persons in whole or in part acting on its behalf or in conjunction or connection with it.

2.	The term "document(s)" as used herein, is defined to be synonymous with the broadest possible meaning of "documents or electronically stored information ['ESI']" as used in Rule 34 of the Federal Rules of Civil Procedure.

3.	The term "Benchmarking Service" means a company to whom you submitted data on a regular basis concerning the breeding, growing, hatching, processing, production, distribution, or sale of Broilers. Examples of some currently known Benchmarking Services include Agri Stats, Inc., Agrimetrics, and a service administered by Bank of America.

4.	The term "Broiler" or "Broilers" shall have the same meaning as the definition in Paragraph 111 of Direct Purchaser Plaintiffs' Fourth Consolidated and Amended Complaint (Dkt No. 1563), as "chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, raw or cooked, whole or in parts, or as a meat ingredient in a value added product, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards."

5.	"Broiler Product" refers to any product that contains broiler chicken including products sold fresh or frozen, raw or cooked, whole or in parts, or as a meat ingredient in a value

548583.1

added product, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards.

6. "Broiler Producer" means Defendants, co-conspirators, and any non-Defendant entity included in WattPoultryUSA's Annual Top Broiler Company survey published each spring (see, e.g., March 2016 Issue of WattPoultryUSA, available at http://www.wattpoultryusa-digital.com/201603#&pageSet=0&contentItem=0).

7. "Georgia Dock Survey Participants" shall refer to Defendants who participated in the Georgia Dock price survey at any time during the relevant period including, Defendants Sanderson Farms, Tyson, Fieldale Farms, Claxton Poultry, Wayne Farms, LLC, Mar-Jac Poultry, Harrison Poultry, Koch Foods, and Pilgrim's Pride, and their related entities as defined in Direct Purchaser Plaintiffs' Fourth Consolidated and Amended Complaint (Dkt No. 1563).

8. "Price or Supply Index" refers to any index or service used to measure Broiler pricing or supply, including but not limited to those run by Georgia Department of Agriculture (aka Georgia Dock), Urner Barry and the United States Department of Agriculture.

9. The term "Structured Database" or "Structured Databases" refers to any data that resides in a fixed field within a record or file, such as data stored in Oracle, SQL, or files that are in Columns/Rows or a fixed field with a predefined format.

### SCHEDULE OF TOPICS NOTICED ON DECEMBER 19, 2019

**Unless otherwise specified, the relevant time period for each topic identified below is January 1, 2007 through September 2, 2016.**

1. The process by which You produce Broilers and/or Broiler Products, including, but not limited to, the following:

    a. The involvement of any third parties in the process;

      b.      The Broilers Products sold by You including, any fresh or frozen, raw or cooked, whole or in parts, further processed or value added product;

      c.      The manner You maintain contracts or the relevant terms of agreements between You and Your customers, including any relevant databases or computer systems used to record terms;

      2.      The manner in which You account for, track, or calculate the costs of Your Broiler Products, including identification of any structured data, computer systems, programs, or databases, and/or summary reports you keep or kept reflecting Your costs.

      3.      The Benchmarking Services or Price or Supply Indices You participated in, reported to, or provided information to during the relevant time period, including but not limited to (a) the reports or information received; (b) the identity of the persons who received the reports or information on a regular basis; (c) the amount paid by YOU for each service, index or report; (d) the information that You were asked to report or provide to each service, index, or report, and (e) the manner in which Your information was calculated into each service, index, or report.

      4.      The data You provided (e.g., Broiler breeding, pricing, growing, hatching, processing, production, distribution, and/or sale data) to and receive from Benchmarking Services including but not limited to any codes and fields for a determination of the costs, prices, quantities, form and type of Broiler Products that You sold from January 1, 2004 to the present and any audits or verification efforts by any Benchmarking Services including Agri Stats and the Georgia Department of Agriculture, regarding the data that You provided to them.

      5.      Any disputes, inquiries, or investigations, relating to the sale, production, or pricing of Broilers by the Federal Trade, Commission, U.S. Department of Agriculture, Georgia Department of Agriculture, U.S. Securities & Exchange Commission, states' attorneys general, or other government agencies or regulators (except for the U.S. Department of Justice or any

investigation by any other agency or regulator seeking to mirror the Department of Justice's grand jury investigation) initiated at any time relating to the period between January 1, 2007 through the present, including:

    a.    The scope of the investigation; and

    b.    The scope of the documents you produced in response to the investigation.

6. Your ability to identify or trace in the supply chain each Broiler You slaughter in the event of a food safety recall.

