UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 16 C 8637 <br><br> Judge Thomas M. Durkin |

MEMORANDUM OPINION AND ORDER

All but one defendant in this case is an industrial producer of chicken meat.[1] (The industry term for such meat is "Broilers.") Plaintiffs are entities and individuals who purchased Broilers from Defendants—either directly or indirectly—for resale, business, or personal use, between 2008 and 2016. In three class complaints (by classes of direct purchasers, indirect purchasers, and end-user consumers), Plaintiffs alleged that Defendants conspired to fix Broiler prices higher than the market would naturally support, in violation of the Sherman Act § 1 and state law. On November 20, 2017, the Court denied motions to dismiss the complaints for failure to state a claim. *See* R. 541 (*In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772 (N.D. Ill. 2017)).

After the Court denied the motions to dismiss, a number of new plaintiffs, who claim to purchase Broilers directly from Defendants, filed complaints separate from the direct-purchaser class alleging the same price-fixing conspiracy against Defendants. One of those plaintiffs is the Commonwealth of Puerto Rico. *See* Case No

---

[1] The exception is Agri Stats, Inc., a subsidiary of Eli Lilly & Co. that produces subscription reports about the Broiler industry.

19 C 5114. Defendants have moved to dismiss several of Puerto Rico's claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 3159. That motion is denied in part and granted in part.

## Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

**Background**

Puerto Rico's allegations regarding Defendants' conduct echo the allegations in the other complaints in this case. Defendants' motion does not attack those allegations.

Instead, Defendants argue that Puerto Rico's allegations about its Broiler purchases are insufficient to establish Puerto Rico's antitrust standing. Puerto Rico alleges that it purchases Broilers for its "students, prisoners and corrections officers, and hospital patients." 19 C 5114, R. 1 ¶ 421. Puerto Rico alleges that it makes these purchases "indirectly from the Defendants," *id.* ¶ 454, "through a network of authorized distributors." *Id.* ¶ 421. Puerto Rico also alleges that it "directly purchased Broilers from Defendants." *Id.* ¶ 450(C). In addition to damages for its direct and indirect purchases of Broilers from Defendants, Puerto Rico "seeks damages for violations . . . suffered by its citizens," and "seeks to recover these damages on behalf of its citizens and as *parens patriae*." *Id.* ¶ 423.

**Analysis**

**I.     Allegation of Direct Purchases**

Defendants argue that Puerto Rico's allegation of direct purchases is "conclusory" and "lacking any factual support." R. 3407 at 5. But there is nothing facially implausible about Puerto Rico's allegation that it directly purchases Broilers from Defendants, and it would not be surprising if an entity the size of the Puerto Rico made such purchases. Indeed, Defendants do not expressly argue that this allegation is not plausible.

3

Defendants real argument is that Puerto Rico's allegation of direct purchases is "contradicted" by Puerto Rico's allegations of indirect purchases, and it "should be disregarded due to the more specific allegations of indirect purchases." R. 3407 at 5. As an initial matter, the Court disagrees that the allegations of indirect purchases are more specific than the allegation of direct purchases. Puerto Rico alleges that it purchases Broilers "through a network of authorized dealers." 19 C 5114, R. 1 ¶ 421. But this allegation is simply another way of saying that Puerto Rico makes indirect purchases. It is not anymore factually specific than simply saying Puerto Rico makes indirect (or direct) purchases. While Puerto Rico alleges that it makes indirect purchases twice in the complaint, whereas it alleges that it makes direct purchases only once, this is not an indication that the allegations are contradictory. It is plausible that Puerto Rico makes both direct and indirect purchases. Defendants do not explain why this is an implausible or contradictory scenario.

Furthermore, the Court notes that the allegations of other direct-action plaintiffs in this case are not materially different from Puerto Rico's. Most of the direct-action plaintiffs in this case do not allege which specific defendants they made purchases from, let alone any details about those purchases. This is not surprising because such details are unnecessary for Defendants to be on notice of the claims against them. Plaintiffs were required to allege greater detail about *Defendants'* conduct to plausibly allege a price fixing conspiracy. But, barring some circumstance making direct purchases impossible (whether factually or legally), Puerto Rico does not need to allege anything more than the simple fact that it made direct purchases

4

in order to make their claims plausible. Therefore, Defendants motion to dismiss Puerto Rico's claims based on direct purchases is denied.

## II. Puerto Rico Antitrust Act

In *Illinois Brick v. Illinois*, the Supreme Court held that federal antitrust statutes do not permit a plaintiff to seek damages for increased prices passed on through wholesalers and retailers. 431 U.S. 720 (1977). The Supreme Court reasoned that permitting lawsuits by indirect purchasers risked double recovery by the direct and indirect purchasers for what was in fact the same injury, just passed on from the direct purchasers to the indirect purchasers. To avoid this potential problem, and the complex tracing of costs passed on down a supply chain, the Supreme Court restricted "antitrust standing" under federal law to plaintiffs who allege they were directly harmed by the defendant's conduct.

