# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION, | Case No.: 1:16-cv-08637 |
| | The Honorable Thomas M. Durkin |
| This Document Relates To: | |
| THE DIRECT PURCHASER PLAINTIFF ACTION | |

**DECLARATION OF BOBBY POUYA IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENTS BETWEEN DIRECT PURCHASER PLAINTIFF CLASS AND DEFENDANTS PECO FOODS, INC., GEORGE'S, INC., GEORGE'S FARMS, INC., AND AMICK FARMS, LLC**

937960.1

I, Bobby Pouya, declare and state as follows:

1. I am a partner of the law firm Pearson, Simon & Warshaw, LLP, Interim Co-Lead Counsel for the Direct Purchaser Plaintiff Class ("DPPs") in this litigation, along with Lockridge Grindal Nauen P.L.L.P.

2. I submit this Declaration in support of Plaintiffs' Motion For Final Approval Of Settlement Between the Direct Purchaser Plaintiff Class and Defendants Peco Foods, Inc., George's, Inc., George's Farms, Inc., and Amick Farms LLC (collectively "Peco, George's, and Amick" or "Settling Defendants"), filed simultaneously herewith.

3. On behalf of DPPs, I, my firm, and my co-lead counsel personally conducted settlement negotiations with counsel for Defendants Peco, George's and Amick over the course of several months and on many occasions. The DPPs and Settling Defendants recently signed the current proposed settlement agreements.

4. As counsel for DPPs, we performed a thorough investigation and engaged in extensive discovery prior to reaching the settlements. These efforts commenced prior to the filing of DPPs' initial complaint and included pre-litigation investigation into Defendants' conduct that formed the basis of the DPPs' complaints.

5. During the litigation, DPPs obtained responses to multiple sets of interrogatories, and received over 8 million documents in response to their requests for production and third-party subpoenas.

6. DPPs along with other plaintiffs have taken over one hundred depositions of the Defendants and third parties.

7. DPPs have also provided responses to written discovery, produced documents, and appeared for depositions noticed by the Defendants.

8. DPPs previously settled with Defendant Fieldale Farms Corporation for $2.25 million. DPPs' current analysis and estimate of sales to date suggests Fieldale has a market share of 2.1% of the Settlement Class. For the proposed settlements with Peco, George's, and Amick, the class will recover at a higher rate on a dollar per market share basis than the Fieldale settlement. Collectively these proposed Settlement Agreements represent approximately 6.5% of the DPP class sales and will provide the class with over $13 million in monetary relief. This is a significant amount of money for a relatively small percentage of the class sales. These market share estimates are based on DPPs' analysis of information that is currently available from 2008 through 2017 of sales to putative members of the Settlement Class by Defendants and their alleged co-conspirators. These estimates and analysis are ongoing and may be subject to modification in the future.

**Settlement Negotiations With Peco and George's**

9. DPPs' settlement negotiations with Peco commenced in February 2017 but did not result in an agreement at that time. In November 2017, this Court denied Defendants' motions to dismiss the DPPs' First Consolidated Amended Complaint. (ECF No. 541).

10. In January 2018, DPPs and Peco recommenced settlement discussions, which George's joined in February 2018.

11. After several months of negotiations, the parties agreed to engage in mediation with Kenneth R. Feinberg in October 2018. The parties did not reach an agreement during the mediation.

12. Over the next year, the parties periodically continued their negotiations via telephone conferences and email exchanges.

13. In August and September 2019, DPPs made comprehensive offers of settlement to Peco and George's, respectively.

14. The parties reached agreement on the settlement terms with Peco and George's on December 5, 2019.

**Settlement Negotiations With Amick**

15. Prior to DPPs naming Amick as a Defendant in the Complaint, we alleged that Amick was a co-conspirator. (*See, e.g.*, Third Consolidated Amended Complaint, ECF No. 709). Accordingly, the DPPs served Amick with a subpoena in early 2018 and engaged in discovery negotiations with Amick that closely tracked discovery of the named Defendants.

16. DPPs engaged in preliminary settlement discussions with Amick before naming it as a defendant. In December 2018, DPPs and Amick held an in-person settlement conference, which did not result in an agreement.

17. DPPs named Amick as a defendant in their operative Complaint filed in January 2019. (ECF No. 1565.) Once Amick was named as a defendant, it responded to Plaintiffs' written discovery, and produced documents responsive to Plaintiffs' requests for production.

18. DPPs were prepared to commence the depositions of Amick's witnesses but postponed those depositions due to the announcement of the United States Department of Justice investigation and the related stay of discovery.

19. In July 2019, DPPs and Amick resumed settlement discussions. During the next several months, the parties had many discussions and exchanged emails regarding a potential settlement.

20. Once the parties reached an agreement in principle, they continued to negotiate the terms of the final written settlement agreement between DPPs and Amick.

21. During settlement negotiations with all three Settling Defendants, the parties debated many issues, and negotiated many terms of the settlements, including the amount of payment, the timing of payment, potential conditions on payment, the effect of opt-outs on any settlement, and potential cooperation against other defendants.

22. There was no collusion or preference among counsel for the parties at any time during these negotiations. To the contrary, the negotiations were contentious, hard fought, and fully informed. Plaintiffs sought to obtain the greatest monetary benefit possible from Settling Defendants. Furthermore, there has been no discussion or agreement at any time regarding the amount of attorneys' fees Direct Purchaser Plaintiffs' counsel would ask the Court to award in this case.

23. For each of the three proposed settlements, the proposed Settlement Class consists of persons and entities that purchased Broilers from the Defendants during the period from January 1, 2008 to the Date of Preliminary Approval. DPPs' investigation and discovery has confirmed that there are thousands of persons and entities that fall within the Settlement Class definition.

24. DPPs have enlisted the services of an experience class action administrator, JND Legal Administration LLC, to administer notice to the Class Members. The details of the proposed class notice program are discussed in our Motion and supporting declaration of Jennifer M. Keough, and essentially mirror the notice program approved by this Court regarding the earlier Fieldale settlement.

25. I and the other attorneys comprising DPP Co-Lead Counsel have extensive experience in prosecuting antitrust class action litigation. In my opinion, and in that of my Co-Lead Counsel, the proposed settlement agreements with the Settling Defendants are fair,

reasonable, and adequate. The settlements provide substantial benefits to the Class and avoids the delay and uncertainty of continuing protracted litigation with the Settling Defendants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 13th day of August, 2020 at Sherman Oaks, California.


*s/ Bobby Pouya*
Bobby Pouya