**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION<br><br>This Document Relates To:<br>THE DIRECT PURCHASER PLAINTIFF ACTION | Case No. 1:16-cv-08637<br><br>Honorable Thomas M. Durkin |

**MEMORANDUM REGARDING DIRECT PURCHASER PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF THE SETTLEMENTS WITH DEFENDANTS
PECO FOODS, INC., GEORGE'S, INC., GEORGE'S FARMS, INC.,
AND AMICK FARMS, LLC**

Settling Defendants Peco Foods, Inc., George's, Inc., George's Farms Inc., and Amick Farms, LLC ("Settling Defendants") submit this memorandum in connection with the Direct Purchaser Plaintiffs' motion for final approval of the Settling Defendants' settlements.

## PRELIMINARY STATEMENT

Settling Defendants fully support the settlements and urge the Court to approve them. Settling Defendants submit this memorandum solely to address an issue relating to entities that requested exclusion from the class (*i.e.*, "opt-outs") for claims that Settlement Class Members partially assigned to them, which affects the calculation of the Settlement Amount, including the "Reduction of Settlement Amount Based on Opt-Outs" under the settlements with Peco Foods, Inc., George's, Inc., and George's Farms, Inc. (the "Peco and George's Settlements"). (*See* ECF No. 3324, Exs. A and B at § II.E.10.b.)

The Peco and George's Settlements contain reduction mechanisms in the event that class members who opt out of the Settlement Class represent more than 50% of all Defendants' United States total annual sales for 2008-2017. (*See id.*) These Settlement Agreements call for a reduction of 2% for each percentage point exceeding 50%. Thus, if it is determined that 50.6% of the class opts out, then the Settlement Amounts—$5.15 million for Peco and $4.25 million for George's— are reduced by 1.2%. DPP Class Counsel, the Settlement Administrator, and the Settling Defendants have worked cooperatively to implement these portions of the Settlement Agreements. For the overwhelming majority of class members, the Settling Defendants have no reason to challenge the Settlement Administrator's determinations.[1]

---

[1]    The Amick Farms, LLC Settlement Agreement has a different settlement reduction mechanism and termination provision based on class members who opt out of the Settlement Class. (*See* ECF No. 3324, Ex. C at § II.E.10.b.)

However, there is one category of purported opt-out requests that the Settling Defendants believe should be treated differently than they are currently being treated by the Settlement Administrator. The scenario at issue is demonstrated by the following:

> A direct purchaser of Broilers (*e.g.*, a distributor) sells to multiple customers. The direct purchaser did not request exclusion from the class, and thereby is a Settling Class Member. However, one of the direct purchaser's customers asserts that it has been given an assignment of claims from the direct purchaser, limited to claims arising from the purchase of Broilers re-sold to that particular indirect purchaser/assignee. The assignee requests exclusion from the class as to those partially assigned claims.

If the claims that are partially assigned are treated as a valid opt-out, this scenario creates significant uncertainty. Without agreement from the assignor, assignee, Settlement Class, and Settling Defendants as to the value of the partial assignment opt-outs—which does not exist here—there is an open question about what portion of the direct purchaser's claims are released and eligible for compensation under the settlements, and what value has been opted out through the partially assigned claims and thus represents potentially remaining liability. The issue raised in this response is limited to *partial* assignments, as distinct from full assignments where a direct purchaser has assigned 100% of its claims to an assignee. These partial assignment opt-outs are set forth in Exhibit B attached to the DPP's proposed orders granting final approval to the settlements. (*See* ECF Nos. 3777-1 (Peco and George's Proposed Order) and 3777-2 (Amick Proposed Order).)

