UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 16 C 8637<br><br>Judge Thomas M. Durkin |

MEMORANDUM OPINION AND ORDER

This antitrust price-fixing conspiracy case consists of a number of actions consolidated for pretrial management. Four newly consolidated complaints[1] and one amended complaint[2] include claims that Defendants engaged in "bid-rigging," mimicking charges in a recent criminal indictment in the District of Colorado. Defendants move to strike or sever these bid-rigging claims, arguing that they are not part of this case, because the original complaints only alleged claims of conspiracies to reduce Broiler supply and to manipulate the Georgia Dock price index. In response, Plaintiffs argue that bid-rigging has been at the heart of the case since its inception and indicate that they intend to amend all the consolidated complaints to include this claim.

The Court has consolidated actions in this case pursuant to Local Rule 40.4, which provides that "[t]wo or more civil cases may be related if . . . the cases involve some of the same issues of fact or law; [or] the cases grow out of the same transaction or occurrence." Designating a case as related under Rule 40.4 is only permitted if:

---

[1] 20 C 3450; 20 C 3454; 20 C 3458; 20 C 3459.
[2] 20 C 2013.

>the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and the cases are susceptible of disposition in a single proceeding.

Similarly, under Federal Rule of Civil Procedure 42(a), when actions "involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." In addition, under Rule 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims." These rules give the Court "virtually unlimited freedom" to manage related or consolidated cases "in whatever way trial convenience requires." 9A Fed. Prac. & Proc. Civ. § 2387 (3d ed.); *see also id.* § 2388 (3d ed.) ("sound discretion"); *id.* § 2388 ("the district court may order separate trials on its own motion"); *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) ("The ultimate decision to order a separate trial under Rule 42(b) is at the court's discretion and will be overturned only upon a clear showing of abuse."). This includes limiting discovery to a "possibly dispositive issue . . . until after its resolution." 9A Fed. Prac. & Proc. Civ. § 2387. A district court may also "order a separate trial of independent issues raised in pleadings that are interposed by any party subsequent to the initial complaint[.]" *Id.* § 2389. In other words, "Rule 42(b) provides the district court with discretion to subdivide the case in whatever manner seems dictated by the circumstances." *Id.*; *see also id.* § 2383 ("In addition, the district

2

court may deny consolidation when one of the actions has proceeded further in the discovery process than the other.").

The Court is aware that some courts in this district have found there to be a distinction between "relatedness" under Local Rule 40.4 and "consolidation" under Federal Rule 42(a). *See, e.g., Saleh v. Merch.*, 2017 WL 2424229, at *2 (N.D. Ill. June 5, 2017); *Peery v. Chicago Hous. Auth.*, 2013 WL 5408860, at *2 (N.D. Ill. Sept. 26, 2013). But the foregoing review shows that if there is a distinction, it is one of semantics or degree only. A finding that cases are "related" is necessary for them to be "consolidated." But "consolidation"—and by extension "relatedness"—permits a wide range of joint case management options, from the cases simply being presided over by the same judge at one end of the spectrum, to a single trial at the other. Thus, the Court does not see the utility in precisely delineating where "relatedness" ends and "consolidation" begins.

In this case, the three putative class actions and numerous direct actions have been found to be related, reassigned to the undersigned judge, and consolidated for pretrial purposes. Plaintiffs point out that the cases have not officially been consolidated for trial. *See* R. 256. But certainly, the Court and the parties have contemplated that the cases likely will be consolidated to some extent, whether for class certification determinations, summary judgment, or even for trial. And in any event, the cases the Court has found to be related and "consolidated" under the caption *In re Broiler Chicken Antitrust Litigation* are subject to this Court's "virtually unlimited" management discretion. This order is an exercise of that discretion.

3

There is a substantial relationship between the alleged bid-rigging claim and the alleged supply reduction and Georgia Dock price index manipulation claims. All three claims have the same goal of maintaining a high price for Broilers, involving the same industry and defendants. These similarities mean that discovery for all three claims is thoroughly intertwined in terms of the scope of relevant documents, document custodians, and deponents. Further, legal rulings, factual findings, or settlements regarding any of the claims will undoubtedly impact the others. This is a sufficient basis for the Court to have found the four recently filed direct-action complaints to be related and ordered them reassigned and consolidated at least for pretrial purposes.

