# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To:<br>The Direct Purchaser Plaintiff Action | Case No. 1:16-cv-08637<br><br>Hon. Thomas M. Durkin<br><br>Magistrate Judge Jeffrey T. Gilbert |

## DECLARATION OF W. JOSEPH BRUCKNER IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

I, W. Joseph Bruckner, declare:

1.  I am an attorney licensed to practice in the State of Minnesota and have been admitted to practice in several courts across the country, including this Court. For thirty years I have been a partner with the firm of Lockridge Grindal Nauen P.L.L.P. ("LGN"), attorneys of record for the Direct Purchaser Plaintiffs. I make this declaration in support of the accompanying Direct Purchaser Plaintiffs' Motion for Class Certification. I have personal knowledge of the facts in this declaration and could competently testify to them if called as a witness.

## I.     Background of the Litigation

2.  On September 2, 2016, LGN and Pearson, Simon & Warshaw, LLP ("PSW"), on behalf of our client, Maplevale Farms, Inc., filed the first of the related antitrust class actions against the nation's largest poultry producers, *Maplevale Farms, Inc. v. Koch Foods, Inc., et al.*, Case No. 1:16-cv-08637 (N.D. Ill. filed Sept. 2, 2016). On September 7, 2016, LGN and PSW, on behalf of our client, John Gross and Company, Inc., filed the second direct purchaser plaintiff class action, *John Gross & Co., Inc. v. Koch Foods, Inc., et al.*, Case No. 1:16-cv-08737 (N.D. Ill. filed Sept. 7, 2016).

3.  Both *Maplevale Farms* and *John Gross* are brought on behalf of all persons and entities who, between January 1, 2008 and the present, purchased Broilers (which make up 98% of all chicken meat sold in the United States) directly from any of the defendants or their

subsidiaries or affiliates for use or delivery in the United States. Both plaintiffs allege that poultry producers colluded to artificially raise and maintain prices of chicken Broilers sold in the United States, in violation of Section One of the Sherman Act, 15 U.S.C. § 1, and that the Class was harmed thereby. The same defendants are named in both actions.

4. LGN and PSW were appointed by this court as Interim Co-Lead Counsel on October 14, 2016 (Dkt. 144). Since the Court's Order, and as described in the following paragraphs, we have undertaken all responsibilities necessary to litigate this case.

## II. **LGN and PSW Undertook a Lengthy and Comprehensive Investigation to Develop This Litigation**

5. LGN and PSW have taken significant steps to identify and investigate plaintiffs' claims and coordinate with defense counsel and other plaintiffs' counsel to efficiently and effectively advance this litigation. Prior to and following our filing of this action, PSW and PSW extensively investigated the Broiler market, the individual defendants, and the facts alleged in the complaints.

6. Our investigation included comprehensive analyses of hundreds of articles, research reports, SEC filings, conference calls, investor presentations, and documents from past litigation involving Defendants (such as expert reports, hearing, deposition, and trial transcripts, and trial and deposition exhibits) concerning the Broiler market and the individual defendants. Some of the key documents we reviewed in the investigation include:

   a. Watts Poultry's Annual Top Broiler Company Rankings and Profiles from 1999-2016;

   b. USDA, Urner Barry, and Georgia Dock price and supply information from the 1990s to the present;

   c. Documents relating to Pilgrim's Pride's bankruptcy proceedings, including hearing transcripts, expert reports, and numerous other filings;

   d. Numerous trade association documents, including agendas, reports, and related information; and

e. Corporate and government filings related to Defendants' Webb-Pomerene organization, Overseas Distribution, Inc.

7. LGN and PSW also retained experts and consultants who provided analyses of the Broiler market and the economics of the industry.

8. When we commenced this litigation, there were no parallel investigations by the U.S. Department of Justice or other federal or state competition regulator.

9. Our complaints allege in detail the characteristics that make the Broiler market susceptible to collusion, and the changes in production practices that occurred during the relevant period and their impact on Broiler pricing. Based on our research, our complaints also allege many specific examples of conduct and mechanisms by which Defendants colluded.

10. Our complaints are the original work product of LGN, PSW, and our colleagues and co-counsel. The *Maplevale Farms* and *John Gross* complaints are not duplicates or derivative of any other complaint in this litigation nor, as the first-filed actions, could they be. To date, our firms have committed thousands of hours of work to develop this case.

