**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates to: | Judge Thomas M. Durkin |
| *All Direct Action Plaintiffs* | Magistrate Judge Jeffrey T. Gilbert |

**DIRECT-ACTION PLAINTIFFS' RESPONSE
IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**

As the Court already opined in this case, evidence of the Plaintiffs' membership in trade associations is "tangential to the claims and defenses" and is "only marginally relevant . . . if it is relevant at all." Order 6-7 (Dec. 22, 2017), ECF No. 580. Defendants, in pursuit of a "rhetorical point," *id.* at 7, have sought this evidence from Direct-Action Plaintiffs ("DAPs"). After significant negotiations before and after the filing of a motion to compel last year, the parties agreed to a compromise: DAPs would conduct a reasonable investigation to find protein-related trade associations of which they were members and benchmarking services they used, and would apply related searches as part of the second-phase search terms contemplated by the Court-ordered search methodology. DAPs fulfilled their end of the compromise.

Nevertheless, a year after Defendants' first motion to compel DAP trade association and benchmarking service discovery was mooted, Defendants sent DAPs a series of escalating, new demands that mischaracterized the initial compromise and sought more of this "marginally relevant" discovery. Defendants first asked all DAPs to make disclosures about trade association and benchmarking service participation at Defendants' request, which was not contemplated by the initial compromise. Defendants then pivoted, asking DAPs for confirmation that DAPs had

abided by the compromise. DAPs confirmed the same. Defendants then generated a new request, asking DAPs to produce documents related to eight additional trade associations that were not a part of the original compromise. Next, Defendants asked for all DAPs to provide their "consent" to allow four third-party corporate conglomerates to produce all information any DAPs had ever sent those conglomerates and refused to clarify whether there were specific DAPs from which they wanted consent or whether they agreed to any narrowing of the scope of the third party subpoenas with the recipients. Defendants had served the conglomerates with third-party subpoenas more than two years prior.

Defendants now inappropriately move to compel on all three requests. But Defendants' motion should be denied in its entirety. Defendants' first request is moot. Their second and third requests seek irrelevant evidence that goes beyond the parties' prior compromise about DAP trade association and benchmarking service discovery and is not proportional to the needs of the case.

## BACKGROUND

There is a long history on Defendants' discovery requests for DAPs' participation in trade associations and use of benchmark services. The key to understanding this history is that the parties agreed to a compromise position that mooted a motion to compel and was intended to resolve the overarching issue of DAP trade association and benchmarking service discovery. Now, after DAPs complied with the parties' compromise, Defendants are asking for more.

### The Parties' Compromise on DAP Trade Association and Benchmarking Service Discovery

In December 2018, DAPs and Defendants began negotiating a set of search terms for DAPs to apply. Early on in those negotiations, disagreement arose as to the relevance of search terms relating to trade associations and benchmarking services.[1] During negotiations, on January 2, 2019,

---

[1] Defendants' first set of RFPs propounded on DAPs included the following request: "[d]ocuments sufficient to show all trade associations and buying groups or cooperatives to which You belong and all

Defendants filed a motion to compel. In that motion, Defendants requested that DAPs "produce documents responsive to Defendants' Rule 34 requests regarding DAPs' benchmarking and protein-related trade association activity." Defs. Omnibus Mot. To Compel Prod. Of Documents Regarding Benchmarking Servs. & Trade Ass'n 3 (Jan. 2, 2019), ECF No. 1510.

After the motion was filed, DAPs continued to work with Defendants on a compromise premised on DAPs agreeing to add search terms for protein-related trade associations and benchmarking services. The final agreement was that DAPs would "search for the names of the agreed protein-related trade associations and indexing/benchmarking services . . . in the custodial and non-custodial sources agreed between the parties or ordered by the Court." Defs. Mot. to Compel Disc. of Benchmarking Servs. & Protein-Related Trade Ass'n ("Mot. to Compel") Ex. 1 (Oct. 29, 2020), ECF No. 3954. Defendants acknowledged that they did not "expect or request that the agreeing DAPs offer to promise or search for . . . every document or piece of information that may exist." *Id.* DAPs agreed to apply the search terms over sources where they knew from a reasonable investigation that the requested information is likely to be maintained. *Id.*

On February 28, 2019, DAPs sent a letter to Defendants memorializing the compromise, which also made clear that DAPs "do not agree to continue to add new such searches after the second-phase negotiations." Ex. B, 2/28/2020 Letter from C. Simpson to R. Farnsworth re Search Terms Agreement. Later that day, Defendants filed an update with the Court stating that the parties had reached a global compromise, which mooted the motion to compel. Update on Defs. Mot. to Compel (Feb. 28, 2019), ECF No. 1935.

