**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 TMD |
| This Document Relates To:<br><br>All Commercial and Institutional Indirect Purchaser Plaintiff Actions | |

**MEMORANDUM OF LAW IN SUPPORT OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' UNCONTESTED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS PECO FOODS, INC., GEORGE'S, INC., AND GEORGE'S FARMS, INC. AND FOR CONDITIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASSES**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND ....................................................................................................................1

III. SUMMARY OF SETTLEMENT AGREEMENTS ...............................................................3

IV. ARGUMENT ..........................................................................................................................4

    A. The Proposed Settlement Falls Within the Range of Possible Approval and Should Be Preliminarily Approved ............................................................................4

    B. The Settlement Is Fair and Resulted from Arm's-Length Negotiation ....................6

    C. The Court Should Certify the Proposed Settlement Class .......................................8

        1. The Requirements of Rule 23(a) are Satisfied ..............................................9

            a. Numerosity .........................................................................................9

            b. Common Questions of Law and Fact ...............................................9

            c. Typicality .........................................................................................10

            d. Adequacy .........................................................................................11

        2. The Proposed Settlement Class Satisfies Rule 23(b)(3) ............................12

    D. Notice to the Class ..................................................................................................13

V. CONCLUSION .....................................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Aftermarket Filters Antitrust Litig.*,
   No. 1:08-cv-04883 (ECF No. 885) (N.D. Ill. Feb. 16, 2012) ...................................................14

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...........................................................................................................8, 13

*Armstrong v. Bd. of Sch. Dirs.*,
   616 F.2d 305 (7th Cir. 1980) ...............................................................................................4, 5

*In re Auto. Parts Antitrust Litig.* (*Wire Harness Systems*),
   Master File No. 12-md-02311, Case No. 2:12-cv-00103 (ECF No. 577) (E.D.
   Mich. July 10, 2017) ..............................................................................................................14

*In re Catfish Antitrust Litig.*,
   826 F. Supp. 1019 (N.D. Miss. 1993) ....................................................................................12

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) .................................................................................................11

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
   768 F.2d 884 (7th Cir. 1985) ...................................................................................................4

*In re Foundry Resins Antitrust Litig.*,
   242 F.R.D. 393 (S.D. Ohio 2007) ..........................................................................................12

*Goldsmith v. Tech. Solutions Co.*,
   No. 92-C-4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ................................................6

*Hughes v. Baird & Warner, Inc.*,
   No. 76 C 3929, 1980 WL 1894 (N.D. Ill. Aug. 20, 1980) .....................................................12

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ...............................................................................................4, 5

*Kohen v. Pacific Inv. Mgmt.*,
   571 F.3d 672 (7th Cir. 2009) .................................................................................................11

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) .......................................................................................6

*In re Mercedes-Benz Antitrust Litig.*,
   213 F.R.D. 180 (D.N.J. 2003) ................................................................................................10

*In re Mid-Atlantic Toyota Antitrust Litig.*,
  564 F. Supp. 1379 (D. Md. 1983) .................................................................................5

*In re NASDAQ Market-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y 1997) ......................................................................................5

*In re New Jersey Tax Sales Antitrust Litig.*,
  No. 3:12-cv-01893 (ECF No. 276) (D.N.J. Aug. 13, 2013) ........................................14

*Owner-Operator Indep. Drivers' Ass'n v. Allied Van Lines, Inc.*,
  231 F.R.D. 280 (N.D. Ill. 2005)...................................................................................10

*Paper Sys. Inc. v. Nippon Paper Indus.*,
  281 F.3d 629 (7th Cir. 2002) .........................................................................................7

*Saltzman v. Pella Corp.*,
  257 F.R.D. 471 (N.D. Ill. 2009)............................................................................10, 12

*Schmidt v. Smith & Wollensky LLC*,
  268 F.R.D. 323 (N.D. Ill. 2010).....................................................................................9

*Thillens, Inc. v. Cmty. Currency Exch. Ass'n*,
  97 F.R.D. 668 (N.D. Ill. 1983).....................................................................................10

