UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | Civil Action No. 1:16-cv-08637 |
| | Judge Thomas M. Durkin |
| | Magistrate Judge Jeffrey T. Gilbert |
| THIS DOCUMENT RELATES TO: | |
| *Services Group of America, Inc. v. Tyson Foods, et al.*, Case No. 1:19-cv-04194 | |
| And | Honorable Thomas M. Durkin |
| The Direct Purchaser Plaintiff Action | Honorable Jeffrey T. Gilbert |

**NOTICE OF OPT-OUT AND OBJECTION TO LIST OF OPT-OUTS WITH RESPECT TO THE DIRECT PURCHASER CLASS PLAINTIFFS' SETTLEMENTS WITH GEORGE'S AND PECO DEFENDANTS, OR IN THE ALTERNATIVE, <u>MOTION FOR LATE OPT-OUT FROM THE SETTLEMENTS</u>**

Services Group of America, Inc. ("SGA") is a Direct Action Plaintiff who has filed an opt-out lawsuit, individually and as an express assignee of its former subsidiaries Food Services of America, Inc. ("FSA"), Systems Services of America, Inc. ("SSA"), and Ameristar Meats, Inc. ("Ameristar"), against George's, Inc. and George's Farms, Inc. ("George's") and Peco Foods, Inc. ("Peco"), as well as other defendants.

SGA respectfully files this Notice of Opt-Out and Objection to the List of Persons and Entities Who Requested Exclusion from the Settlements Between the Direct Purchaser Plaintiffs and George's, Peco, and Amick Farms, LLC ("Amick")[1] (ECF Dkt. Nos. 3567, 3777, 3944), or in the alternative moves for an extension of the opt out deadline to allow SGA's claims, including

---

[1] Collectively, George's, Peco, and Amick are referred to herein as the "Settling Defendants." The settlements between the Direct Purchaser Plaintiffs and the Settling Defendants are referred to herein as the "Settlements."

1

those assigned to SGA by its former subsidiaries FSA, SSA, and Ameristar (the "SGA Subsidiaries"), to be excluded from the Settlements.

## I. Background

On December 20, 2019, the Court granted preliminary approval of the Settlements. (ECF Dkt. No. 3359). This Order was subsequently corrected on January 8, 2020. (ECF Dkt. No. 3394). Among other things, the January 8, 2020 Order states that the notice would include "individual notice via mail and email to all members who can be identified through reasonable effort." Despite the Court's Order, the Claims Administrator sent no notices whatsoever to SGA, FSA, SSA, or Ameristar, even though the correct address information for the SGA Subsidiaries are included in transactional data from the Settling Defendants and the data produced by SGA. Decl. Gregory J. Casas, ¶ 12; Declaration of Dianne Shay, ¶¶ 3-4. Moreover, SGA's suit against George's and Peco was on file with this Court. (ECF Dkt. No. 2274-1).

On April 15, 2020, the DPPs filed a Notice of Persons and Entities Who Requested Exclusion from the Settlements. (ECF Dkt. No. 3567). That notice was amended on August 26, 2020. (ECF Dkt. No. 3777). The DPPs' Notice of Persons and Entities Who Requested Exclusion does not include SGA or the SGA Subsidiaries, despite SGA's opt-out lawsuit against George's and Peco.

Because SGA and the SGA Subsidiaries did not receive any notice that the Settling Defendants would disregard SGA's opt out and consider SGA and the SGA Subsidiaries among the Settlement Class unless they sent a letter requesting exclusion, SGA was unaware of its purported inclusion in the Settlement Class, the purported need to send a request of exclusion to the Settling Defendants, and the deadlines related thereto. Decl. Gregory J. Casas, ¶ 11. SGA filed a lawsuit opting out of the Direct Purchaser Plaintiff Class, individually and as assignee of the SGA Subsidiaries, and continues to pursue this lawsuit against the Settling Defendants, including

2

George's and Peco. *Id*., ¶¶ 3, 5–11. By way of example, the Settlements include Amick as a settling defendant with the Direct Purchaser Plaintiff Class. However, SGA participated in settlement negotiations with Amick during the opt-out period, then after the close of the opt-out period finalized the settlement and dismissed its opt-out lawsuit against Amick, which was entered on May 7, 2020. (ECF Dkt. No. 3602); Decl. Gregory J. Casas, ¶ 4.

