UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>*Chick-fil-A, Inc. v. Agri Stats, Inc. et al., 20-cv-7205* | No.  1:16-cv-08637<br><br>The Honorable Thomas M. Durkin<br>Magistrate Judge Jeffrey T. Gilbert |

**AMENDED COMPLAINT**

1.      Plaintiff Chick-fil-A, Inc. ("Plaintiff" or "CFA, Inc.") is a Georgia corporation with its principal place of business in Fulton County, Georgia. CFA, Inc. develops and supports a chain of retail quick-service restaurants specializing in a boneless breast of chicken sandwich, known as the Chick-fil-A® Chicken Sandwich.

2.      Since CFA, Inc. was founded by Truett Cathy in 1964, it has endeavored to conduct business with an emphasis on business ethics such as fairness, honesty, loyalty, and respect.

3.      The majority of Chick-fil-A branded restaurant businesses are owned and operated by independent franchisees, known as Operators. CFA, Inc. also operates various Chick-fil-A and other restaurants itself from time to time. Certain affiliates of Chick-fil-A operate certain Dwarf House restaurants and Truett's Grill restaurants, which are licensed to sell Chick-fil-A products. CFA, Inc. has also granted licenses to certain Chick-fil-A licensees. Collectively, these Chick-fil-A branded restaurants make up the "CFA Restaurant Group."

4.      Broiler chicken is the central ingredient in many of the proprietary products served at each Chick-fil-A branded restaurant, which include, but are not limited to, the Chick-fil-A® Chicken Sandwich, the Grilled Chicken Sandwich, the Spicy Chicken Sandwich, and the Chick-fil-A® Nuggets. These proprietary chicken products have directly contributed to the success and

1

growth of the CFA Restaurant Group into one of the nation's largest quick service restaurant chains.

5.      To ensure consistency in taste and quality of products served across multiple locations spanning multiple states, CFA, Inc. negotiated and contracted directly with certain Defendants for the production and supply of its chicken according to CFA, Inc.'s unique recipes and specifications. These negotiations and contracts governed the price at which certain Defendants agreed to supply the CFA Restaurant Group with broiler chicken.

6.      CFA, Inc. provided certain Defendants with instructions regarding each step of the preparation and packaging process for the chicken products sold by the CFA Restaurant Group, including the recipe for those products and specific requirements for packaging and labeling those products.

7.      CFA, Inc. also utilized distributors such as Armada Supply Chain Solutions, LLC and Armada Warehouse Solutions, LLC (collectively "Armada"), Golden State Foods Corp. and Quality Custom Distribution Services, Inc. (collectively "GSF/QCD"), and Meadowbrook Meat Company, Inc. and McLane Foodservice, Inc. (collectively "MBM/McLane"), to serve the CFA Restaurant Group. For purposes of this action, Armada, GSF/QCD, and MBM/McLane have all assigned their claims arising out of these transactions to CFA, Inc.

8.      CFA, Inc. brings this action on its own behalf, and additionally and alternatively, as assignee of Armada, GSF/QCD, MBM/McLane, and their affiliates (collectively "Assignors"). All references in this Complaint to "CFA, Inc." or "Plaintiff" include Chick-fil-A, Inc.'s Assignors.

9.      CFA, Inc. and/or its Assignors purchased billions of dollars worth of broiler chicken from Defendants and/or their co-conspirators throughout the relevant period at prices that

2

were artificially inflated due to the conduct outlined below. As such, CFA, Inc. and the CFA

Restaurant Group sustained injury and damages to their businesses as a proximate result of the

antitrust violations and other unlawful activities alleged in this Complaint.

10.    CFA, Inc. brings this action for damages under the federal antitrust laws against the

defendants identified below and incorporates by reference Direct Action Plaintiffs' Consolidated

Complaint and Demand for Jury Trial [ECF Nos. 3924, 3922] filed in *In re Broiler Chicken*

*Antitrust Litigation*, 1:16-cv-08637 (N.D. Ill.) on October 23, 2020.[1]

11.    CFA, Inc. joins Section II of the Direct Action Plaintiffs' Consolidated Complaint

and Demand for Jury Trial [ECF Nos. 3924, 3922], adding the following to specify CFA, Inc.'s

causes of action and the Defendants and Co-Conspirators in CFA, Inc.'s action.

---

[1] Pursuant to the Court's orders in *In re Broiler Chicken Antitrust Litig.*, 1:16-cv-08637, the Direct-Action Plaintiffs filed "a consolidated complaint" [ECF Nos. 3778, 3652, 3525] containing "all the allegations the Direct-Action Plaintiffs make against all Defendants" on October 23, 2020 [ECF Nos. 3924, 3922]. The Court's orders did not address how DAPs seeking to file new complaints after the filing of Direct Action Plaintiffs' Consolidated Complaint and Demand for Jury Trial should proceed. In an effort to promote efficiency, Plaintiff files this abbreviated pleading that incorporates by reference and adopts the allegations set forth in Direct Action Plaintiffs' Consolidated Complaint and Demand for Jury Trial. If the Court prefers a different form or process, Plaintiff will withdraw this pleading and proceed according to the Court's direction.

