**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION, | Case No.: 1:16-cv-08637 |
| | The Honorable Thomas M. Durkin |
| This Document Relates To: | |
| THE DIRECT PURCHASER PLAINTIFF ACTION | |

**DECLARATION OF W. JOSEPH BRUCKNER IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENTS WITH DEFENDANTS PILGRIM'S PRIDE CORP., TYSON FOODS, INC., TYSON CHICKEN, INC., TYSON BREEDERS, INC., AND TYSON POULTRY, INC.**

947817.5

I, W. Joseph Bruckner, declare and state as follows:

1.      I am a Partner of the law firm of Lockridge Grindal Nauen P.L.L.P. This Court has appointed my firm, together with Pearson, Simon & Warshaw, LLP, as Interim Co-Lead Counsel for the Direct Purchaser Plaintiff Class ("DPPs") in this litigation.

2.      I submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Settlement Between the Direct Purchaser Plaintiffs and Defendants Pilgrim's Pride Corp. ("Pilgrim's"), and Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Breeders, Inc., and Tyson Poultry, Inc. (collectively, "Tyson") (Pilgrim's and Tyson collectively are referred to as the "Settling Defendants"), filed simultaneously herewith.

3.      On behalf of DPPs, I, my firm, and my Co-Lead Counsel personally conducted settlement negotiations with counsel for Defendant Pilgrim's beginning in December 2020, and with counsel for Defendant Tyson over the course of more than a year. The DPPs and Settling Defendants recently signed the Settlement Agreements.

4.      As counsel for DPPs, we performed a thorough investigation and engaged in extensive discovery prior to reaching the settlements.  These efforts commenced prior to the filing of DPPs' initial complaint and included pre-litigation investigation into Defendants' conduct that formed the basis of the DPPs' complaints.

5.      During the litigation, DPPs obtained responses to multiple sets of interrogatories, and received over 8 million documents in response to their requests for production and third party subpoenas.

6.      DPPs along with other plaintiffs have taken over 100 depositions of the Defendants and third parties.

7.     DPPs have also provided responses to written discovery, produced documents, and appeared for depositions noticed by the Defendants.

8.     DPPs previously settled with Defendant Fieldale Farms Corp. ("Fieldale") for $2.25 million. DPPs also previously settled with Defendants Peco Foods, Inc. ("Peco"), George's, Inc., George's Farms, Inc. (collectively, "George's"), and Amick Farms, LLC ("Amick") for $13,011,600.[1]  For the proposed settlements with Pilgrim's and Tyson, the Settlement Class will recover at a higher rate on a dollar per market share basis than the prior settlements.  Accounting for currently anticipated opt-outs from prior settlements, Tyson and Pilgrim's collectively constitute 37.5% (Settlement Class definition) of commerce sold to DPPs, and will provide the Settlement Class with up to $155 million in monetary relief.  Therefore, these third round Settlements constitute a step-up in damages to a range of approximately $4 million per market share point.  These Settlements bring the total amount recovered by DPPs from settling defendants (past and present) to date to $170,261,600. This is a significant amount of money recovered for the DPP class.

### Settlement Negotiations with Pilgrim's

9.     DPPs' settlement negotiations with Pilgrim's commenced in December 2020.

10.     In December 2020, DPPs and Pilgrim's agreed to a private, confidential mediation with Professor Eric Green, a nationally-renowned mediator. On January 5, 2021, DPPs and Pilgrim's engaged in a full-day face-to-face videoconference mediation with Professor Green. The parties were unable to reach an agreement during the mediation, but after continued discussions reached an agreement shortly thereafter.

---

[1] $4,964,600 from Peco, $4,097,000 from George's, and $3,950,000 from Amick.

11.     Thereafter, the parties continued to negotiate (with the assistance of Professor Green) regarding the settlement terms, ultimately executing a Settlement Agreement on January 19, 2021 (attached hereto as Exhibit "A").

### Settlement Negotiations with Tyson

12.     DPPs' settlement negotiations with Tyson commenced in December 2019.

13.     After engaging in initial discussions the parties agreed to engage Judge Daniel Weinstein (ret.), another nationally renowned mediator.  The settlement negotiations with Tyson were thorough and extensive. With the assistance of Judge Weinstein, DPPs and Tyson exchanged mediation briefs, made presentations addressing the merits of the case, and exchanged settlement offers and demands throughout the course of 2020.  This process included numerous conferences with Judge Weinstein and his team, a face-to-face videoconference mediation, as well as other discussions.  None of these efforts resulted in a settlement, and there were times when it appeared that the parties had reached an impasse.

14.     In December 2020, DPPs and Tyson agreed to a further mediation with Judge Weinstein. On January 6, 2021, DPPs and Tyson engaged in a second full-day face-to-face videoconference mediation with Judge Weinstein. The parties were unable to reach an agreement during the mediation, however the parties continued to negotiate through the mediator.

15.     On Saturday, January 9, 2021, the parties reconvened via face-to-face videoconference with Judge Weinstein and, after hours of further negotiating, reached an agreement.

16.     Thereafter, the parties continued to negotiate (with the assistance of Judge Weinstein) regarding the settlement terms, ultimately executing a Settlement Agreement on January 23, 2021 (attached hereto as Exhibit "B").

17.     During settlement negotiations with the Settling Defendants, the parties debated many issues, and negotiated many terms of the settlements, including the amount of payment, the effect of opt-outs on any settlement, and potential cooperation.

18.     There was no collusion or preference among counsel for the parties at any time during these negotiations. To the contrary, the negotiations were contentious, hard fought, and fully informed. Plaintiffs sought to obtain the greatest monetary benefit possible from each Settling Defendant. Furthermore, throughout the course of both negotiations there was never any discussion or agreement at any time regarding the amount of attorneys' fees Direct Purchaser Plaintiffs' counsel would ask the Court to award in this case.

19.     For each of the proposed settlements, the proposed Settlement Class consists of persons and entities that purchased Broilers from the Defendants during the period from January 1, 2008 to December 20, 2019. DPPs' investigation and discovery has confirmed that there are thousands of persons and entities that fall within the Settlement Class definition.

20.     DPPs have enlisted the services of an experience class action administrator, JND Legal Administration, to administer notice to the Class Members. JND was appointed by the Court in the prior settlements. The details of the proposed class notice program are discussed in our Motion and supporting declaration of Jennifer M. Keough, and essentially mirror the notice program approved by this Court regarding the earlier settlements.

21.     I have practiced law since 1983, I have specialized in antitrust class action law since 1988, and I have prosecuted numerous antitrust class actions as lead counsel or other leadership positions. I have negotiated many settlements during those years. In my opinion, and in that of my Co-Lead Counsel, the proposed settlement agreements with the Settling Defendants are fair,

reasonable, and adequate. The settlements provide substantial benefits to the Settlement Class, and avoids the delay and uncertainty of continuing protracted litigation with the Settling Defendants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this second day of February, 2021 at Minneapolis, Minnesota.


*/s/ W. Joseph Bruckner*
W. Joseph Bruckner

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To:<br><br>DIRECT PURCHASER PLAINTIFF ACTION | Case No. 1:16-cv-08637 |

## LONG-FORM SETTLEMENT AGREEMENT BETWEEN
## DIRECT PURCHASER CLASS PLAINTIFFS AND PILGRIM'S PRIDE

THIS SETTLEMENT AGREEMENT ("Settlement Agreement") is made and entered into as of the 19th day of January, 2021 ("Execution Date") by and between the Direct Purchaser Plaintiffs ("DPPs"),[1] through Interim Co-Lead Counsel (as hereinafter defined) for the proposed Settlement Class (as hereinafter defined), and Pilgrim's Pride Corporation, and all of its predecessors; successors; assigns; affiliates; and any and all past, present, and future parents, owners, subsidiaries, divisions, departments (collectively referred to as "Settling Defendant" or "Pilgrim's") in the above-captioned action (the "Action"). DPPs, on behalf of the Settlement Class, and Pilgrim's are referred to herein collectively as the "Parties" or individually as a "Party."

WHEREAS, DPPs on behalf of themselves and as representatives of the putative class of similarly situated persons or entities allege in the Action, among other things, that Pilgrim's participated in a conspiracy — with other Defendants in this litigation — from at least January 1, 2008 to the present to fix, raise, maintain, and stabilize the price of Broilers.

---

[1] As used herein, "DPPs" means Maplevale Farms, Inc., John Gross and Company, Inc., Ferraro Foods, Inc., Ferraro Foods of North Carolina, LLC, Joe Christiana Food Distributors, Inc., and Cedar Farms Co., Inc.

