# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION, | Case No.: 1:16-cv-08637 |
| This Document Relates To: | Hon. Thomas M. Durkin |
| THE DIRECT PURCHASER PLAINTIFF ACTION | Magistrate Judge Jeffrey T. Gilbert |

**DIRECT PURCHASER PLAINTIFFS' RESPONSE TO PLAINTIFF SERVICES GROUP OF AMERICA, INC.'S NOTICE OF OPT-OUT AND OBJECTION TO LIST OF OPT-OUTS WITH RESPECT TO THE DIRECT PURCHASER CLASS PLAINTIFFS' SETTLEMENTS WITH GEORGE'S AND PECO DEFENDANTS, OR IN THE ALTERNATIVE, MOTION FOR LATE OPT-OUT FROM SETTLEMENTS**

948912.1

**I.     INTRODUCTION**

Direct Action Plaintiff Services Group of America, Inc. ("SGA") filed this notice, objection, and motion after it missed the deadline to opt out of the settlements between Direct Purchaser Plaintiffs ("DPPs"), and Defendants Peco Foods, Inc., George's, Inc., and George's Farms, Inc. (collectively, the "Settlements"). DPPs take no position with regard to SGA's arguments regarding effective or permissive exclusion from the Settlements. (Dkt. No. 3394, at §§ II.A, II.C). However, for the reasons detailed herein, DPPs oppose SGA's argument that the notice program approved by the Court and fully implemented by the Settlement Administrator does not satisfy Rule 23 or due process.

**II.    BACKGROUND**

JND Legal Administration ("JND"), the Court-appointed Settlement Administrator, designed and implemented the Notice Program in this Action. The Court first approved the Notice Program in its Corrected [Proposed] Order Granting Direct Purchaser Plaintiffs' Motion for Preliminary Approval of the Settlements with Defendants Peco Foods, Inc., George's, Inc., and George's Farms, Inc., and Amick Farms, LLC, dated January 8, 2020 (Dkt. No. 3394) ("Court Order"). Subsequently, on October 20, 2020, the Court entered final judgment and granted final approval to the Direct Purchaser Plaintiffs' Settlement with Defendants Peco Foods, Inc., George's, Inc., and George's Farms, Inc. (Dkt. No. 3933) and Amick Farms, LLC (Dkt. No. 3934). In granting final approval of the Settlements with Defendants Peco Foods, Inc., George's, Inc., and George's Farms, Inc., and Amick Farms, LLC, the Court also approved the Notice Program, finding that it fully satisfied the requirements of Rules 23(c)(2) and 23(e)(1) of the Federal Rules of Civil Procedure and the requirements of due process. *Id.* As outlined in the

948912.1                                              1

Court's Order and the notice documents, March 9, 2020 was the last day for Settlement Class Members to request exclusion from the Settlement Class. (Dkt. No. 3394, at p. 4; Exs. A-C.).

Consistent with Rule 23 of the Federal Rules of Civil Procedure and applicable state court rules, all forms of the Court-approved Notice advised Class Members of their rights and options under the Settlements, including deadlines to object or request exclusion, among other information. The Notice Program, following a model commonly used in class actions, included direct mail notice, e-mail notice, publication notice and digital media notice, and was designed to reach as many Class Members as possible. It provided the best practicable notice under the circumstances in this Action. As more thoroughly described herein, JND fully implemented the notice in accordance with the Notice Program.

SGA missed the March 9, 2020 deadline to opt out from the Settlements, which was plainly set forth in the Court Order and notice documents. SGA filed the instant motion on January 19, 2021 nearly eleven months after the March 9, 2020 opt out deadline. (Dkt. No. 4187).

### III. ARGUMENT

#### A. The Court-Approved Notice Program Satisfies Due Process and Has Been Fully Implemented

Rule 23(e) requires that prior to final approval, notice of a proposed settlement be given in a reasonable manner to all class members who would be bound by such a settlement. When a proposed class action settlement is presented for court approval, Rule 23 requires "the best notice that is practicable under the circumstances," and that certain specifically identified items in the notice be "clearly and concisely state in plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B). Neither Rule 23 nor due process requires receipt of actual notice by all class members. *Mangone v. First USA Bank*, 206 F.R.D. 222, 231 (S.D. Ill. 2001); *Silber v. Mahon*, 18

F.3d 1449, 1453-1454 (9th Cir. 1994) (concluding that the standard for class notice is "best practicable," rather than "actually received" notice). In fact, "[c]ourts have consistently recognized that due process does not require that class members actually receive notice. *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012); *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x. 41, 44 (2d Cir. 2008) ("For due process to be satisfied, not every class member need receive actual notice [of the class settlement], as long as class counsel "acted reasonably in selecting means likely to inform persons affected.").

