**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To:<br>*Services Group of America, Inc. v. Tyson Foods, Inc. et al.*, No. 1:19-cv-04194<br><br>And<br><br>The Direct Purchaser Plaintiff Action | Case No. 1:16-cv-08637<br><br>The Honorable Thomas M. Durkin<br>The Honorable Jeffrey T. Gilbert |

**SETTLING DEFENDANTS' RESPONSE TO
PLAINTIFF SERVICES GROUP OF AMERICA'S
NOTICE OF OPT-OUT AND OBJECTION TO LIST OF OPT-OUTS FILED BY
DIRECT PURCHASER PLAINTIFFS WITH RESPECT TO THE DPP'S
SETTLEMENTS WITH GEORGE'S AND PECO
<u>OR IN THE ALTERNATIVE MOTION FOR LATE OPT-OUT FROM SETTLEMENTS</u>**

**INTRODUCTION**

Services Group of America, Inc. ("SGA") asks this Court to do something extraordinary: allow SGA to opt out of the Direct Purchaser Plaintiff ("DPP") settlement classes with George's and Peco months after the Court entered final judgment approving these settlements. SGA does not support this request with any viable excuse for its failure to opt out of these settlement classes before the Court-imposed deadline. Instead, SGA's request relies on a demonstrably false premise and a legal argument that has already been rejected by this Court. SGA contends that it did not receive the notice that included the instructions for opting out. The record, however, establishes that SGA *did* receive the notice via multiple means, including distribution to SGA's counsel through the Court's ECF system. Furthermore, SGA's legal argument that it "effectively" opted out by filing an individual action prior to settlement is directly contrary to this Court's previous order holding that all class members, including DAPs, were required to submit a written request for exclusion as plainly set forth in the notice.

In the alternative, SGA asks this Court to allow it to opt out late due to "excusable neglect." This Court already ruled, however, that a DAP that missed the opt-out deadline ***by two days*** would not be permitted to opt out after the final approval order. SGA does not—and cannot—explain why this Court should ignore its prior ruling. Indeed, there is every reason not to reopen a final settlement to permit long-belated opt-outs. The objective of litigation settlements—particularly class action settlements—is finality and certainty. Because SGA failed to take any steps to comply with the clear process ordered by the Court, much less on a timely basis, the Court's final approval order holding that SGA is a member of the settlement class should stand, and SGA's motion should be denied.

**BACKGROUND**

SGA filed suit in June 2019, including against Settling Defendants George's and Peco.[1] (Dkt. 2274-1). By June 26, 2019, when the Court granted SGA's motion for reassignment based on relatedness (Dkt. 2291), SGA's counsel began receiving notices of filings and orders entered on the consolidated docket through the Court's electronic case filing ("ECF") system.

*SGA Fails to Request Exclusion from the Settlement Class*

Approximately five months later, the DPPs moved for preliminary approval of class settlements with George's, Peco and Amick Farms, LLC. (Dkt. 3322). The Settlement Classes consisted of:

> All persons who purchased Broilers directly from any of the Defendants or any co-conspirator identified in this action, or their respective subsidiaries or affiliates for use or delivery in the United States from at least as early as January 1, 2008 until December 20, 2019.

(Dkt. 3323 at p. 11).[2] SGA, a direct purchaser of broilers, falls within the definition of the Settlement Class.

On December 18, 2019, the Court held a preliminary settlement approval hearing, at which counsel for SGA appeared. (Dkt. 3361 at p. 4). Two days later, consistent with its comments at the hearing, the Court entered an order preliminarily approving the settlements (Dkt. 3359), updated on January 8, 2020 (Dkt. 3394). In that January 8, 2020 order, the Court set March 9, 2020 as the deadline for any class members to opt out of or object to the Settlements. (*Id.* at p. 4). That order

---

[1] SGA's claims were based on purchases made by SGA's subsidiaries that assigned their claims to SGA. (Dkt. 2274-1 at ¶¶ 22–23).

