UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION* | Civil Action No. 1:16-cv-08637 |
| | Judge Thomas M. Durkin |
| | Magistrate Judge Jeffrey T. Gilbert |
| THIS DOCUMENT RELATES TO: | |
| *Services Group of America, Inc. v. Tyson Foods, et al.*, Case No. 1:19-cv-04194 | |
| And | Honorable Thomas M. Durkin |
| The Direct Purchaser Plaintiff Action | Honorable Jeffrey T. Gilbert |

**REPLY IN SUPPORT OF SERVICES GROUP OF AMERICA INC'S NOTICE OF OPT-OUT AND OBJECTION TO LIST OF OPT-OUTS WITH RESPECT TO THE DIRECT PURCHASER CLASS PLAINTIFFS' SETTLEMENTS WITH GEORGE'S AND PECO DEFENDANTS, OR IN THE ALTERNATIVE,
<u>MOTION FOR LATE OPT-OUT FROM THE SETTLEMENTS</u>**

In its Motion (ECF Dkt. No. 4187), Services Group of America, Inc. ("SGA") demonstrated that this Court should grant it leave to opt-out from the Direct Purchaser Plaintiff Class (the "DPPs") Settlements with George's, Inc. and George's Farms, Inc. ("George's") and Peco Foods, Inc. ("Peco") (the "Class Settlements"). The Settling Defendants' and the DPPs' responses do little to address the peculiar circumstances applicable to SGA, but they include one new disclosure that provides yet another reason for the Court to allow SGA to retain its claims. Specifically, the Claims Administrator, which failed to respond to numerous inquiries from SGA, admits that it sent the Class Notice to addresses for SGA's former subsidiaries, Food Services of America, Inc. ("FSA"), Systems Services of America, Inc. ("SSA"), and Ameristar Meats, Inc. ("Ameristar"). But on the date of that notice, FSA, SSA, and Ameristar were owned and controlled by a different DAP, US Foods, which requested exclusion from the Settlement Class. When SGA sold its former subsidiaries to US Foods, it retained then-existing claims but surrendered control

of daily operations and of antitrust claims that accrued after the effective date. Thus, to the extent notice reached these entities as asserted, they are covered by the US Foods opt out.

SGA is an idiosyncratic DAP. Its unique circumstances—*i.e.,* sale of the subsidiaries who made purchases from Defendants—mean that there is no risk of undermining the Class Settlement. Moreover, SGA's uncontested good faith in requesting this relief and the lack of prejudice that would result confirm that this Court should allow SGA to opt out of the Settlement Class.

## ARGUMENT

The determination of whether the Court should excuse a party's failure to meet an opt-out deadline depends upon the following factors: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential effect on judicial proceedings: (3) the reason for the delay, including whether it was within the reasonable control of the movant: and (4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

**A. There is Minimal Prejudice to the Settling Defendants.**

The Settling Defendants argue two bases for prejudice that they would suffer if the Court permits SGA to opt out, neither of which registers more than a *de minimis* weight in the four-factor test from *Pioneer*.

First, Plaintiffs argue that the settlement terms would be impacted by a late opt-out, citing *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 92 F. App'x 890, 894 (3d Cir. 2004). The prejudice in *In re Diet Drugs* involved a provision in the settlement agreement which allowed the settling defendant to terminate the settlement based on the number of opt-outs. *Id*. There is no similar termination provision here. Instead, George's and Peco assert they lost bargained-for value because the settlements call for a reduction of 2% for each percentage point of opt-outs exceeding 50% of all Defendants' US total annual sales for 2008-2017. This

2

objection is a red herring. SGA's purchase volume will hardly impact the settlement figures for George's and Peco.[1] Additionally, the parties can easily address any reduction in the settlement, whether through the DPPs or reduction in judgment or settlement value of SGA's case against George's and Peco. In fact, SGA remains eager to settle its claims. Accounting for its manageable share of overall sales is not prejudicial but rather amounts to the loss of a windfall and therefore does not weigh in the Settling Defendants' favor.

