**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| | Honorable Thomas M. Durkin |
| | Magistrate Judge Jeffrey T. Gilbert |
| This Document Relates To: | |
| All End-User Consumer Plaintiff Actions | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENTS**
**BETWEEN END-USER CONSUMER PLAINTIFFS**
**AND TYSON, FIELDALE, PECO FOODS AND GEORGE'S DEFENDANTS**

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    SUMMARY OF LITIGATION................................................................................1

III.   SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS ................................2

     A.    Fieldale Settlement..........................................................................................3

     B.    Peco and George's Settlements.......................................................................4

     C.    Tyson Settlement ............................................................................................5

IV.   THE SETTLEMENTS FALL WITHIN THE RANGE OF POSSIBLE APPROVAL.......7

V.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS.............9

     A.    The Proposed Settlement Class Satisfies Rule 23(a) ...............................9

          1.    Numerosity.........................................................................................9

          2.    Commonality......................................................................................9

          3.    Typicality .........................................................................................10

          4.    Adequacy .........................................................................................10

     B.    The Proposed Settlement Class Satisfies Rule 23(b)(3) .......................11

VI.   EUCPS PROPOSE TO SEND NOTICE AFTER THE CERTIFICATION OF A
LITIGATION CLASS, OR AFTER THEY HAVE COLLECTED SUFFICIENT
CONTACT INFORMATION...........................................................................................12

VII.  CONCLUSION.........................................................................................................14

010636-11/1440660 V1₁

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### FEDERAL CASES

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
2012 WL 651727 (N.D.Ill. Feb.28, 2012) ...............................................................8

*Armstrong v. Bd. of Sch. Dirs.*,
616 F.2d 305 (7th Cir. 1980) ...................................................................................7

*Burns v. Elrod*,
757 F.2d 151 (7th Cir. 1985) .................................................................................13

*City of Greenville v. Syngenta Crop Protection, Inc.*,
2012 WL 1948153 (S.D. Ill. May 30, 2012)..........................................................13

*De La Fuente v. Stokely-Van Camp, Inc.*,
713 F.2d 225 (7th Cir. 1983) .................................................................................10

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) ...................................................................................7

*Kleen Prods. LLC v. Int'l Paper Co.*,
831 F.3d 919 (7th Cir. 2016) .................................................................................11

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) .................................................................................11

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) .................................................................................11

*Prac. Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*,
301 F. Supp. 3d 840 (N.D. Ill. 2018) ..................................................................9, 12

*Retired Chicago Police Ass'n v. City of Chicago*,
7 F.3d 584 (7th Cir. 1993) .....................................................................................10

*In re Rubber Chems. Antitrust Litig.*,
232 F.R.D. 346 (N.D. Cal. 2005)............................................................................10

*Saltzman v. Pella Corp.*,
257 F.R.D. 471 (N.D. Ill. 2009)..............................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)................................................................................................10

## FEDERAL STATUTES

Sherman Act.....................................................................................................................1, 12

## FEDERAL RULES

Federal Rule of Civil Procedure 23 ......................................................................... *passim*

## I.     INTRODUCTION

End-User Consumer Plaintiffs respectfully move for preliminary approval of settlements with Defendants Fieldale ($1.7 million),[1] Peco ($1.9 million),[2] George's ($1.9 million),[3] and Tyson ($99 million)[4] (collectively, "Settling Defendants"). These icebreaker settlements – negotiated at arm's length – provide $104 million in total relief to the EUCPs. Settling Defendants' agreement to provide cooperation will also strengthen EUCPs' case against the remaining Defendants.

In addition, , the settlements fall within the range of possible approval under Federal Rule of Civil Procedure 23(e), the proposed settlement class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b), and the proposed notice plan is reasonable. EUCPs therefore request that the Court schedule a preliminary approval hearing.

