**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | Case No.: 1:16-cv-08637 |
| | The Honorable Thomas M. Durkin |
| This Document Relates To: | Magistrate Judge Jeffrey T. Gilbert |
| The Direct Purchaser Plaintiff Action | **PUBLIC RECORD** |
| | **REDACTED VERSION** |

**DIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE DIRECT PURCHASER PLAINTIFFS'
EXPERT DR. COLIN A. CARTER**

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 1

II.  BACKGROUND ............................................................................................ 1

   A.  Dr. Carter's Opinions. ............................................................................ 1

   B.  The Purpose of Dr. Carter's Structural Break Test is to Identify the Benchmark Period and the Class Period. ...................................................................................... 2

III.  LEGAL STANDARD ................................................................................... 3

IV.  ARGUMENT ................................................................................................ 4

   A.  Defendants' *Daubert* Challenge is Very Limited in Scope. ................................. 4

   B.  Each of Defendants' Challenges to Dr. Carter's Testimony is Unavailing. ........................ 5

      1.  Defendants' challenges to Dr. Carter's Structural Break test are based on their fundamental misconception of the analysis. .................................................. 5

      2.  Dr. Carter's Multiple Regression Model is a Standard Methodology That Has Been Reliably Applied. ................................................................................ 10

      3.  Dr. Carter's Opinions Regarding Defendants' Conduct are Based on the Record and Widely Accepted Economic Principles. ....................................................... 14

V.  CONCLUSION ............................................................................................ 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Dairy Mktg. Servs.*, LLC,
    No. 5:09-CV-230, 2013 WL 6909953 (D. Vt. Dec. 31, 2013) ................................................13

*In re Blood Reagents Antitrust Litig.*,
    No. 09-2081, 2015 WL 6123211 (E.D. Pa. Oct. 19, 2015) ................................................5, 10

*In re Capacitors Antitrust Litig.*,
    No. 14-cv-03264-JD, 2018 WL 5980139 (N.D. Cal. Nov. 14, 2018) ....................................12

*In re Cathode Ray Tech. (CRT) Antitrust Litig.*,
    308 F.R.D. 606 (N.D. Cal. 2015)..........................................................................................12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ....................................................................................................... *passim*

*In re Disposable Contact Lens Antitrust Litig.*,
    329 F.R.D. 336 (M.D. Fla. 2018)........................................................................................14

*Elcock v. Kmart Corp.*,
    233 F.3d 734 (3d Cir. 2000)................................................................................................15

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)..............................................................................................................4

*In re High Fructose Corn Syrup Antitrust Litig.*,
    295 F.3d 651 (7th Cir. 2002) ..........................................................................................4, 8

*Kleen Prods. LLC v. Int'l Paper*,
    No. 10 C 5711, 2017 WL 2362567 (N.D. Ill. May 31, 2017) ...........................................3, 8

*Kleen Prods. LLC v. Int'l Paper*,
    306 F.R.D. 585 (N.D. Ill. 2015)...........................................................................................6

*Kleen Prods. LLC v. Int'l Paper Co.*,
    831 F.3d 919 (7th Cir. 2016) ...........................................................................4, 5, 11, 12

*In re Linerboard Antitrust Litig.*,
    497 F. Supp. 2d 666 (E.D. Pa. 2007) .....................................................................................8

*In re Live Concert Antitrust Litig.*,
    863 F. Supp. 2d 966, 974-75 (C.D. Cal. 2012) ....................................................................8

ii

*Manpower, Inc. v. Ins. Co. of Pa.*,
732 F.3d 796 (7th Cir. 2013) ............................................................................... *passim*

*McCrary v. Elations Co. LLC*,
No. CV-13-0242, 2014 WL 12589137 (C.D. Cal. Dec. 2, 2014) ...............................8

*Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*,
877 F.2d 1333 (7th Cir. 1989) ...............................................................................14

*In re Mushroom Direct Purchaser Antitrust Litig.*,
No. 06-0620, 2015 WL 5767415 (E.D. Pa. July 29, 2015) ...............................9, 13

*In re Namenda Direct Purchaser Antitrust Litig.*,
331 F. Supp. 3d 152 (S.D.N.Y. 2018) .............................................................6, 9, 10

*Nease v. Ford Motor Co.*,
848 F.3d 219 (4th Cir. 2017) ...............................................................................15

*In re Packaged Seafood Prod. Antitrust Litig.*,
332 F.R.D. 308 (S.D. Cal. 2019) ..................................................................6, 8, 10, 13

