## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **IN RE BROILER CHICKEN ANTITRUST LITIGATION** | Case No. 16-cv-8637 |
| | Honorable Thomas M. Durkin |
| This Document Relates To All Actions | Magistrate Judge Jeffrey T. Gilbert |

## MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY JAYSON PENN'S MOTION FOR LEAVE TO INTERVENE AND FOR ENTRY OF A PROTECTIVE ORDER

Jayson Penn respectfully seeks leave to intervene in the above-captioned action for the limited purpose of moving for entry of a protective order temporarily staying his deposition pending the resolution of a related criminal case. Mr. Penn—the former chief executive officer of poultry supplier Pilgrim's Pride Corporation ("Pilgrim's")—is not a party to this action. However, he is a defendant in a criminal antitrust case pending in the District of Colorado, as well as a defendant in a related securities class action pending in that same District, and in a related shareholder derivative action pending in Colorado state court. *See infra* pp. 3-4.

Plaintiffs' counsel in this action notified counsel for Mr. Penn on April 22, 2021 that this Court had entered a sealed order allowing Mr. Penn's deposition to proceed now on certain topics, but not on others, and inquired about Mr. Penn's availability to be deposed. While plaintiffs have not yet served a deposition subpoena on Mr. Penn, the issue of whether Mr. Penn should have to sit for a deposition now is clearly ripe given the Court's recent order and plaintiffs' request to schedule his deposition.

Allowing Mr. Penn's deposition to go forward now would present him with a Hobson's Choice. Mr. Penn would be forced to choose between invoking his Fifth Amendment privilege (thereby exposing him to a potential adverse inference in the two civil cases in which he is a defendant) or waiving his privilege and testifying substantively (thereby prejudicing his defense in the criminal action). Mr. Penn is the only proposed deponent who would be forced to make this choice, as he is apparently the only defendant in the criminal action who is to be deposed under the Court's recent order.

Plaintiffs' counsel has indicated that the Court's order allows the deposition of Mr. Penn to cover "all topics other than bid-rigging," but that limitation does Mr. Penn little good. Mr. Penn's Fifth Amendment rights extend beyond "bid-rigging," *see Hoffman v. United States*, 341 U.S. 479, 486 (1951) (Fifth Amendment privilege extends to any testimony that would "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime"), and he has "reasonable cause" to believe the government would use any testimony he gives in the civil action against him in the criminal case, *see id*. The government has repeatedly made clear that its continuing criminal investigation is active and not limited to "bid-rigging." *See infra* p.3. On the other hand, plaintiffs have many alternative avenues to discover facts about "topics other than bid-rigging" besides deposing Mr. Penn. For example, if plaintiffs seek information about the Georgia Dock price index, they can take the depositions of Georgia Department of Agriculture employees who worked on the Georgia Dock, and Rule 30(b)(6) depositions of the corporate defendants in this action such as Pilgrim's, Mr. Penn's former employer.

The Court should grant leave for Mr. Penn to intervene in this action and issue a protective order staying his deposition pending the resolution of the criminal case against him.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Penn is the former chief executive officer of Pilgrim's. Declaration of Michael F. Tubach in Support of Non-Party Jayson Penn's Motion to Intervene and For a Protective Order ("Tubach Decl."), ¶ 2. In June 2020, a grand jury returned an indictment against Mr. Penn and three other individuals for alleged bid-rigging and price-fixing in connection with the sale of broiler chicken products during the time period from 2012 through 2017. *United States v. Penn et al.*, No. 1:20-cr-00152-PAB (D. Colo. June 2, 2020), ECF No. 1. In October 2020, the government obtained a superseding indictment, which names six additional defendants and identifies additional conduct purportedly violating Section 1 of the Sherman Act. Tubach Decl. Ex. 1 ("Supersed. Ind."). As the government has indicated, its investigation and the indictments overlap substantially with the allegations in this action. *See* The United States' Motion to Intervene and Stay Discovery, *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-8637, (N.D. Ill. June 21, 2019), ECF No. 2268, at 7 ("Here, there is very substantial overlap between the civil and criminal matters."). The government has also repeatedly stated that its criminal investigation is ongoing and active, and is not limited to bid-rigging. *See* Tubach Decl. Ex. 2 (Press Release, U.S. Dep't of Justice, One of the Nation's Largest Chicken Producers Pleads Guilty to Price Fixing and Is Sentenced to a $107 Million Criminal Fine (Feb. 23, 2021), ("This case is the result of an ongoing federal antitrust investigation into *price fixing, bid rigging, and other anticompetitive conduct* in the broiler chicken industry . . . .") (emphasis added)).[1] Earlier this month, the government reiterated in a filing in this case that its criminal investigation is ongoing. Brief in

