UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 16 C 8637<br><br>Judge Thomas M. Durkin<br>Magistrate Judge Jeffrey T. Gilbert |

## ORDER

This order is intended to provide the parties with advance notice of Judge Durkin's perspective on recent briefing and issues in the case, and an agenda, both with the intent of making Friday's joint hearing with Judge Gilbert as productive as possible.

The Court has divided this case into two phases: (1) claims about market manipulation through supply reduction and fixing of the Georgia Dock price index (the "market manipulation claims"); and (2) claims about bid-rigging.

This division was accomplished primarily through two orders: (1) an order granting the government's motion for a protective order on March 4, 2020 (ECF No. 3520); and (2) an order staying the bid-rigging claims in response to Defendants motion seeking to have them struck from the case on September 22, 2020 (ECF No. 3835).

Both of these orders were primarily exercises in case management. The case had been focused on the market manipulation claims for four years. The bid-rigging claims were begotten of the criminal indictment. The two sets of claims are certainly related, and for that reason the Court denied the motion to strike the bid-rigging

claims. But the lateness of the bid-rigging claims compelled that they be addressed sequentially.

No motion to reconsider either of these orders has ever been filed. Until March 25, 2021 (more than a year after the order granting the DOJ's motion for a protective order) when certain DAPs filed briefs and a motion in response to Defendants' motion to amend the scheduling order, the Court was unaware that the stay of bid-rigging claims had created obstacles to completing discovery by June 11, 2021. Indeed, the stay was intended to *enable* discovery to be completed on time.

Furthermore, the recent DAP briefing sought relief that was well outside the parameters the Court has set for this case. The DAPs asked for either: (1) a substantial extension of the discovery deadline for the entire case; or (2) a separate track for their cases. The first option would have made the October 2022 trial date impossible for all parties. The second option would have split the market manipulation phase of the case in two, which is contrary to the Court's desire to complete that phase on the current schedule, considering the advanced age of the case.

However, the transcript of the May 7 hearing, which Judge Durkin has read, revealed something different. Counsel for the Restaurant DAPs argued that there is discovery Defendants have refused to produce, characterizing it as relevant to the bid-rigging claims, but which the DAPs fear will be characterized as market manipulation evidence and prohibited during the bid-rigging phase. If this is true, it is an untenable catch-22.

The Court also understood counsel to say that the Restaurant DAPs are willing and able to abide by the current case management schedule with respect to the market manipulation claims originally brought by the Classes (to the extent DAPs continue to bring those claims), as long as they are assured that they will be able to take the disputed discovery during the bid-rigging phase of the case, even if it might touch on market manipulation issues.

The Court is not willing to move the October 2022 trial date for market manipulation claims. The Court is also not willing to split the market manipulation claim phase into two separate tracks. The Court continues to believe that evidence of bid-rigging is not necessary to prosecute the market manipulation claims.

The Court, however, is open to the idea that evidence of market manipulation is necessary to prosecute the bid-rigging claims. For instance, if the alleged bid-rigging occurred in the context of a market that was collusively manipulated, the relevance seems obvious. For that reason, the Court will consider taking measures to ensure that the bid-rigging phase of the case is not hobbled by too stingy a conception of what discovery is relevant to the bid-rigging claims. The Court is also operating on the assumption that the discovery taken during the market manipulation phase of this case will be available to the parties to use during the bid-rigging phase.

In general, the Court will not tolerate use of discovery tactics to place plaintiffs with bid-rigging claims in a catch-22 where they are prevented from taking certain discovery during the current market manipulation phase of the case that is then also unavailable during the bid-rigging phase. Similarly, no DAP should continue to seek

discovery in the current phase of case that is not necessary to try the market manipulation claims in October 2022. And the argument that bid-rigging discovery is necessary to try the market manipulation claims has already been rejected. Discovery that is relevant will be taken in one phase of the case or the other, whenever it is appropriate in the context of protective order ECF No. 3520 and to enable the market manipulation claims to be tried in October 2022. The fact that the case is divided into phases is not a basis to otherwise withhold discovery that meets the standards of Rule 26.

The Court hopes that these preliminary thoughts about current issues may suggest some potential solutions to the disputes that were previewed on May 7 and will assist the parties in focusing their participation in Friday's hearing. Again, these preliminary thoughts are merely intended to provide context for Friday's hearing. Ultimate resolution of the open issues in the case must be the product of proper conferences among the parties and briefing before Judges Gilbert and Durkin as appropriate.

With these thoughts in mind, the parties should be prepared to respond to the following questions and topics relevant to a plan for the October 17, 2022 trial in this case, and to raise other questions, ideas, or concerns they feel need to be addressed for this case to be tried in October 2022:

(1) By what date must certain depositions now subject to the Court's Sealed Order entered on April 19, 2021 [ECF No. 4557] be completed so that testimony given at those depositions can be addressed by the parties and the Court in summary

judgment practice and at trial consistent with the schedule set forth in Defendants' Proposed Scheduling Order No. 15 [ECF No. 4439-1].

(2) The Court would like to set a date by which a DAP case must have been consolidated with this master case to be eligible to be tried in October 2022; what date should the Court set?

(3) If Direct Action Plaintiffs ("DAPs") can be assured that they will not be barred during the bid-rigging phase of this case from taking non-repetitive discovery that touches on the market manipulation claims (i.e., supply reduction and Georgia Dock), how does that impact their ability to comply with the current discovery schedule and/or try the case in October 2022?

(4) How many DAP cases now on file will be ready for trial in October 2022, subject to the Court's rulings on any motions for summary judgment, assuming the depositions referenced in paragraph 1 above have been taken and fact discovery closes on June 11, 2021?

(5) Same question as (2) above directed only to the Restaurant Direct Action Plaintiffs ("Restaurant DAPs")?

(6) Is it feasible for the DAPs to designate only certain bellwether DAP cases to be tried in October 2022 along with the class cases? If so, what impact will that have on all DAPs' ability to comply with the current discovery and trial schedule?

(7) Are there any obstacles to trying bellwether DAP cases with the class cases in October 2022?

(8) Should all or some discovery (other than bid-rigging discovery) be stayed in any DAP cases that will not be tried in October 2022?

ENTERED:

*(signature)*

Honorable Thomas M. Durkin
United States District Judge

*(signature)*

Honorable Jeffrey T. Gilbert
United States Magistrate Judge

Dated: May 11, 2021