## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To:<br>*Chick-fil-A, Inc. v. Agri Stats, Inc. et al.*,<br>20-cv-7205 | Case No.: 1:16-cv-08637<br><br>Judge Thomas M. Durkin<br><br>Magistrate Judge Jeffrey T. Gilbert |

### DIRECT-ACTION PLAINTIFF CHICK-FIL-A, INC.'S MOTION TO PARTIALLY RECONSIDER THE SEPTEMBER 22, 2020 ORDER AND OBJECTION TO MAGISTRATE JUDGE'S MAY 7 AND MAY 13, 2021 ORDERS

The current structure and schedule of this complex antitrust litigation has been the subject of much briefing and discussion as the parties grapple with the challenges of litigation amidst a global pandemic, a parallel U.S. Department of Justice investigation and criminal proceeding, and the unforeseen consequences of prior structural and scheduling decisions. While everyone involved in this case—from the Court to the Defendants to the Classes to the Direct-Action Plaintiffs ("DAPs")—has worked diligently and in good faith to move this case along expeditiously under difficult conditions, this case cannot continue to proceed on the current schedule consistent with due process, basic fairness, and applicable Supreme Court precedent.

The original schedule in this case was set in April 2017, but it has been modified several times to account for new developments, including the effects of a global pandemic and the intervention by the U.S. Department of Justice in furtherance of a parallel criminal proceeding involving alleged bid rigging by at least some of the Defendants. The current schedule, Scheduling Order No. 14, was set on August 28, 2020 before Chick-fil-A, Inc. ("Chick-fil-A")—and many other DAPs—exercised their well-established right to file a direct-action complaint. Scheduling Order No. 14 contemplated the closing of fact discovery on June 11, 2021, the close of expert

discovery on November 5, 2021, the summary judgment briefing in early 2022, and the "first trial date" in October 2022.

However, since Scheduling Order No. 14 was entered, there have been four significant and inter-related developments in the case, all of which bear on the schedule. First, the Court issued its September 22, 2020 Order, which bifurcated what the Court characterized as the bid rigging "claims" from the market manipulation "claims" involving the Georgia Dock and supply reduction. Although understandably intended to allow allegations about Georgia Dock and supply reduction to continue to move forward expeditiously, this Order unintentionally creates significant tension with certain DAPs' substantive rights under the U.S. Supreme Court's decision in *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962). Second, as the reach of the alleged bid-rigging conduct became apparent through the DOJ's Superseding Indictment and other documents, several large DAPs, including Chick-fil-A, entered the case as DAPs. Third,

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████. Fourth, the DAPs, including Chick-fil-A, have been unable to obtain any individualized discovery, as Defendants seem intent on using the September 22, 2020 Order as both a sword and a shield.

Accordingly, Chick-fil-A brings this Motion to: (1) request partial reconsideration of the September 22, 2020 Order; and (2) object to Magistrate Judge Gilbert's May 7 and May 13, 2021 Orders, which keep the fact discovery deadline of June 11, 2021 and do not address the legitimate concerns of DAPs such as Chick-fil-A. With some modifications outlined below, including most importantly moving the current expert report and summary judgment deadlines until after all

discovery is complete, Chick-fil-A believes that the concerns animating both of these Orders can be addressed in a manner that balances competing interests, promotes judicial efficiency, and comports with due process, basic fairness, and applicable Supreme Court precedent.

## ARGUMENT

### I.    THE SEPTEMBER 22, 2020 BID-RIGGING ORDER SHOULD BE PARTIALLY RECONSIDERED

The complexion of this long-running case changed on June 3, 2020 when the U.S. Department of Justice announced that a federal grand jury in Colorado had returned an indictment against four executives of two major chicken suppliers, Pilgrim's Pride and Claxton Poultry, for their role in a conspiracy to fix prices and rig bids for broiler chickens from at least as early as 2012 until at least early 2017. The DOJ also announced that the indictment was the result of an ongoing federal antitrust investigation into price fixing, bid rigging, and other anticompetitive conduct in the broiler chicken industry. A few days later, on June 10, 2020, Tyson revealed in a press release that it was cooperating with DOJ after self-reporting certain unspecified information and applying for leniency under the DOJ's Corporate Leniency Program.

