# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **IN RE BROILER CHICKEN ANTITRUST LITIGATION** | No. 1:16-cv-08637 |
| **THIS DOCUMENT RELATES TO:** **DIRECT PURCHASER PLAINTIFF ACTIONS, COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFF ACTIONS, AND END-USER CONSUMER PLAINTIFF ACTIONS** | **Judge Thomas Durkin** **Magistrate Judge Jeffrey T. Gilbert** **[PUBLIC, REDACTED]** |

## COMBINED SUR-REPLY IN OPPOSITION TO

## PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

Page

INTRODUCTION.............................................................................................................1

THE DIRECT PURCHASER PLAINTIFFS ...............................................................4

I.      DPPS' IMPACT AND DAMAGES MODELS FAIL UNDER *COMCAST*.................4

      A.      DPPs Concede Dr. Carter's ███████████████████████████

               ███████████████████████████████████████████████4

      B.      Dr. Carter's New Analysis Proves His Overcharge Model Fails *Comcast* Too. .....8

II.    DPPS' GREAT MANY UNINJURED CLASS MEMBERS REQUIRE DENIAL OF CLASS CERTIFICATION. ........................................................................................9

III.  DR. CARTER CANNOT ESCAPE THE UTTERLY IMPLAUSIBLE PROFIT MARGINS OF HIS BUT-FOR WORLD. .................................................................11

END-USER CONSUMER PLAINTIFFS ...................................................................14

I.      EUCPS STILL FAIL TO ESTABLISH PREDOMINANCE. .....................................14

      A.      Dr. Sunding's New Opinions Do Not Establish Predominance ...........................14

      B.      EUCPs Continue to Ignore Significant Variations in the State Laws...................18

II.    EUCPS' ARGUMENTS THAT PROPOSED CLASS REPRESENTATIVES ARE TYPICAL AND ADEQUATE IGNORE THE RECORD EVIDENCE...........20

THE COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS .............................................................................................................21

I.      CIIPPS HAVE NOT CARRIED THEIR BURDEN ON CLASS CERTIFICATION. ...........................................................................................................21

      A.      CIIPPs Bear the Burden Here, Not Defendants or Dr. Johnson. ........................22

      B.      Dr. Mangum's Models Do Not Show Common Impact Because They Cannot Control for Non-Conspiratorial Economic Factors................................................23

      C.      Dr. Mangum's New Theories Do Not Move the Needle on Class Certification. ...........................................................................................................24

      D.      Dr. Mangum Continues to Mask Individualized Differences...............................25

CONCLUSION ...........................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*In re Aluminum Warehousing,*
    336 F.R.D. 5 (S.D.N.Y. 2020) ................................................................................. *passim*

*Comcast Corp. v. Behrend,*
    569 U.S. 27 (2013) ................................................................................................. 3, 5, 9

*E.E.O.C. v. Sears, Roebuck & Co.,*
    839 F.2d 302 (7th Cir. 1988) ....................................................................................... 23

*In re Epipen Epinephrine Injection.,*
    2020 WL 1180550 (D. Kan. Mar. 10, 2020) ......................................................... 19, 20

*Kleen Prods. LLC v. Int'l Paper Co.,*
    831 F.3d 919 (7th Cir. 2016) ....................................................................................... 18

*Kohen v. Pac. Inv. Mgmt. Co. LLC,*
    571 F.3d 672 (7th Cir. 2009) ..................................................................................... 2, 4

*McCrary v. Elations Co. LLC,*
    2014 WL 12589137 (C.D. Cal. Dec. 2, 2014) ............................................................ 23

*Messner v. Northshore Univ. HealthSystem,*
    669 F.3d 802 (7th Cir. 2012) ....................................................................................... 14

*Mowry v. JP Morgan Chase Bank, N.A.,*
    2007 WL 1772142 (N.D. Ill. June 19, 2007) .............................................................. 21

*Muehlbauer v. Gen. Motors Corp.,*
    2009 WL 874511 (N.D. Ill. Mar. 31, 2009) ................................................................ 20

*Mullins v. Direct Digital, LLC,*
    795 F.3d 654 (7th Cir. 2015) ....................................................................................... 20

*Nat'l Credit Union Admin. Bd. v. UBS Sec., LLC,*
    2016 WL 7373857 (D. Kan. Dec. 20, 2016) ................................................................. 5

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
    993 F.3d 774 (9th Cir. 2021) ............................................................................... *passim*

*In re Pilgrim's Pride Corp.*,
  448 B.R. 896 (Bankr. N.D. Tex. 2011) ................................................................8

*In re Rail Freight Fuel Surcharge Antitrust Litigation - MDL No. 1869*,
  725 F.3d 244 (D.C. Cir. 2013) ...........................................................................6

*Stearns Airport Equp. Co. v. FMC Corp.*,
  170 F.3d 518 (5th Cir. 1999) ............................................................................12

*In re Steel Antitrust Litig.*,
  2015 WL 5304629 (N.D. Ill. Sept. 9, 2015) ...............................................1, 11, 14

*Taylor Publ'g. Co. v. Jostens, Inc.*,
  216 F.3d 465 (5th Cir. 2000) ............................................................................12

*Thompson v. Jiffy Lube Int'l, Inc.*,
  250 F.R.D. 607 (D. Kan. 2008)..........................................................................19

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
  2015 WL 3623005 (E.D. Pa. June 10, 2015) .................................................19, 20

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)..........................................................................................17

*Whitserve, LLC v. Comput. Packages, Inc.*,
  694 F.3d 10 (Fed. Cir. 2012).............................................................................13

*In re Wholesale Grocery Prod. Antitrust Litig.*,
  2012 WL 3031085 (D. Minn. July 25, 2012), *aff'd*, 752 F.3d 728 (8th Cir.
  2014) ..............................................................................................................6

*In re Wholesale Grocery Prods.*,
  946 F.3d 995 (8th Cir. 2019) ..............................................................................5

**INTRODUCTION**

Defendants file this sur-reply to address (i) the **new analysis** offered by Plaintiffs' experts in their rebuttal reports and (ii) the **new decision** vacating class certification in the *Tuna* antitrust litigation—a case involving several of the same experts at issue here.[1]  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774 (9th Cir. 2021).

