UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 16 C 8637<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs[1] allege that Rabobank[2] conspired with defendant companies in the poultry industry to limit the supply of chicken meat in violation of the Sherman Act § 1. Rabobank has moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 4369. That motion is granted.

Several years ago, the Court held that the class plaintiffs plausibly alleged a conspiracy in the poultry production industry to limit supply in order to increase the price of chicken. *See* R. 541 (*In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772 (N.D. Ill. 2017)). Shortly thereafter, the Court held that the class plaintiffs had

---

[1] According to the Direct Action Plaintiffs' consolidated complaint, the following plaintiffs have sued Rabobank: Sysco Corporation; US Foods, Inc.; EMA Foods Co., LLC; L. Hart, Inc.; R&D Marketing, LLC; Timber Lake Foods, Inc.; Campbell Soup Company, and related entities; Target Corporation; McLane Company, Inc. and related entities; Kinexo, Inc.; John Soules Foods, Inc. and John Soules Acquisitions LLC; and Red Bird Farms Distribution Company. *See* R. 4243 at 3-52. The three classes and more than 100 other Direct Action Plaintiffs have not.

[2] By "Rabobank," Plaintiffs mean: Utrecht-America Holdings, Inc., a Delaware corporation headquartered in New York, NY, which is the American subsidiary of the Dutch cooperative banks Cooperative Rabobank U.A. and Rabobank International Holding, B.V., and the subsidiaries Rabo AgriFinance LLC, a Delaware limited liability company headquartered in Saint Louis, MO; Rabobank USA Financial Corporation, a Delaware corporation headquartered in New York, NY; and Utrecht-America Finance Co., a Delaware company headquartered in New York, NY. *See* R. 4243 at 121-22 (¶ 240).

also plausibly alleged that industry analyst, Agri Stats, acted as a co-conspirator by being a conduit of information and communication among chicken producers. *See* R. 1943 (*In re Broiler Chicken Antitrust Litig.*, 2019 WL 1003111 (N.D. Ill. Feb. 28, 2019)). Plaintiffs allege that Rabobank played a similar role.

In denying the motion to dismiss the claims against Agri Stats, the Court found that "[i]t is at least plausible (if not likely) that a person who facilitates a conspiracy knows about the conspiracy and engages in the facilitation knowing of its consequences." *Id.* at *2. Plaintiffs would argue that this finding applies equally to Rabobank.

It is not surprising, and Rabobank does not dispute that it had frequent communications across the industry. It is apparently the largest or one of the largest lenders to chicken producers. Indeed, Plaintiffs have discovered emails in which a Rabobank director states that he has relayed communications between defendants Perdue and Pilgrim's Pride. *See* R. 4372-5; R. 4372-6; R. 4372-7. These emails raise the specter of Rabobank serving as a communications conduit akin to Agri Stats.

Rule 12(b)(6), however, does not permit Plaintiffs to chase ghosts. The mere possibility that the subject matter of Rabobank's communications was the alleged conspiracy to reduce supply is insufficient to state a claim. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of

2

entitlement to relief."). The emails are entirely ambiguous as to the subject matter of the communications they reference. Without knowing this information, Plaintiffs are asking the Court to infer that Rabobank knew about and communicated with Defendants about the alleged conspiracy from the unsurprising and unsuspicious fact that Rabobank communicated with Defendants. There are too many inferences in that chain of reasoning for it to retain plausibility.

Plaintiffs' allegations against Agri Stats were much more concrete. Plaintiffs alleged that Agri Stats "reports are so detailed that the ostensible anonymity of the information is breached, and Defendants were able to use the reports to communicate their Broiler production intentions, thereby conspiring to fix Broiler prices." *In re Broiler Chicken*, 2019 WL 1003111, at *1. And since Agri Stats produced the reports, the Court found it plausible that Agri Stats knew the reports were being used to facilitate conspiracy. There is no similar factual basis regarding Rabobank's communications with Defendants from which the Court can infer that those communications concerned the alleged supply reduction conspiracy.

