# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | Case No. 1:16-cv-08637 |
|  | The Honorable Thomas M. Durkin |
| This Document Relates To: | The Honorable Jeffrey T. Gilbert |
| *Ahold Delhaize USA, Inc., et al. v. Pilgrim's Pride Corporation, et al.*, No. 18-cv-05351 |  |

## PILGRIM'S OPPOSITION TO AHOLD DELHAIZE'S
## MOTION TO COMPEL PILGRIM'S DEPOSITIONS

## <u>TABLE OF CONTENTS</u>

**Page(s)**

BACKGROUND ........................................................................................................................2

ARGUMENT .............................................................................................................................4

I.  The Additional Depositions of Mr. Neal and Mr. Robinson Are Unduly
Burdensome and Not Proportional to the Needs of This Case. ............................................5

II.  Ahold's Claims Are Not Unique and Defendants' Affirmative Defenses Do Not
Necessitate Individualized Discovery...................................................................................9

CONCLUSION..........................................................................................................................13

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ADT Sec. Servs., Inc. v. Pinnacle Sec., LLC,*
No. 10 C 7467, 2012 WL 1597383 (N.D. Ill. May 7, 2012) ..................................7, 8

*In re Cattle Antitrust Litig.,*
Civil No. 19-1129, 2020 WL 5884676 (D. Minn. Sept. 29, 2020).........................10

*Moore v. Abbott Labs.,*
No. 2:05-CV-1065, 2009 WL 73876 (S.D. Ohio Jan. 8, 2009)............................5, 8

*Mr. Frank Inc. v. Waste Mgmt., Inc.,*
No. 80 C 3498, 1983 WL 1859 (N.D. Ill. July 7, 1983) ..................................5, 7, 13

*Patterson v. Avery Dennison Corp.,*
281 F.3d 676 (7th Cir. 2002) .....................................................................5

*Perry v. Ill. Cent. R.R. Co.,*
No. 14 CV 756, 2014 WL 10742632 (N.D. Ill. Nov. 6, 2014) ...............................5

*Robinson v. Stanley,*
No. 06 C 5158, 2009 WL 3233909 (N.D. Ill. Oct. 8, 2009).............................5, 6

*Ross v. Gossett,*
No. 3:15-CV-309-SMY-MAB, 2021 WL 632963 (S.D. Ill. Feb. 18, 2021) ........5, 7

*Spears v. City of Indianapolis,*
74 F.3d 153 (7th Cir. 1996) ......................................................................7

*United Airlines, Inc. v. United States,*
26 F.R.D. 213 (D.Del. 1960) ...................................................................13

*Vakharia v. Swedish Covenant Hosp.,*
No. 90 C 6548, 1994 WL 75055 (N.D. Ill. Mar. 9, 1994) .....................................5

*Walker v. Sheahan,*
526 F.3d 973 (7th Cir. 2008) ....................................................................9

**Statutes**

15 U.S.C. §1 ...........................................................................................10

**Other Authorities**

Fed. R. Civ. P. 26(b)(2)(C) .................................................................5, 7, 8

Fed. R. Civ. P. 30(a)(2)(A) .............................................................................................4

Fed. R. Civ. P. 30(b)(2)..................................................................................................5

Ahold Delhaize joined this case nearly three years ago. Since then, the Court has entered two deposition orders (ECF Nos. 1155 and 2024), the second of which granted Plaintiffs leave to take 21 depositions of Pilgrim's employees—twice the amount of all other Defendants except Tyson. ECF No. 2024. Recognizing the already enormous burden imposed on Pilgrim's, the Court warned that it did not want "to create a whole lot of hope" should individual Plaintiffs return with requests for additional depositions. Abbott Decl. Ex. A [Hr'g Tr. 41:14, ECF No. 2082] (Gilbert, J.). With the close of fact discovery in sight, Ahold has returned with such a request, without showing why the depositions are necessary. This Motion should be denied.

Ahold's request is not proportional to the needs of this case. It imposes an excessive additional burden on Pilgrim's while providing only a minimal benefit to Ahold, which already has access to reams of discovery, has been free to ask questions at every deposition since joining the case, and has itself issued relevant 30(b)(6) topics to Pilgrim's. What's more, granting Ahold's request would likely lead to additional discovery requests from other Direct Action Plaintiffs ("DAPs") that also claim to need individualized discovery, compounding the burden on Pilgrim's and "imperil[ing] our ability to get th[is] case discovered." Abbott Decl. Ex. A [Hr'g Tr. 40:17-18, ECF No. 2082] (Gilbert, J.).

