**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION<br><br>This Document Relates To:<br>All Actions | No. 1:16-cv-08637<br><br>Hon. Thomas M. Durkin<br>Magistrate Judge Jeffrey T. Gilbert |

**KROGER & PUBLIX PLAINTIFFS' SUPPLEMENTAL MEMORANDUM
<u>RESPONDING TO COURT'S ORDER OF MAY 27, 2021</u>**

Plaintiffs Kroger, Hy-Vee, Save-Mart, and Albertsons (the "Kroger Plaintiffs") and Plaintiffs Publix, SuperValu, Meijer, Wakefern, OSI Restaurant Partners, Unified Grocers, Associated Grocers of Florida, and Associated Grocers of the South (the "Publix Plaintiffs") (collectively, the "Kroger & Publix Plaintiffs") respectfully respond to the directive set forth in ECF 4722: "To the extent…other plaintiffs want to discover evidence of bid-rigging in order to use it in a supply reduction or Georgia Dock trial under Federal Rule of Evidence 404(b), they should state so, and allow the Court and parties to address that argument directly."

**Introduction**

Pursuant to the Court's September 22, 2020 Order [ECF 3835] (the "Severance Order"), Defendants have withheld broad swaths of discovery, including millions of pages of documents that were produced to the DOJ as part of its criminal investigation.[1] Although we cannot know exactly what is in such discovery, including those withheld documents, DOJ public filings in the pending criminal cases provide some insight. The government provided the criminal defendants

---

[1] The government has disclosed that Defendants have produced approximately 13 million pages of documents related to the criminal case; in our civil case, Defendants have produced approximately 7.5 million pages while withholding the rest based on this Court's Severance Order.

1

with an 87-page letter that summarized certain key evidence in the case and noted that the following examples were representative of that evidence:

- The chicken mafia may all lease a property outside of Atlanta, GA that they use for hunting. ▮ may have hunted with some of them. They might have thrown prices and rigged bids amongst each other. ▮-0000011012 showed ▮ forwarding an email with attached pricing model. [p. 33]

- Amongst ▮ employees, ▮ was known as a person who could procure price information from competitors. An email chain, ▮-000260691, describes him as "the stud of all studs" in reference to competitor contacts. [p. 41]

Accordingly, we know based on just two examples from an 87-page summary that Defendants have withheld evidence that certain of their employees – who documents refer to as "the chicken mafia" – go hunting together. During these hunting trips "they might have thrown prices and rigged bids amongst each other." Another email chain withheld by Defendants referenced an employee as "the stud of all studs" based his extensive network of competitor contacts.

The Kroger and Publix Plaintiffs understand that the Court has severed the "bid rigging" component of Defendants' conspiracy from the remainder of the case based on case management considerations and not based on a determination of the relevance of the stayed conduct. As the Kroger and Publix DAPs have noted previously,[2] we are prepared to try this case—and would like to go to trial as soon as the Court's calendar permits—based on the current discovery schedule in compliance with the Court's Severance Order.

Complying with the Severance Order should not, however, require foregoing discovery into Georgia Dock and supply restraint conduct nor should it entirely bar discovery of Rule 404(b)

---

[2] *See, e.g.*, ECF 4636 at 5 ("the Kroger & Publix Plaintiffs have identified discovery necessary for the current pre-trial schedule and to try the case in October 2022").

"bid rigging" evidence. Thus to directly respond to the Court's question of whether we "want to discover evidence of bid-rigging in order to use it in a supply reduction or Georgia Dock trial under Federal Rule of Evidence 404(b)," the Kroger & Publix Plaintiffs hereby "state so [to] allow the Court and parties to address that argument directly." Specifically, the Kroger & Publix Plaintiffs state that they want to (i) use in depositions or other discovery any materials that are already available to the Plaintiffs or that become available to Plaintiffs through the ongoing criminal proceedings and (ii) obtain specifically-identified documents already produced to or by the government of which Plaintiffs already have knowledge. Such limited and focused discovery allows the parties to develop the foundation for Rule 404(b) evidence without undoing the key case management features of the Severance Order.

**Rule 404(b)**

We understand that the Court **IS NOT** asking any party to brief how Rule 404(b) may apply at any trial and that the Court has not invited the parties to brief any motion *in limine* to consider the admissibility of any Rule 404(b) evidence. Nor is the Court inviting discovery motions. Rather, we understand the Court's statement to ask plaintiffs, such as the Kroger & Publix Plaintiffs, whether we "*want to discover* evidence of bid rigging in order to use it in a supply reduction or Georgia Dock trial under Federal Rule of Evidence 404(b)." ECF 4722 at 3 (emphasis added). To answer the Court's question about the discoverability of the evidence, some discussion of how Rule 404(b) may operate here provides context for addressing the question on discoverability.

