**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION* | Civil Action No. 1:16-cv-08637 |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | Judge Thomas M. Durkin |
| THIS DOCUMENT RELATES TO: | Magistrate Judge Jeffrey T. Gilbert |
| Certain Direct Action Plaintiffs | **PUBLIC REDACTED VERSION** |

**CERTAIN DIRECT ACTION PLAINTIFFS' MOTION**
**TO AMEND COMPLAINT ALLEGATIONS REGARDING RABOBANK**

The Court granted Rabobank's motion to dismiss without prejudice, explaining that "[i]f Plaintiffs discover facts plausibly implicating Rabobank in the conspiracy, Plaintiffs may amend their complaint." Dkt. 4729 at 4-5 ("Opinion and Order"). The Movants[1] respectfully request permission from the Court to file the proposed second amended complaint attached as Appendix A to this motion.[2]

* * * *

While the Court recognized that Plaintiffs had already discovered emails which "raise the specter of Rabobank serving as a communications conduit akin to Agri Stats," Opinion and Order at 2, the Court found certain emails "entirely ambiguous as to the subject matter of the communications they reference" and requiring "too many inferences," and therefore granted Rabobank's motion to dismiss.

The proposed amended complaint attached as Appendix A adds references to evidence which should dispense with any perceived ambiguity, and which offers a lens through which Rabobank's other numerous statements and actions may be viewed. Among the new allegations are verbatim quotations from Adriaan Weststrate, the head of Rabobank's poultry business, conferring with senior executives at Perdue and Pilgrim's about spreading ███████████

---

[1] The Movants are the following Direct Action Plaintiffs: Amory Investments LLC, Campbell Soup Company, Campbell Soup Supply Company, L.L.C., John Soules Foods, Inc., John Soules Acquisitions LLC, Sysco Corp., Target Corp., and US Foods, Inc.

[2] Appendix B is a redlined version of the second amended complaint, showing the substantive changes from the prior version. If the motion is granted, each of the Movants would amend to add the allegations set out in the proposed pleading at Appendix A.

In its motion to dismiss, Rabobank argued that Plaintiffs "should have sued an entity called Coöperatieve Rabobank, U.A., New York Branch." Opinion and Order at 5. The proposed amended complaint adds that entity as a defendant.

1

████████ to poultry producers.[3]  These emails, alone and in conjunction with other evidence, more than plausibly suggest that "Rabobank was involved in coordinating production cuts among the producers."  Opinion and Order at 4.

In one email, Weststrate assured Perdue leaders, including CEO Jim Perdue, on February 23, 2011: ████████████████████████████████████ ████████████████████████████  Ex. 1 (Rabo_0000011315 (emphasis added)).

The next day, Weststrate used the same phrase with Pilgrim's (now-indicted) executive Bill Lovette to describe enlisting industry support for supply reduction.  Weststrate told Lovette: ████████████████████████████████████████ ████████████████████  Ex. 2 (Rabo_0000091905 (emphasis added)). Weststrate's ███████ message coincided with industry production cuts.  *See* Direct Action Plaintiffs' Amended Consolidated Complaint and Demand for Jury Trial (Dkt. 4243, 4244) at ¶ 456 *et seq*.

Rabobank's role spreading ███████████████████ among "poultry companies" is alleged to have been a mechanism for securing producer participation in, and monitoring compliance with, the alleged collusive activities of the producer Defendants.  Even when firms in an industry believe they will all be more profitable if they all raise prices or reduce output, individual firms often refrain from doing so out of concern that other firms will not follow, and that the "leader" will be at a competitive disadvantage.  *Cf.* Rabo_0000050062 (In an April 30, 2008 internal email, Rabobank's R. Beard conveyed that ████████████████████ ████████████████████████████████████

---

[3] *See* Exhibits 1 and 2, attached hereto.

████████████████████████████; *see also In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 798 (N.D. Ill. 2017) (discussing "unilateral production cuts" and the risk of lost market share without an agreement); *Kleen Prods. LLC v. Georgia-Pac. LLC*, 910 F.3d at 927 937–38 (7th Cir. 2018) (discussing "perilous leading," citing Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 1425d (4th ed. 2018)); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 764 F. Supp. 2d 991 at 1002 (N.D. Ill. 2011) ("This sort of parallel behavior has been described as 'perilous leading' because, absent an agreement, the first firm to move takes a significant risk that competitors won't follow."). "[C]artels adopt various mechanisms, including use of third parties to provide certain collusive functions." Barak Orbach, *Hub-and-Spoke Conspiracies*, The Antitrust Source 1 (April 2016); *see also* Louis Kaplow, Competition Policy and Price Fixing 72 (2013) (Section 1 of the Sherman Act made "no attempt to exclude any form of coordinated behavior involving multiple parties.").

