# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To:<br>*Chick-fil-A, Inc. v. Agri Stats, Inc. et al., 20-cv-7205* | Case No.: 1:16-cv-08637<br><br>Judge Thomas M. Durkin<br><br>Magistrate Judge Jeffrey T. Gilbert |

**REPLY IN FURTHER SUPPORT OF DIRECT-ACTION PLAINTIFF CHICK-FIL-A, INC.'S MOTION TO PARTIALLY RECONSIDER THE SEPTEMBER 22, 2020 ORDER AND OBJECTION TO MAGISTRATE JUDGE'S MAY 7 AND MAY 13, 2021 ORDERS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

ARGUMENT ................................................................................................................... 1

I.      DEFENDANTS CANNOT LEGALLY SPLIT COUNT ONE INTO
THREE SEPARATE CLAIMS. ................................................................ 1

     A.      SPLITTING COUNT ONE INTO THREE SEPARATE CLAIMS
WOULD VIOLATE *CONTINENTAL ORE*. .............................................. 1

     B.      BIFURCATING COUNT ONE WOULD VIOLATE THE
SEVENTH AMENDMENT. ...................................................................... 5

     C.      COUNT ONE CANNOT BE BIFURCATED BECAUSE THE
FACETS OF THE CONSPIRACY ARE INEXTRICABLY
INTERTWINED. ..................................................................................... 7

II.      EVEN IF THE COURT HAD DISCRETION TO SPLIT COUNT ONE
INTO THREE SEPARATE CLAIMS, DOING SO WOULD NOT
EXPEDITE OR ECONOMIZE THE CASE AND WOULD PREJUDICE
CHICK-FIL-A ......................................................................................... 9

     A.      THIS CASE CAN PROCEED MOST EXPEDITIOUSLY AND
ECONOMICALLY IF IT IS PHASED RATHER THAN
BIFURCATED. ....................................................................................... 9

     B.      BIFURCATION WOULD PREJUDICE CHICK-FIL-A ........................ 11

CONCLUSION ............................................................................................................. 13

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*,
2009 WL 2136916 (N.D. Cal. July 16, 2009) ....................................................10, 11

*Audio MPEG, Inc. v. Dell Inc.*,
254 F. Supp. 3d 798 (E.D. Va. 2017) .........................................................................6

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*,
906 F.2d 1185 (7th Cir. 1990) ....................................................................................5

*Batchelor v. City of Chi.*,
2021 WL 825607 (N.D. Ill. Mar. 4, 2021).................................................................5

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
370 U.S. 690 (1962)................................................................................................1, 2

*In re Generic Pharm. Pricing Antitrust Litig.*,
394 F. Supp. 3d 509 (E.D. Pa. 2019) .........................................................................6

*Gomez v. Garda CL Great Lakes, Inc.*,
76 F. Supp. 3d 788 (N.D. Ill. 2014) ...........................................................................6

*Houseman v. U.S. Aviation Underwriters*,
171 F.3d 1117 (7th Cir. 1999) ....................................................................................6

*Jung v. Ass'n of Am. Med. Colleges*,
300 F. Supp. 2d 119 (D.D.C. 2004) ...........................................................................4

*Keyes Fibre Co. v. Packaging Corp. of Am.*,
763 F. Supp. 374 (N.D. Ill. 1991) ..............................................................................8

*Oto v. Metro. Life Ins.*,
224 F.3d 601 (7th Cir.2000) ......................................................................................1

*Otsuka Pharm. Co., Ltd. v. Torrent Pharm. Ltd., Inc.*,
118 F. Supp. 3d 646 (D.N.J. 2015) ............................................................................6

*In re Processed Egg Products Antitrust Litig.*,
206 F. Supp. 3d 1033 (E.D. Pa. 2016), *aff'd*, 962 F.3d 719 (3d Cir. 2020)..............5

*Shum v. Intel Corp.*,
499 F.3d 1272 (Fed. Cir. 2007)..................................................................................6

*Trading Tech. Intern., Inc. v. Espeed, Inc.*,
   431 F. Supp. 2d 834 (N.D. Ill. 2006) ..................................................................................8

