**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| | Honorable Thomas M. Durkin<br>Magistrate Judge Jeffrey T. Gilbert |
| This Document Relates To:<br><br>*All End-User Consumer Plaintiff Actions* | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENTS BETWEEN END-USER CONSUMER PLAINTIFFS AND DEFENDANTS PILGRIM'S AND MAR-JAC AND TO DIRECT <u>NOTICE TO THE SETTLEMENT CLASS</u>**

- 1 -

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     SUMMARY OF LITIGATION...........................................................................3

III.    SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS .................4

        A.      Pilgrim's Settlement.................................................................................4

        B.      Mar-Jac's Settlement ...............................................................................6

IV.     ARGUMENT .......................................................................................................7

        A.      The Court Should Preliminarily Approve the Settlements. ......................7

        B.      The Court Should Certify the Proposed Settlement Class. .......................9

                1.      The proposed settlement class satisfies Rule 23(a)......................10

                        a.      Numerosity......................................................................10

                        b.      Commonality....................................................................10

                        c.      Typicality ........................................................................10

                        d.      Adequacy ........................................................................11

                2.      The proposed settlement class satisfies Rule 23(b)(3).................11

        C.      The Court Should Direct Notice to the Settlement Class. .....................13

                1.      EUCPs' proposed form of class notice should be approved
                        because it clearly and fairly apprises class members of the
                        nature of this action and the scope of their rights. .....................13

                2.      The proposed manner of notice dissemination is reasonable
                        and represents the best notice practicable under the
                        circumstances.................................................................................15

        D.      The Court Should Approve the Plan of Allocation................................19

        E.      The Court Should Approve the Proposed Schedule. .............................20

V.      CONCLUSION...................................................................................................22

010636-11/1577585 V21

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page(s)**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ............................................................8

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...........................................................................................13

*Armstrong v. Bd. of Sch. Dirs.*,
616 F.2d 305 (7th Cir. 1980) .................................................................................7

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) ...........................................................................16

*Burns v. Elrod*,
757 F.2d 151 (7th Cir. 1985) ...............................................................................14

*De La Fuente v. Stokely-Van Camp, Inc.*,
713 F.2d 225 (7th Cir. 1983) ...............................................................................11

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .......................................................................................14, 15

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) .................................................................................8

*Gehrich v. Chase Bank USA, N.A.*,
316 F.R.D. 215 (N.D. Ill. 2016) ...........................................................................15

*Hughes v. Kore of Indiana Enters., Inc.*,
731 F.3d 672 (7th Cir. 2013) ...............................................................................15

*Kleen Prods. LLC v. Int'l Paper Co.*,
831 F.3d 919 (7th Cir. 2016) ...............................................................................12

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) ...............................................................................12

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ..........................................................................12, 15

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ............................................................................................14

*Prac. Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*,
    301 F. Supp. 3d 840 (N.D. Ill. 2018) ..............................................................10, 12

*Retired Chicago Police Ass'n v. City of Chicago*,
    7 F.3d 584 (7th Cir. 1993) ..............................................................................11

*In re Rubber Chems. Antitrust Litig.*,
    232 F.R.D. 346 (N.D. Cal. 2005) ....................................................................11

*Saltzman v. Pella Corp.*,
    257 F.R.D. 471 (N.D. Ill. 2009) ......................................................................11

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................................14, 19

*Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*,
    271 F.R.D. 139 (N.D. Ill. 2010)................................................................15, 16

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)......................................................................................10

## FEDERAL STATUTES

Sherman Act § 1.......................................................................................................3, 13

## FEDERAL RULES

Federal Rule of Civil Procedure 23 ....................................................................... *passim*

- iii -

## I. INTRODUCTION

The End-User Consumer Plaintiffs (EUCPs) move this Court for approval of settlements with Pilgrim's Pride Corporation and the Mar-Jac Defendants[1] (hereinafter, "current Settling Defendants") for $75.5 million and $1 million, respectively. These are the fifth and sixth settlements reached between EUCPs and defendant families, bringing the total recovery to date for the EUCP class to $181 million. On March 22, 2021, this Court granted preliminary approval to settlements between EUCPs and Defendants Fieldale ($1.7 million), Peco ($1.9 million), George's ($1.9 million), and Tyson ($99 million) (collectively, "earlier Settling Defendants"). ECF Nos. 4450-4451. In addition to monetary recovery, the current Settling Defendants' agreement to provide cooperation will also strengthen EUCPs' case against the remaining defendants. The settlements fall within the range of possible approval under Federal Rule of Civil Procedure 23(e). And, like the previously certified settlement class, this one also satisfies the requirements of Rule 23(a) and (b).

