# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
|  | Honorable Thomas M. Durkin |
|  | Magistrate Judge Jeffrey T. Gilbert |
| This Document Relates To: |  |
| *All End-User Consumer Plaintiff Actions* |  |

## DECLARATION OF SHANA E. SCARLETT IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENTS BETWEEN END-USER CONSUMER PLAINTIFFS AND DEFENDANTS PILGRIM'S AND MAR-JAC AND TO DIRECT NOTICE TO THE SETTLEMENT CLASS

I, Shana E. Scarlett, state under oath, as follows:

1.      I am a partner at Hagens Berman Sobol Shapiro LLP. Hagens Berman is lead counsel for the End-User Consumer Plaintiffs (EUCPs). I have full knowledge of the matters stated herein and could and would testify thereto.

2.      EUCPs seek preliminary approval of settlements with two additional defendant families—Pilgrim's Pride Corporation (Pilgrim's) and the Mar-Jac Defendants[1] (Mar-Jac)—that provide a total of $76.5 million in relief to the EUCP class. These settlements were negotiated at arm's length.

3.      While negotiating these settlements, counsel for EUCPs have been engaged in rigorous discovery. Working with counsel representing the other classes, EUCPs have collected over eight million documents and taken over 180 depositions of Defendants' employees and third parties, and collected and analyzed voluminous structured data. In addition, all current class representatives sat for depositions.

### A.      The Pilgrim's Settlement

4.      Counsel for EUCPs and Pilgrim's participated in a mediation session before Judge Daniel Weinstein (ret.) on February 4, 2020, but were unable to reach agreement. Several weeks later, the parties decided to continue their mediated negotiation within settlement brackets proposed by Judge Weinstein, but the parties were unable to reach agreement.

5.      On June 14 and June 18, 2021, the parties engaged in additional mediation sessions before Judge Weinstein, but were still unable to reach agreement. On June 23, 2021, the parties finally reached agreement as to the settlement amount, but continued negotiations

---

[1] The Mar-Jac Defendants are Mar-Jac Poultry, Inc.; Mar-Jac AL/MS, Inc.; Mar-Hac Holdings, Inc; Mar-Jac Poultry AL, LLC; Mar-Jac Poultry MS, LLC; and Mar-Jac Poultry, LLC.

regarding the cooperation provisions. These were agreed to on July 28, 2021. The final settlement agreement was signed on July 28, 2021.

6.     The settlement provides that Pilgrim's will pay $75.5 million ($75,500,000) into a settlement fund that will be used to compensate the EUCP class and cover litigation fees and expenses, including the cost of notifying class members and administering the settlement. Lead Counsel believe this sum is fair and reasonable in light of Pilgrim's market share of class products, and the cooperation they agreed to provide. The cooperation that EUCPs have secured from the settlements will bolster EUCPs' claims against the twelve non-settling defendants.

7.     A true and accurate copy of the settlement agreement with Pilgrims' is attached hereto as **Exhibit A**.

### B.     The Mar-Jac Settlement

8.     EUCPs reached agreement with Mar-Jac shortly after the agreement with Pilgrim's. As the smallest defendant in the EUCP case, Mar-Jac represents only approximately 0.20% of the market for the EUCP class. EUCPs gave Mar-Jac a demand of $1 million in the fall of 2020. After reaching agreement with Pilgrim's, EUCPs indicated the demand would only be available for a short period of time (in order to maximize the efficiencies of a combined notice with the other settlements). An agreement in principle was reached on July 26, 2021 on the material terms of the settlement, with the final settlement agreement being signed on July 28, 2021.

9.     The settlements provide that Mar-Jac will pay $1 million ($1,000,000) into a settlement fund that will be used to compensate the EUCP class and cover litigation fees and expenses, including the cost of notifying class members and administering the settlement. Lead Counsel believe this sum is fair and reasonable in light of Mar-Jac's market share of class

products, and the cooperation it agreed to provide. The cooperation that EUCPs have secured

from the settlements will bolster EUCPs' claims against the twelve non-settling defendants.

10.     A true and accurate copy of the settlement agreement with Mar-Jac is attached

hereto as **Exhibit B**.

C.     <strong>Class Representative Approval</strong>

11.     Each of the EUCP class representatives has independently reviewed these two

settlements and believes them to be in the best interests of the class. True and accurate copies of

their declarations in support of the Pilgrim's settlement are attached hereto as **Exhibit C**.

D.     <strong>Market Share</strong>

12.     The difference in settlements reflect each defendant's share of the market of

EUCP class products, as derived from Table 13 of Dr. Sunding's declaration in support of

EUCPs' motion for class certification. *See* ECF No. 4127-1 at 180-81. Pilgrim's represents

approximately 21.5% of market share for EUCP class products, while Mar-Jac represents only

.20% of the EUPC market. So the $76.5 million in settlements equates to $3.6 million per point

of market share—putting the value of this case over $360 million at this stage in the litigation.

I certify under penalty of perjury that the foregoing is true and correct to the best of my

knowledge.

DATED:  August 5, 2021

_s/ Shana E. Scarlett_

SHANA E. SCARLETT

# EXHIBIT A

**CONFIDENTIAL**
**FEDERAL RULE OF EVIDENCE 408**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION* | Case No. 1:16-cv-08637 |
| This Document Relates To: | |
| End-User Consumer Indirect Purchaser Actions | |

## LONG-FORM SETTLEMENT AGREEMENT BETWEEN
## END-USER CONSUMER INDIRECT PURCHASER CLASS PLAINTIFFS AND
## PILGRIM'S PRIDE CORPORATION

THIS SETTLEMENT AGREEMENT ("Settlement Agreement") is made and entered into as of the 28th day of July, 2021 ("Execution Date") by and between the End-User Consumer Indirect Purchaser Plaintiffs ("EUCPs"),[1] through Interim Lead Counsel[2] for the proposed Settlement Class (as hereinafter defined), and Pilgrim's Pride Corporation, and all of its predecessors; successors; assigns; affiliates; and any and all past, present, and future parents, owners, subsidiaries, divisions, departments (collectively referred to as "Settling Defendant" or "Pilgrim's") in the above-captioned action (the "Action"). EUCPs, on behalf of the Settlement Class, and Pilgrim's are referred to herein collectively as the "Parties" or individually as a "Party."

---

[1] As used herein, "EUCPs" shall mean: Linda Cheslow, Abraham Drucker, Ian Adams, Marilyn Stangeland, Daniel M. Percy, Kristin Davis, Leslie Weidner, David Weidner, Matthew Hayward, Dorothy Monahan, Joshua Madsen, Natalie Wilbur, Alison Pauk, Michael Perry, William David Marino, Eric Thomas, Kenneth Cote, Catherine Senkle, Margo Stack, James Flasch, Dina Morris, Dianne Spell, Angela Ashby, Christina Hall, Richard Heftel, and Stephen Holt.
[2] As used herein, "Interim Lead Counsel" shall mean: Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll, PLLC.

CONFIDENTIAL
FEDERAL RULE OF EVIDENCE 408

WHEREAS, EUCPs on behalf of themselves and as representatives of the putative class of similarly situated persons or entities allege in the Action, among other things, that Pilgrim's participated in a conspiracy — with other Defendants in this litigation — from at least January 1, 2009 to the present to fix, raise, maintain, and stabilize the price of Broilers (as hereinafter defined).

WHEREAS, Interim Lead Counsel have been appointed by the Court to represent, on an interim basis, the putative class of end-user consumer indirect purchasers of Broilers (as hereinafter defined);

WHEREAS, the Parties wish to resolve all claims asserted and all claims that could have been asserted against Pilgrim's in any way arising out of or relating in any way to the indirect purchase of Broilers (as hereinafter defined) produced, processed or sold by Pilgrim's or any of the Defendants or their co-conspirators;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations, including mediation with a nationally recognized and highly experienced mediator, on the terms of this Settlement Agreement, and this Settlement Agreement embodies all of the terms and conditions of the settlement;

WHEREAS, EUCPs have concluded, after preliminary investigation of the facts and after considering the circumstances and the applicable law, that it is in the best interests of EUCPs to enter into this Settlement Agreement with Pilgrim's to avoid the uncertainties of further complex litigation, and to obtain the benefits described herein for the Settlement Class (as hereinafter defined), and, further, that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of EUCPs and the Settlement Class;

**CONFIDENTIAL**
**FEDERAL RULE OF EVIDENCE 408**

WHEREAS, Pilgrim's wishes to avoid the costs, expenses, and uncertainties of this complex litigation;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the EUCPs be settled and compromised, and dismissed on the merits with prejudice as to Pilgrim's subject to Court approval:

1. <u>General Definitions</u>. The terms below and elsewhere in this Settlement Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Settlement Agreement.

    a. "Pilgrim's Released Parties" means Pilgrim's and Pilgrim's' former, current and future parents, subsidiaries and affiliates, and any of the respective former, current and future, direct or indirect trustees, directors, officers, shareholders, managers, members, attorneys, equity holders, agents, insurers and employees of Pilgrim's. Notwithstanding the foregoing, "Pilgrim's Released Parties" does not include any Defendant other than Pilgrim's named by EUCPs in the Action, either explicitly or as a third-party beneficiary.

    b. "Broilers" means fresh or frozen raw chicken (defined as whole birds (with or without giblets), whole cut-up birds purchased within a package, or "white meat" parts including breasts and wings (or cuts containing a combination of these), but excluding chicken that is marketed as halal, kosher, free range, or organic).

CONFIDENTIAL
FEDERAL RULE OF EVIDENCE 408

c.    "Complaint" means the EUCPs' Fifth Consolidated Amended Class Action Complaint, Aug. 7, 2020 (ECF Nos. 3747 (Redacted) and 3748 (Sealed)).

d.    "Court" means the United States District Court for the Northern District of Illinois.

e.    "Defendants" means those defendants named in the Complaint.

f.    "Escrow Account" means the escrow account established with the escrow agent to receive and maintain funds contributed by Pilgrim's for the benefit of the Settlement Class.

g.    "Escrow Agreement" means that certain agreement between the escrow agent that holds the Settlement Fund and EUCPs (by and through Interim Lead Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Settlement Class, as set forth in Paragraphs 8 and 9 below.

h.    "Final Approval" means an order and judgment by the Court which finally approves this Settlement Agreement and the settlement pursuant to Federal Rule of Civil Procedure 23 and dismisses Pilgrim's with prejudice from the Action.

i.    "Final Judgment" means the first date upon which both of the following conditions shall have been satisfied: (a) Final Approval; and (b) either (1) thirty days have passed from the date of Final Approval with no notice of appeal having been filed with the Court; or (2) Final Approval has been affirmed by a mandate issued by any reviewing court to which any appeal has been taken, and any further petition for review (including certiorari) has

CONFIDENTIAL
FEDERAL RULE OF EVIDENCE 408

been denied, and the time for any further appeal or review of Final Approval has expired.

j.    "Preliminary Approval" means an order by the Court to preliminarily approve this Settlement Agreement pursuant to Federal Rule of Civil Procedure 23.

k.    "Released Claims" shall have the meaning set forth in Paragraph 14 of this Settlement Agreement.

l.    "Releasing Party" or "Releasing Parties" shall refer individually and collectively, to the Settlement Class and all members of the Settlement Class, including the EUCPs, each on behalf of themselves and their respective predecessors and successors; their current and former, direct and indirect parents, subsidiaries and affiliates; their present and former shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, attorneys, insurers, heirs, executors, administrators, devisees, representatives; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and any of their past, present and future agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions; and also means, to the full extent of the power of the signatories hereto to release past, present and future claims, persons or entities acting in a private attorney general, qui tam, taxpayer or any other capacity, whether or not any of them participate in this Settlement Agreement. As

CONFIDENTIAL
FEDERAL RULE OF EVIDENCE 408

used in this Paragraph, "affiliates" means entities controlling, controlled by or under common ownership or control with, in whole or in part, any of the Releasing Parties.

m.  "Settlement Administrator" means the firm retained to disseminate the Settlement Class Notice and to administer the payment of Settlement Funds to the Settlement Class, subject to approval of the Court.

n.  "Settlement Class" means the class defined in Paragraph 5 below.

o.  "Settlement Class Period" means January 1, 2009 until the date of the order granting Preliminary Approval of the Settlement Agreement.

p.  "Settlement Fund" means $75,500,000 (seventy-five million five hundred thousand U.S. dollars), the amount Pilgrim's shall pay or cause to be paid into an interest-bearing Escrow Account maintained by an escrow agent on behalf of the Settlement Class, pursuant to Paragraphs 8 and 9 below.

