**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION* | Case No. 1:16-cv-08637 |
| | Judge Thomas M. Durkin |
| THIS DOCUMENT RELATES TO CERTAIN DIRECT ACTION PLAINTIFFS | Magistrate Judge Jeffrey T. Gilbert |

**RABOBANK'S REPLY IN SUPPORT OF ITS MOTION TO
STAY DISCOVERY PENDING RESOLUTION OF ITS MOTION
TO DISMISS SECOND AMENDED COMPLAINTS OF CERTAIN DAPS**

Good cause exists for the Court to stay further discovery relating to Rabobank,[1] a financial institution that neither produces nor sells chicken, until such time as the Court decides whether Certain DAPs[2] can state a claim against it. Rabobank, which has already produced documents and witnesses in this litigation as a non-party, was a full participant in discovery—and incurred the related expense—during the pendency of its first motion to dismiss. That motion was successful. Now, with Rabobank's second Rule 12(b)(6) motion fully briefed, the Court should exercise its discretion to stay further discovery pending a ruling on whether the DAPs have satisfied basic federal pleading standards.

In their response, the DAPs fail to identify any unfair prejudice that would result from a stay, or any other compelling reason why Rabobank's motion should be denied.

---

[1] For purposes of this reply, "Rabobank" consists of Defendants Utrecht-America Holdings, Inc., Rabo AgriFinance LLC, Rabobank USA Financial Corporation, Utrecht-America Finance Co., and Coöperatieve Rabobank, U.A., New York Branch.

[2] The Certain DAPs ("DAPs") bringing claims against Rabobank are Amory Investments LLC, Campbell Soup Company, Campbell Soup Supply Company LLC, John Soules Foods, Inc., John Soules Acquisitions LLC, Target Corporation, Sysco Corporation, and US Foods, Inc. (ECF Nos. 4799-4810). All are represented by the same counsel.

**1. The DAPs identify no unfair prejudice that would result from staying discovery until the Court determines whether the DAPs can state a claim against Rabobank.**

Staying discovery pending resolution of Rabobank's Rule 12(b)(6) motion would not prejudice anyone. Rabobank has *already* provided plaintiffs with substantial discovery as a third-party subpoena target under Federal Rule of Civil Procedure 45. After Rabobank was named as a defendant earlier this year, it complied with its initial disclosure obligations under Rule 26. Rabobank's ESI has been collected and preserved. Trial is at least two years away. Once the Court rules on the sufficiency of the DAPs' Second Amended Complaints, Rabobank will be prepared to move ahead (if necessary) to complete whatever discovery legitimately remains.

The DAPs respond (at p. 8) that unless discovery resumes now, Rabobank-related discovery will not be complete before *Defendants'* expert reports are due in December. But the DAPs do not explain why Defendants' experts would require Rabobank-related discovery to complete their reports, and Rabobank cannot think of any. The DAPs have not specified any additional discovery from Rabobank that they (or any other party) supposedly need for their experts or for any other reason.

Instead of identifying any real prejudice that would result from granting Rabobank's motion, the DAPs argue (at pp. 8-9) that Rabobank should not be allowed to "backpedal" from its previous statement that it intended to remain on the same track as the other defendants for pretrial deadlines. This is not a correct characterization of Rabobank's stated position. The "joint statement" from which the DAPs selectively quote (at pp. 8-9) makes clear that Rabobank's intent was to stay on the same track with other defendants "*if Rabobank's Rule 12(b)(6) motion is denied*." (ECF No. 4650 at p. 2) (emphasis added). Rabobank's Rule 12(b)(6) motion, however, was granted.

Although Rabobank initially tried to avoid a separate discovery track, the potential need for one going forward is hardly an unforeseeable consequence of bringing a new defendant into an action that had been pending for four years. Neither of the two cases that the DAPs cite (at p. 9) in which courts were reluctant to issue stays that would result in separate discovery tracks involved circumstances remotely similar to these, where a defendant was brought belatedly into a massive antitrust case after providing discovery as a non-party and, after prevailing on a motion to dismiss, sought a stay of further discovery pending a ruling on the sufficiency of an amended complaint. Notably, the court in both of those cases found it significant that the defendant seeking a stay would be subject to third-party discovery regardless of whether it was dismissed from the case. *See O'Conner v. Eden Mgmt. LLC*, 2014 WL 5761138, at *3 (N.D. Ill. Nov. 4, 2014) (refusing to stay discovery and noting that moving defendants would have been subject to discovery regardless "as third-party respondents to Rule 45 subpoenas"); *Harper v. Central Wire, Inc.*, 2020 WL 5230746, at *4 (N.D. Ill. Sept. 2, 2020) (holding that defendants' likely status as third-party discovery targets upon dismissal "weighs against a stay"). Here, however, the DAPs have already pursued such third-party discovery and, as a result, are in possession of approximately 130,000 pages of documents that Rabobank produced in 2018 and 2019.

