**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin Magistrate Judge Jeffrey T. Gilbert |
| *All End-User Consumer Plaintiff Actions* | |

**END-USER CONSUMER PLAINTIFFS' RESPONSE REGARDING**
**APPLICATION OF SLIDING SCALE TO ATTORNEYS' FEES**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................2

I.      Application of a sliding scale is not appropriate in this case, because 33% of the common fund is the *ex ante* market price for successful class counsel in complex antitrust actions like this one. ............................................2

      A.     Fee agreements negotiated with sophisticated entities in other complex antitrust actions demonstrate that a flat 33% fee is the *ex ante* market price.........................................................................3

      B.     Empirical data focusing on antitrust cases demonstrates that a flat 33% fee is the *ex ante* market price. ...........................................4

      C.     Other antitrust cases from this Circuit demonstrate that a flat 33% fee is the appropriate *ex ante* market price here. ....................................6

      D.     The risk undertaken in high-stakes multi-hundred-million-dollar litigation, and the high quality of work and amount of it necessary to successfully resolve fact-intensive antitrust cases like this one, also support a flat 33% fee award. ...........................................7

      E.     The Court should heed *Synthroid I*'s warning and decline to apply a sliding scale in this complex antitrust case where impact and damages are subject to difficult proof....................................................9

      F.     A lodestar cross check demonstrates why a sliding scale is inappropriate in complex antitrust cases like these................................11

II.     If the Court applies a sliding scale, it should use high enough percentages to ensure that counsel receive a multiplier on their lodestar cross check that is consistent with *ex ante* expectations for multipliers in cases of this magnitude, risk, and complexity...................................................................13

CONCLUSION.......................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*,
 743 F.3d 243 (7th Cir. 2014) ...................................................2

*Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*,
 897 F.3d 825 (7th Cir. 2018) ...................................................7

*In re Cap. One Tel. Consumer Prot. Act Litig.*
 80 F. Supp. 3d 781 (N.D. Ill. 2015) ...............................1, 10, 11

*City of Greenville v. Syngenta Corp. Prot., Inc.*,
 904 F. Supp. 2d 902 (S.D. Ill. 2012)........................................7

*In re Dairy Farmers of Am., Inc.*,
 80 F. Supp. 3d 838 (N.D. Ill. 2015) ....................................6, 9

*Florin v. NationsBank, N.A.*,
 34 F.3d 560 (7th Cir. 1994) ...................................................11

*Gehrich v. Chase Bank USA, N.A.*,
 316 F.R.D. 215 (N.D. Ill. 2016)......................................1, 3, 11

*Hale v. State Farm Mut. Auto. Ins. Co.*,
 No. 12-0660-DRH, 2018 WL 6606079
 (S.D. Ill. Dec. 16, 2018)...........................................2, 3, 6, 7, 10

*Harman v. Lyphomed, Inc.*,
 945 F.2d 969 (7th Cir. 1991) .................................................11

*Heekin v. Anthem, Inc.*,
 No. 1:05-CV-01908-TWP, 2012 WL 5878032
 (S.D. Ind. Nov. 20, 2012)....................................................7, 12

*Kleen Prod. LLC v. Int'l Paper Co.*,
 No. 1:10-CV-05711, 2017 WL 5247928
 (N.D. Ill. Oct. 17, 2017).................................................6, 8, 12

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
 733 F. Supp. 2d 997 (E.D. Wis. 2010).....................................12

*In re Potash Antitrust Litig.*,
 No. 08-cv-6910, 2013 WL 12470850
 (N.D. Ill. June 12, 2013) ........................................................7

010636-11/1621865 V1

*In re Propane Direct Purchaser Antitrust Litig.*,
No. 06-cv-3621 (N.D. Ill. June 24, 2010) (ECF No. 209) ......................................................7

*Silverman v. Motorola Sols., Inc.*,
739 F.3d 956 (7th Cir. 2013) ...........................................................1, 3, 5, 6, 10, 11

*Standard Iron Works v. ArcelorMittal*,
No. 08 C 5214, 2014 WL 7781572
(N.D. Ill. Oct. 22, 2014)......................................................................................6, 11

