# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>All Commercial & Institutional Indirect Purchaser Plaintiff Actions | Case No. 1:16-cv-08637 |

**COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' RESPONSE REGARDING APPLICATION OF A SLIDING <u>ATTORNEYS' FEES SCALE</u>**

**TABLE OF CONTENTS**

                                                                                                           **Page**

I.     INTRODUCTION .................................................................................................... 1

II.    ARGUMENT ............................................................................................................. 2

       A.     The Percentage of the Fund Method is the Preferred Approach for Awarding Attorneys' Fees in Complex Class Actions in the Seventh Circuit ........................ 2

       B.     A Declining Sliding Scale Attorneys' Fee Award Is Not Appropriate In this Case and Would Be Contrary to Seventh Circuit Authority ................................... 5

       C.     The Enormous Risks and Investment by Class Counsel in This Case Militate Against Imposition of a Declining Sliding Scale ...................................................... 9

       D.     If the Court is Inclined to Adopt a Declining Sliding Scale It Should Adopt Professor Klonoff's Proposal .................................................................................. 11

III.   CONCLUSION ........................................................................................................ 12

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..................................................................................4

*Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*,
  743 F.3d 243 (7th Cir. 2014) ................................................................................................2

*Arenson v. Bd. of Trade of City of Chi.*,
  372 F. Supp. 1349 (N.D.Ill.1974) .......................................................................................10

*In re Blue Cross Blue Shield Antitrust Litigation*,
  MDL 2406 (N.D. Ala. May 28, 2021) ..................................................................................8

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ..................................................................................6, 7

*In re Cardizem CD*,
  218 F.R.D. 508 (E.D. Mich. 2003) .......................................................................................5

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
  No. C-07-5944 JST, 2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) ......................................3

*Chambers v. Together Credit Union*,
  No. 19-CV-00842-SPM, 2021 WL 1948452 (S.D. Ill. May 14, 2021) ................................2

*Matter of Cont'l Illinois Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ..............................................................................................10

*In re Dairy Farmers of Am., Inc.*,
  80 F. Supp. 3d 838 (N.D. Ill. 2015) ........................................................................2, 3, 6, 9

*First Impressions Salon, Inc. v. Nat'l Milk Producers Fed'n*,
  No. 3:13-CV-00454-NJR, Doc. No. 541 (S.D. Ill. Apr. 27, 2020) ...............................3, 4, 9

*Florin v. Nationsbank of Georgia, N.A.*,
  34 F.3d 560 (7th Cir. 1994) ..................................................................................................5

*Gaskill v. Gordon*,
  942 F. Supp. 382 (N.D. Ill. 1996) .........................................................................................2

*Gehrich v. Chase Bank USA, N.A.*,
  316 F.R.D. 215 (N.D. Ill. 2016) .......................................................................................6, 7

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ................................. 2, 4, 5, 9

*In re High Fructose Corn Syrup Antitrust Litig.*,
  MDL 1087 (C.D. Ill. Oct. 7, 2004) ......................................................................................... 8

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
  No. C-10-4038-MWB, 2011 WL 5547159 (N.D. Iowa Nov. 9, 2011) ................................ 3, 9

*Kleen Prod. LLC v. Int'l Paper Co.*,
  No. 1:10-CV-05711, 2017 WL 5247928 (N.D. Ill. Oct. 17, 2017) ........................................... 3

*In re Linerboard Antitrust Litig.*,
  MDL No. 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) .................................................. 4

*In re Lloyd's Am. Trust Fund Litig.*,
  No. 96 Civ. 1262 (RWS), 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .............................. 4

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  No. MDL 1290 (TFH), 2003 WL 22037741 (D.D.C. June 16, 2003) ..................................... 3

*N.P. v. Standard Innovation Corp*,
  No. 16 CV 8655, 2017 WL 10544061 (N.D. Ill. July 25, 2017) .............................................. 2

*In re Packaged Ice Antitrust Litig.*,
  No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ................................ 2, 10

*In Re: Plasma-Derivative Protein Therapies Antitrust Litig.*,
  No. 09-07666, ECF Nos. 691, 701 (N.D. Ill. Jan 22, 2014; April 16, 2014) ....................... 3, 9

