**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION,<br><br><br>This Document Relates To:<br><br>THE DIRECT PURCHASER PLAINTIFF ACTION | Case No.: 1:16-cv-08637<br><br>The Honorable Thomas M. Durkin |

**DECLARATION OF BRIAN D CLARK IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENTS WITH THE MAR-JAC AND HARRISON POULTRY DEFENDANTS**

I, Brian D. Clark, declare and state as follows:

1.      I am a Partner of the law firm of Lockridge Grindal Nauen P.L.L.P. This Court has appointed my firm, together with Pearson, Simon & Warshaw, LLP, as Interim Co-Lead Counsel for the Direct Purchaser Plaintiff Class ("DPPs") in this litigation.

2.      I submit this Declaration in support of Direct Purchaser Plaintiffs' Motion for Preliminary Approval of Settlements Between the Direct Purchaser Plaintiffs and Defendants Mar-Jac Poultry, Inc., Mar-Jac Poultry MS, LLC, Mar-Jac Poultry AL, LLC, Mar-Jac AL/MS, Inc., Mar-Jac Poultry, LLC and Mar-Jac Holdings, Inc. (Mar-Jac Holdings, Inc. is incorrectly named in the Complaint as Mar-Jac Holdings, LLC) (collectively, "Mar-Jac") and Harrison Poultry, Inc. ("Harrison Poultry"), filed simultaneously herewith.

3.      On behalf of DPPs, I, my firm, and my Co-Lead Counsel personally conducted settlement negotiations with counsel for Mar-Jac beginning in Spring 2021 and with Harrison Poultry beginning in August 2020. The DPPs and Mar-Jac signed the Settlement Agreement on August 18, 2021. The DPPs and Harrison Poultry signed the Settlement Agreement on September 11, 2021.

4.      As counsel for DPPs, we performed a thorough investigation and engaged in extensive discovery prior to reaching the settlements.  These efforts commenced prior to the filing of DPPs' initial complaint and included pre-litigation investigation into Defendants' conduct that formed the basis of the DPPs' complaints.

5.      During the litigation, DPPs obtained responses to multiple sets of interrogatories, and received over 8 million documents in response to their requests for production and third party subpoenas.

6.     DPPs along with other plaintiffs have taken over 100 depositions of the Defendants and third parties.

7.     DPPs have also provided responses to written discovery, produced documents, and appeared for depositions noticed by the Defendants.

8.     DPPs previously settled with Defendant Fieldale Farms Corp. ("Fieldale") for $2.25 million.  DPPs also previously settled with Defendants Peco Foods, Inc. ("Peco"), George's, Inc., George's Farms, Inc. (collectively, "George's"), and Amick Farms, LLC ("Amick") for $13,011,600.[1]  Most recently, DPPs secured significant settlements with Pilgrim's and Tyson in the amount of $75 million and $79,340,000, respectively. For the proposed settlements with Mar-Jac and Harrison, the Settlement Class will recover at a higher rate on a dollar per market share basis than the prior settlements.  Mar-Jac constitutes approximately 1.5% and Harrison Poultry constitutes approximately 0.5% of commerce sold to DPPs under the Settlement Class definition, and will provide the Settlement Class with $7,975,000 and $3,300,000 (respectively) in monetary relief.  Therefore, this fourth round Settlement constitutes a step-up in damages to a range of approximately $5.5 million per market share point.  These Settlements bring the total amount recovered by DPPs from settling defendants (past and present) to date to $180,876,600. This is a significant amount of money recovered for the DPP class.

9.     DPPs' settlement negotiations with Mar-Jac commenced in Spring 2021.

10.    The Settlement comes after extensive, confidential, protracted arm's-length negotiations between the parties.  The hard-fought negotiations were kept confidential over the past few months, and often broke down as the parties vigorously litigated the case and the parties had difficulty reaching agreement on the final terms of the Settlement.   The negotiations

---

[1] $4,964,600 from Peco, $4,097,000 from George's, and $3,950,000 from Amick.

necessitated numerous conferences as well as written exchanges between counsel during which the parties negotiated the material terms of the settlement, as well as the final Settlement Agreement. The parties debated many issues and negotiated many terms of the settlement, including the amount of payment, the timing of payment, potential conditions on payment, the effect of opt-outs on any settlement, and potential cooperation. Throughout this process, Mar-Jac has been represented by experienced, sophisticated counsel. In engaging in these settlement discussions, counsel for DPPs were focused on obtaining the best possible result for the DPP class.

11.     The parties ultimately executed the Mar-Jac Settlement Agreement on August 18, 2021 (attached hereto as Exhibit "A").

12.     DPPs' settlement negotiations with Harrison Poultry commenced in August 2020.

13.     The Settlement Agreement with Harrison Poultry was reached through confidential, arm's length settlement negotiations. As this litigation has been pending for over 5 years (three-and-a-half years against Mar-Jac and Harrison Poultry), the parties have had ample opportunity to assess the merits of DPPs' claims and Harrison Poultry's defenses, through investigation, discovery, research, settlement discussions and contested motion practice; and to balance the value of Settlement Class members' claims against the substantial risks and expense of continuing litigation. The negotiations necessitated numerous conferences as well as written exchanges between counsel during which the parties negotiated the material terms of the settlement, as well as the final Settlement Agreement. The parties debated many issues and negotiated many terms of the settlement, including the amount of payment, the timing of payment, potential conditions on payment, the effect of opt-outs on any settlement, and potential cooperation. Throughout this process, Harrison Poultry has been represented by experienced, sophisticated counsel. In engaging

in these settlement discussions, counsel for DPPs were focused on obtaining the best possible result for the DPP class.

14. The parties ultimately executed the Harrison Poultry Settlement Agreement on September 11, 2021 (attached hereto as Exhibit "B").

15. There was no collusion or preference among counsel for the parties at any time during these negotiations. To the contrary, the negotiations were contentious, hard fought, and fully informed. DPPs sought to obtain the greatest monetary benefit possible from the Settling Defendants. Furthermore, throughout the course of the negotiations there was never any discussion or agreement at any time regarding the amount of attorneys' fees DPPs' counsel would ask the Court to award in this case.

16. The proposed Settlement Class consists of persons and entities that purchased Broilers from the Defendants during the period from January 1, 2008 to December 20, 2019. DPPs' investigation and discovery has confirmed that there are thousands of persons and entities that fall within the Settlement Class definition.

17. DPPs have enlisted the services of an experience class action administrator, A.B. Data Ltd., to administer notice to the Class Members. The details of the proposed class notice program are discussed in our Motion and supporting declaration of Eric Schachter, and essentially mirror the notice programs approved by this Court regarding the earlier settlements.

18. I have practiced law since 2009, I specialize in antitrust class action law, and I have prosecuted numerous antitrust class actions as lead counsel or other leadership positions. I have negotiated many settlements during those years. In my opinion, and in that of my Co-Lead Counsel, the proposed settlement agreements are fair, reasonable, and adequate. The settlements

provide substantial benefits to the Settlement Class, and avoids the delay and uncertainty of continuing protracted litigation with the Settling Defendants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 17th day of September, 2021 at Minneapolis, Minnesota.


*/s/ Brian D. Clark*
Brian D. Clark

# EXHIBIT A

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To:<br>DIRECT PURCHASER PLAINTIFF ACTION | Case No. 1:16-cv-08637 |

## <u>LONG-FORM SETTLEMENT AGREEMENT BETWEEN DIRECT PURCHASER CLASS PLAINTIFFS AND MAR-JAC</u>

THIS SETTLEMENT AGREEMENT ("Settlement Agreement") is made and entered into as of the 18th day of August, 2021 ("Execution Date") by and between the Direct Purchaser Plaintiffs ("DPPs"),[1] through Interim Co-Lead Counsel (as hereinafter defined) for the proposed Settlement Class (as hereinafter defined), and Mar-Jac Poultry, Inc., Mar-Jac Poultry MS, LLC, Mar-Jac Poultry AL, LLC, Mar-Jac AL/MS, Inc., Mar-Jac Poultry, LLC and Mar-Jac Holdings, Inc.[2] and all of their predecessors; successors; assigns; Affiliates (as hereinafter defined) (including without limitation any affiliates who are alleged co-conspirators); and any and all past, present, and future parents, owners, subsidiaries, divisions, and departments (collectively referred to as "Settling Defendant" or "Mar-Jac") in the above-captioned action (the "Action"). DPPs, on behalf of the Settlement Class, and Mar-Jac are referred to herein collectively as the "Parties" or individually as a "Party."

