**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 TMD<br><br>Hon. Thomas M. Durkin<br><br>Magistrate Judge Jeffrey T. Gilbert |
| This Document Relates To:<br><br>All Commercial and Institutional Indirect Purchaser Plaintiff Actions | |

**DECLARATION OF DANIEL E. GUSTAFSON IN SUPPORT OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' UNCONTESTED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS TYSON, PILGRIM'S PRIDE, AND MAR-JAC AND FOR CONDITIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASSES**

I, Daniel E. Gustafson, declare and state as follows:

1.       I am a founding member of Gustafson Gluek PLLC. During the pendency of this litigation, my firm has acted as Interim Co-Lead Class Counsel to the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs"). I make this declaration based on my personal knowledge and if called as a witness, I could and would competently testify to the matters stated herein.

2.       I submit this declaration in support of Class Counsel's Uncontested Motion to: (a) preliminarily approve the respective settlements reached with Defendants Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Breeders, Inc., and Tyson Poultry, Inc. (collectively referred to as "Tyson"), Pilgrim's Pride Corporation ("Pilgrim's"), and Mar-Jac Poultry, Inc., Mar-Jac Poultry MS, LLC, Mar-Jac Poultry AL, LLC, Mar-Jac AL/MS, Inc., Mar-Jac Poultry, LLC, and Mar-Jac Holdings, Inc. (collectively referred to as "Mar-Jac"), and their subsidiaries, affiliates and predecessors and (b) to conditionally certify the Settlement Classes.

1

3.     On behalf of the CIIPPs, my firm along with my Co-Lead Counsel conducted numerous rounds of settlement negotiations with counsel for Tyson's, Pilgrim's, and Mar-Jac, over the course of several months. The CIIPPs and Tyson signed the current proposed settlement agreement between them on August 16, 2021, while the current proposed settlement agreement between CIIPPs and Pilgrim's was signed on August 3, 2021, and the current proposed settlement agreement with CIIPPs and Mar-Jac was signed on August 19, 2021.

4.     Prior to our clients filing this case, we commenced and pursued an extensive investigation of the Broiler market and conduct of the Defendants underlying the allegations in CIIPPs' Consolidated Amended Complaint (ECF No. 179). We have litigated this case extensively since then. By the time we signed the settlement agreements with Tyson's, Pilgrim's, and Mar Jac to settle our claims against them, we were well aware of the strengths and weaknesses of each side's positions. In addition to our extensive pre-filing investigation, we had briefed the motions to dismiss our complaints and the parties are currently engaged in, and have been engaged in, extensive discovery efforts. As a result, we have had the benefit of substantial information obtained from the Defendants through their document productions and through formal discovery.

5.     Moreover, prior to reaching these settlements with Tyson's, Pilgrim's, and Mar-Jac, CIIPPs reached settlements with other Defendants, including: Fieldale Farms Corporation ("Fieldale") for $1.4 million; Defendant, Amick Farms, LLC ("Amick"), for $2.95 million; Defendant Peco Foods, Inc. ("Peco") for $3.525 million; and Defendant George's, Inc. and George's Farms, Inc. ("George's") for $3.525 million. *See* ECF Nos. 1910, 3696, 4113. Based on analysis of damages to the CIIPP class performed by CIIPPs' experts, CIIPPs recovered almost $1.8 million per market share point from Mar-Jac, over $3.2 million per market share point from Pilgrim's and over $3.3 million per market share point from Tyson. In comparison, CIIPPs'

recovery from the first four settlements, all of which were with smaller market participants, ranged from approximately $850,000 to $1.2 million per market share point.

6.     During the litigation and in relation to this settlement, Co-Lead Counsel researched, analyzed, and evaluated many contested legal and factual issues. Based on that analysis, and the information obtained from discovery and voluntary cooperation, Co-Lead Counsel were well-informed of the facts and the benefits, risks and consequences of the proposed settlements with Tyson, Pilgrim's, and Mar-Jac. Counsel thoroughly evaluated the relative strengths and weaknesses of our respective litigation positions in relation to these settlements.

7.     The resulting settlement negotiations with Tyson, Pilgrim's, and Mar-Jac were at arm's length and were hard-fought at all times. The Settlements were the product of intensive settlement negotiations conducted over a period of many months and included several rounds of give-and-take between CIIPPs' Co-Lead Counsel and counsel for Tyson, Pilgrim's, and Mar-Jac during several telephonic meetings.

8.     Settlement discussions with Tyson commenced in January 2020 and involved extensive negotiations directly between counsel, multiple mediation sessions and subsequent negotiations under the direction of Judge Daniel Weinstein (ret.), followed by additional negotiations directly between counsel before the parties reached an agreement. The settlement agreement was signed on August 16, 2021. A true and correct copy of the Settlement Agreement between CIIPPs and Tyson is attached hereto as Exhibit A to this Declaration.

9.     Settlement discussions with Pilgrim's commenced in January 2021 and involved extensive negotiations directly between counsel, as well with the assistance of an experience third party mediator, Eric D. Green, before the parties reached an agreement. The settlement agreement was signed on August 3, 2021. A true and correct copy of the Settlement Agreement between

CIIPPs and Pilgrim's is attached hereto as Exhibit B to this Declaration.

10.     Settlement discussions with Mar-Jac commenced in May 2021 and involved extensive and hard-fought negotiations between counsel, which continued until the parties reached an agreement. The settlement agreement was signed on August 19, 2021. A true and correct copy of the Settlement Agreement between CIIPPs and Mar-Jac is attached hereto as Exhibit C to this Declaration.

11.     In each of these separate and hard-fought negotiations, the parties debated many issues, and negotiated many terms of the settlement, including the amount of payment, the timing of payment, potential conditions on payment, and potential cooperation. Each side had the opportunity to be fully informed of the relative strengths and weaknesses of their positions, litigation risks and issues involving the ability to pay. Throughout this process, Tyson, Pilgrim's, and Mar-Jac have been represented by experienced, sophisticated counsel.

12.     There was no collusion or preference among counsel for the parties at any time during these negotiations. To the contrary, the negotiations were contentious, hard-fought, and fully informed. CIIPPs sought to obtain the greatest monetary benefit possible from Tyson, Pilgrim's, and Mar-Jac at this litigation juncture. Furthermore, there was no discussion or agreement at any time regarding the amount of attorneys' fees CIIPPs' counsel would ask the Court to award in this case.

13.     In the proposed settlement between CIIPPs and Tyson, Settling Defendant Tyson commits to pay $42.5 million to the settlement fund within 30 days of Preliminary Approval of the settlement. Tyson also agrees to specified types of cooperation with Plaintiffs in prosecuting any remaining claims against the other Defendants. Similarly, in the proposed settlement between CIIPPs and Pilgrim's, Settling Defendant Pilgrim's commits to pay $44 million to the settlement

fund within 30 days of Preliminary Approval of the settlement. Pilgrim's also agrees to pay up to $1 million in additional funds to be used for notice and settlement administration purposes. Pilgrim's also agrees to specified types of cooperation with Plaintiffs in prosecuting any remaining claims against the other Defendants. Again, similarly, in the proposed settlement between CIIPPs and Mar-Jac, Settling Defendant Mar-Jac commits to pay $5,990,000 to the settlement fund within 30 days of Preliminary Approval of the settlement. Mar-Jac also agrees to specified types of cooperation with Plaintiffs in prosecuting any remaining claims against the other Defendants. Each Settling Defendant's cooperation will include making reasonable efforts to authenticate documents it produced during the course of the litigation and lay an evidentiary foundation for the admissibility of documents it produced during discovery. *See* Exhibit A at § II.C; Exhibit B at § II.C.; Exhibit C at § II.C.

14.     I have personally prosecuted numerous antitrust class actions as lead counsel or in other leadership positions. I have negotiated many settlements during those years. In my opinion, and in the opinion of my esteemed Co-Lead Counsel, the proposed settlement agreements with Tyson, Pilgrim's, and Mar-Jac are fair, reasonable, and adequate. The settlements provide substantial benefits to the Class and avoid the delay and uncertainty of continuing protracted litigation with these Settling Defendants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 30, 2021, in Minneapolis, Minnesota.


_____*/s/ Daniel E. Gustafson*_____
DANIEL E. GUSTAFSON

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: BROILER CHICKEN ANTITRUST LITIGATION | Case No. 1:16-cv-08637 |
| THIS DOCUMENT RELATES TO:<br><br>COMMERCIAL & INSTITUTIONAL INDIRECT PURCHASER PLAINTIFF ACTIONS | |

## SETTLEMENT AGREEMENT BETWEEN COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS AND DEFENDANTS TYSON FOODS, INC., TYSON CHICKEN, INC., TYSON BREEDERS, INC., AND TYSON POULTRY, INC.

This Settlement Agreement ("Settlement Agreement" or "Agreement") is made and entered into as of the Execution Date, by and between Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Breeders, Inc., and Tyson Poultry, Inc. (collectively, "Tyson" or "Settling Defendant"), on the one hand, and the Commercial and Institutional Indirect Purchaser Plaintiffs ("Plaintiffs" or "CIIPPs"),[1] individually and on behalf of a class of indirect purchasers of Broilers,[2] on the other hand, which Agreement is subject to court approval in the above-captioned action (the "Action"). CIIPPs, on behalf of the Settlement Class, and Tyson are referred to herein collectively as the "Parties" or individually as a "Party."

---

[1] As used herein, "CIIPPs" means Sargent's Restaurant and Lounge; Fargo Stopping Center, LLC; Wildwood Tavern LLC; Bodega Brew Pub, Inc.; Sullott Corporation; Chicken Joe's LLC; Eat This, Inc.; Alpine Special Treatment Center, Inc.; Tennis Bums, LLC; Alabama Joe's 2, Inc.; Tani Sushi Bistro, LLC; France 44 Foods, Inc.; Alliance Healthcare System, Inc.; Little Figs, Inc.; Da Big Blue Enterprises Corp.; Floersch IGA, Inc.; Avanti's of Phoenix, Inc.; Midtown Bar and Grill LLC; Mookie's Southern Cuisine LLC; Eowyn, LLC; Peppers Grill & Bar, Inc.; Daliano's, Inc.; Sumner County Restaurant & Creamery LLC; Bashara & Company, LC; Tic-Tac-O; Brix Tavern, LLC; Pancho's Taqeria, Inc.; Legacy 5, LLC; Roost Fried Chicken LLC; Oregano Italian, LLC; Bordenaro's Pizza, Inc.; Telavi Hospitality, Inc.; and FB Mall, LLC.

[2] Unless otherwise indicated, all capitalized terms shall have the meaning ascribed in the Definitions in Section I.

## RECITALS

A.     Plaintiffs are prosecuting the Action on their own behalf and on behalf of the Settlement Class.

B.     Plaintiffs have alleged, among other things, that Tyson entered into a contract, combination or conspiracy in restraint of trade, the purpose and effect of which was to suppress competition and to allow Tyson to charge supra-competitive prices for Broilers during the Class Period, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, as well as various state antitrust, unfair competition, unjust enrichment, and consumer protection laws.

C.     Tyson vigorously and affirmatively rejects Plaintiffs' Claims and has alleged numerous defenses to Plaintiffs' Claims.

D.     This Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, or regulation or of any liability or wrongdoing by Tyson or of the truth of any of Plaintiffs' Claims, nor shall it be deemed or construed to be an admission or evidence of Tyson's defenses.

E.     Co-Lead Counsel have conducted an investigation into the facts and law regarding the Action and the possible legal and factual defenses thereto and have concluded that a settlement with Tyson according to the terms set forth herein is fair, reasonable, adequate, and beneficial to and in the best interests of the Settlement Class, given the uncertainties, risks, and costs of continued litigation.

F.     Despite its belief that it is not liable for, and has strong defenses to, Plaintiffs' Claims, Tyson desires to settle the Action to avoid the further expense, inconvenience, disruption, and burden of this litigation and any other present or future litigation arising out of the facts that gave rise to this litigation, to avoid the risks inherent in uncertain complex litigation and trial, and thereby to put to rest this controversy.

G.     Tyson has entered into a Second Amended Judgment Sharing Agreement with other Defendants, which Co-Lead Counsel have reviewed.  Co-Lead Counsel have determined that, notwithstanding that agreement, the CIIPPs shall exclude Tyson's sales of Broilers from any calculation of the CIIPPs' claimed damages, and the other Defendants named in this Action shall not be liable for any damages arising from Tyson's sales of Broilers during the Class Period.

H.     Arm's-length settlement negotiations have taken place between Co-Lead Counsel and the Settling Defendant's Counsel over several months, including with the extensive assistance of a neutral mediator, and the settlement was reached as a result of those negotiations.

I.     CIIPPs and Co-Lead Counsel believe that the Settlement Fund (as hereinafter defined) reflects fair, reasonable, and adequate compensation for the Settlement Class (as hereinafter defined) to release, settle and discharge their claims that they were overcharged by the alleged anticompetitive conduct of which Tyson is accused.

J.     The Parties to this Agreement desire to fully and finally settle this Action and all potential Released Claims by Releasing Parties against any of the Released Parties as set forth below to avoid the costs and risks of protracted litigation and trial.

**IT IS HEREBY AGREED**, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, by and among the Settling Parties, that this Action and all Released Claims are finally and fully settled and compromised and that this Action shall be dismissed in its entirety with prejudice as to the Released Parties and without cost to the Released Parties, other than those costs set forth in this Settlement Agreement, subject to approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, upon and subject to the following terms and conditions:

## I.     DEFINITIONS

### A.     Settlement Class Definition

3

"Settlement Class" means the class described in Section II(G)(2) below.

**B.    General Definitions**

1.    "Action" means the action captioned *In re Broiler Chicken Antitrust Litigation*, 1:16-cv-08637 (N.D. Ill.) ("Broilers"), which currently is pending in the United States District Court for the Northern District of Illinois.

2.    "Affiliate" means an entity that is under the control of, controlled by, or under common control with another entity.  For the avoidance of doubt, each of Keystone Foods, Inc., Keystone Foods Equity Group, Keystone Foods LLC, Keystone Foods Corporation, Equity Group Eufaula Division, LLC, Equity Group Kentucky Division LLC, and Equity Group – Georgia Division LLC is an Affiliate of Tyson.

3.    "Broilers" are chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, whole or in parts, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards.

4.    "Claims" mean any and all, known or unknown, actual or potential causes of action, claims, contentions, allegations, assertions of wrongdoing, suits, damages, losses, or demands for recoveries, remedies, or fees complained of, or relating or referred to, arising from the conduct alleged in the Action or which could have been alleged in the Action, whether class, individual, or otherwise in nature.

5.    "Class Member" means each member of the Class that does not timely and properly exclude itself from the Settlement Class.

6.    "Class Notice" means the notice to the Class that is approved by the Court, in accordance with Section II(G)(4) below.

4

7.     "Class Period" means the period from and including January 1, 2008 through July 31, 2019.

8.     "Co-Conspirator" means those entities named as co-conspirators in the Operative Complaint.

9.     "Co-Lead Counsel" and "Settlement Class Counsel" mean, collectively, the law firms of Gustafson Gluek PLLC and Cotchett, Pitre & McCarthy, LLP, Commercial and Institutional Indirect Purchaser Plaintiffs' Interim Co-Lead Class Counsel.

10.     "Complaint" or "Operative Complaint" means the Seventh Amended Consolidated Class Action Complaint in the Action, ECF Nos. 3929 and 3931.

11.     "Court" or "District Court" means the United States District Court for the Northern District of Illinois and the Honorable Thomas M. Durkin or his successor, or any other Court in which the Action is proceeding.

12.     "Date of Final Approval" means the date on which Final Approval as provided for in Section II(G)(9) occurs.

13.     "Date of Preliminary Approval" means the date on which the Court enters an order granting preliminary approval to this Settlement Agreement, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, as provided in Section II(G)(3) below.

14.     "Defendant" or "Defendants" means any or all of the Defendants named in the Operative Complaint.

15.     "Documents" means (a) all papers, electronically stored information ("ESI"), statements, transcripts, or other materials within the scope of Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure; and (b) any copies or reproductions of the foregoing, including microfilm copies or computer images.

16.     "Execution Date" means the date on which this Settlement Agreement is

entered into and executed by all Parties.

17.     "Escrow Account" means the account with the Escrow Agent that holds the Settlement Fund.

18.     "Escrow Agent" means the bank into which the Settlement Fund shall be deposited and maintained as set forth in Section II(C) of this Agreement.

19.     "Fairness Hearing" means a hearing on the settlement proposed in this Settlement Agreement held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

20.     "Final Approval" shall mean the satisfaction of all the conditions set forth in Section II(G)(7).

21.     "Indirect Purchaser State" means Arizona, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

22.     "Net Settlement Fund" means the Settlement Fund, plus accrued interest and income, less any award of attorneys' fees or reimbursement of expenses and less applicable taxes, tax preparation expenses, and costs of Class Notice and administration as provided for in this Settlement Agreement, that may be awarded or approved by the Court.

23.     "Notice" means the notice in accordance with Section III(M).

24.     "Opt-Out Claim" means any claim, as set forth in Sections II(G)(3) and (4) of this Settlement Agreement, made by a Person, otherwise qualifying as a member of the Settlement Class, that has validly and timely excluded itself from the Settlement Class.

25.     "Order and Final Judgment" means the order and final judgment of the

6

Court approving the Settlement Agreement, as described in Section II(G)(7) below.

26.     "Parties" or "Settling Parties" means Settling Defendant and the Settlement Class, as represented by CIIPPs.

27.     "Person(s)" includes an individual and an entity.

28.     "Plaintiffs" means the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs").

29.     "Released Claims" means any and all existing or potential Claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, indirectly, representatively, derivatively or in any other capacity) that any of the Releasing Parties (defined below) ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated, claims, demands, actions, suits, causes of action, injuries, or damages arising from or in connection with any act or omission through the date of Preliminary Approval, relating to or referred to in the Action or which could have been raised in the Action.  Notwithstanding the above, "Released Claims" do not include: (a) claims asserted against any other Defendant or alleged Co-Conspirator other than any Released Parties; (b) damages claims under the state or local laws of any jurisdiction other than an Indirect Purchaser State; or (c) any wholly unrelated claims based on: (1) product defect or breach of warranty; (2) breach of contract (except such breaches relating to contractual provisions relating to anticompetitive actions and/or unfair or inflated pricing); or (3) purchases of Broilers by persons or entities other than the Releasing Parties, which includes certain claims specifically excluded from the Settlement Class in Section II(G)(2) below.  The reservation of claims set forth in (a) through (c) of this Section I(B)(29) does not

7

impair or diminish the right of the Released Parties to deny any such claims or to assert any and all defenses to such claims.

30.     "Released Party or Parties" means jointly and severally, individually and collectively, Tyson, any and all of its past and current corporate parents (including holding companies), subsidiaries, Affiliates, divisions, departments, joint ventures, predecessors, successors, assigns and any and all of their respective heirs, executors, devisees, administrators, officers, executives, directors, stockholders, partners, members, managers, agents, attorneys, advisors, auditors, accountants, contractors, servants, employees, representatives and insurers. "Released Parties" includes any person or entity identified in the previous sentence in relation to Tyson that has been or in the future may be identified in the Action as a "Co-Conspirator." Notwithstanding the foregoing, "Released Parties" does not include any other Defendant or alleged Co-Conspirator (except as to any Affiliate of Tyson), either explicitly or as a third-party beneficiary.

31.     "Releasing Parties" means jointly and severally, individually and collectively, Plaintiffs, the Settlement Class, and each Class Member, on behalf of themselves and any person or entity claiming by or through them as, including without limitation, their respective predecessors; successors; assigns; and any and all past, present, and future parents, owners, subsidiaries, divisions, departments, Affiliates, heirs, executors, devisees, administrators, officers, directors, stockholders, partners, members, managers, agents, attorneys, legal or other advisors, auditors, accountants, contractors, servants, employees, representatives and insurers.

