**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

IN RE BROILER CHICKEN ANTITRUST
LITIGATION

No. 16 C 8637

Judge Thomas M. Durkin

## ORDER

Plaintiff Chick-fil-A (joined by other plaintiffs) has filed a motion to reconsider the Court's bifurcation of the supply reduction and Georgia Dock claims from the bid-rigging claims. *See* R. 4651; *see also* R. 4656; R. 4660; R. 4756; R. 4760; R. 4761; R. 4772; R. 4975; R. 4980; R. 4995; R. 5024; R. 5080. Before Defendants responded to the motion, the Court ordered Chick-fil-A to supplement its brief addressing certain issues the Court identified. R. 4722. The Court (by order of Magistrate Judge Gilbert) also ordered briefs regarding the form of a potential trial in this case, *see* R. 4616, and the Court has considered those briefs in deciding this motion. Chick-fil-A's motion is granted and the bifurcation order is vacated.

## Analysis

"Bifurcation is a common procedural device, and . . . district judges have express authority [pursuant to Federal Rule of Civil Procedure 42(b)] to employ it in appropriate cases, and a decision to do so is reviewed deferentially." *Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 890 (7th Cir. 1995). But whether and when in the course of a case to bifurcate claims is highly dependent on the

particular claims. As the Seventh Circuit has put it, the judge "must carve at the joint." *Id.* at 891.

Conspiracy claims do not always have obvious joints because, by their nature, they are intended to connect distinct activity by various defendants. Discovery is often necessary to reveal the "joints" in such claims, if there are any to be found. *See In re Vitamins Antitrust Litig.*, 2000 WL 1475705, at *18 (D.D.C. May 9, 2000) (finding motion to sever to be "premature [because] [n]o depositions have been taken and document discovery is still in an early stage"). And if the "joints" are apparent from the complaint, the remedy is usually dismissal or severance of part of the conspiracy, not bifurcation. Nevertheless, even in cases involving conspiracy claims, the pleadings sometimes clearly show that a part of the conspiracy can be severed or dismissed. *See Precision Assocs., Inc. v. Panalpina World Transp., (Holding) Ltd.*, 2013 WL 6481195, at *40 (E.D.N.Y. Sept. 20, 2013), *report and recommendation adopted*, 2014 WL 298594 (E.D.N.Y. Jan. 28, 2014) (severing an alleged "overarching conspiracy" into two cases because plaintiffs did not plead "any coordinated or concert of action between" the two underlying conspiracies); *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 369 (S.D.N.Y. 2016) (dismissing a claim for an overarching "web" conspiracy because the alleged underlying conspiracies were "too different from the type of coordination" alleged to have occurred in the overarching conspiracy). Bifurcation can be the remedy if the facts show that certain parts of the conspiracy are sufficiently different such that trying them together would be prejudicial to the defendants, confusing to the jury, or an

inefficient way to reach a judgment. *Cf. Advanced Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*, 2009 WL 2136916, at *3 and n.6 (N.D. Cal. July 16, 2009) (vacating bifurcation and ordering a single trial of "multiple conspiracies" for evidentiary reasons, but affirming rejection of the claim that the multiple conspiracies combined to establish a "global conspiracy").

Chick-fil-A makes three primary arguments that the Court's bifurcation order prejudices its claims or is at least premature: (1) it operates as a de facto dismissal of Chick-fil-A's Count One for an "overarching conspiracy"; (2) it prevents Chick-fil-A from using evidence of bid rigging to prove the supply reduction and Georgia Dock claims; and (3) it could lead to inconsistent jury verdicts. These arguments call for the Court to make findings that are normally, and more properly, made on motions pursuant to Rules 12 and 56 and motions in limine.

As to the first argument, a de facto dismissal of the overarching conspiracy claim is significant only if Plaintiffs have stated a plausible claim for an overarching conspiracy. Due to the bifurcation order, the Court has not yet had the opportunity to subject the overarching conspiracy claim to a Rule 12 analysis.

