# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | |

## DECLARATION OF SHANA SCARLETT IN SUPPORT OF MEMORANDUM IN SUPPORT OF END-USER CONSUMER PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, EXPENSES, AND CLASS REPRESENTATIVE AWARDS

I, Shana E. Scarlett, state under oath, as follows:

1. I am a partner at Hagens Berman Sobol Shapiro LLP (Hagens Berman). I am admitted to this Court *pro hac vice* and am one of the Interim Lead Counsel appointed by the Court for the End-User Consumer Purchaser Plaintiffs (EUCPs). I submit this declaration in support of the EUCPs' Plaintiffs' Motion for an Award of Attorney's Fees, Expenses and Class Representative Awards. I have full knowledge of the matters stated herein and would testify to these facts if called upon.

2. From the outset of this case, Hagens Berman and Cohen Milstein Sellers & Toll PLLC (Cohen Milstein) have worked together to ensure that the EUCPs' interests are vigorously represented. Hagens Berman and Cohen Milstein were the first to raise the issue that having the commercial indirect class also represent consumers' interests would lead to a conflict of interest. In raising this issue, Hagens Berman and Cohen Milstein conducted an independent investigation

into the consumer channel, retained expert economists to evaluate and explain the different channels, and provided the Court with a legal ethicist's expert opinion – even though there was no certainty they would be appointed as lead counsel.

3. Hagens Berman and Cohen Milstein have taken this case on contingency, meaning that they have not yet been paid. They have also split the significant out-of-pocket expenses associated with retaining experts and hosting defendants' documents.

4. Like many antitrust cases, this case has been lengthy, complex, and – at times – hotly contested. But even when compared to other antitrust cases, this case in particular has been especially challenging. For one thing, there are many defendants in this case. Each of them has hired well-known and well-respected antitrust counsel. Conducting discovery and negotiating with counsel from many different firms multiplies the challenge and risk of litigating.

5. For example, at the beginning of this case, EUCPs overcame multiple joint and individual motions to dismiss and one motion to reconsider the Court's order denying the motions to dismiss. The first round of motions to dismiss occurred in 2017. The second round occurred in 2018, once EUCPs had developed enough evidence to add Agri Stats as a defendant. EUCPs were the only class at the time to add Agri Stats as a defendant, and to add a rule of reason claim for defendants' information exchange of sensitive business information.

6. Despite this case's complexity, EUCPs have sought to avoid duplication by coordinating discovery assignments with the other classes. For example, the classes jointly negotiated the discovery protocols for this case and conducted a coordinated, joint review of the millions of documents that were produced in the litigation. Where possible, classes have also split costs jointly, such as splitting the cost of hosting Defendants' voluminous document productions. The classes' joint review team sifted through more than 13 million documents while

building this case from the ground up. For an extended period of time, experienced staff attorneys and one non-attorney reviewer worked full-time on behalf of EUCPs participated in the joint document review, identifying critical documents and helping to prepare for depositions. Counsel also worked together to negotiate search terms, ensure the completeness of discovery, and to schedule more than 180 depositions.

7. Defendants have also vigorously litigated this case. Defendants have noticed over 230 depositions of class plaintiffs, opt-out plaintiffs, and third parties. In short, more than 400 depositions have occurred in this case to date. There have been many weeks where three or more depositions have occurred on the same day and back to back each week.

8. Even with this incredible workload, EUCPs have worked to keep their team of lawyers lean and efficient – for example, EUCPs attended the opt-out depositions that were in the EUCP distribution channel, rather than attending every deposition. This allowed EUCPs to efficiently pursue testimony from channel participants confirming their economic measurements of overcharges. Because of the intense deposition schedule, some attorneys have worked full-time on this case while forgoing other opportunities. Many of these opt-out depositions were attended via video or telephone to reduce the travel expenses for the class and the time expended by attorneys. Due to time differences and the volume of depositions, EUCPs attorneys often began their day at 6:00 A.M. by appearing at deposition, and then worked into the late afternoon or evening preparing for the next day's deposition. Many of these depositions occurred during the height of the pandemic.

9. EUCPs have also taken lead on some portions of the classes' pursuit in this case. EUCPs took lead on every Agri Stats deposition in this case, and took lead at depositions questioning employees of Pilgrim's, Perdue, and Tyson. In total, EUCPs' core team of six

attorneys led questioning at approximately 40 depositions of defendant-employees. EUCPs also took lead on questioning some third parties, such as USDA witnesses. Preparing for these depositions takes significant time and effort. To help the classes prepare for these difficult depositions, experienced staff attorneys in the antitrust groups of Hagens Berman and Cohen Milstein devoted their full time to identifying and selecting documents used at depositions from amongst the 13 million documents produced by the Defendants.

