**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To:<br><br>    All Commercial and Institutional Indirect Purchaser Actions | Case No. 1:16-cv-08637 |

**MEMORANDUM OF LAW IN SUPPORT OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' MOTION FOR APPROVAL OF CLASS <u>NOTICE PLAN FOR FIRST ROUND SETTLEMENTS</u>**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION AND BACKGROUND ...................................................................1

II. LEGAL STANDARD.....................................................................................................2

III. SUMMARY OF THE PROPOSED CLASS NOTICE PROGRAM................................2

IV. PLAN OF ALLOCATION ..............................................................................................5

V. PROPOSED SCHEDULE FOR FINAL APPROVAL....................................................6

VI. DISCUSSION...................................................................................................................7

VII. CONCLUSION.................................................................................................................9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Bank Note Holographics*,
 127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................................8

*In re Citric Acid Antitrust Litig.*,
 145 F. Supp. 2d 1152 (N.D. Cal. 2001) ..........................................................................9

*In re Computron Software, Inc. Sec. Litig.*,
 6 F. Supp. 2d 313 (D. N.J. 1998) ....................................................................................8

*Eisen v. Carlisle & Jacquelin*,
 417 U.S. 156 (1974) ........................................................................................................2

*Mullins v. Direct Digital*,
 795 F.3d 654 (7th Cir. 2015) .....................................................................................2, 8

**Rules**

Federal Rules of Civil Procedure
 Rule 23 ........................................................................................................................1, 6
 Rule 23(b)(3) ..................................................................................................................2
 Rule 23(c)(2)(B) .............................................................................................................2

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.311 ..................................................2

I.  **INTRODUCTION AND BACKGROUND**

The Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs") earlier moved successfully for preliminary approval of settlements and certification of settlement classes with respect to settlements they entered into with the Fieldale, Amick, Peco, George's, Tyson, Pilgrim's Pride, and Mar-Jac Defendants.[1] These settlements have generated a cumulative settlement amount of $104,890,000.00.[2] In the view of CIIPPs' counsel, the case has now arrived at a juncture where notice to the settlement classes and distribution of settlement funds to class members with qualified purchases is warranted.

CIIPPs recovered the foregoing cumulative amount for the benefit of settlement classes consisting of businesses and entities that indirectly purchased Broilers for use in commercial food preparation. CIIPPs respectfully submit that the class notice plan amply satisfies applicable legal standards and provides for the best notice practicable under the circumstances, thereby satisfying Federal Rule of Civil Procedure 23 and Due Process. The Plan calls for direct notice to over one million members of the settlement classes, as well as supplemental notice designed to reach a maximum number of additional potential settlement class members, all designed and implemented by an eminently qualified notice and claims administrator, A.B. Data. Accordingly, CIIPPs respectfully submit that the Court should approve dissemination of class notice and establish a schedule for a final approval hearing on the settlements.

---

[1] Order, ECF No. 1910 (Fieldale); Order, ECF No. 3696 (Amick); Order, ECF No. 4113 (Peco and George's); Order, ECF No. 5127 (Tyson, Pilgrim's, and Mar-Jac).

[2] The proposed Notices inform the Settlement Classes that there is $103,890,000.00 available for distribution. This is because the Pilgrim's Pride settlement provides an additional $1 million in funds available only for notice and claims administration.

## II. LEGAL STANDARD

Under generally recognized standards, class notice must afford potential class members the ability to "make an informed decision about their participation [in the litigation]." MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.311, at 289. For class action cases where the class is certified under Rule 23(b)(3) or for settlement purposes, the Court must direct notice to class members that is the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members." *Id.* The Seventh Circuit has held that settlement class notice generally requires individual notice where possible, and "alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members" where individual notice is not possible. *Mullins v. Direct Digital,* 795 F.3d 654, 665 (7th Cir. 2015). This standard does not require that every conceivable class member receive actual notice. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 176 (1974).

## III. SUMMARY OF THE PROPOSED CLASS NOTICE PROGRAM

The CIIPP settlement classes are vast, encompassing over one million commercial food preparation businesses and entities located throughout the United States. Through a sustained effort to identify class members, conducted primarily via analysis of voluminous materials

obtained in non-party discovery, the CIIPPs have assembled lists of settlement class members that will receive notice under the proposed Plan.[3]

CIIPPs have also engaged A.B. Data, an experienced and well-regarded notice and claims administrator, to serve as settlement administrator for these settlements. *See* Schachter Decl. ¶¶ 2-4, Exhibit A (listing many prior engagements on complex settlement administration projects).

