UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 16 C 8637<br><br>Judge Thomas M. Durkin |

MEMORANDUM OPINION AND ORDER[1]

In this lawsuit alleging a price-fixing conspiracy in the chicken industry against more than 20 defendants, the Court appointed interim counsel to represent a putative class of direct-purchaser plaintiffs (the "DPPs" and their "Appointed Counsel"). *See* R. 144.[2] The Court approved settlements Appointed Counsel negotiated with six defendant corporate families, totaling $169,601,600.00, while the case continues to proceed against the remaining defendants.[3] Appointed Counsel have now moved for: an interim fee award; reimbursement of litigation expenses; and incentive awards to the five named class representatives. R. 4550. That motion is granted in accordance with this order.

---

[1] This opinion and order, originally entered on November 30, 2021, has been amended to correct typographical errors in the total settlement fund amount and the attorney fee award amount. This amendment is entered nunc pro tunc to November 30, 2021.

[2] The Court appointed Lockridge Grindal Nauen P.L.L.P. and Pearson, Simon & Warshaw, LLP as Interim Co-Lead Counsel, and Hart, McLaughlin & Eldridge, LLC as Interim Liaison Counsel.

[3] This Court granted final approval to settlements with: Fieldale Farms Corporation on November 16, 2018, R. 1414; Amick Farms LLC on October 26, 2020, R. 3934; George's Inc., George's Farms, Inc. and Peco Foods, Inc. on October 27, 2020, R. 3944; and Pilgrim's Pride Corp., Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Breeders, Inc., and Tyson Poultry, Inc. on June 29, 2021, R. 4789.

## Background

Without the benefit of a prior government investigation to guide them, Appointed Counsel filed the first complaint in this case in September 2016. Since then, the Court has appointed counsel for two additional classes and more than 100 entities have opted out of the classes to file their own direct actions. The more than 20 defendants are represented by some of the most prominent law firms in the country.

Appointed Counsel successfully defended the case against a significant motion to dismiss. They have shepherded the case through extensive discovery, as is recounted in the declaration supporting their motion, *see* R. 4552, and is reflected in the more than 5,000 docket entries that make up the case, including 16 scheduling orders. Appointed Counsel have briefed numerous motions, including a motion for class certification that is currently pending.

Appointed Counsel have been assisted by 20 other firms. Appointed Counsel and the assisting firms have submitted their hours for the Court's review on a quarterly basis. Their collective lodestar is 100,608.25 hours representing $50,928.159.75 in fees. *See* R. 4552 ¶ 24.

Appointed Counsel seek a fee award of one-third of the settlement total of $169,601,600.00, or $56,533,866.70. They also seek payment of $4.5 million of the

$5,104,566.48 in litigation expenses they have incurred. And they seek a $25,000 incentive award for each of the five named plaintiffs.[4]

## Analysis

It is customary for class counsel in large and complex cases to seek an interim fee award. *See, e.g., Kleen Prod. LLC v. Int'l Paper Co.*, 2017 WL 5247928, at *4 (N.D. Ill. Oct. 17, 2017); *see also In re Endotronics, Inc.*, 1989 WL 6746, at *1 (D. Minn. Jan. 30, 1989) ("Untoward delay could discourage [class counsel] from engaging in matters such as these. The Court, therefore, must have discretion to award interim fees and costs."). The "starting point" for determining such an award is the "market rate" for such services. *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir. 2001); *see also Silverman v. Motorola Sols., Inc.,* 739 F.3d 956, 957 (7th Cir. 2013) ("[A]ttorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services."); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011) ("[T]he district court must try to assign fees that mimic a hypothetical *ex ante* bargain between the class and its attorneys."). Estimation of the market rate "is inherently conjectural," *In re Trans Union Corp. Priv. Litig.*, 629 F.3d 741, 744 (7th Cir. 2011), because "there is no market in class cases." Brian T. Fitzpatrick, *A Fiduciary Judge's Guide to Awarding Fees in Class Actions*, 89 Fordham L. Rev. 1151, 1155 (2021). But the Seventh Circuit has explained that the goal of approximating the market rate can be "informed by a number of

---

[4] The named plaintiffs are: Maplevale Farms, Inc.; John Gross and Company, Inc.; Ferraro Foods, Inc. and Ferraro Foods of North Carolina, LLC; Joe Christiana Food Distributors, Inc.; and Cedar Farms Co., Inc. *See* R. 4552 ¶ 36.

