# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE:  BROILER CHICKEN ANTITRUST LITIGATION | Case No. 1:16-cv-08637 |
| THIS DOCUMENT RELATES TO:<br><br>THE END-USER CONSUMER PLAINTIFF ACTION | |

### SETTLEMENT AGREEMENT BETWEEN
### END-USER CONSUMER PLAINTIFFS AND THE TYSON DEFENDANTS

This Settlement Agreement ("Settlement Agreement" or "Agreement") is made and entered into as of the Execution Date, by and between Tyson (as hereinafter defined) and the EUCPs (as hereinafter defined), individually and on behalf of a class of indirect purchasers of Broilers (as hereinafter defined), subject to the approval of the Court (the "Settlement Class" or "the Class").

**RECITALS**

A.      EUCPs are prosecuting the Action (as hereinafter defined) on their own behalf and on behalf of the putative Class.  EUCPs and the putative class are currently represented by interim Class Counsel (as hereinafter defined).

B.      The Action is being litigated in the United States District Court for the Northern District of Illinois alongside lawsuits being brought by other plaintiffs and putative classes. Certain "Direct Purchaser Plaintiffs" are seeking to represent a class of direct purchasers of Broilers.  The "Direct Action Plaintiffs" are direct purchasers of Broilers represented by separate counsel (*i.e.*, counsel other than counsel for the putative class of direct purchasers).  The

"Commercial and Institutional Purchaser Plaintiffs" are seeking to represent a different group of indirect purchasers of Broilers than the indirect purchasers the EUCPs are seeking to represent. The United States Department of Justice has also intervened in the litigation. The EUCP lawsuit that is the subject of this settlement shall be referred to as the "Action." The entire collection of matters before the Court in this consolidated proceeding shall be referred to as the "Litigation."

C.      EUCPs have alleged, among other things, that Tyson entered into a contract, combination or conspiracy in restraint of trade, the purpose and effect of which was to suppress competition and to allow Tyson to charge supra-competitive prices during the Class Period, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 and the antitrust laws, unfair competition laws, consumer protection laws, and unjust enrichment common laws of certain states.

D.      Tyson denies all allegations of wrongdoing in the Action and believes it has numerous legitimate defenses to EUCPs' claims.

E.      This Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, or regulation or of any liability or wrongdoing by the Tyson or of the truth of any of EUCPs' Claims or allegations, nor shall it be deemed or construed to be an admission nor evidence of Tyson's defenses.

F.      Class Counsel have conducted an investigation into the facts and law regarding the Action and the possible legal and factual defenses thereto and have concluded that a settlement with Tyson according to the terms set forth below is fair, reasonable, adequate, and beneficial to and in the best interests of the Class, given the uncertainties, risks, and costs of continued litigation, and that the Settlement Fund (as hereinafter defined) reflects fair, reasonable, and adequate compensation for the Settlement Class (as hereinafter defined) to

release, settle, and discharge their claims that they were overcharged by the alleged anticompetitive conduct of which Tyson is accused.

G.      Despite its belief that it is not liable for and has strong defenses to the Claims asserted by EUCPs, Tyson desires to settle the Action to avoid the further expense, inconvenience, disruption, and burden of litigation and any other present or future litigation arising out of the facts that gave rise to this Litigation, to avoid the risks inherent in uncertain complex litigation and trial, and thereby to put to rest this controversy.

H.      Arm's-length settlement negotiations have taken place between Class Counsel and Tyson and/or Tyson's Counsel over many weeks and many conferences with the assistance and contributions of an experienced and neutral mediator, and this Agreement has been reached as a result of those negotiations.

I.      Both Parties (as hereinafter defined) wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by EUCPs in the event this Settlement Agreement fails to satisfy the conditions set out in Section II(G)(9) below.

J.      The Parties (as hereinafter defined) desire to fully and finally settle all actual and potential Claims arising from or in connection with the Action, the factual allegations underlying the Action, and to avoid the costs and risks of protracted litigation and trial.

**IT IS HEREBY AGREED**, by and among the Parties (as hereinafter defined), that this Action and all Released Claims (as hereinafter defined) are finally and fully discharged, settled and compromised as to the Released Parties (as hereinafter defined) and that this Action shall be dismissed in its entirety with prejudice as to the Tyson, subject to approval of the Court pursuant

to Rule 23 of the Federal Rules of Civil Procedure, upon and subject to the following terms and conditions:

## I.      DEFINITIONS

### A.      Class Definition.

"Settlement Class" or "Class" means the class described in Section II(G)(2) below.

### B.      General Definitions.

1.      "Action" means the putative class action filed by EUCPs in the Litigation captioned *In re Broiler Chicken Antitrust Litigation*, 1:16-cv-08637 (N.D. Ill.), which is currently pending in the United States District Court for the Northern District of Illinois.

2.      "Affiliate" means, with respect to any Person, any other Person, entity or company that, directly or indirectly, controls, is controlled by or is under common control with such Person.

3.      "Broilers" means chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, raw or cooked, whole or in parts, or as a meat ingredient in a value added product, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards.

4.      "Claims" means any and all actual or potential, known or unknown, causes of action, claims, contentions, allegations, assertions of wrongdoing, damages, losses, or demands for recoveries, remedies, or fees complained of, or relating or referred to, arising from the conduct alleged in the Action or that could or should have been alleged in the Action.

5.      "Claims Administrator" means the third party to be retained by Class Counsel and approved by the Court to manage and administer the process by which Class Members are notified of the Settlement Agreement and paid from Net Settlement Fund.

6.      "Class Member" or "Settlement Class Member" means each member of the Settlement Class that is not timely and properly excluded from the Class.

7.      "Class Notice" means the notice to the Class that is approved by the Court, in accordance with Section II(G)(4) below.

8.      "Class Period" means the period from and including January 1, 2009 through July 31, 2019.

9.       "Class Counsel" and "Settlement Class Counsel" means the law firm of Hagens Berman Sobol Shapiro LLP.

