**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | Case No. 1:16-cv-08637 |
| | Honorable Thomas M. Durkin |
| This Document Relates To: | |
| *All End-User Consumer Plaintiff Actions* | |
| JOHN ANDREN, | |
| Objector. | |

**OBJECTOR ANDREN'S MEMORANDUM OF LAW IN SUPPORT OF HIS
INTERROGATORIES RELEVANT TO END-USER CONSUMER PLAINTIFFS' AND
REPLY IN SUPPORT OF HIS MOTION TO COMPEL RESPONSES**

# Table of Contents

Table of Contents ...................................................................................................................... ii

Table of Authorities ................................................................................................................. iii

Introduction ............................................................................................................................... 1

I.      The minimal burden of discovery is justified. ............................................................... 2

        A.      The interrogatories are not unduly burdensome, but proportional given the high stakes of EUCPs' fee $68 million fee request. ........................................... 2

              1. Andren's interrogatories are directly relevant to considerations courts in this circuit must evaluate to award a reasonable fee award. .............................. 3

              2. Andren's request is further supported by counsel's implausible factual assertions, which merit adversarial testing. ...................................................... 6

              3. EUCP counsel misconstrue Andren's interrogatories. ................................... 7

        B.      Plaintiffs have access to the files of their counsel, and such discovery has been granted to other objectors. ........................................................................ 8

        C.      Objectors' counsel has a track record of protecting class members in this district and elsewhere. ..................................................................................... 10

II.     Andren's discovery request, first served at the objection deadline, are timely. EUCP's belated attempt to seek a protective order is not. ........................................................ 10

Conclusion .............................................................................................................................. 12

Certificate of Service .............................................................................................................. 13

## Table of Authorities

**Cases**

*Bowling v. Pfizer, Inc.*,
　159 F.R.D. 492 (S.D. Ohio 1994) ...................................................................................... 5

*Budinich v. Becton Dickinson & Co.*,
　486 U.S. 196 (1988) ........................................................................................................... 2

*In re Burlington N. Employment Practices Litig.*, No. 78 C 269,
　1984 WL 1041 (N.D. Ill. July 20, 1984) ........................................................................... 5

*Eubank v. Pella Corp.*,
　753 F.3d 718 (7th Cir. 2014) ............................................................................................. 8

*Goldberger v. Integrated Res., Inc.*,
　209 F.3d 43 (2d Cir. 2000) ................................................................................................ 4

*Jianmin Jin v. Shanghai Original, Inc.*,
　990 F.3d 251 (2d Cir. 2021) .............................................................................................. 8

*Kimberly-Clark Corp. v. Tyco Healthcare Retail Grp.*, No. 05-C-985,
　2007 U.S. Dist. LEXIS 5974 (E.D. Wis. Jan. 26, 2007) ................................................... 9

*In re Mercury Interactive Corp. Secs. Litig.*,
　618 F.3d 988 (9th Cir. 2010) ........................................................................................... 11

*Packman v. Chicago Tribune Co.*,
　267 F.3d 628 (7th Cir. 2001) ........................................................................................... 11

*Pearson v. Target Corp.*,
　968 F.3d 827 (7th Cir. 2020) ........................................................................................... 10

*Redman v. RadioShack Corp.*,
　768 F.3d 622 (7th Cir. 2014) ....................................................................................... 8, 10

*Reynolds v. Ben. Nat'l Bank*,
　288 F.3d 277 (7th Cir. 2002) ....................................................................................... 8, 10

*Skelton v. General Motors Corp.*,
　860 F.2d 250 (7th Cir. 1988) ......................................................................................... 8-9

*Stumpf v. PYOD, LLC*, No. 12 C 4688,
　2013 U.S. Dist. LEXIS 152093 (N.D. Ill. Oct. 23, 2013) ................................................. 5

*In re Synthroid Marketing Litigation*,
　264 F.3d 712 (7th Cir. 2001) ("*Synthroid I*"). ................................................... 3, 4, 5, 6, 7

*In re Trans Union Corp. Privacy Litig.*,
  629 F.3d 741 (7th Cir. 2011) ................................................................................................8

*United States v. Bonner*,
  302 F.3d 776 (7th Cir. 2002) ................................................................................................9

