**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

IN RE BROILER CHICKEN ANTITRUST
LITIGATION

Case No. 1:16-cv-08637

The Honorable Thomas M. Durkin

This Document Relates To:
*All Actions*

**DEFENDANT TYSON FOODS, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR PRELIMINARY**
**AND PERMANENT INJUNCTIONS**

## Table of Contents

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND .............................................................................................. 4

I.  The *In Re Broilers Antitrust Litigation* ................................................................. 4

II.  Costco Has Been An Active Participant In The *Broilers* Case ........................... 5

III.  The Court's Stay Of Discovery Into Bid-Rigging .............................................. 6

IV.  Costco's Arbitration Demand ............................................................................. 8

ARGUMENT .................................................................................................................... 10

I.  The Court Should Enjoin Costco From Proceeding With The Arbitration Or, In the Alternative, Pursuing Bid-Rigging Discovery In Contravention Of This Court's Orders 10

    A.  Legal Standard .................................................................................... 10

    B.  Tyson's Success on The Merits ........................................................... 12

        1.  Costco Has Stated Its Intent To Circumvent This Court's Discovery Rulings In Its Demand ............................................................................... 12

        2.  Costco Has Waived Any Right To Arbitrate By Its Participation In This Litigation ........................................................................................ 14

    C.  An Injunction Is Necessary To Prevent Irreparable Harm, And There Is No Adequate Remedy At Law ................................................................... 19

    D.  Costco Will Not Be Harmed By An Injunction .................................. 20

    E.  The Public Interest Favors An Injunction .......................................... 21

CONCLUSION ................................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Elzanaty*,
929 F. Supp. 2d 199 (E.D.N.Y. 2013) ....................................................................13

*Asset Allocation & Mgmt. Co. v. W. Emps. Ins. Co.*,
892 F.2d 566 (7th Cir. 1989) ................................................................................10

*Banc of Am. Secs. LLC v. Indep. Tube Corp.*,
No. 09-7381, 2010 WL 1780321 (N.D. Ill. May 4, 2010)....................................14

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)................................................................................................3

*Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.*,
50 F.3d 388 (7th Cir. 1995) .....................................................................16, 17, 18

*Chicago Sch. Reform Bd. Of Trs. v. Diversified Pharm. Servs., Inc.*,
40 F. Supp. 2d 987 (N.D. Ill. 1999) ......................................................................11

*In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*,
93 F. Supp. 2d 876 (M.D. Tenn. 2000)..................................................................13

*Corbett v. DRH Cambridge Homes, Inc.*,
No. 04-3344, 2005 WL 1838456 (N.D. Ill. July 26, 2005) ..................................17

*Costco Wholesale Corp. v. Koch Foods, Inc.*,
No. 1:21-cv-4611, ECF No. 1 (N.D. Ill. Aug. 27, 2021) ........................................5

*In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*,
790 F.3d 1112 (10th Cir. 2015) ............................................................................18

*Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*,
764 F.3d 210 (2d Cir. 2014)..................................................................................10

*Grumhaus v. Comerica Secs., Inc.*,
223 F.3d 648 (7th Cir. 2000) ................................................................................17

*H-D, U.S.A., LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule
"A"*,
No. 21 C 3581, 2021 WL 4459472 (N.D. Ill. Sept. 24, 2021)..............................19

*Hospira, Inc. v. Therabel Pharma N.V.*,
No. 12 C 8544, 2013 WL 3811488 (N.D. Ill. July 19, 2013) ..........................20, 21

iii

*In re Jimmy John's Overtime Litig.*,
877 F.3d 756 (7th Cir. 2017) ....................................................................................10, 11, 14

*Kawasaki Heavy Indus. Ltd. v. Bombardier Recreational Prods., Inc.*,
660 F.3d 988 (7th Cir. 2011) ....................................................................................15, 17, 18

*Lukis v. Whitepages Inc.*,
535 F. Supp. 3d 775 (N.D. Ill. 2021), *appeal docketed*, No. 21-1798 (7th Cir.
May 5, 2021) ......................................................................................................................15

*Morgan Stanley & Co. LLC v. Couch*,
659 F. App'x 402 (9th Cir. 2016) .........................................................................................20

*Motorola Mobility, Inc. v. Myriad France SAS*,
No. 11-7373, 2013 WL 4008627 (N.D. Ill. Aug. 4, 2013) ....................................................16

*Patrowicz v. Transamerica Homefirst, Inc.*,
359 F. Supp. 2d 140 (D. Conn. 2005) ...................................................................................17

*Plummer v. Am. Inst. of Certified Pub. Accountants*,
97 F.3d 220 (7th Cir. 1996) ...............................................................................................19

*Skyline Restoration, Inc. v. First Baptist Church*,
No. 17-1234, 2017 WL 6570077 (N.D. Ill. Dec. 21, 2017) (Durkin, J.) .....................3, 15, 17

*Smith v. Adams & Assocs.*,
No. 14-5522, 2015 WL 5921098 (N.D. Ill. Oct. 9, 2015) .....................................................16

*Smith v. GC Servs. Ltd. P'ship*,
907 F.3d 495 (7th Cir. 2019) .........................................................................................14, 18

*St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*,
969 F.2d 585 (7th Cir. 1992) ...............................................................................................18

*Tellium, Inc. v. Corning Inc.*,
No. 03 CIV. 8487 (NRB), 2004 WL 307238 (S.D.N.Y. Feb. 13, 2004) ...............................20

*Tranchita v. Callahan*,
511 F. Supp. 3d 850 (N.D. Ill. 2021) ...................................................................................11

*In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*,
No. 11-MD-2247, 2012 WL 13065005 (D. Minn. Jan. 19, 2012) ........................................11

*Virchow Krause Capital, LLC v. North*,
No. 11 C 8169, 2012 WL 123673 (N.D. Ill. Jan. 17, 2012) .................................................20

*In re VMS Secs. Litig.*,
No. 89 C 9448, 1994 WL 8237 (N.D. Ill. Jan. 8, 1994) .......................................................11

