# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION<br><br>This Document Relates To:<br>*Commercial & Institutional Indirect Purchaser Plaintiff Actions* | No. 1:16-cv-08637<br><br>Hon. Thomas M. Durkin<br>Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM IN SUPPORT OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ..................................................................................................... 2

   A.  CLASS COUNSEL'S REQUEST FOR ONE-THIRD OF THE SETTLEMENT FUND
     SHOULD BE GRANTED .................................................................................. 4

     1.   CIIPPs' Agreements and the Market Price Weigh in Favor of Granting the Request ..... 5

     2.   The Substantial Risk of Non-Payment Also Weighs in Favor of Granting CIIPPs' Fee
        Request ........................................................................................................ 7

     3.   The Caliber of Class Counsel and the Amount of Work Performed Weigh Heavily in
        Favor of Granting the Request ..................................................................... 12

     4.   Comparable Cases Favor Granting CIIPPs' Request .................................... 13

     5.   A Lodestar Cross-Check Confirms the Reasonableness of the Request ........................ 14

III. CIIPPs' EXPENSES REQUEST SHOULD BE GRANTED ............................................... 15

IV.  THE CLASS REPRESENTATIVES SHOULD RECEIVE SERVICE AWARDS FOR
    THEIR CONSIDERABLE TIME AND EFFORT .............................................................. 16

V.   CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*,
743 F.3d 243 (7th Cir. 2014) ........................................................................... 2

*Arenson, et al. v. Bd. of Trade of City of Chicago*,
372 F. Supp. 1349 (N.D. Ill. 1974) ................................................................. 18

*Beesley v. Int'l Paper Co.*,
No. 3:06–cv– 703–DRH–CJP, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ............................... 4

*Broiler Chicken*,
2021 WL 5709250 ................................................................................. *passim*

*Camp Drug Store, Inc. v. Cochran Wholesale Pharm, Inc.*,
897 F.3d 825 (7th Cir. 2018) ......................................................................... 21

*Chambers v. Together Credit Union*,
No. 19-CV-00842-SPM, 2021 WL 1948452 (S.D. Ill. May 14, 2021) ....................................... 3

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010) .............................................................. 18

*City of Greenville v. Syngenta Crop Prot., Inc.*,
904 F. Supp. 2d 902 (S.D. Ill. 2012) ............................................................... 10

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
258 F.R.D. 545 (N.D. Ga. 2007) ..................................................................... 12

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ....................................................................... 21

*Domann v. Summit Credit Union*,
No. 18-cv-167-wmc, 2020 WL 1847868 (W.D. Wisc. April 13, 2020) ................................ 20

*Florin v. Nationsbank of Georgia, N.A.*,
34 F.3d 560 (7th Cir. 1994) ....................................................................... 3, 5

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) ....................................................................... 18

*Gong-Chun v. Aetna Inc.*,
No. 1:09-cv-01995-SKO, 2012 WL 2872788 (E.D. Cal. July 12, 2012) ................................ 17

*Hale v. State Farm Mut. Auto. Ins. Co.*,
2018 WL 6606079 (S.D. Ill. Dec. 16, 2018).......................................................... 8, 18

*Heekin v. Anthem, Inc.*,
No. 1:05-CV-01908-TWP, 2012 WL 5878032, at (S.D. Ind. Nov. 20, 2012) .......................... 9

*In re Blech Securities Litigation*,
No. 94-cv-9696 (RWS), 2000 U.S. Dist. LEXIS 6920 (S.D. N.Y. May 22, 2000) ................ 17

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) ...................................................................... 8

*In re Dairy Farmers of Am., Inc.*,
80 F. Supp. 3d 838 (N.D. Ill. 2015) ................................................................ *passim*

*In re FedEx Ground Package System, Inc., Employment Practices Litig.*,
251 F.Supp.3d 1225 (N.D. Ind. 2017) .................................................................... 5

*In re Flonase Antitrust Litig.*,
291 F.R.D. 93 (E.D. Pa. 2013) ........................................................................ 12

*In re Linerboard Antitrust Litig.*,
No. CIV.A. 98-5055, 2004 WL 1221350 (E.D. Pa. June 2, 2004) .......................... 16

*In re Portal Software, Inc. Sec. Litig.*,
No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007).................... 18

*In re Ready-Mixed Concrete Antitrust Litig.*,
No. 1:05-cv-00979, 2010 WL 3282591, at (S.D. Ind. Aug. 17, 2010)...................... 7

*In re Shopping Carts Antitrust Litig.*,
No. 451-CLB, 1983 WL 1950 (S.D.N.Y. Nov. 18, 1983)...................................... 13

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ........................................................................ 8

*In re TFT-LCD (Flat-Panel) Antitrust Litig.*,
2013 WL 149692 (N.D. Cal. Apr. 3, 2013) ...................................................... 17

