**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION<br><br>This Document Relates To:<br>*Commercial & Institutional Indirect Purchaser Plaintiff Actions* | No. 1:16-cv-08637<br><br>Hon. Thomas M. Durkin<br>Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OF LAW IN SUPPORT OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' UNCONTESTED MOTION FOR FINAL APPROVAL OF SETTLEMENTS WITH AMICK, FIELDALE, GEORGE'S, MAR-JAC, PECO, PILGRIM'S PRIDE, AND TYSON DEFENDANTS**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................... 1

II.    STATEMENT OF FACTS ............................................................................ 1

    A.    Litigation Background ....................................................................... 1

    B.    Summary of Settlement Negotiations and Agreements ........................... 2

    C.    Approval of the Class Notice Program ................................................ 3

III.   ARGUMENT .............................................................................................. 3

    A.    The Court-Approved Notice Program Satisfied Due Process And Has Been Fully Implemented ................................................................... 3

    B.    The Proposed Settlements Are Fair, Reasonable, And Adequate And Should Be Finally Approved ......................................................................... 5

        1.    The Class Representatives and Co-Lead Counsel Adequately Represented the Classes. ........................................................ 6

        2.    The Settlements Resulted from Arms-Length Negotiations .......... 8

        3.    The Settlements Provide Substantial Relief to the Members of the Classes. ................................................................................ 8

            a.    The Costs, Risks, And Delay of Trial And Appeal Weigh in Favor of Settlement ...................................................... 9

            b.    The Method for Distributing Relief is Effective ................ 10

            c.    The Request for a Fee Award of One-Third of the Settlement Fund is No Barrier to Final Approval ................. 10

            d.    All Agreements Have Been Identified Pursuant to Fed. R. Civ. P. 2(e)(3) .................................................... 101

        4.    The Settlements Treat Members of the Classes Equitably ........... 11

        5.    Strength of the Case Balanced Against the Settlement Amount Offered ................................................................................ 12

        6.    Co-Lead Counsel Are Experienced Counsel Who Recommend the Settlements. ......................................................................... 13

        7.    The Reaction of Class Members Supports Final Approval ........... 13

        8.    The Stage of Proceedings And Amount of Discovery Favor Final Approval .............................................................................. 14

    C.    The Court Should Grant Final Certification of the Proposed Settlement Classes. 14

IV.   CONCLUSION .......................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Agretti v. ANR Freight,*
   982 F.2d 242 (7th Cir. 1992) ................................................................................13

*Amchem v. Windsor,*
   521 U.S. 591, 614 (1997)........................................................................................15

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee,*
   616 F.2d 305 (7th Cir. 1980) ...................................................................................5

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.,*
   789 F. Supp. 2d 935 (N.D. Ill. 2011) ....................................................................14

*Bills v. TLC Homes,*
   No. 19-CV-148-PP, 2020 WL 5982880 (E.D. Wis. Oct. 8, 2020) .........................11

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
   No. 14-CV-2058 JST, 2015 WL 9266493 (N.D. Cal. Dec. 17, 2015)....................14

*Chambers v. Together Credit Union,*
   No. 19-CV-00842-SPM, 2021 WL 1948453 (S.D. Ill. May 14, 2021) ......................... *passim*

*Charvat v. Valente,*
   No. No. 12-cv-05746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) ...................6, 8

*City of Greenville v. Syngenta Crop Protection, Inc.,*
   No. 3:10-CV-188, 2012 WL 1948153 (S.D. Ill. May 30, 2012) .............................4

*Gehrich v. Chase Bank USA, N.A.,*
   316 F.R.D. 215 (N.D. Ill. 2016)........................................................................4, 13

*Isby v. Bayh,*
   75 F.3d 1191 (7th Cir. 1996) .................................................................5, 6, 13, 14

*Kleen Products, LLC v. International Paper Company,*
   No. 1:10-cv-05711, 2017 WL 5247928 (N.D. Ill. Oct. 17, 2017) ................8, 10, 13

*Kolinek v. Walgreen Co.,*
   311 F.R.D. 483 (N.D. Ill. 2015)........................................................................9, 13, 14

*In re Linerboard Antitrust Litig.,*
   292 F. Supp. 2d 631 (E.D. Pa. 2003) ....................................................................12

*In re Mid-Atlantic Toyota Antitrust Litig.*,
    564 F. Supp. 1379 (D. Md. 1983) ........................................................................12

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) .............................................................13, 14

