# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**IN RE BROILER CHICKEN ANTITRUST
LITIGATION**

Case No. 1:16-CV-08637

Judge Thomas M. Durkin
Magistrate Judge Jeffry T. Gilbert

**MEMORANDUM IN SUPPORT OF THE NON-GEORGIA DOCK DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON ALL TRACK 1 PLAINTIFFS'
<u>CLAIMS ALLEGING A "GEORGIA DOCK CONSPIRACY"</u>**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................1

II.     LEGAL STANDARD..........................................................................................3

III.    THE UNDISPUTED FACTS ...............................................................................5

        A.      The Georgia Dock ....................................................................................5

        B.      The Moving Defendants Did Not Submit Prices, Price Quotes or Other
                Information To The Georgia Department of Agriculture And Were Not
                Involved In The Calculation Of The Georgia Dock.................................6

IV.     THE MOVING DEFENDANTS ARE ENTITLED TO SUMMARY
        JUDGMENT ON ANY "OVERARCHING" CONSPIRACY CLAIM
        INVOLVING THE GEORGIA DOCK...................................................................6

        A.      There Is No Evidence That The Moving Defendants Made A Conscious
                Commitment To A Scheme To Manipulate The Georgia Dock Or To A
                Broader Scheme That Includes Such Manipulation. ..............................7

        B.      There Is No Evidentiary Basis for Contending That The Alleged Georgia
                Dock and Production Cut Conspiracies Were A Single Conspiracy..................11

CONCLUSION.........................................................................................................15

## TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Bank of America, N.A. v. Knight*,
   725 F.3d 815 (7th Cir. 2013) ................................................................ 3, 6, 9, 10

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
   370 U.S. 690 (1962) ............................................................................... 4, 5

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   186 F.3d 781 (7th Cir. 1999) .......................................................................4

*In re High Fructose Corn Syrup Antitrust Litig.*,
   295 F.3d 651 (7th Cir. 2002) .......................................................................4

*In re London Silver Fixing, Ltd., Antitrust Litig.*,
   332 F. Supp. 3d 885 (S.D.N.Y. 2018) ........................................................14

*In re Polyurethane Foam Antitrust Litig.*,
   152 F. Supp. 3d 968 (N.D. Ohio 2015).........................................................9

*In re Processed Egg Prods. Antitrust Litig.*,
   206 F. Supp. 3d 1033 (E.D. Pa. 2016), *aff'd* 962 F.3d 719 (3d Cir. 2020) .............................4

*In re Sulfuric Acid Antitrust Litig.*,
   743 F. Supp. 2d 827 (N.D. Ill. 2010).........................................................7, 9

*In re Vitamins Antitrust Litig.*,
   320 F. Supp. 2d 1 (D.D.C. 2004) ................................................................9

*In re Zinc Antitrust Litig.*,
   155 F. Supp. 3d 337 (S.D.N.Y. 2016) ........................................................11

*Marion Healthcare v. Becton Dickson & Co.*,
   952 F.3d 832 (7th Cir. 2020) .......................................................................8

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).....................................................................................3

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
   465 U.S. 752 (1984) .......................................................................... 3, 4, 7, 11

*Omnicare, Inc. v. UnitedHealth Grp., Inc.*,
   629 F.3d 697 (7th Cir. 2011) ............................................................... 3, 4, 8

*Orr v. Assurant Employee Benefits*,
   786 F.3d 596 (7th Cir. 2015) .......................................................................3

*Precision Associates, Inc. v. Panalpina World Transp. (Holding) Ltd.*,
   No. 08-CV-42 (JG)(VVP), 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011) ......................... 10, 11

*Tapley v. Chambers*,
   840 F.3d 370 (7th Cir. 2016) .......................................................................3

*U.S. Futures Exch., LLC v. Bd. of Trade of City of Chi., Inc.*,
   346 F. Supp. 3d 1230 (N.D. Ill. 2018)........................................................4, 5

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

*U.S. v. Bruun*,
  809 F.2d 397 (7th Cir. 1987) ...........................................................................10

*U.S. v. Johnson,*
  515 F.2d 730 (7th Cir. 1975) ...........................................................................12

*U.S. v. Lloyds TSB Bank PLC,*
  639 F. Supp. 2d 326 (S.D.N.Y. 2009) .............................................................13

*U.S. v. Orlando,*
  819 F.3d 1016 (7th Cir. 2016)..........................................................................10

*U.S. v. Rosenblatt,*
  554 F.2d 36 (2d Cir. 1977) ....................................................................... passim

*U.S. v. U.S. Gupsum Co.*,
  438 U.S. 442 (1978).............................................................................................9

*U.S. v. Varelli,*
  407 F.2d 735 (7th Cir. 1969) ............................................................... 10, 11, 12

**Rules**

Fed. R. Civ. P. 56(a).............................................................................................3

## I.  INTRODUCTION

Track 1 Plaintiffs ("Plaintiffs") have no evidence that any of the Moving Defendants[1] (a) participated in any alleged manipulation of the Georgia Dock[2] or (b) made a conscious commitment to join an alleged "overarching" conspiracy that included manipulation of the Georgia Dock and production cuts. Indeed, no evidence of any such two-pronged "overarching" conspiracy exists. Without any factual predicate that could support a finding that the purported Georgia Dock conspiracy (alleged to involve no Moving Defendant) was a part or continuation of the alleged production cut conspiracy, the Moving Defendants are entitled to summary judgment on any "overarching conspiracy" claim that includes alleged Georgia Dock manipulation.

