UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 16 C 8637<br><br>Judge Thomas M. Durkin |

ORDER

The majority of Defendants in this case (the briefs say 14 of them) have entered into what is titled a "judgment sharing agreement." The second amended judgment sharing agreement (or JSA) is the subject of the motion. A copy was provided to the Court, along with the motion and the briefs in support and opposition to it. Having heard oral argument, the motion is denied for the following reasons.

Because antitrust claims carry the risk of treble damages and attorney's fees and a verdict against multiple defendants allows joint and several liability with no right of contribution, a defendant with a very small market share could be required to pay damages attributable to the entire conspiracy. Who has to pay such a large verdict among liable defendants is entirely up to the winning plaintiffs. A ruinous or bankruptcy producing collection action could occur. Defendants believe, and some commentators have written, that this situation could lead to coercive settlements. Plaintiffs disagree and say that joint and several liability is an essential part of the overall antitrust enforcement scheme.

Plaintiff challenge two parts of the JSA. One is the language in § 6(D):

> Settling plaintiff agrees to reduce the dollar amount collectible from non-settling parties pursuant to any final

> judgment by a percent equal to the settling parties sharing percentage as calculated pursuant to the JSA.

Plaintiffs contend this provision allows Defendants to effectively disable joint and several liability, which they argue is contrary to Congressional intent to maximize deterrence for antitrust violations. Plaintiffs also argue that the JSA violates Section 1 of the Sherman Act in that it constitutes a group boycott prohibiting settlements that do not include this language.

The second part of the JSA that plaintiffs challenge is the requirement that each JSA defendant provide the others with a copy of any settlement agreement. The plaintiffs believe this exchange of settlement agreements lacks any justification and puts the defendants at a competitive advantage with respect to each Direct Action Plaintiff, thereby discouraging settlement.

Defendants concede that federal antitrust law has long imposed joint and several liability on co-conspirators and that by entering into the JSA, and in particular § 6(D), they seek to eliminate or soften the impact of joint and several liability on the settlement defendants. But they also point out that such agreements have been common for many years.

The widespread use of JSAs is reflected in the paucity of case law finding them unlawful or even criticizing their use. There is no binding authority either way on the validity of the challenged sections of the JSA from either the Supreme Court or the Seventh Circuit. And almost all of the district courts to have addressed language similar to that of § 6(D) at issue here have found its use to be lawful. *See, e.g.*, *California v. Infineon Techs. AG*, 2007 WL 6197288 (N.D. Cal. Nov. 29, 2007); *In re*

*Brand Name Prescription Drugs Antitrust Litig.*, 1995 WL 221853 (N.D. Ill. Apr. 11, 1995);[1] *Cimarron Pipeline Const., Inc. v. Nat'l Council on Comp. Ins.*, 1992 WL 350612, (W.D. Okla. Apr. 10, 1992). These courts found JSAs permissible as long as they do not impose absolute prohibitions on a signatory defendant's right to settle with a plaintiff individually or contain provisions demonstrating an improper motive to prevent resolution of litigated claims, or that the JSA otherwise has an adverse impact on settlement negotiations. None of those factors are present here.

As an initial observation, there is nothing improper about a JSA, and "they are generally appropriate." *See* Manual of Complex Litigation (4th ed.), at 178. "These agreements serve the legitimate purposes of controlling parties' exposure and preventing plaintiffs from forcing an unfair settlement by threats to show favoritism in the collection of any judgment that may be recovered." *Id*.

The Court would be more skeptical of an agreement that "expressly prohibit[ed] or indirectly discourage[d] individual settlements." *Id*. But that is not the case here. To the contrary, it expressly allows for them, providing that any "party may settle a plaintiff claim, in whole or in party, at any time for monetary or non-monetary consideration or injunctive or other relief." The JSA describes as an "unqualified settlement" any settlement that does not require a settling plaintiff to reduce the dollar amount collectible from non-settling parties pursuant to any final judgment by a percentage equal to the settling parties sharing percentage (generally

---

[1] The Court finds Judge Kocoras's reasoning in *In re Brand Name* persuasive and adopts it here.

3

the settling defendant's market share). Defendants are free to enter into unqualified settlements, which do not contain this judgment sharing language.

