IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **IN RE BROILER CHICKEN ANTITRUST LITIGATION** | Case No: 1:16-cv-08637 |
| | Hon. Judge Thomas M. Durkin |
| THIS DOCUMENT RELATES TO: ALL TRACK 2 CASES | Magistrate Judge Jeffrey T. Gilbert |

**FIELDALE FARMS CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

**INTRODUCTION**[1]

Defendant Fieldale Farms Corporation ("Fieldale") submits this memorandum in support of its motion to dismiss to separately highlight Plaintiffs' failure to allege any facts that could support bid-rigging claims against Fieldale.[2] Although Plaintiffs seek to pull Fieldale into an amorphous pool of "Bid-Rigging Defendants," the Second Amended Complaint's 65-page section on bid-rigging allegations mentions Fieldale in just ***two paragraphs***. Those two paragraphs do not allege, as they must, any of the elements that must be pled in order to maintain a claim against Fieldale for rigging bids. In fact, they do not allege that Fieldale had *any* communications with other defendants about bid submissions or actually submitted *any* bids for the contracts at issue. They certainly do not allege that Fieldale entered into agreements to fix bids that caused the customers an antitrust injury.

Plaintiffs' Complaint contains two paragraphs that make only general observations about Fieldale's unilateral pricing as follows:

- Paragraph 1086 observes that Fieldale, as Bojangles' "primary supplier for chicken sandwich filets," raised its filet prices from 2014 to 2015.

- Paragraph 1101 includes a quote from Fieldale's Chairman at a 2014 board meeting that reads, "the price of chicken is going down, but [] our price is steady."

These paragraphs are entirely void of any allegation that Fieldale communicated with another Defendant about bids (or anything else for that matter) or any allegation relating to a bid that Fieldale submitted. As a result, it would be impossible to read Plaintiffs' complaint and answer the following questions: (1) with which Defendant(s) did Fieldale agree to rig bid submissions and (2) what rigged bids did Fieldale submit? Left without any conceivable answers

---

[1] Fieldale also joins the Certain Defendants' Joint Motion to Dismiss.

[2] Fieldale only asserts this motion against DAPs with claims against Fieldale.

to those two questions, much less plausible ones, Plaintiffs' bid-rigging claims against Fieldale should be dismissed.

## BACKGROUND

Following a series of indictments by the Department of Justice that began in June 2020,[3] certain Direct Action Plaintiffs added bid-rigging allegations and claims to an Amended Consolidated Complaint in January 2021.[4] Neither Fieldale nor any of its employees have been named in any of the DOJ's bid-rigging indictments, and the Amended Consolidated Complaint did not bring bid-rigging claims against Fieldale. Nevertheless, on February 28, 2022 the Track 2 Direct Action Plaintiffs filed their Second Amended Complaint (the "Complaint"), which asserts bid rigging claims (Counts 4–5) against a group of 14 "Bid-Rigging Defendants"—a group that inexplicably includes Fieldale. *See* Compl. at p. 415–23. The Complaint also brought two "overarching" conspiracy claims that allege bid rigging worked in conjunction with alleged supply cuts and/or alleged manipulation of the Georgia Dock as part of a single, overarching agreement (Counts 1 and 6). *Id*. at pp. 405–10, 423–427.

While the Complaint devotes hundreds of paragraphs to so-called "bid-rigging conduct," Compl. ¶¶ 874–1109, none of the actual bids or bid-related communications discussed involve Fieldale. Instead, the Complaints' bid-rigging allegations focus on specific fast-food customer contracts that a small group of other Defendants bid on between 2011–2019. *See, e.g.*, ¶ 915 (alleging that "Pilgrim's and Claxton exchanged their pricing intentions with respect to Pollo

---

[3] *See* Indictment, *United States v. Penn*, No. 20-CR-152 (D. Colo. Jun. 6, 2020). Note that the Court may take notice of the contents of the indictments, as they are "matters of public record [whose] accuracy . . . cannot be questioned."

[4] *See* DAPs Amended Consolidated Complaint, Dkt. 4243 (January 2021).

3

Tropical"); ¶928 (alleging that Claxton "shared Chick-fil-A sales volume figures for Claxton, Wayne, Perdue, Pilgrim's and Tyson" with Koch); ¶¶ 902, 906, 911, 913-914, 916-917, 920-922, 926-927, 931, 935, 938-939, 944, 948, 962-963, 968, 973-976, 980-981, 984-990, 992-995, 997, 1004, 1010, 1027, 1041, 1047-1051, 1054-1057, 1069-1071, 1076, 1079, 1091 and 1109. (discussing contracts for specific Defendant suppliers of KFC). None of these allegations mention Fieldale.

In fact, the only two paragraphs that mention Fieldale in the entire bid-rigging section are unrelated to actual bids, much less communications with any other Defendant about bid submissions.[5] One of those paragraphs observes that Fieldale raised prices to Bojangles in 2015 while the other quotes Fieldale's Chairman as having told Fieldale's board that "the price of chicken is going down, but [] our price is steady." Compl. ¶¶ 1086, 1101. As discussed below, these two isolated mentions of Fieldale—both of which are entirely unrelated to bid submissions—fall well short of plausibly alleging that Fieldale was in any way involved with the bid-rigging conspiracy that Plaintiffs allege here.

