UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION* | Case No. 1:16-cv-08637 |
| *This Document Relates To:* | Honorable Thomas M. Durkin |
| ALL CLASS PLAINTIFFS | Magistrate Judge Jeffrey T. Gilbert |

**CLASS PLAINTIFFS' MOTION FOR CLARIFICATION
<u>ON INSTRUCTIONS NOT TO ANSWER AT DEPOSITIONS</u>**

REDACTED

- i -

**TABLE OF CONTENTS**

**Page**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 3 |
| II. | FACTUAL BAGKROUND | | 6 |
| III. | PROCEDURAL POSTURE | | 7 |
| IV. | ARGUMENT | | 8 |
| | 1. | Instructions not to answer questions touching on price are improper given the inextricably intertwined nature of the evidence in this case | 8 |
| | 2. | Instructions not to answer are improper under Federal Rule of Civil Procedure 30. | 12 |
| | 3. | Judge Durkin's rationales underlying the bifurcation order are not undermined by the requested discovery | 13 |
| V. | CONCLUSION | | 14 |

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Harris v. City of Chicago*,
   266 F.3d 750 (7th Cir. 2001) ..................................................................................................9

*Redwood v. Dobson*,
   476 F.3d 462 (7th Cir. 2007) ................................................................................................12

*Specht v. Google, Inc.*,
   268 F.R.D. 596 (N.D. Ill. 2010)............................................................................................12

*United States v. Penn, et al.*,
   Case No. 20-cr-00152-PAB (D. Colo.)...................................................................................4

### OTHER AUTHORITIES

Federal Rule of Civil Procedure 30 ...............................................................................................12

Federal Rule of Civil Procedure 30(b)(1) .......................................................................................3

Federal Rule of Civil Procedure 30(c)(2) ..........................................................................5, 12, 13

Federal Rule of Civil Procedure 30(d)(3) .....................................................................................12

## I. INTRODUCTION

At recent Rule 30(b)(1) depositions, Defendants[1] and individual criminal counsel for the deponents have taken an overly expansive view of what constitutes "bid rigging." Based on this flawed understanding, counsel have instructed witnesses not to answer relevant questions focused on the Georgia Dock, Agri Stats, and pricing that did not involve bids or bid rigging. Five more Rule 30(b)(1) depositions are scheduled in the next four weeks. Class Plaintiffs fear that, without guidance from the Court, witnesses in these upcoming depositions will be similarly (and improperly) instructed not to answer Plaintiffs' questions and Plaintiffs will be prevented from gathering relevant evidence to support their case. Class Plaintiffs therefore respectfully request clarification from the Court that, under the order vacating the bifurcation order (ECF 5128), instructions to a witness not to answer should be limited, at most, to matters directly touching on the elements of the criminal prosecutions, or to questions regarding fixed bids submitted to commercial restaurant customers for small birds.

---

[1] "Defendants" refers to Koch Foods, Inc.; JCG Foods of Alabama, LLC, JCG Foods of Georgia, LLC, Koch Foods, Inc. and Koch Meats Co., Inc., Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Breeders, Inc., and Tyson Poultry, Inc., Pilgrim's Pride Corporation, Perdue Farms, Inc. and Perdue Foods LLC, Sanderson Farms, Inc., Sanderson Farms, Inc. (Foods Division), Sanderson Farms, Inc. (Production Division), and Sanderson Farms, Inc. (Processing Division), Wayne Farms, LLC, Mountaire Farms, Inc., Mountaire Farms, LLC, and Mountaire Farms of Delaware, Inc., Peco Foods, Inc., Foster Farms, LLC and Foster Poultry Farms, House of Raeford Farms, Inc. (aka, Columbia Farms), Simmons Foods, Inc. and Simmons Prepared Foods, Inc., Fieldale Farms Corporation, George's, Inc. and George's Farms, Inc., O.K. Foods, Inc., O.K. Farms, Inc. and O.K. Industries, Inc., Claxton Poultry Farms, Inc., Harrison Poultry, Inc., Mar-Jac Poultry, Inc., Mar-Jac Poultry MS, LLC, Mar-Jac Poultry AL, LLC, Mar-Jac AL/MS, Inc., Mar-Jac Poultry, LLC and Mar-Jac Holdings, LLC, Agri Stats, Inc., Amick Farms, LLC, The Amick Company, Inc., Amick-OSI Broilers, LLC, and Amick-OSI Processing, LLC, and Case Foods, Inc., Case Farms, LLC, and Case Farms Processing, Inc.
  Although Class Plaintiffs have settled with some of these parties, the instructions not to answer are being made on behalf of all Defendants.

