IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **IN RE BROILER CHICKEN ANTITRUST LITIGATION** _____ THIS DOCUMENT RELATES TO: ALL REMAINING DAP CASES[1] AGAINST FIELDALE | Case No: 1:16-cv-08637 Hon. Judge Thomas M. Durkin Magistrate Judge Jeffrey T. Gilbert |

**FIELDALE FARMS CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT TO EXCLUDE PLAINTIFFS' CLAIMS REGARDING ITS ANTIBIOTIC FREE CHICKEN SALES**

---

[1] In this brief, "Plaintiffs" refers to the remaining Track One plaintiffs with claims against Fieldale Farms Corporation ("Fieldale"). Broadly speaking, these are the plaintiffs represented by Kaplan Fox who timely opted out of Fieldale's DPP settlement, and the experts supporting their claims are Dr. James McClave ("McClave") and Dr. Allen Frankel ("Frankel"). Grouped by individual complaint as described in the DAP's operative complaint, Dkt. 4244, the Plaintiffs subject to this motion are: (1) Dkt. 577-1: Affiliated Foods, Inc., Alex Lee Inc./Merchants Distributors, LLC, Associated Grocers of New England, Big Y Foods, Inc., Fareway Stores, Inc., Piggly Wiggly Alabama Distributing Co, Inc., and Woodman's Food Market, Inc.; (2) Dkt. 936-1: Action Meat Distributors, Inc., Associated Food Stores, Inc., Bashas' Inc., Certoco, Inc., Ira Higdon Grocery Company, Inc., Nicholas & Co., Inc., Pacific Food Distributors, Inc., Troyer Foods, Inc., URM Stores, Inc., and Weinstein Wholesale Meats, Inc.; (3) Dkt 1134-1: Howard Samuels as Trustee in Bankruptcy for Central Grocers, Inc., Colorado Boxed Beef Co., Kind Solomon Foods, Inc., W. Lee Flowers & Company, Inc.; and (4) ECF 1 in 19-cv-638: Brookshire Grocery Company. If Fieldale inadvertently omitted any Track One plaintiff with claims against it from this list, the motion also applies to them.

**INTRODUCTION**

More than five years ago, Fieldale asked this Court to dismiss claims related to its antibiotic-free ("ABF") chicken sales because they do not belong in a case about "commodity" Broilers. Dkt. 281 (Fieldale MTD). "The Court agree[d] that Plaintiffs' theory of the case is strongly dependent upon the allegation that the Broiler market functions as a commodity market" and "suspect[ed] that Fieldale's argument might have merit." *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 804 (N.D. Ill. 2017). After all, "Plaintiffs chose to carve out organic, free range, halal, and kosher chicken from their definition of 'Broilers.' And Fieldale's argument that anti-biotic free chicken meat is analogous to these excluded categories has facial appeal based on a trip to the grocery store." *Id.* at 804-05. But the Court concluded that Fieldale's motion raised "a question of fact . . . that requires analysis of complex economic theories and data." *Id.*

The facts and data are in. They establish that Fieldale's ABF chicken is not the "commodity" chicken at issue in Plaintiffs' Complaint. It is undisputed that Fieldale's ABF chicken ██████████████████ SUF ¶ 14. It is undisputed that Fieldale's ABF ███████ ████████████████████ SUF ¶ 15. It is undisputed that conventional chicken is not a substitute for ABF chicken—ABF has different customers, and producers must ███████ ██████████████████████████████████ and make ████████████████████████████████ SUF ¶¶ 16-17, 19. It is even undisputed that ██████████████████████████████████████ ████████████ SUF ¶¶ 26-27. Indeed, USDA economists recently observed in a peer-reviewed study on *The Market for Chicken Raised Without Antibiotics, 2012-17* ("*The RWA Market*") that, "[t]hough raising animals without antibiotics is certainly more costly, producers can benefit from doing so when consumers are willing to pay price premiums for these process-based

attributes." SUF ¶ 13 and Ex. 8, Elina T. Page, et al., *The RWA Market*, September 2021, EIB-224, U.S. Department of Agriculture, Economic Research Service. To use Plaintiffs' definition of "commodity," the evidence shows that ABF is not a "standardized" product with respect to which "competition is based principally on price, as opposed to other attributes, such as product quality or customer service." Dkt. 4244 (DAP Compl.) ¶¶ 33, 292.

