**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 16 C 8637 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

In this lawsuit alleging a price-fixing conspiracy in the chicken industry against more than 20 defendants, the Court appointed the law firm Hagens Berman Sobol Shapiro LLP as interim counsel to represent a putative class of end-user consumer plaintiffs (the "End Users"). *See* R. 248. On December 20, 2021, the Court approved settlements for the End Users that interim counsel negotiated with six defendant corporate families, totaling $181 million, *see* R. 5304, while the case continues to proceed against the remaining defendants.[1] In approving the settlements, the Court appointed Hagens Berman and the law firm Cohen Milstein Sellers & Toll PLLC as co-lead counsel for the settlement class ("Appointed Counsel"). Following that order, the Court certified the End User Class on May 27, 2022. *See* R. 5644.

---

[1] This Court granted final approval to settlements with: Fieldale Farms Corporation ("Fieldale"); George's Inc. and George's Farms, Inc. ("George's"); Mar-Jac Poultry, Inc., Mar-Jac AL/MS, Inc., Mar-Hac Holdings, Inc; Mar-Jac Poultry AL, LLC, Mar-Jac Poultry MS, LLC, and Mar-Jac Poultry, LLC ("Mar-Jac"); Peco Foods, Inc. ("Peco"); Pilgrim's Pride Corporation ("Pilgrim's"); and Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Breeders, Inc., and Tyson Poultry, Inc. ("Tyson"). R. 5304.

Appointed Counsel seek an interim award of attorney's fees and costs and incentive awards for the 26 named class representatives. R. 5160. Two objections were filed, and one of the objectors sought discovery on issues related to counsel's fees. After briefing on the objections and whether discovery was proper, the Court ordered Appointed Counsel to disclose certain information about their prior fee requests and awards in other antitrust cases, and their agreements with the named plaintiffs in this case. R. 5798; R. 5818; R. 5835. Appointed Counsel's motion for fees and costs and incentive awards is granted in accordance with this order.[2]

## Background

Without the benefit of a prior government investigation to guide them, Appointed Counsel sought to represent a class of consumers in this case shortly after it was filed in September 2016. Since then, the Court has appointed counsel for three classes and more than 100 entities have opted out of the classes to file their own direct actions. The more than 20 defendants are represented by some of the most prominent law firms in the country.

Appointed Counsel successfully defended the case against a significant motion to dismiss and achieved class certification. They have shepherded the case through extensive discovery, as is recounted in the declaration supporting their motion, *see* R.

---

[2] The Court entered an opinion and order on November 30, 2021 awarding fees and costs to counsel for the Direct Purchaser Class resulting from a group of settlements. *See* R. 5225. Because the relevant legal issues are the same here, and the Court's analysis of those issues has not changed, the Court could simply incorporate by reference the prior opinion. Instead, this opinion largely tracks that opinion to provide a self-contained record of the Court's decision on this motion.

5161-1, and is reflected in the more than 5,800 docket entries that make up the case, including 18 scheduling orders. Appointed Counsel have briefed numerous motions in addition to the motions to dismiss and for class certification.

Appointed Counsel have been assisted by four other firms. Appointed Counsel and the assisting firms have submitted their hours for the Court's review on a quarterly basis. Their collective lodestar is 67,522.2 hours representing $32,853,802.00 in fees. *See* R. 5161-1 ¶ 17.

Appointed Counsel seek a fee award of 33% of the settlement total of $181 million, or $59,730,000.00. They also seek payment of $8.75 million of the more than $9 million in litigation expenses they have incurred. And they seek a $2,000 incentive award for each of the named class representatives.[3] As of December 6, 2021, 1.2 million class members filed claims, with only seven opt-outs and three objections. *See* R. 5248 at 15.

**Analysis**

It is customary for class counsel in large and complex cases to seek an interim fee award. *See, e.g., Kleen Prod. LLC v. Int'l Paper Co.*, 2017 WL 5247928, at *4 (N.D. Ill. Oct. 17, 2017); *see also In re Endotronics, Inc.*, 1989 WL 6746, at *1 (D. Minn. Jan.

---

[3] The named plaintiffs are: Ian Adams; Angela Ashby; Linda Cheslow; Kenneth Cote; Kristin Davis; Abraham Drucker; James D. Flasch; Cristina Hall; Matthew Hayward; Richard Heftel; Stephen Holt; Joshua Madsen; William David Marino; Dorothy Monahan; Dina Morris; Alison Pauk; Daniel Percy; Michael Perry; Catherine Senkle; Diane Spell; Margo Stack; Marilyn Stangel; Eric Thomas; David Weidner; Leslie Weidner; and Natalie Wilbur. *See* R. 4921-1. Two of the class representatives are a married couple, and counsel has stated that they will share one incentive award. *See* 5835. Thus, the total amount of incentive award money is $2,000 multiplied by 25, or $50,000.

