**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

*IN RE BROILER CHICKEN*
*ANTITRUST LITIGATION*

THIS DOCUMENT RELATES TO:

*All Track 1 Actions*

Case: 1:16-cv-08637

Honorable Thomas M. Durkin

**REDACTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AGRI STATS, INC.'S**
**MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    Agri Stats Reports Cannot Facilitate a Supply-Reduction Agreement Because They Contain No Competitor Production or Price Information.................................................... 5

      a.    No Agri Stats report contains production information for any chicken producer aside from the report recipient..................................................... 6

      b.    No Agri Stats report contains pricing information for any chicken producer aside from the report recipient.................................................. 11

II.   Agri Stats Reports Cannot Be a "Policing" Device for Any Agreement to Restrict Output of Chicken. ................................................................................................................... 13

III.  Agri Stats Has No Incentive to Conspire to Reduce the Output of Chicken. ................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AD/SAT, Div. of Skylight, Inc. v. Associated Press*,
  181 F.3d 216 (2d Cir. 1999).............................................................................15

*Anderson News, LLC v. Am. Media, Inc.*,
  899 F.3d 87 (2d Cir. 2018)..............................................................................15

*Anderson v. Liberty Lobby*,
  477 U.S. 242 (1986)..........................................................................................4

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..........................................................................................5

*Cooney v. Casady*,
  735 F.3d 514 (7th Cir. 2013) ............................................................................5

*Kleen Prods. LLC v. Ga.-Pac. LLC*,
  910 F.3d 927 (7th Cir. 2018) ..........................................................................14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
  475 U.S. 574 (1986).......................................................................................14

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co.*,
  998 F.2d 1224 (3d Cir. 1993)............................................................................6

*In re Text Messaging Antitrust Litig.*,
  782 F.3d 867 (7th Cir. 2015) .......................................................................6, 11

*Todd v. Exxon Corp.*,
  275 F.3d 191 (2d Cir. 2001)..............................................................................8

*Valspar Corp. v. E.I. Du Pont De Nemours & Co.*,
  873 F.3d 185 (3d Cir. 2017).........................................................................6, 11

*Walker v. Macy's Merch. Grp.*,
  288 F. Supp. 3d 840 (N.D. Ill. 2017) ................................................................5

**Other Authorities**

Fed. R. Civ. P. 56       4, 15

# INTRODUCTION

Agri Stats, Inc. ("Agri Stats") began offering benchmarking reports and services to broiler chicken producers in 1985. ████████████████████████████████████████████

████ In the nearly 40 intervening years, the per capita production of chicken in the United States has nearly tripled, while the inflation-adjusted price of breast meat has declined by two-thirds.

████████████ This is no coincidence. Agri Stats has played a vital role in reducing the price of chicken in the United States. Agri Stats benchmarking reports allow chicken producers to identify opportunities to increase efficiencies and reduce costs, which in turn lowers chicken prices.

There is no evidence that any chicken producer used Agri Stats reports for any anticompetitive purpose, much less that the reports facilitated a decade-long agreement among those producers to restrict output and raise prices of chicken in the United States. To the contrary, the record shows that producers used Agri Stats reports as a tool to enhance the efficiency of their operations. Nevertheless, Plaintiffs claim that Defendant chicken producers used information in Agri Stats's benchmarking reports either (a) to coordinate their output levels, or (b) to "police" their own output agreement.[1] Both theories fail because the undisputed facts in the record show that ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[1] Track 1 Plaintiffs ("Plaintiffs") include the Direct Purchaser Plaintiffs ("DPP"), Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPP"), End-User Consumer Plaintiffs ("EUCP"), and a group of Direct Action Purchaser Plaintiffs ("DAP"). Plaintiffs allege that Agri Stats participated in a conspiracy to reduce the supply of chicken. Plaintiffs also allege the existence of a conspiracy to manipulate the Georgia Dock Index but Agri Stats is not named in any count specifically related to the Georgia Dock. Agri Stats, along with other defendants not named as Georgia Dock defendants, have already moved for summary judgment on Plaintiffs' overarching conspiracy theory attempting to link the supposed supply-reduction theory and the Georgia Dock theory. *See* ECF No. 5528. This motion addresses all other Track 1 claims against Agri Stats, which.

████████████████ Agri Stats thus could not be used by any company to track any other company's birds or pounds produced.  Without that information, Plaintiffs' theories are not viable.

Agri Stats is a small business headquartered in Fort Wayne, Indiana with about 70 employees that has helped make the United States protein industry the envy of the world.  Yet the company's very existence has been severely threatened by the massive expense and burden of years of litigation premised on claims for which there is no evidentiary support—litigation that paradoxically threatens to destroy a source of efficiency that benefits the very consumers that Track 1 Plaintiffs purport to represent.  The undisputed, material facts in the record—the *actual* data in Agri Stats' benchmarking reports themselves—thoroughly refute Plaintiffs' claims. Plaintiffs' supply reduction claims, whether evaluated under the per se rule or the rule of reason, raise no issue for trial and the Court should grant summary judgment in Agri Stats' favor.

