IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **IN RE BROILER CHICKEN ANTITRUST LITIGATION** <br> _____ <br> THIS DOCUMENT RELATES TO: <br> *ALL TRACK 1 CASES* | Case No: 1:16-cv-08637 <br><br> Hon. Judge Thomas M. Durkin <br><br> Magistrate Judge Jeffrey T. Gilbert |

### "OPTION 2" DEFENDANTS' BRIEF IN RESPONSE TO THE COURT'S ORDER REGARDING THE FORM OF A TRACK 1 TRIAL (DKT. 6153)

The "Option 2" Defendants[1] maintain that summary judgment should be granted in their favor and that no trial is necessary. Moreover, setting the precise contours of any trial can most efficiently be done after the summary judgment and Daubert motions are resolved, because only then will the Court and the parties be fully informed as to what, if anything, remains to be tried in Track 1 and what experts and parties remain. However, in response to the Court's order and request for the parties to address the scope of any potential trial now, if any claims survive summary judgment, the "Option 2" Defendants submit that the Court should try the case under "Option 2" and have a single liability trial on all Track 1 Plaintiffs' claims of a supply restriction conspiracy. The case developments since the parties submitted their trial plans in August 2021 only further underscore why a single liability trial with all Track 1 Plaintiffs will most efficiently resolve the claims, conserve judicial and party resources, and promote finality.

*First*, "Option 2" is the most efficient trial because it allows the Court and the parties to try the core common liability question at the heart of this case in a single Track 1 trial: did the Defendants conspire to restrict the supply of broiler chickens? This is the same issue that is raised

---

[1] The "Option 2" Defendants are: Perdue, Harrison Poultry, and Foster Farms.

1

by all Track 1 Plaintiffs. This is the same issue that all Defendants face regardless of whether they are also alleged to have conspired to manipulate the Georgia Dock index and regardless of whether they have settled with any of the Track 1 Plaintiffs. Unless the Court sets one liability trial for all Track 1 Plaintiffs' supply restriction claims, this is the same question that juries will be asked to answer multiple times—requiring Defendants and the Court to expend significant resources and witnesses to potentially testify numerous times. If the Plaintiffs fail to meet their burden of proof in a single liability trial on whether there was a conspiracy to restrict supply, there will be no need for a second liability trial or multiple trials on damages on the same supply restriction claim as to all Track I Plaintiffs.[2]

As explained in Perdue and Harrison Poultry's August 2021 submission, courts in other cases facing large, multi-party antitrust actions have repeatedly employed a single, consolidated liability trial to promote efficient resolution of claims and to conserve judicial resources. *See* Perdue and Harrison Poultry Defendants' August 2021 Submission (Dkt. 4969), at 2-3 (discussing multiple antitrust cases that have set a single liability trial). In fact, just this year, Judge Leinenweber ordered a combined liability trial for all classes and opt-out plaintiffs in *In re Opana ER Antitrust Litigation. In re: Opana.,* No. 14 C 10150, ECF 793 (N.D. Ill. Apr. 21, 2022) (Order on Plaintiffs' Motion to Bifurcate).[3] Ultimately, judicial and party resources were preserved under

---

[2] The potential number of trials is compounded if the trial is set for DPPs plus only some, but not all, of the Track 1 DAPs. Although an "Option 1" trial would involve fewer plaintiffs, an "Option 2" trial would be more manageable in terms of the issues to be addressed because the alleged supply restriction conspiracy is at the core of *all* Plaintiffs' complaints. An "Option 2" trial on this foundational issue could be undertaken in less time and expense than having to litigate that same issue multiple times against multiple groups of Track 1 Plaintiffs. Further, resolution of the issue of liability as to the alleged supply restriction claims would likely have substantial effects on promoting resolution of any remaining claims.

[3] As explained in Perdue and Harrison Poultry's August 2021 submission, there is different evidence that will likely need to be presented on the issues of antitrust impact and damages across Plaintiffs. Determining where in the antitrust impact issue to draw the line for the joint trial is an

this approach when the jury found no liability and obviated the need for any trial on damages. *In re Opana*, ECF 1003 (July 1, 2022) (Judgment).

*Second*, as the case has evolved and progressed through expert discovery and into summary judgment and *Daubert* briefing, it has become clear that a single liability trial on the issue of the alleged supply restriction conspiracy is more than manageable. Of the over 180 DAPs who have filed claims, only 50 opted into Track 1. Of those 50 DAPs, 49 of them share the same liability expert and they are represented by only a few groups of counsel who have already demonstrated their ability to work together. Further, the Track 1 DAPs have raised the same types of evidence and made the same types of arguments in their expert reports as the Class Plaintiffs, which is unsurprising considering they all allege the same purported conspiracy to restrict supply.

*Third*, the question of whether any Track 1 Plaintiffs' claims regarding alleged Georgia Dock manipulation are included in an initial trial should await the Court's resolution of summary judgment. As the Court recognized, there are multiple different summary judgment motions now pending as to Plaintiffs' Georgia Dock claims—separate summary judgment motions brought by the Georgia Dock Defendants, the non-Georgia Dock Defendants, and all Defendants on the "overarching conspiracy" claim. Resolving these motions will impact whether there is any Georgia Dock claim to try, and if so, whether it should be tried separately from the supply restriction claim and against which Defendants. Awaiting resolution of summary judgment to determine whether

---

issue that need not be decided now. Similarly, the Court need not now decide how to handle the damages issues until there is more clarity on what issues and what parties will be involved in the trial after summary judgment and the parties are closer to trial. Many things can and will shape the ultimate parties left for trial, including summary judgment, motions *in limine*, and settlements. Even if the Plaintiffs prevail on liability, the Court can and should take a "pause" before any damages trials to allow the parties to attempt to resolve or at least narrow the issues for any damages trials. *See* Perdue and Harrison Poultry's August 2021 Submission, Dkt. 4969, at n.3 (discussing cases that decided questions regarding the shape of the trial closer to the trial date).

