UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION* <br><br> THIS DOCUMENT RELATES TO: <br><br> Track 1 Actions | Civil Action No. 1:16-cv-08637 <br><br> Judge Thomas M. Durkin <br><br> Magistrate Judge Jeffrey T. Gilbert |

**KROGER & PUBLIX DIRECT ACTION PLAINTIFFS'
MEMORANDUM OF LAW IN SUPPORT OF TRIAL OPTION 1**

The Kroger & Publix Direct Action Plaintiffs[1] ("DAPs") submit this Memorandum regarding the make-up of the September 11, 2023 DPP-plus-DAP trial in accordance with the Court's Order of November 22, 2022 (ECF No. 6153).

**INTRODUCTION**

For many of the same reasons stated in the submission of the Class Plaintiffs, the Kroger & Publix DAPs support the Court's Trial Option 1. More specifically, the Kroger & Publix DAPs largely endorse the Class Plaintiffs' proposal of a first trial that includes the Direct Purchaser Plaintiff Class (the "DPPs") as well as the Kroger & Publix DAPs. A first trial with DPPs and no less than seven of the Kroger & Publix DAPs is the best option available because, among other reasons, these plaintiffs are similarly situated as direct purchasers of broiler chickens; their respective claims can be efficiently and fairly tried together; counsel for both plaintiff groups have

---

[1] The "Kroger & Publix Direct Action Plaintiffs" consist of the following Track 1 DAPs: Associated Grocers of the South, Inc., Meijer, Inc., Meijer Distribution, Inc., OSI Restaurant Partners, LLC, Publix Super Markets, Inc., SuperValu Inc., Unified Grocers, Inc., Associated Grocers of Florida, Inc., and Wakefern Food Corporation (the "Publix DAPs") and The Kroger Co., Albertsons Companies, Inc., Hy-Vee, Inc., and Save Mart Supermarkets (the "Kroger DAPs").

1

similar trial objectives, a productive working relationship, and lawyers experienced in trying antitrust cases; and the inclusion of the Kroger & Publix DAPs will make the trial representative of the broader direct purchaser marketplace in terms of the identity of direct purchasers, *e.g.*, grocers, distributors, and restaurants, the relative size of the direct purchasers, *e.g.*, small, medium, and large purchasers, and the types of the broiler chickens purchased from Defendants and co-conspirators during the conspiracy.

## ARGUMENT

I. **THE KROGER & PUBLIX DAPS AGREE WITH CLASS PLAINTIFFS THAT A BIFURCATED TRIAL INVOLVING ALL PLAINTIFFS WOULD BE INEFFICIENT AND UNDULY PREJUDICIAL TO PLAINTIFFS AND INVITE HARMFUL ERROR.**

The DPPs conferred with us before we filed these papers, and the Kroger & Publix DAPs completely agree with the Class Plaintiffs that a bifurcated trial involving all plaintiffs is inadvisable.

Each of the Kroger & Publix DAPs, like the DPPs, are *direct* purchasers of broilers whose antitrust claims are based solely on *federal* antitrust law. Conversely, the other Track 1 class plaintiffs—the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs") and End User Consumer Plaintiffs ("EUCPs")—are *indirect* purchasers whose claims are based on various state *indirect* purchaser laws. There are legally significant differences in the elements, proof, and defenses between damage claims under federal antitrust law and state indirect purchaser statutes. Most notably, the federal Sherman Act claims that the DPPs and the Kroger & Publix DAPs would assert in a first trial do not permit a "pass on" defense. *See Hanover Shoe v. United Shoe,* 392 U.S. 481, 488 (1968)*; see also In re Cathode Ray Tube Antitrust Litig.,* MDL 1917, 2016 WL 7800819, at *8-9 (N.D. Cal. Nov. 15, 2016) (excluding evidence or argument at trial regarding downstream pass-on in direct purchaser case brought pursuant to Sherman Act). Conversely, the CIIPPs' and EUCPs' claims under state laws require a showing of the very pass-on that is excluded from

2

evidence and precluded from consideration by the jury in a direct purchaser case. *See In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 502 (N.D. Cal. 2008) (recognizing that "indirect purchasers must prove that an overcharge was levied on direct purchasers of defendants' products, who then passed all or some of that overcharge through to the indirect purchasers").

