## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| *In re Broiler Chicken Antitrust Litigation*, Case No: 16-cv-08637 | |
| SYSCO CORPORATION, | Case No. 18-CV-700 |
| Plaintiff, | Judge Thomas M. Durkin<br>Magistrate Judge Jeffrey T. Gilbert |
| v. | |
| TYSON FOODS, INC., *et al.,*, | |
| Defendants. | |

### SYSCO CORPORATION'S MOTION FOR REASSIGNMENT AND CONSOLIDATION

Plaintiff Sysco Corporation ("Sysco") respectfully moves this Court (1) for reassignment of *Sysco Corp. v. Glaz LLC, et al.*, Case No. 23-cv-1451 (N.D. Ill.) (Pacold, J.) ("Vacatur Proceeding"), to this Court based on relatedness pursuant to Local Rule 40.4 and (2) for an order consolidating the Vacatur Proceeding with the above-captioned action (the "Action" or "*Broilers* Litigation") pursuant to Federal Rule of Civil Procedure 42(a). The Vacatur Proceeding and the Action are related under Local Rule 40.4 and should be consolidated under Fed. R. Civ. P. 42(a) because resolution of the Vacatur Proceeding will determine whether Sysco can settle pending claims in this Action, which will expedite resolution of the Action, avert the potential for substantial delay, and promote judicial economy in this Court.

Sysco is a direct-action plaintiff in the Action. On March 20, 2023, Sysco filed an amended petition to vacate a preliminary injunction entered by an arbitral tribunal (the "PI Award"), which enjoins Sysco from settling its claims against certain defendants in this Action and in other antitrust litigations. *See* Vacatur Proceeding, ECF No. 18. The combined direct and indirect effect of the

PI Award is that Sysco has lost control over the resolution of its claims in this Action to a non-party and will be unable to freely settle those claims unless the relief sought in the Vacatur Proceeding is granted. As a result, the issues in the Vacatur Proceeding are inextricably linked to those in this case. Sysco respectfully submits that both cases should be heard by this Court, and that the Vacatur Proceeding should consolidated with the above-captioned Action.

Pursuant to this Court's Case Guidelines, Sysco conferred with counsel for the parties in this Action by email on March 9-10, 2023. Sysco received no objections to the relief sought in this Motion. Sysco has advised counsel for Respondents in the Vacatur Proceeding of its intent to file this motion, and they have indicated that they do not consent.

## BACKGROUND

### A. Burford Invests In Sysco's Claims In This Litigation And Other Antitrust Litigations.

Sysco filed its direct-action complaint in this case in 2018 after opting out of the class action. *See* ECF No. 1. Similar antitrust litigations were filed in the U.S. District Court for the District of Minnesota against pork producers and beef producers, and Sysco opted out of those class actions and filed direct-action complaints in those cases as well. *See Sysco Corp. v. Agri Stats Inc. et al.*, No. 21-cv-1374 (D. Minn.) (the "*Pork* Litigation"); *Sysco Corp. v. Cargill Inc., et al.*, Case No. 22-cv-1750 (D. Minn.) (the "*Beef* Litigation," and together with this case and the *Pork* Litigation, the "Antitrust Litigations").[1] The Antitrust Litigations involve some of Sysco's most significant suppliers (as defendants) and customers (as class members or as direct action plaintiffs). *See* Amended Petition to Vacate Arbitration Award, No. 23-cv-1451, ECF No. 18 (Mar. 20, 2023) ("Amended Petition").

---

[1]     Sysco is also a putative class member in the *In re Turkey Antitrust Litigation*, No. 19-cv-8318 (N.D. Ill.). Sysco has opted out of that class but has not yet filed a direct-action complaint.

In 2019, Sysco's former counsel in the Antitrust Litigations, Boies Schiller Flexner LLP, approached Sysco with a proposal from Burford Capital Ltd. ("Burford"), a multi-billion dollar litigation funding firm. Amended Petition ¶ 21. Burford wanted to invest in Sysco's claims in the Antitrust Litigations, and offered to provide Sysco with non-recourse capital in exchange for a share of the proceeds of any future settlements or judgments. *Id.* In October 2019, Sysco and Burford (through its affiliated entities) entered into a Capital Provision Agreement by which Burford invested in Sysco's *Broilers* Litigation claims. *Id.* ¶ 22. As detailed in Sysco's Amended Petition, that agreement repeatedly and unambiguously set forth the parties' mutual intent and agreement that Sysco would retain complete control over its claims in this action, including specifically their resolution. *See id.* ¶ 22.

