**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE BROILER CHICKEN ANTITRUST LITIGATION** | Case No: 1:16-cv-08637 |
| | Hon. Judge Thomas M. Durkin |
| THIS DOCUMENT RELATES TO: | Magistrate Judge Jeffrey T. Gilbert |
| *September 12, 2023 Track 1 Trial Parties* | |

<u>**JOINT SUBMISSION IN RESPONSE TO ECF NO. 6642**</u>

In response to the Court's Order (ECF No. 6642), the remaining Track One Trial Parties present this joint submission related to the upcoming trial set to begin on September 12, 2023, accounting for the parties and claims that the Court dismissed from Track One in the summary judgment decision.

I.    <u>**PREAMBLE**</u>

A.    **Plaintiffs' position[1]:**

Defendants' inclusion of a "preamble" is inappropriate and inconsistent with the parties' two prior submissions (ECF Nos. 6613 and 6624) and the Court's minute entry order (ECF No. 6642) instructing the parties to "submit a revision of the report they filed on 6/23/2023" which lacked a preamble.

In addition, Defendants spend much of their nearly 15 pages in this submission on argument and rehashing the Court's just-issued summary judgment decision—which, Defendants fail to acknowledge, held that a reasonable jury could find that all of them (approximately 80% of

---

[1] "Plaintiffs" refers to Direct Purchaser Plaintiffs and Track 1 DAPs.

the market) conspired for many years to restrain their production of chicken and thereby collectively raise their prices, in violation of the antitrust laws.

Defendants repeatedly assert that Plaintiffs intend to "redo" their expert reports. This is not only untrue, but a transparent attempt to avoid the trial that they failed to escape on summary judgment. Plaintiffs have absolutely no need nor intention to materially change their expert reports. The theories and models on which the Court held that a reasonable jury could find for Plaintiffs are the same theories and models on which Plaintiffs' expert reports have long been predicated. To the extent that some Plaintiffs may conform their expert reports to the summary judgment order—which is customary in antitrust cases and consistent with Rule 26—such conformity could be done quickly, would be based on the same models, and is no excuse for Defendants to avoid the trial date.

Finally, at 1:00 p.m. CT on July 7, 2023, one hour before the parties agreed to file this Joint Submission, Defendants provided Plaintiffs with their never-before-seen proposed revised pre-trial schedule—a schedule they claim "cannot be finalized" and may be subject to further revisions. Plaintiffs are considering Defendants' proposed revised pre-trial schedule, but the parties have not met and conferred about it and Plaintiffs are therefore not in a position to agree to it at this time. Plaintiffs will supplement this filing to provide their position regarding the proposed revised schedule to the Court and Defendants as soon as possible. Plaintiffs, like Defendants, respectfully request that the Court should schedule a telephonic status conference at its earliest convenience to address the pre-trial schedule, trial schedule, and related issues set forth in this submission.

B.     **Track One Trial Defendants' position[2]:**

---

[2] "Track One Trial Defendants" refers to the following Defendants: House of Raeford, Keystone, Koch, Mountaire, OK Foods, Peco, Pilgrim's Pride, Sanderson Farms, and Tyson.

In its recent summary judgment decision, the Court rejected Plaintiffs' theory of a 20-member, industry-wide, multi-pronged conspiracy. In doing so, it held that no reasonable juror could find that: (i) a group of suppliers accounting for over 20% of the industry conspired to restrict output, (ii) that any supplier agreed to manipulate the Georgia Dock, or (iii) that any parallel anticompetitive conduct took place after 2012, creating a relevant period significantly shorter than was originally pled or put forward by Plaintiffs' liability and damages experts. While some of Plaintiffs' claims survived summary judgment (and the Court's observation that any evidence of agreement is "weak . . . in this case") those remaining claims and the economic and damages theories underlying them no longer fit what's left of Plaintiffs' case. Plaintiffs, realizing their liability and damages theories are irreconcilable with the Court's summary judgment decision, have now indicated their intent to fix the problem by "amending expert reports to conform to the Court's Summary Judgment Order," seven years into the case and on the eve of trial. Such revisions should not be permitted. The Track One Trial Defendants respectfully request a status conference at the Court's earliest convenience to discuss the ramifications of the Court's summary judgment decision on the pre-trial schedule and the trial, and specifically Plaintiffs' apparent intent to change their experts' opinions on the eve of trial.

In the meantime, Defendants submit the revised report below in compliance with the Court's request.

## II. **TRIAL LENGTH**

### A. **Plaintiffs' position:**

Plaintiffs' June 23 proposal provided the Court with a chart of a proposed number of trial hours based on the number of Defendants remaining in the case. ECF No. 6624 at 2. In response to the Court's order and taking into consideration the Court's summary judgment decision,

Plaintiffs propose a revised chart to guide the Court's decisions on the appropriate number and allocation of hours for trial:

| # of Defendants | # of hours to Plaintiffs | # of hours to Defendants | # of total hours |
|---|---|---|---|
| 11 | 108 | 112 | 220 |
| 10 | 104 | 106 | 210 |
| 9 | 100 | 100 | 200 |
| 8 | 96 | 94 | 190 |
| 7 | 92 | 88 | 180 |
| 6 or fewer | 88 | 82 | 170 |

Plaintiffs propose 220 hours of total trial time if all eleven Defendants remain for trial. At the high end, this proposal estimates that the case would conclude and be presented to the jury in early December, with sufficient time for deliberations to conclude by the winter holidays. At the low end of six Defendants or fewer, Plaintiffs' proposal would send the case to the jury no later than November 1, leaving ample time for a verdict before Thanksgiving. As with Plaintiffs' prior proposal, the time allocation between the 51 Direct Action Plaintiffs and the Direct Purchaser Plaintiff Class reaches parity with Defendants at nine Defendants remaining, and Plaintiffs are allocated more time with eight or fewer Defendants. The balance of allocation between Plaintiffs and Defendants is still lopsided in favor of Defendants, even with Plaintiffs' proposal, as Plaintiffs bear the burden of proof and will necessarily have to cover more ground in their case-in-chief (*e.g.*, industry background, participation of each Defendant in the conspiracy, liability and damages experts, etc.) and rebuttal (responding to defense witnesses and experts) than will Defendants, who merely have to prevail on but one legal element of a claim to win at trial. This explains why in fairness, Plaintiffs should be allocated more trial time than Defendants. As set forth in Plaintiffs' June 23 submission, allocating more time to Plaintiffs aligns with the realities of the trial in terms

4

of the burden of proof and finds strong support in the case law and legal literature. *See* ECF No. 6624 at 3–4 (citing and explaining authorities reprinted in footnote below).[3]

