## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **IN RE BROILER CHICKEN ANTITRUST LITIGATION** | Case No: 1:16-cv-08637 |
| | Hon. Judge Thomas M. Durkin |
| THIS DOCUMENT RELATES TO: *TRACK 1 CASES* | Magistrate Judge Jeffrey T. Gilbert |

# PUBLIC-REDACTED VERSION

## SIMMONS FOODS, INC.'S AND SIMMONS PREPARED FOODS INC.'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING THEIR INDIVIDUAL MOTION FOR SUMMARY JUDGMENT

SHOOK, HARDY & BACON L.L.P.

Lynn H. Murray (#6191802)
111 S. Wacker Dr., Ste 4700
Chicago, IL 60606
Telephone: (312) 704-7700
Facsimile: (312) 558-1195
lhmurray@shb.com

Laurie A. Novion (admitted *pro hac vice*)
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
lnovion@shb.com

CONNER & WINTERS, LLP

John R. Elrod (admitted *pro hac vice*)
Vicki Bronson (admitted *pro hac vice*)
4375 N. Vantage Drive, Ste. 405
Fayetteville, AR 72703
Telephone: (479) 582-5711
jelrod@cwlaw.com
vbronson@cwlaw.com

***Attorneys for Defendants Simmons Foods, Inc. and Simmons Prepared Foods Inc.***

Simmons Foods Inc. and Simmons Prepared Foods, Inc. ("Simmons") respectfully submits this motion for reconsideration of this Court's June 30, 2023 Memorandum Opinion and Order (ECF No. 6641 (the "Order")) denying Simmons' individual motion for summary judgment against Track One Plaintiffs. As do the other movants, Simmons appreciates the time and effort the Court has devoted to this process, but is compelled to seek reconsideration because of a firm belief that Simmons fell on the wrong side of the line the Court drew in reaching its summary judgment conclusions.  Far from the "examples of supposed competitors regularly exchanging sensitive production data with each other" (Order at 27), the Order cites five evidentiary facts with regard to Simmons. One is a public announcement of a cut that was reversed within months. Another is a single conversation between a Simmons employee and a Peco employee regarding potential cuts that did not materialize as described, for companies whose production was dramatically different during the period of the conversation.  And the other three represent information gathering and not information giving, of a type insufficient to allow an inference of a conspiracy. As to Simmons, there is no evidence of any regular information sharing, but only the information gathering that all competitors do so that they can run their businesses effectively. Simmons respectfully submits that a careful look will show that no reasonable jury could find Simmons participated in a conspiracy to cut production.[1]

## **LEGAL STANDARD**

"The court may grant a motion to reconsider an interlocutory order 'as justice requires.'" *Luis R v. Joliet Twp. High Sch. Dist. 204*, No. 01 C 4798, 2002 WL 54544, at *1 (N.D. Ill. Jan. 15, 2002) (quoting *Young v. Murphy*, 161 F.R.D. 61, 62 (N.D. Ill. 1995)). An interlocutory order – such as the Order here – can be changed by the Court at any time. *See* FED. R. CIV. P. 54(b).

---

[1] Simmons is not a Track 1 Defendant in the September 2023 trial.  The Indirect Classes maintain their claims against Simmons.

Reconsideration is appropriate where the court: (a) misunderstood a party; (b) made a decision outside the adversarial issues presented by the parties; (c) made an error of apprehension (not of reasoning); or (d) where a significant change in the law occurred or significant new facts were discovered. *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011), *rev'd on other grounds*, *Hill v. Tangherlini*, 724 F.3d 965, 96 n.1 (7th Cir. 2013).

## ARGUMENT

The Court found a dispute as to Simmons' liability based on a handful of documents that are either isolated or a one-way communication from a source to Simmons, without an exchange of information. As the Court made clear, it is analyzing the totality of the evidence to determine whether Simmons took action to join an agreement. These communications – only two of which Plaintiffs assert constituted information sharing by Simmons – are insufficient for a reasonable jury to find by a preponderance of the evidence that Simmons conspired with its competitors.

## I.      Information That Simmons Allegedly Shared With Competitors.

The Court relied on two instances of alleged outgoing information in concluding that Simmons was part of a conspiracy. That finding misapprehends the contents of the documents and is inconsistent with the Court's reasoning throughout the Order.

