IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **IN RE BROILER CHICKEN ANTITRUST LITIGATION** <hr> THIS DOCUMENT RELATES TO: *Direct Purchaser Plaintiff & TRACK 1 DAP Actions* | Case No: 1:16-cv-08637 <br><br> Hon. Judge Thomas M. Durkin <br><br> Magistrate Judge Jeffrey T. Gilbert |

# REPLY TO TRACK ONE TRIAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' OMNIBUS MOTIONS *IN LIMINE* REGARDING SEPTEMBER 12, 2023 TRIAL

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTIONS *IN LIMINE* ("MIL") | 1 |
| | A. Reply to Defendants' Opposition to MIL No. 2 To Exclude Evidence Of Purported Procompetitive Justifications For Defendants' Conduct | 1 |
| | B. Reply to Defendants' Opposition to MIL No. 3 To Exclude References To The Court's Summary Judgment Order Or Dismissal Of Any Party | 2 |
| | C. Reply to Defendants' Opposition to MIL No. 11 To Preclude Argument Or Evidence Of Limited Liability Or Proportional Damages | 4 |
| | D. Reply to Defendants' Opposition to MIL No. 13 To Exclude Testimony And Argument Of Public Defendants That Laws Required Their Public Signaling | 6 |
| | E. Reply to Defendants' Opposition to MIL No. 15 To Exclude And Distinguish Fact Testimony And Expert Testimony Presented By Defendants' Experts | 6 |
| | F. Reply to Defendants' Opposition to MIL No. 16 To Exclude The Opinions And Testimony Regarding Dr. John H. Johnson, IV's Regressions Whose Results Are Displayed In His Exhibits 42, R-4, And R-5 | 9 |
| | G. Reply to Defendants' Opposition to MIL No. 17 To Exclude The Opinions And Testimony Regarding Dr. John H. Johnson, IV's So-Called "Price Change Direction" And "MAPPE" "Tests" | 10 |
| | H. Reply to Defendants' Opposition to MIL No. 18 To Exclude The Opinions And Testimony Regarding Dr. James Levinsohn's Regression Whose Results Are Displayed In His Table 5 | 10 |
| | I. Reply to Defendants' Opposition to MIL No. 19 To Exclude The Opinions And Testimony Regarding Dr. James Levinsohn's Table C5 | 11 |
| | J. Reply to Defendants' Opposition to MIL No. 21 To Exclude Undisclosed Evidence From Trial | 12 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No. 06-MD-1175, 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ...........................................11

*Blumenthal v. U.S.*,
  332 U.S. 539 (1947) ..................................................................................................... 4, 5, 6

*In re Broiler Chicken Antitrust Litig.*,
  No. 16-CV-8637, 2022 WL 1720468 (N.D. Ill. May 27, 2022)..................................................9

*In re High-Tech Employee Antitrust Litig.*,
  Case No. 11-CV-02509, 2014 WL 1351040 (N.D. Cal. Apr. 4, 2014) ..................................10

*Kotteakos v. U.S.*,
  328 U.S. 750 (1946) ..................................................................................................................4

*Phoenix Restoration Grp., Inc. v. Liberty Mut. Grp. Inc.*,
  No. CV 18-2121, 2020 WL 622152 (D.D.C. Feb. 10, 2020) ....................................................7

*Rocklane Co., LLC v. Travelers Cas. Ins. Co. of Am.*,
  No. 1:17-CV-02158, 2020 WL 1320963 (S.D. Ind. Jan. 21, 2020) .........................................7

*U.S. v. Briscoe*,
  896 F. 2d 1476 (7th Cir. 1990) ............................................................................................ 4, 5

*U.S. v. Napue*,
  834 F. 2d 1311 (7th Cir. 1997) .................................................................................................5

*U.S. v. Smith*,
  601 F.3d 530 (6th Cir. 2010) ....................................................................................................8

*U.S. v. Christian*,
  673 F.3d 702 (7th Cir. 2012) ....................................................................................................7

*U.S. v. York*,
  572 F.3d 415 (7th Cir. 2009) ................................................................................................ 7, 8

**Other Authorities**

Dan Chin, John Geweke, and Preston Miller, "Predicting Turning Points" (Federal
  Reserve Bank of Minneapolis June 2000) ...............................................................................10

William E. Wecker, "Predicting the Turning Points of a Time Series," 52 ..................................10

I.  **INTRODUCTION**

Direct Purchaser Plaintiffs and Track 1 DAPs (hereinafter collectively, **"Plaintiffs"**) bring this reply to the Track 1 Trial Defendants ("Defendants") Opposition to Plaintiffs' Omnibus Brief in Support of Certain of Their Motions *in Limine*. Consistent with the Court's instructions, Plaintiffs have limited their replies to the motions which merit further reply or clarification.

