UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 16 C 8637 <br><br> Judge Thomas M. Durkin |

ORDER

Defendant Fieldale Farms concedes that its President agreed that Fieldale would pay $4.1 million to a group of plaintiffs ("Plaintiffs") in exchange for dismissal of Plaintiffs' claims against Fieldale in this case. The agreement was initially reached during a mediation session and then confirmed by a subsequent email. The parties agreed to work together to memorialize the agreement in writing, with Fieldale sending the initial draft. Before Plaintiffs could respond, the Court issued its decision granting summary judgment to Fieldale. Fieldale then withdrew from the agreement. Plaintiffs have moved to enforce the agreement.

The mediation occurred in Massachusetts and so Fieldale urges the Court to apply Massachusetts law to determine whether the agreement is enforceable. Fieldale argues that Massachusetts law prohibits the use of mediation communications made in the presence of a certified mediator to enforce a settlement unless it has been memorialized in a signed writing. *See* R. 6721 at 6-7.

It is unnecessary for the Court to reach that issue because the agreement was confirmed in an unprivileged email. As mentioned, On June 27, 2023, the same day as the mediation, Fieldale's counsel confirmed by email that Fieldale's president

"approved the settlement value ($4.1m)." R. 6649-7 at 3. This email copied the mediator, Fouad Kurdi, and so Fieldale argues it was covered by the Massachusetts mediation privilege. Three days later on June 30, Fieldale's counsel forwarded the email chain started on June 27—including the June 27 email approving the settlement—with the draft agreement as an attachment. The June 30 email did not copy the mediator and so cannot have been privileged under Massachusetts law. By forwarding the June 27 email confirming the settlement amount without copying the mediator, Fieldale destroyed any mediation privilege that might have existed for the contents of the June 27 email. In sum, to the extent Massachusetts law prohibits Plaintiffs from using privileged mediation communications to prove the agreement, there remains sufficient non-privileged evidence of the agreement, namely the June 27 email as forwarded on June 30, and the draft agreement itself. This evidence is sufficient to demonstrate that Fieldale and Plaintiffs agreed that Fieldale would pay $4.1 million to Plaintiffs in exchange for Plaintiffs dropping their claims against Fieldale in this case.

Nevertheless, Fieldale argues that this oral agreement is not enforceable for two reasons: (1) the parties did not have the "present intent" to agree; and (2) the parties never reached agreement on "several material terms." But these two arguments are really two sides of the same coin, because "whether a 'meeting of the minds' occurred depends on the parties' objective conduct, not their subjective

2

beliefs." *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007).[1] It is undisputed that the parties anticipated a written agreement, hence the Fieldale's references to expressions of a "desire" to settle, Fieldale's message that it was "happy to start" with the draft agreement," and that the draft would be "subject to approval." But these are expressions of subjective belief. The parties' objective conduct is embodied in the terms they settled at the mediation and the terms they left open to the drafting process.

Following this line of the argument, Fieldale argues that the written agreement never finally settled several material terms, including: (1) terms of payment; (2) governing law and jurisdiction; (3) the scope of the release and a potential covenant not to sue; and (4) language regarding a cooperation provision. To the extent these terms are material, the parties did not have the present intent to agree.

Despite Fieldale's insistence of the materiality of these terms, Fieldale cannot seriously contend that they constitute the "heart of the agreement," as the Seventh Circuit requires for a finding of materiality. *See Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 508 (7th Cir. 2007). Clearly, the parties were focused on releasing the claims for

---

[1] Fieldale has not identified a material difference between Illinois and Massachusetts law on contract interpretation (other than the mediation privilege, which the Court has found does not apply here). *See W. Side Salvage, Inc. v. RSUI Indem. Co.*, 878 F.3d 219, 223 (7th Cir. 2017) ("The party who seeks a choice-of-law determination must establish the existence of an outcome-determinative conflict. If the party fails to establish the existence of such a conflict, the court applies the law of the forum state."). So under Illinois conflict of law rules there is no reason not to apply Illinois law, which was the applicable law in *Dillard*.

a monetary payment because that's what they discussed at the mediation. Moreover, that is what this case is about. Fieldale has not identified any other aspect of the parties' relationship—for instance, terms for their future business dealings—that were discussed during the mediation or were intended to be settled in the written agreement. The only terms relevant to the parties' real-world relationship are the $4.1 million payment and dismissal of the claims. Those claims were settled during mediation.

The terms Fieldale cites concern the manner in which the agreement would be implemented, not the agreement itself. Similar terms are a part of nearly all settlements of cases, no matter how complex or simple. While they are important terms, they are not the heart of the parties' dispute or settlement, and so they are not material. Most courts find that when parties agree on a monetary amount for the plaintiff to drop all claims, the other terms and details implementing that agreement are not material. *See Beverly v. Abbott Labs.*, 817 F.3d 328, 335 (7th Cir. 2016) (plaintiff that agreed to release her claims in return for $210,000 and payment of mediation fees could not later assert that provisions added to a draft relating to "indemnification, future cooperation between the parties, [plaintiff's] future employment options with [defendant], the precise allocation of settlement funds, and express language concerning release and waiver" were all essential to the agreement); *Wilson v. Wilson*, 46 F.3d 660, 667 (7th Cir. 1995) (an agreement by a plaintiff to "drop all of his claims against the defendants in exchange for their offer to settle his claims for $1.2 million" is definite and certain enough to be enforced despite the

4

failure to negotiate a form of release); *see also Rogers v. Union Pac. R.R. Co.*, 2022 WL 17176497, at *2, 4 (N.D. Ill. Nov. 22, 2022) (rejecting argument that missing choice-of-law and other provision were material); *Transportation Ins. Co. v. Island Food Stores, Ltd.*, 2011 WL 209920, at *5 (N.D. Ill. Jan. 20, 2011) ("The fact that the Parties' attorneys had not yet worked out the verbage of the written settlement agreement or the particulars of the releases does not undermine the existence of the underlying contract.").

Therefore, Plaintiffs' motion to enforce their settlement with Fieldale [6648] is granted.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: September 6, 2023

5