**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

IN RE BROILER CHICKEN
ANTITRUST LITIGATION

Case No. 1:16-cv-08637

Hon. Judge Thomas M. Durkin

**PRELIMINARY JURY INSTRUCTIONS**

# TABLE OF CONTENTS

Functions of the Court and the Jury .................................................................................. 1

Jury conduct ......................................................................................................................... 2

Note taking .......................................................................................................................... 3

All litigants equal before the law ....................................................................................... 4

What is Evidence ................................................................................................................. 5

What is not evidence ........................................................................................................... 6

Consideration of all evidence regardless of who introduced it .......................................... 7

Number of witnesses ........................................................................................................... 8

Absence of evidence ........................................................................................................... 9

Testimony of witnesses (deciding what to believe) ......................................................... 10

Weighing the evidence ...................................................................................................... 11

Definition of "direct" and "circumstantial" evidence ...................................................... 12

Stipulations of fact ............................................................................................................ 13

Deposition testimony ........................................................................................................ 20

Prior inconsistent statements ............................................................................................ 21

Use of interrogatories ....................................................................................................... 22

Demonstrative exhibits ..................................................................................................... 23

Opinion witnesses ............................................................................................................. 24

Burden of proof ................................................................................................................. 25

General overview ............................................................................................................... 26

Other entities .................................................................................................................... 29

Class action ....................................................................................................................... 30

Purpose of Sherman Act .................................................................................................... 31

Definition, existence, and evidence of a conspiracy ........................................................ 32

ii

Participation and intent ................................................................................................... 35

Corporations .................................................................................................................... 36

Multiple plaintiffs ........................................................................................................... 38

Communication with the Court ....................................................................................... 39

Disagreement among jurors ............................................................................................ 40

Cautionary instruction before recess .............................................................................. 41

No inference from Judge's questions ............................................................................... 42

Limited purpose of evidence ........................................................................................... 43

Juror Questions ............................................................................................................... 44

***

## Functions of the Court and the Jury

Members of the jury, I will now read preliminary jury instructions. At the close of the trial, after you have seen and heard all the evidence and arguments of the attorneys, I will read the final jury instructions, which may be modified based on the evidence as it is presented at trial.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone. Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially. Do not allow sympathy, prejudice, fear, or public opinion to influence you. You should not be influenced by any person's race, color, religion, national ancestry, or sex.

Nothing I say now, and nothing I say or do during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

1

### Jury conduct

All jurors must follow certain rules of conduct, and you must follow them, too.

First, you must not discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. You must not communicate with anyone about this case through email, text messaging, blogs, social media, or apps. You must not let others discuss the case with you. If anyone tries to talk to you about the case, please let me know about it immediately.

Second, you must not read any news stories or articles or listen to any radio or television reports about the case or about anyone who has anything to do with it.

Third, you must not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own.

Fourth, if you need to communicate with me, you must give a signed note to the clerk to give to me.

Fifth, you must not make up your mind about what the verdict should be until after you have gone to the jury room to decide that case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

**Note taking**

The Court will provide you with binders containing blank lined paper for you to take notes during the trial. At the beginning of each week, the clerk will distribute to each of you pages for your binders with photos of each witness who testified the week before.

Any notes you take during this trial are only aids to your memory. The notes are not evidence. If you do not take notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

**All litigants equal before the law**

  In this case some of the parties are corporations. All parties are equal before the law. These entities are entitled to the same fair consideration that you would give any individual person. That a corporate representative is not present in court should not be taken as an indication that they are not intensely interested in these proceedings. It is merely that there is not enough space in the courtroom for them to attend.

**What is Evidence**

The evidence consists of the witnesses' testimony, the exhibits admitted in evidence, interrogatory responses, admissions, and stipulations of fact. A stipulation of fact is an agreement between both sides that certain facts are true. I may take judicial notice of certain facts. You must accept those facts, if any, as proved.

