UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 16 C 8637<br><br>Judge Thomas M. Durkin |

ORDER

In ruling on summary judgment, the Court found that Plaintiffs had shown that a reasonable jury could find by a preponderance of the evidence that 11 of the 21 defendants joined a conspiracy to limit Broiler supply.[1] During the final pretrial conference, the Court found that the summary judgment findings as to these 11 defendants satisfied Plaintiffs' burden to demonstrate by way of proffer the existence of a conspiracy and that the 11 defendants participated in the conspiracy, such that statements by employees of those eleven defendants could be admitted as coconspirator statements under Federal Rule of Evidence 801(d)(2)(E). *See* R. 6846 at 39-40 (39:24-40:6), 50 (50:22-24) (transcript of hearing Sept. 7, 2023).[2] This ruling is in accordance with Seventh Circuit precedent regarding Rule 801(d)(2)(E). *See United States v. Davis*, 845 F.3d 282, 286 (7th Cir. 2016) ("Under Rule 801(d)(2)(E), co-

---

[1] The eleven defendants are: Harrison; Keystone; Koch; Mountaire; OK Foods; Peco; Pilgrim's; Raeford; Sanderson; Simmons; and Tyson.

[2] Plaintiffs burden remains to prove these facts at trial sufficient for the Court to make a similar finding at the close of Plaintiffs' case. *See Davis*, 845 F.3d at 286 ("If at the close of its case the [plaintiff] has not met its burden to show that the statements are admissible, the defendant can move for a mistrial or to have the statements stricken.").

conspirator statements are admissible against a defendant if the trial judge finds by a preponderance of the evidence that (1) a conspiracy existed, (2) the defendant and the declarant were involved in the conspiracy, and (3) the statements were made during and in furtherance of the conspiracy."). Conversely, the Court found that the seven defendants that had been granted summary judgment were not coconspirators.[3]

That leaves three defendants—Amick, George's, and Mar-Jac—that settled either prior to or during summary judgment briefing for which the Court never made a finding. Plaintiffs currently on trial now move the Court for a finding that Amick, George's, and Mar-Jac joined the conspiracy for purposes of admitting statements by employees of these companies as coconspirator statements under Rule 801(d)(2)(E). Plaintiffs' motion includes an evidence proffer. The Court has already found in its summary judgment ruling that Plaintiffs met their burden to demonstrate the existence of a conspiracy. What is at issue here is whether the proffered evidence is sufficient to show that Amick, George's, and Mar-Jac participated in the conspiracy. A decision on whether statements by Amick, George's, or Mar-Jac employees were made during and in furtherance of the conspiracy will take place during trial when Plaintiffs seek their admission if Defendant objects.

In opposition to Plaintiffs' motion, Sanderson—the only defendant on trial—argues that there is insufficient evidence that Amick, George's, or Mar-Jac cut Broiler

---

[3] The seven defendants are: Case; Fieldale; Foster; Fries-Claxton; Perdue; Waynek; and Agri Stats.

production during the relevant time periods. Sanderson's argument is based on the logic that any producer that did not cut production could not have joined a conspiracy to cut production. However, as the Court noted in the summary judgment ruling, data produced by Sanderson's own expert shows that George's cut production in 2008-09 and Mar-Jac cut production in 2011-12. *See* R. 6641 at 20 (citing Levinsohn report R. 6019-1 at 98 (p. 92), 100 (p. 94)). Thus, Sanderson concedes that George's and Mar-Jac cut production during the relevant time period.

Unlike George's and Mar-Jac, Sanderson's expert's charts show increases in production for Amick. But there is evidence to the contrary. An internal Amick proposal to change one of its plants from double shift to single shift in 2011 noted that the resulting production decrease would be an "additional cutback" to a "cutback in place." *See* R. 6882-1 at 3. Additionally in December 2010, Koch received an email (apparently from a wholesaler) stating that he had learned from Amick that they were cutting production. *See* R. 6882-2 at 2. And an internal Peco email noted that Amick had cut production. *See* R. 6882-3 at 2.

Sanderson argues that the Court should discount this evidence because Sanderson's expert's report shows that Amick did not cut production and an Amick employee testified that they did not inform the wholesaler or Peco that Amick would be cutting production. But in light of the internal Amick email that can reasonably be interpreted to state that Amick did in fact cut production, there is sufficient evidence for a reasonable jury to find by a preponderance of the evidence that Amick cut production in 2011.

3

On summary judgment, the Court found that evidence of production cuts, along with the other economic evidence analyzed by Plaintiffs' experts, established an evidentiary foundation tending to indicate the presence of a conspiracy among Defendants to limit the supply of Broilers. The Court then examined the non-economic evidence identified by the parties to determine whether for each defendant there was evidence that the defendant shared confidential information with another competitor defendant. The Court found that sharing of confidential information with competitors was sufficient for a reasonable jury to find by a preponderance of the evidence that the defendant in question joined the conspiracy that was suggested by the economic evidence.

