# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION, | Case No.: 1:16-cv-08637 |
| | The Honorable Thomas M. Durkin |
| This Document Relates To: | |
| THE DIRECT PURCHASER PLAINTIFF ACTION | |

**DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENTS WITH THE HOUSE OF RAEFORD AND KOCH DEFENDANTS**

999315.4

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. LITIGATION BACKGROUND AND PRIOR SETTLEMENTS .........................................3

III. SUMMARY OF THE SETTLEMENT NEGOTIATIONS AND TERMS ...........................5

    A. HRF ..............................................................................................................................5

    B. Koch .............................................................................................................................6

    C. Terms of the Settlement Agreements ...........................................................................6

IV. THE SETTLEMENTS SATISFY THE STANDARD FOR PRELIMINARY APPROVAL ............................................................................................................................8

    A. The Settlements Resulted from Arm's Length Negotiations ....................................10

    B. The Settlements Provide Substantial Relief to the Certified Class ..........................11

V. THE SETTLEMENTS ARE ON BEHALF OF A CERTIFIED CLASS ...........................11

VI. THE COURT SHOULD APPROVE THE SETTLEMENTS AND NEED NOT PROVIDE AN ADDITIONAL EXCLUSION PERIOD ....................................................12

VII. THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING AT A LATER DATE .....................................................................................................................14

VIII. CONCLUSION ....................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Armstrong v. Bd. of Sch. Dirs.*,
   616 F.2d 305 (7th Cir. 1980) ...................................................................................................8

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010) ..............................................................................................10

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................................................12

*DaSilva v. Esmor Correctional Servs. Inc.*,
   215 F.R.D. 477 (D.N.J. 2003) .................................................................................................12

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
   768 F.2d 884 (7th Cir. 1985) ...................................................................................................8

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) ...................................................................................................8

*Goldsmith v. Tech. Solutions Co.*,
   No. 92-CV-4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ............................................10

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ................................................................................................8, 9

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) .................................................................................10, 11

*In re Mid-Atlantic Toyota Antitrust Litig.*,
   564 F. Supp. 1379 (D. Md. 1983) ............................................................................................9

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y 1997) ................................................................................................9

*In re PaineWebber Ltd. Partnerships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................................................13

*Uhl v. Thoroughbred Tech. & Telecomms, Inc.*,
   309 F.3d 978 (7th Cir. 2002) ...................................................................................................9

*In re Warfarin Sodium Antitrust Litig.*,
   212 F.R.D. 231 (D. Del. 2002) .................................................................................................8

**Other Authorities**

2 McLaughlin on Class Actions § 6:21 (19th ed.) ................................................................. 13

2003 Report of the Judicial Conference, Committee on Rules of Practice and
    Procedure ................................................................................................................... 13

Fed. R. Civ. P. 23(e) ........................................................................................................... 8, 9

Manual For Complex Litigation (Fourth) § 21.632 (2004) .................................................... 9

2 NEWBERG ON CLASS ACTIONS, §11.24 (3d ed. 1992) .................................................... 8, 9

2 NEWBERG ON CLASS ACTIONS, § 11.40 (2d ed. 1985) ..................................................... 10

4 NEWBERG ON CLASS ACTIONS, § 13:18 (5th ed. 2011) .................................................... 12

I. **INTRODUCTION**

The Direct Purchaser Plaintiffs ("DPPs") in this certified class action allege that Defendants conspired to fix, raise, maintain, and stabilize the prices of Broiler chicken sold in the United States. DPPs now seek preliminary approval of the settlements with the HRF[1] and Koch[2] Defendants (collectively, the "Settling Defendants"). Under the Settlements,[3] HRF will pay $27,500,000. and Koch will pay $47,500,000. The addition of these meaningful Settlements for the Certified Class (ECF No. 5644, *see* Section V below) brings the total recovery to date to over $284 million. (*See* Declaration of Michael H. Pearson in Support of this Motion ("Pearson Decl.") at ¶ 8.) In addition to this monetary relief, HRF and Koch also agreed to assist DPPs by authenticating and providing foundation for documents for the ongoing Track 1 trial, which will assist DPPs in the prosecution of their claims against the remaining Defendant in the case. DPPs respectfully request that the Court preliminarily approve the Settlements now, but defer ordering notice until the Track 1 trial is resolved, whether that be by verdict or settlement with the sole remaining Defendant Sanderson Farms.

