**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | Case No. 1:16-cv-08637 |
| | Honorable Thomas M. Durkin |
| This Document Relates To: | |
| *All End-User Consumer Plaintiff Actions* | |
| JOHN ANDREN, Objector. | |

**OBJECTOR ANDREN'S MEMORANDUM IN SUPPORT OF HIS MOTION TO STRIKE OR OTHERWISE EXCLUDE CONSIDERATION OF, FOR THE PURPOSES OF DECIDING THE EUCP'S RENEWED FEE REQUEST, THE DECLARATIONS OF PROFS. FITZPATRICK (Dkt. 5048-1) AND KLONOFF (Dkt. 5050-1)**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.      The Federal Rules of Evidence Apply to These Proceedings. ........................................ 4

    II.     Professor Fitzpatrick and Klonoff's Declarations Conflict with Controlling Law. ....... 5

    III.    The Fitzpatrick and Klonoff Declarations Contain Numerous Other Errors and Oversights. .................................................................................................................... 6

    IV.   Professor Fitzpatrick and Klonoff's Declarations Primarily Consist of Impermissible Opinion on Legal Matters. ........................................................................................... 10

    V.    In the Alternative, Due Process Requires That Andren Be Permitted to Depose Any Expert the Court Wishes to Rely Upon. ...................................................................... 12

CONCLUSION ............................................................................................................................. 14

CERTIFICATE OF SERVICE ..................................................................................................... 15

Objector Andren's Memo in Support of Motion to Strike, for the Purpose of Deciding EUCP's Renewed Fee Motion, the Declarations of Profs. Fitzpatrick and Klonoff

ii

**INTRODUCTION**

After Objector John Andren's appeal, the Seventh Circuit vacated the $57.4 million fee award to end-user consumer plaintiffs' class counsel ("EUCP counsel") granted by this Court in October 2022 (Dkt. 5855). The panel found that the fee award's reasoning "fell short in two areas: the consideration of bids made by class counsel in auctions, and the weight assigned to out-of-circuit decisions." *In re Broiler Chicken Antitrust Litig.*, No. 22-2889, __ F.4th __, 2023 U.S. App. LEXIS 22939, at *8 (7th Cir. Aug. 30, 2023) (Dkt. 6892 in this Court, slip op. 6).[1] Thus, on remand this Court must evaluate the fee request in view of counsel's past bids and fee awards granted by courts in other circuits—specifically districts in the Ninth Circuit—venues that EUCP counsel continues to voluntarily seek appointment in. *Id.* slip op. 10-11.

The panel also addressed this Court's reliance on the declarations submitted by direct purchaser plaintiffs ("DPP") and commercial & institutional indirect purchaser plaintiffs ("CIIPP")— the declarations of Professors Brian T. Fitzpatrick (Dkt. 5048-1) and Robert Klonoff (Dkt. 5050-1), respectively. As background, EUCP counsel did not urge reliance on these declarations in their October 27, 2021 fee motion (Dkt. 5161), nor in their various filings in response to objections and in support of final approval. Dkts. 5248, 5249, 5250. As a result, Objector Andren did not address the purported expert declarations in his November 11, 2022 objection. Dkt. 5182. After the Court relied on *both* declarations in granting DPP's fee award, Andren sought discovery related to EUCP's reply to objectors and the purported expert declarations, moved to compel, and moved to continue the fee hearing so that discovery could be completed. Dkt. 5294. Andren also submitted an offer of proof concerning his discovery requests, which explained that, among other things, he expected discovery to demonstrate "the experts' definition of market rate in their reports materially differs from the Seventh Circuit's definition of market rate." Dkt. 5294-1, ¶ 39. EUCP counsel provided no substantive response to Andren's discovery requests. Dkt. 5316. The Court decided Andren's discovery motion

---

[1] Because the opinion is not yet paginated in F.4th, and Objector does not have access to the Westlaw pagination, this memorandum cites the slip opinion, attached as an exhibit for convenience.

on August 30, 2022, directing EUCP counsel to disclose past fee awards and bids. Dkt. 5798. However, the Court "did not provide a rationale for declining to order additional discovery, so we remand that issue to permit the district court to evaluate Andren's request." *Broiler Chicken*, slip op. 11.

