# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION,<br><br>This Document Relates To:<br><br>THE DIRECT PURCHASER PLAINTIFF ACTION | Case No.: 1:16-cv-08637<br><br>The Honorable Thomas M. Durkin |

# DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR REIMBURSEMENT OF LITIGATION EXPENSES

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...........................................................................................................1

II. LITIGATION BACKGROUND AND PRIOR SETTLEMENTS .....................................2

III. CLASS COUNSEL DEDICATED ENORMOUS RESOURCES TO THIS
MATTER AND FACED SIGNIFICANT RISKS .............................................................5

IV. CLASS COUNSEL'S LITIGATION EXPENSES WERE REASONABLY
INCURRED AND SHOULD BE REIMBURSED ...........................................................5

V. CONCLUSION...............................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Mills v. Elec. Auto-Lite Co.*,
 396 U.S. 375 (1970) ................................................................................................................5

*In re Ready-Mixed Concrete Antitrust Litig.*,
 No. 1:05-cv-00979, 2010 WL 3282591 (S.D. Ind. Aug. 17, 2010) ..........................................5

*In re Synthroid Mktg. Litig.*,
 264 F.3d 712 (7th Cir. 2001) ....................................................................................................6

**Other Authorities**

A. Conte, *Attorney Fee Awards* § 2.08 (3d ed. 2004) ......................................................................5

Fed. R. Civ. P. 23(h) ........................................................................................................................5

I.  **INTRODUCTION**

Co-Lead Class Counsel[1] for the Direct Purchaser Plaintiffs ("DPPs") have now secured $284,650,750 in settlements from 13 Defendant families and are currently engaged in the Track 1 trial with the sole remaining Defendant, Sanderson Farms. On December 1, 2021, this Court approved an interim payment of attorney's fees, reimbursement of litigation expenses, and Class Representative service awards. (*See* ECF No. 5229, the "Order.") In the motion leading to that Order, DPPs sought reimbursement of individual firm expenses through December 31, 2020 and Litigation Fund expenses through April 12, 2021. (*See* ECF No. 4552 at ¶¶ 29, 32.)

Co-Lead Class Counsel now seek reimbursement of the significant litigation costs they have incurred in the prosecution of this litigation between April 13, 2021 and September 30, 2023. Co-Lead Class Counsel are not presently seeking an award of attorney's fees, individual firm expenses (as more fully explained in Section IV below), or Class Representative service awards, but will do so at a later date as noted in the recently filed Motion for Preliminary Approval of the Settlements with the House of Raeford and Koch Defendants. (*See* ECF No. 6927 at 1-2.)

Since the inception of this litigation, Co-Lead Class Counsel have incurred over $9 million in reasonable and necessary litigation expenses, of which $4,469,346.65[2] currently are unreimbursed. (*See* Declaration of Michael H. Pearson in support of this motion ("Pearson Decl.") ¶ 13.) All DPP Settlement and Certified Class members have received notice of this motion. In the Court-approved notice for the Simmons, Mountaire, and O.K. Foods settlements, Co-Lead Class Counsel informed DPPs that they would seek reimbursement of up to $6 million in litigation

---

[1] When the Court granted DPPs' motion for class certification on May 27, 2022, it appointed Lockridge Grindal Nauen P.L.L.P. ("LGN") and Pearson Warshaw, LLP ("PW") as Co-Lead Class Counsel. (*See* ECF No. 5644.)

[2] This unreimbursed total does not include individual firm expenses. Co-Lead Class Counsel will petition the Court (and notify the Certified Class) for reimbursement of individual firm expenses in a later motion.

expenses, that this motion would be posted to the case website (http://www.broilerchickenantitrustlitigation.com), and that they would be allowed to object to this motion. (*See* ECF No. 6830.) Co-Lead Class Counsel also informed DPPs that the Court will determine the amount of the litigation expenses to be reimbursed from the settlement funds. Prior to the Court's fairness hearing on December 12, 2023, Co-Lead Class Counsel will report to the Court on any objections received.

