# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION, | Case No.: 1:16-cv-08637 |
| | The Honorable Thomas M. Durkin |
| This Document Relates To: | |
| THE DIRECT PURCHASER PLAINTIFF ACTION | |

# DECLARATION OF MICHAEL H. PEARSON IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR REIMBURSEMENT OF LITIGATION EXPENSES

999965.2

I, Michael H. Pearson, declare and state as follows:

1. I am a Partner of the law firm of Pearson Warshaw, LLP. This Court has appointed my firm, together with Lockridge Grindal Nauen P.L.L.P., as Co-Lead Class Counsel for the Direct Purchaser Plaintiff Class ("DPPs") in this litigation.

2. I submit this Declaration in support of the Direct Purchaser Plaintiffs' Motion for Reimbursement of Litigation Expenses, filed concurrently herewith.

3. As counsel for DPPs, we performed a thorough investigation and engaged in extensive discovery prior to reaching any of the settlements. These efforts commenced prior to the filing of DPPs' initial complaint and included pre-litigation investigation into Defendants' conduct that formed the basis of the DPPs' complaints.

4. During the litigation, DPPs obtained responses to multiple sets of interrogatories, and received over 8 million documents in response to their requests for production and third-party subpoenas.

5. DPPs along with other plaintiffs have taken over 100 depositions of the Defendants and third parties.

6. DPPs have also provided responses to written discovery, produced documents, and appeared for depositions noticed by the Defendants.

7. Prior to the Court's ruling on Defendants' motions to dismiss, Plaintiffs reached an "ice-breaker" settlement with Defendant Fieldale. Fieldale, a small producer, agreed to pay $2.25 million, provide cooperation including attorney and witness proffers, and produce certain documents to DPPs. The Court granted final approval to the Fieldale settlement on November 18, 2018. (*See* ECF No. 1414.) Plaintiffs later reached settlements with Defendants Amick, Peco, and George's. Like Fieldale, these three Defendant groups are small producers. In addition to providing

cooperation to DPPs, Peco paid $4,964,600, George's paid $4,097,000, and Amick paid $3,950,000. (*See id.*) The Court granted final approval of the Amick, Peco, and George's settlements on October 27, 2020. (*See* ECF Nos. 3944 (Peco and George's), 3945 (Amick).) DPPs then secured significant settlements with Pilgrim's and Tyson in the amount of $75 million and $79,340,000, respectively. The Court granted final approval of the Pilgrim's and Tyson settlements on June 29, 2021. (*See* ECF No. 4789.) DPPs then secured significant settlements with Mar Jac and Harrison Poultry in the amount of $7,975,000 and $3,300,000, respectively. The Court granted final approval of the Mar Jac and Harrison settlements on January 27, 2022. (See ECF No. 5397.) Next, DPPs secured a settlement with Simmons in the amount of $8,018,991. The Court granted preliminary approval of the Simmons settlement on June 12, 2023 and set a final fairness hearing for December 12, 2023. (See ECF No. 6615.) DPPs then settled with Mountaire and O.K. Foods in the amount of $15,899,826 and $4,856,333, respectively. The Court granted preliminary approval of the Mountaire and O.K. Foods settlements on September 5, 2023 and set a final fairness hearing for December 12, 2023. (*See* ECF No. 6830.) Most recently, DPPs secured settlements with House of Raeford and Koch in the amount of $27,500,000 and $47,500,000, respectively. DPPs filed their motion for preliminary approval of these most recent settlements on October 6, 2023. (*See* ECF No. 6927.) The total settlements obtained by DPPs to date is $284,650,750.

8. Since the inception of this case many months before it was actually filed in September 2016, Co-Lead Class Counsel invested hundreds of thousands of hours of attorney and other legal professional time.

9. All expenses were incurred and accounted for in accordance with the Court-approved Time and Expense Protocol (*see* ECF No. 172 at 7, ¶ 11(g)), and due to the risk that they

might never be recovered, Class Counsel endeavored to keep expenses to a minimum. These expenses, discussed in detail herein, were required to effectively and efficiently prosecute a complex antitrust case against enormous (and enormously wealthy) business entities, to support massive fact and expert discovery, to obtain class certification, to largely defeat Defendants' motions for summary judgment, to prepare for trial, and to effectively manage the case.

10. The expenses incurred in this case can be categorized as: (1) expenses incurred individually by each firm; and (2) expenses paid from the common Litigation Fund monitored and controlled by Co-lead Class Counsel.

