IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *In re Broiler Chicken Antitrust Litigation* <br><br> This Document Relates to: Track One | Case No. 1:16-cv-08637 <br><br> Honorable Thomas M. Durkin <br> Honorable Jeffrey T. Gilbert |

## PLAINTIFFS' RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW

With all the evidence and testimony now presented, Plaintiffs move pursuant to Federal Rule of Civil Procedure 50(a) for Judgment as a Matter of Law on the issues of: (1) Plaintiffs' entitlement to damages prior to September 2, 2012; (2) each disputed element of Sanderson's *per se* violation of the Sherman Act, both independently and collectively;[1] and (3) Plaintiffs' antitrust injuries resulting from the alleged violation. In further support of this Motion, Plaintiffs identify certain evidence erroneously excluded or admitted.

### A. Standard

"Rule 50 . . . allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Passananti v. Cook Cnty.*, 689 F.3d 655, 659 (7th Cir. 2012) (quoting FRCP 50(a)).

---

[1] Sanderson stipulated to the element of interstate commerce. *See* ECF 6948 at *13-18 (Stipulations of Fact).

B.     **Damages prior to September 2, 2012**

As reflected in the proposed jury instructions and verdict forms,[2] the parties agree that if Plaintiffs established that they did not know of the alleged conspiracy prior to September 2, 2012, and that they could not have discovered the alleged conspiracy before September 2, 2012, through the exercise of reasonable diligence, they are entitled to recover for injuries that occurred before September 2, 2012.

The Parties' testimonial stipulations[3] combined with trial testimony provided by each live Plaintiff witness[4] establishes that no Plaintiff knew of the alleged conspiracy prior to September 2, 2012. Sanderson admitted no evidence indicating otherwise.

Sanderson also admitted no evidence of facts reasonably available to any Plaintiff that should have aroused suspicion of a conspiracy. Mere market facts alone, including changes in supply or prices, and parallel actions by Sanderson and its co-conspirators, do not trigger a Plaintiff's duty to investigate.[5] Because there was insufficient evidence to trigger any duty to investigate, Plaintiffs could not have discovered the conspiracy in the exercise of reasonable diligence.[6]

---

[2] *See* ECF 6952 at *28-29 (Statute of Limitations instruction proposed by Sanderson); ECF 6949-1 at *3-4, 8 (verdict form proposed by Sanderson). Plaintiffs otherwise preserve all objections to Sanderson's proposed instructions and verdict form.

[3] ECF 6877 and 6878.

[4] *See* Trial Tr. (Peter Pahides (Cedar Farms)) 1061:4-8; Trial Tr. (Keith Bollman (Topco)) 2207:2-5; Trial Tr. (David Allen (Pacific Foods)) 2138:9-2139:6; Trial Tr. 2529:9-2530:10 (Shawn Spencer (Kroger)); Trial Tr. (Ryan Hutchens (Publix)) 1721:14-19; Trial Tr. (Frank Thurlow (Winn Dixie)) 1854:24-1855:14; Trial Tr. (Doug Neckers (Maplevale)) 1786:10-13; Trial Tr. (Jeff Noll (SuperValu)) 2314:14-2315:5; Trial Tr. (Stephanie Becker (AWG)) 2594:12-2595:3.

[5] *In re Broiler Chicken Antitrust Litig.*, 2023 WL 4303476, at *34 (N.D. Ill. June 30, 2023) ("The impetus for such an investigation could not be the market facts alone," and "general public information that does not 'mention . . . collusive behavior' is insufficient to put Plaintiffs on notice.") (citing *In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827, 855 (N.D. Ill. 2010)); *see In re Copper Antitrust Litigation*, 436 F.3d 782, 789-90 (7th Cir. 2006).

[6] *See* ECF 6952 at *28-29 (Statute of Limitations instruction proposed by Sanderson).

The live witnesses for Cedar Farms (a Direct Purchaser Class Representative);[7] Kroger, Publix, and Winn Dixie (retailers);[8] Pacific Foods (a redistributor);[9] SuperValu (a grocery wholesaler);[10] and Topco (a grocery cooperative)[11] further testified about their reasonable diligence with respect to chicken prices and chicken supply, including how Sanderson and its co-conspirators provided pretextual reasons for rising chicken prices, such as the cost of feed.[12] Sanderson and its co-conspirators' active concealment of collusive supply restrictions further impeded Plaintiffs' ability to discover the conspiracy.[13]

In sum, the record evidence firmly establishes that Plaintiffs could not (and did not) discover the alleged conspiracy through the exercise of reasonable diligence. Plaintiffs therefore satisfied their evidentiary burden and Sanderson did not rebut that evidence. Plaintiffs are now entitled to a Rule 50(a) judgment in their favor on this issue, as the jury would not have a legally sufficient evidentiary basis to find otherwise.

