IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *In re Broiler Chicken Antitrust Litigation* <br><br> This Document Relates to: Track One | Case No. 1:16-cv-08637 <br><br> Honorable Thomas M. Durkin <br> Honorable Jeffrey T. Gilbert |

**INDIVIDUAL PLAINTIFFS' REPLY TO SANDERSON FARMS' OPPOSITION TO JOINT RULE 50(b) AND MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, A NEW TRIAL**

# TABLE OF CONTENTS

Page(s)

Introduction ........................................................................................................................... 1

I. The Evidence Sanderson Presented at Trial is Legally Insufficient to Sustain the Jury's Verdict on Question 1 ................................................................................................. 2

    A. Plaintiffs satisfied the legal standard in the Seventh Circuit. ....................................... 2

    B. The Court's decision on summary judgment related to Question 1 is not what Sanderson argues. ................................................................................................. 2

    C. Sanderson did not show the Individual Plaintiffs' motions should not be granted. ....... 3

II. Sanderson's Misuse of the Summary Judgment Opinion Requires a New Trial. .................. 6

III. Conclusion ................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*,
  881 F.2d 1396 (7th Cir. 1989) ............................................................................................. 8

*A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*,
  683 F. Supp. 680 (S.D. Ind. 1988) ....................................................................................... 8

*Cobell v. Jewell*,
  802 F.3d 12 (D.C. Cir. 2015) ............................................................................................... 8

*Dow Chem., USA v. Consumer Prod. Safety Com.*,
  464 F. Supp. 904 (W.D. La. 1979) ....................................................................................... 8

*Downes v. Volkswagen of Am.*,
  41 F.3d 1132 (7th Cir. 1994) ............................................................................................... 2

*Greene v. Union Mut. Life Ins. Co.*,
  764 F.2d 19 (1st Cir. 1985) .................................................................................................. 8

*Mejia v. Cook Cnty.*,
  650 F.3d 631 (7th Cir. 2011) ..................................................................................... 2, 3, 4, 5

*Thomas*,
  20 F.3d at 304 ...................................................................................................................... 2

*Willis v. Lepine*,
  687 F.3d 826 (7th Cir. 2012) ............................................................................................... 7

*Wilson v. Williams*,
  182 F.3d 562 (7th Cir. 1999) ............................................................................................... 6

**Other**

Rule 50(b) ................................................................................................................... 1, 2, 6
Rule 54(b) .......................................................................................................................... 8
Rule 59 ..................................................................................................................... 1, 2, 6, 8
Rule 103(b) ......................................................................................................................... 6
Rule 103(e) ......................................................................................................................... 7

**Introduction**

Plaintiffs[1] explained in their opening brief why, applying the standards in the Seventh Circuit, the Court should grant either a verdict in favor of Plaintiffs under Rule 50(b) or, alternatively, a new trial under Rule 59. Sanderson's opposition improperly relies on cases from outside the Seventh Circuit to argue that the Court should adopt a modified set of standards for Plaintiffs' motions, and fails to show that it presented substantial evidence at trial—more than a mere scintilla—to support the jury's verdict on Question 1. Moreover, Plaintiffs showed that the Court's decisions on summary judgment, combined with Sanderson's improper exploitation of those decisions, led to a fundamentally unfair trial. Sanderson's opposition argues that the Court should consider these issues settled by its prior rulings and should avoid addressing them now. But the Seventh Circuit has made it clear that the Court can and should reconsider its prior decisions on such matters of law when such issues are raised in support of a Rule 59 motion. Sanderson's opposition therefore has failed to show that the Court should not grant a new trial and further has failed to provide the substantial evidence necessary to prevent the Court from granting a judgment in the Individual Plaintiffs' favor instead.

