UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 16 C 8637<br><br>Judge Thomas M. Durkin |

MEMORANDUM OPINION AND ORDER

Litigation funding agreements are a fact of contemporary complex litigation. Plaintiff Sysco Corporation's claims in this case (and several others) were funded by Burford Capital LLC. When Sysco and Burford disagreed about how to manage the cases, Sysco assigned its claims to a specially created Burford affiliate called Carina Ventures LLC. Sysco and Carina have jointly moved to have Carina substituted for Sysco as the plaintiff in interest in this case, pursuant to Federal Rule of Civil Procedure 25(c), which permits such substitution in the Court's discretion to determine "that the transferee's presence would facilitate the conduct of the litigation." *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985).

Defendants object to Carina's substitution arguing that: (1) it will "not facilitate the litigation" but "will make this case even harder to manage," R. 6654 at 5; and (2) the assignment is not valid because of "its champertous nature," which Defendants argue "may render the agreement invalid as contrary to public policy, or mean that Carina lacks Article III and/or statutory standing." *Id.* at 5-6.

The first argument ignores reality. This case is already complicated and slow, and Sysco's litigation funding agreement with Burford and the ensuing assignment to Carina is only one small aspect of many complications and delays this case has suffered. The funding agreement is at the bottom of this motion, and Defendants do not argue that there was anything improper or unusual about that agreement. The assignment is an unsurprising and logical result of the dispute between Sysco and Burford that arose from the funding agreement. Despite Defendants protestations to the contrary, the assignment does not appear to be a very unusual circumstance either. Like litigation funding agreements, such assignments are a fact of modern litigation. Even if Defendants are correct that the assignment might add some time to an already extended case, absent some palpable prejudice to case management or the rights of the parties, it is generally not the Court's place to interfere with sophisticated parties' business decisions about the value of their claims.

Defendants' second argument crams three arguments into one: standing, champerty, and public policy. First, there is no question that the assignment gives Carina standing. *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 275 (2008). The Supreme Court has explained that "[a]ssignees of a claim . . . have long been permitted to bring suit," and an assignee "may properly bring suit to redress the injury originally suffered by his assignor." *Id.* at 275, 287. Similarly, under Illinois law, a legal claim is generally assignable. *See Liu v. T & H Mach., Inc.*, 191 F.3d 790, 797 (7th Cir. 1999). Defendants make no argument as to why this principle should not apply to establish Carina's standing.

2

Ironically, standing is key to Defendants' next argument that the assignment is champertous. This is because Defendants lack standing to make it. The Illinois Supreme Court has explained that in Illinois, champerty is only available as a defense by a party to a contract. *See Oil, Inc. v. Martin*, 44 N.E.2d 596, 600 (Ill. 1942) ("[T]he defense of champerty can only be interposed in an action between the parties to the champertous contract, and does not furnish any reason for refusing relief in the proceeding to which the champertous agreement relates."). And courts in this district have followed suit. *See CNTRST Debt Recovery v. Ybarra*, 2023 WL 5228026, at *4-5 (N.D. Ill. Aug. 14, 2023); *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 726 (N.D. Ill. 2014).

Even if Defendants had standing to raise the issue of champerty, it would not invalidate the assignment to Carina. Illinois law prohibits "champerty" only when there is "officious intermeddling," meaning when an uninjured third party "volunteer[s] [their] services where they are neither asked for nor needed." *Miller*, 17 F. Supp. 3d at 725 (citing cases). Defendants do not allege that is what happened here. The Court is not aware of the circumstances leading to the initial funding agreement between Sysco and Burford. However, the Court does know that Sysco is a sophisticated and large corporation, and not a simple and ordinary individual who is vulnerable to the temptation of a "wicked" non-party "willfully" intending to "stir up" or "foment useless . . . or meritless litigation . . . for the sake of harassment." *Id.* (citing cases). That melodramatic language signals that the concern for champerty is of a different era and circumstances which are not present. *See id.* at 727 ("[O]ver the

3

centuries, maintenance and champerty have been narrowed to a filament. Indeed, they 'ha[ve] been so pruned away and exceptions so grafted upon [them], that there is nothing of substance left of [them] in this State, and [they] ha[ve] been wholly abandoned in others.'" (quoting *Dunne v. Herrick,* 37 Ill. App. 180, 182 (1890) (alternations in *Miller*)). The sophisticated funding agreement and related assignment of claims at issue here are of a different nature altogether.

Defendants rely almost exclusively on a case from the Central District of Illinois in which a married couple sold and assigned their products liability claim regarding their car to another individual. *See* R. 7011 at 7-8 (citing *Birner v. Gen. Motors Corp.*, 2007 WL 269847, at *3 (C.D. Ill. Jan. 26, 2007)). In *Birner*, the court found the assignment to be champertous and against public policy because the assignee "apparently sought out and purchased this cause of action for purposes of pursuing the litigation that he would otherwise have no part of." *Id.* at *3. Indeed, not only did the assignee bring the claim which he bought from the injured parties, but he sought to have it certified as a class.

This is a far cry from this case with three large classes of plaintiffs, and more than 100 direct action plaintiffs. Even if Burford approached Sysco offering to fund Sysco's claims if it opted-out from the Direct Purchaser Class, Sysco's legal rights had already been implicated by the filing of the class complaint. Sysco's relationship with Burford, including the recent assignment to Carina, are simply not the kind of circumstance contemplated by the ancient law prohibiting champerty. And because

the circumstances here are outside the scope of Illinois champerty law, they also cannot be said to violate Illinois public policy.[1]

Lastly, Defendants argue that if the Court is inclined to grant the motion to substitute, they should be granted "discovery into the Sysco and Carina agreement." R. 6654 at 4. Defendants express concern that they "lack any information about what Sysco and Carina agreed to prior to Carina seeking to displace Sysco as a plaintiff in this case." *Id.* But the Court has rejected Defendants' arguments that the assignment agreement is invalid, and so discovery regarding the assignment is not necessary or proper. *See Miller*, 17 F. Supp. 3d at 728 ("[I]t is proper to deny discovery regarding a matter that is not and cannot be a defense."). Furthermore, in reply to Defendants' brief on this motion, Sysco has stipulated that "it will not take the position, post-substitution, that it is relieved of the obligation to participate in party discovery and make witnesses available for trial." R. 6682 at 2-3. In other words, the Court expects that Sysco will continue to participate in discovery in this case to the same extent it has been and as it is ordered by the Court.

At bottom, Defendants have not identified any authority that their "concern that Carina's substitution will meaningfully frustrate any future attempts for settlement discussions," *see* R. 6654 at 4, is a basis to deny substitution. The concern

---

[1] The Court acknowledges the contrary opinion on the parallel motion for substitution issued by the Court in Minnesota handling the pork antitrust case. *See In re Pork Antitrust Litig.*, 2024 WL 511890, at *1 (D. Minn. Feb. 9, 2024). But Illinois public policy was not at issue there.

alone is insufficient. An invalid assignment might have been a reason to deny the motion. But the Court has rejected those arguments.

For these reasons, Sysco's and Carina's motion to substitute [6630] is granted.

ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: March 21, 2024