**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION, | Case No.: 1:16-cv-08637 |
| | The Honorable Thomas M. Durkin |
| This Document Relates To: | Magistrate Judge Jeffrey T. Gilbert |
| THE DIRECT PURCHASER PLAINTIFF ACTION | |

**MEMORANDUM IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS'**
**MOTION FOR PAYMENT OF ATTORNEYS' FEES, REIMBURSEMENT OF**
**LITIGATION EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. LITIGATION BACKGROUND ...........................................................................2

    A. DPPs' Motion for Class Certification was Hotly Contested and Ultimately Successful ...................................................................................................2

    B. DPPs Opposed Defendants' Motions for Summary Judgment and Largely Defeated the Challenges ...........................................................................3

    C. DPPs Tried the Case Against Defendant Sanderson Farms..................................3

    D. Co-Lead Class Counsel Secured Over $284 Million in Settlements ......................3

    E. The Court Approved DPPs' Request for Interim Payment of Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representative Service Awards .............................................................................................5

    F. The First Distribution was Successful and Over $108 Million was Paid to Qualified Claimants ................................................................................6

    G. The DPP Class Members Have Adequate Notice and Opportunity to be Heard Regarding this Motion...................................................................6

III. CALCULATION OF THE NET SETTLEMENT FUND ....................................7

IV. THE REQUESTED FEE AWARD IS APPROPRIATE UNDER CONTROLLING LAW .........................................................................................8

    A. DPPs Seek a Percentage of the Settlement Fund as an Award of Fees ................8

        1. Plaintiffs' Requested Fee is an Appropriate Market-Based Fee...............11

        2. The Case Presented Substantial Litigation Risk From Inception Through Trial, and the Early Settlements and Prevailing at the Pleading Stage Did Not Guarantee Success or Alleviate Class Counsel's Risk ...................................................................................13

        3. Class Counsel Dedicated Enormous Resources to this Matter and Faced Significant Risks to Successfully Resolve this Case.....................19

        4. Comparable Cases Provide the Basis for this Request ..............................22

    B. A Lodestar Cross-Check Confirms that the Fee Requested is Proper ..................22

V. CLASS COUNSEL'S LITIGATION EXPENSES WERE REASONABLY INCURRED AND SHOULD BE REIMBURSED .........................................................25

VI. THE CLASS REPRESENTATIVES SHOULD RECEIVE SERVICE AWARDS .........28

VII. CONCLUSION....................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Americana Art China Co., Inc. v. Foxfire Printing and Packaging, Inc.*,
743 F.3d 243 (7th Cir. 2014) .......................................................9

*Arenson, et al. v. Bd. of Trade of City of Chicago*,
372 F. Supp. 1349 (N.D. Ill. 1974) ...............................................19

*In re Auto Parts Antitrust Litig.*,
No. 12-2311, 2015 WL 13715591 (E.D. Mich. Dec. 7, 2015) ...............27

*In re Auto Parts Antitrust Litig.*,
No. 12-2311, 2016 WL 9459355 (E.D. Mich. Nov. 29, 2016)...............27

*In re Auto Parts Antitrust Litig.*,
No. 12-2311, 2018 WL 7108072 (E.D. Mich. Nov. 5, 2018)................27

*In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*,
MDL No. 1871, 2012 WL 6923367 (E.D. Pa. Oct. 19, 2012)................18

*Blue Shield of Va. v. McCready*,
457 U.S. 465 (1982) ..................................................................12

*Blum v. Stenson*,
465 U.S. 886 (1984).................................................................11

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)...................................................................8

*Brewer v. S. Union Co.*,
607 F. Supp. 1511 (D. Colo. 1984)...............................................19

*Burkholder v. City of Ft. Wayne*,
750 F. Supp. 2d 990 (N.D. Ind. 2010) ..........................................12

*In re California Micro Devices Sec. Litig.*,
965 F. Supp. 1327 (N.D. Cal. 1997) .............................................27

*Campbell v. Advantage Sales & Mktg. LLC*,
No. 1:09-cv-01430, 2012 WL 1424417 (S.D. Ind. Apr. 24, 2012)...........12

*In re Capital One Telephone Consumer Protection Act Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) ..............................................14

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) .......................................................................15

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   MDL No. 1917, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) .................................15

*Matter of Cont'l Illinois Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ................................................................................13

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ...................................................................23, 24, 28

*In re Dairy Farmers of Am., Inc.*,
   80 F. Supp. 3d 838 (N.D. Ill. 2015) ............................................................. *passim*

*Denius v. Dunlap*,
   330 F.3d 919 (7th Cir. 2003) .................................................................................23

*Florin v. Nationsbank of Ga., N.A.*,
   34 F.3d 560 (7th Cir. 1994) ..............................................................10, 13, 23, 24

*Gaskill v. Gordon*,
   160 F.3d 361 (7th Cir. 1998) ..................................................................................8

*Gaskill v. Gordon*,
   942 F. Supp. 382 (N.D. Ill. 1996) ...................................................................10, 22

*Gastineau v. Wright*,
   592 F.3d 747 (7th Cir. 2010) .................................................................................23

*George v. Kraft Foods Glob., Inc.*,
   Nos. 1:08-cv-03799; 1:07-cv-01713, 2012 WL 13089487 (N.D. Ill. June 26, 2012) .............23

*Goldsmith v. Tech. Sols. Co.*,
   No. 1:92-cv-04374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) .........................12

*Hale v. State Farm Mut. Auto. Ins. Co.*,
   No. 3:12-cv-00660, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ................8, 10, 22

*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) .................................................................................24

*Heekin v. Anthem, Inc.*,
   No. 1:05-cv-01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012)..............9, 11, 23

*In re Hyundai and Kia Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019) .................................................................................25

*In re Ins. Brokerage Antitrust Litig.*,
    282 F.R.D. 92 (D.N.J. Mar. 30, 2012) ..................................................................................18

*Jeffboat, LLC v. Dir., Office of Workers' Comp. Progs.*,
    553 F.3d 487 (7th Cir. 2009) ..............................................................................................23

*Kelly v. Wengler*,
    822 F.3d 1085 (9th Cir. 2016) ............................................................................................25

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ................................................................................................9

*Kitson v. Bank of Edwardsville*,
    No. 3:08-cv-00507, 2010 WL 331730 (S.D. Ill. Jan. 25, 2010) ............................................12

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015) ..........................................................................................22

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
    733 F. Supp. 2d 997 (E.D. Wis. 2010) ................................................................................24

*Leung v. XPO Logistics, Inc.*,
    326 F.R.D. 185 (N.D. Ill. 2018) ..........................................................................................23

*In re Linerboard Antitrust Litig.*,
    No. 2:98-cv-05055, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ..........................................16

*In re Lithotripsy Antitrust Litig.*,
    No. 1:98-cv-08394, 2000 WL 765086 (N.D. Ill. June 12, 2000) ..................................9, 11, 12

*Martin v. Caterpillar Inc.*,
    No. 1:07-cv-01009, 2010 WL 11614985 (C.D. Ill. Sept. 10, 2010) ......................................12

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) ..........................................................................................................8, 25

*Montgomery v. Aetna Plywood, Inc.*,
    231 F.3d 399 (7th Cir. 2000) ................................................................................................8

*Newby v. Enron Corp.*,
    394 F.3d 296 (5th Cir. 2004) ..............................................................................................27

*In re Northfield Lab., Inc. Secs. Litig.*,
    No. 1:06-cv-01493, 2012 WL 2458445 (N.D. Ill. June 26, 2012) ..........................................9

*Pavlik v. FDIC*,
    No. 1:10-cv-00816, 2011 WL 5184445 (N.D. Ill. Nov. 1, 2011) ..........................................11

*Paz v. Portfolio Recovery Assocs., LLC*,
    924 F.3d 949 (7th Cir. 2019) .................................................................23

*In re Pork Antitrust Litig.*,
    No. 0:18-cv-01776-JRT (ECF No. 1424) (D. Minn. July 22, 2022) ......................................27

*In re Potash Antitrust Litig.*,
    No. 1:08-cv-06910 (ECF No. 589) (N.D. Ill. June 12, 2013)..................................11

*In re Pressure Sensitive Labelstock*,
    584 F. Supp. 2d at 702 .................................................................27

*In re Ready-Mixed Concrete Antitrust Litig.*,
    No. 1:05-cv-00979, 2010 WL 3282591 (S.D. Ind. Aug. 17, 2010)..............................9, 12, 25

*Retsky Family Ltd. Partnership v. Price Waterhouse LLP*,
    No. 1:97-cv-07694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) .........................................12

*Sanderson Farms Inc. v. Amory Investments LLC*,
    No. 22-8007 (7th Cir. Jul. 18, 2022)..................................................2, 17

