UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 16 C 8637<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Sysco Corporation sued Pilgrim's Pride Corporation in this District alleging price fixing in the Broiler chicken market. Sysco also sued Pilgrim's in the District of Minnesota alleging price fixing in the beef and pork markets.

In August and September 2022, counsel for the parties memorialized a settlement of all three cases in a chain of emails. On August 24, counsel for Pilgrim's emailed counsel for Sysco with the statement, "We have a deal at [$$] for settlements of Broilers, Pork, and Beef antitrust cases." *See* R. 6853-2. He also stated that the parties would "figure out the allocation and draw up the agreements." *See id.* The next day, Pilgrim's counsel again sent an email "confirming that . . . Pilgrim's [is] offering [$$] for a global settlement of Broilers, Pork, and Beef antitrust cases." *See* R. 6853-3. On September 9, 2022, Sysco's counsel responded saying, "sorry for the delay. We accept." *See id.*

In the ensuing months, the parties prepared a draft settlement agreement for each of the three cases. The final drafts allocated the total settlement amount among the three cases. *See* R. 6853-7 at 8, 14; R. 6853-8 at 9, 16. The drafts also included provisions that the agreement would comply with the defense Judgment Sharing

Agreement ("JSA") and a "most favored nation" clause regarding allocation. *See* R. 6853-1 ¶¶ 20-21; R. 6853-7 at 9. In December 2022, Sysco's counsel sent the final agreements, which Pilgrim's counsel accepted by email, asking Sysco's counsel to sign them. *See* R. 6853-8.

The written agreements, however, were never signed because Sysco's litigation funder, Burford Capital, objected to the settlement. This eventually led to Sysco assigning its claims to a Burford entity called Carina Ventures LLC. It is Carina that opposes Pilgrim's motion to enforce the purported settlement agreement which is now before the Court.

### A.     Agreement

Carina argues that the parties did not reach an agreement for two reasons: (1) the parties agreed that a written agreement was necessary to "manifest assent" and also to comply with the requirements of the JSA, *see* R. 6976 at 9-11; and (2) Pilgrim's has not "performed any of its obligations under the supposed settlement," *see id.* at 12. Neither argument is sufficient to undermine the objective evidence of agreement that is in the record.

It is unsurprising that the parties anticipated a written agreement and that they would not perform until the written agreements were signed. Most motions to enforce arise in the context of a lack of final, signed written agreement, and performance is often not appropriate until a court enforces the agreement. The question is not whether the parties failed to execute a final written agreement—that is of course what happened here. The question is whether the steps the parties

2

completed—the emails and drafts exchanged—are sufficient to establish an agreement from an objective perspective. *See Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007) (explaining that "whether a 'meeting of the minds' occurred depends on the parties' objective conduct, not their subjective beliefs").

The objective facts here are emails from August, September, and December 2022 that demonstrate an agreement. There is also no question as to the terms of the agreement because the parties finalized written draft agreements memorializing the terms in detail. The only issue is that those written agreements were never signed. Nevertheless, as discussed, the parties indicated their agreement by email. That is sufficient objective evidence of an agreement to enforce it.

Carina also argues that the parties "did not agree on several material terms." R. 6976 at 12. According to Carina, "[a]s of September 2022, the parties had not agreed on several material terms: (1) Qualified Settlement language under the JSA; (2) the terms and operation of the [most favored nation clause]; (3) the volume of Sysco's assignments to its customers; and (4) other material terms." *Id.* But all of these terms were incorporated into the written draft agreements Sysco sent to Pilgrim's in December 2022. Carina does not contend otherwise.

In any event, these terms were not material. The "heart" of the agreement was to dismiss the claims in exchange for a total amount of money allocated across the three cases. *See Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 508 (7th Cir. 2007). The email communications and draft written agreements demonstrate that the parties reached such an agreement.

3

### B. Laches

Carina also argues that Pilgrim's waited too long to enforce the agreement. The agreement was initially reached in September 2022, and further finalized in December 2022. Pilgrim's filed its motion in September 2023.

Carina argues that Pilgrim's strategically waited until the Court denied summary judgment on the Track 1 claims, making Sysco's remaining Track 2 claims more valuable. Perhaps this is true. But the initial delay was not caused by Pilgrim's, but by Burford's attempt to enjoin the settlement. It was only with the settlement of the dispute between Sysco and Burford, followed by the assignment of Sysco's claims to Carina, that it became clear that Carina would not honor Sysco's settlement agreement with Pilgrim's. Pilgrim's filed this motion three months after Sysco and Carina filed their joint motion to substitute Carina for Sysco as the party in interest in this case. That is not an unreasonable delay by Pilgrim's.

