**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*September 4, 2024 EUCP Trial* | Case No.: 1:16-cv-08637<br><br>Hon. Judge Thomas M. Durkin<br><br>Magistrate Judge Jeffrey T. Gilbert<br><br>**REDACTED VERSION** |

**DEFENDANTS' MOTION IN LIMINE TO PRECLUDE
PLAINTIFFS' EVIDENCE OF DAMAGES FOR THE YEARS 2013-2019**

# INTRODUCTION

This Court's summary judgment order rejected the plaintiffs' claims of concerted supply cuts in 2015-2016 and their theory of an "overarching conspiracy" spanning the class period. Instead, the Court ruled, "Plaintiffs are left with their claims of a conspiracy to reduce supply in 2008-2009 and 2011-2012. ***Those*** are the claims that will go to trial." Dkt. 7028 at 84-85 ("SJ Op.") (emphasis added). The experts who testified in prior phases of this litigation got the message: They disclaimed any reliance on post-2012 conduct, basing their damages ***only*** on the 2008-2009 and 2011-2012 conduct that survived summary judgment. Dr. David Sunding—the end-user consumer plaintiffs' (EUCPs') expert economist—has taken a different approach.

Sunding rejects the idea that pre-2013 conduct alone could have caused the damages he calculates. In Sunding's view, the effects of those supply restrictions dissipated long before the end of the 2012-2019 EUCP class period. Instead, Sunding maintains ███████████ ███████████████████████████████████████████████." Ex. 1, Sunding 6/6/24 Dep. 68:18-25 ("Sunding Dep."). That flatly contradicts this Court's decision, and it renders Sunding's 2013-2019 damages opinions inadmissible for two reasons.[1]

First, "[i]t is essential," in an antitrust case, "that damages reflect only the losses directly attributable to ***unlawful***" conduct. *MCI Commc'ns Corp. v. AT&T Co.*, 708 F.2d 1081, 1161 (7th Cir. 1983). But Sunding admits that he did not "parse out" or "isolate the effect" of the allegedly unlawful ***pre***-2013 supply cuts that "will go to trial" from the effects of the defendants' ***post***-2013 business decisions, which, under the Court's summary judgment order, can no longer serve as a basis for liability in this case. Sunding Dep. 21:22-22:15; *accord id.* at 40:8-41:3. A damages

---

[1] This motion addresses the 2013-2019 calculations only. The defendants reserve their objections to the rest of Sunding's testimony, including his calculation of 2012 damages.

model that fails to distinguish conduct on which the defendant won summary judgment calls for "precisely the type of 'speculation or guesswork' not permitted for antitrust jury verdicts." *MCI*, 708 F.2d at 1162 (vacating award for this reason).

Second, an expert may not offer opinions—or invite the jury to make findings—that contradict court orders. *See, e.g.*, *In re Dealer Mgmt. Sys. Antit. Litig.*, 581 F. Supp. 3d 1029, 1063 (N.D. Ill. 2022) (excluding expert opinion for this reason). Yet that is just what Sunding promises to do. Sunding testified repeatedly that "███████████████████████████████████████████████████████████████████████████████████████████████." Sunding Dep. 67:11-15 (emphasis added); *accord id.* at 32:21-33:9. That is unacceptable.

The EUCPs had every opportunity to adjust their damages model to fit what remains of this case after summary judgment. They chose not to. Defendants respectfully move under Federal Rules of Evidence 401, 402, and 702 for an order precluding the plaintiffs from introducing or relying on Sunding's damages opinions for the years 2013-2019 at trial.

## BACKGROUND

This case initially concerned allegations that poultry producers and an industry benchmarking service conspired to inflate the price of broiler chicken by artificially depressing supply. SJ Op. 66. The plaintiffs asserted that the conspiracy included "three discrete periods" of coordinated production cuts—2008-2009, 2011-2012, and 2015-2016—and that the manipulation of the Georgia Dock price index starting at some point in 2014. *Id.* at 66, 73. As a fallback, the plaintiffs claimed an "overarching conspiracy" that included all of the defendants' production decisions. *Id.* at 82-85. This Court disagreed.

The Court found the plaintiffs' claims of a continuing conspiracy to restrict supply after 2012 fundamentally at odds with the undisputed evidence. Supply "had been steadily increasing

2

since 2013." SJ Op. 66. And no reasonable jury looking at the "weak evidence of parallel conduct" and "paltry evidence" of inter-firm communications could find that any defendant engaged in concerted action in 2015-2016. *Id.* at 71. The Court also rejected the plaintiffs' fallback argument that "that the evidence of the 2008-09 and 2011-12 supply reduction is sufficiently strong to rehabilitate the weak evidence of conspiracy in 2015-16 and Georgia Dock" so that "a trial [could] be held on an 'overarching conspiracy.' " *Id.* at 84. That "left" the plaintiffs "with their claims of a conspiracy to reduce supply in 2008-09 and 2011-12." *Id.* at 84-85. "Those are the claims that will go to trial." *Id.* at 85. Nothing more.

