# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | Case No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin Magistrate Judge Jeffrey T. Gilbert |
| All Commercial and Institutional Indirect Purchaser Plaintiff Actions | |

## MEMORANDUM OF LAW IN SUPPORT OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' UNCONTESTED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS HOUSE OF RAEFORD, KOCH FOODS, MOUNTAIRE, O.K. FOODS, SANDERSON FARMS, SIMMONS FOODS, AGRI STATS, CASE FARMS, CLAXTON, FOSTER FARMS, PERDUE, AND WAYNE FARMS; APPROVAL OF AMENDED HARRISON POULTRY SETTLEMENT; AND APPROVAL OF CIIPPS' SETTLEMENT NOTICE PROGRAM[1]

---

[1] The "Settling Defendants" include: Harrison Poultry, Inc. ("Harrison Poultry"), House of Raeford Farms, Inc. ("House of Raeford"); Koch Foods, Inc., JCG Foods of Alabama, LLC., JCG Foods of Georgia, LLC, and Koch Meat Co., Inc. (collectively "Koch Foods"); Mountaire Farms, LLC and Mountaire Farms of Delaware, Inc. (collectively "Mountaire"); O.K. Foods, Inc., O.K. Farms, Inc., and O.K. Industries, Inc. (collectively "O.K. Foods"); Sanderson Farms, LLC (f/k/a Sanderson Farms, Inc.), Sanderson Farms Foods, LLC (f/k/a Sanderson Farms, Inc. (Foods Division)), Sanderson Farms Production, LLC (f/k/a Sanderson Farms, Inc. (Production Division)), and Sanderson Farms Processing, LLC (f/k/a Sanderson Farms, Inc. (Processing Division)) (collectively "Sanderson Farms"); Simmons Foods, Inc. and Simmons Prepared Foods, Inc. (collectively "Simmons Foods"); Agri Stats, Inc. ("Agri Stats"); Case Foods, Inc., Case Farms, LLC, and Case Farms Processing, Inc. (collectively "Case Foods"); Norman W. Fries, Inc. d/b/a Claxton Poultry Farms ("Claxton"); Foster Farms, LLC and Foster Poultry Farms (collectively "Foster Farms);" Perdue Farms, Inc. and Perdue Foods LLC (collectively "Perdue"); and Wayne Farms, LLC ("Wayne Farms"). Settlements with the Settling Defendants are collectively referred to herein as the "Settlements" or "Round 2 Settlements".

## TABLE OF CONTENTS

Page(s)

I.     INTRODUCTION .................................................................................................1

II.    BACKGROUND .................................................................................................3

III.   SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS ...............................6

       A.     The House of Raeford, Koch Foods, Mountaire, O.K. Foods, Sanderson Farms,
              and Simmons Foods Settlements. .....................................................................6

              1.     House of Raeford. ..................................................................................7

              2.     Koch Foods. ..........................................................................................7

              3.     Mountaire. .............................................................................................7

              4.     O.K. Foods. ...........................................................................................7

              5.     Simmons Foods ......................................................................................8

              6.     Sanderson Farms. ...................................................................................8

              7.     Other Terms of Monetary Settlements .....................................................8

       B.     Settlements with Agri Stats, Case Farms, Claxton, Foster Farms, Perdue, and
              Wayne Farms .................................................................................................9

       C.     Amended Harrison Poultry Settlement. ............................................................10

IV.    ARGUMENT ....................................................................................................10

       A.     The Proposed Settlements Satisfy the Standard for Preliminary Approval. ..........10

              1.     The Settlements are Within the Range of Possible Approval and Provide
                     Substantial Benefits to the Certified Class. ..............................................12

              2.     The Complexity, Length, and Expense of Further Litigation Eliminated by
                     the Settlements Favor Approval. .............................................................13

              3.     The Settlements Resulted from Arm's-Length Negotiation and Co-Lead
                     Counsel Believe the Settlements are in the Best Interests of the Class. ......13

              4.     The Stage of the Proceedings and Amount of Discovery Support Approval.
                     ...........................................................................................................15

V.     THE SETTLEMENTS ARE ON BEHALF OF A CERTIFIED LITIGATION CLASS AND THERE IS NO NEED TO RE-CERTIFY A SETTLEMENT CLASS. ..................16

VI.    CLASS MEMBERS PREVIOUSLY HAD A FINAL OPPORTUNITY TO OPT-OUT OF THE CERTIFIED CLASS AND NO FURTHER EXCLUSION PERIOD IS REQUIRED. ............................................................................................................16

VII.   THE COURT SHOULD APPROVE CIIPPS' PROPOSED NOTICE PROGRAM ........17

       A.     The Content and Form of the Proposed Notices are Fairly Balanced, Easy to Read, and Contain All Rule 23 Notice Requirements ............................................18

       B.     The Notice Plan is Tailored to This Class Action and Constitutes the Best Practicable Notice Under These Circumstances. ....................................................20

              1.     *Direct Mailed Mail and/or Email Notice to Claimants with a Known Mailing Address and/or Email Address.* ....................................................21

              2.     *Media Publication Campaign* ..................................................................22

              3.     *Informational Settlement Website and Toll-Free Telephone Number* .......23

IX.    THE COURT SHOULD SET A HEARING FOR FINAL APPROVAL OF THE ROUND 2 SETTLEMENTS, AND APPROVE A SCHEDULE FOR NOTICE .............25

VIII.  CONCLUSION...........................................................................................................26

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)......................................................................................... 24, 25, 28

*Aranda v. Caribbean Cruise Line, Inc.,* No. 12 C,
    4069, 2017 WL 818854 (N.D. Ill. March 2, 2017) .................................................. 32

*Armstrong v. Bd. of Sch. Dirs.*,
    616 F.2d 305 (7th Cir. 1980) ...................................................................... 11, 12, 14

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    302 F.R.D. 240 (N.D. Ill 2014)................................................... 28, 30, 32, 34

*City of Greenville v. Syngenta Crop. Prot.*,
    No. 3:10-CV-188, 2012 WL 1948153 (S.D. Ill. May 30, 2012) ................ 24, 25, 29

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ................................................................................ 11

*Downing v. Abbott Labs,*
    No. 23-1440, 2023 WL 6173468 (7th Cir. 2023) ................................................... 14

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
    768 F.2d 884 (7th Cir. 1985) .................................................................................. 11

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974).............................................................................................. 29

*Gaurtreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982) ................................................................................. 12

*Gehrich v. Chase Bank USA, N.A.*,
    316 F.R.D. 215 (N.D. Ill. 2016)............................................................................ 15

*Goldsmith v. Tech. Solutions Co.*,
    No. 92-C-4374, 1995 WL 17009594 n.2 (N.D. Ill. Oct. 10, 1995) ......................... 17

*Hossfeld v. Lifewatch, Inc.*,
    No. 13 C 9305, 2021 WL 1422779 (N.D. Ill. March 4, 2021) ................................ 24

