**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | |

**MEMORANDUM OF LAW IN SUPPORT OF END-USER CONSUMER PLAINTIFFS'**
**CORRECTED SECOND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND CLASS**
**<u>REPRESENTATIVE SERVICE AWARDS</u>**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.      BACKGROUND ............................................................................................ 2

     A.      EUCP Class Counsel's early strategic decisions increased leverage for future settlement negotiations, resulting in a larger recovery for the class. ............................................................................................ 3

     B.      Class certification required unique proof and analysis. ......................... 4

     C.      Expert discovery, merits reports, and *Daubert* challenges. .................... 5

     D.      Summary judgment success was hard won. ........................................... 6

     E.      EUCPs undertook exhaustive trial preparation in the face of great risk. ....................................................................................................... 7

     F.      Settlement negotiations, simultaneous to trial preparation, garnered another $22.35 million for consumers. ................................................. 8

     G.      The settlement agreements EUCP Class Counsel negotiated were preliminarily approved without objection. .............................................. 10

     H.      Class Representatives worked hard on behalf of the EUCPs. ............... 11

III.      LEGAL STANDARD ................................................................................... 12

IV.      ARGUMENT ............................................................................................... 13

     A.      Sophisticated entities in the market for legal services request a one-third fee award, a figure comparable cases confirm. ............................. 13

     B.      This lawsuit's high-risk indicates EUCP class counsel would have negotiated a 30 percent fee award. .......................................................... 15

     C.      This Court made, and the Seventh Circuit did not reverse, findings regarding the caliber of class counsel's performance. ........................... 17

     D.      A lodestar cross-check demonstrates the reasonableness of the fee request. ................................................................................................... 18

     E.      EUCP Class Counsel should be reimbursed fully for litigation expenses and claims administration costs. .............................................. 19

F.    After nearly a decade of service, the class representatives request a
       $2,000 service award. ........................................................................... 21

V.    CONCLUSION.......................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Broiler Chicken Antitrust Litig. (Broiler I)*,
80 F.4th 797 (7th Cir. 2023) ............................................................................. *passim*

*In re Cattle Antitrust Litig.*,
2021 WL 7757881 (D. Minn. Sept. 14, 2021) ......................................................16

*Matter of Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992)......................22

*Hale v. State Farm Mut. Auto. Ins. Co.*,
2018 WL 6606079 (S.D. Ill. Dec. 16, 2018)....................................................12, 19

*Jarrard v. CDI Telecommunications, Inc.*,
408 F.3d 905 (7th Cir. 2005) ................................................................................14

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC ("Tuna")*,
31 F.4th 651 (9th Cir. 2022), *cert. denied sub nom. StarKist Co. v. Olean
Wholesale Grocery Coop., Inc.*, 143 S. Ct. 424 (2022) ............................................5

*In re Pork Antitrust Litig.*,
2024 WL 2060386 (D. Minn. May 8, 2024)...........................................................16

*Silverman v. Motorola Sols., Inc.*,
739 F.3d 956 (7th Cir. 2013) ................................................................................17

*Spano v. Boeing Co.*,
2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ........................................................19

*Standard Iron Works v. ArcelorMittal*,
2014 WL 7781572 (N.D. Ill. Oct. 22, 2014)..........................................................19

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ........................................................................12, 19

*In re TikTok, Inc., Consumer Priv. Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022), *appeal dismissed sub nom. In re Tiktok
Inc., Consumer Priv. Litig.*, 2022 WL 19079999 (7th Cir. Oct. 12, 2022)............................22

*In re Turkey Antitrust Litig.*,
2025 WL 264021 (N.D. Ill. Jan. 22, 2025) ............................................................16

*U.S. v. Husband*,
312 F.3d 247 (7th Cir. 2002) ................................................................................16

*United States v. Agri Stats, Inc.*,
   No. 0:23-cv-03009 (D. Minn., Sept. 28, 2023)..........................................................................4

*Williams v. Rohm & Haas Pension Plan*,
   658 F.3d 629 (7th Cir. 2011) ............................................................................................12, 18

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 (c)(2)(B) ..................................................................................................20

Fed. R. Civ. P. 23(e) .............................................................................................................10

Fed. R. Civ. P. 23(b) ..............................................................................................................5

Fed. R. Civ. P. 23(b)(3)..........................................................................................................20

## I.     INTRODUCTION

After eight and a half years of relentless litigation, consumers who purchased chicken in the United States have recovered more than $203 million in this antitrust class action. This was no easy feat. At the outset of litigation, recovery was anything but guaranteed. EUCP Class Counsel built the case from the ground up and devoted nearly 90,000 hours to pursuing justice on behalf of consumers.[12] This sustained effort delivered results: since filing the first fee motion, EUCP Class Counsel secured an additional $22.35 million for the class.[3]

EUCP Class Counsel charted their own distinct strategy and stood ready to try the case. The class faced steep obstacles, including a protracted class certification fight, multiple rounds of expert challenges, and an exhaustive 100,000-page summary judgment gauntlet. EUCP Class Counsel overcame these hurdles. And they did the exhaustive work to prepare for trial. Without this effort, the EUCP class would not have had such success.

To compensate the attorneys who worked on this matter, EUCP Class Counsel respectfully move this Court for an award of attorneys' fees of $3,715,772.14, which is 30% of the $22,350,000 recovered since the last motion, less expenses; $2,969,956.21, which is 30% of the $9,899,854.04 interest that has accrued on the total settlement fund; and litigation expenses

---

[1] This brief uses shorthand to refer to certain groups. "EUCPs" or "End-User Consumer Plaintiffs" means the class of individual consumers who purchased raw chicken indirectly from the Defendants at grocery stores, wholesale clubs, and the like. *See* End-User Consumer Pls.' Mot. for Class Certification at 6, Oct. 30, 2020, ECF No. 3971. "EUCP Class Counsel" means the law firms of Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll PLLC, which this Court appointed to serve as co-lead counsel for the EUCP Class. *See* Order, Dec. 14, 2016, ECF No. 248.

[2] End-User Consumer Pls.' Fifth Consol. Am. Class Action Compl. at 142, Aug. 7, 2020, ECF No. 3747.

[3] This fee motion is not the first; EUCP Class Counsel previously moved for fees covering their work between the case's inception in September 2016 and June 2021. *See* Mem. in Supp. of End-User Consumer Pls.' Mot. for Attorneys' Fees, Expenses, and Class Representative Awards, Oct. 27, 2021, ECF No. 5161.

and claims administration costs totaling $9,914,092.86. As discussed below, this is in line with the market rate that would have been negotiated *ex ante*. Because this was a difficult, high-risk conspiracy case with unique risks at the outset, a decreasing fee scale award would not reflect the market rate. Thirty percent is also the rate that the Court ultimately set for the award for EUCP's first fee petition.[4] The requested fee award combined with the first fee award would result in EUCP Class Counsel receiving a modest multiplier of 1.19 on their lodestar for the entire case. Accounting for only lodestar and settlements since the first fee petition, counsel would receive less than a quarter of their lodestar.

