**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 TMD |
| This Document Relates To: *All Commercial & Institutional Indirect Purchaser Plaintiff Actions* | Hon. Thomas M. Durkin Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM IN SUPPORT OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS**

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................ 1

II.  PROCEDURAL BACKGROUND ................................................................................ 3

III. ARGUMENT ................................................................................................................. 6

  A.  CLASS COUNSEL'S REQUEST FOR ONE-THIRD OF THE SETTLEMENT FUND
     SHOULD BE GRANTED ........................................................................................... 7

    1.  CIIPPs' Agreements and the Market Price Weigh in Favor of Granting the Request ..... 9

    2.  The Substantial Risk of Non-Payment Also Weighs in Favor of Granting CIIPPs' Fee
       Request ............................................................................................................... 11

    3.  The Caliber of Class Counsel and the Amount of Work Performed Weigh Heavily in
       Favor of Granting the Request ........................................................................... 16

    4.  Comparable Cases Favor Granting CIIPPs' Request ................................................. 17

    5.  A Lodestar Cross-Check Confirms the Reasonableness of the Request ..................... 18

  B.  CIIPPs' EXPENSES REQUEST SHOULD BE GRANTED ............................................. 19

  C.  THE CLASS REPRESENTATIVES SHOULD RECEIVE SERVICE AWARDS FOR
     THEIR CONSIDERABLE TIME AND EFFORT ........................................................... 20

IV. CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Americana Art China Co. v. Foxfire Printing & Packaging, Inc.,*
743 F.3d 243 (7th Cir. 2014) .................................................................................... 6

*Arenson, et al. v. Bd. of Trade of City of Chicago,*
372 F. Supp. 1349 (N.D. Ill. 1974) ......................................................................... 17

*Beesley v. Int'l Paper Co.,*
No. 3:06–cv–703–DRH–CJP, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ............... 7

*Camp Drug Store, Inc. v. Cochran Wholesale Pharm, Inc.,*
897 F.3d 825 (7th Cir. 2018) .................................................................................. 21

*Chambers v. Together Credit Union,*
No. 19-CV-00842-SPM, 2021 WL 1948452 (S.D. Ill. May 14, 2021) ..................... 6

*Chun-Hoon v. McKee Foods Corp.,*
716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................................... 16

*City of Greenville v. Syngenta Crop Prot., Inc.,*
904 F. Supp. 2d 902 (S.D. Ill. 2012) ...................................................................... 10

*Cook v. Niedert,*
142 F.3d 1004 (7th Cir. 1998) ................................................................................ 20

*Domann v. Summit Credit Union,*
No. 18-cv-167-wmc, 2020 WL 1847868 (W.D. Wisc. April 13, 2020) .................... 19

*Florin v. Nationsbank of Georgia, N.A.,*
34 F.3d 560 (7th Cir. 1994) ................................................................................. 6, 7

*Gaskill v. Gordon,*
160 F.3d 361 (7th Cir. 1998) .................................................................................. 17

*Gong-Chun v. Aetna Inc.,*
No. 1:09-cv-01995-SKO, 2012 WL 2872788 (E.D. Cal. July 12, 2012) ................. 16

*Hale v. State Farm Mut. Auto. Ins. Co.,*
2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ....................................................... 8, 17

*Heekin v. Anthem, Inc.,*
No. 1:05-cv-01908-TWP-TAB, 2012 WL 5878032, at (S.D. Ind. Nov. 20, 2012) ........ 10

*In re Broiler Chicken Antitrust Litig.*,
   No. 16 C 8637, 2021 WL 5578878 (N.D. Ill. Nov. 30, 2021) .................................. 10

*In re Broiler Chicken Antitrust Litig.,*
   No. 16 C 8637, 2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) ............................ passim

*In re Broiler Chicken Antitrust Litig.,*
   No. 16 C 8637, 2022 WL 6124787 (N.D. Ill. Oct. 7, 2022) .................................. 20

*In re Broiler Chicken Antitrust Litig.,,*
   80 F.4th 797 (7th Cir. 2023) ..................................................................... 20

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................................ 9

*In re Comverse Tech., Inc. Sec. Litig.,*
   No. 06-CV-1825 (NGG), 2010 WL 2653354 (E.D.N.Y. June 24, 2010) .................... 9

*In re Dairy Farmers of Am., Inc.,*
   80 F. Supp. 3d 838 (N.D. Ill. 2015) ........................................... 6, 7, 11, 18

*In re FedEx Ground Package System, Inc., Employment Practices Litigation,*
   251 F.Supp.3d 1225 (N.D. Ind. 2017) ......................................................... 7

*In re Flonase Antitrust Litig.,*
   291 F.R.D. 93 (E.D. Pa. 2013) .................................................................. 11

*In re Linerboard Antitrust Litig.*,
   No. CIV.A. 98-5055, 2004 WL 1221350 (E.D. Pa. June 2, 2004) .......................... 12

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...................... 16

*In re Ready-Mixed Concrete Antitrust Litig.*,
   No. 1:05-cv-00979, 2010 WL 3282591, at (S.D. Ind. Aug. 17, 2010) ...................... 8

*In re Synthroid Mktg. Litig.,*
   264 F.3d 712 (7th Cir. 2001) .................................................................... 8

*In re TFT-LCD (Flat-Panel) Antitrust Litig.*,
   2013 WL 149692 (N.D. Cal. Apr. 3, 2013) .................................................. 16

*In re Trans Union Corp. Privacy Litig.*,
   629 F.3d 741 (7th Cir. 2011) .................................................................... 9

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015) ............................................................................ 17

*Leung v. XPO Logistics, Inc.*,
   326 F.R.D. 185 (N.D. Ill. 2018) ...................................................................... 10, 18

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ............................................................................................ 20

*Pierce v. Visteon Corp*,
   No. 1:05-cv-01325-LJM, 2014 WL 941311 (S.D. Ind. Mar. 11, 2014) ................... 7

*Silverman v. Motorola Sols., Inc.*,
   739 F.3d 956 (7th Cir. 2013) ........................................................................... 7, 11

*Steele v. GE Money Bank,*
   No. 1:08-civ-1880, 2011 WL 13266350 (N.D. Ill. May 17, 2011) .......................... 7

*Sutton v. Bernard*,
   504 F.3d, 688 (7th Cir. 2007) ............................................................................ 7, 8

