**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 TMD |
| This Document Relates To: *All Commercial & Institutional Indirect Purchaser Plaintiff Actions* | Hon. Thomas M. Durkin Magistrate Judge Jeffrey T. Gilbert |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES (ECF NO. 7730)**

The Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs"), pursuant to the Court's July 3, 2025, Minute Order (ECF No. 7795) and CIIPPs' July 11, 2025, Status Report (ECF No. 7803), hereby submit this supplemental memorandum in support of their Motion for Attorneys' Fees, Reimbursement of Expenses, and Class Representative Service Awards (ECF No. 7730) ("CIIPPs' Fee Motion") addressing the Seventh Circuit's decision in *In re Broiler Chicken Antitrust Litig.*, 142 F.4th 568 (7th Cir. 2025) ("*Andren II*") and, as applicable, its earlier decision in *In re Broiler Chicken Antitrust Litig.,* 80 F.4th 797 (7th Cir. 2023) ("*Andren I*").

**I.      INTRODUCTION**

*Andren II* does not alter any of the fundamental principles of Seventh Circuit law in evaluating fee awards and it does not hold that the attorney fee market rate in the Seventh Circuit is 26.6%. Nor does it require the district court to engage in a sampling and weighing of *ex post* fee awards. Instead, the reduction in EUCP counsel's fee award turned on facts unique to the EUCPs. Indeed, *Andren II* re-enunciates its longstanding rule that attorney fee awards should be evaluated on a *case-by-case* basis, with substantial discretion afforded to the district court. *Andren II*, 142

1

F.4th at 573 (citing *In re Stericycle Sec. Litig.,* 35 F.4th 555, 559 (7th Cir. 2022)). Approximating the market rate can be "informed by a number of factors, including: (1) the actual agreements between the parties as well as fee agreements reached by sophisticated entities in the market for legal services; (2) the risk of non-payment at the outset of the case; (3) the caliber of Class Counsel's performance; and [4] information from other cases, including fees awarded in comparable cases." *In re Broiler Chicken Antitrust Litig.,* 2022 WL 6124787, at *2 (N.D. Ill. Oct. 7, 2022), (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir. 2001)). *Andren II* focused on the Court's EUCP-specific application of facts to the fourth factor.

Having undertaken the unrequired task of sampling and weighing fee awards presented by the EUCPs, the only issue identified by the circuit court was not using a fully representative sample. *Andren II*, 142 F.4th at 575. The Seventh Circuit held that "to the extent a district court relies on a sampling of *ex post awards* to recreate the hypothetical market, it must ensure the sample is representative." *Id.* Notably, *Andren II* makes clear that such a sampling is not required. The facts here are unlike those addressed in *Andren II.*

First, in determining an *ex ante* market-based fee, the most probative factor is what fee was negotiated with clients *ex ante.* But, distinct from the EUCP case, many named CIIPP class representatives expressly agreed *ex ante* that counsel may seek attorney fees up to 33.33% of any recovery on behalf of the CIIPPs class. For obvious reasons, *Andren II* reiterates that *ex ante* agreements are 'particularly useful guidepost[s] for determining market rate." *Id.* at 573. In contrast, the EUCP class representatives did not agree to any fee in their retainer agreements. The sampled cases showed that counsel in the EUCP action had agreed to a negotiated 26.6% fee in *In*

re Interest Rate Swaps Antitrust Litig. (*"IRS"*),[1] the very fee awarded by the Seventh Circuit. This Court had weighted *IRS* ten times in its analysis compared to other EUCP fee awards it considered in determining the EUCPs *ex ante* market rate. *Andren II,* 142 F.4th at 574. Moreover, objector Andren conceded that 26.6% is a market rate the *EUCPs*' counsel would have negotiated *ex ante*. *Broilers,* 2024 WL 3292794, at *1, 3-4. Among the sampled cases the Seventh Circuit ultimately included in its review, 26.6% was the median. *Id.* As discussed herein, CIIPPs have not included such a sampling of their cases and do not believe any such sample or analysis of the kind the Court conducted with respect to EUCPs is warranted or required in light of their fee agreements and the other factors discussed more fully herein and in CIIPPs' Fee Motion.

