**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637 |
| This Document Relates To: | Honorable Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | |

**MEMORANDUM OF LAW IN SUPPORT OF END-USER CONSUMER PLAINTIFFS'
RENEWED SECOND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND CLASS
<u>REPRESENTATIVE SERVICE AWARDS</u>**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    BACKGROUND ................................................................................ 2

     A.     After five years of hard work and substantial risk, Class Counsel secured $181 million in settlements. .......................................................... 3

     B.     While the fee appeals were pending, EUCP Class Counsel pressed forward with their own litigation strategy. ............................................. 3

     C.     Certifying the class required complex, independent proof. .................... 5

     D.     EUCPs defeated *Daubert* motions and protected key expert testimony. ............................................................................................. 6

     E.     EUCPs overcame extensive summary judgment challenges that threatened the case. .............................................................................. 7

     F.     EUCPs undertook exhaustive trial preparation in the face of great risk. ....................................................................................................... 8

     G.     Settlement negotiations garnered another $22.35 million for consumers. .......................................................................................... 8

     H.     The settlement agreements EUCP Class Counsel negotiated were approved without objection. .................................................................. 10

     I.      Class representatives worked hard on behalf of the EUCPs. ............... 11

III.   LEGAL STANDARD ....................................................................... 12

IV.   ARGUMENT ................................................................................... 13

     A.     The Seventh Circuit has determined the appropriate fee for the $181 million settlements, and this Court must now implement that rate. ..................................................................................................... 13

     B.     Class Counsel's request for 26.6% of the new settlements reflects a reasonable fee – if anything, it underrepresents the market rate. .......... 13

     C.     This Court made, and the Seventh Circuit did not reverse, findings regarding the caliber of Class Counsel's performance. ........................ 18

     D.     A lodestar cross-check demonstrates the requested fee is not only reasonable, but conservative. .............................................................. 19

E.     Class Counsel should be reimbursed fully for litigation expenses and claims administration costs. ........................................................................ 21

F.     Class Counsel should be reimbursed for all accrued interest on the portions of the fee award that remain in escrow. ..................................................... 23

G.     After nearly a decade of service, the class representatives request a $2,000 service award. ............................................................................................... 25

V.     CONCLUSION.................................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Broiler Chicken Antitrust Litig.*,
142 F.4th 568 (7th Cir. 2025) (*Broiler II*) ....................................... *passim*

*In re Broiler Chicken Antitrust Litig.*,
80 F.4th 797 (7th Cir. 2023) (*Broiler I*)........................................... *passim*

*Matter of Cont'l Illinois Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ........................................................20, 25

*Hale v. State Farm Mut. Auto. Ins. Co.*,
2018 WL 6606079 (S.D. Ill. Dec. 16, 2018)..................................... *passim*

*Jarrard v. CDI Telecommunications, Inc.*,
408 F.3d 905 (7th Cir. 2005) ...............................................................18

*Silverman v. Motorola Sols., Inc.*,
739 F.3d 956 (7th Cir. 2013) ...............................................................17

*Spano v. Boeing Co.*,
2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ........................................20

*Standard Iron Works v. ArcelorMittal*,
2014 WL 7781572 (N.D. Ill. Oct. 22, 2014)....................................23, 25

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ...............................................................21

*In re TikTok, Inc., Consumer Priv. Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022), *appeal dismissed sub nom. In re Tiktok
Inc., Consumer Priv. Litig.*, 2022 WL 19079999 (7th Cir. Oct. 12, 2022)............................25

*U.S. v. Husband*,
312 F.3d 247 (7th Cir. 2002) ...............................................................16

*United States v. Agri Stats, Inc.*,
No. 0:23-cv-03009 (D. Minn., Sept. 28, 2023)........................................5

*Williams v. Rohm & Haas Pension Plan*,
658 F.3d 629 (7th Cir. 2011) ...............................................................19

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(b) .............................................................................5

Fed. R. Civ. P. 23(b)(3)...........................................................................................................23, 24

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................................24

Fed. R. Civ. P. 23(e) ..............................................................................................................11

## GLOSSARY OF DEFINED TERMS

| Term | Definition |
|---|---|
| Class Counsel | Cohen Milstein Sellers & Toll PLLC and Hagens Berman Sobol Shapiro LLP |
| EUCPs or Plaintiffs | The court-certified class of End-User Consumer Plaintiffs, represented by Ian Adams, Angela Ashby, Linda Cheslow, Kenneth Cote, Kristin Davis, Abraham Drucker, James D. Flasch, Jr., Christina Hall, Matthew Hayward, Richard Heftel, Stephen Holt, Joshua Madsen, William D. Marino, Dorothy Monahan, Dina Morris, Alison Pauk, Daniel Pearcy, Michael Perry, Catherine Senkle, Diane Spell, Margo Stack, Marilyn Stangeland, Eric Thomas, David Weidner. Leslie Weidner, and Natalie Wilbur. |
| *Broiler I* | *In re Broiler Chicken Antitrust Litig.*, 80 F.4th 797 (7th Cir. 2023). |
| *Broiler II* | *In re Broiler Chicken Antitrust Litig.*, 142 F.4th 568 (7th Cir. 2025). |
| Fifth Consol. Compl. | End-User Consumer Plaintiffs' Fifth Consolidated Amended Class Action Complaint, Dkt. No. 3747 (Aug. 7, 2020). |
| Mot. for Class Cert. | End-User Consumer Plaintiffs' Motion for Class Certification, Dkt. No. 3971 (Oct. 30, 2020). |
| Mot. for Prelim. Approval of Settlements and to Direct Notice | Memorandum of Law in Support of End-User Consumer Plaintiffs' Uncontested Motion for Preliminary Approval of Settlements with Claxton, Foster Farms, House of Raeford, Koch Foods, Mountaire, O.K. Foods, Perdue, Sanderson, Simmons, and Wayne Farms Defendants and Motion to Direct Notice Regarding Harrison Poultry Settlement, Dkt. No. 7495 (Jan. 29, 2025). |
| Scarlett Decl. | Declaration of Shana E. Scarlett in Support of End-User Consumer Plaintiffs' Renewed Second Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards. |
| 2022 Fee Order | Memorandum Opinion and Order, Dkt. No. 5855 (Oct. 7, 2022). |
| 2024 Fee Order | Memorandum Opinion and Order, Dkt. No. 7309 (Jul. 3, 2024). |
| 2022 Annual Antitrust Report | Exhibit 4 to the Declaration Steve Berman in Support of EUCP's Renewed Motion for Attorney's Fees, Dkt. No. 6911-1 (Sept. 29, 2023). |

## I.    INTRODUCTION

To date, Class Counsel has secured settlements totaling $203,350,000 for the End-User Consumer Class. The first round of settlements – totaling $181 million – was reached before the Court certified the class. Following two rounds of briefing, two rulings from this Court, and two appeals, the Seventh Circuit has now held that the appropriate *ex ante* market rate for Class Counsel's attorneys' fees is 26.6%.[1] In light of the Seventh Circuit's opinion, Plaintiffs respectfully submit this renewed motion for attorneys' fees.

