**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN<br>ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Amory Investments LLC v. Agri Stats, Inc.*,<br>    Case No. 1:21-cv-06600;<br>*John Soules Foods, Inc., et al. v. Agri Stats, Inc.*,<br>    Case No. 21-cv-00054. | Case No. 1:16-cv-08637<br><br>Judge Thomas M. Durkin<br>Magistrate Judge Jeffrey T. Gilbert<br>Special Master Maura Grossman |

**PLAINTIFFS AMORY INVESTMENTS LLC, JOHN SOULES FOODS, INC.,
AND JOHN SOULES ACQUISITIONS LLC'S OBJECTIONS
TO SPECIAL MASTER'S OCTOBER 17, 2025 RULINGS**

Derek T. Ho (*pro hac vice*)
Alejandra Ávila (*pro hac vice*)
Travis G. Edwards (*pro hac vice*)
Mary Charlotte Y. Carroll (*pro hac vice*)
Jared M. Stehle (*pro hac vice*)
KELLOGG, HANSEN, TODD, FIGEL
    & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
Fax: (202) 326-7999
dho@kellogghansen.com
aavila@kellogghansen.com
tedwards@kellogghansen.com
mcarroll@kellogghansen.com
jstehle@kellogghansen.com

*Counsel for Plaintiffs Amory Investments LLC,
John Soules Foods, Inc., and John Soules
Acquisitions LLC*

John Soules, Inc., John Soules Acquisitions LLC (together, "JSF"), and Amory

Investments LLC ("Amory") respectfully file this objection to the Special Master's October 17,

2025 discovery rulings, memorialized in the minutes attached as Exhibit A,[1] and state as follows:

## INTRODUCTION

As this Court already recognized, Track 2 is not a "do-over with respect to Track One

discovery years down the road." Ex. B at 57:13-14. That is for good reason: Judge Durkin

made clear that Track 2 is focused only on "discovery into bid rigging." ECF No. 5128 at 5. Yet

the Special Master improperly granted Defendants' request to re-open Track 1 discovery with

respect to JSF and Amory—two Direct Action Plaintiffs ("DAPs") that fully participated in

Track 1 discovery and produced thousands of documents after negotiating search terms and

custodians with Defendants four years ago. Because the Special Master authorized discovery

that the Court already closed, the Court should reverse.

## BACKGROUND

DAPs JSF and Amory fully participated in Track 1 discovery. JSF filed its complaint on

January 5, 2021, ECF No. 4137-1, and Amory filed its complaint as assignee of Maines Paper &

Food Service, Inc. ("Maines") on April 12, 2021, ECF No. 4537-1.[2] Shortly thereafter, both JSF

and Amory made comprehensive Track 1 productions after agreeing with Defendants on the

---

[1] The Order Appointing Special Master provides that the Special Master "shall file any order, report, or recommendation to the Court and promptly serve a copy on each party. . . . A party may file objections to—or a motion to adopt or modify—the Special Master's order, report, or recommendation no later than 10 days from the date that order, report, or recommendation is served." ECF No. 491 at 2. Although it is not clear that the trigger to file an objection with the Court set in the Order has been met, in an abundance of caution, JSF and Amory construe the Special Master's oral rulings, memorialized by the minutes, as the "order, report, or recommendation" triggering the deadline for appeal.

[2] Amory is now the assignee of both JSF and Maines, because JSF assigned its claims to Amory in November 2022. Because of this timeline, both Amory and JSF appear as named DAPs on the docket. Maines has never been a named DAP in this litigation.

terms of those productions. Amory produced nearly 40,000 documents, and JSF produced around 190,000 documents. Defendants also took a Rule 30(b)(6) deposition of JSF. Defendants noticed the deposition of Amory, but after Amory agreed to proceed with the deposition, Defendants unilaterally cancelled it. JSF and Amory both completed Track 1 discovery by September 8, 2021.

