# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION* | No. 1:16-cv-08637 |
| THIS DOCUMENT RELATES TO: | |
| *Amory Investments LLC v. Agri Stats, Inc., Case No. 1:21-cv-06600;* | District Judge Thomas M. Durkin |
| *John Soules Foods, Inc., et al. v. Agri Stats, Inc., Case No. 21-cv-00054.* | Magistrate Judge Jeffrey T. Gilbert |
|  | Special Master Maura R. Grossman |

# DEFENDANTS' OPPOSITION TO AMORY'S AND JSF'S OBJECTIONS TO THE SPECIAL MASTER'S OCTOBER 17, 2025 RULINGS ON CUSTODIANS AND SEARCH TERMS

## PRELIMINARY STATEMENT

Amory Investments LLC ("Amory") and John Soules, Inc. and John Soules Acquisitions LLC (together, "JSF") have objected to the Special Master's Orders compelling them to participate in Track 2 discovery, including that they each collect and produce documents from additional custodians. The sole basis for their Objections is that the Orders "reopened" *Track 1* discovery. But the Special Master merely ordered Amory and JSF to participate in *Track 2* discovery because they have refused to produce any custodial documents in Track 2 or even collect materials from relevant Track 2 custodians for discovery. The Court should affirm the Special Master's Orders.

This case is a lottery ticket for Amory, which has never purchased a single piece of chicken from anyone. Amory is not a restaurant, retailer, or distributor—it is a special-purpose vehicle created by Burford Capital LLC ("Burford"), a litigation financier, to pursue antitrust claims related to various proteins that Burford acquired. Specifically, in March 2021, for a mere $█████, Burford (via Amory) purchased claims in this case ██████████████ ██████████████ from Maines Paper & Food Service, Inc. ("Maines"), a company that purchased more than ████████ of chicken between 2011 and 2019. Then in November 2022, for just $████████, Burford (via Amory) acquired claims already asserted in this case, as well as the *Beef* antitrust case, from JSF, which purchased ██████████████ of chicken between 2011 and 2019.[1] Burford used Amory to make the purchases, which now is pursuing what will likely be tens of millions of dollars in claimed damages based on purchases made by Maines and JSF.

---

[1] JSF sold its claims within two months of hiring former Pilgrim's CEO, Jayson Penn, as its President. Seven months earlier, JSF filed its operative complaint, in which it mentioned Mr. Penn by name **60 times** and accused him, during the time he worked at Pilgrim's, of being "extensively involved in the bid-rigging … aspects of the [alleged] conspiracy" that purportedly harmed JSF. Dkt. 5455 ¶ 1327. In hiring Mr. Penn, JSF presumably determined that he did not rig bids and did not harm JSF. It is surely no coincidence that it decided to exit this litigation by selling its claims to Burford for a paltry sum within a few months after hiring Mr. Penn.

1

As Amory's discovery conduct has shown, however, it apparently believes that it can pursue these significant claims without having to meaningfully participate in discovery like any other DAP.

Amory and JSF have not produced a single custodial document in Track 2 discovery. Amory claims its Track 1 productions satisfy its discovery obligations for Track 2, but that is clearly not the case. There are massive gaps in Amory and JSF's Track 1 productions, and those documents clearly do not provide sufficient discovery relating to Track 2 bid-rigging claims. Setting aside documents produced from the files of a single Maines' custodian for a single year (2019), Amory produced just *319* custodial documents from Maines for the time period between 2007 and 2021. The productions from JSF's files are no better. None of JSF's custodians held a "purchasing" role during the alleged bid-rigging period (between 2011 and 2019). And for seven of JSF's ten custodians, JSF produced only a handful of documents for that same timeframe.

Making matters worse, it appears that the real reason Amory has steadfastly refused to respond to Track 2 discovery has nothing to do with the merits of the discovery Defendants have requested or its associated burdens. On October 17, 2025, the Special Master held a hearing on Defendants' Motion to Compel. The parties discussed each requested custodian in detail, and for each one, Amory and JSF argued that adding the custodian would be burdensome, duplicative, and disproportionate to the needs of the case. At the end of the one-and-a-half hour hearing, after the Special Master ordered Amory/Maines and JSF to add custodians and negotiate search terms, Amory revealed for the first time that Amory/Maines possess *zero* additional documents for Maines. Amory conceded—shockingly—that Maines destroyed in summer of 2020 the documents for the custodians that the Special Master had ordered to be added. That destruction was *after* Maines had already assigned claims in this case to another party (confirming that it was aware of the litigation and clearly had an obligation to preserve those documents).

2

Amory's gamesmanship should not be tolerated. There is no exception to the Rules of Civil Procedure for special-purpose litigation vehicles. If Amory is going to pursue claims in this litigation, it needs to participate in the case like any other DAP, including by providing the discovery Defendants are entitled to receive to rebut its claims. This Court should overrule Amory and JSF's objections and affirm the Special Master's Orders that Amory/Maines and JSF add custodians and negotiate search terms.[2]

## BACKGROUND

### A. The Special Master Ordered Amory And JSF To Participate In Track 2 Discovery By Adding Custodians And Negotiating Search Terms

On April 17, 2025, the undersigned Defendants ("Defendants") served Requests for Production on Amory and on JSF. Amory and JSF responded to that discovery stating "████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████." Ex. 1 at 13.[3] After many fruitless meet and confers, Defendants moved to compel on July 18, 2025. On October 17, 2025, Special Master Grossman held a hearing and ordered Amory and JSF to provide documents for six additional custodians (three from Amory for Maines and three from JSF) and negotiate search terms. Ex. A at 3–4, 6–7.

