IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


IN RE BROILER CHICKEN          )   Case No. 16 C 8637
ANTITRUST LITIGATION           )
                               )
THIS DOCUMENT RELATES TO:      )
                               )   Chicago, Illinois
All Track 2 Direct Action      )   February 5, 2026
Plaintiff Actions              )   10:36 a.m.

TRANSCRIPT OF PROCEEDINGS - TELEPHONIC STATUS
BEFORE THE HONORABLE JEFFREY T. GILBERT, MAGISTRATE JUDGE


APPEARANCES:

For Track 2 Direct      KELLOGG, HANSEN, TODD, FIGEL
Action Plaintiffs:      & FREDERICK, P.L.L.C.
                        BY:  MS. ALEJANDRA AVILA
                             MS. MARY CHARLOTTE CARROLL
                        1615 M Street, N.W., Suite 400
                        Washington, D.C. 20036


For the Restaurant      BILZIN SUMBERG BAENA PRICE & AXELROD LLP
Direct Action           BY:  MS. LORI LUSTRIN
Plaintiffs:             1450 Brickell Avenue, 23rd Floor
                        Miami, Florida 33131


For the Simmons         SHOOK, HARDY & BACON LLP
Foods Defendants:       BY:  MS. LYNN H. MURRAY
                        111 S. Wacker Drive, Suite 4700
                        Chicago, Illinois 60606


For the Perdue Farms    VENABLE LLP
Defendants:             BY:  MS. DANIELLE R. FOLEY
                             MR. ANDREW T. HERNACKI
                        600 Massachusetts Avenue, NW
                        Washington, D.C. 20001

APPEARANCES (Cont'd):

For the Case Foods          MILLER SHAKMAN LEVINE & FELDMAN LLP
Defendants:                 BY:  MR. THOMAS M. STAUNTON
                                 MR. DANIEL M. FEENEY
                            30 W. Monroe Street, Suite 1900
                            Chicago, Illinois 60603


For the Koch Foods          ARMSTRONG TEASDALE LLP
Defendants:                 BY:  MS. JULIE JOHNSTON-AHLEN
(Except DAP Case No.             MS. ELIZABETH C. WOLICKI
21 C 4354)                  100 N. Riverside Plaza, Suite 1500
                            Chicago, Illinois 60606


For the Mar-Jac             SMITH, GAMBRELL & RUSSELL, LLP
Defendants:                 BY:  MR. JAMES J. BOLAND
                            155 N. Wacker Drive, Suite 3000
                            Chicago, Illinois 60606


For Defendant               WINSTON & STRAWN LLP
Norman W. Fries,            BY:  MR. JAMES F. HERBISON
Inc. d/b/a Claxton               MR. MICHAEL P. MAYER
Poultry Farms:              35 W. Wacker Drive
                            Chicago, Illinois 60601


For the Sanderson           PROSKAUER ROSE LLP
Farms Defendants:           BY:  MR. CHRISTOPHER E. ONDECK
                            1001 Pennsylvania Ave, N.W.
                            Suite 600 South
                            Washington, DC 20004


For the Tyson               AXINN, VELTROP & HARKRIDER LLP
Foods Defendants:           BY:  MR. KAIL J. JETHMALANI
                            45 Rockefeller Plaza (630 5th Avenue)
                            New York, New York 10111


Also present:               MS. MAURA R. GROSSMAN, Special Master

Court Reporter:          ELIA E. CARRIÓN, RPR, CRR, CRC
                         Official Court Reporter
                         United States District Court
                         219 S. Dearborn Street, Room 1432
                         Chicago, Illinois 60604
                         312.408.7782
                         Elia_Carrion@ilnd.uscourts.gov

                    *   *   *   *   *

             PROCEEDINGS REPORTED BY STENOTYPE
    TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard telephonically:)

THE CLERK: Good morning, everybody.

District Court is now in session. The Honorable Jeffrey Gilbert presiding.

Calling Case 16 C 8637, In re Broiler Chicken Antitrust.

THE COURT: Good morning, everybody.

We are doing this by telephone rather than in person per my order of the 29th. I wanted to save everybody the -- the trip to Chicago. At the time I entered the order I think our average temperature around that time was like below zero. I didn't know what it was going to be today. I think driving in it was like 24, so -- in Chicago, we call that spring. But I thought we could do this this way effectively.

