IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>THE DIRECT PURCHASER PLAINTIFF ACTION | Case No.: 1:16-cv-08637<br><br>The Honorable Thomas M. Durkin<br><br>Magistrate Judge Jeffrey T. Gilbert |

**DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF SECOND DISTRIBUTION OF NET SETTLEMENT PROCEEDS**

**TABLE OF CONTENTS**

**Page**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | LITIGATION BACKGROUND | | 3 |
| | A. | Distribution of the First Round of Settlements | 3 |
| | B. | Claims Administration of the Second Round of Settlements | 4 |
| | | 1. DPP Co-Lead Counsel and the Claims Administrator Successfully Carried Out The Court-Approved Claims Process | 4 |
| | | 2. A.B. Data Verified Each Claim was Valid and Accurate | 4 |
| | | 3. The Audit Process was Thorough | 7 |
| | | 4. Administration Costs | 7 |
| | C. | Updated Accounting of the Requested Fees and Litigation Expenses | 8 |
| | D. | Distribution of the Net Settlement Fund | 9 |
| III. | ARGUMENT | | 11 |
| | A. | The Court Should Approve the Recommendations of the Claims Administrator and Co-Lead Class Counsel Concerning Acceptance or Rejection of Claims | 12 |
| | B. | Late Claims that are Otherwise Valid Should be Paid | 13 |
| | C. | Outstanding Expenses and Costs | 14 |
| | | 1. Claims Administration Costs | 14 |
| | | 2. Other Expenses Associated with the Settlements | 15 |
| IV. | CONCLUSION | | 15 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Auto. Refinishing Paint Antitrust Litig.*,
   617 F. Supp. 2d 336 (E.D. Pa. 2007) .......................................................................................12

*Bradburn Parent Teacher Store, Inc. v. 3M*,
   513 F. Supp. 2d 322 (E.D. Pa. 2007) .......................................................................................12

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   No. 94 C 897, 1999 WL 639173 (N.D. Ill. Aug. 17, 1999).......................................................11

*Burns v. Elrod*,
   757 F.2d 151 (7th Cir. 1985) ....................................................................................................13

*In re Cendant Corp. Prides Litig.*,
   233 F.3d 188 (3d Cir. 2000).....................................................................................................13

*In re Gypsum Antitrust Cases*,
   565 F.2d 1123 (9th Cir. 1977) .................................................................................................13

*In re Packaged Ice Antitrust Litig.*,
   No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ....................................12

*In re Potash Antitrust Litig.*,
   MDL No. 1996, Dkt. No. 610 (N.D. Ill Jul. 18, 2014) ............................................................11

*In re Remeron Direct Purchaser Antitrust Litig.*,
   No. CIV.03-0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) .........................................12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 3:07-md-1827, 2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) .........................................12

*In re Wholesale Grocery Prod. Antitrust*,
   No. 09-MD-02090 ADM/TNL, 2018 WL 11424046 (D. Minn. Feb. 7, 2018).......................12

**Other Authorities**

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 12.10 (4th ed. 2002) ...............12

I.  **INTRODUCTION**

The Direct Purchaser Plaintiffs' ("DPPs") action is fully settled. As detailed in this motion, DPPs now seek the Court's approval to make a second distribution to qualified Class member claimants from the net settlement proceeds. This distribution would be subject to and contingent on the Court's ruling on the DPPs' pending Motion for Payment of Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representative Service Awards submitted on May 1, 2024 ("Fee Motion," ECF No. 7232 and updated herein (*see* Section II.C below)). DPPs bring this motion now to expedite the distribution of the Net Distribution Fund, and propose that DPPs supplement this motion with an updated and final accounting for distribution once the Court rules on the pending Fee Motion.[1]

This motion and the proposed plan of distribution are pursuant to the terms and conditions of the Settlement Agreements in this case.[2] DPPs propose that, as in the first distribution (*see* ECF No. 5791), the Court order that the Net Distribution Fund be distributed on a *pro rata* basis pursuant to the portion of approved eligible Broiler chicken purchases of Class members who have

