# EXHIBIT A

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 1:16-cv-08637-TMD-JG |
| This Document Relates To: | Hon. Judge Thomas M. Durkin |
| *All End-User Consumer Plaintiff Actions* | Magistrate Judge Jeffrey T. Gilbert |

**LONG-FORM SETTLEMENT AGREEMENT BETWEEN END-USER
CONSUMER INDIRECT PURCHASER CLASS PLAINTIFFS
AND AGRI STATS, INC.**

THIS SETTLEMENT AGREEMENT ("Settlement Agreement") is made and entered into as of the 30th day of March, 2026 ("Execution Date") by and between the End User Consumer Plaintiffs ("EUCPs" or "Plaintiffs") through Co-Lead Counsel for the proposed Settlement Class (as hereinafter defined), and Agri Stats, Inc. ("Settling Defendant" or "Agri Stats") in the above captioned action (the "Action").

**RECITALS**

WHEREAS, on December 16, 2016, EUCPs filed a consolidated amended class action complaint in the United States District Court for the Northern District of Illinois, alleging that various chicken producers participated in a conspiracy to fix, raise, maintain, and stabilize the price of Broilers;

WHEREAS, on October 30, 2020, EUCPs filed a motion for class certification;

WHEREAS, on May 27, 2022, the Court granted EUCP's motion for class certification and certified a class consisting of:

- 1 -

All persons and entities who indirectly purchased the following types of raw chicken, whether fresh or frozen: whole birds (with or without giblets), whole cut-up birds purchased within a package, breast cuts or tenderloin cuts, but excluding chicken that is marketed as halal, kosher, free range, organic, diced, minced, ground, seasoned, flavored or breaded—from defendants or co-conspirators for personal consumption in the Repealer Jurisdictions from January l, 2012 to July 31, 2019.[1]

WHEREAS, the Court appointed Lead Counsel to represent the class;

WHEREAS, the Parties wish to resolve all claims asserted and all claims that could have been asserted against Agri Stats in any way arising out of or relating in any way to the indirect purchase by members of the Settlement Class of chicken products that were produced, processed or sold by any Agri Stats subscriber, including any of the Defendants or their alleged co-conspirators;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Settlement Agreement, and this Settlement Agreement embodies all of the terms and conditions of the settlement;

WHEREAS, EUCPs have concluded, after investigation of the facts and after considering the circumstances and the applicable law, that it is in the best interests of EUCPs to enter into this Settlement Agreement with Agri Stats to avoid the uncertainties of further complex litigation, and to obtain the benefits described herein for the Settlement Class, and, further, that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of EUCPs and the Settlement Class;

---

[1] Any terms in the class definition have the meaning ascribed in the Court's order granting class certification in Docket Number 5644. For the avoidance of doubt, the "Repealer Jurisdictions" are: California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee; Utah, and Wisconsin.

WHEREAS, Agri Stats, notwithstanding that it asserts that it did nothing wrong or illegal, that it has legitimate defenses to any claims that were asserted or could have been asserted against it, and that it would prevail at trial, enters into this Settlement Agreement to avoid the costs, expenses, and uncertainties of this complex litigation, to avoid the risks inherent in litigation and trial, and to put this controversy to rest;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the EUCPs be settled and compromised, and dismissed on the merits with prejudice as to Agri Stats subject to Court approval:

## I. DEFINITIONS

1. <u>General Definitions</u>. The terms below and elsewhere in this Settlement Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Settlement Agreement.

    a. "Agri Stats Released Parties" means Agri Stats, Inc., an Indiana corporation located in Fort Wayne, Indiana, and its former, current, and future parents, subsidiaries, and affiliates, including, without limitation, Express Markets, Inc., and any of its former, current, and future predecessors, successors, assigns, trustees, owners, principals, partners, directors, executives, employees, officers, shareholders, managers, members, attorneys, equity holders, agents, insurers, supervisors, and representatives.

    b. "Broilers" shall mean the following types of raw chicken, whether fresh or frozen: whole birds (with or without giblets), whole cut-up birds purchased within a package, breast cuts or tenderloin cuts, but excluding chicken that

