**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

IN RE BROILER CHICKEN ANTITRUST
LITIGATION

No. 16 C 8637

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

On October 27, 2021—more than 54 months ago—Counsel for the End-User Class filed a motion for attorneys' fees, expenses and class representative awards. *See* R. 5160. That motion was opposed by two objectors: John Andren and Shiyang Huang. *See* R. 5167; R. 5182. After considering the objections, the Court awarded Class Counsel one-third of the settlement common fund. *See* R. 5855 (*In re Broiler Chicken Antitrust Litig.*, 2022 WL 6124787, at *1 (N.D. Ill. Oct. 7, 2022)). On appeal, the Seventh Circuit vacated the award with instructions to provide "greater explanation and consideration of [certain] information." *In re Broiler Chicken Antitrust Litig.*, 80 F.4th 797, 805 (7th Cir. 2023). The Seventh Circuit "express[ed] no preference as to the amount or structure of the award." *Id.*

On remand, this Court followed the Seventh Circuit's directions and recalculated an award amount of 30% of the settlement fund. *See* R. 7309 (*In re Broiler Chicken Antitrust Litig.*, 2024 WL 3292794, at *1 (N.D. Ill. July 3, 2024)). On appeal, the Seventh Circuit again vacated the award, holding that this Court had improperly considered "a sampling of ex post awards" that was "skewed" and not "a representative sample." *In re Broiler Chicken Antitrust Litig.*, 142 F.4th 568, 575 (7th

Cir. 2025). The Seventh Circuit found the "sampling" of ex post awards to be "skewed" despite the awards being public record and the objectors failing to submit a countervailing sample. Ultimately, the Seventh Circuit held that "class counsel are entitled to 26.6% of the net common fund," and remanded the case "for further proceedings." *Id.* at 576.

## I.     The Fee Award Percentage

The Court invited briefing from the parties regarding how to apply the Seventh Circuit's order. Objectors concede that Class Counsel is entitled to an attorney fee award of 26.6% of the "first round of settlements" totaling $181 million, which is an award of $45,805,200. *See* R. 7856-1 at 8. With regard to "further settlements" totaling $22.35 million, *see* R. 7856-1 at 9, the Objector Shiyang Huang agrees that a 26.6% attorney fee award is also appropriate. However, Objector John Andren disagrees and argues that the proper attorney fee award percentage should decrease as the settlement amount increased. Andren argues that this decreasing fee scale was part of the "methodology" affirmed by the Seventh Circuit. *See* R. 7919 at 5 (arguing that the Seventh Circuit "affirmed the technique for calculating the fee award—not percentage").

Andren's argument is based on the fact that the award in the case *Interest Rate Swaps* played an integral role in the Court's prior award and the Seventh Circuit's modification of that award. The court in *Interest Rate Swaps* applied a declining fee scale to determine the award in that case. As the Seventh Circuit noted, the parties here agreed that if the *Interest Rate Swaps* approach were applied in this case, Class

2

Counsel "would be entitled to . . . 26.6% of the common fund." *Broiler Chicken*, 142 F.4th at 572 (noting that "nobody disputes" this). This Court incorporated that percentage into its calculation, and the Seventh Circuit affirmed that part of the Court's approach.

Andren argues that according to the *Interest Rate Swaps* scale the increase in the settlement fund results in a lower award percentage for the "further settlement" amounts here. The Court has no reason to dispute Andren's calculation, and Class Counsel do not argue that it is incorrect. But the Court agrees with Class Counsel that Andren's revised calculation is beside the point. Andren is simply incorrect that the Seventh Circuit "affirmed a technique." True, the Seventh Circuit held that this Court's manner of calculating the award percentage was not an abuse of discretion, and the Seventh Circuit largely adopted it, save for inclusion of the "skewed" data. But neither this Court nor the Seventh Circuit applied the *Interest Rate Swaps* declining scale. Rather, both this Court and the Seventh Circuit merely included the 26.6% award in calculating the appropriate award in this case, while giving it greater weight because of *Interest Rate Swaps* being similar to this case and the fact that it was a negotiated ex ante fee agreement. Having included the *Interest Rate Swaps* percentage in its calculation, the Seventh Circuit expressly and directly held that "class counsel are entitled to 26.6% of the net common fund," without reference to or reliance on the declining fee scale employed by the court in *Interest Rate Swaps*. A flat 26.6% is the percentage the Seventh Circuit ordered in this case. The additional

3

$22.35 million is now part of the "net common fund" so Class Counsel is entitled to 26.6% of that amount.

