IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION<br><br>This Document Relates To: All Actions | Case No.16 C 8637<br><br>Magistrate Judge Karyn L. Bass Ehler |

**MEMORANDUM OPINION AND ORDER**

Certain Defendants' Emergency Motion to Quash and for Protective Order Regarding Plaintiffs' Subpoena ("Motion") [8382] is granted in part and denied in part for the reasons discussed below.[1]

**I. Background and Recent Procedural History**

Certain Moving Defendants ("Defendants") seek a protective order pursuant to Federal Rule of Civil Procedure 26(c)(1) and ask the Court to enter an order: (1) quashing the Rule 45 subpoena dated April 15, 2026 that Direct Action Plaintiffs Aldi, Inc., Sodexo, Inc., and Sodexo Operations LLC ("Certain DAPs" or "DAPs") served on the United States Attorneys' Office for the District of Columbia ("DOJ") seeking documents related to the criminal proceedings in *United States v. Penn, et al.*, No. 1:20-cr-00152 (D. Colo.), and *United States v. McGuire, et al.*, No. 1:21-cr-00246 (D. Colo.); (2) directing any party in possession of the subpoenaed materials that already

---

[1] Certain Moving Defendants include George's, Inc., and George's Farms, Inc.; Foster Farms, LLC, and Foster Poultry Farms LLC; Case Foods, Inc., Case Farms, LLC, and Case Farms Processing, Inc.; Simmons Foods, Inc., and Simmons Prepared Foods, Inc.; Mar-Jac Poultry, Inc., Mar-Jac Poultry AL, LLC, Mar-Jac Poultry MS, LLC, Mar-Jac AL/MS, Inc., Mar-Jac Poultry, LLC, and Mar-Jac Holdings, Inc.; Perdue Farms, Inc., and Perdue Foods LLC; Norman W. Fries, Inc., d/b/a Claxton Poultry Farms; Wayne Farms LLC; Sanderson Farms, LLC (f/k/a Sanderson Farms, Inc.), Sanderson Farms Foods, LLC (f/k/a Sanderson Farms, Inc. (Foods Division)), Sanderson Farms Production, LLC (f/k/a Sanderson Farms, Inc. (Production Division)), and Sanderson Farms Processing, LLC (f/k/a Sanderson Farms, Inc. (Processing Division)); and House of Raeford Farms, Inc. In their Reply Brief [8397], Defendants note that due to a clerical error the Koch Defendants (Koch Foods Incorporated; JCG Foods of Alabama LLC; JCG Foods of Georgia LLC; and Koch Meat Co., Inc.) were inadvertently left off the signature block of the Motion, but they are parties to the Motion.

have been produced by the DOJ to destroy the documents; (3) preventing any party from using or relying on the documents or information gained from the DOJ's Rule 45 production as evidence in this case; and (4) vacating the "Stipulated Protective Order" [8364] entered by this Court on April 27, 2026 that was agreed to by only the DOJ and the three DAPs that served the Rule 45 subpoena at issue. The Court assumes the parties' familiarity with the relevant underlying facts and will not recount them in this Order. The Court will, however, detail the recent relevant procedural history that precedes the filing of this Motion.

The following facts are set forth in Defendants' Memorandum in Support of Emergency Motion ("Defendants' Memorandum") [8383], which Certain DAPs have not disputed in their response to Defendants' Motion. *See* Defendants' Memorandum [8383], at 3-8 (citing attached exhibits and correspondence among the parties); Certain DAPs' Opposition to Defendants' Motion ("DAPs' Opposition") [8396], at 2-6. On March 6, 2026, Certain DAPs served a *Touhy* letter on the DOJ, requesting materials from the underlying criminal proceedings identified above.[2] On April 9, 2026, Certain DAPs then served a Rule 45 Notice of Subpoena on Defendants "in connection with the *Touhy* request served on March 6, 2026, and at the request of the Department of Justice[.]" *Id.* at 3. That subpoena sought production of documents from the DOJ that was similar to the materials requested in the DAPs' *Touhy* request. *Id.* at 3-4. The Notice indicated that the subpoena to the DOJ would be served on April 15, 2026. *Id.* at 4. On April 13, 2026, Defendants sent an email to Certain DAPs, objecting to the subpoena and asserting that the Rule 45 subpoena

