**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This document relates to: All End-User Consumer Plaintiffs Actions | No. 1:16-cv-08637<br><br>Honorable Thomas M. Durkin<br>Magistrate Judge Jeffrey T. Gilbert |

### OBJECTOR HUANG'S FINAL CONSOLIDATED OBJECTION TO EUCP'S AGRI STATS SETTLEMENT [8314]

Instead of doing an oral argument as the Seventh Circuit asked, EUCPs called off their appeal for $0 and a five-year *freeze* from Agri Stats' alleged role as the *hub* of a price-fixing conspiracy, as a "benefit" for the purely *retrospective* (b)(3) class to release all predominating damage claims from past broilers purchases between 2012 and 2019.

Though EUCPs gave up attorney's fees from the deal, the class will lose their claims, and $23,000 may be still sought by EUCPs as "expenses" against class recovery. *Contra* 28 U.S.C. 1713 ("class member[s] [are] obligated to pay sums to class counsel that would result in a net loss to the class member only if … nonmonetary benefits to the class member substantially outweigh the monetary loss.") Three defects require denial.

*First,* this deal sold a **valuable, nonzero** *chance to overturn* summary judgment on appeal, for **$0**. *Second,* the benefit is "empty." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 785 (7th Cir. 2014). *Third,* "[a] court is powerless to approve a proposed class settlement … and federal courts lack jurisdiction if no named plaintiff has standing." *Frank v. Gaos,* 586 U.S. 485, 492 (2019). Here, *no named plaintiff* pleaded any fact or allegation to have Article III standing to seek or obtain prospective injunctive relief: each of them only sued for past purchases in their operative complaint. R. 3747 at 8-13 (¶¶ 20-44).

1

**I.  THIS SETTLEMENT RELEASES A CHANCE TO WIN AFTER APPELLATE ARGUMENT FOR WORTHLESS INJUNCTIVE RELIEF, A SITUATION WORSE THAN THIS CIRCUIT'S *CRAWFORD* AND *MURRAY* CASES OR *KOBY***

Because of "the risk of 'in terrorem' settlements that class actions entail", *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 350 (2011), EUCPs' summary-judgment appeal is assured to have a non-zero value (even at its weakest): Agri Stats has real risks if EUCPs win that appeal—as oral argument and 0% chance do not live together. Thus, even if one assumes *arguendo* the injunction *will* redress risks of future harm, Rule 23(e)(2) adequacy problem remains. The Ninth Circuit rejected a (b)(2) injunctive settlement that ended a damage class-action for injunctions of negligible worth: "Cutting off access to a procedural tool that may offer the only realistic means of obtaining monetary relief deprived the absent class members of something of value here, even if it might be worth relatively little. The fact that class members were required to give up anything at all in exchange for worthless injunctive relief precluded approval of the settlement as fair, reasonable, and adequate under Rule 23(e)(2)." *Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1081 (9th Cir. 2017).

This Circuit has condemned similar settlements (where value of the litigation all went into fees). "Such a settlement is untenable. We don't mean by this that all class members must receive $100; risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty." *Murray v. GMAC Mortgage Corp.,* 434 F.3d 948, 952 (7th Cir. 2006). But if the EUCP Agri Stats settlement is valued at $0—*i.e.,* a 0% chance to win, then *Murray* requires that this Court to ask "if the chance of success really is only 1%, shouldn't the suit be dismissed as

frivolous and no one receive a penny?" *Id.* The Seventh Circuit did not find the appeal meritless: it requested oral argument before EUCPs signed a $0 Agri Stats settlement. The increased, *nonzero* probabilities of receiving more than $0 amply advises against allowing a $0, class-wide *damage wipe-out* deal after EUCPs *were* committed to appeal.

Indeed, this deal's *timing* is remarkably strange: after Andren's win, but before oral argument in the Seventh Circuit, *where EUCPs defended two Andren's fee appeals*. The class gets $0 if the Circuit affirms, or it may vacate summary judgment with far more value at stake. ***Thus, why would anyone settle for $0 when losing also leads to $0?***

Huang wishes it is not the only logical analysis—but few alternatives make sense: after objectors' scrutiny cut $12.5 million in fees and interest payments—EUCPs "may have tried something worse, negotiating [to stop a bleed in litigation budgets] while giving [Agri Stats] the benefit of a judgment that leaves the class empty-handed." *Id.*

