**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | Case No. 1:16-cv-08637 |
| This Document Relates To:<br><br>*All Direct Purchaser and Commercial and Institutional Indirect Purchaser Plaintiff Actions* | Honorable Thomas M. Durkin |
| JOHN ANDREN,<br><br>Objector. | |

**JOHN ANDREN'S AND THE HAMILTON LINCOLN LAW INSTITUTE'S MOTION TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT**[1]

[1] Counsel for HLLI and Andren emailed Class Counsel regarding this motion. Direct Purchaser Plaintiffs advised they oppose the motion, but agreed to a proposed schedule permitting counsel two weeks for opposition and HLLI/Andren one week for reply. Commercial and Institutional Indirect Purchaser Plaintiffs have not at this time responded to the email inquiry, but presumably also oppose the motion.

## TABLE OF CONTENTS


TABLE OF CONTENTS ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 3

ARGUMENT ........ 4

I. Andren and HLLI have Article III standing to pursue their equitable claim for compensation. ........ 4

II. Andren and HLLI satisfy Rule 24(a)(2). ........ 7

- A. The motion is timely because the interest supporting intervention arose only when *Broiler II* produced a definite benefit to these funds. ........ 7
- B. Andren and HLLI possess a direct interest in the funds and the equitable allocation of compensation among them. ........ 9
- C. Distribution of the funds would impair or extinguish the claimed interest. ........ 10
- D. No existing party represents Andren's or HLLI's interest. ........ 10

III. Alternatively, the Court should grant permissive intervention. ........ 11

IV. The pending Fee Motion supplies the claim for which limited intervention is sought. ........ 13

V. Limited intervention permits the Court to equitably allocate compensation among the funds that benefited from HLLI's work. ........ 13

CONCLUSION ........ 15

Certificate of Service ........ 17

## INTRODUCTION

John Andren and his counsel, Hamilton Lincoln Law Institute ("HLLI"), move to intervene for the avoidance of doubt and the limited purpose of pursuing their pending claim for equitable compensation arising from the benefit their work conferred upon the Direct Purchaser Plaintiff ("DPP") and Commercial and Institutional Indirect Purchaser Plaintiff ("CIIPP") settlement funds. Andren and HLLI satisfy all the criteria for intervention as a matter of right under Rule 24(a)(2). Their motion is timely. HLLI claims a direct equitable interest in compensation from funds augmented by its work, while Andren, as an EUCP class member, has a direct pecuniary interest in preventing EUCP claimants from bearing the entire cost of work that benefited all three funds. No party represents their interests. Alternatively, permissive intervention pursuant to Rule 24(b) should be granted.

Intervention should not be necessary. A claim for attorneys' fees is collateral to the underlying merits, and the common-benefit doctrine permits an attorney whose work creates or preserves a fund for others to seek reasonable compensation from the beneficiaries of that work. Andren and HLLI accordingly filed their fee motion without purporting to become DPP or CIIPP class members, asserting antitrust claims, objecting to their settlements, or otherwise participating in the merits of those actions. Class Counsel nevertheless contend that Andren's nonparty status categorically prevents the Court from considering the request. CIIPP Counsel expressly argue that Andren could not seek compensation "without successfully intervening." Dkt. 8513 ("CIIPP Opp."), at 5. DPP Counsel similarly contend that Andren's status as a non-DPP class member deprives him of standing to request compensation from the fund. Dkt. 8512 ("DPP Opp."), at 4-9. Granting this motion eliminates any possible procedural objection.

Both Andren and HLLI have a direct interest in the limited controversy now before the Court. Their work produced *In re Broiler Chicken Antitrust Litigation*, 142 F.4th 568 (7th Cir. 2025) ("*Broiler II*"). This Court applied *Broiler II* to DPP and CIIPP Counsel's pending fee requests because the Seventh Circuit had established the market rate "in this case," reducing the requested fees from 33⅓% to 26.6% and leaving an additional $10,258,077.12 for DPP and CIIPP claimants. Dkt. 8405 at 2-4.

