UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION | No. 16 C 8637<br><br>Judge Thomas M. Durkin |

## MEMORANDUM OPINION AND ORDER

Sysco Corp. brought antitrust claims against Tyson Foods, Inc. (and its related entities ("Tyson")) and acquired funding from Burford Capital LLC to finance its litigation. Sysco eventually assigned its claims against Tyson to Burford's related entity, Carina Ventures LLC. Tyson brings a counterclaim of tortious interference with prospective economic advantage against Burford and Carina, alleging that Burford wrongfully prevented Sysco from settling its claims against Tyson. Burford and Carina move to dismiss the counterclaim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). That motion is granted.

## Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual

allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

**Analysis**

"Under Illinois law (which the parties agree controls this claim), the elements of tortious interference with prospective economic advantage are: (1) that the plaintiff had a reasonable expectation of entering into a valid business relationship, (2) that the defendant knew of this expectancy, (3) that the defendant intentionally and unjustifiedly interfered to prevent the expectancy from being fulfilled, and (4) that damages to the plaintiff resulted from the interference." *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 502 (7th Cir. 1998). The Court finds that Tyson has failed to plausibly allege both that: (1) it had a "reasonable expectation" that its settlement with Sysco would be consummated; and (2) that Burford unjustifiedly interfered with the settlement.

## I. Reasonable Expectation

First as to its expectation, Tyson alleges that it did not accept Sysco's last settlement offer because it expected that Sysco would reassess the value of the claims it had assigned to its customers and make a reduced counteroffer. *See* R. 7631 at 643 (¶ 46). In other words, Tyson concedes that *Sysco* made the last settlement offer which Tyson did not accept, because Tyson hoped that Sysco would return with a lower counteroffer. *See id.* (¶ 51) (Sysco made "the last settlement demand"). About two weeks after Sysco informed Tyson that its "last settlement demand would remain unchanged," Tyson still had not accepted the offer, and at that point settlement negotiations ended. *See id.* at 644 (¶ 52).

Tyson cites no authority stating that a party that rejects an offer without making a counteroffer has a reasonable expectation that it will receive a revised offer. This scenario—hoping and failing to receive a better offer—is not uncommon in the context of settlement negotiations.

Tyson argues that the circumstances of its negotiations with Sysco were different and it was reasonable for Tyson to expect that Sysco would return with a lower offer. Perhaps, considering the circumstances, that was a reasonable settlement negotiation position for Tyson to take. But the reasonable nature of the negotiation posture does not mean that it was reasonable for Tyson to believe that the settlement had been resolved. No such assurance was possible once Tyson declined to accept Sysco's last offer. Any expectation that a settlement would be reached after that rejection cannot be characterized as anything more than a "hope"

which cannot support a claim for tortious interference. *See*, *e.g.*, *Anderson v. Vanden Dorpe*, 667 N.E.2d at 1295, 1299-1300 (Ill. 1996) ("The hope of receiving a job offer is not a sufficient expectancy," even when it is based on allegations that the plaintiff was "the 'leading candidate' for the YMCA position, that she had been assured that her interviews had gone well and that she was being 'seriously considered' for the job, and that those who had interviewed her were going to recommend that she be hired[.]"); *Williams v. Weaver*, 495 N.E.2d 1147, 1152 (Ill. App. Ct. 1986) ("Thus, while plaintiff may have entertained a hope that he would remain in his position as an instructor in 1979 and future years, the mere hope of continued employment, without more, does not, in our opinion, constitute a *reasonable* expectancy as must exist to state a cause of action for tortious interference."); *Sheth v. Nat'l Ass'n of Realtors*, 2025 WL 1167852, at *8 (N.D. Ill. Apr. 22, 2025) ("Federal courts applying Illinois law have repeatedly applied *Anderson* to reject claims for intentional interference with prospective business advantage where the plaintiff does not have an actual job offer but instead has merely the hope of receiving a job offer.").