7. The identification, explanation and interpretation of Your structured data or transactional data produced in *In Re Broiler Chicken Antitrust Litigation*, or any related action, including any codes and fields for a determination of the costs, prices, quantities, form and type of Broiler Products that You sold from January 1, 2004 to the present.

8. Your efforts to search for, identify, collect, produce and preserve documents in this litigation or any other investigation (except for the U.S. Department of Justice or any investigation by any other agency or regulator seeking to mirror the Department of Justice's grand jury investigation) or litigation involving Broilers, including the implementation of any litigation hold, including the mechanisms, systems software or computer programs, used by You to create, store, back-up and recover documents relevant or potentially relevant to this litigation.

9. The location, custody and control (including any Structured Databases, ESI, information systems, databases and Communications systems) of any documents maintained by You or any of Your departments, divisions, parents, subsidiaries, joint ventures, affiliates, units or other subdivisions that had any role in the production, processing, distribution, marketing, pricing of Broilers.

10. The destruction, loss, misplacement, redaction, deletion of, or inability to recover any documents relevant or potentially relevant to this litigation or responsive to Plaintiffs' discovery

requests, including without limitation the dates that such documents were destroyed, misplaced, redacted or rendered no longer available or reasonably available for discovery purposes, the contents thereof, and the reasons for their destruction, loss, or alteration.

11. Your document retention and document destruction policies, practices and procedures in force at all relevant times, including the applicability or inapplicability of those policies, practices and procedures to documents relevant or potentially relevant to the *In Re Broiler Chicken Antitrust Litigation* or any related action.

12. Your participation in the Georgia Dock price survey including the dates upon which you participated in the survey, the nature and purpose of Your participation in the survey, Your communications with the Georgia Department of Agriculture relating to the survey, any changes to your participation over time, and any concerns You had regarding the Georgia Dock price being too high.

13. The information You provided to the Georgia Department of Agriculture in connection with the Georgia Dock price survey, including:

    a. The individuals involved with procuring, drafting, transmitting and providing the information;

    b. The specific categories and description of data provided (including any changes over time);

    c. The methodology, procedure, and records relied upon or utilized by You in order to prepare and provide the information;

    d. The methodology, procedure, and records You were asked to rely upon or utilize in order to prepare and provide the information;

    e.  The method by which information was transmitted (e.g., telephone, fax, and/or email, and the location of email servers and/or in-person submitters used) to the Georgia Department of Agriculture;

    f.  Any disputes or disagreements You had with Your employees, any Broiler Producer, or any other person or entity regarding the manner in which the data was procured or provided to the Georgia Department of Agriculture; and

    g.  Any communications with customers and/or other Broiler Producers, regarding the information submitted.

  14. Your involvement with the Poultry Market News Advisory Committee (aka, the Georgia Dock Advisory Committee), including:

    a.  The persons from Your organization and any other Broiler Producer involved with the committee,

    b.  The meetings between committee members and participants that related to the committee, the Georgia Dock, or the pricing, supply, or demand of Broilers, and

    c.  The communications between committee members and participants that related to the committee, the Georgia Dock, or the pricing, supply, or demand of Broilers.

  15. The attempt to establish Georgia Premium Poultry Price Index ("GPPPI") or any other alternative to the Georgia Dock, including the reasons for establishing the GPPPI, Your willingness or unwillingness to participate or support the GPPPI or alternative index, and Your communications with the Georgia Department of Agriculture or any Broiler Producer relating thereto through February 28, 2017.

548583.1               6

16. Your ethics and antitrust policies and procedures, as well as discipline or approval of particular activities for Document Custodians relating to such policies and procedures, including, but not limited to, any training Your employees received regarding discussions of supply and/or pricing of Broilers or Broiler Products with other Broiler Producers. For purposes of this topic, "ethics" refers to Document Custodians' activities relating to communications or meetings involving a Broiler Producer, such as pre-approval for gifts from competitors or participation in events or trips with one or more other Broiler Producer.

17. Your contractual agreement or any other similar agreement with Agri Stats, including without limitation the terms and negotiation thereof.