Because damages are not available for indirect purchases under federal antitrust law, Puerto Rico seeks damages for its indirect purchases, and those of its citizens, under the Puerto Rico Antitrust Act ("PRAA"). As is the case under the laws of most states, Puerto Rico courts have held that the PRAA should be interpreted in harmony with the federal antitrust statutes. *See Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 853 n.1 (1st Cir. 2016) ("Puerto Rico's antitrust statute is coterminous with the Sherman Act."); *Caribe BMW, Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 19 F.3d 745, 754 (1st Cir. 1994) ("[C]ourts interpret Puerto Rico's [antitrust] laws as essentially embodying the jurisprudence relevant to the parallel federal [antitrust] law."); *Shell Co. (P.R.) Ltd. v. Los Frailes Serv. Station, Inc.*, 551 F. Supp. 2d 127, 135

5

(D.P.R. 2007) ("Puerto Rico courts generally follow federal antitrust law when interpreting local antitrust laws[.]"). In order to avoid the impact of *Illinois Brick*, some state legislatures have passed statutes rejecting *Illinois Brick* (known as "repealer" statutes) and expressly permitting indirect purchasers to sue for damages under state law. The Puerto Rico legislature has not passed such a statute. *See In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 723 (N.D. Ill. 2016); *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 374 (D.R.I. 2019).

Nevertheless, Puerto Rico cites the Puerto Rico Supreme Court's decision in *Pressure Vessels v. Empire Gas*, 137 DPR 497 (P.R. 1994), to argue that *Illinois Brick* has been "repealed" in Puerto Rico. The initial problem with this argument is that *Pressure Vessels* does not involve a price fixing claim by purchasers against producers. Indeed, *Pressure Vessels* does not mention *Illinois Brick* at all or whether indirect purchasers can bring claims under the PRAA. On this basis alone, the majority of courts have rejected the argument that *Pressure Vessels* serves to repeal *Illinois Brick* under the PRAA. *See, e.g.*, *Opana*, 162 F. Supp. 3d at 723; *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 252 (D. Conn. 2015); *United Food & Commercial Workers v. Teikoku Pharma*, 74 F. Supp. 3d 1052, 1087 (N.D. Cal. 2014).

However, even though *Pressure Vessels* does not expressly discuss *Illinois Brick*, it cites a more recent Supreme Court decision addressing the prohibition on claims by indirect purchasers. *See Pressure Vessels*, 137 DPR at 519 (citing *Kansas v. Utilicorp United, Inc.*, 497 U.S. 199 (1990)). Furthermore, *Pressure Vessels* expressly held that federal case law requiring "antitrust injury" and "antitrust standing"—

*Illinois Brick's* prohibition on claims by indirect purchasers being an aspect of "antitrust standing"—did not restrict claims under the PRAA, because those court decisions were issued *after* enactment of the PRAA. *See Pressure Vessels*, 137 DPR at 518-19. Instead, the court held that the PRAA should be interpreted in accordance with the "liberal theory of standing" applied by federal courts at the time of the PRAA's enactment. *Id.* at 520.

Puerto Rico points out that a federal district court in Puerto Rico has interpreted *Pressure Vessels* to stand for the proposition that the PRAA rejects *Illinois Brick* and permits damages claims by indirect purchasers. *See Rivera-Muñiz v. Horizon Lines Inc.*, 737 F. Supp. 2d 57 (D.P.R. 2010). Even though *Pressure Vessels* does not mention *Illinois Brick*, *Rivera-Muñiz* relied on *Pressure Vessels's* historical analysis of the development of federal antitrust standing doctrine to find that the PRAA rejects *Illinois Brick* because that case was issued in 1977, thirteen years after the PRAA was enacted. *See Rivera-Muñiz*, 737 F. Supp. 2d at 61 ("Because Puerto Rico liberally construes its standing requirements in private antitrust cases, it is immaterial whether Plaintiffs are direct or indirect purchasers[.]"). And for that reason, *Rivera-Muñiz* found that indirect purchasers have standing under the PRAA.

But *Pressure Vessels's* analysis of the state of antitrust case law at the time the PRAA was enacted is flawed. True, *Illinois Brick* was not issued until 1977, whereas the PRAA was enacted in 1964. But as one of the sources relied on by the court in *Pressure Vessels* notes, by the 1950s, courts "began to subscribe to [the] direct-injury standing requirement," and by 1960 it "had become commonplace in antitrust

7

standing doctrine." John F. Hart, *Standing Doctrine in Antitrust Damage Suits, 1890 - 1975: Statutory Exegesis, Innovation, and the Influence of Doctrinal History*, 59 Tenn. L. Rev. 191, 229 (1992) (cited by *Pressure Vessels*, 137 DPR at 519). Indeed, as early as 1918, the Supreme Court had already held that:

> The general tendency of the law, in regard to damages at least, is not to go beyond the *first* step. As it does not attribute remote consequences to a defendant so it holds him liable if proximately the plaintiff has suffered a loss. . . . The [defendant] ought not to be allowed to retain his illegal profit, and the *only* one who can take it from him is the one that alone was in relation with him, and from whom the carrier took the sum.