The Settling Defendants submit that, with one exception, the "partial assignment opt-outs" should be rejected. As courts have held, a partial assignee cannot opt out of a class action in which the assignor is participating, with one narrow exception explained more fully below. By rejecting partial assignment opt-outs where there is no express agreement reflecting a meeting of the minds as to the volume of commerce represented by any partial assignment, the court approving the class settlement establishes a clear record as to which claims are released by the settlement and which

are not, and prevents future disputes about ambiguities regarding the court's approval order. Consistent with these legal principles, the Court should enter the Settling Defendants' proposed orders entering final judgment and granting final approval of the settlements. If the Court agrees, the opt-out percentage is less than 50% and the amounts of the Peco and George's Settlements will remain at $5.15 and $4.25 million, respectively.

Alternatively, if the Court were inclined to permit the exclusion of partially assigned claims, Settling Defendants respectfully submit that the final approval order should reflect the precise dollar value of the commerce being excluded from the settlements through each partial assignment so that all parties have a clear understanding of what has been released through the settlement and what potential liability remains.

## BACKGROUND

Following the Court's December 20, 2019 order granting preliminary approval of the Settlements (ECF No. 3359), DPP Class Counsel and the Settlement Administrator implemented the Court-approved notice plan to members of the Settlement Class—*i.e.*, entities that purchased Broilers directly from Defendants during the Class Period. As required by Federal Rule of Civil Procedure 23, the notice explained the binding effects of class membership and how to exclude oneself from the Settlement Class. The deadline to request exclusion from the Settlement Class was March 9, 2020. The Settlement Administrator reviewed and processed applications for requests for exclusion.

Many of the entities that directly purchased Broilers from Defendants are food distributors who resold the Broilers to other entities, including restaurants and grocers. As DPP Class Counsel informed the Court through a publicly filed April 15, 2020 Notice, several of the opt-out notices received by the Settlement Administrator provided that they were submitted "with the intent to exclude certain assigned claims from other Class Members." (ECF No. 3567 at 2.) In other words,

these opt-out notices attempted to exclude from the class settlement, claims based on direct purchases of Broilers by direct purchasers that were later re-sold to the opt-out entity. (*See, e.g.*, Ex. A to Declaration of Nicci Warr ("Warr Decl.") (attached hereto as Exhibit 1); *see also* Opt-Out Notices Deemed Invalid by Administrator (ECF 3757-8), Ex. F1.)[2]

None of the opt-out notices alleging partial assignments from other Class Members provided any documentation regarding the alleged assignments or information about the volume of purchases that were allegedly assigned. (*See* DPP April 15, 2020 Notice (ECF No. 3567) at 3 ("For each of these assignment of claims, the information provided is insufficient to determine whether a valid assignment of claims has occurred and, if so, the dollar value of the purchases being assigned.").) Consequently, the Settlement Administrator contacted the parties seeking exclusion for partial assignments to inform them that to facilitate the validation of these partial assignment opt-outs, they would need to complete a Notification of Irrevocable Assignment confirming both the assignment and the value of the purchases assigned, as well as provide the Settlement Administrator with sufficient information to validate the value of the partial assignments of claims (the "stipulation process"). (*See* ECF No. 3757-9, Ex. G (template email and Notification of Irrevocable Assignment form).) The Notification of Irrevocable Assignment was designed to provide assurance that the alleged assignee and alleged assignor agreed that a partial assignment had occurred and the volume of commerce associated with the partial

---

[2]     Some of these notices also requested exclusion of claims based on *direct* purchases by the opt-out entity. The exclusion of claims based on direct purchases is not at issue.

In some instances, both the alleged assignee and the alleged assignor submitted an opt-out notice for the partially assigned claims. In other instances, only the alleged assignee submitted an opt-out notice. In these later instances, absent verification from the alleged assignor of the partial assignment, it is not clear whether there is agreement that *any* claims have been assigned, much less any agreement on the volume of claims.

assignment. (*See id.*) The Notification expressly stated that by executing the form, the assignee and assignor represented that:

> We understand that we may be required to provide more information, including without limitation, transactional-level purchase detail in spreadsheet format (.csv, MS Excel, etc.) in order to validate the assignment purchase totals listed above; information supporting the validity of this assignment; and information to further identify assignee(s), assignor(s), and any subsidiaries or other related entities. We agree to provide such information.