Defendants argue that the bid-rigging claim is distinct from the others because it employed different means to fix prices during a different time period. But it is plausible for a single conspiracy to use different means at different times. The Court permitted the supply reduction and Georgia Dock claims to proceed together for just this reason. *See* R. 541 at 63 (*In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 809 (N.D. Ill. 2017)). The Court does not perceive there to be a material difference in the relationship between the supply reduction and Georgia Dock claims, which have proceeded together for almost four years; and the relationship between either of those two claims and the bid-rigging claim. Absent such a difference there is not a principled reason to force the bid-rigging claim to proceed in a separate action.[3]

---

[3] Defendants' argument that not all defendants have been implicated in the bid-rigging allegations is well-taken with respect to the criminal indictment. But all defendants would be at least significant third-parties in discovery on the bid-rigging

4

To the extent there is merit to Defendants' argument that the bid-rigging claim is substantively distinct such that severance is appropriate, there remains extensive overlap among the parties, document custodians, deponents, and counsel. If the bid-rigging claim was severed and filed before another judge, it is likely that scheduling orders issued in that case would interfere with the progress of this case. The parties and counsel would be required to negotiate the demands of an additional judge or two, and it is likely that the judges already on this case would need to coordinate with the new judges. There is no reason to add that complication to an already complicated case.

However, in litigation as in life, timing is everything. Even though the bid-rigging claim is properly related to this case, it cannot be denied that the bid-rigging claim is *new*, while the supply reduction and Georgia Dock claims have been in the case since its inception four years ago.[4] In that time, an immense amount of motion practice and discovery has occurred. This sprawling case already consists of: 56 related actions, 40 direct actions, and three classes (including every purchaser of chicken meat in the United States), with each complaint more than 100 pages long; 252 attorney appearances and more than 3,800 entries on the docket; discovery of more than 8 million documents (totaling millions more in pages), hundreds of

---

claim whether they are named defendants or not. And Plaintiffs point out that there are indications that more defendants will be implicated in that claim.

[4] Plaintiffs contend that the bid-rigging claim is not so new because discovery has revealed hints of bid-rigging. But the fact is the claim was not added to any complaint until after the criminal indictment was returned on June 3, 2020, little more than three months ago. While Plaintiffs claim that bid-rigging has always been at the "heart" of this case, that contention is simply not credible.

document custodians, 220 depositions taken with more than 100 to go. On top of all that, the parties agree that the bid-rigging claims will require more document discovery and likely re-taking of hundreds of depositions. This additional discovery will take time that is not accounted for in current Scheduling Order No. 14, which has no room to spare, and yet anticipates a trial that is still two years away. The deadline for amending the class complaints has passed. *See* R. 1230. Now the filing of class certification motions and the close of fact discovery are relatively imminent. This case is already on borrowed time.

Furthermore, the government has indicated that it will seek to stay much of any permitted bid-rigging discovery to protect its criminal prosecution. While as the government points out that particular issue is not yet ripe, the Court notes that it is commonplace for civil actions based on the facts underlying criminal charges to be stayed during the pendency of the criminal proceedings. The supply reduction claim and Georgia Dock claim are not going to wait for the criminal case to resolve itself.

The upshot is all three claims belong together in the same case, but they cannot proceed together. Federal Rule of Civil Procedure 42 provides the solution to this conflict. In accordance with the Court's authority under Rule 42, and in order to expedite and economize the process of bringing the supply reduction and Georgia Dock claims to resolution, the bid-rigging claim is bifurcated from the original two claims. *See Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007) (under Rule 42, judicial economy is a sufficient basis to order bifurcation). The original claims will continue to proceed on the course set, most recently, by Scheduling Order No. 14. The

bid-rigging claim is stayed until the supply reduction and Georgia Dock claims are resolved.