11. LGN and PSW have and will continue to coordinate and collaborate with the indirect purchaser classes to efficiently and effectively advance this litigation.

12. This Court is well aware of the level of activity in this litigation since its inception, so in this declaration I will only briefly summarize our activities and leadership. LGN and PSW have worked on all aspects of the litigation, including but not limited to further investigating Direct Purchaser Plaintiffs' claims, preparing complaints and other significant filings, reviewing documents, leading Plaintiffs' deposition program, and taking many depositions. LGN and PSW have negotiated and executed settlements with certain Defendants, and negotiated with the U.S. Department of Justice over the impact of its related criminal proceedings and its intervention in this case.[1] LGN and PSW have worked closely with Direct Purchaser Plaintiffs' experts to prepare

---

[1] In April 2019, the US DOJ commenced a related criminal investigation into anticompetitive conduct in the Broiler industry, intervened in this action, indicted ten current and former executives of Defendants named in this civil litigation, granted leniency from criminal prosecution to one large producer Defendant in this civil litigation (Tyson Foods), and obtained a

our motion for class certification. We have led the activities of our co-counsel and those of other plaintiffs' counsel in taking depositions and other discovery, and otherwise have coordinated with other plaintiffs' counsel and defense counsel to efficiently and effectively prosecute this litigation.

13. LGN and PSW also support the appointment of Hart, McLaughlin & Eldridge ("HME") as Liaison Class Counsel.

14. We believe our firms are well suited to serve as interim co-lead counsel and liaison class counsel in this litigation. Our three firms have extensive experience in successfully prosecuting antitrust class actions and other complex litigation nationwide. In this District, PSW, LGN, and the predecessor firm to HME spearheaded *In re Potash Antitrust Litigation (No. II)*, MDL No. 1996 (N.D. Ill.), before the Hon. Ruben Castillo. *Potash II* was a direct purchaser multidistrict class action in which plaintiffs alleged price-fixing of potash sold in the United States. Direct purchaser plaintiffs defeated a motion to dismiss, but a three-judge panel of the Seventh Circuit Court of Appeals reversed Judge Castillo's decision on interlocutory appeal. We petitioned for and were granted *en banc* review by the Seventh Circuit. The Seventh Circuit sitting *en banc* then issued a unanimous opinion, reversing the first panel decision, affirming Judge Castillo's denial of Defendants' motion to dismiss, and establishing critical precedent concerning the Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a. *Minn-Chem, Inc. v. Agrium Inc.*, 683 F.3d 845 (7th Cir. 2012). The case eventually resolved, resulting in a $90 million class settlement on behalf of direct purchaser plaintiffs. Like the first three years of the action now pending before this Court, PSW and LGN investigated and prosecuted the *Potash II* case without a parallel an investigation by the U.S. Department of Justice or other antitrust regulators.

### III. LGN Has Extensive Class Action and Antitrust Experience

15. LGN specializes in antitrust litigation. For over 40 years we have prosecuted antitrust cases on behalf of large and small business injured by price-fixing, bid-rigging and other violations of the antitrust laws. We also practice in securities, environmental, employment, health

---

guilty plea and significant criminal fine from another large producer Defendant in this civil case (Pilgrim's Pride).

care, commercial, intellectual property and telecommunications law. We have particular expertise in complex litigation, including federal multidistrict litigation. Our attorneys are skilled in pursuing and managing large complicated cases efficiently and cost-effectively. From this solid foundation, we regularly produce positive results for our clients and class members. In the last ten years alone, antitrust cases in which LGN played a significant role have recovered more than $2 billion.

16. LGN currently serves as Plaintiffs' Co-Lead Counsel in the following cases, among others:

   a. *In re Pork Antitrust Litigation*, Case 0:18-cv-01776-JRT-HB (D. Minn.), appointed by the Honorable John Tunheim. Similar to this litigation, our clients in *In re Pork* allege that major U.S. pork producers have conspired to restrain production and inflate prices for pork products sold in the United States, and that purchasers have been injured as a result. The court in *In re Pork* has upheld our complaint in large part, and discovery is commencing.

   b. *K. Peterson, et al. v. JBS USA Food Company Holdings, et al.,* Case 0:19-cv-01129-JRT-HB (D. Minn.) ("Beef Antitrust Litigation"), appointed by the Honorable John Tunheim. In *Beef¸* LGN represents a putative class of consumers who allege that major U.S. beef producers have conspired to restrain production and inflate prices for beef products sold in the United States, and that purchasers have been injured as a result. The case is at the amended pleadings stage.