---

trade association and buying group or cooperative meetings or conferences that You have attended." *E.g.*, Ex. A, Defendants' First Request for Production of Documents to Ahold Delhaize Plaintiffs. Although DAP objections and responses differ, DAPs generally objected to this RFP as, among other things, irrelevant, not proportional to the needs of the case, and unduly burdensome.

**DAPs' Compliance with the Parties' Compromise**

Respecting the compromise, DAPs compiled a list of protein-related trade associations and benchmarking services and updated that list over the course of several months. In June 2019, DAPs and Defendants agreed to second-phase searches that included terms for 32 trade associations and 28 benchmarking services. At the time, DAPs made it clear that the agreement did not include an obligation to add search terms beyond the second-phase search terms contemplated by the Order Regarding Search Methodology for Electronically Stored Information:

> [T]he DAPs do not agree in advance to continue to implement new such searches now that second-phase negotiations are complete. After this point, the DAPs will consider each new proposed search on an individual basis and run additional searches only where appropriate under ¶ V(C)(2) of the ESI Protocol and under the balancing test set forth in Fed. R. Civ. P. 26.

Mot. to Compel Ex. 16.

Before, during, and after this process, Defendants conducted meet and confers with each DAP to agree to the sources over which DAPs would run their searches. These meet and confers occurred on a "bilateral" basis, with Defendants negotiating with—and reaching agreement with—each DAP specifically. *See* Mot. to Compel Ex. 1. DAPs ran the second-phase search terms over these sources as agreed.

**Defendants' Recent Correspondence Misrepresenting the Parties' Compromise**

Beginning in February 2020, Defendants for the first time began claiming that DAPs had obligations above and beyond what the parties had agreed. On February 10, 2020, Defendants wrote a letter erroneously stating that DAPs had an obligation to continuously update an Excel spreadsheet that was used to communicate the second-phase search terms to Defendants. Mot. to Compel Ex. 10. In a February 24 email, Defendants went so far as to characterize the same spreadsheet as an "interrogatory response." Mot. to Compel Ex. 11 at 3. Defendants rightly walked

4

back that characterization, but continued to misrepresent the agreement between the parties. On May 5, 2020, despite Defendants' mischaracterizations of DAP obligations, DAPs made a proposal in an effort to satisfy Defendants' concerns. Mot. to Compel Ex. 14. Defendants ignored the proposal. On July 15, 2020, DAPs sent a letter refuting Defendants' mischaracterizations and explaining to Defendants why their requests did not conform to the parties' prior compromise. Mot. to Compel Ex. 9. On August 11, 2020, DAPs again tried to clarify the issues and confirm that DAPs did indeed comply with the prior compromise. Mot. to Compel Ex. 2. At that time, multiple specific DAPs whose productions Defendants questioned also responded to Defendants individually.[2]

Defendants did not respond to the DAP group's clarifications. Defendants did not respond to the individual DAPs who engaged with them, nor did Defendants meet and confer with those individual DAPs. Instead, Defendants were silent on the issue until they filed their motion for leave to file excess pages. Upon receiving indication that Defendants intended to file a motion to compel, DAPs again affirmed that they had complied with the prior compromise. Ex. G, 10/29/2020 Email from E. Bolles to J. Stupar Re In re Broiler Chicken. Defendants nonetheless proceeded to file the present motion.

Two side issues arose during the course of the parties' discussions about DAPs' fulfillment of the prior compromise. First, in a letter dated July 2, 2020, Defendants added a new request: they asked DAPs to produce documents relating to eight additional trade associations above and beyond the 32 previously agreed-upon trade associations. Mot. to Compel Ex. 8 . This request was a course reversal for Defendants, who in February had confirmed that they were ***not*** asking DAPs to expand

---

[2] Ex. C Bjork Declaration; Ex. D Gore Declaration; Ex. E Lustrin Declaration; Ex. F McCahill Declaration; The Kroger Pls.' Opp. to Defs.' Mot. to Compel and Request for a Protective Order 10 (Nov. 12, 2020), ECF No. 4018.

the list of search terms. Ex. H, 02/18/2020 Email from J. Stupar to E. Bolles re In re Broiler Litigation.

Second, on July 13, 2020, Defendants emailed DAPs to request that DAPs consent to allowing four third-party benchmarking services to produce information they had received from DAPs to Defendants. The third-party subpoenas included broad requests for data provided by DAPs, contracts between the benchmarking services and DAPs, documents showing how much money the services received from DAPs, "all documents reflecting" statements made by DAPs about the value of benchmarking to their business, and more. *E.g.*, Ex. I, 9/12/2018 Defendants' Subpoena to Nielsen Holdings. In their responses and objections, the third parties raised a host of objections. *E.g.*, Ex. J, 10/2/2018 Letter re Subpoena to Nielsen Holdings PLC.