*In re Transpacific Passenger Air Transportation Antitrust Litig.*,
  No. 07-05634-CRB (N.D. Cal.) ...................................................................................14

*Uhl v. Thoroughbred Tech. & Telecomms, Inc.*,
  309 F.3d 978 (7th Cir. 2002) .........................................................................................5

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).......................................................................................................9

*In re Warfarin Sodium Antitrust Litig.*,
  212 F.R.D. 231 (D. Del. 2002) ......................................................................................5

**Rules**

Federal Rules of Civil Procedure
  Rule 23 ................................................................................................................8, 9, 12
  Rule 23(a) ...................................................................................................................8, 9
  Rule 23(a)(1) .................................................................................................................9
  Rule 23(a)(2) ............................................................................................................9, 10
  Rule 23(a)(3) ..........................................................................................................10, 11
  Rule 23(a)(4) ..........................................................................................................11, 12
  Rule 23(b) ......................................................................................................................8
  Rule 23(b)(3) ..........................................................................................................12, 13
  Rule 23(c)(2)(B) .....................................................................................................13, 14
  Rule 23(e) .........................................................................................................5, 6, 13

**Other Authorities**

2 Newberg on Class Actions, §11.24 (3d ed. 1992) ...................................................................5

2 Newberg on Class Actions, § 11.40 (2d ed. 1985) ..................................................................6

I.  INTRODUCTION

The Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs") respectfully move the Court for preliminary approval of proposed settlements between CIIPPs and (1) Defendant Peco Foods, Inc. ("Peco") and (2) Defendants George's, Inc. and George's Farms, Inc. (together, "George's," and collectively with Peco, "Settling Defendants").[1] The proposed settlements—CIIPPs' third and fourth in this action—were reached through extensive arm's-length, hard-fought negotiations, after significant litigation and discovery, and Interim Class Counsel believes that the settlements are in the best interests of the class. *See* Declaration of Adam J. Zapala ("Zapala Decl."), ¶¶ 3-4, 6-8, 10. Peco and George's have each agreed to pay three million and five hundred twenty-five thousand dollars ($3,525,000) in monetary consideration to the Settlement Classes and provide specified types of cooperation to aid in the future prosecution of this action. CIIPPs estimate that Peco's market share for the sale of Broilers to the CIIPP class constitutes 3.09% and George's market share constitutes 3.36%, in both cases a step up in monetary consideration from those of previous settling defendants Fieldale Farms Corporation ("Fieldale") and Amick Farms ("Amick"). The increasing value of these settlements demonstrate that CIIPPs' litigation strategy has been successful. As discussed in the memorandum, at a later time, Co-Lead Counsel will move the Court to approve a program to notify members of the Settlement Class of this and any other then-pending settlements, as CIIPPs believe it would be more efficient to defer the notice and claims process until a later date.

II.  BACKGROUND

This is an antitrust class action filed against certain producers of Broilers. CIIPPs allege that Defendants conspired and combined to fix, raise, maintain, and stabilize the price of Broilers

---

[1] The Peco Settlement Agreement is attached as Exhibit A of the Declaration of Adam J. Zapala. The George's Settlement Agreement is attached as Exhibit B to the same declaration.

1

sold in the United States. *See* ECF No. 3929 (CIIPPs' Seventh Amended Consolidated Amended Complaint, and hereinafter the "Complaint") at ¶ 1. CIIPPs further allege that Defendants implemented their conspiracy in various ways, including but not limited to, coordinating their output with the expected result of increasing prices. CIIPPs further allege that Defendants achieved these ends by exchanging detailed, competitively-sensitive, and closely-guarded non-public information about prices, capacity, sales volume, and demand, including through Defendant Agri-Stats.

This litigation was commenced in September 2016. On October 14, 2016, the Court appointed the undersigned as Interim Co-Lead Counsel for the CIIPPs. ECF No. 144. Thereafter, CIIPPs filed a Consolidated Amended Complaint on October 28, 2016. ECF No. 179. The current, operative complaint was filed on October 23, 2020. ECF No. 3929 (public redacted), 3931 (sealed unredacted). On January 27, 2017, all Defendants named at the time filed a motion to dismiss CIIPPs' complaint. ECF No. 292. The Court largely denied this motion on November 11, 2017. ECF No. 541. Discovery commenced in earnest and proceeded apace, though it subsequently slowed owing to a stay requested by the Department of Justice, *see* ECF Nos. 2302, 3153; and the current COVID-19 pandemic.