On November 3, 2020, SGA sent settlement demand letters to George's and Peco Foods. Decl. Gregory J. Casas, ¶ 11. On December 1, 2020, George's counsel replied asserting that George's had already settled with SGA and the SGA Subsidiaries as a member of the Direct Purchaser Plaintiff Class. *Id.* This letter was the first communication expressing the Settling Defendants'—or, rather, two of the three Settling Defendants'—view that Direct Action Plaintiffs needed to send the Settling Defendants a letter requesting exclusion from the Settlement Class in order to continue pursuing their direct action lawsuits. *Id*. On December 7, 9, and 14, 2020, SGA's counsel called and spoke with the Claims Administrator requesting where notices were sent, if any, for SGA and the SGA Subsidiaries. *Id*., ¶ 12. The Claims Administrator did not have an answer and said it would look into the issue. *Id*. On January 6, 2021, the Claims Administrator finally responded by email, requesting again the names and addresses of the entities at issue "[i]n order to conduct further research." *Id*. Again, SGA and the SGA Subsidiaries are not aware of any notices being delivered to them, and the Claims Administrator has not provided any indication over the last month that it attempted to send any notices to SGA or the SGA Subsidiaries. *Id*.; Declaration of Dianne Shay, ¶¶ 3–4.

For the reasons stated below, SGA files this notice and motion respectfully requesting that the Court order that the claims of SGA and the SGA Subsidiaries be excluded from the Settlements. If this exclusion requires an adjustment to the amount or terms of the settlement agreement with the DPP class, the settling parties should be free to make such adjustments. For its part, SGA

3

remains interested in resolving this litigation, as indicated in its November 3, 2020 letter to George's and Peco.

## II. Argument

### A. SGA effectively opted out of the Settlement through its litigation conduct during and after the opt-out period.

Courts exercise "considerable flexibility" "in determining what constitutes an effective request for exclusion." *In re Linerboard Antitrust Litig.*, 223 F.R.D. 357, 365 (E.D. Pa.), amended, 223 F.R.D. 370 (E.D. Pa. 2004) (citing *Council on Social Work Education, Inc. v. Texas Instruments*, 105 F.R.D. 68, 71 (N.D. Tex. 1985)). "[C]onsiderable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to exclude himself and any written evidence of it should suffice." *In re Four Seasons Securities Laws Litig.*, 493 F.2d 1288, 1291 (10th Cir. 1974). This "considerably flexible" standard recognizes that potential class members can opt out even if they do not adhere to the form requested by the class action notice. *Plummer v. Chem. Bank*, 668 F.2d 654, 657 n.2 (2d Cir. 1982) ("If proposed class members are to be permitted to opt out, we find nothing in Rule 23 which requires them to file written reasons for their exercise of choice. Any reasonable indication of a desire to opt out should suffice.").

After the initial proposal of a settlement class, SGA and the Settling Defendants continued litigating the opt-out case. SGA sent discovery requests to all defendants, including Peco, George's, and Amick, on December 17, 2019, and another set specifically to Amick in February 6, 2020. Decl. Gregory J. Casas ¶ 6. George's and Peco then sent Requests for Admission and Interrogatories in February and May 2020, respectively. George's and Peco specifically sought responses from the direct action plaintiffs including SGA but excluded the Direct Purchaser Plaintiff Class from these requests due to the settlement, and George's further excluded direct action plaintiffs that did not sue George's. *Id.*, ¶ 8. Despite the Requests for Admissions being sent