| Plaintiff Name | Operative Complaint (Reference is to Sealed Version, if applicable) | Named Defendants (Not Previously Dismissed) | Named-Co-Conspirators (if any) [2] | Causes of Action |
|---|---|---|---|---|
| Chick-fil-A, Inc. | TBD | Agri Stats; Case; Claxton; Foster Farms; Harrison; House of Raeford; Keystone Foods; Koch; Mar-Jac; Mountaire; O.K. Foods; Perdue; Pilgrim's Pride; Sanderson; Simmons; Tyson; Wayne | Amick; Fieldale; George's; Marshall Durbin; Peco | Count I (Sherman Act Claim for all Anticompetitive Conduct); Count II (Sherman Act Claim for Output Restriction, Pled in the Alternative to Count I); Count III (Sherman Act Claim for GA Dock Manipulation, Pled in the Alternative to Count I); Count LIII (Sherman Act Claim for Bid Rigging, Pled in the Alternative to Count I) |

12.     In addition to the above information, CFA, Inc. also adds the following additional count to Direct Action Plaintiffs' Consolidated Complaint and Demand for Jury Trial [ECF Nos. 3924, 3922].

## COUNT LIII
## VIOLATION OF 15 U.S.C. § 1
## (AGAINST CASE, CLAXTON, KOCH, MAR-JAC, PERDUE, PILGRIM'S PRIDE, SIMMONS, TYSON, AND WAYNE FOR BID-RIGGING – PLED IN THE ALTERNATIVE TO COUNT I)

13.     CFA, Inc. incorporates by reference and adopts the allegations set forth in Direct Action Plaintiffs' Consolidated Complaint and Demand for Jury Trial [ECF Nos. 3924, 3922], and the allegations in the superseding indictment returned by the grand jury in *United States v. Jayson*

---

[2] By virtue of Plaintiff previously being a member of the putative class of direct purchasers, Plaintiff was also a member of the settlement classes that were certified with respect to Fieldale Farms Corporation, George's, Inc. and George's Farms, Inc., Peco Foods, Inc., and Amick Farms, LLC. While Plaintiff has not named these corporations as defendants, Plaintiff nonetheless has named these corporations as co-conspirators in order to describe their conduct and contributions to the unlawful conspiracy.

*Jeffrey Penn, et al.*, 20-cv-152 (D. Colo.) [ECF No. 101], on October 6, 2020 (the "Superseding Indictment").

14.     CFA, Inc. maintains a roster of pre-approved suppliers for its chicken products, which over time has included Defendants Claxton, Koch, Mar-Jac, Pilgrim's, Perdue, Simmons, Tyson, and Wayne Farms.

15.     Beginning at least as early as 2012 and continuing at least into 2019 ("Bid-Rigging Conduct Period"), CFA, Inc.'s suppliers engaged in an unlawful and anticompetitive conspiracy to coordinate pricing and rig bids submitted to CFA, Inc. for broiler products, with the purpose and intent to artificially inflate the prices paid by CFA, Inc.

16.     As part of its procurement process, CFA, Inc. expected its suppliers to engage in a competitive bidding process, which when complete, would allow CFA, Inc. to award its purchase volume to the most competitive bidders.

17.     Rather than engage in a competitive bidding process, CFA, Inc.'s suppliers routinely exchanged confidential information with each other regarding bids they were submitting, or intended to submit, so that their supposedly competitive bids were aligned. The suppliers utilized phone calls, text messages, and email communications to carry out this exchange of confidential information. These actions were inherently anticompetitive and undermined CFA, Inc.'s purpose of securing the most favorable and competitive pricing from its suppliers.

18.     By exchanging confidential and competitively sensitive information, CFA, Inc.'s suppliers were able to use that information as a benchmark for their own pricing, thus ensuring that their supposedly competitive bids were aligned. For instance, on or about January 21, 2013, Scott Brady, Vice President of National Accounts at Claxton, emailed Mikell Fries, President of Claxton, to pass on price "overage" information from competitors Perdue, Koch, and Pilgrim's.

19. Again, on or about March 4, 2013,  that contained pricing information received from competitors ▮ ▮ and compared ▮'s pricing against ▮'s pricing.

20. CFA, Inc.'s suppliers' voluntary sharing of their respective confidential pricing information became even more pronounced following CFA, Inc.'s announcement in February 2014 that it planned to serve antibiotic free or No Antibiotic Ever ("NAE") broiler chicken meat at all of its restaurants within the following five years.

21. Indeed, the information sharing related to CFA, Inc.'s transition to NAE chicken is chronicled in the Superseding Indictment, which described conduct that specifically affected a victim identified by the pseudonym QSR-5.

22. CFA, Inc. is the victim identified in the Superseding Indictment by the pseudonym QSR-5.

23. For instance, on or about April 1, 2014, employees of suppliers Claxton, Pilgrim's, and Perdue engaged in multiple phone conversations with one another during which they discussed potential pricing for NAE broiler chicken to be sold to CFA, Inc. Following these conversations, ▮, an employee of Perdue, sent an email to another Perdue employee stating "I also found out that Pilgrim's is going to upcharge approx. $.3124/lb on the ABF product. Claxton will be around the some cost." The Perdue employee responded: "Great info."