WHEREAS, Interim Co-Lead Counsel have been appointed by the Court to represent, on an interim basis, the putative class of direct purchasers of Broilers (as hereinafter defined);

WHEREAS, the Parties wish to resolve all claims asserted and all claims that could have been asserted against Pilgrim's in any way arising out of or relating in any way to the direct purchase of Broilers (as hereinafter defined) produced, processed or sold by Pilgrim's or any of the Defendants or their co-conspirators;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations, including mediation with a nationally recognized and highly experienced mediator, on the terms of this Settlement Agreement, and this Settlement Agreement embodies all of the terms and conditions of the settlement;

WHEREAS, DPPs have concluded, after preliminary investigation of the facts and after considering the circumstances and the applicable law, that it is in the best interests of DPPs to enter into this Settlement Agreement with Pilgrim's to avoid the uncertainties of further complex litigation, and to obtain the benefits described herein for the Settlement Class (as hereinafter defined), and, further, that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of DPPs and the Settlement Class;

WHEREAS, Pilgrim's wishes to avoid the costs, expenses, and uncertainties of this complex litigation;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the DPPs be settled and compromised, and dismissed on the merits with prejudice as to Pilgrim's subject to Court approval:

1.  <u>General Definitions</u>.  The terms below and elsewhere in this Settlement Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Settlement Agreement.

a.  "Pilgrim's Released Parties" means Pilgrim's and Pilgrim's' former, current and future parents, subsidiaries and affiliates, and any of the respective former, current and future, direct or indirect trustees, directors, officers, shareholders, managers, members, attorneys, equity holders, agents, insurers and employees of Pilgrim's.  Notwithstanding the foregoing, "Pilgrim's Released Parties" does not include any Defendant other than Pilgrim's named by DPPs in the Action, either explicitly or as a third-party beneficiary.

b.  "Action" means the putative class action filed by DPPs in the above-captioned proceeding.

c.  "Broilers" means chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, raw or cooked, whole or in parts, or as a meat ingredient in a value added product, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards.

d.  "Complaint" means the DPPs' Fifth Amended and Consolidated Class Action Complaint (ECF Nos. 3919 (Redacted) and 3935 (Unredacted)).

e.  "Court" means the United States District Court for the Northern District of Illinois.

f.    "Defendants" means those Defendants named in DPPs' Fifth Amended and Consolidated Class Action Complaint (ECF Nos. 3919 (Redacted) and 3935 (Unredacted)).

g.    "Escrow Account" means the escrow account established with the escrow agent to receive and maintain funds contributed by Pilgrim's for the benefit of the Settlement Class.

h.    "Escrow Agreement" means that certain agreement between the escrow agent that holds the Settlement Fund and DPPs (by and through Interim Co-Lead Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Settlement Class, as set forth in Paragraphs 8 and 9 below.

i.    "Final Approval" means an order and judgment by the Court which finally approves this Settlement Agreement and the settlement pursuant to Federal Rule of Civil Procedure 23 and dismisses Pilgrim's with prejudice from the Action.

j.    "Final Judgment" means the first date upon which both of the following conditions shall have been satisfied: (a) final approval of the Settlement Agreement by the Court ("Final Approval"); and (b) either (1) thirty days have passed from the date of Final Approval with no notice of appeal having been filed with the Court; or (2) Final Approval has been affirmed by a mandate issued by any reviewing court to which any appeal has been taken, and any further petition for review (including certiorari) has been denied, and the time for any further appeal or review of Final Approval has expired.

k.      "Interim Co-Lead Counsel" means Lockridge Grindal Nauen P.L.L.P. and Pearson, Simon & Warshaw, LLP as appointed by the Court on an interim basis to represent the putative class of direct purchasers of Broilers.

l.      "Preliminary Approval" means an order by the Court to preliminarily approve this Settlement Agreement pursuant to Federal Rule of Civil Procedure 23.

m.      "Released Claims" shall have the meaning set forth in Paragraph 14 of this Settlement Agreement.

n.      "Releasing Party" or "Releasing Parties" shall refer individually and collectively, to the Settlement Class and all members of the Settlement Class, including the DPPs, each on behalf of themselves and their respective predecessors and successors; their current and former, direct and indirect parents, subsidiaries and affiliates; their present and former shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, attorneys, insurers, heirs, executors, administrators, devisees, representatives; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and any of their past, present and future agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions; and also means, to the full extent of the power of the signatories hereto to release past, present and future claims, persons or entities acting in a private attorney general, qui tam, taxpayer or any other capacity, whether or not

any of them participate in this Settlement Agreement. As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common ownership or control with, in whole or in part, any of the Releasing Parties.

o.  "Settlement Administrator" means the firm retained to disseminate the Settlement Class Notice and to administer the payment of Settlement Funds to the Settlement Class, subject to approval of the Court.

p.  "Settlement Class" means the class defined in Paragraph 5 below.

q.  "Settlement Class Period" means January 1, 2008 until December 20, 2019.

r.  "Settlement Fund" means $75,000,000 (seventy-five million U.S. dollars), the amount Pilgrim's shall pay or cause to be paid into an interest-bearing Escrow Account maintained by an escrow agent on behalf of the Settlement Class, pursuant to Paragraphs 8 and 9 below.

2.  <u>The Parties' Efforts to Effectuate this Settlement Agreement</u>.  The  Parties will cooperate in good faith and use their best efforts to seek the Court's Preliminary Approval and Final Approval of the Settlement Agreement.

3.  <u>Litigation Standstill</u>.  DPPs through Interim Co-Lead Counsel shall cease all litigation activities against Pilgrim's related to the pursuit of claims against Pilgrim's in the Action. None of the foregoing provisions shall be construed to prohibit DPPs from seeking appropriate discovery from non-settling Defendants or Co-Conspirators or any other person other than Settling Defendant.

4.  <u>Motion for Preliminary Approval</u>.  No later than fourteen (14) days after the Execution Date, DPPs will move the Court for Preliminary Approval of this settlement.  A

reasonable time in advance of submission to the Court, the papers in support of the motion for Preliminary Approval shall be provided by Interim Co-Lead Counsel to Pilgrim's for its review. To the extent that Pilgrim's objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Counsel and the Parties shall meet and confer to resolve any such objection. The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval and certification of the Settlement Class.

5. <u>Certification of a Settlement Class</u>. As part of the motion for Preliminary Approval of this settlement, DPPs shall seek, and Pilgrim's shall take no position with respect to, appointment of Interim Co-Lead Counsel as Settlement Class Counsel for purposes of this settlement and certification in the Action of the following Settlement Class for settlement purposes only:

> All persons who purchased Broilers directly from any of the Defendants or any co-conspirator identified in this action, or their respective subsidiaries or affiliates for use or delivery in the United States from at least as early as January 1, 2008 until December 20, 2019. Specifically excluded from the Settlement Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Settlement Class are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

6. <u>Settlement Class Notices</u>. After Preliminary Approval, and subject to approval by the Court of the means for dissemination:

> a. Individual notice of this settlement shall be mailed, emailed, or otherwise sent by the Settlement Administrator, at the direction of Interim Co-Lead Counsel, to potential members of the Settlement Class, in conformance with a notice plan to be approved by the Court.

b. Neither the Settlement Class, Interim Co-Lead Counsel, nor Pilgrim's shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Settlement Class or obtaining approval of the settlement or administering the settlement. Such fees, costs, or expenses shall be paid solely from the Settlement Fund, subject to any necessary Court approval.

c. Pilgrim's shall not object to Interim Co-Lead Counsel withdrawing from the Settlement Fund, subject to any necessary Court approval, up to $250,000 to pay the costs for notice and for Preliminary Approval and Final Approval of this Settlement Agreement.

d. Interim Co-Lead Counsel shall use best efforts to send out notice to the Settlement Class within 21 days of Preliminary Approval by the Court of the Settlement Agreement. Any costs of notice that Interim Co-Lead Counsel are permitted to withdraw from the Settlement Fund, either pursuant to the Parties' Settlement Agreement or order of the Court, shall be nonrefundable if, for any reason, the Settlement Agreement is terminated according to its terms or is not finally approved by the Court.

7. <u>Motion for Final Approval and Entry of Final Judgment</u>. If the Court grants Preliminary Approval and certifies the Settlement Class, then DPPs, through Interim Co-Lead Counsel — in accordance with the schedule set forth in the Court's Preliminary Approval — shall submit to the Court a separate motion for Final Approval of this Settlement Agreement by the Court. Within a reasonable time in advance of submission to the Court, the papers in support of the motion for Final Approval shall be provided by Interim Co-Lead Counsel to Pilgrim's for its

review.  To the extent that Pilgrim's objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Counsel and the parties shall meet and confer to resolve any such objection.  The motion for Final Approval shall seek entry of an order and Final Judgment:

    a.    Finally approving the Settlement Agreement as being a fair, reasonable, and adequate settlement for the Settlement Class within the meaning of Federal Rules of Civil Procedure 23, and directing the implementation, performance, and consummation of the Settlement Agreement;

    b.    Determining that the Class Notice constituted the best notice practicable under the circumstances of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

    c.    Dismissing the Action with prejudice as to Pilgrim's in all class action complaints asserted by DPPs;

    d.    Discharging and releasing Pilgrim's Released Parties from all Released Claims;

    e.    Reserving continuing and exclusive jurisdiction over the Settlement Agreement for all purposes; and

    f.    Determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Pilgrim's shall be final and appealable and entered forthwith.

The Parties shall take all reasonable steps to obtain Final Approval of the Settlement Agreement.

8.    Escrow Account.  The Escrow Account shall be administered by Interim Co-Lead Counsel for the DPPs and Settlement Class under the Court's continuing supervision and control pursuant to the Escrow Agreement.

9.    Settlement Consideration.  In consideration for the release of Released Claims and the dismissal of the Action, within fourteen (14) business days of the Court's grant of Preliminary Approval, Pilgrim's shall pay or cause to be paid the Settlement Fund of $75,000,000 (seventy-five million dollars) into the Escrow Account.