The Notice Program approved by this Court—which relies primarily on direct notice to Class members via mail and email, supplemented by publication notice—satisfies this standard and is commonly used in class actions like this one. *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 617 (quoting Fed. R. Civ. P. 23(c)(2)); *City of Greenville v. Syngenta Crop Prot.*, No. 3:10-CV-188, 2012 WL 1948153, at *4 (S.D. Ill. May 30, 2012) (same); Fed. R. Civ. P. 23(c)(2)(B). It constitutes valid, due, and sufficient notice to class members, and is the best notice practicable under the circumstances.

The Settlement Administrator implemented the notice plan in accordance with the Court Order. Working with Class Counsel's data expert, who standardized customer names, and following JND's analysis to identify duplicate records, JND isolated the unique Class Member records. Declaration of Jennifer M. Keough in Support of DPPs' Response to SGA's Motion ("Keough's Fourth Decl.") ¶ 7. These records were then compared to the final Class Member data from the earlier settlement with Fieldale Farms Corporation ("Fieldale Settlement") to ensure that all the Class Members previously identified in the Fieldale Settlement were included in the Notice Program. *Id*. Ultimately, a list was established containing 26,676 unique Class Members ("Class List"). *Id*.

On January 8, 2020, in compliance with the Court's Order, JND mailed the Long Form Notice to all Class Members on the Class List with a mailing address. *Id.*, at ¶ 9. Additionally, on January 8, 2020, in compliance with the Court's Order, JND emailed the Email Notice to Class Members on the Class List for whom email addresses were available. *Id.*, at ¶ 10. Those Long Form Notices that were returned as undeliverable with a forwarding address were promptly re-mailed. *Id.*, at ¶ 9. For those Long Form Notices returned without a forwarding address, JND conducted an advanced address research through TransUnion, one of the nation's leading credit bureaus.[1] *Id.* In compliance with the Court's Order, JND promptly re-mailed the Long Form Notice to all updated addresses provided by TransUnion. *Id.* The direct notice program resulted in a deliverability rate via mail or email of 85.5% of identified class members, which represents "a very high deliverability rate for a mail/email program." *Id.*, at ¶ 11.

In addition to the direct notice component of the Notice Program, JND published the Summary Notice in numerous print publications designed to reach potential Class Members. *Id.*, at ¶ 12. Those print publications included: *Poultry Times, Meat + Poultry, Supermarket News, Progressive Grocer, Grocery Headquarters,* and *Frozen and Refrigerated*. *Id.* All of these publications were carefully selected by the JND Legal Notice Team to provide the best practicable notice of the Settlements to Class Members. *Id.* To further supplement the Notice Program and in compliance with the Court's Order, JND also conducted an internet advertising campaign to inform Class Members about the Settlements. *Id.*, at ¶ 13. The internet campaign included banner display advertisements, which contained links to the Settlement Website (www.broilerchickenantitrustlitigation.com/documents), on various digital publications,

---

[1] TransUnion is widely recognized as a reliable source of contact information for both commercial entities and individual persons doing business or residing in the United States.

including: *Progressive Grocer* (www.progressivegrocer.com), *Meat + Poultry* (www.meatpoultry.com), *Poultry Times* (www.poultrytimes.com), *Supermarket News* (www.supermarketnews.com), *Grocery Headquarters News* (www.winsightmedia.com), *Fast Casual* (www.fastcasual.com), and the *Shelby Report* (www.shelbyreport.com). *Id.*