[2] Defendants (including their officers, directors or employees, and any entity in which any Defendant has a controlling interest, or affiliates, legal representatives, heirs or assigns of any Defendant); federal, state or local governmental entities; judicial officers presiding over the action (including members of his/her immediate family and judicial staff); any juror assigned to the action, and any Co-Conspirator identified in the action are specifically excluded from the class. *See id.*

3

also included, as exhibits, the Long Form Notice, Email Notice, and Summary Publication Notice, all of which included the March 9, 2020 opt-out deadline. (*Id.* at Exs. A–C). All counsel of record in the litigation, including counsel for SGA, received the Court's order, including the attached Notices, through ECF.

The Long Form Notice clearly stated that, in order to opt out of the settlement, a class member was required to take specific, affirmative action:

> **13. How do I exclude myself from the Settlements?**
>
> If you do not want the benefits offered by any of the Settlements and you do not want to be legally bound by them, or if you wish to pursue your own separate lawsuit against the Settling Defendants, you must exclude yourself ***by submitting a written request to the Settlement Administrator stating your intent to exclude yourself from the Settlement Class by March 9, 2020***. You can choose any of the three Settlements you want to exclude yourself from and do not have to exclude yourself from all of the Settlements.
>
> Your Exclusion Request must include the following: (a) your name, including the name of your business which purchased Broiler chicken, and address; (b) a statement that you want to be excluded from the Settlement Class in *In re: Broiler Chicken Antitrust Litigation*, (c) which of the Settlement Agreements you wish to be excluded from; and (d) your signature or your attorneys' signature. ***You must mail or email your Exclusion Request, postmarked or received by March 9, 2020, to: Broiler Chicken Antitrust Litigation, c/o JND Legal Administration, PO Box 91343, Seattle, WA 98111 or info@broilerchickenantitrustlitigation.com.***

(Dkt. 3394, Ex. A).

The Notice further stated that any class member that did not follow the instructions for excluding itself from the class would be part of the Settlement Class and would give up the right to continue to sue the Settling Defendants in a separate lawsuit:

> Unless you exclude yourself from one or more of the Settlements, you are staying in the Settlement Class, which means that you can't sue, *continue to sue*, or be part of any other lawsuit against the Settling Defendants that makes claims based on the same legal issues alleged or could have been alleged in *this* case. It also means that all Court orders will apply to you and legally bind you.

4

(Dkt. 3394, Ex. A at ¶ 11) (bolded emphasis added); *see also* ¶ 14 ("[I]f you do not exclude yourself from any of the three Settlement Agreements in this Notice, you give up the right to sue Peco, George's and Amick for the same claims that their Settlements resolve").

In addition to the notice received by SGA's counsel, the Long Form notice was sent to SGA through its (now former) subsidiaries. SGA's claims in this case are based entirely on direct purchases made by its subsidiaries Systems Services of America, Inc. ("SSA"), Food Services of America, Inc. ("FSA"), and Ameristar Meats, Inc. ("Ameristar"). (Dkt. 2274-1 at ¶¶ 22–23). Notice was sent by the Settlement Administrator through both physical mail and email to these entities. (Dkt. 4265-1 at ¶¶ 16–21, 29).[3] In addition, the Settlement Administrator implemented all other components of the Notice Program approved by the Court in the Preliminary Approval Order, including but not limited to publication notice, digital notice, and establishment of a settlement website. (*Id.* ¶¶ 4–5).

By the time the opt-out period began, all parties and their counsel were aware that the Court had already rejected the notion that the pendency of a direct complaint by a plaintiff would excuse that plaintiff's failure to file a valid request for exclusion from a settlement class. Just two days before the DPPs moved for preliminary approval of the Peco and George's settlements, the Court dismissed the claims of DAP Winn-Dixie against Fieldale because Winn-Dixie failed to timely opt out of the Fieldale DPP settlement class. (Dkt. 3312). Winn-Dixie argued that its failure to file a timely request for exclusion was of no consequence because Winn-Dixie had previously filed its own individual lawsuit. Rejecting that position, the Court held that an "***individual complaint filed before the Court approved the class notice plan . . . does not suffice***" to demonstrate an intent to

---

[3] Notably, based upon information provided by SGA's counsel, the Settlement Administrator confirmed the Long Form Notices were sent to the correct physical addresses for SSA and Ameristar. (Dkt. 4265-1 at ¶ 28). And while the class data may have contained the incorrect address for FSA, the notice was sent to ten FSA email addresses. (Dkt. 4265-1 at ¶ 20).