Second, the Settling Defendants argue they suffer prejudice because they must defend against an additional plaintiff. Courts have found this argument unavailing in similar cases where the settling defendants already have to defend cases against numerous opt-out plaintiffs. For example, the Northern District of California reasoned that such prejudice, "by itself, is not significant to an 'excusable neglect' analysis," *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 WL 3421366, at *2 (N.D. Cal. July 14, 2014) (citing *Pincay v. Andrews*, 389 F.3d 853, 853 (9th Cir. 2004) (upholding district court finding of "no prejudice" despite the fact that granting extension of time would mean that the non-movant would need to defend an appeal that it would otherwise escape)). This is particularly true when, as here, the defendants do not indicate that they changed litigation strategy relying on the movant's failure to opt out or that the defendants' decision to settle the class action was affected by the movant's participation or non-participation in the class. *See id.* As explained in *In re Processed Egg Products*, such "claimed prejudice is, in

---

[1] In August 2020, the Claims Administrator estimated that the opt-out percentage from the Peco and George's Settlements was 51% of the total value of Broiler purchases from Defendants during the period beginning in 2008 and ending in 2017, and that the DAPs that opted out represent approximately 80% of all commerce during that period. (ECF Dkt. No. 3757-2, at 21–22). These numbers can then be compared against the DAP Group's estimated purchase volumes. Assuming the Claims Administrator's numbers are correct and that SSA, FSA, and Ameristar's purchase volume were not considered as part of US Foods' purchase volume in the Claims Administrator's calculations, these entities' purchase volume as a percentage of all Defendants' US total annual sales for 2008-2017 is approximately 0.5%.

3

reality, the loss of a windfall rather than an affirmative injury to the non-movant," meaning that "to find prejudice, courts typically require more than the fact that the defendant will face an additional lawsuit." *In re Processed Egg Products Antitrust Litig.*, 130 F. Supp. 3d 945, 952 (E.D. Pa. 2015). Examples of more substantial bases for finding prejudice include "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." *In re O'Brien Envt'l Energy, Inc.*, 188 F.3d 116, 127 (3d Cir. 1999). The Settling Defendants do not identify any special burden resulting from SGA continuing to pursue its claims along with other DAPs. No such burden exists, and the Court should count the first factor in SGA's favor.

**B. In this Complicated Action, the Length of Delay Has Had No Impact on the Judicial Proceedings. Upon Learning of the Missed Deadline, SGA Contacted the Claims Administrator and Promptly Filed this Motion.**

The Settling Defendants assert that the length of the delay weighs against excusable neglect, but they fail to identify why the length of the delay is prejudicial or how it impacts judicial proceedings. That is because the length of delay here is inconsequential. Allowing SGA to opt out at this time would not impact judicial proceedings in the least. Since the opt-out deadline, this case has been delayed significantly, owing in large part to the Covid-19 pandemic, but also due to parallel proceedings by the Department of Justice and other, smaller delays resulting from such a large action. The effect of these other delays has been delayed approval of the George's and Peco Settlements until the end of October 2020. During that time—and underscoring the lack of any impact on the proceedings—George's and Peco have continued to seek and receive discovery from SGA and the other Direct Action Plaintiffs who maintain suits against them. In fact, the discovery deadline is still months away with depositions of SGA representatives yet to be scheduled. Decl. Gregory J. Casas ¶¶ 6–9. "This is not the type of effect on proceedings about which the *Pioneer* court was concerned, especially in light of the fact that there is presently no evidence that [SGA] delayed in bad-faith or for tactical reasons." *In re Processed Egg Prod. Antitrust Litig.*, 130 F.

4

Supp. at 955 (holding that this factor weighed in favor of excusable neglect where the final approval of the settlement occurred August 2014 and movants filing their motion to permit a late opt out in January 2015).