## II.     SUMMARY OF LITIGATION

EUCPs have been litigating this case diligently for over four years. On December 14, 2016, the Court appointed Hagens Berman Sobol Shapiro LLP as lead counsel supported by Cohen Milstein Sellers & Toll, PLLC as additional counsel for the putative EUCP class. ECF No. 248. Two days later, EUCPs filed a Consolidated Amended Class Action Complaint alleging that defendants conspired to suppress chicken output and raise chicken prices, in violation of the Sherman Act and many state antitrust and consumer protection laws. ECF No. 255.[5] On November

---

[1] In this memorandum, "Fieldale" refers to the Defendant Fieldale Farms Corporation.

[2] "Peco" refers to Defendant Peco Foods, Inc.

[3] "George's" refers to Defendants George's Inc. and George's Farms, Inc.

[4] "Tyson" refers to Defendants Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Breeders, Inc., and Tyson Poultry, Inc.

[5] EUCPs' initial Consolidated Amended Class Action Complaint alleged that fourteen chicken processors maintained a *per se* unlawful conspiracy to suppress chicken output and raise prices.

20, 2017, the Court denied defendants' motions to dismiss. ECF No. 541.

Since then, EUCPs have engaged in rigorous discovery. Working with counsel representing the other classes, EUCPs have collected over eight million documents and taken over 100 depositions of defendants' employees and third parties, and collected and analyzed voluminous structured data. Scarlett Decl., ¶ 3.[6] In addition, all current class representatives sat for depositions. On April 29, 2019, EUCPs amended their pleadings to add a claim that defendants participated in an anticompetitive information exchange, in violation of the Rule of Reason. ECF No. 2170.

On June 21, 2019, after the United States Department of Justice ("DOJ") moved to intervene in this case, the Court issued a partial stay of discovery. ECF No. 2302. On October 16, 2019, the Court extended the partial stay until June 27, 2020. ECF No. 3153. To date, the DOJ's investigation has resulted in multiple indictments for bid rigging and price fixing. *See* Superseding Indictment, *United States v. Penn*, 1:20-cr-00152-PAB (D. Co. Oct. 6, 2020), ECF. No. 101.

On October 30, 2020, EUCPs filed a motion for class certification, supported by two expert declarations and a declaration provided by Fieldale (described in further detail below). ECF No. 3971. The motion marshalled substantial econometric evidence, documentary evidence, and deposition testimony to show that EUCPs' claims are susceptible to class-wide treatment. *See id.*

### III.    SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS

Each of the settlements was the product of confidential, protracted, intense arms-length negotiations and includes both monetary relief for the class and cooperation in EUCPs' litigation against the non-settling defendants.

---

ECF No. 255. On February 12, 2018 EUCPs filed an Amended Complaint naming Agri Stats and three additional chicken processors as defendants. ECF No. 716.

[6] "Scarlett Decl." refers to the Declaration of Shana E. Scarlett in Support of Motion for Preliminary Approval of Settlement Agreements Between End-User Consumer Plaintiffs and Tyson, Fieldale, Peco Foods and George's Defendants, concurrently filed herewith.

A.      **Fieldale Settlement**

EUCPs first discussed settlement with Fieldale in September of 2017, without reaching resolution. Scarlett Decl., ¶ 4. Negotiations resumed between November 2018 and March 2019, after EUCPs participated in depositions of Fieldale employees and gathered substantial documentary evidence. *Id*. Again, however, these discussions were unsuccessful. *Id*. In August of 2020, after Plaintiffs took dozens more depositions of defendants' employees and third parties, settlement discussions resumed. *Id*. These negotiations continued intensely through October 2020, and included discussions about cooperation Fieldale could provide to support EUCPs' motion for class certification. *Id*. EUCPs and Fieldale signed a memorandum of understanding on October 30, 2020, and signed the final settlement agreement on December 3, 2020. *Id*.; Ex. A.

The settlement provides that Fieldale will pay $1.7 million ($1,700,000) into a settlement fund that will be used to compensate the EUCP class and cover litigation fees and expenses, including the cost of notifying class members and administering the settlement. Ex. A. Lead Counsel believe this sum is fair and reasonable in light of Fieldale's market share of class products, and the significant cooperation Fieldale agreed to provide:

> Fieldale executed an agreed-upon declaration, which Plaintiffs used in support of their motion for class certification. *See* Exhibit 1, ECF No. 3972-1. Upon request, Fieldale will provide one witness at trial to confirm the contents of the declaration. Fieldale will also make reasonable efforts to provide a stipulation, declarations, or affidavits relating to the authentication or admissibility of documents, if reasonably requested by Plaintiffs in connection with the action.