*In re Pharmacy Benefit Managers Antitrust Litig.*,
No. CV 06-1782, 2017 WL 275398 (E.D. Pa. Jan. 18, 2017) ...............................12

*In re Processed Egg Prod. Antitrust Litig.*,
81 F. Supp. 3d 412 (E.D. Pa. 2015) ...............................................................14

*In re Ready-Mixed Concrete Antitrust Litig.*,
261 F.R.D. 154 (S.D. Ind. 2009) ...............................................................12

*Smith v. Ford Motor Co.*,
215 F.3d 713 (7th Cir. 2000) .............................................................................3, 4, 10

*Stollings v. Ryobi Tech., Inc.*,
725 F.3d 753 (7th Cir. 2013) ...............................................................................4

*In re: Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*,
No. 19-3640, 2020 WL 4331523 (3d Cir. July 28, 2020)...............................5, 11

*In re: Syngenta AG MIR 162 Corn Litig.*,
Case No. 14-md-2591-JWL, 2016 WL 5371856 (D. Kan. Sept. 26, 2016) .............................6

*In re: Syngenta AG MIR 162 Corn Litig.*,
Case No. 14-md-2591-JWL, 2017 WL 1738014 (D. Kan. May 4, 2017) .................6, 7, 9, 10

*In re Testosterone Replacement Therapy Prods.*,
No. 14 C 1748, 2017 WL 1836443 (N.D. Ill. May 8, 2017) ...............................4

*In re Titanium Dioxide Antitrust Litig.*,
No. CIV. A. RDB-10-0318, 2013 WL 1855980 (D. Md. May 1, 2013) .................................14

*In re Urethane Antitrust Litig.*,
No. 04-1616-JWL, 2012 WL 6681783 (D. Kan. Dec. 21, 2012) ............................................14

*In re Urethane Antitrust Litig.*,
768 F.3d 1245 (10th Cir. 2014) ........................................................................................6, 12

## Other Authorities

ABA Section of Antitrust Law, *Econometrics: Legal, Practical, and Technical Issues*, (2nd ed. 2014) ...........................................................................................................12

## I.    INTRODUCTION

The testimony of Direct Purchaser Plaintiffs' ("DPPs") expert economist, Dr. Colin Carter, is supported by widely accepted economic theory, empirical analysis, case law, and the evidentiary record in this case. In their Motion to exclude some of his testimony, Defendants misconstrue Dr. Carter's well-supported work to argue that his (i) structural break ("SB") test is essentially an unreliable damages model; (ii) damages regression model ("Overcharge Model") is unreliable due to its results; and (iii) testimony regarding Defendants' conduct should be excluded.[1] Defendants' Motion should be denied because it is based on misrepresentations of Dr. Carter's work, mischaracterizes the high bar for exclusion of expert testimony, and conflicts with precedent.

## II.    BACKGROUND

Defendants' assertions largely repeat their opposition to class certification. Given the overlap between DPPs' motion for class certification and their opposition to this motion, DPPs incorporate by reference the factual background included in their memorandum in support of DPPs' motion for class certification ("Class Mem.") and reply in support thereof ("Class Reply"). However, some additional context specific to this Motion is necessary regarding Dr. Carter's opinions generally and his ██████ specifically.

### A.  **Dr. Carter's Opinions.**

Dr. Carter offered the following opinions in his Report:[2]

- ████████████████████████████████████████████████
  ██████████████████████ (*e.g.*, Carter Report ¶¶ 23, 94-161, 189; Carter Dep.[3] at 42:7-15, 165:5-11);

---

[1] *See* Memorandum in Support of Defendants' Motion to Exclude Direct Purchaser Plaintiffs' Expert Dr. Colin A. Carter (ECF No. 4271) ("Defs. Br." or "Motion").

[2] Expert Report of Colin A. Carter, Ph.D., in Support of Direct Purchaser Plaintiffs' Motion for Class Certification ("Carter Report") (ECF No. 3990-122).

[3] Deposition of Colin Carter, January 12, 2021 ("Carter Dep."), attached as Ex. 1 to Defs. Br.

- ███████████████████████████████████████ ███████████████████ (*e.g.*, Carter Report ¶¶ 23, 49, 86, 102);

- ███████████████████████████████████████ ███████████████████ (*e.g.*, Carter Report ¶¶ 162-92); and

- ███████████████████████████████████████ █████████ (*e.g.*, Carter Report ¶¶ 180-92).