---

[1] *See also* Tubach Decl. Ex. 3 (Press Release, U.S. Dep't of Justice, Six Additional Individuals Indicted On Antitrust Charges In Ongoing Broiler Chicken Investigation (Oct. 7, 2020) (same)); *Id.*, Ex. 4 (Press Release, U.S. Dep't of Justice, Senior Executives at Major Chicken Producers Indicted on Antitrust Charges (June 3, 2020) (same)).

Support of United States' Motion for Limited Deposition Stay, *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-8637, (N.D. Ill. Apr. 5, 2021), ECF No. 4520, at 1, 2, 8.

After the initial indictment was returned against Mr. Penn in June 2020, certain purported Pilgrim's shareholders filed a civil class action complaint in Colorado federal court under the Securities Exchange Act of 1934, in which they named Mr. Penn and others as defendants.[2] The gravamen of the claim in the Securities Action is that executives at Pilgrim's, including Mr. Penn, participated in an unlawful antitrust conspiracy; that Pilgrim's failed to disclose material facts about that conspiracy; and that the class suffered damages as a result of that omission. Tubach Decl. Ex. 5 ¶ 6 ("Securities Compl."). The antitrust conspiracy alleged in the criminal indictment is a critical predicate of that claim. *See, e.g.*, *id.*, Ex. 5, ¶¶ 41-48.

A week after the superseding indictment was returned on October 7, 2020, a separate group of purported Pilgrim's shareholders filed a shareholder derivative action in Colorado state court naming Mr. Penn and others as defendants.[3] The plaintiffs in the Derivative Action allege, *inter alia*, that Mr. Penn and others at Pilgrim's conspired to rig bids, fix prices, restrict supply, and manipulate the Georgia Dock price index. *E.g.*, Tubach Decl., Ex. 6, ¶¶ 5, 6, 19-20, 26, 94-98 ("Derivative Compl."). Their complaint incorporates the allegations at issue in the actions pending in this Court as well as those set forth in the original and superseding indictments. *See, e.g.*, *id.,* Ex. 6, ¶¶ 160-271, 377-78, 424-43.

In a telephone call with prosecutors on March 29, 2021, undersigned counsel learned that certain plaintiffs in this action sought to depose Mr. Penn and that the

---

[2] *U.F.C.W. Int'l Union Local 464A v. Pilgrim's Pride Corp.*, No. 1:20-cv-01966-RM-MEH (D. Colo. July 6, 2020) (the "Securities Action").

[3] *In re Pilgrim's Pride Corp. Derivative Litig.*, Case No. 2017CV30207 (Weld Cty., Colo. Dist. Ct.) (the "Derivative Action").