In light of these developments, the Court addressed a number of issues, including how best to handle amended complaints incorporating bid rigging allegations and Defendants' desire to strike or sever those claims. On September 22, 2020, the Court issued an order denying Defendants' request to strike or sever the claims. Order, ECF No. 3835. That Order ruled that the bid-rigging allegations were related to the existing claims under Rule 42(a) and were thus subject to joint management options, Order at 3, 8, and further ruled that the bid-rigging allegations should be included in a consolidated complaint. Order at 9. In so doing, the Court expressly acknowledged that all of the allegations against the defendants arose from and were part of the same overarching conspiracy and emphasized the inter-relatedness of the different aspects of that conspiracy:

> There is a substantial relationship between the alleged bid-rigging claim and the alleged supply reduction and Georgia Dock price index manipulation claims. All three claims have the same goal of maintaining a high price for Broilers, involving the same industry and defendants. . . . [I]t is plausible for a single conspiracy to use different means at different times. . . . Under Plaintiffs' theory of the case, all three claims are means to the same end of manipulating Broiler prices.

Order at 4, 7.

Nonetheless, the Court expressed concern about the effect that adding the bid-rigging allegations would have on the overall schedule. Order at 5-6. In an effort to address these concerns, the Court *sua sponte* split and bifurcated Plaintiffs' single overarching conspiracy claim into what it categorized as separate market manipulation and bid-rigging claims and then stayed the latter until the former "are resolved." Order at 7. The Court premised the bifurcation on what it characterized as the Court's "virtually unlimited freedom" to manage related or consolidated cases "in whatever way trial convenience requires," Order at 2, and stated that this solution was feasible because "evidence of bid-rigging is not necessary to prove the supply reduction or Georgia Dock claims." Order at 7.

After entry of the September 22 Order, however, the DOJ announced that the grand jury had returned a superseding indictment against six additional executives of major chicken suppliers charging them with rigging bids and fixing prices and other price-related terms for broiler chicken products. Subsequently, Chick-fil-A learned that it was one of the victims identified, albeit anonymously, in the Superseding Indictment. The Chick-fil-A restaurant system purchases a significant volume of broiler chicken. It has considerable interests in this civil litigation and as an identified victim of the criminal antitrust conspiracy alleged by the Department of Justice.

Accordingly, on December 4, 2020, Chick-fil-A filed its lawsuit and joined in several aspects of the DAPs' Consolidated Complaint. Importantly, the first count of Chick-fil-A's complaint—which incorporates the Consolidated Complaint—is a claim under the Sherman Act

4

that "at least as early as January 1, 2008, and continuing until at least as late as 2019 . . . Defendants entered into a continuing agreement, understanding and conspiracy in restraint of trade to fix, raise, stabilize, and maintain prices for and/or restrain supply of broilers, manipulation of the Georgia Dock benchmarking price, and rig bids and allocate markets for broilers." In other words, both Chick-fil-A and the Consolidated Complaint allege that what the Court characterized as the market manipulation claims and the bid rigging claims in its September 22, 2020 Order are actually facets of an overarching antitrust conspiracy.

The September 22, 2020 Order and subsequent scheduling orders, however, improperly split apart this overarching conspiracy claim in violation of well-established law and are serving to build error into the schedule of the case itself. Nonetheless, if the September 22, 2020 Order is narrowed and certain scheduling accommodations are made, Chick-fil-A believes that the concerns underlying the Order can be addressed and the case structured in a way that comports with the Court's desire to move the case forward efficiently.

### A. If Not Properly Narrowed, the September 22, 2020 Order Would Conflict with the U.S. Supreme Court's Decision in *Continental Ore*.