<u>**DPPs**</u>.  DPPs do not dispute that their lead expert, Dr. Carter, ███████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ Nor do they dispute that Dr. Carter's ████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████

Instead, DPPs filed ***another*** 136 pages of economic analysis (some of it brand new)—for a total of 253 pages—hoping to paper their way to class certification.  They say ██████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ Dkt. 4480, DPP Reply in Support of Class Certification ("DPP Reply") at 1.  That is wrong.  The "Court must consider whether [the] regression is properly used here."  *In re Steel Antitrust Litig.*, 2015 WL 5304629, at *11 (N.D. Ill. Sept. 9, 2015).  To do so, the Court "must rigorously analyze . . . [statistical] evidence to test its reliability and . . . see if the statistical modeling . . . mask[s] individualized differences," *Olean*, 993 F.3d at 791, and may certify a class "***only***" where the model is in fact sound, *In re Aluminum Warehousing*, 336 F.R.D. 5, 46 (S.D.N.Y. 2020).

---

[1]  Because it has settled with the DPPs, Defendant Pilgrim's Pride joins this Sur-Reply and submission of a Supplemental Expert Report only as to the CIIPP and EUCP actions.

Plaintiffs fail this test for commonsense reasons.  DPPs cannot explain why it is proper for

█████████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████████

███████████████  Likewise, DPPs cannot justify Dr. Carter ██████████████████████

█████████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████████

See Dkt. 4209.01, Johnson Rep. ¶ 274 & Ex. 69.  Dr. Johnson's analysis ████████████

███████████████████████████████████████████████

DPPs argue ████████████████████████████████████████████ DPP

Reply 2.  But it is precisely ████████████████ that the *Tuna* court relied on in ***vacating*** class

certification.  Just as in *Tuna*, Dr. Johnson's analysis found that ██████████████████████

█████████████████████████████████████████████████████████████████████████████████

███████████████  And just as in *Tuna*, that result dooms DPPs' request for class certification.

*Olean*, 993 F.3d at 791 ("If a substantial number of class members 'in fact suffered no injury,' the

'need to identify those individuals will predominate.'"); *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571

F.3d 672, 677 (7th Cir. 2009) (class should not be certified if there are a "great many" uninjured).

**EUCPs.**  EUCPs also remain unable to establish predominance despite another 188-page

report from their expert, Dr. Sunding.  Despite new analysis, Dr. Sunding ██████████████

█████████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████  Dkt. 4487.03, Sunding Reply ¶ 24.  That is not reliable—

█████████████████████████████████████████████████████████████████████████████████



███ Ex. 1, Sunding 5/5/21 Dep. 84:9–91:18.  Thus, his model fails *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).

Like Dr. Carter, Dr. Sunding ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████ Even under Dr. Sunding's "new" model, when it is un-pooled, it still shows that **at least 34% of the direct purchaser volume of commerce** was not affected.  This is fatal under *Tuna*—which decertified a class for this same reason—and an entire body of caselaw that supports that decision.

EUCPs also try to offer a host of new arguments about the laws of the 25 states in their proposed class and other arguments to try to save their class representatives.  None of these new arguments come close to meeting EUCPs' burden.

**CIIPPs.**  CIIPPs' Reply is long on rhetoric and short on substance.  It baselessly ██████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████ Dkt. 4512, CIIPP Corrected Reply in Supp. of Mot. for Class Certification ("CIIPP Reply") 2, 7, 8.  Indeed, it appears at times that CIIPPs forget they bear the burden here.  It is CIIPPs' expert, Dr. Mangum, ████████████████████████████████

████████████████████████████████████████████████████████████

Rep. ¶ 50.  Just like in *Tuna*, Dr. Mangum's models "mask[] the predominance question itself by 'assuming away the very differences that make the case inappropriate for classwide resolution.'" *Olean*, 993 F.3d at 787.

The reports are long; the analysis is dense; but the only things that are "common" in this case are the flaws across the plaintiffs' models.  They fail to disaggregate lawful from unlawful conduct—a clear violation of *Comcast*.  What is more, all three experts rely on averaging to "mask[] individual differences among the class members, such as bargaining power, negotiation positions, and marketing strategies." *Olean*, 993 F.3d at 792.  The bottom line is that all three experts' models show a great many uninjured direct purchasers—the first step in the analysis for each class—and that is fatal as a matter of law. *See id.*; *Kohen*, 571 F.3d at 677.  For these reasons (and many more), the Court should find no Plaintiff group has met their high burden.

## THE DIRECT PURCHASER PLAINTIFFS

**I.  DPPS' IMPACT AND DAMAGES MODELS FAIL UNDER *COMCAST*.**

**A.  DPPs Concede Dr. Carter's** ███████████████████
███████████████████

Rather than defend Dr. Carter's ██████ DPPs mostly try to run from it.  Tellingly, they do not deny that ████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████████

***First***, there is ███████████████████████████████ DPP Reply 8.  DPPs are

stuck arguing ███████████████████████████████████████████████

████████████████████████████ *Id.*  That is fatal under *Comcast*.  Just as

*Comcast* rejected a regression that mixed lawful and unlawful conduct into one liability theory,

here, the SB test mixes lawful and alleged unlawful supply cuts together.  569 U.S. at 46–47.[2]

There is no credible argument that *Comcast* does not apply to this case, and it ends the inquiry for

the DPPs.  No class can be certified where the "foundation" of the class analysis is legally infirm.

*See Aluminum*, 336 F.R.D. at 57 (rejecting model as "insensitive to conduct which is conspiratorial

and conduct which is not").

***Second***, DPPs argue that ████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████ DPP Reply 14–15.  But Dr. Carter himself ███████

███████████████████████████████████████████████████

██████████████████████████ Ex. 2, Carter Dep. 13:8–12; Dkt. 3990.112,

Carter Rep. 18.  The law is clear that experts must base their benchmark in "sound methodology,"

which is absent here.  *Nat'l Credit Union Admin. Bd. v. UBS Sec., LLC*, 2016 WL 7373857, at *8

(D. Kan. Dec. 20, 2016); *In re Wholesale Grocery Prods.*, 946 F.3d 995, 1002 (8th Cir. 2019)

(rejecting "house of cards" built on "unfounded assumption").