The rest of the allegations are even less compelling. Plaintiffs emphasize that Rabobank campaigned for the industry to reduce production in order to increase prices. *See* R. 4243 at 189-92 (¶¶ 576-86). You don't need to be John Maynard Keynes to recognize this truism, and simply repeating it without a plausible claim of helping the producers to coordinate production decreases does not an antitrust violation make. Encouraging lower production by itself is simply not enough to plausibly establish liability. *See Kleen Prods. LLC v. Int'l Paper*, 276 F. Supp. 3d 811, 841 (N.D.

3

Ill. 2017) ("[T]here is a trade-off between price and volume. If firms want to raise prices, they have to produce less, sell less, and thereby say 'no' to customers. It should not be a mark of conspiracy to say what is true, already known by the audience, and articulated by countless third-party analysts, academicians, and jurists alike.").

Plaintiffs also make much of the fact that Rabobank communicated with Agri Stats about the need for production cuts. *See* R. 4243 at 189-90 (¶¶ 577-80). But again, these communications merely establish that Rabobank had a significant interest in the industry. None of these communications show that Rabobank was involved in coordinating production cuts among the producers.

Plaintiffs allegations are all the more insufficient when viewed in the context of the complaint as a whole. Plaintiffs dedicate only 13 of 1,514 paragraphs to Rabobank's conduct. The 425-page complaint provides great detail about the supply of chicken during the relevant time period and the activities of the defendant chicken producers and Agri Stats. The most compelling allegations against Rabobank are based on three emails, which, as discussed, are ambiguous at best. Such sparce allegations can sometimes be sufficient to state a claim in the right circumstances and when they permit the necessary inferences. But it is simply not plausible that Rabobank participated in an extensive conspiracy and left so little evidence of its participation.

Therefore, Rabobank's motion is granted, and Rabobank is dismissed without prejudice. If Plaintiffs discover facts plausibly implicating Rabobank in the

conspiracy, Plaintiffs may amend their complaint. In anticipation of that possibility, the Court addresses several of Rabobank's arguments.

First, the Court rejects Rabobank's argument that "service providers" should not face antitrust liability for colluding with their clients. *See* R. 4372 at 14 (quoting *Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 822 F. Supp. 2d 1201, 1219 n.18 (N.D. Ala. 2011)). If allegations plausibly demonstrate that a banker, lender, accountant, lawyer, or other service provider facilitated an unlawful conspiracy among their clients, the Court does not perceive any precedential danger in holding that person accountable for their conduct. The force of the allegations controls the analysis, not the title of the potential defendant.

Next, Rabobank argues that Plaintiffs sued the wrong entities and should have sued an entity called Coöperatieve Rabobank, U.A., New York Branch. *See* R. 4372 at 3 n.1; *id.* at 12. In support of this argument, Rabobank cites a Seventh Circuit holding that a "complaint based on a theory of collective responsibility must be dismissed." R. 4372 at 12 (quoting *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)). But the claims are plausibly understood as alleging agency among the Rabobank entities, not merely collective liability. Similarly, to the extent Rabobank is correct that Plaintiffs failed to sue the correct entity, that argument would not necessarily undermine the plausibly of the allegations against the other related entities.

Lastly, the Court notes Rabobank's argument that Plaintiffs must have "nothing to say" because they "used just two-thirds of the pages this Court allows for

5

response briefs." *See* R. 4536 at 2. This argument runs contrary to the opinions of great thinkers and writers throughout history who believed that brevity and silence have greater persuasive power, including Blaise Pascal's apology, "I would have written a shorter letter, but I did not have the time." More presently relevant to the parties, the Court suggests that condemnation of a concise brief is not generally a winning argument to make to a Court with many hundreds of pages of motions and briefs to read each week, many in this case alone.

Nevertheless, Rabobank's motion to dismiss [4369] is granted. The claims against Rabobank are dismissed without prejudice.

ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: June 1, 2021