Ahold's Motion rests on the false premise that it has asserted "unique claims." *See* [Ahold's Mem. Supp. Mot. Compel, ECF No. 4704] ("Motion") at 1-2. But Ahold's complaint speaks for itself: Ahold alleges, as do all Plaintiffs, that a group of chicken producers "unlawfully conspired in a multifaceted scheme to restrain trade and raise the price of chicken to anticompetitive heights."[1] Despite adding three common law theories of liability, Ahold's complaint centers around the exact same underlying market-wide conspiracy first alleged by

---

[1] Ahold's Am. Compl., ECF. No. 2099, 1.

1

Direct Purchaser Plaintiffs in 2016. It is this conspiracy on which Ahold's additional theories of liability depend, and it is this conspiracy that Ahold must prove.

The eleventh-hour nature of this request from a longtime Plaintiff only magnifies its disproportionality, because Ahold seeks to force Pilgrim's to prepare for two additional depositions in the closing weeks of discovery, when Ahold has been a party to this case for years. Indeed, Ahold was already eight months into this case when the Court granted Plaintiffs leave to take 21 depositions of Pilgrim's employees, and thus could have asked the Court to add Mr. Neal and Mr. Robinson to that list. Instead, in July 2019, they provided a "list of additional contemplated deponents,"[2] which included Mr. Neal and Mr. Robinson—but they never actually requested the depositions until May 6, 2021. This timing is inexcusable, especially given that Ahold has had access to the bulk of Mr. Neal's and Mr. Robinson's nearly 18,000 documents since early 2019. *See, e.g.,* Abbott Decl. Ex. B [R. Dahnke Ltr to R. Phair et al. dated Apr.17, 2019].

The Court should reject Ahold's untimely and burdensome request and instead bring four years of exhaustive fact discovery to a close.

## BACKGROUND

Ahold filed its initial complaint nearly three years ago, on August 6, 2018, just as document production in this case was beginning. Ahold's complaint paralleled every other filed in this case since 2016: Ahold alleges that Pilgrim's and a group of chicken producers "unlawfully conspired to restrain trade and raise the price of chicken to supracompetitive heights."[3] On April 15, 2019, Ahold amended its complaint to add several additional theories of liability, including common law fraud, breach of the implied covenant of good faith and fair

---

[2] *See* Abbott Decl. Ex. C [E. Bolles Ltr to Counsel for Certain Defendants, including Pilgrim's, dated July 26, 2019].
[3] Complaint at 1, *Ahold Delhaize USA, Inc. v. Koch Foods, Inc. et al.*, No. 18-cv-05351 (N.D. Ill. Aug. 6, 2018).

dealing, and negligent misrepresentation. ECF No. 2099, Counts IV-VI. Ahold's amended complaint is not materially different from its first: Ahold still alleges the very same conspiracy. *See id* at 1.

Since discovery began over three years ago, the Court has twice contemplated the number of depositions that would be permitted of Defendant families. After Ahold filed its initial complaint, the Court ordered that ten depositions would be permitted of each Defendant family, for a total of 180 depositions. ECF No. 1155 at 2. The Court at that time expressed willingness to consider distributing the 180 family depositions differently and it preemptively granted the parties leave to take additional depositions should new **parties** be added. On April 10, 2019, the Court granted Plaintiffs leave to take 21 depositions of Pilgrim's, expressly noting that it was re-allocating depositions, not "giving [] leeway of *total* depositions." Abbott Decl. Ex. A [Hr'g Tr. 19:17, ECF No. 2082] (Gilbert, J.) (emphasis added) (the "April 2019 Hearing"). In response to the DAPs' brief, the Court expressed concern about certain DAPs separately reserving the right to depose additional Defendant witnesses, and it noted both that it found it "hard to believe" that it would "completely cater to each and every person's desire with respect to some deposition someplace about a contract that was negotiated," and that it was "not trying to create a whole lot of hope" for such requests. *Id*. at 36:21-25, 41:6-9, 41:14-15 (Gilbert, J.). Liaison counsel for DAPs agreed that "[t]he nature of a case like this is that everyone has to make compromises in terms of what discovery they can take. That's true for classes, for DAPs, for defendants. We understand that." *Id*. at 41:21-24.