Rule 404(b)(2) provides that evidence of any other crime, wrong, or act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The Advisory Committee notes explain that in

3

applying this Rule, "[n]o mechanical solution is offered" and instead "[t]he determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." The notes of the Senate Judiciary Committee elaborate that "it is anticipated that with respect to permissible uses for such evidence, the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i.e. prejudice, confusion or waste of time." Notes of Committee on the Judiciary, Senate Report No. 93–1277.

There is no lack of precedent of courts admitting evidence pursuant to Rule 404(b) in antitrust trials. For example, in *United States v. Andreas*, 216 F.3d 645 (7th Cir. 2000), the defendants were charged with conspiring to fix the prices of lysine. At their trial, the district court admitted evidence under Rule 404(b) that the same defendants also conspired with their competitors to fix the prices of citric acid. The Seventh Circuit determined that the admission of this evidence was eminently correct because "evidence of the citric-acid conspiracy answered at least three relevant questions." *Andreas*, 216 F.3d at 665. Specifically, evidence of the citric-acid conspiracy was relevant because certain aspects of the lysine conspiracy "would operate in the same way." *Id.* Additionally, the lysine and citric-acid conspiracies "were closely related parts of a master plan to control prices and product supply through collusion with competitors. . . . Many of the lysine cartel's meetings revolved around the need to allocate sales volume, a lesson dictated by the experience in the citric-acid conspiracy." *Id.* Finally, the omission of the citric acid conspiracy would have "[left] an unexplained gap in the narrative" because certain conspirators

4

participated in the lysine conspiracy in order to impart the knowledge they learned from the citric-acid conspiracy. *Id.* at 665—66.[3]

The *Andreas* Court is not alone in admitting such evidence. *See, e.g., United States v. Southwest Bus Sales*, 20 F.3d 1449, 1455-56 (8th Cir. 1994) (affirming district court's decision to allow evidence of defendant's other anticompetitive conduct to prove that defendant intended to conspire and refute its argument to the contrary); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 478 (10th Cir. 1990) (affirming district court's decision to allow evidence concerning similar customer allocation agreements entered into by defendants to show that "participation of defendants in the charged customer allocation conspiracy was knowing and intentional, rather than the result of accident or mistake"); *In re Depakote*, No. 15-CV-702-NJR-SCW, 2017 WL 2126837, at *9 (S.D. Ill. May 16, 2017) ("Plaintiffs will be allowed to introduce evidence regarding the off-label marketing and sales efforts by Abbott regarding the bipolar disorder. This evidence is relevant to Plaintiffs theory that the corporate culture at Abbott valued marketing and sales over patient safety."); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2016 WL 6246736, at *10 (N.D. Cal. Oct. 26, 2016) (adopting DAPs' argument that "the jury could reasonably conclude that the conduct of certain Japanese Defendants [at the EIAJ meetings] was merely one facet of a broader conspiracy" to fix CRT prices); *see also* Phillip E. Areeda & Herbert Hovenkamp, 13 ANTITRUST LAW ¶ 1421a ("if there is other evidence of a present conspiracy, the defendants' sins elsewhere may cast doubt on the truthfulness of their innocent explanations").[4]

---

[3] To the extent that *Andreas* is distinguishable from *Broilers*, those dissimilarities weigh even more heavily in favor of Rule 404(b) evidence here. Whereas *Andreas* dealt with two unquestionably separate conspiracies – lysine and citric acid – the "bid rigging" Rule 404(b) evidence here arises out of a singular product (chicken).

[4] Courts even permit evidence of a defendant's conduct that is exempt from the antitrust laws but is nonetheless probative of other conduct that is subject to the antitrust laws. *See United Mine Workers v. Pennington*, 381 U.S. 657, 670-71 n.3 (1965) (holding that defendants' governmental

**Statement Regarding Discovery of Rule 404(b) Evidence**

The Kroger & Publix Plaintiffs are cognizant that this Court has limited the aspects of this case that may proceed at this time. And we are cognizant of the reasons for this Court's actions. As the Kroger & Publix Plaintiffs explained in their May 13, 2021 submission regarding trial structure, ECF 4636, we are prepared to go forward pursuant to the Court's Severance Order and try those aspects of this case with the record that the Court has permitted. That record should not, however, exclude evidence that directly supports those aspects of the case to be tried. For example, evidence that the defendants or some subset of their employees refer to themselves as the "chicken mafia" and frequently meet together to share confidential information is certainly relevant to the Georgia Dock and supply restraints aspects irrespective of Rule 404(b). After all, the very purpose of such conduct was to raise the prices about which the "chicken mafia" evidently met to discuss. Likewise, evidence that a defendant employee served as a clearinghouse for defendants' confidential information and was so successful at doing so that he earned the nickname "the stud of all studs" is certainly relevant to whether Defendants had the means and motive to manipulate submissions to the Georgia Dock or artificially restrain production.