\*      \*      \*      \*

The Sherman Act "lays down a far-reaching principle of policy . . . that private efforts to eliminate competition shall be prohibited." William Letwin, Law and Economic Policy in America: The Evolution of the Sherman Act 3 (1965). "In the Sherman Act, Congress tasked courts with enforcing a policy of competition on the belief that market forces 'yield the best allocation' of the Nation's resources." *NCAA v. Alston*, __ S. Ct. __, 2021 WL 2519036, at \*3 (2021); *see also* Gregory J. Werden, The Foundations of Antitrust 194 (2020) ("A court adjudicating a Sherman Act case must appreciate that 'the policy unequivocally laid down by the Act is competition.'") (quoting *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 4 (1958)).

Movants contend that Rabobank and the other Defendants opted for coordination and collusion rather than competition, in contravention of the Sherman Act. The proposed amended

complaint alleges "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). No more is required at the pleading stage, where courts "draw all permissible inferences in favor of the plaintiff." *Agnew v. NCAA*, 683 F.3d 328, 334 (7th Cir. 2012); *see also In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 629 (7th Cir. 2010) ("We need not decide whether the circumstantial evidence that we have summarized is sufficient to *compel* an inference of conspiracy; the case is just at the complaint stage and the test for whether to dismiss a case at that stage turns on the complaint's 'plausibility.'"); *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2019 WL 1003111 (N.D. Ill. Feb. 28, 2019) (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("Plausibility . . . does not imply the district court should decide whose version to believe . . . .")).[4]

The motion to amend should be granted.

---

[4] The sufficiency of the proposed amended complaint is even clearer when considering that at trial Plaintiffs would only be required to "produce evidence that reveals coordination or agreement"—and "even a wink and a nod" will do, since "formal agreements have never been required for purposes of Sherman Act section 1." *Kleen Prods.*, 910 F.3d at 936. Moreover, evidence of such coordination or agreement may be either circumstantial or direct, should be considered "as a whole," and may include "ambiguous statements." *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 656, 662 (7th Cir. 2002).

Dated: June 29, 2021

/s/ *Scott E. Gant*

Scott E. Gant
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC  20005
Tel: (202) 237-2727
E-mail: sgant@bsfllp.com

Colleen A. Harrison
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8204
E-mail: charrison@bsfllp.com

Ryan T. McAllister
BOIES SCHILLER FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY 12207
Tel: (518) 434-0600
E-mail: rmcallister@bsfllp.com

*Counsel for Plaintiffs Amory Investments
LLC, Campbell Soup Company, Campbell
Soup Supply Company, L.L.C., John Soules
Foods, Inc., John Soules Acquisitions LLC,
Sysco Corp., Target Corp., and US Foods,
Inc.*

# Exhibit 1



CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER



CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# Exhibit 2



CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER



CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Rabo_0000091906

Appendix A

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

---

*In Re Broiler Chicken Antitrust Litigation*,
Case No: 16-cv-08637

---

SYSCO CORPORATION,

               Plaintiff,

v.

TYSON FOODS, INC., *et al.*,

               Defendants.

Case No. 18-cv-700

Judge Thomas M. Durkin
Magistrate Judge Jeffrey T. Gilbert

**JURY TRIAL DEMANDED**

**PUBLIC REDACTED VERSION**

---

## SECOND AMENDED COMPLAINT

1.    With permission of the Court, Plaintiff Sysco Corporation ("Sysco") hereby amends its Amended Complaint, Case No. 18-cv-700 (ECF 1); Case No: 16-cv-08637 (ECF 4151, 4159), and its claims and allegations in the Direct Action Plaintiffs' Amended Consolidated Complaint and Demand for Jury Trial, Case No. 1:16-cv-08637 (ECF 4243, 4244) ("DAP Amended Consolidated Complaint"), against the following Defendants: Utrecht-America Holdings, Inc., Rabo AgriFinance LLC, Rabobank USA Financial Corporation, Utrecht-America Finance Co., and Coöperatieve Rabobank, U.A., New York Branch (collectively "Rabobank").[1]

---

[1] Utrecht-America Holdings, Inc. is a Delaware corporation headquartered in New York, NY. Its subsidiaries include: Rabo AgriFinance LLC, a Delaware limited liability company headquartered in Saint Louis, MO, that provides financial services and insurance to agricultural producers and agribusinesses; Rabobank USA Financial Corporation, a Delaware corporation headquartered in New York, NY that is a special purpose entity formed to issue commercial paper notes; and financial services company Utrecht-America Finance Co., a Delaware company headquartered in New York, NY. Coöperatieve Rabobank, U.A., New York Branch is a cooperative that does business in New York State and maintains offices in New York, NY and Atlanta, GA.