*U.S. Futures Exch. LLC v. Bd. of Trade of City of Chi., Inc.*,
   346 F. Supp. 3d 1230 (N.D. Ill. 2018) ................................................................................5

*U.S. v. Jayson Penn, et al.*,
   20-CR-152-PAB (D. Colo.) (Oct. 6, 2020)......................................................................3, 8

*U.S. v. Soto*,
   48 F.3d 1415 (7th Cir.1995) ................................................................................................6

*Vill. of Stillwater v. Gen. Elec. Co.*,
   2010 WL 4025601 (N.D.N.Y. Oct. 13, 2010) ..................................................................7, 8

*In re Vitamins Antitrust Litig.*,
   2000 WL 1475705 (D.D.C. May 9, 2000), *reconsideration denied*, 2000 WL
   34230081 (D.D.C. July 28, 2000) ................................................................................2, 3, 4

**Rules**

Fed. R. Civ. P. 20(b) ................................................................................................................2

Fed. R. Civ. P. 21 ....................................................................................................................2

Fed. R. Civ. P. 42(b) ................................................................................................................2

Fed. R. Civ. P. 54(b) ................................................................................................................1

Fed. R. Crim. P. 17(c) ..............................................................................................................3

Fed. R. Evid. 404(b).........................................................................................................10, 11

Defendants assert that the Court is "well within its discretion" to bifurcate a single facet of an overarching antitrust conspiracy for expert reports, summary judgment, and trial (ECF No. 4834 at 1, 3, 10, 12, 21). But Defendants fail to cite a single antitrust conspiracy case in which that was done. That is because bifurcation would be improper here for both legal and practical reasons. Legally, bifurcating for trial a single claim of an overarching conspiracy would violate the principles set forth in *Continental Ore* and the Seventh Amendment. Practically, bifurcating for trial a single claim of an overarching conspiracy would create inefficiencies that can be avoided even if discovery is bifurcated. For these reasons, Chick-fil-A's motion for partial reconsideration of the Bifurcation Order should be granted, and the schedule should be adjusted to allow Chick-fil-A to try its entire case in one setting.

## ARGUMENT

## I. DEFENDANTS CANNOT LEGALLY SPLIT COUNT ONE INTO THREE SEPARATE CLAIMS.[1]

### A. SPLITTING COUNT ONE INTO THREE SEPARATE CLAIMS WOULD VIOLATE *CONTINENTAL ORE*.

As set forth in Chick-fil-A's Supplemental Brief (ECF No. 4754), *Continental Ore* instructs that "the character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts." *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962). But Defendants' response asks the Court to do just that, which is exactly what *Continental*

---

[1] Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court may revise any of its orders prior to entry of judgment. Accordingly, the Court may revise the Bifurcation Order without the need to expressly decide whether *Continental Ore*, the Seventh Amendment, or any other law requires it to do so. But even if "manifest error" was required to warrant reconsideration, overlooking controlling precedent suffices. *Oto v. Metro. Life Ins.,* 224 F.3d 601, 606 (7th Cir.2000). Without the benefit of briefing when making its bifurcation decision, the Court was not apprised of the controlling precedent that Chick-fil-A, which had not yet filed its lawsuit at the time of the Bifurcation Order, has brought to light.

*Ore* forbids.[2] Try as they might, Defendants could not locate a single case in which different facets of an antitrust conspiracy were bifurcated for summary judgment and trial.[3] And for good reason. Splitting up claims under any of Rules 20(b), 21, or 42(b) "is generally disallowed in cases alleging single conspiracies or even in cases where the allegations are a series of overlapping and interwoven conspiracies." *In re Vitamins Antitrust Litig.*, 2000 WL 1475705, at *17 (D.D.C. May 9, 2000), *reconsideration denied*, 2000 WL 34230081 (D.D.C. July 28, 2000) (quotation and citation omitted).