Notice has not yet been sent to the class regarding the first four settlements.[2] Accordingly, EUCPs also move the Court for an order joining notice of the six settlements under Rule 23(e). EUCPs have successfully obtained over 32 million email addresses of class members through subpoenas to grocery and club stores. Within the coming weeks, additional email addresses will be produced by Costco and potentially others. A motion to compel even more email addresses for

---

[1] The Mar-Jac Defendants are Mar-Jac Poultry, Inc.; Mar-Jac AL/MS, Inc.; Mar-Hac Holdings, Inc; Mar-Jac Poultry AL, LLC; Mar-Jac Poultry MS, LLC; and Mar-Jac Poultry, LLC.

[2] On June 22, 2021, EUCPs moved the Court to direct notice as to the preliminarily approved settlements with Fieldale, Peco, George's, and Tyson. ECF No. 4765. The Court has not yet ruled on this motion. EUCPs ask that the same notice program (as here modified) and schedule be approved as to all the settlements, in order to minimize administrative costs to the settlement class funds.

class members is also pending against Target, a direct-action plaintiff in this matter.[3] Direct notice to consumer email addresses will be supplemented by a robust online campaign of advertising. Sample advertisements are provided with this motion and will direct consumers to the settlement class website. This website—www.overchargedforchicken.com—is dedicated to communications with class members. It includes important case-related documents, notices, and frequently asked questions, and will allow class members to submit simple online claims.

The proposed form and manner of notice dissemination here is supported by an experienced notice and claims administrator, A.B. Data. As set forth in more detail in the Declaration of Eric Schachter, A.B. Data's Vice President, A.B. Data has been appointed as notice, claims, and/or settlement administrator in hundreds of high-volume class action cases. Class Counsel has worked with Mr. Schachter and his team at A.B. Data to develop the proposed forms of class notice as well as the proposed manner of disseminating notice to the Class, and Mr. Schachter attests to its adequacy and constitutionality. The proposed form of notice provides the information required by Rule 23(c)(2)(B) to the Class, in language—both English and Spanish—that is plain and engaging. With this motion, EUCPs also provide proposed forms for the abbreviated email notice, full website notice, and claims form. Thus, the Class notice and the manner of dissemination proposed here meet the requirements of Rule 23 and of constitutional due process.

In short, EUCPs respectfully request that the Court grant their motion for preliminary approval of these settlements (just like the earlier settlements), certify the same settlement class in

---

[3] EUCPs moved to compel the information from Target in the District of Minneapolis, the location of Target's headquarters, but requested transfer to this Court. Target opposed both the production of the information and the motion to transfer, which was granted on June 16, 2021. Judge Gilbert took the motion to compel under advisement on July 9, 2021.

the context of these new settlements, and direct notice of settlement in conjunction with the settlements already preliminarily approved by the Court.

## II.  SUMMARY OF LITIGATION

EUCPs have been litigating this case diligently for over four years. On December 14, 2016, the Court appointed Hagens Berman Sobol Shapiro LLP, supported by Cohen Milstein Sellers & Toll, PLLC, as lead counsel for the putative EUCP class. ECF No. 248. Two days later, EUCPs filed a Consolidated Amended Class Action Complaint alleging that defendants conspired to suppress chicken output and raise chicken prices, in violation of the Sherman Act and many state antitrust and consumer protection laws. ECF No. 255.[4] On November 20, 2017, the Court denied defendants' motions to dismiss. ECF No. 541.

Since then, EUCPs have engaged in rigorous discovery. Working with counsel representing the other classes, EUCPs have collected over eight million documents, taken over 180 depositions of defendants' employees and third parties, and collected and analyzed voluminous structured data. Scarlett Decl., ¶ 3.[5] In addition, all current class representatives sat for depositions. On April 29, 2019, EUCPs amended their pleadings to add a claim that defendants participated in an anticompetitive information exchange, in violation of the Rule of Reason. ECF No. 2170.

On June 21, 2019, after the United States Department of Justice moved to intervene in this case, the Court issued a partial stay of discovery. ECF No. 2302. On October 16, 2019, the Court extended the partial stay until June 27, 2020. ECF No. 3153. To date, the DOJ's investigation has

---

[4] EUCPs' initial Consolidated Amended Class Action Complaint alleged that fourteen chicken processors maintained a *per se* unlawful conspiracy to suppress chicken output and raise prices. ECF No. 255. On February 12, 2018, EUCPs filed an Amended Complaint naming Agri Stats, Inc. and three additional chicken processors as defendants. ECF No. 716.

[5] "Scarlett Decl." refers to the Declaration of Shana E. Scarlett in Support of Motion for Preliminary Approval of Settlement Agreements Between End-User Consumer Plaintiffs and Defendants Pilgrim's and Mar-Jac, concurrently filed herewith.

resulted in multiple indictments for bid rigging and price fixing. *See* Superseding Indictment, *United States v. Penn*, 1:20-cr-00152-PAB (D. Co. Oct. 6, 2020), ECF. No. 101.