2.      The Parties' Efforts to Effectuate this Settlement Agreement.  The Parties will cooperate in good faith and use their best efforts to seek the Court's Preliminary Approval and Final Approval of the Settlement Agreement.

3.      Litigation Standstill.  EUCPs through Interim Lead Counsel shall cease all litigation activities against Pilgrim's related to the pursuit of claims against Pilgrim's in the Action. None of the foregoing provisions shall be construed to prohibit EUCPs from seeking appropriate discovery from non-settling Defendants or co-conspirators or any other person other than Settling Defendant.

4.      Motion for Preliminary Approval.  No later than fourteen (14) days after the Execution Date, EUCPs will move the Court for Preliminary Approval of this settlement. A

**CONFIDENTIAL**
**FEDERAL RULE OF EVIDENCE 408**

reasonable time in advance of submission to the Court, the papers in support of the motion for

Preliminary Approval shall be provided by Interim Lead Counsel to Pilgrim's for its review. To

the extent that Pilgrim's objects to any aspect of the motion, it shall communicate such objection

to Interim Lead Counsel and the Parties shall meet and confer about any such objection. The

Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval and

certification of the Settlement Class.

     5.    Certification of a Settlement Class. As part of the motion for Preliminary Approval

of this settlement, EUCPs shall seek, and Pilgrim's shall take no position with respect to,

appointment of Interim Lead Counsel as Settlement Class Counsel for purposes of this settlement

and certification in the Action of the following Settlement Class for settlement purposes only:

> All persons and entities who indirectly purchased fresh or frozen raw chicken (defined as
> whole birds (with or without giblets), whole cut-up birds purchased within a package, or
> "white meat" parts including breasts and wings (or cuts containing a combination of
> these), but excluding chicken that is marketed as halal, kosher, free range, or organic)
> from Defendants or alleged co-conspirators (as those terms are used in the Complaint) for
> personal consumption, where the person or entity purchased in California, District of
> Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan,
> Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York,
> North Carolina, Oregon, Rhode Island (after July 15, 2013), South Carolina, South
> Dakota, Tennessee, Utah, and Wisconsin from January 1, 2009 (except for Rhode Island,
> which is from July 15, 2013) to December 31, 2020.

     6.    Settlement Class Notices. After Preliminary Approval, and subject to approval by

the Court of the means for dissemination:

          a.    To the extent reasonably practicable, individual notice of this settlement

                shall be mailed, emailed, or otherwise sent and/or published by the

                Settlement Administrator, at the direction of Interim Lead Counsel, to

                potential members of the Settlement Class, in conformance with a notice

                plan to be approved by the Court.

**CONFIDENTIAL**
**FEDERAL RULE OF EVIDENCE 408**

> b.    Neither the Settlement Class, Interim Lead Counsel, nor Pilgrim's shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Settlement Class or obtaining approval of the settlement or administering the settlement. Such fees, costs, or expenses shall be paid solely from the Settlement Fund, subject to any necessary Court approval.
>
> c.    Pilgrim's shall not object to Interim Lead Counsel withdrawing from the Settlement Fund, subject to any necessary Court approval, up to $500,000 to pay the costs for notice and for Preliminary Approval and Final Approval of this Settlement Agreement.
>
> d.    Interim Lead Counsel shall use best efforts to send out notice to the Settlement Class within three (3) months of Preliminary Approval by the Court of the Settlement Agreement. Any costs of notice that Interim Lead Counsel are permitted to withdraw from the Settlement Fund, either pursuant to the Parties' Settlement Agreement or order of the Court, shall be nonrefundable if, for any reason, the Settlement Agreement is terminated according to its terms or is not finally approved by the Court.

7.    <u>Motion for Final Approval and Entry of Final Judgment</u>. If the Court grants Preliminary Approval and certifies the Settlement Class, then EUCPs, through Interim Lead Counsel — in accordance with the schedule set forth in the Court's Preliminary Approval — shall submit to the Court a separate motion for Final Approval of this Settlement Agreement by the Court. A reasonable time in advance of submission to the Court, the papers in support of the motion for Final Approval shall be provided by Interim Lead Counsel to Pilgrim's for its review.

CONFIDENTIAL
**FEDERAL RULE OF EVIDENCE 408**

To the extent that Pilgrim's objects to any aspect of the motion, it shall communicate such objection to Interim Lead Counsel and the parties shall meet and confer about any such objection. The motion for Final Approval shall seek entry of an order and Final Judgment:

  a.   Finally approving the Settlement Agreement as being a fair, reasonable, and adequate settlement for the Settlement Class within the meaning of Federal Rules of Civil Procedure 23, and directing the implementation, performance, and consummation of the Settlement Agreement;

  b.   Determining that the Class Notice constituted the best notice practicable under the circumstances of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

  c.   Dismissing the Action with prejudice as to Pilgrim's in all class action complaints asserted by EUCPs;

  d.   Discharging and releasing Pilgrim's Released Parties from all Released Claims;

  e.   Reserving continuing and exclusive jurisdiction over the Settlement Agreement for all purposes; and

  f.   Determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Pilgrim's shall be final and appealable and entered forthwith.

The Parties shall take all reasonable steps to obtain Final Approval of the Settlement Agreement.

**CONFIDENTIAL**
**FEDERAL RULE OF EVIDENCE 408**

8.     Escrow Account.  The Escrow Account shall be administered by Interim Lead Counsel for the EUCPs and Settlement Class under the Court's continuing supervision and control pursuant to the Escrow Agreement.

9.     Settlement Consideration.  In consideration for the release of Released Claims and the dismissal of the Action, within fourteen (14) business days of the Court's grant of Preliminary Approval, Pilgrim's shall pay or cause to be paid the Settlement Fund into the Escrow Account.

10.     Cooperation.  Cooperation by Pilgrim's is a material term of this Settlement Agreement and shall include the following categories of cooperation.  All cooperation under this Settlement Agreement is subject to approval (as needed) by the U.S. Department of Justice.

a.     To the extent Pilgrim's were to be afforded leniency or conditional leniency with respect to Broilers pursuant to the U.S. Department of Justice's corporate leniency program, or any similar program, Pilgrim's shall cooperate with the EUCPs in a manner that is consistent with the provisions of the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA").

b.     Within twenty-one (21) calendar days after entering into this Settlement Agreement or such other time as the Parties may agree or after any delay requested by the U.S. DOJ, Settling Defendant's counsel shall meet with EUCPs for seven (7) hours, and more if agreed by Pilgrim's and EUCPs, at an agreed upon location and provide at that meeting a reasonably detailed description of the principal facts known to Settling Defendant that are relevant to the alleged conduct at issue in the Action, including facts previously provided to the DOJ or any other government investigative authority in response to subpoenas or otherwise relating to bid-rigging or price fixing involving Broilers.  This meeting will take place at the same time as any meeting with any other plaintiff to which Pilgrim's has agreed to provide similar information.

CONFIDENTIAL
**FEDERAL RULE OF EVIDENCE 408**

       c.      Pilgrim's will use its best efforts to produce up to 3 then-current Pilgrim's employees as witnesses live at trial.

       d.      Pilgrim's shall not oppose or object to the depositions of William Lovette, Clint Rivers, Jayson Penn, Fabio Sandri, Tim Stiller, Roger Austin, Gary Rhodes, and Thomas Lane.

       e.      To the extent that Pilgrim's responds to discovery, produces documents, or provides proffers or other cooperation to other plaintiffs in the *In re: Broilers Antitrust Litigation* it will serve or otherwise provide EUCPs a copy of such materials within 7 days of their production to any other plaintiff.[3]

       f.      Pilgrim's agrees to respond to EUCPs' questions and otherwise assist EUCPs to understand structured data produced by Pilgrim's.

       g.      Pilgrim's agrees to use reasonable efforts to authenticate documents and/or things produced in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations, affidavits, depositions, hearings and/or trials as may be necessary for the Action.

       h.      Beyond the information to be produced by Pilgrim's in discovery in the above captioned litigation and in this Settlement Agreement, Pilgrim's will consider reasonable requests from Interim Lead Counsel, taking into account the information it has or will produce in discovery, and whether providing the requested information will be burdensome, or will

---

[3] This information shall include but is not limited to documents relating to competition in the Broilers industry that Defendant produced to the Department of Justice, Federal Trade Commission, U.S. Department of Agriculture, Commodities Futures Trading Commission, U.S. Securities & Exchange Commission, states' attorneys general, or other government agencies or regulators.

CONFIDENTIAL
FEDERAL RULE OF EVIDENCE 408

otherwise increase the cost of, or compromise, its defense of the Action against other plaintiffs.

11.     Qualified Settlement Fund.  The Parties agree to treat the Settlement Fund as being

at all times a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1, and to

that end, the Parties shall cooperate with each other and shall not take a position in any filing or

before any tax authority that is inconsistent with such treatment.   In addition, Interim Lead

Counsel shall timely make such elections as necessary or advisable to carry out the provisions of

this Paragraph 13, including the relation-back election (as defined in Treas. Reg. § 1.468B-1(j))

back to the earliest permitted date.   Such elections shall be made in compliance with the

procedures and requirements contained in such regulations.   It shall be the responsibility of

Interim Lead Counsel to timely and properly prepare and deliver the necessary documentation for

signature by all necessary parties, and thereafter to cause the appropriate filing to occur.  All

provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with

the Settlement Funds being a "Qualified Settlement Fund" within the meaning of Treas. Reg. §

1.4688-1.  Interim Lead Counsel shall timely and properly file all information and other tax

returns necessary or advisable with respect to the Settlement Fund (including without limitation

the returns described in Treas. Reg. § 1.468B-2(k), (1)).  Such returns shall reflect that all taxes

(including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund

shall be paid out of the Settlement Fund.  Pilgrim's shall not be responsible for the filing or

payment of any taxes or expenses connected to the Qualified Settlement Fund.

12.     Distribution of Settlement Fund to Settlement Class.  Members of the Settlement

Class shall be entitled to look solely to the Settlement Fund for settlement and satisfaction against

the Pilgrim's Released Parties for the Released Claims, and shall not be entitled to any other

payment or relief from the Pilgrim's Released Parties.  Except as provided by order of the Court,

CONFIDENTIAL
FEDERAL RULE OF EVIDENCE 408

no member of the Settlement Class shall have any interest in the Settlement Fund or any portion thereof. EUCPs, members of the Settlement Class, and their counsel will be reimbursed and indemnified solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and expenses and the costs of notice of the Settlement Agreement to potential members of the Settlement Class. Pilgrim's and the other Pilgrim's Released Parties shall not be liable for any costs, fees, or expenses of any of EUCPs' and Interim Lead Counsel's attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund.

13. <u>Fee Awards, Costs and Expenses, and Incentive Payments to EUCPs</u>: Subject to Interim Lead Counsel's sole discretion as to timing, Interim Lead Counsel will apply to the Court for a fee award, plus expenses, and costs incurred, and incentive payments to the EUCPs to be paid from the proceeds of the Settlement Fund. Pilgrim's shall have no responsibility, financial obligation, or liability for any such fees, costs, or expenses beyond the Settlement Fund. Within 15 days after any order by the Court awarding attorneys' fees, expenses, or class representative service awards, the Escrow Agent shall pay the approved attorneys' fees, expenses, and service award via wire transfer from the Settlement Fund as directed by Settlement Class Counsel in accordance with and attaching the Court's order. In the event the Settlement does not become Final or the amount of attorneys' fees, expenses, or service awards is reversed or modified, Settlement Class Counsel will cause the difference in the amount paid and the amount awarded to be returned to the Settlement Fund within 30 days of the order from a court of appropriate jurisdiction.

14. <u>Release</u>. Upon Final Judgment, the Releasing Parties shall completely release, acquit, and forever discharge the Pilgrim's Released Parties from any and all claims, demands,

CONFIDENTIAL
FEDERAL RULE OF EVIDENCE 408

actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not

any member of the Settlement Class has objected to the Settlement Agreement or makes a claim

upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in

any other capacity) that the Releasing Parties ever had, now have, or hereafter can, shall, or may

ever have, that exist as of the date of the order granting Preliminary Approval, on account of, or

in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected

or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, losses, damages,

and the consequences thereof that have been asserted, or could have been asserted, under federal

or state law in any way arising out of or relating in any way to the indirect purchase of Broilers

produced, processed or sold by Pilgrim's Released Parties or any of the Defendants or their co-

conspirators, and purchased indirectly by the Releasing Parties (the "Released Claims").