The DAPs try to diminish the value of Rabobank's third-party discovery responses by claiming (at pp. 5-6) that "at numerous points" Rabobank "sought to avoid its discovery obligations." But if the DAPs truly believed that were the case, they should have brought their discovery complaints to the Court's attention in a timely manner, so that they could be evaluated

3

in context, rather than raise them now.³ Regardless, the DAPs' attempt to portray Rabobank as obstructionist makes no sense. Rabobank could have pursued a stay of discovery earlier this year when it was named a defendant. Mindful of the then-current scheduling order, however, Rabobank agreed not to do so and made every effort to jump on the "moving train." It was not until the Court dismissed the DAPs' claims against Rabobank and compared their allegations to an attempt to "chase ghosts" (ECF No. 4729 at p. 2) that Rabobank sought a stay.

The DAPs' eagerness to portray Rabobank in a negative light leads them to paint far too rosy a picture of their own track record with respect to Rabobank-related discovery. After the DAPs served their discovery requests on Rabobank, Rabobank served a set of 18 interrogatories on the DAPs. Then, after being informed of discovery limitations that were established long before Rabobank became a party—and with the prodding of the DAPs' counsel—Rabobank reluctantly withdrew all of its interrogatories but one. Rabobank's lone remaining interrogatory asked the DAPs to identify basic information about the alleged conspiracy they have accused Rabobank of joining—including the identities of the Rabobank personnel who supposedly agreed to join it, how those personnel manifested their intent to be part of it, what they agreed to do, and the other participants in the conspiracy. Contrary to the DAPs' assertion in their response (at p. 11), this request was not a "premature contention interrogatory." *See* 5/25/21 Ltr. at p. 4,

---

³ Without litigating each point here, Rabobank disputes the DAPs' untimely (and irrelevant) finger pointing. For example, the DAPs complain (at p. 2) that Rabobank did not accept service of their complaints. But they fail to acknowledge that their complaints named the wrong Rabobank entities, a fact of which they were on notice. (*See* ECF No. 4009, p. 12, n.11). Another example is the DAPs' suggestion (at p. 6) that a Rabobank witness took too long to review an exhibit at her deposition. The exhibit was a 48-page long, single-spaced document with multiple charts and graphs that was dated more than a decade earlier. After examining counsel presented the exhibit, the witness asked if she should read it, and counsel said "[y]es, please." (ECF No. 4942-8, DAPs Resp., Ex. 8 at p. 128). The witness then asked if she should read the "whole document." (*Id.*) Examining counsel represented that she would be asking about two pages and told the witness, "you're free to review the entire document, if you'd like to." (*Id.*) The witness noted, "I read really slow. It's a long document." (*Id.*) Examining counsel responded, "Well, it's your day." (*Id.* at 129).

Ex. 1 (citing several cases so holding). In a letter to DAP counsel just a week before the Court granted Rabobank's first motion to dismiss, Rabobank explained that "[t]hese should not be difficult questions to answer, and the responsive information should be in the DAPs' possession right now." (*Id.*) Nevertheless, to this day, none of the DAPs has provided a substantive answer to Rabobank's simple query. Given their refusal to provide Rabobank with the most fundamental information about their claims, as well as their failure to articulate a compelling need for any discovery from Rabobank, the DAPs are in no position to complain about (non-existent) prejudice here.