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) .................................................1, 3, 4, 9, 10, 11, 13

*In re Synthroid Mktg. Litig.*,
325 F.3d 974 (7th Cir. 2003) ........................................................................9, 11

*Williams v. Rohm & Haas Pension Plan*,
658 F.3d 629 (7th Cir. 2011) ................................................................................6

*Young v. Cty. of Cook*,
No. 06 C 552, 2017 WL 4164238
(N.D. Ill. Sept. 20, 2017) ...................................................................................10

**Other Authorities**

Brian T. Fitzpatrick, *An Empirical Study of Class Action
Settlements and Their Fee Awards*, 7 J. Empirical Legal
Studies 811 (2010) ...............................................................................................4

Joshua P. Davis & Rose Kohles, *2020 Antitrust Annual Report:
Class Action Filings in Federal Court* (2021) ....................................................5

Joshua P. Davis & Robert H. Lande, *Toward an Empirical
and Theoretical Assessment of Private Antitrust
Enforcement*, 36 Seattle U.L. Rev. 1269 (2013)....................................................4

Robert H. Lande & Joshua P. Davis, *Benefits from Private
Antitrust Enforcement: An Analysis of Forty Cases*,
42 U.S.F. L. Rev. 879 (July 2008)........................................................................4

Theodore Eisenberg, Geoffrey Miller, & Roy Germano,
*Attorneys' Fees in Class Actions: 2009-2013*,
92 N.Y.U. L. Rev. 937 (2017) ..........................................................................5, 12

Theodore Eisenberg & Geoffrey P. Miller, *Attorneys'
Fees & Expenses in Class Action Settlements: 1993-2008*,
7 J. of Empirical Legal Stud. 248 (2010)...........................................................5, 12

## INTRODUCTION

End-User Consumer Plaintiffs (EUCPs) hereby respond to the Court's August 4, 2021, order asking whether it would be appropriate to apply a sliding scale to the attorneys' fees awarded in this case. The answer is no, because the Seventh Circuit instructs district courts to determine the market price for legal services that existed at the outset of the case, and 33% of the common fund is the *ex ante* market price for successful class counsel in complex antitrust actions like this one. *See* section I, below. First, fee agreements negotiated with sophisticated entities in other complex antitrust actions provide a benchmark here and demonstrate that such entities routinely enter into agreements to pay a flat 33% fee—and as much as 40% if the case proceeds through trial. *See* section I.A., below. Second, recent empirical data focusing on antitrust cases from 2009 to 2020 with recoveries ranging from $100 million to $249 million shows that the median fee percentage was 30%. *See* section I.B., below. Third, other district courts from this Circuit in antitrust cases and in cases with common funds exceeding $90 million have routinely awarded a flat 33% fee. *See* section I.C., below. Fourth, the risk undertaken in high-stakes multi-hundred-million-dollar litigation, as well as the high quality of work and amount of it necessary to successfully resolve fact-intensive antitrust cases like this one, also support a flat 33% fee award. *See* section I.D., below.

Thus, this Court should heed *Synthroid I*'s warning that a sliding scale fee schedule is not always best. While *Silverman* explains that damages in securities cases can be calculated mechanically from movements in stock prices—and TCPA cases such as *Gehrich* and *In re Cap. One* involve statutory damages—antitrust impact and pass-through damages are subject to difficult expert proof. *See* section I.E., below. Indeed, a lodestar cross check demonstrates why a sliding scale is inappropriate in complex antitrust cases. While a relatively simple TCPA case like *Gehrich* took only 2,323 hours to litigate, complex antitrust cases like this one take litigation

teams tens of thousands of hours, if not hundreds of thousands of hours, to bring to successful conclusion. And empirical data demonstrates that the mean multiplier for a recovery greater than $67.5 million is 2.72. But using a sliding scale here has the potential to imply a multiplier that is substantially less than 2—or even dips into negative territory. *See* section I.F., below. So if the Court does apply a sliding scale, it should use high enough percentages to ensure that counsel receive a multiplier on their lodestar cross check that is consistent with *ex ante* expectations for multipliers in cases of this magnitude, risk, and complexity. *See* section II, below.