*Rawlings v. Prudential Bache*,
  9 F.3d 513 (6th Cir. 1993) ....................................................................................................... 5

*In re Ready-Mixed Concrete Antitrust Litigation*,
  No. 05-cv-00979-SEB, ECF No. 823 (S.D. Ind. March 30, 2010) .......................................... 9

*Silverman v. Motorola Solutions, Inc.*,
  739 F.3d 956 (7th Cir. 2013) ............................................................................................... 5, 6

*Standard Iron Works v. ArcelorMittal (In re Steel Antitrust Litig.)*,
  No. 08 C 5214, 2014 WL 7781572 (N.D. Ill. Oct. 22, 2014) .............................................. 3, 9

*In re Synthroid Marketing Litigation*,
  264 F.3d 712 (7th Cir. 2001) ................................................................................................... 5

*Taubenfeld v. AON Corp.*,
  415 F.3d 597,600 (7th Cir. 2005) ............................................................................................ 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. M 07-1827 SI, 2011 WL 7575003 (N.D. Cal. Dec. 27, 2011)...........................................3

*In re Vitamins Antitrust Litig.*,
  MDL 1285, 2001 WL 34312839 (D.D.C. July 16, 2001).....................................................3, 4

*Williams v. Rohm & Haas Pension Plan*,
  658 F.3d 629 (7th Cir. 2011) ..................................................................................................5

*Young v. Cty. of Cook*,
  No. 06 C 552, 2017 WL 4164238 (N.D. Ill. Sept. 20, 2017).....................................................6

**Other Authorities**

Brian T. Fitzpatrick, *A Fiduciary Guide to Awarding Fees in Class Actions,* 89
  FORDHAM L. REV. 1151, 1159-61 (2021) ................................................................................4

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action
  Settlements: An Empirical Study*...........................................................................................4

**I.     INTRODUCTION**

In response to the Court's Order of August 4, 2021, regarding the propriety of implementing a sliding scale for attorneys' fees in this complex antitrust litigation, the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs") respectfully submit this brief. Accompanying this brief is an expert declaration from Professor Robert Klonoff—an esteemed law professor and luminary in the field who has provided expert opinions in numerous complex litigations regarding attorneys' fees and settlement related issues. *See* Declaration of Professor Robert Klonoff ("Klonoff Decl."). Professor Klonoff has been repeatedly qualified as expert on attorneys' fees issues in complex class action cases by courts across the country, including in coordinated actions like this one.

CIIPPs incorporate by reference Professor Klonoff's declaration as though fully set forth herein. This brief is merely intended to summarize Professor Klonoff's views, which CIIPPs adopt in full. In summary, CIIPPs do not believe a declining attorney fee scale is warranted in this case and believe the Court can and should award a flat percentage of the fund recovery of 33.33%. As the scholarly and empirical research reveal, a declining attorney fee scale is not the *ex ante* market price for attorney services in complex antitrust cases such as this one. Moreover, the Seventh Circuit, and courts within the Seventh Circuit, have rejected a declining attorney fee scale under facts that more closely resemble those that exist in this litigation. Similarly, courts within the Seventh Circuit, and elsewhere, have repeatedly approved flat percentage of the fund attorney fee awards in antitrust and other similarly complex cases. And finally, given the enormous risks incurred and the investment by CIIPPs' class counsel, a declining attorney fee scale would likely undercompensate counsel in this matter. For all these reasons, and for others more fully articulated by Professor Klonoff, the Court should decline to impose a declining attorney fee scale.

## II. ARGUMENT

### A. The Percentage of the Fund Method is the Preferred Approach for Awarding Attorneys' Fees in Complex Class Actions in the Seventh Circuit

Courts in the Seventh Circuit have the discretion to apply the lodestar or a percentage of the fund method for awarding attorneys' fees in class action cases. *See Americana Art China Co. v. Foxfire Printing & Packaging, Inc*., 743 F.3d 243 (7th Cir. 2014) ("Both the lodestar approach and the percentage approach may be appropriate in determining attorney fee awards, depending on the circumstances."); *see also* Klonoff Decl. ¶¶ 18-20. A lodestar approach awards attorneys' fees based on the number of cumulative hours worked in the litigation, multiplied by the reasonable hourly rates of the attorneys working on the case. *Gaskill v. Gordon*, 942 F. Supp. 382, 385–86 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998). A percentage of the fund method awards attorneys' fees based on a percentage of the fund generated by class counsel. *N.P. v. Standard Innovation Corp*, No. 16 CV 8655, 2017 WL 10544061, at *3 (N.D. Ill. July 25, 2017).