---

[1] As used herein, "DPPs" means Maplevale Farms, Inc., John Gross and Company, Inc., Ferraro Foods, Inc., Ferraro Foods of North Carolina, LLC, Joe Christiana Food Distributors, Inc., and Cedar Farms Co., Inc.

[2] Mar-Jac Holdings, Inc. is incorrectly named in the Complaint as Mar-Jac Holdings, LLC.

WHEREAS, DPPs on behalf of themselves and as representatives of the putative class of similarly situated persons or entities allege in the Action, among other things, that Mar-Jac participated in a conspiracy — with other Defendants and alleged non-Defendant co-conspirators in the Action — from at least January 1, 2008 to the present to fix, raise, maintain, and stabilize the price of Broilers (as hereinafter defined);

WHEREAS, Interim Co-Lead Counsel have been appointed by the Court to represent, on an interim basis, the putative class of direct purchasers of Broilers (as hereinafter defined);

WHEREAS, the Parties wish to resolve all claims asserted and all claims that could have been asserted against Mar-Jac in any way arising out of or relating in any way to the direct purchase of Broilers (as hereinafter defined) produced, processed or sold by Mar-Jac or any of the Defendants or their alleged co-conspirators;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Settlement Agreement, and this Settlement Agreement embodies all of the terms and conditions of the settlement;

WHEREAS, DPPs have concluded, after investigation of the facts and after considering the circumstances and the applicable law, that it is in the best interests of DPPs to enter into this Settlement Agreement with Mar-Jac to avoid the uncertainties of further complex litigation, and to obtain the benefits described herein for the Settlement Class (as hereinafter defined), and, further, that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of DPPs and the Settlement Class;

WHEREAS, DPPs and Interim Co-Lead Counsel believe that the Settlement Fund (as hereinafter defined) reflects fair, reasonable and adequate compensation for the Settlement Class

(as hereinafter defined) to release, settle and discharge their claims that they were overcharged by the alleged conduct of which Mar-Jac is accused;

WHEREAS, Mar-Jac, notwithstanding its belief that it did nothing wrong or illegal, that it has legitimate defenses to any claims that could be asserted by DPPs against it, and that it would prevail at trial, enters into this Settlement Agreement to avoid the costs, expenses, and uncertainties of this complex litigation, and thereby put a rest to this controversy;

WHEREAS, DPPs, notwithstanding their belief that they would ultimately prevail at trial and establish liability by Mar-Jac for the conspiracy they have alleged, enter into this Settlement Agreement to avoid the costs, expenses, and uncertainties of this complex litigation; and

WHEREAS, both Parties wish to preserve all arguments, defenses and responses to all claims in the Action, including all arguments, defenses and responses to any proposed litigation class proposed by DPPs, in the event this settlement does not obtain Final Approval.

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the DPPs be settled, compromised, and dismissed on the merits with prejudice as to Mar-Jac subject to Court approval and that Mar-Jac be forever fully discharged and released from any and all claims covered by this Settlement Agreement:

    1.    <u>General Definitions</u>.  The terms below and elsewhere in this Settlement Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Settlement Agreement.

        a.    "Mar-Jac Released Parties" means Mar-Jac (as defined above) together with any and all of Mar-Jac's past, current, and future, direct and indirect corporate parents (including holding companies), subsidiaries, related

entities, Affiliates, associates, divisions, joint ventures, predecessors, successors and each of their respective past, present, and future, direct or indirect, officers, directors, employees, trustees, partners, managing directors, shareholders, managers, members, attorneys, equity holders, agents, beneficiaries, executors, insurers, advisors, assigns, heirs, legal or other representatives. Notwithstanding the foregoing and except as set forth below, "Mar-Jac Released Parties" does not include any Defendant other than Mar-Jac named by DPPs in the Action, either explicitly or as a third-party beneficiary.

b.    "Action" means the putative class action filed by DPPs in the above-captioned proceeding.

c.    "Affiliate" means with respect to any person, entity or company, any person, entity, or company that, directly or indirectly, controls, is controlled by or is under common control with such person, entity or company.

d.    "Broilers" means chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, raw or cooked, whole or in parts, or as a meat ingredient in a value added product, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards.

e.    "Complaint" means the DPPs' Fifth Amended and Consolidated Class Action Complaint (ECF Nos. 3919 (Redacted) and 3935 (Unredacted)).

f.      "Court" means the United States District Court for the Northern District of Illinois and the Honorable Thomas M. Durkin or his successor, or any other court in which the Action is proceeding.

g.      "Defendants" means those Defendants named in DPPs' Fifth Amended and Consolidated Class Action Complaint (ECF Nos. 3919 (Redacted) and 3935 (Unredacted)).

h.      "Escrow Account" means the escrow account established with the escrow agent to receive and maintain funds contributed by Mar-Jac for the benefit of the Settlement Class.

i.      "Escrow Agreement" means that certain agreement between the escrow agent that holds the Settlement Fund and DPPs (by and through Interim Co-Lead Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Settlement Class, as set forth in Paragraphs 8 and 9 below.

j.      "Fairness Hearing" means a hearing by the Court to determine whether the Settlement Agreement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

k.      "Final Approval" means an order and judgment by the Court which finally approves this Settlement Agreement, including all of its material terms and conditions without modification, and the settlement pursuant to Federal Rule of Civil Procedure 23 and dismisses Mar-Jac with prejudice from the Action.

l. "Final Judgment" means the first date upon which both of the following conditions shall have been satisfied: (a) Final Approval; and (b) either (1) no appeal or petition to seek permission to appeal the Court's approval of the Final Judgment has been made within the time for filing or noticing any appeal under the Federal Rules of Appellate Procedure, *i.e.*, thirty days after entry of the Final Judgment; or (2) if any timely appeals from the Final Approval or notices of appeal from the Final Approval are filed, (i) the date of final dismissal of all such appeals or the final dismissal of any proceeding on certiorari or otherwise or (ii) the date the Final Judgment is finally affirmed on appeal and affirmance is no longer subject to further appeal or review.

m. "Interim Co-Lead Counsel" means Lockridge Grindal Nauen P.L.L.P. and Pearson, Simon & Warshaw, LLP as appointed by the Court on an interim basis to represent the putative class of direct purchasers of Broilers.

n. "Preliminary Approval" means an order by the Court to preliminarily approve this Settlement Agreement pursuant to Federal Rule of Civil Procedure 23.

o. "Released Claims" shall have the meaning set forth in Paragraph 14 of this Agreement.

p. "Releasing Party" or "Releasing Parties" shall refer individually and collectively, to DPPs, the Settlement Class, and all members of the Settlement Class, including the DPPs, each on behalf of themselves and their respective predecessors, successors, and all of their respective past,

present and future (i) direct and indirect parents, subsidiaries, associates and Affiliates, (ii) agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions, and (iii) shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, insurers, heirs, executors, administrators, devisees, and representatives; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and to the full extent of the power of the signatories hereto to release past, present and future claims, persons or entities acting in a private attorney general, qui tam, taxpayer or any other capacity, whether or not any of them participate in this Settlement Agreement.

q.  "Settlement Administrator" means the firm retained to disseminate the Settlement Class Notice and to administer the payment of Settlement Funds to the Settlement Class, subject to approval of the Court.

r.  "Settlement Class" means the class defined in Paragraph 5 below excluding all persons who file a valid request for exclusion from the Settlement Class.

s.  "Settlement Class Notice" means any notice sent to the Settlement Class pursuant to Preliminary Approval or otherwise approved by the Court pursuant to Federal Rule of Civil Procedure 23.

t.  "Settlement Class Period" means January 1, 2008 until December 20, 2019.

u.  "Settlement Fund" means $7,975,000.00 (seven million, nine hundred and seventy-five thousand U.S. dollars), the amount Mar-Jac shall pay or cause

to be paid into an interest-bearing Escrow Account maintained by an escrow agent on behalf of the Settlement Class, pursuant to Paragraphs 8 and 9 below, as well as any interest accruing within such interest-bearing Escrow Account.

2.     The Parties' Efforts to Effectuate this Settlement Agreement.  The Parties will cooperate in good faith and use their reasonable best efforts to seek the Court's Preliminary Approval and Final Approval of the Settlement Agreement.

3.     Litigation Standstill.  DPPs through Interim Co-Lead Counsel shall cease all litigation activities against Mar-Jac related to the pursuit of claims against Mar-Jac in the Action. Nothing in this Section shall be construed to prohibit DPPs from seeking appropriate discovery from non-settling Defendants or alleged co-conspirators or any other person other than Settling Defendant.