32.     "Settling Defendant" and "Tyson" mean Tyson Foods, Inc.; Tyson Chicken, Inc.; Tyson Breeders, Inc.; and Tyson Poultry, Inc.

33.     "Settling Defendant's Counsel" means the law firm of AXINN, VELTROP & HARKRIDER LLP, and attorneys associated therewith.

8

34.     "Settlement Amount" means the cash payment of FORTY-TWO MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($42,500,000), as more specifically described in Section II(C)(1), below.

35.     "Settlement Fund" means the funds described in Section II(C) of this Settlement Agreement, plus accrued interest, in the separate Escrow Account for the settlement contemplated by this Settlement Agreement established in accordance with Section II(E) below.

II.     **SETTLEMENT**

A.     **The Parties Efforts to Effectuate this Settlement Agreement.** The Parties will cooperate in good faith and use their best efforts to seek the Court's Preliminary Approval and Final Approval of the Settlement Agreement.

B.     **Litigation Standstill.** CIIPPs shall cease all litigation activities against the Released Parties in the Action except as expressly authorized in this Settlement Agreement. Tyson and its counsel shall cease all litigation activities against CIIPPs in the Action, except in connection with defending the depositions provided for in Section II(C)(4). None of the foregoing provisions shall be construed to prohibit CIIPPs from seeking appropriate discovery from non-settling Defendants or Co-Conspirators or any other person other than the Released Parties.

C.     **Performance By Settling Defendant and CIIPPs**

1.     **Settlement Payment.** In exchange for the full consideration described in this Settlement Agreement, Tyson shall pay the Settlement Amount in United States dollars, and in immediately available funds. The Parties agree that the Settlement Amount is the only amount to be paid by Tyson and shall be inclusive of the Settlement Class recovery amounts, any service awards to Plaintiffs for the work Plaintiffs performed on behalf of the Settlement Class ("Service Awards") as awarded by the Court, fees (including attorneys' fees and any other fees), and costs (including costs related to Class Notice and settlement administration).

9

        **a.**      The Settlement Amount shall be paid by Tyson into the Escrow Account for the Settlement Fund established in Section II(E)(1) by wire transfer, pursuant to instructions from the Escrow Agent or Co-Lead Counsel, within thirty (30) calendar days of the Date of Preliminary Approval.

        **b.**      Each Class Member and each Releasing Party shall look solely to the Net Settlement Fund for settlement and satisfaction by Tyson and the Released Parties, as provided herein, of all Released Claims and shall not be entitled to any other payment or relief from the Released Parties.

        **c.**      Except as provided by order of the Court, no member of the Settlement Class shall have any interest in the Settlement Fund or any portion thereof. CIIPPs, members of the Settlement Class, and their counsel will be reimbursed solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and expenses and the costs of notice of the Settlement Agreement to potential members of the Settlement Class. Tyson and the other Released Parties shall not be liable for any costs, fees, or expenses of any of CIIPPs' and Co-Lead Counsel's attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund

        **2.**      **Compliance**. The parties agree that Settling Defendant will not, for a period of 24 months from the date of the entry of Final Judgment, engage in conduct that constitutes a *per se* violation of Section 1 of the Sherman Act with respect to the sale of Broilers.

        **3.**      **Effect of Settlement on Joint and Several Liability for Tyson's Sales.** As part of this settlement agreement and because of the CIIPPs' views of the Defendants' Second Amended Judgment Sharing Agreement, CIIPPs have agreed to eliminate damages arising from Tyson's sales of Broilers from the case as against the signatories to the Second Amended Judgment Sharing Agreement. As a result of the foregoing, the other Defendants named in this action that

are signatories to the Second Amended Judgment Sharing Agreement shall not be liable for any damages arising from Tyson's sales of Broilers during the Class Period, as set forth in CIIPPs' Motion for Class Certification and supporting materials (*see, e.g.*, ECF No. 3968). CIIPPs entered into this settlement agreement based on the foregoing understanding of Defendants' Second Judgment Sharing Agreement. Consistent with the foregoing, CIIPPs state that any damages arising from Tyson's sale of Broilers, as defined in CIIPPs' motion for class certification and supporting materials, is not joint and several as against the other Defendants included as signatories to the Second Amended Judgment Sharing Agreement.

4.  **Cooperation**. Cooperation by Tyson is a material term of this Settlement Agreement, which CIIPPs acknowledge already has commenced. The Tyson cooperation (including that which already has occurred) shall include the following categories of cooperation. All cooperation under this Settlement Agreement is subject to approval (as needed) by the U.S. Department of Justice, and the Parties agree to use best efforts to seek such approval on a timely and fulsome basis. The Parties shall meet and confer in good faith to resolve any objections to cooperation raised by the DOJ.

a.  Tyson shall cooperate with CIIPPs in a manner that is consistent with the provisions of the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA"), as applicable, in addition to the further obligations stated herein.

b.  Settling Defendant's counsel shall meet with CIIPPs for a total of seven (7) hours, and more if agreed by the Parties, at an agreed upon location or virtually if in-person attendance is not possible and provide a detailed description of the principal facts known to Tyson regarding potentially anticompetitive conduct in the Broilers industry, including any facts or information provided to the DOJ or any other U.S. government investigative authority in relation to anticompetitive conduct (including conduct of other industry participants) involving Broilers.

11

      c.      Tyson shall produce for deposition up to three (3) current or former Tyson employees in this Action (as selected by CIIPPs) and additionally will not oppose or object to the depositions of six individuals previously agreed upon in writing by the Parties.

      d.      Tyson will use its best efforts to produce up to three (3) current or former Tyson employees (as selected by CIIPPs) as live witnesses at any trial of the CIIPPs' claims in the Action.

      e.      To the extent that Tyson responds to discovery, produces documents, or provides proffers or other cooperation to other plaintiffs in the *In re Broiler Chickens Antitrust Litigation*, delivery of such discovery, documents, proffers, and cooperation will include CIIPPs, or Tyson will serve CIIPPs with a copy of such materials reasonably soon after such production to any other plaintiff. This information shall include, without limitation, documents relating to competition in the Broilers industry that Tyson produces to the Department of Justice, Federal Trade Commission, U.S. Department of Agriculture, Commodity Futures Trading Commission, U.S. Securities & Exchange Commission, states' attorneys general, or other government agencies or regulators.

      f.      Tyson agrees to use its best efforts to respond to a reasonable number of CIIPPs' questions regarding transaction data and otherwise assist CIIPPs in understanding any transaction data produced by Tyson.

      g.      Tyson agrees to use its best efforts to authenticate, and lay an evidentiary foundation for admissibility to, documents and/or things produced in the Action, where the facts indicate that the documents and/or things are authentic, whether by declarations, affidavits, depositions, hearings and/or trials as may be necessary for the admission of such information in the Action. Tyson agrees to stipulate to or use its best efforts to assist CIIPPs in demonstrating that documents and/or things produced in the Action by Tyson are business records

as set forth in Fed. R. Evid. P. 803(6), where the facts indicate that the documents and/or things are business records of Tyson, whether by declarations, affidavits, depositions, hearings and/or trials as may be necessary for the Action.

      **h.**    Beyond the information to be produced by Tyson in discovery in the above captioned litigation and in the Settlement Agreement, Tyson will respond to reasonable requests for additional relevant information about the Action from Co-Lead Counsel, considering the information that it has produced or will produce in discovery.

      **i.**    Class Counsel may participate in any deposition that goes forward pursuant to a notice by another party in the Action of any current or former Tyson employee, and Class Counsel agrees to cooperate with the noticing party. For the avoidance of doubt, Tyson and its counsel may prepare any such witness for deposition, may seek any appropriate relief as against the noticing party, may interpose appropriate objections to any questions and otherwise vigorously defend the deposition, and may engage in redirect examination of the witness.

      **j.**    Tyson's cooperation obligations under this Settlement Agreement shall not be terminated or otherwise affected by the release as set forth in this Settlement Agreement. Unless this Settlement Agreement is not approved by the Court, Tyson's obligations to cooperate under this Settlement Agreement shall continue until final judgment has been entered in the Actions on all Claims brought by CIIPPs against all Defendants, and the time to appeal or to seek permission to appeal from the Court's entry of final judgment on such Claims has expired, or, if appealed, final judgment has been affirmed in its entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.

    **D.**    **Release and Covenant Not to Sue**

      **1.**    **Release**. Upon the occurrence of the Date of Final Approval, and in

consideration of the valuable consideration set forth in this Agreement, the Releasing Parties shall be deemed to have, and by operation of law and of the Order and Final Judgment shall have, hereby fully, finally, and forever completely compromised, settled, released, acquitted, resolved, relinquished, waived, and discharged the Released Parties of all Released Claims.

2. **Covenant Not to Sue**. The Releasing Parties covenant not to sue, directly or indirectly, or otherwise seek to establish liability against the Released Parties for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of or related to the Released Claims, including, without limitation, seeking to recover damages or other relief relating to any of the Released Claims. This Paragraph shall not apply to any action to enforce this Settlement Agreement.

3. **Full Release**. The Parties to this Agreement expressly agree and confirm that the Released Claims as set forth in Section I(B)(29) and the provisions of Section II(B) shall be interpreted as broadly as possible and to the fullest extent permitted by law and constitute a full and final release by the Releasing Parties of the Released Parties for the Released Claims.

4. **Non-Disparagement**. The Parties agree they will not disparage one another or their respective claims or defenses, such as by making extrajudicial public statements that disparage either of the Parties or their conduct in connection with the Action, and instead will confine their public comments to essentially the following: "The parties have agreed to resolve this matter. Tyson has not admitted any liability and continues to deny the allegations in Plaintiffs' complaint, while Plaintiffs believe they would have prevailed." For the avoidance of doubt, the Parties agree that statements made in pleadings, arguments, or trial of this case are not subject to this provision.

5. **Waiver**. In addition to Section II(D)(3), the Releasing Parties shall be

deemed to have, and by operation of the Order and Final Judgment shall have, with respect to the subject matter of the Released Claims, expressly waived and released the provisions, rights, and benefits of Section 1542 of the California Civil Code (providing, "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.") and Section 20-7-11 of the South Dakota Codified Laws (providing, "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.").

The Releasing Parties shall further be deemed to have, and by operation of the Order and Final Judgment shall have, expressly waived all similar provisions, statutes, regulations, rules, or principles of law or equity of any other state or applicable jurisdiction, or principle of common law. In connection with the waiver and relinquishment set forth in this Paragraph, the Releasing Parties acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Released Claims, but that it is their intention to fully, finally, and forever release, acquit, relinquish and discharge the Released Parties of all Released Claims, and, upon the Date of Final Approval, shall be deemed to have, and by operation of the Order and Final Judgment, shall have, forever released, acquitted, relinquished, and discharged the Released Parties of all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory

15

of law or equity now existing or coming into existence in the future, notwithstanding the discovery or existence of any such additional or different facts. The Releasing Parties intend and, by operation of the Order and Final Judgment, shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the Settlement of which this waiver and release is a part. The foregoing release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims is contractual, and not a mere recital.

      **6.**     **Effect of this Settlement Agreement on Final Judgment as to Other Defendants.** CIIPPs have been provided with a copy of the Second Amended Judgment Sharing Agreement entered into by certain Defendants dated February 25, 2020 (hereinafter referred to as "Defendants' Agreement"). The defined terms in Defendants' Agreement shall have the same meaning when used in this Settlement Agreement. CIIPPs agree that notwithstanding anything to the contrary contained in this Settlement Agreement, CIIPPs shall reduce the dollar amount collectable from the parties to the Defendants' Agreement pursuant to any Final Judgment by a percentage equal to the Sharing Percentage of Tyson, calculated pursuant to Section 4 and 6 and Exhibits A and B of Defendants' Agreement (as illustrated by the Appendix to Defendants' Agreement) as if Tyson had not settled, had been found liable on the claim, and was a Sharing Party with respect to the Final Judgment. CIIPPs agree that this undertaking is also for the benefit of any Defendant that is a party to the Defendants' Agreement and that this undertaking may be enforced by any or all of such Defendants as third-party beneficiaries hereof. Any ambiguity in this Section II(B)(5)(e), or inconsistency between this Settlement Agreement and the Defendants' Agreement, shall be resolved in favor of Defendants' Agreement, including, without limitation, Sections 6.D.1 and 6.D.2 thereof. CIIPPs further represent and warrant that they have not reached any agreement to provide any portion of the settlement proceeds provided hereunder to any person or entity that is not explicitly identified as a releasor in this Settlement Agreement, except for

proceeds received by CIIPPs' attorneys for payment of attorneys' fees. CIIPPs shall use their best efforts to ensure that the Settlement Agreement constitutes a Qualified Settlement under Defendants' Agreement and to effectuate the intent of the parties to the Defendants' Agreement to treat the Settlement Agreement as a Qualified Settlement, including (as may be necessary) to make any amendments to this Settlement Agreement to reflect the intent to treat the Settlement Agreement as a Qualified Settlement.

      a.    CIIPPs and Tyson agree that the nature and effects of Defendants' Agreement shall be disclosed to the Settlement Class consistent with the confidentiality obligations contained in Defendants' Agreement, or as ordered by the Court.

      b.    If, as is contemplated under this agreement, CIIPPs do not seek damages for Tyson's sales at trial as against the other signatories to the Defendants' Agreement or if they use a special verdict form at trial that separately identifies the applicable Tyson sales, CIIPPs state that it will not be necessary to apply the Tyson percentage as a discount to any trial verdict under the terms of Defendants' Agreement. CIIPPs entered into this settlement agreement based on the foregoing understanding of Defendants' Agreement.

    **E.**    **Settlement Fund Administration**. The Settlement Fund shall be administered pursuant to the provisions of this Settlement Agreement and subject to the Court's continuing supervision and control, until the funds in the Settlement Fund are fully distributed, as follows:

      1.    The Settlement Fund shall be established within an Escrow Account and administered by an Escrow Agent at a bank designated by Co-Lead Counsel and administered by an Escrow Agent designated by Co-Lead Counsel. Co-Lead Counsel, Tyson, and Settling Defendant's Counsel agree to cooperate in good faith to prepare an appropriate escrow agreement in conformance with this Settlement Agreement.

      2.    Except as provided herein, neither the Settlement Class, Co-Lead Counsel,

nor Tyson shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Settlement Class or obtaining approval of the Settlement or administering the Settlement. Such fees, costs, or expenses shall be paid solely from the Settlement Fund, subject to any necessary Court approval.

3.      Co-Lead Counsel, after obtaining an order of Preliminary Approval, may withdraw from the Settlement Fund up to $1,000,000 to pay the costs for Class Notice and administration and for Preliminary Approval and Final Approval.

4.      Co-Lead Counsel shall use best efforts to send out notice to the Settlement Class as soon as is reasonably practicable after Preliminary Approval. In the event that Court-ordered notice and administration costs exceed $1,000,000, Plaintiffs and Co-Lead Counsel may apply to the Court to pay such additional notice and administration costs from the Settlement Fund. Up to $1,000,000 of the Class Notice and administration costs actually incurred pursuant to this Settlement Agreement shall be nonrefundable in the event that, for any reason, this Settlement Agreement is terminated or rescinded pursuant to Section II(G)(10).

5.      If there are other settlements at the time of, or within a reasonable amount of time after, the preliminary approval of this Settlement Agreement, Co-Lead Counsel shall endeavor to ensure that Class Notice and claims administration costs shall be paid from the settlement funds in this and such other settlement agreements proportionate to the amount of any such settlements, consistent with any such other settlement agreements and the approval of the Court.

6.      Under no circumstances will Tyson be required to pay more or less than the Settlement Amount pursuant to this Settlement Agreement. For purposes of clarification, the payment of any fee and expense award, the Class Notice and administrative costs (including payment of any applicable fees to Escrow Agent), any service awards to Plaintiffs, payments to

Class Members and any other fees and costs associated with the implementation of this Settlement Agreement shall be exclusively paid from the Settlement Fund.

7. No other funds shall be paid or disbursements made from the Settlement Fund without an order of the Court, and in the event of any such order of the Court authorizing payments or disbursements above $1 million, any such additional payments or disbursements shall be refunded to Tyson in the event that the Settlement Agreement is terminated or rescinded pursuant to Section II(G)(10).

8. The Escrow Agent shall, to the extent practicable, invest the funds deposited in the Settlement Fund in discrete and identifiable instruments backed by the full faith and credit of the United States Government, or fully insured by the United States Government or any agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. Any cash portion of the Settlement Fund not invested in instruments of the type described in the first sentence of this Section II(E)(8) shall be maintained by the Escrow Agent, and not commingled with any other funds or monies, in a federally insured bank account. Subsequent to payment into the Settlement Fund pursuant to Section II(C)(1), neither Tyson, any other Released Party, nor Settling Defendant's Counsel shall bear any responsibility or risk related to the Settlement Fund or the Net Settlement Fund.

9. The Parties agree that the Settlement Fund and the Net Settlement Fund are each intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1 and, to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. In addition, Co-Lead Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Section, including the relation-back election (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and

19

requirements contained in such regulations. It shall be the responsibility of Interim Co-Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Funds being a "Qualified Settlement Fund" within the meaning of Treas. Reg. § 1.4688-1.

10.    The Escrow Agent, as administrator of the Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any Taxes, as defined below, owed with respect to the Escrow Account. Neither Tyson, any other Released Party, nor the Settling Defendant's Counsel shall have any liability or responsibility of any sort for filing any tax returns or paying any Taxes or expenses with respect to the Qualified Settlement Fund.

11.    All: (i) taxes on the income of the Settlement Fund ("Taxes") and (ii) expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, reasonable expenses of tax attorneys and accountants) shall timely be paid by the Escrow Agent out of the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)). Such returns shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. The Class Members shall be solely responsible for paying any and all federal, state, and local income taxes due on any distribution made to them pursuant to the Settlement provided herein.

12.    After the Date of Final Approval, the Net Settlement Fund shall be disbursed in accordance with a plan of distribution to be approved by the Court. The Class Members shall look solely to the Net Settlement Fund for settlement and satisfaction of any and all Released Claims from Released Parties and shall not be entitled to any other payment or relief

20

from the Released Parties. The timing of a motion to approve a plan of distribution of the Net Settlement Fund created by this Settlement Agreement shall be in the discretion of Co-Lead Counsel, and may be combined with a plan to distribute proceeds from other settlements in this Action.

**F.      Reversion**

Except as set forth in the Supplemental Agreement being executed simultaneously with this Settlement Agreement, as described in Section II(G)(10)(b), Tyson shall have no rights to reversion in the event that Class Members request exclusion or opt out of the Class, and any Opt-Out Claims shall have no effect on this Settlement Agreement.

**G.      Approval of Settlement Agreement and Dismissal of Released Claims**

**1.      Cooperation.** Plaintiffs and Tyson shall use their best efforts to effectuate this Settlement Agreement, including cooperating in seeking the Court's approval of the Settlement Agreement, the giving of appropriate Class Notice under Federal Rules of Civil Procedure 23(c) and (e), and the complete and final dismissal with prejudice of the Action as to Tyson only.