Next, whether evidence of bid rigging is relevant to the supply reduction and Georgia Dock claims depends on what that evidence is. It is difficult to address this issue in the abstract. Due to the bifurcation order, no discovery has been taken on the bid rigging claims. Indeed, the Court has not yet had the opportunity to analyze *any* evidence in this case because the case hasn't reached the summary judgment stage.

Without a complete evidentiary record and a summary judgment decision, it is also most likely too early to predict what questions a jury will be required to answer. The Court should know the evidence and claims to be tried before making any decision about potential inconsistent jury verdicts.[1]

Accordingly, given that Chick-fil-A's claim for an overarching conspiracy and claim for a bid rigging conspiracy have yet to be tested under Rule 12, and the Court has not yet been presented with a developed evidentiary record as would be the case in the context of a summary judgment motion, the Court cannot make the findings it would need to make to evaluate fully whether its bifurcation decision, which flowed primarily from discretionary case management considerations, should stand. Therefore, the Court finds that its decision to bifurcate this case was premature and must be vacated.

Nevertheless, the Court is willing to accommodate any plaintiff that would like to continue to trial on the supply reduction and Georgia Dock conspiracies without discovery into bid rigging claims (i.e., the "first track").[2] The supply reduction and Georgia Dock claims have taken priority in this case for five years, and for that reason the Court finds it appropriate to continue to give priority to those claims to the extent any plaintiff wants it.

---

[1] For similar reasons, the Court needs more information before it can decide how this case will be tried.

[2] The Court's prohibition on *discovery* into bid rigging during the first track should not be construed as a ruling on whether Plaintiffs may use evidence of bid rigging they already possess or that is publicly available in a trial on the supply reduction and Georgia Dock conspiracies.

The Classes have stated that they are "willing and ready to proceed" on the first track. But the Classes qualify this willingness by stating that it is a product of the Court's bifurcation order and that they "*do not agree* that their conspiracy claims can rightly be bifurcated into 'bid-rigging claims' and 'market manipulation claims.'" *See* R. 4832 at 2 n.2 (emphasis added). Because the Court is vacating its bifurcation order, any plaintiff that would like to proceed to trial on the supply reduction and Georgia Dock conspiracies without discovery into bid rigging claims must so stipulate and concede any appellate issue on trying these claims without bid rigging discovery.

If any plaintiff desires to proceed to trial on the supply reduction and Georgia Dock conspiracies without discovery into bid rigging, that track will be given priority over plaintiffs who insist on taking bid rigging discovery before any trial. It may be that it is possible to manage both tracks simultaneously. But to the extent there is conflict, scheduling the first track will take precedence.

In addition to this order of priority, the second track faces at least two hurdles before fulling commencing bid rigging discovery. First, there may be potential delays due to the ongoing criminal case. *See* R. 3520 (order granting government's protective order). Second, Defendants will almost certainly file significant motions to dismiss the bid rigging claims and the claim for an overarching conspiracy. The Court decided to vacate the bifurcation order, in part, because it believes these motions could have a significant impact on those claims

going forward. For that reason, the Court will consider staying discovery in the second track while those motions are pending.

## Conclusion

Therefore, the Court grants the motions to reconsider [4651] [4656] [4660] [4756] [4760] [4761] [4772] [4975] [4980] [4995] [5024] [5080] and vacates its bifurcation order of September 22, 2020 [3835].[3] Any party that wishes to proceed to trial on the supply reduction and Georgia Dock conspiracies without discovery into bid rigging claims should file a stipulation to that effect by November 12, 2021. A new scheduling order will be developed based on whether any plaintiff files such a stipulation.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: October 15, 2021

---

[3] This order grants these motions only to the extent that the bifurcation order is vacated. Any party that sought additional relief in their motion will need to make a new motion if they continue to seek such additional relief.