10. EUCPs also worked with the other classes to conduct significant written discovery, including serving document requests, interrogatories, and requests for admission. In addition, EUCPs individually served and negotiated subpoenas on dozens of third parties in the distribution chain to seek documents and structured data that would be used to show to pass-through. At times, this document discovery was highly contentious, with multiple parties filing protective orders. These motions required additional time for meet-and-confers, briefing, and hearing preparation. EUCPs have taken lead on drafting some of the responses to these motions.

11. For example, when Agri Stats sought a protective order to limit its document production to a two-year period, EUCPs (as the only class who had named Agri Stats as a defendant), opposed. Magistrate Judge Gilbert adopted EUCP's reasoning and denied the request for the protective order. As a result, Agri Stats produced a full set of documents and all three classes used these Agri Stats documents in support of their motions for class certification.

12. This case was also challenging because of the class plaintiffs developed the evidence on their own, without the benefit of the prior Department of Justice investigation. When the Department of Justice intervened in this case and sought a stay, the civil plaintiffs had already spent over two years litigating their claims. They had negotiated and received significant document productions from Defendants and deposed more than 80 defendant witnesses. The

proposed stay increased the risk to EUCPs because it halted all discovery into Defendants' misconduct, while leaving Defendants open to continue discovery on third parties and plaintiffs, including deposing named plaintiffs. EUCPs were the only class to oppose the stay – resulting, in part, in the Court entering a much narrower stay than originally requested.

13. As part of its investigation, the government subpoenaed the class plaintiffs and requested Defendants' document productions. Now that there are criminal charges, the government is using documents negotiated by class counsel in its criminal trial.

14. To prove that the overcharge caused by Defendants' misconduct passed through to the consumer class, Class Counsel negotiated discovery with dozens of distributors and grocery stores. As a result of these subpoenas, Class Counsel received troves of data reflecting actual purchases and sales through the distribution chain, which Plaintiffs' experts were able to use to prove systemic, class-wide pass through of the overcharge. In addition, Class Counsel has participated in more than 100 depositions of opt-out distributors and retailers, using these defendant-noticed depositions as an opportunity to solidify the pass-through evidence for the consumer class.

15. Plaintiffs worked closely with their experts to develop this case. In support of Plaintiffs' motion for class certification, Plaintiffs' experts submitted five reports – totaling over 200 pages. Defendants had an opportunity to depose each of Plaintiffs' experts after they submitted these reports, and EUCPs defended these depositions. Plaintiffs' experts also submitted reply reports addressing the errors with the criticisms launched by Defendants' economic expert. Defendants responded by noticing a second deposition of Dr. Sunding, which EUCPs again defended. In addition to these reports, Plaintiffs have also served Defendants with

their experts' merits reports, totaling 329 pages, in accordance with the Court's Scheduling Order.

16. The named plaintiffs have also expended significant time and effort to bring this case. In response to Defendants' interrogatories and requests for production, some class representatives' personal email accounts were searched. Defendants used these documents to ask questions tangentially related to the claims, including questions on what cooked food products a class representative bought at his church's fundraiser. Class representatives sat through more 97 hours of depositions, which lasted an average of four hours – with some going up to seven hours. All of these depositions were attended by multiple defense counsel, and at some depositions, named partners – some of whom have more than 30 years of litigation experience – led the questioning. The named plaintiffs previously submitted declarations in support of the settlement that summarize the time they spent on this case.

17. Through June 2021, counsel for EUCPs has invested more than 67,522 hours litigating this case. The firms who have conducted work on behalf of EUCPs have each submitted a declaration attesting to their time and expenses. The vast majority of the time has been expended by a core team of lawyers at Hagens Berman and Cohen Milstein. Less than 1% of hours have been billed by outside firms. Most of the work performed by outside counsel has involved communicating with the class representatives. The following table compares the time expended by Hagens Berman, Cohen Millstein, and other firms representing the EUCP class:

| Hours Expended on Behalf of the Class | | |
|---|---:|---:|
| **Firm** | **Hours Expended** | **Lodestar** |
| Hagens Berman | 43,505.9 | $18,958,660 |
| Cohen Millstein | 23,250.9 | $13,354,794 |
| All Other Firms | 765.4 | $540,348 |
| **TOTAL** | **67,522.2** | **$32,853,802** |

18. Despite the size and complexity of this case, Class Counsel has worked hard to keep the team relatively small. This staffing strategy means that fewer attorneys spent a larger proportion of their time litigating this case. As a result, they have deeper institutional knowledge of the facts, law and theory, produce better work product and litigate more efficiently. Our small team knows the case well and understands the complexity and nuances of the litigation.