**Primary Direct Notice**

Proposed forms of the materials CIIPPs intend on sending to the settlement classes are included herewith as exhibits attached to the Schacter Declaration, and include the Long-Form Notice at Exhibit C, the Claim Form at Exhibit D, and the Short-Form Notice at Exhibit E. The Schachter Declaration also includes a document describing in detail CIIPPs' proposed Plan of Allocation, which will be posted on CIIPPs' dedicated settlement website. The foregoing materials provide information about, among other things, (a) the amount of the settlements; (b) who is entitled to share in the recovery; (c) how to submit a claim form; (d) the Plan of Allocation for distributing the settlement proceeds; (e) the process by which settlement class members may opt-out or object to the settlements; and (f) that, if the Court grants final approval, the case will be dismissed as against the Settling Defendants. Under CIIPPs' plan, the settlement administrator will send the following items to class members:

- the Long-Form Notice and a Claim Form with prepopulated purchase amounts to approximately 650,000 settlement class members located in *Illinois Brick* repealer jurisdictions[4] and for whom CIIPPs' sales databases contained qualifying purchases;

---

[3] CIIPPs subpoenaed and obtained large amounts of purchase and sales data from non-party distributors as part of discovery in this action. The distributors' sales data identifies CIIPP class members.

[4] *Illinois Brick* repealer jurisdictions are those jurisdictions that permit recovery of indirect purchaser damages under local antitrust law. The relevant states are listed in the notices.

3

- the Long-Form Notice and a blank Claim Form to other settlement class members located in *Illinois Brick* repealer jurisdictions and for whom CIIPPs' sales databases did not reflect verifiable purchases; and

- the Short-Form Notice to settlement class members located in non-repealer jurisdictions.

Both the Long-Form Notice and Short-Form Notice provide information and transparency regarding the proposed settlements and contain all information required by the Rules and case law. The Short-Form Notice also provides the URL for the website where class members may review the Long-Form Notice and more fulsome information about the lawsuit and the proposed settlements. In addition to a physical mailing, the foregoing Long-Form and/or Short-Form notices will also be emailed directly to settlement class members where the non-party distributor data provides an email address. *See* Schachter Decl. ¶¶ 9-11.

**Supplemental Publication Notice**

In addition to the robust direct notice program outlined above, CIIPPs will supplement the Plan with other forms of notice reasonably tailored to reach a maximum number of additional potential class members as efficiently as possible. These measures include:

***Paid Media.*** A.B. Data has devised a well-tailored paid media program that will include print advertising in food industry publications, banner ads on food industry websites, targeted banner ads on Google Display Network and YouTube. Schachter Decl. ¶¶ 12-14. The subscriber base for the food industry publications and websites encompasses many individuals responsible for procurement at many businesses and entities engaged in commercial food preparation that fall within the settlement class definitions. A proposed sample banner ad is included with the Notice Plan and attached as Exhibit B to the Schachter Declaration, and A.B. Data will conduct a targeted online display ad program to generate a minimum of 20 million impressions over 30 days. Schachter Decl. ¶¶ 12-14.

4

*Earned Media.* An earned media program will leverage the newsworthiness of the settlements themselves to expand notice. A.B. Data will disseminate a news release via the distribution service PR Newswire, which will reach more than 10,000 newsrooms across print, broadcast, and digital media throughout the United States. Schachter Decl. ¶ 15. A.B. Data will also send the news release to food industry trade publications. *Id.*

### Website and Telephone Support

A.B. Data will further assist potential claimants in understanding their rights under the settlements by establishing a case-specific toll-free number and website. *Id.* ¶¶ 16-18. The toll-free number will provide prerecorded information about the settlements and an option to speak with a live operator during business hours. *Id.* The website will present relevant information and documentation, including a case summary, copies of the settlement agreements and related Orders, other important documents, and a schedule showing important dates, as well as the functionality for online claim form submission. *Id.*

IV.     **PLAN OF ALLOCATION**

Discovery to date has yielded a wealth of transaction-level data that CIIPPs' expert economists have analyzed extensively to determine the relative magnitude of the alleged overcharges imposed on the various Broilers product types. This analysis supports the view, for example, that overcharge amounts were greater in the time period lasting from December 1, 2011 through July 31, 2019, than in an earlier period lasting from January 1, 2008 through November 30, 2011. It further supports the view that overcharges were greater on purchases of wing products than on purchases of breast products, for example. CIIPPs' Plan of Allocation, as outlined in the notice papers, reflect the foregoing analyses.

Based on expert analysis, CIIPPs propose to employ the following chart in scoring the CIIPPs settlement class members' Broilers purchasers during the relevant period:

| Product Category | Time Period of Purchase: January 1, 2008 through November 30, 2011 | Time Period of Purchase: December 1, 2011 through July 31, 2019 |
|---|---|---|
| Breast Products | 1 | 3.5 |
| Whole Bird Products | 1.3 | 2.6 |
| Wing Products | 3.5 | 6.1 |
| Other Products | 1 | 1 |

Under CIIPPs' proposed Plan, A.B. Data will make use of the foregoing to weigh Broilers purchases in allocating settlement proceeds to pay class members' claims. For each purchase, A.B. Data will assign the CIIPPs class member a point score by multiplying the dollars of purchases of each product type for a given time period by the multiplier for that product type and time period. For example, a given class member will be assigned 1.3 points for each dollar of whole bird products purchased in February 2009 and 6.1 points for each dollar of wing products purchased in September 2014. The class member's total points divided by the total points held by all class members will determine that class member's share of total funds to be distributed and the class member will receive a *pro rata* distribution on this basis.