3

factors, including: (1) the actual agreements between the parties as well as fee agreements reached by sophisticated entities in the market for legal services; (2) the risk of non-payment at the outset of the case; (3) the caliber of Class Counsel's performance; and [4] information from other cases, including fees awarded in comparable cases." *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *8 (S.D. Ill. Dec. 16, 2018) (citing *Synthroid*, 264 F.3d at 719)).

### A. Actual Agreements

Appointed Counsel in this case do not have a fee agreement with the named plaintiffs other than that they would take a percentage of any award. *See* R. 5048-1 ¶ 11, Fitzpatrick Decl. ("According to [Appointed Counsel], the representative class members signed retainer agreements that did not specify a fee percentage; they specified only that any fees would be awarded by the Court.").[5] However, 2,808 claims have been filed by potential class member entities in the class, the majority of whom are sophisticated business entities. *See id.*, Fitzpatrick Decl. ("In light of the sophistication of the class members, all of whom are businesses and some of whom are quite large, the conclusion that can be drawn from their decision not to object is that they favor the flat fee proposed by DPPs—not a sliding-scale fee."). None of them

---

[5] Appointed Counsel submitted a declaration from Brian Fitzpatrick, who is a professor at Vanderbilt University Law School and has studied and written about class action litigation. *See* R. 5048-1. In addition to requesting further briefing from Appointed Counsel, the Court invited briefs from counsel for the other two putative classes in the case. The Commercial and Institutional Indirect Purchaser Class submitted a declaration by Robert Klonoff, who is a professor at Lewis & Clark Law School, and who has also studied and written about class action litigation. *See* R. 5050-1. The Court found both declarations very helpful and has relied on them in preparing this opinion and order.

have objected to the fee award request. Courts have found that the lack of opposition by sophisticated business entities is evidence that the award is reasonable. *See Silverman*, 739 F.3d at 959 (holding that for large, sophisticated investors, it would be "worth a complaint to the district judge if the lawyers' cut seems too high. Yet none of the institutional investors has protested."); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 847 (N.D. Ill. 2015) (observing, in finding that the requested one-third fee award was reasonable, that "the plaintiffs here are sizable, sophisticated entities capable of reviewing (and objecting to) the proposed fee arrangement"),

No other actual agreements have been presented to the Court. There is, however, case law describing court-ordered auctions in which potential class counsel bid for appointment. *See In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 800 (N.D. Ill. 2015) (collecting cases, including *In re Amino Acid Lysine Antitrust Litig.*, 918 F. Supp. 1190 (N.D. Ill. 1996)). The courts in *In re Amino Acid* and the other cases collected by *In re Capital One* sought fee award structure bids from attorneys hoping to represent the classes in those cases. The courts in those cases chose counsel who submitted declining fee scale award structures. (In other words, counsel proposed that their fee percentage decrease as the settlement amount increased.) These cases are relatively outdated, none being less than 20 years old. *See* R. 5048-1 ¶ 8, Fitzpatrick Decl. (court "experimentation with auctions has all but ceased"). But the Court is also aware that counsel for the End-User Plaintiff Class in this case bid a declining fee scale in other cases within the last ten years. *See* R. 5182 (citing *In re Lithium Ion Batteries Antitrust Litig.*, Case No. 13-MD-2420-YGR (N.D.

Cal), Dkt. 2630-2; *In re Optical Disk Drive Prods. Antitrust Litig.*, Case No. 10-MD-2134-VRW (N.D. Cal) Dkt. 2900, reported in *In re Optical Disk Drive Antitrust Litig.*, 959 F.3d 922, 934 (9th Cir. 2020)).

The Court does not put much stock in these examples. First, no other attorneys bid to be appointed counsel for the DPPs in this case. Without competition, a bid auction was not feasible. And without competition, no attorney would offer to take a case under a declining fee scale award structure.

Furthermore, the Seventh Circuit has explained that declining fee scale award structures do not reflect market realities and impose a perverse incentive "ensuring that at some point attorneys' opportunity cost will exceed the benefits of pushing for a larger recovery, even though extra work could benefit the client." *Synthroid*, 264 F.3d at 721; *see also Silverman*, 739 F.3d at 957 ("[S]olvent litigants do not select their own lawyers by holding auctions, because auctions do not work well unless a standard unit of quality can be defined and its delivery verified. There is no 'standard quantity' of legal services, and verification is difficult if not impossible."). "Subsequent cases within the Seventh Circuit have similarly recognized that the auction concept is flawed[.]" R. 5050-1 at 17 n.15, Klonoff Decl. Of course, when confronted with a court ordered competitive auction that permits declining scale bids, some attorneys will likely make such a bid in order to win the auction. But for the reasons expressed by the Seventh Circuit, the Court questions whether it is appropriate to permit declining scale bids in an auction. Thus, cases with auctions that permitted such bids carry little weight in the Court's consideration here.