10.      "Complaint" or "Operative Complaint" means the Fifth Amended and Consolidated Class Action Complaint in the Action (ECF 3748).

11.      "Court" means the United States District Court for the Northern District of Illinois and the Honorable Thomas M. Durkin or his successor, or any other Court with jurisdiction of the Action.

12.      "Date of Final Approval" means the date on which the Court enters an order granting final approval to this Settlement Agreement, pursuant to Rule 23 of the Federal Rules of Civil Procedure, as provided in Section II(G)(7) below.

13.      "Date of Preliminary Approval" means the date on which the Court enters an order granting preliminary approval to this Settlement Agreement, pursuant to Rule 23 of the Federal Rules of Civil Procedure, as provided in Section II(G)(3) below.

14.    "Defendant" or "Defendants" means any or all of the Defendants named in the Action, now, in the past or in the future.

15.    "Documents" means (a) all papers, electronically stored information ("ESI"), statements, transcripts, or other materials within the scope of Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure; and (b) any copies or reproductions of the foregoing, including microfilm copies or computer images.

16.    "Effective Date" shall be the date the Settlement Agreement is finally approved as set forth in Section II(G)(9), entitled "When Settlement Becomes Final."

17.    "Execution Date" means the date on which this Settlement Agreement is entered into and executed by all Parties.

18.    "Escrow Account" means the account with the Escrow Agent that holds the Settlement Fund.

19.    "Escrow Agent" means the bank into which the Settlement Fund shall be deposited and maintained as set forth in Section II(E) of this Agreement.

20.    "Escrow Agreement" means that certain agreement between the Escrow Agent that holds the Settlement Fund and EUCPs (by and through Class Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Settlement Class, as set forth in Section II(E) of this Agreement.

21.    "EUCPs" means End-User Consumer Plaintiffs as that term is used in the Complaint.

22.    "Fairness Hearing" has the meaning provided in Section II(G)(3) below.

23.    "Net Settlement Fund" means the Settlement Fund, plus accrued interest, less any award of attorneys' fees or reimbursement of expenses and less applicable taxes, tax

preparation expenses, and costs of notice and administration, that may be awarded or approved by the Court.

24.    "Opt-Out Claim" means any claim, as set forth in Section II(G)(3) and (4) of this Settlement Agreement, made by a Person, otherwise qualifying as a member of the Settlement Class, that has validly and timely submitted a request to be excluded from the Settlement Class.

25.    "Order and Final Judgment" means the order and final judgment of the Court approving the Settlement Agreement, including all of its material terms and conditions without modification, and the settlement pursuant to Federal Rule of Civil Procedure 23, and dismisses Tyson with prejudice from the Action, as described in Section II(G)(7) below.

26.    "Parties" or "Settling Parties" means Tyson and the Class, as represented by the EUCPs.

27.    "Person(s)" means an individual, corporation, partnership, limited liability company, association, trust, unincorporated organization, or other entity or organization.

28.    "Released Claims" means any and all Claims and any and all existing or potential, known or unknown, Claims, demands, actions, suits, causes of action, upon any theory of law or equity, whether class, individual, or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasing Parties (defined below), or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated, claims, causes of action, injuries, damages or other relief, arising from or in connection with any act or

omission during the Class Period relating to or referred to in the Action or arising from the factual predicate of the Litigation or any conduct that could or should have been challenged, raised or alleged in the Action. Notwithstanding the above, "Released Claims" do not include claims asserted against any other Defendant or against any Unrelated Co-Conspirator. Released Claims includes all such claims for the period from and including January 1, 2009 through December 31, 2020.

29.    "Released Parties" means jointly and severally, individually and collectively, the Tyson, its predecessors, successors, assigns and affiliates (including without limitation any affiliates who are alleged co-conspirators); and any and all past, present, and future direct or indirect parents, owners, subsidiaries, related entities, divisions, departments, joint ventures and Affiliates, and each of their respective past or present heirs, executors, devisees, administrators, officers, executives, directors, trustees, stockholders, partners, managing directors, managers, members, equity holders, agents, attorneys, advisors, auditors, accountants, contractors, servants, employees, representatives, beneficiaries, insurers, assignees and legal or other representatives. "Released Parties" includes any person or entity identified in the previous sentence who has been or in the future may be identified in the Litigation as a co-conspirator. For the avoidance of doubt, Keystone Foods, Inc.; Keystone Foods Corporation; Keystone Foods Equity Group; Keystone Foods LLC; Equity Group Kentucky Division LLC; Equity Group – Georgia Division LLC are considered "Released Parties" under this Settlement Agreement. "Released Parties" does not include any other Defendant or any Unrelated Co-Conspirator, either explicitly or as a third-party beneficiary.

30.    "Releasing Parties" means jointly and severally, individually and collectively, EUCPs, the Class, and each Class Member, on behalf of themselves and any person

or entity claiming by or through them as, including without limitation, their respective
predecessors, successors, and assigns; and any and all past, present, and future parents, owners,
subsidiaries, divisions, departments, Affiliates, heirs, executors, devisees, administrators,
officers, directors, stockholders, partners, agents, attorneys, advisors, auditors, accountants,
contractors, servants, employees, representatives, insurers, and assignees.

      31.    "Settlement Agreement" means this document and the agreement
reflected therein.

      32.    "Settlement Amount" means the cash payment of $99,000,000 described
in Section II(B)(1), below.

      33.    "Settlement Fund" means the funds described in Section II(B) of this
Settlement Agreement, plus accrued interest, in the separate Escrow Account for the settlement
contemplated by this Settlement Agreement established in accordance with Section II(E) below.

      34.    "Tyson" means Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Breeders,
Inc., and Tyson Poultry, Inc., and all of their predecessors, successor, assigns, Affiliates
(including without limitation any Affiliates who are alleged co-conspirators), and any and all
past, present, and future parents, owners, subsidiaries, divisions, and departments.