*United States ex rel. Derrick v. Roche Diagnostics Corp.*, No. 14 CV 04601,
  2019 U.S. Dist. LEXIS 69681 (N.D. Ill. Apr. 24, 2019) ......................................................9

*West v. Miller*,
  2006 WL 2349988, 2006 U.S. Dist. LEXIS 56243 (N.D. Ill. Aug. 11, 2006) ...................11

**Rules and Statutes**

Fed. R. Civ. Proc. 23(b)(2) ...................................................................................................2

Fed. R. Civ. Proc. 23(h) .......................................................................................................8

Rule 23 Advisory Committee Notes (2003) .......................................................................11

### Introduction

End-User Consumer Plaintiffs (EUCPs) cite no authority for the proposition that objectors are not entitled to discovery; they admit no such bar exists. EUCPs' Mem. (Dkt. 5316, "Opp."), at 2. Discovery remains open in this case. Nor can EUCPs forthrightly argue that discovery concerning a $68 million fee request should be denied when it seeks evidence that the Seventh Circuit requires courts to examine. Nor can EUCPs explain why class members should not be entitled to test dubious factual claims that EUCP counsel themselves first offered on December 6, 2021—four weeks after the objection deadline and four weeks after Andren timely served his first set of interrogatories.

Instead, EUCPs argue against Andren's requests primarily by misrepresenting them. This is how—to hear EUCPs tell it—Andren has served interrogatories that are supposedly intrusively burdensome but at the same time seek mostly "public court dockets." Opp. 2. But Andren's *actual* interrogatories are a matter of record (Dkts. 5294-1, -6): he seeks information in the custody of EUCPs and their counsel about the competitive rates actually bid and risks actually borne by antitrust plaintiffs' counsel. Virtually none of this information is public, but neither is it a state secret.

EUCP counsel, through EUCPs, are asking absent class members to pay them $68 million. Absent class members have a compelling interest as a matter of equity and under Rule 23(e)(2) to seek discovery that would assist them in determining what would be a fair fee award and to challenge purported facts that EUCPs injected late into these proceedings. Andren's interrogatories are narrowly tailored, in fact, to obtain the information necessary for the Court to evaluate the fee request under Circuit law. His first set of interrogatories precisely mirror discovery requests expressly granted to an objector by Judge Holderman in *Capital One TCPA*, confirming their relevancy to fee analyses in this Circuit, and his second set of interrogatories addresses contentions made by class counsel in support of their fee application on December 7, after the objection deadline. As a matter of equity, EUCP counsel cannot be permitted to hide behind the fiction that the EUCPs, who request $68 million in fees and costs for counsel under a legal standard that makes the information that Andren requests in his interrogatories relevant, lack access to their counsel's fee related records. Such a position impairs

class members' ability to protect their interests and, in the process, makes a mockery of adversarial justice.

The Court should deny EUCPs' untimely attempt to secure a *de facto* protective order and grant Andren's motion to compel adequate responses to his interrogatories.[1]

I. **The minimal burden of discovery is justified.**

   A. **The interrogatories are not unduly burdensome, but proportional given the high stakes of EUCPs' fee $68 million fee request.**

As EUCPs note, the Federal Rules and Committee Comments expressly allow objector discovery. While the Court must weigh the "cost and delay" of discovery (Advisory Committee Notes on 2003 Amendments to Rule 23(b)(2)), these considerations militate strongly in favor of allowing discovery to proceed. Contrary to EUCPs' suggestion otherwise (Opp. 2), fee discovery cannot threaten the finality of the settlements. The settlement becomes final following the time for appeals of the final judgment granting approval of the settlement itself—not any fee award. *E.g.*, Dkt. 5250-1 at 24; *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988). Class members have been asked by their counsel to foot a $68 million bill, which appears to far exceed the standard award in such a case, far exceed class counsel's own past fee requests, and far exceed the Seventh Circuit's standards. Andren Objection, Dkt. 5182 at 6-13. While the requests are highly relevant to issues that EUCPs themselves sought to belatedly address on the record, the class could not be prejudiced by discovery. No date for distribution of payments to class members has been fixed; class counsel noticed the class that payments may be combined for efficiency with additional forthcoming settlements. Payment may not even be possible if another objector appeals final approval of the settlements themselves, which stays operation of all the agreements. Given the high stakes of the fee request and the relevance of the

---

[1] EUCPs write a lengthy footnote largely complaining about Andren's two-page filing confirming that his motion was not moot. Opp. 1 n.1. Andren made this filing to confirm that his motion was not mooted either by the Court's decision to postpone decision on fee award of EUCPs non-substantive objection-laden purported responses to his first set of interrogatories. Dkt. 5308. The filing simply notes these facts and confirms the vitality of Andren's motion. It was written tersely and without substantive argument specifically so as to avoid spurious arguments that EUCPs were somehow prejudiced by not understanding Andren's motion to compel remains live.

requests under Seventh Circuit law, the benefits of discovery easily outweigh the minimal costs and delay.