*Wells Fargo Bank, Nat'l Ass'n v. Worldwide Shrimp Co.*,
No. 17 C 4723, 2017 WL 7689635 (N.D. Ill. Dec. 29, 2017) (Gilbert, M.J.) ........................15

*Winkler v. Eli Lilly & Co.*,
101 F.3d 1196 (7th Cir. 1996) ..............................................................................10, 12, 13, 14

*In re Y&A Grp. Secs. Litig.*,
38 F.3d 380 (8th Cir. 1994) ..............................................................................................11

*Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Markets Corp.*,
996 F.2d 1478 (2d Cir. 1993) ............................................................................................18

**Statutes**

All Writs Act, 28 U.S.C. § 1651(a)...........................................................................................2, 10

Anti-Injunction Act, 28 U.S.C. § 2283 ....................................................................................13

Sherman Act Section 1.............................................................................................................4, 8

Sherman Act Section 2.............................................................................................................8

Defendant Tyson Foods, Inc. ("Tyson") respectfully submits this memorandum of law in support of its Motion for Preliminary and Permanent Injunctions.  For this reasons that follow, the Court should grant Tyson's motion and:  (1) issue a preliminary injunction prohibiting Plaintiff Costco Wholesale Corporation ("Costco") from arbitrating against Tyson until it can do so without interfering with the Department of Justice's criminal investigation and this Court's orders managing this litigation, or at least enjoining Costco from taking bid-rigging discovery in the Arbitration that it is not allowed to pursue in this litigation; and (2) issue a permanent injunction enjoining Costco from arbitrating against Tyson because Costco has waived any right it might otherwise have had to arbitrate through its litigation conduct before this Court.

## INTRODUCTION

Over the past five years, this Court has devoted tremendous time and attention to managing this case.  Most recently, the Court has created a two-track approach that allows the parties to move forward efficiently on output reduction and Georgia Dock claims without interfering with the Department of Justice's ongoing criminal bid-rigging investigation.  The Court has given all plaintiffs the opportunity to preserve their bid-rigging claims by joining Track Two.  If their claims survive a motion to dismiss, the Track Two plaintiffs will have the chance to pursue bid-rigging discovery, without any prejudice or harm to their interests, when the Court determines that it is appropriate to do so.

But one Track Two plaintiff now seeks to upend this Court's carefully-crafted case management structure.  Costco has demanded arbitration against Tyson, asserting the same overarching conspiracy allegations this Court has seen many times in this case, including from Costco itself.  If Costco has its way, within the next 100 days—and during the retrial of the DOJ's first broiler chicken criminal case—Costco's arbitration (the "Arbitration") will rocket through discovery and a full merits hearing, giving Costco a purported basis for pursuing the very bid-

1

rigging documents and testimony that this Court repeatedly has stayed in recognition of the DOJ's current investigation. Indeed, Costco has made clear in its arbitration demand ("Demand" or "Arbitration Demand") and Statement of Claim that this is exactly what it intends to do:



Adcox Decl. Tyson Ex. B ¶ 7 (filed herewith) (emphasis added).

The ramifications of this planned end-run around the Court's stay of bid-rigging discovery will extend far beyond Costco's claim against Tyson. Costco's Arbitration Demand identifies the other Defendants in this case as alleged co-conspirators, and Costco has claimed a right to arbitrate that permits broad third-party discovery— Adcox Decl. Tyson Ex. D ¶ 21. Costco's counsel in this case—who also currently represent Costco in the Arbitration—could therefore use the Arbitration to seek bid-rigging evidence from the 14 Defendants Costco is suing in this Court. Counsel also may attempt to use bid-rigging discovery and purported evidence from the Arbitration for the benefit of the other 29 direct action plaintiffs ("DAPs") they represent—all while the Defendants and other Track Two DAPs continue to honor this Court's stay order.

Costco's desire to jump the discovery queue must yield to the orders this Court has entered in an effort to balance the competing priorities of the three classes, more than 150 DAPs, and 20 Defendant families that have been litigating this case for the past five years, as well as a DOJ criminal investigation. This Court should use its inherent equitable powers and authority under the All Writs Act, 28 U.S.C. § 1651(a), to enter a preliminary injunction prohibiting Costco from

proceeding with the Arbitration—or, at the very least, prohibiting Costco from taking bid-rigging discovery in the Arbitration—to enforce the Court's bid-rigging stay order.

This Court also should permanently enjoin Costco from arbitrating for the separate and independent reason that Costco, through its delay in seeking arbitration and extensive participation in this case, has waived any right it might have had to arbitrate its antitrust claim against Tyson.[1] A party claiming a right to arbitrate is expected "to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Skyline Restoration, Inc. v. First Baptist Church*, No. 17-1234, 2017 WL 6570077, at *1 (N.D. Ill. Dec. 21, 2017) (Durkin, J.) (quoting *Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995)). Costco did the opposite—for years. It was involved in this case from the beginning, first as an absent class member, then as a participant in third-party discovery, and finally as a DAP, suing 14 Defendants directly in this Court and accusing Tyson of antitrust violations. It has participated in discovery, sought and won substantive relief from the Court, joined in a motion for reconsideration of the Court's bifurcation order as well as a motion to preclude enforcement of the judgment sharing agreement among certain Defendants (including Tyson), and elected to join Track Two (twice). (*See* DI 5013, 5024, 5163, 5334). Costco's counsel likewise have been active participants in this

---

[1] In requesting this expedited relief, Tyson does not intend to waive its right to assert other bases for relief. For example, it is far from clear whether an agreement to arbitrate between Tyson and Costco actually existed during the claimed relevant period, or what the terms of any such agreement(s) might have been. Whether an agreement to arbitrate exists is an issue properly brought before a federal court, *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006), but it is one requiring further factual development and is unnecessary for the resolution of the instant motion. ████████████████
████████████████████████████████████████████████████████████
                                                    *Adcox Decl. Tyson Ex. I ¶ 20.*
Tyson reserves the right to bring this and any other applicable defenses at an appropriate time.

litigation, with prominent roles for four years, which included taking discovery from Tyson and its affiliates.  If Costco ever had an arbitration right against Tyson, it is long gone now.