*In re Trans Union Corp. Privacy Litig.*,
629 F.3d 741 (7th Cir. 2011) ......................................................................... 9

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015)..................................................................... 18

*Leung v. XPO Logistics, Inc.*,
    326 F.R.D. 185 (N.D. Ill. 2018) ..................................................................... 10, 19

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) .............................................................................................. 21

*Pierce v. Visteon Corp*,
    No. 1:05-cv-01325-LJM, 2014 WL 941311 (S.D. Ind. Mar. 11, 2014) .................... 5

*Silverman v. Motorola Sols., Inc.*,
    739 F.3d 956 (7th Cir. 2013) ............................................................................. 6, 11

*Steele v. GE Money Bank*,
    No. 1:08-civ-1880, 2011 WL 13266350 (N.D. Ill. May 17, 2011) ........................... 4

*Taubenfeld v. AON Corp.*,
    415 F.3d 597 (7th Cir. 2005) ............................................................................... 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................................... 16

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) ............................................................................. 7, 19

## **Rules**

Fed. R. Civ. P. 23(h) ................................................................................................... 2, 21

Fed. R. Civ. P. 30(b)(1) ................................................................................................... 22

Fed. R. Civ. P. 30(b)(6) ................................................................................................... 22

# I. INTRODUCTION

Unlike many antitrust cases that begin with the benefit of a government investigation, this case began with extensive pre-complaint investigation and analysis by counsel for the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs"). This extensive work resulted in Class Counsel for CIIPPs establishing a comprehensive and well-pled complaint that withstood the many challenges lodged by Defendants and their able counsel.

Now, after nearly five years of tireless advocacy, CIIPPs have secured settlements with several Defendants in this matter: Amick Farms, LLC, Fieldale Farms Corporation, Mar-Jac,[1] Peco Foods, Inc., Pilgrim's Pride Corporation, George's,[2] and Tyson[3] (collectively, the "Settling Defendants"). Under the agreements, the Settling Defendants paid $104,890,000.00 into an escrow account ("Settlement Fund"), of which $1 million from the Pilgrim's Pride settlement may be used for notice and claims administration, exclusively, and Co-Lead Counsel for the CIIPPs have commenced the claims process to disburse the net proceeds of the Settlement Fund to qualified class members. These significant settlements illustrate the talent, competence, and hard work of Co-Lead Counsel[4] and other law firms[5] (jointly "Class Counsel") that provided excellent representation in prosecuting this case on behalf of the CIIPPs. The requested award of one third

---

[1] The Mar Jac Defendants are Mar-Jac Poultry, Inc., Mar-Jac Poultry MS, LLC, Mar-Jac Poultry AL, LLC, Mar-Jac AL/MS, Inc., Mar-Jac Poultry, LLC, and Mar-Jac Holdings, Inc.

[2] The George's Defendants consist of George's Inc. and George's Farms. Inc.

[3] The Tyson Defendants are Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Breeders, Inc., and Tyson Poultry, Inc.

[4] On October 14, 2016, this Court appointed Gustafson Gluek PLLC and Cotchett, Pitre & McCarthy, LLP as interim co-lead counsel. ECF No. 144.

[5] Co-Lead Counsel supervised the work of a number of supporting law firms that assisted with prosecuting the CIIPPs' case.

of the Settlement Fund is fair and reasonable and would appropriately compensate CIIPPs' Class Counsel for the enormous risk and investment undertaken in this complex case.

Class members have received notice of, and will have an opportunity to be heard on, this motion. Class Counsel informed all class members that they would seek an award of attorneys' fees not to exceed 35% of the Settlement Fund and reimbursement of litigation expenses not to exceed $10,658,854.99. In addition to filing this motion via ECF, Class Counsel also informed class members that it will be posted on the case website, www.chickencommercialsettlement.com. Finally, class members were informed through CIIPPs' Court-approved class notice program (ECF No. 5234) they may object to any portion of the settlements or this motion and that the deadline to do so is March 2, 2022. Before the fairness hearing on April 18, 2022, Class Counsel will report any objections lodged by members of the class and respond thereto. *See id.*

With qualified class members in the process of submitting claims to receive proceeds from the Settlement Fund, CIIPPs respectfully bring this motion seeking an order granting Class Counsel one-third of the settlement fund in an award of attorneys' fees (after deduction of expenses and service awards), reimbursement of litigation expenses in the amount of $10,407,499.62, and a $15,000 service award for each Class Representative in this matter.