*Synfuel Technologies, Inc. v. DHL Express*,
    463 F.3d 646 (7th Cir. 2006) .............................................................6, 9, 13, 14

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
    309 F.3d 978 (7th Cir. 2002) ..............................................................................6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).................................................................................9

**Rules**

Federal Rules of Civil Procedure
    Rule 23 ..............................................................................................................6
    Rule 23(a)........................................................................................................15
    Rule 23(b)(3)...................................................................................................15
    Rule 23(c)(2)(B)................................................................................................4
    Rule 23(e)..........................................................................................................6
    Rule 23(e)(2).................................................................................................6, 8
    Rule 23(e)(2)(A)...........................................................................................6, 8
    Rule 23(e)(2)(B)................................................................................................8
    Rule 23(e)(2)(C)................................................................................................8
    Rule 23(e)(2)(C)(ii)........................................................................................10
    Rule 23(e)(2)(c)(iv)........................................................................................11
    Rule 23(e)(2)(D).............................................................................................11
    Rule 23(e)(3)...................................................................................................11

**Other Authorities**

4 Newberg on Class Actions § 13:53 (5th ed.) ........................................................10

## I.     INTRODUCTION

After years of intense litigation, the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs") have secured substantial monetary settlements with several Defendants[1]: Amick Farms, LLC, Fieldale Farms Corporation, Mar-Jac, Peco Foods, Inc., Pilgrim's Pride Corporation, George's, and Tyson (collectively, the "Settling Defendants"). These settlements, collectively, result in a total recovery of $104,890,000 for the CIIPP Settlement Classes. In addition, Settling Defendants agreed to provide specified types of cooperation to aid in the ongoing prosecution of this action. The settlements represent an excellent result for the class. Indeed, the Court already has preliminarily approved the settlements and ordered notice be provided to the Settlement Classes to gauge their reaction. *See* ECF Nos. 1910, 3696, 4113, 5363. The reaction of the class strongly supports settlement approval: No class members have objected, and very few have opted out of any of the settlements. Accordingly, Co-Lead Counsel, drawing on their extensive class action experience and based on their diligent prosecution of the litigation, have concluded that the settlements are fair, reasonable, and adequate, and merit final approval, and respectfully request that the Court finally approve the settlements.

## II.     STATEMENT OF FACTS

### A.  Litigation Background

On October 14, 2016, the Court appointed the undersigned as Interim Co-Lead Counsel for the CIIPPs. ECF No. 144. CIIPPs have diligently litigated this antitrust class action since. CIIPPs allege that Defendants conspired to manipulate the market for broiler chickens ("Broilers") by suppressing output, fixing prices, and rigging bids in violation of the Sherman Act and various state laws. *See* ECF No. 3929 (CIIPPs' Seventh Am. Consol. Am. Compl., and

---

[1] A full list of entities covered by the settlement agreements is shown in Attachment A.

hereinafter the "Complaint"); 3931 (sealed unredacted). Defendants filed robust motions to dismiss an earlier version of the complaint, and the Court, in large measure, denied the motions on November 11, 2017 based on CIIPPs' extensive briefing of the matter. ECF No. 541. Discovery proceeded apace, though it subsequently slowed due to a stay requested by the Department of Justice (*see* ECF Nos. 2268, 2302, 3153, 5246, 5451) and the COVID-19 pandemic. CIIPPs engaged in extensive discovery efforts. *See* Declaration of Adam J. Zapala ("Zapala Decl.") ¶¶ 5, 6; *and see infra* § IV.A.2.b. On October 30, 2020, CIIPPs moved for class certification. ECF No. 3968. Plaintiffs' motion required extensive briefing on complex legal issues and consultation with experts, the exchange of rebuttal expert material, depositions of Defendants' experts, and defending the deposition of CIIPPs' expert. The motion has been fully briefed and will be heard by this Court on May 10-11.