In 2016, certain Moving Defendants brought Rule 12(b)(6) motions based, in part, on the lack of allegations that they had agreed to manipulate the Georgia Dock. The Court denied those motions, observing that the Complaints "at least plausibly alleged a **separate** conspiracy involving Georgia Dock price fixing among **some** of the defendants." (Nov. 20, 2017 Order, Dkt. 541 at 63.) (emphasis added). Then, because at least one "claim with respect to the Georgia Dock . . . [was] proceed[ing] to discovery," the Court declined to rule at that time on "[w]hether Georgia Dock should be considered a separate conspiracy, or a continuation of the production cut conspiracy," stating that the issue "can await summary judgment[.]" (*Id.*)

---

[1] "Moving Defendants" are the following ten "Non-Georgia Dock Defendants": Agri Stats, Inc. ("Agri Stats"); Case Foods, Inc., Case Farms, LLC, and Case Farms Processing, Inc. (collectively, "Case Farms"); Foster Farms, LLC and Foster Poultry Farms (collectively, "Foster Farms"), George's Inc. and George's Farms, Inc. (collectively, "George's); House of Raeford Farms, Inc. ("House of Raeford"); Mountaire Farms Inc., Mountaire Farms, LLC, and Mountaire Farms of Delaware, Inc. (collectively, "Mountaire"), O.K. Foods, Inc., O.K. Farms, Inc., and O.K. Industries, Inc. (collectively, "O.K. Foods"); Peco Foods, Inc. ("Peco"), Perdue Farms, Inc. and Perdue Foods, LLC ("Perdue"); and Simmons Foods, Inc. and Simmons Prepared Foods, Inc. (collectively, "Simmons"). George's and Peco join this Motion only as to those Track 1 DAPs with which they have an active, ongoing dispute. Amick Farms, LLC ("Amick") is also not a Georgia Dock Defendant, but does not join this motion because no Track 1 Plaintiff has pending claims against it.
[2] The term "Georgia Dock" used herein refers to the weekly Wednesday small bird quote for 2.5-to-3-pound broilers published by the Poultry Market News Division of the Georgia Department of Agriculture.

Since that ruling, Defendants have provided Plaintiffs millions of documents, hundreds of depositions, and extensive written discovery. That voluminous discovery has yielded nothing suggesting that any Moving Defendant colluded to manipulate the Georgia Dock. To the contrary, it is now beyond dispute that no Moving Defendant was involved in the alleged Georgia Dock manipulation or consciously committed to any alleged agreement that included manipulation of the Georgia Dock. During the alleged Georgia Dock conspiracy, the Moving Defendants did not submit prices, price quotes or other information to the Georgia Department of Agriculture ("GDA") in connection with the Georgia Dock, were not members of the Georgia Dock Advisory Committee, and had no role in the Georgia Dock's creation, development, governance or administration. Indeed, Plaintiffs have conceded these critical points in their discovery responses, and by filing multiple amended complaints that do not even allege that the Moving Defendants were involved in any aspect of the asserted Georgia Dock conspiracy.

Unsurprisingly, therefore, no Plaintiff has asserted a stand-alone Georgia Dock claim against any Moving Defendant. Instead, Plaintiffs resort to lumping all Defendants together and arguing that they are all liable for an "overarching conspiracy" that supposedly included:

(a)     an alleged nationwide conspiracy that began in 2008 among approximately twenty U.S. broiler producers and Agri Stats to cut production, and

(b)     an alleged agreement beginning sometime around 2015 among nine producers with plants in Georgia to collusively manipulate an index published by the Georgia Department of Agriculture, in part by exercising the influence some had as members of the Georgia Dock Advisory Committee.

To establish the Moving Defendants' liability for the alleged acts of other Defendants who purportedly manipulated the Georgia Dock, Plaintiffs must do more than slap the moniker of "overarching" onto their conspiracy allegations. They must provide evidence showing that such an overarching conspiracy existed and the Moving Defendants both "knew of its scope" (including the manipulation of the Georgia Dock index) and then *joined it*. (Nov. 20, 2017 Order, Dkt. 541 at

2

49-50 (quoting *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).) In other words, Plaintiffs must show the Moving Defendants made a "conscious commitment to a common scheme" that included the manipulation of the Georgia Dock index. *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 765 (1984). Plaintiffs cannot do so. Accordingly, the Court should grant summary judgment in Moving Defendants' favor on Plaintiffs' "overarching conspiracy" claims that include Georgia Dock manipulation.

## II.     LEGAL STANDARD

Summary judgment is appropriate if there is "no genuine issue as to any material facts and the movant is entitled to judgment as a matter of law." *Orr v. Assurant Employee Benefits*, 786 F.3d 596, 600 (7th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). When the defendant "demonstrate[s] that [plaintiff's] claim lacks supporting evidence . . . [t]he burden then shifts to plaintiff to offer specific evidence showing a genuine issue for trial." *Tapley v. Chambers*, 840 F.3d 370, 376 (7th Cir. 2016) (citations omitted).

While all factual inferences are to be construed in favor of the non-moving party, *id.*, "district courts are not required to draw every requested inference; they must draw only reasonable ones that are supported by the record." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). Even when a plaintiff offers a "richly detailed narrative," it "cannot get to trial based on the elegance of its theory alone. . . . [I]t 'must show that the inference of conspiracy is reasonable in light of competing inferences of independent action.'" *Id.* at 720 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986)). The plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. They must instead provide evidence that "'tends to exclude the possibility' that the alleged conspirators acted independently." *Id.* at 588 (quoting *Monsanto*, 465 U.S. at 764).