Plaintiffs' primary argument is that the JSA somehow jeopardizes joint and several liability. But nothing in the JSA destroys Plaintiffs' entitlement to the full remedies under the law for a trial verdict in their favor. The JSA does not—and cannot—change the fact that any defendant who loses at trial will be subject to joint and several liability with no right of contribution. The JSA simply provides incentives for defendants to reach an agreement with a plaintiff to give up some of the remedies it has if it had gone to trial, such as joint and several liability and treble damages. That's an unremarkable proposition. Parties on both sides of settlement agreements give up something and that is simply the nature of settlement agreements. If a plaintiff wants joint and several liability and treble damages on the table, that will always remain a possibility through the avenue of trial. Obviously, a plaintiff can hold out for a better settlement because a defendant is avoiding the risk of joint and several liability and treble damages. That's part of the risk analysis that does into every decision by both parties to settle. These are settlements between sophisticated parties represented by sophisticated lawyers who are eminently capable of advising their clients regarding the balance of those risks.

When viewed in that light, Plaintiffs' arguments become less compelling. The bottom line is that no agreement between defendants can alter a plaintiff's rights. A plaintiff's rights can only be altered with the plaintiff's consent. The idea that JSA's

trample Congressional intent is illusory. Plaintiffs always have the right to pursue full remedies provided by federal law by refusing to settle.

Congress never passed a law prohibiting JSAs in the antitrust context. There is no question from the briefs each side submitted that Congress knew of JSAs and could have passed a law to prohibit them if Congress believed such agreements served to undermine some statutory or regulatory scheme Congress thought needed to be protected. Plaintiffs argue that provisions in the Antitrust Criminal Penalty Enhancement & Reform Act indicate Congressional disapproval of JSAs. But nothing in that Act prohibits JSAs, and there's a limit to how much can be read into Congressional inaction on a subject. The bottom line is there is no law that prohibits JSAs, either expressly or by implication.

Plaintiffs' contention that a JSA is otherwise unlawful under antitrust law is rejected. Coordination among defendants on how to address litigation is not a group boycott. As discussed, defendants remain free to settle with any plaintiff on any terms. As such, Defendants are not engaged in a boycott. Moreover, federal antitrust law does not speak to settlement agreements, and the agreements in this case, as far as the Court knows, do not concern the commercial transactions between plaintiffs and defendants in the operations of their businesses. Multiple plaintiffs and multiple defendants often agree with their group about a variety of ways to deal with various litigation matters. This situation is no different. Unless it deprives an opposing party of a right the law grants that opposing party, there is nothing unlawful about it. For the same reason, a JSA is not unlawful under Illinois law.

The Court also finds that the JSA does not discourage settlements. In this case, there have been defendants who are not party to a JSA who have settled with class plaintiffs, and defendants who are parties to the JSA who have settled with class plaintiffs. I'm not privy to the settlement agreement of non-class plaintiffs. But the mere fact that defendants have reached an agreement among themselves in the form of a JSA that is entirely rational and not illegal, even it is lessens the negotiating power of a plaintiff, is not a basis to declare it or parts of it unlawful or unenforceable.

The JSA may make it more difficult for a plaintiff to settle on more advantageous terms. But that is a product of the parties balancing the risks and costs of continuing to proceed with this litigation. It is not the Court's role to interfere with that private cost-benefit analysis or the ensuing private agreements unless there is something illegal about those agreements. As discussed, the Court rejects Plaintiffs' arguments that JSAs in general and this JSA in particular are illegal.

The JSA also provides that each JSA defendant must provide the others with a copy of any settlement agreement to which a JSA defendant is a party, within seven days after executing the agreement. The plaintiffs claim this lacks any legitimate justification, puts the defendants at a competitive disadvantage with respect to each Direct Action Plaintiff, and discourages settlement. But nothing prevents a settling plaintiff from insisting on language in a settlement agreement that says to a settling defendant that they must keep the settlement agreement confidential. The cases Plaintiffs cite to support the idea that settlement agreements are confidential all deal with a productions of settlement agreements, which is irrelevant to the circumstances

at issue here. Plaintiffs are free to decide whether to insist on confidentiality of any settlement agreement. The JSA does not materially impair that right.

For all those reasons, Plaintiffs' motion [5163] is denied.

ENTERED:

*Thomas M. Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: May 4, 2022