### ARGUMENT

Plaintiffs' Complaint fails to allege facts that, even if true, could support a plausible inference that Fieldale joined a bid-rigging conspiracy. To sufficiently allege a defendant's involvement in a conspiracy, it is "essential to show that a particular defendant joined the conspiracy and knew of its scope." *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772,

---

[5] While the Plaintiffs' burden to survive a motion to dismiss is far greater than simply alleging "communications" between defendants, the lack of *any* alleged communications demonstrates just how far Plaintiffs are from alleging a plausible bid rigging conspiracy involving Fieldale.

803 (N.D. Ill. 2017) (quoting *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)) (emphasis added). Moreover, "[a] complaint based on a theory of collective responsibility must be dismissed. ***That is true even for allegations of conspiracy***." *Knight*, 725 F.3d at 818 (emphasis added). Importantly, plaintiffs may not rely on "[v]ague references to a group of 'defendants,' without specific allegations tying the individual defendants to [the alleged wrongful conduct.]" *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008). "While the complaint need not contain detailed defendant by defendant allegations, it must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it." *United States Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892, 904-05 (N.D. Ill. 2019) (internal quotations omitted).

Here, Plaintiffs have not plead a single allegation that associates Fieldale with any bid submission at issue in the Complaint. In fact, Plaintiffs have not even alleged that Fieldale ever communicated with *any* Defendant about bids or prices submitted to Pollo Tropical, Chick-fil-A, KFC, or any other alleged bid-rigging victim. And Plaintiffs also do not allege—because they can't—that the DOJ has accused Fieldale of rigging any bids. Indeed, the public record from the two criminal trials to date shows not only that the DOJ has not brought indictments against anyone affiliated with Fieldale, ***but the DOJ also has not called any Fieldale witnesses or used any Fieldale documents as exhibits during the trials***. Conversely, the meager references to Fieldale in the Complaint's bid-rigging section would only establish (if proven) that Fieldale unilaterally raised prices for a category of products (sandwich filets) with respect to a particular customer (Bojangles) at some unknown point in 2015. These references are plainly insufficient to plausibly

5

allege participation in a conspiracy. *See Vildaver v. Merrill Lynch, Pierce, Fenner & Smith*, No. 94 C 3041, 1995 U.S. Dist. LEXIS 2870, at *18 (N.D. Ill. Mar. 8, 1995) (dismissing claim for conspiracy against certain defendants because "there [was] nothing in the complaint from which one [could] infer any of [the] defendants' roles in the alleged conspiracy, or whether [the] defendants even knew about, much less agreed" to join the conspiracy).[6]

Moreover, because Plaintiffs' bid-rigging claims (Counts 4 and 5) against Fieldale fail, the Court must also dismiss the "overarching" conspiracy claims (Counts 1 and 6). As summarized in Defendants' joint motion to dismiss, these claims are predicated on the notion that bid rigging worked in conjunction with alleged supply cuts and/or alleged manipulation of the Georgia Dock as part of a single, overarching agreement.[7] Because the Complaint fails to allege that Fieldale joined any bid-rigging conspiracy, it follows that Plaintiffs have not alleged Fieldale's participation in an "interwoven plot" that necessarily includes bid rigging. *Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*, 277 F. Supp. 3d 521, 546 n.11 (S.D.N.Y. 2017).

Given that Plaintiffs have failed to state a claim after six years of litigation and multiple amendments, the Court should dismiss these claims with prejudice. *See United States ex rel. Gutman v. Chi. Vein Inst.*, No. 1:16-cv-09734, 2021 U.S. Dist. LEXIS 9045, at *20 (N.D. Ill. Jan. 19, 2021) (dismissing with prejudice where "Defendants would face undue prejudice if forced to

---

[6] Plaintiffs' failure to make specific allegations against Fieldale cannot be saved by its references to the "Bid-Rigging Defendants." These "[v]ague references" to a "group of defendants" do not specifically tie Fieldale to any alleged wrongful conduct. *Grieveson*, 538 F.3d at 778; *see also United States Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892, 904 (N.D. Ill. 2019) (dismissing Sherman Act Section 1 claim where the "complaint [was] silent about [certain defendants'] role in a conspiracy").

[7] *See* Certain Defendants' Brief in Support of Joint Motion to Dismiss (Counts 1 and 6).

defend against yet another complaint concerning conduct that allegedly occurred more than six years ago").

## **CONCLUSION**

Track Two Plaintiffs' bid-rigging allegations fail to answer the most basic questions: 1) with whom did Fieldale rig bids; and 2) what bids were rigged? After years of litigation, discovery and multiple public trials, the obvious answer is that Fieldale is not a "Bid Rigging Defendant." Count 1, 4, 5, and 6 against Fieldale should be dismissed with prejudice.

Dated:  May 6, 2022

Respectfully submitted,

/s/  Valarie C. Williams
B. Parker Miller (*pro hac vice*)
Valarie C. Williams (*pro hac vice*)
Thomas P. Grantham (*pro hac vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000 (T)
(404) 881-7777 (F)
parker.miller@alston.com
valarie.williams@alston.com
thomas.grantham@alston.com

Max Marks (*pro hac vice*)
**THE BLOCK FIRM LLC**
309 East Paces Ferry Road, Suite 400
Atlanta, GA 30305
(404) 997-8419
max.marks@blockfirmllc.com

*Attorneys for Defendant Fieldale Farms Corporation.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2022, I filed **DEFENDANT FIELDALE FARMS CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of Court via the ECF system, which will automatically serve all counsel of record.

/s/ *Thomas P. Grantham*