On March 14, 2022, Judge Durkin denied motions to stay the remaining depositions of fact witnesses in this long-running civil litigation. ECF 5472. These depositions had previously been stayed during the pendency of the criminal proceedings in *United States v. Penn, et al.*, Case No. 20-cr-00152-PAB (D. Colo.). The parties and individual counsel for these witnesses have worked cooperatively to schedule these depositions. But as these depositions have proceeded, it has become clear that Defendants are relying on an overly broad understanding of the Order excluding "bid-rigging" claims from the Track One civil proceedings to object to clearly relevant and probative evidence regarding Georgia Dock manipulation, supply constraints, bilateral communications, and the use of Agri Stats. Following Defendants' lead, individual counsel have invariably relied on Judge Durkin's Order to instruct the witnesses not to answer Plaintiffs' questions.

Class Plaintiffs bring this Motion for immediate relief: five depositions are scheduled in the next four weeks. Although many of the witnesses are invoking their Fifth Amendment rights to avoid criminal liability (despite the conclusion of the first set of criminal trials), the inferences from the invocations of the Fifth Amendment are relevant for both the upcoming motions for summary judgment as well as the civil trial in this action. Without relief from the Court, critical evidence will be lost to the civil plaintiffs.

Class Plaintiffs' counsel should be permitted to conduct their questioning of the witnesses. Defense and individual counsel can make their objections, including whether they believe Plaintiffs' question is outside the scope of Track One cases and relates to a "bid-rigging claim" alone. But the remedy should lie with Judge Durkin – whether at summary judgment or during motions in limine before trial – on whether the evidence will be excluded under the rules of

evidence as being outside the scope of the claims. The self-help remedy of instructing the witnesses not to answer Plaintiffs' questions runs afoul of this Court's guidance and settled law.

Plaintiffs' request to allow questioning to go forward is supported by three separate grounds. *First*, questions about Georgia Dock, Agri Stats, and pricing that do not involve specific bids at issue in the criminal cases are not bid rigging—full stop. *Second*, instructions not to answer are improper under Rule 30(c)(2) of the Federal Rules of Civil Procedure, which narrowly limits such instructions. *Third*, Plaintiffs' reading accomplishes what Plaintiffs assume were the Court's goals from the Order in the first instance, including avoiding interference with the ongoing criminal investigation and prosecutions and ensuring a timely resolution of the civil case.

The parties conferred on this issue on August 4, 2022 but were unable to reach a resolution. That conference included counsel for Jayson Penn and William Lovette, two witnesses (and former criminal defendants) whose depositions are currently being scheduled. Similarly, on August 5, 2022, Class Plaintiffs conferred with the criminal defense team for Roger Austin, another Pilgrim's employee whom Plaintiffs seek to depose. During that conference, Austin's criminal defense attorneys took an extremely expansive view of what constitutes "bid rigging," stating that the term encompasses inventory levels, breeder stocks, and industry head weight trends, among other things. Scarlett Decl., ¶ 2. By this logic, Class Plaintiffs' entire case is founded on bid-rigging, an interpretation that is clearly absurd. The parties' widely diverging interpretations of the Order present a ripe dispute, and the Court's assistance is required to reach a resolution.

While Class Plaintiffs do not seek to re-depose the witnesses who have already been deposed, they reserve the right to re-depose witnesses who are instructed not to answer subsequent to the filing of this motion. In addition, Class Plaintiffs seek guidance from this Court as to whether

the depositions should be suspended during questioning to seek immediate guidance from the Court via teleconference on the propriety (or impropriety) of any instructions not to answer.

## II. FACTUAL BAGKROUND

The factual allegations underlying this case are well-known to this Court. But how these factual allegations fit into a legal framework is hotly disputed between the parties. Class Plaintiffs allege that Defendants agreed to stabilize the price and supply of broiler chicken through a series of overt acts, including direct communications, coordinated supply cuts, inter-defendant sales (where large defendants such as Tyson purchased chicken from their erstwhile competitors to stop smaller producers from flooding the market with chicken), public signaling, manipulation of the Georgia Dock, and the use of Agri Stats. Each of these overt acts were in furtherance of the same objective—limiting the supply of chicken and manipulating the price, such that each Defendant was able to extract billions of dollars in ill-gotten gains during the conspiracy period.