Fieldale's ABF sales should be excluded because the economic and legal theories on which Plaintiffs rely relate only to conventional, commodity chicken. Plaintiffs' own allegations explain why: it is the alleged "lack of product differentiation" that means "producers must compete on price (absent collusion) such that the supply decisions of each chicken producer impact the market price for chickens." Dkt. 4244 ¶ 320. Fieldale has shown, and Plaintiffs have presented no evidence to contradict, that supply and demand factors as well as costs and pricing were different for ABF and non-ABF conventional chicken. Thus, restricting the supply of conventional chicken would not necessarily have an appreciable impact on the market for a differentiated product like ABF. And, indeed, the economic analysis presented by Fieldale's expert shows that ██████████ █████████████████████████████████████████████ and ████████ ██████████████ when Plaintiffs allege that output of conventional chicken was going down. Likewise, Plaintiffs' Georgia Dock theory is tied to the alleged "commodity" nature of Broilers, but it is undisputed that ████████████████████████████████████

Across the board, Plaintiffs' allegations are exclusively related to non-ABF chicken, and there is no evidence of wrongdoing related to ABF chicken. As shown in Defendants' other summary judgment motions, Plaintiffs have failed to meet their burden that there was a conspiracy to raise the price of conventional, commodity chicken, and their claims should be dismissed in whole. But more specifically, the evidence contradicts Plaintiffs' claims related to sales of ABF

chicken, and the Court should exclude Fieldale's sales of ABF chicken from this case. Not only have Plaintiffs failed to carry their burden, but they have also been proven wrong.

## UNDISPUTED FACTS

Fieldale began selling ABF chicken in 1998. SUF ¶ 1. Fieldale—one of the smallest defendants in this case—was a trailblazer when it came to ABF. SUF ¶ 2. In addition to being antibiotic free, Fieldale's ABF chicken is also 100% vegetarian fed, and Fieldale's production practices are certified "humane" by the American Humane Association. SUF ¶ 3.

For the first decade-plus after Fieldale started selling ABF ███████████████████ ███████████████████████ SUF ¶ 4. By 2008, Fieldale's ABF production had grown to ███████ ███████████████████████████████████████████ SUF ¶ 5. By August 2010, however, Fieldale ███████████████████████████ ███████████████████████████████████ SUF ¶ 6. An early 2010 Fieldale "Sales and Marketing Strategy" memorandum explains:



SUF ¶ 7 (quoting Ex. 4). In 2010, Fieldale ███████████████████████████ ███████████████████████████████████████████ ████ SUF ¶ 8. Even then, Fieldale ███████████████████████████████

*Id.*

███████████████████████ in 2011, Fieldale ███████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████ SUF ¶ 9 (quoting Ex. 5). ███████████████████

3

███████████████████████████████████████████████████████████

███████████████████████████ *Id.* ███████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████ *Id.* ███████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.* █████████████

██████████████████████████████████████████ *Id.* (emphasis in original).

During the same period, ████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████ SUF ¶ 10. ████████████

█████████████████████████████████████████████ *Id.* (quoting

Ex. 2). ██████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████ *Id.* ███████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.* █████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████ *Id.* (emphasis added). ██████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████ *Id.*

4

After ▮▮▮▮ 2011, Fieldale ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SUF ¶ 11.
In 2013, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* (quoting Ex.
6). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮ *Id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*

According to peer-reviewed studies, Fieldale was right to see a distinct and growing market for ABF chicken with a customer base willing to pay much more for it than commodity chicken. SUF ¶¶ 12-13. In 2016, for instance, USDA economists published a study analyzing issues related to "Raised without Antibiotics" ("RWA," interchangeable with "ABF") claims. SUF ¶ 12 (quoting Ex. 7, Maria Bowman, et. al., *Raised Without Antibiotics: Lessons from Voluntary Labeling of Antibiotic Use Practices in the Broiler Industry*, 98 AM. J. AG. ECON. 98 622–642 (2016)). The study includes an analysis of the relative price movements of "organic, specialty, and conventional" chicken products, showing data back to 2006. *Id.* at Fig. 2. As defined in the study, "Specialty products are produced from chickens raised on an all-vegetable diet without antibiotics

and are minimally processed." *Id.* The figures presented in the study show that ABF consistently sold at much higher prices to consumers than conventional—sometimes almost double for the product studied—for this entire period. *Id.*