3

30, 1989) ("Untoward delay could discourage [class counsel] from engaging in matters such as these. The Court, therefore, must have discretion to award interim fees and costs."). The "starting point" for determining such an award is the "market rate" for such services. *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir. 2001); *see also Silverman v. Motorola Sols., Inc.,* 739 F.3d 956, 957 (7th Cir. 2013) ("[A]ttorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services."); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011) ("[T]he district court must try to assign fees that mimic a hypothetical *ex ante* bargain between the class and its attorneys."). Estimation of the market rate "is inherently conjectural," *In re Trans Union Corp. Priv. Litig.*, 629 F.3d 741, 744 (7th Cir. 2011), because "there is no market in class cases." Brian T. Fitzpatrick, *A Fiduciary Judge's Guide to Awarding Fees in Class Actions*, 89 Fordham L. Rev. 1151, 1155 (2021).[4] But the Seventh Circuit has explained that the goal of approximating the market rate can be "informed by a number of factors, including: (1) the actual agreements between the parties as well as fee agreements reached by sophisticated entities in the market for legal services; (2) the risk of non-payment at the outset of the case; (3) the caliber of Class Counsel's performance; and [4] information from other cases, including fees awarded in

---

[4] Professor Fitzpatrick also filed a declaration in support of the Direct Purchaser Plaintiffs' class counsel's motion for fees. *See* R. 5048-1. At the Court's invitation, the Commercial and Institutional Indirect Purchaser Plaintiffs also submitted an expert declaration on the previous motion by Professor Robert Klonoff. *See* R. 5050-1. The Court has referenced and cited these declarations in deciding this motion as well.

4

comparable cases." *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *8 (S.D. Ill. Dec. 16, 2018) (citing *Synthroid*, 264 F.3d at 719)).

### A. Actual Agreements

Appointed Counsel's agreements with the named plaintiffs simply provide that they will take a percentage of any recovery as determined by the Court. *See* R. 5835. No other actual agreements have been presented to the Court.

There is, however, case law describing court-ordered auctions in which potential class counsel bid for appointment. *See In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 800 (N.D. Ill. 2015) (collecting cases, including *In re Amino Acid Lysine Antitrust Litig.*, 918 F. Supp. 1190 (N.D. Ill. 1996)). The courts in *In re Amino Acid* and the other cases collected by *In re Capital One* sought fee award structure bids from attorneys hoping to represent the classes in those cases. The courts in those cases chose counsel who submitted declining fee scale award structures. (In other words, counsel proposed that their fee percentage decrease as the settlement amount increased.) These cases are relatively outdated, none being less than 20 years old. *See* R. 5048-1 ¶ 8, Fitzpatrick Decl. (court "experimentation with auctions has all but ceased"). However, Appointed Counsel have bid a declining fee scale in at least three other cases within the last ten years. *See* R. 5818-3 (*In re Optical Disk Drive Prods. Antitrust Litig.*, Case No. 10-MD-2134-VRW (N.D. Cal.)); R. 5818-4 (*In re Lithium Ion Batteries Antitrust Litig.*, Case No. 13-MD-2420-YGR (N.D. Cal.)); R. 5821 (*Microsystems Devel. Tech., Inc. v. Panasonic Corp.*, No. 15-cv-03820-RMW (N.D. Cal.).

The Court does not put much stock in these bids. First, the most recent is more than seven years old. Furthermore, the Seventh Circuit has explained that declining fee scale award structures do not reflect market realities and impose a perverse incentive "ensuring that at some point attorneys' opportunity cost will exceed the benefits of pushing for a larger recovery, even though extra work could benefit the client." *Synthroid*, 264 F.3d at 721; *see also Silverman*, 739 F.3d at 957 ("[S]olvent litigants do not select their own lawyers by holding auctions, because auctions do not work well unless a standard unit of quality can be defined and its delivery verified. There is no 'standard quantity' of legal services, and verification is difficult if not impossible."). "Subsequent cases within the Seventh Circuit have similarly recognized that the auction concept is flawed[.]" R. 5050-1 at 17 n.15, Klonoff Decl. Of course, when confronted with a court ordered competitive auction that permits declining scale bids, some attorneys will likely make such a bid in order to win the auction. But for the reasons expressed by the Seventh Circuit, the Court questions whether it is appropriate to permit declining scale bids in an auction. Thus, cases with auctions that permitted such bids carry little weight in the Court's consideration here.