## SUMMARY OF UNDISPUTED MATERIAL FACTS

Agri Stats does not produce or sell broiler chickens.  ███████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

---

█ ████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████

Express Markets, Inc. ("EMI") is a subsidiary of Agri Stats but operates independently of

its parent. ███████ EMI offers analytic services and weighted average price reporting for various

---

███ ████████████████████████████████████████████████

███ ██████████████████████████████████████████████████

██████████████████████████████████████████

chicken products, but does not identify who is selling or buying those products or how much any specific seller charges or buyer pays. ██████████ Both are available to anyone interested in subscribing. ████████████████████████████

██████

The United States Department of Agriculture ("USDA") tracks and reports weekly production volume of chicken in its publicly available "Weekly Poultry Slaughter." ████████ USDA also publishes a Monthly Chickens and Eggs report showing current and historic hatchery data for broiler chickens. ████████ In addition to tracking pullet placements, that report also tracks the size of hatchery supply flock, flock size, and eggs produced. ████████████████

████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████

**LEGAL STANDARD**

Summary judgment is granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). While a court must give "the nonmoving party, the benefit of all reasonable inferences that could be

drawn," it must ignore any "speculation and conjecture." *Cooney v. Casady*, 735 F.3d 514, 518–19 (7th Cir. 2013) (internal quotation marks omitted).

Once the moving party establishes that no genuine dispute of material fact exists, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), "the nonmovant must make a showing sufficient to establish the existence of an element essential to that party's case," and "must go beyond the pleadings . . . to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in [its] favor." *Walker v. Macy's Merch. Grp.*, 288 F. Supp. 3d 840, 851 (N.D. Ill. 2017) (internal quotation marks omitted). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement"; only factual disputes "that could affect the outcome of the suit under governing law" "preclude the entry of summary judgment." *Id.* (internal quotation marks omitted).

## ARGUMENT

### I. Agri Stats Reports Cannot Facilitate a Supply-Reduction Agreement Because They Contain No Competitor Production or Price Information.

Plaintiffs allege that "Agri Stats consciously committed to a common scheme to restrain and stabilize the price and supply of Broilers" through its publication of anonymized benchmarking reports containing data collected from chicken producers. *See, e.g.*, EUCP Complaint ¶ 158 (ECF No. 3748). Plaintiffs claim that "Agri Stats . . . knowingly provided, and defendants used Agri Stats as, both a method to collude and a mechanism by which to enforce the conspiracy." *Id.* ¶ 159. Plaintiffs also contend that use of Agri Stats reports is a "plus factor" to be evaluated in relation to an agreement between the Chicken Producer Defendants,[5] *id.* ¶ 10, but

---

[5] The "Chicken Producer Defendants" include: Koch Foods, Tyson, Pilgrim's Pride, Sanderson Farms, Wayne Farms, Mountaire Farms, Peco Foods, Foster Farms, House of Raeford Farms, Simmons Foods, Fieldale Farms, George's, O.K. Foods, Claxton Poultry, Harrison Poultry, Mar-Jac Poultry, and Amick Farms. All of whom were named in the Track 1 complaints.

more significantly, Plaintiffs allege that Agri Stats knowingly "conspired to act as a vehicle for collusion" to reduce the supply of chicken. *Id*. at 50. These contentions fail because Plaintiffs' assertions about the information contained in Agri Stats reports is unsupported by the record.

**a.    No Agri Stats report contains production information for any chicken producer aside from the report recipient.**

While the USDA publishes production volume information publicly, ███████████ ████████████████████████████████████████████████████ For the Chicken Producer Defendants to collude to reduce the supply of chicken, and thus increase consumer prices, they must have a mechanism for determining the volume of chicken produced by each member of the putative conspiracy. Yet, after six years of exhaustive discovery, Plaintiffs have failed to adduce any evidence that Agri Stats served as the vehicle for a supply reduction conspiracy.

████████████████████████████████████████████

███████████████ Without "evidence of what information was exchanged" between competitors, "there is no basis for an inference that" competitors were using supposed opportunities to collude "to plot price[] increases." *In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 878 (7th Cir. 2015). ████████████████████████████████

████████████████████████████████████████████

███████████████ *Cf. Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 873 F.3d 185, 199, 214 (3d Cir. 2017) (quoting *Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co.*, 998 F.2d 1224, 1235 (3d Cir. 1993)) ("Proof of opportunity to conspire, without more, will not sustain an inference that a conspiracy has taken place.").