3

alleged "overarching conspiracy" or Georgia Dock claims can also be included in a trial with any remaining supply restriction claims strikes the proper balance by setting the parties on a course to resolve the most claims for the most parties in the fewest number of trials and avoiding delay.

*Fourth*, although Perdue and Harrison Poultry previously submitted that the trial should include the *per se* claims, developments in the case have shown that the trial, if any, should also include liability on the EUCP's purported "alternate theory of liability" under the Rule of Reason. This theory contends that Defendants "agree[d] to unlawfully exchange competitive sensitive information through the service EMI and Agri Stats." EUCPs' Fifth Am. Compl. (Dkt. 3748) at ¶ 157. Expert discovery and summary judgment briefing have demonstrated that there is no principled reason that the EUCPs would be unable to present both theories, *if* any survive summary judgment, at a single liability trial. This is particularly true given that this "Rule of Reason" theory is based on the exact same conduct as their "*per se*" claim: allegedly using Agri Stats to reduce supply, as Plaintiffs' contend, as opposed to its stated purpose of enhancing efficiency and reducing industry costs. Mem. In Support of Def.'s Mot. for Summary Judgment Concerning Alleged Agreement to Restrict Broiler Supply, (Dkt. 5997) at 44, 50-52.

*Finally*, the "Option 2" Defendants request that if the Court selects an "Option 1" trial, the Court also rule that any trial will not have one-way issue-preclusive effects. Otherwise, Plaintiffs not included in the initial trial would be sitting on the sidelines and in a subsequent trial would likely seek to invoke offensive non-mutual collateral estoppel for any rulings adverse to Defendants, but would conversely seek to block application of collateral estoppel for any rulings adverse to them. This risk can be avoided with an order that any "Option 1" trial does not have one-way issue-preclusive effects. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979) (holding that offensive collateral estoppel should not be permitted where "a plaintiff could have

easily joined in the earlier action" or where its use "would be unfair to a defendant"); *Premier Elec. Const. Co. v. National Elec. Contractors Ass'n, Inc.*, 814 F.2d 358, 364 (7th Cir. 1987) (disallowing the invocation of offensive non-mutual collateral estoppel to argue that an unsuccessful defendant is precluded from relitigating against plaintiffs opting out of a class action).

Dated: December 23, 2022                                  Respectfully submitted,

VENABLE LLP                                               EVERSHEDS SUTHERLAND (US) LLP

By: /s/ *J. Douglas Baldridge*                            By: /s/ Patricia A. Gorham
J. Douglas Baldridge (#437678)                            Patricia A. Gorham (admitted *pro hac vice*)
Lisa Jose Fales (admitted *pro hac vice*)                 James R. McGibbon (admitted *pro hac vice*)
Danielle Foley (admitted *pro hac vice*)                  Peter M. Szeremeta (admitted *pro hac vice*)
Andrew Hernacki (admitted *pro hac vice*)                 Kaitlin A. Carreno (admitted *pro hac vice*)
600 Massachusetts Avenue, NW                              Dylan de Fouw (admitted *pro hac vice*)
Washington, DC 20001                                      Rebekah Whittington (admitted *pro hac vice*)
Telephone: (202) 344-4000                                 999 Peachtree Street, N.E., Ste 2300
Facsimile: 202-344-8300                                   Atlanta, GA 30309-3996
jdbaldridge@venable.com                                   Telephone: (404) 853-8000
ljfales@venable.com                                       Facsimile: (404) 853-8806
drfoley@venable.com                                       patriciagorham@eversheds-sutherland.com
athernacki@venable.com                                    jimmcgibbon@eversheds-sutherland.com
                                                          peterszeremeta@eversheds-sutherland.com
FALKENBERG IVES LLP                                       kaitlincarreno@eversheds-sutherland.com
                                                          dylandefouw@eversheds-sutherland.com
Kirstin B. Ives                                           rebekahwhittington@eversheds-
30 N. LaSalle St., Ste 4020                               sutherland.com
Chicago, IL 60602
Telephone: (312) 566-4803                                 AMUNDSEN DAVIS, LLC
Facsimile: (312) 566-4810
kbi@ffilaw.com                                            Ronald Balfour (#6307658)
                                                          150 N. Michigan Avenue, Ste 3300
*Attorneys for Defendants Perdue Farms,*                  Chicago, Illinois 60601
*Inc. and Perdue Foods LLC*                               Telephone: (312) 894-3369
                                                          Facsimile: (312) 997-1828
                                                          RBalfour@ amundsendavislaw.com

                                                          *Attorneys for Defendant Harrison Poultry,*
                                                          *Inc.*

MAYER BROWN LLP

By: /s/ *Carmine R. Zarlenga*
Carmine R. Zarlenga (Bar No. 11890)
William H. Stallings (*pro hac vice*)
Oral D. Pottinger (*pro hac vice*)
Katherine M. Bleicher (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC  20006-1101
Tel: (202) 263-3000
czarlenga@mayerbrown.com
wstallings@mayerbrown.com
opottinger@mayerbrown.com
kbleicher@mayerbrown.com

*Attorneys for Defendants Foster Farms, LLC and Foster Poultry Farms LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2022, a true and correct copy of the foregoing was electronically filed with the Court via the CM/ECF system.

>  */s/ J. Douglas Baldridge*
> J. Douglas Baldridge