This conflict between the evidence admissible in direct and indirect purchaser damage actions will create confusion for a jury in applying (or misapplying) evidence admissible in the direct purchaser case (the DPPs and Kroger &Publix DAPs), but not in the indirect purchaser case (the CIIPPs and EUCPs), and vice versa. This undue prejudice to the trial plaintiffs is not curable with a limiting instruction from the Court.[2] When presented with evidence at a joint trial of direct and indirect purchasers concerning the downstream pricing and sale of a cartelized product, a jury is likely to discount the direct purchasers' case based on pass-through evidence. This would be grossly unfair to the direct purchaser plaintiffs in that trial. The unnecessary trial complexities and real risk of undue prejudice to direct purchaser plaintiffs in an Option 2 trial make Option 1 the far better choice for the first trial. *See, e.g., In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94-cv-00897, MDL 1997, 1995 WL 399684, at *1 (N.D. Ill. July 7, 1995) (denying motion to consolidate all Sherman Act claims for trial and holding that "[o]ur most prominent concerns are that such a consolidated trial would create jury confusion and would result in substantial prejudice

---

[2] This is so regardless of whether the case is tried on liability and damages, or just liability, as proof of antitrust injury—necessary for liability—involves demonstrating the *impact* of the conspiracy on broiler pricing to the trial plaintiffs. The need to show impact makes pass-on evidence in a trial including the indirect purchasers unavoidable and harmful error certain. *See D.R. Ward Const. Co. v. Rohm and Haas Co.,* 470 F. Supp. 2d 485, 493 (E.D. Pa. 2006) (indirect purchaser plaintiffs demonstrated injury and causation when they alleged paying inflated prices due to an overcharge that was passed on to them by intervening links within the distribution chain, which was caused by a conspiracy among defendants).

to several named parties"), *recon. denied*, 1995 WL 654134 (N.D. Ill. Nov. 3, 1995). Tellingly, not just all of the classes and the Kroger & Publix DAPs, but nearly all of the Defendants, agree that a (bifurcated) trial involving all plaintiffs is ill advised primarily because of the risk of harmful error caused by pass-on evidence (ECF No. 4850 at 10-12 (Defendants' Trial Plan)).

II. **THE TRIAL SHOULD INCLUDE NO LESS THAN SEVEN OF THE KROGER & PUBLIX DAPS IN ORDER TO BE SUFFICIENTLY REPRESENTATIVE OF THE DIRECT PURCHASER MARKET.**

The Kroger & Publix DAPs appreciate and largely endorse the trial proposal of the Class Plaintiffs, which recommends a first trial comprised of DPPs and certain of the Kroger & Publix DAPs. The Kroger & Publix DAPs are appropriate plaintiffs for this trial for several reasons.

First, the Kroger & Publix DAPs, like the DPPs, have Sherman Act Section 1 claims concerning Defendants' and their co-conspirators' collusive supply reduction and manipulation of the Georgia Dock Price Index. In our experience, DPP and Kroger & Publix DAP claims can be fairly and efficiently tried together using creative trial management techniques supervised by this Court. The DPPs propose one such technique in their papers, in which the jury that hears the case decides liability for both the DPPs and the Kroger & Publix DAPs and damages for the DPPs, and then damages for the Kroger & Publix DAPs.

Second, the Kroger & Publix DAPs are representative of different types of direct action direct purchasers in these proceedings, and have aggregate purchase volumes that far exceed any of the other Track 1 DAPs.[3] The Kroger & Publix DAPs include some of the country's largest retail grocers (Kroger, Publix, Meijer and Albertson's) and wholesalers (Wakefern and Supervalu), as well as a prominent restaurant group (OSI Restaurant Partners) that operates well-known

---

[3] Defendants correctly identified the significant purchase volumes of DAPs, including many of the Kroger & Publix DAPs, as a reason certain DAPs should be included in a first trial. (ECF No. 4850 at 4). Indeed, six of the 20 DAPs listed by Defendants in support of this point are in the Kroger & Publix DAP group. *Id.*

national brands such as Outback Steakhouse and Carrabba's Italian Grill. These plaintiffs complement the composition of the DPPs, whose class now consists of mainly smaller and mid-size direct purchasers. Together, the DPP-plus-Kroger & Publix DAP trial will present a representative cross section of direct purchaser claims in terms of purchaser business, purchaser size, and types of broilers purchased.

Third, the Kroger & Publix DAPs share the same experts, which will mitigate the potential for juror confusion that could arise from multiple and perhaps inconsistent expert opinions.

Fourth, counsel for the Kroger & Publix DAPs—Kenny Nachwalter, Sperling & Slater, and Sherrard Roe Voigt & Harbison—are experienced in prosecuting and trying antitrust direct actions. Our firms have the will, resources, experience and perspective to serve as trial counsel, and we have been working together on antitrust cases for years long before this case started.

Fifth, nearly two years ago, and before the Court separated these proceedings into Track 1 and Track 2 Plaintiffs, the Kroger & Publix DAPs were the plaintiffs who initially proposed a bellwether concept similar to Option 1. *See, e.g.* ECF No. 4461 at 13-14; ECF No. 4636 at 1-15.