Over time, Burford and Sysco expanded the scope of their business deal, as Burford invested in Sysco's claims related to its purchase of pork, beef, turkey, and Keurig K-cup products. *Id.* ¶ 24. The operative funding agreement between the parties is the Second Amended and Restated Capital Provision Agreement (together, with Amendment No. 1 discussed below, the "CPA"), which is the agreement at issue in the *Glaz LLC, Posen Investments LP, and Kenosha Investments LP v. Sysco Corporation* (LCIA No. 225609) arbitration (the "Arbitration") subject to the Vacatur Proceeding. *See* Amended Petition ¶ 24.

After a dispute over Sysco's assignment of certain antitrust claims to Sysco's customers, Burford insisted that the parties' agreement be restructured such that nearly all of the value of any settlement or judgment would be divided between Burford and Boies Schiller. *Id.* ¶ 26. Burford also demanded greater rights relating to settlement, specifically, a limited consent right that was subject to three express restrictions: (i) Burford could not unreasonably withhold consent; (ii) Burford could not seek to impose a commercially unreasonable result; and (iii) Burford could not

interfere with Sysco's outside counsel. *Id.* At that time, Burford expressly affirmed to Sysco that Sysco would remain in complete control of its claims and of the settlement of those claims. *Id.* In other words, Sysco could be potentially liable for damages if it settled without Burford's consent in breach of its contractual obligations, but the ultimate settlement decision remained with Sysco. These changes to the agreement were implemented through an Amendment No. 1 to the CPA, executed March 31, 2022. *Id.* ¶ 27.

**B. After Sysco Negotiates Settlements With Defendants In The Antitrust Litigations, Burford Initiates Arbitration And Obtains An *Ex Parte* TRO Award And A Preliminary Injunction To Enjoin Settlement.**

Throughout 2022, Sysco engaged in settlement discussions with several of its suppliers who are defendants in the Antitrust Litigations. Amended Petition ¶ 29. After many months of arms-length mediations, negotiations (both between outside counsel and in-house counsel for the parties), discussions, and exchanges of offers and counter-offers, in late August 2022, Sysco succeeded in securing desirable settlement offers from certain suppliers, including some defendants in this case (the "Proposed Settlements"). *Id.* Sysco kept Burford informed as settlement negotiations progressed and explained why it believed the Proposed Settlements were reasonable, including that they had the support of Sysco's outside counsel. *Id.* ¶ 30. Burford, however, believed the Proposed Settlements were too low, and in contrast to all of its prior commitments to Sysco and its many and unequivocal public representations, claimed that its limited consent right gave it veto power over any settlement of Sysco's claims in the Antitrust Litigations, including the Proposed Settlements. *Id.* ¶¶ 30-40.

On September 9, 2022, Burford initiated the Arbitration and requested a preliminary injunction to block Sysco from executing the Proposed Settlements. *Id.* ¶ 41. After filing and then dropping several requests for injunctive relief (detailed in Sysco's Amended Petition), more than three months later, Burford eventually filed a Third Application for injunctive relief on

December 12, 2022. *See id.* ¶¶ 41-46. The Third Application requested (i) a TRO immediately enjoining Sysco from executing the Proposed Settlements without Burford's consent; and (ii) a preliminary injunction barring Sysco from settling any of its claims in the Antitrust Litigations without Burford's consent. *Id.* ¶ 46. Burford requested that the Tribunal issue the order on an *ex parte* basis, "without waiting for a response from Sysco." *Id.* The arbitral tribunal then issued an award granting Burford's request for a TRO less than 48 hours later (the "TRO Award"), without ever affording Sysco an opportunity to submit a substantive opposition (and indeed affirmatively barring Sysco from presenting evidence in opposition to the TRO), and enjoined Sysco from executing the Proposed Settlements. *See id.* ¶¶ 46-51.

The Tribunal permitted Sysco to oppose the request for a preliminary injunction sought by Burford in its Third Application, and eventually held an evidentiary hearing on that request on February 6-7, 2023, but did not issue a ruling until more than a month later, on March 10, 2023, by which time Sysco had been subject to the *ex parte* TRO Award for nearly three months, a virtually unheard-of duration. *Id.* ¶¶ 59-62. In its March 10, 2023 ruling, the Tribunal granted Burford's request for a preliminary injunction (the "PI Award") which extended the prohibition on Sysco settling its antitrust claims until the conclusion of the Arbitration, which is unlikely to take place before the end of this year, and may take far longer to resolve.