An essential element of Plaintiffs' proposal is that Defendants not be permitted to disrupt, dilute, or delay Plaintiffs' case-in-chief by compromising the jury's memory and understanding of Plaintiffs' presentation. To that end, Plaintiffs request, in the interest of fairness and efficiency, that when Plaintiffs play deposition video excerpts from unavailable witnesses in Plaintiffs' case-in-chief, Defendants stay within the strict confines of Federal Rule of Evidence 106 and limit their counter-designations played during Plaintiffs' case-in-chief to those necessary under Rule 106. Any counter-designations Defendants propose to present to the jury that stray outside the narrow scope of Rule 106 should be allowed only in *Defendants'* case. The case law and leading legal treatise support these limits on Defendants' use of counter-designations .[4] The reality is that, absent

---

[3] Nora Freeman Engstrom, *The Trouble with Trial Time Limits*, 106 GEO. L.J. 933, 972 (2018) ("In fact, cutting trial time down the middle is often patently *unfair* because the plaintiff has the burden of proof and almost necessarily must amass more evidence than the defendant to prevail."); *id.* at 972-73 ("The idea is: It is harder to build a house than to tear down a house—and if the builder and the wrecking crew are given equal time, the builder is bound to be disadvantaged."); Elizabeth G. Thornburg, *The Managerial Judge Goes to Trial*, 44 U. RICH. L. REV. 1261 (2010) at 1305-06 (cutting down trial time is "more likely to have an adverse effect on the party with the burden of proof, the one whose role in the adversary process requires the production of evidence—the one who loses when the evidence is in equipoise."); *In re: 3M Combat Arms Earplug Products Liability Litigation,* Case No. 3:19-md-02885-MCR-GRJ, ECF No. 1797 (N.D. Fla.) (in later trials splitting time 55 hours for plaintiff and 45 hours for defendant; noting the "decision is based on the Court's consideration of the parties' presentations in the first two bellwether trials and Plaintiff's need to educate the jury early in the trial, as indicated."); *In re HIV Antitrust Litig.*, No. 3:19-cv-02573, ECF No. 1835 at 2 (N.D. Cal. May 11, 2023) (38 hours for plaintiffs and 32 hours for defendants; ) *In re Zetia (Ezetimibe) Antitrust Litig.,* MDL No. 2:18-md-02836, ECF No. 2041 at 4 (E.D. Va. Apr. 5, 2023) (57% of trial time to three different plaintiff groups, and 43% to defendants); *In re: Ranbaxy Generic Drug Application Antitrust Litig.,* No. 19-md-02878-NMG, ECF No. 545 at *1 (D. Mass. Jan. 25, 2022) (plaintiffs allocated 34 hours and defendants allocated 30 hours).

[4] *See* 21A Charles A. Wright & Arthur R. Miller *Federal Practice and Procedure* § 5077.2 (2d ed.) (explaining purpose of the Federal Rule of Evidence is only to prevent the use of truncated evidence to mislead the jury) ("Since acceleration can disrupt the proponent's case, it is arguably the most extreme remedy available to cure potential misleading of the jury from truncated evidence."). To determine when an opponent's proposed counter-designations should be presented to the jury, courts balance the adequacy of a later repair against the disruption to the proponent's case by immediate introduction of completing evidence, and delayed completion is fair when introduction of the completing evidence would disrupt or dilute the proponent's presentation of its case. *Id.*; *see also Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 199 F.R.D. 487, 491 (E.D.N.Y. 2001) ("The potential prejudice defendants face by

this limitation, Defendants will have an incentive to use, and based on our experience in other trials we believe will use, more of their time to play video clips in Plaintiffs' case-in-chief than they would in their own defense case because doing so may delay, dilute, or distort Plaintiffs' presentation.

In summary, Plaintiffs submit that this proposal fairly allocates hours between the parties on a sliding scale based on the number of Defendants remaining in the case, with Defendants receiving more hours if there are 10 or more Defendants, the parties receiving equal hours with nine Defendants, and Plaintiffs receiving more hours with eight or fewer Defendants.

B. **Track One Trial Defendants' position:**

*Impact of the Court's Summary Judgment Decision.*

Whether or not Plaintiffs will admit it, the Court's decision necessarily limited the scope of relevant evidence at trial. To provide a few illustrative examples:

For six of the producer Defendants, the Court concluded that "there is simply a lack of evidence that these defendants communicated with their competitors, which would permit a reasonable inference of agreement." Slip Op. at *43. Because the Court determined those producers did not participate in the alleged conspiracy, those companies' communications are irrelevant to the remaining claims. *See generally* Fed. R. Evid. 402, 403. And there should generally be no need for Plaintiffs to call, live or by video testimony, any of the 47 individuals from those companies on Plaintiffs' witness list, 38 of whom were specifically identified as witnesses who "**will** be called live." Ex. 1, Plaintiffs' Preliminary Witness List (emphasis added).

Similarly, the Court ruled that Agri Stats was not part of the alleged conspiracy, which should substantially limit the evidence Plaintiffs can present about Agri Stats, including from the

---

presenting video clips later in the trial is outweighed by the importance to plaintiff of manageably presenting this evidence to the jury.").

six Agri Stats witnesses on Plaintiffs' list (two of whom were "will call"). Ex. 1. Plaintiffs should not be permitted, for example, to call or otherwise discuss Mike Donohue from Agri Stats or Sue Trudell from EMI, now that the Court has concluded that "Donohue's and Trudell's communications with Defendants were general market analysis based on publicly available information," and that "it is unreasonable to infer that they also facilitated communication about a supply reduction conspiracy." Slip op. at *60-61.

The Court's summary judgment ruling also limited Plaintiffs' case to the two "discrete periods" for which the Court found there was sufficient evidence for Plaintiffs to proceed to trial against certain defendants: "the production decrease in 2008-09," and "the production decrease in 2011-12." *See* Slip Op. at 65. "[W]hen the evidence of agreement is as weak as it is in this case, parallel anticompetitive conduct is necessary to satisfy the preponderance standard of proof," and the Court ruled there was no such conduct outside of those two limited time periods. *See id.* at 65-70. Accordingly, Plaintiffs should not be permitted to introduce evidence from outside of those two discrete time periods in support of what remains of their liability or damages case.

Finally, now that the Court has dismissed Plaintiffs' claims relating to the Georgia Dock, the purported "overarching" conspiracy, and breeder hen slaughter in 2015 and 2016, none of those matters are relevant to the upcoming trial and Plaintiffs' evidence relating to each of those subjects should be excluded.