First, the Court determined that Simmons' "announce[ment] of production cuts" in April 2008 was evidence of a conspiracy. Order at 42. As the Court recognized, however, a company's announcement that it has made a production cut is "no[t] evidence that [the company] was part of any agreement to do so," even if the same announcement suggested that the industry would be "better off" if others did the same, which Simmons' announcement did not. Order at 47-48. In addition, the undisputed evidence shows that after making that announcement, Simmons changed course by *increasing* production by ██████████████████████████████████ ████████████████████ R. 6413 at 11 (¶ 12) (Fig. 22); R. 6233-1 (¶¶ 29, 31). Simmons'

announcement was the only event Plaintiffs identify in 2008 to support the conclusion that Simmons entered into a conspiracy with its competitors to cut production in that year, and no reasonable juror could find that it reflects an industry-wide agreement to reduce production.

Second, the Court concluded that Peco *and* Tyson received production information from Simmons, but none of the evidence cited refers to Tyson.[2] *See* Order at 42. Rather, the citations refer to a possible (and isolated) communication ██████████████████████████ ████████████████████████████████████████████████ R. 6233-1 at 4 (¶ 12). They allegedly spoke about ████████████████████████████████████████ ████ *Id.* As the Court considered in citing Murphy's testimony, Murphy only vaguely recalled that he "may have" talked about Simmons' production to a competitor "in passing," but "can't say whether [he] did, but can't say [he] didn't." Order at 42, citing R. 6226-19 at 720 (139:3-140:6). But even accepting that communication as true for purposes of summary judgment (which Simmons disputes), it is not evidence that Simmons joined an industry-wide production cut conspiracy. In fact, it is not disputed that the rate of change in growth for both Simmons and Peco varied widely ██████ and was dramatically different than as expressed in the alleged statements. *See* R. 6413 at 9-11 (¶ 12, Fig. 23) ████████████████████████████████████████ ██████████████████████████████

Crucially, this apparent conversation is the ***only*** instance of an alleged two-way exchange about production between Simmons and a competitor. But mere, isolated "opportunities to collude" are "insufficient to give rise to a dispute of material fact." *See In re Text Messaging Antitrust Litig.,* 46 F. Supp. 3d 788, 806 (N.D. Ill. 2014), aff'd, 782 F.3d 867 (7th Cir. 2015). The

---

[2] The only document arguably suggesting that Simmons communicated any information to Tyson is at least triple and likely quadruple hearsay. *See* R. 6411 at 8-9. Hearsay documents are not admissible at summary judgment. Order at 54.

Court judged the regularity of communications among and between competitors in analyzing summary judgment. *See, e.g.*, Order at 27 ("But as discussed below, there are numerous examples of supposed competitors ***regularly exchanging*** sensitive production data with each other."); 42 ("The ***regularity*** of… communications with … competitors about production plans indicates a desire to reach agreement in the industry.") (emphasis added). This isolated conversation is not evidence of "regular" exchanges between Simmons and competitors, and it is not enough for a reasonable jury to infer that Simmons took part in an agreement. *Id.*; *cf. Kleen Prod. LLC v. Georgia-Pac. LLC*, 910 F.3d 927, 938-39 (7th Cir. 2018) (granting summary judgment even for defendants who ***regularly*** spoke "every few days," including about pricing, because the communications "were not enough to create a jury issue [because the defendant also] increased its overall capacity"); *see also In re Baby Food Antitrust Litig.*, 166 F.3d 112, 120, 127 (3d Cir. 1999) (holding that an "***isolated, single***" use of the word "truce" was not direct evidence of unlawful conspiracy) (emphasis added).

## II.      Information That Competitors Allegedly Shared With Simmons

Merely receiving (and not exchanging) information about production cuts is not evidence that a producer is part of an agreement to restrict supply. Order at 43; 45-46; 49; 52 (*e.g.* "Merely observing … what the larger players are doing is not enough."). The Court relied on three such internal Simmons documents, Simmons believes in error, to find evidence of a conspiracy. *See id.* at 43.