II. **REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTIONS *IN LIMINE* ("MIL")**

A.  **Reply to Defendants' Opposition to MIL No. 2 To Exclude Evidence Of Purported Procompetitive Justifications For Defendants' Conduct**

In their opposition, Defendants do not dispute that evidence of pro-competitive effects or benefits of the alleged restraint is inadmissible in a *per se* antitrust case. Track One Trial Defendants' Opposition to Plaintiffs' Omnibus Motions in Limine Regarding September 12, 2023 Trial, (ECF No. 6775 "Opp."), at p. 1. Accordingly, Plaintiffs offered to resolve this motion in limine ("MIL") by stipulating that:

> Defendants will not seek to introduce any evidence or make any argument that there were pro-competitive benefits or justifications for the agreement or understanding to restrict or limit the supply of chicken. *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 226 (7th Cir. 1978) ("[a]n agreement among competitors to restrict the production of a certain good equates to a price-fixing agreement, because conspiracies to limit output are designed to raise, stabilize, or otherwise fix the price of goods"); *In re Sulfuric Acid Antitrust Litig.*, 743 F.Supp.2d 827, 869 (N.D. Ill. 2010) ("[c]onspiring to reduce industry output as a means of stabilizing or raising prices is prototypical of conduct that has time and again been condemned by courts as *per se* illegal"); *Agnew v. National Collegiate Athletic Ass'n*, 683 F.3d 328, 336 (7th Cir. 2012) ("[u]nder the *per se* framework, a restraint is deemed unreasonable without any inquiry into the market context in which the restraint operates").

*See* Pouya Reply Decl.[1] Ex. A. Defendants refused to stipulate. *See id.* ¶ 3. Defendants may not introduce evidence at trial that attempts to justify the challenged conduct as having pro-competitive benefits, results or justifications; that evidence must be categorically excluded based on settled law. Moreover, Defendants' intent to admit evidence that its production cuts had good results would create a significant risk of confusing the jury. The ABA Section of Antitrust Law has a model jury instruction stating that good intent is not a defense to a *per se* Sherman Act claim. *See* ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases,* at 29 (2016) ("If you find that defendant engaged in a price-fixing conspiracy, it is not a defense that defendant acted with good motives, thought its conduct was legal, or that the conduct may have had some good results."). Plaintiffs will propose a modified version of this jury instruction. To the extent Defendants seek to admit evidence that its production cuts were in its unilateral self-interest and did not result from an agreement or understanding with its competitors, the Court may rule on the admissibility during trial, taking into account the specific evidence and context. Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs' motion in limine and order that Defendants may not introduce any evidence or make any argument that there were pro-competitive benefits or justifications or other good results from their unlawful conduct.

    **B.**    **Reply to Defendants' Opposition to MIL No. 3 To Exclude References To The Court's Summary Judgment Order Or Dismissal Of Any Party**

In their opposition, Defendants stated that they "agree that general references to the Court's Summary Judgment Order, including to the denial of any of Defendants' motions, are improper" and that "the parties should not reference the fact of the Court's dismissal of Other Major Producers."

---

[1] "Pouya Reply Decl." refers to the Declaration of Bobby Pouya in Support of the Reply to Track One Trial Defendants' Opposition to Plaintiffs' Omnibus Motions in Limine Regarding September 12, 2023 Trial

Opp. at p. 3. Accordingly, Plaintiffs offered to resolve this motion in limine by stipulating that:

> The parties hereby stipulate that no party will seek to introduce any evidence or make any argument that references the Court's June 30, 2023 Order on summary judgment (ECF No. 6641), including any reference to the dismissal of any parties or claims or the Court's finding that the evidence was insufficient to proceed to trial against certain chicken producers and Agri Stats. *Hawkins v. Maury County Bd. of Educ.*, No. 112-CV-0184, 2019 WL 13260543, at *2 (M.D. Tenn. Mar. 21, 2019) (*citing Clipco, Ltd. v. Ignite Design*, LLC, No. 04-CV-5043, 2005 W 2861032, at *2 (N.D. Ill. Oct. 28, 2005).