**What is not evidence**

Certain things are not to be considered as evidence. I will list them for you: First, if I tell you to disregard any testimony or exhibits or strike any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may see or hear outside the courtroom is not evidence and must be entirely disregarded. This includes any press, radio, Internet, or television reports you may see or hear. Such reports are not evidence, and your verdict must not be influenced in any way by such publicity.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements, interim statements, and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

### Consideration of all evidence regardless of who introduced it

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

**Number of witnesses**

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.

**Absence of evidence**

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

**Testimony of witnesses (deciding what to believe)**

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness's intelligence;

- the manner of the witness while testifying; and

- the reasonableness of the witness's testimony in light of all the evidence in the case.

**Weighing the evidence**

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

**Definition of "direct" and "circumstantial" evidence**

You may hear the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, direct evidence that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

**Stipulations of fact**

The parties have stipulated, which means they have agreed, that the following facts are true:

## CHICKEN PRODUCERS

1.     The chicken producers, as listed below, either directly or through their wholly-owned or controlled affiliates, produced, sold, and shipped chicken in a continuous and uninterrupted flow of interstate commerce.

**Amick Farms**

2.     Amick Farms, LLC is a limited liability company organized in Delaware with its headquarters located in Batesburg-Leesville, South Carolina, and it operates facilities in South Carolina, Maryland, and Delaware.

3.     Amick Farms, LLC is a majority-owned subsidiary of OSI Group, LLC, which is itself a privately held Delaware limited liability company headquartered in Aurora, Illinois.

4.     Amick sold broilers in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

**George's**

5.     George's Inc. is a privately held Arkansas corporation headquartered in Springdale, Arkansas.

6.     George's Farms, Inc., is a privately held Arkansas corporation headquartered in Springdale, Arkansas.

7.     George's sold broilers in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

**Harrison**

13

8.    Harrison Poultry, Inc. is a Georgia corporation headquartered in Bethlehem, Georgia.

9.    Harrison sold broilers in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

**House of Raeford**

10.    House of Raeford Farms, Inc. is an agricultural marketing cooperative incorporated under North Carolina law with its main office in Rose Hill, North Carolina.

11.    HRF sold broilers in interstate commerce to its direct purchaser customers in certain parts of the United States.

**Keystone**

12.    Keystone Foods, LLC was formerly an indirect subsidiary of Marfrig Alimentos, S.A., a Brazilian company, and a part of the Keystone Foods business.

13.    On November 30, 2018, Tyson Foods, Inc. announced it had completed its acquisition of the Keystone Foods business from Marfrig. Tyson Foods, Inc. characterized the acquisition of the Keystone Foods business as Tyson Foods' latest investment in furtherance of its growth strategy and expansion of its value-added protein capabilities. Tyson Foods, Inc.'s acquisition of the Keystone Foods business was structured as a stock acquisition, which resulted in Tyson Foods, Inc.'s acquisition of all assets and liabilities of the Keystone Foods business. Keystone Foods, LLC continued to exist as an operating entity subsequent to the acquisition.

14.    Equity Group Eufaula Division, LLC was a Delaware limited-liability company with its headquarters in Bakerhill, Alabama and was an indirect subsidiary of Grow-Out Holdings, LLC.

15.     Equity Group Kentucky Division, LLC, formerly known as Cagles-Keystone Foods, LLC, was a Delaware limited liability company with its headquarters in West Conshohocken, Pennsylvania and was a wholly-owned subsidiary of Grow-Out Holdings, LLC.

16.     Equity Group Kentucky Division LLC sold broilers in interstate commerce, directly or through its wholly- owned or controlled affiliates, to purchasers in the United States.

17.     Equity Group – Georgia Division LLC was a Delaware limited liability company with its headquarters in Camilla, Georgia, and was a wholly-owned subsidiary of Grow-Out Holdings, LLC.

18.     Keystone Foods LLC, Equity Group – Georgia Division LLC, Equity Group Kentucky Division LLC, and Equity Group Eufaula Division, LLC sold broilers in interstate commerce, directly or through their wholly-owned or controlled affiliates, to purchasers in the United States.