Here, there is evidence that Amick, George's, and Mar-Jac communicated confidential information with competitor defendants. Amick shared its Agri Stats "bottom line" report with Koch. The email sharing the report stated the report was being shared "to figure out who some of these are by comparing," indicating that the purpose was to deanonymize reports that were provided with company names redacted. R. 6228 at 83. The report attached to the email includes handwritten letters next to each producer line indicating that some effort had been made to identify the anonymous producers listed in the report.

Sanderson argues that "bottom line" reports "do not have information on production numbers, such as the quantity produced or pricing." R. 6887 at 15. But the report contains information that is arguably related to production, such as

4

"number of birds," "live pounds," "average live weight," and "avg profit cents/lb," among other information. *See* R. 6882-6 at 3.

Furthermore, even if the "bottom line" report does not contain information that would be helpful to monitoring a conspiracy, exchange of the reports would obviously serve to deanonymize the reports for the two companies exchanging the reports, because each company's report identifies the company's own data. Presumably, the companies could then use identifiers from the "bottom line" report to identify their competitor on other Agri Stats reports that contain production information. Learning the identify of one producer might also help identify the other producers. Such information would allow Amick and Koch to monitor each other's production and facilitate a conspiracy.

At bottom, the fact is that Amick exchanged a confidential report with a competitor. Such an exchange is evidence of conspiracy, because so-called competitors should not exchange such information in a truly competitive environment. This evidence is bolstered by additional evidence the Amick communicated with competitors about industry supply and other confidential information. *See* R. 6236-4 at 330; R. 6882-9 at 2. Combined with the economic evidence indicating the existence of a conspiracy to reduce Broiler production, Amick's exchange of confidential information is sufficient for a reasonable jury to find by a preponderance of the evidence that Amick joined the conspiracy suggested by the economic evidence. Therefore, the Court finds that Plaintiffs have met their burden to demonstrate that Amick is a coconspirator for purposes of Rule 801(d)(2)(E).

According to the testimony of one of its employees, Mar-Jac also shared Agri Stats reports with its competitors. *See* R. 6882-20 at 13 (42:2-10); *id.* at 18 (64:7–65:21); *id.* at 64 (247:9-17). That same employee testified that he shared with competitors other confidential production information, such as "birds per man hour." R. 6882-21 at 35 (131:2-23). The Court's findings with respect to Amick's sharing of information apply equally to Mar-Jac's. Therefore, the Court finds that Plaintiffs have met their burden to demonstrate that Mar-Jac is a coconspirator for purposes of Rule 801(d)(2)(E).

The Court has not been presented with evidence that George's shared its Agri Stats reports with competitors. The evidence Plaintiffs rely on to meet their burden under Rule 801(d)(2)(E) is a January 2008 email from George's to OK Foods providing a spreadsheet titled "company stats." *See* R. 6242-7 at 212. The spreadsheet appears to list costs of production, including data headings for "broiler production," such as "% liveability," "average live weight," and "live cost." *See* R. 6887 at 28-29. Defendants argue that the spreadsheet does not "contain any information about production volumes, 'cuts,' 'plans' or any other information that would facilitate a supply reduction conspiracy," and contains "only cost and efficiency metrics." R. 6887 at 23. But the report's headings sufficiently indicate the information's relevance to production to meet the Plaintiffs' burden on a proffer under Rule 801(d)(2)(E). And in any case, the email and sharing of the spreadsheet is evidence that George's—like Amick and Mar-Jac—shared confidential company information with a competitor. As discussed with respect to Amick, because the economic evidence presented at

6

summary judgment indicates the existence of a conspiracy among defendants to limit supply, evidence that a defendant shared confidential information with a competitor is evidence from which it can be reasonably inferred that the defendant joined the conspiracy. Taken together, this evidence is sufficient for a reasonable jury to find by a preponderance of the evidence that George's joined the conspiracy already indicated by the economic evidence. Therefore, the Court finds that Plaintiffs have met their burden to demonstrate that George's is a coconspirator for purposes of Rule 801(d)(2)(E).

For these reasons, Plaintiffs' "motion to Deem that Amick, George's, and Mar-Jac Joined the Conspiracy for Purposes of Admissibility of Evidence Against Defendant Sanderson Farms Under Fed. R. Evid. 801(d)(2)(E)" [6881] is granted based on Plaintiffs' proffer. A finding as to Amick, George's, and Mar-Jac, along with the other 11 companies denied summary judgment, will be made at the close of Plaintiffs' case if the proffered evidence was in fact introduced. Plaintiffs are responsible for making the request for that finding.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: September 28, 2023

7