Once the Track 1 trial is completed, DPPs will move the Court to approve a notice plan. Included in that notice plan will be (1) notice of the HRF and Koch Settlements and an opportunity to object to either or both of the Settlements; (2) notice of the outcome of the Track 1 trial (if by settlement with Defendant Sanderson, including an opportunity to object); (3) notice of Co-Lead Class Counsel's second request for attorney's fees (not to exceed 33⅓%),[4] third request for

---

[1] House of Raeford Farms, Inc. ("HRF").
[2] Koch Foods, Inc.; JCG Foods of Alabama, LLC; JCG Foods of Georgia, LLC; and Koch Meat Co., Inc. (collectively referred to as Koch).
[3] The HRF and Koch Settlement Agreements are attached as Exhibits "A" and "B" to the Pearson Declaration, respectively.
[4] On December 1, 2021 the Court awarded interim attorney's fees equal to 33⅓% of the Fieldale, Amick, Peco, George's, Tyson, and Pilgrim's settlements. (*See* ECF No. 5229.)

reimbursement of litigation expenses,[5] and second request for Class Representative service awards (not to exceed $15,000 per Class Representative);[6] and (4) notice informing the Certified Class of the second claims process and *pro rata* distribution.[7] DPPs respectfully request that to administer the notice plan the Court appoint A.B. Data Ltd., an experienced national class action notice provider and claims administrator, and current administrator of the Mar Jac, Harrison Poultry, Simmons, Mountaire, and O.K. Foods settlements.

As detailed in this Motion for Preliminary Approval of the Settlement ("Motion") and the supporting documents, these Settlements were the product of the DPPs' efforts in litigating this case and extensive arm's length negotiations among the parties. Neither HRF nor Koch have admitted any liability and continue to deny the legal claims alleged in DPPs' Complaint, but both have agreed to the Settlements to avoid the cost and burden of litigation and eliminate the risk of

---

Therefore, Co-Lead Class Counsel's forthcoming fee request will be limited to the Mar Jac, Harrison Poultry, Simmons, Mountaire, O.K. Foods, HRF, and Koch settlements, plus any recovery obtained at the Track 1 trial or by future settlement with Sanderson Farms.

[5] On December 1, 2021 the Court ordered reimbursement of $4.5 million in incurred litigation expenses from the Fieldale, Amick, Peco, George's, Tyson, and Pilgrim's settlements. (*See* ECF No. 5229.) In conjunction with the Simmons, Mountaire, and O.K. Foods settlements, on October 12, 2023 Co-Lead Class Counsel will file a second motion for reimbursement of litigation expenses up to $6 million from the Mar Jac, Harrison Poultry, Simmons, Mountaire, and O.K. Foods settlements. (*See* ECF No. 6830.) Therefore, Co-Lead Class Counsel's forthcoming request for reimbursement of litigation expenses will be limited to litigation costs incurred after October 1, 2023 and paid from the HRF, and Koch settlements, plus any recovery obtained at the Track 1 trial or by future settlement with Sanderson Farms.

[6] On December 1, 2021 the Court awarded service awards to each of the five Class Representatives from the Fieldale, Amick, Peco, George's, Tyson, and Pilgrim's settlements. (*See* ECF No. 5229.) Therefore, Co-Lead Class Counsel's forthcoming second request for Class Representative service awards will be limited to the Mar Jac, Harrison Poultry, Simmons, Mountaire, O.K. Foods, HRF, and Koch settlements, plus any recovery obtained at the Track 1 trial or by future settlement with Sanderson Farms.

[7] Proceeds from the Fieldale, Amick, Peco, George's, Tyson, and Pilgrim's settlements have already been distributed to qualified claimants. (*See* ECF No. 5791.) Therefore, the second claims process and distribution will be limited to the Mar Jac, Harrison Poultry, Simmons, Mountaire, O.K. Foods, HRF, and Koch settlements (which total $115,050,150), plus any recovery obtained at the Track 1 trial or by future settlement with Sanderson Farms.

an adverse judgment at trial. Similarly, the DPPs believe they will prevail at trial, but have agreed to the Settlements to obtain a meaningful recovery for the Certified Class, obtain cooperation from HRF and Koch, and avoid the risk of an adverse outcome as to HRF and/or Koch at trial. Accordingly, these Settlements are the product of compromise and reflect the independent decisions of the DPPs, on the one hand, and HRF and Koch respectively, on the other hand, to resolve this matter.