Now on remand, Objector Andren instead moves to strike the Fitzpatrick and Klonoff declarations—at least for the purpose setting the EUCP fee award.[2] The rules of evidence generally apply to all proceedings in Federal Courts, and no exception applies in this case, where the court must divide tens of millions of dollars between class members and their counsel. Fed. R. Evid. 101(a); Fed. R. Evid. 1101. The methodologies of these declarations clash with controlling Seventh Circuit law, and the appellate decision in this case makes this even more clear, because the Seventh Circuit reversed the reasoning that the experts misled this Court into applying. Finally, even if the Fitzpatrick and Klonoff declarations did not directly contradict controlling Seventh Circuit precedent, legal opinion is never the proper subject of expert testimony.

Objector Andren met and conferred with EUCP counsel concerning this motion, and agreed to briefing dates in their joint scheduling order. Dkt. 6849. On October 5, 2023, counsel for Andren reached out to EUCP counsel to determine whether they would stipulate that the Court need not rely on these two declarations. (EUCP counsel did not cite the declarations at all in their 2021-22 filings, and only cite it in their renewed motion when recounting the Court's vacated October 7, 2022 fee order. Dkt. 6911 at 7.) In response to Andren's inquiry, EUCP's advised they "do not believe it is appropriate to stipulate what a court may or may not consider." This motion follows.

## ARGUMENT

This Court is the gatekeeper for expert testimony. *See, e.g., Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 597 (1993); *see also* Fed. R. Evid. 702 Advisory Committee Notes. The Federal Rules of Evidence apply to these proceedings including the fairness hearing. *See* Fed. R. Evid. 1101(b). The Court has broad discretion to exclude expert opinion. *Taylor v. Ill. Cent. R.R.*, 8 F.3d 584, 585 (7th

---

[2] Andren does not have standing to oppose DPP or CIIPP's future use of the declarations.

Cir. 1993). The proponent of the expert "bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (affirming summary judgment and exclusion of expert opinion). And here, in this proceeding, there is no proponent of the expert.[3]

The district court's responsibility as gatekeeper extends to all judicial hearings—not just formal trials on the merits. *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 938 (7th Cir. 1989) ("Fairness hearings conducted under Fed. R. Civ. P. 23(e) are not among the proceedings excepted from the Rules of Evidence"). Expert testimony must "help the trier of fact to understand evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

The declarations of Fitzpatrick and Klonoff fail to assist the trier of fact because they are premised on an erroneous interpretation of Seventh Circuit law that misapprehends "market rates" to mean fee awards awarded by districts in this circuit. "Expert testimony which does not relate to any issue in the case is not relevant, and ergo, non-helpful." *Daubert*, 509 U.S. at 591.

Even if the declarations were not fundamentally mistaken about controlling law, they violate Federal Rule of Evidence 702 by opining on legal conclusions impermissibly. "Courts do not consult legal experts; they are legal experts." *Grussgott v. Milwaukee Jewish Day Sch., Inc.*, 882 F.3d 655, 662 (7th Cir. 2018). The declarations are little more than extensions of DPP and CIIPP's briefs, offering legal argument why those plaintiffs' counsel are allegedly entitled to 33% fee awards. That legel conclusion is that a 33⅓% fee award would be "reasonable" for DPPs and CIIPPs (Fitzpatrick Decl, Dkt. 5048-1, 21; Klonoff Decl., Dkt. 5050-1, 50), but opinion on legal matters is improper under Rule 702.

---

[3] EUCP's renewed fee motion mentions only the Fitzpatrick declaration, and only for the proposition that "this Court relied on Professor Fitzpatrick's declaration, which said [Fitzpatrick's 2010 fee] study was 'not even trying to capture how clients pay lawyers in the market like the Seventh Circuit does.'" Dkt. 6911. It is unclear whether EUCP counsel themselves rely on the declaration for the proposition described, or simply describe the Court's holding. Even if they do, Andren has no quarrel with the specific proposition. Fitzpatrick's 2010 study simply captures fee awards of all sorts awarded by other courts; it shows mean and median fee awards in similarly-sized settlements when other circuits are not improperly excluded from consideration. The Fitzpatrick declaration also fails to apply Seventh Circuit law on market-approximating rates, as the panel held. Out-of-circuit fee awards must not be "categorically assigned less weight." Slip op. 10.