## II. LITIGATION BACKGROUND AND PRIOR SETTLEMENTS

This is an antitrust class action against certain producers of Broilers.[3] DPPs allege that Defendants combined and conspired to fix, raise, maintain, or stabilize prices of Broilers sold in the United States. DPPs allege that Defendants implemented their conspiracy in various ways, including via coordinated supply restrictions, sharing competitively sensitive price and production information, and otherwise manipulating Broiler prices.

DPPs commenced this litigation on September 2, 2016, when they filed a class action lawsuit on behalf of all direct purchasers of Broilers in the United States. (ECF No. 1.) Other class plaintiffs and direct-action plaintiffs subsequently filed similar actions. On October 14, 2016, the Court appointed the undersigned law firms as Direct Purchaser Plaintiffs' Interim Co-Lead and Liaison Counsel. (ECF No. 144.) After extensive briefing by the parties, on November 20, 2017, the Court denied Defendants' Motions to Dismiss the DPPs' First Consolidated Amended

---

[3] Consistent with the Complaint, the term Broilers is defined in the Settlement Agreements as "chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, raw or cooked, whole or in parts, or as a meat ingredient in a value added product, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards." (*See* Settlement Agreements § 1.d.) Settling Defendants agree to this definition only for purposes of approving the Settlements and otherwise reserve all rights, arguments and defenses with respect to this definition.

Complaint. (ECF No. 541.) DPPs filed their operative Fifth Consolidated Amended Complaint on October 23, 2020. (ECF No. Nos. 3919 (Redacted) and 3935 (Unredacted).)

DPPs thoroughly investigated the case and engaged in extensive discovery prior to reaching the any of the settlements. These efforts commenced prior to the filing of DPPs' initial complaint and included pre-litigation investigation into Defendants' conduct that formed the basis of the DPPs' complaints. (*See* Pearson Decl. ¶ 3.) In denying Defendants' motions to dismiss, the Court held that these "alleged factual circumstances plausibly demonstrate that [Defendants'] parallel conduct was a product of a conspiracy." (*See* ECF No. 541, p. 18.) During the litigation, DPPs obtained responses to multiple sets of interrogatories, and received over 8 million documents in response to their requests for production and third-party subpoenas. (*See* Pearson Decl. ¶ 4.) DPPs, along with other plaintiffs, have taken over 100 depositions of the Defendants and third parties. (*Id.* ¶ 5.) DPPs have also provided responses to written discovery, produced documents, and appeared for depositions noticed by the Defendants. (*Id*. ¶ 6.)

Prior to the Court's ruling on Defendants' motions to dismiss, DPPs reached an "ice-breaker" settlement with Defendant Fieldale. Fieldale, a small producer, agreed to pay $2.25 million, provide cooperation including attorney and witness proffers, and produce certain documents to DPPs. (*See* Pearson Decl. ¶ 7.) The Court granted final approval to the Fieldale settlement on November 18, 2018. (*See* ECF No. 1414.) DPPs later settled with Defendants Amick, Peco, and George's. Like Fieldale, these three Defendant groups are small producers. (*See* Pearson Decl. ¶ 7.) In addition to providing cooperation to DPPs, Peco paid $4,964,600, George's paid $4,097,000, and Amick paid $3,950,000. (*See id*.) The Court granted final approval of the Amick, Peco, and George's settlements on October 27, 2020. (*See* ECF Nos. 3944 (Peco and George's), 3945 (Amick).) DPPs then secured significant settlements with Pilgrim's and Tyson in the amount