11. Expenses incurred by each individual firm, including but not limited to Co-Lead Class Counsel, are reported to Co-Lead Class Counsel monthly in accordance with the Time and Expense Protocol. These expenses include categories such as online legal research, travel, shipping and mailing, and document imaging and copying. Outside of the expenses incurred by Co-Lead Class Counsel (which include some early expert and consultant fees incurred before the Litigation Fund was established), the primary expenses incurred by Class Counsel relate to preparing for and attending depositions and hearings (*e.g.*, travel, exhibit copy, and exhibit shipping expenses) and legal research (*e.g.*, Westlaw charges). These do not include expenses paid directly out of the Litigation Fund. These expenses are *not* included in this motion for reimbursement, but will be part of a future motion.

12. On behalf of all Class Counsel, Co-Lead Class Counsel established, monitored, and administered a common cost litigation fund ("Litigation Fund") from which to pay litigation costs incurred for the case overall in its prosecution. The Litigation Fund is used to pay ongoing litigation expenses on behalf of the Class in this matter. The Litigation Fund initially was funded

and is replenished as required by assessment payments from Class Counsel. The expenditures of the Litigation Fund are in addition to expenses incurred individually by each Class Counsel.

13. All expenses paid from the Litigation Fund were reasonably incurred and necessary to the prosecution of this case. While settling with 7 additional Defendant families (Mar Jac, Harrison Poultry, Simmons, Mountaire, O.K. Foods, HRF, and Koch for an additional $115,050,150, the recorded costs and expenses incurred by Class Counsel since April 13, 2021 through September 30, 2023 and paid by the Litigation Fund total $3,864,780.17 and are itemized below.

14. The Litigation Fund costs fall into ten categories: (1) Investigators & Consultants, (2) Experts, (3) Claim Administration and Distribution, (4) Document Database Vendor, (5) Mediators, (6) Phone Records Vendor & Subpoena Costs, (7) Deposition Costs, (8) Court Transcripts, (9) Trial Costs, and (10) Miscellaneous Costs. Each of these ten categories is described in further detail below.[1]

14.1 **Investigators & Consultants**: Co-Lead Class Counsel have engaged various investigators, industry consultants, economic consultants, and e-discovery consultants to assist them in litigating this case.[2] These costs were necessary to investigate the case, analyze various data relating to the Broiler market, and assist in resolving complex e-discovery collection and search issues. Between April 13, 2021 and September 30, 2023, Co-Lead Class Counsel have incurred $129,014.25 for the services of investigators and consultants.

---

[1] Upon request by the Court, Co-Lead Class Counsel will provide the Court further detail and documentation concerning any category, but requests that such information be submitted *in camera* to protect Class Counsel's work product from disclosure to Defendants.
[2] As these are non-testifying experts which the parties have expressly agreed to shield from disclosure (ECF No. 908), Class Counsel do not identify them by name here.

14.2 **Experts**: Co-Lead Class Counsel have engaged the services of a testifying expert economist (Dr. Colin Carter) as well as Dr. Carter's team, and a prominent economic analyst firm (OSKR) to assist him and his team in standardizing and processing substantial amounts of data. Between April 13, 2021 and September 30, 2023, Dr. Carter and OSKR's reasonable and necessary expenses total $2,225,482.13.

14.3 **Claim Administration and Distribution**: Following the first distribution of over $100 million in settlement proceeds in 2022, $8,191.60 of additional costs were incurred. These costs were incurred responding to inquiries from claimants and managing the undistributed escrow account. Because those escrow accounts were distributed, Co-Lead Class Counsel determined that these costs were most appropriately paid from the Litigation Fund (rather than any of the non-distributed settlement escrow accounts).

14.4 **Document Database Vendor**: In connection with discovery in this case, Co-Lead Class Counsel retained a vendor with expertise in designing and maintaining electronic databases ("Document Database Vendor"). DPPs' Document Database Vendor provided a database that enabled Class Counsel to search, review, analyze, and code a database with more than 8 million documents and other records produced by Defendants and various third parties. The review, analysis, and coding of documents has been integral to Co-Lead Class Counsel's efforts relating to fact and expert discovery. The Document Database Vendor's product also included a technology-assisted review ("TAR") tool that increased the accuracy of the review and decreased the percent of the overall documents it was necessary to have manually reviewed by attorneys. Between April 13, 2021 and September 30, 2023, Co-Lead Class Counsel have incurred Document Database Vendor costs totaling $533,781.24.

14.5 **Mediators**: In connection with three of the seven settlements since April 13, 2021, Co-Lead Class Counsel engaged the services of two prominent mediators: Eric Green (Mountaire) and Judge (Ret.) Daniel Weinstein (HRF and Koch). Co-Lead Class Counsel split the cost of such mediators with other parties, but between April 13, 2021 and September 30, 2023 Co-Lead Class Counsel have spent $42,672.94 for mediators.