C. **Sanderson's *per se* violation**

The parties also agree that Sanderson is liable for a *per se* violation of the Sherman Act if: (1) among competing producers; (2) there was an agreement or understanding to reduce the

---

[7] *See* Trial Tr. (Peter Pahides (Cedar Farms)) 1054:3-1055:3, 1055:16-1056:11, 1061:4-8.
[8] *See* Trial Tr. (Shawn Spencer (Kroger)) 2520:12-2522:8, 2522:20-2523:5, 2528:19-2529:8, 2529:9-2530:10; Trial Tr. (Ryan Hutchens (Publix)) 1697:7-1699:17, 1699:18-1700:12, 1721:14-19; Trial Tr. (Frank Thurlow (Winn Dixie)) 1851:1-12, 1851:13-1853:4; 1854:24-1855:14.
[9] *See* Trial Tr. (David Allen (Pacific Foods)) 2120:24-2121:7, 2123:13-2124:1, 2137:14-17, 2138:9-2139:6.
[10] *See* Trial Tr. (Jeff Noll (SuperValu)) 2310:20-2312:2, 2323:3-16, 2314:14-2315:5.
[11] *See* Trial Tr. (Keith Bollman (Topco)) 2199:17-19, 2207:2-5, 2207:6-25, 2210:19-25, 2213:14-17, 2214:5-7.
[12] Sanderson and its co-conspirators also concealed the conspiracy from them by acting in secret. *See* Section C.2.c, *infra*.
[13] See ECF 6952 at *28-29 (Statute of Limitations instructed proposed by Sanderson).

supply of chickens; (3) that Sanderson joined.[14] Plaintiffs are entitled to a judgment as a matter of law on each of these elements, both individually and collectively.

1. <u>Sanderson and the other alleged co-conspirator producers were competitors</u>

Sanderson's own employees confirmed this proposition. Randy Pettus testified that "everybody in the broiler business except us" is Sanderson's competitor.[15] Pic Billingsley testified that each of the alleged co-conspirators was a competitor of Sanderson.[16] Sanderson admitted no evidence to the contrary. There is therefore no legally sufficient evidentiary basis for the jury to find for Sanderson on this issue.

2. <u>There was an agreement or understanding among these competitors to reduce the supply of chicken</u>

Plaintiffs presented overwhelming and unrebutted evidence of an agreement or understanding to reduce the supply of chicken among the competing chicken producers identified as co-conspirators.

   a. *Economic evidence*

As the Court found in its summary judgment ruling, Plaintiffs' economic evidence "strongly suggests the presence of an agreement."[17] All of that evidence was introduced at trial, including:

   i. Broilers are a commodity;[18]
   ii. There were unprecedented changes in production in 2008-09 and 2011-12;[19]

---

[14] *See* ECF 6948 at *34 (Sherman Act elements instruction proposed by Sanderson).
[15] *See* ECF 6933-06 (Randy Pettus (Sanderson) designations) at 26:14-22.
[16] Trial Tr. (Samuel "Pic" Billingsley (Sanderson)) 3015:1-3016:8.
[17] ECF 6641 at 24.
[18] Trial Tr. (Prof. Einer Elhauge) 823:1-17.
[19] *See, e.g.*, PX2511 (chart showing two decreases in production); Trial Tr. (Prof. Einer Elhauge) at 793:5-11 (explaining that 2008 "was an unprecedented level of drop in chicken production); *see also, e.g.*, Sanderson (PX0714.0016, PX1787.0001, PX0007.0012, PX1977.0002, PX1810, PX0730, ECF 6933-04 (Joe Sanderson designations) at 217:4-12); George's (PX0817, PX2461); Koch (PX1385, ECF 6935-5

4

     iii. Killing off breeder flocks is a means of supply reduction that is slow to reverse;[20]
     iv. Production cuts by individual producers alone would not raise prices;[21] and
     v. Regression analyses found that other non-conspiratorial economic factors failed to explain the supply restrictions.[22]

Indeed, the individual production restrictions implemented by Sanderson and its co-conspirators were against their unilateral economic self-interests in the absence of conspiracy.[23]

     *b. Sanderson and its co-conspirators in fact acted collectively to restrict the supply of chicken*

Plaintiffs presented evidence that Sanderson and its co-conspirators in fact engaged in collective production cuts and other supply restrictions in the periods January 2008 – August 2009[24] and January 2011 – August 2012.[25]

---

(Joe Grendys designations) at 164:3-9); Mountaire (PX0583, PX0819); House of Raeford (PX0325, PX1272); Harrison (PX0283-A, PX0266.0003); O.K. Foods (PX0481, PX0489, PX049); Peco (PX0817, PX0525); Pilgrim's (PX0649-A, PX1706.0002); Simmons (PX0817, PX0533, PX0770); Tyson (ECF 6933-02 (Donnie Smith designations) at 131:11-15, 195:25-196:03, PX0008); Amick (PX2415, PX1334); Keystone (PX1294); Mar-Jac (ECF 6962-05 (Phillip Turner designations) at 176:4-20).