---

[1] The Direct Purchaser Plaintiff Class ("DPP Class") has reached settlements with Defendants Foster Farms, Perdue, Case, Claxton, Wayne Farms, Agri Stats, and Sanderson. The DPP Class therefore no longer intends to appeal, and is no longer asking the Court to revise, modify, vacate, or reconsider, either the October 25, 2023 jury verdict for Sanderson Farms and against the DPP Class (ECF Nos. 7014, 7015) (hereinafter "Verdict") or the Court's Order granting Foster Farms, Perdue, Case, Claxton, Wayne Farms, and Agri Stats' Motions for Summary Judgment as to the DPP Class claims (ECF No. 6641, ("MSJ Order")). The DPP Class will disclose and seek Court approval of each of these settlements, and reserves the right to seek to challenge the Verdict and MSJ Orders and take necessary steps to preserve any such rights in the event any of the settlements do not obtain Court approval or otherwise do not become final. For the avoidance of doubt, the DPP Class's reservation of rights as described in this paragraph shall cease upon the Effective Date of the settlements. Accordingly, the DPP Class is excluded from the definitions of Plaintiffs or Individual Plaintiffs in this filing.

## I. The Evidence Sanderson Presented at Trial is Legally Insufficient to Sustain the Jury's Verdict on Question 1.

### A. Plaintiffs satisfied the legal standard in the Seventh Circuit.

Sanderson attempts to use out-of-circuit cases to modify the standards that the Court should apply to the Individual Plaintiffs' Rule 50(b) and Rule 59 motions. *See* Opp. at 5-6 (arguing there is a special rule that "it is logically impossible for a finding of conspiracy to be compelled from circumstantial evidence"), 7 (arguing there is a special rule that denials by alleged conspirators automatically defeat any post-trial motions). But the standards in the Seventh Circuit are clear. On a Rule 50(b) motion, while it is true the evidence at trial must be taken in the light most favorable to the non-movant, the Court must still "determine whether there was sufficient evidence for a reasonable jury to find" in favor of the non-movant, and such "evidence must have been substantial—a mere scintilla will not suffice." *Downes v. Volkswagen of Am.*, 41 F.3d 1132, 1139-40 (7th Cir. 1994). And on a Rule 59 motion, the Court is "entitled to weigh the evidence for itself." *Thomas*, 20 F.3d at 304. On such a motion, the Court should "get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Mejia*, 650 F.3d at 633. "If, after evaluating the evidence, the district court is of the opinion that the verdict is against the manifest weight of the evidence, a new trial is appropriate." *Id.*

### B. The Court's decision on summary judgment related to Question 1 is not what Sanderson argues.

The only question actually answered by the jury was: "Did Plaintiffs prove, by a preponderance of the evidence, that there was a conspiracy between or among two or more chicken producers to limit the supply of chicken?" ECF 7015. Sanderson argues that the Court previously held while deciding summary judgment that the Plaintiffs' evidence on this question was "weak." Opp. at 4 (citing ECF 6641 at 67). As the Court knows, that is a misstatement of

the Court's assessment of Plaintiffs' evidence on summary judgment. In the portion of its summary judgment opinion cited by Sanderson, the Court only suggested that *in the absence of the Plaintiffs' economic evidence, including parallel anticompetitive conduct*, the remaining evidence of agreement might be considered "weak." *Id.* And of course at trial Plaintiffs *did* present that economic evidence, including evidence of parallel anticompetitive conduct, at trial. The Court therefore has not previously held that Plaintiffs' trial evidence, taken together, was "weak."

Indeed, a key part of the Court's opinion was its assessment that Plaintiffs' economic evidence "strongly suggests the presence of an agreement." *Id.* at 24. The Court then carefully considered the totality of the evidence as to each alleged Defendant, starting with Tyson. *See Id.* at 27-30. Because the Court conducted this analysis on a different standard, given Plaintiffs were the non-movant, the Court's analysis on summary judgment is not determinative of the outcome on the present motions. But the Court certainly did not hold that the totality of Plaintiffs' evidence against Tyson was "weak."