*In re Schering-Plough Corp. Enhance Secs. Litig.*,
    No. 2:08-cv-02177, 2013 WL 5505744 (D.N.J. Oct. 1, 2013) .................................18

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ...............................................12, 24

*Silverman v. Motorola Sols., Inc.*,
    739 F.3d 956 (7th Cir. 2013) .................................................................9, 13

*Skelton v. Gen. Motors Corp.*,
    860 F.2d 250 (7th Cir. 1988) .................................................................23, 24

*Standard Iron Works v. ArcelorMittal*,
    No. 1:08-cv-05214, 2014 WL 7781572 (N.D. Ill. Oct. 22, 2014) .........................................24

*Matter of Superior Beverage/Glass Container Consol. Pretrial*,
    133 F.R.D. 119 (N.D. Ill. 1990).................................................................16

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) .................................................................9

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) .................................................................13, 14, 25

*Taubenfeld v. AON Corp.*,
    415 F.3d 597 (7th Cir. 2005) .................................................................22

*In re TFT-LCD (Flat-Panel) Antitrust Litig.*,
  MDL 1827, 2013 WL 149692 (N.D. Cal. Apr. 3, 2013) ......................................................24

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
  No. 07-5634, 2015 WL 3396829 (N.D. Cal. May. 26, 2015)................................................27

*Trist v. First Fed. Savings & Loan Ass'n of Chester*,
  89 F.R.D. 8 (E.D. Pa. 1980)................................................................................................19

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ...........................................................................................25

*In re Warner Comm'ns. Secs. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) .....................................................................................18

*Will v. Gen. Dynamics Corp.*,
  No. 3:06-cv-00698, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010).........................................12

*Williams v. Gen. Elec. Cap. Auto Lease*,
  No. 1:94-cv-07410, 1995 WL 765266 (N.D. Ill. Dec. 26, 1995) .............................................8

*Williams v. Rohm & Haas Pension Plan*,
  658 F.3d 629 (7th Cir. 2011) ......................................................................................8, 9, 23

*Williams v. Rohm & Haas Pension Plan*,
  No. 4:04-cv-00078, 2010 WL 4723725 (S.D. Ind. Nov. 12, 2010).......................................28

*In re WorldCom, Inc. Sec. Litig.*,
  No. 02-3288, 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004)................................................27

*In re WorldCom, Inc. Secs. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005)..................................................................................18

*Wright v. Nationstar Mortg. LLC*,
  No. 1:14-cv-10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) .......................................23

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
  395 U.S. 100 (1969)............................................................................................................12

**Other Authorities**

Alba Conte, *Attorney Fee Awards* § 2.08 (3d ed. 2004)....................................................25

Fed. R. Civ. P. 23(h) ....................................................................................................8, 25

Lester Brickman, *ABA Regulation of Contingency Fees: Money Talks, Ethics
  Walks*, 65 FORDHAM L. REV. 247, 248 (1996) ......................................................................11

MANUAL FOR COMPLEX LITIGATION (Fourth), § 13.21................................................27

Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class
Action Settlements: 1993-2008*, 7 J. EMPIR. L. STUD. 248 (2010) ..........................................15

## I.     INTRODUCTION

From the time this case was filed in 2016 through today, Co-Lead Class Counsel[1] for the Direct Purchaser Plaintiff Class ("DPPs" or "DPP Class") have secured $284,651,750 in settlements with thirteen Defendants and have agreed to cost waiver settlements with the remaining seven defendants. (*See* Section II.D below.) After nearly eight years of hard-fought litigation, including achieving the contested certification of the DPP Class (ECF No. 5644), largely defeating Defendants' motions for summary judgment (ECF No. 6641), and a six-week trial against the remaining Defendant, Sanderson Farms (ECF No. 7015), Co-Lead Class Counsel have begun the process of winding down this litigation by providing notice to the DPP Class of the recent settlements, commencing the second claims process, and preparing to distribute the net proceeds from the Mar Jac, Harrison Poultry, Simmons, Mountaire, O.K. Foods, HRF, and Koch settlements to qualified claimants.[2]

The successful litigation of this complex antitrust class action reflects the skill, expertise, and hard work of Co-Lead Class Counsel and other Direct Purchaser Plaintiff Counsel (collectively, "Class Counsel"),[3] and the benefit to DPP Class members is substantial, real, and

---

[1] The Court appointed Lockridge Grindal Nauen P.L.L.P. ("LGN") and Pearson Warshaw, LLP ("PW") as Interim Co-Lead Counsel at the outset of the litigation (ECF No. 144, Oct. 14, 2016 Order), and as Co-Lead Class Counsel when it granted DPPs' motion for class certification (ECF No. 5644 at 6).

[2] The proceeds from the first six settlements with Defendants Fieldale, Peco, George's, Amick, Pilgrim's, and Tyson have already been distributed to qualified claimants. (*See* ECF No. 5787.) In addition to the settlement proceeds that have yet to be distributed is $5,226,221.73 (as of April 30, 2024) that was previously approved for redistribution. (*Id.* at 3-4.) These funds are invested in an interest-bearing account and taxes are paid as necessary. No attorneys' fees, litigation expenses, or service awards that may be awarded as a result of this Motion will be paid from these funds.

[3] Under Co-Lead Class Counsel's direction, 20 other firms prosecuted this case on DPPs' behalf and, together with Co-Lead Class Counsel, they are referred to collectively in this Memorandum as "Class Counsel." At all times, Co-Lead Class Counsel directed and organized Class Counsel's work. (*See generally* Declaration of W. Joseph Bruckner in Support of Direct

concrete, compared to the significant litigation risks this case presented. For the reasons detailed in this brief, DPPs respectfully ask the Court to award Class Counsel 33 1/3% of the Net Settlement Fund or $37,279,851.67 as attorneys' fees (*see* Sections III and IV below), $1,029,448.72 as reimbursement for litigation expenses (*see* Section V below), and $100,000.00 as a future litigation expense fund (*see id.*). DPPs also seek $15,000.00 in service awards to each of the five named Class Representatives for their dedication and hard work in prosecuting this litigation (*see* Section VI below). DPPs' requests for attorneys' fees, costs, and incentive awards are supported by the relevant law, the time, effort, and expenses expended in this case by class counsel, and the results obtained in the litigation.

## II.     LITIGATION BACKGROUND

The Court is very familiar with this case, and thus DPPs will dispense with a detailed recitation of its background. However, for the purpose of this motion, DPPs provide the below summary of the major events in the litigation that occurred since the Court approved the interim distribution of attorneys' fees in December 2021 (ECF No. 5229).

### A.     <u>DPPs' Motion for Class Certification was Hotly Contested and Ultimately Successful</u>

After extensive briefing, including many expert opinion reports, evidence relating to class certification issues, and a two-day hearing, the Court certified the DPP Class. (ECF No. 5644.) The Court of Appeals denied Defendants' Rule 23(f) petition for an interlocutory appeal of the decision. *Sanderson Farms Inc. v. Amory Investments LLC*, No. 22-8007 (7th Cir. Jul. 18, 2022).

---

Purchaser Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement Litigation Expenses, and Class Representative Service Awards ("Bruckner Decl.").) As in the Court's prior fee award (ECF No. 5229), Co-Lead Counsel propose that they will have discretion to allocate an award of attorneys' fees among Direct Purchaser Plaintiffs' Counsel. Co-Lead Class Counsel's good-faith determination will reflect each individual Class Counsel's contribution to the commencement, prosecution, and resolution of the litigation.

**B.** **DPPs Opposed Defendants' Motions for Summary Judgment and Largely Defeated the Challenges**

Even after class certification, the DPP Class continued to face significant risks, including at summary judgment. After voluminous briefing and two full days of hearings, the Court denied summary judgment for several Defendants, but granted summary judgment for Defendants Agri Stats, Case, Fieldale, Foster Farms, Claxton, Perdue, and Wayne Farms, as well as all Plaintiffs' claims regarding the manipulation of the Georgia Dock. (ECF No. 6641.) Defendants' concurrent *Daubert* challenges to DPPs' trial expert were hotly contested and ultimately denied. (*Id.*)

**C.** **DPPs Tried the Case Against Defendant Sanderson Farms**

The DPP Class eventually proceeded to trial against Sanderson Farms, the only Defendant who did not settle or obtain summary judgment. (*See* Bruckner Decl. ¶ 10.) DPPs assembled a trial team of skilled attorneys and support staff. In the weeks and months leading up to the September 2023 trial, Class Counsel worked tirelessly to prepare, including mock trials, legal research to support trial strategies, negotiating the jury instructions and verdict form, appearing at each hearing, and meeting and conferring with counsel for Sanderson Farms regarding trial exhibits. (*Id.*) Once preparation was complete, the trial team worked to present DPPs' case to the jury in the most efficient and effective way possible. (*Id.*) After a 6-week trial, the jury returned a defense verdict for Sanderson Farms. (ECF No. 7015.)