### C. Jurisdiction

Lastly, Carina argues that the Court lacks jurisdiction to enforce settlement of the claims pending in the District of Minnesota. Carina acknowledges that the Court has the inherent power "to enforce an agreement to settle *a case pending before it*," *Wilson*, 46 F.3d at 664 (emphasis added by Carina), but argues that this power does not extend to claims *not* before this Court like the beef and pork claims in Minnesota. *See* R. 6976 at 7-8. Furthermore, Carina argues, the Court does not have the power to enforce settlement of the Minnesota claims because they are part of a multi-district

litigation for which the court in Minnesota has, what Carina describes as, "exclusive jurisdiction" per the MDL statute, 28 U.S.C. § 1407(b).

If this Court does not have jurisdiction to enforce the global settlement the parties reached here, the only alternative would be for Pilgrim's to file a separate complaint seeking enforcement before yet another court. But according to Carina's logic, even this "would tread on the [Minnesota] court's inherent authority over those cases, in violation of longstanding principles of comity among federal courts." R. 7227 at 3. Furthermore, the reverse would also be true, i.e., the Minnesota court also could not enforce the global settlement for fear of treading on *this* Court's jurisdiction. In other words, Carina's argument followed to its end would mean that no court has jurisdiction to enforce a global settlement across the two districts.

It cannot be that there is no court with jurisdiction to enforce the global settlement. As this Court has found, the parties reached an agreement. There must be some court that has the jurisdiction to enforce it. And because none of the possibilities avoid some "treading on" what Carina's considers to be another court's jurisdiction, this Court enforcing the agreement is no worse or better— jurisdictionally speaking—than any of the other possibilities.

The real solution to this apparent catch-22 is that enforcing the global settlement does not actually "tread on" *any* other court's jurisdiction as Carina's argument contends. Carina argues that enforcing the settlement would violate rules of "comity." But as the cases Carina cites demonstrate, "comity" generally concerns the priority of an earlier filed action over a later filed action in another court

5

concerning the same underlying operative facts. *See* R. 7227 at 3 (citing cases). The concern in that situation is that two courts addressing the same claims and facts in separate cases might issue conflicting rulings. That kind of comity has little relevance here. This Court exercising jurisdiction to enforce settlement of actions pending in Minnesota will not interfere with the Minnesota proceedings between Pilgrim's and Carina/Sysco—it will end them. There will no longer be any pending claims for which there is jurisdiction to interfere with. Concerns of comity cannot arise when there is no longer an action proceeding to which this Court should defer.

Carina's argument about the "exclusivity" of the MDL court's jurisdiction is similarly misleading. Certainly, an MDL court has exclusive jurisdiction to manage MDL claims that have been transferred to it. The statutory provision Carina cites concerns delineation of jurisdiction between an MDL court and a "transferee" court, to ensure that there is no conflict in the proceedings. The statute provides that MDL proceedings "*shall* be conducted by a judge or judges to whom such actions are assigned by the judicial panel on multidistrict litigation." 28 U.S.C. § 1407(b). And Carina cites courts that have described this provision as conferring "exclusive" jurisdiction on the MDL court. *See* R. 7227 at 5 (citing, e.g., *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006)). But for reasons similar to those just articulated, settlement of some of the MDL claims does not interfere with the MDL court's jurisdiction over the claims that continue. By enforcing the global settlement agreement, this Court is not making any ruling or finding that the Minnesota court will be forced to contend with in the future.

The statute's concern regarding the order of jurisdiction transfer in an MDL case is simply not implicated here by enforcing the global settlement.

At bottom, Pilgrim's and Carina/Sysco are parties before this Court. The Court has jurisdiction over the broiler pricing fixing claims Sysco brought against Pilgrim's and assigned to Carina. In settling those claims, Pilgrim's and Sysco also agreed to settle the Minnesota claims. Settlement of claims beyond those expressly alleged in a single complaint is an unsurprising and common characteristic of settlement agreements, because the goal of settlement is often to globally extinguish litigation between the parties involved. The fact that this Court does not have jurisdiction over the proceedings of those claims, does not mean that this Court does not have jurisdiction over the settlement agreement reached by Pilgrim's and Sysco, which binds Carina. *See Elysium Health, Inc. v. ChromaDex, Inc.*, 2023 WL 7037442, at *3 (2d Cir. Oct. 26, 2023) ("We discern no limiting rule that such an inherent authority is limited to settlement agreements that resolve only a single case [pending before it]."). The Court has jurisdiction to enforce the agreement because Sysco brought claims against Pilgrim's before this Court and then agreed to settle them. The Court has jurisdiction to enforce such an agreement, no matter the scope of the agreement's terms.

## Conclusion

Therefore, Pilgrim's motion to enforce [6851] is granted.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: June 14, 2024