Recognizing that its rulings "change[d] . . . the landscape" and "eliminat[ed] certain parts" of the plaintiffs' case, the Court allowed the plaintiffs' proposed experts to supplement their original opinions. Dkt. 6699 at 3:23-24, 12:21-22. Sunding's supplemental damages report was virtually unchanged. ███████████████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

3

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████

    ████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████

    ████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████

    ████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

4

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████

# ARGUMENT

The Court limited this case to claims of an alleged supply conspiracy between 2008 and 2012. The EUCPs had every opportunity to adjust their damages model accordingly. They chose not to, leaving the jury with no way to account for the effect of the Court's ruling. Under longstanding precedent, that failure compels exclusion of their damages evidence for the years 2013-2019. Moreover, unlike the experts who testified in earlier phases of this case, Sunding testified that he intends to tell the jury that the defendants maintained a conspiracy after 2012. That, too, compels exclusion.

## I. THE CLAIMED DAMAGES ADMITTEDLY INCLUDE EFFECTS OF LAWFUL CONDUCT

In every antitrust case, the "plaintiff must prove that his damages were caused by the *unlawful* acts of the defendant." *MCI*, 708 F.2d at 1161. Losses due to "*lawful* activities" are not recoverable. *Id.* That makes it "essential" that the plaintiff's claimed "damages reflect only the losses directly attributable to *unlawful*" conduct. *Id.* "When a plaintiff improperly attributes all losses to a defendant's illegal acts, despite the presence of significant other factors, the evidence does not permit a jury to make a reasonable and principled estimate of the amount of damages," but instead calls for "precisely the type of 'speculation or guesswork' not permitted for antitrust jury verdicts." *Id.* at 1162.

### A. Sunding Concedes That His Model Cannot Disaggregate Damages Caused by Pre-2013 Conduct

Although the EUCPs claim damages from 2012 through 2019, this Court's summary judgment order "eliminat[ed] certain parts" of that case. Dkt. 6699 at 3:23-24. It left just two

discrete periods of even potentially concerted action at issue in this litigation: the allegedly coordinated production cuts in 2008-2009 and 2011-2012. See SJ Op. 66, 84-85. ▇

▇ Sunding Dep. 68:18-25 (emphasis added); see id. at 20:16-21:5. ▇

▇ That is a problem for the EUCPs' attempt to seek 2013-2019 damages.[2]

The Seventh Circuit's decision in MCI is squarely on point. MCI alleged that AT&T engaged in twenty-two discrete acts of monopolization. 708 F.2d at 1163. MCI presented a study purportedly showing that AT&T's conduct had caused some $900 million in lost profits. Id. at 1160. The trial court granted summary judgment to AT&T on seven of those acts, and the jury rejected another five. Id. at 1163. But the jury found AT&T liable for the ten remaining acts of monopolization and awarded MCI $600 million, "a sum equal to two thirds the total damage figure claimed in MCI's aggregated lost profits study." Id. at 1093.

The Seventh Circuit vacated the award and remanded for a new damages trial. MCI, 708 F.2d at 1174. The court of appeals emphasized that "an antitrust plaintiff must prove that his damages were caused by the *unlawful* acts of the defendant" and not "*lawful* activities." Id. at

---

[2] ▇ But his year-by-year calculations still fail to disaggregate the *causes* of the asserted damages. He provides no basis for the jury to award damages after 2012 based only on conduct up through 2012.

6

1161. While "a plaintiff need not disaggregate damages among those acts found to be unlawful," *id.* at 1163, "[i]t is essential" that those "damages reflect only the losses attributable to **unlawful** competition," *id.* at 1161. MCI's lost-profits study made that impossible.