*Hughes v. Kore of Indiana Enterprise, Inc.*,
    731 F.3d 672 (7th Cir. 2013) ................................................................. 24, 28, 29

iii

*In re Domestic Air Transp. Antitrust Litig.*,
    141 F.R.D. 534 (N.D. Ga. 1992) ................................................................ 32

*In re Lawnmower Engine Horsepower Mktg. & Sales Pracices Litig.*,
    733 F. Supp. 2d 997 (E.D. Wis. 2010) ...................................................... 16

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    No. 1:15-md-2627, 2022 WL 2128630 n.9 (E.D. Va. 2022) ...................... 22

*In re Mid-Atlantic Toyota Antitrust Litig.*,
    564 F. Supp. 1379 (D. Md. 1983) .............................................................. 13

*In re NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................ 12

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................... 18

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002) .................................................................. 12

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058 JST,
    2015 WL 9266493 (N.D. Cal. Dec. 17, 2015) .......................................... 18

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) .......................................... 10, 13, 17, 18

*Kleen Prod. LLC v. Int'l Paper Co.*,
    1:10-CV-05711,2017 WL 5247928 (N.D. Ill. Oct. 17, 2017) .................... 18

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015) ................................................................ 15

*Larsen v. Trader Joe's Co.*,
    No. 11-cv- 05188-WHO, 2014 WL 3404531 (N.D. Cal. Jul. 11, 2014) ................ 16

*Mangone v. First USA Bank*,
    206 F.R.D. 222 (S.D. Ill. 2001) .......................................................... 26, 30

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) .................................................................. 26

*Schulte v. Fifth Third Bank*,
    805 F. 560 (N.D. Ill. 2011) ....................................................................... 15

**Statutes**

28 U.S.C. § 1715(b) ........................................................................................ 24

28 U.S.C. §1920 ............................................................................................. 9

**Rules**

Fed. R. Civ. P. 23(e) ................................................................................ 11, 13

Federal Rule of Civil Procedure 23(c)(2)(B) ............................... 2, 18, 19, 21

Federal Rule of Civil Procedure 54(d)(1) ..................................................... 9

Rule 23 ................................................................................................... 19, 21

Rule 23(c)(2) ......................................................................................... 19, 20

**Other Authorities**

2 McLaughlin on Class Actions § 6:21 (19th ed.) ....................................... 16

2 NEWBERG ON CLASS ACTIONS, § 11.24 (3d ed. 1992) ...................... 10

4 NEWBERG ON CLASS ACTIONS, § 11.53 (4th ed. 2002) ..................... 18

4 NEWBERG ON CLASS ACTIONS, § 13.45 (6th ed. 2023) ................... 13

4 NEWBERG ON CLASS ACTIONS, § 13:18 (6th ed. 2023) ................... 15

Manual for Complex Litigation (4th) § 22.611 at 313 .................................. 16

Manual for Complex Litigation § 1.46 at 62, 64-65 ..................................... 11

Newberg, §11.25, at 38-39 ............................................................................ 10

## I.    INTRODUCTION

The Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs") respectfully move the Court for preliminary approval of settlements which, if finally approved, will fully resolve the CIIPPs' litigation in this matter and bring the CIIPPs' litigation to a close. CIIPPs have reached monetary settlements with Harrison Poultry,[2] House of Raeford, Koch Foods, Mountaire, O.K. Foods, Sanderson Farms, and Simmons Foods (collectively, "Round 2 Settlements"). In the aggregate, the settlements provide monetary consideration in the amount of forty-one million, two hundred fifty thousand dollars ($41,250,000). As discussed further herein, these settlements represent excellent recoveries for the commercial indirect class. When combined with the prior CIPPP settlements, these settlements bring the total monetary recovery for the CIIPPs to $145,140,000.00.[3] ECF No. 6634-1 at ¶7.

CIIPPs have also secured favorable, nonmonetary settlements with Agri Stats, Case Foods, Claxton Poultry, Foster Farms, Perdue, and Wayne Farms, all of whom prevailed against the CIIPP Class at summary judgment and were fully dismissed from the case. The CIIPP Class has agreed to not appeal or otherwise challenge the summary judgment orders in exchange for these Defendants agreeing to waive their recoverable costs as against CIIPP class members for prevailing at summary judgment. Although CIIPPs believe there is the possibility of success on

---

[2] CIIPPs previously reached a $2,800,000 settlement with Harrison Poultry, which this Court preliminarily approved on July 25, 2023. *See* ECF No. 6694. CIIPPs and Harrison Poultry have amended their agreement and CIIPPs seek approval of the Amended Settlement Agreement Between Commercial and Institutional Indirect Purchaser Plaintiffs and Defendant Harrison Poultry, as further discussed below.

[3] This total is inclusive of the finally approved CIIPP settlements with Defendants Fieldale, Amick, Peco, George's, Mar-Jac, Pilgrim's, and Tyson totaling $103,890,000 (ECF Nos. 1910, 3696, 4113, 5363, and 5536), and the $2,800,000 settlement with Harrison Poultry (*see* ECF No. 6694).

appeal, these settlements eliminate the risk of having to pay any recoverable costs if an appeal was lost. This Court previously granted preliminary and final approval of similar settlements between these same prevailing Defendants and the Direct Purchaser Plaintiffs ("DPPs"). *See, e.g.,* ECF Nos. 7179, 7311, 7423. It should likewise approve these settlements with CIIPPs for the same reasons.

As noted, CIIPPs also seek approval of an amended settlement with Harrison Poultry. This Court previously preliminarily approved CIIPPs' settlement with Harrison Poultry on July 25, 2023. *See* ECF No. 6694. And pursuant to that Order, Harrison Poultry made the requisite settlement payment. The Amended Harrison Poultry Settlement aligns and makes consistent the settlement with the other Round 2 Settlements that are the subject of this Motion, thereby allowing for a more streamlined and efficient administration of all of the Round 2 Settlements.

Finally, CIIPPs move the Court to approve their proposed forms of notice of the Round 2 Settlements to the Class, for permission to direct notice to the class, and for approval of their *pro rata* plan of allocation. The Court has approved CIIPPs' substantially similar notice program and forms of notice in connection with previous settlements, and it appointed A.B. Data as the Settlement Administrator. *See* ECF No. 5234. As discussed below, no reason exists to deviate from the CIIPPs' prior notice protocol, as it constitutes the best notice practicable under the circumstances in accordance with Federal Rule of Civil Procedure 23(c)(2)(B). And the Court has previously approved *pro rata* plans of allocation in connection with the previous settlements.

If finally approved, these Round 2 Settlements will fully resolve the CIIPPs' litigation of this matter.