EUCP Class Counsel also request a $2,000 service award for the class representatives, who have stood in the shoes for a nationwide class for nearly a decade.

## II. BACKGROUND

Since filing the first fee motion, EUCP Class Counsel have overcome difficult litigation hurdles to secure an additional $22.35 million for the class. But their contributions to this litigation exceed these raw numbers. By amending the Complaint to assert a different legal theory early on, and aggressively pursuing discovery for that claim, EUCP Class Counsel expanded the potential recovery for consumers. Through this process, Defendants learned that EUCP Class Counsel would chart their own path to recovery, not simply follow on the heels of another class. And so despite having a shorter class period and smaller number of class products, EUCP Class Counsel achieved a recovery on par with the two larger classes.[5]

---

[4] Mem. Op. and Order at 15, July 3, 2024, ECF No. 7309.

[5] *See* Mem. of Law in Supp. of Com. and Institutional Indirect Purchaser Pls.' Uncontested Mot. for Preliminary Approval of Settlements with Defs. House of Raeford, Koch Foods, Mountaire, O.K. Foods, Sanderson Farms, Simmons Foods, Agri Stats, Case Farm, Claxton, Foster Farms, Perdue, and Wayne Farms; Approval of Am. Harrison Poultry Settlement; and Approval of CIIPPs' Settlement Program at 1, Feb. 12, 2025, ECF No. 7505 (stating counsel for the commercial institutional indirect purchaser plaintiffs recovered $145,140,000.00); Direct Purchaser Pls.' Mem. of Law in Supp. of Mot. for Prelim. Approval

**A.    EUCP Class Counsel's early strategic decisions increased leverage for future settlement negotiations, resulting in a larger recovery for the class.**

EUCP Class Counsel developed allegations that changed the course of litigation and impacted settlement outcomes. Of the three plaintiff classes in this suit—the direct purchaser class, the commercial class, and EUCPs—only EUCPs developed a rule of reason claim.[6] EUCPs pursued this claim while also pursuing the *per se* claim made by all classes.

Amending the Complaint to add this rule of reason claim expanded the scope of discovery, particularly through the development of evidence of the processor defendants sharing information through secretive Agri Stats. Obtaining this discovery required overcoming forceful defense opposition[7] and coordinating discovery efforts with the other classes' counsel. Class counsel coordinated more than 180 depositions, and EUCP Class Counsel took the lead in deposing dozens of Defendants' employees and third-party personnel.[8]

Expanding discovery alone would not have increased the recovery for end users. Rather, it was the EUCP's strategic use of the uncovered documents during subsequent litigation stages that made the difference. Their effort revealed new facts that benefitted all classes. For instance, the magistrate judge adopted the rationale proposed by the EUCPs and declined to limit Agri

---

of Settlements with Defs. Foster Farms, Perdue, Case, Claxton, Wayne Farms, Agri Stats, and Sanderson Farms; and Approval of Notice Plan at 1, Mar. 6, 2024, ECF No. 7172 (stating counsel for the direct purchaser class recovered "over $284 million").

[6] End-User Consumer Pls.' Fifth Consol. Am. Class Action Compl. ¶¶ 197-215, Aug. 7, 2020, ECF No. 3747.

[7] *See, e.g.*, Order, Apr. 13, 2018, ECF No. 864 (denying Tyson's motion for protective order); Mem. Op. and Order, July 26, 2018, ECF No. 1090 (denying Agri Stats's motion for protective order); Notification of Docket Entry, Sept. 26, 2018, ECF No. 1254 (granting class plaintiffs' motion to serve interrogatories); Notification of Docket Entry, Feb. 14, 2019, ECF No. 1832 (ordering third-party Porky Products to produce downstream data); Notification of Docket Entry, Apr. 8, 2019, ECF No. 2010 (granting class plaintiffs' motion to compel documents claimed to be privileged); Order, May 19, 2020, ECF No. 3622 (granting in part class plaintiffs' motion for production of structured data).

[8] Decl. of Shana Scarlett in Supp. of Mem. in Supp. of EUCP's Mot. for Attorney's Fees, Expenses, and Class Representative Awards at 3-4, Oct. 27, 2021, ECF No. 5161-1.

Stats' document production to a two-year period.[9] Each class was then able to use highly relevant Agri Stats documents to support their class certification motions, and later summary judgment.[10]

The Department of Justice later benefited from these aggressive discovery efforts in its own investigations. Two years after EUCP Class Counsel began litigating the case, the DOJ subpoenaed the class plaintiffs and requested Defendants' document productions. The government used documents negotiated by class counsel in its criminal trial.[11] And since then, the DOJ has also brought a rule of reason claim against Agri Stats in a civil case—one that largely mirrors the claim first brought by EUCPs.[12]

**B.    Class certification required unique proof and analysis.**

EUCP Class Counsel led major arguments at the class certification hearing. Attorneys from the two co-lead law firms made opening statements,[13] called and examined two economics expert witnesses,[14] and cross-examined Defense expert witnesses[15] on May 10 and 11, 2022.[16]

---

[9] *Compare* End-User Consumer Pls.' Mem. in Opp'n to Agri Stats, Inc.'s Mot. for Protective Order, June 1, 2018, ECF No. 941 *with* Mem. Op. and Order, Sept. 26, 2018, ECF No. 1090.

[10] Decl. of Shana Scarlett in Supp. of Mem. in Supp. of End-User Consumer Pls.' Mot. for Attorney's Fees, Expenses, and Class Representative Awards at 4, Oct. 27, 2021, ECF No. 5161-1.

[11] *Id.* at 4-5.

[12] Compl., *United States v. Agri Stats, Inc.*, No. 0:23-cv-09009 (D. Minn., Sept. 28, 2023).

[13] Tr. of Telephonic Proc. at 21-26, May 10, 2022, ECF No. 5624 (opening statement by Steve Berman of Hagens Berman for EUCPs).

[14] Tr. of Telephonic Proc. at 285-297, 309-310, May 11, 2022, ECF No. 5625 (questioning Dr. Luis Cabral, EUCP expert witness, by Brent Johnson for Cohen Milstein), 483-491 (questioning Dr. David Sunding, EUCP rebuttal expert witness, by Mr. Berman for Hagens Berman). The transcript erroneously indicates that Mr. Johnson was counsel for the Commercial and Institutional Indirect Purchaser Plaintiffs. *Id.* at 282; *compare with id.* at 284 (Mr. Johnson from Cohen Milstein appearing for the EUCPs).

[15] Tr. of Telephonic Proc. at 429-445, May 11, 2022, ECF No. 5625 (cross-examination of Dr. John Johnson IV, Defense expert witness, by Shana Scarlett for Hagens Berman).

[16] Class certification briefing was completed during the period covered in the first fee motion other than sur-replies. *See* End-User Consumer Pls.' Mot. for Class Certification, Oct. 30, 2020, ECF No. 3971, *and* Reply in Supp. of End-User Consumer Pls.' Mot. for Class Certification, Mar. 29, 2021, ECF No. 4487.