*Taubenfeld v. AON Corp.*,
   415 F.3d 597 (7th Cir. 2005) .............................................................................. 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................................. 12

*Williams v. Rohm & Haas Pension Plan*,
   658 F.3d 629 (7th Cir. 2011) .......................................................................... 8, 18

## **Rules**

Fed. R. Civ. P. 23(h) ...................................................................................... 6, 20

## I. INTRODUCTION

After nearly nine years of tireless advocacy, counsel for the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs") have secured settlements with all remaining Defendants that will bring this litigation to a close for the CIIPP class. Since CIIPPs' first motion for attorneys' fees, reimbursement of expenses, and class representative service awards in January 2022, (ECF No. 5404), CIIPPs have secured monetary settlements with Defendants Harrison Poultry, Inc., House of Raeford Farms, Inc.; Koch Foods,[1] Mountaire,[2] O.K. Foods,[3] Sanderson Farms,[4] and Simmons Foods[5] which provide monetary consideration in the amount of forty-one million, two hundred fifty thousand dollars ($41,250,000). When combined with the prior CIIPP settlements, the total amount that counsel has recovered on behalf of the CIIPP class is $145,140,000.[6] ECF No. 7506 ¶ 13.

CIIPPs have also secured favorable, nonmonetary settlements with Agri Stats, Inc., Case Foods,[7] Claxton,[8] Foster Farms,[9] Perdue,[10] and Wayne Farms, LLC, all of whom prevailed against the CIIPP Class at summary judgment and were fully dismissed from the case. The CIIPP Class

---

[1] The Koch Foods Defendants are Koch Foods, Inc., JCG Foods of Alabama, LLC., JCG Foods of Georgia, LLC, and Koch Meat Co., Inc.

[2] The Mountaire Defendants are Mountaire Farms, LLC and Mountaire Farms of Delaware, Inc.

[3] The O.K. Foods Defendants are O.K. Foods, Inc., O.K. Farms, Inc., and O.K. Industries, Inc.

[4] The Sanderson Defendants are Sanderson Farms, LLC (f/k/a Sanderson Farms, Inc.), Sanderson Farms Foods, LLC (f/k/a Sanderson Farms, Inc. (Foods Division)), Sanderson Farms Production, LLC (f/k/a Sanderson Farms, Inc. (Production Division)), and Sanderson Farms Processing, LLC (f/k/a Sanderson Farms, Inc. (Processing Division).

[5] The Simmons Foods Defendants are Simmons Foods, Inc. and Simmons Prepared Foods, Inc.

[6] This total is inclusive of the finally approved CIIPP settlements with Defendants Fieldale, Amick, Peco, George's, Mar-Jac, Pilgrim's, and Tyson totaling $103,890,000 (ECF Nos. 1910, 3696, 4113, 5363, and 5536).

[7] The Case Foods Defendants are Case Foods, Inc., Case Farms, LLC, and Case Farms Processing, Inc.

[8] The Claxton Defendants are Norman W. Fries, Inc. d/b/a Claxton Poultry Farms.

[9] The Foster Farms Defendants are Foster Farms, LLC and Foster Poultry Farms.

[10] The Perdue Defendants are Perdue Farms, Inc. and Perdue Foods LLC.

has agreed to not appeal or otherwise challenge the summary judgment orders in exchange for these Defendants agreeing to waive their recoverable costs as against CIIPP class members for prevailing at summary judgment. Although CIIPPs believe there is the possibility of success on appeal, these settlements eliminate the risk of having to pay any recoverable costs if an appeal was lost. This Court granted preliminary approval of these settlements on March 10, 2025 (ECF No. 7536).

These significant settlements illustrate the talent, competence, and hard work of Co-Lead Counsel[11] and other law firms[12] (jointly "Class Counsel") that provided excellent representation in prosecuting this case on behalf of the CIIPPs from its inception to its conclusion. The requested award of one third of the Settlement Fund is fair and reasonable and would appropriately compensate CIIPPs' Class Counsel for the enormous risk and investment undertaken in this complex and nearly decade-long case.

Class members have received notice of, and will have an opportunity to be heard on, this motion. Class Counsel informed all class members that they would seek an award of attorneys' fees not to exceed 33 and 1/3% of the Settlement Fund, reimbursement of litigation expenses not to exceed $5,500,000, and service awards not to exceed $15,000 per class representative. In addition to filing this motion via ECF, Class Counsel also informed class members that it will be posted on the case website, www.chickencommercialsettlement.com. Finally, class members were informed through CIIPPs' Court-approved class notice program they may object to any portion of the settlements or this motion and that the deadline to do so is June 19, 2025. ECF No. 7536.

---

[11] On October 14, 2016, this Court appointed Gustafson Gluek PLLC and Cotchett, Pitre & McCarthy, LLP as interim co-lead counsel. ECF No. 144.

[12] Co-Lead Counsel supervised the work of a number of supporting law firms that assisted with prosecuting the CIIPPs' case.

Before the fairness hearing on July 30, 2025, Class Counsel will report any objections lodged by members of the class and respond thereto. *See id*.

With qualified class members in the process of submitting claims to receive proceeds from the Settlement Fund, CIIPPs respectfully bring this motion seeking an order granting Class Counsel one-third of the settlement fund in an award of attorneys' fees (after deduction of expenses and service awards), reimbursement of litigation expenses in the amount of $4,919,174.15, and a service award ranging from $5,000 to $15,000 for each Class Representative in this matter.

## II.    PROCEDURAL BACKGROUND

As the Court is aware, the procedural background of this case is long and complicated. For the sake of this motion, CIIPPs provide only a brief summary of CIIPPs' first motion for attorneys' fees and the relevant events that have taken place since then.

On January 28, 2022, CIIPPs filed their first Motion for Payment of Attorneys' Fees, Reimbursement of Expenses, and Class Representative Service Awards. ECF No. 5404. Included in that motion were the following settlements: (1) Fieldale for $1.4 million, (ECF Nos. 5517-1 at ¶9, 5536); (2) Amick for $2.95 million, (ECF Nos. 5517-1 at ¶12, 5536); (3) Peco for $3.525 million, (ECF Nos. 5517-1 at ¶14, 5536); (4) George's for $3.525 million, (ECF Nos. 5517-1 at ¶16, 5536); (5) Mar-Jac for $5.99 million, (ECF Nos. 5517-1 at ¶20, 5536); (6) Pilgrim's for $44 million (plus up to $1 million additional to be used for notice and settlement administration), (ECF Nos. 5517-1 at ¶19, 5536); and (7) Tyson for $42.5 million, (ECF Nos. 5517-1 at ¶18, 5536). The total Settlement Fund at that time was $104,890,000, $1,000,000 of which was earmarked exclusively for notice and claims administration. ECF No. 5406.