With respect to the second element of the Seventh Circuit's analysis, this Court has already determined the risk of non-payment at the outset of this litigation was immense. ECF No. 5543 at 2 (noting "the substantial risks faced throughout the litigation, which existed from the start and will continue beyond these settlements given the number of remaining Defendants."). As the Court noted, the risks faced by CIIPP class counsel continued throughout the remainder of the case. *See* ECF No. 7731 at 11-15. This factor additionally supports CIIPPs' request for one third of the net settlement fund. *Id.*

Third, this Court has already determined that class counsel's performance was exemplary, noting in its order granting CIIPPs' first fee request "the high quality and quantity of the work performed by CIIPPs' Class Counsel" ECF No. 5543 at 2. This further supports CIIPPs' fee request. *See* ECF No. 7731 at 16-17.

---

[1] *Andren II,* 142 F.4th at 572 (citing *In re Interest Rate Swaps Antitrust Litig.,* No. 16-MD-2704 (JPO) (S.D.N.Y.) ("*IRS*")).

Given the first three factors all supporting the award of 33.33%, the Court need not construct a complicated analysis of *ex post* awards in any event. Unlike the EUCP case, because the Court has strong evidence of CIIPPs' *ex ante* market rate, it does not need to sample or average any *ex post* awards. Regardless, the CIIPPs' original submission demonstrates that 33.33% is frequently awarded ex-post, further reflecting the reasonableness of CIIPPs' original fee award.[2]

CIIPPs respectfully submit that this Court's previous, well-reasoned, and fact specific finding that an appropriate fee award in the CIIPP case is a 33.33% fee should remain the case on this Motion. (ECF No. 5543).

## II.     BACKGROUND

The Court is familiar with the procedural history of this case. The procedural posture of CIIPPs' second round of settlements at issue in this motion is thoroughly discussed in CIIPPs' Fee Motion. Briefly, in January 2022, CIIPPs filed their first Motion for Attorneys' Fees, Reimbursement of Expenses, and Class Representative Service Awards, which requested 33.33% of the Settlement Fund, which at that time was $104,890,000. ECF No. 5404. Like this Motion for Attorneys' Fees in connection with the Round 2 Settlements, there were no objections and the Court granted CIIPPs' motion on April 19, 2022, awarding $31,000,833.46 in attorneys' fees and

---

[2] Indeed, CIIPP lead counsel firm Cotchett, Pitre & McCarthy, LLP. was just awarded 33.33% of fees in the *In Telescopes Antitrust Litigation* case. *In re Telescopes Antitrust Litigation*, 5:20-cv-03639-EJD (April 11, 2025, N.D. Cal), ECF No. 419 (awarding 33.33% in attorneys' fees to class action antitrust settlement). This is the firm's most recent antitrust settlement and fee award and is another example of a 33.33% fee award in a similar antitrust class action – further exemplifying the reasonableness of the Court granting that percentage here.

by doing so determining that 33.33% is the CIIPP counsel market rate. ECF No. 5543. Based on CIIPPs' lodestar, this award represented a negative multiplier of .77. *Id.* at 2.

Since CIIPPs' first attorney fee award, CIIPPs secured an additional $41,250,000 in monetary settlements which, together with non-monetary settlements with Defendants who prevailed at summary judgment, fully resolved this case for the CIIPP class and brought their total settlements to $146,140,000. CIIPPs' Fee Motion at 1, 3. CIIPPs second round of settlements was preliminarily approved on March 10, 2025. ECF No. 7536. On May 19, 2025, CIIPPs filed their Fee Motion requesting 33.33% of the net settlement fund in attorneys' fees – the same percentage the Court awarded in connection with CIIPPs' first fee request. Awarding attorneys' fees of 33.33% of the Round 2 (net) Settlement Fund would represent a negative multiplier of .64 for the time period starting after CIIPPs' first fee award, or .73 for the entire case. CIIPPs' Fee Motion, ECF No. 7730 at 18.

The deadline has passed for class members to object to the settlements and to CIIPPs' Motion for Attorneys' Fees. CIIPPs have received no objections to either. *See* ECF No. 7809 at 19. CIIPPs moved for final approval of their second round of settlements on July 16, 2025. *See id.*

Against this background, the Seventh Circuit has twice weighed in on the End User Consumer Plaintiffs' ("EUCPs") first motion for attorneys' fees, which was filed in October 2021. The EUCPs' sought attorneys' fees equaling one-third of the net settlement fund. ECF No. 5161; *see In re Broiler Chicken Antitrust Litig.,* 80 F.4th 797 (7th Cir. 2023) ("*Andren I*") and *In re Broiler Chicken Antitrust Litig.*, No. 24-2387, 2025 WL 1823171 (7th Cir. July 2, 2025) ("*Andren II*").[3] Because the EUCP's had no ex-ante agreements with named plaintiffs, the Court evaluated