This motion seeks an attorneys' fee award of $45,805,200, representing 26.6% of the $181 million settlement, net of expenses and service awards. The Seventh Circuit's mandate establishes the amount; the remand was for the sole purpose of entering an award at that rate.[2] Because no objector appealed the Court's prior orders awarding $8.75 million in expenses and $50,000 in service awards to twenty-five class representatives, those rulings remain undisturbed and are not at issue in this motion.[3]

This motion also seeks an additional $3,294,651.30 in attorneys' fees, representing 26.6% of the $22.35 million in further settlements, net of expenses and service awards. Unlike the prior award, this request has not yet been addressed by the Court and must be evaluated under the *ex ante* market rate standard. While Plaintiffs maintain that a higher percentage would more accurately reflect the market rate for this case, the Seventh Circuit's ruling now constitutes the law of the case for the End-User Plaintiffs. As discussed below, the fee request is consistent with the Seventh Circuit's determination of the market rate – and in fact, remains well below the rate that would have been negotiated *ex ante*.

---

[1] *See In re Broiler Chicken Antitrust Litig.*, 142 F.4th 568, 576 (7th Cir. 2025) (*Broiler II*).

[2] *Id.*

[3] *See* Mem. Op. and Order 12-13, Dkt. No. 5855 (Oct. 7, 2022) ("*2022 Fee Order*").

Class Counsel also request the interest that has accrued – and will accrue – on the attorneys' fees and expenses portion of both the $181 million and $22.35 million settlements while those funds remain in the settlement accounts, prior to disbursement to counsel. Consistent with common fund principles and the time value of money, Class Counsel are entitled to the interest earned on the funds allocated to their fee award while those funds were held for the benefit of the class. To date, $1,653,200.86 in interest has accrued on the first-round settlements attributable to Class Counsel's fee and expense award, and an additional $134,477.22 has accrued on the fees and expenses portion of the second-round settlements.[4] Class Counsel do not seek interest after the date of actual disbursement to Class Counsel, only the interest that accumulates on their fixed portion of the common fund while it remains in escrow.

Finally, Class Counsel request reimbursement of $9,914,092.86 in litigation expenses and claims administration costs, as well twenty-five $2,000 service awards for the class representatives who have served the class throughout this multi-year litigation.[5]

## II.    BACKGROUND

This case presented a high-risk conspiracy claim and required the plaintiffs to litigate against numerous defendants, significantly increasing both the burden and complexity of the proceedings. From the outset, any recovery was far from assured. Class Counsel took on that risk, building the case from the ground up without the benefit of a prior government investigation to guide their work. Over nearly nine years of litigation, they devoted close to 90,000 hours to pursuing justice for consumers, and ultimately secured $203 million in settlements on behalf of the End-User Consumer Class.[6]

---

[4] Scarlett Decl. ¶ 43.

[5] There are 26 class representatives, but two are married and would share one service award.

[6] Scarlett Decl. ¶ 27.

**A.    After five years of hard work and substantial risk, Class Counsel secured $181 million in settlements.**

By the end of 2021, following five years of sustained litigation, Class Counsel achieved a major milestone. On December 20, 2021, this Court approved six settlements between the End-User Consumer Class and six corporate defendant families, totaling $181 million.[7] This result was not the product of following a government roadmap or leveraging criminal convictions. At the time, there was no Department of Justice prosecution to guide the litigation. Instead, Class Counsel took on the risk from the beginning – conducting their own investigation, developing the record from scratch, and building the case one piece of evidence at a time.

Shortly after the Court approved those settlements, Class Counsel moved for attorneys' fees. The Court granted the motion, but a single objector appealed. The Seventh Circuit remanded for further analysis.[8] The Court again awarded fees, and the same objector appealed a second time. On review, the Seventh Circuit held that the appropriate *ex ante* market rate for fees in this case was 26.6%, and remanded for implementation of that rate.[9]

**B.    While the fee appeals were pending, EUCP Class Counsel pressed forward with their own litigation strategy.**

Even as the fee appeals for the initial $181 million in settlements proceeded, EUCP Class Counsel remained focused on leading the litigation. They pursued a distinct legal strategy, prepared the case for trial, and overcame major hurdles – including a contested class certification process, multiple expert challenges, and a 100,000-page summary judgment record.

---

[7] *See* Order Granting End-User Consumer Pls.' Mot. for Final Approval of the Class Action Settlements, Dkt. No. 5304 (Dec. 20, 2021).

[8] *In re Broiler Chicken Antitrust Litig.*, 80 F.4th 797, 800 (7th Cir. 2023) (*Broiler I*).

[9] *Broiler II*, 142 F.4th at 576.

These efforts led to an additional $22.35 million in settlements for the End-User Consumer Class. This result was possible only because Class Counsel charted their own course. Early in the litigation, they amended the Complaint to add a rule of reason claim – one not pursued by the other classes – and aggressively pursued discovery tailored to that theory.[10] As a result, EUCP Class Counsel broadened the scope of potential recovery and signaled to Defendants that EUCPs were litigating on their own terms.

EUCPs' strategic choice revealed new facts that benefited all classes. Despite objections, the magistrate judge adopted EUCPs' rationale that Agri Stats documents were highly relevant and declined to limit Agri Stats' document production to just two years.[11] Each class then used these highly relevant documents to support their class certification motions, and later, summary judgment.[12] Securing this discovery required overcoming forceful defense opposition and coordinating with the other classes.[13]

EUCPs pursued this claim while also advancing the *per se* claim made by all classes. EUCP Class Counsel deposed many of the 180 defendants and third-party witnesses in this case.[14] Defendants came to understand that EUCP Class Counsel were not merely following the lead of other classes, but forging their own path. Despite representing a shorter class period and

---

[10] Fifth Consol. Compl. ¶¶ 197-215, Dkt. No. 3747 (Aug. 7, 2020).

[11] *Compare* End-User Consumer Pls.' Mem. in Opp'n to Agri Stats, Inc.'s Mot. for Protective Order, Dkt. No. 941 (Jun. 1, 2018) *with* Mem. Op. and Order, Dkt. No. 1090 (Jul. 26, 2018).

[12] Scarlett Decl. ¶¶ 6, 12.

[13] *See, e.g.*, Order, Dkt. No. 864 (Apr. 13, 2018) (denying Tyson's motion for protective order); Mem. Op. and Order, Dkt. No. 1090 (Jul. 26, 2018) (denying Agri Stats's motion for protective order); Notification of Docket Entry, Dkt. No. 1254 (Sept. 26, 2018) (granting class plaintiffs' motion to serve interrogatories); Notification of Docket Entry, Dkt. No. 1832 (Feb. 14, 2019) (ordering third-party Porky Products to produce downstream data); Notification of Docket Entry, Dkt. No. 2010 (Apr. 8, 2019) (granting class plaintiffs' motion to compel documents claimed to be privileged); Order, Dkt. No. 3622 (May 19, 2020) (granting in part class plaintiffs' motion for production of structured data).