In October 2021, Judge Durkin bifurcated the case into Track 1 and Track 2. Track 1 Plaintiffs would "proceed to trial on the supply reduction and Georgia Dock conspiracies without discovery into bid rigging," while Track 2 DAPs would take "bid rigging discovery before any trial." ECF No. 5128 at 5. In December 2021—several months after JSF and Amory completed their document productions and Defendants took a Rule 30(b)(6) deposition of JSF—Judge Durkin stayed "[b]id rigging discovery" and ordered Track 2 DAPs to file amended complaints. ECF No. 5305. On March 7, 2025, Judge Durkin lifted "[t]he stay of Track Two discovery." ECF No. 7527.

JSF and Amory's Track 1 productions were broad and comprehensive. As a result, since 2021, Defendants have had thousands of documents produced by JSF and Amory based on custodians and search terms agreed between the parties after extensive negotiations. JSF's custodians included high-level executives, managers, and directors, including JSF's CFO and COO. ███████████████████████████████████████████████████

███████████████████████████████████████. *See* Ex. C at 31:4-9, 32:3-12. Similarly, Maines produced documents from three custodians: Jeff Dietrick, Scott Leveille, and Patrick Doyle. All three were employed by Maines for a very long time and held roles relevant to both Track 1 and Track 2 throughout the various conspiracy periods. *See* Ex. D at 3 (noting ████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████ ).  JSF and Amory produced every non-privileged document available from

those custodians that hit on broad search terms, including every variation of the term "chicken"

and chicken parts, every Defendant's name, and terms such as "buy*," "sell*," "bid," and

"pric*."  These documents cover the period from 2007-2019.  They thus encompass the entire

temporal and topical scope of this case, including bid-rigging.  JSF and Amory also produced

non-custodial files, including structured data from 2008 through 2020.

Once Track 2 discovery opened, from April to June 2025, Defendants served dozens of

document requests on JSF and Amory, seeking information about broilers pricing, products, and

purchasing, as well as the broilers market generally—topics already covered by JSF and

Amory's substantial Track 1 productions.  *See* Exs. E & F.[3]  Amory met and conferred with

Defendants in good faith on several occasions and promptly responded to their numerous emails

and letters containing lengthy requests.  JSF and Amory explained that the breadth of their Track

1 productions already covers the scope of Defendants' Track 2 discovery requests.  Defendants

nevertheless demanded that JSF and Amory run broad search terms (including many with no

limitation to broilers, let alone bid rigging) across dozens of existing and new custodians' files,

including from "████████" individuals, as well as current and former employees that JSF and

Amory disclosed long ago in Track 1.  *See* Ex. I at 9, 27-29, 60-61.  Defendants refused to

---

[3] The few arguable exceptions are: ████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████  *See* Exs. E-H.  Defendants did not raise disputes as to these RFPs with respect to
JSF and Amory, and they are not the subject of the Special Master's rulings objected to here.
*See* Ex. I at 26-29.

explain how their "███████████████████████████████████████████████

████████████████████████████████████████████." Ex. J at 2.

Defendants have also never explained why the new custodians they requested are specifically

relevant to or necessary for Track 2.

In July 2025, Defendants asked the Special Master to compel Amory and JSF "█████

████████████████████████████████████████████████████████████████

████████████████████████████████" Ex. I at 27. Defendants' proposed search terms

included designated "███████████████████" (such as "████████████████████████

████████████████████████████████████████████") and "████████████" search

terms (such as broad terms like "████" with no chicken limiter) to be applied to new and previous

custodians from Track 1 discovery. *Id.* at 9, 60. JSF and Amory opposed. *See* Ex. K at 8-10.

On October 17, 2025, the Special Master scheduled a meeting with the parties via Zoom.

The meeting was not transcribed by a court reporter; the only memorialization of the meeting

exists in minutes drafted by the parties and the Special Master.[4] The Special Master agreed with

Defendants that JSF and Amory "███████████████████" purported Track 1 discovery

deficiencies. Ex. A at 2. Therefore, she instructed JSF and Amory to produce documents from

three new custodians for JSF and three new custodians for Maines. *Id.* at 4-6. The Special

Master also ordered the parties to meet and confer on appropriate search terms for these

custodians and the previously produced custodians, indicating that she favored running the

"████████████████" across custodians, "████████████████████████████████████

████████." *Id.* at 7. The Special Master's reasoning invoked (1) this Court's remarks at the

---

[4] The parties exchanged competing notes about the statements made at the conference and could not agree on several statements in the minutes. The parties submitted the matter to the Special Master, who then finalized the minutes.