The Special Master's October 17, 2025 Orders—to which Amory and JSF object—are based on Amory and JSF's failure to engage in Track 2 discovery. The Special Master opened the hearing by stating that if Amory and JSF "██████████████████████████████████████

---

[2]  Amory and JSF notably are refusing to comply with the Special Master's Orders pending a ruling on their objections despite having not moved for, nor being granted, a stay of the Orders.

[3]  Citations to numbered exhibits are to Defendants' exhibits to their opposition to the Objections filed with the Swindall declaration, and citations to lettered exhibits are to Amory and JSF's exhibits to their Objections.

████████████████████████████████████████████████.” *Id*. at 1.  She continued

that "████████████████████████████████████████████████████

████████████████████████████████████████████" *Id*.  She concluded that

████████████████████████████████████████ *Id*.

After the Special Master made clear that the issue was "████████████

█████████████████[,]" *id*., the parties addressed whether the Special Master should order JSF

to add custodians.  Defendants presented arguments for each of the three custodians and why their

documents were necessary.  *Id*. at 2–5.  Counsel for Amory/JSF argued that adding additional

custodians would be unduly burdensome, duplicative, and disproportional to the needs of the case.

*Id*.  The Special Master agreed with Defendants that three custodians from JSF, Michael Bean,

Scott Self, and Clay Harrel, were warranted and granted the motion to add those three custodians.

*Id*.  During this exchange, the Special Master did not mention Track 1.

The parties then addressed whether Amory should be compelled to add custodians for

Maines.  Amory's counsel argued that, just as it had argued for JSF, adding Maines custodians

"████████████████████████████████████████████████████

████████████████████." *Id*. at 5.  Amory's counsel argued that adding Maines' "███████████

████████████████████," and that "████████████████████████████

████████████████[.]" *Id*. at 6.  The Special Master rejected these burden-based

arguments and ordered that Amory add three Maines custodians—Jack Loomis, Tom Brown, and

Bradley Wanda.  *Id*. at 5–7.[4]  She *never* mentioned Track 1 discovery as a basis for her Order.

---

[4]  In light of Amory's repeated arguments about the burden associated with collecting and
reviewing documents for these three custodians, the Special Master told counsel for Amory that
████████████████████████████████████████████████████████████
████████████████████████████████████████ Ex. A at 7.

After ordering the addition of three custodians each for JSF and Amory/Maines, the Special Master "████████████████████████" search terms. *Id*. at 8. The Special Master made clear that as to search terms, "████████████████████████████████████████." *Id*. (emphases added). The Special Master has made no other rulings as to search terms.

### B. Amory's Counsel Belatedly Reveals The Spoliation Of Maines' Documents

At the October 17, 2025 hearing, counsel for Amory/Maines specifically argued no less than four times that it would be burdensome to produce materials from the three requested Maines custodians, and counsel argued that Defendants' request to add more Maines custodians is unduly burdensome, duplicative, unlikely to produce relevant evidence, and not proportionate to the needs of the case, Ex. A at 5–6, and that Amory should not have "████████████████████ ██████████." *Id*. at 6. The Special Master rejected the duplication argument noting that Amory can de-dupe across custodians. *Id*. at 7.

At the very end of the hearing, Amory's counsel revealed, for the first time, that Amory/Maines had destroyed all the documents for the three Maines custodians that were the subject of the Special Master's Order. *Id*. at 11. Amory's counsel has never explained how adding these Maines custodians could be duplicative or burdensome when they have produced only 319 documents (save for one custodian in 2019), and there are ***no documents*** at all for the court-ordered custodians. Incredibly, Amory still makes those arguments here. *See* Objs. 8 n.5 (arguing that the new Maines' custodians are "duplicative," but failing to explain how adding zero documents could be duplicative of a wholly deficient production).

### C. Amory And JSF Have Massive Custodial Production Gaps That Must Be Filled

***Maines.*** Amory has produced for its Maines' claims—based on over $████████ in purchases—a paltry 15,808 custodial documents from three custodians for the years 2007 to 2021.

*See* Swindall Decl. ¶¶ 2–3. *All* these documents were produced *in Track 1*. *Id*. ¶ 2. Further, 15,489 of the 15,808 custodial documents were produced for *one* custodian for a *single year*, 2019. *Id*. ¶ 3. Removing this 2019 anomaly, Amory has produced just **_319_** custodial documents total, for all years and all custodians. *Id*. Defendants, accordingly, sought to add documents from three additional custodians, Jack Loomis, Tom Brown, and Bradley Wanda, and they made a robust showing as to why these custodians are appropriate here in Track 2. *See* Ex. A at 5–7. The Special Master agreed. *See id.* at 6–7.