So let's get -- same drill as before, the people who anticipate speaking should identify themselves for the record. Anybody else who wants to be reflected as being of record should send an email to their liaison counsel and then send it -- I think it gets sent to my courtroom deputy, which -- I -- I have a new courtroom deputy right now, Amanda Scherer, and we'll put her email in our order. Brenda is still with the court, but working now for Judge Tharp.

I -- I don't know if you have seen this, at least the Chicago people may have, but I have announced that I'm going to retire on May 6th of 2026, which used to be a long time away

and then it is coming a little bit faster, so Brenda ended up working for someone else.

I have been approved by the Seventh Circuit to come back and work part-time, but mostly I'll be doing settlement conferences and spot work on other cases. So my -- my replacement has been chosen and that person will inherit my caseload and --

(Pause.)

THE COURT: Most likely I think is -- I think what would happen. I don't know.

So anyway, that's the news on my front. I can give you Amanda's email. It's Amanda, A-M-A-N-D-A, underscore, Scherer, S-C-H-E-R-E-R, @ilnd.uscourts.gov.

And with that, let's pro- -- with that preamble, let's proceed.

For the plaintiffs.

MS. AVILA: Good morning, Your Honor. Alejandra Avila from Kellogg Hansen on behalf of the DAPs. And I have my colleague Mary Charlotte Carroll from Kellogg Hansen here as well.

THE COURT: Okay. Good morning.

Anybody else?

MS. LUSTRIN: Good morning, Your Honor.

THE COURT: Go ahead.

MS. LUSTRIN: Good morning, Your Honor. Lori Lustrin

from Bilzin Sumberg for the restaurant DAPs.

And congratulations on your upcoming retirement. And thank you very much for the in-person hearing from sunny Florida.

THE COURT: From sunny Florida. You just rub it in. Yeah, okay. Thanks very much.

Go ahead.

Anybody else on the plaintiffs' side?

Okay. Let's start with the defendants' side. I don't know if it's Ms. Murray or someone else.

MS. MURRAY: Your Honor, it is Lynn Murray. I anticipate doing much of the talking here, but there may be others who weigh in, for Shook Hardy, Simmons Foods, and speaking for the defendants on this issue.

I echo the congratulations and also say that we will miss you, but assume that you will have a nice part-time job after this.

THE COURT: Yeah, thanks. Okay. I appreciate that. Yeah. And I'm sure everybody wishes me well on my retirement. I'm -- I'm implicitly assuming that, so -- but thank you very much, Ms. Murray, speaking on behalf of the defense.

Anybody else want to state their appearance for the defense?

MS. FOLEY: Good morning, Your Honor. Danielle Foley from Venable on behalf of Perdue and as liaison counsel. I'm

here with my colleague Andrew Hernacki.

And we will explicitly wish well and thank you for all of your years with us on this case.

THE COURT: Thanks very much.

Okay. Anybody else on the defense side?

MR. ONDECK: Good morning, Your Honor. I may or may not speak, depending on the issues that are raised. So it's Chris Ondeck from the Proskauer law firm for Wayne and Sanderson.

THE COURT: Okay. Good morning to you.

Anybody else?

SPECIAL MASTER GROSSMAN: The Special Master is here.

THE COURT: Right. I was just going to acknowledge you. I figured you are. Special Master Grossman is on, so good morning to you.

Give me one second. It looks like I left one thing on my desk. Hold on.

(Pause.)

THE COURT: Okay. Well, let -- I'd like to first deal with the motion to enforce, which I set for hearing today. And then afterwards, I'd like to address the order I entered on the 29th and my reasoning in bringing to a halt the discussions aimed at trying to resolve things that had been pending in front of the Special Master for many, many months, and we're just -- we've just run out of time on that.

With respect to the motion to enforce, I wanted to ask Ms. Murray. I don't need extensive argument from either side. So -- I mean, the briefs were very good in letting me know where the parties are, what their positions are, and it's very, very clear to me. And, you know, these have been issues that have been percolating for a long, long time, so it's not -- it's not the first time I'm hearing about any of this. So I really don't want -- I -- want or need argument before I lay out with you kind of where I'm going with this.

But I did want to ask Ms. Murray why you didn't go back to the Special Master when you started getting the responses from the DAPs that you felt were not -- didn't really comply with what she had ordered, and then wait another two months to, you know, bring that to my attention?