---

[1] The term "Settlement Fund" is the gross settlement fund and refers to the grand total of $284,651,750.00 paid by all 13 settling defendants since inception: Fieldale, Peco, George's, Amick, Pilgrim's, Tyson, Mar Jac, Harrison Poultry, Simmons, Mountaire, O.K. Foods, HRF, and Koch Defendants ("Settling Defendants"). The term "Net Distribution Fund" refers to the settlement proceeds paid in the second round of seven settlements by Mar Jac, Harrison Poultry, Simmons, Mountaire, O.K. Foods, HRF, and Koch, plus accrued interest and minus (i) the costs of settlement administration and escrow, (ii) taxes, and (iii) the attorneys' fees, litigation expenses, and class representative service awards requested in the pending Fee Motion. As more fully set forth in Section II.D and the table on page 10 below, and assuming the Court awards the fees, costs, and service awards requested in the Fee Motion, the proposed Net Distribution Fund would equal $77,854,864.66. *See also* Declaration of Michael H. Pearson filed concurrently herewith ("Pearson Decl.") ¶ 6.

[2] *See* Mar Jac Settlement Agreement, ECF No. 5052-1; Harrison Poultry Settlement Agreement, ECF No. 5052-1; Simmons Settlement Agreement, ECF No. 6597-1; Mountaire Settlement Agreement, ECF No. 6814-1; O.K. Foods Settlement Agreement, ECF No. 6814-2; HRF Settlement Agreement, ECF No. 6928-1; Koch Settlement Agreement, ECF No. 6928-2.

filed valid claims. The *pro rata* distribution in this case was described in the long form class notice and claim form which have already been approved by the Court (*see* ECF Nos. 7174-2 at p. 7-8 (proposed notice), 7179 (Order approving notice plan and claims process)) and sent to Class members. If a Class member filed a claim and received a payment from the first distribution, they were automatically eligible to get a payment from the second round of settlements without submitting another claim. Class members could supplement their prior claim if they chose, but it was not required. If a Class member did not previously submit a claim, the deadline to submit a new claim (or to supplement a prior claim) was June 1, 2024. *Id.*

In administering this second round of settlements, the Court-appointed Settlement Administrator, A.B. Data Ltd., in consultation with Co-Lead Class Counsel,[3] disseminated notice to the Settlement Classes (as defined in each of the Settlement Agreements), diligently processed 439,372 claims, and determined each claimant's eligibility. *See generally* Declaration of Taylor Foulk filed concurrently herewith ("Foulk Decl.") ¶ 13.

As a result, there was significant participation in the claims process by Class members: 62 new claims have been vetted and approved by A.B. Data and DPP Co-Lead Class Counsel, and are now recommended for approval.[4] *See Id.* ¶ 15. These claims will be paid promptly upon the Court's approval of final accounting of the Net Distribution Fund. This distribution process is more fully described in Section II.D below.

---

[3] The Court appointed Lockridge Grindal Nauen PLLP ("LGN") and Pearson Warshaw, LLP ("PW") as Interim Co-Lead Counsel at the outset of the litigation (ECF No. 144, Oct. 14, 2016 Order), and as Co-Lead Class Counsel when it granted DPPs' motion for class certification (ECF No. 5644 at 6).

[4] A.B. Data reviewed and rejected 438,067 claims (including withdrawn, duplicative, ineligible, and fraudulent claims) as more fully set forth in Section II.B.2. Foulk Decl. ¶ 46.

## II. LITIGATION BACKGROUND

DPP Co-Lead Class Counsel's vigorous prosecution has resulted in the creation of a $284,651,750 gross Settlement Fund from the settlements with the Settling Defendants. All these monetary settlements were achieved prior to the trial in 2023. Following the trial, DPPs reached no-money settlements with the Defendants who were dismissed on summary judgment – Foster Farms, Perdue, Case, Claxton, Wayne Farms, and Agri Stats – and the Defendant who prevailed at trial, Sanderson Farms (collectively the "Prevailing Defendants"). Those post-trial settlements with the Prevailing Defendants were finally approved by the Court. *See* ECF Nos. 7311, 7423. Additionally, in two separate appeals filed by objecting class members the Restaurant DAPs, the Seventh Circuit affirmed this Court's final approval of the Simmons, HRF, and Koch settlements. *See* ECF Nos. 7121 (Simmons), 7357 (HRF and Koch); *Boston Market Corp., et al. v. Mountainaire Farms, Inc., et al.*, No. 24-1030, Dkt. No. 104 (7th Cir. Apr. 1, 2025) (affirming Simmons settlement); *Boston Market Corp., et al. v. Koch Foods, Inc., et al.*, No. 24-2422, Dkt. No. 31 (7th Cir. Aug. 6, 2025) (affirming HRF and Koch settlements). The Restaurant DAPs took no further action following these affirmances, and all deadlines to do so have run. Accordingly, DPPs believe it is appropriate to make a second distribution of the Net Distribution Fund.