- 3 -

is marketed as halal, kosher, free range, organic, diced, minced, ground, seasoned, flavored or breaded.

c.    "Complaint" shall mean the EUCPs' Fifth Consolidated Amended Class Action Complaint, Aug. 7, 2020 (ECF Nos. 3747 (Redacted) and 3748 (Sealed)).

d.    "Court" shall mean the United States District Court for the Northern District of Illinois.

e.    "Defendants" shall mean those defendants named in the Complaint.

f.    "EUCPs" shall mean Ian Adams, Angela Ashby, Linda Cheslow, Kenneth Cote, Kristin Davis, Abraham Drucker, James Flasch, Jr., Christina Hall, Matthew Hayward, Richard Heftel, Stephen Holt, Joshua Madsen, William David Marino, Dorothy Monahan, Dina Morris, Alison Pauk, Daniel Pearcy, Catherine Senkle, Diane Spell, Margaret ("Margo") Stack, Marilyn Stangeland, Eric Thomas, David & Leslie Weidner, Natalie Wilbur, and Michael Perry.

g.    "Final Approval" shall mean an order and judgment by the Court which finally approves this Settlement Agreement and the settlement pursuant to Federal Rule of Civil Procedure 23 and dismisses Agri Stats with prejudice from the Action.

h.    "Final Judgment" shall mean the first date upon which both of the following conditions shall have been satisfied: (a) Final Approval; and (b) either (l) thirty days have passed from the date of Final Approval with no notice of appeal having been filed with the Court; or (2) Final Approval has been

affirmed by a mandate issued by any reviewing court to which any appeal has been taken, and any further petition for review (including certiorari) has been denied, and the time for any further appeal or review of Final Approval has expired.

i. "Final" means the time when the Judgment approving this Stipulation, has not been reversed, vacated, or modified in any way and is no longer subject to review on appeal, either because of disposition on appeal and conclusion of all proceedings on appeal or because of the passage of the time to seek appellate review without action. More specifically, Final means the time when the last of the following shall have occurred with respect to the Judgment: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to appeal the Judgment has passed without any appeal having been taken; and (iii) if a motion to alter or amend is filed or if an appeal is taken, the determination of that motion or appeal, dismissal of the appeal, the expiration of any time for reconsideration or further appellate review, and/or the affirmance of the Judgment in a manner that permits the consummation of the Settlement in accordance with the terms and conditions of this Stipulation. For purposes of this paragraph, an "appeal" and "appellate review" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of the Settlement, provided, however, that "appeal" and "appellate review"

shall not include any appeal which concerns only issues relating to attorneys' fees, costs, or expenses, any Plan of Allocation of the Settlement Fund, or the procedures for determining Authorized Claimants' recognized claims, and any such appeal shall not delay or affect the time for the Judgment to become Final.

j.     "Parties" shall mean EUCPs and Agri Stats.

k.     "Preliminary Approval" shall mean an order by the Court to preliminarily approve this Settlement Agreement pursuant to Federal Rule of Civil Procedure 23.

l.     "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

m.     "Releasing Party" or "Releasing Parties" shall refer individually and collectively, to the Settlement Class and all members of the Settlement Class, including the EUCPs, each on behalf of themselves and their respective predecessors and successors; their current and former, direct and indirect parents, subsidiaries and affiliates; their present and former shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, attorneys, insurers, heirs, executors, administrators, devisees, representatives; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and any of their past, present and future agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and

divisions; and also means, to the full extent of the power of the signatories hereto to release past, present and future claims, persons or entities acting in a private attorney general, qui tam, taxpayer or any other capacity, whether or not any of them participate in this Settlement Agreement. As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common ownership or control with, in whole or in part, any of the Releasing Parties.

n.  "Settlement Administrator" shall mean the firm retained to disseminate the Settlement Class Notice and to administer the payment of Settlement Funds to the Settlement Class, subject to approval of the Court.

o.  "Settlement Class" shall mean the class defined in Paragraph 10 below.