## II.     Research Costs

However, Objector Huang argues that the net settlement fund should increase because Class Counsel is not entitled to seek reimbursement for the cost of electronic research. He cites the Seventh Circuit's decision in *Montgomery v. Aetna Plywood* in support of his argument that electronic legal research costs are "not separately recoverable" as costs but "are simply subsumed in the award of attorneys' fees." R. 7932 (quoting *Montgomery v. Aetna Plywood, Inc.,* 231 F.3d 399, 409-10 (7th Cir. 2000), and *Goesel v. Boley Int'l (HK),* 806 F.3d 414, 424-25 (7th Cir. 2015)). In response, Class Counsel cites some statements from the Seventh Circuit that might be understood to undermine the rational for prohibiting awards of research costs. *See* R. 7946 at 4-5. But Class Counsel concedes that none of these more recent Seventh Circuit cases have overturned *Montgomery*. *See id.* at 6. Therefore, in accordance with *Montgomery*, the Court removes electronic research costs from the costs awarded to Class Counsel. *See also Craftwood II, Inc. v. Generac Power Sys., Inc.*, 63 F.4th 1121, 1129 (7th Cir. 2023) ("We made clear in *Haroco, Inc. v. Am. Nat'l Bank & Trust Co.*, 38 F.3d 1429, 1440 (7th Cir. 1994) that computerized research costs are not recoverable under 28 U.S.C. § 1920, as they are not specifically enumerated in the statute, and are instead considered a form of attorneys' fees."). Huang notes that the relevant amount is $36,294.38. *See* R. 5161-1 at 13 ($25,710,37); R. 7856-1 at 19 ($10,584.01). Class Counsel does not dispute this.

Subtracting $36,294.38 from the expenses sought by Class Counsel decreases reimbursable costs to $9,877,798.48. Decreasing the reimbursable costs also has the effect of increasing the net settlement fund to $184,622,201. *See* R. 7856-1 at 8-9 (tables). Taking 26.6% of $184,622,201 results in a fee award of $49,109,505.47.

## III.    Interest

The Objectors also argue that Class Counsel have miscalculated their share of the interest that has accrued on the settlement fund. Class Counsel concede this error and agree that they "will accept interest of $1,179,096.56." R. 7946 at 3. This amount of course is separate from the net settlement fund.

## IV.    Objector Awards

Both Objectors seek awards for their success in increasing the portion of the settlement fund that will be distributed to the Class. The Seventh Circuit has explained that under "the principles of restitution," those who confer a "material" benefit on the class are permitted "to claim a reasonable professional fee from the recipient of their services." *See Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 288 (7th Cir. 2002); *see also In re Southwest Airlines Voucher Litig.*, 898 F.3d 740, 745 (7th Cir. 2018) ("[B]ecause of the skewed incentives in some class action settlements, objectors who bring those incentives back into balance by increasing a settlement's benefit to a class may be compensated for their efforts.").

Addressing Objector Huang's claim first, the Court finds that the Class benefited from his argument that expenses should be deducted from the settlement fund before fees are calculated. Huang seeks $2,000 for causing that benefit and he

5

shall have it. Andren will not receive credit for that benefit because Huang identified it first.

Next, there can be no question that Andren's objection resulted in a material benefit for the class. Absent Andren's objection, the Court would have awarded Class Counsel one-third of the settlement fund before deduction of expenses, whereas now Class Counsel will receive 26.6% of the net settlement fund.

In light of the Court's finding that electronic research costs are not reimbursable, the current total net settlement fund is $184,622,201. *See* R. 7856-1 at 8-9 (tables). One-third of $184,622,201 is $61,540,733.67, whereas 26.6% of that amount is $49,109,505.47. The difference is $12,431,228.20. Therefore, the Court finds that Andren saved the Class $12,431,228.20.[1]

Andren suggests that the baseline for an objector's fee is to apply the fee percentage awarded to Class Counsel to the amount saved by the objector. In other words, Andren argues that his fee request should be evaluated in light of the fact that 26.6% of the saved amount equals a little more than $3.3 million. Alternatively, Andren points out that some courts have awarded objectors a percentage of the class counsel's fee award equal to the percentage of the net settlement fund saved by the

---

[1] Unlike the Court, the parties calculate the benefit by comparing (1) the dollar amount of the fee award initially sought by Class Counsel, to (2) the dollar amount of the fee award they seek now. This complicates the analysis because Class Counsel's initial request was made before deducting costs, and also implicates a mathematical mistake made on appeal. *See* R. 7921 at 6. These complications are avoided by instead comparing the difference between (1) the dollar amount that results from the original percentage awarded, to (2) the dollar amount that results from the percentage ordered by the Seventh Circuit, which is what the court has done here.

objector. In other words, in this case, Andren saved the Class $12,431,228.20, which is 6.73333% of the net settlement fund of $184,622,201. And 6.73333% of Class Counsel's fee award of $49,109,505.47 is a little more than $3.3 million. Of course, the results are the same under either method of calculation because the two methods are identical save for the order of operations.