---

[2] In *Taylor v. Gilbert*, 2018 WL 1334935 (S.D. Ind. March 15, 2018), another district court explained that the term "*Touhy* request" comes from the United States Supreme Court decision in *United States ex rel. Touhy v. Regan*, 340 U.S. 462 (1951). *See* 2018 WL 1334935, at *6 n.1. In that case, the Supreme Court ruled that an FBI agent could not be held in contempt for refusing to obey a subpoena based on instructions given to him by the Attorney General of the United States pursuant to the regulations that the Department of Justice has enacted under the Federal Housekeeping Statute. Because Federal Housekeeping regulations specify the requirements to make a request for information from a federal agency, those requests are consequently referred to as *Touhy* requests.

was untimely under the Court's scheduling orders, and they asked Certain DAPs to provide an explanation for serving, what Defendants contend, is an untimely subpoena. *Id.*

Defendants say that Certain DAPs never responded to their email, and despite Defendants' objection to the Rule 45 subpoena, DAPs still served the contested subpoena on the DOJ and did not tell Defendants that they did so notwithstanding Defendants' objection. Defendants' Memorandum [8383], at 5. Defendants say they did not receive any notice that the subpoena had been served until April 27, 2026, when the DOJ moved for the "stipulated protective order" [8362], asking the Court to enter a protective order to govern the production of any documents the DOJ was producing in response to the Rule 45 subpoena. *Id.* The Motion for a "stipulated protective order" was signed only by the DOJ and counsel for the three Certain DAPs who had served the Rule 45 subpoena. *Id.* No other DAPs nor Defendants agreed to the "stipulated protective order," and they did not have any prior notice that such an order was being requested. *Id.* Before Defendants had the opportunity to address it, the Court entered the "stipulated protective order" [8363]. *Id.*

On April 28, 2026, Defendants emailed the DOJ and copied counsel for Certain DAPs, informing the DOJ that (1) Defendants contend the Rule 45 subpoena is untimely, (2) it was served over Defendants' objection, and (3) the "stipulated protective order" was not agreed to by all impacted parties. Defendants' Memorandum [8383], at 5. Defendants asked the DOJ to confirm whether it was aware that (1) Defendants had objected to the subpoena and that (2) Defendants and all other DAPs had not been included in any discussion about the "stipulated protective order." *Id.* at 6. In addition, Defendants also asked the DOJ to delay producing any documents in response to the subpoena. *Id.* In response, the DOJ confirmed that it was not aware that (1) Defendants

3

objected to the Rule 45 subpoena or that (2) other relevant parties were excluded from the discussions about the protective order. *Id.*

Later in the day on April 28, 2026, counsel for Certain DAPs responded to Defendants, arguing that the September 19, 2025, deadline for third-party subpoenas was inapplicable because the DOJ was "an intervenor, not a third-party." Defendants' Memorandum [8383], at 6. Certain DAPs' counsel, however, did not acknowledge that the date to serve party document requests was on May 2, 2025 [7527], over four months before the September 19, 2025 [7720] deadline to serve third-party subpoenas. *Id.* That same night, counsel for Certain DAPs also provided to Defendants—for the first time according to Defendants—an April 24, 2026 letter from the DOJ responding to the March 6, 2026 *Touhy* request as well as an April 28, 2026 letter from the DOJ revealing that a partial production of documents responsive to the subpoena had already been made. *Id.* During a subsequent telephone call on April 29, 2026, counsel for DOJ stated that the DOJ was preparing additional materials to produce under the subpoena, but in an email that same day, counsel for the DOJ confirmed that the DOJ would delay producing additional documents until resolution of Defendants' anticipated motion to quash. *Id.* at 6.

On April 30, 2026, Defendants had a meet and confer on these issues with Certain DAPs to understand the scope of the documents Certain DAPs were seeking, the scope of what had already been produced, and what Certain DAPs' position was on the timeliness of the Rule 45 subpoena they had issued. Defendants' Memorandum [8383], at 7. In that meet and confer, Certain DAPs offered to provide the documents that had been produced to Defendants, but Defendants did not accept the offer, stating that they are not parties to the "stipulated protective order" and that they needed to discuss with other Defendants not on the call the propriety of any such production and the forthcoming motion to quash. *Id.* at 7-8. At that time, Certain DAPs also maintained that

their subpoena was timely served. Defendants state they made clear to Certain DAPs that they intended to file a motion to quash and to ask the Court to order the destruction of documents produced in response to what Defendants contend is an untimely subpoena. *Id.* at 8. On Friday, May 1, 2026—less than 24 hours after the meet and confer and knowing that Defendants were going to file a motion to quash—Certain DAPs produced the documents they had obtained via the subpoena to all Defendants anyway. *Id.* Certain Defendants filed the instant Emergency Motion to Quash and for Protective Order Regarding Plaintiffs' Subpoena [8382] on May 5, 2026.