This posture is worse than the Class in *Koby* in the one respect that matters. *Koby* was a Rule 23(b)(2) class, where damages were never the glue for class certification. EUCP class is a Rule 23(b)(3) class where *common damages questions predominated* and an appellate win has real value. But this settlement offers $0, illusory relief, while anything beyond $23,000 in notice costs might be billed to the class soon as a *de facto* price for counsel's injunction purchase. *Contra* 28 U.S.C. 1713. If giving up a "procedural tool" worth "relatively little" defeated approval in *Koby*, giving up *the appeal after briefing, on the eve of an appellate oral argument* is far more questionable. This case is correspondingly unlike *Campbell v. Facebook Inc.*, 951 F.3d 1106, 1123-24 (9th Cir. 2020), where "[d]amages claims had already been eliminated from the case, so the only

3

forms of potentially available relief . . . were declaratory or injunctive." Here the damages claims have *real value on appeal*, and it cannot be settled into a $0 outcome.

**II.  THE SETTLEMENT PROVIDES NO MEANINGFUL RELIEF, AND ITS FIVE-YEAR "LIMITED-TIME" FEATURE BEFORE ULTIMATE EXPIRATION CONFIRMS IT**

### A. Agri Stats was allegedly the hub of the price-fixing conspiracy, making a limited-time nature of the proposed injunction self-defeating.

The Court certified a class against Agri Stats, which was allegedly the vehicle through which the price-fixing conspiracy operated. EUCPs alleged the producers engaged in the "shar[ing] of confidential production information through industry reporter and defendant, Agri Stats." Order granting class certification, R.5644 at 15. The information "was published with producer names redacted," EUCPs alleged "that Agri Stats intended for the information to be easily identified," and EUCPs even "discovered a copy of an Agri Stats report from Pilgrim's for which the numerical identifiers for each producer were over-written by hand with the producers' actual names," evidence that "Pilgrim's was able to de-anonymize the otherwise proprietary and confidential information of its competitors." *Id.* at 15 n.7 (citing R.3971-3 at 27 (Figure 2)).

Huang recounts why the Agri Stats class was certified because it is also why a five-year injunction is temporary at best. If Agri Stats' data exchange was the *hub* of a price-fixing conspiracy, a *limited-time* injunction simply seals the engine in a garage, but it can restart in 5 years; it does not *stop* the alleged harm; it only *pauses* a risk of future harm.

### B. A five-year sunset renders the injunction empty under *Pearson*

The Seventh Circuit has twice explained why a limited-time injunction against a defendant's challenged practice is often worthless. In *Pearson v. NBTY, Inc.*, 772 F.3d 778

(7th Cir. 2014), the Seventh Circuit confronted a 30-month injunctive term and rejected the claim that such limited-time injunction is of any realistic value.

> The 30-month (actually 24-month) cutoff means that after 30 months Rexall can restore the product claims that form the foundation of this suit. It says it will be reluctant to do that because then fresh class actions will be brought against it. But if so, why would it prefer a 30-month injunction to a perpetual injunction? Were the injunction perpetual, Rexall could ask the district court to modify it should new research reveal that its allegedly false claims were true after all. (*Id.* at 785).

The court then identified the deeper problem of limited-time injunctions:

> A larger objection to the injunction is that it's superfluous — or even adverse to consumers. . . . The injunction actually gives [the defendant] protection by allowing it, with a judicial imprimatur (because it's part of a settlement approved by the district court), to preserve the substance of the claims by making . . . purely cosmetic changes . . . . For the injunction seems substantively empty.(*Id.*)

The Seventh Circuit has said the same, again:

> The plaintiffs and Subway defend this settlement by insisting that it actually provides meaningful benefits to the class because Subway has bound itself, for a period of four years, to a set of procedures designed to achieve better bread-length uniformity. A simple comparison of the state of affairs before and after the settlement exposes the cynicism in this argument. (*In re Subway Footlong Sandwich Mktg. & Sales Pracs. Litig.,* 869 F.3d 551, 556 (7th Cir. 2017)).

The same logic governs here. A five-year injunction does little: it confers a judicial imprimatur on Agri Stats' conduct for 5 years, then returns the parties to the *status quo ante* starting year six. On EUCPs' own allegations, Pilgrim's renewed ability to de-anonymize competitor data, R.5644 at 15 & n.7, becomes *legal* once again in year 6.

A "simple comparison" under *Subway* (the **indifference** between now and year 6, after injunction expires) "exposes the cynicism in this argument." *Id.* The injunction is not a real *relief*. It is the "judicial license" *Pearson* warned not to issue. 772 F.3d at 785.