Neither set of Class Counsel disputes that arithmetic. On the same day, the Court compensated Andren and HLLI from the EUCP fund for the same work because the "clarification of the law in this Circuit" provided a compensable benefit to EUCP claimants. Dkt. 8404 at 12.

The resulting controversy is concrete. HLLI claims an equitable right to reasonable compensation from the two additional funds that benefited from its work. Andren also has an equitable interest in preventing EUCP claimants—of whom he is one—from alone bearing the cost of work that benefited three classes. Class Counsel deny both propositions and seek to distribute the funds without any such allocation. A decision granting the pending fee motion will redress that injury.

This is precisely the kind of economic interest that common-benefit doctrine recognizes. The Supreme Court has described the prospect of "allocating" attorneys' fees among all class members who benefit from a recovery as a "central concept of Rule 23." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 n.9 (1980). And Seventh Circuit law recognizes that intervention may become timely only when an existing party's conduct first threatens the intervenor's interest. *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 572-73 (7th Cir. 2009).

The motion is therefore timely. Andren and HLLI had no reason—and no right, according to Class Counsel's standing theory—to intervene in DPP or CIIPP litigation before their work produced a benefit to those funds. Their present interest arose only when this Court applied *Broiler II* to the pending DPP and CIIPP fee petitions on May 21, 2026, and thereby created a definite and quantifiable $10.258 million benefit. Dkt. 8405 at 2.

Andren notified Class Counsel of the intended fee request less than two months later on July 15 and promptly thereafter moved for fees. Dkt. 8499-1. Intervention now adds no claim, discovery, factual issue, or delay beyond adjudication of the already-briefed collateral fee dispute.

Rule 24(a)(2) therefore permits intervention as of right. At minimum, permissive intervention under Rule 24(b) is appropriate. The Court should grant intervention for the limited purpose of resolving the pending fee motion and any proceedings concerning the equitable allocation of compensation for the benefits produced by Andren and HLLI's work.

**BACKGROUND**

Andren is a member of the EUCP class. Through attorneys at HLLI's Center for Class Action Fairness, he objected to EUCP Class Counsel's first-round fee request on November 10, 2021. Dkt. 5182. After this Court granted the request, Andren appealed and obtained vacatur of the fee award. *In re Broiler Chicken Antitrust Litig.*, 80 F.4th 797 (7th Cir. 2023) ("*Broiler I*"). On remand, the Court entered another fee award, which Andren again appealed. The second appeal resulted in *Broiler II*, which held that the market rate for class counsel's services was 26.6% of the net common fund rather than the 33⅓% requested. 142 F.4th at 576; *see* Dkt. 8404 at 1-2 (describing appeals).

That work ultimately increased the EUCP fund by $12,431,228.20. Dkt. 8404 at 8. The Court found that Andren had conferred a compensable benefit upon the EUCP class and awarded HLLI $837,035.62—6.73333% of the amount preserved for the class. *Id.* at 8, 12–13. The Court specifically held that the appellate work provided "clarification of the law in this Circuit," which was "a benefit the Class must pay for." *Id.* at 12.

Unexpectedly to Andren and HLLI, EUCP claimants were not the only beneficiaries.

While *Broiler II* was pending, DPP and CIIPP Counsel sought second-round fees from their respective settlement funds. DPP and CIIPP Counsel each sought 33⅓% from their respective second-round settlements. Dkts. 7825 at 11; 7731 at 6. Before obtaining the *Broiler II* opinion, CCAF filed an *amicus* brief concerning DPP's motion for fees, arguing that the *Interest Rate Swaps* agreement was also probative to the DPP *ex ante* fee agreement, contrary to DPP's expert. Dkt. 7289 at 3-4. After *Broiler II*, this Court ordered DPP and CIIPP Counsel to address its effect upon their pending requests. DPP Opp. 3. They argued that the 26.6% rate should not govern. Dkt. 8405 at 1-2. The Court rejected those arguments because "[t]he Seventh Circuit has definitively decided what the market value of class counsel services is *in this case* in particular." *Id.* at 2.

Application of *Broiler II* preserved an additional $7,777,097.31 for DPP claimants and $2,480,979.81 for CIIPP claimants, a total of $10,258,077.12. Dkt. 8499 ("Fee Memo.") at 7. Neither opposition disputes these figures.