True, the authority that "hope" of a business relationship is insufficient to state a claim is derived from employment cases, which are somewhat dissimilar to the settlement negotiation at issue here. Nevertheless, Tyson does not cite any authority that is materially to the contrary or otherwise identify a principled distinction. Tyson cites only cases finding that allegations of a defendant's disruption of a preexisting customer relationship can be sufficient to state a claim for tortious interference. *See*, *e.g.*, *Medline v. Covidien*, 2008 WL 11518138, at *1 (N.D. Ill. Jan. 3, 2008) ("[the

defendant] distributed or caused to be distributed to certain of [the plaintiff's] customers promotional and advertising materials stating that Medline's gauze products are inferior to [the defendant's]"); *Quantum Foods, LLC v. Progressive Foods, Inc.*, 2012 WL 5520411, at *2-3 (N.D. Ill. Nov. 14, 2012) (the counter-plaintiff had a reasonable expectation of prospective business because the counter-plaintiff had a "track record" with its customers and "certain customers were interested in staying with [the counter-plaintiff]"). The settlement agreement at issue here, however, is not so established as the customer relationships in those cases. Rather, Sysco and Tyson were each free to walk away from negotiations at any point for any reason, regardless of the course of negotiations and however hopeful either party felt at any point. Contrary to Tyson's argument, a settlement negotiation is more like a prospective employment negotiation, for which mere hope is insufficient to establish a reasonable expectation, than it is like an ongoing customer relationship. In the context of a litigation settlement, the Court finds it difficult to say that any party ever has a reasonable expectation that the settlement will occur until it does.

Tyson argues that denying its reasonable expectation here would be akin to requiring allegation of interference with an existing formal contract in order to state a claim for tortious interference, which is contrary to some cases Tyson cites. *See* R. 7843 at 4. But those cases address interference with ongoing customer relationships, which are not necessarily embodied in contract. And customer relationships are, by definition, a pattern of consummated business deals, i.e., purchases, and so are sufficient to plausibly establish a reasonable expectation of future business. By

contrast, a settlement negotiation does not occur in a similar context of repeatedly consummated business deals. Contrary to Tyson's argument, the course of the negotiation of a single, isolated settlement agreement contract, no matter how optimistic, is not analogous to a history of customer purchases. The two contexts are materially different in their relevance to the reasonableness of an expectation that future business will occur. Unlike the utility of a track record of a customer relationship to predict future purchases by that customer, optimistic negotiations at any one point in time do not reasonably predict that a settlement will ultimately be reached. Tyson's claim must fail for that reason.

## II. Improper Conduct

Tyson's claim also must be dismissed for failure to plausibly allege that Burford engaged in improper conduct that caused the settlement negotiations to fail. "To be found liable for tortious interference with prospective economic advantage, a defendant's interference must be intentional and improper." *Timken Gears & Servs., Inc. v. Brad Foote Gear Works, Inc.*, 738 F. Supp. 3d 1018, 1023 (N.D. Ill. 2024) (citing Restatement (Second) of Torts §§ 766B, 767 cmt. a (1979)). "It is insufficient for a plaintiff to show that the defendant merely succeeded by ending the business relationship or interfering with the expectancy; rather, 'purposeful interference'—a showing that the defendant has committed some impropriety—is needed." *Grako v. Bill Walsh Chevrolet-Cadillac, Inc.*, 229 N.E.3d 869, 877 (Ill. App. Ct. 3d Dist. 2023). In other words, "interference is only actionable if [the] plaintiff can show impropriety,

such as fraud, deceit, intimidation, or deliberate disparagement." *Butler v. Hogshead-Makar*, 2024 WL 2959494, at *2 (N.D. Ill. June 12, 2024).

According to Tyson, Sysco was prepared to settle its claims against Tyson until Burford convinced Sysco's counsel—who Tyson alleges was also in an attorney-client relationship with Burford—to work with Burford to "stymie the settlement." *See* R. 7631 at 636; *see also id.* at 647-48 (¶ 81) (alleging that Burford "prevent[ed] Sysco from entering into a settlement agreement with Tyson to further its own interests, including by co-opting Sysco's counsel to thwart the negotiations and otherwise causing [Sysco's counsel] to breach his professional obligations to his client Sysco"). Tyson further alleges that "Burford set out—through [Sysco's counsel]—to block Sysco from continuing to assign its claims and from entering into any settlements, in an effort to increase its anticipated return on its investment in Sysco's claims without regard to Sysco's desire to cease litigating." *Id.* at 637 (¶ 8).

There are, however, no allegations in the counterclaim about what Sysco's counsel allegedly did to prevent Sysco from settling against its will. In its brief, Tyson argues that Burford "deployed" Sysco's counsel "to misrepresent to Sysco the value of its claims." R. 7843 at 10. But no such allegation appears in the counterclaim. Indeed, the word "misrepresentation" is nowhere to be found. Furthermore, even if there were such an allegation in the counterclaim, it would not be plausible. These are sophisticated parties. It is not plausible that Sysco required advice of counsel to determine its damages, which are based on the amount of purchases Sysco made from Tyson, information that is entirely within Sysco's business knowledge. In any event,

Tyson cannot amend its counterclaim to include allegations of misrepresentations through argument in its brief.