## **SCHEDULE OF ADDITIONAL TOPICS**

**Unless otherwise noted, the relevant time period for each topic identified below is January 1, 2008 to September 2, 2016.**

18. The process by which You price or sell Broilers and/or Broiler Products, including:

    a. Your use, reference to, or reliance upon any Price or Supply Index, reports or data (including the Georgia Dock, Urner Barry, EMI or Agri Stats) in connection with the sale of Broilers or Broiler Products;

    b. Your use of fixed price or variable pricing in connection with the sale of Broilers and/or Broiler Products;

    c. The channels through which you sell Broilers and/or Broiler Products, including distributors, purchase groups, co-ops, distributor alliances, and retail stores, and the manner in which you negotiate, set agree upon the price and terms of sale;

    d. Your pricing and cost composition of any value added or further processed Broiler Products, including (i) the characteristics of products that You

        categorize as "further processed" or "value-added," (ii) the manner in which You set prices for such products, including whether and how changes in the market value of non-further processed products influence the prices for further processed products, (iii), the cost composition of further processed products, including what portions of costs are attributable to: chicken meat, other ingredients (like breading, etc.), labor, energy, transportation, packaging, and any other costs, (iv) the use of transfer pricing and internal accounting of chicken costs for Your divisions, subsidiaries or affiliates in charge of further processed products, and (v) the use of third parties to further process chicken that You sell; and

    e.    Your research on competitors' pricing of Broilers and/or Broiler Products—including competitor contacts or communications with competitors.

19.    Your use of any price lists for fresh, frozen, further processed, value-added, or foodservice customers, including the individuals with authority to create, revise, and/or deviate from these price lists.

20.    The prices received by You for Broiler Products including, any differences between gross and net prices, how the final net sales prices received by You are dependent on promotions, allowances, volume discounts and cash discounts, how these factors making up the net price are reflected in the structured or transactional data maintained by You or reported to any Benchmarking Services including Agri Stats.

21.    Your Broiler production and the process by which You determined Broiler production during the relevant time period, including:

      a.      The individuals with authority to authorize and implement the determine production and implement any production decreases;

      b.      The manner that you track production including the reports, databases, structured data, or factors relied upon by you in determining production;

      c.      The timing and amount of any production decreases or decision to forgo production increases;

      d.      The manner/mechanisms of any production decrease or decision to forgo production increases (e.g. changes in Breeder stock, destruction or sale of egg sets, facility closure or rationalization, lowering capacity, bird weight changes, running plants at less than capacity, delaying or abandoning planned expansions);

      e.      The reasons for your production decisions and decision to forgo expansion of production, including all information and analyses that you considered in determining whether to make a production cut; and

      f.      All external communications regarding your production decreases, including all reasons regarding the basis for Your decision to engage in external communications regarding a production decrease.

22.    Whether You engaged in a strategy, sometimes referred to as "buy versus grow," that entails purchasing a portion of Your Broiler supply from or selling a portion of Your Broiler Production to competitors including:

      a.      The individuals and business units involved in developing and implementing the buy versus grow strategy;

      b.      The processes You used to establish the volume of Broilers to purchase from or sell to competitors and to monitor the results and impact of

        purchasing a portion of Your Broiler supply from or selling a portion of Your Broiler Production to competitors, sometimes referred to as buy versus grow strategy;

c.    The process by which you determined which competitors to purchased Broilers from or sell to pursuant to a strategy of purchasing a portion of Your Broiler supply from or selling a portion of Your Broiler Production to competitors, sometimes referred to as the buy versus grow strategy;

d.    The process you used to establish the price at which You purchased Broilers from or sold Broilers to competitors pursuant to a strategy of purchasing a portion of Your Broiler supply from or selling a portion of Your Broiler Production to competitors, sometimes referred to as to the buy versus grow strategy; and

e.    The volume, price, and supplier of Your Broiler purchases or sales pursuant to a strategy of purchasing a portion of Your Broiler supply from or selling a portion of Your Broiler Production to competitors, sometimes referred to as to the buy versus grow strategy during the relevant time period.

23.    Any payments, benefits, or things of value provided by You to, or received by You from, any other Broiler Producer Defendant (such as gifts, vacations, cars, loans, bitcoin transfers), including:

a.    The individuals and business units involved in the payment, benefit or thing of value;

b.    The reasons for the payment, benefit, or thing of value; and

c.    The amount and date of the payment, benefit or thing of value.

24. Any instances of communications or agreements between You and any other Broiler Producer Defendant regarding any attempt at coordination on bidding or negotiation for any procurement events related to Broiler Products, including:

    a. The individuals and business units involved in the communication;

    b. The reasons for the communication; and

    c. Your actions following the communication in the procurement event and the extent to which Your actions relied upon the communications.

25. Any instances of communications or agreements between You and any other Broiler Producer Defendant regarding any attempt at coordination for allocation or other division of any part of the market for Broiler Product or customers of Broiler Product from January 1, 2008 through the present, including:

    a. The individuals and business units involved in the communication or agreement;

    b. The reasons for the communication or agreement; and

    c. Your actions following the communication or agreement and the extent to which Your actions in the market for Broiler Product were related to the communications or agreements.