*S. Pac. Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 534 (1918) (emphases added). Relying in part on this holding, the Supreme Court later expressly prohibited the defense that a direct purchaser had passed on higher prices to indirect purchasers. *See Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 490 n.8 (1968). And in "parity" with *Hanover Shoe*, the Supreme Court in *Illinois Brick* barred indirect purchasers from bringing claims. *See Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 481 (7th Cir. 2002) ("By parity of reasoning, the Court decided in *Illinois Brick* that the persons authorized to sue under the antitrust laws in this type of case were the direct purchasers.").

In sum, *Pressure Vessels* is an insufficient authority to find that the PRAA rejects *Illinois Brick*, if only because *Pressure Vessels* is not about claims by indirect purchasers. Furthermore, to the extent *Pressure Vessels's* general historical analysis of "antitrust standing" is relevant to whether the PRAA permits claims by indirect purchasers, the analysis is flawed. This Court joins the majority of courts and finds

*Rivera-Muñiz's* reliance on *Pressure Vessels* as an *Illinois Brick* repealer unpersuasive. Therefore, the Court finds that the PRAA does not permit claims by indirect purchasers.[2]

### III. Unjust Enrichment

In the alternative to its antitrust claims, Puerto Rico seeks relief under a theory of unjust enrichment. Generally, unjust enrichment provides a remedy for harms that are not otherwise covered by statute or common law. Puerto Rico argues that since indirect purchasers cannot bring a cause of action under federal law or the PRAA, they should be able to sue for unjust enrichment. But there is a difference between a remedy being unavailable and remedy being barred. As discussed, lawsuits by indirect purchasers are barred under federal law, and Puerto Rico has adopted (or at least not rejected) application of this bar to the PRAA. As Defendants argue, permitting indirect purchasers to bring unjust enrichment claims would operate as an end-run around the bar established by *Illinois Brick*. The great majority of courts have held that in jurisdictions where *Illinois Brick* controls, plaintiffs are also prohibited from seeking relief for unjust enrichment based on indirect purchases. *See, e.g.*, *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 542 (E.D. Pa. 2010); *In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461, 464 (D. Md. 2005); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1380 (S.D. Fla. 2001); *Opana*, 2016 WL 4245516, at *2. By failing to repeal *Illinois Brick*, Puerto Rico has

---

[2] Notably, in other lawsuits, Puerto Rico itself has agreed with this finding. *See* R. 3160-1 at 7-8 (pp. 6-7) ("Puerto Rico's existing anti-trust law precludes indirect purchasers from recovering for the harm caused by Defendants.").

effectively decided that there should not be a claim for indirect purchases under its law, whether statutory or otherwise. Therefore, Puerto Rico's unjust enrichment claim is dismissed.

## IV.  *Parens Patriae* Claim

Puerto Rico also seeks damages on behalf of its citizens *parens patriae*.[3] Presumably, however, all of Puerto Rico's individual citizens purchase chicken meat indirectly from retailers or wholesalers, and not directly from Defendants, just as has been alleged in the End-User Class complaint. The Court has already held that the PRAA does not provide for damages claims by indirect purchasers like Puerto Rico's citizens. Thus, no claim remains for Puerto Rico to bring *parens patriae*.

It is true that the *Illinois Brick* doctrine does not prevent Puerto Rico from seeking injunctive relief. *See U.S. Gypsum*, 350 F.3d at 627 ("the direct-purchaser doctrine does not foreclose equitable relief"). But an injunction prohibiting Defendants from engaging in price fixing in Puerto Rico would benefit Puerto Rico's citizens whether Puerto Rico brings its claims on its own behalf or on behalf of its citizens. Thus, it is unnecessary for the Court to analyze whether Puerto Rico has *parens patriae* standing under any statute or *Snapp*, 458 U.S. 592 (1982).

## Conclusion

Therefore, Defendants' motion to dismiss is denied in part and granted in part. The motion is denied to the extent that Puerto Rico's claims based on its direct

---

[3] "*Parens patriae*" is a "doctrine by which a government has standing to prosecute a lawsuit on behalf of a citizen." Black's Law Dictionary (11th ed. 2019).

purchases from Defendants may proceed. The motion is granted to the extent that Puerto Rico's claims based on indirect purchases, its unjust enrichment claims, and its claims *parens patriae*, are dismissed.

ENTERED:

*Thomas M. Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: July 15, 2020

11