(*Id.* at 4.)[3] No party filed any objection to this process with the Court.

According to the Settlement Administrator, many of the partial assignment parties failed to engage in, much less complete, this stipulation process during the many months that it was available. (*See* ECF No. 3757-2, Declaration of Jennifer M. Keough ("Initial Keough Decl."), ¶ 27.) In some instances, the alleged assignee failed to provide sufficient information for the Settlement Administrator to even verify any assignment. (*See* Ex. 1 (Warr Decl.) ¶ 7.) In other instances, the alleged assignee failed to provide a stipulation regarding the value of assigned claims—*i.e.*, they failed to return the Notification of Irrevocable Assignment—but provided other types of information from which the Settlement Administrator could attempt to calculate a value for the partial assignment. (*See* Initial Keough Decl. ¶ 27; Ex. 1 (Warr Decl.) ¶ 8.) In certain instances, the alleged assignee provided a signed Notification of Irrevocable Assignment, but the values ascribed to the partial assignment were deemed by the Settlement Administrator to be unreliable. (*See id.* (Warr Decl.) ¶ 9.)

Settling Defendants understand that, in instances where no stipulated commerce values or unreliable stipulated commerce volumes were provided, the Settlement Administrator performed

---

[3]    In order to prosecute an assigned claim on an individual basis, a partial assignee must (1) prove their assignments (including validity and scope) and (2) provide a credible calculation of the volume of commerce associated with those assignments (in order to prove damages). The Notification of Irrevocable Assignment sought this same information.

an independent calculation of the amount of the Settlement Class Member's purchases ostensibly covered by the partial assignment. (*See id.* (Warr Decl.) ¶ 8.) The independently calculated volumes of the partially assigned purchases were incorporated into the opt-out rate presented by DPP Class Counsel. (*See* ECF No. 3757 (Motion for Final Approval) at 6; ECF No. 3777 (Notice of Filing of Amended Proposed Order & Opt-out Lists) at 2.) To Settling Defendants' understanding, the independent calculations of the Settlement Administrator have not been verified or approved by alleged partial assignors or assignees.

One Settlement Class member partially assigning its claims, Testa Produce, and its assignee, El Pollo Loco, appear to have reached agreement among themselves and with the Settlement Administrator regarding the purchases of Broilers by Testa that were re-sold to El Pollo Loco and thus covered by the partial assignment. As to this partial assignment, there should be no dispute as to the volume of commerce associated with the partially assigned claims.

Based on the above approach as implemented by the Settlement Administrator, the opt-out rate from the Peco and George's Settlements is 50.6%. The Settlement Agreements call for a reduction of 2% for each percentage point exceeding 50%, resulting in net settlement amounts of $5,088,200 from Peco and $4,199,000 from George's. Settling Defendants do not take issue with the underlying data used to calculate this opt-out percentage. But Settling Defendants do submit that, pursuant to well-established law, all partially assigned claims from Settlement Class Member assignors should be deemed invalid (with the exception of the claims Testa partially assigned to El Pollo Loco), and all claims based on purchases by those assignors should remain part of the

settlement class. If the Court agrees with the Settling Defendants, the opt-out percentage would be below 50%, and there would be no reduction in the class settlement amount.[4]

## ARGUMENT

A court's review with respect to evaluating and ultimately approving a class action settlement extends to enforcing the terms of the settlement and overseeing and evaluating the notice process and method of claims processing. *See* Committee Notes to the 2018 Amendment ("Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims."); *see also Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *10 (N.D. Ill. May 14, 2019) (finding that incomplete requests to opt out from a class action settlement were forfeited in light of the failure to follow the clear instructions of the class notice). Here, with the exception of the claims Testa partially assigned to El Pollo Loco, the Court should reject the requests to exclude partially assigned claims.

### I.     Holders of Partially Assigned Claims from Class Members Are Not Generally Permitted to Opt Those Claims Out of the Class.