This is a feasible way forward, because although the bid-rigging claim is closely related to the other two claims, evidence of bid-rigging is not necessary to prove the supply reduction or Georgia Dock claims, so there is no prejudice to Plaintiffs in resolving the original claims first. Proof of any of the three claims is sufficient to prove liability under the Sherman Act. Under Plaintiffs' theory of the case, all three claims are means to the same end of manipulating Broiler prices. But because they are concededly different means, litigation of those claims does not have to proceed simultaneously. Notably, it was not until the criminal indictment returned three months ago that Plaintiffs ever seriously suggested that they were going to rely on bid-rigging evidence to prove their case.

This order also serves to deny the motion to compel currently pending before Judge Gilbert, R. 3672. That motion turns, for the most part, on an argument that, in February 2018, Judge Gilbert permitted discovery into bid-rigging in an oral ruling on the scope of a request for production. Whether he did or did not is now irrelevant because the Court has stayed litigation of the bid-rigging claim (in addition to recently granting a protective order prohibiting discovery into the government's investigation). Discovery into bid-rigging is closed until the supply reduction and Georgia Dock claims are resolved.

Some bid-rigging evidence has already come to light, either as a product of discovery in this case or the government's investigation and indictment. Plaintiffs

express an intention to use that evidence to help show intent or motive in the supply reduction and Georgia Dock claims. *See* R. 3749 at 12. The parties spend many pages addressing whether this evidence will prejudice defense of the supply reduction and Georgia Dock claims or "taint" a trial on those claims. But this order is not a ruling on those issues and it is not a preview of what evidence the Court will consider on summary judgment or admit at trial of the supply reduction and/or Georgia Dock claims. The Court will consider the evidentiary relevance or admissibility of any evidence already discovered at the appropriate time in the future, whether summary judgment or a motion in limine.

This order is simply a product of the fact that: (1) the three claims are related; and (2) the supply reduction and Georgia Dock claims are much further along than the bid-rigging claim. The late appearance of the bid-rigging claim necessarily means it is on a different track from the other two claims, and this order simply acknowledges that obvious circumstance. Through massive discovery, a nine-month stay to accommodate the government's investigation, and delay due to the COVID-19 pandemic, Plaintiffs have consistently pushed for expedient resolution of this case. That is also the Court's goal. The proper administration of the case cannot wait for the new claim to catch up to the claims that have already been litigated for four years.

All parties—not to mention the Court—are entitled to have the case resolved in a timely manner. There is a valid perspective that this case has already taken too long. The attorney fees generated on both sides are enormous and may be problematic for smaller defendants. This should not be a war of attrition. If the claims in this case

8

are not bifurcated it could be a decade before a judgment of any kind is reached. That is unacceptable. True progress towards an end must be made, and bifurcating the claims is the way to do that.

Another consequence of this order is that the consolidated direct-action plaintiff complaint the Court has ordered, *see* R. 3653; R. 3778, should contain the bid-rigging allegations. The purpose of the consolidated complaint is to streamline the docket and future motion practice. Even though this case will proceed with the original two claims and the bid-rigging claim on separate tracks, the intent to streamline the docket would be frustrated by maintaining two sets of pleadings.

The order also serves to permit further amendment of already filed direct-action complaints to include bid-rigging claims. However, the Court does not see the need for every direct-action plaintiff to actually file an amended complaint; the consolidated complaint should contain sufficient notice of which direct-action plaintiffs are making which allegations and claims. But this order does not serve to grant leave for further amendment beyond bid-rigging allegations without a separate motion.

The direct-action plaintiffs should prepare and file a consolidated complaint by October 23, 2020. Defendants should file their consolidated answer by November 23, 2020.

It is unclear to the Court whether the putative classes intend to amend their complaints to include bid-rigging claims. And it is not apparent to the Court that the bid-rigging claim is necessarily amenable to class treatment. But if class plaintiffs

9

intend to amend their complaints to include bid-rigging claims, those amended complaints should also be filed by October 23, 2020. Defendants are prohibited from filing individual answers to each class complaint. Instead, Defendants' answers to the class complaints should also be consolidated into one answer for each class complaint, which are due November 23, 2020.

## Conclusion

Therefore, Defendants' motions [3687] [3745] are denied in part and granted in part in accordance with this opinion and order. Plaintiffs' motion to compel [3672] is denied.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: September 22, 2020