   c. *In re Surescripts Antitrust Litigation,* Case 1:19-cv-06627 (N.D. Ill.), appointed by the Honorable John J. Tharp Jr. In *Surescripts,* LGN represents a putative class of retail pharmacies who allege that Surescripts and others have conspired to monopolize the market for e-prescription services in the United States and that independent and other pharmacies have been injured as a result. The case is at the amended pleadings stage.

d. *In re Peanut Farmers Antitrust Litigation*, Case 2:19-cv-00463 (E.D. Va.), appointed by the Honorable Raymond A. Jackson. In *Peanut Farmers*, LGN represents a putative class of peanut farmers who allege that the largest peanut shellers in the United States have colluded to suppress prices paid to farmers for their peanut crops. The case is scheduled to go to trial in January 2021.

e. *Olean Wholesale Grocery Cooperative, et al. v. Agri Stats, et al.*, Case 1:19-cv-08318 (N.D. Ill.) ("Turkey Antitrust"), appointed by the Honorable Virginia M. Kendall. In *Turkey Antitrust*, LGN represents a putative class of turkey products purchasers who allege that the largest turkey processors in the United States have conspired to restrain production and inflate prices for turkey products sold in the United States, and that purchasers have been injured as a result. The Court has upheld Plaintiffs' complaint in large part, and pretrial proceedings have commenced.

Other cases in which Lockridge Grindal Nauen has served as lead or co-lead counsel are listed in our firm resume, attached as Exhibit 1.

## IV. LGN's Attorneys Have Extensive Knowledge Of Antitrust Law

17. For over 30 years, my partners and I have represented plaintiffs in antitrust class actions and other complex litigation nationwide. As described above and in our firm resume (Ex. 1), I have served as lead or co-lead counsel in several nationwide antitrust class actions. I also serve on the Board of Directors of the American Antitrust Institute,[2] and am a past president and current executive committee member of the Committee to Support the Antitrust Laws (COSAL).[3] Both COSAL and the American Antitrust Institute are dedicated to the preservation and

---

[2] www.antitrustinstitute.org
[3] www.supportantitrustlaws.com

enforcement of our nation's antitrust laws and competition regulations. I served as Chair of the Minnesota State Bar Association Antitrust Law Section, and am regularly named a "Super Lawyer" by the Minnesota Journal of Law and Politics. I frequently speak and present at programs and seminars nationwide, including at an American Bar Association program on the Foreign Trade Antitrust Improvements Act, and on class certification issues at the American Bar Association Antitrust Law Section Annual Spring Meeting. For several years, I served on the steering committee and regularly present at the Cambridge Antitrust Litigation Forums. I am a co-author of PRIVATE ENFORCEMENT OF ANTITRUST LAW IN THE UNITED STATES, Edward Elgar Publishing (2012), and the INTERNATIONAL HANDBOOK ON PRIVATE ENFORCEMENT OF COMPETITION LAW, Edward Elgar Publishing (2010).

18. My partner Brian Clark also has significant litigation experience and was named an "Up and Coming Attorney" by Minnesota Lawyer Magazine in 2015, as well as a "Rising Star" by the Minnesota Law and Politics Magazine from 2015-2019 and a "Super Lawyer" for 2020. For the past six years Mr. Clark has organized and presented at the Complex Litigation E-Discovery Conference, as well as served on the Steering Committee for the Sedona Conference since 2019.

V. **LGN Has the Resources and Capacity to Manage this Case Effectively and Efficiently, and is Committed to its Successful Resolution.**

19. My firm has demonstrated expertise in managing complex class actions and, I respectfully submit, we have demonstrated our experience and commitment in this case and in many others. For example, in *Freight Forwarders* (*see* Ex. 1), LGN and our co-lead counsel drafted and coordinated dozens of briefs in successfully overcoming multiple rounds of motions to dismiss plaintiffs' complaint; arranged the review of over 1.3 million documents; took more than 30 fact interviews; took 50 depositions worldwide; retained and coordinated the work of expert economists; negotiated and reached settlements with more than 30 defendants, and as a result recovered more than $400 million for the class.

20. Similarly, in *Potash II*, LGN and PSW led the production of plaintiffs' discovery, the review of defendants' discovery, the coordination and taking of depositions, extensive and successful briefing at the court of appeals, expert analysis and, ultimately, lengthy and successful settlement negotiations with all defendants.