## ARGUMENT

Defendants ignored DAPs' reasonable proposals, misconstrued the parties' prior compromise, and now ask for "relief" to which they are not entitled—all with the aim of forcing DAPs to expend resources chasing information that this Court has already opined is "marginally relevant" at best. Order 7, ECF No. 580. Defendants' motion to compel should be denied.

## I.     The Court Should Deny Defendants' Request for an Order in the Absence of an Actual Dispute.

Defendants' first request is that DAPs "confirm compliance with the prior agreement," Mot. to Compel 15, but this is not a live issue and it was improper for Defendants to raise it before the Court. DAPs maintained throughout their correspondence with Defendants that they complied with the prior compromise and in fact confirmed the same in an email sent to Defendants less than six hours before Defendants filed their motion. Ex. G. DAPs complied with the prior compromise by conducting reasonable investigations, identifying protein-related trade associations in which they participated, negotiating for months with Defendants back and forth on the list of trade

associations, and then running trade-association-related search terms over the custodial and non-custodial sources agreed to between Defendants and each DAP. Defendants' request that the Court order DAPs to confirm compliance with the prior compromise is unwarranted and wasteful because DAPs confirmed compliance before Defendants filed their motion. It should be denied as moot.

Defendants cite to a handful of specific DAPs' deposition testimony and productions to try to support their cause. But Defendants paint with too broad a brush: if Defendants take issue with any specific DAP deposition testimony or productions, a motion to compel against more than 100 separate plaintiffs is not the proper vehicle to do so. There are unique circumstances and negotiation histories between each DAP and Defendants, so the "examples" Defendants include in their motion merely illustrate that this issue can only be resolved on a DAP-specific basis. *See* Ex. C Bjork Declaration; Ex. D Gore Declaration; Ex. E Lustrin Declaration; Ex. F McCahill Declaration; Ex. K Iovieno Declaration; Ex. L Shepard Declaration; The Kroger Pls.' Opp. to Defs.' Mot. to Compel and Request for a Protective Order 10, ECF No. 4018.

## II.  The Court Should Deny Defendants' Request to Compel Additional Searches for Marginally Relevant Information About Trade Associations Not Covered By the Parties' Prior Compromise.

Nearly three years ago, this Court observed that direct purchaser plaintiffs' "participation in trade associations is only marginally relevant to the claims and defenses in this case, if it is relevant at all." Order 7, ECF No. 580. The Court declined to opine on whether evidence of Plaintiffs' trade association membership would be admissible at trial. *Id*. at 7, n.7. Defendants say they want "mirror evidence," but Plaintiffs have not alleged that Defendants' mere participation

in a trade association is evidence of an antitrust violation.[3] Thus, Defendants do not seek a mirror—they seek a smokescreen.

Notwithstanding the irrelevance of the information sought, to avoid a discovery dispute, DAPs compromised and agreed to search for and produce to Defendants documents related to certain agreed protein-related trade associations and benchmarking services, which went through several rounds of negotiation between the parties before they were finalized. Ex. B. Although all DAPs agreed to the compromise, it took effect "bilaterally" between Defendants and each specific DAP. Defendants and DAPs engaged in significant negotiations over the custodial and non-custodial sources for each DAP pursuant to the Order Regarding Production of Electronically Stored Information and Paper Documents, and each DAP specifically reserved the right to object to trade association and benchmarking service search terms based on their individual hit counts. Order Regarding Prod. of Electronically Stored Info. and Paper Documents (Aug. 15, 2017). ECF No. 459. Ex. B.

A year after agreeing to the compromise, Defendants decided to issue additional requests for this irrelevant information. Their new demands are not supported by Rule 26.[4] In addition to their irrelevance, Rule 26 instructs that the discovery sought must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Proportionality is a multi-factored analysis that takes into account "the importance of the issues at stake in the action, the amount in controversy, the parties'

---

[3] Rather, DAPs allege that Defendants communicated their supply reduction conspiracy through trade association events, including stressing "production discipline" at a National Chicken Council in 2009 (*see* DAPs' Consolidated Compl. ¶ 417 ) and calling for "a 5% reduction in chicken production" at a 2011 International Poultry Expo panel (*see id.* ¶ 423). Certain Defendants also participated in the Georgia Poultry Federation, which played a key role in the Defendants' manipulation of the Georgia Dock. *See generally* Memo. Opinion and Order (March 3, 2020) ECF No. 3519 (declining to dismiss RICO claims against Sanderson because, in part, "Sanderson had a relationship with the Advisory Committee and the Georgia Dock through its membership in the Georgia Poultry Federation.").