On October 22, 2018, CIIPPs reached a settlement with Fieldale for $1.4 million. *See* ECF Nos. 1533, 1534. The Court preliminarily approved CIIPPs' settlement with Fieldale on February 20, 2019, finding it "fair, reasonable, adequate, and in the best interest of the Class, [with] no obvious reasons to doubt its fairness." ECF No. 1910 at 2. On June 3, 2020, CIIPPs reached a settlement with Amick for $2.95 million. *See* ECF Nos. 3668, 3669. On July 9, 2020, the Court preliminary approved CIIPPs' settlement with Amick, and similarly found that

settlement "fair, reasonable, adequate, and in the best interests of the Class, [with] no obvious reasons to doubt its fairness." ECF No. 3696 at 2.

In addition to securing monetary consideration, these additional settlements empower CIIPPs to obtain specified types of cooperation from Peco and George's in aid of CIIPPs' continued prosecution against the remaining Defendants. *See* Settlement Agreements, Zapala Decl. Ex. A and Ex. B, II.§.A.3 (a)-(c). Further, like Fieldale and Amick, Peco and George's have Broiler market shares with respect to sales to the CIIPP class that are on the lower end, and CIIPPs estimate the market share of Peco and George's combined is less than 6.5%. Zapala Decl. ¶ 5. Settlements with Peco and George's will therefore have limited effect on the size of the Defendant group remaining in the litigation and the total commerce at issue in the case. The non-settling Defendants remain jointly and severally liable for damages resulting from Broiler sales by Peco and George's during the Class Period.

**III.    SUMMARY OF SETTLEMENT AGREEMENTS**

After extensive arm's length negotiations over the course of many months, during which time the parties held a number of telephonic meetings and exchanged information and settlement proposals and each side had the opportunity to be fully informed of the relative strengths and weaknesses of their positions, litigation risks, and potential issues surrounding ability to pay, *see* Zapala Decl. ¶¶ 3-10, CIIPPs agreed to settle with Peco in return for its agreement to pay three million and five hundred twenty-five thousand dollars ($3,525,000.00), and to provide specified types of cooperation. *See* Settlement Agreement with Peco, Zapala Decl. Ex. A §§ II.A.3 (a)-(c). Peco's cooperation includes authenticating documents it produced and laying an evidentiary foundation for the admissibility of those documents at trial, whether by witness, declaration, or

other means. *Id.* CIIPPs agreed to release claims against Peco arising from the conduct alleged in the Complaint. *Id.* at §§ I.B.28-29, II.A.1(a)-(b).

Following similar negotiations, telephonic meetings, and testing of claims and positions, *see* Zapala Decl. ¶¶ 3-10, CIIPPs agreed to settle with George's, also for an agreement to pay three million and five hundred twenty-five thousand dollars ($3,525,000.00) and specified types of cooperation that includes authenticating documents and laying an evidentiary foundation for admissibility of documents at trial, whether by witness, declaration, or other means. *See* Settlement Agreement with George's, Zapala Decl. Ex. B §§ II.A.3 (a)-(c). CIIPPs agreed to release claims against George's arising from the conduct alleged in the Complaint. *Id.* at §§ I.B.28-29, II.A.1(a)-(b).

CIIPPs and the Settling Defendants were able to reach agreement on monetary terms with the assistance of a neutral mediator. Additionally, Peco and George's may rescind the settlement in accordance with a separate, confidential Supplemental Agreement if a certain threshold of class members exclude themselves from the settlement class. Neither release extends to any other Defendants.