4

near the end of the opt-out period and the Interrogatories after the close of the opt-out period, George's and Peco did not specifically exclude any direct action plaintiffs that did not separately send timely opt-out letters. *Id.* SGA sent responses and objections to these Requests for Admission and Interrogatories sent by all defendants, including Peco and George's, on July 15, 2020 and August 24, 2020, respectively. *Id.*

Moreover, SGA participated in settlement negotiations with Amick during the opt-out period and, following the close of the opt-out period, finalized the settlement and dismissed its opt-out lawsuit against Amick. Decl. Gregory J. Casas, ¶ 4; (ECF Dkt. No. 3602). This freestanding settlement was a clear expression of intent not to be part of the Settlement Class. Consistent with the Amick settlement and ongoing opt-out cases against the other Settling Defendants, SGA included George's and Peco, but not Amick, in its list of named defendants in the DAP Consolidated Complaint, filed October 23, 2020. (ECF Dkt. No. 3924, at 31).

Accordingly, the Settling Defendants have been on notice that SGA was not, and did not intend to be, part of the Settlements. SGA adequately opted out of the Settlements, both with respect to its own claims and the assigned claims of the SGA Subsidiaries, because it gave Defendants more than a reasonable indication of its intent to opt out. *See Plummer v. Chem. Bank*, 668 F.2d at 657 n.2.

**B. The Claims Administrator's distribution of class notice concerning the Settlements was deficient and did not comport with due process.**

"Constitutional due process and Federal Rule of Civil Procedure 23(c)(2)(B) require that absent class members receive 'the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011). The provisions of Subdivision (c)(2) are "designed to fulfill the requirements of due process to which the class action procedure is of course

5

subject." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (quoting Advisory Committee Notes to Fed. R. Civ. P. 23). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 174. "The means employed [to provide notice] must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, the Claims Administrator did not send notice of the Settlements to SGA or the SGA Subsidiaries, even though transactional data produced by George's and Peco for the SGA Subsidiaries and the transactional data produced by SGA contains addresses for SGA and the SGA Subsidiaries. Decl. Gregory J. Casas, ¶ 12; Decl. of Dianne Shay, ¶¶ 3–4. In addition, SGA's address is readily located on its website. *See* Decl. of Dianne Shay, ¶ 5. Moreover, SGA had a pending, publicly filed opt-out lawsuit against George's and Peco, which expressly stated was being pursued individually and as assignee of the SGA Subsidiaries, and which contained counsel of record's email and mailing addresses. Despite all of this, the Claims Administrator failed to send a notice to SGA's counsel, or to an address for SGA or the SGA Subsidiaries. Decl. Gregory J. Casas, ¶ 12; Decl. of Dianne Shay, ¶¶ 3–4

SGA has conducted a reasonable investigation and is not aware of anyone in SGA's legal department or leadership team having received class notice from the Claims Administrator in connection with the Settlements. Decl. of Dianne Shay, ¶ 3. Despite repeated attempts by SGA in December 2020 and January 2021 to obtain information from the Claims Administrator, the Claims Administrator has yet to provide any evidence that it tried to notify SGA or the SGA Subsidiaries. Therefore, the Claims Administrator's procedures were not tailored to "readily identif[y] [potential class members] through reasonable effort," as required by Fed. R. Civ. P. 23(c)(2)(B).

Although the Claims Administrator also published a notice, that notice was not sufficient to meet the "best notice practicable" requirement of Fed. R. Civ. P. 23, especially where SGA's address and contact information were reasonably available to the Claims Administrator through the lawsuit filed against George's and Peco, Defendants' own transactional data, and via the internet. See *Silber v. Mabon*, 18 F.3d 1449, 1445 (9th Cir. 1994) ("The only ground stated by Chief Judge Real for denying Argyris's motion to be excluded was that he should have seen the published notice in the Wall Street Journal. The order cannot be upheld on this reason alone because the court cannot simply rely on notice by publication.") (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 319 (1950)). As explained by the Claims Administrator itself, "[t]he United States Supreme Court, in the seminal case of *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974), clearly stated that direct notice (when possible) is the preferred method for reaching a class." Declaration of Jennifer Keough in Supp. of DPPs' Mot. for Prelim. Approval of the Settlements ¶ 15 (Dkt. No. 3325) (Dec. 11, 2019). According to this Court, "[w]here lists of class members and their addresses are readily ascertainable, the court generally demands individual notice" to comply with constitutional due process and Federal Rule of Civil Procedure 23(c)(2)(B). *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011).