24. Approximately two weeks later, on April 18, 2014, Tim Mulrenin, an employee of supplier Tyson, called Scott Brady for approximately 12 minutes. Following that conversation, Brady sent text messages to his superior, Mikell Fries, recapping his call with Mulrenin and reciting Tyson's potential pricing for NAE broiler chicken to be sold to CFA, Inc. In that same

conversation, Brady confirmed to Fries that, in addition to Tyson, he was also coordinating with Perdue and Pilgrim's regarding a potential price for NAE broiler chicken to be sold to CFA, Inc.

25.     The conspiracy to coordinate bids to CFA, Inc. continued into the summer of 2014. From at least July to September 2014, ███████████████████ texted on multiple occasions regarding ████'s conversations with competitors at ████████████████ regarding their pricing and bids to CFA, Inc.

26.     Brady and employees of other CFA, Inc. suppliers continued to exchange their pricing information by email throughout this period, such as on August 7, 2014, when ████ ██████████████████████████████████████████.

27.     Defendants' bid-rigging conspiracy not only continued after 2014, but expanded to include additional CFA, Inc. suppliers. For instance, Defendant Mar-Jac did not begin supplying broiler chicken to CFA, Inc. until 2017. ████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████.

28.     A year later, on August 19, 2016, ███████████████████████ ███████████████████████████████████████. These communications, in furtherance of the conspiracy, occurred in the midst of the bidding period for CFA, Inc.'s 2017 broiler business. ████████████████████████ ████████████████████████████████ ████████████████████████████.

29.     CFA, Inc. was directly and proximately injured by the bid-rigging conduct described above and in the Superseding Indictment.

30.     Defendants' unlawful contract, combination, or conspiracy had the following direct, substantial, and reasonably foreseeable effects on commerce in the United States: (1) prices charged to, and paid by, CFA, Inc. for chicken were artificially raised, fixed, maintained, or stabilized at supra-competitive levels; (2) CFA, Inc. was deprived of the benefits of free, open, and unrestricted competition in the United States chicken market; and (3) competition in establishing the prices paid for chicken in the United States was unlawfully restrained, suppressed, or eliminated.

31.     As a direct and proximate result of Defendants' above-described unlawful conduct, CFA, Inc. paid artificially inflated prices for chicken.

32.     As a direct and proximate result of Defendants' above-described anticompetitive conduct, CFA, Inc. was damaged in its business or property by paying prices for chicken that were higher than they would have been but for Defendants' unlawful conduct, which has resulted in an amount of ascertainable damages to be established at trial.

33.     Defendants' anticompetitive conduct described in this Complaint constitutes a per se violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Alternatively, Defendants' conduct is also unlawful under the Rule of Reason standard of antitrust liability because at all relevant times Defendants possessed significant market power in the market for broilers and their conduct had actual anticompetitive effects with no or insufficient offsetting pro-competitive justifications.

**PRAYER FOR RELIEF**

WHEREFORE, CFA, Inc. respectfully requests that the Court:

A.      Enter joint and several judgments against Defendants in favor of CFA, Inc.;

B.      Award CFA, Inc. damages against Defendants in a joint and several judgment for an amount to be determined at trial to the maximum extent allowed under the claims stated above as well as treble damages, any other enhancement of damages, attorneys' fees, expenses, and costs as provided by law;

C.      Award CFA, Inc. its pre- and post-judgment interest as provided by law, with such interest to be awarded at the highest legal rate;

D.      Award CFA, Inc. its attorneys' fees, litigation expenses, and costs, as provided by law, including the federal antitrust laws; and

E.      Grant CFA, Inc. such other and further relief that the Court may deem just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, CFA, Inc. demands a trial by jury on all issues so triable.

Respectfully Submitted,

Dated: January 28, 2021                    /s/ Matthew J. Calvert
                                           Matthew J. Calvert (admitted *pro hac vice*)
                                           HUNTON ANDREWS KURTH LLP
                                           Bank of America Plaza, Suite 4100
                                           600 Peachtree Street NE
                                           Atlanta, GA 30308
                                           (404) 888-4000
                                           mcalvert@huntonak.com

9

Ryan P. Phair (#479050)
Craig Y. Lee (admitted *pro hac vice*)
Emily K. Bolles (admitted *pro hac vice*)
Christopher C. Brewer (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, D.C. 20037-1701
(202) 955-1500
rphair@huntonak.com
craiglee@huntonak.com
ebolles@huntonak.com
brewerc@huntonak.com

John S. Martin (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4704
(804) 788-8200
marinj@huntonak.com

Julie B. Porter (#6243787)
SALVATORE PRESCOTT PORTER
& PORTER, PLLC
1010 Davis Street
Evanston, IL 60201
(312) 283-5711
porter@sppplaw.com

*Attorneys for Plaintiff Chick-fil-A, Inc.*

10