10.    Cooperation.  Cooperation by Pilgrim's is a material term of this Settlement Agreement and shall include the following categories of cooperation.  All cooperation under this Settlement Agreement is subject to approval (as needed) by the U.S. Department of Justice.

a.    To the extent Pilgrim's were to be afforded leniency or conditional leniency with respect to Broilers pursuant to the U.S. Department of Justice's corporate leniency program, or any similar program, Pilgrim's shall cooperate with the DPPs in a manner that is consistent with the provisions of the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA").

b.    Within twenty-one (21) calendar days after entering into this Settlement Agreement or such other time as the Parties may agree or after any delay requested by the U.S. DOJ, Settling Defendant's counsel shall meet with DPP for seven (7) hours, and more if agreed by Pilgrim's and DPPs, at an agreed upon location and provide at that meeting a reasonably detailed description of the principal facts known to Settling Defendant that are relevant to the alleged conduct at issue in the Action, including facts previously provided to the DOJ or any other government investigative authority in response to subpoenas or otherwise relating to bid-rigging or price fixing involving Broilers.

10

c.      Pilgrim's will use its best efforts to produce up to 3 then-current Pilgrim's employees as witnesses live at trial.

d.      Pilgrim's shall not oppose or object to the depositions of William Lovette, Clint Rivers, Jayson Penn, Fabio Sandri, Tim Stiller, Roger Austin, Gary Rhodes, and Thomas Lane.

e.      To the extent that Pilgrim's responds to discovery, produces documents, or provides proffers or other cooperation to other plaintiffs in the *In re: Broilers Antitrust Litigation* it will serve or otherwise provide DPPs a copy of such materials within 7 days of their production to any other plaintiff.[2]

f.      Pilgrim's agrees to respond to DPPs' questions and otherwise assist DPPs to understand structured data produced by Pilgrim's.

g.      Pilgrim's agrees to use reasonable efforts to authenticate documents and/or things produced in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations, affidavits, depositions, hearings and/or trials as may be necessary for the Action.

h.      Beyond the information to be produced by Pilgrim's in discovery in the above captioned litigation and in this term sheet, Pilgrim's will consider reasonable requests from Interim Co-Lead Counsel, taking into account the information it has or will produce in discovery, and whether providing the requested information will be burdensome, or will otherwise increase

---

[2] This information shall include but is not limited to documents relating to competition in the Broilers industry that Defendant produced to the Department of Justice, Federal Trade Commission, U.S. Department of Agriculture, Commodities Futures Trading Commission, U.S. Securities & Exchange Commission, states' attorneys general, or other government agencies or regulators.

the cost of, or compromise, its defense of the Action against other plaintiffs.

11.     <u>Qualified Settlement Fund</u>.  The Parties agree to treat the Settlement Fund as being at all times a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.  In addition, Interim Co-Lead Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 13, including the relation-back election (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of Interim Co-Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.  All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Funds being a "Qualified Settlement Fund" within the meaning of Treas. Reg. § 1.4688-1.  Interim Co-Lead Counsel shall timely and properly file all information and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)).  Such returns shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund.  Pilgrim's shall not be responsible for the filing or payment of any taxes or expenses connected to the Qualified Settlement Fund.

12.     <u>Distribution of Settlement Fund to Settlement Class</u>.  Members of the Settlement Class shall be entitled to look solely to the Settlement Fund for settlement and satisfaction against the Pilgrim's Released Parties for the Released Claims, and shall not be entitled to any other payment or relief from the Pilgrim's Released Parties.  Except as provided by order of the Court,

no member of the Settlement Class shall have any interest in the Settlement Fund or any portion thereof. DPPs, members of the Settlement Class, and their counsel will be reimbursed and indemnified solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and expenses and the costs of notice of the Settlement Agreement to potential members of the Settlement Class. Pilgrim's and the other Pilgrim's Released Parties shall not be liable for any costs, fees, or expenses of any of DPPs' and Interim Co-Lead Counsel's attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund.

13. <u>Fee Awards, Costs and Expenses, and Incentive Payments to DPPs</u>: Subject to Interim Co-Lead Counsel's sole discretion as to timing, Interim Co-Lead Counsel will apply to the Court for a fee award, plus expenses, and costs incurred, and incentive payments to the DPPs to be paid from the proceeds of the Settlement Fund. Pilgrim's shall have no responsibility, financial obligation, or liability for any such fees, costs, or expenses beyond the Settlement Fund.

14. <u>Release</u>. Upon Final Judgment, the Releasing Parties shall completely release, acquit, and forever discharge the Pilgrim's Released Parties from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any member of the Settlement Class has objected to the Settlement Agreement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now have, or hereafter can, shall, or may ever have, that exist as of the date of the order granting Preliminary Approval, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, losses, damages, and the consequences thereof that have been asserted, or could have been asserted, under federal

or state law in any way arising out of or relating in any way to the direct purchase of Broilers produced, processed or sold by Pilgrim's or any of the Defendants or their co-conspirators, and purchased directly by the Releasing Parties (the "Released Claims").  Notwithstanding the above, "Released Claims" do not include (i) claims asserted against any Defendant or co-conspirator other than the Pilgrim's Released Parties nor (ii) any claims wholly unrelated to the allegations in the Action that are based on breach of contract, any negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claim.  This reservation of claims set forth in (i) and (ii) of this paragraph does not impair or diminish the right of the Pilgrim's Released Parties to assert any and all defenses to such claims.  During the period after the expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior to Final Judgment, all Releasing Parties who have not submitted a valid request to be excluded from the Settlement Class shall be preliminarily enjoined and barred from asserting any Released Claims against the Pilgrim's Released Parties. The release of the Released Claims will become effective as to all Releasing Parties upon Final Judgment. Upon Final Judgment, the Releasing Parties further agree that they will not file any other suit against the Pilgrim's Released Parties arising out of or relating to the Released Claims.

15.  <u>Further Release</u>.  In addition to the provisions of Paragraph 14, the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY

AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 14, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties have agreed to release pursuant to Paragraph 14, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

16.     <u>Non-Disparagement</u>: The Parties agree they will not disparage the Action or one another, such as by making public statements that this lawsuit was frivolous, and instead will confine their public comments to essentially the following: "The parties have agreed to resolve this matter.  Pilgrim's has not admitted any liability concerning and continues to deny the legal claims alleged in Plaintiffs' complaint, while Plaintiffs believe they would have prevailed."

17.     This Settlement Agreement shall not be construed as an admission of liability, or used as evidence of liability, for any purpose in any legal proceeding, claim, regulatory proceeding, or government investigation.

18.     This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein when executed.

19.     <u>Settlement Reduction.</u>

a.      The parties have agreed in a separate Confidential Letter Agreement that summarizes the dollar value of each customer's direct purchases of Broilers from the Settling

Defendant during the Settlement Class Period for purposes of this Settlement Agreement. The Parties also identified in their Confidential Letter Agreement each person that is known to have (1) opted out of a prior settlement with another Defendant, or (2) filed a direct action complaint related to this Action (collectively "Current Opt-Out List"). The Parties will add up the total value of all sales by Settling Defendant to all customers on the Current Opt-Out List, divide that value by the total of all sales by Settling Defendant to all of its customers during the Settlement Class Period (the "Current Customer List"), and convert that resulting number to a percentage by multiplying by 100 ("Current Opt-Out Percentage"). The Current Opt-Out Percentage shall include the value of all sales by Settling Defendant to any person on the Current Opt-Out List who has an assignment(s) from any other person, including those not on the Current Opt-Out List.

b.      After the deadline for filing timely exclusions from the Settlement Class has passed, Interim Co-Lead Counsel shall provide counsel for Settling Defendant with a list of persons that have timely requested exclusion from the Settlement Class (the "Actual Opt-Out List"). The parties will use the value of purchases from Settling Defendant for those on the Actual Opt-Out List contained in the Current Opt-Out List or, for customers not on the Current Opt-Out List, the Current Customer List. The Parties will add up the total value of all sales by Settling Defendant to all customers on the Actual Opt-Out List (including any assignment(s) from any other persons), divide that value by the total value of all sales by the Settling Defendant contained on the Current Customer List, and convert that resulting number to a percentage by multiplying by 100 ("Actual Opt-Out Percentage").

c.      If the Actual Opt-Out Percentage exceeds 3.0% over the Current Opt-Out Percentage, then the Settlement Amount shall be reduced by 85 cents for each $1 of sales

excluded from the Settlement Class above the 3.0% threshold. By way of example, if the ultimate agreed upon Current Opt-Out Percentage is 63%, then if the Actual Opt-Out Percentage is 70%, the following formula would be used to reduce the Settlement Amount: 0.85 * ((Opt-Out Sales/Total Sales) – 0.66) (The foregoing shall be referred to as the "Settlement Reduction"). The Settlement Reduction in this example would be 3.4% of the Settlement Amount and the Settlement Amount would be reduced by $2,550,000 to $72,450,000.