SGA's arguments that the notice plan was not sufficiently implemented as to SGA are without merit. SGA claims that the Settlement Administrator did not send notice of the Settlements to SGA or the SGA subsidiaries. However, as previously illustrated, this notice plan was tailored to "readily identif[y] [potential class members] through reasonable effort," and "the best notice that is practicable under the circumstances" as required by Fed. R. Civ. P. 23(c)(2)(B). The notice plan provided direct notice to the vast majority of class members, and it was supplemented with a publication plan to reach the small percentage of class members who did not receive direct notice. Consistent with Rule 23 of the Federal Rules of Civil Procedure and applicable state court rules, all forms of the Court-approved Notice advised Class Members of their rights and options under the Settlements, including deadlines to object or request exclusion, among other information. *Id.*, at ¶ 14. The deadline to opt out or object was March 9, 2020. *Id.* Accordingly, SGA's argument that the notice plan was legally deficient is completely without merit. *See, e.g., Juris*, 685 F.3d at 1321; *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x. at 44.

SGA is also misplaced in its contention that JND did not send any form of notice to SGA or its former subsidiaries Service of America ("SSA"), Foodservice of America ("FSA"), and Ameristar Meats, Inc. ("Ameristar"). The Class List did not contain a record for SGA, but it included records for SSA, FSA, and Ameristar, and Notices were sent to these Class Members,

as detailed below. Keough's Fourth Decl. at ¶ 17. On January 8, 2020, consistent with the Court's Order, JND mailed the Long Form Notice to SSA, FSA, and Ameristar. *Id.*, at ¶ 18.

Prior to commencing the mailing component of the Notice Program, JND updated the Class Member mailing information on the Class List using data from the United States Postal Service's National Change of Address database.[2] *Id.*, at ¶ 8. The Long Form Notice mailed to Food Service of America Minot was returned as undeliverable without a forwarding address. *Id.*, at ¶ 19. In accordance with the procedures outlined in the Notice Program and above, JND promptly conducted advanced address research to attempt to locate an updated address, but no update was returned by TransUnion. *Id.* The remainder of the Long Form Notices mailed to the above addresses were not returned to JND as undeliverable. *Id.*

Consistent with the procedures outlined in the Notice Program and above, JND also emailed the Email Notice to one email address associated with SSA and ten email addresses associated with FSA. *Id.*, at ¶ 20. None of these emails were returned or bounced back to JND. *Id.*, at ¶ 21. The data did not include an email address for Ameristar. *Id.*, at ¶ 20.

Furthermore, SGA's challenge to the publication notice is without merit. As previously mentioned, the Notice Program approved by this Court—which relies primarily on direct notice to Class members supplemented by publication notice—is commonly used in class actions like this one, and the Court rightly found that it was an effective supplement to the direct mail and email notice required under the Notice Program. (Dkt. No. 3394, at ¶ 5). The supplemental plan

---

[2] The National Change of Address database is the official United States Postal Service ("USPS") technology product, which makes change of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mail stream. This product is an effective tool to updated address changes when a person or entity has completed a change of address form with the USPS. The address information is maintained in the database for 48 months.

was targeted to reach class members, and appropriate in a case such as this where the primary means of providing notice to the class is via direct notice.

IV.   **CONCLUSION**

For these reasons, Interim Co-Lead Counsel respectfully request that this Court overrule and reject SGA's notice objection and motion. The Court-approved Notice Program was reasonable and provided effective notice, certainly the best notice practicable under the circumstances in this Action.

Date: February 5, 2021

/s/ Bobby Pouya

Clifford H. Pearson
Bobby Pouya
Michael H. Pearson
PEARSON SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
cpearson@pswlaw.com
bpouya@pswlaw.com
mpearson@pswlaw.com

W. Joseph Bruckner
Brian D. Clark
Simeon A. Morbey
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
samorbey@locklaw.com

Bruce L. Simon
PEARSON SIMON & WARSHAW, LLP
350 Sansome Street, Suite 680
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com

*Direct Purchaser Plaintiffs Interim Co-Lead Class Counsel*

Steven A. Hart (#6211008)
Brian Eldridge (#6281336)
Kyle Pozan (#6306761)
HART MCLAUGHLIN & ELDRIDGE, LLC
121 West Wacker Drive, Suite 1050
Chicago, IL 60601
Telephone: (312) 955-0545
Facsimile: (312) 971-9243
shart@hmelegal.com
beldridge@hmelegal.com
kpozan@hmelegal.com

*Direct Purchaser Plaintiffs Liaison Counsel*