5

opt out. (Dkt. 3312 at p. 5 (citing *In re VMS Sec. Litig.*, No. 89 C 9448, 1992 WL 203832, at *3 (N.D. Ill. Aug. 13, 1992); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2014 WL 4181732, at *5 (N.D. Cal. Aug. 20, 2014))).

After notice was provided to the George's and Peco settlement classes and after the opt-out period closed, 99 separate timely and valid requests for exclusion from the Settlements (identifying 1,645 persons or entities) had been received by the Settlement Administrator. (Dkt. 3757-2 at ¶ 19). Many of the exclusion requests came from DAPs who, like SGA, had filed direct claims prior to the settlements. SGA, however, was not among the class members requesting exclusion.

On at least four occasions after the March 9, 2020 opt-out deadline but prior to the final approval of the Settlements, the DPPs publicly filed the list of class members that had requested exclusion from the George's and Peco Settlements. (Dkt 3567 (filed April 15, 2020); Dkt. 3757-7 (filed Aug. 13, 2020); Dkt. 3777-1 (filed Aug. 26, 2020); Dkt. 3926-1 (filed Oct. 23, 2020)). In each instance, SGA was not among the class members requesting exclusion (though the DAPs that had properly opted out were included).

***The Court Grants Final Approval with SGA as a Settlement Class Member***

On October 26, 2020, the Court granted final approval to the settlements (Dkt. 3934), and, on October 27, 2020, the Court entered the Amended Final Judgment Order (Dkt. 3944). The Amended Final Judgment Order approving the George's and Peco settlements with the Class states, in pertinent part:

> ***Any member of the Settlement Class who failed to timely and validly request to be excluded from the Settlement Class shall be subject to and bound by the provisions of the Settlement Agreements***, the Released Claims contained therein, and this Order with respect to all Released Claims, regardless of whether such members of the Class seek or obtain any distribution from any Settlement Fund.

6

> ***Persons/Entities who validly requested to be excluded from the Settlement Class are listed in Exhibits A1 and A2 attached hereto***.[4]

(Dkt. 3944 at ¶ 13) (emphasis added). SGA was not among the class members excluded from the Class.

### *SGA Declares that It Is Not Bound by the Amended Final Judgment Order*

By letter dated December 1, 2020, George's responded to a settlement demand from SGA by calling SGA's attention to the provisions of the Amended Final Judgment Order establishing that "SGA is a Settlement Class Member that has released its claims pursuant to George's settlement with the Class." (Dec. 1, 2020 Greene Letter, attached as Exhibit 1 to Decl. of W. Greene). On December 21, 2020, SGA declared to counsel for George's, Peco, and the DPPs that SGA was not bound by the settlement, citing, as the sole basis for its contention, the fact that it had previously filed an individual lawsuit:

> We disagree that Services Group of America, Inc. ("SGA") is part of the settlement class as referenced in your letter. As you know, SGA filed a Direct Action lawsuit against your client, as well as Peco, and the other members of the conspiracy on June 21, 2019. Accordingly, SGA is not a member of the settlement class you reference.

(Dec. 21, 2020 Casas Letter, attached hereto Exhibit 2 to Decl. of W. Greene).