The Settling Defendants also exaggerate the length of the delay. Upon receiving the letter from George's counsel alerting SGA to its position that SGA, SSA, FSA, and Ameristar were part of the Settlement Class, SGA contacted the Claims Administrator. Decl. Gregory J. Casas, ¶ 11–12. Once it became clear the Claims Administrator would not provide SGA with information regarding the Class Notices purportedly sent to SGA or its former subsidiaries, SGA filed the instant motion.

Because the length of delay is not significant in context, has not interrupted George's or Peco's litigation efforts, and will not impact judicial proceedings more generally, this factor weighs in favor of finding excusable neglect for SGA.

C. **Reason for the Delay. The Claims Administrator Now Recognizes that It Did Not Provide Notice to SGA; Meanwhile, US Foods, the DAP that Owned SSA, FSA, and Ameristar at the Time of the Class Notice, Opted Out of the Settlement Class.**

As noted in the Settling Defendants' response, SGA filed its opt-out lawsuit expressly based on assignments from its former subsidiaries SSA, FSA, and Ameristar who purchased chicken directly from Defendants. In September 2019, prior to the Preliminary Approval of the Settlements (ECF Dkt. No. 3359), SGA sold FSA, SSA, and Ameristar to another Direct Action Plaintiff, US Foods. *See* Decl. Dianne Shay, ¶ 4 (ECF Dkt. No. 4187-2). This sale was publicly reported[2] and internet searches for SSA, FSA, and Ameristar lead to US Foods' website.[3] The

---

[2] *See e.g.*, US Foods, US Foods Completes Acquisition of SGA's Food Group of Companies, Sept. 13 2019, https://ir.usfoods.com/investors/stock-information-news/press-release-details/2019/US-Foods-Completes-Acquisition-of-SGAs-Food-Group-of-Companies/default.aspx.
[3] *See* https://www.usfoods.com/locations/steaks-and-chops-supplier-in-spokane--wa.html (Ameristar), https://www.usfoods.com/our-services/easy-ordering/fsa-toolbox.html (FSA and SSA).

5

Claims Administrator, in its declaration attached to the DPPs' response, acknowledges that it did not send a Class Notice to SGA. *See* Decl. Jennifer Keough, ¶ 18 (ECF Dkt. No. 4265-1). Instead, the Claims Administrator purportedly sent Class Notices to SSA, FSA, and Ameristar on January 8, 2020—at which time these entities and locations were owned and controlled by US Foods. *Id*.; Decl. Dianne Shay, ¶ 4 (ECF Dkt. No. 4187-2). However, US Foods sent a timely request for exclusion from the George's and Peco Settlements and is listed as an opt-out in the Court's Order finally approving the DPP Settlements with George's and Peco. (ECF Dkt. No. 3944 at 17, 64). Therefore, the Claims Administrator failed to effect Class Notice on SGA, and to the extent the Class Notice to SSA FSA, and Ameristar was sent to their then-owner, US Foods, the latter's opt-out notice should encompass the subsidiaries' claims as well.

The Settling Defendants argue that ECF notifications to SGA's attorneys related to the DPPs case and preliminary approval of the DPPs' settlement with George's and Peco were sufficient to put SGA on notice of its need to send requests for exclusion to the Claims Administrator.[4] However, SGA's counsel receiving notifications relating to the DPP case, to which SGA is not a party, does not sufficiently notify SGA of its status as a potential member of the Settlement Class (as opposed to individual notice) and should not deprive SGA of its rights to receive such notice.

Settling Defendants further argue that, "[u]nlike the Class Notice in *In re Processed Egg Products* . . . there was nothing confusing about the notice here." (ECF Dkt. No. 4275 at 12). In fact, the *Processed Egg Products* court found excusable neglect despite finding that the class notice warned of the release of pending claims. *In re Processed Egg Prod. Antitrust Litig.*, 130 F. Supp.