*Id.*, Ex. A.

In exchange, EUCPs agree to release:

> any and all claims [against Fieldale] asserted in the Action and any and all existing or potential claims, demands, actions, suits, causes of action, upon any theory of law or equity, whether class, individual, or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates

– 3 –

in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasing Parties (defined below), or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated, claims, causes of action, injuries, damages or other relief, arising from or in connection with any act or omission during the Class Period relating to or referred to in the Action or arising from the factual predicate of the Litigation.

Ex. A. The released claims "do not include claims asserted against any other Defendant or against any Unrelated Co-Conspirator." *Id.*

## B.        Peco and George's Settlements

EUCPs first discussed settlement with Peco and George's in September 2019. Scarlett Decl., ¶ 7. Intense negotiations continued until February 2020, but the parties could not reach an agreement. *Id.* Settlement discussions resumed in July of 2020 and continued until October 28, 2020, when EUCPs signed settlement agreements with both defendants. *Id.*at 7-8.

The settlements provide that Peco and George's will each pay $1.9 million ($1,900,000) into settlement funds that will be used to compensate the EUCP class and cover litigation fees and expenses, including the cost of notifying class members and administering the settlement. *Id.* at 8, Ex. B-C. Lead Counsel believe this sum is fair and reasonable in light of Peco and George's market share of class products, and the cooperation they agreed to provide in the form of reasonable "declarations or affidavits relating to authentication or foundation for admissibility of documents (e.g. business records) and/or things at issue, if reasonably requested by the Plaintiffs in connection with this Action." *Id.*

In exchange, EUCPs agree to release:

[A]ny and all claims [against Peco and George's] asserted in the Action and any and all existing or potential claims, demands, actions, suits, causes of action, upon any theory of law or equity, whether class, individual, or otherwise in nature (whether or not any

> Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasing Parties (defined below), or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated, claims, causes of action, injuries, damages or other relief, arising from or in connection with any act or omission during the Class Period relating to or referred to in the Action or arising from the factual predicate of the Litigation.

Ex. B-C. The released claims "do not include claims asserted against any other Defendant or against any Unrelated Co-Conspirator." *Id.*[7]

## C.     Tyson Settlement

EUCPs first discussed settlement with Tyson in January 2020. Scarlett Decl., ¶ 10. Negotiations were mediated by Judge Daniel Weinstein (ret.). In early April 2020, the parties engaged in a mediated negotiation but were unable to reach agreement. Negotiations continued through July 2020, but the parties did not reach agreement. In December 2020, the parties agreed to continue negotiations with another mediation day facilitated by Judge Weinstein. Following an intense day-long mediation in mid-January 2021, the parties reached an agreement. The final settlement agreement was signed on February 24, 2021. *Id.*, ¶ 11.

The settlement provides that Tyson will pay $99 million ($99,000,000) into a settlement fund that will be used to compensate the EUCP class and cover litigation fees and expenses, including the cost of notifying class members and administering the settlement. Ex. D.  Lead Counsel believe this sum is fair and reasonable in light of Tyson's market share of class products, and the significant cooperation Tyson agreed to provide, including:

---

[7] The settlements with Peco and George's may be terminated in the unlikely event that more than 500,000 potential class members "timely and validly exclude themselves from the Settlement Class." *Id.*

- Up to three then-current or former Tyson employees as live witnesses; and "[a]t EUCP's request, one of those witnesses will include an employee with extensive experience in working with Agri Stats reports."

- An agreement not to oppose the depositions of six individuals, agreed to by the Parties.

- Assurances that Tyson will provide "reasonable efforts to respond to a reasonable number of EUCPs' questions regarding and otherwise assist EUCPs to understand structured data produced by Tyson."