**B. The Purpose of Dr. Carter's Structural Break Test is to Identify the Benchmark Period and the Class Period.**

As part of his analysis, Dr. Carter ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Carter Report ¶¶ 162, 175. Dr. Carter concluded

that ████████████████████████████ *Id.* ¶ 177. Dr. Carter testified that ████

████████████████████████████████████████ (Carter Dep. at 74:21-75:7),

████████████████████████████████████████████████████

████████████████████████ [4] *Id.* at 112:2-113:5.

Dr. Carter then used a multiple regression model (the Overcharge Model) to determine

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ *See, e.g., id.* at 79:15-

20, 83:7-15. ██████████████████████████████████

████████████████████████████████████████████████████

---

[4] *See also* Carter Dep. at 13:13-22███████████████████████████████

████████████████████████████.

████████████ Carter Report ¶¶ 180-86. Thus, Defendants' claim that ████████ is unreliable because ████████████████████████████████████ is irrelevant.

## III.    LEGAL STANDARD

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588 (1993), the Supreme Court stated that a "rigid 'general acceptance' requirement [of opinion testimony] would be at odds with the liberal thrust of the Federal Rules" and their general approach of relaxing the traditional barriers to the admission of opinion testimony. There are three requirements for expert testimony admissibility: (1) the expert must be qualified, (2) his or her methodology(ies) must be scientifically reliable, and (3) the proffered testimony must "'assist the trier of fact with a fact at issue,'" an inquiry sometimes referred to as relevance or fit. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (citation omitted).

Defendants challenge the reliability of certain of Dr. Carter's analyses. In examining reliability, courts generally consider whether (i) a methodology can be (and has been) tested; (ii) that methodology has been subjected to peer review and publication; (iii) the techniques are widely accepted within the relevant scientific community; (iv) there are "standards controlling the technique's operation;" and (v) there is a "known or potential rate of error" of the method employed. *Kleen Prods. LLC v. Int'l Paper*, 2017 WL 2362567, at *3 (N.D. Ill. May 31, 2017). "[T]he Court need not apply all the factors to all experts or in every case, and it may consider factors other than those listed" (*id.*, at *3 (internal citation omitted)), but the court must not "'usurp[] the role of the jury, and therefore abuse[] its discretion, [by] unduly scrutiniz[ing] the quality of the expert's data and conclusions rather than the reliability of the methodology the expert employed.'" *Id.*, at *4 (citing *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013)).

Ultimately, "[i]t is not the trial court's role to decide whether an expert's opinion is correct. The trial court is limited to determining whether expert testimony is pertinent to an issue in the

case and whether the methodology underlying that testimony is sound." *Smith*, 215 F.3d at 719; *Stollings v. Ryobi Tech., Inc.*, 725 F.3d 753, 768 (7th Cir. 2013) ("[t]he fact that an expert's testimony contains some vulnerable assumptions does not make the testimony irrelevant or inadmissible."). Courts are generally reluctant to exclude expert testimony unless it is critically deficient in some way. *See In re Testosterone Replacement Therapy Prods.*, 2017 WL 1836443, at *13 (N.D. Ill. May 8, 2017) (*citing Daubert*, 509 U.S. at 596).

## IV.   ARGUMENT

### A.   Defendants' *Daubert* Challenge is Very Limited in Scope.

Significantly, Defendants only attack *some* of Dr. Carter's testimony.[5] For example, while styled as a motion to exclude Dr. Carter's testimony *in toto*, Defendants barely mention ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defs. Br. at 15. Dr. Carter concluded that ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g.*, Carter Report ¶¶ 23, 94-161, 189; Carter Dep. at 42:7-15, 165:5-11. Courts have held that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ supports a finding of antitrust impact. *See, e.g.*, *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 927 (7th Cir. 2016) (finding predominance is satisfied based on plaintiffs' evidence regarding the structure of the market, which made it susceptible to cartelization); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 656-57 (7th Cir. 2002) (Product standardization facilitates a more "successful conspiracy").[6]

---

[5] Knowingly or not, Defendants have essentially acknowledged that their *Daubert* motion is superfluous, claiming that "reliability under Rule 23 is a ***higher standard*** than reliability under *Daubert*." *See* Defendants' Opposition to Direct Purchaser Plaintiffs' Motion for Class Certification (Doc. No. 4210) at 25 n.21 (citations omitted) (emphasis added).