government intended to oppose their request. *Id.* ¶ 6. Undersigned counsel represented to the government that Mr. Penn agreed with the government's position. *Id.* ¶ 6. On April 22, 2021, counsel for all plaintiffs in this action emailed undersigned counsel and counsel for Pilgrim's. *Id.,* Ex. 7. Plaintiffs' counsel stated that this Court had entered a sealed order on April 19, 2021 in which it permitted plaintiffs to depose Mr. Penn "on all topics other than bid-rigging, which remains stayed." *Id.* Plaintiffs asked that Mr. Penn agree to sit "for a 14-hour deposition given his importance to the case." *Id.* Undersigned counsel contacted plaintiffs' counsel on April 26, 2021, to inform them that Mr. Penn intended to file a motion to intervene for the purpose of moving for a protective order to stay the deposition of Mr. Penn until the conclusion of the criminal case. Plaintiffs' counsel responded on April 27, 2021 that they had no objection to the motion to intervene, but that they objected to the motion for a protective order. *Id.* ¶ 7.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 24 governs motions to intervene. Rule 24(a) directs courts to "permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a)(2). "The rule is straightforward: the court must permit intervention if (1) the motion is timely; (2) the moving party has an interest relating to the property or transaction at issue in the litigation; and (3) that interest may, as a practical matter, be impaired or impeded by disposition of the case. A proposed intervenor who satisfies these three elements is *entitled* to intervene *unless* existing parties adequately represent his interests." *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 746 (7th Cir. 2020).

Courts may permit a party who does not qualify for intervention of right under Rule 24(a) to intervene under Rule 24(b), provided the party timely moves and "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b). "Two requirements must be met before a court may exercise its discretionary power to grant intervention under 24(b)(2). The proposed intervenor must demonstrate that there is (1) a common question of law or fact, and (2) independent jurisdiction." *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). In making the discretionary determination whether to allow permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3).

Federal Rule of Civil Procedure 26 governs motions for a protective order. For good cause, a court may enter a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden." FED. R. CIV. P. 26(c)(1). Rule 26(c)(1)(D) authorizes courts to "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." FED. R. CIV. P. 26(c)(1)(D). That authority extends to staying parallel civil litigation during the pendency of a criminal case "if the interests of justice require it." *Chagolla v. City of Chicago*, 529 F. Supp. 2d 941, 945 (N.D. Ill. 2008). In making that determination, courts "balance[e] the interests of the plaintiff, the defendants, and the public" and consider a non-exhaustive list of factors including:

> [W]hether the civil and criminal matters involve the same subject; whether the governmental entity that has initiated the criminal case or investigation is also a party in the civil case; the posture of the criminal proceeding; the effect of granting or denying a stay on the public interest; the interest of the civil-case plaintiff in proceeding expeditiously, and the potential prejudice the plaintiff may suffer from a delay; and the burden that any particular aspect of the civil case may impose on defendants if a stay is denied.

*Id.*

## ARGUMENT

I. **The Court should allow Mr. Penn to intervene in this case for the limited purpose of seeking a stay of his deposition.**

    A. **Mr. Penn is entitled to intervene as of right under Federal Rule of Civil Procedure 24(a).**

Mr. Penn is entitled to intervene in this action. He has a significant, protectable interest in this litigation; his interests will be impaired if the Court denies his motion to intervene; the existing parties do not adequately represent his interests; his motion is timely; and Plaintiffs do not oppose his intervention. Because he satisfies all of Rule 24(a)'s prerequisites, this Court should grant Mr. Penn's motion to intervene.

*First*, Mr. Penn has a "direct, significant" and "legally protectable" interest in a stay of his deposition in this action that would be impaired should the Court permit the plaintiffs to depose him. *See Zurich Cap. Mkts. Inc. v. Coglianese*, 236 F.R.D. 379, 385 (N.D. Ill. 2006) ("The requisite interest is something more than a mere betting interest . . . but less than a property right.") (quotations omitted). As Judge Kennelly explained in *Chagolla v. City of Chicago*, civil defendants who face prosecution or investigation in parallel criminal actions face an impossible choice: "Any defendant who chooses to invoke the privilege runs the risk that this will be used as the basis for an adverse inference against him or her in th[e civil] case, . . . a practice the Fifth Amendment does not prohibit." 529 F. Supp. 2d at 945. "Conversely, any defendant who chooses to testify or otherwise respond to discovery in th[e civil] case runs the risk that his or her responses will be used by prosecuting authorities to pursue the current criminal charges or other potential charges not yet filed." *Id.*

Mr. Penn faces that same Hobson's Choice here. If he exercises his Fifth Amendment privilege at a deposition in this case, the plaintiffs in the Securities

Action and Derivative Action pending in Colorado will undoubtedly seek an adverse inference on the basis of that invocation. *See Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 834-35 (7th Cir. 2016) (affirming an adverse inference jury instruction based on representations in a defendant's immunity letter from a parallel criminal proceeding); *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 705 (7th Cir. 2014) (affirming imposition of adverse inference based on defendants' Fifth Amendment invocation in separate civil proceedings pending in a California district court). Conversely, if Mr. Penn testifies at a deposition in this case, he risks that the government will use his responses against him in the pending criminal case. *See Chagolla*, 529 F. Supp. 2d at 945.