Fifty years ago, in *Continental Ore Co. v. Union Carbide & Carbon Corp.*, the Supreme Court held that "the character and effect of [an antitrust] conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at is as a whole." 370 U.S. 690, 699 (1962) (*quoting United States v. Patten*, 226 U.S. 525, 544 (1913)). In that case, the complaint alleged that defendants violated the Sherman Act by monopolizing and/or attempting or conspiring to monopolize the markets for certain ore deposits. *Id.* at 693. In support of this theory, plaintiffs included descriptions of five separate types of allegedly anti-competitive conduct that occurred across several years. *Id.* at 694-95. The lower court analyzed and ruled on each separately and sequentially as independent claims, rather than as part of a single overarching claim. *Id.* at

697-698. On appeal, the Supreme Court held that it was reversible error to analyze Continental's claims "as if they were five completely separate and unrelated lawsuits." *Id.* at 698. Instead, the Court held that, in antitrust cases, "plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." *Id.* at 699. As a result, the Court vacated and remanded the case back to the lower court for further consideration consistent with its order. *Id.* at 710.

Following *Continental Ore*, the Seventh Circuit has consistently emphasized that the dismemberment of an antitrust conspiracy into its constituent parts is improper. *See, e.g.*, *Fontana Aviation, Inc. v. Cessna Aircraft Co.*, 617 F.2d 478, 481 (7th Cir. 1980) (error to isolate aspects of a "multi-faceted conspiracy" and fail to consider allegations concerning conspiratorial motive and intent as parts of the whole conspiracy); *Kochert v. Greater Lafayette Health Servs., Inc.*, 463 F.3d 710, 717 (7th Cir. 2006) (recognizing "the need for holistic examination of a defendant's acts in the context of a court's assessment of price-fixing arrangements"); *City of Mishawaka, Ind. v. Am. Elec. Power Co.*, 616 F.2d 976, 986 (7th Cir. 1980) ("The utility would have us consider each separate aspect of its conduct separately and in a vacuum. If we did, we might agree with the utility that no one aspect standing alone is illegal. It is the mix of the various ingredients of utility behavior in a monopoly broth that produces the unsavory flavor.").

The September 22, 2020 Order bifurcating bid rigging and market manipulation claims, while intended to assist in managing the complexities of an evolving case, unavoidably builds *Continental Ore* error into the structure of the case. As noted above, the first count in the Consolidated Amended Complaint is an alleged overarching conspiracy in violation of the Sherman Act. Chick-fil-A and other DAPs allege, as in *Continental Ore*, that this conspiracy manifested itself in various ways and through various means, including market manipulation and

6

bid rigging. But all of this conduct is, as the Court previously recognized, in furtherance of—and part and parcel of—an overarching conspiracy. *See* Order at 4, 7. ("Under Plaintiffs' theory of the case, all three claims are means to the same end of manipulating Broiler prices" and "it is plausible for a single conspiracy to use different means at different times."). Indeed, the three examples of how the conspiracy was carried out are not separate "claims" at all. While some DAPs may plead some narrower components of the conspiracy as separate claims in the alternative, the primary allegation made by Chick-fil-A and other DAPs, as reflected in Count I and as recognized by the Court, is that there is an overarching conspiracy that used different means at different times. The September 22, 2020 Order should be reconsidered insofar as it prevents Chick-fil-A from pursuing its overarching conspiracy claim.

### B. The Magistrate Judge's May 7 and May 13, 2021 Orders Entrench the *Continental Ore* Problem within the Case Schedule.