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ Carter *Daubert* Reply 9.  Regardless, pointing to the ████████ cannot satisfy DPPs'



---

[2]   DPPs argue ████████████████████████████ Not so.  Court after court has applied *Comcast* to reject
models that fail to isolate the effects of unlawful conduct.  DPP Reply 18–22.

burden to proffer a reliable common impact model. As explained in *Aluminum Warehousing*, "courts in § 1 cases have consistently rejected attempts to establish classwide antitrust injury based on documentary or other lay evidence alone." *Aluminum*, 336 F.R.D. at 51; *In re Rail Freight Fuel Surcharge Antitrust Litigation - MDL No. 1869*, 725 F.3d 244, 253 (D.C. Cir. 2013) ("[Plaintiffs' expert] Rausser's models are essential to the plaintiffs' claim they can offer common evidence of classwide injury. No damages model, no predominance, no class certification."); *In re Wholesale Grocery Prod. Antitrust Litig.*, 2012 WL 3031085, at *10 (D. Minn. July 25, 2012), *aff'd*, 752 F.3d 728 (8th Cir. 2014) ("Plaintiffs . . . must produce a method of confirming that [their] theory matched reality for each class member[.]").[3]

      *Third*, Dr. Carter's ██████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

DPP Reply 7; Dkt. 4481, Carter Reply ¶¶ 130–31 & Fig. 12. That conclusion is flatly inconsistent with the view of independent third party the University of Missouri's Food and Agricultural Policy Research Institute ("FAPRI"), ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 3, FAPRI Dep.

34:16, 87:5–9. In any event, Dr. Carter's ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[3]  Dr. Carter ████████████████████████████████████████████

████████████████████████ Carter Reply ¶ 99.

████████████ *See* Dkt. 4268, Mangum *Daubert* Motion.

████████ Carter Reply ¶ 130 & Fig. 12. ████████████████████████

████████████████████████████████████████████ Ex. B, Johnson Supp. ¶ 36.

Nor does Dr. Carter's ████████████████████████████████████████

████████████████████████████████████████████████████████

████████ Carter Dep. 49:4. But after Defendants pointed out that ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ Carter Reply

¶¶ 146–50. According to Dr. Carter now, ████████████████████████

████████████████████████████████████████████████████████

██████ Ex. 4, Carter 5/12/21 Dep. 360:16–20. ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ Dkt. 4210.15, 2007 USDA Projections at 51 (emphasis

added); Carter 5/12/21 Dep. 364:5–11, 367:14–368:20. In other words, ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

**_Finally_**, the Court should not excuse DPPs' ████████████████████████

████████████████████████████████████████████████ DPP Reply 17;

Carter Reply 50–56. ████████████████████████████████████

████████████████████████ Johnson Supp. ¶ 52 (emphasis added). ████████████

████████████████████████████████████████████████████████

████████████████ Carter Reply Fig. 3; Johnson Supp. ¶ 56 & App. C. Here, it cannot be

disputed that ████████████████████████████████████████████

████████████████████████ Johnson Supp. App. C.  Dr. Carter ████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████ Carter Reply ¶¶ 70–72.

In sum, DPPs know ████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████ This core defect is fatal to class certification.

### B.  Dr. Carter's New Analysis Proves His Overcharge Model Fails *Comcast* Too.

Dr. Carter's ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ *See* Carter

Rep. ¶ 182 & Fig. 18. ███████████████████████████████████████████

███████████████████ Dkt. 4209, Defs.' Opp. to DPP Mot. in Supp. for Class Certification 38.  Those

cuts were indisputably unilateral; the bankruptcy court overseeing Pilgrim's bankruptcy found that

the "evidence is overwhelming that Debtors were incurring huge losses that could best be stemmed

by reducing their production."  *In re Pilgrim's Pride Corp.*, 448 B.R. 896, 905–07 (Bankr. N.D.

Tex. 2011).  The court concluded that Pilgrim's "clearly had a valid business purpose for their

actions.  It would not be possible for a reasonable jury to conclude otherwise."  *Id.*

Dr. Carter ████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████ Carter Rep. Fig. 18. ████████████████████████████████



Carter 5/12/21 Dep. 325:12–326:21.

*Id.* at 323:12–19.

*See id.* at 293:18–294:4

Johnson Supp. ¶ 44. Accordingly,

Johnson Supp. ¶ 6; Carter 5/12/21 Dep. 334:5–10. Mixing in plainly lawful conduct wrongly "blame[s] the defendants for pricing harm that they did not cause," *Aluminum*, 336 F.R.D. at 61, and does not "measure damages resulting from the particular antitrust injury on which [defendants'] liability in this action is premised," *Comcast*, 569 U.S. at 1433.

## II. DPPS' GREAT MANY UNINJURED CLASS MEMBERS REQUIRE DENIAL OF CLASS CERTIFICATION.

That class certification should be denied is further underscored by recent authority in the *Tuna* antitrust litigation. There, the Ninth Circuit vacated class certification where Dr. Johnson's

analysis—Defendants' expert here—showed the class could contain many uninjured class members. The Ninth Circuit explained: "a key factual determination courts must make is whether the plaintiffs' statistical evidence sweeps in uninjured class members." *Olean*, 993 F.3d at 791. In the *Tuna* case, Dr. Johnson's analysis had shown that an overcharge model similar to the one advanced by Plaintiffs' experts' here—propounded by the same Dr. Mangum who offers an opinion in this case—could well hide many uninjured class members by averaging them all together. *Id.* Under Dr. Johnson's analysis, Dr. Mangum's regression "was unable to show impact for up to 28% of the class," in which case "common questions of law or fact would not be shared by substantially all the class members, nor would they prevail in strength or pervasiveness over individual questions." *Id.* at 792.

Dr. Mangum's problem was his "**use of average assumptions**" that "**mask individual differences** among the class members, such as **bargaining power, negotiation positions, and marketing strategies**." *Id.* (emphasis added).



Dkt. 4478, DPP Opp. 51–53. DPPs do not dispute that

*Id.*

Just like in *Tuna*,

Johnson Rep. ¶¶ 148–67.

████████████████████████████████████████████████████

████████████████████████████ (DPP Reply 31–34), the Ninth Circuit did not.

To the contrary, that court *relied* on the sub-regressions as showing that Dr. Mangum's averages

masked real variation. ████████████████████████████████████████

████████████████████████████████████ Johnson Rep. ¶ 109.[4]  In other

words: ████████████████████████████████████████████

████████████████████████████████████ *Id.* This dooms DPPs' motion: ████

████████████████████ and no reliable way to "measure what impact, if any" afflicted

the rest.  *In re Steel*, 2015 WL 5304629, at *11; *Tuna*, 993 F.3d at 792.

## III.  DR. CARTER CANNOT ESCAPE THE UTTERLY IMPLAUSIBLE PROFIT MARGINS OF HIS BUT-FOR WORLD.

Finally, Dr. Carter's reply and his second deposition ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

DPP Opp. 54. ████████████████████████████████████████

████████████ Carter Dep. 161:20–23. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████ DPP Reply 35; Carter Reply ¶ 197.[5] ████████

████████████████████████████████████████████████████

---

[4]  DPPs' argument that ████████████████████████████ (DPP Reply 31–32.)