Ahold had reason to know of Mr. Neal and Mr. Robinson when it first filed its complaint in August 2018 because "[t]hey were the individuals largely charged with communicating with Legacy Ahold and Legacy Delhaize for Pilgrim's." Motion at 9. In fact, a simple search for the

3

names Tony Neal and Jay Robinson in Ahold's own production yields over 3,300 documents. Abbott Decl. ¶ 4. Pilgrim's had also already produced documents relevant to Mr. Neal and Mr. Robinson before the April 2019 Hearing. *Id*. at ¶ 5. In other words, Ahold had the opportunity to brief and argue its case that these depositions should take place before the Court during the April 2019 Hearing, but it chose not to. A week after the April 2019 Hearing, Pilgrim's began voluntarily producing documents from Mr. Neal's and Mr. Robinson's files. But rather than request their depositions, Ahold instead sent a list of "contemplated deponents" via email in July 2019 and did nothing on this issue for nearly two years. *See* Abbott Decl. Ex. C; E [C. Dufek email to C. Abbott dated May 6, 2021] (requesting the depositions of Jay Robinson and Tony Neal).

Despite being subject to twice the number of depositions as nearly every other Defendant, Pilgrim's has worked diligently and in good faith to ensure that its depositions move forward in a timely manner. In addition to 147 depositions of Defendants (including 14 of Pilgrim's taken thus far), document discovery has likewise been extensive. Abbott Decl. ¶ 6. The results of exhaustive searches have yielded nearly 8 million documents produced by Defendants. *Id.* at ¶ 7. And, for its part, Pilgrim's has produced over 1.1 million documents and continues to work in good faith with Ahold to produce more. *Id*. at ¶ 8. In short, "[d]iscovery in this case has been a massive undertaking." ECF No. 3520 at 1. Nevertheless, Pilgrim's and Ahold are now at an impasse over Ahold's burdensome and untimely Motion to compel two more depositions.

## **ARGUMENT**

Under the federal rules, a party seeking additional depositions must request leave of the Court "if the parties have not stipulated to the deposition." Fed. R. Civ. P. 30(a)(2)(A). The party seeking to take additional depositions "must make a particularized showing why extra

depositions are necessary." *Moore v. Abbott Labs.*, No. 2:05-CV-1065, 2009 WL 73876, at *1

(S.D. Ohio Jan. 8, 2009). The Court must grant leave only if the additional depositions are

consistent with Rule 26(b)(1) and (2). *See* Fed. R. Civ. P. 30(b)(2). Under Rule 26,

> [T]he Court must, after assessing the totality of the circumstances, limit the extent of discovery if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; [or] (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

*Perry v. Ill. Cent. R.R. Co.*, No. 14 CV 756, 2014 WL 10742632, at *4 (N.D. Ill. Nov. 6, 2014)

(quoting Fed. R. Civ. P. 26(b)(2)(C)); *see also Patterson v. Avery Dennison Corp.*, 281 F.3d 676,

681 (7th Cir. 2002) (holding that the district court did not abuse its discretion by refusing to

compel deposition based on totality of circumstances). "[A] district court has a duty, 'of special

significance in lengthy and complex cases where the possibility of abuse is always present,' to

supervise and limit discovery when it feels the discovery is cumulative, unnecessary, designed to

annoy or harass, excessively expensive, or only marginally important." *Ross v. Gossett*, No.

3:15-CV-309-SMY-MAB, 2021 WL 632963, at *2 (S.D. Ill. Feb. 18, 2021) (quoting *Mr. Frank*

*Inc. v. Waste Mgmt., Inc.*, No. 80 C 3498, 1983 WL 1859, at *1 (N.D. Ill. July 7, 1983)).

## I. THE ADDITIONAL DEPOSITIONS OF MR. NEAL AND MR. ROBINSON ARE UNDULY BURDENSOME AND NOT PROPORTIONAL TO THE NEEDS OF THIS CASE.