Nor should the record exclude discovery that may be admissible under Rule 404(b). In trying the aspects of this case that the Court has permitted to proceed, the Kroger & Publix Plaintiffs—like numerous plaintiffs before us—intend to avail ourselves of Rule 404(b) evidence of defendants' other crimes, wrongs, and acts. These other acts would include, but not be limited

---

petitioning activity was exempt from the antitrust laws, but the anticompetitive intent shown by the petitioning activity would be admissible evidence to show the "purpose and character" of other non-exempt activity, as long as it was "probative and not unduly prejudicial."); *In re Tylenol (Acetaminophen) Mktg., Sales Practices and Prods. Liab. Litig.*, 181 F. Supp. 3d 278, 305 (E.D. Pa. 2016) (holding that even though the Noerr-Pennington doctrine exempted certain conduct from Sherman Act coverage that the evidence of that conduct would be admissible).

6

to, Defendants' bid rigging conduct as contemplated by the Court's Severance Order. The Severance Order does not render evidence of bid rigging conduct irrelevant any more than it would render irrelevant other unlawful conduct by defendants that may not involve manipulation of the Georgia Dock or restraints on broiler supplies.[5]

---

[5] For example, if Defendants agreed with each other to restrain employee wages or employment opportunities, then evidence of such illegal anticompetitive conduct would be discoverable as relevant to Plaintiffs' claims that Defendants had the means and ability to agree to collude. Such evidence would also be relevant to Defendants' defenses, for example, (i) that it was implausible for so many of them to enter into any anticompetitive agreement, (ii) that such an agreement was impossible to enforce, (iii) that their interactions at "trade conferences and meetings was public when it occurred," or (iv) that "[a]t all times, Defendants acted in good faith and in compliance with all applicable laws and regulations." ECF 4420, Defs.' Consol. Answer to DAP Compl. at pp. 667, 678. And such discovery would also be potentially admissible under Rule 404(b) with respect to Defendants' opportunities to collude, knowledge of effectuating an anticompetitive conspiracy, ability to profit through antitrust violations, motive to act collectively, or lack of accident that all Defendants acted the same exact way independently.

Likewise, if the Georgia Dock Defendants had forged purchase orders and impersonated buyers to manipulate the USDA or Urner Barry indexes (which unlike the Georgia Dock employed buyer verification), then such fraudulent behavior would be discoverable as relevant to, *inter alia*, Plaintiffs' claims that the same Defendants' employees made false telephonic submissions to the Georgia Department of Agriculture or to Defendants' defenses (i) that they had not acted collectively or (ii) that "Plaintiffs failed to exercise reasonable care to mitigate any damages" or (iii) that "Defendants' actions . . . were regulated, compelled, and/or mandated by government authority, including but not limited to, the USDA" or (iv) that one or more of the defendants had effectuated "a withdrawal from the alleged conspiracy" or (v) that "Defendants did not authorize, request, command, perform, or recklessly tolerate the commission of any alleged wrongdoing" or (vi) that Defendants had a "genuine and reasonable good faith belief that they communicated true and accurate information to the Georgia Department of Agriculture." ECF 4420, Defs.' Consol. Answer to DAP Compl. And such evidence developed through discovery would also be potentially admissible under Rule 404(b) with respect to defendants' knowledge of how to manipulate a price index, motive to profit from such manipulation, plan and preparation for index rigging, and the absence of mistake or lack of accident from submitting false quotes.

Finally, if Defendants had a corporate culture of disparaging customers or acting with other Defendants to cause vindictive harm to customers, then such acts would be discoverable as relevant to, *inter alia*, plaintiffs' claims that Defendants did just that by manipulating the Georgia Dock and constraining supply or Defendants' defenses that "[a]t all times, Defendants acted in good faith and in compliance with all applicable laws and regulations" or that "Defendants did not authorize, request, command, perform, or recklessly tolerate the commission of any alleged wrongdoing." ECF 4420, Defs.' Consol. Answer to DAP Compl. And such evidence developed

The ultimate question of what evidence may be admissible and under what circumstances such evidence may be used is not before the Court and the Kroger & Publix Plaintiffs understand that deciding such issues is not the purpose of the submissions the Court has invited. Rather, the inquiry posed by the Court is limited to discovery at this time. The Court has asked us what "bid rigging" evidence we "want to discover" for purposes of Rule 404(b). The Kroger & Publix Plaintiffs believe that they can complete building an informative record for this Court to apply Rule 404(b) at the appropriate time without altering the discovery schedule, broadening its scope, or otherwise disturbing the Court's Severance Order. To do so, the Severance Order should not (i) thwart discovery into *already* produced or publicly-available documents, (ii) shield Defendants from responding to *already* served discovery that is relevant and potentially admissible, under Rule 404(b) or otherwise, to the Georgia Dock and supply restraint aspects of this case, or (iii) relieve deponents from answering questions about such evidence at *already* noticed or requested depositions. After all, such discovery would provide the requisite foundation for this Court to make informed Rule 404(b) determinations when that time comes.