2.     Sysco incorporates by reference the factual allegations and reservations of rights contained in the DAP Amended Consolidated Complaint and its row in Section II's Chart of Direct-Action Plaintiff Cases.

## ALLEGATIONS AGAINST RABOBANK

3.     Sysco amends its Amended Complaint and the DAP Amended Consolidated Complaint to allege the following:

4.     Rabobank has been for many years the leading lender to the poultry industry in the United States, and globally.[2]  This put Rabobank at financial risk whenever the industry faced downturns and poor performance due to oversupply.

5.     Adriaan Weststrate, the head of Rabobank's poultry business, testified that Rabobank ███████████████████████████████████████████████ ████████████████████  Weststrate Dep. 164:23-165:3.

6.     As of May 2009, Rabobank had ███████████████████████████████ ████████████████████  Rabo_0000064412-428  at -428;  Weststrate Dep. 60:14-22. Weststrate testified that in 2009 Rabobank ████████████████████████████████ █████████  Weststrate Dep. 182:21-22; 350:24-351:2.

7.     In an August 4, 2014 email to Perdue, Rabobank acknowledged: ████████████ ████████████████████████  Rabo_0000032730-31.

8.     Rabobank also offers merger and acquisition-related services, which it regularly pitched to its poultry producer clients and prospective clients.  *See*, *e.g.*, Rabo_0000033891-92, -

---

[2]  Deposition of Rabobank's Adriaan Weststrate ("Weststrate Dep.") 336:21-337:10.  The broiler producers which have turned to Rabobank for credit and/or transactional work have included Fieldale, House of Raeford, Keystone, Koch, Mountaire, Peco, Perdue, Pilgrim's Pride, Simmons, Tyson, and Wayne Farms.

0000036737, -0000033911 (Foster Farms); Weststrate Dep. 331:4-10 (same); Rabo_0000052550, -0000005846, -0000103029 (Koch); Weststrate Dep. 331:16-17 (same); Rabo_0000027212 (Perdue); Weststrate Dep. 331:22-23 (same); Rabo_00000056081-82, -0000010470, -0000026502 (Pilgrim's Pride); Weststrate Dep. 331:24-25 (same); Rabo_0000032534, -0000036811 (Sanderson); Weststrate Dep. 332:25-333:5 (same); Rabo_0000082369-70, -0000084172-73 (Tyson); Weststrate Dep. 333:9-12 (same); Rabo_0000028689, -0000028927-28, -0000048990-92 (Wayne Farms); Weststrate Dep. 333:16-17 (same); Weststrate Dep. 89:10-16 ████

████████████████████████████████████████████████████████

██████████████████████ It also provides services related to bond issuance for public producers, such as Pilgrim's Pride. Weststrate Dep. 332. The more Rabobank helps producers make money, the more likely they will turn to Rabobank for these services, which generated millions of dollars in revenue for Rabobank.

9.    Although Rabobank does not buy, produce or distribute chickens, Rabobank actively facilitated and participated in coordination to achieve supply cuts, making production cuts a shared goal with producers.

10.    As Adriaan Weststrate, the head of Rabobank's poultry business, assured Perdue leaders, including CEO Jim Perdue, on February 23, 2011: ████████████████████

████████████████████████████████████████████████████████

██████████ Rabo_0000011315-316 at -315 (emphasis added).

11.    The next day, Weststrate used the same language with Bill Lovette—then President and CEO of Pilgrim's Pride (recently indicted by the DOJ for violating federal antitrust law)—to describe enlisting industry support for supply reduction. Weststrate told Lovette: ████████████

████████████████████████████████████████████████████████████

██████████████████████ Rabo_0000091905 (emphasis added).

12.     A few weeks later, a consultant retained by Rabobank reported to Weststrate and

others at the bank: ████████████████████████████████████████████

████████████████████████████████████████████████████████████

Rabo_0000092311-3217 at -2311.