In *Vitamins*, the complaint alleged a single conspiracy to artificially inflate the prices of certain vitamins and vitamin products, allocate shares of the vitamin market among the conspirators, predetermine sales volume in the vitamin industry, eliminate competition, limit supply, and commit other practices constituting per se violations of Section 1 of the Sherman Act. *Id.* at *1. In short, just like in this case, plaintiffs "alleged that all defendants participated in a single conspiracy not to compete on the sale of vitamins." *Id.* at *9 & *11. The defendants argued that there really were three distinct conspiracies, involving (1) bulk vitamins, (2) choline chloride, and (3) niacin. *Id.* at *17. And certain defendants had entered into criminal plea agreements related only to one of the specific types of vitamins. *Id.*[4] Noting that plaintiffs alleged a single conspiracy

---

[2] Contrary to Defendants' hyperbole, this Court has not rejected that *Continental Ore* mandates that DAP's overarching antitrust claim be tried as one. ECF No. 4834 at 8. In ECF No. 3732, the then-New DAPs cited *Continental Ore* for the proposition that *severance* of the big-rigging allegations into a separate case would be improper because conspiracies are to be viewed as a whole. ECF No. 3732 at 12. In ECF No. 3736, the Class Plaintiffs and older DAPs likewise cited *Continental Ore* for the proposition that the bid-rigging allegations should not be *severed* from the rest of the case. ECF No. 3736 at 13-14. The Court did not *sever* the bid-rigging allegations—expressly finding that the various facets of the alleged conspiracy "belong together in the same case." ECF No. 3835 at 6. The Court has entered no order deciding whether *Continental Ore* forbids bifurcation. Indeed, there was no briefing on the issue as the Court bifurcation was entered *sua sponte*.

[3] Defendants cite three cases on page 11 of their brief for the unremarkable proposition that courts sometimes bifurcate cases. But none of those cases involves a conspiracy, let alone a multifaceted antitrust conspiracy.

[4] Here, of course, certain Defendants were criminally charged not only with only bid rigging, but rather a single conspiracy "to rig bids and to fix, maintain, stabilize, and raise prices and other price-related

that affected several different vitamins and relying on *Continental Ore*, the court denied defendants' efforts to split the claim into three parts. *Id.* Because plaintiffs "alleged a single global conspiracy involving all named defendants, . . . identified the vitamins that were part of the conspiracy, what the conspirators agreed to do, and how they accomplished their goals" and requested judgment against all defendants jointly and severally, splitting up the claim was inappropriate. *Id.* at *18.

The same is true here. In Count One, Chick-fil-A has alleged a single conspiracy to raise the prices of broiler chicken, and that this conspiracy was accomplished by various means including supply reductions, manipulation of the Georgia Dock index, and bid rigging, among others.[5] It alleges that all Defendants were involved in that conspiracy. Even if Defendants were correct that the criminal indictments relate only to bid rigging—and they are not correct (*see* n.4, *supra*)—that does not remove bid rigging from the auspices of the overarching conspiracy. As in *Vitamins*, it would be contrary to *Continental Ore* to split the bid rigging allegations from the rest of Count One. It would be especially inappropriate to require a trial before there is any discovery into the bid rigging aspects of the conspiracy, and thus deprive Plaintiffs the ability to demonstrate how the various Defendants' various conduct contributed to the overall antitrust scheme.

Moreover, as demonstrated by *Vitamins* and contrary to Defendants' argument, *Continental Ore* applies to alleged conspiracies in which each facet is an independent violation of the Sherman Act—not just to conspiracies where the constituent acts are independently legal.

---

terms for broiler chicken products sold in the United States." *See* Superseding Indictment at 2, *U.S. v. Jayson Penn, et al.*, 20-CR-152-PAB (D. Colo.) (Oct. 6, 2020). Indeed, the Defendants in the criminal case recognize that "the government has alleged a wide-ranging conspiracy to fix prices and rig bids for broiler chicken products." *See* Defendants' Motion Pursuant to Rule 17(c) for Court Order Authorizing Subpoenas Duces Tecum to Produce Documentary Evidence in Advance of Trial at 1, 20-CR-152-PAB (D. Colo.) (July 19, 2021) (ECF No. 284).
    [5] Chick-fil-A contends that these alleged acts demonstrate a single, unified conspiracy, but at the very least they reflect "a series of overlapping and interwoven conspiracies."

3

Indeed, as explained above, *Vitamins* involved multiple separate actions – agreement to allocate market share, fix prices and supply among others – that taken alone would be *per se* violations of the antitrust laws. 2000 WL 1475705, at *9 (recognizing that individual aspects of the conspiracy were *per se* violations).