On October 30, 2020, EUCPs filed a motion for class certification, supported by two expert declarations and a declaration provided by Fieldale. ECF No. 3971. The motion marshalled substantial econometric evidence, documentary evidence, and deposition testimony to show that EUCPs' claims are susceptible to class-wide treatment. Defendants opposed the motion; plaintiffs have filed a reply brief and further supporting testimony from Dr. Sunding. The motion is currently pending before the Court.

### III.     SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS

Each of the settlements was the product of confidential, arms-length negotiations and includes both monetary relief for the class and cooperation in EUCPs' litigation against the non-settling defendants.

### A.     Pilgrim's Settlement

Negotiations between EUCPs and Pilgrim's took over six months and required the assistance of an experienced mediator, Judge Daniel Weinstein (ret.). EUCPs first participated in a mediation session before Judge Weinstein on February 4, 2020, but were unable to reach agreement. Scarlett Decl., ¶ 4. Discussions continued between the parties, albeit unsuccessfully over the spring of 2020. was Additional mediation sessions were held on June 14 and June 18, 2021, still without success. On June 23, 2021, however, the parties finally reached agreement as to the settlement amount, but continued negotiations regarding the cooperation provisions. *Id*., ¶ 5. These were agreed to on July 28, 2021. *Id*. The final settlement agreement was signed on July 8, 2021. *Id*. & Ex. A.

The settlement provides that Pilgrim's will pay $75.5 million ($75,500,000) into a settlement fund that will be used to compensate the EUCP class and cover litigation fees and

expenses, including the cost of notifying class members and administering the settlement. *Id.*, Ex. A, ¶¶ 6-9. Lead Counsel believe this sum is fair and reasonable in light of Pilgrim's market share of class products, and the significant cooperation Pilgrim's agreed to provide, including:

- Up to three then-current Pilgrim's employees as live witnesses at trial;

- An agreement not to oppose the depositions of eight specified individuals;

- Assurances that Pilgrim's will "respond to EUCPs' questions and otherwise assist EUCPs to understand structured data produced by Pilgrim's";

- An agreement to "to use reasonable efforts to authenticate documents and/or things produced in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations, affidavits, depositions, hearings and/or trials as may be necessary for the Action"; and

- An agreement to meet with EUCPs for 7 hours and proffer a "reasonably detailed description of the principal facts known to Settling Defendants that are relevant to the alleged conduct at issue in the Action, including facts previously provided to the DOJ or any other U.S. government investigative authority in response to subpoenas or otherwise relating to bid-rigging or price fixing involving Broilers."

*Id.*, Ex. A, ¶ 10. In exchange, EUCPs agree to release:

> any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any member of the Settlement Class has objected to the Settlement Agreement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now have, or hereafter can, shall, or may ever have, that exist as of the date of the order granting Preliminary Approval, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, losses, damages, and the consequences thereof that have been asserted, or could have been asserted, under federal or state law in any way arising out of or relating in any way to the indirect purchase of Broilers produced, processed or sold by Pilgrim's Released Parties or any of the Defendants or their co-conspirators, and purchased indirectly by the Releasing Parties (the "Released Claims").

*Id.*, Ex. A, ¶ 5(b).

EUCPs' settlement agreement with Pilgrim's refers to a judgment sharing agreement among certain Defendants. This judgment sharing agreement provides that the remaining Defendants will not be jointly and severally liable for damages that reflect a settling Defendant's share of damages. The members of this judgment sharing agreement previously agreed how they would allocate each defendant's share of liability based on their respective sales. Because of this judgment sharing agreement, if EUCPs are awarded damages and final judgment, Pilgrim's portion of the damages would be removed from the calculation of the award. *Id.*, Ex. A, ¶ 38.[6]

**B.    Mar-Jac's Settlement**

EUCPs reached agreement with Mar-Jac shortly after the agreement with Pilgrim's. As the smallest defendant in the EUCP case, Mar-Jac represents only approximately 0.20% of the market for the EUCP class. EUCPs gave Mar-Jac a demand of $1 million in the fall of 2020. After reaching agreement with Pilgrim's, EUCPs indicated the demand would only be available for a short period of time (in order to maximize the efficiencies of a combined notice with the other settlements). An agreement in principle was reached on July 26, 2021 on the material terms of the settlement, with the final settlement agreement being signed on July 28, 2021. *Id.*, ¶ 8 & Ex. B.

The settlements provide that Mar-Jac will pay $1 million ($1,000,000) into a settlement fund that will be used to compensate the EUCP class and cover litigation fees and expenses, including the cost of notifying class members and administering the settlement. *Id.*, ¶ 9 & Ex. B, § II.B(1). Lead Counsel believe this sum is fair and reasonable in light of Mar-Jac's market share of class products, and the cooperation it agreed to provide in the form of "reasonable efforts to provide a stipulation, declarations, or affidavits relating to the authentication or foundation for

---

[6] The settlement with Pilgrim's may be terminated in the unlikely event that more than 500,000 potential class members "timely and validly exclude themselves from the Settlement Class." *Id.*, Ex. A, ¶ 19.

admissibility of documents, if it reasonably can do so in good faith and if reasonably requested by Plaintiffs in connection with the action." *Id.*, Ex. B, § II.B(1)(d).