Notwithstanding the above, "Released Claims" do not include (i) claims asserted against any

Defendant other than the Pilgrim's Released Parties; (ii) any claims wholly unrelated to the

allegations in the Action that are based on breach of contract, any negligence, personal injury,

bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities

claim; or (iii) damages claims under the state or local laws of any jurisdiction other than an

Indirect Purchaser State.[4] This reservation of claims set forth in (i), (ii) and (iii) of this paragraph

does not impair or diminish the right of the Pilgrim's Released Parties to assert any and all

defenses to such claims. During the period after the expiration of the deadline for submitting an

opt-out notice, as determined by the Court, and prior to Final Judgment, all Releasing Parties who

---

[4] As used herein, "Indirect Purchaser State" means California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, and/or Wisconsin.

**CONFIDENTIAL**
**FEDERAL RULE OF EVIDENCE 408**

have not submitted a valid request to be excluded from the Settlement Class shall be preliminarily enjoined and barred from asserting any Released Claims against the Pilgrim's Released Parties. The release of the Released Claims will become effective as to all Releasing Parties upon Final Judgment. Upon Final Judgment, the Releasing Parties further agree that they will not file any other suit against the Pilgrim's Released Parties arising out of or relating to the Released Claims.

15.     Further Release.  In addition to the provisions of Paragraph 14, the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 14, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties have agreed to release pursuant to Paragraph 14, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

CONFIDENTIAL
FEDERAL RULE OF EVIDENCE 408

16.    Non-Disparagement: The Parties agree they will not disparage the Action or one another, such as by making public statements that this lawsuit was frivolous, and instead will confine their public comments to essentially the following: "The parties have agreed to resolve this matter.  Pilgrim's has not admitted any liability and continues to deny the legal claims alleged in Plaintiffs' complaint, while Plaintiffs believe they would have prevailed."

17.    This Settlement Agreement shall not be construed as an admission of liability, or used as evidence of liability, for any purpose in any legal proceeding, claim, regulatory proceeding, or government investigation.

18.    This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein when executed.

19.    Option to Terminate.  Interim Lead Counsel shall provide a list of those Persons, if any, who have filed a request to opt out of any of the Settlement Class (the "Opt Outs") to counsel for Pilgrim's within twenty (20) days of the deadline set by the Court for opting out of the Settlement Class.   In the event that a minimum of 500,000 potential members of the Settlement Class timely and validly exclude themselves from the Settlement Class pursuant to the procedures approved by the Court, Pilgrim's shall, in its sole discretion, have the authority to rescind this Settlement Agreement in its entirety by providing written notice of their election to do so (the "Opt-Out Termination Notice").  Pilgrim's shall provide the Opt-Out Termination Notice within fifteen (15) calendar days of the date that the final list of potential Class Members who timely and validly opt out is provided to Pilgrim's.

20.    Effect of Disapproval or Rescission.  If the Court does not certify the Settlement Class as defined in this Settlement Agreement, or if the Court does not approve this Settlement Agreement in all material respects, or if the Court does not enter Final Approval as provided for

CONFIDENTIAL
FEDERAL RULE OF EVIDENCE 408

in Paragraph 7 herein, or if any judgment approving this Settlement Agreement is materially modified or set aside on appeal, or if all of the conditions for Final Judgment do not occur as set forth in Paragraph 1(h) of this Settlement Agreement, or if this Settlement Agreement is terminated pursuant to Paragraph 19, then this Settlement Agreement may be cancelled and terminated:

        a.      solely by Pilgrim's with respect to Paragraph 19, or

        b.      otherwise by Pilgrim's or EUCPs on behalf of the Settlement Class.

If cancelled and terminated, this Settlement Agreement shall become null and void, and, with the exception of any Settlement Funds used for notice purposes pursuant to Paragraph 6(c), in the event the settlement is not preliminarily or finally approved by the Court, all other funds in the Escrow Account shall be returned to Pilgrim's and the Parties' position shall be returned to the status quo ante.

      21.    <u>Choice of Law and Dispute Resolution</u>.  Any disputes relating to the Parties' agreement shall be governed by Illinois law without regard to conflicts of law provisions, and any and all disputes regarding this Settlement Agreement will be mediated with Judge Weinstein. Subject to Court approval, the United States District Court for the Northern District of Illinois shall retain jurisdiction over the implementation, enforcement, and performance of this Settlement Agreement and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement that cannot be resolved by negotiation and agreement by EUCPs and Pilgrim's, including mediation with Daniel Weinstein.

      22.    <u>Consent to Jurisdiction</u>. The Parties and any Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising

CONFIDENTIAL
FEDERAL RULE OF EVIDENCE 408

out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of Paragraph 14 or 15, including but not limited to, any suit, action, or proceeding in which the provisions of Paragraph 14 or 15 are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Settlement Agreement. In the event that the provisions of Paragraph 14 or 15 are asserted by any Pilgrim's Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such Pilgrim's Released Party shall be entitled to a stay of that suit, action, or proceeding until the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Parties and any Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the in personam jurisdiction of the Court. Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Settlement Agreement.

23.     Class Action Fairness Act.  Within ten (10) days of filing of this Settlement Agreement in court with the abovementioned motion for preliminary approval, Pilgrim's, at its sole expense, shall serve upon appropriate Federal and State officials all materials required pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and shall confirm to EUCPs' Interim Lead Counsel that such notices have been served.

**CONFIDENTIAL**
**FEDERAL RULE OF EVIDENCE 408**

24.     Costs Relating to Administration. The Pilgrim's Released Parties shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Funds.

25.     Binding Effect. This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein. This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Settlement Class Members, the Releasing Parties, and the Pilgrim's Released Parties. Without limiting the generality of the foregoing, upon certification of the Settlement Class and Final Approval, each and every covenant and agreement herein by the EUCPs shall be binding upon all members and potential members of the Settlement Class and Releasing Parties who have not validly excluded themselves from the Settlement Class.

26.     Sole Remedy. This Settlement Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any Pilgrim's Released Party, and upon entry of Final Judgment, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any Pilgrim's Released Party.

27.     Counsel's Express Authority. Each counsel signing this Settlement Agreement on behalf of a Party or Parties has full and express authority to enter into all of the terms reflected herein on behalf of each and every one of the clients for which counsel is signing.

28.     It is agreed that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Parties' agreement or for any other purpose with respect to implementing or enforcing this Settlement Agreement.

29.     Notices. All notices under this Settlement Agreement shall be in writing. Each such notice shall be given either by: (a) hand delivery; (b) registered or certified mail, return

**CONFIDENTIAL**
**FEDERAL RULE OF EVIDENCE 408**

receipt requested, postage pre-paid; or (c) Federal Express or similar overnight courier, and, in

the case of either (a), (b) or (c) shall be addressed:

If directed to EUCPs, the Settlement Class, or any member of the Settlement Class, to:

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710

Brent W. Johnson
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005

If directed to the Pilgrim's, to:

Carrie C. Mahan
Christopher J. Abbott
WEIL GOTSHAL & MANGES LLP
2001 M Street N.W., Ste. 600
Washington, D.C. 20036

or such other address as the Parties may designate, from time to time, by giving notice to all parties

hereto in the manner described in this Paragraph.

30.    No Admission.    Whether or not Final Judgment is entered or this Settlement

Agreement is terminated, the Parties expressly agree that this Settlement Agreement and its

contents, and any and all statements, negotiations, documents, and discussions associated with it,

are not and shall not be deemed or construed to be an admission of liability by any Party or

Pilgrim's Released Party.

31.    No Third-Party Beneficiaries.    Except as provided in Paragraph 38, no provision

of this Settlement Agreement shall provide any rights to, or be enforceable by, any person or

**CONFIDENTIAL**
**FEDERAL RULE OF EVIDENCE 408**

entity that is not a Pilgrim's Released Party, EUCP, member of the Settlement Class, or Interim Lead Counsel.

32.   No Party is the Drafter.   None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

33.   Amendment and Waiver.   This Settlement Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party.   The waiver by any Party of any particular breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement.   This Settlement Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Settlement Agreement.   Any breach of this Settlement Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law.   Accordingly, in addition to any other remedies and damages available, the   Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

34.   Execution in Counterparts.   This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement.   Facsimile or Electronic Mail signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

CONFIDENTIAL
FEDERAL RULE OF EVIDENCE 408

35.  Integrated Agreement.  This Settlement Agreement (including all Exhibits) comprises the entire, complete, and integrated agreement between the Parties, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between the Parties.  The Parties agree that this Settlement Agreement may be modified only by a written instrument signed by the Parties and that no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

36.  Voluntary Settlement.  The Parties agree that this Settlement Agreement was negotiated in good faith by the Parties, and reflects a settlement that was reached voluntarily after consultation with competent counsel and the participation of a neutral mediator, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

37.  Confidentiality.  The Parties agree to continue to maintain the confidentiality of all settlement discussions, and materials exchanged during the settlement negotiation.  However, Pilgrim's and EUCPs can inform other parties to this Action that they have reached a settlement agreement, the amount of the settlement, and the cooperation provided for in this Settlement Agreement.  Notwithstanding anything in this paragraph, Settling Defendant can disclose this Settlement Agreement with parties to the Defendants' Agreement (as defined below).

38.  EUCPs have been provided with a copy of the agreement entered into by Defendants dated February 25, 2020 (hereinafter referred to as "Defendants' Agreement").  The defined terms in Defendants' Agreement shall have the same meaning when used in this Settlement Agreement.  EUCPs agree that notwithstanding anything to the contrary contained in this Settlement Agreement, EUCPs shall reduce the dollar amount collectable from the parties to the Defendants' Agreement pursuant to any Final Judgment by a percentage equal to the Sharing

**CONFIDENTIAL**
**FEDERAL RULE OF EVIDENCE 408**

Percentage of Pilgrim's, calculated pursuant to Section 4 and Exhibits A and B of Defendants' Agreement (as illustrated by the Appendix to Defendants' Agreement) as if Pilgrim's had not settled, had been found liable on the claim, and was a Sharing Party with respect to the Final Judgment. EUCPs agree that this undertaking is also for the benefit of any Defendant that is a party to the Defendants' Agreement and that this undertaking may be enforced by any or all of such Defendants as third party beneficiaries hereof. Any ambiguity in this Paragraph 38 or inconsistency between this Settlement Agreement and the Defendants' Agreement shall be resolved in favor of the Defendants' Agreement, including, without limitation, Sections 6.D.1 and 6.D.2 thereof. EUCPs further represent and warrant that they have not reached any agreement to provide any portion of the settlement proceeds provided hereunder to any person or entity that is not explicitly identified as a releasor in this Settlement Agreement, except for proceeds received by EUCPs' attorneys for payment of attorneys' fees.

CONFIDENTIAL
FEDERAL RULE OF EVIDENCE 408

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized representatives, enter into this Settlement Agreement on the date first above written.

DATED: 7/28/21

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

*Interim Lead Counsel for the End-User Consumer Indirect Purchaser Plaintiffs Class*

Brent W. Johnson
Benjamin D. Brown
Daniel H. Silverman
Alison Deich
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Tel: (202) 408-4600
bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com
dsilverman@cohenmilstein.com
adeich@cohenmilstein.com

*Proposed Interim Lead Counsel for End-User Consumer Indirect Purchaser Plaintiffs Class*

DATED: 7/28/2021

Carrie C. Mahan (#459802)
Christopher J. Abbott (#1014487)
WEIL GOTSHAL & MANGES LLP
2001 M Street N.W., Suite 600
Washington, D.C. 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
carrie.mahan@weil.com
christopher.abbott@weil.com

*Counsel for Pilgrim's Pride Corporation*

24

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: BROILER CHICKEN ANTITRUST LITIGATION | Case No. 1:16-cv-08637 |
| THIS DOCUMENT RELATES TO:<br><br>THE END-USER CONSUMER PLAINTIFF ACTION | |

## <u>SETTLEMENT AGREEMENT BETWEEN END-USER CONSUMER PLAINTIFFS AND MAR-JAC</u>

This Settlement Agreement ("Settlement Agreement" or "Agreement") is made and entered into as of the Execution Date, by and between Mar-Jac[1] and the End-User Consumer Plaintiffs ("Plaintiffs" or "EUCPs") individually and on behalf of a class of indirect purchasers of Broilers, as defined herein, subject to the approval of the Court (the "Settlement Class" or "the Class").