**2. The success of Rabobank's first dispositive motion weighs in favor of a stay.**

As Rabobank previously noted, the rationale for staying discovery is greater where, as here, the plaintiffs have already tried and failed to state a claim. Stays are commonly granted in such circumstances. *See, e.g., Ozone Internat'l, LLC v. Wheatsheaf Grp. US, Inc.*, 2020 WL 6741956, at *2 (W.D. Wash. Nov. 17, 2020) (staying discovery pending resolution of motion to dismiss after initial complaint was dismissed and noting that "Defendant is keen to avoid incurring the cost and effort of significant discovery which would be rendered unnecessary if the Court again dismisses Plaintiff's claim"); *Hauck v. Advanced Micro Devices, Inc.*, 2019 WL 1493356, at *4 (N.D. Calif. April 4, 2019) (after granting motion to dismiss, court allowed plaintiffs leave to amend and stayed discovery pending ruling on second motion to dismiss); *Song Fi, Inc. v. Google, Inc.*, 2016 WL 9185325, at *1 (N.D. Calif. April 27, 2016) (granting motion to stay discovery until court determined whether amended complaint would survive dismissal); *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 2015 WL 4873085, at *2 (D. Colo. Aug. 14, 2015) (after granting initial motion to dismiss, court allowed plaintiff leave to amend and stayed discovery "unless and until Plaintiffs stated a viable claim"); *Kennedy v. Full*

*Tilt Poker*, 2010 WL 11597364, at *3 (C.D. Calif. May 6, 2010) (staying discovery pending ruling on viability of amended complaint). Given that "[t]he Supreme Court has stated…that plaintiffs must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it," *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (1st Cir. 2014), issuing a stay after a Rule 12(b)(6) motion is granted is a practical way of balancing the parties' competing interests.

The DAPs' response is unpersuasive. For example, they suggest that certain language in *O'Conner*, 2014 WL 5761138, at *2, stands for the proposition that Rabobank's current motion is entitled no particular presumption of success. But in that case, unlike this one, the plaintiff was not forced to file an amended complaint because the first one had been dismissed. *See id.* And although the DAPs are correct that Rabobank's pending motion to dismiss does not involve a discrete threshold issue like standing or qualified immunity, they overlook that this *is* a complex antitrust case. "Since *Twombly,* Seventh Circuit courts have taken [concerns about burdensome discovery] seriously, staying discovery in antitrust litigation and other complex cases." *Nextstar Broad., Inc. v. Granite Broad. Corp.*, 2011 WL 4345432, at *3 (N.D. Ind. Sept. 15, 2011) (granting stay).

The DAPs' reliance on *Sygenta Seeds, Inc. v. BTA Branded, Inc.*, 2007 WL 3256848 (N.D. Ill. Nov. 1, 2007) also is misplaced. There, the "*sole reason*" the defendant requested a stay was that it had filed a dispositive motion. *See id.* at *2. The defendant had not already prevailed on a motion to dismiss, the case did not involve complex antitrust claims, and no argument was made that the defendant had provided discovery as a non-party.

Finally, the DAPs strain credulity in suggesting (at p. 9 n.12) that the Court's one-paragraph minute order granting their motion for leave (ECF No. 4791) less than a day after the DAPs filed it suggests that the Court found merit in their amended allegations. In dismissing the

6

DAPs' initial complaint "without prejudice," the Court told the DAPs that they could take another shot at stating a claim if they discovered new facts. (ECF No. 4729 at pp. 4-5). In granting the motion for leave, the Court gave Rabobank a date to answer "or otherwise plead" and made no comment about the sufficiency of the amended allegations. (ECF No. 4791). No reason exists to believe that the Court concluded in less than 24 hours and without the benefit of briefing from Rabobank that the DAPs' new allegations will survive a motion to dismiss. *See Lyttle v. Farley*, 2017 WL 3431394, at \*4 n.2 (E.D. Ky. Aug. 9, 2017) (rejecting implication that order allowing amendment meant new pleading would survive dismissal and explaining, "the purpose of allowing the amended complaint was to enable the Court to fully consider the issue with the benefit of briefing before making a dispositive ruling"); *Charal Inv. Co., Inc. v. Rockefeller*, 131 F. Supp. 2d 593, 601 (D. Del. 2001) ("In granting leave for plaintiffs to file a second amended complaint, the court applied [the Rule 15(a)] standard alone….The court was not required to and did not apply the futility standards to plaintiffs' proposed amendments."); *Lutes v. Goldin*, 62 F. Supp. 2d 118, 134 n.17 (D.D.C. 1999) ("In granting Plaintiff leave to file, the Court made no ruling, implicit or explicit, with respect to the merits of his claims.").