## ARGUMENT

I. **Application of a sliding scale is not appropriate in this case, because 33% of the common fund is the *ex ante* market price for successful class counsel in complex antitrust actions like this one.**

As the Seventh Circuit has stated, "in common fund cases, the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court."[1] But the "percentage method is employed by the vast majority of courts in the Seventh Circuit (like other Circuits)."[2] And this makes sense because "it is essentially unheard of for sophisticated lawyers" to take on a case of great magnitude "on any basis other than a contingency fee, expressed as a percentage of the relief obtained."[3]

When deciding on appropriate fee levels in common-fund cases, the Seventh Circuit has repeatedly held that "courts must do their best to award counsel the market price for legal

---

[1] *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014) (affirming risk multiplier of 1.5 to lodestar amount submitted by counsel to account for the contingent nature of the recovery). Internal citations and quotations omitted, and emphasis added throughout, unless otherwise indicated.

[2] *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *7 (S.D. Ill. Dec. 16, 2018).

[3] *Id.*

services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."[4] In *Synthroid I*, for example, the Court directed the district court on remand to "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)."[5] And this "analysis is informed by a number of factors, including: (1) the actual agreements between the parties as well as fee agreements reached by sophisticated entities in the market for legal services; (2) the risk of non-payment at the outset of the case; (3) the caliber of Class Counsel's performance; and (4) information from other cases, including fees awarded in comparable cases."[6]

## A. Fee agreements negotiated with sophisticated entities in other complex antitrust actions demonstrate that a flat 33% fee is the *ex ante* market price.

In consumer class actions, fee agreements are "owed little weight" given that individual "named plaintiffs are usually cat's paws of the class lawyers."[7] But "sophisticated clients and sophisticated class representatives regularly agree to pay 33.33% or more in risky, complex litigation, even when potential rewards are very large."[8] And "sophisticated entities in the market for legal representation often negotiate fee agreements that call for higher percentages— sometimes reaching as high as 50%—of any resolution obtained after a trial begins."[9] "Systems

---

[4] *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (*Synthroid I*); *see also Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) ("attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services").

[5] 264 F.3d at 718.

[6] *Hale*, 2018 WL 6606079, at *8 (citing *Synthroid I*).

[7] *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 235 (N.D. Ill. 2016).

[8] *Hale*, 2018 WL 6606079, at *8.

[9] *Id.*

where fees rise based on the stage of litigation . . . are the norm for contingent-fee contracts in tort suits," because they "tie the incentives of lawyers to those of the class by linking increased compensation to extra work."[10]  Indeed, counsel for EUCPs in other antitrust litigation representing sophisticated direct purchasers routinely enter into fee agreements whereby they "will be entitled to compensation for their services in the amount of one-third (33 1/3%) of settlement proceeds or forty percent (40%) of judgment proceeds."[11]  The decisions of such savvy participants in the market for legal services serves as a proxy here for how EUCPs would have valued the same class counsel's services *ex ante*.

**B.    Empirical data focusing on antitrust cases demonstrates that a flat 33% fee is the *ex ante* market price.**

A study focusing on 40 antitrust cases shows that a majority awarded a contingent fee of 30% or more where the recoveries were up to $100 million.[12]  And a majority of courts in these antitrust class actions where the recoveries ranged from $100 million to $500 million also awarded attorney's fees of 30% or more.[13]  Moreover, a 2013 study of antitrust cases by the same authors again found that fees were "approximately 30% to 33.3% in cases with recoveries below $100 million and a similar or smaller percentage in cases with recoveries between $100 and $500 million."[14]  And a 2021 study by one of the same authors further found that *the median*

---

[10] *Synthroid I*, 264 F.3d at 722.

[11] Declaration of Shana E. Scarlett ISO EUCPs' Resp. re Application of Sliding Scale to Attorneys' Fees (Scarlett Decl.), ¶ 2, filed concurrently herewith.