Although the Seventh Circuit has authorized either approach, the percentage of the fund method is overwhelmingly favored by courts in this Circuit. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *7 (S.D. Ill. Dec. 16, 2018) ("percentage method is employed by the vast majority of courts in the Seventh Circuit…."); *In re Dairy Farmers of Am., Inc.,* 80 F. Supp. 3d 838, 845 (N.D. Ill. 2015) ("*Dairy Farmers*") (percentage of the fund has "emerged as the favored method for calculating fees in common–fund cases in this district"); *Chambers v. Together Credit Union,* No. 19-CV-00842-SPM, 2021 WL 1948452, at *1 (S.D. Ill. May 14, 2021) ("[T]he percentage method is employed by the vast majority of courts in the Seventh Circuit"). Indeed, courts within the Seventh Circuit have recognized that the percentage of the fund method is the preferred method in most other circuits as well. *Hale*, 2018 WL 6606079, at *7; *see also In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *17

2

(E.D. Mich. Dec. 13, 2011) (stating that the Sixth Circuit has recognized numerous advantages of the percentage of the fund method); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 4126533, at *1 (N.D. Cal. Aug. 3, 2016) (applying percentage of the fund method in Ninth Circuit); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 7575003, at *1–2 (N.D. Cal. Dec. 27, 2011) (same); *In re Lorazepam & Clorazepate Antitrust Litig.*, No. MDL 1290 (TFH), 2003 WL 22037741 at *7 (D.D.C. June 16, 2003) ("The D.C. Circuit has joined other circuits in concluding that a percentage of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases.").

This is particularly true in complex antitrust cases, where the Seventh Circuit, district courts in the Seventh Circuit, and courts elsewhere have routinely awarded a flat percentage of the fund—and, in fact, often 30% or more of the common fund. *See, e.g., Kleen Prod. LLC v. Int'l Paper Co.,* No. 1:10-CV-05711, 2017 WL 5247928 (N.D. Ill. Oct. 17, 2017) (30% awarded on $354 million in settlements); *Dairy Farmers*, 80 F. Supp. 3d at 862 (33.3% awarded on $46 million in settlements); *First Impressions Salon, Inc. v. Nat'l Milk Producers Fed'n*, No. 3:13-CV-00454-NJR, Doc. No. 541 (S.D. Ill. Apr. 27, 2020) ("*Milk*") (33.3% awarded on $220 million in settlements); *Standard Iron Works v. ArcelorMittal (In re Steel Antitrust Litig.),* No. 08 C 5214, 2014 WL 7781572, at *1 (N.D. Ill. Oct. 22, 2014) ("*Steel*") (awarding 33.3% on $163.9 million in settlements); *In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. C-10-4038-MWB, 2011 WL 5547159, at *6 (N.D. Iowa Nov. 9, 2011) ("*Concrete*") (awarding 36 percent of $18.5 million settlement fund); *In Re: Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09-07666, ECF Nos. 691, 701 (N.D. Ill. Jan 22, 2014; April 16, 2014) (unreported) (awarding 33.3% on two $64 million settlement amounts); *see also* Klonoff Decl. ¶¶ 74-78; *In re Vitamins Antitrust Litig.,* MDL 1285, 2001 WL 34312839, at *14 (D.D.C. July 16, 2001) ("*Vitamins*") (awarding 34.06 percent

of $359 million settlement fund); *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 WL 1221350, at *1-2, 16-17, 19 (E.D. Pa. June 2, 2004) (expressly declining to adopt sliding scale approach and awarding 30 percent of $202 million settlement fund); *accord* Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. Empirical Legal Stud. 1, 35 (2004) ("Substantial empirical evidence indicates that a one-third fee is a common benchmark in private contingency fee cases.").