4.     Motion for Preliminary Approval.  No later than twenty-one (21) days after the Execution Date, DPPs will move the Court for Preliminary Approval of this Settlement. A reasonable time in advance of submission to the Court, the papers in support of the motion for Preliminary Approval shall be provided by Interim Co-Lead Counsel to Mar-Jac for its review. To the extent that Mar-Jac objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Counsel and the Parties shall meet and confer to resolve any such objection. The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval and certification of the Settlement Class for settlement purposes.

5.     Certification of a Settlement Class.  As part of the motion for Preliminary Approval of this Settlement, DPPs shall seek, and Mar-Jac shall take no position with respect to, appointment

of Interim Co-Lead Counsel as Settlement Class Counsel for purposes of this Settlement and

certification in the Action of the following Settlement Class for settlement purposes only:

> All persons who purchased Broilers directly from any of the Defendants or any co-conspirator identified in this action, or their respective subsidiaries or affiliates for use or delivery in the United States from at least as early as January 1, 2008 until December 20, 2019. Specifically excluded from the Settlement Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Settlement Class are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

6.    <u>Settlement Class Notices</u>.  After Preliminary Approval, and subject to approval by

the Court of the means for dissemination:

a.    Individual notice of this settlement shall be mailed, emailed, or otherwise sent by the Settlement Administrator, at the direction of Interim Co-Lead Counsel, to potential members of the Settlement Class, in conformance with a notice plan to be approved by the Court.

b.    Neither the Settlement Class, Interim Co-Lead Counsel, nor Mar-Jac shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Settlement Class or obtaining approval of the settlement or administering the settlement. Such fees, costs, or expenses shall be paid solely from the Settlement Fund, subject to any necessary Court approval.

c.    Mar-Jac shall not object to Interim Co-Lead Counsel withdrawing from the Settlement Fund, subject to any necessary Court approval, up to $250,000 to pay the costs for notice and for Preliminary Approval and Final Approval

of this Settlement Agreement, provided, however, that such costs will be pro-rated with other contemporaneously-noticed settlements to the extent applicable.

d.      Interim Co-Lead Counsel shall use best efforts to send out notice to the Settlement Class within 21 days of Preliminary Approval by the Court of the Settlement Agreement. Any costs of notice that Interim Co-Lead Counsel are permitted to withdraw from the Settlement Fund up to $250,000 (pro-rated with other contemporaneously-noticed settlements to the extent applicable), either pursuant to the Parties' Settlement Agreement or order of the Court, shall be nonrefundable if, for any reason, the Settlement Agreement is terminated according to its terms or is not finally approved by the Court.

7.      <u>Motion for Final Approval and Entry of Final Judgment</u>. If the Court grants Preliminary Approval and preliminarily certifies the Settlement Class, then DPPs, through Interim Co-Lead Counsel — in accordance with the schedule set forth in the Court's Preliminary Approval — shall submit to the Court a separate motion for Final Approval of this Settlement Agreement by the Court. A reasonable time in advance of submission to the Court, the papers in support of the motion for Final Approval shall be provided by Interim Co-Lead Counsel to Mar-Jac for its review. To the extent that Mar-Jac objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Counsel and the parties shall meet and confer to resolve any such objection. The motion for Final Approval shall seek entry of an order and Final Judgment:

a.  Finally approving the Settlement Agreement as being a fair, reasonable, and adequate settlement for the Settlement Class within the meaning of Federal Rule of Civil Procedure 23, and directing the implementation, performance, and consummation of the Settlement Agreement and its material terms and conditions, without material modification of those terms and conditions;

b.  Determining that the Settlement Class Notice constituted the best notice practicable under the circumstances of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

c.  Dismissing the Action with prejudice as to Mar-Jac in all class action complaints asserted by DPPs without further costs or fees;

d.  Discharging and releasing Mar-Jac Released Parties from all Released Claims;

e.  Enjoining DPPs and members of the Settlement Class from suing any of the Mar-Jac Released Parties for any of the Released Claims;

f.  Confirming that Mar-Jac has provided the appropriate notice pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1711, *et seq.* ("CAFA");

g.  Reserving continuing and exclusive jurisdiction over the Settlement Agreement for all purposes; and

h.  Determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Mar-Jac shall be final and appealable and entered forthwith.

The Parties shall take all reasonable actions as may be necessary to obtain Final Approval of the Settlement Agreement without modification to any of its material terms and conditions.

8. <u>Escrow Account</u>. The Escrow Account shall be administered by Interim Co-Lead Counsel for the DPPs and Settlement Class under the Court's continuing supervision and control pursuant to the Escrow Agreement.

9. <u>Settlement Consideration</u>. In consideration for the release of Released Claims, the dismissal of the Action, and the other material terms and conditions herein, within twenty-one (21) days of the Court's grant of Preliminary Approval or after Interim Co-Lead Counsel have provided wire instructions to Mar-Jac, whichever occurs later, Mar-Jac shall pay or cause to be paid the Settlement Fund of $7,975,000.00 (seven million, nine-hundred and seventy-five thousand U.S. dollars) into the Escrow Account.

10. <u>Authentication and Admissibility</u>. Mar-Jac agrees to use reasonable efforts to authenticate and provide foundation for admissibility of documents and/or things produced in the Action where they can do so in good faith, whether by declarations, affidavits, or depositions, as may be necessary for the Action.

11. <u>Qualified Settlement Fund</u>. The Parties agree to treat the Settlement Fund as being at all times a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. In addition, Interim Co-Lead Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the relation-back election (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Interim Co-Lead

Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Funds being a "Qualified Settlement Fund" within the meaning of Treas. Reg. § 1.4688-1. Interim Co-Lead Counsel shall timely and properly file all information and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)). Such returns shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. Mar-Jac shall not be responsible for the filing or payment of any taxes or expenses connected to the Qualified Settlement Fund.

12.     <u>Distribution of Settlement Fund to Settlement Class</u>.  DPPs, members of the Settlement Class, and their counsel shall be entitled to look solely to the Settlement Fund for settlement and satisfaction of the Agreement or in connection with any of the Released Claims against the Mar-Jac Released Parties, and shall not be entitled to any other payment or relief from the Mar-Jac Released Parties. Except as provided by order of the Court, no member of the Settlement Class shall have any interest in the Settlement Fund or any portion thereof. DPPs, members of the Settlement Class, and their counsel will be reimbursed solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and expenses and the costs of notice of the Settlement Agreement to potential members of the Settlement Class. Mar-Jac and the other Mar-Jac Released Parties shall not be liable for any costs, fees, or expenses of any of DPPs' and Interim Co-Lead Counsel's attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund.

13.     <u>Fee Awards, Costs and Expenses, and Incentive Payments to DPPs</u>.  Subject to Interim Co-Lead Counsel's sole discretion as to timing, Interim Co-Lead Counsel will apply to the Court for a fee award, plus expenses, and costs incurred, and incentive payments to the DPPs to be paid from the proceeds of the Settlement Fund. Mar-Jac shall have no responsibility, financial obligation, or liability for any such fees, costs, payments, or expenses beyond the Settlement Fund.

14.     <u>Release</u>.  Upon Final Judgment, the Releasing Parties shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever completely compromised, settled, released, acquitted, resolved, relinquished, waived, and discharged the Mar-Jac Released Parties from any and all claims, demands, actions, suits, and causes of action, whether class, individual, or otherwise in nature (whether or not any member of the Settlement Class has objected to the Settlement Agreement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now have, or hereafter can, shall, or may ever have, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, demands, actions, suits, causes of action, injuries, losses, or damages arising from or in connection with any act or omission through the date of Preliminary Approval relating to or referred to in the Action or arising from the factual predicate of the Action (the "Released Claims"). For the avoidance of doubt, "Released Claims" includes all claims that have been asserted, or could have been asserted, in the Action against the Mar-Jac Released Parties, including all claims in any way arising out of or relating to the direct purchase of Broilers produced, processed or sold by Mar-Jac or any of the other Defendants or their alleged co-conspirators. Notwithstanding the above, however,

"Released Claims" does not include (i) claims asserted against any Defendant or co-conspirator other than the Mar-Jac Released Parties or (ii) any claims wholly unrelated to the allegations in the Action that are based on breach of contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities claim, breach of warranty, or product defect. This reservation of claims set forth in (i) and (ii) of this paragraph does not impair or diminish the right of the Mar-Jac Released Parties to assert any and all arguments and defenses to such claims, and the Parties agree that all such arguments and defenses are preserved. During the period after the expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior to Final Judgment, all Releasing Parties who have not submitted a valid request to be excluded from the Settlement Class shall be preliminarily enjoined and barred from asserting any and all Released Claims against any and all of the Mar-Jac Released Parties. The release of the Released Claims will become effective as to all Releasing Parties upon Final Judgment.