**2.      Settlement Class Certification.** As part of the motion for Preliminary Approval of this Settlement Agreement, Plaintiffs shall seek, and Tyson shall not object to,[3] appointment of Plaintiffs' Co-Lead Counsel as Settlement Class Counsel for purposes of this Settlement Agreement, and certification in the Action of a Settlement Class for settlement purposes only, defined as follows:

> All entities that purchased Broilers indirectly from a Defendant or named co-conspirator in the United States for their own use in

---

[3]      By agreeing not to object to the proposed Settlement Class and appointment of Co-Lead Counsel as Settlement Class Counsel, Tyson is not waiving any rights, arguments or defenses and Tyson expressly preserves all such rights, arguments and defenses including with respect to any situation where the Settlement Agreement is not approved in all material respects by the Court.

commercial food preparation from January 1, 2008, until July 31, 2019 (the "Class Period").

Excluded from this Class are: Natural persons who purchased Broilers for their personal use and not for commercial food preparation (End-User Consumers); purchasers of Broilers directly from Defendants; purchasers of Broilers for resale in unaltered form; purchases of Broilers from an intermediary who has further processed the Broiler; the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant; any federal, state governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; any juror assigned to this action; and any co-conspirator identified in this action.

3.      **Motion for Preliminary Approval.** Plaintiffs shall submit to the District Court a motion, at such time deemed appropriate in the discretion of Co-Lead Counsel (but as soon as is reasonably practicable after the Execution Date), requesting entry of an order preliminarily approving this Settlement Agreement ("Preliminary Approval Order"). Tyson shall not oppose and shall reasonably cooperate in such motion. Prior to filing such motion, Co-Lead Counsel shall provide the Settling Defendant's Counsel with a draft of such motion and shall consider in good faith any reasonably and timely edits proposed by the Settling Defendant's Counsel. The proposed Preliminary Approval Order shall provide that, *inter alia*:

a.      the settlement proposed in the Settlement Agreement has been negotiated at arm's-length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Settlement Class;

b.      after Class Notice has been carried out, a hearing on the settlement proposed in this Settlement Agreement shall be held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court (the "Fairness Hearing");

    **c.**  Class Members who wish to exclude themselves must submit an appropriate and timely request for exclusion;

    **d.**  Class Members who wish to object to this Agreement must submit an appropriate and timely written statement of the grounds for objection;

    **e.**  Class Members who wish to appear in person to object to this Agreement may do so at the Fairness Hearing pursuant to directions by the Court; and

    **f.**  All proceedings in the above-captioned action with respect to Tyson and Plaintiffs are stayed until further order of the Court, except as may be necessary to implement the Settlement or comply with the terms thereof.

    **4.**  **Class Notice.** Class Notice shall provide for a right of exclusion, as set forth in Sections II(G)(3). The Class Notice shall also provide for a right to object to the proposed Settlement. The timing of a motion to direct or approve Class Notice of this Settlement Agreement shall be in the discretion of Co-Lead Counsel, and may be combined with class notice of other settlements in this Action. Prior to filing such a motion to approve Class Notice, Co-Lead Counsel shall provide the Settling Defendant's Counsel with a draft of such motion and shall consider in good faith any reasonable and timely edits proposed by the Settling Defendant's Counsel.

    **5.**  **Cost of Class Notice.** The costs of providing Class Notice to Settlement Class Members shall be paid by the Escrow Agent from the Settlement Fund pursuant to Section II(E)(2) and (3).

    **6.**  **CAFA Notice.** Within ten (10) days of the filing of this Settlement Agreement in court in connection with the above-mentioned motion for Preliminary Approval, Tyson will provide to the appropriate state officials and the appropriate federal official the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA").

7.     **Final Judgment**. If this Settlement Agreement is preliminarily approved by the Court, the Settlement Class, through Co-Lead Counsel and in accordance with any schedule set forth in the Court's Preliminary Approval, shall seek entry of an Order and Final Judgment. A reasonable time in advance of submission to the Court, Co-Lead Counsel shall provide the Settling Defendant's Counsel with a draft of such a motion for final approval and shall consider in good faith any reasonable and timely edits proposed by the Settling Defendant's Counsel. The motion for Final Approval shall seek an entry of an order and Final Judgment that, *inter alia:*

a.     certifies the Settlement Class described in Section II(G)(2), pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

b.     finally approves this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions, without material modification of those terms and conditions;

c.     determines that the Class Notice constituted, under the circumstances, the most effective and practicable notice of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

d.     orders that all Claims made by CIIPPs against Tyson in the Action, be dismissed with prejudice and, except as expressly provided for in this Settlement Agreement, without further costs or fees;

e.     incorporates the Releases set forth in Section II(B) of this Agreement and makes the Releases effective as of the date of the Final Order and Final Judgment;

f.     enjoins CIIPPs from suing, directly or indirectly, any of the Released

24

Parties for any of the Released Claims;

    **g.**  confirms that Tyson has provided the appropriate notice pursuant to CAFA.

    **h.**  reserves to the Court continuing and exclusive jurisdiction over the Settlement and this Settlement Agreement, including the administration and consummation of this Agreement;

    **i.**  determines under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directs that the judgment of dismissal as to the Released Parties shall be final and entered forthwith; and

    **j.**  orders that Net Settlement Fund may be disbursed as provided in the Final Approval Order or other order of the Court. The Parties shall use all best efforts to obtain Final Approval of the Settlement Agreement without modification to any of its material terms and conditions.

    **8.**  **Class Counsel Fees and Expenses; No Other Costs.**

    **a.**  Except as otherwise provided in Section II(C)(1) of this Settlement Agreement, the Released Parties shall have no responsibility for any other payments, fees or costs, including Co-Lead Counsel's attorneys' fees, costs, and expenses or the fees, costs, or expenses of any Plaintiff's or Settlement Class Member's respective attorneys, experts, advisors, or representatives; provided, however, that with respect to the Action, including this Settlement Agreement, Tyson shall bear its own costs and attorneys' fees.

    **b.**  At their discretion and after Final Approval and proper notice to Class Members and opportunity to object, Co-Lead Counsel may seek a Court order granting attorneys' fees and expenses from the Settlement Fund, separately or in conjunction with other settlements.

c.      At their discretion and after Final Approval and proper notice to Class Members and opportunity to object, Class Counsel may seek from the Settlement Fund, separately or in conjunction with other settlements, a court order granting reimbursement of costs and service awards, to compensate for the time and expense they have incurred in bringing this Action. Any such attorneys' fees will be paid out of the Settlement Amount, and Tyson shall have no obligation to pay any fees or expenses of Co-Lead Counsel.

d.      The procedure for and the allowance or disallowance by the Court of any applications by Co-Lead Counsel for attorneys' fees and expenses or the expenses of or service awards to Plaintiffs to be paid out of the Settlement Fund are not part of or a condition to the Settlement set forth herein, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement and the Settlement Agreement, and any order or proceeding relating to any application for attorneys' fees or expenses or service awards shall not operate to terminate or cancel this Settlement Agreement or the releases set forth herein, or affect or delay the Final Approval of this settlement and Settlement Agreement.

e.      Within 15 calendar days after any order by the Court awarding attorneys' fees, expenses, service awards, or expenses, the Escrow Agent shall pay the approved attorneys' fees, costs, and service award via wire transfer from the Settlement Fund as directed by Co-Lead Counsel. In the event the amount of attorneys' fees, costs, or service award is reduced on appeal, Co-Lead Counsel shall, within 30 days of such appellate order, cause the difference in the amount paid and the amount awarded on appeal to be returned to the Settlement Fund.

9.      **When Settlement Becomes Final.** The settlement contemplated by this Settlement Agreement shall become final on the date that: (a) the Court has entered the Order and Final Judgment approving this Settlement Agreement, and all of its material terms and conditions,

in accordance with Section II(G)(7) above, under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Action as against Tyson with prejudice as to all Settlement Class Members and without costs; and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Settlement Agreement and entry of the Order and Final Judgment, as described in Section II(G)(7) above, has expired with no appeal having been filed or, if appealed, approval of this Settlement Agreement and the Order and Final Judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review. "Final Approval" shall mean the satisfaction of all the conditions set forth in this Section II(G)(9). The Parties agree that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure, nor the All Writs Act, 28 U.S.C. § 1651, nor any extensions of time in petitioning for a writ of certiorari under Rule 13 of the Rules of the Supreme Court of the United States, shall be taken into account in determining the above- stated times.

### 10. Termination and Rescission.

**a.** **Rejection or Alteration of Settlement Terms.** If the Court declines to grant a Preliminary Approval Order or Order and Final Judgment (as set forth in Sections II(G)(3) or (G)(7) above, respectively); or if the Court approves this Settlement Agreement in a materially modified form; or if after the Court's approval, such approval is materially modified or set aside on appeal; or Final Approval is not obtained; or if the Court enters the Final Order and Judgment and appellate review is sought and on such review such Final Order and Judgment is not affirmed; or if Tyson exercises its right to terminate this Settlement Agreement as provided in the Supplemental Agreement (as set forth in Section II(G)(10)(b)) (collectively "Triggering Events"), then Tyson and Plaintiffs shall each, in their respective sole discretion, have the option to rescind, cancel, or terminate this Settlement Agreement in its entirety by providing written Notice of their election to do so ("Termination Notice") to the other Party within fifteen (15) calendar days of any

27

of the Triggering Events. For purposes of this Section II(G)(10)(a), a material modification includes, but is not limited to, any modification to the Settlement Amount or a material change to the scope of the Released Claims. In no way shall CIIPPs have the right to rescind, cancel or terminate this Settlement Agreement if the Court fails or refuses to grant any requested attorneys' fees, any costs, or any incentive awards to Class Representatives.

           **b.**      Simultaneously herewith, Plaintiffs, by and through Co-Lead Counsel, and Tyson are executing a "Supplemental Agreement" setting forth certain conditions under which this Settlement may be withdrawn or terminated at the sole discretion of Tyson if potential Settlement Class Members who meet certain criteria exclude themselves from the Settlement Class. The Supplemental Agreement shall not be filed with the Court except that the substantive contents of the Supplemental Agreement may be brought to the attention of the Court, *in camera*, if so requested by the Court or as otherwise ordered by the Court. The Parties will keep the terms of the Supplemental Agreement confidential, except if compelled by judicial process to disclose the Supplemental Agreement.

           **c.**      **Effect of Termination or Rescission of Settlement.** In the event this Settlement Agreement is rescinded or terminated by a Termination Notice, then: (i) within fifteen (15) calendar days thereafter, the Settlement Fund, including accrued interest, less taxes and tax expenses that have been paid or that have accrued and will be payable at some later date, and less expenses and costs that have been disbursed pursuant to Section II(E)(2), shall be refunded by the Escrow Agent to Tyson pursuant to written instructions from Tyson's Counsel to Co-Lead Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of the day before the Execution Date, and without waiver of any positions asserted in the Action as of the day before the Execution Date, which shall then resume proceedings in the Court, that Court having retained jurisdiction over the Settlement and related matters and, except as otherwise

expressly provided in this Settlement Agreement, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

        **11.**    **No Admission.**

        **a.**    Tyson denies all allegations of wrongdoing in the Action. Nothing in this Settlement Agreement or its contents, or any and all statements, negotiations, documents, and discussions associated with it, constitutes an admission by Tyson or any other Released Party as to the merits of the allegations made or which could have been made in the Action, or an admission by Plaintiffs or the Settlement Class of the validity of any defenses that have been or could be asserted by Tyson or any other Released Party.

        **b.**    Except as is provided in Section III(C) below and Section II(D)(6), no provision of this Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Released Party, CIIPP, member of the Settlement Class, or Co-Lead Counsel.

        **c.**    This Settlement Agreement, and any of its terms, and any agreement or order relating thereto, shall not be deemed to be, or offered by any of the Parties to be received in any civil, criminal, administrative, or other proceeding, or utilized in any manner whatsoever as a presumption, a concession, or an admission of any fault, wrongdoing, or liability whatsoever on the part of any of Tyson or other Released Party; provided, however, that nothing contained in this Section II(G)(11) shall prevent this Settlement Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Settlement Agreement (or any agreement or order relating thereto) or the Order and Final Judgment, or in which the reasonableness, fairness, or good faith of any Party participating in the Settlement (or any agreement or order relating thereto) is in issue, or to enforce or effectuate provisions of this Settlement Agreement or the Order and Final Judgment. This Settlement Agreement may, however, be filed and used in other proceedings, where relevant, to

demonstrate the fact of its existence and of this Settlement, including, but not limited to, Tyson

filing the Settlement Agreement and/or the Order and Final Judgment in any other action that may

be brought against them in order to support a defense or counterclaim based on principles of res

judicata, collateral estoppel, release, good faith settlement, waiver, judgment bar or reduction, or

any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## III.     MISCELLANEOUS

**A.     Entire Agreement**. This Settlement Agreement, including the Supplemental

Agreement, shall constitute the entire, complete and integrated agreement between the Parties

pertaining to the settlement of the Action as to Tyson, and the release of the Released Parties, and

supersedes any and all prior and contemporaneous undertakings, communications, representations,

understandings, negotiations, and discussions (either oral or written) of the Parties in connection

therewith. All terms of the Settlement Agreement are contractual and not mere recitals. The

Parties agree that this Settlement Agreement may be modified only by a written instrument signed

by the Parties and that no party will assert any claim against another based on any alleged

agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed

by the Parties.

**B.     Inurement**. This Settlement Agreement constitutes a binding, enforceable

agreement as to the terms contained herein. The terms of the Settlement Agreement are and shall

be binding upon, to the fullest extent possible, insure to the benefit of the successors, assigns, and

heirs of each of the Releasing Parties and the Released Parties, and upon all other Persons claiming

any interest in the subject matter hereto through any of the Settling Parties, Releasing Parties, or

Released Parties, including any Class Members. Without limiting the generality of the foregoing,

upon certification of the Settlement Class and Final Approval, each and every covenant and.

agreement herein by the CIIPPs shall be binding upon all members and potential members of the

30

Settlement Class and Releasing Parties who have not validly excluded themselves from the Settlement Class.

      **C.**    **Modification.** This Settlement Agreement may be modified or amended only by a writing executed by Co-Lead Counsel and Tyson or Settling Defendant's Counsel, subject (if after the Date of Preliminary Approval) to approval by the Court. Amendments and modifications may be made without notice to the Settlement Class unless notice is required by law or by the Court. The waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party. The waiver by any Party of any particular breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement. This Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Agreement. Any breach of this Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

      **D.**    **Drafted Mutually.** For the purpose of construing or interpreting this Settlement Agreement or any provision hereof, Plaintiffs, the Settlement Class and Tyson shall be deemed to have drafted it equally, and it shall not be construed strictly for or against any party.

      **E.**    **Governing Law.** All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of Illinois without regard to its choice-of-law or conflict-of-law principles, and any and all disputes regarding this Settlement Agreement or the Supplemental Agreement will be mediated in good faith with Judge Daniel Weinstein (ret.) before any suit, action, proceeding or dispute may be filed in the Court.

31

**F.     Voluntary Settlement**. The Parties agree that this Settlement Agreement was negotiated in good faith by the Parties, and reflects a settlement that was reached voluntarily after consultation with competent counsel and the participation of a neutral mediator, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

**G.     Confidentiality**. The Parties agree to continue to maintain the confidentiality of all settlement discussions and materials exchanged during the settlement negotiation.  However, Tyson and CIIPPs can inform other parties to this Action that they have reached a settlement agreement, the amount of the settlement, and the cooperation provided for in this Settlement Agreement. Additionally, consistent with its obligations under the Defendants' Agreement, Tyson may disclose a copy of this settlement agreement.  Notwithstanding anything in this Paragraph, the Supplemental Agreement and the Defendants' Agreement are to be kept confidential and not disclosed to other Parties to this Action.  If requested by the Court in connection with approval of the Parties' Settlement Agreement, then the Supplemental Agreement and/or the Defendants' Agreement may be shared with the Court for *in camera* review.

**H.     Jurisdiction**. This Settlement Agreement is subject to the continuing and exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein.  If for any reason this Settlement Agreement is rescinded, terminated, fails to obtain Final Approval or otherwise fails to become effective, then, in such event, nothing in this Settlement Agreement or with regard to any conduct of Tyson or Settling Defendant's Counsel pursuant to any obligations Tyson has pursuant to the Settlement Agreement shall constitute or are intended to be construed as any agreement to personal jurisdiction (general or specific) or subject matter jurisdiction so as to confer the jurisdiction of the District Court over the Released Parties, nor shall it constitute any

waiver of any defenses based on personal or subject matter jurisdiction.

**I.** **Counterparts.** This Settlement Agreement may be executed in counterparts by Co-Lead Counsel and Settling Defendant's Counsel, each of which shall be deemed an original and all of which taken together shall constitute the same Settlement Agreement. A facsimile, electronic or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

**J.** **Represented by Counsel.** Plaintiffs, the Settlement Class, and Tyson acknowledge that each have been represented by counsel, and have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so and are not relying on any representation or warranty by the other party other than as set forth herein. The Settling Parties and their respective counsel agree that they will not seek to set aside any part of the Settlement Agreement on the grounds of mistake.

**K.** **Authorization.** Each of the undersigned attorneys represents that he or she is fully authorized to enter into and execute this Settlement Agreement, subject to Court approval; the undersigned Co-Lead Counsel represent that they are authorized to execute this Settlement Agreement on behalf of Plaintiffs and the Settlement Class; and the undersigned Settling Defendant's Counsel represent that they are authorized to execute the Settlement Agreement on behalf of Tyson.

**L.** **Privilege.** Nothing in this Settlement Agreement or the negotiations or proceedings relating to the foregoing is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the accountants' privilege, the attorney-client privilege, the joint defense privilege, joint common interest privilege or attorney work product immunity.

**M.** **Notice.** Any notice, other than Class Notice, required pursuant to or in connection

with this Settlement shall be in writing and shall be given by: (1) hand delivery; (2) registered or certified mail, return receipt requested, postage prepaid; or (3) UPS or similar overnight courier, with a courtesy copy by electronic mail, addressed, in the case of notice to any Plaintiff to Co-Lead Counsel at their addresses set forth below, and, in the case of notice to Tyson, to the representative at the address set forth below, or such other address as Tyson or Co-Lead Counsel may designate, from time to time, by giving notice to all Parties in the manner described in this Section III(M) (The foregoing shall be referred to herein as "Notice").

For Commercial and Institutional Indirect Purchaser Plaintiffs:

> Daniel C. Hedlund
> GUSTAFSON GLUEK PLLC
> 120 South 6th Street, Suite 2600
> Minneapolis, MN 55402
> T: (612) 333-8844 / F: (612) 339-6622
> dhedlund@gustafsongluek.com

> Adam J. Zapala
> COTCHETT, PITRE & McCARTHY LLP
> 840 Malcolm Road, Suite 200
> Burlingame, CA 94010
> T: (650) 697-6000 / F: (650) 697-0577
> azapala@cpmlegal.com

For Settling Defendants Tyson Foods, Inc.; Tyson Chickens, Inc.; Tyson Breeders, Inc.; and Tyson Poultry, Inc.:

> Rachel Adcox
> AXINN, VELTROP & HARKRIDER LLP
> 950 F Street NW, Suite 700
> Washington, DC 20004
> T: (202) 912-4700 / F: (202) 912-4701
> radcox@axinn.com

> -and-

> Eli J. Glasser
> Executive Counsel, Antitrust and Global Competition
> Tyson Foods, Inc.
> 2200 Don Tyson Parkway

Springdale, Arkansas 72762
Eli.Glasser@Tyson.com

**N.     Headings**. All headings contained in this Settlement Agreement are for reference

purposes only and are not intended to affect in any way the meaning or interpretation of this

Settlement Agreement.


IN WITNESS WHEREOF, the Parties hereto, through their fully authorized

representatives, have agreed to this Settlement Agreement as of the Execution Date.