19. The total number of hours reasonably expended on this litigation by my firm, Hagens Berman, from inception through June 30, 2021 is 43,505.90. The total lodestar for my firm at current rates is $18,958,660. Expense items are billed separately and are not duplicated in my firm's lodestar. A detailed breakdown of the hours expended by each employee at my firm and their hourly rate is attached hereto as **Exhibit A.**

20. The time records submitted to Hagens Berman by Cohen Milstein, Shindler, Anderson, Goplerud & Weese, P.C., the Saunders Law Firm, Wolf Haldenstein Adler Freeman & Herz, LLP, and Burns Charest, LLP demonstrate that counsel for the EUCPs have worked for nearly five years and years and devoted 67,522.2 hours to this litigation (through June 30, 2021). Applying the rates customarily charged by those attorneys and legal professionals to the hours expended yields a lodestar of $32,853,802 (through June 30, 2021).

21. The following table provides an aggregated summary of the lodestar for EUCPs through June 30, 2021:

| Lodestar of Proposed Co-Lead Counsel | | | |
|---|---|---|---|
| Category of Timekeeper | Total Hours | Mean Hourly Rate | Lodestar |
| Partner | 13,640.70 | $777 | $10,610,774 |
| Of Counsel | 1274.5 | $638 | $813,458 |
| Investigator | 105.2 | $525 | $55,230 |
| Associate | 8,749.00 | $523 | $4,577,458 |
| Discovery Counsel | 5,941.00 | $523 | $3,108,650.00 |
| Contract Attorney | 2,629.60 | $405 | $1,065,349 |
| Staff Attorney | 25,021.50 | $385 | $9,650,784 |
| Paralegal | 4,932.70 | $333 | $1,647,292 |
| Summer Associate | 53.5 | $240 | $12,868 |
| Legal Assistant | 250.3 | $175 | $43,802 |
| Non-Attorney Reviewer | 4158.8 | $175 | $727,790 |
| All Non-Lead Firms | 765.4 | $705 | $540,348 |
| **TOTAL** | **67,522.2** | | **$32,853,803** |

22.     Counsel for the EUCPs has invested significant resources into this case, including by dedicating thousands of attorney and staff hours to this litigation. These attorneys and staff have devoted their time to this case even when they could have worked on other cases.

23.     Counsel has worked to maximize efficiency and minimize unnecessary or duplicative billing. All firms who have performed work on behalf of the EUCPs have been instructed by Interim Lead Counsel to keep detailed time and expense records, including what time would be considered for reimbursement and how expense requests must be recorded.

24.     In addition to the hours expended, counsel for the counsel for EUCPs have incurred a total of $9,007,062.95 in expenses associated with this litigation. Each firm has provided a summary describing these expenses. Counsel for EUCPs do not seek full reimbursement for their expenses at this time. Rather, they seek to reimburse a portion – $8.75 million – of the costs incurred to date. Counsel for EUCPs will seek reimbursement for the remaining $257,062.95 if the class recovers additional funds, in addition to any additional expenses incurred during further litigation.

25. Hagens Berman and Cohen Milstein established a litigation fund used to pay certain large expenses in this case. Hagens Berman has maintained that fund and recorded and documented all expenses. From the inception of this case through October 21, 2021 a total of $8,765,432.86 has been, or is in the process of being paid from that fund. These payments are included in the total above. A detailed breakdown of these expenses paid from the litigation fund is attached hereto as **Exhibit B**. All of these expenses were incurred on behalf of the EUCP class without any guarantee they would ultimately be recovered. Most of those expenses are associated with hosting the documents in this case in an online database and the cost of the economic experts. Some costs have also been incurred to obtain structured data and making that data usable for our experts.

26. My firm, Hagens Berman, has advanced and incurred an additional $154,601.26 in unreimbursed litigation costs since the inception of this case through September 2021. These are reasonable litigation costs that were incurred in this case for the benefit of the settlement class members. A detailed breakdown of these expenses paid from the common fund is attached hereto as **Exhibit C**. The $154,601.26 is included in the total costs above.

27. A significant portion of Class Counsel's expenses ($7,064,226) relate to the work Plaintiffs' economic experts performed on behalf of the class. Class Counsel's other expenses are common expenses in litigation of this size. Before the COVID-19 pandemic Class Counsel traveled to hearings and depositions, resulting in expenses of $109,958.98. Another large expense ($952,113.64) for Class Counsel was hosting Defendants documents (a significant cost, even after being split among the classes) and hosting Plaintiffs' discovery documents.

28. The class noticed published for this settlement has informed class members that counsel would seek: (1) no more than 33.3% of the settlement fund or $60,273,000 (2) costs not

to exceed $8.75 million; and (3) service awards of up to $2,000 for each named plaintiff. As of the date of this declaration, no class members have yet objected to this settlement.