V.     PROPOSED SCHEDULE FOR FINAL APPROVAL

CIIPPs propose the following schedule for the dissemination of class notice and related dates for final approval, which complies with all of the time intervals required under applicable rules and procedures including Rule 23 and the Class Action Fairness Act (CAFA). The proposed schedule moreover has the virtue of mirroring similar notice schedules submitted by other Class Plaintiffs in this case and approved by this Court:

| Event | Date |
|---|---|
| Notice campaign begins through direct notice via mail and email and implementation of publication notice campaign | 30 days from order directing notice |
| Last day for CIIPPs' counsel to move for attorneys' fees, expenses, and service awards for class representatives | 76 days from order directing notice |
| Last day for settlement class members to request exclusion from the settlement classes, object to the settlements, and file notices to appear at the final approval hearing | 90 days from order directing notice |
| CIIPPs' counsel to provide settling Defendants with a list of all persons and entities who have timely filed requests for exclusion from any of the settlement classes | 97 days from order directing notice |
| Deadline for filing motion for final approval and supporting documents, and responses to any objections to settlements or attorneys' fees | 14 days before the Final Approval Hearing |
| Final approval hearing and hearing on requests for attorneys' fees and expenses | 130 days from order directing notice, or as soon thereafter as may be heard by the Court |
| Distribution to the settlement classes | TBD after order granting final approval and resolution of any objections and appeals |

As the foregoing demonstrates, CIIPPs' final approval schedule is keyed off of the date the Court issues its order directing notice to the class. If and when that order is entered, CIIPPs will submit dates certain to the Court based on the foregoing schedule.

**VI. DISCUSSION**

The robust Class Notice Plan covering both direct and publication notice is a case-specific, state-of-the-art Notice Plan devised by a settlement administrator with substantial experience in administering settlements in major class action litigation. The Plan makes full use of the extensive reserves of data collected from Defendants and in non-party discovery through years of painstaking litigation effort, oftentimes in the face of strong opposition, and at immense cost. Every settlement class member identifiable in the database CIIPPs have assembled will

7

receive direct notice electronically and/or in its physical mailbox. This undertaking satisfies the *Mullins* standard of providing for direct notice, where possible.

The Notice Plan also provides for additional significant and efficient measures for reaching other potential settlement class members that were not reached via direct notice, by making use of industry publications in wide use among the settlement class members. Indeed, the overlapping layers of notice are targeted to maximize the likelihood that any settlement class member will receive notice at a time and in a manner that will allow them to participate fully in the settlements.

Moreover, the proposed plan of allocation is an evidence-based plan that CIIPPs recommend after considerable deliberation and consultation with their retained economic experts and A.B. Data. It contemplates a pro rata payout reflecting the differing levels of alleged overcharge that applied to certain product types and calibrates the share each class member will receive in the settlement on an objective basis, according to the volumes of purchases for each affected type and the corresponding damages incurred. There is no preferential treatment for any class representative or for any class member or segment of the settlement classes. Such an allocation method has repeatedly been approved by courts across the country. As many courts have held, a proposed plan of allocation "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *In re Am. Bank Note Holographics,* 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001). The standard for an allocation methodology is the same as for the settlements overall: the plan must be fair, reasonable, and adequate. *In re Computron Software, Inc. Sec. Litig.,* 6 F. Supp. 2d 313, 321 (D. N.J. 1998). And "[a] plan of allocation that reimburses class members based on the type and extent of their

injuries is generally reasonable." *In re Citric Acid Antitrust Litig.,* 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).

In all, CIIPPs respectfully submit that the proposed Class Notice Plan constitutes the "best notice that is practicable under the circumstances." Additionally, CIIPPs stand ready to offer any supplemental information that the Court would find helpful in deciding this motion.

## VII. CONCLUSION

Now that seven substantial settlements have been preliminarily approved, CIIPPs believe that the moment has come to disseminate notice to the class and commence with distributing settlement funds. CIIPPs respectfully request that the Court grant the motion and authorize adoption of the proposed Class Notice Plan.

Dated: November 24, 2021

Respectfully Submitted:

/s/ *Daniel C. Hedlund*
Daniel C. Hedlund
Michelle J. Looby
Joshua R. Rissman
Brittany N. Resch
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite #2600
Minneapolis, MN 55402
Telephone: (612) 333-8844

/s/ *Adam J. Zapala*
Adam J. Zapala
James G. Dallal
Tamarah P. Prevost
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000

*Lead Counsel for the Commercial and Institutional Indirect Purchaser Class*

Kenneth A. Wexler
Melinda J. Morales
**WEXLER BOLEY & ELGERSMA, LLP**
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222

*Liaison Counsel for the Commercial and Institutional Indirect Purchaser Plaintiff Class*

9