6

### B. Risk of Non-Payment & Caliber of Class Counsel's Performance

A declining scale fee award structure might be appropriate in cases in which settlement is a more likely outcome and in which the "marginal costs" of increasing the settlement recovery amount are low. *See Silverman*, 739 F.3d at 959. As Professor Fitzpatrick surmised, this "may explain the use of [declining scale fee award structures] in the two [Telephone Consumer Protection Act] cases" the Court asked the parties to address. *See* R. 5048-1 at 17 n.6, Fitzpatrick Decl.

The Court ordered the parties to address the use of declining sliding scale fee award structures in *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 236 (N.D. Ill. 2016), and *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 805 (N.D. Ill. 2015). *See* R. 4915. Unlike those cases in which "settlement was likely," *Gehrich*, 316 F.R.D. at 230, settlement in a complex antitrust case like this is far from a foregone conclusion. *See* R. 505-1 ¶ 37, Klonoff Decl. ("In terms of risk and complexity, TCPA cases are the polar opposite of the present case, a complicated multi-party antitrust conspiracy case.").[6] Appointed Counsel invested massive resources of time and money when no other counsel expressed interest, with little assurance of success. *See Silverman*, 739 F.3d at 958 ("When this suit got under way, no other law firm was willing to serve as lead counsel. Lack of competition not only implies a higher fee but also suggests that most members of the securities bar saw

---

[6] Moreover, research by both Professors Fitzpatrick and Klonoff shows that the use of declining sliding scale fee awards in the Seventh Circuit is rare. *See* R. 5048-1 at 13 n.5, Fitzpatrick Decl.; R. 5050-1 at 26-31, Klonoff Decl.

7

this litigation as too risky for their practices."). As noted, no government investigation preceded the complaint in this case for Appointed Counsel to piggy-back. And Plaintiffs have been opposed by many defendants, including a number of very large and well-funded corporations, which have retained some of the most prominent and sophisticated law firms in the United States. The Court's 92-page decision denying the motions to dismiss was a relatively close call. Discovery proceeded while the motions to dismiss were briefed and decided, so Appointed Counsel was immediately incurring costs of time and money without any assurance of an award. Furthermore, issues raised in the motions to dismiss show that success on class certification and summary judgment, let alone trial, is no guarantee.

Appointed Counsel have devoted thousands of hours to this case. Their performance to date has been exemplary. The road to some of the settlements was eventually smoothed by later criminal indictments. But Appointed Counsel's work appears to have prompted the government investigations that led to those indictments, rather than the reverse. A substantial award is warranted here as a proper incentive for high quality counsel to take on complex cases, requiring a massive investment of time and money, with such a high risk of non-payment.

### C. Fee Awards in Comparable Cases

The Seventh Circuit has recognized that academic studies of attorney fees awards in common fund class settlement cases reveal a declining percentage with the size of the settlement. *See Silverman*, 739 F.3d at 959. But as Professor Fitzpatrick noted, "these findings are based on fee awards from other Circuits . . . that are not

8

even trying to capture how clients pay lawyers in the market like the Seventh Circuit does." R. 5048-1 at 20 n.7, Fitzpatrick Decl. These decisions are infected by default rules recommending smaller attorney fee award percentages for "megafunds." *See*, *e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 123 (2d Cir. 2005) (affirming a 6.5 percent fee award from a common fund over $3 billion, reasoning that "the sheer size of the instant fund makes a smaller percentage appropriate"); *Dial Corp. v. News Corp.,* 317 F.R.D. 426 (S.D.N.Y. 2016) ("[I]n class actions where the recovered settlement fund runs into the multi-millions, courts typically decrease the percentage of the fees amount as the size of the fund increases."). The Seventh Circuit has expressly rejected a megafund rule because it is a perverse incentive. *See Synthroid*, 264 F.3d at 718 (reversing district court's fee award in part because it imposed a lower fee percentage because the settlement fund was more than $100 million, holding that "[m]arkets would not tolerate that effect"). Clients generally want to incentivize their counsel to pursue every last settlement dollar, and a declining percentage award operates to the contrary. Thus, to the extent that courts in other circuits have awarded percentages smaller than what Appointed Counsel seek here, the Court finds those awards relatively unpersuasive.