      35.    "Tyson's Counsel" means the law firm of Axinn, Veltrop & Harkrider
LLP or other legal advisors retained for purposes of advising Tyson with respect to the Action.

      36.    "Unrelated Co-Conspirator" means any alleged co-conspirator in the
Action that does not satisfy the criteria for inclusion as a "Released Party" in the definition of
"Released Parties."

## II.     SETTLEMENT

### A.     Appointment of Class Counsel and Removal of "Interim" Status

The Parties agree to work cooperatively to ensure that the Court approves Class Counsel as class counsel (without the "interim" status) pursuant to Rule 23(g) prior to or contemporaneous with approval of the Settlement Agreement.

### B.     Performance By Tyson.

**1.     Settlement Payment.** Tyson shall pay $99 million ($99,000,000) in United States dollars, all in cash, as the Settlement Amount in settlement of the Action, inclusive of class recovery amounts, fees (including attorneys' fees and any other fees), and costs.  This Settlement Amount shall be paid by Tyson into the Escrow Account described herein within thirty calendar days of the later of (i) the Date of Preliminary Approval or (ii) the date on which Tyson is provided with wiring information for the Escrow Account.

**a.**     Tyson's payment to the Escrow Agent described herein shall be by wire transfer pursuant to instructions from the Escrow Agent or Class Counsel.

**b.**     The payment described in Section II(B)(1) shall constitute the total Settlement Amount and Tyson shall have no other payment obligations to the Class or owe any further amount under this Settlement Agreement, and the obligations described in Section II(B) shall continue so long as this Settlement Agreement remains in effect.

**c.**     Each Class Member shall look solely to the Net Settlement Amount for settlement and satisfaction, as provided herein, of all Released Claims pursuant to this Agreement.

**d.     Cooperation.**  Cooperation by Tyson is a material term of the Settlement Agreement and shall include the following categories of cooperation. All cooperation

under the Settlement Agreement is subject to approval (as needed) by the U.S. Department of Justice.

        i.     Tyson will use its best efforts to produce up to 3 then-current or former Tyson employees as witnesses live at any trial of the EUCPs' claims in the Action. At EUCP's request, one of those witnesses will include an employee with extensive experience in working with Agri Stats reports.

        ii.     Tyson shall not oppose or object to the depositions of six individuals, agreed to by the Parties prior to execution of this Agreement.

        iii.     To the extent that Tyson responds to discovery, produces documents, or provides proffers or other cooperation to other plaintiffs in the *In re: Broilers Antitrust Litigation,* it will serve or otherwise provide EUCPs a copy of such materials reasonably soon after such production to any other plaintiff.[1]

        iv.     Tyson agrees to use reasonable efforts to respond to a reasonable number of EUCPs' questions regarding and otherwise assist EUCPs to understand structured data produced by Tyson.

        v.     Tyson agrees to use reasonable efforts to authenticate documents and/or things produced in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations, affidavits, depositions, hearings and/or trials as may be necessary for the Action.

        vi.     Beyond the information to be produced by Tyson in discovery in the Litigation and in the Settlement Agreement, Tyson will consider reasonable

---

[1] This information shall include but is not limited to documents relating to competition in the Broilers industry that Tyson produces to the Department of Justice, Federal Trade Commission, U.S. Department of Agriculture, Commodity Futures Trading Commission, U.S. Securities & Exchange Commission, states' attorneys general, or other government agencies or regulators.

requests for additional relevant information about the Action from Class Counsel, taking into account the information it has or will produce in discovery, and whether providing the requested information will be burdensome, or will otherwise increase the cost of, or compromise, its defense of the Action against other plaintiffs.

vii.     By February 9, 2021, or such other time as the Parties may agree, Tyson's Counsel shall meet with EUCPs for 7 hours, and more if agreed by Tyson and EUCPs, at an agreed upon location or virtually if in-person attendance is not possible and provide at that meeting a reasonably detailed description of the principal facts known to Tyson that are relevant to the alleged conduct at issue in the Action, including facts previously provided to the DOJ or any other U.S. government investigative authority in response to subpoenas or otherwise relating to bid-rigging or price fixing involving Broilers

C.     **Release of Claims.**

1.     **Release.**  Upon the occurrence of the Effective Date, and in consideration of the valuable consideration set forth in this Agreement, the Releasing Parties shall be deemed to, and by operation of the Order and Final Judgment shall have, hereby fully, finally, and forever released, relinquished, and discharged the Released Parties of all Released Claims.

2.     **Covenant Not to Sue**.  EUCPs and each Settlement Class Member covenant not to sue, directly or indirectly, or otherwise seek to establish liability against Tyson for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of or related to the Released Claims, including, without limitation, seeking to recover damages or other relief relating to any of the Released Claims.  This Paragraph shall not apply to any action to enforce this Settlement Agreement.

      **3.**      **Full Release**. The Parties to this Agreement expressly agree and confirm that the Released Claims as set forth in Section I(B)(28) and the provisions of Section II(C) constitute a full and final release of the Released Parties by the Releasing Parties of the Released Claims, and that the Parties expressly agree that they intend for this Section II(C) to be interpreted as broadly as possible and to the fullest extent permitted by law.

      **4.**      **Waiver**. Upon the Date of Final Approval, EUCPs and each Settlement Class Member shall be deemed to have, and by operation of the Order and Final Judgment shall have, with respect to the subject matter of the Released Claims, waived the provisions, rights, and benefits of Section 1542 of the California Civil Code (providing "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.") and Section 20-7-11 of the South Dakota Codified Laws (providing "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.").

      EUCPs and each Settlement Class Member shall further be deemed to have, and by operation of the Order and Final Judgment shall have, expressly waived all similar provisions, statutes, regulations, rules, or principles of law or equity of any other state or applicable jurisdiction, or principle of common law. In connection with the waiver and relinquishment set forth in this Paragraph, EUCPs and each Settlement Class Member acknowledge that they are

aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Released Claims, but that it is their intention to release fully, finally, and forever all Released Claims, and, upon the Date of Final Approval, shall be deemed to have, and by operation of the Order and Final Judgment, shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, notwithstanding the discovery or existence of any such additional or different facts. EUCPs and each Settlement Class Member intend and, by operation of the Order and Final Judgment, shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the Settlement of which this waiver and release is a part.