> 1. **Andren's interrogatories are directly relevant to considerations courts in this circuit must evaluate to award a reasonable fee award.**

Andren's interrogatories request information that is directly relevant to EUCP counsel's attorneys' fee request for their work on this case. EUCPs are flat wrong that "information about counsel's other cases" is irrelevant to the court's evaluation of its fee request. Opp. 9. In fact, the requested information is directly relevant under binding Circuit precedent.

In *In re Synthroid Marketing Litigation*, the Seventh Circuit held that "[t]he market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." 264 F.3d 712, 721 (7th Cir. 2001) ("*Synthroid I*"). The Court suggested several "benchmarks" to determine a market fee: (1) actual fee contracts between plaintiffs and their attorneys; (2) data from similar common fund cases where fees were privately negotiated; and (3) information from class-counsel auctions. *Synthroid I*, 264 F.3d at 719-20.

Andren's interrogatories request this very information from EUCP counsel to enable this Court to rule on EUCP counsel's fee request in this case. Specifically, Andren requested (i) information from EUCP counsel's bids or auctions in other cases (Interrogatory Nos. 1-2, 9), (ii) a narrow set of information regarding how EUCP counsel decided to make such bids, stop making such bids, or altered its litigation strategy as a result of its bidding practices, based on representations set forth in Mr. Berman's declaration submitted in response to Andren's objection (Interrogatory Nos. 10-12), and (iii) risk of nonpayment (Interrogatory Nos. 3-6).

The risk of nonpayment for Hagens Berman and Cohen Milstein in antitrust cases such as this can be determined based on (i) the lodestar amount and expenses incurred in cases in which counsel did not recover anything, and (ii) the lodestar amount, expenses incurred, and fees and expenses actually awarded. Andren's Interrogatory Nos. 3-6 are narrowly tailored to request that very

information. As other courts have noted, not every common fund case has substantial risk; some, at least in the world of securities class actions, have *no* appreciable risk of non-recovery because "virtually all cases are settled." *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). As a result, courts must guard against the "routine[] *overcompensat[ion]* for such things as contingency risk." *Id.* at 57 (emphasis added). The court must be on guard against this possibility on behalf of the class here, and Andren's interrogatories are intended to elicit the information necessary, as recognized by *Synthroid I*, for it to do so.

   Andren believes the information he seeks regarding EUCP counsel's lodestar and expense information in antitrust cases they have won and lost will demonstrate that class counsel's fee request would overcompensate them for the actual risk they assumed. Again, "[t]he market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, … in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Synthroid*, 264 F.3d at 721 (7th Cir. 2001). Class counsel's history of antitrust litigation relates to both "the risk of nonpayment a firm agrees to bear" and "the amount of work necessary to resolve the litigation." Plaintiffs' attorneys can pick and choose which cases to put resources into, and will naturally choose the cases that are more likely to have a large settlement—just like a blackjack player will double down on an 11, but not a 12. Like any rational economic actor, EUCP counsel—or any class counsel—is unlikely to devote tens of thousands of hours to a case it does not anticipate it will be able to settle. The decision to invest an hour of an attorney's time is made on an ongoing basis as the case continues—and the decision to invest time is considerably less risky after certain milestones in the case are reached, such as surviving a motion to dismiss or a motion for summary judgment. Understanding the lodestar that EUCP counsel invested in previous cases they have lost compared to the lodestar received in successful cases will demonstrate whether EUCP counsel is being compensated (or overcompensated) for the risk they purportedly assumed here. It also can show whether EUCP counsel's proclaimed lodestar here is bloated to an unwarranted degree suggesting inclusion of unnecessary hours intended to create the illusion of a lower multiplier. Multipliers entail "a retroactive calculation of the probability of success as measured at the beginning of litigation" and should not be reduced to a matter of "mathematical