Given the imminent start of the Arbitration proceedings—notwithstanding Tyson's objections, the AAA has proposed scheduling an Administrative Call for January 18 or 20, 2022—Tyson requests that the Court grant the requested relief on an expedited basis.

## **FACTUAL BACKGROUND**

I.      The *In Re Broilers Antitrust Litigation*

The Court is very familiar with the history of this case.  It began on September 2, 2016, when a putative class of direct purchasers filed a complaint alleging that Tyson and numerous other broiler chicken producers had entered into a nearly decade-long conspiracy to reduce the supply and increase the price of broiler chickens in violation of Section 1 of the Sherman Act. Two additional putative class actions, filed on behalf of asserted classes of indirect purchaser and end user plaintiffs, followed soon after.   The direct purchasers subsequently amended their complaint to allege that certain Defendants, including Tyson, also had conspired to inflate the Georgia Dock pricing index.  In January 2018, Boies Schiller & Flexner LLP ("Boies Schiller") filed the first DAP complaints on behalf of Sysco Corporation ("Sysco") and US Foods, Inc. ("US Foods").   Since then, the *Broilers* case has expanded into one of the most sprawling antitrust litigations in the United States, involving three putative classes, over 150 DAPs, 20 Defendant families, and the DOJ.

Discovery in the *Broilers* case has been, in this Court's words, "a massive undertaking" that has consumed "countless hours" of case management.  (DI 3520, at 1).  As of the date of this filing, parties and non-parties have produced nearly 40 million documents and multiple terabytes of structured data.  Adcox Decl. ¶ 16.  More than 400 fact witness depositions have been taken. *Id.* ¶ 17.  Tyson and its affiliates alone have produced more than one million documents from over

50 document custodians, and 20 present and former Tyson employees have provided more than 100 hours of deposition testimony. *Id.* ¶ 18.

## II.    Costco Has Been An Active Participant In The *Broilers* Case

Costco has been an active participant in the *Broilers* case for years as an absent direct purchaser class member, as a third-party discovery participant, and now as a DAP.  On November 20, 2017, the End User Consumer Plaintiffs served Costco with a third-party subpoena requesting the preservation of documents.  Adcox Decl. Tyson Ex. J at 1.  This was followed by a request to produce documents on January 30, 2018.  Adcox Decl. Tyson Ex. K at 6-7. On March 30, 2018, Defendants (including Tyson) issued a document subpoena to Costco.  Adcox Decl. Tyson Ex. L.  After some negotiation, Costco produced documents and transactional data in response to Defendants' requests.  Adcox Decl. ¶ 19.

After observing the *Broilers* case for years as an absent class member and third-party subpoena recipient, Costco opted out of Tyson's settlement with the direct purchaser plaintiff class on May 14, 2021.  Three months later, Costco filed its own direct action complaint against 14 of the 20 Defendant families.  (Compl., *Costco Wholesale Corp. v. Koch Foods, Inc.*, No. 1:21-cv-4611, ECF No. 1 (N.D. Ill. Aug. 27, 2021)).  In its complaint, Costco expressly identified Tyson and its affiliate Keystone as non-defendant co-conspirators in the output reduction, index manipulation, and bid-rigging conduct Costco alleged.  Costco then joined in Counts I, II, and III of the DAPs' Amended Consolidated Complaint and Demand for Jury Trial.  (DI 4243).  In doing so, Costco incorporated and adopted many of the 383 references to Tyson contained in that 434-page, 1514-paragraph pleading.

Just a few days later, Costco moved this Court to reassign its case to the *Broilers* case based on relatedness, noting in support of its motion that reassignment is proper where "the handling of

5

both cases by the same judge is likely to result in a substantial saving of judicial time and effort," that "the cases are susceptible of disposition in a common proceeding," and further noting that "the Court can save substantial time and effort by, among other things, coordinating discovery issues and briefing." (DI 5013 ¶¶ 10, 12). The Court granted this motion, recognizing the efficiencies of having Costco's claims litigated in this proceeding. (DI 5015). Through its involvement in the case as a DAP, Costco has received from all Defendants, including Tyson, millions of pages of discovery and several terabytes of data. (DI 785 ¶ 12 ("Class Plaintiffs will provide the Direct Action Plaintiffs with copies of third party and Defendant productions, as well as discovery requests and responses from any party. . . .")).[2]

III. The Court's Stay Of Discovery Into Bid-Rigging

In June 2019, the U.S. Department of Justice ("DOJ") moved to intervene in this case, seeking a stay of discovery in order to protect its criminal investigation into potential bid-rigging conduct. (DI 2268). The Court granted DOJ's motion, (DI 2302), and bid-rigging discovery has been stayed since that time.

Two years later, DAP Chick-fil-A, Inc. moved this Court to reconsider its prior Orders in an effort to allow bid-rigging discovery to move forward. (DI 4651). *Costco expressly joined this motion* on September 1, 2021, (DI 5024), including its insistence that "the parties should begin 'bid-rigging' discovery in earnest following the upcoming DOJ criminal trial" (DI 4651 at 15).[3]

---

[2] Costco's attorneys have had a leading role in this case for years. Costco currently is represented in the Arbitration by attorneys from the law firms of Boies Schiller and Cadwalader, Wickersham, & Taft LLP ("CWT"), the same lawyers who represent Costco in this Court. Both firms have been actively involved in the case on behalf of other DAPs for years; today, Boies Schiller and CWT collectively represent 30 different DAPs, including Costco.

[3] Costco also sought affirmative relief from the Court in a pending motion to preclude enforcement of a judgment sharing agreement among Tyson and certain other Defendants. (*See* DI 5163.)

In its disposition of that motion, this Court reaffirmed its commitment to the bid-rigging stay, vacating its previous bifurcation order and offering all plaintiffs (classes and DAPs) two options: (1) choose a faster track to trial without claims and discovery into bid-rigging conduct ("Track One") or (2) choose a later track on which bid-rigging claims could be litigated without interfering with the DOJ's criminal investigation ("Track Two").  (DI 5128).  Costco chose Track Two in November and reaffirmed that choice last week.  (DI 5334).