## II.    ARGUMENT

Rule 23 permits the Court to award reasonable attorneys' fees and expenses in class actions. Fed. R. Civ. P. 23(h). In the Seventh Circuit, courts have discretion to use the percentage of the fund method or the lodestar approach. *See, e.g., Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243 (7th Cir. 2014) ("Both the lodestar approach and the percentage approach may be appropriate in determining attorney fee awards, depending on the circumstances."); *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994)

(same). In cases such as this one, the preferred method in the Seventh Circuit is to use the percentage of the fund approach. *See, e.g., Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948452, at *1 (S.D. Ill. May 14, 2021) ("[T]he percentage method is employed by the vast majority of courts in the Seventh Circuit"); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 845 (N.D. Ill. 2015) (the percentage method has "emerged as the favored method for calculating fees in common–fund cases in this district"); *Beesley v. Int'l Paper Co.*, No. 3:06–cv– 703–DRH–CJP, 2014 WL 375432, at *2 (S.D. Ill. Jan. 31, 2014) ("When determining a reasonable fee, the Court of Appeals for the Seventh Circuit uses the percentage basis rather than a lodestar or other basis.") (citation omitted).

This court has already recognized the percentage of the fund method as the "emerge[nt]" and "favored method for calculating fees in common-fund cases[.]" *In re Dairy Farmers of America, Inc., Cheese Antitrust Litigation*, 80 F.Supp.3d 838, 844 (N.D. Ill. 2015); *see also Steele v. GE Money Bank*, No. 1:08-civ-1880, 2011 WL 13266350, at *1, *5 (N.D. Ill. May 17, 2011), *report and recommendation adopted*, 2011 WL 13266498 (N.D. Ill. Jun. 1, 2011) ("The Seventh Circuit favors the use of the percentage of the fund method for calculating attorneys' fees in a common fund case."); *Pierce v. Visteon Corp*, No. 1:05-cv-01325-LJM, 2014 WL 941311, at *1, *11 (S.D. Ind. Mar. 11, 2014) (recognizing that "the Seventh Circuit has noted the advantages of the percentage of the fund method" over the lodestar method); *In re FedEx Ground Package System, Inc., Employment Practices Litigation*, 251 F.Supp.3d 1225, 1236 (N.D. Ind. 2017) ("Our court of appeals [the Seventh Circuit] favors the percentage-of-the-fund fee in common fund cases"). Unlike the lodestar calculation, a percentage fee is easily calculable and does not require the Court to scrutinize years of billing records. *See Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565–566 (7th Cir. 1994).

Moreover, Class Counsel retained Professor Robert Klonoff**,** an esteemed law professor who is considered by federal courts across the country as an expert on attorneys' fees, to opine on the reasonableness of CIIPPs' request in this case. *See* ECF Nos. 5050 and 5050-1. This Court concluded that Professor Klonoff's and Direct Purchaser Plaintiff ("DPP") Expert, Brian Fitzpatrick's opinions were helpful and relied on them to determine an award of one third of the settlement fund—the same sought here—was an appropriate award for DPPs. ECF No. 5229, at 4 n. 5.

### A. CLASS COUNSEL'S REQUEST FOR ONE-THIRD OF THE SETTLEMENT FUND SHOULD BE GRANTED

To determine the reasonableness of attorney's fees in a common fund case, such as this, "courts must do their best to award counsel the 'market price' for the legal services" they provided. *Sutton*, 504 F.3d at 692; *see also Silverman v. Motorola Sols., Inc.,* 739 F.3d 956, 957 (7th Cir. 2013) ("[A]ttorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services."); *see also,* ECF No. 5050 (Commercial and Institutional Indirect Purchaser Plaintiffs' Response Regarding Application of a Sliding Attorneys' Fee Scale).

In the antitrust class action context, the "market price" is most commonly one third of the common fund recovered. *In re Ready-Mixed Concrete Antitrust Litig.*, No. 1:05-cv-00979, 2010 WL 3282591, at *1, *3 (S.D. Ind. Aug. 17, 2010); *see also* Declaration of Professor Robert Klonoff in Support of Commercial and Institutional Indirect Purchaser Plaintiffs' Response to this Court's August 4, 2021 Minute Entry ECF No. 5050-1 ("Klonoff Decl.") paras. 60-67, also attached to Joint Declaration of CIIPPs' Co-Lead Counsel Daniel C. Hedlund and Adam J. Zapala in Support of Commercial and Institutional Indirect Purchaser Plaintiffs' Motion for Payment of Attorneys' Fees, Reimbursement of Expenses, and Class Representative Service Awards ("Joint Decl.").

"[T]he district court must try to assign fees that mimic a hypothetical *ex ante* bargain between the class and its attorneys." *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011); *accord, e.g., Sutton*, 504 F.3d at 693 (7th Cir. 2007).