**B. Summary of Settlement Negotiations and Agreements**

With respect to each of the Settling Defendants, settlement was reached only after extensive arm's length negotiations over the course of many months, during which time the parties held in-person and telephonic meetings and exchanged information and settlement proposals; each side had the opportunity to be fully informed of the relative strengths and weaknesses of their positions, litigations risks, and issues involving ability to pay and to negotiate many terms of the settlements. Zapala Decl. ¶¶ 8, 25.[2] Throughout this process, Settling Defendants were represented by experienced, sophisticated counsel, and the negotiations were conducted at arm's length. *Id.* ¶ 8. In these discussions, counsel for CIIPPs were focused solely on obtaining the best possible result for the CIIPP class. *Id.* ¶ 8. The settlements CIIPPs

---

[2] Settlement negotiations with Peco, George's, and Pilgrim's each included a mediation with a nationally-renowned mediator, and negotiations with Tyson included multiple mediation sessions and subsequent negotiations under the direction of a nationally-renowned mediator. Zapala Decl. ¶8 fn. 5.

reached with Defendants call for the following payments[3]: Fieldale: $1,400,000.00; Amick: $2,950,000.00; Peco: $3,525,000.00; George's: $3,525,000.00; Mar-Jac: $5,990,000.00; Tyson: $42,500,000.00; Pilgrim's Pride: $44,000,000.00. Zapala Decl. ¶¶ 9, 12, 14, 16, 18-20, 26.[4]

### C. Approval of the Class Notice Program

On November 24, 2021, after all the proposed settlements had been preliminarily approved, CIIPPs filed a Motion for Approval of Class Notice Plan for First Round Settlements. *See* ECF No. 5212. The Notice Program proposed direct notice by mail and/or email, supplemented by publication notice through print and media outlets, as well as an array of additional online services and media. *See* ECF Nos. 5213, 5214. The Notice Program also described the plan of allocation. *Id.* On December 2, 2021, the Court approved CIIPPs' Notice Program. ECF 5234 at 2. In addition, the Court authorized CIIPP counsel and the notice and claims administrator, A.B. Data, to "implement the proposed Plan of Allocation in issuing notice to the settlement classes," and further authorized counsel for the CIIPP settlement classes to "expend money from the escrow accounts for purposes of providing notice and claims administration." ECF No. 5234 at 3. CIIPPs successfully implemented the Court-approved notice program. *See generally*, Schachter Decl.

## III. ARGUMENT

### A. The Court-Approved Notice Program Satisfied Due Process And Has Been Fully Implemented

In connection with class action settlement approval, the Federal Rules require "the best notice that is practicable under the circumstances," and that specified items in the notice be

---

[3] Zapala Decl. ¶ 7 fn. 4, Exs. A-G.
[4] Each settlement also calls for the settling Defendant to provide CIIPPs with cooperation in the ongoing prosecution of this case. *Id.* ¶¶ 9, 11-17, 21. Further, the Pilgrim's Pride settlement calls for payment of an additional $1,000,000 to defray settlement administration costs for a total of $45 million. *Id.* ¶ 19.

"clearly and concisely stated in plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B).

The Notice Plan approved by this Court (*see* ECF No. 5234)—relying on direct notice to members of the Settlement Classes supplemented by publication notice and earned media to maximize actual notice—is common in class actions like this one. *See, e.g., Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 232 (N.D. Ill. 2016); *City of Greenville v. Syngenta Crop Protection, Inc.*, No. 3:10-CV-188, 2012 WL 1948153, at *4 (S.D. Ill. May 30, 2012) (same). The notice here constitutes valid, due, and sufficient notice to Class members and is the best notice practicable under the circumstances.

The Court-approved Notice Plan related to the settlements has been successfully implemented. Zapala Decl. ¶ 28. Specifically, A.B. Data, the notice provider retained by CIIPPs and approved by the Court, mailed a total of 689,810 Notice Packets to putative class members and mailed the Short-Form Notice, formatted as a postcard, to another 470,904 potential Settlement Class Members. Schachter Decl.¶¶ 12-13. Class Counsel and A.B. Data went through the painstaking process of pre-populating claims forms with purchase data received from nonparty distributors for those claimants residing in states eligible to share in the settlement proceeds. *Id.* ¶¶ 10-12. To supplement direct notice, A.B. Data arranged for publication notice via print and digital ads run in food industry publications including Convenience Store News; Supermarket News; Nation's Restaurant News; Progressive Grocer; and QSR; and on their websites. *Id.* ¶¶ 15. These publications and websites reach managers responsible for food-related purchasing decisions likely to include commercial and institutional purchasers of Broilers. *Id.* ¶ 15. A.B. Data also placed digital banner ads on the following trade publication websites: csnews.com, food-management.com, foodservicedirector.com, nrn.com, progressivegrocer.com, qsrmagazine.com, restaurant-hospitality.com, and supermarketnews.com; and placed targeted