To survive a motion for summary judgment in a Sherman Act Section 1 case, a plaintiff must produce evidence that the defendants had an illegal agreement—*i.e.*, a "conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto*, 465 U.S. at 764. Unless the evidence "permit[s] a reasonable jury to conclude that [the defendants] agreed to work together" toward that illegal goal, *Omnicare,* 629 F.3d at 707, defendants are entitled to summary judgment.

A plaintiff may attempt to prove the existence of an agreement using direct or circumstantial evidence. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 186 F.3d 781, 785 (7th Cir. 1999). "[Direct evidence] is . . . tantamount to an acknowledgement of guilt; [circumstantial] evidence is everything else, including ambiguous statements." *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002).

"[D]istinct conspiratorial goals" may be analyzed separately to determine whether Plaintiffs have proved a violation of Section 1 of the Sherman Act. (May 27, 2021 Order, Dkt. 4722 at 2.) Although *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) noted that antitrust "plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each," *id.* at 690, "*Continental Ore* was not intended to limit a court's individual assessment of the legality of various components of an alleged conspiracy." *In re Processed Egg Prods. Antitrust Litig.*, 206 F. Supp. 3d 1033, 1042 (E.D. Pa. 2016), *aff'd* 962 F.3d 719, 727 (3d Cir. 2020) ("*Continental Ore* does not require analysis of the distinct components of a conspiracy as if they were an undifferentiated and indistinguishable bunch of behaviors."); *see also U.S. Futures Exch., LLC v. Bd. of Trade of City of Chi., Inc.*, 346 F. Supp. 3d 1230, 1249 (N.D. Ill. 2018) ("[A]s other

courts interpreting *Continental Ore* have made clear, separate theories of antitrust liability still must be assessed individually.").

## III.   THE UNDISPUTED FACTS

### A.   The Georgia Dock

The term "Georgia Dock" was chicken industry shorthand for the Wednesday market report published by the GDA's Poultry Market News Division. (SOF ¶ 4.) From 1972 to 2016, those public reports listed quotes for whole bird chickens sold free-on-board from the shipping docks of chicken slaughter/processing plants located in Georgia. (*Id.*) Over time, the GDA published various pricing and "market tone" reports that were available to buyers, sellers, industry analysts, and the public. (*Id.*) The report at issue here—the Georgia Dock—is the Wednesday small bird quote for 2.5-to-3-pound broilers. (*Id.*)

The GDA calculated the Georgia Dock based on (1) information submitted by certain chicken companies that had slaughter/processing facilities in Georgia and (2) formulas and rules that it developed internally. (SOF ¶¶ 7-9.)  Plaintiffs contend that Claxton Poultry, Fieldale Farms, Harrison Poultry, Koch Foods, Mar-Jac Poultry, Pilgrim's Pride, Sanderson Farms, Tyson Foods, and Wayne Farms—which Plaintiffs' complaints explicitly label the "Georgia Dock Defendants"—coordinated the quotes they submitted every week to the GDA that were used to calculate the Georgia Dock and that some of them used their positions on the Georgia Dock Advisory Committee to manipulate the Dock through those quotes. (DPP Compl., Dkt. 3919, ¶¶ 128-146; CIIPP Compl., Dkt. 3929, ¶¶154-172; DAP Compl., Dkt. 4243, ¶¶587-839; EUCP Compl., Dkt. 3748 ¶¶ 141-157.)[3]

---

[3] This brief summary of the Georgia Dock allegations does not purport to suggest that all of the Georgia Dock-related allegations apply to all Georgia Dock Defendants or to capture factual distinctions between those Defendants.  Those issues are not relevant to this motion.  In any event, the Georgia Dock Defendants intend to subsequently move for summary judgment on Plaintiffs' Georgia Dock-related claims.

**B. The Moving Defendants Did Not Submit Prices, Price Quotes or Other Information To The Georgia Department of Agriculture And Were Not Involved In The Calculation Of The Georgia Dock.**

The Moving Defendants had nothing to do with the calculation of the Georgia Dock. With one exception, none of them had a broiler slaughter/processing plant in Georgia, and *none* of them submitted prices, price quotes or other information to the GDA in connection with the Georgia Dock during the alleged conspiracy. (SOF ¶¶ 10, 12.) Moreover, Plaintiffs have **not alleged**, and there is **no evidence**, that:

- any Moving Defendant participated in the alleged Georgia Dock manipulation. (SOF ¶ 11.)
- any Moving Defendant was a member of the Georgia Dock Advisory Committee. (SOF ¶ 13.)
- any Moving Defendant had a role in the creation, development, governance, or administration of the Georgia Dock. (SOF ¶ 14.)
- any Moving Defendant influenced, directed, or caused a Georgia Dock Defendant to submit the information it did to the GDA. (SOF ¶ 16.)
- any Moving Defendant had discussions with any of the Georgia Dock Defendants regarding the Georgia Dock Defendant's submissions to the GDA, much less that any Moving Defendant had any discussions with a Georgia Dock Defendant about manipulating the Georgia Dock Defendant's submissions. (SOF ¶ 15.)

## IV. THE MOVING DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ANY "OVERARCHING" CONSPIRACY CLAIM INVOLVING THE GEORGIA DOCK.