Defendants have done their best to recast this conspiracy into three "separate legs of [a] stool," limited to supply, Georgia Dock, and bid rigging.[2] Defendants have argued that these "three separate conspiracy theories" operated "by different means, involved different individuals, and included different products."[3] As an initial matter, Plaintiffs' allegations of conspiratorial conduct are not so limited—under Defendants' framing of this conspiracy, their participation in Agri Stats does not even exist. But more importantly for the purposes of this motion, their framing of these separate conspiracies have run headlong into the actual facts. Witnesses that have relevant information regarding direct communications between Defendants, submissions to the Georgia

---

[2] Certain Defendants' Memorandum of Law in Support of Their Joint Motion to Dismiss Overarching Conspiracy and Bid-Rigging Claims, ECF No. 5599, UNDER SEAL (filed May 6, 2022).

[3] Defendants' Response to Kroger & Publix Plaintiffs' Supplemental Brief in Response to May 27, 2021 Order, ECF No. 4830 (July 9, 2021).

Dock, and Agri Stats are now being instructing not to answer because the questions are deemed to touch upon "bid-rigging."

### III. PROCEDURAL POSTURE

Since the inception of this litigation, Class Plaintiffs have alleged a conspiracy to increase the price and restrain the supply of chicken sold in the U.S., effectuated through a variety of different means. With the intervention of the Department of Justice, and its motion to stay, Judge Durkin sought a path forward that allowed the civil claims to proceed, but also protected the secrecy of the grand jury investigation and allowed the criminal trials to proceed. In September 2020, the Court determined that bid-rigging claims should be bifurcated from the rest of the case. ECF 3835. Although the Court noted that the bid-rigging claims were related to the rest of the claims, it determined that bifurcation was necessary in order to expedite the litigation and to avoid an overlap with the government's criminal proceedings. In its 2020 Order, the Court wrote: "Discovery into bid-rigging is closed until the supply reduction and Georgia Dock claims are resolved." *Id*. at 7. Notably, the Court has never defined what is meant by "bid-rigging."

In October of 2021, the Court vacated its prior bifurcation order. ECF 5128. But although the Court's new order allowed Plaintiffs to introduce (or reintroduce) evidence of bid-rigging moving forward if they so wished, it also noted that the Court would "accommodate any plaintiff that would like to continue to trial on the supply reduction and Georgia Dock conspiracies without discovery into bid rigging claims." *Id*. at 4. Those plaintiffs who proceeded without discovery into bid rigging—so called "Track One" plaintiffs—would continue to receive priority. *Id*. at 4–5. Judge Durkin explicitly noted, however, that this "prohibition on discovery into bid rigging during the first track should not be construed as a ruling on whether Plaintiffs may use evidence of bid rigging they already possess or that is publicly available in a trial on the supply reduction and Georgia Dock conspiracies." *Id*. n.2. Class Plaintiffs opted into Track One to avoid further delays

in the case, with the understanding that although they would not be able to conduct independent discovery into matters solely pertaining to Defendants' alleged bid-rigging, their case would otherwise remain unaffected.

Now, however, Defendants are relying on an overly broad interpretation of the Court's bid-rigging order to object to Plaintiffs' questions about unrelated topics. Following Defendants' lead, individual defense counsel have repeatedly instructed witnesses not to answer these questions. During the depositions of Timothy Stiller on June 17, 2022 and of Thomas Lane on July 26, 2022, Defendants repeatedly objected to Plaintiffs' questions about Agri Stats, price fixing, inter-defendant communications, and Georgia Dock manipulations, basing their objections on what Class Plaintiffs submit is an improper interpretation of the Court's bid-rigging order, and individual counsel invariably instructed the deponents not to answer. Despite best efforts, the parties have been unable to resolve this ongoing dispute and are now at an impasse requiring the Court's assistance.

## IV. ARGUMENT

Class Plaintiffs seek an order clarifying that instructions to a witness not to answer based on Judge Durkin's bid-rigging order should be limited, at most, to matters directly touching on the elements of the criminal prosecutions, or to questions regarding fixed bids submitted to commercial restaurant customers for small birds.