More recently, the USDA published a study of the ABF market that covers many of the years at issue in this case and analyzes "the size of the market, price differentials, and consumer demographics for RWA-labeled products." SUF ¶ 13 (quoting Ex. 8, *The RWA Market*, at 1). This study found growth in the ABF market both in terms of production and sales, and it found that ABF "commanded higher prices than conventional uniform-weight chicken products." *Id.* at 21. For instance, for raw chicken products, ABF sales nearly tripled during the study period and cost 87% more than conventional. *Id.* at 14-17. The study also validates Fieldale's strategy: "Though raising animals without antibiotics is certainly more costly, producers can benefit from doing so when consumers are willing to pay price premiums for these process-based attributes." *Id.* at 7.

The evidence shows that Fieldale and the USDA are right that ABF is a differentiated, non-commodity product. SUF ¶¶ 14-22, 26-30. It is undisputed that Fieldale's ABF chicken ███ ███████████████████████████████ SUF ¶ 14. It is undisputed that Fieldale's ABF ████ ████████████████ SUF ¶ 15. It is undisputed that ███████████████ ████████████████████████████████████████████████ SUF ¶ 16. It is undisputed that █████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████ SUF ¶ 17. It is undisputed that, █████████████████ ██████████████████████ SUF ¶ 18, and these buyers are different than conventional chicken buyers. *See* SUF ¶ 19; *see also* Ex. 3, Frankel Dep. at 330:20-23 ████████████ ██████████████████████████

 And it is undisputed that ██████████████████████

██████ SUF ¶ 20.

Plaintiffs themselves—the executives and employees of major chicken buyers—also

███████████████████████████████████████████████████ SUF ¶

21; *see also* Ex. 1 (quoting Aug. 15, 2019 Dep. of Stewart Stevens at 137:3-8 ████████

█████████████████████████████████████████████████████

███████████████████████████████ ¶¶ 19-21 (collecting representative examples

of plaintiff testimony). The evidence also shows that Fieldale's customers themselves █████

███████████████████████████████████████████ SUF ¶ 22 and Ex. 1

(describing various ways in which Fieldale's customers ████████████████████████

including evidence that customers ███████████████████████████

████████████████████████████████████████

While Plaintiffs base some claims related to "commodity" chicken on alleged production

cuts, it is undisputed that ABF production and sales grew consistently and significantly during the

alleged conspiracy period. SUF ¶¶ 23-25. With respect to production, the USDA estimates that

approximately 2.7% of chickens produced were ABF in 2012, and that number grew to 18.8% by

the time this lawsuit was filed in 2016. SUF ¶ 24 and Ex. 8, *The RWA Market*, at 8. With respect

to Defendants' sales, data produced in this case show ████████████████████████

█████████████████████████████████████████████████████

███████████████████████████ SUF ¶ 25.

Ultimately, there is no evidence that the price or supply of conventional chicken had *any*

significant effect on ABF prices. Indeed, it is undisputed that, as found by the analysis of Fieldale's

expert Kate Foreman, Ph.D., ████████████████████████████████████



████ SUF ¶ 26 (quoting Ex. 1). Instead, Fieldale's ABF prices ██

████ SUF ¶ 27 (quoting

Ex. 1). Tellingly, one of Plaintiffs' experts, Dr. Frankel, ████

████ SUF

¶ 28 and Ex. 10. He testified that ████

████

████ SUF ¶ 29 (quoting Ex. 3, Frankel Dep. at 321:3-12). *But*

*he did not* ████ SUF ¶ 30 and Ex. 10.

His failure to dispute (or even address) Dr. Foreman's finding that Fieldale's ABF ████

████ leaves Dr. Foreman's analysis undisputed.

Dr. Frankel acknowledged that ████

████

████

████

████ SUF ¶ 31 (quoting Ex. 3, Frankel Dep. at 328:10-29:11).