    **B.**     **Risk of Non-Payment &**
            **Caliber of Class Counsel's Performance**

A declining scale fee award structure might be appropriate in cases in which settlement is a more likely outcome and in which the "marginal costs" of increasing the settlement recovery amount are low. *See Silverman*, 739 F.3d at 959. As Professor Fitzpatrick surmised, this "may explain the use of [declining scale fee award

6

structures] in the two [Telephone Consumer Protection Act] cases" noted above. *See* R. 5048-1 at 17 n.6, Fitzpatrick Decl.; *see, e.g.*, *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 236 (N.D. Ill. 2016), and *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 805 (N.D. Ill. 2015). Unlike TCPA cases in which "settlement was likely," *Gehrich*, 316 F.R.D. at 230, settlement in a complex antitrust case like this is far from a foregone conclusion. *See* R. 5050-1 ¶ 37, Klonoff Decl. ("In terms of risk and complexity, TCPA cases are the polar opposite of the present case, a complicated multi-party antitrust conspiracy case.").[5] Appointed Counsel invested massive resources of time and money when few other counsel expressed interest, with little assurance of success. *See Silverman*, 739 F.3d at 958 ("When this suit got under way, no other law firm was willing to serve as lead counsel. Lack of competition not only implies a higher fee but also suggests that most members of the securities bar saw this litigation as too risky for their practices."). As noted, no government investigation preceded the complaint in this case for Appointed Counsel to piggy-back. And Plaintiffs have been opposed by many defendants, including a number of very large and well-funded corporations, which have retained some of the most prominent and sophisticated law firms in the United States. The Court's 92-page decision denying the motions to dismiss was a relatively close call. Discovery proceeded while the motions to dismiss were briefed and decided, so Appointed Counsel was immediately incurring costs of time and money without any assurance of an award. Furthermore,

---

[5] Moreover, research by both Professors Fitzpatrick and Klonoff shows that the use of declining sliding scale fee awards in the Seventh Circuit is rare. *See* R. 5048-1 at 13 n.5, Fitzpatrick Decl.; R. 5050-1 at 26-31, Klonoff Decl.

7

issues raised in the motions to dismiss show that success on summary judgment, let alone trial, is no guarantee.

Appointed Counsel have devoted thousands of hours to this case. Their performance to date has been exemplary. The road to some of the settlements was eventually smoothed by later criminal indictments and corporate plea agreements. But Appointed Counsel's work appears to have prompted the government investigations that led to those indictments, rather than the reverse. A substantial award is warranted here as a proper incentive for high quality counsel to take on complex cases, requiring a massive investment of time and money, with such a high risk of non-payment.

### C. Fee Awards in Comparable Cases

The Seventh Circuit has recognized that academic studies of attorney fees awards in common fund class settlement cases reveal a declining percentage with the size of the settlement. *See Silverman*, 739 F.3d at 959. But as Professor Fitzpatrick noted, "these findings are based on fee awards from other Circuits . . . that are not even trying to capture how clients pay lawyers in the market like the Seventh Circuit does." R. 5048-1 at 20 n.7, Fitzpatrick Decl. These decisions are infected by default rules recommending smaller attorney fee award percentages for "megafunds." *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 123 (2d Cir. 2005) (affirming a 6.5 percent fee award from a common fund over $3 billion, reasoning that "the sheer size of the instant fund makes a smaller percentage appropriate"); *Dial Corp. v. News Corp.,* 317 F.R.D. 426 (S.D.N.Y. 2016) ("[I]n class actions where the

8

recovered settlement fund runs into the multi-millions, courts typically decrease the percentage of the fees amount as the size of the fund increases."). The Seventh Circuit has expressly rejected a megafund rule because, as already noted, it is a perverse incentive. *See Synthroid*, 264 F.3d at 718 (reversing district court's fee award in part because it imposed a lower fee percentage because the settlement fund was more than $100 million, holding that "[m]arkets would not tolerate that effect"). Clients generally want to incentivize their counsel to pursue every last settlement dollar, and a declining percentage award operates to the contrary. Thus, to the extent that courts in other circuits have awarded percentages smaller than what Appointed Counsel seek here, the Court finds those awards and their reasoning relatively unpersuasive.