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████



████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ That fact is undisputed; there is no evidence that any Agri Stats report has ever identified to one company the production volume or output of another company. ████████████████████████████

████████████████████████████████████████████

While Plaintiffs have focused on the supposed effect of Agri Stats' reports on future production levels, there is no forward-looking production information in any of them. *Cf. Todd v. Exxon Corp.*, 275 F.3d 191, 211 (2d Cir. 2001) (Sotomayor, J.) ("The Supreme Court has made clear that exchanges of current price information . . . have the greatest potential for generating anti-competitive effects," while "exchange of past price data is greatly preferred.") (internal quotation marks omitted). ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

8



███████████████████ Without that information, Agri Stats cannot facilitate a supply-reduction agreement. Agri Stats is, therefore, entitled to summary judgment.

**b.** **No Agri Stats report contains pricing information for any chicken producer aside from the report recipient.**

████████████████████████████████████████████████████████

███████████████ For the Chicken Producer Defendants to collude to increase consumer prices, they must have a mechanism for determining the prices of chicken sold by each other member of the alleged conspiracy. For the same reasons discussed above, no evidence supports the claim that Agri Stats served as the vehicle for an agreement to increase broiler prices. *Cf. Valspar*, 873 F.3d at 199; *Text Messaging*, 782 F.3d at 878. ██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

—————————————————————

█ ███████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████



Once again, the undisputed evidence shows—the Agri Stats reports themselves—belie Plaintiffs' claim that the pricing information of one company is available to any other.  Agri Stats is entitled to summary judgment for this reason as well.

## II.     Agri Stats Reports Cannot Be a "Policing" Device for Any Agreement To Restrict Output of Chicken.

Lacking any evidence that Agri Stats reports can facilitate an agreement among the Chicken Producer Defendants on output or price, Plaintiffs offer an alternative theory: that Agri

Stats reports are a "policing" device by which the Chicken Producer Defendants monitored each other's output and prices so they could identify and punish any companies "cheating" on the putative supply-reduction agreement. This argument fails because, as set forth above, ██████

████████████████████████████████████████████████████████████

████████████████████████████████████ A purported "policing" device cannot "police" anything if it does not contain the information necessary to detect a violation of the agreement. Nor is there any evidence in the record showing that Agri Stats reports actually were used in that fashion, despite the massive amount of discovery in this matter. *See, e.g., Kleen Prods. LLC v. Ga.-Pac. LLC*, 910 F.3d 927, 937 (7th Cir. 2018) ("If this was a cartel, it would have tried to impose disciplinary measures on the 'cheaters' who did not go along with the price increases. But that type of evidence is conspicuously absent[.]"). ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ Plaintiffs' "policing" theory is also ultimately nonsensical.

████████████████████████████████████████████████████████████

████████████████████████ By the time the "cheating" is discovered, its effects in the marketplace would have already occurred. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*. 475 U.S. 574, 587 (1986) (stating "if the claim is one that simply makes no economic sense — respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary").

## III.    Agri Stats Has No Incentive To Conspire To Reduce the Output of Chicken.

Plaintiffs' theory also fails because Agri Stats has no economic incentive to conspire to reduce chicken output. The only possible benefit of the conspiracy identified by Plaintiffs is higher



prices for broiler chicken, but Agri Stats does not sell broiler chickens and does not benefit from any price increase for broiler products.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████ When, as here, plaintiffs do not identify any motive for a defendant to have joined a conspiracy, conspiracy allegations are implausible. *See, e.g., Anderson News, LLC v. Am. Media, Inc.*, 899 F.3d 87, 112 (2d Cir. 2018) (quoting Areeda & Hovenkamp, Antitrust Law, ¶ 308, at 173–76) ("[A]s a practical matter[,] a conspiracy's 'objective rationality' or motive is a necessary condition for inferring conspiracy from the usual array of evidence, which is usually circumstantial[,]" and "motive to conspire tends to be negated . . . when the defendant shows a 'plausible and justifiable reason for its conduct that is consistent with proper business practice.'") (second alteration in original); *AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 223 (2d Cir. 1999) (quoting *Matsushita*, 475 U.S. at 588) ("[T]he absence of a rational motive to engage in the alleged conspiracy is 'highly relevant to whether a "genuine issue for trial exists" within the meaning of Rule 56(e).'").

## CONCLUSION

For the reasons set forth above, Agri Stats respectfully requests that the Court grant its Motion for Summary Judgment and enter judgment against all Track 1 Plaintiffs on all claims related to Plaintiffs' alleged supply-reduction conspiracy.

─────────────────────

███ ██████████████████████████████████████████████
████████████████████████████████████████████

Dated: October 7, 2022

Respectfully Submitted,

/s/ *Justin W. Bernick*

Justin W. Bernick (Pro Hac Vice)
William L. Monts III (Pro Hac Vice)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Tel.: 202-637-5600
Fax: 202-637-5910
justin.bernick@hoganlovells.com
william.monts@hoganlovells.com

Jacob D. Koering
MILLER, CANFIELD,
PADDOCK & STONE, P.L.C
225 W. Washington Street, Suite 2600
Chicago, IL 60606
Tel.: 312-460-4247
Fax: 312-460-4201
koering@millercanfield.com

*Attorneys for Defendant Agri Stats, Inc.*

16