Sixth, counsel for the Kroger & Publix DAPs have been working cooperatively and efficiently in these proceedings with counsel for the DPPs since near the inception of the litigation. To echo the Class Plaintiffs' brief, we are confident that our productive working relationship with DPPs will continue and allow for an efficient presentation of the evidence and effective advocacy at trial.[4]

---

[4] As of this writing, we do not have the benefit of reading Defendants' submissions in response to the Court's November 22, 2022 Order. We note that previously, a few Defendants argued that they should not be included in the first trial if they had settled with some, but not all, of the trial plaintiffs. This is incorrect because, as noted in the trial proposal previously submitted by *most of the Defendants*, "[e]ven if additional Defendants settle, if Plaintiffs seek to impose joint and several liability, then they will still need to prove that the settling Defendants participated in their alleged conspiracy." (ECF 4849 at 7 n.4.) In other words, evidence concerning a settling

5

To be sufficiently representative of the direct purchaser market as a whole, a first trial should include a contingent of sizable retail grocers, wholesalers and a restaurant group. Selecting no less than seven of the Kroger & Publix DAPs would accomplish this objective because of the diversity in their business forms, large purchase volume of broilers, and type of broilers purchased. Conversely, a group of less than seven of the Kroger & Publix DAPs would be insufficiently representative of DAPs in terms of both the type of purchaser and volume of commerce. A trial limited to just three DAPs would undermine the value of the trial as a bellwether, which is why we suggest at least seven. The trial should serve not only as an indicator for Defendants and the remaining Plaintiffs on the likelihood of success of their claims and defenses, but also a measure of claim valuation. This is why only three DAPs is insufficient as a bellwether, because it presents too small a sample size. Our proposed seven DAPs from the Kroger & Publix DAPs provides a meaningful sample size and a cross section of grocers, wholesalers and restaurants.

Moreover, the presence of a few additional Kroger & Publix DAPs beyond the three proposed by the Class Plaintiffs would have minimal impact on the flow of the trial given the overlapping nature of the claims, shared experts and the possibility that not every plaintiff would even need to testify. Indeed, in many of the other antitrust cases that we have tried for multiple direct action plaintiffs, we presented representative testimony from a subset of the plaintiffs in order to be efficient.

---

Defendant may still be necessary in the trial even if it had settled with some (or all) of the trial plaintiffs. Whether cooperating or not, the testimony of a Defendant who settled with some but not all trial plaintiffs would still be admissible for reasons other than a party admission, including, for example, as a co-conspirator statement.

## CONCLUSION

For the foregoing reasons, the Kroger & Publix DAPs respectfully request that the Court adopt the Class Plaintiffs' trial plan with the exception that no less than seven—as opposed to just three—of the Publix & Kroger DAPs be included as participants. [5]

Dated: December 23, 2022

Respectfully submitted,

*/s/ David P. Germaine*
David P. Germaine
Paul E. Slater
Joseph M. Vanek
Phillip F. Cramer
John P. Bjork
SPERLING & SLATER, LLC
55 W. Monroe, Suite 3200
Chicago, IL 60603
Tel: (312) 641-3200
Fax: (312) 641-6492
E-mail: dgermaine@sperling-law.com
pes@sperling-law.com
jvanek@sperling-law.com
pcramer@sperling-law.com
jbjork@sperling-law.com

Ryan T. Holt
Christina R.B. Lopez
SHERRARD ROE VOIGT & HARBISON, PLC
150 3rd Ave South, Suite 1100
Nashville, TN 37201
Tel: (615) 742-4200
E-mail: rholt@srvhlaw.com
clopez@srvhlaw.com
*Counsel for Plaintiffs Associated Grocers of the South, Inc., Meijer, Inc., Meijer*

Respectfully submitted,

*/s/ William J. Blechman*
William J. Blechman
Kevin Murray
Douglas Patton
Samuel Randall
Michael Ponzoli
KENNY NACHWALTER, P.A.
1441 Brickell Avenue, Suite 1100
Miami, FL 33131
Tel: (305) 373-1000
Fax: (305) 372-1861
E-mail: wblechman@knpa.com
kmurray@knpa.com
dpatton@knpa.com
srandall@knpa.com
mponzoli@knpa.com
*Counsel for Plaintiffs The Kroger Co., Albertsons Companies, Inc., Hy-Vee, Inc., and Save Mart Supermarkets (the "Kroger DAPs")*

---

[5] Nothing in this submission should be construed as criticism or rebuke of the merits of any other Track 1 DAP case or attributes, including any of the plaintiffs within the Kroger and Publix DAP group that may not be included as first trial participants. With regard to the Track 1 DAPs and claims not included in the first trial, the Kroger & Publix DAPs endorse the proposal in the Class Plaintiffs' brief of setting a trial date for them shortly after the trial of the indirect purchaser claims.

*Distribution, Inc., OSI Restaurant Partners, LLC, Publix Super Markets, Inc., Supervalu Inc., Unified Grocers, Inc., Associated Grocers of Florida, Inc., and Wakefern Food Corp. (the "Publix DAPs")*

8

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2022 a true and correct copy of the foregoing document was electronically filed with the Clerk for the Court using CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ David P. Germaine
David P. Germaine