Sysco initiated the Vacatur Proceeding on March 8, 2023 (days before the expiration of its statutory deadline to do so), requesting vacatur of the TRO Award. On March 20, 2023, Sysco amended its petition to seek vacatur of the PI Award, which replaced the TRO Award. In brief, the PI Award violates several of the most fundamental public policies underlying our judicial system—including party control over litigation and settlement—and should be vacated under the Federal Arbitration Act ("FAA"). *See* Amended Petition ¶¶ 64-65. Absent relief on Sysco's

5

Amended Petition, Sysco will be compelled against its will to take the Antitrust Litigations—including this case—as far as Burford forces it to go, including potentially all the way to a jury verdict. *Id*. ¶ 65.

## ARGUMENT

**A. The Court Should Reassign The Vacatur Proceeding To This Court.**

Pursuant to Local Rule 40.4(c), a later-filed case may be reassigned to the judge hearing an earlier-filed case if (1) the cases are "related," *see* L.R. 40.4(a), and (2) the conditions for reassignment are met, *see* L.R. 40.4(b). The Seventh Circuit has encouraged reassignment as "[b]y far the best means of avoiding wasteful overlap when related suits are pending in the same court." *Blair v. Equifax Check Servs.*, 181 F.3d 832, 839 (7th Cir. 1999). "The decision to reassign a case as related falls within the Court's sound discretion." *Urb. 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 2019 WL 2515984, at *3 (N.D. Ill. June 18, 2019) (Durkin, J.). Both conditions for reassignment are met here.

1. The Vacatur Proceeding and this Action are "related."

This Action and the Vacatur Proceeding are "related" because they "involve some of the same issues of fact or law." *See* L.R. 40.4(a)(2). Local Rule 40.4(a)(2) "does not demand a complete identity of legal and factual issues; rather, [for reassignment to be appropriate,] the cases must 'involve *some* of the same issues of fact or law.'" *Sha-Poppin Gourmet Popcorn, LLC v. JP Morgan Chase Bank, N.A.*, 2020 WL 8367421, at *2 (N.D. Ill. Sept. 4, 2020).

Both cases certainly involve some of the same facts, as the resolution of Sysco's antitrust claims against the *Broilers* defendants is at issue in both cases—directly in this Action, where Sysco is pursuing those claims, and indirectly in the Vacatur Proceeding as well because of the restraint placed on Sysco's settlement of this Action. Resolution of the Vacatur Proceeding in

Sysco's favor would almost immediately result in Sysco resolving certain of its claims in this Action by settlement (assuming the settlement offers remain on the table, despite the passage of several months since Sysco was first blocked from settling) and will significantly facilitate the resolution of Sysco's claims against those defendants with whom it has not been able to pursue settlements or has not yet engaged in settlement negotiations.

The Vacatur Proceeding will have a profound effect on this Action. Until the PI Award is vacated in the Vacatur Proceeding, Sysco cannot resolve its claims at reasonable levels, and may well be forced to take this Action to trial and unnecessarily waste significant judicial resources on claims that should and would have settled long before. As a practical matter, the pre-trial resolution of certain (and potentially all) of Sysco's claims in this Action therefore likely hinges on resolution of the Vacatur Proceeding. As the Court has noted, cases are related not only if "legal rulings" and "factual findings" in one case would impact the other, but also where "*settlements* regarding any of the claims will undoubtedly impact the others." *In re Broiler Chicken Antitrust Litig.*, 2020 WL 5648304, at *2 (N.D. Ill. Sept. 22, 2020), vacated on other grounds, 2021 WL 5504762 (N.D. Ill. Oct. 15, 2021) (emphasis added).

2. The conditions for reassigning the Vacatur Proceeding are met.

Each of the four conditions for reassignment pursuant to L.R. 40.4(b) is met here. *First*, in satisfaction of L.R. 40.4(b)(1), both cases are pending in this Court.