Importantly, however, while the Court's summary judgment decision substantially narrows the Plaintiffs' claims and the field of relevant evidence Plaintiffs may use to support them, it has a much more limited impact on the defenses that are likely to be presented at trial. For example, evidence about the other producers' *independent production decisions* during the 2008-09 and 2011-12 periods remains relevant. The Track One Trial Defendants must be able to use that

evidence to show they made similar production decisions in response to the same prevailing economic conditions as producers who were not part of the alleged conspiracy. The remaining Defendants should also be permitted to show how their individual conduct was consistent with their individual practices—including before, during, in-between, and after the two discrete time periods now at issue—to rebut any suggestion that they were engaged in parallel anticompetitive conduct. *See Kleen Prods. LLC v. Georgia-Pacific LLC*, 910 F.3d 927, 937 (7th Cir. 2018) ("A continuation of a historic pattern . . . does not plausibly allow one to infer the existence of a cartel.").

During the parties' conference that preceded this filing, the Track One Trial Defendants raised these issues with Plaintiffs and explained how they impact the scope of the upcoming trial. In response, Plaintiffs suggested their case remained unaffected by the Court's summary judgment ruling and their plans for trial have not changed in any material way—while indicating an intention to re-do their expert reports as this late stage. Indeed, as detailed below, they insisted that the parties should stick to their previous pre-trial schedule and need not modify their lists of deposition designations and exhibits (which include, among other things, evidence that is completely irrelevant to the case, including reams of exhibits and testimony relating solely to the Georgia Dock). Defendants respectfully submit that Plaintiffs' view is untenable and fundamentally inconsistent with the Court's summary judgment decision.

**_Track One Trial Defendants' Trial Time Proposal._** Considering what remains in Plaintiffs' case following the Court's summary judgment decision, Track One Trial Defendants estimate that the time needed to present their case could be reduced from 165 to 150 hours—an approximately 10% reduction from Defendants' June 23 submission.[5] Plaintiffs should need no

---

[5] Defendants' previous submission included a specific proposal for trial of only the supply restriction claims: "If only the supply restriction claims are tried, Defendants estimate that the case could be tried in

more than 100 hours to present their case. Pilgrim's, Tyson, and Keystone also note that the time allocated to both sides could be further reduced if the Court were to (1) grant the pending motion to reassign Plaintiff AWG to Track Two, ECF Nos. 6508, 6509, which would remove two parties (Pilgrim's and AWG) and several live witnesses, including their four respective experts; or (2) clarify that state law claims will not be part of the Track 1 trial, ECF No. 6612, which would eliminate the complications associated with requiring Plaintiff AWG to present proof concerning pass-through of alleged overcharges, as would be required for at least AWG's claims under Tennessee state law. *See Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 518 (Tenn. 2005).

As in their prior submission, Track One Trial Defendants' proposal reflects three overriding considerations. First, Defendants' proposal on Plaintiffs' 100-hour time limit reflects Plaintiffs' consistent position that they would need no more than 112 hours to try an overarching conspiracy case (including supply restriction and Georgia Dock claims, for the entire alleged conspiracy period), against nine Defendants. *See* ECF 6624 at 2 (proposing 112 hours split equally for a nine-defendant case); ECF 6613 at 3 ("Plaintiffs' recommended time of 200 trial hours split equally between the parties . . . based on claims presently at issue and the parties currently in the case."). While Plaintiffs' sliding scale from their most recent submission contemplated that the number of defendants could be reduced "through settlement or otherwise," their proposal did not contemplate that the Court would rule there was insufficient evidence to proceed to trial against roughly one third of the producer defendants (accounting for more than 20 percent of the broiler chicken market) and Agri Stats or that the Georgia Dock would be removed from the case. That, and the narrowing of the relevant time frame, warrant an approximately ten percent reduction of

265 total hours. Of those 265 total hours, Plaintiffs would receive 100 hours and Defendants would receive 165 hours."

Plaintiffs' requested time, providing them with the 100 hours they have previously represented was ample for presentation of their case.

Second, as the Court stated, "trial hours must be weighted towards Defendants." (ECF 6617, Minute Order). As discussed in Defendants' June 9, 2023 submission, Plaintiffs' presentation of industry-wide, aggregated metrics and snippets of emails and other documents requires less time for Plaintiffs to present their case than will be required for each Defendant to introduce their company to the jury and present the specific facts applicable to their unique business and market conditions through individual company fact witnesses and potentially individual experts.[6] Although the landscape of which parties, claims, and theories are left for trial has changed based on the Court's summary judgment decision, 150 hours for Defendants provides the minimum necessary time to present the actual facts and data about each remaining Defendant necessary to counter Plaintiffs' presentation. Indeed, Plaintiffs have represented that they "will call" all five of their non-Georgia-Dock expert witnesses, two "Rule 1006 Witness[es]," and three Plaintiff fact witnesses (in addition to the many more they have identified as "may call"). Accounting for the time needed to cross-examine just those ten "will call" witnesses, and to present Defendants' five joint expert witnesses in response (not to mention openings, closings, deposition video, and weekly mini-summaries), each remaining individual Defendant would have a little more than a day for all of their fact and individual expert witnesses. The roughly ten percent reduction

---

[6] In the June 9, 2023 submission, Plaintiffs cited two cases to argue that they are at least entitled to equal trial time as Defendants, but those decisions are easily distinguishable. (ECF 6613 at 2.) Neither case involved allegations of a conspiracy spanning several years and encompassing more than ten companies; instead, both decisions come from reverse payment cases arising from patent litigation settlements related to pharmaceuticals and involved no more than three defendants. See In re Zetia (Ezetimibe) Antitrust Litig., MDL No. 2:18-md-02836, ECF No. 2041 (E.D. Va. Apr. 5, 2023); In re HIV Antitrust Litig., No. 3:19-cv-02573, ECF No. 1835 at 2 (N.D. Cal. May 11, 2023). Moreover, each of the trials involved both direct purchaser plaintiffs and end-payor plaintiffs, which presented different issues for the plaintiffs' presentation than this case where, as the Court stated, Plaintiffs' claims have a "relative unity of theory[]." (ECF 6617.)

from 165 hours to 150 hours is also commensurate with the reduction in Plaintiffs' proposed hours from 112 to 100.