The first document is a 2010 email which the ruling suggests reflects Simmons receiving information from OK Foods about supply cuts. R. 6229-5 at 17. Simmons made no statements in the document, so it cannot be evidence of Simmons' part in a conspiracy. Order at 43. The document itself shows that ████████████████████████████████████████████████ ████████████████████████████████████████ *Id.* But the reason for OK's statement is clear;

the evidence is undisputed that ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████ R. 6413 at 18-19 (¶ 18), citing Ex. 2603 (66:3-68:10).

The Court also relied on ████████████████████████████████████████

████████████████████████████████████ R. 6233-1 at 6-7

(¶¶ 22-26).  As Plaintiffs' Statement of Additional Facts concedes, ████████████

████████████████████████████████████████████████████████

██████████████████████████████████████ R. 6233-01 at 6-7 (¶¶ 22-23).

Plaintiffs agree that the figures provided to Simmons ████████████████████████

████████████████████████████████████████████████████████

██████ *Id*. at 6 (¶ 22). The testimony that the Court cited from Simmons' president about

"multiple sources" of information *also* confirms that information was provided because it was

necessary for ██████████████████████ to schedule its facility. Order at 42; M. Simmons

testimony, R. 6233-04, Ex. 2603 at 37-39 (83:13-85:4) (mistakenly cited in the Order as 6226-19

(83:13-85:4). As Plaintiffs' Statement of Facts also concedes, ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████ R. 6233-01 at 6 (¶ 23). These communications are not evidence of a collusive agreement,

but instead are evidence of Simmons and its affiliates running their businesses. While they may

allow Simmons to assess what was happening in the market, they are not evidence that Simmons

joined an agreement. Simmons received, and did not exchange, information with competitors. *See* Ex. 2603, Mark Simmons Dep., 76:15-77:3, 80:23-81:16, cited in R. 6233-1 at 6 (¶ 23). This Court correctly recognized that receipt of similar information from Tip Top and Southern Hens, without action, is not evidence of agreement. Order at 45; 48; 51-52.

Last, the Court relied on a 2011 internal Simmons Production Plan document, which states that Simmons has "multiple sources" suggesting a supply cut was coming and referring to rumors about its extent. R. 6229-5 at 3. But the document itself clearly shows that Simmons is gathering intelligence, not participating in an agreement. To the extent that the "multiple sources" include competitors, they are clearly identified in the deposition testimony as companies ███████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ R. 6226-19 at 37-39 (83:13-85:4). Nothing about that evidence suggests that Simmons acted on that information to reduce its own production. In fact, evidence that Plaintiffs' experts agree is undisputed shows that Simmons – uniquely among the defendants – ███████████████████████████████████████████████ ██████████████████████ R. 6413 at 54 (¶ 46); R. 6226-1 at 11 (¶ 10), citing Ex. 6 (¶ 90). This Court recognized that evidence of a producers' awareness that the industry was cutting production is not evidence of a conspiratorial communication with each other. Order at 46 (making observations about state of market not evidence of agreement to restrict supply); 48 (awareness that competitors were cutting supply does not provide evidence that a producer was part of an agreement to do so); 49 (an inference of agreement can only be imputed to a defendant if there is additional evidence against it establishing its membership in the conspiracy); 52 (knowledge that most of the industry was reducing supply insufficient to establish conspiracy; merely observing competitors in an internal email is not enough).

## CONCLUSION

These communications are insufficient for a reasonable jury to find by a preponderance of the evidence the existence of any agreement between Simmons and other Defendants to restrain production. Simmons respectfully asks this Court to reconsider its June 30, 2023 Order and to enter summary judgment in Simmons' favor.

Dated: July 27, 2023                                  Respectfully submitted,


*/s/ Lynn H. Murray*
Lynn H. Murray (#6191802)
111 S. Wacker Dr., Ste 4700
Chicago IL 60606
Telephone: (312) 704-7700
Facsimile: (312) 558-1195
lhmurray@shb.com

Laurie A. Novion (admitted pro hac vice)
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
lnovion@shb.com

CONNER & WINTERS, LLP

John R. Elrod (admitted pro hac vice)
Vicki Bronson (admitted pro hac vice)
4375 N. Vantage Drive, Ste. 405
Fayetteville, AR 72703
Telephone: (479) 582-5711
jelrod@cwlaw.com
vbronson@cwlaw.com

*Attorneys for Defendants Simmons Foods, Inc.*
*and Simmons Prepared Foods Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 27, 2023, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Lynn H. Murray*
Lynn H. Murray