Pouya Reply Decl. Ex. A. Plaintiffs do not dispute that both parties may seek to introduce evidence related to the dismissed defendants (including their communications with remaining defendants). However, it is not appropriate to state the reasons why those dismissed defendants are no longer in the case. Argument that the conspiracy is less plausible because certain defendants were dismissed is not relevant to Plaintiffs' claims against the remaining defendants, is substantially more prejudicial than probative, and would confuse the jury. The Seventh Circuit pattern jury instruction states that jurors should not consider why certain entities are not defendants in the case: "[Former Parties] are no longer defendants in this case. You should not consider any claims against [Former Parties]. Do not speculate on the reasons. You should decide this case as to the remaining parties." Seventh Circuit Federal Civil Jury Instructions § 1.26 (2017). Both plaintiffs and defendants have proposed modified versions of this jury instruction.

   Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs' motion in limine and order that no party may introduce any evidence or make any argument that references the Court's June 30, 2023 Order on summary judgment (ECF No. 6641), including any reference to the dismissal of any parties or claims or the Court's finding that the evidence was insufficient to proceed to trial against certain chicken producers and Agri Stats.

### C. Reply to Defendants' Opposition to MIL No. 11 To Preclude Argument Or Evidence Of Limited Liability Or Proportional Damages

Defendants' premise for their argument in opposition to Plaintiffs' Motion, that "there were two distinct conspiracies—one in 2008-09 and a separate one in 2011-12" (Opp. at p. 32)—is incorrect. It ignores this Court's finding (*See* Memorandum Opinion and Order on Summary Judgment, (ECF No. 6641), at p. 65) that "[a] reasonable jury could conclude that these three campaigns of anticompetitive conduct constitute one continuing conspiracy because of: (1) their identical goals to increase price through supply reduction; (2) their close temporal proximity; (3) and the identity of the conspirators." This Court further found "that there is sufficient evidence for a reasonable jury to find the existence of *the* alleged conspiracy . . . including evidence that Defendants acted in parallel to reduce supply in 2008-09 and 2011-12." *Id.*

Thus, *Blumenthal v. U.S.*, 332 U.S. 539 (1947), is applicable here, rather than *Kotteakos v. U.S.*, 328 U.S. 750 (1946), cited by Defendants (Opp. at p. 33). In *Blumenthal*, the Supreme Court found that "in a hypertechnical aspect," the case could be "in the most meticulous sense" "regarded as disclosing two agreements, with Goldsmith and Weiss as figures common to both." 332 U.S. at 556. Nonetheless, the Supreme Court concluded that "[b]y their separate agreements, if such they were, they became parties to the larger common plan, joined together by their knowledge of its essential features and broad scope, though not of its exact limits, and by their common single goal." *Id.* at 558. The Supreme Court therefore held that "the two agreements were merely steps in the formation of the larger and ultimate more general conspiracy,' where "[t]he whiskey was the same," "[t]he agreements related alike to its disposition," and "[t]hey comprehended illegal sales in the guise of legal ones." *Id.* at 557. The *Blumenthal* Court also distinguished *Kotteakos* as a situation where "no two of those agreements were tied together as stages in the formation of a large all-inclusive combination, all directed to achieving a single unlawful end or result. *Id.* at 558; *see also U.S. v.*

*Briscoe*, 896 F. 2d 1476, 1506-07 (7th Cir. 1990) ("mutual dependence is indicative of a single conspiracy" where "defendants performing various roles and operating through different individuals[] embraced the common objective"); *U.S. v. Napue*, 834 F. 2d 1311, 1332 (7th Cir. 1997) "[i]f . . . the agreements between the conspirators represent stages or different functions to be performed in the formulation of a larger scheme, the object of which is to effectuate a single unlawful result, then there is a single conspiracy").

Consistent with this Court's findings on the motions for summary judgment, Defendants should not be allowed to argue that because their involvement in the alleged conspiracy was limited in scope or duration, they cannot be held liable for the full scope of the conspiracy. Here, Plaintiffs allege that Defendants conspired to reduce output in order to increase chicken prices. This was the overall scheme, a "common objective" to "effectuate a single unlawful result." *Briscoe*, 896 F. 2d at 1506-07; *Napue*, 834 F. 2d at 1332. All the participants knew each other, knew that they were "mutual[ly] dependen[t]" on each other, and knew that none of them alone could cut production and cause an increase in prices. *Id*. Even if there were different "stages" or "different functions," they were performed "in the formulation of a larger scheme, the object of which [was] to effectuate a single unlawful result" to increase chicken prices by concerted reductions in supply. *Blumenthal*, 332 U.S. at 559.