19.     As a result of Tyson Foods' acquisition of the Keystone Foods business, Tyson also acquired all of the assets and liabilities of Keystone Foods, LLC, Equity Group Eufaula Division, LLC, Equity Group Kentucky Division, LLC, and Equity Group – Georgia Division, LLC.

**Koch**

20.     Koch Foods, Inc. is a privately held company headquartered in Park Ridge, Illinois.

21.     Koch, directly or through their subsidiaries, sold broilers in interstate commerce to purchasers in the United States.

22.     An affiliate of Koch Foods, Inc. purchased the assets of Cagle's Inc. in June 2012.

**Mar-Jac**

23.     Mar-Jac Poultry, Inc. is a Georgia corporation located in Gainesville, Georgia. Mar-Jac Poultry MS, LLC is a Mississippi limited liability company located in Mississippi. Mar-Jac Poultry AL, LLC is an Alabama limited liability company located in Alabama. Mar-Jac AL/MS, Inc. is a Delaware corporation located in Gainesville, Georgia. Mar-Jac Poultry, LLC is a Delaware limited liability company located in Alabama. Mar-Jac Holdings, Inc. is a Delaware corporation located in Gainesville, Georgia.

24.     Mar-Jac sold broilers in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

**Mountaire**

25.     Mountaire Farms Inc. is a privately held corporation with its headquarters in Millsboro, Delaware.

26.     Mountaire Farms LLC is a privately held Arkansas corporation located in Little Rock, Arkansas.

27.     Mountaire Farms of Delaware, Inc. is a privately held Delaware corporation located in Millsboro, Delaware.

28.     Mountaire sold broilers in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

**O.K. Foods**

29.     O.K. Foods, Inc. is an Arkansas corporation headquartered in Fort Smith, Arkansas.

30.     O.K. Foods, Inc. is a private company and non-public, wholly-owned subsidiary of Industrias Bachoco.

31.     O.K. Foods, Inc. sold broilers in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

**Pilgrim's**

32.     Pilgrim's Pride Corporation is a publicly held Delaware corporation headquartered in Greeley, Colorado.

33.     Pilgrim's sold broilers in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

**Peco**

34.     Peco Farms of Mississippi, LLC is a Mississippi limited-liability company and is a wholly-owned subsidiary of Peco Foods, Inc.

35.     Peco sold broilers in interstate commerce, directly or through its owned or controlled subsidiaries and affiliates, to purchasers in the United States.

**Sanderson**

36.     Sanderson Farms, Inc. was a publicly held corporation headquartered in Laurel, Mississippi. Sanderson Farms, Inc. (Foods Division) was a Mississippi corporation located in Laurel, Mississippi, and was a wholly-owned subsidiary of Sanderson Farms, Inc. Sanderson Farms, Inc. (Production Division) was a Mississippi corporation located in Laurel, Mississippi, and was a wholly-owned subsidiary of Sanderson Farms, Inc. Sanderson Farms, Inc. (Processing Division) was a Mississippi corporation located in Laurel, Mississippi, and was a wholly-owned subsidiary of Sanderson Farms, Inc.

37.     Sanderson sold broilers in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

38.     In 1989, Joe Sanderson became president and CEO of Sanderson. During the conduct at issue, Joe Sanderson was chairman and CEO of Sanderson.

**Simmons**

39.     Simmons Foods, Inc. is a privately held Arkansas corporation headquartered in Siloam Springs, Arkansas.

40.     Simmons Prepared Foods, Inc. is a privately held Arkansas company headquartered in Siloam Springs, Arkansas.

41.     Simmons sold broilers in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

**Tyson**

42.     Tyson Foods, Inc. is a publicly traded Delaware corporation headquartered in Springdale, Arkansas. Tyson Chicken, Inc. is a Delaware corporation headquartered in Springdale, Arkansas and is a wholly-owned subsidiary of Tyson Foods, Inc. Tyson Breeders, Inc. is a Delaware corporation headquartered in Springdale, Arkansas and is a wholly-owned subsidiary of Tyson Foods, Inc. Tyson Poultry, Inc. is a Delaware corporation headquartered in Springdale, Arkansas and is a wholly-owned subsidiary of Tyson Foods, Inc.