As described below, DPPs respectfully submit that the Court can preliminarily determine in this Motion that, on final approval, each Settlement will be found to be fair, reasonable, and adequate, and thus it is worthwhile to notify the Certified Class of the proposed Settlements at the appropriate time.

## II.     LITIGATION BACKGROUND AND PRIOR SETTLEMENTS

This is an antitrust class action against certain producers of Broilers.[8] DPPs allege that Defendants combined and conspired to fix, raise, maintain, or stabilize prices of Broilers sold in the United States. DPPs allege that Defendants implemented their conspiracy in various ways, including via coordinated supply restrictions, sharing competitively sensitive price and production information, and otherwise manipulating Broiler prices.

DPPs commenced this litigation on September 2, 2016, when they filed a class action lawsuit on behalf of all direct purchasers of Broilers in the United States. (ECF No. 1.) Other class plaintiffs and direct-action plaintiffs subsequently filed similar actions. On October 14, 2016, the

---

[8] Consistent with the Complaint, the term Broilers is defined in the Settlement Agreements as "chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, raw or cooked, whole or in parts, or as a meat ingredient in a value added product, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards." (*See* Settlement Agreements § 1.d.) Settling Defendants agree to this definition only for purposes of approving the Settlements and otherwise reserve all rights, arguments and defenses with respect to this definition.

Court appointed the undersigned law firms as Direct Purchaser Plaintiffs' Interim Co-Lead and Liaison Counsel. (ECF No. 144.) After extensive briefing by the parties, on November 20, 2017, the Court denied Defendants' Motions to Dismiss the DPPs' First Consolidated Amended Complaint. (ECF No. 541.) DPPs filed their operative Fifth Consolidated Amended Complaint on October 23, 2020. (ECF No. Nos. 3919 (Redacted) and 3935 (Unredacted).)

DPPs thoroughly investigated the case and engaged in extensive discovery prior to reaching the Settlement. These efforts commenced prior to the filing of DPPs' initial complaint and included pre-litigation investigation into Defendants' conduct that formed the basis of the DPPs' complaints. (*See* Pearson Decl. ¶ 4.) In denying Defendants' motions to dismiss, the Court held that these "alleged factual circumstances plausibly demonstrate that [Defendants'] parallel conduct was a product of a conspiracy." (*See* ECF No. 541, p. 18.) During the litigation, DPPs obtained responses to multiple sets of interrogatories, and received over 8 million documents in response to their requests for production and third-party subpoenas. (*See* Pearson Decl. ¶ 5.) DPPs, along with other plaintiffs, have taken over 100 depositions of the Defendants and third parties. (*Id.* ¶ 6.) DPPs have also provided responses to written discovery, produced documents, and appeared for depositions noticed by the Defendants. (*Id*. ¶ 7.)

Prior to the Court's ruling on Defendants' motions to dismiss, DPPs reached an "ice-breaker" settlement with Defendant Fieldale. Fieldale, a small producer, agreed to pay $2.25 million, provide cooperation including attorney and witness proffers, and produce certain documents to DPPs. (*See* Pearson Decl. ¶ 8.) The Court granted final approval to the Fieldale settlement on November 18, 2018. (*See* ECF No. 1414.) DPPs later settled with Defendants Amick, Peco, and George's. Like Fieldale, these three Defendant groups are small producers. (*See* Pearson Decl. ¶ 8.) In addition to providing cooperation to DPPs, Peco paid $4,964,600, George's paid