It would thus be reversible error to rely upon these expert reports for purposes of determining the EUCP fees. One hopes that the EUCP counsel concede this point to narrow the issues before this Court. But if the Court were to nevertheless plan to rely on experts that not even the EUCP counsel claim support their fee request, due process requires that Andren have the opportunity to depose the experts and impeach their conclusions as they apply to the EUCP request.

I.     **The Federal Rules of Evidence Apply to These Proceedings.**

As a threshold matter, the parties may dispute that the Rules of Evidence apply at all hearings concerning EUCP counsel's renewed fee request. They do.

Federal Rule of Evidence 101 require the application of the Rules of Evidence in "proceedings in United States courts … with exceptions [] set out in Rule 1101." Fed. R. Evid. 101(a). Rule 1101(b) states that the Federal Rules of Evidence "apply in … civil cases and proceedings." Fed. R. Evid. 1101(b). Rule 1101(d) then lists specific exceptions for the Rules' application: for example, grand-jury and extradition proceedings. Fed. R. Evid. 1101(d). None of those exceptions apply here. The parties do not ask the Court to decide a preliminary question on whether evidence should be relied upon at some future proceeding—the sole civil Rule 1101(d) exception. Instead, the Court will adjudicate the final interim fee award from a common fund for the benefit of class members. *Cf. e.g.*, *Zuniga v. Bernalillo Cnty.*, 319 F.R.D. 640, 659 n.5 (D.N.M. 2016) (Federal Rules of Evidence applicable to class certification proceedings; none of the 1101(d) exceptions applied); *see also Chen-Oster v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110, 114 (S.D.N.Y. 2015) (same).

"Fairness hearings conducted under Fed. R. Civ. P. 23(e) are not among the proceedings excepted from the Rules of Evidence. No case of which we are aware holds that Rule 1101(d) suspends the usual rules of evidence for fairness hearings." *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d at 938; *cf. Fears v. Keystone Petro. Transp.*, LLC, 2012 U.S. Dist. LEXIS 191775, *29 n. 23 (N.D. Ga. Feb. 21, 2012). No appellate court holds that Rule 1101(d) suspends the Rules of Evidence for fairness or fee hearings.

Objector Andren's Memo in Support of Motion to Strike, for the Purpose of Deciding EUCP's Renewed Fee Motion, the Declarations of Profs. Fitzpatrick and Klonoff

4

To the contrary, other circuits have explicitly or implicitly endorsed applying the Rules of Evidence to class action settlement proceedings, reaching the same result as the Seventh in *Mars Steel*. "[T]he requirement of an evidentiary hearing [in a fee application] demands the application in that hearing[] of the Federal Rules of Evidence." *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 584 (3d Cir. 1984). *Cf. also Dewey v. Volkswagen AG*, 681 F.3d 170, 189 n.18 (3d Cir. 2012) (affirming district court's application of *Daubert*); *Carter v. Forjas*, 701 Fed. Appx. 759, 768 (11th Cir. 2017) (same) (unpublished); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 807 (3d Cir. 1995) (gainsaying reliability and methodology of plaintiffs' witness in valuing settlement relief). If the Rules of Evidence did not apply, these cases could have dismissed the appellants' evidentiary challenges out of hand.

Thus, the Court should exercise its gatekeeping function before relying on the expert declarations in any fee order, and they ought to be excluded.

**II. Professor Fitzpatrick and Klonoff's Declarations Conflict with Controlling Law.**

Both the Fitzpatrick and Klonoff declarations grossly distort Seventh Circuit law, asserting that this Court must exclude consideration of *ex post* fee awards from other circuits. For example, Fitzpatrick expressly and incorrectly says that the Seventh Circuit's approach requires courts to only consider "fee percentages awarded by other district court judges *trying to mimic the market rate*," *i.e.* the Northern District of Illinois. Dkt. 5048-1 at 7-8. Klonoff similarly focused on "district courts within the Seventh Circuit" Dkt. 5050-1 at 19. The Court adopted the declarations' myopic focus on courts in the Seventh Circuit (Dkt. 5855 at 7 & n.5), contributing to the Court discounting awards from the Ninth Circuit, and ultimately to the appellate vacatur of the fee order.