of $75 million and $79,340,000, respectively. (*See* Pearson Decl. ¶ 7.) The Court granted final approval of the Pilgrim's and Tyson settlements on June 29, 2021. (*See* ECF No. 4789.) DPPs then settled with Mar Jac and Harrison Poultry in the amount of $7,975,000 and $3,300,000, respectively. (*See* Pearson Decl. ¶ 7.) The Court granted final approval of the Mar Jac and Harrison settlements on January 27, 2022. (*See* ECF No. 5397.) Next, DPPs secured a settlement with Simmons in the amount of $8,018,991. (*See* Pearson Decl. ¶ 7.) The Court granted preliminary approval of the Simmons settlement on June 12, 2023 and set a final fairness hearing for December 12, 2023. (*See* ECF No. 6615.) DPPs then settled with Mountaire and O. K. Foods in the amount of $15,899,826 and $4,856,333, respectively. (*See* Pearson Decl. ¶ 7.) The Court granted preliminary approval of the Mountaire and O.K. Foods settlements on September 5, 2023 and set a final fairness hearing for December 12, 2023. (*See* ECF No. 6830.) Most recently, DPPs secured settlements with House of Raeford and Koch in the amount of $27,500,000 and $47,500,000, respectively. (*See* Pearson Decl. ¶ 7.) DPPs filed their motion for preliminary approval of these most recent settlements on October 6, 2023. (*See* ECF No. 6927.) The total settlements obtained by DPPs to date is $284,650,750. (*See* Pearson Decl. ¶ 7.)

On May 27, 2022, the Court granted DPPs' motion for class certification and certified the following DPP Class:

> All persons who purchased raw Broilers directly from any of the Defendants or their respective subsidiaries or affiliates either fresh or frozen, in the form of: whole birds (with or without giblets), whole cut-up birds, or parts (boneless or bone in) derived from the front half of the whole bird, for use or delivery in the United States from December 1, 2008 until July 31, 2019.

(*See* ECF No. 5644.) On June 30, 2023, the Court granted in part and denied in part Defendants' motions for summary judgment. (*See* ECF No. 6641.) The Track 1 trial commenced on September 12, 2023 and is ongoing.

### III. CLASS COUNSEL DEDICATED ENORMOUS RESOURCES TO THIS MATTER AND FACED SIGNIFICANT RISKS

From the inception of their investigation into this matter, Class Counsel (which includes Co-Lead Class Counsel as well as other lawyers and law firms) dedicated their time, expertise, and capital to ensure the Certified Class would recover for Defendants' wrongful conduct. Class Counsel have done so entirely on a contingent basis, with no guarantee of compensation or even reimbursement of expenses. Since the inception of this case (which was many months before it was filed in September 2016), Class Counsel invested hundreds of thousands of hours of attorney and other legal professional time. (*See* Pearson Decl. ¶ 8.) Co-Lead Class Counsel have worked diligently to ensure that throughout the case, Class Counsel's efforts have been coordinated, detailed, vigorous, and efficient. This Court is well acquainted with the history of this case, so Co-Lead Class Counsel will not repeat in depth the litigation, its procedural history, expert analysis, and other work needed to build a case of this magnitude. To date, the result of these efforts is a substantial recovery for the DPPs: settlements totaling more than $284 million. (*See* Pearson Decl. ¶ 7.)

### IV. CLASS COUNSEL'S LITIGATION EXPENSES WERE REASONABLY INCURRED AND SHOULD BE REIMBURSED

In addition to the time invested in this case discussed above, Class Counsel have incurred significant litigation expenses in prosecuting this litigation. Under the common fund doctrine, class counsel customarily are entitled to reimbursement of reasonable expenses incurred in prosecuting the litigation. Fed. R. Civ. P. 23(h); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970) (recognizing the right to reimbursement of expenses where a common fund has been produced or preserved for the benefit of a class); A. Conte, *Attorney Fee Awards* § 2.08, at 50–51 (3d ed. 2004). Reimbursable expenses are those "that are consistent with market rates and practices." *In re Ready-Mixed Concrete Antitrust Litig.*, No. 1:05-cv-00979, 2010 WL 3282591, at *3 (S.D. Ind. Aug. 17,

2010); *see also In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001) ("Reducing litigation expenses because they are higher than the private market would permit is fine; reducing them because the district judge thinks costs too high in general is not."). This Court has previously approved reimbursement of reasonable and necessary litigation expenses in this case. (*See* Order, ECF No. 5229.)