14.6 **Phone Records Vendor & Subpoena Costs**: Another critical element of Co-Lead Class Counsel's discovery effort has been the services provided by a vendor that has expertise in processing and analyzing phone records ("Phone Records Vendor"). Co-Lead Class Counsel obtained the phone records of Defendants' employees pursuant to subpoenas to phone service providers such as AT&T and Verizon. These phone records were provided to the Phone Records Vendor, who in turn analyzed the data and provided Co-Lead Class Counsel with information establishing an extraordinary number of direct inter-company communications – phone calls and text messages – between Defendants' employees. The review and analysis of Defendants' phone records has been integral to Co-Lead Class Counsel's discovery efforts and proving Defendants engaged in unlawful conduct. Between April 13, 2021 and September 30, 2023, Co-Lead Class Counsel have received invoices from the Phone Records Vendor totaling $2,839.97.

14.7 **Deposition Costs**: Another critical element of fact and expert discovery has been the 30(b)(1), 30(b)(6), and expert depositions taken by all parties. Co-Lead Class Counsel and Defendants retained separate vendors with expertise in providing deposition transcription services in complex antitrust litigation ("Deposition Vendors"). The services provided by the Deposition Vendors have been critical to Co-Lead Class Counsel's efforts to prosecute DPPs'

claims. Between April 13, 2021 and September 30, 2023, for deposition-related costs Co-Lead Class Counsel have paid a total of $94,808.40.

   14.8 **Court Transcripts**: Co-Lead Class Counsel have incurred significant costs obtaining hearing transcripts in this matter. These costs were necessary to litigate this case. In total, costs for court transcripts, including a significant advance payment for the ongoing Track 1 trial, between April 13, 2021 and September 30, 2023 are $43,347.20.

   14.9 **Trial Costs**: Trial in this matter commenced on September 12, 2023, but preparation began long before the first day in Court. In order to avoid any untimely disclosure and tactical advantage to the Track 1 trial Defendant Sanderson Farms, Co-Lead Class Counsel states that the significant costs incurred for this category were reasonable and necessary to prepare for and put on the highly complex antitrust trial that is currently ongoing. The Litigation Fund incurred costs of $784,609.44 for trial-related matters.

   14.10 **Miscellaneous Costs**: One miscellaneous cost has been incurred between April 13, 2021 and September 30, 2023, which is the cost of a returned check. In total, Miscellaneous Costs between April 13, 2021 and September 30, 2023 are $33.00.

   15. On December 1, 2021 the Court ordered reimbursement of $4.5 million in incurred litigation expenses because Co-Lead Class Counsel gave notice of that amount. (*See* ECF No. 5229.) At that time, Class Counsel had actually incurred costs of $5,104,566.48 through April 12, 2021. (*See* ECF No. 4551 at 19-21.) Co-Lead Class Counsel noted at the time that they would seek reimbursement of the unreimbursed $604,566.48 in the future (*see id.* at n.16), which the Court acknowledged in the Order (at 10).

   16. In total, Co-Lead Class Counsel now seek reimbursement of $4,469,346.65.

17. In addition to the expenses described here and for which Class Counsel now seek reimbursement, additional payments have been made from the settlement escrow accounts for settlement-related expenses; specifically, class notice as directed by the Court, related expenses regarding preliminary or final approval of the settlements, and related bank fees. These payments were made pursuant to each Settling Defendant's Settlement Agreement which reserved a specific amount of such Settling Defendant's payment to be used to pay notice and related costs, and which would be non-refundable to the Settling Defendant in the event the settlement was not finally approved. (ECF No. 5052-1 at 17-18, ¶ 6(c)-(d), 45-46, ¶ 6(c)-(d) (Mar Jac and Harrison Poultry; ECF No. 6597-1 at 11-12, ¶ 6(c)-(d) (Simmons); ECF No. 6814-1 at 11-12, ¶ 6(c)-(d) (Mountaire); ECF No. 6814-2 at 11-12, ¶ 6(c)-(d) (O.K. Foods); ECF No. 6928-1 at 11-12, ¶ 6(c)-(d) (HRF); ECF No. 6928-2 at 11-12, ¶ 6(c)-(d) (Koch).) While these payments are not included in the requested reimbursement in this petition and have already been paid or may be paid from those escrow accounts, we describe those expenditures here to fully describe all litigation-related expenses incurred in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 12th day of October, 2023 at Sherman Oaks, California.

/s/ Michael H. Pearson
Michael H. Pearson