[20] ECF 6933-04 (Joe Sanderson designations) at 327:11-12, 327:25-238:1 ("[I]t was really 2018 before you saw significant production come on the market …And it was all because of what happened in 2011."); Trial Tr. (Prof. Einer Elhauge) 888:21-22, 887:16 (breeder cuts are "going to be more irreversible [and] have a "longer term effect").

[21] *See, e.g.*, PX0740; ECF 6933-04 (Joe Sanderson designations) at 117:12-118:13.

[22] *See, e.g.*, Trial Tr. (Dr. James McClave) 2356:11-21, 2359:12-17, 2367:24-2368:3, 2382:14-2383:4, 2366:22-2367:13, 2372:20-2379:5, 2383:10-24.

[23] *See, e.g.*, Trial Tr. (Dr. Alan Frankel) 1635:3-1638:4, 1639:12-17, 1641:10-1642:7.

[24] Sanderson (PX0714.0016, PX1787.0001, PX0007.0012, PX1977.0002); Koch (PX1385, ECF 6935-5(Joe Grendys designations) at 164:15-16; Pilgrim's (PX0649-A, PX1706.0002); Simmons (PX0817); O.K. Foods (PX0481, PX0489); George's (PX0817, PX2461); Mountaire (PX0583); House of Raeford (PX0325); Harrison (PX0283-A); Peco (PX0817); Tyson (ECF 6933-02 (Donnie Smith designations) at 195:25-196:03).

[25] Sanderson (PX1810, PX0730, ECF 6933-04 (Joe Sanderson designations) at 217:4-12); Simmons (PX0533, PX0770); O.K. Foods (PX0491); Amick (PX2415, PX1334); Mountaire (PX0819); House of Raeford (PX1272); Harrison (PX0266.0003); Peco (PX0525); Tyson (PX0008, ECF XX (Donnie Smith designations at 131:11-15); Keystone (PX1294); Mar-Jac (ECF 6962-05 (Phillip Turner designations) at 176:4-20).

5

### c. *The conspirators signaled each other publicly about restraining supply*

Plaintiffs' evidence established that the co-conspirators regularly signaled each other about supply conditions and the need for ongoing supply restrictions. For example, in January 2008, Pilgrim's announced that it "[could not] be the [company] . . . continually reducing production" and that "the rest of the market [was] going to have to pick up a fair share."[26] In February 2008, Joe Sanderson stated: "I just don't think the losses have been deep enough and the signals have been strong enough to cut back."[27] In May 2008, Pilgrim's further stated that, "six chicken producers, including Pilgrim's Pride, have public[ly] announced production cutbacks this year. . . . We believe additional cutbacks will be required."[28] In August 2008, Joe Sanderson announced that the "industry will need to cut production" and "it will take another round of production cuts. . . . [A] lot of other people . . . are going to have to cut."[29] Also in August 2008, Harrison's CEO Mike Welch said that "Tyson is holding out and refusing to cut back as retribution to the industry for not cutting back with them the last time."[30]

Then in February 2009, Joe Sanderson announced that Sanderson was "running below capacity at all our plants."[31] Again in 2011, Joe Sanderson publicly announced that "the industry will cut back some more. They have to."[32] In February 2012, Tyson announced that "total supplies remain pulled back" and "[w]e expect to remain disciplined in our placements in production."[33]

---

[26] PX0005.0012.
[27] PX0595A.0006.
[28] PX0658.0004.
[29] PX0714. *See also* PX0803 (Tyson's CFO admitted that Joe Sanderson was "not really talking to investors but the rest of the industry.")
[30] PX0283.0002.
[31] PX0709.0035.
[32] PX0718.0022.
[33] PX1854.0004.