The Court then similarly considered the evidence against Pilgrim's, including evidence of direct communications with competitors such as Tyson. *See Id.* at 30-31. Without belaboring the point as to other alleged co-conspirators as well, very clearly the Court did not decide on summary judgment that the Plaintiffs had only weak evidence of a conspiracy, and specifically not as to a conspiracy that included other alleged conspirators in direct communication with each other, such as Tyson and Pilgrim's.

### C. Sanderson did not show the Individual Plaintiffs' motions should not be granted.

The fact the Court did not previously hold the Plaintiffs' conspiracy evidence was weak as to various other alleged co-conspirators besides Sanderson is relevant in the current context

because the jury did not actually get to the question of whether Sanderson participated in such a conspiracy. Of course, the jury could have based an affirmative answer to Question 1 in part on Plaintiffs' evidence as to Sanderson, but it also could have based such an answer independently on Plaintiffs' evidence as to a conspiracy between Tyson and Pilgrim's, or any of the other alleged co-conspirators. In turn this means that Sanderson cannot successfully oppose the Individual Plaintiffs' present motions by arguing there was sufficient evidence to support the jury's verdict as to Question 1 in application to Sanderson itself, or indeed any particular subset of alleged co-conspirators. It instead must address the evidence as to *all* the alleged co-conspirators.

And Sanderson failed to cite substantial factual evidence in favor of the jury's verdict as to all of the alleged conspirators. Instead, tracking its trial strategy, the vast bulk of the trial evidence that Sanderson cites in its Opposition is specific to Sanderson itself. For example, with respect to fact evidence as to Tyson, Sanderson only cites a self-serving remark from a Tyson executive at a post-complaint deposition claiming, without any supporting facts, that Tyson's production cuts were for the non-conspiratorial purpose of conserving cash. *See* Opp. at 9 n.6. As to Pilgrim's, Sanderson only cites a former employee's post-complaint deposition testimony that while working at Pilgrim's, he personally had not heard about a conspiracy, *id*. at 6-7 n.3, and the irrelevant fact that Pilgrim's had filed for bankruptcy pre-conspiracy, *Id.* at 9-10 n.7.[2]

---

[2] As it did at trial, Sanderson also attempts to rebut Plaintiffs' detailed evidence of an active conspiracy between specific alleged co-conspirators with speculative general market assessments by employees of Topco (Bollman) and a third-party entity (Shagam), neither of whom were aware at the time of any of Plaintiffs critical producer-specific evidence, and indeed who did not specifically address those specific producers at all. *See* Opp. at 10-13; *see also* Trial Tr. (Bollman) at 2208:1-18, 2209:15-2210:1; ECF 6987-2, As Played Designations (Shagam) at 265:5-21. Without an informed connection to the actual specific facts and evidence involving those specific producers, such speculative general market opinions are not substantial evidence on the subject of whether or not those specific companies were conspiring with each other. Indeed, both of these witnesses explained in trial evidence that they had not even attempted to

4

The Court should also disregard Sanderson's attempt to rebut Plaintiffs' strong economic evidence with an "empty chair" analysis that purports to compare alleged conspirators like Tyson and Pilgrim's with what Sanderson falsely characterizes as "producers [that] were outside of the alleged conspiracy." *See* Opp. at 13-14. Again, as the Court is aware, the Plaintiffs alleged those producers were inside the conspiracy, and while the Court granted summary judgment in their favor, it explicitly did not do so because there was weaker economic evidence involving those alleged co-conspirators. ECF 6641 at 43 ("Although the economic evidence showing opportunity and incentive to conspire applies to these defendants just as it does to the defendants discussed above, there is simply a lack of evidence that these defendants communicated with their competitors, which would permit a reasonable inference of agreement."). Sanderson's reliance on this argument in opposition to Plaintiffs' motion is therefore just an example of Sanderson's continued improper use of "empty chair" arguments that blatantly mischaracterize the procedural record. Indeed, if Sanderson was correct that the jury relied on such "empty chair" arguments in deciding Question 1, that would be an independent and sufficient ground for the Court to grant a new trial, as explained further below.