**D.** **Co-Lead Class Counsel Secured Over $284 Million in Settlements**

DPPs reached monetary settlements with thirteen Defendant families: Fieldale, Peco, George's, Amick, Pilgrim's Pride, Tyson, Mar Jac, Harrison Poultry, Simmons, Mountaire, O.K. Foods, House of Raeford, and Koch. These settlements total $284,651,750 as follows (*see* Bruckner Decl. ¶ 12):

| Defendant Family | Settlement Amount | Status |
|---|---|---|
| Fieldale | $2,250,000 | Finally Approved (ECF No. 1414), Distributed to Qualified Claimants. |
| Peco | $4,964,600 | Finally Approved (ECF No. 3944), Distributed to Qualified Claimants. |
| George's | $4,097,000 | Finally Approved (ECF No. 3944), Distributed to Qualified Claimants. |
| Amick | $3,950,000 | Finally Approved (ECF No. 3945), Distributed to Qualified Claimants. |
| Pilgrim's | $75,000,000 | Finally Approved (ECF No. 4789), Distributed to Qualified Claimants. |
| Tyson | $79,340,000 | Finally Approved (ECF No. 4789), Distributed to Qualified Claimants. |
| Mar Jac | $7,975,000 | Finally Approved (ECF No. 5397), Pending Distribution. |
| Harrison Poultry | $3,300,000 | Finally Approved (ECF No. 5397), Pending Distribution. |
| Simmons | $8,018,991 | Finally Approved (ECF No. 7085), Pending Distribution.[4] |
| Mountaire | $15,899,826 | Finally Approved (ECF No. 7087), Pending Distribution. |
| O.K. Foods | $4,856,333 | Finally Approved (ECF No. 7088), Pending Distribution. |
| House of Raeford | $27,500,000 | Preliminarily Approved (ECF No. 7070).[5] |
| Koch | $47,500,000 | Preliminarily Approved (ECF No. 7070).[5] |
| **Total** | **$284,651,750** | |

In addition to the monetary component, each of these settlements contained cooperation provisions that assisted the DPPs throughout the litigation of the case and at trial. (*See* Bruckner Decl. ¶ 14.)

As to the seven Defendants remaining in the DPP case, in June 2023 the Court entered summary judgment in favor of six of them (ECF No. 6641), and the DPP Class's trial against the remaining Defendant, Sanderson Farms, resulted in a jury verdict in October 2023 in Sanderson Farms' favor (ECF No. 7015). As prevailing parties those seven Defendants could seek to tax

---

[4] The Certain Restaurant DAPs have appealed final approval of the Simmons settlement to the Court of Appeals. (*See* Bruckner Decl. ¶ 15.)

[5] The settlements with HRF and Koch have been preliminarily approved by the Court and the notice plan for these settlements is in progress. Co-Lead Class Counsel will report to the Court regarding any objections prior to the hearing on this motion, which is set to be held concurrently with the final approval hearing for those settlements, as well as the cost waiver settlements.

certain litigation costs against the DPP Class if summary judgment or the jury verdict (as the case may be) was upheld in post-trial proceedings or on appeal. To eliminate this risk and to facilitate the prompt distribution of the net settlement funds to qualified DPP Class members, the DPP Class entered into settlements with those seven Defendants: Foster Farms, Perdue, Case, Claxton, Wayne Farms, Agri Stats, and Sanderson Farms. (*See* Bruckner Decl. ¶ 16.) Under the settlements, DPPs and each settling Defendant mutually agreed to waive all rights to appeal or otherwise further adjudicate their claims against the other, and in exchange each party agreed not to seek or assert any claim for costs, fees, attorney's fees or any other form of recovery against the other. (*Id.*) As such, none of the attorneys' fees, litigation expenses, or Class Representative service awards being sought in this motion are being funded from these seven settlements.

### E. The Court Approved DPPs' Request for Interim Payment of Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representative Service Awards

Following the settlements with Defendants Fieldale, Peco, George's, Amick, Pilgrim's, and Tyson, which totaled $169,601,600.00, in 2021 DPPs requested and this Court approved an interim payment of attorneys' fees at 33 1/3% net of costs ($55,008,866.67), reimbursement of litigation expenses totaling $4.5 million, and Class Representative service awards of $15,000.00 each ($75,000.00 total). (*See* ECF No. 5229, December 1, 2021.) In December 2023, this Court awarded a second interim reimbursement of litigation expenses totaling $4,469,346.65 paid *pro rata* from the Mar Jac, Harrison Poultry, Simmons[6], Mountaire, and O.K. Foods settlements. (*See* ECF No. 7086.) There were no objections to either motion. (*See* ECF No. 5229.)

---

[6] The Court's Order granting DPPs' second interim request for reimbursement of litigation expenses set forth the *pro rata* amount of litigation expenses applicable to each of the settlements. (*See* ECF No. 7086.) Because the Simmons settlement is subject to the Certain Restaurant DAPs' appeal, the litigation expenses attributable to the Simmons settlement ($894,869.32) have not been paid, but are being held in an interest-bearing escrow account pending resolution of the appeal. (*See* Bruckner Decl. ¶ 15.)

## F.     The First Distribution was Successful and Over $108 Million was Paid to Qualified Claimants

During the first five years of this litigation, the DPPs amassed $169,601,600.00 in settlements with Defendants Fieldale, Peco, George's, Amick, Pilgrim's, and Tyson. The net settlement fund available to qualified claimants was $108,723,999.79, which resulted from the addition of accrued interest and minus (i) the costs of settlement administration and escrow, and (ii) the attorneys' fees, litigation expenses, and class representative service awards already distributed to Class Counsel (*see* ECF No. 5229). Following the Court's Order Approving a Plan of Distribution (ECF No. 5434), the DPP Claims Administrator sent *pro rata* payments to each qualified claimant. The first distribution was highly successful, with over 95 percent of the money being successfully delivered to qualified claimants and only a small portion earmarked for redistribution with the recent monetary settlements.

## G.     The DPP Class Members Have Adequate Notice and Opportunity to be Heard Regarding this Motion

All DPP Class members will have notice and an opportunity to be heard on this motion. On April 1, 2024, in the Court-approved notice,[7] Class Counsel informed all DPP Class members that they would seek (1) an award of attorneys' fees in an amount not to exceed 33 1/3% of the Mar Jac, Harrison Poultry, Simmons, Mountaire, O.K. Foods, HRF, and Koch settlement proceeds plus interest, net of costs; (2) up to $4 million in reimbursement of litigation expenses; (3) payment of up to $250,000 for ongoing and future litigation expenses; and (4) Class Representative service awards not to exceed $15,000 per Class Representative. (*See* ECF No. 7174-2, Court-approved long form notice.) As DPP Class members also were informed, this motion will be posted on the case website,   https://www.broilerchickenantitrustlitigation.com,   contemporaneously with its

---

[7] Notice of this motion and the limits of Class Counsel's requests were provided in conjunction with preliminary approval of the settlements with the prevailing defendants. (*See* ECF No. 7179.)

filing. Class Counsel also informed DPP Class members that the Court will determine the amount of the attorneys' fees and litigation expenses to be paid to Class Counsel and any service awards to the Class Representatives. Finally, DPP Class members were told that they may object to any aspect of this motion, and the deadline (June 1, 2024) and procedures to do so. (*Id.*)

## III. CALCULATION OF THE NET SETTLEMENT FUND

The Net Settlement Fund on which the DPPs propose Class Counsel's fee request should be based is calculated as follows:

| | Amount | Reference |
|---|---|---|
| Mar Jac Settlement Fund | $7,975,000.00 | ECF No. 5397 |
| Harrison Poultry Settlement Fund | $3,300,000.00 | ECF No. 5397 |
| Simmons Settlement Fund | $8,018,991.00 | ECF No. 7085 |
| Mountaire Settlement Fund | $15,899,826.00 | ECF No. 7087 |
| O.K. Foods Settlement Fund | $4,856,333.00 | ECF No. 7088 |
| House of Raeford Settlement Fund | $27,500,000.00 | ECF No. 7070[8] |
| Koch Settlement Fund | $47,500,000.00 | ECF No. 7070[8] |
| **Total of Settlements at Issue** | **$115,050,150.00** | |
| Interest Earned on the Settlements at Issue[9] | $2,975,355.20 | Bruckner Decl. ¶ 13 |
| Litigation Expenses paid by the Settlements at Issue | ($6,010,950.20) | *See* Section V below |
| Requested Future Litigation Expenses | ($100,000.00) | *See* Section V below |
| Requested Class Representative Service Awards | ($75,000.00) | *See* Section VI below |
| **Net Settlement Fund** | **$111,839,555.00** | |

As the Court is aware, the Court's final approval of the Simmons settlement currently is on appeal by Certain Restaurant DAPs, who have indicated that they also intend to object to the order granting final approval of the Koch and Raeford settlements. (*See* ECF No. 7040 at 1.) While Class Counsel have included these three settlements – Simmons, Koch, and Raeford – in their calculation of the funds upon which attorneys' fees and litigation expenses would be awarded,

---

[8] The HRF and Koch settlements are included assuming final approval. If for any reason these settlements are not approved, or their approval is appealed, Class Counsel will update this chart.