MCI, the court observed, had "assumed in the preparation of its damage study that all twenty-two of AT&T's acts charged were illegal." *MCI*, 708 F.2d at 1163. But the court and jury found for AT&T on twelve of them. That was a problem. MCI's study offered no "variation in the outcome depending on which" allegedly unlawful acts were ultimately proven. *Id.* There was nothing in the study to "permit the jury to adjust the damages in the event that AT&T were successful on any of the counts in the complaint." *Id.* "[W]ith no way to adjust the amount of damages to reflect" the court's summary-judgment ruling and the jury's findings, the court held, the jury had no non-speculative basis to calculate damages. *Id.*

Sunding's model shares the same fatal flaw. Just as in *MCI*, the plaintiffs here claimed damages based on allegations that the defendants had engaged in multiple instances of concerted action—namely, decisions to suppress production. Just as in *MCI*, the court cut back those allegations on summary judgment. But, just as in *MCI*, Sunding's opinions offer "no way to adjust the amount of damages" accordingly. *MCI*, 708 F.2d at 1162-63. That defect compels exclusion under *MCI* and a line of subsequent authorities that require experts to control for "nonconspiratorial factors" in their calculations. *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588, 593 (7th Cir. 1998) (affirming grant of summary judgment on damages on this ground); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 401 n.14 (7th Cir. 1993) (similar); *Gumwood HP Shopping Ps., L.P. v. Simon Prop. Grp., Inc.*, 221 F. Supp. 3d 1033, 1042 (N.D. Ind. 2016) (similar).

7

B.  **Sunding's Regression Does Not Solve the Problem**

The EUCPs cannot look to Sunding's regression to cure his admitted failure to disaggregate damages. ███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████. An antitrust plaintiff must "bridge the difference between supra-competitive prices *in general* and supra-competitive prices *attributable to*" illegal conduct. *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013) (emphasis added). After all, "the Sherman Act imposes no duty on firms to compete vigorously, or for that matter at all, in price." *Text Messaging*, 782 F.3d at 873. The statute forbids only *agreements* not to compete. *Id.* at 873-74. Independent decisions—even decisions that "generate even greater profits (compared to competitive pricing)"—are not illegal and cannot cause antitrust damages as a matter of law. *Id.* at 871-72; *cf. Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977).[3]

Under this court's summary judgment order, the claims going to trial—the only claims that can serve as a basis for liability—related to an alleged supply reduction conspiracy in 2008-2009

---

[3] For the same reason, ████████████████████████████████████████. Sunding Supp. Rep. at 33 (in heading). Section 1 does not forbid firms from choosing profit over market share, or from running their businesses in such a way that their margins increase. *See Text Messaging*, 782 F.3d at 874.

and 2011-2012. SJ Op. 71, 77-78, 84-85. The plaintiffs must accordingly offer the jury some way to discern what portion of the asserted overcharge from 2013-2019 was due to conduct from 2008-2012. *See MCI*, 708 F.2d at 1161. Because Sunding admits he has not done that, his calculations of 2013-2019 damages must be excluded.

## II. THE DAMAGES CALCULATIONS CONTRADICT THIS COURT'S DECISION

The EUCPs' calculations of 2013-2019 damages are inadmissible for the further reason that they defy this Court's summary judgment order. ███████████████████████████████████████████████████████████████████████████████████████████████████████. *See* SJ Op. 84-85; Sunding Dep. 22:6-8; *see* pp. 4-5, *supra*. That approach differs sharply from the testimony of the experts in earlier proceedings.

Unlike Sunding, the direct-action plaintiffs in the Track 1A trial argued that their experts' opinions "are not predicated upon *any* allegation or opinion of a supply-cut conspiracy in 2015-16, and, instead, rely on conduct in 2008-09 and 2011-12 that affected prices through 2019." Dkt. 6773 at 4; *see also id.* at 6; Dkt. 6819 at 122:14-16, 124:4-6, 124:17-20 (asserting that expert merely measured continued *effects* of pre-2013 conduct). The experts held that line at trial: They testified that their damages calculations were based solely on "the price effects" of conduct occurring in 2008-2009 and 2011-2012. Ex. 4, Tr. 2369:5-13, 2429:13-2430:10 (10/5/23); Ex. 5, Tr. 2648:10-2649:11 (10/10/23).[4] Sunding rejects that view.

Although Sunding contends that it took time for supply to rebound after cuts in 2012, he never calculated just how long those effects would linger and to what degree. ████████████████████████████████████████████████████████████████

---

4 ████████████████████████████████████████████████████████████████

9



A party may not offer evidence inconsistent with the Court's prior orders. *Dealer Mgmt. Sys.*, 581 F. Supp. 3d at 1063 (excluding opinion that contradicted precedent and court's motion-to-dismiss ruling); *Sonix Tech. Co. v. Publications Int'l, Ltd.*, No. 13-cv-2082, 2017 WL 4357425, at *12 (N.D. Ill. Oct. 2, 2017) (St. Eve, J.) (excluding expert testimony that "contradicts" court's prior order); *Miranda v. U.S. Sec. Assocs., Inc.*, No. 18-cv-734, 2019 WL 2929966, at *3 (N.D. Cal. July 8, 2019) (Koh, J.) (excluding testimony on matters ruled on at summary judgment). For that reason, too, Sunding's 2013-2019 damages must be excluded.