## II.    BACKGROUND

This litigation commenced in September 2016, and on October 14, 2016, the Court appointed the undersigned as Interim Co-Lead Counsel for the CIIPPs. (ECF No. 144). CIIPPs alleged that Defendants conspired and combined to fix, raise, maintain, and stabilize the price of Broilers sold in the United States. *See* ECF No. 3929, (CIIPPs' Seventh Amended Consolidated Amended Complaint, (hereinafter, "Complaint") at ¶ 1. On January 27, 2017, all Defendants named at the time filed a motion to dismiss CIIPPs' complaint. ECF No. 292. The Court largely denied Defendants' motion on November 11, 2017. ECF No. 541. On February 20, 2018, CIIPPs amended their complaint to include Koch Foods as a Defendant. ECF No. 746. Discovery commenced in earnest and proceeded apace, though it subsequently slowed due to a stay requested by the United States Department of Justice, (*see* ECF Nos. 2302, 3153) and to the COVID-19 pandemic.

CIIPPs filed their operative Seventh Amended Consolidated Class Action Complaint on October 23, 2020. *See* ECF Nos. 3929 (redacted), 3931 (unredacted). Thereafter, CIIPPs settled and received preliminary and final approval of settlements with: (1) Fieldale for $1.4 million, (ECF Nos. 5517-1 at ¶9, 5536); (2) Amick for $2.95 million, (ECF Nos. 5517-1 at ¶12, 5536); (3) Peco for $3.525 million, (ECF Nos. 5517-1 at ¶14, 5536); (4) George's for $3.525 million, (ECF Nos. 5517-1 at ¶16, 5536); (5) Mar-Jac for $5.99 million, (ECF Nos. 5517-1 at ¶20, 5536); (6) Pilgrim's for $44 million (plus up to $1 million additional to be used for notice and settlement administration), (ECF Nos. 5517-1 at ¶19, 5536); and (7) Tyson for $42.5 million, (ECF Nos. 5517-1 at ¶18, 5536) (collectively, "Round 1 Settlements").

On May 27, 2022, after heavily contested briefing, dueling expert reports, and a two-day evidentiary hearing, this Court certified the CIIPPs' litigation classes. *See* ECF No. 5644.

The damages class is defined as:

> All entities that purchased Broilers[4] indirectly from a Defendant or named co-conspirator in an Indirect Purchaser State[5] for their own use in commercial food preparation from January 1, 2009, until July 31, 2019.
>
> Excluded from the [Indirect] class are: Natural persons who purchased Broilers for their personal use and not for commercial food preparation; purchases of Broilers directly from Defendants; purchases of Broilers for resale in unaltered form; purchases or [sic] Broilers from an intermediary who has further processed the Broiler; the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant; any federal, state governmental entities, any judicial officer presiding over this action and the members of her/her [sic] immediate family and judicial staff, any juror assigned to this action; and any co-conspirator identified in this action.

ECF No. 5644 at 3-4 & n.2, 55. The injunctive relief class consists of: "All entities that purchased Broilers indirectly from a Defendant or named co-conspirator in the United States for their own use in commercial food preparation from January 1, 2009, until July 31, 2019." *See* ECF No. 6566-

---

[4] "Broilers" are chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, and whole or in parts, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards. "Broilers" does not include dark meat chicken products, such as chicken thighs. The definition also does not include certain "further processed" products, which include any chicken meat that has been breaded, cooked, or "formed," such as patties, or nuggets; or products made from mechanically separated meat such as chicken sausages; or products that are ground, sliced, diced, or cubed. Marinated, seasoned, frozen and portioned products, that are not otherwise further processed, are included within the definition of Broilers. ECF No. 3968.

[5] The "Indirect Purchaser States" are: Arizona, California, the District of Columbia, Florida, Hawaii, Iowa, Illinois, Kansas, Massachusetts, Maine, Michigan, Minnesota, Missouri, Mississippi, Montana, North Carolina, North Dakota, Nebraska, New Hampshire, New Mexico, Nevada, New York, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Wisconsin, or West Virginia. CIIPPs seek damages for this class under the respective state laws. (ECF No. 5644 at 3-4, 55).

4

2. The foregoing classes exclude all persons and entities that previously filed a valid exclusion (*i.e.,* opt-out) from the litigation class as set forth in ECF No. 6566-5.

On July 25, 2023, this Court preliminarily approved a $2,800,000 Settlement between CIIPPs and Harrison Poultry. *See* ECF No. 6694. Consistent with the Court's preliminary approval order, CIIPPs deferred providing notice of that settlement until it could be combined with other settlements. *See* ECF No. 6694 at ¶5. CIIPPs here seek approval of an amended agreement with Harrison Poultry. The Amended Settlement Agreement merely makes the structure of the agreement consistent with the other Round 2 Settlements but does not alter the monetary amount provided to CIIPP class members.

On June 30, 2023, the Court granted summary judgment to Defendants Agri Stats, Case Foods, Claxton, Foster Farms, Perdue, and Wayne Farms, as to all of CIIPPs' claims. <u>*See*</u> ECF No. 6641.

In September and October of 2023, the Track 1 DPPs tried their case to verdict against Sanderson Farms. The jury returned a defense verdict completely in favor of Sanderson Farms, concluding that the DPPs had not demonstrated by a preponderance of the evidence, that there was a conspiracy among any chicken producers to limit the supply of Broiler chicken, including Sanderson Farms.. *See* ECF Nos. 7001, 7014, 7015. Meanwhile, CIIPPs began preparing their case for a March 12, 2024 trial against House of Raeford, Koch Foods, Mountaire, O.K. Foods, Sanderson Farms, and Simmons Foods—the then-remaining Defendants in the CIIPP action. Co-Lead Counsel simultaneously engaged in extensive arm's-length settlement negotiations and, prior to trial, reached settlements in principle with all of the remaining Defendants.

### III.   SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS

All of the Round 2 Settlements resulted from extensive, arm's-length negotiations between CIIPPs' Co-Lead Counsel and the Settling Defendants' respective attorneys. *See* Declaration of Adam J. Zapala ("Zapala Decl.") at ¶¶ 3, 15-18, 26-28. Some of the Round 2 Settlements were reached through a supervised mediation process. *Id.* at ¶ 27. While CIIPPs prepared for trial, CIIPPs' Co-Lead Counsel engaged in settlement discussions with House of Raeford, Koch Foods, Mountaire, O.K. Foods, Sanderson Farms, and Simmons Foods. *Id.* at ¶¶ 16-17. As of about February 16, 2024, CIIPPs had reached agreements in principle with each of the remaining Defendants, thereby eliminating the need for a trial. *Id.* Negotiations continued thereafter in order to memorialize and finalize these settlements. *Id.* at ¶ 17.

The Round 2 Settlements reflect the reasoned judgment of CIIPPs' Co-Lead Counsel, whom this Court already found had extensive experience in complex antitrust class actions such as this one. Co-Lead Class Counsel believe the Round 2 Settlements are in the best interests of the CIIPPs' Class and should be approved, as detailed below. *See id.* at ¶¶ 18, 29.