EUCPs charted their own course with an exhaustive and unique effort to certify the class. The EUCP class brought their claims under the laws of twenty four states, alleging that Defendants conspired to stabilize broiler chicken prices.[17] Defendants sell this price-stabilized chicken to distributors, like Sysco and US Foods, who resell it to retailers, like Kroger's and Costco, where consumers purchase it.[18] Thus, to prove antitrust impact required by Rule 23(b) at class certification, EUCPs had to show that each link in the distribution chain passed on increased prices.[19] And so in addition to pursuing the *per se* and rule of reason discovery, EUCPs sought independent discovery to establish record evidence of pass-through and engaged an expert economist to conduct an empirical regression analysis based on billions of dollars of transactions. In total, Class Counsel obtained workable datasets from 28 companies involving 10,576 class products and totaling more than $25 billion in revenue.[20] The Court certified the EUCP class in late May 2022.[21]

**C.    Expert discovery, merits reports, and *Daubert* challenges.**

EUCPs engaged two expert economists at the merits stage: Dr. David Sunding and Dr. Luis Cabral. Dr. Sunding assessed Defendants' conduct during the Class Period and developed a damages model that accounted for the overcharge passing through the retail chain.[22] Dr. Cabral

---

[17] End-User Consumer Pls.' Fifth Consol. Am. Class Action Compl. ¶ 1, Aug. 7, 2020, ECF No. 3747.

[18] End-User Consumer Pls.' Mot. for Class Certification at 37, Oct. 30, 2020, ECF No. 3971.

[19] *See* Mem. Op. and Order at 12, May 27, 2022, ECF No. 5644; *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC ("Tuna")*, 31 F.4th 651, 684 (9th Cir. 2022), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S. Ct. 424 (2022).

[20] End-User Consumer Pls.' Mot. for Class Certification at 40, Oct. 30, 2020, ECF No. 3971; Decl. of Dr. David Sunding in Supp. of End-User Consumer Pls.' Mot. for Class Certification ¶¶ 356-64, Oct. 30, 2020, ECF No. 3971-4 (estimating pass-through for each commerce channel).

[21] *See* Mem. Op. and Order, May 27, 2022, ECF No. 5644.

[22] *See* Mem. in Opp'n to Defs.' Mot. to Exclude the Test. Of Dr. Luis Cabral at 1, Jan. 27, 2023, ECF No. 6261.

analyzed Defendants' information exchanges through Agri Stats and EMI and concluded these exchanges had anticompetitive effects.[23] EUCP Class Counsel prepared both experts for their exacting, seven-hour depositions at the merits stage. After these depositions, Defendants moved to exclude both Dr. Sunding's and Dr. Cabral's merits expert reports.[24] EUCP Class Counsel successfully opposed both motions.[25]

## D.    Summary judgment success was hard won.

EUCP Class counsel also navigated the close of fact discovery and successfully responded to a staggering number of joint and individual summary judgment motions. As this Court knows, Defendants filed seven joint and eighteen individual summary judgment motions on October 7, 2022,[26] the vast majority of which implicated EUCPs' claims (and some, only EUCPs' claims). And the EUCPs joined a partial summary judgment motion on three affirmative defenses.[27] Together, the summary judgment briefs—including the related *Daubert* briefs and summary judgment exhibits—surpassed 100,000 pages.

Drafting affirmative summary judgment motions and successfully opposing Defendants' motions required finding the right evidence. During discovery, Defendants produced over 1.3 terabytes of data, roughly equivalent to more than 1,300 physical filing cabinets of paper.[28]

---

[23] *Id.*

[24] Mot. to Exclude Expert Opinions of Dr. David Sunding, Oct. 7, 2022, ECF No. 5897; Mot. to Exclude the Test. of Dr. Luis Cabral, Oct. 7, 2022, ECF No. 5938.

[25] *See* Mem. Op. and Order at 86, June 30, 2023, ECF No. 6641 (denying Daubert motions as to issues addressed in the order but permitting motions *in limine* as to all other issues).

[26] *See* Mem. Op. and Order at 86-87, June 30, 2023, ECF No. 6641 (listing same).

[27] Track One Pls.' Mot. for Partial Summ. J. on Three Affirmative Defenses, Oct. 7, 2022, ECF No. 5869.

[28] Scarlett Decl. ¶4; *see also* How much is 1 TB of storage?, Dropbox, https://www.dropbox.com/features/cloud-storage/how-much-is-1tb#:~:text=One%20terabyte%20gives%20you%20the,hours%20of%20HD%20video%20OR (last accessed Apr. 21, 2025).

EUCPs' work conducting depositions and reviewing documents helped all the classes identify the relevant documents that shaped the narrative in these opposition briefs. In fact, EUCP Class Counsel took the lead in drafting eight of the summary judgment briefs. At the two-day oral argument covering summary judgment, these same attorneys argued eight of the legal issues designated for argument.[29] The summary judgment hearing transcript includes over five hundred and fifty pages of testimony.[30]

The intricate legal issues presented at summary judgment meant that success for the EUCPs was not a foregone conclusion.[31] Indeed, while this Court denied summary judgment for eleven of the individual defendant families, it granted summary judgment as to seven defendants (Agri Stats, Case, Claxton, Fieldale, Foster, Perdue, and Wayne).[32]

**E.     EUCPs undertook exhaustive trial preparation in the face of great risk.**

After litigating this case for the better part of a decade, EUCP Class Counsel were fully prepared to proceed to trial. Building a case against the six remaining Defendants required extensive preparations. EUCP Class Counsel identified 126 witnesses, 949 exhibits, and thousands of depositions pages.[33] Defendants in turn identified 90 witnesses, 1,202 exhibits, and over four thousand pages of deposition testimony.[34] EUCP Class Counsel opposed Defendants'

---

[29] Tr. of Proc., May 5, 2023, ECF No. 6604; Tr. of Proc., June 2, 2023, ECF No. 6607.

[30] *Id.*

[31] Mem. Op. and Order at 8, Oct. 7, 2022, ECF No. 5855 (noting that "issues raised in the motions to dismiss show that success on summary judgment, let alone trial, is no guarantee").

[32] Mem. Op. and Order at 65, 86-87, June 30, 2023, ECF No. 6641.

[33] Scarlett Decl. ¶ 17.

[34] *Id.*

joint motion *in limine* to exclude years of damages evidence.[35] Counsel worked closely with both the class representatives and expert economists to prepare the right witnesses to testify at trial.

Success at trial was no guarantee. Indeed, the direct purchaser class proceeded to trial against Sanderson in late 2023 and received an adverse jury verdict.[36] Despite that outcome, EUCP Class Counsel pressed ahead with their case.