CIIPPs sought an interim award of attorneys' fees of one-third of the settlement fund, or $31,000,833.46. Id.; see also ECF No. 5543 ¶ 1. CIIPPs supported this fee request in part through

a lodestar "cross-check," which reflected Class Counsel's lodestar from inception through August 31, 2021. ECF No. 5406 ¶ 18. Based on this lodestar, the Court calculated that the requested interim attorneys' fee award represented a negative multiplier of .77. ECF No. 5543 at 2. Additionally, CIIPPs sought reimbursement of $10,407,499.62 for expenses (reflecting all expenses incurred from inception to August 31, 2021), and asked for service awards of $15,000 for each of the 32 class representatives ($480,000.00 total). Id.; see also ECF No. 5543 ¶ 1. There were no objections and the Court granted CIIPPs' motion on April 19, 2022. ECF No. 5543.

On May 27, 2022, after heavily contested briefing, dueling expert reports, and a two-day evidentiary hearing, this Court certified the CIIPPs' litigation classes. See ECF No. 5644.13 The foregoing classes exclude all persons and entities that previously filed a valid exclusion (i.e., opt-out) from the litigation class as set forth in ECF No. 6566-5.

On July 25, 2023, this Court preliminarily approved a $2,800,000 Settlement between CIIPPs and Harrison Poultry. See ECF No. 6694. Consistent with the Court's preliminary approval order, CIIPPs deferred providing notice of that settlement until it could be combined with other settlements. See ECF No. 6694 ¶ 5.

On June 30, 2023, the Court granted summary judgment to Defendants Agri Stats, Case Foods, Claxton, Foster Farms, Perdue, and Wayne Farms, as to all of CIIPPs' claims. See ECF No. 6641.

In September and October of 2023, the Track 1 DPPs tried their case to verdict against

---

[13] The damages class is defined as "All entities that purchased Broilers indirectly from a Defendant or named co-conspirator in an Indirect Purchaser State for their own use in commercial food preparation from January 1, 2009, until July 31, 2019." ECF No. 5644 at 3-4 & n.2, 55. The injunctive relief class is defined as: "All entities that purchased Broilers indirectly from a Defendant or named co-conspirator in the United States for their own use in commercial food preparation from January 1, 2009, until July 31, 2019." ECF No. 6566-2.

4

Sanderson Farms. The jury returned a defense verdict completely in favor of Sanderson Farms, concluding that the DPPs had not demonstrated by a preponderance of the evidence that there was a conspiracy among any chicken producers to limit the supply of Broiler chicken, including Sanderson Farms. See ECF Nos. 7001, 7014, 7015. Meanwhile, CIIPPs began preparing their case for a March 12, 2024 trial against House of Raeford, Koch Foods, Mountaire, O.K. Foods, Sanderson Farms, and Simmons Foods—the then-remaining Defendants in the CIIPP action. Co-Lead Counsel simultaneously engaged in extensive arm's-length settlement negotiations and, weeks prior to trial, reached settlements in principle with all of the remaining Defendants.

On February 12, 2025, CIIPPs moved for preliminary approval of the settlements with the remaining defendants. ECF No. 7504. The monetary settlements consisted of the following: House of Raeford for $5,750,000 (ECF No. 7506-1); Koch Foods for $13,500,000 (ECF No. 7506-2); Mountaire for $9,700,000 (ECF No. 7506-3); O.K. Foods for $4,500,000 (ECF No. 7506-4); Simmons Foods for $4,250,000 (ECF No. 7506-5); and Sanderson Farms for $750,000 (ECF No. 7506-6). CIIPPs also moved for preliminary approval of an Amended Settlement Agreement with Harrison Poultry ($2,800,000), which included minor modifications to make the Harrison agreement consistent with the terms of the rest of the settlements detailed herein. See ECF Nos. 6694, 7536. CIIPPs also sought approval for non-monetary settlements with Agri Stats[14] (ECF No. 7506-8); Case Farms (ECF No. 7506-9); Claxton (ECF No. 7506-10); Foster Farms (ECF No. 7506-11); Perdue (ECF No. 7506-12); and Wayne Farms (ECF No. 7506-13). The Court granted preliminary approval of these settlements on March 10, 2025. ECF No. 7536.

Accordingly, the Net Settlement Fund on which the CIIPPs propose Class Counsel's fee

---

[14] As part of the settlement, Agri Stats agreed to provide six free months of their Broiler price reporting service offered by Express Markets, Inc. to class members. ECF No. 7506-8 § II.D.2.

request should be based is calculated as follows:

|  | Amount |
|---|---|
| Harrison Poultry Settlement Fund | $2,800,000.00 |
| House of Raeford Settlement Fund | $5,750,000.00 |
| Koch Foods Settlement Fund | $13,500,000.00 |
| Mountaire Settlement Fund | $9,700,000.00 |
| O.K. Foods Settlement Fund | $4,500,000.00 |
| Simmons Foods Settlement Fund | $4,250,000.00 |
| Sanderson Farms Settlement Fund | $750,000.00 |
| **Total of Settlements at Issue** | **$41,250,000.00** |
| Interest Earned on the Settlements at Issue[15] | $750,409.00 |
| Outstanding Litigation Expenses | $4,919,174.15 |
| Requested Class Representative Service Awards | $235,000.00 |
| **Net Settlement Fund** | **36,846,234.85** |

## III.     ARGUMENT

Rule 23 permits the Court to award reasonable attorneys' fees and expenses in class actions.

Fed. R. Civ. P. 23(h). In the Seventh Circuit, courts have discretion to use the percentage of the

fund method or the lodestar approach. *See, e.g., Americana Art China Co. v. Foxfire Printing &*

*Packaging, Inc.*, 743 F.3d 243 (7th Cir. 2014) ("Both the lodestar approach and the percentage

approach may be appropriate in determining attorney fee awards, depending on the

circumstances."); *Florin v. Nationsbank of Georgia, N.A.,* 34 F.3d 560, 566 (7th Cir. 1994) (same).