---

[3] While the collateral litigation over EUCPs' attorneys' fees was ongoing, EUCPs' secured additional monetary and non-monetary settlements with all remaining Defendants, received final

the market rate with ex-post awards. The Seventh Circuit considered arguments from an objector that this Court's award of one-third of the settlement fund to the EUCPs was improper because it did not consider bids made by EUCP class counsel in other cases and otherwise failed to accurately construct the *ex ante* fee percentage that class members would have negotiated with EUCP class counsel. *Andren I,* 80 F.4th at 800. The Seventh Circuit agreed with the objector that the district court erred in categorically excluding previous bids made by class counsel in other class actions and by excluding certain awards to EUCP class counsel in the Ninth Circuit, where a megafund rule limits fees awarded to class counsel. *Id.* at 804.

On remand, this Court reduced the EUCP fee award to 30% of the net settlement fund. *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2024 WL 3292794 (N.D. Ill. July 3, 2024). The objector again appealed, and the Seventh Circuit affirmed the EUCP fee award as modified to 26.6% of the net settlement fund. *Andren II,* 142 F.4th at 576.

## III.   ARGUMENT

### A.   The Seventh Circuit's Opinions Do Not Impact the Strong Evidence Presented in Both CIIPPs' Fee Petitions that Their Market Rate is 33.33%

As explained by this Court and recited approvingly in the *Andren* appeals, market rate can be "informed by a number of factors including: (1) the actual agreements between the parties as well as fee agreements reached by sophisticated entities in the market for legal services; (2) the risk of non-payment at the outset of the case; (3) the caliber of Class Counsel's performance; and [4] information from other cases, including fees awarded in comparable cases." *Broilers,* 2022 WL 6124787, at *2 (N.D. Ill. Oct. 7, 2022) (citing *Hale v. State Farm Mut. Auto. Ins. Co.,* No. 12-

---

approval for those settlements (ECF No. 7763), and moved for an award of attorneys' fees on the second round of settlements (ECF No. 7689), requesting 30% of the net settlement fund. ECF No. 7706-2 at 1.

0660-DRH, 2018 WL 6606079, at *8 (S.D. Ill. Dec. 16, 2018); *Andren I*, 80 F.4th at 800. Additional factors that district courts may consider include the quality of the attorneys' performances, the amount of work necessary to resolve litigation, and the stakes in the case. *Id.* (citing *Synthroid I,* 264 F.3d at 721). These factors have not been disturbed by the *Andren* opinions and support awarding CIIPPs 33.33% of the settlement fund.

### i. CIIPPs' fee agreements with their Class Representatives establish that class counsel's market rate is 33.33%.

When awarding fees after the case concludes, district courts must do so according to a "hypothetical *ex ante* bargain"—giving "counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market" at the litigation's outset. *Andren II*, 2025 WL 1823171, at *1 (quoting *Williams v. Rohm & Haas Pension Plan,* 658 F.3d 629, 636 (7th Cir. 2011) and *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001)). As noted above, the Seventh Circuit has held that "*ex ante* agreements are 'particularly useful guidepost[s] for determining the market rate,'" *Id.* (quoting *In re Stericycle Sec. Litig.*, 35 F.4th 555, 560 (7th Cir. 2022) because "[t]hose agreements most accurately shed light on the compensation attorneys are willing to accept 'in the shadow of the litigation's uncertainty,' when there is still a risk of loss and when counsel has the highest incentive to offer competitive fees. *Id.* (quoting *Synthroid I*, 264 F.3d at 719).

This Court has already applied the applicable law and considered evidence related to the CIIPPs' market rate, including *ex ante* agreements with the various class representatives, and awarded CIIPPs' 33.33% of the net settlement fund for the First Round of Settlements. *See* ECF No. 5543. On their face, the Seventh Circuit's *Andren* opinions were specific to the EUCPs and their class counsel, and nothing in those opinions should disturb this Court's previous determinations regarding the CIIPP class. Moreover, a review of the contrasting, specific issues

raised in *Andren* further demonstrates why this Court may again confirm, based on the ample evidence presented by CIIPPs, that 33.33% is the CIIPP counsel market rate.