[14] Scarlett Decl. ¶ 8.

fewer products, EUCP Class Counsel ultimately achieved a recovery comparable to those of the two larger classes.[15]

EUCPs' impact extended beyond the civil case. Two years into the litigation, the Department of Justice subpoenaed class plaintiffs and used documents negotiated by Class Counsel in its criminal trial.[16] In 2023, the DOJ filed a civil rule of reason case against Agri Stats – mirroring the theory EUCPs developed years earlier.[17]

## C.    Certifying the class required complex, independent proof.

EUCP Class Counsel undertook a rigorous, independent effort to certify a consumer class under the laws of 24 states.[18] Their claims alleged a conspiracy to stabilize broiler chicken prices across a complex distribution chain, from processors to distributors like Sysco and US Foods, to retailers such as Kroger and Costco, and finally to consumers.[19] Proving impact under Rule 23(b) meant showing that price increases were passed through at every level.[20]

EUCP Class Counsel featured equally at the class certification hearing as the other classes, delivering opening statements, called and examining two economic experts, and cross-

---

[15] *See* Mem. of Law in Supp. of Com. and Institutional Indirect Purchaser Pls.' Uncontested Mot. for Prelim. Approval of Settlements with Defs. House of Raeford, Koch Foods, Mountaire, O.K. Foods, Sanderson Farms, Simmons Foods, Agri Stats, Case Farm, Claxton, Foster Farms, Perdue, and Wayne Farms; Approval of Am. Harrison Poultry Settlement; and Approval of CIIPPs' Settlement Program 1, Dkt. No. 7505 (Feb. 12, 2025) (stating counsel for the commercial institutional indirect purchaser plaintiffs recovered $145,140,000.00); Direct Purchaser Pls.' Mem. of Law in Supp. of Mot. for Prelim. Approval of Settlements with Defs. Foster Farms, Perdue, Case, Claxton, Wayne Farms, Agri Stats, and Sanderson Farms; and Approval of Notice Plan 1, Dkt. No. 7172 (Mar. 6, 2024) (stating counsel for the direct purchaser class recovered "over $284 million").

[16] *Id.* at 4-5.

[17] Compl., *United States v. Agri Stats, Inc.*, No. 0:23-cv-03009 (D. Minn. Sept. 28, 2023).

[18] Fifth Consol. Compl. ¶ 1, Dkt. No. 3747 (Aug. 7, 2020).

[19] Mot. for Class Cert. 37, Dkt. No. 3971 (Oct. 30, 2020).

[20] *See* Mem. Op. and Order 12, Dkt. No. 5644 (May 27, 2022).

examining Defense expert witnesses over two days. [21] They also pursued independent discovery to build a factual record of pass-through and retained an expert economist to perform a regression analysis on billions of dollars in transactions. In total, Class Counsel obtained usable datasets from 28 companies, covering 10,576 class products and totaling more than $25 billion in revenue.[22] The Court certified the EUCP class in late May 2022.[23]

## D. EUCPs defeated *Daubert* motions and protected key expert testimony.

At the merits stage, EUCP Class Counsel engaged two expert economists: Dr. David Sunding and Dr. Luis Cabral. Dr. Sunding assessed Defendants' conduct during the Class Period and developed a damages model that accounted for the overcharge passing through the retail chain.[24] Dr. Cabral analyzed Defendants' information exchanges through Agri Stats and EMI and concluded these exchanges had anticompetitive effects.[25]

EUCP Class Counsel prepared both experts for their demanding, seven-hour depositions. After these depositions, Defendants moved to exclude both Dr. Sunding's and Dr. Cabral's

---

[21] Tr. of Telephonic Proc. 21-26, Dkt. No. 5624 (May 10, 2022) (opening statement by Steve Berman of Hagens Berman for EUCPs); Tr. of Telephonic Proc. 285-297, 309-310, Dkt. No. 5625 (May 11, 2022) (questioning Dr. Luis Cabral, EUCP expert witness, by Brent Johnson for Cohen Milstein), 483-491 (questioning Dr. David Sunding, EUCP rebuttal expert witness, by Mr. Berman for Hagens Berman). The transcript erroneously indicates that Mr. Johnson was counsel for the Commercial and Institutional Indirect Purchaser Plaintiffs. *Id.* at 282; *Id.* at 429-445 (cross-examination of Dr. John Johnson IV, Defense expert witness, by Shana Scarlett for Hagens Berman).

[22] Mot. for Class Cert. 40, Dkt. No. 3971 (Oct. 30, 2020); Decl. of Dr. David Sunding in Supp. of Mot. for Class Cert. ¶¶ 356-64, Dkt. No. 3971-4 (Oct. 30, 2020) (estimating pass-through for each commerce channel).

[23] *See* Mem. Op. and Order, Dkt. No. 5644 (May 27, 2022).

[24] *See* Mem. in Opp'n to Defs.' Mot. to Exclude the Test. of Dr. Luis Cabral 1, Dkt. No. 6261 (Jan. 27, 2023).

[25] *Id.*

merits expert reports.[26] EUCP Class Counsel successfully opposed both motions, preserving critical testimony for trial.[27]

**E.  EUCPs overcame extensive summary judgment challenges that threatened the case.**

As fact discovery closed, EUCP Class Counsel faced an onslaught of summary judgment motions. On October 7, 2022, Defendants filed seven joint and 18 individual motions. Many targeted EUCP claims directly, and some exclusively.[28] EUCPs also joined a partial motion for summary judgment on three affirmative defenses.[29] The combined briefing, *Daubert* motions, and exhibits exceeded 100,000 pages.

Preparing these briefs required combing through over 1.3 terabytes of discovery – equivalent to 1,300 physical filing cabinets.[30] EUCP Class Counsel led the drafting of eight summary judgment briefs and took the lead in oral argument, presenting eight of the designated legal issues across a two-day hearing.[31] The transcript from that hearing spans over 500 pages.[32]

The legal issues at summary judgment were complex, and success for the EUCPs was far from guaranteed.[33] The Court denied summary judgment for 11 of the individual defendant

---

[26] Mem. in Supp. of Defs.' Mot. to Exclude Expert Opinions of Dr. David Sunding, Dkt. No. 5897 (Oct. 7, 2022); Mot. to Exclude the Test. of Dr. Luis Cabral, Dkt. No. 5938 (Oct. 7, 2022).

[27] *See* Mem. Op. and Order 86, Dkt. No. 6641 (Jun. 30, 2023) (denying Daubert motions as to issues addressed in the order but permitting motions *in limine* as to all other issues).

[28] *See* Mem. Op. and Order 86-87, Dkt. No. 6641 (Jun. 30, 2023) (listing same).

[29] Track One Pls.' Mot. for Partial Summ. J. on Three Affirmative Defenses, Dkt. No. 5869 (Oct. 7, 2022).

[30] Scarlett Decl. ¶ 4.

[31] Tr. of Proc., Dkt. No. 6604 (May 5, 2023); Tr. of Proc., Dkt. No. 6607 (Jun. 2, 2023).

[32] *Id*.

[33] 2022 Fee Order 8, Dkt. No. 5855 (Oct. 7, 2022) (noting that "issues raised in the motions to dismiss show that success on summary judgment, let alone trial, is no guarantee").

families, but granted it for seven defendants (Agri Stats, Case, Claxton, Fieldale, Foster, Perdue, and Wayne).[34]

## F.     EUCPs undertook exhaustive trial preparation in the face of great risk.

After litigating this case for nearly a decade, EUCP Class Counsel were fully prepared to proceed to trial against the six remaining Defendants. Trial preparation was extensive. EUCP Class Counsel identified 126 witnesses, 949 exhibits, and thousands of deposition pages.[35] Defendants, in turn, identified 90 witnesses, 1,202 exhibits, and over 4,000 deposition pages.[36]

EUCP Class Counsel opposed Defendants' joint motion *in limine* to exclude years of damages evidence.[37] Counsel worked closely with both the class representatives and expert economists to prepare strong trial witnesses.