September 30 status conference as to a different group of DAPs, (2) the supposedly low number of documents that JSF and Amory produced, and (3) her determination that, if the information Defendants seek is largely duplicative, then production imposes no real burden on Amory or JSF. *See id.* at 1-6.

**LEGAL STANDARDS**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "'[T]he party seeking to compel discovery has the burden of showing relevance.'" *In re Kraft Heinz Sec. Litig.*, 2022 WL 19830961, at *2 (N.D. Ill. Dec. 6, 2022) (quoting *Gruenstein v. Browning*, 2022 WL 3213261, at *7 (N.D. Ill. June 21, 2022)). "Discovery that is duplicative or cumulative [is] not proportional." *FTC v. Deere & Co.*, 2025 WL 1866817, at *2 (N.D. Ill. July 7, 2025).

This Court will decide de novo all objections to findings of fact and conclusions of law made or recommended by the Special Master. ECF No. 491 at 3; *see* Fed. R. Civ. P. 53(f)(3)-(4). It will set aside other rulings by the Special Master if they are an abuse of discretion. ECF No. 491 at 2-3; *see* Fed. R. Civ. P. 53(f)(5).

**ARGUMENT**

**I.      DEFENDANTS CANNOT SEEK TRACK 1 DISCOVERY AS TO JSF AND AMORY**

Judge Durkin's order opening Track 2 discovery makes clear that the only discovery the parties are authorized to take at this juncture is bid-rigging discovery. *See* ECF No. 7527. That is precisely why only certain Defendants—those that are the subject of DAPs' bid-rigging allegations—are participating in Track 2 discovery, even though DAPs have live claims against other Defendants as well. It is why Track 2 DAPs' requests for production target documents

5

relevant to their bid-rigging claim. And it is why Track 2 DAPs agreed that bid-rigging Defendants could begin their productions with documents they provided to the U.S. Department of Justice during its investigation of bid rigging in the broilers industry. That focus makes sense and is the core premise of Judge Durkin's bifurcation order: Track 2 DAPs accepted a delay in trying their claims to obtain discovery into bid rigging. ECF No. 5128 at 4-5.

At the September 30 status hearing, this Court made the unremarkable observation that



. Ex. B at 53:19-55:1; *see also id.* at 59:16-19 (defense counsel emphasizing that

"

" and others have only "                    "). But JSF and Amory do not fall under that category. As the Court made clear, Track 2 is not designed to "

." *Id.* at 57:21-24. That is, Track 2 is not "

" for DAPs that fully participated in Track 1 discovery—such as JSF and Amory. *Id.* at 57:13-14. As to those DAPs who were full Track 1 participants, Defendants cannot now—four years down the road—express dissatisfaction with Track 1 productions. "                    " long ago. *Id.* at 57:8.

In Track 1, Amory and JSF produced thousands of documents covering the period of 2007-2019 after heavily negotiating search terms and custodians with Defendants. They produced non-custodial sources and structured data for the period of 2007-2020. Defendants took a Rule 30(b)(6) deposition of JSF. Defendants chose not to take a deposition of Amory, unilaterally cancelling the deposition, even though Amory agreed to be deposed in Track 1. Amory and JSF both finished their Track 1 discovery work by September 8, 2021—months before Judge Durkin stayed "[b]id rigging discovery" in December 2021. ECF 5305. Indeed,

Defendants have never identified any request for production, interrogatory, request for admission, or other discovery request that Amory or JSF failed to answer in Track 1. Because Amory and JSF were full Track 1 discovery participants, the "████████" for Defendants to seek anything but "██████████████" in Track 2. Ex. B at 57:8.