- **Jack Loomis** was responsible for Maines' protein purchasing as ███████████ ████████████████████████████. *See* Ex. D at 3. He served as Pilgrim's primary point of contact. In that role, he negotiated prices with suppliers directly, shared competitor information, and declined offers from producers. *See* Ex. 2 (Nov. 3, 2011 emails between Loomis and Pilgrim's negotiating wing prices); Ex. 3 (Mar. 27, 2013 email from Loomis sharing competitor information); Ex. 4 (Oct. 28, 2011 emails between Maines and Pilgrim's regarding fresh chicken offer).

- **Tom Brown** served as ███████████████████ and thus held management responsibility for broiler purchases. Ex. D at 3. Brown negotiated chicken prices directly with Pilgrim's, telling it at one point to "███████████ ████████████████████████████." *See* Ex. 5 (Mar. 27, 2013 email).

- **Bradley Wanda** served as ████████████████████████████ ████. Ex. D at 3. He worked alongside Track 1 custodian Scott Leveille but covered "███████████." Ex. 6 (Sept. 13, 2019 email from Wanda to Leveille indicating Wanda "███████████████" various poultry products). Wanda was also responsible for setting prices of Maines chicken products and reviewing pricing and sharing information with internal sales and program accounts. *See* Ex. 7 (Oct. 11, 2019 email from Wanda sharing "███████████████████████ ████████").

*JSF.* JSF has produced documents for 10 custodians. *See* Swindall Decl. ¶¶ 5–6. None of those custodians, however, had day-to-day responsibilities for purchasing chicken during the alleged bid-rigging conspiracy. JSF's initial disclosures identify five individuals who had a "Purchasing" role. *See* Ex. M at 5. This is despite over ████████████ of chicken purchases from 2011 to 2019. Swindall Decl. ¶ 7. But only one of those individuals was a custodian (Greg

6

Broomley), and no documents have been produced from his files during the years of the alleged bid-rigging conspiracy (2011-2019).[5]  *Id.* ¶¶ 5–6.  Moreover, in total across its 10 custodians, JSF had very low custodial document counts for key years of the alleged bid-rigging conspiracy:

| | | |
|---|---|---|
| 2011 – 294 documents | 2012 – 162 documents | 2013 – 515 documents |
| 2014 – 889 documents | 2015 – 8,725 documents | 2016 – 1,450 documents |
| 2017 – 2,858 documents | 2018 – 64,384 documents | 2019 – 58,146 documents |

*Id.* ¶ 5.  And while JSF and Amory have argued that Tom Ellis is *the* key custodian for chicken purchasing, Objs. 7-8, they produced only 1,080 total documents from his files for the years 2011 to 2014.  Swindall Decl. ¶ 6.

Defendants accordingly moved to compel from three JSF custodians—Michael Bean, Scott Self, and Clay Harrell—who had "Purchasing" roles at JSF.

- **Michael Bean** was ███████████████████████, Ex. M at 5, and headed the RFP process from 2008 to late 2011.  *See* Ex. 8 at 33:7-17.  JSF acknowledged that Bean was an individual with a ██████████ or ████████████ ███████████ Ex. M at 5.  Ellis even noted that Bean " ████████."  Ex. 9 (Oct. 22, 2008 email); *see also* Ex. 10 (Sep. 9, 2009 email regarding "████████████████").  This included contracts and pricing terms with Pilgrim's.  *See* Ex. 11 (July 14, 2008 email regarding Pilgrim's).

- **Scott Self** was ████████████████████.  Ex. M at 5.  He was directly involved with RFP solicitations and selections.  *See* Ex. 8 at 112:2-7 (Mr. Self████ issued RFPs with Ellis); Ex. 12 (compilation of Self's RFP communications with suppliers from 2014 to 2015).  And he communicated with suppliers, including Pilgrim's, regarding poultry purchases.  *See* Ex. 12; Ex. 13 (Jan. 4, 2016 email from Pilgrim's describing POs for nuggets and describing previous phone call with Self); Ex. 14 (July 29, 2016 email regarding ███████████████████).

- **Clay Harrel** was with JSF from ██████████, and was a key employee with responsibilities relevant to the purchase of Broiler chickens.  *See* Ex. M at 5.  According

---

[5]  For Broomley, JSF produced just ___**665**___ documents total and only for the years 2007 and 2008—before the alleged bid-rigging conspiracy.  Swindall Decl. ¶ 6.

to his LinkedIn, Harrel held escalating roles, including Purchasing Manager, Senior Purchasing Manager, and then Sr. Director of Purchasing. Ex. 15 at 1.

## ARGUMENT

## I.    TRACK 1 DISCOVERY IS NOT AT ISSUE

The sole basis of Amory and JSF's objections is that "the Special Master improperly authorized Defendants to re-open Track 1 discovery." Objs. 11. But the Hearing Minutes are clear that the Special Master based her Orders on the "███████" of "███████████████████ ███████████████." Ex. A at 1 (emphasis added). The Special Master did not even mention Track 1 for her Orders on the JSF or Maines custodians. *See id.* at 2–7.