I don't need you to address -- you did in your reply brief why you thought you had either met the meet-and-confer requirement under our local rule; or, you know, in my view, I'm not sure it would have helped at this point with this long-running dispute.

But I am curious as to why you didn't go back to the Special Master first and say, you ordered this, we don't think they're complying, we need you to, you know, talk to them.

MS. MURRAY: Sure, Your Honor. And I -- I will tell you that is the decision that we discussed, because as I'm sure you can tell from the briefing, Special Master Grossman has

been extremely helpful in working through these issues with us.

It -- to address the first part of your question, which is why you and not the Special Master, we just felt that the Special Master had really done her absolute best to broker a compromise and that what happened was in some senses disrespectful to that compromise and needed to be sort of enforced and needed to have a situation where, you know, her rulings in the future would also be enforced without having to -- to take her through another round of, you know, 29-page emails on -- on this issue.

So that's why we came to you. We obviously are happy to talk to the Special Master if this ends up being where it goes, but we think the -- the agreement was clear and the -- we should just enforce it at that point.

And on the timing, I will say that it -- it unrolled slowly to a certain extent. November 7th was the answer to Interrogatory No. 1; the answer to Interrogatory No. 2, which is still out there and in issue, was coming a couple of weeks later.

As you might recall, we were in the phase where we didn't have an extension. So we were having four -- you know, somewhere between one and four depositions a day. So we tend to sort of look back on that and say it would have been better to have raised this in December.

On the other hand, we're a big group and, you know,

we -- we did get together.  We also wanted to continue to take some depositions, see -- and see what they gave us.

For example, if you'd take a deposition of one of the DAPs and they tell you the information that was in -- that was requested in -- in Interrogatory No. 1, well, it becomes maybe a different issue.  But it hasn't turned out that way.  We have not been getting information in depositions that would be responsive.

So that's our explanation, I believe.

THE COURT:  Okay.  Thanks, Ms. Murray.  I appreciate that.

Okay.  Well, let me tell you where I come out on this. You could ask me questions about that, but I think this is pretty clear.

I -- I have a number of reasons why I'm going to deny the motion.  Procedurally -- I mean, as a threshold matter, procedurally, I don't think there's a motion to enforce the Special Master's order as a procedural mechanism in the case. I went back and I looked at the order that -- you know, of appointment where we specified appeals from the Special Master's rulings and what was going to happen, what wasn't going to happen, what the standard of review was.  And, you know, it doesn't provide for this procedural vehicle, you know, of a motion to enforce the Special Master's order.

And I saw in -- and I agree with plaintiffs' -- DAPs'

position that, you know, there are courts that have said that that's procedurally not the right way to go.

I'm not denying the motion on that basis as a procedural matter at all. I'm raising it as, you know, a -- a grounds for denial. But I -- I would -- I'm going to go to the merits of the motion as well, but I -- I -- I just -- I think it is the wrong procedural vehicle to do this.

The reason I asked the question of Ms. Murray -- and I -- I get that you were under a tight time frame at that point because you had not gotten yet the extension of the trial date which gave everybody a little bit of breathing room. But still, I -- you know, if you've -- if you felt that or you do feel that the DAPs are not responding the way the Special Master had ordered them to respond to the interrogatories, then the first step along that way would have been to the Special Master and then potentially an appeal to me from whatever decision that was.

This is -- this isn't really an appeal. It's -- the Special Master was right and now we want you to tell them to do what the Special Master told them to do. So -- and I -- I think procedurally, that's the wrong vehicle to get in front of me. But, again, I'm not basing my ruling on that simple point.

And I -- I always think it's a good idea to meet and confer, but, again, you were -- you had a gun to your head with a schedule there, and I believe from reading the minutes in

front of Special Master Grossman, as well as the briefs, that you had probably reached impasse on a meet-and-confer; that the DAPs are where they are in providing the information in response to the -- to the interrogatories, and the defendants are where they are in wanting different information. So I don't -- you could've met and conferred on this for a long time, but I don't think it would have resolved the issue to either be presented to me or Special Master Grossman.

On the merits, though, I differ with the defendants here. In my view, the DAPs, the direct action plaintiffs, have answered the discovery that was served on them, the interrogatories. They answered those questions based on current knowledge. If they don't have the information, they can't provide it.