### A. Distribution of the First Round of Settlements

Following final approval of the settlements with Defendants Fieldale, Peco, George's, Amick, Pilgrim's, and Tyson, in 2022 the Court approved the DPPs' first proposed plan of distribution. *See* ECF No. 5434. The first distribution was carried out successfully. *See* ECF No. 5791. Certain of the funds from the first distribution were earmarked for redistribution. *Id*. Those funds have been invested and earning interest, and now total $5,426,994.84 (the "Redistribution Amount"). Pearson Decl. ¶ 5. DPPs will distribute the Redistribution Amount concurrent with this

proposed second distribution and according to the *pro rata* calculation applied in the first distribution.

B. **Claims Administration of the Second Round of Settlements**

On March 15, 2024, this Court approved the notice to Class members that describes the claims process that is the subject of this motion, and appointed A.B. Data as the Claims Administrator. ECF No. 7179. As more fully detailed in the concurrently filed Declaration of Taylor Foulk, the claims process was carried out with significant Class member participation. *See* ECF No. 8091; Foulk Decl. ¶¶ 9-11.

1. DPP Co-Lead Counsel and the Claims Administrator Successfully Carried Out the Court-Approved Claims Process

On April 1, 2024, A.B. Data mailed notice packets containing the claim form and the long form notice. Foulk Decl. ¶ 10. On the same day, A.B. Data commenced an email campaign and sent the Email Notice to Class members. *Id*. ¶ 11. A.B. Data also caused the Publication Notice to be published in industry publications and placed banner display advertisements on industry websites. *Id*. The claim form included clear instructions that if a claim was made previously, a new claim was not required and could be supplemented. It also informed Class members that if a claim was not made previously, one could be submitted for review. *Id*. ¶ 9. All claim information was available to Class members via the settlement website. *Id*. Class members had the opportunity to submit their claim forms via mail, email or using the settlement website. *Id*. ¶ 12.

2. A.B. Data Verified Each Claim was Valid and Accurate

To ensure that all claims were proper and accurate, A.B. Data: (1) identified all duplicative claims; (2) audited and consolidated claims filed by different entities for the same Class member; (3) identified any claims that were deficient on their face; (4) reviewed and audited any claims submitted by self-identified claimants without pre-populated data; (5) reviewed and audited any

claims for which a purchase audit request was submitted (*i.e.*, where the claimant disputed the pre-populated claim form amount); (5) identified any ineligible product purchases claimed; and (6) identified and excluded any claims based on indirect purchases. Foulk Decl. ¶¶ 18-27. A.B. Data also worked with Co-Lead Class Counsel's data team to ensure that all claims were accurate. *Id*. ¶ 32. The claim review process is described in greater detail below and in the supporting Foulk Declaration.

A.B. Data reviewed the claim submissions to identify potentially duplicate claims filed for the same Class member. Exact duplicates were consolidated. Where multiple claims were filed by different entities on behalf of the same Class member, the claims were further analyzed and, in many cases, additional outreach was performed to determine which claim(s) should be accepted or rejected. Foulk Decl. ¶¶ 18-27.

A.B. Data also reviewed Claim Forms for any facial deficiencies, including missing signatures or other required information. *Id*. ¶ 23. All such claims were flagged as deficient. *Id*.