## II.  SETTLEMENT

2.  <u>Settlement Consideration</u>. Agri Stats agrees to implement the conduct reform below in consideration for the release of Released Claims and the dismissal of the Action:

a.  Retain an experienced outside attorney with responsibility for antitrust compliance.

b.  Conduct annual employee antitrust compliance training;

c.  Implement a written antitrust compliance policy and training:

(i)  Prohibiting Agri Stats and its employees from disclosing to a competitor of a broiler subscriber, orally or in writing (including through custom reports), any non-public information collected from a broiler subscriber other than the anonymized information disclosed in Agri Stats' reports;

(ii)  Prohibiting any Agri Stats broiler report from containing actual competitor- or plant-level price or production volume data.

(iii)  Implementing data security measures to prevent broiler customer employees who transition from firm A to firm B from accessing firm A data.

(iv)     Implementing data security measures to prevent Agri Stats employees who transition to a customer firm from accessing non-public or non-anonymized Agri Stats data.

(v)      Prohibiting Agri Stats and its employees from assisting with identifying and/or de-anonymizing broiler subscriber data in Agri Stats' reports;

(vi)     Ensuring that all data values within all data fields in Agri Stats broiler reports consist of data from at least three entities[2] with no entity representing more than 70% of the data, except for quartile data fields and plant-level data fields (that are not removed as set forth in Exhibit A, as discussed below);

(vii)    Agri Stats will suppress any fields that have categorical values (for example a field that takes on values of YES and NO, or a plant shift field which lists the shifts a plant operates, or the breed processed at a particular plant) if any given value of that category has fewer than three firms. If, at any time, the number of plants increases or the number of firms that take on a particular value increases, the field no longer needs to be suppressed. Conversely if the number of plants decreases or the number of firms that take on a particular value decreases such that fewer than three firms take on a particular value, the field will be suppressed even if it had not been in the past;

(viii)   Requiring that, other than data available for anyone to purchase as set forth below, every data field in Agri Stats broiler reports shall be composed of data that is at least 45 days old on average;

d.      Implement provisions protecting confidentiality of competitor data in Agri Stats broiler customer contracts.

e.      Remove all participant lists in broiler reports.

f.      Remove all flags in broiler reports.

g.      Remove in the broiler reports made available to a report recipient all plant-level production-related data fields identified in Exhibit A for broiler subscribers other than the report recipient. Notwithstanding the foregoing, Agri Stats may provide to a subscriber a subscriber's rank and percentile for these data fields.

---

[2]      If the unit of the report is the plant, the 3-count rule should apply to plants; if the unit of the report is the firm, the 3-count rule should apply to firms.

h.    Modify the broiler reports as necessary to (1) delete variance fields and/or (2) suppress "linking" of data fields across reports that would otherwise disclose the plant-level data field identified in Exhibit A.

i.    Nothing in this Settlement Agreement prohibits or limits EMI's ability to provide nationwide average price data by product category for anyone (including consumers) to purchase. Agri Stats also shall publish a broiler performance report containing the production-related data fields identified in Exhibit B for anyone (including consumers) to purchase. Neither Agri Stats nor EMI may refuse a purchase of such reports on the basis that the purchaser is not a protein producer unless the persons or entities have unresolved claims pending against Agri Stats. The prices for such reports shall be no more than the average price being charged to Agri Stats' or EMI's regular customers as of the date of purchase. Except as set forth in this paragraph, nothing in this Settlement Agreement shall prohibit Agri Stats or EMI from adjusting or altering prices to any customer or adjusting other terms and conditions of purchase from time to time in its sole discretion. Such reports shall be made available without requiring the submission of data from subscribers, except that Agri Stats and EMI may continue to require processors to submit data.

j.    Agri Stats will not introduce any averages in any broiler reports or subsections that do not comply with the 3 entity / 70% rule set forth above.

k.    No non-public export data collected from a subscriber will be provided to any competitor other than the information disclosed in Agri Stats' regular broiler reports.