Rather than ask for the entire $3.3 million, Andren seeks "slightly less than 6.6% of the common benefit obtained," as he calculated it, which comes to a request for an award of $947,000. *See* R. 7863 at 7. Andren does not explain how he settled on this percentage. But he argues that because there is authority supporting an award of up to $3.3 million, his request for a fraction of that amount is presumptively reasonable. He also argues that a cross-check against his counsel's lodestar confirms that his request is reasonable and appropriate.

The Court agrees with Andren that he is *not* entitled to 26.6% of the amount he saved, *nor* is he entitled to 6.73333% of Class Counsel's award. Rather, only a smaller fraction of the amount saved or Class Counsel's award is reasonable. That makes sense because Adren is not entirely responsible for the saved amount. That saved amount is only available to the Class because of the work performed by Class Counsel. In other words, Andren could only "save" it because Class Counsel produced it in the first place.

Contrary to some of the rhetoric used by both sides, the issue here is not one of greed or ill will on the part of either side. Both Class Counsel and Andren (and Huang) seek to benefit the Class and be properly compensated for their work. Casting

7

aspersions is counter-productive and creates a false characterization of the conduct of either side. Both Class Counsel and Andren have performed a service for the Class, society, and the legal system. Nevertheless, it is reasonable for Class Counsel's fee percentage to be greater than Andren's percentage, because the risks and work associated with bringing a federal lawsuit, particularly a complex antitrust class action like this one, are substantially greater than the risks and work associated with objecting to a fee award.

Instead of awarding Andren 26.6% of the amount saved, or 6.73333% of the amount awarded to Class Counsel, the better way to identify the value of the benefit conferred to the Class by Andren's work is by applying the percentage of the amount saved, i.e., 6.73333%, to the amount saved itself, i.e., $12,431,228.20. As discussed, the decrease in Class Counsel's fee award of $12,431,228.20 is 6.73333% of the resulting net settlement fund. That percentage—6.73333%—is a good proxy for the value of Andren's work. In other words, because Andren saved the Class 6.73333%, he should receive 6.73333% of the amount he saved. And 6.73333% of $12,431,228.20 equals a $837,035.62 award for Andren.[2]

The propriety of this method is confirmed with a cross check to Andren's counsel's lodestar. Andren's counsel claims a lodestar of $711,355. Andren also points out that the Laffey Matrix—a chart of hourly rates published by the U.S. Attorney's Office for the District of Columbia—provides a lodestar for Andren's counsel of

---

[2] This percentage and the resulting dollar amount are quite similar to what Andren requests, so perhaps Andren also applied the percentage of the amount saved to the amount saved itself as the Court has done here.

$923,397. The Court's calculation provides an award right in the middle of these two numbers.

Class Counsel argues that Andren's lodestar is inaccurate for several reasons. First, Class Counsel argues that Andren's lodestar should be decreased because it includes hours worked on discovery motions that did not benefit the class. Class Counsel picks aspects of Andren's discovery motion that the Court denied and argues that work on those aspects of the motion should not be compensable. But the Court granted certain aspects of Andren's motion, and as Andren points out, his demand for discovery ultimately resulted in the disclosure of the *Interest Rate Swaps* case which became key to this Court's and the Seventh Circuit's calculation of the final award. There is no reason to discount Andren's lodestar on this basis. Certainly, Class Counsel would not want their lodestar calculated in that way.

Next, Class Counsel take issue with the description of certain tasks provided by several of Andren's attorneys. *See* R. 7921 at 17. Andren provides sufficient explanation for the meaning of these descriptions, *see* R. 7947 at 9, such that the Court finds the hours worked associated with those descriptions are properly included in the lodestar.

Lastly, Class Counsel argues that $164,255 in fees based on "reconstructed" hours rather than contemporaneous time records should be decreased by half for purposes of the lodestar. The time at issue is for attorney Theodore Frank. Mr. Frank argued the Seventh Circuit appeals. While there is a strong preference for contemporaneous time records, Mr. Frank's role in this litigation is obvious, and two

weeks' worth of work (172 hours divided by 12 equals fourteen 12-hour days) is reasonable preparation for two significant Seventh Circuit appeals. There is no reason to decrease Mr. Frank's lodestar under these circumstances, despite the lack of contemporaneous time records.