Other than recounting their prior efforts over the last five years to access the criminal investigation materials that are the subject of the Rule 45 subpoena and which Certain DAPs assert are highly relevant, Certain DAPs do not dispute the chronology of events set forth above nor do they necessarily deny any of Defendants' assertions about Certain DAPs' lack of candor with the DOJ and their lack of transparency with Defendants. DAPs' Opposition [8396], at 2-6. Although it was not clear to Defendants if the documents also were provided to other DAPs (who, like Defendants, are not parties to the "stipulated protective order"), Certain DAPs confirmed in their response to this Motion that before reproducing the documents they informed Defendants of their agreement with DOJ to provide the production to all parties and offered to treat the documents as Highly Confidential pending resolution of this Motion. *Id.* at 6.

## II. Legal Standard

Federal Rule of Civil Procedure 26(c)(1) allows a district court to issue an order, for good cause shown, that limits discovery to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense…." FED. R. CIV. P. 26(c)(1). "To determine whether a party has shown good cause, the district court must balance the parties' interests, taking into account the importance of disclosure to the nonmovant and the potential harm to the party seeking the protective order."

*Calhoun v. City of Chicago*, 273 F.R.D. 421, 422 (N.D. Ill. 2011). Whether or not to quash a subpoena is within the discretion of the district court. *See Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 977 (7th Cir. 2000). The party seeking a protective order bears the burden of proof to show that good cause exists and must present "a particular and specific demonstration of fact" as to the need for that protection. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (citations omitted); *see also Nucap Indus. Inc. v. Robert Bosch LLC*, 2017 WL 6059770, at *2 (N.D. Ill. Dec. 7, 2017) (collecting cases). When considering these issues, magistrate judges "enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013); *see also Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012) (citations omitted) ("District courts have broad discretion in supervising discovery … for they are much closer to the management of the case and the host of intangible and equitable factors that may be relevant in exercising such discretion.").

### III. Discussion

#### A. The DOJ is a Third-Party Rule 45 Subpoena Recipient

As an initial matter, the Court addresses the threshold inquiry regarding whether the DOJ, as the recipient of the underlying Rule 45 subpoena to which Defendants object, should be treated like a party or a third-party for purposes of this Motion. Some procedural context is necessary. The United States Department of Justice, Antitrust Division (the "government"), which was conducting criminal investigations into some Defendants for conspiracy to fix prices and reduce the supply of chickens and for potential bid-rigging, moved to intervene in this case pursuant to Federal Rule of Civil Procedure 24 on June 21, 2019 to seek "an initial six-month, limited stay of discovery" to "protect the grand jury's [then-ongoing] investigation." [2268], at 1. The Court granted that motion and ordered a limited stay of discovery on June 27, 2019 [2302]. After the government intervened,

it periodically filed motions requesting protective orders or additional limited stays of discovery based on the still-ongoing investigation and criminal proceedings, which the Court granted. The last motion the government filed as an Intervenor was on January 1, 2022.

The government's intervention was premised on its interest in protecting the then-ongoing grand jury investigations related to the criminal proceedings, which were completed years ago, and it has not filed any motions or otherwise participated in Track 2 discovery in this case. The government does not have any underlying claims in this case, and the stay of discovery and protective orders requested by the government were lifted years ago. For these reasons, the Court finds that the DOJ, as the recipient of the Certain DAPs' *Touhy* request and Rule 45 subpoena that is the subject of this Motion, is a third party for purposes of Track 2 discovery. This also is consistent with how Certain DAPs have, in fact, treated the DOJ by making a *Touhy* request for documents and issuing a Rule 45 subpoena, rather than treating DOJ as a party and serving requests for production of documents under Rule 34.

**B. Defendants Have Standing to Seek a Protective Order Pursuant to Rule 26(a)(1)**

Defendants contend they have standing to move for a protective order pursuant to Federal Rule of Civil Procedure 26(a)(1) because they have a legitimate interest in ensuring that the Court's discovery deadlines are complied with, and they seek to quash the Rule 45 subpoena as untimely and prejudicial. Defendants' Memorandum [8383], at 10. In response, Certain DAPs argue that Defendants' Motion is procedurally flawed because they do not have standing under Rule 45 to challenge a subpoena to a non-party, and that the Motion was filed in an improper venue and instead should have been filed in the district court where the Rule 45 subpoena was served on the DOJ. DAPs' Opposition [8396], at 7-8. Certain DAPs' arguments, however, are misplaced as

Defendants make clear they are seeking a protective order pursuant to Rule 26(a)(1) and not Rule 45(d)(3)(A). Defendants' Memorandum [8383], at 10; Defendants' Reply [8397], at 2-6.