5

### C. The State of Iowa's critique of another limited-time compliance program applies as *fortiori*

Huang is a co-appellant with the State of Iowa in *Corrente v. Charles Schwab Corp.*, No. 25-40774 (5th Cir.). Iowa challenged a 4-year compliance-program settlement. Iowa's framing of the temporal defect transfers directly: Plaintiffs cannot "explain why any risks from [alleged antitrust activities] vanishes after that time. Do the harms from market concentration dissipate? Or do future market changes reduce the harms? Or does monitoring simply become too cumbersome or expensive?" Br. of Iowa at 19-20, *Corrente v. Charles Schwab Corp*, No. 25-40774 (5th Cir. Mar. 23, 2026).

As to what makes a compliance commitment worth anything, Iowa cited the U.S. Department of Justice's own evaluation criteria: "Neither Plaintiffs nor Defendant can answer any of those questions. Nor can Iowa. And neither party explains why even the best designed antitrust compliance program benefits consumers when the program ends after just four years." Reply Br. of the State of Iowa at 13, *Corrente*, No. 25-40774 (5th Cir. June 12, 2026) (citing U.S. Dep't of Justice, Antitrust Div., *Evaluation of Corporate Compliance Programs in Criminal Antitrust Investigations* 3-16 (Nov. 2024)).

The Iowa reply brief recites a dozen DOJ questions for "effectiveness" sake: program format, ownership, day-to-day operational responsibility, training, auditing, escalation, and discipline — none of which this settlement even offers. *See id.* at 11-12. If a four-year program *proposal* cannot be "effective," a five-year freeze presented by EUCPs cannot be either. The deal is no better: this is not even a compliance *program*, but policy, trainings and covenants to freeze the engine for 5 years. R.8314-2 at 7-8.

6

**D. Rule 23 forbids approving relief that yields nothing of value**

In class-action settlements, this Court is "a fiduciary of the class" who is "subject therefore to the high duty of care that the law requires of fiduciaries," *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 280 (7th Cir. 2002). This Court must "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions," *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006).

That vigilance has a limit: "No class action settlement that yields zero benefits for the class should be approved, and a class action that seeks only worthless benefits for the class should be dismissed out of hand." *Subway,* 869 F.3d at 556 (quoting *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718, 724 (7th Cir. 2016)). The Seventh Circuit has also described what a fairness inquiry into a class-action settlement should look like — an estimation exercise the EUCPs have not even attempted—and *forfeited such arguments:*

> [T]he judge could have insisted that the parties present evidence that would enable four possible outcomes to be estimated: call them high, medium, low, and zero. . . . Some approximate range of percentages, reflecting the probability of obtaining each of these outcomes in a trial . . . might be estimated, and so a ballpark valuation derived.

*Reynolds*, 288 F.3d at 285. No valuation of EUCP's appeal can arrive at a final valuation of $0, but the class must give up all damages and receive $0 plus illusory injunctions. This Court must reject, when "[z]ero plus zero equals zero." *Subway,* 869 F.3d at 557.

**III.    THE CLASS CANNOT *LOSE MONEY* FOR ILLUSORY RELIEF UNDER RULE 23**

What remains is a question of who pays, and equity answers it. EUCP Counsel *was* "exemplary" for recovering some $200 million against other defendants. They declined fees for providing no cognizable relief. ***But the better question is where did "value" go,***

7

*if it is not in the fees?* The class receives $0, loses all damages against Agri Stats, and may be asked to fund its own notice. ***That leaves counsel's withdrawal from litigation as a viable theory:*** Notice is projected to exceed $46,000; Agri Stats pays no more than $23,000; the class *might* even pay for the remainder. R. 8314-3 at 4; R. 8314-2 at 14.

That allocation cannot stand. A class should not pay to surrender its own valuable, monetary damage claims for a "limited-time" injunction because it is a promotional term for counsel to exit with a "win." The deal is a freeze, not a remedy.