On July 15, HLLI notified DPP and CIIPP Counsel that Andren intended to seek equitable

compensation for these additional benefits. Dkt. 8499-1. On July 27, Andren filed his fee motion seeking $523,657.88 from the DPP fund and $167,052.63 from the CIIPP fund—the same 6.73333% of the benefit that the Court had determined was appropriate compensation for the EUCP benefit. Fee Memo at 7-8.

DPP and CIIPP Counsel opposed. Among other arguments, they contend that Andren cannot request fees because he is not a member of their classes. DPP Opp. 4-9; CIIPP Opp. 1-5. CIIPPs additionally argue that Andren cannot obtain compensation as a nonparty without intervention and contend that any intervention now would be untimely. CIIPP Opp. 5-8.

Andren and HLLI move to intervene for the avoidance of any doubt about their procedural status and to preserve their rights concerning adjudication of the pending fee claim.

## ARGUMENT

### I. Andren and HLLI have Article III standing to pursue their equitable claim for compensation.

Class Counsel's standing argument confuses standing with the merits.

Article III requires an injury in fact fairly traceable to the challenged conduct and redressable by the requested relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Non-parties possess standing to the extent they suffer from a non-speculative injury-in-fact. *See Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 692 (7th Cir. 2015). HLLI easily satisfies that requirement. It asserts an equitable entitlement to $690,710.51 for legal services that produced a $10.258 million benefit to the DPP and CIIPP funds. Class Counsel oppose that payment.

The Seventh Circuit's formulation in *In re Synthroid Marketing Litigation*, quoted by DPPs, is particularly apt. DPP Opp. 5. There, parties challenging an allocation of attorneys' fees had standing because they "stand to receive more from the settlement fund if they win on this appeal than if they lose; payments to counsel come at their expense, and this loss is redressable by a favorable judicial decision. What more is required for standing?" 325 F.3d 974, 976 (7th Cir. 2003). The same analysis applies here: HLLI stands to receive $690,710.51 if its equitable claim succeeds and nothing if it fails. That concrete pecuniary interest satisfies Article III. Intervention for equitable allocation of attorneys'

fees is permissible even when the intervenor is not a member of any certified class. *See Alcarez v. Akorn, Inc.*, 99 F.4th 368, 375 (7th Cir. 2024) (reversing denial of intervention HLLI director).

Andren has an additional interest in that equitable allocation. He is an EUCP claimant. The present arrangement requires EUCP claimants alone to bear the $837,035.62 cost of work that produced benefits for three separate funds. DPP and CIIPP claimants received $10.258 million from that same work but presently contribute nothing toward its cost. The pending fee motion seeks to remedy that imbalance by requiring each benefited fund to bear a modest percentage of the value it received. *Roper* confirms that this allocation interest is a cognizable pecuniary interest rather than an abstract concern about fairness. There, even after the named plaintiffs had been tendered all the individual relief they sought, the Supreme Court held that their remaining economic interest in class certification supplied the requisite personal stake. 445 U.S. at 332-40. The Court specifically recognized the economic significance of spreading litigation expenses among those who benefit: "A significant benefit" of aggregate litigation is "reducing [claimants'] costs of litigation, particularly attorney's fees, by allocating such costs among all members of the class who benefit from any recovery." *Id.* at 338 n.9. Cost-spreading constitutes "a central concept of Rule 23." *Id.*

In their oppositions to the fee motion, Class Counsel repeatedly invoke "standing," but largely address questions that the motion does not present. *See* DPP Opp. 5-7; CIIPP Opp. 1-2, 5-8. Those propositions do not answer whether Andren and his counsel may invoke this Court's equitable authority to seek compensation for a benefit their work already conferred on the DPP and CIIPP funds. Allocating common funds is a core equitable power of the Court.

Standing to object to a settlement is not coextensive with standing to seek common fund fees. To be clear, Andren does not seek or require standing to litigate the antitrust claims belonging to DPP or CIIPP class members. Nor does he claim a right to object to their settlements. Standing for the fee claim exists as a collateral equitable controversy about compensation for services already rendered and benefits already received. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990). Ancillary jurisdiction exists because the DPP and CIIPP common funds have a "direct relation to property or assets actually or constructively drawn into [this Court's] possession or control by the principal suit."