What Tyson *does* allege is that Burford believed the proposed settlement amount was too small and so "Sysco and Burford began discussing a potential restructuring" of their litigation funding agreement, including giving Burford "express control to direct the prosecution and settlement of Sysco's claims." R. 7631 at 643 (¶ 49). Tyson implies that Burford's desire to ensure greater settlements for Sysco's claims was somehow improper. But that is simply everyday business decision-making, which is not improper. And it is not disputed that even before Burford gained control of settlement decision-making, it possessed a significant economic interest in the amount of Sysco's settlement as a result of the funding agreement. *See* R. 7631 at 637 (¶ 8) (Burford sought "to increase its anticipated return on its investment in Sysco's claims[.]").

For this reason, even if, as Tyson alleges, Burford used Sysco's counsel to "stymie" the settlement negotiations, Burford was "privileged" to do so because it was effectively Tyson's competitor with respect to the settlement amount.[1] "Under Illinois law, commercial competitors are privileged to interfere with one another's prospective

[1] Tyson does not argue that co-opting Sysco's counsel was an "improper" action directed at Tyson that can suffice to support its claim. This is likely because to the extent it was improper for Burford to interfere in the relationship between Sysco and its counsel, Sysco—not Tyson—was the party that suffered that harm. Sysco's counsel had no duty of any kind to Tyson. Moreover, to the extent the communications between Burford and Sysco's counsel were improper, the impropriety was derived from the professional obligations of Sysco's counsel, and Burford is not bound by those obligations.

business relationships provided their intent is, at least in part, to further their businesses and is not solely motivated by spite or ill will." *Hard Lens Media, Inc. v. Chicago Corner, LLC*, 2025 WL 1787520, at *3 (N.D. Ill. June 27, 2025). Tyson's claim is based on the theory that the settlement is the "economic advantage" that Burford interfered with. And to the extent that the settlement is an "economic advantage" that can form the basis of Tyson's tortious interference claim, Burford had a reciprocal interest in that business deal. Tyson's interest was to minimize the settlement amount, whereas Burford's interest was to maximize the amount. *See* R. 7631 at 636 (alleging that Burford demanded "an exorbitant return on its litigation-funding investment"). Nowhere does Tyson allege that Burford sought to increase the settlement amount because it bore ill will towards Tyson itself. Rather, Tyson expressly alleges and argues that Burford's sole interest was economic. And nowhere does Tyson allege that Burford engaged in unlawful restraint of trade or other unlawful business practice to achieve its goal. *See Total Staffing Sols., Inc. v. Staffing, Inc.*, 227 N.E.3d 14, 33-34 (Ill. App. Ct. 1st Dist. 2023) (citing the Restatement to note that a restraint of trade would constitute tortious interference). Rather, Burford leveraged its contractual relationship with Sysco to protect and further its economic interests. The fact that Burford's interest in maximizing the settlement amount was contrary to Tyson's interest, was merely collateral damage, and is in the nature of every settlement negotiation. Tyson does not allege that Burford intended to do Tyson harm other than by maximizing Burford's economic interest, and so its interference cannot form the basis of a tortious interference claim.

Tyson argues that Burford's conduct is not protected by any economic privilege because "it did not have any contractual consent right [i.e., a right to veto a settlement] at the time of Sysco's negotiations with Tyson that would have permitted Burford to influence or control Sysco's settlement decisions." R. 7843 at 11. But it is beside the point whether or not Burford had the ultimate right to approve Sysco's settlements at the time of Burford's interference or at the time Sysco terminated negotiations with Tyson. Regardless of what specific contractual rights Burford possessed relative to the settlement with Tyson, Burford at all times had an economic interest in maximizing the settlement amount. For that reason, Burford was privileged to attempt to persuade, convince, or even force Sysco not to settle for an amount that Burford opposed, as long as Burford's motive was not the corporate equivalent of personal animus towards Tyson, and as long as its actions were not legally anticompetitive. Tyson makes no allegation of any such motive on Burford's part, so Tyson's claim for tortious interference with prospective economic advantage must be dismissed.

**Conclusion**

Therefore, Burford and Carina's motion to dismiss Tyson's counterclaim [7760] is granted. Tyson's counterclaim is dismissed without prejudice. Any amended counterclaim is due by 12/4/2026.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: November 12, 2026