As a general matter, assignment of antitrust claims is permitted. *See, e.g.*, *In re Steel Antitrust Litig.*, No. 08 C 5214, 2015 WL 5304629, at *4 n.3 (N.D. Ill. Sept. 9, 2015) ("[A]ny assignment of antitrust claims, as a matter of federal common law, must be an express assignment." (quoting *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 440 (3d Cir. 1993))). Unlike other Class Members, however, assignees with only partial assignments do "not have the right to opt out." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 252 (3d Cir. 2016)

---

[4]    Amick's settlement reduction provision and termination provision was not triggered, pursuant to the calculations under that provision by the Settlement Administrator. It is believed that a recalculation under Settling Defendants' legal theory would not change that result, but the calculation has not been performed. Regardless, as explained below, Amick would be prejudiced by permitting the partial assignments to be excluded from the class due to the lack of clarity regarding what claims are settled and what claims represent potential remaining liability.

(quoting *In re Fine Paper Litig. State of Wash.*, 632 F.2d 1081, 1091 (3d Cir. 1980)).  Indeed, courts in this district have recognized that although "[c]lass members with individual claims for actual damages may always opt out of the class to pursue their claims separately[,] . . . [a] different rule applies . . . when a class member partially assigns its claim to a third party." *In re Opana ER Antitrust Litig.*, No. 14 C 10150, 2016 WL 738596, at *6-7 (N.D. Ill. Feb. 25, 2016) (agreeing with "the reasoning and the rule announced by the Third Circuit in *Fine Paper*") (citation omitted).  In that instance, "'the rights of the obligor to be free of successive and repeated suits growing out of the same basic facts' must be protected." *Id.* at *7 (quoting *In re Fine Paper*, 632 F.2d at 1091). If the partial assignees were permitted to remove their partially assigned claims from the class "the settling defendants may well be uncertain as to their potential liability to" the partial assignees. *In re Fine Paper*, 632 F.2d at 1091.  Preventing partial assignees from removing their partially assigned claims from the class prevents confusion about what claims have been released under the class action settlement and avoids the potential for double recoveries. *See In re Opana ER*, 2016 WL 738596, at *7.  The risk of potential uncertainty is particularly apparent in a case like this one, where the Peco and George's Settlements include provisions that reduce the settlement amount depending upon the proportion of purchases associated with opt-outs.  Thus, if the assignor does not otherwise opt out of the class, then all of the claims based on the assignor's purchases (including those that are the subject of a partial assignment) should be released pursuant to the settlement. *See id.*

Courts have recognized only one narrow exception permitted from this general rule—the circumstance when the assignor and assignee stipulate to the volume of commerce covered by the assignment. *See In re OSB Antitrust Litig.*, No. 06-826, 2009 WL 129737, at *2, *4 (E.D. Pa. Jan. 14, 2009) (parties conceded that partial assignee could opt out of a class following stipulation that

partially assigned purchases totaled $4,454,127). That is because, where "the Parties stipulated to the value of the assigned claims, there is no possibility of confusion or multiple recoveries." *Id.* at *4.

## II. The Narrow Exception to the General Rule Prohibiting Holders of Partially Assigned Claims from Opting Out Does Not Apply Because There is No Meeting of the Minds, With One Exception.

Here, DPP Class Counsel and the Settlement Administrator followed a notice process designed to allow partial assignments consistent with this exception to the general rule: A Settlement Class Member could exclude certain assigned claims, provided that the class member submitted a notification of assignment executed by both the assignor and assignee and the claim administrator was able to validate the volume of the purportedly assigned claims intended to be excluded. One assignee (El Pollo Loco) with partial assignments from a Settlement Class Member appears to have satisfied these requirements.