21. Our background and experience, our development of the allegations in our complaints, our solid and extensive commitment of time and resources, and our clients' significant stake in this case give our firm a solid foundation to continue to prosecute this case efficiently and expeditiously.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 28, 2020, at Minneapolis, Minnesota.

                                            */s/ W. Joseph Bruckner*
                                            W. Joseph Bruckner

# EXHIBIT 1




## Exhibit 1

# LOCKRIDGE GRINDAL NAUEN P.L.L.P.

Founded in 1978, Lockridge Grindal Nauen P.L.L.P. has extensive experience in antitrust, securities, environmental, employment, health care, commercial, intellectual property, and telecommunications law.  Our clients include agri-businesses, business enterprises, banks, local governments, trade and industry associations, real estate developers, telecommunications providers, health care professionals, and insurers.

Lockridge Grindal Nauen is one of the preeminent class action law firms in the country, has vast experience representing banks, financial institutions, shareholders, and other institutional investors in complex litigation, and has extensive experience litigating cases in Minnesota and across the country.  Lockridge Grindal Nauen P.L.L.P. attorneys are assisted by more than 20 paralegals and government relations specialists, and an extensive support staff.  The firm has offices in Minneapolis, Minnesota, Washington, D.C., and Fargo, North Dakota.

### ANTITRUST EXPERIENCE

LGN practices extensively in antitrust litigation.  The firm has litigated major cases and class actions involving price fixing, industry cartels, predatory pricing, price discrimination, and other antitrust and trade regulation issues in courts nationwide.  LGN attorneys have been recognized by courts, peer review publications, and other professional organizations as leading antitrust lawyers.  LGN's antitrust team is made up of 18 attorneys (8 partners and 10 associates

and staff attorneys) who have significant experience in antitrust litigation. Six partners heading LGN's antitrust team were named as Super Lawyers in 2019 and another three attorneys were named Rising Stars by Super Lawyers in 2019.

For 40 years, the firm has prosecuted antitrust cases on behalf of large and small businesses injured by price-fixing and other violations of the antitrust laws. In the last ten years alone, LGN and its co-counsel have recovered more than $2 billion for their clients and class members in antitrust cases involving national and global price-fixing schemes. LGN has served as Lead Counsel, Co-Lead Counsel, or on the executive committee in many antitrust cases, including:

- *In re Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-08637-TMD-JTG (N.D. Ill.);

- *Olean Wholesale Grocery Cooperative, et al. v. Agri Stats, et al.,* Case No. 1:19-cv-08318-VMK (N. D. Ill.)

- *In re Surescripts Antitrust Litigation*, Case. No. 1:19-cv-06627-JJT (N.D. Ill.)

- *In re Pork Antitrust Litigation*, Case No. 18-cv-01776-JRT-HB (D. Minn);

- *Beef Antitrust Litigation* (*Kenneth Peterson, et al. v. JBS USA Food Co., et al.*), Case No. 19-cv-1129-JRT-HB (D. Minn.)

- *In re Peanut Farmers Antitrust Litigation*, Case No. 2:19-cv-463-RAJ-LRL (E.D. Va.)

- *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Case No. 2:16-MD-02724 (E.D. Penn.).

- *Salmon Antitrust Litigation* (*Wood Mountain Fish LLC v. Mowi, ASA, et al.*), Case No. 19-cv-22128-RS (S.D. Fla.)

- *In re Freight Forwarders Antitrust Litigation (Precision Associates, Inc. v. Panalpina World Transport (Holding) Ltd., et al.)*, Case No. 1:08-cv-42-JG-VVP (E.D.N.Y.);

- *In re Wholesale Grocery Products Antitrust Litigation*, MDL No. 2090, Case No. 0:09-md-2090-ADM (D. Minn.);

- *In re Potash Antitrust litigation (II)*, Civil No. 1:08-cv-06910-RC (N.D. Ill.);

- *In re Flat Glass Antitrust Litigation (II)*, Civil No. 2:08-mc-180-DWA (W.D. Pa.);

- *In re Urethane Antitrust Litigation*, Civil No. 2:04-md-01616-JWL-DJW (D. Kan.);

The firm has also played key roles in dozens of other antitrust class actions across the nation for 40 years. More information on these and other cases can be found at https://www.locklaw.com/antitrust-law/.