[4] Defendants' new request also seeks information beyond that which was requested by the Defendants' trade association RFP.

8

relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019).

The proportionality analysis also takes into account whether the requesting party has already obtained discovery about the issues in question, as Defendants have here. *See id.* In accordance with the parties' compromise, DAPs collectively produced documents relating to 32 trade associations.[5] Defendants can and have issued 30(b)(6) topics to many DAPs relating to trade associations, and have spent significant 30(b)(6) time asking about those topics. *E.g.*, Ex. D Gore Declaration, Ex. F McCahill Declaration, Ex. K Iovino Declaration.

"The discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." *Vakharia v. Swedish Covenant Hosp.*, No. 90 C 6548, 1994 WL 75055, at *2 (N.D. Ill. Mar. 9, 1994). Defendants have received ample discovery on DAPs' participation in trade associations through multiple avenues; to seek even more now is not proportional to the needs of the case.

### III. Defendants' Request for the Court to Force DAP Consent Lacks Legal Foundation, is Not Proportional to the Needs of the Case, and is Fatally Vague.

Defendants' request that the Court order DAPs to provide consent to third party discovery should be rejected. "[T]here is very little case law that confirms the power of a court to compel a

---

[5] Defendants also already received documents related to the eight new trade associations from DAPs. Defendants cite DAP-produced documents referring to these trade associations in their motion. And it is little wonder based on the first-round DAP search terms. Those terms include the search ("American Meat Institute" OR AmericanMeatInstitute OR "American Meat Institute" OR AMI OR NAMI OR *meatinstitute.org), which specifically targets one of the eight trade associations. They also include an incredibly broad search finding any document that hits on the term "chicken": Chick* AND NOT (chickpea* Chickie* "chickiesandpetes" (chick* w/2 (soup gravy broth noodle base pea! dip straw! chocolate! "egg roll" pete*) chickory "Lobster chick"). If trade association documents mentioned chicken at all, they were already returned by the prior searches.

party's consent to the disclosure of materials pursuant to a third-party subpoena." *Flagg v. City of Detroit*, 252 F.R.D. 346, 366 (E.D. Mich. 2008). Such an unusual order is not warranted here, where Defendants seek this information only to make "a rhetorical point." *See* Order 7, ECF No. 580.

The four benchmarking services Defendants subpoenaed are already subjects of the prior compromise over DAP trade association and benchmarking service discovery. All four of these entities—Nielsen, iRi, NPD Group, and Informa Economics, n/k/a IHS Markit—appear on the final list of search terms that the parties negotiated as part of the compromise in 2019. Thus, many DAPs have already produced documents that refer to these four services to Defendants in this litigation. Defendants should not be allowed to further demand that DAPs now also be required to give blanket "consent" to productions of unknown materials by these entities.

Defendants' new demand is also exceedingly vague. It is unclear what information the third parties would produce if the DAPs were forced to give consent. Defendants only use the terms "information from the third parties," "their [DAP] information," and "data" in their motion. Mot. to Compel 20-21. For the details, Defendants point to the third party subpoenas, but the subpoenas are written broadly and the third-parties' responses and objections to those subpoenas do not make clear which requests the third parties would comply with if they had DAPs' consent. *E.g.*, Ex J. DAPs are unaware if Defendants and third parties have come to any agreements limiting the scope of Defendants requests, although DAPs have repeatedly requested Defendants' correspondence with third parties to determine the same.

Instead, Defendants appear to seek DAP consent for the third parties to produce *everything* that *any* DAP sent to *any* of these global services—an obviously overbroad request that is far outside the scope of any legitimate discovery. Nielsen, iRi, NPD Group, and IHS Markit are

sprawling global data and market research conglomerates, each with multiple divisions providing a variety of services and products across a number of industries. Some DAPs rely on these firms for internal and external benchmarking for business units and products that have no conceivable relevance to this litigation. Moreover, these conglomerates often collect information that is extremely confidential, highly proprietary, and extensive, such as all "electronic point of sale (POS) data from stores through checkout scanners." *See, e.g.*, Retail Measurement, https://www.nielsen.com/ us/en/solutions/measurement/retail-measurement/ (last visited Nov. 11, 2020). Defendants' request to force all DAPs to consent for these third parties to produce all "information" and "data" provided by DAPs should be denied.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Compel Discovery of Benchmarking Services and Protein-Related Trade Associations should be denied.