IV. **ARGUMENT**

 A. **The Proposed Settlement Falls Within the Range of Possible Approval and Should Be Preliminarily Approved**

There is an overriding public interest in quieting litigation through settlement; this is particularly true in complex class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986) (noting that there is a general policy favoring voluntary settlements of class action disputes); *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the

federal courts look with great favor upon the voluntary resolution of litigation through settlement*.")*, *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong*, 616 F.2d at 313 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). A class action, however, may be settled only with court approval. *See* 2 NEWBERG ON CLASS ACTIONS, §11.24 (3d ed. 1992); *Armstrong*, 616 F.2d at 314; *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y 1997).

A proposed settlement falls within the "range of possible approval" under Rule 23(e) when it is likely that the proposed settlement will meet the standards applied at final approval. The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *see Uhl v. Thoroughbred Tech. & Telecomms, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002); *Isby*, 75 F.3d at 1198-99.

When granting preliminary approval, a court does not conduct a "definitive proceeding on the fairness of the proposed settlement." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983). That determination must await the final approval hearing where the fairness, reasonableness, and adequacy of the settlement are assessed under the factors set forth in *Armstrong*.[2] Here, the settlement consideration ($3.525 million from each Settling Defendant) is greater than the previous settlements with Fieldale ($1.4 million) and Amick

---

[2] The *Armstrong* factors for a motion for final approval of a class settlement as fair, reasonable, and adequate are: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendants' ability to pay; (3) the complexity, length, and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of class members to the settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and the amount of discovery completed. *Armstrong,* 616 F. 2d at 314.

5

($2.95 million), both of which this Court has already preliminarily approved. ECF Nos. 1910, 3696. The increased settlement amounts are consistent with these Settling Defendants accounting for somewhat larger market shares during the relevant period. In light of the context of this case, the gross settlement amount strongly supports preliminary approval.

### B. The Settlement Is Fair and Resulted from Arm's-Length Negotiation

All of the procedural elements for finding that the settlement should be preliminarily approved exist. At preliminary approval, there is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations. *See* 2 NEWBERG ON CLASS ACTIONS, § 11.40 at 451 (2d ed. 1985); *Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 WL 17009594, at *3 n.2 (N.D. Ill. Oct. 10, 1995) ("[I]t may be presumed that the agreement is fair and adequate where, as here, a proposed settlement is the product of arm's-length negotiations."); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery."). The initial presumption in favor of such settlements reflects courts' understanding that vigorous negotiations between experienced counsel advance the fairness concerns embodied in Rule 23(e).

These proposed Settlements reached here are the product of intensive settlement negotiations conducted over a period of several months and included many rounds of give-and-take between CIIPPs' Co-Lead Counsel and counsel for Peco and for George's. Zapala Decl. ¶¶ 3-1-. The parties also utilized the assistance of a neutral, third-party mediator, who supervised the settlement discussions. Based on the arm's-length negotiations between the parties and the extensive discovery record at the time of settlement, CIIPP Co-Lead Counsel strongly believe these are fair settlements for the Class. *Id.* ¶ 7.

Moreover, these Settlements do not affect the potential full recovery of damages under the antitrust laws in light of joint and several liability flowing to the remaining Defendants. *See Paper Sys. Inc. v. Nippon Paper Indus.*, 281 F.3d 629, 632 (7th Cir. 2002) ("[E]ach member of a conspiracy is liable for all damages caused by the conspiracy's entire output.").While CIIPPs believe that their case is strong, any complex antitrust litigation is inherently costly and risky, and these Settlements mitigate that risk and therefore serve to protect the Class.

Furthermore, there remain many contingencies that could affect a determination on the merits in favor of the CIIPPs, including the risk of whether or not a class or classes are certified; whether or not certain Defendants will prevail on liability; and, if a favorable judgment is obtained, whether or not certain Defendants will become insolvent at the conclusion of the matter. These are just a few of the risks, although Interim Lead Counsel's duties to the CIIPPs preclude a further or more detailed discussion in this brief as to how Interim Lead Counsel weighs those risks.