Here, the notice procedures were constitutionally deficient. The Claims Administrator did not exercise basic diligence or adhere to its own promises for contacting SGA (and perhaps other DAP plaintiffs). First, JND did not use the Settling Defendants' own transactional data to determine addresses for the SGA Subsidiaries or the data produced by SGA to determine the correct addresses. Second, JND indicated that it would "analyze the data and conduct address research to verify Class Members' mailing addresses, updating as necessary, before mailing the Long Form Notice via first-class U.S. mail," and that for notices returned as undeliverable without a forwarding address, "JND [would] conduct advanced address research . . . ." *Id.* However, JND's

7

procedures failed to identify SGA or the SGA Subsidiaries as potential class members in the first place, and an adequate "verification" and "advanced address research" does not appear to have been conducted. This failure is especially plain when the addresses that JND stated it would use were available from the Settling Defendants' transactional data, SGA's produced transactional data, SGA's own website, and other readily accessible public sources. As a result, the notice process used for the Settlements do not satisfy due process or the requirements of Rule 23.

### C. The Court should permit SGA to opt out of the Settlements.

When examining whether to enlarge the time for a party to submit an opt-out notice, the excusable neglect standard under Fed. R. Civ. P. 6(b)(2) applies. Rule 6(b) states that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time. . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(2). Four factors determine whether a party's neglect is excusable: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential effect on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. See *In re Processed Egg Products Antitrust Litig.*, 130 F. Supp. 3d 945, 952 (E.D. Pa. 2015).

In addition, there are two broad principles that courts take into consideration when addressing the issue of whether the excusable neglect standard is met. First, the origin of Rule 23(c)(2), which provides for the binding effect of a judgment on members of a class who have not expressly requested exclusion, "was to eliminate the practice of waiting to see if the adjudication was favorable to the class before deciding whether to enter it." *Four Seasons*, 493 F.2d at 1291. Second, courts seek to prevent opt outs trying to gain a tactical advantage. *Id.* at 1290 ("There is no indication that the tardiness was part of a strategy designed to get a tactical advantage.").

Here, the above factors favor exclusion of SGA's claims, including those assigned to SGA by the SGA Subsidiaries, from the Settlements. First, there is limited, if any, prejudice to the Settling Defendants and no indication that SGA's opt-out request would have any impact on the Settlements. SGA filed its lawsuit prior to the Settlements and SGA has continued to litigate its dispute with George's and Peco throughout and after the opt-out period. Decl. Gregory J. Casas, ¶¶ 3–11. The same is true for litigation against other DAPs, who received adequate notice of the Settlement and predictably exercised their right to opt out. Settling with the class, therefore, never promised to relieve George's and Peco from the burden of continuing litigating against the DAPs. On the other hand, if George's and Peco "were to avoid defending the lawsuit filed by" SGA because it "mistakenly failed to opt out," George's and Peco "would actually be enjoying an undeserved windfall, because were it not for the mistake," George's and Peco "would have had to litigate against" SGA. *In re Processed Eggs Products Antitrust Litig.*, 130 F. Supp. 3d at 954. "In the context of excusable neglect, when the claimed prejudice is, in reality, the loss of a windfall rather than an affirmative injury to the non-movant, there is no real prejudice to the non-movant." *Id*. "As a result, to find prejudice, courts typically require more than the fact that the defendant will face an additional lawsuit." *Id*.