20. <u>Effect of Disapproval</u>. If the Court does not certify the Settlement Class as defined in this Settlement Agreement, or if the Court does not approve this Settlement Agreement in all material respects, or if the Court does not enter Final Approval as provided for in Paragraph 7 herein, or if any judgment approving this Settlement Agreement is materially modified or set aside on appeal, or if all of the conditions for Final Judgment do not occur as set forth in Paragraph 1(h) of this Settlement Agreement, then this Settlement Agreement may be cancelled and terminated by Pilgrim's or DPPs on behalf of the Settlement Class. If cancelled and terminated, this Settlement Agreement shall become null and void, and, with the exception of any Settlement Funds used for notice purposes pursuant to Paragraph 6(c), in the event the settlement is not preliminarily or finally approved by the Court, all other funds in the Escrow Account shall be returned to Pilgrim's and the Parties' position shall be returned to the status quo ante.

21. <u>Choice of Law and Dispute Resolution</u>. Any disputes relating to the Parties' agreement shall be governed by Illinois law without regard to conflicts of law provisions. Subject to Court approval, the United States District Court for the Northern District of Illinois shall retain jurisdiction over the implementation, enforcement, and performance of this Settlement Agreement and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement

Agreement that cannot be resolved by negotiation and agreement by DPPs and Pilgrim's, including mediation with Eric Green of Resolutions LLC.

22. <u>Consent to Jurisdiction</u>. The Parties and any Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of Paragraph 14 or 15, including but not limited to, any suit, action, or proceeding in which the provisions of Paragraph 14 or 15 are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Settlement Agreement. In the event that the provisions of Paragraph 14 or 15 are asserted by any Pilgrim's Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such Pilgrim's Released Party shall be entitled to a stay of that suit, action, or proceeding until the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Parties and any Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the in personam jurisdiction of the Court. Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Settlement Agreement.

23. <u>Class Action Fairness Act</u>. Within ten (10) days of filing of this Settlement Agreement in court with the abovementioned motion for preliminary approval, Pilgrim's, at its

sole expense, shall serve upon appropriate Federal and State officials all materials required pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and shall confirm to DPPs' Interim Co-Lead Counsel that such notices have been served.

24.     Costs Relating to Administration.  The Pilgrim's Released Parties shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Funds.

25.     Binding Effect.  This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein.  This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Settlement Class Members, the Releasing Parties, and the Pilgrim's Released Parties.  Without limiting the generality of the foregoing, upon certification of the Settlement Class and Final Approval, each and every covenant and agreement herein by the DPPs shall be binding upon all members and potential members of the Settlement Class and Releasing Parties who have not validly excluded themselves from the Settlement Class.

26.     Sole Remedy.  This Settlement Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any Pilgrim's Released Party, and upon entry of Final Judgment, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any Pilgrim's Released Party.

27.     Counsel's Express Authority.  Each counsel signing this Settlement Agreement on behalf of a Party or Parties has full and express authority to enter into all of the terms reflected herein on behalf of each and every one of the clients for which counsel is signing.

28.     It is agreed that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Parties' agreement or for any other purpose with respect to implementing or enforcing this Settlement Agreement.

29.     <u>Notices</u>.  All notices under this Settlement Agreement shall be in writing.  Each such notice shall be given either by: (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express or similar overnight courier, and, in the case of either (a), (b) or (c) shall be addressed:

If directed to DPPs, the Settlement Class, or any member of the Settlement Class, to:

W. Joseph Bruckner
Brian D. Clark
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401

Clifford H. Pearson
Bobby Pouya
PEARSON, SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403

If directed to the Pilgrim's, to:

Carrie C. Mahan
Christopher J. Abbott
WEIL GOTSHAL & MANGES LLP
2001 M Street N.W., Ste. 600
Washington, D.C. 20036

or such other address as the Parties may designate, from time to time, by giving notice to all parties hereto in the manner described in this Paragraph.

30.     <u>No Admission</u>.  Whether or not Final Judgment is entered or this Settlement Agreement is terminated, the Parties expressly agree that this Settlement Agreement and its contents, and any and all statements, negotiations, documents, and discussions associated with it,

are not and shall not be deemed or construed to be an admission of liability by any Party or Pilgrim's Released Party.

31.     No Third-Party Beneficiaries.  Except as provided in Paragraph 38, no provision of this Settlement Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Pilgrim's Released Party, DPP, member of the Settlement Class, or Interim Co-Lead Counsel.

32.     No Party is the Drafter.  None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

33.     Amendment and Waiver.  This Settlement Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party.  The waiver by any Party of any particular breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement.  This Settlement Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Settlement Agreement.  Any breach of this Settlement Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law.  Accordingly, in addition to any other remedies and damages available, the  Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

34. <u>Execution in Counterparts</u>. This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement. Facsimile or Electronic Mail signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

35. <u>Integrated Agreement</u>. This Settlement Agreement (including all Exhibits) comprises the entire, complete, and integrated agreement between the Parties, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between the Parties. The Parties agree that this Settlement Agreement may be modified only by a written instrument signed by the Parties and that no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

36. <u>Voluntary Settlement</u>. The Parties agree that this Settlement Agreement was negotiated in good faith by the Parties, and reflects a settlement that was reached voluntarily after consultation with competent counsel and the participation of a neutral mediator, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

37. <u>Confidentiality</u>. The Parties agree to continue to maintain the confidentiality of all settlement discussions, and materials exchanged during the settlement negotiation. However, Pilgrim's and DPPs can inform other parties to this Action that they have reached a settlement agreement, the amount of the settlement, and the cooperation provided for in this Settlement Agreement. Notwithstanding anything in this paragraph:

a. Except as described below, the confidential side letter described in Paragraph 19 is to be kept confidential and not disclosed to other Parties to this Action, unless

22

requested by the Court for *in camera* review in connection with approval of the Parties' Settlement Agreement;

b.  Except as described below, neither DPPs nor Interim Co-Lead Counsel shall share any information learned pursuant to Paragraph 10 above with other plaintiffs or plaintiffs' counsel in this Action or others investigating or pursuing claims similar to this Action; and

c.  Notwithstanding anything in this paragraph, the following disclosures are permitted: (1) in order to comply with the obligations set out in Paragraph 23 above, Settling Defendant may share a copy of this Settlement Agreement (and, as necessary, the confidential side letter described in Paragraph 19) with governmental authorities; (2) if necessary to comply with an investigation by any governmental authority investigating claims similar to this Action, either Party may share a copy of this Settlement Agreement (and the confidential side letter described in Paragraph 19) to such governmental authority; and (3) if necessary to permit this Settlement Agreement to be treated as a Qualified Settlement Agreement pursuant to Defendants' Agreement described in Paragraph 38, Settling Defendant may share a copy of this Settlement Agreement (and the confidential side letter described in Paragraph 19) with the parties to Defendants' Agreement.

38.  DPPs have been provided with a copy of the agreement entered into by Defendants dated February 25, 2020 (hereinafter referred to as "Defendants' Agreement"). The defined terms in Defendants' Agreement shall have the same meaning when used in this Settlement Agreement. DPPs agree that notwithstanding anything to the contrary contained in this Settlement Agreement, DPPs shall reduce the dollar amount collectable from the parties to the Defendants' Agreement

pursuant to any Final Judgment by a percentage equal to the Sharing Percentage of Pilgrim's, calculated pursuant to Section 4 and Exhibits A and B of Defendants' Agreement (as illustrated by the Appendix to Defendants' Agreement) as if Pilgrim's had not settled, had been found liable on the claim, and was a Sharing Party with respect to the Final Judgment. DPPs agree that this undertaking is also for the benefit of any Defendant that is a party to the Defendants' Agreement and that this undertaking may be enforced by any or all of such Defendants as third party beneficiaries hereof. Any ambiguity in this Paragraph 38 or inconsistency between this Settlement Agreement and the Defendants' Agreement shall be resolved in favor of the Defendants' Agreement, including, without limitation, Sections 6.D.1 and 6.D.2 thereof. DPPs further represent and warrant that they have not reached any agreement to provide any portion of the settlement proceeds provided hereunder to any person or entity that is not explicitly identified as a releasor in this Settlement Agreement, except for proceeds received by DPPs' attorneys for payment of attorneys' fees.

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized representatives, enter into this Settlement Agreement on the date first above written.

Dated: January 19, 2021

W. Joseph Bruckner (*Pro Hac Vice*)
Brian D. Clark (*Pro Hac Vice*)
Simeon A. Morbey (*Pro Hac Vice*)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T:  (612) 339-6900
F:  (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
samorbey@locklaw.com

Dated: 1/19/2021

Clifford H. Pearson (*Pro Hac Vice*)
Daniel L. Warshaw (*Pro Hac Vice*)
Thomas J. Nolan (*Pro Hac Vice*)
Bobby Pouya (*Pro Hac Vice*)
Michael H. Pearson (*Pro Hac Vice*)
PEARSON SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
T: (818) 788-8300
F: (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
tnolan@pswlaw.com
bpouya@pswlaw.com
mpearson@pswlaw.com

Bruce L. Simon (*Pro Hac Vice*)
PEARSON, SIMON & WARSHAW, LLP
350 Sansome Street, Suite 680
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com

*Interim Co-Lead Counsel for the Direct
Purchaser Plaintiff Class*

_(signature)_                                         Dated: 1/19/2021

Carrie C. Mahan (#459802)
Christopher J. Abbott (#1014487)
WEIL GOTSHAL & MANGES LLP
2001 M Street N.W., Suite 600
Washington, D.C. 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
carrie.mahan@weil.com
christopher.abbott@weil.com

_Counsel for Pilgrim's Pride Corporation_

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To:<br><br>DIRECT PURCHASER PLAINTIFF ACTION | Case No. 1:16-cv-08637 |

## LONG-FORM SETTLEMENT AGREEMENT BETWEEN
## DIRECT PURCHASER CLASS PLAINTIFFS AND TYSON FOODS

THIS SETTLEMENT AGREEMENT, ("Settlement Agreement") is made and entered into as of the 23rd day of January, 2021 ("Execution Date") by and between the Direct Purchaser Plaintiffs ("DPPs"),[1] through Interim Co-Lead Counsel (as hereinafter defined) for the proposed Settlement Class (as hereinafter defined), and Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Breeders, Inc., Tyson Poultry, Inc. and all of their predecessors; successors; assigns; Affiliates (as hereinafter defined) (including without limitation any affiliates who are alleged co-conspirators); and any and all past, present, and future parents, owners, subsidiaries, divisions, departments (collectively referred to as "Settling Defendant" or "Tyson") in the above-captioned action (the "Action"). DPPs, on behalf of the Settlement Class (as hereinafter defined), and Tyson are referred to herein collectively as the "Parties" or individually as a "Party."