### *A Similarly Situated DAP Dismisses Its Claims Due to Its Failure to Opt Out*

SGA's response diverges sharply from another DAP that filed an individual suit prior to the George's and Peco DPP settlements and also failed to request exclusion. Like SGA, Amigos Meat filed an initial complaint before the settlements, failed to request exclusion, and continued to name George's and Peco as defendants as recently as October 23, 2020. (Dkt. 3074-1; Dkt. 3924 at p. 40; Dkt. 3944). However, after final approval, when George's and Peco drew attention

---

[4] Exhibit B, not pertinent here, listed opt-outs with partial assignments.

7

to Amigos Meat's failure to opt out, Amigos Meat entered into a stipulation dismissing the claims as to George's and Peco:

> Plaintiffs did not request exclusion from the Peco and George's Settlements with the Direct Purchaser Plaintiff Class (Dkt. 3944, Exhibits A1 and A2), and therefore are members of the DPP Settlement Classes who have released their claims against Peco and George's pursuant to the Court's order granting final approval of those settlements. (Dkt. 3944.)

(Dkt. 4128 at ¶ 3).

*SGA Makes a Belated Request to Opt Out by Filing its Motion*

On January 19, 2021, SGA filed a "Notice of Opt Out" and "Motion for Late Opt Out" with the Court. (Dkt. 4187 ("SGA Br")). In that motion, SGA argues that it "effectively" opted out or, in the alternative, that it should be permitted to opt out ten months after the opt-out deadline based on "excusable neglect."

## ARGUMENT

### I.     SGA Failed to Opt Out Despite Clear Notice Provided to Its Counsel.

SGA does not—and indeed cannot—claim that it complied with the opt-out requirements set forth in the Notice approved by the Court. Instead, SGA raises objections regarding the sufficiency of notice, complaining that the Settlement Administrator failed to send it a copy of the notice. (SGA Br. at 6). SGA also asserts that it "effectively" opted out "through its litigation conduct during and after the opt-out period." (*Id*. at 4-5). These arguments are entirely without merit and provide no basis for the extraordinarily relief of allowing a class member to opt out of a settlement after final approval.

#### A.     As a party to this litigation, SGA unquestionably received notice.

As a party appearing in the consolidated proceedings (well before the settlements were announced), SGA's counsel received all ECF filings in this matter and is deemed to be on notice of the contents of all such filings. As this Court has already made clear, a DAP in this case "can't

argue that it didn't have notice of the settlement approval process [when] it is represented by counsel who receives electronic notice of filings in this case." (Dkt. 3312 at p. 7 n.1).[5] Here, SGA's counsel of record unquestionably received notice of both (a) the opt-out procedures before the opt-out deadline (set forth in the Long Form Notice included with the January 8, 2020 Preliminary Approval Order), and (b) the fact that SGA was not included as a person or entity who requested exclusion from the settlements before the final approval hearing (set forth in multiple filings by the DPPs of the list of opt-outs).

Thus, SGA's protest that "the Claims Administrator failed to send a notice to SGA's counsel" or to SGA's legal department (SGA Br. at 6) ignores the fact that *the Court*, through ECF, had already sent SGA's counsel the Preliminary Approval Order that included the Long Form Notice. SGA cannot claim lack of notice because it did not receive a duplicate copy of the notice its counsel had already received from the Court. Additionally, as set forth above, the Settlement Administrator provided SGA notice through multiple means that the Court has found sufficient.

### B. Filing a lawsuit or "continuing to litigate" is legally insufficient to effectuate an opt-out.

Having failed to submit a timely request for exclusion (despite receiving notice), SGA argues that its individual complaint and continued prosecution of claims against all Defendants

---

[5] Other courts agree. *See In re Deepwater Horizon*, 819 F.3d 190, 199 (5th Cir. 2016) (notice of a class settlement provided to a party's attorney is sufficient because "[i]t is well established that notice to [a party's] attorney is imputed to [the party]"); *In re NFL Players' Concussion Injury Litig.*, No. 2:12-md-02323, 2019 WL 95917, at *8 (E.D. Pa. Jan. 3, 2019) (plaintiff's "status as a party in the MDL during this period means she almost certainly had actual notice of the opt-out requirements"); *cf. In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2884, 2014 WL 348593, at *6 (E.D. Pa. Jan. 31, 2014) (noting that the party "was represented by counsel before, during, and after the opt-out period" who "received all of the court filings in this case, including the Order providing explicit instructions for opting out").