---

[4] The Settling Defendants mistakenly assert that SGA's counsel attended and commented at the preliminary approval hearing (ECF Dkt. No. 4275 at 3). To the contrary, SGA's counsel attended and spoke at the hearing only with respect to Case Foods' Motion to Dismiss SGA's claims against it, which took place on the same day. (ECF Dkt. No. 3361 at 89–90).

at 952, 955. And here, the Class Notice failed to reach SGA directly, and the form notice attached to the January 8, 2020 Order contains confusing and ambiguous language as to whether Direct Action Plaintiffs with pending lawsuits against George's or Peco would need to send a request for exclusion from the Settlement Class to the Claims Administrator:

- "Unless you exclude yourself from one or more of the Settlement Agreements, you give up the right to sue that Settling Defendant for the claims that Settlement resolves . . . If you have your own pending lawsuit against any of the Settling Defendants, speak to your lawyer in that lawsuit immediately to determine whether you must exclude yourself from this Settlement Class to continue your own lawsuit against the Settling Defendants." (ECF Dkt. No. 3394 at ¶ 14)

- "If you wish to pursue your own case separate from this one, **or if you exclude yourself from the Settlement Class**, [the DPP] lawyers will no longer represent you." (ECF Dkt. No. 3394 at ¶ 17) (emphasis added).

Contrary to the Settling Defendants assertion, the reason for the delay were explained in SGA's motion. The Class Notice was not sent to or received by SGA, and to the extent the Court finds that SGA received notice through ECF delivery of the January 8, 2020 order preliminarily approving the settlement, SGA did not appreciate the need to send a request for exclusion to the Claim Administrator given its current opt-out suit, the ambiguity of the Class Notice itself, and George's and Peco's actions in continuing to pursue their defenses through discovery directed against SGA during and after the opt-out period. Decl. Gregory J. Casas ¶¶ 6–9. Once George's counsel responded to SGA's settlement demand letters asserting that SGA is part of the Settlement Class, SGA took actions to confirm information regarding receipt of the Class Notice and file the instant motion seeking leave from this Court. *Id.*, ¶¶ 11-12. Courts have repeatedly found excusable neglect based on similar reasons for delay, as excusable neglect is an "'elastic concept' and is not limited strictly to omissions caused beyond the control of the movant." *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1210 (D.C. Cir. 2003) (upholding finding of excusable neglect despite attorney neglect in missing deadline) (citing *Yesudian ex rel. U.S. v. Howard*

7

*Univ.*, 270 F.3d 969, 971 (D.C.Cir. 2001) (applying the excusable neglect standard without emphasis on any particular *Pioneer* factor); *In re Processed Egg Prod. Antitrust Litig.*, 130 F. Supp. at 955–56 (finding excusable neglect where DAP attorney did not request exclusion from settlements because it believed its opt-out suit was sufficient, regardless of the decision's objective reasonableness).

The Keough Declaration sheds new light on the chain of events that led to SGA not receiving the Class Notice. Just as the Claims Administrator can be excused for not realizing that SGA retained some of the claims on behalf of SSA, FSA, and Ameristar, so too SGA should be excused for not knowing what was provided to US Foods. If anything, the clearest resolution is to apply the US Foods opt out to the subsidiaries' claims, regardless of which DAP owns them. On balance, this factor either favors SGA or does nothing to overcome the entirety of the circumstances weighing in favor of excusable neglect.

### D. SGA Acted Entirely in Good Faith.

SGA's good faith in filing this motion is indisputable. Contrary to the Settling Defendants' comparisons, SGA's circumstances are starkly different than those of Winn-Dixie, whom the Court acknowledged (1) failed to identify "any reason at all for [its] delay"; (2) was aware of the need to request exclusion from the Fieldale settlement; (3) post-marked its request for exclusion after the deadline; and (4) "baldly" asserted that because the Claims Administrator acknowledged receipt of its untimely request for exclusion, Winn-Dixie "had no reason to review the [Class's] motion for final approval of the [settlement] to see if they were included as opt-outs." *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2019 WL 6699664, at *1 (N.D. Ill. Dec. 9, 2019). Here, SGA did not receive a Class Notice; SGA's counsel continued to pursue its case against George's and Peco; SGA separately settled with Amick Farms, the other party to the Class Settlement; and SGA was unaware of the need to send a request for exclusion to the Claims Administrator until