- An agreement to "authenticate documents and/or things produced in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations, affidavits, depositions, hearings and/or trials as may be necessary for the Action."

- An agreement to meet with EUCPs for 7 hours and proffer a reasonably detailed description of the principal facts known to Tyson that are relevant to the alleged conduct at issue in the Action, including facts previously provided to the DOJ or any other U.S. government investigative authority in response to subpoenas or otherwise relating to bid-rigging or price fixing involving Broilers.

In exchange, EUCPs agree to release:

> [A]ny and all Claims and any and all existing or potential, known or unknown, Claims, demands, actions, suits, causes of action, upon any theory of law or equity, whether class, individual, or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasing Parties (defined below), or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated, claims, causes of action, injuries, damages or other relief, arising from or in connection with any act or omission during the Class Period relating to or referred to in the Action or arising from the factual predicate of the Litigation or any conduct that could or should have been challenged, raised or alleged in the Action ("Released Claims"). Notwithstanding the above, "Released Claims" do not include claims asserted against any other Defendant or against any Unrelated Co-Conspirator. Released Claims includes all such claims for the period from and including January 1, 2009 through December 31, 2020.

Ex. D.

EUCPs settlement agreement with Tyson refers to a judgment sharing agreement among certain defendants. This judgment sharing agreement provides that the remaining defendants will not be jointly and severally liable for damages that reflect a settling defendant's share of damages. The members of this judgment sharing agreement previously agreed how they would allocate each defendant's share of liability based on their respective sales. Because of this judgment sharing agreement, if EUCPs are awarded damages and final judgment, Tyson's portion of the damages would be removed from the calculation of the award.[8]

## IV. THE SETTLEMENTS FALL WITHIN THE RANGE OF POSSIBLE APPROVAL

"It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312 (7th Cir. 1980)), *overruled on other grounds, Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). However, Courts must review class action settlements to ensure that they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

"The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (internal quotation marks omitted). In other words, the Court must consider whether it "will likely be able to" approve the settlement as fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(B)(i); *see* Fed. R. Civ. P. 23(e)(2).

It is highly likely that EUCPs' agreements with the Settling Defendants are fair, reasonable, and adequate. A "presumption of fairness, adequacy, and reasonableness may attach to a class

---

[8] The settlement with Tyson may be terminated in the event that more than 10,000 potential class members "timely and validly exclude themselves from the Settlement Class." *Id.*

settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc*., Nos. 07 Civ. 2898, 09 Civ.2026, 2012 WL 651727, at *10 (N.D.Ill. Feb.28, 2012) (quoting *Wal–Mart Stores, Inc. v. Visa USA, Inc*., 396 F.3d 96, 116 (2d Cir.2005)). As explained above, each of the settlements here was the result of arm's length negotiations over several months, which took place after EUCPs (working with other plaintiffs) collected over eight million documents and deposed more than 100 witnesses. The settlements should therefore be accorded a presumption of fairness.

Furthermore, "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Class representatives have all prepared and sat for depositions and worked diligently to serve the interests of the class. *See* Scarlett Decl., Exs. E-F. In addition, the settlements provide "adequate" relief for the class, in accordance with Fed. R. Civ. P. 23(e)(2)(C). Fieldale and Peco each represent an estimated 1.7% of market share for EUCP class products. Likewise George's represents 1.2%. In contrast, Tyson represents approximately 33.3% of the EUCP market. *See* Scarlett Decl., ¶ 14. The $104 million settlements represent more than $2.74 million for each point of market share – putting the value of this case well over $274 million at this stage in the litigation. This is an outstanding result. In addition to the financial compensation, the cooperation that EUCPs have secured from the settlements will bolster EUCPs' claims against the fourteen non-settling defendants. EUCPs have also identified a reasonable method of distributing relief to class members. Finally, the proposed settlements "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Funds will be awarded based on the amount of class products purchased.