[6] Defendants refer to Dr. Carter's testimony that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as nothing more than his "*ipse dixit*" (Defs. Br. at 15, n.3), which refers to instances in which there is "too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). However, this argument

Defendants also do not dispute that multiple regression analysis, ███████████ ████████████████████████████████ is a widely accepted and "proven statistical methodology used in a wide variety of contexts." *Manpower*, 732 F.3d at 808. Federal courts regularly accept regression analysis as a standard tool in connection with both class certification and trial in antitrust class actions. *Id.*[7]

Finally, Defendants do not challenge Dr. Carter's qualifications as an agricultural economist (Carter Report ¶¶ 18-21), or the relevance of Dr. Carter's testimony, implicitly conceding that Dr. Carter's testimony satisfies that *Daubert* "fit" element.

### B. Each of Defendants' Challenges to Dr. Carter's Testimony is Unavailing.

Defendants ask the Court to exclude all of Dr. Carter's testimony, but only explicitly challenge: (i) his ████████; (ii) his damages regression model (the Overcharge Model); and (iii) his opinions regarding Defendants' conduct. Each of Defendants' baseless attacks should be rejected.

#### 1. Defendants' challenges to Dr. Carter's Structural Break test are based on their fundamental misconception of the analysis.

Defendants spend the bulk of their motion arguing that Dr. Carter's ████████ is unreliable. Defs. Br. at 3-10. However, they fundamentally miss the purpose of ████████, which Dr. Carter

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Carter Dep. 83:7-15; Carter Report ¶ 175.

As courts have repeatedly held, there is "no authority for excluding an expert's damages model" based on a challenge to the methodology used to determine the class period. *In re Blood*

---

ignores Dr. Carter's extensive analysis of ████████████████████████████ *Compare* Carter Report ¶¶ 23, 94-161, 189 and Carter Dep. at 42:7-15, 165:5-11 *with Kleen Prods.*, 831 F.3d at 927.

[7] *See also, e.g., Kleen Prods.*, 831 F.3d at 929; *In re: Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*, 2020 WL 4331523, at *5 (3d Cir. July 28, 2020).

*Reagents Antitrust Litig.*, 2015 WL 6123211, at *12 (E.D. Pa. Oct. 19, 2015); *Kleen_Prods. LLC v. Int'l Paper*, 306 F.R.D. 585, 603 (N.D. Ill. 2015) ("To the extent Defendants' arguments are relevant, they go to the weight a jury might give Dr. Dwyer's testimony, not its reliability or admissibility."); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1263 (10th Cir. 2014) (defendant's "benchmark–shopping argument does not implicate the reliability of [expert's] methodology"); *In re Packaged Seafood Prod. Antitrust Litig.*, 332 F.R.D. 308, 326 (S.D. Cal. 2019) (rejecting Dr. Johnson's [Defendants' expert in this case] attacks on plaintiffs' expert's "narrowing of the class period," which was "based on [ ] analysis of the record" and consultation with counsel, which "bolster[ed] the reliability of the model.").

As Dr. Carter confirms in his reply report, ████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ *See* Carter Reply[8] ¶¶ 94-98. Indeed, the use of ████████ to identify a class period is well established and has been approved by multiple courts. *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 178-79 (S.D.N.Y. 2018) (rejecting defendants' arguments that plaintiffs' experts' structural break test "fails because it does not isolate the cause" of the break where plaintiffs' expert explained that "the test was not designed to do so."); *In re: Syngenta AG MIR 162 Corn Litig.*, 2016 WL 5371856, at *10 (D. Kan. Sept. 26, 2016).

In *In re Syngenta AG MIR 162 Corn Litig.*, the court upheld Dr. Carter's use of ████ under similar circumstances:

> Specifically, Syngenta argues that Dr. Carter should have used an event date of November 2013, when shipments were first rejected by China, and that Dr. Carter improperly "cherry-picked" a September 2013 date without a sufficient basis. The

---

[8] Reply Report of Colin A. Carter, Ph.D., in Support of Direct Purchaser Plaintiffs' Motion for Class Certification ("Carter Reply"), to be filed concurrently with the Class Reply.

Court rejected this same argument at the class certification stage; in that order, ***it noted that the date was based on the increase in milo exports to China and the historic break between corn and milo prices, and it therefore ruled that the choice of date was not impermissibly lacking in foundation and that Syngenta's criticism went merely to the weight of the opinions***. *See In re Syngenta*, 2016 WL 5371856, at \*10. Syngenta has not addressed that prior ruling, and the Court is not persuaded that there is reason to alter that ruling at this time. ***Dr. Carter's choice of event date does have a scientific basis—his structural break analysis—and thus his opinions satisfy the standard cited by Syngenta in its brief.***

2017 WL 1738014, at \*19 (D. Kan. May 4, 2017) (emphasis added) (citations omitted). Thus, Dr. Carter's use of ████ here is supported by case law and economics literature (Carter Reply ¶¶ 94-98) and passes muster under *Daubert*.