Denying Mr. Penn's motion to intervene would "impair or impede" his ability to protect these direct, significant, and legally protectable interests. *See* FED. R. CIV. P. 24(a)(2). Either outcome in that scenario—Mr. Penn's invocation of the Fifth Amendment or his testimony on matters that overlap with a pending criminal case and ongoing criminal investigation—threatens to foreclose his rights in a subsequent proceeding. *See Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982) ("The existence of 'impairment' depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding.").

*Second*, the parties to this action do not adequately represent Mr. Penn's interests. The plaintiffs' interests are in opposition to Mr. Penn's—including, without limitation, because they seek to force him to sit for a deposition. The defendants in this action are not in the same position as Mr. Penn because they do not have Fifth Amendment rights and do not face the choice that Mr. Penn does. *See Curcio v. United States*, 354 U.S. 118, 122 (1957) ("It is settled that a corporation is not protected by the constitutional privilege against self-incrimination."). Mr. Penn therefore meets the "minimal" burden of showing that the current parties'

"representation [of his interest] 'may be' inadequate" in this case. *See Driftless Area Land Conservancy*, 969 F.3d at 747 (internal citations and quotation marks omitted).

*Third*, Mr. Penn's motion for intervention is timely. To assess timeliness, the Seventh Circuit "consider[s] four factors: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; [and] (4) any other unusual circumstances." *Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 701 (7th Cir. 2003) (quotations omitted). Mr. Penn makes this motion seven days after the plaintiffs informed him of this Court's order and their intent to take his deposition, and one month after the government informed Mr. Penn's counsel of the possibility that some plaintiffs in this case would seek to take his deposition. It is difficult to identify any prejudice to the parties attendant to that brief delay between Mr. Penn's recognition of his interest in this case and the filing of this motion. And for reasons and circumstances already discussed, denying Mr. Penn's motion to intervene would prejudice him in the civil and criminal actions to which he is a party.

### B. In the alternative, the Court should exercise its discretion under Federal Rule of Civil Procedure 24(b) to permit Mr. Penn to intervene.

Should the Court determine that Mr. Penn cannot intervene as of right, it should exercise its discretion under Rule 24(b) and permit him to intervene. As noted earlier, Mr. Penn's motion is timely. He "has a claim or defense that shares with the main action a question of law or fact" in common, namely, that he seeks a protective order to stay his deposition, and plaintiffs in this action want to take that deposition. *See* Fed. F. Civ P. 24(b). Further, no "undu[e] delay or prejudice for adjudication of the original parties' rights" will result if Mr. Penn is permitted to

intervene. *See* Fed. R. Civ. P. 24(b). While there will be some small inconvenience and delay attendant to Mr. Penn's request to intervene, that burden is minimal in light of the significant Fifth Amendment issues that Mr. Penn's motion raises. Finally, the Court can exercise jurisdiction over this request. *See Griffith v. University Hosp., L.L.C.*, 249 F.3d 658 (7th Cir. 2001) (recognizing that third parties may permissively intervene for the purpose of contesting protective orders); *cf. Jessup v. Luther*, 227 F.3d 993, 997 (7th Cir. 2000) (noting that "every court of appeals to have considered the matter" has held that "Rule 24 is sufficiently broad-gauged to support a request of intervention for the purposes of challenging confidentiality orders").[4] For that reason, and because it would be inconsistent and unjust if Mr. Penn could not intervene under Rule 24(b) for the purpose of filing a motion that Rule 26(c) explicitly authorizes him to make, the Court should permit Mr. Penn to intervene here. *See* FED. R. CIV. P. 26(c)(1) ("A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . .").