The bifurcation and stay of bid-rigging discovery contemplated by the September 22, 2020 Order is currently being implemented by Scheduling Order 14, as modified by Magistrate Judge Gilbert's rulings on May 7 and May 13, 2021. This means that discovery regarding the market manipulation "claims" closes on June 11 followed by expert discovery and summary judgment leading up to an October 2022 trial date. If the September 22, 2020 Order meant that discovery would be sequential and the parties had the opportunity to first take market manipulation and then bid-ridding discovery *before* the case proceeded into expert discovery, summary judgment, and trial, then Chick-fil-A believes that the *Continental Ore* issue could be minimized or even avoided. Under those circumstances, the experts could consider all the relevant evidence "as a whole" and submit reports on a single conspiracy without being forced by the schedule to separate and "tightly compartmentalize" each aspect of the conspiracy separately. The parties would also then have all the evidence pertaining to the overarching conspiracy before the case reaches the summary

judgment stage, thereby enabling the Court to rule on the overarching conspiracy claim without creating a built-in Rule 56(d) problem. And the jury would have all the evidence needed to render a proper verdict. This is not only the correct approach under *Continental Ore* but also the one that will best enable this case to drive towards resolution efficiently and expeditiously.

Alternatively, if Chick-fil-A and other DAPs who have alleged this single overarching conspiracy are required to disassociate the elements of the overarching conspiracy claim now, then the *Continental Ore* problem is unavoidable. The September 22, 2020 Order is motivated by a desire to move the case along efficiently, but it will unintentionally build error into the foundation of the case. Indeed, it will force DAP experts to dismember Count I and view each part separately, rather than analyzing it "as a whole" and with "the full benefit of their proof" as required by *Continental Ore*. And, by the time the *Continental Ore* problem inevitably manifests itself at summary judgment, it will be too late. For example, Defendants will not be able to move for summary judgment on the primary allegation of a single overarching conspiracy on the current schedule because Chick-fil-A and other DAPs will not have completed discovery into bid-rigging allegations yet and would thus be deprived of the "the full benefit of their proof" as required by *Continental Ore*. It is far better to avoid that problem now than create a situation that precludes the Court from being able to address significant issues during the first of two bifurcated summary judgment stages because of the way the schedule has been structured.

The inefficiency associated with this bifurcated approach, moreover, far outweighs any concerns about the additional time that may be needed to ensure that all relevant fact discovery is truly complete **before** expert reports and summary judgment motions are filed. Because of the intertwined nature of the claims, the bifurcated approach necessarily will involve significant overlap and duplication. Key witnesses, for example, may need to be deposed and then re-deposed.

And, as new discovery and information becomes available on a bifurcated track, the current approach would essentially force the parties to engage in a cycle of supplementations and re-dos in order to comport with due process. Finally, once the case reaches the first summary judgment stage, the Court will likely confront significant Rule 56(d) issues that could have been easily avoided if all discovery was allowed to be completed before the case transitioned into the expert repot and summary judgment phase, thereby better positioning the Court to resolve the key legal issues necessary to truly advance the resolution of the case.

Chick-fil-A requests, therefore, that modifications to the current schedule are necessary, including moving the expert report and summary judgment phase of the case until after all discovery has been completed, in order to ameliorate the *Continental Ore* problem. The Court has recently raised its own questions regarding some of these scheduling issues in its May 11, 2021 Order, *see* ECF No. 4626, and Chick-fil-A believes that the discussion of those questions is best undertaken with this concern in mind.

### C. The Defendants Are Seeking to Take Advantage of the September 22, 2020 Order and the Court's Scheduling Orders to Disadvantage Chick-fil-A Among Others.

Since it joined the case six months ago, Chick-fil-A has worked diligently to respond to a substantial volume of discovery that was immediately served by defendants. Chick-fil-A is mindful of the Court's desire to move the case along and has proceeded quickly towards that end. Several developments, however, have caused concern regarding the current schedule.

As an initial matter, the Defendants took the position that the June 11, 2011 close of fact discovery for market manipulation "claims" strictly applies *no matter when a case was filed* even to plaintiffs, like Chick-fil-A, that were not parties to the case when Scheduling Order 14 was issued. This position is inconsistent with basic fairness and due process. *See, e.g.*, *Gen-Tran Corp. v. Universal Prod. Concepts, Inc.,* No. 1:08-CV-3777-BBM, 2009 WL 10664931, at *8 (N.D. Ga.