████████████████████████████████████████████████ Johnson

Supp. ¶ 14. ████████████████████████████████████████ *Id.* ¶ 15.

[5]  Fixed costs do not change with the amount of output produced, "at least over the short term."  *Stearns Airport Equp. Co. v. FMC Corp.*, 170 F.3d 518, 532 (5th Cir. 1999).  For example, "certain capital expenses are considered fixed."  *Id.*  "Variable costs," on the other hand, "vary with the amount produced, and include inputs like hourly labor [and] the cost of materials."  *Taylor Publ'g. Co. v. Jostens, Inc.*, 216 F.3d 465, 478 n.6 (5th Cir. 2000). Whether a cost is fixed or variable may change over time; the number of processing plants may be fixed for the next month, but not for the next year.  New plants may be necessary to meet increased demand, and old equipment

- ██████████████████████████████████████████ Carter 5/12/21 Dep. 250:10–23.

- █████████████████████████████████████████████

  ██████████████████████ *d.* at 290:17–19.

- ██████████████████████████████████████████████

  *Id.* at 245:15–18.

All that Dr. Carter's ████████████████████████████████████

████████████████████████████████████████████████████ *Id.* at 278:19–

23. But Dr. Carter ████████████████████████████████████

██ *Id.* 278:24–279:6 ██████████████████████████

  Dr. Johnson, █████████████████████████████████████

██████████████████████████████████████ Johnson Supp. ¶ 97. █████████

█████████████████████████████████████████████████████

██████████████████████████████ (Johnson Supp. Ex. 6):



██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████ Johnson Supp. ¶ 98. No class can be certified when it predicts such absurd results.

---

may need to be replaced. ███████████████████████████████████████

█████████████████████████████████ Johnson Supp. ¶ 38.

*Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 33 (Fed. Cir. 2012) (rejecting model that was "frankly, out of line with . . . economic reality").[6]

DPPs' motion for class certification fails at each step. ████████████████████████████



████████████ DPPs hang their hat on the fact that Dr. Carter ████████████████████████

████████████—but "regression" does not equal "reliable." *Olean*, 993 F.3d at 791; *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. at 46; *In re Steel Antitrust Litig.*, 2015 WL 5304629, at *11. Here, common sense should carry the day, and DPPs' class motion should be denied.[7]

---

[6]  ████████████████████████████████████████████████████
████████ Johnson Supp. ¶ 99; Carter Reply ¶ 200. ████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████ Johnson Supp. ¶¶ 99–100 & Ex.
7. ████████████████████████████████████████████████
████████████████ Johnson Supp. ¶ 100.

[7]  Pilgrim's joins this Sur-Reply only as to the CIIPP and EUCP actions. *See supra* n.1.

**END-USER CONSUMER PLAINTIFFS**

## I. EUCPS STILL FAIL TO ESTABLISH PREDOMINANCE.

### A. Dr. Sunding's New Opinions Do Not Establish Predominance.

In their Opposition, Defendants showed that Dr. Sunding's original overcharge and pass-through models were unable to show predominance because they are fundamentally unreliable and do not demonstrate common impact. On Reply, EUCPs shift gears and now point to a new "opinion" from Dr. Sunding that his overcharge model somehow "implied" production reductions during the EUCP class period, as well as attempts by Dr. Sunding to show common impact by running different versions of his overcharge and pass-through models. Nonetheless, EUCPs' flawed economic models remain unable to show classwide antitrust impact for several reasons.[8]



*First*,

Sunding 5/5/21 Dep. 78:10–18.

Sunding Reply ¶ 24.

a 2006 USDA    *Id.* ¶ 24 &

---

[8]   EUCPs are wrong that

(Dkt. 4487, EUCP Reply 8)  The *Messner* court addressed each of the elements of the plaintiffs' antitrust claim and specifically noted that with respect to the "antitrust impact" element, "[u]nder Rule 23(b)(3), plaintiffs had to show it was possible to use common evidence *to prove* that [defendant's] merger injured the members of the proposed class."  *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 816 (7th Cir. 2012) (emphasis added).  The court further confirmed that plaintiffs must "demonstrate that the element of antitrust impact is *capable of proof at trial* through evidence that is common to the class rather than individual to its members."  *Id.* at 818.

14

Fig. 1  Sunding 5/5/21 Dep. 47:10–50:24 (same).

Sunding 5/5/21 Dep. 48:21–49:7.

Sunding 5/5/21 Dep. 47:16–48:6, 51:10–17.

Sunding 5/5/21 Dep. 50:25–51:9.

*Id.* at 59:8–20; *see also* Johnson Supp. ¶ 69 & n.124. Thus, there is nothing in this new opinion that tells the Court anything about but-for production, or that could reasonably be considered a reliable method for measuring but-for production.[9] This is fatal under *Comcast*.

***Second***, Dr. Sunding's

Sunding 5/5/21 Dep. 84:9–91:18.

---

[9] As Dr. Sunding concedes, Johnson Supp. n.124.



[black] Ex. 5, Sunding Dep. 141:2–13. [black]

[black] *Id.* at 84:9–

85:15.  Under that logic, Dr. Sunding cannot show an impact on price for any ***other*** alleged conduct

beginning in 2008 either.  *See* Johnson Supp. ¶ 71.

***Third***, Dr. Sunding's [black]

[black] Johnson Rep. ¶¶ 294–296, 336 & Exs. 76–

78. [black]

[black] Johnson Supp. ¶ 144. [black]

To state the obvious, if Plaintiffs cannot reliably show that the ***direct purchasers*** were

overcharged, there is no need to reach the question of whether the ***indirect purchasers*** were too.

Here, [black] [10]  This is fatal under *Tuna*

---

[10]  EUCPs try to paint such issues as simply "battles of the expert."  This misses the mark and ignores their burden to demonstrate predominance.  Rather, as the Ninth Circuit most recently recognized in the *Tuna* case in which

and the case law supporting that decision. *See Olean*, 993 F.3d at 791–92.