Pilgrim's has already been subject to an enormous discovery burden. "The discovery

rules are not a ticket…to an unlimited, never-ending exploration…" *Robinson v. Stanley*, No. 06

C 5158, 2009 WL 3233909, at *3 (N.D. Ill. Oct. 8, 2009) (quoting *Vakharia v. Swedish*

*Covenant Hosp.*, No. 90 C 6548, 1994 WL 75055, at *2 (N.D. Ill. Mar. 9, 1994)). "Parties are

entitled to a reasonable opportunity to investigate the facts – and no more." *Id.* at *3 (quoting

*Vakharia*, 1994 WL 75055, at *2). Pilgrim's has produced over 160 gigabytes of transactional data, over 1.1 million documents, and at the request of Ahold, is continuing to produce more. *See* Abbott Decl. Ex. D [C. Abbott email to C. Dufek dated May 10, 2021] (agreeing to produce, among other things, additional documents in Mr. Neal's and Mr. Robinson's custodial files). In April 2019 the Court granted Plaintiffs leave to take 21 depositions of Pilgrim's, which is more than double that of almost every other Defendant and ten times that of most Plaintiffs in this case, including Ahold. *See, e.g.*, ECF Nos. 1155 and 2024. Pilgrim's has also been subject to extensive written discovery.

When the Court granted Plaintiffs leave to take eleven additional depositions of Pilgrim's employees in April 2019, it warned that it did "not intend to open up the door to everybody— 60 people litigating their own case." Abbott Decl. Ex. A [Hr'g Tr. 42:5-6, ECF No. 2082] (Gilbert, J.). Recognizing the burden that such an approach would impose on Pilgrim's,[4] the Court added that it "[did not] want to go down that road." *Id*. at 42:14-15. But that is precisely the road down which Ahold's Motion leads. Ahold's Motion not only opens Pilgrim's up to two additional depositions—depositions that are both unnecessary and untimely—but it opens the door for the many other DAPs to seek additional depositions in the name of their alleged "unique claims." Such an "unlimited, never-ending"[5] approach to discovery merely seeks more blood from the same stone.[6]

---

[4] "I don't think the defendants should have to deal with that. Mr. Abbott shouldn't have to spend days, weeks, months or years trying to figure out how to accommodate each and every, because if that's happening, then, you know, I don't want to go down the road that Ms. Mahan told me I shouldn't go down, and she was right, totally right, and I'm not trying to revisit that." Abbott Decl. Ex. A [Hr'g Tr. 42:6-13, ECF No. 2082].

[5] *Robinson*, 2009 WL 3233909, at *3.

[6] It is also precisely the type of request the Court warned against two years ago: "I find it hard to believe that I'm going to cater to each and every person's desire with respect to some deposition someplace about a contract that was negotiated, and I don't think that's – I'm not going to have to." Abbott Decl. Ex. A [Hr'g Tr. 41:6-10, ECF No. 2082] (Gilbert, J.).

Ahold fails to justify why it waited until the eve of the close of fact discovery to make this request. "[W]hen parties wait until the last minute to comply with a deadline, they are playing with fire." *Ross*, 2021 WL 632963, at *4 (noting that "Plaintiffs waited until the waning hours of discovery to divulge their intention to depose these individuals when they could have done so much sooner.") (quoting *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996)). Ahold had the opportunity to request the depositions of Mr. Neal and Mr. Robinson in advance of the April 2019 Hearing, or any time thereafter. It chose instead to wait until less than two months before the close of fact discovery. Ahold's July 2019 letter does not cure this fault, because Ahold did not actually request the depositions (in a way consistent with the requirements of the Deposition Protocol Order) until May 6, 2021. Abbott Decl. Ex. C; *see also Ross*, 2021 WL 632963, at *3 (denying Plaintiffs' motion to compel discovery and stating that "[n]otably, Plaintiffs did not serve Notices of Deposition, they simply told defense counsel via email they intended to conduct these depositions").

Ahold would have the Court believe that without these additional depositions, it will be highly prejudiced. But Ahold's Motion conspicuously omits the exhaustive ongoing discovery of Mr. Neal and Mr. Robinson. The fact that "there has already been extensive discovery" and "numerous discovery orders already entered in this action," is relevant to deciding whether to permit additional discovery. *Mr. Frank Inc.*, 1983 WL 1859, at *3-4 (holding that plaintiffs discovery requests "would lead to undue burden and expense"). Arguments that additional depositions are justified merely because the request is made in a "highly complex case" ring hollow, especially where the "Plaintiff 'has had ample opportunity to obtain the information by discovery in the action.'" *ADT Sec. Servs, Inc. v. Pinnacle Sec., LLC*, No. 10 C 7467, 2012 WL 1597383, at *3 (N.D. Ill. May 7, 2012) (citing Fed. R. Civ. P. 26(b)(2)(C)(ii)). Pilgrim's has

already produced nearly 18,000 documents from Mr. Neal's and Mr. Robinson's custodial files. Following a recent meet and confer process, Pilgrim's agreed to search for and produce yet more documents. *See* Abbott Decl. Ex. D [C. Abbott email to C. Dufek dated May 10, 2021] (agreeing to produce, among other things, additional documents in Mr. Neal's and Mr. Robinson's custodial files). That search and production is ongoing.