The Court's guidance on discovery of Rule 404(b) evidence would further provide the parties and Magistrate Judge Gilbert with direction as to several burgeoning discovery disputes. For example, Pilgrim's has refused to answer a narrowly tailored set of 23 requests for admission that were served on March 19, 2021, which ask it to admit that it had unlawfully conspired with other Defendants. Although these RFAs never use the term "bid rigging," Pilgrim's refused to answer *any of them* on the basis that conspiring with another Defendant *could* encompass bid rigging.

---

through discovery would also be potentially admissible under Rule 404(b) with respect to Defendants' institutional attitudes towards their customers, motives for wanting their customers to "feel pain," their knowledge of how to do so, and the absence of mistake when they did.

8

Likewise, guidance would assist the parties in understanding the extent to which they may create a foundation for the admissibility of publicly-available Rule 404(b) "bid rigging" evidence during depositions. For example, the Court ordered that the Kroger & Publix Plaintiffs may take the depositions of four individual witnesses over the DOJ's objection. ECF 4557. Parties should be permitted to ask these witnesses about any publicly-available document or any document already produced by Defendants regardless of whether Defendants characterize them as related to "bid rigging." Such questions will assist us in, among other things, laying the requisite foundation for potential Rule 404(b) evidence without altering the schedule or otherwise broadening existing discovery obligations. And the same rules should apply when the Court's stay order for other deponents expires on January 3, 2022.

Accordingly, in response to the Court's directive to state whether we "want to discover evidence of bid-rigging in order to use it in a supply reduction or Georgia Dock trial under Federal Rule of Evidence 404(b)" and to "state so [to] allow the Court and parties to address that argument directly," the Kroger & Publix Plaintiffs state that we want to (i) use in depositions or other discovery any materials that are already available to the Plaintiffs or that become available to Plaintiffs through the ongoing criminal proceedings and (ii) obtain specifically-identified documents already produced to or by the government of which Plaintiffs already have knowledge. We believe that such limited and narrowly-tailored discovery comports with the goal of the Severance Order while permitting development of a sufficient factual record to facilitate future decisions on the admission of Rule 404(b) evidence.

Dated: June 18, 2021

Respectfully submitted,

| | |
|---|---|
| /s/ *David P. Germaine* | /s/ *William J. Blechman* |
| Paul E. Slater | William J. Blechman |
| Joseph M. Vanek | Kevin Murray |
| David P. Germaine | Douglas Patton |
| John P. Bjork | Samuel Randall |
| SPERLING & SLATER, P.C. | Michael Ponzoli |
| 55 West Monroe Street | KENNY NACHWALTER, P.A. |
| Suite 3200 | 1441 Brickell Avenue |
| Chicago, Illinois 60603 | Suite 1100 |
| Tel: (312) 641-3200 | Miami, Florida 33131 |
| Fax: (312) 641-6492 | Tel: (305) 373-1000 |
| E-mail: PES@Sperling-law.com | Fax: (305) 372-1861 |
| JVanek@Sperling-law.com | E-mail: wblechman@knpa.com |
| DGermaine@Sperling-law.com | kmurray@knpa.com |
| JBjork@Sperling-law.com | dpatton@knpa.com |
| | srandall@knpa.com |
| Phillip F. Cramer | mponzoli@knpa.com |
| Ryan T. Holt | |
| SHERRARD ROE VOIGT & HARBISON, PLC | ***Counsel for Plaintiffs The Kroger Co., Albertsons Companies, Inc., Hy-Vee, Inc., and Save Mart Supermarkets*** |
| 150 3rd Avenue South, Suite 1100 | |
| Nashville, TN 37201 | |
| Tel: (615) 742-4200 | |
| E-mail: pcramer@srvhlaw.com | |
| rholt@srvhlaw.com | |

***Counsel for Plaintiffs Associated Grocers of the South, Inc., Meijer, Inc., Meijer Distribution, Inc., OSI Restaurant Partners, LLC, Publix Super Markets, Inc., Supervalu Inc.; Unified Grocers, Inc.; Associated Grocers of Florida, Inc.; and Wakefern Food Corp.***

**CERTIFICATE OF SERVICE**

David P. Germaine, one of the attorneys for the Kroger and Publix Plaintiffs, certifies that on June 21, 2021 I caused a true and correct copy of the foregoing ***Kroger and Publix Plaintiffs' Supplemental Memorandum Responding to Court's Order of May 27, 2021*** to be filed via CM/ECF.

*/s/ David P. Germaine*
David P. Germaine