13.     Rabobank's role spreading ████████████████████ among "poultry

companies" was an important mechanism for both securing producer participation in, and

monitoring compliance with, the alleged collusive activities of the producer defendants.  Even

when firms in an industry believe they will all be more profitable if they all raise prices or reduce

output, individual firms usually refrain from doing so out of concern that other firms will not

follow, and that the "leader" will be at a competitive disadvantage.  *See* Rabo_0000050062 (In an

April 30, 2008 internal email, Rabobank's R. Beard conveyed that ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

14.     One mechanism for Rabobank to spread the ████████████████ among

producers was by suggesting that such cuts were necessary to maintain relationships with

Rabobank, as well as other banks operating in syndicates led by Rabobank.

15.     Industry leaders gathered at a National Chicken Council meeting in October 2011

to discuss ████████████████ and ████████████████████████ Rabo_0000097102-103.

Following the meeting, on October 7, 2011, Mark Kaminsky, a senior Koch executive, emailed

Weststrate: ████████████████████████████████████████████████████

4

███████████████████████ Weststrate responded that same day, █████████████████████

███████████████████████████████████████ *Id*.

16.     Four days later Weststrate exchanged emails with Rabobank colleague, David Nelson, lamenting that ████████████████████████████████████████████████████

█████████████ Weststrate assured Nelson: █████████████████████████████████████

████████████████ Rabo_0000097196-97.

17.     Six days later Weststrate wrote to others at Rabobank: ██████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████ Rabo_0000097339-341, at -339.

18.     A few weeks later Rabobank noted its headway in an internal email: ███████████

███████████████████████████████████████████████ Rabo_0000097813-815 (emphasis added).

19.     At the January 2012 International Poultry Exposition, Rabobank once again cautioned producers that ████████████████████████████████████████████████████

██████████████████████████ AGSTAT-15495441-42. ████████████████████████████████

██████████████████████ Weststrate Dep. Tr. at 364:9-14.

20.     Chicken producers got the message.  For example, a Perdue document generated soon after the January 2012 International Poultry Exposition meeting explained: █████████████

██████████████████████████████████ PERDUE0001027739-744 at -742.

21.     Later in 2012, Weststrate reported in an internal Rabobank email that Rabobank had ███████████████████████████████████████████████████████████████████████████

██████████████████ Rabo 0000119774-796 at -744 (emphasis added).

22. Rabobank's frequently told producers that ███████████████████ ████████████████████████████████████████ Weststrate Dep. Tr. at 251:17-21. As Weststrate explained: ███████████████████████████████████████ ███████████████████████████████████████████ Weststrate Dep. Tr. at 161:18-21. Rabobank repeatedly told producers they had ████████████ than production cuts. *See* Weststrate Dep. Tr. at 90:9-26 ████████████████████████ ███████████████████████████████████████████████████████ ████████ *id*. at 112:9-18 (Rabobank told clients █████████████████████ █████████); *id*. at 350:15-351:6 (Rabobank communicated to the broilers industry that ███████ ███████████████████████████████████████████████████████ ██████).

23. Rabobank believed that all producers should ████████████████████ ████ (Weststrate Dep. Tr. at 251:23-252:4), and warned that if the industry ███████████ ███████████████████████████████████████████████ Weststrate Dep. Tr. at 264:25-265:2; *see also* Rabo_0000096071 (Rabobank observing: ████████ ████████████████████████████████████████████████████ )

24. Another facet of Rabobank's anticompetitive conduct involved coordination with defendant Agri Stats. In 2008, Rabobank retained as a consultant █████████████████████ ████████████████████████████████████ Weststrate worked hand in hand with ██████ for years—and with producers—to manipulate prices of broilers.

25. For example, during August 2008, Rabobank's Weststrate expressed to Trudell his concern that ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

████████     Rabo_0000052620-645 at -621-623.  Trudell replied to Weststrate's plea to make sure

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

*Id.* at -620-621.

26.    In another August 2008 exchange, Weststrate complained to Trudell:  ████████

████████████████████████████     *Id.* at -623.  Trudell responded by reporting

on her recent presentation at the National Chicken Council, explaining:  ████████████

████████████████████████████████████████████     *Id.* at -

622.  Trudell's ████████████████████████████████████████

████████████████████     Weststrate Dep. Tr. at 153:1-5.

27.    A few weeks later during 2008, Weststrate and Trudell discussed ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████     Rabo_0000054089.

28.    Prior to hiring Trudell, Rabobank was ████████████████████████

████████   because Rabobank was not a processor.  Rabo_0000053823-825 at -823.  By hiring

Trudell in 2008 during the initial round of industry production cuts, Rabobank gained access to

valuable information from Defendant Agri Stats.