These principles were followed in *Jung v. Association of American Medical Colleges*, 300 F. Supp. 2d 119, 156 (D.D.C. 2004). In *Jung*, medical school graduates enrolled in residency programs alleged that certain medical organizations conspired to displace competition in the recruitment, hiring, employment, and compensation of resident physicians. *Id.* at 125. The residents asserted that there were three prongs to the antitrust conspiracy: (1) the assignment of fourth-year medical students to residency programs by the National Resident Matching Program; (2) the Accreditation Council for Graduate Medical Education restricting residency employment by regulating the number of available positions, imposing obstacles to transfer, and other means; and (3) the exchange of competitively sensitive information on resident compensation to standardize and stabilize it. When the defendants tried to carve off part of the alleged conspiracy (in this case because of an arbitration agreement), the court found that doing so "would undermine the purposes of the Sherman Act by improperly compartmentalizing plaintiffs' single conspiracy claim." *Id.* at 154. The defendants' characterization of the single conspiracy claim as "tripartite" could not "disguise the fact that plaintiffs' claim alleges a single conspiracy with three interacting prongs that—when considered together—[were] alleged to have the anticompetitive effect charged." *Id.* at 155.

There is simply no way to bifurcate this claim over Chick-fil-A's objection without ignoring this precedent.[6] Accordingly, the Court should reconsider its Order (which was entered

---

[6] The unitary nature of Count One stands in marked contrast to other scenarios where antitrust plaintiffs bring "clear, separate theories of liability" as part of the same case, which Chick-fil-A would

before Chick-fil-A was even a party). Additionally, the facts have changed or at least developed in a way not anticipated, which also warrants reconsideration. *Batchelor v. City of Chicago*, 2021 WL 825607, at *2 (N.D. Ill. Mar. 4, 2021) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)) (reconsidering and reversing decision to sever based on changed circumstances). Here, as explained elsewhere, Defendants have used the Court's Bifurcation Order as a means to prevent discovery into a wide variety of issues. *See, e.g.*, ECF No. 4626 at 2 (Court noting the "untenable catch-22" of Defendant's refusal to produce evidence they characterize as relevant to bid rigging); ECF No. 4652 at 11. This affects the Court's ability to try even the issues that Defendants want tried under a bifurcation scheme.

In short, bifurcation here is legally impermissible and factually problematic. The Court should permit discovery on all issues before expert reports, summary judgment, and trial.

## B. BIFURCATING COUNT ONE WOULD VIOLATE THE SEVENTH AMENDMENT.

Bifurcating Count One would violate both prongs of the Seventh Amendment: that (1) "the right of trial by jury shall be preserved," and (2) "no fact tried by a jury, shall be otherwise re-

---

agree requires each claim to be assessed individually. *See, e.g.*, *U.S. Futures Exch. LLC v. Bd. of Trade of City of Chi., Inc.*, 346 F. Supp. 3d 1230, 1249 (N.D. Ill. 2018) (Durkin, J.) (rejecting application of *Continental Ore* where, unlike here, "plaintiffs themselves treat their theories as individual 'claim[s]' and analyze them separately").

Additionally, there is a unique need to separately assess different theories of antitrust liability when one or more may be immune or when different theories may be governed by different standards. In *U.S. Futures Exchange*, much of the conduct alleged to constitute an antitrust violation was immunized from antitrust liability, so this Court was required to determine whether the remaining challenged conduct was sufficient to support antitrust liability. *Id.* Because the defendants' conduct was immunized, summary judgment was appropriate. *In re Processed Egg Products Antitrust Litig.*, 206 F. Supp. 3d 1033, 1039-43 (E.D. Pa. 2016), *aff'd*, 962 F.3d 719 (3d Cir. 2020), addressed a completely different question. The court there was concerned that through the single conspiracy allegations the plaintiffs were attempting to apply *per se* analysis to conduct that should otherwise be analyzed under the rule of reason. *Id.* at 1042 ("[D]espite the fact that the jury is entitled to evaluate the effects of the unitary conspiracy, *Continental Ore* is not intended to preclude analysis of the legal basis for the conspiracy allegation in the plaintiffs' claim."). Defendants do not even attempt to argue this is what Plaintiffs here are trying to do. Thus, *Processed Eggs* does not answer, or even address, the question presented here.