In exchange, EUCPs agree to release:

> any and all Claims asserted and any and all existing or potential claims, demands, actions, suits, causes of action, upon any theory of law or equity, whether class, individual, or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties (defined below), or each of them, ever had, now have, or hereafter can, shall, or ever may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated, claims, demands, actions, suits, causes of action, injuries, damages or other relief, arising from or in connection with any act or omission through the date of Preliminary Approval, relating to or referred to in the Action or arising from the factual predicate of the Litigation.

*Id.*, Ex. B, § 1.B (25). The released claims "do not include claims asserted against any other Defendant or against any Unrelated Co-Conspirator." *Id.*, Ex. B, § I.B(26). The settlement with Mar-Jac also includes a release of damages under a judgment sharing agreement.

## IV.   ARGUMENT

### A.   The Court Should Preliminarily Approve the Settlements.

"It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."[7] However, Courts must review class action settlements to ensure that they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

"The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible

---

[7] *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312 (7th Cir. 1980)), *overruled on other grounds, Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Internal citations and quotation marks omitted throughout the brief unless otherwise indicated.

approval."[8] In other words, the Court must consider whether it "will likely be able to" approve the settlement as fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(B)(i); *see* Fed. R. Civ. P. 23(e)(2).

EUCPs' agreements with the current Settling Defendants are fair, reasonable, and adequate. A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."[9] As explained above, each of the settlements here was the result of arm's length negotiations over several months, which took place after EUCPs (working with other plaintiffs) collected over eight million documents and deposed more than 180 witnesses. The settlements should therefore be accorded a presumption of fairness.

Moreover, "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Class representatives have all prepared and sat for depositions and worked diligently to serve the interests of the class. Scarlett Decl., Ex. C (compilations of class representative declarations). The settlements provide "adequate" relief for the class, in accordance with Fed. R. Civ. P. 23(e)(2)(C). Pilgrim's represents approximately 21.5% of market share for EUCP class products, while Mar-Jac represents only 0.2% of the EUCP market. Scarlett Decl., ¶ 12. So the $76.5 million in settlements equates to $3.6 million per point of market share—putting the value of this case over $360 million at this stage in the litigation. And, in addition to the financial compensation, the cooperation that EUCPs have secured from the settlements will bolster EUCPs' claims against the twelve non-settling defendants. EUCPs have also identified a reasonable method of providing notice and distributing relief to class members. Finally, the

---

[8] *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

[9] *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07 Civ. 2898, 09 Civ. 2026, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012)).

proposed settlements "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Funds will be awarded based on the amount of class products purchased.

**B.     The Court Should Certify the Proposed Settlement Class.**

The Mar-Jac, Tyson, George's, Peco and Fieldale settlements each propose the same Settlement Class as found in the EUCPs' Fifth Consolidated Amended Class Action Complaint, dated Aug. 7, 2020:

> All persons and entities who indirectly purchased fresh or frozen raw chicken (defined as whole birds (with or without giblets), whole cut-up birds purchased within a package, or "white meat" parts including breasts and wings (or cuts containing a combination of these), but excluding chicken that is marketed as halal, kosher, free range, or organic) from Defendants or alleged co-conspirators for personal consumption, where the person or entity purchased in California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Rhode Island (after July 15, 2013), South Carolina, South Dakota, Tennessee, Utah, and Wisconsin from January 1, 2009 (except for Rhode Island, which is from July 15, 2013) to July 31, 2019.[10]

The Pilgrim's settlement covers the same class, but has a class period ending on December 31, 2020.[11] The Court preliminarily approved this settlement class in connection with the earlier settlements. ECF No. 4451. The slightly longer period of the Pilgrim's settlement does nothing to change this analysis. This Settlement Class satisfies all the requirements of Rule 23.

---

[10] Declaration of Shana E. Scarlett in Support of Motion for Preliminary Approval of Settlement Agreements Between End-User Consumer Plaintiffs and Tyson, Fieldale, Peco Foods and George's Defendants, ECF No. 4377-1, Ex. A at 15-16; Ex. B at 15; Ex. C at 15; Ex. D at 18-19.

[11] Scarlett Decl., Ex. A at ¶ 5.