## RECITALS

A.     Plaintiffs are prosecuting the above-captioned Action on their own behalf and on behalf of the Class. Plaintiffs and the putative class are currently represented by interim Class Counsel.

B.     The Action is being litigated in the United States District Court for the Northern District of Illinois in coordination with lawsuits being brought by other plaintiffs and putative classes. The Direct Purchaser Plaintiffs are direct purchasers seeking to represent a class of

---

[1] "Mar-Jac" or "Settling Defendant" refers to Mar-Jac Poultry, Inc., Mar-Jac Poultry MS, LLC, Mar-Jac Poultry AL, LLC, Mar-Jac AL/MS, Inc., Mar-Jac Poultry, LLC, and Mar-Jac Holdings, Inc. (collectively, "Settling Defendant"). (Mar-Jac Holdings, Inc. is incorrectly named in the Operative Complaint as Mar-Jac Holdings, LLC.)

direct purchasers.  The Direct Action Plaintiffs are direct purchasers represented by separate

counsel (*i.e.*, counsel other than counsel for the class of direct purchasers).  The Commercial and

Institutional Indirect Purchaser Plaintiffs are indirect purchasers seeking to represent a different

group of indirect purchasers than the indirect purchasers the EUCPs are seeking to represent.

The United States Department of Justice has also intervened in the litigation.  The EUCP lawsuit

that is the subject of this settlement shall be referred to as the "Action."  The entire collection of

matters before the Court in this consolidated proceeding shall be referred to as the "Litigation."

      C.     Plaintiffs have alleged, among other things, that Mar-Jac entered into a contract,

combination or conspiracy in restraint of trade, the purpose and effect of which was to suppress

competition and to allow Mar-Jac to charge supra-competitive prices during the Class Period, in

violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 and the antitrust laws, unfair

competition laws, consumer protection laws, and unjust enrichment common laws of certain

states.

      D.     Settling Defendant denies all allegations of wrongdoing in both the Action and the

Litigation and would assert numerous defenses to Plaintiffs' claims if required to do so.

      E.     This Settlement Agreement shall not be deemed or construed to be an admission

or evidence of any violation of any statute, law, rule, or regulation or of any liability or

wrongdoing by the Settling Defendant or of the truth of any of Plaintiffs' Claims or allegations,

nor shall it be deemed or construed to be an admission or evidence with respect to any of Settling

Defendant's defenses.

      F.     Class Counsel have conducted an investigation into the facts and law regarding

the Action and the possible legal and factual defenses thereto and have concluded that a

settlement with Settling Defendant according to the terms set forth below is fair, reasonable,

adequate, and beneficial to and in the best interests of the Class, given the uncertainties, risks, and costs of continued litigation.

G.    Despite its belief that it did nothing wrong or illegal, that it is not liable for and has strong defenses to the Claims asserted by Plaintiffs, and that it would prevail at trial, Settling Defendant desires to settle the Action to avoid the significant further expense, inconvenience, disruption, and burden of litigation and any other present or future litigation arising out of the facts that gave rise to this Litigation, and to avoid the risks inherent in uncertain and complex litigation and trial, and thereby put to rest this controversy.

H.    Arm's-length settlement negotiations have taken place between Class Counsel and the Settling Defendant's Counsel, and this Agreement has been reached as a result of those negotiations.

I.    The Parties to this Agreement desire to fully and finally compromise and settle all actual and potential Claims arising from or in connection with the Action and the factual allegations underlying the Action, and to avoid the costs and risks of protracted litigation and trial.

**IT IS HEREBY AGREED**, by and among the Settling Parties, that this Action and all Released Claims are finally and fully settled and compromised as to the Released Parties and that this Action shall be dismissed in its entirety with prejudice as to the Settling Defendant, subject to approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, upon and subject to the following terms and conditions:

**I.    DEFINITIONS**

**A.    Class Definition.**

"Settlement Class" or "Class" means the class described in Section II(G)(2) below.

###### B.    General Definitions.

1.    "Action" means the End-User Consumer Plaintiff lawsuit in the Litigation captioned *In re Broiler Chicken Antitrust Litigation*, 1:16-cv-08637 (N.D. Ill.), which is currently pending in the United States District Court for the Northern District of Illinois.

2.    "Broilers" are chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, raw or cooked, whole or in parts, or as a meat ingredient in a value added product, but excluding chicken that is grown, processed, and marketed according to halal, kosher, free range, or organic standards.

3.    "Claims" means any and all actual or potential causes of action, claims, contentions, allegations, assertions of wrongdoing, damages, losses, or demands for recoveries, remedies, or fees complained of, relating or referred to, or arising from, the conduct alleged in the Action.

4.    "Claims Administrator" means the third party to be retained by Class Counsel and approved by the Court to manage and administer the process by which Class Members are notified of the Settlement Agreement and paid from the Net Settlement Fund.

5.    "Class Member" or "Settlement Class Member" means each member of the putative Settlement Class that does not timely and properly exclude themselves from the Class.

6.    "Class Notice" means the notice to the Class that is approved by the Court, in accordance with Section II(G)(4) below.

7.    "Class Period" means the period from and including January 1, 2009 through July 31, 2019.

8.    "Class Counsel" and "Settlement Class Counsel" mean the law firm of Hagens Berman Sobol Shapiro LLP.

9.    "Complaint" or "Operative Complaint" means the Fifth Consolidated Amended Class Action Complaint in the Action (ECF 3748).

10.    "Court" or "District Court" means the United States District Court for the Northern District of Illinois and the Honorable Thomas M. Durkin or his successor, or any other Court in which the Action is proceeding.

11.    "Date of Final Approval" means the date on which the Court enters an order granting final approval to this Settlement Agreement, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, as provided in Section II(G)(7) below.

12.    "Date of Preliminary Approval" means the date on which the Court enters an order granting preliminary approval to this Settlement Agreement, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, as provided in Section II(G)(3) below.

13.    "Defendant" or "Defendants" means any or all of the Defendants named in the Action, now or in the future.

14.    Effective Date" shall be the date the settlement  contemplated by this Settlement Agreement becomes final as set forth in Section II(G)(9), entitled "When Settlement Becomes Final."

15.    "Execution Date" means the date on which this Settlement Agreement is entered into and executed by all Parties.

16.    "Escrow Account" means the account with the Escrow Agent that holds the Settlement Fund.

17.     "Escrow Agent" means the bank into which the Settlement Fund shall be deposited and maintained as set forth in Section II(E) of this Agreement.

18.     "Fairness Hearing" means a hearing on the settlement contemplated in this Settlement Agreement held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

19.     "Net Settlement Fund" means the Settlement Fund, plus accrued interest, less any award of attorneys' fees, service awards to Plaintiffs, or reimbursement of expenses and less applicable taxes, tax preparation expenses, and costs of notice and administration, that may be awarded or approved by the Court.

20.     "Opt-Out Claim" means any claim, as set forth in Section II(G)(3) and (4) of this Settlement Agreement, made by a Person, otherwise qualifying as a member of the Class, that has validly and timely excluded themselves from the Class.

21.     "Order and Final Judgment" means the order and final judgment of the Court approving this Settlement Agreement, as described in Section II(G)(7) below.

22.     "Parties" or "Settling Parties" means Settling Defendant and the Class, as represented by End-User Consumer Plaintiffs.

23.     "Person(s)" includes an individual and an entity.

24.     "Plaintiffs" means End-User Consumer Plaintiffs as that term is used in the Complaint.

25.     "Released Claims" means any and all Claims and any and all existing or potential claims, demands, actions, suits, and causes of action, upon any theory of law or equity, whether class, individual, or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly,

representatively, derivatively or in any other capacity) that the Releasing Parties (defined below), or each of them, ever had, now have, or hereafter can, shall, or ever may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated, claims, demands, actions, suits, causes of action, injuries, damages or other relief, arising from or in connection with any act or omission through the date of Preliminary Approval, relating to or referred to in the Action or arising from the factual predicate of the Litigation. For the avoidance of doubt, "Released Claims" includes all claims that have been asserted, or could have been asserted, in the Action, including all claims in any way arising out of or relating to the purchase of Broilers produced, processed or sold by Mar-Jac or any of the other Defendants or Co-Conspirators.

26.     Notwithstanding the above, "Released Claims" do not include claims asserted against any other Defendant or against any Unrelated Co-Conspirator.

27.     "Released Parties" means jointly and severally, individually and collectively, the Settling Defendant, its predecessors, successors, assigns and affiliates; and any and all past, present, and future parents (including holding companies), owners, subsidiaries, divisions, departments, joint ventures, and affiliates, and all of their heirs, executors, devisees, administrators, officers, executives, directors, stockholders, partners, members, managers, agents, attorneys, advisors, auditors, accountants, contractors, servants, employees, representatives, insurers, and assignees. "Released Parties" includes, without limitation, any person or entity identified in the previous sentence who has been or in the future may be identified in the Litigation as a Co-Conspirator. "Released Parties" does not include any other Defendant or any Unrelated Co-Conspirator, either explicitly or as a third-party beneficiary.

28.     "Releasing Parties" means jointly and severally, individually and

collectively, Plaintiffs, the Class, and each Class Member, on behalf of themselves and any person or entity claiming by or through them, including without limitation, their respective predecessors, successors, and assigns; and any and all past, present, and future parents, owners, subsidiaries, divisions, departments, affiliates, heirs, executors, devisees, administrators, officers, directors, stockholders, partners, members, managers, principals, agents, attorneys, advisors, auditors, accountants, contractors, servants, employees, representatives, insurers, and assignees.

29.    "Settlement Agreement" means this document and the agreement reflected therein.

30.    "Settlement Amount" means the cash payment of $1,000,000 described in Section II(B)(1) below.

31.    "Settlement Fund" means the funds described in Section II(B) of this Settlement Agreement, plus accrued interest, in the separate Escrow Account for the settlement contemplated by this Settlement Agreement established in accordance with Section II(E) below.

32.    "Settling Defendant" means Mar-Jac Poultry, Inc., Mar-Jac Poultry MS, LLC, Mar-Jac Poultry AL, LLC, Mar-Jac AL/MS, Inc., Mar-Jac Poultry, LLC, and Mar-Jac Holdings, Inc.

33.    "Settling Defendant's Counsel" means the law firms of Edward C. Konieczny LLC and Smith Gambrell & Russell, LLP.

34.    "Unrelated Co-Conspirator" means a Co-Conspirator that does not satisfy the criteria for inclusion as a "Released Party" in the first sentence of the definition of "Released Parties."

## II. SETTLEMENT

### A. Appointment of Class Counsel and Removal of "Interim" Status

This Agreement is contingent upon the Court's prior or contemporaneous approval of Class Counsel as class counsel (without the "interim" status) pursuant to Rule 23(g).

### B. Performance By Mar-Jac

**1. Settlement Payment.** Mar-Jac shall pay $1.0 million ($1,000,000) in United States dollars, all in cash, as the Settlement Amount in settlement of the Action, inclusive of class recovery amounts, fees (including attorneys' fees and any other fees), service awards, and costs. This Settlement Amount shall be paid by Mar-Jac into the Escrow Account described herein within thirty (30) calendar days of the Date of Preliminary Approval.

**a.** Mar-Jac's payment to the Escrow Agent described herein shall be by wire transfer pursuant to instructions from the Escrow Agent or Class Counsel.

**b.** The payment described in Section II(B)(1) shall constitute the total Settlement Amount, and the obligations described in Section II(B) shall continue so long as this Settlement Agreement remains in effect.

**c.** Each Class Member shall look solely to the Settlement Amount for settlement and satisfaction, as provided herein, of all Released Claims pursuant to this Agreement.

**d. Cooperation.** As part of this Settlement, Mar-Jac will make reasonable efforts to provide a stipulation, declarations, or affidavits relating to the authentication or foundation for admissibility of documents, if it reasonably can do so in good faith and if reasonably requested by Plaintiffs in connection with the Action. Nothing in this paragraph shall prevent Mar Jac from objecting to any potential trial subpoena, stipulation,

declaration or affidavit associated with this provision on any grounds permitted by law, including without limitation burden on a party or third-party, relevance, expense, or violation of the limitations set forth in scheduling and discovery orders in this Action. This cooperation is a material term of the Settlement.

  **C.**  **Release of Claims.**

    **1.**  **Release.** Upon the occurrence of the Effective Date, and in consideration of the valuable consideration set forth in this Agreement, the Releasing Parties shall be deemed to have, and by operation of the Order and Final Judgment shall have, hereby fully, finally, and forever completely compromised, settled, released, acquitted, resolved, relinquished, waived, and discharged the Released Parties of all Released Claims.