**3.    It would be unfair to require Rabobank to incur further expense until the DAPs show they have a valid cause of action.**

The DAPs cite *Robinson v. Walgreen Co.*, 2021 WL 2453069 (N.D. Ill. June 16, 2021) to support their argument that, because Rabobank did not provide an affidavit estimating the costs of discovery, Rabobank's concerns about expense should be disregarded.[4] *Robinson*, however, was not an antitrust case, much less an antitrust case of the size, scope, and complexity of this one.

---

[4] Rabobank's estimate that it would cost a six-figure sum to review the two terabytes of data it collected for responsiveness and privilege was based on preliminary bids it received from four e-discovery vendors, all of which quoted Rabobank a price that far exceeded $100,000.

7

As this Court has acknowledged, "discovery in an antitrust case quickly can become enormously expensive." *In re Broiler Chicken Antitrust Litig.*, 2017 WL 4417447, at *3 (N.D. Ill. Sept. 28, 2017) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). This reality has led courts to stay discovery pending rulings on motions to dismiss in many antitrust cases. *See, e.g., In re Google Digital Advert. Antitrust Litig.*, 2020 WL 7227159, at *3 (N.D. Calif. Dec. 8, 2020) (granting limited motion to stay discovery after filing of motion to dismiss and stating, "as the Supreme Court has recognized, staying discovery may be particularly appropriate in antitrust cases, where discovery tends to be broad, time-consuming and expensive.") (quotations omitted); *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 2020 WL 2843369, at *4 (N.D. Calif. April 10, 2020) (same); *New Mexico Soc'y for Acupuncture & Asian Med. v. Kinetacore Holdings, LLC*, 2017 WL 6343626, at *3 (D. N.M. Dec. 11, 2017) (staying discovery pending resolution of motion to dismiss antitrust counterclaims and explaining, "the discovery burdens of defending against antitrust claims are particularly heavy."); *Nextstar Broadcasting*, 2011 WL 4345432, at *3 (N.D. Ind. Sept. 15, 2011) (granting motion to stay discovery pending resolution of motion to dismiss and citing concerns about burdensome discovery in antitrust cases). The Court should do so here, as well.

To be sure, as the DAPs point out (at p. 12), earlier in this case during the pendency of motions to dismiss filed by other defendants, the Court required the completion of certain "preparatory discovery tasks." *See In re Broilers*, 2017 WL 4417447, at *3. The Court reasoned that expense alone did not justify a "full stay of discovery" under then-existing circumstances. *Id.* The DAPs point to this in suggesting that, even if a stay is justified, Rabobank should be ordered to bear the cost of finalizing search terms and running them against a large volume of already-preserved data. But the Court should reject this suggestion. The fact that Rabobank

8

previously produced thousands of documents and multiple witnesses as a non-party means that even if this motion is granted the circumstances here cannot be compared to "full stay." Moreover, the fact that the Court found the DAPs' first attempt to state a claim against Rabobank insufficient also counsels against requiring Rabobank to incur further expense pending resolution of its second motion to dismiss.

## CONCLUSION

For all of these reasons and those set forth in its motion to stay, Rabobank respectfully requests that the Court grant its motion and stay all discovery against Rabobank pending resolution of Rabobank's Rule 12(b)(6) motion to dismiss Certain DAPs' Second Amended Complaints.

Dated: August 26, 2021

Respectfully submitted,

UTRECHT-AMERICA HOLDINGS, INC., RABO AGRIFINANCE LLC, RABOBANK USA FINANCIAL CORPORATION, UTRECHT-AMERICA FINANCE CO., and COÖPERATIEVE RABOBANK, U.A., NEW YORK BRANCH

By: /s/ David J. Doyle
      One of their attorneys

David J. Doyle  (ARDC #6224848)
Jill C. Anderson  (ARDC #6228756)
Andrew C. Nordahl  (ARDC #6226999)
Matthew T. Connelly  (ARDC #6320465)
Freeborn & Peters LLP
311 S. Wacker Drive, Suite 3000
Chicago, IL 60606
ddoyle@freeborn.com
janderson@freeborn.com
anordahl@freeborn.com
mconnelly@freeborn.com

9

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 26, 2021, he caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ David J. Doyle