[12] Robert H. Lande & Joshua P. Davis, *Benefits from Private Antitrust Enforcement: An Analysis of Forty Cases*, 42 U.S.F. L. Rev. 879, 902 & n.95, 911 & tlb.7A (July 2008).

[13] *Id.* at 911 & tbl.7B.

[14] Joshua P. Davis & Robert H. Lande, *Toward an Empirical and Theoretical Assessment of Private Antitrust Enforcement*, 36 Seattle U.L. Rev. 1269, 1293 (2013); *see also* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Studies 811, 844 (2010) ("fee percentages appeared to vary somewhat

*fee percentage for antitrust cases from 2009 to 2020 with a settlement amount between $100 million and $249 million was 30%*—and only in the range from $250 million to $499 million (and higher) did that median fee percentage drop to 25%.[15]

Likewise, a more recent study from 2017 by the same authors of the study relied upon by the Seventh Circuit in *Silverman* found that the mean and median percentage fee recovery in antitrust cases has increased to 27% and 30% from their earlier reporting of 22% and 23%.[16]

In addition, that same 2017 Eisenberg, Miller, & Germano study found that "[o]n average, fees were 27% of gross recovery during the 2009-2013 period, which is higher than the average fee percentage of 23% that we reported in our analyses of the 1993-2008 period."[17] And for all cases with recoveries larger than $100 million (not just antitrust cases, as in the Davis studies), the mean and median fee percentages varied from 16.6% to 25.5%,[18] which was higher than the previous reporting of 10.2% to 12%.[19]

So the Seventh Circuit's statement in *Silverman* that "[d]ata show that 27.5% is well above the norm for cases in which $100 million or more changes hands" has been undermined by

---

depending on the type of case that settled" with antitrust awards being "more lucrative than securities cases").

[15] Joshua P. Davis & Rose Kohles, *2020 Antitrust Annual Report: Class Action Filings in Federal Court*, p. 28 (2021), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3898782&download=yes (accessed Sept. 14, 2021).

[16] *Compare* Theodore Eisenberg, Geoffrey Miller, & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 952 (2017) (2017 Eisenberg, Miller, & Germano study), *with* Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees & Expenses in Class Action Settlements: 1993-2008,* 7 J. of Empirical Legal Stud. 248, 262 (2010) (2010 Eisenberg & Miller study).

[17] 2017 Eisenberg, Miller, & Germano study at 947.

[18] *Id.*

[19] *Silverman*, 739 F.3d at 958 ("Eisenberg and Miller find that the mean award from settlements in the $100 to $250 million range is 12% and the median 10.2%.").

more recent studies, including by the same authors of those relied upon in *Silverman*.[20]  In any

event, *Silverman* also stated that "[i]t does not necessarily follow that 27.5% is legally

excessive."[21]  And the Court held that the district court did not abuse its discretion in making that

flat percentage fee award, because the case "took more than four years, and more than $5 million

in out-of-pocket expenses by counsel to conduct discovery and engage experts."[22]  So the Court

affirmed the flat fee award of 27.5% of $200 million.[23]

## C.     Other antitrust cases from this Circuit demonstrate that a flat 33% fee is the appropriate *ex ante* market price here.

"Another relevant data point for the market price for attorneys' fees is those awarded in

analogous class action settlements."[24]  Other antitrust cases from the Seventh Circuit

demonstrate that a 33% fee is the appropriate *ex ante* market price here:

- *Kleen Prod. LLC v. Int'l Paper Co.*, No. 1:10-CV-05711, 2017 WL 5247928 (N.D. Ill. Oct. 17, 2017) (awarding class counsel 30% of $354 million common fund);

- *Dairy Farmers*, 80 F. Supp. 3d at 842 (awarding class counsel 33% of $46 million common fund);

- *Standard Iron Works v. ArcelorMittal*, No. 08 C 5214, 2014 WL 7781572, at *1 (N.D. Ill. Oct. 22, 2014) (awarding class counsel 33% of $163.9 million common fund);

---

[20] *Id.*

[21] *Id.  See also Hale*, 2018 WL 6606079, at *11 ("The outer limits of a reasonable *ex ante* fee negotiation in one case may be the inner limits in another.").