As courts have repeatedly recognized, there are good reasons for applying a flat percentage of the fund recovery for attorneys' fees in complex cases without a declining sliding scale. *First*, such a recovery "directly aligns the interests of the Class and its counsel for the efficient prosecution and early resolution of litigation, which clearly benefits both litigants and the judicial system." *In re Am. Bank Note Holographics*, *Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 431-32 (S.D.N.Y. 2001); *see also Vitamins,* 2001 WL 34312839, at *3 (same). *Second*, this method of awarding fees, without a declining sliding scale, most closely simulates private contingency fee arrangements. *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 WL 31663577, at *28 (S.D.N.Y. Nov. 26, 2002); *Vitamins*, 2001 WL 34312839, at *12; *see also* Brian T. Fitzpatrick, *A Fiduciary Guide to Awarding Fees in Class Actions,* 89 FORDHAM L. REV. 1151, 1159-61 (2021). As the Seventh Circuit itself has stated, a flat percentage of the fund fee award is appropriate because "it is essentially unheard of for sophisticated lawyers to take on [an antitrust] case of this magnitude and type on any basis other than a contingency fee, expressed as a percentage of the relief obtained." *Hale*, 2018 WL 6606079, at *7 (quoting *In re Payment Card Interchange Fee and Merch. Discount Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014), *rev'd on other grounds*, 827 F.3d 223 (2d Cir. 2016)). *Third*, the percentage of the fund approach fosters judicial economy by eliminating a detailed and time-consuming lodestar analysis. *See*

*Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 563 (7th Cir. 1994) ("*Florin I*") ("there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration"); *Rawlings v. Prudential Bache*, 9 F.3d 513, 516–517 (6th Cir. 1993). This is an important feature because "the lodestar method is too cumbersome and time-consuming for the resources of the Court." *In re Cardizem CD*, 218 F.R.D. 508, 532 (E.D. Mich. 2003) (*quoting In re F & M Distribs., Inc. Sec. Litig.*, No. 95-CV-71778, 1999 U.S. Dist. LEXIS 11090, at *8 (E.D. Mich. June 29, 1999)).

**B. A Declining Sliding Scale Attorneys' Fee Award Is Not Appropriate In this Case and Would Be Contrary to Seventh Circuit Authority**

The Seventh Circuit's approach to awarding attorneys' fees is unique from other circuits in that district courts are directed to "assign fees that mimic a hypothetical *ex ante* bargain between the class and its attorneys." *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011); *Silverman v. Motorola Solutions, Inc.,* 739 F.3d 956, 957 (7th Cir. 2013) (fees "should approximate the market rate that prevails between willing buyers and willing sellers of legal services"). And while the Seventh Circuit has discussed the potential propriety of utilizing a declining sliding scale for the award of attorneys' fees in some cases, it has never *required* one, and has cautioned that imposing one without regard to the facts and circumstances of the case would be unfair to counsel and even contrary to a class's interests. *See* Klonoff Decl. ¶¶ 27-33. For example, even in the Seventh Circuit case where a declining scale was discussed, the court cautioned that "systems with declining marginal percentages are not always best" because they "ensur[e] that at some point attorneys' opportunity costs will exceed the benefit of pushing for a large recovery, even though extra work could benefit the client." *In re Synthroid Marketing Litigation*, 264 F.3d 712, 721 (7th Cir. 2001) ("*Synthroid I*"). Other courts within the Seventh Circuit, and the Seventh Circuit itself, have cautioned against its use. *See, e.g., Hale v. State Farm*

5

*Mut. Auto. Ins. Co.,* No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) (rejecting the contention that a declining sliding scale was required and awarding 33.33% on over $200 million in settlements); *Dairy Farmers*, 80 F. Supp. 3d at 838 (rejecting declining sliding scale and finding that approach "is not a one-size-fits-all recovery scheme, and there are many other factors to consider before declaring this pricing grid the Cinderella slipper."); *Young v. Cty. of Cook,* No. 06 C 552, 2017 WL 4164238 (N.D. Ill. Sept. 20, 2017) (rejecting declining sliding scale because it "would disincentivize" class counsel). Indeed, the Seventh Circuit—including Judge Easterbrook—affirmed a fee award of 27.5% of a $200 million fund with no sliding scale at all. *See Silverman v. Motorola Solutions, Inc.,* 739 F.3d 956 (7th Cir. 2013).