15. <u>Further Release</u>. In addition to the provisions of Paragraph 14, the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, including without

limitation Section 20-7-11 of the South Dakota Codified Laws (providing "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR"). Each Releasing Party may hereafter discover facts other than or different from those that he, she, or it knows or believes to be true with respect to the claims that are released pursuant to the provisions of Paragraph 14, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties have agreed to release pursuant to Paragraph 14, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. The foregoing release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims is contractual, and not a mere recital.

16.    <u>Full Release</u>.  The Released Claims and the provisions of Paragraphs 14 and 15 shall be interpreted as broadly as possible and to the fullest extent permitted by law and constitute a full and final release by the Releasing Parties of the Mar-Jac Released Parties for the Released Claims.

17.    <u>Covenant Not to Sue</u>.  DPPs and each Settlement Class Member covenant not to sue any of the Mar-Jac Released Parties for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of or relating to the Released Claims, including, without limitation, seeking to recover damages relating to any of the Released Claims. This Paragraph shall not apply to any action to enforce this Settlement Agreement.

18. <u>Non-Disparagement</u>. The Parties agree they will not disparage one another or their respective claims or defenses, such as by making extrajudicial public statements that disparage either of the Parties or their conduct in connection with the Action, and instead will confine their public comments to essentially the following: "The parties have agreed to resolve this matter. Both sides believe they would have prevailed at trial. Mar-Jac denies the allegations in DPPs Complaint, and further denies that it did anything wrong or illegal. The parties agreed to settle this case because of the extraordinary cost of litigation and the risk and uncertainty of trial." For the avoidance of doubt, the Parties agree that statements made in the Action in court filings, arguments, hearings, and trial are not subject to this provision.

19. This Settlement Agreement shall not be construed as an admission of liability, or used as evidence of liability, for any purpose in any legal proceeding, claim, regulatory proceeding, or government investigation.

20. This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein when executed.

21. <u>Option to Rescind</u>. Mar-Jac will have the sole discretion to rescind this Settlement Agreement if its Broiler sales for the period January 1, 2008 through December 20, 2019, to customers who opt out of the Settlement Class exceed 50% of Mar-Jac's total Broiler sales for the same period. In a separate confidential letter agreement, the parties have agreed upon the dollar value of each customer's direct purchase of Broilers from Mar-Jac during the Settlement Class Period for purposes of this Settlement Agreement. This list will be used to calculate the Opt-Out Percentage in this Paragraph for determining whether opt-outs exceed 50%.

22. <u>Effect of Disapproval</u>. If the Court does not certify the Settlement Class as defined in this Settlement Agreement, or if the Court does not approve this Settlement Agreement in all

material respects, or if the Court does not enter Final Approval as provided for in Paragraph 7 herein, or if any judgment approving this Settlement Agreement is materially modified or set aside on appeal, or if all of the conditions for Final Judgment do not occur as set forth in Paragraph 7 of this Settlement Agreement, then this Agreement may be rescinded, cancelled or terminated by Mar-Jac or DPPs on behalf of the Settlement Class. If rescinded, cancelled or terminated, this Settlement Agreement shall become null and void, and, with the exception of any Settlement Funds used for notice purposes pursuant to Paragraph 6(c), in the event the settlement is not preliminarily or finally approved by the Court, all other funds in the Escrow Account shall be returned to Mar-Jac and the Parties' position shall be returned to the status quo ante. In no way shall DPPs have the right to rescind, cancel or terminate this Settlement Agreement if the Court fails or refuses to grant any requested attorney's fees, any costs, or any awards to DPPs.

23.    <u>Choice of Law and Dispute Resolution</u>.  Any disputes relating to this Settlement Agreement shall be governed by Illinois law without regard to conflicts of law provisions, and any and all disputes regarding this Settlement Agreement will be mediated in good faith with Judge Daniel Weinstein (ret.) before any suit, action, proceeding or dispute may be filed in the Court pursuant to Paragraph 24 below.

24.    <u>Consent to Jurisdiction</u>.  The Parties and Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of Paragraphs 14-17, including but not limited to, any suit, action, or proceeding in which the provisions of Paragraphs 14-17 are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or

proceeding arising out of or relating to this Settlement Agreement. In the event that the provisions of Paragraphs 14-17 are asserted by any Mar-Jac Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such Mar-Jac Released Party shall be entitled to a stay of that suit, action, or proceeding until the mediation required by Paragraph 23 is complete and, if the matter is not resolved by mediation, the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Parties and any Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the in personam jurisdiction of the Court. Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Settlement Agreement.

25.     Class Action Fairness Act.  Within ten (10) days of filing of this Settlement Agreement in court with the abovementioned motion for preliminary approval, Mar-Jac, at its sole expense, shall serve upon appropriate Federal and State officials all materials required pursuant to CAFA, and shall confirm to DPPs' Interim Co-Lead Counsel that such notices have been served. DPP's Interim Co-Lead Counsel shall provide such assistance as is reasonably necessary and information as is reasonably available to comply with 28 U.S.C. § 1715(b)(7)(A).

26.     Costs Relating to Administration.  The Mar-Jac Released Parties shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Funds.

27.    <u>Binding Effect</u>.  This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein.  This Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Settlement Class Members, the Releasing Parties, and the Mar-Jac Released Parties. Without limiting the generality of the foregoing, upon certification of the Settlement Class and Final Approval, each and every covenant and agreement herein by the DPPs shall be binding upon all members and potential members of the Settlement Class and Releasing Parties who have not validly excluded themselves from the Settlement Class.

28.    <u>Sole Remedy</u>.  This Settlement Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any Mar-Jac Released Party, and upon entry of Final Judgment, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any Mar-Jac Released Party.

29.    <u>Counsel's Express Authority</u>.  Each counsel signing this Settlement Agreement on behalf of a Party or Parties has full and express authority to enter into all of the terms reflected herein on behalf of each and every one of the clients for which counsel is signing.

30.    It is agreed that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Parties' agreement or for any other purpose with respect to implementing or enforcing this Settlement Agreement.

31.    <u>Notices</u>.  All notices under this Settlement Agreement shall be in writing.  Each such notice shall be given either by: (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express or similar overnight courier, and, in the case of either (a), (b) or (c) shall be addressed:

If directed to DPPs, the Settlement Class, or any member of the Settlement Class, to:

W. Joseph Bruckner
Brian D. Clark
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
wjbruckner@locklaw.com
bdclark@locklaw.com

Clifford H. Pearson
Bobby Pouya
PEARSON, SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
cpearson@pswlaw.com
bpouya@pswlaw.com

If directed to the Mar-Jac, to:

Edward C. Konieczny
EDWARD C. KONIECZNY LLC
1201 Peachtree Street, NE
Atlanta, GA 30361
ed@koniecznylaw.com

David C. Newman
SMITH, GAMBRELL & RUSSELL, LLP
Promenade, Suite 3100
1230 Peachtree Street, NE
Atlanta, GA 30309
dnewman@sgrlaw.com

or such other address as the Parties may designate, from time to time, by giving notice to all parties
hereto in the manner described in this Paragraph. The Parties shall also provide courtesy copies of
all notices by electronic mail.

      32.    <u>No Admission</u>.  Whether or not Preliminary Approval is granted, Final Judgment
is entered or this Settlement Agreement is terminated, the Parties expressly agree that this
Settlement Agreement and its contents, and any and all statements, negotiations, documents, and
discussions associated with it, are not and shall not be deemed or construed to be an admission of
liability by any Party or Mar-Jac Released Party.

33. <u>No Unstated Third-Party Beneficiaries</u>. Except as is provided in Paragraph 40 below, no provision of this Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Mar-Jac Released Party, DPP, member of the Settlement Class, or Interim Co-Lead Counsel.

34. <u>No Party is the Drafter</u>. None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

35. <u>Amendment and Waiver</u>. This Settlement Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party. The waiver by any Party of any particular breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement. This Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Agreement. Any breach of this Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

36. <u>Execution in Counterparts</u>. This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement. Facsimile or Electronic Mail signatures shall be considered as valid

signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

37.     Integrated Agreement.     This Settlement Agreement comprises the entire, complete, and integrated agreement between the Parties, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between the Parties. The Parties agree that this Settlement Agreement may be modified only by a written instrument signed by the Parties and that no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

38.     Voluntary Settlement.     The Parties agree that this Settlement Agreement was negotiated in good faith by the Parties, and reflects a settlement that was reached voluntarily after consultation with competent counsel, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

39.     Confidentiality.     The Parties agree to continue to maintain the confidentiality of all settlement discussions and materials exchanged during the settlement negotiation. However, Mar-Jac and DPPs can inform other parties to this Action that they have reached a settlement agreement, the amount of the settlement, and the cooperation provided for in this Settlement Agreement. Mar-Jac also may provide a copy of this Settlement Agreement to all parties to the Defendants' Agreement (defined below).