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua J. Rissman
Brittany N. Resch
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
T: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsongluek.com

Dated: ___August 16, 2021___

Adam J. Zapala
Tamarah Prevost
James G. Dallal
COTCHETT, PITRE & MCCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
T: (650) 697-6000
azapala@cpmlegal.com
tprevost@cpmlegal.com
jdallal@cpmlegal.com

Dated: _Aug. 16, 2021_

***Counsel for Commercial and Institutional
Indirect Purchaser Plaintiffs***

Rachel J. Adcox (#1001488)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 912-4700
radcox@axinn.com

Dated: <u>August 16, 2021</u>

***Counsel for Defendants Tyson Foods, Inc.;
Tyson Chicken, Inc.; Tyson Breeders, Inc.; and
Tyson Poultry, Inc.***

# EXHIBIT B

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: BROILER CHICKEN ANTITRUST LITIGATION | Case No. 1:16-cv-08637 |
| THIS DOCUMENT RELATES TO:<br><br>COMMERCIAL & INSTITUTIONAL INDIRECT PURCHASER PLAINTIFF ACTIONS | |

## SETTLEMENT AGREEMENT BETWEEN COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS AND DEFENDANT PILGRIM'S PRIDE CORPORATION

This Settlement Agreement ("Settlement Agreement" or "Agreement") is made and entered into as of the Execution Date, by and between Pilgrim's Pride Corporation ("Pilgrim's" or "Settling Defendant"), on the one hand, and the Commercial and Institutional Indirect Purchaser Plaintiffs ("Plaintiffs" or "CIIPPs"),[1] individually and on behalf of a class of indirect purchasers of Broilers,[2] on the other hand, which Agreement is subject to court approval in the above-captioned action (the "Action"). CIIPPs, on behalf of the Settlement Class, and Pilgrim's are referred to herein collectively as the "Parties" or individually as a "Party."

---

[1] As used herein, "CIIPPs" means Sargent's Restaurant and Lounge; Fargo Stopping Center, LLC; Wildwood Tavern LLC; Bodega Brew Pub, Inc.; Sullott Corporation; Chicken Joe's LLC; Eat This, Inc.; Alpine Special Treatment Center, Inc.; Tennis Bums, LLC; Alabama Joe's 2, Inc.; Tani Sushi Bistro, LLC; France 44 Foods, Inc.; Alliance Healthcare System, Inc.; Little Figs, Inc.; Da Big Blue Enterprises Corp.; Floersch IGA, Inc.; Avanti's of Phoenix, Inc.; Midtown Bar and Grill LLC; Mookie's Southern Cuisine LLC; Eowyn, LLC; Peppers Grill & Bar, Inc.; Daliano's, Inc.; Sumner County Restaurant & Creamery LLC; Bashara & Company, LC; Tic-Tac-O; Brix Tavern, LLC; Pancho's Taqeria, Inc.; Legacy 5, LLC; Roost Fried Chicken LLC; Oregano Italian, LLC; Bordenaro's Pizza, Inc.; Telavi Hospitality, Inc.; and FB Mall, LLC.

[2] Unless otherwise indicated, all capitalized terms shall have the meaning ascribed in the Definitions in Section I.

1

## RECITALS

A.     Plaintiffs are prosecuting the Action on their own behalf and on behalf of the Settlement Class.

B.     Plaintiffs have alleged, among other things, that Pilgrim's entered into a contract, combination or conspiracy in restraint of trade, the purpose and effect of which was to suppress competition and to allow Pilgrim's to charge supra-competitive prices for Broilers during the Class Period, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, as well as various state antitrust, unfair competition, unjust enrichment, and consumer protection laws.

C.     Pilgrim's vigorously and affirmatively rejects Plaintiffs' Claims and has alleged numerous defenses to Plaintiffs' Claims.

D.     This Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, or regulation or of any liability or wrongdoing by Pilgrim's or of the truth of any of Plaintiffs' Claims, nor shall it be deemed or construed to be an admission or evidence of Pilgrim's defenses.

E.     Co-Lead Counsel have conducted an investigation into the facts and law regarding the Action and the possible legal and factual defenses thereto and have concluded that a settlement with Pilgrim's according to the terms set forth herein is fair, reasonable, adequate, and beneficial to and in the best interests of the Settlement Class, given the uncertainties, risks, and costs of continued litigation.

F.     Despite its belief that it is not liable for, and has strong defenses to, Plaintiffs' Claims, Pilgrim's desires to settle the Action to avoid the further expense, inconvenience, disruption, and burden of this Action and any other present or future litigation arising out of the facts that gave rise to this Action, to avoid the risks inherent in uncertain complex litigation and trial, and thereby to put to rest this controversy.

2

G.     Arm's-length settlement negotiations have taken place between Co-Lead Counsel and the Settling Defendant's Counsel over several months, including with the extensive assistance of a neutral mediator, and the settlement was reached as a result of those negotiations.

H.     CIIPPs and Co-Lead Counsel believe that the Settlement Fund (as hereinafter defined) reflects fair, reasonable, and adequate compensation for the Settlement Class (as hereinafter defined) to release, settle and discharge their claims that they were overcharged by the alleged anticompetitive conduct of which Pilgrim's is accused.

I.     The Parties to this Agreement desire to fully and finally settle this Action and all potential Released Claims by Releasing Parties against any of the Released Parties as set forth below to avoid the costs and risks of protracted litigation and trial.

**IT IS HEREBY AGREED**, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, by and among the Settling Parties, that this Action and all Released Claims are finally and fully settled and compromised and that this Action shall be dismissed in its entirety with prejudice as to the Released Parties and without cost to the Released Parties, other than those costs set forth in this Settlement Agreement, subject to approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, upon and subject to the following terms and conditions:

## I.    DEFINITIONS

### A.    Settlement Class Definition

"Settlement Class" means the class described in Section II(H)(2) below.

### B.    General Definitions

1.     "Action" means the action captioned *In re Broiler Chicken Antitrust Litigation*, 1:16-cv-08637 (N.D. Ill.) ("Broilers"), which currently is pending in the United States

District Court for the Northern District of Illinois.

2.    "Affiliate" means an entity that is under the control of, controlled by, or under common control with another entity.  For the avoidance of doubt, each of JFC, LLC, Gold'n Plump Poultry, LLC, Gold'n Plump Farms, LLC, PFS Distribution Company, Merit Provisions, LLC, GC Properties, LLC, Pilgrim's Pride of Nevada, Inc., PPC Marketing, Ltd., and Pilgrim's Pride Corporation of West Virginia, Inc. is an Affiliate of Pilgrim's.

3.    "Broilers" are chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, raw or cooked, whole or in parts, or as a meat ingredient in a value added product, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards.

4.    "Claims" mean any and all, known or unknown, actual or potential causes of action, claims, contentions, allegations, assertions of wrongdoing, suits, damages, losses, or demands for recoveries, remedies, or fees complained of, or relating or referred to, arising from the conduct alleged in the Action or which could have been alleged in the Action, whether class, individual, or otherwise in nature.

5.    "Class Member" means each member of the Class that does not timely and properly exclude itself from the Settlement Class.

6.    "Class Notice" means the notice to the Class that is approved by the Court, in accordance with Section II(H)(4) below.

7.    "Class Period" means the period from and including January 1, 2008 through July 31, 2019.

8.    "Co-Conspirator" means those entities named as co-conspirators in the Operative Complaint.

4

9.     "Co-Lead Counsel" and "Settlement Class Counsel" mean, collectively, the law firms of Gustafson Gluek PLLC and Cotchett, Pitre & McCarthy, LLP, Commercial and Institutional Indirect Purchaser Plaintiffs' Interim Co-Lead Class Counsel.

10.     "Complaint" or "Operative Complaint" means the Seventh Amended Consolidated Class Action Complaint in the Action, ECF Nos. 3929 and 3931.

11.     "Court" or "District Court" means the United States District Court for the Northern District of Illinois and the Honorable Thomas M. Durkin or his successor, or any other Court in which the Action is proceeding.

12.     "Date of Final Approval" means the date on which Final Approval as provided for in Section II(H)(9) occurs.

13.     "Date of Preliminary Approval" means the date on which the Court enters an order granting preliminary approval to this Settlement Agreement, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, as provided in Section II(H)(3) below.

14.     "Defendant" or "Defendants" means any or all of the Defendants named in the Operative Complaint.

15.     "Documents" means (a) all papers, electronically stored information ("ESI"), statements, transcripts, or other materials within the scope of Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure; and (b) any copies or reproductions of the foregoing, including microfilm copies or computer images.

16.     "Execution Date" means the date on which this Settlement Agreement is entered into and executed by all Parties.

17.     "Escrow Account" means the account with the Escrow Agent that holds the Settlement Fund.

18.     "Escrow Agent" means the bank into which the Settlement Fund shall be

deposited and maintained as set forth in Section II(C) of this Agreement.

19.     "Fairness Hearing" means a hearing on the settlement proposed in this Settlement Agreement held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

20.     "Final Approval" shall mean the satisfaction of all the conditions set forth in Section II(H)(9).

21.     "Indirect Purchaser State" means Arizona, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and/or Wisconsin.

22.     "Net Settlement Fund" means the Settlement Fund, plus accrued interest and income, less any award of attorneys' fees or reimbursement of expenses and less applicable taxes, tax preparation expenses, and costs of Class Notice and administration as provided for in this Settlement Agreement, that may be awarded or approved by the Court.

23.     "Notice" means the notice in accordance with Section III(M).

24.     "Opt-Out Claim" means any claim, as set forth in Sections II(H)(3) and (4) of this Settlement Agreement, made by a Person, otherwise qualifying as a member of the Settlement Class, that has validly and timely excluded itself from the Settlement Class.

25.     "Order and Final Judgment" means the order and final judgment of the Court approving the Settlement Agreement, as described in Section II(H)(7) below.

26.     "Parties" or "Settling Parties" means Settling Defendant and the Settlement Class, as represented by CIIPPs.

27.     "Person(s)" includes an individual and an entity.

6

28. "Plaintiffs" means the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs").

29. "Released Claims" means any and all existing or potential Claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, indirectly, representatively, derivatively or in any other capacity) that any of the Releasing Parties (defined below) ever had, now has, or hereafter can, shall, or may ever have, that exist as of the date of the order granting Preliminary Approval, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated, claims, demands, actions, suits, causes of action, injuries, damages, or the consequences thereof that have been, or could have been asserted, under federal or state law or in any way relating to or referred to in the Action or in any way arising out of or relating to the indirect purchase (for use in commercial food preparation) of Broilers produced, processed or sold by Pilgrim's or any of the Defendants or their Co-Conspirators, and purchased indirectly for use in commercial food preparation by the Releasing Parties. Notwithstanding the above, "Released Claims" do not include: (a) claims asserted against any other Defendant or alleged Co-Conspirator other than any Released Parties; (b) damages claims under the state or local laws of any jurisdiction other than an Indirect Purchaser State; or (c) any wholly unrelated claims based on: (1) product defect or breach of warranty; (2) breach of contract (except such breaches relating to contractual provisions relating to anticompetitive actions and/or unfair or inflated pricing); or (3) purchases of Broilers by persons or entities other than the Releasing Parties, which includes certain claims specifically excluded from the Settlement Class in Section II(G)(2) below. The reservation of claims set forth in (a) through (c) of this Section I(B)(29) does not impair

or diminish the right of the Released Parties to deny any such claims or to assert any and all defenses to such claims.

30. "Released Party or Parties" means jointly and severally, individually and collectively, Pilgrim's, any and all of its past and current and successor parents (including holding companies), subsidiaries, Affiliates, divisions, departments, joint ventures, predecessors, assigns and any and all of their respective heirs, executors, devisees, administrators, officers, executives, directors, stockholders, partners, members, managers, agents, attorneys, advisors, auditors, accountants, contractors, servants, employees, representatives and insurers. "Released Parties" includes any person or entity identified in the previous sentence that has been or in the future may be identified in the Action as a "Co-Conspirator" and as being specifically affiliated with Pilgrim's in the Complaint. *See* Complaint, para. 127(G). Notwithstanding the foregoing, "Released Parties" does not include either (a) any other Defendant or (b) any of the Co-Conspirators specifically identified in the Complaint and that are not alleged to be affiliated with Pilgrim's. *See* Complaint, paras. 116-126; 126(A)-(F), (H)-(J).

31. "Releasing Parties" means jointly and severally, individually and collectively, Plaintiffs, the Settlement Class, and each Class Member, on behalf of themselves and any person or entity claiming by or through them as, including without limitation, their respective predecessors; successors; assigns; and any and all past, present, and future parents, owners, subsidiaries, divisions, departments, Affiliates, heirs, executors, devisees, administrators, officers, directors, stockholders, partners, members, managers, agents, attorneys, legal or other advisors, auditors, accountants, contractors, servants, employees, representatives and insurers.

32. "Settling Defendant" and "Pilgrim's" mean Pilgrim's Pride Corporation.

33. "Settling Defendant's Counsel" means the law firm of Weil Gotshal & Manges LLP, and attorneys associated therewith.

34. "Settlement Amount", as more specifically described in Section II(C)(1), below, means the cash payment of FORTY-FOUR MILLION DOLLARS, $44,000,000.

35. "Settlement Administrative Payment" means a separate and additional payment of a non-reimbursable ONE MILLION DOLLARS, $1,000,000.00, to be used solely for the payment of settlement administration costs. As used here and consistent with Section II(F) below, "non-reimbursable" shall only include any portion of the Settlement Administrative Payment actually incurred pursuant to this Settlement Agreement.

36. "Settlement Fund" means the funds described in Section II(C) of this Settlement Agreement, which is comprised of the Settlement Amount, Settlement Administrative Payment, plus accrued interest, in the separate Escrow Account for the settlement contemplated by this Settlement Agreement established in accordance with Section II(F) below.

## II. SETTLEMENT

**A.** **The Parties Efforts to Effectuate this Settlement Agreement**. The Parties will cooperate in good faith and use their best efforts to seek the Court's Preliminary Approval and Final Approval of the Settlement Agreement.

**B.** **Litigation Standstill**. CIIPPs shall cease all litigation activities against the Released Parties in the Action except as expressly authorized in this Settlement Agreement. Pilgrim's and its counsel shall cease all litigation activities against CIIPPs in the Action, except in connection with defending the depositions provided for in Section II(C)(2)(d). None of the foregoing provisions shall be construed to prohibit CIIPPs from seeking appropriate discovery from non-settling Defendants or Co-Conspirators or any other person other than the Released Parties.

**C.** **Performance By Settling Defendant and CIIPPs**

**1.** **Payment of Settlement Amount and Settlement Administrative Payment**. In exchange for the full consideration described in this Settlement Agreement, Pilgrim's

9

shall pay the Settlement Amount in United States dollars, and in immediately available funds. In addition, Pilgrim's shall make the Settlement Administrative Payment as defined above. The Parties agree that the Settlement Amount plus the Settlement Administrative Payment is the only amount to be paid by Pilgrim's and shall be inclusive of the Settlement Class recovery amounts, any service awards to Plaintiffs for the work Plaintiffs performed on behalf of the Settlement Class ("Service Awards") as awarded by the Court, fees (including attorneys' fees and any other fees), and costs (including costs related to Class Notice and settlement administration).

      **a.**      The Settlement Amount and Settlement Administrative Payment shall be paid by Pilgrim's into the Escrow Account for the Settlement Fund established in Section II(F)(1) by wire transfer, pursuant to instructions from the Escrow Agent or Co-Lead Counsel, within thirty (30) calendar days of the Date of Preliminary Approval.

      **b.**      Pilgrim's shall not be responsible for amounts previously incurred by Plaintiffs for settlement administrative costs prior to the execution of this Agreement. Moreover, any portion of the Settlement Administrative Payment that is not actually used for the payment of settlement administration costs related to this Pilgrim's Settlement shall be reimbursed to Pilgrim's. Accordingly, Plaintiffs shall provide counsel for Pilgrim's with written updates on such settlement administration costs every thirty (30) days, including copies of invoices relating to such costs.

      **c.**      Each Class Member and each Releasing Party shall look solely to the Net Settlement Fund for settlement and satisfaction by Pilgrim's and the Released Parties, as provided herein, of all Released Claims and shall not be entitled to any other payment or relief from the Released Parties.

      **d.**      Except as provided by order of the Court, no member of the Settlement Class shall have any interest in the Settlement Fund or any portion thereof. CIIPPs,

members of the Settlement Class, and their counsel will be reimbursed solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and expenses and the costs of notice of the Settlement Agreement to potential members of the Settlement Class. Pilgrim's and the other Released Parties shall not be liable for any costs, fees, or expenses of any of CIIPPs' and Co-Lead Counsel's attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund.

      **2.**    **Cooperation.** Cooperation by Pilgrim's is a material term of this Settlement Agreement. All cooperation under this Settlement Agreement is subject to approval (as needed) by the U.S. Department of Justice, and the Parties agree to use best efforts to seek such approval on a timely and fulsome basis. Pilgrim's cooperation shall include the following categories of cooperation.

      **a.**    To the extent Pilgrim's were to be afforded leniency or conditional leniency with respect to Broilers pursuant to the U.S. Department of Justice's Corporate Leniency Program, or any similar program, Pilgrim's shall cooperate with CIIPPs in a manner that is consistent with the provisions of the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA").

      **b.**    Settling Defendant's counsel shall meet with CIIPPs for a total of seven (7) hours, and more if agreed by the Parties, at an agreed upon location or virtually if in-person attendance is not possible and provide a reasonably detailed description of the principal facts known to Pilgrim's that are relevant to the alleged conduct at issue in the Action, including facts previously provided to the DOJ or any other U.S. government investigative authority in response to subpoenas or otherwise relating to bid-rigging or price fixing involving Broilers. This meeting will be conducted at the same time as Pilgrim's factual proffers with all plaintiff groups with whom Pilgrim's has agreed or may agree in this Action at a mutually agreed upon time after

11

consent by the DOJ.

      **c.**     Pilgrim's will use its best efforts to produce up to three (3) then-current Pilgrim's employees (as selected by CIIPPs) as live witnesses at any trial of the CIIPPs' claims in the Action.

      **d.**     Pilgrim's shall not oppose of object to the depositions of William Lovette, Clint Rivers, Jayson Penn, Fabio Sandri, Tim Stiller, Roger Austin, Gary Rhoades, and Thomas Lane.

      **e.**     To the extent that Pilgrim's responds to discovery, produces documents, or provides proffers or other cooperation to other plaintiffs in the *In re Broiler Chickens Antitrust Litigation*, delivery of such discovery, documents, proffers, and cooperation will include CIIPPs, or Pilgrim's will serve CIIPPs with a copy of such materials reasonably soon after such production to any other plaintiff.[3]

      **f.**     Pilgrim's agrees to use reasonable efforts to respond to a reasonable number of CIIPPs' questions regarding transaction data and otherwise assist CIIPPs in understanding any transaction data produced by Pilgrim's.

      **g.**     Pilgrim's agrees to use reasonable efforts to authenticate, and lay an evidentiary foundation for admissibility to, documents and/or things produced in the Action, where the facts indicate that the documents and/or things are authentic, whether by declarations, affidavits, depositions, hearings and/or trials as may be necessary for the admission of such information in the Action.

      **h.**     Beyond the information to be produced by Pilgrim's in discovery in

---

[3] This information shall include but is not limited to documents related to competition in the Broilers industry that Pilgrim's produced to the Department of Justice, Federal Trade Commission, U.S. Department of Agriculture, Commodities Futures Trade Commission, U.S. Securities & Exchange Commission, states' attorney's general, or other government agencies or regulators.

the above captioned litigation and in the Settlement Agreement, Pilgrim's will consider reasonable requests for additional relevant information about the Action from Co-Lead Counsel, considering the information that it has produced or will produce in discovery and whether providing the requested information will be burdensome or will otherwise increase the cost of, or compromise, its defense of the Action against other plaintiffs.