29. Class Counsel is filing this Motion ahead of the opt-out deadline and will make these briefs available on the settlement website (www.overchargedforchicken.com) so that interested class members will have an opportunity to review and comment.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: October 27, 2021

/s/ Shana E. Scarlett
SHANA E. SCARLETT

# EXHIBIT A

## HAGENS BERMAN SOBOL SHAPIRO, LLP

**Reported Hours and Lodestar**
Inception through June 30, 2021

| Timekeeper | Professional Status | Hours | Current Rate | Lodestar |
|---|---|---|---|---|
| Steve Berman | P | 196.5 | $1125 | $221,062 |
| Elaine Byszewski | P | 58.5 | $700 | $40,950 |
| Elizabeth Fegan | P | 760.6 | $750 | $570,450 |
| Daniel Kurowski | P | 307.3 | $650 | $199,745 |
| Barbara Mahoney | P | 69.5 | $625 | $43,437 |
| Chris O'Hara | P | 72.0 | $675 | $48,600 |
| Jerrod Peterson | P | 77.8 | $625 | $48,625 |
| Rio Pierce | P | 1,754.5 | $700 | $1,228,150 |
| Shana Scarlett | P | 3,716.7 | $800 | $2,973,360 |
| Craig Spiegel | P | 100.5 | $800 | $80,400 |
| Jason Zweig | P | 78.7 | $725 | $57,057 |
| Jeannie Evans | OC | 1,044.8 | $625 | $653,000 |
| Benjamin Siegel | OC | 92.5 | $600 | $55,500 |
| Hannah Brennan | A | 21.2 | $500 | $10,600 |
| Andrew Gordon | A | 32.8 | $350 | $11,480 |
| Breanna Van Engelen | A | 4,343.2 | $500 | $2,171,600 |
| Jongguk Choi | SA | 7,732.5 | $350 | $2,706,375 |
| Helen Hsu | SA | 6,163.7 | $350 | $2,157,295 |
| Jeff Lang | SA | 3,912.5 | $500 | $1,956,250 |
| Patrick Ryan | SA | 4,659.6 | $350 | $1,630,860 |
| Jennifer Conte | PL | 20.5 | $300 | $6,150 |
| Jeaneth Decena | PL | 1,890.2 | $350 | $661,570 |
| Carrie Flexer | PL | 15.3 | $325 | $4,972 |
| Chavay Jones | PL | 363.8 | $250 | $90,950 |
| Megan Meyers | PL | 13.4 | $275 | $3,685 |
| Brian Miller | PL | 1,580.5 | $350 | $553,175 |
| Amy Elder | R | 4158.8 | $175 | $727,790 |
| Chan Lovell | LA | 250.3 | $175 | $43,802 |
| Stephanie Verdoia | SUM | 17.7 | $100 | $1,770 |
| **TOTAL** | | **43505.9** | | **$18,958,660** |

**Role Legend**

| | | | |
|---|---|---|---|
| P | Partner | SUM | Summer Associate |
| OC | Of Counsel | PL | Paralegal |
| A | Associate | LA | Legal Assistant |
| SA | Staff Attorney | R | Non-Attorney Reviewer |

010636-11/1679209 V1

-11-

**EXHIBIT B – LITIGATION FUND**
**EXPENSES SUMMARY**

Firm: Common Fund
      Established by Cohen Millstein Sellers & Toll, PLLP
      And Hagens Berman Sobol Shapiro, LLP

Reporting Period: Inception to October 22, 2021.

| Expense | Amount |
|---|---|
| Service Process | $5,183.14 |
| Mediation | $116,500.31 |
| Transcripts | $154,168.61 |
| Structured Data Collection & Cleanup | $512,966.32 |
| Document Hosting | $952,113.64 |
| Experts, Consultants, & Special Master Fees | $7,024,500.84 |
| **TOTAL** | **$8,765,432.86** |

**EXHIBIT C – HAGENS BERMAN**
**EXPENSES SUMMARY**

Firm: Hagens Berman Sobol Shapiro, LLP
Reporting Period: Inception through September 30, 2021

| Expense | Amount |
|---|---|
| Travel (airfare, lodging, meals, transportation) | $67,554.38 |
| Printing & Copying | $5,093.28 |
| Shipping & Postage | $11,499.00 |
| Court Reporter/Transcripts | $404.50 |
| Legal Research (e.g. PACER, Westlaw) | $25,710.37 |
| Experts, Consultants & Special Master Fees | $39,725.24 |
| Service Process | $3,189.48 |
| Court Fees | $1,000.00 |
| Teleconference Fees | $425.01 |
| **TOTAL** | **$154,601.26** |