Most persuasive are the large number of antitrust cases in this circuit that have awarded one-third of the common fund as attorney's fees. *See* R. 5050-1 at 45-46 (table citing cases), Klonoff Decl. The fact that fee awards in antitrust cases in this circuit are almost always one-third is a strong indication that this should be considered the "market rate." *See* R. 5048-1 ¶ 14, Fitzpatrick Decl. (in "a series of

9

antitrust class actions . . . . recover[ing] more than $2 billion . . . . *not a single class member ever objected* to the fee request in any of these cases" showing that "sophisticated corporations are happy to play flat fees of 33.33% and they are happy to do so even in the largest cases."). There is simply little to no precedent recommending anything other than an award of 33 percent. With the only real evidence of the "market rate" being one-third, that is what the Court will award.

### D. Expenses

Appointed Counsel seek $4.5 million out of $5,104,566.48 in expenses. Appointed Counsel "informed the class" that they would not seek to recover the full amount of their expenses at this time. *See* R. 4551 at 2 n.7. The request for $4.5 million in expenses is granted.

Expenses, however, should be deducted from the common fund before the fee award percentage is applied. The "ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack*, 768 F.3d 622, 630 (7th Cir. 2014). Out-of-pocket costs, although paid through the settlement fund, are not benefits to the class and thus not part of "what the class members received." *Id.*; *see also In re Wells Fargo Secs. Litig.*, 157 F.R.D. 467, 471 (N.D. Cal. 1994) ("If an attorney risks losing some portion of his fee award for each additional dollar in expenses he incurs, the attorney is sure to minimize expenses."). Therefore, Appointed Counsel will be paid fees of one-third of the settlement fund minus $4.5 million in expenses.

E. Named Plaintiff Incentive Awards

"Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). "To determine if an incentive award is warranted, a district court evaluates the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 834 (7th Cir. 2018) (citing *Cook*, 142 F.3d at 1016). Incentive awards based on a percentage of the settlement fund "are disfavored, if not altogether forbidden." *See* William B. Rubenstein, 5 Newberg on Class Actions § 17:16 (5th ed. 2018); *see also In Re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 2021 WL 5369798, at *7 (D. Kan. Nov. 17, 2021).

The declarations submitted in support of incentive awards give no indication of the number of hours the named plaintiffs have spent on the case. Appointed Counsel relies on *Cook v. Niedert* in which the Seventh Circuit affirmed an incentive award of $25,000 per named plaintiff. *See* R. 4551 at 21 (citing 142 F.3d at 1016). But in *Cook* the named plaintiff was an individual who "reasonably feared workplace retaliation" by "filing the suit." *Id.* at 1016. No such risk is present here, and the named plaintiffs are business entities, not individual people. Presumably, businesses serving as named plaintiffs for the DPP class believe that the chance of collecting from this lawsuit was worth the cost of participating in it. Litigation is convenient for

11

no one. But business entities are in a much better position to devote time to a lawsuit and delegate the burdens among their officers and employees than a person who must bear the entire burden individually.

"Empirical evidence shows that incentive awards are now paid in most class suits and average between $10-$15,000 per class representative." *See* William B. Rubenstein, 5 Newberg on Class Actions § 17:1 (5th ed. 2018). Appointed Counsel cite one antitrust case from this district which awarded $15,000 to named plaintiffs from a $90 million settlement. *See In re Potash Antitrust Litig.*, No. 1:08-cv-06910 (ECF No. 589) (N.D. Ill. June 12, 2013). Without specific hour totals indicating a higher award is appropriate, and without evidence that the role of class representative imposed anything other than a professional (as opposed to a personal) burden, the Court will not ignore what appears to be a customary maximum of a $15,000 incentive award.

**Conclusion**

Therefore, Appointed Counsel's motion [4550] is granted as follows: (1) expenses are awarded in the amount of $4.5 million; (2) incentive awards in the amount of $15,000 are awarded to each of the five class representatives; and (3) fees are awarded in the amount of $55,008,866.67, which is one third of the settlement fund after deducting the expenses and incentive awards.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: December 1, 2021
     nunc pro tunc
       to November 30, 2021