D.      **Claims Administrator.** Pursuant to the Preliminary Approval Order, and subject to Court approval, Class Counsel shall engage a qualified Claims Administrator.  The Claims Administrator will assist with the settlement claims process as set forth herein.

1.      The Claims Administrator shall effectuate the notice plan approved by the Court in the Preliminary Approval Order, shall administer and calculate the claims, and shall oversee distribution of the Net Settlement Fund in accordance with the Plan of Distribution.

2.      The Claims Administrator also shall assist in the development of the Plan of Distribution and the resolution of any disputes regarding the Plan of Distribution.

E.      **Settlement Fund Administration.**  The Settlement Fund shall be administered pursuant to the provisions of this Settlement Agreement and subject to the Court's continuing supervision and control, until the funds in the Settlement Fund are fully distributed, as follows:

1. The Settlement Fund shall be established within an Escrow Account and administered by an Escrow Agent at a bank designated by Class Counsel and administered by an Escrow Agent designated by Class Counsel. Class Counsel, Tyson, and Tyson's Counsel agree to cooperate in good faith to prepare an appropriate escrow agreement in conformance with this Agreement.

2. None of Tyson, the Class or Class Counsel shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Class, obtaining approval of the Settlement, or administering the settlement. Class Counsel may request an order from the Court authorizing Class Counsel to withdraw from the Settlement Fund up to $400,000 to pay the costs for notice and administration of this settlement, provided however the Parties agree that no funds shall be advanced from the Settlement Fund prior to the date the Court approves a plan of notice and distribution. In the event that Court-ordered notice and administration costs exceed $400,000, EUCPs and Class Counsel may apply to the Court to pay such additional notice and administration costs from the Settlement Fund. Such costs of notice shall be nonrefundable in the event that, for any reason, the settlement is not finally approved. The costs for notice and administration of the settlement will be pro-rated with other settlements to the extent possible.

3. Under no circumstances will Tyson be required to pay more than the Settlement Amount pursuant to this Agreement and the settlement set forth herein. For purposes of clarification, the payment of any fee and expense award, the notice and administrative costs (including payment of any applicable fees to Escrow Agent) and any other costs associated with the implementation of this Settlement Agreement shall be exclusively paid from the Settlement Amount.

4.      Except for as provided in Section II(G)(10) or Section II(G)(11), No other funds shall be paid or disbursements made from the Settlement Fund without an order of the Court.

5.      The Escrow Agent shall, to the extent practicable, invest the funds deposited in the Settlement Fund in discrete and identifiable instruments backed by the full faith and credit of the United States Government, or fully insured by the United States Government or any agency thereof, including a United States Treasury Fund or a bank account that is either: (i) fully insured by the Federal Deposit Insurance Corporation; or (ii) secured by instruments backed by the full faith and credit of the United States Government. The proceeds of these accounts shall be reinvested in similar instruments at their then-current market rates as they mature.  All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund.  Any cash portion of the Settlement Fund not invested in instruments of the type described in the first sentence of this Section II(E)(5) shall be maintained by the Escrow Agent, and not commingled with any other funds or monies, in a federally insured bank account.  Subsequent to payment into the Settlement Fund pursuant to Section II(B)(1), neither Tyson nor Tyson's Counsel shall bear any responsibility or risk related to the Settlement Fund or the Net Settlement Fund.

6.      The Parties agree that the Settlement Fund and the Net Settlement Fund are each intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. In addition, the Escrow Agent, as administrator of the Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing tax

returns for the Escrow Account and paying from the Escrow Account any Taxes, as defined

below, owed with respect to the Escrow Account.  In addition, Class Counsel shall timely make,

or cause to be made, such elections as necessary or advisable to carry out the provisions of this

paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to

the earliest permitted date. Such election shall be made in compliance with the procedures and

requirements contained in such regulations. It shall be the responsibility of interim Class Counsel

to timely and properly prepare and deliver the necessary documentation for signature by all

necessary parties, and thereafter to cause the appropriate filing to occur.  All provisions of this

Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement

Fund being a "Qualified Settlement Fund" within the meaning of Treas. Reg. § 1.4688-1.

Interim Class Counsel shall timely and properly file all information and other tax returns

necessary or advisable with respect to the Settlement Fund (including without limitation the

returns described in Treas. Reg. § 1.468B-2(k), (1)).  Such returns shall reflect that all taxes

(including any estimated taxes, interest or penalties) on the income earned by the Settlement

Fund shall be paid out of the Settlement Fund.  Neither Tyson nor Tyson's Counsel shall have

any liability or responsibility of any sort for filing any tax returns or paying any Taxes with

respect to the Escrow Account.

      **7.**     All: (i) taxes on the income of the Settlement Fund ("Taxes"), and

(ii) expenses and costs incurred in connection with the taxation of the Settlement Fund

(including, without limitation, expenses of tax attorneys and accountants) shall timely be paid by

the Escrow Agent out of the Settlement Fund.  The Class Members shall be responsible for

paying any and all federal, state, and local income taxes due on any distribution made to them

pursuant to the Settlement provided herein.

8.      After the Date of Final Approval, the Net Settlement Fund shall be disbursed in accordance with a plan of distribution to be approved by the Court.  The Class Members shall look solely to the Net Settlement Fund for settlement and satisfaction of any and all Released Claims from Released Parties.  The timing of a motion to approve a plan of distribution of the Net Settlement Fund created by this Settlement Agreement shall be in the discretion of Class Counsel, and may be combined with a plan to distribute proceeds from other settlements in this Action.

F.      **No Reversion.** Tyson shall have no rights to reversion, except as provided in Sections II(G)(10) and II(G)(11) of this Settlement Agreement. In the event of a reversion, all funds not previously spent on administrative costs shall be returned to Tyson, including any interest accrued.