happenstance." *Stumpf v. PYOD, LLC*, No. 12 C 4688, 2013 U.S. Dist. LEXIS 152093, at *14 (N.D. Ill. Oct. 23, 2013). That retroactive calculation is best done with empirical evidence. Andren's first set of interrogatories are modeled closely upon discovery granted to an objector in another class action settlement. *In re Capital One TCPA Litig.*, No. 12-cv-10064, Dkt. 209 (N.D. Ill. Oct. 30, 2014) (minute order granting objector's motion to lift stay to obtain discovery regarding class counsel's fee request) (attached as Ex. 1, motion attached as Ex. 2); *see also Bowling v. Pfizer, Inc.*, 159 F.R.D. 492, 498 (S.D. Ohio 1994) (granting objectors' motion for discovery regarding attorneys' fees).

EUCP counsel rely on an unpublished district court case observing that what an attorney charged in the past is not relevant to a fee award. *See* Opp. 9 n.38 (quoting *In re Burlington N. Employment Practices Litig.*, No. 78 C 269, 1984 WL 1041 (N.D. Ill. July 20, 1984)). That district-court case predated *Synthroid I* by nearly 20 years and does not override current Seventh Circuit precedent. In any event, Andren's discovery is not seeking EUCP's past billing rates, nor is he arguing that past billing rates or awards standing alone should govern this Court's fee analysis. Rather, it is the *risk* evidenced by EUCP counsel's past lodestar and expense amounts, compared to their actual fee awards in successful and unsuccessful cases that is necessary for this Court to consider. And, of course, EUCP counsel's own *actual* assessment of the market in antitrust class actions as evidenced by their previous fee bids and other proposals is also a necessary consideration. It is a far better indicator of what plaintiffs' attorneys are willing to work for than mostly uncontested fee awards from courts in "other antitrust cases— litigated by different attorneys for different clients in different circumstances." *Cf.* Opp. 9. Indeed, *Synthroid I* provides the relevant considerations. Simply relying on the fees awarded by courts within the Circuit involving a range of different circumstances does not meet its standard.

While the district court need not don "green-eyeshades," it must comply with Seventh Circuit law, which requires attorneys' fees to mimic those that would be reached competitively. Only the information requested by Andren—EUCP counsel's actual fee bids and other proposals and data showing their actual risk—can fulfill this obligation.

> **2.     Andren's request is further supported by counsel's implausible factual assertions, which merit adversarial testing.**

Among the Andren's discovery requests are interrogatories that seek to test EUCP counsel's seemingly implausible assertions made in the Declaration of Steve W. Berman ("Berman Declaration") (Dkt. 5250), filed on December 6, 2021. Several statements made in the Berman Declaration address the relevance of fee bids in determining market rates under applicable law, contradicted the record in previous cases, and appeared self-serving with respect to the fee request pending before the Court. *See* Declaration of M. Frank Bednarz and Offer of Proof (Dkt. 5294-1). Andren served his second set of interrogatories specifically to test Mr. Berman's assertions through an adversarial process that this Court otherwise would lack the benefit of in its analysis of the fee award.

Andren's interrogatories focus on those assertions in the Berman Declaration that are most directly related to the market rate for attorneys' fees and the risk of nonpayment. *See Synthroid I*, 264 F.3d at 719-21. For example, Interrogatory Nos. 14-15 test Mr. Berman's assertion that Hagens Berman belatedly learned that the attorneys' fee bid in a 2010 case was below market. Mr. Berman suggests that bids made in Ninth Circuit courts cannot be relied upon because that circuit's 25% benchmark for attorneys' fees require bidding *less* than this percentage, which he claims to be below-market. Dkt. 5250 at 7. Yet Hagens Berman continues to seek appointment in cases within the Ninth Circuit, calling this into question. Dkt. 5294-1 at 5. Interrogatory Nos. 10-11 and 13 seek to understand the influence that other firms had on Hagens Berman's purported decision not to compete with other plaintiffs' firms by submitting competitive bids as part of their application to be appointed lead counsel, as this information is directly relevant to the market. Hagens Berman attorneys themselves discussed seemingly anti-competitive tactics employed by other law firms in the *Lithium Batteries* case. Dkt. 5294-1 at 6. Interrogatory Nos. 7-9 seek a fuller understanding of Hagens Berman's *ex ante* assessment of the market and the competitive nature of their fee awards, particularly in relation to their actual lodestar in successful and unsuccessful cases. Finally, Interrogatory No. 12 seeks to test Hagens Berman's assertion that its attorney fee bids affect its litigation strategy to the detriment of the class, particularly with respect to its payment of retained experts.