Meanwhile, from late October through December 2021, the DOJ proceeded to trial in the District of Colorado on a criminal bid-rigging case against 10 current and former employees of certain Defendants.[4]  That trial ended in a hung jury as to all defendants, resulting in a mistrial.[5]  The DOJ has stated that it intends to retry the defendants; the re-trial currently is scheduled to begin in February 2022.[6]  Other related criminal trials currently are scheduled to begin on July 18, 2022 and October 21, 2022.[7]

---

[4] *See* Minute Entry for Proceedings held before Chief Judge Philip A. Brimmer: Jury Trial (Day 1) held on 10/25/2021, *United States v. Penn*, No 1:20-cr-152-PAB, ECF No. 735 (D. Colo. Oct. 25, 2021); Courtroom Minutes for Jury Trial – Day 29, *United States v. Penn*, No. 1:20-cr-152-PAB, ECF No. 920 (D. Colo. Dec. 16, 2021).

[5] *See* Courtroom Minutes for Jury Trial – Day 29, *United States v. Penn*, No. 1:20-cr-152-PAB, ECF No. 920 (D. Colo. Dec. 16, 2021) ("Court declares a mistrial."); Jury Notes, *United States v. Penn*, No. 1:20-cr-152-PAB, ECF No. 923 at 8 (D. Colo. Dec. 16, 2021) ("After scouring the evidence, we still have firm convictions on both sides of the debate.  We do not believe we can reach consensus on any of the ten defendants.").

[6] *See* Order Re-Setting Trial Dates and Deadlines, *United States v. Penn*, No. 1:20-cr-152-PAB, ECF No. 925 (D. Colo. Dec. 22, 2021) ("A twenty-two-day Jury Trial set for 2/22/2022 . . . .").  The court denied defendant's motion to postpone the trial without prejudice due in part to "the unavailability of the Court during a significant portion of the requested trial period after March 22, 2022" but granted leave to re-file the request, noting the Court's availability from May 9, 2022 – June 10, 2022.  See United States v. Penn, No. 1:20-cr-152-PAB, ECF No. 931 (D. Colo. Jan. 10, 2022).

[7] *See* Order Granting Motion to Continue, *United States v. McGuire*, No. 1:21-cr-000246-DDD (D. Colo. Oct. 6, 2021) ECF No. 71; Order Granting Unopposed Joint Motion for an Additional Ends of Justice Exclusion of 270 Days from the Speedy Trial Calendar Pursuant to 18 U.S.C. §§ 3161(h)(7)(A)-(B)(i),

IV.    Costco's Arbitration Demand

Costco submitted its Demand and Statement of Claim to the AAA on December 10, 2021. The Statement of Claim alleges the same overarching conspiracy claim that Costco and others are litigating in this Court; namely, an alleged conspiracy to artificially raise prices through three asserted mechanisms: (1) an agreement to reduce the supply of broiler chickens, (2) manipulation of the Georgia Dock index, and (3) bid-rigging.[8]  *See* Adcox Decl. Tyson Ex. B ¶ 1.  It further alleges that the same broiler producers who are Defendants or alleged co-conspirators in this case participated in the conspiracy alleged in the Demand.  *Id.* ¶ 3.

Costco has made clear in its Statement of Claim that it intends to use the Arbitration to conduct the bid-rigging discovery and pursue the bid-rigging claims that this Court has stayed:



*Id.* ¶ 7 (emphasis added).

In support of its Demand, Costco has submitted a number of documents, none of which establishes that an agreement to arbitrate existed during the claimed relevant period, let alone what the terms of any such agreement might have been.  Nevertheless, Costco insists that the purported agreement compels arbitration on a highly expedited schedule; specifically, the entirety of the

---

(ii), and (iv), *United States v. Norman W. Fries, Inc., d/b/a Claxton Poultry Farms*, No. 1:21-cr-00168-RM (D. Colo. Oct. 20, 2021) ECF No. 57.

[8] While Costco's Statement of Claim states that this alleged conduct was ▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Adcox Decl. Tyson Ex. B ¶ 1 (emphasis added), Tyson assumes that Costco intends to assert a conspiracy claim in restraint of trade under *Section 1* of the Sherman Act.

Arbitration must be completed and an award rendered within 120 days of the Demand, i.e., by April 16, 2022. Furthermore, the Arbitration hearing—before a single arbitrator—may last no more than two (2) days.

Costco's claimed arbitration provision provides for broad discovery within the expedited proceeding: ██████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
██████████████████████████████████████████████ Adcox Decl. Tyson Ex. D ¶ 21. The arbitrator may ████████████████████████████████████████████
████████████ *Id.* There likewise is a provision allowing for broad third-party discovery: ██████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████

*Id.*[9]

Tyson has submitted timely, clear, and repeated objections to the Arbitration, including in submissions to the AAA dated December 21, 2021; December 27, 2021; January 5, 2022; and January 7, 2022. *See* Adcox Decl. ¶¶ 8-12. On January 12, 2022, the AAA informed Tyson and Costco that, notwithstanding Tyson's objections to the sufficiency of Costco's Demand, the AAA has determined that Costco's filing was sufficient to meet the threshold requirement of alleging an agreement to arbitrate. *Id.* ¶ 23. As noted previously, the AAA has proposed scheduling an Administrative Call for January 18 or 20, 2022. *Id.* ¶ 25.

On January 11, counsel for Tyson and Costco met and conferred regarding this motion, but were unable to resolve the issues giving rise to the request for relief. *Id.* ¶ 26.

---

[9] By describing the arbitration provision proffered by Costco, Tyson in no way concedes the applicability or enforceability of that purported agreement.

## ARGUMENT

I.    The Court Should Enjoin Costco From Proceeding With The Arbitration Or, In the Alternative, Pursuing Bid-Rigging Discovery In Contravention Of This Court's Orders

This Court has stayed bid-rigging discovery for dozens of parties for three years in order to prevent interference with the DOJ's investigation. It should use its broad injunctive authority to ensure that Costco's Arbitration does not undermine its efforts. It should likewise enjoin Costco from arbitrating because Costco has waived any arbitration right it might have had.