The Seventh Circuit permits courts to consider four factors to determine the "market rate" in a case such as this: (1) the actual agreements between the parties, as well as fee agreements reached by entities in the market for legal services; (2) the risk of non-payment at the outset of the case; (3) the caliber of Class Counsel's performance; and (4) information from other cases, including fees awarded in comparable cases. *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *1, *8 (S.D. Ill. Dec. 16, 2018) (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir. 2001)). Consideration of the foregoing factors weigh heavily in favor of the Court granting CIIPPs' attorneys' fee request.

### 1. CIIPPs' Agreements and the Market Price Weigh in Favor of Granting the Request

The Seventh Circuit has directed district courts "to estimate the contingent fee that the class would have negotiated with Class Counsel at the outset of the litigation . . . ." *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 794 (N.D. Ill. 2015) (quoting *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 744 (7th Cir. 2011)). Here, because there are legal agreements that contain fee provisions between CIIPPs' Class Counsel and class representatives with a "real stake" in the outcome, these agreements favor granting the one-third fee request.

The agreements with the Class Representatives here fall into two groups: (1) agreements that expressly state Class Counsel may receive one-third of any common fund created, and (2) agreements that expressly state Class Counsel may receive an award of attorneys' fees from a

common fund, but do not specify the precise percentage to be awarded.[6]  Joint Decl. ¶ 30.  Thus, the only agreements that exist in the CIIPP case that set forth a percentage specify a one-third fee award, which demonstrates that the requested fee in this Motion is reasonable on its face.  *See, e.g., In re Converse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *4 (E.D.N.Y. June 24, 2010) ("The court sees no need to impose its own ex post assessment of lead counsel's value when the retainer and fee agreements speak for themselves."); *Heekin v. Anthem, Inc.*, No. 1:05-CV-01908-TWP, 2012 WL 5878032, at *5 (S.D. Ind. Nov. 20, 2012) (awarding the request fee award of 33.3 percent, reasoning that the "named plaintiffs . . . entered into contingent fee agreements with Class Counsel agreeing to pay a fee of 33.3% and up to 45% percent of the recovery depending on the stage of the litigation"); *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 908 (S.D. Ill. 2012) ("[P]laintiffs in this matter concluded a one-third contingency fee with advanced costs was in their best financial interests in this litigation . . . . Accordingly, these contracts *define* the market.") (emphasis in original); *accord* Klonoff Decl. ¶ 65.

    And, in any event, as subsequent sections demonstrate, a one-third fee *is* the market-based fee percentage. *See* Klonoff Decl. ¶¶ 66, 75, 76 ("typical contingent fee agreements in the Seventh Circuit (and elsewhere in the country) are 33 1/3 percent or greater" and including numerous examples of antitrust cases within the 7th Circuit with percentages of 33 percent or greater); *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 201 (N.D. Ill. 2018) ("a typical contingency agreement in this Circuit might range from 33% to 40% of recovery"); *In re Potash Antitrust Litig.,* No. 1:08-

---

[6] CIIPPs include 32 named plaintiffs: 14 plaintiffs entered legal agreements that expressly specified Class Counsel may receive 1/3 of any recovery; 18 plaintiffs entered legal agreements that stated Class Counsel may receive a fee award from any settlement or judgment fund created, but did not specify a percentage; and one plaintiff entered an agreement that expressly stated Class Counsel may receive "up to 35%."  Joint Decl. ¶ 30.

cv-06910 (N.D. Ill. June 12, 2013), Doc. No. 589 (awarding 33 1/3% fees) Joint Decl. Ex. 28; *In re: Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09-07666 (N.D. Ill. April 4, 2014), Doc. Nos. 697, 701 (same) Joint Decl. Exs. 29, 30; *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838 (N.D. Ill. 2015 (same).[7] Thus, the legal agreements that exist in this case with the Class Representatives for the CIIPPs support the fee requested.

### 2. The Substantial Risk of Non-Payment Also Weighs in Favor of Granting CIIPPs' Fee Request

"The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013); *see also In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 104 (E.D. Pa. 2013) ("[A]s a contingent fee case, counsel faced a risk of nonpayment in the event of an unsuccessful trial. Throughout this nearly 5 ½ year litigation, class counsel have not received any payment. This factor supports approval of the requested fee [of 33 1/3 percent]."). Thus, "[w]hen determining the reasonableness of a fee request, courts put a fair amount of emphasis on the severity of the risk (read: financial risk) that class counsel assumed in undertaking the lawsuit." *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 847-48 (N.D. Ill. 2015).

The risk that CIIPPs' Class Counsel would not receive payment at the outset of this case was *significant*. *See* Klonoff Decl. ¶¶ 55-58, 68-71; *accord Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 559 (N.D. Ga. 2007) ("[C]ourts have found that antitrust actions generally present complex, novel issues, and that plaintiffs can rarely guarantee recovery at trial.");

---

[7] Moreover, this Court already determined, with respect to the DPPs' Motion, ECF No. 5229, that an unspecified fee in a retainer agreement would result in "an award of 33 percent" because "[t]here is simply little to no precedent recommending" otherwise. *See Broiler Chicken*, 2021 WL 5709250, at *3 (granting one-third attorneys fee award where fee agreements between DPPs and their counsel stated their attorneys would receive a "percentage of any award," but did not specify how much).