digital banner ads via the Google Display Network and YouTube targeted to owners, managers, and staff in commercial and institutional entities that purchase chicken for food preparation. *Id.* ¶ 16. Programmatic buying ensured cost-efficient and effective placement of the banner ads, and a minimum of 20 million impressions were delivered over a period of 30 days. *Id.* ¶ 16. A.B. Data also disseminated a news release via the PR Newswire distribution service that reached more than 10,000 newsrooms across the United States. *Id.* ¶ 17. To assist potential Settlement Class Members in understanding the terms of the Settlements and their rights, A.B. Data established a case-specific toll-free telephone number and a case-specific website. *Id.* ¶¶ 18-19. As of April 1, 2022, the Settlement Website has had 34,677 unique visitors, and there have been 1,149 calls to the toll-free number. *Id.* ¶¶ 18-19.

The Settlement Administrator reviewed and processed all requests for exclusion. *Id.* ¶ 20. This process included determining the timeliness and validity of any requests for exclusion, identifying the entities that fell within the scope of valid requests for exclusion, and assisting the parties in determining the opt-out calculations. *Id.* ¶ 20. As a result of this process, the Administrator compiled a list of entities that have validly requested exclusion, which is set forth at Exhibit F of the Schachter Declaration. *Id.* ¶ 20.

## B. The Proposed Settlements Are Fair, Reasonable, And Adequate And Should Be Finally Approved

There is an overriding public interest in quieting litigation, which is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").[5] A class action may be settled only with court

---

[5] *See also Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998), *aff'd sub nom. California Public Employees' Retirement System v. Felzen*, 525 U.S. 315 (1999).

approval. Fed. R. Civ. P. 23(e). Approval of a class action settlement is committed to the sound discretion of the Court. *See Isby*, 75 F.3d at 1196-97. The proper focus "is upon 'the general principles governing approval of class action settlements' and not upon the 'substantive law governing the claims asserted in the litigation.'" *Id.* at 1197 (quoting *Armstrong*, 616 F.2d at 315). The standard for final approval is whether the settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e); *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002); *Isby*, 75 F.3d at 1198-99. A district court may find a class action settlement is "fair, reasonable, and adequate" after considering the factors listed in Fed. R. Civ. P. 23(e)(2)(A)-(D). The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil Procedure indicate that the four factors provided in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory comm. nn. (2018). Indeed, even after the amendment of Rule 23, courts in the Seventh Circuit have continued to evaluate and grant final approval based upon the factors set forth in *Isby* and *Synfuel Technologies, Inc. v. DHL Express,* 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Isby,* 75 F.3d at 1199). *See, e.g., Charvat v. Valente,* No. No. 12-cv-05746, 2019 WL 5576932, at *5 (N.D. Ill. Oct. 28, 2019) (citing *Synfuel*, 463 F.3d at 653)); *see also Chambers v. Together Credit Union,* No. 19-CV-00842-SPM, 2021 WL 1948453, at *2 (S.D. Ill. May 14, 2021).

### 1. The Class Representatives and Co-Lead Counsel Adequately Represented the Classes.

Rule 23(e)(2) advises district courts to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Here, the Class Representatives and Class Counsel have adequately represented the Classes. *See* ECF Nos. 3968-

1 at 32-33; 5079 at 13-14; 1534 at 12-13; 3669 at 12-13; 4078-1 at 11-12. As CIIPPs noted in their motion for attorney fees, reimbursement of expenses and Class Representative service awards:

> [t]he Class Representatives have thus far undertaken substantial and invasive work, at a risk to themselves and their business . . . . Every Class Representative spent numerous hours searching their offices and homes to provide documents and information in response to discovery requests propounded by the Defendants. ECF Nos. 3968-8 and 3968-9. Every Class Representative had a Fed. R. Civ. P. 30(b)(6) or a Fed. R. Civ. P. 30(b)(1) deposition taken, and one of them—Alpine Special Treatment Center, Inc.— had its deposition taken twice. *Id.* ¶ 31. Often, the corporate representative of the Class Representative was the owner and chef, meaning the restaurant had to be closed or operated with limited resources while the deposition took place. *Id.* ¶ 32. The Class Representatives also risked potential retaliatory actions taken up the distribution chain for their involvement in this litigation.

ECF 5405 at 16-17. The Class Representatives interests align with those of the absent class members. ECF 3968-1 at 32.