Plaintiffs' complaints do not assert stand-alone Georgia Dock claims against any Moving Defendant. This is a clear acknowledgement that, after years of Georgia Dock-related discovery failed to connect any Moving Defendant to a supposed agreement to manipulate the Georgia Dock, Plaintiffs cannot assert such claims consistent with Rule 11. Plaintiffs allege only that the "Georgia Dock Defendants," but not the Moving Defendants, submitted false information to the GDA.[4]

---

[4] *See Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (requiring proof that each defendant joined the conspiracy and knew of its scope). (*See also* DAP Compl., Dkt. 4243, ¶¶ 27-30, 190-

Nevertheless, in Plaintiffs' Section 1 claims, they add conclusory allegations, lumping ***all Defendants*** together and claiming that "***Defendants***" agreed to fix prices and "manipulat[e] . . . the Georgia Dock," without even attempting to attribute any Georgia Dock-related conduct to any Moving Defendant.[5] The vehicle for this sleight of hand is a purported "overarching conspiracy" that supposedly included (1) coordinated production cuts *and* (2) manipulation of the Georgia Dock index.[6] (*See, e.g.*, DAP Chick-Fil-A, Inc.'s Mot. to Partially Recons., Dkt. 4652 at 3-5.)

Plaintiffs cannot evade summary judgment simply by bundling claims devoid of evidentiary support with other claims and then adding the moniker "overarching conspiracy." Summary judgment should be granted in favor of the Moving Defendants on Plaintiffs' "overarching conspiracy" claims because (1) there is no evidence that the Moving Defendants consciously committed to either a scheme to manipulate the Georgia Dock—which Plaintiffs apparently concede—or to a broader scheme that included manipulation of the Georgia Dock; and (2) the evidence does not justify treating the alleged Georgia Dock and production cut conspiracies as two parts of a single conspiracy, so Plaintiffs' "overarching" conspiracy claim fails.

### A. There Is No Evidence That The Moving Defendants Made A Conscious Commitment To A Scheme To Manipulate The Georgia Dock Or To A Broader Scheme That Includes Such Manipulation.

Section 1 plaintiffs must prove that defendants entered into an *agreement*, defined as "a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto*, 465 U.S. 752, 753; *see also In re Sulfuric Acid Antitrust Litig.,* 743 F. Supp. 2d 827, 864 (N.D. Ill. 2010) (To avoid summary judgment, the plaintiff must present "evidence that

---

91, 196, 210-11, 224, 230, 238-39, 587-839; DPP Compl., Dkt. 3919, ¶ 131; CIIP Compl., Dkt. 3929, ¶ 157; EUCP Compl., Dkt. 3748, ¶ 144.)

[5] (DAP Compl., Dkt. 4243, ¶ 1034; DPP Compl., Dkt. 3919, ¶ 465; CIIP Compl., Doc. 3929, ¶ 489; EUCP Compl., Dkt. 3748, ¶ 490.)

[6] To the extent Track 1 Plaintiffs' complaints allege that certain Defendants rigged bids, they have waived those claims. (*See* Oct. 15, 2021 Order, Dkt. 5128 at 5.)

reasonably tends to prove that [Defendant] was aware of . . . [and] made a conscious commitment to enter into, an illegal conspiracy with co-Defendants.") (citation omitted); *Marion Healthcare v. Becton Dickson & Co.,* 952 F.3d 832, 841 (7th Cir. 2020) (Plaintiff alleging antitrust conspiracy must prove "a conscious commitment to a common scheme designed to achieve an unlawful objective.") (citation omitted). Proof of a "conscious commitment" requires evidence of "a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." (Nov. 20, 2017 Order, Dkt. 541 at 20 (citing *Omnicare, Inc.*, 629 F.3d at 706).)

Plaintiffs cannot make this showing as to any Moving Defendant with respect to the Georgia Dock. In fact, they concede the point, as they have not even alleged a stand-alone Georgia Dock claim against any Moving Defendant. For good reason. The record is undisputed that Plaintiffs have no evidence that any of the Moving Defendants participated in any way in the alleged conspiracy to manipulate the Georgia Dock. During the relevant period, they did not submit information to the GDA related to the Dock, did not participate in the Georgia Dock Advisory Committee, and had no involvement in the creation, development, governance, or administration of the Georgia Dock. (SOF ¶¶ 11-14.) Nor is there evidence that they influenced or directed the Georgia Dock Defendants' submissions to the GDA or discussed them with any Georgia Dock Defendant, much less that any of them discussed the alleged manipulation of the Georgia Dock. (SOF ¶¶ 15-16.) There is no evidence that reasonably supports an inference that Moving Defendants made a conscious commitment to a scheme to manipulate the Georgia Dock.