> **1. Instructions not to answer questions touching on price are improper given the inextricably intertwined nature of the evidence in this case.**

Five additional fact depositions are scheduled in the next four weeks. These witnesses have relevant knowledge of the conspiracy, including Georgia Dock, Agri Stats, and other pieces of Defendants' manipulation of the market. Defendants' position is that Judge Durkin's order prevents Plaintiffs from asking a deponent *any* question about *any* document with even a tangential

- 8 -

relationship to bid rigging. But as the Court itself has recognized, "discovery for all three claims [supply reduction, Georgia Dock manipulation, and bid-rigging] is thoroughly intertwined in terms of the scope of relevant documents, document custodians, and deponents." ECF 3835 at 4. Preventing Plaintiffs from asking questions about documents that in any way touch on bid-rigging is acting to deprive Plaintiffs of evidence that relates to their conspiratorial allegations, including direct communications between Defendants, Georgia Dock manipulation, and Agri Stats. Some of the individual witnesses have invoked the Fifth Amendment in response to all questions, but even then—the instructions not to answer on the grounds it violates the Court's "bid-rigging" order is acting to deprive Plaintiffs of inferences that may otherwise be available at summary judgment and trial. *See Harris v. City of Chicago*, 266 F.3d 750, 753 (7th Cir. 2001) ("The rule that adverse inferences may be drawn from Fifth Amendment silence in civil proceedings has been widely recognized by the circuit courts of appeals, including our own.") (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 389–91 (7th Cir.1995)).

Far from being a hypothetical concern, this overly broad interpretation of the Court's Order has constrained Plaintiffs' ability to gather evidence. On the basis of their flawed reading of the Court's order, counsel for Defendants objected during two separate depositions to questions that were well within the bounds of the Order. Individual counsel for both witnesses followed Defendants' lead and instructed their clients not to answer Plaintiffs' questions. The following examples are emblematic:

*From the deposition of Timothy Stiller, Head of Food Service at Pilgrim's Pride Corporation*:

- Individual counsel instructed the witness not to respond to the following question: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at ▮▮ (Stiller Tr.). This question concerned ▮▮▮

- 9 -

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████. Counsel for Perdue objected

██████████████████████████████████████

██████ *id.*, and the witness's individual counsel refused to allow the witness to answer Plaintiffs' counsel's question ████████████████████

████████████████████████████ *Id.* (Stiller Tr.).

- Individual counsel instructed the witness not to answer questions about ██████████████████████████████████████

 ██████████████████████████████████████

 ██████████████████████████████████████

 ████████████████████ Plaintiffs' counsel asked the witness: ██████

 ██████████████████████████████████████

 ████████████████████████ *Id.* at ████ The witness's individual counsel objected to Plaintiffs' counsel's question on the grounds that the question violated the Court order. *Id.* at ████. Counsel for Perdue added their own objection, ████████████████████████████████

 ██████████████████████ *Id.* at ████.

- Individual counsel instructed the witness not to answer the following question: ██████████████████████████████████

 ██████████████████████████████████████

 ██████████████████ Counsel objected ████████████████

- 10 -

██████████████████████████████████████████████████████████ Scarlett

Decl., Ex. 1 at ██ (Stiller Tr.).

- In response to Plaintiffs' question, ██████████████████████████

  ██████████████████████████████████████████████, *id*.

  at ██ (Stiller Tr.), Counsel for Case Farms raised an objection ████████

  ████████████████████████ *Id*. Counsel for Perdue objected on the same

  grounds. *Id.* Following these two objections from Defendants, the witness's

  individual counsel instructed the witness not to answer. *Id.*

*From the deposition of Thomas Lane, Director at Pilgrim's Pride Corporation*:

- Individual counsel instructed the witness not to answer the following

  question: ████████████████████████████████████████

  ████████████████████████████████████████████████

  ████████████████████████████████████████████████

  ██████████████████ *Id.* at ████ (Lane Tr.). Individual counsel objected to the

  question, saying ████████████████████████████████

  ████████████████████████████████████████████████

  ██████████████████████████ *Id.*, Ex. 2 at ██ (Lane Tr.).

Plaintiffs provide each of these transcripts in full, but these handful of examples demonstrate that Defendants are construing the term "bid-rigging" so broadly that Plaintiffs would not, under this reading, be able to inquire into the allegations in this civil case, including other overt acts undertaken to stabilize the price and supply of broilers in the United States.