**ARGUMENT**

Fieldale's argument is the same now as it was five years ago: Fieldale's ABF chicken does not belong in a case about "commodity" Broilers. *See generally* Dkt. 281 (Fieldale MTD) and Dkt. 369 (MTD Reply) (discussing authority). Plaintiffs' allegations still relate only to "commodity" Broilers, and the economic and legal theories on which they depend apply only to "commodity" products. *See, e.g.*, *Minn-Chem, Inc. v. Agrium Inc.*, 683 F.3d 845, 848 (7th Cir. 2012) (observing it is "[i]mportant[] for our . . . antitrust analysis" that an allegedly supply-restrained product "is a homogeneous commodity: One manufacturer's supply is interchangeable with another's"). That is why Plaintiffs chose to carve out certain kinds of specialty chicken, and it is why the "Court

8

agree[d] that Plaintiffs' theory of the case is strongly dependent upon the allegation that the Broiler market functions as a commodity market." *In re Broiler*, 290 F. Supp. 3d at 804

The undisputed facts show that Fieldale's ABF is a differentiated product that cannot be lumped together with conventional chicken as interchangeable "commodity" Broilers. Therefore, Fieldale's ABF sales should be excluded. *See*, *e.g.*, *Bailey Lumber & Supply Co. v. Georgia-Pac. Corp.*, No. 1:08CV1394 LG-JMR, 2009 WL 2872307, at *3 (S.D. Miss. Aug. 10, 2009) ("The Plaintiffs' allegations point to the conclusion that OSB and plywood, although related products, are nonetheless separate" and "not inseparable as the 'structural panel' market"); *In re Packaged Seafood Prod. Antitrust Litig.*, No. 15-MD-2670 JLS (MDD), 2017 WL 35571, at *6 (S.D. Cal. Jan. 3, 2017) ("[S]ufficient allegations of a tuna-specific conspiracy do not on these facts . . . create a correspondingly viable conspiracy encompassing the entire packaged seafood product category.").

## I.    Plaintiffs' Claims Relate Only to "Commodity" Broilers.

The Seventh Circuit has long recognized a critical difference between antitrust cases involving a product that "is uniform (a 'commodity')" and non-commodity products that are "differentiated." *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 658 (7th Cir. 2002); *see also In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 56 (2d Cir. 2012) (defining "a commodity product" as "a product that is uniform rather than differentiated across sellers"). Per the Seventh Circuit, whether "[o]ne manufacturer's supply is interchangeable with another's" is "[i]mportant[] for our . . . antitrust analysis" because, when purchasing a "homogenous commodity . . . buyers choose among suppliers based largely on price." *Minn-Chem*, 683 F.3d at 848. Relying on this authority, the Court concluded in its MTD Order that it is "[b]ecause all aspects of Defendants' methods of production are nearly identical" and because "Broilers are substantially

9

uniform across all Defendants' brands" that Broilers "are considered a commodity product." *In re Broiler*, 290 F. Supp. 3d at 780 (citing *In re High Fructose Corn Syrup*, 295 F.3d at 658).

Plaintiffs embrace the Seventh Circuit's definition of "commodity" and craft their economic and legal theories around it. For example, Plaintiffs' complaint describes "Broilers" as "a standardized, commodity product where competition is based principally on price . . . as opposed to other attributes, such as product quality or customer service." Dkt. 4244 ¶¶ 34, 318. Plaintiffs assert that it is due to "Broilers'" alleged "lack of product differentiation" that producers must "compete on price (absent collusion) such that the supply decisions of each chicken producer impact the market price for chickens." *Id.* ¶ 320; *see also id.* ¶ 360 ("[T]he commodity nature of chickens does not allow one producer to successfully raise market prices in the absence of widespread reductions in supply relative to the then-current demand."). Plaintiffs also tie their Georgia Dock allegations to the "commodity" nature of "Broilers." *Id.* ¶¶ 686, 698, 707, 720, 734, 745, 757, and 766 ("Because broilers are a commodity, [various producers'] actual offering price (absent manipulation of the index) should reflect actual market dynamics and [their] costs of production, rather than simply an attempt to artificially inflate the index."). And, of course, it is because they are not "commodity" products that "Plaintiffs chose to carve out organic, free range, halal, and kosher chicken from their definition of 'Broilers.'" *In re Broiler*, 290 F. Supp. 3d at 804-05.