Most persuasive are the large number of antitrust cases in this circuit that have awarded one-third of the common fund as attorney's fees. *See* R. 5050-1 at 45-46 (table citing cases), Klonoff Decl. The fact that fee awards in antitrust cases in this circuit are almost always one-third is a strong indication that this should be considered the "market rate." *See* R. 5048-1 ¶ 14, Fitzpatrick Decl. (in "a series of antitrust class actions . . . . recover[ing] more than $2 billion . . . . *not a single class member ever objected* to the fee request in any of these cases" showing that "sophisticated corporations are happy to play flat fees of 33.33% and they are happy to do so even in the largest cases.").

Additionally, Appointed Counsel's requested fee award is in line with awards they have received in cases of similar magnitude. In response to an Objector's motion for discovery on this motion, *see* R. 5182, the Court ordered Appointed Counsel to

9

submit data regarding fees they have been awarded in antitrust cases since the inception of this case, *see* R. 5798. Appointed Counsel submitted two charts containing this information. *See* R. 5820; R. 5823. In reviewing this information, the Court discounted awards from the Ninth Circuit due to its megafund rule, and cases in which the settlement amount was less than $50 million, which are not of the scale of this case. Of the 18 remaining awards, all but one were either for at least 30% of the settlement fund or were greater in absolute amount than what Appointed Counsel seek here. The Objector sought this discovery insisting that Appointed Counsel's fee request was "exorbitant" and "substantially above-market," and demanding that "there must be consequences" for such "selfish" conduct. *See* R. 5182 at 6, 15. But in large cases like this, the only available evidence of the "market rate" is past awards. And Appointed Counsel's fee request here is well within the range of awards they have received since 2016. The Court has no reason to characterize the request as "exorbitant" or "selfish."

There is simply little to no precedent recommending anything other than an award of 30-33 percent. With this being the only real evidence of the "market rate," the Court will grant Appointed Counsel's motion for 33% of the relevant fund amount.

### D. Expenses

Appointed Counsel seek $8.75 million out of more than $9 million in expenses. Appointed Counsel informed the class that they would not seek to recover the full amount of their expenses at this time. *See* R. 5161 at 18. The request for $8.75 million in expenses is granted.

10

Expenses, however, should be deducted from the common fund before the fee award percentage is applied. The "ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack*, 768 F.3d 622, 630 (7th Cir. 2014). Out-of-pocket costs, although paid through the settlement fund, are not benefits to the class and thus not part of "what the class members received." *Id.*; *see also In re Wells Fargo Secs. Litig.*, 157 F.R.D. 467, 471 (N.D. Cal. 1994) ("If an attorney risks losing some portion of his fee award for each additional dollar in expenses he incurs, the attorney is sure to minimize expenses."). Therefore, Appointed Counsel will be paid fees of 33% of the settlement fund minus $8.75 million in expenses.

### E.  Named Plaintiff Incentive Awards

"Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). "To determine if an incentive award is warranted, a district court evaluates the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 834 (7th Cir. 2018) (citing *Cook*, 142 F.3d at 1016). Incentive awards based on a percentage of the settlement fund "are disfavored, if not altogether forbidden." *See* William B. Rubenstein, 5 Newberg on Class Actions § 17:16

(5th ed. 2018); *see also In Re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 2021 WL 5369798, at *7 (D. Kan. Nov. 17, 2021).

According to Appointed Counsel, each named plaintiff has spent at least 40 hours on the case. *See* R. 5161 at 20. Each named plaintiff was required to comply with discovery including a deposition. *Id.* This is not an insignificant burden for individual people to bear. Furthermore, an award of $2,000 for each named plaintiff is less than is customary. *See* William B. Rubenstein, 5 Newberg on Class Actions § 17:1 (5th ed. 2018) ("Empirical evidence shows that incentive awards are now paid in most class suits and average between $10-$15,000 per class representative."); *see also In re Potash Antitrust Litig.*, No. 1:08-cv-06910 (ECF No. 589) (N.D. Ill. June 12, 2013) ($15,000 awarded to named plaintiffs from a $90 million settlement). The Court finds that $2,000 per named plaintiff is a reasonable award.

## Conclusion

Therefore, Appointed Counsel's motion [5160] is granted as follows: (1) expenses are awarded in the amount of $8.75 million; (2) incentive awards in the amount of $2,000 are awarded to each of the 24 class representatives, with a twenty-fifth $2,000 award being shared by class representatives David and Leslie Weidner; and (3) attorney's fees are awarded in the amount of $57,400,000.00, which is 33 percent of the settlement fund after deducting the expenses and incentive awards. Lastly, while the Court appreciates the spirit of the objections, including the most recent filing of October 6, 2022, *see* R. 5836, they were not material to a case of this

size, alleging antitrust violations, subject to Seventh Circuit precedent, so no objector "incentive award" is appropriate.

ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: October 7, 2022