*Second*, this Court's handling of both cases is likely to result in a substantial saving of judicial time and effort. *See* L.R. 40.4(b)(2). This Court is well-positioned to administer both cases together, given its familiarity with this litigation, which has been pending before this Court for several years, and the impact of the Vacatur Proceeding on Sysco's ability to settle certain (and potentially all) of its claims in this Action. *See, e.g.*, *Gatreaux v. Chi. Hous. Auth.*, 2013 WL

5567771, at *4 (N.D. Ill. Oct. 9, 2013) (finding that reassignment would save significant judicial resources where court was already familiar with the long history of the earlier-filed proceeding); *Urb. 8 Fox Lake Corp,* 2019 WL 2515984, at *3 (reassigning case where court "ha[d] [already] invested significant time to understand" the relevant issues). Reassigning the Vacatur Proceeding would also allow this Court to efficiently manage and coordinate the two interrelated proceedings. *See Gatreaux*, 2013 WL 5567771, at *4 (reassignment would save substantial judicial time and effort by having one judge address overlapping issues simultaneously).[2] As the Court is aware, Sysco requested a stay of this action shortly after filing the Vacatur Proceeding to allow Sysco time to secure replacement counsel, an effort that has been frustrated by the Respondents in the Vacatur Proceeding. *See* ECF No. 6339. These interrelated cases have therefore already raised issues that would benefit from coordination by one judge, and likely will continue to do so moving forward.

*Third*, reassignment will not substantially delay the proceedings here. *See* L.R. 40.4(b)(3) ("the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially"). Sysco's claims in this Action are in Track 2, for which Defendants' motions to dismiss are pending. There may be additional discovery following the Court's resolution of those motions to dismiss, and no trial date for the Track 2 plaintiffs has been set. The Court could therefore very likely resolve Sysco's claim in the Vacatur Proceeding, which is a summary proceeding, long before the Track 2 claims are

---

[2] Additionally, because Burford is invested in multiple claims in this Action, the issues relevant to Sysco's claim in the Vacatur Proceeding may be relevant to this Court's management of this Action more broadly, should Burford assert similar rights against other parties. It is Sysco's understanding and belief that there are provisions in Burford's other funding agreements which are identical or parallel to provisions in the funding agreement between Burford and Sysco that Burford has attempted to use to control Sysco's litigation of its claims, and others which Burford may seek to use to seize total control over both litigation and settlement.

trial-ready. *See Sha-Poppin Gourmet Popcorn, LLC*, 2020 WL 8367421, at *3 (reassignment will not delay cases because none has progressed beyond the beginning of briefing motions to dismiss the complaint); *Urb. 8 Fox Lake Corp*, 2019 WL 2515984, at *3 (no delay from reassignment where parties had only engaged in limited discovery). And, in any event, the Court could resolve the claim in the Vacatur Proceeding in parallel to the claims in this Action.[3] For that matter, it is undeniable that resolution of the Vacatur Proceeding in Sysco's favor would speed resolution of this case, since Sysco would be able to execute the Proposed Settlements with certain defendants and would not be restrained from negotiating amicable resolutions with the others.

*Fourth*, the two cases are susceptible of disposition in a single proceeding. *See* L.R. 40.4(b)(4). As discussed above, the issues in this Action and in the Vacatur Proceeding are intertwined, and the Court could efficiently administer both together. *Cf. Urb. 8 Fox Lake Corp.*, 2019 WL 2515984, at *4 (party seeking reassignment "need only show that the two actions are susceptible to be disposed of together, not that they will be"); *Fairbanks Cap. Corp. v. Jenkins*, 2002 WL 31655277, at *3 (N.D. Ill. Nov. 25, 2002) (Local Rule 40.4(b) requires only a finding that the cases are "capable" of determination in a single proceeding). The Vacatur Proceeding will require the Court to address some distinct legal issues—most notably the public policy implications of a litigation funder controlling Sysco's claims and an arbitral tribunal's injunction blocking settlement of federal litigation—but those issues relate to this Action and in any event militate in favor of reassignment. *See, e.g.*, *Freeman v. Bogusiewiz*, 2004 WL 1879045, at *2 (N.D. Ill, Aug. 11, 2004) (reassignment proper where cases are "similar" and "can be handled more efficiently in one proceeding," even where they allege some distinct factual and legal

---

[3]     The two tracks in this Action already show how related actions can move in parallel. The Track 1 and Track 2 claims are at different stages and involve some different issues, but the Court is progressing both in tandem.

theories). Sysco has shown that there are overlapping facts and parties in both cases, and that for several reasons—namely that without resolution of Sysco's Amended Petition in the Vacatur Proceeding, Sysco's claims in this case cannot be resolved, as Sysco remains restrained from settling them by the PI Award and the Tribunal—the two cases are better handled by the same judge.[4]

The conditions of Local Rule 40.4(a) and (b) are therefore met, and Sysco respectfully requests that the Court reassign the Vacatur Proceeding.