Third, and as with prior proposals, properly limiting the Plaintiffs' presentation (including by not permitting Plaintiffs' expert witnesses to "simply spout facts and dress them up *as* opinions," and proffer Plaintiffs' preferred interpretations of Defendants' documents, *see, e.g.*, *Burns v. Sherwin-Williams Co.*, 2022 WL 4329417, at *20 (N.D. Ill. Sept. 18, 2022)) will also enable all Parties to streamline their presentations and respect the jurors' time and attention while also permitting Defendants to present their individual stories in a manner such that trial could still be completed before the Christmas and New Years' holidays with sufficient time for jury deliberations.

Finally, both the Federal Rules of Evidence and Federal Rules of Civil Procedure provide for playing counter-designations as a matter of "fairness," at the election of the adverse party. Fed. R. Evid. 106; Fed. R. Civ. Proc. 32(a)(6). Plaintiffs' proposal to make Defendants wait to play most of their counter-designations would likely require more trial time, as some contextual testimony would need to be repeated to the jury. Playing incomplete video testimony twice would also increase the risk of juror confusion, not decrease it. The lone decision Plaintiffs offer for deviating from the Federal Rules was limited to unusual depositions of a "random sample" of Blue Cross subscribers, not fact witnesses. *See Blue Cross & Blue Shield of N.J., Inc. v. Phillip Morris, Inc.*, 199 F.R.D. 487, 488 (E.D.N.Y. 2001). For "the more usual other depositions of persons with direct knowledge of details relevant to the case," the court ordered the parties to "continue the practice required by the court of reading or playing counter-designations" at the same time. *Id.* at 491.

III.    **PRE-TRIAL SCHEDULE**

   A.    **Plaintiffs' position:**

After weeks of extensive negotiations, on June 9, 2023 the parties to the Track One trial filed a stipulated pre-trial schedule based on the Court-ordered September 12, 2023 trial date. ECF No. 6613-4.[7] Although the schedule was agreed to during the pendency of Defendants' motions for summary judgment, it was submitted without reservations and with the mutual understanding that compliance with these dates and deadlines is essential to allowing trial to proceed in an orderly fashion on September 12, 2023. ECF No. 6613 at 9.

Since its submission, the parties have abided by the stipulated schedule, including compliance with the following substantive deadlines: (1) exchanging initial exhibit lists on June 21, 2023; (2) exchanging preliminary witness lists on June 21, 2023; (3) exchanging affirmative deposition designations on June 23, 2023; and (4) exchanging lists of proposed motions *in limine* on June 30, 2023. The parties spent hundreds of hours completing these projects and each of them are tied to responsive deadlines set forth in the schedule, which lead up to trial.

During the parties' July 6, 2023 conference regarding this submission, Defendants informed Plaintiffs for the first time that they now consider this agreement void and the agreed-upon schedule no longer operative, and they believe the parties must agree to a completely new pre-trial schedule. Defendants also said that they do not intend to comply with any of the pending deadlines in the existing schedule, including upcoming deadlines during the week of July 10 and the month of July. Defendants' attempt to walk back the stipulated pre-trial schedule is improper,

---

[7] The stipulated schedule had three points of minor disagreement regarding the scheduling pre-trial hearings which are reflected in the schedule and do not impact any of the other agreed upon pre-trial deadlines. Id.; see also ECF No. 6613 at 9.

unjustified, and apparently little more than an attempt to disrupt pre-trial proceedings and the September 12 trial date.

The Court's summary judgment order narrowed the scope of the case by dismissing certain claims and Defendants. To the extent that the remaining Defendants believe certain evidence previously contemplated does not belong in the case (their stated concern during the parties' July 6 conference), they can present their position and address these issues in the upcoming pre-trial exchanges that the parties already agreed to. For example, the current schedule already permits Defendants to object to exhibits or deposition designations that they believe should not be admitted at trial. The current schedule also contemplates narrowing of the initial witness lists and exhibit lists, which are not due in their final form until August 4, 2023. Additionally, the Court can conform the Direct Purchaser Plaintiffs' complaint and class definition to its summary judgment order, which will not impact the trial date. In short, the current schedule—which contemplated a pending ruling on summary judgment—will not result in the waiver of any rights or arguments that the parties can make at trial or with respect to appropriate scope thereof, and any legitimate concerns Defendants have can be addressed in the previously agreed-upon pre-trial exchanges.

For these reasons, Plaintiffs cannot agree to Defendants' new position, abandon the agreed-upon pre-trial schedule, and wipe out all of the pre-trial work done to date. Defendants' proposal would take weeks to negotiate, followed by a compressed and disorganized schedule that would undermine and contravene the carefully orchestrated and stipulated pre-trial schedule. Defendants' proposal also would make it impossible to efficiently prepare this case for trial, and would jeopardize the feasibility and organization of the September 12 trial date set by the Court.

Plaintiffs are willing to consider adjustments to previously agreed-upon deadlines where appropriate. For example, upon issuance of the Court's summary judgment order on June 30, 2023,

the parties agreed to exchange their list of proposed motions *in limine* without prejudice to adding motions in response to the summary judgment order. These additional motions can still be accommodated under the current schedule which calls on them to be filed on July 21, 2023 (or with minor adjustments thereto). As set forth above, on July 7, 2023 at 1:00 p.m. CT, Defendants sent Plaintiffs a revised pre-trial schedule which included certain modifications to the pre-trial deadlines. Plaintiffs are considering this newly received proposal on the eve of this filing and will provide the Court and Defendants with their statement of agreement or any changes as soon as possible.

The current schedule can also accommodate the brief amount of time it will take to conform Plaintiffs' expert reports to the Court's summary judgment order without disturbing the September 12 trial date, which is customary in antitrust cases and consistent with Rule 26. Defendants' position makes it clear that they believe the summary judgment order impacted Plaintiffs' expert reports. Plaintiffs are conferring with their expert teams and will propose a schedule for conforming the expert reports as soon as possible.

B. **Track 1 Trial Defendants' position:**

The Court's summary judgment opinion fundamentally changed this case. The Court rejected Plaintiffs' contentions that the alleged supply-reduction conspiracy was industry-wide and facilitated by employees of Agri Stats and EMI. The Court also rejected Plaintiffs' claims of an "overarching conspiracy" that included manipulation of the Georgia Dock, and limited Plaintiffs' supply reduction claims to the 2008-09 and 2011-12 time periods, finding insufficient evidence of parallel anticompetitive conduct during the remainder of what had been Plaintiffs' nearly-decade-long relevant time period.