Indeed, the Defendants never argued that there were separate supply restriction conspiracies throughout the seven-year duration of this case, including in their motions for summary judgment. Their post-hoc attempt to reinterpret and misconstrue the summary judgment order and the scope of the case should be rejected. At trial, Defendants should not be permitted to argue or introduce evidence arguing that, if they are found to have conspired, they are only liable for a proportion of damages based on scope or duration.

D. **Reply to Defendants' Opposition to MIL No. 13 To Exclude Testimony And Argument Of Public Defendants That Laws Required Their Public Signaling**

In their Response, "Public Defendants do not argue that the securities laws 'immunize' any public signaling." Opp., at p. 40. They also repudiate the statement in Sanderson's summary judgment briefing that "Regulation FD requires public companies to hold public quarterly earnings calls." *Id*., at n. 20 ("this is not the Public Defendants' position nor is it Mr. Huber's opinion"). Accordingly, Plaintiffs have asked Defendants to enter into the following stipulation:

> Defendants will not seek to introduce any evidence or make any argument that the securities laws immunize public signaling, excuse a violation of the antitrust laws, or require public companies to (i) have earnings calls, (ii) disclose production plans, (iii) make forward-looking production projections, (iv) call for industry-wide production levels, or (v) answer questions from analysts during earnings calls.

Pouya Reply Decl. Ex. A. Defendants rejected this stipulation. *See id.* ¶ 3. Plaintiffs therefore ask the Court to so rule and instruct the jury accordingly.

E. **Reply to Defendants' Opposition to MIL No. 15 To Exclude And Distinguish Fact Testimony And Expert Testimony Presented By Defendants' Experts**

Defendants' expert Keith Cooper is differently situated than every other expert in the case, and his testimony presents unique concerns that require exclusion of portions of his report.[2] Unlike a typical third-party expert who is retained after the litigation began, Mr. Cooper has worked as a consultant for several chicken producers, including the Defendants, during the relevant conspiracy period and intends to continue doing so in the future. In Sections 2.2, 2.3, 2.4, 3.1, and 3.2 of his expert report, Mr. Cooper provides a narrative of chicken producers bankruptcies, near bankruptcies, and supply cuts, which are based on his "personal knowledge" and involvement with these

---

[2] Plaintiffs' MIL No. 15 is mooted as it relates to O.K. Foods' expert Juanita Schwartzkopf pursuant to the settlements with O.K. Foods. Plaintiffs' MIL No. 15 remains pending against trial Defendants' expert Keith Cooper, and should be granted for the reasons below.

companies. Mr. Cooper is not analyzing this factual evidence for the purpose of supporting his expert analysis or the reasonableness of his damages model or other expert analysis. Rather, it is the narrative itself which is presented as his opinions and is intended to support his conclusion that Defendants' supply reductions were the result of something other than a conspiracy.

These portions are not proper expert testimony because they provide a factual narrative that "does not convey opinions based on an expert's knowledge and expertise . . . and thus fails to fulfill *Daubert*'s most basic requirements." *See Rocklane Co., LLC v. Travelers Cas. Ins. Co. of Am.*, No. 1:17-CV-02158, 2020 WL 1320963, at *7 (S.D. Ind. Jan. 21, 2020). While it is possible for witnesses to serve both a fact and expert witness in a case, such testimony should be carefully demarcated and managed. *U.S. v. York*, 572 F.3d 415, 425 (7th Cir. 2009). In this case, Mr. Cooper has never been disclosed or identified by Defendants as a fact witness. Plaintiffs did not have an opportunity to obtain documents or take his deposition as a fact witness. The documents and facts supporting this testimony based on his "personal knowledge" have never been produced or otherwise made available to the Plaintiffs.

Even if Mr. Cooper's evidentiary narratives constitute permissible testimony, they should be excluded because the 'probative value' of the evidence 'is substantially outweighed by [the] danger of ... unfair prejudice, confusing the issues, [and/or] misleading the jury. *Phoenix Restoration Grp., Inc. v. Liberty Mut. Grp. Inc*., No. CV 18-2121, 2020 WL 622152, at *5 (D.D.C. Feb. 10, 2020). In the disputed portions of his report, Mr. Cooper provides testimony regarding disputed factual issues, which must be presented by fact witnesses and decided by the jury. Allowing Mr. Cooper to testify as an expert allows him to usurp the evidentiary rules that apply to fact testimony, and would improperly put "an 'expert gloss' on a conclusion that the jurors should draw themselves." *United States v. Christian*, 673 F.3d 702, 710 (7th Cir. 2012).