43.     Tyson sold broilers in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

## OTHER ENTITIES

**Southern Hens, Inc.**

44.     Southern Hens, Inc. is a Mississippi corporation headquartered in Moselle, Mississippi.

**Tip Top Poultry, Inc.**

45.     Tip Top Poultry, Inc. is a Georgia corporation headquartered in Marietta, Georgia and with facilities in other states, including Oklahoma.

**Agri Stats, Inc.**

46.     Agri Stats, Inc. is an Indiana corporation with its headquarters in Fort Wayne, Indiana.

47.     Express Markets, Inc. is a wholly owned subsidiary of Agri Stats.  Express Markets, Inc. is an Indiana corporation headquartered in Fort Wayne, Indiana.

You must now treat these facts as having been proved for the purpose of this case.

**Deposition testimony**

During the trial, certain testimony will be presented to you by reading deposition transcripts and showing videotaped depositions of witnesses. A deposition is the sworn testimony of a witness taken before a trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. You should give this deposition testimony the same consideration you would give it had the witnesses appeared and testified here in court.

### Prior inconsistent statements

You may consider statements given by a witness under oath before trial as evidence of the truth of what he said in the earlier statements, as well as in deciding what weight to give the witness's testimony.

With respect to other witnesses, the law is different. If you decide that, before the trial, one of these witnesses made a statement not under oath that is inconsistent with the witness's testimony here in court, you may consider the earlier statement only in deciding whether the witness's testimony here in court was true and what weight to give to the witness's testimony here in court.

In considering a prior inconsistent statement, you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.

**Use of interrogatories**

Evidence may be presented to you in the form of written answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before this trial in response to written questions. You must give the answers the same consideration as if the answers were made from the witness stand.

**Demonstrative exhibits**

Certain demonstrative exhibits, such as charts, graphs, diagrams, drawings, slides, and other graphics, will be shown to you throughout the trial. Those demonstrative exhibits are used for convenience and to help explain the facts of the case. They are not themselves evidence or proof of any facts.

**Opinion witnesses**

You will hear witnesses give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such a person has given such an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all the other evidence in the case.

**Burden of proof**

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find" or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

## General overview

I will now give you a brief summary of the parties and the case. The plaintiffs are businesses that allege that they purchased chicken directly from the defendant or other chicken producers. The defendant is a business that produces and sells chicken in the United States. In this case, you will hear evidence about chicken and broilers. These two words – chicken and broilers – both refer to chicken that people eat.

There are two groups of plaintiffs: the class plaintiffs and the individual plaintiffs. The class plaintiffs are bringing claims on behalf of a class of businesses to recover alleged overcharges on their purchases of chicken. When I refer to the class plaintiffs, I am referring to all of the members of the class and the five plaintiffs who are representing the class. Unless I instruct you otherwise, you may consider the class as if it were a single plaintiff for purposes of these instructions.

The second group of plaintiffs are the individual plaintiffs. The individual plaintiffs are businesses that are bringing claims on behalf of themselves to recover alleged overcharges on their purchases of chicken. I will refer to both the class plaintiffs and individual plaintiffs collectively as plaintiffs.

The individual plaintiffs are:

- Action Meat Distributors, Inc.

- Affiliated Foods, Inc.

- Albertsons Companies, Inc.

- Alex Lee, Inc.

- Associated Food Stores, Inc.

- Associated Grocers, Inc.

- Associated Grocers of Florida, Inc.

- Associated Grocers of New England, Inc.

- Associated Grocers of the South, Inc.

- Associated Wholesale Grocers, Inc.

- Bashas' Inc.

- Big Y Foods, Inc.

- Bi-Lo Holdings, LLC

- Brookshire Brothers, Inc.