$4,097,000, and Amick paid $3,950,000. (*See id.*) The Court granted final approval of the Amick, Peco, and George's settlements on October 27, 2020. (*See* ECF Nos. 3944 (Peco and George's), 3945 (Amick).) DPPs then secured significant settlements with Pilgrim's and Tyson in the amount of $75 million and $79,340,000, respectively. (*See* Pearson Decl. ¶ 8.) The Court granted final approval of the Pilgrim's and Tyson settlements on June 29, 2021. (*See* ECF No. 4789.) DPPs then settled with Mar Jac and Harrison Poultry in the amount of $7,975,000 and $3,300,000, respectively. (*See* Pearson Decl. ¶ 8.) The Court granted final approval of the Mar Jac and Harrison settlements on January 27, 2022. (*See* ECF No. 5397.) Next, DPPs secured a settlement with Simmons in the amount of $8,018,991. (*See* Pearson Decl. ¶ 8.) The Court granted preliminary approval of the Simmons settlement on June 12, 2023 and set a final fairness hearing for December 12, 2023. (*See* ECF No. 6615.) Most recently, DPPs settled with Mountaire and O. K. Foods in the amount of $15,899,826 and $4,856,333, respectively. (*See* Pearson Decl. ¶ 8.) The Court granted preliminary approval of the Mountaire and O.K. Foods settlements on September 5, 2023 and set a final fairness hearing for December 12, 2023. (*See* ECF No. 6830.) With the proposed Settlements with HRF and Koch, the total settlements obtained by DPPs to date is $284,650,750. (*See* Pearson Decl. ¶ 8.)

On May 27, 2022, the Court certified the DPP Class (as defined in Section V below). (*See* ECF No. 5644.) On June 30, 2023, the Court granted in part and denied in part Defendants' (including HRF and Koch) motions for summary judgment. (*See* ECF No. 6641.) The Track 1 trial commenced on September 12, 2023 and is ongoing.

III. **SUMMARY OF THE SETTLEMENT NEGOTIATIONS AND TERMS**

    A. **HRF**

The Settlement Agreement with HRF was reached through confidential, protracted, arm's length settlement negotiations. (*See* Pearson Decl. ¶¶ 9-11.) The Settlement was the product of a

negotiation process that commenced in August 2023, and ultimately culminated after a mediation with highly experienced mediator Hon. Daniel Weinstein (Ret.). (*Id.* ¶ 10.) As this litigation has been pending for seven years and is presently being tried, the parties have had ample opportunity to assess the merits of DPPs' claims and HRF's defenses, through investigation, discovery, research, settlement discussions and contested motion practice; and to balance the value of Certified Class members' claims against the substantial risks and expense of continuing litigation. The parties ultimately executed the Settlement Agreement on September 14, 2023. (*See id.* ¶ 11; *see also* HRF Settlement Agreement.)

  **B.**   **Koch**

The Settlement Agreement with Koch was reached through confidential, protracted, arm's length settlement negotiations. (*See* Pearson Decl. ¶¶ 9, 12-13.) The Settlement was the product of a negotiation process that commenced in August 2023, and ultimately culminated after a mediation with highly experienced mediator Hon. Daniel Weinstein (Ret.). (*Id.* ¶ 12.) As this litigation has been pending for seven years and is presently being tried, the parties have had ample opportunity to assess the merits of DPPs' claims and Koch's defenses, through investigation, discovery, research, settlement discussions and contested motion practice; and to balance the value of Certified Class members' claims against the substantial risks and expense of continuing litigation. The parties ultimately executed the Settlement Agreement on September 22, 2023. (*See id.* ¶ 13; *see also* Koch Settlement Agreement.)

  **C.**   **Terms of the Settlement Agreements**

Under the Settlements, HRF will pay $27,500,000 and Koch will pay $47,500,000 into separate interest-bearing escrow accounts. The Settlement Agreements do not contain any reduction or termination provisions. In addition to monetary relief, HRF and Koch will make

reasonable efforts to provide declarations or affidavits relating to the authentication or foundation for admissibility of documents for DPPs' use at trial. (*See* Settlement Agreements § 10.)

In exchange, the DPPs and the Certified Class will separately release certain Released Claims (as defined in the Settlement Agreements) against the Released Parties (as defined in the Settlement Agreements). (*See id.* §§ 14, 15.) The releases do not extend to other Defendants or to unrelated claims that are not the subject matter of the lawsuit. (*Id.*)

Finally, consistent with a judgment-sharing agreement among certain Defendants, the Settlement removes an amount reflecting HRF's and Koch's sales of Broilers to the Certified Class from any damages award resulting from a verdict and Final Judgment DPPs obtain against any other Defendant who is a signatory to the judgment-sharing agreement. (HRF Settlement Agreements § 39; Koch Settlement Agreements § 43.) Thus, any other such Defendant against whom DPPs obtain a verdict and judgment would not be jointly and severally liable for HRF's and Koch's share of damages.