As the Seventh Circuit explained, its market-approximating approach is meant to capture the actual *nationwide* market, not a mimeograph of fee awards from courts in this circuit, because the large plaintiffs firms operate nationwide. Slip op. 11. Fitzpatrick's declaration rejects this proposition—admitting that nationwide data shows courts award smaller percentages "lower fee percentages when recoveries are greater," but discarding this data because the trend for districts in this circuit is not

Objector Andren's Memo in Support of Motion to Strike, for the Purpose of Deciding EUCP's Renewed Fee Motion, the Declarations of Profs. Fitzpatrick and Klonoff

5

"statistically significant." Dkt. 5048-1 at 12. Fitzpatrick incorrectly identifies "the particular market that we are trying to assess here" as Seventh Circuit fee awards. *Id.* at 13. Klonoff similarly misidentifies the "market" with districts in this circuit. Dkt. 5050-1 at 19. Both fail to opine on the nationwide market that the Seventh Circuit holds is relevant in this case, and their opinion is thus legally irrelevant.

Furthermore, Fitzpatrick and Klonoff provide no evidence that plaintiffs' firms under-invest in Ninth Circuit cases, nor that they avoid litigating in the Ninth Circuit. EUCP counsel's litigation history shows the reverse: that they continually seek appointment in venues that supposedly award "below market" fees. Dkt. 5294-1 at 5. Fitzpatrick and Klonoff do not assert that complex antitrust litigation is significantly more costly in the Seventh Circuit than in the Ninth Circuit. (Hotel pricing alone suggests the opposite.) While courts in the Ninth Circuit do not award fees using this Circuit's market-mimicking methodology, EUCP counsel are rational actors participating in a nationwide market. Thus, "class counsel assess the risk of being awarded fees below the market rate of their legal services when they seek to represent plaintiffs in the Ninth Circuit." Slip op. 11. If EUCP counsel usually shunned the Ninth Circuit it might "suggest fees below counsel's market price were awarded there"; but "continued participation in the market may reveal something about the price for class counsel's legal services, and therefore counsel's bargaining position." *Id.*

This Court "should not have categorically assigned less weight to Ninth Circuit cases." *Id.* at 10. This Court should not rely on Fitzpatrick and Klonoff's construction of market-approximating rates, which are based on the same reversible error.

### III. The Fitzpatrick and Klonoff Declarations Contain Numerous Other Errors and Oversights.

The Fitzpatrick and Klonoff declarations were written in support of DPP and CIIPP plaintiff corporations capable of negotiating fee terms, and so to a large extent address different issues than the consumer EUCP plaintiffs who would not have the ability to negotiate fees. But even considering the different postures of these plaintiffs, the declarations are marred by numerous oversights and mistakes.

Neither Fitzpatrick nor Klonoff evaluated any of the Hagens Berman proposals in their analyses, and issued plainly erroneous expert opinions premised on the nonexistence of these bids. This oversight is significant, of course, because the panel has specifically instructed the Court to consider these bids. For example, Fitzpatrick asserts in his declaration and his attached journal article that declining percentage fee awards are rarely bargained for *ex ante*. Dkt. 5048-1 at 19 (citing Brian Fitzpatrick, *A Fiduciary Judge's Guide to Awarding Fees in Class Actions*, 89 FORDHAM L. REV. 1151, 1170 (2021)). Fitzpatrick does not cite or discuss any of the cases when declining scales were offered *ex ante* or negotiated in retention agreements. *E.g.*, *In re Stericycle Sec. Litig.*, 35 F.4th 555, 559 (7th Cir. 2022); *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 934 (9th Cir. 2020). Nor does he consider how some sophisticated plaintiffs insist on such fee scales in all their litigation categorically.