The expenses incurred in this case can be categorized as: (1) expenses incurred individually by each firm; and (2) expenses paid from the common Litigation Fund monitored and controlled by Co-lead Class Counsel.[4] These expenses were incurred and accounted for in accordance with the Court-approved Time and Expense Protocol. (*See* Pearson Decl. ¶ 9; *see also* ECF No. ¶ at 7, ¶ 11(g).) Due to the risk that they might never be recovered, Class Counsel endeavored to keep expenses to a minimum. (*See* Pearson Decl. ¶ 9.) These expenses, discussed in detail herein, were required to effectively and efficiently prosecute a complex antitrust case against enormous (and enormously wealthy) business entities, to support massive fact and expert discovery, to obtain class certification, to largely defeat Defendants' motions for summary judgment, to prepare for trial, and to effectively manage the case. (Pearson Decl. ¶ 9.) Class Counsel is not presently seeking

---

[4] In addition to the expenses described here and for which Class Counsel now seek reimbursement, additional payments have been made from the settlement escrow accounts for settlement-related expenses; specifically, class notice as directed by the Court, related expenses regarding preliminary or final approval of the settlements, and related bank fees. These payments were made pursuant to each Settling Defendant's Settlement Agreement which reserved a specific amount of such Settling Defendant's payment to be used to pay notice and related costs, and which would be non-refundable to the Settling Defendant in the event the settlement was not finally approved. (ECF No. 5052-1 at 17-18, ¶ 6(c)-(d), 45-46, ¶ 6(c)-(d) (Mar Jac and Harrison Poultry); ECF No. 6597-1 at 11-12, ¶ 6(c)-(d) (Simmons); ECF No. 6814-1 at 11-12, ¶ 6(c)-(d) (Mountaire); ECF No. 6814-2 at 11-12, ¶ 6(c)-(d) (O.K. Foods); ECF No. 6928-1 at 11-12, ¶ 6(c)-(d) (HRF); ECF No. 6928-2 at 11-12, ¶ 6(c)-(d) (Koch).) While these payments are not included in the requested reimbursement in this petition and have already been paid or may be paid from those escrow accounts, we describe those expenditures here to fully describe all litigation-related expenses incurred in this case. (Pearson Decl. ¶ 17.)

reimbursement of the litigation expenses incurred individually by each firm, but will do so in a future motion.[5]

Co-Lead Class Counsel have incurred Litigation Fund expenses of $3,864,780.17 from April 13, 2021 through September 30, 2023, while settling with 7 additional Defendant families (Mar Jac, Harrison Poultry, Simmons, Mountaire, O.K. Foods, HRF, and Koch for an additional $115,050,150. (*See* Pearson Decl. ¶ 13.) Litigation Fund costs fall into ten categories: (1) Investigators & Consultants, (2) Experts, (3) Claim Administration and Distribution, (4) Document Database Vendor, (5) Mediators, (6) Phone Records Vendor & Subpoena Costs, (7) Deposition Costs, (8) Court Transcripts, (9) Trial Costs, and (10) Miscellaneous Costs. Each of these ten categories is described in further detail below.

(1) Investigators & Consultants. Co-Lead Class Counsel have engaged various investigators, industry consultants, economic consultants, and e-discovery consultants to assist them in litigating this case.[6] These costs were necessary to investigate the case, analyze various data relating to the Broiler market, and assist in resolving complex e-discovery collection and search issues. Between April 13, 2021 and September 30, 2023, Co-Lead Class Counsel have incurred $129,014.25 for the services of investigators and consultants.

(2) Experts. Co-Lead Class Counsel have engaged the services of a testifying expert economist (Dr. Colin Carter) as well as Dr. Carter's team, and a prominent economic analyst firm (OSKR) to assist him and his team in standardizing and processing substantial amounts of data.

---

[5] Additionally, Co-Lead Class Counsel's future request for reimbursement of litigation expenses will include litigation costs incurred after October 1, 2023 and paid from the HRF and Koch settlements, plus any recovery obtained at the Track 1 trial or by future settlement with Sanderson Farms.

[6] As these are non-testifying experts which the parties have expressly agreed to shield from disclosure (ECF No. 908), Class Counsel do not identify them by name here.