### d. In addition to public signaling, the conspirators talked secretly about supply restrictions

In August 2008, high-level executives from competitors Sanderson, Mountaire, OK Foods, and Pilgrim's took a fishing trip during which confidential production information was shared, including by Sanderson.[34] In October 2008, Don Tyson wrote to Jim Perdue and Joe Sanderson about joining together where interests are aligned.[35] Benny Bishop of Peco admitted he shared production plans with competitors, including Sanderson.[36] Don Taber of Raeford learned of an "unannounced" production cut by Sanderson Farms from Lampkin Butts (Sanderson's President).[37] Tyson and its competitors also discussed how Tyson's "buy vs. grow" program was restraining supply and increasing market prices.[38]

Sanderson's Director of Production Randy Pettus admitted that he shared Sanderson's confidential information with Sanderson's competitors.[39] Pettus went duck hunting once or twice a year, and would "talk in general terms" with competitors, including about "[w]hatever hot topic was in the grow-out at that point."[40] Bob Rosa admitted, "[i]t was against our company policy, but . . . he did it."[41] Joe Sanderson and Donnie King (Tyson) also spoke about the delay in opening

---

[34] PX0583.
[35] PX0731.
[36] ECF 6933-05 (Benny Bishop designations) at 81-83, 156.
[37] PX0328.0001.
[38] *See, e.g.*, PX1845.0002 (Nov. 2011 email from Peco, "I know you're the reason it's tightening"); PX1874.0001 (Apr. 2012 email to Pilgrim's, Tyson was "keeping it off the street" which was "good for the market").
[39] *See, e.g.*, PX0582-A.0005; ECF 6933-06 (Randy Pettus designations) at 167:09-169:04; 170:23-172:21; *see also, e.g.*, ECF 6933-06 (Randy Pettus designations) at 39:19-40:01, 42:15-43:03, 51:20-52:17.
[40] ECF 6933-09 (Steve McLaurin designations) at 214:22-215:14.
[41] Trial Tr. (Robert Rosa (Sanderson)) at 1279:13-18.

Sanderson's Palestine plant.[42] Joe Sanderson and Randall Goins, CEO of O.K. Foods, spoke shortly after Mr. Sanderson learned about a production cut by O.K. Foods.[43]

The co-conspirators also communicated about specific supply cuts through Agri Stats/EMI. Although Sue Trudell publicly refused to answer questions about how much supply cut was needed to get to $1.90 chicken, she told Tyson privately that it was exactly 6%.[44] Tyson's President Donnie King emailed, "can we get [] Sue Trudell to say the things we want everyone to know?"[45] Joe Sanderson said he "s[aw] a lot of information from Agr[i] Stats that tells me that nobody is going to ramp up."[46] Trudell also provided models to Sanderson Farms showing the exact percentage supply cuts the industry needed to implement in order to get to a certain price, and Joe Sanderson used that information in deciding how much to cut, and when telling Sanderson's competitors how much to cut.[47]

Sanderson and its co-conspirators also had private opportunities to collude, and did collude, at trade association meetings and social events,[48] and during numerous telephone conversations, including as summarized in the Rule 1006 exhibits introduced through former FBI agent Stacy Arruda.[49]

---

[42] PX0815; ECF 6933-04 (Joe Sanderson designations) at 275:05-16.
[43] PX2317A.0003; ECF 6933-04 (Joe Sanderson designations) at 279:17-280:04.
[44] PX0009.0001.
[45] PX0903.
[46] PX0007.0021.
[47] Trial Tr. (Robert Rosa (Sanderson)) at 1379:16-20, 1381:6-24, 1383:5-17.
[48] *See, e.g.*, ECF 6933-04 (Joe Sanderson designations) at 258:06-264:10 (detailing a private meeting that Joe Sanderson had with Tyson and Perdue in October 2008); ECF 6933-06 (Randy Pettus designations) at 167:09-169:04, 170:23-172:21 & PX582-A (detailing an August 2008 fishing trip that included Sanderson, OK Foods, Perdue, Mountaire, and Pilgrims).
[49] *See* Trial Tr. (Stacy Arruda (FBI)) at 962:20-1000:6; PX961-A; PX2307-C; PX2317-A; PX2422-A;; PX2420-C; PX2350-C.

> e. *The co-conspirators used spent-hen processors Southern Hens and Tip Top to coordinate and monitor supply cuts*

Members of these groups, which included Sanderson and other co-conspirators, shared information as to how many chickens each member was sending to be slaughtered; there was no anonymization.[50] As Rosa (Sanderson) testified, members "could tell how many birds were being slaughtered at Southern Hens."[51] Knowing how many birds were being slaughtered allowed members to coordinate long-term supply cuts as well as monitor compliance with the industry agreement to limit supply.[52]

Tip Top and Southern Hens also allowed conspirators to communicate about efforts to reduce supply.[53] As Michael Welch (President and CEO of Harrison) wrote, slaughtering chickens early "accomplishes most of the objective . . . getting hens killed so they can't lay eggs."[54]

Collectively this evidence established the existence of an agreement or understanding among these horizontal competitors to reduce the supply of chickens, and there would be no legally sufficient evidentiary basis for the jury to find for Sanderson on this issue.