Applying the Seventh Circuit's standard, the Court should weigh the evidence presented at trial as to each of the alleged co-conspirators, including Tyson and Pilgrim's, assess the credibility and import of the limited self-serving, post-complaint deposition testimony cited by Sanderson, and determine the strength of the relevant facts put forth at trial. *See Mejia,* 650 F.3d at 633. Notwithstanding the normally high burden for such a motion, in this case the Court should conclude that as to various alleged co-conspirators, including Tyson and Pilgrim's, the jury's verdict on Question 1 was against the manifest weight of the evidence such that a new trial

---

look for evidence of a conspiracy at the time. Trial Tr. (Bollman) at 2204:5-8; ECF 6987-2 (Shagam) at 219:25-220:08; 222:08-222:19.

5

is warranted. Further, the Court should exercise its authority under Rule 50(b) and hold that Sanderson only presented a mere scintilla of evidence in support of the jury's verdict on Question 1 and grant judgment for the Individual Plaintiffs instead.

## II. Sanderson's Misuse of the Summary Judgment Opinion Requires a New Trial.

### A. Sanderson's violation of this Court's definitive in limine ruling did not require objections during trial to preserve the Individual Plaintiffs' right to a new trial under Rule 59.

Sanderson argues that Plaintiffs did not preserve their right to a new trial by objecting during the trial. Opp. at 23-25. However, when there is a definitive ruling on a motion *in limine*, as there was here, no objection is required. *See* Rule 103(b) ("[o]nce the trial court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal"); *Wilson v. Williams*, 182 F.3d 562, 563 (7th Cir. 1999) ("a definitive ruling in limine preserves an issue for appellate review, without the need for later objections").

This Court's ruling could not have been more definitive:

> All right. No. 3, motion in limine to exclude references to the Court's summary judgment order or dismissal of any party. Is anyone going to argue that? Okay. That's granted. Neither side is permitted to try to exploit the fact that certain defendants have been dismissed or settled. You – my ruling shouldn't come in in front of the jury at all.[3]

Sanderson argues that the clarity of the ruling was muddied by a reference to Sanderson's motion *in limine* renewing a challenge to the Individual Plaintiffs' experts. Opp. at 24. But allowing the Individual Plaintiffs' experts to supplement their reports to "set forth in detail anything they're going to say that's different than what's in their original report,"[4] did not in any way change the clear directive that no party was to "exploit" the fact that certain defendants had

---

[3] 8/25/23 Tr. 46:14-21.
[4] *Id.* at 136:21-25.

6

been dismissed or settled. The Court confirmed the scope of its definitive ruling in the context of Sanderson's argument that it should be permitted to cross-examine Dr. Frankel about the six dismissed defendants, even though Plaintiffs were not going to raise the issue on direct examination:

> I don't think either side should open up the issue of parties being dismissed on summary judgment, because that doesn't help you. That puts the veneer of the Court as saying you weren't entitled to summary judgment. I knocked people out under the law. On the basis of the facts presented to me, I knocked companies out, and you didn't qualify. I don't think you want that implication to go to the jury either.[5]

No objection by Plaintiffs was required to preserve its right to a new trial on this ground.[6]

In derogation of this Court's definitive ruling, Sanderson "exploited" the fact that certain defendants had been dismissed or settled, repeatedly referencing at trial the dismissed defendants, who it claimed were in the same position as Sanderson and the other alleged conspirators, and therefore there could have been no conspiracy. *See* Mot. at 18-20. Sanderson thereby violated the Court's ruling. *Compare* Opp. at 25-26.