[9] In April 2022, this Court awarded the Commercial and Institutional Indirect Purchaser Plaintiffs class a 33 1/3% fee including interest earned on the settlement amounts. (*See* ECF No. 5543 at 3.) DPPs propose the same methodology be used here.

Class Counsel will not take any fees or expenses until they are finally approved and any appeals are resolved in favor of the DPP Class. DPPs will present the Court with an updated accounting regarding the attorneys' fees (because interest continues to accrue) for the Court's approval shortly after any and all appeals are resolved. (*See* Bruckner Decl. ¶ 15.)

## IV. THE REQUESTED FEE AWARD IS APPROPRIATE UNDER CONTROLLING LAW

### A. <u>DPPs Seek a Percentage of the Settlement Fund as an Award of Fees</u>

Rule 23 permits the Court to award reasonable attorneys' fees and expenses in class actions. Fed. R. Civ. P. 23(h). When a party obtains compensation for the class's benefit in the form of a common fund, courts have long recognized that the costs of the litigation, including an award of attorneys' fees, should be recovered from that common fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970). This approach equitably apportions the costs of litigation, including attorneys' fees, among the class members who benefit from the common fund. *Boeing Co.*, 444 U.S. at 478.

The Seventh Circuit has repeatedly endorsed the percentage-of-the-fund methodology. *See Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (collecting cases) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund, in recognition of the fact that most suits for damages in this country are handled on the plaintiffs' side on a contingent-fee basis."); *Williams v. Gen. Elec. Cap. Auto Lease*, No. 1:94-cv-07410, 1995 WL 765266, at *9 (N.D. Ill. Dec. 26, 1995) (collecting cases) ("The approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class."); *see also Williams v. Rohm & Haas Pension Plan* ("*Rohm & Haas II*"), 658 F.3d 629, 635-36 (7th Cir. 2011); *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 3:12-cv-00660, 2018 WL 6606079, at *7 (S.D. Ill. Dec. 16,

2018); *Heekin v. Anthem, Inc.*, No. 1:05-cv-01908, 2012 WL 5878032, at *2 (S.D. Ind. Nov. 20, 2012); *In re Northfield Lab., Inc. Secs. Litig.*, No. 1:06-cv-01493, 2012 WL 2458445, at *3 (N.D. Ill. June 26, 2012). The percentage-of-the-fund method utilizes an *ex ante* approach, in which courts award a fee approximating a hypothetical *ex ante* bargain between the class and its attorneys. *Americana Art China Co., Inc. v. Foxfire Printing and Packaging, Inc.*, 743 F.3d 243, 246-47 (7th Cir. 2014); *Rohm & Haas II*, 658 F.3d at 635.

      To determine the reasonableness of attorney's fees in a common fund case such as this, "courts must do their best to award counsel the 'market price' for the legal services" they provided. *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007); *see also Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) ("[A]ttorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services."). A contingent fee based on a percentage of the recovery is the most common form of compensation for counsel representing classes in class action litigation. Similarly, in antitrust class action litigation, "the 'market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time' is a contingent fee in the amount of one-third (1/3) of the common fund recovered." *In re Ready-Mixed Concrete Antitrust Litig.*, No. 1:05-cv-00979, 2010 WL 3282591, at *3 (S.D. Ind. Aug. 17, 2010) (citing *Sutton*, 504 F.3d at 692); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 862 (N.D. Ill. 2015); *In re Lithotripsy Antitrust Litig.*, No. 1:98-cv-08394, 2000 WL 765086, at *2 (N.D. Ill. June 12, 2000) (emphasis in original) (noting that "[m]any courts in this district have utilized" the percentage method to set fees in class actions); *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'").

The percentage-of-the-fund method also conserves judicial resources. Unlike a lodestar-based calculation, percentage fees not only are directly related to class counsel's success, they are simple to calculate and are not subject to manipulation by counsel. Courts are not forced to review years of bills or scrutinize each decision made by counsel during a complex, multi-year case. *See Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565 (7th Cir. 1994) (noting "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration."); *Gaskill v. Gordon* ("*Gaskill I*"), 942 F. Supp. 382, 386 (N.D. Ill. 1996) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (observing that "the percentage of the fund method saves the court the time it would have to spend reviewing eight years of billing documents."). Instead, compensation is based on the level of class counsel's success, as it would be in a similar contingency case on behalf of a private party. The percentage-of-the-fund method also allows a court to "dispose of [the] last issue in [] prolonged proceedings as expeditiously as possible." *Gaskill I*, 942 F. Supp. at 386. (quoting *Sec. & Exch. Comm'n v. First Secs. Co. of Chicago*, 528 F.2d 449, 454 (7th Cir. 1976)).

The Seventh Circuit permits courts to consider four factors to determine the "market rate" in a case such as this: (1) the actual agreements between the parties, as well as fee agreements reached by entities in the market for legal services; (2) the risk of non-payment at the outset of the case; (3) the caliber of class counsel's performance; and (4) information from other cases, including fees awarded in comparable cases. *Hale*, 2018 WL 6606079, at *1, *8 (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir. 2001)). As this Court held in approving the DPP's previous request for attorneys' fees, these considerations weigh heavily in favor of the Court granting DPPs' request.

1. **Plaintiffs' Requested Fee is an Appropriate Market-Based Fee**

A fee award of 33 1/3% in this case reflects a hypothetical real-world arm's length transaction between the DPP Class and Class Counsel, and is a generally accepted percentage in the Seventh Circuit. *In re Dairy Farmers*, 80 F. Supp. 3d at 846; *In re Lithotripsy*, 2000 WL 765086, at *2. This Court held the same when it previously awarded DPPs an interim fee: "**There is simply little to no precedent recommending anything other than an award of 33 percent. With the only real evidence of the "market rate" being one-third, that is what the Court will award**." (ECF No. 5229 at 10 (emphasis added).) The requested fee award is justified by the remarkable results obtained for the DPP Class and the risks faced by Class Counsel, and is well within the acceptable range of attorneys' fee awards in protracted, complex, and expensive litigation such as this. (*See generally Id.*)

Thirty-three and one-third percent is a standard percentage in many fee agreements, including large, complex non-class cases. *See* Lester Brickman, *ABA Regulation of Contingency Fees: Money Talks, Ethics Walks*, 65 FORDHAM L. REV. 247, 248 (1996) (noting that "standard contingency fees" are "usually thirty-three percent to forty percent of gross recoveries"); *see also Blum v. Stenson*, 465 U.S. 886, 903 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.").

Courts in the Seventh Circuit routinely award contingency fees of 33 1/3% or more. *E.g.*, *In re Dairy Farmers*, 80 F. Supp. 3d at 862 (awarding one-third of the common fund); *In re Potash Antitrust Litig.*, No. 1:08-cv-06910 (ECF No. 589) (N.D. Ill. June 12, 2013) (ECF No. 4552-2 at 189-192) (awarding fees of one-third of $90 million fund, plus $791,124.63 in expenses); *Heekin*, 2012 WL 5878032, at *5 (awarding one-third fee of $90 million fund, plus $6,243,278.10 in expenses); *Pavlik v. FDIC*, No. 1:10-cv-00816, 2011 WL 5184445, at *4 (N.D. Ill. Nov. 1, 2011)

11

(one-third fee); *In re Lithotripsy*, 2000 WL 765086, at *2 ("33.3% of the fund plus expenses is well within the generally accepted range of the attorneys' fee awards"); *Goldsmith v. Tech. Sols. Co.*, No. 1:92-cv-04374, 1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995) (citing *Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992)) ("Thirty three percent appears to be in line with what attorneys are able to command on the open market in arms-length negotiations with their clients."); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 597 (N.D. Ill. 2011) (one-third fee); *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 1:97-cv-07694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered."); *Martin v. Caterpillar Inc.*, No. 1:07-cv-01009, 2010 WL 11614985, at *4 (C.D. Ill. Sept. 10, 2010) (one-third fee); *Kitson v. Bank of Edwardsville*, No. 3:08-cv-00507, 2010 WL 331730, at *2 (S.D. Ill. Jan. 25, 2010) (one-third fee); *Will v. Gen. Dynamics Corp.*, No. 3:06-cv-00698, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) (one-third fee); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (one-third fee); *Campbell v. Advantage Sales & Mktg. LLC*, No. 1:09-cv-01430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (one-third fee); *In re Ready-Mixed Concrete*, 2010 WL 3282591, at *3 (one-third fee).