## CONCLUSION

For the foregoing reasons, the plaintiffs should be precluded from introducing or relying on Dr. Sunding's damages opinions for the years 2013-2019 at trial.

10

Dated: June 27, 2024

ARENTFOX SCHIFF LLP

By: */s/ Lawrence H. Heftman*
Lawrence Harris Heftman
Margaret A. Hickey
Kylie S. Wood
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Telephone: (312) 258-5500
maggie.hickey@afslaw.com
lawrence.heftman@afslaw.com
kylie.wood@afslaw.com

Robert J. Wierenga
Suzanne L. Wahl
350 South Main Street, Suite 210
Ann Arbor, MI 48104
Telephone: (734) 222-1500
robert.wierenga@afslaw.com
suzanne.wahl@afslaw.com

ROSE LAW FIRM

Bourgon Reynolds (admitted *pro hac vice*)
5100 W JB Hunt Dr #900
Rogers, AR 72758
Telephone: (479) 301-2444
Facsimile: (479) 301-2449
breynolds@roselawfirm.com

*Attorneys for Defendants Mountaire Farms Inc., Mountaire Farms, LLC and Mountaire Farms of Delaware, Inc.*

Respectfully submitted,

MOLOLAMKEN LLP

By: */s/ Megan Cunniff Church*
Megan Cunniff Church
Eugene A. Sokoloff
Jordan A. Rice
Lauren F. Dayton
Thomas P. Schubert
300 N. LaSalle Street, Suite 5350
Chicago, IL 60654
Telephone: (312) 450-6716
Facsimile: (312) 450-6701
mchurch@mololamken.com
esokoloff@mololamken.com
jrice@mololamken.com
ldayton@mololamken.com
tschubert@mololamken.com

KUTAK ROCK LLP

John P. Passarelli
1650 Farnam Street
Omaha, NE 68102
Telephone: (402) 346-6000
Facsimile: (402) 346-1148
john.passarelli@kutakrock.com

J.R. Carroll
Jeffrey M. Fletcher
Stephen M. Dacus
1277 E. Joyce Boulevard, Suite 300
Fayetteville, AR 72703-5585
Telephone: (479) 973-4200
Facsimile: (479) 973-0007
jr.caroll@kutakrock.com
jeffrey.fletcher@kuakrock.com
stephen.dacus@kutakrock.com

*Attorneys for Defendants O.K. Foods, Inc., O.K. Farms, Inc., and O.K. Industries, Inc.*

SHOOK HARDY & BACON LLP

By: /s/ *Lynn H. Murray*
Lynn H. Murray (#6191802)
111 S. Wacker Dr., Ste 4700
Chicago IL 60606
Telephone: (312) 704-7700
Facsimile: (312) 558-1195
lhmurray@shb.com

Laurie A. Novion (admitted *pro hac vice*)
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
lnovion@shb.com

CONNER & WINTERS

John R. Elrod (admitted *pro hac vice*)
Vicki Bronson (admitted *pro hac vice*)
4375 N. Vantage Drive, Ste. 405
Fayetteville, AR 72703
Telephone: (479) 582-5711
jelrod@cwlaw.com
vbronson@cwlaw.com

*Attorneys for Defendants Simmons Foods, Inc. and Simmons Prepared Foods, Inc.*

ARMSTRONG TEASDALE LLP

By: /s/ *Stephen Novack*
Stephen Novack (#2067587)
Stephen J. Siegel (#6209054)
100 North Riverside Plaza
Chicago, IL 60606
Telephone: (312) 419-6900
Facsimile: (312) 419-6928
snovack@atllp.com
ssiegel@atllp.com

*Attorneys for Defendants Koch Foods Incorporated, JCG Foods of Alabama LLC, JCG Foods of Georgia LLC and Koch Meat Co., Inc.*

VEDDER PRICE P.C.

By: /s/ *Gregory G. Wrobel*
Gregory G. Wrobel (#3122900)
222 N. LaSalle Street
Chicago, IL 60601
Telephone: (312) 609-7722
Facsimile: (312) 609-5005
gwrobel@vedderprice.com

JORDAN PRICE WALL GRAY JONES & CARLTON, PLLC

Henry W. Jones, Jr. (admitted *pro hac vice*)
1951 Clark Avenue
Raleigh, NC 27605
Telephone: (919) 828-2501
Facsimile: (919) 834-8447
hjones@jordanprice.com

*Attorneys for Defendant House of Raeford Farms, Inc.*