### A.   The House of Raeford, Koch Foods, Mountaire, O.K. Foods, Sanderson Farms, and Simmons Foods Settlements.

The monetary settlements with House of Raeford, Koch Foods, Mountaire, O.K. Foods, Sanderson Farms, and Simmons Foods are substantially similar to each other and to the Round 1 Settlements previously reached and approved by this Court. CIIPPs have agreed to release certain Released Claims against the Released Parties (as defined in the respective agreements) arising from the conduct alleged in the Complaint.[6] In exchange, House of Raeford, Koch Foods,

---

[6] "Released Claims" are generally defined in Section I ((B) ("Definitions") of the Settlement Agreements.

Mountaire, O.K. Foods, Sanderson Farms, and Simmons Foods have agreed to significant monetary consideration and cooperation in the event that any other Defendant proceeded to trial, as described below. Mountaire has also earmarked funds for settlement notice and administration and for preliminary and final approval.

### 1. House of Raeford.

House of Raeford agreed to pay $5,750,000.[7] CIIPPs estimate that House of Raeford's market share for the sale of Broilers to the CIIPP class constitutes 4.05%. Thus, this settlement has a value of $1,419,753.09 per market share point.

### 2. Koch Foods.

Koch Foods agreed to pay $13,500,000.[8] CIIPPs estimate that Koch Foods' market share for the sale of Broilers to the CIIPP class constitutes 9.75%. Thus, this settlement has a value of $1,384,615 per market share point.

### 3. Mountaire.

Mountaire agreed to pay $9,700,000.[9] CIIPPs estimate that Mountaire's market share for the sale of Broilers to the CIIPP class constitutes 8.84%. Thus, this settlement has a value of $1,097,285.07 per market share point.

### 4. O.K. Foods.

O.K. Foods agreed to pay $4,500,000.[10] CIIPPs estimate that O.K. Foods' market share for the sale of Broilers to the CIIPP class constitutes 1.27%. Thus, this settlement has a value of $3,543,307.09 per market share point.

---

[7] Zapala Decl. Ex. A (House of Raeford Settlement Agreement), at Section I(B)(31).
[8] Zapala Decl. Ex. B (Koch Foods Settlement Agreement), at Section I(B)(30).
[9] Zapala Decl. Ex. C (Mountaire Settlement Agreement), at Section I(B)(30).
[10] Zapala Decl. Ex. D (O.K. Foods Settlement Agreement), at Section I(B)(29).

### 5. Simmons Foods.

Simmons Foods agreed to pay $4,250,000.[11] CIIPPs estimate that Simmons Foods' market share for the sale of Broilers to the CIIPP class constitutes 2.88%. Thus, this settlement has a value of $1,475,694.44 per market share point.

### 6. Sanderson Farms.

Sanderson Farms agreed to pay $750,000.[12] CIIPPs estimate that Sanderson Farms' market share for the sale of Broilers to the CIIPP class constitutes 12.24%. Thus, the settlement has a value of $61,274.50 per market share point. While this settlement has a lower per-market share point value than others, it must be viewed in light of the October 25, 2023, full defense verdict obtained by Sanderson Farms at the DPP trial. See ECF No. 7014. CIIPPs undoubtedly would have utilized different trial strategies than the DPPs, but the risks of trying a similar case against a Defendant who won a full defense verdict counseled in favor of resolution at a smaller amount in order to potentially try the case against other remaining Defendants who had not yet tried their case to verdict.

### 7. Other Terms of Monetary Settlements

With the exception of the *sui generis* Sanderson Farms settlement, these monetary settlements are solidly within the range of settlements CIIPPs previously achieved on a per-market share point basis, and which this Court already preliminarily and finally approved.

These Settling Defendants have already or will each pay the respective settlement amounts into separate interest-bearing escrow accounts, and these agreements do not contain any reduction or termination provisions. Subject to approval and direction of the Court (as applicable), the

---

[11] Zapala Decl. Ex. E (Simmons Foods Settlement Agreement), at Section I(B) (31).
[12] Zapala Decl. Ex. F (Sanderson Farms Settlement Agreement), at Section I(B)(30).

settlement amounts with accrued interest will be used to: (1) pay notice costs and costs incurred in the administration and distribution of the settlements; (2) pay taxes and tax-related costs associated with the escrow accounts for proceeds from the Settlements; (3) make a distribution to Class Members in accordance with a plan of distribution approved by the Court; (4) pay attorneys' fees to Co-Lead Class Counsel, as well as costs and expenses, that may be awarded by the Court (subject to a separate, not-yet-filed motion); and (5) pay service awards to the CIIPP Class Representatives that may be awarded by the Court (subject to a separate, not-yet-filed motion). In the event that one or more of these settlements is not finally approved and there is a future CIIPP trial, each of these settling defendants have agreed to provide certain cooperation.[13]

**B.   Settlements with Agri Stats, Case Farms, Claxton, Foster Farms, Perdue, and Wayne Farms**

CIIPPs' settlements with Agri Stats,[14] Case Farms,[15] Claxton,[16] Foster Farms,[17] Perdue,[18] and Wayne Farms,[19] contain provisions substantially similar to each other. In these settlements, CIIPPs have agreed to waive their appeal of this Court's decision at summary judgment dismissing them. *See, e.g.,* Zapala Decl. Ex. L (Perdue Settlement) at §II.B. In consideration for the waiver of these rights, each respective Defendant has agreed that it will not seek or assert any claim for costs, fees, attorney's fees, or any other form of recovery in connection with the CIIPPs' Action. *See, e.g.,* Zapala Decl. Ex. L (Perdue Settlement) at §II.D. These agreements benefit the Certified Class as they eliminate the possibility that these respective Defendants will each seek and obtain

---

[13] *See generally* Settlement Agreements with House of Raeford, Koch Foods, Mountaire, O.K. Foods, Sanderson Farms, and Simmons Foods at Section II(C)(3).
[14] Zapala Decl. Ex. H (Agri Stats Settlement Agreement).
[15] Zapala Decl. Ex. I (Case Foods Settlement Agreement).
[16] Zapala Decl. Ex. J (Claxton Poultry Settlement Agreement).
[17] Zapala Decl. Ex. K (Foster Farms Settlement Agreement).
[18] Zapala Decl. Ex. L (Perdue Settlement Agreement).
[19] Zapala Decl. Ex. M (Wayne Farms Settlement Agreement).

substantial litigation costs as prevailing parties at summary judgment. [20] *See* Zapala Decl. at ¶¶ 18 -19.

### C. Amended Harrison Poultry Settlement.

As noted above, CIIPPs and Harrison Poultry have agreed to an Amended Harrison Poultry Settlement to align the agreement with the other Round 2 Settlements that are the subject of this Motion, thereby allowing for a more streamlined and efficient administration of all of the Round 2 Settlements. These amendments include clarifying that the settlement is on behalf of the Certified Class; substituting "Certified Class" for "Settlement Class" wherever the latter term appears in the Settlement Agreement; making clear that the Certified Class excludes all persons and entities included in the Exclusion List (ECF No. 6566-5); and removing provisions related to Class Members having a second opportunity to opt-out of the Certified Class. The $2,800,000 Harrison Poultry settlement that this Court has already preliminarily approved has not changed in any other material respect, and Harrison Poultry made that payment to the CIIPPs in 2023. *See* Zapala Decl. Ex. G (Amended Harrison Poultry Settlement Agreement).