## F. Settlement negotiations, simultaneous to trial preparation, garnered another $22.35 million for consumers.

While confident in their case, EUCP Class Counsel recognized the inherent uncertainty of trial and simultaneously explored the possibility of settlement with defense counsel for a sum reflecting the EUCP claims' value. Settlement discussions took place over months and, in some cases, years.[37] EUCP Class Counsel negotiated directly with counsel for each of the six Defendant families set to proceed to trial. These discussions were between sophisticated counsel and required careful preparation time, deep case knowledge, and experienced negotiation skills. Senior leadership at Hagens Berman alone logged over 185 hours preparing for and executing these settlement discussions during the period this fee motion covers.[38]

An experienced mediator, the Honorable Daniel Weinstein (Ret.), helped facilitate four of these six pre-trial settlements. At times, Judge Weinstein spent multiple days assisting the parties

---

[35] Pls.' Opp'n to Defs.' Mot. *in Limine* to Preclude Pls.' Evid. of Damages for the Years 2013-2019, July 10, 2024, ECF No. 7321.

[36] Notification of Docket Entry, Oct. 25, 2023, ECF No. 7014.

[37] *See, e.g.*, Mem. of Law in Supp. of End-User Consumer Pls.' Uncontested Mot. for Prelim. Approval of Settlements with Claxton, Foster Farms, House of Raeford, Koch Foods, Mountaire, O.K. Foods, Perdue, Sanderson, Simmons, and Wayne Farms Defs. and Mot. to Direct Notice Regarding Harrison Poultry Settlement at 8-9, Jan. 29, 2025, ECF No. 7495(negotiating Simmons settlement agreement took 14 months).

[38] Scarlett Decl. ¶ 17.

before a final resolution was found, including after an initial mediation session had failed.[39] The length of these mediations underscores how complex and disputed this case's legal issues were.

Pursuing these settlement discussions alongside full-blown trial preparation required a herculean effort from EUCP Class Counsel. As an example of the tight deadlines EUCP Class Counsel successfully traversed, the parties' objections to deposition designations and counter-designations were due four days before the mediation with Defendant Koch Foods.[40] EUCP Class Counsel filed an opposition to Defendants' motion *in limine* to preclude six years of damages evidence the day before the successful mediation with Defendant Simmons.[41] The day after the successful mediation with O.K. Foods, EUCP Class Counsel argued in court against the motion *in limine* to preclude damages evidence[42] and served the final round of deposition

---

[39] *See* Mem. of Law in Supp. of End-User Consumer Pls.' Uncontested Mot. for Prelim. Approval of Settlements with Claxton, Foster Farms, House of Raeford, Koch Foods, Mountaire, O.K. Foods, Perdue, Sanderson, Simmons, and Wayne Farms Defs. and Mot. to Direct Notice Regarding Harrison Poultry Settlement at 6, Jan. 29, 2025, ECF No. 7495(describing Koch Foods mediation efforts).

[40] *See* Notification of Docket Entry, Apr. 8, 2024, ECF No. 7201 (setting pretrial deadlines); Mem. of Law in Supp. of End-User Consumer Pls.' Uncontested Mot. for Prelim. Approval of Settlements with Claxton, Foster Farms, House of Raeford, Koch Foods, Mountaire, O.K. Foods, Perdue, Sanderson, Simmons, and Wayne Farms Defs. and Mot. to Direct Notice Regarding Harrison Poultry Settlement at 6, Jan. 29, 2025, ECF No. 7495 (stating Koch Foods mediation timing).

[41] *See* Pls.' Opp'n to Defs.' Mot. *in Limine* to Preclude Pls.' Evid. of Damages for the Years 2013-2019, July 10, 2024, ECF No. 7321; Mem. of Law in Supp. of End-User Consumer Pls.' Uncontested Mot. for Prelim. Approval of Settlements with Claxton, Foster Farms, House of Raeford, Koch Foods, Mountaire, O.K. Foods, Perdue, Sanderson, Simmons, and Wayne Farms Defs. And Mot. to Direct Notice Regarding Harrison Poultry Settlement, Jan. 29, 2025, ECF No. 7495.

[42] Notification of Docket Entry, July 17, 2024, ECF No. 7337 (describing oral argument in a minute order).

designations and objections.[43] In the two months preceding the final settlement agreement, just Hagens Berman worked over 906 hours on the class's behalf.[44]

Less than two months before trial, Counsel had signed term sheets settling in principle with all remaining Defendants in the case, securing an additional $22.35 million dollars for the class. These settlements brought the final recovery for EUCPs to over two hundred million dollars.[45] Negotiating final, full-length settlement agreements with all Defendants took an additional six months.[46] Aware of their duty to be effective stewards of the class's settlement funds, counsel insisted on combining notice of all settlements into a single notice.[47]

## G. The settlement agreements EUCP Class Counsel negotiated were preliminarily approved without objection.

Settlement is not the end of a class action. The Court must both preliminarily and finally approve each settlement before a defendant may be dismissed.[48] On January 29, 2025, the

---

[43] *See* Notification of Docket Entry, Apr. 8, 2024, ECF No. 7201 (setting pretrial deadlines); Mem. of Law in Supp. of End-User Consumer Pls.' Uncontested Mot. for Prelim. Approval of Settlements with Claxton, Foster Farms, House of Raeford, Koch Foods, Mountaire, O.K. Foods, Perdue, Sanderson, Simmons, and Wayne Farms Defs. and Mot. to Direct Notice Regarding Harrison Poultry Settlement, Jan. 29, 2025, ECF No. 7495.

[44] Scarlett Decl. ¶ 17.

[45] *See* End-User Consumer Pls.' Notice of Settlement with Def. House of Raeford Farms, Inc., June 28, 2024, ECF No. 7302 (notifying the Court of settlements with Defendant House of Raeford Farms, Inc.) *and* End-User Consumer Pls.' Notice of Settlement with Defs. Mountaire Farms, LLC and Mountaire Farms of Delaware, Inc. and Defs. Koch Foods Inc., JCG Foods of Al. LLC, JCG Foods of Ga. LLC and Koch Meat Co., Inc., July 23, 2024, ECF No. 7342 (providing notice of settlement with Mountaire Farms Inc., Mountaire Farms, LLC, Mountaire Farms of Delaware, Inc., Koch Foods Incorporated, JCG Foods of Alabama LLC, JCG Foods of Georgia LLC and Koch Meat Co., Inc.).

[46] *See* Decl. of Shana E. Scarlett in Supp. of End-User Consumer Pls.' Uncontested Mot. for Prelim. Approval of Settlements with Claxton, Foster Farms, House of Raeford, Koch Foods, Mountaire, O.K. Foods, Perdue, Sanderson, Simmons, and Wayne Farms Defs. and Mot. to Direct Notice Regarding Harrison Poultry Settlement at ¶¶ 14, 28, Jan. 29, 2025, ECF No. 7495-1 (attaching Claxton settlement, signed Dec. 20, 2024).

[47] *See* Order Granting End-User Consumer Pls.' Uncontested Mot. for Prelim. Approval of Settlements and to Direct Notice at 3, Feb. 11, 2025, ECF No. 7500 (deferring notice of prior Harrison Poultry settlement allowed for cost-effective notice).