In cases such as this one, the preferred method in the Seventh Circuit is to use the percentage of

the fund approach. *See, e.g., Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021

WL 1948452, at *1 (S.D. Ill. May 14, 2021) ("[T]he percentage method is employed by the vast

majority of courts in the Seventh Circuit"); *In re Dairy Farmers of Am., Inc.,* 80 F. Supp. 3d 838,

845 (N.D. Ill. 2015) (the percentage method has "emerged as the favored method for calculating

---

[15] The Court's order granting CIIPPs' first motion for attorneys' fees included a 33 1/3% fee including interest earned on the settlement funds. ECF No. 5543 at 3. CIIPPs propose the same methodology be used here. The interest number here reflects the present value of the settlement funds. CIIPPs will provide updated numbers reflecting any additional interest and the payment of any taxes at the time of the final approval hearing.

fees in common–fund cases in this district"); *Beesley v. Int'l Paper Co.*, No. 3:06–cv– 703–DRH–CJP, 2014 WL 375432, at *2 (S.D. Ill. Jan. 31, 2014) ("When determining a reasonable fee, the Court of Appeals for the Seventh Circuit uses the percentage basis rather than a lodestar or other basis.") (citation omitted).

This Court has already recognized the percentage of the fund method as the "emerge[nt]" and "favored method for calculating fees in common-fund cases[.]" *Dairy Farmers,* 80 F.Supp.3d at 844; *see also Steele v. GE Money Bank*, No. 1:08-civ-1880, 2011 WL 13266350, at *1, *5 (N.D. Ill. May 17, 2011), *report and recommendation adopted*, 2011 WL 13266498 (N.D. Ill. Jun. 1, 2011) ("The Seventh Circuit favors the use of the percentage of the fund method for calculating attorneys' fees in a common fund case."); *Pierce v. Visteon Corp*, No. 1:05-cv-01325-LJM, 2014 WL 941311, at *1, *11 (S.D. Ind. Mar. 11, 2014) (recognizing that "the Seventh Circuit has noted the advantages of the percentage of the fund method" over the lodestar method);  *In re FedEx Ground Package System, Inc., Employment Practices Litigation*, 251 F.Supp.3d 1225, 1236 (N.D. Ind. 2017) ("Our court of appeals [the Seventh Circuit] favors the percentage-of-the-fund fee in common fund cases").  Unlike the lodestar calculation, a percentage fee is easily calculable and does not require the Court to scrutinize years of billing records. *See Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565–566 (7th Cir. 1994).

## A.    CLASS COUNSEL'S REQUEST FOR ONE-THIRD OF THE SETTLEMENT FUND SHOULD BE GRANTED

To determine the reasonableness of attorney's fees in a common fund case, such as this, "courts must do their best to award counsel the 'market price' for the legal services" they provided. *Sutton v. Bernard*, 504 F.3d, 688, 692 (7th Cir. 2007); *see also Silverman v. Motorola Sols., Inc.,* 739 F.3d 956, 957 (7th Cir. 2013) ("[A]ttorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services.").

7

In the antitrust class action context, the "market price" is most commonly one third of the common fund recovered, as this Court has recognized. ECF No. 5543 (approving interim attorneys' fees of one third of the Settlement Fund to CIIPPs' Class Counsel); ECF No. 5229 at 10 ("There is simply little to no precedent recommending anything other than an award of 33 percent. With the only real evidence of the "market rate" being one-third, that is what the Court will award."); *see also In re Ready-Mixed Concrete Antitrust Litig.*, No. 1:05-cv-00979, 2010 WL 3282591, at *1, *3 (S.D. Ind. Aug. 17, 2010); *see also* Declaration of Professor Robert Klonoff in Support of Commercial and Institutional Indirect Purchaser Plaintiffs' Response to this Court's August 4, 2021 Minute Entry ECF No. 5050-1 ("Klonoff Decl.") ¶¶ 60-67.[16] "[T]he district court must try to assign fees that mimic a hypothetical *ex ante* bargain between the class and its attorneys." *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011); *accord, e.g., Sutton*, 504 F.3d at 693.

The Seventh Circuit permits courts to consider four factors to determine the "market rate" in a case such as this: (1) the actual agreements between the parties, as well as fee agreements reached by entities in the market for legal services; (2) the risk of non-payment at the outset of the case; (3) the caliber of Class Counsel's performance; and (4) information from other cases, including fees awarded in comparable cases. *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *1, *8 (S.D. Ill. Dec. 16, 2018) (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719

---

[16] In connection with DPPs' motion for an interim award of attorneys' fees, the Court requested briefing from DPPs on several questions regarding the appropriate measure and methodology for awarding attorneys' fees in this case, and invited briefs from the other Plaintiff Classes as well. ECF No. 4915. The CIIPPs submitted a declaration from Lewis & Clark Law School Professor Robert Klonoff. ECF No. 5050-1. The Court considered DPPs' and CIIPPs' expert declarations and found "both declarations very helpful and has relied on them in preparing this opinion and order [granting DPPs' interim attorneys' fees, litigation expenses, and Class Representative service awards]." ECF No. 5229.

(7th Cir. 2001)).   Consideration of the foregoing factors weigh heavily in favor of the Court granting CIIPPs' attorneys' fee request.

1.    **CIIPPs' Agreements and the Market Price Weigh in Favor of Granting the Request**

The Seventh Circuit has directed district courts "to estimate the contingent fee that the class would have negotiated with Class Counsel at the outset of the litigation . . . ." *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 794 (N.D. Ill. 2015) (quoting *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 744 (7th Cir. 2011)). Here, because there are legal agreements that contain fee provisions between CIIPPs' Class Counsel and class representatives with a "real stake" in the outcome, these agreements favor granting the one-third fee request.

The agreements with the Class Representatives here fall into two groups: (1) agreements that expressly state Class Counsel may receive one-third of any common fund created, and (2) agreements that expressly state Class Counsel may receive an award of attorneys' fees from a common fund, but do not specify the precise percentage to be awarded.[17] Joint Declaration of CIIPPs' Co-Lead Counsel Daniel C. Hedlund and Adam J. Zapala in Support of Commercial and Institutional Indirect Purchaser Plaintiffs' Motion for Payment of Attorneys' Fees, Reimbursement of Expenses, and Class Representative Service Awards ("Joint Decl.") ¶ 33.   Thus, the only agreements that exist in the CIIPP case that set forth a percentage specify a one-third fee award, which demonstrates that the requested fee in this Motion is reasonable on its face.  *See, e.g., In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *4 (E.D.N.Y.