As highlighted above, the Court need not construct a hypothetical *ex ante* bargain to determine CIIPPs' market rate because CIIPPs have presented evidence of the *actual ex ante* bargain: unlike EUCPs, whose agreements with the named plaintiffs did not specify a percentage of recovery to which class counsel would be entitled (*see* ECF No. 5855 at 5), of CIIPPs' 32 named plaintiffs, 14 entered into legal agreements that expressly specified Class Counsel would seek 33.33% of any recovery, and one expressly stated that Class Counsel may receive "up to 35%." CIIPPs' Fee Motion at 9.[4] No further calculus or data is required – CIIPPs' *ex ante* market rate is the rate that they, in fact, negotiated with their named class representatives. *See Assessment Techs. of WI, LLC v. WIREdata, Inc.,* 361 F.3d 434 (7th Cir. 2004) ("The best evidence of the value of a lawyer's services is what the client agreed to pay him."); *see City of Greenville v. Syngenta Crop Prot., Inc.,* 904 F. Supp. 2d 902 (S.D. Ill. 2012) (considering one-third contingency fee in plaintiffs' retainer agreements and finding "these contracts *define* the market."); *see Heekin v. Anthem, Inc.*, No. 1:05-CV-01908-TWP, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) (awarding one-third of settlement fund where named plaintiffs entered into fee agreements of between 33.3% and 45% of recovery); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *4 (E.D.N.Y. June 24, 2010) ("The court sees no need to impose its own ex post assessment of lead counsel's value when the retainer and fee agreements speak for themselves."). Every CIIPP client whose contract identified a percentage of recovery to which Class Counsel

---

[4] Many of these agreements specify that the 33.33% fee is to be calculated based on the gross settlement fund before the deduction of costs.

would be entitled agreed to at least one-third; the Court need not look any further to determine that this is Class Counsel's market rate for their services.

This is not a case where the "named plaintiffs are usually the cat's paws of the class lawyers" and their retainer agreements should be afforded less weight. *See, e.g., In re Trans Union Corp. Privacy Litig.,* 629 F.3d 741, 744 (7th Cir. 2011) (citing *In re Cavanaugh,* 306 F.3d 726, 737-38 (9th Cir. 2002)). As an initial note, this oft-quoted soundbite omits crucial context, stated by one district court as "[o]ur court of appeals has suggested that *at least when individual plaintiffs can expect only infinitesimal recoveries*, 'named plaintiffs are usually the cat's paws of the class lawyers.'" *In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*, 251 F. Supp. 3d 1225 (N.D. Ind. 2017) (quoting *Trans Union*, 629 F.3d at 744) (emphasis added) (rejecting that delivery driver class representatives were "cat's paws" of class counsel). Indeed, the Seventh Circuit's suggestion that class representatives do not have an incentive to drive a hard bargain with class counsel should be understood relative to the facts of the *Trans Union* and similar cases, where "the prospective relief for an individual class member is miniscule: *the class has 190 million members!*" *Trans Union*, 629 F.3d at 744 (emphasis added). Here, the class representatives include sophisticated business entities (restaurants and other food establishments) whose purchase of broiler chickens was a substantial component of their business, and their damages from Defendants' conspiracy were significant. *See, e.g.,* ECF No. 7731 at 20-22. For example, one CIIPP class representative is a healthcare and health services provider that operates a hospital, several clinics, and pharmacy services, which purchased substantial volumes of broiler chickens throughout the class period. They are precisely the kind of plaintiff with a "sufficient state to drive a hard – or any – bargain with the lawyer[s]" at the onset of the case, and they are among the 14 named CIIPP class representatives who explicitly agreed to a one-third attorney's fee award. *In re Cap. One Tel.*

*Consumer Prot. Act Litig.,* 80 F. Supp. 3d 781, 796 (N.D. Ill. 2015) (quoting *Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992)).

Indeed, the CIIPP class representatives here are far more akin to the community water systems who were class representatives in *City of Greenville*, where the court found that the contingency fee arrangements in the class representatives' retainer agreements were the "best evidence of the value of the lawyer's services" because "the sophisticated plaintiffs in this matter concluded a one-third contingency fee with advanced costs was in their best financial interests in this litigation. Given those arm's-length evaluations and in light of the magnitude of the risks and undertaking, it is unlikely Plaintiffs would have been able to secure legal representation of comparable skill and experience on better terms." 904 F.Supp.2d at 908. The same holds true here: CIIPP named class representatives had significant skin in the game and therefore had every motivation to secure representation on good terms. That every CIIPP class representative who specified a fee percentage agreed to at least 33.33% is strong evidence that 33.33% is CIIPP class counsel's market rate. *Id.*

### ii.  The Risk of non-payment supports an award of 33.33%.

The second factor the district court should consider in awarding attorneys' fees is "the risk of non-payment at the outset of the case." *Broilers,* 2022 WL 6124787, at *2 (N.D. Ill. Oct. 7, 2022) (citing *Hale,* 2018 WL 6606079, at *8). This factor has not been disturbed by the *Andren* opinions and strongly supports CIIPPs' fee request of 33.33% of the settlement fund.