The risks of trial were real. In late 2023, the direct purchases received an adverse jury verdict.[38] EUCP Class Counsel pressed ahead, ready to take the case forward despite the significant risk.

## G.     Settlement negotiations garnered another $22.35 million for consumers.

Even as they prepared for trial, EUCP Class Counsel engaged in parallel settlement negotiations with each of the six remaining Defendant families. These negotiations took place over months – and, in some cases, years.[39] EUCP Class Counsel negotiated directly with counsel for each of the six Defendant families set to proceed to trial. These discussions were between

---

[34] Mem. Op. and Order 65, 86-87, Dkt. No. 6641 (Jun. 30, 2023).

[35] Scarlett Decl. ¶ 18.

[36] *Id.*

[37] Pls.' Opp'n to Defs.' Mot. *in Limine* to Preclude Pls.' Evid. of Damages for the Years 2013-2019, Dkt. No. 7321 (Jul. 10, 2024).

[38] Notification of Docket Entry, Dkt. No. 7014 (Oct. 25, 2023).

[39] *See, e.g.*, Mot. for Prelim. Approval of Settlements and to Direct Notice 8-9, Dkt. No. 7495 (Jan. 29, 2025) (negotiating Simmons settlement agreement took 14 months).

sophisticated counsel and required significant preparation, deep case knowledge, and skilled negotiation. Senior leadership at Hagens Berman alone logged more than 185 hours preparing for and conducting settlement discussions during the period covered by this fee motion.[40]

Two experienced mediators, the Honorable Daniel Weinstein (Ret.), and his colleague Simone Lilchuck, facilitated four of these six settlements. The mediators assisted the parties for multiple days before a final resolution was reached – including after an initial mediation session had failed.[41] The length of these mediations underscores the complexity and contested nature of the legal issues in this case.

Running settlement negotiations alongside trial preparation demanded extraordinary effort. For example, the parties' objections to deposition-designations and counter-designations were due just four days before the mediation with Defendant Koch Foods.[42] EUCP Class Counsel filed an opposition to Defendants' motion *in limine* to preclude six years of damages evidence the day before the successful mediation with Defendant Simmons.[43] The day after the successful mediation with O.K. Foods, EUCP Class Counsel argued against the motion *in limine* to preclude damages evidence[44] and served the final round of deposition designations and

---

[40] Scarlett Decl. ¶ 18.

[41] *See* Mot. for Prelim. Approval of Settlements and to Direct Notice 6, Dkt. No. 7495(Jan. 29, 2025) (describing Koch Foods mediation efforts).

[42] *See* Notification of Docket Entry, Dkt. No. 7201 (Apr. 8, 2024) (setting pretrial deadlines); Mot. for Prelim. Approval of Settlements and to Direct Notice 6, Dkt. No. 7495 (Jan. 29, 2025) (stating Koch Foods mediation timing).

[43] *See* Pls.' Opp'n to Defs.' Mot. *in Limine* to Preclude Pls.' Evid. of Damages for the Years 2013-2019, Dkt. No. 7321 (Jul. 10, 2024); Mot. for Prelim. Approval of Settlements and to Direct Notice, Dkt. No. 7495 (Jan. 29, 2025).

[44] Notification of Docket Entry, Dkt. No. 7337 (Jul. 17, 2024) (describing oral argument in a minute order).

objections.[45] In the two months before the final settlement agreement, Hagens Berman alone

worked more than 906 hours on the class's behalf.[46]

Less than two months before trial, Counsel expected term sheets settling in principle with

all remaining Defendants, securing an additional $22.35 million for the class. These settlements

brought EUCPs' total recovery to over $200 million.[47] Negotiating final, full-length settlement

agreements with all Defendants took an additional six months.[48] Aware of their duty to be

effective stewards of the class's settlement funds, counsel insisted on consolidating notice of all

settlements into a single notice.[49]

## H.     The settlement agreements EUCP Class Counsel negotiated were approved without objection.

Settlement is not the end of a class action. The Court must both preliminarily and finally

approve each settlement before a defendant may be dismissed.[50] On January 29, 2025, the

EUCPs' Co-Lead Counsel moved for preliminary approval of the eve-of-trial settlements with

Claxton, Foster, House of Raeford, Koch, Mountaire, O.K. Foods, Perdue, Sanderson, Simmons,

---

[45] *See* Notification of Docket Entry, Dkt. No. 7201 (Apr. 8, 2024) (setting pretrial deadlines); Mot. for Prelim. Approval of Settlements and to Direct Notice, Dkt. No. 7495 (Jan. 29, 2025).

[46] Scarlett Decl. ¶ 18.

[47] *See* End-User Consumer Pls.' Notice of Settlement with Def. House of Raeford Farms, Inc., Dkt. No. 7302 (Jun. 28, 2024) (notifying the Court of settlements with Defendant House of Raeford Farms, Inc.) *and* End-User Consumer Pls.' Notice of Settlement with Defs. Mountaire Farms Inc., Mountaire Farms, LLC and Mountaire Farms of Delaware, Inc. and Defs. Koch Foods Inc., JCG Foods of Al. LLC, JCG Foods of Ga. LLC and Koch Meat Co., Inc., Dkt. No. 7342 (Jul. 23, 2024) (providing notice of settlement with Mountaire Farms Inc., Mountaire Farms, LLC, Mountaire Farms of Delaware, Inc., Koch Foods Incorporated, JCG Foods of Alabama LLC, JCG Foods of Georgia LLC and Koch Meat Co., Inc.).

[48] *See* Decl. of Shana E. Scarlett in Supp. of Mot. for Prelim. Approval of Settlements and to Direct Notice ¶¶ 14, 28, Dkt. No. 7495-1(Jan. 29, 2025) (attaching Claxton settlement, signed Dec. 20, 2024).

[49] *See* Order Granting End-User Consumer Pls.' Uncontested Mot. for Prelim. Approval of Settlements and to Direct Notice 3, Dkt. No. 7500 (Feb. 11, 2025) (deferring notice of prior Harrison Poultry settlement allowed for cost-effective notice).

[50] Fed. R. Civ. P. 23(e).

and Wayne.[51] The Court granted preliminary approval of these settlements on March 10, 2025.[52]
At the hearing, no objections were raised to these settlements.[53] The Court granted final approval
of these settlements on June 30, 2025 after another hearing with no objections.[54]

Counsel engaged an experienced claims administrator to execute the notice process.[55]
This Court approved the notice plan earlier this year.[56] Since then, Counsel have been working
with the claims administrator to execute that plan. Notice is complete and the claims period
closed on July 31, 2025. Counsel and the claims administrator have spent substantial resources
and time responding promptly to class members' questions.

## I.    Class representatives worked hard on behalf of the EUCPs.

Throughout this litigation, the EUCP class representatives have remained active and
engaged in prosecuting the class's claims.[57] They have stayed updated on case developments and
communicated actively with counsel about major decisions. Several were prepared to undergo
long, difficult days publicly testifying to their experience and enduring cross-examination by
attorneys at some of the country's largest law firms. They also reviewed most recent settlement

---

[51] Mot. for Prelim. Approval of Settlements and to Direct Notice, Dkt. No. 7495 (Jan. 29, 2025).