The Special Master, however, erroneously concluded that Track 1 discovery remains open for JSF and Amory, and therefore, Defendants can "█████████████" as to them. Ex. A at 6. That legally and factually incorrect conclusion permits the wholesale re-litigation of Track 1 discovery that Judge Durkin did not authorize and that this Court discouraged. The Court should thus reverse and clarify that Defendants can only pursue bid-rigging discovery as to JSF and Amory and cannot belatedly point to supposed deficiencies that could have been raised in Track 1. Allowing the Special Master's sweeping view of Track 2 discovery to stand will open the floodgates to mass re-litigation of Track 1 issues for all parties that completed Track 1 discovery and, if countenanced, would need to run both ways.

The custodians and search terms the Special Master ordered reflect her erroneous decision to re-open Track 1 discovery. ████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████. *See* Exs. L & M. As JSF and Amory explained, ████████████████ ████████████████████████████████████████ ████████████████████████████████████. *See* Ex. A at 2. Mr. Ellis was a Track 1 custodian, and Defendants have his documents from the entire conspiracy period. He was also JSF's Rule 30(b)(6) designee. ████████████████████████████ ████████████████████████████████████████



*See* Ex. C at 31:4-9, 32:3-12.  Indeed, Defendants' own submission acknowledges that Mr. Bean was only "████████████████████," before the bid-rigging conspiracy, and that Mr. Self issued some RFPs "████" with Mr. Ellis.[5]

Similarly, ████████████████, their production would not be proportional (Defendants' protestations to the contrary) because ████████████████████.

*See* Exs. D & N. ████████████████████.  *See* Ex. A at 6.

Finally, for all the new JSF and Amory custodians the Special Master ordered, Defendants have in their possession, custody, and control all the communications that these custodians had with Defendants when purchasing chicken during the conspiracy period.  As this Court has already recognized in prior discovery disputes, Defendants' belated request for these

---

[5] In their attempt to justify the belated addition of these duplicative custodians, Defendants improperly raised new arguments and attached new exhibits for the first time in reply, depriving JSF and Amory of an opportunity to respond in writing to those untimely arguments.  Ex. O at 42-49.  The Special Master rejected JSF and Amory's waiver arguments without explanation.  Ex. A at 1-2.

custodians should be denied because they are not proportional to the needs of the case. *See In re Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637, 2022 WL 621807, at *2 (N.D. Ill. Mar. 3, 2022) (denying request to add custodian after discovery closed, where moving parties did not show that "their ability to prosecute the case will be materially prejudiced without the production of additional documents from [the non-moving party]," moving party did not show the new custodian "is likely to have non-duplicative documents that relate to the active claims," and the non-moving party had already produced relevant documents).

Defendants have sought to justify reopening Track 1 discovery by claiming JSF and Amory's document count is "▮▮▮," despite JSF and Amory producing thousands of documents in Track 1. *See* Ex. I at 26-27 (arguing JSF and Amory's productions are "▮▮▮▮▮▮▮▮▮▮▮" because of "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"). To bolster that argument, Defendants (repeatedly) misrepresented that JSF and Amory have "▮▮▮▮▮ ▮▮▮▮▮▮" for their document counts. *Id.* at 26. But Amory and JSF have openly and consistently explained to Defendants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See*

Exs. L at 4; N at 5-6; J at 4-5; P at 1.

Defendants have known ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. N at 5-6 (disclosing information as to Maines); Ex. L at 4

(disclosing information as to JSF); Ex. M at 5-6 (same).  JSF and Amory again reiterated this information during the meet and confer process.  Ex. J at 4-5 (explaining to Defendants ████

████████████████████████████ ); *see also* Ex. P (Defendants acknowledging

████████████████████████████████████████████████████

████████████████████████████████████ ").  Defendants

nevertheless moved to compel production of documents ████████████████████

████████████████████████████████████ .[6]

The Special Master's rulings rest heavily on her crediting of Defendants' "████████"

argument.  *See* Ex. A at 2, 3-4 (reasoning that Amory and JSF had "████████████" or

"████████," and adding new custodians "████████████████████████ ");