To circumvent this fatal flaw, Amory and JSF mischaracterize the record. Amory and JSF's objections—all 12 pages—contain exactly two cites to support their invalid argument that the Special Master's Order reopened Track 1 discovery. Both of those quotes, however, are ***argument*** by ***defense counsel***. In the Background section of their Objections, Amory and JSF stated that "[t]he Special Master agreed with Defendants that JSF and Amory '█████████████ █████' purported Track 1 discovery deficiencies." Objs. 4 (quoting Ex. A at 2). However, that quote is from defense counsel, not the Special Master. Then, in the Argument section, Amory and JSF represent that "[t]he Special Master, however, erroneously concluded that Track 1 discovery remains open for JSF and Amory, and therefore, Defendants can '█████████████' as to them." Objs. 7 (quoting Ex. A at 6). Again, the quote is from defense counsel, not the Special Master.

Rather, the only time the Special Master mentioned Track 1 in her Orders was in response to *Amory's counsel's* argument. Specifically, Amory's counsel argued that "███████████████ ███████████████████████" and in response the Special Master stated that, per Judge Gilbert, "█████████████████████████████████████████████████." *Id.* at 5. Thus, the Special Master was merely repeating her understanding of this Court's position.

8

Amory and JSF's entire motion is based on the invalid representation that the Special Master ordered Track 1 discovery to be reopened. But she did no such thing. And Amory and JSF have not—and cannot—show otherwise. The Court should reject the Objections out of hand.

## II.      THE OBJECTIONS REGARDING SEARCH TERMS ARE NOT RIPE

Amory and JSF object to what they contend is an order from the Special Master regarding search terms, but the Special Master merely "████████████████████" search terms. Ex. A at 8. She made clear that as to specific search terms, "█████████████████ ████████████." *Id*. The Special Master's ruling made good sense: over 40 DAPs have agreed—without intervention by the Special Master—on search terms for Track 2. Swindall Decl. ¶ 8. Amory and JSF, however, have refused to engage in any good faith discussions as to search terms, claiming that they are immune from Track 2 discovery and that the Special Master's Order to negotiate search terms has been stayed by their objections. In any event, the Special Master rejected Amory and JSF's position that they could unilaterally impose a stay of the Special Master's Order requiring them to negotiate search terms. Ex. 16 at 1, 4–6.

## III.      AMORY AND JSF MUST PARTICIPATE IN TRACK 2 DISCOVERY

### A.  The Court Should Affirm The Special Master's Orders

If the Court does not reject Amory and JSF's objections because they are premised on the invalid notion that the Special Master "re-opened" Track 1 discovery, *see* Objs. 11, the Court should reject their objections under basic discovery principles. Amory and JSF cannot have it both ways: they cannot say they believe "████████████████████ ████████████████[,]" Ex. 1 at 12–13, but then argue that the six custodians the Special Master ordered to be added are from their "████████████[,]" Objs. 7, while refusing to identify any custodians for Track 2 or otherwise participate in Track 2

document discovery.

Indeed, what matters is whether the discovery at issue is reasonable and proportional to the needs of the case here in Track 2—the exact inquiry that the Special Master undertook. *See* Ex. A at 1 (asking the "███████" of "███████████████████████████.").  This inquiry, of course, takes into account productions made during Track 1—which Amory is attempting to stand on for Track 2—and it likewise takes into account productions *not* made (whether in Track 1 or Track 2).  Under this inquiry, which Amory and JSF have not challenged, the Court should uphold the Special Master's Orders.

*Amory and JSF's* ipse dixit *burden and proportionality objections fail*.  "Federal Rule of Civil Procedure 26(b)(1) allows parties to obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party."  *Kroll v. O'Connor*, 2021 WL 4516738, at *7 (N.D. Ill. Jan. 12, 2021).  "When a party objects to discovery, the burden rests on the objecting party to show why a particular discovery request is improper."  *Kleen Prods. LLC v. Packaging Corp. of Am.*, 2013 WL 120240, at *8 (N.D. Ill. Jan. 9, 2013) (cleaned up); *Am. Needle, Inc. v. New Orleans*, 2012 WL 4327395, at *6 (N.D. Ill. Aug. 17, 2012) ("[T]he party resisting discovery has the burden of establishing facts justifying its objection.") (quoting *Davis v. Precoat Metals*, 2002 WL 1759828, at *3 (N.D. Ill. July 29, 2002)).  If the Court ventures beyond Amory and JSF's futile "Track 1" argument, it should find that Amory and JSF have not met their burden on their objections to adding custodians and running search terms.

Other than admitting that Amory/Maines has spoliated all their custodial documents, *see* Objs. 9 (admitting there is "████████████████"), which is an issue addressed below, Amory and JSF's entire showing in their Objections, save for one deposition excerpt, is *ipse dixit*.  *Ipse dixit*, however, is not evidence.  *See, e.g.*, *SEC v. Benger*, 2014 WL 2198325, at *7 (N.D. Ill.