I've read the minutes of the meeting with the Special Master where these issues were discussed, and I've read the briefs, and I -- I don't agree that the DAPs are in, you know, violation of what the Special Master in- -- intended or ordered them to do.

I can see how defendants take a different position on that, but, you know, before the Special Master, there was a lot of discussion and some negotiation about the -- what the interrogatory would look like. DAPs were very up front in terms of what information they could and couldn't provide.

At the end of the day, the defendants said -- and I

don't think you can walk this back -- that if the DAPs don't know the information that we're asking for in the interrogatory, then they could tell us we don't know, you know. And a lot of DAPs did that. And everybody did it in a -- in some way, shape, or form; either they told you directly we don't know and you've been hearing that in the depositions of the DAP representatives as well. I think the defendants' brief says you've deposed 39 representatives, and none of them have this information. So, you know, the interrogatory answers are not facetious or misleading because the people at the companies are also saying that they don't have that information.

The Special Master also suggested, look, if you don't know, you tell them you don't know. But if you do know -- and the gist of what she says, if you do know or you have any information along these lines, then you have to provide it in answer to the interrogatory. And I agree with that ruling or that guidance or that compromise that was reached. But then what the defendants said -- or what the plaintiffs said is we just don't have that information. Okay. And they explained why in various different ways, but they say we don't have it.

So really, to enforce, quote/unquote, the -- the order from Judge Grossman, I'd have to say, provide information to the defendants that you say you do not have. And I don't think that's right. I think enough is enough on this. This has gone on long enough. The -- the DAPs have provided you the

information, you know, current information based on their current knowledge that they have. They don't have this information and -- and, you know, I -- there's wordsmithing or -- or word splitting that goes on in the briefs a little bit. Well, they said, but they didn't tell us this or something like that with respect to certain DAPs' answers to the interrogatories. Again, that's -- I think that's wordplay.

I mean, what they're really telling -- what they're really telling you is we don't have this information, we're gathering the information, we're going to give it to our experts, the experts are going to provide reports, and that will provide us and you with information that we don't have right now, which is, you know, which transactions or what prices were fixed in any way, shape, or form, whether it's bid-rigging or some other type of price-fixing, and, you know, we don't have that information now.

Nobody disputes that the DAPs have an obligation to supplement their answers to interrogatories per the rules. I'm sure they will take that seriously under 26(e), Rule 26(e). But right now I'm convinced from reading what the -- the DAPs have told me that -- that you're not going to get any more information from them now than you already have.

The DAPs also say that they're still waiting for discovery responses from the defendants. I know that some defendants, and -- and maybe most defendants, have produced a

tremendous amount of documents. I think I saw, you know, something like 18 million or something as a figure in the defendants' brief. So I'm not faulting the defendants for not producing some discovery, but still discovery is being sought.

I mean, there are pending motions or issues in front of the Special Master for months and months and months that I addressed in my January 29th order, and we'll talk about here again, to get information. And plaintiffs say to me that some of that information we need in order to answer these interrogatories or provide information in some -- some way, shape, or form, whether expert reports or otherwise, to identify, you know, prices that were, you know, not market prices or transactions that were somehow rigged or something like that, and, you know, the defendants have the information.

Defendants say, well, we provided you a lot of information. But, you know, they're -- you are still disputing heavily providing other -- other information and, you know, it stands to reason as the plaintiffs that suing defendants on alleged, you know, secret price-fixing, if you will, that the information in the defendants' possession is going to be helpful.

Hold on for one second.

(Pause.)

THE COURT: And I -- you know, I -- I think it's -- it's, I don't know -- you know, defendants' implicit position

is, you know, the plaintiffs must respond to our -- to defendants' discovery, but defendants don't have to respond to discovery from the plaintiffs. And I know it's different issues and you've got different reasons for not producing certain things. But it's a little -- it's a -- it's a little off balance to pound the plaintiffs to provide information that they say they don't have at the same time that plaintiffs are still waiting from -- for information from the defendants that they say could help them put together their case.

You took the right approach; you deposed the plaintiffs. We didn't get an answer to the interrogatory so we're asking you questions at the depositions to develop information that we were seeking in the interrogatory. And you've told me in your briefs that the -- at least at that point it was 39 DAPs that were deposed. I'm sure there's more now. And to a person, they say we don't know, we don't know. So if the employees don't know, so be it. But, you know, now you've got the answer not only in an interrogatory but from employees.