Where Claim Forms were submitted by self-identified entities who did not have pre-populated data, A.B. Data worked with Co-Lead Class Counsel to determine whether the claimant could be matched to Class purchase data. If a match was confirmed, the Class member's record was updated accordingly in A.B. Data's database. *Id*. ¶ 32.

For claims other than those accepting pre-populated data, where supporting documentation was not submitted, the claims were flagged as deficient. Where documentation was submitted in lieu of or in addition to pre-populated data, A.B. Data carefully reviewed all submissions, including invoices and structured transactional data, to ensure that only eligible direct Broiler chicken purchases were validated. If the documentation was not sufficient to prove the eligibility of claimed purchases, the claim was categorized as deficient. Foulk Decl. ¶¶ 18-27.

The Court-approved notice required all claims to be submitted by June 1, 2024. ECF No. 7174; Foulk Decl. ¶ 12. A.B. Data received 11 claims after the June 1, 2024 deadline. *Id*. However, A.B. Data and Co-Lead Class Counsel recommend that all late but otherwise valid claims be paid. Payment of these late claims will have a *de minimus* effect on the payment to qualified claimants who filed timely claims. *Id*. ¶ 44; *see also* Pearson Decl. ¶ 7.

A.B. Data's claim review was methodical and detailed. Each claim submission that provided facially valid supporting documentation received several rounds of review by A.B. Data staff to ensure accuracy. Claims based on purchases not made directly from a Defendant or Co-Conspirator were rejected. Claims based on purchases of products not included in the certified class definition were rejected as ineligible.[5] Where claims reflected assignment agreements between Class members and another entity, the assigned purchases were carefully credited to the assignee's claim and debited from the assignor's claim, as appropriate. *Id*. ¶ 30. This same review process was used to review purchase audit requests, when a claimant disputed the pre-populated purchase amount.

Finally, A.B. Data reviewed claims to identify any claimants who had opted out of any of the Settlements, to ensure these claimants would not receive a distribution from any Settlement from which they had opted out. *Id*. ¶ 34.

In sum, in addition to 1,221 previously paid claims, A.B. Data received and processed a total of 62 new claim forms. *Id*. ¶ 15. After auditing all claims received, A.B. Data identified and rejected 451 duplicates and consolidated claims. *Id*. ¶ 46. Further, 58 claimants have withdrawn their claims. *Id*. A.B. Data recommends that a total of 438,067 claims (including withdrawn

---

[5] Examples of ineligible products are organic products and those exported directly out of the United States.

claims) be denied for the reasons described in detail herein. *Id*. A total of 1,305 valid claims remain with purchases totaling $228,755,386,295.16.[6] *Id*. ¶ 45.

    3.  <u>The Audit Process was Thorough</u>

Where a claimant either did not have a pre-populated claim form, or disagreed with their pre-populated purchase data, A.B. Data reviewed the claim submission in detail with the help of Co-Lead Class Counsel and their data team to confirm validity. *Id*. ¶¶ 28-33. Twenty one claimants submitted purchase audit request forms or otherwise disputed the amounts reflected in their pre-populated Claim Forms. *Id*. ¶ 39.

When addressing any claim modifications, deficiencies, or purchase audit requests, A.B. Data provided notice to the affected Class members and, if necessary, Co-Lead Class Counsel, and gave the claimant an opportunity to cure any deficiencies. *Id*. ¶ 23. A.B. Data investigated and handled each issue on an individual basis and resolved it in a timely manner. *Id*.; *see also* Pearson Decl. ¶ 8. As of the filing of this Motion there are no outstanding disputes or issues. Foulk Decl. ¶ 35.

    4.  <u>Administration Costs</u>

A.B. Data has provided to Co-Lead Class Counsel invoices detailing the fees and expenses it has incurred to administer the notice and claims of the direct purchaser Class members. Pearson Decl. ¶ 9; Foulk Decl. ¶ 49. In approving the Settlements the Court approved the payment of the costs of administration, pursuant to which Co-Lead Class Counsel have incurred $629,351.09 in reasonable and necessary administration expenses to A.B. Data for the notice and administration of the Settlements. Foulk Decl. ¶ 49. A.B. Data's anticipated cost of completing this initial

---

[6] Of these valid claims, only 11 claims were submitted after the June 1, 2024 deadline. Foulk Decl. ¶ 41.

distribution are $54,000.00. Pearson Decl. ¶ 9; Foulk Decl. ¶ 49. This is within the amount already approved by the Court in approving each of the Settlements. *See* Section III.C.1 below. If the actual amount is less than this anticipated amount, the difference will be distributed *pro rata*.