l.    Agri Stats will provide no forward-looking industry forecasts to broiler processors, including regarding how future industry production decisions might impact future prices or profitability. For the avoidance of doubt, nothing in the Settlement Agreement prohibits or limits EMI's ability to provide forward-looking industry forecasts based on publicly available data for anyone (including consumers) to purchase and EMI may not refuse such a purchase on the basis that the purchaser is not a protein producer unless the persons or entities have unresolved claims pending against Agri Stats.

m.    Agri Stats agrees that it will not re-add the plant-level data fields set forth in Exhibit A for subscribers other than the report recipient under a different numbering system, report, or mechanism for delivery to a report recipient. For the avoidance of doubt, nothing in the Settlement Agreement prohibits or limits 1) subscriber disclosure of data to Agri Stats or Agri Stats' addition of new reports or services, so long as such reports or services incorporate corresponding restrictions to those set forth herein; or 2) the renumbering and reordering of reports or data fields.

n. Agri Stats will not disclose any non-public data collected from a broiler subscriber to any competitor of the subscriber other than the anonymized information disclosed in Agri Stats' regular reports, including through electronic tools like the sales data miner, web application programming interfaces ["API"] services, or other web services provided by Agri Stats and/or its parents, subsidiaries, owners, or contractors. For the avoidance of doubt, nothing in the Settlement Agreement prohibits Agri Stats from providing broiler reports to subscribers in different electronic formats, so long as the format complies with the other provisions of this Settlement Agreement.

o. Agri Stats shall cease, and will not resume in the future, publication of any and all sales reports. Agri Stats shall cease, and will not resume in the future, publication of any and all price data for product categories that are not otherwise made available to the public from EMI pursuant to Paragraph 2(i).

p. With the exception of paragraph 2(o), this conduct relief shall remain in effect for five years.

q. Nothing in this Settlement Agreement shall be construed to prohibit Agri Stats from petitioning the Court for modification of the Conduct Relief for good cause shown.

r. This Section sets out the total scope of Agri Stats' Conduct Relief agreed upon by the parties, and Agri Stats shall have no further obligations other than or beyond those set forth in this Section.

3. <u>Parties Bear their Own Costs</u>. Other than the costs of notice, Agri Stats shall have no responsibility for any other costs, including Interim Co-Lead Counsel's attorneys' fees, costs, and expenses or the fees, costs, or expenses of any Plaintiff's or Class Member's respective attorneys, experts, advisors, or representatives, provided, however, that with respect to the Action, including this Settlement Agreement, Agri Stats shall bear its own costs and attorneys' fees.

### III. RELEASE

4. <u>Release</u>. Upon Final Judgment, the Releasing Parties shall completely release, acquit, and forever discharge the Agri Stats Released Parties from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any member of the Settlement Class has objected to the Settlement Agreement or makes a claim

upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now have, or hereafter can, shall, or may ever have, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, losses, damages, and the consequences thereof, including any claims of third parties that have been assigned to a Releasing Party and (to the extent the Releasing Party has the legal and contractual right to do so) any claims previously assigned by the Releasing Party to a third party, that have been asserted, or could have been asserted, under federal or state law, in any way arising out of acts or omissions through the date of Preliminary Approval relating in any way to the purchase of broilers produced, processed or sold by subscribers of the Agri Stats Released Parties or any of the Defendants or their Co-Conspirators (the "Released Claims"). Notwithstanding the above, "Released Claims" do not include (i) claims asserted against any Defendant other than the Agri Stats Released Parties; (ii) any claims wholly unrelated to the allegations in the Action that are based on breach of contract, any negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, or product defect; or (iii) damages claims under the state or local laws of any jurisdiction other than a Repealer Jurisdiction. This reservation of claims set forth in (i), (ii) and (iii) of this paragraph does not impair or diminish the right of the Agri Stats Released Parties to assert any and all defenses to such claims. The release of the Released Claims will become effective as to all Releasing Parties upon Final Judgment. Upon Final Judgment, the Releasing Parties further agree that they will not file any other suit against the Agri Stats Released Parties arising out of or relating to the Released Claims.