Separate from the lodestar, Class Counsel argues that the percentage-of-benefit method the Court has applied is contrary to the "market" for objector awards. *See* R. 7921 at 19. But as Andren points out, there is no "market" for objector work, because the mission of the institute that employs Andren's counsel is sui generis. *See* R. 7947 at 1.

Implicitly acknowledging this fact, what Class Counsel actually argues is that their research shows that many courts have awarded objectors a lower percentage than the Court has calculated on here. *See* R. 7921 at 10 (arguing that "in the cases where objectors claimed to have generated benefits over $10 million . . . their median award was just 2.04% of the benefit"). The Court has no basis to question the accuracy of Class Counsel's research on this issue. But the median percentage identified by Class Counsel is a product of an extremely wide range of award percentages. *See* R. 7921-3 (ranging from 0.05% to 29.9%, and with dollar amounts ranging from $7,354.90 to $21,827,042.00). With a range that great, the median says little about how a court should determine the appropriate award in a particular case. No clear principle is discernable from this data.

Perhaps a regression analysis of the data provided by Class Counsel might be helpful. But the Court does not have the ability to perform such analysis. Moreover,

10

"the need for uniformity in attorneys' fees awards is not great enough to warrant" it. *See Siddiqui v. Nat'l Ass'n of Broad. Emps. & Technicians*, 132 F.4th 530, 533 (7th Cir. 2025). It is unnecessary to conduct such a scientific analysis to determine an award when the United States Supreme Court has explained that trial courts are not required "to achieve auditing perfection" in determining fee awards. *See Fox v. Vice,* 563 U.S. 826, 838 (2011). All that is required is that the Court "'provide a reasonably specific explanation for all aspects of a fee determination.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 651 (7th Cir. 2011) (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 558 (2010)). The Court has provided such an explanation here.

## V.     Source of Objector Awards

Lastly, Huang's award and Andren's counsel's award will be paid out of the net settlement fund and not deducted from Class Counsel's fee award. *See Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) ("When an objector recovers attorney's fees, the fee award is drawn from the settlement fund, and the total award to the class is diminished."); *see also Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012) ("[T]he objectors may claim entitlement to fees on the same equitable principles as class counsel."); *In re Transpacific Passenger Air Transportation Antitrust Litig.*, 2015 WL 4776946, at *2 (N.D. Cal. Aug. 13, 2015) (finding that "objectors fees and expenses" are "commonly" awarded "from the common fund").

Andren argues that his award should be deducted from Class Counsel's fee award because "Class Counsel initially proposed to allocate an excessive portion of the settlement fund to themselves." R. 7863 at 13. According to Andren, Class

11

Counsel "betrayed the interests of the absent class members," and so Class Counsel should bear the cost of correcting that betrayal. *Id.* at 14.

As discussed above, the Court finds this characterization entirely unhelpful and inaccurate. Certainly, the Seventh Circuit has decided what is the proper fee in this case, and it is less than what Class Counsel initially sought. But there is significant precedent supporting Class Counsel's initial request for one-third of the settlement fund. Indeed, this Court initially found it to be reasonable. Furthermore, in addition to protecting the interests of the Class, Andren's goal in bringing this objection is to counter what is the common practice in this district and other courts around the country of awarding attorneys' fees of one-third. Class Counsel's request was in line with what is so commonly awarded that Andren's counsel has made it their mission to change the law. Just as Andren's counsel should be applauded for their work in changing the law, Class Counsel should not be pilloried for following what the law was previously.

Andren provided a benefit to the Class. But that benefit was not protection from "betrayal" by Class Counsel. It was merely clarification of the law in this Circuit. That is a benefit to the Class. But it is a benefit the Class must pay for. And there is no reason to diminish the compensation Class Counsel is owed for the extensive and excellent work they provided to the Class in litigating claims on the Class's behalf.

## Conclusion

Therefore, the End-User's motion [7702] is granted in part and denied in part; Huang's motion [7847] is granted; and Andren's motion [7863] is granted in part and denied in part, as follows:

- End-User Class Counsel are awarded $49,109,505.47 in fees, plus $1,179,096.56 in interest, plus 26.6% of any interest that has accrued in the meantime;

- End-User Class Counsel are awarded $9,877,798.48 in reimbursement of litigation expenses and claims administration costs

- End-User Class Representatives are each awarded $2,000 services awards, with the exception of two representatives who are married and will share a single $2,000 award;

- Huang is awarded $2,000;

- Andren's counsel is awarded $837,035.62 in fees and $3,795.20 in costs.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: May 21, 2026