The Court agrees that Defendants may not have standing to file a motion to quash the Rule 45 subpoena because a party generally does not have standing to move to quash a subpoena issued to a third party. *See Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 186-87 (N.D. Ill. 2013); *Wi-LAN, Inc. v. LG Elecs., Inc.*, 2011 WL 148058, at *3 (N.D. Ill. Jan. 18, 2011). As an exception, however, a party does have standing to move to quash a third-party subpoena "if the subpoena infringes upon the movant's legitimate interests." *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982); *see also Parker*, 291 F.R.D. at 187 (identifying examples of such legitimate interests to include "the assertion of work product or attorney-client privilege, interference with business relationships, or production of private information about the party that may be in the possession of a third party"). Defendants, however, do not argue that they have a legitimate interest as recognized by Rule 45 that would be infringed by the DOJ subpoena, but rather Defendants challenge the subpoena pursuant to Rule 26(a)(1) and seek a protective order on the grounds that the Rule 45 subpoena violates the Court's scheduling orders in this case and they are prejudiced by the untimely subpoena that was served over six months after the Court's deadline for issuing third-party subpoenas.

District courts have found that a party who lacks standing under Rule 45 to challenge a non-party subpoena may "achieve a similar end under Rule 26" by requesting a protective order relating to document requests served on a third party. *Mfr. Direct, LLC v. Directbuy, Inc.*, 2007 WL 496382, at *3 (N.D. Ind. Feb. 12, 2007) (concluding that the weight of authority in the Seventh Circuit allows a party who lacks standing under Rule 45 to still move for a protective order under

Rule 26).[3] Because Defendants have standing to seek a protective order under Rule 26, the Court will consider the merit of their Motion seeking to quash the Rule 45 subpoena.

**C. Certain DAPs' *Touhy* Request and Rule 45 Subpoena Were Not Issued Timely**

Defendants argue that the Rule 45 subpoena Certain DAPs issued to the DOJ was untimely, and there is good cause for entry of a protective order quashing the subpoena and preventing any party from using documents that were obtained pursuant to the untimely subpoena. Defendants' Memorandum [8383], at 10-12. Certain DAPs disagree that the subpoena was untimely, asserting that the *Touhy* request and Rule 45 subpoena were issued in the wake of prior failed attempts to obtain materials from the related criminal prosecution through other means and following requests directly to the parties. DAPs' Opposition [8396], at 10-12. Certain DAPs try to justify their tardiness in serving the Rule 45 subpoena by arguing that their "years long campaign" to obtain these materials demonstrates they have acted diligently and in good faith and, therefore, overcome any finding that the subpoena was not timely. DAPs' Opposition [8396], at 10.

For some procedural context, the Court notes that Track Two Scheduling Order No. 1 and Case Management Order [7720] ("Scheduling Order No. 1") was entered on May 13, 2025, and under that Order, the parties were required to issue all third-party subpoenas by September 19, 2025. Scheduling Order No. 1 was superseded on January 7, 2026 by Track Two Scheduling Order No. 2 and Case Management Order [8211] ("Scheduling Order No. 2"), which extended the date

---

[3] *See also DeLeon-Reyes v. Guevara*, 2020 WL 3050230, at *3 (N.D. Ill. June 8, 2020) (noting that parties "do have standing to seek a protective order under Rule 26 to limit discovery from a third party"); *Special Mkts. Ins. Consultants, Inc. v. Lynch*, 2012 WL 1565348, at *1-2 (N.D. Ill. May 2, 2012) (holding that a party had standing to object to a non-party subpoena under Rule 26(c)(1)); *Vodak v. City of Chi.*, 2006 WL 3267428, at *6 (N.D. Ill. Nov. 9, 2006) (considering the merits of a motion for a protective order barring a non-party's deposition); *Hobley v. Chi. Police Commander Burge*, 445 F. Supp. 2d 990, 993 n.4 (N.D. Ill. 2006) ("Defendants assert that Plaintiffs lack standing to move to quash the [non-party] subpoenas … [but] [i]t is not necessary to decide that issue, since Plaintiffs undoubtedly have standing to seek a protective order under [Rule] 26(c).").

for the close of fact discovery until May 8, 2026, among other dates, and also included March 6, 2026 as the date by which to serve third-party *deposition* subpoenas. Scheduling Order No. 2, however, did not change any date relating to the original deadline for service of other third-party subpoenas. Scheduling Order No. 1 set September 5, 2025, as the deadline for substantial completion of all parties' document production and set September 19, 2025, as the deadline to serve third-party subpoenas. Scheduling Order No. 2 was drafted, proposed, and agreed to by the parties and then ordered by this Court. Because Scheduling Order No. 2 specifically references the service of third-party deposition subpoenas only and does not mention third-party document subpoenas, and no party sought an extension of the deadline for document requests or third-party document subpoenas, the Court finds that the parties did not intend to extend the date for the service of third-party documents subpoenas and instead only extended the date for the service of third-party deposition subpoenas, as explicitly enumerated in Scheduling Order No. 2.