The Seventh Circuit has cautioned against settlement architecture that requires the class must recover nothing of substance; a class definition or structure "so broad" that it "ensured that none could recover much" is a feature courts must scrutinize, not defer to. *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000).[1]

If Agri Stats' bankruptcy risk is real, or if a better deal requires insolvency, then what EUCPs described is a *limited fund*, of which Rule 23(b)(1)(B) certification is exactly designed for, as long as it met the criteria (b)(1)(B) asks for. *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 821 (1999) ("applicants for contested certification on this rationale ***must show that the fund is limited by more than the agreement of the parties***") (emphasis added). Insolvency risk is a good reason to structure carefully, not a reason to settle for $0 on EUCP's mere say-so. *Id.* It is not a reason to neglect a (b)(3) settlement that

---

[1] Separately, the adequacy of notice itself is in question. Huang received the class notice in his Gmail spam folder; direct notice routed to spam is, for practical purposes, indistinguishable from no direct notice, and EUCPs should explain how that delivery qualifies as the "best notice practicable" while the class is charged for it. *See* Exhibit A. Huang flagged this for early cure rather than as a standalone ground, but Rule 23(e)(1) alone  requires constitutionally sufficient notice. *Reynolds*, 288 F.3d at 280, 286.

releases valuable damage claims for $0. Because whatever value Class Counsel sees in that injunction, the *damages class* as certified is seeing $0 in dollar terms.

## IV. A SUBSTANTIAL JURISDICTIONAL DEFECT EXISTS: NO NAMED PLAINTIFF DEMONSTRATED STANDING FOR FORWARD-LOOKING INJUNCTIVE RELIEF

The illusory relief problem is also a jurisdictional problem, and an Article III jurisdictional defect also bars reaching any approval on the merits. A federal court must satisfy itself of jurisdiction, *Frank,* 586 U.S. at 492. EUCPs offer *nothing* for Article III standing for injunctions: EUCPs pleaded none in the complaint; EUCPs certified a class of damages, and zero plus zero equals zero as a matter of EUCPs' standing for injunctions.

### A. Article III Standing is required for each form of relief, and EUCPs pleaded only past pocketbook injuries in the form of damages

"[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 431, 435 (2021). Injunctive relief must redress forward-looking injuries that are imminent: "Threatened injury must be certainly impending to constitute injury in fact, and . . . allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013) (cleaned up).

Imminence has limits the EUCPs cannot avoid: "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes — that the injury is certainly impending." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 565 n.2 (1992). And the burden runs to the party invoking jurisdiction: "When challenged by a court (or by an opposing party) concerned about standing, the party invoking the court's

jurisdiction cannot simply allege a nonobvious harm, without more." *Wittman v. Personhuballah*, 578 U.S. 539, 545 (2016).

EUCPs' operative complaint pleaded only the past tense, *with nothing in the future tense*. Every named EUCP is described by what he or she *purchased* between 2012 and 2019. *See* R. 3747 at 8-13 (¶¶ 20-44). Each plaintiff's allegation is in the past: each plaintiff "has purchas**ed** multiple Broilers . . . and suffer**ed** antitrust injury as a result." *Id.* (emphasis added). Not one named plaintiff alleged that he or she **will** purchase a broiler at a specific future schedule, or that any future injury is so certainly impending **to be traceable to Agri Stats absent a settlement.** The pleading and the certified class is undisputed to have standing for damages, but EUCPs' complaint supplied no standing for injunctions under Article III.

More facts illustrate the EUCP class definition is incompatible to the limited-time injunction: *e.g.,* class members may die; move to other countries, end their diets from broilers, or even buy other kinds of broilers; and the class—defined by commonality from historic purchases—sheds anyone who *will not buy again* as they did in 2012-19. At some point the class must cross from *de minimis* to a material subset with no imminent harm. A settlement may not be approved on the premise that *some* unnamed members might someday benefit when all EUCP plaintiffs only pleaded pocketbook injuries.

The courts of appeals are in agreement. "The complaint alleges only past harm … But '[t]he fact that [the Named Plaintiffs] may have been injured by [the] misleading statements and omissions . . . in the past . . . cannot be sufficient to establish an injury in fact that would support injunctive relief.' The Named Plaintiffs also must allege some

'lasting impact or likely future injury.'" *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1254 (11th Cir. 2023). And the Second Circuit rejected a pure (b)(2) injunctive settlement which does not even release *damages* for a class of past purchasers: "[C]an a group of past purchasers of a product maintain a class action for injunctive relief? . . . [T]he District Court did, in fact, err . . . because not all class members stand to benefit from injunctive relief, the kind of relief the proposed settlement primarily provides." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 142 (2d Cir. 2020).