*Fulton National Bank of Atlanta v. Hozier*, 267 U.S. 276, 280 (1925); *see also O'Donnell v. Saul,* 983 F.3d 950, 955 (7th Cir. 2020) (discussing ancillary jurisdiction with respect to allocating attorneys' fees); *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1300 (7th Cir. 1995) (same).

HLLI and Andren plainly have Article III standing to litigate that monetary claim. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 344 (2016) (Thomas, J., concurring) ("Many traditional remedies for private-rights causes of action—such as for … *unjust enrichment*—are not contingent on a plaintiff's allegation of damages beyond the violation of his private legal right.") (emphasis added). A concrete claim to money based on a historically-rooted quantum meruit equitable theory readily satisfies those requirements.

The question Class Counsel actually dispute is whether common-benefit law gives Andren and HLLI a legal entitlement to that money. That is a merits question. A plaintiff does not lack Article III standing merely because the defendant contends that the law supplies no cause of action or that the plaintiff will lose on the merits. *E.g., Krasno v Mnookin*, 148 F.4th 465, 477 (7th Cir. 2025). Class Counsel cannot transform their disagreement with that doctrine's application into a constitutional jurisdictional defect.

The MDL cases cited by Andren's Fee Motion expose the mismatch. Counsel acknowledge that *Vioxx* permitted attorneys representing clients in state proceedings to receive compensation for common-benefit work administered through the federal MDL. DPP Opp. 6-7. Those attorneys did not thereby acquire standing to litigate federal MDL plaintiffs' claims. They did not need it. In fact, the *Vioxx* fee awards include attorneys who never participated in coordination, litigated their own trial, and represented clients specifically *excluded* from the MDL settlement. *In re Vioxx Prods. Liab. Litig.*, 802 F. Supp. 2d 740, 791-94 (E.D. La. 2011). This is analogous to Andren's status as an antitrust claimant who is by definition not a member of the DPP or CIIPP classes. His work still measurably benefited other classes in the same litigation but outside the bounds of his class.

Thus, the question is not whether Andren can assert class members' rights. He does not. The relevant interest belongs to Andren and HLLI themselves: their asserted equitable right to reasonable

compensation for their work.[2]

CIIPPs contend that, even apart from Article III standing, Andren's fee motion is procedurally defective because he did not first intervene under Rule 24. CIIPP Opp. 5-8. They rely principally on cases establishing the unremarkable proposition that a nonparty ordinarily cannot "inject himself into a case" or appeal a judgment without becoming a party. *Id.* at 5-6. The Court need not resolve that procedural question. Although intervention should be unnecessary to adjudicate such a collateral, equitable claim, HLLI has moved to intervene for the limited purpose of seeking the fees at issue, eliminating any possible concern about its procedural status.

## II. Andren and HLLI satisfy Rule 24(a)(2).

In order to intervene as a matter of right, a party must satisfy four requirements: (1) the application must be timely; (2) "the applicant must claim an interest relating to the property or transaction which is the subject of the action"; (3) "the applicant must be so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"; and (4) "existing parties must not be adequate representatives of the applicant's interest." *Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 945-46 (7th Cir. 2000).

Each requirement is satisfied.

### A. The motion is timely because the interest supporting intervention arose only when *Broiler II* produced a definite benefit to these funds.

CIIPPs call intervention "grossly untimely" because Andren did not participate in their decade of antitrust litigation or intervene when CIIPP Counsel previously sought fees. CIIPP Opp. 6-7. This measures timeliness from the wrong event.