But as detailed above, the majority of alleged partial assignees did not provide a stipulation regarding the volume of partially assigned claims, despite being provided with notice and opportunity to do so. The partial assignment volumes calculated by the Settlement Administrator for these partial assignees reflect amounts to which the assignor class member and assignee opt-out have not stipulated. There is thus no meeting of the minds between the parties that are affected by the partial assignment—the assignee, the assignor, and the Settlement Class—for these claims. For the few assignees that did provide stipulated volumes of commerce, the Settlement Administrator deemed the stipulated amounts unreliable in light of the other data available and, therefore, performed an independent calculation of the partial-assignment volumes. Consequently, there is no meeting of the minds among all the relevant parties regarding these partial assignment amounts either. This approach does not provide the required clarity for all parties and could greatly prejudice the Settling Defendants. For example, if Hooters of America—which claims to have

assignments from Class Members Ben E. Keith and Naturally Fresh—believes that the amount of commerce that was assigned is vastly larger than the amount calculated by the Settlement Administrator and adopted by the DPPs, then Peco and George's will face an opt-out plaintiff asserting claims related to a volume of commerce much larger than the amount used to calculate the reduction for opt-outs. Yet Peco and George's would not have received a reduction for that full volume of opt-out commerce, as they are entitled to receive under their Settlements. This concern is not merely theoretical: Settling Defendants understand that the calculations performed by the Settlement Administrator were, at least at times, performed on the basis of incomplete information (which may have been the best information available to the Administrator). (*See, e.g.*, Ex. B to Notice of Filing of Amended Proposed Order re Motion for Final Approval of Settlement (ECF No. 3777) at Request ID 15, 41, 47, 53, 63.) In addition, the mere fact that the Settlement Administrator did an independent calculation for stipulations deemed unreliable indicates a lack of agreement on the volumes of commerce associated with a partial assignment.

Only El Pollo Loco's partial assignment from Testa Produce apparently satisfies the requirement of a meeting of the minds. (*See* Ex. 1 (Warr Decl.) ¶ 11.) Assuming all necessary parties document the apparent agreement, Settling Defendants do not challenge this partial assignment.

### III.     But for One Exception, the Court Should Reject the Partial Assignment Opt-Outs.

The case law is clear that, unlike holders of claims based on direct purchases or fully assigned claims, holders of partially assigned claims cannot opt out of a class, unless the narrow exception identified above is fully satisfied. This rule ensures clarity about the most fundamental aspects of litigation, including what claims belong to whom, what claims remain at issue, and what claims are released through a settlement. Clarity on such issues is particularly important for large,

complex litigation such as this one—involving hundreds of parties and multiple parallel putative classes. Clarity is also required to protect the Settling Defendants from potential double recovery and to effectuate the terms of the settlement for which they bargained.

Consequently, the Court should hold that, with the exception of the claim partially assigned by Testa to El Pollo Loco, all partially assigned claims from a Class Member assignor to an opt-out assignee are invalid and those claims remain in the Settlement Class. These invalid partially assigned claims include all partially assigned claims from Alleged Class Member Assignors listed in Exhibit B to the Notice of Filing of Amended Proposed Order re: Motion for Final Approval of Settlement (ECF No. 3777), except those assignments from McLane and C&S Wholesale (the two alleged assignors that opted out of the Settlement Class entirely).

In the event the Court does not agree with the Settling Defendants' position, Settling Defendants respectfully submit that the final order should reflect the specific dollar value of commerce excluded through a partial assignment of a claim, as calculated by the Settlement Administrator, to prevent the morass of issues that will inevitably arise if there is not clarity on what claims have been released in the settlement and what claims have been excluded. *See In re OSB Antitrust Litig.*, 2009 WL 129737, at *4 (permitting partial assignment opt-out only after approved stipulation from assignor and assignee as to assigned volume of commerce).[5] Without an order specifying the volume of commerce associated with partially assigned claims, the parties will be left with no clarity as to what is in and out of the settlement, and Settling Defendants will

---

[5] The Settling Defendants have submitted proposed orders for each of these scenarios that track the orders submitted by DPP Class Counsel (ECF Nos. 3777-1 and -2) as closely as possible. The proposed orders adopting Settling Defendants' legal analysis are attached hereto as Exhibits 2 (for Peco and George's) and 3 (for Amick). The proposed orders incoporating the Settlement Administrator's proposed calculations are attached thereto as Exhibits 4 (for Peco and George's) and 5 (for Amick).

face inappropriate risk of double recovery and will not obtain the benefit of their bargain under the Settlement Agreements.