Dated: November 12, 2020

/s/ Julie B. Porter
Julie B. Porter (#6243787) SALVATORE
PRESCOTT PORTER &
Porter, PLLC 1010
Davis Street
Evanston, Illinois 60201
Tel: (312) 283-5711
E-mail: porter@spplaw.com

*Co-Liaison Counsel for Direct Action
Plaintiffs*


/s/ Eric R. Lifvendahl
L&G LAW GROUP
Eric R. Lifvendahl
175 W. Jackson Boulevard
Suite 950
Chicago, Illinois 60604
Tel: (312) 364-2500
E-mail: elifvendahl@lgcounsel.com

KAPLAN FOX & KILSHEIMER, LLP
Robert N. Kaplan
Jeffrey P. Campisi
Matthew P. McCahill
850 Third Avenue, 14th Floor
New York, New York 10022
Tel: (212) 687-1980
E-mail: rkaplan@kaplanfox.com E-mail: jcampisi@kaplanfox.com
E-mail: mmccahill@kaplanfox.com

THE COFFMAN LAW FIRM
Richard L. Coffman
Edison Plaza
350 Pine Street
Suite 700
Beaumont, Texas 77701
Tel: (409) 833-7700
E-mail: rcoffman@coffmanlawfirm.com

/s/ Scott E. Gant
Scott E. Gant
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W. Washington,
D.C. 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
E-mail: sgant@bsfllp.com

*Co-Liaison Counsel for Direct Action
Plaintiffs*


CERA LLP
Solomon B. Cera
595 Market Street
Suite 2300
San Francisco, California 94105
Tel: (415) 777-2230
E-mail: scera@cerallp.com

CERA LLP
C. Andrew Dirksen
800 Boylston Sreet
16th Floor
Boston, MA 02199
Tel: (857) 453-6555
E-mail: cdirksen@cerallp.com

HAYNSWORTH SINKLER BOYD P.A.
Manton M. Grier
Elizabeth H. Black
Mary C. Eldridge
1201 Main Street
22nd Floor
Columbia, SC 29201-3226
Tel: (803) 540-7753
E-mail: mgrier@hsblawfirm.com
E-mail: eblack@hsblawfirm.com
E-mail: meldridge@hsblawfirm.com

MARCUS & SHAPIRA LLP
Bernard D. Marcus
Moira Cain-Mannix
Erin Gibson Allen
One Oxford Center
35th Floor
Pittsburgh, PA 15219
Tel: (412) 471-3490
E-mail: marcus@marcus-shapira.com
E-mail: cain-mannix@marcus-shapira.com
E-mail: allen@marcus-shapira.com

*Counsel for the Affiliated Foods Plaintiffs*


/s/ *Ryan P. Phair*
Ryan P. Phair (#479050)
Craig Y. Lee (admitted *pro hac vice*)
Emily K. Bolles (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, N.W. Washington, D.C. 20037-1701
Tel: (202) 955-1500
E-mail: rphair@huntonak.com
craiglee@huntonak.com
ebolles@huntonak.com


John S. Martin (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23119-4074
Tel: (804) 788-8200
E-mail: martinj@huntonak.com


Julie B. Porter (#6243787)
SALVATORE PRESCOTT & PORTER, PLLC
1010 Davis Street
Evanston, Illinois 60201
Tel: (312) 283-5711
E-mail: porter@spplawyers.com

*Counsel for Plaintiff Ahold Delhaize USA, Inc.*


/s/ *Peter K. Taaffe*
THE BUZBEE LAW FIRM
Anthony G. Buzbee
Peter K. Taaffe
J.P. Morgan Chase Tower
600 Travis
Suite 7300
Houston, Texas 77002
Tel: (713)223-5393
Fax: (713) 223-5909
E-mail: tbuzbee@txattorneys.com
ptaaffe@txattorneys.com


Spencer G. Markle
Obed De La Cruz
MARKLE • DELACRUZ, LLP
700 Gemini Avenue
Suite 240
Houston, Texas 77058
Tel: (281)486-0677
Fax: (281) 486-0694
E-mail: spencer@mdlcfirm.com
obed@mdlcfirm.com


Laurence M. Landsman, Esq.
LANDSMAN LAW FIRM, LLC
33 North LaSalle, Suite 1400
Chicago, IL 60602
Tel: (312)251-1165
Fax: (312) 251-1147

*Counsel for Plaintiffs Amigos Meat Distributors, LP, Amigos Meat & Poultry, LLC, Amigos Meat Distributors East, LP and Amigos Meat Distributors West, LP*

/s/ *David P. Germaine*

Paul E. Slater Joseph
M. Vanek David P.
Germaine John P.
Bjork
SPERLING & SLATER, P.C.
55 West Monroe Street
Suite 3200
Chicago, Illinois 60603
Tel:   (312) 641-3200
Fax:  (312) 641-6492
E-mail: PES@Sperling-law.com
JVanek@Sperling-law.com
DGermaine@Sperling-law.com
JBjork@Sperling-law.com