Indeed, CIIPPs' work in this case has been extensive, and the information gleaned during the course of litigation and discovery guided the parties during the settlement negotiations. Among other tasks through the course of this litigation, CIIPPs' counsel (1) comprehensively researched the industry and consulted with experts prior to filing their initial 177-page consolidated complaint; (2) extensively briefed oppositions to the motions to dismiss filed by certain Defendants; (3) largely prevailed on those pleadings challenges; (4) received and reviewed over eight and a half million documents; (5) negotiated several case protocols, such as the ESI, discovery limits, and others; (6) attended and presented argument at numerous court hearings; (7) have already taken over 100 depositions; (8) are continuing to schedule and take depositions through the coming months; (9) amassed evidence and consulted with and funded

experts who devised an economic model to analyze the voluminous transaction-level sales data produced by Defendants and prepared a class certification expert report, and (10) moved for certification of the CIIPP class.

In sum, the Settlement Agreements: (1) provide substantial benefits to the class; (2) are the result of extensive good faith negotiations between knowledgeable and skilled counsel; (3) were entered into after extensive factual investigation, discovery, and legal analysis; and (4) in the opinion of experienced Class Counsel, are fair, reasonable, and adequate to the Class.

### C. The Court Should Certify the Proposed Settlement Class

At the preliminary approval stage, the Court must also determine whether the proposed Settlement Class should be certified for settlement purposes. Under Rule 23, class actions may be certified for settlement purposes only. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b). *Id.* at 613-14. CIIPPs seek certification of the following settlement classes:

> All entities who indirectly purchased Broilers from Defendants or co-conspirators in the United States during the Class Period for their own use in commercial food preparation, including institutional purchasers such as hospitals, nursing homes, and schools.
>
> Specifically excluded from this Class are: (a) natural persons who purchased Broilers for their personal use and not for commercial Food preparation (End-User Consumers); (b) purchasers of Broilers directly from Defendants; (c) purchasers of Broilers for resale in unaltered form; (d) purchasers of value added products containing Broilers, that are not manufactured, supplied or processed by Defendants, or otherwise not under the control of Defendants; (e) the Defendants; (f) the officers, directors or employees of any Defendant; (g) any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant; (h) any federal, state governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; (i) any juror assigned to this action; and (j) any Co-Conspirator identified in this action.

8

Settlement Agreement with Peco, § II.E.2; Settlement Agreement with George's, § II.E.2. The Class Period is the period from and including January 1, 2008 through July 31, 2019. [3] This settlement class is, in all material respects, the same class proposed in CIIPPs' Complaint and the same settlement class that this Court has previously certified for settlement purposes in relation to CIIPPs' settlements with Fieldale and Amick. ECF Nos. 1910, 3696.

### 1. The Requirements of Rule 23(a) are Satisfied

#### a. Numerosity

Fed. R. Civ. P. 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable." No magic number satisfies the numerosity requirement, however, "a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Schmidt v. Smith & Wollensky LLC*, 268 F.R.D. 323, 326 (N.D. Ill. 2010) (citations omitted). The proposed Settlement Class consists of commercial food preparers, like restaurants, that indirectly purchased Broilers made by the Defendants or co-conspirators during the period from January 1, 2008 to July 31, 2019. There are, therefore, hundreds of thousands of potential class members. Thus, joinder would be impracticable and Rule 23(a)(1) is satisfied.

#### b. Common Questions of Law and Fact

Fed. R. Civ. P. 23(a)(2) requires that there be "questions of law or fact common to the class." Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim and "[e]ven a single [common] question will" satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

---

[3] CIIPPs' agreements with both Peco and George's define the class period as extending until the latter of February 20, 2019 or the date for the litigation class proposed in CIIPPs' motion for class certification. The class certification motion defined this period as ending on July 31, 2019.

9

A central allegation in the Complaint is that Defendants illegally conspired to increase the prices of Broilers. Proof of this conspiracy will be common to all Class members. *See, e.g., Thillens, Inc. v. Cmty. Currency Exch. Ass'n*, 97 F.R.D. 668, 677 (N.D. Ill. 1983) ("The overriding common issue of law is to determine the existence of a conspiracy."). In addition to that overarching question, this case is replete with other questions of law and fact common to the Settlement Class, including: (1) the role of each Defendant in the conspiracy; (2) whether Defendants' conduct violated Section 1 of the Sherman Act and state indirect purchaser and consumer protection statutes; (3) whether Defendants affirmatively concealed their agreement; (4) whether Defendants' conspiratorial conduct restricted Broiler supplies and caused the prices of Broilers to be inflated; (5) the appropriate measure of monetary relief, including the appropriate measure of damages; and (6) whether Plaintiffs and Class members are entitled to declaratory and/or injunctive relief. Accordingly, the Settlement Class satisfies Rule 23(a)(2).