Second, SGA is requesting a late opt-out for several reasons: (a) SGA did not receive class notice from the Claims Administrator during the opt-out period; (b) as a result, and because SGA was continuing to prosecute its pending direct action claims *and* George's and Peco were continuing to litigate their defenses against SGA, it was not clear what formal opt-out notification was required as to the claims of SGA or those assigned to SGA by the SGA Subsidiaries; and (c) clarity regarding the issue was delayed as a result of intervening disruptions attributable to Covid-19. Decl. Gregory J. Casas, ¶¶ 3–12, Decl. of Dianne Shay, ¶¶ 3–4. *See, e.g., In re Processed Egg Products Antitrust Litig.*, 130 F. Supp. 3d 945 (E.D. Pa. Sept. 14, 2015) (finding excusable neglect

9

where the Kraft direct action plaintiffs' counsel did not appreciate that Kraft needed to submit an opt-out notice even though it had a pending lawsuit).

Third, SGA has acted in good faith. SGA is not waiting to "see if the adjudication was favorable to the class before deciding whether to enter it." *Four Seasons*, 493 F.2d at 1291. Nor is it seeking to obtain some tactical advantage. To the contrary, it is trying to be excluded from the Settlements well before class certification, the close of discovery, or any decision on the merits. SGA's actions in discussing settlement with George's and Peco and effecting a settlement with Amick after the opt-out period demonstrates SGA's good faith and mere excusable neglect in seeking leave to submit a late opt-out notice.

### III. Conclusion

For the reasons stated above, SGA respectfully requests that it be deemed to have opted out of the Settlements with respect to the claims brought by SGA individually and as assignee of the SGA Subsidiaries' claims due to conduct that put the Settling Defendants on notice that it was not participating in the Settlements, and formal request for exclusion. Alternatively, SGA respectfully requests that it be permitted to opt-out at this time because the notice was not adequate as to SGA or the SGA Subsidiaries and failed to deliver on the Claims Administrator's promised method of providing notice, despite ready access to the information necessary to do so. If the Court determines that SGA received proper notice, then any delay was at least excusable neglect under Federal Rule of Civil Procedure 6(b).

Dated: January 19, 2021  Respectfully submitted,

      */s/ Thomas E. Dutton*
John F. Gibbons
Illinois Bar No. 6190493
gibbonsj@gtlaw.com
Thomas E. Dutton
Illinois Bar No. 6195923
duttont@gtlaw.com
GREENBERG TRAURIG, L.L.P.
77 West Wacker Dr. Suite 3100
Chicago, IL 60601
Telephone: 312-456-8400
Fax: 312-456-8435

Gregory J. Casas (admitted *pro hac vice*)
Texas Bar No.: 00787213
casasg@gtlaw.com
Erik Weber (admitted *pro hac vice*)
Texas Bar No.: 240898587
weberer@gtlaw.com
GREENBERG TRAURIG, L.L.P.
300 West Sixth Street, Suite 2050
Austin, Texas 78701-4052
Telephone: 512-320-7200
Fax: 512-320-7210

Dominic E. Draye (admitted *pro hac vice*)
Arizona Bar No. 033012
drayed@gtlaw.com
GREENBERG TRAURIG, L.L.P.
2375 East Camelback Road, Suite 700
Phoenix, AZ 85016
Telephone: 602-445-8000
Fax: 602-445-8100

*Attorneys for Services Group of America, Inc.*

## CERTIFICATE OF SERVICE

I, Erik Weber, hereby certify that a true and correct copy of the foregoing Notice of Opt-Out and Objection to List of Opt-Outs with Respect to the Direct Purchaser Class Plaintiffs' Settlements with George's and Peco Defendants, or in the Alternative, Motion for Late Opt-Out from the Settlements was electronically filed with the Clerk of the Court using the CM/ECF system on January 19, 2021, which constitutes service on counsel of record who are registered electronic filing users.