WHEREAS, DPPs on behalf of themselves and as representatives of the putative class of similarly situated persons or entities allege in the Action, among other things, that Tyson

---

[1] As used herein, "DPPs" means Maplevale Farms, Inc., John Gross and Company, Inc., Ferraro Foods, Inc., Ferraro Foods of North Carolina, LLC, Joe Christiana Food Distributors, Inc., and Cedar Farms Co., Inc.

participated in a conspiracy — with other Defendants and alleged non-Defendant co-conspirators in the Action — from at least January 1, 2008 to the present to fix, raise, maintain, and stabilize the price of Broilers (as hereinafter defined);

WHEREAS, Interim Co-Lead Counsel (as hereinafter defined) have been appointed by the Court to represent, on an interim basis, the putative class of direct purchasers of Broilers (as hereinafter defined);

WHEREAS, the Parties wish to resolve all claims asserted and all claims that could have been asserted against Tyson in any way arising out of or relating in any way to the direct purchase of Broilers (as hereinafter defined) produced, processed or sold by Tyson or any of the Defendants or their alleged co-conspirators;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations, including mediation with a nationally recognized and highly experienced mediator, on the terms of this Settlement Agreement, and this Settlement Agreement embodies all of the terms and conditions of the Parties' settlement;

WHEREAS, DPPs have concluded, after preliminary investigation of the facts and after considering the circumstances and the applicable law, that it is in the best interests of DPPs to enter into this Settlement Agreement with Tyson to avoid the uncertainties of further complex litigation, and to obtain the benefits described herein for the Settlement Class (as hereinafter defined), and, further, that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of DPPs and the Settlement Class;

WHEREAS, DPPs and Interim Co-Lead Counsel (as hereinafter defined) believe that the Settlement Fund (as hereinafter defined) reflects fair, reasonable and adequate compensation for

the Settlement Class (as hereinafter defined) to release, settle and discharge their claims that they were overcharged by the alleged anticompetitive conduct of which Tyson is accused;

WHEREAS, Tyson, notwithstanding its belief that it has legitimate defenses to any claims that could be asserted by DPPs against it, enters into this Settlement Agreement to avoid the costs, expenses, and uncertainties of this complex litigation, and thereby put a rest to this controversy;

WHEREAS, DPPs, notwithstanding their belief that they would ultimately prevail at trial and establish liability by Tyson, for the conspiracy they have alleged, enter into this Settlement Agreement to avoid the costs, expenses, and uncertainties of this complex litigation; and

WHEREAS, both Parties wish to preserve all arguments, defenses and responses to all claims in the Action, including any arguments, defenses and responses to any proposed litigation class proposed by DPPs in the event this Settlement Agreement does not obtain Final Approval;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the DPPs be settled, compromised, and dismissed on the merits with prejudice as to Tyson subject to Court approval and that Tyson be forever fully discharged and released from any and all claims covered by this Settlement Agreement:

1. <u>General Definitions</u>. The terms below and elsewhere in this Settlement Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Settlement Agreement.

   a. "Tyson Released Parties" means Tyson (as defined above) together with any and all of Tyson's past, current, and future, direct and indirect corporate parents (including holding companies), subsidiaries, related entities, Affiliates, associates, divisions, joint ventures, predecessors, successors and

each of their respective past or present, direct or indirect, officers, directors, trustees, partners, managing directors, shareholders, managers, members, attorneys, equity holders, agents, beneficiaries, executors, insurers, advisors, assigns, heirs, legal or other representatives. Notwithstanding the foregoing, "Tyson Released Parties" does not include any Defendant other than Tyson named by DPPs in the Action, either explicitly or as a third-party beneficiary. For the avoidance of doubt, Keystone Foods LLC; Keystone Foods Corporation; Equity Group Eufaula Division, LLC; Equity Group Kentucky Division LLC; and Equity Group – Georgia Division LLC are "Tyson Released Parties" under this Settlement Agreement.

b.  "Action" means the putative class action filed by DPPs in the above-captioned proceeding.

c.  "Affiliate" means with respect to any person, entity or company, an person, entity, or company that, directly or indirectly, controls, is controlled by or is under common control with such person, entity or company.

d.  "Broilers" means chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, raw or cooked, whole or in parts, or as a meat ingredient in a value added product, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards.

e.  "Complaint" means the DPPs' Fifth Amended and Consolidated Class Action Complaint (ECF Nos. 3919 (Redacted) and 3935 (Unredacted)).

f.    "Court" means the United States District Court for the Northern District of Illinois and the Honorable Thomas M. Durkin or his successor, or any other court in which the Action is proceeding.

g.    "Defendants" means those Defendants named in DPPs' Fifth Amended and Consolidated Class Action Complaint (ECF Nos. 3919 (Redacted) and 3935 (Unredacted)).

h.    "Escrow Account" means the escrow account established with the escrow agent to receive and maintain funds contributed by Tyson for the benefit of the Settlement Class.

i.    "Escrow Agreement" means that certain agreement between the escrow agent that holds the Settlement Fund and DPPs (by and through Interim Co-Lead Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Settlement Class, as set forth in Paragraphs 8 and 9 below.

j.    "Fairness Hearing" means a hearing by the Court to determine whether the Settlement Agreement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

k.    "Final Approval" means an order and judgment by the Court which finally approves this Settlement Agreement, including all of its material terms and conditions without modification, and the settlement pursuant to Federal Rule of Civil Procedure 23 and dismisses Tyson with prejudice from the Action.

l.    "Final Judgment" means the first date upon which both of the following conditions shall have been satisfied: (a) final approval of the Settlement Agreement by the Court ("Final Approval"); and (b) either (1) no appeal or petition to seek permission to appeal the Court's approval of the Final Judgment has been made within the time for filing or noticing any appeal under the Federal Rules of Appellate Procedure, *i.e.*, thirty days after entry of the Final Judgment; or (2) if any timely appeals from the Final Approval or notices of appeal from the Final Approval are filed, (i) the date of final dismissal of all such appeals or the final dismissal of any proceeding on certiorari or otherwise or (ii) the date the Final Judgment is finally affirmed on appeal and affirmance is no longer subject to further appeal or review.

m.    "Interim Co-Lead Counsel" means Lockridge Grindal Nauen P.L.L.P. and Pearson, Simon & Warshaw, LLP as appointed by the Court on an interim basis to represent the putative class of direct purchasers of Broilers.

n.    "Preliminary Approval" means an order by the Court to preliminarily approve this Settlement Agreement pursuant to Federal Rule of Civil Procedure 23.

o.    "Released Claims" shall have the meaning set forth in Paragraph 14 of this Agreement.

p.    "Releasing Party" or "Releasing Parties" shall refer individually and collectively, to DPPs, the Settlement Class, and all members of the Settlement Class, including the DPPs, each on behalf of themselves and their respective predecessors, successors, and all of their respective past,

present and future (i) direct and indirect parents, subsidiaries, associates and Affiliates, (ii) agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions, and (iii) shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, insurers, heirs, executors, administrators, devisees, representatives; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and also means, to the full extent of the power of the signatories hereto to release past, present and future claims, persons or entities acting in a private attorney general, qui tam, taxpayer or any other capacity, whether or not any of them participate in this Settlement Agreement.

q.      "Settlement Administrator" means the firm retained to disseminate the Settlement Class Notice and to administer the payment of Settlement Funds to the Settlement Class, subject to approval of the Court.

r.      "Settlement Class" means the class defined in Paragraph 5 below excluding all persons who file a valid request for exclusion from the Settlement Agreement.

s.      "Settlement Class Notice" means any notice sent to the Settlement Class pursuant to Preliminary Approval or otherwise approved by the Court pursuant to Federal Rule of Civil Procedure 23.

t.      "Settlement Class Period" means January 1, 2008 until December 20, 2019.

u.      "Settlement Fund" means $80,000,000 (eighty-million U.S. dollars), the amount Tyson shall pay or cause to be paid into an interest-bearing Escrow Account maintained by an escrow agent on behalf of the Settlement Class, pursuant to Paragraphs 8 and 9 below, as well as any interest accruing within such interest-bearing Escrow Account.

2.      <u>The Parties' Efforts to Effectuate this Settlement Agreement</u>.  The Parties will cooperate in good faith and use their best efforts to seek the Court's Preliminary Approval and Final Approval of the Settlement Agreement.