9

should suffice to show its intent to opt out. (SGA Br. at 3–4). But SGA's brief conspicuously fails to acknowledge the Court's prior order dismissing Winn-Dixie's claims against Fieldale, which rejected the very arguments that SGA now attempts to resurrect.

First, an "individual complaint filed before the Court approved the class notice plan . . . does not suffice" to opt out. (Dkt. 3312 at p. 5 (citing *In re VMS Sec. Litig.*, 1992 WL 203832, at *3; *In re CRT*, 2014 WL 4181732, at *5)).[6]

Second, "continuing to litigate" a previously filed claim by engaging in discovery does not effectuate an opt-out. (Dkt. 3312 at p. 5 (quoting *In re CRT*, 2014 WL 4181732, at *5). SGA argues that because George's and Peco joined in discovery requests directed to SGA after the opt-out deadline but did not join in discovery directed to the DPPs, George's and Peco must have known that SGA intended to opt out of the settlements.[7] But the reason for the distinction is obvious. Peco

---

[6] Although some courts have found a "reasonable indication" of an intent to opt out sufficient where a party's compliance with the opt-out instructions is imperfect, the cases cited by SGA show only that courts have permitted timely opt-outs that failed to follow the specified form. *See In re Four Seasons Sec. Laws Litig.*, 493 F.2d 1288, 1289–1291 (10th Cir. 1974) (finding a letter sent before the opt-out deadline sufficient to show intent to opt out); *Council on Soc. Work Educ., Inc. v. Tex. Instruments, Inc.*, 105 F.R.D. 68, 70 (N.D. Tex. 1985) (finding an opt-out request sent before the opt-out deadline sufficient even though it did not include some requested information). Other cases cited by SGA similarly do not address untimely opt-out requests. *See Plummer v. Chem. Bank*, 668 F.2d 654, 657 n.2. (2d Cir. 1982) (noting that if the opportunity to opt out was even required under Rule 23(b)(2), the opt-out notice need not state the reason for opting out); *In re Linerboard Antitrust Litig.*, 223 F.R.D. 357, 366 (E.D. Pa. 2004) (permitting plaintiffs to ratify timely opt-out requests when there was a question of whether the opt-out had been authorized). Most importantly, none of these cases holds that an entity that fails to submit an opt-out notice *until after final approval* has shown a reasonable indication of an intent to opt out.

[7] Although SGA references litigation conduct both before and after the opt-out deadline (SGA Br. at 4), courts generally do not even consider conduct that occurs after the opt-out deadline, much less find it sufficient to evidence an intent to opt out. *See In re Deepwater Horizon*, 819 F.3d at 196 (declining to consider actions after the opt-out deadline); *In re NFL Players' Concussion Injury*, 2019 WL 95917, at *7 (actions taken after the opt-out deadline "have no bearing on whether [the party] intended to opt out during the opt-out period"); *In re CRT,* 2014 WL 4181732, at *2 (finding no effective opt-out based on litigation conduct "[b]efore, during, and after" the opt-out deadline).

10

and George's did not engage in discovery against the DPPs after the opt-out period because the Court's Preliminary Approval Order stayed all proceedings with respect to the DPPs' action against Peco and George's. (Dkt. 3394 at ¶ 11). That Order did not stay any of the DAP lawsuits against George's and Peco, including SGA's lawsuit. Indeed, SGA's claims against George's and Peco were not released—and the litigation against them was not terminated—until this Court entered its Final Judgment Order on October 26, 2020 (as updated on October 27, 2020). (Dkt. 3933, 3944).[8] In any event, the continuation of discovery is insufficient to excuse SGA's failure to comply with the express requirements to exclude itself from the settlement classes pursuant as ordered by this Court.