8

after the settlements were approved. Decl. Gregory J. Casas ¶¶ 5–12. This case is most similar to *In re Processed Egg Products*, in which the Court recognized that, even assuming the decision not to send a request for exclusion from the settlements was ultimately wrong, "[w]hen examining the totality of the circumstances" at the time of the opt-out deadline, SGA's inaction "was not unreasonable and was certainly not part of a 'sinister, well-conceived plan to frustrate the opponent.'" *In re Processed Egg Prod. Antitrust Litig.*, 130 F. Supp. 3d at 956. Like the movants in *In re Processed Egg Products*, SGA's response to George's counsel's letter "indicate[d] confusion and surprise" to its alleged inclusion in the class settlements as opposed to any sinister motive to obtain a strategic advantage from waiting to opt out. *Id.*; (ECF Dkt. No. 4275-1 at 4–7). When considering the totality of the circumstances, SGA certainly acted in good faith and its failure to send a request for exclusion before the opt-out deadline was simply the result of excusable neglect.

## CONCLUSION

For the reasons stated above, SGA respectfully requests that it be deemed to have opted out of the Settlements with respect to the claims brought by SGA individually and as assignee of the SSA, FSA, and Ameristar claims due to conduct that put the Settling Defendants on notice that it was not participating in the Settlements and formal request for exclusion. Alternatively, SGA requests that the Court recognize US Foods' opt out as including a request for exclusion from the Class Settlements by SSA, FSA, and Ameristar which are now, and were at the time of the Class Notice, wholly owned subsidiaries of US Foods. Further, and in the alternative, SGA respectfully requests that it be permitted to opt-out at this time because the notice was not adequate as to SGA or the SGA Subsidiaries and failed to deliver on the Claims Administrator's promised method of providing notice, despite ready access to the information necessary to do so. If the Court

determines that SGA received proper notice, then any delay was at least excusable neglect under Federal Rule of Civil Procedure 6(b).

Dated: February 15, 2021   Respectfully submitted,

    */s/ Gregory J. Casas*
John F. Gibbons
Illinois Bar No. 6190493
gibbonsj@gtlaw.com
Thomas E. Dutton
Illinois Bar No. 6195923
duttont@gtlaw.com
GREENBERG TRAURIG, L.L.P.
77 West Wacker Dr. Suite 3100
Chicago, IL 60601
Telephone: 312-456-8400
Fax: 312-456-8435

Gregory J. Casas (admitted *pro hac vice*)
Texas Bar No.: 00787213
casasg@gtlaw.com
Erik Weber (admitted *pro hac vice*)
Texas Bar No.: 240898587
weberer@gtlaw.com
GREENBERG TRAURIG, L.L.P.
300 West Sixth Street, Suite 2050
Austin, Texas 78701-4052
Telephone: 512-320-7200
Fax: 512-320-7210

Dominic E. Draye (admitted *pro hac vice*)
Arizona Bar No. 033012
drayed@gtlaw.com
GREENBERG TRAURIG, L.L.P.
2375 East Camelback Road, Suite 700
Phoenix, AZ 85016
Telephone: 602-445-8000
Fax: 602-445-8100

*Attorneys for Services Group of America, Inc.*

10

## CERTIFICATE OF SERVICE

I, Erik Weber, hereby certify that a true and correct copy of the foregoing Reply in Support of Services' Group of America's Notice of Opt-Out and Objection to List of Opt-Outs with Respect to the Direct Purchaser Class Plaintiffs' Settlements with George's and Peco Defendants, or in the Alternative, Motion for Late Opt-Out from the Settlements was electronically filed with the Clerk of the Court using the CM/ECF system on February 15, 2021, which constitutes service on counsel of record who are registered electronic filing users.

*/s/ Erik Weber*
Erik Weber