## V.     THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

Each of the settlements proposes the same Settlement Class, which is consistent with the one alleged in the End-User Consumer Plaintiffs' Fifth Consolidated Amended Class Action Complaint, Aug. 7, 2020, ECF Nos. 3747 (redacted), 3748 (sealed), defined as:

> All persons and entities who indirectly purchased fresh or frozen raw chicken (defined as whole birds (with or without giblets), whole cut-up birds purchased within a package, or "white meat" parts including breasts and wings (or cuts containing a combination of these), but excluding chicken that is marketed as halal, kosher, free range, or organic) from Defendants or alleged co-conspirators for personal consumption, where the person or entity purchased in California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Rhode Island (after July 15, 2013), South Carolina, South Dakota, Tennessee, Utah, and Wisconsin from January 1, 2009 (except for Rhode Island, which is from July 15, 2013) to July 31, 2019.

As explained below, this Settlement Class satisfies all the requirements of Rule 23.

### A.     The Proposed Settlement Class Satisfies Rule 23(a)

#### 1.     Numerosity

The numerosity requirement of Rule 23(a)(1) is satisfied where joiner of all putative class members is "impracticable." *Prac. Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 849 (N.D. Ill. 2018). Generally, a class of forty or more plaintiffs is sufficient to satisfy the numerosity requirement. *Id.* As explained in Plaintiffs' motion for class certification, Plaintiffs are seeking to certify a class of millions of chicken consumers, which clearly meets this bar. *See* EUCPs' Mot. for Class Cert. at 20, ECF No. 3971.

#### 2.     Commonality

There are also "questions of law or fact common to the [EUCP] class." Fed. R. Civ. P. 23(a)(2). Commonality exists where plaintiffs' claims depend on a "common contention . . . of

such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). EUCPs are relying on several common contentions, including: (1) defendants conspired to decrease chicken output and suppress chicken prices; and (2) defendants' conduct caused overcharges for chicken consumers. *See* EUCPs' Mot. for Class Cert. at 20-21, ECF No. 3971.

### 3. Typicality

Under Rule 23(a), typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). The typicality requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993). In the antitrust context, a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members" (*De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (internal quotation marks and citation omitted)), and "plaintiffs and all class members alleg[e] the same antitrust violations by defendants." *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 351 (N.D. Cal. 2005). Here, typicality is satisfied because EUCPs' claims are based on the same antitrust conspiracy. *See* EUCPs' Mot. for Class Cert. at 21-22, ECF No. 3971.

### 4. Adequacy

The proposed plaintiffs are adequate representatives of the proposed class. Fed. R. Civ. P. 23(a)(4). The adequacy requirement is satisfied where the named representatives have a sufficient interest in the outcome of the case to ensure vigorous advocacy, and do not have interests antagonistic to those of the class. *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D. Ill. 2009). The named plaintiffs have no material conflict with other class members. Each purchased chicken

from grocery stores, unaware of the existence of defendants' alleged agreement to suppress the price and supply of chicken. No one individual class member could avoid the claimed overcharges. Each named plaintiff is aligned with the class in establishing defendants' liability and maximizing class-wide damages. *See* EUCPs' Mot. for Class Cert. at 22, ECF No. 3971.

**B.      The Proposed Settlement Class Satisfies Rule 23(b)(3)**

Under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both of these requirements are satisfied here.

First, common questions of law or fact predominate over individual questions. "Common questions can predominate if a 'common nucleus of operative facts and issues' underlies the claims brought by the proposed class." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (quoting *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006)); *see also Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 925 (7th Cir. 2016). Here, a series of common questions lies at the heart of all plaintiffs' claims, including: whether defendants conspired to lower chicken output and suppress prices; whether defendants' information exchange was anticompetitive; whether defendants' conspiracy caused market-wide supracompetitive chicken prices; and whether higher chicken prices were passed on to chicken consumers. *See* EUCPs' Mot. for Class Cert. at 23-43, ECF No. 3971.