Nevertheless, Defendants level three attacks on Dr. Carter's ████, none of which warrant its exclusion, much less the exclusion of Dr. Carter's separate Overcharge Model. First, Defendants charge that ████ does not consider non-conspiratorial factors for decreased Broiler supply in fall 2008. Defs. Br. at 4-6. But Dr. Carter has explained that ████ ████ ████ Carter Reply ¶¶ 19, 100-02. Specifically, because ████ ████ *Id.*

Further, while Defendants cite cases for the proposition that a *damages* model must account for "non-conspiratorial factors" (which ████), Dr. Carter's ████ is *not* a damages model. Rather, Dr. Carter used ████ ████ Dr. Carter then used a multiple regression model (the Overcharge Model) to ████ ████ ████ (Carter Dep. at 83:16-84:2) and ████. *Id.* at 125:16-24. Moreover,

Dr. Carter's analysis squares with other evidence, including deposition testimony, telephonic and electronic communications, and documents, to prove the existence and scope of the alleged conspiracy. *See, e.g.*, Class Mem., Section III(D)(1)(a).

Defendants also assert that because Dr. Carter's ███████ does not differentiate conspiratorial supply reductions from lawful ones, it must be excluded. Defs. Br. at 7-10. But Dr. Carter's ██

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████ Because Dr. Carter's regression analysis "properly controls for exogenous factors," his "econometric damages model 'separate[s] lawful from unlawful conduct.'" *In re Linerboard Antitrust Litig.*, 497 F. Supp. 2d 666, 674 (E.D. Pa. 2007). Thus, Defendants' claim that ██

██████████████████████████████████████████████████████████

████████████████████████████████████████████ (Defs. Br. at 4) is demonstrably false.[9] Dr. Carter testified that ████████████████████████████████

██████████████████████████████████████████████████████████

███████████ Carter Dep. at 79:23-80:5, 83:7-15. *See also id.* at 40:9-13.

Finally, Defendants complain that Dr. Carter's ████████████████████████████

█████████████████████████████████████████ But attacks on the selection or appropriateness of an expert's data inputs go to the weight of the analysis, not its admissibility.

*See, e.g.*, *Manpower*, 732 F.3d at 808; *High Fructose*, 295 F.3d at 660-61; *Kleen Prods.*, 2017 WL



---

[9] This case is therefore distinguishable from *In re Live Concert Antitrust Litig.*, in which the expert's *regression model* was excluded because it failed to include any explanatory variables which would attribute differences in price to factors other than the conspiracy. 863 F. Supp. 2d 966, 974-75 (C.D. Cal. 2012). The structural break analysis in that case was included by the plaintiffs' expert in his reply to prop up his flawed damages model, rather than determine the class period. *See id.* at 982; *see also Packaged Seafood*, 332 F.R.D. at 327 n.10 (refusing to apply *Live Concert*, because "this is not a case in which an expert excluded critical data wholesale."); *McCrary v. Elations Co. LLC*, 2014 WL 12589137, at *8 (C.D. Cal. Dec. 2, 2014) (distinguishing *Live Concert*).

2362567, at *4. This rule applies to SB analyses. *See Syngenta*, 2017 WL 1738014, at *19 ("attacks on the particular inputs used by Dr. Carter, relating to the use of … data and the use of a particular market index, go to the weight of the opinions and not to their admissibility."); *Namenda*, 331 F. Supp. 3d at 177 (rejecting defendants' argument that the structural break "test fails because it utilizes market-wide data rather than purchaser-specific information.").

The Seventh Circuit has explained that a reliable methodology is one where "the expert considered sufficient data to employ the methodology." *Manpower*, 732 F.3d at 808 (internal citation omitted). Here, Defendants do not and cannot claim that ███████████████████ ███████████████████████.[10] Moreover, Dr. Carter has explained ███████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ (Carter Reply ¶¶ 26-27), a point with which Defendants' executives agree. Class Mem. at 35-36, n.28. Dr. Carter further explains that ████████████████████████████████████████████████ ████████████████████████████████████████ Carter Reply ¶¶ 24-27, 51-57.