## II. The Court should enter a protective order staying Mr. Penn's deposition pending the resolution of his criminal case.

Many of the same considerations that militate in favor of granting Mr. Penn leave to intervene also support the issuance of a protective order staying his deposition, as multiple courts in this jurisdiction have concluded in similar situations. *See Chagolla*, 529 F. Supp. 2d at 948; *United States v. All Meat &*

---

[4] In fact, courts in similar situations have not even required "intervenors [who] do not seek to litigate a claim on the merits" to establish an independent basis for jurisdiction. *See, e.g., Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992) ("Intervenors do not ask the district to rule on additional claims or seek to become parties to the action. They ask the court only to exercise that power which it already has, *i.e.*, the power to modify the protective order. For that reason, no independent jurisdictional basis is needed."); *Flynt v. Lombardi*, 782 F.3d 963, 966-67 (8th Cir. 2015) (same).

*Poultry Prods.*, 2003 WL 22284318, at *4 (N.D. Ill. Oct. 3, 2003); *Doe v. City of Chicago*, 360 F. Supp. 2d 880, 881 (N.D. Ill. 2005); *Cruz v. Cty. of DuPage*, 1997 WL 370194, at *4 (N.D. Ill. June 27, 1997). A court may stay parallel civil litigation "if the interests of justice require it," *Chagolla*, 529 F. Supp. 2d at 945, and here the relevant factors counsel in favor of a stay of Mr. Penn's deposition.

*First*, there is a close relationship between the allegations at issue in this case and those that form the basis of the government's superseding indictment, the Securities Action, and the Derivative Action. The superseding indictment alleges that Mr. Penn "participated in a continuing network of [s]uppliers and co-conspirators, an understood purpose of which was to suppress and eliminate competition through rigging bids and fixing prices and price-related terms for broiler chicken products sold in the United States" from 2012 through at least 2019. Supersed. Ind., ¶¶ 1, 47-48. The Securities Complaint's allegations adhere closely to the allegations in the superseding indictment. Securities Compl. ¶¶ 41-47. And the Derivative Complaint includes allegations that Mr. Penn participated in a conspiracy to fix prices, rig bids, coordinate supply reductions, and manipulate the Georgia Dock price index from 2014 through the present. Derivative Compl., ¶¶ 1, 5-6, 19-20.

This "substantial overlap of issues between the criminal and civil proceedings, if not a near identity of those issues," supports the entry of a limited stay of Mr. Penn's deposition. *See All Meat & Poultry Prods.*, 2003 WL 22284318, at *2; *Chagolla*, 529 F. Supp. 2d at 945-46 ("The close relationship between the civil and criminal matters weighs in favor of a stay."); *Glover v. Upmann*, 2020 WL 1433801, at *2 (N.D. Ill. Mar. 24, 2020) (noting that a "significant overlap of issues here. . . . weighs in favor of a stay"). That overlap is especially salient given the "danger that the government may use civil discovery to obtain evidence and information for use in its criminal prosecution, and by doing so, circumvent the

Fifth Amendment rights against self-incrimination." *See Cruz*, 1997 WL 370194, at
\*3. Since the original indictment was filed in June 2020, the government has
continued its criminal investigation and has already obtained one superseding
indictment. The government should not be allowed to obtain discovery from Mr.
Penn in the civil case that it cannot obtain in the criminal case.

*Second*, the posture of the criminal action favors a stay of Mr. Penn's
deposition. "The strongest case for granting a stay is where a party under criminal
indictment is required to defend a civil proceeding involving the same matter."
*Hollinger Int'l, Inc. v. Hollinger Inc.*, 2008 WL 161683, at \*2 (N.D. Ill. Jan. 16,
2008). That describes Mr. Penn's situation exactly. Mr. Penn is under indictment in
the criminal case in Colorado and is simultaneously a defendant in two related civil
cases. Each case turns upon his alleged participation in an antitrust conspiracy in
the broiler chicken industry in approximately the same time period. A stay of Mr.
Penn's deposition is warranted under this factor, even if "it is unclear as to when
the criminal defendant[] will go to trial." *See Cruz*, 1997 WL 370194, at \*3.