Nov. 5, 2009) ("Due process mandates that [a party] cannot be bound by a scheduling order entered before [that party] became a party to the case."); *P.R. Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*, 326 F.R.D. 363, 365-66 (D.P.R. 2018) (holding that "modifications to the prior scheduling order are inevitable" when a new party has been added to preserve the party's "due process rights").

As one of the later-filing DAPs, Chick-fil-A reasonably expected that the parties would be able to work out a meaningful extension of the schedule, in good faith, to allow sufficient time to complete discovery relevant to Chick-fil-A's claims. But that has not been the case. Instead, Defendants have sought to portray later-filing DAPs negatively by essentially arguing that they were dilatory and should have filed sooner.[1] But it was entirely appropriate for companies affected by defendants' alleged conduct to pursue their own direct action claims, rather than allow the class to control their own claims. In fact, it was every DAP's constitutional right to do so. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (holding that the right to opt out is the "minimum" due process requires). And every DAP has its own unique interests to consider that may affect the timing of its decision as to when to pursue its own action. For a variety of reasons, many DAPs, including DAPs like Chick-fil-A for whom bid-rigging is a significant element of their case, filed later than others. This is not due to any desire to delay the case, but rather because many of these DAPs are large corporate parties who wanted to carefully and responsibly evaluate their cases before exercising their constitutional right to file and control their own claim.

Second, following its entry into the case, Chick-fil-A was surprised to learn that Defendants took the position that the Court's September 22, 2020 Order and/or the Magistrate Judge's prior orders prevented Chick-fil-A (and any other newly filed DAP) from obtaining ***any***

---

[1] *See* Certain Restaurant DAPs' Mot. to Establish a Separate Restaurant DAP Track, ECF No. 4460.

individualized or unique discovery from Defendants. That position is untenable. As outlined in a recent motion filed by the Restaurant DAPs, Chick-fil-A and other Restaurant DAPs are pursuing certain unique claims that no other party to the case is pursuing.[2] Defendants themselves, moreover, have emphasized to the Court how unique each individual DAP's purchasing relationship is and why individualized proof is necessary to resolve this case when it suits their interests.[3] They have also put certain topics "at issue" by asserting them as affirmative defenses to DAPs claims, including the communications between DAPs and their suppliers that explain why they chose to buy from each chicken supplier, the terms and negotiation of their individualized supply contracts and what that means for DAPs' claims, and the nature of each DAP's dealings with each supplier and whether the supplier was treated fairly.[4] All of these require individualized discovery regarding the communications and essential terms of the agreements between the DAPs and their suppliers. Nonetheless, Defendants have essentially contended that the Court has only permitted one-way discovery at this point: Defendants could obtain discovery from Chick-fil-A, but not vice versa.[5]

To justify their position, at least in part, Defendants have relied on the September 22, 2020 Order. The express premise of the Court's September 22, 2020 Order was that "evidence of bid-rigging is not necessary to prove the supply reduction or Georgia Dock claims" and that the former could move forward. Order at 7, ECF No. 3835. In making this ruling, the Court recognized that "discovery for all three claims is thoroughly intertwined in terms of the scope of relevant

---

[2] *See* Certain Restaurant DAPs' Mot. to Establish a Separate Restaurant DAP Track, ECF No. 4460; Certain Restaurant DAPs' Reply, ECF No. 4545.

[3] *See* Defendants' Opposition to Direct Purchaser Plaintiffs' Motion for Class Certification at 20-22, ECF No. 4210. Defendants' arguments in opposition to class certification are thus undermined by their entire approach to DAP discovery.

[4] *See* Defs. Consolidated Answer to Complaint by DAPs, ECF No. 4417.