**Fourth**, Dr. Sunding's model ███████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████ Johnson Rep. ¶ 346. ████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████ Johnson Supp. ¶¶ 166, 170 & n.348.[11] Thus Dr. Sunding's model

still cannot show impact for class members like named EUCP Kristin Davis (Florida) who did not

incur any overcharge because she testified to only shopping at Publix, where the only EUCP class

products she purchased were breast products. *Id.*

**Finally**, EUCPs' new attempt to sidestep these modeling issues and claim that they have

satisfied predominance based on Dr. Sunding's discussion of ███████████████ alone misstates the



---

Dr. Sunding testified, "[w]hile consideration of representative evidence may be flexible, it must be scrutinized with care and vigor . . . [because] [t]here is reason to be wary of overreliance on statistical evidence to establish classwide liability." *Olean*, 993 F.3d at 786. "The use of representative evidence at the class certification stage must therefore be closely and carefully scrutinized, and '[a]ctual, not presumed, conformance' with Rule 23's requirements is 'indispensable.'" *Id.* at 787 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

[11]  Dr. Sunding's model ████████████████████████████████████████████████████████████
████████████ Johnson Supp. ¶¶ 24, 170.

law and their burden. Defendants have not "ducked" *Kleen Products* on this issue. EUCP Reply 10. Contrary to EUCPs' suggestion, the court in *Kleen* did not hold that information relating to the market structure was sufficient to establish common impact. Rather, the market structure was just one of the "several types of evidence" plaintiffs' experts presented. *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 927 (7th Cir. 2016). In response to defendants' attempts to discredit plaintiffs' expert's report concerning the general characteristics of the market structure, the court noted that plaintiffs' "evidence [went] . . . well beyond the structural," and was not tainted by "a chain of assumptions [about how a market would perform] . . . [but had] shown actual prices increases, a mechanism for those increases, the communication channels the conspirators used, and factors suggesting that cartel discipline can be maintained." *Id.* at 928. Moreover, *Kleen* did not involve a fundamentally flawed and unreliable methodology to show classwide impact, as here. The defendants did not even challenge the plaintiffs' methodologies as unreliable. *Id.* at 922.

### B. EUCPs Continue to Ignore Significant Variations in the State Laws.

EUCPs try to brush aside their burden on the state-law issues by making the sweeping statement on Reply that █████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

EUCP Reply 35. EUCPs' total disregard for the variations in state laws turns a decade plus of class certification law in indirect purchaser antitrust cases on its head. Contrary to EUCPs' statements, multiple courts have denied requests for class certification based on the variations in the relevant state laws. *See, e.g.*, *In re Epipen Epinephrine Injection.*, 2020 WL 1180550, at *57 (D. Kan. Mar. 10, 2020) (denying certification of state consumer protection claims due to the "disparity of standards the states use to define unfair conduct under various consumer protection statutes present individual issues, and they overwhelm the common issues"); *Vista Healthplan, Inc.*

*v. Cephalon, Inc.*, 2015 WL 3623005, at *34 (E.D. Pa. June 10, 2015) (denying class certification where EUCPs' accounting of state law variances was "not comprehensive and glosse[d] over important differences").[12]



EUCP Reply 35, n. 101; EUCP Reply App. A.

*See id.* App. A. In reality, there are many more material differences that EUCPs' chart completely ignores. *See Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 625 (D. Kan. 2008) (noting that "[t]he amount of damages recoverable for a consumer protection violation varies from state to state"); *Vista*, 2015 WL 3623005, at *36, 40 ("[S]tates [including Utah and New Mexico] vary considerably in their formulation of the intent a plaintiff must prove."); *In re Epipen,* 2020 WL 1180550, at *55–57 (noting different standards, including in Florida, Nebraska, New Hampshire, and New Mexico, in determining what qualifies as prohibited conduct under their particular statutes).

EUCP Reply 37. This argument ignores the long list of cases finding that "*multi-state class actions for unjust enrichment are inappropriate because the individual states' laws regarding*

---

[12]  EUCPs' statement that Defendants fail to identify a single case in which a court declined to certify a class on the basis of the variations in state laws alone is wrong.  Among other cases Defendants cited, in *In re Epipen*, the court denied a request to certify state consumer class action claims because "the variations among state consumer protection laws preclude predominance."  2020 WL 1180550, at *57.

unjust enrichment are too nuanced to lend themselves to class treatment." *Muehlbauer v. Gen. Motors Corp.*, 2009 WL 874511, at *5 (N.D. Ill. Mar. 31, 2009); *see also* Dkt. 4213, Defs.' Opp. to EUCP Mot. for Class Certification ("EUCP Opp.") 48 (collecting cases).[13]

EUCPs also ███████████████████████████████████████████████████████

███████████████████████████████████████████████ EUCP Reply 38, n.116.

However, as EUCPs acknowledge, *Mullins* is clear that a plan cannot wait in instances, as here, where difficult manageability problems in light of material variations in state laws are evident at the certification stage. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015). While EUCPs want to kick that can down the road, these manageability issues cannot be ignored. Having offered no trial plan whatsoever, EUCPs have failed to demonstrate manageability.

## II. EUCPS' ARGUMENTS THAT PROPOSED CLASS REPRESENTATIVES ARE TYPICAL AND ADEQUATE IGNORE THE RECORD EVIDENCE.

While EUCPs suggest that Defendants' challenges to typicality and adequacy are ██████

█████ such challenges present real issues for certain class representatives.

For example, EUCPs ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████ *See* EUCP Opp. Ex. 91, Weidner Dep. 3:1–10, 22:11–13, 41:8–16, 81:14–16 (attached as Ex. 6). The close relationship between the Weidners and Ms. Levens raises the very same conflict of interest concerns that courts have determined

---

[13] The Court should deny class certification of the unjust enrichment claims for a separate reason: EUCPs' expert ████████████████████████████████████████████████████████ Sunding Dep. 122:8–12; Sunding 5/5/21 Dep. 40:24–41:8.

defeat the adequacy of a class representative. *See, e.g.*, *Mowry v. JP Morgan Chase Bank, N.A.*, 2007 WL 1772142, at *3–4 (N.D. Ill. June 19, 2007) (concluding that "close friend" of class counsel for 6 years was inadequate in light of conflict of interest concerns).

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████ *See* EUCP Opp. Ex. 91, Weidner Dep. 44:11–45:16, 51:4–25, 55:24–56:2. ████

████████████████████████████████████ *Id.* at 128–29. Now, months later, after Defendants submitted their Opposition, EUCPs submit a declaration from Mr. Weidner

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

*Id.* at 63:20–22. These circumstances, along with Mr. Weidner's close relationship with EUCP counsel, raise serious concerns regarding Mr. Weidner's adequacy as a class representative.[14]

## THE COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS

## I. CIIPPS HAVE NOT CARRIED THEIR BURDEN ON CLASS CERTIFICATION.

CIIPPs' Reply sheds much heat but little light. The brief ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ CIIPP Reply 2, 7, 8, 13,

---

[14] Finally, EUCPs' claim that Messrs. Hayward and Holt are typical of the class rings hollow. For example, ████████████████ *See* Ex. 92 to Dkt. 4213, EUCP Opp., Hayward Dep. 111:25–112:6 (attached as Ex. 7); Ex. 87 to EUCP Opp., Holt Dep. 133:15–134:15 (attached as Ex. 8). EUCPs do not dispute these facts or that these facts raise individual issues as to any alleged damages they may have. Instead, EUCPs focus on whether any such purchases were made in New York and would be subject to a pass-on defense under New York law. While EUCPs ████████████████████████████████████████████████ Holt Dep. 132:2–133:12.