Not only does Ahold have access to *documents* containing relevant material—it still has the ability to elicit desired *testimony*. Ahold "has not demonstrated that it [is] restricted in using Rule 30(b)(6) to discover the information it now seeks." *ADT Sec. Servs.*, 2012 WL 1597383, at *3 (denying plaintiffs' request for 30(b)(1) depositions); *see also Moore*, 2009 WL 73876, at *2 (granting defendants' motion for a protective order to prevent additional depositions, in part, because plaintiff "has already had the opportunity to question [defendants' representative] under Rule 30(b)(6)."). Ahold represents that it "requires [Mr. Neal's and Mr. Robinson's] depositions to develop facts relating to its purchase of broilers, how those broilers were priced, and other issues relating to purchase and sale." Abbott Decl. Ex. F [J. Martin email to C. Abbott dated May 8, 2021] (requesting additional depositions). To elicit such testimony, Ahold issued its own 30(b)(6) topics to Pilgrim's, which sufficiently cover this subject matter. Pilgrim's has accordingly agreed to provide a witness who will be prepared to cover these topics. *See* Abbott Decl. Ex. G [Ahold Delhaize's Third Amended Notice of Deposition dated May 19, 2021]. Topic 3, for instance, covers "the terms and conditions of Your written agreements … with Ahold Delhaize entities" and Topic 4 covers Pilgrim's "sale of Broilers or Broiler products to Ahold Delhaize entities, including all financial terms of the sale." *Id*. Accordingly, the testimony from the additional depositions sought here is "unreasonably cumulative or duplicative, [and] can be

obtained from some other source that is more convenient, less burdensome, or less expensive."
Fed. R. Civ. P. 26(b)(2)(C)(i).

Finally, Ahold's suggestion that it will "equally suffer[]" the burden given that it too "will have to prepare for two additional 30(b)(1) depositions" is unconvincing. Motion at 12. Aside from conceding that preparing for two additional 30(b)(1) depositions *does* represent a considerable burden, Ahold ignores the significant burden already placed on Pilgrim's. As noted above, Pilgrim's is already subject to ten times more depositions than Ahold, despite Ahold being at least four times the size of Pilgrim's.[7]

While true that "[t]he nature of a case like this is that everyone has to make compromises in terms of what discovery they can take,"[8] Pilgrim's does not ask that Ahold "compromise[]." Ahold has received extensive discovery from all Defendants—particularly Pilgrim's. Indeed, there has been "enough discovery here to choke a horse." *Walker v. Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008) (upholding district court's denial of additional discovery). Ahold's last-minute request for additional depositions is not proportional to the needs of this case. On these grounds alone the Court should deny this Motion.

## II.    AHOLD'S CLAIMS ARE NOT UNIQUE AND DEFENDANTS' AFFIRMATIVE DEFENSES DO NOT NECESSITATE INDIVIDUALIZED DISCOVERY.

Ahold's request is not only untimely and burdensome, but it rests on the dual mistaken premises that these depositions are necessary to prove Ahold's so-called unique claims and to counter Defendants' affirmative defenses. Motion at 8. But semantics cannot trump reality. Ahold's "unique claims" rely upon the exact same conspiracy alleged by hundreds of DAPs and

---

[7] *Compare* SEC filings, Pilgrim's Pride, Annual Report (Form 10-K) (2021) (2019 Net Income: $456.4 million); Ahold Delhaize Annual Report 2020, 144 (2020), https://www.aholddelhaize.com/media/10540/ahold-delhaize-annual-report-2020.pdf (2019 Net Income: $2.5 billion).
[8] Abbott Decl. Ex. A [Hr'g Tr. 41:19-22, ECF 2082].

class members since 2016. *See* ECF No. 3835 at 1. And Ahold's assertion that Defendants' affirmative defenses *to all* DAPs' claims justify the depositions of Pilgrim's account representatives *to Ahold* defies common sense.