29.    Producers ████████████████████████  from  Rabobank.  *See, e.g.,*

FIELDALE_1382804 ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████     In an internal, confidential memo from October 2008, Rabobank reported

that ███████████████████████████████████████████████████████████

███████████████████████████████████████████████ Rabo_0000054566-

589 at -580.

     30.    By January 2009, Trudell told Weststrate she was ██████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████ AGSTAT-15397127.

     31.    Rabobank's role in the anticompetitive conduct also included encouraging communication among broiler producer competitors, and serving as a conduit for communications between and among those competitors. For example, in November 2013, Weststrate had dinner with Jim Perdue, after which Weststrate reported to Perdue: ██████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████ Rabo_0000026431. A few days later Bill Lovette (Pilgrim's now-indicted executive) reported to Weststrate: ██████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████ Rabo_0000026773-774.

     32.    Rabobank also communicated directly with producers as part of an effort to coordinate industrywide action with respect to production and/or pricing. For instance, during a June 2011 earnings call, Pilgrim's Lovette followed his remarks about Pilgrim's production cuts with commentary about competitors, ███████████████████████████████

Case: 1:16-cv-08637 Document #: 4783 Filed: 06/29/21 Page 22 of 25 PageID #:304283



PILGRIMS-0002555920-927 at -924.  Following that earnings call, Weststrate sent an email to Lovette and Don Jackson (another senior executive at Pilgrim's), with the subject line

Rabo_0000094421.

33.    A few months later, during September 2011, Weststrate suggested to Don Jackson

Rabo_0000096353-354 (emphasis added); *see also* Rabo_0000082169 (June 24, 2010 email from M. Donegan of Rabobank to M. Kaminsky and L. Buckert of Koch:

34.    Rabobank also used its presentations and publications, shared widely with producers, including Defendants, to effectuate producer coordination.  For example, at the 2008 National Chicken Council Winter Meeting, Weststrate made a presentation advising the industry that                                    OKFoods_0000001575-1600 at -1598.  In December 2011, Weststrate prepared a                                                Rabo_0000098182-183.   And Rabobank's Poultry Quarterly Report sent to broiler producers in November 2012 made clear:

Rabo_0000021207-217 at -208.  Those reports were sometimes amplified through the press.[3]

---

[3] *See, e.g.*, https://www.drovers.com/article/chicken-industry-faces-consolidation-afterdisastrous-expansion (Dec. 12, 2011) (attributing to Rabobank the assertion that "the industry needs to 'consider plant closures more intently'").

35.     Weststrate    never    sought    ███████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████ Weststrate Dep. Tr. at 351:19-352:1.

36.     Following press reports about the filing in September 2016 of lawsuits alleging anticompetitive conduct by chicken producers, Rabobank explained in a November 2, 2016 email to Todd Simmons, then-CEO of producer Simmons: ███████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Rabo_0000044997-999 at 998.

37.     By virtue of Rabobank and all Defendants and Co-Conspirators identified in the DAP Consolidated Complaint actively and intentionally concealing their above-described wrongful conduct, the running of any applicable statute of limitations has been tolled and suspended with respect to Plaintiff's claims and causes of action resulting from the Defendants' unlawful conduct alleged in this Complaint under the fraudulent concealment doctrine and/or doctrine of equitable estoppel.

38.     Pursuant 15 U.S.C. § 16(i), the running of any applicable statute of limitations was also tolled when the Department of Justice instituted a criminal antitrust proceeding by convening a grand jury (which appears to have been in January 2019), and for which the DOJ issued a subpoena on April 2019, seeking "[a]ll discovery" in this civil case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court:

A.     Enter joint and several judgments against all Defendants in favor of Plaintiff;

B.      Award Plaintiff treble damages, of an amount to be determined at trial, to the maximum extent allowed under the federal antitrust laws;

C.      Award Plaintiff post-judgment interest as provided by law, with such interest to be awarded at the highest legal rate;

D.      Award Plaintiff its attorneys' fees, litigation expenses, and costs, as provided by law;

E.      Grant Plaintiff such other and further relief to which Plaintiff is entitled.

### JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all of its claims and issues so triable.

Dated: June 29, 2021                                 Respectfully submitted,

/s/ *Scott E. Gant*
Scott E. Gant
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
Email: sgant@bsfllp.com

Colleen A. Harrison
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8204
Email: charrison@bsfllp.com

Ryan T. McAllister
BOIES SCHILLER FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY 12207
Tel: (518) 434-0600
E-mail: rmcallister@bsfllp.com

*Counsel for Sysco Corp.*

# Appendix B

(filed with sealed version)