5

examined in any Court of the United States."[7] There are many situations in which it is appropriate to bifurcate a case for trial. For example, the claims against different defendants may be tried separately, as in *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1126 (7th Cir. 1999). A patent claim can be bifurcated from an antitrust counterclaim, especially when resolution of the patent issues could moot the antitrust issues. *E.g.*, *Audio MPEG, Inc. v. Dell Inc.*, 254 F. Supp. 3d 798, 805-06 (E.D. Va. 2017); *Otsuka Pharm. Co., Ltd. v. Torrent Pharm. Ltd., Inc.*, 118 F. Supp. 3d 646, 659 (D.N.J. 2015). There are also situations in which bifurcation is not allowed. For example, when a lawsuit includes both legal claims to be resolved by a jury and equitable claims to be resolved by the court and there are common factual issues to both claims, the legal claims must be determined by a jury before court determination of the equitable claims. Otherwise, the claimant is deprived of the right to a jury trial, as required by the first prong of the Seventh Amendment. *E.g.*, *Shum v. Intel Corp.*, 499 F.3d 1272, 1276-77 (Fed. Cir. 2007).

Here, Defendants provide no answer to the key question asked by Chick-fil-A in its opening brief, which is how can Count One ever be tried in if the facets of the antitrust conspiracy are bifurcated. The answer is it cannot, for the reasons explained in Chick-fil-A's brief. Thus, bifurcating the bid-rigging claims would result in Plaintiffs losing on Count One without summary judgment or trial. While it is no surprise Defendants support bifurcation, fundamental fairness

---

[7] Contrary to Defendants' contention, Chick-fil-A does not "suggest" that proving companies A and B rigged bids makes it more likely that companies C, D, E, F, and G entered into a conspiracy. *See* ECF No. 4834 at 18. Rather, if Chick-fil-A can prove that companies A through G entered into an overarching conspiracy to increase the price of broiler chicken, and one facet of that conspiracy was bid rigging, companies A through G are jointly and severally liable for the resulting damages, even if some did not participate in every facet of the conspiracy. *See In re Generic Pharm. Pricing Antitrust Litig.*, 394 F. Supp. 3d 509, 515 (E.D. Pa. 2019) ("The claims asserted in the Overarching Complaints would impose joint and several liability on Defendants not just for their participation in any individual drug conspiracy, but also for their participation in the alleged overarching scheme."). That co-conspirators are liable for all acts within the conspiracy even if they did not participate in those particular acts (absent withdrawal, which has stringent requirements) is black letter law that extends well beyond antitrust. *E.g.*, *Gomez v. Garda CL Great Lakes, Inc.*, 76 F. Supp. 3d 788, 792 (N.D. Ill. 2014) ("'[T]he overt acts of one conspirator are attributable to all co-conspirators.'") (quoting *U.S. v. Soto*, 48 F.3d 1415, 1425 (7th Cir.1995)).

requires allowing Plaintiffs the opportunity to present the claims they want to bring, not the claims Defendants want Plaintiffs to bring.

Defendants claim that "the first trial will address whether the Defendants agreed to reduce supply and/or certain Defendants agreed to manipulate the Georgia Dock, while the second trial will address whether the Defendants or certain Defendants agreed to rig bids." (ECF No. 4834 at 20.) So according to Defendants, the first trial will address Counts II and III of the Amended Consolidated Complaint (supply restriction and Georgia Dock)[8] and the second trial will address Count LIII (bid rigging).[9] But which trial will address Count One? The answer according to the Defendants is that Count One never gets tried.[10] This alone would violate Plaintiffs' right to a jury trial.

Defendants' arguments against Chick-fil-A's Seventh Amendment position work only if Defendants are permitted to decide unilaterally which claims Plaintiffs can bring. They cannot, and the Court should recognize the serious Seventh Amendment problems inherent in bifurcating Plaintiffs' bid-rigging claims.