1.      **The proposed settlement class satisfies Rule 23(a).**

a.      **Numerosity**

The numerosity requirement of Rule 23(a)(1) is satisfied where joinder of all putative class members is "impracticable."[12] Generally, a class of forty or more plaintiffs is sufficient to satisfy the numerosity requirement.[13] As explained in the motion for class certification, EUCPs are seeking to certify a class of millions of chicken consumers, which clearly meets this bar. *See* EUCPs' Motion for Class Certification (Class Cert. Mot.) at 20 (ECF No. 3971).

b.      **Commonality**

There are also "questions of law or fact common to the [EUCP] class." Fed. R. Civ. P. 23(a)(2). Commonality exists where plaintiffs' claims depend on a "common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[14] EUCPs are relying on several common contentions, including that: (1) defendants conspired to stabilize the price and supply of chicken sold in the United States; and (2) this collusion cause the plaintiff class to pay overcharges for chicken. *See* Class Cert. Mot. at 20-21.

c.      **Typicality**

Under Rule 23(a), typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). The typicality requirement "directs the district court to focus on whether the named representatives' claims have

---

[12] *Prac. Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 849 (N.D. Ill. 2018).

[13] *Id.*

[14] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

the same essential characteristics as the claims of the class at large."[15] A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members."[16] Here, typicality is satisfied because EUCPs' claims are based on the same antitrust conspiracy. *See* Class Cert. Mot. at 21-22.

### d. Adequacy

The proposed named plaintiffs are adequate representatives of the proposed class. Fed. R. Civ. P. 23(a)(4). The adequacy requirement is satisfied where the named representatives have a sufficient interest in the outcome of the case to ensure vigorous advocacy, and do not have interests antagonistic to those of the class.[17] The named plaintiffs have no material conflict with other class members. Each purchased chicken from grocery stores, unaware of the existence of defendants' alleged agreement to suppress the price and supply of chicken. No one individual class member could avoid the claimed overcharges. Each named plaintiff is aligned with the class in establishing defendants' liability and maximizing class-wide damages. *See* for Class Cert. Mot. at 22.

### 2. The proposed settlement class satisfies Rule 23(b)(3).

Under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both of these requirements are satisfied here.

---

[15] *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993).

[16] *De La Fuente v. Stokely-Van Camp, Inc*., 713 F.2d 225, 232 (7th Cir. 1983); *see also In re Rubber Chems. Antitrust Litig*., 232 F.R.D. 346, 351 (N.D. Cal. 2005) ("plaintiffs and all class members alleg[e] the same antitrust violations by defendants").

[17] *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D. Ill. 2009).

First, common questions of law or fact predominate over individual questions. "[C]ommon questions can predominate if a common nucleus of operative facts and issues underlies the claims brought by the proposed class."[18] Here, a series of common questions lies at the heart of all EUCPs' claims, including: whether defendants conspired to stabilize the price and supply of chicken (market manipulation); whether defendants' information exchange was anticompetitive; whether defendants occupy a relevant antitrust market and collectively wielded power in that market; whether defendants' conspiracy caused market-wide supra-competitive chicken prices; and whether higher chicken prices were passed on to chicken consumers. *See* Class Cert. Mot. at 23-43.

Second, a class action is the superior mechanism for trying plaintiffs' claims. "Rule 23(b)(3)'s superiority requirement . . . is comparative: the court must assess efficiency [of a class action] with an eye toward other available methods."[19] Rule 23 instructs that the matters pertinent to this inquiry include: (a) class members' interests in individually controlling the prosecution of separate actions; (b) whether other litigation exists concerning this controversy; (c) the desirability of concentrating the litigation in this forum; and (d) any difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). In this case, the first three factors weigh heavily in favor of class certification: class members have "little economic incentive to sue individually based on the amount of potential recovery involved, there are no known existing individual lawsuits [filed by end-user consumers], and judicial efficiency is served by managing claims in one proceeding."[20] *See* Class Cert. Mot. at 43-44.

---

[18] *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012); *see also Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 925 (7th Cir. 2016).

[19] *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015).

[20] *Cirque du Soleil*, 301 F. Supp. 3d at 856.

At the same time, there are no difficulties in managing this settlement class as a class action. Litigating the claims of the class members from different states in this Court does not present manageability concerns because all class members purchased chicken in states that have an antitrust or consumer statute that tracks the federal Sherman Act, ensuring that the core questions of liability will be proved with common evidence. *See id*. Indeed, "[c]onfronted with a request for settlement-only class certification," the Supreme Court directs that a "district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial."[21]

Finally, the proposed Settlement Class is ascertainable. Here, a class member may self-identify simply by reviewing the class definition. Moreover, as explained in the next section, EUCPs can use grocery store data as an additional mechanism to help identify class members.