    **2.**  **Covenant Not to Sue**. The Releasing Parties covenant not to sue or otherwise seek to establish liability against the Released Parties for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of or related to the Released Claims, including, without limitation, seeking to recover damages or other relief relating to any of the Released Claims. This Paragraph shall not apply to any action to enforce this Settlement Agreement.

    **3.**  **Full Release**. The Parties to this Agreement expressly agree and confirm that the Released Claims as set forth in Section I(B)(25) and the provisions of Section II(C) shall be interpreted as broadly as possible and to the fullest extent permitted by law and constitute a full and final release of the  Released Parties by the Releasing Parties of the Released Claims.

    **4.**  **Waiver**. Upon the Date of Final Approval, the Releasing Parties shall be deemed to have, and by operation of the Order and Final Judgment shall have, with respect to the subject matter of the Released Claims, expressly waived and released the provisions, rights, and

benefits of Section 1542 of the California Civil Code (providing "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.") and Section 20-7-11 of the South Dakota Codified Laws (providing "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.").

The Releasing Parties shall further be deemed to have, and by operation of the Order and Final Judgment shall have, expressly waived all similar provisions, statutes, regulations, rules, or principles of law or equity of any other state or applicable jurisdiction, or principle of common law. The Releasing Parties acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Released Claims, but that it is their intention to fully, finally, and forever release, acquit, relinquish and discharge the Released Parties of all Released Claims, and, upon the Date of Final Approval, shall be deemed to have, and by operation of the Order and Final Judgment, shall have, fully, finally, and forever released, acquitted, relinquished, waived, and discharged the Released Parties of all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, without regard to the subsequent discovery or existence of any additional or different facts. The Releasing Parties intend and, by operation of the Order and Final Judgment, shall be deemed to have acknowledged

11

that the foregoing waiver was separately bargained for and a key element of the settlement of which this waiver and release is a part.

5.      **Effect of this Settlement Agreement on Final Judgment as to other Defendants.**  Plaintiffs have been provided with a copy of the agreement entered into by certain Defendants dated February 25, 2020 (hereinafter referred to as "Defendants' Agreement").  The defined terms in Defendants' Agreement shall have the same meaning when used in this Settlement Agreement.  Plaintiffs agree that notwithstanding anything to the contrary contained in this Settlement Agreement, Plaintiffs shall reduce the dollar amount collectable from the parties to the Defendants' Agreement pursuant to any Final Judgment by a percentage equal to the Sharing Percentage of Mar-Jac, calculated pursuant to Section 4 and Exhibits A and B of Defendants' Agreement (as illustrated by the Appendix to Defendants' Agreement) as if Mar-Jac had not settled, had been found liable on the claim, and was a Sharing Party with respect to the Final Judgment.  Plaintiffs agree that this undertaking is also for the benefit of any Defendant that is a party to the Defendants' Agreement and that this undertaking may be enforced by any or all of such Defendants as third party beneficiaries hereof.  Any ambiguity in this Paragraph or inconsistency between this Settlement Agreement and the Defendants' Agreement shall be resolved in favor of the Defendants' Agreement, including, without limitation, Sections 6.D.1 and 6.D.2 thereof.  Plaintiffs further represent and warrant that they have not reached any agreement to provide any portion of the settlement proceeds provided hereunder to any person or entity that is not explicitly identified as a releasor in this Settlement Agreement, except for proceeds received by Plaintiffs' attorneys for payment of attorneys' fees.  Plaintiffs shall use their best efforts to ensure that this Settlement Agreement constitutes a Qualified Settlement under Defendants' Agreement and to effectuate the intent of the parties to the Defendants' Agreement to treat this

Settlement Agreement as a Qualified Settlement, including (as may be necessary) to make any amendments to this Settlement Agreement to reflect the intent to treat the Settlement Agreement as a Qualified Settlement.

      **D.**    **Claims Administrator.** Pursuant to the Preliminary Approval Order, and subject to Court approval, Class Counsel shall engage a qualified Claims Administrator. The Claims Administrator will assist with the settlement claims process as set forth herein.

      **1.**    The Claims Administrator shall effectuate the notice plan approved by the Court in the Preliminary Approval Order, shall administer and calculate the claims, and shall oversee distribution of the Net Settlement Fund in accordance with the plan of distribution.

      **2.**    The Claims Administrator also shall assist in the development of the plan of distribution and the resolution of any disputes regarding the plan of distribution.

      **E.**    **Settlement Fund Administration.** The Settlement Fund shall be administered pursuant to the provisions of this Settlement Agreement and subject to the Court's continuing supervision and control, until the funds in the Settlement Fund are fully distributed, as follows:

      **1.**    The Settlement Fund shall be established within an Escrow Account and administered by an Escrow Agent designated by Class Counsel and administered by an Escrow Agent designated by Class Counsel.

      **2.**    Except as provided herein, the Class, Class Counsel, Settling Defendant, and Settling Defendants' Counsel shall have no responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Class, obtaining approval of the settlement, or administering the settlement. Such fees, costs and expenses shall be paid solely from the Settlement Fund, subject to any necessary Court approval.

3.     Class Counsel may request an order from the Court authorizing Class Counsel to withdraw from the Settlement Fund up to $200,000 to pay the costs for notice and administration of this settlement, provided however that no funds shall be advanced from the Settlement Fund prior to the date the Court approves a plan of notice and distribution.  In the event that Court-ordered notice and administration costs exceed $200,000, Plaintiffs and Class Counsel may apply to the Court to pay such additional notice and administration costs from the Settlement Fund.  Up to $200,000 of notice and administration costs shall be nonrefundable in the event that, for any reason, the settlement contemplated in this Settlement Agreement is not finally approved.  The costs for notice and administration of the settlement will be pro-rated with other settlements to the extent possible.

4.     Under no circumstances will Settling Defendant or the Released Parties be required to pay more than the Settlement Amount pursuant to this Settlement Agreement and the settlement set forth herein. For purposes of clarification, the payment of any fee and expense award, the notice and administrative costs (including payment of any applicable fees to Escrow Agent), any service awards to Plaintiffs, payments to Class Members and any other costs associated with the implementation of this Settlement Agreement shall be exclusively paid from the Settlement Fund.

5.     No other funds shall be paid or disbursements made from the Settlement Fund without an order of the Court.

6.     The Escrow Agent shall, to the extent practicable, invest the funds deposited in the Settlement Fund in discrete and identifiable instruments backed by the full faith and credit of the United States Government, or fully insured by the United States Government or any agency thereof, including a United States Treasury Fund or a bank account that is either:

(i) fully insured by the Federal Deposit Insurance Corporation; or (ii) secured by instruments backed by the full faith and credit of the United States Government. The proceeds of these accounts shall be reinvested in similar instruments at their then-current market rates as they mature. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund. Any cash portion of the Settlement Fund not invested in instruments of the type described in the first sentence of this Section II(E)(6) shall be maintained by the Escrow Agent, and not commingled with any other funds or monies, in a federally insured bank account. Subsequent to payment into the Settlement Fund pursuant to Section II(B)(1), neither the Settling Defendant, any other Released Party, nor Settling Defendant's Counsel shall bear any responsibility or risk related to the Settlement Fund or the Net Settlement Fund.

   **7.**  The Parties agree that the Settlement Fund and the Net Settlement Fund are each intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1 and that the Escrow Agent, as administrator of the Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any Taxes, as defined below, owed with respect to the Escrow Account. In addition, Class Counsel shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such election shall be made in compliance with the procedures and requirements contained in such regulations. The Settling Defendant, other Released Parties, and the Settling Defendant's Counsel shall have no liability or responsibility of any sort for filing any tax returns or paying any Taxes with respect to the Escrow Account.

8.      All: (i) taxes on the income of the Settlement Fund ("Taxes"), and (ii) expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, reasonable expenses of tax attorneys and accountants) shall timely be paid by the Escrow Agent out of the Settlement Fund.  The Class Members shall be solely responsible for paying any and all federal, state, and local income taxes due on any distribution made to them pursuant to the settlement provided herein.

9.      After the Date of Final Approval, the Net Settlement Fund shall be disbursed in accordance with a plan of distribution to be approved by the Court.  The Class Members shall look solely to the Net Settlement Fund for full and complete settlement and satisfaction of any and all Released Claims with respect to the Released Parties and shall not be entitled to any other payment or relief from the Released Parties.  The timing of a motion to approve a plan of distribution of the Net Settlement Fund created by this Settlement Agreement shall be in the discretion of Class Counsel, and may be combined with a plan to distribute proceeds from other settlements in this Action.

F.      **No Reversion.**

1.      Settling Defendant shall have no rights to reversion, except as provided in Section II(G)(10) of this Settlement Agreement. In the event of a reversion, the Settlement Amount less up to $200,000 of previously-spent notice and administrative costs shall be returned to the Settling Defendant.

2.      In the event that Class Members request exclusion from the Class or bring Opt-Out Claims, neither those requests nor the Opt-Out Claims shall have any effect on this Settlement Agreement.

### G. Approval of Settlement Agreement and Dismissal of Claims.

      **1. Cooperation.** Plaintiffs and Settling Defendant shall use their reasonable best efforts to effectuate this Settlement Agreement, including cooperating in promptly seeking the Court's approval of the Settlement Agreement, the giving of appropriate class notice under Federal Rules of Civil Procedure 23(c) and (e), and the prompt, complete, and final dismissal with prejudice of the Action as to the Settling Defendant only.

      **2. Settlement Class Certification.** Plaintiffs shall seek, and Settling Defendant shall not object to, appointment of Class Counsel as Settlement Class Counsel for purposes of this settlement, and certification in the Action of a Class for settlement purposes only, defined as follows:

> The "Settlement Class" is consistent with the one alleged in the End-User Consumer Plaintiffs' Fifth Consolidated Amended Class Action Complaint, Aug. 7, 2020, ECF Nos. 3747 (redacted), 3748 (sealed), defined as: All persons and entities who indirectly purchased the following types of fresh or frozen raw chicken—namely, whole birds (with or without giblets), whole cut-up birds purchased within a package, or "white meat" parts including breasts and wings (or cuts containing a combination of these), but excluding chicken that is marketed as halal, kosher, free range, or organic—from Defendants or alleged co-conspirators for personal consumption, where the person or entity purchased in California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Rhode Island (after July 15, 2013), South Carolina, South Dakota, Tennessee, Utah, and Wisconsin from January 1, 2009 (except for Rhode Island, which is from July 15, 2013) to July 31, 2019.

      **3. Preliminary Approval.** Plaintiffs shall submit to the District Court a motion, at such time deemed appropriate in the discretion of Class Counsel (but as soon as reasonably practicable after the Execution Date), requesting entry of an order preliminarily approving the settlement ("Preliminary Approval Order"). Settling Defendant shall not oppose

and shall reasonably cooperate in such motion. A reasonable time before filing such motion, Class Counsel shall provide the Settling Defendant's Counsel with a draft of such motion for review.  To the extent that Mar-Jac objects to any aspect of the motion, it shall communicate such objection to Co-Lead Counsel and the Parties shall meet and confer  regarding any such objection.  The proposed Preliminary Approval Order shall provide that, *inter alia*:

      **a.**     the settlement proposed in the Settlement Agreement has been negotiated at arm's length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Class;

      **b.**     the Claims Administrator is appointed;

      **c.**     the proposed Class Notice meets the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, and constitutes the best notice practicable under the circumstances for settlement purposes;

      **d.**     after Class Notice has been carried out, a hearing on the settlement proposed in this Settlement Agreement shall be held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court (the "Fairness Hearing");

      **e.**     Class Members who wish to exclude themselves must submit an appropriate and timely request for exclusion;

      **f.**     Class Members who wish to object to this Agreement must submit an appropriate and timely written statement of the grounds for objection;

      **g.**     Class Members who wish to appear in person to object to this Agreement may do so at the Fairness Hearing pursuant to directions by the Court; and

**h.**     All proceedings in the Action with respect to Settling Defendant and Plaintiffs are stayed until further order of the Court, except as may be necessary to implement the settlement or comply with the terms thereof.

**4.**     **Class Notice.**  The Class Notice shall provide for a right of exclusion, as set forth in Section II(G)(3).  The Class Notice shall also provide for a right to object to the proposed settlement.  Individual notice of the settlement to all Class Members who can be identified through reasonable effort shall be mailed or emailed to those Class members in conformance with a notice plan to be approved by the Court.   Class Counsel will undertake all reasonable efforts to notify potential Class Members of the settlement.  The timing of a motion to approve notice to the Class of this Settlement Agreement shall be in the discretion of Class Counsel, and may be combined with notice of other settlements in this Action.