[22] *Silverman*, 739 F.3d at 958.

[23] *Id.*; *see also Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 632 (7th Cir. 2011) (affirming district's court approval of motion for 24% of $180 million settlement of ERISA claims); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 846 (N.D. Ill. 2015) ("cases within this circuit have cited the Eisenberg and Miller study and yet still awarded fees above the reported averages") (citing *Silverman*, 739 F.3d at 958-59).

[24] *Hale*, 2018 WL 6606079, at *10.

- *In re Potash Antitrust Litig.,* No. 08-cv-6910, 2013 WL 12470850, *1 (N.D. Ill. June 12, 2013) (awarding class counsel 33% of $90 million common fund); and

- *In re Propane Direct Purchaser Antitrust Litig.,* No. 06-cv-3621 (N.D. Ill. June 24, 2010) (ECF No. 209) (awarding class counsel 29.5% of $52 million common fund).

And other complex cases in this Circuit involving common funds of $90 million or more also take the same approach:

- *Hale*, 2018 WL 6606079, at *12 (awarding class counsel 33% of $250 million settlement of RICO claims and declining to apply sliding scale);

- *City of Greenville v. Syngenta Corp. Prot., Inc.*, 904 F. Supp. 2d 902, 908-09 (S.D. Ill. 2012) (awarding 33% of $105 million settlement of public nuisance class claims); and

- *Heekin v. Anthem, Inc.*, No. 1:05-CV-01908-TWP, 2012 WL 5878032, at *1 (S.D. Ind. Nov. 20, 2012) (awarding class counsel 33.3% of $90 million settlement of claims involving insurance demutualization and declining to apply sliding scale).

Thus, these cases also support a 33% fee as the appropriate *ex ante* market price here.

**D.    The risk undertaken in high-stakes multi-hundred-million-dollar litigation, and the high quality of work and amount of it necessary to successfully resolve fact-intensive antitrust cases like this one, also support a flat 33% fee award.**

"Factors that bear on the market price for legal fees include the risk of nonpayment, the quality of the attorney's performance, the amount of work necessary to resolve the litigation, and the stakes of the case."[25]  In approving the fee award of 30% of the $354 common fund in *Kleen*, the district court found that "[a]ntitrust cases are particularly complex and risky," with the class counsel facing "substantial motion practice, including motions to dismiss, numerous discovery-related motions, significant opposition to class certification including related appeals, summary

---

[25] *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 833 (7th Cir. 2018); *see also Synthroid I*, 264 F.3d at 721.

judgment and motions to exclude expert testimony under *Daubert*."[26]  And "[u]nlike many other antitrust cases, this case was developed solely by counsel, without the aid of government investigations or indictments."[27]  Moreover, if the case had proceeded to trial, they would have likely faced "additional evidentiary challenges, trial risks on liability and damages, post-trial motions, appeals, and more."[28]  So the district court found that such risks "combined with the fact that Class Counsel litigated this case for nearly seven years without compensation but while contributing significant of their own funds up front," supported the requested 30 percent award.[29]

Likewise, as will be detailed in EUCPs' fee motion, over the past five years EUCPs have vigorously prosecuted this action—in which the DOJ did not intervene until 2019—by:

- preparing and filing multiple amended and consolidated complaints;
- successfully opposing Defendants' motion to dismiss;
- in conjunction with counsel representing the other classes, collecting over eight million documents, taking over 180 depositions of Defendants' employees and third parties, and collecting and analyzing voluminous structured data;
- briefing the class certification motion and related *Daubert* motions on antitrust impact and pass-through; and
- negotiating settlements with six different defendant groups.[30]

And EUCPs have already incurred over $8.5 million in out-of-pocket expenses to date, in particular to fund the expert reports addressing antitrust impact and pass-through.[31]  This colossal risk plainly justifies the requested fee percentage.  In short, the risk undertaken and work

---

[26] *Kleen*, 2017 WL 5247928, at *5.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] Scarlett Decl., ¶ 3.