Similarly, the facts and circumstances of the two cases cited by this Court in its minute order where declining sliding scales were imposed—*Gehrich v. Chase Bank USA, N.A.,* 316 F.R.D. 215 (N.D. Ill. 2016), and *In re Cap. One Tel. Consumer Prot. Act Litig.,* 80 F. Supp. 3d 781 (N.D. Ill. 2015) ("*Cap One*")—differ markedly from the instant case, as Professor Klonoff discusses in his Declaration. Klonoff Decl. ¶¶ 34-42. Both were Telephone Consumer Protection Act ("TCPA") cases, where courts recognize both that the fight is typically over liability (not damages) and that damages are based on statute and largely formulaic, unlike antitrust cases where damages require advanced econometric and statistical analysis and are hotly contested by defendants. Moreover, unlike this case where Defendants have vigorously litigated every aspect, in *Gehrich* a settlement was reached "after only nine months and before any significant motion practice." 316 F.R.D. at 230. This fact was reflected in class counsel's lodestar (and, therefore, investment) in the case. Indeed, in *Gehrich*, class counsel devoted only 2,323 hours to the litigation, modest in comparison with the hours invested in this case, for a lodestar of $1.287 million. Had the requested fee in *Gehrich* been granted, it would have operated as a tremendous windfall for class counsel,

resulting in "a nearly 740% increase over the lodestar." *Gehrich*, 316 F.R.D. at 238. Contrast the *Gehrich* circumstances with those present here: CIIPP counsel have not been compensated for their services for five years, and during that time have invested 84,000 hours for a cumulative $39 million in attorney time/lodestar and over $9.5 million in out-of-pocket costs. *See* Klonoff Decl. ¶ 53. A windfall dynamic similar to that in play in *Gehrich* would have resulted in the *Cap One* litigation had the court awarded fees on a flat percentage of the fund method there, with the requested fee amounting to an over 10 multiplier in what was considered a relatively straightforward TCPA case. 80 F. Supp. 3d at 808, n15. Professor Klonoff's declaration further discusses why the very few cases that have applied such a declining sliding scale in the first place are poor analogs to this case. *See* Klonoff Decl. ¶¶ 40-42.

Critically, as Professor Klonoff's empirical research revealed, there is not a single antitrust case in the Seventh Circuit (or elsewhere) where a declining fee scale was utilized. Klonoff ¶¶ 47-50. As Professor Klonoff explains, there are likely good reasons for the lack of any authority on this subject in the antitrust context: it is because declining fee scales are simply not used in the market for antitrust cases, given these actions' complexity, risk, and difficulty. *Id.* ¶¶ 47-50. For example, none of the CIIPP Class Representatives—many of whom are sophisticated commercial or institutional food preparers, including businesses operating multiple restaurant locations— negotiated a sliding scale fee structure in this case. *Id* ¶ 59. This is strong evidence that the market would not (and does not) support an *ex ante* imposition of a sliding scale structure. *See id.* (discussing fact that CIIPP class representatives are sophisticated businesses and do not implicate some of the concerns expressed in TCPA cases). *Second*, as Professor Klonoff discusses, substantial scholarly work and empirical evidence reveal that such sliding scale agreements in antitrust cases do not exist, even in the non-class action context. Klonoff Decl. ¶¶ 47-50. For