40.     Final Judgment as to other Defendants.     DPPs have been provided with a copy of the agreement entered into by certain Defendants dated February 25, 2020 (hereinafter referred to as "Defendants' Agreement"). The defined terms in Defendants' Agreement shall have the same meaning when used in this Settlement Agreement. DPPs agree that notwithstanding anything to

23

the contrary contained in this Settlement Agreement, DPPs shall reduce the dollar amount collectable from the parties to the Defendants' Agreement pursuant to any Final Judgment by a percentage equal to the Sharing Percentage of Mar-Jac, calculated pursuant to Section 4 and Exhibits "A and B of Defendants' Agreement (as illustrated by the Appendix to Defendants' Agreement) as if Mar-Jac had not settled, had been found liable on the claim, and was a Sharing Party with respect to the Final Judgment. DPPs agree that this undertaking is also for the benefit of any Defendant that is a party to the Defendants' Agreement and that this undertaking may be enforced by any or all of such Defendants as third party beneficiaries hereof. Any ambiguity in this Paragraph or inconsistency between this Settlement Agreement and the Defendants' Agreement shall be resolved in favor of the Defendants' Agreement, including, without limitation, Sections 6.D.1 and 6.D.2 thereof. DPPs further represent and warrant that they have not reached any agreement to provide any portion of the settlement proceeds provided hereunder to any person or entity that is not explicitly identified as a releasor in this Settlement Agreement, except for proceeds received by DPPs' attorneys for payment of attorneys' fees. DPPs shall use their best efforts to ensure that this Settlement Agreement constitutes a Qualified Settlement under Defendants' Agreement and to effectuate the intent of the parties to the Defendants' Agreement to treat the Settlement Agreement as a Qualified Settlement, including (as may be necessary) to make any amendments to this Settlement Agreement to reflect the intent to treat the Settlement Agreement as a Qualified Settlement.

41.    <u>Miscellaneous</u>.  To the extent that Mar-Jac (a) responds to written discovery, (b) makes Rule 34 document productions, or (c) provides other plaintiffs in the Action with formal document or information proffers in conjunction with a settlement with those plaintiffs, Mar-Jac

will serve or otherwise provide DPPs a copy of such materials within 7 days of their production to any other plaintiff(s).

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized representatives, enter into this Settlement Agreement on the Execution Date.

_____                Dated: August 18, 2021
W. Joseph Bruckner (*Pro Hac Vice*)                    _____
Brian D. Clark (*Pro Hac Vice*)
Simeon A. Morbey (*Pro Hac Vice*)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T:  (612) 339-6900
F:  (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
samorbey@locklaw.com

Dated: 8 / 18 / 2021

Clifford H. Pearson (*Pro Hac Vice*)
Daniel L. Warshaw (*Pro Hac Vice*)
Thomas J. Nolan (*Pro Hac Vice*)
Bobby Pouya (*Pro Hac Vice*)
Michael H. Pearson (*Pro Hac Vice*)
PEARSON SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
T: (818) 788-8300
F: (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
tnolan@pswlaw.com
bpouya@pswlaw.com
mpearson@pswlaw.com

Bruce L. Simon (*Pro Hac Vice*)
PEARSON, SIMON & WARSHAW, LLP
350 Sansome Street, Suite 680
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com

*Interim Co-Lead Counsel for the Direct
Purchaser Plaintiff Class*

27

_____                    Dated: ____8/18/2021____

Edward C. Konieczny
EDWARD C. KONIECZNY LLC
1201 Peachtree Street, NE
Atlanta, GA 30361
ed@koniecznylaw.com

David C. Newman
SMITH, GAMBRELL & RUSSELL, LLP
Promenade, Suite 3100
1230 Peachtree Street, NE
Atlanta, GA 30309
dnewman@sgrlaw.com

*Counsel for Mar-Jac Poultry, Inc., Mar-Jac
Poultry MS, LLC, Mar-Jac Poultry AL, LLC,
Mar-Jac AL/MS, Inc., Mar-Jac Poultry, LLC
and Mar-Jac Holdings, Inc.*

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To:<br><br>DIRECT PURCHASER PLAINTIFF ACTION | Case No. 1:16-cv-08637 |

## <u>LONG-FORM SETTLEMENT AGREEMENT BETWEEN DIRECT PURCHASER CLASS PLAINTIFFS AND HARRISON POULTRY, INC.</u>

THIS SETTLEMENT AGREEMENT ("Settlement Agreement") is made and entered into as of the 11th day of September, 2021 ("Execution Date") by and between the Direct Purchaser Plaintiffs ("DPPs"),[1] through Interim Co-Lead Counsel (as hereinafter defined) for the proposed Settlement Class (as hereinafter defined), and Harrison Poultry, Inc. and all of their predecessors; successors; assigns; Affiliates (as hereinafter defined) (including without limitation any affiliates who are alleged co-conspirators); and any and all past, present, and future parents, owners, subsidiaries, divisions, and departments (collectively referred to as "Settling Defendant" or "Harrison") in the above-captioned action (the "Action"). DPPs, on behalf of the Settlement Class, and Harrison are referred to herein collectively as the "Parties" or individually as a "Party."

WHEREAS, DPPs on behalf of themselves and as representatives of the putative class of similarly situated persons or entities allege in the Action, among other things, that Harrison participated in a conspiracy — with other Defendants and alleged non-Defendant co-conspirators

---

[1] As used herein, "DPPs" means Maplevale Farms, Inc., John Gross and Company, Inc., Ferraro Foods, Inc., Ferraro Foods of North Carolina, LLC, Joe Christiana Food Distributors, Inc., and Cedar Farms Co., Inc.

in the Action — from at least January 1, 2008 to the present to fix, raise, maintain, and stabilize the price of Broilers (as hereinafter defined);

WHEREAS, Interim Co-Lead Counsel have been appointed by the Court to represent, on an interim basis, the putative class of direct purchasers of Broilers (as hereinafter defined);

WHEREAS, the Parties wish to resolve all claims asserted and all claims that could have been asserted against Harrison in any way arising out of or relating in any way to the direct purchase of Broilers (as hereinafter defined) produced, processed or sold by Harrison or any of the Defendants or their alleged co-conspirators;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Settlement Agreement, and this Settlement Agreement embodies all of the terms and conditions of the settlement;

WHEREAS, DPPs have concluded, after investigation of the facts and after considering the circumstances and the applicable law, that it is in the best interests of DPPs to enter into this Settlement Agreement with Harrison to avoid the uncertainties of further complex litigation, and to obtain the benefits described herein for the Settlement Class (as hereinafter defined), and, further, that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of DPPs and the Settlement Class;

WHEREAS, DPPs and Interim Co-Lead Counsel believe that the Settlement Fund (as hereinafter defined) reflects fair, reasonable and adequate compensation for the Settlement Class (as hereinafter defined) to release, settle and discharge their claims that they were overcharged by the alleged conduct of which Harrison is accused;

WHEREAS, Harrison, notwithstanding its belief that it did nothing wrong or illegal, that it has legitimate defenses to any claims that could be asserted by DPPs against it, and that it would

2

prevail at trial, enters into this Settlement Agreement to avoid the costs, expenses, and uncertainties of this complex litigation, and thereby put a rest to this controversy;

WHEREAS, DPPs, notwithstanding their belief that they would ultimately prevail at trial and establish liability by Harrison for the conspiracy they have alleged, enter into this Settlement Agreement to avoid the costs, expenses, and uncertainties of this complex litigation; and

WHEREAS, both Parties wish to preserve all arguments, defenses and responses to all claims in the Action, including all arguments, defenses and responses to any proposed litigation class proposed by DPPs, in the event this settlement does not obtain Final Approval.