        **i.**     Pilgrim's cooperation obligations under this Settlement Agreement shall not be terminated or otherwise affected by the release as set forth in this Settlement Agreement. Unless this Settlement Agreement is not approved by the Court, Pilgrim's obligations to cooperate under this Settlement Agreement shall continue until final judgment has been entered in the Actions on all Claims brought by CIIPPs against all Defendants, and the time to appeal or to seek permission to appeal from the Court's entry of final judgment on such Claims has expired, or, if appealed, final judgment has been affirmed in its entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.

**D.**     **Release and Covenant Not to Sue**

        **1.**     **Release**. Upon the occurrence of the Date of Final Approval, and in consideration of the valuable consideration set forth in this Agreement, the Releasing Parties shall be deemed to have, and by operation of law and of the Order and Final Judgment shall have, hereby fully, finally, and forever completely compromised, settled, released, acquitted, resolved, relinquished, waived, and discharged the Released Parties of all Released Claims.

        **2.**     **Covenant Not to Sue**. The Releasing Parties covenant not to sue, directly or indirectly, or otherwise seek to establish liability against the Released Parties for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of or related to the Released Claims, including, without limitation, seeking to recover damages or

other relief relating to any of the Released Claims. This Paragraph shall not apply to any action to enforce this Settlement Agreement.

3. **Full Release**. The Parties to this Agreement expressly agree and confirm that the Released Claims as set forth in Section I(B)(29) and the provisions of this Section II(D) shall be interpreted as broadly as possible and to the fullest extent permitted by law and constitute a full and final release by the Releasing Parties of the Released Parties for the Released Claims.

4. **Non-Disparagement**. The Parties agree they will not disparage one another or their respective claims or defenses, such as by making extrajudicial public statements that disparage either of the Parties or their conduct in connection with the Action, and instead will confine their public comments to essentially the following: "The parties have agreed to resolve this matter. Pilgrim's has not admitted any liability and continues to deny the allegations in Plaintiffs' complaint, while Plaintiffs believe they would have prevailed." For the avoidance of doubt, the Parties agree that statements made in pleadings, arguments, or trial of this case are not subject to this provision.

5. **Waiver**. In addition to Section II(D)(3), the Releasing Parties shall be deemed to have, and by operation of the Order and Final Judgment shall have, with respect to the subject matter of the Released Claims, expressly waived and released the provisions, rights, and benefits of Section 1542 of the California Civil Code (providing, "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.") and Section 20-7-11 of the South Dakota Codified Laws (providing, "A GENERAL RELEASE

DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.").

The Releasing Parties shall further be deemed to have, and by operation of the Order and Final Judgment shall have, expressly waived all similar provisions, statutes, regulations, rules, or principles of law or equity of any other state or applicable jurisdiction, or principle of common law. In connection with the waiver and relinquishment set forth in this Paragraph, the Releasing Parties acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Released Claims, but that it is their intention to fully, finally, and forever release, acquit, relinquish and discharge the Released Parties of all Released Claims, and, upon the Date of Final Approval, shall be deemed to have, and by operation of the Order and Final Judgment, shall have, forever released, acquitted, relinquished, and discharged the Released Parties of all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, notwithstanding the discovery or existence of any such additional or different facts. The Releasing Parties intend and, by operation of the Order and Final Judgment, shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the Settlement of which this waiver and release is a part. The foregoing release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims is contractual, and not a mere recital.

E.    **Effect of this Settlement Agreement on Final Judgment as to Other Defendants.**

1.    CIIPPs have been provided with a copy of the Second Amended Judgment

Sharing Agreement entered into by certain Defendants dated February 25, 2020 (hereinafter referred to as "Defendants' Agreement"). The defined terms in Defendants' Agreement shall have the same meaning when used in this Settlement Agreement. CIIPPs agree that notwithstanding anything to the contrary contained in this Settlement Agreement, CIIPPs shall reduce the dollar amount collectable from the parties to the Defendants' Agreement pursuant to any Final Judgment by a percentage equal to the Sharing Percentage of Pilgrim's, calculated pursuant to Section 4 and 6 and Exhibits A and B of Defendants' Agreement (as illustrated by the Appendix to Defendants' Agreement) as if Pilgrim's had not settled, had been found liable on the claim, and was a Sharing Party with respect to the Final Judgment. CIIPPs agree that this undertaking is also for the benefit of any Defendant that is a party to the Defendants' Agreement and that this undertaking may be enforced by any or all of such Defendants as third-party beneficiaries hereof. Any ambiguity in this Section II(E), or inconsistency between this Settlement Agreement and the Defendants' Agreement, shall be resolved in favor of Defendants' Agreement, including, without limitation, Sections 6.D.1 and 6.D.2 thereof. CIIPPs further represent and warrant that they have not reached any agreement to provide any portion of the settlement proceeds provided hereunder to any person or entity that is not explicitly identified as a releasor in this Settlement Agreement, except for proceeds received by CIIPPs' attorneys for payment of attorneys' fees.

2. This paragraph reflects CIIPPs' views of Defendants' Second Amended Judgment Sharing Agreement. As part of this settlement agreement and because of the CIIPPs' views of the Defendants' Second Amended Judgment Sharing Agreement, CIIPPs have agreed to eliminate damages arising from Pilgrim's sales of Broilers from the case as against the signatories to the Second Amended Judgment Sharing Agreement. The signatories to the Second Amended Judgment Sharing Agreement shall not be liable for any damages arising from Pilgrim's sales of Broilers during the Class Period, as set forth in CIIPPs' Motion for Class Certification and

supporting materials (*see, e.g.*, ECF No. 3968). CIIPPs state that they entered into this settlement agreement based on the foregoing understanding of Defendants' Second Amended Judgment Sharing Agreement. Consistent with the foregoing, CIIPPs state that any damages arising from Pilgrim's sale of Broilers, as defined in CIIPPs' motion for class certification and supporting materials, is not joint and several as against the other Defendants included as signatories to the Second Amended Judgment Sharing Agreement. If, as is contemplated under this agreement, CIIPPs do not seek damages for Pilgrim's sales at trial as against the other signatories to the Defendants' Agreement or if they use a special verdict form at trial that separately identifies the applicable Pilgrim's sales, CIIPPs state that it will not be necessary to apply the Pilgrim's percentage as a discount to any trial verdict under the terms of Defendants' Agreement. CIIPPs state that they entered into this settlement agreement based on the foregoing understanding of Defendants' Agreement.

    **3.** Pilgrim's understanding of the effect of Defendants' Second Judgment Sharing Agreement on this Settlement Agreement are set forth above in Paragraph II(E)(1) and otherwise reflected in Defendants' Second Judgment Sharing Agreement.

    **4.** The Parties agree that their respective views about Defendants' Second Judgment Sharing Agreement or its effects is not a ground to seek the termination, modification or renegotiation of the Settlement Agreement.

    **F.**   **Settlement Fund Administration.** The Settlement Fund shall be administered pursuant to the provisions of this Settlement Agreement and subject to the Court's continuing supervision and control, until the funds in the Settlement Fund are fully distributed, as follows:

    **1.** The Settlement Fund shall be established within an Escrow Account and administered by an Escrow Agent at a bank designated by Co-Lead Counsel and administered by an Escrow Agent designated by Co-Lead Counsel. Co-Lead Counsel, Pilgrim's, and Settling

Defendant's Counsel agree to cooperate in good faith to prepare an appropriate escrow agreement in conformance with this Settlement Agreement.

2.      Except as provided herein, neither the Settlement Class, Co-Lead Counsel, nor Pilgrim's shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Settlement Class or obtaining approval of the Settlement or administering the Settlement. Such fees, costs, or expenses shall be paid solely from the Settlement Fund, subject to any necessary Court approval.

3.      Co-Lead Counsel, after obtaining an order of Preliminary Approval, may withdraw from the Settlement Fund up to the full amount of the Settlement Administrative Payment to pay the costs for Class Notice and administration and for Preliminary Approval and Final Approval. As set forth above, Co-Lead Counsel shall thereafter present receipts or other evidence of payment of such costs to Pilgrim's.

4.      Co-Lead Counsel shall use best efforts to send out notice to the Settlement Class as soon as is reasonably practicable but no later than 60 days after Preliminary Approval. In the event that Court-ordered notice and administration costs exceed $1,000,000, Plaintiffs and Co-Lead Counsel may apply to the Court to pay such additional notice and administration costs from the Settlement Fund. The Settlement Administrative Payment actually incurred pursuant to this Settlement Agreement shall be nonrefundable in the event that, for any reason, this Settlement Agreement is terminated or rescinded pursuant to Section II(H)(10).

5.      If there are other settlements at the time of, or within a reasonable amount of time after, the Date of Preliminary Approval, Co-Lead Counsel shall endeavor to ensure that Class Notice and claims administration costs shall be paid from the settlement funds in this and such other settlement agreements proportionate to the amount of any such settlements, consistent with any such other settlement agreements and the approval of the Court.

18

6.      Under no circumstances will Pilgrim's be required to pay more or less than the Settlement Amount plus the Settlement Administrative Payment pursuant to this Settlement Agreement.  For purposes of clarification, the payment of any fee and expense award, the Class Notice and administrative costs (including payment of any applicable fees to Escrow Agent), any service awards to Plaintiffs, payments to Class Members and any other fees and costs associated with the implementation of this Settlement Agreement shall be exclusively paid from the Settlement Fund.

7.      No other funds shall be paid or disbursements made from the Settlement Fund without an order of the Court, and in the event of any such order of the Court authorizing payments or disbursements above $1 million, any such additional payments or disbursements shall be refunded to Pilgrim's in the event that the Settlement Agreement is terminated or rescinded pursuant to Section II(H)(10).

8.      The Escrow Agent shall, to the extent practicable, invest the funds deposited in the Settlement Fund in discrete and identifiable instruments backed by the full faith and credit of the United States Government, or fully insured by the United States Government or any agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  Any cash portion of the Settlement Fund not invested in instruments of the type described in the first sentence of this Section II(F)(8) shall be maintained by the Escrow Agent, and not commingled with any other funds or monies, in a federally insured bank account.  Subsequent to payment into the Settlement Fund pursuant to Section II(C)(1), neither Pilgrim's, any other Released Party, nor Settling Defendant's Counsel shall bear any responsibility or risk related to the Settlement Fund or the Net Settlement Fund.

9.      The Parties agree that the Settlement Fund and the Net Settlement Fund are each intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation

§ 1.468B-1 and, to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. In addition, Co-Lead Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Section, including the relation-back election (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Co-Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Funds being a "Qualified Settlement Fund" within the meaning of Treas. Reg. § 1.4688-1.

10.     The Escrow Agent, as administrator of the Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any Taxes, as defined below, owed with respect to the Escrow Account. Neither Pilgrim's, any other Released Party, nor the Settling Defendant's Counsel shall have any liability or responsibility of any sort for filing any tax returns or paying any Taxes or expenses with respect to the Qualified Settlement Fund.

11.     All: (i) taxes on the income of the Settlement Fund ("Taxes") and (ii) expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, reasonable expenses of tax attorneys and accountants) shall timely be paid by the Escrow Agent out of the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)). Such returns shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. The Class Members shall be solely responsible for paying any and all federal, state, and local income taxes due on any distribution made to them pursuant to the Settlement

provided herein.

      **12.** After the Date of Final Approval, the Net Settlement Fund shall be disbursed in accordance with a plan of distribution to be approved by the Court. The Class Members shall look solely to the Net Settlement Fund for settlement and satisfaction of any and all Released Claims from Released Parties and shall not be entitled to any other payment or relief from the Released Parties. The timing of a motion to approve a plan of distribution of the Net Settlement Fund created by this Settlement Agreement shall be in the discretion of Co-Lead Counsel, and may be combined with a plan to distribute proceeds from other settlements in this Action.

    **G.**    **Reversion**

Except as set forth in the Supplemental Agreement being executed simultaneously with this Settlement Agreement, as described in Section II(H)(10)(b), Pilgrim's shall have no rights to reversion in the event that Class Members request exclusion or opt out of the Class, and any Opt-Out Claims shall have no effect on this Settlement Agreement.

    **H.**    **Approval of Settlement Agreement and Dismissal of Released Claims**

      **1.**    **Cooperation.** Plaintiffs and Pilgrim's shall use their best efforts to effectuate this Settlement Agreement, including cooperating in seeking the Court's approval of the Settlement Agreement, the giving of appropriate Class Notice under Federal Rules of Civil Procedure 23(c) and (e), and the complete and final dismissal with prejudice of the Action as to Pilgrim's only.

      **2.**    **Settlement Class Certification.** As part of the motion for Preliminary

Approval of this Settlement Agreement, Plaintiffs shall seek, and Pilgrim's shall not object to,[4]

appointment of Plaintiffs' Co-Lead Counsel as Settlement Class Counsel for purposes of this

Settlement Agreement, and certification in the Action of a Settlement Class for settlement purposes

only, defined as follows:

> All entities that purchased Broilers indirectly from a Defendant or
> named co-conspirator in the Indirect Purchaser States, as defined in
> this settlement agreement, for their own use in commercial food
> preparation from January 1, 2008, until July 31, 2019 (the "Class
> Period").

> Excluded from this Class are: Natural persons who purchased
> Broilers for their personal use and not for commercial food
> preparation (End-User Consumers); purchasers of Broilers directly
> from Defendants; purchasers of Broilers for resale in unaltered form;
> purchases of Broilers from an intermediary who has further
> processed the Broiler; the Defendants; the officers, directors or
> employees of any Defendant; any entity in which any Defendant has
> a controlling interest; and any affiliate, legal representative, heir or
> assign of any Defendant; any federal, state governmental entities,
> any judicial officer presiding over this action and the members of
> his/her immediate family and judicial staff; any juror assigned to this
> action; and any co-conspirator identified in this action.

3.      **Motion for Preliminary Approval**. Plaintiffs shall submit to the District

Court a motion within sixty (60) calendar days of the Execution Date), requesting entry of an order

preliminarily approving this Settlement Agreement ("Preliminary Approval Order"). Pilgrim's

shall not oppose and shall reasonably cooperate in such motion. Prior to filing such motion, Co-

Lead Counsel shall provide the Settling Defendant's Counsel with a draft of such motion in a

reasonable amount of time sufficient to allow for review and consideration of such drafts and shall

consider in good faith any reasonably and timely edits proposed by the Settling Defendant's

---

[4]      By agreeing not to object to the proposed Settlement Class and appointment of Co-Lead Counsel as Settlement
Class Counsel, Pilgrim's is not waiving any rights, arguments or defenses and Pilgrim's expressly reserves all such rights,
arguments and defenses including with respect to any situation where the Settlement Agreement is not approved in all
material respects by the Court.

Counsel. The proposed Preliminary Approval Order shall provide that, *inter alia*:

      **a.**      the settlement proposed in the Settlement Agreement has been negotiated at arm's-length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Settlement Class;

      **b.**      after Class Notice has been carried out, a hearing on the settlement proposed in this Settlement Agreement shall be held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court (the "Fairness Hearing");

      **c.**      Class Members who wish to exclude themselves must submit an appropriate and timely request for exclusion;

      **d.**      Class Members who wish to object to this Agreement must submit an appropriate and timely written statement of the grounds for objection;

      **e.**      Class Members who wish to appear in person to object to this Agreement may do so at the Fairness Hearing pursuant to directions by the Court; and

      **f.**      All proceedings in the above-captioned action with respect to Pilgrim's and Plaintiffs are stayed until further order of the Court, except as may be necessary to implement the Settlement or comply with the terms thereof.

      **4.**      **Class Notice**. Class Notice shall provide for a right of exclusion, as set forth in Section II(H)(3). The Class Notice shall also provide for a right to object to the proposed Settlement. The timing of a motion to direct or approve Class Notice of this Settlement Agreement shall be in the discretion of Co-Lead Counsel, and may be combined with class notice of other settlements in this Action. Prior to filing such a motion to approve Class Notice, Co-Lead Counsel shall provide the Settling Defendant's Counsel with a draft of such motion and shall consider in good faith any reasonable and timely edits proposed by the Settling Defendant's Counsel.

23

5. **Cost of Class Notice**. The costs of providing Class Notice to Settlement Class Members shall be paid by the Escrow Agent from the Settlement Fund pursuant to Section II(F)(2) and (3).

6. **CAFA Notice**. Within ten (10) days of the filing of this Settlement Agreement in Court with the above-mentioned motion for Preliminary Approval, Pilgrim's will provide to the appropriate state officials and the appropriate federal official the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA").

7. **Final Judgment**. If this Settlement Agreement is preliminarily approved by the Court, the Settlement Class, through Co-Lead Counsel and in accordance with any schedule set forth in the Court's Preliminary Approval, shall seek entry of an Order and Final Judgment. A reasonable time in advance of submission to the Court, Co-Lead Counsel shall provide the Settling Defendant's Counsel with a draft of such a motion for final approval and shall consider in good faith any reasonable and timely edits proposed by the Settling Defendant's Counsel. The motion for Final Approval shall seek an entry of an order and Final Judgment that, *inter alia:*

    **a.** certifies the Settlement Class described in Section II(H)(2), pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

    **b.** finally approves this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions, without material modification of those terms and conditions;

    **c.** determines that the Class Notice constituted, under the circumstances, the most effective and practicable notice of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons

24

entitled to receive notice;

**d.** orders that all Claims made by CIIPPs against Pilgrim's in the Action, be dismissed with prejudice and, except as expressly provided for in this Settlement Agreement, without further costs or fees;

**e.** incorporates the Releases set forth in Section II(D) of this Agreement and makes the Releases effective as of the date of the Final Order and Final Judgment;

**f.** enjoins Releasing Parties from suing, directly or indirectly, any of the Released Parties for any of the Released Claims;

**g.** confirms that Pilgrim's has provided the appropriate notice pursuant to CAFA.

**h.** reserves to the Court continuing and exclusive jurisdiction over the Settlement and this Settlement Agreement, including the administration and consummation of this Agreement;

**i.** determines under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directs that the judgment of dismissal as to the Released Parties shall be final and entered forthwith; and

**j.** orders that Net Settlement Fund may be disbursed as provided in the Final Approval Order or other order of the Court. The Parties shall use all best efforts to obtain Final Approval of the Settlement Agreement without modification to any of its material terms and conditions.

**8. Class Counsel Fees and Expenses; No Other Costs.**

**a.** Except as otherwise provided in Section II(C)(1) of this Settlement Agreement, the Released Parties shall have no responsibility for any other payments, fees or costs, including Co-Lead Counsel's attorneys' fees, costs, and expenses or the fees, costs, or expenses of

any Plaintiff's or Settlement Class Member's respective attorneys, experts, advisors, or representatives; provided, however, that with respect to the Action, including this Settlement Agreement, Pilgrim's shall bear its own costs and attorneys' fees.

      **b.**    At their discretion and after Final Approval and proper notice to Class Members and opportunity to object, Co-Lead Counsel may seek a Court order granting attorneys' fees and expenses from the Settlement Fund, separately or in conjunction with other settlements.

      **c.**    At their discretion and after Final Approval and proper notice to Class Members and opportunity to object, Class Counsel may seek from the Settlement Fund, separately or in conjunction with other settlements, a court order granting reimbursement of costs and service awards, to compensate for the time and expense they have incurred in bringing this Action. Any such attorneys' fees will be paid out of the Settlement Amount, and Pilgrim's shall have no obligation to pay any fees or expenses of Co-Lead Counsel.