G.      **Approval of Settlement Agreement and Dismissal of Claims.**

1.      **Cooperation.**  EUCPs and Tyson shall use their best efforts to effectuate this Settlement Agreement, including cooperating in promptly seeking the Court's approval of the Settlement Agreement without modification of any of its material terms and conditions, the giving of appropriate class notice under Federal Rules of Civil Procedure 23, and the prompt, complete, and final dismissal with prejudice of the Action as to Tyson.

2.      **Settlement Class Certification.** EUCPs shall seek, and Tyson shall not object to, appointment of Class Counsel as Settlement Class Counsel for purposes of this settlement, and certification in the Action of a Settlement Class for settlement purposes only, defined as follows:

> The "Settlement Class" is consistent with the one alleged in the End-User Consumer Plaintiffs' Fifth Consolidated Amended Class Action Complaint, Aug. 7, 2020, ECF Nos. 3747 (redacted), 3748 (sealed), defined as: All persons and entities who indirectly

purchased fresh or frozen raw chicken (defined as whole birds (with or without giblets), whole cut-up birds purchased within a package, or "white meat" parts including breasts and wings (or cuts containing a combination of these), but excluding chicken that is marketed as halal, kosher, free range, or organic) from Defendants or alleged co-conspirators for personal consumption, where the person or entity purchased in California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Rhode Island (after July 15, 2013), South Carolina, South Dakota, Tennessee, Utah, and Wisconsin from January 1, 2009 (except for Rhode Island, which is from July 15, 2013) to July 31, 2019 .

3.    **Preliminary Approval**.  Within 14 business days of the Execution Date, EUCPs shall submit to the Court a motion, at such time deemed appropriate in the discretion of Class Counsel, requesting entry of an order preliminarily approving the settlement ("Preliminary Approval Order").  A reasonable time in advance of submission to the Court, the papers in support of Preliminary Approval shall be provided by Class Counsel to Tyson's Counsel for its review.  Tyson shall not oppose and shall reasonably cooperate in such motion. The proposed Preliminary Approval Order shall provide that, *inter alia*:

a.    the settlement proposed in the Settlement Agreement has been negotiated at arm's length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Class;

b.    the Claims Administrator is appointed;

c.    the proposed Class Notice meets the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, and constitutes the best notice practicable under the circumstances for settlement purposes;

d.    after Class Notice has been carried out, a hearing on the settlement proposed in this Settlement Agreement shall be held by the Court to determine whether the

19

proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court (the "Fairness Hearing");

        **e.**      Class Members who wish to exclude themselves from the settlement and the Settlement Agreement must submit an appropriate and timely request for exclusion;

        **f.**      Class Members who wish to object to this Agreement must submit an appropriate and timely written statement of the grounds for objection;

        **g.**      Class Members who wish to appear in person to object to this Agreement may do so at the Fairness Hearing pursuant to directions by the Court; and

        **h.**      all proceedings in the Action with respect to Tyson and EUCPs are stayed until further order of the Court, except as may be necessary to implement the settlement reflected in this Settlement Agreement or comply with the terms thereof.

        **4.**      **Class Notice.**  The Class Notice shall provide for a right of exclusion, as set forth in Section II(G)(3).  The Class Notice shall also provide for a right to object to the proposed Settlement.  Individual notice of the Settlement to all Class Members who can be identified through reasonable effort shall be mailed or emailed to the Class in conformance with a notice plan to be approved by the Court.   Class Counsel will undertake all reasonable efforts to notify potential Class Members of the settlement.  The timing of a motion to approve notice to the Class of this Settlement Agreement shall be in the discretion of Class Counsel, and may be combined with notice of other settlements in this Action.

        **5.**      **Cost of Class Notice**.  The costs of providing Class Notice to Class Members shall be paid by the Escrow Agent from the Settlement Fund pursuant to Section II(E)(2) and (3).

6.      **CAFA Notice.**  Within ten days of filing of this Settlement Agreement in court, Tyson will provide to the appropriate state officials and the appropriate federal official the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA").

7.      **Final Approval**.  If this Settlement Agreement is preliminarily approved by the Court, the Class shall seek entry of an Order and Final Judgment, which Tyson shall not oppose and in which it shall reasonably cooperate, that *inter alia*:

a.      finally approves this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions;

b.      determines that the Class Notice constituted, under the circumstances, the most effective and practicable notice of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

c.       confirms that Tyson has provided the appropriate notice pursuant to the Class Action Fairness Act, 28 U.S.C. § 1711 et seq. ("CAFA");

d.      orders that all claims made against Tyson in the Action, including in all class action complaints asserted by the EUCPs, are dismissed with prejudice and without further costs or fees;

e.      discharges and releases the Released Parties from all Released Claims up through and including the date of Preliminary Approval of this Settlement Agreement;

f.      enjoins EUCPs from suing, directly or indirectly, any of the Released Parties for any of the Released Claims;

**g.** requires Class Counsel to file with the clerk of the Court a record of potential Class Members that timely excluded themselves from the Class, and to provide a copy of the record to Tyson's Counsel;

**h.** incorporates the releases set forth in this Agreement and makes the releases effective as of the Effective Date as to the EUCPs and all Class Members that were not timely and validly excluded from the Class;

**i.** determines under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directs that the judgment of dismissal as to Tyson shall be final and entered forthwith, and stating:

i. Final judgment as to the EUCP action is entered in favor of Tyson; and

ii. Final judgment is granted in favor of the Released Parties on any Released Claim of a Class Member that did not file a timely notice for exclusion.

**j.** reserves to the Court exclusive jurisdiction over the settlement and this Settlement Agreement, including the administration and consummation of this Agreement;

**k.** orders that Settlement Funds may be disbursed as provided in the Final Approval Order or other order of the Court.