Andren served these requests in response to alleged facts that EUCP counsel put at issue and thus acknowledge are relevant to the Court's fee determination. Before the Court takes that information into account, Andren should have an opportunity to provide an adversarial presentation and present a fuller context for Mr. Berman's assertion to the Court.

### 3. EUCP counsel misconstrue Andren's interrogatories.

EUCPs argue simultaneously that "Andren … could find nearly all of it on public court dockets" (Opp. 2) and that the requests would require "custodial searches of each and every one" of the attorneys who worked at class counsel's firms. Opp. 11. Neither is true. While Andren seeks non-public information, he does not seek privileged or especially burdensome information.

EUCPs cite Andren's reliance on "two fee bids submitted by class counsel" as somehow eliminating the need for discovery, but these examples are the exception, not the rule. In each case—*Lithium Batteries* and *Optical Disk Drive Products*—the fee bid only became unsealed after the heroic effort of persistent objectors who won successful Ninth Circuit appeals. Without the participation of these objectors, neither bid would have been publicly filed. Conspicuously, EUCPs do not affirm that these are the *only* examples of bids submitted in antitrust cases. Therefore, Andren's discussion of these two bids—which show competitive rates much lower than what class counsel requests as the "market rate"—suggest discovery would be fruitful.

EUCPs also complain about the interrogatories' broad definition of "FEE PROPOSAL," which they claim would extend to "internal emails between counsel about the right amount of fees to seek in a case." Opp. 11 n.46. The interrogatories do no such thing because they only request "FEE PROPOSALS…**submitted to a court, plaintiffs, or prospective client**." Dkt. 5294-2 at 4 (emphasis added). Andren seeks, for example, retention agreements and proposals to courts—not internal emails among counsel. The Seventh Circuit has flagged both of these sorts of evidence as suggestive of market-approximating attorneys' fees. *Synthroid I*, 264 F.3d at 719-20.

EUCPs also suggest that the material Andren seeks might be privileged or confidential, but they provide no argument for this suggestion. Andren's requests concerning class counsel's billing on

other cases singly seeks the information that *Redman v. RadioShack* requires to be disclosed to objectors for compliance with Rule 23(h). 768 F.3d 622, 638 (7th Cir. 2014) (holding that objectors were "handicapped in objecting because the details of class counsel's hours and expenses were submitted" after the objection deadline). Even before Rule 23(h), there was "no sound basis" for "paralyz[ing] objectors" by depriving them of fee information. *See Reynolds v. Ben. Nat'l Bank,* 288 F.3d 277, 284, 286 (7th Cir. 2002). Andren requests this information from other cases, but the point is it cannot be privileged or confidential when Rule 23 requires it as a matter of course.

For all these reasons, plaintiffs should be compelled to provide responses to the interrogatories as Andren has written them—and not the fanciful and contradictory requests EUCPs imagine.

### B. Plaintiffs have access to the files of their counsel, and such discovery has been granted to other objectors.

EUCPs rely on the legal fiction that plaintiffs are the parties at interest to class counsel's $68 million fee request. Of course, this is not how class actions work. "Class actions are the brainchildren of the lawyers who specialize in prosecuting such actions, and in picking class representatives they have no incentive to select persons capable or desirous of monitoring the lawyers' conduct of the litigation." *Eubank v. Pella Corp.*, 753 F.3d 718, 719-20 (7th Cir. 2014); *see also In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 744 (7th Cir. 2011) (explaining that special master gave little weight to fee agreements "recognizing that named plaintiffs are usually cat's paws of the class lawyers"); *Jianmin Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 263 (2d Cir. 2021) ("When Congress enacted Rule 23(g) governing the appointment of class counsel, it codified this judicial practice, taking a step towards the fuller acknowledgment that it is class counsel, not the class representatives, who are truly litigating the class's claims") (cleaned up). "When a lawyer lays claim to a portion of the kitty, he becomes a real party in interest." *Reynolds*, 288 F.3d at 288. Moreover, counsel for a certified class are supposed represent the interests of all class members, including objectors. It would be perverse to disadvantage those class members by shielding discovery from their purported attorneys against their interests. Indeed it would disadvantage all class members whose relationship with class counsel turns directly adverse when counsel becomes a "claimant against the fund." *Skelton v. General Motors Corp.*, 860 F.2d