A.    Legal Standard

"Federal courts generally have remedial power to stay arbitration." *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 764 F.3d 210, 213 (2d Cir. 2014). Federal courts also have the authority, under both their inherent equitable powers and the All Writs Act, 28 U.S.C. § 1651(a), to enjoin parallel and duplicative litigation under appropriate circumstances.[10] *See In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 761–62 (7th Cir. 2017) (recognizing that "the Supreme Court gave lower courts an ample degree of discretion to resolve issues related to duplicative litigation" and that "[t]he All Writs Act also allows district courts to enjoin parallel litigation . . . under certain circumstances" (cleaned up)); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1201 (7th Cir. 1996) (observing that under the All Writs Act, a federal court has the power "to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued" (citations omitted)); *see also, e.g., Asset Allocation & Mgmt. Co. v. W. Emps. Ins. Co.,* 892 F.2d 566, 572 (7th Cir. 1989) ("The real basis for the power, it seems to us, is practical. A court—some court—should have the power to prevent the duplication of litigation.").

---

[10] The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

This power also extends to arbitration proceedings. *See In re Y&A Grp. Secs. Litig*., 38 F.3d 380, 383 (8th Cir. 1994) (holding that a district court has the power under the All Writs Act to enjoin arbitration proceedings); *In re VMS Secs. Litig.*, No. 89 C 9448, 1994 WL 8237, at *4 (N.D. Ill. Jan. 8, 1994) ("[T]his court has the power to enjoin arbitration pursuant to the All Writs Act."); *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, No. 11-MD-2247, 2012 WL 13065005, at *9 (D. Minn. Jan. 19, 2012) ("Federal courts' broad authority under the All Writs Act encompasses the power to enjoin both subsequent and parallel arbitration proceedings.").

A party seeking a preliminary injunction "must satisfy three threshold requirements:  she must show (1) some likelihood of success on the merits; (2) an inadequate remedy at law; and (3) that irreparable harm is likely if the relief is not granted." *Tranchita v. Callahan*, 511 F. Supp. 3d 850, 864 (N.D. Ill. 2021).[11]  If that threshold showing is made, the Court "must proceed to a balancing analysis, where the Court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the Court were to grant it," including consideration of the public interest where appropriate.  *Id.*  "The standard for a permanent injunction is essentially the same as for a preliminary injunction, except that in seeking a permanent injunction, [the movant] must prove actual success on the merits rather than the likelihood of success on the merits." *Chicago Sch. Reform Bd. Of Trs. v. Diversified Pharm. Servs., Inc.*, 40 F. Supp. 2d 987, 996–97 (N.D. Ill. 1999) (quoting *Hicks v. Peters*, 10 F.Supp.2d 1003, 1004 (N.D.Ill. 1998)) (granting preliminary and permanent injunctions against arbitration).

As is demonstrated below, each of these elements is met here.

---

[11] Some circuits have held that these factors do not apply where injunctive relief is sought under the All Writs Act.  The Seventh Circuit, however, has clarified that the traditional requirements for injunctive relief apply to injunctions under the All Writs Act.  *In re Jimmy John's*, 877 F.3d at 769–71.

B.    Tyson's Success on The Merits

Tyson is likely to succeed on the merits in establishing that Costco's Arbitration Demand is an improper end-run around this Court's bid-rigging stay. In addition, Tyson has shown below that Costco has waived any right to arbitrate its claim against Tyson through its litigation conduct. Each of these constitutes a sufficient basis for the injunctions Tyson seeks.

1.    Costco Has Stated Its Intent To Circumvent This Court's Discovery Rulings In Its Demand

Costco's Demand plainly states that Costco intends to use the Arbitration to circumvent this Court's stay of bid-rigging discovery:



Adcox Decl. Tyson Ex. B ¶ 7 (emphasis added). This end-run around this Court's orders should not be countenanced.

In *Winkler v. Eli Lilly & Co.*, the Seventh Circuit held that a district court has the authority "to issue an injunction to safeguard a pre-trial [discovery] ruling" against a litigant's efforts to circumvent that ruling by bringing a separate litigation in a new forum. 101 F.3d at 1203. In *Winkler*, the district court in a Multi-District Litigation ("MDL") had issued a ruling denying plaintiffs' discovery into a confidential agreement between lead counsel and the defendant. Plaintiffs then filed a parallel suit in state court. The district court, "quite reasonably believ[ing] that the plaintiffs were resorting to the state courts for the specific purpose of evading its ruling denying discovery of the . . . agreement," issued an injunction pursuant to the All Writs Act enjoining all plaintiffs and counsel of record in the MDL from "seeking by any means or any proceedings of any kind" any discovery into the agreement, in the state court action or elsewhere.

12

*Id.* at 1200–02.  Analyzing both the All Writs Act and the Anti-Injunction Act,[12] the Seventh Circuit found that the district court had the authority to issue such "injunctions to protect the integrity of [its] rulings, including pre-trial rulings like discovery orders, as long as the injunctions are narrowly crafted to prevent specific abuses which threaten the court's ability to manage the litigation effectively and responsibly."  *Id.* at 1203.[13]

Here, Costco's Demand asserts its intent to circumvent this Court's discovery orders in the Arbitration.  If Costco and its counsel are allowed to use the Arbitration to take the bid-rigging discovery that this Court has stayed, the result will be to render this Court's stay meaningless, not only with respect to Costco, but also with respect to the numerous other DAPs represented by the same attorneys.  The Court can and should issue an order enjoining that conduct.  *See, e.g., In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 93 F. Supp. 2d 876, 878 (M.D. Tenn. 2000) (enjoining state court from ruling on discovery motion in parallel state court proceeding brought "as an end-run around this Court's jurisdiction over the discovery in the MDL"); *Allstate Ins. Co. v. Elzanaty,* 929 F. Supp. 2d 199, 220 (E.D.N.Y. 2013) (enjoining duplicative arbitration

---

[12] The Anti-Injunction Act, 28 U.S.C. § 2283, prohibits a federal court from enjoining a state court proceeding except as authorized by Congress, or "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  The Act was intended to prevent "needless friction between state and federal courts."  *Winkler*, 101 F.3d at 1203.  It is not applicable here, where the parallel proceeding Costco has initiated is an arbitration.