*In re Shopping Carts Antitrust Litig.*, No. 451-CLB, 1983 WL 1950, at *7 (S.D.N.Y. Nov. 18, 1983) ("[A]ntitrust price fixing actions are generally complex, expensive and lengthy."). The breadth of the CIIPPs' case is vast: CIIPPs alleged Defendants engaged in an antitrust conspiracy to fix, raise, maintain, and stabilize the price of Broilers, and allege that the Class materially overpaid as a result of the conspiracy. *See* ECF No. 3929 (CIIPPs' Seventh Amended Consolidated Class Action Complaint). Despite the risk of no recovery and the opportunity cost of choosing this case over others, CIIPPs' Class Counsel deeply believed in the merits of the case. As mentioned, this risk was even greater than in many antitrust cases because this case was commenced without the benefit of any government investigation or enforcement action. CIIPPs' Class Counsel spent many hours researching the poultry industry and available public data and statements to craft the underlying allegations in this Action. Id. As the first indirect purchaser to file a complaint, many hours were similarly spent researching possible state-law antitrust, consumer protection, and unjust enrichment claims to bring in *Illinois Brick* repealer states on behalf of indirect purchasers. Id. Overcoming these initial challenges, Class Counsel have secured significant recoveries on behalf of the CIIPP Class. To date, CIIPPs' Class Counsel have generated a cumulative settlement amount of $104,890,000.00. Joint Decl. ¶ 11.

Since the intense preliminary work before filing the complaint, Class Counsel has spent nearly 85 thousand hours over five years diligently prosecuting this case for CIIPP class. After appointment as Co-Lead Counsel, CIIPPs' Class Counsel engaged, *inter alia*, in the following extensive work:

- Successfully opposed multiple motions to dismiss filed jointly and individually by each Defendant, in which Defendants contested every claim the CIIPP class set forth. After extensive briefing and oral argument, the Court denied Defendants' motions and allowed this case to proceed;

- Quickly began negotiating discovery requests, search terms, and custodians for each Defendant and engaging in extensive third-party discovery;

- Served over 50 document subpoenas on non-parties, some of which required contested motion practice including in far-flung jurisdictions, for purposes of demonstrating pass-through, antitrust impact, and damages. This work was extensive, laborious, and critical for purposes of class certification and damages. The work resulted in extensive granular transactional data from intermediaries in the chain of distribution;

- Once Defendants started producing documents, CIIPPs' Class Counsel undertook a review of over 9 million pages of documents in coordination with the other classes, putting the most attorneys on the document review of any other class;

- Without duplicating work, prepared for and participated in more than 120 depositions, with CIIPPs' Class Counsel being the lead deposition taker on a significant number;

- Spent hundreds of hours working with their 32 class representatives to respond to Defendants' requests for production, interrogatories, and requests for admission, and formulating subsequent supplemental responses;

- Relatedly, Class Counsel undertook a comprehensive review and collection of responsive documents and data from all 32 class representatives, which took considerable staffing, resources, time, and money. Defendants noticed the deposition of every class representative, requiring CIIPPs to spend many hours preparing for and defending the depositions of 32 named plaintiffs. Id. Many of these class-representative depositions lasted over four hours, with some taking almost seven hours;

- CIIPP Class Counsel prepared for, attended, and argued at many Court hearings, including on contested motions, case management conferences, hearings regarding case structure, and settlement approval.

Joint Decl. ¶ 8

For a full discussion of the extensive work performed by Class Counsel in this litigation, the Joint Declaration of Class Counsel recounts these tasks in more detail. *See* Joint Decl. ¶ 8.

Notably, the risk of nonpayment was ever-present, as CIIPPs faced some of the most powerful and well-financed multinational corporations, which were represented by the biggest and most prominent law firms in the United States. Indeed, the first settlement (Fieldale) in this

litigation was not achieved until over two years of litigation, and the first large settlement (Tyson) was not achieved until *five years* into the litigation. No litigation outcome was ever certain. As this Court aptly noted, motion practice has included moments that could have defeated CIIPPs' claims, with some even being "close call[s]." *Broiler Chicken*, 2021 WL 5709250, at *1, *3.