Co-Lead Counsel has adequately represented the Settlement Classes, including by expending over 85,000 hours of attorney work on this matter. ECF 5405 at 8-9. During that time, they among other things propounded and obtained responses to multiple sets of interrogatories, received and reviewed 8.5 million documents in response to requests for production and third-party subpoenas, conducted more than one hundred depositions of Defendants and third-parties, and provided responses to written discovery, produced documents, appeared for depositions noticed by the Defendants, and engaged in extensive expert work and discovery in support of class certification and damages. *See* Zapala Decl. ¶ 5. CIIPPs' counsel has also prepared for, attended, and argued at many Court hearings, including on contested motions, case management conferences, hearings regarding case structure, and settlement approval; and opposed (and defeated) multiple motions to dismiss in which Defendants contested every claim the CIIPP class

set forth. ECF 5405 at 8.[6] This diligent prosecution demonstrates adequate representation and

supports final approval. *See* Fed. R. Civ. P. 23(e)(2)(A); *Chambers,* 2021 WL 1948453, at *2.

### 2.   The Settlements Resulted from Arms-Length Negotiations

The next consideration under Rule 23(e)(2) is whether the settlement was "negotiated at

arm's length." Fed. R. Civ. P. 23(e)(2)(B). The settlement negotiations with all the Settling

Defendants were conducted at arm's length through several rounds over many months among

sophisticated counsel representing CIIPPs and Settling Defendants. Zapala Decl. ¶ 8. There was

no collusion or preference among counsel for the parties at any time during these negotiations.

*Id.* ¶ 8. Furthermore, there was no discussion or agreement at any time regarding the amount of

attorneys' fees CIIPPs' counsel would ask the Court to award in this case. *Id.* In engaging in

these settlement discussions, counsel for CIIPPs at all times were focused on obtaining the best

possible result for the CIIPP class. *Id*. These factors amply satisfy the arm's length requirement

and justify a presumption that the settlements are fair, reasonable and adequate. *See, e.g., Kleen*

*Products, LLC v. International Paper Company,* No. 1:10-cv-05711, 2017 WL 5247928, at *3

(N.D. Ill. Oct. 17, 2017); *see also Charvat*, 2019 WL 5576932, at *5 (N.D. Ill. Oct. 28, 2019).

### 3.   The Settlements Provide Substantial Relief to the Members of the Classes.

Consideration of the four Rule 23(e)(2)(C) factors supports a finding that the relief is

adequate—indeed, more than adequate—for purposes of granting final approval.

---

[6] For a fuller discussion of the extensive work performed by Co-Lead Counsel, the Joint Declaration of Class Counsel filed in support of CIIPPs' motion for attorney fees, reimbursement of expenses and Class Representative Awards recounts these tasks in more detail. *See* Joint Decl. ¶ 8 (ECF 5406) at 2-4.

**a.** The Costs, Risks, And Delay of Trial And Appeal Weigh in Favor of Settlement[7]

The CIIPPs believe strongly in the merits of their case. But no litigation is without risk or cost. These settlements eliminate the significant costs and risks CIIPPs would face if they were to proceed with the litigation against the Settling Defendants. Indeed, this case is more than five years old, and CIIPPs have expended significant effort and money to defeat motions to dismiss, conduct extensive discovery, thoroughly brief class certification, and prepare for trial.

By virtue of these seven settlements, members of the Settlement Class will recover a significant sum from the Settling Defendants. Absent settlement, the CIIPPs would need to prevail on class certification and summary judgment, go to trial, and establish liability, impact, and damages before obtaining *any* recovery, a risk indeed. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("'Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.'") (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998)). Moreover, continued litigation against the remaining Defendants, absent future settlements, will involve significant additional expenses and protracted legal battles, possibly including appellate proceedings and the risk that CIIPPs might ultimately not recover anything at all. *See Chambers,* 2021 WL 1948453, at *2 (*citing* Fed. R. Civ. P. 23(e)(2)(C)(i)). Therefore, the costs, risks, and delay of further litigation, which these settlements mitigate, favor final approval. *See Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 495 (N.D. Ill. 2015) ("In light of the significant possibility that Kolinek would recover nothing for the class if he proceeded with litigation. . . . this factor weighs in favor of

---

[7] This factor closely tracks the *Isby/Synfuel* factor which looks at the "likely complexity, length and expense of the litigation." *Synfuel,* 463 F.3d at 653 (quoting *Isby,* 75 F.3d at 1199). Accordingly, CIIPPs discuss these factors together in this section.

approval."); *Kleen Products,* 2017 WL 5247928, at *2 ("reducing the complexity, length and expense of further litigation . . . weighs in favor of granting final approval.").