Any claim based on an alleged "overarching" conspiracy that includes Georgia Dock manipulation also fails as to the Moving Defendants because there is no evidence that any of them made a conscious commitment to enter into a common scheme that included the alleged manipulation. In assessing whether a particular defendant is liable for the acts of a conspiracy, "it

remains essential to show that a particular defendant *joined* the conspiracy and *knew of its scope*." (Nov. 20, 2017 Order, Dkt. 541 at 49-50 (quoting *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).) Indeed, "[t]he law of conspiracy requires agreement as to the object of the conspiracy" such that "[n]obody is liable in conspiracy except for the fair import of the concerted purpose or agreement as he understands it." *U.S. v. Rosenblatt*, 554 F.2d 36, 38-39 (2d Cir. 1977) (citations omitted); *In re Polyurethane Foam Antitrust Litig.,* 152 F. Supp. 3d 968, 997-98 (N.D. Ohio 2015) (rejecting plaintiffs' argument at summary judgment that it need only show defendant's knowledge of the price-fixing of one of the two products that were both alleged to be the targets of the conspiracy); *In re Vitamins Antitrust Litig.*, 320 F. Supp. 2d 1, 19 (D.D.C. 2004) ("Liability [can] only be predicated on the knowing involvement of each defendant, considered individually, in the conspiracy charged." (quoting *U.S. v. U.S. Gypsum Co.*, 438 U.S. 442, 463 (1978)).

*In re Sulfuric Acid Antitrust Litigation* is instructive. Plaintiffs there alleged that defendant GAC was liable for a Section 1 conspiracy because it made a conscious commitment to a conspiracy between two other defendants, Delta and Noranda, through its acquisition of Delta. 743 F. Supp. 2d 827, 864 (N.D. Ill. 2010). Plaintiffs survived a Rule 12(b)(6) motion by "promis[ing] to establish through discovery that GAC acquired Delta **with knowledge** of the Delta–Noranda conspiracy and **with the intent** to benefit from that illegal agreement." *Id.* at 862. But after discovery, they "produced neither direct nor circumstantial evidence that reasonably tend[ed] to prove that GAC was aware of, much less made a conscious commitment to enter into, an illegal conspiracy with co-Defendants." *Id.* at 864. Accordingly, the court granted GAC's motion for summary judgment. *Id.* Here, too, Plaintiffs have no evidence that the Moving Defendants knowingly agreed to join any alleged "overarching" conspiracy that included manipulation of the

9

Georgia Dock index. Thus, Plaintiffs have not carried their burden on the "essential" element of "show[ing] that [these] particular defendant[s] **joined the conspiracy** and **knew of its scope**." (Nov. 20, 2017 Order, Dkt. 541 at 49-50 (quoting *Bank of America*, 725 F.3d at 818) (emphasis added)

Seventh Circuit law concerning non-antitrust conspiracies is in accord. The court has consistently held that a defendant cannot be liable for participation in a conspiracy without proof that it knew the conspiracy's purpose and that its scope included the allegedly illegal acts that form the basis of the conspiracy claim, **and** that the defendant then knowingly joined that conspiracy. *See U.S. v. Orlando*, 819 F.3d 1016, 1022 (7th Cir. 2016) (citing *U.S. v. Bruun*, 809 F.2d 397, 410 (7th Cir. 1987) (The government must prove that defendant "was aware of the essential nature and scope of the enterprise and intended to participate in it.")); *U.S. v. Varelli*, 407 F.2d 735, 742-744 (7th Cir. 1969) (reversing conviction for participation in a single conspiracy when some defendants conspired to hijack trucks carrying camera equipment but there was no evidence that the "nature of their agreement" ever "contemplated" that some members would separately go on to hijack trucks carrying silver). Thus, "a general agreement to engage in unspecified [wrongful] conduct is insufficient to identify the essential nature of the conspiratorial plan." *Rosenblatt*, 554 F.2d at 39.[7]

Here, despite extensive discovery, Plaintiffs have failed to identify any evidence that even remotely suggests the Moving Defendants consciously committed to the alleged Georgia Dock manipulation or engaged in conduct from which such a commitment can be reasonably inferred. When defendants never "commit[ed]" to a conspiracy's "common scheme"—*i.e.*, the manipulation of the Georgia Dock—"to achieve an unlawful object," they cannot be liable for the actions taken

---

[7] *See also Precision Associates, Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42 (JG)(VVP), 2011 WL 7053807, at *30 (E.D.N.Y. Jan. 4, 2011) (Defendant must be "aware of and committed to the essential purpose" of the alleged antitrust conspiracy.).

by other defendants who allegedly made such a conscious commitment. *See Monsanto*, 465 U.S. at 764; *see also e.g., Rosenblatt*, 554 F.2d at 38-40; *Varelli*, 407 F.2d at 742-744. The Moving Defendants are entitled to summary judgment on Plaintiffs' overarching conspiracy claim on these grounds alone.

### B. There Is No Evidentiary Basis for Contending That The Alleged Georgia Dock and Production Cut Conspiracies Were A Single Conspiracy.

Plaintiffs' "overarching conspiracy" claim also fails because more than five years of discovery has confirmed that there is no factual support for treating the alleged Georgia Dock and production cut conspiracies as two parts of a single "overarching" conspiracy.

As this Court recognized in its October 15, 2021 Order, the multiple parts of an alleged "overarching conspiracy" should be treated as multiple separate conspiracies—by dismissal, severance, or bifurcation—(1) when the complaint's allegations do not plausibly show, or discovery does not sufficiently establish, "any coordinated or concert of action between" the multiple underlying conspiracies, or (2) when the "alleged underlying conspiracies" are "'too different from the type of coordination' alleged to have occurred in the overarching conspiracy." (Dkt. 5128 at 2 (citing *Precision Assocs.*, 2013 WL 6481195, at *40, *report and recommendation adopted*, 2014 WL 298594 (E.D.N.Y. Jan. 28, 2014); *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 369 (S.D.N.Y. 2016)).)