- 11 -

### 2. Instructions not to answer are improper under Federal Rule of Civil Procedure 30.

Instructions not to answer questions at depositions are heavily disfavored. Under Rule 30 of the Federal Rules of Civil Procedure, "a person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). The Seventh Circuit has explained that, in practice, Rule 30 means that unless an exception applies, "[c]ounsel for the witness . . . must not instruct the witness to remain silent." *Redwood v. Dobson*, 476 F.3d 462, 467–68 (7th Cir. 2007). This is because witnesses are, under normal circumstances, deposed only once. Instructions not to answer deprive parties of evidence and cause enormous inefficiencies in litigation, where judicial intervention must be sought, and witnesses brought back a second time to answer questions blocked by improper instructions.

Individual counsel's instructions not to answer in this case run afoul of this Rule. The overbroad interpretation of "bid rigging" to include price fixing generally, Agri Stats, and the Georgia Dock reach far beyond the Order's scope. The proper approach should be, if Defendants object to an individual question, to allow the witness to answer and move to exclude any inferences or responses at summary judgment or trial. The Court would then be the arbiter of whether the evidence was sufficiently relevant to the Class Plaintiffs' claims. *See Specht v. Google, Inc.*, 268 F.R.D. 596, 599 (N.D. Ill. 2010) (noting that counsel for the defense should have "state[d] his objection and the grounds for it and allow the witness to answer" in a case where "none of the exceptions in Rule 30(c)(2) apply").

Moreover, Plaintiffs face clear prejudice if the Court does not issue an order clarifying that instructions not to answer at deposition are heavily disfavored and should be limited only to the

narrowest of circumstances. There are six witnesses remaining, including five to be scheduled in the next four weeks:

| Witness | Company | Date Scheduled (if applicable) |
|---|---|---|
| Kantola, William | Koch | Aug 9 |
| Martin, Jeramie | Claxton | Aug 10 |
| Austin, Roger | Pilgrim's | Date TBD |
| Brady, Scott | Claxton | Aug 18 |
| Lovette, William | Pilgrim's | Scheduling in progress |
| Penn, Jayson | Pilgrim's | Scheduling in progress |

Without resolution of this issue, Plaintiffs are likely to face extreme prejudice as counsel instruct witnesses not to answer basic questions relating to the conspiracy.

### 3. Judge Durkin's rationales underlying the bifurcation order are not undermined by the requested discovery.

Judge Durkin originally bifurcated the bid-rigging aspect of the case for two reasons. First, the Court was concerned that the additional discovery needed for bid-rigging claims would take too much time and would unduly delay the proceedings. ECF 3835 at 6. Second, the Court separated the claims in deference to the government's criminal prosecution brought on bid-rigging grounds. *Id*. Even after vacating the bifurcation order, the Court still decided to give priority to plaintiffs who agreed to forego bid-rigging claims to ensure a speedier resolution of the case and to avoid interfering with the government's criminal prosecution. ECF 5128.

Class Plaintiffs' reading of the Court's most recent Order would ensure these goals are met. First, with regard to timeliness and case efficiency, Class Plaintiffs' interpretation is more efficient for keeping the case on track. Plaintiffs remain constrained by the time limits set by the Court. By contrast, Defendants' overly broad reading could cause delays and more work for the Court: additional disputes, much like the one at issue here, will undoubtedly arise if the Court determines that a broader interpretation of the Order is warranted. Settling these disputes will take time for the Court to resolve.

Second, Class Plaintiffs' interpretation will not cause an overlap between the civil and criminal cases. Even a narrow interpretation of the Order prevents Plaintiffs from asking questions that touch on the related criminal proceedings. Achieving this aim does not, therefore, require the Court to take a broader view of the Order.

## V. CONCLUSION

For the reasons discussed above, Class Plaintiffs respectfully request clarification from the Court that Class Plaintiffs may ask questions during depositions concerning the alleged Georgia Dock manipulation, supply constraints, the use of Agri Stats, bilateral communications, and price fixing. Class Plaintiffs further request clarification that instructions not to answer based on the Order should be limited, at most, to matters directly touching on the elements of the criminal prosecutions, or to questions regarding fixed bids submitted to commercial restaurant customers for small birds.