More recently, the class plaintiffs—using the same definition of "Broilers" and essentially the same complaint—acknowledged that their economic and legal theories apply only to "cases involving commodity products." Dkt. 3964 at 1 (DPP). And they doubled down, describing Broilers as "homogenous" and "prototypical commodity products for which price is closely tied to supply and demand." *Id.* at 3, 35; *see also* Dkt. 3968 (CIIPP) at 23 ("Broilers are . . . indisputably

10

commodity products."), 44 ("Broilers are the very definition of a commodity product."); Dkt. 3971

(EUCP) at 30 (defining a "commodity" as "a good that is undifferentiable and interchangeable

with any other good of the same type" and asserting the "definition applies to chicken"), 31 ns.

141 and 143 (collecting antitrust legal authority that depends on "commodity" allegations).

## II.     Fieldale's ABF Chicken is a Differentiated Product, not "Commodity" Broilers.

The evidence shows that Fieldale's ABF chicken is differentiated from conventional,

commodity chicken. SUF ¶¶ 14-22, 26-30. As set out in the statement of facts, it is undisputed that

Fieldale's ABF ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████ SUF ¶¶ 14-22. Every

one of these characteristics is also true of the non-commodity Halal, Kosher, free-range, and

organic chicken that Plaintiffs' chose to exclude. Indeed, Plaintiffs' own expert ████████

█████████ *See* SUF ¶ 16 and Ex. 9, Frankel Report, ¶ 39 n. 64; *cf.* SUF Ex. 8, *The RWA*

*Market*, at 16-17 (finding that, for some products, "organic prices were only marginally greater

than RWA prices"—but both were higher than conventional prices across the board).

Fieldale's ABF is not "commodity" chicken under any definition. Most obviously,

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████ SUF ¶ 15 (quoting

Ex. 1, Foreman Report, ¶ 25). To use Plaintiffs' own definition, Fieldale could not charge ██████

██████ for its ABF chicken as its competitors charge for their conventional chicken if the products

were both interchangeable "Broilers," "a standardized, commodity product where competition is

based principally on price." Dkt. 4244 ¶ 34. Instead, the evidence shows that Fieldale sold its ABF

chicken based on "other attributes, such as product quality." *Id.* ¶ 318. To use the Court's prior

definition of "commodity," the evidence shows that "all aspects of [Fieldale's] methods of production are" *not* "nearly identical" to other defendants. *In re Broiler*, 290 F. Supp. 3d at 780. It is undisputed that ████████████████████ SUF ¶ 14. And "Broilers are" *not* "substantially uniform across all Defendants' brands." *Id.* Conventional chicken cannot even legally be sold as ABF. SUF ¶¶ 16-17.

While Fieldale's ABF cannot be lumped together with conventional chicken as interchangeable "commodity" Broilers under any definition, Fieldale's ABF falls squarely within every definition of "specialty" chicken that appears in the record, legal authority, and published literature. According to a 2016 study published by USDA economists, "[s]pecialty products are produced from chickens raised on an all-vegetable diet without antibiotics and are minimally processed"—all attributes of Fieldale's ABF. SUF ¶ 12 (quoting Ex. 7 at Fig. 2). According to █

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ SUF ¶ 11 (quoting Ex. 6). And in *Processed Egg*, "specialty eggs" were defined to include eggs sold with the "vegetarian-fed" attribute—one of the many specialty attributes Fieldale markets on its ABF sales. *In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 153 (E.D. Pa. 2015) (criticizing certain plaintiffs' failure to "isolate" issues related to "commodity eggs" from issues related to excluded "specialty eggs," noting that "[s]pecialty eggs are priced differently than commodity eggs and, in many cases, are produced in more resource-intensive ways."); *see also* SUF ¶ 3 (describing Fieldale's vegetarian-fed attribute).

**III.    Plaintiffs' Claims Related to Fieldale's Sale of ABF Chicken Should be Dismissed.**

It is just as true today as it was five years ago that Plaintiffs' case is "strongly dependent upon the allegation that the Broiler market functions as a commodity market." *In re Broiler Chicken*, 290 F. Supp. 3d at 804-05. Now, the evidence shows that Fieldale's ABF sales are not in the "commodity" Broiler market at issue in this case. Therefore, Plaintiffs' claims based on Fieldale's sales of ABF chicken should be excluded. *Cf. Abbott Labs. v. Adelphia Supply USA*, No. 15-CV-5826 (CBA) (LB), 2017 U.S. Dist. LEXIS 205321, at *48 (E.D.N.Y. Aug. 10, 2017) ("[T]he decision in *In re High Fructose* is of no help to" plaintiffs because "the products at issue here are" not "uniform or identical.").