## B. The Court Should Exercise Its Broad Discretion To Consolidate This Action And The Vacatur Proceeding.

"If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). The court has "broad discretion in determining whether to consolidate cases." *Unified Messaging Sols., LLC v. United Online, Inc.*, 2013 WL 1874211, at *4 (N.D. Ill. May 3, 2013); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2383 (3d ed. 2022) ("The district court is given broad discretion to decide whether consolidation under Rule 42(a) would be desirable . . . ."). Courts find that consolidation is warranted where (i) the two cases involve "a common question of [] fact," Fed. R. Civ. P. 42(a); (ii) consolidation will "promote judicial economy and efficiency," *SJ Props. Suites, BuyCo, EHF v. Dev. Opportunity Corp.*, 2009 WL 3790009, at *1 (E.D. Wis. Nov. 12, 2009); and (iii) the party opposing consolidation will not be prejudiced, *Am. Photocopy Equipment Co. v. Fair (Inc.)*, 35 F.R.D. 236, 237 (N.D. Ill. 1963). The grounds favoring consolidation are all present here.

---

[4] While it is theoretically possible that settlement can be achieved in this Action even if the Vacatur Proceeding is unsuccessful, in reality, it is unlikely that any defendants would meet Burford's demands.

10

*First*, the two cases present common issues of fact. *See* Fed. R. Civ. P. 42(a). The dispute between Sysco and Burford is based on each of their respective assessments of the value of Sysco's claims in the Antitrust Litigations; as a result, that dispute is inextricably intertwined with the facts of the antitrust cases, including the *Broilers* Litigation. Knowledge of the facts and procedural status of the Antitrust Litigations may be relevant and helpful to the resolution of Sysco's claims in the Vacatur Proceeding. Moreover, Burford has begun making demands regarding how Sysco litigates its cases day-to-day, including what procedural motions it may file in the Antitrust Litigations—to which Burford is not even a party—based on its assessment of whether Sysco's actions sufficiently increase the value of its claims. Amended Petition ¶¶ 70-71. Given that, an understanding of the facts of the *Broilers* Litigation is helpful to the resolution of Sysco's Amended Petition. More generally, and as discussed above, both cases concern Sysco's ability to resolve its claims in this case. *See supra* part A.1. If this Court were to grant Sysco's Amended Petition in the Vacatur Proceeding, certain of Sysco's claims in this Action would be resolved by settlement shortly thereafter (and Sysco would become able to negotiate settlement of its remaining claims)). *See In re Broiler Chicken Antitrust Litig.*, 2020 WL 5648304, at *2.

*Second*, consolidation of the two cases would promote judicial economy. *See Sylverne v. Data Search N.Y., Inc.*, 2008 WL 4686163, at *1 (N.D. Ill. May 28, 2008) (court should consider whether the proposed consolidation would promote convenience and judicial economy). This Court is directly affected by the Tribunal's PI Award, which saddles this Court with managing litigation between parties that wish to settle but cannot, and therefore this Court is best positioned to address those implications. Indeed, the PI Award received a rare dissent, in which the dissenting arbitrator (the sole U.S.-based arbitrator on the Tribunal) expressed consternation that "the federal courts will have to continue to devote judicial resources to these cases which may now go to trial

11

notwithstanding the parties' desire to settle. The waste of resources is palpable." PI Award Dissent ¶ 6 (Vacatur Proceeding, ECF No. 19-3). Furthermore, consolidating the cases would allow this Court to bring to bear its substantial experience presiding over *Broilers* to efficiently resolve both sets of interrelated claims. In addition, consolidation would best position the Court to resolve Sysco's claims in the Vacatur Proceeding in the context of *Broilers* more generally, which would allow the Court to minimize wasted judicial resources from the arbitral tribunal's order forcing Sysco to litigate against its will.