While the parties' June 9 submission included a largely jointly-proposed pretrial schedule (with three areas of disagreement for the Court's resolution), ECF No. 6613, and both sides have

timely engaged in substantial pretrial exchanges of witness lists, exhibit lists, deposition designations, and potential motions *in limine*, many of those materials related to a case that is no longer being tried, and parties and claims that are now out of the picture.  If the Court believes that this case can even proceed to trial as currently pleaded, the summary judgment decision requires immediate modifications and additions to a now-obsolete pretrial schedule.  *At a minimum*, the summary judgment decision has narrowed the witnesses and documentary evidence that are relevant to Plaintiffs' not-industry-wide, time-limited, supply-reduction claim.   Both sides need to re-do their pretrial exchanges to date, including the parties' witness lists, deposition designations, exhibit lists, and motions in *limine*, to account for the fundamental changes in the case.  Until that is done, it would be an extraordinary waste of time and resources for either side to prepare objections, counter-designations, or other responses to a largely obsolete set of materials.

More importantly for Plaintiffs, the summary judgment decision eliminated many of the bases for Plaintiffs' expert opinions, calling into question whether their case can fairly proceed at all. To illustrate:

- Plaintiffs' entire case was premised on an industry-wide conspiracy comprising 98% of total broiler output.  Plaintiffs' experts' opinions contended that this conspiracy would not have occurred but for this widespread commitment to constrain supply because individual companies would never cut production below competitive levels absent conspiracy since other producers would simply fill the gap in production.  Yet Plaintiffs now have to try a supply reduction case relating to just two discrete periods against a subset of broiler producers[8] which represent

---

[8] The number of trial defendants is actually 9.  Defendants Simmons and Harrison Poultry have reached agreements to settle with all Plaintiffs proceeding to trial in September.

less than 80% of total broiler output with six producers found to be non-conspirators who made independent production decisions inconsistent with Plaintiffs' long-disclosed expert opinions. Plaintiffs' experts often chose to base their analyses on aggregated, industry-wide data, rather than the individualized production data defendants made available in discovery.  Many of those analyses are now fundamentally flawed in a case where over 20 percent of the market, and 6 individual defendants, can no longer be claimed to be part of the alleged conspiracy. And Plaintiffs' experts have offered no explanation as to those 6 producers' conduct, if they were not part of the alleged conspiracy (as the Court has now ruled).

- Plaintiffs' theory of the case revolved around Agri Stats and EMI actively sharing confidential information with the producer defendants to facilitate the necessary monitoring and enforcement of the alleged supply reduction conspiracy.  The theory specifically relied on defendants exchanging information on supply through Agri Stats employee Mike Donohue and EMI employee Sue Trudell, and deanonymizing Agri Stats reports. Now, Plaintiffs cannot argue that Donohue's or Trudell's communications were part of the conspiracy, or argue that deanonymization of Agri Stats reports is evidence of an illicit agreement.  *See* Slip Op. at *55 ("Unlike the evidence of direct exchange of Agri Stats reports by other defendants, deanonymization is not evidence of agreement."); *id.* at *60-61.

- None of Plaintiffs' damages model can be reconciled with or proceed under the Court's summary judgment decision.  Those expert damages analyses depended on conduct that is no longer part of the case.  The now-excluded conduct encompasses time periods (2015-16), subjects (Georgia Dock) and producers (six dismissed

16

defendants) no longer at issue on Plaintiffs' remaining claims. For starters, Plaintiffs' damages experts Carter, Lamb, and McClave offer opinions regarding damages into or through 2019. But the Court rejected Plaintiffs' allegations of parallel anticompetitive conduct other than for the supply reductions in the 2008-09 and 2011-12 periods. Indeed, the Plaintiffs "failed to present evidence that the supply reduction conspiracy was continuing at the same time as the alleged Georgia Dock conspiracy," which purportedly commenced in 2014. Slip Op. at *80. And the Court also expressly rejected Plaintiffs suggestion that the alleged conspiracy persisted in 2015 and 2016. *Id*. at 70 ("The weak evidence of parallel conduct, combined with the paltry evidence of communications indicating agreement, means that a reasonable jury could not find by a preponderance of the evidence that Defendants engaged in a conspiracy during 2015-16."). All of this means Plaintiffs' experts cannot point to actions taken by Defendants after 2012 to claim the effects of the alleged conspiracy lingered through 2019, and it is unclear whether any of Plaintiffs' damages models can account for the shorter time periods now at issue.

- Dr. Carter's damage model is based on estimating a single overcharge from the undivided whole of Plaintiffs' "overarching conspiracy" claims, including the now-dismissed Georgia Dock claims. Dr. Carter did not attempt to calculate damages based only on supply reductions in 2008-09 and 2011-12, much less any such reductions by a subset of broiler producers. Indeed, Plaintiffs previously acknowledged this problematic mismatch between their liability and damages evidence if the Georgia Dock claims were excluded from the case. See Summary

Judgment Hearing Day 1 at 173:12-174:5 (conceding the classes have asserted a single conspiracy, that under *Comcast*, "your damages theory has to match the liability theory. If your damages theory doesn't match your liability theory, that could be an issue; but when you have alleged a single overarching conspiracy, you found statistically significant damages attributable to that conspiracy, as all of the class experts have done, that checks off the box for *Comcast*.").

- Carter and McClave's current models do not fit the liability theory they can take to the jury under the Court's summary judgment ruling. Because those models rely on the sales data of six non-conspirators who have been dismissed from the case, they have no disclosed opinion that matches their surviving liability theory. Similarly, while Dr. Lamb's model is limited to purchases by Plaintiff AWG, it too includes now-dismissed Defendants' sales in its overall calculations and cannot be presented to a jury consistent with the Court's summary judgment ruling. And these defects cannot simply be cured by removing the now-dismissed producers: there is both a shorter time period of relevant conduct *and* a smaller set of producers alleged to have engaged in that limited set of conduct.

Plaintiffs made strategic choices to have experts present broad theories of liability and damages. But the Court's holdings that a jury could not reasonably find that production cuts by numerous former defendants were the product of a conspiracy, and that Plaintiffs' claims can proceed only as to an alleged supply reduction conspiracy by the remaining defendants in two discrete time periods, renders Plaintiffs' expert testimony on antitrust impact and damages irrelevant and inadmissible in the upcoming trial. Surely realizing this, on July 5, Plaintiffs informed that they would be prepared to discuss "a proposed schedule for amending expert reports

to conform to the Court's Summary Judgement Order for any plaintiff that thinks this is necessary." During the July 6 meet and confer, however, Plaintiffs would not confirm whether any Plaintiffs would seek leave to submit new reports, or when they planned to do so.[9] Particularly having failed to provide any disclosures as to which parts of their liability or damages reports they intend to change on the eve of trial, Plaintiffs should not be permitted unilaterally change their expert reports and provide new theories of the case at this late stage.