Defendant's opposition does not offer any sufficient justification for Mr. Cooper's efforts to

present the aforementioned improperly disclosed fact testimony through his expert report. Defendants' distinction between chicken producers by which Mr. Cooper was retained directly or via their lenders confuses the issue of bias with the proper scope of expert testimony. *See* Opp., at pp. 45-46. While Cooper's history as a chicken industry consultant is noteworthy, Plaintiffs are not relying on it as a direct basis to exclude Mr. Cooper's testimony. Rather, his contemporaneous involvement in the industry—combined with Mr. Cooper's admission that he based the narratives in his report on his "personal knowledge"—supports Plaintiffs' assertion that the disputed sections of the Cooper report are fact testimony. Similarly, his status as a non-economist supports Plaintiffs' position that his analysis of facts is not being used to establish a foundation for economic opinions or damages model.

Furthermore, Defendants' assertion that Plaintiffs' motion lacks specificity is belied by their concession that Plaintiffs have only sought to exclude sub-sections 2.2, 2.3, 2.4, 3.1, and 3.2; which comprise only a small portion of the 105-page Cooper report. *See* Opp. at p. 45. Plaintiffs' Motion provides a narrative summary of each of these sub-sections, which can be easily identified in the report itself. *See* Plaintiffs' Omnibus Motions in Limine Regarding September 12, 2023 Trial, (ECF No. 6706), at pp. 46-47; *see also* Expert Report of Keith F. Cooper, dated Feb. 21, 2022 (ECF No. 6023-2). Despite Defendants' empty claims regarding lack of specificity, their opposition fails to identify a single permissible expert opinion in Sub-Sections 2.2, 2.3, 2.4, and 3.1.1 through 3.1.6. These portions of Mr. Cooper's report have no purpose other than for Mr. Cooper to serve as Defendants' mouthpiece, and to justify their supply restraints in a manner that provides the expert with the "'aura of special reliability' and therefore give[s] his factual testimony undue weight." *York*, 572 F.3d at 425.

The challenged portions of Mr. Cooper's report should be excluded. To the extent that the Court permits such testimony it should come with a special jury instruction. *U.S. v. Smith,* 601 F.3d

530, 540 (6th Cir. 2010) ("[I]t is an error to permit a witness to testify both as a fact witness and as an expert witness unless there is a cautionary jury instruction regarding the witness's dual witness roles or a clear demarcation between the witness's fact testimony and expert opinion testimony.").

  **F.**  **Reply to Defendants' Opposition to MIL No. 16 To Exclude The Opinions And Testimony Regarding Dr. John H. Johnson, IV's Regressions Whose Results Are Displayed In His Exhibits 42, R-4, And R-5**

"[C]hallenges to an expert's choice of variables [in a regression] 'is *normally* a question that goes to the probative weight of the analysis rather than to its admissibility.'" *In re Broiler Chicken Antitrust Litig.*, No. 16-CV-8637, 2022 WL 1720468, at *10 (N.D. Ill. May 27, 2022) (quoting *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 808 (7th Cir. 2013) (emphasis added). Dr. Johnson's splitting of Dr. McClave's regression into five regressions and adding several explanatory variables simultaneously (a Great Recession indicator, population, costs lagged by 12 months, wing-yield variables in his wing regression, leg-yield variables in his leg regression, and whole-bird yield variables in his whole-bird regression), which resulted in multiple coefficients in each regression (at least three in each) that were not statistically significant or not economically sensible means that these regressions are not "normal." This was confirmed by Dr. McClave, who added or substituted Dr. Johnson's additional explanatory variables *one at a time*—adding a separate recession variable, adding Dr. Johnson's population variables, adding population growth (year-over-year), substituting Dr. Johnson's population variables for Dr. McClave's demand variable, substituting population growth (year-over-year) for Dr. McClave's demand variable, adding Dr. Johnson's 12-month lag for costs, and adding Dr. Johnson's yield variables for all parts—and found that his overcharges remained positive and statistically significant. *See* McClave Reply Table 3 and Figure 40 (ECF No. 5891). Because Dr. Johnson's regressions are so mis-specified and lump all his changes together, they should be excluded.