- Brookshire Grocery Company

- Colorado Boxed Beef Co.

- Certco, Inc.

- Columbia Meats, Inc.

- The Distribution Group, Inc.

- Fareway Stores, Inc.

- Giant Eagle, Inc.

- Golub Corporation

- Greenville Meats, Inc.

- Howard Samuels, Trustee in Bankruptcy for Central Grocers, Inc.

- Hy-Vee, Inc.

- Ira Higdon Grocery Company, Inc.

- King Solomon Foods, Inc.

- The Kroger Co.

- Latina Boulevard Foods, LLC

- Meijer, Inc.

- Nicholas & Co., Inc.

- OSI Restaurant Partners, LLC

- Pacific Food Distributors, Inc.

- Piggly Wiggly Alabama Distributing Co., Inc.

- Publix Super Markets, Inc.

- S&S Trading, LLC

- Save Mart Supermarkets

- Schnuck Markets, Inc.

- SpartanNash Co.

- Springfield Grocer Co.

- SuperValu Inc.

- Topco Associates, LLC

- Troyer Foods, Inc.

- Unified Grocers, Inc.

- URM Stores, Inc.

- W. Lee Flowers & Co.

- Wakefern Food Corp.

- Weinstein Wholesale Meats, Inc.

- Winn-Dixie Stores, Inc.

- Woodman's Food Market

The defendant is Sanderson Farms, Inc.

### Other entities

The following chicken producers and Agri Stats, EMI, and Rabobank are not defendants in this case: Case Foods, Claxton Poultry, Fieldale Farms, Foster Farms, Perdue Farms, and Wayne Farms. Plaintiffs do not allege that these entities are part of a conspiracy. Do not speculate on the reasons.

The following chicken producers are not defendants, but plaintiffs allege that they are co-conspirators: Amick Farms, George's, Harrison Poultry, House of Raeford Farms, Keystone Foods, Koch Foods, Mar-Jac, Mountaire Farms, O.K. Foods, Peco Foods, Pilgrim's Pride, Simmons Foods, and Tyson Foods, Inc. While you may hear evidence regarding some of these alleged co-conspirators, you should not consider why they are not at trial.

## Class action

Part of this case is brought as a class action. A class action is a lawsuit that has been brought by one or more persons or businesses called class representatives on behalf of a larger group of people or businesses who have similar legal claims. All of these people or businesses together are called a class. A class action lawsuit allows the claims of many persons or businesses to be resolved at the same time, rather than requiring each person or business to sue separately. The fact that this case is proceeding as a class action does not mean any decision has been made about the merits of the case, and you must not infer anything about the merits of this case based on the fact that it is a class action.

The five plaintiffs representing the class are: Maplevale Farms; John Gross & Company; Cedar Farms; Ferraro Foods, Inc.; and Joe Christiana Food Distributors.

### Purpose of Sherman Act

The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress. I may refer to the Sherman Act as the antitrust laws.

**Definition, existence, and evidence of a conspiracy**

Plaintiffs allege that defendant entered a conspiracy to restrain trade by limiting the supply of chicken in order to increase prices. A conspiracy is an agreement or understanding between two or more persons or businesses to restrain trade in the way alleged by plaintiffs.

Plaintiffs must prove both of the following elements by a preponderance of the evidence:

(1) that the alleged conspiracy existed; and

(2) that defendant knowingly became a member of that conspiracy. To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason.

The basis of a conspiracy is an agreement or understanding between two or more persons or businesses. An agreement or understanding between two or more persons or businesses exists when they share a commitment to a common scheme. To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken. A person or business can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the alleged conspiracy. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time. Similarly, it is not essential that all persons or businesses acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by plaintiff were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that everyone alleged to be members of the conspiracy were actually members. It is the agreement or understanding to limit chicken supply that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed.

Plaintiffs may prove the existence of the alleged conspiracy through direct evidence, circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy.