In sum, the Settlement Agreements: (1) are the result of extensive good-faith and hard-fought negotiations between knowledgeable and skilled counsel; (2) were entered into after extensive factual investigation and legal analysis; and (3) in the opinion of experienced Class Counsel, are fair, reasonable, and adequate. Based on both the monetary and cooperation elements of the Settlement Agreements, Co-Lead Class Counsel submits that the Settlement Agreements are in the best interests of the Certified Class members and should be approved by the Court. (Pearson Decl. ¶ 17.)

Subject to the approval and direction of the Court, the settlement amounts (with accrued interest) will be used to: (1) pay notice costs and costs incurred in the administration and distribution of the Settlements; (2) pay taxes and tax-related costs associated with the escrow

accounts[9] for proceeds from the Settlements; (3) make a distribution to Certified Class members in accordance with a plan of distribution to be filed in the future; (4) pay attorneys' fees to Co-Lead Class Counsel, as well as costs and expenses, that may be awarded by the Court (subject to a separate, not-yet-filed motion); and (5) pay service awards to the DPP Class Representatives that may be awarded by the Court (subject to a separate, not-yet-filed motion).

## IV. THE SETTLEMENTS SATISFY THE STANDARD FOR PRELIMINARY APPROVAL

There is an overriding public interest in settling litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986) (noting that there is a general policy favoring voluntary settlements of class action disputes); *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong*, 616 F.2d at 313 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). However, a class action may be settled only with court approval. Fed. R. Civ. P. 23(e).

"The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'" 2 NEWBERG ON CLASS ACTIONS, § 11.24 (3d ed. 1992); *see also Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *Armstrong*, 616 F.2d at 314; *In re Warfarin Sodium Antitrust*

---

[9] DPPs respectfully request that the Court appoint US Bank as the Escrow Agent.

999315.4                                       8

*Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y 1997). Generally, before directing notice to the class members, a court makes a preliminary evaluation of the proposed class action settlement pursuant to Rule 23(e). The Manual For Complex Litigation (Fourth), § 21.632 (2004), explains:

> Review of a proposed class action settlement generally involves two hearings. First counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation . . . The Judge must make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and the date of the [formal Rule 23(e)] fairness hearing.

A proposed settlement falls within the "range of possible approval" when it is conceivable that the proposed settlement will meet the standards applied for final approval. *See* Newberg, § 11.25, at 38-39 (quoting Manual for Complex Litig., § 30.41 (3d ed.)). The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e); *see also Uhl v. Thoroughbred Tech. & Telecomms, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002); *Isby*, 75 F.3d at 1198-99. When granting preliminary approval, the court does not conduct a "definitive proceeding on the fairness of the proposed settlement," and the court "must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting *In re Montgomery Cty. Real Estate Antitrust Litig.*, 83 F.R.D. 305, 315-16 (D. Md. 1979)). That determination must await the final hearing when the court can assess the fairness, reasonableness, and adequacy of the proposed settlement.

The requirement that class action settlements be fair is designed to protect against collusion among the parties. *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. at 1383. There is usually an initial presumption that a proposed settlement is fair and reasonable when it is the result of

arm's length negotiations. *See* 2 NEWBERG ON CLASS ACTIONS, § 11.40 at 451 (2d ed. 1985); *Goldsmith v. Tech. Solutions Co.*, No. 92-CV-4374, 1995 WL 17009594, at *3 n.2 (N.D. Ill. Oct. 10, 1995) ("[I]t may be presumed that the agreement is fair and adequate where, as here, a proposed settlement is the product of arm's length negotiations."). Settlements that are proposed by experienced counsel and result from arm's length negotiations are entitled to deference from the court. *See, e.g.*, *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (quoting *Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997)). The initial presumption in favor of such settlements reflects courts' understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness concerns of Rule 23(e). In making the determination as to whether a proposed settlement is fair, reasonable, and adequate, the Court necessarily will evaluate the judgment of the attorneys for the parties regarding the "strength of plaintiffs' case compared to the terms of the proposed settlement." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010).