Fitzpatrick calls competitive bidding "impossible" (Dkt. 5048-1 at 7), but fails to note the legal obstacles causing courts to rarely use it. *First*, 15 U.S.C. § 78u-4(a)(3)(B)(v) mandates a procedure for how courts should appoint lead counsel in federal securities class actions, and thus forbids auctions in the type of class action most likely to have competing bids. *In re Cendant Corp. Litig.*, 264 F.3d 201, 273-77 (3d Cir. 2001). *Second*, lead-counsel selection in other cases is a process subject to logrolling and "cartel-like" behavior to deter competitive bids. Burch, *Monopolies*, 70 VAND L. REV. at 73; *cf.*, *e.g.*, Bednarz Decl., Dkt. 5294-1 at 6-7 & Dkt 5294-8, ¶¶ 9-16 (Berman declaration from *Lithium Batteries* litigation describing another firm's "organized effort" to freeze Hagens Berman out of the case if they did not agree to collude rather than compete for lead-counsel status, including proposing an "unwieldly" steering committee as an effort to "garner votes"). But when courts do solicit bids including fee terms—as distinguished from a simple-minded auction—it works just fine. Michael Perino, *Markets and Monitors: The Impact of Competition and Experience on Attorneys' Fees in Securities Class Actions* (2006) (pre-*Cendant* auctions reduced fees without reducing recovery; not cited by Fitzpatrick). Klonoff's declaration does not even discuss competitive bidding, even though the Seventh Circuit long ago flagged competitive bids as one of the few datapoints that "at least approximates a market." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 720 (7th Cir. 2001) (*Synthroid I*). The panel opinion renders Klonoff's declaration clearly defective, given that the Court must reconsider EUCP counsel's bids.

Moreover, Fitzpatrick addressed only the Direct Purchaser attorneys who hired him when he opines that bidding would have been impossible because "DPP Lead Counsel were the only attorneys who applied to lead the case." Dkt. 5048-1 at 7. In contrast, rival groups *did* apply in both the indirect commercial purchasers *and* indirect end-user purchaser cases. The lack of competition is evidence that the market rate would be *higher*—but that can only be so if, when as here there *are* competing firms seeking lead-counsel status, the market rate is *lower. Cf. Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) ("Lack of competition not only implies a higher fee but also suggests that most members of the securities bar saw this litigation as too risky for their practices."). At minimum, Fitzpatrick's commentary on bidding does not apply to EUCP's appointment. And Klonoff's declaration makes no mention of the competition for appointment of CIIPP counsel, let alone EUCP counsel.

Above-market fees are also suggested by the extraordinary number of opt-outs by sophisticated corporate plaintiffs in the DPP and CIIPP classes. By February 2021, direct purchasers representing about **61% of direct sales** from Pilgrim's Pride Corp. and Tyson Foods, Inc.—by far the largest two chicken producers—had filed their own individual opt-out actions against the defendants. Dkt. 4387 at 10. Direct purchasers filed over eighty direct lawsuits against the defendants. Fitzpatrick not only disregards this suggestive evidence, he argues that the lack of objectors speaks in favor of DPP's 33⅓% fee request! Dkt. 5048-1 at 11. But why would Kroger invest in objecting to fees—and possibly have its objection overruled as Andren's was—when it can economically sue defendants itself? Fitzpatrick does not once mention the opt-outs, which undermine his both his premise that 33⅓% is the market rate for sophisticated clients, and that the class was satisfied with the DPP settlement and fee request. Klonoff at least mentions opt-outs (including sophisticated CIIPPs like McDonald's and Chick-fil-A), but only to support his conceptual arguments that CIIPP counsel enjoys reduced economies of scale (Dkt. 5050-1 at 32) and spent more time coordinating with 100 other actions. *Id.* at 34. At no point does Klonoff grapple with the likelihood that opt-outs represent dissatisfaction, possibly including dissatisfaction over attorneys' fees.

Fitzpatrick's opinion also entails a deterrence-based approach that holds it would be appropriate to pay the attorneys 100% of the fund. Brian T. Fitzpatrick, *Do Class Action Lawyers Make Too Little?*, 158 U. Pa. L. Rev. 2043, 2047 (2010) (proposing such an approach without mentioning attorneys' fiduciary duties once). It is unsurprising then that he is willing to endorse 33⅓% fee awards— even though his own empirical work shows that a 16-17% fee is more typical in a settlement of this magnitude—and to excuse characteristics that favor a downward adjustment, such as length of litigation. *See* Fitzpatrick, 7 J. EMPIRICAL L. STUD. at 836, 839; *cf. generally* Lester Brickman, LAWYER BARONS 337-39 (2011). Similar opinions caused one court to reject Fitzpatrick's opinion and apply its own discretion to award a more reasonable fee than the windfall counsel requested. *E.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 1352859, at *3 (N.D. Cal. Apr. 12, 2017).