Between April 13, 2021 and September 30, 2023, Dr. Carter and OSKR's reasonable and necessary expenses total $2,225,482.13.

(3) Claim Administration and Distribution. Following the first distribution of over $100 million in settlement proceeds in 2022, $8,191.60 of additional costs were incurred. These costs were incurred responding to inquiries from claimants and managing the undistributed escrow account. Because those escrow accounts were distributed, Co-Lead Class Counsel determined that these costs were most appropriately paid from the Litigation Fund (rather than any of the non-distributed settlement escrow accounts).

(4) Document Database Vendor. In connection with discovery in this case, Co-Lead Class Counsel retained a vendor with expertise in designing and maintaining electronic databases ("Document Database Vendor"). DPPs' Document Database Vendor provided a database that enabled Class Counsel to search, review, analyze, and code a database with more than 8 million documents and other records produced by Defendants and various third parties. The review, analysis, and coding of documents has been integral to Co-Lead Class Counsel's efforts relating to fact and expert discovery. The Document Database Vendor's product also included a technology-assisted review ("TAR") tool that increased the accuracy of the review and decreased the percent of the overall documents it was necessary to have manually reviewed by attorneys. Between April 13, 2021 and September 30, 2023, Co-Lead Class Counsel have incurred Document Database Vendor costs totaling $533,781.24.

(5) Mediators. In connection with three of the seven settlements since April 13, 2021, Co-Lead Class Counsel engaged the services of two prominent mediators: Eric Green (Mountaire) and Judge (Ret.) Daniel Weinstein (HRF and Koch). Co-Lead Class Counsel split the cost of such

mediators with other parties, but between April 13, 2021 and September 30, 2023 Co-Lead Class Counsel have spent $42,672.94 for mediators.

(6) Phone Records Vendor & Subpoena Costs. Another critical element of Co-Lead Class Counsel's discovery effort has been the services provided by a vendor that has expertise in processing and analyzing phone records ("Phone Records Vendor"). Co-Lead Class Counsel obtained the phone records of Defendants' employees pursuant to subpoenas to phone service providers such as AT&T and Verizon. These phone records were provided to the Phone Records Vendor, who in turn analyzed the data and provided Co-Lead Class Counsel with information establishing an extraordinary number of direct inter-company communications – phone calls and text messages – between Defendants' employees. The review and analysis of Defendants' phone records has been integral to Co-Lead Class Counsel's discovery efforts and proving Defendants engaged in unlawful conduct. Between April 13, 2021 and September 30, 2023, Co-Lead Class Counsel have received invoices from the Phone Records Vendor totaling $2,839.97.

(7) Deposition Costs. Another critical element of fact and expert discovery has been the 30(b)(1), 30(b)(6), and expert depositions taken by all parties. Co-Lead Class Counsel and Defendants retained separate vendors with expertise in providing deposition transcription services in complex antitrust litigation ("Deposition Vendors"). The services provided by the Deposition Vendors have been critical to Co-Lead Class Counsel's efforts to prosecute DPPs' claims. Between April 13, 2021 and September 30, 2023, for deposition-related costs Co-Lead Class Counsel have paid a total of $94,808.40.

(8) Court Transcripts. Co-Lead Class Counsel have incurred significant costs obtaining hearing transcripts in this matter. These costs were necessary to litigate this case. In total, costs for

court transcripts, including a significant advance payment for the ongoing Track 1 trial, between April 13, 2021 and September 30, 2023 are $43,347.20.

(9) Trial Costs. Trial in this matter commenced on September 12, 2023, but preparation began long before the first day in Court. In order to avoid any untimely disclosure and tactical advantage to the Track 1 trial Defendant Sanderson Farms, Co-Lead Class Counsel states that the significant costs incurred for this category were reasonable and necessary to prepare for and put on the highly complex antitrust trial that is currently ongoing. The Litigation Fund incurred costs of $784,609.44 for trial-related matters.[7]

(10) Miscellaneous Costs. One miscellaneous cost has been incurred between April 13, 2021 and September 30, 2023, which is the cost of a returned check. In total, Miscellaneous Costs between April 13, 2021 and September 30, 2023 are $33.00.