3. <u>Sanderson joined the conspiracy to reduce the supply of chickens</u>

Much of the evidence discussed above involved Sanderson. It conclusively shows that Sanderson knowingly became a member of a conspiracy, rather than by mistake or accident.[55]

---

[50] *See, e.g.,* PX0244.0017; ECF 6951-03 (Robert Kenney designations at 250:18-251:10; PX0245.0042 (slaughter numbers by Southern Hens members from 2004 through 2014).

[51] Trial Tr. (Robert Rosa (Sanderson)) 1412:22-23.

[52] Trial Tr. (Prof. Einer Elhauge) 901:24-902:13.

[53] PX0259.0002 (Tip Top worked "to pull breeder kill dates up closer so that everyone can get breeders out of houses quickly"); PX0259.0001 (Harrison's CEO emailed a "plan" of Tip Top "getting hens killed so they can't lay eggs").

[54] PX0259.0001

[55] *See* ECF 6948 at *34 (Sherman Act elements instruction as proposed by Sanderson).

Plaintiffs also proved that Sanderson cut or restricted production during the conspiracy. Plaintiffs' expert Dr. Frankel found 17 production cuts by Sanderson from 2008 through 2012 that were more consistent with collusion than competition.[56]

Sanderson specifically cut against its unilateral interest in 2008.[57] In April 2008, Sanderson announced that it would build a processing plant in Kinston, NC.[58] Sanderson's modeling that supported its decision to build the Kinston plant factored in $7.50 corn.[59] But in June 2008, Sanderson delayed the Kinston plant.[60] Sanderson later called it "an overall positive for the industry to not have additional supply being placed into the market."[61] And although demand was strong from Sanderson's retail customers in 2008, Sanderson "ran [its] retail plants in Georgia, Mississippi, and Texas at 7 percent below full capacity."[62]

In 2009, Sanderson "maintain[ed] production levels at [its] Mississippi and Louisiana big bird plants at approximately 14% below full capacity through [its] second quarter."[63] Sanderson cut production again in 2011-2013 for 21 months.[64] That cut was 6 percent, despite Mr. Rosa's internal model showing that Sanderson cutting alone would in fact cost the company money.[65]

Given this unrebutted evidence, there would be no legally sufficient evidentiary basis for the jury to find that Sanderson did not join the conspiracy.

---

[56] Trial Tr. (Dr. Alan Frankel) 1641:10-1642:20.
[57] *See* Trial Tr. (Robert Rosa (Sanderson)) at 1276:19-1277:4.
[58] DX0192
[59] PX1773.0013.
[60] PX0720.0010.
[61] PX1977.0002.
[62] *See* Trial Tr. (Robert Rosa (Sanderson)) at 1313:11-19; PX0711.0005.
[63] PX0711.0005(discussed at Trial Tr. (Robert Rosa (Sanderson)) at 1299:2-16 (Rosa agreeing that "corn prices [were] down drastically in 2009, but Sanderson [kept] . . . the governor on production").
[64] Trial Tr. (Robert Rosa (Sanderson)) at 1392:1-11.
[65] *Id*. at 1391:7-10, 1324:12-14 (admitting that a cut results in increased per pound cost); PX0740.0004 (showing that a cut results in increased per pound cost).

### D. Plaintiffs sustained antitrust injuries as a result of the supply conspiracy

Unrebutted trial evidence showed that the co-conspirators' supply restrictions worked to raise market prices for chicken. In May 2009, Joe Sanderson stated in a public conference call that "the improvement [in market prices for fresh chicken] has more to do with production cuts than demand improvement."[66] Lampkin Butts, President and COO of Sanderson, agreed: "the improvement in boneless breast prices is a result of supply cuts and not demand improvement."[67] In December 2010, Sanderson wrote to its contract pullet producers and stated, "Industry cutbacks in 2008 and 2009 allowed chicken prices to improve, and these improved prices, combined with lower grain costs, allowed Sanderson Farms to remain profitable."[68]

Plaintiffs' causation and damages experts, Dr. McClave, Dr. Lamb, and Dr. Carter, calculated the overcharge injury suffered by each Individual Plaintiff and the Class as a result of the supply restrictions implemented by Sanderson and the co-conspirators.[69] Overcharges resulting from a horizontal supply restraint conspiracy are exactly the type of injury the antitrust laws intend to prevent. *U.S. Gypsum Co. v. Indiana Gas Co..*, 350 F.3d 623, 626-27 (7th Cir. 2003) (antitrust injury is "injury by reason of those things that make the practice unlawful, such as reduced output and higher prices").