Further, contrary to Sanderson's argument (Opp. at 26-27), the Court's *in limine* ruling did not bar the parties from mentioning the dismissed defendants. Some of the testimony tying Sanderson and other alleged conspirators into the conspiracy had to come from representatives of the dismissed defendants, such as the testimony highlighted by Sanderson (Opp. at 26) from Terry Maness of Perdue regarding his August 2008 fishing trip with executives from Sanderson, Mountaire, OK Foods, and Pilgrim's.[7] Instead, the ruling prevented Sanderson from *exploiting*,

---

[5] Trial Tr. 1556:2-8. This explanation rebuts Sanderson's argument (Opp. at 27) that adhering to the Court's ruling would have been unfairly prejudicial to Sanderson.
[6] Further, Plaintiffs did not have to object under the plain error doctrine codified in Rule 103(e) where "exceptional circumstances exists; (2) substantial rights are affected; and (3) a miscarriage of justice will occur if plain error review is not applied." *Willis v. Lepine*, 687 F.3d 826, 839 (7th Cir. 2012).
[7] ECF No.6933-7 at 133:05-140:22; PX0583.

as it did (Mot. at 18-20), the existence of the dismissed and settling defendants to argue that their position was no different from Sanderson's so that there could not have been a conspiracy. That "key argument"[8] created a miscarriage of justice and a verdict against the manifest weight of the evidence. That should result in a new trial under Rule 59.

> **B. The incompleteness of the trial evidence due to the summary judgment rulings contributed to the verdict being unfair and a miscarriage of justice.**

Sanderson lays down a red herring in arguing that Plaintiffs are seeking to reargue summary judgment. Opp. at 28-29. First, under Rule 54(b), until judgment has been entered (and it has not), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Therefore, this Court could revisit its summary judgment ruling, even if not in a motion for reconsideration, as part of its determination of Plaintiffs' post-trial motions. *See A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*, 683 F. Supp. 680 (S.D. Ind. 1988), *aff'd,* 881 F.2d 1396 (7th Cir. 1989); *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015) (quoting *Greene v. Union Mut. Life Ins. Co.*, 764 F.2d 19, 22 (1st Cir. 1985) (Breyer, J.) (ellipsis omitted) (quoting *Dow Chem., USA v. Consumer Prod. Safety Com.*, 464 F. Supp. 904, 906 (W.D. La. 1979)) ("Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible [than Rule 59(e)], reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires'").

Nonetheless, the purpose of Plaintiffs pointing out the consequences for the trial of the portions of the summary judgment ruling dismissing six defendants, dismissing claims based on the slaughter of broiler hens in 2015-16, and dismissing the Georgia Dock claims (Mot. at 21-32)

---

[8] Trial Tr. (9/26/23 Sanderson argument) 1227:23-1228:2.

8

was to illustrate how those decisions created an unfair trial, especially if the decisions on summary judgment were reversed on appeal or otherwise. In its Opposition, Sanderson does not address the dismissals of Perdue, Fieldale, Case Foods, Claxton, Wayne, and Foster Farms. *Compare* Opp. at 28-34. Sanderson argues that the 2015-16 reduction in breeder hen flocks makes little sense regarding Sanderson (Opp. at 30-31) and only affected Plaintiffs' experts damages calculations, which the jury never reached (Opp at 32). However, allowing claims based on the slaughter of broiler hens in 2015-16 would have resulted in more evidence of the involvement of other alleged conspirators buttressing the conclusion that there was a conspiracy (Mot. at 29-30) and would have eliminated the contortions of Plaintiffs' experts in defending against Sanderson's claim that five years of anticompetitive conduct would not likely result in seven years of price effects, thereby undermining the conclusion that there was any conspiracy (Mot. at 30-31). Similarly, the ruling on the Georgia Dock prevented the full context of the alleged conspirators' conduct from being presented to the jury. Mot. at 31-32; *compare* Opp. at 32-34.

In sum, the trial was not fair and resulted in an injustice to the Individual Plaintiffs, which should be remedied by granting a new trial.