Public policy also favors an attorneys' fee award at the market rate. The Supreme Court has repeatedly held that private enforcement of antitrust laws is essential to effective antitrust enforcement. *See, e.g.*, *Blue Shield of Va. v. McCready*, 457 U.S. 465, 472 (1982); *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130-31 (1969). And a market-rate fee award incentivizes competent, experienced counsel to take on high-risk, complex class action litigation.

Here, the retainer agreements between Class Counsel and the named plaintiffs do not specify the amount of attorneys' fees, but simply say that counsel would receive as fees a percentage of any recovery as awarded by the Court. (Bruckner Decl. ¶ 18; *see also* ECF No. 5229

at 4.) Following Court-approved notice of DPPs' interim fee request in February 2021 (*see* ECF No. 4341), no Class member objected to the interim fee request. "Courts have found that the lack of opposition by sophisticated business entities is evidence that the award is reasonable." (ECF No. 5229 (citing *Silverman*, 739 F.3d at 959 (holding that for large, sophisticated investors, it would be "worth a complaint to the district judge if the lawyers' cut seems too high. Yet none of the institutional investors has protested."), and *In re Dairy Farmers*, 80 F. Supp. 3d at 847) (observing, in finding that the requested one-third fee award was reasonable, that "the plaintiffs here are sizable, sophisticated entities capable of reviewing (and objecting to) the proposed fee arrangement").) As the fee request here is consistent with the actual agreement with the named plaintiffs and no DPP objected to the previous fee request, DPPs submit that the present request is appropriate.

> **2.** **The Case Presented Substantial Litigation Risk From Inception Through Trial, and the Early Settlements and Prevailing at the Pleading Stage Did Not Guarantee Success or Alleviate Class Counsel's Risk**

A material consideration in determining an appropriate fee is the risk of nonpayment. *See Silverman*, 739 F.3d at 958; *In re Synthroid*, 264 F.3d at 718. "The lawyers for the class receive no fee if the suit fails." *Cont'l Illinois*, 962 F.2d at 568. "Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman*, 739 F.3d at 958 (citing *Kirchoff*, 786 F.2d at 320).

To determine a fee award in a class action settlement, a court must assess counsel's risk of taking a particular case and the probability of success as it existed "*at the outset* of the litigation." *Florin*, 34 F.3d at 565. Therefore, a court must do its best to estimate the terms of the contract that

private plaintiffs would have negotiated with their lawyers at the outset of the case, when the risk of loss still existed, rather than at the end of a successful case:

> The best time to determine this rate is the **beginning of the case**, not the end (when hindsight alters the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low). This is what happens in actual markets.

*In re Synthroid*, 264 F.3d at 718 (emphasis added); *see also In re Capital One Telephone Consumer Protection Act Litig.*, 80 F. Supp. 3d 781, 788-89 (N.D. Ill. 2015) (the probability of success at the outset of litigation helps determine the reasonableness of the fee).

As discussed below, throughout the lengthy duration of this case Class Counsel faced a significant risk of nonpayment. DPPs alleged a price-fixing conspiracy by the United States' leading Broiler chicken producers and claimed that they and the Class paid significant overcharges as a result. Class Counsel conceived and brought this case without the benefit of any related government investigation or enforcement action. (Bruckner Decl. ¶ 4.) Indeed, only after DPPs had prosecuted this case for two-and-a-half years did the DOJ convene grand jury proceedings. And then, the first step the DOJ took was to *subpoena DPP Co-Lead Counsel* for the extensive discovery record Class Counsel had amassed from Defendants and third parties, after which the DOJ moved to intervene in this case. (Bruckner Decl. ¶ 4; ECF No. 2302.) Class Counsel believed in DPPs' case, invested extensive amounts of their time, effort, and money, and prosecuted it vigorously. Class Counsel did so at the risk of no recovery and declined other opportunities because of the complexity, time, and expense this case demanded. (Bruckner Decl. ¶ 4.)

While this Court awarded an interim payment of attorneys' fees and reimbursement of litigation expenses in December 2021 (ECF No. 5229), there was no guarantee of such a recovery at the outset of the litigation. Even after reaching an initial settlement with Fieldale, Class Counsel had to invest significant amounts of time and money to continue to prosecute the case and secure

additional settlements. This post interim payment phase of the case included hotly contested class certification and summary judgment motions (which exceeded 2,000 pages of briefing), as well as the herculean effort that went into the trial, were never certain victories and required tens of thousands of hours and millions of dollars in expenses. (Bruckner Decl. ¶¶ 8-10.) As demonstrated by the fact that six Defendants prevailed on their motions for summary judgment and DPPs did not prevail at trial against Sanderson Farms, there was no guaranty of success during this second phase of the case.

In the face of these risks, Class Counsel have achieved significant recoveries on behalf of the DPP Class. (Bruckner Decl. ¶¶ 11-14, 16.) An overview of the relevant factors courts consider when evaluating risk is provided below.

(a)       Antitrust Class Actions are Inherently Risky

In a study analyzing class actions against insurers, only 12% of 564 attempted class actions led to a class settlement. Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. EMPIR. L. STUD. 248, at 24 (2010) (citing Nicholas M. Pace, Stephen J. Carroll, Ingo Vogelsang, & Laura Zakaras, *Insurance Class Actions in the United States*, 47 tbl.3.16 (2007)). Antitrust class actions are riskier still, due in part to their unpredictable nature, as well as the tremendous time and expense required to successfully resolve them. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2016 WL 721680, at *17 (N.D. Cal. Jan. 28, 2016) (quoting *In re NASDAQ Mkt-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998)); *see In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (emphasizing a strong public interest in encouraging settlement of complex, class-action lawsuits because they are "notoriously difficult and unpredictable" and settlement preserves judicial resources). "The 'best' case can be lost and the 'worst' case can be won, and juries may

15

find liability but no damages. None of these risks should be underestimated." *Matter of Superior Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119, 127 (N.D. Ill. 1990).

Here, the risks were extremely high. DPPs alleged a nationwide conspiracy to fix, raise, maintain, and stabilize the price of Broilers—the nation's most popular meat product. While Fieldale settled prior to November 2017 when the Court denied Defendants' motions to dismiss DPPs' complaint (ECF No. 541), other Defendants continued to aggressively litigate the case, fighting DPPs on their motion to certify the DPP Class and on the merits at summary judgment and trial. In the face of these risks, Class Counsel vigorously represented DPPs and obtained a substantial recovery for the Class.

(b)     <u>Class Counsel Faced Complex Issues</u>

Investigating and proving an unlawful conspiracy is difficult, especially when not derived from a related criminal investigation. *In re Linerboard Antitrust Litig.*, No. 2:98-cv-05055, 2004 WL 1221350, at *10 (E.D. Pa. June 2, 2004), *amended*, 2004 WL 1240775 (June 4, 2004) (observing that "an antitrust class action is arguably the most complex action to prosecute."). DPPs allege that Defendants conspired to artificially inflate prices by, among other things, suppressing production. Defendants spared no effort in challenging DPPs' allegations. They argued that DPPs' claims were conjectural and implausible under *Twombly*, that DPPs did not allege facts showing that Defendants acted in parallel to reduce output or to raise prices for Broilers, and that their parallel production and pricing decisions were the result of legitimate market forces. (ECF Nos. 274-298; 360; 363-373; 471.) After extensive briefing, the Court denied each of Defendants' motions to dismiss. (*Id.*; *see also* ECF Nos. 343-345; 440; 541.)

DPPs then turned to litigating the case against 20 Defendants. Discovery has involved more than 200 document custodians, more than 8 million documents and communications, millions of telephone calls and messages, many third parties, and the depositions of hundreds of fact witnesses.

16

(Bruckner Decl. ¶ 5.) Class Counsel took the lead in coordinating this discovery with Defendants, two other classes, and nearly 100 Direct Action Plaintiffs. Plaintiffs and Class Counsel also fulfilled their own discovery obligations, in response to fulsome discovery by Defendants. (*Id.*)

Once discovery was underway, DPPs begin preparing and briefing their motion for class certification. This process involved numerous attorneys and staff to craft the factual and legal bases for the motion. Once DPPs filed their motion in Fall 2020, Defendants marshalled the full force of their top-tier law firms in opposition. Like their motions to dismiss, Defendants challenged each and every aspect of the DPPs' case factually, procedurally, and legally. Defendants presented their own experts to bolster their arguments and discredit DPPs'. Once briefing was complete nearly 18 months later, the Court held a two-day hearing in May 2022 on the motion, including expert testimony. Ultimately, the Court certified the DPP Class (ECF No. 5644) and the Court of Appeals denied Defendants' Rule 23(f) petition for an interlocutory appeal. *Sanderson Farms Inc. v. Amory Investments LLC*, No. 22-8007 (7th Cir. Jul. 18, 2022).