## IV. ARGUMENT

### A. The Proposed Settlements Satisfy the Standard for Preliminary Approval.

There is an overriding public interest in quieting litigation through settlement; this is particularly true in complex class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985) (noting that there is a "general policy favoring voluntary settlements of class action disputes"). Class action settlements minimize the

---

[20] As this Court is aware, a prevailing party is entitled to certain taxable costs pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule 54.1, and 28 U.S.C. §1920.

litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong v. Bd. of Sch. Directors of Milwaukee,*, 616 F.2d 305, 313 (7th Cir. 1980) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). A class action, however, may be settled only with court approval. *See Armstrong*, 616 F.2d at 313-14; 4 NEWBERG ON CLASS ACTIONS, §13.1 (6th ed. 2023).

To be preliminarily approved, the proposed settlement must fall "within a range of possible approval." *Armstrong*, 616 F.2d at 314. A proposed settlement falls within the "range of possible approval" under Rule 23(e) when it is likely that the proposed settlement will meet the standards applied at final approval. *See* Newberg, §11.25, at 38-39 (quoting Manual for Complex Litig., § 30.41 (3d ed.)). The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *see Isby*, 75 F.3d at 1196.

When granting preliminary approval, a court does not conduct a "definitive proceeding on the fairness of the proposed settlement." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting Manual for Complex Litigation § 1.46 at 62, 64-65). That determination must await the final approval hearing where the fairness, reasonableness, and adequacy of the settlement are assessed under the factors set forth in *Armstrong*.[21]

The Settlements here satisfy the standard for preliminary approval.

---

[21] The *Armstrong* factors for a motion for final approval of a class settlement as fair, reasonable, and adequate are: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendants' ability to pay; (3) the complexity, length, and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of class members to the settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and the amount of discovery completed. 616 F. 2d at 314.

### 1. The Settlements are Within the Range of Possible Approval and Provide Substantial Benefits to the Certified Class.

The monetary settlements provide a substantial $41,250,000.00 to the Certified Class. Moreover, with one exception (Sanderson Farms, who obtained a full defense verdict against similar claims brought by a class of direct purchasers and various opt-outs), the settlement consideration to be paid by the respective Settling Defendant is well within the range of the settlements CIIPPs have already achieved on a per market share point basis, when compared with the previous approved Round 1 Settlements. In light of this, and the context of this case, the settlement amounts strongly support preliminary approval.

The settlements reached with the Defendants that prevailed at summary judgment likewise provide substantial relief and are within a range of possible approval. *See Downing v. Abbott Labs,* No. 23-1440, 2023 WL 6173468, at *3 ( 7th Cir. 2023) (observing that a prevailing party waiving costs in exchange for its opponent waiving its appellate rights wherein both parties avoid the attorneys' fees and costs of an appeal is rational and "not uncommon in civil litigation practice"). Indeed, as noted above, this Court granted preliminary and final approval to similar settlements between the DPPs and these same Defendants. *See* ECF No. 7179. *See also Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 494 (N.D. Ill. 2015) (rejecting objections to class settlement of claims that withstood dismissal, observing that further factual development might favor the defense); *Schulte v. Fifth Third Bank*, 805 F. 560, 582 (N.D. Ill. 2011) ("While Plaintiffs maintain that their claims would ultimately succeed … [the defendant] has a number of potentially meritorious defenses" and "[a]bsent settlement, Class Members would face the real risk that they would win little or no recovery.").

## 2. The Complexity, Length, and Expense of Further Litigation Eliminated by the Settlements Favor Approval.

The Settlements will end CIIPPs' case in its entirety, eliminating the risks and enormous costs, fees and judicial resources associated with a lengthy and complex trial and appeals, potentially followed by additional litigation and trial at some distant point in the future – with no guarantee the CIIPPs would prevail. The settlements also, importantly, will eliminate the risk that the Certified Class will be taxed with the prevailing Defendant costs of Agri Stats, Case Foods, Claxton, Foster Farms, Perdue, and Wayne Farms. In short, the complexity, length, and expense of further litigation, eliminated by the Settlements, favor approval. *See, e.g., Larsen v. Trader Joe's Co.*, No. 11-cv- 05188-WHO, 2014 WL 3404531, at *4 (N.D. Cal. Jul. 11, 2014) ("Avoiding such unnecessary and unwarranted   expenditure of resources and time would benefit all parties, as well as conserve judicial resources… Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving the settlement."); *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1008 (E.D. Wis. 2010) ("The 'complexity, length and expense of further litigation factor' strongly favors this settlement…").

## 3. The Settlements Resulted from Arm's-Length Negotiation and Co-Lead Counsel Believe the Settlements are in the Best Interests of the Class.

At preliminary approval, there is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations. *See Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 WL 17009594, at *3 n.2 (N.D. Ill. Oct. 10, 1995) ("[I]t may be *presumed* that the agreement is fair and adequate where, as here, a proposed settlement is the product of arm's-length negotiations...") (emphasis in original); 4 NEWBERG ON CLASS ACTIONS, § 13.45 (6th ed. 2023). The initial presumption in favor of such settlements reflects courts' understanding that vigorous negotiations between experienced counsel advance the

fairness concerns embodied in Rule 23(e). In addition, the Court in *Isby* observed that in deciding whether to approve a proposed settlement the court should consider the opinion of competent counsel. *See Isby*, 75 F.3d at 1198-99; *see also Kleen Prod. LLC v. Int'l Paper Co.*, No. 1:10-CV-05711, 2017 WL 5247928, at *3 (N.D. Ill. Oct. 17, 2017) ("The Settlement was negotiated by highly skilled and experienced antitrust and class action lawyers, who have held leadership positions in some of the largest class actions around the country."); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058 JST, 2015 WL 9266493, at *6 (N.D. Cal. Dec. 17, 2015) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.") (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008)).

Here, the Round 2 Settlements were the product of extensive arms-length settlement negotiations that took place over years, beginning in advance of class certification, and included many rounds of give-and-take between CIIPPs' Co-Lead Counsel and counsel for the Settling Defendants. Zapala Decl. ¶¶ 3, 15-18, 26-28. The respective parties to each settlement agreement held a number of telephonic meetings, exchanged information and settlement proposals, debated many issues, and negotiated many terms of the settlement, including potential cooperation, compliance, releases, and, for the Defendants who settled for monetary consideration, the amount of payment, the timing of payment, and potential conditions on payment. *Id.* at ¶ 27. Each side had the opportunity to be fully informed of the relative strengths and weaknesses of their positions, litigation risks, and issues involving the ability to pay. *Id.*

While CIIPPs believe that their case is strong, any complex antitrust litigation is inherently costly and risky. These settlements mitigate that risk and therefore serve to protect the Class. In negotiating the settlements, Co-Lead Counsel considered many contingencies and scenarios, including whether the Certified Class would prevail against the Defendants at trial; whether the

Certified Class would prevail on appeal and any future trial(s); and whether the Defendant(s) would be able to satisfy a judgment if the Certified Class prevailed. *Id.* at ¶ 27.