[48] Fed. R. Civ. P. 23(e).

EUCPs' Co-Lead Counsel moved for preliminary approval of the eve-of-trial settlements with Claxton, Foster, House of Raeford, Koch, Mountaire, O.K. Foods, Perdue, Sanderson, Simmons, and Wayne.[49] The Court preliminarily approved these settlements on March 10, 2025.[50] At the hearing, there were no objections to these settlements.[51]

Counsel engaged an experienced claims administrator, A.B. Data, to execute the notice process.[52] This Court approved Counsel and A.B. Data's notice plan earlier this year.[53] Since then, Counsel have been working with A.B. Data to execute that plan. Notice is underway. Counsel and A.B. Data have spent substantial resources and time responding promptly to class members' questions. The claims period will end on July 31, 2025.

**H.      Class Representatives worked hard on behalf of the EUCPs.**

The twenty-six EUCP class representatives[54] have continued to work diligently to prosecute the class's claims. They have stayed updated on case developments and communicated actively with counsel about major decisions. Some were prepared to undergo long, difficult days

---

[49] Mem. of Law in Supp. of End-User Consumer Pls.' Uncontested Mot. for Prelim. Approval of Settlements with Claxton, Foster Farms, House of Raeford, Koch Foods, Mountaire, O.K. Foods, Perdue, Sanderson, Simmons, and Wayne Farms Defs. and Mot. to Direct Notice Regarding Harrison Poultry Settlement, Jan. 29, 2025, ECF No. 7495.

[50] Order Granting Com. and Institutional Indirect Purchaser Pls.' Uncontested Mot. for Prelim. Approval of Settlements with Defs. House of Raeford, Koch Foods, Mountaire, O.K. Foods, Sanderson Farms, Simmons Foods, Agri Stats, Case Farms, Claxton, Foster Farms, Perdue, and Wayne Farms; Approval of Am. Harrison Poultry Settlement; and Approval of CIIPPs' Settlement Notice Program, Mar. 10, 2025, ECF No. 7536.

[51] Order Granting End-User Consumer Pls.' Uncontested Mot. for Prelim. Approval of Settlements and to Direct Notice at 2, Feb. 11, 2025, ECF No. 7500.

[52] Mem. of Law in Supp. of End-User Consumer Pls.' Uncontested Mot. for Prelim. Approval of Settlements with Claxton, Foster Farms, House of Raeford, Koch Foods, Mountaire, O.K. Foods, Perdue, Sanderson, Simmons, and Wayne Farms Defs. And Mot. to Direct Notice Regarding Harrison Poultry Settlement, Jan. 29, 2025, ECF No. 7495.

[53] Notification of Docket Entry, Feb. 11, 2025, ECF No. 7499.

[54] There are twenty-six class representatives, but two are married and would receive one service award to share between the two of them.

publicly testifying to their experience and enduring cross-examination by attorneys at some of the country's largest law firms. They also reviewed most recent settlement agreements with the entire classes' interests in mind.[55] Their hard work through trial preparation is the basis for this motion's service award request.

### III.    LEGAL STANDARD

The Seventh Circuit uses a market-mimicking approach to setting attorneys' fees in class action cases. This standard is well-briefed in this case and the related appeal.[56] This Court must estimate what fees and terms "private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)."[57]

In assessing what fees would appear in this "hypothetical ex ante bargain," the Court should weigh available market evidence, evaluate the amount of work involved, the non-payment risk, and representation quality.[58] In *Hale*, the Seventh Circuit identified four factors to determine the market rate: "(1) the actual agreements between the parties as well as fee agreements reached by sophisticated entities in the market for legal services; (2) the risk of non-payment at the outset of the case; (3) the caliber of Class Counsel's performance; and ([4]) information from other cases, including fees awarded in comparable cases."[59]

---

[55] Scarlett Decl. Ex. D (Class Representative Declarations).

[56] *See* Mem. of Law in Supp. of End-User Consumer Pls.' Renewed Mot. for Attorneys' Fees, Sept. 29, 2023, ECF No. 6911.

[57] *In re Broiler Chicken Antitrust Litig. (Broiler I)*, 80 F.4th 797, 801-02 (7th Cir. 2023) (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)).

[58] *Broiler I*, 80 F.4th at 802 (quoting *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011)).

[59] *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *1, *8 (S.D. Ill. Dec. 16, 2018) (citing *In re Synthroid Mktg. Litig.*, 264 F.3d at 719).

Bids that counsel submit at auctions in other cases to become class counsel may be relevant.[60] Bids with declining fee structures, in which counsel's fee percentage decrease as the settlement amount increases, should not "categorically be given little weight in assessing fees."[61] Similarly, out-of-Circuit cases with rules recommending smaller attorneys' fees in cases with huge common funds ("megafunds") are not categorically assigned less weight.[62] When assessing market rate, *ex post* fee awards in other cases are "less probative in assessing the bargain that would have been struck ex ante."[63]

## IV.    ARGUMENT

### A.    Sophisticated entities in the market for legal services request a one-third fee award, a figure comparable cases confirm.

The first and fourth *Hale* factors require the Court to consider both what sophisticated consumers of legal services would set as their fee and what fees have been awarded in comparable cases. This section discusses both factors.

In their first fee motion, EUCP Class Counsel requested a 33 percent fee award.[64] A single objector appealed.[65] The Seventh Circuit vacated the ruling and remanded for further assessment of data points relevant to the *ex ante* bargain analysis, specifically, (1) auction bids that Counsel made around the time this litigation began, (2) bids with declining fee structures, and (3) Ninth Circuit cases in which counsel was awarded fees under a megafund rule.[66]

---

[60] *See Broiler I*, 80 F.4th at 802.

[61] *Id.* at 803.

[62] *Id.* at 804.

[63] *Id.*

[64] Mem. in Supp. of End-User Consumer Pls.' Mot. for Attorneys' Fees, Expenses, and Class Representative Awards at 10, Oct. 27, 2021, ECF No. 5161.

[65] Mem. Op. and Order at 1, July 3, 2024, ECF No. 7309.

[66] *Id.* (citing *Broiler I*, 80 F.4th at 802-04).

On remand, this Court "reconsidered the prior attorneys' fee award in light of the Seventh Circuit's instructions" and two additional award examples Counsel provided. After conducting a detailed analysis and making additional findings, it awarded Counsel 30 percent.[67] It found that Counsel's bids to become lead counsel in three complex antitrust cases "can do no more than establish the floor of the market price range" since those cases followed a criminal investigation.[68] It found that their fee awards earned in twenty-nine cases from the Ninth Circuit "are not particularly good indicators of what the market would bear in this case."[69] And while it found "the declining fee schedule negotiated by the client in *Interest Rate Swaps* is relevant to the market price for legal services in antitrust class actions[,]"[70] it then found that Counsel would not have agreed to that schedule here.[71] Finally, it found the best evidence of the market rate for attorneys' fees is "just below 30%, with the median just above 30%."[72]

Applying this Court's first fee award findings to this fee motion is not just logically sound but legally required. The law-of-the-case doctrine requires that a court's "decision[s] should continue to govern the same issues in subsequent stages in the same case."[73] Similarly, "matters decided on appeal become the law of the case to be followed in all subsequent proceedings in the trial court[.]"[74] These findings strongly support a 30 percent award here.