---

[17] CIIPPs include 32 named plaintiffs: 14 plaintiffs entered legal agreements that expressly specified Class Counsel may receive 1/3 of any recovery; 18 plaintiffs entered legal agreements that stated Class Counsel may receive a fee award from any settlement or judgment fund created, but did not specify a percentage; and one plaintiff entered an agreement that expressly stated Class Counsel may receive "up to 35%."  Joint Decl. ¶ 33.

June 24, 2010) ("The court sees no need to impose its own ex post assessment of lead counsel's value when the retainer and fee agreements speak for themselves."); *Heekin v. Anthem, Inc.*, No. 1:05-cv-01908-TWP-TAB, 2012 WL 5878032, at *5 (S.D. Ind. Nov. 20, 2012) (awarding the request fee award of 33.3 percent, reasoning that the "named plaintiffs . . . entered into contingent fee agreements with Class Counsel agreeing to pay a fee of 33.3% and up to 45% percent of the recovery depending on the stage of the litigation"); *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 908 (S.D. Ill. 2012) ("[P]laintiffs in this matter concluded a one-third contingency fee with advanced costs was in their best financial interests in this litigation . . . . Accordingly, these contracts *define* the market.") (emphasis in original); *accord* Klonoff Decl. ¶ 65.

In any event, decisions by this Court and other courts in this circuit demonstrate that a one-third fee *is* the market-based fee percentage. ECF No. 5543 (approving interim attorneys' fees of one third of the Settlement Fund to CIIPPs' Class Counsel); *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2021 WL 5578878 (N.D. Ill. Nov. 30, 2021) ("*Broilers*") (same for Direct Purchaser Plaintiffs ("DPPs")); *See* Klonoff Decl. ¶¶ 66, 75, 76 ("typical contingent fee agreements in the Seventh Circuit (and elsewhere in the country) are 33 1/3 percent or greater" and including numerous examples of antitrust cases within the 7th Circuit with percentages of 33 percent or greater); *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 201 (N.D. Ill. 2018) ("a typical contingency agreement in this Circuit might range from 33% to 40% of recovery"); *In re Potash Antitrust Litig.,* No. 1:08-cv-06910 (N.D. Ill. June 12, 2013), Doc. No. 589 (awarding 33 1/3% fees), (attached as Exhibit 28 to Plaintiffs' motion for interim attorneys' fees, ECF No. 5406-2); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09-07666 (N.D. Ill. April 4, 2014), Doc. Nos. 697, 701 (same) (attached as Exhibits 29 and 30 to Plaintiffs' motion for interim

10

attorneys' fees, ECF No. 5406-2); *Dairy Farmers* 80 F. Supp. 3d. at 838 (same).[18] Thus, the legal agreements that exist in this case with the Class Representatives for the CIIPPs support the fee requested.

### 2. The Substantial Risk of Non-Payment Also Weighs in Favor of Granting CIIPPs' Fee Request

"The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman,* 739 F.3d at 958; *see also In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 104 (E.D. Pa. 2013) ("[A]s a contingent fee case, counsel faced a risk of nonpayment in the event of an unsuccessful trial. Throughout this nearly 5 ½ year litigation, class counsel have not received any payment. This factor supports approval of the requested fee [of 33 1/3 percent]."). Thus, "[w]hen determining the reasonableness of a fee request, courts put a fair amount of emphasis on the severity of the risk (read: financial risk) that class counsel assumed in undertaking the lawsuit." *Dairy Farmers* 80 F. Supp. 3d at 847-48.

The risk that CIIPPs' Class Counsel would not receive payment at the outset of this case was significant. *See* ECF No. 5543 ("The risk undertaken by CIIPPs' Class Counsel was significant, especially considering the absence of any parallel criminal case at the time of filing, the complex legal theories advanced in the CIIPPs' Complaints, including the numerous state law claims, and the strong defense put forward by some of the leading defense firms in the country."); *Broilers*, 2021 WL 5709250, at *3 (awarding interim attorneys' fees of one third of the settlement to DPP Class Counsel "as a proper incentive for high quality counsel to take on complex cases,

---

[18] As noted, this Court already determined, with respect to the DPPs' first motion for attorneys' fees, ECF No. 5229, that an unspecified fee in a retainer agreement would result in an award of one third of the Settlement Fund. *Broilers*, 2021 WL 5709250, at *3.

11

requiring a massive investment of time and money, with such a high risk of non-payment."); *see* Klonoff Decl. ¶¶ 55-58, 68-71.

No less was the risk in continuing to litigate this case following CIIPPs interim award of attorneys' fees. As stated above, this case was initiated without the benefit of a government investigation. Instead, the United States intervened over two years into this Action and sought a stay. As this Court noted, "[a]ppointed Counsel's work appears to have prompted the government investigations that led to [the] indictments, rather than the reverse." *Broilers*, 2021 WL 5709250, at *3. Moreover, the Department of Justice requested and eventually received large and comprehensive document productions from the civil plaintiff classes by subpoena. Based on the foregoing, CIIPPs' fee request is particularly reasonable and appropriate. *See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (affirming fee award of $220,290,160 and noting that "plaintiffs' counsel did not have the benefit of 'piggybacking' off of a previous case—instead, the Government piggybacked off of plaintiffs' counsel's work" and that "it is especially important to provide appropriate incentives to attorneys pursuing antitrust actions because public policy relies on private sector enforcement of the antitrust laws."); *In re Linerboard Antitrust Litig.*, No. CIV.A. 98-5055, 2004 WL 1221350, at *17 (E.D. Pa. June 2, 2004), amended, No. CIV.A.98-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004) (noting that "providing sufficient . . . incentive for the private attorney general is particularly important in the area of antitrust enforcement because public policy relies so heavily on such private action for enforcement of the antitrust law").