"The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013). As this Court noted in granting CIIPPs' first fee request, "the risk undertaken by CIIPPs' Class Counsel was significant, especially considering the absence of any parallel criminal

10

case at the time of filing," and stated "the substantial risks faced throughout the litigation, which existed from the start [] will continue beyond these settlements given the number of remaining Defendants. ECF No. 5543 at 2. Indeed, this Court has observed that the motions to dismiss were a close call, and that in denying summary judgment for certain Defendants that the non-economic evidence was "weak." *Broilers*, 2021 WL 5709250, at \*1, \*3 (N.D. Ill. Dec. 1, 20201); *Broilers,* 702 F.Supp.3d 635, 660 (N.D. Ill. 2023).

As the Court predicted, the risks of nonpayment continued to be substantial throughout the remainder of the CIIPP litigation, which are detailed more fully in CIIPPs' fee motion. ECF No. 7731 at 11-16. The *Andren* opinions do not alter this Courts' conclusion that the risks faced by CIIPP counsel were immense, and the magnitude of these risks support CIIPPs' requested fee award. *See Silverman,* 739 F.3d at 958.

### iii. The caliber of Class Counsel and the amount of work performed continue to weigh in favor of the original 33.33%

The next factor the district court should consider in awarding attorneys' fees is "the caliber of Class Counsel's performance." *Broilers,* 2022 WL 6124787, at \*2 (N.D. Ill. Oct. 7, 2022) (citing *Hale,* 2018 WL 6606079, at \*8). This factor, too, continues to support an award of 33.33% of the net settlement fund.

In awarding 33.33% for their first fee petition, this Court found CIIPP counsel's performance to be exemplary. *See* ECF No. 5543 at 2 (noting "the high quality and quantity of the work performed by CIIPPs' Class Counsel," which included extensive discovery and navigating "complex issues of fact and law that have been vigorously pursued[.]"). Class Counsel have continued to vigorously and skillfully prosecute this case to its conclusion. Indeed, if the Court grants CIIPPs 33.33% of the settlement fund, their lodestar multiplier will be negative: .64 for the period following the first fee award or .73 for the case from its inception. ECF No. 7731 at 18.

11

This negative lodestar if awarded 33.33% further militates in favor of the award. *See, e.g., Domann v. Summit Credit Union*, No. 18-cv-167-wmc, 2020 WL 1847868 (W.D. Wisc. April 13, 2020) ("The fact that the lodestar method produces a 'negative multiplier' is also a factor supporting the reasonableness of the fee request, given that courts have approved multipliers of five or more.").

### iv. The lack of objectors to either CIIPP fee request is evidence that their *ex ante* market rate is 33.33%.

Finally, the appropriateness of CIIPPs' request for 33.33% of the Settlement Fund is also supported by the fact that, unlike EUCPs, CIIPPs' have received no objections to either this or their first motion for attorneys' fees. ECF No. 7809 at 19. *See Hale,* 2018 WL 6606079, at *6 ("the response from the class can provide insight into the fairness of both the settlement and . . . the requested attorney's fees and costs.").

In the *Andren* appeals, this Court and the Seventh Circuit considered the objector's argument on what range of fees was reasonable. *See generally, Broilers,* 2024 WL 3292794, at *2-5; *see Andren II,* 142 F.4th at 574. In fact, the Seventh Circuit explicitly adopted the fee that the objector identified as the top of the range. 142 F.4th at 575 ("Andren requested a wide range of revised awards, with 26.6% at the top end. We therefore adjust the award to that amount."). There is no objector in the CIIPP case, nor was there any objector to their first fee petition, which is a market-based endorsement of CIIPPs' requested fee.

### B.    *Andren II* Does Not Require this Court to Sample *Ex Post* Awards to Calculate CIIPPs' Market Rate

*Andren II* does not require the district court to undertake an analysis of *ex post* awards to mathematically calculate a market rate. *See* 142 F.4th at 575. Rather, fee awards in analogous class action settlements can be considered as a factor in assessing the reasonableness of a fee request. *Hale,* 2018 WL 6606079, at *10 ("Another *relevant* data point for the market for attorneys' fees

is those awarded in analogous class action settlements" and finding Class Counsel's fee request was reasonable when viewed in the context of data showing that Courts within the Seventh Circuit and elsewhere regularly award percentages of 33.33%) (emphasis added and internal quotation omitted)).