[52] Order Granting Com. and Institutional Indirect Purchaser Pls.' Uncontested Mot. for Prelim.
Approval of Settlements with Defs. House of Raeford, Koch Foods, Mountaire, O.K. Foods, Sanderson
Farms, Simmons Foods, Agri Stats, Case Farms, Claxton, Foster Farms, Perdue, and Wayne Farms;
Approval of Am. Harrison Poultry Settlement; and Approval of CIIPPs' Settlement Notice Program, Dkt.
No. 7536 (Mar. 10, 2025).

[53] Order Granting End-User Consumer Pls.' Uncontested Mot. for Prelim. Approval of Settlements
and to Direct Notice 2, Dkt. No. 7500 (Feb. 11, 2025).

[54] *See* Order Granting End-User Consumer Pls.' Mot. for Final Approval of Class Action Settlements,
Dkt. No. 7790 (Jun. 30, 2025); Notification of Docket Entry, Dkt. No. 7789 (Jun. 30, 2025).

[55] Mot. for Prelim. Approval of Settlements and to Direct Notice, Dkt. No. 7495 (Jan. 29, 2025).

[56] Notification of Docket Entry, Dkt. No. 7499 (Feb. 11, 2025).

[57] There are 26 class representatives, but two are married and would receive one service award to
share between the two of them.

agreements with the entire classes' interests in mind.[58] Their sustained commitment over a long period of time supports the second request for service awards.

### III. LEGAL STANDARD

The Seventh Circuit uses a market-mimicking approach to setting attorneys' fees in class action cases. Put simply, this Court must estimate what fees and terms "private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)."[59]

In assessing what fees would appear in this "hypothetical ex ante bargain," the Court should weigh available market evidence, evaluate the amount of work involved, the non-payment risk, and representation quality.[60] In *Hale*, the Seventh Circuit identified four factors to determine the market rate:

> (1) the actual agreements between the parties as well as fee agreements reached by sophisticated entities in the market for legal services; (2) the risk of non-payment at the outset of the case; (3) the caliber of Class Counsel's performance; and ([4]) information from other cases, including fees awarded in comparable cases.[61]

Bids that counsel submit at auctions in other cases to become class counsel may be relevant.[62] Bids with declining fee structures, in which counsel's fee percentage decrease as the settlement amount increases, should not "categorically be given little weight in assessing fees."[63]

---

[58] Scarlett Decl. Ex. F (Class Representative Declarations).

[59] *Broiler I,* 80 F.4th at 801-02 (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)).

[60] *Broiler I*, 80 F.4th at 802 (quoting *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011)).

[61] *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *1, *8 (S.D. Ill. Dec. 16, 2018) (citing *In re Synthroid Mktg. Litig.*, 264 F.3d at 719).

[62] *See Broiler I*, 80 F.4th at 802.

[63] *Id.* at 803.

Similarly, out-of-Circuit cases with rules recommending smaller attorneys' fees in cases with huge common funds ("megafunds") are not categorically assigned less weight.[64] When assessing market rate, *ex post* fee awards in other cases are "less probative in assessing the bargain that would have been struck ex ante."[65]

## IV. ARGUMENT

### A. The Seventh Circuit has determined the appropriate fee for the $181 million settlements, and this Court must now implement that rate.

The Seventh Circuit has now resolved the dispute over the appropriate fee for the $181 million in pre-certification settlements. In its most recent opinion, the Court of Appeals held that 26.6% represents the *ex ante* market rate for this case and remanded with instructions for this Court to implement that rate. The mandate leaves establishes the amount. This Court previously awarded a 30% fee based on its own extensive analysis of comparable cases, auction bids, and other relevant factors.[66] The Seventh Circuit disagreed only with part of the data set used, not the Court's reasoning, and imposed a lower rate.[67] Accordingly, Class Counsel now seek $45,805,200 which is 26.6% of the $181 million net common fund, as required by the appellate ruling.[68]

### B. Class Counsel's request for 26.6% of the new settlements reflects a reasonable fee – if anything, it underrepresents the market rate.

Although the Court must independently assess the appropriate fee for the $22.35 million in post-certification settlements, applying the same 26.6% rate is not only consistent with the

---

[64] *Id.* at 804.

[65] *Id.*

[66] 2024 Fee Order, Dkt. No. 7309 (Jul. 3, 2024).

[67] *Broiler II*, 142 F.4th at 575.

[68] Scarlett Decl. ¶ 22.

Seventh Circuit's ruling, it is conservative.[69] The first and fourth *Hale* factors require the Court to consider both what sophisticated consumers of legal services would set as their fee and what fees have been awarded in comparable cases. Together, these factors aim to approximate the *ex ante* market rate for legal representation. Here, both factors support a fee higher than 26.6%.

In their first fee motion, EUCP Class Counsel requested a 33% fee award on the $181 million in pre-certification settlements.[70] A single objector appealed. The Seventh Circuit remanded for further assessment of data points relevant to the *ex ante* bargain analysis, specifically, (1) auction bids that Counsel made around the time this litigation began, (2) bids with declining fee structures, and (3) Ninth Circuit cases in which counsel was awarded fees under a megafund rule.[71] On remand, this Court awarded 30% after conducting a detailed review.[72]

The same objector appealed again. On review, the Seventh Circuit held that this Court "soundly exercised its discretion in determining whether those [auction bid] cases served as a good indicators of what bargain would have been struck *ex ante*."[73] The Seventh Circuit ultimately concluded that the appropriate *ex ante* market rate was 26.6% and remanded for implementation of that rate.[74]

---

[69] As articulated in the prior briefing, Class Counsel believe they would have negotiated a 33% fee award at the outset of this case. Scarlett Decl. ¶ 47. But this Seventh Circuit's findings as to the *ex ante* bargain analysis is binding, so EUCPs Class Counsel ask for a 26.6% award.

[70] Mem. in Supp. of End-User Consumer Pls.' Mot. for Attorneys' Fees, Expenses, and Class Representative Awards 10, Dkt. No. 5161 (Oct. 27, 2021).

[71] *Broiler I*, 80 F.4th at 802-04.

[72] 2024 Fee Order, Dkt. No. 7309 (Jul. 3, 2024).

[73] *Broiler II*, 142 F.4th at 574 (citations and quotations omitted).

[74] *Id.* at 576.

Although the Seventh Circuit questioned the Court's reliance on the *ex post* awards first cited in Professor Klonoff's declaration – which the EUCPs neither commissioned nor endorsed – it did not disturb the Court's findings on case-specific risk, complexity, or the quality of counsel's work. Rather, the Seventh Circuit reasoned that the Court erred in using cases from Professor Klonoff's declaration in its own fee table because Professor Klonoff was not intending to provide a representative sample.

The EUCPs have already provided the Court with the most reliable data set reflecting a true representative sample of antitrust fee awards: the *2022 Annual Antitrust Report*.[75] Between 2009 and 2022, the median fee award in this dataset – ***which includes all known antitrust fee awards across every jurisdiction for more than a decade*** – was 30%. This is not just a representative sample; it is a complete record of the field. That median aligns squarely with the Court's prior award and cannot be criticized for using cherry-picked data. The updated 2023 report analyzes another year of data and reaches the same conclusion, that for "the typical antitrust class action from 2009 through 2023, the court awarded 30% of the class recovery in fees."[76] That result strongly reinforces the reasonableness of the Court's prior award.