*id.* at 5 (pointing to "████████████████████," an existing JSF custodian, to

justify additional custodians); *id.* at 6 (compelling new Amory custodians because "████

████████████████ ").  Indeed, the Special Master ordered new custodial collections covering

different periods on a per-custodian basis, sometimes merely connecting those periods to a

supposedly "███" document-count period in JSF and Amory's productions and sometimes

vacillating on the period for the new custodian.  *See, e.g., id.* at 3-5 (first ordering "████████

████████████████████," then asking "████████████████ "

_____

[6] In their written submission to the Special Master, Defendants "████████████████

" ████████████████████████ . Ex. I at 30.

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

*See also* Ex. K  at 12-13 (████████████

████████████████████████████████████

████ ).  Briefing on that issue is ongoing and pending before the Special Master, so the matter is not ripe for this Court's consideration.

████████████," then "████████████████████████████████████ ████" because "████████████████████████████████████████" and it would not be very burdensome to produce more documents).  The Special Master's reasoning requires reversal, as it contravenes the rule that "the number of documents produced in response to a discovery request does not, by itself, establish that a response is deficient." *Crabbs v. Scott*, 2013 WL 12498337, at *3 (S.D. Ohio Dec. 11, 2013); *see also Yu v. Bytedance Inc.*, 2024 WL 3823793, at *1 (N.D. Cal. Aug. 13, 2024) (similar).

The search terms the Special Master ordered similarly reflect her decision to reopen Track 1 discovery.  The terms closely mirror those JSF and Amory already applied in Track 1— those same broad terms sweeping in every document discussing "chicken," Defendants' names, and similarly all-encompassing terms.  The Special Master reasoned that Defendants' proposed new terms "████████████████████████████████████." Ex. A at 7.  But that reasoning ignores that JSF and Amory already fully participated in Track 1 discovery, Track 2 discovery must be tailored to bid-rigging, and JSF and Amory already ran bid-rigging search terms—including, for example, terms like "bid."  Indeed, Defendants have never raised *any* deficiency with respect to Amory and JSF's Track 1 search terms.  Nor can they.  As explained *supra* p. 2-3, those terms were exceedingly broad, already covering the full scope of Defendants' requests for production.

\* \* \*

In sum, the Special Master improperly authorized Defendants to re-open Track 1 discovery.  The information Defendants seek is cumulative of the Track 1 discovery Defendants received four years ago, and Defendants have not made any showing that the custodians or

11

search terms they seek are tailored to bid rigging. Therefore, Defendants' requests should be denied because they are irrelevant and disproportionate to the needs of the case.

If the Court sanctions the Special Master's sweeping conclusion, JSF and Amory respectfully request that they be authorized to pursue similar Track 1 discovery from all Defendants with live claims in the litigation—whether they be bid-rigging Defendants or not. That conclusion fairly follows from the core premise underlying the Special Master's findings: that JSF and Amory joined the case too late to participate in Track 1 discovery. If that were true (which it is not), JSF and Amory should not be forced to provide one-sided Track 1 discovery while being cabined to taking only bid-rigging discovery. The reopened Track 1 discovery must run in both directions or not at all.

## CONCLUSION

The Court should reverse the Special Master's October 17 rulings as to search terms and custodians. In the alternative, the Court should authorize JSF and Amory to raise deficiencies in Defendants' Track 1 productions.

Dated: October 27, 2025

Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho (*pro hac vice*)
Alejandra Ávila (*pro hac vice*)
Travis G. Edwards (*pro hac vice*)
Mary Charlotte Y. Carroll (*pro hac vice*)
Jared M. Stehle (*pro hac vice*)
KELLOGG, HANSEN, TODD, FIGEL
   & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
Fax: (202) 326-7999
dho@kellogghansen.com
aavila@kellogghansen.com
tedwards@kellogghansen.com
mcarroll@kellogghansen.com
jstehle@kellogghansen.com

*Counsel for Plaintiffs Amory Investments LLC, John Soules Foods, Inc., and John Soules Acquisitions LLC*

13