May 27, 2014) ("Unfortunately for Mr. von Hase, '[a] lawyer's unsupported statements are not evidence.'") (quoting *United States v. Adriatico–Fernandez*, 498 Fed. Appx. 596, 599 (7th Cir. 2012)); *Esperanza Aviation 2007-Sky King, LLC v. City Skies, Inc.*, 2009 WL 2947228, at *5 (N.D. Ill. Sept. 14, 2009) ("But *ipse dixits* in briefs are not evidence and do not count.") (collecting cases). They therefore have made no material evidentiary or factual showing in support of their objections, for which they have the burden. This ends the matter. *See, e.g.*, *Boyer v. Gildea*, 2008 WL 4911267, at *5 (N.D. Ind. Nov. 13, 2008) (granting motion to compel where resisting party did not establish "the amount of time" or "the cost of producing" the documents); *Baxter Int'l, Inc. v. AXA Versicherung*, 320 F.R.D. 158, 166 (N.D. Ill. 2017) (similar); *Schaap v. Exec. Indus., Inc.*, 130 F.R.D. 384, 386 (N.D. Ill. 1990) (requiring "affidavit or some other evidence" to support objection to motion to compel).

     ***Amory and JSF must add custodians***. Amory and JSF have massive gaps in their document productions, and the Court should order them to fill those gaps by adding custodians. As the Special Master found, Defendants have shown that the custodians at issue are relevant and proportional to the needs of the case.

     Defendants' robust evidentiary showing that Amory and JSF must add custodians is made *despite* Amory and JSF's failure to engage in good faith meet and confer discussions. Amory and JSF did not provide custodian or search term proposals as ordered by this Court.[6] ECF No. 7720; Swindall Decl. ¶ 9. Indeed, Amory and JSF refused to provide any information in response to Defendants' requests and took the position that they need not participate in Track 2 custodial

---

[6] Indeed, in square contravention of this Court's order, Amory and JSF contumaciously argue that it is too late for new custodians. Objs. 8–9 ("As this Court has already recognized in prior discovery disputes, Defendants' belated request for these custodians should be denied because they are not proportional to the needs of the case.") (citing *In re Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637, 2022 WL 621807, at *2 (N.D. Ill. Mar. 3, 2022)).

document discovery. Defendants' showing for additional custodians is thus particularly weighty given the lack of meaningful engagement by Amory and JSF.

The six Amory/Maines and JSF custodians Defendants seek are relevant and proportional to the needs of this case involving billions of dollars of broilers purchases.

*Amory/Maines*. Excluding one custodian for 2019, for 2007-2021, Amory has produced just ***319*** custodial documents for Maines across its three Maines custodians. Swindall Decl. ¶ 3. This stands in stark contrast to its claim for over $███████ in broiler purchases from 2011 to 2019. Swindall Decl. ¶ 4. The Special Master found, based on Defendants' robust showing, that Jack Loomis, Tom Brown, and Brad Wanda are necessary and relevant custodians. *See* Background, Part C. They were all involved in purchasing chicken for Maines, which is patently relevant to claims based on allegedly bid-rigging for chicken purchases, have all been identified in Amory's disclosures as possessing relevant information, and have all held different positions at Maines covering different time periods (albeit with some overlap). *See id*.

*JSF*. JSF has not produced any documents during the bid-rigging conspiracy period for any custodian who had primary responsibility for "Purchasing," *i.e.*, procuring chicken, for 2011 to 2019. JSF must fill this gap. JSF's total document count drops substantially for 2011 to 2017— with virtually no documents for seven out of its 10 custodians, three of which have zero documents for those years. Swindall Decl. ¶¶ 5-6. Defendants accordingly have sought to add custodians, Michael Bean, Scott Self, and Clay Harrel, who had a "Purchasing" role during that timeframe in particular. *See* Ex. M at 5 (identifying Bean, Self, and Harrell as Directors of Purchasing during the relevant timeframe of the alleged conspiracies).

JSF argues, with no evidentiary showing (other than 14 lines of a deposition transcript), that a single custodian, Tom Ellis, is all they need to produce. Objs. 7–8. This is clearly wrong.

12

Although Ellis may have played a role in chicken purchases made by JSF, so did Bean and Self. *See* Ex. 8 at 155:19-156:4 ("

.").  Ellis himself identified Bean as the person who "███████████████," Ex. 9, and testified that Bean issued requests for proposals for many years including in 2011, Ex. 8 at 33:7-17.[7]  Further, Self was the Director of Purchasing for Proview Foods from 2014 to 2016, a subsidiary of JSF that JSF acquired in 2014.  Ex. 8 at 110:22-111:11; Ex. M at 5.  JSF has never explained why Self's documents would overlap with Ellis even though Self headed up the Proview Foods division and communicated with suppliers independently. *See* Ex. 12 (compilation of Self's RFP communications with suppliers from 2014 to 2015).  And even JSF admits that Self "█████████████████████." Objs. 8; *see also* Ex. 8 at 112:2-7.

Harrel is also a key custodian who must be added.  He joined JSF in 2009 and remained until 2025. Ex. 15 at 1–2.  During his tenure, Harrel ascended from the Purchasing Manager (Feb. 2009 to April 2015), to Senior Purchasing Manager (April 2015 to Dec. 2016), to Senior Director of Purchasing (Jan. 2017 to Jan. 2025).  *Id*.  Harrel is needed to fill the gaps, *e.g.*, as to the utter lack of "Purchasing" custodians and as to Ellis' very low document count for the majority of his tenure, for the key "Purchasing" position in this case about alleged conspiracies for purchasing broilers.  Finally, if the new custodians' documents are duplicative of Ellis or the original JSF custodians, then the de-duping process will eliminate those documents from the review universe,

---

[7]  Ellis made clear his testimony was based on what he could recall at the time in 2021, ten years later.  Ex. 8 at 33:7-17.  Thus, it could be that Bean had responsibility for requests for proposals even later.  Defendants need Bean's documents to know for certain.

and there will be no added burden to JSF. Only unique documents will be at issue, and JSF has failed to show how many of those documents are even at issue.