The bigger question is whether DAPs have a valid claim here and whether they've complied with all the rules they needed to comply with in filing the complaint. And the defendants, you know, say this is not a Rule 11 motion and the minutes we're talking -- the -- the -- the minutes from the meetings with Special Master Grossman, nobody's saying anything

about Rule 11. And I'm not either, okay, I -- I want to stress. But that's beyond a discovery issue.

But the bigger -- the bigger question is can the DAPs prove their antitrust claims. And I think the rubber is going to hit the road on that with expert disclosures, as it does in many, if not all, antitrust cases. And, you know, that puts the information together, and when you go to trial in the case, if you go to trial in the case, the experts are going to be front and center on it.

And the defendants, you know, if the case does go to trial will, you know, beat on the DAPs who they've deposed, who will come to testify potentially, and say, how can they be suing us for this when they don't even know the answers to these questions.

So that's -- you know, that's a merits issue, that's an evidentiary issue, that's a "can the plaintiffs meet their burden of proof" issue, but it's beyond whether I'm going to grant a motion to enforce plaintiffs to do more than they've already done.

Now, make no mistake about this, DAPs and -- and -- and defendants, I understand defendants' argument, I understand their frustration, and I understand the reason they served the interrogatory and why they wanted an answer to it even after the -- you know -- you know, compromised result.

I mean, you sued us for fixing prices. Now we want to

take discovery about that on that claim. The complaint didn't tell us much about which prices were fixed when and -- and by whom, so we want to take discovery on that. That's relevant discovery. It's proportional to the needs of the case. And now you can't or say or -- or won't tell us which prices or transactions were fixed and were done illegally. I understand the reason for the interrogatory. And the brief is very clear that this will be helpful to the defendants in creating some type of a roadmap for discovery of DAPs that they didn't have before because you want to inquire about, you know, which -- what prices were fixed, when, with respect to what transactions.

And so I don't think -- it's not a -- it's not a bad question, and I understand why the question was asked, but I get the plaintiffs' answers are we've answered the question to the best of our ability based upon our current knowledge, and this is all we have.

And I think the defendants then look and say, are you kidding me, you filed this case, and you can't answer that question. But that's a different issue than a discovery dispute, right? That goes to the merits, that goes again to whether plaintiffs can prove their case, but it's beyond what I should do here.

So, you know, in summary, I -- I don't think the procedural vehicle that was chosen is right -- is -- is the

procedural vehicle that I recognize within the case.  But on the merits, I disagree with defendants' position that I should order plaintiffs to do more now.

Again, there's a duty to supplement under 26(e) if the information has not otherwise been made known.  And, you know, I'm sure plaintiffs are aware of that duty, but I don't see anything I can do to require them to do anything more.

So that's where I am there.  I mean, you are going to battle it out with the experts.  Not unusual and not the first time an antitrust case that happened; and defendants have some ammunition, you know, on credibility questions and, you know, whatever else they can do at trial, but enough is enough on this particular discovery dispute.  I think everybody needs to move on and do what needs to be done.

So that's my ruling on the motion to enforce.

Any questions?

MS. MURRAY:  Your Honor, if I -- this is Lynn Murray.

If I could just comment for the record --

THE COURT:  Yep.

MS. MURRAY:  -- so that I can -- I can put on the record what Your Honor has already identified as our frustration.  It is that we are spending millions, if not tens of millions of dollars, a month on taking depositions related to these claims, and we simply don't have any evidence beyond perhaps the criminal indictment claims, which are narrow, that

there is any bid-rigging.

I -- I hear what you're saying that this may not be your problem at this point, and we -- we recognize that it's sort of an unusual motion, but I -- I just -- without leaving the topic, I wanted to make the point that, you know, we feel very trapped at the moment in this situation and will be looking at to see what other procedural vehicles we can raise.

THE COURT: Yeah, I hear you, Ms. Murray. I do. And I -- you know, I -- I wanted to recognize that in my ruling, and -- and I think I did. When you said it's not my problem, I mean, I don't view this case as being my problem in any way, but what I really mean it's not right now my concern as the person who's supervising the discovery.

Look, I -- I hear what you're saying. And I'm -- I'm -- I -- you know, I saw in your brief you said defendants will be seriously prejudiced if we can't get this information. And my thinking is, as you said, it certainly makes your job a whole lot harder, and the expense I'm sure is astronomical.