C. **Updated Accounting of the Requested Fees and Litigation Expenses**

Co-Lead Class Counsel have directed the settlement administrator and escrow agent to deposit the settlement proceeds for the settlements listed below that are pending distribution to the DPP Class into interest-bearing accounts, which has resulted in over $12 million in additional settlement proceeds for the benefit of the DPP Class since each settlement was funded into escrow. Interest continues to accrue. As of the filing of this brief, the amount on which the DPPs propose Class Counsel's fee request should be based is calculated as follows:

|  | As-Filed Amount | Updated Amount (if applicable) |
|---|---|---|
| Mar Jac Settlement Fund | $7,975,000.00 | *No Change* |
| Harrison Poultry Settlement Fund | $3,300,000.00 | *No Change* |
| Simmons Settlement Fund | $8,018,991.00 | *No Change* |
| Mountaire Settlement Fund | $15,899,826.00 | *No Change* |
| O.K. Foods Settlement Fund | $4,856,333.00 | *No Change* |
| House of Raeford Settlement Fund | $27,500,000.00 | *No Change* |
| Koch Settlement Fund | $47,500,000.00 | *No Change* |
| **Total of Settlements at Issue** | **$115,050,150.00** | ***No Change*** |
| Interest Earned on the Settlements at Issue | $2,975,355.20 | $12,255,048.25 |
| Litigation Expenses paid by the Settlements at Issue | ($6,010,950.20) | ($9,976,873.76) |
| *Second Expense Reimbursement (ECF No. 7086)* | ($4,469,346.65) | *No Change* |
| *Pending Expense Reimbursement (ECF No. 7232)* | ($1,029,448.72) | *No Change* |
| *Claims/Notice Administrator (Paid and Incurred)* | ($407,720.15) | ($629,351.09) |
| *Escrow Agent Fees* | ($29,000.00) | ($45,300.00) |
| *Taxes* | ($75,434.68) | ($3,803,427.30) |
| Requested Future Litigation Expenses | ($100,000.00) | *No Change* |
| Requested Class Representative Service Awards | ($75,000.00) | *No Change* |
| **Net Settlement Fund** | **$111,839,555.00** | **$117,153,324.49** |

The amount of the requested attorneys' fee award (33 1/3%) as of the filing of this brief is $39,051,108.16. As discussed herein, this Motion is contingent the Court's approval of the

attorneys' fees, costs, and service awards. Once the Court rules on the pending Fee Motion, DPPs will provide the Court with a final accounting for distribution order.

### D. Distribution of the Net Settlement Fund

As noted, from inception the Settling Defendants have paid a total of $284,651,750.00 into the Settlement Fund. Pearson Decl. ¶ 4. To the extent not previously paid out in the first distribution or other Court awards, this money has been earning interest since deposited. *Id*. Assuming the Court grants the pending Fee Motion in the amounts requested, the Net Distribution Fund available for distribution in this second round would equal $77,854,864.66. Pearson Decl. ¶ 6. An accounting of the Net Distribution Fund is as follows:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