5.	Further Release. In addition to the provisions of Paragraph 4, the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon Final

Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code (providing, "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.") and Section 20-7-11 of the South Dakota Codified Laws (providing, "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.") or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code or Section 20-7-11 of the South Dakota Codified Laws. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 4, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties have agreed to release pursuant to Paragraph 4, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

### IV. APPROVAL OF SETTLEMENT AGREEMENT

6. <u>The Parties' Efforts to Effectuate this Settlement Agreement</u>. The Parties shall cooperate in good faith and use their best efforts to seek the Court's Preliminary Approval and Final Approval of the Settlement Agreement.

7. <u>Motion for Preliminary Approval</u>. Within five (5) days of the signing of the settlement agreement, Class counsel will make best efforts to move for preliminary approval in the District Court or as otherwise agreed upon by the parties in writing. Within a reasonable time in advance of submission to the District Court, the papers in support of the motion for Preliminary Approval shall be provided by Co-Lead Class Counsel to Agri Stats for its review. To the extent that Agri Stats objects to any aspect of the motion, it shall communicate such objection to Co-Lead Class Counsel, and the Parties shall meet and confer to regarding any such objection. The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval and certification of the Certified Class.

8. <u>Certification of a Settlement Class</u>. As part of the motion for Preliminary Approval of this settlement, EUCPs shall seek, and Agri Stats shall take no position with respect to, appointment of Lead Counsel as Settlement Class Counsel for purposes of this settlement and certification in the Action of the following Settlement Class:

> All persons and entities who indirectly purchased the following types of raw chicken, whether fresh or frozen: whole birds (with or without giblets), whole cutup birds purchased within a package, breast cuts or tenderloin cuts, but excluding chicken that is marketed as halal, kosher, free range, organic, diced, minced, ground, seasoned, flavored or breaded—from defendants or co-conspirators for personal consumption in the Repealer Jurisdictions from January 1, 2012 to July 31, 2019.

9. <u>Settlement Class Notices</u>. The Settlement Class Notice shall provide for a right to object to the proposed Settlement. Individual notice of the Settlement to all Settlement Class Members who can be identified through reasonable effort shall be emailed to the Settlement Class in conformance with a notice plan to be approved by the Court. Lead Counsel will undertake all reasonable efforts to notify potential Settlement Class Members of the settlement. The timing of a motion to approve notice to the Settlement Class of this Settlement Agreement ("Notice Motion")

shall be in the discretion of Lead Counsel. The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice.

10.     Cost of Settlement Class Notice. Agri Stats will pay half of, but in no event more than $23,000, toward the costs of notice. EUCP will provide Agri Stats with invoices from the claims administrator at the end of the notice period and upon demand.

11.     Motion for Final Approval and Entry of Final Judgment. If the Court grants Preliminary Approval and certifies the Settlement Class, then EUCPs, through Lead Counsel — in accordance with the schedule set forth in the Court's Preliminary Approval shall submit to the Court a separate motion for Final Approval of this Settlement Agreement by the Court. A reasonable time in advance of submission to the Court, the papers in support of the motion for Final Approval shall be provided by Lead Counsel to Agri Stats for its review. To the extent that Agri Stats objects to any aspect of the motion, it shall communicate such objection to Lead Counsel and the parties shall meet and confer about any such objection. The motion for Final Approval shall seek entry of an order and Final Judgment:

a.     Finally approving the Settlement Agreement as being a fair, reasonable, and adequate settlement for the Settlement Class within the meaning of Federal Rules of Civil Procedure 23, and directing the implementation, performance, and consummation of the Settlement Agreement;

b.     Determining that the Class Notice constituted the best notice practicable under the circumstances of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

- 14 -

c.   Dismissing the Action with prejudice as to Agri Stats in all class action complaints asserted by EUCPs;

d.   Discharging and releasing Agri Stats Released Parties from all Released Claims;

e.   Enjoining EUCPs and members of the Settlement Class from suing any of the Agri Stats Released Parties for any of the Released Claims;

f.   Confirming that Agri Stats has provided the appropriate notice pursuant to the Class Action Fairness Act, 28 U.S.C. 5171 1, *et seq*.

g.   Ordering Agri Stats to implement the conduct reform set forth in paragraph 2 above;

h.   Reserving continuing and exclusive jurisdiction over the Settlement Agreement for all purposes; and

i.   Determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Agri Stats shall be final and appealable and entered forthwith.