The Seventh Circuit has recognized that a district court, in its discretion, has the authority pursuant to Rule 26(a)(1) to quash a subpoena for violating a discovery schedule deadline. In *Mitchell v. City of Chicago*, 862 F.3d 583 (7th Cir. 2017), the Seventh Circuit affirmed the district court's decision to quash a subpoena that was issued "several months" after the discovery deadline had expired for violating its discovery order. 862 F.3d at 586. The Seventh Circuit held that "[d]istrict judges are authorized to manage the schedule of cases before them, including imposing deadlines for discovery," and the plaintiff "failed to offer good cause for the subpoena's tardiness," and had "ample opportunity" to seek discovery of those materials before the deadline expired. *Id.*; *see also Hansen v. Country Mut. Ins. Co.*, 2021 WL 12101094, at *1, n.1 (N.D. Ill. May 14, 2021) ("It is well settled that a party has standing to seek a protective order to limit discovery from a third party, particularly where—as here—the party claims that its opponent is violating a court

order that has cut-off discovery."); *Phipps v. Adams*, 2012 WL 3074047, at *3 (S.D. Ill. July 30, 2012) (holding that the plaintiff had standing to move to quash defendant's subpoena because it violated the court's discovery deadline based on his "interest in the administration of the legal proceeding").

The Court agrees with Defendants that Certain DAPs' *Touhy* request and their subsequent Rule 45 subpoena violate the Court's Scheduling Orders No. 1 and No. 2 because they were issued several months after the deadline to issue third-party subpoenas set by the Court, and they did not seek leave of this Court to issue them beyond the deadline that the Court ordered. The Court is not persuaded by Certain DAPs' justifications for their late requests, and they do not offer any clear reason or explanation why their *Touhy* request and Rule 45 subpoena could not have been issued by the September 19, 2025 deadline for third-party subpoenas or why they did not seek leave of Court to issue them after the deadline. The Court also is not convinced by their conclusory assertion that their "reasonable diligence in pursuing these materials over the course of the last five years constitutes good cause to overcome any untimeliness," DAPs' Opposition [8396], at 12, particularly when Certain DAPs have not provided any explanation or reasonable basis to justify their delay. A last-ditch effort to obtain these documents through this method is not an excuse for failing to meet the Court's deadline that passed six months prior to DAPs serving the Rule 45 subpoena on the DOJ.

The Court acknowledges that the documents Certain DAPs have requested from the DOJ are likely relevant and that they have tried to obtain them at previous times in the litigation. However, even though DAPs have been trying to obtain documents relating to the criminal investigation and trials for years, in the Court's view, that does not excuse their delay in issuing a third-party Rule 45 subpoena six months after the Court's scheduling order deadline for issuing

11

third-party subpoenas. Certain DAPs complain that Defendants did not timely object to the *Touhy* request and only objected to the Rule 45 subpoena when they became aware of the fact that the DOJ had agreed to produce documents. That may be true (and the Court acknowledges Defendants' objections could have been filed sooner), but that nevertheless does not excuse DAPs' tardiness by over six months in seeking the documents in the first instance nor their failure to provide good cause for their untimeliness.[4] In the Court's view, Certain DAPs cannot justify the untimeliness of their Rule 45 subpoena by complaining that Defendants' objections came too late.

DAPs also argue that Scheduling Orders No. 1 and No. 2 do not specifically address *Touhy* requests. DAPs' Opposition [8396], at 10-11. The Court is not persuaded by this argument either. The Court recognizes that neither Scheduling Order No. 1 nor Scheduling Order No. 2 specifically addresses a *Touhy* request. In the Court's view, however, a *Touhy* request fundamentally contemplates the production of documents from a third party, *i.e.*, the DOJ, which is evidenced by the fact that DAPs served a Rule 45 subpoena on the DOJ to facilitate the production of the requested documents. And as discussed above, Scheduling Order No. 1 required third-party subpoenas to be issued by September 19, 2025, and Scheduling Order No. 2 did not alter that deadline but instead included a deadline of March 6, 2026, to issue third-party *deposition* subpoenas only. The *Touhy* request was issued almost six months after the Court's deadline for third-party subpoenas, and the Rule 45 subpoena was issued almost seven months after the deadline (and just a few weeks before the close of fact discovery). As discussed above, Certain