Huang recognizes that consumers are likelier to buy chicken again than buyers of J&J sunscreen or Barilla pasta, whose injunctive claims failed. But *no one buys directly from Agri Stats.* Plus "as a general rule, our system is designed around the premise that parties represented by competent counsel know what is best for them[.]" *United States v. Sineneng-Smith,* 590 U.S. 371, 375-76 (2020) (cleaned up). Therefore, if EUCPs' complaint pleaded no facts, offered not even guesswork of future "certainly impending" antitrust injury in broiler purchases traceable to Agri Stats, they have no standing to demand an injunction when they have demonstrated no imminent risk of future harm.

**B. Article III Redressability axiomatically fails once the injunction expires**

Even assuming a cognizable future injury, redressability is another defect, because private plaintiffs lack the regulatory powers that exclusively belongs to the executive branch. A remedy redresses an injury only where it is "likely," as opposed to "speculative," that it will do so, *Lujan*, 504 U.S. at 561, and the relief must address "a 'continuing violation' or the 'imminence of a future violation,'" be "limited to the inadequacy that produced the injury in fact," with its scope "dictated by the extent of the

11

violation established." Br. for the United States at 23-24, *Frank v. Gaos*, 2018 WL 3456069 (U.S. July 16, 2018) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 187-88 (2000); *Gill v. Whitford*, 585 U.S. 48, 66 (2018); *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Injunctive relief must "'encourage [the] defendant[] to discontinue current violations' . . . and 'deter [the defendant] from committing future ones' against the plaintiffs." *Id.* at 24 (quoting *Laidlaw*, 528 U.S. at 181, 186).

A five-year injunction cannot satisfy that test for the period that matters most: ***after it expires.*** It is speculative enough to argue that limited-time injunction will transform Agri Stats' business practices to "deter [the defendant] from committing future ones[.]" *Id.* It is *impossible* after the injunction expires as the acts can lawfully resume. Because the injunction cannot stop Agri Stats from anything in year 6, the injunction cannot satisfy Article III redressability because EUCPs are not regulators, and every form of relief they seek must satisfy the bedrock principles of Article III standing.

### C. *TransUnion* rejected structural mismatches for prospective injunctive relief to somehow redress a retrospective financial injury

The injury the class actually suffered is ***monetary***: overcharges paid on broilers bought between 2012 and 2019. An ***injunction in future does not redress with a single dollar*** for overcharges. Under *TransUnion*, the relief sought must match the injury asserted, and a forward-looking injunction does not redress a retrospective pocketbook injury. 594 U.S. at 431. The settlement releases the only claim that fits the injury (damages) but the proposed relief (a prospective injunction) is not even partial relief.

12

**D. EUCPs cannot re-plead backward to fit a settlement already signed**

EUCPs may not cure this by retrofitting their certified-class complaint now to manufacture allegations of imminent future injury, which is barred by *Clapper*. 568 U.S. at 416 (Plaintiffs cannot "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.")

Standing *was* assessed as of class certification (a "case or controversy" must exist "at the time the class action is certified by the District Court pursuant to Rule 23." *Sosna v. Iowa,* 419 U.S. 393, 402 (1975)), and must be at the settlement approval. *Frank,* 586 U.S. at 492. But because EUCPs have not shown imminence or redressability, the mismatch between damages (sought) and injunction (proposed) bars the settlement.

\* \* \*

The settlement offers $0 value while an unresolved appeal *has* value; the five-year sunset injunction is "substantively empty" against the alleged price-fixing; no named plaintiff has Article III standing for forward-looking relief offered; EUCPs are ending a live (b)(3) damages class for illusory relief and more releases in *Koby*; and equity forbids billing the class at least $23,000 to fund an illusory trophy. The valuable damage claims demand that counsel get more for it, without scheduling the alleged conduct's return.

Because EUCPs has a nonzero chance to win their appeal as they pursued, they must not fold with a *zero dollar settlement*, only because Andren cost them $12 million.

## CONCLUSION

This Court should deny final approval for parties to do better, or return to appeal.

Huang should be permitted to present argument remotely in the fairness hearing.

13

Date: June 27, 2026                            Respectfully Submitted,

                                               /s/Shiyang Huang
                                               Shiyang Huang
                                               2813 SW Rother Rd.,
                                               Topeka, KS 66614
                                               (314) 669-1858
                                               defectivesettlement@gmail.com

## CERTIFICATE OF SERVICE

I certify that on or before June 27, 2026, a true and correct copy of the foregoing

was filed with this Court. CM/ECF will then notify all counsels of record electronically.

                                               /s/ Shiyang Huang

14

**EXHIBIT A. Notice Delivered to Gmail Spam Folder (reproduced from R.8448)**



15