The Seventh Circuit does not require a person to intervene before circumstances create a need to protect his interest. *Flying J* is instructive. An association moved to intervene only after the existing governmental defendant decided not to appeal. 578 F.3d at 571-72. The Seventh Circuit held

[2] DPPs cite *Douglas v. W. Union* for the proposition that the fee request is a "highly questionable proposition," but the court found the non-class member's claim "undeveloped" and waived because the non-party never explained the basis for fees. *Douglas v. W. Union Co.*, Civ. No. 14-1741, 2019 WL 10820634, 2019 U.S. Dist. LEXIS 233913, at *3 (N.D. Ill. Apr. 24, 2019).

intervention timely because there had previously been "nothing to indicate" that the existing party would abandon the case; requiring earlier intervention would merely have complicated the proceedings. *Id.* at 572. Once the triggering event occurred, the objection to intervention "evaporated." *Id.*

The same reasoning applies more forcefully here. Before *Broiler II*, HLLI had no claim that its work had preserved $10.258 million for DPP and CIIPP claimants. Before Dkt. 8405, it remained uncertain whether this Court would apply *Broiler II* to their pending fee applications at all; indeed, Class Counsel argued that it should not. Only on May 21, 2026, when this Court rejected those arguments and applied 26.6%, did the benefit become definite and the equitable allocation issue concrete.

It would make little sense to fault Andren and HLLI for failing to intervene sooner. Class Counsel simultaneously argue that Andren had no standing to participate in their fee proceedings because he was not a member of their classes. DPP Opp. 4-9; CIIPP Opp. 1-5. According to that theory, an earlier motion to intervene would have been premature because Andren and HLLI had no interest in those funds before their work actually benefited them. They cannot now convert that absence of an earlier interest into untimeliness after the interest arose.

After May 21, HLLI and Andren acted promptly. Movants notified Class Counsel of its claim by July 15, attempted to confer, and filed the fee motion on July 27. Dkt. 8499-1. They now move to intervene only because the oppositions filed August 17 newly insist that nonparty status independently bars adjudication. CIIPP Opp. 5-8. Thus, to the extent formal intervention is necessary at all, the need for it became apparent only upon Class Counsel's procedural objection. *See*, *e.g.*, *In re Discovery Zone Securities Litigation*, 181 F.R.D. 582, 594 (N.D. Ill. 1998) (finding intervention timely approximately one month after movant learned its interests were not protected).

Nor is there cognizable prejudice. Intervention adds no new merits claim, discovery, evidentiary proceeding, or liability theory. It merely supplies the procedural status Class Counsel say is missing from a fee dispute that is already fully briefed. Any delay associated with adjudicating the fee motion exists regardless of its resolution: no further proceedings will spawn from it. The delay in

resolving the Fee Motion and this related Motion to Intervene is not itself prejudicial. *See Flying J*, 578 F.3d at 573 (vacating district court's denial of intervention even though it "would result in an appeal that is otherwise not forthcoming").

### B. Andren and HLLI possess a direct interest in the funds and the equitable allocation of compensation among them.

Andren and HLLI present an equitable claim to a specified portion of identifiable funds presently under this Court's supervision. This easily exceeds Rule 24(a)(2)'s requirement that intervenors possess more than a generalized hope of benefiting from litigation. Their work produced the appellate decision that this Court expressly applied in determining how much of those funds would be paid to Class Counsel and how much would remain for claimants. The pending fee motion seeks $523,657.88 from the DPP fund and $167,052.63 from the CIIPP fund.

The common-fund doctrine supplies the substantive source of that interest. A person whose legal efforts create, preserve, or augment a common fund may claim reasonable compensation from those who received the benefit. *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 125-27 (1885); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002). This Court has already held that HLLI's work produced precisely such a compensable benefit to EUCP claimants. Dkt. 8404 at 5, 12. This direct interest in equitable property is unlike a claim that a particular decision would, for example, make a creditor wealthier. *Flying J*, 578 F.3d at 571-72. The fact that HLLI did not represent DPP or CIIPP claimants does not eliminate its claimed interest. That question goes to the merits of the common-benefit claim addressed in the fee briefing.