## CONCLUSION

Settling Defendants respectfully request that the Final Approval Order state that, with the exception of the claim assigned to El Pollo Loco from Testa Produce, requests to exclude partially assigned claims from Settlement Class Members are rejected and that the opt-out rate and settlement reduction be calculated accordingly.

Alternatively, if the Court were inclined to permit the exclusion of partially assigned claims, Settling Defendants respectfully submit that the Final Approval Order should reflect the precise dollar value of the commerce being excluded from the settlements through these partial assignments.

Dated: August 31, 2020                          Respectfully submitted,

By: */s/ William L. Greene*                      By*: /s/ Boris Bershteyn*
STINSON LLP                                      SKADDEN, ARPS, SLATE,
                                                   MEAGHER & FLOM LLP

William L. Greene (admitted *pro hac vice*)
Peter J. Schwingler (admitted *pro hac vice*)    Patrick Fitzgerald (#6307561)
Kevin P. Kitchen (admitted *pro hac vice*)       Gail Lee
50 South Sixth Street, Ste 2600                  Peter Cheun
Minneapolis, MN 55402                            155 N. Wacker Drive
Telephone: (612) 335-1500                        Chicago, IL 60606
william.greene@stinson.com                       Telephone: (312) 407-0700
peter.schwingler@stinson.com                     Facsimile: (312) 407-0411
kevin.kitchen@stinson.com                        patrick.fitzgerald@skadden.com
                                                 gail.lee@skadden.com
J. Nicci Warr                                    peter.cheun@skadden.com
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105                              Boris Bershteyn (admitted *pro hac vice*)
Telephone: (314) 259-4570                        Lara Flath (#6289481)
nicci.warr@stinson.com                           One Manhattan West
                                                 New York, NY 10001
THE LAW GROUP OF NORTHWEST                       Telephone: (212) 735-3000
ARKANSAS LLP                                     Facsimile: (212) 735-2000
                                                 boris.bershteyn@skadden.com
Gary V. Weeks (admitted *pro hac vice*)          lara.flath@skadden.com
K.C. Dupps Tucker (admitted *pro hac vice*)
Kristy E. Boehler (admitted *pro hac vice*)
1830 Shelby Lane                                 *Attorneys for Defendant Peco Foods, Inc.*
Fayetteville, AR 72704
Telephone: (479) 316-3760
gary.weeks@lawgroupnwa.com
kc.tucker@lawgroupnwa.com
kristy.boehler@lawgroupnwa.com

*Attorneys for Defendants George's, Inc.*
*and George's Farms, Inc.*

                                                 DYKEMA GOSSET PLLC

                                                 By: */s/ Howard B. Iwrey*
                                                 Howard B. Iwrey
                                                 39577 Woodward Ave, Ste. 300
                                                 Bloomfield Hills, MI 48304
                                                 Telephone: 248-203-0526
                                                 Facsimile: 248-203-0763
                                                 hiwrey@dykema.com

Steven H. Gistenson
10 South Wacker Drive, Ste. 2300
Chicago, IL 60606
Telephone: 312-627-2267
Facsimile: 312-876-1155
sgistenson@dykema.com

Cody D. Rockey
2723 South State Street, Ste. 400
Ann Arbor, MI 48104
Telephone: 734-214-7655
Facsimile: 734-214-7696
crockey@dykema.com

Dante A. Stella
400 Renaissance Center
Detroit, MI 48243
Telephone: 313-568-6693
Facsimile: 313-568-6893
dstella@dykema.com

*Attorneys for Defendant Amick Farms, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of August, 2020, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/ Boris Bershteyn*