Phillip F. Cramer
Ryan T. Holt
SHERRARD ROE VOIGT & HARBISON,
PLC
150 3rd Avenue South
Suite 1100
Nashville, TN  37201
Tel: (615) 742-4200
E-mail: pcramer@srvhlaw.com
rholt@srvhlaw.com

***Counsel for Plaintiffs Associated Grocers of
the South, Inc., Meijer, Inc., Meijer
Distribution, Inc., OSI Restaurant Partners,
LLC, Publix Super Markets, Inc., Supervalu
Inc.; Unified Grocers, Inc.; Associated
Grocers of Florida, Inc.; and Wakefern
Food Corp.***

/s/ *Amy D. Fitts*

Amy D. Fitts (IL Bar No. 629248)
Daniel D. Owen (MO Bar No. 41514, *Pro
Hac Vice*)
Guillermo G. Zorogastua (MO Bar No.
59643, *Pro Hac Vice*)
POLSINELLI PC
900 W. 48th Place
Suite 900
Kansas City, MO 64112
Tel: (816) 753-1000
Fax:  (816) 753-1536
E-mail: afitts@polsinelli.com
dowen@polsinelli.com
gzorogastua@polsinelli.com

Rodney L. Lewis (IL Bar No. 6288353)
POLSINELLI PC
150 N. Riverside Plaza
Suite 3000
Chicago, Illinois 60606
Tel:   (312) 819-1900
Fax:  (312) 819-1910
E-mail: rodneylewis@polsinelli.com

***Counsel for Plaintiff Associated Wholesale
Grocers, Inc.***

/s/ *David C. Eddy*

David C. Eddy, Esquire
N.D. Illinois Bar No. 72258
Dennis J. Lynch, Esquire
N.D. Illinois Bar No. 07622
ANTITRUST LAW GROUP,
LLC 1601 Assembly Street
P.O. Box 8117
Columbia, SC 29202
Tel: (803) 253-8267
E-mail: deddy@theantitrustlawgroup.com
dlynch@theantitrustlawgroup.com

***Counsel for Plaintiffs Conagra Brands,
Inc.; Pinnacle Foods, Inc.; Kraft Heinz
Foods Company; Nestlé USA, Inc.; and,
Nestlé Purina PetCare Company***

/s/ *Judith A. Zahid*
Judith A. Zahid
Eric W. Buetzow
ZELLE LLP
44 Montgomery Street
Suite 3400
San Francisco, CA 94104 Tel:
(415) 693-0700
E-mail: jzahid@zelle.com
ebuetzow@zelle.com

James R. Martin Jennifer
Duncan Hackett ZELLE
LLP
1775 Pennsylvania Avenue, N.W.
Suite 375
Washington, D.C. 20006
Tel: (202) 899-4100
E-mail: jmartin@zelle.com
jhackett@zelle.com

**Counsel for Plaintiff El Pollo Loco, Inc.**

/s/ *Jay B. Shapiro*
Jay B. Shapiro (*Admitted pro hac vice*)
Samuel O. Patmore (*Admitted pro hac vice*)
Carlos J. Canino (*Admitted pro hac vice*)
Abigail G. Corbett (*Admitted pro hac vice*)
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
150 West Flagler Street
Suite 2200
Miami, Florida 33130
Tel: (305) 789-3200
Fax: (305) 789-3395
E-mail: jshapiro@stearnsweaver.com
spatmore@stearnsweaver.com
ccanino@stearnsweaver.com
acorbett@stearnsweaver.com

Marvin A. Miller
Matthew E. Van Tine
Andrew Szot
MILLER LAW LLC
115 S. LaSalle Street
Suite 2910
Chicago, Illinois 60603
Tel: (312) 332-3400
Fax: (312) 676-2676
E-mail: mmiller@millerlawllc.com
mvantine@millerlawllc.com
aszot@millerlawllc.com

**Counsel for Plaintiffs Quirch Foods, LLC, and Independent Purchasing Cooperative, Inc.**

/s/ *Lori P. Lustrin*
Robert W. Turken
Lori P. Lustrin
Scott N. Wagner
BILZIN SUMBERG BAENA PRICE & AXELROD LLP
1450 Brickell Avenue
Suite 2300
Miami, Florida 33131-3456
Tel: (305) 374-7580
Fax: (305) 374-7593
E-mail: rturken@bilzin.com
llustrin@bilzin.com
swagner@bilzin.com