### c. Typicality

Rule 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. "[T]ypicality is closely related to commonality and should be liberally construed." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009) (citations omitted). Typicality is a "low hurdle," requiring "neither complete coextensivity nor even substantial identity of claims." *Owner-Operator Indep. Drivers' Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005). When "the representative party's claim arises from the same course of conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory," factual differences among class members do not defeat typicality. *Id.* Courts generally find typicality in cases alleging a price-fixing conspiracy. *See, e.g., In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 185 (D.N.J. 2003).

CIIPPs here allege a conspiracy to fix, maintain, and inflate the price of Broilers in the United States. The named class representatives will have to prove the same elements that absent Settlement Class members would have to prove, *i.e.*, the existence and effect of such conspiracy. As alleged in the Complaint, each named representative purchased Broilers indirectly from one or more conspiring Defendants and, as a result, were overcharged and thereby suffered antitrust injury. Complaint ¶¶ 22-28. Because the class representatives' claims arise out of the same alleged illegal anticompetitive conduct, are based on the same theories, and will require the same types of evidence to prove those theories, the typicality requirement of Rule 23(a)(3) is satisfied.

### d. Adequacy

Rule 23(a)(4) requires that the court must find "the representative parties will fairly and adequately protect the interests of the class." Adequacy of representation is measured by a two-part test: (i) the named plaintiffs cannot have claims in conflict with other class members, and (ii) the named plaintiffs and proposed class counsel must demonstrate their ability to litigate the case vigorously and competently on behalf of named and absent class members alike. *See Kohen v. Pacific Inv. Mgmt.*, 571 F.3d 672, 679 (7th Cir. 2009).

Both requirements are satisfied here. As they demonstrated at the time they sought appointment, Co-Lead Counsel are qualified, experienced, and thoroughly familiar with antitrust class action litigation. Co-Lead Counsel have successfully litigated many significant antitrust actions and have prosecuted and will continue to vigorously prosecute this lawsuit.[4]

Moreover, the interests of the settling Class members are aligned with those of the representative Plaintiffs. Plaintiffs, like all Class members, share an overriding interest in obtaining the largest possible monetary recovery and as fulsome cooperation as possible. *See In*

---

[4] *See* ECF Nos. 116-0 through 116-8 (CIIPPs' Motion to Appoint Co-Lead and Liaison Counsel); ECF No. 144 at p. 6 (Court's Order of October 14, 2016 appointing same).

*re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes"). Representative Plaintiffs are not afforded any special compensation by these proposed settlements and all Class members similarly share a common interest in obtaining cooperation from Peco and George's. Accordingly, the requirements of Rule 23(a)(4) are satisfied.

### 2. The Proposed Settlement Class Satisfies Rule 23(b)(3)

Once Rule 23(a)'s four prerequisites are met, plaintiffs seeking certification of a Settlement Class under Rule 23(b)(3) must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Moreover, "[c]onsiderable overlap exists between the court's determination of commonality and a finding of predominance. A finding of commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts." *Saltzman*, 257 F.R.D. at 484.

In antitrust conspiracy cases such as this one, courts consistently find that common issues regarding the existence and scope of the conspiracy predominate over individual issues. *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 408 (S.D. Ohio 2007); *see also In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1039 (N.D. Miss. 1993) ("As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment."). This follows from the central nature of a conspiracy in such cases. *Hughes v. Baird & Warner, Inc.*, No. 76 C 3929, 1980 WL 1894, at *3 (N.D. Ill. Aug. 20, 1980) ("Clearly, the existence of a

conspiracy is the common issue in this case. That issue predominates over issues affecting only individual sellers."); *see also Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.").

Plaintiffs must also show that a class action is superior to individual actions, which is evaluated by four considerations:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

Fed. R. Civ. P. 23(b)(3).