3.      <u>Litigation Standstill</u>.  DPPs shall cease all litigation activities against Tyson in the Action except to the extent expressly authorized in this Settlement Agreement. Tyson and its counsel shall cease all litigation activities against DPPs in the Action, except in connection with defending the depositions provided for in Paragraph 10(d) below.  None of the foregoing provisions shall be construed to prohibit DPPs from seeking appropriate discovery from non-settling Defendants or co-conspirators or any other person other than Settling Defendant.

4.      <u>Motion for Preliminary Approval</u>.  No later than fourteen (14) days after the Execution Date, DPPs will move the Court for Preliminary Approval of this Settlement Agreement.  A reasonable time in advance of submission to the Court, the papers in support of the motion for Preliminary Approval shall be provided by Interim Co-Lead Counsel to Tyson for its review.  To the extent that Tyson objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Counsel and the Parties shall meet and confer to resolve any such objection.  The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval and certification of the Settlement Class for purposes of effectuating this Settlement Agreement.

5.      <u>Certification of a Settlement Class</u>.  As part of the motion for Preliminary Approval of this Settlement Agreement, DPPs shall seek, and Tyson shall take no position with respect to, appointment of Interim Co-Lead Counsel as Settlement Class Counsel for purposes of this Settlement Agreement and certification in the Action of the following Settlement Class for settlement purposes only:

> All persons who purchased Broilers directly from any of the Defendants or any co-conspirator identified in this action, or their respective subsidiaries or affiliates for use or delivery in the United States from at least as early as January 1, 2008 until December 20, 2019.  Specifically excluded from the Settlement Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Settlement Class are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

6.      <u>Settlement Class Notices</u>.  After Preliminary Approval, and subject to approval by the Court of the means for dissemination:

a.      Individual notice of this settlement shall be mailed, emailed, or otherwise sent by the Settlement Administrator, at the direction of Interim Co-Lead Counsel, to potential members of the Settlement Class, in conformance with a notice plan to be approved by the Court.

b.      Neither the Settlement Class, Interim Co-Lead Counsel, nor Tyson shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Settlement Class or obtaining approval of the settlement or administering the settlement.  Such fees, costs, or expenses shall be paid solely from the Settlement Fund, subject to any necessary Court approval.

c.    Tyson shall not object to Interim Co-Lead Counsel withdrawing from the Settlement Fund, subject to any necessary Court approval, up to $250,000 to pay the costs for notice and for Preliminary Approval and Final Approval of this Settlement Agreement.

d.    Interim Co-Lead Counsel shall use best efforts to send out notice to the Settlement Class within 21 days of Preliminary Approval. Any costs of notice that Interim Co-Lead Counsel are permitted to withdraw from the Settlement Fund up to $250,000, either pursuant to the Parties' Settlement Agreement or order of the Court, shall be nonrefundable if, for any reason, the Settlement Agreement is terminated according to its terms or Final Approval is not obtained.

7.    <u>Motion for Final Approval and Entry of Final Judgment</u>. If the Court grants Preliminary Approval and preliminarily certifies the Settlement Class, then DPPs, through Interim Co-Lead Counsel — in accordance with the schedule set forth in the Court's Preliminary Approval — shall submit to the Court a separate motion for Final Approval of this Settlement Agreement by the Court. A reasonable time in advance of submission to the Court, the papers in support of the motion for Final Approval shall be provided by Interim Co-Lead Counsel to Tyson for its review. To the extent that Tyson objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Counsel and the Parties shall meet and confer to resolve any such objection. The motion for Final Approval shall seek entry of an order and Final Judgment:

a.    Finally approving the Settlement Agreement as being a fair, reasonable, and adequate settlement for the Settlement Class within the meaning of Federal Rules of Civil Procedure 23, and directing the implementation,

performance, and consummation of the Settlement Agreement and its material terms and conditions, without material modification of those terms and conditions;

b.     Determining that the Settlement Class Notice constituted the best notice practicable under the circumstances of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

c.     Dismissing the Action with prejudice as to Tyson in all class action complaints asserted by DPPs without further costs or fees;

d.     Discharging and releasing Tyson Released Parties from all Released Claims;

e.     Enjoining DPPs from suing, directly or indirectly, any of the Tyson Released Parties for any of the Released Claims;

f.     Confirming that Tyson has provided the appropriate notice pursuant to the Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* ("CAFA");

g.     Reserving continuing and exclusive jurisdiction over the Settlement Agreement for all purposes; and

h.     Determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Tyson shall be final and appealable and entered forthwith.

The Parties shall use all best efforts to obtain Final Approval of the Settlement Agreement without modification to any of its material terms and conditions.

11

8. <u>Escrow Account</u>. The Escrow Account shall be administered by Interim Co-Lead Counsel for the DPPs and Settlement Class under the Court's continuing supervision and control pursuant to the Escrow Agreement.

9. <u>Settlement Consideration</u>. In consideration for the release of Released Claims, the dismissal of the Action, and the other material terms and conditions herein, within fourteen (14) days of the Court's grant of Preliminary Approval or after Interim Co-Lead Counsel have provided wire instructions to Tyson, whichever occurs later, Tyson shall pay or cause to be paid the Settlement Fund of $80,000,000 (eighty-million U.S. dollars) into the Escrow Account.

10. <u>Cooperation</u>. Cooperation by Tyson is a material term of the Settlement Agreement and shall include the following categories of cooperation. All cooperation under the Settlement Agreement is subject to approval (as needed) by the U.S. Department of Justice.

a. To the extent Tyson were to be afforded leniency or conditional leniency with respect to Broilers pursuant to the U.S. Department of Justice's corporate leniency program, or any similar program, Tyson shall cooperate with the DPPs in a manner that is consistent with the provisions of the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA"), in addition to any and all cooperation obligations in the Settlement Agreement.

b. By January 31, 2021, or such other time as the Parties may agree, Settling Defendant's counsel shall meet with DPPs for seven (7) hours, and more if agreed by Tyson and DPPs, at an agreed upon location or virtually if in-person attendance is not possible and provide at that meeting a reasonably detailed description of the principal facts known to Settling Defendant that are relevant to the alleged conduct at issue in the Action, including facts previously provided to the Department of Justice's Antitrust Division or any other U.S. government investigative authority in response to subpoenas or otherwise relating to bid-rigging or price fixing involving

12

Broilers.

c.    Tyson will use its best efforts to produce up to 3 then-current Tyson employees as witnesses live at any trial of the DPPs' claims in the Action.

d.    Tyson shall not oppose or object to the depositions of six individuals, agreed to by the Parties prior to execution of this Agreement.

e.    To the extent that Tyson responds to discovery, produces documents, or provides proffers or other cooperation to other plaintiffs in the *In re: Broilers Antitrust Litigation* it will serve or otherwise provide DPPs a copy of such materials as soon as reasonably practicable after production to any other plaintiff.[2]

f.    Tyson agrees to use reasonable efforts to respond to a reasonable number of DPPs' questions regarding structured data and otherwise assist DPPs to understand structured data produced by Tyson.

g.    Tyson agrees to use reasonable efforts to authenticate documents and/or things produced in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations, affidavits, depositions, hearings and/or trials as may be necessary for the Action.

h.    Beyond the information to be produced by Tyson in discovery in the above captioned litigation and in the Settlement Agreement, Tyson will consider reasonable requests

---

[2] This information shall include but is not limited to documents relating to competition in the Broilers industry that Defendant produces to the Department of Justice, Federal Trade Commission, U.S. Department of Agriculture, Commodity Futures Trading Commission, U.S. Securities & Exchange Commission, states' attorneys general, or other government agencies or regulators.

for additional relevant information about the DPPs' claims in the Action from Interim Co-Lead Counsel, taking into account the information it has or will produce in discovery, and whether providing the requested information will be burdensome, or will otherwise increase the cost of, or compromise, its defense of the Action against other plaintiffs.

        11.    <u>Qualified Settlement Fund</u>.  The Parties agree to treat the Settlement Fund as being at all times a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.  In addition, Interim Co-Lead Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 11, including the relation-back election (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of Interim Co-Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.  All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Funds being a "Qualified Settlement Fund" within the meaning of Treas. Reg. § 1.4688-1.  Interim Co-Lead Counsel shall timely and properly file all information and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)).  Such returns shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund.  Tyson shall not be responsible for the filing or payment of any taxes or expenses connected to the Qualified Settlement Fund.

12.     <u>Distribution of Settlement Fund to Settlement Class</u>.  Members of the Settlement Class shall be entitled to look solely to the Settlement Fund for settlement and satisfaction of the Agreement or in connection with any of the Released Claims against the Tyson Released Parties, and shall not be entitled to any other payment or relief from the Tyson Released Parties.  Except as provided by order of the Court, no member of the Settlement Class shall have any interest in the Settlement Fund or any portion thereof.  DPPs, members of the Settlement Class, and their counsel will be reimbursed solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and expenses and the costs of notice of the Settlement Agreement to potential members of the Settlement Class.  Tyson and the other Tyson Released Parties shall not be liable for any costs, fees, or expenses of any of DPPs' and  Interim Co-Lead Counsel's attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund.