## II. SGA Should Not Be Permitted to Opt Out After Final Approval and Ten Months After the Opt-Out Deadline Based on Excusable Neglect.

In the alternative, SGA asks this Court to grant a more-than-ten-month extension of the opt-out deadline based on excusable neglect under Rule 6(b)(1)(B). (SGA Br. at 7–9). SGA offers no cogent reason why this Court should grant it special privileges not afforded any other entity and, in effect, blow up the Court's Final Judgment Order.

### A. SGA has not meet the requirements for excusable neglect.

Whether neglect is excusable under Rule 6(b)(1)(B) generally turns on the danger of prejudice to other parties, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith. (Dkt. 3312

---

[8] SGA also claims its settlement negotiations with a different settling defendant, Amick, during the opt-out period (when SGA was free to opt out) somehow should indicate its intent to opt out of the George's and Peco settlements. *But see Brannon v. Household Int'l., Inc.*, 236 Fed. App'x 285, 287 (9th Cir. 2007) ("The fact that ongoing negotiations were taking place does not excuse the [party] from compliance with the judicially ordered exclusion procedures"). Leaving aside doubts about the merits of that argument, SGA's non-public dealings with an unrelated entity have no bearing on the legal consequence of SGA's failure to opt out of the *George's* and *Peco* settlement classes.

11

at p. 6 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Courts—including this Court—have noted "the reason for the delay is the most significant of the four factors, and [] in the face of a clear rule, a failure to follow the rule will rarely be excused." *In re WorldCom, Inc. Sec. Litig.*, No. 02-cv-3288, 2005 U.S. Dist. LEXIS 7958), at *17 (S.D.N.Y. May 6, 2005 (citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366–67 (2d Cir. 2003)); (Dkt. 3312 at p. 7) (denying request to opt-out when Winn-Dixie filed opt out request two days late because "[the party] has not identified any reason at all for this delay"); *see also In re VMS*, 1992 WL 203832, at *3 ("Individual class members seeking late exclusion bear the burden of proving both good faith and a reasonable basis for not complying within the specified period.").

As discussed above, SGA's arguments that it never received notice and that it expressed its intent to opt out by continuing to litigate (SGA Br. at 9) are unavailing. SGA protests that "it was not clear what formal opt-out notification was required" (SGA Br. at 9), but the requirements for opting out were abundantly clear. The Long Form Notice expressly stated that class members were required to send a written request to the Settlement Administrator, at a stated address, before March 9, 2020.[9] As Winn-Dixie unsuccessfully tried previously, SGA cites *In re Processed Egg Products Antitrust Litig.*, 130 F. Supp. 3d 945 (E.D. Pa. Sept. 14, 2015) for the proposition that it should be permitted to opt out late because its misunderstanding about the opt-out process was objectively reasonable. (SGA Br. at 9). Unlike in *Processed Egg Products*, however, there was nothing confusing about the Notice here. In addition, SGA was on notice of the prior court order in ***this*** case, directly on point, that rejected Winn-Dixie's reliance on *Processed Egg Products* and made clear that DAPs are required to follow the opt-out procedures set forth in the notice plan.

---

[9] SGA is thus like the party in *Jackson v. SPS Techs,* where the court found no excusable neglect based on a "mistaken belief that she was not required to formally opt-out," which did "not have anything to do with the Notice itself." No. CV 15-09854, 2018 WL 4440804, at *3 (C.D. Cal. Sept. 4, 2018).

12

(*See* Dkt. 3064 at p. 1 (citing *In re Processed Egg Products* as a reason to permit a belated opt-out); Dkt. 3312 (rejecting request for belated opt-out)).

Not only was it clear that DAPs that had filed individual complaints were required to comply with this process, but numerous other DAPs with pending individual cases against Settling Defendants had no difficulty following the opt-out procedure. (*See* Dkt. 3567; Dkt. 3944). Thus, there is no basis to claim any "confusion"—much less objectively reasonable confusion—about the requirement that a class member wanting to opt out was obligated to send a written request for exclusion to the Settlement Administrator before the March 9 deadline.