Second, a class action is the superior mechanism for trying plaintiffs' claims. "Rule 23(b)(3)'s superiority requirement . . . is comparative: the court must assess efficiency [of a class action] with an eye toward other available methods." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015) (internal quotation marks omitted). Rule 23 instructs that the matters pertinent to this inquiry include: (a) class members' interests in individually controlling the prosecution of

- 11 –

separate actions; (b) whether other litigation exists concerning this controversy; (c) the desirability of concentrating the litigation in this forum; and (d) any difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). In this case, the first three factors weigh heavily in favor of class certification: class members have "little economic incentive to sue individually based on the amount of potential recovery involved, there are no known existing individual lawsuits [filed by end-user consumers], and judicial efficiency is served by managing claims in one proceeding." *Cirque du Soleil, Inc.*, 301 F. Supp. 3d at 856; *see* EUCPs' Mot. for Class Cert. at 43-44, ECF No. 3971.

At the same time, there are no difficulties in managing this case as a class action. Litigating the claims of the class members from different States in this Court does not present manageability concerns because all class members purchased chicken in states that have an antitrust or consumer statute that tracks the federal Sherman Act, ensuring that the core questions of liability will be proved with common evidence. *See* EUCPs' Mot. for Class Cert. at 43-44, ECF No. 3971.

Finally, the proposed Settlement Class is ascertainable. Here, a class member may self-identify simply by reviewing the class definition. Moreover, as explained in the next section, EUCPs can use grocery store data as an additional mechanism to help identify class members. *See id*.

## VI.     EUCPS PROPOSE TO SEND NOTICE AFTER THE CERTIFICATION OF A LITIGATION CLASS, OR AFTER THEY HAVE COLLECTED SUFFICIENT CONTACT INFORMATION

After a Court preliminarily approves a settlement under Rule 23, class members must be notified of the settlement. *See* Fed. R. Civ. P. 23(3)(1)(B). The notice must be "the best notice that is practicable under the circumstances" and describe the contours of the litigation and proposed class in reasonably understandable language. The notice:

> [M]ust clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

"[I]ndividual notice" must be given to all class members "who can be identified through reasonable effort," and may be given by "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). Other class members may be notified by publication. *City of Greenville v. Syngenta Crop Protection, Inc.*, No. 3:10-CV-188, 2012 WL 1948153, at *4 (S.D. Ill. May 30, 2012). "Due process requires that class members generally must receive notice of the terms of settlement." *Burns v. Elrod*, 757 F.2d 151, 156 (7th Cir. 1985).

Here, the parties agreed to defer the collection of contact information for members of the end-user class until they had reached a settlement or a class had been certified. *See* Stipulation and Order Concerning Class Contact Information, August 29, 2018, ECF No. 1160. Given that these settlements have now been reached, counsel for the EUCP class intends to pursue subpoenas for this contact information from the major grocery stores in the country and their loyalty programs.

Many of the major grocery stores retain consumers' purchase histories and contact information, including customers' email addresses. *See* Declaration of Cameron R. Azari in Support of End-User Consumer Purchaser Plaintiffs' Mot. for Class Cert., October 30, 2020, ECF No. 3792. For example, Cameron Azari – an expert in legal notice and class action notice plans – found more than a dozen examples of grocery stores that appear to retain this data. *See id.*, ¶¶ 9-19. This information can be used to identify class members and notify them of their claims.

## VII. CONCLUSION

For these reasons, Interim Lead Counsel respectfully requests that the Court preliminary approve the settlement agreements with Fieldale, Peco, George's and Tyson, and preliminarily certify the Settlement Class. Class Counsel proposes that they will provide an update on the collection of class contact information within 90 days.

DATED: March 1, 2021

HAGENS BERMAN SOBOL SHAPIRO LLP

By:  /s/ Steve W. Berman
     STEVE W. BERMAN

Breanna Van Engelen
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Shana E. Scarlett
Rio S. Pierce
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
shanas@hbsslaw.com
rios@hbsslaw.com

*Co-Lead Counsel for End-User Consumer Plaintiffs*

Kit A. Pierson
Brent W. Johnson
Benjamin D. Brown
Daniel H. Silverman
Alison Deich
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:  (202) 408-4699

kpierson@cohenmilstein.com
bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com
dsilverman@cohenmilstein.com
adeich@cohenmilstein.com

***Additional Counsel for End-User Consumer Plaintiffs***