Defendants claim that the flaws they see in ███████ "doom" Dr. Carter's entire analysis. But the Class Period identified by ████████████████████████████████████ ████████████ *See, e.g.*, Carter Report ¶¶ 39-92.[11] Thus, even if the Court found ████████ ████████ (which it should not), Dr. Carter's Overcharge Model and damages analysis should

---

[10] Instead, they argue that Dr. Carter should have used data that he testified ███████████. Defs. Br. at 6-7; Carter Dep. at 192:11-193:25; 207:10-208:20; Carter Reply ¶¶ 24-27, 51-57. The data Dr. Carter used were ██████████████████████████████. *See In re Mushroom Direct Purchaser Antitrust Litig.*, 2015 WL 5767415, at *12, n.9 (E.D. Pa. July 29, 2015) (denying *Daubert* motion where expert testified that he relied on the best available data).

[11] Notably, Dr. Mangum, the economics expert for the Commercial and Institutional Indirect Purchaser Plaintiffs in this case, ████████████████████████████████████████. Carter Reply ¶ 99.

not be excluded. *See, e.g.*, *Blood Reagents*, 2015 WL 6123211, at *12 (refusing to exclude expert's testimony due to expert's selection of class period start date based upon review of the factual record); *Packaged Seafood*, 332 F.R.D. at 326 (rejecting challenge to reliability of expert's model based upon expert's "narrowing of the class period … based on [ ] analysis of the record").[12] At best, whether Dr. Carter's ▮▮▮▮ should have accounted for ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ is for the jury to determine. *See Syngenta*, 2017 WL 1738014, at *19; *Namenda*, 331 F. Supp. 3d at 178-79 (finding defendant's argument that alternative, non-conspiratorial reasons explained the SB went to the weight and not the admissibility of the opinion).

### 2.    Dr. Carter's Multiple Regression Model is a Standard Methodology That Has Been Reliably Applied.

Defendants attempt to challenge as unreliable Dr. Carter's straightforward application of standard economics analysis, *i.e.*, his multiple regression (the Overcharge Model). But Defendants do so based entirely upon their interpretation of the *results* of the Overcharge Model, and not on the validity of the methodology or the way in which Dr. Carter applied it. That in and of itself is fatal to Defendants' motion to exclude Dr. Carter's Overcharge Model. *See, e.g.*, *Manpower*, 732 F.3d at 806 ("Reliability ... is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced."); *Smith*, 215 F.3d at 718 ("[t]he soundness of the factual underpinnings of the expert's analysis and *the correctness of the expert's conclusions based on that analysis* are factual matters to be determined by the trier of fact") (emphasis added).

Even though multiple regression analysis is a widely accepted tool for evaluating impact

---

[12] In repeatedly claiming that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defendants, instead of quoting Dr. Carter, actually *misquote themselves*. They asked Dr. Carter if ▮▮▮▮ ▮▮ Carter Dep. at 39:7-11 (emphasis added).

and damages in antitrust class actions,[13] Defendants put a new spin on a standard attack, claiming that Dr. Carter's ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████ (Defs. Br. at

10-11) (emphasis in original). Defendants do not cite Dr. Carter's Report or testimony as the basis

for either of these claims for a simple reason – ████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████[14] Carter Report ¶¶ 162-63 (emphasis added).

Defendants then describe claimed differences between transactions for which Dr. Carter's

████████████████ purportedly fails to account. Defs. Br. at 11. But Dr. Carter's ███████████

██████████████████████████████████████████████████████████████████

███████████ Carter Report ¶¶ 23, 185. ████████████████████████████████████

██████████████████████████ Carter Reply ¶¶ 164-69. Dr. Carter further explained

why ████████████████████████████████████████████████████████████████

████████████████████████ (id. ¶¶ 123-25); ████████████████████████████████

██████████ (id. ¶¶ 214-21); (iii) ████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ (id. ¶¶ 209-13);



---

[13] The use of regression analysis to estimate impact and damages in antitrust cases is ████████

████████████████████ *See, e.g.*, Carter Report ¶¶ 162-63 ████████████████████ .

[14] The use of an "aggregate model relying on class-wide data," ████████████████ , to

prove and measure DPPs' "theory of injury and damages" is perfectly appropriate. *Suboxone*, 2020 WL

4331523, at *5; *see also, e.g.*, *Kleen Prods.*, 831 F.3d at 929 ("Defendants complain that it is wrong to

calculate aggregate rather than individual damages for the class. The district court rejected that position as

a matter of law, as do we.").

and (iv) ██████████████████████████████████████████████████████

██████████████████████████ (Carter Report ¶¶ 134-51). Such variations cannot support

expert exclusion. *See, e.g.*, *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 170 (S.D.