*Third*, the public interest weighs in favor of a stay. While "[t]he public has an
interest in the prompt disposition of civil litigation," *see Chagolla*, 529 F. Supp. 2d
at 946-47, there is a greater interest in "ensuring the criminal proceedings continue
untainted by civil litigation." *See Glover*, 2020 WL 1433801, at \*4 ("Defendants call
this the 'greatest interest.' . . . The Court agrees. Given the overlap of issues, it is
important to avoid any possible interference with the prosecution . . . ."). As the
court recognized in *Glover*, "such interference could arise if civil discovery, including
sworn testimony, is elicited while the criminal charges are still pending." *Id.*
(quoting *Tostado v. Jackson*, 2011 WL 2116396, at \*3 (E.D. Wis. May 25, 2011)).

*Fourth*, the plaintiffs' interest in resisting a stay of Mr. Penn's deposition is
neutral on balance. Although plaintiffs have "a significant interest in obtaining
resolution of [their] claims and compensation if [they] prove [they are] entitled to

it," *Chagolla*, 529 F. Supp. 2d at 947, "this is only one of the relevant factors to be considered in determining whether to grant [a] motion to stay." *See Cruz*, 1997 WL 370194, at *3; *All Meat & Poultry Prods.*, 2003 WL 22284318, at *3 (noting that "the passage of time does not affect the [plaintiffs'] damage claims" against defendants and that business records pertaining to the claims in the case "will not become 'stale' before the criminal proceedings conclude").[5] Moreover, the stay that Mr. Penn seeks relates only to his own deposition, not any other discovery that plaintiffs may be entitled to take.

*Fifth*, the burden on Mr. Penn tips decisively in favor of a stay. As discussed, should Mr. Penn invoke his Fifth Amendment privilege at a deposition in this case, the plaintiffs in the Securities Action and Derivative Action will undoubtedly seek an adverse inference against him. Courts may permit those inferences even when the defendant testifies about the same subject matter in the civil action after the conclusion of the criminal proceedings. *See Empress Casino*, 831 F.3d at 834-35 (holding that "[r]eversing course and testifying after invoking the Fifth Amendment privilege" in a separate proceeding "does not remove the relevance of a witness's prior silence as one piece of evidence a jury may consider" in the instant proceeding); *see also Chagolla*, 529 F. Supp. 2d at 947 ("Though a person who claims the privilege in such circumstances and then has it used against him in a parallel

---

[5] *See Chagolla*, 529 F. Supp. 2d at 947 (granting a stay notwithstanding the delay imposed on a civil plaintiff, in part to avoid backing the parallel civil-criminal defendant "into a corner in which he has no viable choice but to claim the privilege [and] is forced to face a significant risk of unfair prejudice that may be virtually impossible to remedy"); *see also Trs. of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139–41 (S.D.N.Y. 1995) (noting that "[t]he inconvenience and delay to plaintiffs that will unfortunately be caused by a stay are outweighed by the defendants' significant Fifth Amendment concerns, particularly where a stay will not inordinately prolong the civil case and where the criminal prosecution could provide some benefit to the civil case and advance public interests").

– 13 –

civil case ordinarily is given a chance to explain his invocation of the privilege, the finer points of risk-aversion as it relates to criminal defense practice easily can be lost on lay jurors."). Forcing Mr. Penn into this position is unfair, given that "it is not at all rare for a person faced with criminal charges or a pending investigation to invoke the privilege even though he may have done nothing wrong, out of an abundance of caution prompted by a careful criminal defense lawyer." *See id*.[6] Mr. Penn fully expects to be acquitted at trial in the criminal matter, but by then it may be too late to avoid an adverse inference in the Securities Action and Derivative Action. *See Empress Casino*, 831 F.3d at 834-35.