[5] DAPs such as Chick-fil-A had been intending to file motions to compel to address many of these issues when the Defendants preemptively filed their Motion to Amend the Scheduling Order.

documents, document custodians, and deponents." Order at 4. Defendants, however, have turned the reasoning underlying the September 22, 2020 Order on its head. Indeed, Defendants are now claiming that DAPs such as Chick-fil-A cannot get access to market manipulation discovery **because** that discovery is intertwined with the stayed bid-rigging claims.[6] Some Defendants are even taking the position that they will not produce certain witnesses twice,[7] leaving DAPs like Chick-fil-A with an untenable choice: either take the depositions now and not ask about anything the Defendants consider to be "bid-rigging" or wait until after the bid-rigging bifurcation ends, in which case DAPs will be deprived of certain witnesses' testimony for purposes of expert reports and in response to any summary judgment motions on the market manipulation claims. This too conflicts with the reasoning underlying the September 22, 2020 Order and is fundamentally unfair. *See* Order at 7.

Relatedly, the September 22, 2020 Order seemed to be have been influenced, at least in part, by the fact that the DOJ "indicated that it will seek to stay much of any permitted bid-rigging discovery to protect its criminal prosecution." Order at 6. The Court presumably reasoned that bifurcating bid-rigging from market manipulation would allow the case to move forward on market manipulation without confronting the issues presented by the DOJ stay. █████████████

███████████████████████████████████████████████

███ .[8] █████████████████████████████████████████████

---

[6] Certain Restaurant DAPs' Mot. to Establish a Separate Restaurant DAP Track at 9-11, ECF No. 4460.

[7] *See, e.g.*, Ex A, Email from J. Herbison to Plaintiffs (May 12, 2021) ("[W]e reiterate our request that you hold the deposition notices in abeyance ███████████████████████████████████████████████

███████████████████████████████████████ but it would be extremely inefficient to do so now.")

[8] ███████████████████████████████████████████████

███████████████████████████████████████████



.[10] DAPs such as Chick-fil-A ████████████████

████████████████████████████████████████████████████, the

rationale underlying the bifurcation in the Sept. 22, 2020 Order no longer holds and the *Continental*

*Ore* issues are exacerbated.

Finally, in light of the significant concerns presented by the September 22, 2020 Order,

DAPs attempted to meet and confer with Defendants in an effort to work out a potential stipulation

that would address the Court's animating concerns while ensuring that DAPs were not prejudiced.

Specifically, in March 2021, DAPs asked defendants to stipulate as follows:

> Defendants will not in any motion or other submission filed by any Defendant, or
> at trial, rely on the absence of evidence about, or consideration of, the possible or
> actual effects of alleged or potential bid rigging, as grounds for or in support of the
> motion, submission or presentation, including but not limited to any motion for
> summary judgment, motion *in limine*, or motion to exclude expert testimony filed
> by any Defendant.

*See* ECF No. 4637. This stipulation was designed to prevent Defendants from continuing to use

the Sept. 22, 2020 Order as a shield in discovery but as a sword later in the case. Tellingly,

Defendants refused to agree to this fair and reasonable stipulation, thereby signaling an intent to

continue to pursue a divide and conquer strategy as to the single overarching conspiracy claim.**[11]**

---

[9] *See* DAPs' Response in Opposition to Defs.' Mot. to Adopt Proposed Schedule No. 15 and Request for Court Conference, ECF No. 4468.

[10] *See* Decl. of Kristin M. Frost in Support of Non-Party Timothy Stiller's Mot. for Leave to Intervene and Request to Stay Dep. Discovery, at ¶ 7, ECF No. 4621, filed under seal on May 8, 2021, ECF No. 4620.