36.  While Defendants do not wish to add to the briefing already before the Court—including their opposition, which explains why a CIIPP class should not be certified, and the *Daubert* briefing on Dr. Mangum, which explains three serious failures that undermine his entire report—several unfounded accusations and new theories in CIIPPs' Reply merit a brief response.

### A.  CIIPPs Bear the Burden Here, Not Defendants or Dr. Johnson.

One would have thought that the legal standard on CIIPPs' initial motion for class certification, at least, should be uncontroversial.  Nevertheless, the Reply █████████████ ██████████████████████████████████████████████████ *See, e.g.*, CIIPP Reply 13 ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████ Not once do CIIPPs cite support for the novel proposition that a rebuttal expert must construct his or her own model that delivers what plaintiffs deem "reliable results" in service of their motion and otherwise "fix[es]" the faults in their case. Such a standard would be remarkable given that the Seventh Circuit has already rejected the argument that an expert's statistical analysis can be rebutted only by a competing analysis.  *See E.E.O.C. v. Sears, Roebuck & Co.*, 839 F.2d 302, 313–14 (7th Cir. 1988).[15]  What Dr. Johnson *does* deliver—both in his initial rebuttal report and his supplemental report—is a rigorous, testing-based analysis of the many flaws undercutting Dr. Mangum's proposed means of demonstrating class-wide impact.  That is more than enough to defeat CIIPPs' motion.

---

[15]  Ironically, Dr. Mangum himself was previously challenged on this ground when serving as a rebuttal expert in a class action, and the court there also soundly rejected the argument.  *McCrary v. Elations Co. LLC*, 2014 WL 12589137, at *13 (C.D. Cal. Dec. 2, 2014) (refuting the idea that "a rebuttal expert may not criticize another expert's regression analysis unless he provides a competing regression analysis"); *see also In re Aluminum*, 336 F.R.D. at 29 ("There is no requirement that a rebuttal expert himself offer a competing analysis.").

**B. Dr. Mangum's Models Do Not Show Common Impact Because They Cannot Control for Non-Conspiratorial Economic Factors.**

CIIPPs assert that Dr. Mangum's models "accounted for all [factors ███████████ ██████████████████████ and that "Defendants never explain why Dr. Mangum's variables are insufficient." CIIPP Reply 17–18. Not so. Defendants argued that his model's controls are insufficient in their *Daubert* motion (Dkt. 4268 6–7) and in their class certification Opposition (Dkt. 4234 30–31 ██████████████████████████████████ ██████████████████████████████████████████████████████████ 43–44 (similar)); Defendants address these controls, yet again, in their concurrently filed *Daubert* reply regarding Dr. Mangum at pages 4–6.

CIIPPs' claim that Dr. Mangum "explicitly and expressly did account for all the factors Defendants identified," CIIPP Reply at 19, is incredulous. █████████████████ █████████████████████████████████████████ ████████ Mangum *Daubert* Reply 4–5. ████████████████████████████████ █████████████████████████████████████████ █████████████████████ CIIPP Reply 18. Second, ██████████████████████████ ██████████████████████████████████████████ █████████████████████████████████████ Mangum *Daubert* Reply 5. █████████████████████████████████████████ █████████████████████████████████████████ ████████████████████████████ *See* Johnson Supp. ¶ 33. Finally, ██ █████████████████████████████████████████ █████████████████████████████████████████ ██████████████████████████ Mangum *Daubert* Reply 5–6.

For these reasons, CIIPPs' claims that (i) their models accounted for all relevant factors, and (ii) that Defendants failed to challenge these models' design, should both be rejected.

### C. Dr. Mangum's New Theories Do Not Move the Needle on Class Certification.

Although Dr. Mangum generally responded to Dr. Johnson's rebuttal report by dismissing the critiques out of hand and doubling down on his original, flawed methods, in a few instances he conducted new analysis for his reply report. None of these new and belated theories, however, can rescue CIIPPs' motion.

*First*, in response to Dr. Johnson's showing that Dr. Mangum's production model fails ▮



Dkt. 4493.03, Mangum Reply ¶ 47. At the outset, this replacement is arbitrary

*See* Dkt. 3997, Mangum Corrected Initial Rep. ("Mangum Rep.") ¶ 143

Johnson Supp. ¶ 63 & App. D.

*Second*, in response to Dr. Johnson's observation that it was wrong

Mangum Reply ¶ 221 & Figs. 44–47.

*See* Johnson Supp. ¶ 86.

***Finally***, in response to Dr. Johnson's analysis showing that ██████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ Mangum Reply ¶¶ 228, 230 & Figs. 50–52.  This is, once again, a highly selective modification.  ███████████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ ███████████████████████████████ *See* Johnson Supp. ¶ 136 & Exs. 11, 12.

### D.    Dr. Mangum Continues to Mask Individualized Differences.

Dr. Mangum ***continues*** to assume ████████████████████████████ █████████████████████████████████████████████████████████████ ████████████████████████████████████████████ *See* Mangum Rep. ¶ 236; Mangum Reply ¶¶ 244–45.  Dr. Mangum maintains that ██████████████████████ █████████████████████████████████████████████████████████████ ███████████████ Mangum Reply ¶¶ 244–45.  But ████████████████████████████ "mask[s] individual differences among the class members, such as bargaining power, negotiation positions, and marketing strategies."  *Olean*, 993 F.3d at 792.  Dr. Mangum's obfuscation of differences precluding classwide impact cannot be the basis for certification.

### CONCLUSION

Plaintiffs' motions for class certification should be denied.  None even attempt to disaggregate lawful supply from supposedly unlawful cuts, as required in this supply-focused case.  And none show common injury; to the contrary, Plaintiffs' own experts' models show a significant number of uninjured members.  For these reasons, and many more, no class can be certified.