Ahold argues that its claims "require evidence and testimony specific to Ahold Delhaize's interactions with Pilgrim's," which is "evidence and testimony that the classes and other [DAPs] pursuing common antitrust claims would not have any cause to pursue." Motion at 1-2. Not so. In recognition of the reality that many additional theories of liability are merely derivative of the underlying antitrust conspiracy, such as those alleged by Ahold, Courts have dismissed such additional claims on the merits of the Sherman Act claim alone, holding that "these claims all rely on the same alleged price-fixing conspiracy creating the Sherman Act claim." *See In re Cattle Antitrust Litig.*, Civil No. 19-1129, 2020 WL 5884676, at *6 (D. Minn. Sept. 29, 2020). Here, like all other Plaintiffs, Ahold must prove that Defendants entered into a "combination" or "conspiracy[] in restraint of trade or commerce," in violation of Sherman Act §1. 15 U.S.C. §1. Ahold attempts to do so in precisely the same manner as all other Plaintiffs. All Plaintiffs, including Ahold, allege that Defendants effectuated this conspiracy by "reduc[ing] the supply of [b]roiler chickens in the market" and by manipulating price indices, including the Georgia Dock. ECF No. 2099 at 2. Like all other Plaintiffs, Ahold points to certain earnings calls as evidence of "signaling," trade association meetings as opportunities to collude, and Agri Stats reports as "meat to the Defendants' conspiracy." *Id*. at 43. While Ahold's so-called unique claims may add *separate theories of liability*, the underlying conspiracy—*and the corresponding requisite means of proof*—remains the same.

The first of Ahold's so-called unique claims, for instance, is common law fraud. ECF. No. 2099, Count IV. Ahold alleges, and must prove, that "[e]ach of the Georgia Dock

Defendants knowingly made … fraudulent submissions, fraudulent misrepresentations, and fraudulent omissions … to induce the reliance of Plaintiff." *Id.* Masked only by differences in verbiage, every Plaintiff, including Ahold, alleges that the Georgia Dock Defendants made "fraudulent submissions, fraudulent misrepresentations, and fraudulent omissions" to, and regarding, the Georgia Dock.[9] In other words, all other Plaintiffs must necessarily pursue precisely the same testimony as Ahold; individualized, account-level testimony is not necessary.

Ahold's other "unique" theories of liability suffer the same fate. Breach of the implied covenant of good faith and fair dealing requires a showing that Defendants "breached their implied duty of good faith and fair dealing" "by intentionally and falsely inflating their price submissions" to the GDA, which were used "to calculate the Georgia Dock." ECF No. 2099, Count V. Indeed, that certain Defendants "intentionally and falsely inflat[ed] their price submissions" to the GDA is precisely the allegation lodged by every Plaintiff in this case. *See, e.g.*, DAP Amended Complaint, ¶ 660 ("The Georgia Dock Defendants fraudulently submitted false and inflated price quotes to the PMN. Moreover, the Georgia Dock Defendants fraudulently failed to inform their counterparties."). Finally, the factual underpinnings of negligent misrepresentation are similarly alleged by every other Plaintiff in this case. Specifically, negligent misrepresentation, for which Ahold alleges that Defendants "submitted false and inflated price quotes to the Poultry Market News" and "negligently failed to disclose [such] information to Plaintiff,"[10] is substantively the same misrepresentation alleged by all other Plaintiffs in this case. *See, e.g.*, DAP Amended Complaint, ¶ 30 ("In addition to their fraudulent submissions to the PMN, all of the Georgia Dock Defendants that sold chicken to Plaintiffs

---

[9] *See, e.g.*, Direct-Action Pls.' Am. Consol. Compl. ("DAP CAC" or "DAP Amended Complaint"), ECF No. 4244, ¶ 1180.
[10] ECF No. 2099, Count VI.

fraudulently misrepresented, omitted, and failed to disclose critical, non-public information about the Georgia Dock."). There is no reason, therefore, for Ahold to receive special treatment merely because it alleges separate theories of liability, when the requisite means of proof are no different than for any other Plaintiff.