### C.    COUNT ONE CANNOT BE BIFURCATED BECAUSE THE FACETS OF THE CONSPIRACY ARE INEXTRICABLY INTERTWINED.

Apart from being precluded by *Continental Ore* and the Seventh Amendment, bifurcation of this case for summary judgment and trial is inappropriate because the facets of the antitrust conspiracy are inextricably interwoven. *Vill. of Stillwater v. Gen. Elec. Co.*, 2010 WL 4025601, at

---

[8] *See* ECF No. 4243/4244 at p. 318-325.

[9] *Id.* at 406-410.

[10] Defendants assert in a footnote that Chick-fil-A somehow waived its Seventh Amendment argument because it was not raised before the Bifurcation Order was entered. *See* ECF No. 4834 at 8 & 17 n.15. Defendants never even try to explain how Chick-fil-A's constitutional rights can be forfeited because it did not make an argument where (a) the Court entered the Order *sua sponte* (so there was no briefing or argument by any of the Plaintiffs) and (b) Chick-fil-A was not even a party to this proceeding when the Order was entered. Defendants' unserious and undeveloped argument should be summarily rejected.

*3 (N.D.N.Y. Oct. 13, 2010). *See also Trading Tech. Intern., Inc. v. Espeed, Inc.*, 431 F. Supp. 2d 834, 841 (N.D. Ill. 2006) ("'[W]here issues to be presented in the two trials sufficiently overlap, bifurcation should be denied.'") (quoting *Keyes Fibre Co. v. Packaging Corp. of Am.*, 763 F. Supp. 374, 375 (N.D. Ill. 1991)). Indeed, this Court's prior findings recognize as much. The Court recognized that Defendants' actions may constitute a "single conspiracy" that may have "use[d] different means at different times." ECF No. 3835 at 7. Thus, there is "extensive overlap" and discovery for the various facets of the conspiracy is "thoroughly intertwined" in terms of the scope of relevant documents, custodians, and deponents. *Id.* at 4. This has been confirmed by the Department of Justice, which charged certain Defendants with a single conspiracy "to rig bids and to fix, maintain, stabilize, and raise prices and other price-related terms for broiler chicken products sold in the United States." *See* Superseding Indictment at 2, *U.S. v. Jayson Penn, et al.*, 20-CR-152-PAB (D. Colo.) (Oct. 6, 2020).

Defendants appear to suggest otherwise in their briefing. *See* ECF No. 4834 at 13-14. But the fact is that Plaintiffs have been deprived of discovery into the bid rigging claims and anything related to the bid rigging claims. And while it is possible, although unlikely, that Defendants could make a compelling case for bifurcation after all the facts are known, that decision should be made after discovery, not before.[11] Defendants seek bifurcation not only to eliminate Count One and artificially cabin Plaintiffs' evidence at trial, but also to prevent inquiry into the scope of their conduct. Those are not good reasons for bifurcation.

---

[11] Defendants argue that Chick-fil-A has not put forth "facts to support an 'overarching' agreement to fix broiler prices." ECF No. 4834 at 6 & 12. But that is the exact discovery that Defendants refuse to produce—anything that could support Plaintiffs' position that bid-rigging was part of the Defendants' overarching conspiracy. But even without any discovery, Chick-fil-A provided a list of actual facts—interrelated evidence—pled to support the existence of a single conspiracy to raise the prices of broiler chickens. ECF No. 4754 at 12.

## II. EVEN IF THE COURT HAD DISCRETION TO SPLIT COUNT ONE INTO THREE SEPARATE CLAIMS, DOING SO WOULD NOT EXPEDITE OR ECONOMIZE THE CASE AND WOULD PREJUDICE CHICK-FIL-A.

### A. THIS CASE CAN PROCEED MOST EXPEDITIOUSLY AND ECONOMICALLY IF IT IS PHASED RATHER THAN BIFURCATED.

This Court's expressed goal in bifurcating the bid rigging allegations was expedient resolution of this case. ECF No. 3835 at 8. Chick-fil-A's proposal would maintain what was achieved in the Bifurcation Order by not upsetting the trial setting of the bellwether trial in early 2023 focused largely on supply restriction and Georgia Dock allegations. It would also further the Court's goal by substantially lessening the time to a final resolution of the entire case. An entire second round of discovery, expert discovery, dispositive motion practice, and trial would be eliminated. The only tradeoff is that the expert discovery and briefing of dispositive motions would occur roughly a year apart for the bellwether Plaintiffs and Chick-fil-A and other DAPs. It is hard to see how this harms anyone, and Defendants' professed concern about "multiple rounds" of briefing on the supply reduction and Georgia Dock allegations is illusory. The volume of briefing on these issues would be the same—the briefs would just be set off in time.[12] And the total volume of briefing would go down, because there would not be a second round of "merits expert briefing and summary judgment" devoted exclusively to bid rigging allegations. Thus, not only is Chick-fil-A's proposal both fair and workable, it actually furthers the goal of bringing this litigation to a speedier conclusion.