**C.     The Court Should Direct Notice to the Settlement Class.**

        **1.     EUCPs' proposed form of class notice should be approved because it clearly and fairly apprises class members of the nature of this action and the scope of their rights.**

In any class action certified under Rule 23(b)(3), the Court must direct notice of class certification to class members using the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The class notice must "clearly and concisely state in plain, easily understood language" the following: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney; (v) that the court will exclude from the class any member who requests exclusion; (vi)

---

[21] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members. *Id.*

Because class members are bound by the results of a certified Rule 23(b)(3) class action unless they affirmatively opt out, this class notice is required as a matter of constitutional due process to protect the rights of the absent class members.[22] The notice of settlement must be sufficiently detailed to permit class members to determine the relevant deadlines for submitting a claim and opting out of the class or objecting to the settlement, as well as the claims that the settlement would release.[23]

EUCPs propose two forms of notice: a more abbreviated email notice, which will be sent directly to class members, and a more detailed notice, which will be posted on the website in the form of frequently asked questions. Schachter Decl., Exs. C & D. Both of these forms of notice meet the requirements of Rule 23 and follow the model class notice guidelines set forth in leading class action treatises.[24] These notices contain all of the information necessary to allow class members to make informed decisions, including the information required by Rule 23(c)(2)(B).

In clear and simple language, the proposed notices state the class definition, a brief overview of the case, the procedure for opting out of the class or objecting, and the right of any class member who does not opt out to appear at the fairness hearing. And the proposed website notice provides contact information for the claims administrator and Class Counsel should class

---

[22] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974); *Burns v. Elrod*, 757 F.2d 151, 156 (7th Cir. 1985) ("Due process requires that class members generally must receive notice of the terms of settlement.").

[23] *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 591 (N.D. Ill. 2011).

[24] *See* 3 Newberg on Class Actions § 8:31 at 253-59 (4th ed. 2002); Certification Notice, Ann. Manual Complex Lit. § 21.311 (4th ed.).

members require additional information. So the proposed notices plainly satisfy the requirements of due process and the specific requirements of Rule 23(c)(2)(B).[25]

Thus, EUCPs respectfully request that the Court approve these modified email and web notices of settlement—which reflect EUCPs' settlements with both the earlier and current Settling Defendants—to ensure an efficient notice program that minimizes administrative costs.[26]

### 2. The proposed manner of notice dissemination is reasonable and represents the best notice practicable under the circumstances.

In a class action certified under Rule 23(b)(3), the rule provides for "the best notice practicable under the circumstances," including "individual notice to all members who can be identified through reasonable effort."[27] Notice that is mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes the best notice practicable.[28] But notice may also be by electronic means. Fed. R. Civ. P. 23(c)(2)(B). And "[w]hen that is not possible, courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process."[29]

Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each individual actually receive notice.[30] And while direct mail notice is

---

[25] *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 232 (N.D. Ill. 2016) (approving notices with form and content that is straightforward and satisfied the Federal Judicial Center's guidelines).

[26] The forms of notice proposed here are the same as those proposed in EUCPs' motion to direct notice as to the earlier Settling Defendants, except that those proposed here include notice of all settlements to date between EUCPs and Defendants.

[27] *Eisen*, 417 U.S. at 173.

[28] *Id.* at 176.

[29] *Mullins*, 795 F.3d at 665-66; *Hughes v. Kore of Indiana Enters., Inc.*, 731 F.3d 672, 676-77 (7th Cir. 2013).

[30] *Eisen*, 417 U.S. at 176; *see also Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 144 (N.D. Ill. 2010).

typically considered the best form of notice under Rule 23(c)(2)(B), courts routinely approve notice programs that do not include direct mail notice when such notice is impracticable, but include other approaches to notice, tailored to the relevant circumstances and designed to reach class members.[31] Indeed, the recent amendments to Rule 23(c)(2)(B) that went into effect on December 1, 2018, codify what the caselaw has long held and puts notice by "electronic means, or other appropriate means"—such as notice via email—on an equal footing as notice by "United States mail."

EUCPs propose a state-of-the-art notice program designed by an experienced notice and claims administrator, A.B. Data. Schachter Decl., Exs. A & B. The notice program includes (1) direct email notice; (2) publication notice, including (3) banner ads, (4) sponsored internet search listings, and (5) a media information release; (6) a case-specific website, and (7) a case-specific toll-free number. *Id*.

**Direct Email**. Co-Lead Counsel have collected over 32 million email addresses for class members. Costco and potentially other retail grocery and club stores will produce additional contact information shortly. EUCPs have moved to compel contact information for class members from Target as well, a direct action plaintiff in this case. This motion is now under submission before Judge Gilbert. A.B. Data will send individual email notice to each potential class member whose email addresses are known. Schachter Decl., ¶ 11. A.B. Data will perform several tasks to maximize deliverability and avoid SPAM and junk filters. *Id.* These tasks include running the list of recipient email addresses through a deliverability analysis to ensure the email addresses are valid, as well as working with A.B. Data's contacts at the email service providers to develop

---

[31] *See, e.g.*, *Shurland*, 271 F.R.D. at 144-145; *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 351 (N.D. Ill. 2010).

sending strategies to achieve optimal deliverability. *Id.* A.B. Data will also incorporate certain best practices to maximize deliverability, such as ensuring no inclusion of words or phrases known to trigger SPAM or junk filters, not including attachments to the email, and sending the emails in tranches over a period of days or weeks. *Id.*

The email notice will also include the case specific website, where class members will have access to the updated website (long-form) notice, exclusion and objection deadlines, the Settlement Agreements, and other information about the settlements. *Id.*, ¶ 12. The proposed email notice is included as Exhibit C to the Schachter Declaration. The more detailed long-form web notice will be available for download on the case-specific website. The proposed website notice is included as Exhibit D to the Schachter Declaration.