**5.**     **Cost of Class Notice**.  The costs of providing Class Notice to Class Members shall be paid by the Escrow Agent from the Settlement Fund pursuant to Section II(E)(2) and (3).

**6.**     **CAFA Notice.**  Within ten (10) days of the filing of this Settlement Agreement in court in connection with the above-mentioned motion for preliminary approval, Settling Defendant will provide to the appropriate state officials and the appropriate federal official the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA").

**7.**     **Final Approval**.  If this Settlement Agreement is preliminarily approved by the Court, the Class and Class Counsel shall seek entry of an Order and Final Judgment. A reasonable time before filing such motion, Class Counsel shall provide the Settling Defendant's Counsel with a draft of such motion for review. To the extent that Mar-Jac objects to any aspect

of the motion, it shall communicate such objection to Class Counsel and the Parties shall meet and confer regarding any such objection. The motion for Final Approval shall seek an entry of an order and Final Judgment that, *inter alia*:

      **a.** finally approves this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions, without material modification of those terms and conditions;

      **b.** determines that the Class Notice constituted, under the circumstances, the most effective and practicable notice of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

      **c.** orders that all Claims made against the Settling Defendant in the Action be dismissed with prejudice and without further costs or fees;

      **d.** requires Class Counsel to file with the Clerk of Court a record of potential Class Members that timely excluded themselves from the Class, and to provide a copy of the record to Settling Defendant's Counsel;

      **e.** incorporates the Release set forth in this Agreement and makes the Release effective as of the Effective Date as to the EUCPs and all Class Members that did not file a timely notice for exclusion;

      **f.** enjoins Plaintiffs from suing, directly or indirectly, any of the Released Parties for any of the Released Claims;

      **g.** confirms that Settling Defendant has provided the appropriate notice pursuant to CAFA;

**h.** determines under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directs that the judgment of dismissal as to the Settling Defendant shall be final and entered forthwith, and stating:

i. Final judgment as to the EUCP action is entered in favor of the Settling Defendant; and

ii. Final judgment is granted in favor of the Released Parties on any Released Claim of a Class Member that did not file a timely notice for exclusion.

**i.** reserves to the Court exclusive jurisdiction over the settlement and this Settlement Agreement, including the administration and consummation of this Agreement;

**j.** orders that Settlement Funds may be disbursed as provided in the Final Approval Order or other order of the Court.

**8. Class Counsel Fees and Expenses; No Other Costs.**

**a.** Settling Defendant shall have no responsibility for any other costs, including Class Counsel's attorneys' fees, costs, and expenses, service awards or the fees, costs, or expenses of any Plaintiff's or Class Member's respective attorneys, experts, advisors, or representatives, provided, however, that with respect to the Action, including this Settlement Agreement, Settling Defendant shall bear its own costs and attorneys' fees.

**b.** At their discretion and after proper notice to the Class and opportunity to object, Class Counsel may seek a court order granting attorneys' fees and expenses from the Settlement Fund, separately or in conjunction with other settlements. Any such attorneys' fees will be paid out of the Settlement Amount, and Settling Defendant shall have no additional obligation to pay any fees or expenses of Class Counsel.

c.      At their discretion and after proper notice to the Class and opportunity to object, Class Counsel may seek from the Settlement Fund, separately or in conjunction with other settlements, a court order granting reimbursement of costs and service awards for the work Plaintiffs performed on behalf of the class, and to compensate for the time and expense they have incurred in bringing this Action.  Any such payments for reimbursements of costs or service awards will not be paid until after the Effective Date, and Settling Defendant shall have no additional obligation to pay any such costs or service awards.

d.      The procedure for and the allowance or disallowance by the Court of any applications by Class Counsel for attorneys' fees and expenses or the expenses of or service awards to Plaintiffs to be paid out of the Settlement Fund are not part of or a condition to the settlement set forth herein, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement set forth in this Agreement, and any order or proceeding relating to any application for attorneys' fees or expenses or service awards shall not operate to terminate or cancel this Agreement or the releases set forth herein, or affect or delay the finality of the judgment approving this settlement.

e.      Within 15 days after any order by the Court awarding attorneys' fees, expenses, or class representative costs or service awards, the Escrow Agent shall pay the approved attorneys' fees, costs, and service awards via wire transfer from the Settlement Fund as directed by Class Counsel in accordance with the Court's order. In the event the amount of attorneys' fees, costs, or service awards is reduced on appeal, Class Counsel shall, within 30 days of such appellate order, cause the difference in the amount paid and the amount awarded on appeal to be returned to the Settlement Fund.

9.     **When Settlement Becomes Final**.  The settlement contemplated by this Settlement Agreement shall become final on the date that: (a) the Court has entered the Order and Final Judgment approving this Settlement Agreement, and all of its material terms and conditions, in accordance with Section II(G)(7), above, under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Action as against the Settling Defendant with prejudice as to all Class Members and without costs; and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Settlement Agreement and entry of the Order of Final Judgment, as described in Section II(G)(7) above, has expired with no appeal having been filed or, if appealed, approval of this Settlement Agreement and the Order and Final Judgment has been affirmed in all material respects by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review.

10.     **Termination and Rescission.** If the Court declines to grant either preliminary or final approval to this Settlement Agreement or any material part hereof (as set forth in Sections II(G)(3) or (G)(7) above, respectively), or if the Court approves this Settlement Agreement in a materially modified form, or if after the Court's approval, such approval is materially modified or set aside on appeal, or if the Court does not enter the Final Order and Judgment, or if the Court enters the Final Order and Judgment and appellate review is sought and on such review such Final Order and Judgment is not affirmed (collectively "Triggering Events"), then Settling Defendant and Plaintiffs shall each, in their respective sole and absolute discretion, have the option to rescind this Settlement Agreement in its entirety by providing written notice of their election to do so ("Termination Notice") to each other within thirty (30) calendar days of such Triggering Event.  For purposes of this Section II(G)(10), a material modification includes but is not limited to any modification to the Settlement Amount or the

scope of the Released Claims pursuant to Section I(B) and Section II(C).    In no way shall Plaintiffs have the right to rescind, cancel or terminate this Settlement Agreement if the Court fails or refuses to grant any requested attorneys' fees, any costs, or any service awards to Class Representatives.

        **11.**    **No Admission.**

        **a.**    Settling Defendant denies all allegations of wrongdoing in the Action and the Litigation.  Nothing in this Settlement Agreement, nor any statements, negotiations, documents, or discussions associated with it, constitutes an admission by Settling Defendant or any Released Party as to the merits of the allegations that have been made, could have been made, or could be made in the Action or the Litigation, or an admission by Plaintiffs or the Class of the validity of any defenses that have been or could be asserted by Settling Defendant.

        **b.**    This Settlement Agreement, its terms, and any agreement or order relating thereto, shall not be deemed to be, and shall not be, offered by any of the Settling Parties to be received in any civil, criminal, administrative, or other proceeding, or utilized in any manner whatsoever as, a presumption, a concession, or an admission of any fault, wrongdoing, or liability whatsoever on the part of the Settling Defendant or other Released Parties; provided, however, that nothing contained in this Section II(G)(11) shall prevent this Settlement Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the settlement (or any agreement or order relating thereto) or the Order and Final Judgment, or in which the reasonableness, fairness, or good faith of any Party participating in the settlement (or any agreement or order relating thereto) is in issue.  This Settlement Agreement may, however, be

filed and used in other proceedings, where relevant, to demonstrate the fact of its existence and of this settlement, including but not limited to the filing of the Settlement Agreement and/or the Order and Final Judgment in any other action that may be brought against any Released Party in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, waiver, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## III.    MISCELLANEOUS

**A.    Entire Agreement.** This Settlement Agreement constitutes the entire agreement between  Plaintiffs and Settling Defendant pertaining to the settlement of the Action against Settling Defendant and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and Settling Defendant in connection therewith.  All terms of the Settlement Agreement are contractual and not mere recitals.

**B.    Inurement.** The terms of the Settlement Agreement are and shall be binding upon, to the fullest extent possible, each of the Releasing Parties and the Released Parties, and upon all other Persons claiming any interest in the subject matter hereto through any of the Parties, Releasing Parties, or Released Parties, including any Class Members.

**C.    Modification.** This Settlement Agreement may be modified or amended only by a writing executed by  Plaintiffs (through Class Counsel) and Settling Defendant, subject (if after preliminary or final approval) to approval by the Court.  Amendments and modifications may be made without notice to the Class unless notice is required by law or by the Court.

**D.    Drafted Mutually.** For the purpose of construing or interpreting this Settlement Agreement,  Plaintiffs and Settling Defendant shall be deemed to have drafted it equally, and it shall not be construed strictly for or against any party.

E. **Governing Law.**  All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of Illinois without regard to its choice-of-law or conflict-of-law principles.

F. **Confidentiality**. The Parties agree to continue to maintain the confidentiality of all settlement discussions and materials exchanged during the settlement negotiation. However, Plaintiffs and Settling Defendant immediately can inform other parties to this Action that they have reached a settlement agreement and disclose both the Settlement Amount and the cooperation obligations contained in this Settlement Agreement. Additionally, consistent with its obligations under the Defendants' Agreement, Settling Defendant may share copies of this Settlement Agreement with parties to the Defendants' Agreement.

G. **Jurisdiction.**  This Settlement Agreement is subject to the continuing and exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein.  If for any reason this Settlement Agreement is rescinded, terminated or fails to become effective, then, in such event, nothing in this Settlement Agreement or with regard to any conduct of Settling Defendant or Settling Defendant's Counsel pursuant to any obligations Settling Defendant has under the Agreement shall constitute or are intended to be construed as any agreement to personal jurisdiction (general or specific) or subject matter jurisdiction so as to confer the jurisdiction of the District Court over Settling Defendant, nor shall it constitute any waiver of any defenses based on personal or subject matter jurisdiction.

H. **Counterparts.**  This Settlement Agreement may be executed in counterparts by Class Counsel and Settling Defendant's Counsel, each of which shall be deemed an original and

all of which taken together shall constitute the same Settlement Agreement.  A facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

      **I.**    **Represented by Counsel.**  Plaintiffsand Settling Defendant acknowledge that each have been represented by counsel, and have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so and are not relying on any representation or warranty by the other Party other than as set forth herein. Therefore, the Settling Parties and their respective counsel agree that they will not seek to set aside any part of the Settlement Agreement on the grounds of mistake.

      **J.**    **Authorization.**  Each of the undersigned attorneys represents that he or she is fully authorized to enter into and execute this Settlement Agreement, subject to Court approval; the undersigned Class Counsel represent that they are authorized to execute this Settlement Agreement on behalf of Plaintiffs; and the undersigned Settling Defendant's Counsel represent that they are authorized to execute the Settlement Agreement on behalf of Settling Defendant.

      **K.**    **Privilege.**  Nothing in this Settlement Agreement, settlement, or the negotiations or proceedings relating to the foregoing is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the accountants' privilege, the attorney-client privilege, the joint defense privilege, the common interest privilege, and the attorney work product immunity.

      **L.**    **Notice.**  Any notice required pursuant to or in connection with this Settlement Agreement shall be in writing and shall be given by: (1) hand delivery; (2) registered or certified mail, return receipt requested, postage prepaid; or (3) UPS or similar overnight courier, with a courtesy copy by electronic mail, addressed, in the case of notice to any Plaintiff or Class

Member, to Class Counsel at their addresses set forth below, and, in the case of notice to Settling

Defendant, to Settling Defendants' Counsel at the addresses set forth below, or such other

addresses as Settling Defendant's Counsel or Class Counsel may designate, from time to time, by

giving notice to all Parties in the manner described in this Section III(L).

> For End-User Consumer Plaintiffs:
>
> Steve W. Berman
> HAGENS BERMAN SOBOL SHAPIRO LLP
> 1301 Second Avenue, Suite 2000
> Seattle, Washington  98101
> (206) 623-7292
> steve@hbsslaw.com
>
> Shana E. Scarlett
> HAGENS BERMAN SOBOL SHAPIRO LLP
> 715 Hearst Avenue, Suite 202
> Berkeley, California 94710
> Telephone: (510) 725-3000
> Facsimile: (510) 725-3001
> shanas@hbsslaw.com

<u>For Settling Defendant Mar-Jac</u>

Edward C. Konieczny
Edward C. Konieczny LLC
1201 Peachtree Street, NE
Suite 1501
Atlanta, Georgia 30361
Telephone: (404) 380-1430
Facsimile: (404) 382-6011
ed@koniecznylaw.com

David C. Newman
SMITH, GAMBRELL & RUSSELL, LLP
Promenade, Suite 3100
1230 Peachtree Street, NE
Atlanta, GA 30309
dnewman@sgrlaw.com

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the Execution Date.