[31] *Id.* at ¶ 4.

required to litigate complex, fact-intensive antitrust cases to completion supports an *ex ante* fee of 33% of any common fund created by counsels' efforts.

**E.    The Court should heed *Synthroid I*'s warning and decline to apply a sliding scale in this complex antitrust case where impact and damages are subject to difficult proof.**

In *Synthroid I*, the Seventh Circuit acknowledged the availability of the sliding scale approach to attorneys' fees in class action cases. But the Court warned that "[t]his is not to say that systems with declining marginal percentages are always best."[32] In *Synthroid I*, the Seventh Circuit rejected the use of a percentage cap in megafund cases, because it would reduce class counsel's incentive to obtain a recovery above the amount of the cap.[33] So the district court instead employed a sliding scale on remand.[34] On subsequent appeal, the Seventh Circuit opined that the consumers class should have received more as compared to a third party payor class, so the Court adjusted the fees "stick[ing] as close as possible to the district court's approach and thus giv[ing] consumer class counsel 30% of the first $10 million and 25% of the next $10 million."[35] But the Court expressly warned that the sliding scale should not always be used.[36]

The Court should heed the warning from *Synthroid I* that sliding scales are not always best, because—as here—they "create declining marginal returns to legal work, ensuring that at some point attorneys' opportunity cost will exceed the benefits of pushing for a larger recovery, even though extra work could benefit the client."[37] Indeed, class members negotiating *ex ante*

---

[32] 264 F.3d at 721.

[33] *Id.* at 719.

[34] *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 975-76 (7th Cir. 2003) (*Synthroid II*).

[35] *Id.* at 980.

[36] *Synthroid I*, 264 F.3d at 721. *See also Dairy Farmers*, 80 F. Supp. 3d at 845 (*Synthroid II* "is not a one-size-fits-all recovery scheme").

[37] *Synthroid I*, 264 F.3d at 722.

would prefer a flat one-third rate that encouraged an aggressive push for a high recovery over a declining marginal percentage rate that could incentivize acceptance of a lower-value settlement at an early stage in the litigation. Thus, the district court in *Young* awarded a flat 33% of a $55 million common fund to avoid the "declining marginal returns to legal work of which *Synthroid I* warned."[38] Likewise, in *Hale*, the court awarded 33% of $250 million and rejected the declining percentage approach, because the case "presented an extremely high risk of non-payment and required an enormous amount of work"—and "Class Counsel here turned down settlement offers that were significantly lower."[39] So too here.[40]

Indeed, *Synthroid I*'s warning is heightened in the context of antitrust cases where damages are hotly contested, with expert depositions, *Daubert* challenges, and summary judgment motions on impact and pass-through coming to dominate the litigation as it progresses. As the Seventh Circuit explained in *Silverman,* a downward scaling fee arrangement is well-suited to securities litigation because "[m]uch of the expense must be devoted to determining liability," whereas "damages often can be calculated mechanically from movements in stock prices."[41] And that "applies equally, if not more, to TCPA cases because nearly all of counsel's efforts are devoted to determining liability" while "[d]amages are fixed by statute."[42] But the intensive focus on impact and pass-through damages in antitrust cases like this one renders the

---

[38] *Young v. Cty. of Cook*, No. 06 C 552, 2017 WL 4164238, at *5 (N.D. Ill. Sept. 20, 2017).

[39] *Hale*, 2018 WL 6606079, at *12.

[40] Decl. of Shana E. Scarlett ISO Mot. for Prelim. Approval of Settlement Agreements between EUCPs and Defs. Pilgrim's and Mar-Jac and to Direct Notice to the Settlement Class, ECF No. 4921-1, ¶¶ 4-6 (explaining that EUCPs engaged in multiple mediation sessions without reaching agreement).

[41] 739 F.3d at 959.

[42] *In re Cap. One Tel. Consumer Prot. Act Litig.* 80 F. Supp. 3d 781, 803 (N.D. Ill. 2015) (citing 739 F.3d at 959).

amount of recovery highly contentious and therefore ill-suited to sliding-scale fees, as indicated in *Synthroid I* and *Silverman*.