7

example, Columbia Law School Professor John C. Coffee, Jr. stated in a declaration under oath that "I have never seen such a fee contract used in the antitrust context; nor, in any context, have I seen a large corporation negotiate such a contract (they have instead typically used straight percentage of the recovery formulas)." Klonoff Decl. ¶ 47; *see also In re High Fructose Corn Syrup Antitrust Litig.*, MDL 1087 (C.D. Ill. Oct. 7, 2004), ECF No. 1421, ¶ 22. And Professor Charles Silver stated the following in the context of a major antitrust case: "My experience is similar to Professor Coffee's. I know of few instances in which large corporations used scales with declining percentages when hiring attorneys." Klonoff Decl. ¶ 47; *see also* Declaration of Charles Silver, *In re Blue Cross Blue Shield Antitrust Litigation*, MDL 2406 (N.D. Ala. May 28, 2021), ECF No. 2733-3 ¶ 35. Instead, scholarly and empirical research reveals that if sliding scales are utilized at all, they are utilized in an increasing rather than declining scale. Klonoff Decl. ¶ 48. In any event, the foregoing research reveals something critical; and that is that fidelity to the Seventh Circuit's direction that district courts should attempt to award fees that would have prevailed in the market *ex ante* requires rejection of a declining sliding scale in this case. If district courts are required to replicate market conditions *ex ante*, as the Seventh Circuit has held, but the market conditions reveal that declining sliding scales do not exist in *this market*, it would be contrary to Seventh Circuit law to impose one here. *See* Klonoff Decl. ¶ 50 ("In short, use of a declining sliding scale approach in the instant case would not replicate the market *ex ante;* instead, it would be at odds with the flat percentage approach that is routinely negotiated in complicated antitrust class actions like this one.").

Finally, other antitrust attorney fee awards from this Circuit reinforce the foregoing points—that is, that the market in antitrust cases does not support an *ex ante* imposition of a declining sliding fee scale. As Professor Klonoff's declaration outlines, courts within the Seventh

8

Circuit routinely award flat percentage of the fund recoveries without the imposition of a declining scale, even where large settlement funds have been established. *See* Klonoff Decl. ¶¶ 74-78. Utilizing other fee awards from the Circuit as data points is an approach that has been endorsed by the Seventh Circuit and by district courts within the Circuit. *See Taubenfeld v. AON Corp.,* 415 F.3d 597,600 (7th Cir. 2005) ("attorneys' fees from analogous class action settlements" are relevant to the analysis); *accord Dairy Farmers,* 80 F. Supp. 3d at 845 ("As a barometer for assessing the reasonableness of a fee award in common-fund cases, courts look to the going market rate for legal services in similar cases."). And when these authorities are reviewed, they reveal that in fact, courts in the Seventh Circuit "regularly award percentages of 33.33% or higher to counsel in class action litigation." *Hale,* 2018 WL 6606079 at *10; *see also* Klonoff Decl. ¶¶ 74-78; *Dairy Farmers,* 80 F. Supp. 3d at 862 (33.3% awarded on $46 million in settlements); *Milk*, No. 3:13-CV-00454-NJR, ECF No. 541 (33.3% awarded on $220 million in settlements); *Steel,* 2014 WL 7781572, at *1 (awarding 33.3% on $163.9 million in settlements); *In re Ready-Mixed Concrete Antitrust Litigation*, No. 05-cv-00979-SEB, ECF No. 823 (S.D. Ind. March 30, 2010) (rejecting sliding scale and awarding 33.3%); *Concreate*, 2011 WL 5547159, at *6 (awarding 36 percent of $18.5 million settlement fund); *Plasma-Derivative*, ECF Nos. 691, 701 (awarding 33.3% on $128 million in settlements).

      **C.    The Enormous Risks and Investment by Class Counsel in This Case Militate Against Imposition of a Declining Sliding Scale**

While CIIPPs have not submitted an attorney fee application in this case yet—at which time CIIPPs will outline in granular detail all of the worked performed, results achieved, costs incurred, and lodestar expended—this Court is familiar with both the complexity of this Action and with the laborious work that Class Counsel has undertaken. This is not a case that was settled shortly after its filing. Indeed, it is a case that has taxed the resources of counsel and the Court.

9

CIIPPs filed their initial complaint in 2016. And, as recounted in the Klonoff Declaration, from the beginning, the Defendants—many of whom are represented by the largest and most sophisticated law firms in the country—have hotly contested each aspect of this litigation, from whether CIIPPs alleged a plausible conspiracy sufficient to pass muster under Rule 12, to extensive discovery and case management disputes before Magistrate Judge Gilbert, to the taking of over 100 fact witness depositions, to highly contested class certification briefing and expert discovery. Suffice it to say, this case has been anything but easy or straightforward. *See* Klonoff Decl. ¶¶ 52-59; 68-73. CIIPP class counsel have invested truly enormous resources into this case in the form of attorney time ($39 million in reasonably incurred lodestar) and, what Professor Klonoff has described as "staggering" hard costs in the form of over $9.5 million in out-of-pocket expenses. Klonoff Decl. ¶ 53. This type of "staggering" investment requires sufficient compensation. *See Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 569 (7th Cir. 1992), *as amended on denial of reh'g*, 985 F.2d 867 (7th Cir. 1992) ("[T]he failure to make any provision for risk of loss may result in systematic undercompensation of plaintiffs' counsel in a class action case, where . . . the only fee that counsel can obtain is, in the nature of the case, a contingent one.").