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the DPPs be settled, compromised, and dismissed on the merits with prejudice as to Harrison subject to Court approval and that Harrison be forever fully discharged and released from any and all claims covered by this Settlement Agreement:

1. <u>General Definitions</u>.  The terms below and elsewhere in this Settlement Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Settlement Agreement.

a. "Harrison Released Parties" means Harrison (as defined above) together with any and all of Harrison's past, current, and future, direct and indirect corporate parents (including holding companies), subsidiaries, related entities, Affiliates, associates, divisions, joint ventures, predecessors, successors and each of their respective past, present, and future, direct or indirect officers, directors, employees, trustees, partners, managing directors, shareholders, managers, members, attorneys, equity holders,

agents, beneficiaries, executors, insurers, advisors, assigns, heirs, legal or other representatives. Notwithstanding the foregoing and except as set forth below, "Harrison Released Parties" does not include any Defendant other than Harrison named by DPPs in the Action, either explicitly or as a third-party beneficiary.

b.     "Action" means the putative class action filed by DPPs in the above-captioned proceeding.

c.     "Affiliate" means with respect to any person, entity or company, any person, entity, or company that, directly or indirectly, controls, is controlled by or is under common control with such person, entity or company.

d.     "Broilers" means chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, raw or cooked, whole or in parts, or as a meat ingredient in a value added product, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards.

e.     "Complaint" means the DPPs' Fifth Amended and Consolidated Class Action Complaint (ECF Nos. 3919 (Redacted) and 3935 (Unredacted)).

f.     "Court" means the United States District Court for the Northern District of Illinois and the Honorable Thomas M. Durkin or his successor, or any other court in which the Action is proceeding.

g.    "Defendants" means those Defendants named in DPPs' Fifth Amended and Consolidated Class Action Complaint (ECF Nos. 3919 (Redacted) and 3935 (Unredacted)).

h.    "Escrow Account" means the escrow account established with the escrow agent to receive and maintain funds contributed by Harrison for the benefit of the Settlement Class.

i.    "Escrow Agreement" means that certain agreement between the escrow agent that holds the Settlement Fund and DPPs (by and through Interim Co-Lead Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Settlement Class, as set forth in Paragraphs 8 and 9 below.

j.    "Fairness Hearing" means a hearing by the Court to determine whether the Settlement Agreement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

k.    "Final Approval" means an order and judgment by the Court which finally approves this Settlement Agreement, including all of its material terms and conditions without modification, and the settlement pursuant to Federal Rule of Civil Procedure 23 and dismisses Harrison with prejudice from the Action.

l.    "Final Judgment" means the first date upon which both of the following conditions shall have been satisfied: (a) Final Approval; and (b) either (1) no appeal or petition to seek permission to appeal the Court's approval of the Final Judgment has been made within the time for filing or noticing any

appeal under the Federal Rules of Appellate Procedure, *i.e.*, thirty days after entry of the Final Judgment; or (2) if any timely appeals from the Final Approval or notices of appeal from the Final Approval are filed, (i) the date of final dismissal of all such appeals or the final dismissal of any proceeding on certiorari or otherwise or (ii) the date the Final Judgment is finally affirmed on appeal and affirmance is no longer subject to further appeal or review.

m.  "Interim Co-Lead Counsel" means Lockridge Grindal Nauen P.L.L.P. and Pearson, Simon & Warshaw, LLP as appointed by the Court on an interim basis to represent the putative class of direct purchasers of Broilers.

n.  "Preliminary Approval" means an order by the Court to preliminarily approve this Settlement Agreement pursuant to Federal Rule of Civil Procedure 23.

o.  "Released Claims" shall have the meaning set forth in Paragraph 14 of this Agreement.

p.  "Releasing Party" or "Releasing Parties" shall refer individually and collectively, to DPPs, the Settlement Class, and all members of the Settlement Class, including the DPPs, each on behalf of themselves and their respective predecessors, successors, and all of their respective past, present and future (i) direct and indirect parents, subsidiaries, associates and Affiliates, (ii) agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions, and (iii) shareholders, partners, directors, officers, owners of any kind, principals,

members, agents, employees, contractors, insurers, heirs, executors, administrators, devisees, and representatives; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and to the full extent of the power of the signatories hereto to release past, present and future claims, persons or entities acting in a private attorney general, qui tam, taxpayer or any other capacity, whether or not any of them participate in this Settlement Agreement.

q.      "Settlement Administrator" means the firm retained to disseminate the Settlement Class Notice and to administer the payment of Settlement Funds to the Settlement Class, subject to approval of the Court.

r.      "Settlement Class" means the class defined in Paragraph 5 below excluding all persons who file a valid request for exclusion from the Settlement Class.

s.      "Settlement Class Notice" means any notice sent to the Settlement Class pursuant to Preliminary Approval or otherwise approved by the Court pursuant to Federal Rule of Civil Procedure 23.

t.      "Settlement Class Period" means January 1, 2008 until December 20, 2019.

u.      "Settlement Fund" means $3,300,000.00 (three million, three hundred thousand U.S. dollars), the amount Harrison shall pay or cause to be paid into an interest-bearing Escrow Account maintained by an escrow agent on behalf of the Settlement Class, pursuant to Paragraphs 8 and 9 below, as well as any interest accruing within such interest-bearing Escrow Account.

2.      The Parties' Efforts to Effectuate this Settlement Agreement.  The Parties will cooperate in good faith and use their reasonable best efforts to seek the Court's Preliminary Approval and Final Approval of the Settlement Agreement.

3.      Litigation Standstill.  DPPs through Interim Co-Lead Counsel shall cease all litigation activities against Harrison related to the pursuit of claims against Harrison in the Action. Nothing in this Section shall be construed to prohibit DPPs from seeking appropriate discovery from non-settling Defendants or alleged co-conspirators or any other person other than Settling Defendant.

4.      Motion for Preliminary Approval.  No later than the date upon which DPPs move for Preliminary Approval of the Mar-Jac Poultry Settlement, DPPs will move for preliminary approval of this Settlement. A reasonable time in advance of submission to the Court, the papers in support of the motion for Preliminary Approval shall be provided by Interim Co-Lead Counsel to Harrison for its review. To the extent that Harrison objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Counsel and the Parties shall meet and confer to resolve any such objection. The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval and certification of the Settlement Class for settlement purposes.

5.      Certification of a Settlement Class.  As part of the motion for Preliminary Approval of this Settlement, DPPs shall seek, and Harrison shall take no position with respect to, appointment of Interim Co-Lead Counsel as Settlement Class Counsel for purposes of this Settlement and certification in the Action of the following Settlement Class for settlement purposes only:

> All persons who purchased Broilers directly from any of the Defendants or any co-conspirator identified in this action, or their respective subsidiaries or affiliates for use or delivery in the United States from at least as early as January 1, 2008 until December 20, 2019. Specifically excluded from the

Settlement Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Settlement Class are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

6.    <u>Settlement Class Notices</u>.  After Preliminary Approval, and subject to approval by the Court of the means for dissemination:

a.    Individual notice of this settlement shall be mailed, emailed, or otherwise sent by the Settlement Administrator, at the direction of Interim Co-Lead Counsel, to potential members of the Settlement Class, in conformance with a notice plan to be approved by the Court.

b.    Neither the Settlement Class, Interim Co-Lead Counsel, nor Harrison shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Settlement Class or obtaining approval of the settlement or administering the settlement. Such fees, costs, or expenses shall be paid solely from the Settlement Fund, subject to any necessary Court approval.

c.    Harrison shall not object to Interim Co-Lead Counsel withdrawing from the Settlement Fund, subject to any necessary Court approval, up to $250,000 to pay the costs for notice and for Preliminary Approval and Final Approval of this Settlement Agreement, provided, however, that such costs will be pro-rated with other contemporaneously-noticed settlements to the extent applicable.

d.  Interim Co-Lead Counsel shall use best efforts to send out notice to the Settlement Class within 21 days of Preliminary Approval by the Court of the Settlement Agreement. Any costs of notice that Interim Co-Lead Counsel are permitted to withdraw from the Settlement Fund up to $250,000 (pro-rated with other contemporaneously-noticed settlements to the extent applicable), either pursuant to the Parties' Settlement Agreement or order of the Court, shall be nonrefundable if, for any reason, the Settlement Agreement is terminated according to its terms or is not finally approved by the Court.

7.  <u>Motion for Final Approval and Entry of Final Judgment</u>.  If the Court grants Preliminary Approval and preliminarily certifies the Settlement Class, then DPPs, through Interim Co-Lead Counsel — in accordance with the schedule set forth in the Court's Preliminary Approval — shall submit to the Court a separate motion for Final Approval of this Settlement Agreement by the Court. A reasonable time in advance of submission to the Court, the papers in support of the motion for Final Approval shall be provided by Interim Co-Lead Counsel to Harrison for its review. To the extent that Harrison objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Counsel and the parties shall meet and confer to resolve any such objection. The motion for Final Approval shall seek entry of an order and Final Judgment:

a.  Finally approving the Settlement Agreement as being a fair, reasonable, and adequate settlement for the Settlement Class within the meaning of Federal Rule of Civil Procedure 23, and directing the implementation, performance,

and consummation of the Settlement Agreement and its material terms and conditions, without material modification of those terms and conditions;

b. Determining that the Settlement Class Notice constituted the best notice practicable under the circumstances of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

c. Dismissing the Action with prejudice as to Harrison in all class action complaints asserted by DPPs without further costs or fees;

d. Discharging and releasing Harrison Released Parties from all Released Claims;

e. Enjoining DPPs and members of the Settlement Class from suing any of the Harrison Released Parties for any of the Released Claims;

f. Confirming that Harrison has provided the appropriate notice pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1711, *et seq.* ("CAFA");

g. Reserving continuing and exclusive jurisdiction over the Settlement Agreement for all purposes; and

h. Determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Harrison shall be final and appealable and entered forthwith.