      **d.**    The procedure for and the allowance or disallowance by the Court of any applications by Co-Lead Counsel for attorneys' fees and expenses or the expenses of or service awards to Plaintiffs to be paid out of the Settlement Fund are not part of or a condition to the Settlement set forth herein, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement and the Settlement Agreement, and any order or proceeding relating to any application for attorneys' fees or expenses or service awards shall not operate to terminate or cancel this Settlement Agreement or the releases set forth herein, or affect or delay the Final Approval of this settlement and Settlement Agreement.

      **e.**    Within 15 calendar days after any order by the Court awarding attorneys' fees, expenses, service awards, or expenses, the Escrow Agent shall pay the approved attorneys' fees, costs, and service award via wire transfer from the Settlement Fund as directed by

26

Co-Lead Counsel. In the event the amount of attorneys' fees, costs, or service award is reduced on appeal, Co-Lead Counsel shall, within 30 days of such appellate order, cause the difference in the amount paid and the amount awarded on appeal to be returned to the Settlement Fund.

9. **When Settlement Becomes Final**. The settlement contemplated by this Settlement Agreement shall become final on the date that: (a) the Court has entered the Order and Final Judgment approving this Settlement Agreement, and all of its material terms and conditions, in accordance with Section II(H)(7) above, under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Action as against Pilgrim's with prejudice as to all Settlement Class Members and without costs; and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Settlement Agreement and entry of the Order and Final Judgment, as described in Section II(H)(7) above, has expired with no appeal having been filed or, if appealed, approval of this Settlement Agreement and the Order and Final Judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review. "Final Approval" shall mean the satisfaction of all the conditions set forth in this Section II(H)(9). The Parties agree that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure, nor the All Writs Act, 28 U.S.C. § 1651, nor any extensions of time in petitioning for a writ of certiorari under Rule 13 of the Rules of the Supreme Court of the United States, shall be taken into account in determining the above- stated times.

10. **Termination and Rescission.**

a. **Rejection or Alteration of Settlement Terms**. If the Court declines to grant a Preliminary Approval Order or Order and Final Judgment (as set forth in Sections II(H)(3) or (H)(7) above, respectively); or if the Court approves this Settlement Agreement in a materially modified form; or if after the Court's approval, such approval is materially modified or set aside on appeal; or Final Approval is not obtained; or if the Court enters the Final Order and

Judgment and appellate review is sought and on such review such Final Order and Judgment is not affirmed; or if Pilgrim's exercises its right to terminate this Settlement Agreement as provided in the Supplemental Agreement (as set forth in Section II(H)(10)(b)) (collectively "Triggering Events"), then Pilgrim's and Plaintiffs shall each, in their respective sole discretion, have the option to rescind, cancel, or terminate this Settlement Agreement in its entirety by providing written Notice of their election to do so ("Termination Notice") to the other Party within fifteen (15) calendar days of any of the Triggering Events. For purposes of this Section II(H)(10)(a), a material modification includes, but is not limited to, any modification to the Settlement Amount or a material change to the scope of the Released Claims. In no way shall CIIPPs have the right to rescind, cancel or terminate this Settlement Agreement if the Court fails or refuses to grant any requested attorneys' fees, any costs, or any incentive awards to Class Representatives.

**b.**     Simultaneously herewith, Plaintiffs, by and through Co-Lead Counsel, and Pilgrim's are executing a "Supplemental Agreement" setting forth certain conditions under which this Settlement may be withdrawn or terminated at the sole discretion of Pilgrim's if potential Settlement Class Members who meet certain criteria exclude themselves from the Settlement Class. The Supplemental Agreement shall not be filed with the Court except that the substantive contents of the Supplemental Agreement may be brought to the attention of the Court, *in camera*, if so requested by the Court or as otherwise ordered by the Court. The Parties will keep the terms of the Supplemental Agreement confidential, except if compelled by judicial process to disclose the Supplemental Agreement except as described below in Section III(G).

**c.**     **Effect of Termination or Rescission of Settlement**. In the event this Settlement Agreement is rescinded or terminated by a Termination Notice, then: (i) within fifteen (15) calendar days thereafter, the Settlement Amount, including accrued interest, less taxes and tax expenses that have been paid or that have accrued and will be payable at some later date,

and less expenses and costs that have been disbursed pursuant to Section II(F)(2), shall be refunded by the Escrow Agent to Pilgrim's pursuant to written instructions from Settling Defendant's Counsel to Co-Lead Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of the day before the Execution Date, and without waiver of any positions asserted in the Action as of the day before the Execution Date, which shall then resume proceedings in the Court, that Court having retained jurisdiction over the Settlement and related matters and, except as otherwise expressly provided in this Settlement Agreement, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

      **11.**    **No Admission**.

      **a.**    Pilgrim's denies all allegations of wrongdoing in the Action. Nothing in this Settlement Agreement or its contents, or any and all statements, negotiations, documents, and discussions associated with it, constitutes an admission by Pilgrim's or any other Released Party as to the merits of the allegations made or which could have been made in the Action, or an admission by Plaintiffs or the Settlement Class of the validity of any defenses that have been or could be asserted by Pilgrim's or any other Released Party.

      **b.**    Except as is provided in Section III(C) below and Section II(E), no provision of this Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Released Party, CIIPP, member of the Settlement Class, or Co-Lead Counsel.

      **c.**    This Settlement Agreement, and any of its terms, and any agreement or order relating thereto, shall not be deemed to be, or offered by any of the Parties to be received in any civil, criminal, administrative, or other proceeding, or utilized in any manner whatsoever as a presumption, a concession, or an admission of any fault, wrongdoing, or liability whatsoever on the part of any of Pilgrim's or other Released Party; provided, however, that nothing contained in this Section II(H)(11) shall prevent this Settlement Agreement (or any agreement or order relating

thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Settlement Agreement (or any agreement or order relating thereto) or the Order and Final Judgment, or in which the reasonableness, fairness, or good faith of any Party participating in the Settlement (or any agreement or order relating thereto) is in issue, or to enforce or effectuate provisions of this Settlement Agreement or the Order and Final Judgment. This Settlement Agreement may, however, be filed and used in other proceedings, where relevant, to demonstrate the fact of its existence and of this Settlement, including, but not limited to, Pilgrim's filing the Settlement Agreement and/or the Order and Final Judgment in any other action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, waiver, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## III.    MISCELLANEOUS

    **A.    Entire Agreement**. This Settlement Agreement, including the Supplemental Agreement, shall constitute the entire, complete and integrated agreement between the Parties pertaining to the settlement of the Action as to Pilgrim's, and the release of the Released Parties, and supersedes any and all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions (either oral or written) of the Parties in connection therewith. All terms of the Settlement Agreement are contractual and not mere recitals. The Parties agree that this Settlement Agreement may be modified only by a written instrument signed by the Parties and that no party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

    **B.    Inurement**. This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein. The terms of the Settlement Agreement are and shall

be binding upon, to the fullest extent possible, and inure to the benefit of, the successors, assigns, and heirs of each of the Releasing Parties and the Released Parties, and upon all other Persons claiming any interest in the subject matter hereto through any of the Settling Parties, Releasing Parties, or Released Parties, including any Class Members. Without limiting the generality of the foregoing, upon certification of the Settlement Class and Final Approval, each and every covenant and agreement herein by the CIIPPs shall be binding upon all members and potential members of the Settlement Class and Releasing Parties who have not validly excluded themselves from the Settlement Class.

C.      **Modification**. This Settlement Agreement may be modified or amended only by a writing executed by Co-Lead Counsel and Pilgrim's or Settling Defendant's Counsel, subject (if after the Date of Preliminary Approval) to approval by the Court. Amendments and modifications may be made without notice to the Settlement Class unless notice is required by law or by the Court. The waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party. The waiver by any Party of any particular breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement. This Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Agreement. Any breach of this Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

D.      **Drafted Mutually**. For the purpose of construing or interpreting this Settlement Agreement or any provision hereof, Plaintiffs, the Settlement Class and Pilgrim's shall be deemed

31

to have drafted it equally, and it shall not be construed strictly for or against any party.

**E.      Governing Law**. All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of Illinois without regard to its choice-of-law or conflict-of-law principles, and any and all disputes regarding this Settlement Agreement or the Supplemental Agreement will be mediated in good faith with Professor Eric Green before any suit, action, proceeding or dispute may be filed in the Court.

**F.      Voluntary Settlement**. The Parties agree that this Settlement Agreement was negotiated in good faith by the Parties, and reflects a settlement that was reached voluntarily after consultation with competent counsel and the participation of a neutral mediator, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

**G.      Confidentiality**. The Parties agree to continue to maintain the confidentiality of all settlement discussions and materials exchanged during the settlement negotiation.   However, Pilgrim's and CIIPPs can inform other parties to this Action that they have reached a settlement agreement, the amount of the settlement, and the cooperation provided for in this Settlement Agreement.  Notwithstanding anything in this paragraph:

1.      Except as described below, the Supplemental Agreement is to be kept confidential and not disclosed to other Parties in this Action, unless requested by the Court for in camera review in connection with approval of the Parties' Settlement Agreement;

2.      Notwithstanding anything in this paragraph, the following disclosures are permitted: (1) in order to comply with its obligations under CAFA, Settling Defendant may share a copy of this Settlement Agreement (and, as necessary, the Supplemental Agreement) with governmental authorities; (2) if necessary to comply with an investigation by any governmental authority investigating claims similar to this Action, either Party may share a copy of this Settlement Agreement and the Supplemental Agreement to such governmental authority; (3) if necessary to permit this Settlement Agreement to be treated as a Qualified Settlement Agreement pursuant to Defendants' Agreement, Settling Defendant may share a copy of this Settlement Agreement and the Supplemental Agreement with the parties to Defendants' Agreement; and (4) if necessary for Pilgrim's to comply with its regulatory and financial reporting obligations, Pilgrim's may disclose the

32

fact and amount of Settlement in its financial reports that are publicly filed.

**H.**  **Jurisdiction**. This Settlement Agreement is subject to the continuing and exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein. If for any reason this Settlement Agreement is rescinded, terminated, fails to obtain Final Approval or otherwise fails to become effective, then, in such event, nothing in this Settlement Agreement or with regard to any conduct of Pilgrim's or Settling Defendant's Counsel pursuant to any obligations Pilgrim's has pursuant to the Settlement Agreement shall constitute or are intended to be construed as any agreement to personal jurisdiction (general or specific) or subject matter jurisdiction so as to confer the jurisdiction of the District Court over the Released Parties, nor shall it constitute any waiver of any defenses based on personal or subject matter jurisdiction.

**I.**  **Counterparts**. This Settlement Agreement may be executed in counterparts by Co-Lead Counsel and Settling Defendant's Counsel, each of which shall be deemed an original and all of which taken together shall constitute the same Settlement Agreement. A facsimile, electronic or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

**J.**  **Represented by Counsel**. Plaintiffs, the Settlement Class, and Pilgrim's acknowledge that each have been represented by counsel, and have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so and are not relying on any representation or warranty by the other party other than as set forth herein. The Settling Parties and their respective counsel agree that they will not seek to set aside any part of the Settlement Agreement on the grounds of mistake.

**K.**  **Authorization**. Each of the undersigned attorneys represents that he or she is fully

authorized to enter into and execute this Settlement Agreement, subject to Court approval; the undersigned Co-Lead Counsel represent that they are authorized to execute this Settlement Agreement on behalf of Plaintiffs and the Settlement Class; and the undersigned Settling Defendant's Counsel represent that they are authorized to execute the Settlement Agreement on behalf of Pilgrim's.

     **L.**    **Privilege**. Nothing in this Settlement Agreement or the negotiations or proceedings relating to the foregoing is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the accountants' privilege, the attorney-client privilege, the joint defense privilege, joint common interest privilege or attorney work product immunity.

     **M.**    **Notice**. Any notice, other than Class Notice, required pursuant to or in connection with this Settlement shall be in writing and shall be given by: (1) hand delivery; (2) registered or certified mail, return receipt requested, postage prepaid; or (3) UPS or similar overnight courier, with a courtesy copy by electronic mail, addressed, in the case of notice to any Plaintiff to Co-Lead Counsel at their addresses set forth below, and, in the case of notice to Pilgrim's, to the representative at the address set forth below, or such other address as Pilgrim's or Co-Lead Counsel may designate, from time to time, by giving notice to all Parties in the manner described in this Section III(M) (The foregoing shall be referred to herein as "Notice").

For Commercial and Institutional Indirect Purchaser Plaintiffs:

        Daniel C. Hedlund
        GUSTAFSON GLUEK PLLC
        120 South 6th Street, Suite 2600
        Minneapolis, MN 55402
        T: (612) 333-8844 / F: (612) 339-6622
        dhedlund@gustafsongluek.com

Adam J. Zapala
COTCHETT, PITRE & McCARTHY LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
T: (650) 697-6000 / F: (650) 697-0577
azapala@cpmlegal.com

For Settling Defendant:

Carrie C. Mahan
Christopher J. Abbott
WEIL GOTSHAL & MANGES LLP
2001 M Street N.W., Ste. 600
Washington, D.C. 20036

**N.** **Headings**. All headings contained in this Settlement Agreement are for reference purposes only and are not intended to affect in any way the meaning or interpretation of this Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized

representatives, have agreed to this Settlement Agreement as of the Execution Date.

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua J. Rissman
Brittany N. Resch
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
T: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsongluek.com

Adam J. Zapala
Tamarah Prevost
James G. Dallal
COTCHETT, PITRE & MCCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
T: (650) 697-6000
azapala@cpmlegal.com
tprevost@cpmlegal.com
jdallal@cpmlegal.com

Dated: __8/4/2021__

Dated: __8/3/2021__

***Counsel for Commercial and
Institutional Indirect Purchaser
Plaintiffs***

Carrie C. Mahan
Christopher J. Abbott
WEIL GOTSHAL & MANGES LLP
2001 M Street N.W., Ste. 600
Washington, D.C. 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
carrie.mahan@weil.com
christopher.abbott@weil.com

Dated: __8|3|2021__

***Counsel for Defendant Pilgrim's Pride
Corporation***

# EXHIBIT C

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: BROILER CHICKEN ANTITRUST LITIGATION | Case No. 1:16-cv-08637 |
| THIS DOCUMENT RELATES TO:<br><br>COMMERCIAL & INSTITUTIONAL INDIRECT PURCHASER PLAINTIFF ACTIONS | |

## SETTLEMENT AGREEMENT BETWEEN COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS AND THE MAR-JAC DEFENDANTS

This Settlement Agreement ("Settlement Agreement" or "Agreement") is made and entered into as of the Execution Date, by and between Mar-Jac Poultry, Inc., Mar-Jac Poultry MS, LLC, Mar-Jac Poultry AL, LLC, Mar-Jac AL/MS, Inc., Mar-Jac Poultry, LLC, and Mar-Jac Holdings, Inc.[1] ("Mar-Jac" or "Settling Defendant") on the one hand, and the Commercial and Institutional Indirect Purchaser Plaintiffs ("Plaintiffs" or "CIIPPs"),[2] individually and on behalf of a class of indirect purchasers of Broilers,[3] on the other hand, which Agreement is subject to court approval in the above-captioned action (the "Action"). CIIPPs, on behalf of the Settlement Class, and Mar-Jac are referred to herein collectively as the "Parties" or individually as a "Party."

---

[1] Mar-Jac Holdings, Inc. is incorrectly named in the Complaint as Mar-Jac Holdings, LLC.

[2] As used herein, "CIIPPs" means Sargent's Restaurant and Lounge; Fargo Stopping Center, LLC; Wildwood Tavern LLC; Bodega Brew Pub, Inc.; Sullott Corporation; Chicken Joe's LLC; Eat This, Inc.; Alpine Special Treatment Center, Inc.; Tennis Bums, LLC; Alabama Joe's 2, Inc.; Tani Sushi Bistro, LLC; France 44 Foods, Inc.; Alliance Healthcare System, Inc.; Little Figs, Inc.; Da Big Blue Enterprises Corp.; Floersch IGA, Inc.; Avanti's of Phoenix, Inc.; Midtown Bar and Grill LLC; Mookie's Southern Cuisine LLC; Eowyn, LLC; Peppers Grill & Bar, Inc.; Daliano's, Inc.; Sumner County Restaurant & Creamery LLC; Bashara & Company, LC; Tic-Tac-O; Brix Tavern, LLC; Pancho's Taqeria, Inc.; Legacy 5, LLC; Roost Fried Chicken LLC; Oregano Italian, LLC; Bordenaro's Pizza, Inc.; Telavi Hospitality, Inc.; and FB Mall, LLC.

[3] Unless otherwise indicated, all capitalized terms shall have the meaning ascribed in the Definitions in Section I.

## RECITALS

A.      Plaintiffs are prosecuting the Action on their own behalf and on behalf of the Settlement Class.

B.      Plaintiffs have alleged, among other things, that Mar-Jac entered into a contract, combination or conspiracy in restraint of trade, the purpose and effect of which was to suppress competition and to allow Mar-Jac to charge supra-competitive prices for Broilers during the Class Period, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, as well as various state antitrust, unfair competition, unjust enrichment, and consumer protection laws.

C.      Mar-Jac vigorously and affirmatively rejects Plaintiffs' Claims and has alleged numerous defenses to Plaintiffs' Claims.

D.      This Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, or regulation or of any liability or wrongdoing by Mar-Jac or of the truth of any of Plaintiffs' Claims, nor shall it be deemed or construed to be an admission or evidence of Mar-Jac's defenses.

E.      Co-Lead Counsel have conducted an investigation into the facts and law regarding the Action and the possible legal and factual defenses thereto and have concluded that a settlement with Mar-Jac according to the terms set forth herein is fair, reasonable, adequate, and beneficial to and in the best interests of the Settlement Class, given the uncertainties, risks, and costs of continued litigation.

F.      Despite its belief that it is not liable for, and has strong defenses to, Plaintiffs' Claims, Mar-Jac desires to settle the Action to avoid the further expense, inconvenience, disruption, and burden of this litigation and any other present or future litigation arising out of the facts that gave rise to the Action, to avoid the risks inherent in uncertain complex litigation and trial, and thereby to put to rest this controversy.

G.      Mar-Jac has entered into a Second Amended Judgment Sharing Agreement with other Defendants, which Co-Lead Counsel have reviewed and which is addressed in Paragraph II(D)(6) below.

H.      Arm's-length settlement negotiations have taken place between Co-Lead Counsel and the Settling Defendant's Counsel and the settlement was reached as a result of those negotiations.

I.      CIIPPs and Co-Lead Counsel believe that the Settlement Fund (as hereinafter defined) reflects fair, reasonable, and adequate compensation for the Settlement Class (as hereinafter defined) to release, settle and discharge their claims that they were overcharged by the alleged anticompetitive conduct of which Mar-Jac is accused.

J.      The Parties to this Agreement desire to fully and finally settle and compromise this Action and all potential Released Claims by Releasing Parties against the Released Parties as set forth below to avoid the costs and risks of protracted litigation and trial.

**IT IS HEREBY AGREED**, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, by and among the Settling Parties, that the Action and all Released Claims are finally and fully settled and compromised and that the Action shall be dismissed in its entirety with prejudice as to the Released Parties and without cost to the Released Parties, other than those costs set forth in this Settlement Agreement, subject to approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, upon and subject to the following terms and conditions:

## I.      DEFINITIONS

### A.      Settlement Class Definition

"Settlement Class" means the class described in Section II(G)(2) below.

3

B.     **General Definitions**

1.     "Action" means the putative class action filed by CIIPPs in the above-captioned proceeding.

2.     "Affiliate" means with respect to any person, entity or company, any person, entity, or company that, directly or indirectly, controls, is controlled by or is under common control with such person, entity or company.

3.     "Broilers" are chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, raw or cooked, whole or in parts, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards.