**8.** **Class Counsel Fees and Expenses; No Other Costs.**

**a.** Tyson shall have no responsibility for any other costs, including Class Counsel's attorneys' fees, costs, and expenses or the fees, costs, or expenses of any Plaintiff's or Class Member's respective attorneys, experts, advisors, or representatives,

provided, however, that with respect to the Action, including this Settlement Agreement, Tyson shall bear its own costs and attorneys' fees.

        **b.**     At their discretion and after proper notice to the Class and opportunity to object, Class Counsel may seek a court order granting attorneys' fees and expenses from the Settlement Fund, separately or in conjunction with other settlements. Any such attorneys' fees will be paid out of the Settlement Fund, and Tyson shall have no additional obligation to pay any fees or expenses of Class Counsel.

        **c.**     At their discretion and after proper notice to the Class and opportunity to object, Class Counsel may seek from the Settlement Fund, separately or in conjunction with other settlements, a court order granting reimbursement of costs and service awards for the work EUCPs performed on behalf of the class, and to compensate for the time and expense they have incurred in bringing this Action.  Any such payments for reimbursements of costs or service awards will not be paid until after the Effective Date.

        **d.**     The procedure for and the allowance or disallowance by the Court of any applications by Class Counsel for attorneys' fees and expenses or the expenses of or service awards to EUCPs to be paid out of the Settlement Fund are not part of or a condition to the Settlement set forth herein, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Agreement, and any order or proceeding relating to any application for attorneys' fees or expenses shall not operate to terminate or cancel this Agreement or the releases set forth herein, or affect or delay the finality of the judgment approving this settlement.

        **e.**     Within 15 days after any order by the Court awarding attorneys' fees, expenses, class representative service awards or expenses, the Escrow Agent shall pay the

approved attorneys' fees, costs, and service award via wire transfer from the Settlement Fund as directed by Class Counsel in accordance with and attaching the Court's order. In the event the Settlement does not become final or the amount of attorneys' fees, costs, or service award is reversed or modified, within 30 days of the order from a court of appropriate jurisdiction, Class Counsel will cause the difference in the amount paid and the amount awarded to be returned to the Settlement Fund.

9.      **When Settlement Becomes Final**.  The settlement contemplated by this Settlement Agreement shall become final on the date that all of the following conditions have been satisfied: (a) the Court has entered the Order and Final Judgment approving this Settlement Agreement, and all of its material terms and conditions, in accordance with Section II(G)(7), above, under Rule 23 of the Federal Rules of Civil Procedure and dismissing the Action as against Tyson with prejudice as to all Class Members and without costs; and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Settlement Agreement and entry of the Order of Final Judgment, as described in Section II(G)(7) above, has expired with no appeal having been filed or, if appealed, (i) approval of this Settlement Agreement and the Order and Final Judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review or (ii) the appeal is terminated without disrupting the decision of the Court to approve the Settlement Agreement.

10.      **Termination and Reduction.** If the Court declines to grant either preliminary or final approval to this Settlement Agreement or any material part hereof (as set forth in Sections II(G)(3) or (G)(7) above, respectively), or if the Court approves this Settlement Agreement in a materially modified form, or if after the Court's approval, such approval is

materially modified or set aside on appeal, or if the Court does not enter the Final Order and

Judgment, or if the Court enters the Final Order and Judgment and appellate review is sought and

on such review such Final Order and Judgment is not affirmed (collectively "Triggering

Events"), then Tyson and EUCPs shall each, in their respective sole discretion, have the option to

rescind this Settlement Agreement in its entirety by providing written notice of their election to

do so ("Termination Notice") to each other within thirty calendar days of such Triggering Event.

For purposes of this Section II(G)(10), a material modification includes but is not limited to any

modification to the settlement payments or the scope of the Released Claims pursuant to Section

I(B) and Section II(C).  If rescinded or terminated, this Settlement Agreement shall become null

and void, and, with the exception of any Settlement Funds used for notice purposes pursuant to

Section II(E)(2), in the event the settlement is not preliminarily or finally approved by the Court,

all other funds in the Escrow Account shall be returned to Tyson and the Parties' position shall

be returned to the status quo ante. In no way shall EUCPs have the right to rescind or terminate

this Settlement Agreement if the Court fails or refuses to grant any requested attorneys' fees, any

costs, or any awards to EUCPs.

      11.    **Opt-Out Claims.** In the event that a minimum of 10,000 of potential

members of the Settlement Class timely and validly exclude themselves from the Settlement

Class pursuant to the procedures approved by the Court, Tyson shall, in its sole discretion, have

the authority to rescind this Settlement Agreement in its entirety by providing written notice of

its election to do so (the "Opt-Out Termination Notice"). Tyson shall provide the Opt-Out

Termination Notice within fifteen calendar days of the date that the final list of potential Class

Members who timely and validly opt out is provided to Tyson. In the event that fewer than

10,000 potential Class Members request exclusion or from the Class or bring Opt-Out Claims,

neither those requests nor the Opt-Out Claims shall have any effect on this Settlement

Agreement except as provided in of this Settlement Agreement.

     **12.**     **No Admission.**

     **a.**     Tyson denies all allegations of wrongdoing in the Action and the

Litigation.  Nothing in this Settlement Agreement constitutes an admission by Tyson as to the

merits of the allegations made in the Action, or an admission by EUCPs or the Class of the

validity of any defenses that have been or could be asserted by Tyson. The Parties agree they will

not disparage one another or their claims or defenses, such as by making public statements to the

media that disparage either of the parties or their conduct in connection with the Action.