250, 253 (7th Cir. 1988). That demands "carefully monitor[ing]" and "scrutinizing the fee applications." *Id.*

The facts concerning billing and fee proposals do not really belong to other clients, but travel with the attorneys. *Contra* Opp. 6. This information is in the possession of class counsel, the real party at issue at this time. Plaintiffs, after all, had no trouble marshalling purported facts about their counsel's prior engagements in their December 6 filings—when EUCPs sought to use these as a sword against objectors' arguments. Plaintiffs (or more accurately, class counsel) had no trouble opining about what Hagens Berman supposedly learned in *Optical Disk Drive Products* and *Lithium Batteries*. Dkt. 5250 at 7. Whether or not plaintiffs have formal access to these facts, the real parties at interest—the attorneys who have moved for $68 million—clearly *do* have access, and inappropriately seek to selectively marshal it in support of their own application. Andren seeks to challenge these factual contentions, so class counsel cannot now hide behind the legal fiction of plaintiff-directed litigation as a shield against the door class counsel opened. In other contexts—whether the Fifth Amendment or attorney-client privilege, courts do not allow parties to selectively invoke these protections. "Reliance upon counsel's opinions is a waiver of privilege because to hold otherwise would be inherently unfair; it would allow a party to use privileged material as a 'sword' to attack the opposing party's allegations of bad faith, while hiding the basis of its good faith belief behind the 'shield' of privilege." *United States ex rel. Derrick v. Roche Diagnostics Corp.*, No. 14 CV 04601, 2019 U.S. Dist. LEXIS 69681, at *11 (N.D. Ill. Apr. 24, 2019) (allowing discovery into certain otherwise privileged communication where party had selectively presented these communications); *Kimberly-Clark Corp. v. Tyco Healthcare Retail Grp.*, No. 05-C-985, 2007 U.S. Dist. LEXIS 5974, at *6 (E.D. Wis. Jan. 26, 2007) (similar); *United States v. Bonner*, 302 F.3d 776, 784 (7th Cir. 2002) (Fifth Amendment).

The legal standard for analyzing Rule 23 fee requests reinforces the fact that class counsel are the ones submitting information to the court to justify requests to take millions of dollars for themselves out of the class's recovery. Named representatives and other class members naturally lack information about the risk involved in the case and the market rate, yet Rule 23 permits such discovery. The expectation inherent in the standard for attorneys' fees is that the *attorneys* will provide the

information needed to justify their fees. Accordingly, courts in this Circuit have allowed exactly the sort of discovery sought here. *In re Capital One TCPA Litig.*, No. 12-cv-10064, Dkt. 209 (N.D. Ill. Oct. 30, 2014) (attached as Ex. 1).

### C. Objectors' counsel has a track record of protecting class members in this district and elsewhere.

EUCPs suggest that discovery "might be undertaken primarily to justify an award of attorney fees to the objector's counsel." Opp. 3. This particular concern does not apply to objector Andren or his counsel, the Hamilton Lincoln Law Institute (HLLI). As documented in the Frank declaration accompanying the objection, HLLI's Center for Class Action Fairness has won more than $200 million for class members and does not seek fees for churn, but only where it achieves results for class members. Dkt. 5182-2 at 5, 11-12. HLLI opposes paying off objectors when class members do not benefit and has won binding precedent for this principle. *See Pearson v. Target Corp.*, 968 F.3d 827 (7th Cir. 2020). Andren objects in good faith because he sincerely believes EUCPs fee request is excessive under Seventh Circuit law and only seeks discovery to support his objection and disprove class counsel's implausible factual assertions first introduced on December 6, 2021.

### II. Andren's discovery request, first served at the objection deadline, are timely. EUCP's belated attempt to seek a protective order is not.

EUCP counsel are wrong that Andren's discovery requests, which he served on November 10, 2021, are not timely.