[13] Although the Seventh Circuit held that the *Winkler* court had the authority to issue its injunction, it went on to find that the injunction was not warranted on the particular facts of that case because the court's initial order denying discovery into the confidential agreement was unfounded.  *Id.* at 1204.  The Seventh Circuit also held that the court's injunction was overbroad insofar as it covered any person seeking discovery of the agreement, and not merely persons who were part of the MDL, finding that "[t]he circumstances in the case at bar are simply not appropriate for such a sweeping injunction."  *Id.*

proceedings to prevent "inconsistent judgments that are gradually culminating in a procedural and substantive train wreck").[14]

2.  Costco Has Waived Any Right To Arbitrate By Its Participation In This Litigation

The Court should enjoin Costco from proceeding with the Arbitration for the additional, independent reason that it has waived any right to arbitrate through its participation in this litigation. *Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 499 (7th Cir. 2019) ("Like any other contractual right, the right to arbitrate can be waived."). Whether a party has waived its right to arbitrate through its litigation conduct is presumptively an issue for courts, not arbitrators, to decide. *See Banc of Am. Secs. LLC v. Indep. Tube Corp.*, No. 09-7381, 2010 WL 1780321, at *6 (N.D. Ill. May 4, 2010) (joining "the vast majority of other courts that have addressed this issue" in concluding "that courts—not arbitrators—should resolve waiver-through-litigation-conduct

---

[14] Costco may cite *In re Jimmy John's Overtime Litig.*, 877 F.3d 756 (7th Cir. 2017) to argue that *Winkler* is limited to the MDL context. Although this case has not been designated as an MDL, it is demonstrably larger and more complex than many MDLs, and involves more than 80 consolidated cases. Indeed, *Jimmy John's* lends additional support for the Court's authority to enjoin Costco's plan to circumvent its discovery rulings. In *Jimmy John's*, the Seventh Circuit recognized that a district court has an "inherent equitable power" to prevent duplicative litigation, and an "ample degree of discretion" to do so. *Id.* at 761 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952)).

*Jimmy John's* is otherwise distinguishable on its facts. There, the Seventh Circuit found that the federal-court cases the district court had enjoined were not duplicative of the original federal litigation, and therefore the district court lacked authority to enjoin them. Specifically, the additional cases involved different defendants who were not parties to the original litigation, and who could not be joined due to lack of personal jurisdiction and venue. Therefore, unlike in this case, it was "not possible to resolve the litigation against Jimmy John's and the franchisee employers in a single forum." *Id.* at 766. Here, both Costco and Tyson are parties to the *Broilers* consolidated litigation, and have been for years. "[T]he whole of the war and all the parties to it are in the [*Broilers*] theatre." *Id.* at 765 (quoting *Kerotest*, 342 U.S. at 183).

In addition, this case presents public interest concerns that were not present in *Jimmy John's*. The Court's stay of discovery into bid-rigging was not merely for the private benefit of the parties to the *Broilers* case. Rather, the purpose of the stay was, as Costco acknowledges in its Statement of Claim, to protect a DOJ investigation that is still ongoing. This is the kind of exceptional circumstance that justifies an injunction.

issues"); *see also Skyline Restoration*, 2017 WL 6570077, at *1 (deciding whether a party waived arbitration through litigation conduct).[15] The issue of Costco's waiver is particularly appropriate for this Court's consideration because of its familiarity with the complex procedural history of the case, and Costco's and its counsel's involvement therein.

To find waiver of a right to arbitrate, courts "must determine that, considering the totality of the circumstances, a party acted inconsistently with the right to arbitrate." *Kawasaki Heavy Indus. Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011); *see also Wells Fargo Bank, Nat'l Ass'n v. Worldwide Shrimp Co.*, No. 17 C 4723, 2017 WL 7689635, at *4 (N.D. Ill. Dec. 29, 2017) (Gilbert, M.J.) (same). Costco's decision to bring suit in and actively litigate identical claims before this Court, represented by counsel who had already engaged in extensive litigation activity adverse to Tyson, is ample support for a finding of waiver.

*First*, Costco has pursued claims in this Court—both as a member of a putative direct purchaser class and then as a DAP—alleging that Tyson and numerous other broiler chicken producers engaged in a conspiracy to inflate broiler prices. Costco's election "to proceed in a judicial forum" in this manner creates "a rebuttable presumption that [Costco] has waived its right to arbitrate." *Kawasaki*, 660 F.3d at 995. Even absent the presumption, the extensive involvement of Costco and its counsel in this litigation is inconsistent with any arbitration right and independently constitutes waiver. Costco's actions in this litigation were not "merely responsive,"

---

[15] Costco may argue that while the question of waiver by litigation conduct is presumptively for a court to decide, the relevant arbitration agreement's incorporation of the AAA Rules has delegated that question to the arbitrator. But the AAA Rules delegate issues of *arbitrability* to the arbitrator, *see* AAA Commercial Arbitration Rules and Mediation Procedures at R-7, and "[t]he question whether [a party] waived arbitration through litigation conduct or delay is not a gateway or threshold question of arbitrability under governing precedent" and is thus not delegated to the arbitrator, even under the AAA Rules. *Lukis v. Whitepages Inc.*, 535 F. Supp. 3d 775, 784, 787 (N.D. Ill. 2021), *appeal docketed*, No. 21-1798 (7th Cir. May 5, 2021).

instead comprising "an affirmative effort to gain a substantive advantage in the federal court case." *Smith v. Adams & Assocs.*, No. 14-5522, 2015 WL 5921098, at *4 (N.D. Ill. Oct. 9, 2015). Specifically, after having its interests vigorously represented by class counsel for nearly five years, Costco chose to affirmatively opt out of Tyson's settlement with the direct purchaser plaintiff class and file its own complaint naming Tyson as an alleged co-conspirator. Costco then:

- Affirmatively moved this Court to reassign its case to the *Broilers* docket based on relatedness, recognizing the "**substantial saving of judicial time and effort**" that would result from reassignment and that its case and the *Broilers* case were "**susceptible of disposition in a common proceeding**." (DI 5013 ¶ 10 (emphasis added)).