Any final outcome to this Action has also been delayed, and thus the entire Action made more risky for CIIPPs' Class Counsel, by unprecedented and lengthy stays brought on by the COVID-19 pandemic, *see, e.g.,* United States District Court for the Northern District of Illinois Amended General Order 20-0012 (March 16, 2020) ("In all civil cases, all deadlines, whether set by the court or by the Rules of Civil Procedure or Local Rules, are hereby extended by 21 days from the current deadline set."), and the continual discovery stays, either in full or in part, sought by the Department of Justice, *see, e.g.,* ECF No. 2268 (June 21, 2019), Motion by Intervenor United States of America to Intervene and Stay Discovery. As stated above, this case was initiated without the benefit of a government investigation. Instead, the United States intervened over two years into this Action and sought a stay. As this Court noted, "[a]ppointed Counsel's work appears to have prompted the government investigations that led to [the] indictments, rather than the reverse." ECF No. 5229, at 8. Moreover, the Department of Justice requested and eventually received large and comprehensive document productions from the civil plaintiff classes by subpoena. Based on the foregoing, CIIPPs' fee request is particularly reasonable and appropriate. *See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (affirming fee award of $220,290,160 and noting that "plaintiffs' counsel did not have the benefit of 'piggybacking' off of a previous case—instead, the Government piggybacked off of plaintiffs' counsel's work" and that "it is especially important to provide appropriate incentives to attorneys pursuing antitrust actions because public policy relies on private sector enforcement of the antitrust

laws."); *In re Linerboard Antitrust Litig.*, No. CIV.A. 98-5055, 2004 WL 1221350, at *17 (E.D. Pa. June 2, 2004), amended, No. CIV.A.98-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004) (noting that "providing sufficient . . . incentive for the private attorney general is particularly important in the area of antitrust enforcement because public policy relies so heavily on such private action for enforcement of the antitrust law"). As this Court concluded, "[a] substantial award is warranted here as a proper incentive for high quality counsel to take on complex cases, requiring a massive investment of time and money, with such a high risk of non-payment." ECF No. 5229, at 8.

The risk undertaken by CIIPP Class Counsel has been magnified by the extensive expert work (and their related, substantial costs) necessary for CIIPPs to meet their burden at class certification and summary judgment. CIIPPs' Class Counsel engaged Dr. Russell Mangum and his staff, who performed extensive transactional data analysis, constructed vast databases, and built robust regression models, amongst many other tasks, that permitted them to opine on the magnitude of the overcharges caused by Defendants' conduct, including the measure of such overcharges that were passed-through to CIIPPs. Joint Decl. ¶ 8. Class Counsel's work has thus far culminated with Dr. Mangum's 147-page opening report; a 195-page reply report in support of class certification; and a 90-page opening merits report. Id. Furthermore, CIIPPs retained Dr. Michael Williams, who prepared a 183-page liability report detailing, *inter alia*, the anticompetitive nature of Defendants' conduct. CIIPPs' Class Counsel drafted and filed their voluminous class certification motion with related expert reports, substantive exhibits, and declarations. Id; *see* ECF Nos. 3968, 4493, and 4512. Indeed, CIIPPs face a case that is even more complex and risky than the DPPs, as they must perform unique analyses of passthrough requiring extensive, additional expert work and data analysis. As set out further below, the cost of all this

expert work required large amounts of funding. Joint Decl. ¶ 20, ¶ 22, Exs. 26-27 (detailing over $10 million in case costs). All of this costly, necessary, and complex work was undertaken without any promise of repayment, making the risks to Class Counsel truly extraordinary.

### 3. The Caliber of Class Counsel and the Amount of Work Performed Weigh Heavily in Favor of Granting the Request

The caliber of Class Counsel in this matter has been exemplary. CIIPPs' Class Counsel have invested over 85,000 hours to this Action. Class Counsel's collective lodestar, therefore, is $40,260,516.00. CIIPPs' requested fee if granted, therefore, will constitute a negative multiplier of .77. This is another factor supporting approval of the requested fee. *See, e.g., In re Blech Securities Litigation*, No. 94-cv-9696 (RWS), 2000 U.S. Dist. LEXIS 6920 (S.D. N.Y. May 22, 2000) (citing evidence that award would represent a negative multiplier of the lodestar as support for a 30% award) *In re TFT-LCD (Flat-Panel) Antitrust Litig.*, 2013 WL 149692, at *1 (N.D. Cal. Apr. 3, 2013) (negative multiplier of 0.86 confirmed amount of attorneys' fees requested was fair and reasonable); *Gong-Chun v. Aetna Inc.*, No. 1:09-cv-01995-SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (negative multiplier of .79 suggested that fee award was reasonable); *Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848, 853–54 (N.D. Cal. 2010) (negative multiplier of .59 indicated fee award was "reasonable and a fair valuation of the services rendered to the class by class counsel"); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) (negative lodestar multiplier of 0.83 or 0.74 "suggests that the requested percentage based fee is fair and reasonable").