### The Method for Distributing Relief Is Effective

The Plan of Allocation calls for a *pro rata* distribution of the settlement proceeds to qualified claimants in the Indirect Purchaser States. ECF 5214-6 at 3.[8] Courts have frequently found such *pro rata* distributions fair, adequate, and reasonable. *See, e.g., Kleen Products,* 2017 WL 5247928, at *3 (*pro rata* distribution "fair and reasonable"). Moreover, "[n]o money will be returned to the Settling Defendants once the Court finally approves the Settlements." ECF 5214-3 at 5. This plan—a *pro rata* distribution without reversion—supports final approval. Indeed, the Court already has approved precisely the same plan as fair, reasonable and adequate in finally approving the settlement of the End-User Consumer Plaintiffs with Defendants Fieldale, Peco, George's, Tyson, Pilgrim's, and Mar-Jac. *See* ECF 5304 at 5 ("EUCPs propose to distribute the settlement funds to class members on a *pro rata* basis, based on the amount of purchases that claimants made . . ."). CIIPPs also have mailed pre-populated claim forms to Settlement Class members for whom they have sufficient structured data from subpoenaed non-parties. Schachter Decl. ¶ 12. This step removed barriers to filing a claim and helps ensure the common fund is distributed to as many members of the Settlement Class as possible, as efficiently and fairly as possible, which is a goal of any distribution method. *See* § 13:53. Final approval criteria—Rule 23(e)(2)(C)(ii): Distribution method, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.).

### b. The Request for a Fee Award of One-Third of the Settlement Fund is No Barrier to Final Approval

The proposed attorneys' fees of one-third of the Settlement Fund are fair and reasonable in light of the efforts of Co-Lead Counsel, the caliber of Co-Lead Counsel's representation, the

---

[8] The Court has already authorized implementing the proposed Plan of Allocation. ECF 5234.

contingent nature of their representation, the risks in the litigation, and the fair market value of the legal services in an antitrust class action context such as this. ECF No. 5405 at 4-13. The Court embraced this reasoning in its Memorandum Opinion and Order granting an interim fee award to DPPs, where it held that "[t]he fact that fee awards in antitrust cases in this circuit are almost always one-third is a strong indication that this should be considered the 'market rate.'" ECF No. 5225 at 9. The reasonableness of the attorneys' fees is further supported by the lodestar cross-check CIIPPs proffered in their submission on attorney's fees, expenses, and service awards. ECF No. 5405 at 14. In addition, that CIIPPs have moved for a separate Order granting attorneys' fees bolsters the motion for final approval. *See Chambers,* 2021 WL 1948453, at *2 (finally approving settlement and noting, *inter alia*, that "[a]ttorneys' fees are subject to Court approval, and the Court is entering a separate Order on fees."). Accordingly, CIIPPs' requested level of attorney's fees also supports approval of the settlements.

### All Agreements Have Been Identified Pursuant to Fed. R. Civ. P. 23(e)(3)

All agreements which must be identified in accordance with Rule 23(e)(3) have been so identified. CIIPPs have filed copies of the executed settlement agreements with their motions for preliminary approval, ECF Nos. 1535 at 6, 3670 at 6, 4078-3, 4078-4, 5079-1 at 7, 5079-1 at 44, 5079-1 at 81, posted them on the settlement website, Schachter Dec. ¶ 18, and provided them herewith. *See* Zapala Decl. ¶ 7, fn. 4, Exs. A-G. This favors approval under Rule 23(e)(2)(c)(iv).

### 4. The Settlements Treat Members of the Classes Equitably

Rule 23(e)(2)(D) advises courts to consider whether "the proposal treats class members equitably relative to each other." CIIPPs' Plan of Allocation, which has been approved by the Court (ECF 5234 at 3), provides for *pro rata* distribution of the type that has repeatedly been found to satisfy Rule 23(e)(2)(D). *See Bills v. TLC Homes*, No. 19-CV-148-PP, 2020 WL

11

5982880, at *4 (E.D. Wis. Oct. 8, 2020) ("All class members are entitled to a *pro rata* share and will receive the same treatment. This factor weighs in favor of approving the Agreement.").

### 5. Strength of the Case Balanced Against the Settlement Amount Offered

The seven settlements are significant—totaling $103,890,000 for distribution and another $1 million for notice and claims administration—and provide considerable benefits to the Class, including meaningful cooperation from all Settling Defendants.