Mere overlap in actors and similar generalized objects of conspiracies do not support a claim of a single "overarching" conspiracy. In *Varelli*, for example, one group of defendants hijacked a truck carrying Polaroid camera equipment; the following year, another overlapping group of defendants hijacked trucks carrying silver. 407 F.2d at 739-741. The defendants were tried together, and a jury convicted them of a "single conspiracy to hijack interstate shipments of merchandise . . . ." *Id.* at 741. The Seventh Circuit overturned the conviction, finding that the

11

government had failed to prove "one overall general scheme among the parties," *id.* at 742, because the evidence showed that the Polaroid defendants, who participated solely in the Polaroid hijacking, had planned a single hijacking, and there was no evidence that the overlapping silver defendants discussed any silver hijackings with the Polaroid defendants. *Id.* at 743-44. The mere overlap of defendants between the two conspiracies was insufficient to link the two, as there was no evidence that the two types of hijackings were both part of an overall continuous conspiracy.[8] *See id.* at 743-44. Moreover, merely characterizing the illegal objectives of the alleged conspiracy in broad terms—that all of the *Varelli* defendants had conspired with other actors "to hijack interstate shipments of merchandise"—did not make the two conspiracies a single conspiracy. *See id.* at 741-44.

Similarly, in *U.S. v. Johnson*, the Seventh Circuit held that even though the Government adduced sufficient evidence that defendant Johnson knew that the cars he obtained from defendant Altvare were stolen, nothing established that Johnson was involved in a conspiracy between Altvare and other defendants to sell six different stolen cars through a used car lot. 515 F.2d 730, 732-33 (7th Cir. 1975). Thus, Johnson could not be convicted of joining a purported overarching conspiracy. *Id.* at 733.

And, in *U.S. v. Rosenblatt*, Rosenblatt's alleged co-conspirator Brooks falsified postal records to steal over $180,000 in checks, which he gave to Rosenblatt to launder through Rosenblatt's bank account. 554 F.2d at 37-38. Brooks did not tell Rosenblatt that he had obtained the checks by falsifying postal records; instead, he told him the checks were valid but being laundered to evade taxes and conceal kickbacks. *Id.* Because Rosenblatt had not agreed with

---

[8] Here, nine of the twenty alleged "production cut" conspirators are alleged to have participated in the purported Georgia Dock manipulation, while the ten Moving Defendants had no involvement with the Georgia Dock and there is no evidence that they consciously committed to its alleged manipulation.

Brooks to falsify postal records, the Second Circuit reversed his conviction, holding that Rosenblatt did not agree to make false entries on postal records and therefore did not "conspire" to do so. *Id.* at 39-40. The court noted that "[t]he question of whether single or multiple conspiracies have been pled or proved depends on the nature of the agreement" and that the government had failed to prove an agreement "on the essential nature of the fraud." *Id.* at 39-40; *see also U.S. v. Lloyds TSB Bank PLC,* 639 F. Supp. 2d 326, 343-46 (S.D.N.Y. 2009) (finding that complaint stated a claim against bank-defendant for laundering the proceeds of a securities fraud scheme, but did not properly plead a "single 'broader' conspiracy" for money laundering *and* securities fraud, because the complaint did not allege the bank's agreement to or knowledge of the securities fraud).

The principles exemplified by these cases, and as stated by the Court in its October 15 Order (Dkt. 5128 at 2), apply with full force here.

First, there is no evidence of "any coordinated or concert of action" between the alleged Georgia Dock and supply restriction conspiracies (*id.* at 2), or that the alleged Georgia Dock conduct was a "continuation of the production cut conspiracy." (Nov. 11, 2017 Order, Dkt. 541 at 63.) The "Georgia Dock Defendants" are nine producers with slaughter/processing plants in Georgia that submitted information to the GDA for the Georgia Dock and, in some cases, were allegedly in a position to influence the Georgia Dock index's calculation and methodology through their participation in the Georgia Dock Advisory Committee. (*See, e.g.* DPP Compl., Dkt. 3919 at ¶¶ 131, 136.) The Moving Defendants, however, did not submit prices, price quotes or other information to the GDA during the alleged conspiracy period or participate in the Georgia Dock Advisory Committee. (SOF ¶ 12.) Furthermore, there is no evidence of discussions between Georgia Dock Defendants and Moving Defendants regarding the Georgia Dock Defendants'

submissions to the GDA, much less any regarding the alleged manipulation of the Georgia Dock. (SOF ¶ 15.) There is no evidence of any link between Georgia Dock Defendants' alleged manipulation of the Georgia Dock and Moving Defendants' (or any Defendants') production decisions. Nor is there any evidence that the alleged Georgia Dock conspiracy was necessary to, dependent on, or "a continuation of the production cut conspiracy." (Nov. 20, 2017 Order, Dkt. 541 at 63.) To the contrary, neither alleged agreement (if either had actually existed) would require the other—or coordination with the other—to achieve its separate alleged objective. *See In re London Silver Fixing, Ltd., Antitrust Litig.,* 332 F. Supp. 3d 885, 900 (S.D.N.Y. 2018) (rejecting as insufficient, on a motion to dismiss, allegations of an overarching conspiracy to manipulate trades and a benchmark because the manipulated trades "would be profitable to the traders involved regardless of whether the conduct was connected to a broader agreement to manipulate the [benchmark]").