At the discovery conference, counsel for the witnesses Jayson Penn and William Lovette, stated that any instructions not to answer would be raised on a question-by-question basis. In the event that this issue arises at future depositions, Class Plaintiffs request permission to suspend the depositions and contact the Court for immediate rulings and guidance as to the propriety of the questions.

| | |
|---|---|
| DATED: August 5, 2022 | Respectfully submitted, |
| HAGENS BERMAN SOBOL SHAPIRO LLP | LOCKRIDGE GRINDAL NAUEN P.L.L.P. |
| By: */s/ Shana E. Scarlett*<br>    Shana E. Scarlett<br>Rio R. Pierce<br>715 Hearst Avenue, Suite 202<br>Berkeley, CA 94710<br>Telephone: (510) 725-3000<br>shanas@hbsslaw.com<br>riop@hbsslaw.com | By: */s/ W. Joseph Bruckner* (*with permission*)<br>    W. Joseph Bruckner<br>Brian D. Clark<br>Simeon A. Morbey<br>Kyle Pozan<br>100 Washington Avenue South, Suite 2200<br>Minneapolis, MN 55401<br>Telephone: (612) 339-6900<br>Facsimile: (612) 339-0981<br>wjbruckner@locklaw.com<br>bdclark@locklaw.com<br>samorbey@locklaw.com<br>kjpozan@locklaw.com |
| Steve W. Berman<br>Breanna Van Engelen<br>Abigail D. Pershing<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>1301 Second Avenue, Suite 2000<br>Seattle, WA 98101<br>Telephone: (206) 623-7292<br>steve@hbsslaw.com<br>breannav@hbsslaw.com<br>abigailp@hbsslaw.com | |
| Elaine T. Byszewski<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>301 N. Lake Ave., Suite 920<br>Pasadena, CA 91101<br>Telephone: (213) 330-7150<br>elaine@hbsslaw.com | Clifford H. Pearson<br>Daniel L. Warshaw<br>Thomas J. Nolan<br>Bobby Pouya<br>Michael H. Pearson<br>PEARSON SIMON & WARSHAW, LLP<br>15165 Ventura Boulevard, Suite 400<br>Sherman Oaks, CA 92403<br>Telephone: (818) 788-8300<br>Facsimile: (818) 788-8104<br>cpearson@pswlaw.com<br>dwarshaw@pswlaw.com<br>tnolan@pswlaw.com<br>bpouya@pswlaw.com<br>mpearson@pswlaw.com |
| Brent W. Johnson<br>Benjamin D. Brown<br>Daniel H. Silverman<br>Alison Deich<br>COHEN MILSTEIN SELLERS & TOLL, PLLC<br>1100 New York Ave. NW<br>Suite 500, West Tower<br>Washington, DC 20005<br>Telephone: (202) 408-4600<br>bjohnson@cohenmilstein.com<br>bbrown@cohenmilstein.com<br>dsilverman@cohenmilstein.com<br>adeich@cohenmilstein.com | Bruce L. Simon (Pro Hac Vice)<br>PEARSON SIMON & WARSHAW, LLP<br>350 Sansome Street, Suite 680<br>San Francisco, CA 94104<br>Telephone: (415) 433-9000<br>Facsimile: (415) 433-9008<br>bsimon@pswlaw.com<br><br>*Co-Lead Counsel for the Direct Purchaser Class* |
| *Co-Lead Counsel for End-User Consumer Class* | |

Steven A. Hart
Brian Eldridge
HART MCLAUGHLIN & ELDRIDGE, LLC
121 West Wacker Drive, Suite 1050
Chicago, IL 60601
Telephone: (312) 955-0545
Facsimile: (312) 971-9243
shart@hmelegal.com
beldridge@hmelegal.com

*Direct Purchaser Plaintiffs Liaison Counsel*

Adam J. Zapala
James G.B. Dallal
COTCHETT, PITRE & MCCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com
jdallal@cpmlegal.com

Alexander E. Barnett
COTCHETT, PITRE & MCCARTHY, LLP
40 Worth Street, Ste. 602
New York, NY 10013
Telephone: (212) 201-6820
abarnett@cpmlegal.com

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua J. Rissman
GUSTAFSON GLUEK PLLC
120 South Sixth Street, #2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com

*Co-Lead Class Counsel for the Commercial and Institutional Indirect Purchaser Class*

Kenneth A. Wexler
Melinda J. Morales
WEXLER BOLEY & ELGERSMA, LLP
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
kaw@wbe-llp.com
mjm@wbe-llp.com

*Liaison Counsel for the Commercial and Institutional Indirect Purchaser Class*

- 16 -

- 17 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically via the Court's CM/ECF system, on August 5, 2022. Notice of electronic filing will be sent to all parties by operation of the Court's electronic filing system.

By: */s/ Shana E. Scarlett*
      Shana E. Scarlett

010636-11/1973985 V1