None of the theories Plaintiffs floated in their MTD response about why Fieldale's ABF could potentially belong in this case have panned out. First and foremost, is undisputed that

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████ SUF ¶¶ 26-27 (quoting Ex. 1). Thus, even if it were true that Plaintiffs could "recover damages as to both ABF Broilers and non-ABF Broilers . . . so long as the conspiracy affected the price of both," Dkt. 343 (MTD Response) at 88, Plaintiffs have failed to make their case because the evidence ████████████████████████

██████ Plaintiffs ignore ████████████████████████████████

██████ even though Plaintiffs' expert opined that ███████████████████

██████████████████████████████████████████████████████

██████████████████ SUF ¶¶ 28-29 (quoting Ex. 3, Frankel Dep. at 321:3-12). But Plaintiffs can't have it both ways. The evidence shows that, even if the commodity Broiler conspiracy alleged by Plaintiffs existed, ████████████████████████████

13

Beyond that, the evidence does not "show that ABF Broilers, like other Broilers, are subject to commodity pricing that is not tailored to each individual purchaser." Dkt. 343 at 86. It is undisputed that there ███████████████████████████ SUF ¶ 20. More fundamentally, even assuming there were some degree of "commodity pricing" with respect to ABF sales, the evidence is undisputed that the ABF pricing ███████████ pricing for conventional Broilers. SUF ¶¶ 15, 31. That is, even if ABF could be considered a "commodity" market by itself, the evidence shows ██████████████████████████████████████ *See generally* SUF Ex. 8, *The RWA Market*. Plaintiffs have not alleged wrongdoing in the ABF market.

Finally, Fieldale agrees with Plaintiffs' MTD argument that "allegations of a relevant market are not required for *per se* antitrust law violations." Dkt. 343 at 86-87. But Plaintiffs must show that their allegations relate to the product being sold. All of Plaintiffs' allegations are about one specific product: conventional, commodity broilers. While certain defendants, including Fieldale, ████████████████████████████████████████████ ██████ ABF chicken production and sales grew consistently and substantially throughout the period. SUF ¶¶ 23-25. Indeed, while Dr. Frankel ██████████████████████████████████ ████████████████████████████████████████████ ███████████████████████ SUF ¶ 31 (quoting Ex. 3, Frankel Dep. at 328:10-29:11). This assumption that ████████████████████████ during the same period in which Plaintiffs' assert cuts of "commodity" chicken led to artificially inflated prices and profits recognizes that ABF chicken has its own supply and demand dynamics. Plaintiffs have alleged no wrongdoing related to non-commodity chicken, including Fieldale's ABF sales.

Because Plaintiffs' claims relate only to conventional, commodity broilers, Plaintiffs' claims related to Fieldale's ABF sales should be excluded.

## **CONCLUSION**

Five years ago, the Court said that, "based on a trip to the grocery store," it "suspect[ed] that Fieldale's argument might have merit." *In re Broiler*, 290 F. Supp. 3d at 804-05. Now, the undisputed evidence shows that Fieldale's ABF chicken is a differentiated product distinct from conventional, commodity broilers. Fieldale's ABF sales do not belong in a case about commodity broilers, and Plaintiffs' claims related to those sales should be dismissed.

Dated:  October 7, 2022

Respectfully submitted,

*/s/ B. Parker Miller*
B. Parker Miller (*pro hac vice*)
Valarie C. Williams (*pro hac vice*)
Thomas P. Grantham (*pro hac vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000 (T)
(404) 881-7777 (F)
parker.miller@alston.com
valarie.williams@alston.com
thomas.grantham@alston.com

Max Marks (*pro hac vice*)
Aaron Block (*pro hac vice*)
**THE BLOCK FIRM LLC**
309 East Paces Ferry Road, Suite 400
Atlanta, GA 30305
(404) 997-8419
max.marks@blockfirmllc.com
aaron@blockfirmllc.com

***Attorneys for Defendant Fieldale Farms Corporation.***

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 7, 2022, I filed the foregoing document with the Clerk of

Court via the ECF system, which will automatically serve all counsel of record.

*/s/ Thomas P. Grantham*