Furthermore, the arbitral tribunal's interpretation of the CPA to broadly allow Burford to block any settlement with which it disagrees has far-reaching implications for all of the Antitrust Litigations. The PI Award imperils not just the settlements directly at issue in Sysco's Petition, but also many other potential settlements down the line. As the Court that would directly bear the brunt of managing the ongoing litigation should Sysco be blocked from settling altogether (as Burford will likely demand if the PI Award stands), this Court should resolve the issues with the PI Award as part of managing its *Broilers* docket more generally.

*Third,* the other parties in these cases will not suffer prejudice if the two actions are consolidated. The *Broilers* Defendants will benefit from consolidation, as resolution of the Vacatur Proceeding will free Sysco to resolve its claims against them in a manner that reflects the merits of Sysco's claims rather than a funder's target return on an investment imposed without regard for case developments or the interests of justice.[5] And all of the *Broilers* parties will benefit

---

[5]        Should the Court nonetheless find that other parties in this action may be prejudiced if the Vacatur Proceeding be consolidated with this action for trial purposes, the Court could consolidate the cases for pre-trial purposes as "a desirable administrative technique" to allow the cases to efficiently progress through pre-trial proceedings in tandem, while reserving the decision of whether they should be tried together. *See* 9A Wright & Miller, *Federal Practice & Procedure* § 2382 (3d ed. 2022); *see also In re Broiler Chicken Antitrust Litig.*, 2020 WL 5648304, at *1-3. Helpfully, there is likely no trial for the Vacatur Proceeding (and certainly no jury trial)—there are no disputed issues of fact known to Sysco and

from having Sysco's Amended Petition resolved by this Court, with the benefit of its substantial experience presiding over *Broilers* more generally.

The resolution of the Vacatur Proceeding is more than a discrete issue involving Sysco's settlement with certain suppliers to the Antitrust Litigations—rather, the resolution of the Vacatur Proceeding has the possibility of impacting multiple parties in this sprawling litigation.[6]  To have the Vacatur Proceeding consolidated with this Action and resolved by this Court will give all the parties involved guidance and clarity and promote judicial economy, all while ensuring no party is prejudiced.  Sysco therefore respectfully requests that the Vacatur Proceeding be consolidated with this Action.

Consolidation also avoids protracted litigation concerning the Court's subject matter jurisdiction, which Burford has threatened Sysco with in an effort to keep its conduct hidden from the scrutiny of the Court most affected by it.  While Sysco is confident that this Court has subject matter jurisdiction under both 9 U.S.C. §§ 202-203 and 28 U.S.C. § 1332(a)(2), *see* Amended Petition ¶¶ 7-14, consolidation and the exercise of supplemental jurisdiction (which this Court undeniably has the right to do) will avoid the waste of judicial resources that would result from Burford's threatened motion practice.  *See Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) ("[a] loose factual connection is generally sufficient" to support supplemental jurisdiction.").

---

thus it will almost certainly be decided in an expedited and summary fashion by the Court on a paper record.

[6]      "[A] defendant has a right to buy his peace," *Filipiak v. Zintak*, 264 Ill. App. 392, 396 (1st Dist. 1932) (citation omitted), and by preventing defendants in the Antitrust Litigations from settling with Sysco on terms all parties have found reasonable after nearly a year of vigorous negotiations and multiple mediations (belying Burford's spurious assertions that Sysco accepted a low-ball settlement merely because the consequences would be borne by Burford), Burford is directly affecting the rights and interests not just of Sysco, but of other parties as well.

## CONCLUSION

Sysco respectfully requests that the Court (1) reassign the Vacatur Proceeding to this Court

and (2) consolidate the Vacatur Proceeding with the above-captioned action.

Respectfully submitted,


By:  /s/ Jared Kosoglad
Jared S. Kosoglad (6286633)
JARED S. KOSOGLAD, PC
111 N. Wabash #3166
Chicago, IL 60602
Tel: (312) 513-6000
jared@jaredlaw.com

-and-

Jeffrey A. Rosenthal (*pro hac vice*)
Lina Bensman (*pro hac vice*)
CLEARY GOTTLIEB STEEN &
    HAMILTON LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000 (Telephone)
jrosenthal@cgsh.com
lbensman@cgsh.com


Christopher P. Moore (*pro hac vice*)
CLEARY GOTTLIEB STEEN &
    HAMILTON LLP
2 London Wall Place
London EC2Y 5AU
United Kingdom
+ 44 20 7614 2200 (Telephone)
cmoore@cgsh.com

*Attorneys for Sysco Corporation*