Defendants reserve all rights to challenge any efforts by Plaintiffs to replead their theory of the case this close to trial. Indeed, if necessary to fully dispose of this Track 1 action, Defendants should be allowed the opportunity to brief the fatal impact of the Court's ruling on the remainder of Plaintiffs' case. Plaintiffs' suggestion that the Court can simply conform the DPPs' complaint and class definition (without any articulation of how the class definition and complaint will be altered) further reflects the fundamental impact of the Court's decision on the claims as asserted and upon which the experts opined.

To the extent that the Court would consider allowing Plaintiffs to replead this case and submit new expert reports—which it should not—fundamental fairness and judicial economy *at a minimum* would require that Defendants be provided a meaningful opportunity to analyze and rebut any new opinions offered by Plaintiffs' experts sufficiently in advance of trial in order to have an adequate basis for cross-examination, as well as the opportunity to depose Plaintiffs' experts regarding their new opinions, for renewed *Daubert* briefing to challenge the experts' revised methodologies and opinions, and a further summary judgment motion if appropriate. *See, e.g.*, *Gicla v. United States*, 572 F.3d 407, 411 (7th Cir. 2009) ("By requiring the pre-trial

---

[9] Defendants reserve all their rights to seek necessary relief, including reconsideration of the Court's summary judgment decision on this basis or other bases, and additional motions for summary judgment or Daubert motions if Plaintiffs' experts are permitted to provide new reports.

disclosure of any expert testimony that a party intends to offer, along with the bases for the expert's opinions, Rule 26 is designed to avoid surprise and give the opposing party a full opportunity to evaluate the expert's methodology and conclusions and to respond appropriately."). And, if Plaintiffs' new expert reports were allowed, some of Defendants' experts must likewise be allowed to supplement their rebuttal reports, specifically to address how the elimination of six producers and Agri Stats (1) makes Plaintiffs' alleged conspiracy even less economically plausible, and (2) further undercuts many of Plaintiffs' experts' already-flawed opinions. Plaintiffs presumably would seek depositions of those experts as well. Plaintiffs "are [still] conferring with their expert teams" about "conform[ing] their expert reports to the summary judgment order" but still assert, with no substantive support, that their revisions will not "materially change their expert reports." Nor do they provide any explanation for how re-opening expert discovery will require only a "brief amount of time," when merits expert discovery took *months*.

In light of the Court's request, the parties met and conferred on July 6 regarding an updated pre-trial schedule, notwithstanding the issues raised above. Defendants informed Plaintiffs of the need to modify the pre-trial schedule proposed on June 6 in light of the impact of the Court's summary judgment decision. Plaintiffs refused to engage. Defendants' proposed revised pre-trial schedule, attached hereto as Exhibit 2, reflects minor adjustments necessitated by the summary judgment decision. A pretrial schedule cannot be finalized until the parties understand the full scope of Plaintiffs' proposed repleading of their case and reopening of expert discovery.

Dated: June 23, 2023                Respectfully submitted,

By: s/ Brian D. Clark
W. Joseph Bruckner (MN #147758)
Brian D. Clark (MN #0390069)
Simeon A. Morbey (MN #0391338)
Kyle Pozan (IL #6306761)
LOCKRIDGE GRINDAL NAUEN P.L.L.P
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981
E-mail: wjbruckner@locklaw.com
       bdclark@locklaw.com
       samorbey@locklaw.com
       kjpozan@locklaw.com

Clifford H. Pearson, Esquire
Daniel L. Warshaw, Esquire
Bobby Pouya, Esquire
Michael H. Pearson, Esquire
PEARSON WARSHAW, LLP
15165 Ventura Boulevard
Suite 400
Sherman Oaks, CA 92403
Tel: (818) 788-8300
Fax: (818) 788-8104
E-mail: cpearson@pwfirm.com
       dwarshaw@pwfirm.com
       bpouya@pwfirm.com
       mpearson@pwfirm.com

Bruce L. Simon, Esquire
Jill M. Manning, Esquire
PEARSON WARSHAW, LLP
555 Montgomery Street
Suite 1205
San Francisco, CA 94111
Tel: (415) 433-9000
Fax: (415) 433-9008
E-mail: bsimon@pwfirm.com
       jmanning@pwfirm.com

***Co-Lead Class Counsel for Direct Purchaser Plaintiffs***

By: s/ Paul E. Slater
Paul E. Slater, Esquire
Joseph M. Vanek, Esquire
David P. Germaine, Esquire
Phillip F. Cramer, Esquire
John P. Bjork, Esquire
SPERLING & SLATER, P.C.
55 West Monroe Street
Suite 3200
Chicago, Illinois 60603
Tel: (312) 641-3200
Fax: (312) 641-6492
E-mail: PES@Sperling-law.com
        JVanek@Sperling-law.com
        DGermaine@Sperling-law.com
        Cramer@Sperling-law.com
        JBjork@Sperling-law.com

Ryan T. Holt, Esquire
Christina R.B. Lopez, Esquire
SHERRARD ROE VOIGT & HARBISON, PLC
150 3rd Avenue South
Suite 1100
Nashville, TN 37201
Tel: (615) 742-4200
E-mail: rholt@srvhlaw.com
        clopez@srvhlaw.com

*Counsel for Plaintiffs Associated Grocers of the South, Inc., Meijer, Inc., Meijer Distribution, Inc., OSI Restaurant Partners, LLC, Publix Super Markets, Inc., Supervalu Inc.; Unified Grocers, Inc.; Associated Grocers of Florida, Inc.; and Wakefern Food Corp. (the "Publix DAPs")*

By: s/ William J. Blechman
William J. Blechman, Esquire
Kevin J. Murray, Esquire
Douglas H. Patton, Esquire
Samuel J. Randall, Esquire
Michael A. Ponzoli, Esquire
KENNY NACHWALTER, P.A.
1441 Brickell Avenue
Suite 1100
Miami, Florida 33131
Tel: (305) 373-1000
Fax: (305) 372-1861
E-mail: wblechman@knpa.com
        kmurray@knpa.com
        dpatton@knpa.com
        srandall@knpa.com
        mponzoli@knpa.com

*Counsel for Plaintiffs The Kroger Co., Albertsons Companies, Inc., Hy-Vee, Inc., and Save Mart Supermarkets (the "Kroger DAPs")*

By: s/ Patrick J. Ahern
Patrick J. Ahern, Esquire
AHERN AND ASSOCIATES, P.C.
8 South Michigan Avenue, Suite 3600
Chicago, Illinois 60603
Tel: (312) 404-3760
patrick.ahern@ahernandassociatespc.com