G. **Reply to Defendants' Opposition to MIL No. 17 To Exclude The Opinions And Testimony Regarding Dr. John H. Johnson, IV's So-Called "Price Change Direction" And "MAPPE" "Tests"**

Defendants cite two articles purporting to support Dr. Johnson's two invented tests. Dan Chin, John Geweke, and Preston Miller, "Predicting Turning Points" (Federal Reserve Bank of Minneapolis June 2000) (ECF No. 6262-4), on its face is inapplicable because Dr. McClave's regression is not a forecasting model predicting future behavior and does not seek to identify turning points. William E. Wecker, "Predicting the Turning Points of a Time Series," 52 *J. Bus.* 35 (1979) (ECF No. 6262-5), not only concerns predicting turning points, but on its first page states, "Linear least-square prediction methods are not directly applicable to the prediction of time series 'turning points.'" Dr. Johnson's price change direction "test" employs a linear least-square prediction method (*see* Expert Report of Dr. John H. Johnson, IV dated June 29, 2022 [ECF No. 5972-5], at p. 96, n.285) ("[t]he direction of price changes is calculated using average monthly actual prices and predicted prices)), which, according to Dr. Wecker, confirms Dr. Johnson's "test" is inapplicable. It and Dr. Johnson's MAPPE "test" should be excluded.

H. **Reply to Defendants' Opposition to MIL No. 18 To Exclude The Opinions And Testimony Regarding Dr. James Levinsohn's Regression Whose Results Are Displayed In His Table 5**

Defendants attempt to defend Dr. Levinsohn's use of RGPDI as an explanatory variable because it includes, in part, "private inventories." Opp., at p. 61. That is misleading. As Dr. Frankel stated in his reply in ¶ 182, RGPDI includes the "*change* in private inventories" (emphasis added). And as shown in Frankel Reply Exhibit R-4.10 that "change" hovers around zero and is dwarfed by the other components of RGPDI: real business investment and real residential investment. Because Dr. Levinsohn's explanatory variable for demand in his regression has no economically logical connection to the demand for broiler chicken and the other two explanatory variables for costs and the Great Recession make no economic sense, his regression should be excluded. *Cf. In re High-*

*Tech Employee Antitrust Litig.*, Case No. 11-CV-02509, 2014 WL 1351040, at *21 (N.D. Cal. Apr. 4, 2014) (refusing to exclude plaintiffs' expert's regression where only one explanatory variable had a counter-intuitive coefficient for which plaintiff's expert provide a plausible explanation).

## I. Reply to Defendants' Opposition to MIL No. 19 To Exclude The Opinions And Testimony Regarding Dr. James Levinsohn's Table C5

Defendants do not, because they cannot, cite to any economic literature justifying Dr. Levinsohn's Table C5 "test." *Compare* Opp., at pp. 62-64. Dr. Levinsohn's "test" compares two series of predicted prices and generates a percentage difference. Expert Report of James A. Levinsohn, dated February 21, 2022, (ECF No. 6019-1), at Table C5 n.5. That is not a regression result (although it is derived from Dr. Levinsohn's regressions), and there is no standard to use to evaluate Dr. Levinsohn's different percentages in his Table C5. In other words, Dr. Levinsohn invented his test for this case.

Defendants argue nonsensically that Dr. Levinsohn is using Dr. McClave's model (Opp., at p. 63), even though Dr. Levinsohn eliminated Dr. McClave's benchmark period and cost and demand explanatory variables; limited Dr. McClave's defendant, customer, and product indicators to average, unvarying values across the entire time period; inserted monthly indicators and a time-trend variable; and ran separate models by chicken part. *Id.* Defendants attempt to justify Dr Levinsohn's use of unvarying averages by referencing Dr. McClave's robustness check in *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1175, 2014 WL 7882100 at *17 (E.D.N.Y. Oct. 15, 2014), *report and recommendation adopted*, No. 06-MD-1775, 2015 WL 5093503 (E.D.N.Y. July 10, 2015), where Dr. McClave used a "weighted *monthly* average price for each carrier/country of origin/weight category combination" (emphasis added) as his variable to be explained, not as an explanatory variable. Dr. Levinsohn's Table C5 regressions are nothing like Dr. McClave's regression that Dr. Levinsohn is purportedly testing, nor even like Dr. McClave's robustness check in *Air Cargo*, and

Dr. Levinsohn's made-up, standardless "test" should be excluded.

### J. Reply to Defendants' Opposition to MIL No. 21 To Exclude Undisclosed Evidence From Trial

Defendants' opposition to Plaintiffs MIL No. 21 does not dispute that evidence and witnesses that are not properly disclosed in discovery can be excluded from trial. Rather, Defendants assert that any such analysis must be specifically applied to the specific facts and circumstance relating to the evidence at issue. *See* Opp., at pp. 68-71.