Direct evidence of an agreement may not be available, and therefore a conspiracy also may be shown through circumstantial evidence. You may infer the existence of a conspiracy from the circumstances, including what you find the alleged members actually

did and the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy. If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

In determining whether an agreement or understanding between two or more persons or businesses has been proved, you must view the evidence as a whole and not piecemeal.

**Agreement to limit supply**

Plaintiffs claim that defendant and other chicken producers are competitors and have violated the Sherman Act by agreeing to limit the supply of chicken in order to raise prices. Defendant denies this claim.

A business has the right to determine on its own how much of its product to produce, provided that the decision results from the exercise of an independent business judgment and not from any agreement with a competitor. The Sherman Act prohibits agreements between competitors that limit how much of a product one or more of them will produce.

By way of example, this includes an agreement by two or more competitors that one of them will reduce the amount of a product it produces in competition with the other's products, to set a quota on the amount of product to be produced, or to require one of them to discontinue the development or production of a product which the other will continue to produce and sell.

To prevail on this claim against the defendant, plaintiffs must prove each of the following elements by a preponderance of the evidence:

(1) defendant and at least one other chicken producer were competitors;

(2) defendant and at least one other chicken producer entered into an agreement;

(3) defendant and at least one other chicken producer agreed that the supply of chicken would be limited; and

(4) plaintiffs were injured in their business or property because of the agreement.

If you find that the evidence is insufficient to prove any one or more of these elements as to the defendant, then you must find for the defendant and against plaintiffs on plaintiffs' claim that the defendant conspired to limit the supply of chicken. If you find that the evidence is sufficient to prove all four elements as to the defendant, then you must find for plaintiffs and against the defendant on the plaintiffs' claim with respect to an agreement to limit supply.

34

**Participation and intent**

Before you can find that defendant was a member of the conspiracy alleged by plaintiffs, the evidence must show that defendant knowingly joined in the unlawful plan at its inception, or at some later time, with the intent to further the purpose of the conspiracy.

To act knowingly means to participate deliberately and not because of mistake, accident, or other innocent reason. A person or business may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, or the parts they played. Knowledge of the essential nature of the plan is enough. On the other hand, a person or business who has no knowledge of a conspiracy but happens to act in a way that helps the conspiracy succeed, does not thereby become a conspirator.

A person or business who knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if they had been one of those who formed or began the conspiracy and participated in every part of it.

In determining whether defendant or another chicken producer was a member of the alleged conspiracy, you should consider only the evidence about that particular defendant's or alleged co-conspirator's statements and conduct, including any evidence of that defendant's or alleged co-conspirator's knowledge and participation in the events involved and any other evidence of that particular defendant's or alleged co-conspirator's participation in the conspiracy alleged.

You may not find that defendant or an alleged co-conspirator was a member of a conspiracy based only on its association with or knowledge of wrongdoing, but it is a factor you may consider to determine whether defendant or an alleged co-conspirator was a member of the alleged conspiracy.

If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those whom you find were members of the conspiracy.

Once you have found that defendant or an alleged co-conspirator is a member of a conspiracy, it is presumed to remain a member and is responsible for all actions taken by all co-conspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned.

## Corporations

Under the law, a corporation is a person, but it acts only through its agents. A corporation's agents include its directors, officers, employees, or others acting on its behalf. A corporation is not capable under the law of conspiring with its own agents, its unincorporated divisions, or its wholly-owned subsidiaries. Through its agents, however, a corporation is capable of conspiring with other persons or independent corporations.

A corporation is legally bound by the acts and the statements of its agents or employees done or made within the scope of the agent's employment or apparent authority.

Acts done within the scope of employment are acts performed on behalf of a corporation or a limited liability company and directly related to the performance of the duties the agent has general authority to perform. Apparent authority is the authority that persons outside the corporation could reasonably believe the agent would have, judging from his or her position with the company, the responsibilities previously entrusted to the person or the office, and the circumstances surrounding his or her past conduct. An agent can have apparent authority even when, despite these appearances, the agent is actually acting in a dishonest, fraudulent, or anti-competitive manner.