### A. The Settlements Resulted from Arm's Length Negotiations

In this case, the proposed Settlements satisfy the standard for preliminary approval. As detailed in this Motion and supporting declarations, the Settlements were the product of arm's length negotiations by experienced and knowledgeable counsel. (*See* Sections II and III *infra*; *see also* Pearson Decl. ¶¶ 9-14.) The hard-fought negotiations with HRF and Koch necessitated numerous conferences, including with mediator Hon. Daniel Weinstein (Ret.), as well as written exchanges between counsel during which they negotiated the material terms of the Settlements, as well as the final Settlement Agreements. (*Id.*) In engaging in these settlement discussions, counsel for DPPs focused on obtaining the best possible result for the Certified Class. (*Id.*)

These protracted arm's length settlement negotiations support approval of the Settlements by demonstrating they are free from collusion. *See, e.g.*, *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 640. Moreover, the fact that the negotiations occurred over several weeks, and were supported by substantial discovery, class certification, and other significant proceedings in this litigation, demonstrate that DPPs worked to achieve the best possible result on behalf of the Certified Class. *Id.*

### B. The Settlements Provide Substantial Relief to the Certified Class

Even though such a finding is not required at the preliminary approval stage, the fairness, reasonableness, and adequacy of the Settlements is also supported by the relief obtained on behalf of the Certified Class, including monetary relief of $27,500,000 from HRF and $47,500,000 from Koch. This is a significant monetary recovery on behalf of the Certified Class and brings the total amount of settlements to over $284 million, with one Defendant remaining in the DPP case. Thus, the Settlements provide significant recovery from HRF and Koch. Prior to the Settlements, DPPs and Co-Lead Class Counsel conducted extensive discovery and analysis of the relevant facts during the seven years since this case was filed. (Pearson Decl. ¶¶ 4-7.) Co-Lead Class Counsel further considered the strength of DPPs' claims and HRF's and Koch's defenses, and the substantial benefits that the Settlements will provide to the Certified Class. (*Id.*) The Settlements thus falls well within the range of possible final approval, and should be preliminarily approved by the Court.

### V. THE SETTLEMENTS ARE ON BEHALF OF A CERTIFIED CLASS

On May 27, 2022, the Court granted DPPs' motion for class certification and certified the following DPP Class:

> All persons who purchased raw Broilers directly from any of the Defendants or their respective subsidiaries or affiliates either fresh or frozen, in the form of: whole birds (with or without giblets), whole cut-up birds, or parts (boneless or bone in)

>   derived from the front half of the whole bird, for use or delivery in the United States from December 1, 2008 until July 31, 2019.

(*See* ECF No. 5644.) "If the court has certified a class prior to settlement, it does not need to re-certify it for settlement purposes." 4 NEWBERG ON CLASS ACTIONS, § 13:18 (5th ed. 2011). Here, as with the Simmons settlement (ECF No. 6615), the parties do not request any changes to the Certified Class, so the Court need not re-certify it.

## VI. THE COURT SHOULD APPROVE THE SETTLEMENTS AND NEED NOT PROVIDE AN ADDITIONAL EXCLUSION PERIOD

The Court previously certified the Class on May 27, 2022. (*See* ECF No. 5644). Thereafter, on January 4, 2023, the Court approved a notice program that provided a final opportunity for Certified Class Members to exclude themselves. (*See* ECF No. 6195.) Specifically, the long form class notice provided the following notice to Certified Class Members:

> The notice provides Class Members with an opportunity to opt out of the Certified Class defined above. **If you exclude yourself from the Certified Class, you may not be able to recover any award from any future settlements or judgments** obtained by the lawyers for the Class, if settlements or judgments occur. … (emphasis added)

As Certified Class Members have already been provided an opportunity to exclude themselves, there is no need to provide an additional opportunity here. The Court recognized this in granting preliminary approval to the Simmons, Mountaire, and O.K. Foods settlements without providing class members with an additional opportunity to opt-out. (*See* ECF Nos. 6615, 6830.)

While Rule 23(e)(4) grants district courts the discretion to afford members of a previously-certified class an additional opt-out opportunity, it is often unnecessary[10] and the Rules Committee

---

[10] *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1289 (9th Cir. 1992) (holding that where "Class Members were given notice of the action and afforded an opportunity to opt-out [when litigation class was certified and] also were given notice of the proposed settlement and afforded the opportunity to object. This is all that Rule 23 requires."); *DaSilva v. Esmor Correctional Servs. Inc.*, 215 F.R.D. 477, 483 (D.N.J. 2003), *aff'd*, 167 Fed. Appx. 303 (3d Cir.

has urged district courts to exercise their discretion to allow additional opt-out opportunities with caution,[11] as "a second opt-out opportunity might inject additional uncertainty into settlement and create opportunities unrelated to the purpose of the second opt-out, potentially defeating some settlements and making others more costly." *See* Certification of a settlement class—No additional opportunity to opt-out at settlement stage if class already certified, 2 McLaughlin on Class Actions § 6:21 (19th ed.) (quoting and citing Manual for Complex Litigation (4th) § 22.611 at 313; *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 1:15-md-2627, 2022 WL 2128630, *6 n.9 (E.D. Va. 2022)).