And again, sophisticated market participants and aspiring lead counsel consider the procedural posture of litigation *ex ante* when setting rates. That is, rational attorneys and knowledgeable clients would agree that more advanced proceedings entail more risk and should be compensated accordingly. Settlements achieved early in litigation—before the motion for class certification is resolved, for example, require less risk of nonpayment and therefore require less of an *ex ante* multiplier to compensate attorneys for bearing that risk. *Stericycle*, 35 F.4th at 566. "Systems where fees rise based on the stage of litigation rather than the calendar are more common in private agreements (indeed they are the norm for contingent-fee contracts in tort suits). These tie the incentives of lawyers to those of the class by linking increased compensation to extra work." *Synthroid I*, 264 F.3d at 722. But if one awards the same rate for an early-stage resolution, there's no incentive to incur the additional risk of going to a class certification motion, or to overcome a summary judgment motion, much less attempting trial. Two of Hagen Berman's bids followed this structure—permitting increasing percentages for proceedings that survive more challenges from defendants. Dkts. 5182-4 & 5182-5. Sophisticated plaintiffs often insist on such structure. *Stericycle*, 35 F.4th at 561, 566 n.8 (the lead plaintiff in *Stericycle* and Chicago teacher's pension in a different case required such structure). In fact,

Objector Andren's Memo in Support of Motion to Strike, for the Purpose of Deciding EUCP's Renewed Fee Motion, the Declarations of Profs. Fitzpatrick and Klonoff

9

EUCP's renewed free request admits that Cohen Milstein agreed to such a fee structure in order to represent the Public School Teacher's Pension and Retirement Fund of Chicago. Dkt. 6911 at 21.

Fitzpatrick and Klonoff's analysis fails to take any of this into account. The declarations are unreliable because they fail to acknowledge this market reality or account for the evidence contradicting their assumptions and premises. After recounting the Seventh Circuit's recognition that market rates may employ declining percentages, Fitzpatrick remarks "with the greatest respect to Judge Easterbrook, I think there is very little reason to believe that clients *anywhere* commonly choose decreasing marginal percentages." Dkt. 5048-1 (emphasis in original). With the greatest respect to Professor Fitzpatrick, EUCP counsel *in this case* have represented clients who required decreasing marginal percentages as a term of their representation. Likewise, Klonoff avers that "I am not aware of any antitrust cases in which the actual fee contract utilized a declining sliding scale methodology." Dkt. 5050-1. But besides the bids submitted by Hagens Berman (a subject the Klonoff doesn't address at all), his testimony is rebutted by the fact Cohen Milstein has entered into such an agreement![4]

These factual errors and oversights undermine the reliability of any genuine expert opinion offered in the declarations.

## IV. Professor Fitzpatrick and Klonoff's Declarations Primarily Consist of Impermissible Opinion on Legal Matters.

Finally, the Court should strike Professor Fitzpatrick and Klonoff's Declarations for the legal reason that they operate as impermissible legal conclusion. Even if a witness is qualified as an expert, Rule 702 requires the Court to determine if the expert opinion would help the factfinder. See Fed. R. Evid. 702. "Opinion testimony is not helpful to the fact-finder if it is couched as a legal conclusion. The requirement of 'helpfulness' assures against admitting opinions which would in essence tell the

---

[4] EUCP counsel argue that this case is distinguishable for its size and because it involves a "trillion-dollar financial market," and say Cohen Milstein would otherwise have negotiated a higher rate. Dkt. 6911. Objector Andren will address these arguments in his response; the point here is that clients do in fact negotiate such agreements for a declining percentage with recovery size and increasing percentage for advance stages of litigation—contrary to Fitzpatrick and Klonoffs sweeping assertions that such agreements don't exist.

fact-finder what result to reach." *Hogan v. Am. Tel. & Tel. Co.*, 812 F.2d 409, 411 (8th Cir. 1987). This requirement "holds just as true when the finder of fact is the court, if not more so; the court is well equipped to instruct itself on the law." *Stobie Creek Invs., LLC v. United States*, 81 Fed. Cl. 358, 364 (Ct. Fed. Cl. 2008), *aff'd* 608 F.3d 1366 (Fed. Cir. 2010). "The only legal expert in a federal courtroom is the judge." *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008).