Expenses in each of these categories are also described in the Pearson Declaration ¶¶ 9-14, and were reasonably necessary to advance the interests of the Certified Class and to obtain the favorable results achieved to date.

Finally, on December 1, 2021, the Court ordered reimbursement of $4.5 million in incurred litigation expenses because Co-Lead Class Counsel gave notice of that amount. (*See* ECF No. 5229.) At that time, Class Counsel had actually incurred costs of $5,104,566.48 through April 12, 2021[8]. (*See* ECF No. 4551 at 19-21.) Co-Lead Class Counsel noted at the time that they would seek reimbursement of the unreimbursed $604,566.48 in the future (*see id.* at n.16), which the

---

[7] If the Court wishes more information on these expenses related to the ongoing trial, Co-Lead Class Counsel propose that they make an *in camera* and ex parte submission to the Court to provide such detail.

[8] DPPs sought reimbursement of individual firm expenses through December 31, 2020 and litigation fund expenses through April 12, 2021. (*See* ECF No. 4552 at ¶¶ 29, 32.)

Court acknowledged in the Order (at 10). Co-Lead Class Counsel now seek reimbursement of this already-approved amount by way of this motion.

In total, Co-Lead Class Counsel is now seeking reimbursement of $4,469,346.65, which comports with the notice sent to the Certified Class in conjunction with the Simmons, Mountaire, and O.K. Foods settlements that informed DPPs that on October 12, 2023 Co-Lead Class Counsel will file a second motion for reimbursement of litigation expenses up to $6 million from the Mar Jac, Harrison Poultry, Simmons, Mountaire, and O.K. Foods settlements.[9] (*See* ECF No. 6830.)

## V. CONCLUSION

For these reasons, Co-Lead Class Counsel respectfully requests that the Court authorize the reimbursement of $4,469,346.65 in Litigation Fund costs incurred through September 30, 2023.

---

[9] Notice of the HRF and Koch settlements has not yet been sent to the Certified Class. Therefore, the litigation expenses sought by this motion will not be paid from those settlement funds.

Date: October 12, 2023

/s/ Michael H. Pearson
Clifford H. Pearson (*Pro Hac Vice*)
Daniel L. Warshaw (*Pro Hac Vice*)
Bobby Pouya (*Pro Hac Vice*)
Michael H. Pearson (*Pro Hac Vice*)
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
T: (818) 788-8300
F: (818) 788-8104
cpearson@pwfirm.com
dwarshaw@pwfirm.com
bpouya@pwfirm.com
mpearson@pwfirm.com

W. Joseph Bruckner (*Pro Hac Vice*)
Brian D. Clark (*Pro Hac Vice*)
Simeon A. Morbey (*Pro Hac Vice*)
Kyle Pozan (IL #6306761)
Arielle S. Wagner (*Pro Hac Vice*)
Stephen M. Owen (*Pro Hac Vice*)
Develyn Mistriotti (*Pro Hac Vice*)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P**.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T: (612) 339-6900
F: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
samorbey@locklaw.com
kjpozan@locklaw.com
aswagner@locklaw.com
smowen@locklaw.com
djmistriotti@locklaw.com

Bruce L. Simon (*Pro Hac Vice*)
Jill M. Manning (*Pro Hac Vice*)
**PEARSON WARSHAW, LLP**
555 Montgomery Street, Suite 1205
San Francisco, CA 94111
T: (415) 433-9000
F: (415) 433-9008
bsimon@pwfirm.com
jmanning@pwfirm.com

*Direct Purchaser Plaintiffs' Co-Lead Class Counsel*

Steven A. Hart (IL #6211008)
Brian Eldridge (IL #6281336)
**HART MCLAUGHLIN & ELDRIDGE, LLC**
1 South Dearborn, Suite 1400
Chicago, IL 60603
T: (312) 955-0545
F: (312) 971-9243
shart@hmelegal.com
beldridge@hmelegal.com

*Direct Purchaser Plaintiffs' Liaison Class Counsel*