Sanderson did not introduce any evidence showing that the injuries Plaintiffs suffered are not the type of injuries that the antitrust laws were intended to prevent. Further, Sanderson's experts did not present any alternative damage calculation, but simply contended that there was no

---

[66] PX0711.0004.
[67] PX2417.0005.
[68] PX2144.0001.
[69] Trial Tr. (Dr. James McClave) at 2383:5-2386:11, 2406:12-2414:20; Trial Tr. (Dr. Russell Lamb) at 2609:12-18; 2626:08-2628:03; Trial Tr. (Dr. Colin Carter) at 2704:21-2705:7, 2733:3-2734:11, 2742:3-2743:13, 2747:8-2749:8, 2753:14-2755:13.

conspiracy. Accordingly, there is no legally sufficient evidentiary basis for the jury to find for Sanderson on the issue of whether the Plaintiffs suffered antitrust injuries as result of the alleged conspiracy.

### E. Erroneously excluded evidence further supports Plaintiffs' motion

Plaintiffs respectfully submit that certain evidence was erroneously excluded, and if admitted, would further support Plaintiffs' Rule 50(a) motion.

Such erroneously excluded evidence includes several documents clearly showing how Sanderson and its co-conspirators used Urner-Barry executive Mike O'Shaughnessy, and Sue Trudell and Mike Donohue of EMI and Agri Stats, as conspiratorial tools. *See* PX1986 (05/15/11 Smith-King email exchange forwarding statements from O'Shaughnessy that industry reduction of egg sets would "really get things right" with the industry); PX0019 (04/18/08 Snyder-Trudell email re: "call Todd" about $1.90/lb BSB); PX1052 (2008 Scholer-Trudell email re: Tyson price forecast). Excluded evidence also shows Agri Stats/EMI's awareness that its business model exposed it and its customers to antitrust liability. *See* PX0021 (the "interim antitrust policy" memo).

Such evidence also includes certain documents that, while post-dating the adjudicated conspiratorial supply cuts, nonetheless are probative of the co-conspirators' understanding (or at least awareness) that their conduct violated the antitrust laws. *See* PX0001 (Joe Grendys of Koch's "I told you this would be coming" email); PX0295 (Chan Windham of House of Raeford email about discussing pricing with competitors being "just a little illegal").

Plaintiffs also respectfully contend that the Court erroneously admitted several exhibits where any probative value was far outweighed by the prejudicial and misleading nature of the documents. These documents risk causing jurors to improperly perceive certain coarse, hyperbolic

12

internal statements about Sanderson to be evidence that there was no conspiracy, when in fact they provide no legally sufficient evidentiary basis to counterbalance Plaintiffs' voluminous evidence establishing Sanderson's collusive agreement or understanding with its co-conspirators to restrict supply. That erroneously-admitted evidence includes: DX1690 (the "[f]oot on the throat" Pilgrim's email); DX0641 (the Pac Foods "lawsuit is BS" email, which, despite the limiting instruction, was sufficiently inflammatory to taint jurors' views of all plaintiffs; at the same time, the Court refused to allow the Pac Foods witness to fully testify regarding the reasons he changed his mind about the lawsuit, including the Pilgrim's guilty plea and an investigation by the State of Florida); DX1527 (the internal Koch email re: "declared war on our friends in Laurel"); and DX1528 (the internal Koch "I am F""CKING sick of [S]anderson" email).

**F. Conclusion**

For the reasons stated above, the Court should grant Plaintiffs' Rule 50(a) motion as to: (1) Plaintiffs' entitlement to damages prior to September 2, 2012; (2) each disputed element of Sanderson's *per se* violation of the Sherman Act, independently and collectively; and (3) Plaintiffs' antitrust injuries resulting from the alleged violation.