## III. Conclusion

Sanderson adopted a strategy at trial of focusing its substantive defense on its own conduct, and brushing aside Plaintiffs' detailed evidence as to the existence of a conspiracy between other alleged co-conspirators without substantial, specific evidence as to those other producers. Instead, Sanderson relied at trial on improper "empty chair" arguments, and it now hopes the Court will rubber stamp its use of this strategy, citing the Court's prior decision on summary judgment. But the Court did not in fact decide these issues in Sanderson's favor on summary judgment. Instead, for the reasons stated above and in Plaintiffs' opening brief, the

Court should now either grant a new trial (with a fair opportunity for the Individual Plaintiffs to fully present their evidence of a conspiracy as to all of the alleged co-conspirators), or, alternatively, a judgment in the Individual Plaintiffs' favor.

| | |
|---|---|
| Date: February 16, 2024 | Respectfully submitted, |

| | |
|---|---|
| */s/ Robert N. Kaplan* | */s/ David P. Germaine* |
| Robert N. Kaplan | Paul E. Slater |
| Gregory K. Arenson | Joseph M. Vanek |
| Matthew P. McCahill | David P. Germaine |
| Jason Uris | Phillip F. Cramer |
| KAPLAN FOX & KILSHEIMER, LLP | John P. Bjork |
| 800 Third Avenue, 38th Floor | Allison Margolies |
| New York, NY 10022 | SPERLING & SLATER, LLC |
| Telephone: 212-687-1980 | 55 West Monroe Street, Suite 3200 |
| Email: rkaplan@kaplanfox.com | Chicago, IL 60603 |
| Email: garenson@kaplanfox.com | Telephone: 312-641-3200 |
| Email: mmccahill@kaplanfox.com | Facsimile: 312-641-6492 |
| Email: juris@kaplanfox.com | Email: pes@sperling-law.com |
| | Email: jvanek@sperling-law.com |
| | Email: dgermaine@sperling-law.com |
| | Email: pcramer@sperling-law.com |
| | Email: jbjork@sperling-law.com |
| | Email: amargolies@sperling-law.com |
| | |
| */s/ Brian C. Hill* | Ryan T. Holt |
| Bernard D. Marcus | Christina Rae Burgart Lopez |
| Moira Cain-Mannix | SHERRARD ROE VOIGT & HARBISON, PLC |
| Brian C. Hill | 150 3rd Avenue South, Suite 1100 |
| MARCUS & SHAPIRA LLP | Nashville, TN 37201 |
| 301 Grant Street | Telephone: 615-742-4200 |
| One Oxford Centre, 35th Floor | Email: rholt@srvhlaw.com |
| Pittsburgh, PA 15219-6401 | Email: clopez@srvhlaw.com |
| Telephone: 412-471-3490 | |
| Facsimile: 412-391-8758 | *Counsel for Plaintiffs Associated Grocers of the South, Inc.; Meijer, Inc.; Meijer Distribution, Inc.; OSI Restaurant Partners, LLC; Publix Super Markets, Inc.; Supervalu Inc.; Unified Grocers, Inc.; Associated Grocers of Florida, Inc.; and Wakefern Food Corp. (the "Publix DAPs")* |
| Email: marcus@marcus-shapira.com | |
| Email: cain-mannix@marcus-shapira.com | |
| Email: hill@marcus-shapira.com | |
| | |
| Eric R. Lifvendahl | |
| LIFVENDAHL LAW, LLC | |
| 265 Latrobe Avenue | |
| Northfield, IL 60093 | |
| Telephone: 847-830-7002 | |
| Email: eric@liflaw.com | |

Richard L. Coffman
THE COFFMAN LAW FIRM
3355 West Alabama, Suite 240
Houston, TX 77098
Telephone: 713-528-6700
Email: rcoffman@coffmanlawfirm.com

Solomon B. Cera
CERA LLP
201 California Street, Suite 1240
San Francisco, CA 94111
Telephone: 415-777-2230
Email: scera@cerallp.com