Class certification did not ameliorate the complexity of the case. Over the next 15 months, Defendants' motions for summary judgment and *Daubert* challenges to DPPs' expert were briefed and decided. These motions required Class Counsel's massive investment of time and money. While Defendant's *Daubert* challenges to DPPs' trial expert were denied, six Defendants in DPPs' case obtained summary judgment, thus creating a risk of litigation costs for the DPP Class. (ECF No. 6641.)

Once summary judgment was decided, Class Counsel prepared for trial against the five then-remaining Defendants.[10] Class Counsel's trial work was extensive. Each and every attorney

---

[10] Following summary judgment and before trial, four Defendants – Mountaire, O.K. Foods, HRF, and Koch – settled. HRF and Koch settled only days before trial. By the time trial commenced, only Sanderson Farms remained.

17

and staff member, whether they appeared in Court or supported the trial behind the scenes, was essential. The complex issues of this case required countless hours of strategizing and coordinating with other Track 1 plaintiffs (51 Direct Action Plaintiffs) to effectively and efficiently present the case to the jury. Although the jury ultimately returned a verdict in favor of Sanderson Farms (ECF No. 7015), this case is the rare instance of an antitrust class action going through trial.

(c)     Defendants Marshalled Tremendous Resources for Their Defense

Not only did Class Counsel confront the inherent uncertainties of an antitrust class action alleging a nationwide conspiracy, but they also faced some of the world's wealthiest multinational corporations, whose skilled and experienced legal counsel mounted a strong, united defense up through settlement and, in Sanderson's case, through trial. The fact that the nation's top legal counsel represented Defendants is an important factor in analyzing the value of Class Counsel's services. *E.g.*, *In re Schering-Plough Corp. Enhance Secs. Litig.*, No. 2:08-cv-02177, 2013 WL 5505744, at *25 (D.N.J. Oct. 1, 2013) (emphasizing the importance of evaluating the result in light of the fact that the case was "litigated to the hilt by highly-experience [*sic*] and first-rate defense counsel to the eve of trial"); *In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*, MDL No. 1871, 2012 WL 6923367, at *5 (E.D. Pa. Oct. 19, 2012) (collecting cases) (considering "the performance and quality of opposing counsel" as a factor in awarding attorneys' fees); *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 121 (D.N.J. Mar. 30, 2012) (concluding the skill and efficiency of the attorneys involved favored approval of attorneys' fees in part because the settling defendants were represented by experienced attorneys from prominent law firms); *In re WorldCom, Inc. Secs. Litig.*, 388 F. Supp. 2d 319, 357-58 (S.D.N.Y. 2005) (finding that counsel "obtained remarkable settlements for the Class while facing formidable opposing counsel from some of the best defense firms in the country."); *In re Warner Comm'ns. Secs. Litig.*, 618 F. Supp.

735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."); *Arenson, et al. v. Bd. of Trade of City of Chicago*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974) (noting that the quality, vigor, and prior success of opposing counsel is an important factor when assessing the quality of work performed by plaintiffs' counsel).

The resources available to opposing parties are also significant when considering the gravity of the risk class counsel faced. *See Brewer v. S. Union Co.*, 607 F. Supp. 1511, 1531 (D. Colo. 1984); *Trist v. First Fed. Savings & Loan Ass'n of Chester*, 89 F.R.D. 8, 13 (E.D. Pa. 1980). In *Brewer*, the court remarked that inequality of resources available to the parties greatly increases the risk to class counsel. *Brewer*, 607 F. Supp. at 1531. That inequality was prominent here; available resources vastly favored Defendants, who are among the world's largest and wealthiest businesses. The DPP Class, meanwhile, was represented by small regional distributors who purchased Broilers, and their lawsuit was funded and prosecuted by Class Counsel with the hope of a successful result for the Class.

### 3. Class Counsel Dedicated Enormous Resources to this Matter and Faced Significant Risks to Successfully Resolve this Case

Class Counsel have dedicated tremendous time, effort, and capital to this litigation, and they have done so entirely on a contingent basis, even after the Court's order granting the interim attorneys' fee award in December 2021. Since January 1, 2021, Class Counsel have invested 53,880.80 hours of attorney and other legal professional time through January 31, 2024 (Co-Lead Class Counsel through March 31, 2024).[11] (Bruckner Decl. ¶ 29.) In total, from case inception through January 31, 2024 (Co-Lead Class Counsel through March 31, 2024), Class Counsel have

---

[11] Class Counsel have limited the time period of their reported time and lodestar for the purpose of this motion. They will continue to dedicate significant time and resources to the litigation until it is resolved.

19

invested 154,507.66 hours of attorney and other legal professional time. (Bruckner Decl. ¶ 29.) Co-Lead Class Counsel have worked diligently to ensure that throughout the case, Class Counsel's efforts have been coordinated, detailed, vigorous, and efficient. (Bruckner Decl. ¶ 29.) The result of these efforts is a substantial recovery for the DPPs: settlements totaling over $284 million.

In addition to the recent major litigation outcomes described in Section II above, Class Counsel efficiently and effectively litigated this case from the outset:

- DPP Co-Lead Class Counsel filed the first antitrust complaint on behalf of Broiler chicken purchasers in September 2016. This complaint was the product of DPP Co-Lead Class Counsel's extensive preparation, independent investigation, and research into the Broiler chicken industry. There were no prior or contemporaneous government investigations or enforcement proceedings; instead, the U.S. Department of Justice's ("DOJ") related investigation and criminal proceedings followed this civil litigation. Class Counsel prepared and filed multiple amended and consolidated complaints reflecting information Class Counsel obtained from additional investigation and discovery. (Bruckner Decl. ¶ 4.)

- Class Counsel developed numerous case management plans and coordinated with indirect purchaser class counsel, direct action plaintiffs, the DOJ, and Defendants to implement those plans. (Bruckner Decl. ¶ 6.)

- Class Counsel prepared and filed comprehensive memoranda of law: (a) in opposing Defendants' motions to dismiss, (b) regarding numerous discovery issues, (c) in support of class certification, including expert reports and other exhibits, (d) in opposing Defendants' motions for summary judgment and motion to exclude DPPs' expert, (e) supporting motions related to trial, and (f) seeking preliminary and final approval of many settlements. (*See, e.g.*, Bruckner Decl. ¶¶ 5, 8, 9.)

- Class Counsel conducted extensive fact and expert discovery, including preparing for and taking well over 100 Rule 30(b)(1), 30(b)(6), and expert depositions. Class Counsel reviewed, analyzed, and coded a database containing more than 8 million documents and other records from Defendants and third parties. (Bruckner Decl. ¶ 5.)

- Class Counsel consulted with experts during their pre-suit investigation, and during the discovery and merits phases of this case. This includes their agricultural economist Dr. Colin Carter, who prepared reports in support of class certification and the merits. Dr. Carter was subject to extensive briefing on Defendants' *Daubert* motions, which the Court ultimately denied (*see* ECF No. 6641). (Bruckner Decl. ¶¶ 7, 8, 9.)

- Class Counsel engaged in extensive adversarial negotiations and mediations and ultimately negotiated settlements with all Defendants. (Bruckner Decl. ¶¶ 12, 16.)

- Co-Lead Class Counsel have prepared and executed the Court-approved class notice and settlement claims administration programs. (Bruckner Decl. ¶ 17.)

Class Counsel will continue to vigorously litigate this case until complete. With respect to the settlements, Class Counsel will seek final approval of the remaining settlements preliminarily approved by this Court, supervise all aspects of settlement and claims administration, and supervise the final distribution of settlement proceeds to qualified DPP claimants. Class Counsel will vigorously litigate the pending appeal of final approval of the Simmons settlement and any objections or appeals of other settlements. (Bruckner Decl. ¶ 15.)

In addition to the 154,507.66 hours of attorney and other legal professional time invested in this case, to date Class Counsel have incurred over $10 million in total expenses.[12] (Bruckner Decl. ¶ 31.) DPPs will continue to incur expenses until the case is completed. These expenses,

---

[12] (*See* Section V below.)

discussed in detail below, were required to frame the complex issues of fact and law in the pleadings, to defeat Defendants' motions to dismiss, to effectively manage the case, to undertake well-organized discovery of a complex antitrust case against enormous (and enormously wealthy) business entities, to support class certification, to oppose Defendants' motions for summary judgment, and to try the case through verdict. (Bruckner Decl. ¶¶ 31-39.)

### 4.  Comparable Cases Provide the Basis for this Request

"Another relevant data point for the market price for attorneys' fees is those awarded in 'analogous class action settlements.'" *Hale*, 2018 WL 6606079 at *10 ("Courts within the Seventh Circuit, and elsewhere, regularly award percentages of 33.33% or higher to counsel in class action litigation."); *see also Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) (noting the relevance of "attorneys' fees from analogous class action settlements"); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015) ("Attorney's fee awards in analogous class action settlements shed light on the market rate for legal services in similar cases."); *Gaskill I*, 160 F.3d 361, 363 (7th Cir. 1998) (collecting cases).