In negotiating the settlements with Agri Stats, Case Foods, Claxton, Foster Farms, Perdue and Wayne Farms, the Co-Leads were especially cognizant of the fact that these Defendants had prevailed on summary judgment against the CIIPPs. Thus, the CIIPPs' only path to a litigation win against them would require that CIIPPs obtain a reversal of the summary judgment decision on appeal and require that CIIPPs also win at any subsequent new trial. Meanwhile, exposure to additional costs and expenses would accrue. Although the CIIPPs believe in their case and appellate arguments, Co-Lead Counsel has an appreciation of the significant burden they would face in overturning the Court's summary judgment rulings. Taking all relevant facts into consideration, Co-Lead Counsel believes that these Settlements are in the best interests of the Certified Class. *Id.* at ¶ 18-19.

### 4. The Stage of the Proceedings and Amount of Discovery Support Approval.

The stage of the case strongly supports approval of the Settlements. The Certified Class and Defendants entered into the Settlements based on an extremely well-developed record, involving extensive discovery; motions to dismiss, class certification, *Daubert* motions, over 20 summary judgment motions, monitoring the Track 1 DPP trial against Sanderson Farms, and months-long pretrial preparations by CIIPPs to ready their case for a March 12, 2024, trial against House of Raeford, Koch Foods, Mountaire, O.K. Foods, Sanderson Farms, and Simmons, before settling on the eve of trial. *Id.* ¶¶ 3, 16-17.

All along, CIIPPs' work in this case has been extensive, and there can be no doubt that the information gleaned during the course of the nearly eight-year litigation guided the parties during the settlement negotiations. In sum, the Round 2 Settlements collectively: (1) provide substantial

benefits to the Certified Class; (2) are the result of extensive good faith negotiations between knowledgeable and skilled counsel; (3) were entered into after extensive factual investigation, discovery, and legal analysis; and (4) in the opinion of experienced Class Counsel, are fair, reasonable, and adequate – and are in the best interests of the Certified Class. *Id.* at ¶ 29.

## V. THE SETTLEMENTS ARE ON BEHALF OF A CERTIFIED LITIGATION CLASS AND THERE IS NO NEED TO RE-CERTIFY A SETTLEMENT CLASS.

Like the DPP class settlements with these same Settling Defendants, these Round 2 Settlements are on behalf of CIIPPs' certified litigation classes. *See* May 27, 2022, Order (ECF No. 5644) (certifying CIIPPs damages and injunctive relief classes). Thus, there is no need to re-certify a settlement class. *See also* 4 NEWBERG ON CLASS ACTIONS, § 13:18 (6th ed. 2023) ("If the court has certified a class prior to settlement, it does not need to re-certify it for settlement purposes."). *See, e.g.,* ECF Nos. 6830, 7070, 7179 (Orders granting preliminary approval of settlements between DPP certified litigation class and defendants without recertifying a settlement class).

## VI. CLASS MEMBERS PREVIOUSLY HAD A FINAL OPPORTUNITY TO OPT-OUT OF THE CERTIFIED CLASS AND NO FURTHER EXCLUSION PERIOD IS REQUIRED.

Like members of the certified DPP litigation class, CIIPPs Class Members had a final opportunity to exclude themselves from the Certified Class. The long form notice approved by this Court specifically informed Certified Class Members as follows:

> This notice provides Class Members with an opportunity to opt out of the Certified Classes defined above. If you exclude yourself from the Certified Classes, you will not be able to recover any award from any future settlements or judgments obtained by the lawyers for the Class if settlements or judgments occur.

*See* ECF No. 6194. Because CIIPPs Certified Class Members have already been provided an opportunity to exclude themselves, there is no need to provide an additional opportunity here, as this Court has recognized in its Orders granting preliminary approval to settlements between these

same defendants and the certified Direct Purchaser Plaintiff litigation class, without providing class members with an additional opportunity to opt-out. *See, e.g.,* ECF Nos. 6615, 6830, 7070, 7179.

While CIIPPs recognize that district courts have discretion to allow a further opt-out, the Rules Committee has advised that such discretion should be exercised with caution, because "a second opportunity might inject additional uncertainty into settlement and create opportunities unrelated to the purpose of the second opt-out, potentially defeating some settlements and making others more costly." *See* 2 McLaughlin on Class Actions § 6:21 (19th ed.) (quoting and citing Manual for Complex Litigation (4th) § 22.611 at 313; *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.,* No. 1:15-md-2627, 2022 WL 2128630, *6 n.9 (E.D. Va. 2022). Here, the CIIPPs have litigated the case for eight years, and Class Members have had the opportunity to opt out of previous settlements as well as the Certified Class. An additional opportunity to opt out is unnecessary, would make the settlement administration less efficient and more costly, and could potentially defeat the settlements if opt-outs were to exceed certain thresholds. Thus, Co-Lead Class Counsel respectfully submit that the Round 2 Settlements should be approved with only an objection period.

## VII.    THE COURT SHOULD APPROVE CIIPPS' PROPOSED NOTICE PROGRAM

The proposed Notice of the Round 2 Settlements, consistent with previous notices disseminated in this case, is the best notice practicable, satisfies Rule 23's requirements and Due Process, and should be approved. Rule 23(e) requires that prior to final approval, notice of a proposed settlement be given in a reasonable manner to all class members who would be bound by such a settlement. For a class proposed under Rule 23(b)(3), whether litigated or by virtue of a settlement, Rule 23(c)(2)(B) states:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; [...] and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The form of notice is "adequate if it may be understood by the average class member." 4 NEWBERG ON CLASS ACTIONS, § 11.53 (4th ed. 2002).

Rule 23 requires that notice to class members must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Hughes v. Kore of Indiana Enterprise, Inc*., 731 F.3d 672, 676 (7th Cir. 2013); *Hossfeld v. Lifewatch, Inc*., No. 13 C 9305, 2021 WL 1422779, at *1 (N.D. Ill. March 4, 2021); *City of Greenville v. Syngenta Crop. Prot*., No. 3:10-CV-188, 2012 WL 1948153, at *4 (S.D. Ill. May 30, 2012). Such individual notice may be by United States mail, electronic means, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Other class members may be notified by publication. *City of Greenville*, 2012 WL 1948153 at *4. Notice plans like the present one, which rely on direct notice to class members, supplemented by publication or other similar means of notice, are commonly used in class actions like this one. *See Amchem Prods*., 521 U.S. at 617; *City of Greenville*, 2012 WL 1948153, at *4.