---

[67] *Id.* at 15.

[68] *Id.* at 3-4.

[69] *Id.* at 6; *see also id.* at 5 ("the Ninth Circuit's megafund rule is evidence that 25% is likely not the market rate.").

[70] *Id.* at 7-8.

[71] *Id.* at 9.

[72] *Id.* at 11.

[73] *Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 912 (7th Cir. 2005) (quotation omitted).

[74] *Id.* at 912 (quotation omitted).

**B. This lawsuit's high-risk indicates EUCP class counsel would have negotiated a 30 percent fee award.**

Had EUCP Class Counsel bargained in 2016 with private plaintiffs, their experience and judgment would have led them to bargain for at least a 30% fee award.[75] In 2016, great risk of loss existed. For example, no criminal investigation preceded the EUCP's claims. Before EUCP Class Counsel filed the Complaint, Pilgrim's declared bankruptcy, and other chicken processors declared bankruptcy from 2010 through 2012.[76] The largest existing antitrust case in the agricultural or food sector was $303 million in the *Southeastern Milk Antitrust Litigation*,[77] but many class actions against similar defendants yielded much less. Even *Southeastern*'s recovery was dwarfed by billion-dollar settlements often attained in antitrust cases and well below the billion-dollar level associated with the Ninth Circuit's megafund rule. Class Counsel also knew no megafund rule would apply in this jurisdiction. No other animal protein price-fixing cases had been filed, much less had the success that they have now. Given that the median market rate for attorneys' fees in complex litigation like this antitrust action was above 30 percent,[78] these significant risk factors would have led EUCP Class Counsel to bargain for at least a 30 percent fee award.

---

[75] As articulated in the prior briefing, EUCP Class Counsel believe they would have negotiated a 33 percent fee award at the outset of this case. Scarlett Decl. ¶ 31. But this Court's findings as to the *ex ante* bargain analysis is binding and informs the *ex ante* rate here, so EUCP Class Counsel ask for a 30 percent award.

[76] *Pilgrim's Pride to File Plan of Reorganization and Disclosure Statement with U.S. Bankruptcy Court*, Pilgrim's Pride (Sept. 16, 2009), https://ir.pilgrims.com/news-releases/news-release-details/pilgrims-pride-file-plan-reorganization-and-disclosure-statement (last accessed Apr. 4, 2025); *Allen Family Foods Files for Bankruptcy Protection* (June 10, 2011), https://www.thepoultrysite.com/news/2011/06/allen-family-foods-files-for-bankruptcy-protection (last accessed Apr. 4, 2025); *Townsends Files for Bankruptcy* (Dec. 21, 2010), https://www.thepoultrysite.com/news/2010/12/townsends-files-for-bankruptcy (last accessed Apr. 24, 2024).

[77] Mem. Op. and Order at 8, July 3, 2024, ECF No. 7309.

[78] *Id.* at 11.

The Court already recognized many of these risks and others in its findings on the first fee motion; they remain relevant here and are undisturbed by the Seventh Circuit.[79] Concerning government investigations, the DOJ sued Agri Stats after this case was pending for two years. EUCP Class Counsel's "work appears to have prompted the government investigations that led to those indictments, *rather than the reverse*."[80] Further, EUCPs were "opposed by many defendants, including a number of very large and well-funded corporations, which have retained some of the most prominent and sophisticated law firms in the United States."[81] The Court acknowledged that its "92-page decision denying the motions to dismiss was a relatively close call."[82] Discovery began before the motion to dismiss was briefed and decided, so Counsel "was immediately incurring costs of time and money without any assurance of an award."[83] The Seventh Circuit only remanded the issue of the bargain the parties would have struck *ex ante*.[84] Thus this Court's findings concerning the risk of the case apply to this second fee motion.

Given these risks, EUCP Class Counsel would not have negotiated for a declining fee scale award in this conspiracy case. A declining fee scale award is one in which counsel recovers

---

[79] Mem. Op. and Order at 7, Oct. 7, 2022, ECF No. 5855; *see Broiler I*, 80 F.4th at 801 (addressing the Court's assessment of the risk facing counsel when they brought this case) and 804-05 (not reversing this finding); *see also U.S. v. Husband*, 312 F.3d 247, 251 (7th Cir. 2002) (discussing scope of remand doctrine). Since filing this case, EUCP Class Counsel achieved significant victories in other animal protein price fixing cases. *In re Pork Antitrust Litig.*, No. CV 18-1776, 2024 WL 2060386 (D. Minn. May 8, 2024) (certifying consumer class); *In re Turkey Antitrust Litig.*, No. 1:19-cv-8318, 2025 WL 264021 (N.D. Ill. Jan. 22, 2025) (certifying direct purchaser class); *In re Cattle Antitrust Litig.*, No. CV 19-1129, 2021 WL 7757881 (D. Minn. Sept. 14, 2021) (denying motion to dismiss consumer class's claims). None of this experience or success was available to Counsel when they developed and filed this case.

[80] Mem. Op. and Order at 8, Oct. 7, 2022, ECF No. 5855 (emphasis added).

[81] *Id.* at 7.

[82] *Id.*

[83] *Id.*

[84] *Broiler I*, 80 F.4th at 805.

an ever-smaller percent of attorneys' fees as the total settlement amount increases.[85] Whether a declining fee scale is appropriate "may depend on the particulars of the case."[86]

The particulars here make plain how inappropriate a declining fee scale is. This is a conspiracy case. Plaintiffs must prove that each Defendant conspired. The total settlement fund is the sum of each individual Defendants' settlement amounts. This case is not one in which counsel incurred "some marginal costs of bumping the recovery from $100 million to $200 million[.]"[87] Quite the opposite. EUCP Class Counsel's lodestar for recovering the first $181 million from six Defendants was over $46 million,[88] but over $16 million for recovering the next $22.35 million from the remaining ten Defendants.[89] At the outset of the case, EUCP Class Counsel would have negotiated a fee structure that kept them fully incentivized to recover from every single defendant (which is exactly what they did).

## C. This Court made, and the Seventh Circuit did not reverse, findings regarding the caliber of class counsel's performance.

EUCP Class Counsel used their significant antitrust and class action expertise to reap a recovery that outpaces expectations for indirect purchaser class actions. Only EUCP Class Counsel developed a rule of reason claim.[90] Adding this claim exposed evidence the processor Defendants used Agri Stats to share sensitive business information. These bold decisions paid

---

[85] Mem. Op. and Order at 5, Oct. 7, 2022, ECF No. 5855.

[86] *Broiler I*, 80 F.4th at 803.