Unlike in many cases where a government investigation or criminal prosecution "smooth[es] . . . the road" to settlements, in this case, the government indictments of several Defendant executives for bid-rigging came too late for the Plaintiff classes to incorporate those

allegations into their cases, and this Court required Plaintiffs to choose between foregoing the bid-rigging claims and proceeding to summary judgment and trial on the supply reduction and Georgia Dock claims or maintaining the bid-rigging claims and opting onto a separate "Track 2" schedule, which would be stayed until all the other Plaintiff groups had been tried. *See* ECF No. 7501. CIIPPs (along with the other Class Plaintiffs) chose to stay on Track 1 and abandoned the bid-rigging claims in exchange for proceeding with the already-years-old litigation. *See* ECF No. 5336. The Department of Justice also filed its own lawsuit against Agri Stats on September 28, 2023, alleging three counts of Section 1 violations for anticompetitive information exchange in the broiler chicken, pork, and turkey markets (*United States v. Agri Stats, Inc.,* No. 23-cv-03009, ECF No. 1 (D. Minn. Sept. 28, 2023)), but that action came after this Court granted summary judgment in favor of Agri Stats. ECF No. 6641 (June 30, 2023). Finally, the intervention of the government did not ultimately culminate in the usual fodder for civil antitrust actions such as convictions and guilty pleas: the result was the dismissal of several indictments, two mistrials, and the eventual acquittal of several defendants in a third trial. ECF No. 7501. If anything, the government intervention in the broilers and collateral markets required CIIPP Class Counsel to exercise even greater skill and reasoned judgment in order to achieve satisfactory recovery on behalf of the class.

In sum, CIIPPs' Class Counsel invested substantial time and resources into continuing to litigate the case following their award of interim attorneys' fees, and the risk of nonpayment remained high until settlements with the final Defendants were achieved. In that time, CIIPPs' Class Counsel has spent over 28,000 hours over four years diligently prosecuting the case on behalf of the CIIPP class, including, *inter alia*, the following extensive work:

- Engaging and working with expert teams in connection with class certification to develop a methodology for assessing classwide impact and damages;

- Researching, drafting, arguing, and defending a motion for class certification, including state law claims;

- Opposing Defendants' motion to exclude CIIPPs' expert at class certification, including through depositions and motion practice;

- Defending CIIPPs' motion for class certification at a two-day hearing;

- Continuing to review more than 9 million pages of documents in coordination with the other classes, putting the most attorneys on the document review of any other class;

- Conducting numerous depositions of Defendants and third parties.

- Working with the other classes to draft oppositions to Defendants' **36 total** motions for summary judgment and motions to exclude Plaintiffs' experts;

- Participating in a two-day summary judgment hearing;

- Drafting oppositions to certain Defendants' motions to reconsider the Court's order on summary judgment;

- Following the close of the DPPs' trial, preparing for CIIPPs' trial, including drafting Motions in Limine, designating deposition testimony and exhibits, interviewing, organizing, and preparing witnesses, working with experts to prepare trial testimony, negotiating with opposing counsel, attending court hearings and participating in oral argument on pre-trial motions;

- Engaging in arms-length settlement negotiations with all remaining Defendants, including through mediation, and ultimately settling shortly before trial; and

- Preparing for, attending, and arguing at many Court hearings, including on contested motions, case management conferences, hearings regarding case structure, and settlement approval.

Joint Decl. ¶ 8.

For a full discussion of the extensive work performed by Class Counsel in this litigation, the Joint Declaration of Class Counsel recounts these tasks in more detail. *See id.*

Notably, the risk of nonpayment was ever-present, as CIIPPs faced some of the most powerful and well-financed multinational corporations, which were represented by the biggest and most prominent law firms in the United States. Indeed, following CIIPPs' award of interim

attorneys' fees on April 19, 2022 (reflecting CIIPPs' Class Counsel's work done from inception until August 31, 2021), CIIPPs did not achieve another settlement for nearly two more years (with Harrison in June, 2023, for $2,800,000) which was after the lengthy and contentious class certification proceedings and while the equally contentious motions for summary judgment were pending. *See* ECF No. 6634. CIIPPs did not achieve any other settlements until after the DPPs lost in their trial against Sanderson Farms and CIIPPs had spent months preparing for their trial. As this Court aptly noted, motion practice has included moments that could have defeated CIIPPs' claims, with some even being "close call[s]." *Broilers,* 2021 WL 5709250, at *1, *3.

The risk undertaken by CIIPP Class Counsel has been magnified by the extensive expert work (and their related, substantial costs) necessary for CIIPPs to meet their burden at class certification, summary judgment, and trial. CIIPPs' Class Counsel engaged Dr. Russell Mangum and his staff, who performed extensive transactional data analysis, constructed vast databases, and built robust regression models, amongst many other tasks, that permitted them to opine on the magnitude of the overcharges caused by Defendants' conduct, including the measure of such overcharges that were passed-through to CIIPPs. Joint Decl. ¶ 8. Class Counsel's work culminated with Dr. Mangum's 147-page opening report; a 195-page reply report in support of class certification; a 90-page opening merits report; and a 132-page reply merits report. *Id.* Furthermore, CIIPPs retained Dr. Michael Williams, who prepared a 183-page liability report and a 118-page reply report detailing, *inter alia*, the anticompetitive nature of Defendants' conduct. CIIPPs' Class Counsel drafted and filed their voluminous class certification motion with related expert reports, substantive exhibits, and declarations. *Id*; *see* ECF Nos. 3968, 4493, and 4512. Indeed, CIIPPs faced a case that is even more complex and risky than the DPPs, as they must perform unique analyses of passthrough requiring extensive, additional expert work and data analysis. As set out

15

further below, the cost of all this expert work required large amounts of funding. Joint Decl. ¶¶ 8, 25, Exs. 20-21 (detailing over $4 million in case costs). All of this costly, necessary, and complex work was undertaken without any promise of repayment, making the risks to Class Counsel truly extraordinary.

### 3. The Caliber of Class Counsel and the Amount of Work Performed Weigh Heavily in Favor of Granting the Request

The caliber of Class Counsel in this matter has been exemplary. CIIPPs' Class Counsel have invested over 28,000 hours into this action from September 1, 2021 to March 31, 2025, and over 100,000 hours throughout the entire case. Joint Decl. ¶¶ 20, 22. CIIPPs' Class Counsel's collective lodestar from September 1, 2021 to March 31, 2025, therefore, is $19,243,772.00. *Id*. CIIPPs' requested fee if granted, therefore, will constitute a negative multiplier of .64. *Id.* Calculated for the entire case from inception to March 31, 2025, CIIPPs' multiplier is .73. Joint *Id.* ¶ 22.