Here, in both fee motions, CIIPPs identify many class action settlements in the Seventh Circuit where the courts awarded attorney's fees of 33.33% of the settlement fund or greater. *See, e.g.,* ECF No. 5404 at 6-7; ECF No. 7730 at 8-9. That is, CIIPPs identify many similar antitrust action cases that support the *reasonableness* of their one-third fee request. *See* ECF No. 7731 at 17-18. CIIPPs are not taking the position, nor did they ever, that one third is the *average* or *median award* based on some representative survey of cases in the Seventh Circuit or elsewhere.[5]

In *Andren II,* the Seventh Circuit decreased the EUCP's fee award in part because this Court included in its calculations a spreadsheet of "all court-awarded fees to counsel in cases *without an ex ante agreement . . .* within a set timeframe before this litigation" which contained only cases of 33% or greater – in other words, cases that were skewed towards one-third. 2025 WL 1823171, at *4 (emphasis added). Removing the offending cases, the Seventh Circuit found that the median award was 26.6%, and awarded that percentage as the EUCP's market rate. *Id.* at *4-5. Importantly, as noted above, *Andren II* did not say that courts *must* calculate an average *ex post*

---

[5] As described in more detail in CIIPPs' Fee Motion, ECF No 7731 at 8, CIIPPs previously submitted an expert report from Robert Klonoff, which opined on the use of a declining fee scale in similar antitrust class action cases. ECF No. 5050-1. The report also included a chart of cases titled "Examples of Antitrust Cases Within the Seventh Circuit with [Fee] Percentages of 33 Percent or Greater" which Professor Klonoff offered, *inter alia,* in support of the statement "Not surprisingly, therefore, fee awards of 33 1/3 percent or more are common in antitrust cases and other complex class actions." *Id.* ¶¶ 75-76. Notably, Professor Klonoff's chart was *not* presented as or intended to be a representative sample of all fee awards in the Seventh Circuit. Neither Professor Klonoff nor the CIIPPs represented that this chart calculated the average or median fee award. *See generally* ECF Nos. 5405, 7731. Rather, Professor Klonoff's chart shows exactly what it advertises: that one-third fee awards are common in similar antitrust class action cases.

award, nor that the market rate of class counsel should reflect this average. *Id.* Rather, the Seventh Circuit narrowly held that *"to the extent a district court relies on* a sampling of *ex post* awards to recreate the hypothetical market, it must ensure that sample is representative." *Id.* at *4 (emphasis added).

For CIIPPs, as described *supra*, the Court need not sample *ex post* awards in order to recreate a hypothetical *ex ante* market because it already has strong evidence of CIIPPs' *ex ante* market rate of 33.33%. *See Assessment Techs.* 361 F.3d at 434; *see also In re Dairy Farmers of Am., Inc.,* 80 F. Supp. 3d 838, 846 (N.D. Ill. 2015). But even if the Court were inclined to consider *ex post* awards in this instance, nothing in the *Andren* opinions requires the Court to use those *ex post* awards to arrive at a mathematically precise calculation of average class counsel's fees. Indeed, the Seventh Circuit reiterated that "reasonable fees often fall within a broad range." *Andren II*, 142 F.4th at 573 (internal quotation omitted). For CIIPPs' request, the many similar antitrust class action cases cited in their Fee Request where counsel were awarded 33.33% informs the Court that CIIPPs' fee request here, in fact, falls within the "broad range" of reasonable awards. *See* ECF No. 7731 at 8-11.

## IV.    CONCLUSION

CIIPPs request the Court grant their Motion for Attorneys' Fees and award one third of the net settlement fund.

14

Dated: July 25, 2025

Respectfully Submitted,

*/s/ Daniel C. Hedlund*
Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua J. Rissman
Anthony J. Stauber
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
tstauber@gustafsongluek.com

Adam J. Zapala
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
azapala@cpmlegal.com

***Co-Lead Counsel for the Commercial and
Institutional Indirect Purchaser Class***

Kenneth A. Wexler
Melinda J. Morales
**WEXLER BOLEY & ELGERSMA, LLP**
311 S. Wacker Drive
Chicago, IL 60606
Tel: (312) 346-2222
kaw@wbe-llp.com
mjm@ wbe-llp.com

***Liaison Counsel for the Commercial and
Institutional Indirect Purchaser Class***

15