The Seventh Circuit declined to consider *2022 Annual Antitrust Report* only because it was not part of the Court's original analysis. Instead, it chose to "stick as close as possible" to the district court's approach.[77] Had the Court given the *2022 Antitrust Report* the same weight it gave to the cases cited in Professor Klonoff's declaration – by substituting the "non-

---

[75] *See* Scarlett Decl. Ex. G at 46. This was first submitted with Plaintiffs renewed fee motion. *See* Decl. Steve Berman in Support of EUCP's Renewed Mot. for Att'y's Fees 46, Dkt. No. 6911-1 (Sept. 29, 2023) (2022 Antitrust Annual Report).

[76] Scarlett Decl. Ex. H at 31.

[77] *Broiler II*, 142 F.4th at 575.

representative" cases the Seventh Circuit criticized[78] with the Report's median award drawn from every known antitrust case over the past decade – the result would have been a fee award of 29.3%, nearly identical to the 30% Court awarded.[79]

In short, Class Counsel believes the Court got the analysis right the first time but relied on the wrong data. A rational law firm evaluating this case in 2016 – facing high risk, protracted litigation, and extensive costs – would not have accepted a fee below the national median. At the time, no government investigation preceded the claims. Pilgrim's had already filed for bankruptcy.[80] Other processors followed, and more could have, leading to a real risk of no recovery.[81] Meanwhile the largest existing antitrust case in the agricultural or food sector was $303 million in the *Southeastern Milk Antitrust Litigation*, while some others yielded far less.[82]

The Court already recognized many of these risks and others in its findings on the first fee motion; they remain relevant here and are undisturbed by the Seventh Circuit.[83] Concerning government investigations, the DOJ sued Agri Stats after this case was pending for two years. EUCP Class Counsel's "work appears to have prompted the government investigations that led

---

[78] *See Broiler II*, 142 F.4th at 575.

[79] Scarlett Decl. ¶ 51. This calculation still gives ten times the weight to *Interest Rate Swaps*.

[80] *See Pilgrim's Pride to File Plan of Reorganization and Disclosure Statement with U.S. Bankruptcy Court*, Pilgrim's Pride (Sept. 16, 2009), https://ir.pilgrims.com/news-releases/news-release-details/pilgrims-pride-file-plan-reorganization-and-disclosure-statement (last accessed Apr. 4, 2025).

[81] *See Allen Family Foods Files for Bankruptcy Protection* (Jun. 10, 2011), https://www.thepoultrysite.com/news/2011/06/allen-family-foods-files-for-bankruptcy-protection (last accessed Apr. 4, 2025); *Townsends Files for Bankruptcy* (Dec. 21, 2010), https://www.thepoultrysite.com/news/2010/12/townsends-files-for-bankruptcy (last accessed Apr. 24, 2024).

[82] 2024 Fee Order 8, Dkt. No. 7309 (Jul. 3, 2024).

[83] 2022 Fee Order 7, Dkt. No. 5855 (Oct. 7, 2022); *see also Broiler I*, 80 F.4th at 801 (addressing the Court's assessment of the risk facing counsel when they brought this case) and 804-05 (not reversing this finding); *see also U.S. v. Husband*, 312 F.3d 247, 251 (7th Cir. 2002) (discussing scope of remand doctrine).

to those indictments, *rather than the reverse*."[84] Further, EUCPs were "opposed by many defendants, including a number of very large and well-funded corporations, which have retained some of the most prominent and sophisticated law firms in the United States."[85] The Court acknowledged that its "92-page decision denying the motions to dismiss was a relatively close call."[86] Discovery began before the motion to dismiss was briefed and decided, so Counsel "was immediately incurring costs of time and money without any assurance of an award."[87] The Seventh Circuit only remanded the issue of the bargain the parties would have struck *ex ante*.[88] This Court's findings concerning the risk of the case apply to this second fee motion.

In light of that risk, EUCP Class Counsel would not have agreed to a declining fee scale. A declining fee scale award is one in which counsel recovers an ever-smaller percent of attorneys' fees as the total settlement amount increases.[89] Whether a declining fee scale is appropriate "may depend on the particulars of the case."[90]

This case is not one in which counsel incurred "some marginal costs of bumping the recovery from $100 million to $200 million[.]"[91] Quite the opposite. EUCP Class Counsel's lodestar for recovering the first $181 million from six Defendants was over $48 million,[92] but

---

[84] 2022 Fee Order 8, Dkt. No. 5855 (Oct. 7, 2022) (emphasis added).

[85] *Id.* at 7.

[86] *Id.*

[87] *Id.*

[88] *Broiler I*, 80 F.4th at 805.

[89] 2022 Fee Order 5, Dkt. No. 5855 (Oct. 7, 2022).

[90] *Broiler I*, 80 F.4th at 803.

[91] *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 959 (7th Cir. 2013).

[92] Decl. of Shana Scarlett in Supp. of Mem. in Supp. of EUCP's Mot. for Att'y's Fees, Expenses, and Class Representative Awards 8, Dkt. No. 5161-1 (Oct. 27, 2021); Decl. of Brent W. Johnson in Supp. of End-User Consumer Pls.' Mot. for Att'y's Fees, Expenses, and Class Representative Service Awards Submitted on Behalf of Cohen Milstein Sellers & Toll PLLC 6, Dkt. No. 5161-2 (Oct. 7, 2021).

over $16 million for recovering the next $22.35 million from the remaining ten Defendants.[93]
This is not a case where a larger recovery was inevitable once a foundation was laid. Rather,
Class Counsel remained fully incentivized to pursue every defendant, and did so.

The *2022 Report* reflects how the market actually functions, and confirms that the
originally requested fee was not just reasonable, but well within the range sophisticated
purchasers of legal services would expect. But the Seventh Circuit's determination that 26.6% is
the *ex ante* rate is now the law of the case. The law-of-the-case doctrine requires that a court's
"decision[s] should continue to govern the same issues in subsequent stages in the same case."[94]
Similarly, "matters decided on appeal become the law of the case to be followed in all
subsequent proceedings in the trial court[.]"[95]

For all these reasons, applying the same 26.6% rate to the post-certification settlements is
not only appropriate – it is restrained. Accordingly, Class Counsel now seek $3,294,651.30
which is 26.6% of the $22.35 million net common fund, as required by the appellate ruling.

## C. This Court made, and the Seventh Circuit did not reverse, findings regarding the caliber of Class Counsel's performance.

EUCP Class Counsel used their significant antitrust and class action expertise to reap a
recovery that outpaces expectations for indirect purchaser class actions. Only EUCP Class
Counsel developed a rule of reason claim.[96] Adding this claim exposed evidence the processor
Defendants used Agri Stats to share sensitive business information. These bold decisions paid
off. While direct purchaser classes typically recover "3.6 times as much" as indirect

---

[93] Scarlett Decl. ¶¶ 22, 26.

[94] *Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 912 (7th Cir. 2005) (quotation omitted).

[95] *Id.* at 912 (quotation omitted).