*Amory/Maines and JSF possess unique and highly-relevant communications.* Amory and JSF make the conclusory argument that "█████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████." Objs. 8. But the Maines and JSF custodians' internal documents are crucial to defending against their claims. Those documents will reveal, *e.g.*, how they came to purchasing decisions, what were their internal deliberations, what communications they had with industry participants (such as the Independent Marketing Alliance) that influenced purchasing decisions, how they qualified suppliers, and which considerations (price, quality, service) drove their purchasing and supplier-qualification decisions. All these documents and communications are unique to Maines and JSF and cannot be found in Defendants' files.

*Amory and JSF must run search terms.* Again, the Special Master has not ordered Amory to run any specific search terms and clarified on November 3 that the parties "████████████████

████████████████████████████████████████████████████████." Ex. 16 at 4. Consistent with what 40-plus other DAPs have agreed to, Defendants have proposed Amory/JSF run "Track 2" search terms over all custodians (original and new) and a narrowed version of the original search terms for new custodians. Ex. 17 at 1.

Amory and JSF have provided no evidentiary showing for why running Track 2 search terms over all custodians or running a narrowed version of the original search terms over new custodians is unduly burdensome. Amory and JSF have not provided hit reports or any other evidence to substantiate their claims of burden. Their *ipse dixit* fails. *See, e.g.*, *Benger*, 2014 WL 2198325, at *7 (citation omitted); *Esperanza*, 2009 WL 2947228, at *5 (citations omitted).

14

***Amory and JSF's "floodgates" argument fails.*** Amory and JSF argue that, if the Court orders them to participate in Track 2 discovery, then they must have reciprocal discovery from Defendants which would open the "floodgates[.]" *See* Objs. 7 (arguing that the Special Master's order will open the "floodgates to mass re-litigation of Track 1 issues[.]"). This argument is a non-issue. The deadlines to serve written discovery and to raise new issues with the Special Master based on that discovery (save for issues that have arisen after that deadline, *e.g.*, Amory/Maines' spoliation of relevant documents) has long since passed.

### B. Amory/Maines' Spoliation Is Not A Reason To Overrule The Special Master

Amory suggests that this Court should grant their objections because they claim they have no documents for the three Maines custodians at issue. *See* Objs. 9. Amory provides no authority to support this position, which defies commonsense. If a litigant could avoid its obligations in discovery and adverse court orders by intentionally destroying documents, that would encourage spoliation. And such a rule would effectively repeal any sanctions available under Rule 37, which requires a court to find that a court order has been violated before ordering sanctions. *See, e.g.*, *Price v. Wrencher*, 2014 WL 4269079, at *2 (N.D. Ill. Aug. 27, 2014) ("Rule 37[b] requires a violation of a judicial order before sanctions may be imposed."). What Amory suggests is clearly not the law—in fact it is the opposite.

<u>CONCLUSION</u>

For the reasons provided, the Court should overrule Amory and JSF's Objections and uphold the Special Masters Orders requiring Amory and JSF to add custodians, *i.e.*, Jack Loomis, Tom Brown, Bradley Wanda, Michael Bean, Scott Self, and Clay Harrel, and negotiate search terms.

VENABLE LLP

By: /s/ *J. Douglas Baldridge*
J. Douglas Baldridge (437768)
Danielle Foley (admitted *pro hac vice*)
Lisa Jose Fales (admitted *pro hac vice*)
Andrew Hernacki (admitted *pro hac vice*)
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4000
Facsimile: (202) 344-8300
jdbaldridge@venable.com
drfoley@venable.com
ljfales@venable.com
athernacki@venable.com

FALKENBERG IVES LLP

Kirstin B. Ives
30 N. LaSalle St., Ste 4020
Chicago, IL 60602
Telephone: (312) 566-4803
Facsimile: (312) 566-4810
kbi@ffilaw.com

*Attorneys for Defendants Perdue Farms, Inc. and Perdue Foods LLC*

VEDDER PRICE P.C.