I mean, you know, I don't know that you need to -- I don't know, you know, maybe you can get a stipulation for some of the DAPs rather than calling them in and asking the questions at the DAPs -- deps that if, you know, if called to answer, they don't have any of the information or something like that. I don't know.

But I -- I appreciate the -- the position that the

defendants are in with a lot less information -- even -- even though expert battles are the norm for antitrust cases, I think you're very skilled in defending antitrust cases. And the reason you're yelling about this or, you know, bringing it to the -- everybody's attention is that it's, you know, a few steps removed from what you would think of in antitrust cases where you -- you're not -- you know, you're not hearing from the plaintiffs what you want to hear. So I get that. And I understand that it's expensive through the discovery process to do that.

And, you know, maybe now with this ruling, at least potentially, you and the plaintiffs can get together, you know, talk about ways to reduce some of the expense in light of what will be coming from the plaintiffs in deposition and stuff.

I read your last, you know, deposition report, everybody's making progress. I think it's still going to be a sprint to May, but, you know, everybody's making progress, but, you know, the plaintiffs are promising that this information is going to be in their expert reports, and then your experts will look at it, and whatever -- whatever vehicles there are to bring to the Court's attention after that, you know, I -- I'm not addressing here at all.

So I get -- I get the frustration. I -- I -- I don't know at the end of the day whether defendants are, quote/unquote, prejudiced because it depends on what plaintiffs

come up with as the case proceeds, but I can certainly see how it makes the job of defending the case, at least on the basis of the prices, more difficult.

Now, plaintiff -- I mean, I will also say -- or echo what the DAPs said, that defendants have a lot of this information themselves and lots of computers to analyze it, and so, you know, they maybe could look at this and see if there's any exposure here.

You know, you don't have to turn that over to the plaintiffs. That's your work product. And -- but, you know, you're not -- they seem to think you're not as blind as you think -- or -- or as you say you are, because the defendants have a lot of information about prices that were charged and how they were -- how they were charged, and so, you know, what your exposure is. Whether the plaintiffs are going to find it or not, I don't know, but at least you -- you have some idea of that, too.

But that's not the same, I understand, as hearing from the people on the other side of the versus how they're going to prove their case and what they're going to say. And, again, as I said before, that is beyond the discovery issue, you know, whether they can prove it and, you know, how -- how they intend to prove it and so forth, but that's behind -- beyond this particular motion to enforce.

So the record will reflect your comments and mine and,

23

I -- you know, I -- and the -- you know, again, I want the record to reflect I understand where you're coming from, but I don't see anything I can do with -- at this time in this process and the procedural posture to change that.

Anything else?

MS. MURRAY:  No.  We understand, Your Honor.  And we will do what needs to be done in view of the ruling.  Thank you.

THE COURT:  Anything on the plaintiffs' side, Ms. Avila or Charlotte Carroll or Lustrin?  I'm -- I'm sorry --

MS. AVILA:  Nothing from the DAPs, Your Honor.

THE COURT:  Yeah.

MS. AVILA:  Thank you.

THE COURT:  Okay.  All right.  Then I want to move to the -- the order I did enter and see -- you know, I didn't know if anybody had anything to say about it, but let me tell you my motivation on this.

I had been following with the Special Master the progress of getting the disputes that were in front of her resolved.  And I also know that in many instances -- and I -- and I know that even since I issued my order, I think one or two issues between DAPs and certain defendants have been resolved, so I don't know how many currently -- how many motions currently are -- are at issue.

You know, hold on for one second.  I just want to call

24

up some notes on that.

(Pause.)

THE COURT: Oh, and also, I wanted to tell Amanda something. Hold on for one second.

Can you mute me for one second?

(Off the record.)

THE COURT: Back on the record.

Okay. Sorry. There was something in a different case that I had to deal with here.

And so whether it's -- you know, I don't know what the total now is, you know, seven, eight, less, more, I don't know, but it is -- it is -- with the deadline you have in this case, it is completely unacceptable to prevent these -- to stop -- to keep this ball rolling, because you're going to run out of time. And if -- and -- and, you know, if the -- if the suggestions or the -- the rulings or the orders from the Special Master are -- produce more information, then -- then that is prejudicial to the plaintiffs trying to get this for a while.