| Description | | Amount |
|---|---|---|
| Funding by Mar Jac | + | $7,975,000.00 |
| Funding by Harrison Poultry | + | $3,300,000.00 |
| Funding by Simmons | + | $8,018,991.00 |
| Funding by Mountaire | + | $15,899,826.00 |
| Funding by O.K. Foods | + | $4,856,333.00 |
| Funding by House of Raeford | + | $27,500,000.00 |
| Funding by Koch | + | $47,500,000.00 |
| **Settlement Fund** | **=** | **$115,050,150.00** |
| Earned Interest (through December 31, 2025)[7] | + | $12,255,048.25 |
| Litigation Expenses (Requested)[8] | - | $9,976,873.76 |
| *Second Expense Reimbursement (ECF No. 7086)* | | *$4,469,346.65* |
| *Pending Expense Reimbursement (ECF No. 7232)* | | *$1,029,448.72* |
| *Claims/Notice Admin. (through January 31, 2026)[9]* | | *$629,351.09* |
| *Escrow Agent Fees (through February 28, 2026)* | | *$45,300.00* |
| *Taxes (through December 31, 2025)* | | *$3,803,427.30* |
| Future Litigation Expense Fund (Requested) | - | $100,000.00 |
| Attorneys' Fees (Requested) | - | $39,051,108.16 |
| Class Representative Service Awards (Requested) | - | $75,000.00 |
| Claims Administration Costs (Anticipated)[10] | - | $54,000.00 |
| Additional Escrow Agent Fees (Anticipated)[11] | - | $21,000.00 |
| Taxes (Anticipated)[12] | - | $172,351.67 |
| **Net Distribution Fund** | **=** | **$77,854,864.66** |

Upon entry of an Order approving the distribution as set forth herein or as modified by the Court, within 45 days the Escrow Agent[13] will transfer the Net Distribution Fund to A.B. Data,

---

[7] Mar Jac $1,131,770.18; Harrison Poultry $478,473.56; Simmons $948,847.76; Mountaire $1,568,749.07; O.K. Foods $492,117.28; HRF $2,761,088.50; Koch $4,874,001.90.

[8] *See* Section II.C above.

[9] Mar Jac $198,873.53; Harrison Poultry $82,292.49; Simmons $75,571.11; Mountaire $149,840.23; O.K. Foods $45,767.79; HRF $28,237.89; Koch $48,768.05.

[10] *See* Section III.C.1 below. If the actual amount is less than this anticipated amount, the difference will be distributed *pro rata*.

[11] $3,000.00 reserve for each of the seven Settlements for additional bank fees through the end of the distribution, for a total of $21,000.00. If the actual amount is less than this anticipated amount, the difference will be distributed *pro rata*.

[12] This amount is based on the amount paid in December 2025. If the actual amount is less than this anticipated amount, the difference will be distributed *pro rata*.

[13] U.S. Bank was appointed by the Court as escrow agent for each of the Settlements.

and A.B. Data will promptly issue payment of each qualified claimant's *pro rata* share, including any *pro rata* share of the Redistribution Amount, by mailing payments to qualified claimants at the address indicated on their claim form or as updated in A.B. Data's database. For any payment above $100,000.00, A.B. Data will contact the qualified claimant and arrange payment via wire transfer or some other trackable method. In addition, A.B. Data will file any tax returns and pay any taxes due from the Settlement Fund. A.B. Data recommends (and Co-Lead Class Counsel concur) that the checks disbursed to qualified claimants bear the notation "Non-Negotiable After 90 Days" and that no check be negotiable more than 120 days after the date of the check. Foulk Decl. ¶ 48. The additional 30 days will allow for bank processing and a small extension of time for individuals who present their checks to the bank after 90 days but the bank continues to accept the check for payment. *Id*.

DPPs will file a report with the Court 30 days after the 120 days of negotiability advising the Court of the status of the distribution and propose a plan for any funds remaining in the Net Distribution Fund. If the Court believes a hearing on the status of distribution is appropriate at that time, DPPs are happy to oblige.

### III. ARGUMENT

In antitrust cases such as this, courts in this District and elsewhere have approved settlement distributions that apportion available settlement funds on a *pro rata* basis to class members with qualified claims, without favoring any single or group of class members over another. *See, e.g.*, *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1999 WL 639173, *4 (N.D. Ill. Aug. 17, 1999) ("We note that courts have utilized the pro rata distribution method in several prior price-fixing class actions . . . . We think this method will provide the most accurate measure of the damages suffered by each class member and, for this reason, we endorse the pro rata distribution method."); *accord In re Potash Antitrust Litig.*, MDL No. 1996, Dkt. No.