The Parties shall take all reasonable steps to obtain Final Approval of the Settlement Agreement.

12.   Effect of Disapproval or Rescission.   If the Court does not certify the Settlement Class as defined in this Settlement Agreement, or if the Court does not approve this Settlement Agreement in all material respects, or if the Court does not enter Final Approval as provided for in Paragraph 11 herein, or if any judgment approving this Settlement Agreement is materially modified or set aside on appeal, or if all of the conditions for Final Judgment do not occur as set forth in Paragraph 1(h) of this Settlement Agreement, then this Settlement Agreement may be

cancelled and terminated by Agri Stats, or by EUCPs on behalf of the Settlement Class. If cancelled and terminated, this Settlement Agreement shall become null and void.

13.     Litigation Standstill. EUCPs shall immediately suspend all proceedings and activities with respect to Agri Stats in the Action pending approval of the Settlement Agreement. Similarly, Agri Stats shall immediately cease all participation in EUCP pretrial proceedings other than reporting to the Court on the status of the Settlement Agreement.

## V.     MISCELLANEOUS

14.     Choice of Law and Dispute Resolution. Any disputes relating to the Parties' agreement shall be governed by Illinois law without regard to conflicts of law provisions. Subject to Court approval, the United States District Court for the Northern District of Illinois shall retain jurisdiction over the implementation, enforcement, and performance of this Settlement Agreement and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement.

15.     Consent to Jurisdiction.  The Parties and any Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of Paragraph 4 or 5, including but not limited to, any suit, action, or proceeding in which the provisions of Paragraph 4 or 5 are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Settlement Agreement. In the event that the provisions of Paragraph 4 or 5 are asserted by any Agri Stats Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such Agri Stats Released Party shall be entitled to a stay of that suit, action, or

proceeding until the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Parties and any Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the in personam jurisdiction of the Court. Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Settlement Agreement.

16.     Class Action Fairness Act. Within ten (10) days of filing of this Settlement Agreement in court with the abovementioned motion for preliminary approval, Agri Stats, at its sole expense, shall serve upon appropriate Federal and State officials all materials required pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and shall confirm to EUCPs' Lead Counsel that such notices have been served.

17.     Costs Relating to Administration. The Agri Stats Released Parties shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Funds.

18.     Binding Effect. This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein. This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Settlement Class Members, the Releasing Parties, and the Agri Stats Released Parties. Without limiting the generality of the foregoing, upon certification of the Settlement Class and Final Approval, each and every covenant and agreement herein by the EUCPs shall be binding upon all members and potential members of the Settlement Class and Releasing Parties.

19. Sole Remedy. This Settlement Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any Agri Stats Released Party, and upon entry of Final Judgment, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any Agri Stats Released Party.

20. Counsel's Express Authority. Each counsel signing this Settlement Agreement on behalf of a Party or Parties has full and express authority to enter into all of the terms reflected herein on behalf of each and every one of the clients for which counsel is signing.

21. Admissible in Case of Dispute. It is agreed that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Parties' agreement or for any other purpose with respect to implementing or enforcing this Settlement Agreement, including as evidence of the Release granted herein.

22. Notices. All notices under this Settlement Agreement shall be in writing. Each such notice shall be given (1) email and (2) either by: (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express or similar overnight courier, and, in the case of either (a), (b) or (c) shall be addressed:

If directed to EUCPs, the Settlement Class, or any member of the Settlement Class, to:

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, California 94710

Brent W. Johnson
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Avenue NW
Suite 500, West Tower
Washington, DC 20005

If directed to Agri Stats, notice shall be sent to:

William L. Monts (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

*Counsel for Defendant Agri Stats, Inc.*

or such other address as the Parties may designate, from time to time, by giving notice to all parties hereto in the manner described in this Paragraph.