---

[4] The Court recognizes that Defendants did not file this Motion until May 5, 2026, over two months after DAPs issued their *Touhy* request. Based on the current record, however, it also appears that Certain DAPs could have been, and should have been, more transparent with Defendants about their communications with the DOJ and with the fact that the DOJ intended to produce documents pursuant to the *Touhy* request and a stipulated protective order that Defendants were not aware of until it was filed on April 27, 2026. And Certain DAPs clearly should have been more transparent with the DOJ that Defendants objected to its production. *See supra* at 2-3.

DAPs do not provide any explanation why they could not have served them earlier, particularly when they admit they have been seeking these documents for years. In the Court's view, DAPs could have (and should have) issued the *Touhy* request and Rule 45 subpoena months, if not years, earlier than they did.

For all these reasons, the Court agrees with Defendants and finds that the Rule 45 subpoena Certain DAPs served on the DOJ is not timely and was issued in violation of the Court's Scheduling Orders No. 1 and No. 2. Accordingly, the Court, in its discretion, grants Defendants' Motion in part and quashes Certain DAPs' Rule 45 subpoena to the DOJ based on its untimeliness.

### D. Defendants Have Shown Good Cause for Entry of a Protective Order

Defendants also argue they are prejudiced by the untimely Rule 45 subpoena that Certain DAPs served on the DOJ. Defendants' Memorandum [8383], at 12-18. Certain DAPs again disagree, arguing that the documents they seek pursuant to the Rule 45 subpoena are relevant and Defendants have been on notice for years that DAPs have been trying to obtain these documents. Indeed, a motion requesting access to all publicly available trial exhibits remains pending in the district court for the District of Colorado where the criminal cases were filed. DAPs' Opposition [8396], at 3. In addition, Certain DAPs argue that any alleged prejudice asserted by Defendants is outweighed by the relevance and importance of the DOJ materials. *Id.* at 12-15.

It is well-settled law that when evaluating whether a party has shown good cause for entry of a protective order, the court "must balance the parties' interests, taking into account the importance of disclosure to the nonmovant and the potential harm to the party seeking the protective order." *Starboard with Cheese, LLC v. Barryview, Inc.*, 2022 WL 433127, at *2 (C.D. Ill. Feb. 11, 2022) (citing *Calhoun*, 273 F.R.D. at 422). The Court recognizes that the documents Certain DAPs requested in the Rule 45 subpoena likely contain relevant information. The Court,

13

however, also agrees that Defendants are prejudiced by the late production of documents several months after the Court-ordered deadline set for seeking third-party documents and just a couple weeks before fact discovery closed. These are the competing interests, among others, that the Court must balance.

The language of Rule 45 states that "[i]f the subpoena commands the production of documents ... then *before it is served* on the person to whom it is directed, a notice *and a copy of the subpoena* must be served on each party." FED. R. CIV. P. 45(a)(4) (emphases added). Case law and the Advisory Committee notes support the importance and purpose of complying with this notice requirement, emphasizing that it allows "the other parties to object or to serve a subpoena for additional materials" as well as to work out any issues prior to serving the subpoena and before Court intervention. *DeLeon-Reyes*, 2020 WL 3050230, at *3 (noting that "the very reason Rule 45(a)(4) requires notice to the opposing party before serving the subpoena is to ensure that important issues to the discovery process can be addressed prior to the service").[5]

The Court recognizes that Certain DAPs took steps to put Defendants on notice that they intended to issue a third-party subpoena to the DOJ. Based on the record presented to the Court, however, it appears that Certain DAPs proceeded to serve the Rule 45 subpoena on the DOJ even though Defendants clearly had objected. There also is nothing in the record that shows that Certain DAPs responded to Defendants' email that they objected to the subpoena nor did these DAPs tell the DOJ that Defendants had objected, which is even more egregious in this context given the untimeliness of the third-party subpoena. *See Malhorta v. CVS Health, Inc.*, 2025 WL 3269573, at

---

[5] *See also Bilek v. Nat'l Cong. of Emps., Inc.*, 2020 WL 10963975, at *3 (N.D. Ill. May 21, 2020) (stating that this "provision is intended to encourage the parties to work out or at least narrow their differences before a court or a third party needs to address the issue"); *Special Mkts. Ins. Consultants, Inc. v. Lynch*, 2012 WL 1565348, at *1 (N.D. Ill. May 2, 2012) ("The purpose of such notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things.").