CIIPPs' reliance on *Hilsey v. Ocean Spray Cranberries, Inc.*, does not show otherwise. CIIPP Opp. 7, No. 17CV2335-GPC (MDD), 2020 WL 475164, 2020 U.S. Dist. LEXIS 14813 (S.D. Cal. Jan. 29, 2020). In *Hilsey*, proposed intervenors sought compensation for work in a genuinely separate case. The *Hilsey* court did not find any class or common benefit, but suggested that the would-be intervenors could be granted fees as objectors if they could prove such benefit. 2020 U.S. Dist. LEXIS 14813, at *17. Here, the litigation is the same, and the common benefit is clear from the Court's orders, and—as Class Counsel repeatedly reminds the Court—Andren cannot be an objector in the DPP or CIIPP

tracks.

Andren independently has an interest in the equitable allocation of the cost among the three benefited funds. *Roper* recognizes that spreading the costs of successful aggregate litigation among the beneficiaries is not some extraneous interest; it is "a central concept of Rule 23" and can stand as the "personal stake" necessary for Article III adjudication. 445 U.S. at 334 n.6, 338 n.9. EUCP claimants presently alone finance the work that produced *Broiler II*. The pending motion asks the Court to allocate part of that expense to the two additional funds that received another $10.258 million from the same work.

### C. Distribution of the funds would impair or extinguish the claimed interest.

The impairment requirement is straightforward. DPP and CIIPP Counsel seek distribution of the settlement funds without paying the compensation HLLI claims. Rule 24 asks whether disposition "may as a practical matter impair or impede" the interest. Fed. R. Civ. P. 24(a)(2). Once the money is distributed among thousands of claimants, obtaining equitable compensation from those funds becomes, at minimum, vastly more difficult and potentially impossible, and this is enough for intervention. *See United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 416 (5th Cir. 1991) (finding sufficient protectable interest from "the fact that the discharged firm would have had to initiate a subsequent action to collect the fees allegedly generated in the existing litigation.").

Nor does the theoretical possibility of pursuing beneficiaries individually eliminate practical impairment. *Flying J* rejected similarly formalistic reasoning where requiring a proposed intervenor to "start over" would impose "substantial inconvenience" with no offsetting benefit. 578 F.3d at 573. Here starting over would be especially pointless: the equitable claim concerns legal work performed in this MDL, the Court's application of *Broiler II* in this MDL, and settlement funds already subject to this Court's supervision.

### D. No existing party represents Andren's or HLLI's interest.

The final requirement is indisputable. No existing party seeks compensation for HLLI or an equitable allocation of its fees among the three benefited funds.

Quite the opposite. DPP and CIIPP Counsel vigorously oppose the fee request. Nor does EUCP Class Counsel represent the relevant interest. The Court has already deducted HLLI's award from the EUCP fund. Dkt. 8404 at 11-13. No existing party seeks to correct the resulting allocation under which EUCP claimants bear the entire cost of work benefiting three claimant groups.

An intervenor's burden to establish inadequate representation is ordinarily "minimal"; it is enough to show that representation of the interest "may be" inadequate. *Ligas v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007); *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (describing "minimal" burden to make that showing).

## III. Alternatively, the Court should grant permissive intervention.

Even if Rule 24(a)(2) did not compel intervention, Rule 24(b)(1)(B) independently permits it. "The proposed intervenor must demonstrate that there is (1) a common question of law or fact, and (2) independent jurisdiction." *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). Here, movants assert a claim sharing questions of law and fact with matters before the Court. Permissive intervention does not repeat Rule 24(a)(2)'s protectable-interest or impairment requirements. *Flying J*, 578 F.3d at 573. It requires, as relevant here, a common question of law or fact and timeliness. *Id.*; Fed. R. Civ. P. 24(b)(1)(B).

The legal overlap could hardly be closer. HLLI's equitable claim asks whether the work resulting in *Broiler II* preserved part of the DPP and CIIPP settlement funds and, if so, whether those beneficiaries should contribute a reasonable amount toward the cost of producing that benefit. Resolving that claim requires examination of the same fee petitions, the same *Broiler II* decision, and the same order that determined how the DPP and CIIPP funds would be divided between Class Counsel and claimants.

CIIPP Counsel argue otherwise because Andren did not litigate the underlying antitrust claims. CIIPP Opp. 7-8. But that defines the relevant "main action" far too broadly. Andren and HLLI do not propose to litigate chicken prices, antitrust liability, damages, certification, or settlement approval. They seek limited intervention concerning attorneys' fees, and their claim arises directly from this

Court's adjudication of attorneys' fees from these funds.