**Counsel for Plaintiffs Shamrock Foods Company, United Food Service, Inc., Boston Market Corporation, Barbeque Integrated, Inc. d/b/a Smokey Bones Bar & Fire Grill, FIC Restaurants, Inc. d/b/a Friendly's, The Johnny Rockets Group, Inc., Golden Corral Corporation, White Castle Purchasing Co., Cracker Barrel Old Country Store, Inc., Captain D's LLC, and CBOCS Distribution, Inc.**

/s/ Scott E. Gant

Scott E. Gant
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, D.C. 20005
Tel: (202)237-2727
Fax: (202) 237-6131
E-mail: sgant@bsfllp.com

**Counsel forPlaintiffs Sysco Corp. and US Foods, Inc.**

/s/ William J. Blechman

William J. Blechman
Kevin Murray Douglas
Patton Samuel Randall
Michael Ponzoli
Brandon Floch
KENNY NACHWALTER, P.A.
1441 Brickell Avenue
Suite 1100
Miami, Florida 33131
Tel: (305)373-1000
Fax: (305) 372-1861
E-mail: wblechman@knpa.com
kmurray@knpa.com dpatton@knpa.com
srandall@knpa.com mponzoli@knpa.com
bfloch@knpa.com

**Counsel for Plaintiffs The Kroger Co., Albertsons Companies, Inc., Hy-Vee, Inc., and Save Mart Supermarkets**

/s/ David Esau

David B. Esau
Kristin A. Gore
Amanda R. Jesteadt
Stephen A. Cohen
Casey R. McGowan
CARLTON FIELDS, P.A.
525 Okeechobee Boulevard
Suite 1200
West Palm Beach, Florida 33401
Tel: (561)659-7070
Fax: (561) 659-7368
E-mail: desau@carltonfields.com
kgore@carltonfields.com
ajesteadt@carltonfields.com
scohen@carltonfields.com
cmcgowan@calrtonfields.com

Amy M. Bowers
CARLTON FIELDS,
P.A.
100 S.E. Second Street
Suite 4200
Miami, Florida 33131
Tel: (305)530-0050
Fax: (305) 530-0055
E-mail: abowers@carltonfields.com

**Counsel for Plaintiffs United Supermarkets, LLC; Krispy Krunchy Foods, LLC; Cheney Bros. Inc.; Hooters of America, LLC; Checkers Drive-In Restaurants Inc.; Restaurants of America, Inc.; LTP Management Group, Inc.; Gibson, Greco & Wood, Ltd; Hooters Management Corporation; Anaheim Wings, LLC d/b/a Hooters of Anaheim; Bonita Plaza Wings, LLC d/b/a Hooters of Plaza Bonita; Costa Mesa Wings, LLC d/b/a Hooters of Costa Mesa; Downtown Wings, LLC previously d/b/a Hooters of Downtown LA; Gaslamp Wings, LLC previously d/b/a Hooters of San Diego; Hollywood Wings, LLC d/b/a Hooters of Hollywood; Mission Valley Wings, LLC d/b/a Hooters of Mission Valley; Oceanside Wings, LLC previously d/b/a Hooters of**

*Oceanside; Ontario Wings, LLC d/b/a Hooters of Ontario; Rancho Bernardo Wings, LLC d/b/a Hooters of San Marcos; South Gate Wings, LLC d/b/a Hooters of South Gate; Wings Over Long Beach, LLC d/b/a Hooters of Long Beach; Bob Evans Farms, Inc.; The Fresh Market, Inc.; and Wawa, Inc.*

Joseph M. Vanek
Michael G. Dickler
SPERLING & SLATER,
P.C.
55 West Monroe Street
Suite 3200
Chicago, Illinois 60603
Tel:  (312) 641-3200
Fax:  (312) 641-6492
E-mail: jvanek@sperling-law.com
mdickler@sperling-law.com

*Designated Local Counsel for the United Supermarkets et al. Plaintiffs under N.D. Ill. LR 83.15*

Jana Eisinger
LAW OFFICE OF JANA EISINGER, PLLC
4610 South Ulster Street
Suite 150
Denver, Colorado  80237
Tel:  (303) 209-0266
Fax:  (303) 353-0786
E-mail: jeisinger@eisingerlawfirm.com

*Co-Counsel for Plaintiffs United Supermarkets, LLC and Krispy Krunchy Foods, LLC*

Clay M. Taylor
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street
Suite 1000
Fort Worth, Texas 76102
Tel: (817) 779-4300
Fax   (817) 405-6902
E-mail: Clay.Taylor@bondsellis.com

*Co-Counsel for Plaintiff United Supermarkets, LLC*

/s/ *Shawn J. Rabin*
Neal S. Manne (2017083)
Ryan Caughey
SUSMAN GODFREY L.L.P.
1000 Louisiana Street
Suite 5100
Houston, Texas  77002
Tel: (713) 651-9366
E-mail: nmanne@susmangodfrey.com
rcaughey@susmangodfrey.com