Here, any Class member's interest in individually controlling the prosecution of separate claims is outweighed by the efficiency of the class mechanism. Hundreds of thousands of entities purchased Broilers during the class period; settling these claims in the context of a class action conserves both judicial and private resources and hastens Class members' recovery. Finally, while Plaintiffs see no management difficulties in this case, this final consideration is not pertinent to approving a settlement class. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). Accordingly, certifying the proposed settlement class is superior to other means that may exist for the fair and efficient adjudication of the controversy relating to Peco and George's.

D. **Notice to the Class**

Rule 23(e) requires that prior to final approval, notice of a proposed settlement be given in a reasonable manner to all class members who would be bound by such a settlement. For a class proposed under Rule 23(b)(3), whether litigated or by virtue of a settlement, Rule

23(c)(2)(B) enumerates specific requirements. At an appropriate time prior to moving for final approval of this proposed Settlement (presumably grouped with other settlements to ensure efficiencies for the Class), CIIPPs intend to propose to the Court a plan of notice which, pursuant to Rule 23(c)(2)(B), will provide due process and reasonable notice to all customers of Defendants—Settling and Non-Settling Defendants alike—who can be identified through customer lists. Without objection from Peco and George's, and similar to the previous settlements reached in this action, CIIPPs request that the Court defer formal notice to the Class at the present time. In large antitrust cases, courts have deferred notice under similar circumstances. *See, e.g., In re Aftermarket Filters Antitrust Litig.*, No. 1:08-cv-04883, Preliminary Approval Order (ECF No. 885) at p. 5 (N.D. Ill. Feb. 16, 2012) (granting preliminary approval of settlement agreements, certifying settlement class, and ordering that class notice be deferred until a later time); *In re New Jersey Tax Sales Antitrust Litig.*, No. 3:12-cv-01893, Order (ECF No. 276) at ¶ 7 (D.N.J. Aug. 13, 2013) (granting preliminary approval of settlement and finding that cost of class notice warranted deferral); *In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. 07-05634-CRB, (ECF Nos. 968, 1009) (N.D. Cal.) (granting approval of plan of allocation and final approval of interim settlements, ordering payment of attorneys' fees and reimbursement of litigation expenses with claims not being paid until the end of the case); *In re Auto. Parts Antitrust Litig.* (*Wire Harness Systems*), Master File No. 12-md-02311, Case No. 2:12-cv-00103, Order Approving End-Payor Plaintiffs' Plan of Allocation of the Settlements at ¶ 10 (ECF No. 577) (E.D. Mich. July 10, 2017) (approving a plan of allocation that contemplates paying class members at the end of the case to save expenses). Consistent with the law, CIIPPs will propose a notice plan that will provide notice of

these settlements, any previously entered settlements, and any potential future settlements to the class prior to any final approval proceedings.

## V. CONCLUSION

For these reasons, Interim Co-Lead Counsel respectfully request that the Court preliminarily approve the Settlement Agreements and preliminarily certify the Settlement Class.

Dated: December 4, 2020

Respectfully Submitted:

| /s/ *Daniel C. Hedlund* | /s/ *Adam J. Zapala* |
|---|---|
| Daniel E. Gustafson | Adam J. Zapala |
| Daniel C. Hedlund | Tamarah P. Prevost |
| Michelle J. Looby | James G. Dallal |
| Joshua R. Rissman | **COTCHETT, PITRE & McCARTHY, LLP** |
| Brittany N. Resch | 840 Malcolm Road, Suite 200 |
| **GUSTAFSON GLUEK PLLC** | Burlingame, CA 94010 |
| 120 South Sixth Street, Suite 2600 | Telephone: (650) 697-6000 |
| Minneapolis, MN 55402 | |
| Telephone: (612) 333-8844 | |

*Lead Counsel for the Commercial and Institutional Indirect Purchaser Class*

Kenneth A. Wexler
Melinda J. Morales
**WEXLER WALLACE LLP**
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222

*Liaison Counsel for the Commercial and Institutional Indirect Purchaser Plaintiff Class*