13.     <u>Fee Awards, Costs and Expenses, and Incentive Payments to DPPs</u>.  Subject to Interim Co-Lead Counsel's sole discretion as to timing, Interim Co-Lead Counsel will apply to the Court for a fee award, plus expenses, and costs incurred, and incentive payments to the DPPs to be paid from the proceeds of the Settlement Fund.  Tyson shall have no responsibility, financial obligation, or liability for any such fees, costs, or expenses beyond the Settlement Fund.

14.     <u>Release</u>.  Upon Final Judgment, the Releasing Parties shall be deemed to have, and by operation of law and of the judgement shall have fully, finally and forever completely compromised, settled, released, acquitted, resolved, relinquished, waived, and discharged the Tyson Released Parties from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any member of the Settlement Class has objected to the Settlement Agreement or makes a claim upon or participates in the Settlement

Fund, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now have, or hereafter can, shall, or may ever have, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, causes of action, injuries, losses, or damages arising from or in connection with any act or omission through the date of Preliminary Approval relating to or referred to in the Action or arising from the factual predicate of the Action (the "Released Claims"). Notwithstanding the above, "Released Claims" do not include (i) claims asserted against any Defendant or co-conspirator other than the Tyson Released Parties nor (ii) any claims wholly unrelated to the allegations in the Action that are based on breach of contract, any negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claim, breach of warranty, or product defect. This reservation of claims set forth in (i) and (ii) of this paragraph does not impair or diminish the right of the Tyson Released Parties to assert any and all arguments and defenses to such claims, and the Parties agree that all such arguments and defenses are preserved. During the period after the expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior to Final Judgment, all Releasing Parties who have not submitted a valid request to be excluded from the Settlement Class shall be preliminarily enjoined and barred from asserting any and all Released Claims against any and all of the Tyson Released Parties. The release of the Released Claims will become effective as to all Releasing Parties upon Final Judgment. Upon Final Judgment, the Releasing Parties further agree that they will not file any other suit against the Tyson Released Parties arising out of or relating to the Released Claims.

15. <u>Further Release</u>. In addition to the provisions of Paragraph 14, the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon Final

Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California

Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> THAT THE CREDITOR OR RELEASING PARTY DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE AND THAT, IF
> KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
> AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
> OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is

similar, comparable, or equivalent to Section 1542 of the California Civil Code, including without

limitation 20-7-11 of the South Dakota Codified Laws (providing "A GENERAL RELEASE

DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR

SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE,

WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT

WITH THE DEBTOR").  Each Releasing Party may hereafter discover facts other than or different

from those which he, she, or it knows or believes to be true with respect to the claims which are

released pursuant to the provisions of Paragraph 14, but each Releasing Party hereby expressly

waives and fully, finally, and forever settles and releases, upon Final Judgment, any known or

unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties

have agreed to release pursuant to Paragraph 14, whether or not concealed or hidden, without

regard to the subsequent discovery or existence of such different or additional facts.  The foregoing

release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims is

contractual, and not a mere recital.

      16.    <u>Covenant Not to Sue</u>.  DPPs and each Settlement Class Member covenant not to

sue, directly or indirectly, any of the Tyson Released Parties for any transaction, event,

circumstance, action, failure to act, or occurrence of any sort or type arising out of the Released Claims, including, without limitation, seeking to recover damages relating to any of the Released Claims. This Paragraph shall not apply to any action to enforce this Settlement Agreement.

17. <u>Full Release</u>. The Parties expressly agree that they intend for Paragraphs 14-16 to be interpreted as broadly as possible and to the fullest extent permitted by law.

18. <u>Non-Disparagement</u>. The Parties agree they will not disparage one another or their respective claims or defenses, such as by making public statements that disparage either of the Parties or their conduct in connection with the Action, and instead will confine their public comments to essentially the following: "The parties have agreed to resolve this matter. Tyson has not admitted any liability and continues to deny the allegations in Plaintiffs' complaint, while Plaintiffs believe they would have prevailed."

19. This Settlement Agreement shall not be construed as an admission of liability, or used as evidence of liability, for any purpose in any legal proceeding, claim, regulatory proceeding, or government investigation.

20. This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein when executed.

21. <u>Settlement Reduction</u>.

a. In connection with this long-form Settlement Agreement, the Parties will enter into a separate Confidential Letter Agreement that summarizes the dollar value of each customer's direct purchases of Broilers from the Settling Defendant during the Settlement Class Period for purposes of this Settlement Agreement. The Parties will also identify in their Confidential Letter Agreement each person that is known to have (1) opted out of a prior settlement with another Defendant, or (2) filed a direct action complaint related to this Action (collectively

"Current Opt-Out List").  The Parties will add up the total value of all sales by Settling Defendant to all customers on the Current Opt-Out List, divide that value by the total of all sales by Settling Defendant to all of its customers during the Settlement Class Period (the "Current Customer List"), and convert that resulting number to a percentage by multiplying by 100 ("Current Opt-Out Percentage").  The Current Opt-Out Percentage shall include the value of all sales by Settling Defendant to any person on the Current Opt-Out List who has an assignment(s) from any other person, including those not on the Current Opt-Out List.

       b.    After the deadline for filing timely exclusions from the Settlement Class has passed, Interim Co-Lead Counsel shall provide counsel for Settling Defendant with a list of persons that have timely requested exclusion from the Settlement Class (the "Actual Opt-Out List").  The Parties will use the value of purchases from Settling Defendant for those on the Actual Opt-Out List contained in the Current Opt-Out List or, for customers not on the Current Opt-Out List, the Current Customer List.  The Parties will add up the total value of all sales by Settling Defendant to all customers on the Actual Opt-Out List (including any assignment(s) from any other persons), divide that value by the total value of all sales by the Settling Defendant contained on the Current Customer List, and convert that resulting number to a percentage by multiplying by 100 ("Actual Opt-Out Percentage").

       c.    If the Actual Opt-Out Percentage exceeds 7.5% of the Current Opt-Out Percentage, then the Settlement Fund shall be reduced (and returned to Tyson) by 55 cents for each $1 of sales excluded from the Settlement Class above the 7.5% threshold.  By way of example, if the ultimate agreed upon Current Opt-Out Percentage is 62.5%, the addition of the 7.5% excess buffer yields a 70% threshold above which a reduction would occur.  If the Actual Opt-Out Percentage is 75%, then the following formula would be used to reduce the Settlement Fund (which

reduction would be returned to Tyson): 0.55 * ((Opt-Out Sales/Total Sales) – 0.7) (The foregoing shall be referred to as the "Settlement Reduction"). The Settlement Reduction in this example would be 2.75% of the Settlement Fund and the Settlement Fund would be reduced by $2,200,000 to $77,800,000 and $2,200,000 would be returned to Tyson.

22. <u>Effect of Disapproval</u>. If the Court does not certify the Settlement Class as defined in this Settlement Agreement, or if the Court does not approve this Settlement Agreement in all material respects, or if the Court does not enter Final Approval as provided for in Paragraph 7 herein, or if any judgment approving this Settlement Agreement is materially modified or set aside on appeal, or if all of the conditions for Final Judgment do not occur as set forth in Paragraph 1 of this Settlement Agreement, then this Settlement Agreement may be rescinded, cancelled or terminated by Tyson or DPPs on behalf of the Settlement Class. If rescinded, cancelled or terminated, this Settlement Agreement shall become null and void, and, with the exception of any Settlement Funds used for notice purposes pursuant to Paragraph 6(c), in the event the settlement is not preliminarily or finally approved by the Court, all other funds in the Escrow Account shall be returned to Tyson and the Parties' position shall be returned to the status quo ante. In no way shall DPPs have the right to rescind, cancel or terminate this Settlement Agreement if the Court fails or refuses to grant any requested attorneys' fees, any costs, or any awards to DPPs.

23. <u>Choice of Law and Dispute Resolution</u>. Any disputes relating to this Settlement Agreement or the Confidential Letter Agreement shall be governed by Illinois law without regard to conflicts of law provisions, and any and all disputes regarding this Settlement Agreement or the Confidential Letter Agreement will be mediated in good faith with Judge Daniel Weinstein (ret.) before any suit, action, proceeding or dispute may be filed in the Court pursuant to Paragraph 24 below.

24.    <u>Consent to Jurisdiction</u>.  The Parties and any Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the Confidential Letter Agreement, or the applicability of this Settlement Agreement or the Confidential Letter Agreement.  Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of Paragraphs 14-16, including but not limited to, any suit, action, or proceeding in which the provisions of Paragraphs 14-16 are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Settlement Agreement.  In the event that the provisions of Paragraphs 14-16 are asserted by any Tyson Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such Tyson Released Party shall be entitled to a stay of that suit, action, or proceeding until the mediation required by Paragraph 23 is complete and, if the matter is not resolved by mediation, the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions.  Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Parties and any Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the in personam jurisdiction of the Court.  Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Settlement Agreement and the Confidential Letter Agreement.

25.    <u>Class Action Fairness Act</u>.  Within ten (10) days of filing of this Settlement Agreement in Court with the above-mentioned motion for Preliminary Approval, Tyson, at its

sole expense, shall serve upon appropriate Federal and State officials all materials required pursuant to CAFA, and shall confirm to DPPs' Interim Co-Lead Counsel that such notices have been served.

26.    <u>Costs Relating to Administration</u>.  The Tyson Released Parties shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Funds.