Finally, SGA invokes COVID-19 as a basis for excusable neglect, arguing that "clarity regarding the issue was delayed as a result of intervening disruptions attributable to COVID-19." (SGA Br. at 9 (citing Decl. Gregory J. Casas, ¶¶ 3–12, Decl. of Dianne Shay ¶¶ 3–4)). Undoubtedly, the pandemic has created numerous challenges for many litigants and their counsel, but neither of SGA's declaration mentions COVID-19, much less explains why it caused any delay here. In any event, the first COVID-19 related order was entered in this case on March 16, 2020—a full week after the opt-out deadline and over two months after the Court's January 8, 2020 order setting the deadline. (Dkt. 3531).[10] Consequently, SGA has offered no viable explanation for failing to request exclusion from the settlement classes until nearly two months after final approval and more than ten months after the opt-out deadline—and certainly no reason that was not within its reasonable control. As this Court has noted, "'[a]n unaccountable lapse is not excusable neglect.'" (Dkt. 3312 at p. 7 (quoting *Prizevoits v. Indiana Bell Tel. Co.,* 76 F.3d 132, 133 (7th

---

[10] And according to the Settlement Administrator, SGA did not reach out to the Settlement Administrator until December 2020—approximately six weeks after the final approval hearing and Amended Final Judgment Order. (Dkt. 4265-1 at ¶ 24).

13

Cir. 1996)). "Neither is 'inattentiveness to the litigation.'" (*Id.* (quoting *Matter of Plunkett,* 82 F.3d 738, 742 (7th Cir. 1996)).[11]

### B. Permitting an opt-out after final approval will prejudice defendants and jeopardize finality of the settlements.

Although the lack of any compelling explanation for its failure to opt out before the deadline is sufficient to find no excusable neglect, the other factors also support this conclusion. *First,* Settling Defendants "will suffer prejudice insofar as [they] will have to defend against one more plaintiff than would be in litigation if the Court enforces the opt-out deadline." *In re Imprelis Herbicide*, 2014 WL 348593, at *3 (noting this "has been recognized as a basis for questioning tardy opt-out efforts"). Furthermore, the Final Judgment Order included a "Reduction for Opt-Outs," which was calculated and agreed upon (after painstaking efforts by numerous parties) and the settlement amount based on that calculation has already been paid.[12] If SGA had, in fact, opted out, both George's and Peco would have been entitled to a larger refund based on the "Reduction for Opt-Outs" included in their respective agreements. Therefore, a late opt-out would deprive the Settling Defendants of the benefit of their bargain. *Cf. In re Diet Drugs*

---

[11] *See also In re CRT,* 2014 WL 4181732, at *3 (finding no excusable neglect where a party "offered no explanation as to why it missed the applicable opt-out deadline aside from mentioning that notice was inadvertently not sent to outside counsel") (quotation omitted); *Demint v. NationsBank Corp.*, 208 F.R.D. 639, 643 (M.D. Fla. 2002) (finding no excusable neglect without "a candid, straight-forward, and undisputed explanation by the defaulting party of the reason for the failure to comply with the pertinent deadline"); *In re WorldCom*, 2005 U.S. Dist. LEXIS 7958, at *17 (finding no excusable neglect where a party offered no reason for its failure to timely opt out other than a mistaken belief that it had mailed the notice).

[12] The Settlement Agreements called for a reduction of 2% of the Settlement Amount for each percentage point of Opt-Outs exceeding 50%. The opt-out percentage for the George's and Peco settlements was calculated as 51.8% of all Defendants' United States total annual sales for 2008–2017, including opt out requests on behalf of direct purchasers with partial assignments. Using the methodology set forth above, the total reduction amount was 3.6% resulting in net settlement amounts of $4,964,600 from Peco [reduced from $5.15 million] and $4,097,000 from George's [reduced from $4.25 million]. (Dkt. 3944, at 4).