Ind. 2009) (certifying class, denying *Daubert* motion and rejecting argument that product

differentiation and that "class members negotiated individual prices for the concrete they

purchased" made proof of common impact impossible).[15]

Defendants' argument also assumes that ████████████████████████████████

████████████████████████████████████████ But that is exactly wrong;

slicing and dicing data may produce unreliable results. *See, e.g.*, *In re Cathode Ray Tech. (CRT)*

*Antitrust Litig.*, 308 F.R.D. 606, 628 (N.D. Cal. 2015) (citation omitted); *In re Capacitors Antitrust*

*Litig.*, 2018 WL 5980139, at *7 (N.D. Cal. Nov. 14, 2018) (citing *Kleen Prods.*, 831 F.3d at 927;

*Urethane*, 768 F.3d at 1254); ABA Section of Antitrust Law, *Econometrics: Legal, Practical, and*

*Technical Issues*, at 359-60 (2nd ed. 2014) (stating that calculations relying on disaggregated data

become "less precise," resulting in "less reliable" models that amplify the "effects of potential

outliers."). This is demonstrably true in this case, where ██████████████████████████

████████████████████████████████████████████████████████████████████

█████ Carter Reply ¶¶ 117-22.

Next, Defendants claim Dr. Carter's Overcharge Model would lead to "absurd results,"

because they would ████████████████████████████████████████████████████

---

[15] *In re Pharmacy Benefit Managers Antitrust Litig.*, 2017 WL 275398 (E.D. Pa. Jan. 18, 2017)
("*PBM*"), cited by Defendants, is distinguishable. *PBM* involved an expert that "made no assumptions about
what a but-for world would look like, and he professed no understanding of the conspiracies alleged," and
also "did not consider factors other than the alleged conspiracy that might have contributed to the [relevant]
differential." *Id*. at *14. ████████████████████████████████████ (*see, e.g.*, Carter Report ¶¶
8-12), ██████████████████████████████████████████████████████████████
████████████████████████████ *See, e.g.*, *id.* ¶¶ 162-87.

██████████████████████ Defs. Br. at 12-13 (emphasis in original). But this claim is based on ████

████████████████████████████████████████████████████████████

██████████████████████████████████████████ Carter Reply ¶¶ 194-

201. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████ (*id.*), far from a nonsensical result and certainly not sufficient to exclude Dr.

Carter's Model.

      Finally, Defendants' attacks on Dr. Carter's common impact analysis are wrong and

unpersuasive. First, Defendants claim ████████████████████████████████████

████████████████████████████████ Defs. Br. at 14. But in his Reply, Dr.

Carter explained that ████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████ Carter Reply ¶ 168; *see also* ¶¶ 164-69. Defendants also assert that one of Dr.

Carter's common impact tests ██████████████████████████████████████

██████████ Defs. Br. at 14. But Defendants' claim is not based upon ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ Carter Reply ¶¶ 176-79.

Regardless, Defendants' spurious claim ████████████████ cannot support their bid to exclude Dr.

Carter's opinions. *Packaged Seafood*, 332 F.R.D. at 326 ("Defendants have not shown that the

purported false positives undermine the model's finding of class-wide impact."); *Mushroom*, 2015

WL 5767415, at *14 ("Dr. Johnson's false positive analysis at most goes to the weight that should

be accorded to Elhauge's conclusions); *Allen v. Dairy Mktg. Servs.*, LLC, 2013 WL 6909953, at

*17 n.9 (D. Vt. Dec. 31, 2013) (denying *Daubert* motion to exclude expert's regression analysis

on the basis of false positives). Lastly, Defendants' claim that  (Defs. Br. at 14-15), is not, in fact, based upon Carter Reply ¶¶ 180-86.[16] It therefore does not support the exclusion of Dr. Carter's Overcharge Model.

### 3. Dr. Carter's Opinions Regarding Defendants' Conduct are Based on the Record and Widely Accepted Economic Principles.

Finally, Defendants wrongly assert that Dr. Carter's opinions regarding Defendants' conduct, based upon his (i) training and experience as an economist, and (ii) review of the record, should be excluded. While not entirely clear, given the citations they rely upon they appear to claim that Dr. Carter lacks the qualifications to offer such testimony. But this is incorrect.

"An economic expert may permissibly testify as to whether certain conduct is consistent with collusion or an entity or individual's self-interest." *In re Processed Egg Prod. Antitrust Litig.*, 81 F. Supp. 3d 412, 424 (E.D. Pa. 2015).[17] Such "an analysis by an economist is well-accepted in this field and would be helpful to a jury," *In re Urethane Antitrust Litig.*, 2012 WL 6681783, at *3 (D. Kan. Dec. 21, 2012), and "[c]ourts regularly admit expert testimony regarding 'whether conduct is indicative of collusion.'" *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 1855980, at *4 (D. Md. May 1, 2013) (citations omitted); *see also In re Disposable Contact Lens Antitrust Litig.*, 329 F.R.D. 336, 372 (M.D. Fla. 2018) (collecting cases). There is expertise in "knowing what evidence to look for." *Processed Egg*, 81 F. Supp. 3d at 423. Dr. Carter

---

[16] As Dr. Carter explains, Carter Reply ¶ 180, n.226.