Again, Mr. Penn's is the "strongest case for deferring civil proceedings until after completion of criminal proceedings." *Cruz*, 1997 WL 370194, at \*2 (quoting *S.E.C. v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980)). He is "under indictment for a serious offense," and "required to defend a civil . . . action involving the same matter." *See id*. If not deferred, his deposition in this matter "might undermine [his] Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case." *See id*. Indeed, Mr. Penn's position seems to be unique, in that he is apparently the only defendant in the criminal action whose deposition will go forward under the Court's recent order. The Court should not permit the plaintiffs in this action to place Mr. Penn in the position of having to choose whether to compromise his civil or criminal defenses. *See* Heidt, *supra,* note 6**Error! Bookmark not defined.,** at 1133 (noting the possibility of abuse where

---

[6] *See also* Robert Heidt, *The Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases*, 91 YALE L.J. 1062, 1132-33 (1982) ("[T]here is an acute risk that responses to discovery requests in the civil case will harm the defendant's strategic position in the criminal case. Faced with such a dilemma, most criminal defendants, innocent or guilty, probably would choose to invoke in the civil case.").

plaintiffs and potential plaintiffs "schedule civil discovery before the criminal trial merely to get the criminal defendant's invoking on the record" for the purpose of "admit[ting] the invoking against the invoker or his employer and, perhaps, of barring the invoker from testifying"). The Court should exercise its discretion to relieve Mr. Penn of that "severe burden" and stay his deposition. *See Cruz*, 1997 WL 370194, at \*4.

*Finally*, the interest in judicial economy weighs in favor of a stay. While the Court certainly has "an interest in moving the cases on its docket to an expeditious conclusion," *Nowaczyk v. Matingas*, 146 F.R.D. 169, 175 (N.D. Ill. 1993), staying Mr. Penn's deposition pending the resolution of the criminal proceedings "may eliminate much of the Court's work in the civil action by simplifying the issues." *See All Meat & Poultry Prods.*, 2003 WL 22284318, at \*5. For example, "[c]onvenience to the court will militate in favor of a stay where the outcome of a criminal case can be expected to remove the predicate for the assertions of the Fifth Amendment rights against self-incrimination by potential deponents and lighten the work load of a court to review those assertions." *Id.* Lastly, staying Mr. Penn's deposition—one small bit of discovery in this sprawling litigation—should not delay the broader action. The Court has already stayed discovery into "bid-rigging," so a stay of Mr. Penn's deposition should have little, if any, incremental impact on the progress of the case. And, of course, plaintiffs can always depose corporate defendants (who have no Fifth Amendment rights) and individuals with no reasonable fear of prosecution to learn whatever facts they seek to discover from Mr. Penn.

## CONCLUSION

For the foregoing reasons, Mr. Penn respectfully requests that the Court enter an Order granting Mr. Penn leave to intervene in this action and issue a Protective Order staying Mr. Penn's deposition pending the resolution of the

criminal proceedings.

Dated: April 29, 2021                    Respectfully submitted,

By: _/s/ Michael F. Tubach_

Michael F. Tubach (*pro hac vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, CA 94111-3823
Tel.: (415) 984-8700
Fax: (415) 984-8701
mtubach@omm.com

By: _/s/ Kevin B. Duff_

Kevin B. Duff (Bar # 6210491)
RACHLIS DUFF & PEEL, LLC
542 South Dearborn Street
Suite 900
Chicago, IL 60605
Phone (312) 733-3390
kduff@rdaplaw.net

*Counsel for Non-Party Jayson Penn*

## CERTIFICATE OF SERVICE

I hereby certify that I have caused the foregoing to be filed on the Court's CM/ECF system, which automatically provides notice to counsel for all parties to the above-captioned action.

Dated: April 29, 2021                              Respectfully submitted,


By: _/s/ Michael F. Tubach_
       Michael F. Tubach (*pro hac vice*)
       O'MELVENY & MYERS LLP
       Two Embarcadero Center
       28th Floor
       San Francisco, CA 94111-3823
       Tel.: (415) 984-8700
       Fax: (415) 984-8701
       mtubach@omm.com