[11] Chick-fil-A joined two motions filed by DAPs on May 13, 2021 in the alternative. *See* Mot. for Entry of an Order Preventing Any Def. From Relying on the Absence of Evidence About, or Consideration of, the Possible or Actual Effects of Alleged or Potential Bid-Rigging, ECF No. 4637; Mot. for an Extension

## II. THE COURT SHOULD CLARIFY OR MODIFY THE SEPTEMBER 22, 2020 ORDER AND ADJUST THE CURRENT SCHEDULE TO COMPORT WITH *CONTINENTAL ORE*

The current posture of this case unintentionally builds prejudicial error into the schedule and, as Defendants continue to take advantage of that reality, the problems created thereby will only multiply and proliferate. Chick-fil-A respectfully suggests that the only reasonable path forward is to partially revisit the Sept. 22, 2020 Order and Magistrate Judge's May 7 and May 13, 2021 Orders regarding the schedule in order to avoid the *Continental Ore* problem, address the significant issues that have arisen since they were entered, and ensure that all parties are properly allowed to pursue their cases consistent with due process and applicable Supreme Court precedent.

First, the Court should clarify or modify the September 22, 2020 Order so that it applies only to fact discovery and not expert reports, summary judgment or trial in order to ensure compliance with *Continental Ore*. The Court should then order the parties to submit proposals to Magistrate Judge Gilbert for a revised schedule, but any deadlines for expert reports, summary judgment, and trial should be set ***after*** the parties complete fact discovery, including both what the Court has characterized as market manipulation and bid-rigging discovery. This will put the Court in a position, at summary judgment, to address Count I of the Consolidated Amended Complaint and DAP allegations regarding a single overarching conspiracy theory in a way that gives Chick-fil-A and other DAPs "the full benefit of their proof, without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." *Continental Ore*, 370 U.S. at 699.

---

of Time to Serve Initial Expert Reports, ECF No. 4648. However, Chick-fil-A does not believe that either order fully addresses the potential *Continental Ore* issues inherent to the September 22, 2020 Order and the Magistrate Judge's May 7 and May 13, 2020 Orders regarding scheduling.

One consequence of this modification is that the June 11, 2021 fact discovery cutoff should no longer be operative. The Court should order the parties to use the next few months to finalize whatever individualized and unique discovery is necessary, and then the parties should begin "bid-rigging" discovery in earnest following the upcoming DOJ criminal trial. At the same time, the Court should make clear that discovery after a certain date is limited to individualized, non-duplicative discovery. This solution not only avoids building error into the structure of the case, but it also prevents the significant inefficiencies associated with a bifurcated system of expert reports and summary judgment where the parties would have to constantly supplement as new information becomes available.

Second, the concerns animating the September 22, 2020 Order can be accommodated by keeping the October 2022 trial date and utilizing the date for a DAP bellwether trial for a select group of DAPs for whom the bid-rigging allegations are not as significant as they are for Chick-fil-A and others. To that end, the Court should order the parties to meet and confer and submit briefing on the composition and procedure for a DAP bellwether trial. Bellwether trials are frequently utilized in complex antitrust litigation and seem particularly appropriate in a case such as this where there are a large number of DAPs who have opted to file their own lawsuits to control their own claims. The bellwether approach also builds greater flexibility into the structure of the case to enable the Court to better manage later-filing DAPs, as well as DAPs with differing or unique claims, in a way that comports with due process and basic fairness.

## CONCLUSION

For all the foregoing reasons, Chick-fil-A respectfully requests that the September 22, 2020 Order and the Magistrate Judge's May 7 and May 13, 2021 Orders be partially modified.

15

Dated: May 14, 2021

*/s/ Ryan P. Phair*
Ryan P. Phair (#479050)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, D.C. 20037-1701
(202) 955-1500
rphair@huntonak.com

Matthew J. Calvert (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
Bank of America Plaza, Suite 4100
600 Peachtree Street NE
Atlanta, GA 30308
(404) 888-4000
mcalvert@huntonak.com

Julie B. Porter (#6243787)
SALVATORE PRESCOTT PORTER &
PORTER, PLLC
1010 Davis Street
Evanston, Illinois 60201
(312) 283-5711
porter@spplaw.com

*Attorneys for Plaintiff Chick-fil-A, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of May, 2021, I caused a true and correct copy of the

foregoing document to be served upon all counsel of record via the Court's CM/ECF system.

<u>*/s/ Ryan P. Phair*</u>
Ryan P. Phair