Dated:  May 20, 2021

Respectfully submitted,

*/s/ Daniel E. Laytin, P.C.*

_____

Daniel E. Laytin, P.C.
Christa C. Cottrell, P.C.
Stacy Pepper
Rachel B. Haig
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000
dlaytin@kirkland.com
ccottrell@kirkland.com
stacy.pepper@kirkland.com
rachel.haig@kirkland.com

*Attorneys for Defendants Sanderson Farms, Inc., Sanderson Farms, Inc. (Processing Division), Sanderson Farms, Inc. (Production Division), & Sanderson Farms, Inc. (Foods Division) and Liaison Counsel for Defendants*

<u>DEFENDANTS' ATTORNEYS</u>

KIRKLAND & ELLIS LLP

By: */s/ Daniel E. Laytin, P.C.*
Daniel E. Laytin, P.C.
Christa C. Cottrell, P.C.
Stacy Pepper
Rachel B. Haig
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
dlaytin@kirkland.com
ccottrell@kirkland.com
stacy.pepper@kirkland.com
rachel.haig@kirkland.com

*Attorneys for Defendants Sanderson Farms,*
*Inc., Sanderson Farms, Inc. (Foods Division),*
*Sanderson Farms, Inc. (Processing Division),*
*and Sanderson Farms, Inc. (Production*
*Division) and Liaison Counsel for Defendant*

VENABLE LLP

By: */s/ J. Douglas Baldridge*
J. Douglas Baldridge (#437678)
Lisa Jose Fales (admitted *pro hac vice*)
Danielle Foley (admitted *pro hac vice*)
Andrew Hernacki (admitted *pro hac vice*)
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4000
Facsimile: 202-344-8300
jdbaldridge@venable.com
ljfales@venable.com
drfoley@venable.com
athernacki@venable.com

FALKENBERG IVES LLP

Kirstin B. Ives
30 N. LaSalle St., Ste 4020
Chicago, IL 60602
Telephone: (312) 566-4803
Facsimile: (312) 566-4810
kbi@ffilaw.com

*Attorneys for Defendants Perdue Farms, Inc.*
*and Perdue Foods LLC*

ROSE LAW FIRM

By: */s/ John W. Treece*
John W. Treece (#3122889)
1135 West Montana Street
Chicago, IL 60614
Telephone: (312) 961-7808
jtreece@jwtreece.com

Amanda K. Wofford (admitted *pro hac vice*)
Bourgon Reynolds (admitted *pro hac vice*)
120 East Fourth Street
Little Rock, AR 72201
Telephone: (501) 375-9131
Facsimile: (501) 375-1309
awofford@roselawfirm.com
breynolds@roselawfirm.com

*Attorneys for Defendants Mountaire Farms Inc., Mountaire Farms, LLC and Mountaire Farms of Delaware, Inc.*

MAYER BROWN LLP

By: */s/ Carmine R. Zarlenga*
Carmine R. Zarlenga (#90784529)
William H. Stallings (admitted *pro hac vice*)
Stephen M. Medlock (admitted *pro hac vice*)
Oral D. Pottinger (admitted *pro hac vice*)
1999 K Street N.W.
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
czarlenga@mayerbrown.com
wstallings@mayerbrown.com
smedlock@mayerbrown.com
opottinger@mayerbrown.com

*Attorneys for Defendant Foster Farms, LLC and Foster Poultry Farms, a California Corporation*

NOVACK AND MACEY LLP

By: */s/ Stephen Novack*
Stephen Novack
Stephen J. Siegel
Christopher S. Moore
100 North Riverside Plaza
Chicago, IL 60606
Telephone: (312) 419-6900
Facsimile: (312) 419-6928
snovack@novackmacey.com
ssiegel@novackmacey.com
cmoore@novackmacey.com

*Attorneys for Defendants Koch Foods Incorporated, JCG Foods of Alabama LLC, JCG Foods of Georgia LLC and Koch Meat Co., Inc.*

PROSKAUER ROSE LLP

By: */s/ Christopher E. Ondeck*
Christopher E. Ondeck (admitted *pro hac vice*)
Stephen R. Chuk (admitted *pro hac vice*)
1001 Pennsylvania Ave., NW, Ste 600 South
Washington, DC 20004
Telephone: (202) 416-6800
Facsimile: (202) 416-6899
condeck@proskauer.com
schuk@proskauer.com

*Attorneys for Wayne Farms LLC*

KUTAK ROCK LLP

By: */s/ John P. Passarelli*
John P. Passarelli (admitted *pro hac vice*)
James M. Sulentic (admitted *pro hac vice*)
1650 Farnam Street
Omaha, NE 68102
Telephone: (402) 346-6000
Facsimile: (402) 346-1148
john.passarelli@kutakrock.com
james.sulentic@kutakrock.com

J.R. Carroll (admitted *pro hac vice*)
Jeffrey M. Fletcher (admitted *pro hac vice*)
234 East Millsap Road, Ste 200
Fayetteville, AR 72703-4099
Telephone: (479) 973-4200
Facsimile: (479) 973-0007
jr.caroll@kutakrock.com
Jeffrey.fletcher@kuakrock.com

Kimberly M. Hare (#6323326)
One South Wacker Drive, Ste 2050
Chicago, IL 60606-4614
Telephone: (312) 602-4100
Facsimile: (312) 602-4101
kimberly.hare@kutakrock.com

*Attorneys for Defendants O.K. Foods, Inc.,*
*O.K. Farms, Inc., and O.K. Industries, Inc.*

EDWARD C. KONIECZNY LLC

By: */s/ Edward C. Konieczny*
Edward C. Konieczny (admitted *pro hac vice*)
400 Colony Square, Ste 1501
1201 Peachtree Street, NE
Atlanta, GA 30361
Telephone: (404) 380-1430
Facsimile: (404) 382-6011
ed@koniecznylaw.com

SMITH, GAMBRELL & RUSSELL, LLP

David C. Newman (admitted *pro hac vice*)
W. Parker Sanders (admitted *pro hac vice*)
1230 Peachtree Street, N.E.
Promenade, Ste 3100
Atlanta, GA 30309
Telephone: (404) 815-3500
Facsimile: (404) 815-3509
dnewman@sgrlaw.com
psanders@sgrlaw.com

James L. Thompson
Lynch Thompson LLP
150 S. Wacker Drive, Suite 2600
Chicago, IL 60606
T: (312) 445-4623
F: (312) 896-5883
jthompson@lynchthompson.com

*Attorneys for Defendants Mar-Jac Poultry,*
*Inc.*

VAUGHAN & MURPHY

By: */s/ Charles C. Murphy, Jr.*
Charles C. Murphy, Jr.
(admitted *pro hac vice*)
690 S Ponce Court NE
Atlanta, GA 30307
Telephone: (404) 667-0714
Facsimile: (404) 529-4193
cmurphy@vaughanandmurphy.com


WINSTON & STRAWN LLP

James F. Herbison
Michael P. Mayer
35 West Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
jherbison@winston.com
mmayer@winston.com

*Attorneys for Defendant Norman W. Fries,
Inc. d/b/a Claxton Poultry Farms*

HOGAN LOVELLS US LLP

By: */s/ William L. Monts III*
William L. Monts III (admitted *pro hac vice*)
Justin W. Bernick (admitted *pro hac vice*)
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Telephone: (202) 637-5910
Facsimile: (202) 637-5911
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

MILLER, CANFIELD, PADDOCK, AND
STONE P.L.C.