Ahold also claims that Defendants have put Mr. Neal's and Mr. Robinson's communications at issue in their affirmative defenses. This argument is puzzling in that it ignores that the affirmative defenses Ahold references *are common to all DAPs*. By suggesting that it needs testimony regarding "the communications between DAPs and their suppliers …, the terms and negotiation of the individualize [*sic*] supply contracts…, and the nature of each DAP's dealings with each supplier,"[11] Ahold is essentially arguing that each of the 160-plus DAPs should be able to request depositions of their own account representatives to elicit the "requisite" testimony. This, of course, runs contrary to the existing discovery structure and is precisely the kind of request that the Court said it would not entertain.[12]

Finally, Ahold's argument that Defendants' opposition to the direct purchasers' motion for class certification effectively admits that Ahold has unique claims is equally unavailing. Ahold's attempt to characterize Pilgrim's position as "a sword and [] shield"[13] mischaracterizes the nature of Defendants' arguments. In their opposition to class certification, Defendants argue that the direct purchasers have not met their heavy burden of putting forth a "common methodology that can demonstrate class-wide impact or damages."[14] Defendants argue, among other things, that the direct purchasers' economic models "ignore stark differences among the

---

[11] Motion at 13.
[12] "I find it hard to believe that I'm going to completely cater to each and every person's desire with respect to some deposition someplace about a contract that was negotiated, and I don't think that's – I'm not going to have to." Abbott Decl. Ex. A [Hr'g Tr. 41:6-10, ECF 2082] (Gilbert, J.).
[13] Motion at 13.
[14] Defs.' Opp'n to Direct Purchaser Plaintiffs' Mot. for Class Certification at 1, ECF No. 4210.

direct purchasers that make up their class."[15] But this critique of direct purchasers' expert's model does not somehow imply—in the context of a proceeding in which the Court has attempted to set up a "process" and "structure" to consolidate discovery—that Ahold's individual negotiations with Pilgrim's justify additional depositions. Ahold similarly ignores that the "structure" of discovery in this case, which the Court and the parties have refined for four years, already accounts for these differences. As DAP liaison counsel rightly recognizes, this case "has a lot of the features of an MDL" which necessitates "compromises in terms of discovery…" Abbott Decl. Ex. A [Hr'g Tr. 41:19-24, ECF No. 2082]. This need for compromise is precisely why, for instance, the Court granted Plaintiffs leave to re-allocate depositions. It is also why Ahold should continue to "work within the process that we've set up and…make sure that [its] questions are asked at depositions…" *Id*. at 41:1-3.

## CONCLUSION

"Discovery has limits,"[16] and Ahold's Motion exceeds them. Ahold's Motion, which if granted would open Pilgrim's up to countless more deposition requests, asks the Court at the eleventh hour to effectively reconsider its 2019 Deposition Order (ECF No. 2024) and abandon the existing "process." Abbott Decl. Ex. A [Hr'g Tr. at 41:1, ECF No. 2082] (Gilbert, J.). Additional depositions will "imperil our ability to get the case discovered." *Id*. at 40:17-18. Pilgrim's respectfully asks the Court to deny Ahold's Motion.

---

[15] *Id.* at 2.
[16] *Mr. Frank Inc.*, 1983 WL 1859, at fn 5 (citing *United Airlines, Inc. v. United States*, 26 F.R.D. 213, 219 n.9 (D.Del. 1960)).

Dated: June 8, 2021

WEIL GOTSHAL & MANGES LLP

By: */s/ Carrie C. Mahan*
Carrie C. Mahan (#459802)
Christopher J. Abbott (#1014487)
Drew K. Cypher (*admitted pro hac vice*)
2001 M Street N.W., Ste. 600
Washington, D.C. 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
carrie.mahan@weil.com
christopher.abbott@weil.com
drew.cypher@weil.com

Brian G. Liegel (#119269)
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Telephone: (305) 577-3100
Facsimile: (305) 347-7159
Brian.liegel@weil.com

EIMER STAHL LLP
Michael L. McCluggage (#01820966)
224 South Michigan Avenue, Ste. 1100
Chicago, IL 60604
Telephone: (312) 660-7665
Facsimile: (312) 692-1718
mmccluggage@eimerstahl.com

*Attorneys for Defendant Pilgrim's Pride Corporation*

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 8, 2021, a true and correct copy of the foregoing document was filed electronically. Notice of this filing was sent by operation of the Court's ECF electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic system.

/s/ <i>Carrie C. Mahan</i>   
Carrie C. Mahan     