Defendants' complaint about "***two rounds***" of discovery on bid-rigging (ECF No. 4834 at 5) is also uncompelling. Two rounds of discovery on bid rigging will happen regardless, at least to some extent. Each Plaintiff has a right to discover evidence that might be admissible under Rule

---

[12] This time will be well spent. The bid rigging discovery is not geared toward learning *whether* bid rigging occurred; we know it did, as there has already been a guilty plea in the criminal proceedings. The discovery will reveal the *extent* of the bid rigging and how it was accomplished.

404(b), and many have requested such discovery before they brief dispositive motions and try their cases. *See* ECF Nos. 4750-1 & 4832.[13] Chick-fil-A and the other DAPs are entitled to discovery on bid-rigging (outside the Rule 404(b) context); the only issue is whether that discovery takes place before or after a first round of trials.

And the alternative to the "***two trials***" Defendants bemoan is three or four trials—one on bellwether Plaintiffs' supply restriction and Georgia Dock allegations,[14] a second on Chick-fil-A and other DAPs' supply and Georgia Dock allegations, a third on Chick-fil-A and other DAPs' bid rigging allegations, and perhaps a fourth on bellwether Plaintiffs' bid rigging allegations, since Defendants argue that most parties allege bid rigging and might want to try that facet of the antitrust conspiracy.[15]

Indeed, Defendants' professed concern about two rounds of discovery and two trials is essentially an argument that the case should not be bifurcated at all. Chick-fil-A agrees, with respect to its own claims, but vacating the Bifurcation Order as to all Plaintiffs would delay the bellwether trials—a result the Court and all parties have sought to avoid. The preferable case management solution is the two tracks Chick-fil-A has proposed.

Even if bifurcation may have been allowable and appropriate at one point, it no longer is. The situation is similar to that in *Advanced Microtherm*, where the district court ordered a "single unified trial" of plaintiffs' antitrust claims because its order tentatively requiring separating trials "appear[ed] to be becoming an obstacle to efficient discovery and trial preparation". *Advanced*

---

[13] The Kroger and Publix plaintiffs have made clear that they seek only documents that have already been produced to or by the government, ECF No. 4750-1 at 3. Requiring Defendants to provide the requested documents cannot be characterized as a "round of discovery."

[14] A trial on supply restriction and Georgia Dock allegations in which limited evidence of big rigging is introduced under Rule 404(b) would not constitute a "trial on bid rigging" as Defendants contend. ECF No. 4834 at 5.

[15] Chick-fil-A has not "volunteered" anyone to be a bellwether plaintiff. Publix and Kroger are anxious to go to trial, as they have indicated to the Court more than once.

*Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*, 2009 WL 2136916, at *1 (N.D. Cal. July 16, 2009). Here, As in *Advanced Microtherm*, "separate trials are no longer appropriate in this case." *Id.* at *3. Indeed, in the most recent scheduling hearing, Judge Gilbert recognized that the plan Chick-fil-A suggests alleviates the most collective concerns of the various parties. He suggested that those plaintiffs desiring to go to trial sooner try their supply restriction and Georgia Dock allegations, perhaps with Rule 404(b) evidence on bid rigging, but not have a later, second trial exclusively on bid rigging. ECF No. 4814, May 24, 2021 Tr. at 43:3-45:20. The DAPs, including Chick-fil-A, requesting a single trial that includes all allegations could then follow with a separate discovery track and trial approximately a year later. *Id.* at 44:21-45:19. This is the most expedient and economical way to proceed.

### B.     BIFURCATION WOULD PREJUDICE CHICK-FIL-A.

Chick-fil-A will be unduly prejudiced if the Bifurcation Order remains in place. As explained above, Chick-fil-A will be deprived of prosecuting Count One without the Court or a jury ever considering its claim on the merits.