**Publication Notice**. To supplement the direct notice program, EUCPs also propose a publication notice program. The publication plan includes paid media and earned media components. A.B. Data proposes using highly targeted advertisements, specifically delivered to the social media feeds of potential Settlement Class Members using their known contact information, and to digital users that have expressed an interest in information relevant to the subject of this case, such as chicken products. *Id.*, ¶15. Moreover, the notices have been designed to be highly visible and noticeable. A.B. Data will place the notices in "premium positioning" on websites and social media sites. *Id.*, ¶13. Each of the following elements of publication notice has been specifically designed to be readable, noticeable, targeted, and widely disseminated to sources calculated to reach potential Settlement Class Members. *Id.*

**Banner Advertisements**. Digital banner and social media newsfeed advertisements, targeted specifically to Settlement Class Members, will provide the Class with additional opportunities to be apprised of the settlements and their rights. These banner advertisements and

social media newsfeed advertisements will appear in multiple formats across desktop and mobile devices in both English and Spanish. *Id.*, ¶¶ 14-17.

The banner advertisements will be placed via *Google Display Networks* and *Google AdWords*, and on the social media platforms *Facebook*, *Instagram*, and *YouTube*, leading social media sites in the United States. *Id.*, ¶ 14. A case-specific Facebook page will also be created as a landing page for the links in the Facebook and Instagram newsfeed ads. *Id.*, ¶ 15. A.B. Data also proposes displaying these banner advertisements for 30 days, which is expected to generate a minimum of 340 million impressions. *Id.*, ¶¶ 13, 19. Clicking on any such banner notice will bring the reader to the case website where they can obtain detailed information about the case. *Id.*, ¶ 14. An example of a proposed banner notice is included as Exhibit E to the Schachter Declaration.

**Sponsored Internet Search Listings**. Additionally, sponsored search listings, directing Settlement Class Members to the case website, will be acquired on Google, the most visited search engine. *Id.*, ¶ 18. When identified target phrases and keywords relevant to the action are used in searches on Google, links to the Settlement website will appear on the search result pages. *Id.* This earned media component will be available to Settlement Class Members across the U.S. and will assist them in finding and accessing the case website.

**Informational Release**. As a further supplement to the above-described elements, an "Informational Release" will be issued to approximately 10,000 newsrooms, including those of print, broadcast, and digital websites across the United States. *Id.*, ¶ 21. The news release will also be translated and published to *PR Newswire*'s U.S. Hispanic media contacts and Hispanic news websites. *Id.* News about the Settlement will also be sent via Twitter to the followers of *PR Newswire* and A.B. Data. *Id.* While A.B. Data cannot guarantee that any news stories will result

from these efforts, if they do, Settlement Class Members will have additional opportunities to learn about their rights.

**Settlement Website**. A.B. Data has implemented a case-specific website for this matter, www.overchargedforchicken.com. *Id.*, ¶ 24. The website notice, which contains a detailed summary of the terms of the Settlement, will be posted prominently. *Id.* The website will also provide, among other things, a summary of the case, all relevant documents, important dates, and any pertinent updates concerning the litigation or the settlement process. *Id.* The website will be secure, with an "https" designation. Google Analytics and Facebook Pixel tracking codes will also be placed on the website to ensure accurate optimization with the digital and social media ads. *Id.*

**Toll-Free Number and Mailing Address**. A.B. Data will also implement and maintain a toll-free telephone number with an automated interactive voice response system. *Id.*, ¶ 23. The automated interactive voice response system will present callers with a series of choices to hear prerecorded information concerning the Settlement. *Id.*

In short, the proposed notice plan satisfies the requirements of Rule 23 and due process, will provide ample notice to potential members of the Settlement Class, and is the best notice practicable under the circumstances. *Id.*, ¶ 28. The Court should approve this manner of notice dissemination with respect to all EUCPs' settlements to date.