Dated: 7/29/21

Steve W. Berman
Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Shana E. Scarlett
Rio S. Pierce
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
rios@hbsslaw.com

Brent W. Johnson
Benjamin D. Brown
Daniel H. Silverman
Alison Deich
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
bjohnson@cohenmilstein.com
dsilverman@cohenmilstein.com
bbrown@cohenmilstein.com
adeich@cohenmilstein.com

***Co-Lead Counsel for End-User Consumer Plaintiffs***

30

Dated: 7/28/2021

_____
Edward C. Konieczny
Edward C. Konieczny LLC
1201 Peachtree Street, NE
Suite 1501
Atlanta, Georgia 30361
Telephone: (404) 380-1430
Facsimile: (404) 382-6011

David C. Newman
SMITH, GAMBRELL & RUSSELL, LLP
Promenade, Suite 3100
1230 Peachtree Street, NE
Atlanta, GA 30309
dnewman@sgrlaw.com

***Counsel for Mar-Jac Poultry, Inc., Mar-Jac Poultry MS, LLC, Mar-Jac Poultry AL, LLC, Mar-Jac AL/MS, Inc., Mar-Jac Poultry, LLC and Mar-Jac Holdings, Inc.***

# EXHIBIT C

DocuSign Envelope ID: FE173938-E274-4B01-A9F5-C6BC4F13C3C1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

DECLARATION OF IAN ADAMS IN SUPPORT OF
END-USER CONSUMER PLAINTIFFS' SETTLEMENT
WITH PILGRIM'S AND MAR-JAC DEFENDANTS

DocuSign Envelope ID: FE173938-E274-4B01-A9F5-C6BC4F13C3C1

I, IAN ADAMS, declare as follows:

1.    I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.    I am a class representative in *In re Broiler Chicken Antitrust Litig*., No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.    The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.    I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: FE173938-E274-4B01-A9F5-C6BC4F13C3C1

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9.      I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10.      I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11.      I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

DocuSign Envelope ID: FE173938-E274-4B01-A9F5-C6BC4F13C3C1

12. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed 7/31/2021 | 5:11 PM PDT in Honolulu, Hawaii.

DocuSigned by:

*Ian Adams*

133196FD48704BE...

IAN ADAMS

DocuSign Envelope ID: 2AED0C39-957B-4A9B-ABF4-3D9BB6A3CB74

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

## DECLARATION OF ANGELA ASHBY IN SUPPORT OF
## END-USER CONSUMER PLAINTIFFS' SETTLEMENT
## WITH PILGRIM'S AND MAR-JAC DEFENDANTS

DocuSign Envelope ID: 2AED0C39-957B-4A9B-ABF4-3D9BB6A3CB74

I, ANGELA ASHBY, declare as follows:

1.      I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.      I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.      The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.      I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: 2AED0C39-957B-4A9B-ABF4-3D9BB6A3CB74

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9.      I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10.      I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11.      I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

DocuSign Envelope ID: 2AED0C39-957B-4A9B-ABF4-3D9BB6A3CB74

12. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed _____ 7/28/2021 | 10:59 AM PDT in Omaha, Nebraska.

ANGELA ASHBY

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

DECLARATION OF LINDA CHESLOW IN SUPPORT OF
END-USER CONSUMER PLAINTIFFS' SETTLEMENT
WITH PILGRIM'S AND MAR-JAC DEFENDANTS

DocuSign Envelope ID: AF1EA145-EA49-4FC3-9009-EBAF6B32F26A

I, LINDA CHESLOW, declare as follows:

1. I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2. I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3. The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4. I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: AF1EA145-5A49-4FG3-9009-EBAF6B325Q6A

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9. I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10. I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11. I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

12.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed ___7/27/2021___ in Santa Rosa, California.

LINDA CHESLOW

DocuSign Envelope ID: 7BEFEF50-19E0-450A-B9F3-1EAE6ABCBDE9

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

## DECLARATION OF KENNETH COTE IN SUPPORT OF END-USER CONSUMER PLAINTIFFS' SETTLEMENT WITH PILGRIM'S AND MAR-JAC DEFENDANTS

DocuSign Envelope ID: 7BEFEF50-19E0-450A-B9F3-1EAE6ABCBDE9

I, KENNETH COTE, declare as follows:

1.      I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.      I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.      The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.      I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: 7BEFEF50-19E0-450A-B9F3-1EAE6ABCBDE9

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9. I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10. I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11. I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

DocuSign Envelope ID: 7BEFEF50-19E0-450A-B9F3-1EAE6ABCBDE9

12. I declare under penalty of perjury under the laws of the United States of America that

the foregoing is true and correct. Executed _7/26/2021 | 12:24 PM PDT_ in North Providence, Rhode Island.

DocuSigned by:

_kenneth Cote_

ED2C............

KENNETH COTE

DocuSign Envelope ID: 684EB7E6-DF6F-4F81-8F40-BEF2D14B2320

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

DECLARATION OF KRISTIN DAVIS IN SUPPORT OF
END-USER CONSUMER PLAINTIFFS' SETTLEMENT
WITH PILGRIM'S AND MAR-JAC DEFENDANTS

DocuSign Envelope ID: 684EB7E6-DF6F-4F81-8F40-BEF2D14B2320

I, KRISTIN DAVIS, declare as follows:

1.       I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.       I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.       The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.       I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: 684EB7E6-DF6F-4F81-8F40-BEF2D14B2320

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9.    I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10.    I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11.    I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

DocuSign Envelope ID: 684EB7E6-DF6F-4F81-8F40-BEF2D14B2320

12. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed ___7/26/2021 | 9:49 AM PDT___ in Palm City, Florida.

Kristin Davis

KRISTIN DAVIS

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

**DECLARATION OF ABRAHAM DRUCKER IN SUPPORT OF**
**END-USER CONSUMER PLAINTIFFS' SETTLEMENT**
**WITH PILGRIM'S AND MAR-JAC DEFENDANTS**

DocuSign Envelope ID: 11B8E59A-74C1-432 1-AC7D-CAD0A41DC854

I, ABRAHAM DRUCKER, declare as follows:

1.      I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.      I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.      The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.      I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: 11B8E59A-74C1-4321-AC7D-CAD0A41DC854

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9.      I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10.      I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11.      I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

DocuSign Envelope ID: 11B8E59A-74C1-492A-AC7D-CAD0A44DC854

12.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed 7/24/2021 in Denver, Colorado.

ABRAHAM DRUCKER

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

## DECLARATION OF JAMES D. FLASCH, JR. IN SUPPORT OF END-USER CONSUMER PLAINTIFFS' SETTLEMENT WITH PILGRIM'S AND MAR-JAC DEFENDANTS

DocuSign Envelope ID: 07E9F1AD-3C08-46E7-9E51-DD75742BDB91

I, JAMES D. FLASCH, JR., declare as follows:

1.      I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.      I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.      The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.      I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: 07E9F1AD-3S08-46E7-9E51-DD75742BDB91

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9.      I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10.      I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11.      I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

12. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed _7/24/2021_ in Appleton, Wisconsin.

James D. Flasch, Jr.
_____
JAMES D. FLASCH, JR.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

## DECLARATION OF CHRISTINA HALL IN SUPPORT OF END-USER CONSUMER PLAINTIFFS' SETTLEMENT WITH PILGRIM'S AND MAR-JAC DEFENDANTS

DocuSign Envelope ID: 689C97DB-73CB-4015-ABC9-FDF5C63B8817

I, CHRISTINA HALL, declare as follows:

1.      I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.      I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.      The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.      I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: 689C97DB-73CB-4015-ABC9-FDE5C63B8817

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9. I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10. I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11. I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

12.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed ___7/23/2021___ in Charleston, South Carolina.

_____
CHRISTINA HALL

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

**DECLARATION OF MATTHEW HAYWARD IN SUPPORT OF**
**END-USER CONSUMER PLAINTIFFS' SETTLEMENT**
**WITH PILGRIM'S AND MAR-JAC DEFENDANTS**

I, MATTHEW HAYWARD, declare as follows:

1.     I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.     I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.     The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.     I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9. I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10. I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11. I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

12.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed  Aug 3, 2021  in Cambridge, Massachusetts.

*Matt Hayward*

_____

MATTHEW HAYWARD

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

## DECLARATION OF RICHARD HEFTEL IN SUPPORT OF END-USER CONSUMER PLAINTIFFS' SETTLEMENT WITH PILGRIM'S AND MAR-JAC DEFENDANTS

I, RICHARD HEFTEL, declare as follows:

1.      I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.      I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.      The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.      I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: 9359A14C-C05E-402E-9629-00E2C8778495

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9.      I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10.      I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11.      I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

DocuSign Envelope ID: 93E9A14C-C05E-402E-9629-00E2C8778485

12.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed ___7/23/2021___ in Provo, Utah.

RICHARD HEFTEL

DocuSign Envelope ID: BA99FD65-950A-4717-8F06-0873C73FC0F7

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

DECLARATION OF STEPHEN HOLT IN SUPPORT OF
END-USER CONSUMER PLAINTIFFS' SETTLEMENT
WITH PILGRIM'S AND MAR-JAC DEFENDANTS

DocuSign Envelope ID: BA99FD65-950A-4717-8F06-0873C73FC0F7

I, STEPHEN HOLT, declare as follows:

1.    I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.    I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.    The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.    I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: BA99FD65-950A-4717-8F06-0873C73FC0F7

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9.     I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10.     I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11.     I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

DocuSign Envelope ID: BA99FD65-950A-4717-8F06-0873C73FC0F7

12. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed _____ in Albany, New York.

7/26/2021 | 8:50 AM PDT

DocuSigned by:

STEPHEN HOLT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

## DECLARATION OF JOSHUA MADSEN IN SUPPORT OF END-USER CONSUMER PLAINTIFFS' SETTLEMENT WITH PILGRIM'S AND MAR-JAC DEFENDANTS

DocuSign Envelope ID: A5B9E3C7-F268-485C-B764-909DA089D3G3

I, JOSHUA MADSEN, declare as follows:

1. I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2. I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3. The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4. I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: A5B9E3C7-ED6B-485C-B764-909DA089D9G3

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9.      I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10.      I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11.      I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

DocuSign Envelope ID: A5B9E3C7-ED6B-485C-B764-909DA089D9C3

12.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed <u>7/23/2021</u> in Minneapolis, Minnesota.

Joshua Madsen

_____

JOSHUA MADSEN

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

**DECLARATION OF WILLIAM DAVID MARINO IN SUPPORT OF**
**END-USER CONSUMER PLAINTIFFS' SETTLEMENT**
**WITH PILGRIM'S AND MAR-JAC DEFENDANTS**

I, WILLIAM DAVID MARINO, declare as follows:

1.      I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.      I am a class representative in *In re Broiler Chicken Antitrust Litig*., No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.      The information and disclosures in my prior declarations remain true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.      I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount of approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9. I believe that the proposed settlements achieve significant recoveries for the Class and are an excellent result in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10. I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the Class that would not otherwise be achieved.

11. I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

12. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 2ᵍ, 2021 in Ocean Isle Beach, North Carolina.

_William David Marino_

WILLIAM DAVID MARINO

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

## DECLARATION OF DOROTHY MONAHAN IN SUPPORT OF END-USER CONSUMER PLAINTIFFS' SETTLEMENT WITH PILGRIM'S AND MAR-JAC DEFENDANTS

DocuSign Envelope ID: 53A8ED7B-68D8-49A2-AA7D-D734C157AB92

I, DOROTHY MONAHAN, declare as follows:

1.     I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.     I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.     The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.     I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: 53A8ED7B-68D8-40A2-AA7D-D734C157AB92

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9.      I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10.      I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11.      I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

DocuSign Envelope ID: 53A8ED7B-68D8-40A2-AA7D-D734C157AB92

12. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed _____7/28/2021_____ in Detroit, Michigan.