**F.     A lodestar cross check demonstrates why a sliding scale is inappropriate in complex antitrust cases like these.**

The two district court TCPA cases that this Court cites as following the sliding scale from *Synthroid II* involved so few hours of litigation effort that the implied multiplier on lodestar would far exceed normal bounds.[43]  As stated in *Standard Iron*, a requested lodestar multiplier of approximately 1.97 is "well within the range of reasonable multipliers awarded in similar contingent cases."[44]  Indeed, the Seventh Circuit has observed that "[m]ultipliers anywhere between one and four have been approved."[45]  But in *Gehrich*, the class counsel billed ***only 2,323 hours*** on the litigation for a lodestar of $1.287 million, meaning that their fee request of 33% of $34 million would have resulted in "a nearly 740% increase over the lodestar."[46]  And even the reduced fee award of 21.35% "amount[ed] to a 564% increase over the lodestar."[47]  Likewise, in *In re Cap. One*, the court pointed out that a multiplier of 1.57 on a lodestar of $2.2 million equals $3.5 million, or 4.6% of the $75.5 million settlement.[48]  Put another way, the requested 30% fee award would imply a multiplier of 10.23 and the approved 20.77% fee award

---

[43] Notification of Docket Entry, Minute Order, ECF No. 4915 (August 4, 2021) (Aug. 4 Minute Order) (citing *Gehrich*, 316 F.R.D. at 236, and *In re Cap. One*, 80 F. Supp. 3d at 805).

[44] 2014 WL 7781572, at *2.

[45] *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991); *see also Florin v. NationsBank, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994) ("[b]ecause class counsel ha[s] requested a multiplier of 1.53, the district court need not worry about exceeding what we have suggested is a sensible ceiling of double the lodestar").

[46] *Gehrich*, 316 F.R.D. at 238.

[47] *Id.*

[48] 80 F. Supp. 3d at 808 & n15.

a multiplier of 7.08.[49]  So application of the sliding scale from *Synthroid II* in *Gehrich* and *In re Cap. One* reduced what would have been even larger effective multipliers to multipliers of 5.64 and 7.08 respectively.

These cases can be contrasted with complex litigation involving litigation teams putting in tens of thousands—if not hundreds of thousands—of hours.  In *Heekin*, for example, "Class Counsel and staff completed more than 40,800 hours," such that the 33.3% fee award on $90 million "represent[ed] a multiplier of 1.5."[50]  And in *Kleen,* the litigation team put in 220,000 hours such that the 30% fee on the $354 million common fund represented "less than a 1.1 multiplier."[51]

Here, EUCPs have not yet filed a motion for interim fees.  But DPPs have indicated in their motion that they have invested 100,608 hours of attorney time such that their lodestar is $50,928,159 through December 31, 2020.[52]  So a 33% fee award would result in a conservative multiplier of 1.114.[53]  ***And to reduce the percentage lower than 33.3% using a sliding scale could imply a negative multiplier.***  Moreover, if DPPs were to obtain a larger common fund in a total amount of $300 million, for example, 33.3% would mean a $100 million fee award—and still imply a multiplier of less than 2 based on the current lodestar.  And because that lodestar would have continued to grow as the litigation effort continued, the implied multiplier would

---

[49] $22,636,529 / $2,213,769 = 10.23.  $15,668,265 / $2,213,769 = 7.08.

[50] 2012 WL 5878032, at *5.

[51] 2017 WL 5247928, at *4.

[52] Mem. ISO DPPs' Mot. for Interim Payment of Attorneys' Fees, Reimbursement of Expenses, and Class Representative Incentive Awards, ECF No. 4551, at 18.  EUCP's lodestar will be similar.

[53] *Id.*

likely be substantially less than 2. The Court should not reduce it further by imposing a sliding scale.