Indeed, many courts have recognized that antitrust cases are among the most challenging, difficult, and expensive cases to litigate. *See Arenson v. Bd. of Trade of City of Chi.*, 372 F. Supp. 1349, 1352 (N.D.Ill.1974) ("An antitrust class action is arguably the most complex action to prosecute," because "[t]he legal and factual issues involved are always numerous and uncertain in outcome."). In Professor Klonoff's estimation, in this antitrust case in particular "the risks at the outset of the instant case were significantly greater even than in many other *antitrust* cases." Klonoff Decl. ¶ 55. This is saying something, especially coming from an expert with Professor Klonoff's experience and expertise. And indeed, as the Klonoff Declaration makes clear, these

risks were apparent at the outset of the case, or *ex ante*. Klonoff Decl. ¶¶ 51,53-59. The foregoing facts militate against the use of a declining attorney fee scale.

        **D.     If the Court is Inclined to Adopt a Declining Sliding Scale It Should Adopt Professor Klonoff's Proposal**

For all the foregoing reasons and for all the reasons reflected in the Declaration of Robert Klonoff, the Court should follow the numerous other district courts presiding over analogous complex antitrust actions and not adopt a declining scale attorney fee structure. In fact, as Professor Klonoff explains, *increasing* attorney fee scales are more common in contingency fee contracts and would likely be more warranted in this case. Klonoff Decl. ¶ 49. In any event, if the Court is inclined to set a declining attorney fee scale, it should adopt the one advocated by Professor Klonoff, which is anchored around a middle band of 33 1/3 percent:

    First $50 million:  35 percent

    $50 million-$100 million:  34 percent

    $100 million-$150 million:  33 1/3 percent

    $150 million-$200 million:  32 percent

    Amounts over $200 million:  31 percent

Alternatively, while Professor Klonoff observes that in a hypothetical *ex ante* negotiation it is implausible that class counsel would have agreed to a 33 1/3 percent cap on top of a declining sliding scale, if the Court ultimately concludes that 33 1/3 percent should be the maximum fee in a sliding scale, then it should adopt Professor Klonoff's suggestion addressed to that scenario:

    First $50 million:  33 1/3 percent

    $50 million-$100 million:  32 percent

    $100 million-$150 million:  31 percent

    Excess over $150 million:  30 percent

## III. CONCLUSION

For all these reasons, CIIPPs respectfully contend that application of a declining sliding attorney fee scale is not appropriate in this complex antitrust case; and that if the Court applies a sliding scale, it should adopt the one set forth above and advocated by Professor Klonoff.

Dated: September 15, 2021  Respectfully Submitted:

/s/ *Adam J. Zapala*
Adam J. Zapala
Tamarah Prevost
James G.B. Dallal
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
azapala@cpmlegal.com
tprevost@cpmlegal.com
jdallal@cpmlegal.com

Alexander E. Barnett
**COTCHETT, PITRE & MCCARTHY, LLP**
40 Worth Street, 10th Floor
New York, NY 10013
Tel: (212) 201-6820
abarnett@cpmlegal.com

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua J. Rissman
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street #2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com

*Interim Co-Class Counsel on Behalf of Commercial and Institutional Indirect Purchasers*

Kenneth A. Wexler
Edward A. Wallace
Melinda J. Morales
**WEXLER WALLACE LLP**
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Tel: (312) 346-2222
kaw@wexlerwallace.com
eaw@wexlerwallace.com
mjm@wexlerwallace.com

*Interim Liaison Counsel on Behalf of Commercial and Institutional Indirect Purchasers*

13