The Parties shall take all reasonable actions as may be necessary to obtain Final Approval of the Settlement Agreement without modification to any of its material terms and conditions.

8. <u>Escrow Account</u>. The Escrow Account shall be administered by Interim Co-Lead Counsel for the DPPs and Settlement Class under the Court's continuing supervision and control pursuant to the Escrow Agreement.

9. <u>Settlement Consideration</u>. In consideration for the release of Released Claims, the dismissal of the Action, and the other material terms and conditions herein, within twenty-one (21) days of the Court's grant of Preliminary Approval or after Interim Co-Lead Counsel have provided wire instructions to Harrison, whichever occurs later, Harrison shall pay or cause to be paid the Settlement Fund of $3,300,000.00 (three million, three hundred thousand U.S. dollars) into the Escrow Account.

10. <u>Authentication and Admissibility</u>. Harrison agrees to use reasonable efforts to authenticate and provide foundation for admissibility of documents and/or things produced in the Action where they can do so in good faith, whether by declarations, affidavits, or depositions, as may be necessary for the Action.

11. <u>Qualified Settlement Fund</u>. The Parties agree to treat the Settlement Fund as being at all times a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. In addition, Interim Co-Lead Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the relation-back election (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Interim Co-Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All provisions of this

Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Funds being a "Qualified Settlement Fund" within the meaning of Treas. Reg. § 1.4688-1. Interim Co-Lead Counsel shall timely and properly file all information and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)). Such returns shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. Harrison shall not be responsible for the filing or payment of any taxes or expenses connected to the Qualified Settlement Fund.

12.     <u>Distribution of Settlement Fund to Settlement Class</u>.  DPPs, members of the Settlement Class, and their counsel shall be entitled to look solely to the Settlement Fund for settlement and satisfaction of the Agreement or in connection with any of the Released Claims against the Harrison Released Parties, and shall not be entitled to any other payment or relief from the Harrison Released Parties. Except as provided by order of the Court, no member of the Settlement Class shall have any interest in the Settlement Fund or any portion thereof. DPPs, members of the Settlement Class, and their counsel will be reimbursed solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and expenses and the costs of notice of the Settlement Agreement to potential members of the Settlement Class. Harrison and the other Harrison Released Parties shall not be liable for any costs, fees, or expenses of any of DPPs' and Interim Co-Lead Counsel's attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund.

13.     <u>Fee Awards, Costs and Expenses, and Incentive Payments to DPPs</u>.  Subject to Interim Co-Lead Counsel's sole discretion as to timing, Interim Co-Lead Counsel will apply to the Court for a fee award, plus expenses, and costs incurred, and incentive payments to the DPPs

to be paid from the proceeds of the Settlement Fund. Harrison shall have no responsibility, financial obligation, or liability for any such fees, costs, payments, or expenses beyond the Settlement Fund.

14. <u>Release</u>.  Upon Final Judgment, the Releasing Parties shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever completely compromised, settled, released, acquitted, resolved, relinquished, waived, and discharged the Harrison Released Parties from any and all claims, demands, actions, suits, and causes of action, whether class, individual, or otherwise in nature (whether or not any member of the Settlement Class has objected to the Settlement Agreement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now have, or hereafter can, shall, or may ever have, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, demands, actions, suits, causes of action, injuries, losses, or damages arising from or in connection with any act or omission through the date of Preliminary Approval relating to or referred to in the Action or arising from the factual predicate of the Action (the "Released Claims"). For the avoidance of doubt, "Released Claims" includes all claims that have been asserted, or could have been asserted, in the Action against the Harrison Released Parties, including all claims in any way arising out of or relating to the direct purchase of Broilers produced, processed or sold by Harrison or any of the other Defendants or their alleged co-conspirators. Notwithstanding the above, however, "Released Claims" does not include (i) claims asserted against any Defendant or co-conspirator other than the Harrison Released Parties or (ii) any claims wholly unrelated to the allegations in the Action that are based on breach of contract, negligence, personal injury, bailment, failure to

deliver lost goods, damaged or delayed goods, product defect, securities claim, breach of warranty, or product defect. This reservation of claims set forth in (i) and (ii) of this paragraph does not impair or diminish the right of the Harrison Released Parties to assert any and all arguments and defenses to such claims, and the Parties agree that all such arguments and defenses are preserved. During the period after the expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior to Final Judgment, all Releasing Parties who have not submitted a valid request to be excluded from the Settlement Class shall be preliminarily enjoined and barred from asserting any and all Released Claims against any and all of the Harrison Released Parties. The release of the Released Claims will become effective as to all Releasing Parties upon Final Judgment.

15.    <u>Further Release</u>.  In addition to the provisions of Paragraph 14, the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, including without limitation Section 20-7-11 of the South Dakota Codified Laws (providing "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE,

WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR"). Each Releasing Party may hereafter discover facts other than or different from those that he, she, or it knows or believes to be true with respect to the claims that are released pursuant to the provisions of Paragraph 14, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties have agreed to release pursuant to Paragraph 14, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. The foregoing release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims is contractual, and not a mere recital.

16. <u>Full Release</u>. The Released Claims and the provisions of Paragraphs 14 and 15 shall be interpreted as broadly as possible and to the fullest extent permitted by law and constitute a full and final release by the Releasing Parties of the Harrison Released Parties for the Released Claims.

17. <u>Covenant Not to Sue</u>. DPPs and each Settlement Class Member covenant not to sue any of the Harrison Released Parties for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of or relating to the Released Claims, including, without limitation, seeking to recover damages relating to any of the Released Claims. This Paragraph shall not apply to any action to enforce this Settlement Agreement.

18. <u>Non-Disparagement</u>. The Parties agree they will not disparage one another or their respective claims or defenses, such as by making extrajudicial public statements that disparage either of the Parties or their conduct in connection with the Action, and instead will confine their public comments to essentially the following: "The parties have agreed to resolve this matter.

Both sides believe they would have prevailed at trial. Harrison denies the allegations in DPPs Complaint, and further denies that it did anything wrong or illegal. The parties agreed to settle this case because of the extraordinary cost of litigation and the risk and uncertainty of trial." For the avoidance of doubt, the Parties agree that statements made in the Action in court filings, arguments, hearings, and trial are not subject to this provision.

19.     This Settlement Agreement shall not be construed as an admission of liability, or used as evidence of liability, for any purpose in any legal proceeding, claim, regulatory proceeding, or government investigation.

20.     This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein when executed.

21.     <u>Option to Rescind</u>.  Harrison will have the sole discretion to rescind this Settlement Agreement if its Broiler sales for the period January 1, 2008 through December 20, 2019, to customers who opt out of the Settlement Class exceed 50% of Harrison's total Broiler sales for the same period. In a separate confidential letter agreement, the parties have agreed upon the dollar value of each customer's direct purchase of Broilers from Harrison during the Settlement Class Period for purposes of this Settlement Agreement. This list will be used to calculate the Opt-Out Percentage in this Paragraph for determining whether opt-outs exceed 50%.

22.     <u>Effect of Disapproval</u>.  If the Court does not certify the Settlement Class as defined in this Settlement Agreement, or if the Court does not approve this Settlement Agreement in all material respects, or if the Court does not enter Final Approval as provided for in Paragraph 7 herein, or if any judgment approving this Settlement Agreement is materially modified or set aside on appeal, or if all of the conditions for Final Judgment do not occur as set forth in Paragraph 7 of this Settlement Agreement, then this Agreement may be rescinded, cancelled or terminated

by Harrison or DPPs on behalf of the Settlement Class. If rescinded, cancelled or terminated, this Settlement Agreement shall become null and void, and, with the exception of any Settlement Funds used for notice purposes pursuant to Paragraph 6(c), in the event the settlement is not preliminarily or finally approved by the Court, all other funds in the Escrow Account shall be returned to Harrison and the Parties' position shall be returned to the status quo ante. In no way shall DPPs have the right to rescind, cancel or terminate this Settlement Agreement if the Court fails or refuses to grant any requested attorney's fees, any costs, or any awards to DPPs.