4.     "Claims" mean any and all, known or unknown, actual or potential causes of action, claims, contentions, allegations, assertions of wrongdoing, suits, damages, losses, or demands for recoveries, remedies, or fees complained of, relating to, referred to, or arising from the conduct alleged in the Action or which could have been alleged in the Action, whether class, individual, or otherwise in nature.

5.     "Class Member" means each member of the Class that does not timely and properly exclude itself from the Settlement Class.

6.     "Class Notice" means the notice to the Class that is approved by the Court, in accordance with Section II(G)(4) below.

7.     "Class Period" means the period from and including January 1, 2008 through July 31, 2019.

8.     "Co-Conspirator" means those entities named as co-conspirators in the Operative Complaint.

9.     "Co-Lead Counsel" and "Settlement Class Counsel" mean, collectively, the law firms of Gustafson Gluek PLLC and Cotchett, Pitre & McCarthy, LLP, Commercial and Institutional Indirect Purchaser Plaintiffs' Interim Co-Lead Class Counsel.

10.     "Complaint" or "Operative Complaint" means the Seventh Amended Consolidated Class Action Complaint in the Action, ECF Nos. 3929 and 3931.

11.     "Court" or "District Court" means the United States District Court for the Northern District of Illinois and the Honorable Thomas M. Durkin or his successor, or any other Court in which the Action is proceeding.

12.     "Date of Final Approval" means the date on which Final Approval as provided for in Section II(G)(9) occurs.

13.     "Date of Preliminary Approval" means the date on which the Court enters an order granting preliminary approval to this Settlement Agreement, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, as provided in Section II(G)(3) below.

14.     "Defendant" or "Defendants" means any or all of the Defendants named in the Operative Complaint.

15.     "Execution Date" means the date on which this Settlement Agreement is entered into and executed by all Parties.

16.     "Escrow Account" means the account with the Escrow Agent that holds the Settlement Fund.

17.     "Escrow Agent" means the bank into which the Settlement Fund shall be deposited and maintained as set forth in Section II(C) of this Agreement.

18.     "Fairness Hearing" means a hearing on the settlement proposed in this Settlement Agreement held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

19.     "Final Approval" shall mean the satisfaction of all the conditions set forth in Section II(G)(9).

20.     "Indirect Purchaser State" means Arizona, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

21.     "Net Settlement Fund" means the Settlement Fund, plus accrued interest and income, less any award of attorneys' fees, Service Awards, and reimbursement of expenses and less applicable taxes, tax preparation expenses, and costs of Class Notice and administration as provided for in this Settlement Agreement, that may be awarded or approved by the Court.

22.     "Notice" means the notice in accordance with Section III(M).

23.     "Opt-Out Claim" means any claim, as set forth in Sections II(G)(3) and (4) of this Settlement Agreement, made by a person or entity, otherwise qualifying as a member of the Settlement Class, that has validly and timely excluded itself from the Settlement Class.

24.     "Order and Final Judgment" means the order and final judgment of the Court approving the Settlement Agreement, as described in Section II(G)(7) below.

25.     "Parties" or "Settling Parties" means Settling Defendant and the Settlement Class, as represented by CIIPPs.

26.     "Plaintiffs" means the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs").

27.     "Released Claims" means any and all existing or potential Claims, demands, claims, actions, suits, and causes of action, whether class, individual, or otherwise in

nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, indirectly, representatively, derivatively or in any other capacity) that the Releasing Parties (defined below) ever had, now have, or hereafter can, shall, or may ever have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated, claims, demands, actions, suits, causes of action, injuries, or damages arising from or in connection with any act or omission through the date of Preliminary Approval, relating to or referred to in the Action or arising from the factual predicate of the Action. For the avoidance of doubt, "Released Claims" includes all claims that have been asserted, or could have been asserted, in the Action, including all claims in any way arising out of or relating to the purchase of Broilers produced, processed or sold by Mar-Jac or any of the other Defendants or Co-Conspirators. Notwithstanding the above, "Released Claims" does not include: (a) claims asserted against any other Defendant or alleged Co-Conspirator other than the Released Parties; (b) damages claims under the state or local laws of any jurisdiction other than an Indirect Purchaser State; or (c) any wholly-unrelated claims based on: (1) product defect or breach of warranty; (2) breach of contract (except such breaches relating to anticompetitive actions and/or unfair or inflated pricing); or (3) purchases of Broilers by persons or entities other than the Releasing Parties, which includes certain claims specifically excluded from the Settlement Class in Section II(G)(2) below. The reservation of claims set forth in (a) through (c) of this Section I(B)(29) does not impair or diminish the right of the Released Parties to deny any such claims or to assert any and all defenses to such claims.

28. "Released Party or Parties" means jointly and severally, individually and collectively, Mar-Jac, any and all of its past and current corporate parents (including holding companies), subsidiaries, Affiliates, divisions, departments, joint ventures, predecessors, successors, assigns and any and all of their respective heirs, executors, devisees, administrators,

officers, executives, directors, stockholders, employees, partners, members, managers, agents, attorneys, advisors, auditors, accountants, contractors, servants, representatives and insurers. "Released Parties" includes any person or entity identified in the previous sentence in relation to Mar-Jac that has been or in the future may be identified in the Action as a "Co-Conspirator." Notwithstanding the foregoing, "Released Parties" does not include any other Defendant or alleged Co-Conspirator, either explicitly or as a third-party beneficiary.

29.     "Releasing Parties" means jointly and severally, individually and collectively, Plaintiffs, the Settlement Class, and each Class Member, on behalf of themselves and any person or entity claiming by or through them, including without limitation, their respective predecessors; successors; assigns; and any and all past, present, and future parents, owners, subsidiaries, divisions, departments, Affiliates, heirs, executors, devisees, administrators, officers, directors, stockholders, employees, partners, members, managers, principals, agents, attorneys, legal or other advisors, auditors, accountants, contractors, servants, representatives and insurers.

30.     "Settling Defendant" and "Mar-Jac" mean Mar-Jac Poultry, Inc., Mar-Jac Poultry MS, LLC, Mar-Jac Poultry AL, LLC, Mar-Jac AL/MS, Inc., Mar-Jac Poultry, LLC, and Mar-Jac Holdings, Inc.

31.     "Settling Defendant's Counsel" means the law firms of Edward C. Konieczny LLC and Smith Gambrell & Russell, LLP, and attorneys associated therewith.

32.     "Settlement Amount" means the cash payment of FIVE MILLION NINE HUNDRED NINETY THOUSAND DOLLARS ($5,990,000), as more specifically described in Section II(C)(1), below.

33.     "Settlement Fund" means the funds described in Section II(C) of this Settlement Agreement, plus accrued interest, in the separate Escrow Account for the settlement contemplated by this Settlement Agreement established in accordance with Section II(E) below.

II.      **SETTLEMENT**

   A.   **The Parties' Efforts to Effectuate this Settlement Agreement**. The Parties will cooperate in good faith and use their best efforts to seek the Court's Preliminary Approval and Final Approval of the Settlement Agreement.

   B.   **Litigation Standstill**. Except to the extent expressly authorized in this Agreement, CIIPPs and their counsel shall cease all litigation activities against Mar-Jac in the Action, and Mar-Jac and its counsel shall cease all litigation activities against CIIPPs in the Action, provided, however, that both CIIPPs and Mar-Jac may seek appropriate discovery in the Action from other persons or entities.

   C.   **Performance By Settling Defendant and CIIPPs**

   1.   **Settlement Payment**. In exchange for the full consideration described in this Settlement Agreement, Mar-Jac shall pay the Settlement Amount in United States dollars, and in immediately available funds.  The Parties agree that the Settlement Amount is the only amount to be paid by Mar-Jac and shall be inclusive of the Settlement Class recovery amounts, any service awards to Plaintiffs for the work Plaintiffs performed on behalf of the Settlement Class ("Service Awards") as awarded by the Court, fees (including attorneys' fees and any other fees), and costs (including costs related to Class Notice and settlement administration).

   a.   The Settlement Amount shall be paid by Mar-Jac into the Escrow Account for the Settlement Fund established in Section II(E)(1) by wire transfer, pursuant to instructions from the Escrow Agent or Co-Lead Counsel, within thirty (30) calendar days of the Date of Preliminary Approval.

   b.   Each Class Member and each Releasing Party shall look solely to the Net Settlement Fund for full and complete settlement and satisfaction by Mar-Jac and the Released Parties, as provided herein, of all Released Claims and shall not be entitled to any other payment or relief from the Released Parties.

c.      Except as provided by order of the Court, no member of the Settlement Class shall have any interest in the Settlement Fund or any portion thereof. CIIPPs, members of the Settlement Class, and their counsel will be reimbursed solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and expenses, Service Awards, and the costs of notice of the Settlement Agreement to potential members of the Settlement Class. Mar-Jac and the other Released Parties shall not be liable for any costs, fees, or expenses of any of CIIPPs' and Co-Lead Counsel's attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund.

2.      **Compliance**. Settling Defendant asserts that its business practices do not constitute a *per se* or other violation of Section 1 of the Sherman Act with respect to the sale of Broilers. The parties agree that Settling Defendant will not, for a period of 24 months from the date of the entry of Final Judgment, engage in conduct that constitutes a *per se* violation of Section 1 of the Sherman Act with respect to the sale of Broilers.

3.      **Cooperation.**

a.      When reasonably requested by CIIPPs, Mar-Jac agrees to use reasonable efforts—whether by declarations, affidavits, or depositions as may be necessary for the Action—to authenticate and provide foundation for admissibility of documents and/or things produced in the Action when Mar-Jac can do so in good faith, where the facts indicate that the documents and/or things at issue are authentic and that such foundation is proper.

b.      To the extent that Mar-Jac (a) responds to written discovery, (b) makes Rule 34 document productions, or (c) provides other plaintiffs in the Action with formal document or information proffers in conjunction with a settlement with those plaintiffs, Mar-Jac will serve or otherwise provide CIIPPs a copy of such materials within 7 days of their production to any other plaintiff.

10

D.     **Release and Covenant Not to Sue**

1.     **Release**. Upon the occurrence of the Date of Final Approval, and in consideration of the terms set forth in this Agreement, the Releasing Parties shall be deemed to have, and by operation of law and of the Order and Final Judgment shall have, hereby fully, finally, and forever completely compromised, settled, released, acquitted, resolved, relinquished, waived, and discharged the Released Parties of all Released Claims.

2.     **Covenant Not to Sue**. The Releasing Parties covenant not to sue, directly or indirectly, or otherwise seek to establish liability against, the Released Parties for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of or related to the Released Claims, including, without limitation, seeking to recover damages or other relief relating to any of the Released Claims. This Paragraph shall not apply to any action to enforce this Settlement Agreement.

3.     **Full Release**. The Parties to this Agreement expressly agree and confirm that the Released Claims as set forth in Section I(B)(28) and the provisions of Section II(B) shall be interpreted as broadly as possible and to the fullest extent permitted by law and constitute a full and final release by the Releasing Parties of the Released Parties for the Released Claims.

4.     **Non-Disparagement**. The Parties agree they will not disparage one another or their respective claims or defenses, such as by making extrajudicial public statements that disparage either of the Parties or their conduct in connection with the Action, and instead will confine their public comments to essentially the following: "The parties have agreed to resolve this matter. Both sides believe they would have prevailed at trial. Mar-Jac denies the allegations in Plaintiffs' complaint, and further denies that it did anything wrong or illegal. The parties agreed to settle this case because of the extraordinary cost of litigation and the risk and uncertainty of

11

trial." For the avoidance of doubt, the Parties agree that statements made in court filings, arguments, hearings, and trial of this case are not subject to this provision.

      **5.**    **Waiver**. In addition to Section II(D)(3), the Releasing Parties shall be deemed to have, and by operation of the Order and Final Judgment shall have, with respect to the subject matter of the Released Claims, expressly waived and released the provisions, rights, and benefits of Section 1542 of the California Civil Code (providing, "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.") and Section 20-7-11 of the South Dakota Codified Laws (providing, "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.").

The Releasing Parties shall further be deemed to have, and by operation of the Order and Final Judgment shall have, expressly waived all similar provisions, statutes, regulations, rules, or principles of law or equity of any other state or applicable jurisdiction, or principle of common law. The Releasing Parties acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Released Claims, but that it is their intention to fully, finally, and forever release, acquit, relinquish and discharge the Released Parties of all Released Claims, and, upon the Date of Final Approval, shall be deemed to have, and by operation of the Order and Final Judgment, shall have, forever released, acquitted, relinquished, and discharged the Released

Parties of all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, without regard to the subsequent discovery or existence of any such additional or different facts. The Releasing Parties intend and, by operation of the Order and Final Judgment, shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this waiver and release is a part. The foregoing release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims is contractual, and not a mere recital.

6.      **Effect of this Settlement Agreement on Final Judgment as to Other Defendants**. CIIPPs have been provided with a copy of the Second Amended Judgment Sharing Agreement entered into by certain Defendants dated February 25, 2020 (hereinafter referred to as "Defendants' Agreement"). The defined terms in Defendants' Agreement shall have the same meaning when used in this Settlement Agreement. CIIPPs agree that notwithstanding anything to the contrary contained in this Settlement Agreement, CIIPPs shall reduce the dollar amount collectable from the parties to the Defendants' Agreement pursuant to any Final Judgment by a percentage equal to the Sharing Percentage of Mar-Jac, calculated pursuant to Section 4 and Exhibits A and B of Defendants' Agreement (as illustrated by the Appendix to Defendants' Agreement) as if Mar-Jac had not settled, had been found liable on the claim, and was a Sharing Party with respect to the Final Judgment. CIIPPs agree that this undertaking is also for the benefit of any Defendant that is a party to the Defendants' Agreement and that this undertaking may be enforced by any or all of such Defendants as third-party beneficiaries hereof. Any ambiguity in this Section or inconsistency between this Settlement Agreement and the Defendants' Agreement shall be resolved in favor of Defendants' Agreement, including, without limitation, Sections 6.D.1 and 6.D.2 thereof. CIIPPs further represent and warrant that they have not reached any agreement to provide any portion of the settlement proceeds provided hereunder to any person or entity that

13

is not explicitly identified as a releasor in this Settlement Agreement, except for proceeds received by CIIPPs' attorneys for payment of attorneys' fees. CIIPPs shall use their best efforts to ensure that the Settlement Agreement constitutes a Qualified Settlement under Defendants' Agreement and to effectuate the intent of the parties to the Defendants' Agreement to treat the Settlement Agreement as a Qualified Settlement, including (as may be necessary) to make any amendments to this Settlement Agreement to reflect the intent to treat the Settlement Agreement as a Qualified Settlement.

     **E.**     **Settlement Fund Administration**. The Settlement Fund shall be administered pursuant to the provisions of this Settlement Agreement and subject to the Court's continuing supervision and control, until the funds in the Settlement Fund are fully distributed, as follows:

     **1.**     The Settlement Fund shall be established within an Escrow Account and administered by an Escrow Agent designated by Co-Lead Counsel.

     **2.**     Except as provided herein, the Settlement Class, Co-Lead Counsel, Mar-Jac, and the Released Parties shall have no financial obligation or liability for any fees, costs, or expenses related to providing notice to the Settlement Class or obtaining approval of the settlement or administering the settlement. Such fees, costs, or expenses shall be paid solely from the Settlement Fund, subject to any necessary Court approval.

     **3.**     Co-Lead Counsel, after obtaining an order of Preliminary Approval, may withdraw from the Settlement Fund up to $500,000 to pay the costs for Class Notice and administration and for Preliminary Approval and Final Approval.

     **4.**     Co-Lead Counsel shall use best efforts to send out notice to the Settlement Class as soon as is reasonably practicable after Preliminary Approval. In the event that Court-ordered notice and administration costs exceed $500,000, Plaintiffs and Co-Lead Counsel may apply to the Court to pay such additional notice and administration costs from the Settlement Fund.

Up to $500,000 of the Class Notice and administration costs actually incurred pursuant to this Settlement Agreement shall be nonrefundable in the event that, for any reason, this Settlement Agreement is terminated or rescinded pursuant to Section II(G)(10).

5.    If there are other settlements at the time of, or within a reasonable amount of time after, the preliminary approval of this Settlement Agreement, Co-Lead Counsel shall endeavor to ensure that Class Notice and claims administration costs shall be paid from the settlement funds in this and such other settlement agreements proportionate to the amount of any such settlements, consistent with any such other settlement agreements and the approval of the Court.

6.    Under no circumstances will Mar-Jac or the Released Parties be required to pay more or less than the Settlement Amount pursuant to this Settlement Agreement. For purposes of clarification, the payment of any fee and expense award, the Class Notice and administrative costs (including payment of any applicable fees to Escrow Agent), any Service Awards to Plaintiffs, payments to Class Members and any other fees and costs associated with the implementation of this Settlement Agreement shall be exclusively paid from the Settlement Fund.

7.    No other funds shall be paid or disbursements made from the Settlement Fund without an order of the Court, and in the event of any such order of the Court authorizing payments or disbursements above $500,000, any such additional payments or disbursements shall be refunded to Mar-Jac in the event that the Settlement Agreement is terminated or rescinded pursuant to Section II(G)(10).

8.    The Escrow Agent shall, to the extent practicable, invest the funds deposited in the Settlement Fund in discrete and identifiable instruments backed by the full faith and credit of the United States Government, or fully insured by the United States Government or any agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments

at their then-current market rates. Any cash portion of the Settlement Fund not invested in instruments of the type described in the first sentence of this Section II(E)(8) shall be maintained by the Escrow Agent, and not commingled with any other funds or monies, in a federally insured bank account. Subsequent to payment into the Settlement Fund pursuant to Section II(C)(1), neither Mar-Jac, any other Released Party, nor Settling Defendant's Counsel shall bear any responsibility or risk related to the Settlement Fund or the Net Settlement Fund.

9.      The Parties agree that the Settlement Fund and the Net Settlement Fund are each intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1 and, to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. In addition, Co-Lead Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Section, including the relation-back election (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Interim Co-Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Funds being a "Qualified Settlement Fund" within the meaning of Treas. Reg. § 1.4688-1.

10.     The Escrow Agent, as administrator of the Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any Taxes, as defined below, owed with respect to the Escrow Account. Neither Mar-Jac, any other Released Party, nor the Settling Defendant's Counsel shall have any liability or responsibility of any sort for filing any tax returns or paying any Taxes or expenses with respect to the Qualified Settlement Fund.

11.     All: (i) taxes on the income of the Settlement Fund ("Taxes") and (ii) expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, reasonable expenses of tax attorneys and accountants) shall timely be paid by the Escrow Agent out of the Settlement Fund.  The Class Members shall be solely responsible for paying any and all federal, state, and local income taxes due on any distribution made to them pursuant to this Agreement.

12.     After the Date of Final Approval, the Net Settlement Fund shall be disbursed in accordance with a plan of distribution to be approved by the Court.  The Class Members shall look solely to the Net Settlement Fund for settlement and satisfaction of any and all Released Claims from Released Parties and shall not be entitled to any other payment or relief from the Released Parties.  The timing of a motion to approve a plan of distribution of the Net Settlement Fund created by this Settlement Agreement shall be in the discretion of Co-Lead Counsel, and may be combined with a plan to distribute proceeds from other settlements in this Action.

## F.     Reversion

Mar-Jac shall have no rights to reversion in the event that Class Members request exclusion or opt out of the Class, and any Opt-Out Claims shall have no effect on this Settlement Agreement.

## G.     Approval of Settlement Agreement and Dismissal of Released Claims

1.     **Cooperation**. Plaintiffs and Mar-Jac shall use their reasonable best efforts to effectuate this Settlement Agreement, including cooperating in seeking the Court's approval of the Settlement Agreement, the giving of appropriate Class Notice under Federal Rules of Civil Procedure 23(c) and (e) by Co-Lead  Counsel, and the complete and final dismissal with prejudice of the Action as to Mar-Jac only.