     **b.**     This Settlement Agreement, and any of its terms, and any

agreement or order relating thereto, shall not be deemed to be, or offered by any of the Settling

Parties to be received in any civil, criminal, administrative, or other proceeding, or utilized in

any manner whatsoever as, a presumption, a concession, or an admission of any fault,

wrongdoing, or liability whatsoever on the part of Tyson or other Released Parties; provided,

however, that nothing contained in this Section II(G)(12) shall prevent this Settlement

Agreement (or any agreement or order relating thereto) from being used, offered, or received in

evidence in any proceeding to approve, enforce, or otherwise effectuate the settlement (or any

agreement or order relating thereto) or the Order and Final Judgment, or in which the

reasonableness, fairness, or good faith of any Settling Party participating in the settlement (or

any agreement or order relating thereto) is in issue, or to enforce or effectuate provisions of this

Settlement Agreement or the Order and Final Judgment.  This Settlement Agreement may,

however, be filed and used in other proceedings, where relevant, to demonstrate the fact of its

existence and of this settlement, including but not limited to Tyson filing the Settlement

Agreement and/or the Order and Final Judgment in any other action that may be brought against it in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, waiver, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13. **Final Judgment as to Other Defendants.** EUCPs have been provided with a copy of the agreement entered into by certain Defendants dated February 25, 2020 (hereinafter referred to as "Defendants' Agreement"). The defined terms in Defendants' Agreement shall have the same meaning when used in this Settlement Agreement. EUCPs agree that notwithstanding anything to the contrary contained in this Settlement Agreement, EUCPs shall reduce the dollar amount collectable from the parties to the Defendants' Agreement pursuant to any Final Judgment by a percentage equal to the Sharing Percentage of Tyson, calculated pursuant to Section 4 and Exhibits A and B of Defendants' Agreement (as illustrated by the Appendix to Defendants' Agreement) as if Tyson had not settled, had been found liable on the claim, and was a Sharing Party with respect to the Final Judgment. EUCPs agree that this undertaking is also for the benefit of any Defendant that is a party to the Defendants' Agreement and that this undertaking may be enforced by any or all of such Defendants as third party beneficiaries hereof. Any ambiguity in this Paragraph 13 or inconsistency between this Settlement Agreement and the Defendants' Agreement shall be resolved in favor of the Defendants' Agreement, including, without limitation, Sections 6.D.1 and 6.D.2 thereof. EUCPs further represent and warrant that they have not reached any agreement to provide any portion of the settlement proceeds provided hereunder to any person or entity that is not explicitly identified as a releasor in this Settlement Agreement, except for proceeds received by EUCPs' attorneys for payment of attorneys' fees. EUCPs shall use their best efforts to ensure that the Settlement

Agreement constitutes a Qualified Settlement under Defendants' Agreement and to effectuate the intent of the parties to the Defendants' Agreement to treat the Settlement Agreement as a Qualified Settlement, including (as may be necessary) to make any amendments to the longform settlement agreement to reflect the intent to treat the Settlement Agreement as a Qualified Settlement.

**14.** **Litigation Standstill.** EUCPs shall cease all litigation activities against Tyson in the Action except to the extent expressly authorized in this Settlement Agreement. Tyson and its counsel shall cease all litigation activities against EUCPs in the Action, except in connection with providing the cooperation provided for in Section II(B). None of the foregoing provisions shall be construed to prohibit EUCPs from seeking appropriate discovery from non-settling Defendants or Unrelated Co-Conspirators.

## III. MISCELLANEOUS

**A.** **Entire Agreement.** This Settlement Agreement shall constitute the entire agreement between the Class and Tyson pertaining to the settlement of the Action against Tyson and supersedes any and all prior and contemporaneous undertakings of the Class and Tyson in connection therewith. All terms of the Settlement Agreement are contractual and not mere recitals.

**B.** **Inurement.** The terms of the Settlement Agreement are and shall be binding upon, to the fullest extent possible, each of the Releasing Parties and the Released Parties, and upon all other Persons claiming any interest in the subject matter hereto through any of the Parties, Releasing Parties, or Released Parties, including any Class Members.

**C.** **Modification and Waiver.** This Settlement Agreement may be modified or amended only by a writing executed by the Class (through Class Counsel) and Tyson, subject (if

after preliminary or final approval) to approval by the Court. Amendments and modifications may be made without notice to the Class unless notice is required by law or by the Court. The waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party.

     **D.**    **Drafted Mutually.**  For the purpose of construing or interpreting this Settlement Agreement, the Class and Tyson shall be deemed to have drafted it equally, and it shall not be construed strictly for or against any party.

     **E.**    **Governing Law.**  Any disputes relating to the Parties' agreement shall be governed by Illinois law without regard to conflicts of law provisions and will be mediated in good faith with Judge Daniel Weinstein (ret.).

     **F.**    **Jurisdiction.**  This Settlement Agreement is subject to the continuing and exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein. In the event that the provisions of Sections II(C)(1) – (3) are asserted by any Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action, or proceeding, it is hereby agreed that such Released Party shall be entitled to a stay of that suit, action, or proceeding until the mediation required by Section III(E) is complete and, if the matter is not resolved by mediation, the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions. If for any reason this Settlement Agreement is rescinded, terminated or fails to become effective, then, in such event, nothing in this Settlement Agreement or with regard to any conduct of Tyson or Tyson's Counsel pursuant to any

obligations Tyson has pursuant to the Agreement shall constitute or are intended to be construed as any agreement to personal jurisdiction (general or specific) or subject matter jurisdiction so as to confer the jurisdiction of the Court over Tyson, nor shall it constitute any waiver of any defenses based on personal or subject matter jurisdiction.

G.     **Counterparts.**  This Settlement Agreement may be executed in counterparts by Class Counsel and Tyson's Counsel, each of which shall be deemed an original and all of which taken together shall constitute the same Settlement Agreement.  A facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

H.     **Represented by Counsel.**  EUCPs, the Class, and Tyson acknowledge that each have been represented by counsel, and have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so and are not relying on any representation or warranty by the other party other than as set forth herein. Therefore, the Settling Parties and their respective counsel agree that they will not seek to set aside any part of the Settlement Agreement on the grounds of mistake.  The Parties agree that this Settlement Agreement was negotiated in good faith by the Parties, and reflects a settlement that was reached voluntarily after consultation with competent counsel and the participation of a neutral mediator, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

I.     **Authorization.**  Each of the undersigned attorneys represents that he or she is fully authorized to enter into and execute this Settlement Agreement, subject to Court approval; the undersigned Class Counsel represent that they are authorized to execute this Settlement Agreement on behalf of EUCPs and the Class; and the undersigned Tyson's Counsel represent that they are authorized to execute the Settlement Agreement on behalf of Tyson.