First, EUCP counsel cannot rely on the September 10, 2021 date that notice was sent to class members, much less the August 2021 date on which they first filed a motion with the Court regarding their intention to seek attorneys' fees as the starting date for Andren to serve his discovery requests. Two far more relevant dates are: (1) the objection deadline of November 10, 2021, and (2) the October 27, 2021 filing of EUCP counsel's motion for attorneys' fees (Dkt. 5160). Under Rule 23(h), class members have a right to object to an attorneys' fee motion. That right is meaningless if they do not have an opportunity to evaluate the basis for the motion. *Redman,* 768 F.3d at 638; *Reynolds,* 288 F.3d at 284. That's why, "in setting the date objections are due, the court should provide sufficient time


after the full fee motion is on file to enable potential objectors to examine the motion." Rule 23 Advisory Committee Notes (2003); *see also In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) ("Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members.").

Had Andren been regularly monitoring the docket, as EUCP counsel seems to suggest he was obligated to do, and then served his discovery requests shortly after the first moment EUCP counsel indicated their intent to seek fees, EUCP counsel no doubt would have objected that his requests were premature and unripe. Instead, Andren reasonably reviewed class counsel's attorneys' fee request to determine whether it contained the information both the Court needs to make a fee determination and that he needs to object. He filed his discovery requests on the same date as the objection deadline, a mere two weeks after EUCP counsel filed their motion seeking attorneys' fees. Based on the structure and timeline contained in Rule 23, Andren's timing was proper.

EUCP counsel provide no valid legal or factual reason for their argument that Andren's approach was improper, or any precedent for seeking discovery of class counsel before the fee request is made. Although they claim Andren acted with "delay" and made a "choice to wait until the last minute," he in fact followed the objection deadline set by the parties. Opp. 13. Neither of the cases cited by EUCPs as supporting the denial of discovery based on delay is remotely relevant here. *See West v. Miller*, 2006 WL 2349988, 2006 U.S. Dist. LEXIS 56243, at *14 (N.D. Ill. Aug. 11, 2006) (party "opted not to conduct discovery" for four of six months); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001) (despite warning from court, party waited to file motion to compel until after discovery had closed and opposing party had filed their summary judgment motion). Nor is the scheduling order they cite as showing that discovery purportedly closed with respect to Andren's requests on July 30, 2021. The July 30 deadline to complete fact discovery set forth in the scheduling order in fact applies only to "Parties in the Case as of January 30, 2021." Dkt. 4748. It is undisputed that Andren was not yet a party to the case on that date.

EUCP counsel appears to accuse Andren of delay in order to avoid examination of their own dilatory tactics. In addition to the certificate of service attached to his interrogatories, Andren presented evidence showing that the packages containing the interrogatories were delivered to EUCP counsel after being mailed on November 10, 2021. *See* 5294-15. The packages were mailed from the same location and at the same time as a third package to the settlement administrator—and the administrator duly received and filed this mailing. *Id.* The United States Postal Service confirms delivery for all three packages delivered. *Id.* Andren also discussed the contemporaneously-served discovery requests in his objection. Dkt. 5182 at 11-12. And when EUCP counsel received the interrogatories, as they ultimately acknowledge they did, the interrogatories and the certificate of service were dated November 10, 2021. They nevertheless chose to wait to serve their non-responses until December 20—over a week after the December 10 deadline. If they believed the interrogatories were improper, and they truly did not want to delay the proceedings, it is puzzling why they did not move for a protective order within the response period. They instead waived any objections to the responses, and Andren's motion to compel should be granted.

## Conclusion

Andren respectfully asks the Court to compel EUCP plaintiffs to respond fully to his first interrogatories and allow him to make a supplemental filing regarding the attorneys' fee award in view of discovered evidence.

Dated: January 10, 2022 /s/ M. Frank Bednarz
M. Frank Bednarz, (ARDC No. 6299073)
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1440 W. Taylor St # 1487
Chicago, IL 60607
Phone: 801-706-2690
Email: frank.bednarz@hlli.org

*Attorney for Objector John Andren*

**Certificate of Service**

The undersigned certifies he electronically filed the foregoing Memorandum of Law in Support of Interrogatories and Reply in Support of Andren's Motion to Compel via the ECF system for the Northern District of Illinois and the contemporaneously-filed Declarations of Neville Hedley and Declaration of M. Frank Bednarz and Offer of Proof, and exhibits thereto, thus effecting service on all attorneys registered for electronic filing.

Dated: January 10, 2022

/s/ M. Frank Bednarz