- Affirmatively joined Chick-fil-A's motion for reconsideration, asking the Court to change its entire approach to case management and arguing that "the parties should begin 'bid-rigging' discovery in earnest following the upcoming DOJ criminal trial." (DI 4651, 5024).

- Affirmatively moved to preclude Tyson and certain other Defendants from enforcing a judgment sharing agreement. (DI 5163).

This litigation conduct is inconsistent with both the practical and legal effects of then attempting to force Tyson to arbitrate an identical conspiracy claim.

*Second*, the extensive discovery conducted by Costco and its counsel in this case supports waiver by demonstrating Costco's clear intent to invoke this Court's jurisdiction. *See, e.g., Motorola Mobility, Inc. v. Myriad France SAS*, No. 11-7373, 2013 WL 4008627, at *2–3 (N.D. Ill. Aug. 4, 2013) (finding waiver for a particular claim where the defendant "filed and litigated multiple motions to dismiss, and . . . conducted extensive discovery, including depositions, to virtually the conclusion of the fact discovery period"); *see also Cabinetree*, 50 F.3d at 391 (finding waiver where a defendant removed the case to federal court and then participated in extensive discovery). Here, Costco has engaged in the discovery process as both a party and a third-party. Most significantly, Costco has received access to and benefitted from the millions of pages of discovery that have been produced in this case, including over one million pages from over 50

16

Tyson document custodians alone. Costco's counsel have attended numerous depositions of Tyson witnesses and participated in court hearings. This activity demonstrates Costco's intent to litigate rather than exercise its claimed right to arbitrate.

*Third*, Costco did not do "all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Skyline Restoration*, 2017 WL 6570077, at *1 (quoting *Cabinetree*, 50 F.3d at 391). Costco's lack of diligence, which should "weigh heavily" in the waiver analysis, *see Kawasaki*, 660 F.3d at 994, is particularly egregious given Costco's substantial involvement in the *Broilers* case long before it served its Demand. *See, e.g.*, *Grumhaus v. Comerica Secs., Inc.*, 223 F.3d 648, 653 (7th Cir. 2000) (delay of more than a year supported a finding of waiver); *Corbett v. DRH Cambridge Homes, Inc.*, No. 04-3344, 2005 WL 1838456, at *1 (N.D. Ill. July 26, 2005) (eleven-month delay supported a finding of waiver); *Cabinetree*, 50 F.3d at 389 (ten-month delay supported a finding of waiver). Indeed, Costco's conduct since the inception of the *Broilers* case demonstrates its failure to timely assert its claimed right to arbitrate against Tyson. *See Patrowicz v. Transamerica Homefirst, Inc.*, 359 F. Supp. 2d 140, 160 (D. Conn. 2005) (finding that the plaintiff had waived her right to arbitrate claims based on conduct that had been the subject of earlier litigation against the same defendants because she had been a class member in that earlier litigation).

Moreover, Costco's Statement of Claim suggests that Costco believes it has had a right to arbitrate any claims against Tyson since 1995. Adcox Decl. Tyson Ex. B ¶ 8 (asserting that ███ ████████████████████████████████████████████████████████ ████████████████████████████ ). And Costco was aware of potential antitrust claims against Tyson as early as the first direct purchaser class action complaint was filed against Tyson on September 2, 2016, and certainly by the time it received its first third-party subpoena in

17

2017.  Nevertheless, Costco did not assert its purported right to arbitrate claims against Tyson at any point during the past five years of this case, including during the months when it had opted out of Tyson's direct purchaser settlement and was actively litigating its own DAP complaint. Instead, Costco waited and then "dropped a bombshell" by invoking arbitration after it had the opportunity to "see how the case was going in federal district court before deciding whether it would be better off there or in arbitration."  *Cabinetree*, 50 F.3d at 389, 391.

*Fourth*, while a showing of prejudice is not required to find waiver, "it is a relevant factor in the totality-of-the-circumstances analysis."  *Kawasaki*, 660 F.3d at 994; *see also Smith*, 907 F.3d at 501.  Tyson has been prejudiced by Costco's conduct because, through its participation in the *Broilers* case, Costco has obtained discovery that it would not be able to obtain under the limited and expedited arbitration proceedings set forth in the alleged arbitration agreement.  *See, e.g.*, *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 591 (7th Cir. 1992) (finding waiver where a party had taken depositions of witnesses not available in arbitration proceedings); *Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Markets Corp.*, 996 F.2d 1478, 1480 (2d Cir. 1993) (same).  Not only has Costco had this extensive discovery record for five months, it has already deployed it—potentially in violation of the protective order in this case—in crafting its Arbitration Demand.  *See* Adcox Decl. Tyson Ex. B ¶ 3 (quoting and discussing a Wayne Farms document that has been designated at least "Confidential").  But, as discussed below, "[p]erhaps the greater prejudice from [Costco's] actions . . . flows to the court and the integrity of the judicial process."  *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1118 (10th Cir. 2015).

18

By opting to participate in the *Broilers* case for years instead of pursuing the arbitration rights it claims to have had since at least 1995, Costco long ago waived any right to arbitrate its claim against Tyson.

    C.    <u>An Injunction Is Necessary To Prevent Irreparable Harm, And There Is No Adequate Remedy At Law</u>

Tyson will suffer irreparable harm if the Arbitration proceeds, for which there is no adequate remedy at law. *See H-D, U.S.A., LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21 C 3581, 2021 WL 4459472, at *3–4 (N.D. Ill. Sept. 24, 2021) (considering the irreparable harm and adequate remedy factors together because these "factors tend to merge"); *Plummer v. Am. Inst. of Certified Pub. Accountants,* 97 F.3d 220, 229 (7th Cir. 1996) (holding that to obtain injunctive relief, moving party must prove *either* no adequate remedy at law, *or* that it will suffer irreparable harm without an injunction).