The enormous amount of work undertaken by Class Counsel, as noted, is detailed in the Joint Declaration. CIIPPs' Class Counsel are some of the country's most experienced and successful antitrust and complex litigation attorneys. *See* ECF No. 116 at 8-13. And, Defendants' counsel are similarly skilled and experienced, and have mounted a formidable defense. *See*

*Arenson, et al. v. Bd. of Trade of City of Chicago*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974) (noting that the quality, vigor, and prior success of opposing counsel is an important factor when assessing the quality of work performed by plaintiffs' counsel). This Court is familiar with the caliber of work performed by CIIPPs' Class Counsel, and they respectfully suggest that it merits the requested fee.

### 4. Comparable Cases Favor Granting CIIPPs' Request

"Another relevant data point for the market price for attorneys' fees is those awarded in 'analogous class action settlements.'" *Hale*, 2018 WL 6606079 at *10 ("Courts within the Seventh Circuit, and elsewhere, regularly award percentages of 33.33% or higher to counsel in class action litigation."); *see also Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) (noting the relevance of "attorneys' fees from analogous class action settlements"); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015) ("Attorney's fee awards in analogous class action settlements shed light on the market rate for legal services in similar cases."); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (collecting cases). Additionally, Professor Klonoff's Declaration previously submitted and also submitted herewith compiles a number of cases within the Seventh Circuit awarding fees of 33% or great. Klonoff Decl. ¶ 76.

Here, this Court need look no further than its own finding in the DPP Action: "The fact that fee awards in antitrust cases in [the Seventh Circuit] are almost always one-third is a strong indication that this should be considered the 'market rate.'" *Broiler Chicken*, 2021 WL 5709250, at *4. This is precisely the approach CIIPPs are taking here, and their request is exactly in line with what this Court previously ordered in connection with the DPPs' fee request. The foregoing considerations strongly support CIIPPs' request.

### 5.      A Lodestar Cross-Check Confirms the Reasonableness of the Request

Although the previously mentioned percentage-of-the-fund method is favored in the Seventh Circuit for determining fees in common fund cases, courts may also use a "lodestar cross-check" to ascertain class counsel's time investment, determine the reasonableness of a fee, and avoid windfall. *In re Dairy Farmers of America, Inc.*, 80 F. Supp. 3d 838, 844 (N.D. Ill. 2015). This cross-check is not required, however. *Rohm & Haas II*, 658 F.3d at 636 ("[C]onsideration of a lodestar check is not an issue of required methodology"); *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 204 (N.D. Ill. 2018) ("The Court is not required to check its percentage-of-fee determination against the lodestar.")

As noted, using counsel's historic hourly rates to calculate the lodestar results in a .77 multiplier, which constitutes a *negative* multiplier. CIIPPs' Class Counsel invested over 85,000 hours of attorney and other professional time from case inception through August 31, 2021. Joint Decl. Ex. 25. The average hourly rate by Class Counsel and their associated professional staff is approximately $470 per hour (with a cap of $350.00 for hour on document review, *see* Joint Decl Ex. 2), a reasonable and comparable rate for those charged by other firms with similar experience, expertise, reputation and for similar services.[8] Courts in the Seventh Circuit regularly grant fee awards that result in a negative multiplier. *See, e.g., Domann v. Summit Credit Union*, No. 18-cv-167-wmc, 2020 WL 1847868 (W.D. Wisc. April 13, 2020) ("The fact that the lodestar method produces a 'negative multiplier' is also a factor supporting the reasonableness of the fee request, given that courts have approved multipliers of five or more.").

---

[8] Since the inception of this Action, Interim Co-Lead Counsel have submitted Class Counsel's lodestar and expense information to the Court *in camera* on a quarterly basis. CIIPPs' Class Counsel have conducted an additional audit of this time in preparing this motion. Joint Decl. ¶ 15.

## III.    CIIPPs' EXPENSES REQUEST SHOULD BE GRANTED

CIIPPs request reimbursement of $10,407,499.62 for reasonable expenses incurred in bringing these claims. CIIPPs counsel is aware that this request exceeds the amount of costs of the DPP class when they sought payment of expenses from this Court. However, of the amount CIIPPs request, nearly $8.5 million stems from the extensive work undertaken by CIIPPs' economic experts and their analysis of massive amounts of data including non-party data to prove pass through of overcharges—something not required in the DPP case. This amount of costs further supports CIIPPs' Class Counsel's requested fee because it demonstrates that this has been an extraordinarily high-risk endeavor to pursue. This is all the more true given this Court's practice— consistent with CIIPPs' request— that litigation costs are deducted before a percentage is applied to the settlement fund to calculate the fee. Thus, Class Counsel is not seeking fees on this portion ($10,407,499.62) of the Settlement Fund.