As CIIPPs previously informed the Court, the settlements have achieved increasing levels of recovery per market share point. *See* ECF No. 5079 at 8. And the recoveries per market share point in these settlements are within the range of those from settlements already finally approved by this Court in this litigation. *Compare* ECF No. 5079-1 at 2 of 112 ¶ 5 (noting that CIIPPs' settlements with Settling Defendants resulted in recoveries of between $850,000 per market share point and $3.3 million per market share point) *with* ECF No. 5342 at 17 of 24) (noting that DPPs' settlements with Peco, George's, and Amick represented "approximately $2 million per market share point" while DPPs' settlements with Pilgrim's and Tyson represented "approximately $4 million per market share point" and DPPs' settlement with Fieldale represented "approximately $1 million per market share point").[9]

Moreover, the settlements call for the Settling Defendants to provide substantial cooperation, which is valuable to the class because it will save time, reduce costs, and provide access to information, witnesses, and documents that might otherwise not be available. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983) (cooperation "an appropriate factor for a court to consider in approving a settlement"); *accord In re Linerboard*

---

[9] This Court previously noted that the Mar-Jac settlement recovery of "1.8 million per market share point," the Pilgrim's settlement recovery of "3.2 million per market share point," and the Tyson settlement recovery of "3.3 million per market share point" were "significant market share point recoveries." ECF 5179 at 4.

*Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). Furthermore, as this Circuit has

recognized, "[i]n complex litigation with a plaintiff class, 'partial settlements often play a vital

role in resolving class actions.'" *Agretti v. ANR Freight*, 982 F.2d 242, 247 (7th Cir. 1992)

(quoting 1–Part A MANUAL FOR COMPLEX LITIGATION SECOND, MOORE'S FEDERAL PRACTICE

§ 30.46 (1986)).

Meanwhile, the real risk of loss or non-recovery associated with continued litigation

absent settlement weighs in favor of approval. ECF No. 5225 at 9 ("[I]ssues raised in the motions

to dismiss show that success on class certification and summary judgment, let alone trial, is no

guarantee."). *See* section II.A.2.c. *supra; see also Gehrich*, 316 F.R.D. at 229 (approving

settlement in part because "possibility existed" plaintiffs "would have recovered nothing.");

*Kolinek*, 311 F.R.D. at 494 (potential defenses supported settlement approval); *Schulte v. Fifth

Third Bank,* 805 F. Supp. 2d 560, 582 (N.D. Ill. 2011).

### 6. Co-Lead Counsel Are Experienced Counsel Who Recommend the Settlements

Pursuant to *Isby* and *Synfuel,* the opinion of experienced counsel is also relevant when

deciding whether a settlement is fair, adequate and reasonable. *Synfuel,* 463 F.3d at 653; *Isby,* 75

F.3d at 1199. Drawing upon their extensive experience and expertise in litigating complex

antitrust class actions, Co-Lead Counsel strongly recommend granting final approval of these

settlements. Zapala Decl. ¶¶ 25, 30. This endorsement weighs in favor of approval. *Kleen

Products,* 2017 WL 5247928, at *3 ("These competent lawyers endorse the Settlement, and the

Court finds that this factor supports final approval.").

### 7. The Reaction of Class Members Supports Final Approval

The reaction of settlement class members has been overwhelmingly positive. No class

member has objected to any of the settlements, and only 71 have opted out. Schachter Decl. ¶ 20.

This positive response strongly supports finding that the settlements are fair, reasonable, and adequate. *See Kolinek,* 311 F.R.D. at 495 (negligible opposition "supports the reasonableness of the settlement."); *Schulte*, 805 F. Supp. 2d at 586 (settlement approved where only a "very small percentage of affected parties have opposed the settlement"). In fact, the absence of objections to and limited opt-outs from the settlements especially favor approval when, as here, sophisticated business entities comprise much of the class. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058 JST, 2015 WL 9266493, at *7 (N.D. Cal. Dec. 17, 2015).

### 8. The Stage of Proceedings And Amount of Discovery Favor Final Approval

The final factor that the Seventh Circuit asks courts to assess is the stage of the proceedings and the amount of discovery completed. *Synfuel,* 463 F.3d at 653; *Isby,* 75 F.3d at 1199. "This factor is relevant because it determines 'how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims.'" *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 966 (N.D. Ill. 2011) (quoting *Armstrong*, 616 F.2d at 325).