Second, the types of coordination alleged with respect to the alleged Georgia Dock and production cut conspiracies are very different. The alleged production cut conspiracy involves a purported agreement among virtually all U.S. chicken processors to coordinate production cuts, in which Defendants supposedly signaled their agreements via coded public statements, and monitored adherence to the agreement by using data shared via Agri Stats. (*See, e.g.,* DAP Compl., Dkt. 4243 at ¶¶ 10-21.) By contrast, the allegations regarding a Georgia Dock conspiracy involve a meeting of a relatively small advisory committee concerning a GDA-published index focused on "small birds" (a relatively small volume of sales); the alleged submission of false information related to those "small birds"; and the alleged manipulation of the manner in which the Georgia Dock index was determined by the GDA—without any use or involvement of an industry

benchmarking resource like Agri Stats. (*See e.g., Id.* at ¶¶ 24-30.) Thus, each purported agreement had its own alleged separate and distinct scheme and methodology.

Third, the relevant time frames are also very different. According to Plaintiffs' complaints, the Georgia Dock conspiracy did not start until 2015,[9] more than *six years* after the production cut conspiracy supposedly began in 2008 and *six* and *three years* after the major alleged production cuts of 2008 and 2011-12, respectively.[10] There is no evidence that 2014 or 2015 submissions to the GDA by nine companies were part of, or a continuation of, the alleged production cut conspiracy among a much larger national group of approximately 20 producers that supposedly began many years earlier.

## CONCLUSION

The Moving Defendants cannot be liable for joining an "overarching" conspiracy that includes an agreement to manipulate the Georgia Dock because (1) there is no evidence that they made a conscious commitment to such a conspiracy, and (2) there is no evidentiary basis for concluding that the alleged Georgia Dock conspiracy is but one part, or a continuation, of a broader, "overarching" conspiracy that also includes the alleged coordinated production cut conspiracy.

Summary judgment should accordingly be granted on all Track I Plaintiffs' claims that Moving Defendants joined an "overarching conspiracy" that included the alleged Georgia Dock conspiracy as one of its parts.

---

[9] (DPP Compl., Dkt. 3919, ¶ 133; CIIP Compl., Dkt. 3929, ¶ 159; EUCP Compl., Dkt. 3748, ¶ 145.) The DAP Complaint asserts that the Georgia Dock began to behave differently, as compared to other indices, in 2011 but that the difference became more pronounced in 2015. (DAP Compl., Doc. 4243, ¶¶955, 658.)

[10] ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████

Dated:  April 12, 2022

Respectfully Submitted,

By:  /s/ *Lawrence H. Heftman*

ARENTFOX SCHIFF LLP

Lawrence H. Heftman
Margaret A. Hickey
Kylie S. Wood
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Telephone: (312) 258-5500
lawrence.heftman@afslaw.com
maggie.hickey@afslaw.com
kylie.wood@afslaw.com

Robert J. Wierenga
Suzanne L. Wahl
350 South Main Street, Suite 210
Ann Arbor, MI 48104
Telephone: (734) 222-1500
robert.wierenga@afslaw.com
suzanne.wahl@afslaw.com

John W. Treece (#3122889)
1135 West Montana Street
Chicago, IL 60614
Telephone: (312) 961-7808
jtreece@jwtreece.com

ROSE LAW FIRM

Amanda K. Wofford (admitted *pro hac vice*)
Bourgon Reynolds (admitted *pro hac vice*)
120 East Fourth Street
Little Rock, Arkansas 72201
Telephone: (501) 375-9131
Facsimile: (501) 375-1309
awofford@roselawfirm.com
breynolds@roselawfirm.com

*Attorneys for Defendants Mountaire Farms Inc.,*
*Mountaire Farms, LLC and Mountaire Farms of*
*Delaware, Inc.*

VENABLE LLP

By: /s/ *J. Douglas Baldridge*
J. Douglas Baldridge (#437678)
Lisa Jose Fales (admitted *pro hac vice*)
Danielle Foley (admitted *pro hac vice*)
Andrew Hernacki (admitted *pro hac vice*)
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4000
Facsimile: 202-344-8300
jdbaldridge@venable.com
ljfales@venable.com
drfoley@venable.com
athernacki@venable.com

FALKENBERG IVES LLP

Kirstin B. Ives
30 N. LaSalle St., Ste 4020
Chicago, IL 60602
Telephone: (312) 566-4803
Facsimile: (312) 566-4810
kbi@ffilaw.com

*Attorneys for Defendants Perdue Farms, Inc. and Perdue Foods LLC*

VEDDER PRICE P.C.

By: /s/ *Gregory G. Wrobel*
Gregory G. Wrobel (#3122900)
222 N. LaSalle Street
Chicago, IL 60601
Telephone: (312) 609-7722
Facsimile: (312) 609-5005
gwrobel@vedderprice.com

JORDAN PRICE WALL GRAY JONES & CARLTON, PLLC

Henry W. Jones, Jr. (admitted *pro hac vice*)
1951 Clark Avenue
Raleigh, NC 27605
Telephone: (919) 828-2501
Facsimile: (919) 834-8447
hjones@jordanprice.com

*Attorneys for Defendant House of Raeford Farms, Inc.*

MAYER BROWN LLP

By: /s/ *Carmine R. Zarlenga*
Carmine R. Zarlenga (#90784529)
William H. Stallings (admitted *pro hac vice*)
Stephen M. Medlock (admitted *pro hac vice*)
Oral D. Pottinger (admitted *pro hac vice*)
1999 K Street N.W.
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
czarlenga@mayerbrown.com
wstallings@mayerbrown.com
smedlock@mayerbrown.com
opottinger@mayerbrown.com