*Counsel for Plaintiffs Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC (the "Winn-Dixie DAPs")*

By: s/ Daniel D. Owen
Daniel D. Owen, Esquire
Guillermo G. Zorogastua, Esquire
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Tel: (816) 753-1000
Fax: (816) 753-1536
E-mail: dowen@polsinelli.com
        gzorogastua@polsinelli.com

Rodney L. Lewis, Esquire
POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, Illinois 60606
Tel: (312) 819-1900
Fax: (312) 819-1910
E-mail: rodneylewis@polsinelli.com

***Counsel for Plaintiff Associated
Wholesale Grocers, Inc.***

By: s/ Robert N. Kaplan
Robert N. Kaplan, Esquire
Gregory K. Arenson, Esquire
Matthew P. McCahill, Esquire
Jason Uris, Esquire
KAPLAN FOX & KILSHEIMER, LLP
800 Third Avenue, 38th Floor
New York, N.Y.  10022
Tel: (212) 687-1980
E-mail: rkaplan@kaplanfox.com
         garenson@kaplanfox.com
         mmccahill@kaplanfox.com
         juris@kaplanfox.com

Solomon B. Cera, Esquire
CERA LLP
201 California Street, Suite 1240
San Francisco, CA  94111
Tel: (415) 777-2230
E-mail: scera@cerallp.com

C. Andrew Dirksen, Esquire
CERA LLP
800 Boylston Street, 16th Floor
Boston, MA  02199
Tel: (857) 453-6555
E-mail: cdirksen@cerallp.com

Elizabeth H. Black, Esquire
HAYNSWORTH SINKLER BOYD P.A.
1201 Main Street, 22nd Floor
Columbia, SC  29201-3226
Tel: (803) 540-7753
E-mail: eblack@hsblawfirm.com

Jay W. Matthews, III, Esquire
HAYNSWORTH SINKLER BOYD P.A.
1 North Main Street, 2nd Floor
Greenville, SC  29601
Tel: (864) 240-3200
E-mail: jmatthews@hsblawfirm.com

Eric R. Lifvendahl, Esquire
LIFVENDAHL LAW, LLC
265 Latrobe Ave.
Northfield, IL 60093
E-mail: eric@liflaw.com
Richard L. Coffman, Esquire
THE COFFMAN LAW FIRM
3355 West Alabama, Suite 240
Houston, Texas 77098
Tel: (713) 528-6700
E-mail: rcoffman@coffmanlawfirm.com

Bernard D. Marcus, Esquire
Moira Cain-Mannix, Esquire
Brian C. Hill, Esquire
MARCUS & SHAPIRA LLP
One Oxford Center, 35th Floor
Pittsburgh, PA  15219
Tel: (412) 471-3490
E-mail: marcus@marcus-shapira.com
         cain-mannix@marcus-shapira.com
         bhill@marcus-shapira.com

*Counsel for Action Meat Distributors, Inc.; Affiliated Foods, Inc.; Alex Lee, Inc./Merchants Distributors, LLC; Associated Food Stores, Inc.; Associated Grocers of New England, Inc.; Associated Grocers, Inc.; Bashas' Inc.; Big Y Foods, Inc.; Brookshire Bros., Inc.; Brookshire Grocery Company; CBBC Opco, LLC d/b/a Colorado Boxed Beef; Certco, Inc.; Columbia Meats, Inc.; Fareway Stores, Inc.; Giant Eagle, Inc.; Greenville Meats, Inc.; Howard Samuels as Trustee in Bankruptcy for Central Grocers, Inc.; Ira Higdon Grocery Company, Inc.; King Solomon Foods, Inc.; Latina Boulevard Foods, LLC; Nicholas & Co., Inc.; Pacific Food Distributors, Inc.; Piggly Wiggly Alabama Distributing Co., Inc.; S&S Trading, LLC; Schnuck Markets, Inc.; SpartanNash Company; Springfield Grocer Co. (d/b/a SGC Foodservice); The Distribution Group, Inc. (d/b/a Van Eerden Foodservice Company); The Golub Corporation; Topco Associates, LLC; Troyer Foods, Inc.; URM Stores, Inc.; W. Lee Flowers & Company, Inc.; Weinstein Wholesale Meats, Inc.; and Woodman's Food Market, Inc.*

ARMSTRONG TEASDALE LLP

By: /s/ *Stephen Novack*
Stephen Novack (#2067587)
Stephen J. Siegel (#6209054)
100 North Riverside Plaza
Chicago, IL 60606
Telephone: (312) 419-6900
Facsimile: (312) 419-6928
*snovack@atllp.com*
*ssiegel@atllp.com*

*Attorneys for Defendants Koch Foods
Incorporated, JCG Foods of Alabama LLC,
JCG Foods of Georgia LLC and Koch Meat
Co., Inc.*

VEDDER PRICE P.C.

By: /s/ *Gregory G. Wrobel*
Gregory G. Wrobel (#3122900)
222 N. LaSalle Street
Chicago, IL 60601
Telephone: (312) 609-7722
Facsimile: (312) 609-5005
gwrobel@vedderprice.com

JORDAN PRICE WALL GRAY JONES &
CARLTON, PLLC

Henry W. Jones, Jr. (admitted *pro hac vice*)
1951 Clark Avenue
Raleigh, NC 27605
Telephone: (919) 828-2501
Facsimile: (919) 834-8447
hjones@jordanprice.com

*Attorneys for Defendant House of Raeford
Farms, Inc.*

ARENTFOX SCHIFF LLP

By: /s/ *Margaret A. Hickey*
Margaret A. Hickey
Lawrence Harris Heftman
Kylie S. Wood
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Telephone: (312) 258-5500
maggie.hickey@afslaw.com
lawrence.heftman@afslaw.com
kylie.wood@afslaw.com

Robert J. Wierenga
Suzanne L. Wahl
350 South Main Street, Suite 210
Ann Arbor, MI 48104
Telephone: (734) 222-1500
robert.wierenga@afslaw.com
suzanne.wahl@afslaw.com

ROSE LAW FIRM

Amanda K. Wofford (admitted *pro hac vice*)
Bourgon Reynolds (admitted *pro hac vice*)
120 East Fourth Street
Little Rock, AR 72201
Telephone: (501) 375-9131
Facsimile: (501) 375-1309
awofford@roselawfirm.com
breynolds@roselawfirm.com

John W. Treece (#3122889)
1135 West Montana Street
Chicago, IL 60614
Telephone: (312) 961-7808
jtreece@jwtreece.com

*Attorneys for Defendants Mountaire Farms
Inc., Mountaire Farms, LLC and Mountaire
Farms of Delaware, Inc.*