In response and in consideration of these arguments. Plaintiffs offered to withdraw MIL 21, without prejudice to the parties' right to challenge the presentation of any witnesses or exhibits at trial, on the basis of inadequate or untimely disclosure. *See* Pouya Reply Decl., at ¶ 4. The parties have already engaged in this process through their exchange pre-trial disclosures, which have included meet and confers regarding witnesses and exhibits that the parties have asserted have not been timely disclosed. This process should continue without undue prejudice to either side.

Defendants rejected this reasonable proposal and insisted on a "waiver of the right to make Rule 37 objections" exclusive to Plaintiffs as to evidence or witnesses disclosed at any time prior to the filing of MIL No. 21. *Id.* There is no justification for Defendants' rejection of Plaintiffs proposal, or insistence on a one-way blanket waiver of objections to Defendants' inadequate disclosure. The Court should accept Plaintiffs' withdrawal of MIL No. 21, and determine the appropriateness of requests for exclusion, in the context of any such specific request that arise once the parties disclose their final pretrial memorandum on September 1, 2023.

Dated: August 23, 2023

By: s/ Bobby Pouya

Clifford H. Pearson, Esquire
Daniel L. Warshaw, Esquire
Bobby Pouya, Esquire
Michael H. Pearson, Esquire
PEARSON WARSHAW, LLP
15165 Ventura Boulevard
Suite 400
Sherman Oaks, CA 92403
Tel: (818) 788-8300
Fax: (818) 788-8104
E-mail: cpearson@pwfirm.com
    dwarshaw@pwfirm.com
    bpouya@pwfirm.com
    mpearson@pwfirm.com

Bruce L. Simon, Esquire
Jill M. Manning, Esquire
PEARSON WARSHAW, LLP
555 Montgomery Street
Suite 1205
San Francisco, CA 94111
Tel: (415) 433-9000
Fax: (415) 433-9008
E-mail: bsimon@pwfirm.com
    jmanning@pwfirm.com

W. Joseph Bruckner, Esquire
Brian D. Clark, Esquire
Simeon A. Morbey, Esquire
Kyle Pozan, Esquire
LOCKRIDGE GRINDAL NAUEN P.L.L.P
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981
E-mail: wjbruckner@locklaw.com
    bdckark@locklaw.com
    samorbey@locklaw.com
    kjpozan@locklaw.com

*Co-Lead Class Counsel for Direct Purchaser Plaintiffs*

Respectfully,

By: s/ Paul E. Slater
Paul E. Slater, Esquire
Joseph M. Vanek, Esquire
David P. Germaine, Esquire
Phillip F. Cramer, Esquire
John P. Bjork, Esquire
SPERLING & SLATER, P.C.
55 West Monroe Street
Suite 3200
Chicago, Illinois 60603
Tel: (312) 641-3200
Fax: (312) 641-6492
E-mail: PES@Sperling-law.com
    JVanek@Sperling-law.com
    DGermaine@Sperling-law.com
    Cramer@Sperling-law.com
    JBjork@Sperling-law.com

Ryan T. Holt, Esquire
Christina R.B. Lopez, Esquire
SHERRARD ROE VOIGT & HARBISON, PLC
150 3rd Avenue South
Suite 1100
Nashville, TN 37201
Tel: (615) 742-4200
E-mail: rholt@srvhlaw.com
    clopez@srvhlaw.com

*Counsel for Plaintiffs Associated Grocers of the South, Inc., Meijer, Inc., Meijer Distribution, Inc., OSI Restaurant Partners, LLC, Publix Super Markets, Inc., Supervalu Inc.; Unified Grocers, Inc.; Associated Grocers of Florida, Inc.; and Wakefern Food Corp. (the "Publix DAPs")*

By: s/ William J. Blechman
William J. Blechman, Esquire
Kevin J. Murray, Esquire
Douglas H. Patton, Esquire
Samuel J. Randall, Esquire
Michael A. Ponzoli, Esquire
KENNY NACHWALTER, P.A.
1441 Brickell Avenue
Suite 1100
Miami, Florida 33131
Tel: (305) 373-1000
Fax: (305) 372-1861
E-mail: wblechman@knpa.com
   kmurray@knpa.com
   dpatton@knpa.com
   srandall@knpa.com
   mponzoli@knpa.com

***Counsel for Plaintiffs The Kroger Co., Albertsons Companies, Inc., Hy-Vee, Inc., and Save Mart Supermarkets (the "Kroger DAPs")***