To summarize, for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his or her employment with apparent authority.

The fact that a corporation has instructed its agents not to violate the antitrust laws does not excuse the corporation from responsibility for the unlawful acts of its agents done within the scope of their employment or apparent authority.

A corporation is entitled to the same fair trial as a private individual. The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established by the preponderance of the evidence. All persons, including corporations, are equal before the law.

**Use of membership organizations to commit antitrust violations**

Businesses that are actual or potential competitors, such as the defendant and alleged co-conspirators here, may lawfully form into trade, industry, or professional associations or similar organizations ("trade associations") to advance common interests, and may communicate and meet with one another in furtherance of lawful trade association activities. For example, trade associations may lawfully keep members informed and hold meetings among their members for topics such as new or changed services, technology, standard practices, or legislation and regulations in the industry.

Trade associations, however, may not be used by members to commit violations of the antitrust laws. For example, a trade association cannot be used as a vehicle by its members to reach an agreement or understanding between two or more persons or businesses to limit the supply of products in a market in which those business compete.

If members use a trade association to exchange with each other confidential, competitively sensitive information, such as current or future supply, that is evidence which you may consider in deciding whether or not the members have entered into an unlawful agreement in violation of the antitrust laws.

## Multiple plaintiffs

You must give separate consideration to each party in this case. Although there are fifty individual plaintiffs and a class, it does not follow that if one is successful, the others are too.

**Communication with the Court**

I do not anticipate that you will need to communicate with me during the trial. If you do need to communicate with me, the only proper way is in writing. The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by some other juror. The writing should be given to the court security officer, who will give it to me. I will respond either in writing or by having you return to the courtroom so that I can respond orally.

### Disagreement among jurors

The verdict must represent the considered judgment of each juror. Your verdict, whether for or against the parties, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.

### Cautionary instruction before recess

We are about to take our first break during the trial, and I want to remind you of the instruction I gave you earlier. Until the trial is over, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. If anyone approaches you and tries to talk to you about the case, do not tell your fellow jurors but advise me about it immediately. Do not read or listen to any news reports of the trial. Finally, remember to keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.

I may not repeat these things to you before every break that we take, but keep them in mind throughout the trial.

### No inference from Judge's questions

During this trial, I may ask the witnesses questions myself. Do not assume that because I ask questions, I hold any opinion on the matters I ask about, or on what the outcome of the case should be.

**Limited purpose of evidence**

During the course of this trial, I may instruct you that I admitted certain evidence for a limited purpose. You must consider that evidence only for the limited purpose for which it was admitted.  In addition, I may instruct you that certain evidence is admitted only against one party and not the other parties.  If I do, you must consider this evidence only against that party and not the other parties.

**Juror Questions**

I do not expect you to have any questions of a witness after the attorneys have finished questioning that witness. However, if you still have questions after the attorneys are finished with their questioning, I will allow you to propose additional questions for the witness currently on the stand. No witness will be recalled for questions you may want to ask after the witness has been excused.

When the attorneys have finished questioning a witness, I will ask you for any written questions you may have. I will collect your questions, and review them at a sidebar conference with the attorneys to determine whether the questions can be properly asked under the Rules of Evidence. If I rule the question is proper, one of the attorneys will ask it of the witness.

Sometimes a proposed question will not be asked because it concerns an issue I have ruled is not relevant. Some questions may be better answered by a future witness. If your question is not asked, do not concern yourself with the reason or take any offense. You must not draw any conclusions from the fact that your question is not asked. Do not share your question with other jurors if it is not asked.

You must not use the opportunity to ask questions to advocate for either side. You must keep an open mind throughout the trial and not compromise your obligation to act as a neutral fact-finder, which is an obligation you swore to maintain. This opportunity to ask questions must not cause you to prematurely deliberate or adopt a position prior to the close of evidence. Answers to juror questions are not entitled to any greater or lesser weight than answers to attorney questions.