This class action lawsuit has been litigated for seven years, including through eight rounds of settlements with several opportunities for class members to opt out and, most recently, notice to the Certified Class of the Court's order granting class certification. Now, as the case is presently being tried, the litigation, its progress, and its prospects are well known to members of the DPP Class. Co-Lead Class Counsel respectfully submit that an additional opportunity to opt out is unnecessary and the Settlements before the Court now should be approved with only an objection period.

---

2006) ("In class action litigation 'potential class members retain the option to participate in or withdraw from the class action only until a point in the litigation "as soon as practicable after the commencement" of the action when the suit is allowed to continue as a class action and they are sent notice of their inclusion within the confines of the class.' ") (quoting *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 549 (1974)); *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 n.41 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) (S.D.N.Y.) (noting that in evaluating fairness of settlement reached after litigation class was certified "the number of opt-out requests is not an appropriate factor to consider in the fairness evaluation, because the exclusion deadline … expired more than a year before the terms of the proposed settlement were known to the Class Members").

[11] *See* 2003 Report of the Judicial Conference, Committee on Rules of Practice and Procedure (commentary on amended Rule 23(e)(3)) [now (e)(4)].

## VII. THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING AT A LATER DATE

The last step in the settlement approval process is the final approval hearing, at which the Court may hear all evidence necessary to evaluate the proposed Settlements. At that hearing, proponents of the Settlements may explain and describe their terms and conditions and offer argument in support of the Settlements' approval, and members of the Certified Class or their counsel may be heard regarding the proposed Settlements if they choose. As noted at the outset of this motion, DPPs propose that the Court defer notice to the Certified Class of these proposed Settlements, and thus necessarily defer scheduling a final approval hearing, until after the completion of the Track 1 trial.

## VIII. CONCLUSION

For these reasons, Co-Lead Class Counsel respectfully request that the Court preliminarily approve the HRF and Koch Settlement Agreements, appoint US Bank as the Escrow Agent, and appoint A.B. Data Ltd. as the Settlement Administrator.

Date: October 6, 2023

*/s/ Michael H. Pearson*
Clifford H. Pearson (*Pro Hac Vice*)
Daniel L. Warshaw (*Pro Hac Vice*)
Bobby Pouya (*Pro Hac Vice*)
Michael H. Pearson (*Pro Hac Vice*)
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
T: (818) 788-8300
F: (818) 788-8104
cpearson@pwfirm.com
dwarshaw@pwfirm.com
bpouya@pwfirm.com
mpearson@pwfirm.com

W. Joseph Bruckner (*Pro Hac Vice*)
Brian D. Clark (*Pro Hac Vice*)
Simeon A. Morbey (*Pro Hac Vice*)
Kyle Pozan (IL #6306761)
Arielle S. Wagner (*Pro Hac Vice*)
Stephen M. Owen (*Pro Hac Vice*)
Develyn Mistriotti (*Pro Hac Vice*)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P**.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T: (612) 339-6900
F: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
samorbey@locklaw.com
kjpozan@locklaw.com
aswagner@locklaw.com
smowen@locklaw.com
djmistriotti@locklaw.com

Bruce L. Simon (*Pro Hac Vice*)
Jill M. Manning (*Pro Hac Vice*)
**PEARSON WARSHAW, LLP**
555 Montgomery Street, Suite 1205
San Francisco, CA 94111
T: (415) 433-9000
F: (415) 433-9008
bsimon@pwfirm.com
jmanning@pwfirm.com

*Direct Purchaser Plaintiffs' Co-Lead Class Counsel*

Steven A. Hart (IL #6211008)
Brian Eldridge (IL #6281336)
**HART MCLAUGHLIN & ELDRIDGE, LLC**
1 South Dearborn, Suite 1400
Chicago, IL 60603
T: (312) 955-0545
F: (312) 971-9243
shart@hmelegal.com
beldridge@hmelegal.com

*Direct Purchaser Plaintiffs' Liaison Class Counsel*