Thus, purely legal arguments should be excluded. "Courts do not consult legal experts; they are legal experts." *Grussgott*, 882 F.3d at 662; *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1129 (11th Cir. 2018) ("questions of law are not subject to expert testimony"); *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 144 (2d Cir. 2016) ("longstanding rule that expert testimony on issues of domestic law is not to be considered"). It is well established that "that expert testimony by lawyers, law professors, and others concerning legal issues is improper." *Pinal Creek Group v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1043 (D. Ariz. 2005). "This is because the judge's expert knowledge of the law makes any such assistance at best cumulative, and at worst prejudicial." *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100 (1st Cir. 1997).

*First*, the majority of both declarations are devoted to reviewing case law regarding fees and applying black letter law, as a legal brief does. Dkts. 5048-1 at 3-4, 8-20; 5050-1 at 15-44. These declarations "read[] more like a legal brief than an expert report." *Pinal Creek Grp.*, 352 F. Supp. 2d at 1044. "Expert testimony" which simply surveys the law ought to be excluded under Rule 702. *See Lukov v. Schindler Elevator Corp.*, 2012 WL 2428251, at *2 (N.D. Cal. June 26, 2012); *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1260 & n.23 (C.D. Cal. 2003) (striking "interpretations of case law"). This is especially so here, where the opinions are legally *wrong* about Seventh Circuit law, as both declaration are when they disregard the nationwide market for legal services and rely exclusively on Seventh Circuit districts as the "market." Dkt. 5048-1 at 7-8; Dkt. 5050-1 at 19-20. "Ex post fees awarded to class counsel by district courts within the Ninth Circuit were set by the court and not chosen by class counsel. But as rational actors, class counsel assess the risk of being awarded fees below the market rate of their legal services when they seek to represent plaintiffs in the Ninth Circuit." Slip op. 11.

*Second*, the declarations are "replete with legal opinion" that "invade[s] the court's exclusive prerogative." *Commodores Entm't Corp.*, 879 F.3d at 1129. For example, Professor Klonoff declares that the fee request is "reasonable," analyzing exclusively (and erroneously) only on fee awards in Seventh Circuit courts. Dkt. 5050-1 at 44-48. But whether a fee request is reasonable is a legal question left to the Court.

A question of law "is not a matter subject to expert testimony." *Freund v. Butterworth*, 165 F.3d 839, n.34 (11th Cir. 1999). "[I]t would not matter if [plaintiffs] could assemble affidavits from a dozen attorneys swearing" to the reasonableness of the fee request. *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998). "The question is not one to be decided by plebiscite, by affidavits, by deposition, or by live testimony. It is a question of law to be decided by the state courts, by the district court, and by this Court, each in its own turn." *Id.*; *accord Stathakos v. Columbia Sportswear*, No. 15-cv-04543, 2018 WL 1710075, at *5 n.6 (N.D. Cal. Apr. 9, 2018) (striking paragraphs of declaration containing "improper legal opinions" on topic of reasonable fees).

Indeed, the Court owes a fiduciary duty to absent class members in making the fee decision. *Cf.* Brian Wolfman, *Judges! Stop Deferring to Class-Action Lawyers*, 2 U. MICH J.L. REFORM 80 (2013) (concluding that that judges must not defer to lawyers' presentation at fairness hearing but act as fiduciary to protect absent class members); *see also* 2003 Advisory Committee Notes to Rule 23(h) ("active judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process").

In sum, the declarations are "replete with legal opinion" that "invade[s] the court's exclusive prerogative." *Commodores Entm't Corp.*, 879 F.3d at 1129.

V. **In the Alternative, Due Process Requires That Andren Be Permitted to Depose Any Expert the Court Wishes to Rely Upon.**

For the above reasons, it would be reversible error for the Court to use either of these experts to resolve the entirely different question of the market rate for EUCP class counsel in this case. But if the Court is inclined to do so anyway, due process requires that Andren have the opportunity to cross-examine these witnesses whose opinion may swing tens of millions of dollars. "For two centuries

Objector Andren's Memo in Support of Motion to Strike, for the Purpose of Deciding EUCP's Renewed Fee Motion, the Declarations of Profs. Fitzpatrick and Klonoff

12

past, the policy of the Anglo-American system of Evidence has been to regard the necessity of testing by cross-examination as a vital feature of the law. The belief that no safeguard for testing the value of human statements is comparable to that furnished by cross-examination, and the conviction that no statement (unless by special exception) should be used as testimony until it has been probed and sublimated by that test, has found increasing strength in lengthening experience." *Greene v. McElroy*, 360 U.S. 474, 497 (1959) (quoting 5 Wigmore, EVIDENCE (3d ed. 1940) § 1367).