Dated: October 23, 2023                                          Respectfully submitted,


By: *W. Joseph Bruckner*                        Clifford H. Pearson, Esquire
    W. Joseph Bruckner (MN #147758)         Daniel L. Warshaw, Esquire
    Brian D. Clark (MN #0390069)             Bobby Pouya, Esquire
    Simeon A. Morbey (MN #0391338)           Michael H. Pearson, Esquire
    Kyle Pozan (IL #6306761)                 Eric J. Mont
    Arielle S. Wagner                        Naveed Abaie
    Stephen M. Owen                          PEARSON WARSHAW, LLP
    Develyn Mistriotti                       15165 Ventura Boulevard
    LOCKRIDGE GRINDAL NAUEN P.L.L.P          Suite 400
    100 Washington Avenue South              Sherman Oaks, CA 92403
    Suite 2200                               Tel: (818) 788-8300
    Minneapolis, MN 55401                    Fax: (818) 788-8104

Tel: (612) 339-6900  
Fax: (612) 339-0981  
E-mail: wjbruckner@locklaw.com  
bdclark@locklaw.com  
samorbey@locklaw.com  
kjpozan@locklaw.com  
aswagner@locklaw.com  
smowen@locklaw.com  
djmistriotti@locklaw.com  

E-mail: cpearson@pwfirm.com  
dwarshaw@pwfirm.com  
bpouya@pwfirm.com  
mpearson@pwfirm.com  
emont@pwfirm.com  
nabaie@pwfirm.com  

Jill M. Manning, Esquire  
PEARSON WARSHAW, LLP  
555 Montgomery Street  
Suite 1205  
San Francisco, CA 94111  
Tel: (415) 433-9000  
Fax: (415) 433-9008  
E-mail: jmanning@pwfirm.com  

***Co-Lead Class Counsel for Direct Purchaser Plaintiffs***

Steven A. Hart  
HART MCLAUGHLIN &  
ELDRIDGE, LLC  
1 South Dearborn Street, Suite 1400  
Chicago, IL 60603  
Tel: (312) 955-0545  
E-mail: shart@hmelegal.com  

Jeffrey Corrigan  
SPECTOR ROSEMAN & KODROFF, PC  
2001 Market Street, Suite 3420  
Philadelphia, PA 19103  
Tel: (215) 496-0300  
E-mail: JCorrigan@srkattorneys.com  

Mindee J. Reuben  
LITE DEPALMA GREENBERG &  
AFANADOR, LLC  
1515 Market Street, Suite 1200  
Philadelphia, PA 19102  
Tel: (215) 854-4060  
E-mail: MReuben@litedepalma.com  

Robert J. Wozniak  
FREED KANNER LONDON  
& MILLEN LLC  
100 Tri-State International Drive, Suite 128  
Lincolnshire, IL 60069  
Tel: (224) 632-4500  
E-mail: rwozniak@fklmlaw.com  

***Counsel for Direct Purchaser Plaintiffs***

By: *s/ David Germaine*
Paul E. Slater, Esquire
Joseph M. Vanek, Esquire
David P. Germaine, Esquire
Phillip F. Cramer, Esquire
John P. Bjork, Esquire
SPERLING & SLATER, P.C.
55 West Monroe Street
Suite 3200
Chicago, Illinois 60603
Tel: (312) 641-3200
Fax: (312) 641-6492
E-mail:  PES@Sperling-law.com
          JVanek@Sperling-law.com
          DGermaine@Sperling-law.com
          Cramer@Sperling-law.com
          JBjork@Sperling-law.com

Ryan T. Holt, Esquire
SHERRARD ROE VOIGT & HARBISON, PLC
150 3rd Avenue South
Suite 1100
Nashville, TN 37201
Tel: (615) 742-4200
E-mail:  rholt@srvhlaw.com
          clopez@srvhlaw.com

**Counsel for Plaintiffs Associated Grocers of the South, Inc., Meijer, Inc., Meijer Distribution, Inc., OSI Restaurant Partners, LLC, Publix Super Markets, Inc., Supervalu Inc.; Unified Grocers, Inc.; Associated Grocers of Florida, Inc.; and Wakefern Food Corp. (the "Publix DAPs")**

By: *s/ William J. Blechman*
William J. Blechman, Esquire
Kevin J. Murray, Esquire
Douglas H. Patton, Esquire
Samuel J. Randall, Esquire
Michael A. Ponzoli, Esquire
KENNY NACHWALTER, P.A.
1441 Brickell Avenue
Suite 1100
Miami, Florida 33131
Tel: (305) 373-1000
Fax: (305) 372-1861
E-mail:  wblechman@knpa.com
          kmurray@knpa.com
          dpatton@knpa.com
          srandall@knpa.com
          mponzoli@knpa.com

**Counsel for Plaintiffs The Kroger Co., Albertsons Companies, Inc., Hy-Vee, Inc., and Save Mart Supermarkets (the "Kroger DAPs")**