C. Andrew Dirksen
CERA LLP
529 Main Street, Suite P200
Boston, MA 02129
Telephone: 857-453-6555
Email: cdirksen@cerallp.com

Elizabeth H. Black
HAYNSWORTH SINKLER BOYD P.A.
1201 Main Street, 22nd Floor
Columbia, SC 29201-3226
Telephone: 803-540-7753
Email: eblack@hsblawfirm.com

/s/ William J. Blechman
William J. Blechman
Kevin J. Murray
Douglas H. Patton
Samuel J. Randall
Michael A. Ponzoli
KENNY NACHWALTER, P.A.
1441 Brickell Avenue, Suite 1100
Miami, FL 33131
Telephone: 305-373-1000
Facsimile: 305-372-1861
Email: wblechman@knpa.com
Email: kmurray@knpa.com
Email: dpatton@knpa.com
Email: srandall@knpa.com
Email: mponzoli@knpa.com

*Counsel for Plaintiffs The Kroger Co.; Albertsons Companies, Inc.; Hy-Vee, Inc.; and Save Mart Supermarkets (the "Kroger DAPs")*

/s/ Daniel D. Owen
Daniel D. Owen
Guillermo G. Zorogastua
POLSINELLI PC
900 West 48th Place, Suite 900
Kansas City, MO 64112
Telephone: 816-753-1000
Facsimile: 816-753-1536
Email: dowen@polsinelli.com
Email: gzorogastua@polsinelli.com

*Counsel for Plaintiff Associated Wholesale Grocers, Inc.*

| | /s/ Patrick J. Ahern |
|---|---|
| Jay W. Matthews, III<br>HAYNSWORTH SINKLER BOYD P.A.<br>1 North Main Street, 2nd Floor<br>Greenville, SC 29601<br>Telephone: 864-240-3200<br>Email: jmatthews@hsblawfirm.com | Patrick J. Ahern<br>AHERN AND ASSOCIATES, P.C.<br>8 South Michigan Avenue, Suite 3600<br>Chicago, IL 60603<br>Telephone: 312-404-3760<br>Email: Patrick.ahern@ahernandassociatespc.com |
| *Counsel for Action Meat Distributors, Inc.; Affiliated Foods, Inc.; Alex Lee, Inc./Merchants Distributors, LLC; Associated Food Stores, Inc.; Associated Grocers of New England, Inc.; Associated Grocers, Inc.; Bashas' Inc.; Big Y Foods, Inc.; Brookshire Bros., Inc.; Brookshire Grocery Company; CBBC Opco, LLC d/b/a Colorado Boxed Beef; Certco, Inc.; Columbia Meats, Inc.; Fareway Stores, Inc.; Giant Eagle, Inc.; Greenville Meats, Inc.; Howard Samuels as Trustee in Bankruptcy for Central Grocers, Inc.; Ira Higdon Grocery Company, Inc.; King Solomon Foods, Inc.; Latina Boulevard Foods, LLC; Nicholas & Co., Inc.; Pacific Food Distributors, Inc.; Piggly Wiggly Alabama Distributing Co., Inc.; S&S Trading, LLC; Schnuck Markets, Inc.; SpartanNash Company; Springfield Grocer Co. (d/b/a SGC Foodservice); The Distribution Group, Inc. (d/b/a Van Eerden Foodservice Company); The Golub Corporation; Topco Associates, LLC; Troyer Foods, Inc.; URM Stores, Inc.; W. Lee Flowers & Company, Inc.; Weinstein Wholesale Meats, Inc.; and Woodman's Food Market, Inc.* | *Counsel for Plaintiffs Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC (the Winn-Dixie DAPs")* |

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2024, a true and correct copy of the foregoing was electronically filed and served via operation of the Court's CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record entitled to notice who are registered users of ECF.


Date: February 16, 2024                  */s/ Brian C. Hill*
                                         Brian C. Hill