As set forth is Section IV.A.1 above, in this instance DPPs' requested fee *is* the market rate, and this Court has awarded 33 1/3% in this case to DPPs and CIIPPs. (*See* ECF Nos. 5229 (awarding 33 1/3% to DPP Class Counsel and noting: "There is simply little to no precedent recommending anything other than an award of 33 percent. With the only real evidence of the "market rate" being one-third, that is what the Court will award."); 5543 (awarding 33 1/3% *including interest* to CIIPP Class Counsel).)

### B.  A Lodestar Cross-Check Confirms that the Fee Requested is Proper

While the percentage-of-the-fund method is favored in the Seventh Circuit for calculating fees in common fund cases, *In re Dairy Farmers*, 80 F. Supp. 3d at 844, courts may use a lodestar cross-check to understand class counsel's time and effort and determine the reasonableness of a

fee. *Id.* But this cross-check is not required. *Rohm & Haas II*, 658 F.3d at 636 ("[C]onsideration of a lodestar check is not an issue of required methodology"); *accord Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 204 (N.D. Ill. 2018) ("The Court is not required to check its percentage-of-fee determination against the lodestar."); *Wright v. Nationstar Mortg. LLC*, No. 1:14-cv-10457, 2016 WL 4505169, at *17 (N.D. Ill. Aug. 29, 2016) (noting that a lodestar cross-check is not required); *Heekin*, 2012 WL 5878032, at *2 (criticizing a class member for "overstat[ing] the importance of the lodestar method in this Circuit."). In fact, "[t]he use of a lodestar cross-check has fallen into disfavor." *George v. Kraft Foods Glob., Inc.*, Nos. 1:08-cv-03799; 1:07-cv-01713, 2012 WL 13089487, at *3 (N.D. Ill. June 26, 2012). And the Seventh Circuit has "never ordered [a] district judge to ensure that the lodestar result mimics that of the percentage approach." *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998).

The lodestar is derived by multiplying the hourly rate of the attorney or professional by the number of hours reasonably expended. *Wright*, 2016 WL 4505169, at *14. A reasonable hourly rate is one that is consistent with the common rate in the "community for similar services by lawyers of reasonably comparable skill, experience and reputation." *See Jeffboat, LLC v. Dir., Office of Workers' Comp. Progs.*, 553 F.3d 487, 489 (7th Cir. 2009); *see also Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003) (holding that the attorney's billing rate for comparable work is generally appropriate).

The base lodestar is often augmented by a multiplier that considers factors that affect the amount of the fees awarded. *See Cook*, 142 F.3d at 1015; *Florin*, 34 F.3d at 565; *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 255 (7th Cir. 1988). These include the complexity of the legal issues, the degree of success, and the public interest advanced by the litigation. *Paz v. Portfolio Recovery Assocs., LLC*, 924 F.3d 949, 954 (7th Cir. 2019); *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir.

2010). Also considered is the risk of non-payment. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991).

A lodestar cross-check in this case supports the requested fee. Class Counsel's base lodestar using historical rates is $41,480,268.50 for January 1, 2021 through January 31, 2024 (Co-Lead Class Counsel through March 31, 2024), and $92,393,630.25 since case inception.[13] The average hourly rate by Class Counsel and their associated professional staff is approximately $598 (with a cap of $350.00 per hour on document review (*see* Bruckner Decl. ¶ 29)), a rate comparable to those charged by other law firms with similar experience, expertise, and reputation, for similar services in the nation's leading legal markets.

Awarding a 33 1/3% fee as requested would result in a *negative* multiplier of 0.8987. *See In re TFT-LCD (Flat-Panel) Antitrust Litig.*, MDL 1827, 2013 WL 149692, at *1 (N.D. Cal. Apr. 3, 2013) (negative multiplier of 0.86 confirmed amount of attorneys' fees requested was fair and reasonable). Overall, considering the earlier fee award (at which time the multiplier was 1.114, *see* ECF No. 4551 at 26), the multiplier equals 0.9989. Such a multiplier is well within accepted ranges,[14] and is warranted here.

---

[13] Since the inception of this litigation Co-Lead Counsel have submitted Class Counsel's lodestar and expense information to the Court *in camera* on a quarterly basis and have further reviewed it in preparing this motion. (Bruckner Decl. ¶¶ 30, 38.)

[14] *E.g.*, *Cook*, 142 F.3d at 1015 (upholding the district court's decision to "enhance[] the lodestar by a multiplier of 1.5"); *Florin*, 34 F.3d at 565 ("Because class counsel have requested a multiplier of 1.53, the district court need not worry about exceeding what we have suggested is a sensible ceiling of double the lodestar."); *Harman*, 945 F.2d at 976 (internal citations omitted) (observing that "[m]ultipliers anywhere between one and four have been approved."); *Skelton*, 860 F.2d at 258 (suggesting "that a doubling of the lodestar would provide a sensible ceiling."); *In re Dairy Farmers*, 80 F. Supp. 3d at 849 (awarding a fee that equated to a multiplier of 1.34 on a lodestar cross-check); *Standard Iron Works v. ArcelorMittal*, No. 1:08-cv-05214, 2014 WL 7781572, at *2 (N.D. Ill. Oct. 22, 2014) (finding that the requested lodestar multiplier of approximately 1.97 was "well within the range of reasonable multipliers awarded in similar contingent cases."); *Schulte*, 805 F. Supp. 2d at 598 (approving an award that "represent[s] a multiplier of less than 2.5, which is not an unreasonable risk multiplier."); *In re Lawnmower*

## V.     CLASS COUNSEL'S LITIGATION EXPENSES WERE REASONABLY INCURRED AND SHOULD BE REIMBURSED

Under the common fund doctrine, class counsel customarily are entitled to reimbursement of reasonable expenses incurred in the litigation. Fed. R. Civ. P. 23(h); *Mills*, 396 U.S. at 392 (recognizing the right to reimbursement of expenses where a common fund has been produced or preserved for the benefit of a class); Alba Conte, *Attorney Fee Awards* § 2.08, at 50-51 (3d ed. 2004). Reimbursable expenses are those "that are consistent with market rates and practices." *In re Ready-Mixed Concrete*, 2010 WL 3282591, at *3; *see also In re Synthroid*, 264 F.3d at 722 ("Reducing litigation expenses because they are higher than the private market would permit is fine; reducing them because the district judge thinks costs too high in general is not.").

The litigation expenses in this case can be categorized into five categories: (1) expenses paid by the common Litigation Fund; (2) expenses incurred individually by each firm (primarily travel-related expenses); (3) administration expenses (authorized in each of the monetary settlements and paid directly from the respective settlement fund to the Court-approved administrator); (4) escrow fees; and (5) taxes. Expenses in each of these categories are described in detail in the Bruckner Decl. ¶¶ 31-40 and its exhibits, and were reasonably necessary to advance the interests of the DPP Class and to obtain the favorable results achieved. Due to the risk that they might never be recovered, Class Counsel endeavored to keep expenses to a minimum.

---

*Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1015 (E.D. Wis. 2010) (awarding a fee that represented a multiplier of 2.07 on a lodestar cross-check and recognizing that "the mean risk multiplier in cases involving class settlements comparable in size to the present settlement is 2.70.") (citing Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees & Expenses in Class Action Litigation: 1993–2008*, 7 J. OF EMPIRICAL LEGAL STUD. 248, 274 tbl.15 (2010)); *accord In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 572 (9th Cir. 2019) (affirming lodestar multipliers of 1.5521 and 1.22 as "modest or in-line with others"); *Kelly v. Wengler*, 822 F.3d 1085, 1093, 1105 (9th Cir. 2016) (affirming lodestar multipliers of 2.0 and 1.3); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (upholding a lodestar multiplier cross-check showing a multiplier of 3.65).

In total, Class Counsel have incurred over $10 million in expenses throughout this litigation. (Bruckner Decl. ¶ 31.) This Court has previously approved reimbursement of expenses totaling $8,969,346.65. (ECF Nos. 5229 ($4,500,000.00 reimbursement for litigation fund and individual firm expenses), 7086 ($4,469,346.65 (reimbursement for litigation fund expenses from the Mar Jac, Harrison, Simmons, Mountaire, and O.K. Foods settlements).) Presently, litigation expenses totaling $1,029,448.72[15] are unreimbursed. In notifying DPP Class members of the recent settlements, Class Counsel informed DPP Class members that they would seek repayment of the first two categories of litigation expenses in an amount not to exceed $4 million. (*See* ECF No. 7174-2, Court-approved long form notice.)