A.      **The Content and Form of the Proposed Notices are Fairly Balanced, Easy to Read, and Contain All Rule 23 Notice Requirements**

Rule 23(c)(2) requires notice to "clearly and concisely state in plain, easily understood language" certain specified items. Fed. R. Civ. P. 23(c)(2)(B). Class notice is intended as a summary, rather than a complete source of information. *See Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1153 (8th Cir. 1999); *Mangone v. First USA Bank*, 206 F.R.D. 222, 233 (S.D. Ill. 2001).

The class notice's form and content are committed to a district court's sound discretion. *See Mangone*, 206 F.R.D. at 231.

As required by Rule 23(c)(2), the notice documents presented here define the Class, describe the nature of the action, summarize the Class claims, and advise the Class of the following:

- The terms of each of the Round 2 Settlement Agreements;

- That Class Members can no longer request exclusion from the Certified Class;

- That Class Members can submit an objection to the proposed Settlements;

- Class Members who did not previously submit a claim may do so;

- If a Class Member filed a claim in the earlier settlements (or received a payment from the previous distribution) and did not exclude themselves from the Certified Class, their previous claim submission will determine their eligibility for payment from the Round 2 Settlements, and they do not need to file another claim;

- Class Members will be able to submit documentation to correct or update their purchase amounts if they choose to do so;

- The time and manner for submitting an objection or a claim;

- The binding effect of a class judgment;

- Co-Lead Counsel's intent to file a request for attorney's fees (not to exceed 33 and 1/3% of the Monetary Settlement proceeds plus interest, net of costs); request for reimbursement of litigation expenses (not to exceed $5.5 million); and request for service awards (not to exceed $15,000 per Class Representative), and the procedures for objecting to those requests;

- The claims distribution process for the Round 2 Settlements (which total $41,250,000); and

- The date, time, and place of the final approval hearing (once set by the Court), and the fact that Class Members do not need to enter an appearance through counsel but may do so if they choose.

*See* Schacter Decl. at ¶ 7.

Class Members who submitted a qualified claim in the first claims process and did not exclude themselves from the Certified Class need not submit another claim form as their previous submission will determine their eligibility for payment from the Round 2 Settlements. *See id.* at ¶ 7). Class Members who did not participate in the first claims process have the opportunity to submit Claim Forms via mail, email or using the Settlement Website. *See id.* at ¶¶ 7, 18). Class Members will be able to review their authorized claim amount through the settlement website. Class Members will be able to submit documentation to correct or update their purchase amounts if they choose to do so. *See id.* at ¶ 18.

The notice avoids legalese in favor of plain language and provides a toll-free number and website link to direct Class Members to additional sources of information, including pleadings and orders from the case. *See id.* at ¶¶ 15-17). Accordingly, the proposed notice provides the best written notice practicable to Class Members.

**B.    The Notice Plan is Tailored to This Class Action and Constitutes the Best Practicable Notice Under These Circumstances.**

Federal case law on notice requires "only the best notice that is practicable." *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 255 (N.D. Ill 2014) (*quoting Hughes*, 731 F.3d at 676-77). Where names and addresses of known class members are reasonably available, Rule 23(c)(2) and due process require "individual notice to all members who can be identified through reasonable effort.'" *Amchem Prods.*, 521 U.S. at 617; *Hughes*, 731 F.3d at 676*; City of Greenville*, 2012 WL 1948153, at *4. For class members with identifiable addresses, "individual notice is clearly the 'best notice practicable'" within the meaning of Rule 23(c)(2) and due process case law. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974). If names and addresses cannot be identified by reasonable effort, then other methods may be substituted. *See Hughes*, 731 F.3d. at 677; *Birchmeier*, 302 F.R.D. at 255 (If reaching each person individually is impracticable, then

"broad-based forms of notice" are appropriate). All that Rule 23 requires is that notice be provided "to the class by the most practicable means available." *Mangone*, 206 F.R.D. at 233.

Here, A.B. Data is very familiar with the CIIPP Class Members having previously administered multiple settlements with notice, settlement claims, and distribution. The objective of the Notice Plan (which is substantially similar to the successful settlement and certification notice plans previously effectuated in this case) is to provide notice of the proposed Round 2 Settlements to potential Class Members. The Notice Plan includes direct notice via First-Class Mail and email, digital media advertisements in food-industry publications and websites, targeted digital advertising, earned media via a national press release, and posting of notice on the existing case website: www.chickencommercialsettlement.com. *See* Schacter Decl. at ¶¶ 5-17.

CIIPPs' Notice Plan is estimated to deliver a reach of at least 80% of the target audience and is designed to effectively reach potential Class Members. *See id.* at ¶ 19. The Plan will deliver plain language notices that will capture the attention of the reader and will provide relevant information in an informative and easy to understand manner that is necessary to effectively understand the rights and options under the terms of the Settlements. *See id.* As such, the Notice Plan constitutes the best practicable notice under the circumstances to reach Class Members and is fully compliant with Rule 23 of the Federal Rules of Civil Procedure and due process. *See id.*

### 1. *Direct Mailed Mail and/or Email Notice to Claimants with a Known Mailing Address and/or Email Address.*

CIIPPs propose to mail and/or email the Short-Form Notice to approximately 1,100,000 previously identified potential Class Members with a known mailing address and/or email address. *See id.* ¶¶ 8-9. If A.B. Data has both a mailing address and an email address, the notice will be sent to both. A.B. Data will process all mailing addresses through the national change of address

("NCOA") database and, using any updated information available in the NCOA database, will send the Short-Form Notice directly to those potential Class Members. Further analysis will be done of any mail returned as non-deliverable after use of the NCOA database and follow-up direct mail notice will be provided where appropriate. *See id.* at ¶ 8). A.B. Data will also post the more detailed Long-Form notice on the existing case website, www.chickencommercialsettlement.com. *See id.*

### 2. *Media Publication Campaign*

When not all class members can be identified through reasonable effort, "there is no other requirement of mandatory individual notice, and the Court must exercise its discretion to provide the best notice practicable under the circumstances." *In re Domestic Air Transp. Antitrust Litig.,* 141 F.R.D. 534, 539, 539 (N.D. Ga. 1992); *Aranda v. Caribbean Cruise Line, Inc.,* No. 12 C 4069, 2017 WL 818854 at *2 (N.D. Ill. March 2, 2017) (publication permissible if class members not reasonably identifiable), *affirmed sub nom. Birchmeier v. Caribbean Cruise Line, Inc*., 896 F.3d 792 (7th Cir. 2018) ("*Birchmeier II* Appeal"); *Birchmeier*, 302 F.R.D. at 255 ("making broad-based forms of notice appropriate").