[87] *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 959 (7th Cir. 2013).

[88] Decl. of Shana Scarlett in Supp. of Mem. in Supp. of EUCP's Mot. for Attorney's Fees, Expenses, and Class Representative Awards at 8, Oct. 27, 2021, ECF No. 5161-1; Decl. of Brent W. Johnson in Supp. of End-User Consumer Pls.' Mot. for Attorney's Fees, Expenses, and Class Representative Service Awards Submitted on Behalf of Cohen Milstein Sellers & Toll PLLC at 6, Oct. 7, 2021, ECF No. 5161-2.

[89] Scarlett Decl. ¶ 23; Johnson Decl. ¶ 3 and Johnson Decl. Ex. 1.

[90] End-User Consumer Pls.' Fifth Consol. Am. Class Action Compl. ¶¶ 197-215, Aug. 7, 2020, ECF No. 3747.

off. While direct purchaser classes typically recover more than two-and-a-half times what indirect purchaser classes recover,[91] the direct purchaser class's final recovery of $285,650,324 was only 1.4 times the $203,350,000 EUCP Class Counsel recovered here. And the other indirect purchaser class recovered $141,440,000 on behalf of commercial entities (approximately 70 percent of the consumer IPP recovery). These results speak to the high caliber of Class Counsel's performance here, especially considering EUCPs' smaller class period and fewer class products.

This Court previously found EUCP Class Counsel's performance during the period covered by the first fee motion exemplary, which the Seventh Circuit did not reverse.[92] This finding is respectfully still true. The same partners have continued to lead this case in the last four years as the previous four plus years.[93] These attorneys ultimately increased the total recovery for EUCPs by another $22.35 million.

**D.    A lodestar cross-check demonstrates the reasonableness of the fee request.**

Although cross-checking the requested fees against the lodestar is not required, the Seventh Circuit permits using it as an informative benchmark.[94] When combined with the previous fee award, the instant 30 percent fee request[95] would result in an overall award of modestly more than EUCP Class Counsel's lodestar[96] over the entire case. It would yield a

---

[91] "2019 Antitrust Annual Report: Class Action Filings in Federal Court" (hereinafter "2019 Antitrust Report") (available at https://ssrn.com/abstract=3696575).

[92] Mem. Op. and Order at 8, Oct. 7, 2022, ECF No. 5855; *see Broiler I*, 80 F.4th at 805.

[93] Scarlett Decl. ¶ 18.

[94] *See Williams*, 658 F.3d at 636 ("[C]onsideration of a lodestar check is not an issue of required methodology.").

[95] As described below, EUCP Class Counsel incurred a total of $9,914,092.86 in litigation expenses and claims administration costs. These expenses, and the class representative service award total of $50,000 must be subtracted from the $203,350,000 gross settlement award before applying the 30% rate. Thirty percent of the net settlement fund of $12,385,907.14 is $3,715,772.14. *See* Scarlett Decl. ¶¶ 29-31.

[96] The lodestar does not include work related to the litigation of fees.

multiplier of 1.19 when compared to their lodestar. Courts in this district have observed that lodestar multipliers commonly fall between 2 and 5.[97] A multiplier of modestly more than 1 is plainly below that range. If the multiplier were calculated solely based on the lodestar incurred and settlements achieved since the first fee petition, it would be less than a quarter of the lodestar. A fee award of less than a quarter of the fees incurred is plainly warranted.[98]

### E. EUCP Class Counsel should be reimbursed fully for litigation expenses and claims administration costs.

EUCP Class Counsel may recover litigation expenses and claims administration costs consistent with what the private market would permit.[99]

EUCP Class Counsel previously sought reimbursement for only part of the costs incurred at the time of the first fee motion briefing; specifically, for $8.75 million of the over $9 million litigation expenses incurred through October 21, 2021.[100] In this first fee motion, Counsel explained that they "will seek reimbursement for the remaining $257,062.95 if the class recovers additional funds, in addition to any additional expenses incurred during further litigation."[101]

---

[97] *Spano v. Boeing Co.*, No. 06-cv-743, 2016 WL 3791123, at *3 (S.D. Ill. Mar. 31, 2016).

[98] That award should apply equally to interest accrued on the settlement funds. *See, e.g.*, *Hale*, No. 12-0660-DRH, 2018 WL 6606079, at *16 ("Further, the Court also GRANTS Class Counsel's motion for attorneys' fees and costs. Class Counsel are awarded (1) $6,971,852.80 as reimbursement of reasonable litigation costs; and (2) attorneys' fees in the amount of one-third (33.33%) of the $250 million common fund, net of the $2.1 million estimated for settlement notice and administration, *but inclusive of interest accrued on the fund at the time of distribution*." (emphasis added)); *Standard Iron Works v. ArcelorMittal*, No. 08 C 5214, 2014 WL 7781572, at *3 (N.D. Ill. Oct. 22, 2014) (approving a 33.3% award of attorneys' fees where "Net Settlement Funds" were defined as "the monies deposited into escrow pursuant to the approved Settlement agreements, *plus all accrued interest on those accounts*" (emphasis added)).

[99] *See In re Synthroid Mktg. Litig.*, 264 F.3d at 722.

[100] Decl. of Shana Scarlett in Supp. of Mem. in Supp. of EUCP's Mot. for Attorney's Fees, Expenses, and Class Representative Awards ¶ 24, Oct. 27, 2021, ECF No. 5161-1 (stating that $9,007,062.95 in litigation expenses were incurred by Oct. 27, 2021).

[101] *Id.*

Counsel move now to recover the remaining expenses identified in the first fee motion—$257,062.95—plus the additional litigation expenses, and claims administration costs incurred after the time period covered by that first motion.[102] As with the fees request, EUCP Class Counsel informed class members that they would seek reimbursement of up to $9.75 million in out-of-pocket expenses incurred to advance this litigation.[103]

The class notice and claims administration costs are not optional. Satisfying the notice standard set out by federal due process and the Federal Rule of Civil Procedure requires considerable resources. Because class members are bound by the results of a certified Rule 23(b)(3) class action unless they affirmatively opt out, this class notice is required by constitutional due process to protect absent class members' rights. The Federal Rules require members of a class certified under Rule 23(b)(3) receive the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[104] EUCP Class Counsel and the court-approved claims administrator, A.B. Data, have and continue to work diligently to ensure this standard is satisfied for a class with an estimated 30 million members. To protect the EUCPs' settlement fund, in January 2025, EUCP

---

[102] These litigation expenses have two sources. The Co-Lead firms established a common fund at the suit's outset, not knowing if that investment would be returned. Between October 22, 2021 and April 1, 2025, EUCP Class Counsel spent $5,043,218.24 in litigation expenses from this common fund to pursue these claims. Scarlett Decl., ¶¶ 26, 29, Ex. B. Separate from this fund, both firms also incurred out-of-pocket expenses. Hagens Berman incurred $94,350.09 in unreimbursed, out-of-pocket expenses from October 1, 2021 through April 1, 2025 on the EUCPs' behalf. *Id.*, Ex. C. Cohen Milstein incurred $18,012.81 in unreimbursed, out-of-pocket expenses on the EUCPs' behalf during this same period. A detailed accounting of these expenses is included in the attorney declarations attached to this motion. Scarlett Decl., Exs. A-C; Johnson Decl.¶ 7 and Johnson Decl. Ex. 2.