This is another factor supporting approval of the requested fee. ECF No. 5543 (awarding CIIPPs' Class Counsel one third of Settlement Fund which represented a negative multiplier of .77); *see, e.g., In re Blech Securities Litig.*, No. 94-cv-9696 (RWS), 2000 U.S. Dist. LEXIS 6920 (S.D.N.Y. May 22, 2000) (citing evidence that award would represent a negative multiplier of the lodestar as support for a 30% award) *In re TFT-LCD (Flat-Panel) Antitrust Litig.*, 2013 WL 149692, at *1 (N.D. Cal. Apr. 3, 2013) (negative multiplier of 0.86 confirmed amount of attorneys' fees requested was fair and reasonable); *Gong-Chun v. Aetna Inc.*, No. 1:09-cv-01995-SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (negative multiplier of .79 suggested that fee award was reasonable); *Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848, 853–54 (N.D. Cal. 2010) (negative multiplier of .59 indicated fee award was "reasonable and a fair valuation of the services rendered to the class by class counsel"); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-

16

5138 VRW, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) (negative lodestar multiplier of 0.83 or 0.74 "suggests that the requested percentage based fee is fair and reasonable").

The enormous amount of work undertaken by Class Counsel, as noted, is detailed in the Joint Declaration. CIIPPs' Class Counsel are some of the country's most experienced and successful antitrust and complex litigation attorneys. *See* ECF No. 116 at 8-13. Defendants' counsel are similarly skilled and experienced, and have mounted a formidable defense. *See Arenson, et al. v. Bd. of Trade of City of Chicago*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974) (noting that the quality, vigor, and prior success of opposing counsel is an important factor when assessing the quality of work performed by plaintiffs' counsel). This Court is familiar with the caliber of work performed by CIIPPs' Class Counsel, and they respectfully suggest that it merits the requested fee.

### 4. Comparable Cases Favor Granting CIIPPs' Request

"Another relevant data point for the market price for attorneys' fees is those awarded in 'analogous class action settlements.'" *Hale*, 2018 WL 6606079 at *10 ("Courts within the Seventh Circuit, and elsewhere, regularly award percentages of 33.33% or higher to counsel in class action litigation."); *see also Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) (noting the relevance of "attorneys' fees from analogous class action settlements"); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015) ("Attorney's fee awards in analogous class action settlements shed light on the market rate for legal services in similar cases."); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (collecting cases). Additionally, Professor Klonoff's Declaration compiles a number of cases within the Seventh Circuit awarding fees of 33% or greater. Klonoff Decl. ¶ 76.

Here, this Court need look no further than its own findings in previous attorneys' fees awards in this case. *Broilers*, 2021 WL 5709250, at *4 ("The fact that fee awards in antitrust cases

in [the Seventh Circuit] are almost always one-third is a strong indication that this should be considered the 'market rate'" and awarding DPPs one third of the Settlement Fund); ECF No. 5543 (awarding CIIPPs Class Counsel one third of the Settlement Fund, noting "the high quality and quantity of the work performed by CIIPPs' Class Counsel, including extensive and contested motion practice on issues unique to the indirect class, substantial discovery efforts of parties and non-parties, and multiple rounds of mediation, all involving complex issues of fact and law that have been vigorously pursued for over five years; and the substantial risks faced throughout the litigation, which existed from the start and will continue beyond these settlements given the number of remaining Defendants"). The foregoing considerations strongly support CIIPPs' request.

### 5.    A Lodestar Cross-Check Confirms the Reasonableness of the Request

Although the previously mentioned percentage-of-the-fund method is favored in the Seventh Circuit for determining fees in common fund cases, courts may also use a "lodestar cross-check" to ascertain class counsel's time investment, determine the reasonableness of a fee, and avoid windfall. *Dairy Farmers* 80 F. Supp. 3d at 844. This cross-check is not required, however. *Rohm & Haas II*, 658 F.3d at 636 ("[C]onsideration of a lodestar check is not an issue of required methodology"); *Leung* 326 F.R.D. at 204 ("The Court is not required to check its percentage-of-fee determination against the lodestar.")

As noted, using counsel's historic hourly rates to calculate the lodestar for the time period of September 1, 2021 to March 31, 2025 results in a .64 multiplier. CIIPPs' Class Counsel invested over 28,000 hours of attorney and other professional time from September 1, 2021 to March 31, 2025. Joint Decl. ¶ 20, 22; Ex. 19. Calculated for the entire case from inception to March 31, 2025, CIIPPs' multiplier is .73, representing over 100,000 total hours worked on this case. *Id.* ¶ 22.

The average hourly rate by Class Counsel and their associated professional staff is approximately $672 per hour (with a cap of $350.00 for hour on document review), a reasonable and comparable rate for those charged by other firms with similar experience, expertise, reputation and for similar services. *Id.* ¶ 16, Ex. 19.[19] Courts in the Seventh Circuit regularly grant fee awards that result in a negative multiplier. *See, e.g., Domann v. Summit Credit Union*, No. 18-cv-167-wmc, 2020 WL 1847868 (W.D. Wisc. April 13, 2020) ("The fact that the lodestar method produces a 'negative multiplier' is also a factor supporting the reasonableness of the fee request, given that courts have approved multipliers of five or more.").

## B.    CIIPPs' EXPENSES REQUEST SHOULD BE GRANTED

CIIPPs request reimbursement of $4,919,174.15 for reasonable expenses incurred in bringing these claims. These expenses were reasonably incurred as part of CIIPPs' vigorous prosecution of the case through trial preparation These costs further support CIIPPs' Class Counsel's requested fee because it demonstrates that this has been an extraordinarily high-risk endeavor to pursue.  This is all the more true given this Court's practice—consistent with CIIPPs' request— that litigation costs are deducted before a percentage is applied to the settlement fund to calculate the fee. *Broilers*, 2021 WL 5709250, at *4. Thus, Class Counsel is not seeking fees on this portion ($4,919,174.15) of the Settlement Fund.