[96] Fifth Consol. Compl. ¶¶ 197-215, Dkt. No. 3747 (Aug. 7, 2020).

purchasers,[97] the direct purchaser class's final recovery of $285,650,324 was only 1.4 times the $203,350,000 EUCP class recovered here. In other words, the EUCP class recovered almost the same amount as the direct purchasers, despite the direct purchasers alleging a nationwide class. And the other indirect purchaser class recovered $141,440,000 on behalf of commercial entities (approximately 70% of the consumer IPP recovery).[98] These results speak to the high caliber of Class Counsel's performance here, especially considering EUCPs' smaller class period and fewer class products.[99]

This Court previously found EUCP Class Counsel's performance during the period covered by the first fee motion exemplary, which the Seventh Circuit did not reverse.[100] This finding is respectfully still true. The same partners have continued to lead this case in the last four years as the previous four plus years.[101] These attorneys ultimately increased the total recovery for EUCPs by another $22.35 million.

**D.    A lodestar cross-check demonstrates the requested fee is not only reasonable, but conservative.**

Although courts are not required to cross-check the fee award against the lodestar, the Seventh Circuit permits doing so as an informative benchmark.[102] Here, the requested 26.6% fee – applied to both the $181 million and the $22.35 million settlements – would result in a total award *exactly at* Class Counsel's cumulative lodestar for the entire case, yielding a combined

---

[97] Scarlet Decl. Ex. G at 17.

[98] Scarlett Decl. ¶ 52.

[99] *Id.*

[100] 2022 Fee Order 8, Dkt. No. 5855 (Oct. 7, 2022); *see also Broiler I*, 80 F.4th at 805.

[101] Scarlett Decl. ¶ 32.

[102] *See Williams*, 658 F.3d at 636 ("[C]onsideration of a lodestar check is not an issue of required methodology.").

multiplier of 1.0.[103] In other words, Class Counsel is recovering one dollar for every dollar of time they spent on this litigation. That figure is dramatically lower than the typical range in this district, where courts routinely approve lodestar multipliers between 2 and 5 in contingent-fee antitrust cases of similar size and complexity.[104]

The disparity is even more striking when the calculation is limited to work performed and settlements achieved since the first fee petition. The resulting multiplier for this period is just 0.20 – a fraction of Class Counsel's billed time. A fee that fails to even compensate Class Counsel for their full-time investment, let alone provide a premium for risk, is plainly reasonable.

This lodestar analysis strongly supports that the true e*x ante* market rate in this case would have likely exceeded 26.6%. The Seventh Circuit has recognized that it is legal error to award only counsel's "ordinary billing rates" where lawyers assumed substantial risk and lacked a guaranteed source of payment.[105] And yet here, that is exactly what the 26.6 rate awards: no more than Class Counsel's ordinary billing rates. The very purpose of a percentage-based fee in a contingency case is to reward counsel for taking on that risk and to ensure that skilled attorneys remain incentivized to pursue complex public-interest litigation like this. For that reason, the Seventh Circuit has expressly instructed that, if the lodestar method is used to determine contingency fees, courts must apply a risk multiplier; it is an error not to.[106] Yet here, rather than

---

[103] Scarlett Decl. ¶ 32.

[104] *Spano v. Boeing Co.*, No. 06-cv-743, 2016 WL 3791123, at *3 (S.D. Ill. Mar. 31, 2016).

[105] *Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 569 (7th Cir. 1992), as amended on denial of reh'g (May 22, 1992).

[106] *Id.*

receiving a premium for risk, Class Counsel's compensation has been effectively discounted to their standard hourly rates.

The lodestar cross-check therefore does more than confirm that the 26.6% request is reasonable – it shows that it is modest in light of the substantial time commitment, litigation risk, and exceptional results achieved. This case yielded one of the highest consumer antitrust settlements ever obtained in a case involving food products, with over $203 million recovered for end-user consumers of chicken. Such a result was far from guaranteed and required nearly a decade of sustained litigation against some of the country's largest and best-resourced corporations. And despite this success, Class Counsel will not receive any premium for the risk they undertook while working without compensation for nearly a decade. That is a bargain they were unlikely to have negotiated *ex ante*.

## E. Class Counsel should be reimbursed fully for litigation expenses and claims administration costs.

Class Counsel may recover litigation expenses and claims administration costs consistent with what the private market would permit.[107]

Class Counsel previously sought reimbursement for only part of the costs incurred at the time of the first fee motion briefing; specifically, for $8.75 million of the over $9 million litigation expenses incurred through October 21, 2021.[108] In this first fee motion, Class Counsel explained that they "will seek reimbursement for the remaining $257,062.95 if the class recovers additional funds, in addition to any additional expenses incurred during further litigation."[109]

---

[107] *See In re Synthroid Mktg. Litig.*, 264 F.3d at 722.

[108] Decl. of Shana Scarlett in Supp. of Mem. in Supp. of EUCP's Mot. for Att'y's Fees, Expenses, and Class Representative Awards ¶ 24, Dkt. No. 5161-1 (Oct. 27, 2021) (stating that $9,007,062.95 in litigation expenses were incurred by Oct. 27, 2021).

[109] *Id.*

Class Counsel move now to recover the remaining expenses identified in the first fee motion – $257,062.95 – plus the additional litigation expenses, and claims administration costs incurred after the time period covered by that first motion. The table below summarizes these expenses:[110]

| Expense | Amount |
|---|---|
| Prior Unreimbursed Expenses | $257,062.95 |
| Common Fund Expenses | $5,043,218.24 |
| Hagens Berman Expenses | $94,350.09 |
| Cohen Milstein Expenses | $18,012.81 |
| AB Data Notice & Claims Expenses | $2,651,448.77 |
| Future Expenses for Claims Admin | $1,850,000.00 |
| **Expense Subtotal** | **$9,914,092.86** |

The class notice and claims administration costs are not optional. Satisfying the notice standard set out by federal due process and the Federal Rule of Civil Procedure requires considerable resources. Because class members are bound by the results of a certified Rule 23(b)(3) class action unless they affirmatively opt out, this class notice is required by constitutional due process to protect absent class members' rights. The Federal Rules require members of a class certified under Rule 23(b)(3) receive the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[111] EUCP Class Counsel and the court-approved claims administrator, have worked diligently to ensure this standard is satisfied for a class with an estimated 30 million members. To protect the EUCPs' settlement fund, in January 2025, EUCP Class Counsel negotiated with A.B. Data a cap of $1,850,000 for all future notice and administrative costs.[112]

---

[110] *See* Scarlett Decl. ¶ 33.

[111] Fed. R. Civ. P. 23(c)(2)(B).

[112] Decl. of Eric Schachter in Supp. of Pls.' Mot. to Approve the Manner and Form of Class Notice 9, Dkt. No. 7495-2 (Jan. 29, 2025).

Another significant expense category is attributed to expert witnesses who directly benefited the EUCP class's case. Proving a theory of antitrust harm in a price fixing case as complex as this one, with multiple classes at different rungs in the commerce chain, requires significant support from expert economists. Cases of this size routinely require more than one expert witness to address all aspects of the case and to aid a jury in understanding the complex material.

The remaining expenses are common in complex antitrust matters of this scope. Travel,[113] filing fees, legal research database fees, photocopying, and related office expenses are typical and represent a fraction of the overall requested expenses.

### F. Class Counsel should be reimbursed for all accrued interest on the portions of the fee award that remain in escrow.