By: /s/ *Gregory G. Wrobel*
Gregory G. Wrobel (#03122900)
222 N. LaSalle Street
Chicago, IL 60601
Telephone: (312) 609-7722
Facsimile: (312) 609-5005
gwrobel@vedderprice.com

SHOOK HARDY & BACON LLP

By: /s/ *Lynn H. Murray*
Lynn H. Murray (#6191802)
111 S. Wacker Dr., Ste 4700
Chicago, IL 60606
Telephone: (312) 704-7700
Facsimile: (312) 558-1195
lhmurray@shb.com

Laurie A. Novion (admitted *pro hac vice*)
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
lnovion@shb.com

CONNER & WINTERS

John R. Elrod (admitted *pro hac vice*)
Vicki Bronson (admitted *pro hac vice*)
4375 N. Vantage Drive, Ste. 405
Fayetteville, AR 72703
Telephone: (479) 582-5711
jelrod@cwlaw.com
vbronson@cwlaw.com

*Attorneys for Defendants Simmons Foods, Inc. and Simmons Prepared Foods, Inc.*

ARMSTRONG TEASDALE LLP

By: /s/ *Stephen Novack*
Stephen Novack (#2067587)
Stephen J. Siegel (#6209054)
100 North Riverside Plaza
Chicago, IL 60606
Telephone: (312) 419-6900
Facsimile: (312) 419-6928
snovack@atllp.com
ssiegel@atllp.com

JORDAN PRICE WALL GRAY
JONES & CARLTON, PLLC

Henry W. Jones, Jr. (admitted *pro hac vice*)
2710 Wycliff Road, Suite 310
Raleigh, NC 27607
Telephone: (919) 828-2501
Facsimile: (919) 834-8447
hjones@jordanprice.com

*Attorneys for Defendant House of Raeford Farms, Inc.*

VAUGHAN & MURPHY

By: /s/ *Charles C. Murphy, Jr.*
Charles C. Murphy, Jr. (admitted *pro hac vice*)
690 S Ponce Court NE
Atlanta, GA 30307
Telephone: (404) 667-0714
Facsimile: (404) 529-4193
cmurphy@vaughanandmurphy.com

WINSTON & STRAWN LLP

James F. Herbison
Michael P. Mayer
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
jherbison@winston.com
mmayer@winston.com

*Attorneys for Defendant Norman W. Fries, Inc. d/b/a Claxton Poultry Farms*

PROSKAUER ROSE LLP

*Attorneys for Defendants Koch Foods Incorporated, JCG Foods of Alabama LLC, JCG Foods of Georgia LLC and Koch Meat Co., Inc. (all cases except DAP Case No. 21-cv-4354)*

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.

By: /s/ *Christopher E. Thorsen*
Christopher E. Thorsen (admitted *pro hac vice*)
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
Telephone: (615) 726-5586
Facsimile: (615) 726-0464
cthorsen@bakerdonelson.com

CHRIS MOORE LAW LLC

Christopher S. Moore
220 North Green Street, Suite 4027
Chicago, Illinois 60607
Telephone: (312) 704-4444
chris@chrismoorelaw.com

*Attorneys for Defendants Koch Foods Incorporated, JCG Foods of Alabama LLC, JCG Foods of Georgia LLC and Koch Meat Co., Inc. (with respect to DAP Case No. 21-CV-4354 only)*

PROSKAUER ROSE LLP

By: /s/ *Christopher E. Ondeck*
Christopher E. Ondeck (admitted *pro hac vice*)
Stephen R. Chuk (admitted *pro hac vice*)
1001 Pennsylvania Ave., NW, Ste 600
Washington, DC 20004

17

By: /s/ *Christopher E. Ondeck*
Todd J. Ohlms
70 W. Madison, Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3537
tohlms@proskauer.com

Christopher E. Ondeck (admitted *pro hac vice*)
Stephen R. Chuk (admitted *pro hac vice*)
Scott A. Eggers (admitted *pro hac vice*)
1001 Pennsylvania Ave., NW, Ste 600
Washington, DC 20004
Telephone: (202) 416-6800
condeck@proskauer.com
schuk@proskauer.com
seggers@proskauer.com

Kyle A. Casazza (admitted *pro hac vice*)
Colin G. Cabral (admitted *pro hac vice*)
Shawn S. Ledingham, Jr. (admitted *pro hac vice*)
Simona Weil (admitted *pro hac vice*)
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Telephone: (310) 284-5677
kcasazza@proskauer.com
ccabral@proskauer.com
sledingham@proskauer.com
sweil@proskauer.com

Jared M. DuBosar (admitted *pro hac vice*)
2255 Glades Road, Suite 421
Boca Raton, FL 33431-7360
Telephone: (561) 995-4702

Telephone: (202) 416-6800
condeck@proskauer.com
schuk@proskauer.com

Scott A. Eggers (admitted *pro hac vice*)
11 Times Square
New York, NY 10036
Telephone: (212) 969-3000
seggers@proskauer.com

Kyle A. Casazza (admitted *pro hac vice*)
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Telephone: (310) 284-5677
kcasazza@proskauer.com
*Attorneys for Defendant Wayne Farms LLC*

JOSEPH D. CARNEY & ASSOCIATES LLC

By: /s/ *Joseph D. Carney*
Joseph D. Carney
OFFICE ADDRESS:
139 Crocker Park Boulevard, Ste. 400
Westlake, OH 44145
MAILING ADDRESS:
1540 Peach Drive
Avon, OH 44011
Telephone: (440) 249-0860
Facsimile: (866) 270-1221
jdc@jdcarney.com
case@jdcarney.com

MILLER SHAKMAN LEVINE & FELDMAN LLP

Thomas M. Staunton
Daniel M. Feeney
30 West Monroe Street, Suite 1900
Chicago, IL 60603
Telephone: (312) 263-3700

jdubosar@proskauer.com

*Attorneys for Defendants Sanderson Farms, LLC (f/k/a Sanderson Farms, Inc.), Sanderson Farms Foods, LLC (f/k/a Sanderson Farms, Inc. (Foods Division)), Sanderson Farms Production, LLC (f/k/a Sanderson Farms, Inc. (Production Division)), and Sanderson Farms Processing, LLC (f/k/a Sanderson Farms, Inc. (Processing Division)*