Now, I don't -- you know, some of the conversations you've had, I know have been productive. Okay? You've resolved things. You resolved this Tyson. You resolved --, you know, even as I was focusing on this. And you resolved I saw with some other defendants, too. That's fine.

That has taken way too long. I mean, there's no world

in which you could continue to roll this ball and get the information produced in -- in a way that makes sense with a May 6th -- or May 8th cutoff date.

And there's also, frankly, no rule -- no world in which these discussions should've gone on this long. Okay? I know there was a bit of a delay kind of earlier in the spring and summer, I think, with getting some of the issues resolved. But that's been taken care of. And -- and so you -- you -- you're -- by continuing to hold the Special Master in abeyance and try and resolve these yourselves for I think longer than is really a reasonable amount of time, you are really, you know, burning daylight, is what they say in the outdoor world, right? You're burning daylight. And you need -- you should be doing what you need to do in the daylight rather than this.

So that's why I wanted to put a deadline on this. All right? February 10th I need to know what -- and the Special Master needs to know -- what she needs to turn to to get these things resolved and what the remaining issues are, because you may have resolved certain issues with people and not others.

But this -- I -- I can't let this go on any longer with the discovery close we have and the tight trial schedule we have. I mean, I -- you know, it's just -- it's just not working. So that's why I set this.

So if -- if everybody understands that and I'm going

to get something on the 10th that the Special Master will see as to what needs to get done, then she can get ruling on the remaining issues and can move this forward, but that can't happen in March or April with a May cutoff.

Understood?

UNIDENTIFIED SPEAKER:  Yes, Your Honor --

(Unreportable crosstalk.)

UNIDENTIFIED SPEAKER:  Understood on our end.

THE COURT:  Okay.  Say it again because you both --

UNIDENTIFIED SPEAKER:  I know we've been --

THE COURT:  Say -- say it again, name -- name.  The court reporter missed all that because you were at the same time.  So name and then statement.

MS. FOLEY:  Sorry.  Danielle Foley for defendants.

And yes, we understand.  We have I think all been trying to work productively with one another to resolve these matters with -- without burdening Special Master Grossman, but we understand what you're saying and we'll prepare the report on the 10th as needed.

THE COURT:  Okay.

Plaintiffs, same?

MS. AVILA:  Thank you, Your -- thank you, Your Honor. This is Alejandra Avila from the DAPs and -- and it's the same for us, understood.

THE COURT:  Okay, good.

Okay. Those were the only matters that I intended to cover today. We don't have another status hearing or status report. We've got the two-week reports, and I'll continue to look on those on the -- on the depositions if I need to call you in or you feel like you need to come in, you need to let me know.

(Pause.)

THE COURT: Yeah, and I will --

MS. FOLEY: Your Honor, Danielle Foley for the --

THE COURT: I'm sorry, Ms. Foley.

MS. FOLEY: Oh.

THE COURT: And -- and I was also going to say, I will look at what you file on the 10th, and then if we need to get together again based on that, I can set that. Or -- or ask you for a more fulsome report later in the month of February. So I think -- I mean, that's my thinking on it, unless you have different thinking.

Go ahead, Ms. Foley.

MS. FOLEY: Your Honor, that's exactly what I was going to suggest, that let's take it after we see the filing on the 10th.

THE COURT: Great. Okay, good.

All right. I remain -- I remain pleased that I saved you all -- I know everybody wasn't coming from South Florida, you know, somebody may have been coming from New York, but

28

you -- if you can not come to Chicago in February, then you're one step ahead on -- on your business travel. So I'm glad we were able to do this. I think it was done productively, everybody understands each other and, you know, I'll look forward to seeing you again in Chicago, possibly, but, you know, the weather we've been having here has been so cold that I just didn't want to subject people who don't have winter coats to have to do that.

Okay. Have a good rest of the day and week and I'll talk to you when I need to talk to you or when you need to talk to me. Bye-bye.

UNIDENTIFIED SPEAKER: Thanks, Judge.

UNIDENTIFIED SPEAKER: Thank you, Your Honor.

UNIDENTIFIED SPEAKER: Goodbye, Your Honor.

(Concluded at 11:16 a.m.)

\* \* \* \* \*

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.


*/s/ Elia E. Carrión*                    *12th of February, 2026*

Elia E. Carrión, RPR, CRR, CRC
Official Court Reporter