1048614.7  11

610 (Order Approving Plan of Distribution of the Settlement Fund) (N.D. Ill Jul. 18, 2014); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *15-16 (E.D. Mich. Dec. 13, 2011); *In re Wholesale Grocery Prod. Antitrust*, No. 09-MD-02090 ADM/TNL, 2018 WL 11424046, at *1 (D. Minn. Feb. 7, 2018); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 345 (E.D. Pa. 2007); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 335 (E.D. Pa. 2007); *In re Remeron Direct Purchaser Antitrust Litig.*, No. CIV.03-0085 FSH, 2005 WL 3008808, *11 (D.N.J. Nov. 9, 2005) (citing cases); *see also* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 12.10 (4th ed. 2002). In administering the substantial *LCD* settlements, the court noted that *pro rata* allocation "has been used in many antitrust cases." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-1827, 2011 WL 7575004, *4 (N.D. Cal. Dec. 27, 2011).

The proposed *pro rata* distribution in this case was described in the long form class notice and claim form which have already been approved by the Court and sent to Class members. The long form notice stated:

> Payments to qualified claimants from the HRF, Koch, Mar-Jac, Harrison Poultry, Simmons, Mountaire, and O.K. Foods settlements will be calculated for all qualified claimants based on the proportional (or *pro rata*) amount of their eligible Broiler purchaser from all Defendants for the period from 2008 through 2019. The purchases and transaction amounts will be based on the review of Defendants' records, as updated based on any audits for information obtained during the previous settlement distribution process.

*See* ECF No. 7174-2 at p. 7-8.

### A. The Court Should Approve the Recommendations of the Claims Administrator and Co-Lead Class Counsel Concerning Acceptance or Rejection of Claims

As explained above, A.B. Data has performed a diligent, thorough review of all claim forms. *See* Section II.B above. Based on this process, A.B. Data has determined (and Co-Lead Class Counsel concurs) that there are 1,305 eligible claims to be paid according to the proposed

plan of distribution.[14] Foulk Decl. ¶ 45. Thus, DPPs propose that the Court approve the payment of the eligible claims.

A.B. Data reviewed a total of 439,372 claims and rejected a total of 438,067 claims (including withdrawn claims). *Id*. ¶¶ 13, 46. The most common reasons for rejecting claims were: (i) claimants did not have pre-populated data and did not submit documentation of any kind to support their claim, (ii) claimants' supporting documentation indicated that the claimed purchases were not direct and therefore not eligible, (iii) the supporting documentation was insufficient to support the claimed amount, and (iv) fraud. *Id*. ¶ 22. Co-Lead Class Counsel agrees with A.B. Data's determinations, and proposes that the Court approve A.B. Data's determinations concerning the denial of ineligible claims and the payment of eligible claims. Pearson Decl. ¶ 8. There are no pending disputes with the Class members regarding these determinations. Foulk Decl. ¶ 35.

### B. Late Claims that are Otherwise Valid Should be Paid

As noted above, of the 1,305 claims recommended for approval, 11 were received after the Court's June 1, 2024 deadline to submit all claims. Foulk Decl. ¶ 41. Of the late but otherwise valid claims, 9 claims were filed within 2 weeks of the filing deadline. *Id.* ¶ 41. None of these late claims delayed the claim review process. The Court has discretion to allow or disallow such claims. *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977) (court has discretion with respect to the disallowance of late claims); *Burns v. Elrod*, 757 F.2d 151, 154-55 (7th Cir. 1985); *see In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 194-97 (3d Cir. 2000) (holding that until the fund created by the settlement is actually distributed, the court retains its traditional equity powers

---

[14] Where more than one claimant with the same standardized name submitted a validated claim, A.B. Data counted the total purchase amount only once (as the maximum amount to be paid per standardized claimant); however, each submitted claim is included in the claim counts herein. Foulk Decl. ¶ 25.

to protect unnamed but interested persons; a court may assert this power to allow late-filed proofs of claim).

DPPs propose that all late claims be paid. Payment of these late-filed claims will have a *de minimus* impact on the distribution to the Class and will not delay the distribution plan. Pearson Decl. ¶ 7.