23.     No Admission. Whether or not Final Judgment is entered or this Settlement Agreement is terminated, the Parties expressly agree that this Settlement Agreement and its contents, and any and all statements, negotiations, documents, and discussions associated with it, are not and shall not be deemed or construed to be an admission of liability by any Party or Agri Stats Released Party.

24.     No Third-Party Beneficiaries.  No provision of this Settlement Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Agri Stats Released Party, EUCP, member of the Settlement Class, or Lead Counsel.

25.     No Party is the Drafter.  None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

- 19 -

26.    Amendment and Waiver. This Settlement Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party. The waiver by any Party of any particular breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement. This Settlement Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Settlement Agreement. Any breach of this Settlement Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

27.    Execution in Counterparts. This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement. Facsimile or Electronic Mail signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

28.    Integrated Agreement. This Settlement Agreement (including all Exhibits) comprise the entire, complete, and integrated agreement between the Parties, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between the Parties. The Parties agree that this Settlement Agreement may be modified only by a written instrument signed by the Parties and that

- 20 -

no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

29. <u>Voluntary Settlement</u>. The Parties agree that this Settlement Agreement was negotiated in good faith by the Parties, and reflects a settlement that was reached voluntarily after consultation with competent counsel, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized representatives, enter into this Settlement Agreement on the date first above written.

DATED: March 30, 2026

Shana E. Scarlett
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

*Co-Lead Counsel for the End-User Consumer*
*Indirect Purchaser Plaintiff Class*

Brent W. Johnson
Benjamin D. Brown
Daniel H. Silverman
Alison Deich
**COHEN MILSTEIN SELLERS & TOLL, PLLC**
1100 New York Avenue NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com
dsilverman@cohenmilstein.com
adeich@cohenmilstein.com

*Co- Lead Counsel for End-User Consumer*
*Indirect Purchaser Plaintiff Class*

- 21 -

- 22 -

DATED: March 30, 2026

HOGAN LOVELLS US LLP

By: _____
JUSTIN BERNICK

Justin W. Bernick (*pro hac vice*)
William L. Monts (*pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
justin.bernick@hoganlovells.com
william.monts@hoganlovells.com

*Counsel for Agri Stats, Inc.*

**EXHIBIT A**

**PLANT PROCESSING REPORT**
1.2 Total Plant Cost w/o P.M. Shrink Cost (cents/lb) [o]
1.3 Total Plant Cost (cents/bird) [o]
2.1 First Processing Cost [j]
2.2 Wogs/M.H. First Processing [c, g, g.1, h, i]
2.4 Line Efficiency – 1st Processing [a, a.1, a.2, e, e.1, f, g]
2.5 Staffing First Processing /140 Bird Evis Line [a.2, a.3, b.1, c.1, d.1, f, g, g.1, j]
2.7 Utility Expense [j]
2.8 Depreciation (Cents/5.2 Lb Wog) [a.2, c.2, d.3, g]
2.10 First Processing Wog Index [e]
4.1 Summary of Support Departments [n, o]
4.2 Sanitation Department [b.1, b.2, b.3, b.4, b.5, g, j]
4.3 Maintenance Department [b.1, b.2, b.3, b.4, h]
4.4 Water & Sewage Cost [a.2, b, b.1, c.2, f]
4.6 Quality Assurance Dept [e]
4.7 Medical/Safety Dept [c]
5.4 Birds/Manhour-Second Process [a.2]
5.8 Cutup Labor Cost [a.2 and a.3, b.3,]
5.9 Fast Food Labor Cost [a.2 and a.3, b.3,]
5.10 Breast Debone Labor Cost [a.2 and a.3, b.3,]
5.10a Trimmed/Sized/Portioned Breast Labor Cost [a.2]
5.11 Dark Meat Debone Labor Cost [a.2 and a.3, b.3,]
5.11a Whole Leg Debone Labor Cost [a.2 and a.3, b.3,]
5.11b Thigh Debone Labor Cost [a.2 and a.3, b.3,]
5.14 IQF Labor Cost [a.2 and a.3, b.3,]
5.22 Shipping Labor Cost [a.2 and a.3, b.3,]