14

*4 (N.D. Ill. Jan. 7, 2025). In the Court's view based on this record, Certain DAPs did not fully comply with the notice requirement of Rule 45(a)(4) because it did not address DAPs' objections prior to serving the Rule 45 subpoena and did not notify the DOJ of the objections. On balance, the Court, in its discretion, finds that these facts weigh in favor of finding that Defendants have shown good cause for a protective order.

Furthermore, the parties created a discovery framework with Scheduling Orders No. 1 and 2 in which document production, including production of documents from third parties, was intended to be substantially completed before depositions began, and the Court agreed with that process. This was a reasonable approach so that all parties would have access to relevant documents when depositions began. Certain DAPs, however, clearly violated the Court's Scheduling Orders by serving the *Touhy* request on March 6, 2026, and issuing the subsequent Rule 45 subpoena on April 15, 2026, just a few weeks before the close of fact discovery and without seeking leave of Court to serve a Rule 45 subpoena after the Court's deadline to do so.

Defendants also complain that the documents subpoenaed from the DOJ are limited to documents that are favorable to Certain DAPs. That is not surprising but also lends support for Defendants' prejudice argument since they are limited in their ability to obtain additional evidence that could be favorable to them. For example, Defendants say that Certain DAPs requested interview notes of 38 individuals associated with Defendants but did not seek interview notes for anyone associated with the DAPs. Defendants' Reply [8397], at 10. It also is Defendants' understanding, and Certain DAPs do not dispute it, that (1) the DOJ has produced exhibits that were marked but were never used or entered in the criminal trials, including exhibits that were marked but not used for the scheduled trial in the *McGuire* prosecution that never took place, and (2) potentially even more prejudicial, Defendants say that the DOJ produced only the exhibits

15

marked by the government, but not any exhibits marked by the defendants in those cases. Defendants' Memorandum [8383], at 14-16; Defendants' Reply [8397], at 9-10.

In other words, Defendants contend that Certain DAPs are now in possession of documents that show only DAPs' side of the story in the criminal trials, and Certain DAPs do not challenge Defendants' assertion. This means that not only are Defendants deprived of the ability to test or challenge any of the documents produced by the DOJ or to use any that might have been favorable to them at witness depositions that have already taken place, but they are also deprived of the ability to discover additional documents that could have shown a more fulsome picture of the interactions among the parties. On balance, the Court finds this disparity also weighs in favor of entering a protective order.

For all these reasons, the Court is persuaded by Defendants' arguments that they are prejudiced by the untimely request for documents and the late production of documents from the DOJ, and the Court finds that the prejudice to Defendants outweighs the relevance of the information and DAPs' need for the subpoenaed materials. Accordingly, the Court finds, in its discretion, that Defendants have shown good cause for the protective order they seek because it is prejudicial for DAPs to have access to documents obtained on the eve of the close of fact discovery in violation of the Court's Scheduling Orders and over six months after the deadline for serving third-party subpoenas.

### E. The Court Has Discretion to Order Destruction of Documents Already Produced and the Stipulated Protective Order Is Stricken as Moot

In addition to quashing the Rule 45 subpoena, Defendants also argue that the Court should order the destruction of the subpoenaed materials already produced by DOJ to mitigate the prejudice Defendants have suffered. Defendants' Memorandum [8383], at 17. As discussed above, the record shows that Certain DAPs failed to inform the DOJ about Defendants' objection to the

16

Rule 45 subpoena and did not include Defendants and other DAPs in their discussions with DOJ about the "Stipulated Protective Order" that facilitated the production of the untimely subpoenaed documents. As a result, the DOJ already has produced some documents pursuant to the subpoena, and Defendants argue those documents should be destroyed. *Id.* at 17-18.

DAPs object and argue that Defendants' request is overbroad for two reasons. DAPs' Opposition [8396], at 15; Defendants' Reply [8397], at 9-11. First, DAPs say that Defendants already have agreed that the parties can retain the public trial exhibits from the *Penn* criminal trial, which Certain DAPs represent were the bulk of DOJ's April 28 production. DAPs' Opposition [8396], at 15. Second, DAPs argue that the remainder of the DOJ production contains marked trial exhibits from *McGuire* and documents related to former Pilgrim's employee Tim Stiller [8383-5] and those Defendants did not join this Motion and, therefore, Certain DAPs presume they do not oppose DAPs' access to and use of the materials produced by the DOJ. *Id.* For these reasons, Certain DAPs argue that the relief Defendants seek is not warranted.