In evaluating a permissive intervention under Rule 24(b), "the court must give some weight to the impact of the intervention on the rights of the original parties." *Security Ins. Co.*, 69 F.3d at 1381. CIIPPs say that intervention would "delay distribution of the settlement funds to CIIPP class members" (CIIPP Opp. 8), but CIIPPs have not yet filed a motion to distribute. CIIPPs identifies no distribution order, scheduled distribution date, or record evidence showing that limited intervention would delay an otherwise imminent distribution.

DPPs' argument is more serious because their June status report indicated distribution would begin today, August 24, under their already-approved distribution order. Dkt. 8459. Assuming this would have occurred as planned (DPPs' opposition does not affirmatively say so), distribution is already delayed by briefing of the underlying motions. Dkt. 8503. At this point, granting intervention should not materially delay distribution any more than denying it so long as intervention is decided the together with the Fee Motion itself, as HLLI and Andren request. If granted, the administrator need only recalculate payments to set aside fees for Andren and his counsel from the relatively small number (1,305) of claimants validated for the DPP settlement fund. Dkt. 8274 at 9.

The absence of prejudice also favors permissive intervention. The Court need not reopen discovery, alter any settlement, revisit liability, or delay adjudication of any merits question. The fee motion is already filed and briefed. Intervention merely resolves the procedural objection Class Counsel themselves raised.

If anything, refusing intervention because HLLI did not inject itself earlier into litigation in which it had no then-existing claim would create perverse incentives. Lawyers whose work unexpectedly produces substantial value for another fund would be required to intervene prophylactically in every potentially affected proceeding or risk forfeiting a later common-benefit claim. That would multiply parties and satellite litigation without serving Rule 24's purposes. *Flying J* counsels the opposite approach: intervention should occur when the need for it actually arises, not before. 578 F.3d at 572-73.

## IV. The pending Fee Motion supplies the claim for which limited intervention is sought.

Rule 24(c) requires a motion to intervene to be accompanied by "a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Here, however, Andren and HLLI seek intervention only for the limited purpose of adjudicating the collateral claim already set forth in their pending Fee Motion. Dkt. 8499. That motion identifies the precise equitable claim, the funds against which it is asserted, the legal basis for compensation, and the exact relief requested. Requiring movants now to recast that same collateral fee claim as a complaint-in-intervention would serve no notice function and would elevate form over substance.

Class Counsel suffer to prejudice here; they have already filed oppositions addressing the Fee Motion on its merits, including the very equitable entitlement for which intervention is sought. The Fee Motion therefore performs the function Rule 24(c)'s pleading requirement serves: it tells the existing parties exactly what claim movants seek to litigate upon intervention.[3]

## V. Limited intervention permits the Court to equitably allocate compensation among the funds that benefited from HLLI's work.

Finally, intervention permits the Court to address the equitable substance of the dispute without allowing labels concerning party status to obscure what actually occurred.

One body of work produced three identifiable benefits. HLLI's successful appellate litigation preserved $12,431,228.20 for EUCP claimants. Dkt. 8404 at 8. This Court determined that a reasonable fee for that benefit was $837,035.62, or 6.73333% of the amount preserved. Id. The same appellate work then preserved another $7,777,097.31 for DPP claimants and $2,480,979.81 for CIIPP claimants when the Court applied *Broiler II* to their pending fee applications. Dkt. 8405 at 1-4.

The present allocation is therefore anomalous:

---

[3] If the Court concludes that Rule 24(c) nevertheless requires a formal pleading, movants respectfully request leave to file a pleading setting forth the identical equitable claim rather than denial of intervention on that curable procedural ground.

| Benefited Fund | Benefit from HLLI/Andren | Contribution |
|---|---|---|
| EUCP | $12,431,228.20 | $837,035.62 |
| DPP | $7,777,097.31 | $0 |
| CIIPP | $2,480,979.81 | $0 |

That is precisely the free-rider problem common-benefit doctrine addresses. *See Boeing*, 444 U.S. at 478; *Roper*, 445 U.S. at 338 n.9. The doctrine prevents beneficiaries from accepting the fruits of another's legal efforts while shifting the entire cost of producing those fruits elsewhere.