Shawn J. Rabin
Steven M. Shepard
Ravi P.S. Bhalla
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas 32nd Floor
New York, N.Y. 10019-6023
Tel: (212) 336-8330
E-mail: srabin@susmangodfrey.com
sshepard@susmangodfrey.com
rbhalla@susmangodfrey.com

Terence H. Campbell
COTSIRILOS, TIGHE, STREICKER,
POULOS & CAMPBELL
33 N. Dearborn Street
Suite 600
Chicago, Illinois 60602
Tel: (312) 263-0345
E-mail: tcampbell@cotsiriloslaw.com

**Counsel for Plaintiffs Walmart Inc.; Wal-Mart Stores East, LP; Wal-Mart Stores Arkansas, LLC; Wal-Mart Stores Texas, LLC; Wal-Mart Louisiana, LLC; Sam's West, Inc.; Sam's East, Inc**.

/s/ *Patrick J. Ahern*
Patrick J. Ahern
Theodore B. Bell
AHERN & ASSOCIATES, P.C.
Willoughby Tower
8 South Michigan Avenue
Suite 3600
Chicago, Illinois 60603
Tel: (312) 404-3760
E-mail:
patrick.ahern@ahernandassociatespc.com

**Counsel for Plaintiffs Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC; and Kraft Heinz Foods as to CA Number 3572**

/s/ *John F. Gibbons*
John F. Gibbons
Illinois Bar No. 6190493
Thomas E. Dutton Illinois
Bar No. 6195923
GREENBERG TRAURIG, L.L.P.
77 West Wacker Drive
Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400
Fax: (312) 456-8435
E-mail: gibbonsj@gtlaw.com
duttont@gtlaw.com

Gregory J. Casas (admitted *pro hac vice*)
Texas Bar No: 00787213
Erik Weber (admitted *pro hac vice*)
Texas Bar No: 240898587
300 West Sixth Street
Suite 2050
Austin, Texas 78701-4052
Tel: (512) 320-7200
Fax: (512) 320-7210
E-mail: casasg@gtlaw.com
weberer@gtlaw.com

Dominic E. Draye (admitted *pro hac vice*)
Arizona Bar No. 033012
2375 East Camelback Road
Suite 700
Phoenix, Arizona 85016
Tel: (602) 445-8000
Fax: (602) 445-8100
E-mail: drayed@gtlaw.com

**Counsel for Plaintiff Services Group of America, Inc.**

Gary M. Klinger
MASON LIETZ & KLINGER LLP
227 W. Monroe Street
Suite 2100
Chicago, Illinois 60606
Tel: (202) 429-2290
Fax: (202) 429-2294
E-mail: gklinger@masonllp.com

Gary E. Mason
David K. Lietz
MASON LIETZ & KLINGER LLP
5101 Wisconsin Avenue, N.W.
Suite 305
Washington, D.C. 20016
Tel: (202) 429-2290
Fax: (202) 429-2294
E-mail: gmason@masonllp.com
dlietz@masonllp.com

**Counsel for Plaintiff WZ Franchise Corporation**

/s/ *Philip J. Iovieno*

Philip J. Iovieno
Anne M. Nardacci
Ryan T. McAllister
Mark A. Singer
BOIES SCHILLER FLEXNER LLP
30 South Pearl Street
Albany, N.Y. 12207
Tel: (518) 434-0600
Fax: (518) 434-0665
E-mail: piovieno@bsfllp.com
anardacci@bsfllp.com
rmcallister@bsfllp.com
msinger@bsfllp.com

Nicholas A. Gravante, Jr.
BOIES SCHILLER FLEXNER
LLP
55 Hudson Yards
New York, N.Y. 10001 Tel:
(212) 446-2300
Fax: (212) 446-2350
E-mail: ngravante@bsfllp.com

*Counsel for Plaintiffs Jetro Holdings, LLC;*
*BJ's Wholesale Club, Inc.; Maximum*
*Quality Foods, Inc.; Sherwood Food*
*Distributors, L.L.C.; Harvest Meat*
*Company, Inc.; Western Boxed Meat*
*Distributors, Inc.; Hamilton Meat, LLC;*
*Darden Restaurants, Inc.; and PJ Food*
*Service, Inc. and Co-Counsel for Plaintiffs*
*Winn-Dixie Stores, Inc. and Bi-Lo*
*Holdings, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of November, 2020, I caused a true and correct copy of the foregoing document to be served upon all counsel of record via the Court's CM/ECF system.

*/s/ Ryan P. Phair*
Ryan P. Phair