27.    <u>Binding Effect</u>.  This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein.  This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Settlement Class Members, the Releasing Parties, and the Tyson Released Parties.  Without limiting the generality of the foregoing, upon certification of the Settlement Class and Final Approval, each and every covenant and agreement herein by the DPPs shall be binding upon all members and potential members of the Settlement Class and Releasing Parties who have not validly excluded themselves from the Settlement Class.

28.    <u>Sole Remedy</u>.  This Settlement Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any Tyson Released Party, and upon entry of Final Judgment, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any Tyson Released Party.

29.    <u>Counsel's Express Authority</u>.  Each counsel signing this Settlement Agreement on behalf of a Party or Parties has full and express authority to enter into all of the terms reflected herein on behalf of each and every one of the clients for which counsel is signing.

30.     It is agreed that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Parties' agreement or for any other purpose with respect to implementing or enforcing this Settlement Agreement.

31.     <u>Notices</u>.  All notices under this Settlement Agreement shall be in writing.  Each such notice shall be given either by: (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express or similar overnight courier, and, in the case of either (a), (b) or (c) shall be addressed:

If directed to DPPs, the Settlement Class, or any member of the Settlement Class, to:

W. Joseph Bruckner
Brian D. Clark
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
wjbruckner@locklaw.com
bdclark@locklaw.com


Clifford H. Pearson
Bobby Pouya
PEARSON, SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
cpearson@pswlaw.com
bpouya@pswlaw.com

If directed to the Tyson, to:

Rachel J. Adcox
AXINN, VELTROP & HARKRIDER LLP
950 F Street NW, Suite 700
Washington, DC 20004
radcox@axinn.com


-and-

Eli J. Glasser
Executive Counsel, Antitrust and Global Competition

Tyson Foods, Inc.
2200 Don Tyson Parkway
Springdale, AR 72762
Eli.Glasser@Tyson.com

or such other address as the Parties may designate, from time to time, by giving notice to all

Parties hereto in the manner described in this Paragraph. The Parties shall also provide courtesy

copies of all notices by electronic mail.

33. <u>No Admission</u>. Whether or not Preliminary Approval is granted, Final Judgment

is entered or this Settlement Agreement is terminated, the Parties expressly agree that this

Settlement Agreement and its contents, and any and all statements, negotiations, documents, and

discussions associated with it, are not and shall not be deemed or construed to be an admission of

liability by any Party or Tyson Released Party.

33. <u>No Unstated Third-Party Beneficiaries</u>. Except as is provided in Paragraph 40

below, no provision of this Agreement shall provide any rights to, or be enforceable by, any

person or entity that is not a Tyson Released Party, DPP, member of the Settlement Class, or

Interim Co-Lead Counsel.

34. <u>No Party is the Drafter</u>. None of the Parties hereto shall be considered to be the

drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case

law, or rule of interpretation or construction that would or might cause any provision to be

construed against the drafter hereof.

35. <u>Amendment and Waiver</u>. This Settlement Agreement shall not be modified in any

respect except by a writing executed by the Parties, and the waiver of any rights conferred

hereunder shall be effective only if made by written instrument of the waiving Party. The waiver

by any Party of any particular breach of this Agreement shall not be deemed or construed as a

waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement.

This Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Agreement. Any breach of this Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

36.     <u>Execution in Counterparts</u>.  This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement.  Facsimile or Electronic Mail signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

37.     <u>Integrated Agreement</u>.  This Settlement Agreement comprises the entire, complete, and integrated agreement between the Parties, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between the Parties. The Parties agree that this Settlement Agreement may be modified only by a written instrument signed by the Parties and that no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

38.     <u>Voluntary Settlement</u>. The Parties agree that this Settlement Agreement was negotiated in good faith by the Parties, and reflects a settlement that was reached voluntarily after consultation with competent counsel and the participation of a neutral mediator, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

39.     <u>Confidentiality</u>.  The Parties agree to continue to maintain the confidentiality of all settlement discussions and materials exchanged during the settlement negotiation.  However, Tyson and DPPs can inform other parties to this Action that they have reached a settlement agreement, the amount of the settlement, and the cooperation provided for in this Settlement Agreement.  Notwithstanding anything in this Paragraph, the Confidential Letter Agreement described in Paragraph 21 is to be kept confidential and not disclosed to other Parties to this Action, unless requested by the Court for *in camera* review in connection with approval of the Parties' Settlement Agreement.

40.     <u>Final Judgment as to other Defendants</u>. DPPs have been provided with a copy of the agreement entered into by certain Defendants dated February 25, 2020 (hereinafter referred to as "Defendants' Agreement").  The defined terms in Defendants' Agreement shall have the same meaning when used in this Settlement Agreement.  DPPs agree that notwithstanding anything to the contrary contained in this Settlement Agreement, DPPs shall reduce the dollar amount collectable from the parties to the Defendants' Agreement pursuant to any Final Judgment by a percentage equal to the Sharing Percentage of Tyson, calculated pursuant to Section 4 and Exhibits A and B of Defendants' Agreement (as illustrated by the Appendix to Defendants' Agreement) as if Tyson had not settled, had been found liable on the claim, and was a Sharing Party with respect to the Final Judgment.  DPPs agree that this undertaking is also for the benefit of any Defendant that is a party to the Defendants' Agreement and that this undertaking may be enforced by any or all of such Defendants as third party beneficiaries hereof.  Any ambiguity in this Paragraph 40 or inconsistency between this Settlement Agreement and the Defendants' Agreement shall be resolved in favor of the Defendants' Agreement, including, without limitation, Sections 6.D.1 and 6.D.2 thereof.  DPPs further represent and warrant that they have not reached any agreement to

provide any portion of the settlement proceeds provided hereunder to any person or entity that is not explicitly identified as a releasor in this Settlement Agreement, except for proceeds received by DPPs' attorneys for payment of attorneys' fees. DPPs shall use their best efforts to ensure that the Settlement Agreement constitutes a Qualified Settlement under Defendants' Agreement and to effectuate the intent of the parties to the Defendants' Agreement to treat the Settlement Agreement as a Qualified Settlement, including (as may be necessary) to make any amendments to the Settlement Agreement to reflect the intent to treat the Settlement Agreement as a Qualified Settlement.

41.      Irrespective of any term in this Agreement, it is expressly agreed that nothing in this Agreement prohibits DPPs and DPP counsel in ongoing litigation of the Action from establishing a conspiracy under the Sherman Act, including discovering and introducing evidence of Settling Defendant as a co-conspirator in the Action or from effecting the cooperation provisions herein.

42.      Irrespective of any term in this Agreement, the Parties agree that (1) DPPs and DPP counsel will not share any material learned pursuant to Paragraph 10 of this Agreement with any other plaintiff or plaintiff group in related actions (unless authorized by Tyson), (2) nothing in this Agreement otherwise prevents DPPs from continuing to jointly prosecute this case and utilizing any work product developed in this matter and (3) nothing in this Agreement prevents Tyson from defending itself against claims brought by other plaintiffs or claimants in the Action.

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized representatives, enter into this Settlement Agreement on the Execution Date.

Dated:  01-23-2021

_____
W. Joseph Bruckner (*Pro Hac Vice*)
Brian D. Clark (*Pro Hac Vice*)
Simeon A. Morbey (*Pro Hac Vice*)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T:  (612) 339-6900
F:  (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
samorbey@locklaw.com

28

Dated: 1/23/2021

Clifford H. Pearson (*Pro Hac Vice*)
Daniel L. Warshaw (*Pro Hac Vice*)
Thomas J. Nolan (*Pro Hac Vice*)
Bobby Pouya (*Pro Hac Vice*)
Michael H. Pearson (*Pro Hac Vice*)
PEARSON SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
T: (818) 788-8300
F: (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
tnolan@pswlaw.com
bpouya@pswlaw.com
mpearson@pswlaw.com

Bruce L. Simon (*Pro Hac Vice*)
PEARSON, SIMON & WARSHAW, LLP
350 Sansome Street, Suite 680
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com

*Interim Co-Lead Counsel for the Direct
Purchaser Plaintiff Class*

Dated: January 23, 2021

Rachel J. Adcox (#1001488)
Daniel K. Oakes (*Pro Hac Vice*)
Kenina J. Lee (*Pro Hac Vice*)
AXINN, VELTROP & HARKRIDER LLP
950 F Street NW, Suite 700
Washington, DC 20004
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
radcox@axinn.com
doakes@axinn.com
klee@axinn.com

John M. Tanski (*Pro Hac Vice*)
Jarod G. Taylor (*Pro Hac Vice*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
Telephone: (860) 275-8100
Facsimile: (860) 275-8101
jtanski@axinn.com
jtaylor@axinn.com

Nicholas E.O. Gaglio (*Pro Hac Vice*)
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
Telephone: (212) 728-2200
Facsimile: (212) 261-5654
ngaglio@axinn.com

Jordan M. Tank
LIPE LYONS MURPHY NAHRSTADT &
PONTIKIS, LTD.
230 West Monroe, Street, Suite 2260
Chicago, IL 60606
Telephone: (312) 702-0586
Facsimile: (312) 726-2273
jmt@lipelyons.com

*Counsel for Tyson Foods, Inc., Tyson
Chicken, Inc., Tyson Breeders, Inc.,
& Tyson Poultry, Inc.*