14

*(Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 92 F. App'x 890, 894 (3d Cir. 2004) (denial of late opt out appropriate where settlement agreement contained provisions related to the number of opt outs).

***Second***, there is no doubt that a delay of over ten months is a substantial period of time that weighs in favor of a finding of no excusable neglect. *See In re CRT*, 2014 WL 4181732, at *3 (no excusable neglect with a two-week delay). Indeed, this Court refused to permit a late opt out where an opt-out notice was filed only ***two days*** late. (Dkt. 3312). To permit an opt out after ten months would flout that prior ruling.

***Third,*** SGA's good faith is, at best, neutral. *See In re WorldCom*, 2005 U.S. Dist LEXIS 7958, at *17 ("Even if [the party] were able to show that he acted in good faith, that would be insufficient to justify an extension of the time to opt out."). As the Court in *In re Imprelis Herbicide* explained, the good faith factor is neutral even if the plaintiff acted without malice because failure to follow deadlines is part of good faith and permitting a late opt-out "may actually stand as a problematic example." 2014 WL 348593, at *6. The finality of the George's and Peco settlements—and the Court's Final Judgment Order—would be imperiled and risk expanding this already sprawling litigation if SGA's request were granted. *See id*. at *4 (permitting late opt out would undercut "the Defendant's bargained-for certainty" given "the potential for future requests from similarly situated class members").

***Finally***, that SGA "is entitled to participate in the Class Settlement and to recover damages through the claims resolution process" also weighs against finding excusable neglect. *In re Imprelis Herbicide*, 2014 WL 348593, at *6. Here, SGA can participate in the settlement and pursue its claims against non-settling Defendants—and SGA does not suggest otherwise.

Accordingly, this Court should decline SGA's request to effectively extend the opt-out deadline by more than ten months.

## CONCLUSION

SGA had notice of the Settlements, the opt-out procedures, and the opt-out deadlines by virtue of their counsel receiving ECF notices in this case, through direct mail and email notice, and through court-approved publication notice. But SGA failed to submit an opt-out notice to the Settlement Administrator at any point, offering no colorable—much less compelling—excuse for why it did not or could not have complied within the time period allowed by the Court. SGA should remain a part of the classes for purposes of the George's and Peco Settlements. The Court should deny SGA's "notice" and motion in their entirety.

Dated: February 5, 2021            Respectfully submitted,

/s/ *William Greene*
STINSON LLP
William L. Greene (admitted pro hac vice)
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 335-1500
william.greene@stinson.com

J. Nicci Warr
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
Telephone: (314) 259-4570
nicci.warr@stinson.com

John C. Martin
SUGAR FELSENTHAL GRAIS &
HELSINGER LLP
30 N. LaSalle Street, Suite 3000
Chicago, IL 60602
Telephone: (312) 704-2172
jmartin@sfgh.com

16

THE LAW GROUP OF NORTHWEST ARKANSAS LLP
Gary V. Weeks (admitted pro hac vice)
K.C. Dupps Tucker (admitted pro hac vice)
Kristy E. Boehler (admitted pro hac vice)
1830 Shelby Lane
Fayetteville, AR 72704
Telephone: (479) 316-3760
gary.weeks@lawgroupnwa.com
kc.tucker@lawgroupnwa.com
kristy.boehler@lawgroupnwa.com

*Attorneys for Defendants George's, Inc. and George's Farms, Inc.*


/s/ *Lara Flath*
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Boris Bershteyn (admitted pro hac vice)
Lara Flath (#6289481)
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
boris.bershteyn@skadden.com
lara.flath@skadden.com

Patrick Fitzgerald (#6307561)
Gail Lee
Peter Cheun
155 N. Wacker Drive
Chicago, IL 60606
Telephone: (312) 407-0700
Facsimile: (312) 407-0411
patrick.fitzgerald@skadden.com
gail.lee@skadden.com
peter.cheun@skadden.com

*Attorneys for Defendant Peco Foods, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 5, 2021, he caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *William L. Greene*
William L. Greene