[17] Indeed, this "is precisely the type of inquiry an economist can be expected to make using his expertise." *Processed Egg*, 81 F. Supp. 3d at 424 (citing *Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*, 877 F.2d 1333, 1340 (7th Cir. 1989)).



*See, e.g.*, Carter Report ¶¶ 23, 49, 86, 102. Dr. Carter then ▇▇▇▇▇▇▇

*Id.* ¶ 92.

Defendants rely on Dr. Carter's testimony that ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇ Dr. Carter agrees that he is not qualified to opine on collusive conduct. Defs. Br. at 15. The existence of a conspiracy is always a jury issue, but that has no bearing on Dr. Carter's qualifications to opine on collusive conduct. Dr. Carter testified ▇▇▇▇

Carter Dep. at 113:13-22. Dr. Carter offers opinions based upon ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇ Nothing more is required for his testimony to be admissible. *See, e.g.*, *Elcock v. Kmart Corp.*, 233 F.3d 734, 745 (3d Cir. 2000) (opinions are reliable if "based on … methods and procedures … rather than subjective belief or speculation," and are "accompanied by a sufficient factual foundation."); *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (to be reliable, expert opinions must be "based on scientific, technical, or other specialized *knowledge* and not on belief or speculation") (emphasis added).

## V. CONCLUSION

Dr. Carter's testimony is supported by widely accepted economic theory, empirical analysis, case law, and the evidentiary record in this case. Defendants' Motion is based on misrepresentations of Dr. Carter's work, mischaracterizes the high bar for exclusion of expert testimony, and conflicts with precedent. For these reasons, Defendants' motion to exclude Dr. Carter's testimony should be denied.

Dated: March 29, 2021

Clifford H. Pearson
Daniel L. Warshaw
Michael H. Pearson
Bobby Pouya
PEARSON SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
T: (818) 788-8300
F: (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
mpearson@pswlaw.com
bpouya@pswlaw.com

W. Joseph Bruckner
Brian D. Clark
Simeon A. Morbey
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T: (612) 339-6900
F: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
samorbey@locklaw.com

Bruce L. Simon
Neil Swartzberg
PEARSON, SIMON & WARSHAW, LLP
350 Sansome Street, Suite 680
San Francisco, CA 94104
T: (415) 433-9000
F: (415) 433-9008
bsimon@pswlaw.com
nswartzberg@pswlaw.com

***Direct Purchaser Plaintiffs Interim Co-Lead Class Counsel***

s/ *Steven A. Hart*

Steven A. Hart (#6211008)
Brian Eldridge (#6281336)
John Marrese (#6306516)
Kyle Pozan (#6306761)
HART MCLAUGHLIN & ELDRIDGE, LLC
22 West Washington Street, Suite 1600
Chicago, IL 60602
T: (312) 955-0545
F: (312) 971-9243
shart@hmelegal.com
beldridge@hmelegal.com
jmarrese@hmelegal.com
kpozan@hmelegal.com

***Direct Purchaser Plaintiffs Interim Liaison Class Counsel***

Jeffrey J. Corrigan (Pro Hac Vice)
Jeffrey L. Spector (Pro Hac Vice application forthcoming)
SPECTOR ROSEMAN & KODROFF, P.C.
2001 Market Street, Suite 3420
Philadelphia, PA 19103
T: (215) 496-0300
F: (215) 496-6611
jcorrigan@srkattorneys.com
jspector@srkattorneys.com

***Additional Direct Purchaser Plaintiffs' Counsel***

## **CERTIFICATE OF SERVICE**

I, Steven A. Hart, depose and state that I have served a copy of Direct Purchaser Plaintiffs'

Memorandum of Law in Opposition to Defendants' Motion to Exclude Direct Purchaser Plaintiffs'

Expert Dr. Colin A. Carter upon all counsel of record via the United States Court for the Northern

District of Illinois' CM/ECF Document Filing System on March 29, 2021.


By: <u>s/ *Steven A. Hart*</u>

[x]  As provided by law pursuant to Rule 5(b) of Fed. Rules
of Civil Procedure, I certify that the statements set forth
herein are true and correct.