Jacob D. Koering
225 West Washington Street, Ste 2600
Chicago, Illinois 60606
Telephone: (312) 460-4272
Facsimile: (312) 460-4201
koering@millercanfield.com

*Attorneys for Defendant Agri Stats, Inc.*

VEDDER PRICE P.C.

By: */s/ Gregory G. Wrobel*
Gregory G. Wrobel (#3122900)
222 N. LaSalle Street
Chicago, IL 60601
Telephone: (312) 609-7722
Facsimile: (312) 609-5005
gwrobel@vedderprice.com

JORDAN PRICE WALL GRAY JONES &
CARLTON, PLLC

Henry W. Jones, Jr. (admitted *pro hac vice*)
1951 Clark Avenue
Raleigh, NC 27605
Telephone: (919) 828-2501
Facsimile: (919) 834-8447
hjones@jordanprice.com

*Attorneys for Defendant House of Raeford
Farms, Inc.*

SHOOK HARDY & BACON LLP

By: */s/ Lynn H. Murray*
Lynn H. Murray
111 S. Wacker Dr., Ste 4700
Chicago IL 60606
Telephone: (312) 704-7700
Facsimile: (312) 558-1195
lhmurray@shb.com

Laurie A. Novion
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
lnovion@shb.com

CONNER & WINTERS

John R. Elrod
Vicki Bronson (admitted *pro hac vice*)
4375 N. Vantage Drive, Ste. 405
Fayetteville, AR 72703
Telephone: (479) 582-5711
jelrod@cwlaw.com
vbronson@cwlaw.com

*Attorneys for Defendant Simmons Foods, Inc.
and Simmons Prepared Foods Inc.*

JOSEPH D. CARNEY & ASSOCIATES LLC

By: */s/ Joseph D. Carney*
Joseph D. Carney (admitted pro hac vice)
OFFICE ADDRESS:
139 Crocker Park Boulevard, Ste. 400
Westlake, OH 44145
MAILING ADDRESS:
1540 Peach Drive
Avon, OH 44011
Telephone: 440-249-0860
Facsimile: 866-270-1221
jdc@jdcarney.com
case@jdcarney.com

MILLER SHAKMAN LEVINE &
FELDMAN LLP

Thomas M. Staunton
Daniel M. Feeney
180 North LaSalle Suite 3600
Chicago, IL 60601
Telephone: 312-263-3700
tstaunton@millershakman.com
dfeeney@millershakman.com

D.KLAR LAW

Deborah A. Klar (admitted pro hac vice)
2934 1/2 Beverly Glen Circle, Suite 761
Bel Air, CA 90077
Telephone: 310-858-9500
dklar@dklarlaw.com

Paul L. Binder, Esq. (admitted pro hac vice)
Attorney at Law
20780 Brandywine
Fairview Park, OH 44126-2805
Telephone: 440-376-6850
binderpl@yahoo.com

*Attorneys for Defendants Case Foods, Inc.,
Case Farms, LLC, and Case Farms
Processing, Inc.*

EVERSHEDS SUTHERLAND (US) LLP

By: */s/ Patricia A. Gorham*
James R. McGibbon
Patricia A. Gorham
Peter M. Szeremeta
Kaitlin A. Carreno
Dylan W. de Fouw
999 Peachtree Street, N.E., Ste 2300
Atlanta, GA 30309-3996
Telephone: (404) 853-8000
Facsimile:  (404) 853-8806
jimmcgibbon@eversheds-sutherland.com
patriciagorham@eversheds-sutherland.com
peterszeremeta@eversheds-sutherland.com
kaitlincarreno@eversheds-sutherland.com
dylandefouw@eversheds-sutherland.com


SMITH AMUNDSEN LLC

Ronald Balfour
150 N. Michigan Avenue, Ste 3300
Chicago, IL 60601
Telephone: (312) 894-3369
Facsimile: (312) 997-1816
rbalfour@salawus.com

*Attorneys for Defendant Harrison Poultry,
Inc.*

WEIL, GOTSHAL & MANGES LLP

By: */s/ Carrie C. Mahan*
Carrie C. Mahan (#459802)
Christopher J. Abbott (#1014487)
2001 M Street N.W., Ste. 600
Washington, D.C. 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
carrie.mahan@weil.com
christopher.abbott@weil.com

Pravin R. Patel (#0099939)
Brian G. Liegel (#0119269)
Corey K. Brady (admitted *pro hac vice*)
1395 Brickell Avenue, Ste. 1200
Miami, FL 33131
Telephone: 305-577-3100
pravin.patel@weil.com
brian.liegel@weil.com
corey.brady@weil.com

EIMER STAHL LLP

Michael L. McCluggage (#01820966)
224 South Michigan Avenue, Ste. 1100
Chicago, IL 60604
Telephone: (312) 660-7665
Facsimile: (312) 692-1718
mmccluggage@eimerstahl.com

*Attorneys for Defendant Pilgrim's Pride
Corporation*

HOGAN LOVELLS US LLP

By: /s/ *William L. Monts III*
William L. Monts III (admitted *pro hac vice*)
Justin W. Bernick (admitted *pro hac vice*)
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Telephone: (202) 637-5910
Facsimile: (202) 637-5911
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

MILLER, CANFIELD, PADDOCK, AND
STONE P.L.C.

Jacob D. Koering
225 West Washington Street, Ste 2600
Chicago, Illinois 60606
Telephone: (312) 460-4272
Facsimile: (312) 460-4201
koering@millercanfield.com

*Attorneys for Defendant Agri Stats, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2021, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Daniel E. Laytin, P.C.*

Daniel E. Laytin, P.C.

# Exhibit 1
# (Submitted Under Seal)

Exhibit 2
(Submitted Under Seal)

Exhibit 3
(Submitted Under Seal)

Exhibit 4
(Submitted Under Seal)

# Exhibit 5
# (Submitted Under Seal)

Exhibit 6
(Submitted Under Seal)

Exhibit 7
(Submitted Under Seal)

# Exhibit 8
# (Submitted Under Seal)