And the prejudice to Chick-fil-A will not end there. First, Chick-fil-A will be hamstrung in its presentation of the supply reduction and Georgia Dock facets of the conspiracy alone if the case proceeds it its current posture. The reason is simple. Defendants hide behind the Bifurcation Order in refusing to provide any discovery that might have any tangential relationship to bid rigging, even if probative of the supply reduction or Georgia Dock allegations.[16] It would be manifestly unfair to force Chick-fil-A to proceed to trial on only part of its claim without even having the benefit of all the evidence relevant to that part.[17]

---

[16] *See, e.g.*, ECF No. 4626 at 2; ECF No. 4652 at 11; ECF No. 4546; ECF No. 4460.

[17] Defendants' accusation that Chick-fil-A has "invoked the Bifurcation Order to shield entire categories of its own documents as purportedly implicating bid rigging" (ECF No. 4834 at 24) is untrue. A review of the very exhibit that Defendants cite to claim that Chick-fil-A refused to provide discovery proves

Second, if bid rigging discovery is delayed until trials on the other facets of the conspiracy are resolved, Chick-fil-A could be hamstrung in its ability to prove its case by fading memories and witnesses becoming unavailable in the intervening years. Defendants' suggestion that Chick-fil-A needs to name witnesses who may become unavailable or whose memories will fade defies common sense. No special training or knowledge is needed to understand that the passage of time leads to fading memories and unavailability of witnesses. Indeed, Defendants themselves have raised this issue. In response to DAPs interrogatories, Sanderson Farms complained that three key witnesses had died between 2011 and 2018: the former CEO, COO, and CFO of Tyson. *See* Ex. A, Excerpt from Sanderson Farms' Amended Answer to Direct Action Plaintiffs' Interrogatory No. 3, at 7 ¶ 16. In addition, Pilgrim's founder and former CEO has passed away, and other witnesses have retired our sought accommodation for limitations related to advanced age. *See* ECF No. 2289 at 9 & ECF No. 3113 at 4-5. This trend will only get worse in the years ahead, so minimizing the time that will elapse before bid rigging discovery proceeds is crucial to avoiding more prejudice to Chick-fil-A.

For these reasons as well as the others set forth in Chick-fil-A's Supplemental Brief (ECF No. 4754), the prejudice to Chick-fil-A if the Bifurcation Order is not partially reconsidered—the most important factor in a bifurcation analysis—is simply too great. Conversely, Defendants do not argue that they will be prejudiced if this case is ***not*** bifurcated for summary judgment and trial. That is because they will not be.

---

the exact opposite: Chick-fil-A has not withheld a single document because it relates to bid rigging. As Chick-fil-A stated at least three times in the email string, it simply believes that in the interest of fairness, the same rules should apply to Plaintiffs and Defendants. That has not occurred to date: Defendants have demanded and received discovery that touches on bid rigging, while refusing to provide any discovery that might have any tenuous or conceivable connection to bid rigging, even if clearly also related to supply reduction or Georgia Dock manipulation.

12

**CONCLUSION**

For the reasons set forth in Chick-fil-A's Supplemental Brief (ECF No. 4754) and above, Chick-fil-A requests that the Bifurcation Order be partially reconsidered and modified, and the scheduling order updated accordingly.

Dated: July 23, 2021        */s/ Ryan P. Phair*

         Ryan P. Phair (#479050)
         HUNTON ANDREWS KURTH LLP
         2200 Pennsylvania Avenue, NW
         Washington, D.C. 20037-1701
         (202) 955-1500
         rphair@huntonak.com

         Matthew J. Calvert (admitted *pro hac vice*)
         HUNTON ANDREWS KURTH LLP
         Bank of America Plaza, Suite 4100
         600 Peachtree Street NE
         Atlanta, GA 30308
         (404) 888-4000
         mcalvert@huntonak.com

         *Attorneys for Plaintiff Chick-fil-A, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of July, 2021, I caused a true and correct copy of the

foregoing document to be served upon all counsel of record via the Court's CM/ECF system.

*/s/ Ryan P. Phair*
Ryan P. Phair