### D.     The Court Should Approve the Plan of Allocation.

Courts evaluate claims processes to ensure that they are fair and reasonable and not so burdensome as to discourage class members from submitting claims.[32] Here, the claims form is simple to complete, in order to encourage the filing of claims. Schachter Decl., Ex. F. Class members will be given the opportunity to submit their contact information and the number of

---

[32] *See Schulte*, 805 F. Supp. 2d at 591.

qualifying purchases through the website (or through hard copy claims forms) using a brief, simple set of questions. *Id.*, ¶ 25. No documentation is required unless there is a potentially suspicious number of purchases or amount of costs claimed. *Id.*

Moreover, the distribution plan provides for efficient and cost-effective disbursement of the settlement funds to class members. Settlement Class Members must submit a timely, valid claim through the settlement website or by mail to be eligible to receive payment. Payments will be sent electronically to each eligible claimant using the email address provided on the Claim Form. At the time of distribution, each eligible claimant will be provided with several electronic options to instantaneously receive their payment, such as a virtual debit card, PayPal, or redemption through other ecommerce platforms. This will reduce administrative costs and provide claimants with a convenient and efficient way to receive their funds without having to deposit a check or visit a bank. Settlement Class Members can also request a traditional paper check payment by mail. *Id.*, ¶¶ 25-26. This comports with current best practices.

Thus, EUCPs respectfully request that the Court approve the proposed claim form, as well as the proposed plan of plan of allocation, with respect to the settlements between EUCPs and both the earlier and current Settling Defendants.[33]

### E. The Court Should Approve the Proposed Schedule.

EUCPs propose the following schedule through final approval. The schedule provides for a short period (30 days) to allow for modifications to the website, and preparation of email notice. This is followed by a 60-day period for class members to receive and review information relating to the settlements. Co-Lead Counsel's motion for attorneys' fees, costs and service awards for the

---

[33] In their motion to direct notice as to the earlier Settling Defendants, EUCPs did not propose a claim form or plan of allocation.

named class representatives will be filed 14 days before the objection and exclusion deadline. EUCPs ask that this Court set a final approval hearing approximately 130 days from the date it grants this order directing notice. Co-Lead Counsel will file the motion for final approval 14 days before that hearing and respond to any objections at that time. The claims period is proposed to remain open until December 2022, after which the settlement proceeds would be distributed to the Settlement Class, but this would be adjusted if future settlements are reached or other events required an extension. The following summarizes the proposed schedule:

| EVENT | DATE |
|---|---|
| Notice campaign begins through direct email and implementation of publication notice campaign | 30 days from order directing notice |
| Last day for Co-Lead Counsel to move for attorneys' fees, expenses, and service awards for named representatives | 76 days from order directing notice |
| Last day for Settlement Class Members to request exclusion from the Settlement Class to object to settlement, and to file notices to appear at the final approval hearing | 90 days from order directing notice |
| Co-Lead Counsel to provide Settling Defendants with a list of all persons and entities who have timely and adequately requested exclusion from the Settlement Class | 97 days from order directing notice |
| Co-Lead Counsel shall file a motion for final approval of the settlement and all supporting documents, as well as responses to any objections to the settlement or attorneys' fees | 14 days before the Final Approval Hearing |
| Final Approval Hearing, and Hearing on Request for Attorneys' Fees and Expenses | 130 days from order directing notice, or as soon thereafter as may be heard by the Court |
| Distribution to Settlement Class | TBD after final approval has been granted and any objections and/or appeals have been resolved |

## V.   CONCLUSION

For these reasons, EUCPs respectfully request that the Court preliminary approve the

settlement agreements with Pilgrim's and Mar-Jac, certify the settlement class, and direct notice

in the form and manner, and on the schedule, proposed here.


DATED: August 5, 2021                     HAGENS BERMAN SOBOL SHAPIRO LLP

                                          By s/ Steve W. Berman
                                             STEVE W. BERMAN

                                          Breanna Van Engelen
                                          1301 Second Avenue, Suite 2000
                                          Seattle, WA 98101
                                          Tel: (206) 623-7292
                                          steve@hbsslaw.com
                                          breannav@hbsslaw.com

                                          Shana E. Scarlett
                                          Rio R. Pierce
                                          HAGENS BERMAN SOBOL SHAPIRO LLP
                                          715 Hearst Avenue, Suite 202
                                          Berkeley, CA 94710
                                          Tel: (510) 725-3000
                                          shanas@hbsslaw.com
                                          riop@hbsslaw.com

                                          Brent W. Johnson
                                          Benjamin D. Brown
                                          Daniel H. Silverman
                                          Alison Deich
                                          COHEN MILSTEIN SELLERS & TOLL, PLLC
                                          1100 New York Ave. NW
                                          Suite 500, West Tower
                                          Washington, DC 20005
                                          Tel: (202) 408-4600
                                          bjohnson@cohenmilstein.com
                                          bbrown@cohenmilstein.com
                                          dsilverman@cohenmilstein.com
                                          adeich@cohenmilstein.com

                                          *Proposed Interim Lead Counsel for End-User
                                          Consumer Indirect Purchaser Plaintiffs Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on August 5, 2021, a true and correct copy of the foregoing was electronically filed by CM/ECF, which caused notice to be sent to all counsel of record.

By     s/ Steve W. Berman
             STEVE W. BERMAN