_____

DOROTHY MONAHAN

DocuSign Envelope ID: 62A519A5-90A2-4CB4-B5B4-0892E0B3141A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

DECLARATION OF DINA MORRIS IN SUPPORT OF
END-USER CONSUMER PLAINTIFFS' SETTLEMENT
WITH PILGRIM'S AND MAR-JAC DEFENDANTS

DocuSign Envelope ID: 62A519A5-90A2-4CB4-B5B4-0892E0B3141A

I, DINA MORRIS, declare as follows:

1.     I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.     I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.     The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.     I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: 62A519A5-90A2-4CB4-B5B4-0892E0B3141A

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9. I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10. I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11. I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

DocuSign Envelope ID: 62A519A5-90A2-4CB4-B5B4-0892E0B3141A

12.  I declare under penalty of perjury under the laws of the United States of America that

the foregoing is true and correct. Executed _____ in York, Maine.

8/1/2021 | 6:54 AM PDT

DINA MORRIS

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

DECLARATION OF ALISON PAUK IN SUPPORT OF
END-USER CONSUMER PLAINTIFFS' SETTLEMENT
WITH PILGRIM'S AND MAR-JAC DEFENDANTS

I, ALISON PAUK, declare as follows:

1.      I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.      I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.      The information and disclosures in my prior declarations remain true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required

to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.      I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount of approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9.      I believe that the proposed settlements achieve significant recoveries for the Class and are an excellent result in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10.      I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in

pursuing claims against the remaining defendants. I believe this also represents a material benefit to the Class that would not otherwise be achieved.

11.     I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

12.   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 26, 2021 in Albuquerque, New Mexico.

ALISON PAUK

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

## DECLARATION OF DANIEL PERCY IN SUPPORT OF END-USER CONSUMER PLAINTIFFS' SETTLEMENT WITH PILGRIM'S AND MAR-JAC DEFENDANTS

DocuSign Envelope ID: 478CE7AD-AB59-4762-B75C-0A8C15D143BA

I, DANIEL PERCY, declare as follows:

1. I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2. I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3. The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4. I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: 478CE7AD-AB59-4762-B75C-0A8C15D143BA

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9.      I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10.     I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11.     I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

DocuSign Envelope ID: 478CE7AD-AB59-4762-B75C-0A8C15D143BA

12.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed ___7/28/2021___ in Maquoketa, Iowa.

_____

DANIEL PERCY

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |


DECLARATION OF MICHAEL PERRY IN SUPPORT OF
END-USER CONSUMER PLAINTIFFS' SETTLEMENT
WITH PILGRIM'S AND MAR-JAC DEFENDANTS

DocuSign Envelope ID: A360BE3F-EDDC-4985-A26B-570B51C1FA53

I, MICHAEL PERRY, declare as follows:

1.      I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.      I am a class representative in *In re Broiler Chicken Antitrust Litig*., No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.      The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.      I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: A360BE3F-EDDC-4985-A26B-570B51C1FA52

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9.      I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10.      I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11.      I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

DocuSign Envelope ID: A360BE3F-EDDC-4985-A26B-570B51C1F4E2

12.  I declare under penalty of perjury under the laws of the United States of America that

the foregoing is true and correct. Executed  7/24/2021  in Las Vegas, Nevada.

_____
MICHAEL PERRY

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin Magistrate Judge Jeffrey T. Gilbert |
| *All End-User Consumer Plaintiff Actions* | |

## DECLARATION OF CATHERINE SENKLE IN SUPPORT OF END-USER CONSUMER PLAINTIFFS' SETTLEMENT WITH PILGRIM'S AND MAR-JAC DEFENDANTS

DocuSign Envelope ID: 3FB3B7E5-46A6-4794-8130-C44855CF805F

I, CATHERINE SENKLE, declare as follows:

1. I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2. I am a class representative in *In re Broiler Chicken Antitrust Litig*., No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3. The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4. I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: 3FB3B7E5-46A6-4791-8130-C44855CF805F

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9.      I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10.      I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11.      I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

DocuSign Envelope ID: 3FB3B7E5-46A6-4791-8130-C44855CF805F

12. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed ___7/24/2021___ in Sioux Falls, South Dakota.

_____
CATHERINE SENKLE

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

## DECLARATION OF DIANE SPELL IN SUPPORT OF END-USER CONSUMER PLAINTIFFS' SETTLEMENT WITH PILGRIM'S AND MAR-JAC DEFENDANTS

DocuSign Envelope ID: A7890665-A832-4628-9045-063E06DE6EE2

I, DIANE SPELL, declare as follows:

1.      I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.      I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.      The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.      I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: A7890665-A832-4628-9045-063E06DE6EE2

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9.      I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10.      I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11.      I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

12.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed ___7/24/2021___ in Salem, Missouri.

DocuSign by:

*Diane Spell*

DIANE SPELL

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

**DECLARATION OF MARGO STACK IN SUPPORT OF**
**END-USER CONSUMER PLAINTIFFS' SETTLEMENT**
**WITH PILGRIM'S AND MAR-JAC DEFENDANTS**

DocuSign Envelope ID: 3DA709EB-803C-4BE3-AE47-419B86E27B9C

I, MARGO STACK, declare as follows:

1.      I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.      I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.      The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.      I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9.      I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10.      I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11.      I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

DocuSign Envelope ID: 3DA709EB-903S-4BE3-AE47-419B86E27B9C

12.  I declare under penalty of perjury under the laws of the United States of America that

the foregoing is true and correct. Executed _____7/28/2021_____ in Nashville, Tennessee.

_____
MARGO STACK

IN RE BROILER CHICKEN ANTITRUST
LITIGATION

No. 1:16-cv-08637

This Document Relates To:

Honorable Thomas M. Durkin
Magistrate Judge Jeffrey T. Gilbert

*All End-User Consumer Plaintiff Actions*

## DECLARATION OF MARILYN STANGELAND IN SUPPORT OF
## END-USER CONSUMER PLAINTIFFS' SETTLEMENT
## WITH PILGRIM'S AND MAR-JAC DEFENDANTS

010636-11/1378204 V1          -4-

I, MARILYN STANGELAND, declare as follows:

1.       I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.       I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.       The information and disclosures in my prior declarations remain true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.       I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount of approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9.       I believe that the proposed settlements achieve significant recoveries for the Class and are an excellent result in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources

available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10.    I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the Class that would not otherwise be achieved.

11.    I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

12.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 36, 2021 in Downers Grove, Illinois.

_Marilyn Stangeland_
MARILYN STANGELAND

010636-11/1378204 V1        -4-

DocuSign Envelope ID: 972A886B-D5E9-472B-BC9F-E6B3E706154D

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

**DECLARATION OF ERIC THOMAS IN SUPPORT OF**
**END-USER CONSUMER PLAINTIFFS' SETTLEMENT**
**WITH PILGRIM'S AND MAR-JAC DEFENDANTS**

DocuSign Envelope ID: 972A886B-D5E9-472B-BC9F-E6B3E706154D

I, ERIC THOMAS, declare as follows:

1.     I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.     I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.     The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.     I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: 972A886B-D5E9-472B-BC9F-E6B3E706154D

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9.     I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10.     I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11.     I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

DocuSign Envelope ID: 972A886B-D5E9-472B-BC9F-E6B3E706154D

12. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed 8/3/2021 | 8:13 AM PDT in Portland, Oregon.

ERIC THOMAS

DocuSign Envelope ID: 315A4F36-1AC2-49BD-9DA0-AD18EB270A7C

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

**DECLARATION OF DAVID WEIDNER IN SUPPORT OF**
**END-USER CONSUMER PLAINTIFFS' SETTLEMENT**
**WITH PILGRIM'S AND MAR-JAC DEFENDANTS**

DocuSign Envelope ID: 315A4F36-1AC2-49BD-9DA0-AD18EB270A7C

I, DAVID WEIDNER, declare as follows:

1.    I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.    I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.    The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.    I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: 315A4F36-1AC2-49BD-9DA0-AD18EB270A7C

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9.      I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10.      I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11.      I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

DocuSign Envelope ID: 315A4F36-1AC2-49BD-9DA0-AD18EB270A7C

12. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed _7/26/2021 | 10:53 AM PDT_ in Shawnee, Kansas.

David Weidner

DAVID WEIDNER

DocuSign Envelope ID: 572A3954-9F5F-448D-A7F8-987F30D495F1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin Magistrate Judge Jeffrey T. Gilbert |
| *All End-User Consumer Plaintiff Actions* | |

**DECLARATION OF LESLIE WEIDNER IN SUPPORT OF**
**END-USER CONSUMER PLAINTIFFS' SETTLEMENT**
**WITH PILGRIM'S AND MAR-JAC DEFENDANTS**

DocuSign Envelope ID: 572A3954-9F5F-448D-A7F8-987F30D495F1

I, LESLIE WEIDNER, declare as follows:

1.      I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.      I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.      The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.      I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: 572A3954-9F5F-448D-A7F8-987F30D495F1

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9.     I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10.     I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11.     I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

DocuSign Envelope ID: 572A3954-9F5F-448D-A7F8-987F30D495F1

12. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed _____ 7/27/2021 | 6:21 AM PDT _____ in Shawnee, Kansas.

_____
DocuSigned by:

*Leslie Weidner*

LESLIE WEIDNER

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

IN RE BROILER CHICKEN ANTITRUST
LITIGATION

No. 1:16-cv-08637

This Document Relates To:

*All End-User Consumer Plaintiff Actions*

Honorable Thomas M. Durkin
Magistrate Judge Jeffrey T. Gilbert

## DECLARATION OF NATALIE WILBUR IN SUPPORT OF
## END-USER CONSUMER PLAINTIFFS' SETTLEMENT
## WITH PILGRIM'S AND MAR-JAC DEFENDANTS

I, NATALIE WILBUR, declare as follows:

1.      I am an individual over the age of 18. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.      I am a class representative in *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-03870, filed in the United States District Court for the Northern District of Illinois. I submit this affidavit, on behalf of myself and the Settlement Class, in support of End-User Consumer Plaintiffs' (EUCPs) motion for attorneys' fees, expenses, and service awards and in support of approval of the settlements with Pilgrim's and Mar-Jac Defendants.

3.      The information and disclosures in my prior declarations remains true. As a class representative, I understand that it is my responsibility to be informed of the work done by my attorneys on the case and make my own judgment about the fairness of any settlement proposed by the lawyers. I also understand that in evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class, as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the court.

4.      I have reviewed the terms of the settlements with the Pilgrim's and Mar-Jac Defendants, discussed those terms with my attorneys, and I am aware of and approve all terms of the proposed settlements, as it affects me and the members of the Class. Based upon this reading and my discussions with Class Counsel, I understand that the Pilgrim's Defendants agree to pay $75.7 million and the Mar-Jac Defendants agree to pay $1 million into a fund to be distributed to the Settlement Class. This would bring the total settlements to $181 million. I understand in general terms that the monies will be distributed on a pro rata basis to class members based on: (1) the number and/or dollar amount approved purchases per class member of broiler chicken products (within the class definition) during the settlement class period; and (2) the number of

DocuSign Envelope ID: 194A634C-A482-4E2E-B4E7-1D94FEF655CB

valid claims filed. There will be no reversion of unclaimed funds to any defendant. To the extent that money is not able to be reasonably distributed to class members, EUCPs propose that the money escheat to state governments.

9. I believe that the proposed settlements achieve significant recovery for the Class and is an excellent result considered in light of the risks associated with a complex and costly trial. I recognize the uncertainty of success on any or all of the claims presented in this litigation if this case were to go to trial. I believe that litigation of this case on my own behalf, and not on behalf of a class, would not be financially prudent given my damages in this case versus the resources available to the defendants who formed this cartel. The proposed settlements also permit an immediate recovery to class members without the risk, delay, and expense of trial.

10. I understand that the proposed settlements include provisions that require Pilgrim's and Mar-Jac Defendants to provide significant cooperation with Class Counsel in pursuing claims against the remaining defendants. I believe this also represents a material benefit to the class that would not otherwise be achieved.

11. I believe the settlement agreements between the Pilgrim's and Mar-Jac Defendants and Class Counsel were reached at arms' length, and that the terms of the settlements reflect the independent evaluation by Pilgrim's and Mar-Jac Defendants and Class Counsel of the parties' respective best interests. Based upon my understanding of the class claims asserted in this litigation, and my understanding of the terms of the settlement agreements, I believe the proposed settlements are fair, adequate and reasonable, and in the best interests of class members, and should therefore be granted final approval.

12.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed _____7/24/2021_____ in Derry, New Hampshire.

NATALIE WILBUR