Indeed, the 2017 Eisenberg, Miller, & Germano study shows that the ***mean multiplier for a recovery greater than $67.5 million is 2.72***.[54] Likewise, the mean multiplier in the Seventh Circuit has ranged from 1.76 to 1.85.[55] And the mean multiplier in antitrust cases has ranged from 1.61 to 2.24.[56] Given the size of the recovery here, a mean multiplier of 2.72 on cross check is the guide—and in any event the data does not support using a sliding scale here to reduce the multiplier significantly below two and potentially into negative territory.

## II. If the Court applies a sliding scale, it should use high enough percentages to ensure that counsel receive a multiplier on their lodestar cross check that is consistent with *ex ante* expectations for multipliers in cases of this magnitude, risk, and complexity.

At the August 12, 2021, preliminary approval hearing, the Court explained that in responding to the Court's August 4, 2021, Minute Order, Class Plaintiff could file "separately" or "get together on it."[57] So EUCPs join in the sliding scale proposal presented by DPPs. Of course, "[a]ny use of a sliding scale should be based solely on each class's settlement, not the total amount recovered by the two classes."[58] And EUCPs urge the Court that, if it decides to use a sliding scale approach, the declining marginal percentages should be high enough to ensure

---

[54] 2017 Eisenberg, Miller, & Germano study at 967. *See also In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1015 (E.D. Wis. 2010) (awarding a fee that represented a multiplier of 2.07 on a lodestar cross-check and recognizing that "the mean risk multiplier in cases involving class settlements comparable in size to the present settlement [of $110.7 million] is 2.70.") (citing 2010 Eisenberg & Miller study).

[55] 2017 Eisenberg, Miller, & Germano study at 967; 2010 Eisenberg & Miller study at 272.

[56] *Id.*

[57] Tr. of Tel. Proceedings, Mot. for Prelim. Approval of Settlements (August 12, 2021), Scarlett Decl., Ex. A, at 28:17-20; *see also* Aug. 4 Minute Order (inviting EUCPs to submit brief subject to the deadline set with respect to the DPPs).

[58] *Synthroid I*, 264 F.3d at 722.

that counsel receive a multiplier on their lodestar cross check that is consistent with *ex ante*

expectations for multipliers in cases of this magnitude, risk, and complexity.

## CONCLUSION

For all these reasons, EUCPs respectfully submit that (1) application of a sliding scale is

not appropriate in this complex antitrust case; and (2) if the Court applies a sliding scale, it

should use the one set forth above.


DATED:  September 15, 2021                    Respectfully submitted,

                                              HAGENS BERMAN SOBOL SHAPIRO LLP

                                              By _____ */s/ Steve W. Berman* _____
                                                     Steve W. Berman
                                              Breanna Van Engelen
                                              HAGENS BERMAN SOBOL SHAPIRO LLP
                                              1301 Second Avenue, Suite 2000
                                              Seattle, WA 98101
                                              Tel: (206) 623-7292
                                              steve@hbsslaw.com
                                              breannav@hbsslaw.com

                                              Shana E. Scarlett
                                              Rio R. Pierce
                                              715 Hearst Avenue, Suite 202
                                              Berkeley, CA 94710
                                              Tel: (510) 725-3000
                                              shanas@hbsslaw.com
                                              riop@hbsslaw.com

                                              Brent W. Johnson
                                              Benjamin D. Brown
                                              Daniel H. Silverman
                                              Alison Deich
                                              COHEN MILSTEIN SELLERS & TOLL, PLLC
                                              1100 New York Ave. NW
                                              Suite 500, West Tower
                                              Washington, DC 20005
                                              Tel: (202) 408-4600
                                              bjohnson@cohenmilstein.com
                                              bbrown@cohenmilstein.com

010636-11/1621865 V1

dsilverman@cohenmilstein.com
adeich@cohenmilstein.com

*Proposed Interim Lead Counsel for End-User
Consumer Indirect Purchaser Plaintiffs Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on September 15, 2021, a true and correct copy of the foregoing was electronically filed by CM/ECF, which caused notice to be sent to all counsel of record.

By<u>     */s/ Steve W. Berman*     </u>
            Steve W. Berman