23.     <u>Choice of Law and Dispute Resolution</u>.  Any disputes relating to this Settlement Agreement shall be governed by Illinois law without regard to conflicts of law provisions, and any and all disputes regarding this Settlement Agreement will be mediated in good faith with Judge Daniel Weinstein (ret.) before any suit, action, proceeding or dispute may be filed in the Court pursuant to Paragraph 24 below.

24.     <u>Consent to Jurisdiction</u>.  The Parties and Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of Paragraphs 14-17, including but not limited to, any suit, action, or proceeding in which the provisions of Paragraphs 14-17 are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Settlement Agreement.  In the event that the provisions of Paragraphs 14-17 are asserted by any Harrison Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such Harrison Released Party shall be entitled to a stay of that

suit, action, or proceeding until the mediation required by Paragraph 23 is complete and, if the matter is not resolved by mediation, the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Parties and any Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the in personam jurisdiction of the Court. Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Settlement Agreement.

25.     <u>Class Action Fairness Act</u>.  Within ten (10) days of filing of this Settlement Agreement in court with the abovementioned motion for preliminary approval, Harrison, at its sole expense, shall serve upon appropriate Federal and State officials all materials required pursuant to CAFA, and shall confirm to DPPs' Interim Co-Lead Counsel that such notices have been served. DPP's Interim Co-Lead Counsel shall provide such assistance as is reasonably necessary and information as is reasonably available to comply with 28 U.S.C. § 1715(b)(7)(A).

26.     <u>Costs Relating to Administration</u>.  The Harrison Released Parties shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Funds.

27.     <u>Binding Effect</u>.  This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein.  This Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Settlement Class Members, the Releasing Parties, and the Harrison Released Parties. Without limiting the generality of the foregoing, upon certification of the Settlement Class and Final Approval, each and every covenant

and agreement herein by the DPPs shall be binding upon all members and potential members of the Settlement Class and Releasing Parties who have not validly excluded themselves from the Settlement Class.

28.    Sole Remedy.  This Settlement Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any Harrison Released Party, and upon entry of Final Judgment, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any Harrison Released Party.

29.    Counsel's Express Authority.  Each counsel signing this Settlement Agreement on behalf of a Party or Parties has full and express authority to enter into all of the terms reflected herein on behalf of each and every one of the clients for which counsel is signing.

30.    It is agreed that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Parties' agreement or for any other purpose with respect to implementing or enforcing this Settlement Agreement.

31.    Notices.  All notices under this Settlement Agreement shall be in writing.  Each such notice shall be given either by: (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express or similar overnight courier, and, in the case of either (a), (b) or (c) shall be addressed:

If directed to DPPs, the Settlement Class, or any member of the Settlement Class, to:

W. Joseph Bruckner
Brian D. Clark
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
wjbruckner@locklaw.com
bdclark@locklaw.com

Clifford H. Pearson
Bobby Pouya
PEARSON, SIMON & WARSHAW, LLP

15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
cpearson@pswlaw.com
bpouya@pswlaw.com

If directed to Harrison, to:

Patricia A. Gorham
James R. McGibbon
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, N.E., Ste 2300
Atlanta, Georgia 30309-3996
patriciagorham@eversheds-sutherland.com
jimmcgibbon@eversheds-sutherland.com

or such other address as the Parties may designate, from time to time, by giving notice to all parties hereto in the manner described in this Paragraph. The Parties shall also provide courtesy copies of all notices by electronic mail.

      32.    <u>No Admission</u>.  Whether or not Preliminary Approval is granted, Final Judgment is entered or this Settlement Agreement is terminated, the Parties expressly agree that this Settlement Agreement and its contents, and any and all statements, negotiations, documents, and discussions associated with it, are not and shall not be deemed or construed to be an admission of liability by any Party or Harrison Released Party.

      33.    <u>No Unstated Third-Party Beneficiaries</u>.  Except as is provided in Paragraph 40 below, no provision of this Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Harrison Released Party, DPP, member of the Settlement Class, or Interim Co-Lead Counsel.

      34.    <u>No Party is the Drafter</u>.  None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

35.　__Amendment and Waiver__.  This Settlement Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party. The waiver by any Party of any particular breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement. This Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Agreement. Any breach of this Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

36.　__Execution in Counterparts__.  This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement.  Facsimile or Electronic Mail signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

37.　__Integrated Agreement__.  This Settlement Agreement comprises the entire, complete, and integrated agreement between the Parties, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between the Parties. The Parties agree that this Settlement Agreement may be modified only by a written instrument signed by the Parties and that no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

38.    <u>Voluntary Settlement</u>.   The Parties agree that this Settlement Agreement was negotiated in good faith by the Parties, and reflects a settlement that was reached voluntarily after consultation with competent counsel, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

39.    <u>Confidentiality</u>.  The Parties agree to continue to maintain the confidentiality of all settlement discussions and materials exchanged during the settlement negotiation. However, Harrison and DPPs can inform other parties to this Action that they have reached a settlement agreement, the amount of the settlement, and the cooperation provided for in this Settlement Agreement. Harrison also may provide a copy of this Settlement Agreement to all parties to the Defendants' Agreement (defined below).

40.    <u>Final Judgment as to other Defendants</u>.  DPPs have been provided with a copy of the agreement entered into by certain Defendants dated February 25, 2020 (hereinafter referred to as "Defendants' Agreement"). The defined terms in Defendants' Agreement shall have the same meaning when used in this Settlement Agreement. DPPs agree that notwithstanding anything to the contrary contained in this Settlement Agreement, DPPs shall reduce the dollar amount collectable from the parties to the Defendants' Agreement pursuant to any Final Judgment by a percentage equal to the Sharing Percentage of Harrison, calculated pursuant to Section 4 and Exhibits A and B of Defendants' Agreement (as illustrated by the Appendix to Defendants' Agreement) as if Harrison had not settled, had been found liable on the claim, and was a Sharing Party with respect to the Final Judgment. DPPs agree that this undertaking is also for the benefit of any Defendant that is a party to the Defendants' Agreement and that this undertaking may be enforced by any or all of such Defendants as third party beneficiaries hereof. Any ambiguity in this Paragraph or inconsistency between this Settlement Agreement and the Defendants'

Agreement shall be resolved in favor of the Defendants' Agreement, including, without limitation, Sections 6.D.1 and 6.D.2 thereof. DPPs further represent and warrant that they have not reached any agreement to provide any portion of the settlement proceeds provided hereunder to any person or entity that is not explicitly identified as a releasor in this Settlement Agreement, except for proceeds received by DPPs' attorneys for payment of attorneys' fees. DPPs shall use their best efforts to ensure that this Settlement Agreement constitutes a Qualified Settlement under Defendants' Agreement and to effectuate the intent of the parties to the Defendants' Agreement to treat the Settlement Agreement as a Qualified Settlement, including (as may be necessary) to make any amendments to this Settlement Agreement to reflect the intent to treat the Settlement Agreement as a Qualified Settlement.

41.     <u>Miscellaneous</u>.  To the extent that Harrison (a) responds to written discovery, (b) makes Rule 34 document productions, or (c) provides other plaintiffs in the Action with formal document or information proffers in conjunction with a settlement with those plaintiffs, Harrison will serve or otherwise provide DPPs a copy of such materials within 7 days of their production to any other plaintiff(s).

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized representatives, enter into this Settlement Agreement on the Execution Date.

Dated:  September 11, 2021

W. Joseph Bruckner (*Pro Hac Vice*)
Brian D. Clark (*Pro Hac Vice*)
Simeon A. Morbey (*Pro Hac Vice*)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T:  (612) 339-6900
F:  (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
samorbey@locklaw.com



Dated: September 11, 2021

Clifford H. Pearson (*Pro Hac Vice*)
Daniel L. Warshaw (*Pro Hac Vice*)
Thomas J. Nolan (*Pro Hac Vice*)
Bobby Pouya (*Pro Hac Vice*)
Michael H. Pearson (*Pro Hac Vice*)
PEARSON SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
T: (818) 788-8300
F: (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
tnolan@pswlaw.com
bpouya@pswlaw.com
mpearson@pswlaw.com

Bruce L. Simon (*Pro Hac Vice*)
PEARSON, SIMON & WARSHAW, LLP
350 Sansome Street, Suite 680
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com

*Interim Co-Lead Counsel for the Direct
Purchaser Plaintiff Class*

Dated: September 11, 2021

Patricia A. Gorham
James R. McGibbon
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, N.E., Ste 2300
Atlanta, Georgia 30309-3996
patriciagorham@eversheds-sutherland.com
jimmcgibbon@eversheds-sutherland.com

*Counsel for Harrison Poultry, Inc.*