2.      **Settlement Class Certification**. As part of the motion for Preliminary Approval of this Settlement Agreement, Plaintiffs shall seek, and Mar-Jac shall not object to,[4] appointment of Plaintiffs' Co-Lead Counsel as Settlement Class Counsel for purposes of this Settlement Agreement, and certification in the Action of a Settlement Class for settlement purposes only, defined as follows:

> All entities that purchased Broilers indirectly from a Defendant or named co-conspirator in the United States for their own use in commercial food preparation from January 1, 2008, until July 31, 2019 (the "Class Period").

> Excluded from this Class are: Natural persons who purchased Broilers for their personal use and not for commercial food preparation (End-User Consumers); purchasers of Broilers directly from Defendants; purchasers of Broilers for resale in unaltered form; purchases of Broilers from an intermediary who has further processed the Broiler; the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant; any federal, state governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; any juror assigned to this action; and any co-conspirator identified in this action.

3.      **Motion for Preliminary Approval**. Plaintiffs shall submit to the District Court a motion, at such time deemed appropriate in the discretion of Co-Lead Counsel (but as soon as is reasonably practicable after the Execution Date), requesting entry of an order preliminarily approving this Settlement Agreement ("Preliminary Approval Order"). Mar-Jac shall not oppose and shall reasonably cooperate in such motion. A reasonable time before filing such motion, Co-Lead Counsel shall provide the Settling Defendant's Counsel with a draft of such motion for review. To the extent that Mar-Jac objects to any aspect of the motion, it shall communicate such

---

[4]      By agreeing not to object to the proposed Settlement Class and appointment of Co-Lead Counsel as Settlement Class Counsel, Mar-Jac is not waiving any rights, arguments or defenses and Mar-Jac expressly preserves all such rights, arguments and defenses including with respect to any situation where the Settlement Agreement is not approved in all material respects by the Court.

objection to Co-Lead Counsel and the Parties shall meet and confer to resolve any such objection. The proposed Preliminary Approval Order shall provide that, *inter alia*:

        **a.**      the settlement proposed in the Settlement Agreement has been negotiated at arm's-length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Settlement Class;

        **b.**      after Class Notice has been carried out, a hearing on the settlement proposed in this Settlement Agreement shall be held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court (the "Fairness Hearing");

        **c.**      Class Members who wish to exclude themselves must submit an appropriate and timely request for exclusion;

        **d.**      Class Members who wish to object to this Agreement must submit an appropriate and timely written statement of the grounds for objection;

        **e.**      Class Members who wish to appear in person to object to this Agreement may do so at the Fairness Hearing pursuant to directions by the Court; and

        **f.**      All proceedings in the above-captioned action with respect to Mar-Jac and Plaintiffs are stayed until further order of the Court, except as may be necessary to implement the settlement or comply with the terms thereof.

        **4.**    **Class Notice**. Class Notice shall provide for a right of exclusion, as set forth in Sections II(G)(3). The Class Notice shall also provide for a right to object to the proposed settlement. The timing of a motion to direct or approve Class Notice of this Settlement Agreement shall be in the discretion of Co-Lead Counsel, and may be combined with class notice of other settlements in this Action. A reasonable time before filing such motion, Co-Lead Counsel shall provide the Settling Defendant's Counsel with a draft of such motion for review. To the extent

that Mar-Jac objects to any aspect of the motion, it shall communicate such objection to Co-Lead Counsel and the Parties shall meet and confer to resolve any such objection.

      **5.**      **Cost of Class Notice**. The costs of providing Class Notice to Settlement Class Members shall be paid by the Escrow Agent from the Settlement Fund pursuant to Section II(E)(2) and (3).

      **6.**      **CAFA Notice**. Within ten (10) days of the filing of this Settlement Agreement in court in connection with the above-mentioned motion for Preliminary Approval, Mar-Jac will provide to the appropriate state officials and the appropriate federal official the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA").

      **7.**      **Final Judgment**. If this Settlement Agreement is preliminarily approved by the Court, the Settlement Class, through Co-Lead Counsel and in accordance with any schedule set forth in the Court's Preliminary Approval, shall seek entry of an Order and Final Judgment. A reasonable time before filing such motion, Co-Lead Counsel shall provide the Settling Defendant's Counsel with a draft of such motion for review. To the extent that Mar-Jac objects to any aspect of the motion, it shall communicate such objection to Co-Lead Counsel and the Parties shall meet and confer to resolve any such objection. The motion for Final Approval shall seek an entry of an Order and Final Judgment that, *inter alia:*

      **a.**      certifies the Settlement Class described in Section II(G)(2), pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as a Settlement Class for the Action;

      **b.**      finally approves this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions, without material modification of those terms and conditions;

           **c.**    determines that the Class Notice constituted, under the circumstances, the most effective and practicable notice of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all persons or entities entitled to receive notice;

           **d.**    orders that all Claims made by CIIPPs against Mar-Jac in the Action, be dismissed with prejudice and, except as expressly provided for in this Settlement Agreement, without further costs or fees;

           **e.**    incorporates the Releases set forth in Section II(B) of this Agreement and makes the Releases effective as of the date of the Final Order and Final Judgment;

           **f.**    enjoins members of the Settlement Class from suing, directly or indirectly, any of the Released Parties for any of the Released Claims;

           **g.**    confirms that Mar-Jac has provided the appropriate notice pursuant to CAFA;

           **h.**    reserves to the Court continuing and exclusive jurisdiction over the settlement and this Settlement Agreement, including the administration and consummation of this Agreement;

           **i.**    determines under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directs that the judgment of dismissal as to the Released Parties shall be final and entered forthwith; and

           **j.**    orders that the Net Settlement Fund may be disbursed as provided in the Final Approval Order or other order of the Court. The Parties shall use all reasonable best efforts to obtain Final Approval of the Settlement Agreement without modification to any of its material terms and conditions.

8. **Class Counsel Fees and Expenses; No Other Costs.**

a. Except as otherwise provided in Section II(C)(1) of this Settlement Agreement, the Released Parties shall have no responsibility for any other payments, fees or costs, including Co-Lead Counsel's attorneys' fees, costs, and expenses, Service Awards, or the fees, costs, and expenses of any Plaintiff's or Settlement Class Member's respective attorneys, experts, advisors, or representatives; provided, however, that with respect to the Action, including this Settlement Agreement, Mar-Jac shall bear its own costs and attorneys' fees.

b. At their discretion and after Final Approval and proper notice to Class Members and opportunity to object, Class Counsel may seek from the Settlement Fund, separately or in conjunction with other settlements, a court order granting attorneys' fees, reimbursement of costs and expenses, and Service Awards for the class representatives (to compensate for the time and expense they have incurred in bringing this Action). Any such attorneys' fees, reimbursement of costs and expenses, and Service Awards will be paid out of the Settlement Fund, and Mar-Jac shall have no obligation to pay any fees or expenses of Co-Lead Counsel.

c. The procedure for and the allowance or disallowance by the Court of any applications by Co-Lead Counsel for attorneys' fees and expenses or the expenses of or Service Awards to Plaintiffs to be paid out of the Settlement Fund are not part of or a condition to the settlement set forth herein, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement and the Settlement Agreement, and any order or proceeding relating to any application for attorneys' fees or expenses or Service Awards shall not operate to terminate or cancel this Settlement Agreement or the releases set forth herein, or affect or delay the Final Approval of this settlement and Settlement Agreement.

       **d.**      Within 15 calendar days after any order by the Court awarding attorneys' fees, expenses, or Service Awards, the Escrow Agent shall pay the approved attorneys' fees, costs, and service award via wire transfer from the Settlement Fund as directed by Co-Lead Counsel. In the event the amount of attorneys' fees, costs, or service award is reduced on appeal, Co-Lead Counsel shall, within 30 days of such appellate order, cause the difference in the amount paid and the amount awarded on appeal to be returned to the Settlement Fund.

       **9.**      **When Settlement Becomes Final**. The settlement contemplated by this Settlement Agreement shall become final on the date that: (a) the Court has entered the Order and Final Judgment approving this Settlement Agreement, and all of its material terms and conditions, in accordance with Section II(G)(7) above, under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Action as against Mar-Jac with prejudice as to all Settlement Class Members and without costs; and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Settlement Agreement and entry of the Order and Final Judgment, as described in Section II(G)(7) above, has expired with no appeal having been filed or, if appealed, approval of this Settlement Agreement and the Order and Final Judgment has been affirmed in all material respects by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review. "Final Approval" shall mean the satisfaction of all the conditions set forth in this Section II(G)(9). The Parties agree that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure, nor the All Writs Act, 28 U.S.C. § 1651, nor any extensions of time in petitioning for a writ of certiorari under Rule 13 of the Rules of the Supreme Court of the United States, shall be taken into account in determining the above-stated times.

10.     **Termination and Rescission.**

a.      **Rejection or Alteration of Settlement Terms**. If the Court declines to grant a Preliminary Approval Order or Order and Final Judgment (as set forth in Sections II(G)(3) or (G)(7) above, respectively); or if the Court approves this Settlement Agreement in a materially modified form; or if after the Court's approval, such approval is materially modified or set aside on appeal; or Final Approval is not obtained; or if the Court enters the Final Order and Judgment and appellate review is sought and on such review such Final Order and Judgment is not affirmed (collectively "Triggering Events"), then Mar-Jac and Plaintiffs shall each, in their respective sole and absolute discretion, have the option to rescind, cancel, or terminate this Settlement Agreement in its entirety by providing written Notice of their election to do so ("Termination Notice") to the other Party within fifteen (15) calendar days of any of the Triggering Events.  For purposes of Section II(G)7(b) and this Section II(G)(10)(a), a material modification includes, but is not limited to, any modification to the Settlement Amount or a material change to the scope of the Released Claims.  In no way shall CIIPPs have the right to rescind, cancel or terminate this Settlement Agreement if the Court fails or refuses to grant any requested attorneys' fees, any costs, or any Service Awards to Class Representatives.

b.      **Effect of Termination or Rescission of Settlement**. In the event this Settlement Agreement is rescinded or terminated by a Termination Notice, then: (i) within fifteen (15) calendar days thereafter, the Settlement Fund, including accrued interest, less taxes and tax expenses that have been paid or that have accrued and will be payable at some later date, and less expenses and costs that have been disbursed pursuant to Sections II(E)(3-4), shall be refunded by the Escrow Agent to Mar-Jac pursuant to written instructions from Mar-Jac's Counsel to Co-Lead Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of the day before the Execution Date, and without waiver of any positions asserted

in the Action as of the day before the Execution Date, shall then resume proceedings in the Court, the Court having retained jurisdiction over the settlement and related matters and, except as otherwise expressly provided in this Settlement Agreement, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

11. **No Admission**.

a. Mar-Jac denies all allegations of wrongdoing in the Action. Nothing in this Settlement Agreement or its contents, nor any statements, negotiations, documents, or discussions associated with it, constitutes an admission by Mar-Jac or any other Released Party as to the merits of the allegations that have been, could have been, or could be made in the Action, or an admission by Plaintiffs or the Settlement Class of the validity of any defenses that have been, could have been, or could be asserted by Mar-Jac or any other Released Party.

b. This Settlement Agreement, its terms, and any agreement or order relating thereto, shall not be deemed to be, and shall not be offered by any of the Parties to be, received in any civil, criminal, administrative, or other proceeding, or utilized in any manner whatsoever as a presumption, a concession, or an admission of any fault, wrongdoing, or liability whatsoever on the part of Mar-Jac or any other Released Party; provided, however, that nothing contained in this Section II(G)(11) shall prevent this Settlement Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Settlement Agreement (or any agreement or order relating thereto) or the Order and Final Judgment, or in which the reasonableness, fairness, or good faith of any Party participating in the settlement (or any agreement or order relating thereto) is in issue. This Settlement Agreement may, however, be filed and used in other proceedings, where relevant, to demonstrate the fact of its existence and of this settlement, including, but not limited to, the filing of the Settlement Agreement and/or the Order and Final Judgment in any other action

that may be brought against any Released Party in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, waiver, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## III.      MISCELLANEOUS

**A.      Entire Agreement**. This Settlement Agreement constitutes the entire, complete and integrated agreement between the Parties pertaining to the settlement of the Action as to Mar-Jac, and the release of the Released Parties, and supersedes any and all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions (either oral or written) of the Parties in connection therewith.   All terms of the Settlement Agreement are contractual and not mere recitals.  The Parties agree that this Settlement Agreement may be modified only by a written instrument signed by the Parties and that no party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

**B.      Inurement**. This Settlement Agreement constitutes a binding and enforceable agreement as to the terms contained herein.  The terms of this Settlement Agreement are and shall be binding upon and, to the fullest extent possible, insure to the benefit of the successors, assigns, and heirs of each of the Releasing Parties and the Released Parties, and upon all other persons or entities claiming any interest in the subject matter hereto through any of the Settling Parties, Releasing Parties, or Released Parties, including any Class Members.   Without limiting the generality of the foregoing, upon certification of the Settlement Class and Final Approval, each and every covenant and agreement herein by the CIIPPs shall be binding upon all members and potential members of the Settlement Class and Releasing Parties who have not validly excluded themselves from the Settlement Class.

**C.** **Modification**. This Settlement Agreement may be modified or amended only by a writing executed by Co-Lead Counsel and Mar-Jac or Settling Defendant's Counsel, subject (if after the Date of Preliminary Approval) to approval by the Court. Amendments and modifications may be made without notice to the Settlement Class unless notice is required by law or by the Court. The waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party. The waiver by any Party of any particular breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement. This Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Agreement. Any breach of this Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

**D.** **Drafted Mutually**. For the purpose of construing or interpreting this Settlement Agreement or any provision hereof, Plaintiffs, the Settlement Class and Mar-Jac shall be deemed to have drafted it equally, and it shall not be construed strictly for or against any party.

**E.** **Governing Law**. All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of Illinois without regard to its choice-of-law or conflict-of-law principles, and any and all disputes regarding this Settlement Agreement or the Supplemental Agreement will be mediated in good faith with Judge Daniel Weinstein (ret.) before any suit, action, proceeding or dispute may be filed in the Court.

**F.** **Voluntary Settlement**. The Parties agree that this Settlement Agreement was negotiated in good faith by the Parties, and reflects a settlement and compromise that was reached

voluntarily after consultation with competent counsel, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

G. **Confidentiality**. The Parties agree to continue to maintain the confidentiality of all settlement discussions and materials exchanged during the settlement negotiation. However, Mar-Jac and CIIPPs can inform other parties to this Action that they have reached a settlement agreement and disclose both the Settlement Amount and the cooperation obligations contained in this Settlement Agreement. Additionally, consistent with its obligations under the Defendants' Agreement, Mar-Jac may share copies of this Settlement Agreement with parties to the Defendants' Agreement.

H. **Jurisdiction**. This Settlement Agreement is subject to the continuing and exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein. If for any reason this Settlement Agreement is rescinded, terminated, fails to obtain Final Approval or otherwise fails to become effective, then, in such event, neither this Settlement Agreement nor any conduct required by it shall constitute or be construed as any agreement to personal jurisdiction (general or specific) or subject matter jurisdiction so as to confer the jurisdiction of the District Court over the Released Parties, nor shall it constitute any waiver of any defenses based on personal or subject matter jurisdiction.

I. **Counterparts**. This Settlement Agreement may be executed in counterparts by Co-Lead Counsel and Settling Defendant's Counsel, each of which shall be deemed an original and all of which taken together shall constitute the same Settlement Agreement. A facsimile, electronic or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

**J.      Represented by Counsel**. Plaintiffs, the Settlement Class, and Mar-Jac each acknowledge that they have been represented by counsel, and have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so and are not relying on any representation or warranty by the other party other than as set forth herein.  The Settling Parties and their respective counsel agree that they will not seek to set aside any part of the Settlement Agreement on the grounds of mistake.

**K.      Authorization**. Each of the undersigned attorneys represents that he or she is fully authorized to enter into and execute this Settlement Agreement, subject to Court approval; the undersigned Co-Lead Counsel represent that they are authorized to execute this Settlement Agreement on behalf of Plaintiffs and the Settlement Class; and the undersigned Settling Defendant's Counsel represent that they are authorized to execute the Settlement Agreement on behalf of Mar-Jac.

**L.      Privilege**. Nothing in this Settlement Agreement or the negotiations or proceedings relating to it are intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the accountants' privilege, the attorney-client privilege, the joint defense privilege, the common interest privilege, and the attorney work product immunity.

**M.      Notice**. Any notice, other than Class Notice, required pursuant to or in connection with this Settlement Agreement ("Notice") shall be in writing and shall be given by: (1) hand delivery; (2) registered or certified mail, return receipt requested, postage prepaid; or (3)  UPS or similar overnight courier, with a courtesy copy by electronic mail, addressed, in the case of notice to any Plaintiff or Class Member, to Co-Lead Counsel at their addresses set forth below, and, in the case of notice to Mar-Jac, to the Settling Defendants' Counsel at the addresses set forth below, or such other addresses as Co-Lead Counsel or Settling Defendants' Counsel may designate, from time to time, by giving notice to all Parties in the manner described in this Section III(M).

For Commercial and Institutional Indirect Purchaser Plaintiffs:

        Daniel C. Hedlund
        GUSTAFSON GLUEK PLLC
        120 South 6th Street, Suite 2600
        Minneapolis, MN 55402
        T: (612) 333-8844 / F: (612) 339-6622
        dhedlund@gustafsongluek.com

        Adam J. Zapala
        COTCHETT, PITRE & McCARTHY LLP
        840 Malcolm Road, Suite 200
        Burlingame, CA 94010
        T: (650) 697-6000 / F: (650) 697-0577
        azapala@cpmlegal.com

For Settling Defendants Mar-Jac:

        Edward C. Konieczny
        EDWARD C. KONIECZNY LLC
        1201 Peachtree Street, NE
        Atlanta, GA 30361
        ed@koniecznylaw.com

        David C. Newman
        SMITH, GAMBRELL & RUSSELL, LLP
        Promenade, Suite 3100
        1230 Peachtree Street, NE
        Atlanta, GA 30309
        dnewman@sgrlaw.com

    **N.**    **Headings**. All headings contained in this Settlement Agreement are for reference purposes only and are not intended to affect in any way the meaning or interpretation of this Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized

representatives, have agreed to this Settlement Agreement as of the Execution Date.

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua J. Rissman
Brittany N. Resch
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
T: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsongluek.com

Dated: 8/19/2021

Adam J. Zapala
Tamarah Prevost
James G. Dallal
COTCHETT, PITRE & MCCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
T: (650) 697-6000
azapala@cpmlegal.com
tprevost@cpmlegal.com
jdallal@cpmlegal.com

Dated: 8/19/21

**Counsel for Commercial and Institutional Indirect Purchaser Plaintiffs**

31

Dated: _8/19/2021_

_____
Edward C. Konieczny
EDWARD C. KONIECZNY LLC
1201 Peachtree Street, NE
Atlanta, GA  30361
T: (404) 380-1430
ed@koniecznylaw.com

David C. Newman
SMITH, GAMBRELL & RUSSELL, LLP
Promenade, Suite 3100
1230 Peachtree Street, NE
Atlanta, GA 30309
T: (404) 815-3516
dnewman@sgrlaw.com

***Counsel for Mar-Jac Poultry, Inc., Mar-Jac
Poultry MS, LLC, Mar-Jac Poultry AL, LLC,
Mar-Jac AL/MS, Inc., Mar-Jac Poultry, LLC
and Mar-Jac Holdings, Inc.***