J.      **Privilege.**

**1.**      Nothing in this Settlement Agreement, settlement, or the negotiations or proceedings relating to the foregoing is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the accountants' privilege, the attorney-client privilege, the joint defense privilege, or work product immunity.

**2.**      The Parties agree to continue to maintain the confidentiality of all settlement discussions, and materials exchanged during the settlement negotiation. However, Tyson and EUCPs can inform other parties to this Action that they have reached a settlement agreement, the amount of the settlement, and the cooperation provided for in Section 7 of this Settlement Agreement. Moreover, Tyson may, consistent with its obligations under federal securities laws and other legal obligations, disclose the fact of settlement, the amount of settlement and other terms of the Settlement Agreement in required filings.  EUCPs, Class Members and Class Counsel shall not share any material learned through Tyson's cooperation pursuant to Section II(B) of this Settlement Agreement, directly or indirectly, with any other plaintiff or plaintiff group in the Litigation unless (i) authorized to do so in writing by Tyson; (ii) is or becomes generally available to the public other than directly or indirectly as a result of a breach of this Agreement by the EUCPs; (iii) was within the EUCPs' possession before being furnished by or on behalf of Tyson; (iv) is or becomes available to the EUCPs in the course of discovery in connection with any litigation; (v) is or becomes available to the EUCPs from a source other than Tyson; or is independently developed by EUCPs. This provision is not intended to preclude EUCPs from using information learned during this cooperation in connection with prosecuting their claims against the remaining defendants, so long as the

information falls outside the scope of the Court's Memorandum Opinion and Order, dated Sept. 22, 2020 (ECF No. 3835), which temporarily stayed any "bid-rigging" claims.

**K.** **No Unstated Third-Party Beneficiaries**.  Except as provided in Section II(G)(13), no provision of this Agreement shall provide any rights to, or be enforceable by, any Person that is not a Released Party, EUCP, Settlement Class Member, or Class Counsel.

**L.** **Breach.**  This Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Agreement. Any breach of this Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.  The waiver by any Party of any particular breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement

**M.** **Notice.**  Any notice required pursuant to or in connection with this Settlement Agreement shall be in writing and shall be given by: (1) hand delivery; (2) registered or certified mail, return receipt requested, postage prepaid; or (3) UPS or similar overnight courier, addressed, in the case of notice to any Plaintiff or Class Member, to Class Counsel at their physical addresses set forth below, with a copy by email at the email addresses set forth below and, in the case of notice to Tyson, to its representatives at their physical addresses set forth below, with a copy by email at the email addresses set forth below,, or such other physical or email addresses as Tyson or Class Counsel may designate, from time to time, by giving notice to all Parties in the manner described in this Section III(K).

For End-User Consumer Plaintiffs:

      Steve W. Berman
      HAGENS BERMAN SOBOL SHAPIRO LLP
      1301 Second Avenue, Suite 2000
      Seattle, Washington 98101
      (206) 623-7292
      steve@hbsslaw.com

      Shana E. Scarlett
      HAGENS BERMAN SOBOL SHAPIRO LLP
      715 Hearst Avenue, Suite 202
      Berkeley, California 94710
      Telephone: (510) 725-3000
      Facsimile: (510) 725-3001
      shanas@hbsslaw.com

For Tyson

      Rachel J. Adcox
      AXINN VELTROP & HARKRIDER LLP
      950 F Street NW, Suite 700
      Washington, DC 20004
      (202) 721-5406
      radcox@axinn.com

      -and-

      Eli J. Glasser
      Executive Counsel, Antitrust and Global Competition
      TYSON FOODS, INC.
      2200 Don Tyson Parkway
      Springdale, Arkansas 72762
      (479) 290-3483
      Eli.Glasser@Tyson.com

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized

representatives, have agreed to this Settlement Agreement as of the Execution Date.

Dated:  February 24, 2021

_____

Steve W. Berman
Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Shana E. Scarlett
Rio S. Pierce
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
rios@hbsslaw.com

Kit A. Pierson
Brent W. Johnson
Benjamin D. Brown
Alison Deich
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
kpierson@cohenmilstein.com
bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com
adeich@cohenmilstein.com

Daniel H. Silverman
COHEN MILSTEIN SELLERS & TOLL, PLLC
190 South LaSalle Street, Suite 1705

Chicago, IL 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
dsilverman@cohenmilstein.com

***Counsel for End-User Consumer Plaintiffs***

Dated: February 24, 2021

Rachel J. Adcox (#1001488)
Daniel K. Oakes (*Pro Hac Vice*)
Kenina J. Lee (*Pro Hac Vice*)
AXINN, VELTROP & HARKRIDER LLP
950 F Street NW, Suite 700
Washington, DC 20004
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
radcox@axinn.com
doakes@axinn.com
klee@axinn.com

John M. Tanski (*Pro Hac Vice*)
Jarod G. Taylor (*Pro Hac Vice*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
Telephone: (860) 275-8100
Facsimile: (860) 275-8101
jtanski@axinn.com
jtaylor@axinn.com

Nicholas E.O. Gaglio (*Pro Hac Vice*)
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
Telephone: (212) 728-2200
Facsimile: (212) 261-5654
ngaglio@axinn.com

35

Jordan M. Tank
LIPE LYONS MURPHY NAHRSTADT &
PONTIKIS, LTD.
230 West Monroe, Street, Suite 2260
Chicago, IL 60606
Telephone: (312) 702-0586
Facsimile: (312) 726-2273
jmt@lipelyons.com

***Counsel for Defendants Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Breeders, Inc., and Tyson Poultry, Inc.***