If the Arbitration proceeds and Costco is permitted to take discovery into bid-rigging in contravention of the stay in *Broilers*, that will cause irreparable harm not only to Tyson, but to other parties in the litigation. Indeed, permitting Costco to pursue bid-rigging discovery in the Arbitration likely would subject Defendants and their employees to the kinds of conflicting obligations that motivated the Court to issue the bid-rigging stay in the first place. As the DOJ noted in its motion for a stay, allowing discovery to proceed alongside a criminal investigation "would force subjects to defend two cases simultaneously" and "would force subjects to choose between invoking their Fifth Amendment right against self-incrimination and risking that any such invocation would be used as a basis for an adverse inference in this civil case, or testifying or otherwise responding to civil discovery and having their responses used against them in the criminal case." (DI 2268 at 9).

In addition, courts in this district have recognized that compelling a party to arbitrate when it is not required to do so may constitute irreparable harm. *See Hospira, Inc. v. Therabel Pharma N.V.*, No. 12 C 8544, 2013 WL 3811488, at *15 (N.D. Ill. July 19, 2013) ("Because Hospira is not legally obligated to arbitrate Therabel's claims, and the lack of an injunction would result in Hospira effectively being required to do so, Hospira satisfies the lack of an adequate remedy at law factor."); *Virchow Krause Capital, LLC v. North*, No. 11 C 8169, 2012 WL 123673, at *1 (N.D. Ill. Jan. 17, 2012) (forcing a party to participate in arbitration when it is not required to do so is *per se* irreparable harm). *See also Morgan Stanley & Co. LLC v. Couch*, 659 F. App'x 402, 406 (9th Cir. 2016) (concluding that the party seeking an injunction was likely to succeed on the merits of its claim that the counterparty had waived arbitration, and reasoning that forcing parties to arbitrate claims that they have no duty to arbitrate "would only serve to complicate and extend the proceedings . . . [which] does not serve any public interest").

### D.   Costco Will Not Be Harmed By An Injunction

The balance of hardships favors granting the requested relief to Tyson because, in contrast to the irreparable harm that Tyson will suffer, Costco will suffer no cognizable harm if an injunction is granted.

Costco cannot claim any harm if this Court issues an injunction in aid of its bid-rigging discovery stay order. Costco is only seeking money damages, and neither a delay of the Arbitration, nor a delay of discovery into bid-rigging, will harm its ability to obtain any amounts it ultimately proves it is owed. *See Tellium, Inc. v. Corning Inc.,* No. 03 CIV. 8487 (NRB), 2004 WL 307238, at *8 (S.D.N.Y. Feb. 13, 2004) ("Corning will eventually be able to pursue its claim for damages in the Arbitration against those parties whom this Court decides are the proper respondents. The granting of a preliminary injunction would thus harm no interest of Corning,

20

who seeks money damages only."). Also, an injunction will not stop Costco from pursuing in Track Two—which it has twice elected—the claims it has already asserted in this Court and seeking full relief for the injuries it alleges. Indeed, Costco has advocated for bid-rigging discovery to *follow* the DOJ's investigation, joining a motion for reconsideration asking this Court to permit bid-rigging discovery *after* the DOJ's criminal trials.[16]

And if the Court holds that Costco has waived any right to arbitrate its claim against Tyson through its litigation conduct, then it will be Costco's own deliberate actions—and not any injunction—that will have precluded Costco from arbitrating.

E.    The Public Interest Favors An Injunction

Consideration of the public interest also favors issuance of an injunction. In addition to the public interest in protecting the integrity of the Court's orders *generally*, this motion implicates the *specific*—and particularly strong—public interest in preventing interference with the DOJ's investigation. For the same reasons that this Court concluded that its stay of bid-rigging discovery was, and remains, necessary in light of the DOJ's investigation, it should enjoin Costco from proceeding with an Arbitration in which it intends to seek such discovery.[17]

**CONCLUSION**

For the foregoing reasons, Tyson respectfully requests that the Court grant Tyson's motion and enter a permanent injunction enjoining Costco from proceeding with the Arbitration because it has waived any arbitration right through its litigation conduct. In addition, Tyson requests that

---

[16] As noted above, to avoid the possibility of interference with this Court's case management orders, an injunction prohibiting Costco from proceeding with the Arbitration should extend through the conclusion of the Track Two trials.

[17] *See also Hospira, Inc. v. Therabel Pharma N.V.*, No. 12 C 8544, 2013 WL 3811488, at *15 (N.D. Ill. July 19, 2013) (holding that the public interest factor weighed in favor of enjoining arbitration where one party had not agreed to arbitrate).

the Court grant Tyson's motion and grant a preliminary injunction enjoining Costco from proceeding with the Arbitration until it can do so without interfering with the Department of Justice's criminal investigation and this Court's orders managing this litigation, or, at least, enjoin Costco from taking bid-rigging discovery in the Arbitration that it is not allowed to pursue in this litigation.

Dated: January 13, 2022

Respectfully submitted,

By: /s/ Rachel J. Adcox
Rachel J. Adcox (#1001488)
Daniel K. Oakes (*pro hac vice*)
Kenina J. Lee (*pro hac vice*)
Michael J. O'Mara (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
T: 202-912-4700
radcox@axinn.com
doakes@axinn.com
klee@axinn.com
momara@axinn.com

John M. Tanski (*pro hac vice*)
Jarod G. Taylor (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
T: 860-275-8100
jtanski@axinn.com
jtaylor@axinn.com

Denise L. Plunkett (*pro hac vice*)
Nicholas E.O. Gaglio (*pro hac vice*)
Kail J. Jethmalani (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
T: 212-728-2200
dplunkett@axinn.com
ngaglio@axinn.com
kjethmalani@axinn.com

*Attorneys for Defendant Tyson Foods, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 14, 2022, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Rachel J. Adcox
Rachel J. Adcox (#1001488)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
T: 202-912-4700
radcox@axinn.com