Counsel are routinely entitled to reimbursement of reasonable expenses incurred in litigation, as DPPs were with respect to their expenses. Fed. R. Civ. P. 23(h); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970) (recognizing counsel's right to reimbursement of expenses where a common fund has been established for the benefit of a class). Reimbursable expenses are those "that are consistent with market rates and practices." *In re Ready-Mixed Concrete*, 2010 WL 3281591, at *1, *3 (S.D. Ind. Aug. 17, 2010).[9] CIIPPs' expenses include $8,474,655.60 in expert costs, $1,123,780.46 in discovery database costs, $76,663.12 in special master and mediator costs, $134,121.86 in deposition costs, and $166,338.96 in consultant costs,

---

[9] Conforming to this Court's guidance in the DPP proceeding, CIIPPs' request for expenses can be deducted from the settlement fund before the one-third fee award percentage is applied. *Broiler Chicken*, 2021 WL 5709250, at *4.

along with a number of miscellaneous costs, including transcript orders, travel, photocopies, mail, telephone, etc. Joint Decl. ¶ 20, Exs. 26, 27. These expenses have been necessary to litigate this Action in the best interests of the CIIPP Class and to achieve the favorable settlements to date.

## IV.   THE CLASS REPRESENTATIVES SHOULD RECEIVE SERVICE AWARDS FOR THEIR CONSIDERABLE TIME AND EFFORT

Each Class Representative representing the CIIPP class should receive $15,000 for their considerable time and effort in supporting the case. "Because a named plaintiff is an essential ingredient of any class action, an incentive [or service] award is appropriate if it is necessary to induce individuals to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). To determine if an incentive award is warranted, a court evaluates (i) actions the plaintiff has taken to the protect the interests of the class, (ii) the degree to which the class has benefitted from those actions, and (iii) the amount of time and effort the plaintiff expended in pursuing the litigation. *Camp Drug Store, Inc. v. Cochran Wholesale Pharm, Inc.*, 897 F.3d 825, 834 (7th Cir. 2018). This Court has recognized that "[e]mpirical evidence shows that incentive awards [][] paid in most class suits average between $10-$15,000 per class representative." *Broiler Chicken*, 2021 WL 5709250, at *5. CIIPPs request exactly that—$15,000, the same amount this Court awarded to the DPP class representatives.

The Class Representatives have thus far undertaken substantial and invasive work, at a risk to themselves and their business. *See* ECF Nos. 3968-8 and 3968-9 (Compendium of Class Representatives Declaration Part I and II). The Class Representatives are all small businesses, many are owner-operated, and many have only a handful of employees. Joint Decl. ¶ 32. Every Class Representative spent numerous hours searching their offices and homes to provide documents and information in response to discovery requests propounded by the Defendants. ECF Nos. 3968-8 and 3968-9. Every Class Representative had a Fed. R. Civ. P. 30(b)(6) or a Fed. R.

Civ. P. 30(b)(1) deposition taken, and one of them—Alpine Special Treatment Center, Inc.—had its deposition taken twice. *Id.* ¶ 31. Often, the corporate representative of the Class Representative was the owner and chef, meaning the restaurant had to be closed or operated with limited resources while the deposition took place. *Id.* ¶ 32. The Class Representatives also risked potential retaliatory actions taken up the distribution chain for their involvement in this litigation. In light of the work already performed, CIIPPs request a reasonable $15,000 service award for each of the businesses serving as a Class Representative.

## V.    CONCLUSION

For all the foregoing reasons, CIIPPs respectfully ask this Court to: (1) grant their request for attorneys' fees of one-third of the settlement fund, (2) grant their request for reimbursement of their reasonably incurred litigation expenses, and (3) grant their request for Class Representative service awards.

Dated: January 28, 2022                    Respectfully Submitted:

/s/ *Daniel C. Hedlund*
Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua J. Rissman
Brittany Resch
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsongluek.com

*Co-Lead Counsel for the Commercial and*
*Institutional Indirect Purchaser Class*

17

/s/ *Adam J. Zapala*
Adam J. Zapala
Tamarah P. Prevost
James G.B. Dallal
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
azapala@cpmlegal.com
tprevost@cpmlegal.com
jdallal@cpmlegal.com

Alexander E. Barnett
**COTCHETT, PITRE & MCCARTHY, LLP**
40 Worth Street, Suite 602
New York, NY 10013
Tel: (212) 201-6820
abarnett@cpmlegal.com

*Co-Lead Counsel for the Commercial and
Institutional Indirect Purchaser Class*

Kenneth A. Wexler
Melinda J. Morales
**WEXLER BOLEY & ELGERSMA, LLP**
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Tel: (312) 346-2222
kaw@wbe-llp.com
mjm@ wbe-llp.com

*Liaison Counsel for the Commercial and
Institutional Indirect Purchaser Class*