As set forth herein, the amount of discovery and the investigation performed before the Settlements were entered ensured that CIIPPs and their counsel made informed decisions about the settlements. *See* Zapala Decl. ¶¶ 4-6, 25. The years of robust discovery weigh in favor of granting final approval of the settlements. *See Chambers*, 2021 WL 1948453, at *3 ("[A]lthough the litigation was not nearing trial, Plaintiff had completed significant discovery and had fully briefed legal issues on a motion to dismiss to be able to fairly evaluate the risks and value of the case for purposes of achieving a fair settlement.") (citing *Synfuel,* 463 F.3d at 653). The procedural posture therefore also supports granting final approval to the Settlements.

### C. The Court Should Grant Final Certification of the Proposed Settlement Classes.

In the Preliminary Approval Orders, the Court certified the Settlement Classes. ECF

Nos. 1910, 3696, 4113, 5363. Certification of the Settlement Classes remains appropriate because, as discussed in the Preliminary Approval Briefs (ECF Nos. 1534, 3669, 4078-1, 5079) and reflected in the Court's Preliminary Approval Orders (ECF Nos. 1910, 3696, 4113, 5363), these Classes meet all the requirements of Rule 23(a) as well as the requirements of 23(b)(3). *Amchem v. Windsor*, 521 U.S. 591, 614 (1997). Accordingly, Plaintiffs request that the Court grant final certification of the Settlement Classes per Rules 23(a) and 23(b)(3).

## IV.    CONCLUSION

For these reasons, CIIPPs respectfully request that the Court grant final approval to the settlements with Settling Defendants.

Dated:  April 4, 2022                              Respectfully Submitted:

/s/ *Adam J. Zapala*
Adam J. Zapala
James G.B. Dallal
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
azapala@cpmlegal.com
jdallal@cpmlegal.com

Alexander E. Barnett
**COTCHETT, PITRE & MCCARTHY, LLP**
40 Worth Street, Suite 602
New York, NY 10013
Tel: (212) 201-6820
abarnett@cpmlegal.com

***Co-Lead Counsel for the Commercial and Institutional Indirect Purchaser Class***

/s/ *Daniel C. Hedlund*
Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua J. Rissman
**GUSTAFSON GLUEK PLLC**

120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com

***Co-Lead Counsel for the Commercial and
Institutional Indirect Purchaser Class***

Kenneth A. Wexler
Melinda J. Morales
**WEXLER BOLEY & ELGERSMA, LLP**
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Tel: (312) 346-2222
kaw@wbe-llp.com
mjm@ wbe-llp.com

***Liaison Counsel for the Commercial and
Institutional Indirect Purchaser Class***

**ATTACHMENT A**

**Round 1 CIIPP Settlements (and Settling Defendant Entities)**

| Group | Entities | Preliminary Approval | Amount |
|---|---|---|---|
| Fieldale | Fieldale Farms Corporation | Motion, ECF No. 1533<br><br>Order Granting Preliminary Approval, ECF No. 1910 | $1,400,000 |
| Amick | Amick Farms, LLC | Motion, ECF No. 3668<br><br>Order Granting Preliminary Approval, ECF No. 3696 | $2,950,000 |
| Peco | Peco Foods, Inc. | Motion, ECF No. 4078<br><br>Order Granting Preliminary Approval, ECF No. 4113 | $3,525,000 |
| George's | George's Inc<br>George's Farms, Inc. | Motion, ECF No. 4078<br><br>Order Granting Preliminary Approval, ECF No. 4113 | $3,525,000 |
| Tyson | Tyson Foods, Inc.<br>Tyson Chicken, Inc.<br>Tyson Breeders, Inc.<br>Tyson Poultry, Inc. | Motion, ECF No. 5078<br><br>Order Granting Preliminary Approval, ECF No. 5363 | $42,500,000 |
| Pilgrim's Pride | Pilgrim's Pride Corporation | Motion, ECF No. 5078<br><br>Order Granting Preliminary Approval, ECF No. 5363 | $44,000,000 (and $1 million for notice costs) |
| Mar-Jac | Mar-Jac Poultry, Inc.<br>Mar-Jac Poultry MS, LLC<br>Mar-Jac Poultry AL, LLC<br>Mar-Jac AL/MS, Inc.<br>Mar-Jac Poultry, LLC<br>Mar-Jac Holdings, Inc. | Motion, ECF No. 5078<br><br>Order Granting Preliminary Approval, ECF No. 5363 | $5,990,000 |