*Attorneys for Defendant Foster Farms, LLC and Foster Poultry Farms, a California Corporation*

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ *Patrick Fitzgerald*
Patrick Fitzgerald (#6307561)
Gail Lee
155 N. Wacker Drive
Chicago, IL 60606
Telephone: (312) 407-0700
Facsimile: (312) 407-0411
patrick.fitzgerald@skadden.com
gail.lee@skadden.com

Boris Bershteyn (admitted *pro hac vice*)
Lara Flath (#6289481)
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
boris.bershteyn@skadden.com
lara.flath@skadden.com

*Attorneys for Defendant Peco Foods, Inc.*

KUTAK ROCK LLP

By: /s/ John P. Passarelli
John P. Passarelli
James M. Sulentic
1650 Farnam Street
Omaha, NE 68102
Telephone: (402) 346-6000
Facsimile: (402) 346-1148
john.passarelli@kutakrock.com
james.sulentic@kutakrock.com

J.R. Carroll
Jeffrey M. Fletcher
Stephen M. Dacus
234 East Millsap Road, Suite 200
Fayetteville, AR 72703-4099
Telephone: (479) 973-4200
Facsimile: (479) 973-0007
jr.caroll@kutakrock.com
jeffrey.fletcher@kuakrock.com
stephen.dacus@kutakrock.com

*Attorneys for Defendants O.K. Foods, Inc., O.K. Farms, Inc., and O.K. Industries, Inc.*

HOGAN LOVELLS US LLP

By: /s/ *William L. Monts III*
William L. Monts III (admitted *pro hac vice*)
Justin W. Bernick (admitted *pro hac vice*)
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Telephone: (202) 637-5910
Facsimile: (202) 637-5911
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

MILLER, CANFIELD, PADDOCK, AND
STONE P.L.C.

Jacob D. Koering
225 West Washington Street, Ste 2600
Chicago, Illinois 60606
Telephone: (312) 460-4272
Facsimile: (312) 460-4201
koering@millercanfield.com

*Attorneys for Defendant Agri Stats, Inc.*

STINSON LLP

By: /s/ *William L. Greene*
William L. Greene (admitted *pro hac vice*) Peter J.
Schwingler (admitted *pro hac vice*) Kevin P.
Kitchen (admitted *pro hac vice*)
50 South Sixth Street, Ste 2600
Minneapolis, MN 55402
Telephone: (612) 335-1500
william.greene@stinson.com
peter.schwingler@stinson.com
kevin.kitchen@stinson.com

J. Nicci Warr
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
Telephone: (314) 259-4570
nicci.warr@stinson.com

SUGAR FELSENTHAL GRAIS &
HELSINGER LLP

John C. Martin
30 N. LaSalle Street, Ste 3000
Chicago, IL 60602
Telephone: (312) 704-2172
Facsimile: (312) 372-7951
jmartin@sfgh.com

THE LAW GROUP OF NORTHWEST
ARKANSAS LLP

Gary V. Weeks (admitted *pro hac vice*)
K.C. Dupps Tucker (admitted *pro hac vice*)
Kristy E. Boehler (admitted *pro hac vice*) 1830
Shelby Lane
Fayetteville, AR 72704
Telephone: (479) 316-3760
gary.weeks@lawgroupnwa.com
kc.tucker@lawgroupnwa.com
kristy.boehler@lawgroupnwa.com

*Attorneys for Defendants George's, Inc. and
George's Farms, Inc.*

SHOOK HARDY & BACON LLP

By: /s/ *Lynn H. Murray*
Lynn H. Murray
111 S. Wacker Dr., Ste 4700
Chicago IL 60606
Telephone: (312) 704-7700
Facsimile: (312) 558-1195
lhmurray@shb.com

Laurie A. Novion
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
lnovion@shb.com

CONNER & WINTERS

John R. Elrod
Vicki Bronson (admitted *pro hac vice*)
4375 N. Vantage Drive, Ste. 405
Fayetteville, AR 72703
Telephone: (479) 582-5711
jelrod@cwlaw.com
vbronson@cwlaw.com

*Attorneys for Defendant Simmons Foods, Inc. and
Simmons Prepared Foods Inc.*

JOSEPH D. CARNEY & ASSOCIATES LLC

By: /s/ *Joseph D. Carney*
Joseph D. Carney (admitted *pro hac vice*)
Telephone: 440-249-0860
Facsimile: 866-270-1221
jdc@jdcarney.com case@jdcarney.com

Office Address:
139 Crocker Park Boulevard, Ste. 400
Westlake, OH 44145

Mailing Address:
1540 Peach Drive
Avon, OH 44011

MILLER SHAKMAN LEVINE &
FELDMAN LLP

Thomas M. Staunton
Daniel M. Feeney
180 North LaSalle Suite 3600
Chicago, IL 60601
Telephone: 312-263-3700
tstaunton@millershakman.com
dfeeney@millershakman.com

D.KLAR LAW

Deborah A. Klar (admitted *pro hac vice*)
Deborah A. Klar, Esq.
2934 1/2 Beverly Glen Circle, Suite 761
Bel Air, CA 90077
Telephone: 310-858-9500
dklar@dklarlaw.com

*Attorneys for Defendants Case Foods, Inc., Case*
*Farms, LLC, and Case Farms Processing, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 12, 2022, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Lawrence H. Heftman* _____