KUTAK ROCK LLP

By: /s/ John Passarelli
John P. Passarelli
James M. Sulentic
KUTAK ROCK LLP
1650 Farnam Street
Omaha, NE 68102
Telephone: (402) 346-6000
Facsimile: (402) 346-1148
john.passarelli@kutakrock.com
james.sulentic@kutakrock.com

J.R. Carroll
Jeffrey M. Fletcher
Stephen M. Dacus
KUTAK ROCK LLP
234 East Millsap Road, Suite 200
Fayetteville, AR 72703-4099
Telephone: (479) 973-4200
Facsimile: (479) 973-0007
jr.carroll@kutakrock.com
jeffrey.fletcher@kutakrock.com
stephen.dacus@kutakrock.com

Megan Cunniff Church (IL 6281234)
MoloLamken LLP
300 N. LaSalle Street, Suite 5350
Chicago, IL 60654
Telephone: (312) 450-6716
Facsimile: (312) 450-6701
mchurch@mololamken.com

*Attorneys for Defendants O.K. Foods, Inc.,*
*O.K. Farms, Inc., and O.K. Industries, Inc.*

PROSKAUER ROSE LLP

By: /s/ *Marc E. Rosenthal*
Marc E. Rosenthal
70 W. Madison, Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3530
mrosenthal@proskauer.com

-and-

Christopher E. Ondeck (admitted *pro hac vice*)
Stephen R. Chuk (admitted *pro hac vice*)
1001 Pennsylvania Ave., NW, Ste 600
Washington, DC 20004
Telephone: (202) 416-6800
condeck@proskauer.com
schuk@proskauer.com

and-

Scott A. Eggers (admitted *pro hac vice*)
11 Times Square
New York, NY 10036
Telephone: (212) 969-3000
seggers@proskauer.com

-and-

Kyle A. Casazza (admitted *pro hac vice*)
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Telephone: (310) 284-5677
kcasazza@proskauer.co

*Attorneys for Defendants Sanderson Farms,*
*LLC (f/k/a Sanderson Farms, Inc.), Sanderson*
*Farms Foods, LLC (f/k/a Sanderson Farms,*
*Inc. (Foods Division)), Sanderson Farms*
*Production, LLC (f/k/a Sanderson Farms, Inc.*
*(Production Division)), and Sanderson Farms*
*Processing, LLC (f/k/a Sanderson Farms, Inc.*
*(Processing Division))*

27

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ *Lara Flath*
Boris Bershteyn (admitted *pro hac vice*)
Lara Flath (#6289481)
Sam Auld (admitted *pro hac vice*)
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
boris.bershteyn@skadden.com
lara.flath@skadden.com
Sam.auld@skadden.com

Gail Lee (#6318334)
155 N. Wacker Drive
Chicago, IL 60606
Telephone: (312) 407-0700
Facsimile: (312) 407-0411
gail.lee@skadden.com

*Attorneys for Defendant Peco Foods, Inc.*

AXINN, VELTROP & HARKRIDER LLP

By: /s/ *Rachel J. Adcox*
Rachel J. Adcox (#1001488)
Daniel K. Oakes (*pro hac vice*)
Bradley D. Justus (*pro hac vice*)
Michael J. O'Mara (*pro hac vice*)
Kenina J. Lee (*pro hac vice*)
1901 L Street NW
Washington, D.C. 20036
T. 202-921-4700
radcox@axinn.com
doakes@axinn.com
bjustus@axinn.com
momara@axinn.com
klee@axinn.com

Jarod G. Taylor (*pro hac vice*)
90 State House Square
Hartford, CT 06103
T. 860-275-8175
jtaylor@axinn.com

Nicholas E.O. Gaglio (*pro hac vice*)
Denise L. Plunkett (*pro hac vice*)
Kail J. Jethmalani (*pro hac vice*)
114 West 47th Street
New York, NY 10036
T. 212-728-2331
ngaglio@axinn.com
dplunkett@axinn.com kjethmalani@axinn.com

LIPE LYONS MURPHY NAHRSTADT & PONTIKIS, LTD.
Jordan M. Tank (#6304122)
230 West Monroe, Street, Ste 2260
Chicago, IL 60606
T: 312-702-0586
jmt@lipelyons.com

*Attorneys for Defendants Tyson Foods, Inc.; Tyson Breeders, Inc.; Tyson Chicken, Inc.; Tyson Poultry, Inc.; Keystone Foods LLC; Equity Group Eufaula Division, LLC; Equity Group Kentucky Division, LLC; and Equity Group—Georgia Division, LLC*

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: /s/ *Michael D. Bonanno*
Michael D. Bonanno
William A. Burck
Kathleen A. Lanigan
1300 I St. NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
mikebonanno@quinnemanuel.com
williamburck@quinnemanuel.com
katlanigan@quinnemanuel.com

Debra D. Bernstein
1050 Crown Pointe Parkway, Suite 500
Atlanta, GA 30338
Tel: (404) 482-3502
debrabernstein@quinnemanuel.com

Michelle Schmit
191 N. Wacker Dr., Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
michelleschmit@quinnemanuel.com

*Attorneys for Defendant Pilgrim's Pride Corporation*

EVERSHEDS SUTHERLAND (US) LLP

By: /s/ *Patricia A. Gorham*
Patricia A. Gorham (admitted *pro hac vice*)
James R. McGibbon (admitted *pro hac vice*)
Peter M. Szeremeta (admitted *pro hac vice*)
Kaitlin A. Carreno (admitted *pro hac vice*)
Dylan de Fouw (admitted *pro hac vice*)
Rebekah Whittington (admitted *pro hac vice*)
999 Peachtree Street, N.E., Ste 2300
Atlanta, GA 30309-3996
Telephone: (404) 853-8000
Facsimile: (404) 853-8806
patriciagorham@eversheds-sutherland.com
jimmcgibbon@eversheds-sutherland.com
peterszeremeta@eversheds-sutherland.com
katilincarreno@eversheds-sutherland.com
dylandefouw@eversheds-sutherland.com
rebekahwhittington@eversheds-sutherland.com

SMITH AMUNDSEN LLC

Ronald Balfour (#6307658)
150 N. Michigan Avenue, Ste 3300
Chicago, Illinois 60601
Telephone: (312) 894-3200
Facsimile: (312) 997-1828
cphillips@salawus.com

*Attorneys for Defendant Harrison Poultry, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2023, a true and correct copy of the foregoing was served on all counsel of record through the Court's electronic filing system.

*/s/ Brian D. Clark*