By: s/ Patrick J. Ahern
Patrick J. Ahern, Esquire
AHERN AND ASSOCIATES, P.C.
8 South Michigan Avenue, Suite 3600
Chicago, Illinois 60603
Tel: (312) 404-3760
patrick.ahern@ahernandassociatespc.com

***Counsel for Plaintiffs Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC (the "Winn-Dixie DAPs")***

By: s/ Daniel D. Owen
Daniel D. Owen, Esquire
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Tel: (816) 753-1000
Fax: (816) 753-1536
E-mail: dowen@polsinelli.com

Rodney L. Lewis, Esquire
POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, Illinois 60606
Tel: (312) 819-1900
Fax: (312) 819-1910
E-mail: rodneylewis@polsinelli.com

***Counsel for Plaintiff Associated Wholesale Grocers, Inc.***

997335.2

14

By: s/ Robert N. Kaplan
Robert N. Kaplan, Esquire
Gregory K. Arenson, Esquire
Matthew P. McCahill, Esquire
Jason Uris, Esquire
KAPLAN FOX & KILSHEIMER, LLP
800 Third Avenue, 38th Floor
New York, N.Y. 10022
Tel: (212) 687-1980
E-mail: rkaplan@kaplanfox.com
   garenson@kaplanfox.com
   mmccahill@kaplanfox.com
   juris@kaplanfox.com

Solomon B. Cera, Esquire
CERA LLP
201 California Street, Suite 1240
San Francisco, CA 94111
Tel: (415) 777-2230
E-mail: scera@cerallp.com

C. Andrew Dirksen, Esquire
CERA LLP
800 Boylston Street, 16th Floor
Boston, MA 02199
Tel: (857) 453-6555
E-mail: cdirksen@cerallp.com

Elizabeth H. Black, Esquire
HAYNSWORTH SINKLER BOYD P.A.
1201 Main Street, 22nd Floor
Columbia, SC 29201-3226
Tel: (803) 540-7753
E-mail: eblack@hsblawfirm.com

Jay W. Matthews, III, Esquire
HAYNSWORTH SINKLER BOYD P.A.
1 North Main Street, 2nd Floor
Greenville, SC 29601
Tel: (864) 240-3200
E-mail: jmatthews@hsblawfirm.com

Eric R. Lifvendahl, Esquire
LIFVENDAHL LAW, LLC
265 Latrobe Ave.
Northfield, IL 60093
E-mail: eric@liflaw.com

Richard L. Coffman, Esquire
THE COFFMAN LAW FIRM
3355 West Alabama, Suite 240
Houston, Texas 77098
Tel: (713) 528-6700
E-mail: rcoffman@coffmanlawfirm.com


Bernard D. Marcus, Esquire
Moira Cain-Mannix, Esquire
Brian C. Hill, Esquire
MARCUS & SHAPIRA LLP
One Oxford Center, 35th Floor
Pittsburgh, PA 15219
Tel: (412) 471-3490
E-mail: marcus@marcus-shapira.com
      cain-mannix@marcus-shapira.com
      bhill@marcus-shapira.com

*Counsel for Action Meat Distributors, Inc.; Affiliated Foods, Inc.; Alex Lee, Inc./Merchants Distributors, LLC; Associated Food Stores, Inc.; Associated Grocers of New England, Inc.; Associated Grocers, Inc.; Bashas' Inc.; Big Y Foods, Inc.; Brookshire Bros., Inc.; Brookshire Grocery Company; CBBC Opco, LLC d/b/a Colorado Boxed Beef; Certco, Inc.; Columbia Meats, Inc.; Fareway Stores, Inc.; Giant Eagle, Inc.; Greenville Meats, Inc.; Howard Samuels as Trustee in Bankruptcy for Central Grocers, Inc.; Ira Higdon Grocery Company, Inc.; King Solomon Foods, Inc.; Latina Boulevard Foods, LLC; Nicholas & Co., Inc.; Pacific Food Distributors, Inc.; Piggly Wiggly Alabama Distributing Co., Inc.; S&S Trading, LLC; Schnuck Markets, Inc.; SpartanNash Company; Springfield Grocer Co. (d/b/a SGC Foodservice); The Distribution Group, Inc. (d/b/a Van Eerden Foodservice Company); The Golub Corporation; Topco Associates, LLC; Troyer Foods, Inc.; URM Stores, Inc.; W. Lee Flowers & Company, Inc.; Weinstein Wholesale Meats, Inc.; and Woodman's Food Market, Inc.*

997335.2             15