Do the experts believe their analysis of one set of class counsels' rates apply to EUCP rates? Do they acknowledge that their earlier opinions fail to account for Seventh Circuit law in cases such as *Stericycle*, much less *Broiler Chicken* and fail to account for the evidence that Andren provided to this Court? The negative pregnant of EUCPs' decision not to rely on these expert reports suggests that EUCP counsel understands—or even knows with certainty after inquiries—that these experts would not generate opinions or deposition testimony favorable to their claim of a 33.3% market rate. Andren is entitled to impeach the experts' conclusions as they apply to EUCP, and it would violate due process if the Court were to rely upon the experts' opinions without that opportunity.

Rule 26(b)(4)(A) allows parties to "depose any person who has been identified as an expert whose opinions may be presented at trial." While the present proceedings do not constitute a "trial," the proceedings will be dispositive and thus resemble a motion for summary judgement, where Rule 26(a)(2) applies. "Although these rules refer to experts used at trial, courts have applied them when an expert's testimony is offered to the court in connection with summary judgment motions, reasoning that in such situations, the expert has 'entered the judicial arena.'" *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 257 F.R.D. 607, 611 (E.D. Cal. 2009) (quoting *United States v. Hooker Chemicals & Plastics Corp.*, 112 F.R.D. 333, 339 (W.D.N.Y. 1986)). This is because "affidavits and depositions which support the motion [for summary judgment] are a substitute for live testimony at trial." *Lugue v. Hercules, Inc.*, 12 F.Supp. 2d 1351, 1358 (S.D. Ga. 1997) (refusing to consider expert reports at summary judgment that did not comply with Rule 26(a)(2)). The stakes of these fee proceedings exceed the value of merits of most civil litigation, so there is no reason Rule 26's discovery requirements should not apply to these dispositive matters.

Objector Andren's Memo in Support of Motion to Strike, for the Purpose of Deciding EUCP's Renewed Fee Motion, the Declarations of Profs. Fitzpatrick and Klonoff

13

Finally, even if Rule 26(a)(2) does not encompass post-judgment fee proceedings,[5] the Court should hold any expert testimony to the same evidentiary rigor and allow deposition of the declarants. Pre-testimony discovery under Rule 26 remains necessary because the Court must still ferret out unreliable expert testimony. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 786 (7th Cir. 2014) (finding expert report submitted for final approval of settlement "too shallow to be admissible as evidence").

## CONCLUSION

The declarations of Fitzpatrick and Klonoff must be stricken for the purpose of deciding EUCP counsel's fee award because the declarations are unhelpful, contrary to controlling law, commit serious methodological errors that make them unreliable and thus inadmissible under Rule 702, and are in any event legal opinion not admissible as expert testimony.

In the alternative, due process requires that Andren have the opportunity to depose any expert the Court intends to rely upon.

Dated: October 6, 2023    /s/ M. Frank Bednarz
M. Frank Bednarz, (ARDC No. 6299073)
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1440 W. Taylor St # 1487
Chicago, IL 60607
Phone: 801-706-2690
Email: frank.bednarz@hlli.org

*Attorney for Objector John Andren*

---

[5] For proceedings besides summary judgment, courts have reached contradictory conclusions concerning Rule 26 requirements. *See S. Yuba River Citizens League*, 257 F.R.D. at 611 & n.1 (noting paucity of cases and inconsistent conclusions regarding expert testimony at preliminary injunction and other decisions besides summary judgment).

## CERTIFICATE OF SERVICE

The undersigned certifies he electronically filed the foregoing Memorandum in Support of Andren's Motion to Strike via the ECF system for the Northern District of Illinois, thus effecting service on all attorneys registered for electronic filing.

Dated: October 6, 2023

/s/ M. Frank Bednarz

Objector Andren's Memo in Support of Motion to Strike, for the Purpose of Deciding EUCP's Renewed Fee Motion, the Declarations of Profs. Fitzpatrick and Klonoff

15