By: *s/ Patrick J. Ahern*
Patrick J. Ahern, Esquire
AHERN AND ASSOCIATES, P.C.
8 South Michigan Avenue, Suite 3600
Chicago, Illinois 60603
Tel: (312) 404-3760
patrick.ahern@ahernandassociatespc.com

**Counsel for Plaintiffs Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC (the "Winn-Dixie DAPs")**

By: *s/ Daniel D. Owen*
Daniel D. Owen, Esquire
Guillermo G. Zorogastua, Esquire
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Tel: (816) 753-1000
Fax: (816) 753-1536
E-mail: dowen@polsinelli.com
gzorogastua@polsinelli.com

Rodney L. Lewis, Esquire
POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, Illinois 60606
Tel: (312) 819-1900
Fax: (312) 819-1910
E-mail: rodneylewis@polsinelli.com
**Counsel for Plaintiff Associated Wholesale Grocers, Inc.**

By: *s/ Robert N. Kaplan*
Robert N. Kaplan, Esquire
Gregory K. Arenson, Esquire
Matthew P. McCahill, Esquire
Jason Uris, Esquire
KAPLAN FOX & KILSHEIMER, LLP
800 Third Avenue, 38th Floor
New York, N.Y. 10022
Tel: (212) 687-1980
E-mail: rkaplan@kaplanfox.com
  garenson@kaplanfox.com
  mmccahill@kaplanfox.com
  juris@kaplanfox.com

Solomon B. Cera, Esquire
CERA LLP
201 California Street, Suite 1240
San Francisco, CA 94111
Tel: (415) 777-2230
E-mail: scera@cerallp.com

Eric R. Lifvendahl, Esquire
LIFVENDAHL LAW, LLC
265 Latrobe Ave.
Northfield, IL 60093
E-mail: eric@liflaw.com

Richard L. Coffman, Esquire
THE COFFMAN LAW FIRM
3355 West Alabama, Suite 240
Houston, Texas 77098
Tel: (713) 528-6700
E-mail: rcoffman@coffmanlawfirm.com

Bernard D. Marcus, Esquire
Moira Cain-Mannix, Esquire
Brian C. Hill, Esquire
MARCUS & SHAPIRA LLP
One Oxford Center, 35th Floor
Pittsburgh, PA 15219
Tel: (412) 471-3490
E-mail: marcus@marcus-shapira.com
  cain-mannix@marcus-shapira.com
  bhill@marcus-shapira.com

| | |
|---|---|
| C. Andrew Dirksen, Esquire<br>CERA LLP<br>800 Boylston Street, 16th Floor<br>Boston, MA 02199<br>Tel: (857) 453-6555<br>E-mail: cdirksen@cerallp.com<br><br>Elizabeth H. Black, Esquire<br>HAYNSWORTH SINKLER BOYD P.A.<br>1201 Main Street, 22nd Floor<br>Columbia, SC 29201-3226<br>Tel: (803) 540-7753<br>E-mail: eblack@hsblawfirm.com<br><br>Jay W. Matthews, III, Esquire<br>HAYNSWORTH SINKLER BOYD P.A.<br>1 North Main Street, 2nd Floor<br>Greenville, SC 29601<br>Tel: (864) 240-3200<br>E-mail: jmatthews@hsblawfirm.com | ***Counsel for Action Meat Distributors, Inc.; Affiliated Foods, Inc.; Alex Lee, Inc./Merchants Distributors,LLC; Associated Food Stores, Inc.; Associated Grocers of New England, Inc.; Associated Grocers, Inc.; Bashas' Inc.; Big Y Foods, Inc.; Brookshire Bros., Inc.; Brookshire Grocery Company; CBBC Opco, LLC d/b/a Colorado Boxed Beef; Certco, Inc.; Columbia Meats, Inc.; Fareway Stores, Inc.; Giant Eagle, Inc.; Greenville Meats, Inc.; Howard Samuels as Trustee in Bankruptcy for Central Grocers, Inc.; Ira Higdon Grocery Company, Inc.; King Solomon Foods, Inc.; Latina Boulevard Foods, LLC; Nicholas & Co., Inc.; Pacific Food Distributors, Inc.; Piggly Wiggly Alabama Distributing Co., Inc.; S&S Trading, LLC; Schnuck Markets, Inc.; SpartanNash Company; Springfield Grocer Co. (d/b/a SGC Foodservice); The Distribution Group, Inc. (d/b/a Van Eerden Foodservice Company); The Golub Corporation; Topco Associates, LLC; Troyer Foods, Inc.; URM Stores, Inc.; W. Lee Flowers & Company, Inc.; Weinstein Wholesale Meats, Inc.; and Woodman's Food Market, Inc.*** |