In addition to the litigation expenses paid by Class Counsel, $407,720.15 has been paid to administrators, $29,000.00 has been paid in escrow fees, and $75,434.68 has been paid in taxes directly from the settlements at issue. (Bruckner Decl. ¶ 24.) As such, the expenses to be deducted from the settlement recoveries at issue in calculating the net attorneys' fee award equal $6,010,950.20. (Bruckner Decl. ¶ 40.) Accordingly, DPPs respectfully request that the Court approve these expenses and that the Court award reimbursement of litigation expenses in the amount of $1,029,448.72 to be paid *pro rata* from the HRF and Koch settlement proceeds.[16] As set forth above, the Court previously approved an interim payment of expenses from the Mar Jac, Harrison, Simmons, Mountaire, and O.K. Foods settlements. Accordingly, the DPPs are limiting the source of the expenses sought in this motion to the HRF and Koch settlements.

---

[15] $527,880.28 in individual firm expenses and $501,568.44 in litigation fund expenses.

[16] While Class Counsel have included the Simmons, Koch, and HRF settlements in their calculation of the funds upon which attorneys' fees and litigation expenses would be awarded, Class Counsel will not take any fees or expenses until they are finally approved and any appeals are resolved in favor of the DPP Class.

Additionally, Class Counsel requests that the Court approve payment of $100,000.00 for the payment of past unaccounted for and future litigation expenses, to be paid *pro rata* from the HRF and Koch settlement proceeds.[16] DPP Class members were provided notice of this request. (*See* ECF No. 7174-2, Court-approved long form notice.) Many of the costs described above and in the accompanying attorney declarations are not one-time expenses; they are ongoing and will continue until the case is complete. (Bruckner Decl. ¶ 41.) Co-Lead Class Counsel will, of course, endeavor to keep costs at a minimum. Allowing a portion of class settlement funds to be used for past unaccounted for and future expenses is a well-accepted practice. *See, e.g.*, *In re Pork Antitrust Litig.*, No. 0:18-cv-01776-JRT (ECF No. 1424) (D. Minn. July 22, 2022) (Bruckner Decl. Ex. 23) (awarding attorneys' fees at 33 1/3 percent and approving incurred and future litigation expenses totaling $5 million); *Newby v. Enron Corp.*, 394 F.3d 296, 302 (5th Cir. 2004) (affirming 37.5 percent set aside for establishment of a $15 million litigation expense fund from the proceeds of a partial settlement); *In re Auto Parts Antitrust Litig.*, No. 12-2311, 2018 WL 7108072, at *2 (E.D. Mich. Nov. 5, 2018); *In re Auto Parts Antitrust Litig.*, No. 12-2311, 2016 WL 9459355, at *2 (E.D. Mich. Nov. 29, 2016) (approving request to set aside nearly $10 million for use in future litigation); *In re Auto Parts Antitrust Litig.*, No. 12-2311, 2015 WL 13715591, at *2 (E.D. Mich. Dec. 7, 2015); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. 07-5634, 2015 WL 3396829, at *3 (N.D. Cal. May. 26, 2015); *In re Pressure Sensitive Labelstock*, 584 F. Supp. 2d at 702; *In re WorldCom, Inc. Sec. Litig.*, No. 02-3288, 2004 WL 2591402, at *22 (S.D.N.Y. Nov. 12, 2004); *In re California Micro Devices Sec. Litig.*, 965 F. Supp. 1327, 1337 (N.D. Cal. 1997); *see also* MANUAL FOR COMPLEX LITIGATION (Fourth), § 13.21 ("[P]artial settlements may provide funds needed to pursue the litigation . . . ."). If the Court grants DPPs' request for $100,000 for ongoing and future expenses, Class Counsel will provide the Court a quarterly accounting of payment of

27

these expenses. Any unused portion at the conclusion of the case would be added to any remaining settlement funds for a final distribution.

## VI.    THE CLASS REPRESENTATIVES SHOULD RECEIVE SERVICE AWARDS

Courts regularly grant service awards to class representatives in recognition of the time and effort they invested in the case. Like in this case, class representatives frequently contribute to the successful resolution of a class action by assisting with the preparation of the pleadings, participating in discovery, continually providing information to class counsel, and participating in settlement negotiations. *Williams v. Rohm & Haas Pension Plan*, No. 4:04-cv-00078, 2010 WL 4723725, at \*2 (S.D. Ind. Nov. 12, 2010), *aff'd*, 658 F.3d 629 (7th Cir. 2011) ("Because a named plaintiff plays a significant role in a class action, an incentive award is appropriate as a means of inducing that individual to participate in the expanded litigation on behalf of himself and others."). Their contributions undoubtedly benefit the DPP Class as a whole, and courts in this circuit often see fit to compensate class representatives for their service to the class. *See, e.g.*, *Cook*, 142 F.3d at 1016 (affirming $25,000.00 service award).

Courts consider various factors when determining an appropriate service award, including "the actions the [representative] has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the [representative] expended in pursuing the litigation." *Cook*, 142 F.3d at 1016 (citing *Spicer v. Chicago Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1267 (N.D. Ill. 1993)).

As specifically set forth in each of their declarations (*see* Bruckner Decl. Exs. 24-28), each of the five Class Representatives: Maplevale Farms, Inc.; John Gross and Company, Inc.; Ferraro Foods, Inc. and Ferraro Foods of North Carolina, LLC; Joe Christiana Food Distributors, Inc.; and Cedar Farms Co., Inc. dedicated their valuable time to this litigation. Throughout this lengthy litigation, the Class Representatives advised Class Counsel and approved pleadings, reviewed and

responded to written discovery, searched for, gathered, preserved, and produced documents, prepared for and stood for depositions, kept up to date on the progress of the case, and performed other similar activities. (Bruckner Decl. ¶ 45; *see also* ECF Nos. 3962-39 to 3962-43 (declarations from each class representative in support of DPPs' motion for class certification).) They were never promised that they would receive any additional compensation for leading the case. (*Id.* ¶ 45.) Rather, they devoted their time and efforts solely to recovery some portion of their own overcharges and to enable other DPP Class members to recover theirs. (*Id.*) Their help has been instrumental to the success of this litigation and, DPPs respectfully submit, each deserves an additional service award in the amount of $15,000 (bringing the total amount of service awards for each class representative to $30,000).[17]

## VII.    CONCLUSION

For these reasons, DPPs respectfully request that this Court award 33 1/3% of the Net Settlement Fund or $37,279,851.67 as attorneys' fees, $1,029,448.72 as reimbursement for litigation expenses, $100,000.00 as a future litigation expense fund, and $15,000.00 in service awards to each of the five named Class Representatives.

---

[17] The Class Representatives each received a $15,000.00 interim service award in December 2021 for their hard work and dedication to this matter. (*See* ECF No. 5229.) Co-Lead Class Counsel submit that a further award is warranted here as the Class Representatives continued supporting this litigation through trial. (Bruckner Decl. ¶ 44.)

Date: May 1, 2024

*/s/ W. Joseph Bruckner*
W. Joseph Bruckner (*Pro Hac Vice*)
Brian D. Clark (*Pro Hac Vice*)
Simeon A. Morbey (*Pro Hac Vice*)
Kyle Pozan (IL #6306761)
Arielle S. Wagner (*Pro Hac Vice*)
Stephen M. Owen (*Pro Hac Vice*)
**LOCKRIDGE GRINDAL**
**NAUEN P.L.L.P**.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T: (612) 339-6900
F: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
samorbey@locklaw.com
kjpozan@locklaw.com
aswagner@locklaw.com
smowen@locklaw.com

Clifford H. Pearson (*Pro Hac Vice*)
Daniel L. Warshaw (*Pro Hac Vice*)
Bobby Pouya (*Pro Hac Vice*)
Michael H. Pearson (*Pro Hac Vice*)
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
T: (818) 788-8300
F: (818) 788-8104
cpearson@pwfirm.com
dwarshaw@pwfirm.com
bpouya@pwfirm.com
mpearson@pwfirm.com

Bruce L. Simon (*Pro Hac Vice*)
Jill M. Manning (*Pro Hac Vice*)
**PEARSON WARSHAW, LLP**
555 Montgomery Street, Suite 1205
San Francisco, CA 94111
T: (415) 433-9000
F: (415) 433-9008
bsimon@pwfirm.com
jmanning@pwfirm.com

*Direct Purchaser Plaintiffs' Co-Lead Class*
*Counsel*

Steven A. Hart (IL #6211008)
Brian Eldridge (IL #6281336)
**HART MCLAUGHLIN & ELDRIDGE, LLC**
1 South Dearborn, Suite 1400
Chicago, IL 60603
T: (312) 955-0545
F: (312) 971-9243
shart@hmelegal.com
beldridge@hmelegal.com

*Direct Purchaser Plaintiffs' Liaison Class*
*Counsel*