For those Class Members whose commercial addresses and email addresses are not reasonably accessible, A.B. Data has developed a media campaign similar to campaigns used for previous settlements in this case. This media campaign will include banner ads on food industry websites and targeted banner ads on Google Display Network and YouTube. *See* Schachter Decl. at ¶ 11). An example of the banner ad to be published by A.B. Data is attached to the Schachter Decl. at Ex. D. The banner ad will run on several websites, including *FoodService Director*, *Nation's Restaurant News*, *Progressive Grocer*, *QSR, Restaurant Hospitality*, and *Supermarket News*. *See id.* at ¶ 11.) A.B. Data will also disseminate a news release via the *PR Newswire*

distribution service and broadcast to the news media via X (formerly known as Twitter). *Id.* at ¶¶ 13-14. In addition, it will be tweeted from *PR Newswire's* and A.B. Data's X accounts to thousands of media outlets, journalists, and other followers. *Id.* at ¶ 14.

### 3. Informational Settlement Website and Toll-Free Telephone Number

To assist potential Class Members in understanding the terms of the proposed Settlements and their rights under them, A.B. Data will continue to maintain the existing case-specific toll-free telephone number and case-specific website at: www.chickencommercialsettlement.com. *See id.* at ¶ 15.

As detailed in the Long-Form Notice and Short-Form Notice, Class Members that submitted a valid claim in the previous settlements, and did not exclude themselves from the Certified Classes do not need to submit another claim as their previous submission will determine their eligibility for payment from the Round 2 Settlements. *See id.* at ¶ 18. Class Members who did not submit a claim in the previous settlements will need to submit a Claim Form online at the case-specific website or by mail to be eligible to receive a payment from these Settlements. *See id.* at ¶ 18. Class Members will be able to review their eligible purchase amounts, based on known eligible purchase information from food service distributors and/or the previous claim process, on the case-specific website. *See id.*. Claimants who disagree with or wish to supplement their known purchase information will be able to do so by completing and submitting a Purchase Audit Request Form. *See id.* at ¶ 18 and Exhibit F thereto.

## VIII. THE COURT SHOULD PRELIMINARILY APPROVE CIIPPS' *PRO RATA* PLAN OF ALLOCATION

The Court should also preliminarily approve CIIIPs' Plan of Allocation. As the proposed notices indicate, the proposed Plan of Allocation calls for a *pro rata* distribution of the settlement proceeds to qualified claimants in the Indirect Purchaser States who purchased class products *i.e.*,

breasts, whole birds, and/or wings. ECF 5214-6 at 3. Courts have frequently found such *pro rata* distributions fair, adequate, and reasonable. *See, e.g., Kleen Products,* 2017 WL 5247928, at *3 (pro rata distribution "fair and reasonable"). Moreover, "[n]o money will be returned to the Settling Defendants once the Court finally approves the Settlements." ECF 5214-3 at 5. This plan—a pro rata distribution without reversion—supports preliminary approval. Indeed, the Court already has approved similar plans as fair, reasonable and adequate in finally approving the settlement of the End-User Consumer Plaintiffs with Defendants Fieldale, Peco, George's, Tyson, Pilgrim's, and Mar-Jac. *See* ECF 5304 at 5 ("EUCPs propose to distribute the settlement funds to class members on a pro rata basis, based on the amount of purchases that claimants made . . . .").

Consistent with the notices, CIIPPs class members can find their specific authorized claim amount through the settlement website. If they agree with that authorized claim amount and if they previously participated in the settlements, there is nothing further the class member needs to do in order to obtain their settlement proceeds. Class members who have not participated in previous settlements will find their authorized claim amount on the settlement website and if they agree with that amount, will be prompted to fill out additional information to submit their claim. The authorized claim amounts were derived from Defendants' transactional data and other data obtained in this litigation. If the class member does not agree with his or her authorized amount— consistent with previous rounds of settlement administration—the class member may challenge the authorized amount and provide the claims administrator with evidence demonstrating a different authorized claim amount. These steps remove substantial barriers to filing a claim and ensure the common fund is distributed to as many members of the Settlement Class as possible, as efficiently and fairly as possible, which is a goal of any distribution method. *See* § 13:53. Final

approval criteria—Rule 23(e)(2)(C)(ii): Distribution method, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.).

## IX. THE COURT SHOULD SET A HEARING FOR FINAL APPROVAL OF THE ROUND 2 SETTLEMENTS, AND APPROVE A SCHEDULE FOR NOTICE

The last step in the settlement approval process is the final approval hearing, at which the Court may hear all evidence necessary to evaluate the proposed Settlements. At that hearing, proponents of the Settlements may explain and describe their terms and conditions and offer argument in support of the Settlements' approval, and members of the Class or their counsel may be heard regarding the proposed Settlements if they choose. CIIPPs propose the following schedule of events necessary for a hearing on final approval of the Round 2 Settlements:

| DATE | EVENT |
|---|---|
| ___, 2025 (within 10 days of the settlement being filed in court) | By this date each Settling Defendant shall serve notice of the respective proposed settlement in compliance with 28 U.S.C. § 1715(b) ("CAFA"). |
| ___, 2025 (45 days after preliminary approval order) | Settlement Administrator to provide direct mail and email notice and commence the publication Notice Program. |
| ___, 2025 (30 days after the mailing of Notice). | Plaintiffs to file their Motion for Attorneys' Fees, Costs, and Service Awards. |
| ___, 2025 (61 days after the mailing of Notice). | •Last day for claimants to submit additional claim information or challenge calculated purchase amounts.<br>•Last day to object to the Round 2 Settlements.<br>•Last day to object to the Motion for Attorneys' Fees, Costs, and Service Awards.<br>•Last day to file notices to appear at the Fairness Hearing. |

| DATE | EVENT |
|---|---|
| ___, 2025 (14 days before the Fairness Hearing) | Co-Lead Class Counsel shall:<br>•File a motion for final approval of the Settlements and<br>•Respond to any objection to the Round 2 Settlements or the Motion for Attorneys' Fees, Costs, and Service Awards. |
| At least 30 days after the deadline to object to any or all of the Settlements. | •Final Settlement Fairness Hearing for the Round 2 Settlements, and<br>•Hearing on Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards. |

## VIII.   CONCLUSION

For these reasons, Co-Lead Counsel respectfully request that the Court preliminarily approve the Round 2 Settlement Agreements, including the Amended Harrison Poultry Agreement; approve the form and content of the class notice to the Class advising it of the Round 2 Settlements; appoint A.B. Data Ltd. as the Settlement Administrator; and schedule a final fairness hearing.

Dated: February 12, 2025                    Respectfully Submitted:

*/s/ Adam J. Zapala*
Adam J. Zapala
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
azapala@cpmlegal.com

*/s/ Daniel C. Hedlund*
Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua J. Rissman

26

Anthony J. Stauber
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
tstauber@gustafsongluek.com

*Co-Lead Counsel for the Commercial and Institutional Indirect Purchaser Class*

Kenneth A. Wexler
Melinda J. Morales
**WEXLER BOLEY & ELGERSMA, LLP**
311 S. Wacker Drive, Ste. 5450
Chicago, IL 60606
Tel: (312) 346-2222
kaw@wbe-llp.com
mjm@ wbe-llp.com

*Liaison Counsel for the Commercial and Institutional Indirect Purchaser Class*