[103] Decl. of Eric Schachter in Supp. of Pls.' Mot. to Approve the Manner and Form of Class Notice at 25, Jan. 29, 2025, ECF No. 7495-2 (indicating in notice document); Order Granting End-User Consumer Pls.' Uncontested Mot. for Prelim. Approval of Settlements and to Direct Notice, Feb. 11, 2025, ECF No. 7500 (approving this notice document). This $9.75 million would be in addition to the $8.75 million requested in the first fee motion.

[104] Fed. R. Civ. P. 23 (c)(2)(B).

Class Counsel negotiated with A.B. Data a cap of $1,850,000 for all future notice and administrative costs.[105]

Another significant expense category is attributed to expert witnesses who directly benefited the EUCP class's case. Proving a theory of antitrust harm in a price fixing case as complex as this one, with multiple classes at different rungs in the commerce chain, requires significant support from expert economists. Cases of this size routinely require more than one expert witness to address all aspects of the case and to aid a jury in understanding the complex material.

The remaining expenses are common in complex antitrust matters of this scope. Travel,[106] filing fees, legal research database fees, photocopying, and related office expenses are typical and represent a fraction of the overall requested expenses.

## F. After nearly a decade of service, the class representatives request a $2,000 service award.

Each class representative served on this case until the eve of trial. They worked closely with counsel to prepare for trial until just before the parties settled. They took an active role in reviewing and approving the final, full-length settlements on the entire EUCPs' behalf. This case has been pending for almost a decade, and these class representatives have served admirably during this entire period. Each class representative has submitted a declaration attesting to their support for these settlements, and their work on the case.[107] A $2,000 incentive payment would compensate them for their time and service on the entire class's behalf. Counsel request this

---

[105] Decl. of Eric Schachter in Supp. of Pls.' Mot. to Approve the Manner and Form of Class Notice at 9, Jan. 29, 2025, ECF No. 7495-2.

[106] None of the requested expenses include travel to or from the Seventh Circuit's oral argument over the fee motion appeal.

[107] Scarlett Decl. Ex. D.

incentive award in addition to the $2,000 service award requested in the first fee motion, bringing each class representatives' total service awards to $4,000.[108] Courts in this jurisdiction consistently grant incentive payments at or above this amount.[109]

## V. CONCLUSION

Counsel respectfully request: (1) an award of attorneys' fees in the amount of 30 percent of the $22,350,000 settlement fund, applied after excluding all expenses (*i.e.*, $3,715,772.14); (2) $2,969,956.21, which is 30 percent of $9,899,854.04 interest accrued on the total settlement fund; (3) reimbursement of $9,914,092.86 in expenses and claims administration costs[110]; and (4) twenty-five (25), $2,000 service awards for the Named Plaintiffs, for a total of $50,000 in service awards.

---

[108] There are twenty-six (26) total class representatives, but Counsel request only twenty-five (25) total awards; two class representatives are married to each other and will share a service award. *See* Mem. in Supp. of End-User Consumer Pls.' Mot. for Attorneys' Fees, Expenses, and Class Representative Awards at 20, Oct. 27, 2021, ECF No. 5161; Mem. Op. and Order at 12, Oct. 7, 2022, ECF No. 5855 (Order Granting EUCP Class Counsel's First Fees Motion).

[109] *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 949 (N.D. Ill. 2022), *appeal dismissed sub nom. In re Tiktok Inc., Consumer Priv. Litig.*, No. 22-2682, 2022 WL 19079999 (7th Cir. Oct. 12, 2022) (finding persuasive an empirical study concluding the median incentive award across all case types in 2021 was $6,450 per plaintiff and the mean per plaintiff was $14,371); *see also* § 17:8. Size of incentive awards, 5 Newberg and Rubenstein on Class Actions § 17:8 (6th ed.); *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992) ("Since without a named plaintiff there can be no class action, such compensation as may be necessary[...]").

[110] The first fee motion requested a portion of expenses paid for by the Co-Lead's joint litigation fund since the case inception through October 21, 2021. Decl. of Shana Scarlett in Supp. of Mem. in Supp. of EUCP's Mot. for Attorney's Fees, Expenses, and Class Representative Awards ¶ 24, Oct. 27, 2021, ECF No. 5161-1. The two Co-Lead firms also moved for out-of-pocket, unreimbursed litigation costs from the case's inception through September 2021. *Id.* ¶ 26 (Hagens Berman), Decl. of Brent W. Johnson in Supp. of End-User Consumer Pls.' Mot. for Attorney's Fees, Expenses, and Class Representative Service Awards Submitted on Behalf of Cohen Milstein Sellers & Toll PLLC ¶ 6, Oct. 7, 2021, ECF No. 5161-2 (Cohen Milstein).

DATED: April 29, 2025                    HAGENS BERMAN SOBOL SHAPIRO LLP

                                        */s/ Shana E. Scarlett*
                                            Shana E. Scarlett
                                        HAGENS BERMAN SOBOL SHAPIRO LLP
                                        715 Hearst Avenue, Suite 300
                                        Berkeley, CA 94710
                                        Telephone: (510) 725-3000
                                        shanas@hbsslaw.com

                                        Steve W. Berman (IL Bar No. 3126833)
                                        Breanna Van Engelen
                                        1301 Second Avenue, Suite 2000
                                        Seattle, WA 98101
                                        Telephone: (206) 623-7292
                                        steve@hbsslaw.com
                                        breannav@hbsslaw.com

                                        Elaine T. Byszewski
                                        HAGENS BERMAN SOBOL SHAPIRO LLP
                                        301 North Lake Avenue, Suite 920
                                        Pasadena, CA 91101
                                        Telephone: (213) 330-7150
                                        elaine@hbsslaw.com


DATED: April 29, 2025                    */s/ Brent W. Johnson*
                                            Brent W. Johnson
                                        Benjamin D. Brown
                                        Daniel H. Silverman
                                        Alison Deich
                                        COHEN MILSTEIN SELLERS & TOLL, PLLC
                                        1100 New York Ave. NW
                                        Suite 800, West Tower
                                        Washington, DC 20005
                                        Telephone (202) 408-4600
                                        bjohnson@cohenmilstein.com
                                        bbrown@cohenmilstein.com
                                        dsilverman@cohenmilstein.com
                                        adeich@cohenmilstein.com

                                        *Co- Lead Counsel for End-User Consumer Plaintiff
                                        Class*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on April 29, 2025, a true and correct copy of the foregoing was electronically filed via CM/ECF, which caused notice to be sent to all counsel of record.

/s/ Shana E. Scarlett
Shana E. Scarlett