This Court has previously awarded Class Counsel reimbursement of reasonable expenses incurred in this litigation. ECF No. 5543 (reimbursing CIIPPs' Class Counsel $10,407,499.62 in litigation expenses, which were "reasonable and necessarily incurred for this Action."); *Broilers*,

---

[19] Since the inception of this Action, Interim Co-Lead Counsel have submitted Class Counsel's lodestar and expense information to the Court *in camera* on a quarterly basis. CIIPPs' Class Counsel have conducted an additional audit of this time in preparing this motion. Joint Decl. ¶¶ 17-18.

2021 WL 5709250, at *4 (reimbursing DPPs' Class Counsel $4,500,000 in litigation expenses); *Broilers,* 2022 WL 6124787, at *5 (N.D. Ill. Oct. 7, 2022) (reimbursing EUCP Class Counsel $8,750,000 in litigation expenses).[20] This practice is authorized under the Federal Rules. Fed. R. Civ. P. 23(h); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970) (recognizing counsel's right to reimbursement of expenses where a common fund has been established for the benefit of a class). Reimbursable expenses are those "that are consistent with market rates and practices." *In re Ready-Mixed Concrete*, 2010 WL 3281591, at *1, *3 (S.D. Ind. Aug. 17, 2010). CIIPPs' expenses include $4,045,677.94 in expert costs, $538,919.46 in discovery database costs, $30,227.50 in mediator costs, and $123,414.38 in deposition costs, along with a number of miscellaneous costs, including transcript orders, travel, photocopies, mail, telephone, etc. Joint Decl. ¶ 25, Ex. 21. These expenses have been necessary to litigate this Action in the best interests of the CIIPP Class and to achieve the favorable settlements to date.

## C. THE CLASS REPRESENTATIVES SHOULD RECEIVE SERVICE AWARDS FOR THEIR CONSIDERABLE TIME AND EFFORT

Each Class Representative representing the CIIPP class should receive between $5,000 and $15,000 for their considerable additional time and effort in supporting the case. "Because a named plaintiff is an essential ingredient of any class action, an incentive [or service] award is appropriate if it is necessary to induce individuals to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). To determine if an incentive award is warranted, a court evaluates (i) actions the plaintiff has taken to the protect the interests of the class, (ii) the degree to which the class has benefitted from those actions, and (iii) the amount of time and effort the plaintiff expended in pursuing the litigation. *Camp Drug Store, Inc. v. Cochran Wholesale Pharm, Inc.*, 897 F.3d 825,

---

[20] This order was vacated and remanded as to the award of EUCPs' attorneys' fees but not EUCP's litigation expenses. *Broilers,* 80 F.4th 797 (7th Cir. 2023).

834 (7th Cir. 2018). Here, this Court has already recognized that "[e]mpirical evidence shows that incentive awards [][] paid in most class suits average between $10-$15,000 per class representative." *Broilers*, 2021 WL 5709250, at *5. CIIPPs' request is also in line with the Court's previous order authorizing $15,000 for each of the 32 CIIPP class representatives. (ECF No. 5543 at 4).

Since the CIIPP Class Representatives' receipt of interim service awards, these Class Representatives have continued to undertake substantial and invasive work, at a risk to themselves and their business. *See* ECF Nos. 3968-8 and 3968-9 (Compendium of Class Representatives Declarations Parts I and II). The Class Representatives are all small businesses, many are owner-operated, and many have only a handful of employees. Joint Decl. ¶ 35. Every Class Representative spent numerous hours monitoring and consulting with class counsel as the case progressed further and, most importantly, working with CIIPPs' Class Counsel to prepare to testify as trial witnesses. *Id.* ¶¶ 34-36. Class counsel considered the additional efforts undertaken by each class representative and have determined that it is appropriate to seek different levels of service awards for each class representative commensurate with their additional contributions ranging from $5,000 to $15,000. Although all class representatives were willing and preparing to testify at trial, several of the CIIPP Class Representatives participated in several rounds of trial preparation, including mock direct and cross examinations that were videotaped. *Id.* ¶ 36. These sessions involved numerous hours of preparation on their own and with class counsel. Given that the case settled approximately four weeks before the start of trial, each class representative was at a differing stage of preparation. As was true in the CIIPPs' motion for interim service awards, these Class Representatives were often the owner and chef, meaning the restaurant had to be closed or operated with limited resources while the Class Representative was performing case-related work.

21

ECF No. 5405 at 22. Similarly, the Class Representatives also risked potential retaliatory actions taken up the distribution chain for their continued involvement in this litigation.

CIIPPs' Class Counsel have reviewed the work performed by CIIPP Class Representatives from September 1, 2021 to the present and ask for class representative service awards in the amounts of either $5,000, $10,000, or $15,000. The difference in these amounts reflects the extent to which the class representative was involved in CIIPPs' trial preparation, and the proposed allocation is listed in the Joint Declaration, ¶ 32.

## IV.      CONCLUSION

For all the foregoing reasons, CIIPPs respectfully ask this Court to: (1) grant their request for attorneys' fees of one-third of the settlement fund, (2) grant their request for reimbursement of their reasonably incurred litigation expenses, and (3) grant their request for Class Representative service awards.

Dated: May 19, 2025                    Respectfully Submitted,


                                       */s/ Daniel C. Hedlund*
                                       Daniel E. Gustafson
                                       Daniel C. Hedlund
                                       Michelle J. Looby
                                       Joshua J. Rissman
                                       Anthony J. Stauber
                                       **GUSTAFSON GLUEK PLLC**
                                       120 South Sixth Street, Suite 2600
                                       Minneapolis, MN 55402
                                       Tel: (612) 333-8844
                                       dgustafson@gustafsongluek.com
                                       dhedlund@gustafsongluek.com
                                       mlooby@gustafsongluek.com
                                       jrissman@gustafsongluek.com
                                       tstauber@gustafsongluek.com

                                       ***Co-Lead Counsel for the Commercial and***
                                       ***Institutional Indirect Purchaser Class***

*/s/ Adam J. Zapala*
Adam J. Zapala
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
azapala@cpmlegal.com

***Co-Lead Counsel for the Commercial and
Institutional Indirect Purchaser Class***

Kenneth A. Wexler
Melinda J. Morales
**WEXLER BOLEY & ELGERSMA, LLP**
311 S. Wacker Drive
Chicago, IL 60606
Tel: (312) 346-2222
kaw@wbe-llp.com
mjm@ wbe-llp.com

***Liaison Counsel for the Commercial and
Institutional Indirect Purchaser Class***