With the Court's permission, Class Counsel has delayed disbursing the funds from all settlements until all appeals are final and resolved. As a result, the settlement funds have continued to accrue interest for the benefit of the class.[114] Class Counsel seek reimbursement only for the portion of that interest attributable to the fee award previously approved by this Court – specifically, the interest that accrued (and will continue to accrue) while those amounts remain in escrow.[115]

---

[113] None of the requested expenses include travel to or from the Seventh Circuit's oral argument over the fee motion appeal.

[114] Scarlett Decl. ¶ 39.

[115] *See, e.g.*, *Hale*, 2018 WL 6606079, at *16 ("Further, the Court also GRANTS Class Counsel's motion for attorneys' fees and costs. Class Counsel are awarded (1) $6,971,852.80 as reimbursement of reasonable litigation costs; and (2) attorneys' fees in the amount of one-third (33.33%) of the $250 million common fund, net of the $2.1 million estimated for settlement notice and administration, *but inclusive of interest accrued on the fund at the time of distribution*." (emphasis added)); *Standard Iron Works v. ArcelorMittal*, No. 08 C 5214, 2014 WL 7781572, at *3 (N.D. Ill. Oct. 22, 2014) (approving a 33.3% award of attorneys' fees where "Net Settlement Funds" were defined as "the monies deposited into escrow pursuant to the approved Settlement agreements, *plus all accrued interest on those accounts*" (emphasis added)).

Following the Court's approval of fees and expenses after the first round of settlements, Class Counsel did not immediately collect the full award. Instead, the awarded funds were placed in a segregated escrow account. Although a partial disbursement was made, the majority of the award remained in escrow. During this period, the award continued to generate interest as part of the fund.[116] Now that the Seventh Circuit has confirmed that Class Counsel is entitled to 26.6% of the net settlement, it is appropriate to reimburse the portion of interest earned on that award while it remained in escrow.[117]

Class Counsel makes the same request with respect to the second round of settlements. No fee award has been ordered or appeal has been filed, so no funds have been disbursed aside from quarterly estimated tax payments.[118] The request is limited to interest earned on the attorneys' fees and expenses portion of the settlement funds while they remain in escrow. Class Counsel will not seek interest for any period after disbursement.[119] At the Court's request, Class Counsel can provide detailed accounting statements showing the interest, once this matter is fully resolved.

As of July 31 2025, there is $1,653,200.86 in interest attributable to the first-round settlements and $134,477.22 from the second-round that should be awarded to Class Counsel. This request reflects only the portion of interest earned on the fee and expense awards, and does not include interest on amounts already paid to the firms. This request ensures that Class Counsel

---

[116] Scarlett Decl. ¶ 41.

[117] *Id.*

[118] *Id.* ¶ 43.

[119] *Id.*

are compensated for the full value of their efforts, including the time value of money when payment is delayed due to appellate litigation.[120]

### G. After nearly a decade of service, the class representatives request a $2,000 service award.

Each class representative served on this case until the eve of trial. They worked closely with counsel to prepare for trial until just before the parties settled. They took an active role in reviewing and approving the final, full-length settlements on the entire EUCPs' behalf. This case has been pending for almost a decade, and these class representatives have served admirably during this entire period. Each class representative has submitted a declaration attesting to their support for these settlements, and their work on the case.[121] A $2,000 incentive payment would compensate them for their time and service on the entire class's behalf. Counsel request this incentive award in addition to the $2,000 service award requested in the first fee motion, bringing each class representatives' total service awards to $4,000.[122] Courts in this jurisdiction consistently grant incentive payments at or above this amount.[123]

---

[120] It is common practice to apply the award equally to interest accrued on the settlement funds. *See, e.g.*, *Hale*, 2018 WL 6606079, at *16 ("Further, the Court also GRANTS Class Counsel's motion for attorneys' fees and costs. Class Counsel are awarded (1) $6,971,852.80 as reimbursement of reasonable litigation costs; and (2) attorneys' fees in the amount of one-third (33.33%) of the $250 million common fund, net of the $2.1 million estimated for settlement notice and administration, *but inclusive of interest accrued on the fund at the time of distribution*." (emphasis added)); *Standard Iron Works v. ArcelorMittal*, No. 08 C 5214, 2014 WL 7781572, at *3 (N.D. Ill. Oct. 22, 2014) (approving a 33.3% award of attorneys' fees where "Net Settlement Funds" were defined as "the monies deposited into escrow pursuant to the approved Settlement agreements, *plus all accrued interest on those accounts*" (emphasis added)).

[121] Scarlett Decl. Ex. F.

[122] There are twenty-six total class representatives, but Counsel request only twenty-five total awards; two class representatives are married to each other and will share a service award. Scarlett Decl. ¶ 45.

[123] *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 949 (N.D. Ill. 2022), *appeal dismissed sub nom. In re Tiktok Inc., Consumer Priv. Litig.*, No. 22-2682, 2022 WL 19079999 (7th Cir. Oct. 12, 2022) (finding persuasive an empirical study concluding the median incentive award across all case types in 2021 was $6,450 per plaintiff and the mean per plaintiff was $14,371); *see also* size of incentive awards, 5 Newberg and Rubenstein on Class Actions § 17:8 (6th ed.); *Matter of Cont'l Ill. Sec.*

## V.    CONCLUSION

For nearly a decade, EUCP Class Counsel have vigorously litigated this case on behalf of consumers, without the benefit of a prior government investigation or any assurance of recovery. Their efforts produced over $203 million in settlements, including $22.35 million secured after defeating summary judgment and preparing for trial.

Pursuant to the Seventh Circuit's mandate, Class Counsel respectfully request that the Court award:

1. $45,805,200.00 in attorneys' fees, representing 26.6% of the $181 million pre-certification settlements, net of expenses and service awards;

2. $3,294,651.30 in attorneys' fees, representing 26.6% of the $22.35 million in post-certification settlements, net of expenses and service awards;

3. All interest that has accrued (and that will accrue) on the portion of settlement funds that remain in interest and are attributable to class counsel's fees or expenses before they are disbursed to Class Counsel; (to date, $1,653,200.86 on the first round of settlements and $134,477.22 on the second round of settlements);

4. $9,914,092.86 in reimbursement of litigation expenses and claims administration costs; and

5. 25 service awards of $2,000 each for the class representatives, in recognition of their continued efforts on behalf of the class.

---

*Litig.*, 962 F.2d 566, 571 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992) ("Since without a named plaintiff there can be no class action, such compensation as may be necessary[...]").

DATED: August 1, 2025           HAGENS BERMAN SOBOL SHAPIRO LLP

*/s/ Shana E. Scarlett*
Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
shanas@hbsslaw.com

Steve W. Berman (IL Bar No. 3126833)
Breanna Van Engelen
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
breannav@hbsslaw.com

Elaine T. Byszewski
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
elaine@hbsslaw.com

DATED: August 1, 2025           COHEN MILSTEIN SELLERS & TOLL, PLLC

*/s/ Brent W. Johnson*
Brent W. Johnson
Benjamin D. Brown
Daniel H. Silverman
Alison Deich
1100 New York Ave. NW
Suite 800, West Tower
Washington, DC 20005
Telephone (202) 408-4600
bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com
dsilverman@cohenmilstein.com
adeich@cohenmilstein.com

*Co- Lead Counsel for End-User Consumer Plaintiff Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on August 1, 2025, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system, which caused notice and a copy of this filing to be sent to all counsel of record.

*/s/ Shana E. Scarlett*
Shana E. Scarlett