STINSON LLP

By: */s/ William L. Greene*
William L. Greene (admitted *pro hac vice*)
Emily M. Asp (admitted *pro hac vice*)
50 South Sixth Street, Ste 2600
Minneapolis, MN 55402
Telephone: (612) 335-1500
william.greene@stinson.com
emily.asp@stinson.com

J. Nicci Warr (admitted *pro hac vice*)
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
Telephone: (314) 259-4570
nicci.warr@stinson.com

Victoria L. Smith (admitted *pro hac vice*)
1201 Walnut St., Suite 2900
Kansas City, MO 64105
Telephone: (816) 842-8600
vicki.smith@stinson.com

RAINES FELDMAN LLP

John C. Martin (#6225557)
30 N. LaSalle Street, Ste 3100

tstaunton@millershakman.com
dfeeney@millershakman.com

D. KLAR LAW

Deborah A. Klar (admitted *pro hac vice*)
2934 1/2 Beverly Glen Circle, Suite 761
Bel Air, CA 90077
Telephone: (310) 858-9500
dklar@dklarlaw.com

Paul L. Binder, Esq.
Attorney at Law
20780 Brandywine
Fairview Park, OH 44126-2805
Telephone: (440) 376-6850
binderpl@yahoo.com

*Attorneys for Defendants Case Foods, Inc., Case Farms, LLC, and Case Farms Processing, Inc.*

EDWARD C. KONIECZNY LLC

By: /s/ *Edward C. Konieczny*
Edward C. Konieczny (admitted *pro hac vice*)
1105 W. Peachtree St. NE, Suite 1000
Atlanta, GA 30309
Telephone: (404) 380-1430
Facsimile: (404) 382-6011
ed@koniecznylaw.com

SMITH, GAMBRELL & RUSSELL, LLP
David C. Newman (admitted *pro hac vice*)
Wm. Parker Sanders (admitted *pro hac vice*)
Stephen A. Youngblood (admitted *pro hac vice*)
Amy E. Buice (admitted *pro hac vice*)
1105 W. Peachtree St. NE
Suite 1000
Atlanta, GA 30309

Chicago, IL 60602
Telephone: (312) 704-2172
Facsimile: (312) 372-7951
jmartin@raineslaw.com

*Attorneys for Defendants George's
Inc. and George's Farms, Inc.*

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: */s/ Debra D. Bernstein*
Michael D. Bonanno
William A. Burck
Christopher G. Michel
Kathleen A. Lanigan
1300 I St. NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
mikebonanno@quinnemanuel.com
williamburck@quinnemanuel.com
christophermichel@quinnemanuel.com
katlanigan@quinnemanuel.com

Debra D. Bernstein
Ryan F. Swindall
1200 Abernathy Rd., Bldg. 600,
Suite 1500
Atlanta, GA 30328
Telephone: (404) 482-3502
debrabernstein@quinnemanuel.com

Michelle Schmit
191 N. Wacker Dr., Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
michelleschmit@quinnemanuel.com

*Attorneys for Defendant Pilgrim's
Pride Corporation*

Telephone: (404) 815-3500
Facsimile: (404) 815-3509
dnewman@sgrlaw.com
psanders@sgrlaw.com
syoungblood@sgrlaw.com
abuice@sgrlaw.com

*Attorneys for Defendants Mar-Jac Poultry,
Inc., Mar-Jac Poultry MS, LLC, Mar-Jac
Poultry AL, LLC, Mar-Jac AL/MS, Inc., Mar-
Jac Poultry, LLC, Mar-Jac Holdings, Inc.*

20

AXINN, VELTROP & HARKRIDER LLP

By: /s/ *Kail J. Jethmalani*
Kail J. Jethmalani (#5352307)
Denise L. Plunkett (*pro hac vice*)
Tomasz Mielniczuk (#5854484)
Victoria J. Lu (#5925797)
Blake E. Pescatore (#5985775)
630 Fifth Avenue, 33rd Floor
New York, NY 10111
Telephone: (212) 728-2200
kjethmalani@axinn.com
dplunkett@axinn.com
tmielniczuk@axinn.com
vlu@axinn.com
bpescatore@axinn.com

Daniel K. Oakes (#1009519)
Michael J. O'Mara (*pro hac vice*)
Kenina J. Lee (#1017499)
1901 L Street NW
Washington, DC 20036
Telephone: (202) 912-4700
doakes@axinn.com
momara@axinn.com
klee@axinn.com

LIPE LYONS MURPHY NAHRSTADT &
PONTIKIS, LTD.

Jordan M. Tank
230 West Monroe, Street, Ste 2260
Chicago, IL 60606
Telephone: (312) 702-0586
jmt@lipelyons.com

*Attorneys for Defendants Tyson Foods, Inc.,
Tyson Chicken, Inc., Tyson Breeders, Inc., and
Tyson Poultry, Inc.*

21