### C. Outstanding Expenses and Costs

#### 1. Claims Administration Costs

The Court-appointed claims administrator, A.B. Data, has provided its services as described in the Foulk Declaration. Each of the Settlement Agreements authorized Class Counsel to withdraw up to a certain amount for notice and administration costs, totaling $1.75 million. *See* Mar Jac Settlement Agreement, ECF No. 5052-1 (allowing up to $250,000.00 for administration); Harrison Poultry Settlement Agreement, ECF No. 5052-1 (same); Simmons Settlement Agreement, ECF No. 6597-1 (same); Mountaire Settlement Agreement, ECF No. 6814-1 (same); O.K. Foods Settlement Agreement, ECF No. 6814-2 (same); HRF Settlement Agreement, ECF No. 6928-1 (same); Koch Settlement Agreement, ECF No. 6928-2 (same). Pursuant to this, Co-Lead Class Counsel have already paid and incurred $629,351.09 from the Settlement Funds to A.B. Data after review and approval of their bills. Pearson Decl. ¶ 9. As set forth in Section II.B.4 above, A.B. Data's fees, including the anticipated cost of completing this initial distribution, are $54,000.00.[15] *Id*. Co-Lead Class Counsel find this request to be reasonable and recommend that the Court approve the payment. *Id*.

---

[15] If the actual amount is less than this anticipated amount, the difference will be distributed *pro rata* to the Court-approved qualified claimants.

        2.      <u>Other Expenses Associated with the Settlements</u>

DPPs request the Court's authorization to reserve, if necessary, $3,000.00 per settlement[16] ($21,000.00 total) for any additional, unaccounted for costs (*i.e.*, escrow, banking) that may be incurred before the actual distribution.

## IV. CONCLUSION

For these reasons, DPPs respectfully request that the Court (1) authorize the payment of eligible claims; (2) deny the ineligible claims; (3) once the Court decides the Fee Motion and DPPs' supplement to this Motion is filed and approved, order the Escrow Agent to distribute the Net Distribution Fund to A.B. Data; and (4) order A.B. Data to distribute the *pro rata* settlement proceeds to qualified claimants.

Further, as noted above, DPPs will report to the Court 150 days after payments are sent, advising the Court of the status of the distribution, and at that time will propose a plan for any funds remaining in the Net Distribution Fund.

---

[16] If the actual amount is less than this anticipated amount, the difference will be distributed *pro rata* to the Court-approved qualified claimants.

Date: March 3, 2026

| | |
|---|---|
| */s/ Michael H. Pearson* | W. Joseph Bruckner (*Pro Hac Vice*) |
| Clifford H. Pearson (*Pro Hac Vice*) | Brian D. Clark (IL # 6350416) |
| Daniel L. Warshaw | Simeon A. Morbey (*Pro Hac Vice*) |
| Bobby Pouya | Arielle S. Wagner (*Pro Hac Vice*) |
| Michael H. Pearson | **LOCKRIDGE GRINDAL** |
| **PEARSON WARSHAW, LLP** | **NAUEN PLLP** |
| 15165 Ventura Boulevard, Suite 400 | 100 Washington Avenue South, Suite 2200 |
| Sherman Oaks, CA 91403 | Minneapolis, MN 55401 |
| T: (818) 788-8300 | T: (612) 339-6900 |
| F: (818) 788-8104 | F: (612) 339-0981 |
| cpearson@pwfirm.com | wjbruckner@locklaw.com |
| dwarshaw@pwfirm.com | bdclark@locklaw.com |
| bpouya@pwfirm.com | samorbey@locklaw.com |
| mpearson@pwfirm.com | aswagner@locklaw.com |

Kyle Pozan (IL #6306761)
**LOCKRIDGE GRINDAL**
**NAUEN PLLP**
1165 N. Clark Street, Suite 700
Chicago, IL 60610
T: (312) 470-4333
kjpozan@locklaw.com

*Direct Purchaser Plaintiffs' Co-Lead Class Counsel*

Steven A. Hart (IL #6211008)
Brian Eldridge (IL #6281336)
**HART MCLAUGHLIN & ELDRIDGE, LLC**
1 South Dearborn, Suite 1400
Chicago, IL 60603
T: (312) 955-0545
F: (312) 971-9243
shart@hmelegal.com
beldridge@hmelegal.com

*Direct Purchaser Plaintiffs' Liaison Class Counsel*