**OPERATIONS PROFIT REPORT**
1.1 Operations Profit per Live Lb [a, a.1, a.2, a.3, a.4, c, c.1, c.2, e, e.1, e.2, h, h.2, i, i.1, i.2, i.3]
1.2 Ranking for Operations Profit per Live Pound [Rows giving rank of: Net Sales Price, Margin over Processing, Yielded Margin over Processing, and Operations Profit per Good Live Pound]
1.3 Other Profits [a, a.1, a.2, a.3, a.4, b, b.1, b.2, b.3, c.3, d.3, e.3, f.3]
1.4 Yielded Margin over Profits [a, a.1, a.2, a.3, a.4, b, b.1, b.2, c, c.1, c.2, c.3]
1.5a Plant YMOP Variance Contributions [c.2, c.3, d.2, d.3, e.2, f.2, f.3, g.2]
1.7 Sales Impact on Operations Profit [b, b.1, b.2, b.3, e.2, e.4, e.7]
1.7a Ranking for Sales Impact on Operations Profits [Rows giving rank of: Invoice Price, Net Dock Price]

**FURTHER PROCESSING OPERATIONS PROFIT REPORT**
OP1.1 Operations Profit per Finished Lb [a, a.1, a.2, a.3, a.4, a.5, a.6, d, d.1, d.2, f, f.2, g, g.1, g.2]
ESR Executive Summary Report [f, m]
ESR-Ranked [f, j, m]

- 23 -

ESR-ADJ [f, j, m]

**LIVE OPERATIONS REPORT**
1.1 Breeder Chick Placements by Flock [a, b]
1.2 Monthly Breeder Chick Placements by Plant [a, a.1, a.2, b, b.1, b.2, c.1, d.1, e.1, f.1, g.1, h.1, i.1, j.1]
1.4 Replacement Pullet Cost by Flock [k]
1.26 Completed Breeder Cost by Flock [l]
1.27 Combined Completed Breeder Cost by Plant [k]
1.28 Completed Breeder Performance by Flock [h]
1.29 Combined Completed Breeder Performance by Plant [g]
2.1 Hatchery Department Cost [l]
2.2 Hatching Cost Report [k]
2.3 Hatchery Labor Performance [e, e.1, e.3]
2.5 Hatchery Utility Performance [h]
2.10 Labor Performance vs Equipment: [e]
3.2 Feed Manufacturing Cost [k]
3.3 Feed Manufacturing Labor Performance [e, e.1, e.2, e.3, e.4, e.5, e.6]
3.5 Feed Manufacturing Utility Performance [h]
6.5 Housing Expense Report: [a.2]
6.5a Housing Expense Detail: [a.2]
6.12 DOA & Live Haul Expense [c.1, l]
6.13 Catching Expense [k]
6.14 Hauling Cost per Pound [i.7, k]
6.16 Growout Dept Expenses: [d, , g]

**BOTTOM LINE ANALYSIS**
1.1 Pre-Tax Profits – Cents/Live Lb [all]
1.2 Pre-Tax Profits – Cents/Produced Lb [all]
1.3 Pre-Tax Profits – Cents/Bird [all]
1.4 Ratio Analysis [all]

- 24 -

**EXHIBIT B**

**BROILER LIVE**
1.1 Breeder Chick Placements [a Pullets Placed, b Male Chicks Placed], to be published only at aggregate level
1.5 Pullet Replacement Cost [k Number of Pullets Capitalized], to be published only at aggregate level
2.2 Hatching Cost Report [l Average Weekly Egg Set Capacity, k % Hatchery Utilization, o Number of Chicks Hatched] to be published only at aggregate level
6.1 Live Production Cost [r Birds Settled, r.1 Pounds Settled], to be published only at aggregate level

**BROILER PROCESSING**
1.1 Dressed Meat Cost [Live Birds Received, Live Pounds Received, Packed Pounds], to be published only at aggregate level

- 25 -