Defendants cite a case from the Ninth Circuit that recognizes a district court's authority "to return or destroy the documents as part of the court's inherent powers to oversee discovery in cases before it." *Cahill v. Insider Inc.*, 131 F.4th 933, 938 (9th Cir. 2025). This is part of a district court's "inherent authority . . . to enforce its orders by whatever means" (quoting *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985)) and "to correct that which has been wrongfully done by virtue of its process" (quoting *Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.*, 249 U.S. 134, 146 (1919)). *Cahill*, 131 F.4th at 938. The Ninth Circuit further held that "the district court has the same authority to require that any confidential documents mistakenly provided to [one party] by another party be returned or destroyed." *Id.*

17

Unlike *Cahill*, however, this is not a case in which documents were mistakenly provided by one party to another. To the contrary, in this case, Certain DAPs untimely sought and obtained documents in violation of the Court's Scheduling Orders and, further, for which they did not seek leave of Court to serve a Rule 45 subpoena beyond the deadlines set in Scheduling Orders No. 1 and No. 2. Certain DAPs have not cited any contrary authority in this Circuit, and the Court has not found any. For all these reasons, the Court agrees with the Ninth Circuit's reasoning in *Cahill* and finds it is prejudicial to Defendants to allow DAPs to maintain possession of documents that were obtained in violation of the Court's Scheduling Orders No. 1 and No. 2 without leave of Court and at the tail-end of fact discovery. Therefore, in its discretion, the Court orders that any party in possession of documents produced by the DOJ pursuant to the Rule 45 subpoena must return them to the DOJ or destroy the documents, unless otherwise agreed to by the parties.

Furthermore, because the Court is granting Defendants' request for a protective order, quashing the Rule 45 subpoena, and ordering the return and/or destruction of the documents that already were produced unless otherwise agreed to by the parties, the Court also orders that the "Stipulated Protective Order" [8364] shall be stricken as moot, and if necessary, the parties shall submit another stipulated protective order *agreed to by all parties* for any documents that the parties have agreed to keep from the DOJ's production.[6]

---

[6] In their Reply Brief [8397], Defendants represented they confirmed with Certain DAPs that admitted exhibits could be retained by the parties since admitted exhibits are public documents that could have been obtained through legitimate means and Defendants asked Certain DAPs to produce to Defendants only the admitted exhibits from the three unsuccessful *Penn* trials since the other documents they received in response to the untimely subpoena are being challenged. Reply Brief [8397], at 10 n.4. Defendants say that Certain DAPs refused. To the extent a dispute remains, and these documents have not been produced to all parties, the parties should meet and confer to reach resolution. If the parties are not able to reach agreement, then they should file a joint motion for resolution of their dispute.

**F. Defendants' Request for an Order Preventing Any Party from Using Information Gained from the DOJ Production Is Premature**

Finally, Defendants asks this Court to order that no party shall be permitted to use any documents or information obtained as a result of the DOJ's Rule 45 production. In the Court's view, the relief that Defendants seek is speculative and premature at this stage in the litigation and also is not within the purview of the referral. Any motion about what documents and/or information can or cannot be used as evidence in any dispositive motion or at trial and any ruling on the ultimate admissibility of these documents will be at the discretion of the trial judge. *See Chung v. Arthur J. Gallagher & Co.*, 2025 WL 4109377, at *2 (N.D. Ill. Mar. 4, 2025) (citing *Estate of Carey v. Hy-Temp Mfg., Inc.*, 1991WL 161394, at *1 (N.D. Ill. Aug. 19, 1991) (recognizing that "rulings on the admissibility of evidence ordinarily should be deferred until trial, so that questions of foundation, relevancy and potential prejudice may be resolved in proper context")). Therefore, as to this portion of the relief requested by Defendants, their Motion is denied.

### IV. Conclusion

For all the reasons set forth in the Court's Memorandum Opinion and Order, Certain Defendants' Emergency Motion to Quash and for Protective Order Regarding Plaintiffs' Subpoena [8382] is granted in part and denied in part as premature. Certain DAPs shall notify the DOJ that the Court has quashed the Rule 45 subpoena and that it shall not produce any more documents pursuant to the Rule 45 subpoena it received from Certain DAPs. The Court also orders that all parties in possession of any documents produced by the DOJ pursuant to the Rule 45 subpoena shall return the documents to the DOJ or destroy them unless otherwise agreed to by all parties. Lastly, the Court orders that the "Stipulated Protective Order" [8364] is stricken as moot.

It is so ordered.

Karyn L. Bass Ehler
United States Magistrate Judge

Dated: June 15, 2026