And intervention allows the Court flexibility to fashion the equitable remedy it considers appropriate. The pending motion seeks compensation from the DPP and CIIPP funds using the same percentage methodology this Court already employed for EUCPs. But if the Court concludes that simply adding the two requested awards would allocate too much aggregate compensation to HLLI, the answer is equitable reallocation, not allowing DPP and CIIPP beneficiaries to pay nothing.

The Supreme Court's class-action decisions emphasize substance over precisely this sort of allocational formalism. *Roper* recognized the importance of allocating litigation costs among beneficiaries. 445 U.S. at 338 n.9. And *Young v. Higbee Co.*, 324 U.S. 204, 210–14 (1945), required equity to look beyond formal party status where litigation concerning a common interest generated value affecting an entire group. The Seventh Circuit has recently rekindled *Young*'s principles. *See Pearson v. Target Corp.*, 968 F.3d 827, 832-34 (2020). In *Pearson*, HLLI's intervention motion invoked these principles to prevent litigation-generated value from being diverted inequitably among persons with common interests.

Accordingly, the Court may either (1) award the requested $523,657.88 and $167,052.63 from the DPP and CIIPP funds; or, alternatively, (2) determine an appropriate aggregate compensation for HLLI's work and equitably allocate that compensation among the EUCP, DPP, and CIIPP funds in proportion to the respective benefits each received, including ordering such reimbursement, or adjustment of the prior fee allocation as necessary to avoid placing the entire cost upon EUCP claimants.

EUCP class member Huang and DPPs suggest, through different frames of reference, that the Court can correct the disparity by shifting funds from the DPP and CIIPP common funds toward the EUCP fund. Dkt. 8514, DPP Opp. 9 (faulting Andren for not offering to reimburse the EUCP class, which would work the same mathematical result as shifting funds from the DPP/CIIPP funds to the EUCP common fund). Movants agree that this would correct the disparity, but Andren and HLLI believe the Court already determined 6.73333% to be an appropriate fee award on a percentage basis. The Court determined that "because Andren saved the Class 6.73333%, he should receive 6.73333% of the amount he saved." Dkt. 8404 at 8. The same savings exist in the DPP and CIIPP funds, where each counsel requested 33⅓%, so the class benefit is the same figure: 6.73333%. That said, the Court could, of course, award a smaller percentage and reimburse the EUCP fund so that all three funds contribute equitably toward the Andren/HLLI fee award.

Such relief would also answer Class Counsel's principal "double recovery" objection. DPPs accuse HLLI of attempting to "profit three times over for the same amount of work" (DPP Opp. 9), while CIIPP Counsel contend that because EUCPs already paid $837,035.62, "there is no inequity that needs redress." CIIPP Opp. 13. But those arguments prove the allocation problem. If the Court concludes that $837,035.62 fully compensated HLLI for all benefits produced, then equity asks which beneficiaries should bear that $837,035.62 cost. There is no evident reason that EUCP claimants alone should pay 100% of a cost incurred to generate roughly $22.7 million in benefits across three funds.

## CONCLUSION

Andren and HLLI respectfully request that the Court grant their motion to intervene pursuant to Rule 24(a)(2), or alternatively Rule 24(b)(1)(B), for the limited purpose of pursuing their pending claim for attorneys' fees and equitable allocation of those fees among the settlement funds benefited by their work.

Dated: August 24, 2026

/s/ M. Frank Bednarz
M. Frank Bednarz
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1440 W. Taylor St # 1487
Chicago, IL 60607
Phone: (801) 706-2690
Email: frank.bednarz@hlli.org

*Attorney for Objector John Andren and Hamilton Lincoln Law Institute*

**Certificate of Service**

The undersigned certifies he electronically filed the foregoing Memorandum in Support of Intervention via the ECF system for the Northern District of Illinois, thus effecting service on all attorneys registered for electronic filing.

Dated: August 24, 2026

/s/ M. Frank Bednarz